**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-01301-PAB

RCHFU, LLC, a Colorado limited liability company, JEFFREY A. BAYER and GAIL L. BAYER, ROBERT BUZZETTI, JULIE C. CANNER, LEE JAMES CHIMERAKIS and THERESA ANN CHIMERAKIS, KEVIN CLARE and NANCY LYNNE SHUTE, TOBY L. CONE TRUST and TOBY L. CONE, its Trustee, RICHARD DAVIS and SHIRLEY J. DAVIS, CARL EICHSTAEDT III, JAMES RICHARD FARQUHAR and JENNIFER LUCILLE FARQUHAR, KOPPELMAN FAMILY TRUST and LARRY KOPPELMAN, its Trustee, DAVID LANCASHIRE and STEPHEN ANDREWS, BONNIE LIKOVER, CRAIG LIPTON, JEREMY LOWELL, D.D.S. and LORI LOWELL, EDWARD P. MEYERSON and ANDREA C. MEYERSON, JERRY M. NOWELL TRUST and JERRY M. NOWELL, its Trustee, and DEE ANN DAVIS NOWELL TRUST and DEE ANN DAVIS NOWELL, its Trustee, THOMAS M. PROSE REVOCABLE LIVING TRUST and THOMAS M. PROSE, M.D., its Trustee, CASEY M. ROGERS and COURTNEY S. ROGERS, ROBERT A. SKLAR TRUST, and ROBERT A. SKLAR, its Trustee, C. RICHARD STASNEY, M.D. and SUSAN P. STASNEY, TSE HOLDINGS, LLC, a Colorado limited liability company, STEPHEN WEINSTEIN and BRENDA WEINSTEIN, JACK ZEMER, JEFFREY L. BERTNSTEIN and AMY S. BERNSTEIN, CHRISTOPHER BRANOFF and KIMBERELY BRANOFF, RICHARD LOUISE LEVENGOOD and LYNDA OVERLY LEVENGOOD, FRED H. FRIEDMAN and BRENDA C. FRIEDMAN, BENJE R. DANIEL, JR., DDS, MS, PA, R. DAVID & CHERYL M. JONES REVOCABLE LIVING TRUST and DAVID R. JONES, its trustee, and CHERYL M. JONES, its trustee, LILY ANN FRIEDMAN, 831 701 ONTARIO LIMITED, a Canadian Corporation, GARRY R. KIMBALL and CATHERINE G.A. KIMBALL, DAVID FRIEDMAN, MICHAEL G. ROBINSON and CAROLINE ROBINSON, HAMMER FAMILY LIMITED PARTNERSHIP, 8202 RCC ASPEN HIGHLANDS, LLC, CARL ANDREW RUDELLA and TAMMIEJO RUDELLA, ROBERT KAUFMAN, DAVID S. ISRAEL TRUST and DAVID S. ISRAEL, its trustee, J & B WOODS FAMILY ASSOCIATES, LLC, MICHAEL P. PACIN and AMY D. RONNER, BRUCE E. REID and ROSEMARY W. REID,

    Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, a Delaware corporation, MARRIOTT OWNERSHIP RESORTS, INC., d/b/a MARRIOTT VACATION CLUB INTERNATIONAL, a Delaware corporation, ASPEN HIGHLANDS CONDOMINIUM ASSOCIATION, a Colorado non-profit corporation, RITZ-CARLTON MANAGEMENT COMPANY, LLC, a Delaware limited liability company, COBALT TRAVEL COMPANY, LLC, INC., a Delaware limited liability company, and THE LION & CROWN TRAVEL CO., LLC, a Delaware limited liability company,

    Defendants.

1

**DEFENDANT ASPEN HIGHLANDS CONDOMINIUM ASSOCIATION'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Pursuant to Rules 8(a) and 12(b)(6) of the Federal Rule of Civil Procedure, Defendant Aspen Highlands Condominium Association, Inc. ("Association") respectfully moves the Court to dismiss Plaintiffs' Second Amended Complaint ("SAC") against the Association.

## I. INTRODUCTION AND BACKGROUND

This lawsuit was brought by Plaintiffs who are upset that other members of the Ritz-Carlton Club, Aspen Highlands ("Club"), who own their interests in fee simple, have the choice to trade in one of their weeks at the Aspen Highlands with the Marriott Vacation Club ("MVC"), thereby allowing members of an allegedly lesser-status, non-luxury vacation club to frequent the Aspen Highlands location. Plaintiffs are condominium owners who purchased deeded 1/12 fractional ownership interests at the Ritz-Carlton Club in Aspen Highlands located in Aspen, Colorado ("Plaintiffs"). The Association is a Colorado nonprofit corporation organized to manage the condominium consistent with the applicable governing documents, including the Declaration of Condominium for Aspen Highlands Condominiums ("Declaration") and the Ritz-Carlton Club Membership Program Affiliation Agreement ("Affiliation Agreement"). *See* SAC ¶¶ 16, 20–24.

In 2012, the Association began to consider whether its members would benefit if the manager affiliated with Marriott Vacations Worldwide Corporation's ("MVW") points-based timeshare program. *Id.* ¶¶ 49–57. In April 2014, after conducting a survey of its members, the Association announced it had arranged with the Marriott entity that managed Aspen Highlands

2

for members of the Club to trade a week at Aspen Highlands for a week elsewhere with a member of the MVC.  *Id.* ¶ 63.  The Association explained that the "opportunity is totally optional and voluntary."  *Id.*, Ex. M, at 2.

Plaintiffs allege that the Association's decision to give Club members this option breached the Association's fiduciary duty to them and devalued their Fractional Ownership Interests by at least 80%.  *Id.* ¶¶ 5–10.  Plaintiffs also allege that the Association breached its fiduciary duty to Plaintiffs when it allowed the optional trading program by advancing its "own interest and the interest of third parties" at the expense of Plaintiffs' interests and by "acting in a disloyal manner towards Plaintiffs" and "failing to enforce the Declaration[.]"  *Id.* ¶ 70.

But Plaintiffs fail to allege facts sufficient to show how the Association actually breached its fiduciary duty.  As an initial matter, Plaintiffs fail to allege facts to establish that they made a demand of the Association alleging a breach of the Declaration, as they are required to do before initiating a lawsuit.  Moreover, Plaintiffs cannot show that the Association breached (or aided and abetted or conspired to breach) any fiduciary duty because it is universally accepted that the business judgment rule protects "a director's exercise of judgment . . . when exercised in good faith."  *Kim v. Grover C. Coors Trust*, 179 P.3d 86, 96 (Colo. App. 2007).  Because the business judgment rule applies to condominium associations, Plaintiffs must demonstrate that the Association is not entitled to the deference afforded to it by the business judgment rule.  But they do no such thing.  While Plaintiffs may be upset that the Association chose to give Club members the opportunity to trade a week with a MVC member, an opportunity each member was free to forsake, they are unable to allege facts sufficient to overcome the business judgment rule's presumption in favor of the Association.

3

Finally, Plaintiffs fail to state a claim against the Association for unjust enrichment because they fail to allege any facts to show that the Association received any benefit at all from the optional trading program, let alone that it unjustly retained such a benefit.

Thus, Plaintiffs have failed to allege facts to support any of their claims against the Association, and their SAC must be dismissed.

## II. ARGUMENT

### A. Standard of Review

The purpose of a motion to dismiss is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). A complaint must be dismissed where, as here, it fails to state a claim upon which relief can be granted. Under Rules 8(a)(2) and 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The "[t]wo working principles" underlying this standard are: (1) "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" and (2) "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" such that the complaint must be dismissed. *Id.* at 678–79 (quoting Fed. R. Civ. P. 8(a)(2)). A complaint containing "labels and conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do[es] not suffice." *Id.* at 678 (citation omitted). If the factual allegations are so general that they "do not permit the court to infer more than the mere possibility of misconduct," the plaintiff "has not nudged [its]

4

claims . . . across the line from conceivable to plausible." *See id.* at 679–80 (internal quotations and citations omitted); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[1]

**B.      Plaintiffs' claims against the Association must be dismissed because Plaintiffs fail to allege that they made a demand to the Association as required by the Declaration.**

Plaintiffs' claims against the Association must be dismissed because Plaintiffs fail to allege that they satisfied their contractual preconditions to filing this lawsuit. The Declaration requires that any owner seeking to sue to enforce the terms of the Declaration must first make a demand to the Association's Executive Board before the owner can prosecute the claim. SAC, Ex. H (hereinafter Declaration) ¶ 7.8.3. Plaintiffs do not allege that they made any demand of the Association's Executive Board with regard to any of the allegations in the SAC. For this simple reason, Plaintiffs' claims against the Association must be dismissed.

The Association's Declaration provides that:

> Before an aggrieved Owner may prosecute any proceeding at law or in equity enforcing the provisions of this Declaration or the bylaws of the Association or seeking other relief relating to a violation or attempted violation of the provisions of this Declaration or the bylaws …, the Owner will first give written notice to the [Association's] Executive Board specifying the violation or attempted violation of the provisions of this Declaration or the bylaws, the facts and circumstances surrounding the violation, and the name of the person alleged to have violated or attempted to violate the provisions of this Declaration or the bylaws.

Declaration ¶ 7.8.3. The Executive Board then "may initiate a proceeding" to enforce the provisions of the Declaration or the bylaws. *Id.* If the Association "fails to enforce or cause

---

[1] This case was originally filed in District Court for Pitkin County, Colorado but was removed to this Court based upon the Class Action Fairness Act of 2005. 28 U.S.C. §§ 1332, 1446, 1453 ("CAFA"). Because this case was removed on the basis of diversity jurisdiction, Colorado law remains the substantive applicable law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938).

5

enforcement of the violated provision of" the Declaration or bylaws, the Owner may initiate a proceeding "within sixty (60) days after the Executive Board receives the Owner's notice." *Id.*[2]

Plaintiffs fail to allege that they complied with this provision of the Declaration. They never provided written notice to the Executive Board of any of the allegations in the SAC, and they nowhere allege that they otherwise made a demand of the Association to initiate a proceeding. And yet they bring this action in an attempt to enforce the Declaration, specifically alleging that the Association (1) breached its fiduciary duties to the Plaintiffs that arose from the Declaration—including its "duty to enforce restrictive covenants set forth in the Declaration"—and (2) failed to enforce Section 19.8 of the Declaration prohibiting timesharing of individual units. *See* SAC ¶¶ 24, 54, 62, 65–66, 70–74, 81–82, and 86–87. By Plaintiffs' own terms, these allegations arise from purported violations of the Declaration. Yet they fail to allege that they complied with the Declaration's requirement that they provide the Executive Board with notice and the opportunity to evaluate their allegations. Instead, they simply filed this lawsuit.

Courts allow proceedings by owners against homeowners associations when the owners comply with contractual demand requirements like Declaration ¶ 7.8.3. *Cf. Colo. Homes, Ltd. v. Loerch-Wilson*, 43 P.3d 718, 720 (Colo. App. 2001) (plaintiffs "made verbal requests to the HOA . . . to take action" and suit proceeded when HOA took no action to address plaintiffs' demands). But Plaintiffs did not do so here. Because Plaintiffs fail to allege that they complied with the requirements of the Declaration prior to initiating this lawsuit, their claims against the Association must be dismissed.

---

[2] The Owner also may initiate a proceeding against anyone violating or attempting to violate the Declaration if "the violation or attempted violation results or would result in direct and immediate physical damages to the Owner's Unit." Declaration ¶ 7.8.3. Here, Plaintiffs do not allege that Defendants caused any physical damage to their units.

### C. Plaintiffs fail to state a claim against the Association for breach of fiduciary duty.

Plaintiffs allege that the Association breached its fiduciary duties to Plaintiffs by (1) "favoring the interests of the Defendants over the interests of the Plaintiffs" by giving Club members an opportunity to trade a week with a member of the MVC; and (2) by "failing to enforce" the Declaration. SAC ¶¶ 62, 64–66, 70–74. Plaintiffs specifically point to the Association's failure to enforce Section 19.8 of the Declaration, which prohibits timesharing of individual units. *Id.* ¶¶ 62, 65–66, 70–71.

To succeed in their claim, Plaintiffs must prove: "1) the existence of a fiduciary relationship between plaintiff and defendant; 2) defendant's breach of the fiduciary duty; and 3) damages as a result of the breach." *F.D.I.C. v. Refco Grp., Ltd.*, 989 F. Supp. 1052, 1080 (D. Colo. 1997). Plaintiffs' claim must be dismissed because the business judgment rule protects the Association's actions here, and therefore Plaintiffs have failed to allege and cannot establish the second element of their claim—the Association's breach of a fiduciary duty.

The Declaration provides that the "Executive Board, the officers of the Association and the Association shall have the duty to represent the interests of" the owners "in a fair and just manner on all matters that may affect any or all" owners. Declaration ¶ 6.8. But the mere fact that the Association owes Plaintiffs fiduciary duties does not mean that those duties are breached whenever some Club members are aggrieved.

The business judgment rule immunizes the good faith acts of directors of non-profit corporations like the Association when those acts are "within the powers of the corporation and within the exercise of an honest business judgment . . . ." *Rywalt v. Writer Corp.*, 526 P.2d 316, 317 (Colo. App. 1974); *Kim*, 179 P.3d at 95 (in context of liability of individual directors,

7

holding that "[u]nder the business judgment rule, a director's exercise of judgment will not subject that director to liability when exercised in good faith"). Courts refuse to "interfere with or regulate" actions undertaken "in the reasonable and honest exercise of [a director's or board's] judgment and duties." *Rywalt*, 526 P.2d at 317.

The business judgment rule applies to decisions by condominium associations. In 2001, the Colorado Court of Appeals held that the business judgment rule protects decisions by a homeowners' association when the decision is made in good faith and is not arbitrary. *Colo. Homes, Ltd.*, 43 P.3d at 724 ("We perceive no reason why [the business judgment] rule should not apply in this case insofar as the issue for resolution is whether the HOA fulfilled its obligation to enforce the covenants.") (citing *Rywalt*, 526 P.2d 316); *see also Chimney Rock Pub. Power Dist. v. Tri-State Generation & Transmission Ass'n, Inc.*, No. 10-cv-02349-WJM-KMT, 2014 WL 788057, at *6 (D. Colo. Feb. 27, 2014) (concluding that "courts have applied the business judgment rule to protect a homeowner's association in a breach of contract action").[3]

Plaintiffs have failed to allege facts showing that the Association's decision to allow Club members to use their fee simple ownership like other Colorado property owners was a breach of its fiduciary duty. Arranging with the Marriott entity that managed Aspen Highlands to allow Club members voluntarily to trade a week of their time at Aspen Highlands with MVC points-program participants is simply an arrangement that allows Club members to do what each fee simple owner of property in Colorado can do—trade or rent the property that he or she owns.

---

[3] Courts in other states apply the business judgment rule to actions by condominium associations. S*ee Oberbillig v. West Grand Towers Condo. Ass'n*, 807 N.W.2d 143, 154–55 (Iowa 2011) (collecting cases from California, Connecticut, New Jersey, New York, North Dakota, and Washington); *Happ v. Creek Pointe Homeowner's Ass'n*, 717 S.E.2d 401, 407 (N.C. App. 2011).

Plaintiffs rely in vain on Section 19.8 of the Declaration, which prohibits any Units from being "used for the operation of a timesharing, fraction-sharing, interval ownership, private residence club, membership program, vacation club, exchange network or system or similar program," other than the Plan of Fractional Ownership established by Article 23 of the Declaration. Declaration ¶ 19.8. This plainly means that no one can buy an interest at Aspen Highlands and then subdivide the ownership further, nothing more. The Declaration does not define timesharing, but Colorado statutes define a "time share estate" as "an estate for years" or "[a]n undivided interest in a present estate in fee simple in a unit" where "title to a time share unit circulates among the interval owners in accordance with a fixed schedule" or the "exclusive right to possession and occupancy of the unit during an annually recurring period of time . . . ." *See* Colo. Rev. Stat. § 38-33-110 (defining time sharing for purposes of Colorado Common Interest Ownership Act, *see, e.g.*, §§ 38-33.3-209.7, 38-33.3-308, 38-33.3-310, 38-33.3-316.5).

Under this definition, Section 19.8 of the Declaration means that no one can buy an interest at Aspen Highlands and then subdivide the ownership and operate his or her own timesharing program with respect to his or her unit. It does not mean that a Club member cannot trade a week or other part of his or her 1/12 interest with another person, even if the trade happens to be for a week at a different club to which that other person belongs. And Plaintiffs point to no other provision in the Declaration that allegedly prohibits a Club member from freely utilizing his or her 1/12 interest. There is, for example, no prohibition in the Declaration or any other documents attached to the SAC against trading or renting all or part of one's interest or donating it to a family member, friend, co-worker, or charity.

9

Accordingly, the voluntary arrangement that the Association forged with the Marriott manager does not violate Section 19.8 of the Declaration, and Plaintiffs have failed to allege any facts showing that the Association breached its fiduciary duties by giving Club members one more opportunity to use their fee simple ownership. Indeed, had the Association exercised its judgment to preclude such trading, a group of the approximately 750 Club members who are not Plaintiffs may have been able to assert claims against the Association alleging that the Association deprived them of their common-law property rights given that the Declaration contains no restrictive covenant prohibiting trading, renting, or donating of members' interests. *See, e.g.*, *Estates at Desert Ridge Trails Homeowners' Ass'n v. Vazquez*, 300 P.3d 736, 744 (N.M. Ct. App. 2013) (holding that absent specific authorization in the association's declaration, the "association has no authority to restrict the use or occupancy of, or behavior within, individually owned lots or units" and thus concluding that it could not prohibit rentals for a period of thirty days or less) (internal quotations and citations omitted); *La Cholla Hills Homeowners Ass'n v. Foard*, No. 2 CA-CV 2007-0015, 2007 WL 5556994, at *2 (Az. Ct. App. Oct. 9, 2007) (explaining that "[i]f the [Declaration] do[es] not provide for the adoption of a particular restriction or requirement, such restriction or requirement is invalid.").

Plaintiffs also argue that the Association breached its fiduciary duties by "unilaterally decid[ing]" to allow the voluntary trading of time between a Club member and a MVC participant without holding a vote of the members of the Association. SAC ¶¶ 61–62. They cite a 2013 letter from the Association to all Club members stating that the "Ritz Marriott representatives agree" to allow an affiliation with the MVC only after a vote by the Association members. *See id.* ¶ 60; *id.*, Ex. L at 1–2. Whether or not the Marriott entities or the Association

10

board at some point believed it was wise to poll the members, Plaintiffs point to no provision of the Declaration, bylaws, or any other governing document that requires the Association to hold a vote before Club members could trade all or part of their interest with anyone else, even if the chattel received in the trade happened to be an interest in another time-sharing program. And no such provision exists in any of the exhibits to the SAC.

The Declaration allows all Association members to participate in a vote "[t]o the extent a matter is required by this Declaration, the bylaws of the Association or the [Colorado Common Interest Ownership] Act to be submitted to a vote of the members of the Association." Declaration ¶ 6.9. But unlike certain provisions in the Declaration that explicitly permit or require a vote by members of the Association,[4] nothing requires or even mentions a vote by all members of the Association in connection with the decision to affiliate with a Member Club or Associated Club of the Membership Program. For its part, the Affiliation Agreement explicitly states that the Association has no right to "participate in or consent to" any affiliation. Affiliation Agreement ¶ 7.2(a). And courts have concluded that a condominium association is protected by the business judgment rule when exercising its decision-making authority without a membership vote when no such vote is required. *See Oberbillig*, 807 N.W.2d at 155 (holding "the [business judgment] rule applies to the board's exercise of its interpretive authority over the bylaw in this case to proceed with the garage repairs without a membership vote").

Ultimately, Plaintiffs have not shown that any provision of the Declaration prohibits an owner of an interest at Aspen Highlands from trading all or part of that interest, even for an interest in another timesharing program. Nor have they shown that a vote of the full membership

---

[4] *See e.g.*, Declaration ¶¶ 6.5, 7.1.1, 7.4, 8.6.3, 17.1, 17.2, 18.4, 18.7, and 22.3.

11

was required before a Club member could exercise his or her common-law right to alienate the interest as he or she chooses. Thus, the business judgment rule protects the Association's actions here.

### D. Plaintiffs fail to state a claim against the Association for aiding and abetting a breach of fiduciary duty.

Plaintiffs cannot state a claim against the Association for aiding and abetting a breach of fiduciary duty. To state a claim for aiding and abetting, Plaintiffs must allege that: (1) a third party breached a fiduciary duty owed to the Plaintiffs; (2) the Association knowingly participated in that breach; and (3) the Association's aiding and abetting of the breach was a cause of the Plaintiffs' damages. *City P'ship Co. v. Lehman Bros., Inc.*, 344 F. Supp. 2d 1241, 1246 (D. Colo. 2004); *see also Holmes v. Young*, 885 P.2d 305, 308–09 (Colo. App. 1994). Here, Plaintiffs fail to allege that the Association knowingly participated in a third-party's breach of its fiduciary duties to the Plaintiffs.

The Association cannot be liable for aiding and abetting its own alleged breach of fiduciary duty. *See City P'ship Co.*, 344 F. Supp. 2d at 1246; Restatement (Second) of Torts §§ 876–77 (1979) (defining aiding and abetting as a cause of action for acting in concert with, or directing the fraudulent conduct of another). Neither can the Association be liable for aiding and abetting another Defendant's breach of fiduciary duty because Plaintiffs have failed to identify any facts to support such an allegation. Other than listing the Association as a party to the Management Agreement and the Affiliation Agreement, *see* SAC ¶¶ 25, 38, Plaintiffs provide no other support for their contention that the Association aided and abetted any other Defendant's breach of its fiduciary duties to the Plaintiffs.

To the contrary, Plaintiffs provide only conclusory allegations that "[e]ach and all of the Defendants . . . materially assisted, aided, abetted and/or conspired with one or more other Defendants" and that Defendants MVW, RC Management, and Cobalt, "pursuant to an agreement it [sic] made with Defendant Association," affiliated the Club with the MVC. *Id.* ¶¶ 45, 64–66. And in their claim for relief, Plaintiffs allege only that "Defendants" generally or Defendants MVW, MVCI, and L&C aided and abetted breaches of fiduciary duties. *Id.* ¶¶ 78, 81–82. These general, conclusory allegations are insufficient to state a cause of action against the Association for aiding and abetting a breach of fiduciary duty. *Iqbal*, 556 U.S. at 678–79. Plaintiffs failed to allege facts to show the second and third elements of a claim for aiding and abetting a breach of fiduciary duty, and their claims must be dismissed.

**E.     Plaintiffs fail to state a claim against the Association for conspiracy.**

Plaintiffs fail to state a claim against the Association for conspiracy because they have failed to allege any underlying wrongdoing or breach of fiduciary duty. To state a claim for conspiracy, Plaintiffs must allege: (1) an object to be accomplished; (2) an agreement between two or more persons on a course of action to accomplish that object; (3) that in furtherance of that course of action, one or more unlawful acts were performed to accomplish a lawful or unlawful goal, or one or more lawful acts which were performed to accomplish an unlawful goal; and; (4) damages to the plaintiff as a proximate result. *Double Oak Constr., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140, 146 (Colo. App. 2003); *see also Gen. Steel Domestic Sales, LLC v. Chumley*, No. 10-cv-01398, 2011 WL 2415167, at *5 (D. Colo. June 10, 2011) (J. Brimmer) (a claim for conspiracy must allege that there are two or more purposes, an object to be accomplished, and a meeting of the minds on the object or course of action). Here,

for the reasons discussed above, Plaintiffs have failed to allege any underlying breach of fiduciary duty by the Association or any plausible participation by the Association in another Defendants' breach of fiduciary duty. For this reason, Plaintiffs have failed to allege facts to support the third element of a claim for conspiracy, and their claim must be dismissed.

**F.      Plaintiffs fail to state a claim against the Association for unjust enrichment.**

Finally, Plaintiffs fail to allege facts sufficient to state a claim against the Association for unjust enrichment. To state a claim for unjust enrichment, Plaintiffs must allege that: (1) at the Plaintiffs' expense; (2) the Association received a benefit; (3) under circumstances that would make it unjust for the Association to retain the benefit without paying. *See Registry Sys. Int'l, Ltd. v. Hamm*, No. 08-cv-00495-PAB-MJW, 2010 WL 326327, at *19 (D. Colo. Jan. 20, 2010) (J. Brimmer) (quoting *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1007 (Colo. 2008)). Here, Plaintiffs fail to plead facts to support the second and third elements of their claim. Nowhere do Plaintiffs allege that the Association received any benefit from the optional trading program, nor do Plaintiffs allege that the Association unjustly retained such a benefit. To the contrary, Plaintiffs allege that MVW, MVCI, Cobalt and L & C received benefits—namely, ridding themselves of a poor investment, increasing attractiveness and value of their clubs, and increasing exchange fees. *See* SAC ¶ 92. But other than lumping the Association in with the generic "Defendants," Plaintiffs never allege any facts to support their contention that the Association received any benefit at all from the optional trading program, let alone that it unjustly retained such a benefit. Accordingly, Plaintiffs have failed to allege facts to support the second and third element of their unjust enrichment claim, and it must be dismissed.

### III.  CONCLUSION

For all of the foregoing reasons, the Association respectfully requests that the Court dismiss Plaintiffs' claims against the Association with prejudice.

Respectfully submitted this 25th day of July, 2016.

> */s/  Daniel F. Shea*
> **Daniel F. Shea**
> **Jessica Black Livingston**
> HOGAN LOVELLS US LLP
> 1200 Seventeenth Street, Suite 1500
> Denver, Colorado 80202
> Telephone: (303) 899-7300
> FAX: (303) 899-7333
> E-mail: dan.shea@hoganlovells.com
> E-mail:jessica.livingston@hoganlovells.com
>
> *Attorneys for Defendant Aspen Highlands Condominium Association*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 25, 2016, I electronically filed the foregoing **DEFENDANT ASPEN HIGHLANDS CONDOMINIUM ASSOCIATION'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| **Michael J. Reiser**<br>Law Office of Michael J. Reiser<br>961 Ygnacio Valley Road<br>Walnut Creek, CA 94596<br>reiserlaw@gmail.com<br><br>**Matthew C. Ferguson**<br>The Matthew C. Ferguson Law Firm, P.C.<br>119 South Spring, Suite 201<br>Aspen, Colorado 81611<br>matt@matthewfergusonlaw.com<br><br>**Michael L. Schrag**<br>Gibbs Law Group LLP<br>1 Kaiser Plaza, Suite 1125<br>Oakland, CA 94612<br>mls@classlawgroup.com<br><br>**Tyler R. Meade**<br>The Meade Firm P.C.<br>1816 Fifth Street<br>Berkeley, CA 94710<br>tyler@meadefirm.com<br><br>*Attorneys for Plaintiffs* | **Naomi G. Beer**<br>1200 17th Street, Suite 2400<br>Denver, Colorado 80202<br>Phone: (303) 572-6500<br>Fax: (303) 572-6540<br>BeerN@gtlaw.com<br><br>**Attorneys for Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., Ritz-Carlton Management Company, LLC, Cobalt Travel Company, LLC and Lion & Crown Travel Company, LLC** |

*/s/ Daniel F. Shea*_____