IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 16-01301 PAB

RCHFU, LLC, et al.

    Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al.

    Defendants.

---

**MARRIOTT DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT**

---

Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC ("RC Management"), The Cobalt Travel Company, LLC ("Cobalt") and The Lion & Crown Travel Co., LLC (collectively, "Marriott Defendants") move the Court to dismiss the Second Amended Complaint ("SAC") pursuant to Fed. R. Civ. P. 12(b)(6). The Marriott Defendants submit the following brief in support of their Motion.

### CERTIFICATION OF CONFERENCE

The deficiencies that require dismissal of the SAC against the Marriott Defendants are not correctable by amendment. Thus, the parties have not conferred in an effort to resolve the issues raised in this Motion, pursuant to Rule III.F.2.a of Your Honor's Practice Standards.

### INTRODUCTION

Plaintiffs are owners of 1/12 fractional interests in luxury condominium units at The Ritz-Carlton Club, Aspen Highlands, Colorado ("RC Club Aspen"). Each 1/12 fractional interest

entitles its owner to four use-weeks per year, which can be spent either at RC Club Aspen in the specific unit for which the owner contracted, or at any other resort with which RC Club Aspen is currently affiliated, subject to availability and other restrictions.  Reservations and exchanges for stays at other resorts are managed and administered through The Ritz-Carlton Club Membership Program ("RC Club Membership Program").

Plaintiffs have no complaints about RC Club Aspen, their fractional interests per se, or the RC Club Membership Program in general.  Rather, they complain that, in 2014, RC Club Aspen's Program Manager, Cobalt, decided to affiliate RC Club Aspen with Marriott Vacation Club Destinations ("MVC") and that, as a result of that affiliation (the "MVC Affiliation"), MVC members gained "access to luxury resorts [such as RC Club Aspen] that were formerly only available to Plaintiffs and [RC Club Aspen] Owners."  SAC ¶ 67.  Plaintiffs thus contend that the MVC Affiliation was improper, and they seek to hold three entities directly liable:  RC Management, Cobalt, and the Aspen Highlands Condominium Association ("Association") of which they, as fractional interest owners, are members.  Plaintiffs allege that all three entities owed them a fiduciary duty to act in their best interests and that each breached its duty by either carrying out or not opposing the MVC Affiliation.

As to RC Management and Cobalt, Plaintiffs' reasoning as to their supposed fiduciary duty is both circuitous and fatally flawed.  Plaintiffs assert that, by virtue of a management agreement between the Association and RC Management ("Management Agreement"), RC Management became the Association's (and, by extension, Plaintiffs') agent, i.e., fiduciary.  Then, because the Management Agreement authorized RC Management to engage a "Program Manager" (Cobalt) to manage and administer the RC Club Membership Program through an

2

affiliation agreement ("Affiliation Agreement"), Cobalt allegedly became RC Management's sub-agent and, by extension, the Association's (and Plaintiffs') fiduciary. Plaintiffs take this roundabout approach because it was Cobalt alone that, pursuant to the Affiliation Agreement, was permitted to affiliate RC Club Aspen with MVC; therefore, Plaintiffs' entire case hinges on their ability to show that Cobalt was their fiduciary.

Plaintiffs' argument fails, however, because the Management Agreement expressly disclaims any fiduciary relationship, recognizing, instead, RC Management's status as independent contractor. The Management Agreement also gives the Association no right to control RC Management's activities under the agreement, and such right to control is a prerequisite for a principal/agent relationship. Thus, because RC Management had no fiduciary duty to the Association (or Plaintiffs) under the Management Agreement, neither did its alleged sub-agent, Cobalt.

As for Plaintiffs' breach of fiduciary duty claim against the Association, a different analysis is required because homeowners' associations do owe a fiduciary duty to their members.[1] Plaintiffs allege that the Association breached its fiduciary duty to them as Association members by failing to enforce a restrictive covenant prohibiting the MVC Affiliation. But, as explained below, no such covenant exists. The Court can make that determination as a matter of law based on the plain language of the governing documents and general principles of contract interpretation.

---

[1] Although the Association is represented by its own counsel in this action, the Marriott Defendants are addressing the breach of fiduciary duty claim alleged against the Association, because Plaintiffs have also alleged that the Marriott Defendants aided and abetted and conspired with the Association with respect to such alleged breach.

Plaintiffs' inability to state breach of fiduciary duty claims against RC Management, Cobalt and the Association renders their dependent aiding and abetting, conspiracy, and unjust enrichment claims against the Marriott Defendants moot. Plaintiffs have, therefore, failed to state any claim upon which relief could be granted, and the SAC should be dismissed in its entirety.

## FACTUAL BACKGROUND

Plaintiffs allege that, between 2001 and 2012, they purchased 1/12 fractional interests at RC Club Aspen. SAC ¶¶ 6, 13. In addition to their individual purchase agreements, the documents governing Plaintiffs' purchases include the Declaration for Aspen Highlands Village ("Master Declaration" or "Master Decl.") (attached to the Declaration of Jeannette Greene, dated July 25, 2016 ("Greene Decl.") as Exhibit A);[2] the Declaration of Condominium for Aspen Highlands Condominiums ("Declaration of Condominium" or "Decl. of Condo.") (SAC, Ex. H); The Ritz-Carlton Management Company, L.L.C. Management Agreement ("Management Agreement" or "Mgmt. Agmt.") (*see* SAC ¶ 25[3]); and The Ritz-Carlton Club Membership Program Affiliation Agreement ("Affiliation Agreement" or "AA") (SAC, Ex. B).

### A. Master Declaration

---

[2] In addition to the SAC and attached exhibits, the Court may properly consider the Master Declaration, which is referred to in the SAC (*see* ¶ 54 n.4) and is central to Plaintiffs' claims. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) ("[I]f a … document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.").

[3] The "Management Agreement" attached to the SAC as Exhibit A is for the wrong Ritz-Carlton resort. A copy of the correct Management Agreement is attached to the Greene Declaration as Exhibit B. Subsequent amendments to the Management Agreement did not change the provisions quoted herein; however, the amendments are attached to the Greene Declaration for the sake of completeness. *See* Greene Decl., Exs. C-E.

4

The Master Declaration is the publicly recorded document whereby "Declarant" (Hines Highlands Limited Partnership) created Aspen Highlands Village ("Property"), a planned community of which RC Club Aspen is a part. Master Decl. § 1.1. Pursuant to the Master Declaration, the Property was divided into fee simple interests called "Units," some of which were designated for residential use in which "Fractional Ownership Interests" could be sold. *Id.* at § 2.58.

Article 8 of the Master Declaration ("Restrictions on Use") lists prohibited activities and uses of the Property. *See, e.g.,* § 8.7 ("No Noxious or Offensive Activity"); § 8.8 ("No Harassment of Wildlife"); § 8.10 ("No Unsightliness"). A further restriction prohibits anyone except Declarant from selling fractional interests in the Units or operating a timeshare program involving the Units:

> Other than the right of Declarant, … [and its] successors and specific assigns … to create Fractional Ownership Interests as contemplated by this Declaration (specifically including, without limitation, any Fractional Project[4]), no Unit shall be used for the operation of a timesharing, fraction-sharing, or similar program whereby the right to exclusive use of the Unit rotates among participants in the program on a fixed or floating time schedule over a period of years.

§ 8.25 ("No Timeshare"). Thus, individual unit owners were prohibited from operating a timesharing program, but Declarant was not so prohibited. Indeed, Declarant was given the express right to do so. *Id.* at § 1.3.

### B. Declaration of Condominium

The Declaration of Condominium is the document whereby "Declarants" (Hines Highlands Limited Partnership and The Ritz-Carlton Development Company, Inc. ("RC

---

[4] "Fractional Project" is defined as "a Project within which the individual Units are divided into Fractional Ownership Interests pursuant to applicable provisions of Colorado law." *Id.* at § 2.24. Aspen Highlands Condominiums is a Fractional Project.

5

Development")) created Aspen Highlands Condominiums, a "Project" envisioned by the Master Declaration. *See* Decl. of Condo. (SAC Ex. H) (prefatory language and § 1.1); *see also* Master Decl. (Greene Decl. Ex. A) § 2.44 (defining "Project Declaration"). The Declaration of Condominium also contemplated that the Association's Executive Board would enter into a Management Agreement "to discharg[e its] responsibilities … relative to the operation, maintenance and management of the Project." *Id.* at § 2.40.[5]

### C. Management Agreement

As contemplated in the Declaration of Condominium, the Association entered into a Management Agreement with RC Management under which RC Management (as "Management Company") is to act "as the exclusive managing entity of the Condominium and to manage the daily affairs of the Condominium and the [fractional ownership interest plan]." *See* Mgmt. Agmt. (Greene Decl. Ex. B) § 2. The Management Agreement expressly provides that "<u>nothing in this Agreement shall be construed as creating a partnership, joint venture, or any other relationship between the parties to this Agreement</u>." *Id.* (emphasis added). The Management Agreement further provides that "[RC Management] is an independent contractor of the Association" and that the "Association … <u>releases any right of control</u> over the method, manner or means by which [RC Management] performs its duties and responsibilities under this Agreement." *Id.* at § 30 (emphasis added). In addition, the Management Agreement permitted RC Management to "[e]ngage a Program Manager through an [A]ffiliation [A]greement" who

---

[5] The Declaration of Condominium is secondary and "subject to" to the Master Declaration. *See* Decl. of Condo. § 1.9. Thus, "[i]n case of any conflict between th[e terms of the two Declarations], the Master [Declaration and associated documents] shall control." Decl. of Condo. at § 22.8 ("Conflict of Provisions").

6

would have "the broadest possible" authority to manage and administer the RC Club Membership Program. *Id.* at § 4(S).

### D. Affiliation Agreement

The Affiliation Agreement, which is among Cobalt (as "Program Manager"), RC Development (as "Developer"), RC Management (as "Club Manager") and the Association (*see* AA (SAC, Ex. B) (prefatory language)), sets out the terms and conditions of RC Club Aspen's affiliation with the RC Club Membership Program. *See id.* (fifth "WHEREAS" clause). By virtue of his/her fractional interest ownership in RC Club Aspen, each owner (or "Member") "has membership privileges in the [RC Club] Membership Program on a mandatory basis" (*id.* at § II ("Definitions")) and "is deemed to have consented to the terms and conditions of the [Affiliation] Agreement." *Id.* at § 1.2.

The Affiliation Agreement lists numerous "rights, duties and obligations [that] … are exclusive to the Program Manager" (*see id.* at § 5.1), including the right to:

- "consent to the employment of any Club Manager engaged by the Developer or … Association to manage, operate and maintain the Club" (*id.* at § 4.5);[6]

- "in its sole discretion, elect to affiliate other locations with the Membership Program as Member Clubs or Associated Clubs from time to time. Neither the Developer, Members Association, nor Club Manager shall be entitled to participate in or consent to the Program Manager's decision in this regard." (*Id.* at § 7.2.a); and

- "in its sole discretion, create a separate membership program, develop individual resort properties as residential, transient or other use, or enter into management agreements with resort properties without the approval of the Developer, Members Association or Club Manager" (*id.* at § 7.2.b).

---

[6] Thus, the Association's decision to enter the Management Agreement with RC Management was subject to the approval of Program Manager Cobalt.

7

With respect to the last-mentioned exclusive right of the Program Manager, the Affiliation Agreement contemplated that the creation of a separate membership program would concomitantly create "Associate Members," meaning persons "having privileges with the Membership Program through a separate category of membership other than that type of membership associated with ownership of a Residence Interest and mandatory affiliation with the Membership Program." *Id.* at § II ("Definitions").

## STANDARD

"[T]o survive a … motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level…." *Bell Atl. Corp. v. Twombly,* 550 U.S. 554, 555 (2007). "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not suffice. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Moreover, a complaint must be dismissed if it does not "state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. In addition, while the court must accept all well-pled factual allegations in the complaint as true (*see Morse v. Regents of the Univ. of Colo.,* 154 F. 3d 1124, 1126-27 (10th Cir. 1998)), that does not apply to "legal conclusions" and "conclusory statements," which the court "will disregard." *Khalik v. United Air Lines,* 671 F. 3d 1188, 1190 (10th Cir. 2012).

## ARGUMENT

**I. RC MANAGEMENT AND COBALT OWED NO FIDUCIARY DUTY TO PLAINTIFFS, AND THE FIDUCIARY DUTY THAT THE ASSOCIATION OWED TO PLAINTIFFS WAS NOT BREACHED**

Plaintiffs allege that RC Management, Cobalt and the Association all owed a fiduciary duty to Plaintiffs and that they breached such duty by (1) affiliating RC Club Aspen with MVC (i.e., by carrying out the MVC Affiliation); and (2) failing to "enforce the restrictive covenants of

8

… Section 19.8 [of the Declaration of Condominium] … as well as [S]ection 8.25 of the [Master] Declaration…," which Plaintiffs contend prohibited the MVC Affiliation. *See* SAC ¶¶ 70-72. Plaintiffs' allegations are not plausible.

### A. <u>RC Management and Cobalt Owed No Fiduciary Duty to Plaintiffs</u>

To state a claim for breach of fiduciary duty, plaintiff must be able to allege that defendant owed it a fiduciary duty. *Winkler v. Rocky Mtn. Conf. of United Methodist Church,* 923 P. 2d 152, 157 (Colo. App. 1995). Whether a fiduciary relationship exists can be decided as a matter of law. *See, e.g., Dime Box Petrol. Corp. v. La. Land & Expl. Co.,* 938 F. 2d 1144, 1147-48 (10th Cir. 1991) (applying Colo. law) (affirming trial court's finding that, as a matter of law, no fiduciary duty arose under parties' operating agreement).

Plaintiffs cite the Management Agreement as the primary source of the fiduciary duty that they contend was owed to them by RC Management and Cobalt. Plaintiffs allege that, under the Management Agreement, the Association delegated broad authority to RC Management to perform management services, which included the authority to engage a Program Manager (i.e., Cobalt) through the Affiliation Agreement. *See* SAC ¶¶ 26, 34. Thus, Plaintiffs allege that RC Management "is the agent of the Association [and Plaintiffs]" and that Cobalt "is the agent or subagent of the Association [and Plaintiffs]." *See id.* at ¶¶ 36, 41. In other words, Plaintiffs allege that RC Management has a direct fiduciary duty under the Management Agreement and that Cobalt also has a fiduciary duty (albeit a more attenuated one) under that same agreement.

Plaintiffs ignore the Management Agreement's plain language, however, which expressly disclaims any fiduciary relationship between the parties. *See* Management Agreement (Greene Decl. Ex. B) § 2 ("[N]othing in this Agreement shall be construed as creating a partnership, joint

9

venture, or any other relationship between the parties to this Agreement.") (emphasis added). Language disclaiming such a relationship is fully enforceable under Colorado law. *See Mandelbaum v. Fiserv, Inc.,* 787 F. Supp. 2d 1226, 1241 (D. Colo. 2011) (fiduciary duties can be disclaimed by agreement); *Rocky Mt. Exploration, Inc. v. Davis Graham & Stubbs LLP*, 2016 Colo. App. LEXIS 308, at *51 (Colo. Ct. App. Mar. 10, 2016) (affirming dismissal of claim for aiding and abetting breach of fiduciary duty where parties' agreements "expressly disclaimed the existence of a joint venture or a fiduciary relationship"); *see also Lovell v. State Farm Mut. Auto Ins. Co.,* 466 F. 3d 893, 902 (10th Cir. 2006) (noting Colorado's "strong policy of freedom of contract") (citing *Allstate Ins. Co. v. Avis Rent-A-Car Sys., Inc.,* 947 P. 2d 341, 346 (Colo. 1997)).[7]

Moreover, the Management Agreement expressly recognizes RC Management's "independent contractor" status and gives the Association no "right of control over the method, manner or means by which [RC Management] performs its duties and responsibilities under th[e] Agreement." Management Agreement (Greene Decl. Ex. B) § 30 (emphasis added). The Colorado Supreme Court has explained that the key feature of an agency relationship is the principal's right to control the agent; thus, an agent is "'the very antithesis'" of an independent contractor. *City and Cnty. of Denver v. Fey Concert Co.,* 960 P. 2d 657, 660-61 (Colo. 1998) (citation omitted); *see also Burns v. Mac,* 2015 WL 4051998, at *9 (D. Colo. July 1, 2015) ("'An

---

[7] *Accord Cooper v. Parsky*, 140 F.3d 433, 439 (2d Cir. 1998) (affirming dismissal of breach of fiduciary duty claim because plaintiff "may not sue upon a duty which was expressly excluded from the Agreement"); *Bank of Am., N.A. v. GREC Homes IX, LLC*, 2014 WL 351962, at *12 (S.D. Fla. Jan. 23, 2014) (dismissing breach of fiduciary duty claim; "[a]s a matter of law, no fiduciary relationship will generally be found to exist where a contract clearly and unambiguously disclaims the possibility of a fiduciary relationship"); *Asian Vegetable Research & Dev. Ctr. v. Inst. of Int'l Educ.*, 944 F. Supp. 1169, 1178 (S.D.N.Y. 1996) (dismissing breach of fiduciary duty claim in light of contractual disclaimer of fiduciary relationship).

essential element of agency is the principal's right to control the agent's actions.'") (quoting *Hollingsworth v. Perry,* __ U.S. __, 133 S. Ct. 2652, 2665 (2013)).  Based on the Management Agreement's plain language, the Court can find, as a matter of law, that no agency (i.e., fiduciary) relationship exists between RC Management and the Association.  *See City and Cnty. of Denver,* 960 P. 2d at 661 (finding no agency as a matter of law based on contract language). Because RC Management had no fiduciary relationship to the Association (or Plaintiffs) under the Management Agreement, neither did Cobalt.

Even if a principal/agent (i.e., fiduciary) relationship existed between RC Management and the Association, it would not extend to Association members, i.e., Plaintiffs.  *See, e.g, Willey v. Mayer,* 876 P. 2d 1260, 1266 (Colo. 1994) (third parties harmed by agent's wrongful acts must seek recourse from principal, not agent) (citing Reuschlein & Gregory, *The Law of Agency and Partnership,* § 26, at 69-70 (2d ed. 1990)).  Thus, Plaintiffs' breach of fiduciary duty claim fails with respect to both RC Management and Cobalt.

### B. The Association Breached No Fiduciary Duty to Plaintiffs

The Association did not breach any fiduciary duty to Plaintiffs because: (1) it did not affiliate RC Club Aspen with MVC (which is the action about which Plaintiffs complain), nor could it have done so because such affiliation was not within its power; and (2) no restrictive covenant precluded the MVC Affiliation.

#### 1. Affiliating with MVC was not within the Association's power

"Generally, a homeowners' association owes a fiduciary duty to homeowners." *McShane v. Stirling Ranch Prop. Owners Ass'n,* __ P. 3d __, 2015 WL 1843807, at *5 (Colo. App., Apr. 23, 2015).  Such duty, however, is only owed "'with respect to matters within the scope of [the]

11

agency.'"  *Arst v. Stifel, Nicolaus & Co.,* 86 F. 3d 973, 978 (10th Cir. 1996) (quoting *Hill v. Bache Halsey Stuart Shields, Inc.,* 790 F. 2d 817, 824 (10th Cir. 1986) (applying Colorado law and citing Restatement (Second) of Agency § 13 (1958)); *see also Jarnagin v. Busby, Inc.,* 867 P. 2d 63, 67 (Colo. App. 1993) (establishing breach of fiduciary duty requires showing that "the nature and scope of the duty … extended to the subject matter of the suit").

Plaintiffs allege that the Association breached its fiduciary duty to them by "inclu[ding] … the Club … and the Plaintiffs' … Fractional Units in the [MVC] affiliation/exchange/points program…." SAC ¶ 70.  The Association, however, did not make that decision, nor did it have the power to do so.  To the contrary, the Affiliation Agreement provides that decisions regarding affiliation are solely within the province of the "Program Manager," i.e., Cobalt.  *See* Factual Background, Sect. D, *supra*.  Indeed, with respect to the MVC Affiliation, the Affiliation Agreement specifically provides that "[t]he Program Manager may, <u>in its sole discretion</u>, <u>create a separate membership program, develop individual resort properties as residential, transient or other use</u>, or enter into management agreements with resort properties <u>without the approval of the … Association</u>…." *Id.* at § 7.2.b. (emphasis added).  Accordingly, Plaintiffs have not plausibly pled a breach of fiduciary duty claim against the Association based on the decision to affiliate RC Club Aspen with MVC.

### 2.     <u>No restrictive covenant precluded the MVC Affiliation</u>

Under Colorado law, "[c]ontract interpretation is a question of law for the court to decide." *Copper Mountain, Inc. v. Indus. Sys., Inc.,* 208 P. 3d 692, 696 (Colo. 2009).  "When interpreting a contract, '[a] court's primary obligation is to effectuate the intent of the contracting parties according to the plain language and meaning of the contract.'" *New Design Constr. Co.*

12

*v. Hamon Contrs. Inc.,* 215 P. 3d 1172, 1181 (Colo. App. 2008) (citation omitted). Moreover, "'[t]he meaning and effect of a contract [are] to be determined from a review of the entire instrument, not merely from isolated clauses or phrases.'" *Id.* (citation omitted). Quoting general law holding that homeowners' associations owe a fiduciary duty to their members to enforce restrictive covenants, Plaintiffs assert that the Association owed them a fiduciary duty to enforce what they describe as a "restrictive covenant against timesharing" that they allege prohibited the MVC Affiliation. *See* SAC ¶ 71. Applying the above-stated general contract interpretation principles shows that no such restrictive covenant exists. Additionally, even if Plaintiffs' assertions were correct, the restrictive covenant would also apply to the RC Club Membership Program, about which Plaintiffs have no complaint. This case was brought because Plaintiffs want the ability to decide what affiliations may exist. No such right is conferred upon them by applicable law or by any existing agreement.

      **a.**      **The Master Declaration does not prohibit the MVC Affiliation**

Plaintiffs cite the Master Declaration as one of the two sources of the restrictive covenant they allege. *See* SAC ¶ 71. But the Master Declaration merely provides that "[e]ach Owner acknowledges that Declarant intends to create Fractional Ownership Interests with respect to certain Units" and that, "[o]ther than the right of Declarant … to create Fractional Ownership Interests … no Unit shall be used for the operation of a timesharing, fraction-sharing, or similar program whereby the right to exclusive use of the Unit rotates among participants in the program on a fixed or floating time schedule over a period of years." *See* Factual Background, Sect. A (quoting Master Decl. (Greene Decl. Ex. A) § 8.25) (emphasis added). Thus, the Master Declaration states that only Declarant, and not an individual Owner, can create Fractional

13

Ownership Interests in the Units for use in the operation of a timeshare program. Section 8.25 of the Master Declaration cannot reasonably be read as a restrictive covenant prohibiting the MVC Affiliation.

### b. The Declaration of Condominium does not prohibit the MVC Affiliation

Plaintiffs cite the Declaration of Condominium as the other source of the restrictive covenant they allege. SAC ¶ 71.[8] The Declaration of Condominium provides:

> Other than the right of Declarant … to create Fractional Ownership Interests in accordance with Article 23 of this Declaration (specifically including, without limitation, the Plan of Fractional Ownership), no Unit shall be used for the operation of a timesharing, fraction-sharing, interval ownership, private residence club, membership program, vacation club, exchange network or system or similar program whereby the right to exclusive use of the Unit is alternated or scheduled among participants in the program on a fixed or floating time schedule over a period of years whether by written, recorded agreement or otherwise.

Decl. of Condo. (SAC, Ex. H) § 19.8. As a threshold matter, the use restriction for Units in Section 19.8 of the Declaration of Condominium is expressly made subject to Declarant's right to create Fractional Ownership Interests, which is given in Article 23 of that same document. *See id.* Article 23 provides that "[t]he right to submit a … Unit to the Plan of Fractional Ownership <u>shall extend … to the Declarant</u> …." Decl. of Condo. § 23.1 (emphasis added). Nevertheless, Plaintiffs appear to contend that Section 19.8's "no Unit shall be used…" language applies, not only to individual Fractional Interest Owners like themselves, but also to Declarant. In other words, Plaintiffs appear to read Section 19.8 as not just prohibiting Fractional Interest Owners from using the Units for the purposes specified, but as a general restriction on the use that can be made of the Units. Because the prohibited purposes include "interval ownership,

---

[8] Even though the Master Declaration is controlling (*see* Factual Background, Sect. B, *supra*), Plaintiffs quote only from the Declaration of Condominium. *See* SAC ¶ 54.

14

private residence club, membership program, vacation club, exchange network or system," Plaintiffs contend that Section 19.8 should be read as prohibiting the MVC Affiliation. Such a reading is unreasonable. Like virtually every other provision in Declaration of Condominium Article 19, the purpose of Section 19.8 is to ensure that <u>Fractional Interest Owners</u> understand the limitations on <u>their rights</u> as purchasers. *See* Decl. of Condo. § 19.8 (beginning "Each Owner acknowledges….) *see also id.,* Article 19 *passim.*

Even if Section 19.8 of the Declaration of Condominium were read to mean something different than Section 8.25 of the Master Declaration (i.e., if the two provisions conflicted), then Section 19.8 would have to be ignored because Section 8.25 is controlling. *See* Factual Background, Sect. B, *supra.* Article 23 provides that, to the extent any inconsistency exists "with respect to … the rights, duties, and obligations of Plan Members" between Article 23 and "the remaining provisions of the Declaration, then <u>the provisions of … Article [23] shall control</u>." Decl. of Condo. § 23.1 (emphasis added). Thus, under the plain language of the governing documents and general contract interpretation principles, any possible inconsistency created by Section 19.8's addition of the words "interval ownership, private residence club, membership program, vacation club, exchange network or system" should be resolved in favor of the unambiguous provisions of Article 23, which allows Declarant to create fractional interests.

But reading the governing documents as a whole shows that the provisions do not conflict. Rather, both provisions prohibit individual Fractional Interest Owners (but not Declarant) from creating Fractional Ownership Interests in the Units for use in the operation of a timeshare program. Simply put, the intent of the provisions is to prohibit Fractional Interest Owners from using the Units to run their own timeshare operations. *Cf. id.* at 1181 (court must

"effectuate the intent of the contracting parties according to the plain language and meaning of the contract").

Notably, Article 23 also "incorporate[s] … by reference" the Affiliation Agreement (*id.* at § 23.2.1.), which is the document that (a) gave Cobalt sole and exclusive discretion to "create a separate membership program, develop individual resort properties as residential, transient or other use, or enter into management agreements with resort properties without the approval of the Developer, Members Association or Club Manager"; and (b) contemplated that the creation of such a separate membership program would concomitantly create "Associate Members," meaning persons "having privileges with the Membership Program through a separate category of membership other than that type of membership associated with ownership of a Residence Interest and mandatory affiliation with the Membership Program." *See* Factual Background, Sect. D, *supra* (quoting AA § 7.2.b. & § II ("Definitions")).

Another District Court has already found (based on the same affiliation agreement used here and applying Colorado law) that the resort's affiliation with MVC in that case was contractually permitted. In *Hoyt v. Marriott Vacations Worldwide Corporation*, the court found that:

> The discretion to add Associate Members to the Membership program, coupled with the Affiliation Agreements' pronouncement that '[t]he Program Manager, may, in its sole discretion, create a separate membership program,' … leads the court to <u>conclude as a matter of law that such an affiliation was contemplated and allowed by the governing documents</u>.

2014 WL 509903, at *3, n.6 (D. Minn. Feb. 7, 2014) (emphasis added).

In sum, neither Section 8.25 of the Master Declaration nor Section 19.8 of the Declaration of Condominium can reasonably be read as prohibiting the MVC Affiliation.

16

**II.     BECAUSE PLAINTIFFS FAIL TO ALLEGE ANY BREACH OF FIDUCIARY DUTY, THEIR AIDING AND ABETTING AND CONSPIRACY CLAIMS LIKEWISE FAIL**

An indispensable element of a claim for aiding and abetting breach of fiduciary duty is "breach by a fiduciary of a duty owed to a plaintiff." *Nelson v. Elway,* 971 P. 2d 245, 249 (Colo. 1998). For a civil conspiracy claim, plaintiff must be able to allege "an unlawful overt act." *Id.* at 250; *cf. Rocky Mt. Expl., Inc. v. Davis Graham & Stubbs LLP,* 2016 WL 908640, at *9 (Colo. Ct. App. Mar. 10, 2016) (finding that, "because [plaintiff's fraud claim] fails, [its] … civil conspiracy to commit fraud … and … aiding and abetting fraud [claims] fail as well").

Plaintiffs' aiding and abetting and conspiracy claims (Counts Two and Three, respectively) are based on the allegation (made entirely "on information and belief") that "sometime in 2014 …, Defendant MVW, pursuant to an agreement it made with Defendant Association not to enforce Section 19.8 of [the] Declaration of Condominium …, sold a portion of its remaining unsold Ritz-Carlton Club inventory to the [MVC] trust." SAC ¶ 65 (emphasis added). In other words, Plaintiffs allege that the Marriott Defendants prevailed upon the Association not to enforce what Plaintiffs contend is a restrictive covenant prohibiting the MVC Affiliation. But, for the reasons set forth above, neither Section 19.8 of the Declaration of Condominium nor any other provision of the governing documents prohibited the MVC Affiliation. *See* Point I(B)(2), *supra.* Thus, the Association had nothing to "enforce." Plaintiffs' aiding and abetting and conspiracy claims should be dismissed as a matter of law.

**III.    BECAUSE PLAINTIFFS FAIL TO ALLEGE ANY WRONGFUL CONDUCT, THEIR UNJUST ENRICHMENT CLAIM FAILS**

The purpose of an unjust enrichment claim is to "prevent[] … injustice." *Van Zanen v. Qwest Wireless, L.L.C.,* 522 F. 3d 1127, 1130 (10th Cir. 2008). But, as the court held in *Hoyt*

17

(which, as noted, also involved the MVC Affiliation and was decided under Colorado law), "[w]here … plaintiffs have failed to sufficiently allege improper underlying conduct, there is no injustice and no claim for unjust enrichment." *Hoyt,* 2014 WL 5795034, at *2 (citing *Cleary v. Philip Morris Inc.,* 656 F. 3d 511, 517 (7th Cir. 2011), holding that an unjust enrichment claim "will stand or fall with the [claim(s) to which it relates]," and *Noble Sys. Corp. v. Alorica Cent., LLC,* 543 F. 3d 978, 987 (8th Cir. 2008), dismissing unjust enrichment claim because underlying tort claims had been dismissed). Plaintiffs assert that, as a result of the conduct alleged in the SAC -- more specifically, the alleged breach of fiduciary duty -- Defendants were unjustly enriched. *See* SAC ¶¶ 90-93. But they have not plausibly alleged any improper conduct and have stated no claim upon which relief could be granted. *See* Points I & II, *supra.* Thus, having failed to allege the requisite injustice, their unjust enrichment claim should be dismissed.

Dated: July 25, 2016                                  Respectfully submitted,

                                                     GREENBERG TRAURIG, LLP

By:    *s/ Naomi G. Beer*
         Naomi G. Beer
         Philip R. Sellinger
         Ian S. Marx
         1200 Seventeenth Street, Suite 2400
         Denver, Colorado 80202
         Tel:    303.572.6500
         Fax:   303.572.6540
         Email:  BeerN@gtlaw.com
                   SellingerP@gtlaw.com
                   MarxI@gtlaw.com

*Attorneys for the Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC, The Cobalt Travel Company, LLC, and The Lion & Crown Travel Co., LLC*

# CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of July, 2016, a true and accurate copy of the foregoing **MARRIOTT DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT** was filed and served with the Clerk of the Court via CM/ECF filing system which will send notification to the following:

Michael J. Reiser
Lilia Bulgucheva
Law Office of Michael J. Reiser
961 Ygnacio Valley Road
Walnut Creek, CA 94596
*Counsel for Plaintiffs*

Matthew C. Ferguson
The Matthew C. Ferguson Law Firm, P.C.
119 South Spring, Suite 201
Aspen, Colorado 81611
*Counsel for Plaintiffs*

Tyler R. Meade
The Meade Firm P.C.
1816 Fifth Street
Berkeley, CA 94710
*Counsel for Plaintiffs*

Linda Pham Lam
Michael Schrag
Gibbs Law Group LLP
505 14th Street, Suite 1100
Oakland, CA 94612
*Counsel for Plaintiffs*

Daniel F. Shea
Jessica Black Livingston
Hogan Lovells US LLP
1200 Seventeenth Street, Suite 1500
Denver, Colorado 80202
*Counsel for Aspen Highlands
 Condominium Association*

*s/ Julie Eaton*
Julie Eaton

*(Original on file at offices of Greenberg Traurig, LLP, pursuant to C.R.C.P. 121, § 1-26*