3.21.8    cause additional improvements to be made as part of the Common Area, including the construction of any capital asset, in whole or in part, for the benefit of some or all of the Owners, Lessees, Guests and members of the general public, including without limitation, streets, mountain access roads and other limited access roads, paths, walkways, skiways, snowmelt systems, sidewalks and trails; any facilities necessary or useful for transit purposes, including gondolas or other means of transportation to and from Aspen Highlands Village; bus stops and related structures and signage; mailbox structures; newspaper racks; gardens, sprinkler systems and other landscaping changes, improvements (including without limitation, removal of trees and other vegetation) and appurtenances; ponds and water tanks; drainage facilities; monuments; recreational areas and facilities; parking areas; ducts, shafts and flues; conduit installation areas; storage facilities for supplies and equipment; earth walls, retaining walls and other road and skiway supports; lighting; signage; and the additional right to construct any and all types of structures, facilities and improvements that the District may be empowered by law from time to time to construct;

3.21.9    acquire, hold, encumber and convey in its own name any right, title or interest in real or personal property; provided, however, that the fee interest of a Common Area may not be conveyed or subjected to a security interest unless (a) such action receives approval of Owners holding a majority of the total voting interest in the Association or any greater level of approval if required by the Act; (b) such action is evidenced by a written agreement, or a written ratification of an agreement, executed in the same manner as a deed by the required number of Owners; and (c) such action does not deprive any Unit of its rights of ingress, egress and support;

3.21.10    impose and receive any payments, fees or charges for the use, rental or operation of Common Area;

3.21.11    impose and receive charges for late payments of Assessments, recover reasonable attorney's fees and disbursements and other costs of collection for Assessments and other actions to enforce the rights of the Association, regardless of whether or not suit was initiated, and after notice and opportunity to be heard, levy reasonable fines and penalties for violations of the Association Documents;

3.21.12    impose and receive reasonable charges for the preparation and recordation of amendments to the Declaration or statements of unpaid Assessments;

3.21.13    provide for the indemnification of the Association's officers and directors and maintain directors' and officers' liability insurance;

3.21.14    assign its right to future income, including without limitation, its right to receive Assessments;

3.21.15    obtain and pay for legal, accounting and other professional services;

3.21.16    perform any Function by, through or under contractual arrangements, licenses, or other arrangements with any governmental or private entity as may be necessary or desirable; and

*Hines\Aspen Highlands\dec ahv v11-clean*

14

423272 10/15/1998 03:59P DECLARAT DAVIS SILVI
21 of 73 R 366.00 D 0.00 N 0.00 PITKIN COUNTY CO

3.21.17  enjoy and exercise any other power or authority which similar associations may now or hereafter enjoy or exercise in the state of Colorado.

Section 3.22  <u>Association Documents</u>. Each Owner shall comply with and may benefit from each term, provision, covenant, condition, restriction, reservation and easement contained in the Association Documents. The obligations, burdens and benefits of membership in the Association touch and concern the Property and are, and shall be, covenants running with each Unit and Fractional Ownership Interest for the benefit of all other Units, Fractional Ownership Interests and the Common Area.

Section 3.23  <u>Ski Use and Access</u>. The Association may grant such rights in the Common Area as the Executive Board deems appropriate to the Ski Company in order to facilitate its use and operation of the Ski Area, including the rights of access granted to the Ski Company as more fully set forth on the Plat and related documents and in the Ski Easement Agreement. The rights which may be granted hereunder may be subject to whatever conditions the Executive Board deems necessary and/or appropriate, including, without limitation, appropriate indemnifications, and the Association shall expressly be subject to the obligations with respect to such easements, if any, as described on the Plat and in the Ski Easement Agreement.

Section 3.24  <u>Indemnification</u>. The Association shall be obligated to and shall indemnify and defend Declarant and hold it harmless from all liability, loss, cost, damage and expense, including without limitation attorneys' fees and disbursements, arising with respect to any operations of the Association or any Common Area or any Functions undertaken by the Association pursuant to this Declaration.

Section 3.25  <u>Owner's Negligence</u>. In the event that the need for maintenance, repair, or replacement of all or any portion of the Common Area is caused through or by the negligent or willful act or omission of an Owner or an Owner's Guest or Lessee, or by any Project Association, then the expenses incurred by the Association for such maintenance, repair, or replacement shall be a personal obligation of such Owner or, in the case of a negligent or willful act or omission of a Project Association, then of all Owners of Units within that Project; and, if an Owner fails to repay the expenses incurred by the Association within seven (7) days after notice to the Owner of the amount owed, then the failure to so repay shall be a default by the Owner under the provisions of this Declaration, and such expenses shall automatically become a default Assessment determined and levied against such Owner's Unit or Fractional Ownership Interest, enforceable by the Association in accordance with Sections 5.9, 5.10 and 5.11 below.

Section 3.26  <u>Enforcement of Association Documents</u>. The Association or any aggrieved Owner or Project Association may take judicial action against any Owner or Project Association to enforce compliance with the rules and regulations of the Association and with the other provisions of the Association Documents to obtain damages for noncompliance or for injunctive relief, or both, all to the extent permitted by law.

Section 3.27  <u>Cooperation with Other Associations</u>. The Association may contract or cooperate with the Project Associations or with other homeowners' associations or entities as

423272 10/15/1998 03:59P DECLARAT DAVIS SILVI
22 of 73 R 366.00 D 0.00 N 0.00 PITKIN COUNTY CO

convenient or necessary to provide services and privileges and to fairly allocate costs among the parties utilizing such services and privileges which may be administered by the Association or such other organizations, for the benefit of Owners and their Lessees and Guests. The costs associated with such efforts by the Association (to the extent not chargeable to other organizations) shall be a Common Expense.

Section 3.28  Cooperation with Project Associations. The Executive Board shall assist the Project Associations in the performance of their duties and obligations under their respective Project Declarations and other documents governing the applicable Project, and the Association shall cooperate with each Project Association so that each of those entities may most efficiently and economically provide their respective services to Owners. It is contemplated that from time to time the Association and the various Projects Associations may use the services each of the other in the furtherance of their respective obligations, and they may contract with each other to better provide for such cooperation. The payment for such contract services or a variance in services provided may be reflected in an increased Assessment by the Association for the Owners of Units in the particular Project or by an item in the Project Association's budget which shall be collected through the Assessments of such Project Association and remitted to the Association. If a Project Association fails, neglects or is unable to perform a duty or obligation required by its Project Declaration or other Project documents, then the Association may, after reasonable notice and an opportunity to cure given to the Project Association, perform such duties or obligations until such time as the Project Association is able to resume such functions, and the Association may charge the Project Association a reasonable fee for the performance of such functions.

Section 3.29  LIMITATION OF LIABILITY OF ASSOCIATION. NOTWITHSTANDING THE DUTY OF THE ASSOCIATION TO MAINTAIN AND REPAIR THE COMMON AREA, AND EXCEPT TO THE EXTENT COVERED BY ASSOCIATION INSURANCE AS DESCRIBED IN ARTICLE 9, THE ASSOCIATION SHALL NOT BE LIABLE TO OWNERS OR THE PROJECT ASSOCIATIONS FOR INJURY OR DAMAGE, OTHER THAN FOR THE COST OF MAINTENANCE AND REPAIR OF THE COMMON AREA, CAUSED BY ANY LATENT CONDITION OF THE COMMON AREA TO BE MAINTAINED AND REPAIRED BY THE ASSOCIATION OR CAUSED BY THE ELEMENTS OR OTHER OWNERS OR PERSONS OR THE PROJECT ASSOCIATIONS.

Section 3.30  Rights of Ski Company. In the event that the Association fails in its obligations to maintain the Common Area in a reasonable manner and condition as required under this Article 3 then, after written notice to the Association and the failure of the Association to cure such failure within a reasonable time thereafter, the Ski Company may undertake to perform the maintenance of the Common Area which is not being performed by the Association. Any direct costs incurred by the Ski Company in performing the obligations of the Association as provided in this Section shall be reimbursed by the Association to the Ski Company within sixty (60) days after delivery to the Association of written evidence of such costs.



423272 10/15/1998 03:59P DECLARAT DAVIS SILVI
23 of 73 R 366.00 D 0.00 N 0.00 PITKIN COUNTY CO

## ARTICLE 4
## MEMBERSHIP IN ASSOCIATION

Section 4.1   Association Membership.   Every Owner shall be a member of the Association, the Owners of the Project Lots shall be members until such time as a Project Lot is further subdivided in accordance with a Project Declaration or otherwise, at which time each Owner of such subdivided Units within the Project shall be a member for the period of the Owner's ownership of the Unit and the Owner of the Parking Facility Lot shall be a member until such time as the Parking Facility Lot is further subdivided in accordance with the Parking Facility Declaration or otherwise, at which time each Owner of such subdivided Units within the Parking Facility shall be a member for the period of the Owner's ownership of the Parking Facility Unit. No Owner, whether one or more persons, shall have more than one membership per Unit and/or Fractional Ownership Interest owned, as applicable. Membership in the Association shall be appurtenant to, and may not be separated from, ownership of a Unit.

Section 4.2   Categories of Membership.   There shall be five categories of membership in the Association as follows:

4.2.1   "Free-Market Residential Unit Members" shall be all Owners of Free-Market Residential Units, Owners of Project Lots that are approved to contain any Free-Market Residential Units pursuant to the PUD Plan and the Declarant so long as Declarant continues to own an interest in a Free-Market Residential Unit.

4.2.2   "Deed Restricted Residential Unit Members" shall be all Owners of Deed Restricted Residential Units, Owners of Project Lots that are approved to contain any Deed Restricted Residential Units pursuant to the PUD Plan and the Declarant so long as Declarant continues to own an interest in a Deed Restricted Residential Unit.

4.2.3   "Tourist Accommodation Unit Members" shall be all Owners of Tourist Accommodation Units, Owners of Fractional Ownership Interests in any Tourist Accommodation Unit, Owners of Project Lots that are approved to contain any Tourist Accommodation Units pursuant to the PUD Plan and the Declarant so long as Declarant continues to own an interest in a Tourist Accommodation Unit or Fractional Ownership Interest therein.

4.2.4   "Commercial Unit Members" shall be all Owners of the Commercial Units, Owners of Project Lots that are approved to contain any Commercial Units pursuant to the PUD Plan and the Declarant so long as Declarant continues to own an interest in a Commercial Unit.

4.2.5   "Parking Facility Unit Members" shall be all Owners of Parking Facility Units and the Declarant so long as Declarant continues to own an interest in a Parking Facility Unit.

The Owners of Free-Market Residential Units, Deed Restricted Residential Units, and Tourist Accommodation Units (including the Owners of Fractional Ownership Interests therein, if any) may hereinafter be collectively referred to as the Residential Unit Members. As

423272 10/15/1998 03:59P DECLARAT DAVIS SILVI
24 of 73 R 366.00 D 0.00 N 0.00 PITKIN COUNTY CO

described below, the categories of Free-Market Residential Unit Members, Deed Restricted Unit Members and Tourist Accommodation Unit Members shall vote as separate categories only to elect Directors to represent each such Category; in all other matters, such members shall be deemed to be members of the combined Class of Residential Unit Members. For purposes of this Declaration, the Commercial Unit Members shall also be deemed a "Class" of members.

Section 4.3   Voting Rights.   Each Unit and Fractional Ownership Interest shall be allocated a number of votes for the purpose of matters relating to the Common Area as set forth below:

4.3.1   Free-Market Residential Units.   Each Free-Market Residential Unit shall be allocated twelve (12) votes. Each Project Lot that is approved to contain any Free-Market Residential Units pursuant to the PUD Plan shall be allocated twelve (12) votes with respect to any matters which are subject to a vote by the Owners of Free-Market Residential Units.

4.3.2   Deed Restricted Residential Units.   Each type of Deed Restricted Residential Unit (affordable housing sale units, rental units and dormitory units, all as described on the PUD Plan) shall be allocated the number of votes for such type as indicated on Exhibit B attached hereto. Each Project Lot that is approved to contain any Deed Restricted Residential Units pursuant to the PUD Plan shall be allocated four (4) votes with respect to any matters which are subject to a vote by the Owners of Deed Restricted Residential Units.

4.3.3   Tourist Accommodation Units.   Each Tourist Accommodation Unit (including any such Tourist Accommodation Unit that is divided into Fractional Ownership Interests) shall be allocated eight (8) votes. Each Project Lot that is approved to contain any Tourist Accommodation Units pursuant to the PUD Plan shall be allocated eight (8) votes with respect to any matters which are subject to a vote by the Owners of Tourist Accommodation Units.

4.3.4   Commercial Units.   Each Commercial Unit shall be allocated the greater of: (a) twelve (12) votes for such Commercial Unit; or (b) twelve (12) votes for each full 1000 square feet of above-grade space and four (4) votes for each full 1000 square feet of below-grade space contained in such Commercial Unit. In the event that the square feet of above-grade space in a Commercial Unit is not a multiple of 1000, the above-grade square footage for such Unit shall be rounded down to the nearest multiple of 1000, for purposes of determining the voting allocation for such Unit (e.g., if a Commercial Unit contains 2700 square feet of above-grade space, it shall be deemed to contain 2000 square feet of above-grade space for purposes of voting allocation and shall be allocated twenty-four (24) votes with respect to its above-grade space). In the event that the square feet of below-grade space in a Commercial Unit is not a multiple of 1000, the below-grade square footage for such Unit shall also be rounded down to the nearest multiple of 1000 for purposes of determining the voting allocation for such Unit (e.g., if a Commercial Unit contains 1300 square feet of below-grade space, it shall be deemed to contain 1000 square feet of below-grade space for purposes of voting allocation and shall be allocated four (4) votes with respect to its below-grade space). Each Project Lot that is approved to

423272  10/15/1998  03:59P DECLARAT DAVIS SILVI
25 of 73 R 366.00 D 0.00 N 0.00 PITKIN COUNTY CO

contain any Commercial Units pursuant to the PUD Plan shall be allocated twelve (12) votes with respect to any matters which are subject to a vote by the Owners of Commercial Units.

    4.3.5    Project Lots. Each Project Lot shall be allocated as provided in this Sections 4.3 votes until such time as any Unit has been created by subdivision upon such Project Lot, at which time (i) the Owner of each subdivided, developed Unit shall be entitled to cast the vote on Association matters with respect to such Unit in accordance with these Bylaws, and (ii) the Owner of the remainder of the Project Lot that has not been made subject to the Project Declaration and/or further subdivided shall not be entitled to vote on Association matters as a result of its ownership of the remainder of the Project Lot. The Owner of a Project Lot shall be deemed to be a member of each and all categories of members relating to the categories of Units that are approved to be developed on the Project Lot pursuant to the PUD Plan. For example, if a Project Lot is approved for development of a mixed-use Project containing Deed Restricted Residential Units, Tourist Accommodation Units and Commercial Units, the Owner of such Project Lot shall be deemed to be a Deed Restricted Residential Unit Member, a Tourist Accommodation Unit Member and a Commercial Unit Member. With respect to Association matters which are voted upon only by the Residential Unit Members, the Owner of the Project Lot would be entitled to cast 12 votes (4 votes as a Deed Restricted Residential Unit Member and 8 votes as a Tourist Accommodation Unit Member). With respect to Association matters which are voted upon by all members, the Owner of the Project Lot would be entitled to cast 24 votes (4 votes as a Deed Restricted Residential Unit Member, 8 votes as a Tourist Accommodation Unit Member and 12 votes as a Commercial Unit Member)..

    4.3.6    Parking Facility Units. Each Parking Facility Unit shall be allocated zero (0) votes. Similarly, Each Parking Facility Unit shall not be subject to assessment pursuant to this Declaration. This arrangement acknowledges that, in general, the owners of Parking Facility Units are intended to be Owners of Units or Project Associations within this Association and will have voting rights and assessment obligations in the Association as such.

    4.3.7    Voting of Fractional Ownership Interests. The votes with respect to each Unit in an Fractional Project will be allocated to the Owners of the Fractional Ownership Interests comprising such Unit on the same basis as each Owner's fractional interest in the Unit; meaning, by way of example and not of limitation, that if a Tourist Accommodation Unit is divided into Fractional Ownership Interests constituting a 1/7 share of such Unit, then each Owner of an Fractional Ownership Interest therein shall be entitled to cast 1/7 of the votes with respect to such Unit, or 1.14 vote (1/7 times $8 \approx 1.14$).

Section 4.4    Election of Directors. During the period that Declarant is entitled to appoint the majority of the members of the Executive Board (such period, the "Declarant Control Period" as more particularly described in Section 4.5 below and the bylaws of the Association), the Directors shall be elected as provided in the bylaws of the Association without regard to the categories of Directors or the election thereof by certain categories of members as described in this Section below. It is hereby determined that, after the expiration of the Declarant Control Period, in order to protect the valid interests of the various categories of Owners, each Category (other than the Category of Parking Facility Unit Members) requires representation on the Executive Board and is hereby entitled to elect certain Directors thereto. After the expiration of

423272 10/15/1998 03:59P DECLARAT DAVIS SILVI
26 of 73 R 365.00 D 0.00 N 0.00 PITKIN COUNTY CO

the Declarant Control Period, the Executive Board shall consist of seven (7) persons, of which the Categories of Free-Market Residential Unit Members and Tourist Accommodation Unit Members, together, shall be entitled to nominate and elect two (2) of the seven (7), the Category of Deed Restricted Residential Unit Members shall be entitled to nominate and elect one (1) of the seven (7), the Category of Commercial Unit Members shall be entitled to nominate and elect three (3) of the seven (7), and all Owners collectively shall be entitled to nominate and elect one (1) Director at Large. It is specifically provided that the Owners of Parking Facility Units shall not be entitled to vote for the election of Directors nor to elect a Director or Directors to represent their Category.

Section 4.5  Declarant Control. Notwithstanding anything to the contrary provided for herein or in the bylaws of the Association, Declarant shall be entitled to appoint and remove the members of the Association's Executive Board and officers of the Association to the fullest extent currently permitted under the Act. The specific restrictions and procedures governing the exercise of Declarant's right to so appoint and remove Directors and officers shall be set out in the Bylaws of the Association. Declarant may voluntarily relinquish such power evidenced by a notice executed by Declarant and recorded in the Office of the Clerk and Recorder for Pitkin County, Colorado but, in such event, Declarant may at its option require that specified actions of the Association or the Executive Board as described in the recorded notice, during the period Declarant would otherwise be entitled to appoint and remove Directors and officers, be approved by Declarant before they become effective. For purposes of this Declaration and the bylaws of the Association, a Unit which is subdivided into Fractional Ownership Interests shall be deemed conveyed to an Owner other than Declarant for purposes of determining Declarant control only after conveyance of one hundred percent (100%) of the Fractional Ownership Interests in such Unit.

Section 4.6  Executive Board. During the Declarant Control Period, all members of the Executive Board shall be entitled to participate in all Association affairs without regard to the provisions of this Section. After expiration of the Declarant Control Period, all members of the Executive Board shall be entitled to participate in Association affairs which affect Aspen Highlands Village in its entirety, both the Residential Units and the Commercial Units, both the Owners of Residential Units and the Owners of Commercial Units, or the Common Expenses affecting both the Residential Units and the Commercial Units, which matters (as well as matters involving the Parking Facility Units and the Owners thereof as provided in the next sentence) are the only matters in which the Director at Large shall participate. In addition, all members of the Executive Board shall be entitled to participate in Association affairs which affect the Parking Facility Units, except for matters under the exclusive control of the Parking Facility Association. The Residential Directors shall have the sole and exclusive authority to vote with respect to all matters which relate solely to the Residential Units. The Commercial Directors shall have the sole and exclusive authority to vote with respect to all matters which relate solely to the Commercial Units. Any determination by the Directors that a matter should be for the independent consideration of either or both groups of the Commercial Directors and/or the Residential Directors and not for consideration of the entire Executive Board, shall require, in addition to the affirmative vote of a majority of the voting Directors of the Executive Board, the affirmative vote of at least one Residential Director and one Commercial Director.

Notwithstanding any other term in this Declaration to the contrary, in the event of an emergency requiring immediate action by the Executive Board, the entire Executive Board shall participate in the decision to take such action as is necessary to advance the interest of Aspen Highlands Village as a whole pending a determination by the Executive Board as to whether the matter should be independently considered by either or both groups of the Commercial Directors and/or the Residential Directors, at which time such Directors as are determined to be entitled to participate in the decision shall resolve the issue.

Section 4.7   Fairness Standard. The Executive Board, the officers of the Association and the Association shall have the duty to represent the interest of the Owners of Residential Units, the Owners of Commercial Units and the Owners of Parking Facility Units in a fair and just manner on all matters that may affect any or all Categories of Owners. In upholding their duties, the Executive Board, the officers and the Association shall be held in their decisions, including, without limitation the determination of whether a matter should be for the independent consideration of either or both groups of the Commercial Directors and/or the Residential Directors as described in Section 4.6 above, to the standards of good faith and reasonableness with respect to such matters, taking into account the effect, if any, of the matter on Aspen Highlands Village as a whole.

Section 4.8   Voting by Association Members. To the extent a matter is required by this Declaration, the Bylaws of the Association or the Act to be submitted to the vote of the members of the Association, all members (except Parking Facility Unit Members) shall be entitled to participate in the vote on such matters unless a majority of the voting Directors of the Executive Board, including the affirmative vote of at least one Commercial Director and one Residential Director, determine that a particular matter affects exclusively either the membership Class of Residential Unit Members (including the Owners of Fractional Ownership Interests therein, if any) or Commercial Unit Members, in which case the Executive Board may give notice of a meeting of either the Residential Unit Members (including the Owners of Fractional Ownership Interests therein, if any) or the Commercial Unit Members and conduct a vote on the matter affecting only that Class in order to protect the legitimate, valid interest of such Class.

Section 4.9   Owner's and Association's Address for Notices. All Owners of an individual Unit or Fractional Ownership Interest shall have one and the same registered mailing address to be used by the Association or other Owners for notices, demands and all other communications regarding Association matters. The Owner or Owners shall furnish such registered address to the secretary of the Association within five days after transfer of title to the Unit or Fractional Ownership Interest to such Owner or Owners. Such registration shall be in written form and signed by all of the Owners or by such persons as are authorized by law to represent the interests of all Owners. Notwithstanding the foregoing, the Association shall be entitled to rely upon any such registration or other notice of a change in address of the Owners of the Unit or Fractional Ownership Interest which is signed by less than all of the Owners of such Unit or Fractional Ownership Interest.

If no address is registered or if all of the Owners cannot agree, then the address on the deed for the Unit or Fractional Ownership Interest shall be deemed their registered address until another registered address is furnished as required under this Section.

423272 10/15/1998 03:59P DECLARAT DAVIS SILVI
28 of 73 R 366.00 D 0.00 N 0.00 PITKIN COUNTY CO

All notices and demands intended to be served upon the Executive Board shall be sent to the following address or such other address as the Executive Board may designate from time to time by notice to all of the Owners:

> Executive Board
> Aspen Highlands Village Association
> c/o Hines Highlands Limited Partnership
> 426 East Main Street
> Aspen, Colorado 81611

All notices given in accordance with this Section shall be sent by personal delivery, which shall be effective upon receipt; by overnight courier service, which shall be effective one business day following timely deposit, delivery charges prepaid, with the courier service; or regular, registered or certified mail, postage prepaid, which shall be effective three business days after deposit in the U.S. mail.

## ARTICLE 5
## ASSESSMENTS

Section 5.1   Covenant of Personal Obligation of Assessments. Declarant and every other Owner of a Unit or Fractional Ownership Interest, by acceptance of the deed or other instrument of transfer of his Unit or Fractional Ownership Interest (whether or not it shall be so expressed in such deed or other instrument of transfer), is deemed to personally covenant and agree, jointly and severally, with every other Owner and with the Association, and hereby does so covenant and agree to pay to the Association the (a) annual Assessments, (b) special Assessments, and (c) default Assessments applicable to the Owner's Unit or Fractional Ownership Interest. No Owner may waive or otherwise escape personal liability for the payment of the Assessments provided for in this Declaration by not using the Common Area or the facilities contained in the Common Area or by abandoning or leasing his Unit or Fractional Ownership Interest. The Project Associations are hereby empowered and authorized, and upon the request of the Association are hereby required, to levy and collect from Owners of Units or Fractional Ownership Interests within their respective Projects the Assessments owing to the Association as part of such Project Association's own assessment procedures and to promptly remit such Assessments collected by the Project Association to the Association. Assessments shall be levied against each Unit and Fractional Ownership Interest but, upon formation, each Project Association is hereby designated as the agent of each Owner of a Unit within such Project for receipt of notices of Assessments and the collection of Assessments and remittance to the Association. Each Project Association of an Fractional Project is hereby required to levy and collect from Owners of Fractional Ownership Interests within their respective Projects the Assessments owing to the Association as part of such Project Association's own assessment procedures and to promptly remit such Assessments collected by the Project Association to the Association. In the event that the Assessments collected and remitted to the Association by any Project Association are less than the entirety of the Assessments owed by the Owners within such Project Association as a result of the failure of any of such Owners to pay assessments to the Project Association, the Project Association shall provide a written statement of such delinquent Owners to the Association concurrently with submission of the Assessments to the

Association. Notwithstanding any provision of this Section, the Parking Facility Units shall not be subject to Assessment by the Association.

Section 5.2    *Purpose of Assessments*. The Assessments levied by the Association shall be used for the purpose of promoting the health, safety, convenience and general welfare of the Owners and the improvement and maintenance of the Common Area, and of the services and facilities located on the Common Area. Proper uses of the Assessments shall include, but are not limited to, the following:

5.2.1    Improving, repairing, replacing, renovating and maintaining any of the Common Area or other improvements maintained by the Association not made the responsibility of the Owners by Section 3.11 above or other provisions of this Declaration;

5.2.2    Furnishing garbage and trash pickup and water, sewer and other utility services to the Common Area;

5.2.3    Obtaining and maintaining insurance in accordance with the provisions of Article 9 below;

5.2.4    Establishing and maintaining reserves for repairs, replacement, maintenance, taxes, capital improvements and other purposes;

5.2.5    Carrying out all other Functions, powers, rights and duties of the Association specified in the Association Documents; and

5.2.6    Generally, addressing any other expenses necessary to meet the purposes of the Association.

Section 5.3    *Amount of Total Annual Assessments*. The total annual Assessments against all Units shall be based upon the Association's advance budget of the cash requirements needed by it to provide for the administration and performance of its duties during such fiscal year, as approved pursuant to Section 5.5 below, which estimates may include, among other things, the costs associated with the items enumerated in Section 5.2 above, together with any other costs and fees which may reasonably be expected to be incurred by the Association for the benefit of the Owners under or by reason of the Association Documents. In the event of surplus funds remaining after payment of or provision for Common Expenses and any prepayment of or provision for reserves the Executive Board may, within its discretion, apply the surplus funds (a) into reserves, (b) toward the following year's Common Expenses, (c) toward a credit to Owners against future assessments or in the form of a distribution, or (d) any combination of the foregoing.

Section 5.4    *Apportionment of Annual Assessments*.

5.4.1    The total annual Assessment for any fiscal year of the Association shall be assessed to the Owners of the Units and Fractional Ownership Interests in the same proportion that the number of votes in Association matters appurtenant to the Unit or Fractional Ownership Interest bears to the total number of votes entitled to be cast on Association matters

*Hines\Aspen Highlands\dec ahv v11-clean*

23

423272 10/15/1998 03:59P DECLARAT DAVIS SILVI
30 of 73 R 365.00 D 0.00 N 0.00 PITKIN COUNTY CO

by Owners of all Units and Fractional Ownership Interests. No portion of any annual Assessment shall be assessed to the Owners of the Parking Facility Units, and the Owners of Parking Facility Units shall have no liability for such Assessments.

        5.4.2    Any Owner's Assessment obligation computed in accordance with Subsection 5.4.1 above is hereinafter referred to as its "Percentage Assessment Obligation."

        5.4.3    Notwithstanding any terms in this Section to the contrary, (a) the Executive Board, with the assistance of any company providing insurance for the benefit of the Owners under Article 9, may reasonably adjust the allocation to each Owner of the cost of premiums for any insurance carried for, and to be charged to, a particular Owner, as more fully detailed in Article 9; and (b) in the event a specific item in the Association's budget may more directly benefit a certain Project, Unit or group of Units, or use classification (residential, commercial, or otherwise) in excess of its Percentage Assessment Obligation, or in the event the Association has provided services to such Project, Units or classification in excess of those provided to other Projects, Units or classifications within the Property, the rate of Assessments levied with respect to such item or services may be modified to reflect such additional benefit at the sole and exclusive discretion of the Executive Board; provided, however, that such rate of Assessments shall be uniform within each Project, Units or classification benefited and shall not be used to circumvent the Assessment apportionment formulas as set forth in this Declaration.

        5.4.4    The total annual Assessments of the Association shall be apportioned among all Units and Fractional Ownership Interests as provided in this Section.

        Section 5.5    Annual Budget. Within thirty (30) days after the adoption of any proposed budget for the Association, the Executive Board shall mail, by ordinary first-class mail, or otherwise deliver a summary of the budget to all Owners and shall set a date for a meeting to consider ratification of the budget not less than fourteen (14) nor more than sixty (60) days after mailing or other delivery of the summary. Unless at that meeting Owners of a majority of all votes entitled to be cast on Association matters reject the budget, the budget is ratified, whether or not a quorum is present. In the event that the proposed budget is rejected, the periodic budget last ratified in accordance with this Section must be continued until such time as the Owners ratify a subsequent budget proposed by the Executive Board. The Executive Board shall adopt a budget and submit the budget to a vote as provided herein no less frequently than annually. The Executive Board shall levy and assess the Association's annual Assessments in accordance with the annual budget.

        Section 5.6    Special Assessments. In addition to the annual Assessments authorized above, the Executive Board may at any time and from time to time determine, levy and assess in any fiscal year (without the vote of the members of the Association, except as provided in the Act and in this Section below) a special Assessment applicable to that particular fiscal year (and for any such longer period as the Executive Board may determine). Any amounts determined, levied and assessed pursuant to this Section shall be assessed to the Units in the same manner as described with respect to annual Assessments in Section 5.5 above. Special Assessments shall be based on a budget adopted in accordance with Section 5.5 provided that, if necessary, the Association may adopt a new budget pursuant to Section 5.5 prior to levying a special

423272 10/15/1998 03:59P DECLARAT DAVIS SILVI
31 of 73 R 386.00 D 0.00 N 0.00 PITKIN COUNTY CO

Assessment. Such special Assessment(s) shall be due and payable as determined by the Executive Board. No portion of any special Assessment shall be assessed to the Owners of the Parking Facility Units, and the Owners of Parking Facility Units shall have no liability for such Assessments.

Section 5.7   Due Dates for Assessment Payments. Unless otherwise determined by the Executive Board, the annual Assessments and any special Assessments which are to be paid in installments shall be paid quarterly in advance and shall be due and payable to the Association at its office or as the Executive Board may otherwise direct in any Management Agreement, without notice (except for the notices required by this Article), on the first day of each fiscal quarter. If any such installment shall not be paid within fifteen (15) days after it shall have become due and payable, then the Board may assess a "late charge" on the installment in an amount of fifteen percent (15%) of the amount outstanding or such other charge as the Executive Board may fix by rule from time to time as provided in the bylaws of the Association to cover the extra expenses involved in handling such delinquent Assessment installment. An Owner's Assessment shall be prorated if the ownership of a Unit commences or terminates on a day other than the first day or last day, respectively, of a quarter or other applicable payment period.

Section 5.8   Declarant's Obligation to Pay Assessments. Declarant shall be obligated to pay the annual and special Assessments (including installments thereof) on each Unit owned by it which are assessed, due and payable during the period of Declarant's ownership of such Unit.

Section 5.9   Default Assessments. All monetary fines assessed against an Owner pursuant to the Association Documents, or any expense of the Association which is the obligation of an Owner and collected in accordance with this Declaration shall become liens against such Owner's Unit or Fractional Ownership Interest which may be foreclosed or otherwise collected as provided in this Declaration. Notice of the amount and due date of such default Assessment shall be sent to the Owner subject to the Assessment at least thirty (30) days prior to the due date.

Section 5.10   Lien for Assessments. The annual, special and default Assessments (including installments of the Assessments) arising under the provisions of this Declaration (together with any and all interest, costs, late charges, expenses and reasonable attorneys' fees, including legal assistants' fees, which may arise under the provisions of Section 5.11 below) shall be burdens running with, and a perpetual lien in favor of the Association upon, the specific Unit to which such Assessments apply. In the event any such Unit has been further subdivided into Fractional Ownership Interests, these obligations shall be burdens running with, and a perpetual lien in favor of the Association upon, the specific Fractional Ownership Interests comprising such Unit and any reference to a "Unit" in this Section 5.10 and/or in Sections 5.11 through 5.15, inclusive, below shall be deemed to mean, if applicable, the Fractional Ownership Interests comprising the Unit. To further evidence such lien upon a specific Unit, the Association may, but shall not be obligated to, prepare a written lien notice setting forth the description of the Unit, the amount of Assessments on the Unit unpaid as of the date of such lien notice, the rate of default interest as set by the bylaws of the Association and Section 5.11 below, the name of the Owner or Owners of the Unit, and any and all other information that the Association may deem

proper. Any such lien notice shall be signed by a member of the Executive Board, an officer of the Association, or the Managing Agent and shall be recorded in the Office of the Clerk and Recorder of Pitkin County, Colorado. Any such lien notice shall not constitute a condition precedent or delay the attachment of the lien, but such lien is a perpetual lien upon the Unit and attaches without notice at the beginning of the first day of any period for which any Assessment is levied.

Section 5.11   Effect of Nonpayment of Assessments. If any annual, special, or default Assessment (or any installment of the Assessment) is not fully paid within thirty (30) days after the same becomes due and payable, then as often as the same may happen, (i) interest shall accrue at the Maximum Rate on any amount of the Assessment which was not paid within such 30-day period or on the amount of Assessment in default, whichever shall be applicable, accruing from the due date until date of payment, (ii) the Association may declare due and payable all unpaid monthly or other installments of the annual Assessment or any special Assessment otherwise due during the fiscal year during which such default occurred, (iii) the Association may thereafter bring an action at law or in equity, or both, against any Owner personally obligated to pay the same, and (iv) the Association may proceed to foreclose its lien against the particular Unit in the manner and form provided by Colorado law for foreclosure of real estate mortgages.

An action at law or in equity by the Association against an Owner to recover a money judgment for unpaid Assessments (or any installment thereof) may be commenced and pursued by the Association without foreclosing or in any way waiving the Association's lien for the Assessments. If any such Assessment (or installment thereof) is not fully paid when due and if the Association commences such an action (or counterclaims or cross-claims for such relief in any action) against any Owner personally obligated to pay the same, or proceeds to foreclose its lien against the particular Unit, then all unpaid installments of annual and special Assessments and all default Assessments (including any such installments or Assessments arising during the proceedings of such action or foreclosure proceedings), any late charges under Section 5.7 above, any accrued interest under this Section, the Association's costs, expenses and reasonable attorneys' fees (including legal assistants' fees) incurred for any such action and/or foreclosure proceedings shall be taxed by the court as part of the costs of any such action or foreclosure proceedings and shall be recoverable by the Association from any Owner personally obligated to pay the same and from the proceeds from the foreclosure sale of the particular Unit in satisfaction of the Association's lien.

Foreclosure or attempted foreclosure by the Association of its lien shall not be deemed to estop or otherwise preclude the Association from again foreclosing or attempting to foreclose its lien for any subsequent Assessments (or installments thereof) which are not fully paid when due or for any subsequent default Assessments. The Association shall have the power and right to bid in or purchase any Unit at foreclosure or other legal sale and to acquire and hold, lease or mortgage the Unit, and to convey, or otherwise deal with the Unit acquired in such proceedings.

Section 5.12   Successor's Liability for Assessments. Notwithstanding the personal obligation of each Owner of a Unit to pay all Assessments on the Unit, and notwithstanding the Association's perpetual lien upon a Unit for such Assessments, all successors in interest to the

26

*Hines\Aspen Highlands\dec ahv v11-clean*

fee simple title of a Unit, except as provided in Section 5.13 and Section 5.14 below, shall be jointly and severally liable with the prior Owner or Owners of the Unit for any and all unpaid Assessments, interest, late charges, costs, expenses and attorneys' fees against such Unit, without prejudice to any such successor's right to recover from any prior Owner any amounts paid thereon by such successor. However, such successor in interest shall be entitled to rely upon the existence and status of unpaid Assessments, interest, late charges, costs, expenses and attorneys' fees as shown upon any certificate issued by or on behalf of the Association to such named successor in interest pursuant to the provisions of Section 5.14 below.

Section 5.13   Waiver of Homestead Exemption; Subordination of Association's Lien for Assessments. By acceptance of the deed or other instrument of transfer of a Unit, each Owner irrevocably waives the homestead exemption provided by Part 2, Article 41, Title 38, Colorado Revised Statutes, as amended. The Association's perpetual lien for Assessments shall be superior to all other liens and encumbrances except real property ad valorem taxes and special assessment liens duly imposed by a Colorado governmental or political subdivision or special taxing district, or any other liens made superior by statute. All other persons not holding liens described above and obtaining a lien or encumbrance on any Unit after the recording of this Declaration shall be deemed to consent that any such lien or encumbrance shall be subordinate and inferior to the Association's future liens for Assessments, interest, late charges, costs, expenses and attorneys' fees, as provided in this Article, whether or not such consent is specifically set forth in the instrument creating any such lien or encumbrance.

A sale or other transfer of any Unit, including but not limited to a foreclosure sale, except as provided in Section 5.14 below, shall not affect the Association's lien on such Unit for Assessments, interest, late charges, costs, expenses and attorneys' fees due and owing prior to the time such purchaser acquires title and shall not affect the personal liability of each Owner who shall have been responsible for the payment thereof. Further, no such sale or transfer shall relieve the purchaser or transferee of a Unit from liability for, or the Unit from the lien of, any Assessments made after the sale or transfer.

Section 5.14   Statement of Status of Assessments. Upon fourteen (14) calendar days' written request to the Managing Agent, Executive Board or the Association's registered agent and payment of a reasonable fee set from time to time by the Executive Board, any Owner or prospective purchaser of a Unit shall be furnished, by personal delivery or by certified mail, first class postage prepaid, return receipt requested, to the inquiring party (in which event the date of posting shall be deemed the date of delivery), a statement of the Owner's account setting forth:

5.14.1   The amount of any unpaid Assessments, interest, late charges, costs, expenses and attorneys' fees then existing against a particular Unit;

5.14.2   The amount of the current installments of the annual Assessment and the date that the next installment is due and payable;

5.14.3   The date of the payment of any installments of any special Assessments then existing against the Unit; and

27

Hines\Aspen Highlands\dec ahv v11-clean



423272 10/15/1998 03:59P DECLARAT DAVIS SILVI
34 of 73 R 366.00 D 0.00 N 0.00 PITKIN COUNTY CO

5.14.4   Any other information deemed proper by the Association, including the amount of any unpaid lien created or imposed under the terms of the Declaration and collected by the Association as permitted under this Declaration.

Upon the issuance of such a certificate signed by a member of the Executive Board, by an officer of the Association, or by a Managing Agent, the information contained therein shall be conclusive upon the Association as to the person or persons to whom such certificate is addressed and who rely on the certificate in good faith. Unless such a statement of status of Assessments is delivered as described above within said fourteen (14) calendar day period, the Association shall have no right to assert a priority lien upon the Unit over the inquiring party's interest for unpaid Assessments which were due as of the date of the request.

Section 5.15   Liens.   Except for annual, special and default Assessment liens as provided in this Declaration, mechanics' liens (except as provided in Article 10 below), tax liens and judgment liens and other liens validly arising by operation of law, there shall be no other liens obtainable against the Common Area.

## ARTICLE 6
## DESIGN REVIEW

Section 6.1   Design Review Board and Guidelines.   There is hereby established a Design Review Board (the "Design Review Board"), which will be responsible for the establishment and administration of Design Guidelines to facilitate the purpose and intent of this Declaration.

Section 6.2   Purpose and General Authority.   The Design Review Board will review, study and either approve, conditionally approve or reject proposed improvements on the Property, all in compliance with this Declaration and as further set forth in the Design Guidelines and such rules and regulations as the Design Review Board may establish from time to time to govern its proceedings. No improvement will be erected, placed, reconstructed, replaced, repaired or otherwise altered, nor will any construction, repair or reconstruction be commenced within Aspen Highlands Village until plans for the improvements shall have been approved by the Design Review Board; provided, however, that improvements that are completely within a dwelling structure may be undertaken without such approval. In addition, the Design Review Board shall have the power and the obligation to determine disputes between the Owners of Village Homesites served by a common driveway and encumbered by a Declaration of Driveway Easement with respect to the matters described, and subject to the terms and conditions contained, in such Declaration of Driveway Easement.

Section 6.3   Board Discretion.   The Design Review Board will exercise its best judgment to see that all improvements conform and harmonize with any existing structures as to external design, quality and type of construction, seals, materials, color, location on the building site, height, grade and finished ground elevation, landscaping and the schemes and aesthetic considerations set forth in the Design Guidelines and other Association Documents. The Design Review Board, in its sole discretion, may excuse compliance with such requirements as are not necessary or appropriate in specific situations and may permit compliance with different or

28

*Hines\Aspen Highlands\dec ahv v11-clean*

423272 10/15/1998 03:59P DECLARAT DAVIS SILVI
35 of 73 R 366.00 D 0.00 N 0.00 PITKIN COUNTY CO

alternative requirements. The approval by the Design Review Board of improvements on the Property shall carry no precedential weight when reviewing subsequent requests for approvals and the Design Review Board shall not be required to approve requests for the same or similar improvements.

Section 6.4    Design Guidelines.  The Design Guidelines may include, among other things, at the sole discretion of the Design Review Board, the restrictions and limitations set forth below:

6.4.1    Procedures and necessary fees for making application to the Design Review Board for design review approval, including the documents to be submitted and the time limits in which the Design Review Board must act to approve or disapprove any submission.

6.4.2    Time limitations for the completion, within specified periods after approval, of the improvements for which approval is required under the Design Guidelines.

6.4.3    Designation of the building site on a Village Homesite or Project Lot and establishing the maximum developable area of the Village Homesite or Project Lot to the extent not inconsistent with the PUD Plan.

6.4.4    Minimum and maximum square foot areas of living space that may be developed on any Village Homesite, height restrictions on buildings to be constructed on any Village Homesite and setbacks of buildings to be constructed on any Village Homesite, to the extent not less restrictive than the PUD Plan. The Design Review Board shall not have the authority to restrict the square foot areas of living space, height of buildings or setbacks with respect to the development of the Project Lots, which shall be governed solely by the terms, conditions and restrictions contained in the PUD Plan as the same may be amended from time to time.

6.4.5    Landscaping regulations, with limitations and restrictions prohibiting the removal or requiring the replacement of existing trees, the type and use of plants, and other practices benefiting the protection of the environment, conservation of water, aesthetics and architectural harmony of Aspen Highlands Village.

6.4.6    General guidelines for the construction, reconstruction, refinishing or alteration of any improvement, including any plan to excavate, fill or make any other temporary or permanent change in the natural or existing surface contour or drainage or any installation or utility lines or conduits on the Property, addressing matters such as loading areas, waste storage, trash removal, equipment and materials storage, grading, transformers and meters.

The Design Review Board may amend, repeal and augment the Design Guidelines from time to time, in the Design Review Board's sole discretion. The Design Guidelines will be binding on all Owners and other persons governed by this Declaration. Notwithstanding the foregoing, the Design Review Board is empowered in its discretion to grant variances from the requirements of the Design Guidelines under unique or unusual circumstances.

Section 6.5   Design Review Board Membership. The Design Review Board will be composed of not less than three (3) persons nor more than five (5) persons. The Design Review Board need not include any member of the Association. All of the members of the Design Review Board will be appointed, removed and replaced by Declarant, in its sole discretion, until all the Units comprising the Property are sold unless required otherwise by the Act, or such earlier time as Declarant may elect to voluntarily waive this right by written notice to the Association, and at that time the Executive Board will succeed to Declarant's right to appoint, remove or replace the members of the Design Review Board.

Section 6.6   Organization and Operation of Design Review Board.

6.6.1   The term of office of each member of the Design Review Board, subject to Section 6.5, will be one year, commencing January 1 of each year, and continuing until his successor shall have been appointed. Should a Design Review Board member die, retire or become incapacitated, or in the event of a temporary absence of a member, a successor may be appointed as provided below.

6.6.2   So long as Declarant appoints the Design Review Board, Declarant will appoint the chairman. At such time as the Design Review Board is appointed by the Executive Board, the chairman will be elected annually from among the members of the Design Review Board by a majority vote of such members. In the absence of a chairman, the party responsible for appointing or electing the chairman may appoint or elect a successor, or if the absence is temporary, an interim chairman.

6.6.3   The Design Review Board chairman will take charge of and conduct all meetings and will provide reasonable notice to each member of the Design Review Board prior to any meeting. The notice will set forth the time and place of the meeting, and notice may be waived by any member.

6.6.4   The affirmative vote of a majority of the members of the Design Review Board will govern its actions and be the act of the Design Review Board.

6.6.5   The Design Review Board may avail itself of other technical and professional advice and consultants as it deems appropriate, and the Design Review Board may delegate its plan review responsibilities, except final review and approval, to one or more of its members or to consultants retained by the Design Review Board. Upon that delegation, the approval or disapproval of plans and specifications by such member or consultant will be equivalent to approval or disapproval by the entire Design Review Board.

Section 6.7   Expenses. Except as provided in this Section below, all expenses of the Design Review Board will be paid by the Association and will constitute a Common Expense. The Design Review Board will have the right to charge a fee for each application submitted to it for review, in an amount which may be established by the Design Review Board from time to time, and such fees will be collected by the Design Review Board and remitted to the Association to help defray the expenses of the Design Review Board's operation. Further, the Design Review Board may retain the services of a third party consultant to assist the Design

423272 10/15/1998 03:59P DECLARAT DAVIS SILVI
37 of 73 R 366.00 D 0.00 N 0.00 PITKIN COUNTY CO