Review Board in reviewing a particular application. In such event, the Design Review Board may charge the applicant for the professional fees incurred in retaining such consultant.

Section 6.8   <u>Other Requirements</u>. Compliance with the Association's design review process is not a substitute for compliance with County of Pitkin building, zoning and subdivision regulations, and each Owner is responsible for obtaining all approvals, licenses and permits as may be required prior to commencing construction.

Further, the establishment of the Design Review Board and procedures for architectural review will not be construed as changing any rights or restrictions upon Owners to maintain and repair their Units and improvements as otherwise required under the Association Documents.

Aspen Highlands Village is subject to certain regulations and requirements of Pitkin County, including, without limitation, those contained in the PUD Plan and the documents and resolutions approving the Aspen Highlands Village Planned Unit Development. All Owners are hereby advised of such governmental regulations, and that they may have the effect of imposing upon the Units certain restrictions (including, without limitation, restrictions relating to landscaping, tree removal, design of improvements and the like) which may or may not be consistent with the provisions of this Declaration or the Design Guidelines. In the event of any conflict between provisions of this Declaration, the Design Guidelines and the governmental regulations described herein, the more restrictive provision shall control.

Section 6.9   <u>Limitation of Liability</u>. The Design Review Board will use reasonable judgment in accepting or disapproving all plans and specifications submitted to it. Neither the Design Review Board nor any individual Design Review Board member will be liable to any person for any official act of the Design Review Board in connection with submitted plans and specifications, except to the extent the Design Review Board or any individual Design Review Board member acted with malice or wrongful intent. Approval by the Design Review Board does not necessarily assure approval by the appropriate governmental body or commission for the County of Pitkin. Notwithstanding that the Design Review Board has approved plans and specifications, neither the Design Review Board nor any of its members will be responsible or liable to any Owner, developer or contractor with respect to any loss, liability, claim or expense which may arise by reason of such approval of the construction of the improvements. Neither the Executive Board, the Design Review Board, nor any agent thereof, nor Declarant, nor any of its partners, employees, agents or consultants will be responsible in any way for any defects in any plans or specifications submitted, revised or approved in accordance with the provisions of the Association Documents, nor for any structural or other defects in any work done according to such plans and specifications. In all events the Design Review Board will be defended and indemnified by the Association in any such suit or proceeding which may arise by reason of the Design Review Board's decisions. The Association, however, will not be obligated to indemnify each member of the Design Review Board to the extent that any such member of the Design Review Board is adjudged to be liable for malice or wrongful intent in the performance of his duty as a member of the Design Review Board, unless and then only to the extent that the court in which such action or suit may be brought determines upon application that, despite the adjudication of liability but in view of all circumstances of the case, such person is fairly and reasonably entitled to indemnification for such expense as such court shall deem proper.

Section 6.10  Enforcement.

    6.10.1  Any member or authorized consultant of the Design Review Board, or any authorized officer, Director, employee or agent of the Association may enter upon any Unit and the common areas or common elements of a Project at any reasonable time after notice to the Owner, without being deemed guilty of trespass, in order to inspect improvements constructed or under construction on the Unit and the common areas or common elements of a Project to determine whether the improvements have been or are being built in compliance with the Association Documents and the plans and specifications approved by the Design Review Board.

    6.10.2  Before any Unit may be occupied, and if required by the Design Guidelines, the Owner of the Unit will be required to obtain a temporary certificate of compliance issued by the Design Review Board indicating substantial completion of the improvements in accordance with the plans and specifications approved by the Design Review Board, and imposing such conditions for issuance of a final certificate of compliance issued by the Design Review Board as the Design Review Board may determine appropriate in its reasonable discretion.  Without limiting the generality of the preceding sentence, the Design Review Board may require that the Owner deposit with the board such sums as may be necessary to complete the construction and landscaping by a specified date.  The Design Review Board may require that such deposit be made at any time, including, without limitation, prior to plan approval and commencement of construction.  If the construction and landscaping are not completed as scheduled, the Design Review Board may apply the deposit to cover the cost of completing the work and enforce such other remedies as are available to the Association for the failure of the Owner to comply with these covenants, including without limitation the remedies set forth in this Section.

    6.10.3  Upon completion of construction, the Design Review Board will issue an acknowledged final certificate of compliance setting forth generally whether, to the best of the Design Review Board's knowledge, the Unit or Project is in compliance with the terms and conditions of the Design Guidelines.

    6.10.4  Every violation of these covenants is hereby declared to be and to constitute a nuisance, and every public or private remedy allowed for such violation by law or equity against a Owner will be applicable.  Without limiting the generality of the foregoing, these covenants may be enforced as provided below:

    6.10.4.1  The Design Review Board may adopt a schedule of fines for failure to abide by the Design Review Board rules and the Design Guidelines, including fines for failure to obtain any required approval from the Design Review Board.

    6.10.4.2  The Association, upon request of the Design Review Board and after reasonable notice to the offender and, if different, to the Owner, may enter upon any Unit or Project at any reasonable time after notice to the Owner or applicable Project Association, without being deemed guilty of trespass, and remove any improvement constructed, reconstructed, refinished, altered or maintained in violation of these covenants. The Owner of the improvement will immediately reimburse the Association for all expenses incurred in connection

*Hines\Aspen Highlands\dec ahv v11-clean*

32



with such removal. If the Owner fails to reimburse the Association within thirty (30) days after the Association gives the Owner notice of the expenses, the sum owed to the Association will bear interest at the Maximum Rate from the date of the advance by the Association through the date of reimbursement in full, and all such sums and interest will be a default Assessment enforceable as provided in Article 5.

      6.10.5    All improvements commenced on the Village Homesites will be prosecuted diligently to completion and will be completed within the period of time prescribed for completion in the Design Guidelines, unless an exception is granted in writing by the Design Review Board. All improvements commenced on the Project Lots and on the Parking Facility Lot will be prosecuted diligently to completion and will be completed within the time period prescribed in writing by the Design Review Board, if any. If an improvement is commenced and construction is then abandoned for more than ninety (90) consecutive days, or if construction is not completed within the required period of time, if any, then the Association may impose a fine in an amount as provided in the Design Guidelines to be charged against the Owner of the Unit or Project until construction is resumed, or the improvement is completed, as applicable, unless the Owner can prove to the satisfaction of the Executive Board that such abandonment is for circumstances beyond the Owner's control. Such charges will be a default Assessment and lien as provided in Article 5.

      Section 6.11   <u>Binding Effect</u>. The actions of the Design Review Board in the exercise of its discretion by its approval or disapproval of plans and other information submitted to it or with respect to any other matter before it, will be conclusive and binding on all interested parties.

## ARTICLE 7
## EASEMENTS

      Section 7.1   <u>Easement of Enjoyment</u>. Every Owner shall have a nonexclusive easement for the use and enjoyment of the Common Area, which shall be appurtenant to and shall pass with the title to every Unit and Fractional Ownership Interest, subject to the easements set forth in this Article. Such easement is subject to such reasonable regulation on access and use imposed by the Association, including, without limitation, the right of the Association to restrict the use and enjoyment of any Common Area by Owners of Fractional Ownership Interests to the time period covered by the applicable Fractional Ownership Interest and so long as such Owners in fact occupy the Unit which is subject to the Fractional Ownership Interest during such period.

      Section 7.2   <u>Delegation of Use</u>. Any Owner may delegate, in accordance with the Association Documents, the Owner's right of enjoyment in the Common Area to the Owner's Guests or Lessees.

      Section 7.3   <u>Recorded Easements</u>. The Property shall be subject to any easements or rights of way as shown on any recorded plat affecting the Property, and as shown on the recorded Maps, and as reserved or granted under the Project Declarations. The recording data for recorded easements, rights of way, licenses or other matters appurtenant to or included in the Property or to which any parts of the Property may become subject is set forth on the attached Exhibit C.

33

*Hines\Aspen Highlands\dec ahv v11-clean*



Section 7.4 <u>Easements for Encroachments</u>. The Common Area, and all portions of it, are subject to easements hereby created for encroachments of any portion of a Unit, Project or the Common Area as follows:

7.4.1 In favor of the Association so that it shall have no legal liability when any part of the Common Area encroaches upon the common area of a Project;

7.4.2 In favor of each Project Association so that the Project Association shall have no legal liability when any part of any common area or common elements of a Project encroaches upon the Common Area;

7.4.3 In favor of the Project Associations and the Association for the existence, maintenance and repair of such encroachments.

Encroachments referred to in this Section include, but are not limited to, encroachments of improvements located on the Common Area onto Project Lots, the Parking Facility Lot or common area or common elements of Projects, encroachments of overhangs or other portions of Buildings or other improvements located on the Project Lots or the Parking Facility Lot onto the Common Area, and other encroachments caused by error or variance from the original plans in the construction of the Projects, by error in the Map, by settling, rising, or shifting of the earth, or by changes in position caused by repair or reconstruction of any part of the Projects. Such encroachments shall not be considered to be encumbrances upon any Unit, any part of the Projects or the Common Area.

Section 7.5 <u>Utility Easements</u>. Declarant reserves for itself and its successors and assigns who are specifically assigned this right and easement and hereby grants to the Association and its officers, agents, employees, successors and assigns a general easement on, over, under, above and through (i) those portions of each Lot, Block and Tract shown on the Plat being ten feet in width and immediately adjacent and parallel to all property lines of such Lot, Block and Tract (see Typical Easement and Building Envelope Detail on the Plat), (ii) those portions of the Property designated "Utility Easement", "Central Utility Easement," "Access Easement," "Ski Easement," "Private Ski Easement," "Sewer Easement," "Water Easement" and "Common Area" on the Plat and (iii) all roadways, Lots, Blocks and Tracts depicted on the Plat, excluding areas within any designated building envelope, for the purpose of the following, and without limitation: (A) using, installing, constructing, maintaining, improving, repairing and replacing drainage, water and utility facilities of any kind or nature whatsoever, including but not limited to, storm drainage facilities, fire hydrants and related fire protection devices, sanitary sewer lines, water lines, snowmaking lines, snowmelt system lines, irrigation lines, systems and facilities, underground electric lines, gas lines, telephone lines, cable television lines, fiber optic lines, and other communication facilities, (B) drainage of water flowing from other lands, (C) water storage and distribution facilities and (D) vehicular access for installation and maintenance of such utilities, together with a perpetual right of ingress and egress to and from such Easement (collectively, hereinafter referred to as "Utility Purposes"). Declarant reserves the right, but has no obligation, to record a document specifying the boundaries of specific easements within the above-described easement areas at any time or from time to time after improvements related to such Utility Purposes have been constructed. Should any utility company furnishing a service

34


423272 10/15/1998 03:59P DECLARAT DAVIS SILVI
41 of 73 R 366.00 D 0.00 N 0.00 PITKIN COUNTY CO

covered by the general easement request a specific easement by separate recordable document, Declarant or the Executive Board shall have, and are hereby given, the right and authority to grant such easement upon, across, over, or under any part or all of the Property without conflicting with the terms hereof, provided that Declarant or the Executive Board shall give prompt notice of any such specific easement granted to the Owners of any Unit affected thereby. The easements provided for in this Section shall in no way affect, avoid, extinguish or modify any other recorded easement on the Property.

Section 7.6    Reservation of Easements, Exceptions and Exclusions. Declarant reserves for itself and its successors and assigns who are specifically assigned this right and easement and hereby grants to the Association and its successors and assigns the concurrent right to establish from time to time by declaration or otherwise, utility and other easements for purposes including but not limited to streets, paths, walkways, drainage, recreation areas, parking areas, ducts, shafts, flues and conduit installation areas, consistent with the ownership of the Property for the best interest of all of the Owners and the Association, in order to serve all the Owners.

Section 7.7    Emergency Access Easement. A general easement is hereby granted to all police, sheriff, fire protection, ambulance and all other similar emergency agencies or persons to enter upon all streets and upon the Property in the proper performance of their duties.

Section 7.8    Association Easement. An easement is hereby granted to the Association and any Managing Agent and their respective officers, agents, employees and assigns upon, across, over, in and under the Property and a right to make such use of the Property as may be necessary or appropriate to perform the duties and functions which they are obligated or permitted to perform pursuant to this Declaration.

Section 7.9    Drainage Easement. An easement is hereby reserved to Declarant and its successors and assigns who are specifically assigned this right and easement and granted to the Association and its officers, agents, employees, successors and assigns to enter on, over, under, above, across and through those portions of the Property designated "Drainage Easement" on the Plat for the purposes of the following, and without limitation: using, installing, improving, maintaining, repairing and replacing drainage facilities of any kind or nature, including but not limited to, storm drainage, and the drainage of waters and debris flowing from other lands, together with a perpetual right of ingress and egress to and from such easements.

Section 7.10   Easements of Access for Repair, Maintenance and Emergencies. Some portions of the Common Area or the facilities serving same are or may be located on or within certain Units or common area or common elements of certain Projects, or may be conveniently accessible only through certain Units or common area or common elements of certain Projects. The Association shall have the irrevocable right to have access to each Project Lot, the Parking Facility Lot and each Unit and to all common elements or common areas of any Project or the Parking Facility from time to time during such reasonable hours as may be necessary for the maintenance, repair, removal, or replacement of any of the Common Area therein or accessible therefrom or for making emergency repairs therein necessary to prevent damage to the Common Area or to any Unit. Subject to the provisions of Section 3.11 above, damage to the interior of any part of a Unit or Project resulting from the maintenance, repair, emergency repair, removal,

35

423272 10/15/1998 03:59P DECLARAT DAVIS SILVI
42 of 73 R 366.00 D 0.00 N 0.00 PITKIN COUNTY CO

or replacement of any of the Common Area or as a result of emergency repair at the instance of the Association shall be a Common Expense.

Section 7.11  Declarant's Rights Incident to Construction and Marketing. Declarant, for itself and its successors and assigns who are specifically assigned this right and easement, hereby retains a right and easement of ingress and egress over, in, upon, under and across the Property and the right to store materials on the Property and to make such other use of the Property as may be reasonably necessary or incident to the complete construction and sale of the Units and the Projects, including, but not limited to, construction trailers, temporary construction offices, sales offices and directional and marketing signs. Declarant may designate a portion of the Common Area for the foregoing construction and other purposes in connection with the development of a particular Unit or Project. Declarant, for itself and its successors and assigns, hereby retains a right to maintain any Unit or Units as sales offices, management offices or model residences so long as Declarant, or its successors or assigns, continues to be an Owner of a Unit. The use by Declarant of any Unit as a model residence, office or other use shall not affect the Unit's designation on the Map as a separate Unit. Declarant further reserves exclusive easement rights over and across the Property for the purpose of marketing, sales and rental of Units or of other projects developed or marketed by Declarant or its affiliates from time to time, including, without limitation, the right to show the Property and to display signs and other promotional devices. Declarant also reserves the right to lease unsold Units. None of the foregoing rights shall be exercised by Declarant in such a way as to unreasonably interfere with the occupancy, use, enjoyment or access by any Owner, Lessee or Guest.

Section 7.12  Governmental Requirements. Declarant hereby reserves the right to grant such easements and rights-of-way across the Property, from time to time, as may be required by any government agency. Such easements and rights-of-way shall specifically include, but not be limited to, any public rights-of-way and any environmental easements required by federal, state or local environmental agencies, for so long as the Declarant holds an interest in any Unit subject to this Declaration.

Section 7.13  Declarant Easements. Declarant reserves unto itself, its successors, assigns who are specifically assigned this right and easement, Lessees and Guests, for so long as it holds any interest in any Unit, the same easement rights granted to Owners under this Declaration and specific easement rights over and across the Property as it may deem necessary for its use from time to time.

Section 7.14  Right of Declarant and Association to Own Units and to Use Common Area. An easement is hereby reserved by Declarant for itself and its successors and assigns who are specifically assigned this right and easement and granted to the Association and its officers, agents, employees, successors and assigns to maintain offices, storage areas, conference areas and recreational areas for use by the Association within the Common Area, subject to all rules and regulations established under this Declaration. The Association shall also have the right (but not the obligation) to purchase and own any Unit for the purpose of maintaining an office for the Association or for any other use which the Association determines is consistent with the operation of Aspen Highlands Village. The costs and carrying charges incurred by the Association in purchasing and owning any such Unit shall be part of the Common Expenses.

36

*Hines\Aspen Highlands\dec ahv v11-clean*



Section 7.15  **Remodeling Easement.** Declarant, for itself and its successors and assigns who are specifically assigned this right and easement, including Owners, retains a right and easement in and about the Buildings for the construction and installation of any duct work, additional plumbing, or other additional services or utilities serving the Common Area in connection with the maintenance, repair, improvement or alteration of the Common Area, including the right of access to such areas of the Property as are reasonably necessary to accomplish such improvements. In the event of a dispute among Owners with respect to the scope of the easement reserved in this Section, the decision of the Executive Board shall be final.

Section 7.16  **Ski Company Easement.** An easement is hereby granted to the Ski Company and its officers, agents, employees and assigns upon, across, over, in and under the Common Area and a right to make such use of the Common Area as may be reasonably necessary or appropriate to exercise the rights which they are granted pursuant to Section 3.30 of this Declaration.

Section 7.17  **Easements Deemed Created.** All conveyances of Units hereafter made, whether by Declarant or otherwise, shall be construed to grant and reserve the easements contained in this Article, even though no specific reference to such easements or to this Article appears in the instrument for such conveyance.

## ARTICLE 8
## RESTRICTIONS ON USE

Section 8.1  **Land Use Restrictions.** In addition to the restrictions found in this Article 8, all or any portion of the Property shall be further restricted in its use, density or design according to the PUD Plan; any supplemental declarations of land use restrictions for Aspen Highlands Village recorded in the Office of the Clerk and Recorder of Pitkin County, Colorado, if any such supplemental declarations are recorded prior to the time Declarant transfers or conveys any such Property to the Association or to any third party; and the rules and regulations of the Association. Each Owner shall comply with all other terms, provisions, covenants, conditions, restrictions, easements and reservations on the Owner's part to be complied with under this Declaration.

Section 8.2  **Use Limitations.** All Residential Units may be used only for dwelling or lodging purposes and typical residential activities incident thereto in compliance with the PUD Plan and all applicable zoning regulations.

Section 8.3  **Maintenance of Property.** Units, except for any portion of the Property then undergoing major construction, including all improvements on such portion of the Property, shall be kept and maintained by the Owner thereof in a clean, safe, attractive and sightly condition and in good repair, and no trash, litter, junk, boxes, containers, bottles, cans, implements, machinery, lumber or other building materials shall be permitted to remain exposed upon any Unit or common area of a Project so that they are visible from, or are a nuisance in any way to, any neighboring Unit or any road.

423272 10/15/1998 03:59P DECLARAT DAVIS SILVI
44 of 73 R 366.00 D 0.00 N 0.00 PITKIN COUNTY CO

Section 8.4   Blasting. If any blasting is to occur on the Property, both Declarant and the Design Review Board will be informed far enough in advance to allow them to make such investigation as they deem necessary to confirm that appropriate protective measures have been taken prior to the blasting. Notwithstanding the foregoing, no approval of any blasting by Declarant or the Design Review Board will in any way release the person conducting the blasting from any and all liability in connection with the blasting, nor will any such approval in any way be deemed to make Declarant, the Association and/or the Design Review Board liable for damages which may occur from blasting, and the person doing the blasting and the Owner of the Unit upon which such blasting occurs will defend and hold harmless and hereby indemnifies Declarant, the Association and the Design Review Board from any such expense or liability. Declarant, the Association and/or the Design Review Board may impose any reasonable conditions and restrictions, including time and date restrictions and insurance requirements, on all blasting.

Section 8.5   Water and Sanitation. Each structure designed for occupancy will connect, prior to occupancy, with water and sanitation facilities as are made available from time to time by the District, the Aspen Consolidated Sanitation District, the City of Aspen Water Department or any other approved water and sanitation supplier.

Section 8.6   Use of Property During Construction. It shall be expressly permissible and proper for Declarant and any Owner acting with the prior written consent of the Design Review Board, and their respective employees, agents, independent contractors, successors and assigns involved in the construction of improvements on, or the providing of utility service to, the Property, to perform such activities and to maintain upon portions said Owners' property as they deem necessary such facilities as may be reasonably required, convenient, necessary or incidental to such construction and development of the Property. This permission specifically includes, without limiting the generality of the foregoing, maintaining storage yards, construction yards, portable toilets, equipment and signs. However, no activity by an Owner will be performed and no facility will be maintained by an Owner on any portion of the Property in such a way as to unreasonably interfere with the use or access of any other Owner or its Guests or Lessees to such Owner's Unit. If any Owner's use under this provision is deemed objectionable by the Design Review Board, then the Design Review Board, in its sole discretion, may withdraw this permission.

Section 8.7   No Noxious or Offensive Activity. No noxious or offensive activity shall be carried on upon any Unit or the Common Area nor shall anything be done or placed on any Unit, the common area or common elements of any Project or the Common Area which is or may become a nuisance. As used herein, the term "noxious or offensive activity" shall not include any activities of an Owner, Declarant or their respective designees which are reasonably necessary to the development of and construction on the Property so long as such activities do not violate Association Documents or the statutes, rules or regulations of any governmental authority having jurisdiction with respect thereto and do not unreasonably interfere with any Owner's use of its Unit or with any Owner's ingress and egress to or from its Unit and a roadway. Further, the reasonable odors and noises associated with the commercial use of the Commercial Units and the reasonable odors and noises associated with the reasonable use of the Common Area shall not constitute noxious or offensive activity.

38

423272 10/15/1998 03:59P DECLARAT DAVIS SILVI

Section 8.8  No Harassment of Wildlife. No harassment of wildlife shall be permitted. With the exception of bird feeders, the feeding, baiting, salting or other means of attracting wildlife to individual Units, common area of Projects or Common Area shall be prohibited.

Section 8.9  No Hazardous Activities. No activities shall be conducted on any Unit, the common area of any Project or the Common Area and no improvements constructed on any part of Property which are or might be unsafe or hazardous to any person or property. Without limiting the generality of the foregoing, no firearms shall be discharged upon any portion of the Property, and no open fires shall be lighted or permitted on any portion of the Property except in a contained barbecue unit while attended and in use for cooking purposes or within a safe and well-designed interior wood or gas burning device (except campfires or picnic fires on Property designated for such use by Declarant or by the Association and controlled and attended fires authorized in writing by Declarant or the Association and required for clearing or maintenance of land).

Section 8.10  No Unsightliness. No unsightliness shall be permitted on any Unit or the common areas or common elements of any Project. Without limiting the generality of the foregoing:

8.10.1  All unsightly structures, facilities, equipment, objects and conditions shall be kept within an enclosed structure at all times;

8.10.2  Motor vehicles classed by manufacturer rating as exceeding three-quarter ton, mobile homes, travel trailers, tent trailers, trailers, trucks (except pickup trucks used for personal, and not commercial, transport), snowmobiles, golf carts, boats, boat trailers, tractors, detached campers, camper shells, snow removal equipment and garden or maintenance equipment shall be kept in an enclosed structure at all times, except when in actual use;

8.10.3  Refuse, garbage and trash shall be kept in a covered container at all times and any such container shall be kept within an enclosed structure;

8.10.4  Service areas and facilities for hanging, drying or airing clothing or fabrics shall be kept within an enclosed structure;

8.10.5  Pipes for water, gas, sewer, drainage or other purposes, wires, cables, poles, antennas and other facilities for the transmission or reception of audio or visual signals or electricity, utility meters or other utility facilities, gas, oil, water or other tanks, and sewage disposal systems or devices shall be kept and maintained within an enclosed structure or below the surface of the ground, and satellite dishes shall be appropriately regulated by the Design Review Board as permitted by applicable law; and

8.10.6  No lumber, grass, shrub or tree clippings or plant waste, compost, metals, bulk materials or scrap or refuse or trash or unused items of any kind shall be kept, stored or allowed to accumulate on any Unit or the common areas or common elements of any Project.

All structures, including tennis courts, outdoor swimming pools, outdoor hot tubs or jacuzzis, shall comply with the Design Guidelines and the PUD Plan as in effect from time to

*Hines\Aspen Highlands\dec ahv v11-clean*

39

time. The Design Review Board shall have the power to grant a variance from the provisions of this Section from time to time as it deems necessary or desirable.

Section 8.11    Lights, Sounds and Odors.   All exterior lighting of improvements and grounds on the Property will be subject to regulation by the Design Review Board and the provisions of the PUD Plan. No light shall be emitted from any Unit or Project which is unreasonably bright or causes unreasonable glare or shines directly onto an adjacent Unit; no sound shall be emitted from any Unit or Project which is unreasonably loud or annoying; and no odor shall be emitted from any Unit or Project which is noxious or offensive to others. Notwithstanding the foregoing, any lights, sounds or odors that are emitted as a result of any activities related to the operation of the Ski Area, gondolas and ski lifts shall be exempt from the application of this Section. Further, both residential uses and commercial uses are contemplated within Aspen Highlands Village, and any functions, activities and uses permitted under the PUD Plan, other zoning laws, or rules or regulations applicable to the Property are expressly allowed, subject to the restrictions set forth in this Article 8 and by any Project Association. Among the uses permitted are restaurant/bars, shops, outdoor cooking/dining, lodges and dormitories and the reasonable odors and noises, amplified and unamplified music, and vibrations deriving from any permitted facilities are expressly allowed; provided, however that no odor, noise, music or vibration shall have an unreasonable impact on any other Owner or such Owner's Guests or Lessees. No rules and regulations shall be adopted which unfairly discriminate against any use permitted within a Project.

Section 8.12    Restriction on Animals.   No animals of any kind shall be raised, bred or kept on any Unit or Project except domestic cats, dogs or other household pets permitted by the Association (up to a maximum of two (2) such animals per Unit) so long as they are (i) maintained in accordance with this Declaration, the rules and regulations of the Association and any other Association Document, and (ii) not a nuisance or kept, bred or maintained for any commercial purposes. No person shall allow any dog owned or controlled by such person to roam within Aspen Highlands Village unattended. Dogs shall either be contained indoors or confined within the boundaries of a Unit in a manner approved by the Association and the Design Review Board. At all other times, dogs shall be on a leash and under the direct control and supervision of their owners. Notwithstanding the foregoing, no pets shall be permitted in any Unit constructed on the Project Lot identified as Block D on the Plat or any portion thereof created by subdivision or otherwise, and not more than one (1) dog shall be permitted in any Deed Restricted Residential Unit located within any other Block.

Section 8.13    Restriction on Signs.   Except as otherwise provided in Section 8.21, no signs or advertising devices of any nature shall be erected or maintained on any Unit or Project in such a manner as to be visible outside any Unit except signs approved by the Design Review Board, signs required by applicable law or legal proceedings, identification signs for work under construction (as approved by the Design Review Board), temporary signs to caution or warn of danger or the Association signs necessary or desirable to give directions or advise of rules or regulations and permitted signs identifying businesses located in the Commercial Units. In addition, the Ski Company shall have the right to install and maintain customary ski area operational signs as more particularly provided in the Ski Easement Agreement without the consent or approval of the Design Review Board.

423272 10/15/1998 03:59P DECLARAT DAVIS SILVI
47 of 73 R 366.00 D 0.00 N 0.00 PITKIN COUNTY CO

Section 8.14  Restrictions on Parking.  Parking of vehicles on the Property is permitted with respect to a Unit or Project only within parking spaces constructed with the prior approval of the Design Review Board and such parking shall be used only for the parking of personal vehicles. The Association shall have the right to park any type of vehicle owned or used by the Association upon Property only within parking either built by Declarant or approved by the Design Review Board in such areas designated for such purpose by Declarant and the Association.  Notwithstanding the foregoing, the Association may designate areas for off-street parking on Property for the temporary parking of maintenance and delivery vehicles, for the sole purpose of assisting in a maintenance operation or to provide for the loading or unloading of such vehicles, or to accommodate special circumstances.

Section 8.15  Restriction on Recreational Vehicles.  No motorcycle, motorbike, snowmobile or other motorized recreational vehicle shall be operated within or on the Property, except for (i) licensed motorcycles and motorbikes that are driven on the roadways, and (ii) vehicular uses that are otherwise specifically permitted by the rules and regulations of the Association.

Section 8.16  Drainage Restriction.  The flow of any surface drainage into any sewer system on the Property, except into storm sewers constructed for that purpose, shall be prohibited.

Section 8.17  Landscape Restriction.  All removal of trees and/or selective tree thinning must be approved by the Design Review Board in accordance with the Design Guidelines. Vegetation on all Property must be maintained to minimize erosion and encourage growth of ground cover and all tree and shrub planting must be consistent with the Design Guidelines and the specific landscaping plan approved by the Design Review Board.  Irrigated landscaping areas on a Village Homesite using treated water shall not exceed 5,000 square feet in total area.

Section 8.18  No Mining and Drilling.  No portion of the Property shall be used for the purpose of mining, quarrying, drilling, boring or exploring for or removing oil, gas or other hydrocarbons, minerals, rocks, stones, gravel or earth.

Section 8.19  No Fences.  No fences, walls, trees, landscaping or other barriers shall be permitted for the purpose of enclosing or demarcating any property boundaries except in accordance with the PUD Plan and then only with the prior written approval of the Design Review Board. Notwithstanding the foregoing, the Ski Company shall have the right to install and maintain ropes or other customary ski area boundary markers or devices as more particularly provided in the Ski Easement Agreement without the consent or approval of the Design Review Board.

Section 8.20  General Practices Prohibited.  The following practices are prohibited at the Property: (i) removing any rock, plant material, top soil or similar items from any property of others; (ii) carrying loaded firearms on the Property, except within private residences; (iii) using surface water for construction; and (iv) disposing carelessly of cigarettes and other flammable materials. Notwithstanding the foregoing, the removal of rock, plant material, top soil or similar

items from the Property by Declarant or the Association pursuant to its easement rights shall be exempt from the application of this Section.

Section 8.21   Declarant's Exemption.   Nothing contained in this Declaration shall be construed to prevent (i) the exercise by Declarant of any special declarant rights (as that term is defined in the Act); or (ii) the erection or maintenance by Declarant or its duly authorized agents, or temporary structures, trailers, improvements or signs necessary or convenient to the development, marketing or sale of property within Aspen Highlands Village.

Section 8.22   Health, Safety and Welfare.   In the event additional uses, activities and/or facilities are deemed by the Executive Board to be nuisances or to adversely affect the health, safety or welfare of Owners or members of the general public or the value of any Property, the Executive Board may adopt rules and regulations restricting or regulating the same pursuant to the terms and conditions of this Declaration.

Section 8.23   Compliance with Law.   In addition to the compliance requirements set forth in Section 8.1 above, no portion of the Property shall be used, occupied, altered, changed, improved or repaired except in compliance with all present and future laws, rules, requirements, orders, directions, ordinances and regulations of the United States of America, State of Colorado, County of Pitkin, and all other municipal, governmental or lawful authority whatsoever, affecting the Property or the improvements thereon or any part thereof, and of all their departments, bureaus and officials. Furthermore, no Owner shall release, discharge or emit from the Property or dispose of, or allow any person under such Owner's control or direction to release, discharge or emit from the Property or dispose of, any material on, above or under the Property that is designated as a pollutant or contaminant under any federal, state or local law, regulation or ordinance.

Section 8.24   Subdivision of Units.

8.24.1   Prior to the recording in the Office of the County Clerk and Recorder of Pitkin County, Colorado, of an instrument submitting any portion of the Property to further subdivision, including without limitation, the creation of townhome Units or condominium Units, the applicant Owner (other than Declarant, whose rights to subdivide Units shall be as provided in subsection 8.24.2 below) of such property shall submit to the Association for its review and approval, copies of the proposed subdivision documents, and such other information as may be reasonably requested the Association, which may include without limitation, an owners' association declaration, any maps or plats, and articles of incorporation and bylaws of the owners' association. Upon request, the applicant Owner shall also submit a deposit against attorneys' fees and costs which the Association will incur in reviewing and effectuating the application for approval, in an amount reasonably estimated by the Association. The Association shall separately approve and execute any plats, maps and owners' association declarations that are required for each such subdivision, or shall disapprove the documents. If such documents are disapproved by the Association, the Association shall set forth the specific reasons for such disapproval, and the applicant Owner shall thereafter either modify its application to satisfy such concerns or terminate its subdivision application with Pitkin County. The approval of the Association under this Section shall not be unreasonably withheld or delayed. So long as the

42

423272 10/15/1998 03:59P DECLARAT DAVIS SILVI
49 of 73 R 366.00 D 0.00 N 0.00 PITKIN COUNTY CO

proposed density, type of use and size of any such resubdivision are in compliance with the PUD Plan and Section 1.3 above, such considerations shall not be deemed a reasonable basis for the Association to withhold its consent to a proposed resubdivision of a Unit. All costs and attorneys fees incurred by the Association as a result of an application for approval shall be the sole obligation of the applicant Owner.

8.24.2   Declarant hereby reserves all rights and privileges defined as "development rights" under the Act with respect to the Project Lots and the Parking Facility Lot. Without limiting the generality of the foregoing, Declarant shall have the right to subdivide any Unit owned by Declarant in conformance with applicable zoning, without the necessity of any approval or review by the Association. Declarant shall have the absolute right to submit the Project Lots and the Parking Facility Lot to further subdivision, including, without limitation, the creation of townhome Units or condominium Units and/or common areas or common elements, so long as such subdivision complies with applicable zoning restrictions and the total number of Units subject to this Declaration does not exceed the maximum number of Units permitted pursuant to Section 1.3. The rights of Declarant set forth in this Section 8.24.2 shall expire thirty-five (35) years from the date of recording of this Declaration, unless terminated earlier pursuant to the terms and provisions of the Act, or unless such rights are (i) extended as allowed by law or (ii) reinstated or extended by the Association, subject to whatever terms, conditions and limitations the Executive Board may impose on the subsequent exercise of such rights by Declarant.

Section 8.25   No Timeshare.   Each Owner acknowledges that Declarant intends to create Fractional Ownership Interests with respect to certain Units within Aspen Highlands Village. Other than the right of Declarant, Declarant's affiliates (defined as person or entities controlling, controlled by or under common control with Declarant), Declarant's successors and specific assigns and their respective officers, agents, employees, and assigns to create Fractional Ownership Interests as contemplated by this Declaration (specifically including, without limitation, any Fractional Project), no Unit shall be used for the operation of a timesharing, fraction-sharing, or similar program whereby the right to exclusive use of the Unit rotates among participants in the program on a fixed or floating time schedule over a period of years.

Section 8.26   Violation.   Determination with respect to whether or not a particular activity or occurrence shall constitute a violation of this Article 8 shall be made by the Executive Board after notice and an opportunity to be heard and shall be final.

## ARTICLE 9
## INSURANCE AND FIDELITY BONDS

Section 9.1   General Insurance Provisions.   The Association shall maintain, to the extent reasonably available:

9.1.1   Property insurance on the Common Area for broad form covered causes of loss; except that the total amount of insurance must be not less than the full insurable replacement costs of the insured property less applicable deductibles at the time the insurance is purchased and at each renewal date; and

43

*Hines\Aspen Highlands\dec ahv v11-clean*




423272 10/15/1998 03:59P DECLARAT DAVIS SILVI
50 of 73 R 366.00 D 0.00 N 0.00 PITKIN COUNTY CO

9.1.2    Commercial general liability insurance against claims and liabilities arising in connection with the ownership, existence, use or management of the Common Area (including, without limitation, on the easements described as "Private Ski Easements" on the Plat) and the Association, insuring the Executive Board, the Association, the Managing Agent and their respective employees, agents and all persons acting as agents. Limits of liability will be determined by the Executive Board and will be at least $5,000,000 for any injuries or death sustained by any person in any single occurrence, and at least $1,000,000 for property damage resulting from each occurrence. Such policy will include coverage for contractual liability, liability for non-owned and hired automobiles, and such other risks as are customarily covered with respect to developments similar to Aspen Highlands Village in construction, location and use. Declarant shall be included as an additional insured in Declarant's capacity as an Owner and Executive Board member. The Owners shall be included as additional insureds but only for claims and liabilities arising in connection with the ownership, existence, use or management of the Common Area. The insurance shall cover claims of one or more insured parties against other insured parties.

9.1.3    The Association may carry such other and further insurance that the Executive Board considers appropriate, including insurance on Units and/or common areas or common elements of Projects that the Association is not obligated to insure to protect the Association or the Owners.

Section 9.2    Cancellation.  If the insurance described in Section 9.1 above is not reasonably available, or if any policy of such insurance is cancelled or not renewed without a replacement policy therefore having been obtained, the Association promptly shall cause notice of that fact to be given to all Owners.

Section 9.3    Policy Provisions.  Insurance policies carried pursuant to Section 9.1 above must provide that:

9.3.1    Each Owner is an insured person under the policy with respect to liability arising out of such Owner's interest in the Common Area or membership in the Association;

9.3.2    The insurer waives its rights to subrogation under the policy against any Owner or member of his household;

9.3.3    No act or omission by any Owner, unless acting within the scope of such Owner's authority on behalf of the Association, will void the policy or be a condition to recovery under the policy; and

9.3.4    If, at the time of a loss under the policy, there is other insurance in the name of an Owner covering the same risk covered by the policy, the Association's policy provides primary insurance.

Section 9.4    Insurance Proceeds.  Any loss covered by the property insurance policy described in Section 9.1 above must be adjusted with the Association, but the insurance proceeds for that loss shall be payable to any insurance trustee designated for that purpose, or otherwise to

*Hines\Aspen Highlands\dec ahv v11-clean*

44

the Association, and not to any holder of a security interest. The insurance trustee or the Association shall hold any insurance proceeds in trust for the Owners as their interests may appear. Subject to the provisions of Article 12 below, the proceeds must be disbursed first for the repair or restoration of the damaged property, and the Association and Owners are not entitled to receive payment of any portion of the proceeds unless there is a surplus of proceeds after the damaged property has been completely repaired or restored or the regime created by this Declaration is terminated.

Section 9.5   Association Policies. The Association may adopt and establish written nondiscriminatory policies and procedures relating to the submittal of claims, responsibility for deductibles and any other matters of claims adjustment. To the extent the Association settles claims for damages to the Property, it shall have the authority to assess negligent Owners causing such loss or benefiting from such repair or restoration all or any equitable portion of the deductibles paid by the Association.

Section 9.6   Insurer Obligation. An insurer that has issued an insurance policy for the insurance described in Section 9.1 above shall issue certificates or memoranda of insurance to the Association and, upon request, to any Owner. Unless otherwise provided by statute, the insurer issuing the policy may not cancel or refuse to renew it until thirty (30) days after notice of the proposed cancellation or nonrenewal has been mailed to the Association and to each Owner to whom a certificate or memorandum of insurance has been issued at their respective last-known addresses.

Section 9.7   Common Expenses. Premiums for insurance that the Association acquires and other expenses connected with acquiring such insurance are Common Expenses.

Section 9.8   Fidelity Insurance. Fidelity bonds must be maintained by the Association to protect against dishonest acts on the part of its officers, directors, trustees, agents and employees and on the part of all others who handle or are responsible for handling the funds belonging to or administered by the Association in an amount not less than two (2) months' current Assessments plus reserves as calculated from the current budget of the Association. The Association must also secure and maintain, or require to be secured or maintained by any parties handling the collection, deposit, transfer or disbursement of Association funds, fidelity insurance with aggregate coverage of not less than two (2) months' assessments plus reserves, as calculated from the then-current budget of the Association; provided, however, in no event shall the coverage for third parties handling the collection, deposit, transfer or disbursement of Association funds be less than $50,000. In addition all funds and accounts of the Association being held by a Managing Agent or other third persons shall be kept in an account separate from the funds of other parties held by such Managing Agent or third party, and all reserves of the Association shall be kept in an account separate from the operational account of the Association. Any such fidelity coverage shall name the Association as an obligee and such bonds shall contain waivers by the issuers of all defenses based upon the exclusion of persons serving without compensation from the definition of "employees," or similar terms or expressions.



3272 10/15/1998 03:59P DECLARAT DAVIS SILVI
2 of 73 R 366.00 D 0.00 N 0.00 PITKIN COUNTY CO

45

*Hines\Aspen Highlands\dec ahv v11-clean*

Section 9.9   Workmen's Compensation Insurance.   The Association shall obtain workmen's compensation or similar insurance with respect to its employees, if any, in the amounts and forms as may now or hereafter be required by law.

Section 9.10   Other Insurance.   The Association shall also maintain insurance to the extent reasonably available and in such amounts as the Executive Board may deem appropriate on behalf of Directors against any liability asserted against a Director or incurred by him in his capacity of or arising out of his status as a Director.   The Association may obtain insurance against such other risks, of a similar or dissimilar nature, as it shall deem appropriate with respect to its responsibilities and duties.

Section 9.11   Insurance Obtained by Owners or Project Association.   It shall be the responsibility of each Owner or Project Association (as set forth in the applicable Project Declaration), at such party's expense, to maintain physical damage insurance on such Owner's Unit, personal property and furnishings and on the common areas or common elements of such Project and public liability insurance covering such Owner's Unit and the common areas or common elements of such Project in a limit of not less than One Million Dollars ($1,000,000.00) for each Project and Five Hundred Thousand Dollars ($500,000.00) for each Owner's Unit in respect to bodily injury or death to any number of persons arising out of one accident or disaster, or for damage to property, and if higher limits shall at any time be customary to protect against tort liability such higher limits shall be carried.  In addition, an Owner may obtain such other and additional insurance coverage on and in relation to the Owner's Unit as the Owner in the Owner's sole discretion shall conclude to be desirable and a Project Association may obtain such other and additional insurance coverage on and in relation to the common areas or common elements of such Project as the Project Association, in its sole discretion, shall conclude to be desirable. However, none of such insurance coverages shall affect any insurance coverage obtained by the Association or cause the diminution or termination of that insurance coverage, nor shall such insurance coverage of an Owner result in apportionment of insurance proceeds as between policies of insurance of the Association, the Project Association and/or the Owner. An Owner or Project Association shall be liable to the Association for the amount of any such diminution of insurance proceeds to the Association as a result of insurance coverage maintained by the Owner or Project Association, and the Association shall be entitled to collect the amount of the diminution from the individual Owner or all Owners of Units within the Project as if the amount were a default Assessment, with the understanding that the Association may impose and foreclose a lien for the payment due.   Any insurance obtained by an Owner or Project Association shall include a provision waiving the particular insurance company's right of subrogation against the Association and other Owners or Project Associations.

The Executive Board may require an Owner or Project Association who purchases insurance coverage as described herein to file copies of such policies with the Association within thirty (30) days after purchase of the coverage to eliminate potential conflicts with any master policy carried by the Association.

46

## ARTICLE 10
## MECHANICS' LIENS

Section 10.1   Mechanics' Liens.   Subsequent to the recording of this Declaration, no labor performed or materials furnished for use and incorporated in any Unit with the consent of or at the request of the Owner of the Unit or the Owner's agent, contractor or subcontractor shall be the basis for the filing of a lien against a Unit of any other Owner not expressly consenting to or requesting the same, or against any interest in the Common Area or the common areas or common elements of any Project. Each Owner shall indemnify and hold harmless each of the other Owners, the Project Associations and the Association from and against any liability or loss arising from the claim of any mechanic's lien for labor performed or for materials furnished in work on such Owner's Unit against the Unit of another Owner, the common elements or common areas of any Project or against the Common Area, or any part thereof.

Section 10.2   Enforcement by the Association.   At its own initiative or upon the written request of any Owner or Project Association (if the Association determines that further action by the Association is proper) the Association shall enforce the indemnity provided by the provisions of Section 10.1 above by collecting from the Owner of the Unit on which the labor was performed or materials furnished the amount necessary to discharge by bond or otherwise any such mechanic's lien, including all costs and reasonable attorneys' fees incidental to the lien, and obtain a release of such lien. In the event that the Owner of the Unit on which the labor was performed or materials furnished refuses or fails to so indemnify within seven (7) days after the Association shall have given notice to such Owner of the total amount of the claim, or any portions thereof from time to time, then the failure to so indemnify shall be a default by such Owner under the provisions of this Section, and such amount to be indemnified shall automatically become a default Assessment determined and levied against such Unit, and enforceable by the Association in accordance with Sections 5.9, 5.10 and 5.11 above.

## ARTICLE 11
## ASSOCIATION AS ATTORNEY-IN-FACT

Section 11.1   Appointment.   Each and every Owner hereby irrevocably constitutes and appoints the Association as such Owner's true and lawful attorney-in-fact in such Owner's name, place and stead for the purpose of dealing with the Common Area upon their damage, destruction, condemnation, or obsolescence as provided below in Articles 12, 13 and 14. In addition, the Association, or any insurance trustee or substitute insurance trustee designated by the Association, is hereby appointed as attorney-in-fact under this Declaration for the purpose of purchasing and maintaining insurance under Article 9 above, including: the collection and appropriate disposition of the proceeds of such insurance; the negotiation of losses and the execution of releases of liability; the execution of all documents; and the performance of all other acts necessary to accomplish such purpose. The Association, or any insurance trustee, shall hold or otherwise properly dispose of any insurance proceeds in trust for the, as their interests may appear. Acceptance by any grantee of a deed or other instrument of conveyance from Declarant or from any Owner shall constitute appointments of the attorneys-in-fact as provided above.