Section 11.2  General Authority. As attorney-in-fact, the Association shall have full and complete authorization, right and power to make, execute and deliver any contract, assignment, deed, waiver or other instrument with respect to the interest of any Owner which may be necessary or appropriate to exercise the powers granted to the Association as attorney-in-fact.

## ARTICLE 12
## DAMAGE OR DESTRUCTION

Section 12.1  Casualty to Common Area. In the event of damage or destruction to any part of the Common Area due to fire or other adversity or disaster, any insurance proceeds shall be collected by and paid to the Association and such insurance proceeds, if sufficient to reconstruct or repair the damage, shall be applied by the Association to such reconstruction and repair. If the insurance proceeds with respect to such damage or destruction are insufficient to repair and reconstruct the damaged or destroyed Common Area, as applicable, or if there are no insurance proceeds, the Executive Board shall levy an Assessment pursuant to Article 5 in the aggregate amount of such deficiency and shall proceed to make such repairs or reconstruction as determined by the Executive Board. Notwithstanding the foregoing, the Association shall have no obligation to repair or reconstruct the damaged or destroyed Common Area if such repair or reconstruction would be illegal under any state or local statute or ordinance governing health or safety or if within sixty (60) days after such damage or destruction Owners representing ninety percent (90%) of the votes in the Association elect not to rebuild. The Assessment provided for herein shall be a debt of each Owner and a lien on its Unit, and may be enforced and collected in the same manner as any assessment lien provided for in Article 5. If Owners representing ninety percent (90%) of the votes in the Association elect not to rebuild any damage or destruction to the Common Area in accordance with the terms and provisions set forth above, the Association shall demolish any destroyed or damaged improvements, remove all debris and rubble caused by such demolition and return the damaged or destroyed area to a sightly condition and shall have the right to levy against and collect from the Owners an Assessment for this limited purpose, if necessary.

Section 12.2  Casualty to Unit, Project or Parking Facility. In the event of damage or destruction of the improvements located on any Unit or any part thereof, any damage or destruction to any common areas or common elements of any Project or any damage or destruction to any portion of the Parking Facility (other than any Common Area which is governed by Section 12.1), due to fire or other adversity or disaster, the Owner of such Unit, the Project Association or the Parking Facility Association, as applicable, shall, at its sole cost and expense, with due diligence, either (i) cause the damaged or destroyed improvements to be repaired and restored to a condition comparable to that prior to the damage or destruction, or (ii) demolish the destroyed or damaged improvements, in which event the damaged or destroyed improvements shall forthwith be demolished and all debris and rubble caused by such demolition shall be removed and the affected property regraded and landscaped. If such repair or restoration or such demolition, debris removal, regrading and landscaping is not commenced within one hundred eighty (180) days from the date of such damage or destruction, or if the same is commenced but then abandoned for a period of more than ninety (90) days, the Association may, after notice and an opportunity to be heard, impose a fine of $1,000.00 per day or such other rate imposed by the Executive Board in compliance with the Act, charged against the Owner, Project

Association or Parking Facility Association, as applicable, until such repair or restoration or such demolition, debris removal, regrading and landscaping is commenced or re-commenced, as the case may be, unless the Owner, Project Association or Parking Facility Association can prove to the satisfaction of the Executive Board that such failure is due to circumstances beyond the control of such Owner, Project Association or Parking Facility Association. Such fine shall be in addition to any assessment to which such property is subject and the Association shall have all of the rights pertaining to a default Assessment specified in Article 5 for such amount.

## ARTICLE 13
## OBSOLESCENCE

The Owners holding an aggregate of sixty-seven percent (67%) or more of the total voting interest in the Association, including sixty-seven percent (67%) of the total voting interest of each Category of members (other than the Category of Parking Facility Unit Members), may agree that all or portions of the Common Area are obsolete and adopt a written plan for the renewal and reconstruction thereof. Written notice of the adoption of such a plan shall be given to all Owners and a copy of such plan shall be recorded in the Office of the Clerk and Recorder of Pitkin County, Colorado, and the expense of renewal and reconstruction shall be payable by all of the Owners as a Common Expense.

## ARTICLE 14
## CONDEMNATION

Section 14.1    Condemnation of Common Area. In the event the Common Area, or any portion thereof, shall be taken for any public or quasi-public use, under any statute, by right of eminent domain or by purchase in lieu thereof (herein, a "taking"), each Owner will be entitled to notice thereof, but the Association will act as attorney-in-fact for all Owners in the proceedings incident to the taking unless otherwise prohibited by law. The award for such taking will be payable to the Association as trustee for all of the Owners to be disbursed as follows:

14.1.1    If the taking involves a portion of the Common Area on which improvements have been constructed, then, unless restoration or replacement of such improvements would be illegal under any state or local statute or ordinance governing health or safety or unless within sixty (60) days after such taking Owners representing ninety percent (90%) of the votes in the Association elect not to restore or replace such improvements, the Association will restore or replace such improvements so taken on the remaining land included in the Common Area to the extent lands are available therefor, in accordance with plans approved by the Executive Board, the Design Review Board and any other governmental or quasi-governmental entity having jurisdiction over the Property. If such improvements are to be restored or replaced, and the award for the taking is insufficient to restore or replace such improvements, the Executive Board shall levy an Assessment in accordance with Article 5 in the aggregate amount of such deficiency and shall proceed to restore or replace such improvements.

14.1.2    If the taking does not involve any improvements, or if there is a decision made not to restore or replace as set forth above, or if there are net funds remaining after any such restoration or replacement of improvements is completed, then the Association

49

may retain such excess proceeds for use in the future for any purposes or Functions of the Association or distribute such excess in proportionate shares on the basis of all Assessments levied against such Units (other than default Assessments) for the prior twelve (12) month period.

Section 14.2  Condemnation of a Unit or Common Area or Common Element of a Project. In the event any Unit or common area or common element of a Project, or any portion thereof (other than any Common Area which is governed by Section 14.1), shall be taken, the condemnation award for such taking shall be paid solely to the Owner of such Unit or the Project Association, as applicable. The repair or restoration of any improvements located on such property which are affected by the taking shall be governed by the terms of Section 12.2. If an entire Unit shall be condemned, the Owner thereof shall automatically cease to be a member of the Association.

Section 14.3  Allocation of Interest After Condemnation. Section 39-33.3-107 of the Act shall govern the allocation of interests to Units following any condemnation.

## ARTICLE 15
## EXPANSION AND WITHDRAWAL

Section 15.1  Reservation of Expansion and Withdrawal Rights.

15.1.1  Subject to those restrictions set forth in Section 38-33.3-222 of the Act, Declarant reserves the right for itself and any Successor Declarant at any time and from time to time to subject the property described on Exhibit D and/or unspecified other real property to this Declaration and the provisions of this Declaration.

15.1.2  Declarant reserves the right for itself and any Successor Declarant at any time and from time to time to withdraw from this Declaration any real property subjected to this Declaration by a duly recorded Supplemental Declaration and, if necessary, Supplemental Plat prior to the time of a sale or conveyance of a Unit within the real property described in said Supplemental Declaration and, if necessary, Supplemental Plat.

Section 15.2  Supplemental Declarations and Supplemental Plats. Such expansion may be accomplished by the filing for record by Declarant in the Office of the Clerk and Recorder for Pitkin County, Colorado, one or more Supplemental Declarations and, if the real property being subject to this Declaration by such Supplemental Declaration has not been previously platted in a plat recorded in the Office of the Clerk and Recorder for Pitkin County, Colorado, of a Supplemental Plat depicting such Expansion Property recorded concurrently with the applicable Supplemental Declaration. The Supplemental Declaration shall set forth the lots and other real property, if any, to be included in the expansion, together with any covenants, conditions, restrictions and easements particular to such property. The expansion may be accomplished in stages by successive supplements or in one supplemental expansion. Declarant shall not be obligated to expand the Property beyond that initially submitted to this Declaration.

Section 15.3  Expansion of Definitions. In the event of such expansion, the definitions used in this Declaration shall be expanded automatically to encompass and refer to the Property



50

subject to this Declaration as so expanded. For example, "Units" shall mean the Units as shown on the Plat plus any additional Units added by a Supplemental Declaration or Declarations and, if necessary, Supplemental Plat or Plats, and reference to this Declaration shall mean this Declaration as supplemented. All conveyances of Units shall be effective to transfer rights in the Property as expanded.

Section 15.4  Effect of Expansion. Upon the construction of additional Units and their inclusion under this Declaration and the filing of the Supplemental Declaration(s) and, if necessary, Supplemental Plat(s) thereof, the Percentage Voting Allocation and the Percentage Assessment Obligation applicable to a Unit shall automatically be amended in the manner described in Sections 4.3 and 5.4 respectively.

Notwithstanding any inclusion of additional Units under this Declaration, each Owner (regardless of whether such Owner is the owner of a Unit shown on the original plat or is the owner of a Unit constructed an Expansion Property) shall remain fully liable with respect to his obligation for the payment of the Common Expenses of the Association, including the expenses for such new Common Area, costs and fees, if any. The recording of a Supplemental Declaration or Supplemental Plat shall not alter the amount of the Common Expenses assessed to a Unit prior to such recording.

Section 15.5  Termination of Expansion and Development Rights. The rights reserved to the Declarant for itself, its successors and assigns for the expansion and development of the Expansion Property ("Expansion and Development Rights") shall expire thirty-five (35) years from the date of recording this Declaration, unless terminated earlier pursuant to the terms and provisions of the Act, or unless the Expansion and Development Rights are (i) extended as allowed by law or (ii) reinstated or extended by the Association, subject to whatever terms, conditions and limitations the Executive Board may impose on the subsequent exercise of the Expansion and Development Rights by Declarant.

## ARTICLE 16
## ACKNOWLEDGMENTS

Section 16.1  Acknowledgements. Each Owner is hereby advised of the following matters affecting the Property and the Owners' use and enjoyment thereof:

16.1.1  The Property is benefited by the fact that it is located adjacent to the Ski Area. The Ski Area represents a unique and desirable amenity that includes many year-round activities; as such, the Ski Area may generate, pursuant to its legal and authorized operation, an unpredictable amount of visible, audible and odorous impacts and disturbances from activities relating to the construction, operation, use, improvement and maintenance thereof. The activities associated with the Ski Area include, without limitation: (i) vehicular and residential traffic, including, without limitation, (a) buses, vans, snowcats, snowmobiles, other Ski Area maintenance vehicles and other vehicles which transport residents and guests of Aspen Highlands Village over, around and through the Ski Area and Aspen Highlands Village, and (b) construction vehicles and equipment; (ii) activities relating to the construction, operation, improvement and maintenance of Ski Area base areas, ski trails, skiways and skier bridges and

tunnels relating to the Ski Area, including, without limitation, (a) construction, operation, improvement and maintenance of Ski Area access roads, snow-making equipment, irrigation equipment and chair lifts, gondolas and other skier transportation systems, (b) operation of snow-grooming vehicles and equipment, snowmobiles and safety and supervision vehicles; and (c) the construction, use, improvement and maintenance of Ski Area improvements, structures, facilities, signs and other temporary or permanent operational fixtures or objects; and (iii) activities relating to the use of the Ski Area, including, without limitation, skiing, snow boarding, showshoeing, nordic skiing, alpine touring, hiking, horseback riding, bicycling, special recreation-oriented events, competitions, promotions and activities, and other recreational activities (including, without limitation, summer activities).

16.1.2 Roads within Aspen Highlands Village are or may be subject to restricted or gated access limitations, and are or may be subject to rules and regulations of the District which holds easements to and is responsible for maintaining the roads.

16.1.3 Substantial construction-related activities relating to the development of Units or Projects or other development within or near Aspen Highlands Village may cause considerable noise, dust and other inconveniences to the Owners.

16.1.4 Properties located within Aspen Highlands Village may be developed pursuant to the land uses and restrictions set forth in the PUD Plan with no representation being made herein concerning the planned uses of such other properties. The zoning for Aspen Highlands Village is established and governed by the PUD Plan. Any amendment of the PUD Plan requires approval by the Pitkin County, Colorado Board of County Commissioners. Each Owner acknowledges and agrees that such Owner has not relied upon any statements or representation regarding Aspen Highlands Village or any other properties. Each Owner and Project Association further acknowledges and agrees that such Owner and Project Association will not take any action to impair or delay any development of real property governed by the PUD Plan so long as such development is consistent with the PUD Plan, and each Owner and Project Association hereby waives any right it may have to object to any Project to be developed on any Project Lot so long as such Project is in conformance with the terms, conditions and restrictions of the PUD Plan as the same may be amended from time to time.

16.1.5 No interest in or right to use any amenity located near the Property, such as swimming pools, spas, golf facilities, ski facilities or the like, shall be conveyed to any Owner pursuant to this Declaration. The owners of those facilities shall have the right, in their sole discretion, to remove, relocate, discontinue operation of, restrict access to, charge fees for the use of, sell interests in or otherwise deal with such assets in their sole discretion without regard to any prior use of or benefit to any Owners.

16.1.6 Declarant is not the operator of the Ski Area, and accordingly Declarant cannot make any representations relating thereto. Neither Declarant nor any of its employees or agents have made and hereby do not make any representations regarding the opening or closing dates of the Ski Area in any given year. The operator of the Ski Area may decide, in its sole discretion, whether any or all of the chairlifts (including those that serve Aspen

52

*Hines\Aspen Highlands\dec ahv v11-clean*

Highlands Village) within the Ski Area should be operated and if operated, the period and hours of operation.

   16.1.7  Ownership of real property in mountain areas involves certain inherent inconveniences. These include, but are not limited to, (a) dripping water onto decks and porches from snow melt, (b) snow and ice build-up on decks and porches during winter months, (c) the need to open windows to cool a Unit during certain summer periods, in that due to the temperate summer climate no air conditioning is planned for any Building, and (d) other inconveniences arising from the sometimes variable weather conditions in the Rocky Mountains and a mountainous environment.

   16.1.8  Use of woodburning fireplaces, stoves and other devices is restricted within Aspen Highlands Village by governmental regulation.

## ARTICLE 17
## DURATION OF COVENANTS AND AMENDMENT

   Section 17.1  Term. The covenants and restrictions of this Declaration shall run with and bind the land in perpetuity, subject to the termination provisions of the Act.

   Section 17.2  Amendment. The provisions of this Declaration may be amended or terminated, in whole or in part, from time to time, upon the written consent of Owners holding an aggregate of 51% or more of the total voting interest in each Category of membership in the Association (other than the Category of Parking Facility Unit Members); provided, however, that any provision of this Declaration requiring a vote of more than 51% of the total voting interest in the Association and/or of each Category of membership to be effective may only be amended by a vote of the applicable aggregate voting interest stated in such provision. No amendment shall be effective to change, limit, impair or reduce any right of Declarant as provided herein unless such amendment is approved in writing by Declarant. Notwithstanding the foregoing, Declarant, acting alone, reserves to itself the right and power to modify and amend this Declaration and/or the Plat to the fullest extent permitted under the Act including, without limitation, to correct clerical, typographical or technical errors, or to comply with the requirements, standards, or guidelines of recognized secondary mortgage markets, the Department of Housing and Urban Development, the Federal Housing Administration, the Veterans Administration, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, or the Federal National Mortgage Association.



10/15/1998 03:59P DECLARAT DAVIS SILVI
73 R 368.00 D 0.00 N 0.00 PITKIN COUNTY CO
423
60

   Section 17.3  Recording of Amendments. Any amendment to this Declaration made in accordance with this Article shall be immediately effective upon recording in the Office of the Clerk and Recorder of Pitkin County, Colorado, a copy of the amendment, executed and acknowledged by the appropriate number of Owners accompanied by a certificate of a licensed title insurance company as to ownership, or upon the recording of a copy of the amendment, together with a duly authenticated certificate of the secretary of the Association stating that the required number of consents of Owners and a certificate of a licensed title company as to title to the Units were obtained and are on file in the office of the Association.

## ARTICLE 18
## DECLARANT'S RIGHTS REGARDING TRANSFER

Any right or any interest reserved or contained in this Declaration for the benefit of Declarant may be transferred or assigned by Declarant, either separately or with one or more other such rights or interests, to any person, corporation, partnership, association or other entity, only by written instrument executed by both Declarant and the transferee or assignee and recorded in the Office of the Clerk and Recorder of Pitkin County, Colorado. Upon such recording, Declarant's rights and obligations under this Declaration shall cease and terminate to the extent provided in such instrument.

## ARTICLE 19
## SPECIAL DISTRICT

The Association shall have the power, and is hereby authorized, to contract with and to cooperate with the District in order to ensure that their respective responsibilities are discharged. The Association is further authorized to act on behalf of its members to ensure that the level of services provided by the District, if created, is consistent with the standards of Aspen Highlands Village.

Each Owner, by acceptance of his or her deed or recorded contract of sale, is deemed to covenant and consent to the creation of the District and to executing a separate document so consenting to the creation of the District, if requested to do so by the Declarant.

## ARTICLE 20
## MISCELLANEOUS

Section 20.1  _Restriction on Declarant Powers_. Notwithstanding anything to the contrary in this Declaration, no rights or powers reserved to Declarant hereunder shall exceed the time limitations or permissible extent of such rights or powers as restricted under the Act. Any provision in this Declaration in conflict with the requirements of the Act shall not be deemed to invalidate such provision as a whole but shall be adjusted as is necessary to comply with the Act.

Section 20.2  _Nonwaiver_. Failure by Declarant, the Association, or any Owner to enforce any covenant, condition, restriction, easement, reservation, right-of-way or other provision contained in this Declaration shall in no way or event be deemed to be a waiver of the right to do so thereafter.

Section 20.3  _Severability_. The provisions of this Declaration shall be deemed to be independent and severable, and the invalidity of any one or more of the provisions of it by judgment or court order or decree shall in no way affect the validity or enforceability of any of the other provisions, which provisions shall remain in full force and effect.

Section 20.4  _Number and Gender_. Unless the context provides or requires to the contrary, the use of the singular herein shall include the plural, the use of the plural shall include the singular, and the use of any gender shall include all genders.

Section 20.5  Captions.  The captions to the Articles and Sections and the Table of Contents at the beginning of this Declaration are inserted only as a matter of convenience and for reference, and are in no way to be construed to define, limit, or otherwise describe the scope of this Declaration or the intent of any provision of this Declaration.

Section 20.6  Conflicts in Legal Documents.  In case of conflicts between the provisions in this Declaration and the articles of incorporation of the Association and the bylaws of the Association, this Declaration shall control.  In case of conflicts in the provisions in the articles of incorporation of the Association and the bylaws of the Association, the articles of incorporation of the Association shall control.

Section 20.7  Exhibits.  All the Exhibits attached to and described in this Declaration are incorporated in this Declaration by this reference.



423272 10/15/1998 03:59P DECLARAT DAVIS SILVI
62 of 73 R 366.00 D 0.00 N 0.00 PITKIN COUNTY CO

Executed as of the **13th** day of October, 1998.

          HINES HIGHLANDS LIMITED PARTNERSHIP,
          a Delaware limited partnership

          By: ASPEN HIGHLANDS SKIING CORPORATION, a Delaware corporation, its general partner

          By: _____
          Name: Robert E Daniel Jr
          Title: Vice President

STATE OF COLORADO      )
                              ) ss.
COUNTY OF PITKIN       )

The foregoing instrument was acknowledged before me this **13th** day of October 1998, by **Robert E. Daniel, Jr.**, as **Vice President** of Aspen Highlands Skiing Corporation, a Delaware corporation, general partner of Hines Highlands Limited Partnership, a Delaware limited partnership.

WITNESS my hand and official seal.
My commission expires: **Sept. 28, 1999**

[SEAL]

_____
Notary Public

423272 10/15/1998 03:59P DECLARAT DAVIS SILVI
63 of 73 R 366.00 D 0.00 N 0.00 PITKIN COUNTY CO

56

*Hines\Aspen Highlands\dec ahv v11-clean*

# EXHIBIT A

## LEGAL DESCRIPTION OF PROPERTY

All of that certain real property described in and subject to the Final Plat of Aspen Highlands Village P.U.D., recorded in the Office of the Clerk and Recorder of Pitkin County, Colorado, on October 15, 1998, as Reception No. 423275 ; excluding, however, those five parcels of real property described on such Plat as follows: (i) Parcel A; (ii) Parcel 1; (iii) Parcel 2; (iv) Parcel 3, Block A; and (v) Parcel 4, Block A.

423272 10/15/1998 03:59P DECLARAT DAVIS SILVI
64 of 73 R 366.00 D 0.00 N 0.00 PITKIN COUNTY CO

# EXHIBIT B

## VOTING ALLOCATION AMONG TYPES OF DEED RESTRICTED RESIDENTIAL UNITS

| Type of Unit described per Pitkin County Regulations and the PUD Plan | Votes per Unit |
|---|---|
| Category 4 | Four (4) |
| Category 3 | Three (3) |
| Category 2 | Two (2) |
| Category 1 | One (1) |
| Dormitory Units | One (1) |



423272 10/15/1998 03:59P DECLARAT DAVIS SILVI
65 of 73 R 366.00 D 0.00 N 0.00 PITKIN COUNTY CO

# EXHIBIT C

## RECORDING DATA FOR EASEMENTS, LICENSES AND TITLE MATTERS

(on attached pages)

```
423272 10/15/1998 03:59P DECLARAT DAVIS SILVI
66 of 73 R 366.00 D 0.00 N 0.00 PITKIN COUNTY CO
```

# ALTA COMMITMENT

Schedule B - Section 2

(Exceptions)   Our Order No. Q372262-50

The policy or policies to be issued will contain exceptions to the following unless the same are disposed of to the satisfaction of the Company:

1. Rights or claims of parties in possession not shown by the public records.

2. Easements, or claims of easements, not shown by the public records.

3. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, and any facts which a correct survey and inspection of the premises would disclose and which are not shown by the public records.

4. Any lien, or right to a lien, for services, labor or material theretofore or hereafter furnished, imposed by law and not shown by the public records.

5. Defects, liens encumbrances, adverse claims or other matters, if any, created, first appearing in the public records or attaching subsequent to the effective date hereof but prior to the date the proposed insured acquires of record for value the estate or interest or mortgage thereon covered by this Commitment.

6. Taxes or special assessments which are not shown as existing liens by the public records.

7. Liens for unpaid water and sewer charges, if any.

8. In addition, the owner's policy will be subject to the mortgage, if any, noted in Section 1 of Schedule B hereof.

9. THE EFFECT OF INCLUSIONS IN ANY GENERAL OR SPECIFIC WATER CONSERVANCY, FIRE PROTECTION, SOIL CONSERVATION OR OTHER DISTRICT OR INCLUSION IN ANY WATER SERVICE OR STREET IMPROVEMENT AREA.

10. RIGHT OF PROPRIETOR OF A VEIN OR LODE TO EXTRACT AND REMOVE HIS ORE THEREFROM SHOULD THE SAME BE FOUND TO PENETRATE OR INTERSECT THE PREMISES AS RESERVED IN UNITED STATES PATENT RECORDED JANUARY 18, 1892, IN BOOK 55 AT PAGE 20 AND RECORDED APRIL 7, 1903 IN BOOK 55 AT PAGE 507

11. RIGHT OF WAY FOR DITCHES OR CANALS CONSTRUCTED BY THE AUTHORITY OF THE UNITED STATES AS RESERVED IN UNITED STATES PATENT RECORDED JUNE 25, 1957, IN BOOK 181 AT PAGE 506.

12. EASEMENTS AND RIGHTS OF WAY FOR INGRESS AND EGRESS, WATER DIVERSION, WATER PIPELINE, ROAD RIGHTS OF WAY, PARKING, UTILITY LINES, SEWER LINES, LEACHING FIELDS, GAS LINES, POWER LINES, AND SKI LIFT MAINTENANCE PURPOSES, AND THE TERMS, CONDITIONS, PROVISIONS AND OBLIGATIONS CONTAINED THEREIN, AS SET FORTH IN INSTRUMENTS RECORDED AS FOLLOWS:
RECORDED JUNE 10, 1960 IN BOOK 191 AT PAGE 15
RECORDED DECEMBER 16, 1958 IN BOOK 186 AT PAGE 188
RECORDED SEPTEMBER 18, 1961 IN BOOK 195 AT PAGE 231

423272 10/15/1998 03:59P DECLARAT DAVIS SILVI
67 of 73 R 366.00 D 0.00 N 0.00 PITKIN COUNTY CO

# ALTA COMMITMENT

Schedule B - Section 2

(Exceptions)                                   Our Order No.   Q372262-50

The policy or policies to be issued will contain exceptions to the following unless the same are disposed of to the satisfaction of the Company:

```
RECORDED SEPTEMBER 18, 1961 IN BOOK 195 AT PAGE 232
RECORDED FEBRUARY 27, 1962 IN BOOK 196 AT PAGE 605
RECORDED MARCH 21, 1962 IN BOOK 197 AT PAGE 144
RECORDED JANUARY 29, 1963 IN BOOK 201 AT PAGE 69
RECORDED FEBRUARY 21, 1966 IN BOOK 219 AT PAGE 141
RECORDED NOVEMBER 26, 1969 IN BOOK 244 AT PAGE 692
RECORDED DECEMBER 7, 1973 IN BOOK 282 AT PAGE 111
RECORDED OCTOBER 26, 1981 IN BOOK 416 AT PAGE 429
RECORDED OCTOBER 3, 1983 IN BOOK 452 AT PAGE 870
RECORDED AUGUST 23, 1990 IN BOOK 628 AT PAGE 12
RECORDED FEBRUARY 4, 1993 IN BOOK 702 AT PAGE 808
RECORDED SEPTEMBER 19, 1997 UNDER RECEPTION NO. 408576
RECORDED JANUARY 16, 1998 UNDER RECEPTION NO. 412638
```

13. TERMS, CONDITIONS, PROVISIONS AND OBLIGATIONS OF THE LOT 9 POND EASEMENT AS SET FORTH IN THE SPECIAL WARRANTY DEED RECORDED JULY 22, 1992 IN BOOK 684 AT PAGE 174 AND OF THE LOT 9 POND PIPELINE FACILITIES EASEMENT AGREEMENT RECORDED JANUARY 16, 1998 UNDER RECEPTION NO. 412639.

14. TERMS, CONDITIONS, PROVISIONS, OBLIGATIONS AND RESTRICTIONS AS CONTAINED IN RESOLUTIONS OR ORDINANCES BY THE PITKIN COUNTY, COLORADO, BOARD OF COUNTY COMMISSIONERS, PLANNING AND ZONING COMMISSION, AND BOARD OF ADJUSTMENT, RECORDED AS FOLLOWS:

```
RESOLUTION NO. 81-25 RECORDED MAY 4, 1981 IN BOOK 407 AT PAGE 918
RESOLUTION NO. 86-39 RECORDED JULY 18, 1986 IN BOOK 514 AT PAGE 719
RESOLUTION NO. 87-66 RECORDED AUGUST 26, 1987 IN BOOK 544 AT PAGE 535
RESOLUTION NO. 87-PZ18 RECORDED SEPTEMBER 10, 1987 IN BOOK 545 AT PAGE 726
RESOLUTION NO. 88-79 RECORDED JULY 27, 1988 IN BOOK 569 AT PAGE 619
RESOLUTION NO. 89-89 RECORDED OCTOBER 25, 1989 IN BOOK 605 AT PAGE 827 AND
RE-RECORDED NOVEMBER 13, 1989 IN BOOK 607 AT PAGE 304
RESOLUTION NO. 90-103 RECORDED OCTOBER 9, 1990 IN BOOK 631 AT PAGE 666
RESOLUTION NO. 91-128 RECORDED OCTOBER 28, 1991 IN BOOK 660 AT PAGE 5
RESOLUTION NO. 92-133 RECORDED DECEMBER 7, 1992 IN BOOK 696 AT PAGE 685
RESOLUTION NO. 92-46 RECORDED JANUARY 7, 1993 IN BOOK 699 AT PAGE 970
RESOLUTION NO. 92-133 RECORDED JANUARY 27, 1993 IN BOOK 702 AT PAGE 174
RESOLUTION NO. 94-24 RECORDED JULY 29, 1994 IN BOOK 756 AT PAGE 922
RESOLUTION NO. 95-10 RECORDED FEBRUARY 15, 1995 IN BOOK 774 AT PAGE 47
RESOLUTION NO. PZ-95-08 RECORDED NOVEMBER 17, 1995 IN BOOK 799 AT PAGE 976
RESOLUTION NO. 96-141 RECORDED MARCH 19, 1997 UNDER RECEPTION NO. 402639
RESOLUTION NO. GMC-97-05 RECORDED MAY 23, 1997 UNDER RECEPTION NO. 404771
RESOLUTION NO. 20, SERIES OF 1995 RECORDED AUGUST 28, 1997 UNDER RECEPTION
NO. 407783
```

```
423272 10/15/1998 03:59P DECLARAT DAVIS SILVI
68 of 73 R 366.00 D 0.00 N 0.00 PITKIN COUNTY CO
```

ALTA COMMITMENT

Schedule B - Section 2

(Exceptions)                                            Our Order No.   Q372262-50

The policy or policies to be issued will contain exceptions to the following unless the same are disposed of to the satisfaction of the Company:

RESOLUTION NO. 97-7 RECORDED SEPTEMBER 29, 1997 UNDER RECEPTION NO. 408929
RESOLUTION NO. PZ-97-8 RECORDED SEPTEMBER 29, 1997 UNDER RECEPTION NO. 408930
ORDINANCE NO. 97-31 RECORDED NOVEMBER 25, 1997 UNDER RECEPTION NO. 411003
RESOLUTION NO. 97-167 RECORDED SEPTEMBER 30, 1998 UNDER RECEPTION NO. 422629
RESOLUTION NO. 39 (SERIES OF 1998) RECORDED OCTOBER 5, 1998 UNDER RECEPTION NO. 422779

15. TERMS, CONDITIONS AND PROVISIONS OF AGREEMENT RECORDED APRIL 28, 1981 IN BOOK 407 AT PAGE 648 AND ASSIGNMENTS THEREOF RECORDED DECEMBER 13, 1993 IN BOOK 734 AT PAGE 685 AND RECORDED DECEMBER 13, 1993 IN BOOK 734 AT PAGE 848

16. TERMS, CONDITIONS AND PROVISIONS OF AGREEMENT RECORDED APRIL 28, 1981 IN BOOK 407 AT PAGE 651 AND ASSIGNMENTS THEREOF RECORDED DECEMBER 13, 1993 IN BOOK 734 AT PAGE 685 AND RECORDED DECEMBER 13, 1993 IN BOOK 734 AT PAGE 848

17. TERMS, CONDITIONS AND PROVISIONS OF ORDER OF INCLUSION IN ASPEN CONSOLIDATED SANITATION DISTRICT RECORDED DECEMBER 09, 1997 UNDER RECEPTION NO. 411462.

18. TERMS, CONDITIONS AND PROVISIONS OF SPECIAL COVENANTS, CONDITIONS AND RESTRICTIONS RECORDED OCTOBER 27, 1997 UNDER RECEPTION NO. 409939.

19. EASEMENTS AND RIGHTS OF WAY FOR SNOW MAKING LINE, JONES DRAWOFF PIPE, TELEPHONE LINES, AND CABLE TV LINES AS CONSTRUCTED AND IN PLACE AS SET FORTH ON THE SURVEY OF A PORTION OF SUBJECT PROPERTY PREPARED BY SCHMUESER GORDON MEYER INC., DATED SEPTEMBER 21, 1997.

20. EASEMENT AND RIGHT OF WAY FOR ROAD, DESCRIBED ON THE SURVEY AS MEADOW LANE, AS CONSTRUCTED AND IN PLACE, AS SHOWN ON THE SURVEY OF A PORTION OF SUBJECT PROPERTY PREPARED BY SCHMUESER GORDON MEYER INC., DATED SEPTEMBER 21, 1997.

TERMS, CONDITIONS AND PROVISIONS OF RIGHT OF FIRST REFUSAL RECORDED OCTOBER 27, 1997 UNDER RECEPTION NO. 409940 AND 409941.

423272 10/15/1998 03:59P DECLARAT DAVIS SILVI
69 of 73 R 366.00 D 0.00 N 0.00 PITKIN COUNTY CO

ALTA COMMITMENT

Schedule B - Section 2

(Exceptions)                          Our Order No.   Q372262-50

The policy or policies to be issued will contain exceptions to the following unless the same are disposed of to the satisfaction of the Company:

22. EASEMENTS, RIGHTS OF WAY, TERMS, CONDITIONS, PROVISIONS AND OBLIGATIONS AS CONTAINED IN EASEMENT AGREEMENT (BLOCK D), RECORDED "TBD", 1998 UNDER RECEPTION NO. "TBD".

23. EASEMENT, RIGHTS OF WAY, TERMS, CONDITIONS, PROVISIONS AND OBLIGATIONS AS CONTAINED IN SKI EASEMENT AGREEMENT RECORDED "TBD", 1998 UNDER RECEPTION NO. "TBD".

24. TERMS, CONDITIONS AND PROVISIONS OF RAW WATER AGREEMENT, IRRIGATION, RECORDED OCTOBER 05, 1998 AT RECEPTION NO. 422780.

25. TERMS, CONDITIONS AND PROVISIONS OF WATER SERVICE AGREEMENT RECORDED OCTOBER 05, 1998 AT RECEPTION NO. 422782 AND FIRST ADDENDUM THERETO RECORDED OCTOBER 5, 1998 UNDER RECEPTION NO. 422783.

26. TERMS, CONDITIONS AND PROVISIONS OF AGREEMENT RECORDED OCTOBER 07, 1998 AT RECEPTION NO. 422899.

27. TERMS, CONDITIONS AND PROVISIONS OF USE AGREEMENT RECORDED DECEMBER 13, 1993 IN BOOK 734 AT PAGE 798.

NOTE: LAND TITLE GUARANTEE COMPANY WILL MAKE ADDITIONAL EXCEPTIONS FOR THOSE INSTRUMENTS RECORDED IN CONNECTION WITH ITEM NO. 10, SCHEDULE B-1.

THE FOLLOWING EXCEPTIONS EFFECT PARCEL O:

28. RIGHT OF PROPRIETOR OF A VEIN OR LODE TO EXTRACT AND REMOVE HIS ORE THEREFROM SHOULD THE SAME BE FOUND TO PENETRATE OR INTERSECT THE PREMISES AS RESERVED IN UNITED STATES PATENT RECORDED APRIL 07, 1903, IN BOOK 55 AT PAGE 507.

29. RIGHT OF WAY FOR DITCHES OR CANALS CONSTRUCTED BY THE AUTHORITY OF THE UNITED STATES AS RESERVED IN UNITED STATES PATENT RECORDED JUNE 25, 1957, IN BOOK 181 AT PAGE 506.



423272 10/15/1998 03:59P DECLARAT DAVIS SILVI
70 of 73 R 366.00 D 0.00 N 0.00 PITKIN COUNTY CO

# ALTA COMMITMENT

Schedule B - Section 2

(Exceptions)                                      Our Order No.   Q372262-50

The policy or policies to be issued will contain exceptions to the following unless the same are disposed of to the satisfaction of the Company:

30. EASEMENTS AND RIGHTS OF WAY FOR TRAIL PURPOSES AS GRANTED THE UNITED STATES OF AMERICA IN INSTRUMENT RECORDED JULY 10, 1972 IN BOOK 264 AT PAGE 946.

31. EASEMENT AND RIGHT OF WAY FOR WATER PIPELINE PURPOSES AS GRANTED ROBERT L. HILL AND ELAINE T. HILL IN INSTRUMENT RECORDED SEPTEMBER 18, 1961 IN BOOK 195 AT PAGE 231.

32. TERMS, CONDITIONS AND PROVISIONS OF AGREEMENT RECORDED APRIL 28, 1981 IN BOOK 407 AT PAGE 648 AND ASSIGNMENTS THEREOF RECORDED DECEMBER 13, 1993 IN BOOK 734 AT PAGE 685 AND RECORDED DECEMBER 13, 1993 IN BOOK 734 AT PAGE 848.

33. TERMS, CONDITIONS AND PROVISIONS OF AGREEMENT RECORDED APRIL 28, 1981 IN BOOK 407 AT PAGE 651 AND ASSIGNMENTS THEREOF RECORDED DECEMBER 13, 1993 IN BOOK 734 AT PAGE 685 AND RECORDED DECEMBER 13, 1993 IN BOOK 734 AT PAGE 848, AND AGREEMENT RECORDED JUNE 26, 1996 UNDER RECEPTION NO. 394113.

34. TERMS, CONDITIONS AND PROVISIONS OF RESOLUTION NO. 86-39 RECORDED JULY 18, 1986 IN BOOK 514 AT PAGE 719.

35. TERMS, CONDITIONS, PROVISIONS, OBLIGATIONS, EASEMENTS AND RIGHTS OF WAY AS SET FORTH IN EASEMENT AGREEMENT RECORDED FEBRUARY 4, 1993 IN BOOK 702 AT PAGE 808.

36. TERMS, CONDITIONS AND PROVISIONS OF USE AGREEMENT RECORDED DECEMBER 13, 1993 IN BOOK 734 AT PAGE 798.

37. EASEMENTS AND RIGHTS OF WAY FOR THE STEIN CASTLE DITCH AND THE MIDLAND FLUME DITCH AS THE SAME MAY EFFECT SUBJECT PROPERTY.

38. ANY QUESTION, DISPUTE OR ADVERSE CLAIMS AS TO ANY LOSS OR GAIN OF LAND AS A RESULT OF ANY CHANGE IN THE RIVER BED LOCATION BY NATURAL OR OTHER THAN NATURAL CAUSES, OR ALTERATION THROUGH ANY CAUSE, NATURAL OR UNNATURAL, OF THE CENTER THREAD, BANK, CHANNEL OR FLOW OF WATERS IN THE MAROON CREEK LYING WITHIN SUBJECT LAND; AND ANY QUESTION AS TO THE LOCATION OF SUCH

423272 10/15/1998 03:59P DECLARAT DAVIS SILVI
71 of 73 R 366.00 D 0.00 N 0.00 PITKIN COUNTY CO

ALTA COMMITMENT

Schedule B - Section 2

(Exceptions)  Our Order No.  Q372262-50

The policy or policies to be issued will contain exceptions to the following unless the same are disposed of to the satisfaction of the Company:

CENTER THREAD, BED, BANK OR CHANNEL AS A LEGAL DESCRIPTION MONUMENT OR MARKER FOR PURPOSES OF DESCRIBING OR LOCATING SUBJECT LANDS.

423272 10/15/1998 03:59P DECLARAT DAVIS SILVI
72 of 73 R 366.00 D 0.00 N 0.00 PITKIN COUNTY CO

ALTA COMMITMENT

## EXHIBIT D

### EXPANSION PROPERTY

The following five parcels of real property described in the Final Plat of Aspen Highlands Village P.U.D., recorded in the Office of the Clerk and Recorder of Pitkin County, Colorado, on October 15, 1998, as Reception No. __423275__, as follows: (i) Parcel A; (ii) Parcel 1; (iii) Parcel 2; (iv) Parcel 3, Block A; and (v) Parcel 4, Block A.

AND

A tract of Land located in the East half of Section 15 and the West half of Section 14, all in Township 10 South, Range 85 West of the sixth Principal Meridian, described as follows:

Beginning at a point on the West right of way line of the Maroon Creek Road whence the relocated witness corner to the West ¼ corner of said Section 14 bears North 83 degrees 47 minutes West 106.38 feet and South 86.33 feet (said relocated witness corner is located South 86.33 feet from the original location);
Thence South 17 degrees 06 minutes West 235.25 feet along the West right of way line of the Maroon Creek Road;
Thence around a curve to the left with a radius of 674.91 feet a distance of 104.44 feet along the West right of way line of the Maroon Creek Road;
Thence South 08 degrees 14 minutes West 211.16 feet along the west right of way line of the Maroon Creek Road;
Thence around a curve to the right with a radius of 527.60 feet a distance of 94.38 feet along the West right of way line of the Maroon Creek Road;
Thence South 18 degrees 29 minutes West 75.50 feet along the West right of way line of the Maroon Creek Road;
Thence North 75 degrees 25 minutes West 155 feet, to the centerline of Maroon Creek;
Thence Northeasterly along the centerline of Maroon Creek 940 feet;
Thence South 75 degrees 25 minutes East 252 feet to the West right of way line of the Maroon Creek Road;
Thence South 57 degrees 06 minutes West 27.36 feet along the West right of way line of the Maroon Creek Road;
Thence around a curve to the left with a radius of 326.56 feet a distance of 227.98 feet along the west line of the Maroon Creek Road to the point of beginning.

County of Pitkin, State of Colorado.



423272 10/15/1998 03:59P DECLARAT DAVIS SILVI
73 of 73 R 366.00 D 0.00 N 0.00 PITKIN COUNTY CO