Condominium to any such officials and agrees to indemnify, defend, and hold the Management Company, its representatives, servants, and employees, harmless from all loss, cost, expense, and liability whatsoever which may be imposed on them by reason of any present or future violation or alleged violation of such laws, ordinances, rules, or regulations. The cost of compliance with laws, ordinances, rules and regulations incurred by Management Company shall be a Common Expense of the Association.

9. <u>Waiver of Reserves.</u>

Notwithstanding the delegating by the Association to the Management Company of its power to determine and collect assessments during the term of this Agreement, the Association retains the power to waive required reserves making up a part of those assessments in the manner permitted by law.

10. <u>Payment of Common Expenses.</u>

The Management Company shall apply assessments collected to those items specified in the Declaration and bylaws of the Association, including the Management Company's fee and expenses in substantial accordance with the approved budget. Savings in one category of budgeted expenses may be used to offset overages in other categories.

11. <u>Collection of Assessments.</u>

With the authorization of the Executive Board, the Management Company may take such action in the name of the Association by way of filing, recording, satisfying, foreclosing, or vacating a lien against an Owner's Unit or separate Residence Interest should such Owner fail to pay assessments or maintenance fees, and take such other appropriate action, either in its name on behalf of the Association or in the name of the Association, or if necessary, engage legal counsel to pursue legal process. The Management Company may compromise liens in such amount as it deems advisable and render statements as to the current status of an Owner's account. In the case of a Residence Interest, any lien against an Owner of a Residence Interest in such Unit shall be limited to the Residence Interest owned by the defaulting Owner and shall not be filed so as to encumber the Residence Interests owned by any other Owners in such Unit. The Association shall aid and assist the Management Company in any reasonable manner requested by the Management Company in the request, demand, making or collecting of assessments, maintenance fees, charges, late fees or interest, or a combination thereof, which may be due the Association

12. <u>Denial of Use of Accommodations and Facilities.</u>

The Management Company is authorized to deny use of the accommodations and facilities of the Plan to any Owner who is delinquent in the payment of any assessment against such Owner for common expenses or for ad valorem real estate taxes and may deny such use to any person claiming under such delinquent Owner. The Management Company is also authorized to rent any delinquent Owner's Residence Interest and any use rights appurtenant thereto and apply the rental income towards the Management Company's customary rental

commissions, if any, cleaning charges, travel agent commissions, or any other commercially reasonable charges and all costs and expenses incurred by the Management Company in connection with the rental with the balance of such rental income applied to such delinquent Owner's account. The Management Company is not required to obtain the highest nightly rental rate available, nor any particular rental rate. However, the Management Company must use reasonable efforts to secure a rental that is commensurate with other rentals of similar units. The Management Company shall not be required to rent the entire Use Period.

13. **No Advances by Management Company.**

The Management Company shall not be required to pay Common Expenses from its own funds, and shall only be required to perform its services and to make disbursements to the extent that, and so long as, payments received from assessments or other revenues, if any, of the Association are sufficient to pay the costs and expenses of such services and the amounts of such disbursements. If it shall appear to the Management Company that the assessments and other revenue, if any, of said Association and its members are insufficient, the Management Company shall forthwith determine such additional assessment as is required and advise the Executive Board of the Association and its members. Any funds that may be advanced to the Association by the Management Company shall be repaid at the earliest possible date and if such advance was approved by the Executive Board, shall bear interest at the rate of eighteen percent (18%) per annum, or the highest interest rate allowed by law, until paid.

14. **Management Fee.**

As compensation for its services hereunder, the Management Company shall receive an annual net fee, free from all charges and expenses, which shall be an amount equal to (i) Six Hundred Dollars ($600) per Residence Interest from the Owners of the Fractional Ownership Interests (the "Residence Interest Management Fee"), and (ii) ten percent (10%) of all money the Management Company is required to collect from the Owners of the Commercial Units and the Deed Restricted Residential Units pursuant to the budget and for ad valorem taxes and special assessments if not part of the budget for such year, excluding from such budget for purposes of such calculation, the management fee hereunder and any revenue realized from the operation of the PBX system as described in Paragraph 4(V) above (the "Commercial and Deed Restricted Management Fee"). The Residence Interest Management Fee shall be increased annually at Management Company's sole discretion by the same percentage increase of the proposed new year's budget over the immediate prior year's budget excluding all amounts for the management fee. The Association, acting through its Executive Board, and the Management Company may in their mutual discretion elect to convert the entire management fee to a fixed annual fee (which may include periodic adjustments for inflation and the like). In any case, the Management Company shall pay itself from the funds of the Association such management fee on a monthly basis.

15. No Interference.

The Association shall not unreasonably interfere, nor allow or cause any of the officers or Owners to unreasonably interfere, with the Management Company in the performance of its duties or the exercise of any of its powers described in this Agreement.

16. Default.

If either party defaults hereunder, then the other party, sixty (60) days after having given written notice to any officer of the defaulting party, may declare this Agreement in default, unless such default is cured by the defaulting party within sixty (60) days after receipt of such notice. Upon default, either party may, in addition to any other remedy given it by agreement or in law or in equity, bring an action against the other party for damages, injunctive relief or such other rights and remedies as it may have, or a combination thereof, and the prevailing party shall be liable for the other party's reasonable attorneys' fees and costs incurred thereby. All of such rights upon default shall be cumulative, and the exercise of one or more remedies shall not be deemed to exclude or constitute a waiver of any other or additional remedy.

17. Approvals, Dispute Resolution and Arbitration.

Upon request of either party, any unresolved dispute arising out of this Agreement under Paragraph 3 hereof shall be submitted to an arbitration board, of at least five (5) members with two (2) chosen by the Executive Board, two (2) by the Management Company, and the fifth (5th) by the other arbitrators so chosen. All persons whose names have been submitted for consideration for appointment or designation as arbitrators, or who have been appointed or designated as such, shall, within 15 days, make a disclosure to the parties of any information which might cause their impartiality to be questioned including, but not limited to, any of the following instances:

(a) The person has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

(b) The person served as a lawyer in the matter in controversy, or the person is or has been associated with another who has participated in the matter during such association, or he or she has been a material witness concerning it.

(c) The person served as an arbitrator in another proceeding involving one or more of the parties to the proceeding.

(d) The person, individually or a fiduciary, or such person's spouse or minor child residing in such person's household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.

(e) The person, his or her spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person meets any of the following conditions:

      i.      The person is or has been a party to the proceeding, or an officer, director, or trustee of a party.

      ii.      The person is acting or has acted as a lawyer in the proceeding.

      iii.      The person is known to have an interest that could be substantially affected by the outcome of the proceeding.

      iv.      The person is likely to be a material witness in the proceeding.

(f)    The person has a close personal or professional relationship with a person who meets any of the following conditions:

      i.      The person is or has been a party to the proceeding, or an officer, director, or trustee of a party.

      ii.      The person is acting or has acted as a lawyer or representative in the proceeding.

      iii.      The person is or expects to be nominated as an arbitrator in the proceedings.

      iv.      The person is known to have an interest that could be substantially affected by the outcome of the proceeding.

      v.      The person is likely to be a material witness in the proceeding.

Unless otherwise agreed by the parties or the rules governing the arbitration, an arbitrator may be challenged only if circumstances exist that give rise to justifiable doubts as to his or her independence or impartiality, or as to his or her possession of the qualifications upon which the parties have agreed.

In no event shall the arbitration board be appointed more than sixty (60) days after either party's receipt of a written request from a party to arbitrate the claim or dispute. The arbitrators shall act in accordance with the Commercial Arbitration Rules then in effect of the American Arbitration Association. The decision of the majority of such arbitrators shall be binding on the respective Association, the Owners and the Management Company. Such decision shall include the awarding of costs, including reasonable attorneys' fees, as the arbitrators shall determine. The decision of the arbitrators shall be judicially enforceable as a judgment.

18.    <u>Indemnity.</u>

Neither the Management Company nor any affiliated entity shall be liable to the Association or the Owners for any loss or damage not caused by the Management Company's

gross negligence and own willful misconduct, and the Association and its members will and do hereby indemnify and save harmless the Management Company and any other affiliated entities from any such liability for all injury, loss, damages, costs and expenses (including attorney's fees) collectively, the ("Damages") arising from any cause whatsoever arising out of or resulting from Management Company actions under this Agreement, unless such Damages shall be caused by Management Company's own gross negligence or willful misconduct.

19. <u>Successors and Assigns.</u>

This Agreement shall be binding upon and inure to the benefit of the successors and assigns of the Management Company and the successors and assigns of the Association. Notwithstanding the preceding sentence, the Management Company shall not assign its interest under this Agreement except to an affiliate or in connection with the sale of all or substantially all of the assets of its business. In the event of such sale, the Management Company shall be released from all liability under this Agreement upon the express assumption of such liability by its assignee.

20. <u>Special Charges.</u>

Subject to the requirements for levy of Assessments as provided in the Declaration, the Management Company as agent for the Association shall be authorized to impose a special personal charge against an Owner for repair or replacement of Common Elements or property of the Association caused, in the opinion of the Management Company, by the negligence or misuse of an Owner, his family, guests, lessees or invitees; or failure, in the opinion of the Management Company, of an Owner to maintain those portions of his Unit and Limited Common Elements, if any, assigned to his Unit, as he or she is required to repair and maintain; or violation of the provisions of the Declaration which require the removal of same by the Management Company or which increase the costs of maintenance and repair by the Management Company, or increase insurance rates.

21. <u>Allocation of Expenses.</u>

The Management Company and its employees and agents may perform similar services for other condominium associations and entities. In this regard, the Management Company is authorized to provide such services, as appropriate, on a consolidated basis whereby such services are provided to more than one association. To require the Management Company to strictly cost account with regard to each condominium and fractional interest plan managed by the Management Company would increase the costs of administration hereunder borne by the Association. Accordingly, the Management Company is hereby authorized to allocate to the Association its appropriate and fair share of such costs and expenses as are general and, as to those which are not general, to charge the same to the appropriate party(ies) on such basis (weighted or not) as the Management Company deems fair and equitable.

22. Management Company Assumes No Liability.

The Management Company assumes no liability whatsoever for any acts or omissions of the Executive Board or the Association, or any previous boards or current or previous Owners of the Condominium, or any previous management or other agent of either. The Management Company assumes no liability for any failure of or default by any individual Owner in the payment of any assessment or other charges due the Association or in the performance of any obligations owned by any individual Owner to the Association. The Management Company likewise assumes no liability for any failure of or default by concessionaires in any rental or other payments to the Association, nor does the Management Company assume any liability for previously unknown violations of environmental or other regulations which may become known during the period this Agreement is in effect.

23. Proprietary Marks.

"Proprietary Marks" include, but are not limited to, all trademarks, trade names, symbols, logos, slogans, designs, insignia, emblems, devices, service marks and distinctive designs of buildings and signs, architectural plans, drawings, specifications, computer files, or combinations thereof, which are used to identify The Ritz-Carlton Development Company, Inc., the Management Company or any of their affiliates. All works in which copyright rests in Management Company or any affiliate of Management Company or any other and all patents registered or applied for in the name of Management Company or any affiliate of Management Company shall be considered "Proprietary Marks." The term "Proprietary Marks" shall include all present and future Proprietary Marks, whether they are now or hereafter owned by Management Company or any affiliate of Management Company, and whether or not they are registered under the laws of the United States of any other country. The name, "The Ritz-Carlton Club", used in conjunction with other words or names, are examples of Proprietary Marks. Proprietary Marks shall remain the exclusive property of Management Company or one of its affiliates. Upon termination of this Agreement, the Association shall have no right to use the Proprietary Marks and any use of the Proprietary Marks by the Association shall immediately cease. In addition, upon termination, neither the Association nor the Owners shall any longer be entitled to participate in or have access to any additional benefit or program provided or sponsored by Management Company or any of its affiliates.

24. Conflicting Provisions.

The invalidity in whole or in part of any provision of this Agreement shall not affect the validity of the remaining portions hereof. The provisions of this Agreement shall be paramount to the Condominium Act and the Plan as to those provisions where permissive variances are permitted; otherwise, the provisions of the aforesaid Acts shall prevail and shall be deemed incorporated herein. The applicable terms and provisions of the Declaration or the bylaws shall be deemed paramount to the terms and provisions of this Management Agreement and, where applicable, the terms and provisions of this Management Agreement shall be deemed amended to comply with the foregoing.

25. <u>No Waiver.</u>

No waiver of a breach of any of the covenants contained in this Agreement shall be construed to be a waiver of any succeeding breach of this same covenant.

26. <u>Time of Essence.</u>

Time is of the essence in every particular, and especially where the obligation is to pay money.

27. <u>Entire Agreement.</u>

This Agreement constitutes the entire agreement between the parties hereto, and neither party has been induced by the other by representations, promises or understandings not expressed herein. No modification to any provision hereof shall be valid unless in writing, signed by the parties to this Agreement.

28. <u>Notices.</u>

Any notices required or provided for in this Agreement shall be in writing and shall be addressed as indicated below or to such other address as the Management Company or the Association may specify hereafter in writing.

**TO THE MANAGEMENT COMPANY**

> The Ritz-Carlton Management Company, L.L.C.
> 6649 Westwood Boulevard, Suite 500
> Orlando, Florida 32821-6090
> Attention: Vice President of Operations

**TO THE ASSOCIATION**

> President of the Board at the address of the President as on file with the Management Company.

Notices or other communications between the parties to this Agreement may be mailed by United States registered or certified mail, return receipt requested, postage prepaid, and may be deposited in a United States Post Office or a depository regularly maintained by the post office. Such notices may also be delivered by hand, by facsimile or by any other receipted method or means permitted by law. For purposes of this Agreement, notices shall be deemed to have been "given" or "delivered" upon personal delivery thereof or forty-eight (48) hours after having been deposited in the United States mails as provided herein.

29. **Affiliated Corporations.**

The Management Company is an affiliated company of a wholly-owned subsidiary of The Ritz-Carlton Development Company, Inc.

30. **Independent Contractor.**

The parties hereby agree and acknowledge that the Management Company is an independent contractor of the Association. The Association hereby releases any right of control over the method, manner or means by which the Management Company performs its duties and responsibilities under this Agreement.

31. **Excusable Delays.**

In the event that the Management Company shall be delayed, hindered in or prevented from the performance of any act required hereunder by reason of strikes, lock-outs, labor troubles, inability to procure materials, failure of power, restrictive governmental laws or regulations, riots, insurrection, war, Act of God, or any other reason beyond the Management Company's control, then performance of such act shall be excused for the period of the delay, and the period for the performance of any such act shall be extended for a period equivalent to the period of such delay.

32. **Brand Standards.**

For so long as this Agreement remains in effect, the parties agree that the Condominium shall be maintained in accordance with The Ritz-Carlton Standards, which standards are defined as the standards of operation, service, furnishing, equipping, and maintenance applicable to substantially all of The Ritz-Carlton branded hotels managed by The Ritz-Carlton Hotel Company, L.L.C., an affiliate of Management Company. Any failure of the Association to maintain the Condominium in accordance with The Ritz-Carlton Standards, which failure is not caused by the acts or omissions of Management Company, shall constitute a default under this Agreement and the sole remedy of Management Company, subject to the right of notice and right to cure as provided for in Section 15, shall be to terminate this Agreement..

33. **Survival of Provisions.**

All representations and warranties of the parties contained herein shall survive the termination of this Agreement. All provisions of this Agreement that require the Association to have insured or to defend, reimburse, or indemnify the Management Company shall survive any termination; and if the Management Company is or becomes involved in any proceeding or litigation by reason of having been the Management Company for the Association, such provisions shall apply as if this Agreement were still in effect.

IN WITNESS WHEREOF, the parties hereto have caused these presents to be signed by their proper officer(s) as of the date first written above.

THE RITZ-CARLTON
MANAGEMENT COMPANY, L.L.C.

By: The Ritz-Carlton Club Development
Company, Inc., Sole Member

By: *(signature)*
Name: Joseph F. Scalo
Title: Vice President


ASPEN HIGHLANDS
CONDOMINIUM ASSOCIATION, INC.

By: _____
Name: William J. Love
Title: President

17

AHV - Management Agreement 01092001 cln

IN WITNESS WHEREOF, the parties hereto have caused these presents to be signed by their proper officer(s) as of the date first written above.

THE RITZ-CARLTON
MANAGEMENT COMPANY, L.L.C.

By: The Ritz-Carlton Club Development Company, Inc., Sole Member

By:_____
Name:_____Joseph F. Scalo_____
Title:_____Vice President_____


ASPEN HIGHLANDS
CONDOMINIUM ASSOCIATION, INC.


By:_____
Name:_____William J. Love_____
Title:_____President_____