**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-01301-PAB-GPG

**RCHFU, LLC et al.**

Plaintiffs,

v.

**MARRIOTT VACATIONS WORLDWIDE CORPORATION et al.**

Defendants.

---

**PLAINTIFFS' OPPOSITION TO DEFENDANT ASPEN HIGHLANDS CONDOMINIUM ASSOCIATION'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

---

## I.  INTRODUCTION

Plaintiffs are the owners of fractional interests in condominiums at the Ritz-Carlton Club Aspen Highlands ("Ritz-Aspen"). Plaintiffs paid premium prices for these interests based on the Ritz-Carlton brand and promises that Ritz-Carlton Club members would have exclusive access to the Ritz-Aspen and a handful of other similar luxury Ritz-Carlton properties. Defendants, including the Aspen Highlands Condominium Association ("Association") took actions that destroyed 80% of the value of Plaintiffs fractional interests. This lawsuit seeks compensation for that lost value.

Plaintiffs' Second Amended Complaint ("SAC") adequately alleges that the Association breached or aided and abetted the other Defendants' breach of fiduciary duties owed to Plaintiffs—including the duty of loyalty—by (1) participating in the decision to affiliate with the

1

Marriott Vacation Club, and (2) failing to enforce Section 19.8 of the Declaration of Condominium (Ex. H to SAC) which, according to the Association's own attorneys, prohibited the affiliation. The affiliation served the interests of the Marriott Defendants, but decimated the values of Plaintiffs' fractional interests at the Ritz-Aspen by giving 400,000 Marriott Vacation Club members access to the Ritz-Aspen for a fraction of the cost that Plaintiffs paid for their fractional interests.

The Association does not present any valid grounds to dismiss the SAC. First, the Association's argument that the action against it should be dismissed because Plaintiffs made no pre-suit demand lacks merit because demand is not required, where as here, it would be futile.[1] Next, the Association is incorrect that the business judgment rule requires dismissal because whether the Association exercised good faith and honest business judgment is a question of fact, inappropriate for resolution on a motion to dismiss. Finally, the SAC adequately pleads the elements of aiding and abetting the breach of fiduciary duty, so that claim should also be upheld.

## II.     STATEMENT OF THE CASE

The Ritz-Aspen is a luxury fractional ownership property located in Aspen, Colorado. SAC at ¶ 4. It was established in 2001 as the first property under the Ritz-Carlton Destination Club ("Ritz-Carlton Club") brand, designed to be an upscale alternative to Defendant MVCI's other timeshare product line – the Marriott Vacation Club. SAC at ¶ 4. MVCI had been running timeshare operations since the 1980s, but introduced the Ritz-Carlton Club brand in 1999 to sell fractional ownership interests that were more exclusive and deluxe in nature – distinct from the

---

[1] *See Colorado Homes v. Loerch-Wilson*, 43 P.3d 718, 721 (Colo. App. 2001) (citing *Higley v. Kidder Peabody & Co.,* 920 P.2d 884 (Colo. App. 1996)) (the law does not require a party to perform a futile act in order to assert an important right).

Marriott Vacation Club. SAC at ¶¶ 2-3. As such, Ritz-Carlton Club interests were substantially more expensive than Marriott Vacation Club interests. SAC at ¶ 3. An owner of a 1/12 fractional interest at the Ritz-Aspen would be entitled to four weeks of stay there per year. SAC at ¶ 3. Owners would also be a part of the Ritz-Carlton Club Membership Program ("Membership Program"), through which they could use their allotted weeks to reserve stays at their Ritz-Aspen unit as well as at sister Ritz-Carlton Club resorts, such as ones located in Lake Tahoe, St. Thomas, and Maui. SAC at ¶¶ 3-4. Between 2001 and 2012, hundreds of individuals and entities, including Plaintiffs, paid premium prices ranging from $150,000 to $400,000 for their deeded 1/12 fractional interests at the Ritz-Aspen. SAC at ¶ 6. These interests were sold based on Defendants' claims that they were superior to MVCI's other timeshare offerings, and that the Ritz-Aspen would operate for the exclusive use and enjoyment of Ritz-Carlton Club members as well as their families and guests. SAC at ¶ 6.

Defendant Association was created to manage, administer, operate, and maintain the Ritz-Aspen condominium project that houses Plaintiffs' fractional interests ("Condominium"). SAC at ¶ 22; Ex. H at ¶ 23.6.[2] In 2001, the Association entered into a written agreement, referred to as the "Management Agreement," with RC Management whereby RC Management would "act on behalf of the Association and its members as the exclusive managing entity and … manage the daily affairs of the Condominium and the [Fractional Ownership Interest] Plan." SAC at ¶ 25; Ex. A at ¶ 2.[3] RC Management had all the power and authority necessary to carry

---

[2] All exhibit citations are to exhibits to the Second Amended Complaint, ECF No. 40.

[3] The Declaration states, "It is contemplated that the (Board) will delegate the responsibility for administration and management of the Plan of Fractional Ownership, including the powers and duties described in Section 23.8 below, to a Managing Agent pursuant to a Management Agreement." Ex. H at ¶ 23.6

3

out its duties in maintaining and managing Plaintiffs' property. SAC at ¶ 26. The agreement enumerated numerous specific delegations of authority to RC Management, one of them being the power to hire a "program manager" to manage and administer the reservation procedures and exchange program for the Membership Program. SAC at ¶ 34. RC Management exercised that authority by hiring Defendant Cobalt, via an Affiliation Agreement, to operate the reservation system through which Ritz-Aspen owners obtain use of their allotted number of days at the Ritz-Aspen, as well as sister Ritz-Carlton resorts. SAC at ¶ 40.[4] The Affiliation Agreement grants Cobalt sole discretion in electing to affiliate the Ritz-Carlton Membership Program, of which all Ritz-Aspen owners are members, with "other locations . . . as Member Clubs or Associated Clubs from time to time." SAC at ¶ 40.

In 2012, MVW began disclosing its intent to scale back its luxury products line – namely, the Ritz-Carlton Club properties and Membership Program. SAC at ¶ 8. In a July 17, 2012 letter, Eveleen Babich, general manager of Cobalt, first informed Ritz-Aspen owners of the possibility that the Ritz-Carlton Club would be affiliated with the Marriott Vacation Club. SAC at ¶ 47. The letter described the affiliation as a means for Ritz-Aspen owners to use their allocated time to stay at Marriott Vacation Club resorts, but failed to mention that the affiliation would also allow the 400,000 Marriott Vacation Club members to access the Ritz-Carlton Club locations. SAC at ¶¶ 47-48. In the months following Ms. Babich's letter, various member-controlled Boards of Directors of various Ritz-Carlton Club properties expressed extreme concern about the proposed affiliation. SAC at ¶¶ 49-53. The Boards were concerned that such an affiliation would dilute the Ritz-Carlton brand, for which Ritz-Carlton Club owners paid premium prices. SAC at ¶¶ 49, 52.

---

[4] Four parties executed the Affiliation Agreement: Ritz Carlton Development Company (the developer), RC Management, Cobalt, and the Association. Ex. B.

4

The Association wrote to members of the Aspen Highlands club that "The Board has concerns that . . . the nature of our club will change by opening the club to MVW timeshare/points members who have a much lower cost of entry." SAC at ¶ 52. Discussions between MVW and the Boards of various Ritz-Carlton Club properties regarding the proposed affiliations continued throughout 2012. SAC at ¶¶ 58, 60.

In April 2013, the Association wrote to Ritz-Aspen owners to inform them that unless a majority of Ritz-Aspen owners voted in favor of doing so, the Ritz-Aspen would not be included in the Marriott Vacation Club affiliation. SAC at ¶ 60; Ex. L. No such vote ever took place. SAC at ¶ 61. Even so, in April 2014, Cobalt, acting in concert with the other Defendants, including RC Management and the Association, decided to include the Ritz-Aspen in the Marriott Vacation Club affiliation. SAC at ¶ 62. This decision was in direct contravention to Defendants' previous representations to Ritz-Aspen owners, including Plaintiffs. SAC at ¶ 64. The Association wrote a letter to Ritz-Aspen owners to inform them of the decision, disingenuously stating that the affiliation occurred "[i]n response to the Members' wishes." SAC at ¶ 63, Ex. M.

Due to Defendants' actions, approximately 400,000 Marriott Vacation Club members – who paid a small fraction of the purchase prices Plaintiffs paid, and who pay approximately one-third in annual fees – have access to luxury Ritz-Carlton brand resorts that were formerly only available to Plaintiffs and other Ritz-Carlton Aspen owners. SAC at ¶ 67. While Defendants have derived huge profits and cost savings from this affiliation, the value of Plaintiffs' fractional interests have been destroyed. SAC at ¶ 67. Even more, Plaintiffs have had to pay, in the form of inflated annual maintenance fees, for the increased use and wear-and-tear resulting from the opening of the Ritz-Aspen to Marriott Vacation Club members. SAC at ¶ 67. Defendant

5

Association acted in favor of the Marriott Defendants' interests, and contrary to Plaintiffs' best interests – manifestly breaching their fiduciary duties to Plaintiffs, including the duty of loyalty.

### III. STANDARD

In ruling on a Rule 12(b)(6) motion to dismiss, the court's function "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's amended complaint alone is legally sufficient to state a claim for which relief may be granted." *Brokers' Choice of Am., Inc. v. NBC Universal*, 757 F.3d 1125, 1136-37 (10th Cir. 2014) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)). While a plaintiff is obligated to plead more than "mere labels and conclusions," a complaint need not contain detailed factual allegations to survive a motion to dismiss. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a motion to dismiss, the court must accept the facts alleged in the complaint as true, and it must make all reasonable inferences in favor of the plaintiff. *Bell Atl. Corp.*, 550 U.S. at 555-56, 592.

### IV. ARGUMENT

#### A. Demand Was Not a Precondition to this Lawsuit as It Would Have Been Futile

Demand is not required where it would be futile. *Neusteter v. District Court*, 675 P.2d 1, 7 (Colo. 1984) (excusing demand requirement on grounds of futility in analogous context of derivative action under C.R.C.P. 23.1); *Greenfield v. Hamilton Oil Corp.*, 760 P.2d 664, 666 (Colo. App. 1988); *New Crawford Valley, Ltd. v. Benedict*, 847 P.2d 642, 645 (Colo. App. 1993). The purpose of a demand requirement is to afford the directors or managers an opportunity to

determine whether a shareholder suit would be in the best interests of the corporation. *Seni on Behalf of Ciber, Inc. v. Peterschmidt*, 2014 WL 5812149, *2 (D. Colo. Nov. 10, 2014). Here, requiring Plaintiffs to make a demand would be futile for at least two reasons: (1) Plaintiffs would be asking the Association to sue itself; and (2) the Association does not believe the affiliation constituted wrongdoing, as evidenced by the arguments made in its Motion to Dismiss (ECF No. 46, "Motion").

First, Plaintiffs were not required to perform the futile act of demanding that the Association sue itself. *See New Crawford Valley*, 847 P.2d at 645. Where those who have the ability "to seek relief are the very persons alleged to have committed the wrongs sought to be remedied," plaintiffs need not make any demand before commencing suit. *Neusteter*, 675 P.3d at 7 (noting that "[t]he futility of seeking the desired action from the alleged wrongdoers is patent"). Here, Plaintiffs sued the Association for breaching its duty of loyalty and duty to enforce restrictive covenants set forth in the Declaration. SAC at ¶ 24. The SAC also alleges that the Association was a key player in aiding and abetting other Defendants in the decision to affiliate the Ritz-Aspen with Marriott Vacation Club. Specifically, the SAC explains that the Association was in active discussions with MVW about the proposed affiliation. SAC at ¶¶ 57, 58. The Association misled owners, including Plaintiffs, into believing that unless the owners voted in favor of doing so, the Ritz-Aspen would not be included in the Marriott Vacation Club. SAC at ¶ 60. Despite no vote ever taking place, the Association announced to the owners that the affiliation was implemented, and that Marriott Vacation Club owners would have access to the Ritz-Aspen. SAC at ¶ 63. The affiliation is the primary wrongdoing that Plaintiffs allege in the

7

SAC. It would, therefore, be futile for Plaintiffs to demand that the Association pay damages for a wrongdoing that it implemented.

Even more, futility is confirmed by the Association's stance that the affiliation was proper. Throughout its Motion, the Association states its view that the affiliation did no harm to Plaintiffs. *See, e.g.*, Motion at 2-3 (referring to the affiliated Marriott Vacation Club exchange program as a "totally optional and voluntary" opportunity); *Id.* at 8 (stating that the affiliation simply allows each member to "trade or rent the property that he or she owns"); *Id.* at 10 ("the voluntary arrangement that the Association forged with the Marriott manager does not violate Section 19.8 of the Declaration, and Plaintiffs have failed to allege any facts showing that the Association breached its fiduciary duties . . ."). Thus, the Association itself demonstrates that demand would have been futile by stating that the affiliation did not constitute any wrongdoing, and that in its view, Section 19.8 of the Declaration is inapplicable to the affiliation.

Protecting the same right at issue here, the Court of Appeals in *Colorado Homes* reinstated claims of breach of fiduciary duty by a unit owner against both the homeowners association and its managing agent, rejecting the defendants' argument that plaintiffs waived their right to bring the fiduciary duty claims by not pleading an express breach of fiduciary duty claim in its amended complaint. 43 P.3d at 721. Because the trial court had already rejected this theory, the appellate court held that seeking to amend to add the fiduciary duty claim "would have been an act of futility." *Id.* (citing *Higley,* 920 P.2d at 891) (Colo. App. 1996) ("the law does not require a party to perform a futile act in order to assert an important right")). Here, similarly, the law did not require Plaintiffs to perform the futile act of making a demand that the Association would have certainly rejected, as indicated in its Motion.

### B. The SAC Adequately Alleges the Association's Breach of Fiduciary Duty

#### 1. The Association breached its duty of loyalty to Plaintiffs by imposing the affiliation

In addition to the existence of a fiduciary duty, Plaintiffs must also allege a breach of that duty and damages. *F.D.I.C. v. Refco Grp., Ltd.*, 989 F.Supp. 1052, 1080 (D. Colo. 1997). The Association does not contest that it owes a fiduciary duty to Plaintiffs. *See generally* Motion. Indeed, it is well established under Colorado law that a homeowners association owes a fiduciary duty to individual owners. *Colorado Homes*, 43 P.3d at 722-23. The Association merely contends that Plaintiffs failed to plead a breach of fiduciary duty. Motion at 7-12. Yet the SAC alleges, in detail, how the Association breached its duty.

First, the Association, with the other Defendants, breached its duty of loyalty by favoring the interests of Defendants MVW, RC Management, Cobalt, and Lion & Crown to the detriment of Plaintiffs' interests. The Association's conduct, through the affiliation, allows over 400,000 Marriott Vacation Club members—who paid a small fraction of the purchase prices Plaintiffs paid and who pay one third of the annual fees Plaintiffs pay—to use their "points" to obtain access to the units and amenities at the Ritz-Aspen. SAC at ¶ 67. The SAC further explains that the Association was in active discussions with MVW in 2012 and 2013 regarding the proposed affiliation, and that the Association represented to Plaintiffs that the affiliation would not take place unless Ritz-Aspen owners voted in favor of it. SAC at ¶ 60. There was never such a vote; yet it was the Association that announced to Plaintiffs in April 2014 that the affiliation took place anyway. SAC at ¶¶ 63-64. These acts exhibit the Association's breach of the fiduciary duty it owed to the owners.

9

Separately, the SAC alleges that the Association breached its fiduciary duty to Plaintiffs by failing to enforce a restrictive covenant against further timesharing, Section 19.8 of the Declaration of Condominium for Aspen Highlands Condominiums. SAC at ¶¶ 62, 66, 70; Ex. H. Under *Colorado Homes*, 43 P.3d at 721-22, a homeowners association has a fiduciary duty to enforce restrictive covenants. Here, Section 19.8 states that "no Unit shall be used for the operation of a timesharing, fraction-sharing . . . program whereby the right to exclusive use of the Unit is alternated or scheduled among participants . . ." SAC at ¶ 54, Ex. H to SAC. The SAC alleges that the Association was concerned that this restrictive covenant would not permit the affiliation (SAC at ¶ 71), was informed by its lawyers that such an affiliation could not take place absent an amendment to the Declaration (SAC at ¶ 71), and that MVW was on notice of that legal opinion. *Id.* Yet, against the advice of its own lawyers, the Association, with the other Defendants, proceeded to carry out the affiliation. SAC at ¶ 71. In sum, the SAC adequately alleges the manner and means in which the Association breached its fiduciary duty to Plaintiffs.

That the Association now asserts a different interpretation of this contractual provision that favors the other Defendants is troubling. Motion at 9. But the correct interpretation of this very general provision is a question for another day; ambiguities in contractual language must not be resolved on a motion to dismiss. *Chimney Rock Pub. Power Dist. v. Tri-State Generation & Transmission Ass'n, Inc.*, 2012 WL 84572, *7 (D. Colo. Jan. 11, 2012) ("It is not appropriate for the Court to resolve this breach of contract claim at the pleading stage based on an alleged breach of such a general and ambiguous contractual provision"); *Test Servs., Inc. v. Princeton Review, Inc.*, 2005 WL 3211594, *5 (D. Colo. Nov. 29, 2005) ("[I]f a contract is found to be

ambiguous, a motion for summary judgment—much less a motion to dismiss—on a breach of contract claim is improper") (quotation marks omitted).

### 2. Whether the business judgment rule applies is a question of fact

The Association concedes that in order to take shelter under the business judgment rule, it must show that it acted in good faith when it participated in the decision to affiliate with the Marriott Vacation Club. Motion at 7-8. But "[w]hether a party acted in good faith is a question of fact which must be determined on a case by case basis." *Polk v. Hergert Land & Cattle Co.*, 5 P.3d 402, 405 (Colo. App. 2000) (citing *Amoco Oil Co. v. Ervin,* 908 P.2d 493 (Colo. 1995)).

*Polk* involved claims that certain members of a closely held family agriculture corporation were engaging in oppressive conduct and acts of self-dealing. *Id.* at 404. Defendants sought summary judgment, in part, on the grounds that their actions were protected by the business judgment rule. *Id*. at 406. While the trial court granted summary judgment, the appellate court reversed, stating, "[n]or does application of the business judgment rule justify summary judgment. That rule applies only to actions taken in good faith, *see Wolf v. Rose Hill Cemetery Ass'n, supra,* and the Hergerts' good faith is a disputed issue of fact. Whether their actions were protected by the business judgment rule cannot be resolved on summary judgment." *Id.*

The holding of *Polk* applies with greater force to the Association's Motion to dismiss this action, not on summary judgment, but at the pleadings stage. The Motion must be denied because whether the Association acted in good faith in compliance with the business judgment rule is a question of fact for the jury to resolve.

### C. The SAC Adequately Alleges Aiding and Abetting and Conspiracy Claims Against the Association

The SAC thoroughly alleges an aiding and abetting a breach of fiduciary duty claim against the Association. To prevail on such a claim, a plaintiff must establish three elements: "(1) breach by a fiduciary duty owed to a plaintiff, (2) a defendant's knowing participation in the breach, and (3) damages." *Kirzhner v. Silverstein*, 2010 WL 2985615, *11 n.13 (D. Colo. July 23, 2010). All three elements are sufficiently pled here. First, the SAC alleges that the Association, RC Management, and Cobalt each owe a fiduciary duty to Plaintiffs by virtue of their high degree of control over Plaintiffs' property interests, as well as agency (and subagency) relationships. SAC at ¶¶ 24, 36, 42. The SAC further alleges that Cobalt breach its fiduciary duties to Plaintiffs by working with the other Defendants to effectuate the affiliation. SAC at ¶¶ 9, 62, 64. The SAC then lays out specific facts detailing the Association's active participation in that breach. Paragraph 52 states that the Association was working with MVW executives to "better understand the proposed affiliation." Paragraph 57 explains that it was the Association that issued a letter to Plaintiffs revealing that counsel had advised that any affiliation would require a revision of the underlying Association documents. Moreover, Paragraphs 60 and 63 allege that it was the Association that misled Plaintiffs into believing that the affiliation would not occur absent a favorable vote by the owners. The SAC also plainly alleges damages – that Defendants' wrongful acts caused the value of Plaintiffs' property interests to plummet, and forced Plaintiffs to pay steadily increasing annual dues. SAC at ¶¶ 9, 43, 67, 75, 88.

The Association gripes of Plaintiffs' aiding and abetting claim merely by concluding that it cannot "be liable for aiding and abetting another Defendants' breach of fiduciary duty because Plaintiffs have failed to identify any facts to support such an allegation." Motion at 12. Yet, as

12

explained above, the SAC alleges how the Association aided and abetted Cobalt and the other Defendants in deciding on the affiliation and imposing it on the owners, including the Plaintiffs.

The Association's attack on Plaintiffs' conspiracy claim is as faint as its attack on Plaintiffs' aiding and abetting claim. In fact, the Association makes no substantive argument about the conspiracy claim, instead only concluding that Plaintiffs fail to allege any underlying breach of fiduciary duty "for the reasons discussed above." Motion at 13-14. But as explained throughout this opposition, the SAC adequately alleges a breach of fiduciary duty by all Defendants as well as the Association's active participation in that breach.[5]

## V.     CONCLUSION

For all the above reasons, the Association's motion to dismiss should be denied, with the exception of the fourth cause of action for unjust enrichment. In the event that the Court grants the Association's motion to dismiss, plaintiffs respectfully request leave to amend.

Dated: August 15, 2016                    Respectfully submitted,

                                          GIBBS LAW GROUP LLP

                                          */s/ Michael Schrag*
                                          Michael Schrag (admitted *pro hac vice*)
                                          505 14th Street, Suite 1110
                                          Oakland, CA 94612
                                          Phone: (510) 350-9718
                                          Facsimile: (510) 350-9701
                                          E-mail: mls@classlawgroup.com

                                          *Attorneys for Plaintiffs*

---

[5] Plaintiffs will not pursue a claim for unjust enrichment against the Association.

## CERTIFICATE OF SERVICE

      I, the undersigned, hereby certify that on this 15th day of August, 2016, a true and accurate copy of the foregoing **Plaintiffs' Opposition to Defendant Aspen Highlands Condominium Association's Motion to Dismiss Plaintiffs' Second Amended Complaint** was filed and served via CM/ECF filing system upon following:

| | |
|---|---|
| Matthew C. Ferguson, Esq.<br>The Matthew C. Ferguson Law Firm, P.C.<br>119 South Spring, Suite 201<br>Aspen, Colorado 81611 | Daniel F. Shea, Esq.<br>Jessica Black Livingston, Esq.<br>Hogan Lovells US LLP<br>1200 Seventeenth Street, Suite 1500<br>Denver, Colorado 80202 |
| Michael J. Reiser, Esq.<br>Lilia Bulgucheva, Esq.<br>Law Office of Michael J. Reiser<br>961 Ygnacio Valley Road<br>Walnut Creek, California 94596 | Naomi G. Beer, Esq.<br>Greenberg Traurig, LLP<br>1200 17th Street, Suite 2400<br>Denver, Colorado 80202 |
| Michael L. Schrag, Esq.<br>Gibbs Law Group LLP<br>1 Kaiser Plaza, Suite 1125<br>Oakland, California 94612 | Ian S. Marx, Esq.<br>Philip R. Sellinger, Esq.<br>Greenberg Traurig, LLP<br>500 Campus Drive, Suite 400<br>Florham Park, New Jersey 07932 |
| Tyler R. Meade, Esq.<br>The Meade Firm p.c.<br>1816 Fifth Street<br>Berkeley, California 94710 | |

                                                */s/ Linda Lam*
                                                Linda Lam