IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 16-01301 PAB

RCHFU, LLC, et al.

    Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al.

    Defendants.

### MARRIOTT DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

The Marriott Defendants respectfully submit the following reply brief in further support of their motion to dismiss the SAC pursuant to Fed. R. Civ. P. 12(b)(6).[1]

### INTRODUCTION

Plaintiffs devote virtually all of their opposition brief to arguing that the Association, RC Management and Cobalt owed them a fiduciary duty to enforce restrictive covenants. But they barely mention the dispositive issue in this case: whether the contract documents actually contain a restrictive covenant prohibiting the MVC Affiliation. If no such restrictive covenant exists, then whether or not Plaintiffs were owed a fiduciary duty is irrelevant. As explained in Defendants' moving brief, nothing in the contract documents, including in the two documents upon which Plaintiffs rely, prohibited the MVC Affiliation. *See* Def. Br. at 12-16. Indeed, another District Court examining the same contract documents at issue here (and applying

---

[1] Defined terms are as set forth in Defendants' moving brief in support of their motion to dismiss the SAC ("Def. Br.").

Colorado law) has found that the MVC Affiliation was contractually permitted. *See id.* at 16. Plaintiffs' inability to plausibly allege a restrictive covenant prohibiting the MVC Affiliation sounds the death knell for their case.[2]

Even if a restrictive covenant existed, neither of the two bases upon which Plaintiffs posit a fiduciary duty for RC Management and Cobalt applies here. First, Plaintiffs allege that RC Management exerted a "high degree of control" over their fractional interests and that such control gave rise to a fiduciary duty. As an initial matter, the contract documents show that RC Management had no such control. In any event, mere control over plaintiff's property is not enough. For a fiduciary duty to be found based on defendant's control over plaintiff's property, the parties must have had a special relationship wherein defendant invited plaintiff's trust and confidence. Plaintiffs do not, and cannot, allege that they had any special relationship with RC Management or Cobalt or that either of those entities invited their trust and confidence.

Nor can Plaintiffs plausibly allege a principal/agent relationship between the Association and RC Management (and, by extension, Cobalt). Not only does the Management Agreement disclaim any such relationship, but it also expressly identifies RC Management as an independent contractor. In addition, the Management Agreement gives the Association no right

---

[2] Although not relevant to this motion to dismiss, Plaintiffs' repeated claim that owners were never allowed to vote on the MVC Affiliation is incorrect. *See, e.g.,* Pl. Br. at 6 (asserting that, although "the Association wrote to Ritz-Aspen owners that unless a majority of the owners voted in favor of doing so, the Ritz-Aspen would not be included in the MVC affiliation … [n]o such vote ever took place"); *see also* SAC ¶¶ 61, 64-66, 81, 86-87 (same). In fact, although not contractually required to do so, in 2013, Marriott conducted a vote of all 876 Ritz-Aspen unit owners, asking whether they were in favor of, or opposed to, the MVC Affiliation. A majority of those responding voted in favor of the MVC Affiliation. Should this case continue, documents evidencing this vote will be used to support a motion for summary judgment.

2

to control RC Management's activities, and a principal's right to control its agent is the key element of any principal/agent relationship.

Implicitly acknowledging the myriad deficiencies of their claims, Plaintiffs assert that a breach of fiduciary duty claim cannot be dismissed on a Rule 12(b)(6) motion. In fact, such claims are routinely dismissed on the pleadings, and the Court should do so here. Plaintiffs' inability to state breach of fiduciary duty claims against RC Management, Cobalt and the Association moots their aiding and abetting, conspiracy and unjust enrichment claims against all Defendants. Accordingly, the SAC should be dismissed in its entirety.

## ARGUMENT

### I. NO RESTRICTIVE COVENANT PROHIBITED THE MVC AFFILIATION

It is telling that, out of Plaintiffs' entire 18-page opposition brief, only two paragraphs at the very end are devoted to the threshold issue of this case: whether a restrictive covenant prohibited the MVC Affiliation. *See* Pl. Opp. at 17-18. In their cursory treatment of this central question, Plaintiffs do not substantively address the Marriott Defendants' detailed contract arguments. Rather, they simply assert that "interpretation of [the relevant contract provisions] should not be resolved at the pleading stage." *See* Pl. Opp. at 17. That is incorrect, as it is well established that "contract interpretation is a question of law for the court…." *Copper Mountain, Inc. v. Indus. Sys., Inc.,* 208 P. 3d 692, 696 (Colo. 2009).[3] The contract documents here show

---

[3] The case Plaintiffs cite in arguing to the contrary is inapposite. *See* Pl. Opp. at 18 (citing *Chimney Rock Pub. Power Dist. v. Tri-State Generation & Transmission Ass'n, Inc.,* 2012 WL 84572 (D. Colo. Jan. 11, 2012), as "declining to grant a motion to dismiss 'based on an alleged breach of such a general and ambiguous contractual provision'"). Plaintiffs have taken the *Chimney Rock* Court's words out of context. At issue in that case was whether plaintiff had stated a claim for breach of the implied covenant of good faith and fair dealing. Defendants had asked the Court to determine, simply by looking at a contract provision, what the parties had

3

that the restrictive covenant Plaintiffs posit does not exist.  *See* Def. Br. at 12-16.  The Master Declaration merely provides that,"[o]ther than the right of Declarant … to create Fractional Ownership Interests … no Unit shall be used for the operation of a timesharing, fraction-sharing, or similar program…."  Master Decl. (Greene Decl. Ex. A) § 8.25.  That clear statement means exactly what it says, namely, that only Declarant may create Fractional Ownership Interests for use in the operation of a timeshare program.  That provision is unambiguous and cannot reasonably be read as a restrictive covenant prohibiting the MVC Affiliation.  *Cf. Compass Ins. Co. v. City of Littleton,* 984 P. 2d 606, 619 (Colo. 1999) ("An ambiguous provision is a provision that is 'reasonably susceptible to different meanings.'") (citation omitted); *Hoyt v. Marriott Vacations Worldwide Corp.,* 2014 WL 509903, at *3, n.6 (D. Minn. Feb. 7, 2014) (applying Colo. law and analyzing the same documents at issue here, court "conclude[s] as a matter of law that [the MVC] affiliation was contemplated and allowed by the governing documents").  Thus, because there was no restrictive covenant to enforce with respect to the MVC Affiliation, no fiduciary duty to Plaintiffs was breached.  The Marriott Defendants' motion should be granted on this basis alone.

## II.     EVEN IF A RESTRICTIVE COVENANT EXISTED, PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED ANY FIDUCIARY DUTY THAT WAS BREACHED

Plaintiffs allege that, because of the "high degree of control" supposedly exerted over their fractional interests, as well as under agency principles, the Association and RC Management (and, by extension, Cobalt) owed them a fiduciary duty to enforce a restrictive

---

intended at the time of contracting, which the Court said it could not do.  *See id.* at *3.  By contrast, the task here involves straightforward contract interpretation, namely, deciding whether an unambiguous contract provision prohibited the MVC Affiliation.

4

covenant that they claim prohibited the MVC Affiliation. Even if such a restrictive covenant existed, RC Management and Cobalt owed Plaintiffs no fiduciary duty, and the Association's fiduciary duty to Plaintiffs did not extend to the MVC Affiliation, for which it had no decision-making authority under the contract documents. *See* Def. Br. at 7-8; *see also Jarnagin v. Busby, Inc.,* 867 P. 2d 63, 67 (Colo. App. 1993) (establishing breach of fiduciary duty requires showing that "the nature and scope of the duty … extended to the subject matter of the suit").

      A.      **The "Control over Plaintiff's Property" Theory of Fiduciary Duty Does Not Apply Here**

Plaintiffs allege that "[a] fiduciary relationship … arises where one party 'has a high degree of control over the property or subject matter of another.'" *See* Pl. Opp. at 7 (citing cases). But RC Management has no such "high degree of control" over Plaintiffs' fractional interests. Indeed, under the Management Agreement, RC Management is only allowed to "[e]nter into the individual Plan Units" (what Plaintiffs call their "separately deeded property interests," *see* Pl. Opp. at 10) in order to provide services to Plaintiffs (e.g., "cleaning and maid service," required "maintenance and repair" and "abatement of nuisances … prohibited by applicable law or the Declaration"). *See* Mgmt. Agmt. (Greene Decl. Ex. B) § 4(V). In addition, RC Management is not authorized by the Management Agreement to sell, finance, rent, exchange or otherwise deal in Plaintiffs' fractional rights, nor does it have any authority to specify when Plaintiffs might take occupancy of a unit, or to designate individuals who would be entitled to occupy. *See generally, id.*

Nevertheless, Plaintiffs try to fit within the "control over plaintiff's property" rubric by claiming that "RC Management had authority to receive and hold all personal funds collected from the owners." *See* Pl. Opp. at 10 (quoting Mgmt. Agmt.). Again, the Management

5

Agreement makes clear that RC Management does not "hold" any of Plaintiffs' "personal funds" but, rather, merely <u>collects monies Plaintiffs owe to the Association</u>. *See* Mgmt. Agmt. § 4(J) (providing that RC Management has authority to "[r]eceive and deposit all funds collected from the Owners [i.e., Plaintiffs], <u>or otherwise accruing to the Association</u>…."); *see also id.* (providing that these "<u>Association funds</u> shall not be commingled (i) with funds managed by [RC Management] on behalf of other associations; or (ii) with [RC Management's] own funds") (emphasis added).[4]

Even if RC Management had exerted a "high degree of control" over Plaintiffs' fractional interests, for a fiduciary duty to arise, much more must be shown. Plaintiffs' own cases hold that defendant's control over plaintiff's property must have been "of such a degree that [p]laintiff reposed a 'high level of trust and confidence' in [d]efendant." *See Oaster v. Robertson,* 2016 WL 1247803, at *18 (D. Colo. Mar. 28, 2016) (cited in Pl. Opp. at 7). Thus, in *Oaster,* although plaintiff had "entrust[ed]" defendant with its "intellectual property and creative work product," the court found that plaintiff had failed to allege that it reposed a high level of trust and confidence in defendant. Accordingly, the court granted defendant's Rule 12(b)(6) motion and dismissed plaintiff's breach of fiduciary duty claim.

---

[4] Plaintiffs appear to use the term "personal funds" because of a New York case, *Caprer v. Nussbaum,* 36 A.D. 3d 176 (2006), on which they mistakenly rely. *See* Pl. Opp. at 9-10. In *Caprer,* the court found that a condominium manager who lacked authority "to hold any personal funds of the unit owners" owed no fiduciary duty to unit owners. *Id.* at 192. Accordingly, Plaintiffs assert (incorrectly) that, unlike in the manager in *Caprer*, RC Management "holds" their "personal funds." *See* Pl. Opp. at 10. Plaintiffs misunderstand *Caprer.* Just like RC Management, the condominium manager in *Caprer* was authorized to "collect[] … common charges" from unit owners (*see Caprer,* 36 A.D. 3d at 192); however, that was obviously not deemed "hold[ing the unit owners'] personal funds."

Similarly, in *Tara Woods Limited Partnership v. Fannie Mae,* 731 F. Supp. 2d 1103 (D. Colo. 2010) (cited in Pl. Opp. at 7), although plaintiff's placement of funds in escrow with defendant for management would "[n]ormally … be precisely the kind of situation that would give rise to fiduciary obligations," the court found it did not in that case because plaintiff had not pled "facts that would show that the [d]efendants 'invited' the [p]laintiff to place trust and confidence in the [d]efendants…." *Id.* at 1117-18. Accordingly, the court granted defendant's Rule 12(b)(6) motion and dismissed plaintiff's breach of fiduciary duty claim.[5]

Thus, even if Plaintiffs could plausibly allege that RC Management exerted a "high degree of control" over their fractional interests (which they cannot, *see supra*), they have pled no facts showing that RC Management invited their trust and confidence. Nor could they do so, as they are not even parties to the Management Agreement. Accordingly, Plaintiffs' breach of fiduciary duty claim fails to the extent it is based on a "control over plaintiff's property" theory.[6]

---

[5] The *Tara Woods* plaintiff's placement of funds in escrow with defendant is a good example of what is meant by "holding plaintiffs' personal funds." Another example is *Vai v. Bank of Am. Nat'l Trust & Sav. Ass'n,* 56 Cal. 2d 329 (1961), on which Plaintiffs also mistakenly rely. *See* Pl. Opp. at 7-8. In *Vai,* a husband was found to owe his estranged wife a fiduciary duty because he controlled her half-interest in the couple's community property. *Vai,* 56 Cal. 2d at 337; *see also id.* (citing cases holding that, until final divorce decree, spouse has "full power to dispose of [community property]").

[6] As can be seen from *Oaster, Tara Woods* and the numerous cases the Marriott Defendants cited in their moving brief (*see* Def. Br. at 9-10 & n.7), breach of fiduciary duty claims are routinely dismissed on the pleadings. Indeed, no factual questions need be decided where, as here, the parties' relationship is defined by contract. *See id.* The cases Plaintiffs cite to the contrary are inapposite. For example, Plaintiffs cite *Moses v. Diocese of Colorado,* 863 P. 2d 310 (Colo. 1993), as holding that the existence of a fiduciary relationship is a question of fact for the jury. *See* Pl. Opp. at 3-4. But that was a clergy sex abuse case in which the issue to be decided was necessarily a factual one, namely, whether the priest's relationship with his parishioner had been one of "trust, confidence and reliance" such that a fiduciary relationship had arisen as a matter of law. *Moses,* 865 P. 2d at 321. Plaintiffs cite *Wildearth Guardians v. Public Service Company of Colorado,* 2010 WL 1568574 (D. Colo. Apr. 15, 2010), for the same proposition, but that case is

### B.     <u>Plaintiffs Have Not Plausibly Alleged a Fiduciary Duty Based on Agency</u>[7]

Plaintiffs base their "agency" theory of fiduciary duty on the Management Agreement between RC Management and the Association. But the Management Agreement (a) disclaims any fiduciary relationship between the parties; (b) identifies RC Management as an independent contractor; and (c) provides that the "Association … releases any right of control over the method, manner or means by which [RC Management] performs its duties and responsibilities under this Agreement." *See* Def. Br. at 6; *cf. City and Cnty. of Denver v. Fey Concert Co.,* 960 P. 2d 657, 660-61 (Colo. 1998) (explaining that the key feature of an agency relationship is the principal's right to control the agent). Given this plain language, the Court can find, as a matter of law, that no principal/agent relationship was created.[8]

---

even further afield. *See* Pl. Br. at 7. *Wildearth* was an environmental case in which defendant was alleged to have violated its air permit. It did not involve fiduciary duty, agency or any other concept relevant here.

[7] Plaintiffs flatly assert that "[w]hether or not an agency relationship exists is a question of fact." *See* Pl. Opp. at 11 (citing *Stortroen v. Beneficial Finance Co. of Colorado,* 736 P. 2d 391 (Colo. 1987)). But the *Stortroen* court actually said: "The existence of an agency is ordinarily a question of fact…, but the court may properly decide the question as one of law when the facts are not in dispute." *Stortroen,* 736 P. 2d at 395. Here, the relevant facts are not in dispute; thus, whether the Management Agreement gave rise to a principal/agent relationship between RC Management and the Association is properly decided as a matter of law.

[8] *Woolley v. Embassy Suites, Inc.,* 227 Cal. App. 3d 1520 (1991) (cited in Pl. Opp. at 12), is not at all like this case. In *Woolley,* the issue was whether a principal/agent relationship existed between plaintiff hotel owners and Embassy, which was the hotel franchisor and manager. In addressing Embassy's argument that no such relationship existed, the court noted that "Embassy correctly observes that one essential of the principal/agent relationship is the right of control." 227 Cal. App. 3d at 1531. The court found, however, that, "[i]n the management contracts at bar the owner [i.e., plaintiff] retain[ed] the right of control in important respects …." *Woolley*, 227 Cal. App. 3d at 1531-32. Moreover, each contract stated that "Owner hereby employs [the manager] … *as the exclusive agent* of Owner to direct, supervise and manage the operation of [the hotel]." *Id.* (emphasis in original). The contrast between the Management Agreement and the management contracts at issue in *Woolley* could not be clearer. The former explicitly

Even if RC Management owed a fiduciary duty to the Association under the Operating Agreement, such duty would not extend to individual Association members, e.g., Plaintiffs. This point was explained in *Berryman v. Merit Property Management, Inc.,* 152 Cal. App. 4th 1544 (2007). In that case, plaintiff homeowners brought breach of fiduciary duty and other claims against a management company with which their homeowners' associations had contracted, alleging that the company had overcharged them for documents and title transfer fees. In dismissing most of their claims (including breach of fiduciary duty), the court declared:

> The problem with these allegations is that the plaintiffs are not parties to the contract with [the management company] -- the associations are. Even assuming the allegations are true, plaintiffs are at best incidental beneficiaries and have no standing to recover under the contract. [internal citation omitted] By the same logic, plaintiffs cannot use the contracts to bootstrap liability under [common law and statutory] … theories…. Permitting such recovery would completely destroy the principle that a third party cannot sue on a contract to which he or she is merely an incidental beneficiary.

*Id.* at 1553; *cf. Willey v. Mayer,* 876 P. 2d 1260, 1266 (Colo. 1994) (third parties harmed by agent's wrongful acts must seek recourse from principal, not agent) (citing Reuschlein & Gregory, *The Law of Agency and Partnership,* § 26 at 69-70 (2d ed. 1990)).

In sum, neither RC Management nor Cobalt owed Plaintiffs any fiduciary duty, either under a "control over plaintiff's property" theory or under the Management Agreement. And, as noted, the Association did not breach its fiduciary duty to Plaintiffs because the decision to affiliate with MVC was not within its authority or purview. *Cf. Arst v. Stifel, Nicolaus & Co.,* 86 F. 3d 974, 978 (10th Cir. 1996) (fiduciary duty extends only "to matters within the scope of [the] agency"). Accordingly, Plaintiffs' breach of fiduciary duty fails and, with it, their dependent

---

confirms that RC Management is an independent contractor, whereas the latter explicitly conferred agency status on the hotel manager.

aiding and abetting, conspiracy and unjust enrichment claims.  *Cf. Hoyt,* 2014 WL 5795034, at *2 ("[w]here … plaintiffs have failed to sufficiently allege improper underlying conduct, there is no injustice and no claim for unjust enrichment").  The SAC should be dismissed.

Dated:  August 29, 2016

Respectfully submitted,

GREENBERG TRAURIG, LLP

By:     *s/ Naomi G. Beer*
Naomi G. Beer
Philip R. Sellinger
Ian S. Marx
1200 Seventeenth Street, Suite 2400
Denver, Colorado 80202
Tel:     303.572.6500
Fax:     303.572.6540
Email:  BeerN@gtlaw.com
           SellingerP@gtlaw.com
           MarxI@gtlaw.com

*Attorneys for the Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC, The Cobalt Travel Company, LLC, and The Lion & Crown Travel Co., LLC*

CERTIFICATE OF SERVICE

I hereby certify that, on this 29th day of August, 2016, a true and accurate copy of the foregoing **MARRIOTT DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT** was filed and served with the Clerk of the Court via CM/ECF filing system, which will send notification to the following:

Michael J. Reiser
Lilia Bulgucheva
Law Office of Michael J. Reiser
961 Ygnacio Valley Road
Walnut Creek, CA 94596
*Counsel for Plaintiffs*

Matthew C. Ferguson
The Matthew C. Ferguson Law Firm, P.C.
119 South Spring, Suite 201
Aspen, Colorado 81611
*Counsel for Plaintiffs*

Tyler R. Meade
The Meade Firm P.C.
1816 Fifth Street
Berkeley, CA 94710
*Counsel for Plaintiffs*

Linda Pham Lam
Michael Schrag
Gibbs Law Group LLP
505 14th Street, Suite 1100
Oakland, CA 94612
*Counsel for Plaintiffs*

Daniel F. Shea
Jessica Black Livingston
Hogan Lovells US LLP
1200 Seventeenth Street, Suite 1500
Denver, Colorado 80202
*Counsel for Aspen Highlands
 Condominium Association*


s/ Julie Eaton
Julie Eaton

*(Original on file at offices of Greenberg Traurig, LLP, pursuant to C.R.C.P. 121, § 1-26*