# EXHIBIT  1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-01301-PAB

RCHFU, LLC, a Colorado limited liability company, JEFFREY A. BAYER and GAIL L. BAYER, ROBERT BUZZETTI, JULIE C. CANNER, LEE JAMES CHIMERAKIS and THERESA ANN CHIMERAKIS, KEVIN CLARE and NANCY LYNNE SHUTE, TOBY L. CONE TRUST and TOBY L. CONE, its Trustee, RICHARD DAVIS and SHIRLEY J. DAVIS, CARL EICHSTAEDT III, JAMES RICHARD FARQUHAR and JENNIFER LUCILLE FARQUHAR, KOPPELMAN FAMILY TRUST and LARRY KOPPLEMAN, its Trustee, DAVID LANCASHIRE and STEPHEN ANDREWS, BONNIE LIKOVER, CRAIG LIPTON, JEREMY LOWELL, D.D.S. and LORI LOWELL, EDWARD P. MEYERSON and ANDREA C. MEYERSON, JERRY M. NOWELL TRUST and JERRY M. NOWELL, its Trustee, and DEE ANN DAVIS NOWELL TRUST and DEE ANN DAVIS NOWELL, its Trustee, THOMAS M. PROSE REVOCABLE LIVING TRUST and THOMAS M. PROSE, M.D., its Trustee, CASEY M. ROGERS and COURTNEY S. ROGERS, ROBERT A. SKLAR TRUST, and ROBERT A. SKLAR, its Trustee, C. RICHARD STASNEY, M.D. and SUSAN P. STASNEY, TSE HOLDINGS, LLC, a Colorado limited liability company, STEPHEN WEINSTEIN and BRENDA WEINSTEIN, JACK ZEMER, JEFFREY L. BERTNSTEIN and AMY S. BERNSTEIN, CHRISTOPHER BRANOFF and KIMBERELY BRANOFF, RICHARD LOUISE LEVENGOOD and LYNDA OVERLY LEVENGOOD, FRED H. FRIEDMAN and BRENDA C. FRIEDMAN, BENJE R. DANIEL, JR., DDS, MS, PA, R. DAVID & CHERYL M. JONES REVOCABLE LIVING TRUST and DAVID R. JONES, its trustee, and CHERYL M. JONES, its trustee, LILY ANN FRIEDMAN, 831 701 ONTARIO LIMITED, a Canadian Corporation, GARRY R. KIMBALL and CATHERINE G.A. KIMBALL, DAVID FRIEDMAN, MICHAEL G. ROBINSON and CAROLINE ROBINSON, HAMMER FAMILY LIMITED PARTNERSHIP, 8202 RCC ASPEN HIGHLANDS, LLC, CARL ANDREW RUDELLA and TAMMIEJO RUDELLA, ROBERT KAUFMAN, DAVID S. ISRAEL TRUST and DAVID S. ISRAEL, its trustee, J & B WOODS FAMILY ASSOCIATES, LLC, MICHAEL P. PACIN and AMY D. RONNER, BRUCE E. REID and ROSEMARY W. REID,

       Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, a Delaware corporation, MARRIOTT OWNERSHIP RESORTS, INC., d/b/a MARRIOTT VACATION CLUB INTERNATIONAL, a Delaware corporation, ASPEN HIGHLANDS CONDOMINIUM ASSOCIATION, a Colorado non-profit corporation, RITZ-CARLTON MANAGEMENT COMPANY, LLC, a Delaware limited liability company, COBALT TRAVEL COMPANY, LLC, INC., a Delaware limited liability company, and THE LION & CROWN TRAVEL CO., LLC, a Delaware limited liability company,

       Defendants.

1

**DEFENDANT ASPEN HIGHLANDS CONDOMINIUM ASSOCIATION'S
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Pursuant to Rules 8(a) and 12(b)(6) of the Federal Rule of Civil Procedure, Defendant

Aspen Highlands Condominium Association, Inc. ("Association") respectfully moves the Court

to dismiss Plaintiffs' Second Amended Complaint ("SAC") against the Association.

## I.  INTRODUCTION AND BACKGROUND

This lawsuit was brought by Plaintiffs who are upset that other members of the Ritz-

Carlton Club, Aspen Highlands ("Club"), who own their interests in fee simple, have the choice

to trade in one of their weeks at the Aspen Highlands with the Marriott Vacation Club ("MVC"),

thereby allowing members of an allegedly lesser-status, non-luxury vacation club to frequent the

Aspen Highlands location.  Plaintiffs are condominium owners who purchased deeded 1/12

fractional ownership interests at the Ritz-Carlton Club in Aspen Highlands located in Aspen,

Colorado ("Plaintiffs").  The Association is a Colorado nonprofit corporation organized to

manage the condominium consistent with the applicable governing documents, including the

Declaration of Condominium for Aspen Highlands Condominiums ("Declaration") and the Ritz-

Carlton Club Membership Program Affiliation Agreement ("Affiliation Agreement").  *See* SAC

¶¶ 16, 20–24.

In 2012, the Association began to consider whether its members would benefit if the

manager affiliated with Marriott Vacations Worldwide Corporation's ("MVW") points-based

timeshare program.  *Id.* ¶¶ 49–57.  In April 2014, after conducting a survey of its members, the

Association announced it had arranged with the Marriott entity that managed Aspen Highlands

for members of the Club to trade a week at Aspen Highlands for a week elsewhere with a member of the MVC.  *Id.* ¶ 63.  The Association explained that the "opportunity is totally optional and voluntary."  *Id.*, Ex. M, at 2.

Plaintiffs allege that the Association's decision to give Club members this option breached the Association's fiduciary duty to them and devalued their Fractional Ownership Interests by at least 80%.  *Id.* ¶¶ 5–10.  Plaintiffs also allege that the Association breached its fiduciary duty to Plaintiffs when it allowed the optional trading program by advancing its "own interest and the interest of third parties" at the expense of Plaintiffs' interests and by "acting in a disloyal manner towards Plaintiffs" and "failing to enforce the Declaration[.]"  *Id.* ¶ 70.

But Plaintiffs fail to allege facts sufficient to show how the Association actually breached its fiduciary duty.  As an initial matter, Plaintiffs fail to allege facts to establish that they made a demand of the Association alleging a breach of the Declaration, as they are required to do before initiating a lawsuit.  Moreover, Plaintiffs cannot show that the Association breached (or aided and abetted or conspired to breach) any fiduciary duty because it is universally accepted that the business judgment rule protects "a director's exercise of judgment . . . when exercised in good faith."  *Kim v. Grover C. Coors Trust*, 179 P.3d 86, 96 (Colo. App. 2007).  Because the business judgment rule applies to condominium associations, Plaintiffs must demonstrate that the Association is not entitled to the deference afforded to it by the business judgment rule.  But they do no such thing.  While Plaintiffs may be upset that the Association chose to give Club members the opportunity to trade a week with a MVC member, an opportunity each member was free to forsake, they are unable to allege facts sufficient to overcome the business judgment rule's presumption in favor of the Association.

Finally, Plaintiffs fail to state a claim against the Association for unjust enrichment because they fail to allege any facts to show that the Association received any benefit at all from the optional trading program, let alone that it unjustly retained such a benefit.

Thus, Plaintiffs have failed to allege facts to support any of their claims against the Association, and their SAC must be dismissed.

## II.   ARGUMENT

### A.   Standard of Review

The purpose of a motion to dismiss is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  A complaint must be dismissed where, as here, it fails to state a claim upon which relief can be granted.  Under Rules 8(a)(2) and 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  The "[t]wo working principles" underlying this standard are:  (1) "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" and (2) "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" such that the complaint must be dismissed.  *Id.* at 678–79 (quoting Fed. R. Civ. P. 8(a)(2)).  A complaint containing "labels and conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do[es] not suffice." *Id.* at 678 (citation omitted).  If the factual allegations are so general that they "do not permit the court to infer more than the mere possibility of misconduct," the plaintiff "has not nudged [its]

claims . . . across the line from conceivable to plausible." *See id.* at 679–80 (internal quotations and citations omitted); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[1]

**B.     Plaintiffs' claims against the Association must be dismissed because Plaintiffs fail to allege that they made a demand to the Association as required by the Declaration.**

Plaintiffs' claims against the Association must be dismissed because Plaintiffs fail to allege that they satisfied their contractual preconditions to filing this lawsuit.  The Declaration requires that any owner seeking to sue to enforce the terms of the Declaration must first make a demand to the Association's Executive Board before the owner can prosecute the claim.  SAC, Ex. H (hereinafter Declaration) ¶ 7.8.3.  Plaintiffs do not allege that they made any demand of the Association's Executive Board with regard to any of the allegations in the SAC.  For this simple reason, Plaintiffs' claims against the Association must be dismissed.

The Association's Declaration provides that:

> Before an aggrieved Owner may prosecute any proceeding at law or in equity enforcing the provisions of this Declaration or the bylaws of the Association or seeking other relief relating to a violation or attempted violation of the provisions of this Declaration or the bylaws …, the Owner will first give written notice to the [Association's] Executive Board specifying the violation or attempted violation of the provisions of this Declaration or the bylaws, the facts and circumstances surrounding the violation, and the name of the person alleged to have violated or attempted to violate the provisions of this Declaration or the bylaws.

Declaration ¶ 7.8.3.  The Executive Board then "may initiate a proceeding" to enforce the provisions of the Declaration or the bylaws.  *Id.*  If the Association "fails to enforce or cause

---

[1] This case was originally filed in District Court for Pitkin County, Colorado but was removed to this Court based upon the Class Action Fairness Act of 2005.  28 U.S.C. §§ 1332, 1446, 1453 ("CAFA").  Because this case was removed on the basis of diversity jurisdiction, Colorado law remains the substantive applicable law.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938).

enforcement of the violated provision of" the Declaration or bylaws, the Owner may initiate a proceeding "within sixty (60) days after the Executive Board receives the Owner's notice."  *Id.*[2]

Plaintiffs fail to allege that they complied with this provision of the Declaration.  They never provided written notice to the Executive Board of any of the allegations in the SAC, and they nowhere allege that they otherwise made a demand of the Association to initiate a proceeding.  And yet they bring this action in an attempt to enforce the Declaration, specifically alleging that the Association (1) breached its fiduciary duties to the Plaintiffs that arose from the Declaration—including its "duty to enforce restrictive covenants set forth in the Declaration"— and (2) failed to enforce Section 19.8 of the Declaration prohibiting timesharing of individual units.  *See* SAC ¶¶ 24, 54, 62, 65–66, 70–74, 81–82, and 86–87.  By Plaintiffs' own terms, these allegations arise from purported violations of the Declaration.  Yet they fail to allege that they complied with the Declaration's requirement that they provide the Executive Board with notice and the opportunity to evaluate their allegations.  Instead, they simply filed this lawsuit.

Courts allow proceedings by owners against homeowners associations when the owners comply with contractual demand requirements like Declaration ¶ 7.8.3.  *Cf. Colo. Homes, Ltd. v. Loerch-Wilson*, 43 P.3d 718, 720 (Colo. App. 2001) (plaintiffs "made verbal requests to the HOA . . . to take action" and suit proceeded when HOA took no action to address plaintiffs' demands).  But Plaintiffs did not do so here.  Because Plaintiffs fail to allege that they complied with the requirements of the Declaration prior to initiating this lawsuit, their claims against the Association must be dismissed.

---

[2] The Owner also may initiate a proceeding against anyone violating or attempting to violate the Declaration if "the violation or attempted violation results or would result in direct and immediate physical damages to the Owner's Unit."  Declaration ¶ 7.8.3.  Here, Plaintiffs do not allege that Defendants caused any physical damage to their units.

**C.**    **Plaintiffs fail to state a claim against the Association for breach of fiduciary duty.**

Plaintiffs allege that the Association breached its fiduciary duties to Plaintiffs by (1) "favoring the interests of the Defendants over the interests of the Plaintiffs" by giving Club members an opportunity to trade a week with a member of the MVC; and (2) by "failing to enforce" the Declaration.  SAC ¶¶ 62, 64–66, 70–74.  Plaintiffs specifically point to the Association's failure to enforce Section 19.8 of the Declaration, which prohibits timesharing of individual units.  *Id.* ¶¶ 62, 65–66, 70–71.

To succeed in their claim, Plaintiffs must prove: "1) the existence of a fiduciary relationship between plaintiff and defendant; 2) defendant's breach of the fiduciary duty; and 3) damages as a result of the breach."  *F.D.I.C. v. Refco Grp., Ltd.*, 989 F. Supp. 1052, 1080 (D. Colo. 1997).  Plaintiffs' claim must be dismissed because the business judgment rule protects the Association's actions here, and therefore Plaintiffs have failed to allege and cannot establish the second element of their claim—the Association's breach of a fiduciary duty.

The Declaration provides that the "Executive Board, the officers of the Association and the Association shall have the duty to represent the interests of" the owners "in a fair and just manner on all matters that may affect any or all" owners.  Declaration ¶ 6.8.  But the mere fact that the Association owes Plaintiffs fiduciary duties does not mean that those duties are breached whenever some Club members are aggrieved.

The business judgment rule immunizes the good faith acts of directors of non-profit corporations like the Association when those acts are "within the powers of the corporation and within the exercise of an honest business judgment . . . ."  *Rywalt v. Writer Corp.*, 526 P.2d 316, 317 (Colo. App. 1974); *Kim*, 179 P.3d at 95 (in context of liability of individual directors,

holding that "[u]nder the business judgment rule, a director's exercise of judgment will not subject that director to liability when exercised in good faith").  Courts refuse to "interfere with or regulate" actions undertaken "in the reasonable and honest exercise of [a director's or board's] judgment and duties."  *Rywalt*, 526 P.2d at 317.

The business judgment rule applies to decisions by condominium associations.  In 2001, the Colorado Court of Appeals held that the business judgment rule protects decisions by a homeowners' association when the decision is made in good faith and is not arbitrary.  *Colo. Homes, Ltd.*, 43 P.3d at 724  ("We perceive no reason why [the business judgment] rule should not apply in this case insofar as the issue for resolution is whether the HOA fulfilled its obligation to enforce the covenants.") (citing *Rywalt*, 526 P.2d 316); *see also Chimney Rock Pub. Power Dist. v. Tri-State Generation & Transmission Ass'n, Inc.*, No. 10-cv-02349-WJM-KMT, 2014 WL 788057, at *6 (D. Colo. Feb. 27, 2014) (concluding that "courts have applied the business judgment rule to protect a homeowner's association in a breach of contract action").[3]

Plaintiffs have failed to allege facts showing that the Association's decision to allow Club members to use their fee simple ownership like other Colorado property owners was a breach of its fiduciary duty.  Arranging with the Marriott entity that managed Aspen Highlands to allow Club members voluntarily to trade a week of their time at Aspen Highlands with MVC points-program participants is simply an arrangement that allows Club members to do what each fee simple owner of property in Colorado can do—trade or rent the property that he or she owns.

---

[3] Courts in other states apply the business judgment rule to actions by condominium associations. S*ee Oberbillig v. West Grand Towers Condo. Ass'n*, 807 N.W.2d 143, 154–55 (Iowa 2011) (collecting cases from California, Connecticut, New Jersey, New York, North Dakota, and Washington); *Happ v. Creek Pointe Homeowner's Ass'n*, 717 S.E.2d 401, 407 (N.C. App. 2011).

Plaintiffs rely in vain on Section 19.8 of the Declaration, which prohibits any Units from being "used for the operation of a timesharing, fraction-sharing, interval ownership, private residence club, membership program, vacation club, exchange network or system or similar program," other than the Plan of Fractional Ownership established by Article 23 of the Declaration.  Declaration ¶ 19.8.  This plainly means that no one can buy an interest at Aspen Highlands and then subdivide the ownership further, nothing more.  The Declaration does not define timesharing, but Colorado statutes define a "time share estate" as "an estate for years" or "[a]n undivided interest in a present estate in fee simple in a unit" where "title to a time share unit circulates among the interval owners in accordance with a fixed schedule" or the "exclusive right to possession and occupancy of the unit during an annually recurring period of time . . . ." *See* Colo. Rev. Stat. § 38-33-110 (defining time sharing for purposes of Colorado Common Interest Ownership Act, *see, e.g.*, §§ 38-33.3-209.7, 38-33.3-308, 38-33.3-310, 38-33.3-316.5).

Under this definition, Section 19.8 of the Declaration means that no one can buy an interest at Aspen Highlands and then subdivide the ownership and operate his or her own timesharing program with respect to his or her unit.  It does not mean that a Club member cannot trade a week or other part of his or her 1/12 interest with another person, even if the trade happens to be for a week at a different club to which that other person belongs.  And Plaintiffs point to no other provision in the Declaration that allegedly prohibits a Club member from freely utilizing his or her 1/12 interest.  There is, for example, no prohibition in the Declaration or any other documents attached to the SAC against trading or renting all or part of one's interest or donating it to a family member, friend, co-worker, or charity.

Accordingly, the voluntary arrangement that the Association forged with the Marriott manager does not violate Section 19.8 of the Declaration, and Plaintiffs have failed to allege any facts showing that the Association breached its fiduciary duties by giving Club members one more opportunity to use their fee simple ownership.  Indeed, had the Association exercised its judgment to preclude such trading, a group of the approximately 750 Club members who are not Plaintiffs may have been able to assert claims against the Association alleging that the Association deprived them of their common-law property rights given that the Declaration contains no restrictive covenant prohibiting trading, renting, or donating of members' interests. *See, e.g.*, *Estates at Desert Ridge Trails Homeowners' Ass'n v. Vazquez*, 300 P.3d 736, 744 (N.M. Ct. App. 2013) (holding that absent specific authorization in the association's declaration, the "association has no authority to restrict the use or occupancy of, or behavior within, individually owned lots or units" and thus concluding that it could not prohibit rentals for a period of thirty days or less) (internal quotations and citations omitted); *La Cholla Hills Homeowners Ass'n v. Foard*, No. 2 CA-CV 2007-0015, 2007 WL 5556994, at *2 (Az. Ct. App. Oct. 9, 2007) (explaining that "[i]f the [Declaration] do[es] not provide for the adoption of a particular restriction or requirement, such restriction or requirement is invalid.").

Plaintiffs also argue that the Association breached its fiduciary duties by "unilaterally decid[ing]" to allow the voluntary trading of time between a Club member and a MVC participant without holding a vote of the members of the Association.  SAC ¶¶ 61–62.  They cite a 2013 letter from the Association to all Club members stating that the "Ritz Marriott representatives agree" to allow an affiliation with the MVC only after a vote by the Association members.  *See id.* ¶ 60; *id.*, Ex. L at 1–2.  Whether or not the Marriott entities or the Association

board at some point believed it was wise to poll the members, Plaintiffs point to no provision of the Declaration, bylaws, or any other governing document that requires the Association to hold a vote before Club members could trade all or part of their interest with anyone else, even if the chattel received in the trade happened to be an interest in another time-sharing program.  And no such provision exists in any of the exhibits to the SAC.

The Declaration allows all Association members to participate in a vote "[t]o the extent a matter is required by this Declaration, the bylaws of the Association or the [Colorado Common Interest Ownership] Act to be submitted to a vote of the members of the Association." Declaration ¶ 6.9.  But unlike certain provisions in the Declaration that explicitly permit or require a vote by members of the Association,[4] nothing requires or even mentions a vote by all members of the Association in connection with the decision to affiliate with a Member Club or Associated Club of the Membership Program.  For its part, the Affiliation Agreement explicitly states that the Association has no right to "participate in or consent to" any affiliation. Affiliation Agreement ¶ 7.2(a).  And courts have concluded that a condominium association is protected by the business judgment rule when exercising its decision-making authority without a membership vote when no such vote is required.  *See Oberbillig*, 807 N.W.2d at 155 (holding "the [business judgment] rule applies to the board's exercise of its interpretive authority over the bylaw in this case to proceed with the garage repairs without a membership vote").

Ultimately, Plaintiffs have not shown that any provision of the Declaration prohibits an owner of an interest at Aspen Highlands from trading all or part of that interest, even for an interest in another timesharing program.  Nor have they shown that a vote of the full membership

---

[4] *See e.g.*, Declaration ¶¶ 6.5, 7.1.1, 7.4, 8.6.3, 17.1, 17.2, 18.4, 18.7, and 22.3.

was required before a Club member could exercise his or her common-law right to alienate the interest as he or she chooses.  Thus, the business judgment rule protects the Association's actions here.

**D.      Plaintiffs fail to state a claim against the Association for aiding and abetting a breach of fiduciary duty.**

Plaintiffs cannot state a claim against the Association for aiding and abetting a breach of fiduciary duty.  To state a claim for aiding and abetting, Plaintiffs must allege that:  (1) a third party breached a fiduciary duty owed to the Plaintiffs; (2) the Association knowingly participated in that breach; and (3) the Association's aiding and abetting of the breach was a cause of the Plaintiffs' damages.  *City P'ship Co. v. Lehman Bros., Inc.*, 344 F. Supp. 2d 1241, 1246 (D. Colo. 2004); *see also Holmes v. Young*, 885 P.2d 305, 308–09 (Colo. App. 1994).  Here, Plaintiffs fail to allege that the Association knowingly participated in a third-party's breach of its fiduciary duties to the Plaintiffs.

The Association cannot be liable for aiding and abetting its own alleged breach of fiduciary duty.  *See City P'ship Co.*, 344 F. Supp. 2d at 1246; Restatement (Second) of Torts §§ 876–77 (1979) (defining aiding and abetting as a cause of action for acting in concert with, or directing the fraudulent conduct of another).  Neither can the Association be liable for aiding and abetting another Defendant's breach of fiduciary duty because Plaintiffs have failed to identify any facts to support such an allegation.  Other than listing the Association as a party to the Management Agreement and the Affiliation Agreement, *see* SAC ¶¶ 25, 38, Plaintiffs provide no other support for their contention that the Association aided and abetted any other Defendant's breach of its fiduciary duties to the Plaintiffs.

To the contrary, Plaintiffs provide only conclusory allegations that "[e]ach and all of the Defendants . . . materially assisted, aided, abetted and/or conspired with one or more other Defendants" and that Defendants MVW, RC Management, and Cobalt, "pursuant to an agreement it [sic] made with Defendant Association," affiliated the Club with the MVC. *Id.* ¶¶ 45, 64–66. And in their claim for relief, Plaintiffs allege only that "Defendants" generally or Defendants MVW, MVCI, and L&C aided and abetted breaches of fiduciary duties. *Id.* ¶¶ 78, 81–82. These general, conclusory allegations are insufficient to state a cause of action against the Association for aiding and abetting a breach of fiduciary duty. *Iqbal*, 556 U.S. at 678–79. Plaintiffs failed to allege facts to show the second and third elements of a claim for aiding and abetting a breach of fiduciary duty, and their claims must be dismissed.

**E.      Plaintiffs fail to state a claim against the Association for conspiracy.**

Plaintiffs fail to state a claim against the Association for conspiracy because they have failed to allege any underlying wrongdoing or breach of fiduciary duty. To state a claim for conspiracy, Plaintiffs must allege: (1) an object to be accomplished; (2) an agreement between two or more persons on a course of action to accomplish that object; (3) that in furtherance of that course of action, one or more unlawful acts were performed to accomplish a lawful or unlawful goal, or one or more lawful acts which were performed to accomplish an unlawful goal; and; (4) damages to the plaintiff as a proximate result. *Double Oak Constr., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140, 146 (Colo. App. 2003); *see also Gen. Steel Domestic Sales, LLC v. Chumley*, No. 10-cv-01398, 2011 WL 2415167, at *5 (D. Colo. June 10, 2011) (J. Brimmer) (a claim for conspiracy must allege that there are two or more purposes, an object to be accomplished, and a meeting of the minds on the object or course of action). Here,

for the reasons discussed above, Plaintiffs have failed to allege any underlying breach of fiduciary duty by the Association or any plausible participation by the Association in another Defendants' breach of fiduciary duty.  For this reason, Plaintiffs have failed to allege facts to support the third element of a claim for conspiracy, and their claim must be dismissed.

**F.      Plaintiffs fail to state a claim against the Association for unjust enrichment.**

Finally, Plaintiffs fail to allege facts sufficient to state a claim against the Association for unjust enrichment.  To state a claim for unjust enrichment, Plaintiffs must allege that:  (1) at the Plaintiffs' expense; (2) the Association received a benefit; (3) under circumstances that would make it unjust for the Association to retain the benefit without paying.  *See Registry Sys. Int'l, Ltd. v. Hamm*, No. 08-cv-00495-PAB-MJW, 2010 WL 326327, at \*19 (D. Colo. Jan. 20, 2010) (J. Brimmer) (quoting *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1007 (Colo. 2008)). Here, Plaintiffs fail to plead facts to support the second and third elements of their claim. Nowhere do Plaintiffs allege that the Association received any benefit from the optional trading program, nor do Plaintiffs allege that the Association unjustly retained such a benefit.  To the contrary, Plaintiffs allege that MVW, MVCI, Cobalt and L & C received benefits—namely, ridding themselves of a poor investment, increasing attractiveness and value of their clubs, and increasing exchange fees.  *See* SAC ¶ 92.  But other than lumping the Association in with the generic "Defendants," Plaintiffs never allege any facts to support their contention that the Association received any benefit at all from the optional trading program, let alone that it unjustly retained such a benefit.  Accordingly, Plaintiffs have failed to allege facts to support the second and third element of their unjust enrichment claim, and it must be dismissed.

### III.   CONCLUSION

For all of the foregoing reasons, the Association respectfully requests that the Court

dismiss Plaintiffs' claims against the Association with prejudice.


Respectfully submitted this 25th day of July, 2016.

/s/  Daniel F. Shea_____
**Daniel F. Shea**
**Jessica Black Livingston**
HOGAN LOVELLS US LLP
1200 Seventeenth
Street, Suite 1500
Denver, Colorado 80202
Telephone: (303) 899-7300
FAX: (303) 899-7333
E-mail: dan.shea@hoganlovells.com
E-mail:jessica.livingston@hoganlovells.com

*Attorneys for Defendant Aspen Highlands*
*Condominium Association*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 25, 2016, I electronically filed the foregoing **DEFENDANT ASPEN HIGHLANDS CONDOMINIUM ASSOCIATION'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| **Michael J. Reiser**<br>Law Office of Michael J. Reiser<br>961 Ygnacio Valley Road<br>Walnut Creek, CA 94596<br>reiserlaw@gmail.com<br><br>**Matthew C. Ferguson**<br>The Matthew C. Ferguson Law Firm, P.C.<br>119 South Spring, Suite 201<br>Aspen, Colorado 81611<br>matt@matthewfergusonlaw.com<br><br>**Michael L. Schrag**<br>Gibbs Law Group LLP<br>1 Kaiser Plaza, Suite 1125<br>Oakland, CA 94612<br>mls@classlawgroup.com<br><br>**Tyler R. Meade**<br>The Meade Firm P.C.<br>1816 Fifth Street<br>Berkeley, CA 94710<br>tyler@meadefirm.com<br><br>***Attorneys for Plaintiffs*** | **Naomi G. Beer**<br>1200 17th Street, Suite 2400<br>Denver, Colorado 80202<br>Phone: (303) 572-6500<br>Fax: (303) 572-6540<br>BeerN@gtlaw.com<br><br>**Attorneys for Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., Ritz-Carlton Management Company, LLC, Cobalt Travel Company, LLC and Lion & Crown Travel Company, LLC** |

/s/  Daniel F. Shea

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 1:16-cv-01301-PAB-GPG

**RCHFU, LLC et al.**

Plaintiffs,

v.

**MARRIOTT VACATIONS WORLDWIDE CORPORATION et al.**

Defendants.
_____

**PLAINTIFFS' OPPOSITION TO DEFENDANT ASPEN HIGHLANDS CONDOMINIUM
ASSOCIATION'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
COMPLAINT**
_____

## I.      INTRODUCTION

Plaintiffs are the owners of fractional interests in condominiums at the Ritz-Carlton Club

Aspen Highlands ("Ritz-Aspen"). Plaintiffs paid premium prices for these interests based on the

Ritz-Carlton brand and promises that Ritz-Carlton Club members would have exclusive access to

the Ritz-Aspen and a handful of other similar luxury Ritz-Carlton properties. Defendants,

including the Aspen Highlands Condominium Association ("Association") took actions that

destroyed 80% of the value of Plaintiffs fractional interests. This lawsuit seeks compensation for

that lost value.

Plaintiffs' Second Amended Complaint ("SAC") adequately alleges that the Association

breached or aided and abetted the other Defendants' breach of fiduciary duties owed to

Plaintiffs—including the duty of loyalty—by (1) participating in the decision to affiliate with the

1

Marriott Vacation Club, and (2) failing to enforce Section 19.8 of the Declaration of Condominium (Ex. H to SAC) which, according to the Association's own attorneys, prohibited the affiliation. The affiliation served the interests of the Marriott Defendants, but decimated the values of Plaintiffs' fractional interests at the Ritz-Aspen by giving 400,000 Marriott Vacation Club members access to the Ritz-Aspen for a fraction of the cost that Plaintiffs paid for their fractional interests.

The Association does not present any valid grounds to dismiss the SAC. First, the Association's argument that the action against it should be dismissed because Plaintiffs made no pre-suit demand lacks merit because demand is not required, where as here, it would be futile.[1] Next, the Association is incorrect that the business judgment rule requires dismissal because whether the Association exercised good faith and honest business judgment is a question of fact, inappropriate for resolution on a motion to dismiss. Finally, the SAC adequately pleads the elements of aiding and abetting the breach of fiduciary duty, so that claim should also be upheld.

## II.    STATEMENT OF THE CASE

The Ritz-Aspen is a luxury fractional ownership property located in Aspen, Colorado. SAC at ¶ 4. It was established in 2001 as the first property under the Ritz-Carlton Destination Club ("Ritz-Carlton Club") brand, designed to be an upscale alternative to Defendant MVCI's other timeshare product line – the Marriott Vacation Club. SAC at ¶ 4. MVCI had been running timeshare operations since the 1980s, but introduced the Ritz-Carlton Club brand in 1999 to sell fractional ownership interests that were more exclusive and deluxe in nature – distinct from the

---

[1] *See Colorado Homes v. Loerch-Wilson*, 43 P.3d 718, 721 (Colo. App. 2001) (citing *Higley v. Kidder Peabody & Co.,* 920 P.2d 884 (Colo. App. 1996)) (the law does not require a party to perform a futile act in order to assert an important right).

Marriott Vacation Club. SAC at ¶¶ 2-3. As such, Ritz-Carlton Club interests were substantially more expensive than Marriott Vacation Club interests. SAC at ¶ 3. An owner of a 1/12 fractional interest at the Ritz-Aspen would be entitled to four weeks of stay there per year. SAC at ¶ 3. Owners would also be a part of the Ritz-Carlton Club Membership Program ("Membership Program"), through which they could use their allotted weeks to reserve stays at their Ritz-Aspen unit as well as at sister Ritz-Carlton Club resorts, such as ones located in Lake Tahoe, St. Thomas, and Maui. SAC at ¶¶ 3-4. Between 2001 and 2012, hundreds of individuals and entities, including Plaintiffs, paid premium prices ranging from $150,000 to $400,000 for their deeded 1/12 fractional interests at the Ritz-Aspen. SAC at ¶ 6. These interests were sold based on Defendants' claims that they were superior to MVCI's other timeshare offerings, and that the Ritz-Aspen would operate for the exclusive use and enjoyment of Ritz-Carlton Club members as well as their families and guests. SAC at ¶ 6.

Defendant Association was created to manage, administer, operate, and maintain the Ritz-Aspen condominium project that houses Plaintiffs' fractional interests ("Condominium"). SAC at ¶ 22; Ex. H at ¶ 23.6.[2]  In 2001, the Association entered into a written agreement, referred to as the "Management Agreement," with RC Management whereby RC Management would "act on behalf of the Association and its members as the exclusive managing entity and … manage the daily affairs of the Condominium and the [Fractional Ownership Interest] Plan." SAC at ¶ 25; Ex. A at ¶ 2.[3] RC Management had all the power and authority necessary to carry

---

[2] All exhibit citations are to exhibits to the Second Amended Complaint, ECF No. 40.
[3] The Declaration states, "It is contemplated that the (Board) will delegate the responsibility for administration and management of the Plan of Fractional Ownership, including the powers and duties described in Section 23.8 below, to a Managing Agent pursuant to a Management Agreement." Ex. H at ¶ 23.6

out its duties in maintaining and managing Plaintiffs' property. SAC at ¶ 26. The agreement enumerated numerous specific delegations of authority to RC Management, one of them being the power to hire a "program manager" to manage and administer the reservation procedures and exchange program for the Membership Program. SAC at ¶ 34. RC Management exercised that authority by hiring Defendant Cobalt, via an Affiliation Agreement, to operate the reservation system through which Ritz-Aspen owners obtain use of their allotted number of days at the Ritz-Aspen, as well as sister Ritz-Carlton resorts. SAC at ¶ 40.[4] The Affiliation Agreement grants Cobalt sole discretion in electing to affiliate the Ritz-Carlton Membership Program, of which all Ritz-Aspen owners are members, with "other locations . . . as Member Clubs or Associated Clubs from time to time." SAC at ¶ 40.

In 2012, MVW began disclosing its intent to scale back its luxury products line – namely, the Ritz-Carlton Club properties and Membership Program. SAC at ¶ 8. In a July 17, 2012 letter, Eveleen Babich, general manager of Cobalt, first informed Ritz-Aspen owners of the possibility that the Ritz-Carlton Club would be affiliated with the Marriott Vacation Club. SAC at ¶ 47. The letter described the affiliation as a means for Ritz-Aspen owners to use their allocated time to stay at Marriott Vacation Club resorts, but failed to mention that the affiliation would also allow the 400,000 Marriott Vacation Club members to access the Ritz-Carlton Club locations. SAC at ¶¶ 47-48. In the months following Ms. Babich's letter, various member-controlled Boards of Directors of various Ritz-Carlton Club properties expressed extreme concern about the proposed affiliation. SAC at ¶¶ 49-53. The Boards were concerned that such an affiliation would dilute the Ritz-Carlton brand, for which Ritz-Carlton Club owners paid premium prices. SAC at ¶¶ 49, 52.

---

[4] Four parties executed the Affiliation Agreement: Ritz Carlton Development Company (the developer), RC Management, Cobalt, and the Association. Ex. B.

The Association wrote to members of the Aspen Highlands club that "The Board has concerns that . . . the nature of our club will change by opening the club to MVW timeshare/points members who have a much lower cost of entry." SAC at ¶ 52. Discussions between MVW and the Boards of various Ritz-Carlton Club properties regarding the proposed affiliations continued throughout 2012. SAC at ¶¶ 58, 60.

In April 2013, the Association wrote to Ritz-Aspen owners to inform them that unless a majority of Ritz-Aspen owners voted in favor of doing so, the Ritz-Aspen would not be included in the Marriott Vacation Club affiliation. SAC at ¶ 60; Ex. L. No such vote ever took place. SAC at ¶ 61. Even so, in April 2014, Cobalt, acting in concert with the other Defendants, including RC Management and the Association, decided to include the Ritz-Aspen in the Marriott Vacation Club affiliation. SAC at ¶ 62. This decision was in direct contravention to Defendants' previous representations to Ritz-Aspen owners, including Plaintiffs. SAC at ¶ 64. The Association wrote a letter to Ritz-Aspen owners to inform them of the decision, disingenuously stating that the affiliation occurred "[i]n response to the Members' wishes." SAC at ¶ 63, Ex. M.

Due to Defendants' actions, approximately 400,000 Marriott Vacation Club members – who paid a small fraction of the purchase prices Plaintiffs paid, and who pay approximately one-third in annual fees – have access to luxury Ritz-Carlton brand resorts that were formerly only available to Plaintiffs and other Ritz-Carlton Aspen owners. SAC at ¶ 67. While Defendants have derived huge profits and cost savings from this affiliation, the value of Plaintiffs' fractional interests have been destroyed. SAC at ¶ 67. Even more, Plaintiffs have had to pay, in the form of inflated annual maintenance fees, for the increased use and wear-and-tear resulting from the opening of the Ritz-Aspen to Marriott Vacation Club members. SAC at ¶ 67. Defendant

Association acted in favor of the Marriott Defendants' interests, and contrary to Plaintiffs' best interests – manifestly breaching their fiduciary duties to Plaintiffs, including the duty of loyalty.

### III.     STANDARD

In ruling on a Rule 12(b)(6) motion to dismiss, the court's function "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's amended complaint alone is legally sufficient to state a claim for which relief may be granted." *Brokers' Choice of Am., Inc. v. NBC Universal*, 757 F.3d 1125, 1136-37 (10th Cir. 2014) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)). While a plaintiff is obligated to plead more than "mere labels and conclusions," a complaint need not contain detailed factual allegations to survive a motion to dismiss. *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a motion to dismiss, the court must accept the facts alleged in the complaint as true, and it must make all reasonable inferences in favor of the plaintiff. *Bell Atl. Corp*., 550 U.S. at 555-56, 592.

### IV.     ARGUMENT

#### A.  Demand Was Not a Precondition to this Lawsuit as It Would Have Been Futile

Demand is not required where it would be futile. *Neusteter v. District Court*, 675 P.2d 1, 7 (Colo. 1984) (excusing demand requirement on grounds of futility in analogous context of derivative action under C.R.C.P. 23.1); *Greenfield v. Hamilton Oil Corp*., 760 P.2d 664, 666 (Colo. App. 1988); *New Crawford Valley, Ltd. v. Benedict*, 847 P.2d 642, 645 (Colo. App. 1993). The purpose of a demand requirement is to afford the directors or managers an opportunity to

determine whether a shareholder suit would be in the best interests of the corporation. *Seni on Behalf of Ciber, Inc. v. Peterschmidt*, 2014 WL 5812149, *2 (D. Colo. Nov. 10, 2014). Here, requiring Plaintiffs to make a demand would be futile for at least two reasons: (1) Plaintiffs would be asking the Association to sue itself; and (2) the Association does not believe the affiliation constituted wrongdoing, as evidenced by the arguments made in its Motion to Dismiss (ECF No. 46, "Motion").

　　　First, Plaintiffs were not required to perform the futile act of demanding that the Association sue itself. *See New Crawford Valley*, 847 P.2d at 645. Where those who have the ability "to seek relief are the very persons alleged to have committed the wrongs sought to be remedied," plaintiffs need not make any demand before commencing suit. *Neusteter*, 675 P.3d at 7 (noting that "[t]he futility of seeking the desired action from the alleged wrongdoers is patent"). Here, Plaintiffs sued the Association for breaching its duty of loyalty and duty to enforce restrictive covenants set forth in the Declaration. SAC at ¶ 24. The SAC also alleges that the Association was a key player in aiding and abetting other Defendants in the decision to affiliate the Ritz-Aspen with Marriott Vacation Club. Specifically, the SAC explains that the Association was in active discussions with MVW about the proposed affiliation. SAC at ¶¶ 57, 58. The Association misled owners, including Plaintiffs, into believing that unless the owners voted in favor of doing so, the Ritz-Aspen would not be included in the Marriott Vacation Club. SAC at ¶ 60. Despite no vote ever taking place, the Association announced to the owners that the affiliation was implemented, and that Marriott Vacation Club owners would have access to the Ritz-Aspen. SAC at ¶ 63. The affiliation is the primary wrongdoing that Plaintiffs allege in the

SAC. It would, therefore, be futile for Plaintiffs to demand that the Association pay damages for a wrongdoing that it implemented.

Even more, futility is confirmed by the Association's stance that the affiliation was proper. Throughout its Motion, the Association states its view that the affiliation did no harm to Plaintiffs. *See, e.g.*, Motion at 2-3 (referring to the affiliated Marriott Vacation Club exchange program as a "totally optional and voluntary" opportunity); *Id.* at 8 (stating that the affiliation simply allows each member to "trade or rent the property that he or she owns"); *Id.* at 10 ("the voluntary arrangement that the Association forged with the Marriott manager does not violate Section 19.8 of the Declaration, and Plaintiffs have failed to allege any facts showing that the Association breached its fiduciary duties . . ."). Thus, the Association itself demonstrates that demand would have been futile by stating that the affiliation did not constitute any wrongdoing, and that in its view, Section 19.8 of the Declaration is inapplicable to the affiliation.

Protecting the same right at issue here, the Court of Appeals in *Colorado Homes* reinstated claims of breach of fiduciary duty by a unit owner against both the homeowners association and its managing agent, rejecting the defendants' argument that plaintiffs waived their right to bring the fiduciary duty claims by not pleading an express breach of fiduciary duty claim in its amended complaint. 43 P.3d at 721. Because the trial court had already rejected this theory, the appellate court held that seeking to amend to add the fiduciary duty claim "would have been an act of futility." *Id.* (citing *Higley,* 920 P.2d at 891) (Colo. App. 1996) ("the law does not require a party to perform a futile act in order to assert an important right")). Here, similarly, the law did not require Plaintiffs to perform the futile act of making a demand that the Association would have certainly rejected, as indicated in its Motion.

**B. The SAC Adequately Alleges the Association's Breach of Fiduciary Duty**

**1. The Association breached its duty of loyalty to Plaintiffs by imposing the affiliation**

In addition to the existence of a fiduciary duty, Plaintiffs must also allege a breach of that duty and damages. *F.D.I.C. v. Refco Grp., Ltd.*, 989 F.Supp. 1052, 1080 (D. Colo. 1997). The Association does not contest that it owes a fiduciary duty to Plaintiffs. *See generally* Motion. Indeed, it is well established under Colorado law that a homeowners association owes a fiduciary duty to individual owners. *Colorado Homes*, 43 P.3d at 722-23. The Association merely contends that Plaintiffs failed to plead a breach of fiduciary duty. Motion at 7-12. Yet the SAC alleges, in detail, how the Association breached its duty.

First, the Association, with the other Defendants, breached its duty of loyalty by favoring the interests of Defendants MVW, RC Management, Cobalt, and Lion & Crown to the detriment of Plaintiffs' interests. The Association's conduct, through the affiliation, allows over 400,000 Marriott Vacation Club members—who paid a small fraction of the purchase prices Plaintiffs paid and who pay one third of the annual fees Plaintiffs pay—to use their "points" to obtain access to the units and amenities at the Ritz-Aspen. SAC at ¶ 67. The SAC further explains that the Association was in active discussions with MVW in 2012 and 2013 regarding the proposed affiliation, and that the Association represented to Plaintiffs that the affiliation would not take place unless Ritz-Aspen owners voted in favor of it. SAC at ¶ 60. There was never such a vote; yet it was the Association that announced to Plaintiffs in April 2014 that the affiliation took place anyway. SAC at ¶¶ 63-64. These acts exhibit the Association's breach of the fiduciary duty it owed to the owners.

Separately, the SAC alleges that the Association breached its fiduciary duty to Plaintiffs by failing to enforce a restrictive covenant against further timesharing, Section 19.8 of the Declaration of Condominium for Aspen Highlands Condominiums. SAC at ¶¶ 62, 66, 70; Ex. H. Under *Colorado Homes*, 43 P.3d at 721-22, a homeowners association has a fiduciary duty to enforce restrictive covenants. Here, Section 19.8 states that "no Unit shall be used for the operation of a timesharing, fraction-sharing . . . program whereby the right to exclusive use of the Unit is alternated or scheduled among participants . . ." SAC at ¶ 54, Ex. H to SAC. The SAC alleges that the Association was concerned that this restrictive covenant would not permit the affiliation (SAC at ¶ 71), was informed by its lawyers that such an affiliation could not take place absent an amendment to the Declaration (SAC at ¶ 71), and that MVW was on notice of that legal opinion. *Id.* Yet, against the advice of its own lawyers, the Association, with the other Defendants, proceeded to carry out the affiliation. SAC at ¶ 71. In sum, the SAC adequately alleges the manner and means in which the Association breached its fiduciary duty to Plaintiffs.

That the Association now asserts a different interpretation of this contractual provision that favors the other Defendants is troubling. Motion at 9. But the correct interpretation of this very general provision is a question for another day; ambiguities in contractual language must not be resolved on a motion to dismiss. *Chimney Rock Pub. Power Dist. v. Tri-State Generation & Transmission Ass'n, Inc.*, 2012 WL 84572, *7 (D. Colo. Jan. 11, 2012) ("It is not appropriate for the Court to resolve this breach of contract claim at the pleading stage based on an alleged breach of such a general and ambiguous contractual provision"); *Test Servs., Inc. v. Princeton Review, Inc.*, 2005 WL 3211594, *5 (D. Colo. Nov. 29, 2005) ("[I]f a contract is found to be

ambiguous, a motion for summary judgment—much less a motion to dismiss—on a breach of contract claim is improper") (quotation marks omitted).

### 2.   Whether the business judgment rule applies is a question of fact

The Association concedes that in order to take shelter under the business judgment rule, it must show that it acted in good faith when it participated in the decision to affiliate with the Marriott Vacation Club. Motion at 7-8. But "[w]hether a party acted in good faith is a question of fact which must be determined on a case by case basis." *Polk v. Hergert Land & Cattle Co.*, 5 P.3d 402, 405 (Colo. App. 2000) (citing *Amoco Oil Co. v. Ervin,* 908 P.2d 493 (Colo. 1995)).

*Polk* involved claims that certain members of a closely held family agriculture corporation were engaging in oppressive conduct and acts of self-dealing. *Id.* at 404. Defendants sought summary judgment, in part, on the grounds that their actions were protected by the business judgment rule. *Id.* at 406. While the trial court granted summary judgment, the appellate court reversed, stating, "[n]or does application of the business judgment rule justify summary judgment. That rule applies only to actions taken in good faith, *see Wolf v. Rose Hill Cemetery Ass'n, supra,* and the Hergerts' good faith is a disputed issue of fact. Whether their actions were protected by the business judgment rule cannot be resolved on summary judgment." *Id.*

The holding of *Polk* applies with greater force to the Association's Motion to dismiss this action, not on summary judgment, but at the pleadings stage. The Motion must be denied because whether the Association acted in good faith in compliance with the business judgment rule is a question of fact for the jury to resolve.

**C.  The SAC Adequately Alleges Aiding and Abetting and Conspiracy Claims Against the Association**

The SAC thoroughly alleges an aiding and abetting a breach of fiduciary duty claim against the Association. To prevail on such a claim, a plaintiff must establish three elements: "(1) breach by a fiduciary duty owed to a plaintiff, (2) a defendant's knowing participation in the breach, and (3) damages." *Kirzhner v. Silverstein*, 2010 WL 2985615, *11 n.13 (D. Colo. July 23, 2010). All three elements are sufficiently pled here. First, the SAC alleges that the Association, RC Management, and Cobalt each owe a fiduciary duty to Plaintiffs by virtue of their high degree of control over Plaintiffs' property interests, as well as agency (and subagency) relationships. SAC at ¶¶ 24, 36, 42. The SAC further alleges that Cobalt breach its fiduciary duties to Plaintiffs by working with the other Defendants to effectuate the affiliation. SAC at ¶¶ 9, 62, 64. The SAC then lays out specific facts detailing the Association's active participation in that breach. Paragraph 52 states that the Association was working with MVW executives to "better understand the proposed affiliation." Paragraph 57 explains that it was the Association that issued a letter to Plaintiffs revealing that counsel had advised that any affiliation would require a revision of the underlying Association documents. Moreover, Paragraphs 60 and 63 allege that it was the Association that misled Plaintiffs into believing that the affiliation would not occur absent a favorable vote by the owners. The SAC also plainly alleges damages – that Defendants' wrongful acts caused the value of Plaintiffs' property interests to plummet, and forced Plaintiffs to pay steadily increasing annual dues. SAC at ¶¶ 9, 43, 67, 75, 88.

The Association gripes of Plaintiffs' aiding and abetting claim merely by concluding that it cannot "be liable for aiding and abetting another Defendants' breach of fiduciary duty because Plaintiffs have failed to identify any facts to support such an allegation." Motion at 12. Yet, as

explained above, the SAC alleges how the Association aided and abetted Cobalt and the other Defendants in deciding on the affiliation and imposing it on the owners, including the Plaintiffs.

The Association's attack on Plaintiffs' conspiracy claim is as faint as its attack on Plaintiffs' aiding and abetting claim. In fact, the Association makes no substantive argument about the conspiracy claim, instead only concluding that Plaintiffs fail to allege any underlying breach of fiduciary duty "for the reasons discussed above." Motion at 13-14. But as explained throughout this opposition, the SAC adequately alleges a breach of fiduciary duty by all Defendants as well as the Association's active participation in that breach.[5]

## V.    CONCLUSION

For all the above reasons, the Association's motion to dismiss should be denied, with the exception of the fourth cause of action for unjust enrichment. In the event that the Court grants the Association's motion to dismiss, plaintiffs respectfully request leave to amend.

Dated: August 15, 2016

Respectfully submitted,

GIBBS LAW GROUP LLP

/s/ Michael Schrag
Michael Schrag (admitted pro hac vice)
505 14th Street, Suite 1110
Oakland, CA 94612
Phone: (510) 350-9718
Facsimile: (510) 350-9701
E-mail: mls@classlawgroup.com

Attorneys for Plaintiffs

---

[5] Plaintiffs will not pursue a claim for unjust enrichment against the Association.

13

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 15th day of August, 2016, a true and accurate copy of the foregoing **Plaintiffs' Opposition to Defendant Aspen Highlands Condominium Association's Motion to Dismiss Plaintiffs' Second Amended Complaint** was filed and served via CM/ECF filing system upon following:

Matthew C. Ferguson, Esq.
The Matthew C. Ferguson Law Firm, P.C.
119 South Spring, Suite 201
Aspen, Colorado 81611

Michael J. Reiser, Esq.
Lilia Bulgucheva, Esq.
Law Office of Michael J. Reiser
961 Ygnacio Valley Road
Walnut Creek, California 94596
Michael L. Schrag, Esq.
Gibbs Law Group LLP
1 Kaiser Plaza, Suite 1125
Oakland, California 94612

Tyler R. Meade, Esq.
The Meade Firm p.c.
1816 Fifth Street
Berkeley, California 94710

Daniel F. Shea, Esq.
Jessica Black Livingston, Esq.
Hogan Lovells US LLP
1200 Seventeenth Street, Suite 1500
Denver, Colorado 80202

Naomi G. Beer, Esq.
Greenberg Traurig, LLP
1200 17th Street, Suite 2400
Denver, Colorado 80202

Ian S. Marx, Esq.
Philip R. Sellinger, Esq.
Greenberg Traurig, LLP
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932

*/s/ Linda Lam*
 Linda Lam

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-01301-PAB

RCHFU, LLC, et al.,

      Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al.,

      Defendants.

---

**DEFENDANT ASPEN HIGHLANDS CONDOMINIUM ASSOCIATION'S REPLY IN
SUPPORT OF ITS MOTION TO DISMISS**

---

      Defendant Aspen Highlands Condominium Association, Inc. ("Association") respectfully submits this reply in support of its Motion to Dismiss ("Motion") the claims Plaintiffs allege against the Association in their Second Amended Complaint ("SAC").

## INTRODUCTION

      The gravamen of Plaintiffs' SAC is that the Association breached fiduciary duties it owes Plaintiffs by permitting fee-simple Owners of deeded 1/12 fractional ownership interests at the Ritz-Carlton Club in Aspen Highlands ("the Club") to participate in a voluntary trading program whereby they could trade one of their weeks at the Aspen Highlands for a week elsewhere with a member of the Marriott Vacation Club ("MVC"). Just as Owners have the right to rent their units to anyone they wish, the voluntary trading program gives Club members the option, on an annual basis, to trade weeks they may not want to use in Aspen with an MVC member, allowing Club members access to MVC properties. Plaintiffs' response to the Association's first argument—that Plaintiffs never pleaded that they satisfied contractual preconditions to filing this

1

lawsuit, specifically that they first demand action by the Association, *see* SAC, Ex. H, Declaration of Condominium for Aspen Highlands Condominiums ("Declaration"), ¶ 7.8.3—is that making such a demand would have been futile.  Resp. at 6–8.  Plaintiffs, however, failed to plead that making a demand would be futile, let alone allege sufficient facts to demonstrate futility.  Nowhere in the SAC, for example, do Plaintiffs allege that the Association's board members lacked independence, the most common way of successfully pleading futility.

In addition, Plaintiffs' Response fails to demonstrate that the SAC alleged facts sufficient to state a claim against the Association for breach of fiduciary duty.  Plaintiffs again fail to show (and to have alleged in the SAC) that a majority of the Association's board members acted in bad faith or lacked independence and thus the Association could not avail itself of the protections afforded by law to those who in good faith exercise their business judgment in making decisions. Finally, Plaintiffs fail to allege facts supporting their claims against the Association for aiding and abetting breaches of fiduciary duty by other Defendants and for conspiracy.[1]

## **ARGUMENT**

### A.     **Plaintiffs' claims against the Association must be dismissed because of the demand requirement in the Declaration.**

Plaintiffs admit that they failed to satisfy the demand precondition in the Declaration, ¶ 7.8.3, which precondition is never referenced in the SAC.  Plaintiffs attempt to justify their failure to make such a demand of the Association by now saying for the first time in their Response that doing so would have been futile.  Resp. at 6–8.

Nowhere does the Declaration excuse or waive the demand requirement simply because an Owner believes doing so would be futile.  Nevertheless, even if the Declaration could be

---

[1] Plaintiffs dropped their unjust enrichment claim against the Association.  Resp. at 13 n.5.

interpreted as excusing Club members from making a demand on the basis of futility, at the very least they would have to plead facts demonstrating that making a demand would be futile, as required in shareholder derivative suits and other situations governed by Colorado law.  *See Hirsch v. Jones Intercable, Inc.*, 984 P.2d 629, 634 (Colo. 1999) (derivative action by limited partners against general partner); *Bell v. Arnold*, 175 Colo. 277, 285–86 (1971); *New Crawford Valley, Ltd. v. Benedict*, 847 P.2d 642, 644 (Colo. App. 1993) (highlighting specific allegation that "any such demand would be futile"); *see also Griggs v. Jornayvaz III*, No. 09-cv-00629-PAB-KMT, 2010 WL 4932674 at *4 (D. Colo. Nov. 29, 2010) (Brimmer, J.) (noting plaintiffs "allege[d] that such a demand would have been futile").  Plaintiffs never did so in the SAC.

Nor are the allegations of futility advanced by Plaintiffs in their Response, even had they pleaded them in their SAC, sufficient to satisfy their pleading burden of providing sufficient evidence that the Association's board lacked independence to exercise their business judgment. Plaintiffs point to three specific allegations they believe support their argument that making a demand would have been futile.  First, they say that the Association was "in active discussions with MVW" about the proposed voluntary trading program.  Resp. at 7 (citing SAC ¶¶ 57, 58).[2] But the fact that the Association and MVW were discussing the proposed program does not demonstrate that the Association's board lacked independence or otherwise excuse Plaintiffs' demand requirement.[3]  *See Griggs*, 2010 WL 4932674 at *4–5 (discussing standard for

---

[2] Plaintiffs cite paragraphs 57 and 58 of their SAC for this assertion.  But paragraph 58 addresses discussions between MVW and the president of the Ritz-Carlton Club, Bachelors Gulch board, not the Association.  SAC ¶ 58.

[3] Even if Plaintiffs could show lack of independence by alleging that the very board members who made the 2014 decision could not objectively evaluate a proposal to attack their actions, that would not suffice as Plaintiffs would still have to show there were no independent Association board members at the time they filed their complaint.  In this vein, as Plaintiffs' exhibits

challenging demand requirement on basis of futility in context of a shareholder derivative action).  Second and third, Plaintiffs argue that the Association stated that it would hold a vote of the Club members and then permitted the voluntary trading program without holding a vote. Resp. at 7 (citing SAC ¶¶ 60, 63).  As we indicate in our Motion, regardless of whether the Marriott entities or the Association at some point believed it was wise to poll the Club members, no provision of the Declaration, bylaws, or any other governing document required the Association to hold a vote before Club members, as fee-simple owners, could on a voluntary basis trade a week of their allotted time with someone else.  Plaintiffs' superficial allegations in the SAC are thus woefully insufficient to "patent[ly]" establish the futility of making a demand of the Association.  *See Hirsch*, 984 P.2d at 636 (noting allegations that demonstrated "patent" futility); *Neusteter v. Dist. Ct. in and for City and Cnty. of Denver*, 675 P.2d 1, 7 (1984) (same).

Plaintiffs next attempt to get around their pleading failures by asserting that because we argued in our Motion that the Association did nothing wrong, we conceded the merit of Plaintiffs' futility argument.  Resp. at 8.  But this post-hoc rationalization is improper:  the Association's current defense of the legal claims levied against it does not demonstrate that it would have rejected Plaintiffs' demand had they followed the requirement in the Declaration, a requirement clearly intended to give the Association the opportunity to deliberate, outside of a litigation setting, regarding the fairness of the proposed action to all Club members (including the 750 Club members who are not demanding the action).  And Plaintiffs' reference to *Colorado Homes, Ltd. v. Loerch-Wilson* similarly is misplaced.  Resp. at 8 (citing 43 P.3d 718, 721 (2001)). *Colorado Homes* does not address demand futility in any way; the Colorado court of appeals

---

evidence, the board's membership has changed over time.  *Compare* SAC Ex. G, *with id.* Ex. M (identifying different presidents of the board).

affirmed the trial court's ruling that it would be futile to amend a complaint to expressly assert a claim for breach of fiduciary duty when that claim was properly before the court through other means.  43 P.3d at 721.

Plaintiffs failed to satisfy the Declaration's contractual requirement that they make a demand of the Association before bringing this lawsuit.  Moreover, because they did not allege in the SAC that making a demand would be futile, let alone allege facts sufficient to show futility, the SAC should be dismissed.

**B.     Plaintiffs fail to state a claim against the Association for breach of fiduciary duty.**

Alternatively, Plaintiffs' claim for breach of fiduciary duty must be dismissed because the business judgment rule protects the Association's actions here, and Plaintiffs have failed to allege sufficient facts to show that the Association lacks independence, acted in bad faith, or was otherwise deprived of its ability to exercise its business judgment.  *See Colo. Homes, Ltd.*, 43 P.3d at 724.  The Declaration imposes upon the Association's board a duty to represent owners' interests "in a fair and just manner."  Declaration ¶ 6.8.  But the Association does not breach that duty every time it acts in a manner that some Owners, here Plaintiffs who comprise fewer than 10 percent of all Owners, disapprove of.  Instead, the business judgment rule protects the Association's decisions when they are made in good faith and are not arbitrary.  *See Colo. Homes, Ltd.*, 43 P.3d at 724; *Rywalt v. Writer Corp.*, 526 P.2d 316, 317 (Colo. App. 1974).[4]

---

[4] Plaintiffs argue that this Court should not rule on whether the business judgment rule applies at this pleading stage of the litigation.  Resp. at 11 (citing *Polk v. Hergert Land & Cattle Co.* 5 P.3d 402,405 (Colo. App. 2000)).  But *Polk* does not stand for this proposition, with the Court basing its decision on the disputed facts submitted during briefing on a motion for summary judgment. While the court denied summary judgment on the question whether the business judgment rule protected defendants' conduct, it did so after concluding that there were disputes of material fact regarding the defendants' good faith.  *Id.* at 406.  In contrast, the SAC contains no allegations of

Plaintiffs' Response identifies the same two purported breaches of the Association's fiduciary duties we addressed in our Motion:  (1) that the Association favored Defendants' interests over Club members' by permitting the voluntary trading program, and (2) that the Association failed to enforce Section 19.8 of the Declaration.  As to the first, Plaintiffs rehash the same three allegations discussed above in connection with Plaintiffs' futility argument.  Resp. at 9.  They argue that the Association was actively discussing the voluntary trading program with MVW, represented to Plaintiffs that all Owners would get to vote on the program, and then announced the trading program in April 2014 without holding a vote.  *Id.* (citing SAC ¶¶ 60, 63–64).  But Plaintiffs fail to establish how these actions, or inactions, were made in bad faith, were arbitrary, or otherwise breached the Association's duty to represent owners' interests "in a fair and just manner."  *See* Declaration ¶ 6.8.

In attacking the Association's action, Plaintiffs heavily rely on an April 2013 letter from the Association referencing a possible vote about including "Aspen Highlands in the Marriott Vacation Club affiliation/points program," but which did not elaborate as to the precise nature of the contemplated affiliation.  Whether that letter addressed the trading program announced a year later or some other manner of affiliation is immaterial, however, as no provision of the Declaration, bylaws, governing document, or any exhibit to the SAC requires the Association to hold a vote before it could arrange with the Marriott entities to allow Club members, on a voluntary basis, to trade a week with a MVC timeshare member or anyone else.  The Declaration contains numerous provisions explicitly requiring a vote by members of the Association—not one of which requires a vote by all members of the Association in connection with the decision

bad faith.

to permit the voluntary trading program at issue here. *See* Mot. at 11. Thus, Plaintiffs fail to identify any factual allegation that shows how this conduct breached the Association's fiduciary duty or deprives the Association of the business judgment rule's protections. *See Oberbillig v. West Grand Towers Condo. Ass'n*, 807 N.W.2d 143, 155 (Iowa 2011) ("the [business judgment] rule applies to the board's exercise of its interpretive authority . . . to proceed . . . without a membership vote").

As to the second alleged breach by the Association, failing to enforce Section 19.8 of the Declaration, Plaintiffs argue that the Association's lawyers told it the "affiliation could not take place absent an amendment to the Declaration," yet the Association proceeded nonetheless. Resp. at 10 (citing SAC ¶ 71). This argument also fails because the Association's legal advice does not form the basis for any of the allegations in the SAC supporting Plaintiffs' claim for breach of fiduciary duty based on the Association's failure to enforce Section 19.8. *See* SAC ¶¶ 70–71 (discussing alleged breach of fiduciary duty in connection with Section 19.8 but nowhere mentioning Association's legal advice). In fact, the SAC only references such advice once, in describing a letter from the Association to Club members in October 2012, which was sent during the beginning of the Association's discussions with MVW regarding the affiliation with the MVW, and which does not mention Section 19.8 of the Declaration. *See* SAC ¶ 57.

In any event, Section 19.8 is unambiguous, so no parol evidence, whether legal advice or otherwise, would be admissible at trial or any other stage of the litigation to prove what it says.[5] Section 19.8 prohibits any Units from being "used for the operation of a timesharing, fraction-

---

[5] Parol evidence is inadmissible to vary or contradict the terms of an unambiguous contractual provision. *See Roa v. Miller*, 784 P.2d 826, 828 (Colo. App. 1989); *see also Northwest Cent. Pipeline Corp. v. JER P'ship*, 943 F.2d 1219, 1226 (10th Cir. 1991).

sharing, interval ownership, private residence club, membership program, vacation club, exchange network or system or similar program," other than the Plan of Fractional Ownership established by Article 23 of the Declaration.  Declaration ¶ 19.8; *see also* Colo. Rev. Stat. § 38-33-110 (defining time sharing).  This unambiguously means that no one can buy an interest at Aspen Highlands and then subdivide ownership of his Unit in such a manner as to operate a timesharing program with respect to that unit.  Section 19.8 does not mean that a Club member cannot rent his unit or trade a week of his interest with another person, even if the trade is for a week at a club at which the other person owns a timesharing interest.  Nor does "[t]he mere fact that there is a difference between the parties over the interpretation of an instrument . . . itself create an ambiguity." *Brunton v. Int'l Trust Co.*, 164 P.2d 472, 475 (Colo. 1945).[6]

Plaintiffs have not alleged that any provision of the Declaration prohibits an Owner from participating in the voluntary trading program; nor have they shown that a vote of the Owners was required.  Accordingly, the business judgment rule protects the Association's action and Plaintiffs' breach of fiduciary duty claim should be dismissed.

---

[6] Even if Plaintiffs could now effectively amend the SAC to allege that the legal advice referenced in the 2012 letter was based upon Section 19.8 of the Declaration (even though the Section is nowhere referenced in the letter) and convince the Court to consider it as parol evidence, the alleged legal advice would not defeat the application of the business judgment rule. To rebut the application of the rule, Plaintiffs must raise a reason to doubt whether the "action was taken on an informed basis or whether the directors honestly and in good faith believed that the action was in the best interests" of the Association. *See e.g.*, *Griggs*, 2010 WL 4932674 at *10 (evaluating standard in shareholder derivative actions under Delaware law). The cited advice is not directed at the voluntary trading program announced in the April 2014 letter and preceded that announcement by more than a year and a half. There simply is not sufficient evidence to infer, as Plaintiffs have, that the Association intentionally ignored the advice and thereby acted in bad faith.

C.   **Plaintiffs fail to state a claim against the Association for aiding and abetting or conspiring with the Marriott Defendants.**

Plaintiffs fail to allege that the Association knowingly provided substantial assistance to another Defendant's breach of its fiduciary duties to the Plaintiffs.  *See City P'ship Co. v. Lehman Bros., Inc.*, 344 F. Supp. 2d 1241, 1246 (D. Colo. 2004) (listing elements).  The SAC contains only conclusory allegations that the Association "materially assisted, aided, abetted and/or conspired with" other Defendants and that certain Defendants "pursuant to an agreement it [sic] made with Defendant Association," established the voluntary trading program.  SAC ¶¶ 45, 64–66.  Plaintiffs attempt to recast their general allegations as sufficiently particular in their Response, but to no avail.  Again, Plaintiffs rely on the legal advice the Association allegedly received and its decision not to hold a vote, *id.* (citing SAC ¶¶ 57, 60, 63), alleging in addition only that "the Association was working with MVW executives to 'better understand the proposed affiliation.'"  Resp. at 12 (citing SAC ¶ 52).  But as the Marriott Defendants explained in their Motion to Dismiss, the parties' Affiliation Agreement provides that decisions regarding affiliation are solely within the discretion of Defendant Cobalt and can occur without the Association's approval, Marriott Defs.' Mot. to Dismiss at 12, ECF No. 47, and thus nothing the Association did gave it the power to influence or participate in the affiliation decision.  Moreover, neither failing to follow legal advice nor failing to hold a vote is affirmative action that is necessary to satisfy the "substantial assistance" component of the aiding-and-abetting analysis when, as here, the Association has no duty to hold a vote.  *See In re Storage Tech. Corp. Sec. Litig.*, 147 F.R.D. 232, 235 (D. Colo. 1993) (failures to act qualify as substantial assistance only where there is a legal duty to act).  Standing alone, this additional allegation that the Association was working with MVW to understand the proposed affiliation cannot be deemed

assistance of any kind, let alone substantial assistance necessary for aiding-and-abetting liability.[7]

Similarly, Plaintiffs fail to allege any facts to plausibly support their claim that the Association conspired with other Defendants to breach fiduciary duties owed to Plaintiffs.  They do not allege any underlying unlawful act or goal—as is required to support a conspiracy claim. *See Double Oak Constr., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140, 146 (Colo. App. 2003) (listing elements of claim).  In this vein, Plaintiffs voluntarily dropped their claim against the Association for unjust enrichment, Resp. at 13 n.5, thus conceding that the Association derived no financial benefit from agreeing to the voluntary trading program.

## CONCLUSION

For all of the foregoing reasons, the Association respectfully requests that the Court dismiss all of Plaintiffs' claims against the Association with prejudice.

Respectfully submitted this 29th day of August, 2016.

*/s/  Daniel F. Shea*
**Daniel F. Shea**
**Jessica Black Livingston**
HOGAN LOVELLS US LLP
1200 Seventeenth Street, Suite 1500
Denver, Colorado 80202
Telephone: (303) 899-7300
FAX: (303) 899-7333
E-mail: dan.shea@hoganlovells.com
E-mail:jessica.livingston@hoganlovells.com

*Attorneys for Defendant Aspen Highlands Condominium Association*

---

[7] Moreover, the Association has a duty to inform itself of all material information reasonably available prior to making a decision that would affect its Owners.  *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000)).

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on August 29, 2016, I electronically filed the foregoing **DEFENDANT ASPEN HIGHLANDS CONDOMINIUM ASSOCIATION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| **Michael J. Reiser**<br>Law Office of Michael J. Reiser<br>961 Ygnacio Valley Road<br>Walnut Creek, CA 94596<br>reiserlaw@gmail.com<br><br>**Matthew C. Ferguson**<br>The Matthew C. Ferguson Law Firm, P.C.<br>119 South Spring, Suite 201<br>Aspen, Colorado 81611<br>matt@matthewfergusonlaw.com<br><br>**Michael L. Schrag**<br>Gibbs Law Group LLP<br>1 Kaiser Plaza, Suite 1125<br>Oakland, CA 94612<br>mls@classlawgroup.com<br><br>**Tyler R. Meade**<br>The Meade Firm P.C.<br>1816 Fifth Street<br>Berkeley, CA 94710<br>tyler@meadefirm.com<br><br>***Attorneys for Plaintiffs*** | **Naomi G. Beer**<br>1200 17th Street, Suite 2400<br>Denver, Colorado 80202<br>Phone: (303) 572-6500<br>Fax: (303) 572-6540<br>BeerN@gtlaw.com<br><br>**Attorneys for Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., Ritz-Carlton Management Company, LLC, Cobalt Travel Company, LLC and Lion & Crown Travel Company, LLC** |

/s/ Daniel F. Shea
**Daniel F. Shea**