# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 16-01301 PAB

RCHFU, LLC, et al.

      Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al.

      Defendants.

---

## MARRIOTT DEFENDANTS' MOTION TO DISMISS
## SECOND AMENDED COMPLAINT

---

Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC ("RC Management"), The Cobalt Travel Company, LLC ("Cobalt") and The Lion & Crown Travel Co., LLC (collectively, "Marriott Defendants") move the Court to dismiss the Second Amended Complaint ("SAC") pursuant to Fed. R. Civ. P. 12(b)(6).  The Marriott Defendants submit the following brief in support of their Motion.

## CERTIFICATION OF CONFERENCE

The deficiencies that require dismissal of the SAC against the Marriott Defendants are not correctable by amendment.  Thus, the parties have not conferred in an effort to resolve the issues raised in this Motion, pursuant to Rule III.F.2.a of Your Honor's Practice Standards.

## INTRODUCTION

Plaintiffs are owners of 1/12 fractional interests in luxury condominium units at The Ritz-Carlton Club, Aspen Highlands, Colorado ("RC Club Aspen").  Each 1/12 fractional interest

entitles its owner to four use-weeks per year, which can be spent either at RC Club Aspen in the specific unit for which the owner contracted, or at any other resort with which RC Club Aspen is currently affiliated, subject to availability and other restrictions.  Reservations and exchanges for stays at other resorts are managed and administered through The Ritz-Carlton Club Membership Program ("RC Club Membership Program").

Plaintiffs have no complaints about RC Club Aspen, their fractional interests per se, or the RC Club Membership Program in general.  Rather, they complain that, in 2014, RC Club Aspen's Program Manager, Cobalt, decided to affiliate RC Club Aspen with Marriott Vacation Club Destinations ("MVC") and that, as a result of that affiliation (the "MVC Affiliation"), MVC members gained "access to luxury resorts [such as RC Club Aspen] that were formerly only available to Plaintiffs and [RC Club Aspen] Owners."  SAC ¶ 67.  Plaintiffs thus contend that the MVC Affiliation was improper, and they seek to hold three entities directly liable:  RC Management, Cobalt, and the Aspen Highlands Condominium Association ("Association") of which they, as fractional interest owners, are members.  Plaintiffs allege that all three entities owed them a fiduciary duty to act in their best interests and that each breached its duty by either carrying out or not opposing the MVC Affiliation.

As to RC Management and Cobalt, Plaintiffs' reasoning as to their supposed fiduciary duty is both circuitous and fatally flawed.  Plaintiffs assert that, by virtue of a management agreement between the Association and RC Management ("Management Agreement"), RC Management became the Association's (and, by extension, Plaintiffs') agent, i.e., fiduciary.  Then, because the Management Agreement authorized RC Management to engage a "Program Manager" (Cobalt) to manage and administer the RC Club Membership Program through an

affiliation agreement ("Affiliation Agreement"), Cobalt allegedly became RC Management's sub-agent and, by extension, the Association's (and Plaintiffs') fiduciary. Plaintiffs take this roundabout approach because it was Cobalt alone that, pursuant to the Affiliation Agreement, was permitted to affiliate RC Club Aspen with MVC; therefore, Plaintiffs' entire case hinges on their ability to show that Cobalt was their fiduciary.

Plaintiffs' argument fails, however, because the Management Agreement expressly disclaims any fiduciary relationship, recognizing, instead, RC Management's status as independent contractor. The Management Agreement also gives the Association no right to control RC Management's activities under the agreement, and such right to control is a prerequisite for a principal/agent relationship. Thus, because RC Management had no fiduciary duty to the Association (or Plaintiffs) under the Management Agreement, neither did its alleged sub-agent, Cobalt.

As for Plaintiffs' breach of fiduciary duty claim against the Association, a different analysis is required because homeowners' associations do owe a fiduciary duty to their members.[1] Plaintiffs allege that the Association breached its fiduciary duty to them as Association members by failing to enforce a restrictive covenant prohibiting the MVC Affiliation. But, as explained below, no such covenant exists. The Court can make that determination as a matter of law based on the plain language of the governing documents and general principles of contract interpretation.

---

[1] Although the Association is represented by its own counsel in this action, the Marriott Defendants are addressing the breach of fiduciary duty claim alleged against the Association, because Plaintiffs have also alleged that the Marriott Defendants aided and abetted and conspired with the Association with respect to such alleged breach.

Case 1:16-cv-01301-PAB-GPG   Document 47   Filed 07/25/16   USDC Colorado   Page 4 of 19

Plaintiffs' inability to state breach of fiduciary duty claims against RC Management, Cobalt and the Association renders their dependent aiding and abetting, conspiracy, and unjust enrichment claims against the Marriott Defendants moot. Plaintiffs have, therefore, failed to state any claim upon which relief could be granted, and the SAC should be dismissed in its entirety.

## FACTUAL BACKGROUND

Plaintiffs allege that, between 2001 and 2012, they purchased 1/12 fractional interests at RC Club Aspen. SAC ¶¶ 6, 13. In addition to their individual purchase agreements, the documents governing Plaintiffs' purchases include the Declaration for Aspen Highlands Village ("Master Declaration" or "Master Decl.") (attached to the Declaration of Jeannette Greene, dated July 25, 2016 ("Greene Decl.") as Exhibit A);[2] the Declaration of Condominium for Aspen Highlands Condominiums ("Declaration of Condominium" or "Decl. of Condo.") (SAC, Ex. H); The Ritz-Carlton Management Company, L.L.C. Management Agreement ("Management Agreement" or "Mgmt. Agmt.") (*see* SAC ¶ 25[3]); and The Ritz-Carlton Club Membership Program Affiliation Agreement ("Affiliation Agreement" or "AA") (SAC, Ex. B).

### A.    Master Declaration

---

[2] In addition to the SAC and attached exhibits, the Court may properly consider the Master Declaration, which is referred to in the SAC (*see* ¶ 54 n.4) and is central to Plaintiffs' claims. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) ("[I]f a … document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.").

[3] The "Management Agreement" attached to the SAC as Exhibit A is for the wrong Ritz-Carlton resort. A copy of the correct Management Agreement is attached to the Greene Declaration as Exhibit B. Subsequent amendments to the Management Agreement did not change the provisions quoted herein; however, the amendments are attached to the Greene Declaration for the sake of completeness. *See* Greene Decl., Exs. C-E.

The Master Declaration is the publicly recorded document whereby "Declarant" (Hines Highlands Limited Partnership) created Aspen Highlands Village ("Property"), a planned community of which RC Club Aspen is a part. Master Decl. § 1.1. Pursuant to the Master Declaration, the Property was divided into fee simple interests called "Units," some of which were designated for residential use in which "Fractional Ownership Interests" could be sold. *Id.* at § 2.58.

Article 8 of the Master Declaration ("Restrictions on Use") lists prohibited activities and uses of the Property. *See, e.g.,* § 8.7 ("No Noxious or Offensive Activity"); § 8.8 ("No Harassment of Wildlife"); § 8.10 ("No Unsightliness"). A further restriction prohibits anyone except Declarant from selling fractional interests in the Units or operating a timeshare program involving the Units:

> Other than the right of Declarant, … [and its] successors and specific assigns … to create Fractional Ownership Interests as contemplated by this Declaration (specifically including, without limitation, any Fractional Project[4]), no Unit shall be used for the operation of a timesharing, fraction-sharing, or similar program whereby the right to exclusive use of the Unit rotates among participants in the program on a fixed or floating time schedule over a period of years.

§ 8.25 ("No Timeshare"). Thus, individual unit owners were prohibited from operating a timesharing program, but Declarant was not so prohibited. Indeed, Declarant was given the express right to do so. *Id.* at § 1.3.

**B.      Declaration of Condominium**

The Declaration of Condominium is the document whereby "Declarants" (Hines Highlands Limited Partnership and The Ritz-Carlton Development Company, Inc. ("RC

---

[4] "Fractional Project" is defined as "a Project within which the individual Units are divided into Fractional Ownership Interests pursuant to applicable provisions of Colorado law." *Id.* at § 2.24. Aspen Highlands Condominiums is a Fractional Project.

Development")) created Aspen Highlands Condominiums, a "Project" envisioned by the Master Declaration. *See* Decl. of Condo. (SAC Ex. H) (prefatory language and § 1.1); *see also* Master Decl. (Greene Decl. Ex. A) § 2.44 (defining "Project Declaration"). The Declaration of Condominium also contemplated that the Association's Executive Board would enter into a Management Agreement "to discharg[e its] responsibilities … relative to the operation, maintenance and management of the Project." *Id.* at § 2.40.[5]

### C.   <u>Management Agreement</u>

As contemplated in the Declaration of Condominium, the Association entered into a Management Agreement with RC Management under which RC Management (as "Management Company") is to act "as the exclusive managing entity of the Condominium and to manage the daily affairs of the Condominium and the [fractional ownership interest plan]." *See* Mgmt. Agmt. (Greene Decl. Ex. B) § 2. The Management Agreement expressly provides that "<u>nothing in this Agreement shall be construed as creating a partnership, joint venture, or any other relationship between the parties to this Agreement</u>." *Id.* (emphasis added). The Management Agreement further provides that "<u>[RC Management] is an independent contractor</u> of the Association" and that the "Association … <u>releases any right of control</u> over the method, manner or means by which [RC Management] performs its duties and responsibilities under this Agreement." *Id.* at § 30 (emphasis added). In addition, the Management Agreement permitted RC Management to "[e]ngage a Program Manager through an [A]ffiliation [A]greement" who

---

[5] The Declaration of Condominium is secondary and "subject to" to the Master Declaration. *See* Decl. of Condo. § 1.9. Thus, "[i]n case of any conflict between th[e terms of the two Declarations], the Master [Declaration and associated documents] shall control." Decl. of Condo. at § 22.8 ("Conflict of Provisions").

would have "the broadest possible" authority to manage and administer the RC Club Membership Program. *Id.* at § 4(S).

## D. Affiliation Agreement

The Affiliation Agreement, which is among Cobalt (as "Program Manager"), RC Development (as "Developer"), RC Management (as "Club Manager") and the Association (*see* AA (SAC, Ex. B) (prefatory language)), sets out the terms and conditions of RC Club Aspen's affiliation with the RC Club Membership Program. *See id.* (fifth "WHEREAS" clause). By virtue of his/her fractional interest ownership in RC Club Aspen, each owner (or "Member") "has membership privileges in the [RC Club] Membership Program on a mandatory basis" (*id.* at § II ("Definitions")) and "is deemed to have consented to the terms and conditions of the [Affiliation] Agreement." *Id.* at § 1.2.

The Affiliation Agreement lists numerous "rights, duties and obligations [that] … are exclusive to the Program Manager" (*see id.* at § 5.1), including the right to:

- "consent to the employment of any Club Manager engaged by the Developer or … Association to manage, operate and maintain the Club" (*id.* at § 4.5);[6]

- "in its sole discretion, elect to affiliate other locations with the Membership Program as Member Clubs or Associated Clubs from time to time. Neither the Developer, Members Association, nor Club Manager shall be entitled to participate in or consent to the Program Manager's decision in this regard." (*Id.* at § 7.2.a); and

- "in its sole discretion, create a separate membership program, develop individual resort properties as residential, transient or other use, or enter into management agreements with resort properties without the approval of the Developer, Members Association or Club Manager" (*id.* at § 7.2.b).

---

[6] Thus, the Association's decision to enter the Management Agreement with RC Management was subject to the approval of Program Manager Cobalt.

With respect to the last-mentioned exclusive right of the Program Manager, the Affiliation Agreement contemplated that the creation of a separate membership program would concomitantly create "Associate Members," meaning persons "having privileges with the Membership Program through a separate category of membership other than that type of membership associated with ownership of a Residence Interest and mandatory affiliation with the Membership Program." *Id.* at § II ("Definitions").

## STANDARD

"[T]o survive a … motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level…." *Bell Atl. Corp. v. Twombly,* 550 U.S. 554, 555 (2007). "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not suffice. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Moreover, a complaint must be dismissed if it does not "state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. In addition, while the court must accept all well-pled factual allegations in the complaint as true (*see Morse v. Regents of the Univ. of Colo.,* 154 F. 3d 1124, 1126-27 (10th Cir. 1998)), that does not apply to "legal conclusions" and "conclusory statements," which the court "will disregard." *Khalik v. United Air Lines,* 671 F. 3d 1188, 1190 (10th Cir. 2012).

## ARGUMENT

## I. RC MANAGEMENT AND COBALT OWED NO FIDUCIARY DUTY TO PLAINTIFFS, AND THE FIDUCIARY DUTY THAT THE ASSOCIATION OWED TO PLAINTIFFS WAS NOT BREACHED

Plaintiffs allege that RC Management, Cobalt and the Association all owed a fiduciary duty to Plaintiffs and that they breached such duty by (1) affiliating RC Club Aspen with MVC (i.e., by carrying out the MVC Affiliation); and (2) failing to "enforce the restrictive covenants of

… Section 19.8 [of the Declaration of Condominium] … as well as [S]ection 8.25 of the [Master] Declaration…," which Plaintiffs contend prohibited the MVC Affiliation. *See* SAC ¶¶ 70-72. Plaintiffs' allegations are not plausible.

A.    **RC Management and Cobalt Owed No Fiduciary Duty to Plaintiffs**

To state a claim for breach of fiduciary duty, plaintiff must be able to allege that defendant owed it a fiduciary duty. *Winkler v. Rocky Mtn. Conf. of United Methodist Church,* 923 P. 2d 152, 157 (Colo. App. 1995). Whether a fiduciary relationship exists can be decided as a matter of law. *See, e.g., Dime Box Petrol. Corp. v. La. Land & Expl. Co.,* 938 F. 2d 1144, 1147-48 (10th Cir. 1991) (applying Colo. law) (affirming trial court's finding that, as a matter of law, no fiduciary duty arose under parties' operating agreement).

Plaintiffs cite the Management Agreement as the primary source of the fiduciary duty that they contend was owed to them by RC Management and Cobalt. Plaintiffs allege that, under the Management Agreement, the Association delegated broad authority to RC Management to perform management services, which included the authority to engage a Program Manager (i.e., Cobalt) through the Affiliation Agreement. *See* SAC ¶¶ 26, 34. Thus, Plaintiffs allege that RC Management "is the agent of the Association [and Plaintiffs]" and that Cobalt "is the agent or subagent of the Association [and Plaintiffs]." *See id.* at ¶¶ 36, 41. In other words, Plaintiffs allege that RC Management has a direct fiduciary duty under the Management Agreement and that Cobalt also has a fiduciary duty (albeit a more attenuated one) under that same agreement.

Plaintiffs ignore the Management Agreement's plain language, however, which expressly disclaims any fiduciary relationship between the parties. *See* Management Agreement (Greene Decl. Ex. B) § 2 ("[N]othing in this Agreement shall be construed as creating a partnership, joint

venture, or any other relationship between the parties to this Agreement.") (emphasis added).

Language disclaiming such a relationship is fully enforceable under Colorado law. *See Mandelbaum v. Fiserv, Inc.,* 787 F. Supp. 2d 1226, 1241 (D. Colo. 2011) (fiduciary duties can be disclaimed by agreement); *Rocky Mt. Exploration, Inc. v. Davis Graham & Stubbs LLP*, 2016 Colo. App. LEXIS 308, at *51 (Colo. Ct. App. Mar. 10, 2016) (affirming dismissal of claim for aiding and abetting breach of fiduciary duty where parties' agreements "expressly disclaimed the existence of a joint venture or a fiduciary relationship"); *see also Lovell v. State Farm Mut. Auto Ins. Co.,* 466 F. 3d 893, 902 (10th Cir. 2006) (noting Colorado's "strong policy of freedom of contract") (citing *Allstate Ins. Co. v. Avis Rent-A-Car Sys., Inc.,* 947 P. 2d 341, 346 (Colo. 1997)).[7]

Moreover, the Management Agreement expressly recognizes RC Management's "independent contractor" status and gives the Association no "right of control over the method, manner or means by which [RC Management] performs its duties and responsibilities under th[e] Agreement." Management Agreement (Greene Decl. Ex. B) § 30 (emphasis added). The Colorado Supreme Court has explained that the key feature of an agency relationship is the principal's right to control the agent; thus, an agent is "'the very antithesis'" of an independent contractor. *City and Cnty. of Denver v. Fey Concert Co.,* 960 P. 2d 657, 660-61 (Colo. 1998) (citation omitted); *see also Burns v. Mac,* 2015 WL 4051998, at *9 (D. Colo. July 1, 2015) ("'An

---

[7] *Accord Cooper v. Parsky,* 140 F.3d 433, 439 (2d Cir. 1998) (affirming dismissal of breach of fiduciary duty claim because plaintiff "may not sue upon a duty which was expressly excluded from the Agreement"); *Bank of Am., N.A. v. GREC Homes IX, LLC,* 2014 WL 351962, at *12 (S.D. Fla. Jan. 23, 2014) (dismissing breach of fiduciary duty claim; "[a]s a matter of law, no fiduciary relationship will generally be found to exist where a contract clearly and unambiguously disclaims the possibility of a fiduciary relationship"); *Asian Vegetable Research & Dev. Ctr. v. Inst. of Int'l Educ.,* 944 F. Supp. 1169, 1178 (S.D.N.Y. 1996) (dismissing breach of fiduciary duty claim in light of contractual disclaimer of fiduciary relationship).

essential element of agency is the principal's right to control the agent's actions.'") (quoting *Hollingsworth v. Perry,* __ U.S. __, 133 S. Ct. 2652, 2665 (2013)). Based on the Management Agreement's plain language, the Court can find, as a matter of law, that no agency (i.e., fiduciary) relationship exists between RC Management and the Association. *See City and Cnty. of Denver,* 960 P. 2d at 661 (finding no agency as a matter of law based on contract language). Because RC Management had no fiduciary relationship to the Association (or Plaintiffs) under the Management Agreement, neither did Cobalt.

Even if a principal/agent (i.e., fiduciary) relationship existed between RC Management and the Association, it would not extend to Association members, i.e., Plaintiffs. *See, e.g, Willey v. Mayer,* 876 P. 2d 1260, 1266 (Colo. 1994) (third parties harmed by agent's wrongful acts must seek recourse from principal, not agent) (citing Reuschlein & Gregory, *The Law of Agency and Partnership,* § 26, at 69-70 (2d ed. 1990)). Thus, Plaintiffs' breach of fiduciary duty claim fails with respect to both RC Management and Cobalt.

### B.   The Association Breached No Fiduciary Duty to Plaintiffs

The Association did not breach any fiduciary duty to Plaintiffs because: (1) it did not affiliate RC Club Aspen with MVC (which is the action about which Plaintiffs complain), nor could it have done so because such affiliation was not within its power; and (2) no restrictive covenant precluded the MVC Affiliation.

#### 1.   Affiliating with MVC was not within the Association's power

"Generally, a homeowners' association owes a fiduciary duty to homeowners." *McShane v. Stirling Ranch Prop. Owners Ass'n,* __ P. 3d __, 2015 WL 1843807, at *5 (Colo. App., Apr. 23, 2015). Such duty, however, is only owed "'with respect to matters within the scope of [the]

agency.'" *Arst v. Stifel, Nicolaus & Co.,* 86 F. 3d 973, 978 (10th Cir. 1996) (quoting *Hill v. Bache Halsey Stuart Shields, Inc.,* 790 F. 2d 817, 824 (10th Cir. 1986) (applying Colorado law and citing Restatement (Second) of Agency § 13 (1958)); *see also Jarnagin v. Busby, Inc.,* 867 P. 2d 63, 67 (Colo. App. 1993) (establishing breach of fiduciary duty requires showing that "the nature and scope of the duty … extended to the subject matter of the suit").

Plaintiffs allege that the Association breached its fiduciary duty to them by "inclu[ding] … the Club … and the Plaintiffs' … Fractional Units in the [MVC] affiliation/exchange/points program…." SAC ¶ 70. The Association, however, did not make that decision, nor did it have the power to do so. To the contrary, the Affiliation Agreement provides that decisions regarding affiliation are solely within the province of the "Program Manager," i.e., Cobalt. *See* Factual Background, Sect. D, *supra.* Indeed, with respect to the MVC Affiliation, the Affiliation Agreement specifically provides that "[t]he Program Manager may, <u>in its sole discretion</u>, <u>create a separate membership program, develop individual resort properties as residential, transient or other use</u>, or enter into management agreements with resort properties <u>without the approval of the … Association</u>…." *Id.* at § 7.2.b. (emphasis added). Accordingly, Plaintiffs have not plausibly pled a breach of fiduciary duty claim against the Association based on the decision to affiliate RC Club Aspen with MVC.

## 2. <u>No restrictive covenant precluded the MVC Affiliation</u>

Under Colorado law, "[c]ontract interpretation is a question of law for the court to decide." *Copper Mountain, Inc. v. Indus. Sys., Inc.,* 208 P. 3d 692, 696 (Colo. 2009). "When interpreting a contract, '[a] court's primary obligation is to effectuate the intent of the contracting parties according to the plain language and meaning of the contract.'" *New Design Constr. Co.*

*v. Hamon Contrs. Inc.,* 215 P. 3d 1172, 1181 (Colo. App. 2008) (citation omitted).  Moreover, "'[t]he meaning and effect of a contract [are] to be determined from a review of the entire instrument, not merely from isolated clauses or phrases.'"  *Id.* (citation omitted).  Quoting general law holding that homeowners' associations owe a fiduciary duty to their members to enforce restrictive covenants, Plaintiffs assert that the Association owed them a fiduciary duty to enforce what they describe as a "restrictive covenant against timesharing" that they allege prohibited the MVC Affiliation.  *See* SAC ¶ 71.  Applying the above-stated general contract interpretation principles shows that no such restrictive covenant exists.  Additionally, even if Plaintiffs' assertions were correct, the restrictive covenant would also apply to the RC Club Membership Program, about which Plaintiffs have no complaint.  This case was brought because Plaintiffs want the ability to decide what affiliations may exist.  No such right is conferred upon them by applicable law or by any existing agreement.

### a.       The Master Declaration does not prohibit the MVC Affiliation

Plaintiffs cite the Master Declaration as one of the two sources of the restrictive covenant they allege.  *See* SAC ¶ 71.  But the Master Declaration merely provides that "<u>[e]ach Owner acknowledges</u> that Declarant intends to create Fractional Ownership Interests with respect to certain Units" and that, "<u>[o]ther than the right of Declarant … to create Fractional Ownership Interests</u> … no Unit shall be used for the operation of a timesharing, fraction-sharing, or similar program whereby the right to exclusive use of the Unit rotates among participants in the program on a fixed or floating time schedule over a period of years."  *See* Factual Background, Sect. A (quoting Master Decl. (Greene Decl. Ex. A) § 8.25) (emphasis added).  Thus, the Master Declaration states that only Declarant, and not an individual Owner, can create Fractional

Ownership Interests in the Units for use in the operation of a timeshare program. Section 8.25 of the Master Declaration cannot reasonably be read as a restrictive covenant prohibiting the MVC Affiliation.

>   **b.    The Declaration of Condominium does not prohibit the MVC Affiliation**

Plaintiffs cite the Declaration of Condominium as the other source of the restrictive covenant they allege. SAC ¶ 71.[8] The Declaration of Condominium provides:

> Other than the right of Declarant … to create Fractional Ownership Interests in accordance with Article 23 of this Declaration (specifically including, without limitation, the Plan of Fractional Ownership), no Unit shall be used for the operation of a timesharing, fraction-sharing, interval ownership, private residence club, membership program, vacation club, exchange network or system or similar program whereby the right to exclusive use of the Unit is alternated or scheduled among participants in the program on a fixed or floating time schedule over a period of years whether by written, recorded agreement or otherwise.

Decl. of Condo. (SAC, Ex. H) § 19.8. As a threshold matter, the use restriction for Units in Section 19.8 of the Declaration of Condominium is expressly made subject to Declarant's right to create Fractional Ownership Interests, which is given in Article 23 of that same document. *See id.* Article 23 provides that "[t]he right to submit a … Unit to the Plan of Fractional Ownership <u>shall extend … to the Declarant</u> …." Decl. of Condo. § 23.1 (emphasis added). Nevertheless, Plaintiffs appear to contend that Section 19.8's "no Unit shall be used…" language applies, not only to individual Fractional Interest Owners like themselves, but also to Declarant. In other words, Plaintiffs appear to read Section 19.8 as not just prohibiting Fractional Interest Owners from using the Units for the purposes specified, but as a general restriction on the use that can be made of the Units. Because the prohibited purposes include "interval ownership,

---

[8] Even though the Master Declaration is controlling (*see* Factual Background, Sect. B, *supra*), Plaintiffs quote only from the Declaration of Condominium. *See* SAC ¶ 54.

private residence club, membership program, vacation club, exchange network or system,"
Plaintiffs contend that Section 19.8 should be read as prohibiting the MVC Affiliation. Such a
reading is unreasonable. Like virtually every other provision in Declaration of Condominium
Article 19, the purpose of Section 19.8 is to ensure that Fractional Interest Owners understand
the limitations on their rights as purchasers. *See* Decl. of Condo. § 19.8 (beginning "Each Owner
acknowledges….) *see also id.,* Article 19 *passim.*

Even if Section 19.8 of the Declaration of Condominium were read to mean something
different than Section 8.25 of the Master Declaration (i.e., if the two provisions conflicted), then
Section 19.8 would have to be ignored because Section 8.25 is controlling. *See* Factual
Background, Sect. B, *supra.* Article 23 provides that, to the extent any inconsistency exists "with
respect to … the rights, duties, and obligations of Plan Members" between Article 23 and "the
remaining provisions of the Declaration, then the provisions of … Article [23] shall control."
Decl. of Condo. § 23.1 (emphasis added). Thus, under the plain language of the governing
documents and general contract interpretation principles, any possible inconsistency created by
Section 19.8's addition of the words "interval ownership, private residence club, membership
program, vacation club, exchange network or system" should be resolved in favor of the
unambiguous provisions of Article 23, which allows Declarant to create fractional interests.

But reading the governing documents as a whole shows that the provisions do not
conflict. Rather, both provisions prohibit individual Fractional Interest Owners (but not
Declarant) from creating Fractional Ownership Interests in the Units for use in the operation of a
timeshare program. Simply put, the intent of the provisions is to prohibit Fractional Interest
Owners from using the Units to run their own timeshare operations. *Cf. id.* at 1181 (court must

"effectuate the intent of the contracting parties according to the plain language and meaning of the contract").

Notably, Article 23 also "incorporate[s] … by reference" the Affiliation Agreement (*id.* at § 23.2.1.), which is the document that (a) gave Cobalt sole and exclusive discretion to "create a separate membership program, develop individual resort properties as residential, transient or other use, or enter into management agreements with resort properties without the approval of the Developer, Members Association or Club Manager"; and (b) contemplated that the creation of such a separate membership program would concomitantly create "Associate Members," meaning persons "having privileges with the Membership Program through a separate category of membership other than that type of membership associated with ownership of a Residence Interest and mandatory affiliation with the Membership Program."  *See* Factual Background, Sect. D, *supra* (quoting AA § 7.2.b. & § II ("Definitions")).

Another District Court has already found (based on the same affiliation agreement used here and applying Colorado law) that the resort's affiliation with MVC in that case was contractually permitted.  In *Hoyt v. Marriott Vacations Worldwide Corporation*, the court found that:

> The discretion to add Associate Members to the Membership program, coupled with the Affiliation Agreements' pronouncement that '[t]he Program Manager, may, in its sole discretion, create a separate membership program,' … leads the court to <u>conclude as a matter of law that such an affiliation was contemplated and allowed by the governing documents</u>.

2014 WL 509903, at *3, n.6 (D. Minn. Feb. 7, 2014) (emphasis added).

In sum, neither Section 8.25 of the Master Declaration nor Section 19.8 of the Declaration of Condominium can reasonably be read as prohibiting the MVC Affiliation.

16

## II.  BECAUSE PLAINTIFFS FAIL TO ALLEGE ANY BREACH OF FIDUCIARY DUTY, THEIR AIDING AND ABETTING AND CONSPIRACY CLAIMS LIKEWISE FAIL

An indispensable element of a claim for aiding and abetting breach of fiduciary duty is "breach by a fiduciary of a duty owed to a plaintiff." *Nelson v. Elway,* 971 P. 2d 245, 249 (Colo. 1998). For a civil conspiracy claim, plaintiff must be able to allege "an unlawful overt act." *Id.* at 250; *cf. Rocky Mt. Expl., Inc. v. Davis Graham & Stubbs LLP,* 2016 WL 908640, at *9 (Colo. Ct. App. Mar. 10, 2016) (finding that, "because [plaintiff's fraud claim] fails, [its] … civil conspiracy to commit fraud … and … aiding and abetting fraud [claims] fail as well").

Plaintiffs' aiding and abetting and conspiracy claims (Counts Two and Three, respectively) are based on the allegation (made entirely "on information and belief") that "sometime in 2014 …, Defendant MVW, pursuant to an agreement it made with Defendant Association not to enforce Section 19.8 of [the] Declaration of Condominium …, sold a portion of its remaining unsold Ritz-Carlton Club inventory to the [MVC] trust." SAC ¶ 65 (emphasis added). In other words, Plaintiffs allege that the Marriott Defendants prevailed upon the Association not to enforce what Plaintiffs contend is a restrictive covenant prohibiting the MVC Affiliation. But, for the reasons set forth above, neither Section 19.8 of the Declaration of Condominium nor any other provision of the governing documents prohibited the MVC Affiliation. *See* Point I(B)(2), *supra.* Thus, the Association had nothing to "enforce." Plaintiffs' aiding and abetting and conspiracy claims should be dismissed as a matter of law.

## III.  BECAUSE PLAINTIFFS FAIL TO ALLEGE ANY WRONGFUL CONDUCT, THEIR UNJUST ENRICHMENT CLAIM FAILS

The purpose of an unjust enrichment claim is to "prevent[] … injustice." *Van Zanen v. Qwest Wireless, L.L.C.,* 522 F. 3d 1127, 1130 (10th Cir. 2008). But, as the court held in *Hoyt*

(which, as noted, also involved the MVC Affiliation and was decided under Colorado law), "[w]here … plaintiffs have failed to sufficiently allege improper underlying conduct, there is no injustice and no claim for unjust enrichment." *Hoyt,* 2014 WL 5795034, at *2 (citing *Cleary v. Philip Morris Inc.,* 656 F. 3d 511, 517 (7th Cir. 2011), holding that an unjust enrichment claim "will stand or fall with the [claim(s) to which it relates]," and *Noble Sys. Corp. v. Alorica Cent., LLC,* 543 F. 3d 978, 987 (8th Cir. 2008), dismissing unjust enrichment claim because underlying tort claims had been dismissed). Plaintiffs assert that, as a result of the conduct alleged in the SAC -- more specifically, the alleged breach of fiduciary duty -- Defendants were unjustly enriched. *See* SAC ¶¶ 90-93. But they have not plausibly alleged any improper conduct and have stated no claim upon which relief could be granted. *See* Points I & II, *supra.* Thus, having failed to allege the requisite injustice, their unjust enrichment claim should be dismissed.

Dated: July 25, 2016

Respectfully submitted,

GREENBERG TRAURIG, LLP

By:    *s/ Naomi G. Beer*
       Naomi G. Beer
       Philip R. Sellinger
       Ian S. Marx
       1200 Seventeenth Street, Suite 2400
       Denver, Colorado 80202
       Tel:    303.572.6500
       Fax:    303.572.6540
       Email:  BeerN@gtlaw.com
               SellingerP@gtlaw.com
               MarxI@gtlaw.com

       *Attorneys for the Marriott Vacations*
       *Worldwide Corporation, Marriott Ownership*
       *Resorts, Inc., The Ritz-Carlton Management*
       *Company, LLC, The Cobalt Travel Company, LLC,*
       *and The Lion & Crown Travel Co., LLC*

18

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 25th day of July, 2016, a true and accurate copy of the foregoing **MARRIOTT DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT** was filed and served with the Clerk of the Court via CM/ECF filing system which will send notification to the following:

Michael J. Reiser
Lilia Bulgucheva
Law Office of Michael J. Reiser
961 Ygnacio Valley Road
Walnut Creek, CA 94596
*Counsel for Plaintiffs*

Matthew C. Ferguson
The Matthew C. Ferguson Law Firm, P.C.
119 South Spring, Suite 201
Aspen, Colorado 81611
*Counsel for Plaintiffs*

Tyler R. Meade
The Meade Firm P.C.
1816 Fifth Street
Berkeley, CA 94710
*Counsel for Plaintiffs*

Linda Pham Lam
Michael Schrag
Gibbs Law Group LLP
505 14th Street, Suite 1100
Oakland, CA 94612
*Counsel for Plaintiffs*

Daniel F. Shea
Jessica Black Livingston
Hogan Lovells US LLP
1200 Seventeenth Street, Suite 1500
Denver, Colorado 80202
*Counsel for Aspen Highlands
  Condominium Association*

<u>s/ Julie Eaton</u>
Julie Eaton

*(Original on file at offices of Greenberg Traurig,
LLP, pursuant to C.R.C.P. 121, § 1-26*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 16-01301 PAB

RCHFU, LLC, a Colorado limited liability company, JEFFREY A. BAYER and GAIL L.
BAYER, ROBERT BUZZETTI, JULIE C. CANNER, LEE JAMES CHIMERAKIS and
THERESA ANN CHIMERAKIS, KEVIN CLARE and NANCY LYNNE SHUTE, TOBY L.
CONE TRUST and TOBY L. CONE, its Trustee, RICHARD J. DAVIS and SHIRLEY J.
DAVIS, CARL EICHSTAEDT III, JAMES RICHARD FARQUHAR and JENNIFER
LUCILLE FARQUHAR, KOPPLEMAN FAMILY TRUST and LARRY KOPPLEMAN, its
Trustee, DAVID LANCASHIRE and STEPHEN ANDREWS, BONNIE LIKOVER, CRAIG
LIPTON, JEREMY LOWELL, D.D.S. and LORI LOWELL, EDWARD P. MEYERSON and
ANDREA C. MEYERSON, JERRY M. NOWELL TRUST and JERRY M. NOWELL, its
Trustee, and DEE ANN DAVIS NOWELL TRUST and DEE ANN DAVIS NOWELL, its
Trustee, THOMAS M. PROSE REVOCABLE LIVING TRUST and THOMAS M. PROSE,
M.D., its Trustee, CASEY M. ROGERS and COURTNEY S. ROGERS, ROBERT A. SKLAR
TRUST and ROBERT A. SKLAR, its Trustee, C. RICHARD STASNEY, M.D. and SUSAN P.
STASNEY, TSE HOLDINGS, LLC, a Colorado limited liability company, STEPHEN
WEINSTEIN and BRENDA WEINSTEIN, and JACK ZEMER, on behalf of themselves and all
Others similarly situated,

      Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, a Delaware corporation,
MARRIOTT OWNERSHIP RESORTS, INC., d/b/a MARRIOTT VACATION CLUB
INTERNATIONAL, a Delaware corporation,
ASPEN HIGHLANDS CONDOMINIUM ASSOCIATION, a Colorado non-profit corporation,
THE RITZ-CARLTON MANAGEMENT COMPANY, LLC, a Delaware limited liability
company,
COBALT TRAVEL COMPANY, LLC, INC., a Delaware limited liability company, and
THE LION & CROWN TRAVEL CO., LLC, a Delaware limited liability company,

      Defendants.

---

## ORDER GRANTING MARRIOTT DEFENDANTS'
## MOTION TO DISMISS SECOND AMENDED COMPLAINT

This Court, having considered Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC, The Cobalt Travel Company, LLC, and The Lion & Crown Travel Co., LLC's (collectively, "Marriott Defendants") Motion to Dismiss the Second Amended Complaint ("Motion"), and being duly advised in the premises thereof, hereby finds that the Motion is meritorious and should therefore be GRANTED.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Marriott Defendants' Motion to Dismiss the Second Amended Complaint is GRANTED, and the Second Amended Complaint is dismissed in its entirety with prejudice and without leave to amend.

[To the extent any portion of the Second Amended Complaint remains or leave to amend is permitted on any claim, then

The Court, having considered all papers filed in support of and in opposition to the Motion, rules as follows with respect to the Motion:

First Claim for Relief – the Motion is granted with/without leave to amend OR the Motion is denied;

Second Claim for Relief – the Motion is granted with/without leave to amend OR the Motion is denied;

Third Claim for Relief – the Motion is granted with/without leave to amend OR the Motion is denied; and

Fourth Claim for Relief – the Motion is granted with/without leave to amend OR the Motion is denied.]

Dated this ___ day of _____, 2016        By:_____
                                                  Honorable Philip A. Brimmer, U.S.D.J.

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 1:16-cv-01301-PAB-GPG

**RCHFU, LLC et al.**

Plaintiffs,

v.

**MARRIOTT VACATIONS WORLDWIDE CORPORATION et al.**

Defendants.
_____

**PLAINTIFFS' OPPOSITION TO MARRIOTT DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**
_____

## I.      INTRODUCTION

When a property manager has "sole discretion" to make decisions about owners' property, it owes the owners fiduciary duties, including a of duty loyalty, to exercise this discretion in the owners' best interests. This fiduciary duty is based on control of the owners' property, and exists whether or not the property manager is an agent. Yet, in this case, the property manager used its complete control to benefit its own parent company at the expense of the owners it was bound to serve. This was a manifest breach of fiduciary duty.

Plaintiffs are the owners of one-twelfth fractional interests in luxury condominium units at the Ritz-Carlton Club Aspen Highlands ("Ritz-Aspen"). The Ritz-Aspen was developed by Marriott Vacation Club International ("MVCI"), which also owns a less exclusive timeshare line called the Marriott Vacation Club ("MVC"). When Plaintiffs purchased, they agreed to give almost complete control over their fractional interests to the Aspen Highlands Condominium

1

Association (the "Association"). The Association then retained Defendant Ritz-Carlton Management Company ("RC Management") to be the "managing agent" of the Ritz-Aspen. The Association and RC Management, in turn, delegated near complete managerial control over Plaintiffs' fractional interests to Defendant Cobalt Travel Company ("Cobalt").

On average, Plaintiffs paid over $200,000 for each unit and they pay between $12,000 and $16,000 in annual fees, including fees to both RC Management and Cobalt. As owners, they are entitled to use their units at the Ritz-Aspen for four weeks per year. While they could have paid far less for four weeks of condominium use by participating in a timeshare such as MVC, they chose the Ritz-Aspen based on the Ritz-Carlton brand and its promised exclusivity, meaning that the Ritz-Aspen would operate only for the benefit of those who purchased fractional units in Aspen or at the eight other Ritz-Carlton Club locations. This was true for a while.

But by 2013, MVCI and its parent company Marriott Vacations Worldwide ("MVW") had decided to abandon the upscale Ritz-Carlton luxury club product, and favor their points-based and much cheaper MVC. To this end, in 2014, Cobalt, at the urging of MVW and MVCI and the other defendants, affiliated the Ritz-Aspen with the MVC, meaning that over 400,000 MVC members could use their points to access the Ritz-Aspen for a small fraction of what Plaintiffs paid for the same access. The natural result of this affiliation was the decimation of the values of Plaintiffs' fractional interests due to the dilution of the Ritz-Carlton brand and loss of its exclusivity.

Based on the objections to affiliation that the boards of various clubs voiced, Defendants were well aware that affiliation would have a severe adverse effect on the value of Plaintiffs' fractional units. In addition, the Association's legal counsel informed the Association, and the

2

Association informed the other Defendants, that the governing documents, including the condominium Declaration creating the fractional units, prohibited the proposed affiliation. In response, the Association and other Defendants agreed not to effectuate the proposed affiliation without obtaining the approval of the members via a vote. But Defendants breached this agreement in 2014 when Cobalt, aided and abetted by the other defendants, imposed the affiliation on the Ritz-Aspen without holding the promised vote. Predictably, those fractional interests now sell for as low as $10,000, while at comparable luxury clubs that maintained their promised exclusivity, fractional interests have maintained their values.

In implementing this affiliation, Cobalt, along with the other Defendants, acted contrary to Plaintiffs' interests in order to benefit MVCI, MVW, and their related entities – a glaring breach of fiduciary duty that cost Plaintiffs, collectively, tens of millions of dollars. Plaintiffs' Second Amended Complaint (ECF No. 40, "SAC") adequately alleges that Defendants' actions breached or aided and abetted the breach of fiduciary duties in affiliating with MVC and destroying the values of the fractional interests as well as the viability of the overall project.

The SAC sets forth dual sources for the fiduciary duty—based on both the high level of control Defendants had over the condominium units themselves, as well as agency principles—and then describes how Defendants breached those duties and caused Plaintiffs damages. Because a complaint need do no more than that, Defendants' motion to dismiss should be denied. Defendants completely ignore the allegations of control over Plaintiffs fractional interests, which are sufficient to sustain the SAC. Moreover, Defendants' agency-based arguments ring hollow given that their own documents concede the agency relationship. Most importantly, Defendants jump the gun in contesting the existence of fiduciary relationships: "The existence of the

3

fiduciary relationship is a question of fact for the jury." *Moses v. Diocese of Colorado*, 863 P.2d 310, 322 (Colo. 1993). Thus, the Motion to Dismiss (ECF No. 47, "Motion") should be denied.

## II.    STATEMENT OF THE CASE

The Ritz-Aspen is a luxury fractional ownership property located in Aspen. SAC at ¶ 4. It was established in 2001 as the first property under the Ritz-Carlton Destination Club ("Ritz-Carlton Club") brand, designed to be an upscale alternative to Defendant MVCI's other timeshare product line – the MVC. *Id.* at ¶ 4. MVCI had been running timeshare operations since the 1980s, but introduced the Ritz-Carlton Club brand in 1999 to sell fractional ownership interests that were more exclusive and deluxe in nature – distinct from the MVC. *Id.* at ¶¶ 2-3. As such, Ritz-Carlton Club interests were much more expensive than MVC interests. *Id.* at ¶ 3.

A fractional owner at the Ritz-Aspen is entitled to four weeks of stay there per year. *Id.* at ¶ 3. Owners are also part of the Ritz-Carlton Club Membership Program ("Membership Program"), through which they can reserve stays at the Ritz-Aspen and sister Ritz-Carlton Club resorts. *Id.* at ¶¶ 3-4. Between 2001 and 2012, hundreds of purchasers paid premium prices ranging from $150,000 to $400,000 for their deeded 1/12 fractional interests at the Ritz-Aspen. *Id.* at ¶ 6. These interests were sold based on Defendants' claims that they were superior to other timeshare offerings, such as the MVC, and that the Ritz-Aspen would operate for the exclusive use and enjoyment of Ritz-Carlton Club members as well as their families and guests. *Id.* at ¶ 6.

The Association was granted almost complete control over Plaintiffs' individual fractional interests. *Id.* at ¶ 23 & Ex. H at ¶ 23.8[1]. In 2001, the Association entered into a "Management Agreement" with RC Management whereby RC Management became the

---

[1] All exhibit citations are to exhibits to the Second Amended Complaint, ECF No. 40.

"managing agent" and would "act on behalf of the Association and its members as the exclusive managing entity and … manage the daily affairs of the Condominium and the [Fractional Ownership Interest] Plan." *Id.* at ¶ 25 &, Ex. A at ¶ 2 & Ex. H at ¶ 2.41. RC Management had all the power and authority necessary to carry out its duties in maintaining and managing Plaintiffs' fractional interests, including "to the exclusion of all other persons including the (Association) and its members . . . the powers and duties of the Executive Board." *Id.* at ¶ 26, Ex. A at ¶ 4. The agreement gave RC Management the power to hire a "program manager" to manage and administer the reservation procedures and exchange program for the Membership Program. *Id.* at ¶ 34. RC Management exercised that authority by hiring Defendant Cobalt, via an Affiliation Agreement that was also signed by the Association, to operate the reservation system that Ritz-Aspen owners had to use to obtain use of their allotted number of days. *Id.* at ¶ 40.

In 2012, MVW disclosed its intent to scale back its luxury products line – namely, the Ritz-Carlton Club. *Id.* at ¶ 8. In a July 17, 2012 letter, the general manager of Cobalt first informed owners of the possibility that the Ritz-Carlton Club would be affiliated with the MVC. *Id.* at ¶ 47. The letter described the affiliation as a means for Ritz-Aspen owners to use their allocated time to stay at MVC resorts, but failed to mention that the affiliation would also allow the 400,000 MVC members to access the Ritz-Carlton Club. *Id.* at ¶¶ 47-48.

In the following months, member-controlled boards of various Ritz-Carlton Club properties expressed serious concern about the proposed affiliation, including that such an affiliation would dilute the Ritz-Carlton brand, for which Plaintiffs and other owners paid premium prices. *Id.* at ¶¶ 49, 52. The Association wrote to Plaintiffs that "The Board has concerns that . . . the nature of our club will change by opening the club to MVW

timeshare/points members who have a much lower cost of entry." *Id.* at ¶ 52. In October 2012, the Association informed MVW that its counsel had determined that "the underlying Association documents … prohibit what MVW is planning." *Id.* at ¶ 57.

In April 2013, the Association wrote to Ritz-Aspen owners that unless a majority of the owners voted in favor of doing so, the Ritz-Aspen would not be included in the MVC affiliation. *Id.* at ¶ 60, Ex. L. No such vote ever took place. *Id.* at ¶ 61. Even so, in April 2014, Cobalt, acting in concert with the other Defendants decided to include the Ritz-Aspen in the MVC affiliation. *Id.* at ¶ 62. The Association disingenuously claimed that the affiliation occurred "[i]n response to the Members' wishes." *Id.* at ¶ 63, Ex. M.

Due to Defendants' actions, approximately 400,000 MVC members – who paid a small fraction of the purchase prices Plaintiffs paid, and who pay much less in annual fees – have access to the supposedly exclusive offering for which Plaintiffs paid premium prices. *Id.* at ¶ 67. While Defendants have derived huge profits and cost savings from this affiliation, the value of Plaintiffs' fractional interests has been destroyed. *Id.* at ¶ 67. Even more, Plaintiffs have had to pay, in the form of inflated annual maintenance fees, for the increased use and wear-and-tear resulting from the opening of the Ritz-Aspen to MVC members. *Id.* at ¶ 67.

## III.   ARGUMENT

### A.   The SAC States Claims for Breach of Fiduciary Duty Based On Control Over Plaintiffs' Fractional Interests and Agency Principles

The SAC alleges two independent sources of fiduciary duties owed by Defendants: (1) Defendants' high degree of control over Plaintiffs' property; and alternatively (2) agency (and sub-agency) relationships between Plaintiffs and Defendants. Yet, in their motion to dismiss,

Defendants only challenge the fiduciary duties arising from agency principles and fail to even mention the fiduciary duties that stem from Defendants' control over Plaintiffs' property. This alone is reason to deny Defendants' motion. Moreover, although Defendants' arguments against the existence of agency relationships fails for several reasons, Defendants' fatal flaw is ignoring that whether agency relationships and, more broadly, fiduciary duties exist are questions of fact that cannot be decided on a motion to dismiss. *See Moses,* 863 P.2d at 322*; Wildearth Guardians v. Public Service Co. of Colorado*, 2010 WL 1568574, *3 (D. Colo. Apr. 15, 2010).[2]

### 1. The SAC Alleges Fiduciary Duties Arising from Control Over Property

Under Colorado law, a fiduciary relationship may exist even in the absence of an agency or other special relationship. A fiduciary relationship exists whenever one person is entrusted to act for the benefit of or in the interests of another and has the legal authority to do so. Colo. Jury Instr., Civil 26:2; *Tepley v Public Employees Retirement Ass'n*, 955 P.2d 573, 577. A fiduciary relationship also arises where one party "has a high degree of control over the property or subject matter of another." *Tara Woods Ltd. P'ship v. Fannie May*, 731 F.Supp.2d 1103, 1116 (D. Colo. 2010); *see also Oaster v. Robertson*, 2016 WL 1247803, *18 (D. Colo. Mar. 28, 2016) (same); *Vikell Investors Pacific, Inc. v. Hampden, Ltd*., 946 P.2d 589, 596-97 (Colo. App. 1992) (same); *Paine, Webber, Jackson & Curtis, Inc. v. Adams*, 816 P.2d 508, 517-18 (Colo. 1986) (whether stockbroker owes client a fiduciary duty depends on the degree of control); *Vai v. Bank of Am.*

---

[2] *Dime Box Petroleum Corp. v. Louisiana Land & Expl. Co.*, 938 F.2d 1144, 1147–48 (10th Cir. 1991), relied upon by Defendants, is not to the contrary. In that case, the Court merely held that the parties had agreed in a non-adhesive contract to a heightened standard of liability. No such agreement exists here. Far from holding that the existence of a fiduciary duty is a question of law that can be resolved at the motion to dismiss stage, the Court noted that the existence of a joint venture – the basis for the fiduciary duty alleged in that case – is a question of fact, which was proven at trial. *Id.* at 1147.

*Nat'l Trust & Sav. Ass'n*, 56 Cal.2d 329, 338 (1961) ("[t]he key factor in the existence of a fiduciary relationship lies in control by a person over the property of another").

Here, the SAC alleges that (a) Plaintiffs granted the Association control over not only the common areas, but also over Plaintiffs' individual fractional interests, (b) the Association delegated this sweeping grant of control to RC Management, and then (c) the Association and RC Management further delegated this control to Cobalt. As a result of this control over Plaintiffs' separately deeded property interests, *all three of these defendants* owe Plaintiffs the fiduciary duties alleged in the SAC. *See Colorado Homes, Ltd., v. Loerch-Wilson*, 43 P.3d 718, 722-23 (Colo. App. 2011) (reinstating breach of fiduciary duty claims by individual unit owners against both the homeowners' association and the property management firm).

Paragraphs 25 to 37 of the SAC lay out how RC Management has the *exclusive authority* to manage Plaintiffs' property, including, among many other things, the permission to receive and deposit all funds collected from the owners and to maintain and replace personal property within Plaintiffs' fractional interests. The Management Agreement further delineates RC Management's almost complete control over Plaintiffs' individual fractional interests. Paragraphs 39, 40, and 42 describe the nature of Cobalt's control. Cobalt was hired by means of an agreement signed not only by RC Management, but also by the Association. SAC at ¶ 38.

Because Cobalt is the exclusive manager of the Membership Program, *it controlled Plaintiffs' access to their own units*. SAC at ¶ 34. Moreover, because Cobalt has the *sole discretion* to affiliate the Membership Program with other locations or member clubs, Cobalt exerts a high degree of control over Plaintiffs' property at the Ritz-Aspen, which was valued for its exclusivity and the fact that it provided owners with access to other Ritz-Carlton Club luxury

8

properties. SAC at ¶¶ 3, 4, 39, 40. Indeed, the Affiliation Agreement solidifies Cobalt's almost complete control over the decision to affiliate Plaintiffs' property with other member clubs by stating that "[n]either the Developer, Members Association, nor Club Manager shall be entitled to participate in or consent to the Program Manager's decision in this regard." SAC at ¶ 40.

Defendants concede, as they must, that the Association owes Plaintiffs fiduciary duties. Motion at 11 (citing *McShane v. Stirling Ranch Prop. Owners Ass'n.,* __ P.3d __, 2015 WL 1843807, *5 (Colo. App. Apr. 23, 2015)). But they fail to acknowledge the full scope of those duties. Typically, a homeowners' association has authority only over the common areas, and so the fiduciary duties are limited to its management of those areas. Here, however, the Association also assumed near complete control over Plaintiffs' separately deeded property interests, *i.e.*, the fractional interests that are the subject of this litigation. Ex. H at ¶ 23.8. Thus, both the Association and the recipients of authority delegated by the Association – RC Management and Cobalt – owe fiduciary duties relating to their management of Plaintiffs' fractional interests.

The New York appellate court's decision in *Caprer v. Nussbaum*, 36 A.D.3d 55 (2006), provides well-reasoned guidance here because it addressed the issue of when a managing agent of a condominium owes fiduciary duties to unit owners. In *Caprer*, condominium unit owners sued the managing agent (among other defendants) for breach of fiduciary duty by committing various acts of financial mismanagement. *Id.* at 180-81, 191. In ruling on the managing agent's summary judgment motion, the *Caprer* court noted that the manager had control in operating and maintaining *only* the common elements of the condominium and not any aspect of any individual unit. *Id.* at 192. The court specifically noted that the manager did not have authority "to hold any personal funds of the unit owners or otherwise act on their behalf, and the plaintiffs [did] not

allege any other basis for a fiduciary relationship." *Id*. at 192. Under those distinct facts, the court found that the manager owed a fiduciary duty only to the condominium.

Here, in contrast, Plaintiffs allege that the control of the Association, RC Management and Cobalt extends beyond common areas and into their separately deeded property interests. In direct contrast to the facts in *Caprer*, the SAC alleges that RC Management had authority to receive and hold all personal funds collected from the owners. SAC at ¶ 31; Ex. A at ¶ 4(J). The SAC further alleges that RC Management has the authority to engage a Program Manager to manage the reservation procedures and exchange program, which has a financial impact on owners' individual fractional interests. SAC at ¶ 34. Thus, under the reasoning of *Caprer*, each of these defendants owes fiduciary duties to owners (Plaintiffs) based on its control over the units themselves. In sum, because the SAC alleges that the Association, RC Management, and Cobalt have control over Plaintiffs' individual fractional interests at the Ritz-Aspen, they owe Plaintiffs a fiduciary duty to exercise that control in Plaintiffs' best interests and to refrain from self-dealing. SAC at ¶¶ 25-44.

### 2. The SAC Independently Alleges Fiduciary Duties Arising from Agency

It is settled that an agent owes fiduciary duties to its principal. *City & County of Denver v. Fey Concert Co*., 960 P.2d 657, 669 (Colo. 1998); *McKinney v. Christmas*, 143 Colo. 361, 363 (Colo. 1960); Rest.2d Agency § 387 (1957). The existence of an agency relationship, therefore, by itself establishes fiduciary duties owed by the agent. The existence of agency is memorialized in the Declaration, which specifies that a "Managing Agent" would be appointed Ex. H at ¶ 23.6. ("It is contemplated that the (Board of Directors) will delegate the responsibility for

administration and management of the Plan of Fractional Ownership ... to a Managing Agent pursuant to a Management Agreement"); and Ex. H at ¶ 2.41.

Whether or not an agency relationship exists is a question of fact. *Stortroen v. Beneficial Finance Co. of Colorado*, 736 P.2d 391, 395 (Colo. 1987). As a general matter, an agency relationship arises from the manifestation of consent by one party (the principal) to another (the agent) that the other shall act on its behalf and subject to its control. *Id*. (citing Rest.2d Agency § 1(1) (1957)). An agency relationship may exist even though the parties did not intend to create one. *Id*. Indeed, "the existence of an agency relationship can be proven by the conduct of the parties." *Moses*, 863 P.2d at 324. "No one factor, including control, is determinative. The most important factor in determining whether a person is an agent is "the *right* to control, not the fact of control." *Id.* (citations omitted) (emphasis added). The Declaration gives Plaintiffs that right of control by allowing them to amend or terminate any provision affecting the fractional ownership plan, which necessarily includes the termination of Cobalt. Ex. H at ¶ 22.3.

The SAC explains, in detail, the source of each agency relationship between Plaintiffs and Defendants. At the outset, Paragraph 25 alleges that RC Management, via the Management Agreement, entered into an agency relationship with members of the Association (which includes Plaintiffs) to manage the Condominium and the fractional ownership interest plan. Paragraph 25 points to the specific clause in the Management Agreement that delegates this authority. SAC  at ¶ 25. The "Appointment and Acceptance of Agency" paragraph states:

> The Association hereby employs the Management Company to act *on behalf of the Association and its members* as the exclusive managing entity of the Condominium and to manage the daily affairs of the Condominium and the Plan, and the Management Company hereby agrees to so act.

Management Agreement at ¶ 2, Ex. A (emphasis added).

This plain delegation of authority is the *sine qua non* to establishing an agency relationship, not to mention Defendants' own choice of the agency label. Further, in an analogous setting, hotel management contracts create an agency relationship between a hotel's owner and its manager. *See, e.g., Woolley v. Embassy Suites, Inc*., 227 Cal.App.3d 1520, 1531 (1991). Where a hotel owner divests itself of day-to-day control of a hotel's operations to a manager, while retaining ownership, the manager becomes an agent of the hotel owner. *FHR TB, LLC v. TB Isle Resort, LP*., 865 F.Supp.2d 1172, 1195 (S.D. Fla. 2011).

Citing to the Management Agreement, Paragraphs 25-35 of the SAC delineate how Plaintiffs have divested themselves of the management responsibilities of their property interests, while still retaining ownership. These paragraphs show that RC Management can hire employees to manage the Condominium, maintain the Association's books and accounting, prepare annual budgets, replace personal property within Plaintiffs' fractional interests, and amend the rules pertaining to the fractional interests. SAC ¶¶ 26-32. The Management Agreement confirms that Plaintiffs are the principals of RC Management by stating that RC Management may only be terminated by a vote of the Plaintiffs-owners. Ex. A at ¶ 4. It follows that RC Management owed fiduciary duties to Plaintiffs within the scope of its agency. *See McKinney v. Christmas*, 143 Colo. at 363.

Because the SAC adequately alleges that RC Management is an agent of Plaintiffs, it also adequately alleges that Cobalt is a subagent of Plaintiffs. "A subagent is 'a person appointed by an agent empowered to do so, to perform functions undertaken by the agent for the principal, but for whose conduct the agent agrees with the principal to be primarily responsible.'" *City & County of Denver,* 960 P.2d at 670. Like an agent, a subagent has fiduciary duties to the principal

12

and "is subject to all the liabilities of an agent to the principal." *Moses*, 863 P.2d at 325 n.18 (citing Rest.2d Agency § 5 cmt. d). Here, Paragraph 34 alleges that RC Management had the authority to engage a "Program Manager" through an affiliation agreement to "manage and administer the reservation procedures and exchange program for the Ritz-Carlton Club Membership Program (the 'Membership Program')…" SAC at ¶ 34. RC Management exercised that authority by hiring Cobalt to manage and administer the Membership Program. Cobalt therefore owes fiduciary duties as a subagent. SAC at ¶ 41.

### 3. Defendants' Contractual Disclaimer Arguments Fail

Defendants attempt to argue that no fiduciary relationships exist as a matter of law by pointing to vague disclaimer language in the Management Agreement that does not even mention fiduciaries or fiduciary duties. Their argument fails for several reasons. First, *Plaintiffs* never signed a contract stating that RC Management was not their fiduciary; a statement to that effect signed by a Defendant-controlled entity – assuming for purposes of argument that the cited provision so qualifies – does not bind *Plaintiffs*.

Second, under *Bayview Loan Servicing, LLC v. Boland*, 2009 WL 3234270, at *5 (D. Colo. Sept. 30, 2009), an attempt to disclaim an agency relationship is not dispositive at the pleading stage. *Id.* (denying motion to dismiss because agency is a question of fact).

Third, even if agency or fiduciary relationships could be disclaimed as a matter of law, the language on which Defendants rely falls far short of doing so. The Management Agreement merely states that nothing therein "shall be construed as creating a partnership, joint venture, or any other relationship between the parties to this Agreement." Motion at 9-10. It does not mention fiduciary relationships. *See* Ex. A. That there is no partnership or joint venture does not

13

preclude other agency relationships, let alone a fiduciary relationship based on control of Plaintiffs' property.[3]

Defendants' argument that RC Management cannot be an agent because the Management Agreement recognizes it as an independent contractor is also unavailing. An independent contractor can also be an agent. *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1251 (10th Cir. 2013); *Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356, 1360 (10th Cir. 1987)). Whether an independent contractor is also an agent "depends on the circumstances of the undertaking." *City and County of Denver*, 960 P.2d at 669 (citing Rest.2d Agency § 2).[4]

### 4. The SAC Adequately Alleges Breach And Damages

The SAC alleges, in detail, how Defendants breached or aided and abetted the breach of fiduciary duties by affiliating the Ritz-Aspen with the Marriott Vacation Club. SAC at ¶¶ 64, 67. A party may breach the fiduciary duty it owes to another by engaging in self-dealing, violating the duty of loyalty, and acting against the interests of the one he owes a fiduciary duty to. *See Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 492 (Colo. 1989) (quoting Rest.2d Agency, § 387)). The SAC sufficiently alleges that Defendants breached their fiduciary duty to Plaintiffs in two ways: (1) violating the duty of loyalty by virtue of the affiliation, and (2) failing to enforce the restrictive covenant against such affiliation. SAC at ¶¶ 62, 65-66.

---

[3] Defendants' reliance on *Rocky Mountain Expl., Inc. v. Davis Graham & Stubbs LLP*, 2016 WL 908640, at *7 (Colo. App. Mar. 10, 2016), is misplaced because there the agreement expressly disavowed a fiduciary relationship; whereas there was no such express disavowal here.

[4] Defendants citation to *Willey v. Mayer*, 876 P.2d 1260, 1266 (Colo. 1994), is puzzling, because an entirely different issue was at play there. *Willey* concerned whether a principal could be held liable to a third party for his agent's abuse of authority. *Id*. No such issue exists here.

14

First, Defendants breached their duty of loyalty by favoring their own interests to the detriment of Plaintiffs' interests. Paragraph 43 states that Cobalt entered into an agreement with Lion & Crown, which allowed members of the MVC to use the fractional interests at the Ritz-Aspen. SAC at ¶ 43. Implementing this affiliation allowed over 400,000 MVC members to use their "points" to obtain access to the units and amenities at the Ritz-Aspen, for a fraction of what Plaintiffs paid, causing the value of Plaintiffs' fractional interests to decline by as much as 80% and annual fees to increase. *Id.* at ¶¶ 10, 67. All the while, the affiliation has allowed Defendants to achieve huge profits by advertising that purchasers of MVC timeshares will have access to the Ritz Carlton clubs. *Id.* at ¶¶ 67, 92; *see also* ¶¶ 8, 56. In short, the affiliation was an act of self-dealing that benefitted Defendants only. *Id.* at ¶¶ 67, 92.

Separately, as more fully stated below, the Association breached its fiduciary duty to Plaintiffs by failing to enforce a restrictive covenant against further timesharing. Under *Colorado Homes*, 43 P.3d at 721-22, a homeowners association has a fiduciary duty to enforce restrictive covenants. The SAC alleges that the Association was informed by its lawyers that the proposed affiliation could not take place absent an amendment of the Declaration. SAC at ¶¶ 54, 71; Ex. H. Yet, against the advice of its own lawyers, the Association proceeded with the other Defendants to carry out the affiliation. *Id.* at ¶ 71. RC Management also had the duty to enforce this covenant because, under the Management Agreement, it has all the powers and duties that the Association has. Ex. A at ¶ 4 ("The Management Company . . . shall have all the powers and duties of the Executive Board as set forth in the Declaration and the bylaws . . .").

The SAC also sufficiently alleges how each Defendant aided and abetted in the breach, causing Plaintiffs' damages. "The elements of the tort of aiding and abetting a breach of

fiduciary duty include: (1) breach of a fiduciary duty owed to a plaintiff, (2) a defendant's knowing participation in the breach, and (3) damages. (citation omitted). Also, Restatement (Second) of Torts § 876(b) (1977), upon which the tort is premised, includes as an additional element that a defendant must give substantial assistance to the other's breach." *Nelson v. Elway*, 971 P.2d 245, 249-250 (Colo. App. 1998).

The SAC adequately alleges that the other Defendants aided and abetted Cobalt despite being specifically prohibited from even consulting with Cobalt on decisions related to affiliations. SAC at ¶ 40. Paragraph 44 describes how MVW participated in that breach. It explains that MVW directly controls Cobalt and RC Management because those companies are shell companies of MVW, and serviced by MVW employees. MVW actively encouraged the affiliation by communicating with Plaintiffs to falsely inform them that nothing would change as a result of an affiliation with MVC and otherwise encourage affiliation, *id.* at ¶ 55-62, even though it had been advised by counsel that such an action would require an amendment to the underlying Association documents. *Id.* at ¶¶ 57, 64.

Paragraph 62 alleges that RC Management aided and abetted the breach of fiduciary duty by agreeing to the inclusion of the Ritz-Aspen in the MVC affiliation. The Association aided and abetted the breach in the same manner, even though both it and MVW had promised and were contractually bound not to participate in the affiliation decision. *Id.* at ¶ 62. The SAC further explains that the Association was in active discussions with MVW in 2012 and 2013 regarding the proposed affiliation, and that the Association represented to Plaintiffs that the affiliation would not take place unless Ritz-Aspen owners voted in favor of it. *Id.* at ¶ 60. There was never such a vote, yet it was the Association that announced to Plaintiffs in April 2014 that the

affiliation took place anyway. *Id.* at ¶¶ 63-64. These acts exhibit the Association's participation in the breach of fiduciary duty to Plaintiffs.

Defendants appear to contend that the Association could not have breached or aided and abetted in the breach because a contractual clause purportedly limited its ability to do so. Motion at 12. Defendants argument fails because it ignores the fact that the SAC alleges that the Association aided and abetted in the affiliation, regardless of any limiting contractual clause. SAC at ¶ 62. The possibility that the Association may have also violated a contract provision in doing so is a question that is independent from whether, based on the facts, the Association actually aided and abetted in the affiliation. The issue of whether "actions constitute a breach of (the) duty of loyalty involves a question of fact . . . based upon all the circumstances of the case." *Jet Courier Service, Inc. v. Mulei*, 771 P.2d 486, 494 (Colo. 1989).

**B.  The SAC Alleges That Restrictive Covenants Prohibited the Affiliation**

The SAC alleges a claim based on what the Association's own attorney concluded, *i.e.*, that two restrictive covenants, § 8.25 of the Master Declaration and § 19.8 of the Declaration of Condominium, prohibited the affiliation. SAC at ¶¶ 54, 57, 62, 70, 71, 81. Section 19.8 states that "no Unit shall be used for the operation of a timesharing, fraction-sharing ... membership program, vacation club ... or similar program whereby the right to exclusive use of the Unit is alternated or scheduled among participants in the program...." *Id.* at ¶ 54. Section 8.25 states that "no Unit shall be used for the operation of a timesharing, fraction-sharing, or similar program whereby the right to exclusive use of the Unit rotates among participants in the program...."

Defendants seek an adjudication of this claim based on their reading of these very general provisions. But the proper interpretation of them should not be resolved at the pleading stage.

*Chimney Rock Pub. Power Dist. v. Tri-State Generation & Transmission Ass'n, Inc.*, 2012 WL 84572, at *7 (D. Colo. Jan. 11, 2012) (declining to grant a motion to dismiss "based on an alleged breach of such a general and ambiguous contractual provision").

### C.  The SAC Adequately Alleges a Claim for Unjust Enrichment

The SAC properly pleads every element of an unjust enrichment claim under Colorado law, *i.e.*, "(1) that a benefit was conferred on the defendant by the plaintiff; (2) that the benefit was appreciated by the defendant; and (3) that the benefit was accepted by the defendant under such circumstances that it would be inequitable for it to be retained without payment of its value." *DCB Const. Co., Inc. v. Central City Dev. Co.*, 965 P.2d 115, 124 (Colo. 1998) (citation omitted). SAC at ¶¶ 90-93. Defendants do not argue otherwise. Rather, they seek a summary adjudication of this claim based on their contention that they did not do anything wrong. Motion at 17-18. But as discussed throughout this opposition, the SAC properly alleges a breach of fiduciary duties that unjustly enriched Marriott entities.

### IV.     CONCLUSION

For all the foregoing reasons, Defendants' motion to dismiss should be denied in its entirety, and that leave to amend be granted if there is any deficiency in the allegations.

Dated: August 15, 2016                    Respectfully submitted,

                                          */s/ Michael Schrag*
                                          Michael Schrag (admitted *pro hac vice*)
                                          GIBBS LAW GROUP LLP
                                          505 14th Street, Suite 1110
                                          Oakland, CA 94612
                                          Phone: (510) 350-9718
                                          Facsimile: (510) 350-9701
                                          E-mail: mls@classlawgroup.com

                                          *Attorneys for Plaintiffs*

18

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that on this 15th day of August, 2016, a true and accurate copy of the foregoing **Plaintiffs' Opposition to Marriott Defendants' Motion to Dismiss Second Amended Complaint** was filed and served via CM/ECF filing system upon following:

Matthew C. Ferguson, Esq.
The Matthew C. Ferguson Law Firm, P.C.
119 South Spring, Suite 201
Aspen, Colorado 81611

Michael J. Reiser, Esq.
Lilia Bulgucheva, Esq.
Law Office of Michael J. Reiser
961 Ygnacio Valley Road
Walnut Creek, California 94596
Michael L. Schrag, Esq.
Gibbs Law Group LLP
1 Kaiser Plaza, Suite 1125
Oakland, California 94612

Tyler R. Meade, Esq.
The Meade Firm p.c.
1816 Fifth Street
Berkeley, California 94710

Daniel F. Shea, Esq.
Jessica Black Livingston, Esq.
Hogan Lovells US LLP
1200 Seventeenth Street, Suite 1500
Denver, Colorado 80202

Naomi G. Beer, Esq.
Greenberg Traurig, LLP
1200 17th Street, Suite 2400
Denver, Colorado 80202

Ian S. Marx, Esq.
Philip R. Sellinger, Esq.
Greenberg Traurig, LLP
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932

*/s/ Linda Lam*
 Linda Lam

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 16-01301 PAB

RCHFU, LLC, et al.

      Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al.

      Defendants.

---

**MARRIOTT DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

---

The Marriott Defendants respectfully submit the following reply brief in further support of their motion to dismiss the SAC pursuant to Fed. R. Civ. P. 12(b)(6).[1]

## INTRODUCTION

Plaintiffs devote virtually all of their opposition brief to arguing that the Association, RC Management and Cobalt owed them a fiduciary duty to enforce restrictive covenants. But they barely mention the dispositive issue in this case: whether the contract documents actually contain a restrictive covenant prohibiting the MVC Affiliation. If no such restrictive covenant exists, then whether or not Plaintiffs were owed a fiduciary duty is irrelevant. As explained in Defendants' moving brief, nothing in the contract documents, including in the two documents upon which Plaintiffs rely, prohibited the MVC Affiliation. *See* Def. Br. at 12-16. Indeed, another District Court examining the same contract documents at issue here (and applying

---

[1] Defined terms are as set forth in Defendants' moving brief in support of their motion to dismiss the SAC ("Def. Br.").

Colorado law) has found that the MVC Affiliation was contractually permitted.  *See id.* at 16.  Plaintiffs' inability to plausibly allege a restrictive covenant prohibiting the MVC Affiliation sounds the death knell for their case.[2]

Even if a restrictive covenant existed, neither of the two bases upon which Plaintiffs posit a fiduciary duty for RC Management and Cobalt applies here.  First, Plaintiffs allege that RC Management exerted a "high degree of control" over their fractional interests and that such control gave rise to a fiduciary duty.  As an initial matter, the contract documents show that RC Management had no such control.  In any event, mere control over plaintiff's property is not enough.  For a fiduciary duty to be found based on defendant's control over plaintiff's property, the parties must have had a special relationship wherein defendant invited plaintiff's trust and confidence.  Plaintiffs do not, and cannot, allege that they had any special relationship with RC Management or Cobalt or that either of those entities invited their trust and confidence.

Nor can Plaintiffs plausibly allege a principal/agent relationship between the Association and RC Management (and, by extension, Cobalt).  Not only does the Management Agreement disclaim any such relationship, but it also expressly identifies RC Management as an independent contractor.  In addition, the Management Agreement gives the Association no right

---

[2] Although not relevant to this motion to dismiss, Plaintiffs' repeated claim that owners were never allowed to vote on the MVC Affiliation is incorrect.  *See, e.g.,* Pl. Br. at 6 (asserting that, although "the Association wrote to Ritz-Aspen owners that unless a majority of the owners voted in favor of doing so, the Ritz-Aspen would not be included in the MVC affiliation … [n]o such vote ever took place"); *see also* SAC ¶¶ 61, 64-66, 81, 86-87 (same).  In fact, although not contractually required to do so, in 2013, Marriott conducted a vote of all 876 Ritz-Aspen unit owners, asking whether they were in favor of, or opposed to, the MVC Affiliation.  A majority of those responding voted in favor of the MVC Affiliation.  Should this case continue, documents evidencing this vote will be used to support a motion for summary judgment.

to control RC Management's activities, and a principal's right to control its agent is the key element of any principal/agent relationship.

Implicitly acknowledging the myriad deficiencies of their claims, Plaintiffs assert that a breach of fiduciary duty claim cannot be dismissed on a Rule 12(b)(6) motion.  In fact, such claims are routinely dismissed on the pleadings, and the Court should do so here.  Plaintiffs' inability to state breach of fiduciary duty claims against RC Management, Cobalt and the Association moots their aiding and abetting, conspiracy and unjust enrichment claims against all Defendants.  Accordingly, the SAC should be dismissed in its entirety.

## ARGUMENT

## I.   NO RESTRICTIVE COVENANT PROHIBITED THE MVC AFFILIATION

It is telling that, out of Plaintiffs' entire 18-page opposition brief, only two paragraphs at the very end are devoted to the threshold issue of this case: whether a restrictive covenant prohibited the MVC Affiliation.  *See* Pl. Opp. at 17-18.  In their cursory treatment of this central question, Plaintiffs do not substantively address the Marriott Defendants' detailed contract arguments.  Rather, they simply assert that "interpretation of [the relevant contract provisions] should not be resolved at the pleading stage."  *See* Pl. Opp. at 17.  That is incorrect, as it is well established that "contract interpretation is a question of law for the court…."  *Copper Mountain, Inc. v. Indus. Sys., Inc.,* 208 P. 3d 692, 696 (Colo. 2009).[3]  The contract documents here show

---

[3] The case Plaintiffs cite in arguing to the contrary is inapposite.  *See* Pl. Opp. at 18 (citing *Chimney Rock Pub. Power Dist. v. Tri-State Generation & Transmission Ass'n, Inc.,* 2012 WL 84572 (D. Colo. Jan. 11, 2012), as "declining to grant a motion to dismiss 'based on an alleged breach of such a general and ambiguous contractual provision'").  Plaintiffs have taken the *Chimney Rock* Court's words out of context.  At issue in that case was whether plaintiff had stated a claim for breach of the implied covenant of good faith and fair dealing.  Defendants had asked the Court to determine, simply by looking at a contract provision, what the parties had

that the restrictive covenant Plaintiffs posit does not exist.  *See* Def. Br. at 12-16.  The Master Declaration merely provides that,"[o]ther than the right of Declarant … to create Fractional Ownership Interests … no Unit shall be used for the operation of a timesharing, fraction-sharing, or similar program…."  Master Decl. (Greene Decl. Ex. A) § 8.25.  That clear statement means exactly what it says, namely, that only Declarant may create Fractional Ownership Interests for use in the operation of a timeshare program.   That provision is unambiguous and cannot reasonably be read as a restrictive covenant prohibiting the MVC Affiliation.  *Cf. Compass Ins. Co. v. City of Littleton,* 984 P. 2d 606, 619 (Colo. 1999) ("An ambiguous provision is a provision that is 'reasonably susceptible to different meanings.'") (citation omitted); *Hoyt v. Marriott Vacations Worldwide Corp.,* 2014 WL 509903, at *3, n.6 (D. Minn. Feb. 7, 2014) (applying Colo. law and analyzing the same documents at issue here, court "conclude[s] as a matter of law that [the MVC] affiliation was contemplated and allowed by the governing documents").  Thus, because there was no restrictive covenant to enforce with respect to the MVC Affiliation, no fiduciary duty to Plaintiffs was breached.  The Marriott Defendants' motion should be granted on this basis alone.

## II.    EVEN IF A RESTRICTIVE COVENANT EXISTED, PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED ANY FIDUCIARY DUTY THAT WAS BREACHED

Plaintiffs allege that, because of the "high degree of control" supposedly exerted over their fractional interests, as well as under agency principles, the Association and RC Management (and, by extension, Cobalt) owed them a fiduciary duty to enforce a restrictive

---

intended at the time of contracting, which the Court said it could not do.  *See id.* at *3.  By contrast, the task here involves straightforward contract interpretation, namely, deciding whether an unambiguous contract provision prohibited the MVC Affiliation.

covenant that they claim prohibited the MVC Affiliation. Even if such a restrictive covenant existed, RC Management and Cobalt owed Plaintiffs no fiduciary duty, and the Association's fiduciary duty to Plaintiffs did not extend to the MVC Affiliation, for which it had no decision-making authority under the contract documents. *See* Def. Br. at 7-8; *see also Jarnagin v. Busby, Inc.,* 867 P. 2d 63, 67 (Colo. App. 1993) (establishing breach of fiduciary duty requires showing that "the nature and scope of the duty … extended to the subject matter of the suit").

### A.    The "Control over Plaintiff's Property" Theory of Fiduciary Duty Does Not Apply Here

Plaintiffs allege that "[a] fiduciary relationship … arises where one party 'has a high degree of control over the property or subject matter of another.'" *See* Pl. Opp. at 7 (citing cases). But RC Management has no such "high degree of control" over Plaintiffs' fractional interests. Indeed, under the Management Agreement, RC Management is only allowed to "[e]nter into the individual Plan Units" (what Plaintiffs call their "separately deeded property interests," *see* Pl. Opp. at 10) in order to provide services to Plaintiffs (e.g., "cleaning and maid service," required "maintenance and repair" and "abatement of nuisances … prohibited by applicable law or the Declaration"). *See* Mgmt. Agmt. (Greene Decl. Ex. B) § 4(V). In addition, RC Management is not authorized by the Management Agreement to sell, finance, rent, exchange or otherwise deal in Plaintiffs' fractional rights, nor does it have any authority to specify when Plaintiffs might take occupancy of a unit, or to designate individuals who would be entitled to occupy. *See generally, id.*

Nevertheless, Plaintiffs try to fit within the "control over plaintiff's property" rubric by claiming that "RC Management had authority to receive and hold all personal funds collected from the owners." *See* Pl. Opp. at 10 (quoting Mgmt. Agmt.). Again, the Management

Agreement makes clear that RC Management does not "hold" any of Plaintiffs' "personal funds" but, rather, merely <u>collects monies Plaintiffs owe to the Association</u>.  *See* Mgmt. Agmt. § 4(J) (providing that RC Management has authority to "[r]eceive and deposit all funds collected from the Owners [i.e., Plaintiffs], <u>or otherwise accruing to the Association</u>…."); *see also id.* (providing that these "<u>Association funds</u> shall not be commingled (i) with funds managed by [RC Management] on behalf of other associations; or (ii) with [RC Management's] own funds") (emphasis added).[4]

Even if RC Management had exerted a "high degree of control" over Plaintiffs' fractional interests, for a fiduciary duty to arise, much more must be shown.  Plaintiffs' own cases hold that defendant's control over plaintiff's property must have been "of such a degree that [p]laintiff reposed a 'high level of trust and confidence' in [d]efendant."  *See Oaster v. Robertson,* 2016 WL 1247803, at *18 (D. Colo. Mar. 28, 2016) (cited in Pl. Opp. at 7).  Thus, in *Oaster,* although plaintiff had "entrust[ed]" defendant with its "intellectual property and creative work product," the court found that plaintiff had failed to allege that it reposed a high level of trust and confidence in defendant.  Accordingly, the court granted defendant's Rule 12(b)(6) motion and dismissed plaintiff's breach of fiduciary duty claim.

---

[4] Plaintiffs appear to use the term "personal funds" because of a New York case, *Caprer v. Nussbaum,* 36 A.D. 3d 176 (2006), on which they mistakenly rely.  *See* Pl. Opp. at 9-10.  In *Caprer,* the court found that a condominium manager who lacked authority "to hold any personal funds of the unit owners" owed no fiduciary duty to unit owners.  *Id.* at 192.  Accordingly, Plaintiffs assert (incorrectly) that, unlike in the manager in *Caprer,* RC Management "holds" their "personal funds."  *See* Pl. Opp. at 10.  Plaintiffs misunderstand *Caprer.*  Just like RC Management, the condominium manager in *Caprer* was authorized to "collect[] … common charges" from unit owners (*see Caprer,* 36 A.D. 3d at 192); however, that was obviously not deemed "hold[ing the unit owners'] personal funds."

Similarly, in *Tara Woods Limited Partnership v. Fannie Mae,* 731 F. Supp. 2d 1103 (D. Colo. 2010) (cited in Pl. Opp. at 7), although plaintiff's placement of funds in escrow with defendant for management would "[n]ormally … be precisely the kind of situation that would give rise to fiduciary obligations," the court found it did not in that case because plaintiff had not pled "facts that would show that the [d]efendants 'invited' the [p]laintiff to place trust and confidence in the [d]efendants…." *Id.* at 1117-18.  Accordingly, the court granted defendant's Rule 12(b)(6) motion and dismissed plaintiff's breach of fiduciary duty claim.[5]

Thus, even if Plaintiffs could plausibly allege that RC Management exerted a "high degree of control" over their fractional interests (which they cannot, *see supra*), they have pled no facts showing that RC Management invited their trust and confidence.  Nor could they do so, as they are not even parties to the Management Agreement.  Accordingly, Plaintiffs' breach of fiduciary duty claim fails to the extent it is based on a "control over plaintiff's property" theory.[6]

---

[5] The *Tara Woods* plaintiff's placement of funds in escrow with defendant is a good example of what is meant by "holding plaintiffs' personal funds."  Another example is *Vai v. Bank of Am. Nat'l Trust & Sav. Ass'n,* 56 Cal. 2d 329 (1961), on which Plaintiffs also mistakenly rely.  *See* Pl. Opp. at 7-8.  In *Vai,* a husband was found to owe his estranged wife a fiduciary duty because he controlled her half-interest in the couple's community property.  *Vai,* 56 Cal. 2d at 337; *see also id.* (citing cases holding that, until final divorce decree, spouse has "full power to dispose of [community property]").

[6] As can be seen from *Oaster, Tara Woods* and the numerous cases the Marriott Defendants cited in their moving brief (*see* Def. Br. at 9-10 & n.7), breach of fiduciary duty claims are routinely dismissed on the pleadings.  Indeed, no factual questions need be decided where, as here, the parties' relationship is defined by contract.  *See id.*  The cases Plaintiffs cite to the contrary are inapposite.  For example, Plaintiffs cite *Moses v. Diocese of Colorado,* 863 P. 2d 310 (Colo. 1993), as holding that the existence of a fiduciary relationship is a question of fact for the jury.  *See* Pl. Opp. at 3-4.  But that was a clergy sex abuse case in which the issue to be decided was necessarily a factual one, namely, whether the priest's relationship with his parishioner had been one of "trust, confidence and reliance" such that a fiduciary relationship had arisen as a matter of law.  *Moses,* 865 P. 2d at 321.  Plaintiffs cite *Wildearth Guardians v. Public Service Company of Colorado,* 2010 WL 1568574 (D. Colo. Apr. 15, 2010), for the same proposition, but that case is

**B.**    <u>Plaintiffs Have Not Plausibly Alleged a Fiduciary Duty Based on Agency</u>[7]

Plaintiffs base their "agency" theory of fiduciary duty on the Management Agreement between RC Management and the Association. But the Management Agreement (a) disclaims any fiduciary relationship between the parties; (b) identifies RC Management as an independent contractor; and (c) provides that the "Association … releases any right of control over the method, manner or means by which [RC Management] performs its duties and responsibilities under this Agreement." *See* Def. Br. at 6; *cf. City and Cnty. of Denver v. Fey Concert Co.,* 960 P. 2d 657, 660-61 (Colo. 1998) (explaining that the key feature of an agency relationship is the principal's right to control the agent). Given this plain language, the Court can find, as a matter of law, that no principal/agent relationship was created.[8]

---

even further afield. *See* Pl. Br. at 7. *Wildearth* was an environmental case in which defendant was alleged to have violated its air permit. It did not involve fiduciary duty, agency or any other concept relevant here.

[7] Plaintiffs flatly assert that "[w]hether or not an agency relationship exists is a question of fact." *See* Pl. Opp. at 11 (citing *Stortroen v. Beneficial Finance Co. of Colorado,* 736 P. 2d 391 (Colo. 1987)). But the *Stortroen* court actually said: "The existence of an agency is ordinarily a question of fact…, but the court may properly decide the question as one of law when the facts are not in dispute." *Stortroen,* 736 P. 2d at 395. Here, the relevant facts are not in dispute; thus, whether the Management Agreement gave rise to a principal/agent relationship between RC Management and the Association is properly decided as a matter of law.

[8] *Woolley v. Embassy Suites, Inc.,* 227 Cal. App. 3d 1520 (1991) (cited in Pl. Opp. at 12), is not at all like this case. In *Woolley,* the issue was whether a principal/agent relationship existed between plaintiff hotel owners and Embassy, which was the hotel franchisor and manager. In addressing Embassy's argument that no such relationship existed, the court noted that "Embassy correctly observes that one essential of the principal/agent relationship is the right of control." 227 Cal. App. 3d at 1531. The court found, however, that, "[i]n the management contracts at bar the owner [i.e., plaintiff] retain[ed] the right of control in important respects …." *Woolley,* 227 Cal. App. 3d at 1531-32. Moreover, each contract stated that "Owner hereby employs [the manager] … *as the exclusive agent* of Owner to direct, supervise and manage the operation of [the hotel]." *Id.* (emphasis in original). The contrast between the Management Agreement and the management contracts at issue in *Woolley* could not be clearer. The former explicitly

Even if RC Management owed a fiduciary duty to the Association under the Operating Agreement, such duty would not extend to individual Association members, e.g., Plaintiffs. This point was explained in *Berryman v. Merit Property Management, Inc.,* 152 Cal. App. 4th 1544 (2007). In that case, plaintiff homeowners brought breach of fiduciary duty and other claims against a management company with which their homeowners' associations had contracted, alleging that the company had overcharged them for documents and title transfer fees. In dismissing most of their claims (including breach of fiduciary duty), the court declared:

> The problem with these allegations is that the plaintiffs are not parties to the contract with [the management company] -- the associations are. Even assuming the allegations are true, plaintiffs are at best incidental beneficiaries and have no standing to recover under the contract. [internal citation omitted] By the same logic, plaintiffs cannot use the contracts to bootstrap liability under [common law and statutory] … theories…. Permitting such recovery would completely destroy the principle that a third party cannot sue on a contract to which he or she is merely an incidental beneficiary.

*Id.* at 1553; *cf. Willey v. Mayer,* 876 P. 2d 1260, 1266 (Colo. 1994) (third parties harmed by agent's wrongful acts must seek recourse from principal, not agent) (citing Reuschlein & Gregory, *The Law of Agency and Partnership,* § 26 at 69-70 (2d ed. 1990)).

In sum, neither RC Management nor Cobalt owed Plaintiffs any fiduciary duty, either under a "control over plaintiff's property" theory or under the Management Agreement. And, as noted, the Association did not breach its fiduciary duty to Plaintiffs because the decision to affiliate with MVC was not within its authority or purview. *Cf. Arst v. Stifel, Nicolaus & Co.,* 86 F. 3d 974, 978 (10th Cir. 1996) (fiduciary duty extends only "to matters within the scope of [the] agency"). Accordingly, Plaintiffs' breach of fiduciary duty fails and, with it, their dependent

---

confirms that RC Management is an independent contractor, whereas the latter explicitly conferred agency status on the hotel manager.

aiding and abetting, conspiracy and unjust enrichment claims.  *Cf. Hoyt,* 2014 WL 5795034, at

*2 ("[w]here … plaintiffs have failed to sufficiently allege improper underlying conduct, there is

no injustice and no claim for unjust enrichment").  The SAC should be dismissed.

Dated:  August 29, 2016                        Respectfully submitted,

                                               GREENBERG TRAURIG, LLP

                                By:      *s/ Naomi G. Beer*
                                         Naomi G. Beer
                                         Philip R. Sellinger
                                         Ian S. Marx
                                         1200 Seventeenth Street, Suite 2400
                                         Denver, Colorado 80202
                                         Tel:     303.572.6500
                                         Fax:     303.572.6540
                                         Email:  BeerN@gtlaw.com
                                                  SellingerP@gtlaw.com
                                                  MarxI@gtlaw.com

                                         *Attorneys for the Marriott Vacations*
                                         *Worldwide Corporation, Marriott Ownership*
                                         *Resorts, Inc., The Ritz-Carlton Management*
                                         *Company, LLC, The Cobalt Travel Company, LLC,*
                                         *and The Lion & Crown Travel Co., LLC*

CERTIFICATE OF SERVICE

I hereby certify that, on this 29th day of August, 2016, a true and accurate copy of the foregoing **MARRIOTT DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT** was filed and served with the Clerk of the Court via CM/ECF filing system,which will send notification to the following:

Michael J. Reiser
Lilia Bulgucheva
Law Office of Michael J. Reiser
961 Ygnacio Valley Road
Walnut Creek, CA 94596
*Counsel for Plaintiffs*

Matthew C. Ferguson
The Matthew C. Ferguson Law Firm, P.C.
119 South Spring, Suite 201
Aspen, Colorado 81611
*Counsel for Plaintiffs*

Tyler R. Meade
The Meade Firm P.C.
1816 Fifth Street
Berkeley, CA 94710
*Counsel for Plaintiffs*

Linda Pham Lam
Michael Schrag
Gibbs Law Group LLP
505 14th Street, Suite 1100
Oakland, CA 94612
*Counsel for Plaintiffs*

Daniel F. Shea
Jessica Black Livingston
Hogan Lovells US LLP
1200 Seventeenth Street, Suite 1500
Denver, Colorado 80202
*Counsel for Aspen Highlands
  Condominium Association*

*s/ Julie Eaton*
Julie Eaton

*(Original on file at offices of Greenberg Traurig,
LLP, pursuant to C.R.C.P. 121, § 1-26*