**IN THE UNITED STATE DISTRICT COURT**
**DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-01301-PAB-GPG

**RCHFU, LLC et al.**

Plaintiffs,

v.

**MARRIOTT VACATIONS WORLDWIDE CORPORATION et al.**

Defendants.

_____

**PLAINTIFFS' MOTION TO MODIFY SCHEDULING ORDER**
_____

Plaintiffs, by and through their undersigned counsel, hereby submit their Motion to Modify the Scheduling Order as follows:

**CERTIFICATE OF COMPLIANCE WITH D.C. COLO. L. CIVR 7.1A**

The undersigned certifies that they have conferred with counsel for Defendants who oppose this Motion.

**I.   INTRODUCTION**

1. Plaintiffs move under Fed. R. Civ. P. 16(b)(4) to modify that portion of the Case Plan and Schedule in the Scheduling Order regarding the deadline to join parties and amend pleadings. Plaintiffs request that this deadline be extended to 60 days from the date this motion is granted, or if the motion to stay referenced below is granted, until 15 days after the stay is lifted.

2. Plaintiffs intend to move under Fed. R. Civ. P. 15(a) and D.C.Colo.L.Civ.R. 15.1(b) for leave to amend the complaint in order to plead additional recently discovered facts

and admissions that not only are powerful evidence in support of all of Plaintiffs' existing claims, but also support additional claims for promissory estoppel and constructive fraud. Plaintiffs have only recently discovered these facts via their recent review of documents recently produced by defendant Aspen Highlands Condominium Association, Inc. ("Association" or "HOA").

3. The operative facts in Plaintiffs' complaint in this case have remained the same since originally filed in state court. Only one substantive change has been made in the Second Amended Complaint and that was to withdraw Plaintiffs' class action allegations.

4. All other amendments, none of which Defendants opposed, have been only to add new owners as Plaintiffs. Thus, Plaintiffs' motion to amend will be the first motion to amend the substance and operative facts of the complaint.

5. Plaintiffs are meeting and conferring with Defendants about stipulating to stay the case for 60 days so that Plaintiffs can provide notice to the Association that is a subject of the Association's motion to dismiss. If the Court allows the stay, it will eliminate one of the arguments raised in the HOA's motion to dismiss, which is now pending along with a motion to dismiss filed by the other defendants.

6. The HOA began producing documents in late October 2016. The HOA's production of documents continued until as recently as December 9, 2016. Plaintiffs' review of the records was interrupted by an attempt by the HOA – abandoned only just last week – to "claw back" inadvertently produced documents. Internal HOA communications, including legal advice turned over on December 9, 2016, and actions taken by its Board, were not available

when the case was initially pled. As set forth herein, the bases for the claims has only very recently been discovered and Plaintiffs are moving expeditiously to amend.

## II.   NATURE OF NEW EVIDENCE

7. The Association's recent document production contains abundant evidence that further support Plaintiffs' claims and would decisively end Defendants' attempt to dismiss this action at the pleading stage. For example, the Association through its then President, Jay A. Neveloff, (chair of the real estate department the New York Law Firm of Kramer, Levin, Naftalis & Frankel) sought and received legal advice from Philip Gosch, Esq. (of Brownstein Hyatt Farber Schreck in Denver) on the issue of whether the controlling Declaration prohibited the Marriott Vacation Club affiliation at issue, and was informed that: "**Section 19.8 [of the Declaration] is an unambiguous prohibition against MVC Usage and a clear expression of Declarant's original intent that timeshare/exchange uses like the MVC Usage are prohibited."** (Emphasis added.) Based on this legal advice, Mr. Gosch wrote a cease and desist letter on behalf of the Association to the Marriott Defendants, explaining that the affiliation was unlawful.

8. Moreover, one fractional owner, Juan Pablo Cappello, who at the time was a partner at Greenberg Traurig, the firm now defending the Marriott Defendants, advised Marriott on August 26, 2012, with a copy to all board members, that the proposed affiliation was an act of self-dealing because "The Marriott Vacation Worldwide Corp. has a huge incentive to dilute the RCDC brand to further its greater interest of selling more Marriott Vacation Club memberships" and that "The growth of Marriott Vacation Worldwide Corp. as a public company it [sic] tied to growth of sales of more and more Marriott Vacation Club memberships." Mr. Neveloff

responded to Mr. Cappello that same day that his "email captured my sentiments quite well." Plaintiffs can and will add these and many other facts to the amended complaint.

9. In addition, recently produced Association documents show how the Board promised and then worked with Marriott Vacation Club executives to deny owners highly pertinent information relevant to the proposed merger, as well as the promised right to vote on the merger with the MVC. Indeed, these documents, and others, also support additional causes of action and after completing their review of the documents, Plaintiffs will seek leave to amend the operative complaint to add these facts and additional causes of action.

### III.   RELEVANT PROCEDURAL BACKGROUND

10. On December 31, 2015, Plaintiffs filed their Complaint against Defendants in Pitkin County.

11. On April 28 and 29, 2016, service was made on the Marriott Defendants and the Association.

12. On May 27, 2016, the Marriott Defendants removed the action to this Court based on the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332, 1446, and 1453 ("CAFA").

13. On June 2, 2016, Plaintiffs agreed to extensions of time for all Defendants to answer/respond.

14. On July 18, 2016, by agreement of the Parties, Plaintiffs filed their Second Amended Complaint, in order to withdraw their request for class action certification and to add additional Plaintiffs.[1] There were no substantive changes to the pleading. Additionally, Plaintiffs

---

[1] The Original Complaint filed on December 31, 2016, had a single Plaintiff who had agreed to act as a Class Representative. The First Amended Complaint added approximately 24 Plaintiff owning 29 Units. The Second Amended Complaint added 19 Plaintiffs owning 20 Units. The Third Amended Complaint

4

concurred with the Marriott Defendants that despite withdrawal of the class action certification request, CAFA jurisdiction remained. Remand was not sought.

15. On July 25, 2016, both the Marriott Defendants and the Association filed their Fed. R. Civ. P. 12(b)(6) Motions. There was no conferral. None is required under D.C.Colo.LCivR 7.1(a). However Judge Brimmer's standing order at p. 8 provides:

> Rule 12(b) motions are discouraged if the defect is correctable by the filing of an amended pleading. Counsel should confer prior to the filing of the motion if the deficiency is correctable by amendment (*e.g.*, failure to plead fraud with specificity) and should exercise their best efforts to stipulate to appropriate amendments.

16. Such a conferral did not occur. The Association then moved to dismiss one basis that Plaintiffs failed comply with a notice requirement in the Declaration.[2] Plaintiffs contend that this is readily correctable by amendment and are thus also moving to stay the case against the Association for 60 days to provide the for notice and notice period.[3] The Notice will be sent on or around December 19, 2016.

17. A Scheduling Order was jointly prepared and submitted by the Parties for a Scheduling Conference conducted by Judge Gordon Gallagher on August 18, 2016.

18. During that conferral process and in connection with the Case Plan and Schedule § 9.a., Plaintiffs requested that the 45 day deadline following entry of the Scheduling Order to join parties and to amend pleadings be extended to 90 days (which would be December 16, 2016). Marriott's Counsel added that if the Court did not agree with the fact discovery end-date,

---

added 80 Plaintiffs owning 93 Units. There are 22 owners of 24 unit presently prepared to be added to this suit or who will initiate a new suit.

[2] Declaration of Condominium for Aspen Highlands Condominiums.

[3] Plaintiffs assert in their response to the Association's Motion that notice would be a futile act.

<u>the extended deadline</u> "should be correspondingly reduced." Thus the Marriott Defendants appeared not to oppose this extension. Later in the section, Plaintiffs added that they might plead punitive damages and would need to further extend as C.R.S. § 13-21-102 does not allow pleading in initial complaint and until after disclosures and establishing a prima facie case. Marriott stated that it saw no viable basis for punitive damages and would "not agree with the proposed extension of any deadline." This was inconsistent with the first part of the section and unclear.

19. A brief Scheduling Conference took place on August 18, 2016. Judge Gallagher asked what amendments were then contemplated and Plaintiffs stated that additional Plaintiffs would join. Judge Gallagher allowed Plaintiffs to add additional Plaintiffs within 45 days. The 90 day extension was not addressed.[4] Defendants contend it was therefore not granted; Plaintiffs disagree.

20. The Marriott Defendants requested a stay of the case and discovery during the pendency of the Motions to Dismiss. Judge Gallagher stated that discovery would go forward.

21. Pending the resolution of the Motions to Dismiss, and pursuant to the Scheduling Order, Plaintiffs have diligently moved to conduct discovery.

22. On September 8, 2016, following initial disclosures, Plaintiffs (alone) propounded their first set of written discovery to the Marriott Defendants and the Association. Both filed their responses and objections to Plaintiffs' discovery on October 11, 2016.

---

[4] Plaintiffs attempted to locate the recording of the conference, but it cannot be retrieved due to a technical problem.

23. On October 21, 2016, the Association transmitted the production of 14,015 pages of documents. Plaintiffs' counsel promptly began careful review of the records and culled out the important documents for working binders to be utilized for additional discovery and analysis for potential use in the pleadings and motion practice.

24. On November 17, 2016, the Association sent a letter pursuant to Federal Rule of Evidence 502(b) and Federal Rule of Civil Procedure 26(b)(5)(B), stating that documents containing privileged communications had been inadvertently produced and requesting that Plaintiffs and their counsel "immediately destroy the documents, and any copies thereof, identified in the attached letter" ("Claw Back Letter"). The number of items extensive and dispersed throughout the entire production. By this time each of Plaintiffs' four law firms had prepared working notebooks of key documents and detailed chronological spreadsheets both being used in part to determine amending the complaint – so key and new was some of the information.

25. On November 18, 2016, Plaintiffs promptly responded to Association's counsel and agreed to sequester the specified information and internally sent out immediate instructions to all counsel and staff that: *"[i]n accordance with Fed.R.Civ.P. 26(b)(5)(B), we are going to sequester the documents at issue. This is somewhat difficult in that they are mixed into a production that we have been working with for the past three weeks, but we have to do it"* and *"[n]one of us should use the four binders until the supposedly privileged documents are removed, or they are determined not to be privileged."*

26. Discussions about the Claw Back Letter continued and the Association agreed to provide a complete privilege log on December 5, 2016, and a letter setting forth the

7

circumstances of the claimed inadvertent production of privileged communication. Instead, on that date the Association stated it might not claim privilege. On December 7, 2016, the Association agreed to produce all its records including those redacted and previously withheld as privileged. Those records were produced on December 9, 2016, and on December 12, 2016, Plaintiffs confirmed that there were no conditions or restrictions to their use. This meant that the work product binders could be returned to use.

27. Plaintiffs have proceeded with all due diligence and haste.

28. The Marriott Defendants have been negotiating a Protective Order for many weeks and has not produced any substantive documents to this point.

## IV. ARGUMENT

### A. Motion to Extend Deadline under Fed.R.Civ.P. 16(b)(4).

29. If the Court determines that the time to amend is beyond the time set forth in or contemplated by the Scheduling Order, and the 90 day extension was not addressed or granted,[5] good cause nonetheless exists to extend the deadline to allow Plaintiffs to file their first substantive amendment to the Complaint. Rule 16(b)(4) provides: "A schedule may be modified only for good cause and with the judge's consent." Fed.R.Civ.P. 16(b)(4). Plaintiffs respectfully move for a 60 stay extension to run concurrent with the stay motion. The district court has "broad discretion" in making this determination, and the Tenth Circuit has opined that "*Rule 16 was not intended to function as an inflexible straightjacket on the conduct of litigation.*" *Bylin v. Billings*, 568 F.3d 1224, 1232 (10th Cir. 2009) (emphasis added) (quoting *Morton Int'l, Inc. v.*

*A.E. Staley Mfg. Co*., 343 F.3d 669, 684 (3d Cir.2003)). "[R]igid adherence to the Scheduling Order is not advisable." *Sil–Flo, Inc. v. SHFC, Inc*., 917 F.2d 1507, 1519 (10th Cir.1990).

30. Good cause exists where the movant shows "adequate explanation for any delay." *David A. Bovino P.C. v. MacMillan*, 2014 WL 656842, at *3 (D. Colo. Feb. 20, 2014) (citing *Minter v. Prime Equip. Co*., 451 F.3d 1196, 1205 n.4 (10th Cir.2006)). Good cause also exists where "scheduling deadlines cannot be met despite [the movant's] diligent efforts." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014).

31. "Rule 16's good cause requirement may be satisfied, for example, if a plaintiff learns new information through discovery or if the underlying law has changed." *Id*. (emphasis added); *see also David A Bovino, P.C*., *supra*, 2014 WL 656842 at *3 ("[t]he fact that a party first learns through discovery of information which may lead to amendment of deadlines set forth in the Scheduling Order constitutes good cause."). In *Lewis v. Denver Fire Dep't*, 2010 WL 3873974 (D. Colo. Sept. 28, 2010), this Court granted leave to amend the pleading after the scheduling deadline finding good cause because the amendment relied upon newly discovered evidence. The amended complaint sought to add new factual allegations, a new defendant and new claims. *Id.* at *8. The Court found that because "[t]he facts upon which these additions are based came to plaintiff's attention long after the [] deadline for amendment of pleadings" good cause existed to allow the amendment after the deadline. *Id*.

32. Here, there is no such long delay. Forty-five days after the Scheduling Conference is October 3rd. Indeed, Plaintiffs agreed to add new Plaintiffs within this time period and did so. If October 3rd is treated as the deadline, this motion comes 74 days afterwards, but within days of a clean production by the HOA and resolution of the "claw back" issue that suspended Plaintiffs'

9

work. Plaintiffs are still working to obtain production of Marriott's substantive records. It is likely that they too will contain material highly germane to the case and the motions to dismiss.

33. As set forth above, if good cause is shown for amending a Scheduling Order, a party seeking leave to amend must still meet the requirements of Fed. R. Civ. P. 15(a). *Fiechtner*, 2010 U.S. Dist. LEXIS at *12.

34. Plaintiffs are aware that the standard scheduling order sets the amendment/joinder deadlines 45 days after the scheduling conference so as not to precipitate extensions. Plaintiffs are diligently pursing this action. The scheduling order form states that "Counsel and pro se parties should plan discovery so that discovery designed to identify additional parties or claims is completed before these deadlines." This complex case will involve at least over 150 Plaintiffs suing a Fortune 500 (219) company for tens of millions of dollars. The issues are complex and despite propounding discovery promptly, meeting a 45 day deadline in this context is not practical where it takes many more weeks and months for Defendants to respond and actually produce documents. Plaintiffs and Defendants agreed to a long Case Plan and granting this extension will not impact deadlines – so long as the Marriott Defendants respond and Plaintiffs are not met with opposition to the depositions they are seeking to set.

WHEREFORE, Plaintiffs respectfully request that their Motion to Modify the Scheduling Order be granted and that the deadline be extended for the same 60 days sought in the stay motion.

DATED: December 16, 2016						Respectfully submitted,

							*/s/ Michael Schrag*
							Michael Schrag (admitted *pro hac vice*)
							505 14th Street, Suite 1110

10

Oakland, CA 94612
Phone: (510) 350-9718
Facsimile: (510) 350-9701
E-mail: mls@classlawgroup.com
E-mail: lpl@classlawgroup.com

*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 16th day of December, 2016, a true and accurate copy of the foregoing **PLAINTIFFS' MOTION TO MODIFY SCHEDULING ORDER** was filed and served via CM/ECF filing system upon following:

Matthew C. Ferguson, Esq.
The Matthew C. Ferguson Law Firm, P.C.
119 South Spring, Suite 201
Aspen, Colorado 81611

Michael J. Reiser, Esq.
Lilia Bulgucheva, Esq.
Law Office of Michael J. Reiser
1475 N. Broadway, Suite 300
Walnut Creek, California 94596

Tyler R. Meade, Esq.
The Meade Firm P.C.
1816 Fifth Street
Berkeley, California 94710

Daniel F. Shea, Esq.
Jessica Black Livingston, Esq.
Hogan Lovells US LLP
1200 Seventeenth Street, Suite 1500
Denver, Colorado 80202

Naomi G. Beer, Esq.
Greenberg Traurig, LLP
1200 17th Street, Suite 2400
Denver, Colorado 80202

Ian S. Marx, Esq.
Philip R. Sellinger, Esq.
Greenberg Traurig, LLP
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932


*/s/ Marianne Fogle*
Marianne Fogle