# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-01301-PAB-GPG

RCHFU, LLC, et al.,

    Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al.,

    Defendants.

## DEFENDANT ASPEN HIGHLANDS CONDOMINIUM ASSOCIATION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT

Defendant Aspen Highlands Condominium Association, Inc. ("Association") respectfully submits this reply in support of its Motion to Dismiss ("Motion," Dkt. No. 83) the claims Plaintiffs allege against the Association in their Third Amended Complaint ("TAC").

## INTRODUCTION

The gravamen of Plaintiffs' TAC is that the Association breached fiduciary duties it owes Plaintiffs by permitting fee-simple Owners of deeded 1/12 fractional ownership interests at the Ritz-Carlton Club in Aspen Highlands ("the Club") to participate in a voluntary trading program whereby they could trade one of their weeks at the Aspen Highlands for a week elsewhere with a member of the Marriott Vacation Club ("MVC"). Just as Owners have the right to rent their units to anyone they wish, the voluntary trading program gives Club members the option, on an annual basis, to trade weeks they may not want to use in Aspen with an MVC member, allowing Club members access to MVC properties.

Plaintiffs' initial opposition fails to demonstrate that the TAC alleged facts sufficient to

1

state a claim against the Association for breach of fiduciary duty.[1] Plaintiffs again fail to show (and to have alleged in the TAC) that a majority of the Association's board members acted in bad faith or lacked independence and thus the Association could not avail itself of the protections afforded by law to those who in good faith exercise their business judgment in making decisions. In their recent opposition, Plaintiffs simply incorporated the arguments in their initial opposition, raising no new arguments and failing to address any arguments the Association raised in its initial Reply. Dkt. No. 85 at 1 (incorporating Dkt. No 59 and "augment[ing]" request for leave to amend). Plaintiffs also fail to allege facts supporting their claims against the Association for conspiring with or aiding and abetting other Defendants to breach their fiduciary duty.[2]

## ARGUMENT

**A.     The Declaration's demand requirement.**

Plaintiffs admit that they failed to satisfy the demand precondition in the Declaration but attempt to justify their failure by arguing that doing so would have been futile. Dkt. No. 59 at 6–8. Although the Declaration does not excuse the demand requirement due to futility, and although Colorado law requires Plaintiffs to plead facts to support futility, which they did not do, Plaintiffs have now submitted a Notice to the Association pursuant to Declaration Section 7.8.3. Accordingly, without waiving any argument as to Plaintiffs' ability to correct their failure by making a post-suit demand, the Association withdraws its argument that the TAC must be dismissed because Plaintiffs failed to make a demand of the Association.

---

[1] On November 23, 2016, the Association filed its Motion to Dismiss Plaintiffs' TAC, incorporating by reference its Motion to Dismiss Plaintiffs' Second Amended Complaint. Dkt. No. 83 (incorporating Dkt. No. 46). Plaintiffs filed their recent opposition, incorporating by reference their initial opposition. Dkt. No. 85 (incorporating Dkt. No. 59). The Association will refer to the two opposition briefs as the "initial opposition" and "recent opposition."

[2] Plaintiffs dropped their unjust enrichment claim against the Association. Dkt. No. 59 at 13 n.5.

**B.     Plaintiffs fail to state a claim against the Association for breach of fiduciary duty.**

Plaintiffs' claim for breach of fiduciary duty must be dismissed because the business judgment rule protects the Association's actions here, and Plaintiffs have failed to allege sufficient facts to show that the Association lacks independence, acted in bad faith, or was otherwise deprived of its ability to exercise its business judgment. *See Colo. Homes, Ltd.v. Loerch-Wilson*, 43 P.3d 718, 724 (Colo. App. 2001). The Declaration imposes upon the Association's board a duty to represent owners' interests "in a fair and just manner." Declaration ¶ 6.8. But the Association does not breach that duty every time it acts in a manner that some Owners, here Plaintiffs who comprise fewer than 20 percent of all Owners, disapprove of. Instead, the business judgment rule protects the Association's decisions when they are made in good faith and are not arbitrary. *See Colo. Homes, Ltd.*, 43 P.3d at 724; *Rywalt v. Writer Corp.*, 526 P.2d 316, 317 (Colo. App. 1974).[3]

Plaintiffs' initial opposition identifies the same two purported breaches of the Association's fiduciary duties that the Association addressed in its Motion: (1) that the Association favored Defendants' interests over Club members' by permitting the voluntary trading program, and (2) that the Association failed to enforce Section 19.8 of the Declaration. As to the first, Plaintiffs argue that the Association was actively discussing the voluntary trading program with MVW, represented to Plaintiffs that all Owners would get to vote on the program,

---

[3] Plaintiffs argue in their initial opposition that this Court should not rule on whether the business judgment rule applies at this time. Dkt. No. 59 at 11 (citing *Polk v. Hergert Land & Cattle Co.*, 5 P.3d 402,405 (Colo. App. 2000)). But *Polk* does not stand for this proposition; the Court based its decision on the disputed facts submitted during briefing on a motion for summary judgment. The court denied summary judgment on the question whether the business judgment rule applied after concluding that there were disputes of material fact regarding the defendants' good faith. *Id.* at 406. In contrast, the TAC contains no allegations of bad faith.

3

and then announced the trading program in April 2014 without holding a vote. Dkt. No. 59 at 9 (citing SAC ¶¶ 60, 63–64). But Plaintiffs fail to establish how these actions, or inactions, were made in bad faith, were arbitrary, or otherwise breached the Association's duty to represent owners' interests "in a fair and just manner." *See* Declaration ¶ 6.8.

In attacking the Association's action, Plaintiffs heavily rely on an April 2013 letter from the Association referencing a possible vote about including "Aspen Highlands in the Marriott Vacation Club affiliation/points program," but which did not elaborate as to the precise nature of the contemplated affiliation. Whether that letter addressed the trading program announced a year later or some other manner of affiliation is immaterial, however, as no provision of the Declaration, bylaws, governing document, or any exhibit to the TAC requires the Association to hold a vote before it could arrange with the Marriott entities to allow Club members, on a voluntary basis, to trade a week with a MVC timeshare member or anyone else. The Declaration contains numerous provisions explicitly requiring a vote by members of the Association—not one of which requires a vote by all members of the Association in connection with the decision to permit the voluntary trading program at issue here. Dkt. No. 46 at 11. Thus, Plaintiffs fail to identify any factual allegation that shows how this conduct breached the Association's fiduciary duty or deprives the Association of the business judgment rule's protections. *See Oberbillig v. West Grand Towers Condo. Ass'n*, 807 N.W.2d 143, 155 (Iowa 2011) ("the rule applies to the board's exercise of its interpretive authority . . . to proceed . . . without a membership vote").

As to the second alleged breach by the Association, failing to enforce Section 19.8 of the Declaration, Association explained in its initial Motion to Dismiss that the Declaration prohibits any Units from being "used for the operation of a timesharing, fraction-sharing, interval

4

ownership, private residence club, membership program, vacation club, exchange network or system or similar program," other than the Plan of Fractional Ownership established by Article 23 of the Declaration.  Declaration ¶ 19.8; Dkt. No. 46 at 9.  And although the Declaration does not define the term "timesharing," the Declaration is subject to the Colorado Common Interest Ownership Act, and a Colorado statute does define timesharing for the purposes of the Colorado Common Interest Ownership Act:  a "time share estate" is an "[a]n undivided interest in a present estate in fee simple in a unit" where "title to a time share unit circulates among the interval owners in accordance with a fixed schedule."  Declaration ¶ 1.1; Colo. Rev. Stat. § 38-33-110 (defining time sharing).

      The Association argued that the meaning of this statutory definition is plain.  *See* Dkt. No. 46 at 9.  Plaintiffs never argued to the contrary in their initial opposition or in their recent opposition.  Under the statute, Section 19.8 unambiguously means that no one can buy an interest at Aspen Highlands and then subdivide ownership of his Unit in such a manner as to operate a timesharing program with respect to that unit.  Section 19.8 does not mean that a Club member cannot rent his unit or trade a week of his interest with another person, even if the trade is for a week at a club at which the other person owns a timesharing interest.  When a statute's language "is clear and unambiguous, then the plain meaning of the words must be given effect." *Resolution Trust Corp. v. Love*, 36 F.3d 972, 976 (10th Cir. 1994).  *See also Climax Molybdenum Co. v. Walter*, 812 P.2d 1168, 1173 (Colo. 1991) (a statute should be construed according to its plain meaning).  Applying this unambiguous statutory definition to Section 19.8, the Section clearly addresses downstream timesharing and prohibits a Unit holder from further subdividing his ownership and operating his own timesharing program with respect to his unit.

Plaintiffs never addressed the impact of this statutory definition in their initial opposition, and they continue to ignore it in their renewed opposition. They initially argued that the Association's Motion to Dismiss created some sort of ambiguity—despite the Association's clear argument to the contrary. *Compare* Dkt. No. 59 at 10 (Plaintiffs' argument regarding "different interpretation[s]"), *with* Dkt. No. 46 at 9 (the Declaration "plainly means" no downstream timesharing), *and* Dkt. 64 at 7–8 ("Section 19.8 is unambiguous"). But "[t]he mere fact that there is a difference between the parties over the interpretation of an instrument does not of itself create an ambiguity." *Brunton v. Int'l Trust Co.*, 164 P.2d 472, 475 (Colo. 1945). And, in multiple recent filings, Plaintiffs now concede that Section 19.8 of the Declaration is unambiguous. *See* Dkt. No. 85 at 2 (arguing, as support for request for leave to amend, that the Association was advised that "Section 19.8 [of the Declaration] is . . . unambiguous"). *See also* Plaintiffs' Motion to Modify Scheduling Order, Dkt. No. 87 at 3 (arguing and quoting same).

Critically, Plaintiffs' concession that Section 19.8 is unambiguous defeats their argument that this Court cannot resolve the interpretation of Section 19.8 on the Association's Motion to Dismiss. *See* Dkt. 59 a 10. In fact, "the determination as to whether a contract is ambiguous and the construction of an unambiguous contract are legal questions for the court." *Arnold Oil Properties LLC v. Schlumberger Tech. Corp.*, 672 F.3d 1202, 1206 (10th Cir. 2012). Therefore, this Court can and should construe Section 19.8 according to the statutory definition of timesharing and conclude that it does not prohibit the voluntary trading program with MVC.

Plaintiffs also argue in their initial opposition that the Association's lawyers told it the "affiliation could not take place absent an amendment to the Declaration," yet the Association proceeded nonetheless. Dkt. No. 59 at 10 (citing SAC ¶ 71). This argument fails because the

6

Association's legal advice does not form the basis for any of the TAC's allegations supporting Plaintiffs' claim for breach of fiduciary duty based on the Association's failure to enforce Section 19.8. *See* TAC ¶¶ 70–71 (discussing alleged breach in connection with Section 19.8 but not Association's legal advice). The TAC only references such advice once, in a letter from the Association to Club members in October 2012, which was sent during the beginning of the Association's discussions with MVW regarding the trading program, and which does not mention Section 19.8. *See* TAC ¶ 57. Such parol evidence, whether legal advice or otherwise, would be inadmissible at trial or any other stage of the litigation to interpret the unambiguous language of Section 19.8. *See Roa v. Miller*, 784 P.2d 826, 828 (Colo. App. 1989); *Northwest Cent. Pipeline Corp. v. JER P'ship*, 943 F.2d 1219, 1226 (10th Cir. 1991).[4] And Plaintiffs' concession that Section 19.8 is unambiguous eliminates any need for the Court to look to parol evidence such as the Association's legal advice or any additional "new evidence" Plaintiffs purport to have. *See* Dkt. No. 59 at 10; Dkt. No. 85 at 1–2. In their initial opposition and again in their recent opposition, Plaintiffs never responded to the Association's argument that the parol evidence they point to would not be admissible to alter or vary the terms of the Declaration.

Ultimately, Plaintiffs have not alleged that any provision of the Declaration prohibits an Owner from participating in the voluntary trading program; nor have they shown that a vote of

---

[4] Even if Plaintiffs could amend the TAC to allege that the legal advice referenced in the 2012 letter was based upon Section 19.8 (even though the Section is not referenced in the letter) and convince the Court to consider it as parol evidence, the alleged legal advice would not defeat the application of the business judgment rule. To rebut the application of the rule, Plaintiffs must raise a reason to doubt whether the "action was taken on an informed basis or whether the directors honestly and in good faith believed that the action was in the best interests" of the Association. *See e.g.*, *Griggs*, 2010 WL 4932674 at *10 (shareholder derivative actions under Delaware law). The cited advice is not directed at the trading program announced in the April 2014 letter and preceded that announcement by over a year and a half. There is not sufficient evidence to infer that the Association intentionally ignored the advice and thus acted in bad faith.

the Owners was required. Accordingly, the business judgment rule protects the Association's action and Plaintiffs' breach of fiduciary duty claim should be dismissed.

**C.   Plaintiffs fail to state a claim against the Association for aiding and abetting or conspiring with the Marriott Defendants.**

Plaintiffs fail to allege that the Association knowingly provided substantial assistance to another Defendant's breach of its fiduciary duties to the Plaintiffs.  *See City P'ship Co. v. Lehman Bros., Inc.*, 344 F. Supp. 2d 1241, 1246 (D. Colo. 2004) (listing elements).  The TAC contains only conclusory allegations that the Association "materially assisted, aided, abetted and/or conspired with" other Defendants and that certain Defendants "pursuant to an agreement it [sic] made with Defendant Association," established the voluntary trading program.  TAC ¶¶ 45, 64–66.  Plaintiffs attempt to recast their general allegations as sufficiently particular in their initial opposition, but to no avail.  Again, Plaintiffs rely on the legal advice the Association allegedly received and its decision not to hold a vote, Dkt. No. 59 at 12 (citing SAC ¶¶ 57, 60, 63), alleging in addition only that "the Association was working with MVW executives to 'better understand the proposed affiliation.'"  *Id.* (citing SAC ¶ 52).  But as the Marriott Defendants explained in their Motion to Dismiss, the parties' Affiliation Agreement provides that decisions regarding affiliation are solely within the discretion of Defendant Cobalt and can occur without the Association's approval, Marriott Defs.' Mot. to Dismiss at 12, Dkt. No. 47, and thus nothing the Association did gave it the power to influence or participate in the affiliation decision.  Moreover, neither failing to follow legal advice nor failing to hold a vote is affirmative action that is necessary to satisfy the "substantial assistance" component of the aiding-and-abetting analysis when, as here, the Association has no duty to hold a vote.  *See In re Storage Tech. Corp. Sec. Litig.*, 147 F.R.D. 232, 235 (D. Colo. 1993) (failures to act qualify as substantial assistance

8

only if there is a legal duty to act). Standing alone, this additional allegation that the Association was working with MVW to understand the proposed affiliation cannot be deemed assistance of any kind, let alone substantial assistance necessary for aiding-and-abetting liability.[5]

Similarly, Plaintiffs fail to allege any facts to plausibly support their claim that the Association conspired with other Defendants to breach fiduciary duties. They do not allege any underlying unlawful act or goal—as required for a conspiracy claim. *See Double Oak Constr., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140, 146 (Colo. App. 2003). And Plaintiffs voluntarily dropped their unjust enrichment claim against the Association, thus conceding that the Association derived no financial benefit from agreeing to the voluntary trading program.

## D.   Plaintiffs' augmentation of their request for leave to amend.

In their recent opposition, Plaintiffs seek to "augment" their one-sentence request for leave to amend in their initial opposition. *See* Dkt. No. 85 at 1–3. To the extent Plaintiffs are attempting to formally seek leave to amend their TAC, their request is insufficient because it does not contain a proposed amended pleading. *See* D.C.COLO.LCivR 15.1(b). To the extent Plaintiffs are attempting to "augment" the allegations in their TAC by referencing documents outside the scope of the TAC, those documents cannot be considered in ruling on a motion to dismiss. *See* Fed. R. Civ. P. 12(d); *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991) (on a Rule 12(b)(6) motion, "the district court cannot review matters outside of the complaint."). If Plaintiffs do seek leave to amend their TAC,[6] the Association will respond separately to their

---

[5] Moreover, the Association has a duty to inform itself of all material information reasonably available prior to making a decision that would affect its Owners. *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), *overruled on other grounds*, *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000)).
[6] Plaintiffs suggest they will seek leave to raise claims for constructive fraud and promissory estoppel against the Association. *See* Dkt. Nos. 85 at 3, 87 at 2. But the allegations supporting

request, explaining that, among other reasons, Plaintiffs' concession that Section 19.8 is unambiguous obviates the need to amend to add documents because any interpretations, even if by attorneys, of Section 19.8 or of the statute defining timesharing are inadmissible and cannot, as a matter of law, alter the Declaration's or statute's unambiguous meaning.  *See Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988) (noting that "legal opinions as to the meaning of the contract terms at issue" would be inadmissible) (citation omitted).  Similarly, the Association will respond separately to oppose Plaintiffs' Motion to Stay Case, referenced in Plaintiffs' recent opposition.  Regardless of the fact that Plaintiffs sent the Association their Notice, this Court can and should proceed to rule on the merits of the Association's Motion to Dismiss.

## CONCLUSION

For all of the foregoing reasons, the Association respectfully requests that the Court dismiss Plaintiffs' claims against the Association with prejudice and without leave to amend.

Respectfully submitted this 28th day of December, 2016.

>  */s/  Daniel F. Shea*
>  **Daniel F. Shea**
>  **Jessica Black Livingston**
>  HOGAN LOVELLS US LLP
>  1200 Seventeenth Street, Suite 1500
>  Denver, Colorado 80202
>  Telephone: (303) 899-7300
>  FAX: (303) 899-7333
>  E-mail: dan.shea@hoganlovells.com
>  E-mail:jessica.livingston@hoganlovells.com
>
>  *Attorneys for Defendant Association*

---

those claims appear to be the same as those raised in the TAC—that the Association permitted the trading program in violation of Section 19.8 and failed to hold a vote on the program.  *See* Dkt. No. 85 at 2.  The Association's arguments in its Motion to Dismiss and above in this Reply would similarly apply to such claims, and thus this Court should not delay ruling on the Motion to Dismiss based on the chance that Plaintiffs may seek leave to add those claims in the future.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 28, 2016, I electronically filed the foregoing **DEFENDANT ASPEN HIGHLANDS CONDOMINIUM ASSOCIATION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| **Michael J. Reiser**<br>Law Office of Michael J. Reiser<br>961 Ygnacio Valley Road<br>Walnut Creek, CA 94596<br>reiserlaw@gmail.com<br><br>**Matthew C. Ferguson**<br>The Matthew C. Ferguson Law Firm, P.C.<br>119 South Spring, Suite 201<br>Aspen, Colorado 81611<br>matt@matthewfergusonlaw.com<br><br>**Michael L. Schrag**<br>Gibbs Law Group LLP<br>1 Kaiser Plaza, Suite 1125<br>Oakland, CA 94612<br>mls@classlawgroup.com<br><br>**Tyler R. Meade**<br>The Meade Firm P.C.<br>1816 Fifth Street<br>Berkeley, CA 94710<br>tyler@meadefirm.com<br><br>*Attorneys for Plaintiffs* | **Naomi G. Beer**<br>1200 17th Street, Suite 2400<br>Denver, Colorado 80202<br>Phone: (303) 572-6500<br>Fax: (303) 572-6540<br>BeerN@gtlaw.com<br><br>**Attorneys for Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., Ritz-Carlton Management Company, LLC, Cobalt Travel Company, LLC and Lion & Crown Travel Company, LLC** |

                                                  */s/ Daniel F. Shea*