IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 1:16-cv-01301-PAB-GPG

**RCHFU, LLC et al.**

Plaintiffs,

v.

**MARRIOTT VACATIONS WORLDWIDE CORPORATION et al.**

Defendants.

---

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO MODIFY SCHEDULING ORDER**

---

### I.     INTRODUCTION

The Marriott Defendants' and the Association's attempt to deny Plaintiffs the opportunity to use newly discovered evidence to support a motion to amend their complaint to add new causes of action is contrary to this Court's decision in *Pumpco, Inc. v. Schenker Intern., Inc.* 204 F.R.D. 667, 668-69 (D. Colo. 2001), which held, "[t]he fact that a party first learns, through discovery or disclosures, information necessary for the assertion of a claim after the deadline to amend established in the scheduling order has expired constitutes good cause to extend that deadline." As in *Pumpco*, the evidence that Plaintiffs discovered after the deadline to amend pleadings is necessary to allege two new claims that Plaintiffs intend to add: promissory estoppel and constructive fraud. The new facts also bolster Plaintiffs' existing claims to such an extent that they may quiet a motion to dismiss those claims.

1

Moreover, contrary to the oppositions, Plaintiffs have demonstrated sufficient diligence by bringing this motion less than two months after more than 14,000 pages of documents were produced and just days after the Association confirmed that they were withdrawing a previous claim of privilege as to some of the documents that had stalled Plaintiffs' review. These circumstances constitute good cause to amend the August 18, 2016 Scheduling Order (Dkt. No. 60), particularly where discovery is just beginning, no depositions have been taken, and no trial date has been set.[1] In sum, under these circumstances, Plaintiff have proceeded with diligence at all phases and shown good cause to amend the Scheduling Order.

---

[1] In the present motion, Plaintiffs seek an extension of the deadline to file a motion to amend pleadings under Rule 16(b). As the Scheduling Order mandates, they will file a separate motion for leave to amend under Rule 15. Dkt. No. 60 at 18 ("the deadline for amendments does not eliminate the necessity to file an appropriate motion and to otherwise comply with F. R. Civ. P. 15"). Thus, the Association's argument that Plaintiffs have not satisfied Rule 15 is premature. It is, however, worth noting that the standard under Rule 15 is more lenient than that under Rule 16. *Pumpco*, 204 F.R.D. at 668. If this motion is granted, Plaintiffs will be prepared to promptly file their motion to amend (including the proposed amended complaint) thereafter or, if the pending motion to stay (in order to allow Plaintiffs to satisfy the pre-filing notice requirement as to the Association) is granted, promptly after the stay is lifted. While Plaintiffs' opening brief to this motion sought a 60-day extension (or 15 days after any stay is lifted) for the amendment deadline, Plaintiffs are prepared to file a motion for leave to amend earlier, at the Court's request.

## II.   ARGUMENT

### A. Plaintiffs Have Demonstrated Good Cause Under Rule 16

#### 1. Plaintiffs Could Not Have Met the Deadline to Amend the Complaint Despite Diligent Efforts

While the Marriott Defendants more or less concede that Plaintiffs "may have established good cause for failing to meet the Scheduling Order's deadline to amend" based on the recently produced evidence, they stretch to argue that Plaintiffs did not file the present motion in a diligent manner. Dkt. 93 at 4. The facts belie this argument. Rule 16(b)'s "good cause" standard focuses on the diligence of the moving party. *Christen-Loper v. Bret's Electric, LLC*, 2016 WL 1317711, *2 (D. Colo. Apr. 4, 2016). The diligence requirement addresses carelessness, which would afford no relief to a party seeking to modify a scheduling order. *See Pumpco,* at 668. While "length of the delay is not a traditional consideration in determining whether a party has been diligent . . . short delay between Plaintiff's discovery of much of the information they seek to add and the filing of the present Motion . . . evidences diligence." *BPS v. Board of Trustees for Colorado School for the Deaf and Blind*, 2014 WL 6990312, *3 (D. Colo. Apr. 28, 2014) (Magistrate's Report and Recommendation).

Here, Plaintiffs' timing is clear evidence of diligence. Plaintiffs could not have added certain new information to their complaint by the deadline to amend pleadings because they learned of that information *after* the deadline had passed. Indeed, Plaintiffs discovered the new facts from reviewing the 14,015 pages of documents produced by the Association on October 21, 2016. That review process was halted for weeks by the Association's "claw-back" process. Plaintiffs were directed to locate and "destroy" a large number of produced documents. Given the dispersal of the Association's production among Plaintiffs' firms and the integration of

3

documents on shared drives in the cloud and hard copies in binders, Plaintiffs, pursuant to Rule 26(b)(5), had to sequester all records, preventing them from reviewing the documents. It was not until mid-December that, after discussions with the Association, Plaintiffs confirmed that the Association was no longer "clawing back" any records after all. This allowed Plaintiffs to resume their review.[2] Just a few days later, after meeting and conferring, Plaintiffs filed the instant motion. This justifies a finding of good cause for an extension of the pleading amendment deadline.[3]

The Association's contention that the new information Plaintiffs seek to add to their complaint is "not new at all" is puzzling. The Association claims that because Plaintiffs have always had an October 2, 2012 letter from the Association stating in general terms that the MVC affiliation would be prohibited by underlying documents, Plaintiffs somehow also knew about the evidence that they only recently discovered – such as a memorandum from the Association's counsel, Philip Gosch of Brownstein Hyatt Farber Schreck, providing a full legal analysis and explicitly concluding that the affiliation would violate Section 19.8 of the Declaration. Motion at 6-7. The Association ignores this document and further implies that Plaintiffs have always had the 2012 cease-and-desist letter from the Association's counsel to the Marriott Defendants. Association Opp. at 7. To support this claim, the Association points to e-mails suggesting that

---

[2] The Association's assertion that "Plaintiffs had access to the majority of the Association's document production beginning on October 21, 2016," Association Opp. at 3, fails to take into account the fact that Plaintiffs had to stop review of the documents in order to address the Association's extensive claw-back request.

[3] The Marriott Defendants argue that Plaintiffs should have filed this motion *before* they had reviewed the documents that they now know support new causes of action. Dkt. No. 93 at 4. This makes no sense because without reviewing the documents, Plaintiffs would not have known whether they supported new claims.

4

the letter was sent to members in 2012. *Id*. But this letter, even if it was received by the plaintiffs in this case, was sent over a year before the affiliation itself, and several years before Plaintiffs investigated and filed this lawsuit. The fact that it *might have been* distributed to members in 2012 does not equate to Plaintiffs having it in their possession, custody, or control (or any memory of it) years later, when its significance materialized. That a document was sent to a party sometime in the pre-litigation past does not excuse a party from producing it in litigation. Thus, there was no "four-year delay" in attempting to use the cease-and-desist letter or any accompanying legal opinion.

### 2. The New Information Does Not Merely Support Existing Claims, But Is Necessary to New Claims

"Discovery of evidence in support of claims after the pleading amendment deadline may demonstrate good cause for extension of the deadline." *MAP v. Board of Trustees for Colorado School for Deaf and Blind*, 2014 WL 3748642, *3 (D. Colo. Apr. 28, 2014) (Magistrate's Report and Recommendation). Indeed, courts routinely allow plaintiffs to amend their complaints after amendment deadlines where plaintiffs uncover new facts during discovery. *See Rehberg v. City of Pueblo*, 2011 WL 4102287, *6-7 (D. Colo. Sept. 14, 2011) (explaining that a plaintiff satisfied Rule 16(b)'s good cause requirement by seeking to add information discovered five months after the pleading amendment deadline); *Pumpco*, 204 F.R.D. at 668 ("information learned through discovery … if occurring after the deadline to amend … constitutes good cause to justify an extension of that deadline). In *MAP*, the plaintiffs requested an extension of the pleading amendment deadline to add information gathered in discovery that would "salvage" their already-pled claims. 2014 WL 3748642 at *2. The defendants argued that the new information

5

failed to support the plaintiffs' claims, but did not contest that the plaintiffs obtained at least some of the information in the proposed amendments after the pleading amendment deadline had passed. *Id*. at *3. The court thus concluded that the plaintiffs provided good cause for extending the deadline. *Id*.

Here, not only does the newly discovered evidence bolster existing claims, but more importantly, it supports *new* causes of action for promissory estoppel and constructive fraud. The elements of promissory estoppel are: "(1) a promise, (2) that the promisor should have expected would induce action or forbearance by the promisee, (3) that the promisee did, in fact, reasonably rely on to the promisee's detriment, and (4) that must be enforced to prevent injustice." *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1257 (10th Cir. 2016); *see also Walshe v. Zabors*, 178 F.Supp.3d 1071, 1085 (D. Colo. 2016).

The newly produced evidence will establish that after the Association's counsel issued its cease-and-desist letter explaining that the affiliation is prohibited by, among other reasons, the terms of the Declaration, the Association and the Marriott Defendants promised Plaintiffs that no affiliation would occur absent a majority vote by the membership. Plaintiffs will allege that they detrimentally relied on being able to exercise their right to vote on the proposed affiliation (and would have voted against it given the chance) and *thus took no other action to oppose the affiliation.* For example, they refrained from following up on the Association's cease-and-desist letter and suing to prevent affiliation. *See George,* 833 F.3d at 1262 (a lost opportunity to pursue other remedies can constitute a sufficient detriment to support a promissory estoppel claim).

6

Yet other recently produced documents show that instead of the promised vote, Plaintiffs ultimately received nothing but a sham "survey" that obfuscated the consequences of affiliation.[4] As a result of the Marriott Defendants and the Association reneging on their promise, Plaintiffs had no say and could do nothing about the proposed affiliation that would ultimately destroy the value of their units. In sum, the newly produced evidence is necessary to allege both the promised vote and breach of that promise -- which supports extending the motion to amend deadline.

Secondly, the new evidence supports a constructive fraud claim against the Association certainly and possibly the Marriott Defendants as well. Constructive fraud is defined as "a breach of duty, which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive, violate confidence, or injure public interests." *Miller v. McCloud*, 2016 WL 524357, *7 (D. Colo. Feb. 10, 2016) (citations omitted). Intent to deceive is not an essential element of constructive fraud. *Id*. Constructive fraud claims, like other types of fraud, must be pled with particularity. *See Pine Telephone Co., Inc. v. Alcatel Lucent USA Inc*., 617 Fed.App'x. 846, 860 (10th Cir. 2015). Here, the Association owed a fiduciary duty to Plaintiffs, and violated that confidence by hiding material information from Plaintiffs – including the legal opinions of Mr. Gosch that, for many reasons, concluded the affiliation was unlawful.  The Association also hid the full effects that the affiliation would have on Plaintiffs' property values.

---

[4] In the course of reviewing the Association's document production, as well as third-party subpoena documents produced by Morrow & Co., the survey administrator, Plaintiffs discovered that there was no formal vote, but only a survey in which less than 20% of the members even participated.

As was true with the claim for promissory estoppel regarding the vote, the Associations' disregard of the advice of their own counsel in favor of the financial interest of the Marriott Defendants did not unveil itself until Plaintiffs reviewed the Association's document production. Further, because constructive fraud must be pled with particularity, Plaintiffs could not have successfully pled such a claim without the recently discovered evidence showing the exact contents and circumstances of the concealed information. *See id*. (stating that Rule 9(b) requires a fraud pleading to specify the time, place, and contents of the false representation . . .).

Moreover, the new information uncovered during discovery will quiet any motions to dismiss by solidifying Plaintiffs' already-existing claims. Contrary to the Association's contention, a plaintiff may satisfy the good cause requirement by seeking to add new facts to support existing claims after an amendment deadline. *See, e.g., MAP*, 2014 WL 3748642 at *3. The only case the Association cites for their proposition, *Trujillo v. Bd. of Educ. of the Albuquerque Public Schools*, 2007 WL 2296955 (D.N.M. June 5, 2007), is inapposite.[5] In *Trujillo*, the plaintiff sought to amend his complaint after the amendment deadline, after the defendants had filed dispositive motions, and when trial was imminent. 2007 WL 2296955 at *1. The court denied the plaintiff's motion under Rule 16(b) because he "ha[d] not provided the Court with evidence that he diligently sought to meet any of the pre-trial deadlines" and "ha[d] not shown good cause for waiting until two months before trial to request leave to amend his

---

[5] The Association cites *Wakeen v. Hoffman House, Inc*., 724 F.2d 1238, 1244 (7th Cir. 1983), for the notion that a court may refuse a proffered amendment that "merely restates the same facts using different language, or reasserts a claim previously determined." *See* Association Opp. at 5. Again, that is not the case here, where Plaintiffs seek to add new facts and assert new claims that have never been determined.

complaint." *Id*. at *5. As fully discussed above, that delay and lack of diligence are not present here.

### B. Plaintiffs Will Seek Leave to Amend Under Rule 15 Should the Court Grant the Instant Motion

Because Plaintiffs have not yet filed a motion to amend their complaint, the Marriott Defendants and the Association are incorrect that Plaintiffs must satisfy Rule 15 at this time. If the Court grants this motion, Plaintiffs will seek leave to amend their complaint promptly after this motion is granted or, if a stay is entered, promptly after the stay is lifted. On December 21, Plaintiffs moved for a stay in this case in order to satisfy a purported condition precedent – a notice procedure – to filing suit against the Association. Dkt. No. 89. Plaintiffs served their notice on the Association on December 20, and the Association has 60 days from that date to act on the notice. *Id*. at 2. The Association argued, in its motion to dismiss Plaintiffs' second amended complaint, that Plaintiffs' claims against the Association should be dismissed because Plaintiffs failed to satisfy the notice requirement. *See* Dkt. No. 46 at 5-6. Plaintiffs intend to moot that argument by pleading satisfaction of the notice requirement in their new complaint, but cannot do so until 60 days has passed. Thus, should the Court grant the instant motion, Plaintiffs will promptly move for leave to amend their complaint after the stay is lifted, or if no stay is entered, promptly after this motion is granted.

### III. CONCLUSION

For all the above reasons, Plaintiffs' motion to modify the scheduling order to extend the deadline for amending pleadings should be granted.

DATED: January 19, 2017                     Respectfully submitted,

*/s/ Michael Schrag*
Michael Schrag (admitted *pro hac vice*)
505 14th Street, Suite 1110
Oakland, CA 94612
Phone: (510) 350-9718
Facsimile: (510) 350-9701
E-mail: mls@classlawgroup.com

*Attorney for Plaintiffs*

# CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 19th day of January, 2017, a true and accurate copy of the foregoing **PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO MODIFY SCHEDULING ORDER** was filed and served via CM/ECF filing system upon following:

Matthew C. Ferguson, Esq.
The Matthew C. Ferguson Law Firm, P.C.
119 South Spring, Suite 201
Aspen, Colorado 81611

Michael J. Reiser, Esq.
Lilia Bulgucheva, Esq.
Law Office of Michael J. Reiser
1475 N. Broadway, Suite 300
Walnut Creek, California 94596

Tyler R. Meade, Esq.
The Meade Firm P.C.
1816 Fifth Street
Berkeley, California 94710

Daniel F. Shea, Esq.
Jessica Black Livingston, Esq.
Hogan Lovells US LLP
1200 Seventeenth Street, Suite 1500
Denver, Colorado 80202

Naomi G. Beer, Esq.
Greenberg Traurig, LLP
1200 17th Street, Suite 2400
Denver, Colorado 80202

Ian S. Marx, Esq.
Philip R. Sellinger, Esq.
Greenberg Traurig, LLP
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932


*/s/ Marianne Fogle*
Marianne Fogle