UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

---

THOMAS F. REISER JR. and LINDA T. REISER, individually and as Trustees of the Tom and Linda Reiser Living Trust Dated June 20, 2006, et al.,

    Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, a Delaware corporation, et al.,

    Defendants.

No. 2:16-cv-00237-MCE-CKD

**MEMORANDUM AND ORDER**

---

The present lawsuit stems from the purchase, by twenty-two parties (collectively, "Plaintiffs"), of fractional interests in the Ritz-Carlton Club, Lake Tahoe, located in Truckee, California (the "Lake Tahoe Ritz"). Currently before this court is Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC") for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] For the reasons set forth below, Defendants' Motion is DENIED.

---

[1] The SAC identifies the following Defendants: Ritz-Carlton Development Company, Inc. ("RC Development"), Ritz-Carlton Sales Company, Inc. ("Ritz-Carlton Sales"), Ritz-Carlton Management Company, LLC ("RC Management"), Cobalt Travel Company, LLC ("Cobalt"), Marriott Ownership Resorts, Inc., d.b.a. Marriott Vacation Club International, and Marriott Vacations Worldwide Corporation (collectively, "Defendants").

1

**EXHIBIT "1"**

## BACKGROUND[2]

The Lake Tahoe Ritz consists of twenty-eight residential condominiums ("Club Interest Units"). Under a framework established by the so-called Club Interest Declaration,[3] Defendants fractionalized these twenty-eight Club Interest Units into three hundred thirty-six timeshare units (""fractional interests" or "fractional units"). The Club Interest Declaration, which was specifically incorporated within the Purchase Agreements used to buy the fractional interests, established a Club Interest Association with authority over not only the common areas of the complex but also each individual fractional interest purchased.

On May 16, 2008, in accordance with the Club Interest Declaration, Defendant RC Management agreed to act on behalf of the Club Interest Association and its members as the exclusive operating entity of the Club. The resulting Management Agreement[4] delegated absolute control over the deeded fractional property interests to RC Management, including authority over the rules and regulations governing each owner's use of a fractional unit, and all authority to maintain the Club Interest Units. RC Management, in turn, delegated managerial authority and control over use of the Club Interest Units, pursuant to its authority to hire subagents, to Defendant Cobalt.

In early 2009, Defendants sold one-twelfth fractional units to Plaintiffs and approximately thirty-eight other buyers. As owners of fractional interests, Plaintiffs were given exclusive accessibility rights to the Lake Tahoe Ritz not available to non-owners of fractional interests. Among other benefits, Plaintiffs' ownership entitled them to spend up to twenty-one days per year at the Lake Tahoe Ritz.

///

---

[2] This statement of facts is based on the allegations contained within the SAC. ECF No. 19.

[3] This document, known formally as the Declaration of Covenants and Restrictions for the Highlands Resort West Parcel Club, is dated May 30, 2008.

[4] This agreement, entered into on May 16, 2008, is formally named the Highlands Resort Club Association Operating Agreement and was later amended on March 19, 2010.

Defendants' efforts to sell fractional units in the Lake Tahoe Ritz stalled as the economy deteriorated. In November 2011, Defendants de-annexed seventeen of the original twenty-eight Club Interest Units and sold them as regular, non-fractionalized condominium units. In July 2012, Defendants announced their intention to pursue a new external exchange affiliation ("MVC Affiliation") between Defendant Ritz-Carlton Development Company, Inc. ("RC Development") and the Marriott Vacation Club ("MVC") that afforded MVC members many of the same privileges at the Lake Tahoe Ritz that Plaintiffs enjoyed as fractional unit owners. MVC is a larger, less exclusive, and less expensive competing product managed, owned, and promoted by Defendants. In 2014, Defendants used their control over Cobalt to implement the MVC Affiliation. Through the MVC Affiliation with RC Development, MVC members can spend just as many days at the Lake Tahoe Ritz as Plaintiffs and do so at a significantly reduced cost compared to Plaintiffs.

As a result of the de-annexation of Club Interest Units and the MVC Affiliation, the operational costs at the Lake Tahoe Ritz are spread only among the owners of fifty-nine fractional units, rather than three hundred thirty-six fractional units that would exist if Defendants had sold all of the Club Interest Units as fractional interests. According to Plaintiffs, the de-annexation and MVC affiliation resulted in a significant increase in the annual dues that Plaintiffs must pay each year, a loss of access to the Lake Tahoe Ritz, and a significant reduction in the value of Plaintiffs' one-twelfth fractional units.

The terms of the Club Interest Declaration, as well as the subsequent Management Agreement with RC Management and RC's delegation to Cobalt, granted those entities authority over not only the common areas, but also the separately deeded property interests that each individual fractional unit owner purchased. As indicated above, the Club Interest Declaration gave the Club Interest Association all powers necessary to ensure the proper functioning of each individual fractional unit, as well as the power to delegate that authority to a professional management company. Pursuant to the Management Agreement, the Club Interest Authority delegated that authority to

Case 2:16-cv-00237-MCE-CKD Document 32 Filed 02/13/17 Page 4 of 12

1  RC Management. Additionally, as authorized by California Business & Professions
2  Code Section 11267(a)(2), which allows professional management companies to hire
3  subagents, RC Management, in turn, entrusted its authority to Cobalt. According to
4  Plaintiffs, Defendants used the resulting control to essentially gut the value of the
5  fractional interests Plaintiffs purchased.

6  Plaintiffs are therefore unable to sell their fractional units. In May 2015, Plaintiff
7  Reiser contacted real estate agent Liza Killen ("Killen") of the Northstar Office of Tahoe
8  Mountain Realty to inquire about selling his fractional interest. Killen responded that
9  there was only one Ritz Carlton fractional unit on the market for $5,000.00, and all other
10 listings had either expired or were cancelled. In May 2016, Plaintiff Reiser contacted a
11 second Northstar real estate agent, Sam Drury ("Drury") of Padden Properties. Drury
12 told Reiser that a Ritz Carlton fractional unit had not sold in the previous two years.
13 According to Drury, the fractional ownership interests, which had typically been
14 purchased for sums in excess of $200,000.00, had lost nearly all their value. He
15 expressed the belief that there simply was no market for the interests.

16 Plaintiffs' First Amended Complaint ("FAC") alleged six causes of action:
17 (1) rescission, (2) breach of contract, (3) breach of the implied covenant of good faith
18 and fair dealing, (4) breach of fiduciary duty, (5) violation of the California's Unfair
19 Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, and (6) aiding and abetting.
20 Defendants moved to dismiss Plaintiffs' FAC in its entirety for failure to state a claim, and
21 by the Memorandum and Order filed April 29, 2016 (ECF No. 19), the Court denied that
22 motion as to the rescission, breach of contract, and breach of the implied covenant
23 claims but granted dismissal as to Plaintiffs' remaining causes of action.

24 Plaintiffs subsequently filed their SAC on May 25, 2016 (ECF No. 19), which
25 prompted the Motion to Dismiss (ECF No. 22) now before the Court. That Motion again
26 attacks all six causes of action pled in the SAC despite the fact that the Court previously
27 denied Defendants' prior motion as to three of those claims. Defendants in essence
28 recycle their previous arguments advocating dismissal of Plaintiffs' rescission, breach of

4

Case 2:16-cv-00237-MCE-CKD   Document 32   Filed 02/13/17   Page 5 of 12

contract, and breach of implied covenant claims on grounds that the Court committed "clear error" in not dismissing those claims in the FAC.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6),[5] all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard

---

[5] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

5

Case 2:16-cv-00237-MCE-CKD Document 32 Filed 02/13/17 Page 6 of 12

to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

## ANALYSIS

**A.  Rescission, Breach Of Contract, And Breach Of Covenant**

Defendants seek reconsideration of the Court's prior Order dismissing Defendants' Motion to Dismiss Plaintiffs' rescission, breach of contract, and breach of covenant claims as set forth in the SAC's First, Second and Third Causes of Action. Defendants re-argue their previous position, contending the Court's ruling constituted "clear error."

Plaintiffs contend that Defendants have made a deficient motion for reconsideration, failing to establish any of the bases for reconsideration—namely newly discovered evidence or an intervening change in controlling law. Defendants, instead, rely on the proposition that a court may reconsider its prior rulings to correct clear error. Lennar Mare Island, LLC v. Steadfast Ins. Co., No. 2:12-CV-02182, 2014 WL 2002204, at *3 (E.D. Cal. May 15, 2014) (finding reconsideration "appropriate where . . . it is necessary to correct clear error").

While the Court may reconsider its previous rulings, "[r]econsideration is an 'extraordinary remedy' that is to be used 'sparingly.'" Quinn v. Fresno Cty. Sheriff, No. 1:10-CV-01617, 2012 WL 2839648, at *2 (E.D. Cal. Jul. 10, 2012) (quoting Kona

6

Case 2:16-cv-00237-MCE-CKD Document 32 Filed 02/13/17 Page 7 of 12

1    Enters. v. Estate of Bishop, 229 F.3d 887, 890 (9th Cir. 2000). "To succeed, a party
2    must set forth facts or law of a strongly convincing nature to induce the court to reverse
3    its prior decision." Id. (quoting United States v. Westlands Water Dist., 134 F. Supp. 2d
4    1111, 1131 (E.D. Cal. 2001). "Mere dissatisfaction with the court's order, or belief that
5    the court is wrong in its decision, is not grounds for relief under Rule 60(b)." Joe Hand
6    Promotions, Inc. v. Rangee, No. 2:13-CV-00939, 2013 WL 6859001, at *2 (E.D. Cal.
7    Dec. 24, 2013) (quoting Twentieth Century-Fox Film Corp. v. Dunnahoo, 637 F.2d 1338,
8    1341 (9th Cir. 1981). "A district court may properly deny a motion for reconsideration
9    that simply reiterates an argument already presented by the petitioner." Id. (quoting
10   Marazit v. Thorpe, 52 F.3d 252, 255 (9th Cir. 1995).

11   Defendants' Motion merely repeats facts and reiterates arguments made in
12   Defendants' first motion to dismiss. This does not satisfy the clear error standard.
13   Reconsideration due to clear error occurs only when the court is left with "a definite and
14   firm conviction that a mistake has been committed." Husain v. Olympic Airways,
15   316 F.3d 829, 835 (9th Cir. 2002) (quoting Easley v. Cromartie, 532 U.S. 234, 242
16   (2001)). Nothing in Defendants' new Motion to Dismiss has demonstrated that any such
17   mistake was committed in the Court's prior ruling. The Court previously addressed all
18   the issues Defendants raise in their pending Motion to Dismiss in detail. See ECF No.
19   17, at 6–11. Accordingly, Defendants' request that the Court reconsider its prior ruling
20   with respect to Plaintiffs' rescission, breach of contract, and breach of the implied
21   covenant claims is DENIED.

**B.  Breach Of Fiduciary Duty**

23   To properly put forth a claim for breach of fiduciary duty, a plaintiff must plead:
24   (1) facts plausibly showing the existence of a fiduciary relationship, (2) breach of that
25   fiduciary relationship, and (3) damage proximately caused by that breach. Knox v.
26   Dean, 205 Cal. App. 4th 417, 432 (2012).

27   The Court dismissed Plaintiffs' breach of fiduciary duty claim as pleaded in their
28   FAC because Plaintiffs did not present any specific allegations as to how Defendants

7

owed them a fiduciary duty, or how the seller and buyer relationship between Plaintiffs and Defendants—which does not ordinarily produce a fiduciary relationship—could have created that fiduciary duty. Defendants contend that Plaintiffs' SAC has not done nothing to rectify those deficiencies. The Court disagrees; Plaintiffs have alleged an abundance of new facts to support their claim.

Plaintiffs claim a fiduciary duty exists due to the agency and subagency relationships created with RC Management and with Cobalt. A fiduciary relationship arises between parties to a transaction where one of the parties has assumed a duty to act with the utmost good faith and for the benefit of the other party. Gilman v. Dalby, 176 Cal. App. 4th 606, 614 (2009). A fiduciary duty may be imposed as a matter of law based on the nature of the relationship. See Cleveland v. Johnson, 209 Cal. App. 4th 1315, 1339 (2012) (describing joint ventures, partnerships, and agencies as illustrative examples of relationships in which fiduciary duties are imposed by law). Plaintiffs allege that under the Management Agreement, RC Management was appointed to act on behalf of the Club Interest Association and its members as the exclusive operating entity of the property and to manage the daily affairs of the Club. SAC, ¶¶ 74, 75. RC Management then proceeded to delegate absolute managerial authority and control over Plaintiffs' use of the Club Interest Units to its subagent Cobalt. Id. ¶ 78.

Initially, Defendants counter by citing the terms of the Management Agreement itself, which contains express disclaimer provisions that bar any agency relationship from being imputed. Those provisions, however, only bar an agency relationship between the signing parties. Plaintiffs were not parties to the Management Agreement, and instead possess only an ownership agreement in fractional units governed by the Agreement. Consequently, the disclaimer language is not binding upon them.

Plaintiffs also claim that a fiduciary duty was triggered when the Management Agreement gave RC Management control not just over the common areas, but also Plaintiffs' individually deeded property interests. Id. ¶ 66. Whether or not a fiduciary duty exists depends on the surrounding facts and circumstances. Ward v. Mgmt.

8

Case 2:16-cv-00237-MCE-CKD   Document 32   Filed 02/13/17   Page 9 of 12

1 Analysis Co. Emp. Disability Ben. Plan, 135 F.3d 1276, 1284 (9th Cir. 1998).  Under
2 California law, the key factor is whether there is "control by a person over the property of
3 another."  Vai v. Bank of Am. Nat'l Trust & Ass'n, 56 Cal. 2d 329, 338 (1961).  Plaintiffs
4 have pleaded exactly that—RC Management had control over their individually deeded
5 property interests.

6 Plaintiffs have pleaded sufficient facts to survive a motion to dismiss under either
7 of their agency theories.  Accordingly, Defendants' Motion to Dismiss Plaintiffs' breach of
8 fiduciary duty claim, as set forth in the SAC's Third Cause of Action, is DENIED.

9 **C.   Violation Of UCL**

10 Under the Unfair Competition Law ("UCL") a court may enjoin any person or entity
11 engaging in unfair competition.  Cal. Bus. & Prof. Code § 17203.  The UCL creates
12 "three varieties of unfair competition—acts or practices which are unlawful, or unfair, or
13 fraudulent."  Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1140 (9th Cir. 2012).  In
14 their Fifth Cause of Action, Plaintiffs allege Defendants violated both the UCL's
15 "unlawful" and "unfair" prongs.  Defendants move to dismiss on grounds that Plaintiffs
16 have failed to identify any predicate "unlawful" or "unfair" acts.  As set forth below, the
17 Court concludes that Plaintiffs have at least met their pleading burden under the
18 "unlawful" prong, and so declines to address Plaintiffs' allegations of "unfair" acts.

19 "[A] violation of another law is a predicate for stating a cause of action under the
20 UCL's unlawful prong."  Berryman v. Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544,
21 1554 (2007).  Plaintiffs satisfy this predicate by alleging that Defendants violated
22 California Business & Professions Code Section 11252.  Section 11252 prohibits
23 developers from "materially encumbering" the use rights of timeshare purchasers without
24 the written assent of at least fifty-one percent of the timeshare interest owners other than
25 the developer.  Cal. Bus. & Prof. Code § 11252.

26 Plaintiffs allege the MVC Affiliation constituted such an encumbrance in causing
27 the value of their fractional units to utterly collapse.   Defendants, however, claim that the
28 MVC Affiliation does not fit the definition of "encumbrance" as defined in the state.  See

9

Case 2:16-cv-00237-MCE-CKD Document 32 Filed 02/13/17 Page 10 of 12

id. §§ 11226, 11244, 11255. Defendants further argue that even if the MVC Affiliation is an encumbrance, they have not materially encumbered Plaintiffs' rights because there is no linkage between the valuation of Plaintiffs' fractional interests and their "use rights."

The Court previously found that the FAC contained "no basis, beyond speculation, as to the value of Plaintiffs' fractional interests." ECF No. 17, at 16:4-5. As stated above, however, the SAC alleges that Plaintiff Reiser contacted two Lake Tahoe real estate agents inquiring about selling his fractional units. Killen, a real estate agent at the Northstar Office of Tahoe Mountain Realty, told Reiser that there were no pending listings for the Ritz Carlton fractional units other than a two bedroom house on the market for $5,000.00, with "all other listings either expired or . . . cancelled." SAC, ¶ 62. A second real estate agent, Drury at Padden Properties, similarly indicated that the Ritz Carlton fractional interests "have lost nearly ALL value," explaining that "[i]t is clear there's no market for this product at all." Id.

Defendants contend that even accepting the results of these inquiries at face value, none of the information obtained shows a linkage to the MVC Affiliation or to Plaintiff Reiser's "use rights." Plaintiffs, however, need only provide enough "[f]actual allegations . . . to raise a right to relief above the speculative level. Twombly, 550 U.S. at 555. By alleging that the MVC Affiliation diluted the value of Plaintiffs' fractional interests, and alleging that the value of those interests plunged to virtually nothing, Plaintiffs' SAC satisfies that standard.

Although Defendants further argue that Plaintiffs' UCL claim must be dismissed on grounds that they failed to substantively oppose Defendants' motion, that argument is also misplaced. Plaintiffs have opposed Defendants' arguments within the allegations of the SAC itself. They have alleged a violation of Section 11252 on grounds that the MVC Affiliation materially encumbered their use rights when the value of their fractional interests collapsed.

///
///

10

Case 2:16-cv-00237-MCE-CKD Document 32 Filed 02/13/17 Page 11 of 12

1  The Court must accept all allegations of material fact as true and construe them in
2  the light most favorable to the nonmoving party, and Plaintiffs have included enough
3  facts to plausibly state a claim to relief. Accordingly, Defendants' Motion to Dismiss
4  Plaintiffs' UCL claim is DENIED.

### D. Aiding And Abetting

6  A claim for aiding and abetting requires a plaintiff to establish an underlying tort
7  that was "aided and abetted." In re Mortgage Elec. Registration Syst., Inc., 754F.3d 772,
8  786 (9th Cir. 2014). In the SAC, Plaintiffs have pleaded an underlying tort: breach of
9  fiduciary duty. See SAC, ¶¶ 119-122.

10  Defendants contend that Plaintiffs' aiding and abetting claim is insufficiently
11  pleaded because this underlying tort was insufficiently pleaded. However, as set forth
12  above, Plaintiffs' breach of fiduciary claim is properly pleaded.

13  Turning to the substance of Plaintiffs' aiding and abetting claim, the factual
14  allegations offered in the SAC are enough to raise their right to relief to beyond mere
15  speculation as required under Twombly and Iqbal. Plaintiffs allege that Defendants
16  devised a three-prong plan to solve their unsold inventory problem. First, Defendants
17  secretly de-annexed seventeen of the twenty-eight Club Interest Units and sold them as
18  non-fractionalized, regular condominium units. SAC, ¶ 4. Second, Defendants
19  implemented the MVC Affiliation, which devalued the Fractional Units. Id. ¶ 5. Third,
20  Defendants discontinued any meaningful effort to continue selling fractional units. Id.
21  ¶ 6. The Court finds that these allegations are sufficient to support a claim of aiding and
22  abetting.

23  Accordingly, Defendants' Motion to Dismiss Plaintiffs' aiding and abetting claim,
24  as set forth in the Sixth Cause of Action, is also DENIED.

25  ///
26  ///
27  ///
28  ///

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint, for failure to state a claim pursuant to Rule 12(b)(6), ECF No. 21, is DENIED.

IT IS SO ORDERED.

DATED: February 10, 2017

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE