## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-01301-PAB-GPG

RCHFU, LLC, et al.,

    Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al.,

    Defendants.

### DEFENDANT ASPEN HIGHLANDS CONDOMINIUM ASSOCIATION'S OBJECTION TO ORDER REGARDING PLAINTIFFS' MOTION TO STAY CASE (ECF #89) AND ORDER REGARDING PLAINTIFFS' MOTION TO MODIFY SCHEDULING ORDER (ECF #87)

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, Defendant Aspen Highlands Condominium Association, Inc. ("Association") respectfully objects to the Order Regarding Plaintiffs' Motion to Stay Case (ECF #89) and Order Regarding Plaintiffs' Motion to Modify Scheduling Order (ECF #87) (the "Order"). Dkt. No. 105. As set forth in detail below, the Association specifically objects to the portion of the Order that Plaintiffs be permitted to file a fourth amended complaint that adds a new claim for constructive fraud. Order at 2.

### BACKGROUND

The original complaint was filed on December 31, 2015 as a class-action complaint in state court against the Association and the Marriott Defendants. The Plaintiff never served that complaint on any Defendant; instead, on April 26, 2016, a First Amended Complaint was filed and served on the Defendants. *See* Dkt. No. 5. Defendants removed the case to the United States District Court for the District of Colorado. *See* Dkt. No. 1. Before Defendants answered

1

or otherwise responded to the complaint, on July 18, 2016, Plaintiffs filed a Second Amended Complaint dropping the class-action allegations and adding individually named Plaintiffs. *See* Dkt. No. 40. The Association and the Marriott Defendants separately moved to dismiss the Second Amended Complaint on July 25, 2016. *See* Dkt. Nos. 46 and 47. Before this Court ruled on the pending motions to dismiss, Plaintiffs filed a Third Amended Complaint, on November 7, 2016, and a corrected Third Amended Complaint ("TAC"), on November 11, 2016, again adding more individually named Plaintiffs. *See* Dkt. Nos. 77 and 79. The Association and Marriott Defendants again separately moved to dismiss the TAC on November 23, 2016. *See* Dkt. Nos. 83 and 84.

On December 16, 2016, Plaintiffs asked this Court to amend the Scheduling Order governing this case and extend the deadline to join parties and amend pleadings. Dkt. No. 87. Plaintiffs asked that the deadline be extended by sixty days because they intended to seek leave to amend their TAC to allege new facts and assert new claims, as well as add new plaintiffs. *See id.* ¶ 2. The Association opposed Plaintiffs' motion, arguing that Plaintiffs did not demonstrate the good cause required under Rule 16(b)(4) to amend the Scheduling Order. *See* Dkt. No. 94. The Marriott Defendants similarly opposed Plaintiffs' motion. *See* Dkt. No. 93.

On December 21, 2016, Plaintiffs filed a motion to stay the case for 60 days. Dkt. No. 89. The Association opposed that motion to the extent it sought to prevent the Court from ruling on the Association's pending Motion to Dismiss. Dkt. No. 96.

Magistrate Judge Gallagher held a hearing on both of Plaintiffs' motions on February 15, 2017 and entered the Order that same day. Dkt. No. 105. The Order denies Plaintiffs' motion to stay as moot and grants in part and denies in part Plaintiffs' motion to amend the Scheduling

2

Order.  Specifically, the Order permits Plaintiffs to file a fourth amended complaint adding approximately 50 new plaintiffs (units) and adding a new claim for constructive fraud.  Order at 2.  The Order denies Plaintiffs leave to file a fourth amended complaint asserting a new claim for promissory estoppel.  *Id.*

The Association objects to the portion of the Order granting Plaintiffs leave to amend their TAC and file a fourth amended complaint that adds a new claim for constructive fraud.[1]  The Association is entitled to a "just, speedy, and inexpensive determination" and proceeding.  Fed. R. Civ. P. 1.  Plaintiffs' claims have been pending for almost one year, yet Plaintiffs still seek to prolong this case by adding an additional claim after their deadline to do so expired and after already having amended their complaint three times.  Plaintiffs have not demonstrated the required good cause and diligence to do so, and this Court should modify the Magistrate Judge's Order to deny Plaintiffs leave to add a new claim for constructive fraud at this stage of the proceedings.

## ARGUMENT

Pursuant to Rule 72(a), a party may serve and file objections within fourteen days of a Magistrate Judge's written order stating a decision on a non-dispositive matter.  *See also* Order at 1 n.2.  This Court must consider timely objections and modify or set aside any part of the order that is "clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a).  A district court can modify or set aside an order if the Magistrate Judge "abused his discretion, or, if after viewing the record as a whole, the Court is left with a 'definite and firm conviction that a mistake has

---

[1] For the sake of clarity, the Association does not object to the portions of the Order that (i) deny Plaintiffs' motion to stay as moot; (ii) permit Plaintiffs to file a fourth amended complaint adding approximately 50 new units; and (iii) deny Plaintiffs leave to file a fourth amended complaint asserting a new claim for promissory estoppel.

3

been made.'" *S.E.C. v. Nacchio*, 614 F. Supp. 2d 1164, 1176 (D. Colo. 2009) (quoting *Ariza v. U.S. West Commcs., Inc.*, 167 F.R.D. 131, 133 (D. Colo. 1996)); *see also Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988). Additionally, a district court will overturn a Magistrate Judge's order under the "contrary to law" standard if the Magistrate Judge applied the wrong legal standard or applied the appropriate legal standard incorrectly. *Schwartz v. Booker*, No. 09-cv-00915-WJM-KMT, 2014 WL 4056542, at *3 (D. Colo. Aug. 14, 2014). Here, Magistrate Judge Gallagher applied the appropriate legal standard under Rule 16(b)(4) but incorrectly concluded that Plaintiffs had satisfied the Rule's good cause requirement.

Under Rule 16(b)(4), a scheduling order "may be modified only for good cause and with the judge's consent." The "good cause" standard requires that plaintiffs show their "diligence . . . in attempting to meet the Court's deadlines." *David A. Bovino P.C. v. MacMillan*, No. 12-cv-00551-PAB-MEH, 2014 WL 656842, at *3 (D. Colo. Feb. 20, 2014) (citing *Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000)). This requires "some persuasive reason as to why the amendment could not have been effected within the time frame established by the court." *Id.* Although "information learned through discovery" but after the deadline in the Scheduling Order may constitute good cause, such information must be specifically identified and necessary to assert a claim. *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001); *see also MacMillan*, 2014 WL 656842, at *3 (quoting *Riggs v. Johnson*, No. 09-cv-01226-WYD-KLM, 2010 WL 1957110, at *3 (D. Colo. Apr. 27, 2010)).

To demonstrate good cause sufficient to justify amending a scheduling order to permit amending a complaint, a plaintiff must provide specific examples of the newly discovered evidence and explain precisely how such evidence supports a new cause of action. *See, e.g.*,

4

*Pumpco, Inc.*, 204 F.R.D. at 668–69; *Carefusion 213, LLC v. Prof. Disposables, Inc.*, No. 09-2616-KHV-DJW, 2010 WL 4004874, at *4 (D. Kan. Oct. 12, 2010). Plaintiffs have not done so here. Instead, in their moving papers, they merely identified additional evidence of existing facts and claims. And at the hearing, they identified purported new evidence but did not provide specific examples or explain how the "new" evidence supports their constructive fraud claim. When a plaintiff fails to "point to a single, specific piece of information supporting its proposed fraud claim" that it has identified through discovery after the deadline for amending pleadings, courts have held that the plaintiff failed to demonstrate good cause under Rule 16(b)(4). *See Butler Nat. Serv. Corp. v. Navegante Grp., Inc.*, No. 09-2466-JWL-DJW, 2011 WL 941017, at *3 (D. Kan. Mar. 16, 2011). Likewise this Court should find that Plaintiffs failed to demonstrate good cause.

### 1. The only evidence Plaintiffs point to with specificity is not newly discovered evidence that would satisfy Rule 16(b)(4)'s good cause standard.

In their motion to amend the Scheduling Order, Plaintiffs identified no newly discovered evidence that would support a claim for constructive fraud. In fact, they identified only two documents with any level of specificity at all. First, Plaintiffs selectively quote legal advice the Association received from its counsel and mention that the Association's counsel sent the Marriott Defendants a cease-and-desist letter. *See* Dkt. No. 87 ¶ 7. Second, Plaintiffs identify one Aspen Highland member's communications with the Marriott Defendants complaining about the proposed trading program. *Id.* ¶ 8. Plaintiffs did not attach any of these documents to their motion, however.

As the Association argued in its opposition to Plaintiffs' motion, this purported new evidence is not new at all. Before discovery had commenced, Plaintiffs already had alleged that

5

the Association's counsel advised it that the Association's documents prohibited the proposed affiliation (in its then-current form). They attached to the TAC, as Exhibit J, a letter from the Association to its members discussing this. *See* TAC ¶ 57, Ex. J. In their Reply, Plaintiffs argue that a legal memorandum the Association produced in discovery is new evidence because it provided a "full legal analysis and explicitly conclude[ed] that the affiliation would violate Section 19.8 of the Declaration." Dkt. No. 101 at 4. But even as they attempt to justify how this legal advice is "new evidence," Plaintiffs fail to—and cannot—point to anything actually "new." They simply reiterate that the Association received legal advice indicating that the then-proposed affiliation violated the Declaration. *Compare* TAC ¶ 57, Ex. J ("[It] is the view of the Board and its counsel, that in order for MVW to move towards the points based system it is planning on, that the underlying Association documents would need to be revised as it is in our view that the documents prohibit what MVW is planning.") *with* Dkt. No. 101 at 7 (The Association received the "legal opinions of Mr. Gosch that, for many reasons, concluded the affiliation was unlawful.")

In addition, Plaintiffs fail to mention that this legal memorandum from September 21, 2012 actually analyzes a different affiliation than the one at issue in this lawsuit. The memorandum—which states there is "sufficient support to justify the issuance of a cease and desist letter" even though "the outcome of any actual litigation regarding the MVC Usage would be less than certain"—addresses the situation where Marriott Vacations Worldwide Corporation ("MVW") was offering the use of its own Tourist Accommodation Units as exchange units to members of Marriott Vacation Club ("MVC"). Ex. A, Memorandum of Brownstein Hyatt Farber Schreck, Sept. 21, 2012, at 2. The Association and its members opposed this proposed points-

6

based system in large part because the Aspen Highland inventory owned by Marriott—13.2 percent of the Fractional Ownership interests—was included among the units available for exchange, and thus available for MVC members to use.  *See* TAC ¶ 57, Ex. J.  The cease-and-desist letter was written to directly oppose that program.  And on that matter, it was successful: the current voluntary trading program excludes Marriott-owned inventory from the available exchange units.  *See* Ex. B, Memorandum of Understanding between the Lion & Crown Travel Co., LLC, and Association, April 17, 2014, at ¶ 7(c) ("Access by [Marriott Vacation Club Destination] members to Aspen Highlands Condominium through The Lion & Crown Exchange Program is limited to reserved allocated time <u>exchanged by Association Members</u>.") (emphasis added).

As to the cease-and-desist letter, Plaintiffs overlook the fact that the Association sent all members—including Plaintiffs—a copy of the cease-and-desist letter on December 21, 2012.  Not only is the cease-and-desist letter not new evidence, but Plaintiffs do not justify or explain their approximately four-year delay in attempting to use the letter to support their purported new claims—other than to admit that the letter "was sent over a year before the affiliation itself, and several years before Plaintiffs investigated and filed this lawsuit."  Dkt. No. 101 at 5; *see* Dkt. No. 94 at 7 n.2; *id.*, Exs. 1–3.

With regard to Plaintiffs' evidence in the form of a member communication with Marriott complaining about the points-based program, the communication does not evidence constructive fraud on the part of the Association.  The sentiments captured in the member's complaint—that Marriott "has a huge incentive to dilute the RCDC brand"—have no bearing on the Association.  Dkt. No. 87 at 3.

And finally, in their Reply, Plaintiffs argued that new evidence supporting their constructive fraud claim shows that the Association supposedly "hid the full effects that the affiliation would have on Plaintiffs' property values." Dkt. No. 101 at 7. Yet Plaintiffs fail to point to a single piece of evidence, new or otherwise, that is even tangentially related to that allegation.

In sum, Plaintiffs provide no explanation for how this duplicative evidence is relevant to or supports any new causes of action, including the constructive fraud claim they identified in their Reply. The legal opinion merely reiterates the same conclusion as the cease-and-desist letter: the Association and its counsel had reason to believe that the points program that MVW implemented in 2012 was not permitted under the governing documents. And they identified no evidence that the Association hid the effects of the affiliation from its members. Plaintiffs failed to demonstrate how this evidence constitutes the good cause required to permit them to amend the scheduling order to add a new constructive fraud claim.

### 2. Plaintiffs failed to identify any purported new evidence with specificity.

To the extent that Plaintiffs did identify any new evidence, they did not do so with the specificity required by Rule 16(b)(4), and the Magistrate Judge should have denied their request to amend the scheduling order to assert their new claim. *See Pumpco, Inc.*, 204 F.R.D. at 668–69; *Butler Nat. Serv. Corp.*, 2011 WL 941017, at *3. In their Motion, Plaintiffs say that unidentified "recently produced Association documents" show that the Association denied members access to information—without describing how the Association did so or what the information was—and denied members the right to vote on "the merger with the MVC." Dkt. No. 87 ¶ 9. The first and obvious problem is that Plaintiffs do not point to any specific

document.  The second problem is that these documents, assuming they exist, do not support new facts or claims.  That the Association allegedly denied members the right to vote on the affiliation is already the basis of Plaintiffs' claims in this case.  *See, e.g.*, TAC ¶¶ 60–61, 64–66, 70–71, 74, 81, 86–87.  Thus, Plaintiffs' recently discovered documents could not support a new legal claim, even if they had managed to actually identify any of these documents.  Essentially, these broad generalities do not adequately demonstrate precisely what new information Plaintiffs learned through discovery or how that information is necessary to assert a new claim.  *Pumpco, Inc.*, 204 F.R.D. at 668.

At the hearing on their Motions, Plaintiffs for the first time claimed to have identified another new piece of evidence not previously identified in their moving papers—the Memorandum of Understanding that memorialized the April 24, 2014 Affiliation Agreement ("MOU").  Plaintiffs argued that earlier versions and drafts of the MOU included a provision promising members that the affiliation would not occur unless a majority of the members voted to do so.  But, like before, Plaintiffs failed to point to even a single specific iteration or draft of the MOU.  The Association and the Court have no way of determining what specific statements or revisions to the MOU Plaintiffs believe support their constructive fraud claim.

Moreover, Plaintiffs failed to articulate the relevance of drafts of the MOU to their constructive fraud claim.  The executed MOU does not reference a vote at all.  The MOU states that a survey—not a vote—of the members should be conducted to determine their interest in the affiliation.  *See* Ex. B at 1 ("WHEREAS, the Parties agreed that a survey of Members should be conducted . . . .").  It also states that the survey was conducted and a majority of the responding members responded affirmatively to the affiliation.  *Id.* ("WHEREAS, a majority of the

9

Members who responded to the survey responded affirmatively for the MVCD Exchange Program opportunity . . . ."). And Plaintiffs already knew <u>and alleged</u> that they were told they would be able to vote on the proposal but no formal vote occurred. *See, e.g.*, TAC ¶¶ 60–61, 64, 66, 81, 86–87; *id.* Ex. L. To the extent Plaintiffs intend to use the drafts and revisions to the MOU to show the Association denied them an opportunity to vote, that factual allegation already exists in the TAC. *Id.* To the extent Plaintiffs intend to use the drafts and revisions to the MOU to show that the Association intentionally denied them a vote, those facts would be irrelevant to Plaintiffs' constructive fraud claim—as Plaintiffs themselves admit. *See* Dkt. No. 101 at 7 (explaining in Plaintiffs' Reply that intent to deceive is not an element of constructive fraud). Because constructive fraud does not have an intent requirement—much like Plaintiffs' proposed claim for promissory estoppel, which the Magistrate Judge properly denied them leave to assert—the new evidence of drafts of the MOU simply is not relevant to Plaintiffs' proposed constructive fraud claim. Thus, the Magistrate Judge erred to the extent that he relied on the MOU as the new evidence Plaintiffs discovered that supports their request to add a constructive fraud claim to their fourth amended complaint.

### 3. Plaintiffs did not properly seek leave to amend under Rule 15.

Plaintiffs sought to amend the Scheduling Order under Rule 16(b)(4) to permit them to seek leave to amend their TAC after the deadline to do so had expired. They did not move under Rule 15 for leave to amend their TAC or attach a proposed amended pleading as required by D.C.COLO.LCivR 15.1(b). *See* Dkt. No. 101 at 2 n.1 (explaining that Plaintiffs will separately seek leave to amend under Rule 15). At the hearing, Magistrate Judge Gallagher noted that because the standard under Rule 15 is lower than that under Rule 16(b)(4), Plaintiffs need not

file a motion under Rule 15 seeking leave to amend. However, Plaintiffs' failure to identify their supposed new evidence with specificity, combined with the lack of a proposed amended pleading, denies the Association the notice it is entitled to under the Rules and the ability to oppose Plaintiffs' proposed amendment. Without a proposed amended pleading to show the Association how the purported new evidence supports Plaintiffs' new constructive fraud claim, the Association and the Court are left to guess whether this new evidence really could support a plausible claim for relief. *See Sayed v. Broman*, 638 F. App'x 698, 701 (10th Cir. 2016) (formally moving to amend and including a proposed amended complaint "would have aided the district court greatly in determining whether [the plaintiff] could state a plausible claim"). And as described above, based on Plaintiffs' arguments and briefing, it does not. Thus, the Magistrate Judge unintentionally has deprived the Association of the ability to determine whether Plaintiffs' new evidence actually demonstrates the good cause required to permit Plaintiffs to amend their complaint and add a new claim after the expiration of the deadline to do so.

## CONCLUSION

For all of the foregoing reasons, the Association respectfully requests that the Court overrule the Order and deny the part of Plaintiffs' motion to amend the Scheduling Order allowing them to amend their Third Amended Complaint to add a new claim for constructive fraud.

Respectfully submitted this 1st day of March, 2017.

/s/ Daniel F. Shea
**Daniel F. Shea**
**Jessica Black Livingston**
HOGAN LOVELLS US LLP
1601 Wewatta Street, Suite 900
Denver, Colorado 80202
Telephone: (303) 899-7300
FAX: (303) 899-7333
E-mail: dan.shea@hoganlovells.com
E-mail:jessica.livingston@hoganlovells.com

*Attorneys for Defendant Aspen Highlands Condominium Association*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 1, 2017, I electronically filed the foregoing **DEFENDANT ASPEN HIGHLANDS CONDOMINIUM ASSOCIATION'S OBJECTION TO ORDER REGARDING PLAINTIFFS' MOTION TO STAY CASE (ECF #89) AND ORDER REGARDING PLAINTIFFS' MOTION TO MODIFY SCHEDULING ORDER (ECF #87)** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| **Michael J. Reiser**<br>Law Office of Michael J. Reiser<br>961 Ygnacio Valley Road<br>Walnut Creek, CA 94596<br>reiserlaw@gmail.com<br><br>**Matthew C. Ferguson**<br>The Matthew C. Ferguson Law Firm, P.C.<br>119 South Spring, Suite 201<br>Aspen, Colorado 81611<br>matt@matthewfergusonlaw.com<br><br>**Michael L. Schrag**<br>Gibbs Law Group LLP<br>1 Kaiser Plaza, Suite 1125<br>Oakland, CA 94612<br>mls@classlawgroup.com<br><br>**Tyler R. Meade**<br>The Meade Firm P.C.<br>1816 Fifth Street<br>Berkeley, CA 94710<br>tyler@meadefirm.com<br><br>*Attorneys for Plaintiffs* | **Naomi G. Beer**<br>1200 17th Street, Suite 2400<br>Denver, Colorado 80202<br>Phone: (303) 572-6500<br>Fax: (303) 572-6540<br>BeerN@gtlaw.com<br><br>**Ian S. Marx**<br>**Philip R. Sellinger**<br>GREENBERG TRAURIG, LLP<br>500 Campus Drive, Suite 400<br>Florham Park, New Jersey 07932<br>Phone: (973) 360-7900<br>Fax: (973) 301-8410<br>MarxI@gtlaw.com<br>SellingerP@gtlaw.com<br><br>**Attorneys for Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., Ritz-Carlton Management Company, LLC, Cobalt Travel Company, LLC and Lion & Crown Travel Company, LLC** |

*/s/ Daniel F. Shea*
Daniel F. Shea