IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-01301-PAB

RCHFU, LLC, et al.,

     Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al.,

     Defendants.

---

## DEFENDANT ASPEN HIGHLANDS CONDOMINIUM ASSOCIATION'S MOTION TO DISMISS PLAINTIFFS' FIFTH AMENDED COMPLAINT

---

     Pursuant to Rules 8(a) and 12(b)(6) of the Federal Rule of Civil Procedure, Defendant Aspen Highlands Condominium Association, Inc. ("Association") respectfully moves the Court to dismiss Plaintiffs' Fifth Amended Complaint ("FAC") against the Association.

## I.  INTRODUCTION AND BACKGROUND

     This lawsuit was brought by Plaintiffs who are upset that other members of the Ritz-Carlton Club, Aspen Highlands ("Club"), who own their interests in fee simple, have the choice to trade one of their weeks at the Aspen Highlands with the Marriott Vacation Club ("MVC"), thereby allowing members of an allegedly lesser-status, non-luxury vacation club to frequent the Aspen Highlands location.  Plaintiffs are owners of about 217 of the 876 deeded 1/12 fractional ownership interests at the Ritz-Carlton Club in Aspen Highlands, located in Aspen, Colorado ("Plaintiffs").  The Association is a Colorado nonprofit corporation organized to manage the condominium consistent with the applicable governing documents, including the Declaration of Condominium for Aspen Highlands Condominiums ("Declaration") and the Ritz-Carlton Club

1

Membership Program Affiliation Agreement ("Affiliation Agreement").  FAC ¶¶ 16, 21–23, 39.

In 2012, Marriott proposed an expansive, unrestricted affiliation between the Club and Marriott Vacations Worldwide Corporation's ("MVW") points-based timeshare program, which would have allowed, among other things, MVW's members to access the Aspen Highlands in competition with Club member for space available and exchange time periods.  *See, e.g.*, FAC, Ex. G. at 1; *id.* ¶¶ 50–61.  In April 2014, after negotiating with Marriott and conducting a survey of its members, the Association announced it had arranged with the Marriott entity that managed Aspen Highlands for members of the Club to trade a week at Aspen Highlands for a week elsewhere with a member of the MVC.  *Id.* ¶ 82.  The Association explained that the "opportunity is totally optional and voluntary."  *Id.*, Ex. P, at 2.

Oddly, Plaintiffs, who have attached numerous documents to their FAC, have failed to attach the April 2014 Memorandum of Understanding that formalized the trading program that they allege caused them harm.  But we know from other exhibits attached to the FAC that the MOU, in addition to allowing Club members voluntarily to trade a week with a MVC member, precluded Marriott from allowing MVC members to use space available at the Club.  *See* FAC, Ex. G at 1 (questioning "whether Aspen Highlands Members will be competing for space available as well as exchange time periods" with MVC members) and Ex. L at 1 (discussing Marriott's use of unsold inventory and Club members' potential competition with MVC members for available space), Ex. K at 5 (discussing Marriott's right to use unreserved units, reservation procedures, and Marriott's use of space available units) and Ex. N (discussing Marriott's use of Tourist Accommodation Units) Ex. P (discussing final agreement of "one out– one in concept" and result that "there will be no additional visitors to the Aspen Highlands").

2

Nevertheless, and reminding us of the old adage that "no good deed goes unpunished," Plaintiffs claim that the Association breached its fiduciary duty to the Club members, engaged in constructive fraud, and aided and abetted and conspired with the Marriott Defendants in their separately alleged breaches of fiduciary duty. FAC ¶¶ 87–116. As a threshold matter, Plaintiffs' breach-of-fiduciary-duty and constructive-fraud claims are barred by the economic loss rule. Because both claims depend on the Association's alleged breach of its fiduciary duty, which is contractually defined in the Declaration, this rule bars Plaintiffs' tort-based claims.

Even if the breach-of-fiduciary duty and constructive-fraud claims could be maintained, however, both are without merit because the business judgment rule insulates the Association's actions and Plaintiffs allege no facts showing a conflict of interest or bad faith on the part of the directors of the Association. The Association merely provided all Club members, including Plaintiffs, with the option to exercise their fee-simple rights by trading a week with a MVC member. Moreover, because neither the Declaration nor any other operative document requires a vote of members preceding such action, the Association cannot have defrauded the Plaintiffs by failing to conduct a vote.

Lastly, Plaintiffs allege claims of conspiracy and aiding and abetting other Defendants' breaches of fiduciary duties. FAC ¶¶ 104–116. But Plaintiffs fail to allege that the Association knowingly participated in a third-party's breach of its fiduciary duties, and they fail to allege any underlying breach of fiduciary duty by the Marriott Defendants or any plausible participation in any such Defendant's breach of fiduciary duty. Thus, the FAC must be dismissed.

## II.  ARGUMENT

### A.    Standard of Review

The purpose of a motion to dismiss is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  A complaint must be dismissed where, as here, it fails to state a claim upon which relief can be granted.  Under Rules 8(a)(2) and 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  The "[t]wo working principles" underlying this standard are:  (1) "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" and (2) "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" such that the complaint must be dismissed.  *Id.* at 678–79 (quoting Fed. R. Civ. P. 8(a)(2)).  A complaint containing "labels and conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do[es] not suffice."  *Id.* at 678 (citation omitted).  If the factual allegations are so general that they "do not permit the court to infer more than the mere possibility of misconduct," the plaintiff "has not nudged [its] claims . . . across the line from conceivable to plausible."  *Id.* at 679–80 (internal quotations and citations omitted); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[1]

---

[1] This case was originally filed in District Court for Pitkin County, Colorado but was removed to this Court based upon the Class Action Fairness Act of 2005.  28 U.S.C. §§ 1332, 1446, 1453 ("CAFA").  Because this case was removed on the basis of diversity jurisdiction, Colorado law remains the substantive applicable law.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938).

**B.    The economic loss rule bars Plaintiffs' breach-of-fiduciary-duty and constructive-fraud claims.**

Plaintiffs' breach-of-fiduciary-duty and constructive-fraud claims must be dismissed because they are barred by the economic loss rule.  Plaintiffs cannot maintain a breach-of-fiduciary-duty claim or a constructive-fraud claim[2]—which Plaintiffs premise on the Association's alleged breach of its fiduciary duty—where the Association's duties are spelled out in the Declaration that Plaintiffs attach to their FAC.[3]  "A breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie."  *S K Peightal Eng'rs, LTD v. Mid Valley Real Estate Sols. V, LLC*, 342 P.3d 868, 872 (Colo. 2015) (citation omitted); *see also Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000).  Here, Plaintiffs' claim rests on the Association's Board's alleged breach of its contractual fiduciary duty under the Declaration:  this duty requires the Board to "represent the interests of" the owners "in a fair and just manner on all matters that may affect any or all" owners and holds the Board to "the standards of good faith and reasonableness."  Declaration ¶ 6.8.  Plaintiffs say the Association breached this duty by failing to enforce Section 19.8 of the Declaration, which prohibits timesharing of individual units, FAC ¶¶ 81, 89–90, and failing to hold a vote of the Members and substituting a survey for the promised majority vote.  FAC

---

[2] The economic loss rule applies to claims for constructive fraud.  *See, e.g.*, *Van Rees v. Unleaded Software, Inc.*, 373 P.3d 603, 606 (Colo. 2016) (analyzing the application of the economic loss rule to claim for constructive fraud, as well as other claims).

[3] The economic loss rule applies to "third party contract beneficiaries who may have a cause of action for breach of contractual duties."  *S K Peightal Eng'rs, LTD*, 342 P.3d at 872 (quoting *Town of Alma*, 10 P.3d at 1264 n.12).  Plaintiffs are third party beneficiaries of the Declaration.  "A person who is not a party to an express contract may bring an action on the contract if the parties to the agreement intended to benefit the nonparty and if the benefit claimed is a direct and not merely an incidental benefit of the contract."  *Colo. Homes, Ltd. v. Loerch-Wilson*, 43 P.3d 718, 724 (Colo. App. 2001).  The Plaintiffs, as HOA members, are the express beneficiaries of the Declaration requiring the Association to represent members' interests.  Declaration ¶ 6.8.

¶¶ 68–77, 81–85.  Because Plaintiffs' claims, both premised on a breach of fiduciary duty, flow from the contractual duty established in Section 6.8, Plaintiffs breach-of-fiduciary duty and constructive-fraud claims are barred by the economic loss rule.  *See S K Peightal Eng'rs, LTD*, 342 P.3d at 872; *Town of Alma*, 10 P.3d at 1264.

To be sure, if "the duty breached arises independently of any contract duties between the parties, then a tort action premised on that breach remains viable." *S K Peightal Eng'rs, LTD*, 342 P.3d at 872 (internal quotation marks omitted).  And under Colorado law, homeowners associations have a duty to enforce restrictive covenants for the benefit of homeowners.  *Colo. Homes, Ltd. v. Loerch-Wilson*, 43 P.3d 718, 721 (Colo. App. 2001).  However, "to be considered independent of contract, a duty . . . must satisfy two conditions: [f]irst, the duty must arise from a source other than the relevant contract; and [s]econd, the duty must not be a duty also imposed by the contract." *Pernick v. Computershare Trust Co., Inc.*, 136 F. Supp. 3d 1247, 1270 (D. Colo. 2015) (Brimmer, J.) (internal quotation marks omitted) (quoting *Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.*, 573 F.3d 947, 962 (10th Cir. 2009)); *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 74 (Colo. 2004) ("If we conclude that the duty of care . . . was memorialized in the contracts, it follows that the plaintiff has not shown any duty independent of the interrelated contracts and the economic loss rule bars the tort claim and holds the parties to the contracts' terms."); *Casey v. Colo. Higher Educ. Ins. Benefits All. Trust*, 310 P.3d 196, 202 (Colo. App. 2012), *as modified on denial of reh'g* (Sept. 13, 2012).  Thus, "even a duty separately recognized under tort law <u>is not independent</u> if it is also imposed under the parties' contract." *A Good Time Rental, LLC v. First Am. Title Agency, Inc.*, 259 P.3d 534, 537 (Colo. App. 2011) (emphasis added).

Here, the duty to enforce covenants for the benefit of homeowners is memorialized in the Declaration, with Section 6.8 requiring the Board to "represent the interests of" the owners "in a fair and just manner on all matters that may affect any or all" owners and holding the Board to "the standards of good faith and reasonableness" in upholding its duties. Section 7.8.1 also grants the Association, as well as aggrieved owners, the right to enforce the provisions and requirements in the Declaration and bylaws. Thus, under the terms of the Declaration, the Association must enforce provisions and fairly represent owners on "all matters" that affect the owners. Because this duty is memorialized in the Declaration, it cannot constitute an independent duty, and Plaintiffs claims are barred by the economic loss rule. *See Pernick*, 136 F. Supp. 3d at 1270.

We are aware that the Colorado Court of Appeals, in *Colorado Homes, Ltd. v. Loerch-Wilson*, 43 P.3d at 721, rejected the defendant condominium association's argument that the economic loss rule precluded plaintiffs from maintaining a tort claim against the association. That case is, however, readily distinguishable—the defendant association does not appear to have advanced any argument that the controlling declaration or contract explicitly spelled out the defendant's fiduciary duties because there is no discussion by the Court of Appeals regarding any such provision of the declaration. *See id.* The Court of Appeals thus questioned whether the defendant association had an independent duty imposed by law—one not explicitly memorialized in the governing contract—and, finding one, concluded the economic loss rule did not apply. That is not the situation here, where the Declaration requires the Association to act not only "in a fair and just manner" but also in accordance "with standards of good faith and reasonableness," essentially parroting the fiduciary duties of care and loyalty imposed by law in

Colorado and other states.

**C.    The business judgment rule and other factors would require dismissal of Plaintiffs' breach-of-fiduciary-duty and constructive-fraud claims in any event.**

The business judgment rule immunizes the acts of directors of non-profit corporations like the Association when those acts are "within the powers of the corporation and within the exercise of an honest business judgment . . . ." *Rywalt v. Writer Corp.*, 526 P.2d 316, 317 (Colo. App. 1974); *Kim*, 179 P.3d at 95 (in context of liability of individual directors, holding that "[u]nder the business judgment rule, a director's exercise of judgment will not subject that director to liability when exercised in good faith"). Courts refuse to "interfere with or regulate" actions undertaken "in the reasonable and honest exercise of [a director's or board's] judgment and duties." *Rywalt*, 526 P.2d at 317. And courts have regularly applied the business judgment rule to decisions by condominium associations. In 2001, the Colorado Court of Appeals held that the business judgment rule protects decisions by a homeowners' association when the decision is made in good faith and is not arbitrary. *Colo. Homes*, 43 P.3d at 724 (citing *Rywalt*, 526 P.2d 316); *see also Chimney Rock Pub. Power Dist. v. Tri-State Generation & Transmission Ass'n, Inc.*, No. 10-cv-02349-WJM-KMT, 2014 WL 788057, at *6 (D. Colo. Feb. 27, 2014).[4]

**1.    Breach-of-fiduciary-duty claim**

Plaintiffs allege that the Association breached its fiduciary duties to Plaintiffs by (1) "favoring the interests of the Defendants over the interests of the Plaintiffs" by giving Club members an opportunity to trade a week with a member of the MVC; and (2) by "failing to

---

[4] Courts in other states apply the business judgment rule to actions by condominium associations. S*ee Oberbillig v. West Grand Towers Condo. Ass'n*, 807 N.W.2d 143, 154–55 (Iowa 2011) (collecting cases from California, Connecticut, New Jersey, New York, North Dakota, and Washington); *Happ v. Creek Pointe Homeowner's Ass'n*, 717 S.E.2d 401, 407 (N.C. App. 2011).

enforce" the Declaration.  FAC ¶¶ 81, 89.  To succeed in their claim, they must prove: "1) the existence of a fiduciary relationship between plaintiff and defendant; 2) defendant's breach of the fiduciary duty; and 3) damages as a result of the breach."  *F.D.I.C. v. Refco Grp., Ltd.*, 989 F. Supp. 1052, 1080 (D. Colo. 1997).  Plaintiffs' claim must be dismissed because they have failed to allege facts that rebut the business judgment rule that protects the Association's actions here, and therefore Plaintiffs cannot establish the second element of their claim—the Association's breach of a fiduciary duty.

For claims to survive the business judgment rule's immunity, a "[p]laintiff must plead particularized facts sufficient to raise (1) a reason to doubt the action was taken honestly and in good faith or (2) a reason to doubt that the board was adequately informed in making the decision."  *Swanson v. Weil*, No. 11-cv-02142-WYD-KLM, 2012 WL 4442795, at *5 (D. Colo. Sept. 26, 2012) (quoting *In Re JP Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 824 (Del. Ch. 2005)); *see also In re Stoico Restaurant Grp., Inc.*, 2000 WL 1146122, at *2 (D. Kan. July 20, 2000) ("To rebut the presumptions that defendants are protected by the business judgment rule, plaintiff must allege facts which create a reasonable doubt as to defendants' good faith motive.").  The burden is on Plaintiffs to "set[] forth facts to rebut the presumption that the board acted reasonably and in the [Association's] best interest."  *Ryskamp ex rel. Boulder Growth & Income Fund v. Looney*, 10-cv-00842-WJM-KLM, 2011 WL 3861437, at *3 (D. Colo. 2011) (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

While summarily stating that the Association, a non-profit organization, "favor[ed] the interests of Defendants," Plaintiffs do not in the first instance set forth any facts indicating that the Association benefited from the "trade-a-week" program or that any of its directors had a

conflict of interest or acted in bad faith.  As shown by the exhibits referenced above, *see supra* p. 2, the Association also negotiated a significant concession from Marriott, precluding it from allowing MVC members to use available space at the Club, despite the fact that the Affiliation Agreement explicitly states that the Association shall not "be entitled to participate in or consent to the Program Manager's decision" to elect to affiliate with the MVW program.  FAC ¶ 41; *id.* Ex. B, ¶ 7.2(a).  This completely negates any possible inference that the Association favored any of the Marriott defendants.

Nor have Plaintiffs alleged facts showing that the Association's decision to allow Club members to exercise their fee-simple ownership rights was a breach of its fiduciary duty. Arranging with the Marriott entity that managed Aspen Highlands to allow Club members to participate in the voluntary trading program simply allows Club members to do what each fee-simple owner of property in Colorado can do—trade or rent the property that he or she owns.

Plaintiffs rely in vain on Section 19.8 of the Declaration.  That section prohibits any Units owned by Club members from being "used for the operation of a timesharing, fraction-sharing, interval ownership, private residence club, membership program, vacation club, exchange network or system or similar program," other than the Plan of Fractional Ownership established by Article 23 of the Declaration.  Declaration ¶ 19.8.  This plainly means that no one can buy an interest at Aspen Highlands and then subdivide the ownership further, nothing more.

This unambiguous interpretation is made even more clear when one reads Section 19.8 in connection with the other provisions in the Declaration:  (1) "Tourist Accommodation Units may be subject to further subdivision into Fractional Ownership Interests" under Article 23, but "[n]o additional condominium units may be established on the Property <u>by subdivision of existing</u>

units," *id.* § 1.6; and (2) "[a] purchaser may acquire more than one Fractional Ownership Interest and thereafter <u>convey or encumber</u> each Fractional Ownership Interest," but "[i]n no event, however, shall a[n Owner of a Fractional Ownership Interest] convey or encumber less than a Fractional Ownership Interest, <u>or attempt to subdivide a Fractional Ownership Interest into lesser interests</u>," *id.* § 23.4. *See Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1154 (10th Cir. 2008) (under Colorado law, "[t]o determine the meaning of a contract, courts must examin[e] the entire instrument, and not . . . view[ ] clauses or phrases in isolation") (internal quotation marks omitted); *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 697 (Colo. 2009) ("The court should interpret a contract in its entirety with the end in view of seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless.") (internal quotation marks omitted).

The Declaration does not define timesharing, but Colorado statutes define a "time share estate" as "an estate for years" or "[a]n undivided interest in a present estate in fee simple in a unit" where "title to a time share unit circulates among the interval owners in accordance with a fixed schedule" or the "exclusive right to possession and occupancy of the unit during an annually recurring period of time . . . ." Colo. Rev. Stat. § 38-33-110 (defining time sharing for purposes of Colorado Common Interest Ownership Act, *see, e.g.*, §§ 38-33.3-209.7, 38-33.3-308, 38-33.3-310, 38-33.3-316.5). Under this definition, Section 19.8 of the Declaration means that no one can buy an interest at Aspen Highlands and then subdivide the ownership and operate his or her own timesharing program with respect to his or her unit. It does not mean that a Club member cannot trade a week or other part of his or her 1/12 interest with another person, even if the trade happens to be for a week at a different club in which that other person happens to own a

timeshare interest.  And Plaintiffs point to no other provision in the Declaration that allegedly prohibits a Club member from freely utilizing his or her 1/12 interest.  There is, for example, no prohibition in the Declaration or any other documents attached to the FAC against trading or renting one's interest or gifting it to a family member, friend, co-worker, or charity.

Accordingly, the voluntary arrangement between Aspen Highlands and the MVW program does not violate Section 19.8 of the Declaration, and Plaintiffs have failed to allege any facts showing that the Association breached its fiduciary duties by allowing Club members one more way to use their fee simple ownership.  Indeed, had the Association exercised its judgment to resist any affiliation with the MVC, the group of the approximately 600 Club members who are not Plaintiffs may have been able to assert claims against the Association alleging that the Association deprived them of their common-law property rights given that the Declaration contains no restrictive covenant prohibiting trading, renting, or gifting of members' interests. *See, e.g.*, *Estates at Desert Ridge Trails Homeowners' Ass'n v. Vazquez*, 300 P.3d 736, 744 (N.M. Ct. App. 2013) (holding that absent specific authorization in the association's declaration, the "association has no authority to restrict the use or occupancy of, or behavior within, individually owned lots or units" and thus concluding that it could not prohibit rentals for a period of thirty days or less) (internal quotations and citations omitted); *La Cholla Hills Homeowners Ass'n v. Foard*, No. 2 CA-CV 2007-0015, 2007 WL 5556994, at *2 (Az. Ct. App. Oct. 9, 2007) (explaining that "[i]f the [Declaration] do[es] not provide for the adoption of a particular restriction or requirement, such restriction or requirement is invalid.").

Plaintiffs also argue that the Association breached its fiduciary duties by "unilaterally decid[ing]" to allow the voluntary trading program without holding a vote of the members of the

Association and by substituting a survey for the promised majority vote.  FAC ¶¶ 68–77, 81–85.
But whether the Marriott entities or the Association's Board at some point believed it was wise
to poll the Club members, Plaintiffs point to no provision of the Declaration, bylaws, or any
other governing document that requires the Association to hold a vote before the manager could
affiliate with another Club.

The Declaration explicitly requires a vote by all members for certain decision, "[t]o the
extent a matter is required by this Declaration, the bylaws of the Association or the [Colorado
Common Interest Ownership] Act to be submitted to a vote of the members of the Association."
Declaration ¶ 6.9.  But unlike certain provisions in the Declaration that explicitly permit or
require a vote by members of the Association,[5] nothing requires or even mentions a vote by all
members of the Association in connection with the decision to affiliate with the MVC program.
And for its part, the Affiliation Agreement explicitly states that the Association has no right to
"participate in or consent to" any affiliation.  FAC, Ex. B, ¶ 7.2(a).  Courts have concluded that a
condominium association is protected by the business judgment rule when exercising its
decision-making authority without a membership vote when no such vote is required.  *See*
*Oberbillig*, 807 N.W.2d at 155 (holding "the [business judgment] rule applies to the board's
exercise of its interpretive authority over the bylaw in this case to proceed with the garage repairs
without a membership vote").

Ultimately, Plaintiffs have not shown that any provision of the Declaration prohibits a
Club member from trading all or part of that interest, even with a person who happens to own an
interest in a timesharing program.  Because the voluntary trading program does not violate the

---

[5] *See e.g.*, Declaration ¶¶ 6.5, 7.1.1, 7.4, 8.6.3, 17.1, 17.2, 18.4, 18.7, and 22.3.

terms of the Declaration and no facts have been alleged that would defeat the application of the business judgment rule, Plaintiffs' breach-of-fiduciary-duty claim would have to dismissed if it survived the application of the economic loss rule.

### 2.     Constructive-fraud claim

Plaintiffs allege that the Association committed constructive fraud by breaching its fiduciary duty "to act honestly, with full disclosure and loyalty" through various "misleading" statements and disclosures regarding whether the proposed affiliation violated the Declaration and whether a majority vote was either required or would be held.  FAC ¶¶ 97–98.  Plaintiffs allege that they relied on these statements and forewent the opportunity to "prevent the affiliation" by "demanding the membership vote" or "instituting appropriate legal proceedings," and that the Association's alleged misrepresentations and non-disclosures cause them harm, including "the destruction of the value in their fractional units."  FAC ¶¶ 99–102.

Constructive fraud is "a breach of duty that the law declares fraudulent because of its tendency to deceive, to violate confidence, or to injure the public interests."  *John R. Behrmann Revocable Trust v. Szaloczi*, 74 P.3d 371, 375 (Colo. App. 2002), *overturned on other grounds*, 90 P.3d 835 (Colo. 2004) (en banc).  A claim for constructive fraud requires proof of:  "(1) the existence of a duty due to a relationship between the parties; (2) a violation of the duty by making deceptive material representations of past or existing facts or remaining silent when a duty to speak exists; (3) reliance thereon by the complaining party; (4) injury to the complaining party proximately caused thereby; and (5) the gaining of an advantage by the party to be charged at the expense of the complaining party."  *Barnett v. Elite Props. of Am., Inc.*, 252 P.3d 14, 24 (Colo. App. 2010) (citing *Trykto v. Hubbell, Inc.*, 28 F.3d 715, 728 (7th Cir. 1994)); *Snyder v.*

*ACORD Corp.*, No. 1:14-cv-01736-JLK, 2016 WL 192270, at *11 (D. Colo. Jan. 15, 2016). Plaintiffs' constructive fraud claim must be dismissed because Plaintiffs have failed to allege sufficient facts to support the second, third, and fourth elements of their claim.

As to the second element, for the reasons discussed above, the business judgment rule immunizes the Association's conduct here, and Plaintiffs thus have failed to allege any violation or breach of the Association's fiduciary duties. *See supra* pp. 8–13. Absent a breach of duty, proof of deceptive statements alone is unavailing and does not satisfy the second element of a constructive-fraud claim. *See Barnett*, 252 P.3d at 24 (requiring "<u>violation of the duty</u> by making deceptive material representation . . . .") (emphasis added).

Nonetheless, Plaintiffs fail to allege facts showing that the Association acted deceptively by failing to disclose four "material facts" to its Members regarding the affiliation. FAC ¶ 98; *see also id.* ¶¶ 74, 76, 85. First, Plaintiffs allege that the Association did not disclose that the proposed affiliation "violated multiple provisions of the Club Declaration" by not providing to the Members the memorandum prepared by its attorney Philip Gosch in 2012. *Id.* ¶ 98. Even though the Association did not circulate the privileged analysis completed by its attorney while the Association was negotiating with Marriott, it provided all Members with numerous communications, including a letter from Mr. Gosch to Marriott that conveyed essentially the same information. *See id.*, Ex. G at 2; Ex. L at 1–2; Ex. N. Second, Plaintiffs also allege that the Association failed to tell them that the governing documents require an affirmative vote of at least a majority of the members. *Id.* ¶ 98. But as discussed above, *see supra* pp. 12–13, nothing in the Declaration or any other governing document requires or even mentions a vote by all members of the Association in connection with a decision by the manager to affiliate with

another club; to the contrary, the Affiliation Agreement gives the manager unfettered discretion to affiliate with any other club Member Club or Associated Club of the Membership Program. *See* FAC, Ex B. at 13.  Third and fourth, Plaintiffs allege that the Association failed to disclose that it "substituted a misleading survey" for the vote and it "secretly entered into an Affiliation Agreement."  *Id.* ¶¶ 98.  Plaintiffs do not set forth facts to show that the survey was "misleading" and, as discussed above, the governing documents do not require that the Members vote on an affiliation before it can occur or give the Association itself any veto power over the manager's decision to affiliate with another club.  *See id.*, Ex B. at 13 (Affiliation Agreement denies Association the right to "be entitled to participate in or consent to the Program Manager's decision" to affiliate).  Thus, none of the four alleged "misrepresentations" or "non-disclosures" rises to the level of an intentional, bad-faith decision that would satisfy the second prong of the test, even if Plaintiffs had alleged facts supporting a breach of fiduciary duty and defeating application of the business judgment rule.

As to the third element of their constructive-fraud claim, Plaintiffs have not alleged facts showing that they justifiably relied on the Association's allegedly deceptive and misleading statements.  Plaintiffs say that they relied on the Associations' statement and forewent their opportunity to "take[] steps to prevent the affiliation" by demanding a vote or seeking injunctive relief.  *Id.* ¶ 99.  However, as described above, the Affiliation Agreement explicitly states that "[n]either the Developer, Member Association, nor Club Manager shall be entitled to participate in or consent to the Program Manager's decision" to elect to affiliate with the membership program.  *Id.* ¶ 41; *id.* Ex. B, ¶ 7.2(a).  Because the Association did not have the authority to preclude the manager from affiliating with the MVC, Plaintiffs could not have "taken steps to

prevent the affiliation" by demanding a vote or suing the Association. *See id.* ¶ 99.

As to the fourth element of their constructive-fraud claim, Plaintiffs fail to allege plausible facts to show their injury—the diminution in value of their units—was proximately caused by the Association's alleged misleading or deceptive statements. To be sure, Plaintiffs allege that as a result of the affiliation, the value of their units declined. *See, e.g., id.* ¶¶ 10, 86, 94. But nowhere do Plaintiffs adduce any facts to show any causal link between the Association's allegedly misleading statements and the diminution in value of their units, particularly where they have alleged for more than a year—in five complaints—that it was the affiliation itself that caused the diminution in the value of their units. Plaintiffs must plausibly allege that they suffered injury "proximately caused" by their reliance on the Association's "violation of [its] duty by making deceptive material representations." *See Barnett*, 252 P.3d at 24; *Snyder*, 2016 WL 192270, at *11. Instead, they simply allege in a conclusory manner that "[a]s a result of the tendency of Defendants' misrepresentations and non-disclosures of the material facts described above and herein to deceive, violate confidence and injury public interests, Plaintiffs suffered damages, including the destruction of the value of their fractional units, in an amount to be proven at trial." *See* FAC ¶ 102. This threadbare, conclusory statement, without even considering its discordance with the causation allegations regarding the breach-of-fiduciary-duty claim, does not suffice to state a claim for constructive fraud. *Iqbal*, 556 U.S. at 678.

D.     **Plaintiffs fail to state an aiding-and-abetting claim against the Association.**

Plaintiffs cannot state a claim against the Association for aiding and abetting a breach of fiduciary duty on the part of the Marriott Defendants. To state a claim for aiding and abetting,

Plaintiffs must allege that:  (1) a third party breached a fiduciary duty owed to the Plaintiffs; (2) the Association knowingly participated in that breach; and (3) the Association's aiding and abetting of the breach was a cause of the Plaintiffs' damages.  *City P'ship Co. v. Lehman Bros., Inc.*, 344 F. Supp. 2d 1241, 1246 (D. Colo. 2004); *see also Holmes v. Young*, 885 P.2d 305, 308–09 (Colo. App. 1994).  Here, Plaintiffs fail to allege the second and third elements:  that the Association knowingly participated in a third-party's breach of its fiduciary duties to Plaintiffs.

The Association cannot be liable for aiding and abetting its own alleged breach of fiduciary duty.  *See City P'ship Co.*, 344 F. Supp. 2d at 1246; Restatement (Second) of Torts §§ 876–77 (1979) (aiding and abetting is a cause of action for acting in concert with, or directing the fraudulent conduct of another).  Neither can the Association be liable for aiding and abetting another Defendant's breach of fiduciary duty because Plaintiffs have failed to identify any facts to support such an allegation.  Other than listing the Association as a party to the Management Agreement and the Affiliation Agreement, *see* FAC ¶¶ 26, 39, neither of which agreements Plaintiffs even allege were negotiated by the Association and the latter of which gives the manager unfettered discretion to affiliate with any other club, as we have discussed, Plaintiffs provide no factual support for their contention that the Association aided and abetted any other Defendant's breach of its fiduciary duties to the Plaintiffs.

To the contrary, Plaintiffs provide only conclusory allegations that "[e]ach and all of the Defendants . . . materially assisted, aided, abetted and/or conspired with one or more other Defendants" and that Defendants MVW, RC Management, and Cobalt, "pursuant to an agreement they made with Defendant Association," affiliated the Club with the MVC.  *Id.* ¶¶ 46, 83–84.  And in their claim for relief, Plaintiffs allege only that "Defendants" generally or

Defendants MVW, MVCI, and L&C aided and abetted breaches of fiduciary duties. *Id.* ¶¶ 105, 108–10. These general, conclusory allegations are insufficient to state a cause of action against the Association for aiding and abetting a breach of fiduciary duty. *Iqbal*, 556 U.S. at 678–79. Plaintiffs failed to allege facts to show the second and third elements of a claim for aiding and abetting a breach of fiduciary duty, and their claim must be dismissed.

**E.    Plaintiffs fail to state a claim against the Association for conspiracy.**

Plaintiffs fail to state a claim against the Association for conspiracy because they have failed to allege any underlying wrongdoing or breach of fiduciary duty. To state a claim for conspiracy, Plaintiffs must allege: (1) an object to be accomplished; (2) an agreement between two or more persons on a course of action to accomplish that object; (3) that in furtherance of that course of action, one or more unlawful acts were performed to accomplish a lawful or unlawful goal, or one or more lawful acts which were performed to accomplish an unlawful goal; and; (4) damages to the plaintiff as a proximate result. *Double Oak Constr., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140, 146 (Colo. App. 2003); *see also Gen. Steel Domestic Sales, LLC v. Chumley*, No. 10-cv-01398, 2011 WL 2415167, at *5 (D. Colo. June 10, 2011) (Brimmer, J.) (a claim for conspiracy must allege that there are two or more persons, an object to be accomplished, and a meeting of the minds on the object or course of action). Here, for the reasons discussed above, Plaintiffs have failed to allege the third element: an underlying breach of fiduciary duty by the Association or any plausible participation by the Association in another Defendants' breach of fiduciary duty.

It is indeed incomprehensible how the "trade a week" program could be deemed the product of a conspiracy. In the first instance, it was the product of extensive negotiations

between the Association and Marriott in the face of an Affiliation Agreement that gave the manager the unfettered right to affiliate with any other club.  Second and even more tellingly, as discussed above, the Association obtained a huge concession from Marriott, precluding it from allowing MVC members to use available space at the Club.  *See supra* p. 2.

Plaintiffs thus have failed to allege facts to support the third element of a claim for conspiracy, and their claim must be dismissed.

### III.   CONCLUSION

For all of the foregoing reasons, the Association respectfully requests that the Court dismiss Plaintiffs' claims against the Association with prejudice.

Respectfully submitted this 14th day of April, 2017.

/s/ Daniel F. Shea
**Daniel F. Shea**
**Jessica Black Livingston**
HOGAN LOVELLS US LLP
1601 Wewatta Street, Suite 900
Denver, Colorado 80202
Telephone: (303) 899-7300
FAX: (303) 899-7333
E-mail: dan.shea@hoganlovells.com
E-mail:jessica.livingston@hoganlovells.com

*Attorneys for Defendant Aspen Highlands*
*Condominium Association*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 14, 2017, I electronically filed the foregoing **DEFENDANT ASPEN HIGHLANDS CONDOMINIUM ASSOCIATION'S MOTION TO DISMISS PLAINTIFFS' FIFTH AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| **Michael J. Reiser**<br>Law Office of Michael J. Reiser<br>961 Ygnacio Valley Road<br>Walnut Creek, CA 94596<br>reiserlaw@gmail.com<br><br>**Matthew C. Ferguson**<br>The Matthew C. Ferguson Law Firm, P.C.<br>119 South Spring, Suite 201<br>Aspen, Colorado 81611<br>matt@matthewfergusonlaw.com<br><br>**Michael L. Schrag**<br>Gibbs Law Group LLP<br>1 Kaiser Plaza, Suite 1125<br>Oakland, CA 94612<br>mls@classlawgroup.com<br><br>**Tyler R. Meade**<br>The Meade Firm P.C.<br>1816 Fifth Street<br>Berkeley, CA 94710<br>tyler@meadefirm.com<br><br>***Attorneys for Plaintiffs*** | **Naomi G. Beer**<br>1200 17th Street, Suite 2400<br>Denver, Colorado 80202<br>Phone: (303) 572-6500<br>Fax: (303) 572-6540<br>BeerN@gtlaw.com<br><br>**Attorneys for Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., Ritz-Carlton Management Company, LLC, Cobalt Travel Company, LLC and Lion & Crown Travel Company, LLC** |

/s/ Daniel F. Shea