**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

Civil Action No.: **1:16-cv-01301-PAB-GPG**

**RCHFU, LLC, *et al*.**

Plaintiffs,

v.

**MARRIOTT VACATIONS WORLDWIDE
CORPORATION, *et al*.**

Defendants.

_____

**PLAINTIFFS' OPPOSITION TO MARRIOTT DEFENDANTS' MOTION TO DISMISS
FIFTH AMENDED COMPLAINT**
_____

## I.    INTRODUCTION

Earlier this year, a federal district court in California held that a complaint with virtually the same pertinent allegations as the Fifth Amended Complaint ("FAC") adequately pled both the existence and breach of fiduciary duties owed by both the Ritz-Carlton Management Company ("RC Management") and Cobalt Travel Company ("Cobalt"). *Reiser v. Marriott Vacations Worldwide Corp.*, 2017 WL 569677 (E.D. Cal. Feb. 13, 2017) (the "*Ritz-Tahoe*" action). While the Marriott Defendants' motion does not even mention this well-reasoned decision, this Court should similarly uphold the FAC's breach of fiduciary duty claims.

Plaintiffs are the owners of 1/12 fractional interests in luxury condominium units at the Ritz-Carlton Club Aspen Highlands ("Ritz-Aspen"). The Ritz-Aspen was developed by Marriott Vacation Club International ("MVCI"), which also owns a far less exclusive timeshare line called the Marriott Vacation Club ("MVC"). When Plaintiffs purchased, they agreed to give almost

complete control over their fractional interests to the Aspen Highlands Condominium Association (the "Association"), which then retained Defendant RC Management to be the "managing agent" of the Ritz-Aspen. The Association and RC Management, in turn, delegated near complete managerial control over the use of Plaintiffs' fractional interests to Cobalt.

Plaintiffs paid in the range of $200,000 to well over $500,000 for each unit and they pay between $12,000 and $16,000 in annual fees, including fees to both RC Management and Cobalt. As owners, they are entitled to use their Ritz-Aspen units for four weeks per year. While they could have paid far less for four weeks of condominium use by participating in a timeshare such as MVC, they chose the Ritz-Aspen based on the Ritz-Carlton luxury brand and its promised exclusivity.

But by 2013, MVCI and its parent company Marriott Vacations Worldwide ("MVW") had decided to abandon the upscale Ritz-Carlton luxury club product, and favor their points-based and much cheaper MVC product. To this end, in 2014, Cobalt, at the urging of the Marriott Defendants, affiliated the Ritz-Aspen with the MVC, meaning that over 400,000 MVC members could use their points to access the Ritz-Aspen for a small fraction of what Plaintiffs paid. The natural result of this affiliation was the decimation of the values of Plaintiffs' fractional interests.

Based on the objections to the affiliation that the boards of the Ritz-Carlton clubs (including the Association) voiced, Defendants were well aware that the proposed affiliation would both depress the value of Plaintiffs' fractional units, and enrich the Marriott Defendants. In addition, the Association's legal counsel informed it (and the Association informed the other Defendants) that the governing documents prohibited the proposed affiliation. In response, the Association and the other Defendants agreed not to affiliate unless a majority of fractional owners *voted* in favor of the affiliation. But Defendants broke this promise in 2014 when Cobalt, acting in

concert with and aided and abetted by the other Defendants, affiliated the Ritz-Aspen without the promised vote. Predictably, those fractional interests now sell for as low as $10,000, while at comparable luxury clubs that preserved their promised exclusivity, fractional interests have maintained their values and have indeed appreciated.

As in *Ritz-Tahoe,* the FAC sets forth dual sources for the fiduciary duty—based on both the high level of control Defendants had over the fractional interests themselves, as well as on agency principles—and then describes how Defendants breached those duties and caused Plaintiffs damages. Because a complaint need do no more than that, Defendants' motion to dismiss should be denied. Defendants completely ignore the allegations of control over Plaintiffs' fractional interests, which are sufficient to sustain the FAC. Moreover, Defendants' agency-based arguments ring hollow given that their own documents concede the agency relationship. Defendants also jump the gun in contesting the existence of fiduciary relationships at the pleading stage because "[t]he existence of the fiduciary relationship is a question of fact for the jury." *Moses v. Diocese of Colorado*, 863 P.2d 310, 322 (Colo. 1993).

But what is most glaring is Defendants' failure to even mention *Ritz-Tahoe*, a case brought by owners of a Ritz-Carlton Club in the Lake Tahoe area based on the *same fiduciary duty allegations, the same governing documents, and the same MVC affiliation as the present case*. In ruling on a motion to dismiss, Judge Morrison England, Jr. found that the plaintiffs had successfully pled a fiduciary duty based on two separate grounds: (1) agency and subagency relationships created with RC Management and Cobalt, and (2) RC Management's control over Plaintiffs' individually deeded property interests. *Ritz-Tahoe* is indistinguishable from the present case; and the same result should follow here.

## II.   STATEMENT OF THE CASE

Plaintiffs, as fractional owners at the Ritz-Aspen, can stay there for four weeks per year. *Id.* at ¶ 3. Owners are also part of the Ritz-Carlton Club Membership Program ("Membership Program"), through which they can reserve stays at the Ritz-Aspen and sister Ritz-Carlton Club resorts. *Id.* at ¶¶ 3-4. Between 2001 and 2013, hundreds of purchasers paid premium prices, averaging over $200,000, with some selling for over $500,000, for their deeded 1/12 fractional interests at the Ritz-Aspen. *Id.* at ¶ 6.

The governing documents grant the Association almost complete control over each Plaintiffs' fractional interests. *Id.* at ¶¶ 22, 23 & Ex. H at ¶ 23.8.[1] In 2001, the Association entered into a "Management Agreement" with RC Management, making RC Management the "managing agent" which would "act on behalf of the Association and its members as the exclusive managing entity and … manage the daily affairs of the Condominium and the [Fractional Ownership Interest] Plan." *Id.* at ¶ 26 &, Ex. A at ¶ 2 & Ex. H at ¶ 2.41. RC Management had the power and authority to carry out its duties in maintaining and managing Plaintiffs' fractional interests, including "to the exclusion of all other persons including the (Association) and its members . . . the powers and duties of the Executive Board." *Id.* at ¶ 27, Ex. A at ¶ 4. The agreement gave RC Management the power to hire a "program manager" to manage and administer the reservation procedures and exchange program for the Membership Program. *Id.* at ¶ 35. Exercising this authority, RC Management hired Defendant Cobalt (via an Affiliation Agreement that was also signed by the Association) to operate the reservation system that Ritz-Aspen owners had to use to obtain use of their allotted number of days. *Id.* at ¶ 41.

---

[1] All exhibit citations are to exhibits to the Fifth Amended Complaint, Dkt. No. 119.

In 2012, MVW announced that it would scale back its luxury products line – namely, the Ritz-Carlton Club. *Id.* at ¶ 8. In a July 17, 2012 letter, the general manager of Cobalt first informed owners that it might affiliate the Ritz-Carlton Club with the MVC. *Id.* at ¶ 48. Cobalt's letter described the affiliation as a way for Ritz-Aspen owners to use their allocated time to stay at MVC resorts, but failed to mention that the affiliation would also give the 400,000 MVC members access to the Ritz-Carlton Club. *Id.* at ¶¶ 48-49. In the following months, member-controlled boards of various Ritz-Carlton Club properties, including the board of the Association, expressed serious objections to the proposed affiliation. *Id.* at ¶¶ 50, 51. In September 2012, the Association retained Denver attorney Philip Gosch to analyze whether the Ritz-Aspen's governing documents allowed the proposed MVC affiliation. *Id.* ¶ 60. *Mr. Gosch advised that they clearly did not. Id.* The Association informed MVW that its counsel had determined that "the underlying Association documents … prohibit what MVW is planning." *Id.* at ¶ 61. In addition, Mr. Gosch warned the Marriott Defendants that:

> (A)ny practice of allowing the use of the Tourist Accommodation Units at the Aspen Highlands Condominium by the MVC Members may constitute, among other things, one or more breaches of fiduciary duties of the HOA Manager to the Association under the HOA Management Agreement as a result of self-dealing among the HOA Manager, the Program Manager, the Marriott licensor entity and their respective affiliates to the detriment of the Association and its members. By permitting MVW and/or the Program Manager to utilize the Tourists Accommodation Units in clear violation of the Declaration, the HOA Manager would be enriching its affiliates and the Marriott licensor entity by creating an attractive offering for the MVC members, which would increase sales and license fees under Marriott's arrangement with MVW, all at the expense and burden of the Association and its members.

> In April 2013, the Association wrote to Plaintiffs that unless a majority of the owners voted

in favor of doing so, the Ritz-Aspen would not be included in the MVC affiliation. *Id.* at ¶ 68, Ex. O. Again, on May 14, 2013, The Ritz Carlton Destination Club wrote a letter to Plaintiffs, stating:

"regarding other potential affiliations, we want to assure you that a Ritz Carlton Club affiliation with Marriott Vacation Club Destinations will not take place unless there is an *affirmative vote* of *each Club's Membership*." (Emphasis added). *Id.* at ¶ 70.

No such vote ever took place. *Id.* at ¶ 80. Instead of the promised vote, Defendants distributed a "member survey," which they deceptively stated would be used "to understand whether the Aspen Highlands Members would like the opportunity to voluntarily exchange a week of their allocation time for points within the MVCD exchange program." *Id.* at ¶ 78. Defendants did not mention that this survey was to be a substitute for the vote. *Id.* at ¶ 77.

Even though the members did not have a chance to vote on the affiliation, in April 2014, Cobalt, acting in concert with other Defendants, decided to include the Ritz-Aspen in the MVC affiliation. *Id.* at ¶ 81. Due to Defendants' actions, approximately 400,000 MVC members – who paid a small fraction of the purchase prices Plaintiffs paid, and who pay lower annual fees – have access to the once exclusive Ritz-Aspen. *Id.* at ¶ 86. While Defendants have profited from this affiliation, the value of Plaintiffs' fractional interests has been destroyed. *Id.* Worse, Plaintiffs have had to pay inflated annual maintenance fees, for the increased wear-and-tear resulting from giving MVC members access to the Ritz-Aspen. *Id.* Plaintiffs seek to recoup these losses.

## III.   ARGUMENT

### A.  The FAC States Claims for Breach of Fiduciary Duty Based on Control Over Plaintiffs' Fractional Interests as Well as Agency Principles

The FAC alleges two independent sources of the fiduciary duties Defendants owe Plaintiffs: (1) Defendants' high degree of control over Plaintiffs' property; and (2) agency (and subagency) relationships between Plaintiffs and Defendants. Yet, in their motion to dismiss, Defendants only challenge the fiduciary duties arising from agency principles and fail to even

6

mention those stemming from Defendants' control over Plaintiffs' property. This alone is reason to deny Defendants' motion. Moreover, Defendants ignore that whether agency relationships and, more broadly, fiduciary duties exist are questions of fact that cannot be decided on a motion to dismiss. *See Moses,* 863 P.2d at 322*; Wildearth Guardians v. Public Service Co. of Colorado*, 2010 WL 1568574, \*3 (D. Colo. Apr. 15, 2010).[2]

### 1.   The FAC Alleges Fiduciary Duties Arising from Control Over Property

Under Colorado law, a fiduciary relationship may exist even in the absence of an agency or other special relationship. A fiduciary relationship exists whenever one person is entrusted to act for the benefit of or in the interests of another and has the legal authority to do so. Colo. Jury Instr., Civil 26:2; *Tepley v Public Employees Retirement Ass'n*, 955 P.2d 573, 577 (Colo. Ct. App. 1997). A fiduciary relationship also arises where one party "has a high degree of control over the property or subject matter of another." *Tara Woods Ltd. P'ship v. Fannie May*, 731 F.Supp.2d 1103, 1116 (D. Colo. 2010); *see also Oaster v. Robertson*, 2016 WL 1247803, \*18 (D. Colo. Mar. 28, 2016) (same); *Vikell Investors Pacific, Inc. v. Hampden, Ltd.*, 946 P.2d 589, 596-97 (Colo. App. 1992) (same); *Paine, Webber, Jackson & Curtis, Inc. v. Adams*, 816 P.2d 508, 517-18 (Colo. 1986) (whether stockbroker owes client a fiduciary duty depends on the degree of control); *Vai v.*

---

[2] *Dime Box Petroleum Corp. v. Louisiana Land & Expl. Co.*, 938 F.2d 1144, 1147–48 (10th Cir. 1991), relied upon by Defendants, is not to the contrary. In that case, the Court merely held that the parties had agreed in a non-adhesive contract to a heightened standard of liability. No such agreement exists here. Far from holding that the existence of a fiduciary duty is a question of law that can be resolved at the motion to dismiss stage, the Court noted that the existence of a joint venture – the basis for the fiduciary duty alleged in that case – is a question of fact, which was proven at trial. *Id.* at 1147.

*Bank of Am. Nat'l Trust & Sav. Ass'n*, 56 Cal.2d 329, 338 (1961) ("[t]he key factor in the existence of a fiduciary relationship lies in control by a person over the property of another").

Here, the FAC alleges that (a) Plaintiffs granted the Association control over not only the common areas, but also over Plaintiffs' individual fractional interests, (b) the Association delegated this sweeping grant of control to RC Management, and then (c) the Association and RC Management further delegated this control to Cobalt. *See* FAC at ¶¶ 23-36, 40-41. As a result of this control over Plaintiffs' separately deeded property interests, *all three of these defendants* owe Plaintiffs the fiduciary duties alleged in the FAC. *See Colorado Homes, Ltd., v. Loerch-Wilson*, 43 P.3d 718, 722-23 (Colo. App. 2011) (reinstating individual unit owners' breach of fiduciary duty claims against both homeowners' association and the management firm).

Paragraphs 26 to 38 of the FAC lay out how RC Management has the *exclusive authority* to manage Plaintiffs' property, including, among many other things, the permission to receive and deposit all funds collected from the owners and to maintain and replace personal property within Plaintiffs' fractional interests. The Management Agreement further delineates RC Management's almost complete control over Plaintiffs' individual fractional interests.

Because Cobalt is the exclusive manager of the Membership Program, *it controlled Plaintiffs' use of and access to their own units*. FAC at ¶ 35. Paragraphs 40, 41, and 43 describe the nature of Cobalt's control.[3] Moreover, because Cobalt has the *sole discretion* to affiliate the Membership Program with other locations or member clubs, Cobalt exerts a high degree of control over Plaintiffs' property at the Ritz-Aspen, which was valued for its exclusivity and the fact that

---

[3] Cobalt was hired by means of the Affiliation Agreement, signed not only by RC Management, but also by the Association. FAC at ¶ 39.

it provided owners with access to other Ritz-Carlton Club luxury properties. *Id*. at ¶¶ 3, 4, 40, 41. Indeed, the Affiliation Agreement solidifies Cobalt's almost complete control over the decision to affiliate Plaintiffs' property with other member clubs by stating that "[n]either the Developer, Members Association, nor Club Manager shall be entitled to participate in or consent to the Program Manager's decision in this regard." *Id*. at ¶ 41.

Indeed, in *Ritz-Tahoe*, a case based on identical agency and fiduciary duty allegations, as well as a virtually identical Management Agreement, Judge Morrison England, Jr. found that the plaintiffs adequately alleged a fiduciary duty based on RC Management's control over the plaintiffs' individually deeded property interests. *Ritz-Tahoe*, 2017 WL 569677 at *5. The complaint there, like here, alleged that the Association had "all powers necessary to ensure the proper functioning of each individual fractional unit," and the Association delegated those powers to RC Management – who in turn entrusted its authority to Cobalt. *Id*. at *2. In denying the motion to dismiss, the court noted that "[w]hether or not a fiduciary duty exists depends on the surrounding facts and circumstances," but the key factor was whether there was control over the property of another. *Id*. at *5.

Typically, a homeowners' association has authority only over the common areas, so the fiduciary duties are limited to its management of those areas. Here, however, the Association also assumed near complete control over Plaintiffs' separately deeded fractional interests. Ex. H at ¶ 23.8. Thus, both the Association and RC Management and Cobalt—entities to which the Association delegated control—owe fiduciary duties in managing Plaintiffs' fractional interests. Defendants read too much into certain limited holdings in making the blanket assertion that a homeowners' association owes no fiduciary duty to individual homeowners. For example,

Defendants cite *Office One, Inc. v. Lopez*, 769 N.E.2d 749, 759 (Mass. 2002), but the court there merely held that a condominium association's *trustees* owe fiduciary duties to the condominium *trust*, and not to individual unit owners. Here, the Association owes fiduciary duties to the owners, not a trust. Another case Defendants cite, *Harvick v. Oak Hammock Preserve Cmty. Owners Ass'n Inc.*, 2015 WL 667984 (M.D. Fla. Feb. 17, 2015), only held that "an individual homeowner cannot impose liability against a homeowners' association for breach of fiduciary duty solely due to his status as a member of the association; the … homeowner would need to allege a separate basis amounting to a fiduciary duty." Thus, even if Defendants were correct (which they are not) that a homeowners' association does not owe fiduciary duties to homeowners, Plaintiffs still have adequately alleged the Association's fiduciary duty based on the Association's control over Plaintiffs' separately deeded property interests – not just based on Plaintiffs' status as members of the Association. Further, Defendants' interpretation of *Office One* and *Harvick* conflict with numerous Colorado cases that recognize the right of individual homeowners to sue homeowners' associations.[4]

The New York appellate court's decision in *Caprer v. Nussbaum*, 36 A.D.3d 55 (2006), provides well-reasoned guidance here because it addressed the issue of when a managing agent of

---

[4] *See Colorado Homes, Ltd. v. Loerch-Wilson*, 43 P. 3d 718 (Colo. App. 2001); *Woodward v. Board. of Directors of Tamarron Association of Condo. Owners, Inc., 155 P.3d 621, 624* (Colo. App. 2007); *McShane v. Stirling Ranch Prop. Owners Ass'n*, 2015 COA 48, ¶ 30 (overruled on other grounds, 2017 CO 38; WL 1548547, May 1, 2017); *Semler v. Hellerstein*, 2016 COA 143, ¶ 36; *See also Cohen v. Kite Hill Cmty. Ass'n.*, 142 Cal. App. 3d 642, 650-51 (1983). Indeed, in *Colorado Homes, Ltd. v. Loerch-Wilson*, 43 P. 3d 718 (Colo. App. 2001), the Court allowed breach of fiduciary duty claims to proceed against both the homeowners' association and the management company engaged by the HOA to manage the association. *Id*. at 721-722.

a condominium owes fiduciary duties to unit owners. In *Caprer*, condominium unit owners sued the managing agent for breach of fiduciary duty by committing various acts of financial mismanagement. *Id*. at 180-81, 191. In ruling on the managing agent's summary judgment motion, the *Caprer* court noted that the manager had control in operating and maintaining *only* the common elements of the condominium and not any aspect of any individual unit. *Id*. at 192. The court specifically noted that the manager did not have authority "to hold any personal funds of the unit owners or otherwise act on their behalf, and the plaintiffs [did] not allege any other basis for a fiduciary relationship." *Id*. at 192. Under those distinct facts, the court found that the manager owed a fiduciary duty only to the condominium.

Here, in contrast, Plaintiffs allege that Association's, RC Management's, and Cobalt's control extends beyond common areas and into their separately deeded property interests. In direct contrast to the facts in *Caprer*, the FAC alleges that RC Management had authority to receive and hold all personal funds collected from the owners. FAC at ¶ 32; Ex. A at ¶ 4(J). Thus, under the *reasoning* of *Caprer*, each of these defendants owes fiduciary duties to owners (Plaintiffs) based on its control over the units themselves. *See Ritz-Tahoe*, 2017 WL 569677 at *5 (finding a fiduciary duty where the plaintiffs pleaded that "RC Management had control over their individually deeded property interests").

### 2. The FAC Independently Alleges Fiduciary Duties Arising from Agency

It is settled that an agent owes fiduciary duties to its principal. *City & County of Denver v. Fey Concert Co*., 960 P.2d 657, 669 (Colo. 1998); *McKinney v. Christmas*, 143 Colo. 361, 363 (Colo. 1960); Rest.2d Agency § 387 (1957). An agency relationship, therefore, by itself establishes fiduciary duties owed by the agent. Here, the existence of agency is memorialized in the

Declaration, which specifies that a "Managing Agent" would be appointed Ex. H at ¶ 23.6. ("It is contemplated that the (Board of Directors) will delegate the responsibility for administration and management of the Plan of Fractional Ownership ... to a Managing Agent pursuant to a Management Agreement"); and Ex. H at ¶ 2.41.

Whether or not an agency relationship exists is a question of fact. *Stortroen v. Beneficial Finance Co. of Colorado*, 736 P.2d 391, 395 (Colo. 1987). As a general matter, an agency relationship arises from the manifestation of consent by one party (the principal) to another (the agent) that the other shall act on its behalf and subject to its control. *Id.* (citing Rest.2d Agency § 1(1) (1957)). An agency relationship may exist even though the parties did not intend to create one. *Id.* Indeed, "the existence of an agency relationship can be proven by the conduct of the parties." *Moses*, 863 P.2d at 324. "No one factor, including control, is determinative. The most important factor in determining whether a person is an agent is "the *right* to control, not the fact of control." *Id.* (citations omitted) (emphasis added). The Declaration gives Plaintiffs that right of control by allowing them to amend or terminate any provision affecting the fractional ownership plan, which necessarily includes the termination of Cobalt. Ex. H at ¶ 22.3.

The FAC explains, in detail, the source of each agency relationship between Plaintiffs and Defendants. At the outset, Paragraph 26 alleges that RC Management, via the Management Agreement, entered into an agency relationship with members of the Association (which includes Plaintiffs) to manage the Condominium and the fractional ownership interest plan. Paragraph 26 points to the specific clause in the Management Agreement that delegates this authority. FAC at ¶ 26. That "Appointment and Acceptance of Agency" paragraph states:

> The Association hereby employs the Management Company to act *on behalf of the Association and its members* as the exclusive managing entity of the Condominium

and to manage the daily affairs of the Condominium and the Plan, and the Management Company hereby agrees to so act.

Management Agreement at ¶ 2, Ex. A (emphasis added).

This plain delegation of authority is the *sine qua non* to establishing an agency relationship, not to mention Defendants' own choice of the agency label. Further, in an analogous setting, hotel management contracts create an agency relationship between a hotel's owner and its manager. *See, e.g., Woolley v. Embassy Suites, Inc.*, 227 Cal.App.3d 1520, 1531 (1991); *FHR TB, LLC v. TB Isle Resort, LP*., 865 F.Supp.2d 1172, 1195 (S.D. Fla. 2011).

Citing to the Management Agreement, Paragraphs 26-36 of the FAC delineate how Plaintiffs have divested themselves of the responsibility to manage their fractional interests, while still retaining ownership. These allegations show that RC Management can hire employees to manage the Condominium, maintain the Association's books and accounting, prepare annual budgets, replace personal property within Plaintiffs' fractional interests, and amend rules pertaining to the fractional interests. FAC ¶¶ 27-33. The Management Agreement confirms that Plaintiffs are the principals of RC Management by stating that RC Management may only be terminated by a vote of the owners. Ex. A at ¶ 4. It follows that RC Management owed fiduciary duties to Plaintiffs within the scope of its agency. *See McKinney v. Christmas*, 143 Colo. at 363.

Because the FAC adequately alleges that RC Management is Plaintiffs' agent, it also adequately alleges that Cobalt is a subagent of Plaintiffs. "A subagent is 'a person appointed by an agent empowered to do so, to perform functions undertaken by the agent for the principal, but for whose conduct the agent agrees with the principal to be primarily responsible.'" *City & County of Denver*, 960 P.2d at 670. Like an agent, a subagent has fiduciary duties to the principal and "is subject to all the liabilities of an agent to the principal." *Moses*, 863 P.2d at 325 n.18 (citing Rest.2d

Agency § 5 cmt. d). Here, Paragraph 35 alleges that RC Management had the authority to engage a "Program Manager" through an affiliation agreement to "manage and administer the reservation procedures and exchange program for the Ritz-Carlton Club Membership Program (the 'Membership Program')…" FAC at ¶ 35. RC Management exercised that authority by hiring Cobalt to manage and administer the Membership Program. Cobalt therefore owes fiduciary duties as a subagent. *Id*. at ¶ 42.

### 3.  Defendants' Contractual Disclaimer Arguments Fail

Defendants attempt to argue that no fiduciary relationships exist as a matter of law by pointing to vague disclaimer language in the Management Agreement that does not even mention fiduciaries or fiduciary duties. Their argument fails for several reasons. First, *Plaintiffs* never signed a contract stating that RC Management was not their fiduciary; a statement purportedly to that effect signed by a Defendant-controlled entity does not bind *Plaintiffs*. The court in *Ritz-Tahoe* expressly rejected the same disclaimer argument that Defendants make here: "express disclaimer provisions … only bar an agency relationship between the signing parties. Plaintiffs were not parties to the Management Agreement, and instead possess only an ownership agreement … the disclaimer language is not binding upon them." *Reiser*, 2017 WL 569677 at *5.

Second, under *Bayview Loan Servicing, LLC v. Boland*, 2009 WL 3234270, at *5 (D. Colo. Sept. 30, 2009), an attempt to disclaim an agency relationship is not dispositive at the pleading stage. *Id.* (denying motion to dismiss because agency is a question of fact).

Third, even if agency or fiduciary relationships could be disclaimed as a matter of law, the language on which Defendants rely falls far short of doing so. The Management Agreement merely states that nothing therein "shall be construed as creating a partnership, joint venture, or any other

14

relationship between the parties to this Agreement." Motion at 9-10. It does not mention fiduciary relationships. *See* Ex. A. That there is no partnership or joint venture does not preclude other agency relationships, let alone a fiduciary relationship based on control of Plaintiffs' property.[5]

Defendants' argument that RC Management cannot be an agent because the Management Agreement recognizes it as an independent contractor is also unavailing. An independent contractor can also be an agent. *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1251 (10th Cir. 2013); *Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356, 1360 (10th Cir. 1987)). Further, whether an independent contractor is also an agent "depends on the circumstances of the undertaking." *City and County of Denver*, 960 P.2d at 669 (citing Rest.2d Agency § 2).[6]

### 4.  The FAC Adequately Alleges Breach and Damages

The FAC alleges, in detail, how Defendants breached or aided and abetted the breach of fiduciary duties by affiliating the Ritz-Aspen with the MVC. FAC at ¶¶ 44-46, 68-81. A party may breach the fiduciary duty it owes to another by self-dealing, violating the duty of loyalty, or acting against the fiduciary's interests. *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 492 (Colo. 1989) (quoting Rest.2d Agency, § 387)). The FAC sufficiently alleges that Defendants breached their fiduciary duty to Plaintiffs by: (1) violating the duty of loyalty by virtue of the affiliation, and (2) failing to enforce the restrictive covenant against such affiliation. FAC at ¶¶ 81, 85.

---

[5] Defendants' reliance on *Rocky Mountain Expl., Inc. v. Davis Graham & Stubbs LLP*, 2016 WL 908640, at *7 (Colo. App. Mar. 10, 2016), is misplaced because there, the agreement expressly disavowed a fiduciary relationship; whereas here, there was no such express disavowal here.

[6] Defendants citation to *Willey v. Mayer*, 876 P.2d 1260, 1266 (Colo. 1994), is puzzling, because an entirely different issue was at play there. *Willey* concerned whether a principal could be held liable to a third party for his agent's abuse of authority. *Id*. No such issue exists here.

First, Defendants breached their duty of loyalty by favoring their own interests (or the interests of their affiliates) to the detriment of Plaintiffs' interests. Paragraph 43 states that Cobalt entered into an agreement with Lion & Crown, which allowed over 400,000 MVC "points members" to use the fractional interests and amenities at the Ritz-Aspen, causing the value of Plaintiffs' fractional interests to decline (and/or remain depressed) by as much as 80% and annual fees to increase. FAC at ¶ 10, 44, 86. All the while, the affiliation has allowed Defendants to achieve huge profits by advertising that MVC timeshare members will have access to the Ritz-Carlton clubs. *Id.* at ¶¶ 86, 119; *see also* ¶¶ 8, 56. In short, the affiliation was an act of self-dealing that benefitted Defendants (or their affiliates) only. *Id.* at ¶¶ 93-94, 109.

Separately, as more fully stated below, the Association breached its fiduciary duty to Plaintiffs by failing to enforce a restrictive covenant against further timesharing. Under *Colorado Homes*, 43 P.3d at 721-22, a homeowners association has a fiduciary duty to enforce restrictive covenants. The FAC alleges that the Association was informed by its lawyers that the proposed affiliation could not take place absent an amendment of the Declaration. *Id.* at ¶¶ 60, 61; Ex. H. Yet, against the advice of its own lawyers, the Association (with the other Defendants) nevertheless affiliated. *Id.* at ¶ 81.

The FAC also sufficiently alleges how each Defendant aided and abetted in the breach, causing Plaintiffs' damages. "The elements of the tort of aiding and abetting a breach of fiduciary duty include: (1) breach of a fiduciary duty owed to a plaintiff, (2) a defendant's knowing participation in the breach, and (3) damages. (citation omitted). Also, Restatement (Second) of Torts § 876(b) (1977), upon which the tort is premised, includes as an additional element that a

defendant must give substantial assistance to the other's breach." *Nelson v. Elway*, 971 P.2d 245, 249-250 (Colo. App. 1998).

The FAC adequately alleges that the other Defendants aided and abetted Cobalt despite being specifically prohibited from even consulting with Cobalt on decisions related to affiliations. FAC at ¶ 41. Paragraph 45 describes how MVW participated in that breach. It explains that MVW directly controls Cobalt and RC Management because those companies are shell companies of MVW, and serviced by MVW employees. MVW actively encouraged the affiliation by communicating with Plaintiffs to falsely inform them that nothing would change as a result of an affiliation with MVC, *id.* at ¶¶ 45, 48, 52, 77, even though it had been advised by counsel that such an action would require an amendment to the underlying Association documents. *Id.* at ¶¶ 61, 64.

Paragraph 81 alleges that RC Management aided and abetted the breach of fiduciary duty by agreeing to include the Ritz-Aspen in the MVC affiliation. The Association aided and abetted the breach in the same manner. *Id.* at ¶¶ 77, 81. The FAC further explains that the Association was discussing the proposed affiliation with MVW in 2012-2013, and represented to Plaintiffs that the affiliation would not take place unless a majority of Ritz-Aspen owners voted in favor of it. *Id.* at ¶¶ 68-70, 77. There was never such a vote, yet the Association announced to Plaintiffs in April 2014 that the affiliation took place anyway. *Id.* at ¶¶ 80-83. These acts show the Association's participation in the breach of fiduciary duty to Plaintiffs.

Defendants contend that the Association could not have breached or aided and abetted in the breach because a contractual clause limited its ability to do so. Motion at 12-13. This argument fails because it ignores that the FAC alleges that the Association aided and abetted in the affiliation, regardless of any limiting contractual clause. FAC at ¶¶ 76-77, 81-83. Whether the Association

also violated the Affiliation Agreement in doing so is a question that is independent from whether, based on the facts, the Association actually aided and abetted the affiliation. Further, whether "actions constitute a breach of (the) duty of loyalty involves a question of fact . . . based upon all the circumstances of the case." *Jet Courier Serv*. 771 P.2d at 494.

### B.  The FAC Alleges Restrictive Covenants Prohibited the Affiliation

The FAC alleges—in full agreement with the Association's own attorney's conclusion—that two restrictive covenants, § 8.25 of the Master Declaration and § 19.8 of the Declaration of Condominium, prohibited the affiliation. FAC at ¶¶ 55, 60, 61, 90. Section 19.8 states that "no Unit shall be used for the operation of a timesharing, fraction-sharing ... membership program, vacation club ... or similar program whereby the right to exclusive use of the Unit is alternated or scheduled among participants in the program...." *Id.* at ¶ 55. Section 8.25 states that "no Unit shall be used for the operation of a timesharing, fraction-sharing, or similar program whereby the right to exclusive use of the Unit rotates among participants in the program...." Ex. A.

Defendants seek to dismiss this claim based on their reading of these general provisions. But the proper interpretation of them should not be resolved at the pleading stage. *Chimney Rock Pub. Power Dist. v. Tri-State Generation & Transmission Ass'n, Inc.*, 2012 WL 84572, at *7 (D. Colo. Jan. 11, 2012) (declining to grant a motion to dismiss "based on an alleged breach of such a general and ambiguous contractual provision"). Where a contract clause is susceptible to more than one reasonable interpretation, the contract is ambiguous and extrinsic evidence will be necessary to determine the intent of the parties. *Cocona, Inc. v. Singtex Indus. Co., Ltd*., 2014 WL 5072730, at *6 (D. Colo. Oct. 9, 2014); *White River Village, LLP v. Fidelity and Deposit Co. of*

*Maryland*, 2014 WL 985103, at \*12 (D. Colo. Mar. 12, 2014). As such, a motion to dismiss based on a defendant's interpretation of an ambiguous contract clause should be denied.

### C.  The FAC Adequately Alleges a Claim for Constructive Fraud

Plaintiffs adequately pled every element of a constructive fraud claim. Constructive fraud is "a breach of duty, which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive, violate confidence, or injure public interests." *Miller v. McCloud*, 2016 WL 524357, \*7 (D. Colo. Feb. 10, 2016). The allegations in the FAC are akin to those upheld in *Security Nat. Bank v. Peters, Writer & Christensen, Inc.*, 39 Colo.App. 344 (1977). There, the plaintiffs were preferred shareholders of a corporation who filed suit against the corporation's directors because, among other things, the plaintiffs were denied notice of and an opportunity to vote at a shareholders meeting where a plan for liquidation and dissolution of the corporation was approved; plaintiffs claimed these actions deprived them of their right to object to the changes. *Security Nat. Bank*, 39 Colo.App. at 351. The court held that by gambling with the plaintiffs' property without informing the plaintiffs of their plan, the directors' "conduct constitute[d] constructive fraud as a matter of law." *Id*. at 352. The FAC alleges parallel elements: the Association, RC Management, and Cobalt owed fiduciary duties to Plaintiffs (FAC at ¶ 97), yet these Defendants failed to disclose to Plaintiffs material facts about the proposed MVC affiliation. *Id*. at ¶ 98. These Defendants knew that Plaintiffs were relying on the promised vote to act against the proposed affiliation, thus Plaintiffs did not take other steps to prevent the affiliation – such as demanding the vote or filing a derivative lawsuit against the Association's Board. *Id*. at ¶ 99. By affiliating without fully informing Plaintiffs of the plan to do so, and without allowing Plaintiffs to vote on it, Defendants destroyed the value of Plaintiffs' property.

Defendants do not dispute that Plaintiffs alleged that Defendants failed to disclose these facts, but instead argue that such facts were not material. Motion at 18-19. However, "the materiality of a misrepresentation is a mixed question of law and fact that under most circumstances should be determined by the trier of fact." *Wagnon v. State Farm Fire and Cas. Co*., 146 F.3d 764, 768 (10th Cir. 1998).

### D. The FAC Adequately Alleges Claims for Unjust Enrichment, Aiding and Abetting and Conspiracy

Defendants' argument for dismissal of Plaintiffs' claims for Unjust Enrichment, Aiding and Abetting and Conspiracy is premised upon the supposed failure to properly allege concomitant breach of fiduciary duty claims. But as discussed throughout this opposition, the FAC properly alleges breach of fiduciary duty. As such, Defendants' motion to dismiss Plaintiffs' causes of action for Unjust Enrichment, Aiding and Abetting and Conspiracy should be denied.

Dated: May 5, 2017                          Respectfully submitted,

GIBBS LAW GROUP LLP                          THE MATTHEW C. FERGUSON LAW FIRM, P.C.

*/s/ Michael Schrag*                          */s/ Matthew C. Ferguson*
Michael Schrag (CA State Bar # 185832)        Matthew C. Ferguson, #25687
Linda Lam (CA State Bar# 301461)              119 South Spring, Suite 201
505 14th Street, Suite 1110                    Aspen, Colorado 81611
Oakland, California 94612                      Telephone: (970) 925-6288
Phone: (510) 350-9700                          Facsimile: (970) 925-2273
Facsimile: (510) 350-9701                      E-mail: matt@matthewfergusonlaw.com
E-mail: mls@classlawgroup.com
E-mail: lpl@classlawgroup.com                  *Attorney for Plaintiffs*

*Attorney for Plaintiffs*

### CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 5th day of May, 2017, a true and accurate copy of the foregoing **PLAINTIFFS' OPPOSITION TO MARRIOTT DEFENDANTS' MOTION TO DISMISS FIFTH AMENDED COMPLAINT** was filed and served via CM/ECF upon following:

Matthew C. Ferguson, Esq.
The Matthew C. Ferguson Law Firm, P.C.
119 South Spring, Suite 201
Aspen, Colorado 81611

Michael J. Reiser, Esq.
Lilia Bulgucheva, Esq.
Law Office of Michael J. Reiser
961 Ygnacio Valley Road
Walnut Creek, California 94596

Michael L. Schrag, Esq.
Linda Lam, Esq.
Gibbs Law Group LLP
1 Kaiser Plaza, Suite 1125
Oakland, California 94612

Tyler R. Meade, Esq.
Melissa Riess James, Esq.
The Meade Firm P.C.
1816 Fifth Street
Berkeley, California 94710

Daniel F. Shea, Esq.
Jessica Black Livingston, Esq.
Hogan Lovells US LLP
1200 Seventeenth Street, Suite 1500
Denver, Colorado 80202

Naomi G. Beer, Esq.
Greenberg Traurig, LLP
1200 17th Street, Suite 2400
Denver, Colorado 80202

Ian S. Marx, Esq.
Philip R. Sellinger, Esq.
Greenberg Traurig, LLP
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932

_/s/ Robin White_____
Robin White

4817-8424-0200, v. 1