**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-01301-PAB-GPG

RCHFU, LLC, et al.,

      Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al.,

      Defendants.

**ASPEN HIGHLANDS CONDOMINIUM ASSOCIATION'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFFS' FIFTH AMENDED COMPLAINT**

Defendant Aspen Highlands Condominium Association, Inc. ("Association") respectfully submits this reply in support of its Motion to Dismiss ("Motion," Dkt. No. 129) Plaintiffs' Fifth Amended Complaint ("FAC"). In their Opposition, Plaintiffs have attempted to convert what is a run-of-the mill contract dispute into various tort claims because the contracts at issue, both attached to the FAC, unambiguously refute their claims. The Affiliation Agreement permits Defendant Cobalt in its sole discretion to determine what other clubs are suitable affiliates, and the Declaration precludes downstream timesharing only—not a voluntary trading program that permits owners to trade a week of their time with someone who happens to own a timeshare interest elsewhere, the equivalent of gifting the unit to a friend or renting it to a stranger. If the economic-loss rule were deemed inapplicable here, the business-judgment rule stands firmly in the way of Plaintiffs' tort claims because Plaintiffs have failed to allege or show bad faith on the part of the Association's directors. None is alleged to have a conflicting relationship with Marriott or to have derived any personal benefit from the trading program. And even assuming that the directors failed to heed the advice of their attorney regarding what the contracts mean,

1

something that Plaintiffs have failed to show, that would not permit an inference of bad faith because the advice of an attorney concerning the meaning of a contractual term is not admissible evidence.

## ARGUMENT

**A.      The economic-loss rule bars Plaintiffs' first and second claims.**

Plaintiffs' breach-of-fiduciary-duty and constructive-fraud claims are barred by the economic-loss rule because the claims are based on a breach of a fiduciary duty that is explicitly spelled out in the Declaration. A breach like that alleged here—flowing from Section 6.8 of the Declaration—"arises under the provisions of a contract" and "must be redressed under contract" law. *S K Peightal Eng'rs, LTD v. Mid Valley Real Estate Sols. V, LLC*, 342 P.3d 868, 872 (Colo. 2015). This is true even when an independent duty exists because "even a duty separately recognized under tort law is not independent if it is also imposed under the parties' contract." *A Good Time Rental, LLC v. First Am. Title Agency, Inc.*, 259 P.3d 534, 537 (Colo. App. 2011).

Plaintiffs argue that the economic-loss rule does not bar their claims because the fiduciary duty at issue here is a "specially recognized tort duty that renders" the rule inapplicable even if the Declaration embodies the "*identical* duties." Pls.' Opp'n at 10. To be sure, some "special relationships . . . automatically trigger independent duties of care," even if "the relevant contracts contain the identical duty." *S K Peightal Eng'rs, LTD*, 342 P.3d at 875. Plaintiffs contend that the fiduciary duties discussed in *Colorado Homes, Ltd. v. Loerch-Wilson* create a "special relationship." Opp'n at 8–9 & n.3. Not so. The *Colorado Homes* court evaluated public policy considerations and concluded that a fiduciary duty existed "independent of any contract" and that the economic-loss rule did not bar the plaintiff's claim. *Colo. Homes, Ltd.v.*

*Loerch-Wilson*, 43 P.3d 718, 722 (Colo. App. 2001).  The court did not actually state that the fiduciary duty between a homeowners association and its members is a "special relationship" of the type *S K Peightal Engineers, LTD* discussed.  *Id.*  And the defendant in *Colorado Homes* did not appear to have argued that the contract memorialized its fiduciary duties because the decision is lacking any such discussion.  *See id.*  The *Colorado Homes* court thus questioned whether the defendant had an independent duty but did not specifically hold that a homeowners association's fiduciary duties create a "special relationship" that insulates tort claims from the economic-loss rule.[1]

Plaintiffs next argue that the fiduciary duties identified in Section 6.8 of the Declaration are merely duties of good faith and fair dealing and not the "more expansive" fiduciary duties they allege the Association breached.  Opp'n at 10–11.  They point to *Bailey v. Allstate Insurance Co.*, wherein the court explained that a fiduciary's obligations include "a duty of loyalty, a duty to exercise reasonable care and skill, and a duty to deal impartially" with the beneficiary.  844 P.2d 1336, 1339 (Colo. App. 1992).  The court then concluded that an insurer-insured relationship was "based solely upon contract" and that no fiduciary relationship existed.  *Id.* at 1340–41.  Here, the Association has a duty to enforce covenants for its members' benefit—but that duty is memorialized in the Declaration.  Section 6.8 requires the Board to represent Owners' interests "in a fair and just manner" under "standards of good faith and reasonableness."  FAC, Ex. H (Declaration) ¶ 6.8.  Section 6.8's duties mimic the duties in *Bailey*:  representing members' interest "in a fair and just manner"—a duty to deal impartially with beneficiaries—and

---

[1] Plaintiffs state in a footnote that a federal district court decision concluded that *Colorado Homes* affirmed this "special relationship" exists.  Opp'n at 9 n.3 (citing *Micale v. Bank One N.A.*, 382 F. Supp. 2d 1207, 1222 (D. Colo. 2005)).  Respectfully, that decision misinterprets *Colorado Homes*, which, in fact, did not even use the term "special relationship" at all.

"standards of good faith and reasonableness"—a duty to exercise reasonable care and skill.

Ultimately, it is illogical to apply some independent fiduciary-duty standard here because Plaintiffs allege that the breaches of duty stem from failing to follow or enforce terms of the very Declaration that embodies its own fiduciary-duty standard. The Declaration's terms control, and Plaintiffs' tort claims are barred by the economic-loss rule.

## B.     The business-judgment rule bars Plaintiffs' first and second claims.

Plaintiffs' claim for breach of fiduciary duty and constructive fraud must be dismissed because the business-judgment rule protects the Association's actions, and Plaintiffs have failed to allege sufficient facts to show that the Association lacks independence, acted in bad faith, or otherwise should be deprived of the rule's protections. *See Colo. Homes, Ltd.*, 43 P.3d at 724; *Rywalt v. Writer Corp.*, 526 P.2d 316, 317 (Colo. App. 1974). Plaintiffs must plead facts showing "a reason to doubt that the action was taken honestly and in good faith." *Swanson v. Weil*, No. 11-cv-02142-WYD-KLM, 2012 WL 4442795, at *6 (D. Colo. Sept. 26, 2012) (quotation omitted); *Ryskamp ex rel. Boulder Growth & Income Fund v. Looney*, 10-cv-00842-WJM-KLM, 2011 WL 3861437, at *3 (D. Colo. 2011). They have not done so here.

### 1.     Breach-of-fiduciary-duty claim

Plaintiffs fail to meet their burden to establish how the Association's actions or inactions were made in bad faith, were arbitrary, or otherwise breached the Association's fiduciary duties. Plaintiffs contend that they have alleged the Association's bad faith by pointing to the legal advice the Association received, that some members voiced their opposition to the affiliation, and that the Association ultimately permitted the affiliation. Opp'n at 15. Plaintiffs try to cobble together allegations of bad faith from facts that do not permit such an inference. Plaintiffs' facts

provide no evidence of any lack of independence or conflict—that any Association director has any connection to the Marriott Defendants—or self-dealing—that any Association director directly benefited from the affiliation. *See Swanson*, 2012 WL 4442795, at *5 (plaintiff failed to identify facts that defendant was "actually 'tainted by interest' or 'lacked independence,' or that the directors were dominated or controlled in some manner"); *Weinman v. McCloskey*, No. 14–cv–00296–CMA–CBS, 2015 WL 1528896, at *7 (D. Colo. Mar. 31, 2015) (no bad faith where complaint does not allege self-dealing). Plaintiffs provide no authority for their theory that the Association's decision not to follow legal advice, even assuming the advice related to the question of allowing the trade-a-week program (which it did not), constitutes bad faith or deprives the Association of the business-judgment rule's protection. Secondarily, that advice could not alter the meaning of the Affiliation Agreement, which allows Marriott to affiliate with any club, or of Section 19.8 of the Declaration, which prevents downstream timesharing but not trading with someone who happens to own a timeshare interest at another club. Moreover, even if an attorney were deemed more qualified than the Association's directors to interpret contractual language, an erroneous conclusion by the directors, none of whom has been shown to lack independence, would not eviscerate the business-judgment rule's protections.[2]

Even assuming the business-judgment rule does not protect the Association, Plaintiffs have failed to allege facts showing that the Association breached its fiduciary duties. Plaintiffs

---

[2] Plaintiffs also argue that this Court should not rule now on whether the business-judgment rule applies under *Polk v. Hergert Land & Cattle Co.*, 5 P.3d 402,405 (Colo. App. 2000). Opp'n 15–16. But in *Polk*, the Court denied summary judgment on the question whether the business-judgment rule applied because there were disputes of material fact regarding whether the defendants' actions were taken in good faith, specifically whether there were conflicts of interest, self-dealing, intentional diminution of the corporate assets, and illegal bonuses paid to the plaintiffs. *Polk*, 5 P.3d at 406. In contrast, the FAC contains no such allegations of bad faith.

identify two purported breaches:  (1) that the Association favored Defendants' interests over Plaintiffs' by permitting the trading program, Opp'n at 12–13; and (2) that the Association failed to enforce Declaration Section 19.8, *id.* at 14–15.  As to the first, Plaintiffs argue that the Association was discussing the voluntary trading program with MVW, represented to Plaintiffs that all Owners would get to vote on the program, and then announced the program without holding a vote.  *Id.* at 13–14.  And Plaintiffs argue that the Association's counsel concluded that the then-contemplated affiliation would violate the terms of the Declaration.  *Id.* at 13.  Even though such legal advice is not relevant to the determination of the meaning of the Declaration's provisions,[3] Plaintiffs conveniently omit that the Association's legal advice never articulated the precise provision of the Affiliation Agreement or the Declaration that Marriott supposedly violated.  The Declaration contains numerous provisions explicitly requiring a vote—not one of which requires a vote by all members on the decision to permit the affiliation.  *See* Mot. at 13.  Thus, Plaintiffs fail to identify any factual allegation that shows how the Associations conduct breached its fiduciary duties or deprived the Association of the business-judgment rule's protections.  *See Oberbillig v. West Grand Towers Condo. Ass'n*, 807 N.W.2d 143, 155 (Iowa 2011) (business-judgment rule immunizes the board's decision "to proceed . . . without a membership vote").

　　　As to the second alleged breach, failing to enforce Section 19.8 of the Declaration, the Declaration prohibits any Units from being "used for the operation of a timesharing, fraction-sharing, interval ownership, private residence club, membership program, vacation club, exchange network or system or similar program," other than the Plan of Fractional Ownership.

---

[3] "Legal opinions as to the meaning of the contract terms" are inadmissible at trial. *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988) (citation omitted).

Declaration ¶ 19.8.  And although the Declaration does not define "timesharing," a Colorado statute defines timesharing for these purposes as an "[a]n undivided interest in a present estate in fee simple in a unit" with a "right to possession and occupancy . . . during an annually recurring period of time" or title to an estate where "a time share unit circulates among the interval owners in accordance with a fixed schedule."  Colo. Rev. Stat. § 38-33-110.

When a statute's language "is clear and unambiguous, then the plain meaning of the words must be given effect."  *Resolution Trust Corp. v. Love*, 36 F.3d 972, 976 (10th Cir. 1994); *see also Climax Molybdenum Co. v. Walter*, 812 P.2d 1168, 1173 (Colo. 1991).  Construed in accordance with the statute, Section 19.8 unambiguously means that no one can buy an interest at Aspen Highlands and then subdivide ownership of his Unit in such a manner as to operate a timesharing program with respect to that unit.  The trade-a-week program at issue here on its face does not involve any transfer of ownership rights by the member who voluntarily takes advantage of the program by allowing a Marriott Vacation Club member to use the unit for a week, and Plaintiffs have not alleged facts showing that the trade involves a permanent surrender of any ownership rights.

Plaintiffs never argued that Section 19.8 is ambiguous, and yet they point to legal advice the Association received that the affiliation would require some unknown amendment to the Declaration, asking this Court to speculate that the legal advice addressed Section 19.8.  Opp'n at 14.  Even if it did, "[t]he mere fact that there is a difference between parties over the interpretation of an instrument does not of itself create an ambiguity."  *Brunton v. Int'l Trust Co.*, 164 P.2d 472, 475 (Colo. 1945).  And, in multiple recent filings, Plaintiffs concede that Section 19.8 of the Declaration is unambiguous.  *See* Dkt. No. 85 at 2 (arguing that the Association was

advised that "Section 19.8 [of the Declaration] is . . . unambiguous"); Dkt. No. 87 at 3 (same). Plaintiffs' concessions defeat their argument that this Court cannot resolve the interpretation of Section 19.8 on the Association's Motion.  *See* Opp'n at 15–16.  In fact, "the determination as to whether a contract is ambiguous and the construction of an unambiguous contract are legal questions for the court."  *Arnold Oil Props. LLC v. Schlumberger Tech. Corp.*, 672 F.3d 1202, 1206 (10th Cir. 2012).  This Court therefore can and should construe Section 19.8 according to the statutory definition and conclude that it does not prohibit the affiliation.

### 2.    Constructive-fraud claim

Plaintiffs' constructive fraud claim must be dismissed because Plaintiffs have failed to allege sufficient facts to support the second, third, and fourth elements of their claim:  that the Association violated a duty by making deceptive material misrepresentations, that Plaintiffs relied on those misrepresentations, and that the misrepresentations proximately caused Plaintiffs' injuries.  *See Barnett v. Elite Props. of Am., Inc.*, 252 P.3d 14, 24 (Colo. App. 2010); *Snyder v. ACORD Corp.*, No. 1:14-cv-01736-JLK, 2016 WL 192270, at *11 (D. Colo. Jan. 15, 2016).  But the Association's actions were protected by the business-judgment rule, and there was no breach of a fiduciary duty that would serve to underpin Plaintiffs' constructive-fraud claim.

Even so, Plaintiffs argue that their claim should survive, pointing to *Security National Bank v. Peters, Writer & Christensen, Inc.*, 569 P.2d 875 (Colo. App. 1977).  There, plaintiffs were denied the opportunity to vote at a shareholders meeting.  *Id.* at 880–81.  In that case, the defendants' failure to "mak[e] provisions for" the plaintiffs and allow them to file objections to the liquidation plan violated the company's Articles of Incorporation and a Colorado statute.  *Id.* at 881.  In contrast, the Association's alleged failure to disclose facts about a vote and to hold a

vote did not violate the Declaration or Colorado law.  *See* Mot. at 13.  And for the reasons set out in the Motion, none of the four misrepresentations Plaintiffs allege in their FAC rises to the level of an intentional, bad-faith statement required to show constructive fraud.

Plaintiffs also fail to allege facts to show the third and fourth elements of their claim.  As to the third element, Plaintiffs do not allege facts showing reliance.  They say simply that they "relied on the Association's false promise by refraining from instituting appropriate legal action to halt the affiliation" or forcing a vote.  Opp'n at 19 (citing FAC ¶ 99).  Their failure to point to anything beyond this conclusory statement dooms their claim, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009), particularly because they could have at any time during this lawsuit sought preliminary injunctive relief had they timely asserted a demand for such relief in their FAC or one of the previous four complaints.  And as to the fourth element, Plaintiffs fail to allege plausible facts to show that the Association's alleged misleading statements proximately caused their injury—the diminution in value of their units.  They state in their Opposition that because they were "duped into" thinking there would be a vote, they "suffered the utter destruction of value" in their units.  Opp'n at 19.  But the FAC fails to show any link between the Association's allegedly misleading statements—rather than the affiliation itself—and the diminution in value of their units.  FAC ¶¶ 10, 86, 94 (alleging diminution in value because of affiliation).  That is not enough.[4]

## C.    Plaintiffs fail to state a claim for aiding and abetting or conspiracy.

The FAC contains only conclusory allegations as to how the Association allegedly aided

---

[4] Instead, Plaintiffs must allege that they suffered injury "proximately caused" by their reliance on the Association's "violation of [its] duty by making deceptive material representations."  *See Barnett*, 252 P.3d at 24; *Snyder*, 2016 WL 192270, at *11.  But they do not do so in their FAC.

and abetted and conspired with other Defendants.  *See* FAC ¶¶ 46, 83–84.  Plaintiffs have failed to show that the Affiliation Agreement, Declaration, or any other contract allows the Association to prevent Defendant Cobalt from exercising its unilateral right to affiliate with any club.  FAC Ex. B, ¶ 7.2(a).  And neither failing to follow legal advice nor failing to hold a vote constitutes affirmative "substantial assistance" when the Association has no duty to do so.  *See In re Storage Tech. Corp. Sec. Litig.*, 147 F.R.D. 232, 235 (D. Colo. 1993).  Plaintiffs' allegation that the Association "was working with MVW executives to better understand the proposed affiliation," FAC ¶ 53, cannot be deemed assistance of any kind, let alone substantial assistance necessary for aiding-and-abetting liability.  Similarly, Plaintiffs fail to allege any underlying unlawful act or goal as is required for their conspiracy claim.  *See Double Oak Constr., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140, 146 (Colo. App. 2003).

## CONCLUSION

For all of the foregoing reasons, the Association respectfully requests that the Court dismiss Plaintiffs' claims against the Association with prejudice and without leave to amend.

Respectfully submitted this 19th day of May, 2017.

*/s/ Daniel F. Shea*
**Daniel F. Shea**
**Jessica Black Livingston**
HOGAN LOVELLS US LLP
1200 Seventeenth Street, Suite 1500
Denver, Colorado 80202
Telephone: (303) 899-7300
FAX: (303) 899-7333
E-mail: dan.shea@hoganlovells.com
E-mail:jessica.livingston@hoganlovells.com

*Attorneys for Defendant Association*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 19, 2017, I electronically filed the foregoing **ASPEN HIGHLANDS CONDOMINIUM ASSOCIATION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIFTH AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| **Michael J. Reiser**<br>Law Office of Michael J. Reiser<br>961 Ygnacio Valley Road<br>Walnut Creek, CA 94596<br>reiserlaw@gmail.com<br><br>**Matthew C. Ferguson**<br>The Matthew C. Ferguson Law Firm, P.C.<br>119 South Spring, Suite 201<br>Aspen, Colorado 81611<br>matt@matthewfergusonlaw.com<br><br>**Michael L. Schrag**<br>Gibbs Law Group LLP<br>1 Kaiser Plaza, Suite 1125<br>Oakland, CA 94612<br>mls@classlawgroup.com<br><br>**Tyler R. Meade**<br>The Meade Firm P.C.<br>1816 Fifth Street<br>Berkeley, CA 94710<br>tyler@meadefirm.com<br><br>***Attorneys for Plaintiffs*** | **Naomi G. Beer**<br>1200 17th Street, Suite 2400<br>Denver, Colorado 80202<br>Phone: (303) 572-6500<br>Fax: (303) 572-6540<br>BeerN@gtlaw.com<br><br>**Attorneys for Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., Ritz-Carlton Management Company, LLC, Cobalt Travel Company, LLC and Lion & Crown Travel Company, LLC** |

/s/ Daniel F. Shea