IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 16-01301 PAB

RCHFU, LLC, et al.

      Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al.

      Defendants.

---

## MARRIOTT DEFENDANTS' MOTION FOR PROTECTIVE ORDER PRECLUDING THE DEPOSITION OF STEPHEN P. WEISZ

Defendants Marriott Vacations Worldwide Corporation ("MVWC"), Marriott Ownership Resorts, Inc. ("MORI"), The Ritz-Carlton Management Company, LLC, The Cobalt Travel Company, LLC ("Cobalt"), and The Lion & Crown Travel Co., LLC (collectively, "Marriott Defendants") hereby move the Court, pursuant to Fed. R. Civ. P. 26(c)(1)(A), for a protective order precluding Plaintiffs from taking the deposition of Stephen P. Weisz. Mr. Weisz is the President and Chief Executive Officer of MVWC, a publicly traded corporation (NYSE-VAC) with over 10,000 employees. The record developed through discovery demonstrates that Plaintiffs cannot meet their initial burden of showing that Mr. Weisz has unique, first-hand knowledge of any facts that would justify the disruption to his schedule and diversion of his time associated with preparing for and attending a deposition.

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 7.1(a), the Marriott Defendants' counsel conferred with Plaintiffs' counsel before making this motion and made a reasonable and good faith effort to resolve this dispute. Specifically, the Marriott Defendants' counsel wrote to Plaintiffs' counsel on September 18, 2017 (and followed up with a telephone call on November 21, 2017) to explain why deposing Mr. Weisz is both improper as a matter of law and unnecessary. Plaintiffs' counsel refused to withdraw the Weisz deposition notice.

**FACTUAL BACKGROUND**

**The Nature of Plaintiffs' Claims**

1. Plaintiffs are owners of 1/12 fractional interests in luxury condominium units at The Ritz-Carlton Club, Aspen Highlands, Colorado ("RC Club Aspen"). There are 205 fractional interests at issue in this case. Each 1/12 fractional interest entitles its owner to four use-weeks per year. These use-weeks can be spent either at RC Club Aspen in the specific unit for which the owner contracted or at any other resort with which RC Club Aspen is currently affiliated, subject to availability and other restrictions.

2. Plaintiffs allege that, as a result of a 2014 decision by RC Club Aspen's Program Manager, Cobalt, to affiliate RC Club Aspen with Marriott Vacation Club Destinations ("MVC") (the "MVC Affiliation"), MVC members gained "access to luxury resorts [e.g., RC Club Aspen] that were formerly only available to Plaintiffs and [other RC Club Aspen] Owners." Fifth Amended Complaint ¶ 86. The gravamen of Plaintiffs' claims is the allegation that certain Defendants owed them a fiduciary duty to act in their best interests and that each Defendant

2

either breached that duty or aided and abetted its breach by carrying out or not opposing the MVC Affiliation.

3. Since this case was removed from Colorado state court to this Court in May 2016, Plaintiffs have amended their pleadings (and the Marriott Defendants have moved to dismiss) several times; however, the Court has not yet ruled on the viability of any of Plaintiffs' claims. The Marriott Defendants' motion to dismiss the operative pleading (the Fifth Amended Complaint) is pending before the Court. Pursuant to the Court's order, the parties have engaged in substantial discovery, including the Marriott Defendants' production of almost 65,000 pages of documents and several witnesses for deposition (described below).

**Other Depositions Taken and Noticed by Plaintiffs**

4. Thus far, Plaintiffs have taken and completed the depositions of five witnesses produced by the Marriott Defendants: MVWC's Executive Vice President and Chief Operating Officer and third most senior executive, R. Lee Cunningham; a former MVWC Senior Vice President for Global Product & Customer Development, Mary Lynn Clark; two of MORI's Vice Presidents of Asset Management, Stephanie Sobeck and Richard Hayward; and MORI Senior Association Governance Manager, Lori Phillips.

5. Moreover, the depositions of the following individuals have been noticed and are presently being scheduled: MVWC's Executive Vice President and Chief Growth and Inventory Officer, Lizabeth Kane-Hanan; MORI's Senior Director of Operations Planning, Nathan Guikema; former Ritz-Carlton Destination Club Member Services General Manager, Eveleen Babich; and former RC Club Aspen Managing Broker, Ivan Skoric. Additional depositions continue to be noticed by Plaintiffs.

3

**Plaintiffs' Efforts to Depose Mr. Weisz**

6. On September 12, 2017, Plaintiffs noticed Mr. Weisz's deposition for October 18, 2017. The Marriott Defendants objected, citing the "apex" doctrine, which recognizes that "'high ranking and important executives can easily be subjected to unwarranted harassment and abuse' and should therefore be protected." *See* Marriott Defendants' September 19, 2017 letter to Plaintiffs' counsel, attached to the Declaration of Ian S. Marx ("Marx Decl.") as Exhibit A (quoting *Naylor Farms, Inc. v. Anadarko OGC Co.,* 2011 WL 2535067, at *1 (D. Colo. June 27, 2011) (citation omitted)).

7. Plaintiffs did not respond to the Marriott Defendants' September 19, 2017 letter. Instead, on November 14, 2017, they re-noticed Mr. Weisz's deposition for November 29, 2017. *See* Notice of Videotaped Deposition of Stephen Weisz, attached to Marx Decl. as Exhibit B.

8. On November 21, 2017, the parties' counsel had a telephone conference to discuss the matter. Plaintiffs' counsel continued to insist on Mr. Weisz's deposition but offered no valid reason why the apex doctrine should not apply. *See* Marx Decl. ¶ 4. Accordingly, the Marriott Defendants advised Plaintiffs that they would not produce Mr. Weisz for deposition absent a Court order. *See id.*

9. Mr. Weisz's deposition is presently noticed for December 29, 2017. *See* First Amended Notice of Videotaped Deposition of Stephen Weisz, attached to Marx Decl. as Exhibit C.

**ARGUMENT**

10. Under the apex doctrine, a party wishing to depose a high level company executive must make an initial showing that (a) the executive has unique, non-cumulative, first-

4

hand knowledge of the facts in dispute, and (b) other, less intrusive discovery tools (e.g., written discovery or depositions of others within the company) have been used but have proven unsuccessful. *Naylor Farms,* 2011 WL 2535067, at *2-*4.

11. Once this initial showing has been made, the party arguing for application of the apex doctrine must show that <u>any one</u> of the following circumstances exist: "(1) the executive has no unique personal knowledge of the matter in dispute; (2) the information sought from the executive can be obtained from another witness; (3) the information sought from the executive can be obtained through an alternative discovery method; <u>or</u> (4) sitting for the deposition is a severe hardship for the executive in light of his obligations to his company." *See Naylor Farms,* 2011 WL 2535067, at *2 (citing *EchoStar Satellite, LLC v. Splash Media Partners, L.P.*, 2009 WL 1328226, at *2 (D. Colo. May 11, 2009)) (emphasis added); *see also id.* (explaining burden-shifting).

12. Plaintiffs cannot make their required initial showing. Even if they could, the apex doctrine would prevent them from deposing Mr. Weisz because, as can be seen from the matters on which Plaintiffs claim to need Mr. Weisz's testimony, all of the circumstances required for applying the doctrine exist here (and, as noted, the existence of any one of the circumstances is sufficient).

13. <u>First</u>, Plaintiffs claim to need Mr. Weisz to testify concerning an August 28, 2012 webinar for RC Club Aspen Owners in which he appeared along with Mr. Cunningham, who is MVWC's Executive Vice President and Chief Operating Officer and third most senior executive. *See* Marx Decl. ¶ 4. Mr. Weisz, however, has no unique personal knowledge concerning this meeting.

5

14. The script for the webinar (which has been produced to Plaintiffs and which Mr. Weisz did not draft) shows that the purpose of the webinar was to answer questions that arose concerning (a) a July 17, 2012 letter from Ms. Babich to the RC Club Aspen Owners announcing the MVC Affiliation and the deletion of two resorts from the Ritz-Carlton Destination Club ("RCDC") program, and (b) an August 17, 2012 letter from Mr. Cunningham to RC Club Aspen Owners following up on Ms. Babich's letter. *See generally* August 28, 2012 MVWC – Ritz Carlton Club Member Update (Webinar Script), attached to Marx Decl. as Exhibit D.

15. Mr. Weisz's role in the webinar was limited to discussing, in general terms, the large-scale changes to the luxury segment of the real estate market as a whole that had occurred following the 2008 recession and the impact such changes had had on RCDC and its business model. By contrast, Mr. Cunningham spoke in detail concerning the specific questions that were to be answered during the webinar. *See id.* at Bates No. RCDC013119 (Mr. Weisz: "During our time today, I'll provide you an overview of the current strategic direction for Marriott Vacations Worldwide. Lee [Cunningham] will then provide you a more detailed update on our plans for The Ritz-Carlton Club. Lee will also address questions you and several of the Association Boards have provided us over the last several weeks.").

16. Mr. Cunningham has already been questioned about the webinar during his two-day deposition. Moreover, Mr. Cunningham testified that he "was the final decision maker" with respect to the MVC Affiliation. *See* Deposition of Lee Cunningham (excerpted), attached to the Marx Decl. as Exhibit E, 144:14-20; *see also id.* at 144:21-24 (Q: "But wasn't Steve Weisz at all involved [in the decision to affiliate with MVC]?" A: "I'm certain we consulted with [Mr. Weisz], but it was my decision.").

6

17. Furthermore, in addition to deposing Mr. Cunningham, Plaintiffs have noticed the deposition of the person who signed the July 17, 2012 letter, Ms. Babich. *See supra,* ¶ 5. Accordingly, Plaintiffs have no valid reason to depose Mr. Weisz concerning the August 28, 2012 webinar. *See supra* ¶ 11 (apex doctrine applies where another witness can provide testimony on the topic in question); *cf. Naylor Farms*, 2011 WL 2535067, at *2-4 (finding that defendant's president and chief executive officer's apparent authorship of a PowerPoint presentation regarding a fundamental issue in the case was insufficient to overcome the apex doctrine and warrant his deposition).

18. <u>Second</u>, Plaintiffs claim that Mr. Weisz's testimony is needed to clarify alleged confusion that arose during the depositions of other Marriott Defendant employees regarding the identity of each Marriott Defendant's officers and directors. *See* Marx Decl. ¶ 4. But there is no reason to believe that Mr. Weisz would be able to provide, orally at deposition, a more accurate and comprehensive listing of all of the Marriott Defendants' officers and directors than the already-deposed Marriott Defendant employees were able to provide.[1]

19. That type of information is best obtained through interrogatories, document demands or R. 30(b)(6) depositions, i.e., through alternative discovery methods. *See* ¶ 11, *supra* (availability of information from another witness or through alternative discovery method are circumstances warranting application of apex doctrine). Moreover, the fact that the information Plaintiffs seek is available from other sources necessarily means that Mr. Weisz lacks "unique personal knowledge" concerning the information. *See Naylor Farms*, 2011 WL 2535067, at *3 (holding that an "executive has 'unique personal knowledge' only if he has information that

---

[1] None of those employees appeared as Rule 30(b)(6) corporate designees.

7

cannot be had 'through interrogatories, deposition of a designated' corporate 'spokesperson, or deposition testimony of other persons'") (citation omitted); *see also* ¶ 11, *supra* (apex doctrine applies if executive has "no unique personal knowledge" of matter in dispute).

20. <u>Third</u>, Plaintiffs assert that they need to examine Mr. Weisz about a September 19, 2012 meeting concerning the effect the MVC Affiliation had on an entirely different RCDC resort, The Ritz-Carlton Club, Bachelor Gulch ("RC Bachelor Gulch").  *See* Marx Decl. ¶ 4. Again, Plaintiffs cannot show that Mr. Weisz has unique personal knowledge concerning the meeting because Mr. Cunningham and the RC Bachelor Gulch fractional interest owners' association's president and treasurer, Michael Mullenix and Joanne Perfido, respectively, were also present at the meeting.

21. Indeed, Mr. Cunningham was questioned about the meeting during his two-day deposition, and Plaintiffs have also deposed Mr. Mullenix concerning the meeting.  Thus, Mr. Weisz's testimony concerning the meeting is unnecessary because it would only be cumulative to the testimony of persons present at the meeting who have already been deposed.  In any event, the Bachelor Gulch meeting has nothing to do with Plaintiffs' claims in this action, which allege breaches of fiduciary duty with respect to the RC Club Aspen and the RC Club Aspen Owners.

22. Thus, due to Mr. Weisz's lack of unique personal knowledge concerning the issues on which Plaintiffs seek to depose him and the availability of alternative sources of information on those issues, any deposition of Mr. Weisz is precluded by the apex doctrine.

23. Mr. Weisz's deposition is also (and independently) precluded because, as his Executive Assistant, Mary Helon Newman, attests, Mr. Weisz's obligations to MVCW and the demands on his time as MVCW's President and Chief Executive Officer are such that it would

be a severe hardship for him to prepare for and attend a deposition. *See* Declaration of Mary Helon Newman ¶¶ 2-5 (describing Mr. Weisz's obligations and schedule) *see also* ¶ 11, *supra* (apex doctrine precludes executive's deposition if "sitting for the deposition is a severe hardship for the executive in light of his obligations to his company") (quoting *Naylor Farms,* 2011 WL 2535067, at *2).

24. Plainly, Mr. Weisz's deposition is being sought solely for harassment purposes.

25. This Motion is made in the interests of justice and not for purposes of delay.

## **CONCLUSION**

For all of the foregoing reasons, the Marriott Defendants respectfully request that the Court enter a protective order precluding the deposition of Mr. Weisz.

Dated: December 22, 2017            Respectfully submitted,

By:    *s/ Naomi G. Beer*
Naomi G. Beer
Philip R. Sellinger
Ian S. Marx
GREENBERG TAURIG, LLP
1200 Seventeenth Street, Suite 2400
Denver, Colorado 80202
Tel:    303.572.6500
Fax:    303.572.6540
Email:   BeerN@gtlaw.com
         SellingerP@gtlaw.com
         MarxI@gtlaw.com

*Attorneys for Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC, The Cobalt Travel Company, LLC, and The Lion & Crown Travel Co., LLC*

## CERTIFICATE OF SERVICE

I hereby certify that, on December 22, 2017, a true and accurate copy of the foregoing **MARRIOTT DEFENDANTS' MOTION FOR PROTECTIVE ORDER PRECLUDING THE DEPOSITION OF STEPHEN P. WEISZ**, the Declaration of Ian S. Marx (including exhibits) and the Declaration of Mary Helon Newman were filed and served with the Clerk of the Court via CM/ECF filing system, which will send notification to the following:

Michael J. Reiser
Lilia Bulgucheva
Law Office of Michael J. Reiser
1475 N Broadway, Suite 300
Walnut Creek, CA 94596
*Counsel for Plaintiffs*

Linda Pham Lam
Michael Schrag
Gibbs Law Group LLP
505 14th Street, Suite 1100
Oakland, CA 94612
*Counsel for Plaintiffs*

Matthew C. Ferguson
The Matthew C. Ferguson Law Firm, P.C.
119 South Spring, Suite 201
Aspen, Colorado 81611
*Counsel for Plaintiffs*

Tyler R. Meade
The Meade Firm P.C.
1816 Fifth Street
Berkeley, CA 94710
*Counsel for Plaintiffs*

          *s/ Julie Eaton*
          Julie Eaton

*(Original on file at offices of Greenberg Traurig, LLP, pursuant to C.R.C.P. 121, § 1-26)*