## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

Civil Action No. 1:16-cv-01301-PAB-GPG

**RCHFU, LLC,** *et al.*

Plaintiffs,

v.

**MARRIOTT VACATIONS WORLDWIDE CORPORATION,** *et al.*

Defendants.

___

### PLAINTIFFS' OPPOSITION TO MOTION FOR PROTECTIVE ORDER PRECLUDING THE DEPOSITION OF STEPHEN P. WEISZ
___

### I. INTRODUCTION

Plaintiffs, owners of 230 fractional interests, should be allowed to depose Marriott Vacations Worldwide Corporation ("MVW") President and CEO, Stephen P. Weisz because he has special knowledge of the Marriott Defendants' strategy and motivation for carrying out the breaches of fiduciary duty that lie at the heart of this action. Documents and other witness testimony show that Mr. Weisz oversaw the so-called "evolution" (and "re-engineering") of the Ritz-Carlton Destination Club ("RCDC") and Marriott brands after MVW "spun-off" from Marriott International. As part of this "evolution," the Marriott Defendants affiliated the Ritz-Carlton Club in Aspen ("Ritz-Aspen") with the Marriott Vacation Club ("MVC"). This affiliation allowed the Marriott Defendants to market access to luxury RCDC locations to their more than 400,000 MVC points-based members. Increased points sales enriched the Marriott

1

Defendants, but diluted the luxury product Plaintiffs purchased and permanently depressed the value of those fractional units.

Mr. Weisz was the signatory of the "Sponsor's Certification" in the New York Offering Plan for the Ritz-Aspen, showing that from the project's inception, he held himself out as being a principal with hands-on responsibility for developing and operating the Ritz-Aspen. Before the affiliation occurred, Mr. Weisz participated in a webinar in which he explained to Ritz-Aspen owners -- including Plaintiffs -- why MVW was abandoning its luxury Ritz-Carlton segment: "Marriott Vacations Worldwide[ ] have collectively recorded losses in the Ritz Carlton Club business of over $600 million from January 2009 through June of this year." Ex. A to Declaration of Michael Schrag ("Schrag Decl."), Transcript of 8/28/2012 Ritz Carlton Club Member Update ("Webinar") at RCDC013120. Mr. Weisz was also on MVW's Strategic Council, which played a major role in the re-engineering of the Ritz-Carlton luxury brand, including the affiliation at issue in this case. Ex. B to Schrag Decl., Deposition of Lee Cunningham ("Cunningham Depo.") at 436:6-15. Moreover, other MVW executives such as senior vice president Lee Cunningham testified that they consulted with Mr. Weisz about important issues in this case. *See* Cunningham Depo. at 144:21-24. And, Michael Mullenix, a former president of the board of directors of the homeowners' association for the Ritz-Carlton Club in Bachelor Gulch (a "sister club") testified to confronting Mr. Weisz when Mr. Mullenix's club was at risk of a similar affiliation with MVW. Mr. Mullenix learned that not only did Mr. Weisz have broader plans for the Ritz-Carlton segment, but that he also had the power to postpone or stop any affiliation.

As such, the evidence shows that Mr. Weisz has unique personal knowledge as to *why* MVW abandoned its Ritz-Carlton brand by affiliating it with MVC and how it has benefitted from doing so – to the detriment of Plaintiffs' property values. Thus, without deposing Mr. Weisz, Plaintiffs cannot obtain a comprehensive and cohesive explanation of this brand "evolution" that emanated from the highest levels at MVW and led to the affiliation between MVC and Ritz-Aspen as well as the loss of several sister clubs that rebelled against Mr. Weisz's plan. Deposing Mr. Weisz would provide Plaintiffs with key evidence relevant to both liability and damages that they cannot get from other witnesses or documents.

## II. ARGUMENT

### A. Mr. Weisz Fails to Meet His Burden of Establishing Good Cause for Protection from a Deposition

An "executive seeking to avoid being deposed bears the burden of establishing that the 'apex doctrine' precludes his deposition." *Bose Corp. v. Able Planet, Inc*., 2012 WL 5354795, *1 (D. Colo. Oct. 30, 2012). This notion is consistent with the general rule that "a party seeking protection from discovery bears the ultimate burden of establishing good cause for such protection." *Naylor Farms, Inc. v. Anadarko OGC Co*., 2011 WL 2535067, *2 (D. Colo. June 27, 2011). Courts developed the apex doctrine to protect, in limited circumstances, high executive officers removed from the daily subject matter of the litigation from the burdens of a deposition. *Peiker Acustic, Inc. v. Kennedy*, 2011 WL 1344238, *1 (D. Colo. Apr. 8, 2011). The doctrine applies only upon a showing that: (1) the executive has no unique personal knowledge of the matter in dispute; (2) the information sought can be obtained from another witness; (3) the information can be obtained through an alternative discovery method; or (4) severe hardship on the deponent. *Id*. "Generally, the executive seeking to avoid being deposed must demonstrate *by*

3

*evidence* that he has no unique personal knowledge." *Id*. (citations omitted) (emphasis added). The party seeking to depose the executive need only make "some showing that the executive has 'unique personal knowledge' of some relevant issues." *Naylor*, 2011 WL 2535067 at *2 (citations omitted).

None of the factors triggering the apex doctrine are present here. First, Mr. Weisz presents no evidence that he in fact has no unique personal knowledge of the matters at issue in this case. On the contrary, there is evidence that Mr. Weisz *does* have special knowledge.[1]

Indeed, even before the spin-off in 2011, Mr. Weisz had already confirmed that he was responsible for the Ritz-Aspen project. In 2000, Mr. Weisz himself signed the "Sponsor's Certification" that was a part of the New York Offering Plan for the Ritz-Aspen. Ex. C to Schrag Decl., Offering Plan at Buchanan000437. In doing so, he certified under penalty of perjury that as a sponsor of the Ritz-Aspen, he "ha[s] primary responsibility for compliance with the … laws and regulations as may be applicable." *Id*. The same offering plan affirms that Mr. Weisz is a principal of the sponsor, and that as such he "is directly involved in this fractional interest offering." *Id*. at Buchanan000129. Having affirmed his direct involvement with Ritz-Aspen, Mr. Weisz cannot now avoid a deposition concerning a corporate strategy he helped devise.[2]

---

[1] The fact that Mr. Weisz has unique knowledge of the issues in this litigation is clear from documents that the Marriott Defendants have already produced. However, the Marriott Defendants did not search Mr. Weisz's documents as part of their ESI search. The parties are currently meeting and conferring over that issue; thus Plaintiffs are willing to wait until after any further Weisz-related documents are produced before taking Mr. Weisz's deposition.

[2] The fact that Mr. Weisz was president of the Ritz-Carlton Development Company further shows that he has knowledge of this corporate strategy. Cunningham Depo. at 404:9-12; Ex. D to Schrag Decl., 12/31/11 "Schedule of Key Operating Statistics" of Cobalt Travel Company at RCDC Sample11268.

In September 2012, Mr. Weisz participated in an intimate and heated meeting in Orlando regarding objections to the potential affiliation of the Ritz-Carlton Club at Bachelor Gulch with MVC. Cunningham Depo. at 17:21-19:24; 177:9-178:25. This proposed affiliation is nearly identical to the one actually imposed at Ritz-Aspen. Michael Mullenix, a former association president at Bachelor Gulch, testified to his conversations with Mr. Weisz regarding MVW's abandonment of the RCDC segment.

At this meeting with Mr. Weisz, Mr. Mullenix learned that MVW was never going to develop another Ritz-Carlton club again. Ex. E to Schrag Decl., Deposition of Michael Mullenix ("Mullenix Depo.") at 68:19-22. Mr. Weisz told Mr. Mullenix that MVW "had" to take the Ritz-Carlton assets when Marriott International was "spun-off" into MVW and MVW paid a large sum for those assets. Mullenix Depo. at 70:13-71:7.

Mr. Weisz also had authority to postpone – and almost certainly stop – any affiliation. In November 2012, Mr. Weisz postponed Bachelor Gulch's affiliation with MVC upon reviewing a consultant's study and feedback from Bachelor Gulch members. Ex. F to Schrag Decl, 11/6/2012 E-mail from Mr. Mullenix.

Contrary to the Marriott Defendants' contention, the fact that Mr. Mullenix and Lee Cunningham were present in the same meeting regarding the affiliation as Mr. Weisz does not change the reality that Mr. Weisz was leading the charge for MVW's brand "evolution" and its abandonment of the RCDC segment. The proposed affiliation of Bachelor Gulch (and the objections to it) discussed at this meeting are nearly identical to the issues concerning the affiliation of Ritz-Aspen. Indeed, it was all part of the same "evolution" announced in August 2012. Thus, Plaintiffs should be allowed to question Mr. Weisz about these topics because they

are directly relevant to Plaintiffs' claim that the Marriott Defendants breached and aided and abetted the breach of fiduciary duties by affiliating for Marriott's financial gain, knowing it would impair values of Plaintiffs' fractional shares. Indeed, contrary to the Marriott Defendants' assertion, Plaintiffs were not able to learn everything they need about this meeting during the Cunningham and Mullenix depositions. Mr. Cunningham's recollection of events at the meeting was imperfect. For example, he could not recall the Marriott Defendants' response when Mr. Mullinex argued that the proposed affiliation would depress property values. Cunningham Depo. at 178:2-13.

Additionally, a webinar that Mr. Cunningham and Mr. Weisz presented to all RCDC owners in August 2012 explaining MVW's reasons for the affiliation – and for veering away from the RCDC system in favor of the MVC – further highlights Mr. Weisz's role in directing and overseeing the affiliation. Mr. Cunningham testified that Mr. Weisz answered questions during this Webinar. Cunningham Depo. at 363:13-18. As Mr. Weisz put it during the webinar, "I'll provide you an overview of the current strategic direction for Marriott Vacations Worldwide. Lee [Cunningham] will then provide you a more detailed update on our plans for the Ritz Carlton Club." Webinar at 2. As CEO of MVW, Mr. Weisz was in charge of deciding what to do with the Ritz-Carlton Destination Clubs that MVW now had from Marriott International – including the fate of the Ritz-Aspen.

Mr. Cunningham also explained that Mr. Weisz was a part of MVW's "Strategic Council," which is an executive group that met once a month and had the affiliation on its agenda. Cunningham Depo. at 436:2-15. Moreover, at least two key documents in this case were sent to Mr. Weisz. First, the November 2012 cease-and-desist letter from prominent Denver law

firm Brownstein Hyatt Farber (on behalf of Ritz-Aspen owners) which stated in no uncertain terms that affiliation of the Ritz-Aspen with MVC would constitute a breach of fiduciary duty as well as an express violation of the Ritz-Aspen's governing documents, was addressed directly to Mr. Weisz. Ex. G to Schrag Decl, 11/21/2012 Letter from Philip Gosch. Second, Mr. Weisz also received an August 2012 letter from Juan Pablo Cappello, a Ritz-Aspen owner (at the time a Greenberg Traurig partner), regarding the same concerns – that any affiliation would greatly benefit Marriott while putting the owners' property values in dire jeopardy. Ex. H to Schrag Decl., 8/27/2012 Letter from Juan Pablo Cappello. Plaintiffs seek to depose Mr. Weisz to obtain an explanation of what corporate strategies, if any, he crafted in response to these concerns of illegality. Other witnesses and documents have not rendered such an explanation.

His receipt of these two letters and consequent knowledge that affiliation would damage Plaintiffs show that Mr. Weisz's testimony is also relevant to the remedies in this case. Where a defendant acts consciously to cause harm, the plaintiff is entitled to "the unjust enrichment of [the] conscious wrongdoer, or of a defaulting fiduciary" in the form of "the net profit attributable to the underlying wrong." Restatement (Third) of Restitution §51(4). Mr. Weisz will be able to speak to the Marriott Defendants' awareness of the harm that affiliation would have on Plaintiffs' property values, and what the Marriott Defendants did despite that awareness – as well as how it benefitted the Marriott Defendants' MVC membership sales. Under Colorado law, punitive damages are also available where a defendant has breached, or aided and abetted in breaching, a fiduciary duty. *See Western Fire Truck, Inc. v. Emergency One, Inc*., 134 P.3d 570, 578-579 (Colo. App. 2006). Where a defendant is aware that its actions could cause substantial harm to the plaintiff, a court may award punitive damages. *Id*. at 579.

The Marriott Defendants' argument that Plaintiffs have no reason to depose Weisz because they already deposed Eveleen Babich, who signed a July 2012 letter to members announcing the affiliation, is puzzling. Motion for Protective Order Precluding the Deposition of Stephen P. Weisz ("Motion"), Dkt. No. 166 at ¶ 17. While Ms. Babich may have some relevant knowledge, the mere fact that she signed the letter should not prevent Plaintiffs from deposing executives like Mr. Weisz, who crafted the corporate strategy and policy expressed in the letter.

Indeed, no other witness could parallel Mr. Weisz's knowledge about the MVW spin-off, which included the RCDC. While Mr. Cunningham is a senior executive who testified about details of the affiliation, even the Marriott Defendants admit that it was Mr. Weisz who spoke about "large-scale changes to the luxury segment of the real estate market as a whole that had occurred following the 2008 recession and the impact such changes had had on RCDC and its business model." Motion at ¶ 15. These are the exact topics about which Plaintiffs wish to depose Mr. Weisz.

The other two factors that would render the apex doctrine applicable are not present here. For one, Plaintiffs cannot obtain this information through other discovery methods. An explanation of the MVW spin-off, MVW's acquisition of Ritz-Carlton assets, and MVW's plan in 2012 regarding what it would do with those assets is best suited for a deposition; not through written discovery. The Marriott Defendants posit that one of Plaintiffs' main reasons for deposing Mr. Weisz is for a clarification of the "alleged confusion … regarding the identity of each Marriott Defendants' officers and directors." Motion at ¶ 18. But Plaintiffs have little interest in a "comprehensive listing" of the Marriott Defendants' officers and directors; rather,

Plaintiffs need Mr. Weisz's testimony on MVW's larger scheme with respect to its RCDC segment and its plans for affiliating its luxury deed ownership clubs with the MVC points consumers. Plaintiffs need to cross-examine Mr. Weisz to show that he was aware that this would cause brand dilution. Such evidence is ill-suited for an interrogatory request, and documents alone are unlikely to tell the whole story.

Nor is "severe hardship" present here. Plaintiffs have been and will continue to be flexible on the timing and location of Mr. Weisz's deposition. While Mr. Weisz's executive assistant, Mary Helon Newman, attested that it would be an "extreme hardship" for Mr. Weisz to prepare for and attend a deposition, particularly during the first and last quarters of each year (Declaration of Mary Helon Newman ("Helon Decl."), Dkt. No. 167 at ¶¶ 2, 3), the last quarter of the year has now passed. And Ms. Helon's reasons for why Mr. Weisz cannot be deposed during the first quarter of the year – because "the company assesses its performance over the past year [and] finalizes its strategic goals and plans for the new year]" do not meet the standard of "severe hardship." Helon Decl. ¶¶ 4, 5. While Plaintiffs appreciate that Mr. Weisz has important tasks, his very involvement in strategic goals and plans during 2011-2014 make his deposition necessary in this case.

Finally, the Marriott Defendants' suggestion that this deposition was noticed for "harassment" (Motion at ¶ 24) is disappointing, as their counsel know full well that all counsel in this case have been cooperating on an intense deposition schedule, and been far too busy to take a deposition for a "harassing" purpose.

### III. CONCLUSION

Because Mr. Weisz (a) has unique personal knowledge about several issues in this case, which (b) cannot be obtained from other witnesses or (c) other discovery methods, and (d) has failed to meet his burden of proving a severe hardship from sitting for a one-day deposition between now and March 15, 2018, Plaintiffs respectfully request that the Court deny the Marriott Defendants' motion for a protective order precluding Mr. Weisz's deposition.

Dated: January 8, 2018                    Respectfully submitted,

                                          GIBBS LAW GROUP LLP

                                          */s/ Michael Schrag*
                                          Michael Schrag (CA Bar No. 185832)
                                          505 14th Street, Suite 1110
                                          Oakland, CA 94612
                                          Phone: (510) 350-9718
                                          Facsimile: (510) 350-9701
                                          E-mail: mls@classlawgroup.com

                                          *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 8th day of January, 2018, a true and accurate copy of the foregoing **Plaintiffs' Opposition to Motion for Protective Order Precluding the Deposition of Stephen P. Weisz**, along with the Declaration of Michael Schrag in support thereof, was filed and served via CM/ECF filing system upon following:

Naomi G. Beer, Esq.
Greenberg Traurig, LLP
1200 17th Street, Suite 2400
Denver, Colorado 80202
beern@gtlaw.com

Ian S. Marx, Esq.
Philip R. Sellinger, Esq.
Greenberg Traurig, LLP
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
marxi@gtlaw.com
sellingerp@gtlaw.com

Daniel F. Shea, Esq.
Jessica Black Livingston, Esq.
Hogan Lovells US LLP
1200 Seventeenth Street, Suite 1500
Denver, Colorado 80202
dan.shea@hoganlovells.com
jessica.livingston@hoganlovells.com

*/s/ Marianne Fogle*
Marianne Fogle