IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 16-01301 PAB

RCHFU, LLC, et al.

      Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al.

      Defendants.

_____

**MARRIOTT DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF
MOTION FOR PROTECTIVE ORDER PRECLUDING
THE DEPOSITION OF STEPHEN P. WEISZ**

_____

## INTRODUCTION

In their moving brief in support of a motion for a protective order, the Marriott Defendants explained in detail why the apex doctrine precludes Plaintiffs from deposing MVWC's President and Chief Executive Officer, Stephen P. Weisz.[1]  That having been done, it was then incumbent upon Plaintiffs to make an initial showing that Mr. Weisz (a) has unique, first-hand knowledge of the facts in dispute, and (b) other, less intrusive discovery tools (e.g., depositions of others within the company) have been used but have proven unsuccessful.  *See Naylor Farms, Inc. v. Anadarko OGC Co.,* 2011 WL 2535067, at *2-4 (D. Colo. June 27, 2011).  Plaintiffs have failed to meet their burden.

---

[1] Capitalized terms are as defined in the Marriott Defendants' moving brief.

## <u>ARGUMENT</u>

Plaintiffs maintain that they need to depose Mr. Weisz because he has "unique, first-hand knowledge" concerning the issues in this case. But what Plaintiffs portray as Mr. Weisz's "unique, first-hand knowledge" is no more than what any CEO of a large company would have concerning the company's on-going projects and activities, and does not rise to the level of satisfying the high standard necessary to compel a CEO's deposition. Plaintiffs' attempts to create facts to justify Mr. Weisz's testimony fall short of demonstrating that he has the required "unique first-hand knowledge." *See, e.g.,* Pl. Br. at 1 (incorrectly asserting that Mr. Weisz "oversaw the so-called 'evolution' (and 're-engineering') of [RCDC] and Marriott brands after MVW 'spun-off' [sic] from Marriott International"); *id.* at 2 (asserting that MVWC Executive Vice President Lee Cunningham "consulted with Mr. Weisz about important issues in this case"). The asserted facts that Mr. Weisz "was the signatory of the 'Sponsor's Certification' in the New York Offering Plan for the Ritz-Aspen" and "was … on MVW's Strategic Council, which played a major role in … the affiliation…" do not demonstrate any "unique, first-hand knowledge," as required by the applicable law. *Id.* Even accepting, for purposes of this motion, Plaintiffs' unsupported description of Mr. Weisz as "a principal with hands-on responsibility for developing and operating the Ritz-Aspen" who had "direct involvement with Ritz-Aspen" (*id.* at 2, 4), that does not show any "unique, first-hand knowledge" of the facts in dispute in this case. As for Plaintiffs' assertion that Mr. Weisz should be required to testify because he "had the power to postpone or stop any affiliation," that also does not show "unique, first-hand knowledge." *Id.* at 2, 5.

Plaintiffs' assertions are disproven by the record.  For example, Plaintiffs contend that only Mr. Weisz can testify "as to *why*" the MVC Affiliation took place, and they say that, "without deposing Mr. Weisz, Plaintiffs cannot obtain a comprehensive and cohesive explanation of this brand 'evolution' that emanated from the highest levels at MVW…."  *Id.* at 3 (italics added by Plaintiffs).[2]  In fact, Plaintiffs posed this very "why" question to MVWC Executive Vice President, Lee Cunningham, who, as the individual who actually made the decision to affiliate with MVC, is in the best position to know the answer.[3]  Asked to explain the genesis of the affiliation decision, Mr. Cunningham testified:

> Our primary reason was to provide additional options for Ritz-Carlton Destination Club fractional owners to be able to have multiple vacation options.  The secondary [reason] was … that we knew that there was inventory that was going into the Destination Club Trust product and points product and, therefore, … owners of that product were going to be able to reserve accommodations into those Ritz-Carlton Destination Clubs, and … we wanted to make th[ose] … available to the fractional members of the Ritz-Carlton Club.

Cunningham Dep. 153:6-19 (attached to the January 18, 2018 Declaration of Ian S. Marx ("Jan. 18, 2018 Marx Decl.") as Exhibit A).  After obtaining this answer from Mr. Cunningham, the questioning moved on to other topics.  Mr. Cunningham did not volunteer Mr. Weisz as someone who might have more knowledge than himself

---

[2] It is worth noting that, during meet-and-confer, Plaintiffs' counsel did not identify this as a topic on which they wished to depose Mr. Weisz.  The only three topics discussed among counsel were (a) the August 28, 2012 webinar in which Mr. Weisz participated along with Lee Cunningham; (b) the identities of officers and directors of the individual Marriott Defendants; and (c) the September 19, 2012 Bachelor Gulch meeting.  *See* Dec. 22, 2017 Marx Decl. ¶ 4.  Although Plaintiffs have never disputed that description of the topics discussed during the meet-and-confer, they have now added other topics while apparently eliminating topic (b).  *See* Pl. Br. at 8 (stating that they have "little interest" in knowing the identities of the Marriott Defendants' officers and directors).  Plaintiffs' position has, thus, become a moving target.

[3] *See* Defendants' moving brief at 6 (quoting Cunningham Dep. (Dec. 22, 2017 Marx Decl., Ex. E) 144:14-20 (Mr. Cunningham "was the final decision maker" with respect to the MVC Affiliation (emphasis added); *see also id.* at 144:21-24 (Q: "But wasn't Steve Weisz at all involved [in the decision to affiliate with MVC]?" A: "I'm certain we consulted with [Mr. Weisz], but it was my decision.") (emphasis added)..

concerning the reason for the MVC Affiliation (and certainly no "unique, first-hand knowledge"), nor did Plaintiffs' counsel ask whether Mr. Weisz had such information. Thus, Plaintiffs have no basis for claiming that Mr. Weisz has "unique, first-hand knowledge" of the MVC Affiliation or what motivated it.

The record also belies Plaintiffs' contention that they need Mr. Weisz to testify concerning the September 19, 2012 meeting on an unrelated resort (Bachelor Gulch) because "Mr. Cunningham's recollection of events at the meeting was imperfect. For example, [Mr. Cunningham] could not recall the Marriott Defendants' response when [Michael]. Mullenix argued that the proposed affiliation would depress property values" at Bachelor Gulch. Pl. Br. at 6. But Plaintiffs questioned Mr. Mullenix at deposition on that very point, and he was able to recall "the Marriott Defendants' response":

> Q:     Do you remember what their [i.e., the Marriott Defendants'] response was to the statement by you that you felt that the affiliation would further depress the values of the residence interests?
> A:     If I remember what Steve [Weisz] said, it was something [like] that's your interpretation, not ours.

Deposition of Michael Mullenix (Jan. 18, 2018 Marx Decl. Ex. B) 78:12-17. Thus, Plaintiffs already have the information they claim to need (and is, in any event, irrelevant to the claims they have asserted). Moreover, Plaintiffs can hardly contend that Mr. Weisz has "unique, first-hand knowledge" of what transpired at the September 19, 2012 meeting given that three other people attended it.

Equally baseless is Plaintiffs' contention that Mr. Weisz should be deposed because "at least two key documents in this case were sent to [him]," specifically, a November 2012 "cease-and-desist" letter and an August 2012 complaint letter from Ritz-

Aspen owner Juan Pablo Cappello.  *See* Pl. Br. at 6-7.  Plaintiffs are being less than forthcoming here.  The "cease-and-desist" letter actually had two addressees: Mr. Weisz and Lee Cunningham (*see* Schrag Decl. Ex. G), and the Cappello letter was addressed only to Lee Cunningham with Mr. Weisz being just one of several "copy" recipients.  *See id.,* Ex. H.  In any event, Mr. Weisz's mere receipt of these letters does not give him "unique, first-hand knowledge" of the matters discussed therein.  *Cf. Hanson v. Loparex Inc.,* 2010 U.S. Dist LEXIS 146817, at *6-8 (D. Minn. Sept. 27, 2010) (on motion to preclude under the apex doctrine, finding that executive's having been copied on correspondence "d[id] not demonstrate that [the executive] possesse[d] any information that could not be more easily obtained from a lower level employee, much less that his information is unique or special"); *Chick-Fil-A, Inc. v. CFT Dev., LLC,* 2009 U.S. Dist. LEXIS 34496, at *7 (M.D. Fla. Apr. 3, 2009) (precluding, under the apex doctrine, the deposition of a company president and chief operating officer which had been sought based on his receipt of a certain letter, and declaring that how or whether the executive responded to the letter "has little, if any, bearing on the disputed issues in this case … [and does not show] that [he] has superior or unique knowledge regarding an issue such that he should be compelled to appear for a deposition").

Nor is the fact that Mr. Weisz participated (along with Lee Cunningham) in an August 2012 webinar a basis for deposing Mr. Weisz.  As discussed in Defendants' moving brief (and as Plaintiffs freely acknowledge, *see* Pl. Br. at 6, 8), Mr. Weisz spoke only in the most general terms concerning broad economic trends affecting, not only RCDC, but the luxury real estate market as a whole.  By no stretch of the imagination

could Mr. Weisz's webinar remarks be deemed to show unique, first-hand knowledge of a fact in dispute.[4]  *Cf. Naylor Farms,* 2011 WL 253507, at *2-4 (finding president and chief executive officer's authorship of PowerPoint presentation regarding a fundamental issue in the case insufficient to overcome apex doctrine and warrant his deposition).

Thus, Plaintiffs have failed to make the initial showing required of them under the apex doctrine, namely, that Mr. Weisz has any unique knowledge concerning the facts of this case.  Accordingly, Plaintiffs should be precluded from deposing Mr. Weisz.  *See Meeker v. Life Care Ctrs. of Am., Inc.,* 2015 U.S. Dist. LEXIS 119976, at *6-9 (D. Colo. Sept. 9, 2015) (finding plaintiff's "fail[ure] to make a showing that whatever personal knowledge (if any) [the executive] might have concerning [the facts at issue in the case] is unique to [him] … provides good cause to preclude Plaintiff from deposing [the executive]").

Even if Plaintiffs had been able to make the required initial showing, the Marriott Defendants have satisfied their burden to show that Mr. Weisz should not be deposed.[5] As discussed above and in the Marriott Defendants' moving brief, the information Plaintiffs purport to need can be (or already has been) obtained through less intrusive means, and Mr. Weisz's executive assistant avers that preparing for and attending a

---

[4] Plaintiffs already know what Mr. Weisz said in the webinar because they have been given the verbatim script. *See* Defendants Moving Brief at 6, ¶ 14.

[5] As explained in the Marriott Defendants' moving brief, assuming the party seeking the deposition is able to make its initial showing of "unique, first-hand knowledge," then the party arguing for application of the apex doctrine must show that <u>any</u> <u>one</u> of the following circumstances exist: "(1) the executive has no unique personal knowledge of the matter in dispute; (2) the information sought from the executive can be obtained from another witness; (3) the information sought from the executive can be obtained through an alternative discovery method; <u>or</u> (4) sitting for the deposition is a severe hardship for the executive in light of his obligations to his company." *See Naylor Farms,* 2011 WL 2535067, at *2 (emphasis added).

deposition would be a severe hardship for Mr. Weisz.[6]  Thus, under the apex doctrine, Mr. Weisz's deposition should be precluded.

## CONCLUSION

For all of the foregoing reasons and for the reasons set forth in their moving brief, the Marriott Defendants respectfully request that the Court enter a protective order precluding the deposition of Mr. Weisz.

Dated:  January 18, 2018                    Respectfully submitted,

By:     *s/ Naomi G. Beer*
        Naomi G. Beer
        Philip R. Sellinger
        Ian S. Marx
        GREENBERG TRAURIG, LLP
        1200 Seventeenth Street, Suite 2400
        Denver, Colorado 80202
        Tel:     303.572.6500
        Fax:    303.572.6540
        Email:  BeerN@gtlaw.com
                  SellingerP@gtlaw.com
                  MarxI@gtlaw.com

        *Attorneys for Defendants Marriott*
        *Worldwide Corporation, Marriott*
        *Ownership Resorts, Inc., The Ritz-Carlton*
        *Management Company, LLC, The Cobalt*
        *Travel Company, LLC, and The Lion &*
        *Crown Travel Co., LLC*

---

[6] Plaintiffs discount Mr. Weisz's executive assistant's sworn statement that Mr. Weisz's already-heavy schedule is particularly filled during the first quarter of the year, claiming that it "do[es] not meet the standard of 'severe hardship.'"  Plaintiffs cite no authority for that sweeping pronouncement, nor are they in any position to make it.

## CERTIFICATE OF SERVICE

I hereby certify that, on January 18, 2018, a true and accurate copy of the foregoing **MARRIOTT DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF MOTION FOR PROTECTIVE ORDER PRECLUDING THE DEPOSITION OF STEPHEN P. WEISZ** and the January 18, 2018 Supplemental Declaration of Ian S. Marx (including exhibits) were filed and served with the Clerk of the Court via CM/ECF filing system, which will send notification to the following:

Michael J. Reiser
Lilia Bulgucheva
Law Office of Michael J. Reiser
1475 N Broadway, Suite 300
Walnut Creek, CA 94596
*Counsel for Plaintiffs*

Matthew C. Ferguson
The Matthew C. Ferguson Law Firm, P.C.
119 South Spring, Suite 201
Aspen, Colorado 81611
*Counsel for Plaintiffs*

Tyler R. Meade
The Meade Firm P.C.
1816 Fifth Street
Berkeley, CA 94710
*Counsel for Plaintiffs*

Linda Pham Lam
Michael Schrag
Gibbs Law Group LLP
505 14th Street, Suite 1100
Oakland, CA 94612
*Counsel for Plaintiffs*

*s/ Julie Eaton*
Julie Eaton

*(Original on file at offices of Greenberg Traurig, LLP, pursuant to C.R.C.P. 121, § 1-26)*