IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 1:16-cv-01301-PAB-GPG

**RCHFU, LLC,** *et al.*

Plaintiffs,

v.

**MARRIOTT VACATIONS WORLDWIDE CORPORATION,** *et al.*

Defendants.

### DECLARATION OF MATTHEW C. FERGUSON IN SUPPORT OF PLAINTIFFS' MOTION TO AMEND SCHEDULING ORDER TO AMEND COMPLAINT TO ADD CLAIM FOR EXEMPLARY DAMAGES AND MOTION TO AMEND COMPLAINT

I, Matthew C. Ferguson**,** declare and state:

1. I am an attorney and the shareholder of The Matthew C. Ferguson Law Firm, P.C., co-counsel for Plaintiffs in the above-captioned action. I am a competent witness to give testimony to the facts set forth herein. I am a member of the Colorado bar and of this Court. Furthermore, as a bar-licensed attorney in good standing in Colorado, I am an officer of Colorado state and federal courts.

2. I respectfully submit this Declaration in further support of Plaintiffs' Motion to Amend the Scheduling Order to Amend Complaint to Add a Claim for Exemplary Damages and the Motion to Amend the Complaint. ("Motion to Amend").

3. The purpose of this Declaration is to set forth my relevant testimony in further support of the Motion to Amend concerning relevant procedural history and some of the prima

facie evidence required for the Motion to Amend, and specifically for punitive damages under Colorado law.

### A. RELEVANT PROCEDURAL HISTORY

4. The statement of the relevant procedural history set forth in the Motion to Amend is true and accurate.

5. On September 8, 2016, Plaintiffs propounded their first set of written discovery to Marriott Vacations Worldwide Corporation ("MVW"), Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC, Cobalt Travel Company, LLC, Inc. ("Cobalt"), and Lion & Crown Travel Co., LLC (collectively, the "Marriott Defendants" or "Marriott") and the Members' Association.

6. The Marriott Defendants and the Association served their responses and objections to the Plaintiffs' requests on October 11, 2016.

7. Since that time, the Marriott Defendants' document production process has been laborious and very lengthy. Initially, Marriott disclosed and produced insignificant documentation. It has since taken an extraordinarily long time to produce their documents. The production continues to this day. Facts concerning the Marriott Defendants' document production are detailed in the parties' recent joint status report and request to extend fact discovery and will not be repeated but are be incorporated here. ECF No. 152, at pp. 1–2.

8. On November 10, 2016, the Marriott Defendants disclosed only 4,871 pages of records, which were comprised of the governing Association documents (available to all

Plaintiffs already), Ritz's records for communication logs concerning the then Plaintiffs'[1] use of the units, some Association budgets, and some Owner Usage Summaries.

9. The Marriott Defendants did not produce another document for approximately eight more months — *i.e.,* June 2017.

10. On August 4, 2017, the Marriott Defendants stated that they "believe that . . . the production . . . is substantially complete." A true and correct copy of an August 4, 2017 letter from Ian Marx (Marriott's counsel) to Tyler Meade and Michael Reiser (plaintiffs' counsel) is attached hereto as **Exhibit "1".**

11. After Plaintiffs waited for over ten months, the Marriott Defendants produced approximately 150,000 pages. Plaintiffs promptly reviewed and organized these 150,000 pages in just one month and used the documents to prepare for depositions.

12. On September 12, 2017, Plaintiffs began noticing depositions, including the depositions of Marriott senior executives Stephanie Sobeck (October 11, 2017) and Lee Cunningham, the Chief Operating Officer of Marriott Vacations Worldwide – MVW (October 12, 2017).

13. On September 19, 2017, the Marriott Defendants made a request to continue these depositions to move the depositions to mid-November. A true and correct copy of the September 19, 2017, letter from Ian Marx to Tyler Meade and Michael Reiser agreeing to postpone the depositions is attached hereto as **Exhibit "2".**

---

[1] There were far less plaintiffs in that time period. These types of records were recently produced for the plaintiffs that have been added since October 2016.

14. It was during these mid-November depositions that Plaintiffs began to discover and then confirm key facts that underpin this Motion to Amend and develop the prima facie evidence needed for the Motion to Amend.

B. **FACTS AND PRIMA FACIE EVIDENCE SUPPORTING GOOD CAUSE TO AMEND THE COMPLAINT TO ADD A CLAIM FOR EXEMPLARY DAMAGES**

15. During the deposition of Cunningham, Plaintiffs learned that the Marriott Defendants' decision to affiliate the Ritz Aspen with the Marriott Vacation Club — the breach of fiduciary duty that lies at the core of this case — was not made by Cobalt Travel Company, LLC, the Program Manager of the Ritz-Carlton Club Membership Program, as an independent entity, but by Cunningham, MVW's Chief Operating Officer, as well as the executive in charge of the Ritz-Carlton Development Company and Defendant Ritz-Carlton Management Company. These entities are expressly *not* allowed to participate in the decision under the terms of the relevant contract:

> The Program Manager may, in its sole discretion, elect to affiliate other locations with the Membership Program as Member Clubs or Associated Clubs from time to time. ***Neither [Ritz-Carlton Development], Members Association, nor [Ritz-Carlton Management] shall be entitled to participate in or consent to the Program Manager's decision in this regard***.

Attached hereto as **Exhibit "3"** is a true and correct copy of the January 11, 2001 Affiliation Agreement between Ritz-Carlton Travel Company, the Ritz-Carlton Development Company, the Ritz-Carlton Management Company, and the Aspen Highlands Condominium Association, at § 7.2(a). Attached hereto as **Exhibit "4"** are true and correct copies of excerpts from the depositions of Lee Cunningham conducted on November 10 and November 15, 2017

4

("Cunningham Dep.") at 10:12–11:15, 25:11–18, 131:9–132:11, 135:24–136:3, 136:11–137:1, 143:18–24, 376:10–11.

16.     Indeed, Cunningham admitted that he made the ultimate decision to affiliate the two systems – the smaller, luxury branded (and priced), and deeded Ritz-Carlton Private Residence Clubs with MVW's 400,000-member strong points-based vacation Destination Club. He also conceded that the supposedly independent Cobalt in fact had no employees and his testimony made it clear that there was no actual separation or distinction between the Marriott entities. **Ex. 4** at 139:15–140:8, 141:13–18, 144:2–20, 152:18–19.

17.     Further testimony by key employees of the Marriott Defendants has revealed that Marriott's motive for orchestrating the breach of fiduciary duty was MVW's sales of its destination vacation points product and profit at the expense of the Ritz-Carlton Destination Club owners who had purchased deeded private residence club interests. For example, during the deposition of Mary Lynn Clark, senior vice president of product development at Marriott Vacations Worldwide, Plaintiffs discovered that Marriott was using the Ritz-Aspen as "leverage" to sell Marriott Vacation Club points to vacation consumers interested in accessing the private residences at Ritz-Carlton Destination Clubs ("RCDC"). Attached hereto as **Exhibit "5"** are true and correct copies of relevant excerpts of the deposition of Mary Lynn Clark conducted on December 6, 2017 at 190:20–191:25.

18.     Clark admitted that she represented to potential Marriott Vacation Club customers that access to Ritz-Aspen Destination Club was available to them. *Id.* at 191:3–25. Clark explained that, while she was selling MVC points consumers a product with the Ritz-Carlton Destination Clubs in it, the currency was MVC points as according to her "people were not

5

buying fractionals at that time." *Id.* at 189:18–23. MVC was successfully selling points which was its main focus.

19. Cunningham's testimony conceded that the Marriott Defendants' primary business was to sell MVC points. **Ex. 4** at 112:9–12.

20. Other admissions further support Plaintiffs' prima facie case for exemplary damages. For example, MVW senior vice president Stephanie Sobeck and Cunningham came to Aspen to meet with the Ritz-Aspen Board on April 5, 2013. Prior to this meeting, MVW's Cunningham and Chief Executive Officer Stephen Weisz had received a November 21, 2012, cease and desist letter from Brownstein Hyatt Farber (the then Member Association's attorneys), warning that the Marriott Defendants' attempt to affiliate the luxury branded fractional deeded RCDC interests with the Marriott Vacation Club points system would, among other things, violate the governing documents. A true and correct copy of the November 21, 2012, letter from Phillip Gosch, a shareholder at Brownstein Hyatt Farber, to MVW's Weisz and Cunningham is attached hereto as **Exhibit "6".**

21. Sobeck acknowledged receiving the letter prior to meeting with the Ritz-Aspen Board on April 5, 2013. Attached hereto as **Exhibit "7"** are true and correct copies of excerpts of the deposition of Stephanie Sobeck conducted on November 16, 2017 ("Sobeck Dep.") at 247:15–18.

22. Facing this cease and desist letter and a threat of litigation, Sobeck and Cunningham negotiated with the Ritz-Aspen Board and helped draft and approve a critical letter sent by the Board to the ownership promising that, "unless a majority of Aspen Highlands Members . . . vote in favor of doing so," the Ritz-Carlton/Marriott would not include the Aspen

6

Highlands in the Marriott Vacation Club affiliation. A true and correct copy of the April 5, 2013, letter sent by the Aspen Highlands Board of Directors to Aspen Highlands Members is attached hereto as **Exhibit "8"**.

23.     The Marriott Defendants repeated this promise in Cunningham's letter dated May 14, 2013:

> Second, regarding other potential affiliations, we want to assure you that a Ritz-Carlton Club affiliation with Marriott Vacation Club Destinations will not take place unless there is an affirmative vote of each Club's Membership.

Thus, 5 weeks after promising the majority vote, Cunningham confirmed to all RCDC members that no affiliation would take place absent an affirmative vote in favor of the affiliation by all the clubs. A true and correct copy of Cunningham's May 14, 2013, e-mail letter reaffirming the promise of a vote is attached hereto as **Exhibit "9".**

24.     However, The Ritz-Aspen owners were never provided the promised vote; instead, the Defendants conspired to and did in fact renege on the promise and ultimately (eight months later) change the "vote" to a non-binding "survey," without disclosure to the members. **Ex. 4** at 205:5–20, 217:3–8, 218:19–219:1, 232:2–3, 232:21–233:25, 234:20–24, 235.

25.     On November 19, 2013, Cunningham co-authored a letter to Ritz-Aspen Owners with the Association. In it he wrote, "As promised earlier this year, Members of the Ritz-Carlton Club, Aspen Highlands will be surveyed on their opinion regarding the potential affiliation with the Marriott Vacation Destination Exchange Program." These are purposefully false and misleading statements to 100's of owners comes from an executive at the highest level of MVW

7

— an executive that also served as the officer of the owner's fiduciary, Cobalt. A true and correct copy of Cunningham's November 19, 2013, letter is attached hereto as **Exhibit "10".**

26. The Association's board clearly aided and abetted in this false statement to the owners, as the Association also signed the November 19th letter. The non-binding nature of the "survey" is revealed on page 3, where it states that if members surveyed "express a desire" the exchange affiliation agreement would be put in place. There is no notion of a vote or even a contemplated outcome for the "survey". The evidence at trial will show that RCDC owners are regularly sent Owner Satisfaction Surveys and other surveys. These are not votes. They are also provided votes, for example for the annual meeting.

27. The "survey" was an artifice to provide eventual cover for the affiliation. It was a *fait accompli*. For example, Eveleen Babich, then general manager of member services for the Ritz-Carlton Destination Club/Cobalt, described a similar survey as non-binding and stated that the Marriott Defendants planned to affiliate *even if a majority of those surveyed were opposed to it*. A true and correct copy of an email from Eveleen Babich to Marriott employees dated November 4, 2014, is attached hereto as **Exhibit "11"**.

28. Specifically, in describing a similar survey regarding the Ritz-Carlton Club San Francisco, Babich stated "[t]his survey is similar to Aspen in that we are not looking for a majority vote. *It's merely a mechanism to get feedback and the affiliation is expected to occur regardless.* Please keep that information confidential." **Ex. 11.** (emphasis added).

29. Cunningham has also conceded that the survey was different from the promised vote. **Ex. 4** at 221:1, 222:4, 234:25–235:5.

8

30. Prior to the November letter, Cunningham and Sobeck were well-aware that there was overwhelming Member opposition to any affiliation, as was the Board of the Association.

31. One week after the members received the April 5, 2013, letter promising a majority vote, Sobeck emailed Cunningham noting that feedback had been received and concluded that "it looks like from this letter there will be a no for affiliation." A true and correct copy of Sobeck's April 12, 2013, email to Cunningham is attached hereto as **Exhibit "12"**; see also **Ex. 7** at 138:23–139:4. Sobeck testified that the Marriott Defendants knew a majority of the members were not likely to approve affiliation. *Id.* at 123:21–23.

32. Further, as both Sobeck and Cunningham acknowledged, Marriott would sample owner feedback at Ritz-Aspen and other sister clubs on whether they would support or approve of an affiliation. **Ex. 4** at 57:7–23, 100:10–101:8, 366:24–367:8; **Ex. 7** at 83:19–84:11.

33. Preceding the November 2013 letter, in the summer of 2013, Marriott conducted one such sampling of the Ritz-Aspen Highland following the announcement of the proposed affiliation. The Marriott Defendants collected extensive RCDC system member feedback. **Ex 4**. at 363:5–365:25. Attached hereto as **Appendix A** is a compilation of some of the types of statements that Marriott received that foretold a vote would go against affiliation. The full and voluminous exhibit is 128 pages in landscape on an Excel sheet and is unable to be attached but can be provided upon request. The parties know it as Deposition Exhibit 1266 and also 1700. The submitted feedback demonstrates that the overwhelming majority of the 750 comments strongly opposed affiliation. Cunningham has testified that he was aware of the strong opposition. **Ex. 4** at 247:19–22.

9

34. Even prior to the August sampling or Sobeck's April 13th email predicting a no vote on affiliation, MVW was aware of significant Ritz-Aspen member opposition to a proposed affiliation. For example, in a letter dated August 27, 2012, former Greenberg Traurig partner and a Ritz-Aspen owner Juan Pablo Cappello sent a letter to Cunningham, which Cunningham acknowledged receiving. The letter emphatically brought to Cunningham's attention how MVW's interests diverged dramatically from — and to the detriment of — the Ritz-Aspen Members. A true and correct copy of Cappello's August 27, 2012, letter to Cunningham is attached hereto as **Exhibit "13".**

35. After pointing out Cunningham's misleading suggestion he was working for RCDC and not disclosing he was an MVW executive, Cappello wrote:

> Your recent communications fail to acknowledge the underlying issue which all RCDC members need to understand. <u>The Marriot Vacations Worldwide Corp. has a huge incentive to dilute the RCDC brand to further its greater interest of selling more Marriot Vacation Club Memberships.</u> The growth of Marriott Vacations Worldwide Corp. as a public company is tied with the growth of sales of more and more Marriott Vacation Club memberships. The sale of more RCDC memberships is not currently relevant for this public company. Thus, the value of the investment made by each RCDC members is at jeopardy. The recent communications by you and your team have undermined your credibility with the RCDC membership. Unless the Marriot Vacations Worldwide Corp. changes its attitude and begins to address the clear conflict of interest that will destroy the value of our investment, I continue to encourage the RCDC Aspen Highlands board to explore exiting from the Marriot relationship and cancel all management contracts.

*Id.* at p. 3 (emphasis in original).

36. Plaintiffs recently acquired, only pursuant to a subpoena to Cushman & Wakefield Western, Inc., another telling piece of evidence. It establishes that the Marriott

10

Defendants were on notice and clearly aware that the affiliation would gut the value of Plaintiffs' fractional interests. The document, an appraisal ordered by a Marriott related entity, warned of "repercussions" of opening up the Private Residence Club to the larger points-based vacation club. It concluded that the affiliation and conversion to a points-based system had a "negative impact on the market value of the existing fractional interests." The conversion to a points-based affiliation would have "a severely negative impact on demand for fractional interests at Ritz Carlton Club properties and the subject development in particular".  A true and correct copy of the relevant portion of Cushman & Wakefield's Appraisal of Real Property dated December 2, 2013 is attached hereto as **Exhibit "14"** (see pp. 18-19).

37.     Plaintiffs have been harmed by the Defendant's conduct. For example, a couple just recently closed (January 2018) on their deeded Unit that they paid Ritz $180,000.00 for in 2003. The purchase price was $10,000.00 (the buyer assumed the 2018 dues). This is for a deeded 1/12 ownership in a luxury condominium.  The Marriott Defendants' breaches of fiduciary duty and constructive fraud are attended by willful and wanton conduct. Plaintiffs respectfully request that the scheduling order be amended to permit this Motion to Amend and that leave be granted for Plaintiffs to add a claim for exemplary damages.

38.     Michael Mullenix, a former president of the board of directors of the homeowners' association for the Ritz-Carlton Club in Bachelor Gulch (a "sister club") testified to literally staking out and confronting MVW CEO Weisz in September 2012, when Mullenix's club was at risk of a similar affiliation with MVW. Mullenix learned that not only did Mr. Weisz have broader plans for the Ritz-Carlton segment, and that MVW would not build other clubs. According to Mullenix, Weisz was openly aggravated to the point that when a fellow Bachelor

Gulch board member – Jo-Ann Perfido – said that that with the affiliation they felt like they were being defrauded, Weisz stood up, pounded the table, "clunked" furniture, yelled at Ms. Perfido and called MVW's Orlando headquarters "his" building. Attached hereto as **Exhibit "15"** are true and correct copies of excerpts from the depositions of Michael C. Mullenix conducted on December 12, 2017 ("Mullinex Dep.") at 52:18–54:21, 68:19-22, 58:8-61:3. This club ultimately held a true vote and rather than affiliate a very significant majority voted to leave the RCDC. *Id.* at 98:10-99:2. Weisz is yet to be deposed – as the Marriott Defendants unsuccessfully sought to preclude him.

## C. CONCLUSION

39. In summary, the Marriott Defendants affiliated the Ritz-Carlton Club in Aspen (with the Marriott Vacation Club ("MVC"). This affiliation allowed the Marriott Defendants to market access to luxury RCDC locations to their more than 400,000 MVC points-based members. Increased points sales enriched the Marriott Defendants, but diluted the luxury product Plaintiffs purchased and permanently depressed – devasted -- the value of those fractional units. The Marriott Defendants knew that their actions to affiliate would decimate value – yet did so anyway despite promises not to do it without a vote.

## D. PROPOSED SIXTH AMENDED COMPLAINT – "CLEAN" AND "REDLINE"

40. Per D.C. Colo. L. Civ. R. 15.1(b), a "clean" copy of the proposed amended pleading is attached as **Exhibit "16"**. A true and correct copy of the amended pleading which strikes through the text to be deleted and underlines the text to be added is attached as **Exhibit "17".**

12

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 7, 2018, in Aspen, Colorado.

                                               */s/ Matthew C. Ferguson*
                                                       Matthew C. Ferguson