**IN THE UNITED STATE DISTRICT COURT**
**DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-01301-PAB-GPG

**RCHFU, LLC**, a Colorado limited liability company,
**JEFFREY A. BAYER**,
**GAIL L. BAYER**,
**ROBERT BUZZETTI**,
**JULIE C. CANNER**,
**LEE JAMES CHIMERAKIS**,
**THERESA ANN CHIMERAKIS**,
**KEVIN THOMAS CLARE**,
**NANCY LYNNE SHUTE**,
**TOBY L. CONE TRUST**,
**TOBY L. CONE**, Trustee of the Toby L. Cone Trust,
**RICHARD DAVIS**,
**SHIRLEY J. DAVIS**,
**CARL EICHSTAEDT III**,
**JAMES RICHARD FARQUHAR**,
**JENNIFER LUCILLE FARQUHAR**,
**KOPPELMAN FAMILY TRUST**,
**LARRY KOPPELMAN**, Trustee of the Koppelman Family Trust
**DAVID LANCASHIRE**,
**STEPHEN ANDREWS**,
**BONNIE LIKOVER**,
**CRAIG LIPTON**,
**JEREMY LOWELL**, D.D.S.,
**LORI LOWELL**,
**EDWARD P. MEYERSON**,
**ANDREA C. MEYERSON**,
**JERRY M. NOWELL TRUST**,
**JERRY M. NOWELL**, Trustee of the Jerry M. Nowell Trust,
**DEE ANN DAVIS NOWELL TRUST**,
**DEE ANN DAVIS NOWELL**, Trustee of the Dee Ann Davis Nowell Trust,
**THOMAS M. PROSE REVOCABLE LIVING TRUST**,
**THOMAS M. PROSE**, M.D., Trustee of the Thomas M. Prose Revocable Living Trust,
**CASEY M. ROGERS**,
**COURTNEY S. ROGERS**,
**ROBERT A. SKLAR TRUST**,
**ROBERT A. SKLAR**, Trustee of the Robert A. Sklar Trust,
**C. RICHARD STASNEY**, M.D.,
**SUSAN P. STASNEY**,
**STEPHEN WEINSTEIN**,
**BRENDA WEINSTEIN**,
**JACK ZEMER**,
**JEFFREY L. BERNSTEIN**,
**AMY S. BERNSTEIN**,
**CHRISTOPHER BRANOFF**,
**KIMBERLEY BRANOFF**,

1

**RICHARD LOUISE LEVENGOOD,**
**LYNDA OVERLY LEVENGOOD,**
**FRED H. FRIEDMAN,**
**BRENDA C. FRIEDMAN,**
**BENJE R. DANIEL, JR., DDS, MS, PA,**
**R. DAVID & CHERYL M. JONES REVOCABLE LIVING TRUST,**
**R. DAVID JONES,** Trustee of the R. David & Cheryl M. Jones Revocable Living Trust,
**CHERYL M. JONES,** Trustee of the R. David & Cheryl M. Jones Revocable Living Trust,
**LILY ANN FRIEDMAN,**
**831 701 ONTARIO LIMITED,** a Canadian Corporation,
**GARRY R. KIMBALL,**
**CATHERINE G.C. KIMBALL,**
**DAVID FRIEDMAN,**
**MICHAEL G. ROBINSON,**
**CAROLINE ROBINSON,**
**HAMMER FAMILY LIMITED PARTNERSHIP,**
**ROBERT HAMMER,** Partner of Hammer Family Limited Partnership,
**RENEE HAMMER,** Partner of Hammer Family Limited Partnership,
**BARRY HAMMER,** Partner of Hammer Family Limited Partnership,
**JEFFREY HAMMER,** Partner of Hammer Family Limited Partnership,
**8202 RCC ASPEN HIGHLANDS, LLC,** a Texas limited liability company,
**CARL ANDREW RUDELLA,**
**TAMMIEJO RUDELLA,**
**ROBERT KAUFMANN,**
**DAVID S. ISRAEL TRUST,**
**DAVID S. ISRAEL,** Trustee of the David S. Israel Trust,
**J & B WOODS FAMILY ASSOCIATES, LLC,**
**MICHAEL P. PACIN,**
**AMY D. RONNER,**
**BRUCE E. REID,**
**ROSEMARY W. REID,**
**CHARLES F.A. MCCLUER, III, P.A.,** a Texas corporation,
**FRANK R. VOGL,**
**EMILY VOGL,**
**LEVY VENTURES LIMITED PARTNERSHIP,** a Florida partnership,
**DRE, INC.,** an Illinois corporation,
**ROBERT C. HUBBELL,**
**JAN H. HUBBELL,**
**DAVID SCHAECTER,**
**VLADIMIR MALAKHOVA,**
**LUDMILA MALAKHOVA,**
**EL PASO MANAGEMENT, LLC,** an Alaska limited liability company,
**PEPKOWTIZ TRUST,**
**SAMUEL H. PEPKOWITZ,** Trustee of the Pepkowitz Trust,
**ROBERTA A. PEPKOWITZ,** Trustee of the Pepkowitz Trust,
**JH CAPITAL CORPORATION,** a Florida corporation,
**DAVID S. BLACHER,**
**CONSTANCE H. BLACHER,**
**BRYAN J. HAWKINS,**
**LAURA A. HAWKINS,**

2

**BRUCE M. NESBITT REVOCABLE TRUST,**
**BRUCE M. NESBITT,** Trustee of the Bruce M. Nesbitt Revocable Trust,
**LE BEFANA TRUST,**
**MONICA M. CAMPANELLA,** Trustee of the Le Befana Trust,
**REETA G. CASEY REVOCABLE LIVING TRUST,**
**REETA G. CASEY,** Trustee of the Reeta G. Casey Revocable Living Trust,
**ANTHONY F. PRINSTER,**
**SALLY L. PRINSTER,**
**KEVIN E. GRANT,**
**GILBERT P. GRADINGER,**
**SALLY A. GRADINGER,**
**JEFFREY RAPPIN,**
**PENNY BROWN,**
**MILAN RANDIC TRUST,**
**MILAN RANDIC,** Trustee of the Milan Randic Trust,
**MIRIJANA RANDIC TRUST,**
**MIRIJANA RANDIC,** Trustee of the Mirjana Randic Trust,
**CHARLES B. BUCHANAN,**
**CHARLOTTE S. BUCHANAN,**
**ANNETTE KALCHEIM TRUST,**
**ANNETTE KALCHEIM,** Trustee of the Annette Kalcheim Trust,
**MINDY R. WEXLER REVOCABLE TRUST,**
**MINDY R. WEXLER,** Trustee of the Mindy R. Wexler Revocable Trust,
**JOHN BERGSTROM,**
**NORMAN C. CREECH,**
**SUSAN S. CREECH,**
**JOHN E. BLANCHARD,**
**JENNIFER BLANCHARD,**
**ROBERT BLANCHARD,**
**ELLEN BLANCHARD,**
**LOUISE B. HOVERSTEN,**
**HOWARD A. SIMON,**
**ELIZABETH M. SIMON,**
**GARY S. CHAVIN,**
**PAT A. CHAVIN,**
**GREG JACOBSON,**
**DOUGLAS KADISON,**
**CAROL KADISON,**
**JOSEPH FRYZER,**
**DANNY V. LACKEY LIVING TRUST,**
**DANNY V. LACKEY,** Trustee of the Danny V. Lackey Living Trust,
**NANCY L. LACKEY LIVING TRUST,**
**NANCY L. LACKEY,** Trustee of the Nancy L. Lackey Living Trust,
**H.M. PALM,**
**MARGARET PALM,**
**PAUL C. ROSENTHAL,**
**CARLA P. ROSENTHAL,**
**THE DAVID & LESA FIGLIULO FAMILY REVOCABLE LIVING TRUST,**
**DAVID A. FIGLIULO,** Trustee of the David & Lesa Figliulo Family Revocable Living Trust,

**LESA A. FIGLIULO**, Trustee of the David & Lesa Figliulo Family Revocable Living Trust,
**WALTER H. PETRIE**,
**NANCY A. PETRIE**,
**KENNETH TOMPKINS**,
**KIMBERLY TOMPKINS**,
**BARBARA L. PALAZZOLO REVOCABLE TRUST**,
**BARBARA L. PALAZZOLO**, Trustee of the Barbara L. Palazzolo Revocable Trust,
**DANA JAMES WEINKLE**,
**SUSAN HOLLOWAY WEINKLE**, **AMI RABINOWITZ TRUST**,
**AMI RABINOWITZ**, Trustee of the Ami Rabinowitz Trust,
**EVAN RABINOWITZ**, Trustee of the Ami Rabinowitz Trust,
**KONA, LTD.**, a Texas limited partnership,
**STEVE V. GURLAND**,
**CAROLINE I. GURLAND**,
**SPENCER L. YOUNGBLOOD FAMILY PARTNERSHIP LTD**, a Texas limited
partnership
**KENNETH D. CUSHMAN**,
**CAROL A. CUSHMAN**,
**DAN MOSKOWITZ**,
**WENDY MOSKOWITZ**,
**GARY SHELDON KOHLER**,
**DEBORAH JOY KOHLER**,
**LEWIS J. HIRSCH**,
**GAYLE HIRSCH**,
**BRADLY PROPERTIES, LLC**, an Alabama limited liability company,
**ANNA P. ZALK**,
**MOUNTAIN DRIVE TRUST**,
**DAVID JACKEL**, Trustee of the Mountain Drive Trust,
**WILLIAM M. WAXMAN**,
**ALAN S. WAXMAN**,
**HYLAND REVOCABLE LIVING TRUST**,
**TIMOTHY J. HYLAND**, Trustee of the Hyland Revocable Living Trust,
**NATALIE B. HYLAND**, Trustee of the Hyland Revocable Living Trust,
**NEIL SPIZIZEN TRUST**,
**NEIL SPIZIZEN**, Trustee of the Neil Spizizen Trust,
**D.L. WILKEY**,
**JULIE JANICEK-WILKEY**,
**CASS FRANKLIN**,
**VERA STEWART FRANKLIN**,
**DARYL CRAMER**,
**HEATHER CRAMER**,
**HOPE S. BARKAN**,
**JACOB LOUIS SLEVIN**,
**RONALD LAWRENCE GLAZER TRUST**,
**RONALD LAWRENCE GLAZER**, Trustee of the Ronald Lawrence Glazer Trust,
**CHRISTIANE NICOLINI GLAZER TRUST**,
**CHRISTIANE NICOLINI GLAZER**, Trustee of the Christiane Nicolini Glazer Trust,
**ERICH TENGELSEN**,
**CHARLES A. GOTTLOB**,
**CYNTHIA G. GOTTLOB**,

**LUCY D. ANDA**,
**NEIL G. ARNOVITZ**,
**PETER CHARLES CROWLEY TRUST**,
**MELISSA T. CROWLEY**, Trustee of the Peter Charles Crowley Trust,
**PATRICK A. LATTORE**,
**DEE P. LATTORE**,
**ROCKY J. MOUNTAIN**,
**JANET M. MOUNTAIN**,
**PHYLLIS SCHOFIELD**,
**WILLIAM F. SCHOFIELD, JR.**, **MARK L. HORWITZ**,
**SUSAN J. HORWITZ**,
**JOEL SACHER**,
**SUSAN J. SACHER**,
**C & N ASSETS, LTD.**, a Texas limited partnership,
**LISA MOTTOLA TRUST**,
**LISA MOTTOLA**, Trustee of the Lisa Mottola Trust,
**MEL A. BARKAN**,
**JOHN PATRICK MCEVOY**,
**MARIA GOMEZ MCEVOY**,
**GREICO FAMILY LIMITED PARTNERSHIP**, a Texas limited partnership,
**CLAIR F. WHITE**,
**LINDA GAGE-WHITE**
**JAWSFW, LLC**, a Georgia limited liability company,
**JOHN EGLE**,
**DARRYL ROSEN**,
**MICHAEL A. CAPASSO**,
**JEFFREY C. BERMANT**,
**ROCK PILE, LLC**, a Minnesota limited liability company,
**MARY GLANCY HOBIN TRUST**,
**MARY GLANCY HOBIN**, Trustee of the Mary Glancy Hobin Trust,
**PATRICIA TRAVERS**,
**MICHAEL HOBIN**,
**MARK D. DEMBS**,
**MONA L. DEMBS**,
**MORTON EUGENE SHERMAN**,
**SUSAN ANN SHERMAN**,
**JOHN H. THAMES, JR.**,
**THOMAS R. WRIGHT**,
**MAUREEN D. WRIGHT**,
**BRENDA ZELNICK**,
**CORPORATE RETREATS**, LLC, a South Carolina limited liability company,
**RICHARD F. WACKEEN**,
**SHARON R. WACKEEN**,
**JURKOWITZ 1996 FAMILY TRUST**,
**MORRIS M. JURKOWITZ**, Trustee of the Jurkowitz 1996 Family Trust,
**IRMA JURKOWITZ**, Trustee of the Jurkowitz 1996 Family Trust,
**RICK M. ODDO TRUST**,
**RICK M. ODDO**, Trustee of the Rick M. Oddo Trust,
**JEFFREY B. ODDO TRUST**,
**JEFFREY B. ODDO**, Trustee of the Jeffrey B. Oddo Trust,

**BRADFORD T. ODDO TRUST**,
**BRADFORD T. ODDO**, Trustee of the Bradford T. Oddo Trust,
**GRAHAM J. ALBUTT TRUST**,
**NICOLA H. ALBUTT**, Trustee of the Graham J. Albutt Trust,
**MARK E. HARANZO**, Trustee of the Graham J. Albutt Trust,
**THOMAS G. FRIERMOOD**,
**KAY K. FRIERMOOD**,
**RICHARD N. MARK**,
**STUART A. EPSTEIN**,
**JUDY EPSTEIN**,
**JOHN M. KEANE**,
**RICHARD B. BINDLER**,
**GENE M. BINDLER**,
**ALLEN D. MCGEE**,
**J. HOLTON MCGEE**,
**8207 DEL**, **LLC**, a Colorado limited liability company,
**JENNIFER COLSON**,
**ERIC C. COLSON**,
**JUDY L. PECKLER**,
**BARRY K. SCHOCHET**,
**GAYLE WEISS**,
**BRAIN D. ISROFF**,
**LOUISE A. ISROFF**,
**RONALD F. LEMAR**,
**WILLIAM N. SHOFF**,
**OLGA A. SELIVANOVA**,
**HAZIM SAFI**,
**DEBORAH CAVAZOS SAFI**,
**GAIL LOCKYER**,
**ZAMALT**, **LLC**, a Pennsylvania limited liability company,
**SIP SCOTCH INVESTMENTS**, **LLC**, a Texas limited liability company,
**LILIAN BABCOCK**,
**JOHN BENKO**,
**NATALIE BENKO**,
**MARIA P. GIUDICI TRUST**
**GERALD L. GIUDICI**, Trustee of the Maria P. Giudici Trust,
**MARIA P. GIUDICI**, Trustee of the Maria P. Giudici Trust,
**GUENTHERS PARTNERS I LLC**, a Colorado limited liability company,
**MAAZB FAMILY LIMITED PARTNERSHIP**, a Texas limited partnership,
**D&J PROPERTIRES, LLC**, a Florida limited liability company,
**BRUCE T. ADELMAN**,
**SUSAN ADELMAN**,
**MARTIN KOLSKY**,
**CAROLE KOLSKY**,
**BARBARA WRUBEL**,
**LYNDA DUPRE**,
**LOIS DUPRE-SHUSTER**,
**SIDNEY BROWN**,
**SANDRA H. BROWN**,
**HUDSON NEWS DISTRIBUTORS**, **LLC**, a New Jersey limited liability company,

6

**CAROL ANNE CANNON,**
**JOHN J. SCHULTZ III TRUST,**
**JOHN J. SCHULTZ III**, Trustee of the John J. Schultz III Trust,
**DONALD A. KURZ TRUST,**
**DONALD A. KURZ**, Trustee of the Donald A. Kurz Trust,
**BRETT A. GOTTSCH**,
**BETTE ANN SACKS ALBERT**,
**J&M ZAMORA FAMILY LP**, a Texas limited partnership,
**WILLIAM S. BLOOM**,
**BEVERLY S. BLOOM**,
**ALLAN C. SILVERSTEIN TRUST**,
**ALLAN C. SILVERSTEIN**, Trustee of the Allan C. Silverstein Trust,
**BENZ LIVING TRUST**,
**WILLIAM R. BENZ**, Trustee of the Benz Living Trust,
**KATHERINE M. BENZ**, Trustee of the Benz Living Trust,
**DERBY CITY INVESTMENTS, LLC**, a Texas limited liability company,
**NELSON TRUST**,
**BRUCE E. NELSON**, Trustee of the Nelson Trust,
**MARRIANNE MAGNUSON**, Trustee of the Nelson Trust,
**ADELMAN FAMILY LIMITED PARTNERSHIP**, a Michigan limited partnership,
**B & B HIGHLANDS, LLC**, an Illinois limited liability company,
**KYLE NAGEL**,
**CAROL J. HIDALGO**,
**KATHERINE F. CUNTZ**,
**LANDES ASPEN, LLC**, a Colorado limited liability company,
**PERRY COX**,
**THOMAS N. LITTMAN**,
**KIMBERLY A. LITTMAN**,
**STEPHEN J. HOFFMAN**,
**DALE HOFFMAN**,
**DEBORAH STEGNER**,
**MARC BRAHA**,
**FRANKLIN FAMILY INVESTMENTS, LTD.**, a Texas limited liability,
**BR4 REHOBOTH, LTD.**, a Texas limited liability,
**SCOTT DANIEL SEGAL**,
**JOANNA F. SEGAL**,
**LON M. BARONNE**,
**KAREN G. BARONNE**,
**DOUGLAS M. PATINKIN**,
**JENNY R. PATINKIN**,
**MICHAEL B. GROSS**,
**SHELLEY R. SINGER**,
**ASPEN HIGHLANDS, LLC**, a North Carolina limited liability company,
**JOEL A. SCHNEIDER**,
**KAREN SCHNEIDER BENRUBI**,
**ALAN B. SCHNEIDER**,
**MERLE J. SCHNEIDER**,
**RICHARD BENRUBI**,
**PAUL BRUNSWICK**,
**LISA M. MILLER**,

SUSAN M. ALLEN,
KRAYNDEL FARBER TRUST,
KRAYNDEL FARBER, Trustee of the Krayndel Farber Trust,
EDWARD R. FARBER, Trustee of the Krayndel Farber Trust,
GEORGE W. HALIGOWSKI,
EVAN F. TRESTMAN,
DAVID M. FLAUM,
ILENE L. FLAUM,
WIVIOTT FAMILY TRUST,
JEFFREY RICHTER, Trustee of the Wiviott Family Trust,
STACEY TORCHON, Trustee of the Wiviott Family Trust,
MICHAEL S. CASTLEMAN,
MARGARET A. CASTLEMAN,
JONATHAN LERNER,
ROBIN BROWN,
ALEXA LERNER,
LAWERENCE BROWN,
TRIP COLORADO, LLC, a Colorado limited liability company,
BRAD J. BACHMANN,
MICHELLE STERN,
HAL S. MULLINS,
MARK A. JACOBY,
DEBORAH J. JACOBY,
MICHAEL B. HURWITZ,
BRANDI M. HURWITZ,
KEVIN AND MARCIE TAYLOR TRUST,
KEVIN TAYLOR, Trustee of the Kevin and Marcie Taylor Trust,
MARCIE TAYLOR, Trustee of the Kevin and Marcie Taylor Trust,
NINA DEVELOPMENT, LTD., a Texas limited partnership,
WINSTON & LADY, LP, a Delaware limited partnership

Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, a Delaware corporation,
MARRIOTT OWNERSHIP RESORTS, INC., d/b/a MARRIOTT VACATION CLUB
INTERNATIONAL, a Delaware corporation,
ASPEN HIGHLANDS CONDOMINIUM ASSOCIATION, a Colorado non-profit
corporation,
RITZ-CARLTON MANAGEMENT COMPANY, LLC, a Delaware limited liability
company,
COBALT TRAVEL COMPANY, LLC, INC., a Delaware limited liability company, and
THE LION & CROWN TRAVEL CO., LLC, a Delaware limited liability company,

Defendants.

---

## ASPEN HIGHLANDS CONDOMINIUM ASSOCIATION'S ANSWER TO FIFTH AMENDED COMPLAINT AND JURY DEMAND

Defendant Aspen Highlands Condominium Association (the "AHCA"), by and through its undersigned counsel, Hogan Lovells US LLP, respectfully files its Answer in response to Plaintiffs' Fifth Amended Complaint and Jury Demand ("FAC").  Except as expressly admitted below, the AHCA denies each and every allegation set forth in the FAC. Any factual allegation admitted below is admitted only as to the specific admitted facts, and not as to any purported conclusions, characterizations, implications, or speculations that might follow from the admitted facts.  The AHCA responds to the numbered paragraphs in the FAC and the prayer for relief as follows:

## I.   INTRODUCTION AND BACKGROUND[*]

1.   This lawsuit concerns Defendants' unlawful acts that decimated the value of deeded 1/12 fractional interests that Plaintiffs and other owners ("Ritz-Carlton Aspen Owners") purchased in the Ritz-Carlton Club Aspen Highlands, located in Aspen, Colorado. Over the last several years, Defendants, including Defendant Marriott Vacations Worldwide Corporation ("MVW") and its subsidiaries and affiliates, have knowingly damaged Plaintiffs and unjustly enriched themselves by violating (or aiding and abetting in, or conspiring to violate) various fiduciary duties owed by certain Defendants to Ritz-Carlton Aspen Owners. These violations undercut the essential features of the fractional interests sold to Plaintiffs and Ritz Carlton Aspen Owners.

ANSWER:  Paragraph 1 contains Plaintiffs' characterization of their claims, and as such, no response is necessary.  To the extent a response is deemed necessary, the AHCA admits that Plaintiffs and other owners purchased deeded 1/12 fractional interests in the Ritz-Carlton Club Aspen Highlands, located in Aspen, Colorado.  The AHCA denies the remaining allegations in this Paragraph.

---

[*] For ease of reference, the AHCA repeats the headings set forth in the FAC to simply comparison of the FAC and this Answer.  However, by doing so, the AHCA makes no admissions regarding the substances of the headings or any other allegations of the FAC and, in fact, unless otherwise stated, to the extent that a particular heading can be construed as an allegation, the AHCA specifically denies all such allegations.  The footnotes throughout the remainder of this Answer are the text of the footnotes in the FAC.

2.      In the 1980s, Marriott International, Inc. established Defendant Marriott Ownership Resorts Inc., d.b.a. Marriott Vacation Club International ("MVCI"), to run Marriott's timeshare operations. MVCI originally sold timeshares in one-week intervals. In 1984, Marriott's Monarch on Hilton Head Island became the first MVCI resort. By 2009, MCVI had grown to over 400,000 timeshare owners who had purchased one-week interval timeshares.

ANSWER:  The AHCA is without sufficient knowledge or information to form a belief about the truth of the allegations in this Paragraph and therefore denies them.

3.      In 1999, MVCI introduced "The Ritz-Carlton Club" (also known as "The Ritz-Carlton Destination Club") as a luxury alternative to its "Marriott Vacation Club" timeshare product, which it describes as its "upscale" product line. The Ritz-Carlton Club sold deeded 1/12 fractional ownership interests. The luxury nature, longer use intervals,[1] and exclusivity distinguished the Ritz-Carlton Club fractional interests from MVCI's "Marriott Vacation Club" product line. Based on these distinctions and attributes, The Ritz- Carlton Club interests were substantially more expensive.

ANSWER:  The AHCA admits that deeded 1/12 fractional ownership interests were sold at the Ritz-Carlton Club Aspen Highlands, which entitled owners to 4 weeks of use per year.  The AHCA is without sufficient knowledge or information to form a belief about the truth of the remaining allegations in this Paragraph and its footnote, and therefore denies them.

4.      In 2001, the Ritz-Carlton Club, Aspen Highlands was established as the first fractional ownership property for The Ritz-Carlton Club brand. Thereafter, between 2001 and 2012, Defendants developed and sold approximately 3,200 of the deeded 1/12 luxury

---

[1] The Ritz-Carlton Club 1/12 fractionals sold at Ritz-Carlton, Aspen Highlands entitled purchasers to 4 weeks of use per year. The other Ritz-Carlton Clubs sold 1/12 fractionals entitling three weeks of use, with the remaining 16 weeks used by members on a "space available" basis. Use of the "space available" weeks was given to members pursuant to the rules established in the Ritz-Carlton Membership Program.

fractional interests under The Ritz Carlton Club brand at the following nine locations: Aspen Highlands, Colorado; Bachelor Gulch, Colorado; Jupiter, Florida; North Lake Tahoe, California; St. Thomas, U.S.V.I.; San Francisco, California; Vail, Colorado; Abaco, Bahamas; and Maui, Hawaii.

ANSWER:  The AHCA admits that the Ritz-Carlton Club, Aspen Highlands was established in 2001.  The AHCA also admits that after its establishment, deeded 1/12 interests were sold at the Ritz-Carlton Club, Aspen Highlands.  The AHCA specifically denies that it, as one of the Defendants, developed or sold any deeded 1/12 luxury fractional interests under The Ritz-Carlton Club brand at any location.  The AHCA is without sufficient knowledge or information to form a belief about the truth of the remaining allegations in this Paragraph and therefore denies them.

5.      In 2010 MCVI began converting legacy "week owners" of Marriott Vacation Club timeshares to a "points-based product" wherein purchasers bought interests in a land trust ("MVC Trust") set up by MVCI to own its resorts. By the end of 2011, many of the Marriott Vacation Club's over 400,000 owners at over 50 Marriott Vacation Club resorts worldwide were utilizing points purchased from MVCI to trade for use of Marriott Vacation Club resorts. Further, by the end of 2011, Marriott Vacation Club points were available for sale on the secondary market for a fraction of the cost at which MVCI sold them "new." In addition, Marriott Vacation Club Points were available to "rent" from other members, enabling them to upgrade to stays at more desirable resorts than their "home resorts."

ANSWER:  The AHCA is without sufficient knowledge or information to form a belief about the truth of the allegations in this Paragraph and therefore denies them.

6.      Between 2001 and 2013, hundreds of Ritz- Carlton Aspen Owners, including Plaintiffs, paid premium prices, averaging over $200,000, with some selling for over and up to $500,000, for their deeded 1/12 fractional interest at the Ritz- Carlton Club in Aspen

Highlands, (known as "Tourist Accommodation Units" or "Fractional Units"). These Fractional Units were sold based on Defendants' claims that the Fractional Units were superior to MVCI's other timeshare offerings in that the Ritz- Carlton Club Aspen Highlands would be exclusive and operate for the use, benefit and enjoyment of Ritz- Carlton Club Members as well as their family and guests "like a second home," supporting the expensive purchase prices for the Fractional Units as compared to other MVCI timeshare offerings. Defendants further stated that the Fractional Units were transferrable like any other form of deeded real estate.

      <u>ANSWER:</u>  The AHCA specifically denies that it, as one of the Defendants, sold Fractional Units, that it claimed that the Fractional Units were superior to MVCI's other timeshare offerings, and that it stated that the Fractional Units were transferrable like any other form of deeded real estate.  The AHCA is without sufficient knowledge or information to form a belief about the truth of the remaining allegations in this Paragraph and therefore denies them.

      7.     In November 2011, Marriott International, Inc. "spun-off" Defendant MVW as a separately traded public company (NYSE: VAC), and MVW became the exclusive developer and manager of vacation ownership and related products under the Marriott brand and the exclusive developer of vacation ownership and related products under the Ritz-Carlton brand.

      <u>ANSWER:</u>  The AHCA is without sufficient knowledge or information to form a belief about the truth of the allegations in this Paragraph and therefore denies them.

      8.     In its first Annual Report filed following the spin-off (dated March 21, 2012), MVW revealed its intent to abandon the upscale Ritz-Carlton product line, stating: "we have significantly scaled back our development of Luxury segment vacation ownership products. We do not have any Luxury segment projects under construction nor do we have any current

plans for new luxury development. While we will continue to sell existing Luxury segment vacation ownership products, we also expect to evaluate opportunities for bulk sales of finished inventory and disposition of undeveloped land."

ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA is without sufficient knowledge or information to form a belief about the truth of the allegations in this Paragraph and therefore denies them.

9.      Beginning in 2013 and continuing through the 2014, Defendants MVW, Ritz-Carlton Management Company, LLC ("RC Management"), The Cobalt Travel Company, LLC ("Cobalt") and the other Defendants used their complete control over Defendant Aspen Highlands Condominium Association, Inc., ("Association") as well as their control over the use and operation of Plaintiffs' Fractional Units, to eliminate the very features for which Plaintiffs and Ritz Carlton Aspen Owners paid premium prices, thereby destroying the value of the Fractional Units sold to Plaintiffs and Ritz Carlton Aspen Owners. By these actions, and in breach of their fiduciary duties owed as a result of the control maintained over Plaintiffs' Fractional Units and the fact that Defendants were agents or sub-agents of Plaintiffs and Ritz- Carlton Aspen Owners, Defendants profited at Plaintiffs and the Ritz-Carlton Aspen Owners' expense. Even though Defendants' actions destroyed the value of the Fractional Units, Plaintiffs and Ritz- Carlton Aspen Owners continue to pay steadily *increasing* annual dues, compounding the harm. A large percentage of these dues go directly to Defendants in the form of lucrative "management fees" and other "reimbursements" supposedly incurred by Defendants under the management contracts, including payroll related costs. These management fees and reimbursements are paid solely by Fractional Unit owners at the Ritz- Carlton Club Aspen Highlands to the Defendants regardless of usage or occupancy.

ANSWER:  Paragraph 9 contains Plaintiffs' characterization of their claims, and as such, no response is necessary.  To the extent a response is deemed necessary, the AHCA denies the allegations in this Paragraph.

10.     Due to Defendants' conduct described herein and other actions to be discovered and proven, the Fractional Units owned by Plaintiffs and Ritz- Carlton Aspen Owners are now worth less than 20% of the original purchase prices, while, on the other hand, Defendants —, including MVW, MVCI, RC Management, Cobalt, and The Lion & Crown Travel Co., LLC ("L&C") — have been unjustly enriched. Due to defendants' actions, MVC members can now enjoy the benefits and use of the Ritz-Carlton Club Aspen Highlands property for a fraction of the cost that Plaintiffs and Ritz-Carlton Aspen Owners paid. For example, a MVC member can buy (or simply rent) MVC points sufficient to stay at the Ritz Carlton Club Aspen Highlands for approximately twenty percent of what it costs Ritz Carlton Aspen Owners, who paid $200-400k for substantially similar rights and benefits.

ANSWER:  Paragraph 10 contains Plaintiffs' characterization of their claims, and as such, no response is necessary.  To the extent a response is deemed necessary, the AHCA denies the allegations in this Paragraph.

## II.     JURISDICTION AND VENUE

11.     This action was filed in the District Court of Colorado, Pitkin County which had jurisdiction over the subject matter at issue because this is a civil action for damages and/or equitable relief. Colo. Const. Art. VI, § 9(1). Defendants MVW, MVCI, RC Management, Cobalt, and The Lion & Crown Travel Co., LLC removed the action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332, 1446 and 1453.

ANSWER:  The AHCA admits that this action was originally filed in the District Court of Colorado, Pitkin County, and that Defendants MVW, MVCI, RC

Management, Cobalt, and The Lion & Crown Travel Co., LLC removed the action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332, 1446 and 1453.

12.     Venue is proper as the case was removed from the District Court of Pitkin County, Colorado and the District Court of Pitkin County, Colorado is in the District of Colorado. 28 U.S.C. § 28. The case was thus properly removed to this Court. 28 U.S.C. §§ 1441(a).

ANSWER:  Admitted.

### III.     PARTIES

#### A.     Plaintiffs

13.     The following are Plaintiffs: [for brevity and convenience, the AHCA has omitted the individual allegations identifying each Plaintiff, as listed in the FAC as Paragraphs 13(a) through 13(aaaaaaaaa)].

ANSWER:  Paragraph 13 contains Plaintiffs' allegations concerning the identities, purchase information, and interests of the Plaintiffs in this case.  Subparagraphs a) through aaaaaaaaa) provide specific allegations concerning each named Plaintiff.  For ease of comparison and reference, the AHCA answers Paragraph 13, including each lettered subparagraph as follows:  The AHCA admits that the specifically named Plaintiffs do, or at some point in the past did, own one or more undivided 1/12 interests in a residence at the Ritz-Carlton Club Aspen Highlands.  The AHCA is without sufficient knowledge or information to form a belief about the truth of the remaining allegations in this Paragraph, including its lettered subparagraphs, and therefore denies them.

#### B.     Defendants

14.     Defendant **Marriott Vacations Worldwide Corporation** ("MVW")[2] is a publicly traded Delaware corporation with its principal place of business at 6649 Westwood

_____
[2] Abbreviations are repeated for ease of reference.

Boulevard, Orlando, Florida. MVW is the parent and/or an affiliate company of the other Defendants and was involved in and responsible for the wrongful conduct alleged herein. Marriott Vacations Worldwide Corporation or MVC are sometimes referred to herein as Marriott.

ANSWER:  The allegations in this Paragraph are directed to Defendant MVW, and therefore the AHCA is not required to respond to them.  To the extent a response is required, the AHCA is without sufficient knowledge or information to form a belief about the truth of the allegations in this Paragraph and therefore denies them.  Footnote 2 is a statement regarding abbreviations in the FAC, to which no response is required.

15.     Defendant **Marriott Ownership Resorts, Inc., d.b.a. Marriott Vacation Club International** ("MVCI") is a Delaware corporation, and a wholly owned subsidiary of Marriott. Its principal place of business is at 6649 Westwood Boulevard, Orlando, Florida, and it is authorized to do business in Colorado. MVCI was involved in and responsible for the wrongful conduct alleged herein.

ANSWER:  The allegations in this Paragraph are directed to Defendant MVCI, and therefore the AHCA is not required to respond to them.  To the extent a response is required, the AHCA is without sufficient knowledge or information to form a belief about the truth of the allegations in this Paragraph and therefore denies them.

16.     Defendant **Aspen Highlands Condominium Association, Inc.** ("Association") is a Colorado non-profit corporation that serves as the official "Owners Association" for Ritz Carlton Aspen Owners.

ANSWER:  The AHCA admits that it is a Colorado non-profit corporation and that it represents the residential and commercial owners of the Aspen Highlands Condominiums.

17.     Defendant **Ritz-Carlton Management Company, LLC** ("RC Management") is another wholly owned MVW subsidiary, and a Delaware limited liability company. Defendant RC Management has a principal place of business at 6649 Westwood Boulevard, Suite 500, Orlando, Florida, and is authorized to do business in Colorado.

ANSWER:  The allegations in this Paragraph are directed to Defendant RC Management, and therefore the AHCA is not required to respond to them.  To the extent a response is required, the AHCA is without sufficient knowledge or information to form a belief about the truth of the allegations in this Paragraph and therefore denies them.

18.     Defendant **The Cobalt Travel Company, LLC** ("Cobalt") (formerly known as the Ritz-Carlton Travel Company, LLC) is a Delaware limited liability company, has a principal place of business at 6649 Westwood Boulevard, Suite 500, Orlando, Florida, and is authorized to do business in Colorado.

ANSWER:  The allegations in this Paragraph are directed to Defendant Cobalt, and therefore the AHCA is not required to respond to them.  To the extent a response is required, the AHCA is without sufficient knowledge or information to form a belief about the truth of the allegations in this Paragraph and therefore denies them.

19.     Defendant **The Lion & Crown Travel Co., LLC** ("L&C") is a Delaware limited liability company formed in 2008 and is authorized to do business in Colorado. L&C is a wholly owned subsidiary of RC Development.

ANSWER:  The allegations in this Paragraph are directed to Defendant L&C, and therefore the AHCA is not required to respond to them.  To the extent a response is required, the AHCA is without sufficient knowledge or information to form a belief about the truth of the allegations in this Paragraph and therefore denies them.

## IV.   SOURCE OF FIDUCIARY DUTIES

20.     As described below, there are multiple sources of fiduciary duties arising out of the documents governing the management, operation and use of the Ritz-Carlton Club, Aspen Highlands, including the Articles of Incorporation of Aspen Highlands Condominium Association, Inc., ("Articles"), the Declaration of Condominium for Aspen Highlands Condominium ("Declaration"), The Ritz-Carlton Management Company, LLC Management Agreement (Management Agreement), and the Ritz-Carlton Club Membership Program Affiliation Agreement, ("Affiliation Agreement").

ANSWER:  The allegations in this Paragraph refer to the contents of specific documents that speak for themselves.  To the extent a response is required, the AHCA admits that the Declaration of Condominium for Aspen Highlands Condominium ("Declaration"), including the fairness standard in Section 6.8, sets forth certain responsibilities and duties that the AHCA owes owners.  The AHCA further admits that the Articles of Incorporation of Aspen Highlands Condominium Association, Inc. sets forth certain rights, powers, privileges, and immunities of the AHCA.  The AHCA is without sufficient knowledge or information to form a belief about the truth of the allegations in this Paragraph and therefore denies them.

### A.     Aspen Highlands Condominium Association

21.     The Association was created on December 9, 1999 upon filing with the Colorado Secretary of State the Articles of Incorporation of Aspen Highlands Condominium Association, Inc. Amended and Restated Articles of Incorporation of Aspen Highlands Condominium Association, Inc. were filed with the Colorado Secretary of State on November 2, 2000.

ANSWER:  The allegations in this Paragraph refer to the contents of specific documents that speak for themselves.  To the extent a response is required, the allegations of this Paragraph are admitted.

22.     According to the Amended Articles: "The primary purpose for which the Association is organized is to manage, administer, operate and maintain" the Aspen Highlands Condominiums.

ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 22 misquotes the wording of the document referred to therein.

23.     Pursuant to Article V. of the Articles, the powers of the Association, include: "To operate, manage, administer, insure, repair, replace, reconstruct and improve the Condominium" (Article 5.1); "To operate, manage and administer the Plan of Fractional Ownership that may be created in the Condominium by the Declarant" (Article 5.2); "To contract for the management of the Condominium and to delegate to such contractor all powers and duties of the Association except such as are specifically required by the various Association Documents or Colorado law to have approval of the board of directors or the members of the Association" (Article 5.7); and, "To enter into agreements providing for the participation of Owners of Fractional Interests in those units committed to a Plan of Fractional Ownership in an exchange system or network of resorts allowing for reciprocal use of resort properties by owners of fractional ownership interests in the Condominium" (Article 5.11).

ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 23 misquotes the wording of the document referred to therein.

24.     Defendant Association owed and owes fiduciary duties to buyers of Fractional Units, including Plaintiffs and Ritz Carlton Aspen Owners, including but not limited to a duty

of loyalty, a duty of honesty and duty to enforce restrictive covenants set forth in the Declaration of Condominium for Aspen Highlands Condominiums.[3] The scope of this fiduciary duty extends beyond the norm for condominium associations based on the delegation and assumption of authority over not just the common areas, but also the fractional units themselves.

ANSWER:  The allegations in this Paragraph and its footnote 3 contain legal conclusions to which no response is required.  To the extent a response is required, the AHCA admits that it owes its members fiduciary duties as set forth specifically in the Declaration.  The remaining allegations of this Paragraph are denied.

25.    On December 20, 2016, Defendant Association's Executive Board was sent a letter providing notice under section 7.8.3 of the Declaration. The notice set forth information about those who acted to violate the Declaration and Association's By-laws, and enumerated the acts constituting the claims made in this action. Under section 7.8.1 an "Aggrieved Owner" may enforce the declaration and prosecute an action in law and or equity if the Association does not act to enforce the declaration and remedy the violations within 60 days. The Executive Board was provided with the requisite 60 days' notice, and took no action to enforce or cause enforcement of the violated provisions of the Declaration or Bylaws within the 60 days.

ANSWER:  The allegations in this Paragraph refer to the contents of specific documents that speak for themselves.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 25 misquotes and/or mischaracterizes the wording of the document referred to therein.  The AHCA admits that on December 20, 2016, counsel for Plaintiffs sent the AHCA a letter with the subject line "Notice to Aspen Highlands

---

[3] *See, Woodward v. Board of Directors of Tamarron Association of Condominium Owners, Inc.*, 155 P.3d 621,624 (Colo. App. 2007); *Colorado Homes, Ltd. v. Loerch-Wilson*, 43 P.3d 718, 722 (Colo. App. 2001).

Condominium Association, Inc. Declaration of Condominium Section 7.8.3," concerning the claims and allegations in this action.  The remaining allegations of this Paragraph are denied.

**B.      Ritz-Carlton Management Company**

26.      On January 12, 2001, Defendants Association and RC Management, entered into a written agreement, designated "Management Agreement." Pursuant to paragraph 2, captioned "Appointment and Acceptance of Agency," the Association employed RC Management "to act on behalf of the Association **and its members** as the exclusive managing entity and to manage the daily affairs of the Condominium **and the (Fractional Ownership Interest) Plan**, and (RC Management) hereby agrees to so act." (Emphasis added.) A copy of the Management Agreement is attached hereto as **EXHIBIT A**.

ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 26 misquotes the wording of the document referred to therein.

27.      Pursuant to paragraph 4 of the Management Agreement, captioned "Delegation of Authority," Association delegates to RC Management "all of the power and authority of (Association) to the extent necessary to perform (RC Management's) duties and obligations under this agreement." In addition, paragraph 4 provides: **"(RC Management), on behalf of and at the expense of (Association), to the exclusion of all other persons including the (Association) and its members, shall have all the powers and duties of the Executive Board as set forth in the Declaration and the bylaws of the (Association)** (except such thereof as are specifically required to be exercised by its directors or members), and it shall perform, by way of illustration and not limitation, (the services set forth in paragraphs 4(A) through 4(V) . . . ." (Emphasis Added.)

ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 27 misquotes the wording of the document referred to therein.

28.     Paragraph 4(A) of the Management Agreement provides RC Management with the exclusive authority to "Hire, pay, supervise and discharge all persons necessary to be employed in order to properly manage, maintain, administer and operate the Condominium and (Fractional Ownership Interest) Plan."

ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 28 misquotes the wording of the document referred to therein.

29.     Paragraph 4(F) of the Management Agreement provides RC Management with the exclusive authority to "Maintain the (Association's) financial record book, accounts and other records, and as necessary, issue certificate of account to Owners and their Mortgagees . . . ."

ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 29 misquotes the wording of the document referred to therein.

30.     Paragraph 4(H) of the Management Agreement provides RC Management with the exclusive authority to "Prepare the itemized annual budget for the (Association) or revisions to the budget, or a combination thereof, (that RC Management) determines necessary for submission to the Executive Board."

ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 30 misquotes the wording of the document referred to therein.

31.    Paragraph 4(I) of the Management Agreement provides RC Management with the "authority and responsibility to maintain and replace the personal property within the Common Elements and the (Fractional Units), and to determine the maintenance fee, proration of taxes, and other common expenses applicable to those Common Elements and (Fractional Units), as defined in and provided for in the Declaration".

ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 31 misquotes the wording of the document referred to therein.

32.    Paragraph 4(J) of the Management Agreement provides RC Management with the exclusive authority to "Receive and deposit all funds collected from the Owners, or otherwise accruing to the Association, in a special account or accounts of (RC Management) . . . ."

ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 32 misquotes the wording of the document referred to therein.

33.    Paragraph 4(L) of the Management Agreement provides RC Management "shall have sole authority to promulgate and amend rules and regulations for the (Fractional Units) and Limited Common Elements of the (Fractional Units) subject to the (Fractional

Unit) Directors to revise, repeal or modify such amended rules and regulations and subject to the provisions of the Declaration."

      <u>ANSWER:</u>  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 33 misquotes the wording of the document referred to therein.

      34.    Paragraph 4(N) of the Management Agreement provides RC Management with the authority to "Retain and employ such professionals and such experts whose services may be reasonably required to effectively perform its duties and exercise its powers hereunder, and to employ same on such basis as it deems appropriate."

      <u>ANSWER:</u>  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 34 misquotes the wording of the document referred to therein.

      35.    Perhaps most importantly, Paragraph 4(S) of the Management Agreement provides RC Management with the authority to "Engage a Program Manager through an affiliation agreement, who shall manage and administer the reservation procedures and exchange program for the Ritz-Carlton Club Membership Program (the 'Membership Program') through which Owners of Residence Interests reserve the use of accommodations at a Club as defined in and pursuant to The Ritz-Carlton Club Membership Program Reservation Procedures ('Reservation Procedures'). The Program Manager shall have the broadest possible delegation of authority regarding administration of the Reservation Procedures . . . . RC Management on behalf of (the Association shall assess the Owners of (Fractional Units) the reasonable cost (as determined by the Program Manager) of operating such Reservation Procedures, which cost shall be included as part of Club dues."

ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 35 misquotes the wording of the document referred to therein.

36.     Paragraph 14 of the Management Agreement provides that RC Management "shall receive an annual net fee, free from charges and expenses" of Six Hundred Dollars ($600) per Residence Interest from the Owners of the (Fractional Units) . . ."

ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 36 misquotes the wording of the document referred to therein.

37.     Based upon these and other terms of the Management Agreement and also by operation of law, RC Management is the agent of the Association and Fractional Unit Owners, including Plaintiffs and Ritz-Carlton Aspen Owners, and as such, owes the Association, Plaintiffs and Ritz-Carlton Aspen Owners fiduciary duties, including the duties of loyalty, avoiding self- dealing, and to enforce the restrictive covenants set forth in the Declaration of Condominium for Aspen Highlands. These fiduciary duties also flow from the fact RC Management was given control over the Fractional Units.

ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  The allegations in this Paragraph contain legal conclusions to which no response is required.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 37 mischaracterizes the document referred to therein. The AHCA is without sufficient knowledge or information to form a belief about the truth of the remaining allegations in this Paragraph and therefore denies them.

38.     Based upon the high degree of control over Plaintiffs' and Ritz-Carlton Aspen Owners' Fractional Units arising from its authority as set forth in the Management Agreement, RC Management owes Plaintiffs and Ritz-Carlton Aspen Owners fiduciary duties, including a duty of loyalty, duty to avoid self-dealing, and duty to enforce the restrictive covenants set forth in the Declaration of Condominium for Aspen Highlands.

ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  The allegations in this Paragraph contain legal conclusions to which no response is required.  The allegations in this Paragraph are directed to Defendant RC Management, and therefore the AHCA is not required to respond to them.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 38 mischaracterizes the document referred to therein.  The AHCA is without sufficient knowledge or information to form a belief about the truth of the remaining allegations in this Paragraph and therefore denies them.

**C.     The Cobalt Travel Company**

39.     Defendant Cobalt entered into a four party agreement titled "The Ritz-Carlton Club Membership Program Affiliation Agreement" ("Affiliation Agreement") with the Ritz-Carlton Development Company ("RC Development") (the seller of the fractional interests at issue, a wholly owned subsidiary of MVW, and the sole manager and member of Defendants RC Management and Cobalt) and Defendants RC Management and the Association. Pursuant to the Affiliation Agreement, the Ritz-Carlton Club, Aspen Highlands and the purchasers of Fractional Units including Plaintiffs and Ritz-Carlton Aspen Owners, became affiliated with and members of the Ritz-Carlton Membership Program.

ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 39 mischaracterizes the document referred to therein.

40.     Paragraph 1.2 of the Affiliation Agreement provided: "By acceptance of a conveyance of a Residence Interest at the Club . . . each Member is deemed to have consented to the terms and conditions of this Agreement and to have further consented to the appointment of the Members Association as the authorized representative to act on behalf of the Members with respect to the provisions of this Agreement. Whenever the Members Association's acknowledgment, consent, understanding and/or agreement is stated or implied in this Agreement, such acknowledgment, consent, understanding and/or agreement shall be deemed to also have been given by the Board of Directors, if applicable, and each Member."

ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 40 misquotes the wording of the document referred to therein.

41.     Pursuant to the terms of the Affiliation Agreement, Defendant Cobalt is the Program Manager of the Ritz-Carlton Club Membership Program and also operates the reservation system through which Ritz-Carlton Aspen Owners obtain use of their allotted number of days at the Ritz Aspen Highlands and obtain access to the sister Ritz-Carlton Destination Clubs in the Ritz-Carlton Club Membership Program. The Affiliation Agreement provides: "The Program Manager may, in its sole discretion, elect to affiliate other locations with the Membership Program as Member Clubs or Associated Clubs from time to time. ***Neither the Developer, Members Association, nor Club Manager shall be entitled to participate in or consent to the Program Manager's decision in this regard.***" (Emphasis added.) A copy of the Affiliation Agreement is attached hereto as **EXHIBIT B**.

ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the

allegations to the extent that Paragraph 41 misquotes the wording of and/or mischaracterizes the document referred to therein.

42.     Based upon the terms of the Management Agreement and the Affiliation Agreement, Cobalt is the agent or subagent of the Association and Fractional Unit owners, including Plaintiffs and Ritz-Carlton Aspen Owners, and as such, owes the Association, Plaintiffs and Ritz-Carlton Aspen Owners fiduciary duties, including a duty of loyalty and duty to avoid self-dealing.

ANSWER:  The allegations in this Paragraph refer to the contents of specific documents that speak for themselves.  The allegations in this Paragraph contain legal conclusions to which no response is required.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 42 mischaracterizes the documents referred to therein.

43.     Based upon the high degree of control over Plaintiffs' and Ritz-Carlton Aspen Owners' Fractional Units arising from its authority as set forth in the Affiliation Agreement, Cobalt owes Plaintiffs and Ritz-Carlton Aspen Owners fiduciary duties, including a duty of loyalty and duty to avoid self-dealing.

ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  The allegations in this Paragraph contain legal conclusions to which no response is required.  The allegations in this Paragraph are directed to Defendant Cobalt, and therefore the AHCA is not required to respond to them.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 43 mischaracterizes the document referred to therein.

44.     As described herein, Defendant Cobalt, in violation of its fiduciary duties to Plaintiffs and Ritz-Carlton Aspen Owners, and aided and abetted in said fiduciary duty violations by the other Defendants, entered into an Affiliation Agreement with L&C, which

allows some or all of the over 400,000 members of Defendant MVW's Marriott Vacation Club who are able to acquire sufficient points in the Marriott Vacation Club Destinations system, to use the Fractional Units at the Ritz Aspen Highlands. These breaches of fiduciary duty caused a great diminution in the value of Plaintiffs and Ritz-Carlton Aspen Owners' Fractional Units, and unjustly enriched the other Defendants, including MVW, MVCI, RC Management and Cobalt at the expense of Plaintiffs and Ritz-Carlton Aspen Owners.

ANSWER:  The allegations in this Paragraph contain legal conclusions to which no response is required.  The allegations in this Paragraph are directed to Defendant Cobalt and other Marriott Defendants, and therefore the AHCA is not required to respond to them.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 44 mischaracterizes the document referred to therein.  The AHCA is without sufficient knowledge or information to form a belief about the truth of the allegations in this Paragraph and therefore denies them.

45.    MVW directly, and indirectly through wholly owned subsidiaries, exerted control over Ritz-Carlton Club, Aspen Highlands and the other Defendants, because, *inter alia*: 1) MVW's lawyers drafted the Management Agreement that provided its wholly owned subsidiary, RC Management full control of the operation of the Association and the Association Board at the Ritz-Carlton Club, Aspen Highlands; 2) RC Management and Cobalt were shell companies serviced by persons technically employed by MVW and/or MVCI; 3) the costs and revenues generated in connection with Ritz-Carlton Club, Aspen Highlands by MVW, MVCI, RC Management and Cobalt were accounted for in MVW's consolidated financials; 4) employees providing services to MVCI, RC Management, and Cobalt were treated as MVW employees.

ANSWER:  The allegations in this Paragraph contain legal conclusions to which no response is required.  The allegations in this Paragraph are directed to Defendant

MVW and other Marriott Defendants, and therefore the AHCA is not required to respond to them.  To the extent a response is required, the AHCA is without sufficient knowledge or information to form a belief about the truth of the allegations in this Paragraph and therefore denies them.

46.     Each and all of the Defendants (directly and/or indirectly through individual agents, representatives, employees, principals, officers, directors and members) (a) actively or passively participated in the conduct, acts and omissions alleged herein, (b) materially assisted, aided, abetted and/or conspired with one or more other Defendants in committing the conduct, acts, and omissions alleged herein, (c) purposely, knowingly, recklessly, or negligently planned, directed, implemented, furthered, and/or consented to conduct, acts and omissions alleged herein, and/or (d) is directly, vicariously, jointly, and/or severally liable for the conduct, acts, and omissions alleged herein.

ANSWER:  The allegations in this Paragraph contain legal conclusions to which no response is required.  The allegations in this Paragraph are directed, in part, to other Defendants, and therefore the AHCA is not required to respond to them.  To the extent a response is required, the allegations in this Paragraph are denied.

47.     Each of the Defendants (a) are the agents, representatives, alter egos, and/or instrumentalities of their respective principals or controlling entities, (b) have interlocking or overlapping directors and/or officers with their respective principals or controlling entities, (c) are undercapitalized and/or spurious or disregard the corporate form, (d) and for which "piercing the corporate veil" is or may be necessary and appropriate to prevent injustice and inequity to Plaintiffs and Ritz-Carlton Aspen Owners.

ANSWER:  The allegations in this Paragraph contain legal conclusions to which no response is required.  The allegations in this Paragraph are directed, in part, to other

Defendants, and therefore the AHCA is not required to respond to them. To the extent a response is required, the allegations in this Paragraph are denied.

48.     On July 17, 2012, Ms. Eveleen Babich, General Manager of Defendant Cobalt wrote Plaintiffs and Ritz-Carlton Aspen Owners a letter (on Ritz-Carlton Destination Club letterhead), stating that "Based on the Ritz-Carlton Destination Club member feedback, additional benefits and experiences will be available through a new affiliation with Marriott Vacation Club Destinations . . . Affiliation will extend to you the opportunity to deposit your Reserved Allocation on an annual basis. Once you deposit, the following will be available for you: . . . Secure any of the 51 worldwide Marriott Vacation Club Resorts . . ." A copy of the July 17, 2012 Letter from Eveleen Babich is attached hereto as **EXHIBIT C**.

ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself. To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 48 misquotes the wording of the document referred to therein. The AHCA is without sufficient knowledge or information to form a belief about the truth of the remaining allegations in this Paragraph and therefore denies them.

49.     Eveleen Babich's July 17, 2012 letter did not specify whether this proposed affiliation would allow the 400,000 Marriott Vacation Club members to access the Ritz-Carlton Club locations and in fact assured Ritz-Carlton Aspen Owners that "nothing about the Home Club Membership…has changed" as a result of this affiliation.

ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself. To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 49 misquotes the wording of and/or mischaracterizes the document referred to therein. The AHCA is without sufficient knowledge or information to form a belief about the truth of the remaining allegations in this Paragraph and therefore denies them.

50.     This announcement proposing a new affiliation agreement with Defendant

MVW's Marriott Vacations Club Destinations program generated extreme concern amongst

the various "member controlled" Boards of Directors of the various Ritz-Carlton Destination

Clubs. For instance, in a letter dated August 3, 2012, the Association Board of the Ritz-

Carlton Club-St. Thomas wrote to its members:

> We have been in frequent communications with each other and the
> Presidents of the other RCDC Clubs since this announcement. Our general
> but preliminary consensus regarding the 'evolution' of the RCDC brand as
> described in Eveleen Babich's letter of July 17th is that we are concerned
> that this may not be an enhancement to our Membership Interests. We all, as
> members, invested in the Ritz-Carlton brand!

A copy of the August 3, 2012 Letter from the association board of the Ritz-Carlton Club-St.

Thomas is attached hereto as **EXHIBIT D**.

ANSWER:  The allegations in this Paragraph refer to the contents of a specific

document that speaks for itself.  To the extent a response is required, the AHCA denies the

allegations to the extent that Paragraph 50 misquotes the wording of the document referred to

therein.  The AHCA is without sufficient knowledge or information to form a belief about the

truth of the remaining allegations in this Paragraph and therefore denies them.

51.     On August 10, 2012, the Association Board of the Ritz-Carlton Club-Jupiter

wrote to its members:

> We were disappointed as to how Ritz Carlton, Marriott Vacations
> Worldwide Corporation and Cobalt Travel Company, LLC ('RCDC
> Parties') separately and collectively chose to characterize these matters they
> have defined as the "evolution of the RCDC brand." No input from your
> Board of Directors or, to our knowledge, any of the other RCDC Club
> Boards was ever solicited by these companies while they determined these
> significant changes to the RCDC system in which we all own a Membership
> Interest.

A copy of the August 10, 2012 Letter from the association board of the Ritz-Carlton

Club- St. Thomas is attached hereto as **EXHIBIT E**.[4]

---

[4] Ultimately the announced intention to affiliate the Marriot Vacation Club Destinations program, with its over
400,000 members, caused the Condominium Association Boards of Ritz-Bachelor Gulch and Ritz-Jupiter Clubs

ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 51 misquotes the wording of the document referred to therein.  The AHCA admits that the Ritz-Carlton Club, Bachelor Gulch terminated its management agreement with Defendant RC Management and left the Ritz-Carlton system. The AHCA is without sufficient knowledge or information to form a belief about the truth of the remaining allegations in this Paragraph and footnote 4, and therefore denies them.

52.     On August 17, 2012, Lee Cunningham, the Executive Vice President and Chief Operating Officer of Defendant MVCW, wrote a letter (on Ritz Carlton Destination Club letterhead) to all Ritz Carlton Destination Club Members, including Plaintiffs, "to provide you further information regarding certain changes announced on July 17th to the Lion and Crown Travel Company and The Ritz-Carlton Destination Club system" and to assure the Ritz-Carlton Vacation Club members that "nothing… has changed or will change as a result of the announcement." The August 17th notice also stated that the original affiliation notice on July 17th had generated questions from the members, which would be addressed in an upcoming Webinar on August 28, 2012. A copy of the August 17, 2012 Letter from Lee Cunningham is attached hereto as **EXHIBIT F**.

ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 52 misquotes the wording of and/or mischaracterizes the document referred to therein.  The AHCA admits that Exhibit F discusses an upcoming Webinar on August 28, 2012.  The AHCA is without sufficient knowledge or information to

---

to put a vote to their members as to whether to terminate their management agreements with RC Management and Cobalt. In 2013 and 2014, respectively, both of these clubs' memberships voted to terminate the management agreements with Defendant RC Management, and both clubs have since left the system.

form a belief about the truth of the remaining allegations in this Paragraph and therefore denies them.

53.     In the meantime, Defendant Association wrote a letter to Plaintiffs and Ritz Carlton Aspen Owners on August 17, 2012, notifying them that the Association board was working with MVW executives to better understand the proposed affiliation. The letter states that "[f]rankly, it has been our position that our members bought into a Ritz-Carlton brand and do not want that brand diluted. The Board has concerns that … the nature of our club will change by opening the club to MVW timeshare/points members who have a much lower cost of entry."

ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 53 misquotes the wording of and/or mischaracterizes the document referred to therein.

54.     The August 17th letter from the Association states that "[t]he Board is also concerned that there are specific provisions in our Association documents which the Board believes does not permit MVW to conduct a separate program as they currently intend." A copy of the August 17, 2012 Letter from the Association is attached hereto as **EXHIBIT G**.

ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 54 misquotes the wording of the document referred to therein.

55.     One of the provisions that the Association was referring to is Section 19.8 of the Declaration of Condominium for Aspen Highlands Condominiums, entitled "Limit on Timesharing," which states as follows:

> Each Owner acknowledges that Declarant intends to create Fractional
> Ownership Interests with respect to Tourist Accommodation Units within

Aspen Highlands Condominiums and Aspen Highlands Village. Other than the right of Declarant" (sic) or a Successor Declarant and their respective officers, agents, employees, and assigns to create Fractional Ownership Interests in accordance with Article 23 of this Declaration (specifically including, without limitation, the Plan of Fractional Ownership), **no Unit shall be used for the operation of a timesharing, fraction-sharing, interval ownership, private residence club, membership program, vacation club, exchange network or system or similar program whereby the right to exclusive use of the Unit is alternated or scheduled among participants in the program on a fixed or floating time schedule over a period of years whether by written, recorded agreement or otherwise.** (Emphasis added.)

A copy of the Declaration of Condominium for Aspen Highlands Condominiums is attached hereto as **EXHIBIT H**.[5]

ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  The allegations in footnote 5 of this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 55 and footnote 5 misquote the wording of and/or mischaracterize the documents referred to therein.

56.     On August 26, 2012, Juan Pablo Cappello, a partner at Greenberg Traurig and a Ritz-Carlton Aspen Owner, sent an email to Lee Cunningham, which was copied to the Board of the Association, initially noting Mr. Cunningham's failure to disclose in his August 17, 2012 letter (Exhibit F) his dual role as Executive Vice President and Chief Operating Officer of both the Ritz- Carlton Destination Club and the Marriott Vacations Worldwide Corporation. Mr. Cappello further informed Mr. Cunningham that his August 17, 2012 letter to the Ritz-Carlton Destination Club membership "fail(ed) to acknowledge the underlying issue which all RCDC members need to understand. The Marriott Vacations Worldwide Corp. has a huge incentive to dilute the RCDC brand to further its greater interest in selling more Marriott Vacation Club memberships. The growth of Marriott Vacations Worldwide Corp. as a public company is it (sic) tied with the growth of the sales of more and more

_____

[5] The Declaration for Aspen Highlands Village which created the "Master Association", and which also govern the Ritz Carlton Aspen Owners Fractional Units, sets forth a similar use restriction, labeled "No Timeshare" at Section 8.25.

Marriott Vacation Club memberships." Mr. Cappello concluded, "Unless the Marriott Vacations Worldwide Corp. changes its attitude and begins to address the clear conflict of interest that will destroy the value of our investment, I continue to encourage the RCDC Aspen Highlands to explore exiting from the Marriott relationship and cancel all management contracts." A copy of the August 26, 2012, email from Juan Pablo Cappello is attached hereto as **EXHIBIT I**.

  ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 56 misquotes the wording of and/or mischaracterizes the document referred to therein.

  57. On August 26, 2012, the then President of the Association, Jay A. Neveloff,[6] responded to Mr. Cappello's email stating, "It captures my sentiment quite well. I'd like your permission to share your email with the Presidents of the other owner controlled Ritz-Carlton Clubs, who are each making the points you did, albeit not quite as eloquent as you did."

  ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  The allegations in footnote 6 of this Paragraph refer to the contents of a specific website that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 57 and footnote 6 misquote the wording of and/or mischaracterize the documents referred to therein.

  58. On August 30, 2012, the Ritz-Carlton Destination Club released a new "Frequently Asked Questions for Members" pamphlet to Plaintiffs and Ritz Carlton Aspen Owners, which stated that "Marriott Vacations Worldwide intends to sell most of its remaining unsold Ritz-Carlton Club inventory through the Marriott Vacation Club

---

[6] A partner at the New York law firm of Kramer Levin Naftalis & Frankel, and described on the firm website as "a nationally recognized transaction attorney who represents a broad range of clients in connection with the development, ownership and financing of real estate projects, including many high-profile super luxury and mixed-use, commercial, retail and residential projects in New York City and throughout the country."

Destinations program."[7] A copy of the August 30, 2012 pamphlet "Frequently Asked Questions for Members" is attached hereto as **EXHIBIT J**.

> ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  The allegations in footnote 7 of this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 58 and footnote 7 misquote the wording of and/or mischaracterize the documents referred to therein.

59.     The August 30, 2012 "Frequently Asked Questions for Members" also states: "Given the current state of the luxury fractional market and the market's unlikely recovery in the near term, selling this inventory through the Marriott Vacation Club Destinations program relieves the significant financial burden of this unsold inventory in a balanced way . . ." and "Marriott Vacations Worldwide is paying club dues on these unsold fractions in excess of eleven million dollars a year, plus continues to subsidize the operating costs at a number of clubs for an additional four million dollars a year."

> ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 59 misquotes the wording of the document referred to therein.

60.     In September 2012, the Association retained Philip A. Gosch of the Denver law firm of Brownstein Hyatt Farber Schreck to analyze whether the Aspen Club governing documents allowed the proposed affiliation with the Marriott Vacation Club. On September 21, 2012, Mr. Gosch forwarded a nine-page Memorandum ("Gosch Memorandum") styled: "Analysis with respect to use of Tourist Accommodation Units by members of the Marriott

---

[7] The August 28, 2012 pamphlet stated: "Marriott Vacations Worldwide is paying club dues on these unsold fractions in excess of eleven million dollars a year, plus continues to subsidize the operating costs at a number of clubs for an additional four million dollars a year."

Vacation Club who are not also members of the Ritz Carlton Membership Program". Mr. Gosch concluded that "The Declaration is clear in its prohibition against any timeshare or exchange use of the Tourist Accommodation Units other than the RC Program specified in Article 23 of the Declaration . . ." Mr. Gosch further informed the Association that in addition to Section 19.8 of the Declaration, "There are numerous provisions in the Declaration and the Colorado Disclosure Statement, the City of Aspen Disclosure Statement and the New York Condominium Offering Plan (the "Disclosure Documents") that support the position that the MVC usage is prohibited." A copy of the September 21, 2012 Memorandum is attached hereto as **EXHIBIT K**.

        <u>ANSWER</u>:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 60 misquotes the wording of and/or mischaracterizes the document referred to therein.  The AHCA admits that it retained Philip A. Gosch of the Denver law firm of Brownstein Hyatt Farber Schreck.  The AHCA denies the remaining allegations in this Paragraph.

        61.    On October 2, 2012, the Association issued another letter to Plaintiffs and Ritz Carlton Aspen Owners that purported to update them on the discussions with MVW on this pressing issue. The letter revealed, *inter alia*, that "***MVW has been advised that it is the view of the Board and its counsel, that in order for MVW to move towards the points based system it is planning on, that the underlying Association documents would need to be revised as it is in our view that the documents prohibit what MVW is planning***." A copy of the October 2, 2012 Letter from the Association is attached hereto as **EXHIBIT L**. (Emphasis added.)

        <u>ANSWER</u>:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the

allegations to the extent that Paragraph 61 misquotes the wording of and/or mischaracterizes the document referred to therein.  The AHCA admits that it sent the letter attached to the FAC as Exhibit L to its members but denies Plaintiffs' characterization of the letter; the AHCA admits that it sent the letter in the context of the Marriott Defendants considering whether to place their unsold inventory into a Marriott Vacation Club trust.  The AHCA denies the remaining allegations in this Paragraph.

62.     While the Association was conducting its discussions with MVW, on November 5, 2012, the President of the Board of the Ritz-Carlton Club, Bachelor Gulch, Michael Mullenix, wrote a letter to Mr. Steven Weisz, President and CEO of MVW and Lee Cunningham, Executive Vice President and COO of MVW, stating:

> I am writing on behalf of the Board of Directors to continue our dialogue about the proposed affiliation of Ritz Carlton Bachelor Gulch Members with Lion and Crown in 2013 and beyond and to request that such proposed affiliation be canceled. At a minimum, the proposed affiliation should be delayed until January 1, 2014 and the status quo maintained until that time . . . The Board and membership of the Club have serious concerns that the Club's affiliation with Lion and Crown is contrary to the Club's governing documents and, in any event, will have permanent negative impacts on the club, including most importantly to the value of our residence units…

ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 62 misquotes the wording of the document referred to therein.  The AHCA is without sufficient knowledge or information to form a belief about the truth of the remaining allegations in this Paragraph and therefore denies them.

63.     The letter from the Board of the Ritz-Bachelor Gulch Club to Steven Weisz and Lee Cunningham ended as follows: "Please advise no later than Thursday, November 15, 2012, whether MVW will agree to this requested delay of affiliation. If MVW will not voluntarily agree to this delay and insists on permitting affiliation with Lion and Crown now, the Board may have no alternative but to enforce the Club Declarations prohibition on

timesharing through formal legal action. We do not believe that should be necessary given

our aligned interests on this issue." A copy of the November 5, 2012 Letter from the Board of

the Ritz-Bachelor Gulch Club to Steven Weisz and Lee Cunningham is attached hereto as

**EXHIBIT M**.

ANSWER:  The allegations in this Paragraph refer to the contents of a specific

document that speaks for itself.  To the extent a response is required, the AHCA denies the

allegations to the extent that Paragraph 63 misquotes the wording of the document referred to

therein.

64.     On November 21, 2012, Mr. Gosch, on behalf of the Association, sent a

"cease and desist" letter addressed to MVW, Cobalt and The Ritz-Carlton Development

Company, LLC, stating, *inter alia*, "Any practice of allowing the use of the Tourist

Accommodation Units at the Aspen Highlands Condominiums by the MVC Members would

violate the express terms of the Declaration and the disclosure documents given to purchasers

of units at the Aspen Highlands Condominiums. Further, although MVW, the HOA Manager,

the Program Manager and the developer . . . may attempt to portray these actions as permitted

by the Affiliation Agreement, the Reservation Procedures and the HOA Management

Agreement, we disagree with this interpretation, and in any event the Declaration is clearly

controlling under Colorado law. Also, ancillary contracts of adhesion which were executed

when the developer controlled the Association (such as the HOA Management Agreement

and the Affiliation Agreement) are terminable by the Association under Colorado law once

control of the Association passes (as it has at the Aspen Highlands Condominiums) and it

reasonably and logically follows that any such terminable agreements would in no event

supercede the express terms of a recorded declaration." A copy of the November 21, 2012,

letter is attached hereto as **EXHIBIT N**.

ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 64 misquotes the wording of the document referred to therein.

65.    The November 21, 2012, cease and desist letter further states "In addition to violating the Declaration, any practice of allowing the use of the Tourist Accommodation Units at the Aspen Highlands Condominium by the MVC Members may constitute, among other things, one or more breaches of fiduciary duties of the HOA Manager to the Association under the HOA Management Agreement as a result of self-dealing among the HOA Manager, the Program Manager, the Marriott licensor entity and their respective affiliates to the detriment of the Association and its members. By permitting MVW and/or the Program Manager to utilize the Tourists Accommodation Units in clear violation of the Declaration, the HOA Manager would be enriching its affiliates and the Marriott licensor entity by creating an attractive offering for the MVC members, which would increase sales and license fees under Marriott's arrangement with MVW, all at the expense and burden of the Association and its members." **Ex. N**, page 2.

ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 65 misquotes the wording of the document referred to therein.

66.    On or about December 22, 2012, the Association forwarded the cease and desist letter to its members, stating, *inter alia*, "As a result of all the items mentioned regarding the Destination Club, the lack of communication and discussions with MVW and after deep consideration, your Board of Directors have determined that the Aspen Highlands Members are essentially having our program and purchase rights reduced. Comments from a

significant number of Members are consistent with this position. In order to fully state our position, the Aspen Highlands Board of Directors through its' counsel, has delivered a Cease and Desist Letter to Marriott Vacation Worldwide Corporation, The Cobalt Travel Company and the Ritz Carlton Company, LLC on November 21, 2012." The Association's letter to the members further stated, "The Members of Aspen Highlands believe there are numerous legal grounds which make this program change an action which cannot be undertaken." The letter concluded by asking for comments from members and a promise to "keep you informed as additional information is available."

ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA admits it sent a copy of the letter attached to the FAC as Exhibit N to its members, but the AHCA denies the allegations to the extent that Paragraph 66 misquotes the wording of the document referred to therein.

67.    The written comments received from Members in December 2012, as solicited by the Board, were overwhelmingly in favor of the position the Board, as set forth in the November 21, 2012 cease and desist letter. As an example, "I am with the Board completely. Any MVW involvement is a dilution of our interests in the Ritz Carlton and, in my view, is a breach of the representations provided to us when we purchased the fractional interests. I am a commercial litigator in New York and am prepared to litigate if necessary."

ANSWER:  The allegations in this Paragraph refer to the contents of specific documents that speak for themselves.  To the extent a response is required, the AHCA admits it received communications from its members in response to the AHCA's communication to its members containing a copy of the letter attached to the FAC as Exhibit N.  The AHCA denies the remaining allegations in this Paragraph and specifically denies the allegations to the extent that Paragraph 67 misquotes the wording of the documents referred to therein.

68.     Between April 5, 2013 and April 8, 2013, the Association wrote letters to all Plaintiffs and Ritz Carlton Aspen Owners that:

> Positive discussions were held today between the Board of Directors and representatives of the Ritz/Marriott including Lee Cunningham, COO of the Ritz-Carlton Destination Club. **Ritz Marriott representatives agree that unless a majority of Aspen Highlands Members (excluding the Marriott interests and Members not in good standing) vote in favor of doing so, Ritz/Marriott will not include Aspen Highlands in the Marriott Vacation Club affiliation/exchange/point program**.
>
> Discussions continue on other important issues affecting Aspen Highlands, including alternatives for divesting the current inventory of Aspen Highlands units owned by Ritz/Marriott. **Such inventory will not be sold through the Marriott Vacation Club trust without an additional vote of the Members**.

Copies of letters dated April 5, 2013 and April 8, 2013 from the Association to Ritz Carlton Aspen Owners are attached hereto as **EXHIBIT O**. (Emphasis added).

ANSWER:  The allegations in this Paragraph refer to the contents of specific documents that speak for themselves.  To the extent a response is required, the AHCA admits it sent a communication to its members in early April 2013, but the AHCA denies the allegations to the extent that Paragraph 68 misquotes the wording of the documents referred to therein.

69.     Following the April 5, 2013 announcement that no affiliation would occur "unless a majority of Aspen Highland Members voted in favor of doing so," the Board again received numerous written comments from the members, which again overwhelming opposed the affiliation and further supported the Board's promise of a membership vote on the issue of the proposed Marriott Vacation Club affiliation.

ANSWER:  The allegations in this Paragraph refer to the contents of specific documents that speak for themselves.  To the extent a response is required, the AHCA admits it received communications from its members in response to the AHCA's communication to its members attached to the FAC as Exhibit O.  The AHCA denies the allegations to the

extent that Paragraph 69 misquotes the wording of and/or mischaracterizes the documents referred to therein.  The AHCA denies the remaining allegations in this paragraph.

70.     On May 14, 2013, a letter was sent by The Ritz Carlton Destination Club, signed by Lee Cunningham, to all Ritz Carlton members, stating "regarding other potential affiliations, we want to assure you that a Ritz Carlton Club affiliation with Marriott Vacation Club Destinations will not take place unless there is an *affirmative vote* of *each Club's Membership*." (Emphasis added).

ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 70 misquotes the wording of the document referred to therein.

71.     Discovery produced in fall 2016 by the Association revealed that *initially* the Board sought to follow through on its promise to hold a vote of the membership. Early drafts of proposed communications to members created in May 2013 discussed the promised vote, and included a draft FAQs, that stated:

"Q: Will the Ritz-Carlton Club, Aspen Highlands be available to Marriott Vacation Club Destinations program members?

A: If the Aspen Highlands Members vote that they would like to affiliate with the Marriott Vacation Club Destinations exchange program and the subsequent affirmative vote to change the condominium association documents are approved, then Marriott Vacation Club Destinations program members will be permitted to reserve a residence in the Ritz- Carlton Club, Aspen Highlands to the extent there is inventory available to exchange."

ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 71 misquotes the wording of and/or mischaracterizes the document referred to therein.  The AHCA denies the remaining allegations and characterizations in this Paragraph.

72.     However, by May 2013, the Association became aware that the Association of its sister club at Bachelor Gulch was holding a vote on the issue of whether the Ritz-Bachelor Gulch Club should terminate its relationship with the Ritz Carlton Destination Club because of the proposed affiliation. On June 2, 2013, Association Board President Randel Mercer received an email from Bachelor Gulch Association President Michael Mullenix stating that: "MVW/Ritz has interfered significantly with the Board's efforts to conduct a clean, straightforward vote. With no announcement to the Board, a few days after we announced our decision to terminate MVW pending a majority vote of the Members, MVW decided to write our entire membership and offer them a 'Survey Vote' on Ritz Letterhead asking whether or not BG Members wanted to have affiliation to the Marriott Vacation Clubs or not. Either way, the Club can stay a Ritz according to them. This confused the heck out of our Members, and I did not take it sitting down. We issued a Cease and Desist order to them and asked them to withdraw their 'Survey Vote' and issue a letter retracting their stunt and apologize to the Membership. They did close their 'Survey Vote' after 3 days with another letter to our Members with their usual spin saying they heard our Members loud and clear and BG would not be affiliated with the Marriott Vacation Clubs if the Members vote to keep them around. Really nice!! I can't begin to tell you how their stunt confused our Membership in that they now think they have already voted, there are two elections, etc. After numerous letters from the Board to our Members, phone calls, emails, a Club-wide conference call where we had 150 Members dial in on the Friday before the Memorial Day weekend, I believe we are back on track."

ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 72 misquotes the wording of the document referred to therein.  The AHCA denies the remaining allegations and characterizations in this Paragraph.

73.     A subsequent draft of a letter proposed to be sent to the membership, dated in June 2013, from Lee Cunningham, now promised a "survey" to "provide input" rather than a vote: "Based on some Member feedback, it is clear that there is concern about opening The Ritz-Carlton Club, Aspen Highlands to MVCD members through affiliation, which is why we and your Board of Directors have agreed to allow Aspen Members to provide input before any final decisions are made. If a majority (50% plus 1) of the Aspen Members (not including RCDC developer owned fractional interests) surveyed responds affirmatively that they want Members of the Ritz-Carlton Club, Aspen Highlands to have the ability to voluntarily exchange through the MVCD program and MVCD members to have the ability to exchange into the Ritz-Carlton Club, Aspen Highlands, we will move forward to provide that opportunity to all Aspen Members on an individual basis. If we do not hear affirmatively back from a majority of the Aspen membership, then this exchange opportunity will not be made available to the Aspen Members."

ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 73 misquotes the wording of and/or mischaracterizes the document referred to therein.  The AHCA is without sufficient knowledge or information to form a belief about the truth of the allegations in this Paragraph and therefore denies them.

74.     The Association Board members knew that this draft communication was deceptive. On June 4, 2013, after reviewing an updated version of the draft letter, Board Member Gerald Marsden objected, "it should be made clear that the FAQs were prepared by Marriott/Ritz . . . Also we decided on a vote not a survey." Further, on June 5, 2013, another Board Member, Tyler Oliver, stated in an email to his fellow Board Members, "I am not as worried about what (the proposed communications to the Members) says as what it doesn't say. After reading this the program doesn't sound too bad, but there is more to the story. We

46

have concerns about the points required of a Marriott owner staying at the Ritz. Also, by associating with the Marriott Points system there may be a negative image diluting the brand and real estate value."

      ANSWER:  The allegations in this Paragraph refer to the contents of specific documents that speak for themselves.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 74 misquotes the wording of and/or mischaracterizes the document referred to therein.  The AHCA denies the remaining allegations and characterizations in this Paragraph.

      75.    By July 6, 2013, Mr. Mercer had received an email from Mr. Mullenix informing him that 76% of the 648 Bachelor Gulch members voted in the election, and that "in terms of the total number of Members who voted in the election, more than 89% of the Members voted in FAVOR of the Board's recommendation to terminate Marriott while only less than 11 %voted AGAINST the recommendation."

      ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 75 misquotes the wording of and/or mischaracterizes the document referred to therein.

      76.    Nonetheless, despite the knowledge by the Association that Aspen Highlands members were promised a vote on the affiliation issue, and not a survey, by October 2013, the draft of the correspondence proposed to be sent to the members regarding the vote was further edited to now provide that: "As promised earlier this year, Members of The Ritz-Carlton Club, Aspen Highlands will be *surveyed* on their opinion regarding the potential exchange affiliation with the Marriott Vacation Club Destinations exchange program" and that "the sole purpose of the survey is to understand the Aspen Highlands Member's interest in this voluntary exchange program, which would allow Members to exchange a week of

their reserved allocated time for points within the Marriott Vacation Club Destinations exchange program." (emphasis added).

ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 76 misquotes the wording of and/or mischaracterizes the document referred to therein.  The AHCA denies the remaining allegations and characterizations in this Paragraph.

77.     On November 19, 2013, the Association, in concert with the Marriott Defendants, sent a deceptive letter to the Aspen Members, signed by both Lee Cunningham, as Executive Vice President and Chief Operating Officer of the Ritz Carlton Destination Club, and by all four members of the Association's Board of Directors, (Mr. Mercer, Phil Snyder, Tyler Oliver and Robert Harris), stating that the Ritz Carlton Destination Club and the Association Board were conducting a "survey," and that "the sole purpose of the survey is to understand the Aspen Highlands Member's interest in this voluntary exchange program, which would allow Members to exchange a week of their reserved allocated time for points within the Marriott Vacation Club Destinations exchange program." This letter fails to mention that this survey was to be a substitute for the promised "vote," and that Defendants were breaking the promise made on April 5, 2013 that "unless a majority of Aspen Highlands Members (excluding the Marriott interests and Members not in good standing) vote in favor of doing so, Ritz/Marriott will not include Aspen Highlands in the Marriott Vacation Club affiliation/exchange/point program." Nor does the letter mention the additional promise made by Lee Cunningham on May 13, 2013 that "regarding other potential affiliations, we want to assure you that a Ritz Carlton Club affiliation with Marriott Vacation Club Destinations will not take place unless there is an affirmative vote of each Club's Membership."

ANSWER:  The allegations in this Paragraph refer to the contents of specific documents that speak for themselves.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 77 misquotes the wording of and/or mischaracterizes the documents referred to therein.  The AHCA admits that a letter signed by the AHCA Board, among others, was sent to members on November 19, 2013.  The AHCA denies the remaining allegations and characterizations in this Paragraph.

78.    Next, on December 4, 2013, Lee Cunningham, again in his capacity as Executive Vice President and Chief Operating Officer of the Ritz Carlton Destination Club, sent another deceptive communication to all Plaintiffs, stating: "We have worked collaboratively with your Board of Directors on this potential opportunity, and you should have received a series of letters on April 5, 2013 and November 19, 2013 regarding this Member survey. We are writing today to provide you with additional information and instructions on how to take the survey." The December 4, 2013 letter again deceptively states that "[t]he sole purpose of this survey is to understand whether the Aspen Highlands Members would like the opportunity to voluntarily exchange a week of their allocated time for points within the MVCD exchange program." The December 4, 2013 letter again fails to mention that this survey was to be a substitute for the promised "vote" made on April 5, 2013 and May 13, 2013.

ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 78 misquotes the wording of and/or mischaracterizes the document referred to therein.  The AHCA denies the remaining allegations and characterizations in this Paragraph.

79.    On December 5, 2014, following receipt of the December 4, 2013 letter from Lee Cunningham, Jay Neveloff, who had at the end of 2012 ended his tenure as the

Association President, and who was no longer on the Association Board, wrote the new Board President, Randal Mercer, that "I intend to respond to the poll but think it is appropriate for the Board to write to the members to raise concerns ASAP before they take the poll." When Mr. Mercer replied disingenuously that "I thought the connection was pretty clear regarding the collaborative effort of the board on this one", Mr. Neveloff immediately responded "There was no discussion as to the negatives - that our members swap will be used by hordes of time share owners, that are likely to come for shorter stays meaning wear and tear and clogging up the pipeline for embers who want shorter stays. Also, that the redemption value of points may change. Plus others." Mr. Mercer's replied, "Wow. If you got that out of the letter - we have problems." Mr. Neveloff immediately replied, "I didn't get that from the letter. That's my point. The board should be describing both sides of the issue, not just editing what MVCI wants. Really!"

ANSWER:  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 79 misquotes the wording of the document referred to therein.  The AHCA denies the remaining allegations and characterizations in this Paragraph.

80.     No vote of the Members of Ritz-Aspen Highlands, including by Plaintiffs or Ritz Carlton Aspen Owners, in favor of allowing the Defendants to include Ritz-Aspen Highlands in the Marriott Vacation Club affiliation/exchange/point program ever occurred. Likewise, no vote of the Members of Ritz-Aspen Highlands in favor of allowing the Defendants to sell their unsold inventory of Aspen Highlands units through the Marriott Vacation Club trust ever occurred.

ANSWER:  The AHCA admits that a survey, but no vote, was conducted, beginning on December 4, 2013, to understand whether members would like the opportunity to voluntarily exchange a week of their reserved allocated time for points within the MVCD

exchange program.  The AHCA admits that no vote was held concerning the question whether the Marriott Defendants would be permitted to sell or deposit their unsold inventory at the Ritz-Carlton Club, Aspen Highlands through the Marriott Vacation Club or any trust entity.

81.     However, in April 2014, Defendant Association, acting in concert with and/or aided and abetted by the other Defendants, including MVW, RC Management, and Cobalt, unilaterally decided to include the Ritz-Carlton Club, Aspen Highlands Fractional Plan in the Marriott Vacation Club affiliation/exchange/points program; and agreed and conspired with Defendants to have the Association breach its fiduciary duties to Plaintiffs and Ritz Carlton Aspen Owners by, *inter alia*, 1) agreeing to act and acting in a disloyal manner towards Plaintiffs and Ritz Carlton Aspen Owners by favoring the interests of the Defendants over the interests of the Plaintiffs and by including the Ritz-Carlton Club, Aspen Highlands Fractional Plan in the Marriott Vacation Club affiliation/exchange/points program; and 2) agreeing not to and/or failing to enforce the Declaration, including the covenant against further timesharing, as set forth in paragraph 19.8 of the Declaration.

ANSWER:  The allegations in this Paragraph contain legal conclusions to which no response is required.  To the extent a response is required, the AHCA denies the allegations and characterizations in this Paragraph.

82.     In April 2014, the Association wrote a letter to all Plaintiffs and Ritz Carlton Aspen Owners updating them on "your Board of Directors' efforts on your behalf . . ." On page 2 of the letter, the Board dropped a bombshell under the heading "Marriott Vacation Club Destination Exchange Program: In response to the Members' wishes - both past and present, the Board has crafted a very unique program which would allow Aspen Club Members to exchange a week of their reserved allocated time for points within the Marriott

Vacation Club Destinations exchange program." A copy of the April 2014 Letter from the Association to Plaintiffs and Ritz Carlton Aspen Owners is attached hereto as **EXHIBIT P**.

   <u>ANSWER:</u>  The allegations in this Paragraph refer to the contents of a specific document that speaks for itself.  To the extent a response is required, the AHCA denies the allegations to the extent that Paragraph 82 misquotes the wording of the document referred to therein.  The AHCA denies the remaining allegations and characterizations in this Paragraph.

   83. Plaintiffs allege that sometime on or after April 15 2014, in contravention of the promises made to Ritz Carlton Aspen Owners on April 5 and April 8, 2013, as well as on May 13, 2013 (that unless a majority of Aspen Highlands Members vote in favor of doing so, Ritz/Marriott will not include Aspen Highlands in the Marriott Vacation Club affiliation/exchange/point program), Defendants MVW, RC Management and Cobalt, pursuant to an agreement they made with Defendant Association, affiliated the Ritz Carlton Club, Aspen Highlands with Marriott Vacation Club affiliation/exchange/points program.

   <u>ANSWER:</u>  The AHCA admits that Defendant L&C and/or other Marriott Defendants in this action affiliated the Ritz Carlton Club, Aspen Highlands with the Marriott Vacation Club exchange program.  The AHCA denies the remaining allegations and characterizations in this Paragraph.

   84. Plaintiffs allege on information and belief that sometime 2014, in contravention of the promises made to Ritz Carlton Aspen Owners on April 5, 2013 (that Defendants' unsold inventory of fractionals "will not be sold through the Marriott Vacation Club trust without an additional vote of the Members"), Defendant MVW, pursuant to an agreement it made with Defendant Association not to enforce Section 19.8 of Declaration of Condominium for Aspen Highlands Condominiums, sold a portion of its remaining unsold Ritz-Carlton Club inventory to the Marriott Vacation Club trust.

ANSWER:  The allegations in this Paragraph are directed to Defendant MVW, and therefore the AHCA is not required to respond to them.  To the extent a response is required, the AHCA is without sufficient knowledge or information to form a belief about the truth of the allegations in this Paragraph concerning whether Defendant MVW sold a portion of its remaining unsold Ritz-Carlton Club inventory to the Marriott Vacation Club trust.  The AHCA denies the remaining allegations and characterizations in this Paragraph.

85.    The actions of the Defendants described above were knowingly made in violation of their respective duties of loyalty and honesty owed to Plaintiffs and, Ritz Carlton Aspen Owners as well as in violation of Section 19.8 and other provisions of the Declaration of Condominium for Aspen Highlands Condominiums, as well as the promises made to Plaintiffs and Ritz Carlton Aspen Owners between April 5 and April 8, 2013 that unless a majority of Aspen Highlands Fractional Unit owners and members vote in favor of doing so, Defendants would not include Ritz Carlton Club, Aspen Highlands or the Plaintiffs' and Ritz Carlton Aspen Owners' Fractional Units in the Marriott Vacation Club affiliation/exchange/point program. The actions described herein violated and/or aided and abetted the violation of Defendants' fiduciary duties owed to Plaintiffs and Ritz Carlton Aspen Owners.

ANSWER:  The allegations in this Paragraph contain legal conclusions to which no response is required.  To the extent a response is required, the AHCA denies the allegations and characterizations in this Paragraph.

86.    Now, approximately 400,000 Marriott Vacation Club members — who paid a small fraction of the purchase prices and who pay approximately a third of the annual fees — have access to luxury resorts that were formerly only available to Plaintiffs and Ritz Carlton Aspen Owners. Defendants have derived huge profits and/or cost savings through this affiliation, while devaluing Plaintiffs' vested property interests. Worse yet, Plaintiffs have

had to pay, in the form of inflated annual maintenance fees, for the increased use and wear and tear resulting from the opening of the Ritz Carlton Club, Aspen Highlands to Marriott Vacation Club Members.

ANSWER:  The AHCA denies the allegations and characterizations in this Paragraph.

## V.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Breach of Fiduciary Duty against Association, RC Management, and Cobalt)

87.   Plaintiffs incorporate by reference the allegations contained in the preceding and subsequent paragraphs, as if fully set forth in this cause of action.

ANSWER:  The AHCA incorporates by reference its answers and responses to the preceding Paragraphs as if fully set forth herein.

88.   Defendants Association, RC Management, and Cobalt owed fiduciary duties to Plaintiffs and Ritz Carlton Aspen Owners arising both out of their agency (or sub-agency) relationship with the Plaintiffs and Ritz Carlton Aspen Owners, as well as by virtue of said Defendants' high degree of control over Plaintiffs' and Ritz Carlton Aspen Owners' Fractional Units and had a duty to act with the utmost good faith and loyalty in the best interests of Plaintiffs and Ritz Carlton Aspen Owners.

ANSWER:  The allegations in this Paragraph contain legal conclusions to which no response is required.  The allegations in this Paragraph also set forth the basis for a claim that was dismissed by the District Court, and accordingly this claim is no longer at issue in this case.  Certain allegations in this Paragraph are directed to Defendants RC Management and Cobalt, and therefore the AHCA is not required to respond to them.  To the extent a response is required, the AHCA admits that it owes its members fiduciary duties as set forth specifically in the Declaration.  The AHCA denies the remaining allegations and characterizations in this Paragraph.

89.     These Defendants breached this duty by advancing their own interests and the interests of third parties, including the interests of MVW and MVCI, at the expense of Plaintiffs' and Ritz Carlton Aspen Owner's interests, by agreeing to act and acting in a disloyal manner towards Plaintiffs and Ritz Carlton Aspen Owners and by favoring the interests of the Defendants over the interests of the Plaintiffs and Ritz Carlton Aspen Owners through inclusion of the Ritz- Carlton Club, Aspen Highlands Fractional Plan and the Plaintiffs' and Ritz Carlton Aspen Owners' Fractional Units in the Marriott Vacation Club affiliation/exchange/points program; and 2) agreeing not to and failing to enforce the Declaration, including the covenant against further timesharing, as set forth in paragraph 19.8 of the Declaration and/or by failing to act as a reasonably prudent fiduciary would have acted under the same or similar circumstances.

ANSWER:  The allegations in this Paragraph contain legal conclusions to which no response is required.  The allegations in this Paragraph also set forth the basis for a claim that was dismissed by the District Court, and accordingly this claim is no longer at issue in this case.  Certain allegations in this Paragraph are directed to other Defendants, and therefore the AHCA is not required to respond to them.  To the extent a response is required, the AHCA denies the allegations and characterizations in this Paragraph.

90.     Defendants Association and RC Management owed Plaintiffs and Ritz Carlton Aspen Owners a fiduciary duty that required them to, among other things, enforce the restrictive covenants of the Declaration, including Section 19.8 thereof, as well as section 8.25 of the Declaration for Aspen Highlands Village. These Defendants failed to enforce Section 19.8, Section 8.25 and other provisions, thereby breaching their fiduciary duty, by: (1) failing to enforce these restrictive covenant against timesharing, as set forth in Section 19.8 and Section 8.25; and/or (2) imposing and/or conspiring with the other Defendants to impose the affiliation of the Marriott Vacation Club affiliation/exchange/points program with

the Ritz-Carlton Club, Aspen Highlands Fractional Plan and the Plaintiffs' and Ritz Carlton Aspen Owners/ Fractional Units.

    <u>ANSWER:</u>  The allegations in this Paragraph contain legal conclusions to which no response is required.  The allegations in this Paragraph also set forth the basis for a claim that was dismissed by the District Court, and accordingly this claim is no longer at issue in this case.  Certain allegations in this Paragraph are directed to other Defendants, and therefore the AHCA is not required to respond to them.  To the extent a response is required, the AHCA denies the allegations and characterizations in this Paragraph.

    91.    Defendants Association, RC Management and Cobalt also owed Plaintiffs and Ritz Carlton Aspen Owners a fiduciary duty of loyalty arising both out of their respective agency (or sub-agency) relationship with the Plaintiffs and Ritz Carlton Aspen Owners, as well as by virtue of their high degree of control over Plaintiffs' and Ritz Carlton Aspen Owners' Fractional Units and Cobalt's exclusive control of Plaintiffs and Ritz Carlton Aspen Owners' rights under the appurtenant Ritz-Carlton Club Membership Program.

    <u>ANSWER:</u>  The allegations in this Paragraph contain legal conclusions to which no response is required.  The allegations in this Paragraph also set forth the basis for a claim that was dismissed by the District Court, and accordingly this claim is no longer at issue in this case.  Certain allegations in this Paragraph are directed to Defendants RC Management and Cobalt, and therefore the AHCA is not required to respond to them.  To the extent a response is required, the AHCA admits that it owes its members fiduciary duties as set forth specifically in the Declaration.  The AHCA denies the remaining allegations and characterizations in this Paragraph.

    92.    The fiduciary duties described herein required that Defendants Association, RC Management and Cobalt act in the best interests of Plaintiffs and Ritz Carlton Aspen Owners, which includes refraining from any actions that would unjustly enrich themselves or

their affiliates at the expense of the value of the Fractional Units that Plaintiffs and Ritz Carlton Aspen Owners purchased. These Defendants breached that duty by, *inter alia*, imposing, allowing and/or conspiring with the other Defendants to impose the affiliation of the Marriott Vacation Club affiliation/exchange/points program with the Ritz-Carlton Club, Aspen Highlands Fractional Plan and the Plaintiffs' and Ritz Carlton Aspen Owners' Fractional Units.

ANSWER:  The allegations in this Paragraph contain legal conclusions to which no response is required.  The allegations in this Paragraph also set forth the basis for a claim that was dismissed by the District Court, and accordingly this claim is no longer at issue in this case.  Certain allegations in this Paragraph are directed to Defendants RC Management and Cobalt, and therefore the AHCA is not required to respond to them.  To the extent a response is required, the AHCA admits that it owes its members fiduciary duties as set forth specifically in the Declaration.  The AHCA denies the remaining allegations and characterizations in this Paragraph.

93.     Defendants Association, RC Management and Cobalt breached these fiduciary duties by advancing their own interests and the interests of third parties, including the interests of MVW and MVCI, at the expense of Plaintiffs' and Ritz Carlton Aspen Owners' interests, in allowing the affiliation of the Marriott Vacation Club affiliation/exchange/points program with the Ritz-Carlton Club, Aspen Highlands Fractional Plan and the Plaintiffs' and Ritz Carlton Aspen Owners / Fractional Units.

ANSWER:  The allegations in this Paragraph contain legal conclusions to which no response is required.  The allegations in this Paragraph also set forth the basis for a claim that was dismissed by the District Court, and accordingly this claim is no longer at issue in this case.  Certain allegations in this Paragraph are directed to Defendants RC Management and Cobalt, and therefore the AHCA is not required to respond to them.  To the

extent a response is required, the AHCA denies the allegations and characterizations in this Paragraph.

94.    As a result of Defendants' breach of fiduciary duties, Plaintiffs and Ritz Carlton Aspen Owners suffered damages, including the destruction of the value in their fractional units, in an amount to be proven at trial.

ANSWER:  The allegations in this Paragraph contain legal conclusions to which no response is required.  The allegations in this Paragraph also set forth the basis for a claim that was dismissed by the District Court, and accordingly this claim is no longer at issue in this case.  Certain allegations in this Paragraph are directed to other Defendants, and therefore the AHCA is not required to respond to them.  To the extent a response is required, the AHCA denies the allegations and characterizations in this Paragraph.

95.    Further, as a result of Defendants RC Management and Cobalt's breaches of fiduciary duties, said Defendants profited at Plaintiffs' and Ritz Carlton Aspen Owners' expense, and said Defendants should be ordered to disgorge to Plaintiffs and Ritz Carlton Aspen Owners all commissions, fees and profits they received as a result of the conduct described herein; that an accounting of all commissions, fees and profits earned by RC Management and Cobalt be ordered by the Court, and that a constructive trust be imposed upon said commissions, fees and profits for the benefit of Plaintiffs and Ritz Carlton Aspen Owners.

ANSWER:  The allegations in this Paragraph contain legal conclusions to which no response is required.  The allegations in this Paragraph also set forth the basis for a claim that was dismissed by the District Court, and accordingly this claim is no longer at issue in this case.  Certain allegations in this Paragraph are directed to Defendants RC Management and Cobalt, and therefore the AHCA is not required to respond to them.  To the

extent a response is required, the AHCA denies the allegations and characterizations in this Paragraph.

## SECOND CAUSE OF ACTION
### (Constructive Fraud against Association, RC Management, and Cobalt)

96.     Plaintiffs incorporate by reference the allegations contained in the preceding, and subsequent paragraphs, as if fully set forth in this cause of action.

ANSWER:  The AHCA incorporates by reference its answers and responses to the preceding Paragraphs as if fully set forth herein.

97.     Defendants Association, RC Management, and Cobalt and each of them had a duty as fiduciaries to act honestly, with full disclosure and loyalty to the Plaintiffs as their principals.

ANSWER:  The allegations in this Paragraph contain legal conclusions to which no response is required.  The allegations in this Paragraph also set forth the basis for a claim that was dismissed by the District Court, and accordingly those aspects of this claim are no longer at issue in this case.  Certain allegations in this Paragraph are directed to Defendants RC Management and Cobalt, and therefore the AHCA is not required to respond to them.  To the extent a response is required, the AHCA admits that it owes its members fiduciary duties as set forth specifically in the Declaration.  The AHCA denies the remaining allegations and characterizations in this Paragraph.

98.     As described above, Defendants Association, RC Management, and Cobalt knew that the disclosures they made to Plaintiffs and other Members related to the affiliation proposed by the Marriott Defendants were misleading and failed to fully disclose material facts, including but not limited to, that: 1) the affiliation proposal violated multiple provisions of the Club Declaration, Bylaws and Disclosures as outlined in the September 21, 2012 Memorandum prepared by Philip Gosch, counsel for the Association; 2) that the governing documents, including the Club Declaration, required an affirmative vote of at least a majority

of the members (i.e., required over 400 affirmative member votes); 3) that the Defendants, acting in concert, deceptively and without informing the members, substituted a misleading survey for the promised majority vote of the membership; and 4) on or about April 15, 2104, based on a mere plurality of member responses to the misleading survey, the Association secretly entered into an Affiliation Agreement with the Marriott Vacation Club, without even holding the promised vote, and without even informing the Members about the results of the misleading survey.

ANSWER:  The allegations in this Paragraph contain legal conclusions to which no response is required.  The allegations in this Paragraph also set forth the basis for a claim that was dismissed by the District Court, and accordingly those aspects of this claim are no longer at issue in this case.  Certain allegations in this Paragraph are directed to Defendants RC Management and Cobalt, and therefore the AHCA is not required to respond to them.  To the extent a response is required, the AHCA denies the allegations and characterizations in this Paragraph.

99.     These Defendants knew that the Plaintiffs were relying on the promises made by the Association, RC Management and Cobalt to (i) conduct a vote of the membership before affiliation with MVC would occur, (ii) reject affiliation unless a *majority* of the membership voted for it, and (iii) keep members fully informed on the affiliation issue. Plaintiffs did justifiably rely to their detriment on these material promises. Had Plaintiffs known the truth, they would have taken steps to prevent the affiliation, including demanding the membership vote requiring that a majority of the Members approve affiliation (as promised in April 2013) or instituting appropriate legal proceedings, such as the filing of a derivative lawsuit against the Association's Board to require that it hold the promise vote and to enforce the use restrictions set forth in the Club Declaration and Bylaws.

ANSWER:  The allegations in this Paragraph contain legal conclusions to which no response is required.  The allegations in this Paragraph also set forth the basis for a claim that was dismissed by the District Court, and accordingly those aspects of this claim are no longer at issue in this case.  Certain allegations in this Paragraph are directed to other Defendants, including Defendants RC Management and Cobalt, and therefore the AHCA is not required to respond to them.  To the extent a response is required, the AHCA denies the allegations and characterizations in this Paragraph.

100.    By virtue of the misrepresentations and non-disclosure of the material facts described above and herein, said Defendants afforded themselves the means by which to take undue advantage of Plaintiffs.

ANSWER:  The allegations in this Paragraph contain legal conclusions to which no response is required.  The allegations in this Paragraph also set forth the basis for a claim that was dismissed by the District Court, and accordingly those aspects of this claim are no longer at issue in this case.  Certain allegations in this Paragraph are directed to other Defendants, and therefore the AHCA is not required to respond to them.  To the extent a response is required, the AHCA denies the allegations and characterizations in this Paragraph.

101.    Said Defendants conduct, including the misrepresentations and non-disclosure of the material facts described above and herein, tended to deceive, violate confidence and injure public interests.

ANSWER:  The allegations in this Paragraph contain legal conclusions to which no response is required.  The allegations in this Paragraph also set forth the basis for a claim that was dismissed by the District Court, and accordingly those aspects of this claim are no longer at issue in this case.  Certain allegations in this Paragraph are directed to other Defendants, and therefore the AHCA is not required to respond to them.  To the extent a

response is required, the AHCA denies the allegations and characterizations in this Paragraph.

102.   As a result of the tendency of Defendants' misrepresentations and non-disclosures of the material facts described above and herein to deceive, violate confidence and injure public interests, Plaintiffs suffered damages, including the destruction of the value in their fractional units, in an amount to be proven at trial.

ANSWER:   The allegations in this Paragraph contain legal conclusions to which no response is required.   The allegations in this Paragraph also set forth the basis for a claim that was dismissed by the District Court, and accordingly those aspects of this claim are no longer at issue in this case.   Certain allegations in this Paragraph are directed to other Defendants, and therefore the AHCA is not required to respond to them.   To the extent a response is required, the AHCA denies the allegations and characterizations in this Paragraph.

103.   Further, as a result of the tendency of Defendants' misrepresentations and non-disclosures to deceive, violate confidence and injure public interests, Defendants RC Management and Cobalt have profited at Plaintiffs' expense and said Defendants should be ordered to disgorge to Plaintiffs and Ritz Carlton Aspen Owners all commissions, fees and profits they received as a result of the conduct described herein; that an accounting of all commissions, fees and profits earned by RC Management and Cobalt be ordered by the Court, and that a constructive trust be imposed upon said commissions, fees and profits for the benefit of Plaintiffs and Ritz Carlton Aspen Owners.

ANSWER:   The allegations in this Paragraph contain legal conclusions to which no response is required.   The allegations in this Paragraph also set forth the basis for a claim that was dismissed by the District Court, and accordingly those aspects of this claim are no longer at issue in this case.   Certain allegations in this Paragraph are directed to

Defendants RC Management and Cobalt, and therefore the AHCA is not required to respond to them.  To the extent a response is required, the AHCA denies the allegations and characterizations in this Paragraph.

### THIRD CAUSE OF ACTION
### (Aiding and Abetting Breach of Fiduciary Duty and Constructive Fraud against All Defendants)

104.    Plaintiffs and Ritz Carlton Aspen Owners incorporate by reference the allegations contained in the preceding, and subsequent paragraphs, as if fully set forth in this cause of action.

ANSWER:  The AHCA incorporates by reference its answers and responses to the preceding Paragraphs as if fully set forth herein.

105.    Defendants and each of them, including MVW, MVCI and L & C aided and abetted the breaches of fiduciary duty and constructive fraud committed by Defendants Association, RC Management and Cobalt.

ANSWER:  The allegations in this Paragraph contain legal conclusions to which no response is required.  The allegations in this Paragraph also set forth the basis for a claim that was dismissed by the District Court, and accordingly those aspects of this claim are no longer at issue in this case.  Certain allegations in this Paragraph are directed to other Defendants, including Defendants MVW, MVCI, and L&C, and therefore the AHCA is not required to respond to them.  To the extent a response is required, the AHCA denies the allegations and characterizations in this Paragraph.

106.    As described above, Association, RC Management, and Cobalt owed fiduciary duties to Plaintiffs and Ritz Carlton Aspen Owners.

ANSWER:  The allegations in this Paragraph contain legal conclusions to which no response is required.  The allegations in this Paragraph also set forth the basis for a claim that was dismissed by the District Court, and accordingly those aspects of this claim are

no longer at issue in this case.  Certain allegations in this Paragraph are directed to Defendants RC Management and Cobalt, and therefore the AHCA is not required to respond to them.  To the extent a response is required, the AHCA admits that it owes its members fiduciary duties as set forth specifically in the Declaration.  The AHCA denies the remaining allegations and characterizations in this Paragraph.

107.    As described above, Association, RC Management and Cobalt breached their fiduciary duties and committed fraud as to Plaintiffs and Ritz Carlton Aspen Owners.

ANSWER:  The allegations in this Paragraph contain legal conclusions to which no response is required.  The allegations in this Paragraph also set forth the basis for a claim that was dismissed by the District Court, and accordingly those aspects of this claim are no longer at issue in this case.  Certain allegations in this Paragraph are directed to Defendants RC Management and Cobalt, and therefore the AHCA is not required to respond to them.  To the extent a response is required, the AHCA denies the allegations and characterizations in this Paragraph.

108.    Defendants, including MVW, MVCI and L & C knowingly aided and abetted and participated in the breaches of fiduciary duty and constructive fraud by, *inter alia*, participating in further timesharing (prohibited by, *inter alia*, Section 19.8 of the Declaration of Condominium for Aspen Highlands Condominiums and Section 8.25 of the Declaration for Aspen Highlands Village) and by participating in, intermeddling, forcing and otherwise improperly influencing the decision by Cobalt and the other Defendants to affiliate the Marriott Vacation Club and with the Ritz Carlton Club, Aspen Highlands and with Plaintiffs' and Ritz Carlton Aspen Owners' Fractional Units, despite promises made to Plaintiffs and Ritz Carlton Aspen Owners that such affiliation would not occur without a vote by the Plaintiffs and Ritz Carlton Aspen Owners.

ANSWER:  The allegations in this Paragraph contain legal conclusions to which no response is required.  The allegations in this Paragraph also set forth the basis for a claim that was dismissed by the District Court, and accordingly those aspects of this claim are no longer at issue in this case.  Certain allegations in this Paragraph are directed to other Defendants, including Defendants MVW, MVCI, and L&C, and therefore the AHCA is not required to respond to them.  To the extent a response is required, the AHCA denies the allegations and characterizations in this Paragraph.

109.    Defendants' MVW, MVCI and L & C aiding and abetting the breach of fiduciary duties and constructive fraud alleged herein has caused damage to Plaintiffs and, Ritz Carlton Aspen Owners including the destruction of the value in their fractional units, in an amount to be proven at trial.

ANSWER:  The allegations in this Paragraph contain legal conclusions to which no response is required.  The allegations in this Paragraph also set forth the basis for a claim that was dismissed by the District Court, and accordingly those aspects of this claim are no longer at issue in this case.  Certain allegations in this Paragraph are directed to other Defendants, including Defendants MVW, MVCI, and L&C, and therefore the AHCA is not required to respond to them.  To the extent a response is required, the AHCA denies the allegations and characterizations in this Paragraph.

110.    Further, as a result of Defendants' MVW, MVCI and L & C aiding and abetting of the breach of fiduciary duties and constructive fraud described herein, said Defendants profited at Plaintiffs and Ritz Carlton Aspen Owners' expense and said Defendants should be ordered to disgorge to Plaintiffs and Ritz-Carlton Aspen Owners all commissions, fees and profits they received as a result of the conduct described herein; that an accounting of all commissions, fees and profits earned by RC Management and Cobalt be

ordered by the Court, and that a constructive trust be imposed upon said commissions, fees and profits for the benefit of Plaintiffs and Ritz Carlton Aspen Owners.

ANSWER: The allegations in this Paragraph contain legal conclusions to which no response is required. The allegations in this Paragraph also set forth the basis for a claim that was dismissed by the District Court, and accordingly those aspects of this claim are no longer at issue in this case. Certain allegations in this Paragraph are directed to other Defendants, including Defendants MVW, MVCI, and L&C, and therefore the AHCA is not required to respond to them. To the extent a response is required, the AHCA denies the allegations and characterizations in this Paragraph.

### FOURTH CAUSE OF ACTION
#### (Conspiracy against All Defendants)

111.    Plaintiffs incorporate by reference the allegations contained in the preceding and subsequent paragraphs, as if fully set forth in this cause of action.

ANSWER: The AHCA incorporates by reference its answers and responses to the preceding Paragraphs as if fully set forth herein.

112.    Defendants, and each of them, conspired with the remaining Defendants' scheme to commit the wrongful and unlawful conduct alleged herein.

ANSWER: The allegations in this Paragraph contain legal conclusions to which no response is required. The allegations in this Paragraph also set forth the basis for a claim that was dismissed by the District Court, and accordingly those aspects of this claim are no longer at issue in this case. Certain allegations in this Paragraph are directed to other Defendants, and therefore the AHCA is not required to respond to them. To the extent a response is required, the AHCA denies the allegations and characterizations in this Paragraph.

113.    As described in detail above, MVW, MVCI and L & C, in furtherance of their own financial gain, conspired with Defendants Association, RC Management and Cobalt in

breaching their fiduciary duties and acting fraudulently by agreeing to the affiliation of the Ritz-Carlton Club, Aspen Highlands and Plaintiffs' and Ritz Carlton Aspen Owners' Fractional Units with the Marriott Vacation Club, in violation of promises made by Defendants both in April 2013, in the Affiliation Agreement, and in the Declaration of Condominium at Aspen Highlands.

ANSWER:  The allegations in this Paragraph contain legal conclusions to which no response is required.  The allegations in this Paragraph also set forth the basis for a claim that was dismissed by the District Court, and accordingly those aspects of this claim are no longer at issue in this case.  Certain allegations in this Paragraph are directed to other Defendants, including Defendants MVW, MVCI, and L&C, and therefore the AHCA is not required to respond to them.  To the extent a response is required, the AHCA denies the allegations and characterizations in this Paragraph.

114.    All Defendants agreed on an object to be accomplished – the affiliation of the Ritz- Carlton Club, Aspen Highlands and Plaintiffs' and Ritz Carlton Aspen Owners' Fractional Units with the Marriott Vacation Club. There was a meeting of the minds among all Defendants on that object. The Defendants, working together, accomplished the unlawful overt acts of breaching fiduciary duties set forth above, as well as the unlawful overt acts of aiding and abetting the Association, RC Management, and/or Cobalt in breaching their fiduciary duties and by acting fraudulently by participating in said affiliation, in violation of promises made by Defendants in April 2013, the Affiliation Agreement, and the Declaration of Condominium at Aspen Highlands.

ANSWER:  The allegations in this Paragraph contain legal conclusions to which no response is required.  The allegations in this Paragraph also set forth the basis for a claim that was dismissed by the District Court, and accordingly those aspects of this claim are no longer at issue in this case.  Certain allegations in this Paragraph are directed to other

Defendants, and therefore the AHCA is not required to respond to them.  To the extent a response is required, the AHCA denies the allegations and characterizations in this Paragraph.

115.    As a proximate result, Plaintiffs suffered damages, including the destruction of the value in their fractional units, in an amount to be proven at trial.

ANSWER:  The allegations in this Paragraph contain legal conclusions to which no response is required.  The allegations in this Paragraph also set forth the basis for a claim that was dismissed by the District Court, and accordingly those aspects of this claim are no longer at issue in this case.  To the extent a response is required, the AHCA denies the allegations and characterizations in this Paragraph.

116.    As a result of Defendants conspiracy to breach of fiduciary duties described herein, Defendants RC Management, Cobalt, MVW, MVCI and L & C profited at Plaintiffs and Ritz Carlton Aspen Owners' expense and said Defendants should be ordered to disgorge to Plaintiffs and Ritz Carlton Aspen Owners all commissions, fees and profits they received as a result of the conduct described herein; that an accounting of all commissions, fees and profits earned by RC Management and Cobalt be ordered by the Court, and that a constructive trust be imposed upon said commissions, fees and profits for the benefit of Plaintiffs and Ritz Carlton Aspen Owners.

ANSWER:  The allegations in this Paragraph contain legal conclusions to which no response is required.  The allegations in this Paragraph also set forth the basis for a claim that was dismissed by the District Court, and accordingly those aspects of this claim are no longer at issue in this case.  Certain allegations in this Paragraph are directed to other Defendants, including Defendants RC Management, Cobalt, MVW, MVCI, and L&C, and therefore the AHCA is not required to respond to them.  To the extent a response is required, the AHCA denies the allegations and characterizations in this Paragraph.

## FIFTH CAUSE OF ACTION
### (Unjust Enrichment against RC Management, Cobalt MVW, MVCI and L & C)

117.     Plaintiffs incorporate by reference the allegations contained in the preceding and subsequent paragraphs, as if fully set forth in this cause of action.

ANSWER:  The AHCA incorporates by reference its answers and responses to the preceding Paragraphs as if fully set forth herein.

118.     Defendants RC Management, Cobalt, MVW, MVCI and L&C acted in a wrongful manner, unfairly causing detriment to Plaintiffs and Ritz Carlton Aspen Owners.

ANSWER:  The allegations in this Paragraph contain legal conclusions to which no response is required.  Certain allegations in this Paragraph are directed to other Defendants, including Defendants RC Management, Cobalt, MVW, MVCI, and L&C, and therefore the AHCA is not required to respond to them.  To the extent a response is required, the AHCA denies the allegations and characterizations in this Paragraph.

119.     Said Defendants, and each of them, conspired with and aided and abetted each other in achieving a unilaterally imposed affiliation with the Marriott Vacations Club, in order to rid themselves of a poor financial investment with the Ritz-Carlton Club, to increase the attractiveness, value and price of MVC timeshares sold by the MVW and MVCI through the affiliation with the Ritz Carton Club Aspen Highlands, as well as to increase management and exchange fees payable to RC Management, Cobalt and L & C, despite knowing that such an affiliation would devalue Plaintiffs' Fractional Units, while at the same time making Marriott Vacation Club Destinations more attractive, valuable and expensive, all to the unjust enrichment of Defendants, including but not limited to RC Management, Cobalt_MVW, MVCI and L & C.

ANSWER:  The allegations in this Paragraph contain legal conclusions to which no response is required.  Certain allegations in this Paragraph are directed to other Defendants, and therefore the AHCA is not required to respond to them.  To the extent a

response is required, the AHCA denies the allegations and characterizations in this Paragraph.

120. Under these circumstances, it would be unjust for said Defendants to retain the benefit and ill-gotten commissions, fees and profits they made without commensurate compensation to Plaintiffs and Ritz Carlton Aspen Owners. As such, Plaintiffs request said Defendants should be ordered to disgorge to Plaintiffs and Ritz Carlton Aspen Owners all commissions, fees and profits they received as a result of the conduct described herein; that an accounting of all commissions, fees and profits earned by RC Management and Cobalt be ordered by the Court, and that a constructive trust be imposed upon said commissions, fees and profits for the benefit of Plaintiffs and Ritz Carlton Aspen Owners.

ANSWER: The allegations in this Paragraph contain legal conclusions to which no response is required. Certain allegations in this Paragraph are directed to other Defendants, and therefore the AHCA is not required to respond to them. To the extent a response is required, the AHCA denies the allegations and characterizations in this Paragraph.

## RESERVATION OF RIGHTS

121. Plaintiffs expressly reserve all rights accorded under Colorado law, including but not limited to the right to amend this pleading as may be necessary in light of new or additional factual information gathered throughout the disclosure and discovery phases of this litigation and the right to plead exemplary damages in accordance with C.R.S. § 13-21.102.

ANSWER: The allegations in this Paragraph constitute a reservation of rights to which no response is required. To the extent a response is required, the AHCA denies that Plaintiffs are entitled to amend their pleading at this time as to the allegations against the AHCA, and therefore the AHCA denies the allegations in this reservation of rights.

**JURY DEMAND**

Plaintiffs demand a trial by jury for all issues so triable.

ANSWER:  The allegations in this Paragraph that immediately follows Paragraph 121 contain a jury demand to which no response is required.  To the extent a response is required, the AHCA denies that Plaintiffs are entitled to any relief in this action, whether awarded by the Court or a jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

a.   That Plaintiffs recover damages, as provided by law, determined to have been sustained as to each of them;

b.   That Defendants RC Management, Cobalt and L & C disgorge and repay to Plaintiffs all compensation paid to them by Plaintiffs; that the Court order an accounting of said compensation, and that a constructive trust be imposed upon said compensation for the benefit of Plaintiffs;

c.   That Defendants disgorge to Plaintiffs all profits Defendants received as a result of the conduct described herein; that the Court order an accounting of said profits and that a constructive trust be imposed upon said profits for the benefit of Plaintiffs;

d.   That Plaintiffs receive pre-judgment and post-judgment interest as allowed by law;

e.   That Plaintiffs recover their costs of the suit, and attorneys' fees as allowed by law; and

f.   For all other relief allowed by law and equity.

ANSWER:  The allegations in this Paragraph that immediately follow the Jury Demand constitute a prayer for relief to which no response is required.  To the extent a response is required, the AHCA denies that Plaintiffs are entitled to any relief in this action,

as requested or otherwise; therefore, the AHCA denies the allegations in this prayer for relief, including all subparts therein.

**AHCA'S GENERAL DEFENSES**

The AHCA denies all allegations in Plaintiffs' FAC not specifically admitted herein and further denies that Plaintiffs are entitled to any of the relief they seek whatsoever from the AHCA.

**AHCA'S AFFIRMATIVE DEFENSES**

The AHCA reserves the right to amend its Answer to add additional Affirmative Defenses consisted with the facts discovered in this case and as warranted by the proceedings in this case.  The AHCA asserts the following Affirmative Defenses, without assuming the burden of proof when such burden would otherwise be on Plaintiffs.

1.      Plaintiffs fail to state a claim upon which relief can be granted.

2.      Plaintiffs' claims are barred in whole or in part by the business judgment rule.

3.      Plaintiffs' claims are barred in whole or in part by the economic loss rule.

4.      Plaintiffs' claims are barred in whole or in part by the doctrines of consent and/or acquiescence.

5.      Plaintiffs' claims are barred in whole or in part by the doctrine of waiver.

6.      Plaintiffs' claims are barred by the applicable statutes of limitations.

7.      Plaintiffs' damages, if any, were caused by parties that the AHCA neither controlled nor had a right to control.

8.      Plaintiffs' claims are barred in whole or in part based on Plaintiffs' own comparative fault and/or contribution to their alleged damages, if any.

9.      Any alleged damages suffered by Plaintiffs are a result of Plaintiffs' own actions or omissions.

10.      Plaintiffs have failed to mitigate or minimize their alleged damages, if any.

11.     Plaintiffs' claims are barred in whole or in part by the doctrine of estoppel.

12.     Plaintiffs' alleged damages, if any were caused by intervening or superseding

causes that the AHCA neither controlled nor could control.

13.     Plaintiffs' claims are barred in whole or in part by the express terms of the

Declaration of Condominium for Aspen Highlands Condominium.

## AHCA'S PRAYER FOR RELIEF

WHEREFOR, the AHCA respectfully requests that the Court:

1.     Dismiss with prejudice Plaintiffs' claims against the AHCA;

2.     Award the AHCA its attorneys' fees, costs, and expenses herein, to the extent

provided by contract or by law; and

3.     Award the AHCA such other relief as the Court deems proper.

Respectfully submitted this 12th day of April, 2018.

_/s/ Daniel F. Shea_
**Daniel F. Shea**
**Jessica Black Livingston**
HOGAN LOVELLS US LLP
1601 Wewatta Street, Suite 900
Denver, Colorado 80202
Telephone: (303) 899-7300
FAX: (303) 899-7333
E-mail: dan.shea@hoganlovells.com
E-mail:jessica.livingston@hoganlovells.com

*Attorneys for Defendant Aspen Highlands*
*Condominium Association*

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that on this 12th day of April, 2018, a true and accurate copy of the foregoing **ASPEN HIGHLANDS CONDOMINIUM ASSOCIATION'S ANSWER TO FIFTH AMENDED COMPLAINT AND JURY DEMAND** was filed and served via CM/ECF filing system upon following:

Matthew C. Ferguson, Esq.
The Matthew C. Ferguson Law Firm, P.C.
119 South Spring, Suite 201
Aspen, Colorado 81611

Michael J. Reiser, Esq.
Law Office of Michael J. Reiser
1475 N. Broadway, Suite 300
Walnut Creek, California 94596

Michael L. Schrag, Esq.
Linda Lam, Esq.
Gibbs Law Group LLP
505 14th Street, Suite 1110
Oakland, California 94612

Tyler R. Meade, Esq.
The Meade Firm P.C.
1816 Fifth Street
Berkeley, California 94710

Naomi G. Beer, Esq.
Greenberg Traurig, LLP
1200 17th Street, Suite 2400
Denver, Colorado 80202

Ian S. Marx, Esq.
Philip R. Sellinger, Esq.
Todd Schleifstein
Greenberg Traurig, LLP
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932

*/s/ Greg Apt*