IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 1:16-cv-01301-PAB-GPG

**RCHFU, LLC,** *et al.*

Plaintiffs,

v.

**MARRIOTT VACATIONS WORLDWIDE CORPORATION**, *et al.*

Defendants.

**PLAINTIFFS' MOTION FOR SANCTIONS AND A DEFAULT JUDGMENT AGAINST CERTAIN MARRIOTT DEFENDANTS**

This motion invokes Fed. R. Civ. P. 26(g) and this Court's inherent power to fashion sanctions for the Marriott Defendants' wrongful withholding of a key document first requested in 2016. The concealment allowed Marriott to assert false arguments in its motion to dismiss and has unfairly skewed nearly a year's worth of discovery, including depositions of Marriott executives and four Association board members, at great cost to Plaintiffs.

The Marriott Defendants sought dismissal of the breach of fiduciary duty claims based on one affiliation agreement, produced early in discovery. That agreement suggested that the Association had no role in the Marriott Vacation Destination Club ("MVC") affiliation. Marriott, however, concealed a later agreement (the "2013 Affiliation Agreement") showing the affiliation could not occur unless the Association agreed to it. This flatly contradicts the Marriott Defendants' repeated insistence that it could not have aided and abetted the Association's breach of fiduciary

1

duty or constructive fraud because the Association had no role in the affiliation. Plaintiffs thus move for an Order:

(1) Entering a default judgment against Ritz-Carlton Management Company ("RC Management") on the first cause of action for breach of fiduciary duty, and against RC Management, Lion & Crown and Marriott Vacation Club Worldwide Corp. ("MVW") on the third cause of action for aiding and abetting the Association's breach of fiduciary duty and constructive fraud, without waiving any related claims against other defendants in the action or on other claims against these defendants;[1]

(2) Allowing Plaintiffs to immediately retake the depositions of senior Marriott executives Stephanie Sobeck, Richard Hayward, and Lee Cunningham with the Marriott Defendants paying all associated attorneys' fees and costs;

(3) Allowing Plaintiffs to immediately retake the depositions of four former Aspen board members, with the Marriott Defendants paying all associated attorneys' fees and costs; and

(4) Imposing sanctions under Rule 26(g) for false discovery responses, including attorneys' fees for this motion.

The Court should also consider this motion as further support of Plaintiffs' motion to add a prayer for punitive damages. Dkt. No. 185.

### CERTIFICATE OF COMPLIANCE WITH D.C.COLO. LCIVR 7.1(A)

Plaintiffs' counsel certify that they have conferred with counsel for the Marriott Defendants, who oppose this Motion.

### I.     INTRODUCTION

The Marriott Defendants and their counsel, Greenberg Traurig, LLP ("GT"), have repeatedly asserted here and in the related *Petrick* and *Reiser* cases that the MVC affiliation "was not within [the associations'] power," and that "[D]ecisions regarding affiliation" "are *solely*

---

[1] Plaintiffs do not seek any sanction against the Association, so the requested default judgment would not relieve Plaintiffs of their burden to prove their case against the Association.

2

*within the province of . . . Cobalt.*" *See, e.g.,* Dkt. No. 131 at 11-14. (emphasis added). Based on the Association's purported lack of power over the affiliation, Marriott argued in this case that it could not have aided and abetted the Association's breach of fiduciary duty or constructive fraud with respect to the affiliation, and asserted comparable arguments in *Petrick* and *Reiser*.

In actuality, the concealed 2013 Affiliation Agreement provides that the MVC affiliation could not go through without the Association's approval. But GT and Marriott concealed this document until March 13, 2018, well after Plaintiffs took critical depositions. Their explanations for this failure are contradictory. GT's Ian Marx first claimed that Plaintiffs never requested the 2013 Affiliation Agreement. Then, when confronted with the falsity of this explanation, GT pleaded an inadvertent failure to produce it. Declaration of Michael J. Reiser ("Reiser Decl."), Ex. H (3/15/18 Marx email) and Ex. I (4/4/18 Marx email). This too, rings false. Recent depositions show that the Marriott Defendants have been concealing the 2013 Affiliation Agreement from Ritz-Carlton Destination Club ("RCDC") associations.

This Court rightly rejected this "Marriott-is-not-liable-because-the-association-had-no-role" argument based on the allegations that the Association "took a direct role in negotiating and approving the MVC affiliation" and that it reneged on the promised vote. (Dkt. No. 210 at 22). But the withholding of the 2013 Affiliation Agreement harmed Plaintiffs in several ways: Plaintiffs did not have access to the document when they examined Marriott executives about the genesis and mechanics of the MVC affiliation and, thus, were unable to make sense of their (purposely) confusing and contradictory testimony. Nor could Plaintiffs adequately depose the Aspen board without this key agreement. The concealment prevented Plaintiffs from asking Aspen board members basic questions, such as whether RC Management provided them with a copy of the 2013

3

Affiliation Agreement and, if so, whether they were aware that the Association could prevent the MVC affiliation. It was RC Management's duty to provide such information to each RCDC association. Their failure to do so is powerful evidence of intentional breaches of fiduciary duty warranting exemplary damages.[2] Concealing the document also prevented Plaintiffs from developing additional claims in these actions.

This Court upheld Plaintiffs' allegations that RC Management had sufficient control over Plaintiffs' property (pursuant to the Management Agreement) to create fiduciary duties. Dkt. No. 210 at p. 13. The Management Agreement authorized RC Management to engage a "program manager" (Cobalt) to manage and administer club membership programs. *Id*. at p. 4. The 2013 Affiliation Agreement now reveals the rest of the mechanics behind the affiliation at issue: Cobalt granted Lion & Crown broad powers to affiliate with external (non-RCDC) clubs like the MVC, and Lion & Crown, in turn, went on to give each club association the right to decide for or against the external affiliation. So not only does RC Management (and Cobalt) have broad power over Plaintiffs' property, but it is now clear that the Association also was delegated the power to prevent the MVC affiliation. Reiser Decl., Ex. G.

For two years, the Marriott Defendants' wrongfully concealed this critical information, not just from Plaintiffs, but also from this Court, as well as the *Petrick* and *Reiser* courts. Under these circumstances, Plaintiffs respectfully request that the Court invoke its inherent powers to remedy this prejudice by ordering the requested re-depositions at Marriott's expense, and entering default

---

[2] Telling evidence that RC Management hid this document from the Association is a February 16, 2017 flawed legal analysis of the Association's affiliation actions by their counsel. Ominously absent from the list of *57* documents Wendell Porterfield reviewed is the 2013 Affiliation Agreement, strongly indicating it was never given to the Association. Reiser Decl., Ex. Q.

4

judgment against RC Management, Lion & Crown, and MVW on the claims most closely associated with their wrongful conduct, *i.e.*, breach of fiduciary duty and aiding and abetting the Association's breach of fiduciary duty and constructive fraud. Sanctions should also be imposed under Rule 26(g) for false discovery responses.

## II. RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

### A. The Marriott Defendants Agree to Produce All Relevant Affiliation Documents

In their August 5, 2016 Rule 26 initial disclosures, Marriott disclosed two categories of documents to support their defenses, both relating to affiliation agreements. Reiser Decl., Ex. A (Marriott's Initial Disclosures, pp. 3, 5). Plaintiffs' September 8, 2016, Rule 34 requests called for all documents concerning the affiliation of the Ritz-Aspen or any other Ritz Carlton Club with MVC. *Id.,* Ex. B (Marriott's Responses to RFPs, p. 5). The Marriott Defendants agreed to produce these documents and all documents listed in their Rule 26 disclosures. *Id.* at pp. 5, 8.

### B. Plaintiffs Depose Marriott Executives Not Knowing That Marriott Concealed the 2013 Affiliation Agreement

On August 4, 2017, after a document production process that took nearly a year, Mr. Marx told Plaintiffs that the Marriott document production was "substantially complete," but refused to confirm that all documents had been produced. Reiser Decl., Ex. D (8/4/17 Marx Ltr., p. 2); Reiser Decl., Ex. E (12/10/17 Meade ltr., pp. 6-7); Fed.R.Civ.P. 26(g)(1); *Seabron v. Am. Family Mut. Ins. Co*., 2011 WL 6096497, *2 (D. Colo. Dec. 7, 2011) (requiring a party to certify document production complete). Because the discovery cut-off was approaching, Plaintiffs had to begin depositions. *See* Dkt. Nos. 134, 136. Plaintiffs prepared for and took fifteen depositions in ten cities across the country. *See* Reiser Decl. at ¶¶ 10, 27.

5

In November 2017, MVW senior executives provided confusing and contradictory testimony about the MVC affiliation. Specifically, MVW's COO[3] Lee Cunningham and senior VP Stephanie Sobeck confusingly testified that (1) Cobalt effected the affiliation and had the sole authority to do so, (2) Lion & Crown, and not Cobalt, effected the affiliation, and also (3) Lion & Crown affiliated the Ritz-Aspen with MVC at the behest of Cobalt. GT senior attorneys Philip Sellinger and Mr. Marx, along with Douglas Kelly, Esq., Marriott's in-house counsel, defended these depositions. Reiser Decl. at ¶ 26.

On the first day of the Cunningham deposition, Mr. Sellinger made the following factual assertion on the record: "[W]e're relying on the agreements, which give unfettered discretion to Cobalt to affiliate without regard to anything else." Reiser Decl., Ex. J (Cunningham depo. at 250:18-20). Cunningham then testified consistently with this improper coaching:

> **Q:** And your counsel just testified that he thought it was the exclusive discretion of Cobalt, the decision on whether to affiliate. True?
> **A:** That is correct.
> **Q:** And that's your position?
> **A:** Yes.

*Id.* (Cunningham depo. at 251:6-11). Cunningham then veered from GT's script by testifying that *Lion & Crown, not Cobalt,* made the decision to affiliate. *Id.* (Cunningham depo. at 384:1-19). Later, he switched paths again, testifying that *Cobalt* "has the sole discretion for affiliation between Cobalt and each of the clubs or entities." Plaintiffs then asked:

> **Q:** So what is your explanation for why you believe The Lion & Crown Travel Company has the authority to affiliate other clubs with The Ritz-Carlton Destination Club?
> **A**: *That was the advice from counsel that that was the appropriate entity to affiliate with, so I'd have to go back and refresh myself on those documents*

---

[3] Cunningham testified that he also serves as the vice president for Cobalt and Lion & Crown, among other entities. Reiser Decl., Ex. J. (Cunningham depo. at 10:12-11:15; 130:9-131:17).

*Id*. (Cunningham depo. at 389:1-11) (emphasis added). Immediately after this testimony, the three Marriot lawyers and Cunningham took an 18-minute break in which Cunningham's memory was "refreshed" by counsel. *Id*. (Cunningham depo. at 392:17-393:7). After the woodshedding, Cunningham's testimony changed yet again:

> **Q:** So do you want to change your testimony at all as to whether Cobalt is the sole — has the sole authority to affiliate other clubs with the Ritz-Carlton Destination Club?
> **A:** *Cobalt — Cobalt can affiliate with other clubs.* **They have — refreshed my memory** *— they have affiliated with Lion & Crown, and have, in this case, through Lion & Crown, sought the affiliation of the other clubs.*
> **Q:** So it's your testimony then that Cobalt, having sole authority to affiliate, somehow delegated that authority to affiliate to Lion & Crown, of which you were the vice president?
> *A: They directed —*
> **Q:** Is that your testimony?
> *A: They directed Lion & Crown to affiliate with the other clubs.*
> **Q:** Who made the decision to affiliate?
> *A: The — Cobalt did.*
> **Q:** So you're changing your testimony from right before this break. True?
> **A:** *Cobalt directed Lion & Crown to the affiliation. The decision was made by Cobalt.*

*Id*. (Cunningham depo. at 394:21-395:23) (objections deleted, emphasis added).

Understandably, Plaintiffs' counsel were unable to make sense of this confusing testimony because they had not seen the withheld 2013 Affiliation Agreement which makes Lion & Crown's affiliation with the MVC subject to approval by the various Associations.

Sobeck was the executive in charge of implementing the MVC affiliation. She also testified that Cobalt had the sole discretion to affiliate with MVC. Reiser Decl., Ex. K (Sobeck depo. at 42:18-43:2). Sobeck also toed the false party-line that the Association had no right to participate in Cobalt's decision to affiliate, and held this position even after confronted with the fact that the various associations signed a joinder and acknowledgment to the affiliation:

> **Q:** Was there a business reason, to your knowledge, to have the acknowledgment of and joinder to affiliation agreement signed by the associations?

7

> **A:** *A business reason? You know, I think it was good to know that the boards were on board — the boards were on board with us moving forward with the affiliation. We certainly knew it was ultimately Cobalt's decision to do. But having the boards, you know, acknowledge in writing that they were supportive of moving forward, we thought, was good practice.*

*Id*. (Sobeck depo. at 67:15-25 (emphasis added); *see also* 46:17-47:25). While this was misleading testimony, Sobeck did hint to the true mechanics of the affiliation:

> **Q:** Cobalt Travel. Were you aware of any contracts between Cobalt — or contractual relationships that have been documented between Cobalt Travel and Lion & Crown?
> **A:** *Yeah. I think there's an affiliation agreement between the two. Cobalt Travel affiliates with each of the associations, and then Cobalt Travel affiliates with Lion & Crown, **and then Lion & Crown affiliates with others, I believe.***
> **Q:** Do you consider Lion & Crown to have somehow stepped into the shoes of Cobalt as a program manager?
> **A:** *Do I think they stepped —* …
> **Q:** You believe that there is some type of affiliation agreement?
> **A:** *Yes. My non-legal opinion or understanding is yes.*

*Id*. (Sobeck depo. at 230:4-231:9) (objection deleted, emphasis added). Upon hearing this testimony, Plaintiffs' counsel requested this affiliation agreement and Mr. Marx agreed to produce it, but did not do so (until the further request described below). *Id*. (Sobeck depo. at 231:10-14).

On November 28, 2017, shortly after the Cunningham and Sobeck depositions, the Marriott Defendants represented that they had produced all responsive non-privileged documents (except for some plaintiff-specific ones), misleading Plaintiffs to believe that they had produced all affiliation agreements. Request for Judicial Notice ("RJN") at Ex. 1.

### D. Plaintiffs' Counsel Uncovered the Concealed Affiliation Agreement in 2018

The withheld affiliation agreement only came to light when, during deposition preparation late in the evening on March 12, 2018, Plaintiffs' counsel Michael Reiser noticed that the "Acknowledgement of and Joinder to Affiliation Agreement between the Lion & Crown Travel Co., LLC and Marriott Resorts, Travel Company, Inc." referred to, the "Affiliation Agreement

8

between MRTC and Lion & Crown dated November 14, 2013." Reiser Decl. at ¶ 12. He searched the extensive document productions and could not find it. *Id.* at ¶ 13. Late that night, he emailed Mr. Marx and the Association's counsel asking about the referenced agreement. *Id.* at Ex. F (3/12-13/18 emails). Around noon the next day, Mr. Marx emailed Mr. Reiser the 2013 Affiliation Agreement, proving it was readily available and known to Marriott's counsel.[4] *Id.*

### E. The Concealed Affiliation Agreement Demonstrates that the MVC Affiliation Required Board Approval

The 2013 Affiliation Agreement exposes as false Marriott's claim that the Association had no role in or authority to approve or reject an affiliation with MVC. In truth, the 2013 Affiliation Agreement *requires* that each association board sign an acknowledgment and joinder to it in order for any external affiliation to go into effect. Reiser Decl., Ex. G at p. RCDC067471. It reads: "WHEREAS, MVCD and Lion & Crown desire that . . . (ii) except as otherwise provided in this Agreement, certain members of the L&C Program . . . *whose owners' association has executed an Acknowledgement Agreement* . . . shall have the right to elect to become a participant in the MVCD Program . . ." *Id.* Defendant Cobalt — which the Marriott Defendants insisted was the entity with sole control over such affiliations — was not even a party to the 2013 Affiliation Agreement.[5]

---

[4] Further proof that the Marriott Defendants knew of this agreement and yet proceeded with false arguments can be found in their discovery responses in *Petrick*, where they mentioned it briefly. Reiser Decl., Ex. C at p. 6 (*Petrick* discovery responses). There, unaware of the 2013 Affiliation Agreement, the court dismissed the breach of fiduciary duty claims based on the Marriott Defendants' false argument that the Association had no role or say in the affiliation because the governing document gave Cobalt "sole authority" over any affiliation. RJN at Ex. 2 at p. 7.

[5] *See also id.* at p. 3 (defining a "L&C Destination" as "those resorts available for use through the L&C Program where *the owners' association for the L&C Destination has executed an Acknowledgement Agreement*") (emphasis added); *id.* at p. 6, § 3.4(f) ("MVCD Members will not have access to those resorts available through the L&C Program that are not L&C Destinations (*i.e.*, where an Acknowledgment Agreement was not executed)"); *id.* at p. 8, § 6.9

This Agreement was almost certainly concealed from the Association, misleading the board (who did not have it) into believing they had no say in the affiliation.

### III.    ARGUMENT

#### A.    Plaintiffs Should Be Given a Fair Opportunity to Examine Cunningham, Hayward, Sobeck, and Four Aspen Board Members

Given that Mr. Marx concedes that the 2013 Affiliation Agreement should have been produced in November 2016, Plaintiffs should be permitted to immediately retake the depositions of Cunningham, Hayward, and Sobeck, and the four Aspen board members at Marriott's expense.[6] Reiser Decl. at Ex. I (4/4/18 Marx email). Plaintiffs' questioning would have been radically different had they properly had the 2013 Affiliation Agreement. For example, when Sobeck and Cunningham testified that they considered the January 2014 survey results in deciding whether to affiliate with MVC, Plaintiffs' counsel would have impeached them with the 2013 Affiliation Agreement, which shows Cunningham decided to affiliate *before* the survey. Reiser Decl., Ex. K (Sobeck depo. at 364:1-14) and Ex. J (Cunningham depo. at 260:22-261:3). Plaintiffs' counsel would have cross-examined Mr. Cunningham about language in the 2013 Affiliation Agreement that directly contradicted his testimony that the Association had no role in or power over that decision. Reiser Decl., Ex. J (Cunningham depo. at 76:1-77:3) and Ex. K (Sobeck depo. at 46:17-47:25). Plaintiffs' counsel would also have had Association board members confirm that the Marriott Defendants asked them to sign the joinder in the affiliation without showing them the 2013 Affiliation Agreement giving them the right to reject affiliation. This is almost certainly the

---

(MVCD Members not entitled to use and benefit of any L&C Destination "without an Acknowledgment Agreement in place").

[6] Mr. Marx offered to allow Plaintiffs to retake the depositions of Cunningham and Sobeck, but has not offered to pay associated costs and attorneys' fees. Reiser Decl. at ¶ 35.

case, since directors in San Francisco recently testified that they did not receive the 2013 Affiliation Agreement either. Reiser Decl. at Ex. L (Guikema depo. at 68:1-69:19, 70:4-13), Ex. M (Campbell depo. at 51:24-52:11), Ex. N (Baron depo. at 39:5-9), Ex. O (Bradford depo. at 86:14-18), and Ex. P (Whelihan depo. at 71:22-72:3).

## B. The Serious Sanction of a Default Judgment Is Warranted Given the Nature and Extent of the Wrongdoing

Given the severity of the misconduct, the fact that it involves multiple false filings spanning three different cases, GT's conflicting explanations, and the evidence that Marriott/GT's suppression of the 2013 Affiliation Agreement here was part of a larger pattern of also withholding it from board members in San Francisco, Tahoe, and Aspen, Plaintiffs move the Court to invoke its inherent authority to sanction abuse of the judicial process to enter a default judgment against RC Management on the first cause of action and against RC Management, Lion & Crown and MVW on the third cause of action for aiding and abetting a breach of fiduciary duty and/or constructive fraud by the Association. *See Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992). By withholding the 2013 Affiliation Agreement, the Marriott Defendants deprived Plaintiffs of the opportunity to develop certain facts supporting liability, *e.g.*, that the Aspen board breached their fiduciary duties by not even asking for or reading the Affiliation Agreement that gave them power to not join and thereby prohibit the MVC affiliation.

While it would be unjust to impose default judgment against the Association, it is fitting to impose liability on RC Management on the first cause of action because as a fiduciary to the Association and its members, RC Management was obligated to provide the underlying 2013 Affiliation Agreement when it provided the joinder that the Association signed. And liability for aiding and abetting a breach of fiduciary duty and/or constructive fraud by the Association is what

11

the Marriott Defendants sought to avoid by hiding the 2013 Affiliation Agreement. Thus, a default judgment against RC Management, Lion & Crown (a party to the concealed agreement) and MVW (the parent company who orchestrated the scheme) on the third cause of action is also an appropriate sanction.

This sanction is warranted "not merely to penalize [the Marriott Defendants and GT], but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976).

### C. The Court Has Inherent Power to Enter the Requested Default Judgments

This Court can and should impose the sanction of a default judgment against these Marriott Defendants on the breach of fiduciary duty and aiding and abetting claims pursuant to its inherent power to impose sanctions for bad faith conduct. *Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1255 (10th Cir. 2015) (internal citation omitted); *Klein v. Harper*, 777 F.3d 1144, 1147 (10th Cir. 2015) (internal citation and quotations omitted); *LaFleur v. Teen Help*, 342 F.3d 1145, 1149 (10th Cir. 2003).

The Court may issue sanctions under its inherent powers whether or not sanctions are permitted under applicable Federal Rules of Civil Procedure. *Auto-Owners Ins. Co. v. Summit Park Townhome Assoc.*, 886 F.3d 852, 857 (2018) (court is not required to consider the Federal Rules of Civil Procedure before applying its inherent powers); *Courtesy Inns, Ltd., Inc. v. Bank of Santa Fe*, 40 F.3d 1084, 1089 (10th Cir. 1994) (the Supreme Court has rejected arguments that "the various sanctioning provisions of the federal rule reflect legislative intent to displace the court's inherent powers") (citation omitted).

A default judgment may be issued where, as here, a party and/or their counsel have willfully engaged in a bad faith or willful abuse of the judicial process. *Klein*, 777 F.3d at 1147–48. "Without a 'smoking gun'… a district court makes a determination of bad faith by drawing inferences from the conduct before it." *Byrne v. Nezhat*, 261 F.3d 1075, 1125 (11th Cir. 2001). Willfulness may be shown by evidence of an intentional failure; no wrongful intent need be shown. *Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1159 (10th Cir. 2013) (collecting 10th Cir. cases so holding); *Phillips v. Ins. Co. of N. Am.*, 633 F.2d 1165, 1167 (5th Cir. 1981) (dismissal of action for discovery abuse affirmed where party's "recalcitrance was not based on factors beyond [party's] control and must be characterized as flagrant disregard. . ."); *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993) (dismissal of action for failing to produce relevant documents and other discovery abuses affirmed and court noted that "disobedient conduct not shown to be outside the control of the litigant is all that is required to demonstrate willfulness, bad faith, or fault"); *Vir2us, Inc. v. Invincea, Inc.*, 235 F.Supp.3d 766 (2017) (sanctions are appropriate even where defendant's and its counsel's conduct falls short of bad faith).[7]

Concealing documents can warrant terminating sanctions. *Auto-Owners Ins. Co.*, 886 F.3d at 859 (noting in the course of affirming terminating sanctions that the district court found bad faith based on the withholding of a document); *Fleur*, 342 F.3d at 1150-52 (upholding dismissal when the plaintiff failed to produce discovery documents by deadline in discovery order); *Wade*, 500 F.3d at 565 (terminating sanctions upheld where counsel withheld key documents).

---

[7] Whether clear and convincing evidence of the willful or bad faith conduct is required is an unsettled question. *Cf. Wade v. Soo Line R.R. Corp.*, 500 F.3d 559, 564 (7th Cir. 2007) and *In re Moore*, 739 F.3d 724, 729 & n. 7 (5th Cir. 2014) (requiring clear and convincing evidence, but also noting that evidence of a party's "callous disregard of its responsibilities" suffices as well).

13

### D.     The *Ehrenhaus* Factors Support Entry of a Default Judgment

The Tenth Circuit has held that courts should consider the following factors when evaluating terminating sanctions, which in this case would be in the form of a default judgment:

> (1) the degree of actual prejudice to the [opposing party]; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.

*Ehrenhaus*, 965 F.2d at 921 (citation omitted); *see also Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1143 (10th Cir. 2007) (same factors applicable to inherent authority as under the federal rules). "These factors do not constitute a rigid test; rather, they represent criteria for the district court to consider prior to imposing dismissal as a sanction." *Ehrenhaus*, 965 F.2d at 921. Not all of these factors must be present with equal weight. *Auto-Owners Ins. Co.*, 886 F.3d at 861. Rather, "dismissal is warranted when 'the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits.'" *Ecclesiastes 9:10-11-12*, 497 F.3d at 1144. A decision to issue terminating sanctions is reviewed for abuse of discretion. *Auto-Owners Ins. Co.*, 886 F.3d at 857-58.

#### 1.     **Plaintiffs Have Suffered Severe Prejudice**

The first *Ehrenhaus* factor to consider is the acute prejudice to Plaintiffs. *Ehrenhaus*, 965 F.2d at 921. Plaintiffs spent tens of thousands of dollars in hard costs and hundreds of thousands of dollars in attorney time preparing for and conducting many depositions, all while not knowing that under the 2013 Affiliation Agreement, the Association had the power to not join the MVC affiliation. In addition, much earlier in the action, Plaintiffs would have sought leave to amend their claims against the Association, and the coextensive aiding and abetting claims against the Marriott Defendants, to more explicitly allege negligence and breach of the directors' duty to

14

exercise reasonable care based on the directors having signed the Joinder without reading the underlying agreement. *See John Doe (1) v. Archdiocese of Denver*, 413 F.Supp.2d 1187, 1191 (D. Colo. 2006); *McShane v. Stirling Ranch Prop. Owners Ass'n, Inc.*, 393 P.3d 978, 983 (Colo.). While Plaintiffs believe these claims are subsumed in their first and third causes of action, the Association disagrees. Reiser Decl. at ¶ 36. Forcing Plaintiffs to seek leave to amend at this late stage in the proceedings is burdensome and risks delaying trial.

### 2. The Marriott Defendants Have Willfully Abused the Judicial Process in Three Different Cases Over More Than Two Years

The second factor, "the amount of interference with the judicial process," also warrants entering judgment against the Marriott Defendants. *Ehrenhaus*, 965 F.2d at 921. In addition to withholding discovery, the Marriott Defendants filed motions to dismiss here and in *Petrick* and *Reiser* based on the false premise that the associations had no role in the MVC affiliations. In each motion to dismiss, Marriott asserted that the Affiliation Agreement attached to the purchase contract gave Cobalt alone the exclusive authority "to affiliate other locations" and "create a separate membership program." Marriott and GT emphasized this limitation on the associations' power: "Neither the Developer, Members Association, nor Club Manager shall be entitled to participate in or consent to the Program Manager's decision in this regard." Dkt. No. 131 at 7 (citing the Affiliation Agreement attached to the purchase contract at §§ 7.2.a, 7.2.b); RJN at Ex. 2 (demurrer in *Petrick* at p. 7) and Ex. 4 (Motion to Dismiss in *Reiser* at p. 4).

Marriott attempted to use their ill-gained order in *Petrick* to convince this Court to do the same. Dkt. No. 191. That their attempted fraud did not succeed in this action is no defense. *See In re Theokary*, 592 F. App'x 102, 107 (3d Cir. 2015) (rejecting a debtor's argument that, despite the discovery fraud, some of his claims should be allowed to proceed because a court need not

15

surgically extract "*only* those portions of the evidence and proceedings actually touched by disease"). *Theokary* holds that dismissal is proper "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Id*. (citing *Nat'l Hockey League,* 427 U.S. at 643).

### 3. The Marriott Defendants' Culpability

The next factor is "the culpability of the litigant." *Ehrenhaus*, 965 F.2d at 921. Here, the Marriott Defendants' and GT's culpability is far more than just withholding a document from litigants and board members. They made arguments to three different courts known by them to be factually incorrect. When Mr. Marx was originally confronted with this issue in March, he did not say the failure to produce the 2013 Affiliation Agreement was a mistake; he took the exact opposite position, stating: "As far as the production of agreements, we produced copies of all agreements that you requested in your document requests and our responses to your document requests identified the agreements that we were intending to produce." Reiser Decl., Ex. H (3/15/18 Marx email). It was only later that Mr. Marx admitted he should have produced the 2013 Affiliation Agreement, but claimed an innocent mistake, writing:

> [I]t appears we were in possession of the 2013 Affiliation Agreement before the time we made our initial production on November 10, 2016 but did not realize it was not produced in our production that day or thereafter. In retrospect, we agree we should have realized that; but, that was an oversight and not an effort to hide the document.

Reiser Decl., Ex. I (4/4/18 Marx email). This claim of inadvertence rings hollow in light of the earlier statement, how quickly it was located and produced, and the fact that GT and Marriott have made arguments throughout the case that rely on the non-existence of the agreement. Indeed, the failure to produce the document appears to be part of a larger pattern. Plaintiffs very recently deposed board members in *Petrick.* As indicated, they testified that RC Management never

provided them with the 2013 Affiliation Agreement, so they did not know they could have stopped the affiliation. The Aspen board remains to be examined on this issue.[8]

### 4. Lesser Sanctions Cannot Remedy the Prejudice, and Would Be Insufficient Given the Marriott Defendants' Culpability

Given this record of misconduct over more than two years and three cases, anything less than a default judgment would be insufficient to cure, deter, or punish. *See Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944). This is especially true given the many other cases in which Marriott entities and/or GT have been sanctioned for discovery violations. *See, e.g.*, *Coquina Investments v. Rothstein, 2012 WL 3202273*, *9 (S.D. Fla. Aug. 3, 2012), *aff'd sub nom. Coquina Investments v. TD Bank, N.A.*, 760 F.3d 1300 (11th Cir. 2014); *Celmer v. Marriott Corp.*, 2004 WL 2009443, *2 (E.D. Pa. Aug. 20, 2004); *Celano v. Marriott Int'l, Inc.*, 2007 WL 2070220, at *3 (N.D. Cal. July 13, 2007); *Degersdorff v. Ritz-Carlton Hotel Co., LLC*, 2012 WL 6084776, *2 (E.D. La. Dec. 6, 2012); *Riley v. Marriott Int'l, Inc.*, 2014 WL 4794657, *4 (W.D.N.Y. Sept. 25, 2014); *Mahaffey v. Marriott Int'l, Inc.*, 898 F. Supp. 2d 54, 63 (D.D.C. 2012).[9]

Sanctions are also available under the federal discovery rules. In October 2016, Mr. Marx signed the Marriott Defendants' responses to Plaintiffs' first set of requests for production, and thereby certified the correctness and completeness of the responses promising to produce "documents concerning the affiliation." Thus, sanctions may be imposed under Rule 26(g)(3), which provides in pertinent part: "If a certification violates this rule without substantial

---

[8] The fourth *Ehrenhaus* factor is inapplicable here because the Court did not have advance warning of the misconduct. *Auto-Owners Ins. Co.*, 886 F.3d at 861. That is exactly what makes the misconduct so pernicious; the Marriott Defendants nearly got away with hiding a document that guts their primary defense to the breach of fiduciary duty claims.

[9] A separate motion to compel and for sanctions against the Marriott Defendants for their failure to obey Judge Gallagher's February 20, 2018 order is currently pending. Dkt. No. 202.

17

justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Fed.R.Civ.P. 26(g)(3).

Finally, the Marriott Defendants cannot escape this sanction by pointing a finger at its lawyers. "Clients are routinely subjected to 'inherent power' sanctions for their lawyers' misconduct, particularly where the conduct was designed to benefit the client." *Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 198 F. Supp. 3d 1239, 1245 (D. Colo. 2016).

## IV.   CONCLUSION

Plaintiffs respectfully submit that the sanctions requested in the proposed order should be imposed to remedy some of the harm caused by the Marriott Defendants and GT, and to deter such behavior in the future.

Dated: April 27, 2018

REISER LAW, P.C.

____/s/ Michael J. Reiser_____
Michael J. Reiser, # 16161
1475 N. Broadway, Suite 300
Walnut Creek, CA 94596
Telephone: (925) 256-0400
E-mail: michael@reiserlaw.com
*Attorney for Plaintiffs*

THE MATTHEW C. FERGUSON LAW FIRM, P.C.

_____/s/ Matthew C. Ferguson_____
Matthew C. Ferguson, #25687
119 South Spring, Suite 201
Aspen, Colorado 81611
Telephone: (970) 925-6288
Facsimile: (970) 925-2273
E-mail: matt@matthewfergusonlaw.com
*Attorney for Plaintiffs*

GIBBS LAW GROUP, LLP

___/s/ Michael Schrag_____
Michael Schrag (CA State Bar # 185832)
Linda Lam (CA State Bar# 301461)
505 14th Street, Suite 1110
Oakland, CA 94612
Phone: (510) 350-9718
Facsimile: (510) 350-9701
E-mail: mls@classlawgroup.com
E-mail: lpl@classlawgroup.com

THE MEADE LAW FIRM, P.C.

____/s/ Tyler Meade_____
Tyler Meade (CA State Bar # 160838)
1816 Fifth Street
Berkeley, CA 94710
Telephone: 510-843-3670
E-mail: tyler@meadefirm.com
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 27th day of April, 2018, a true and accurate copy of the foregoing **PLAINTIFFS' MOTION FOR SANCTIONS AND A DEFAULT JUDGMENT AGAINST CERTAIN MARRIOTT DEFENDANTS** was served via CM/ECF filing system upon following:

>Daniel F. Shea, Esq.
>Jessica Black Livingston, Esq.
>Hogan Lovells US LLP
>1200 Seventeenth Street, Ste. 1500
>Denver, Colorado 80202
>
>Ian S. Marx, Esq.
>Philip R. eSellinger, Esq.
>Greenberg Traurig, LLP
>500 Campus Drive, Suite 400
>Florham Park, New Jersey 07932

>>_/s/ Linda Lam___
>>Linda Lam