**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-01301-PAB-GPG

**RCHFU, LLC,** *et al.*

Plaintiffs,

v.

**MARRIOTT VACATIONS WORLDWIDE CORPORATION,** *et al.*

Defendants.

---

**DECLARATION OF MICHAEL J. REISER IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS AND A DEFAULT JUDGMENT AGAINST CERTAIN MARRIOTT DEFENDANTS**

---

I, Michael J. Reiser**,** declare and state:

1. I am an attorney and the shareholder of Reiser Law P.C., co-counsel for Plaintiffs in the above-captioned action. I am a competent witness and can testify as to the facts set forth herein. I am a member of the Colorado bar and of this Court.

2. I respectfully submit this declaration in support of Plaintiffs' Motion for Sanctions and a Default Judgment Against Certain Marriott Defendants ("Motion for Sanctions").

**A. Plaintiffs' Discovery Requests and Defendants' Responses**

3. On August 5, 2016, Marriott Vacations Worldwide Corporation ("MVW"), Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC, Cobalt Travel Company, LLC, Inc. ("Cobalt"), and Lion & Crown Travel Co., LLC (collectively, the "Marriott

1

Defendants" or "Marriott") made their Fed.R.Civ.P. 26 initial disclosures to Plaintiffs. In those initial disclosures, the Marriott Defendants described two categories of documents they intended to rely on in their defense. First, the Marriott Defendants indicated that they intended to rely on "Documents relating to the affiliation of the resorts in The Ritz-Carlton Club Membership Program." Second, the Marriott Defendants indicated that they intended to rely on "agreements . . . related to the affiliation of The Ritz-Carlton Destination Club with Marriott Vacation Club Destinations." A true and correct copy of the Marriott Defendants' initial Rule 26(a)(1) Disclosures is attached as **Exhibit A.**

4. On September 8, 2016, Plaintiffs propounded their first set of requests for production to the Marriott Defendants. Among other things, Plaintiffs requested that the Marriott Defendants produce "[a]ll DOCUMENTS. . . CONCERNING the decision to affiliate the Ritz-Aspen with the Marriott Vacation Club Destinations exchange program," as well as "[a]ll DOCUMENTS. . . CONCERNING the affiliation. . . of any other Ritz-Carlton Club with the Marriott Vacation Club Destinations exchange program."

5. On October 11, 2016, the Marriott Defendants served their responses and objections to Plaintiffs' requests for production. A true and correct copy of the Marriott Defendants' Responses and Objections to Plaintiffs' Request for Production to Marriott Defendants (Set One) is attached as **Exhibit B.** Exhibit B also includes the text of the relevant requests quoted in the prior paragraph. After stating various objections, the Marriott Defendants responded to both of the above-mentioned requests as follows:

> Marriott Defendants interpret this Request to seek documents concerning the affiliation of The Ritz-Carlton Club, Aspen Highlands, with Marriott Vacation Club Destinations, and Marriott Defendants will produce for inspection and

copying… all such non-privileged documents in their possession, custody or control.

*See* Ex. B at p. 5. The Marriott Defendants also agreed to produce all non-privileged documents listed in their Rule 26 initial disclosures. *See* Ex. B at p. 8.

6. Similarly, in two related cases, *Petrick, et al. v. Marriott Vacations Worldwide, et al.*, Case No. CGC 15-545987 (Superior Court of California, San Francisco) and *Reiser, et al. v. Marriott Vacations Worldwide, et al.*, Case No. 2:16-cv-00237-MCE-CKD (E.D. Cal.), involving similar claims about the Ritz-Carlton Destination Clubs in San Francisco and Lake Tahoe, the Marriott Defendants made similar representations that they would produce all documents related to the affiliation of those clubs with the Marriott Vacation Club ("MVC"). In fact, in *Petrick*, the Marriott Defendants specifically promised to produce the 2013 Affiliation Agreement in their response to document request No. 8, but never did. A copy of the Marriott Defendants' Responses and Objections to Plaintiffs' Requests for Production of Documents (Set One) is attached as **Exhibit C**. Plaintiffs and the Marriott Defendants agree these two cases are so closely related to the present case that the parties have coordinated discovery across all three cases. *See, e.g.,* Dkt. No. 152 at 4, ¶ 9.

7. On November 10, 2016, the Marriott Defendants disclosed 4,871 pages of records, which were comprised of the governing Association documents (available to all Plaintiffs already), Ritz's communication logs concerning the then Plaintiffs' use of the units, some Association budgets, and some Owner Usage Summaries. As Ian Marx, one of the Marriott Defendants' lead litigation attorneys at Greenberg Traurig, has admitted, the Marriott Defendants had but did not produce the 2013 Affiliation Agreement. *See* ¶ 18 and Ex. I below.

8. The Marriott Defendants did not produce any other documents for approximately eight more months — *i.e.,* not until June 2017.

9. On August 4, 2017, the Marriott Defendants stated, "We believe that with this production of documents, the Marriott Defendants' production of documents in these matters is substantially complete . . ." A true and correct copy of this August 4, 2017 letter from Ian Marx to Tyler Meade (my co-counsel) and me is attached as **Exhibit D.**

10. Facts concerning the Marriott Defendants' document production have been detailed in the parties' joint status reports, and in recent motions to compel. *See, e.g.,* Dkt. Nos. 152 at pp. 1–2; 104 at pp. 2-5; and 202. In addition, a true and correct copy of a lengthy meet and confer letter prepared by Mr. Meade is attached as **Exhibit E.** Exhibit E summarizes many of the issues that arose during the course of discovery. After the Marriott Defendants stated that their document production was "substantially complete," Plaintiffs demanded confirmation that all responsive documents had been produced, but Mr. Marx refused to so confirm. *See* Exhibit E at pp. 6-7. Because the close of discovery was fast approaching, Plaintiffs had no choice but to begin taking depositions. Plaintiffs prepared for, travelled to, and took 15 depositions across 10 cities across the country. *See* ¶ 27, below. At the same time, Plaintiffs' counsel defended dozens of their own clients' depositions.

**B. Plaintiffs Were Not Provided With the 2013 Affiliation Agreement Until March 2018**

11. Despite making these disclosures, responses, and promises to produce all responsive documents in late 2016 and early 2017, the Marriott Defendants failed to produce the agreement that actually effectuated the affiliation between the Ritz-Aspen and MVC until March 13, 2018. And they only produced it after I demanded it on March 12, 2018.

4

12. During the evening of March 12, 2018, I was reviewing documents in preparation for upcoming depositions. I noticed that a document signed by the Defendant Association — the "Acknowledgement of and Joinder to Affiliation Agreement between the Lion & Crown Travel Co., LLC and Marriott Resorts, Travel Company, Inc." — referenced an additional document, entitled "Affiliation Agreement between MRTC and Lion & Crown dated November 14, 2013," (the "2013 Affiliation Agreement").

13. At my direction, my office searched all productions by the Marriott Defendants as well as the Association. We determined that the 2013 Affiliation Agreement had not been produced by any party. Thus, on March 12, 2018 at 10:17 p.m. EST, I emailed Mr. Marx and Jessica Livingston Black, counsel for the Association. I wrote:

> I cannot locate in either of your clients' production of documents a copy of the "Affiliation Agreement between MRTC and Lion & Crown dated November 14, 2013".
>
> This agreement is referenced in the "Acknowledgment of and Joinder to Affiliation Agreement between the Lion & Crown Travel Co., LLC and Marriott Resorts, Travel Company, Inc.", signed by the Aspen Highlands Condominium Association, Inc. on April 24, 2014. (Ian, it is also referenced in the Acknowledgement and Joinder agreements signed by the Tahoe and SF boards.)
>
> Please produce this document, (i.e., the Affiliation Agreement between MRTC and Lion & Crown dated November 14, 2013), as well as any document related to the drafting or negotiation of this document, immediately.

A true and correct copy of my March 12, 2018, email to Mr. Marx and Ms. Livingston is attached as **Exhibit F.**

14. The next morning, before noon on March 13th, Mr. Marx emailed me and attached a copy of the previously unproduced 2013 Affiliation Agreement. A true and correct copy of this email is included in **Exhibit F**.

5

15. A true and correct copy of the "November 2013 Affiliation Agreement between Lion & Crown and the MVC," is attached as **Exhibit G.** It was Bates-labeled RCDC067469-67520, meaning that Marriott had produced over 67,000 documents while withholding and concealing this key document in a case that was originally filed in 2015.

16. The November 2013 Affiliation Agreement between Lion & Crown and MVC is the contractual vehicle through which the Ritz-Carlton Destination Club was affiliated with the MVC. Importantly, the agreement was executed by MVC and Lion & Crown — the companies that run exchange services for Marriott and Ritz-Carlton, respectively — with an additional requirement that each Ritz-Carlton Destination Club Association board sign an Acknowledgement and Joinder to the agreement before any affiliation could take place. *See* Ex. G at Exhibit B (RCDC067516).

17. In an email sent on March 15, 2018, Mr. Marx explained his failure to produce the 2013 Affiliation Agreement as follows: "As far as the production of agreements, we produced copies of all agreements that you requested in your document requests and our responses to your document requests identified the agreements that we were intending to produce. We did not intentionally withhold any agreements from you and have always endeavored to provide you with copies of relevant documents, even if they were not the subject of formal discovery requests, when you have asked for them, as we have done here." A true and correct copy of this email is attached as **Exhibit H.**

18. A few weeks later, however, as the parties were meeting and conferring about the present motion, Mr. Marx provided a very different explanation for his firm's and the Marriott Defendants' failure to produce the 2013 Affiliation Agreement. Rather than implying that it had

6

never been requested, as the March 15, 2018 email clearly suggests, Mr. Marx's April 4, 2018 email claimed that he and the Marriott Defendants inadvertently failed to produce the 2013 Affiliation Agreement: "On review, it appears we were in possession of the 2013 Affiliation Agreement before we made our initial production on November 10, 2016 but did not realize it was not produced in our production that day or thereafter. In retrospect, we agree we should have realized that; but, that was an oversight and not an effort to hide the document. When we realized that the 2013 Affiliation Agreement had not been produced, we produced it." A true and correct copy of this email is attached as **Exhibit I.**

19. The Marriott Defendants' concealment of the 2013 Affiliation Agreement worked to their benefit in *Petrick*. The *Petrick* complaint alleges that the Association breached its fiduciary duties by allowing the MVC affiliation. In their demurrer, the Marriott Defendants sought dismissal of the breach of fiduciary duty claims based on the now demonstrably false assertion that Cobalt alone had the exclusive authority to affiliate, and that the Marriott Defendants could not be found derivatively liable for the association board's role in the MVC affiliation because the association had no role in that decision. Marriott argued that:

> [T]he Affiliation Agreement makes clear that all important discretionary decisions (including affiliating with new membership programs, *e.g.,* MVC) are made <u>solely</u> by the 'Program Manager, *i.e.*, by Cobalt. . . . [T]he governing documents expressly provide that the RCC SF Association has <u>no</u> authority to participate in, approve of, or object to, Cobalt's decision.

Request for Judicial Notice ("RJN") at Ex. 2 at p. 7 (emphasis in original); *see also id.* at p. 11 (arguing that the plaintiffs "cannot plausibly allege a fiduciary duty by Cobalt based on an agency theory because "the governing documents gave the RCC SF Association <u>no</u> right to control Cobalt's actions") (emphasis in original).

7

20. The *Petrick* court — unaware of the withheld 2013 Affiliation Agreement — dismissed the breach of fiduciary duty claims on this exact basis, stating that the plaintiffs' breach of fiduciary duty claim against the Marriott Defendants failed because the board had no decision-making authority over the affiliation with Marriott, and that it was a matter solely within Cobalt's discretion. RJN at Ex. 3 (2/8/18 Order in *Petrick* at p. 3). The Court based its decision almost exclusively on the governing documents. *Id.* ("As to Cobalt, the governing documents provide that RCC SF does not possess authority to approve, object to or participate in decisions made by Cobalt").

21. The Marriott Defendants did not raise or mention the 2013 Affiliation Agreement when they moved to dismiss the breach of fiduciary duty claims in *Reiser*, which are almost identical to those in *Petrick*. Instead, they made the same arguments raised in *Petrick*: "Cobalt had no fiduciary duty to Plaintiffs when it made decisions that it was granted <u>sole discretion</u> to make under the Affiliation Agreement, *including the decision to affiliate with MVC*." RJN at Ex. 4 at p. 9 (emphasis added); *see also id.* at p. 11 (arguing the Marriott Defendants could not be derivatively liable for board participation in the MVC affiliation because "the Club Owners' Association had no responsibility or authority over" the affiliation). Yet the *Reiser* court, like this Court, rejected that argument, finding that the Marriott Defendants' control over the plaintiffs' separately deeded property interests was sufficient to support the breach of fiduciary duty allegations. *Reiser v. Marriott Vacations Worldwide Corp.*, 2017 WL 569677, *4 (E.D. Cal. Feb. 13, 2017).

22. Because the 2013 Affiliation Agreement between Lion & Crown and MVC had been concealed, Plaintiffs could not inquire about it during any depositions in any of these three cases.

23. For the most part, Marriott executives testified consistently with the concealment of the 2013 Affiliation Agreements during their depositions. For instance, Lee Cunningham testified consistent with his counsel's coaching:

> **Q:** And your counsel just testified that he thought it was the exclusive discretion of Cobalt, the decision on whether to affiliate. True?
>
> **A:** That is correct.
>
> **Q:** And that's your position?
>
> **A:** Yes.

Deposition of Lee Cunningham ("Cunningham depo.") at 251:6-11. A true and correct copy of the pertinent pages of Mr. Cunningham's deposition is attached as **Exhibit J**.

24. But then Mr. Cunningham veered from that script by saying that Lion and Crown, rather than Cobalt, made the decision to affiliate. Never having seen the concealed agreement at that point, Plaintiffs could not make sense of the testimony:

> **Q:** Cobalt is the program manager that has the decision as to who to affiliate with in this agreement?
>
> **A:** I'm sorry, but the — I believe the addition of Lion & Crown in 2010 — I don't know the exact reasoning, but my understanding was that Lion & Crown is the entity that affiliates with non-RCDC projects or clubs. [¶] So that's why it was done with Lion & Crown. That's why we did the acknowledgment with Lion & Crown and the association.
>
> **Q:** So you're not saying that Cobalt made the decision to affiliate. You're saying that it was Lion & Crown that made the decision to affiliate?
>
> MR. SELLINGER: Objection to form.

9

BY MR. REISER:

**Q:** That's true?

**A:** I'm saying it was Lion & Crown that made that decision.

Cunningham depo. at 384:1-19.

25.     Later, Mr. Cunningham switched paths again, testifying:

**Q:** Cobalt, as the program manager, you would agree, under your affiliation agreement, had the sole discretion to affiliate clubs with the Ritz. True?

**A:** Cobalt is — the program manager under Cobalt is — has the affiliation — or has the sole discretion for affiliation between Cobalt and each of the clubs or entities. I believe –

**Q:** So what is your explanation for why you believe The Lion & Crown Travel Company has the authority to affiliate other clubs with The Ritz-Carlton Destination Club?

**A**: That was the advice from counsel that that was the appropriate entity to affiliate with, so I'd have to go back and refresh myself on those documents

Cunningham depo. at 389:1-11.

26. Immediately after this testimony, Mr. Sellinger (another lead attorney on this case from Greenberg Traurig), Mr. Marx, Douglas Kelly (Marriott's in-house counsel), and Mr. Cunningham took an 18-minute break in which Mr. Cunningham's memory was "refreshed" by counsel. *Id*. (Cunningham depo. at 392:17-393:7). After this break, Mr. Cunningham's testimony changed yet again:

**Q:** So do you want to change your testimony at all as to whether Cobalt is the sole — has the sole authority to affiliate other clubs with the Ritz-Carlton Destination Club?

MR. SELLINGER: Objection to form.

10

**A:** Cobalt — Cobalt can affiliate with other clubs. <u>*They have — refreshed my memory —*</u> they have affiliated with Lion & Crown, and have, in this case, through Lion & Crown, sought the affiliation of the other clubs.

BY MR. REISER:

**Q:** So it's your testimony then that Cobalt, having sole authority to affiliate, somehow delegated that authority to affiliate to Lion & Crown, of which you were the vice president?

**A:** They directed —

MR. SELLINGER: Objection to form.

BY MR. REISER:

**Q:** Is that your testimony?

**A:** They directed Lion & Crown to affiliate with the other clubs.

**Q:** Who made the decision to affiliate?

**A:** The — Cobalt did.

**Q:** So you're changing your testimony from right before this break. True?

MR. SELLINGER: Objection to form.

**A:** Cobalt directed Lion & Crown to the affiliation. The decision was made by Cobalt.

Cunningham depo. at 394:21-395-:23.

### C. Depositions Taken Without the 2013 Affiliation Agreement

27. The following depositions of the Marriott Defendants' and the Association's witnesses were conducted without the benefit of the critical 2013 Affiliation Agreement:

| | | |
|---|---|---|
| Jay Neveloff [1] | October 4, 2017 | New York, New York |
| Gerald Marsden [2] | October 5, 2017 | New York, New York |

---

[1] Former Association board member and president.

| | | |
|---|---|---|
| Philip Schneider[3] | October 18, 2017 | Scottsdale, Arizona |
| Randal Mercer[4] | October 24, 2017 | Fort Myers, Florida |
| Lee Cunningham[5] | November 10 & 15, 2017 | Orlando, Florida |
| Lori Phillips[6] | November 13, 2017 | Orlando, Florida |
| Richard Hayward[7] | November 14, 2017 | Orlando, Florida |
| Stephanie Sobeck[8] | November 16, 2017 | Orlando, Florida |
| Philip Gosch[9] | December 1, 2017 | Denver, Colorado |
| Michael Marino[10] | December 6, 2017 | New York, New York |
| Mary Lynn Clark[11] | December 6, 2017 | Florham Park, New Jersey |
| Michael Mullenix[12] | December 12, 2017 | St. Louis, Missouri |
| Tyler Oliver[13] | January 12, 2018 | Kansas City, Missouri |
| Evelyn Babich[14] | March 7, 2018 | Salt Lake City, Utah |

28. Attached hereto as **Exhibit K** is a true and correct copy of pertinent pages from the deposition of Stephanie Sobeck.

29. Attached hereto as **Exhibit L** is a true and correct copy of pertinent pages from the deposition of Nathan Guikema.

30. Attached hereto as **Exhibit M** is a true and correct copy of pertinent pages from the deposition of Gregory Campbell.

31. Attached hereto as **Exhibit N** is a true and correct copy of pertinent pages from the deposition of Charles Baron.

---

[2] Former Association board member and treasurer.
[3] Former Association board member.
[4] Current Association board member and president.
[5] MVW's chief operating officer.
[6] MVW's senior vice president of asset management.
[7] Representative of RC Management at Association board meetings.
[8] MVW's former vice president.
[9] Outside counsel to the Association (of Brownstein Hyatt Farber Schreck, LLP).
[10] Counsel asked by the Association to work on Affiliation documents.
[11] MVW's senior vice president of product development.
[12] Past president of the Association at the Ritz-Carlton Club at Bachelor Gulch.
[13] Current Association board member.
[14] General manager of Cobalt Travel Company.

32. Attached hereto as **Exhibit O** is a true and correct copy of pertinent pages from the deposition of Brad Bradford.

33. Attached hereto as **Exhibit P** is a true and correct copy of pertinent pages from the deposition of Bill Whelihan.

34. Attached hereto as **Exhibit Q** is a true and correct copy of a letter from Porterfield & Associates, LLC to the Association, dated February 16, 2017.

35. During the meet and confer preceding this motion, the Marriott Defendants offered to allow us to retake the Sobeck and Cunningham depositions, but did not offer to pay the costs or allow any other depositions to be taken.

36. During meet and confer discussions about discovery issues my co-counsel Matt Ferguson has had with Association counsel Dan Shea, Mr. Shea has opposed re-opening depositions of Association board members to allow Plaintiffs to inquire about the 2013 Affiliation Agreement on the grounds that Plaintiffs have not alleged a breach of the duty of care claim against the Association. While Plaintiffs disagree and believe this claim is subsumed within their broad breach of fiduciary duty cause of action, Plaintiffs could have made this more explicit had Marriott produced the 2013 Affiliation Agreement before Plaintiffs deposed the four Association board members.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 27, 2018 in Walnut Creek, CA.

*/s/ Michael J. Reiser*
Michael J. Reiser