# EXHIBIT E

**The Meade Firm** p.c.

1816 Fifth Street
Berkeley, CA 94710

111 Broadway, Suite 2002
New York, NY 10006

510.843.3670
www.meadefirm.com

December 12, 2017

Via Email:

Ian S. Marx, Esq.
  *MarxI@gtlaw.com*
Philip R. Sellinger, Esq.
  *SellingerP@gtlaw.com*
Greenberg Traurig, LLP
500 Campus Drive, Suite 400
Florham Park, NJ  07932

Re:   *RCHFU, et al. v. Marriott, et al.* (D. Colo. Case No. 16-cv-01301-PAB-GPG)
       *Petrick, et al. v. Marriott, et al.* (San Francisco Sup. Case No. CGC 15-545987)
       *Reiser, et al. v. Marriott, et al.* (Case No. 2:16-CV-00237-MCE-CKD)

Dear Ian and Philip:

   Pursuant to Federal Rule of Civil Procedure 37(a)(3)(B) in the case of *RCFU* and *Reiser*,[1] and Code of Civil Procedure §§ 2016.040, 2031.310(b)(2) in the case of *Petrick*, I write to seek a concluding meet-and-confer regarding the Marriott Defendants' responses to Plaintiffs' discovery requests.

   Please let us know when you are available for a final telephonic meet and confer conference on the following issues required by Judge Gallagher's Discovery Dispute Procedures, which have remained unresolved for months:

- First, the Marriott Defendants have failed to provide any response to Plaintiffs' third set of document requests, served on September 21, 2017. This despite a one-week extension granted by Plaintiffs and open discussion of the failure during the Cunningham deposition on November 15, 2017. Three more weeks have passed without the Marriott Defendants providing any explanation whatsoever for their failure to respond. Accordingly, Plaintiffs demand that the Marriott Defendants immediately produce all responsive documents — including those protected by the attorney-client privilege, work product immunity, and any other applicable privilege.

- Second, the Marriott Defendants still have not provided a privilege log, despite multiple requests dating back to last summer.

---

[1] In *RCHFU*, we also write pursuant to Local Rules 37.1 and 7.1, as well as Judge Gallagher's Discovery Dispute Procedures.

Letter to Ian Marx, Esq., and Peter Sellinger, Esq.
December 12, 2017
Page 2

- Third, the Marriott Defendants have refused to produce any documents concerning the profits and revenues they earned from selling Marriott Vacation Club (MVC) memberships. Such documents are necessary for calculating the damages Plaintiffs seek on the core claim in this case — breach of fiduciary duty.

- Fourth, you have yet to confirm that all responsive documents have been produced, despite multiple requests.

- Fifth, it appears that the Marriott Defendants have improperly narrowed the scope of their production in several respects.

- Finally, the Marriott Defendants have not produced certain plainly responsive documents within their possession, custody, and control. Indeed, Plaintiffs have identified specific responsive documents that clearly exist, but have not been produced.

While Plaintiffs' appreciate the amicable tone amongst counsel in this litigation and will continue to maintain that tone, we object in the strongest possible terms to the inexcusable failures detailed herein, especially when considered in the aggregate.

**A.   The Marriott Defendants Must Immediately Produce All Documents – Including those Protected by Privilege – Requested in Plaintiffs' Third Set of Document Requests**

Plaintiffs served their third set of document requests on September 21, 2017. On October 18, the Marriott Defendants requested and Plaintiffs granted a one-week extension. But the Marriott Defendants never responded. Plaintiffs' counsel raised the issue during the Cunningham deposition on November 15, 2017, explicitly reminding the both of you that the discovery requests remained unanswered. Plaintiffs further asked Mr. Cunningham about the undelivered responses:

> Q. Let me show you what's been marked as Exhibit 1608. Sir, this is plaintiffs' third set of requests for production to Marriott defendants, and it was served in this case — it looks like we served it back in — the discovery cutoff date for written discovery, September 21st, 2017. Have you seen this document, ***because we haven't had any responses to this***?
> A. I have not.
> Q. Do you know of anybody that's compiling documents now at Marriott Vacation Worldwide that's gathering documents for any production request in the Aspen Highlands case?
> A. I'm not aware of anyone doing that.

11/15/17 Cunningham depo. at 281 (emphasis added).

Letter to Ian Marx, Esq., and Peter Sellinger, Esq.
December 12, 2017
Page 3

The only reasonable interpretation of this record is that this was no mere oversight. Indeed, this is just one example of the Marriott Defendants' conscious disregard of their discovery obligations—other examples are detailed below.

The Marriott Defendants must immediately produce all documents requested in Plaintiffs third set of document requests. Nothing can be held on the basis of privilege or work-product immunity because all objections have been waived. "[A] failure to object to requests for production of documents within the time permitted by the federal rules has been held to constitute a waiver of any objection." *Pham v. Hartford Fire Ins. Co.*, 193 F.R.D. 659, 661–62 (D. Colo. 2000) (citing cases and holding that where no good cause for delay is articulated, objections first asserted 71 days after service of discovery requests, including attorney-client privilege, were waived); *see also* RUTTER GROUP PRACTICE GUIDE, FEDERAL CIVIL PROCEDURE BEFORE TRIAL, NATIONAL EDITION § 11:1905 (2017) ("Delay waives all objections: Failing to respond to a Rule 34 request within the time permitted waives all objections thereto—including claims of privilege and work product!").

None of the circumstances that might warrant relief from waiver exist here. *See Chawla v. Lockheed Martin Corp.*, No. 13-cv-0033-PAB, 2013 WL 5729817, at *4–5 (D. Colo. Oct. 18, 2013); *United States for EFCO Corp. v. W. Sur. Co.*, No. 12-cv-02934-WJM, 2013 WL 5659595, at *2–3 (D. Colo. Oct. 17, 2013).

### B. The Marriott Defendants' Failure to Produce a Privilege Log Promised in August Constitutes a Waiver of all Objections

The requirement of a privilege log where, as here, you have withheld documents based on an assertion of privilege or work-product immunity is beyond dispute. FED. R. CIV. P. 26(b)(5)(A) ("When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim"); RUTTER GROUP PRACTICE GUIDE, FEDERAL CIVIL PROCEDURE BEFORE TRIAL, NATIONAL EDITION § 11:1918 (2017).

The Marriott Defendants began producing documents on June 15, 2017, and announced on August 4, 2017 that they "*believe* that … the production … is *substantially* complete." 8/4/17 Marx Ltr. to Meade & Reiser at p. 2 (emphasis added).[2] Curiously, in that same document, the Marriott Defendants added: "We are in the process of preparing a privilege log, which identifies and describes the documents responsive to Plaintiffs' Document Requests that have been withheld on privilege grounds, and will provide you

---

[2] The absence of an unqualified confirmation that all responsive documents have been produced is addressed below.

Letter to Ian Marx, Esq., and Peter Sellinger, Esq.
December 12, 2017
Page 4

with the privilege log as soon as it is completed (which we expect will be by August 14, 2017)."

Four months have passed and Plaintiffs still have not received a privilege log. Plaintiffs have made multiple requests for the log. *See, e.g.,* 9/8/17 Meade Ltr. to Marx at p. 2 ("Also, we have not received a privilege log from you in *RCHFU*, *Reiser*, or *Petrick*. When can we expect these[?]").

Your failure to produce a privilege log within a reasonable time — even after the most important depositions have been taken — constitutes a waiver of all claims of privilege and work-product immunity. *See, e.g., Chimney Rock Pub. Power Dist. v. Tri-State Generation & Transmission Ass'n, Inc.*, No. 10-cv-02349-WJM, 2013 WL 1969264, at *6 (D. Colo. May 13, 2013) ("Failure to assert a privilege properly on a privilege log results in a waiver of the claim of privilege"); *Atteberry v. Longmont United Hosp.*, 221 F.R.D. 644, 649 (D. Colo. 2004) (same); *Pham*, 193 F.R.D. at 662 (same).

It is clear that MORI/MVW attorney Barbara Egolf was providing internal input for key matters at issue and was also exchanging emails and draft contracts with at least one lawyer for the Association. We have not seen a production of her records.

Accordingly, the Marriott Defendants must immediately produce all documents withheld on the basis of privilege.

### C. Plaintiffs Are Entitled to Discovery Pertaining to Disgorgement of Profits and Related Restitution Remedies

The Marriott Defendants obstruction of Plaintiffs' right to discovery dates back to the original document requests seeking information about lost profits. Plaintiffs are entitled to discovery on the Marriott Defendants' wrongfully obtained benefits because they allege claims for breach of fiduciary duty, aiding and abetting breaches of fiduciary duty, and conspiracy to violate fiduciary duties. Fifth Amended Complaint ("Complaint") at ¶¶ 88-93, 97-101, 105-108. Additionally, Plaintiffs bring a claim for unjust enrichment against the Marriott Defendants, which received ill-gotten commissions, fees, and profits from the affiliation – all to the detriment of Plaintiffs. *Id.* at ¶¶ 118-120.

Indeed, Plaintiffs' core claim is that the Marriott Defendants (along with the Defendant Association) either directly breached various fiduciary duties, or aided and abetting in such breaches, or conspired to violate fiduciary duties, including by affiliating the Ritz-Carlton Destination Club with the Marriott Vacation Club, a far less exclusive timeshare line. *See* Fifth Amended Complaint ("Complaint"), Dkt. No. 119, at ¶¶ 1, 3, 9. Likewise, Plaintiffs contend that the Marriott Defendants committed these same torts (or aided and abetted these torts) when Lee Cunningham (and the Association Defendant in Aspen) clandestinely reneged on their promises to all Ritz-Carlton Destination Club members that the affiliation would not take place without a majority vote of each of the

Letter to Ian Marx, Esq., and Peter Sellinger, Esq.
December 12, 2017
Page 5

club memberships. *See* 11/10/17 Cunningham depo. at 205 ("We decided not to do the vote and went with the survey").[3]

Disgorgement of "any benefit that the defendant wrongfully obtained," such as profits, and related forms of restitution are recognized remedies for the breach of fiduciary duty torts alleged herein. *Grynberg v. Total S.A.*, 538 F.3d 1336, 1347 (10th Cir. 2008). Those who commit such torts hold all benefits so obtained in a constructive trust and must pay restitution to the harmed parties. *Id.* (citing Restatement (First) of Restitution § 138(1)). This law is reflected in the Colorado Uniform Jury Instruction for breach of fiduciary, which permits the return of "[a]nything of value or any profit the defendant … received as a result of the breach of fiduciary duty." *Id.* (citing Colo. Jury Instrs., Civil ch. 26:5(2)(a), (c) (4th ed. 2007)).

Plaintiffs' very first set of document requests, served on September 8, 2016, demanded documents directly relevant to these restitutionary remedies. Request No. 6 demanded: "DOCUMENTS sufficient to show [the Marriott] Defendants' annual revenues and profits from selling MVC timeshares from 2012 to the present." Request No. 7 demanded: "DOCUMENTS sufficient to show the amount in exchange fees, or fees collected from Ritz-Carlton Membership Program and MVC members, during reservation procedures or administration of the exchange program for the Ritz-Carlton Club Membership Program and Marriott Vacation Club Destinations system, collected by Cobalt Travel Company, LLC and the Lion & Crown Travel Co., LLC during 2012, 2013, 2014, 2015, and 2016." *See* Marriott Defendants' Responses and Objections to Plaintiffs' Requests for Production (Set One) at pp. 6-7. The Marriott Defendants refused to produce any documents in response to these requests, but offered to meet and confer on the issue. *Id.*

In their third set of requests for production, served on September 21, 2017, Plaintiffs Request No. 16 demanded: "documents detailing the history of MVC point sales … including the date of the purchase, the price of the purchase and the number of points purchased." *See* Plaintiffs' Third Set of Requests for Production to Marriott Defendants at p. 6. As discussed, the Marriott Defendants have not responded or even objected to this third set.

We met and conferred on your refusal to provide this information during a telephone conference on September 21, 2017. You promised to lay out your position in a letter. The following day, I memorialized that discussion as follows in an email to you: "Ian, I write to confirm you agreement during yesterday's call to (a) provide …, and (b) a

---

[3] The affiliation allows MVC members to stay at the Ritz-Aspen for a small fraction of what Plaintiffs paid, thereby significantly devaluing Plaintiffs' fractional interests. Complaint at ¶ 10. Yet the affiliation benefitted the Marriott Defendants by making MVC membership more attractive with the ability for MVC members to stay at the Ritz-Aspen; thus increasing sales of MVC memberships. *Id.* at ¶ 65, 119.

Letter to Ian Marx, Esq., and Peter Sellinger, Esq.
December 12, 2017
Page 6

letter explaining your position regarding our discovery requests relating to disgorgement of profits." 9/21/17 Meade email to Marx & Sellinger at p. 1. And I reminded you that this issue had "been outstanding for months." *Id.* A week later, I pressed you again on this issue, stating:

> "***More than a week has passed since I sent the email below, and you have neither responded nor provided the information you agreed to provide. This is yet another example of the disturbing pattern that you have demonstrated throughout this case.*** See, *e.g.*, the attached emails for other examples. We will not tolerate a continuation of this pattern of delay. [¶] Please let us know when you will address all outstanding items."

9/29/17 Meade email to Marx & Sellinger at p. 1 (emphasis added). You completely ignored both of these emails, even after we inserted the following language in the last joint status report filed with the Court on November 21, 2017:

> "***[T]here are unresolved discovery disputes between Plaintiffs and the Marriott Defendants, including with respect to the scope of the aforementioned production, documents requested by Plaintiffs related to damages***, and documents relating to "surveys" on the merger with the Marriott Vacation Club. In addition, Plaintiffs have asked that the Marriott Defendants confirm in writing that their "rolling" production is now complete and that they know of no responsive documents not yet produced, but the Marriott Defendants have failed to provide that confirmation. ***These issues have been the subject of prior letters and telephonic conferences. Plaintiffs are preparing one final meet and confer letter as a prelude to a telephonic meet and confer required by local rules and the other procedures required by this Court's "Discovery Dispute Procedures.***"

Dkt. No. 152 at p. 3 (emphasis added).

### D. Plaintiffs Are Entitled to Confirmation that the Marriott Defendants Have Completed Their Production

Early on in the lengthy meet and confer regarding a consolidated document production for all three Ritz cases, Plaintiffs made clear that: "[W]e do not agree to a 'rolling production.' Your obligation is to produce documents in a timely fashion. If that review takes more than the allotted time, we would be happy to discuss an extension." 12/20/2016 Meade Ltr. to Marx & Sellinger at p. 2. After the Marriott Defendants made an equivocal statement about the completeness of their production on August 4, 2017, Plaintiffs have repeatedly demanded confirmation that all responsive documents had been produced, including in emails dated September 6, 8, 21, and 29, 2017.

Letter to Ian Marx, Esq., and Peter Sellinger, Esq.
December 12, 2017
Page 7

Such certification is required by applicable law; yet you did not respond to any of the above requests. *Seabron v. Am. Family Mut. Ins. Co.*, No. 11-cv-01096-WJM, 2011 WL 6096497, *2 (D. Colo. Dec. 7, 2011) ("Plaintiffs shall produce all additional responsive documents identified to this date and certify they have done the same . . . ."); *Eleutian Tech., LLC v. Global Educ. Tech, LLC*, No. 07-CV-181-J, 2008 WL 11337544, *4 (D. Wyo. Nov. 18, 2008) ("If plaintiff maintains the position that all responsive documents … have been produced, plaintiff shall certify to that effect pursuant to Rule 26(g)(1), keeping in mind the ramifications of a violation of this Rule.").

You recently made an oral representation regarding the completeness of your production. We memorialized it as follows in the joint motion to continue the discovery deadline in the Tahoe case: "Defendants have reported that, to the best of their knowledge, they have produced all responsive documents that are not privileged, with the exception of some plaintiff-specific documents that will be produced shortly." Dkt. No. 67 at p. 3. But this is no longer sufficient, as Defendants must produce further documents, including privileged and work-product immunity documents, for the reasons stated in this letter.

### E. The Marriott Defendants Have Improperly Limited Their Production

The Marriott Defendants indicated in a letter accompanying each document production that the production was subject to the Marriott Defendants' responses and objections to Plaintiffs' discovery requests — of which several were made on purported relevancy grounds. Thus, while the Marriott Defendants have produced documents, they have not specified whether all responsive documents are being produced (and if not, what portion of the universe of responsive documents is being produced). "Once a party has decided to produce documents, it has the duty – at a minimum – to identify what it is producing. A party that objects *and* produces creates an ambiguity as to what documents, if any, have been withheld." *Howard v. Segway, Inc.*, No. 11-CV-688-GKF, 2013 WL 869955, *4 (N.D. Okla. Mar. 7, 2013) (emphasis in original).

The basic problem is that it is unclear as to what is being produced and what is not. *Id.* As the *Howard* court put it, "Rule 34 imposes a duty that discovery requests describe with 'reasonable particularity' what is being sought. Courts have imposed the same 'reasonable particularity' obligation on producing and objecting parties." *Id.* at *5. To avoid the problem of ambiguity, the attorney overseeing document production has a duty to inform himself as to what documents are responsive and which of those will be produced. *Id.*

Plaintiffs raised this issue in our September 8, 2017, meet and confer letter, which you have entirely ignored. We quote that letter at length because it clearly explains the problem:

> This letter addresses the Marriott Defendants' document
> productions to date in the three pending cases involving Ritz properties in

Letter to Ian Marx, Esq., and Peter Sellinger, Esq.
December 12, 2017
Page 8

San Francisco, Lake Tahoe, and Aspen. Specifically, I write to inquire about the Marriott Defendants' process for reviewing and producing documents after applying the parties' agreed-upon search terms to your document custodians' preserved electronically stored information (ESI).

In *RCHFU, LLC et al. v. Marriott Vacations Worldwide Corp. et al.*, Case No. 16-cv-01301-PAB-GPG (D. Colo.), for example, Plaintiffs served their first set of requests for production on September 8, 2016. After the Marriott Defendants served their written responses and objections to those requests on October 13, 2016 (and one amended written response on November 17, 2016),[4] the parties engaged in extensive dialogue about the Marriott Defendants' process for searching for and producing responsive ESI. The parties first agreed on a list of document custodians, and then negotiated a list of search terms that you would apply to all the document custodians' preserved ESI (within the time frame of January 1, 2012 through the present). After several months of negotiating, the parties agreed on a list of search terms. The Marriott Defendants applied this list to the custodians' ESI, and began a rolling production of documents on June 15, 2017. After five document productions, you stated in an August 4, 2017 letter that the Marriott Defendants' production was "substantially complete, though there may be some additional documents that the Marriott Defendants ultimately produce." You also stated that you were in the process of preparing a privilege log, which you were expecting to send to us by August 14, 2017.

***Plaintiffs seek clarity regarding the documents you withheld from your production. Specifically, please advise whether, after applying the parties' agreed-upon search terms, you withheld any hits on the basis of your non-privilege objections***. In other words, please advise if you withheld documents only on the basis of privilege, or whether you also withheld documents on the basis of any of your other written objections to Plaintiffs' requests for production. You indicated in a letter accompanying each document production that the production was subject to the Marriott Defendants' responses and objections to Plaintiffs' document requests. If you have, in fact, withheld documents based on any of those non-privilege objections, you have likely withheld documents that are relevant to this case.

---

[4] The parties' dialogue about the Marriott Defendants' document production also encompassed Plaintiffs' second set of requests for production, served on May 17, 2017. The Marriott Defendants served written responses and objections to this set on June 16, 2017.

> For instance, in response to Request No. 10 in Plaintiffs' First Set of Requests for Production, you stated that "To the extent this Request seeks … unexecuted drafts of the Management Agreement, or internal analyses, communications or memoranda regarding the Management Agreement, Marriott Defendants object to the Request as irrelevant, not reasonably calculated to lead to the discovery of admissible evidence …" In response to Request No. 3 in the same set, you objected that responsive documents relating to all Ritz-Carlton Destination Clubs, as opposed to just the Ritz-Aspen, were irrelevant to this action. Plaintiffs disagree and believe that such documents (as well as other documents you may have withheld on relevance or other grounds) *are* relevant to this case, and request to meet and confer on these objections.
>
> We believe the same basic issue exists with respect to your production of documents in the *Reiser* and *Petrick* cases.

9/8/2017 Meade Ltr. to Marx & Sellinger at pp. 1-2 (emphasis added).

Plaintiffs are entitled to a clear statement from the Marriott Defendants regarding the scope of their production. The Marriott Defendants must clarify what documents, if any, they have withheld from their production. If any documents have been withheld based on your unilateral narrowing of the response required, they must be immediately produced.

Indeed, third party productions pursuant to Plaintiffs' subpoenas have yielded records, including Marriott Defendants documents, that clearly should have been produced. The Cushman & Wakefield and Morrow & Company productions reveal serious problems with Marriott's productions. Association records also demonstrate that Marriott has withheld documents.

### F. Missing Documents from the Marriott Defendants' Production

Plaintiffs made another demand during the meet and confer process leading up to the consolidated document production involving search terms — namely, that the Marriott Defendants not limit their search for responsive documents to the search term methodology. In their letter first letter in the meet and confer, dated November 25, 2016, Plaintiffs wrote:

> We have expressed our willingness to discuss search terms to be used in your document review, although ***we do not believe that a sufficient review can be conducted with search terms alone***.
>
> We wish to emphasize that Plaintiffs do not agree to any limitation on the broad scope of permissible discovery. *See Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 619 (D. Colo. 2007) (stating "Discovery procedures set forth in the Federal Rules of Civil Procedure seek to further the interests of justice by minimizing surprise at trial

Letter to Ian Marx, Esq., and Peter Sellinger, Esq.
December 12, 2017
Page 10

> and ensuring wide-ranging discovery of information" and collecting cases underscoring the broad scope of permissible discovery). Nor do we agree to any limitation on your responsibilities as counsel to conduct an appropriate search for responsive documents. *Id.* at 626 ("Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37") (quoting Advisory Committee Notes to the 1983 Amendments to Fed.R.Civ.P. 26(g)).
>
> ***You have a duty to look for responsive documents wherever they may exist.*** The district court in *Cache La Poudre Feeds* cited the following cases for this proposition: *Anderson v. Cryovac, Inc.,* 862 F.2d 910, 929 (1st Cir. 1988) ("once a proper discovery request has been seasonably propounded, we will not allow a party sentiently to avoid its obligations by ... failing to examine records within its control"); *A. Farber and Partners, Inc. v. Garber,* 234 F.R.D. 186, 189 (C.D. Cal. 2006) (holding that a party has an obligation to conduct a reasonable inquiry in the course of responding to requests for production); *Finkelstein v. District of Columbia,* 1987 WL 14976, *6 (D.D.C. 1987) (suggesting that Rule 34 contemplates that a party will conduct a diligent search through all likely repositories of records); *In re Independent Service Organizations Antitrust Litigation,* 168 F.R.D. 651, 653 (D. Kan. 1996) (party cannot meet its discovery obligations by "sticking its head in the sand and refusing to look for the answer and then saying it does not know the answer;" a corporation must speak to those employees who may have responsive information).

12/20/2016 Meade Ltr. to Marx & Sellinger at pp. 1-2 (emphasis added).

Plaintiffs repeated this same point on several subsequent occasions:

> Second, while we agree to provide a list of search terms and will do so by the end of next week, ***we do not agree that a sufficient review can be conducted with search terms alone***. I have enclosed a copy of our November 25, 2016 letter, which summarizes your obligation to locate, review and provide responsive documents.

*Id.* at p. 2 (emphasis added).

> Pursuant to our prior discussions, we list below the search terms that should be used as a *complement* to other efforts to find responsive documents. ***As explained in our November 25 letter and reiterated in our December 20 letter, we do not agree that you can discharge your obligation to find and produce responsive documents based on search terms alone***. Please let us know if you disagree.

Letter to Ian Marx, Esq., and Peter Sellinger, Esq.
December 12, 2017
Page 11

1/16/2017 Meade Ltr. to Marx & Sellinger at p. 1 (first emphasis in original, second emphasis added).

Yet, it appears that the Marriott Documents have withheld documents known to be responsive but not captured by the agreed-upon search terms. All such documents must be produced immediately, and none can be withheld on the basis of privilege or work-product immunity for the reasons discussed above.

In addition, the following specific documents, all of which are known to exist, must be produced:

- We request that you produce all reports by the Association on the survey-vote to members regarding the proposed affiliation with MVC. Mr. Marx has represented to Plaintiffs' counsel that such reports exist, but have not been produced. Any reports on the survey-vote are responsive to Plaintiffs' request for production number two, which seeks "All documents, including internal analyses, communications, memoranda, and feedback from the Ritz-Carlton Destination Club members, concerning the decision to affiliate the Ritz-Aspen with the Marriott Vacation Club Destinations exchange program, thereby allowing MVC members to use their points to reserve stays at the Ritz-Aspen."

- We request that you produce all "SCHEDULE OF KEY OPERATING STATISTICS" from 2012-2017 for Cobalt Travel Company, as seen in RCDC Sample11263; and any other relevant schedule of key operating statistics. They are responsive to the following Plaintiff's requests for production:

    - Thirteen, which seeks "All documents not previously produced or disclosed relating to the MVC Affiliation that the Marriott Defendants located during the search term review, but which Marriott Defendants did not produce as determined by them to be outside of the parameters of the specified search terms."

    - Nineteen, which seeks "All financial reporting used by Marriott to asses the operation of the Ritz Properties from 2011 to present";

    - Twenty, which seeks, "All documents that forecast use of Ritz Properties prepared from 2011 to present."

    - Twenty-three, which seeks, "All Annual Strategic Plans, Annual Market Plans, Sales Analysis Reports, and all Sales Reports for 2012-2016 for MVCI and the Ritz-Carlton Destination Club, Aspen Highlands."; and

Letter to Ian Marx, Esq., and Peter Sellinger, Esq.
December 12, 2017
Page 12

- - Twenty-four, which seeks, "All consultant reports regarding the MVC Affiliation."
- We request that you produce all relevant "EXECUTIVE SUMMARY" documents from 2012-2017, as seen in RCDC Sample28072. They are responsive to Request Nos. 13, 20, and 23 (described above) and the following additional requests for production:
  - Two, which seeks "All documents, including internal analyses, communications, memoranda, and feedback from Ritz-Carlton Destination Club Members, concerning the decision to affiliate the Ritz-Aspen with the Marriott Vacation Club Destinations exchange program, thereby allowing MVC members to use their points to reserve stays at the Ritz-Aspen"; and
  - Three, which seeks "All documents, including internal analyses, communications, memoranda, and feedback from Ritz-Carlton Destination Club members CONCERNING the affiliation or potential affiliation of any other Ritz-Carlton Club with the Marriott Vacation Club Destinations exchange program."
  We request that you produce all relevant "HOLISTIC PLAN" documents from 2012-2017 as seen in RCDC Sample51228. They are responsive to Plaintiff's requests for production numbers two, three, thirteen, twenty and twenty-three.
- We request that you produce all relevant "INVENTORY & REVENUE MANAGEMENT" documents or presentations from 2012-2017, as seen in RCDC Sample52479. They are responsive to Plaintiff's requests for production numbers two, three, thirteen, nineteen and twenty-three.
- We request that you produce all relevant "INTEROFFICE MEMORANDUM" documents from 2012-2017 as seen in RCDC Sample26412. They are responsive to Plaintiff's requests for production numbers two, three, thirteen, twenty and twenty-three.
- We request that you produce all relevant documents from 2012-2017 regarding market research, customer insights and customer analytics from including but not limited to all documents from "CUSTOMER INTELLIGENCE SOLUTIONS", similar to the report seen in RCDC Sample53237. They are responsive to Plaintiff's requests for production numbers two, three, thirteen, nineteen, twenty, twenty-three and twenty-four.

Letter to Ian Marx, Esq., and Peter Sellinger, Esq.
December 12, 2017
Page 13

- We request that you produce all New York offering plans. They are responsive to Request Nos. 13, 20, 23, and 24 (described above) and the following additional request for production:
    - Twenty-two, which seeks "All documents created, received or sent at any time, including prior to July 2012, regarding Marriott Defendants' reason, purpose, rationale or justification for allowing the MVC Affiliation to the Ritz-Aspen";
- We request that you produce all relevant documents related Barbara Egoff. They are responsive to Plaintiff's requests for production numbers two, three, thirteen and twenty-two.
- We request that you produce all relevant documents related to Lani Kane-Hanan. They are responsive to Plaintiff's requests for production numbers two, three, thirteen and twenty-two.
- We request that you produce all relevant documents related to Nick Rossi. They are responsive to Plaintiff's requests for production numbers two, three, thirteen and twenty-two.
- We request that you produce all relevant documents related to John Miller. They are responsive to Plaintiff's requests for production numbers two, three, thirteen and twenty-two.
- We request that you produce all communications between anyone at Marriott and any member who voted for the Aspen affiliation from November 2013 through January 2014. They are responsive to Plaintiff's requests for production numbers two, three, thirteen and twenty-two.
- We request that you produce all communications between anyone at Marriott and any member who voted FOR the San Francisco affiliation from May 2014 through December 2014. They are responsive to Plaintiff's requests for production numbers thirteen and twenty-two.
- We request that you produce all communications between anyone at Marriott and any member who voted FOR the Tahoe affiliation from May 2014 through December 2014. They are responsive to Plaintiff's requests for production numbers thirteen and twenty-two.
- We request that you produce all files and records concerning the Cushman & Wakefield appraisals for the Tahoe, Aspen, San Francisco, Kapalua, Bachelors Gulch and Jupiter RDCD's, including all communications

Letter to Ian Marx, Esq., and Peter Sellinger, Esq.
December 12, 2017
Page 14

    between anyone at Marriott and anyone at Cushman & Wakefield concerning all appraisals and/or opinions of value for said clubs.

- We request that you produce all files and records concerning the retention of and services by Morrow and Company, including all communications between anyone at Marriott and anyone at Morrow concerning any survey or vote about the MVW affiliation and elections for directors from 2011 to present.

Your firm is also handling the subpoenas served by Plaintiffs to The Ritz-Carlton Development Company. This subpoena needs to be responded to promptly.

Documents are required for depositions and our experts. Plaintiffs continue to reserve their rights to complete depositions of any witness based on the withholding of documents that should have been produced a long while ago.

Please let us know by the close of business on Thursday, December 14, of a date and time during which you are available to meet and confer by telephone concerning these issues.

    Sincerely,

    THE MEADE FIRM p.c.

    */s/ Tyler Meade*

    Tyler Meade

cc: Michael J. Reiser, Esq. (*via* e-mail)
    Michael S. Schrag, Esq. (*via* e-mail)
    Matthew C. Ferguson, Esq. (*via* e-mail)