# EXHIBIT J

```
 1   RCHFU, LLC,  et al.,
          Plaintiffs,
 2                           United States District Court
     v.                      District of Colorado
 3                           No.  1:16-cv-09390
     MARRIOTT VACATIONS WORLDWIDE
 4   CORPORATION, et al.,
          Defendants,
 5   _____/
 6   REISER, et al.,
          Plaintiffs,       Eastern District of California
 7   v.                      No. 2:16-cv-00237-MCE-CKD
 8
     MARRIOTT VACATIONS WORLDWIDE
 9   CORPORATION, et al,
          Defendants,
10   _____/
11   PETRICK, et al.,
          Plaintiffs,
12                           San Francisco County
13   vs.                     No. CGC-15-54897
     MARRIOTT VACATION WORLDWIDE
14   CORPORATION, et al.,
15        Defendants.
16   _____/
17
18             VIDEOTAPED DEPOSITION OF LEE CUNNINGHAM
19        VOLUME I, commencing between 9:03 a.m.-5:05 p.m.,
20        on Friday, November 10, 2017 Taken on Behalf of
          the Plaintiffs before Lisa Gerlach, Court Reporter,
21        Notary Public in and for the State of Florida at
22        Large, pursuant to Plaintiffs' Notice of Taking
23        Deposition in the above cause.
24
     Job No. 2733753
25   PAGES 1 - 269

                                              Page 1
```

Lee Cunningham - November 10, 2017

```
 1    Appearances:

 2

 3   Counsel for the Plaintiffs:

 4            The Matthew C. Ferguson Law Firm, PC

 5            BY: MATTHEW C. FERGUSON, ESQUIRE

 6            119 South Spring, Suite 201

 7            Aspen, CO 81611

 8            matt@matthewfergusonlaw.com

 9

10            Reiser Law, PC

11            BY: MICHAEL S. REISER, ESQUIRE

12                ISABELLA MARTINEZ, ESQUIRE

13                MATTHEW REISER, ESQUIRE

14            1475 Broadway, Suite 300

15            Walnut Creek, CA 94596

16            michael@reiserlaw.com

17            isabella@reiserlaw.com

18            matthew@reiserlaw.com

19

20

21

22

23

24

25

                                        Page  2
```

Lee Cunningham - November 10, 2017

```
 1    Appearances:

 2

 3    For the Defendant Marriott:

 4           Greenberg Traurig, LLP

 5           BY: PHILIP SELLINGER, ESQUIRE

 6               IAN S. MARX, ESQUIRE

 7           500 Campus Drive, Suite 400

 8           Florham Park, NJ 07932-0677

 9           sellingerp@gtlaw.com

10           marxi@gtlaw.co

11

             Marriott Vacations Worldwide

12           BY: DOUGLAS A. KELLY, ESQUIRE

13               MARK NAGLE, ESQUIRE

14           6649 Westwood Boulevard

15           Orlando, FL 32821

16           douglas.kelly@mvwc.com

17           mark.nagle@mvwc.com

18

19    For the Defendant Aspen Highlands

20    Condominium Association:

21           Hogan Lovells

22           BY: JESSICA BLACK LIVINGSTON, ESQUIRE

23           1601 Wewatta Street, Suite 900

24           Denver, CO 80202

25           jessica.livingston@hoganlovells.com
```

Page 3

Lee Cunningham - November 10, 2017

```
 1        A.  Yesterday was one, and I don't recall the
 2   prior day a couple weeks ago.
 3        Q.  Approximately how many documents have you
 4   reviewed for your deposition today?
 5        A.  Probably in the -- hundred or so.
 6        Q.  Were there any non-Marriott employed people
 7   in any of these meetings?
 8        A.  No.  Well, counsel was not --
 9        Q.  I understand.  Like, did you meet with HOA
10   counsel?
11        A.  No.
12        Q.  All right.  Sir, are you presently employed
13   by Marriott Vacations Worldwide Corporation?
14        A.  That's correct.
15        Q.  Are you an officer in that company?
16        A.  Yes, I am.
17        Q.  Are you an officer under any other entities
18   under the Marriott Vacation Worldwide -- is it okay if
19   I call it MVW?
20        A.  That's fine.
21        Q.  Is that what you all call it at work?
22        A.  Yes.
23        Q.  I notice, for example, you signed some
24   documents on behalf of Lion & Crown Travel --
25        A.  Yes.
```

Page 10

Lee Cunningham - November 10, 2017

```
 1        Q.  -- Company?  You're an officer in that
 2   company?
 3        A.  I am.
 4        Q.  What is your position at --
 5        A.  Vice president, I think, is how it's
 6   characterized.
 7        Q.  Approximately how many companies are you an
 8   officer in under the MVW umbrella?
 9        A.  To be honest, I couldn't estimate.  It's
10   probably in the -- 15 to 20.
11        Q.  Okay.  What Ritz-Carlton entities under the
12   MVW entity are you an officer?
13        A.  Lion & Crown, Cobalt Travel, Ritz-Carlton
14   Development Company.  Those are the primary ones that
15   I...
16        Q.  Have you ever been an officer in any of the
17   HOAs that were formed for any of the clubs?
18        A.  No.
19        Q.  How many times have you been deposed, say, in
20   the last five years?
21        A.  This is my first.
22        Q.  First deposition ever?
23        A.  Yes.
24        Q.  Okay.  I know counsel spent some time with
25   you.  I would have thought that you would've been in a
```

Page 11

Lee Cunningham - November 10, 2017

```
 1        Q.  Was it planned to give them one day's notice

 2   or was it just you all were too busy to give notice

 3   further in advance?

 4        A.  I don't recall.

 5        Q.  Was there a decision not to tell the

 6   presidents before telling -- to tell them that short

 7   in advance of this affiliation announcement?

 8             MR. SELLINGER:  Objection to form.

 9        A.  We had no obligation to inform the presidents

10   of anything, and we chose to give them an advance

11   notice.

12   BY MR. FERGUSON:

13        Q.  And why do you say you had no obligation to

14   give them an advance notice?

15        A.  Because we had no obligation to give them an

16   advance notice of an affiliation, which is entirely

17   our decision.

18        Q.  But you all later promised to give a vote

19   that would require a majority of the members to

20   approve affiliation.

21             Do you recall that?

22             MR. SELLINGER:  Objection --

23        A.  No.

24             MR. SELLINGER:  Objection to form.

25   BY MR. FERGUSON:
```

                                          Page 76

Lee Cunningham - November 10, 2017

```
 1        Q.  You don't recall that?
 2        A.  No.  We did not give them the decision to
 3   make that -- make that decision.
 4        Q.  Never?
 5        A.  No.
 6        Q.  Do you know a Mr. Lattore or Ms. -- Pat
 7   Lattore?
 8        A.  No.
 9        Q.  Let me just show you Exhibit 1028.  This is
10   an e-mail from a Pat Lattore at the bottom.  You'll
11   see on the last page -- as you know, these things are
12   printed out kind of in reverse order.  The last page
13   is the first communication.
14             It says, "Please find attached letter from
15   Cobalt Travel Company, LLC, regarding the execution --
16   the evolution of a Ritz-Carlton Destination Club."
17             That's the cover e-mail that was sent with
18   Ms. Babich's July 17th letters, was it not?
19        A.  I do not know.
20        Q.  Well, if you look above, it says "July 17,
21   2012, member communications."
22        A.  It probably is.
23        Q.  Well, RCDC member communications is the
24   way -- is an e-mail system that you all are able to
25   use through Ms. Babich's group to communicate with
```

Page 77

Lee Cunningham - November 10, 2017

```
 1    BY MR. REISER:
 2         Q.  You've been involved -- you're familiar with
 3    the affiliation agreement between -- that binds the
 4    Ritz Club members to the Ritz-Carlton Cobalt trading?
 5         A.  Yes.
 6         Q.  And you're aware in the affiliation
 7    agreement, are you not, that the decision as to
 8    affiliations is to be solely in the discretion of
 9    Cobalt and not the developer?
10         A.  I may have misstated that it was the
11    developer versus Cobalt, but...
12         Q.  So you don't see any difference between the
13    developer and Cobalt?
14         A.  There's a difference.  I see a difference
15    between them.  I just may have misstated where the
16    decision lay.
17         Q.  So it's your understanding that the decision
18    to affiliate with Cobalt solely --
19         A.  I don't know.  I'd have to go back and
20    refresh my memory from advice of counsel.
21         Q.  My recollection of reading the affiliation
22    agreement -- I can show it to you if you want -- but
23    it clearly stated in the paragraph that the developer
24    was to have no role whatsoever in deciding affiliation
25    between clubs.
```

Page 130

Lee Cunningham - November 10, 2017

```
 1              You don't remember that in the affiliation
 2     agreement?
 3          A.  I'd have to go back and refresh my memory.
 4     If you'd like to provide that document, I'll be glad
 5     to review it.
 6          Q.  I'll show it to you maybe in my next round of
 7     questioning.
 8          A.  Okay.
 9          Q.  As you sit here today -- well, I want to ask
10     you -- you kind of started going through the many hats
11     you wear in the Marriott Vacations Worldwide universe.
12     And you mentioned you were the COO of -- or strike
13     that -- you are an officer of 15 to 20 companies, I
14     thought you said.
15          A.  Entities.
16          Q.  Entities.  One of them is Lion & Crown, you
17     mentioned; right?
18          A.  Uh-huh.
19          Q.  What's your role in Lion & Crown?
20          A.  As far as the officer of the company?
21          Q.  Yeah.
22          A.  As -- of the entity?  My title is vice
23     president, and my role is to oversee the operation of
24     Lion & Crown.
25          Q.  And vice president -- are you chief operating
```

Page 131

Lee Cunningham - November 10, 2017

```
 1          Q.   What was the reason for changing to the
 2     survey?
 3          A.   I think I've covered this ground.  Upon
 4     advice from counsel, they said -- informed us that a
 5     vote was the appropriate form for this type of
 6     communication, and that's when we chose to go with the
 7     survey.
 8               MR. REISER:  So, Philip, are you relying
 9          on advice of counsel on this point or are you
10          going to waive the privilege?  He's relying
11          on advice of counsel for the decision.
12               MR. SELLINGER:  We're not relying on the
13          advice of counsel.  We're not putting the
14          advice of counsel at issue.
15               You asked the witness a question and he
16          answered the question factually, that they
17          took the position of advice of counsel.
18               What we're relying on are the agreements,
19          which give unfettered discretion to Cobalt to
20          affiliate without regard to anything else.
21          So the witness has testified to the facts
22          you're asking, but there is no advice of
23          counsel defense.
24     BY MR. REISER:
25          Q.   So is this a communication from Cobalt to
```

Page 250

Lee Cunningham - November 10, 2017

```
 1   Marriott International or is it a communication from
 2   Marriott Vacations Worldwide Corporation?
 3        A.  I believe it would be from Marriott
 4   Worldwide -- Marriott Vacations Worldwide.
 5   BY MR. REISER:
 6        Q.  And your counsel just testified that he
 7   thought it was the exclusive discretion of Cobalt, the
 8   decision on whether to affiliate.  True?
 9        A.  That is correct.
10        Q.  And that's your position?
11        A.  Yes.
12        Q.  Do you think it was appropriate for Marriott
13   Vacation Worldwide to try to influence that decision
14   of Cobalt?
15        A.  They -- I'm sorry?  They're influencing the
16   decision of Cobalt how?
17        Q.  Because they're getting advice from counsel
18   about whether there should be a vote.
19            MR. SELLINGER:  Objection to form.
20        What's the question?
21        A.  I got advice -- I got advice from counsel
22   related to whether -- when we were going to seek this
23   information -- or going to seek feedback from the
24   owners -- whether a vote was appropriate or a survey
25   was appropriate.  At that point, I was acting in my
```

Page 251

Lee Cunningham - November 10, 2017

```
 1   that there would be an affiliation in San Francisco.
 2   We certainly would have the authority or the right to
 3   do that.
 4           But the issue in San Francisco, as I
 5   mentioned earlier, is that you were going to have
 6   Marriott Vacation Club Destinations owners coming into
 7   San Francisco because there would be San Francisco
 8   inventory in the Marriott Vacation Club Destinations
 9   Trust.
10       Q.  Right.  And I'm not asking about that.  I'm
11   asking about the affiliation.
12       A.  Okay.
13       Q.  Is it true that the affiliation would've
14   happened regardless of the survey results in both
15   Aspen and San Francisco, as stated by Eveleen Babich
16   in the exhibit we saw earlier today?
17       A.  I can't comment to whether that was the state
18   of mind at that point in time.  I don't know where she
19   got that impression.
20       Q.  Was that your impression?
21       A.  No.
22       Q.  So you thought that there would have to be
23   some kind of positive survey results to affiliate?
24       A.  If we got affirmative survey results, we were
25   going to move forward.  If we didn't, then we would
```

Page 260

Lee Cunningham - November 10, 2017

1    regroup and try to figure out what the next plan would

2    be or what should be done and -- you know -- including

3    and up to not affiliating.

4         Q.   Did you ever see a letter from Jay Neveloff

5    saying that the survey that was given to the Aspen

6    members was so one-sided in discussing the benefits of

7    the affiliation that it could not be used to rely as a

8    reliance document for the decision to affiliate?

9         A.   I don't recall.

10        Q.   Let me show you the next exhibit, 1235.  So

11   you see the cover letter here?  This is from Randy

12   Mercer to Stephanie Sobeck.  And it says, "Stephanie,

13   as promised, attached is the revised letter to

14   members.  If you make any changes to this, we would

15   appreciate a redline before sending."  And it's

16   enclosing a letter -- proposed letter to the Aspen

17   members.

18        A.   Yes.

19        Q.   Do you see on the second paragraph from the

20   bottom of the first page of the letter, it says, "RCDC

21   executive leadership and board of directors in Aspen

22   have agreed that they will allow members of Aspen the

23   chance to indicate their thoughts before any final

24   decisions regarding affiliation are made."

25             "If the majority, 50 percent plus one, of the

                                        Page 261

Lee Cunningham - November 10, 2017

```
 1                    CERTIFICATE OF REPORTER

 2

 3    STATE OF FLORIDA

 4    COUNTY OF ORANGE

 5

 6              I, Lisa Gerlach, Court Reporter, do hereby

 7    certify that I was authorized to and did

 8    stenographically report the foregoing deposition; and

 9    that the transcript is a true and correct

10    transcription of the testimony given by the witness.

11              I further certify that I am not a relative,

12    employee, attorney or counsel of any of the parties,

13    nor am I a relative or employee of any of the parties'

14    attorney or counsel connected with the action, nor am

15    I financially interested in the action.

16              Dated this 18th day of November, 2017.

17

18

19

20

21

22

23

24    _____

25         Lisa Gerlach, Court Reporter
```

Page 269

Lee Cunningham - 11/15/2017

```
 1   RCHFU, LLC,  et al.,    United States District Court
 2        Plaintiffs,       District of Colorado:
 3   v.                     No.  1:16-cv-09390
 4   MARRIOTT VACATIONS WORLDWIDE
 5   CORPORATION, et al.,
          Defendants,
 6   _____/
     REISER, et al.,
 7        Plaintiffs,       Eastern District of California
 8   v.                     No. 2:16-cv-00237-MCE-CKD
 9   MARRIOTT VACATIONS WORLDWIDE
10   CORPORATION, et al,
          Defendants,
11   _____/
12   PETRICK, et al.,
13        Plaintiffs,       San Francisco County
     vs.                    No. CGC-15-54897
14   MARRIOTT VACATION WORLDWIDE
15   CORPORATION, et al.,
16        Defendants.
     _____/
17        CONTINUED VIDEOTAPED DEPOSITION OF LEE CUNNINGHAM
18   VOLUME II, taken at 450 South Orange Avenue, Suite 650,
19   Orlando, Florida, commencing between 2:06 p.m.-7:27 p.m.,
20   Wednesday, November 15, 2017, before Lisa Gerlach, Court
21   Reporter, Notary Public in and for the State of Florida
22   at Large.
23
24   JOB No. 2733762
25   PAGES 270-479
```

Page 270

Lee Cunningham - 11/15/2017

```
 1    Appearances:

 2

 3    Counsel for the Plaintiffs:

 4

 5         BY: MATTHEW C. FERGUSON, ESQUIRE

 6         The Matthew C. Ferguson Law Firm, PC

 7         119 South Spring, Suite 201

 8         Aspen, CO 81611

 9         matt@matthewfergusonlaw.com

10

11         BY: MICHAEL J. REISER, SR., ESQUIRE

12             ISABELLA MARTINEZ, ESQUIRE

13             MATTHEW REISER, ESQUIRE

14         Reiser Law, PC

15         1475 Broadway, Suite 300

16         Walnut Creek, CA 94596

17         michael@reiserlaw.com

18         isabella@reiserlaw.com

19         matthew@reiserlaw.com

20

21         BY: TYLER MEADE, ESQUIRE

22         The Meade Firm, PC

23         1816 Fifth Street

24         Berkeley, CA 94710

25         tyler@meadefirm.com
```

Page 271

Lee Cunningham - 11/15/2017

```
 1    Appearances:

 2

 3   For the Defendant Marriott:

 4

 5        BY: PHILIP SELLINGER, ESQUIRE

 6            IAN S. MARX, ESQUIRE

 7        Greenberg Traurig, LLP

 8        500 Campus Drive, Suite 400

 9        Florham Park, NJ 07932-0677

10        sellingerp@gtlaw.com

11        marxi@gtlaw.com

12

13        BY: DOUGLAS A. KELLY, ESQUIRE

14        Marriott Vacations Worldwide

15        6649 Westwood Boulevard

16        Orlando, FL 32821

17        douglas.kelly@mvwc.com

18

19

20

21

22

23

24

25
```

Page 272

Lee Cunningham - 11/15/2017

```
 1     Appearances:

 2

 3        For the Defendant Aspen Highlands

 4        Condominium Association:

 5

 6            BY: JESSICA BLACK LIVINGSTON, ESQUIRE

 7            Hogan Lovells

 8            1601 Wewatta Street, Suite 900

 9            Denver, CO 80202

10            jessica.livingston@hoganlovells.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 273

Lee Cunningham - 11/15/2017

```
 1        Q.   Cobalt is the program manager that has the
 2   decision as to who to affiliate with in this
 3   agreement?
 4        A.   I'm sorry.   But the -- I believe the addition
 5   of Lion & Crown in 2010 -- I don't know the exact
 6   reasoning, but my understanding was that Lion & Crown
 7   is the entity that affiliates with non-RCDC projects
 8   or clubs.
 9             So that's why it was done with Lion & Crown.
10   That's why we did the acknowledgement with Lion &
11   Crown and the association.
12        Q.   So you're not saying that Cobalt made the
13   decision to affiliate.   You're saying that it was Lion
14   & Crown that made the decision to affiliate?
15             MR. SELLINGER:   Objection to form.
16   BY MR. REISER:
17        Q.   That's true?
18        A.   I'm saying it was Lion & Crown that made that
19   decision.
20        Q.   How do you explain the first sentence then?
21   "The program manager, who's defined in this agreement
22   as Cobalt, may, in its sole discretion, elect to
23   affiliate other locations with the membership program
24   at member clubs or associated clubs from time to
25   time."
```

                                           Page 384

Lee Cunningham - 11/15/2017

```
 1        A.  Cobalt is -- the program manager under Cobalt

 2   is -- has the affiliation -- or has the sole

 3   discretion for affiliation between Cobalt and each of

 4   the clubs or other entities.  I believe --

 5        Q.  So what is your explanation for why you

 6   believe The Lion & Crown Travel Company has the

 7   authority to affiliate other clubs with The

 8   Ritz-Carlton Destination Club?

 9        A.  That was the advice from counsel that that

10   was the appropriate entity to affiliate with, so I'd

11   have to go back and refresh myself on those documents.

12        Q.  Do you see this also says that the members

13   association --

14             MR. SELLINGER:  Where are you reading?

15   BY MR. REISER:

16        Q.  -- shall not be entitled to participate in or

17   consent to the program manager's decision to

18   affiliate.  True?

19             MR. SELLINGER:  Where are you reading

20        from?

21             THE WITNESS:  Right here.

22   BY MR. REISER:

23        Q.  You would agree that your affiliation

24   agreement disallowed the member association from

25   participating in or consenting to the affiliation
```

Page 389

Lee Cunningham - 11/15/2017

```
 1        A.  Yes.

 2        Q.  So we've seen documents for the last two

 3   days, wherein yourself, your executives, such as

 4   Stephanie Sobeck and others, were in joint

 5   communication with Randy Mercer and his board in terms

 6   of trying to formulate the survey.  True?

 7        A.  Yes.

 8        Q.  Why did you allow that to happen, when your

 9   affiliation agreement provides that the member

10   association shall not be entitled to participate in or

11   consent to the program manager's decision in regards

12   to affiliation?

13             MR. SELLINGER:  Objection to form.

14        A.  Because the affiliation that we were

15   discussing was with Lion & Crown, not with Cobalt.

16             MR. REISER:  Okay.

17             THE VIDEOGRAPHER:  The time is 5:05.

18        That concludes media two in the deposition of

19        Lee Cunningham.

20             (Brief recess.)

21             THE VIDEOGRAPHER:  The time is 5:23.

22        This is media three in the deposition of Lee

23        Cunningham.

24             MR. REISER:  What's the time?

25             THE VIDEOGRAPHER:  5:23.
```

Page 392

Lee Cunningham - 11/15/2017

```
 1              MR. REISER:  I'm just going to note for
 2         the record that we went out of here at 5:05,
 3         and that it was an 18-minute break.  I
 4         requested that it be not even a break.  I
 5         don't know what happened over the last
 6         18 minutes, but it's unacceptable to take
 7         these long breaks when I didn't agree to it.
 8              MR. SELLINGER:  I'd like to go on the
 9         record that it's now been eight hours and
10         37 minutes of deposition time.  We have moved
11         very quickly over two days of these
12         depositions, but we're getting to the point
13         where the same questions and the same subject
14         matter are being covered about eight times.
15              So from our perspective, so both counsel
16         are on notice, we view this as the last
17         taping session, which will be well over nine
18         and a half hours at the conclusion of it.  So
19         that's going to be our position, that this is
20         it.
21              The amount of break is not relevant.
22         What's relevant is the amount of deposition
23         time and the opportunities that you've both
24         had with our accommodation to go back and
25         forth.  So that's where we are.
```

Page 393

Lee Cunningham - 11/15/2017

```
 1              MR. REISER:  We'll preserve that for the
 2        court.  I understand your position.  Our
 3        position is, we get at least 21 hours on the
 4        three cases.
 5              MR. SELLINGER:  At least?
 6              MR. REISER:  We might need more,
 7        actually.  So we'll see.  There's no ironclad
 8        rule of seven hours on any witness,
 9        especially one across three clubs.
10              So if you really want to take that
11        position in this complex case --
12              MR. SELLINGER:  We've already gone
13        beyond seven hours.
14              MR. REISER:  And there's three cases.
15              MR. SELLINGER:  Yes, and they all deal
16        with the same issues.  Everything that we
17        covered is the same affiliation issue in the
18        same cases.
19              MR. REISER:  Okay.
20   BY MR. REISER:
21        Q.  So do you want to change your testimony at
22   all as to whether Cobalt is the sole -- has the sole
23   authority to affiliate other clubs with The
24   Ritz-Carlton Destination Club?
25              MR. SELLINGER:  Objection to form.
```

Page 394

Lee Cunningham - 11/15/2017

```
 1        A.   Cobalt -- Cobalt can affiliate with other
 2   clubs.  They have -- refreshed my memory -- they have
 3   affiliated with Lion & Crown, and have, in this case,
 4   through Lion & Crown, sought the affiliation of the
 5   other clubs.
 6   BY MR. REISER:
 7        Q.   So it's your testimony then that Cobalt,
 8   having sole authority to affiliate, somehow delegated
 9   that authority to affiliate to Lion & Crown, of which
10   you were the vice president?
11        A.   They directed --
12             MR. SELLINGER:  Objection to form.
13   BY MR. REISER:
14        Q.   Is that your testimony?
15        A.   They directed Lion & Crown to affiliate with
16   the other clubs.
17        Q.   Who made the decision to affiliate?
18        A.   The -- Cobalt did.
19        Q.   So you're changing your testimony from right
20   before this break.   True?
21             MR. SELLINGER:  Objection to form.
22        A.   Cobalt directed Lion & Crown to the
23   affiliation.  The decision was made by Cobalt.
24   BY MR. REISER:
25        Q.   Okay.  So why was the members association
```

Page 395

```
 1                    CERTIFICATE OF REPORTER

 2

 3    STATE OF FLORIDA

 4    COUNTY OF ORANGE

 5

 6             I, Lisa Gerlach, Court Reporter, do hereby

 7    certify that I was authorized to and did

 8    stenographically report the foregoing deposition; and

 9    that the transcript is a true and correct

10    transcription of the testimony given by the witness.

11             I further certify that I am not a relative,

12    employee, attorney or counsel of any of the parties,

13    nor am I a relative or employee of any of the parties'

14    attorney or counsel connected with the action, nor am

15    I financially interested in the action.

16             Dated this 4th day of December, 2017.

17

18

19

20             Lisa Gerlach, Court Reporter

21

22

23

24

25

                                            Page 479
```