# EXHIBIT K

```
 1    RCHFU, LLC,  et al.,
 2        Plaintiffs,        United States District Court
                             District of Colorado
 3    v.                     No.  1:16-cv-09390
 4
      MARRIOTT VACATIONS WORLDWIDE
 5    CORPORATION, et al.,
          Defendants,
 6    _____/
      REISER, et al.,
 7        Plaintiffs,
                                  Eastern District of California
 8    v.                     No. 2:16-cv-00237-MCE-CKD
 9
      MARRIOTT VACATIONS WORLDWIDE
10    CORPORATION, et al,
          Defendants,
11    _____/
      PETRICK, et al.,
12        Plaintiffs,
13                                San Francisco County
      vs.                    No. CGC-15-54897
14
      MARRIOTT VACATION WORLDWIDE
15    CORPORATION, et al.,
16        Defendants.
      _____/
17
18          VIDEOTAPED DEPOSITION OF STEPHANIE SOBECK
19        taken at 450 South Orange Avenue, Suite 650,
          Orlando, Florida, commencing between 9:11 a.m.
20        - 6:20 p.m. on Thursday November 16, 2017
21        before Lisa Gerlach, Court Reporter, Notary
22        Public in and for the State of Florida at Large.
23
24    Job No. 2733702
25    Pages 1 - 374
```

Page 1

```
 1        Appearances:
 2
 3        Counsel for the Plaintiffs:
 4            BY: MATTHEW C. FERGUSON, ESQUIRE
 5            The Matthew C. Ferguson Law Firm, PC
 6            119 South Spring, Suite 201
 7            Aspen, CO 81611
 8            matt@matthewfergusonlaw.com
 9
10            BY: MICHAEL J. REISER, SR., ESQUIRE
11                ISABELLA MARTINEZ, ESQUIRE
12                MATTHEW REISER, ESQUIRE
13            Reiser Law, PC
14            1475 Broadway, Suite 300
15            Walnut Creek, CA 94596
16            michael@reiserlaw.com
17            isabella@reiserlaw.com
18            matthew@reiserlaw.com
19
20            BY: TYLER MEADE, ESQUIRE
21            The Meade Firm, PC
22            1816 Fifth Street
23            Berkeley, CA 94710
24            tyler@meadefirm.com
25
```

```
 1        Appearances:

 2

 3        For the Defendant Marriott:

 4

 5            BY: PHILIP SELLINGER, ESQUIRE

 6                IAN S. MARX, ESQUIRE

 7            Greenberg Traurig, LLP

 8            500 Campus Drive, Suite 400

 9            Florham Park, NJ 07932-0677

10            sellingerp@gtlaw.com

11            marxi@gtlaw.com

12

13            BY: DOUGLAS A. KELLY, ESQUIRE

14            Marriott Vacations Worldwide

15            6649 Westwood Boulevard

16            Orlando, FL 32821

17            douglas.kelly@mvwc.com

18

19

20

21

22

23

24

25
```

Page 3

```
 1    you signed this in Aspen when they were witnessing it.
 2    True?
 3         A.  I really don't remember.  I may have actually
 4    signed it and it didn't get witnessed until later.
 5         Q.  That defeats the purpose of the witness,
 6    doesn't it?
 7             MR. SELLINGER:  Objection to form.
 8         A.  Randy was -- I was witnessing with Randy.
 9    Randy was sitting in the meeting with the other board
10    members.  Yeah -- I'm sorry.  I don't remember when it
11    was witnessed.  I don't.
12    BY MR. REISER:
13         Q.  Okay.  At any rate, it's true, is it not,
14    that it was actually Lee Cunningham that was the vice
15    president of the Ritz-Carlton Management Company at
16    the time he signed this?  True?
17         A.  I don't know what his title was in the
18    Ritz-Carlton Management Company.
19         Q.  I'm going to show you the affiliation
20    agreement that this document amended.  It's been
21    previously marked as Exhibit 1003.
22             Can you turn to paragraph 7.2a?
23         A.  Yes.
24         Q.  Let me ask you a preliminary question about
25    this document.  Is it true that you testified in
```

Page 42

```
 1    relation to this document in the Hoyt case?
 2         A.   Yeah, I would have talked about the
 3    affiliation agreement as well.  Not with Aspen.
 4         Q.   Why not?  That club was actually involved in
 5    Hoyt, wasn't it?
 6         A.   Oh, was it?  I thought it was Bachelor Gulch.
 7         Q.   It was both.
 8         A.   All right.
 9         Q.   So this was the subject of your testimony in
10    that deposition as well, the affiliation agreement; do
11    you recall?
12         A.   The affiliation was discussed, yes.
13         Q.   And that litigation, isn't it true that
14    Marriott Vacation Club took the position that the
15    program manager, Cobalt, had the sole discretion to
16    affiliate other locations with Ritz-Carlton
17    Development Company?  I'm sorry.  Let me repeat that.
18              Isn't it true that, in the Hoyt case,
19    Marriott Vacation Club Worldwide took the position
20    that paragraph 7.2a gave the program manager, Cobalt,
21    the sole discretion to affiliate other membership
22    programs with The Ritz-Carlton Destination Club?
23         A.   I believe that's the case.
24         Q.   And you still believe that's the case, that
25    Cobalt is the sole decision maker in terms of other
```

Page 43

```
 1    the representative of Marriott Vacation Worldwide --
 2    the asset manager for these clubs?
 3         A.   Right.  I mean, I think participate would
 4    mean it would be -- it would have the ability to
 5    affiliate, and I do not believe the developer has any
 6    rights to say what clubs or what other programs are
 7    able to affiliate with --
 8         Q.   And they wouldn't be able to consent either;
 9    right?
10              MR. SELLINGER:  Objection to form.
11    BY MR. REISER:
12         Q.   They're precluded from consenting to any
13    affiliation --
14         A.   Yes.  If they didn't have the right to
15    affiliate them, they wouldn't be able to consent
16    either.
17         Q.   It's also true, under your affiliation
18    agreement -- meaning your company's affiliation
19    agreement, Marriott Vacation Club International --
20    that the association, such as the Aspen homeowners
21    association headed by Randy Mercer -- he would not
22    have -- he should not -- he was not entitled to
23    participate and/or consent to any affiliation
24    decisions.  True?
25         A.   He didn't have the right to make an
```

Page 46

1   affiliation decision, yes.
2       Q.  And he wasn't entitled to participate and/or
3   consent.  True?
4       A.  He wouldn't have been able to make the
5   decision to affiliate or not, yes.
6       Q.  So your interpretation of participate or
7   consent is to make the decision?
8       A.  To make the decision to affiliate, yes.
9       Q.  And you would agree that the club manager,
10  Ritz-Carlton Management Company, did not have the
11  ability to -- or was not entitled to either
12  participate in or consent to the Cobalt decision to
13  affiliate.  True?
14      A.  Correct.  It was only Cobalt.
15      Q.  Okay.  What is your understanding of the
16  reason for that sentence, "Neither the developer,
17  members association, or club manager shall be entitled
18  to participate in or consent to program manager's
19  decision in regard to the affiliation"?
20      A.  That it was only --
21          MR. SELLINGER:  Objection to form.
22      A.  It was only Cobalt.  Cobalt had the ultimate
23  decision of determining who was going to be
24  affiliated, and these other entities or groups did
25  not.

Page 47

```
 1            A.   Barbara Egolf.
 2            Q.   Anybody else?
 3            A.   Not specifically about the acknowledgement,
 4      no.
 5            Q.   So it's your testimony that it was Barbara
 6      Egolf who suggested that this acknowledgement and
 7      joinder of affiliation agreement be signed by the
 8      membership?
 9                 MR. SELLINGER:  I'm going to instruct you
10            not to answer to the extent it relates to
11            your conversations between you and Ms. Egolf.
12                 MR. REISER:  I guess that's for the
13            judge.
14      BY MR. REISER:
15            Q.   Was there a business reason, to your
16      knowledge, to have the acknowledgement of and joinder
17      to affiliation agreement signed by the associations?
18            A.   A business reason?  You know, I think it was
19      good to know that the boards were on board -- the
20      boards were on board with us moving forward with the
21      affiliation.  We certainly knew it was ultimately
22      Cobalt's decision to do.  But having the boards, you
23      know, acknowledge in writing that they were supportive
24      of moving forward, we thought, was good practice.
25            Q.   There are several boards that were not
```

Page 67

```
 1      iPSM or revenue management.
 2           Q.   They manage inventory?
 3           A.   Yes.
 4           Q.   Are you aware of any types of contractual
 5      relationships between Cobalt -- what's the full name
 6      of that company?  Cobalt Management --
 7           A.   Cobalt Travel.
 8           Q.   Cobalt Travel.  Were you aware of any
 9      contracts between Cobalt -- or contractual
10      relationships that have been documented between Cobalt
11      Travel and Lion & Crown?
12           A.   Yeah.  I think there's an affiliation
13      agreement between the two.  Cobalt Travel affiliates
14      with each of the associations, and then Cobalt Travel
15      affiliates with Lion & Crown, and then Lion & Crown
16      affiliates with others, I believe.
17           Q.   Do you consider Lion & Crown to have somehow
18      stepped into the shoes of Cobalt as a program manager?
19                MR. SELLINGER:  Objection to form.
20           A.   Do I think they stepped --
21                MR. FERGUSON:  Is that a legal question?
22                MR. SELLINGER:  I have no idea.
23                MR. FERGUSON:  Okay.  Yeah -- I got it.
24           Objection.  I don't know what you're talking
25           about.
```

Page 230

```
 1                THE WITNESS:  Makes two of us.
 2      BY MR. FERGUSON:
 3          Q.   You believe that there is some type of
 4      affiliation agreement?
 5          A.   Yes.  My non-legal opinion or understanding
 6      is yes.
 7                MR. MEADE:  Can I just interrupt, Matt?
 8           I don't believe that that agreement has been
 9           produced, and we would ask that it be
10           produced.
11                MR. FERGUSON:  We looked for it.
12                MR. MARX:  Okay.  If it has -- we'll
13           produce it whether it has or hasn't.
14                MR. MEADE:  Thank you.
15                MR. FERGUSON:  Rather than ask Ms. Sobeck
16           about what it might say, we'll read it
17           ourselves.
18                THE WITNESS:  Yeah.
19      BY MR. FERGUSON:
20          Q.   You went to Cornell for hotel school and went
21      for an MBA and we went to law school to read
22      contracts.
23          A.   Right.
24          Q.   Have you ever seen a report by a hospitality
25      hotel company called HVS?  Do you know HVS?

                                                    Page 231
```

1        Q.  And based upon those 74 votes, you believe
2    that you had -- the bottom line is, all you were
3    looking for is -- if it was a disastrous outcome, only
4    10 people in favor and 100 against, you would have
5    what?
6            MR. MARX:  Objection to form.
7    BY MR. FERGUSON:
8        Q.  Given it a second thought?
9        A.  Well, it's a hypothetical situation.  But, I
10   mean, if the members had raised their hand and all
11   said, "We don't want this.  We're not interested," and
12   99 percent would have said "no," -- yeah -- I mean, we
13   wouldn't have moved forward with affiliation,
14   hypothetically.  It obviously didn't happen.
15       Q.  I've given you 1314.  This is a compilation
16   of the comments that were coming in in connection with
17   the survey form that went out to the members on
18   December 4th; right?  This is what Morrow & Company --
19       A.  Yes.
20       Q.  So in connection --
21           MR. MARX:  Just for clarity, I think it's
22       fair to indicate that this document was
23       produced in discovery by Morrow & Company.
24           MR. FERGUSON:  I understand that.
25           MR. MARX:  I don't think the witness

Page 364

```
 1                    CERTIFICATE OF REPORTER

 2

 3    STATE OF FLORIDA

 4    COUNTY OF ORANGE

 5

 6              I, Lisa Gerlach, Court Reporter, do hereby

 7    certify that I was authorized to and did

 8    stenographically report the foregoing deposition; and

 9    that the transcript is a true and correct

10    transcription of the testimony given by the witness.

11              I further certify that I am not a relative,

12    employee, attorney or counsel of any of the parties,

13    nor am I a relative or employee of any of the parties'

14    attorney or counsel connected with the action, nor am

15    I financially interested in the action.

16              Dated this 16th day of November, 2017.

17

18

19

20

21

22

23                  [signature: Lisa Gerlach]

24          Lisa Gerlach, Court Reporter

25
```

Page 374