# EXHIBIT 2

PHILIP R. SELLINGER (SBN 226468)
WILLIAM J. GOINES (SBN 61290)
GREENBERG TAURIG, LLP
1900 University Avenue, 5th Floor
East Palo Alto, CA 94303-2283
Telephone: 650-328-8500
Facsimile: 650-328-8508
sellingerp@gtlaw.com
goinesw@gtlaw.com

Attorneys for Defendants
Marriott Vacations Worldwide Corporation;
Marriott Ownership Resorts, Inc.; The Ritz-Carlton
Development Company, Inc.; The Ritz-Carlton
Sales Company, Inc.; The Ritz-Carlton
Management Company, LLC; The Cobalt
Travel Company, LLC; and
R.C. Chronicle Building, L.P.

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SAN FRANCISCO**

| | |
|---|---|
| WILLIAM P. PETRICK, et al., <br><br> Plaintiffs, <br><br> vs. <br><br><br> MARRIOTT VACATIONS WORLDWIDE CORPORATION, a Delaware corporation, *et al.,* <br><br> Defendants. | CASE NO. CGC 15-545987 <br><br> **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEMURRER TO FOURTH AMENDED COMPLAINT** <br><br> [Judicial Referee: Hon. Charles W. McCoy, Jr. (Ret.)] <br><br> Date:      TBD by Judicial Referee <br> Time:     10:00 a.m. <br> Dept:     JAMS <br> Location: 555 West 5th Street, 32nd Flr. <br>                Los Angeles, CA  90013 <br><br> ACTION FILED: May 26, 2015 <br> TRIAL DATE:     September 10, 2018 |

# TABLE OF CONTENTS

INTRODUCTION .......................................................................................................................... 1

STANDARD .................................................................................................................................. 3

ARGUMENT .................................................................................................................................. 3

    I.   PLAINTIFFS' FAILURE TO HAVE SOUGHT OR BEEN GRANTED LEAVE TO ADD FRAUD CLAIMS REQUIRES THAT DEMURRER TO THOSE CLAIMS BE SUSTAINED.. 3

    II.  PLAINTIFFS FAIL TO STATE A BREACH OF FIDUCIARY DUTY CLAIM UPON WHICH RELIEF COULD BE GRANTED ................................................................................. 4

        A.  Plaintiffs Fail to State a Breach of Fiduciary Duty Claim against Chronicle and RC Development ....................................................................................................................... 4

        B.  Plaintiffs Fail to State a Breach of Fiduciary Duty Claim against RC Management ......... 8

        C.  Plaintiffs Fail to State a Breach of Fiduciary Duty Claim against Cobalt ........................ 10

    III. PLAINTIFFS' CLAIMS FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AND FOR AN ACCOUNTING SHOULD BE DISMISSED .......................................... 12

CONCLUSION ............................................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Martinez v. Welk Grp., Inc.*,
 907 F. Supp. 2d 1123 (S.D. Cal. 2012) ................................................................................. 6

**California Cases**

*Behnke v. State Farm General Ins. Co.*,
 196 Cal. App. 4th 1443 (2011) ............................................................................................. 4

*Berryman v. Merit Property Management, Inc.*,
 152 Cal. App. 4th 1544 (2007) ........................................................................................... 10

*Blank v. Kirwan*,
 39 Cal. 3d 311 (1985) .......................................................................................................... 3

*Comm. on Children's Television, Inc. v. General Foods Corp.*,
 35 Cal. 3d 197 (1983) ....................................................................................................... 5, 7

*Frances T. v. Village Green Owners Ass'n.*,
 42 Cal. 3d 490 (1986) ....................................................................................................... 5, 7

*Golden v. Dungan*,
 20 Cal. App. 3d 295 (1971) .................................................................................................. 2

*Harris v. Wachovia Mrtg., FSB*,
 185 Cal. App. 4th 1018 (2010) ............................................................................................. 3

*Janis v. Cal. State Lottery Com.*,
 68 Cal. App. 4th 824 (1998) ............................................................................................... 12

*LeVine v. Higashi*,
 131 Cal. App. 4th 566 (2005) ............................................................................................. 12

*O'Brien v. New Zealand Ins. Co.*,
 108 Cal. 227 (1895) .............................................................................................................. 9

*Osornio v. Weingarten*,
 124 Cal. App. 4th 304 (2004) ............................................................................................... 3

*Raven's Cove Townhomes, Inc. v. Knuppe Dev. Co.*,
 114 Cal. App. 3d 783 (1981) ................................................................................................ 5

*Rood v. Cnty. of Santa Clara*,
 113 Cal. App. 4th 549 (2003) ............................................................................................... 8

1

*Rope v. Auto-Chlor Sys. of Wash., Inc.*,
   220 Cal. App. 4th 635 (2013) .................................................................................................. 3

2

*Schermer v. Tatum*,

3
   245 Cal. App. 4th 912 (2016) .................................................................................................. 3

4  *Sklar v. Princess Properties Int'l*,
   194 Cal. App. 3d 1202 (1987) ................................................................................................. 9

5

*Vai v. Bank of Am. Nat'l Trust & Sav. Ass'n*,

6
   56 Cal. 2d 329 (1961) ............................................................................................................ 11

7

*Wooley v. Embassy Suites, Inc.*,

8
   227 Cal. App. 3d 1520 (1991) .......................................................................................... 8, 11

9  *Yue v. City of Auburn*,
   3 Cal. App. 4th 751 (1992) ...................................................................................................... 3

10

**California Statutes**

11

Cal. Civ. Code

12
   § 430.10(e) ............................................................................................................................... 3

13

Cal. Code Civ. Proc.

14
   § 472a(c) .................................................................................................................................. 3

15  California Unfair Competition Law ............................................................................................... 1

16  **Other Authorities**

17  *Restatement (Third) of Agency* § 1.01 ............................................................................................ 8

18  *Weil & Brown, Cal. Practice Guide: Civil Procedure before Trial*
   *(The Rutter Group 2009)* ....................................................................................................... 3

19

20

21

22

23

24

25

26

27

28

# INTRODUCTION

This case involves the fractional interests owned by Plaintiffs in The Ritz-Carlton Club and Residences, San Francisco ("RCC SF"). In their Third Amended Complaint ("TAC"), Plaintiffs "alleg[ed], among other things, that their interests have lost all, or essentially all, value as a result of an affiliation by RCC SF with Marriott Vacation Club ("MVC")" and, based on those allegations, "assert[ed] claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, violation of the California Unfair Competition Law ("UCL"), rescission, unjust enrichment and an accounting." September 11, 2017 Statement of Decision Re Defendants' Demurrer to [TAC] ("Statement of Decision") at 2. On Defendants' demurrer to the TAC, the Court sustained, without leave to amend, Defendants' (unopposed) demurrer to Plaintiffs' UCL claim (*id.* at 7)[1] and also sustained, with leave to amend, Defendants' demurrer to Plaintiffs' breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims. *Id.* at 2-4.[2]

Plaintiffs have now served a Fourth Amended Complaint ("FAC"). However, not only have Plaintiffs re-pled their breach of fiduciary duty-related claims, as the Statement of Decision permitted them to do, but they have also asserted two entirely new claims (constructive and promissory fraud). Because leave to amend to add fraud claims was neither sought nor granted, demurrer as to those claims should be sustained.

---

[1] With respect to Plaintiffs' accounting claim, the Court stated that, "[w]hile Defendants' Notice of Demurrer notices a demurrer to Plaintiffs' accounting claim, the issue is not raised in the briefing by either side in this matter and is, therefore, here treated as withdrawn." *Id.* at 7. Respectfully, Defendants did brief the accounting claim. *See* Defendants' Memorandum of Points and Authorities in Support of Demurrer to TAC at 8 (Point II: "Plaintiffs' Claims for Aiding and Abetting Breach of Fiduciary Duty and for an Accounting Should Be Dismissed") (emphasis added). For the Court's convenience, the argument Defendants made in their previous briefing under that point heading is repeated verbatim at Point III below. For their part, Plaintiffs offered no briefing in opposition to Defendants' argument or in support of their demand for an accounting; rather, they merely noted that their "prayer includes a request for an accounting and constructive trust…." *See* Plaintiffs' Opposition to Demurrer to TAC at 16. Thus, Defendants' demurrer to Plaintiffs' accounting claim should be granted as unopposed, without leave to amend.

[2] Plaintiffs' implied covenant of good faith and fair dealing claim and "overlapping" rescission and unjust enrichment claims were found to have been pled sufficiently to withstand demurrer. *Id.* at 4-6.

As for Plaintiffs' breach of fiduciary duty claims, the language that Plaintiffs have added in the FAC does nothing to cure the fatal deficiencies the Court noted in sustaining Defendants' demurrer to those claims as they were alleged in the TAC, namely, that:

- A case like this (where "Defendants are real estate developers and real property sellers [and] Plaintiffs are property buyers") "is not one where fiduciary relationships ordinarily exist";
- The company that managed the RCC SF (The Ritz-Carlton Management Company, LLC ("RC Management")) owed no fiduciary duty to the homeowners' association (RCC SF Association) because "[t]he Management Agreement here specifically acknowledges RC Management's status as an independent contractor";
- ["The Management Agreement] also expressly provides that no fiduciary relationship was being created between RC Management and RCC SF Association[, and c]ontractual provisions of this sort are enforceable [citing authority]";
- Even if Plaintiffs had pled facts plausibly establishing a fiduciary relationship between Plaintiffs and the RCC SF Association, "that duty could not extend to individual Association members such as Plaintiffs [citing authority]"; and
- "[A] principal-agency relationship [from which a fiduciary relationship might arise does not exist] between RCC SF Association and RC Management … [because a]n essential element [for such relationship] not present here is the element of control [citing authority]."

Statement of Decision at 3-4.

Indeed, as explained below, the language that Plaintiffs have added to the FAC only further highlights their fundamental misunderstanding of both the case law applicable to their claims and the documents that they acknowledge govern the relationships between and among the parties in this case. Accordingly, Defendants' demurrer to Plaintiffs' breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims should be sustained, this time without leave to amend. *See Golden v. Dungan,* 20 Cal. App. 3d 295, 299 (1971) ("When the deficiencies in a plaintiff's complaint have been raised on one or more occasions it is not an abuse of discretion to sustain a demurrer without leave to

amend."); *Schermer v. Tatum,* 245 Cal. App. 4th 912, 923 (2016) ("Leave to amend should not be granted where amendment would be futile.").

## STANDARD

A party against whom a complaint has been filed may object by demurrer to the pleading if "[t]he pleading does not state facts sufficient to constitute a cause of action." CAL. CIV. CODE § 430.10(e). "A demurrer tests the sufficiency of the complaint as a matter of law; as such, it raises only a question of law." *Osornio v. Weingarten,* 124 Cal. App. 4th 304, 316 (2004). "In reviewing the sufficiency of a complaint against a general demurrer, … the demurrer [is treated] as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of law." *Blank v. Kirwan,* 39 Cal. 3d 311, 318 (1985). On a demurrer, no evidentiary hearing is held because "[a] demurrer challenges only the legal sufficiency of the complaint, not the truth of its factual allegations or the plaintiff's ability to prove those allegations." *Yue v. City of Auburn,* 3 Cal. App. 4th 751, 757 (1992).

## ARGUMENT

**I. PLAINTIFFS' FAILURE TO HAVE SOUGHT OR BEEN GRANTED LEAVE TO ADD FRAUD CLAIMS REQUIRES THAT DEMURRER TO THOSE CLAIMS BE SUSTAINED**

When a demurrer is sustained by the trial court, "the court may grant leave to amend the pleading upon any terms as may be just." Cal. Code Civ. Proc. § 472a(c). However, "the pleader may amend only the cause of action as to which the demurrer was sustained." *Rope v. Auto-Chlor Sys. of Wash., Inc.,* 220 Cal. App. 4th 635, 654 (2013) (citing *Patrick v. Alacer Corp.,* 167 Cal. App. 4th 995, 1015 (2008)); *Harris v. Wachovia Mrtg., FSB,* 185 Cal. App. 4th 1018, 1023 (2010) ("Following an order sustaining a demurrer or judgment on the pleadings with leave to amend, the plaintiff may amend his or her complaint only as authorized by the court's order.") (citing *People ex rel. Dept. Pub. Wks. v. Clausen,* 248 Cal. App. 2d 770, 785 (1967)); *accord Weil & Brown, Cal. Practice Guide: Civil Procedure before Trial (The Rutter Group 2009)* § 7:148.1, p. 7(I)-59).

When a plaintiff, without leave of court, amends its complaint to add a cause of action, defendant's demurrer to such cause of action should be sustained. *See Harris,* 185 Cal. App. 4th at

1022-23 (finding "the demurrer was properly sustained" on the ground that "the cause of action had been added without leave of court and exceeded the scope of the court's order granting leave to amend the original complaint").

The Statement of Decision could not be clearer: Plaintiffs were permitted only to amend their "breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims … within thirty days of the date of th[e] Statement of Decision." *See* Statement of Decision at 4. Those were the only claims for which leave to amend was granted, and Plaintiffs neither sought nor were granted leave to add new claims, which had not been pled in the prior four iterations of the pleading. Nevertheless, Plaintiffs have, improperly and unilaterally, added two wholly new constructive and promissory fraud claims to the FAC. Defendants' demurrer to those claims should be sustained.[3]

## II. PLAINTIFFS FAIL TO STATE A BREACH OF FIDUCIARY DUTY CLAIM UPON WHICH RELIEF COULD BE GRANTED

Plaintiffs allege that four of the seven Defendants against which they have asserted a breach of fiduciary duty claim (R.C. Chronicle Building, L.P. ("Chronicle"), The Ritz-Carlton Development Company ("RC Development"), RC Management and The Cobalt Travel Company LLC ("Cobalt")) owed them a fiduciary duty that was breached. *See* FAC ¶¶ 167-69.[4] Plaintiffs' allegations are without merit.

### A. Plaintiffs Fail to State a Breach of Fiduciary Duty Claim against Chronicle and RC Development

Plaintiffs allege that, as "developers," Chronicle and RC Development owed fiduciary duties to

---

[3] Should Plaintiffs ultimately be permitted by the Court to plead their fraud claims, Defendants request a corresponding opportunity to demonstrate, through additional briefing, the deficiencies in those claims as currently pled. We would note that, if Plaintiffs are allowed to proceed with these claims notwithstanding their procedural and substantive defects, there will likely be significant case management implications. For example, all 64 Plaintiff interests would likely have to testify at trial to establish their reasonable reliance on the statement that they allege was fraudulent. *See, e.g., Behnke v. State Farm General Ins. Co.,* 196 Cal. App. 4th 1443, 1452-53 (2011) (elements of promissory fraud include "reasonable reliance by the promisee").

[4] Although Plaintiffs purport to assert their breach of fiduciary duty claim against "all Defendants," they do not even attempt to allege any basis for a fiduciary duty owed to them by Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc. or The Ritz-Carlton Sales Company, Inc.

them because those entities "retained control over the [RCC SF] Association." FAC ¶¶ 149, 167. Plaintiffs misunderstand the case law applicable to their claim.

While "a developer and his agents and employees who also serve as directors of an association [have a fiduciary duty to the association and, therefore,] … may not make decisions for the [a]ssociation that benefit their own interests at the expense of the association and its members" (*Raven's Cove Townhomes, Inc. v. Knuppe Dev. Co.,* 114 Cal. App. 3d 783, 799 (1981)), that fiduciary duty extends only to decisions for which the association is responsible. In *Raven's Cove,* for example, the dispute involved "defects in common area landscaping [and] … exterior walls of individual units." 114 Cal. App. 3d at 787. Landscaping and maintenance were homeowners' association responsibilities, and the association had, at the time the conduct in question occurred, been controlled by the developer and its employees. *Id.* at 788. The court found that the developer had breached its fiduciary duties to association members because it had failed to carry out <u>association duties</u> with the members' interests foremost. *Id.* at 802.

If the developer-controlled association has no decision-making power or authority with respect to the complained-of acts, then no fiduciary duty has been exercised, and a breach of fiduciary duty claim against the developer cannot lie. Put differently, if the decision is one that the developer is authorized to make <u>as developer and not as an association member</u>, then no fiduciary duty to association members is owed. *See Frances T. v. Village Green Owners Ass'n.,* 42 Cal. 3d 490, 513 (1986) (affirming trial court's ruling sustaining demurrer to breach of fiduciary duty claim and holding that "Plaintiff … had a dual relationship with defendants [who were both developers and homeowner association directors]. These two relationships and respective standards of care … must be analyzed separately …, and plaintiff has alleged no facts to show that these directors had a fiduciary duty to [make the decision that allegedly led to her injuries]."). This is because a seller (developer) and buyer do not ordinarily have a fiduciary relationship. *See Comm. on Children's Television, Inc. v. General Foods Corp.,* 35 Cal. 3d 197, 222 (1983) (affirming trial court's ruling sustaining demurrer to breach of fiduciary duty claim without leave to amend and holding that "[t]he relationship of seller to buyer is not one ordinarily vested with fiduciary obligations…. In such transactions, the seller is held to the mores

of the marketplace."); *Martinez v. Welk Grp., Inc.,* 907 F. Supp. 2d 1123 (S.D. Cal. 2012) (finding seller had no fiduciary duty to abate mold conditions in resort condominium).

Plaintiffs allege that, as a result of their supposed "control over the [RCC SF] Association," Chronicle and RC Development breached a fiduciary duty allegedly owed to Plaintiffs by "opting to stop selling fractional interests at the SF Ritz Residences," "merg[ing] the [MVC] … with the [RCC SF]," "[selling] unsold developer inventory to the [MVC]," and "ceasing … the sale of the Ritz fractional product, in favor of only selling the [MVC] points product." *See* FAC ¶ 5(a)-(d). Accepting as true, for purposes of this motion only, Plaintiffs' allegations that Chronicle and RC Development controlled the RCC SF Association, that Plaintiffs' characterization of events is accurate, and that Chronicle and RC Development made decisions concerning such events, Chronicle and RC Development owed no fiduciary duty to Association members because those were not decisions that the RCC SF Association had the power to make.

The limits on the RCC SF Association's authority are clearly set forth in the governing documents, which include the Amended and Restated Declaration of Covenants, Conditions and Restrictions for 690 Market Club ("CCRs"),[5] the RCC SF Owner's Association Operating Agreement ("Management Agreement") (discussed below), and the RCC SF Membership Program Affiliation Agreement ("Affiliation Agreement"). Those documents, which are all interrelated, were executed virtually concurrently at the time the RCC SF was formed in May/June 2006.[6] Under the CCRs, Declarant Chronicle retained important basic rights, including "the right to modify the number of Club Interests that may be created" (CCR, p. 2(H)), the right to use the Club Interest Project for commercial purposes (CCR § 2.6) and the right to rent unsold or unreserved Club Interest Units "to the general

---

[5] The CCRs are declarations by project developer Chronicle as "Declarant" that set out the general framework for the entire "Condominium Project," including the fractional interest program at issue here. CCRs, pp. 1-2. The CCRs, which the FAC quotes but does not provide, were attached as Exhibit B to the May 25, 2016 Declaration of Alice Chu ("Chu Decl."), which was submitted in support of Defendants' Memorandum of Points and Authorities in Support of Demurrer to the TAC. For the Court's convenience, another copy of the CCRs is submitted as Exhibit A to the Declaration of Ian S. Marx ("Marx Decl."), submitted herewith.

[6] The Amended and Restated CCRs were filed on July 6, 2007; however, the original CCRs were made on May 31, 2006.

6

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEMURRER TO FOURTH AMENDED COMPLAINT

public." CCR § 2.11(f), (g).[7]  By contrast, the RCC SF Association's duties were limited to "[t]he operation and administration of the Club Interest Project, and the maintenance and repair of the Club Interest Units and Common Furnishings, and any alternations or additions thereto." CCR §4.1.

It is undisputed that RCC SF Association has no authority to sell fractional interests or unsold inventory. *Cf.* FAC ¶ 13 (alleging that Chronicle is "the seller of Club Interest Units"); *Comm. on Children's Television,* 35 Cal. 3d at 222 (no fiduciary relationship between buyer and seller). Additionally, the Affiliation Agreement makes clear that all important discretionary decisions (including affiliating with new membership programs, e.g., MVC) are made solely by the "Program Manager," i.e., by Cobalt.[8]  *See, e.g.,* Affiliation Agreement (FAC Ex. E) §§ V-VII (giving Program Manager Cobalt the "exclusive" right to operate and manage reservations system and "sole discretion [to] elect to affiliate other locations with the Membership Program … [without the] "participat[ion] ... or consent" of the RCC SF Association and to "create a separate membership program, develop individual resort properties as residential, transient or other use, or enter into management agreements with resort properties without the approval of the … [RCC SF] Association") (emphasis added).

Accordingly, even if Chronicle and RC Development controlled the RCC SF Association as Plaintiffs assert, Plaintiffs cannot allege a breach of fiduciary duty claim against those entities because none of the decisions about which they complain were within the RCC SF Association's authority to make.  *See Frances T.,* 42 Cal. 3d at 513 (developer who is also association board member owes no fiduciary duty to members for decisions made as developer, not as board member). Nor can Plaintiffs state a breach of fiduciary duty claim against Chronicle and RC Development based on the allegation that they failed, in their supposed capacity as RCC SF Association representatives, to "supervise" Cobalt or to have "prevent[ed]" the MVC Affiliation.  *See* FAC ¶ 171(b), (h).  As noted, the governing documents expressly provide that the RCC SF Association has no authority to participate in, approve of, or object to, Cobalt's decisions.  *See* Affiliation Agreement (FAC Ex. E) §§ V-VII (giving Cobalt "sole

---

[7] Given that Plaintiffs were on notice that Club Interest Units could be rented to "the general public," their complaint that the MVC Affiliation "opened the club to transient usage" is not well taken. *See, e.g.,* FAC ¶ 5(b).

[8] *See* FAC ¶ 17 (identifying Cobalt as "Program Manager").

discretion [to] elect to affiliate other locations with the Membership Program" without the "participat[ion] .. or consent" of the RCC SF Association). Defendants' demurrer to Plaintiffs' breach of fiduciary duty claim against Chronicle and RC Development should be sustained.

### B. Plaintiffs Fail to State a Breach of Fiduciary Duty Claim against RC Management

Plaintiffs allege that RC Management owed fiduciary duties to Plaintiffs by "stepp[ing] into the shoes of the [RCC SF Association] pursuant to the Management Agreement" and "by assuming a high degree of control over Plaintiffs' separately deeded property interests." FAC ¶¶ 150-51, 168. Neither of these intertwined allegations has merit.

First, the Management Agreement explicitly recognizes RC Management's independent contractor status. *See* Management Agreement § 30 ("The parties hereby agree and acknowledge that the Operating Company is an independent contractor of the Association.").[9] In addition, the Management Agreement expressly provides that, in executing that agreement, no fiduciary relationship between RC Management and RCC SF Association was being created. *See id.* at § 2 ("[N]othing in this Agreement shall be construed as creating a partnership, joint venture, or any other relationship between the parties to this Agreement.").

Even without the relationship disclaimer and independent contractor designation, Plaintiffs' "stepp[ing] into the shoes" allegation (which is effectively a principal/agent argument), still fails, as the plain language of the Management Agreement shows that no principal/agent relationship was created between RC Management and the RCC SF Association. An agent is "one who 'act[s] on the principal's behalf and subject to the principal's control." *Restatement (Third) of Agency* § 1.01. Stated differently, "[a] relationship is not one of agency within the common law definition unless … the principal has the right throughout the duration of the relationship to control the agent's acts." *Id.* § 1.01, comment c; *see also van't Rood v. Cnty. of Santa Clara,* 113 Cal. App. 4th 549, 571-72 (2003) ("'In the absence of the essential characteristic of the right of control, there is no true agency….'") (citation omitted); *Wooley v. Embassy Suites, Inc.,* 227 Cal. App. 3d 1520, 1531 (1991) ("[O]ne essential of the principal/agent

---

[9] The Management Agreement, which the FAC quotes but does not provide, was attached as Exhibit A to the Chu Decl., which was submitted in support of Defendants' Memorandum of Points and Authorities in Support of Demurrer to the TAC. For the Court's convenience, another copy of the Management Agreement is submitted as Exhibit B to the Marx Decl., submitted herewith.

relationship is the right of control."); *see also Sklar v. Princess Properties Int'l,* 194 Cal. App. 3d 1202, 1206 (1987) ("The significant test of an agency relationship is the principal's right … to control the activities of the agent."). The Management Agreement gives the RCC SF Association <u>no</u> right to control how RC Management goes about its duties. To the contrary, the Management Agreement provides that:

- "The Association hereby releases any right of control over the method, manner or means by which the Operating Company performs its duties and responsibilities under this Agreement" (Management Agreement § 30);

- The Association delegates to the Operating Company "all of [its] power and authority … to the extent necessary to perform the Operating Company's duties and obligations under this Agreement" (*id.* at § 4);

- "The Operating Company …, to the exclusion of all other persons including the Club Association and its members, shall have all the powers and duties of the Board of Directors of the Club Association…" (*id.*); and

- In managing and administering the Club, the Operating Company shall have "full responsibility" and "the Board shall have no right to supervise or direct any personnel of or employed by the Operating Company, and the Board agrees not to attempt to so supervise or direct." *Id.* at § 4(A).

Nor can Plaintiffs' plausibly allege that RC Management owed them a fiduciary duty because it "assum[ed] a high degree of control over [their] separately deeded property interests." *See* FAC ¶ 151. It is undisputed that RC Management's authority came entirely from RCC SF Association. *See* Management Agreement § 4 ("Delegation of Authority"). But RCC SF Association's authority extended only to "[t]he operation and administration of the Club Interest Project, and the maintenance and repair of the Club Interest Units and Common Furnishings, and any alternations or additions thereto" (CCR §4.1), and it was only permitted to enter into individual units to provide "cleaning and maid service" and "maintenance and repairs." CCR §4.2(b), (o), (s). It is axiomatic that an entity can delegate no more authority than it possesses. *See O'Brien v. New Zealand Ins. Co.,* 108 Cal. 227, 231 (1895) (finding that person in question, "not having power to enter into contracts himself, … necessarily had no authority to delegate such a power to [another person]"). Thus, it is clear from the governing documents that RC Management did not have the "high degree of control" over Plaintiffs' fractional

interests that (if combined with a "confidential relationship," *see infra*) might give rise to a fiduciary duty.

Even more fundamentally, RC Management has no ability to transfer, convey, mortgage or other dispose of Plaintiffs' fractional interests. Those fractional interests are deeded interests in real property for which, as with other deeded real property, rights of alienation are held by the owners of record. Nor can RC Management rent, exchange or otherwise determine who may utilize those interests. That power is likewise vested in Plaintiffs, not the management company. In short, RC Management exercises no form of control over Plaintiffs' fractional interests on which a fiduciary duty could conceivably be based.

Finally, even if RC Management owed a fiduciary duty to the RCC SF Association under the Management Agreement, such duty would not extend to individual Association members, e.g., Plaintiffs. This was explained in *Berryman v. Merit Property Management, Inc.,* 152 Cal. App. 4th 1544 (2007). In that case, plaintiff homeowners brought breach of fiduciary duty and other claims against a management company with which their homeowners' associations had contracted, alleging that the company had overcharged them for documents and title transfer fees. In dismissing most of their claims (including breach of fiduciary duty), the court declared:

> The problem with these allegations is that the plaintiffs are not parties to the contract with [the management company] – the associations are. Even assuming the allegations are true, plaintiffs are at best incidental beneficiaries and have no standing to recover under the contract. [internal citation omitted] By the same logic, plaintiffs cannot use the contracts to bootstrap liability under [common law and statutory] … theories…. Permitting such recovery would completely destroy the principle that a third party cannot sue on a contract to which he or she is merely an incidental beneficiary.

*Id.* at 1553. Defendants' demurrer to Plaintiffs' breach of fiduciary duty claim against RC Management should be sustained.

### C. Plaintiffs Fail to State a Breach of Fiduciary Duty Claim against Cobalt

Plaintiffs allege that Cobalt owed fiduciary duties to Plaintiffs <u>either</u> as agent or sub-agent under the Management Agreement and the Affiliation Agreement <u>or</u> because Cobalt is "in charge of managing and administering Plaintiffs' use rights for their separately deeded property," i.e., because of its role as

"Program Manager of the [RCC] Membership Program." FAC ¶¶ 160-63. Neither of these allegations provides a basis for finding a fiduciary duty owed by Cobalt.

In support of their agent/sub-agent theory of fiduciary duty, Plaintiffs allege that, pursuant to the Management Agreement, RC Management delegated "managerial authority and control over Plaintiffs' use of their Club Interest Units" to Cobalt, which Cobalt then exercised through the Affiliation Agreement. *Id.* at ¶ 159. But Plaintiffs' inability to allege that RC Management is their agent necessarily means that they cannot allege Cobalt to be RC Management's sub-agent. *See* Point II(B), *supra.* Moreover, the right of control is an "essential of the principal/agent relationship" (*Wooley,* 227 Cal. App. 3d at 1531), and the governing documents gave the RCC SF Association no right to control Cobalt's actions. *See* Affiliation Agreement (FAC Ex. E) §§ V-VII (describing Cobalt's unfettered and "exclusive" right to, among other things, operate and manage the reservation system, affiliate with other locations and decide whether to "create a separate membership program"); *see also* CCR § 4.10 (providing that "[t]he operation and administration of the Membership Program shall be vested in the Program Manager"). Thus, Plaintiffs cannot plausibly allege a fiduciary duty by Cobalt based on an agency theory.

Plaintiffs' "alternative" fiduciary duty theory fares no better. Plaintiffs allege that Cobalt exercises "near exclusive control … over [their] Fractional Units" because it "manag[es] and administer[s] Plaintiffs' use rights, that is, Cobalt operates the reservation system that Plaintiffs use to reserve stays in their own units or "in units that are equivalent to their separately deeded property." *See* FAC ¶¶ 160-63. In making this allegation, Plaintiffs rely heavily on *Vai v. Bank of Am. Nat'l Trust & Sav. Ass'n,* 56 Cal. 2d 329, 338 (1961), which states that "[t]he key factor in the existence of a fiduciary relationship lies in control by a person over the property of another"). *See* FAC at ¶¶ 98, n.3 & 151.

Plaintiffs misread *Vai. Vai* does not hold that a fiduciary duty arises any time one person has "control … over the property of another." The parties must also have a "confidential relationship," which can arise out of "many common associations – principal and agent, attorney and client, business partners, to name a few." *Vai,* 56 Cal. 2d at 338 (emphasis added); *see also id.* (noting that confidential relationships can also arise "'where there is a family relationship or one of friendship or such a relationship of confidence as that which arises between physician and patient or priest and penitent'")

11
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEMURRER TO FOURTH AMENDED COMPLAINT

(quoting *Rest. Trusts 2d* § 2, comment b). Plaintiffs' inability to allege a principal/agent relationship between RCC SF Association and Cobalt renders them unable to allege a fiduciary duty owed by Cobalt under a "control over property" theory. In addition, like RC Management, Cobalt has no ability to transfer, convey, mortgage or otherwise dispose of Plaintiffs' fractional interests. As noted above, those fractional interests are deeded interests in real property for which, as with other deeded property, rights of alienation are held by the owners of record. Like RC Management, Cobalt cannot rent, exchange or otherwise determine who may utilize Plaintiffs' interests. That power likewise is vested in Plaintiffs, not Cobalt. Thus, like RC Management, Cobalt exercises no form of control over Plaintiffs' fractional interests on which a fiduciary duty could conceivably be based. Defendants' demurrer to Plaintiffs' breach of fiduciary duty claim should be sustained in its entirety.

### III.  PLAINTIFFS' CLAIMS FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AND FOR AN ACCOUNTING SHOULD BE DISMISSED[10]

Plaintiffs allege two additional claims in connection with their breach of fiduciary duty claim: aiding and abetting breach of fiduciary duty (*see* FAC ¶¶ 174-77) and a related claim for an accounting. *See id.* at ¶¶ 196-98 (demanding an accounting to ascertain "the funds or property" allegedly "acquired by Defendants in the course of the … fiduciary relationships"). Plaintiffs' inability to state a breach of fiduciary duty claim renders them unable to allege either of these additional claims. *See LeVine v. Higashi,* 131 Cal. App. 4th 566, 574 (2005) (affirming trial court's ruling sustaining demurrer to tort claim and holding that "aiding and abetting … liability depends upon the actual commission of a tort."); *see also Janis v. Cal. State Lottery Com.,* 68 Cal. App. 4th 824, 833 (1998) (affirming trial court's ruling sustaining demurrer to complaint and holding that "[a] right to an accounting is derivative; it must be based on other claims."). Therefore, demurrer should be sustained with respect to Plaintiffs' aiding and abetting breach of fiduciary duty and accounting claims.

---

[10] Except for citing to the FAC rather than the TAC, this section repeats verbatim the argument that was made at p. 8 of Defendants' Memorandum of Points and Authorities in Support of Demurrer to [the TAC]. *See* n.1, *supra.*

**CONCLUSION**

For all of the foregoing reasons, Defendants respectfully request that demurrer be sustained as to Plaintiffs' constructive and promissory fraud, breach of fiduciary duty, aiding and abetting breach of fiduciary duty and accounting claims.

Dated: November 17, 2017                    Respectfully submitted,

                                            GREENBERG TAURIG, LLP


By:    */s/ William J. Goines*
        William J. Goines
        Attorneys for Defendants