# EXHIBIT 4

1  KURT A. KAPPES (SBN 146384)
   GREENBERG TRAURIG, LLP
2  1201 K Street, Suite 1100
   Sacramento, CA 95814
3  Telephone: (916) 442-1111
   Facsimile (916) 448-1709
4  kappesk@gtlaw.com

5  PHILIP R. SELLINGER (SBN 226468)
   IAN S. MARX
6  (admitted *pro hac vice*)
   GREENBERG TRAURIG, LLP
7  500 Campus Drive
   Florham Park, NJ 07932-0677
8  Telephone: (973) 360-7918
   Facsimile: (973) 295-1318
9  sellingerp@gtlaw.com

10  Attorneys for Defendants
    Marriott Vacations Worldwide Corporation,
11  Marriott Ownership Resorts, Inc., The Ritz-Carlton
    Development Company, Inc., The Ritz-Carlton Sales
12  Company, Inc., The Ritz-Carlton Management Company,
    LLC, and The Cobalt Travel Company, LLC

13
                    **UNITED STATES DISTRICT COURT**
14
                    **EASTERN DISTRICT OF CALIFORNIA**
15

16  THOMAS F. REISER JR. and LINDA T.        CASE NO. 2:16-cv-00237-MCE-CKD
    REISER, individually and as Trustees of the
17  Tom and Linda Reiser Living Trust Dated June
    20, 2006; KEITH BRIAR and BEVERLY         **MEMORANDUM OF POINTS AND**
18  BRIAR, individually and as Trustees of the  **AUTHORITIES IN SUPPORT OF**
    Keith and Beverly Briar Family Trust Dated  **DEFENDANTS' MOTION TO DISMISS**
19  December 21, 2004; ANTHONY J. BATES,       **SECOND AMENDED COMPLAINT**
    individually and as Trustee of the Anthony J.  **UNDER FED. R. CIV. P. 12(b)(6)**
20  Bates Revocable Trust; AL BRENDE;
    SHANNON FRAZIER and RUSSELL               Hearing:
21  FRAZIER, individually and as Trustees of the  ‾‾‾‾‾‾‾
    Frazier Family Revocable Trust Dated January
22  30, 2008; JASON M. GIRZADAS and           Date:   July 28, 2016
    VIRGINIA H. GIRZADAS; GEORGE M.           Time:   2:00 p.m.
23  HEWITT and ROSE A. HEWITT; BRETTON        Dept:   Courtroom 7
    H. JAMESON and AMY M. JAMESON;            Judge:  Hon. Morrison C. England, Jr.
24  BRENT JONES and DANA JONES,
    individually and as Trustees of the 1990 Jones
25  Living Trust; JENNIFER KAPLAN and
    ALEXANDER BUSANSKY; STEPHEN F.
26  LIM; MICHAEL LUNDAHL and VERLYN
    LUNDAHL; MARK MARKLAND and TRICIA
27  MARKLAND, individually and as Trustees of

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

1  the Markland Family Trust; CRAIG MATTSON;
   RICHARD T. McGREW; SUSAN L. MOYER,
2  individually and as Trustee of the Susan Moyer
   Living Trust; CURTIS W. OTTLEY and
3  JENNIFER OTTLEY; CHARLES F. PERRELL
   and ELIZABETH A. GUILLAUMIN,
4  individually and as Trustees of the Charles F.
   Perrell and Elizabeth A. Guillaumin Living Trust
5  Dated June 26, 1998; CORNELIUS H.
   TIEBOUT and JULIE A. TIEBOUT,
6  individually and as Trustees of the Tiebout
   Family Trust; CRAIG S. TYSDAL and JANET
7  S. TYSDAL, individually and as Trustees of the
   Tysdal Family Trust; ANNETTE WELTON and
8  PATRICK WELTON, individually and as
   Trustees of the Welton Family Trust; and
9  GREGORY YONKO and JANICE YONKO,
   individually and as Trustees of the Yonko
10 Family Living Trust;

11         Plaintiffs,

12 v.

13 MARRIOTT VACATIONS WORLDWIDE
   CORPORATION, a Delaware corporation;
14 MARRIOTT OWNERSHIP RESORTS, INC., a
   Delaware corporation d.b.a. Marriott Vacation
15 Club International; RITZ-CARLTON
   DEVELOPMENT COMPANY, INC., a
16 Delaware corporation; RITZ-CARLTON SALES
   COMPANY, INC., a Delaware corporation;
17 RITZ-CARLTON MANAGEMENT
   COMPANY, LLC, a Delaware limited liability
18 company; THE COBALT TRAVEL
   COMPANY, LLC, a Delaware limited liability
19 company; and DOES 1 THROUGH 50,

20         Defendants.

21

22

23

24

25

26

27

28

Case No. 2:16-CV-00237-MCE-CKD

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

## **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 1

II.    STATEMENT OF FACTS ................................................................................... 2

     A.    The Governing Documents ..................................................................... 2

          1.    The Purchase Agreement ........................................................... 3
          2.    The Affiliation Agreement......................................................... 4
          3.    The Club Declaration ................................................................ 4
          4.    The Shared Facilities Use Agreement........................................ 5
          5.    The California Public Report ..................................................... 5
          6.    Operating Agreement................................................................. 5
          7.    Quality Assurance Checklist...................................................... 6

     B.    Governing Law; Terms Survive Closing .................................................. 6

III.   STANDARD......................................................................................................... 6

IV.   ARGUMENT ...................................................................................................... 8

     A.    Plaintiffs Fail to State Breach of Fiduciary Duty, Aiding and Abetting and UCL Claims upon Which Relief Could Be Granted.................................. 8

          1.    Plaintiffs fail to state a breach of fiduciary duty claim........................................ 8
          2.    Plaintiffs fail to state a UCL claim ................................................ 11

              a.    Plaintiffs' "unlawful" prong claim fails................................... 11
              b.    Plaintiffs' "unfair" prong claim fails ..................................... 12

     B.    Plaintiffs' Rescission, Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing Claims Should Also Be Dismissed for Failure to State Claims upon Which Relief Could Be Granted........................................ 14

          1.    Plaintiffs have alleged no "mistake of fact" that would support rescission.......... 14
          2.    No breach of contract or breach of the implied covenant claims have been stated ................................................................................... 16

              a.    De-Annexing was contractually permitted ............................... 17
              b.    Defendants' motion to dismiss the "Underselling" portion of Plaintiffs' breach of contract claim should have been granted as unopposed ................................................................................ 18
              c.    Neither the MVC Affiliation, De-Annexing nor Underselling breached the implied covenant of good faith and fair dealing because they were all contractually permitted ........................................... 19

V.    CONCLUSION.................................................................................................... 21

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*In re Apple In-App Purchase Litig.*,
  855 F. Supp. 2d 1030 (N.D. Cal. 2012) ............................................................ 20

*Ascon Props., Inc., v. Mobil Oil Co.*,
  866 F. 2d 1149 (9th Cir. 1989) ...................................................................... 7

*Ashcroft v. Iqbal*,
  129 S.Ct. 1937 (2009) ................................................................................. 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................... 7

*Cahill v. Liberty Mut. Ins. Co.*,
  80 F. 3d 336 (9th Cir. 1996) ........................................................................ 6

*Cotta v. Robinson*,
  2013 WL 4402961 (E.D. Cal. Aug. 15, 2013) ..................................................... 7

*CRV Imperial-Worthington, LP v. Gemini Ins. Co.*,
  770 F. Supp. 2d 1074 (S.D. Cal. 2010) ........................................................... 15

*Daly v. United Healthcare Ins. Co.*,
  2010 WL 4510911 (N.D. Cal. Nov. 1, 2010) ..................................................... 20

*Fox v. Cnty. of Tulare*,
  2013 WL 5295674 (E.D. Cal. Sept. 18, 2013) .................................................... 7

*Friant Water Auth. v. Jewell*,
  2014 U.S. Dist. LEXIS 166399 (E.D. Cal. Dec. 1, 2014) ...................................... 7

*Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist.*,
  2008 WL 877970 (E.D. Cal. Mar. 28, 2008) ..................................................... 9

*Hoyt v. Marriott Vacations Worldwide Corp.*,
  2014 WL 509903 (D. Minn. Feb. 7, 2014) ....................................................... 13

*Intri-Plex Techs v. Crest Grp., Inc.*,
  499 F. 3d 1048 (9th Cir. 2007) ..................................................................... 7

*Junod v. Mortg. Elec. Registration Sys.*,
  584 F. App'x 465 (9th Cir. 2014) .................................................................. 12

*Knievel v. ESPN*,
  393 F. 3d 1068 (9th Cir. 2005) ..................................................................... 6

*Lennar Mare Island, LLC v. Steadfast Ins. Co.*,
  2014 WL 2002204 (E.D. Cal. May 15, 2014) ........................................... 7, 16, 20

*Martinez v. Welk Grp., Inc.*,
  907 F. Supp. 2d 1123 (S.D. Cal. 2012) ........................................................... 11

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

*Metropolitan Life Insurance Co. v. Kase*,
   718 F. 2d 306 (9th Cir. 1983) ................................................ 15, 16

*Miron v. Herbalife Int'l, Inc.*,
   11 Fed. Appx. 927 (9th Cir. 2001) ................................................ 18

*Nolen v. Lufkin Indus., Inc.*,
   469 F. App'x 857 (Fed. Cir. 2012) ................................................ 7

*Quinn v. Fresno Cty.*,
   2012 WL 2839648 (E.D. Cal. July 10, 2012) ................................................ 7

*Reiser v. Marriott Vacations Worldwide Corp.*,
   2016 WL 1720741 (E.D. Cal. Apr. 29, 2016) ............................ 1, 2, 8, 9, 11, 16, 17, 19, 20

*School Dist. No. 1 J Multnomah Cnty. v. AC&S Inc.*,
   5 F.3d 1255 (9th Cir. 1993) ................................................ 7

*Solis v. City of Fresno*,
   2012 WL 868681 (E.D. Cal. Mar. 13, 2012) ................................................ 1

*Thompson v. Residential Credit Sols., Inc.*,
   2012 WL 260357 (E.D. Cal. Jan. 25, 2012) ................................................ 12

*United States v. Westlands Water Dist.*,
   134 F. Supp. 2d 1111 (E.D. Cal. 2001) ................................................ 7

*Young v. Facebook, Inc.*,
   790 F. Supp. 2d 1110 (N.D. Cal. 2011) ................................................ 18

*YTY Indus. SDN. BHD. v Dow Chem. Co.*,
   2009 WL 3633871 (C.D. Cal. Oct. 28, 2009) ................................................ 14, 15

**State Cases**

*Berryman v. Merit Property Management, Inc.*,
   152 Cal. App. 4th 1544 (2007) ................................................ 11

*Board of Port Commrs. v. Williams*,
   9 Cal. 2d 381 (1937) ................................................ 18

*Careau & Co. v. Sec. Pac. Bus. Credit Inc.*,
   222 Cal. App. 3d 1371 (1990) ................................................ 18

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*,
   2 Cal. 4th 342 (1992) ................................................ 19, 20

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ................................................ 13

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   68 Cal. App. 4th 445 (1998) ................................................ 8

*Comm. on Children's Television, Inc. v. General Foods Corp.*,
   35 Cal. 3d 197 (1983) ................................................ 10

*Crocker-Anglo Nat'l Bank v. Kuchman*,
   224 Cal. App. 2d 490 (1964) ................................................ 14

*Frances T. v. Village Green Owners Ass'n.*,
  42 Cal. 3d 490 (1986) ...................................................................................... 10

*Gerdlund v. Electronic Dispensers Int'l*,
  190 Cal. App. 3d 263 (1987) ........................................................................... 20

*Hedging Concepts, Inc. v. First Alliance Mortg. Co.*,
  41 Cal. App. 4th 1410 (1996) .......................................................................... 14

*Mosher v. Mayacamas Corp.*,
  215 Cal. App. 3d 1 (1989) ............................................................................... 15

*Nein v. HostPro, Inc.*,
  174 Cal. App. 4th 833 (2009) .......................................................................... 20

*Paramount Petroleum Corp. v. Super. Ct. (Buildings Materials Corp. of Am.)*,
  227 Cal. App. 4th 226 (2014) ..................................................................... 15, 16

*Raven's Cove Townhomes, Inc. v. Knuppe Dev. Co.*,
  114 Cal. App. 3d 783 (1981) ........................................................................... 10

*Samura v. Kaiser Found. Health Plan, Inc.*,
  17 Cal. App. 4th 1284 (1993) .......................................................................... 12

*Smith v. State Farm Mut. Auto. Ins. Co.*,
  93 Cal. App. 4th 700 (2001) ............................................................................ 11

*South Bay Chevrolet v. General Motors Acceptance Corp.*,
  72 Cal. App. 4th 861 (1999) ............................................................................ 12

*Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*,
  100 Cal. App. 4th 44 (2002) ............................................................................ 19

*Third Story Music, Inc. v. Waits*,
  41 Cal. App. 4th 798 (1995) ............................................................................ 20

*White v. County of Sacramento*,
  31 Cal. 3d 676 (1982) ...................................................................................... 18

*Wolf v. Walt Disney Pictures & Television*,
  162 Cal. App. 4th 1107 (2008) ........................................................................ 19

**State Statutes**

Cal. Bus. & Prof. Code § 11226 ........................................................................... 12

Cal. Bus. & Prof. Code § 11234 ............................................................................. 5

Cal. Bus. & Prof. Code § 11244 ........................................................................... 12

Cal. Bus. & Prof. Code § 11255 ........................................................................... 12

Cal. Bus. & Prof. Code § 17204 ........................................................................... 12

Cal. Civ. Code § 1577 .......................................................................................... 14

**Rules**

Cal. L.R. 230(j) ....................................................................................................... 7

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 1, 2, 7, 8

**Other Authorities**

59 A.L.R. 809 ................................................................................................................ 14

Restatement (Second) of Contracts § 151 ...................................................................... 15

Rutter, *Cal. Prac. Guide Real Prop. Trans. Ch. 11-G ("Rescission")*, 2.b.(2)(a) .................................... 14

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Development Company, Inc. ("RCDC"), The Ritz-Carlton Sales Company, Inc., The Ritz-Carlton Management Company, LLC ("RC Management") and The Cobalt Travel Company, LLC ("Cobalt") (collectively, "Defendants") submit this Memorandum of Points and Authorities in support of their motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), the claims that were previously dismissed without prejudice in *Reiser v. Marriott Vacations Worldwide Corp.,* 2016 WL 1720741 (E.D. Cal. Apr. 29, 2016) (*Reiser* or the "Order") as well as those that were not dismissed. The latter claims can also be dismissed pursuant to the Court's inherent power to modify its rulings.

## I.    INTRODUCTION

This case involves the fractional interests in condominium units at The Ritz-Carlton Club, Lake Tahoe ("Lake Tahoe Ritz-Carlton") that Plaintiffs purchased from RCDC (as "Developer") beginning in 2009. Plaintiffs allege that, in 2011, when sales of fractional interests at the Lake Tahoe Ritz-Carlton "stalled as the economy deteriorated" (Second Amended Complaint ("SAC") ¶ 2), RCDC improperly suspended further sales efforts, "de-annexed" units remaining in inventory, and then sold those units as regular (non-fractionalized) condominiums. *Id.* at ¶ 4. Plaintiffs further allege that, in 2012, The Ritz-Carlton Destination Club (of which they are members) became affiliated with the allegedly "less exclusive" Marriott Vacation Club Destinations ("MVC"), giving MVC members access to "the superior Ritz-Carlton facilities." *Id.* at ¶¶ 58, 60. Plaintiffs allege that these actions ("De-Annexing," "Underselling"[1] and the "MVC Affiliation") have, among other things, caused their fractional interests to lose all value and their annual maintenance fees to increase.[2]

Based on these allegations, Plaintiffs have asserted claims for breach of fiduciary duty, violation of the California Unfair Competition Law ("UCL") and for aiding and abetting allegedly wrongful conduct, as well as for rescission of their purchase contracts, breach of contract and breach of the implied covenant of good faith and fair dealing. These are the same claims that were asserted in the

---

[1] Defendants dispute Plaintiffs' "Underselling" allegation but accept it as true for purposes of this motion.

[2] Plaintiffs state that they have brought this action on "information and belief." *See* SAC at p. 3; *cf. Solis v. City of Fresno,* 2012 WL 868681, at *8 (E.D. Cal. Mar. 13, 2012) ("In the post-*Twombly* and *Iqbal* era, pleading on information and belief, without more, is insufficient to survive a motion to dismiss for failure to state a claim.").

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

First Amended Complaint ("FAC") and that were considered in the Order.  Specifically, the Court granted Defendants' motion to dismiss Plaintiffs' breach of fiduciary duty, UCL violation and aiding and abetting claims and denied Defendants' motion to dismiss Plaintiffs' rescission, breach of contract and breach of the implied covenant of good faith and fair dealing claims.  On this motion, Defendants seek the with-prejudice dismissal of all six claims.

Regarding the previously-dismissed claims, although Plaintiffs have added some allegations, they are still deficient.  For example, Plaintiffs have added pages of allegations to their breach of fiduciary duty claim, yet it is still based on the same flawed theory.  Moreover, Plaintiffs ignore that the primary document on which the claim is premised expressly disclaims any fiduciary relationship.  Thus, the Court's earlier observation remains true, namely, that, while Plaintiffs may have pled a fiduciary relationship between themselves and the Club Owners' Association, "[t]hat does not … suffice to show a fiduciary bond with Defendants, who are one step removed from any link that Plaintiffs may have had with the Association."  *Reiser,* 2016 WL 1720741, at *7.  Because Plaintiffs' breach of fiduciary duty claim fails, so, too, does their aiding and abetting claim.  *See id.* at *9.  Plaintiffs' UCL claim also remains deficient.  That claim is based solely on the allegation that Defendants violated a state law prohibiting the "encumber[ing]" of accommodations of a time-share plan.  SAC ¶ 114.  But the MVC Affiliation is not an "encumbrance" under the statute; thus, Plaintiffs' UCL claim fails as a matter of statutory interpretation.

Plaintiffs' other three claims also do not state claims upon which relief could be granted.  Whether this aspect of Defendants' motion is considered under Fed. R. Civ. P. 12(b)(6) or treated as a motion for reconsideration based on the Court's inherent power to modify its decisions, Defendants request that it be granted and that, along with their other three claims, Plaintiffs' rescission, breach of contract and breach of implied covenant claims be dismissed, this time with prejudice.

## II.   STATEMENT OF FACTS

### A.   The Governing Documents

From April 2009 to April 2012, Plaintiffs purchased from RCDC undivided fractional (1/12) interests in the Lake Tahoe Ritz-Carlton, a condominium development located in Truckee, California.  SAC ¶¶ 25-48.  Each Plaintiff's purchase is memorialized in, and governed by, several documents,

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

1  including a Purchase Agreement ("PA"), an Affiliation Agreement ("AA"), a Declaration of Covenants,

2  Conditions and Restrictions ("Club Declaration"), a Shared Facilities Use Agreement ("SFU"), a Final

3  Time-Share Plan Public Report that the California Bureau of Real Estate ("CalBRE") issued on June 12,

4  2008 (and amended in May 2010) with respect to the Lake Tahoe Ritz-Carlton ("California Public

5  Report") and a Highlands Resort Club Association Operating Agreement ("Operating Agreement"),

6  which is Exhibit D to the Club Declaration (collectively, the "Contract").[3]   In executing a PA, each

7  Plaintiff expressly acknowledged having reviewed and understood each of the above documents and

8  having "accepted [those documents] as part of [the PA]."  PA ¶ 25(c), (d); ¶ 29.

9              **1.    The Purchase Agreement**

10         The PA describes the specific ownership interest being conveyed.  PA ¶ 1.  An added benefit of

11  fractional interest ownership is membership in the Ritz-Carlton Membership Program ("Membership

12  Program"), through which Plaintiffs can exchange their stay at the Lake Tahoe Ritz-Carlton for a stay at

13  another resort with which the program is affiliated.  SAC ¶ 57; *see also* PA ¶ 12.

14         The PAs expressly permit affiliation with other clubs.  *See id.* at ¶ 13 ("***The Program Manager***

15  ***has reserved the right to affiliate additional resorts … from time to time.  Purchasers should refer to***

16  ***the Affiliation Agreement for details***….") (emphasis added).

17         The PAs caution that fractional interests should be purchased for "personal use" only and not for

18  an expectation of "***economic benefits or advantages***…." *Id.* at ¶ 18 (emphasis added).  The PAs advise

19  that the value of the fractional interests being conveyed could change post-sale and that no pre-sale

20  representations concerning value (either increases or decreases) have been authorized.  *See id.* at ¶ 19(a)

21  ("Purchaser acknowledges that Seller has not authorized any representation as to the ***investment value***

22  ***of a Club Interest*** and has specifically not authorized the representation of … the ***possibility or***

23  ***probability of profit or loss*** … which may result from the purchase of the Club Interest.") (emphasis

24  added).

25  ///

26

27  ───────────────
[3]  The Court can, as it did on Defendants' earlier motion, consider these documents, copies of which are

28  attached to the February 12, 2016 and March 17, 2016 Declarations of Jeannette Greene (Docs. 5-2 and

11-1, respectively), which were submitted in connection with the earlier motion.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

### 2. __The Affiliation Agreement__

The Affiliation Agreement evidences the Lake Tahoe Ritz-Carlton's affiliation with the Membership Program. It also describes Program Manager Cobalt's extensive authority. For example, the Affiliation Agreement provides that the Program Manager may, "*in its sole discretion, elect to affiliate* other locations with the Membership Program as Member Clubs or Associated Clubs from time to time." *See* AA § 7.1(a). The Affiliation Agreement specifically states that "*the Club Owners' Association is not entitled to participate in or consent to the Program Manager's [affiliation] decision*"). *Id.* (emphasis added). The agreement explains that affiliating with other resorts "*will result in the addition of new Members … who … will compete with existing … Members … in making reservations for the use of available accommodations and facilities . . . including Residences at [the Lake Tahoe Ritz-Carlton].*" *Id.* at 7.1(a) (emphasis added).

Under the Affiliation Agreement, the Program Manager also

> … may, *in its sole discretion, create a separate membership program, develop individual resort properties as residential, transient or other use*, or enter into management agreements with resort properties without the approval of the Developer, [Members'] Association or Operator….

*Id.* at § 7.1(b) (emphasis added); *see also id.* at § 7.3(d) ("The Program Manager may, *in its sole discretion, delete an existing Member Club*….") (emphasis added).[4]

### 3. __The Club Declaration__

The Club Declaration obliges the Club Owners' Association "to use its best efforts to engage and maintain a reputable firm as the Operating Manager for the Club Interest Development and as Program Manager for the operation of the Membership Program, pursuant to an Operating Agreement … substantially in the form attached hereto as <u>Exhibit D</u>." Club Declaration § 4.3; *see also id.* at § 4.9 ("The operation and administration of the Membership Program shall be *vested in the Program Manager*.") (emphasis added).

The Club Declaration also describes the circumstances under which particular condominium units at the Lake Tahoe Ritz-Carlton can be "de-annexed" from the Membership Program, i.e., converted into private condominium units in which no fractional ownership interests are sold.

---

[4] Each owner of a fractional interest in a unit in the Lake Tahoe Ritz-Carlton (e.g., each Plaintiff) "is deemed to have consented to the terms and conditions of [the Affiliation] Agreement…." *Id.* at § 1.2.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

1  Specifically, it gives RCDC, as Developer, discretion to de-annex "any Club Interest Unit in which the

2  Developer owns all the Club interests." *Id.* at §§ 8.2(b), 8.3.[5]

3  ### 4.   The Shared Facilities Use Agreement

4  The SFU, which was executed in 2007, evidenced RCDC's agreement to share certain facilities

5  and services with other hotel and resort properties that were being developed on nearby parcels of

6  property. *See* SFU, pp. 1-3. Describing the Lake Tahoe Ritz-Carlton's anticipated configuration, the

7  SFU stated that the Lake Tahoe Ritz-Carlton, which is located on the western part of the property, was

8  "planned to include . . . 78 . . . two, three and four bedroom Condominium Units." *Id.* at § 3.01.

9  Exactly how much of the Lake Tahoe Ritz-Carlton would be sold as fractional interests was left open.

10  *See id.* (providing that "[t]he present plan of development . . . contemplates that *some or all* of the

11  Condominium Units . . . will be subjected to [the] fractional ownership program") (emphasis added).

12  ### 5.   The California Public Report

13  Under the Time-Share Act, CalBRE must issue a public report in connection with all new time-

14  share plan offerings governed by the Act. Cal. Bus. & Prof. Code § 11234. The California Public

15  Report issued for the Lake Tahoe Ritz-Carlton advises prospective purchasers that "THIS TIME-

16  SHARE PROJECT MAY BE AFFILIATED WITH ONE OR MORE EXCHANGE PROGRAMS

17  WHEREBY TIME-SHARE OWNERS MAY VOLUNTARILY EXCHANGE THE RIGHT TO USE

18  AND OCCUPY ACCOMMODATIONS AND FACILITIES IN THIS PROJECT WITH

19  ACCOMMODATIONS IN OTHER PROJECTS." California Public Report, p. 4 (capitalization in

20  original).

21  ### 6.   Operating Agreement

22  As contemplated in the Club Declaration, the Association entered into an Operating Agreement

23  with RC Management under which RC Management (as "Management Company") is "to act on behalf

24  of the Association and its members as the exclusive managing entity of the Condominium and to

25  manage the daily affairs of the Condominium and the [fractional ownership interest plan." *See*

26

27

28  ---
[5] Plaintiffs acknowledge that the de-annexed units came from "unsold 'developer inventory.'" SAC ¶ 2.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Operating Agmt. (Mar. 17, 2016 Greene Decl. Ex. A) § 2.  The Operating Agreement expressly provides that:

> In taking any action under this Agreement, the Management Company shall be acting on behalf of the Association, and <u>nothing in this Agreement shall be construed as creating a partnership, joint venture, or any other relationship between the parties to this Agreement</u>.

*Id.* (emphasis added).

The Operating Agreement authorized RC Management to "[e]ngage a Program Manager through an [A]ffiliation [A]greement" who would have "<u>the broadest possible</u> delegation of authority" "to manage and administer the [RC Club Membership Program]."  *Id.* at § 4(S) (emphasis added).

### 7.    Quality Assurance Checklist

"Concurrently with the execution of the Purchase Contract," Plaintiffs individually initialed items on a Quality Assurance Checklist to "confirm [their] understanding regarding matters that might have influenced a decision to purchase."  Quality Assurance Checklist ("QAC"), attached to the Feb. 12, 2016 Greene Decl. as Exhibit F, p. 1.[6]  Among other things, Plaintiffs confirmed their understanding that "[a]ssessments are subject to change" (*id.* at 3, item 10), that "no representations have been made as to investment [or] resale potential" (*id.* at 4, item 18), and that their purchase was being made "for personal use and not for investment purposes."  *Id.*

### B.    Governing Law; Terms Survive Closing

The Contract is "governed by, and … construed in accordance with the laws of the State of California," and all of its "terms and provisions … survive the closing."  PA ¶¶ 20, 26.

## III.    STANDARD

While allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party (*Cahill v. Liberty Mut. Ins. Co.,* 80 F. 3d 336, 337-38 (9th Cir. 1996)), the court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft*

---

[6]  Although not technically part of the Contract, the QAC's authenticity is not in dispute, and it is relevant to Plaintiffs' allegations concerning increases in their annual fees and their fractional interests' resale potential.  *See Knievel v. ESPN,* 393 F. 3d 1068, 1076 (9th Cir. 2005) (court may consider extrinsic document when "the plaintiff's claim depends on the contents of document … and the parties do not dispute the authenticity of the document"); *see also* SAC ¶ 4 (alleging "significant increase in … annual dues"); *id.* at ¶ 7 (alleging that their "fractional interests … are now worth nothing" and that "[n]obody will agree to buy th[em]").

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

1  *v. Iqbal,* 129 S.Ct. 1937, 1950 (2009). "Factual allegations must be enough to raise a right to relief

2  above the speculative level," and "a formulaic recitation of the elements of a cause of action will not

3  do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). If "plaintiffs … have not nudged their

4  claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* Dismissal

5  without leave to amend is proper if it is clear that "the complaint could not be saved by any

6  amendment." *Intri-Plex Techs v. Crest Grp., Inc.,* 499 F. 3d 1048, 1056 (9th Cir 2007); *see also Ascon*

7  *Props., Inc., v. Mobil Oil Co.,* 866 F. 2d 1149, 1160 (9th Cir. 1989) ("Leave [to amend] need not be

8  granted where the amendment of the complaint … constitutes an exercise in futility ….").

9        The filing of an amended complaint following the without-prejudice dismissal of some of the

10  claims in the original pleading renders all of the re-asserted claims subject to dismissal under Rule

11  12(b)(6). *See Friant Water Auth. v. Jewell,* 2014 U.S. Dist. LEXIS 166399, at *19 n.8 (E.D. Cal. Dec.

12  1, 2014) ("'Generally, an amended pleading supersedes the original for all purposes.'") (quoting *Nolen*

13  *v. Lufkin Indus., Inc.,* 469 F. App'x 857, 860 (Fed. Cir. 2012)). Alternatively, the denial of a previous

14  Rule 12(b)(6) motion can be reconsidered with respect to the re-asserted claims. *See Fox v. Cnty. of*

15  *Tulare,* 2013 WL 5295674, at *1 (E.D. Cal. Sept. 18, 2013) ("A district court possesses the inherent

16  procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be

17  sufficient."). "Reconsideration is appropriate where … it is necessary to correct clear error." *Lennar*

18  *Mare Island, LLC v. Steadfast Ins. Co.*, 2014 WL 2002204, at *3 (E.D. Cal. May 15, 2014) (citing

19  *School Dist. No. 1 J Multnomah Cnty. v. AC&S Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)). Local Rule

20  230(j) requires a movant to "identify the order for which reconsideration is sought [and] what …

21  grounds exist for the motion." *Cotta v. Robinson,* 2013 WL 4402961, at *1 (E.D. Cal. Aug. 15, 2013)

22  (reconsidering partial denial of motion to dismiss complaint). "A district court may reconsider and

23  reverse a previous interlocutory decision for any reason it deems sufficient, even in the absence of new

24  evidence or an intervening change in or clarification of controlling law." *Quinn v. Fresno Cty.,* 2012

25  WL 2839648, at *2 (E.D. Cal. July 10, 2012). The moving "'party must set forth … law of a strongly

26  convincing nature to induce the court to reverse its prior decision.'" *Id.* (quoting *United States v.*

27  *Westlands Water Dist.,* 134 F. Supp. 2d 1111, 1113 (E.D. Cal. 2001). With respect to the three claims

28  that were not dismissed in the Order, Defendants cite "strongly convincing" law that they respectfully

1   submit should "induce the [C]ourt to reverse its prior decision" or to dismiss those claims under Rule

2   12(b)(6).

3   ## IV.   ARGUMENT

4   On Defendants' motion to dismiss the FAC, the Court dismissed Plaintiffs' breach of fiduciary

5   duty, aiding and abetting and UCL claims with leave to re-plead but did not dismiss Plaintiffs'

6   rescission, breach of contract and breach of implied covenant claims.  The previously-dismissed claims

7   have been re-pled but still do not state claims upon which relief could be granted.  As for the other three

8   claims, Defendants respectfully submit that those claims should also have been dismissed as a matter of

9   law and request that the Court do so now.

10
11   ### A.   Plaintiffs Fail to State Breach of Fiduciary Duty, Aiding and Abetting and UCL Claims upon Which Relief Could Be Granted

12   #### 1.   Plaintiffs fail to state a breach of fiduciary duty claim

13   The elements of a breach of fiduciary duty claim are the existence of a fiduciary relationship, its

14   breach, and damage proximately caused by that breach.  *City of Atascadero v. Merrill Lynch, Pierce,*

15   *Fenner & Smith, Inc.,* 68 Cal. App. 4th 445, 483 (1998).  In dismissing this claim earlier, the Court held

16   that Plaintiffs have not plausibly pled that they were owed any fiduciary duty by Defendants:

17   > Plaintiffs … allege that Defendants owed Plaintiffs a fiduciary duty by virtue of their
18   > decision to retain and exercise control over the [Club Owners' Association].  Plaintiffs
     > contend that because the Association managed Plaintiffs' fractional interests in the Lake
19   > Tahoe Ritz, a principal agency relationship existed between the Association and
     > Plaintiffs.  According to Plaintiffs, Defendants exercised control over the Association by
20   > selecting employees, representatives and agents to serve on the board of the Association.
     > … Even accepting Plaintiffs' allegations that Defendants controlled the Association as
21   > true, the pleadings do not plausibly give rise to a fiduciary relationship between Plaintiffs
     > and Defendants.  At most, Plaintiffs have pleaded facts plausibly establishing a fiduciary
22   > relationship between Plaintiffs and the Association.  That relationship does not, however,
     > suffice to show a fiduciary bond with Defendants, who are one step removed from any
23   > link that Plaintiffs may have had with the Association.

24   *Reiser,* 2016 WL 1720741, at *7 (emphasis added); *see also id.* (noting that "the posture of the parties is

25   not one in which a fiduciary relationship is ordinarily recognized.  Defendants are developers and sellers

26   of real property; Plaintiffs are buyers of real property.  The 'relationship of seller to buyer is not one

27   ordinarily vested with fiduciary obligation.'") (citation omitted).  Nothing in the SAC changes this

28   analysis; accordingly, the Court's ruling remains valid.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Of the several documents that Plaintiffs mention in connection with their breach of fiduciary duty claim, two are cited as the purported sources of the fiduciary duty they allege:  the Operating Agreement[7] (*see* SAC ¶¶ 73-82, "The Management Agreement Creates a Fiduciary Duty for RC Management") and the Affiliation Agreement (*see id.* at ¶¶ 83-88, "The Affiliation Agreement Gives Rise to Fiduciary Duty Owed by Cobalt").   Specifically, Plaintiffs contend that the Operating Agreement imposed a fiduciary duty on RC Management that it passed on to Cobalt, thus making Cobalt Plaintiffs' fiduciary for purposes of the decisions Cobalt made (as Program Manager) under the Affiliation Agreement.   *See id.* at 68, 83 (alleging that, under the Operating Agreement, RC Management "delegated significant managerial authority and control over Plaintiffs' use of the Club Interest Units to its sub-agent, Cobalt"); *id.* at ¶ 87 ("Based upon the terms of the Management Agreement and the Affiliation Agreement, Cobalt is the agent or subagent of the Plaintiffs, and as such, owed Plaintiffs a fiduciary duty"); *id.* at ¶ 11 (alleging that Cobalt owes Plaintiffs a fiduciary duty "because RC Management delegated its sweeping authority [under the Operating Agreement] to Cobalt such that Cobalt became RC Management's sub-agent").

But Plaintiffs ignore the Operating Agreement's plain language, which provides that:

> In taking any action under this Agreement, the Management Company shall be acting on behalf of the Association, and <u>nothing in this Agreement shall be construed as creating a partnership, joint venture, or any other relationship between the parties to this Agreement</u>.

*Id.* (emphasis added); *cf. Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist.,* 2008 WL 877970, at *11 (E.D. Cal. Mar. 28, 2008) (declaring that a court must interpret a contract based on its "plain language").   Accordingly, Plaintiffs' "agent/sub-agent" theory, which is the linchpin for their breach of fiduciary duty claim, has no basis.   The Operating Agreement imposed no fiduciary duty on RC Management; therefore, RC Management had no fiduciary duty to pass on to Cobalt.   Thus, Cobalt had no fiduciary duty to Plaintiffs when it made decisions that it was granted <u>sole discretion</u> to make under the Affiliation Agreement, including the decision to affiliate with MVC.   *See* Statement of Facts ("SOF"), Sect. A(2), *supra* (noting that Affiliation Agreement provides that "the Club Owners' Association is not entitled to participate in or consent to the Program Manager's [affiliation] decision"

---

[7] Plaintiffs refer to the Operating Agreement as the "Management" Agreement.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS SECOND AMENDED COMPLAINT**

1    and explains that affiliating with other resorts "will result in the addition of new Members … who … 

2    will compete with existing … Members … in making reservations for the use of available 

3    accommodations and facilities").

4         Nor is Plaintiffs' alternate theory (that a fiduciary duty was owed to them due to Defendants' 

5    alleged control over the Club Owners' Association and its Board, *see* SAC at ¶¶ 71-72) a viable basis 

6    for the breach of fiduciary duty claim alleged here.   While it is undisputed that "a developer and his 

7    agents and employees who also serve as directors of an association [have a fiduciary duty to the 

8    association and, therefore,] … may not make decisions for the [a]ssociation that benefit their own 

9    interests at the expense of the association and its members" (*see Raven's Cove Townhomes, Inc. v.* 

10   *Knuppe Dev. Co.,* 114 Cal. App. 3d 783, 799 (1981)), that fiduciary duty extends only to decisions for 

11   which the association is responsible.   In *Raven's Cove,* for example, the dispute involved "defects in 

12   common area landscaping [and] … exterior walls of individual units."   114 Cal. App. 3d at 787. 

13   Landscaping and maintenance were homeowners' association responsibilities, and the association had, 

14   at the time the conduct in question occurred, been controlled by the developer and its employees.   *Id.* at 

15   788.   The court found that the developer had breached its fiduciary duties to association members 

16   because it had failed to carry out <u>association duties</u> with the members' interests foremost.   *Id.* at 802.

17        Conversely, if the developer-controlled association has no decision-making power with respect 

18   to the complained-of acts, then no fiduciary duty has been exercised, and a breach of fiduciary duty 

19   claim against the developer cannot lie.   Put differently, if the decision is one that the developer is 

20   authorized to make <u>as developer and not as an association member</u>, then no fiduciary duty to association 

21   members is owed.   *See Frances T. v. Village Green Owners Ass'n.,* 42 Cal. 3d 490, 513 (1986) 

22   (affirming trial court's ruling sustaining demurrer to breach of fiduciary duty claim and holding that 

23   "Plaintiff … had a dual relationship with defendants [who were both developers and homeowner 

24   association directors].   These two relationships and respective standards of care … must be analyzed 

25   separately …, and plaintiff has alleged no facts to show that these directors had a fiduciary duty to 

26   [make the decision that allegedly led to her injuries].").   This is because a seller (developer) and buyer 

27   do not ordinarily have a fiduciary relationship.   *See Comm. on Children's Television, Inc. v. General* 

28   *Foods Corp.,* 35 Cal. 3d 197, 222 (1983) (affirming trial court's ruling sustaining demurrer to breach of 

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

fiduciary duty claim without leave to amend and holding that "[t]he relationship of seller to buyer is not one ordinarily vested with fiduciary obligations…. In such transactions, the seller is held to the mores of the marketplace."); *Martinez v. Welk Grp., Inc.,* 907 F. Supp. 2d 1123 (S.D. Cal. 2012) (finding seller had no fiduciary duty to abate mold conditions in resort condominium).

Plaintiffs assert that Defendants used their alleged control over the Club Owners' Association to breach fiduciary duties supposedly owed to Plaintiffs, e.g., by allegedly De-Annexing, allegedly Underselling and affiliating with MVC. *See* SAC ¶¶ 105-08. But the Club Owners' Association had no responsibility or authority to do any of those things. *See id.* at ¶ 16 (alleging that RCDC is responsible for selling the fractional interests at issue); *see also* SOF, Sect. A(2) (Affiliation Agreement gave Cobalt sole discretion to affiliate with MVC); *id.* at Sect. A(3) (Club Declaration gave RCDC, as Developer, discretion to de-annex "any Club Interest Unit in which the Developer owns all the Club interests").

In sum, given the Operating Agreement's plain language disclaiming the creation of any fiduciary relationship, the Club Owners' Association's limited authority and the buyer/seller posture of the parties, Plaintiffs cannot allege breach of fiduciary duty. Plaintiffs' breach of fiduciary duty claim should be dismissed with prejudice, as should their dependent aiding and abetting claim. *See Reiser,* 2016 WL 1720741, at *9 (finding that "aiding and abetting cause of action necessarily fail[ed]" because Plaintiffs could state no viable breach of fiduciary duty claim as "an underlying tort").

### 2. <u>Plaintiffs fail to state a UCL claim</u>

Plaintiffs' UCL claim is asserted under the statute's "unlawful" and "unfair" prongs. In dismissing their UCL claim, the Court correctly found that "Plaintiffs have failed to plausibly state claims under [those] prongs." *Reiser,* 2016 WL 1720741, at *9.

### a. **Plaintiffs' "unlawful" prong claim fails**

"'[A] violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong.'" *Berryman,* 152 Cal. App. 4th at 1544 (citation omitted). Conversely, a plaintiff's inability to state a claim under another law precludes a claim under the "unlawful" prong. *See Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718 (2001). To support their UCL "unlawful" prong claim, Plaintiffs allege a violation of Section 11252 of the Time-Share Act, which states that a developer may not materially encumber the use rights of time-share purchasers without the written

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS SECOND AMENDED COMPLAINT**

1    assent of at least 51% of the time-share interest owners other than the developer.  The Time-Share Act

2    makes clear that "encumbrance" means a lien, mortgage or claim on a specific unit that would be a

3    burden on title and prevent or restrict the unit from being transferred.  *See* Bus. & Prof. Code §§ 11226,

4    11244, 11255 (prohibiting sale of timeshares encumbered by liens or similar claims).  The MVC

5    Affiliation is not an "encumbrance" as defined in the statute, and Plaintiffs have never offered any

6    authority that shows, or even suggests, that Section 11252 could encompass the MVC Affiliation.  Thus,

7    Plaintiffs have not plausibly alleged a Section 11252 violation.

8        Even if the MVC Affiliation could be construed as an "encumbrance," Plaintiffs have not

9    plausibly alleged that the MVC Affiliation has "materially encumber[ed] the[ir] use rights."  Accepting

10   Plaintiff Thomas Reiser's alleged inquiries to real estate agents regarding the possible sale of his

11   fractional interest as true (*see* SAC ¶¶ 62-63), nothing in those exchanges demonstrates a linkage to the

12   MVC Affiliation or to Mr. Reiser's "use rights."  *See Junod v. Mortg. Elec. Registration Sys.,* 584 F.

13   App'x 465, 469 (9th Cir. 2014) (UCL claim requires showing of causation); *see also Thompson v.

14   Residential Credit Sols., Inc.,* 2012 WL 260357, at *5 (E.D. Cal. Jan. 25, 2012) ("Even if plaintiff has

15   sufficiently alleged a violation of the UCL, standing to bring a UCL claim requires 'a person who has

16   suffered injury in fact and has lost money or property <u>as a result</u> of the unfair competition.'") (quoting

17   Cal. Bus. & Prof. Code § 17204) (emphasis added by court).  Accordingly, Plaintiffs cannot state a UCL

18   claim under the statute's "unlawful" prong.

19                    **b.    Plaintiffs' "unfair" prong claim fails**

20       As in the FAC, Plaintiffs allege that "Defendants' practices … caused substantial injury to

21   Plaintiffs, are not outweighed by any countervailing benefits to consumers or competition, and caused

22   injury that Plaintiffs themselves could not reasonably have avoided."  SAC ¶ 90.  By "Defendants'

23   practices," Plaintiffs presumably mean alleged Underselling, De-Annexing and the MVC Affiliation.

24   Conduct permitted by contract, however, is not "unfair."  *See South Bay Chevrolet v. General Motors

25   Acceptance Corp.*, 72 Cal. App. 4th 861, 887 (1999) ("[T]he 'unfairness' prong of section 17200 'does

26   not give the courts a general license to review the fairness of contracts....'") (quoting Samura v. Kaiser

27   Found. Health Plan, Inc., 17 Cal. App. 4th 1284, 1299, n.6 (1993)).  Nothing in the Contract requires

28   RCDC to sell (or continue to try to sell) all or any particular number of fractional interests, and both De-

Annexing and the MVC Affiliation were expressly permitted. *See* SOF(A)(1)-(3), (5), *supra*. Indeed, in *Hoyt v. Marriott Vacations Worldwide Corp.,* 2014 WL 509903, at *4 (D. Minn. Feb. 7, 2014), after examining the same contract provision at issue here, the court agreed that the MVC Affiliation was contractually permitted:

> Defendants also argue that this discretion to add Associate Members expressly allowed them to affiliate with MVC. The court agrees. The discretion to add Associate Members to the Membership program, coupled with the Affiliation Agreements' pronouncement that "[t]he Program Manager may, in its sole discretion, create a separate membership program," … **leads the court to conclude as a matter of law that such an affiliation was contemplated and allowed by the governing documents.** As a result, the plaintiffs cannot state a claim for breach of contract based on the affiliation with MVC….

*Id.* at *3, n.6 (emphasis added).

Just as Plaintiffs' UCL "unfair" prong claim cannot be based on contractually permitted conduct, it also cannot be based on the effect contractually permitted conduct allegedly had on Plaintiffs. *Cf. Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal. 4th 163, 184 (1999) (cautioning that, in assessing the sufficiency of claims under the UCL's "unfair" prong, "courts may not apply purely subjective notions of fairness"). For example, Plaintiffs allege that De-Annexing (which, as noted, was contractually permitted) "caused a significant increase in the annual dues that [they] must pay each year." SAC ¶ 4. Accepting that allegation as true, Plaintiffs understood when they purchased their fractional interests that their annual dues were subject to change. *See* QAC (Feb. 12, 2016 Greene Decl. Ex. F) p. 3, item 10. If their annual dues later changed due to contractually permitted conduct, that is not "unfair" for purposes of a UCL claim.

Similarly, Plaintiffs allege that, due to De-Annexing, alleged Underselling and the MVC Affiliation (all of which were contractually permitted), "[t]he fractional interests that [they] purchased … are now worth nothing [and n]obody will agree to buy the[m]." SAC ¶ 7. Accepting that allegation as true, Plaintiffs understood at the time of purchase that they were buying their fractional interests for "personal use" and not for their "investment [or] resale potential." *See* QAC at 4, item 18; *see also* PA (Feb. 12, 2016 Greene Decl. Ex. A) ¶ 19A (Seller makes no "representation as to the investment value of a Club Interest … [or as to] the possibility or probability of profit or loss"). Plaintiffs do not allege that their fractional interests are no longer available or suitable for "personal use." Accordingly,

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS SECOND AMENDED COMPLAINT**

1   because Plaintiffs still cannot allege either the "unlawful" or the "unfair" conduct required for a UCL

2   claim, Plaintiffs' UCL claim should be dismissed with prejudice.

3   **B.   Plaintiffs' Rescission, Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing Claims Should Also Be Dismissed for Failure to State Claims upon Which Relief Could Be Granted**

4

5   Defendants respectfully submit that, in issuing its Order on Defendants' motion to dismiss the

6   FAC, the Court should have found, as a matter of law, that Plaintiffs have not stated: (a) a rescission

7   claim based on "mistake of fact"; (b) a breach of contract claim based on De-Annexing and

8   Underselling; or (c) a breach of the implied covenant of good faith and fair dealing claim based on De-

9   Annexing, the MVC Affiliation and Underselling.

10   **1.   Plaintiffs have alleged no "mistake of fact" that would support rescission**

11   For rescission purposes, "mistake of fact" is statutorily defined as

12   … a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in: 1. An unconscious ignorance or forgetfulness of a fact <u>past or present</u>, material to the contract; or 2. Belief in the <u>present existence of a thing</u> material to the contract, <u>which does not exist</u>, or in the <u>past existence of such a thing</u>, <u>which has not existed</u>.

13

14

15   Civ. Code § 1577 (emphasis added).   "To support rescission, a mistake must be as to an '<u>objective,

16   existing fact</u>.'"  *YTY Indus. SDN. BHD. v Dow Chem. Co.,* 2009 WL 3633871, at *22 (C.D. Cal. Oct. 28,

17   2009) (quoting *Hedging Concepts, Inc. v. First Alliance Mortg. Co.,* 41 Cal. App. 4th 1410, 1421

18   (1996)) (emphasis added); *see also* Rutter, *Cal. Prac. Guide Real Prop. Trans. Ch. 11-G*

19   *("Rescission"),* 2.b.(2)(a) ("[T]he type of mistake [referred to in Civ. Code § 1577] relates to an

20   erroneous belief about an *objective* existing or nonexisting fact material to the contract.") (italics in

21   original); *Crocker-Anglo Nat'l Bank v. Kuchman,* 224 Cal. App. 2d 490, 496 (1964) (mistake of fact

22   occurs "when a person understands <u>the facts</u> to be other than they are") (emphasis added).

23   "Mistakes of fact" generally fall into the following categories:   mistakes in computation;

24   mistakes in instruments generally (e.g., scrivener errors); mistakes in description, quality, or condition;

25   mistakes as to interest conveyed; and mistakes as to liability (e.g., widow conveyed land to another in

26   the mistaken belief that she was responsible for her husband's debt).   59 A.L.R. 809 ("Unilateral

27   mistake as basis of bill in equity to rescind the contract") § V ("Illustrative cases").   The following is an

28   example of a typical "mistake of fact" that would support rescission:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

A contracts with B to raise and float B's boat which has run aground on a reef. … If … the boat had already slipped into deep water at the time the contract was made … there would have been a mistake of [fact].

*Restatement (Second) of Contracts § 151* ("Mistake Defined") (1981) (updated March 2016).

Importantly, "Civil Code section 1577 speaks in terms of mistakes as to *present* or *past* facts; there is no authority for rescission based on a mistake regarding *future* events." *Paramount Petroleum Corp. v. Super. Ct. (Buildings Materials Corp. of Am.),* 227 Cal. App. 4th 226, 245 (2014) (italics in original). Thus, "[w]here a belief or assumption under which a contract is made is rendered mistaken by subsequent events, the mistake will not support rescission of the contract." *YTY Indus.,* 2009 WL 3633871, at *22 (citing *Mosher v. Mayacamas Corp.,* 215 Cal. App. 3d 1, 5 (1989). Under that principle, the following were found not to be "mistakes of fact" for purposes of a rescission claim:

- Asphalt supplier's mistaken belief that the price of a particular oil used as a benchmark would continue to track the price of the oil actually used by the manufacturer (*Paramount Petroleum,* 227 Cal. App. 4th at 246);

- Developer's mistaken belief that all of the houses it was building would be completed at some point and would be covered by the advance insurance premiums it was paying to defendant (*CRV Imperial-Worthington, LP v. Gemini Ins. Co.,* 770 F. Supp. 2d 1074, 1077-78 (S.D. Cal. 2010); and

- Buyer's mistaken belief that the business division it was purchasing would be moved to a different location and an improved product would be introduced (*YTY Indus.,* 2009 WL 3633871, at *22).

Confusion can arise when the occurrence of a future event is erroneously perceived as a present existing fact. A good example of that is *Metropolitan Life Insurance Co. v. Kase,* 718 F. 2d 306 (9th Cir. 1983), which, although different from this case factually, is quite similar in principle. In *Kase,* a defendant's severe eye injury had caused a loss of sight that his doctor considered permanent. Defendant's insurance company accepted the doctor's opinion and made the appropriate payment. Some time later, defendant's sight unexpectedly returned, and the insurance company demanded that the policy be rescinded (and the payment returned) based on "mistake of fact." Reversing the trial court, the Ninth Circuit held that, although events certainly transpired in a way the insurance company had not anticipated when it paid out on the policy, there had been no "mistake of fact":

The California courts have held that mistakes as to the occurrence of future events are generally not mistakes of fact that will support rescission. [internal citations omitted]

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS SECOND AMENDED COMPLAINT**

1
2

Those cases did not involve a doctor's opinion such as we have here, but in principle they are in point.  <u>Metropolitan argues that the prediction embodied in the doctor's opinion, that the loss of sight would continue, was also a statement as to a "present existence of a thing material to the contract" within Cal. Civ. Code § 1577.  We think not.</u>

3

*Kase,* 718 F. 2d at 308 (emphasis added).

4
5
6
7
8
9
10

Plaintiffs allege that they believed, at the time of contracting, that (a) all (or "a sufficient number") of the fractional interests at Lake Tahoe Ritz-Carlton would be sold; and (b) the resort would not be affiliated with MVC.  In other words, Plaintiffs allege that they entered into their Purchase Contracts believing that neither Underselling nor the MVC Affiliation would occur at some undefined time in the future.  In denying Defendants' motion to dismiss Plaintiffs' rescission claim, the Court found that these beliefs "plausibly constitute present mistakes of fact that support a claim for rescission."  *Reiser,* 2016 WL 1720741, at *4.

11
12
13
14
15
16
17
18
19
20
21

Based on Plaintiffs' own allegations, however, neither Underselling nor the MVC Affiliation were "present facts" when Plaintiffs purchased their fractional interests in 2007 and 2008 but, rather, were events that occurred later.  *See* SAC ¶ 2 (alleging that, in 2011, when sales of fractional interests at the Lake Tahoe Ritz-Carlton "stalled as the economy deteriorated," RCDC suspended further sales efforts); *see also id.* at ¶¶ 58, 59 (alleging that the MVC Affiliation occurred in 2012 and was "effectuate[d]" in 2014).  Plaintiffs have, thus, alleged "mistake[s] regarding *future* events," which do not support rescission.  *See Paramount Petroleum,* 227 Cal. App. 4th at 245 (italics in original).  Defendants respectfully request that the Court reconsider its ruling that Plaintiffs have stated a claim for rescission based on "mistakes of fact" and dismiss Plaintiffs' rescission claim with prejudice.  *Cf. Lennar Mare Island*, 2014 WL 2002204, at *3 (finding reconsideration "appropriate where … it is necessary to correct clear error").

22
23

### 2.   No breach of contract or breach of the implied covenant claims have been stated

24
25
26

Defendants respectfully request that the Court find that Plaintiffs have stated neither a breach of contract claim based on De-Annexing and Underselling nor an implied covenant claim based on De-Annexing, the MVC Affiliation and Underselling.[8]

27
28

---

[8] Like the FAC, the SAC is based on three grievances:  alleged De-Annexing, alleged Underselling and the MVC Affiliation.  Plaintiffs' breach of contract claim is based on De-Annexing and Underselling

16

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

### a.    De-Annexing was contractually permitted

Section 8.2 of the Club Declaration (entitled "Deannexation") (Feb. 12, 2016 Greene Decl. Ex. C) provides that:

> Developer may deannex from this Club Interest Declaration, in accordance with the procedures set forth in Section 8.3 below:
> (a) Prior to the Starting Date, any of the Club Interest Units; and
> (b) subsequent to the Starting Date, any Club Interest Unit in which the Developer owns all the Club Interests.

Section 8.3 ("Deannexation Procedures") provides:

> Any deannexation authorized by Section 8.2 above, shall be made by recording in the Official Records a Declaration of Deannexation with respect to the Units to be deannexed thereby.  The Declaration of Deannexation shall contain at least the following:
> (a) a legal description of the Units being deannexed and the location thereof;
> (b) a statement deannexing such Units as Club Interest Units under this Club Interest Declaration, which shall be referred to by title and date and instrument number of recording; and
> (c) such other terms and conditions as Developer deems advisable or necessary; provided, however, that such terms and conditions shall not be inconsistent or in conflict with the terms and provisions of this Club Interest Declaration and shall not adversely or materially affect the interests of Owners hereunder.

In its earlier ruling, the Court read the qualifying language in Section 8.3(c) ("provided, however, that such terms and conditions [to be included in the Declaration of Deannexation] … shall not adversely or materially affect the interests of Owners hereunder") as applying to Defendants' general ability to de-annex.  *Reiser,* 2016 WL 1720741, at *5.  In fact, that phrase refers only to the phrase that immediately precedes it and that is in the same subsection, namely, the phrase "such other terms and conditions as Developer deems advisable or necessary [to be included in the Declaration of Deannexation]."  Thus, the contract contemplated that Developer RCDC might (but need not) find "other terms and conditions … advisable or necessary [to be included in the Declaration of Deannexation]."  If (and only if) so, then, under the contract, "such other terms and conditions [to be included in the Declaration of Deannexation]" could not "adversely or materially affect the interests of

---

only, while their breach of implied covenant claim is based on all three grievances.  Thus, to assess the adequacy of these claims, the specific grievances alleged in each should be separately analyzed.  In that way, the claims can be narrowed to encompass only the grievance(s) for which a claim can be stated.  Otherwise, discovery (and, indeed, the scope of the entire case) will be unnecessarily broad, and judicial economy concerns will not be served.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Owners."  But if the Developer did not choose to add "other terms and conditions [to the Declaration of Deannexation]" (and Plaintiffs do not allege that it did), then RCDC's absolute right to de-annex was not affected, impacted or diminished in any way.  *See* Section 8.3 (providing that de-annexation is "authorized by Section 8.2 above") (emphasis added).

The last antecedent rule, "[a] longstanding rule of statutory construction," confirms this reading. *White v. County of Sacramento,* 31 Cal. 3d 676, 680 (1982).  The last antecedent rule "provides that 'qualifying words, phrases and clauses are to be applied to the words or phrases immediately preceding and are not to be construed as extending to or including others more remote.'"  *Id.* (quoting *Board of Port Commrs. v. Williams,* 9 Cal. 2d 381, 389 (1937)).  Applying the last antecedent rule here, the requirement that "such terms and conditions shall not … adversely or materially affect the interests of Owners" pertains only to the "phrase[] immediately preceding," namely, to "such other terms and conditions as Developer deems advisable or necessary."  Thus, unless RCDC chose to add "other terms and conditions [to the Declaration of Deannexation]" (which it is not alleged to have done), its ability to de-annex fractional interests was not subject to any conditions but, rather, was absolute.  Plaintiffs have, therefore, failed to state a breach of contract claim based on De-Annexing.

> **b.      Defendants' motion to dismiss the "Underselling" portion of Plaintiffs' breach of contract claim should have been granted as unopposed**

"In an action for breach of a written contract, a plaintiff must allege the specific provisions in the contract creating the obligation the defendant is said to have breached."  *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011) (citing *Miron v. Herbalife Int'l, Inc.,* 11 Fed. Appx. 927, 929 (9th Cir. 2001)); *accord Careau & Co. v. Sec. Pac. Bus. Credit Inc.*, 222 Cal. App. 3d 1371, 1399 (1990).

The SAC does not identify any provision of the Purchase Agreements (or the other agreements they incorporate by reference) that was supposedly breached by Underselling.  *See* SAC ¶¶ 94-99 (Breach of Contract count).[9]  In addition, on Defendants' motion to dismiss the FAC, Plaintiffs offered no opposition to Defendants' argument that they had failed to state a breach of contract claim based on Underselling.  Thus, as Defendants previously argued: "[Because] Plaintiffs do not respond to

---

[9] Nor could Plaintiffs do so, as Underselling is implicitly allowed under the provision permitting De-Annexing.  *See* subsection (c), *infra.*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Defendants' argument that alleged Underselling was not a breach of contract …, Defendants' motion as to that point should be granted as unopposed." (Doc. 11 at p. 2). Despite Plaintiffs' implicit concession regarding Underselling, the Court stated that "[w]hether the contract allowed Defendants to … stop selling fractional interests in th[e] Club Interest Units is not properly decided at this stage of the proceedings." *Reiser,* 2016 WL 1720741, at *5. Defendants respectfully request that the Court reconsider its ruling that Plaintiffs have stated a breach of contract claim based on Underselling and (because they fail to state a breach of contract claim based on either De-Annexing or Underselling) dismiss their breach of contract claim with prejudice.

  **c.**  **Neither the MVC Affiliation, De-Annexing nor Underselling breached the implied covenant of good faith and fair dealing because they were all contractually permitted**

   While every contract imposes upon each party a duty of good faith and fair dealing, this general rule is "subject to the exception that the parties may, by express provisions of the contract, grant the right to engage in the very acts and conduct which would otherwise have been forbidden by an implied covenant of good faith and fair dealing." *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.,* 2 Cal. 4th 342, 374 (1992); *see also id.* ("We are aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an agreement.") (emphasis added); *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.,* 100 Cal. App. 4th 44, 56 n.10 (2002) ("[T]he implied covenant … does not impose an affirmative duty on a party to forbear from enforcing rights expressly given under the contract."). Moreover, "if the express purpose of the contract is to grant unfettered discretion [to make a particular decision affecting the rights of another], and the contract is otherwise supported by adequate consideration, then the conduct is, by definition, within the reasonable expectation of the parties and 'can never violate an implied covenant of good faith and fair dealing.'" *Wolf v. Walt Disney Pictures & Television,* 162 Cal. App. 4th 1107, 1121 (2008) (quoting *Carma Developers,* 2 Cal. 4th at 376). In short:

> [C]ourts are not at liberty to imply a covenant directly at odds with a contract's express grant of discretionary power except in those relatively rare instances when reading the provision literally would, contrary to the parties' clear intention, result in an unenforceable, illusory agreement. In all other situations where the contract is

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

unambiguous, the express language is to govern, and "[n]o obligation can be implied ... which would result in the obliteration of a right expressly given under a written contract." *Third Story Music, Inc. v. Waits,* 41 Cal. App. 4th 798, 808 (1995) (quoting *Gerdlund v. Electronic Dispensers Int'l,* 190 Cal. App. 3d 263, 277 (1987)).

In denying Defendants' motion to dismiss Plaintiffs' implied covenant claim, the Court cited case law holding that, to breach the implied covenant, Defendants' conduct need not have breached an express contractual term. *See Reiser,* 2016 WL 1720741, at *5. The governing principle here, however, is the one expressed in the above-cited cases, namely, that a breach of implied covenant claim cannot be based on conduct that is expressly permitted by contract. Plaintiffs do not dispute that the MVC Affiliation was expressly permitted by contract (*see* SAC ¶¶ 94-99), and De-Annexing was expressly permitted by contract for the reasons explained above. The Developer's clear, express right to de-annex Club Interest Units dooms Plaintiffs' Underselling claim. The Developer cannot sell a fractional interest in a Club Interest Unit that has been de-annexed from the Club Interest Declaration. Subjecting the Developer to an Underselling claim following de-annexation would nullify the Developer's ability to de-annex by exposing it to liability for exercising a right that is expressly conferred by the contract documents. Plaintiffs' Underselling claim is, thus, inextricably tied to their De-Annexation claim, and the two must both fail in light of the plain, express contractual text. *See Daly v. United Healthcare Ins. Co.,*2010 WL 4510911, at *5 (N.D. Cal. Nov. 1, 2010) (citing the "'well established [principle] that an implied covenant cannot create an obligation inconsistent with an express term of a contract'") (quoting *Nein v. HostPro, Inc.,* 174 Cal. App. 4th 833, 852 (2009) (emphasis added); *Carma Developers, Inc. v. Marathon Devel. Cal.,* 2 Cal. 4th 342, 373 (1992) (holding that "the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract") (emphasis added); *cf. In re Apple In-App Purchase Litig.,* 855 F. Supp. 2d 1030, 1042 (N.D. Cal. 2012) (for implied covenant claim, complained-of act must have "frustrate[d] the common purpose of the agreement"). Accordingly, Defendants respectfully request that the Court reconsider its ruling that Plaintiffs have stated a breach of the implied covenant of good faith and fair dealing claim. *Cf. Lennar Mare Island*, 2014 WL 2002204, at *3 (reconsideration is "appropriate where … it is necessary to correct clear error").

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

1

## V.      CONCLUSION

2          For all of the aforementioned reasons, Defendants respectfully request that the SAC should be

3   dismissed in its entirety and with prejudice.

4   Dated:  June 27, 2016                          Respectfully submitted,

5                                                  GREENBERG TRAURIG, LLP

6
                                         By: _/s/ Kurt A. Kappes_____
7                                             Kurt A. Kappes
                                              Attorneys for Defendants Marriott Vacations
8                                             Worldwide Corporation, Marriott Ownership
                                              Resorts, Inc., The Ritz-Carlton Development
9                                             Company, Inc., The Ritz-Carlton Sales Company, Inc.,
                                              The Ritz-Carlton Management Company, LLC, and
10                                            The Cobalt Travel Company, LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SECOND AMENDED COMPLAINT**