# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLORADO

Gordon P. Gallagher, United States Magistrate Judge

Civil Action No. 16-cv-1301-PAB-GPG

RCHFU, LLC et al,

      Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION et al.,

      Defendants.

---

## ORDER REGARDING PLAINTIFFS' MOTION TO AMEND (ECF #185)

---

This matter comes before the Court on Plaintiffs' motion to amend (ECF #185)[1] (which was referred to this Magistrate Judge (ECF #186)),[2] Defendants' response (ECF #193), and Plaintiffs' reply (ECF #199) The Court has reviewed each of the aforementioned documents, response, reply and any attachments. The Court has also considered the entire case file, the

---

[1] "(ECF #185)" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). I use this convention throughout this Order.

[2] The Court's ruling on this matter is non-dispositive as it does not remove any claim or defense from this case. *See Cuenca v. Univ. of Kansas*, 205 F. Supp.2d 1226, 1228 (D.Kan.2002) (ruling on a motion to amend is a non-dispositive decision, particularly when the Magistrate judge grants the motion). "Orders granting leave to amend are non-dispositive as they do not remove claims or defenses of a party." *Stetz v. Reeher Enterp., Inc.*, 70 F.Supp.2d 119, 120 (N.D.N.Y. 1999). Pursuant to 28 U.S.C. §636 (b)(1)(A) "A judge of the court may reconsider any pretrial matter under subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." Any party may object to this non-dispositive Order within fourteen (14) days. Fed.R.Civ.P. 72(a).

applicable law, and is sufficiently advised in the premises.  Oral argument is not necessary to resolve this discrete issue.  For the following reasons, I GRANT the motion.

Therefore it is hereby Ordered that Plaintiffs' motion to amend is granted and Plaintiff shall docket their sixth amended complaint (currently filed at ECF #185-18).

Plaintiffs move for leave to file their sixth amended complaint, proposing to add a claim for exemplary damages to each of their five (5) causes of action.  Defendants oppose.  The circumstances and the briefing raises three distinct issues: (1) is this amendment foreclosed by prior Order(s) of this Court; (2) have Plaintiffs met the standards for amendment (Rules 15(a)(2) and 16(b)(4)); and (3) have Plaintiffs shown there to be *prima facie* evidence supporting exemplary damages.

Prior Court Orders: as they pertain-or not

On March 29, 2017, the Court, by minute Order, allowed the filing of Plaintiffs' fifth amended complaint (ECF #119) and stated "but this shall be the final amended complaint allowed in this matter."  In opposition to the current motion to amend to pursue exemplary damages, Defendants argue that the proposed amendment is precluded by prior Court Order.

Plaintiffs raised the issue of future amendment to add exemplary damages pursuant to C.R.S. 13-21-102 in the initial scheduling order (ECF #60, p. 10, August 18, 2016).  While subsequent versions of the scheduling order have altered some applicable dates, Plaintiffs' never recanted their intent to pursue exemplary damages.  *See* revised scheduling order (ECF #136) and second revised scheduling order (ECF # 161).

The Court's recollection of the discussion of the minute order at ECF #118 stating that "this shall be the final amended complaint allowed in this matter" had to do with addition of new claims and more importantly, new Plaintiffs.  At that juncture in the action, substantial numbers of new Plaintiffs were being added and the parties needed some certainty, balancing Plaintiffs' need to add those potential Plaintiffs to the action and Defendants' need to ascertain the contours of this matter moving forward.  The Court afforded sufficient time and availability for that process which culminated in the fifth amended complaint.  That is a very different analysis from whether and when exemplary damages are appropriately requested and the Court's prior utterance did not, in any way, bear upon this discussion.

Rules 15(a)(2) and 16(b)(4)

Standard of Review

After a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and, if and only if the 16(b) standard is met, then there must be (2) satisfaction of the Rule 15(a) standard. *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014); *Pumpco, Inc. v. Schenker Int'l, Inc*., 204 F.R.D. 667, 668 (D. Colo. 2001). "[T]he liberal standard for granting of motions for leave to amend unless the amendment inflicts undue prejudice on the non-moving party reflects the Court's underlying policy that pleadings should enable a claim to be heard on its merits." *James*, Civil Action No. 10-cv-02591-WJM-CBS, 2012 U.S. Dist. LEXIS 22663, at *8 (citing *Calderon v. Kan. Dep't of Soc. & Rehabilitative Servs*., 181 F.3d 1180, 1186 (10th Cir. 1999)). Plaintiffs concede that the deadline to amend the pleadings, as contained in the

scheduling order, in this case has passed. Therefore, Plaintiffs must meet both the 16(b) good cause standard and satisfy the 15(a) standard.  *See infra* with regard to application of the Rule 15(a) standard.

A court may modify the scheduling order under Rule 16(b) if the deadline cannot be met despite the diligence of the party seeking the extension. *Pumpco*, 204 F.R.D. at 668. Rule 16(b)'s good cause requirement is satisfied if a plaintiff learns new information through discovery or if the underlying law has changed. *Gorsuch, Ltd., B.C*, 771 F.3d at 1240. Good cause exists where a party "first learns, through discovery or disclosures, information necessary for the assertion of a claim after the deadline to amend established in the scheduling order," and thereafter moves diligently in seeking the amendment. *Pumpco*, 204 F.R.D. at 668-69.

Federal Rule of Civil Procedure 15(a) provides that a party may amend his pleading "only by leave of court or by written consent of the adverse party" after a responsive pleading has been served, and instructs that "leave shall be freely given when justice so requires."  When considering whether to allow an amendment to a complaint, the court considers factors such as whether the amendment will result in undue prejudice to the defendant, whether the request was unduly and inexplicably delayed or offered in good faith, and whether the party had sufficient opportunity to state the claim but failed. *See Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990).  Whether to grant a motion to amend is within the trial court's discretion. *Woolsey v. Marion Labs, Inc.*, 934 F.2d 1452, 1462 (10th Cir. 1991).

Before applying the above standard, some discussion is warranted as to whether the standard actually applies.  There is very little law on the subject, with the closest case on point being *American Economy Ins., Co. v. Schoolcraft, M.D., P.C.*, 2007 WL 160951 (D.Colo.).  In *American Economy*, the Court analyzed the circumstance and determined that the more stringent

standard from C.R.S. 13-21-102(1.5)(a), that plaintiff establish prima facie proof of a triable issue regarding exemplary damages applies, rather than the more lenient standard set forth in Rule 15(a).  As I sit in diversity in this matter, I find that the more stringent standard of C.R.S. 13-21-102(1.5)(a) applies.  This does not supplant the need to still comply with the Rule 16(b) standard as I find that does also apply.

Rule 16(b)

Keeping in mind the inability of Plaintiffs to initially claim exemplary damages in the complaint due to the application of C.R.S. 13-21-102(1.5)(a), I apply Rule 16(b).  In their brief, Defendants conflate Plaintiffs' initial filing of a fraud complaint with Plaintiffs' current assertion that enough evidence exists for Plaintiffs to now request exemplary damages by stating that they can prove a *prima facie* case.  *See* Defendants' response (ECF #193, p. 3).  Complaints may proceed on "information and belief," a different standard than that embedded in C.R.S. 13-21-102(1.5)(a).  To that end, Defendants' reliance on the *Schneider* case as it relates to Plaintiffs' delay until after certain depositions is misplaced because it is not foreseeability that is at issue but rather a higher level of certainty, *prima facie* proof.

Plaintiffs' motion (ECF #185) and reply (ECF#199), set forth the timing of receipt of certain information over the course of discovery as it led, in their minds, to the building of the *prima facie* case.  Plaintiffs received substantial discovery during the period spanning from November 10, 2016 to August 4, 2017 (some 150,000 pages) (ECF #185, p. 7).  Depositions began occurring in October 2017 and are on-going.  Plaintiffs assert that a key piece of the *prima facie* analysis was discovered during the Cunningham and Sobek depositions in November, 2017

in that it was determined that the affiliation decision was made by Marriott Vacation Club rather than Cobalt. Plaintiffs contend that their review of the discovery provided and the depositions led them to be able to state that Plaintiffs can prove a *prima facie* case consistent with the requirements of C.R.S. 13-21-102(1.5)(a).

Plaintiffs moved to amend to add exemplary damages on February 7, 2018, eighty-nine (89) days after the Cunningham deposition which was taken on November 10, 2017 (ECF #185-6). I find that Plaintiffs learned additional information through the course of discovery, that Plaintiffs were diligent in both conducting discovery and in filing their motion to amend following digestion of the new information, that any prior deadline to amend could not have been met, and that the good cause standard in Rule 16(b) has been satisfied.

*Prima facie* proof

Plaintiffs assert that they can now meet the standard of proof set forth in C.R.S. 13-21-102(1.5)(a) thus allowing them to request exemplary damages. The Marriott Defendants while stating that they dispute and believe they could disprove the wanton and willful showing, essentially vacate the field and do not attempt to disprove, by stating:

> Plaintiffs devote much of their moving brief to describing deposition testimony and documents that they assert show the "wanton and willful" conduct required for exemplary damages. The Marriott Defendants flatly dispute that assertion, and, if it were relevant to this motion (and if space permitted), they could disprove it point by point. The only issue relevant to this motion, however, is whether Plaintiffs have met the legal standards for amending the Scheduling Order and the operative Complaint. As shown below, they have not.

ECF #193, p. 1, fn 1.  Despite Defendants assertion as to the relevance of whether Plaintiffs have actually proven a *prima facie* case, the Court will analyze the issue.  As stated *supra*, the test is whether Plaintiffs' have provided *prima facie* evidence of willful and wanton behavior. *Am. Econ. Ins. Co.* 2007 WL 160951 at *4.

> Colo. Rev.Stat. § 13–21–102(1.5)(a) provides, in relevant part:

>> A claim for exemplary damages in an action governed by this section may not be included in any initial claim for relief. A claim for exemplary damages in an action governed by this section may be allowed by amendment to the pleadings only after ... the plaintiff establishes *prima facie* proof of a triable issue.

Colo. Rev.Stat. § 13–21–102(1.5)(a). Colorado law defines "willful and wanton conduct" as "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others." Colo. Rev.Stat. § 13–21–102(1)(b). The Colorado Supreme Court has noted that "[w]here the defendant is conscious of his conduct and the existing conditions and knew or should have known that injury would result, the statutory requirements" are met. *Coors v. Sec. Life of Denver Ins. Co.,* 112 P.3d 59, 66 (Colo. 2005).

The Court must consider whether Plaintiffs have offered evidence to establish a *prima facie* case that "[D]efendant[s] [were] conscious of [their] conduct and the existing conditions and knew or should have known that injury would result," in order to determine whether Plaintiffs may be allowed to include a claim for exemplary damages. *Coors,* 112 P.3d at 66.  At this stage of the litigation, the Court is only concerned with whether the evidence, when viewed in the light most favorable to Plaintiffs, is sufficient to make out a *prima facie* case of willful and wanton behavior for the purpose of allowing Plaintiffs to amend their Complaint to include exemplary damages, not whether such evidence is sufficient to defeat a motion for summary

judgment or to result in a jury verdict in Plaintiffs' favor. *See Am. Econ. Ins. Co. v. William Schoolcraft, M.D., P.C.,* Civil Case No. 05–cv–01870–LTB–BNB, 2007 WL 160951, at *2 (D.Colo. Jan. 17, 2007).

Plaintiffs' purported case entitling them to exemplary damages is as follows:  Marriott Defendants sold fractional units at Ritz-Aspen to Plaintiffs, at "premium purchase prices" providing (1) a deeded property interest; and (2) reciprocal rights at RCDC Private Residence Clubs (ECF #185, pp. 2-3).  Then, the Marriott Defendants, at a far lower price, turned around and opened up the same luxury access to Marriott Vacation Club ("MVC") members, dangling the lure of RCDC usage as temptation.  *Id.*  This essentially destroyed much of the value of Plaintiffs' purchase, as well as resale, for who would knowingly pay more for the same product when it could be purchased at the discount MVC price.

The heart of the matter, at least as to willful and wanton conduct, is relational.  Marriott Vacation Worldwide ("MVW") began exploring the affiliation and at some point this became public knowledge.  Marriott promised not to affiliate unless "a majority of the members voted in favor of [affiliation]."  *Id.* at p. 4.  Instead of a vote, Marriott substituted a highly misleading survey."  *Id.*  Supposedly, this decision was made by Cobalt Travel Company, L.L.C. (important in terms of a fiduciary duty analysis).  *Id.*  However, Plaintiffs assert that the November Cunningham deposition led them to discover that Mr. Cunningham, CEO of MVW, actually made the decision to affiliate, thus establishing circumstances of fraud, malice or willful and wanton conduct.  *Id.* at pp. 4-5.  Going back to the relational point set out above, it is the relationship of Cunningham, as CEO of MVW, that Plaintiffs believe is crucial.  In viewing these facts in the light most favorable to Plaintiffs the Court finds that Plaintiffs have established the requisite *prima facie* basis to proceed with a claim for exemplary damages.

Harm to Defendants

Aside from the obvious harm to Defendants that, should Plaintiffs prevail, exemplary damages could make this much more expensive, Defendants urge the Court to consider the harm of allowing the addition of a claim for exemplary damages at this juncture (ECF#193, pp. 9-10). Defendants cite the pending nature of their motion to dismiss (ECF #131) (now decided (ECF #210)) as a reason to disallow amendment.  The Court is not persuaded.  The Court fails to see how, even were the motion to dismiss still pending, allowing a claim for exemplary damages would change the arguments, briefing or analysis.

For the foregoing reasons, the Court finds that Plaintiffs have established a *prima facie* case for exemplary damages and Orders that the motion to amend is GRANTED.  Plaintiffs shall docket their sixth amended complaint (currently filed at ECF #185-18).

Dated at Grand Junction, Colorado, this May 10, 2018.

_____

Gordon P. Gallagher

United States Magistrate Judge