# DECLARATION OF CONDOMINIUM

## FOR

### ASPEN HIGHLANDS CONDOMINIUMS

### ASPEN HIGHLANDS VILLAGE

### CITY OF ASPEN

### PITKIN COUNTY

### COLORADO

Declarations AHC 01102001 cln



450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
1 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

## EXHIBIT "H"

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
2 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

# TABLE OF CONTENTS

ARTICLE 1. IMPOSITION OF COVENANTS ................................................................. 1
    Section 1.1    Purpose. ........................................................................................ 1
    Section 1.2    Residential Units. ........................................................................ 1
    Section 1.3    Commercial Units. ...................................................................... 1
    Section 1.4    Plan of Fractional Ownership. .................................................... 1
    Section 1.5    Intention of Declarant. ................................................................ 2
    Section 1.6    Development and Use. ................................................................. 2
    Section 1.7    Mixed Use. .................................................................................. 2
    Section 1.8    Submission of Property. .............................................................. 2
    Section 1.9    Master Declaration. .................................................................... 2
    Section 1.10    Covenants Running with the Land. ............................................. 3
ARTICLE 2. DEFINITIONS ............................................................................................. 3
    Section 2.1    "Allocated Interest" .................................................................... 3
    Section 2.2    "Allocated Interest-Commercial" ............................................... 3
    Section 2.3    "Allocated Interest-Deed Restricted Residential" ...................... 3
    Section 2.4    "Allocated Interest-General" ...................................................... 3
    Section 2.5    "Allocated Interest-Tourist Accommodation" ........................... 3
    Section 2.6    "Allocated Interest-Residential" ................................................. 3
    Section 2.7    "Amenities" ................................................................................. 3
    Section 2.8    "Amenities Association" ............................................................. 4
    Section 2.9    "Aspen Highlands Village" ......................................................... 4
    Section 2.10    "Assessments" ............................................................................. 4
    Section 2.11    "Association" ............................................................................... 4
    Section 2.12    "Association Documents" ............................................................ 4
    Section 2.13    "Building(s)" ............................................................................... 4
    Section 2.14    "Category" .................................................................................. 4
    Section 2.15    "Class" ........................................................................................ 4
    Section 2.16    "Commercial Directors" .............................................................. 4
    Section 2.17    "Commercial Owners" ................................................................ 5
    Section 2.18    "Commercial Unit" ..................................................................... 5
    Section 2.19    "Common Elements" ................................................................... 5
    Section 2.20    "Common Expense(s)" ................................................................ 5
    Section 2.21    "Condominium Map" or "Map" .................................................. 6
    Section 2.22    "Declarant" ................................................................................. 6
    Section 2.23    "Declarant Control Period" ......................................................... 6
    Section 2.24    "Declaration" .............................................................................. 6
    Section 2.25    "Deed Restricted Residential Directors" .................................... 6
    Section 2.26    "Deed Restricted Residential Owners" ....................................... 6
    Section 2.27    "Deed Restricted Residential Unit" ............................................ 6
    Section 2.28    "Director" ................................................................................... 6
    Section 2.29    "District" ..................................................................................... 6
    Section 2.30    "Eligible Mortgagee" ................................................................. 7
    Section 2.31    "Executive Board" ...................................................................... 7
    Section 2.32    "Expansion Property" ................................................................. 7
    Section 2.33    "First Mortgage" ......................................................................... 7
    Section 2.34    "First Mortgagee" ....................................................................... 7
    Section 2.35    "Fractional Ownership Interest" or "Residence Interest" ........... 7

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
3 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

Section 2.36      "Fractional Ownership Plan," "Plan of Fractional Ownership" or "Plan" ........... 7
Section 2.37      "General Common Elements" ................................................................................. 7
Section 2.38      "Individual Air Space Unit" ................................................................................. 7
      2.38.1      "unfinished perimeter wall" ............................................................................. 7
      2.38.2      "unfinished perimeter ceiling" ......................................................................... 7
      2.38.3      "unfinished perimeter floor" ............................................................................ 7
Section 2.39      "Limited Common Elements" ............................................................................... 8
Section 2.40      "Management Agreement" .................................................................................... 8
Section 2.41      "Managing Agent" ................................................................................................ 8
Section 2.42      "Master Association" ............................................................................................ 9
Section 2.43      "Master Association Documents" ........................................................................ 9
Section 2.44      "Master Declaration" ........................................................................................... 9
Section 2.45      "Maximum Rate" .................................................................................................. 9
Section 2.46      "Mortgage" ........................................................................................................... 9
Section 2.47      "Mortgagee" ......................................................................................................... 9
Section 2.48      "Owner" ................................................................................................................ 9
Section 2.49      "Parking Association" ........................................................................................... 9
Section 2.50      "Parking Association Documents" ........................................................................ 9
Section 2.51      "Parking Declaration" .......................................................................................... 9
Section 2.52      "Parking Facility" ................................................................................................ 9
Section 2.53      "Plan Assessment" or "Club Dues" ................................................................... 10
Section 2.54      "Plan Member" ................................................................................................... 10
Section 2.55      "Plan Unit" or "Residence" ............................................................................... 10
Section 2.56      "Plan Unit Furnishings" ..................................................................................... 10
Section 2.57      "Plan Year" ........................................................................................................ 10
Section 2.58      "Property" ........................................................................................................... 10
Section 2.59      "PUD Plan" ........................................................................................................ 10
Section 2.60      "Reservation Procedures" ................................................................................... 10
Section 2.61      "Reserve Account" ............................................................................................. 10
Section 2.62      "Residential Directors" ...................................................................................... 10
Section 2.63      "Residential Owners" ......................................................................................... 10
Section 2.64      "Residential Unit" .............................................................................................. 10
Section 2.65      "Restricted Common Elements" ......................................................................... 10
Section 2.66      "Successor Declarant" ........................................................................................ 10
Section 2.67      "Supplemental Declaration" ............................................................................... 11
Section 2.68      "Supplemental Map" .......................................................................................... 11
Section 2.69      "Tourist Accommodation Directors" ................................................................. 11
Section 2.70      "Tourist Accommodation Owners" .................................................................... 11
Section 2.71      "Tourist Accommodation Unit" .......................................................................... 11
Section 2.72      "Unit" ................................................................................................................. 11
Section 2.73      "Use Periods" ..................................................................................................... 11
Section 2.74      "Village Core Plat" ............................................................................................ 11
ARTICLE 3. DIVISION OF PROJECT INTO CONDOMINIUM OWNERSHIP ............. 11
Section 3.1       Division into Units. ............................................................................................ 11
Section 3.2       Commercial Units. .............................................................................................. 12
Section 3.3       Residential Units. ............................................................................................... 13
Section 3.4       Delineation of Unit Boundaries. ........................................................................ 13
Section 3.5       Inseparability of Unit. ........................................................................................ 13
Section 3.6       Nonpartitionability of Common Elements. ....................................................... 14
ARTICLE 4. CONDOMINIUM MAP ................................................................................... 14
Section 4.1       Condominium Map. ............................................................................................ 14

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
4 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

| | | |
|---|---|---|
| Section 4.2 | Amendment. | 15 |
| ARTICLE 5. OWNERS' PROPERTY RIGHTS IN COMMON ELEMENTS | | 15 |
| Section 5.1 | General Common Elements. | 15 |
| Section 5.2 | Limited Common Elements. | 15 |
| Section 5.3 | Parking. | 16 |
| 5.3.1 | Association Regulation. | 16 |
| 5.3.2 | Parking Documents. | 16 |
| Section 5.4 | Amenities. | 17 |
| Section 5.5 | Rights of Owners of Fractional Ownership Interests. | 18 |
| ARTICLE 6. MEMBERSHIP AND VOTING RIGHTS IN ASSOCIATION | | 18 |
| Section 6.1 | Association Membership. | 18 |
| Section 6.2 | Categories of Membership. | 18 |
| 6.2.1 | Tourist Accommodation Owners. | 18 |
| 6.2.2 | Deed Restricted Residential Owners. | 19 |
| 6.2.3 | Commercial Owners. | 19 |
| Section 6.3 | Voting Rights. | 19 |
| 6.3.1 | General Common Elements. | 19 |
| 6.3.2 | Limited Common Elements. | 19 |
| Section 6.4 | Voting of Fractional Ownership Interest. | 19 |
| Section 6.5 | Election of Directors. | 20 |
| Section 6.6 | Declarant Control. | 20 |
| Section 6.7 | Executive Board. | 20 |
| Section 6.8 | Fairness Standard. | 21 |
| Section 6.9 | Voting by Association Members. | 22 |
| Section 6.10 | Owner's and Association's Address for Notices. | 22 |
| ARTICLE 7. ASSOCIATION DUTIES | | 23 |
| Section 7.1 | Association Management Duties. | 23 |
| Section 7.2 | Reserve Account. | 24 |
| Section 7.3 | Owner's Negligence. | 24 |
| Section 7.4 | Delegation of Management and Maintenance Duties. | 25 |
| Section 7.5 | Acquiring and Disposing of Personal Property. | 25 |
| Section 7.6 | Cooperation with District, Master Association and Other Associations. | 25 |
| Section 7.7 | Issuance of Rules and Regulations. | 26 |
| Section 7.8 | Enforcement of Association Documents. | 26 |
| Section 7.9 | Identity of Executive Board and Managing Agent. | 27 |
| Section 7.10 | Implied Rights. | 27 |
| Section 7.11 | Books and Records of the Association. | 27 |
| Section 7.12 | Compliance with Liquor Laws. | 27 |
| Section 7.13 | LIMITATION OF LIABILITY OF ASSOCIATION. | 27 |
| Section 7.14 | Financial Statements. | 27 |
| Section 7.15 | Limitation on Power of Managing Agent. | 28 |
| ARTICLE 8. ASSESSMENTS | | 29 |
| Section 8.1 | Covenant of Personal Obligation of Assessments. | 29 |
| Section 8.2 | Purpose of Assessments. | 29 |
| Section 8.3 | Commencement of Assessments. | 30 |
| Section 8.4 | Amount of Total Annual Assessments. | 30 |
| Section 8.5 | Apportionment of Annual Assessments. | 30 |
| Section 8.6 | Annual Budget. | 31 |
| Section 8.7 | Special Assessments. | 33 |
| Section 8.8 | Due Dates for Assessment Payments. | 34 |
| Section 8.9 | Personal Assessments. | 34 |

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
5 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

| | | |
|---|---|---|
| Section 8.10 | Declarant's Obligation to Pay Assessments. | 34 |
| Section 8.11 | Default Assessments. | 35 |
| Section 8.12 | Lien for Assessments. | 35 |
| Section 8.13 | Effect of Nonpayment of Assessments. | 35 |
| Section 8.14 | Successor's Liability for Assessments. | 36 |
| Section 8.15 | Waiver of Homestead Exemption; Subordination of Association's Lien for Assessments. | 36 |
| Section 8.16 | Statement of Status of Assessments. | 37 |
| Section 8.17 | Liens. | 38 |
| Section 8.18 | Declarant's Obligations to the Project. | 38 |
| ARTICLE 9. MAINTENANCE RESPONSIBILITY | | 41 |
| Section 9.1 | Owner's Rights and Duties with Respect to Interiors. | 41 |
| Section 9.2 | Responsibility of the Owner. | 41 |
| Section 9.3 | Responsibility of the Association. | 41 |
| Section 9.4 | Owner's Failure to Maintain or Repair. | 41 |
| Section 9.5 | Owner's Responsibility for Limited Common Elements. | 42 |
| ARTICLE 10. INSURANCE AND FIDELITY BONDS | | 42 |
| Section 10.1 | General Insurance Provisions. | 42 |
| Section 10.2 | Cancellation. | 43 |
| Section 10.3 | Policy Provisions. | 43 |
| Section 10.4 | Insurance Proceeds. | 43 |
| Section 10.5 | Association Policies. | 44 |
| Section 10.6 | Insurer Obligation. | 44 |
| Section 10.7 | Repair and Replacement. | 44 |
| Section 10.8 | Common Expenses. | 44 |
| Section 10.9 | Fidelity Insurance. | 45 |
| Section 10.10 | Worker's Compensation Insurance. | 45 |
| Section 10.11 | Other Insurance. | 45 |
| Section 10.12 | Insurance Obtained by Owners. | 45 |
| ARTICLE 11. CONVEYANCES AND TAXATION OF CONDOMINIUM UNITS | | 46 |
| Section 11.1 | Contracts to Convey Entered into Prior to Recording of Condominium Map and Declaration. | 46 |
| Section 11.2 | Contracts to Convey and Conveyances Subsequent to Recording of Condominium Map and Declaration. | 46 |
| Section 11.3 | Conveyance Deemed to Describe an Undivided Interest in Common Elements. | 46 |
| Section 11.4 | Separate Tax Assessments. | 47 |
| ARTICLE 12. MECHANICS' LIENS | | 47 |
| Section 12.1 | Mechanics' Liens. | 47 |
| Section 12.2 | Enforcement by the Association. | 47 |
| ARTICLE 13. USE RESTRICTIONS | | 48 |
| Section 13.1 | Use of Units. | 48 |
| Section 13.2 | Commercial Uses. | 48 |
| Section 13.3 | Residential Uses. | 48 |
| Section 13.4 | Conveyance of Units. | 49 |
| Section 13.5 | Use of Common Elements. | 49 |
| Section 13.6 | Prohibition of Increases in Insurable Risks and Certain Activities. | 49 |
| Section 13.7 | Use of Commercial Unit as Health Club Facility. | 50 |
| ARTICLE 14. EASEMENTS | | 51 |
| Section 14.1 | Easement of Enjoyment. | 51 |
| Section 14.2 | Delegation of Use. | 51 |
| Section 14.3 | Access to Commercial Units. | 51 |

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
6 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

| | | |
|---|---|---|
| Section 14.4 | Recorded Easements | 51 |
| Section 14.5 | Easements for Encroachments | 51 |
| Section 14.6 | Utility Easements | 52 |
| Section 14.7 | Reservation of Easements, Exceptions and Exclusions. | 52 |
| Section 14.8 | Emergency Access Easement | 52 |
| Section 14.9 | Maintenance Easement | 53 |
| Section 14.10 | Drainage Easement | 53 |
| Section 14.11 | Easements of Access for Repair, Maintenance, and Emergencies | 53 |
| Section 14.12 | Declarant's Rights Incident to Construction and Marketing | 53 |
| Section 14.13 | Right of Declarant and Association to Own Units and to Use Common Elements. | 53 |
| Section 14.14 | Remodeling Easement. | 54 |
| Section 14.15 | Reservation for Expansion. | 54 |
| Section 14.16 | Easement for Master Common Areas. | 54 |
| Section 14.17 | Easement for Access to Amenities. | 54 |
| Section 14.18 | Easements Deemed Created. | 54 |
| ARTICLE 15. ASSOCIATION AS ATTORNEY-IN-FACT | | 55 |
| Section 15.1 | Appointment. | 55 |
| Section 15.2 | General Authority. | 55 |
| ARTICLE 16. DAMAGE OR DESTRUCTION | | 55 |
| Section 16.1 | The Role of the Executive Board. | 55 |
| Section 16.2 | Estimate of Damages or Destruction. | 56 |
| Section 16.3 | Repair and Reconstruction. | 56 |
| Section 16.4 | Funds for Repair and Reconstruction. | 56 |
| Section 16.5 | Insurance Proceeds Sufficient to Repair. | 56 |
| Section 16.6 | Insurance Proceeds Insufficient to Repair; Special Assessment; Remedies for Failure to Pay Special Assessment. | 56 |
| Section 16.7 | Repairs. | 57 |
| Section 16.8 | Notice of Damage or Destruction. | 57 |
| ARTICLE 17. OBSOLESCENCE | | 58 |
| Section 17.1 | Adoption of Plan; Rights of Owners. | 58 |
| Section 17.2 | Sale of Obsolete Units. | 58 |
| ARTICLE 18. CONDEMNATION. | | 58 |
| Section 18.1 | Consequences of Condemnation. | 58 |
| Section 18.2 | Complete Taking. | 58 |
| Section 18.3 | Partial Taking. | 59 |
| Section 18.4 | Reorganization. | 59 |
| Section 18.5 | Repair and Reconstruction. | 60 |
| Section 18.6 | Notice of Condemnation. | 60 |
| Section 18.7 | Limitations on Actions of Association. | 60 |
| ARTICLE 19. OTHER ASSOCIATION MATTERS | | 60 |
| Section 19.1 | Master Association Matters. | 60 |
| Section 19.2 | Enforcement of Master Association Documents. | 60 |
| Section 19.3 | Aspen Highlands Village Residential Amenities Association. | 61 |
| Section 19.4 | Aspen Highlands Village Parking and Loading Dock Facility Association. | 61 |
| Section 19.5 | Architectural Control. | 61 |
| Section 19.6 | General Reservation. | 62 |
| Section 19.7 | No Use of Trademark. | 62 |
| Section 19.8 | Limit on Timesharing. | 62 |
| Section 19.9 | Acknowledgments. | 62 |
| ARTICLE 20. DECLARANT'S RIGHTS REGARDING TRANSFER | | 64 |

ARTICLE 21. PHASING, EXPANSION AND WITHDRAWAL ........................................................ 65
    Section 21.1    Phasing. .............................................................................................................. 65
    Section 21.2    Reservation of Expansion and Withdrawal Rights. ......................................... 65
    Section 21.3    Supplemental Declarations and Supplemental Maps. ..................................... 65
    Section 21.4    Expansion of Definitions........................................................................... 66
    Section 21.5    Declaration Operative on New Units. ............................................................ 66
    Section 21.6    Effect of Expansion. ........................................................................................ 66
    Section 21.7    Termination of Expansion and Development Rights. ...................................... 67
ARTICLE 22. MISCELLANEOUS ...................................................................................................... 67
    Section 22.1    Restriction on Declarant Powers. .................................................................... 67
    Section 22.2    Term. ................................................................................................................ 67
    Section 22.3    Amendment. ..................................................................................................... 67
    Section 22.4    Unilateral Amendment Rights Reserved by Declarant. .................................. 68
    Section 22.5    Recording of Amendments............................................................................... 68
    Section 22.6    Enforcement. .................................................................................................... 68
    Section 22.7    Severability....................................................................................................... 68
    Section 22.8    Conflict of Provisions....................................................................................... 69
    Section 22.9    Nonwaiver. ....................................................................................................... 69
    Section 22.10   Number and Gender. ........................................................................................ 69
    Section 22.11   Captions. .......................................................................................................... 69
    Section 22.12   Exhibits. ........................................................................................................... 69
ARTICLE 23. PLAN OF FRACTIONAL OWNERSHIP ...................................................................... 69
    Section 23.1    Right to Submit Tourist Accommodation Units to a Plan of Fractional
             Ownership. ........................................................................................................ 69
    Section 23.2    Definitions........................................................................................................ 70
        23.2.1   "Affiliation Agreement".................................................................................... 70
        23.2.2   "Allocation" or "Allocated Use Periods".......................................................... 70
        23.2.3   "Fractional Ownership Interest," "Residence Interest" or "Membership".......... 70
        23.2.4   "Membership Calendar".................................................................................... 71
        23.2.5   "Membership Program" or "The Ritz-Carlton Club Membership Program"...... 71
        23.2.6   "Membership Program Documents" ................................................................. 71
        23.2.7   "Plan Assessment" or "Club Dues".................................................................. 71
        23.2.8   "Plan Member".................................................................................................. 71
        23.2.9   "Plan Unit" or "Residence"............................................................................... 71
        23.2.10 "Plan Unit Furnishings" ................................................................................... 71
        23.2.11 "Plan Year" ...................................................................................................... 71
        23.2.12 "Program Manager" ......................................................................................... 71
        23.2.13 "Reservation Procedures"................................................................................. 71
        23.2.14 "Use Periods" ................................................................................................... 71
    Section 23.3    Submission of Tourist Accommodation Unit to the Plan of Fractional Ownership.
             ........................................................................................................................... 72
    Section 23.4    Conveyance by Purchaser. ............................................................................... 72
    Section 23.5    Legal Description of a Fractional Ownership Interest. ................................... 72
    Section 23.6    Administration and Management. .................................................................... 73
    Section 23.7    Membership Program. ..................................................................................... 73
    Section 23.8    Powers and Duties of the Tourist Accommodation Directors with Respect to
             Fractional Ownership Interests.......................................................................... 73
    Section 23.9    Plan Assessment. ............................................................................................. 74
    Section 23.10   Declarant Subsidy. .......................................................................................... 75
    Section 23.11   Acceptance; Enforcement; Indemnification....................................................... 76
    Section 23.12   Right of First Refusal to Purchase Fractional Ownership Interests. .................. 77

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
7 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

Section 23.13   Cross Use Easements Pertaining to Fractional Ownership Interests.................. 77
  23.13.1 Cross Use Easement Rights................................................................. 77
  23.13.2 Expansion of Use Right Easement. ..................................................... 78
  23.13.3 Reservation Procedures. .................................................................... 78
  23.13.4 Space Available Use Periods............................................................... 79
  23.13.5 Rental. .............................................................................................. 79
Section 23.14   Easement for Cleaning and Maintenance............................................ 79
Section 23.15   Appointment of Directors as Agent for Service of Process. ............... 80
ARTICLE 24. AGREEMENT TO PARTITION PROPERTY .............................................. 80

**LIST OF EXHIBITS**

| | |
|---|---|
| EXHIBIT A | LEGAL DESCRIPTION OF PROPERTY |
| EXHIBIT B | ALLOCATED INTERESTS |
| EXHIBIT C | EXPANSION PROPERTY |
| EXHIBIT D | EASEMENTS, LICENSES AND OTHER TITLE MATTERS |
| EXHIBIT E | CITY DISCLOSURE STATEMENT |
| EXHIBIT F | THE RITZ-CARLTON CLUB MEMBERSHIP PROGRAM AFFILIATION AGREEMENT |
| EXHIBIT G | THE RITZ-CARLTON CLUB, ASPEN HIGHLANDS MEMBERSHIP CALENDAR |
| EXHIBIT H | UNIT OWNERSHIP |

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
8 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

## DECLARATION OF CONDOMINIUM

### FOR

### ASPEN HIGHLANDS CONDOMINIUMS

THIS DECLARATION OF CONDOMINIUM FOR ASPEN HIGHLANDS CONDOMINIUMS (this "Declaration") dated as of January 10, 2001, shall be effective upon recordation and is made by THE RITZ-CARLTON DEVELOPMENT COMPANY, INC., a Delaware corporation, and HINES HIGHLANDS LIMITED PARTNERSHIP, a Delaware limited partnership (each a "Declarant" and jointly sometimes referred to as "Declarant"). Declarant is the owner of certain real property in Pitkin County, Colorado, more particularly described collectively on Exhibit A attached and made part of this Declaration by this reference (the "Property"). Each Declarant hereby makes the following grants, submissions and declarations for the Property:

### ARTICLE 1.
### IMPOSITION OF COVENANTS

Section 1.1   Purpose.

The purpose of this Declaration is to create a mixed use condominium project (the "Project") pursuant to the Colorado Common Interest Ownership Act as set forth in Article 33.3, Title 38, Colorado Revised Statutes, as amended and supplemented from time to time (the "Act"), within the Buildings (as hereinafter defined) and other improvements located on the Property, which Project shall incorporate residential and commercial uses (that part of the Project to be used for residential purposes being referred to as the "Residential Project" and that part of the Project to be used for commercial purposes being referred to as the "Commercial Project") and, subject to the terms of Article 23 hereof, the creation of a fractional ownership regime (the "Plan of Fractional Ownership") that will allow the sale and ownership of undivided ownership interests ("Fractional Ownership Interests" as defined below in Article 23) in the Tourist Accommodation Units (hereinafter defined).

Section 1.2   Residential Units.

The Residential Project shall consist of Tourist Accommodation Units (collectively, the "Tourist Accommodation Project") and Deed Restricted Residential Units (hereinafter defined) (collectively, the "Deed Restricted Residential Project").

Section 1.3   Commercial Units.

The Commercial Project shall consist of Commercial Units.

Section 1.4   Plan of Fractional Ownership.

Declarant may commit the Tourist Accommodations Units to a Plan of Fractional Ownership. The Plan of Fractional Ownership will provide for the creation of undivided fee ownership interests (to be known as Residence Interests) in the Tourist Accommodation Units.

1



Section 1.5     Intention of Declarant.

Declarant desires to (a) establish a uniform plan for the development, sale, ownership, use and maintenance of the Property including commercial and residential uses; (b) create a plan of fractional ownership permitting short-term accommodations to owners and guests; (c) protect the value and desirability of the Project as a whole while respecting the separate and distinct interests of the owners of each of the Residential Project and the Commercial Project; (d) further a plan for the improvement, sales and condominium ownership of the Residential Project and the Commercial Project; (e) create a harmonious and attractive mixed use development within the Project; and (f) promote and safeguard the health, comfort, safety, convenience and welfare of the owners of condominium units and Fractional Ownership Interests in the Residential Project and the owners of condominium units in the Commercial Project.

Section 1.6     Development and Use.

As of the recording of this Declaration, the Project consists of seventy-eight (78) Units (without consideration of any resubdivision of Units or the creation of Fractional Ownership Interests), of which forty-seven (47) are Tourist Accommodation Units, twenty-three (23) are Deed Restricted Residential Units, and eight (8) are Commercial Units, all located in those Buildings referred to for convenience as "Buildings 4 and 8." Declarant reserves the right for itself and any Successor Declarant to expand the Property and to expand the Common Elements by the addition of a Building referred to for convenience as "Building 2." In the event of expansion by the addition of Building 2, the number of units subjected to this Declaration shall be subject to the maximum limitations set forth in Section 3.1. All Tourist Accommodation Units may be subject to further subdivision into Fractional Ownership Interests. No additional condominium units may be established on the Property by subdivision of existing units, conversion of non-condominium space, or otherwise, except as provided herein and as provided by applicable land use regulations.

Section 1.7     Mixed Use.

The Residential Project and the Commercial Project together shall comprise the condominium project, the name of which is Aspen Highlands Condominiums. The functions, activities, physical appearance and other features commonly associated with commercial uses and residential uses shall be expressly permitted on the Property and within the Building and other improvements, all as more particularly described and governed herein.

Section 1.8     Submission of Property.

To accomplish the purposes and intentions recited above, Declarant hereby submits the Property, together with all improvements, appurtenances and facilities relating to or located on the Property now and in the future, to the provisions of the Act, and hereby imposes upon all of the Property the covenants, conditions, restrictions, easements, reservations, rights-of-way and other provisions of this Declaration, and Declarant hereby declares that all of the Property shall be held, sold, conveyed, encumbered, leased, rented, occupied and improved, subject to the provisions of this Declaration.

Section 1.9     Master Declaration.

The Property is subject to the Declaration for Aspen Highlands Village dated, October 13, 1998, and recorded October 15, 1998, under Reception No. 423272 in the Office of the Clerk and Recorder of Pitkin County, Colorado (the "Master Declaration") and the Final Plat of Aspen Highlands Village

2



P.U.D., recorded in the Office of the Clerk and Recorder of Pitkin County, Colorado, on October 15, 1998 as Reception No. 423275 (the "Final Plat").

Section 1.10    Covenants Running with the Land.

All provisions of this Declaration shall be deemed to be covenants running with the land or equitable servitudes, as the case may be. The benefits, burdens and other provisions contained in this Declaration shall be binding upon and shall inure to the benefit of Declarant, all Owners and their respective heirs, executors, administrators, personal representatives, successors and assigns.

## ARTICLE 2.
## DEFINITIONS

The following words, when used in this Declaration, shall have the meanings designated below unless the context shall expressly provide otherwise:

Section 2.1    "Allocated Interest" means the interest allocated to each Unit expressed as a percentage as set forth in Exhibit B attached hereto and incorporated herein by reference. Allocated Interests govern voting rights, assessment obligations and ownership interests for all Units.

Section 2.2    "Allocated Interest-Commercial" means, with respect to any Commercial Unit, the Allocated Interest-General allocated to such Commercial Unit as set forth on Exhibit B, attached hereto and incorporated herein by reference divided by the total of Allocated Interests-General allocated to all Commercial Units in the Association from time to time.

Section 2.3    "Allocated Interest-Deed Restricted Residential" means, with respect to any Deed Restricted Residential Unit, the Allocated Interest-General allocated to such Deed Restricted Residential Unit as set forth on Exhibit B, attached hereto and incorporated herein by reference, divided by the total of Allocated Interests-General allocated to all Deed Restricted Residential Units in the Association from time to time.

Section 2.4    "Allocated Interest-General" means, with respect to any Unit, the Allocated Interest allocated to such Unit as set forth on Exhibit B, attached hereto and incorporated herein by reference, divided by the total of Allocated Interests allocated to all Units in the Association from time to time.

Section 2.5    "Allocated Interest-Tourist Accommodation" means, with respect to any Tourist Accommodation Unit, the Allocated Interest-General allocated to such Tourist Accommodation Unit as set forth on Exhibit B, attached hereto and incorporated herein by reference, divided by the total of Allocated Interests-General allocated to all Tourist Accommodation Units in the Association from time to time.

Section 2.6    "Allocated Interest-Residential" means, with respect to any Residential Unit, the Allocated Interest-General allocated to such Residential Unit (whether such Unit is a Deed Restricted Residential Unit or a Tourist Accommodation Unit) as set forth on Exhibit B, attached hereto and incorporated herein by reference, divided by the total of Allocated Interests-General allocated to all Residential Units (whether such Units are Deed Restricted Residential Units or Tourist Accommodation Units) in the Association from time to time.

Section 2.7    "Amenities" shall have the meaning given it in Section 5.4 hereinbelow.

3



450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
11 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY C

Section 2.8    "Amenities Association" means the Aspen Highlands Village Residential Amenities Association, created by that certain Residential Amenities Declaration for Aspen Highlands Village, dated October 15 1998, and recorded October 15, 1998, under Reception No. 423273 in the Office of the Clerk and Recorder of Pitkin County, Colorado, and the articles of incorporation and bylaws of the Amenities Association.

Section 2.9    "Aspen Highlands Village" means all of the real property subject to the Master Declaration.

Section 2.10   "Assessments" means the annual, special, personal and default Assessments levied pursuant to Article 8 below.  Assessments are also referred to as a Common Expense Liability under the Act.

Section 2.11   "Association" means Aspen Highlands Condominium Association, Inc., a Colorado nonprofit corporation, and its successors and assigns.

Section 2.12   "Association Documents" means the basic documents creating and governing the Project, including, but not limited to, this Declaration, the articles of incorporation and bylaws of the Association, the Map and any procedures, rules, regulations or policies relating to the Project adopted under such documents by the Association or the Executive Board.

Section 2.13   "Building(s)" means the building or buildings as the case may be (including all fixtures and improvements contained within it) in which Units and Common Elements are located. Buildings may be referred to as Buildings 2, 4 and 8 with reference to the particular Lot on which the Building or Buildings are located.  The term "Building" or "Buildings" includes Building 2 only if Lot 2 is made subject to this Declaration.

Section 2.14   "Category" shall mean each separate category of members in the Association, namely the Deed Restricted Residential Owners, the Tourist Accommodation Owners (including the Owners of Fractional Ownership Interests therein), and the Commercial Owners (all as described in Section 6.2 of this Declaration), and "Categories" shall mean all such categories collectively. The term shall also refer to the respective Categories of Units as well as the respective Categories of Directors that serve on the Executive Board.

Section 2.15   "Class" shall mean individually the Residential Owners and the Commercial Owners, and "Classes" shall mean both such classes collectively. The term shall also refer to the respective Classes of Units as well as the respective Classes of Directors that serve on the Executive Board.

Section 2.16   "Commercial Directors" means the members of the Executive Board elected by the Commercial Owners after the expiration of the Declarant Control Period in accordance with the procedures set forth below and in the bylaws of the Association.  Until expiration of the Declarant Control Period, any specific responsibilities of the Commercial Directors shall be undertaken and discharged by the entire Executive Board, and the entire Executive Board shall be authorized to so act.  After the expiration of the Declarant Control Period there shall be three Commercial Directors, one of which shall be elected by the owners of Commercial Units in Building 4 and, if Building 2 has been subjected to this Declaration, Building 2; one of which shall be elected by the owners of Commercial Units in Building 8 and one of which shall be elected by the owners of Commercial Units in all Buildings that are subject to this Declaration at large.

4



450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
12 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY C

Section 2.17   "Commercial Owners" means those Owners of Commercial Units within the Project.

Section 2.18   "Commercial Unit" means a Unit designated with the prefix "C" on the Map and having a commercial use, and not the Residential Units.

Section 2.19   "Common Elements" means all of the Project, except the Individual Air Space Units, and including, without limiting the generality of the foregoing, the following components:

2.19.1 The Property, excluding improvements on the Property unless specifically described in this subsection;

2.19.2 The Buildings (including, but not by way of limitation, the foundations, columns, girders, beams, supports, perimeter and supporting walls, roofs, fireplaces, chimneys, flues, chimney chases, patios, decks, balconies, corridors, lobbies, vestibules, entrances and exits; and the mechanical installations of the Buildings consisting of the equipment and materials making up any central services such as power, light, gas, hot and cold water, sewer and heating which exist for use by one or more of the Owners, including the pipes, vents, ducts, flues, cable conduits, wires, telephone wire and other similar utility installations used in connection therewith and the areas designated on the Map as including those installations; trash rooms and storage rooms; elevators and stairs), except for the Individual Air Space Units;

2.19.3 The plazas, yards, sidewalks, walkways, parking areas, paths, grass, shrubbery, trees, planters, driveways, roadways, landscaping, gardens and related facilities upon the Property;

2.19.4 The pumps, tanks, motors, fans, storm drainage structures, compressors, ducts and, in general, all apparatus, installations and equipment of the Buildings existing for use of one or more of the Owners; and

2.19.5 In general, all other parts of the Project designated by Declarant as Common Elements and existing for the use of one or more of the Owners.

The Owners of the separate Units shall own the Common Elements, each Owner of a Unit having an undivided interest in the Common Elements as provided below.

Section 2.20   "Common Expense(s)" means and includes the following:

2.20.1 Expenses of administration, insurance, operation and management, repair or replacement of the Common Elements except to the extent such repairs and replacements are responsibilities of an Owner as delineated in Section 9.2 below;

2.20.2 Expenses declared Common Expenses by the provisions of this Declaration or the bylaws of the Association;

2.20.3 All sums lawfully assessed against the Units by the Executive Board;

2.20.4 Expenses agreed upon as Common Expenses by the members of the Association; and

5


450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
13 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY C

2.20.5  Expenses provided to be paid by the Residential Owners and the Commercial Owners collectively or respectively in accordance with the terms of this Declaration pursuant to the Management Agreement(s) for the maintenance of the General Common Elements, the Limited Common Elements-Residential, the Limited Common Elements-Tourist Accommodation, the Limited Common Elements-Deed Restricted Residential and/or the Limited Common Elements-Commercial.

Section 2.21   "Condominium Map" or "Map" means and includes any engineering survey or surveys of the Property as provided in Article 4, below.

Section 2.22   "Declarant" means Hines Highlands Limited Partnership, a Delaware limited partnership ("HHLP"), and The Ritz-Carlton Development Company, Inc., a Delaware corporation ("RCDC") and their respective successors, transferees and assigns which are Successor Declarants.  No party other than HHLP and RCDC shall exercise the rights and privileges reserved herein to Declarant, or be deemed a successor, transferee or assignee of Declarant rights, unless such party shall receive and record in the Office of the Clerk and Recorder of Pitkin County, Colorado, a written instrument from HHLP and RCDC assigning or transferring all or a portion of such rights and privileges.

Section 2.23   "Declarant Control Period" means the period of time commencing on the date of incorporation of the Association and terminating on the earliest of the following events: (i) sixty (60) days after conveyance by Declarant of seventy-five percent (75%) of the Units to Owners, (ii) two (2) years after the last conveyance of a Unit or Fractional Ownership Interest by Declarant in the ordinary course of business, or (iii) the date on which Declarant voluntarily relinquishes such power evidenced by a notice recorded in the Office of the Clerk and Recorder for Pitkin County, Colorado.

Section 2.24   "Declaration" means this Declaration of Condominium for Aspen Highlands Condominiums together with any supplement or amendment to this Declaration, recorded in the Office of the Clerk and Recorder of Pitkin County, Colorado.

Section 2.25   "Deed Restricted Residential Directors" means the members of the Executive Board elected by the Deed Restricted Residential Owners after the expiration of the Declarant Control Period in accordance with the procedures set forth below and in the bylaws of the Association.  Until expiration of the Declarant Control Period, any specific responsibilities of the Deed Restricted Residential Directors shall be undertaken and discharged by the entire Executive Board, and the entire Executive Board shall be authorized to so act.

Section 2.26   "Deed Restricted Residential Owners" means those Owners of Deed Restricted Residential Units within the Project.

Section 2.27   "Deed Restricted Residential Unit" means a Unit designated with the prefix "DR" on the Map and restricted as an affordable housing sale unit, rental unit or dormitory unit pursuant to the PUD Plan, and not the Tourist Accommodation Units or the Commercial Units.

Section 2.28   "Director" means a member of the Executive Board.

Section 2.29   "District" means, collectively, the Aspen Highlands Commercial Metropolitan District, a Colorado quasi-municipal corporation, and the Aspen Highlands Residential Metropolitan District, a Colorado quasi-municipal corporation.



Section 2.30    "Eligible Mortgagee" means a holder of a First Mortgage on a Unit or Fractional Ownership Interest who has submitted a written request that the Association notify it on any proposed action requiring the consent of a specified percentage of Eligible Mortgagees.

Section 2.31    "Executive Board" means the governing body of the Association, as provided in this Declaration and in the articles of incorporation and bylaws of the Association.

Section 2.32    "Expansion Property" means the real property more particularly described on the attached Exhibit C attached hereto and incorporated herein which Declarant may subject to this Declaration by one or more duly recorded Supplemental Declarations and Supplemental Maps.

Section 2.33    "First Mortgage" means an unpaid and outstanding mortgage, deed of trust or other security instrument recorded in the Office of the Clerk and Recorder of Pitkin County, Colorado, which secures financing for the construction or development of the Project or which encumbers a Unit or Fractional Ownership Interest and which, in any case, has priority of record over all other recorded liens except those liens made superior by statute (such as general ad valorem tax liens and special assessments) and liens of other associations.

Section 2.34    "First Mortgagee" means the Mortgagee under a First Mortgage.

Section 2.35    "Fractional Ownership Interest" or "Residence Interest" shall have the meaning given to it in Article 23 below.

Section 2.36    "Fractional Ownership Plan," "Plan of Fractional Ownership" or "Plan" means the system of mutual use rights and obligations created and established by Article 23 of this Declaration for Owners of Fractional Ownership Interests.

Section 2.37    "General Common Elements" means the Common Elements, except for Limited Common Elements and the Restricted Common Elements.

Section 2.38    "Individual Air Space Unit" means, with respect to a Residential Unit or a Commercial Unit, that portion of a single Unit designated for separate ownership by an Owner depicted on the Map and consisting of enclosed rooms and bounded by the interior face of the unfinished perimeter walls, ceilings, and floors of the Individual Air Space Unit, and the doors and windows thereof; provided, however, some Commercial Unit(s) may not be bounded on all sides by walls, in which case the boundaries on such sides of an Individual Air Space Unit(s) shall be those boundaries as are designated on the Map.  For the purpose of defining an Individual Air Space Unit, the terms set forth below shall be defined as follows:

2.38.1    "unfinished perimeter wall" means the interior surfaces of the studs, supports and other wooden, metal or similar structural materials which constitute the interior face of a wall of an Individual Air Space Unit.

2.38.2    "unfinished perimeter ceiling" means the beams, joists and wooden or other structural materials that constitute the interior face of the ceiling of an Individual Air Space Unit.

2.38.3    "unfinished perimeter floor" means the beams, floor joists and floor deck material that constitute the interior face of the floor of an Individual Air Space Unit.



An Individual Air Space Unit shall include any drywall, wall paneling, wood, tile, paint, paper, carpeting or any other wall, ceiling or floor covering, windows, window glass and window frames, shutters, awnings, doorsteps, stoops and doors, door glass and door frames. An Individual Air Space Unit shall also include any fireplace or stove hearth, facing brick, tile or firebox. An Individual Air Space Unit shall further include fixtures and hardware and all improvements contained within the unfinished perimeter walls, ceilings and floors. An Individual Air Space Unit shall include any heating and refrigerating elements or related equipment, utility lines and outlets, electrical and plumbing fixtures, pipes and all other related equipment required to provide heating, air-conditioning, hot and cold water, electrical or other utility services to the Individual Air Space Unit and located within the unfinished walls, ceilings and floors; provided, however, that an Individual Air Space Unit shall not include any of the structural components of the Building or utility or service lines located within the Individual Air Space Unit but serving more than one Individual Air Space Unit.

Section 2.39   "Limited Common Elements" means those parts of the Common Elements that are limited to and reserved for the use of fewer than all of the Owners. Limited Common Elements that are reserved for the exclusive use of all Residential Owners are defined as "Limited Common Elements-Residential" or "L.C.E.-R" on the Map. Limited Common Elements that are reserved for the exclusive use of Tourist Accommodation Owners are defined as "Limited Common Elements-Tourist Accommodation" or "L.C.E.-TA" on the Map. Limited Common Elements that are reserved for the exclusive use of Deed Restricted Residential Owners are defined as "Limited Common Elements-Deed Restricted Residential" or "L.C.E.-DR" on the Map. Limited Common Elements that are reserved for the exclusive use of Commercial Owners are defined as "Limited Common Elements-Commercial" or "L.C.E.-C" on the Map. Limited Common Elements - Commercial include the storefronts of Commercial Units located on the ground floor extending the width and height of the Commercial Unit to which they are appurtenant, all as may be further defined on the Map. Limited Common Elements may be reserved for the exclusive use of one or more Classes or Categories of Owners. Without limiting the foregoing, the Limited Common Elements shall include any balcony, deck, patio, private entryway or porch adjacent to an Individual Air Space Unit, storage spaces that may be designated as Limited Common Elements serving those particular Individual Air Space Units, parking space units owned by the Association that may be designated as Limited Common Elements for particular Units pursuant to Section 5.3 below, and any individual fireplace chimneys and flues, individual air-conditioning units and fixtures and individual water and sewer service lines, water heaters and any plumbing or other installation or item servicing an Individual Air Space Unit, including, but not limited to, all such items designated as Limited Common Elements on the Map. The deck, balcony or patio, fireplace chimneys or other items which are accessible from, associated with and which adjoin a particular Individual Air Space Unit or Units, without further reference thereto, shall be used in connection with such Individual Air Space Unit or Units to the exclusion of the use thereof by the other Owners, except by invitation. Notwithstanding any other provision of this Section, certain Limited Common Elements-Tourist Accommodation shall be made available for use by persons other than the Tourist Accommodation Owners, as more particularly described in Section 5.4 hereinbelow. No reference to the limited use by individual Owners need be made in any instrument of conveyance, encumbrance or other instrument.

Section 2.40   "Management Agreement" means any contract or arrangement entered into for purposes of discharging the responsibilities of the Executive Board relative to the operation, maintenance and management of the Project.

Section 2.41   "Managing Agent" (or sometimes as the case may be "Management Company") means a person, firm, corporation or other entity employed or engaged as an independent contractor by the Association pursuant to a Management Agreement to perform management services for the Project.

8



Section 2.42   "Master Association" means the Aspen Highlands Village Association, created by the Master Association Documents.

Section 2.43   "Master Association Documents" means the Master Declaration and the articles of incorporation and bylaws of the Master Association, and any procedures, rules and regulations and policies adopted under such documents by the Master Association.

Section 2.44   "Master Declaration" means the Declaration for Aspen Highlands Village, dated October 13, 1998, as recorded October 15, 1998, at Reception No. 423272 in the Office of the Clerk and Recorder of Pitkin County, Colorado, as further amended and supplemented from time to time.

Section 2.45   "Maximum Rate" shall mean three (3) percentage points greater than that rate of interest charged by a bank (designated from time to time by the Executive Board) to the best commercial customers of the designated bank for short-term loans and identified as the "prime rate" by such bank as of the date on which such Maximum Rate is imposed with respect to any amount payable under this Declaration, or if less, the maximum rate allowed by law.

Section 2.46   "Mortgage" means any unpaid and outstanding mortgage, deed of trust or other security instrument recorded in the Office of the Clerk and Recorder of Pitkin County, Colorado, which secures financing for the construction or development of the Project or which encumbers a Unit or Fractional Ownership Interest.

Section 2.47   "Mortgagee" means any person or entity named as a mortgagee or beneficiary under any Mortgage, or any successor to the interest of any such person under such Mortgage.

Section 2.48   "Owner" means any record owner (including Declarant, and including a contract seller, but excluding a contract purchaser), whether a natural person or persons, or an entity, of a fee simple title interest in and to any Unit (including, without limitation, an owner of an Fractional Ownership Interest); excluding, however, any record owner with an interest therein merely as a Mortgagee (unless such Mortgagee has acquired fee simple title interest in the Unit pursuant to foreclosure or any proceedings in lieu of foreclosure).

Section 2.49   "Parking Association" means Aspen Highlands Village Parking and Loading Dock Facility Association, a Colorado nonprofit corporation, established pursuant to the Parking Association Documents and any organization established to succeed it.

Section 2.50   "Parking Association Documents" means the Parking Declaration, together with the articles of incorporation and the bylaws of the Parking Association and all rules, regulations, design guidelines, and other documents established pursuant to the Parking Declaration and other documents described above, all as amended, supplemented and restated from time to time.

Section 2.51   "Parking Declaration" means the Declaration for Aspen Highlands Village Parking and Loading Dock Facility, a Condominium, dated 01/10/01 , and recorded on 01/11/01 , under Reception No. 450452 in the Office of the Clerk and Recorder of Pitkin County, Colorado, as amended, supplemented and restated from time to time.

Section 2.52   "Parking Facility" means one or more buildings, together with the real property on which such building(s) are located, which is submitted to condominium or planned community ownership by the Parking Declaration and the associated map.

9



Section 2.53    "Plan Assessment" or "Club Dues" shall have the meaning given it in Article 23 hereinbelow.

Section 2.54    "Plan Member" shall have the meaning given it in Article 23 hereinbelow.

Section 2.55    "Plan Unit" or "Residence" shall have the meaning given it in Article 23 hereinbelow.

Section 2.56    "Plan Unit Furnishings" shall have the meaning given it in Article 23 hereinbelow.

Section 2.57    "Plan Year" shall have the meaning given it in Article 23 hereinbelow.

Section 2.58    "Property" means the real property described in the attached Exhibit A.

Section 2.59    "PUD Plan" means (i) the Aspen Highlands Village Detailed Submission Consolidated Plan recorded as Reception No. 423269 in the Office of the Clerk and Recorder of Pitkin County, Colorado, (ii) the Aspen Highlands Planned Unit Development Guide recorded as Reception No. 423274 in the Office of the Clerk and Recorder of Pitkin County, Colorado, (iii) the Final Plat, (iv) the Village Core Plat, (v) Ordinance No. 35 (Series 2000) of the City Council of the City of Aspen, and (vi) Ordinance No. 36 (Series 2000) of the City Council of the City of Aspen.

Section 2.60    "Reservation Procedures" shall have the meaning given it in Article 23 hereinbelow.

Section 2.61    "Reserve Account" shall have the meaning given it in Section 7.2 hereinbelow.

Section 2.62    "Residential Directors" means the Tourist Accommodation Directors and the Deed Restricted Residential Directors.

Section 2.63    "Residential Owners" means those Owners of Residential Units (including any Owner of Fractional Ownership Interests therein) within the Project. Unless the context otherwise requires, Owners of Fractional Ownership Interests shall be deemed to be Owners for usage and access purposes only during those times when they are entitled pursuant to the Association Documents and the Membership Program Documents to have access to the Project

Section 2.64    "Residential Unit" means a Unit having a residential use (including the Tourist Accommodation Units and the Deed Restricted Residential Units), and not the Commercial Units.

Section 2.65    "Restricted Common Elements" means those portions of the Common Elements designated as "R.C.E." on the Map, designated by the Executive Board, with the approval of the appropriate Directors pursuant to Section 7.1, or designated in these Declarations, which areas are subject to easements, leases, or licenses created for the benefit of certain third parties as described on the Map, this Declaration or otherwise and restricted to the uses described therein.

Section 2.66    "Successor Declarant" means any party or entity to whom Declarant or either of them assigns any or all of its rights, obligations or interest as Declarant, as evidenced by an assignment or deed of record executed by both the assigning Declarant and the transferee or assignee and recorded in the Office of the Clerk and Recorder of Pitkin County, Colorado, designating such party as a Successor

10



Declarant. Upon such recording, Declarant's rights and obligations under this Declaration shall cease and terminate to the extent provided in such document.

Section 2.67   "Supplemental Declaration" means an instrument which subjects any part of the Expansion Property to this Declaration, as more fully provided in Article 21 below.

Section 2.68   "Supplemental Map" means a condominium map of the Project which depicts any part of the Expansion Property becoming subject to this Declaration through a Supplemental Declaration, as more fully provided in Article 21 below.

Section 2.69   "Tourist Accommodation Directors" means the members of the Executive Board elected by the Tourist Accommodation Owners after the expiration of the Declarant Control Period in accordance with the procedures set forth below and in the bylaws of the Association. Until expiration of the Declarant Control Period, any specific responsibilities of the Tourist Accommodation Directors shall be undertaken and discharged by the entire Executive Board, and the entire Executive Board shall be authorized to so act.

Section 2.70   "Tourist Accommodation Owners" means those Owners of Tourist Accommodation Units (including any Owner of Fractional Ownership Interests therein) within the Project. Unless the context otherwise requires, Owners of Fractional Ownership Interests shall be deemed to be Owners for usage and access purposes only during those times when they are entitled pursuant to the Association Documents to have access to the Project.

Section 2.71   "Tourist Accommodation Unit" means a Unit designated with the prefix "TA" on the Map and designated as a tourist accommodation unit in the PUD Plan, and not the Deed Restricted Residential Units or the Commercial Units.

Section 2.72   "Unit" means, with respect to a Tourist Accommodation Unit, a Deed Restricted Residential Unit, or a Commercial Unit, the fee simple interest in and to an Individual Air Space Unit, together with the undivided interests in the Common Elements appurtenant to the Individual Air Space Unit, specifically excluding, however, any Fractional Ownership Interest in a Unit. Each Unit's undivided interest in the Common Elements shall be equivalent to the Allocated Interest of such Unit with respect to the General Common Elements and each category of Limited Common Elements. Unit is also referred to as a Unit under the Act.

Section 2.73   "Use Periods" shall have the meaning given it in Article 23 hereinbelow.

Section 2.74   "Village Core Plat" means the Supplemental Plat, Aspen Highlands Village P.U.D., Block D, recorded on September 28, 1999, under Reception No. 436003 in the Office of the Clerk and Recorder of Pitkin County, Colorado, as amended, supplemented and restated from time to time.

Each capitalized term not otherwise defined in this Declaration or in the Map shall have the same meanings specified or used in the Act.

## ARTICLE 3.
## DIVISION OF PROJECT INTO CONDOMINIUM OWNERSHIP

Section 3.1   Division into Units.

As of the recording of this Declaration, the Property is hereby divided into seventy-eight (78) Units (without consideration of any resubdivision of Units or the creation of Fractional Ownership



458454 01/11/2001 03:02P CONDO DE DAVIS SILVI
19 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY C

Interests), of which forty-seven (47) are Tourist Accommodation Units (forty-five (45) in Building 8 and two (2) in Building 4); twenty-three (23) are Deed Restricted Residential Units (seven (7) in Building 8 and sixteen (16) in Building 4); and eight (8) are Commercial Units (four (4) in Building 8 and four (4) in Building 4). Each Unit consists of a fee simple interest in an Individual Air Space Unit and an undivided fee simple interest in the Common Elements in accordance with the respective undivided interests in the Common Elements. Such undivided interests in the Common Elements are hereby declared to be appurtenant to the respective Units. Declarant reserves the right for itself and any Successor Declarant to expand the Property and to expand the Common Elements by the addition of a Building referred to for convenience as "Building 2." In the event of expansion by the addition of Building 2 and/or the resubdivision of Units the maximum number of Units that can be created in the Project subject to any development limitations governing the Property as reflected in the PUD Plan, as the same may be amended, is sixty (60) Commercial Units and one hundred ninety-four (194) Residential Units.

Section 3.2    Commercial Units.

The Owner or Owners of one or more Commercial Units shall have the right to (a) relocate the boundaries of and between adjoining Commercial Units, (b) physically combine a part of or combination of parts of the space of one Commercial Unit with a part of or combination of parts of the space within one or more adjoining Commercial Units, or (c) subdivide a Commercial Unit or part of a Commercial Unit to create additional Commercial Units; provided, however, that no Commercial Unit shall be less than 250 square feet. In order to accomplish any one of the foregoing, a Commercial Owner may remove or construct additional walls subject to the terms of this Section and any other applicable provisions of this Declaration. Upon the relocation, combination or subdivision of any Commercial Units, the Commercial Unit(s) resulting from such relocation, combination or subdivision shall be re-allocated the Allocated Interest of the predecessor Commercial Unit(s) in and to the General Common Elements and the Limited Common Elements-Commercial. A Commercial Owner must first obtain the consent of the Commercial Directors as described below and must obtain all necessary approvals from any governmental authority having jurisdiction over the Project before exercising its rights herein. The cost and expense incurred for legal, architectural and/or engineering fees and all other costs and expenses incurred by the Association shall be borne by that party requesting such a change.

In order to relocate the boundaries of, combine or subdivide any Commercial Unit(s) as provided above, the Owner(s) of such Commercial Unit(s) shall submit an application to the Commercial Directors, which application shall be executed by such Owner and shall include (a) evidence that the proposed relocation of the boundaries of, combination or subdivision of a Commercial Unit or Units complies with all building codes, fire codes and other applicable ordinances or resolutions adopted and enforced by the Master Association, the City of Aspen and the State of Colorado, and that the proposed action does not violate the terms of any Mortgage encumbering the Commercial Unit(s), (b) the proposed reallocations of Allocated Interests, (c) the proposed form of amendments to this Declaration, including the Map, as may be necessary to show the Commercial Unit(s) which are created by the relocation, combination or subdivision of a Commercial Unit(s) and their dimensions and identifying numbers, (d) a deposit against attorneys' fees and costs which the Commercial Owners and/or the Association may incur in reviewing and effectuating the transaction, in an amount reasonably estimated by the Commercial Directors, (e) evidence of the required approval of the Commercial Owner(s) that own the subject Commercial Unit(s), (f) evidence satisfactory to the Commercial Directors that the Owner(s) has obtained or caused to be obtained all requisite insurance in connection with any construction required to effect the proposed action, (g) indemnification of the Association by the Owner(s) for any and all matters relating to the proposed action, and (h) such other information as may be reasonably requested by the Commercial Directors. To the extent possible, the Commercial Directors shall be permitted to execute and record any amendment effectuating the relocation of boundaries of or combination or subdivision of Commercial Units. If the Commercial Directors require the consent of or the execution of documents by the entire Executive Board

12



in connection with effectuating such relocation of boundaries of or combination or subdivision of Commercial Units, the Executive Board shall approve and take such necessary actions in connection therewith if the requirements in this paragraph have been satisfied.

    Section 3.3    Residential Units.

    The Declarant during the Declarant Control Period shall have the right to (a) relocate the boundaries of and between adjoining Residential Units, (b) physically combine a part of or combination of parts of the space of one Residential Unit with a part of or combination of parts of the space within one or more adjoining Residential Units, or (c) subdivide a Residential Unit or part of a Residential Unit to create additional Residential Units; provided, however, that no Residential Unit shall be less than 250 square feet. In order to accomplish any one of the foregoing, the Declarant may remove or construct additional walls subject to the terms of this Section and any other applicable provisions of this Declaration. Upon the relocation, combination or subdivision of any Residential Unit(s), the Residential Unit(s) resulting from such relocation, combination or subdivision shall be re-allocated the Allocated Interest of the predecessor Residential Unit(s) in and to the General Common Elements and the Limited Common Elements-Residential. The Declarant is not required to obtain the consent or the Executive Board or any Owners to relocate, combine or subdivide any Residential Unit(s) during the Declarant Control Period but must obtain all necessary approvals from any governmental authority having jurisdiction over the Project before exercising its rights herein.

    In order to relocate the boundaries of, combine or subdivide any Residential Unit(s) as provided above, the Declarant shall be responsible for submitting documentation reflecting (a) the proposed reallocations of Allocated Interests, (b) the proposed form of amendments to this Declaration, including the Map, as may be necessary to show the Residential Unit(s) which are created by the relocation, combination or subdivision of a Residential Unit(s) and their dimensions and identifying numbers, (c) evidence that the Declarant has obtained or caused to be obtained all requisite necessary governmental approvals as well as providing insurance in connection with any construction required to effect the proposed action, and (d) indemnification of the Association by the Declarant for any and all matters relating to the proposed action. The Declarant shall be permitted to execute and record any amendment to the Declaration or the Map, or both, effectuating the relocation of boundaries of or combination or subdivision of Residential Unit(s). If the Declarant requires, whether for title purposes, governmental approvals or otherwise, the ratification of the action by the entire Executive Board or the execution of documents by the executive officers of the Association in connection with effectuating such relocation of boundaries of or combination or subdivision of Residential Unit(s), the Executive Board shall ratify and take such necessary actions in connection therewith if the requirements in this paragraph have been satisfied.

    The rights reserved to Declarant under this Section 3.3 shall not apply to a Tourist Accommodation Unit after Declarant first conveys a Fractional Ownership Interest in such Tourist Accommodation Unit to an unaffiliated third-party purchaser thereof.

    Section 3.4    Delineation of Unit Boundaries.

    The boundaries of each Individual Air Space Unit are delineated and designated by an identifying number on the Map

    Section 3.5    Inseparability of Unit.

    Except as provided in Article 23 of this Declaration and except as provided in Section 3.2 and Section 3.3 hereinabove, no part of a Unit or of the legal rights comprising ownership of a Unit may be

13


450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
21 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY C

partitioned or separated from any other part thereof during the period of condominium ownership prescribed in this Declaration. Subject to Section 3.1 above, each Unit shall always be conveyed, transferred, devised, bequeathed, encumbered and otherwise affected only as a complete Unit. Every conveyance, transfer, gift, devise, bequest, encumbrance or other disposition of a Unit or any part thereof shall be presumed to be a disposition of the entire Unit, together with all appurtenant rights and interests created by law or by this Declaration.

All rights with respect to the use, possession, enjoyment, management or disposition of a Unit (including any Fractional Ownership Interest) which an Owner might otherwise have as a tenant-in-common (including, but not limited to, any common law or statutory right jointly to use, possess or manage commonly owned property) are hereby unconditionally and irrevocably subordinated to this Declaration for so long as this Declaration shall remain in effect; provided, however, that in the event that an election to terminate this Declaration is made pursuant any provision of this Declaration, an Owner shall have the rights specified in this Declaration and the Act.

Section 3.6   Nonpartitionability of Common Elements.

Subject to the provisions of this Article and Article 5 below, the Common Elements shall be owned in common by all of the Owners and shall remain physically undivided; provided, however, the Limited Common Elements shall be for the exclusive use of, enjoyment by and control by the Owners of Units to which such Limited Common Elements are appurtenant, except as provided with respect to the Amenities in Section 5.4 hereinbelow. No Owner shall bring any action for partition or division of the Common Elements. By acceptance of a deed or other instrument of conveyance or assignment to a Unit or Fractional Ownership Interest, each Owner of the Unit or Fractional Ownership Interest shall be deemed to have specifically waived such Owner's right to institute or maintain a partition action or any other cause of action designed to cause a division of the General Common Elements or any Limited Common Elements, and this Section may be pleaded as a bar to the maintenance of such an action. Any Owner who shall institute or maintain any such action shall be liable to the Association and hereby agrees to reimburse the Association for the Association's costs, expenses and reasonable attorneys' fees in defending any such action. Such amounts shall automatically become a default Assessment determined and levied against such Owner's Unit or Fractional Ownership Interest and enforced by the Association in accordance with Section 8.11, Section 8.12 and Section 8.13 below.

Notwithstanding the foregoing, the Association shall have the right to dedicate, sell or otherwise transfer all or any part of the Common Elements to the fullest extent permitted under the Act. The granting of easements by the Executive Board, including the approval of a majority of Residential Directors and a majority of Commercial Directors, for public utilities, for access by pedestrians or for other purposes not inconsistent with the intended use of the Common Elements shall not be deemed a transfer requiring any consent of the Owners.

## ARTICLE 4.
## CONDOMINIUM MAP

Section 4.1   Condominium Map.

The Map shall be filed for record in the Office of the Clerk and Recorder of Pitkin County, Colorado. Any Map filed subsequent to the first Map shall be termed a supplement to such Map, and the numerical sequence of such supplements shall be shown thereon. The Map shall be filed for record following substantial completion of those portions of the Building subject to this Declaration and prior to the conveyance of any Unit depicted on the Map to a purchaser. The Map shall show the location of the Building on the Property; the floor and elevation plans; the location of the Units within the Building, both

14



horizontally and vertically; the thickness of the common walls, if any, between or separating the Units one from the other, or from Common Elements, as applicable; the Unit designations; designation of General Common Elements and Limited Common Elements; and such other information as Declarant may require in its discretion. The Map shall contain a certificate of a registered professional engineer or licensed architect or a licensed land surveyor certifying that the Map substantially depicts the location and the horizontal and vertical measurements of the Building and the Units, the dimensions of the Units, and the elevations of the unfinished floors and ceilings as constructed, and certifying that such Map is prepared subsequent to the substantial completion of the improvements. Each supplement or amendment shall set forth a like certificate when appropriate. The Map shall further contain such other information, certifications and depictions as may be required under Section 38-33.3-209 of the Act.

Section 4.2   Amendment.

Declarant reserves the right to amend or supplement the Map, from time to time, to the fullest extent permitted under the Act or as permitted by this Declaration.

## ARTICLE 5.
## OWNERS' PROPERTY RIGHTS IN COMMON ELEMENTS

Section 5.1   General Common Elements.

Every Owner and the family members, guests, tenants and licensees of each Owner shall have a perpetual right and easement of access over, across and upon the General Common Elements for the purpose of entering and exiting such Owner's Unit and the public ways for both pedestrian and vehicular travel, which right and easement shall be appurtenant to and pass with the transfer of title to such Unit; provided, however, that such right and easement shall be subject to the following:

5.1.1   The covenants, conditions, restrictions, easements, reservations, rights-of-way and other provisions contained in this Declaration, the Master Declaration and the Condominium Map;

5.1.2   The right of the Association to regulate on an equitable basis the use of parking spaces and storage spaces, if any, which are General Common Elements or Limited Common Elements from time to time;

5.1.3   The right of the Association to adopt, from time to time, rules and regulations concerning vehicular traffic and travel upon, in, under and across the Project; and

5.1.4   The right of the Association to adopt, from time to time, any and all rules and regulations concerning the Common Elements as the Association may determine are necessary or prudent, subject to the terms of Section 7.7 and Article 13 hereof.

Notwithstanding the foregoing, the Association shall take no action that unreasonably restricts any Owner's or its family members', guests', tenants' and licensees' right and easement of access over, across and upon the General Common Elements to such Owner's Unit(s).

Section 5.2   Limited Common Elements.

Subject to the provisions of this Declaration (including, without limitation, the rights of others to use the Amenities as described in Section 5.4 hereinbelow), every Owner shall have the exclusive right to use and enjoy the Limited Common Elements appurtenant to his Unit. The Map shall specify to which Unit or Units each Limited Common Element is allocated.

15



450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
23 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY C

Storage spaces, if any, may be designated on the Map as Limited Common Elements appurtenant to the Units or a Class or Category thereof and reserved for the exclusive use of the Owners and the tenants, guests, lessees, licensees, permittees and invitees of the Owners of the Units; provided, however, any such designation shall not be construed as granting any Owner of a Unit the ownership of such storage spaces. The Executive Board shall designate as General Common Elements and subject to regulation all remaining storage spaces.

Any redesignation of the boundaries of the General Common Elements or of the General Common Elements to Limited Common Elements shall be approved by the Executive Board, including the approval of a majority of Residential Directors and a majority of Commercial Directors. Declarant hereby reserves the right and grants to the Association the right to reassign Limited Common Elements to the fullest extent permitted under the Act. Any modification to the Common Elements and/or the Units shall not impair the life safety systems of the Project.

Section 5.3    Parking.

5.3.1    Association Regulation. The Owners acknowledge that the Association will own a portion of the Parking Facility initially consisting of forty-seven (47) parking spaces that shall be allocated for use solely by the Tourist Accommodation Owners as LCE-TA, thirty-three (33) parking spaces that shall be allocated for use solely by the Deed Restricted Residential Owners as LCE-DR (of which twenty-six spaces (26) parking spaces shall be allocated for use solely by the Deed Restricted Residential Owners in Building 4 and seven (7) parking spaces shall be allocated for use solely by the Deed Restricted Residential Owners in Building 8), twenty-seven (27) parking spaces that shall be allocated for use solely by the Commercial Owners as LCE-C (of which eighteen (18) spaces shall be allocated for use solely by the Owners of Commercial Units in Building 4 and nine (9) parking spaces that be allocated for use solely by the Owners of Commercial Units in Building 8). Subject to the foregoing, the Executive Board shall assign parking spaces among Units within specific Classes and Categories in compliance with the PUD Plan. Additional parking spaces may be acquired and owned by the Association in connection with the expansion of the Project to the Expansion Property. In addition to any spaces acquired in connection with the Expansion Property, the Association may acquire additional parking spaces upon the approval of a majority of the Executive Board plus a majority of the Category of Directors representing the Owners who will be able to use such parking spaces. The expenses of the acquisition of any additional parking spaces shall be allocated as a special Assessment to the Class of Category of Owners entitled to use such parking spaces.

The Association will have full right, power, and authority to regulate such parking on an equitable basis as determined by the Executive Board including, without limitation, the right to assign exclusive parking spaces to certain Units, the right to reassign parking spaces between or among certain Classes or Categories of Units based on handicap accessible parking space or other need, and the right to adopt rules and regulations governing the use and maintenance of such parking consistent with the Parking Documents provided that the parking spaces designated as Limited Common Elements for each Category shall be reserved for their exclusive use.

5.3.2    Parking Documents. The Parking Documents govern the ownership, use and maintenance of the Parking Facility. Each Owner acknowledges that the Association will be a member of the Parking Association and the Executive Board will determine all voting with respect to measures arising under the Parking Documents as follows: the Commercial Directors by a majority vote thereof shall vote on all matters of the Parking Association with respect to the parking spaces designated as Limited Common Elements-Commercial; the Deed Restricted Residential Directors by a majority vote thereof shall vote on all matters of the Parking Association with respect to the parking spaces designated as Limited Common Elements-Deed Restricted Residential; and the Tourist Accommodation Directors by

16



a majority vote thereof shall vote on all matters of the Parking Association with respect to the parking spaces designated as Limited Common Elements-Tourist Accommodation. Owners will have no direct ownership interest in the Parking Facility nor will they exercise any vote in matters of the Parking Association.

Section 5.4    Amenities.

A portion of the Project is an outdoor-jetted spa and swimming pool, which are identified on the Map as "Pool L.C.E.-TA-Amenities" (the "Amenities"). The following provisions shall apply to the use and management of the Amenities by the Tourist Accommodation Directors and the Tourist Accommodation Owners:

5.4.1    Notwithstanding that the Amenities are Limited Common Elements-Tourist Accommodation pursuant to this Declaration, Declarant intends that the Amenities shall be available for use by members of the Amenities Association and Tourist Accommodation Units (including Owners of Fractional Ownership Interests therein). Therefore, the Association, by and through the Tourist Accommodation Directors, shall be obligated to enter into an agreement permitting the members of the Amenities Association, which shall consist of no more than sixty-three (63) Free Market Residential Units as that term is defined in the PUD Plan, from time to time to use the Amenities, which agreement shall, at minimum, provide the following:

(a)    The members of the Amenities Association shall have the right to use the Amenities on the same terms and conditions as are provided for the use of the Amenities by the Tourist Accommodation Owners. Use of the Amenities by the members of the Amenities Association shall be governed by the nondiscriminatory provisions of the rules and regulations of the Tourist Accommodation Directors regarding use of the Amenities, and the Tourist Accommodation Directors shall have the same remedies (with the exception of the ability, if any, to assert a lien against a unit owned by a member of the Amenities Association) for violation of such rules and regulations by members of the Amenities Association as are provided for the Tourist Accommodation Owners. In addition, the right of the members of the Amenities Association to use the Amenities may be terminated, after notice and failure to cure, for nonpayment of amounts owed by the Amenities Association;

(b)    In order to compensate for the anticipated greater use of the Amenities by the various Owners of Fractional Ownership Interests in a unit (whether a Unit hereunder or a unit subject to the Amenities Association), all expenses of the operation, maintenance, renovation and replacement of the Amenities shall be allocated such that each unit (whether such units are within the Project or are within the Amenities Association) that has been further subdivided into Fractional Ownership Interests is assessed an amount that is one and one-half (1½) times the amount that is assessed to each unit (whether such units are within the Project or are within the Amenities Association) that has not been subdivided into Fractional Ownership Interests;

(c)    The Amenities Association shall be entitled to comment upon the proposed budget for the Amenities, and the Tourist Accommodation Directors will take such comments into account when determining the budget for the Amenities. In addition, the Amenities Association may object to any budget for any reason in its discretion, and if the Tourist Accommodation Directors do not resolve any such objection to the satisfaction of the Amenities Association (and with no obligation to do so) within ninety (90) days after written notice of objection, then the Amenities Association may terminate the agreement with the Association for the use of the Amenities. Upon such termination, the Amenities Association and its members will have no use rights in the Amenities and will have no obligation to share in the cost thereof; and

17

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
25 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY C

(d)     The Amenities Association will indemnify and hold the Tourist Accommodation Directors harmless from and against any claims, losses, liabilities, costs and expenses incurred by the Tourist Accommodation Directors and arising out of the use of the Amenities by the members of the Amenities Association or their guests or invitees, except for normal costs of operation, maintenance, upkeep, repair and replacement of the Amenities the cost of which shall be allocated among the users of the Amenities as provided herein.

5.4.2   In addition to the obligation of the Tourist Accommodation Directors to make the Amenities available to the members of the Amenities Association as provided in sub-section 5.4.1 above, the Tourist Accommodation Directors shall have the right, but not the obligation, to make the Amenities available to other parties, whether or not such parties are residents of Aspen Highlands Village, on such terms and subject to such conditions as the Tourist Accommodation Directors may determine.

5.4.3   Any person who is entitled to use the Amenities pursuant to the terms and conditions of this Section 5.4 and any separate agreement is hereby granted a nonexclusive easement over and across portions of the Common Elements of the Project solely and only to the extent necessary for access to the Amenities, which easement shall be subject to the reasonable rules and regulations of the Executive Board or the applicable Class or Category of Directors.

Section 5.5    Rights of Owners of Fractional Ownership Interests.

An Owner of a Fractional Ownership Interest in a Unit shall be permitted to access the Common Elements, the Amenities, and the Health Club Facility, unless otherwise permitted by separate agreement, only during the period of such Owner's actual occupancy of a Unit pursuant to such Owner's Fractional Ownership Interest.

**ARTICLE 6.**
**MEMBERSHIP AND VOTING RIGHTS IN ASSOCIATION**

Section 6.1    Association Membership.

Every Owner shall be a member of the Association and shall remain a member for the period of the Owner's ownership of a Unit or Fractional Ownership Interest. No Owner, whether one or more persons, shall have more than one membership per Unit or Fractional Ownership Interest owned, but all of the persons owning a Unit or Fractional Ownership Interest shall be entitled to rights of membership and of use and enjoyment appurtenant to ownership of a Unit or Fractional Ownership Interest. Joint owners of Fractional Ownership Interest shall, however, be required to coordinate usage rights as Owners of Fractional Ownership Interests in accordance with the provisions of Article 23 and as provided below. If title to a Fractional Ownership Interest is held by more than one person, such Owners shall designate one person as their representative and appoint such person as their proxy, as more fully described in this Declaration and the bylaws of the Association or as otherwise required by applicable law. Membership in the Association shall be appurtenant to, and may not be separated from, ownership of a Unit or Fractional Ownership Interest.

Section 6.2    Categories of Membership.

There shall be three (3) Categories of membership in the Association as follows:

6.2.1   Tourist Accommodation Owners. All Owners of Tourist Accommodation Units, including Fractional Ownership Interests therein, and including the Declarant so long as Declarant continues to own an interest in a Tourist Accommodation Unit.

18


450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
28 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY C(

6.2.2    Deed Restricted Residential Owners. All Owners of Deed Restricted Residential Units including the Declarant so long as Declarant continues to own an interest in a Deed Restricted Residential Unit.

6.2.3    Commercial Owners. All Owners of the Commercial Units including the Declarant so long as Declarant continues to own an interest in a Commercial Unit.

Section 6.3    Voting Rights.

6.3.1    General Common Elements.

Each Unit shall be allocated a vote for the purpose of matters relating to the General Common Elements or the Project as a whole equivalent to the Allocated Interest-General of such Unit as provided on Exhibit B attached hereto and incorporated herein by reference.

6.3.2    Limited Common Elements.

(a)    Limited Common Elements-Commercial. Each Commercial Unit shall be allocated a vote for the purpose of matters relating to the Limited Common Elements-Commercial and the election of Commercial Directors, equal to the Allocated Interest-Commercial of such Unit as set forth in Exhibit B attached hereto.

(b)    Limited Common Elements-Residential. Each Residential Unit shall be allocated a vote for the purpose of matters relating to the Limited Common Elements-Residential, equal to the Allocated Interest-Residential of such Unit as set forth in Exhibit B attached hereto.

(c)    Limited Common Elements-Tourist Accommodation. Each Tourist Accommodation Unit shall be allocated a vote for the purpose of matters relating to the Limited Common Elements-Tourist Accommodation and the election of Tourist Accommodation Directors, equal to the Allocation Interest-Tourist Accommodation of such Unit as set forth in Exhibit B attached hereto.

(d)    Limited Common Elements-Deed Restricted Residential. Each Deed Restricted Residential Unit shall be allocated a vote for the purpose of matters relating to the Limited Common Elements-Deed Restricted Residential and the election of Deed Restricted Residential Directors, equal to the Allocated Interest-Deed Restricted Residential of such Unit as set forth in Exhibit B attached hereto.

The Association shall not have a vote with respect to any Unit that may be owned by it. Declarant shall be entitled to vote with respect to Units or Fractional Ownership Interests owned by it. Members of the Association may exercise such voting rights subject to and in accordance with the provisions below and those of the bylaws of the Association.

Section 6.4    Voting of Fractional Ownership Interest.

The votes with respect to each Tourist Accommodation Unit which is further subdivided into Fractional Ownership Interests will be allocated to the Owners of the Fractional Ownership Interests comprising such Unit on the same basis as each Owner's fractional interest in the Unit; meaning, by way of example and not of limitation, that if a Tourist Accommodation Unit is divided into Fractional Ownership Interests constituting a 1/12 share of such Unit, then each Owner of a Fractional Ownership Interest therein shall be entitled to cast 1/12 of the votes with respect to such Unit.



Section 6.5    Election of Directors.

During the Declarant Control Period, the Directors shall be appointed by the Declarant without regard to the Categories of Directors or the election thereof by certain Categories of members as described in this Section below. The initial Executive Board shall consist of six (6) Directors. The first annual meeting of the Owners shall be held within one year after the closing of the escrow for the first sale of a Plan Unit or within sixty days after conveyance of twenty-five percent (25%) of the Units to Owners other than Declarant, whichever occurs first. At the first annual meeting of Owners, and at all times thereafter during the Declarant Control Period, one (1) Director shall be elected by the Tourist Accommodation Owners, other than Declarant, and one (1) Director shall be elected by the combined vote of the Deed Restricted Residential Owners and the Commercial Owners, other than Declarant. The remaining Directors shall be as appointed by the Declarant. The Directors elected at the first annual meeting and thereafter during the Declarant Control Period, including those appointed by the Declarant, shall not be classified by Class or Category and any specific responsibilities of any group of Directors elected by a Class or Category of Owners shall be undertaken and discharged by the entire Executive Board, and the entire Executive Board shall be authorized to so act. It is hereby determined that, after the expiration of the Declarant Control Period, in order to protect the valid interests of the various Categories of Owners, each Category requires representation on the Executive Board and is hereby entitled to elect certain Directors thereto. After the expiration of the Declarant Control Period, the Executive Board shall consist of nine (9) Directors, of which the Category of Tourist Accommodation Owners shall be entitled to nominate and elect four (4), the Category of Deed Restricted Residential Owners shall be entitled to nominate and elect two (2), and the Class of Commercial Owners shall be entitled to nominate and elect three (3) Directors as follows: (i) Owners of Commercial Units in Building 4 and, if applicable, Building 2 shall be entitled collectively to nominate and elect one (1) Director; (ii) Owners of Commercial Units in Building 8 shall be entitled to nominate and elect one (1) Director; and (iii) Owners of Commercial Units in all Buildings that are subject to this Declaration shall be entitled to nominate and elect one (1) Director at large.

Section 6.6    Declarant Control.

Notwithstanding anything to the contrary provided for herein or in the bylaws of the Association, Declarant shall, during the Declarant Control Period, be entitled to appoint and remove the members of the Association's Executive Board and officers of the Association to the fullest extent currently permitted under the Act, except as otherwise specifically provided in this Declaration and the bylaws of the Association. The specific restrictions and procedures governing the exercise of Declarant's right to so appoint and remove Directors and officers shall be set out in the bylaws of the Association. Declarant may voluntarily relinquish such power evidenced by a notice executed by Declarant and recorded in the Office of the Clerk and Recorder for Pitkin County, Colorado but, in such event, Declarant may at its option require that specified actions of the Association or the Executive Board as described in the recorded notice, during the period Declarant would otherwise be entitled to appoint and remove Directors and officers, be approved by Declarant before they become effective. For purposes of this Declaration and bylaws of the Association, a Unit which is subdivided into Fractional Ownership Interests shall be deemed conveyed to an Owner other than Declarant for purposes of determining Declarant control only after conveyance of fifty-one percent (51%) of the Fractional Ownership Interests in such Unit.

Section 6.7    Executive Board.

During the Declarant Control Period, all members of the Executive Board shall be entitled to participate in all Association affairs without regard to the provisions of this Section and any specific responsibilities of any group of Directors elected by a Class or Category of Owners shall be undertaken and discharged by the entire Executive Board, and the entire Executive Board shall be authorized to so

20


450454  01/11/2001 03:02P CONDO DE DAVIS SILVI
28 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY C(

act. After expiration of the Declarant Control Period, all members of the Executive Board shall be entitled to participate in Association affairs which affect the Project in its entirety, both the Residential Units and the Commercial Units, both the Residential Owners and the Commercial Owners, or the Common Expenses affecting both the Residential Units and the Commercial Units. Except as otherwise provided in this Declaration, the Tourist Accommodation Directors shall have the sole and exclusive authority to vote with respect to all matters which relate solely to (i) the Tourist Accommodation Units, or (ii) the Limited Common Elements-Tourist Accommodation. Except as otherwise provided in this Declaration, the Residential Directors shall have the sole and exclusive authority to vote with respect to all matters which relate to (i) the Deed Restricted Residential Units or both the Deed Restricted Residential Units and the Tourist Accommodation Units, or (ii) the Limited Common Elements-Residential or the Limited Common Elements-Deed Restricted Residential. Except as otherwise provided in this Declaration, the Commercial Directors shall have the sole and exclusive authority to vote with respect to all matters that relate solely to the Commercial Units and the Limited Common Elements-Commercial. Notwithstanding the foregoing, amendments to the rules and regulations of the Association shall require the majority vote of the Executive Board and the majority vote of each Class of Directors.

The provisions of this Section 6.7 above describe the intent of this Declaration regarding allocation of decision-making regarding various issues that may arise under this Declaration. In the event of a bona fide dispute among members of the Executive Board as to whether a matter relates solely to an individual Class or its Units or Limited Common Elements, or, if applicable, the Category of Tourist Accommodation Units, the Directors shall use their good faith, reasonable judgment in determining such matter and the determination as to whether a matter should be for the independent consideration of a single Class of Directors or, in the case of Tourist Accommodation Directors, a Category, and not for consideration of the entire Executive Board, shall require the affirmative vote of a majority of each Class of Directors.

If (a) a vote by the Executive Board to determine whether a matter should be for the consideration of the entire Executive Board results in an affirmative vote of a majority of one Class of Directors, but fails to result in the affirmative vote of least a majority of both Classes of Directors, and (b) a majority of one Class of Directors vote within fifteen (15) days thereafter to submit such issue to arbitration, then the issue of whether a matter should be considered by the entire Executive Board shall be submitted to binding arbitration in Pitkin County, Colorado, in accordance with the rules of the American Arbitration Association then in effect. The decision of the arbitration shall be final and binding on the parties and judgment may be entered thereon in a court having jurisdiction over the Association. The arbitrator shall be appointed by the Executive Board, which appointment shall require the affirmative vote of a majority of each Class of Directors. In the event the Executive Board is unable to do so within ten (10) days of submitting this matter to arbitration, the arbitrator shall be designated by the chief judge in the District Court of Pitkin County, Colorado. The cost and expense of the arbitrator shall be deemed an expense of the Association.

Notwithstanding any other provision in this Declaration to the contrary, in the event of an emergency requiring immediate action by the Executive Board, the entire Executive Board shall participate in the decision to take such action as is necessary to advance the interest of the Project as a whole pending a determination as to whether the matter should be independently considered by a single Class or if applicable, a Category, of Directors, at which time such Directors as are determined to be entitled to participate in the decision shall resolve the issue.

Section 6.8     Fairness Standard.

The Executive Board, the officers of the Association and the Association shall have the duty to represent the interest of the Tourist Accommodation Owners, the Deed Restricted Residential Owners,

21



and the Commercial Owners in a fair and just manner on all matters that may affect any or all Categories of Owners. In upholding their duties, the Executive Board, the officers and the Association shall be held in their decisions, including, without limitation the determination of whether a matter should be for the independent consideration of the Commercial Directors or the Residential Directors, or both, as described in Section 6.7 above, to the standards of good faith and reasonableness with respect to such matters, taking into account the effect, if any, of the matter on the Project as a whole.

Section 6.9     Voting by Association Members.

To the extent a matter is required by this Declaration, the bylaws of the Association or the Act to be submitted to the vote of the members of the Association, all members shall be entitled to participate in the vote on such matters unless a majority of the voting Directors of the Executive Board, including the affirmative vote of a majority of the Commercial Directors and a majority of the Residential Directors, determine that a particular matter affects exclusively either the membership Class of Residential Owners (including the Owners of Fractional Ownership Interests therein, if any) or Commercial Owners, in which case the Executive Board may give notice of a meeting of either the Residential Owners (including the Owners of Fractional Ownership Interests therein, if any) or the Commercial Owners and conduct a vote on the matter affecting only that Class in order to protect the legitimate, valid interest of such Class.

Section 6.10    Owner's and Association's Address for Notices.

All Owners of each Unit or Fractional Ownership Interest shall have one and the same mailing address to be registered with the Association and used by the Association or other Owners for notices, demands and all other communications regarding Association matters. The Owner or Owners of a Unit or Fractional Ownership Interest shall furnish such address to the Secretary of the Association within five (5) days after transfer of title to the Unit or Fractional Ownership Interest to such Owner or Owners. Such registration shall be in written form and signed by all of the Owners of the Unit or Fractional Ownership Interest or by such persons as are authorized by law to represent the interests of all Owners of the Unit or Fractional Ownership Interest. Notwithstanding the foregoing, the Association shall be entitled to rely upon any such registration or other notice of a change in address of the Owners of the Unit or Fractional Ownership Interest which is signed by less than all of the Owners of such Unit or Fractional Ownership Interest.

If no address is registered or if all of the Owners cannot agree, then the address set forth in the deed to the Unit or Fractional Ownership Interest shall be deemed their registered address until another registered address is furnished as required under this Section.

Any notice delivered to a First Mortgagee in accordance with the terms of this Declaration shall be sent to the address for such party specified in the First Mortgage unless the First Mortgagee notifies the Association in writing of a different address.

All notices and demands intended to be served upon the Executive Board shall be sent to the following address or such other address as the Executive Board may designate from time to time by notice to all of the Owners:

> Executive Board
> Aspen Highlands Condominium Association, Inc.
> c/o The Ritz-Carlton Club
> Attention: Director of Operations
> 6649 Westwood Boulevard, Suite 500
> Orlando, Florida 32821

22



With a copy to:
Hines Highlands Limited Partnership
426 East Main Street
Aspen, Colorado 81611

All notices given in accordance with this Section shall be sent: (a) by personal delivery, which shall be effective upon receipt; (b) by overnight courier service, which shall be effective one (1) business day following timely deposit with the courier service; or (c) regular, registered or certified mail, postage prepaid, which shall be effective three (3) days after deposit in the U.S. mail.

Unless otherwise provided in writing by the Association or the Managing Agent, all bills for common utility services shall be sent to the Executive Board at the address designated in this Section.

## ARTICLE 7.
## ASSOCIATION DUTIES

Section 7.1    Association Management Duties.

7.1.1    Subject to the rights and obligations of Declarant and other Owners as set forth in this Declaration, the Association through the Executive Board shall be responsible for the administration and operation of the Project, for the exclusive management, control, maintenance, repair, replacement and improvement of the General Common Elements (including facilities, furnishings and equipment related thereto), and shall keep the same in good, clean, attractive and sanitary condition, order and repair. The expenses, costs and fees of such management, operation, maintenance and repair by the Association shall be part of the Assessments and, subject to the budget approval procedures of Section 8.6 below, prior approval of the Owners shall not be required in order for the Association to pay any such expenses, costs and fees. The Executive Board, with the approval of a majority of Commercial Directors and a majority of Residential Directors, and with the approval of the Owners representing a majority of the total votes entitled to be cast on Association matters, including a majority of the total votes allocated to the Residential Owners and a majority of the total votes allocated to the Commercial Owners at a meeting of the Owners called for that purpose, shall have the authority to lease or license any General Common Elements to others for all purposes permitted in this Declaration and by applicable law; provided, however, that any such lease or license shall require the lessee or licensee to pay all costs and expenses, including costs of maintenance, repair and replacement, resulting from its use of such General Common Elements.

7.1.2    The Residential Directors, on behalf of the Residential Owners, shall be responsible for the exclusive management, control, maintenance, repair, replacement and improvement of the Limited Common Elements-Residential and the Limited Common Elements-Deed Restricted Residential. The Tourist Accommodation Directors, on behalf of the Tourist Accommodation Owners, shall be responsible for the exclusive management, control, maintenance, repair, replacement and improvement of the Limited Common Elements-Tourist Accommodation. The expenses, costs and fees of such management, operation, maintenance and repair (i) of the Limited Common Elements-Residential shall be part of the Assessments to be paid by the Residential Owners for such Limited Common Elements-Residential, (ii) of the Limited Common Elements-Tourist Accommodation shall be part of the Assessments to be paid by the Tourist Accommodation Owners for such Limited Common Elements-Tourist Accommodation, and (iii) of the Limited Common Elements-Deed Restricted Residential shall be part of the Assessments to be paid by the Deed Restricted Residential Owners for such Limited Common Elements-Deed Restricted Residential; and, subject to the budget approval procedures of Section 8.6

23



450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
31 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CC

below, prior approval of the applicable Category of Owners shall not be required in order for the Association to pay any such expenses, costs and fees.

For all purposes permitted in this Declaration and by applicable law, the Residential Directors shall have the authority to lease or license any Limited Common Elements-Residential, the Deed Restricted Residential Directors shall have the authority to lease or license any Limited Common Elements-Deed Restricted Residential, and the Tourist Accommodation Directors shall have the authority to lease or license any Limited Common Elements-Tourist Accommodation. Any lease or license granted in accordance with this sub-section shall require the lessee or licensee to pay all costs and expenses, including costs of maintenance, repair and replacement, resulting from its use of such Limited Common Elements.

7.1.3    The Commercial Directors, on behalf of the Commercial Owners, shall be responsible for the exclusive management, control, maintenance, repair, replacement and improvement of the Limited Common Elements-Commercial. The expenses, costs and fees of such management, operation, maintenance and repair of the Limited Common Elements-Commercial shall be part of the Assessments to be paid by the Commercial Owners for such Limited Common Elements-Commercial and, subject to the budget approval procedures of Section 8.6 below, prior approval of the Commercial Owners shall not be required in order for the Association to pay any such expenses, costs and fees. The Commercial Directors, with the approval of the Commercial Owners representing a majority of the total votes entitled to be cast on Association matters or, if such Limited Common Element is appurtenant to one or more, but fewer than all the Commercial Units, the approval of the Commercial Owners to which such Limited Common Element is appurtenant, shall have the authority to lease or license any Limited Common Elements-Commercial to others for all purposes permitted in this Declaration and by applicable law; provided, however, that any such lease or license shall require the lessee or licensee to pay all costs and expenses, including costs of maintenance, repair and replacement, resulting from its use of such Limited Common Elements.

Section 7.2    Reserve Account.

The Association shall establish and maintain, as part of its budget and out of the installments of the annual Assessments, adequate reserve accounts for maintenance, repair or replacement of those Common Elements that must be replaced on a periodic basis, the reserve funds to be designated for the use of either the General Common Elements, Limited Common Elements-Residential, Limited Common Elements-Tourist Accommodation, Limited Common Elements-Deed Restricted Residential or Limited Common Elements-Commercial and segregated by account in these categories (collectively, the "Reserve Account").

Section 7.3    Owner's Negligence.

Subject to the terms of Section 9.4 hereof, in the event that the need for maintenance, repair or replacement of all or any portion of the Common Elements is due to the grossly negligent, reckless or willful act or omission of an Owner, any member of an Owner's family, or an Owner's guests, invitees or tenants, then the expenses incurred by the Association for such maintenance, repair or replacement shall be a personal obligation of such Owner. To the extent that the area in need of maintenance, repair or replacement is due to the negligent act or omission of an Owner, any member of an Owner's family, or an Owner's guests, invitees or tenants, then such Owner shall be liable to the Association for the amount of any applicable insurance deductible(s) and for any amounts in excess of insurance proceeds; provided, however, if such area is not covered by insurance the expenses incurred by the Association for such maintenance, repair or replacement shall be a personal obligation of such Owner. If the Owner fails to repay any applicable expenses incurred by the Association within seven (7) days after notice to the Owner

24



of the amount owed, then the failure to so repay shall be a default by the Owner under the provisions of this Section, and such expenses shall automatically become a default Assessment determined and levied against such Owner's Unit or Fractional Ownership Interest, enforceable by the Association in accordance with Section 8.11, Section 8.12 and Section 8.13 below.

Section 7.4    Delegation of Management and Maintenance Duties.

The Executive Board, with the approval of a majority of the Commercial Directors and a majority of the Residential Directors, may delegate all or any part of its powers and duties to one or more Managing Agents, including Declarant or affiliates of Declarant or either of them; provided, however, that if a Plan of Fractional Ownership has been created with respect to the Tourist Accommodation Units, the Executive Board shall designate a Managing Agent as provided in this Section, and the Management Agreement for such Managing Agent shall allow for either party to terminate, for cause, upon sixty (60) days' notice, or as required by applicable law. A Management Agreement entered into by the Executive Board may only be terminated by the Executive Board by a majority vote thereof, including the approval of a majority of the Commercial Directors and a majority of the Residential Directors and a vote of Owners representing sixty percent (60%) or more of the total number of votes entitled to be cast on Association matters. Notwithstanding the delegation by the Executive Board to a Managing Agent, the Executive Board shall not be relieved of its responsibilities under this Declaration. Any Management Agreement entered into by the Executive Board shall require the Managing Agent to maintain garage keeper's insurance for the benefit of the Tourist Accommodation Owners as a Limited Common Expense-Tourist Accommodation to the extent such Managing Agent provides parking valet services to the Tourist Accommodation Owners.

Section 7.5    Acquiring and Disposing of Personal Property.

The Association may acquire, own and hold for the use and benefit of all Owners tangible and intangible personal property, including without limitation, membership rights, services and benefits for the use, enjoyment security, comfort and convenience of Owners and any Class or Category thereof and may dispose of the same by sale or otherwise, and the beneficial interest in any such property shall be deemed to be owned by the Owners in the same undivided proportion as their respective undivided interests in the Common Elements. Such interests shall not be transferable except with the transfer of a Unit or Fractional Ownership Interest. A conveyance of a Unit or Fractional Ownership Interest shall transfer ownership of the transferor's beneficial interest in such personal property without any reference thereto. Each Owner may use such personal property in accordance with the purposes for which it is intended, without hindering or encroaching upon the lawful rights of other Owners. The transfer of title to a Unit or Fractional Ownership Interest under foreclosure shall entitle the purchaser to the interest in such personal property associated with the foreclosed Unit or Fractional Ownership Interest.

Section 7.6    Cooperation with District, Master Association and Other Associations.

The Association may contract or cooperate with the District, the Master Association or with other homeowners' associations or entities within Aspen Highlands Village as convenient or necessary to provide services and privileges, such as access to recreational facilities in Aspen Highlands Village, and to fairly allocate costs among the parties utilizing such services and privileges which may be administered by the Association or such other organizations, for the benefit of Owners and their family members, guests, tenants and invitees. The costs associated with such efforts by the Association (to the extent not chargeable to other organizations) shall be a General Common Expense if for the benefit of all Owners or shall be a Limited Common Expense if for the benefit of one or more but less than all Owners.

25



450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
33 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CC

Section 7.7     Issuance of Rules and Regulations.

The Executive Board may, by a majority of the voting Directors, including the approval of a majority of each Class of Directors consistent with Section 6.7 above, make and amend reasonable rules and regulations governing the use and rental of the Units and the use and operation of the Common Elements. Notwithstanding the foregoing, any such rules and regulations shall not be inconsistent with the terms of this Declaration, including, but not limited to Article 13. In addition, such rules and regulations shall, when applied to each of the Units considering the use of such Unit, be equitable and reasonable as applied to the Unit with respect to the use thereof. After the adoption of the initial rules and regulations, which may be approved by the Executive Board with the consent of the Declarant prior to the conveyance of the first Unit or Fractional Ownership Interest in the Project, the Executive Board shall provide thirty (30) days written notice prior to the adoption or amendment of any rules and regulations and provide for a reasonable opportunity for Owners to comment at a meeting of the Executive Board on the proposed adoption or amendment of any rules and regulations.

Section 7.8     Enforcement of Association Documents.



7.8.1     This Declaration and the bylaws of the Association constitute a general scheme benefiting each Unit and the Property as a whole and may be enforced by Declarant, the Association or an aggrieved Owner. A violation of any of the provisions of this Declaration causes irreparable damage to the Property. Therefore, subject to the terms and conditions of this Section 7.8 and except as otherwise expressly provided elsewhere in this Declaration, Declarant, the Association and any aggrieved Owner may prosecute a proceeding at law or in equity against anyone violating or attempting to violate the provisions of this Declaration, including, without limitation, an action for a temporary restraining order, preliminary injunction and permanent injunction.

7.8.2     The Association may recover from anyone violating or attempting to violate any provision of this Declaration reasonable attorneys' fees and other legal costs incurred by the Association in successfully enforcing the provision, regardless of whether suit is initiated. If such person is an Owner, the amount of the fees and costs constitute a lien against the Owner's Unit or Fractional Ownership Interest which may be foreclosed in accordance with Section 8.13. In addition, if any Owner fails to comply with this Declaration, the bylaws or the rules and regulations of the Association, the Association may (i) temporarily suspend the Owner's right to use or enjoy the Common Elements, and (ii) impose other appropriate measures; provided, however, that before imposing any of those measures [other than late charges, interest and reasonable collection costs relating to delinquent payments], the Executive Board will promulgate rules and regulations relating to those measures including provisions affording a defaulting Owner notice of the claimed default and an opportunity to be heard by the Executive Board prior to the imposition of the disciplinary measure.

7.8.3     Before an aggrieved Owner may prosecute any proceeding at law or in equity enforcing the provisions of this Declaration or the bylaws of the Association or seeking other relief relating to a violation or attempted violation of the provisions of this Declaration or the bylaws of the Association, the Owner will first give written notice to the Executive Board specifying the violation or attempted violation of the provisions of this Declaration or the bylaws, the facts and circumstances surrounding the violation, and the name of the person alleged to have violated or attempted to violate the provisions of this Declaration or the bylaws. The Executive Board may initiate a proceeding in law or in equity to enforce the provisions of this Declaration or the bylaws of the Association, to prevent a violation or to obtain damages for damage to the Common Elements resulting from the violation, or may otherwise enforce the provisions of this Declaration. The aggrieved Owner may exercise any of its rights under Section 7.8.1 if (i) the violation or attempted violation results or would result in direct and immediate physical damage to the Owner's Unit, or (ii) the Association fails to enforce or cause enforcement of the

26


450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
34 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CC

violated provisions of this Declaration or the bylaws of the Association within sixty (60) days after the Executive Board receives the Owner's notice.

Section 7.9    Identity of Executive Board and Managing Agent.

From time to time, but no less than annually, the Association shall mail to each Owner a notice containing the names and addresses of the members of the Executive Board and the Managing Agent(s), if any.

Section 7.10    Implied Rights.

The Association may exercise any and all other rights or privileges given to it by this Declaration, or by the other Association Documents, or as may otherwise be given to it by law, and every other right or privilege reasonably to be implied from the existence of any right or privilege given to the Association in the Association Documents or reasonably necessary to effectuate any such right or privilege.

Section 7.11    Books and Records of the Association.

The Executive Board, directly or through its Managing Agent(s), as the case may be, shall keep detailed, accurate records of the receipts and expenditures affecting the Common Elements and shall maintain such other books and records as may be required under the Act. Owners and Mortgagees may inspect the records of receipts and expenditures of the Managing Agent(s) or the Executive Board at convenient weekday business hours. In addition, the other books, records and papers of the Association, including this Declaration, the articles of incorporation and the bylaws of the Association, as well as any Management Agreement and any rules and regulations of the Association, shall be available for inspection by any Owner or Mortgagee at all times during convenient weekday business hours. Unless a shorter time is required by law, inspection shall require three (3) days advance, written notice.

Section 7.12    Compliance with Liquor Laws.

To the extent necessary to comply with applicable requirements of the Liquor Code of the State of Colorado, the Executive Board and any Managing Agent may grant exclusive possession and control of any portion of the Common Elements and/or any Unit owned or leased by the Association to a duly authorized licensee for the limited purpose of serving all types of alcoholic beverages.

Section 7.13    LIMITATION OF LIABILITY OF ASSOCIATION.

NOTWITHSTANDING THE DUTY OF THE ASSOCIATION TO MAINTAIN AND REPAIR THE COMMON ELEMENTS, AND EXCEPT TO THE EXTENT COVERED BY ASSOCIATION INSURANCE AS DESCRIBED IN ARTICLE 10, THE ASSOCIATION SHALL NOT BE LIABLE TO OWNERS FOR INJURY OR DAMAGE, OTHER THAN FOR THE COST OF MAINTENANCE AND REPAIR, CAUSED BY ANY LATENT CONDITION OF THE COMMON ELEMENTS TO BE MAINTAINED AND REPAIRED BY THE ASSOCIATION OR CAUSED BY THE ELEMENTS OR OTHER OWNERS OR PERSONS.

Section 7.14    Financial Statements.

The Association shall have the power and duty to cause to be regularly prepared financial statements for the Association and copies thereof to be distributed to all Owners as provided in this Section 7.14.



7.14.1 The budgets prepared in accordance with Section 8.6 below shall be distributed to Owners not less than forty-five (45) days nor more than sixty (60) days before the beginning of each fiscal year, except the first fiscal year with respect to which the budget shall be distributed as soon as reasonably possible. The advance budget shall contain at least the following information:

      (a)    Estimated revenue and expenses on an accrual basis;

      (b)    The balance of the Reserve Account;

      (c)    An itemized estimate of the remaining life of major components of the Common Elements and the methods of funding to defray reserve expenses; and

      (d)    A general statement setting forth the procedures used by the Executive Board in the calculation and establishment of the Reserve Account.

7.14.2 An annual report as defined by this Section 7.14.2 shall be distributed within 120 days after the end of each fiscal year. The annual report shall be prepared by a certified public accountant in any fiscal year in which the gross income to the Association exceeds $75,000.00. If the annual report is not prepared by such a certified public accountant, the annual report shall be prepared by the Managing Agent or by an officer of the Association and shall be accompanied by the certificate of the person preparing the annual report that the annual report was prepared without audit from the books and records of the Association. The annual report is a report to the Owners consisting of:

      (a)    A balance sheet relating to the Association as of the last day of the fiscal year;

      (b)    An operating statement for such fiscal year;

      (c)    A statement of changes in financial position for such fiscal year; and

      (d)    A list of the names, mailing addresses and telephone numbers of the members of the Executive Board.

Section 7.15    Limitation on Power of Managing Agent.

The Managing Agent shall not enter into a contract with a third person or entity whereby such person or entity will furnish goods or services for the management and operation of the Project or for the maintenance and repair of the Project, for a term longer than one (1) year without the consent of a majority of the Owners other than Declarant, except for:

7.15.1 A contract with a public utility company; provided, however, that the term of the contract shall not exceed the shortest term for which the supplier will contract at the regulated rate.

7.15.2 Prepaid casualty and/or liability insurance policies not to exceed three (3) years duration provided that the policy permits short-rate cancellation by the insured.

7.15.3 The following types of contracts provided that the lessor or provider is not an entity in which the Declarant or the Managing Agent has a direct or indirect interest of ten percent (10%) or more:

7.15.4 a lease of furniture, furnishings, appliances and other personal property;



450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
36 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

7.15.5  agreements for cable television services and equipment or satellite television services and equipment; and

7.15.6  agreements for burglar alarm services and equipment.

## ARTICLE 8.
## ASSESSMENTS

Section 8.1    Covenant of Personal Obligation of Assessments.

Declarant, by creating the Units pursuant to this Declaration, and every other Owner, by acceptance of the deed or other instrument of transfer of his Unit or Fractional Ownership Interest (whether or not it shall be so expressed in such deed or other instrument of transfer), is deemed to personally covenant and agree with the Association, and hereby does so covenant and agree to pay to the Association, the (a) annual Assessments, (b) special Assessments, (c) personal Assessments and (d) default Assessments applicable to the Owner's Unit or Fractional Ownership Interest. No Owner may waive or otherwise escape personal liability for the payment of the Assessments provided for in this Declaration by not using the Common Elements or the facilities contained in the Common Elements or by abandoning or leasing his Unit or Fractional Ownership Interest. Pursuant to the Master Association Documents, the Association (i) is empowered and authorized, and upon the request of the Master Association shall be required, to levy and collect from Owners of Units within the Association the assessments owing to the Master Association as part of the Association's own assessment procedures and to promptly remit such assessments collected by the Association to the Master Association; and (ii) is required to levy and collect from Owners of Fractional Ownership Interests within the Association the assessments owing to the Master Association as part of the Association's own assessment procedures and to promptly remit such assessments collected by the Association to the Master Association. The Association is also required to levy and collect from Owners of Fractional Ownership Interests the annual dues for The Ritz-Carlton Membership Program payable to The Ritz-Carlton Travel Company, L.L.C. as Program Manager of The Ritz-Carlton Club Membership Program pursuant to the Membership Program Documents. The Association is responsible for paying assessments levied by the Parking Association with respect to any and all parking units in the Parking Facility and all such assessments shall be considered Common Expenses of the Association and assessed by the Association against the Owners as part of its Assessments (provided, however, that assessments of the Parking Association shall be allocated only to Owners of Units (including Owners of Fractional Ownership Interests therein) to whom parking rights are allocated).

Section 8.2    Purpose of Assessments.

The Assessments levied by the Association shall be used for the purpose of promoting the health, safety, convenience and general welfare of the Owners, including the improvement and maintenance of the Property and of the services and facilities located on the Property. Proper uses of the Assessments shall include, but are not limited to, the following:

8.2.1    Repairing, replacing, renovating, rebuilding, improving and maintaining any of the Common Elements not made the responsibility of the Owners by Section 7.3 above, Section 9.2 below, or other provisions of this Declaration;

8.2.2    Installing, maintaining and repairing underground utilities upon, across, over and under any part of the Project which are not conveyed to and accepted by utility companies;

8.2.3    Furnishing garbage and trash pickup and water and sewer services to the Project;

29



8.2.4    Paying management and professional fees;

8.2.5    Obtaining and maintaining insurance in accordance with the provisions of Article 10 below;

8.2.6    Establishing and maintaining reserves for repairs, replacement, maintenance, taxes, capital improvements and other purposes;

8.2.7    With respect to the Fractional Ownership Interests, all uses described in Section 23.9 of this Declaration;

8.2.8    Carrying out all other powers, rights and duties of the Association specified in the Association Documents; and

8.2.9    Generally, addressing any other expenses necessary to meet the primary purposes of the Association.

Section 8.3      Commencement of Assessments.

All of the Units shall be allocated full Assessments, subject to the provisions of Section 8.6 below, on or by March 1, 2001.

Section 8.4      Amount of Total Annual Assessments.

The total annual Assessments against all Units and Fractional Ownership Interests shall be based upon the Association's advance budget of the cash requirements needed by it to provide for the administration and performance of its duties during such fiscal year, as approved by the Owners pursuant to Section 8.6 below, which estimates may include, among other things, the costs associated with the items enumerated in Section 8.2 above, together with any other costs and fees which may reasonably be expected to be incurred by the Association for the benefit of the Owners under or by reason of the Association Documents. In the event of surplus funds remaining after payment of or provision for Common Expenses and any prepayment of or provision for reserves, the Executive Board may within its discretion apply to or for the benefit of Owners or any Class or Category of Owners, the surplus funds (a) into reserves, (b) toward the following year's Common Expenses, (c) toward a credit to Owners against future assessments, (d) as a refund to Owners or (e) any combination of the foregoing.

Section 8.5      Apportionment of Annual Assessments.

The total annual Assessment for any fiscal year of the Association shall be assessed to each Unit and Fractional Ownership Interest as follows:

8.5.1    The annual Assessment for each Tourist Accommodation Unit shall be in an amount equal to (i) the Allocated Interest-General of such Unit multiplied by the GCE Budget (as defined hereinafter), plus (ii) the Allocated Interest-Residential of such Unit multiplied by the LCER Budget (as defined hereinafter), plus (iii) the Allocated Interest-Tourist Accommodation of such Unit multiplied by the LCETA Budget (as defined hereinafter). The annual Assessment with respect to each Tourist Accommodation Unit which is further subdivided into Fractional Ownership Interests will be allocated to the Owners of the Fractional Ownership Interests comprising such Unit on the same basis as each Owner's fractional interest in the Unit; meaning, by way of example and not of limitation, that if a Tourist Accommodation Unit is divided into Fractional Ownership Interests constituting 1/12 shares of such Unit,

30



450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
38 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

then each Owner of a Fractional Ownership Interest therein shall bear 1/12 of the total annual Assessment with respect to such Unit.

8.5.2 The annual Assessment for each Deed Restricted Residential Unit shall be in an amount equal to (i) the Allocated Interest-General of such Unit multiplied by the GCE Budget (as defined hereinafter), plus (ii) the Allocated Interest-Residential of such Unit multiplied by the LCER Budget (as defined hereinafter), plus (iii) the Allocated Interest-Deed Restricted Residential of such Unit multiplied by the LCEDR Budget (as defined hereinafter), plus (iv) the amount of the Common Expenses that can be directly allocated to such Unit.

8.5.3 The annual Assessment for each Commercial Unit shall be in an amount equal to (i) the Allocated Interest-General of such Unit multiplied by the GCE Budget, plus (ii) the Allocated Interest-Commercial of such Unit multiplied by the LCEC Budget (as defined hereinafter), plus (iii) the amount of the Common Expenses that can be directly allocated to such Unit.

To the extent any Common Expense relating to the General Common Elements disproportionately benefits any Owner or group of Owners, the Executive Board may, by a majority of the voting Directors, including the approval of a majority of Residential Directors and a majority of Commercial Directors, adjust the assessment for such Common Expense in such proportion as may be appropriate. To the extent any Common Expense relating to the Limited Common Elements-Residential, Limited Common Elements-Tourist Accommodation, Limited Common Elements-Deed Restricted Residential or Limited Common Elements-Commercial disproportionately benefits any Owner or group of Owners, the Directors representing the Class or Category of affected Owners, as applicable, may adjust the assessment for such Common Expense in such proportion as may be appropriate. To the extent a Limited Common Element benefits two Categories of Owners, the Common Expense allocated to such Limited Common Element shall be apportioned between the Categories of Owners based on each Category's Allocated Interest-General, unless otherwise provided by the Executive Board. The Executive Board, with the assistance of any company providing insurance for the benefit of the Owners under Article 10, may reasonably adjust the allocation to each Owner of the cost of premiums for any insurance carried for, and to be charged to, a particular Owner, as more fully detailed in Article 10. The total annual Assessments of the Association shall be apportioned among all Units as provided in this Section.

The Executive Board shall, if warranted, allocate a percentage of the Property's natural gas bill as a Limited Common Expense-TA for expenses associated with the natural gas fireplaces within the Tourist Accommodation Units.

Section 8.6    Annual Budget.

8.6.1    Within thirty (30) days after the adoption of any proposed budgets for the Association in accordance with the procedures described below, the Executive Board shall deliver by ordinary first-class mail or in person a summary of the budget information relative to each of the Residential Owners and the Commercial Owners to such parties. The Executive Board shall also set a date for the meeting of all Owners to consider ratification of the budgets not less than fourteen (14) nor more than sixty (60) days after mailing or other delivery of the budgets.

8.6.2    In connection with formulating the foregoing annual budgets for the entire Project, the Association shall adhere to the following procedures: (a) the Residential Directors shall submit to the Executive Board a proposed budget for the Limited Common Elements-Residential (the "LCER Budget") and a proposed budget for the Limited Common Elements-Deed Restricted Residential (the "LCEDR Budget"); (b) the Tourist Accommodation Directors shall submit to the Executive Board a proposed budget for the Limited Common Elements-Tourist Accommodation (the "LCETA Budget"),

31


450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
39 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

which budget may take into account any payments to be received from others on account of use of the Amenities; and, (c) the Commercial Directors shall submit to the Executive Board a proposed budget for the Limited Common Elements-Commercial (the "LCEC Budget"). The Executive Board as a whole shall formulate the remainder of the budget pertaining to the General Common Elements (the "GCE Budget"). The LCER Budget, LCEDR Budget, LCETA, and the GCE Budget, shall within thirty (30) days after the adoption thereof be delivered by the Executive Board to the Residential Owners, as applicable, and the LCEC Budget, together with the GCE Budget, shall on the same date be delivered by the Executive Board to the Commercial Owners.

If any proposed budget does not exceed 120 percent of the budget for the preceding year, then at the meeting set pursuant to sub-section 8.6.1: (a) unless sixty-seven percent (67%) of the Residential Owners reject the LCER Budget (minus the LCETA and LCEDR Budgets), such proposed LCER Budget is ratified, whether or not a quorum is present; (b) unless sixty-seven percent (67%) of the Tourist Accommodation Owners reject the LCETA Budget, such proposed LCETA Budget is ratified, whether or not a quorum is present; (c) unless sixty-seven percent (67%) of the Deed Restricted Residential Owners reject the LCEDR Budget, such proposed LCEDR Budget is ratified, whether or not a quorum is present; (d) unless sixty-seven percent (67%) of the Commercial Owners reject the LCEC Budget, such proposed LCEC Budget is ratified, whether or not a quorum is present; and (e) unless sixty-seven percent (67%) of each Class of the Residential Owners and the Commercial Owners reject the GCE Budget, such proposed GCE Budget is ratified, whether or not a quorum is present.

If the proposed budget exceeds 120 percent of the budget for the preceding year, then at the meeting set pursuant to sub-section 8.6.1: (a) if a majority of the Residential Owners present in person or by proxy at such meeting other than Declarant, and Declarant, so long as Declarant owns any Residential Unit or Fractional Ownership Interest, approve the LCER Budget (minus the LCETA and LCEDR Budgets), such proposed LCER Budget is ratified, whether or not a quorum is present; (b) if a majority of the Tourist Accommodation Owners present in person or by proxy at such meeting other than Declarant, and Declarant, so long as Declarant owns any Tourist Accommodation Unit or Fractional Ownership Interest, approve the LCETA Budget, such proposed LCETA Budget is ratified, whether or not a quorum is present; (c) if a majority of the Deed Restricted Residential Owners present in person or by proxy at such meeting other than Declarant, and Declarant, so long as Declarant owns any Deed Restricted Residential Unit, approve the LCEDR Budget, such proposed LCEDR Budget is ratified, whether or not a quorum is present; (d) if a majority of the Commercial Owners present in person or by proxy at such meeting other than Declarant, and Declarant, so long as Declarant owns any Commercial Unit, approve the LCEC Budget, such proposed LCEC Budget is ratified, whether or not a quorum is present; and (e) if a majority of each Class of the Residential Owners and the Commercial Owners present in person or by proxy at such meeting other than Declarant, and Declarant, so long as Declarant owns any Unit or Fractional Ownership Interest, approve the GCE Budget, such proposed GCE Budget is ratified, whether or not a quorum is present.

In the event the GCE Budget is rejected by the Owners in the foregoing manner, the GCE Budget last ratified must be continued until such time as the Owners ratify a subsequent GCE Budget proposed by the Executive Board. In the event either the LCER Budget, LCETA Budget, LCEDR Budget or the LCEC Budget is rejected by the respective Class or Category of Owners, the respective budget last ratified by the respective Class or Category of Owners must be continued until such Class or Category of Owners ratifies a subsequent LCER, LCETA Budget, LCEDR Budget and/or LCEC Budget proposed by the Executive Board.

8.6.3    The Executive Board shall adopt budgets and, if required by law or by the Association Documents, submit the budgets to a vote of the Owners as provided herein no less frequently than annually. The Executive Board shall levy and assess the Association's annual Assessments in



accordance with the annual budgets. The annual budget for any applicable fiscal year subsequent to the initial budget shall not exceed 120 percent of the budget for the preceding fiscal year, without the consent of a majority of Owners other than the Declarant as provided in subsection 8.6.2 above.

8.6.4 Notwithstanding any provision of this Section 8.6 to the contrary, the Executive Board may, by unanimous vote of its members unless the Owners holding sixty-seven percent (67%) of the votes in each Category of Owner reject such action, simplify the budgeting procedures provided in 8.6.2.

Section 8.7    Special Assessments.

In addition to the annual Assessments authorized above, the Executive Board may at any time and from time to time determine, levy, assess and collect in any fiscal year (without the vote of the members of the Association, except as provided in the Act and in this Section below) a special Assessment applicable to that particular fiscal year (and for any such longer period as the Executive Board may determine) against all of the Owners with respect to the General Common Elements or one or more of the Classes or Categories of Owners with respect to their respective Limited Common Elements for the purpose of defraying, in whole or in part, the unbudgeted costs, fees and expenses of any construction, reconstruction, repair, demolishing, replacement, renovation or maintenance of the Project or of any facilities located on the Project, specifically including any fixtures and personal property related to it. Any amounts determined, levied and assessed in connection with the General Common Elements pursuant to this Declaration shall be assessed by a majority of the voting Directors of the Executive Board, including the approval of a majority of Residential Directors and a majority of Commercial Directors, to the Units in proportion to the respective Allocated Interest-General of the Units; provided, however, that any extraordinary insurance costs incurred as a result of the value of a particular Owner's Unit or the actions of a particular Owner (or his agents, servants, guests, tenants or invitees) shall be borne by that Owner. Any amounts determined, levied and assessed in connection with either the Limited Common Elements-Residential, the Limited Common Elements-Tourist Accommodation, the Limited Common Elements-Deed Restricted Residential or the Limited Common Elements-Commercial pursuant to this Declaration shall be assessed by the Directors of the relevant Class or Category of Owners to such Class or Category of Owners in proportion to the Allocated Interest applicable to such Class or Category; provided, however, that any extraordinary insurance costs incurred as a result of the value of a particular Owner's Unit or the actions of a particular Owner (or his agents, servants, guests, tenants or invitees) shall be borne by that Owner. Special Assessments shall be based on a budget adopted in accordance with Section 8.6 provided that, if necessary, the Association may adopt a new budget pursuant to Section 8.6 prior to levying a special Assessment. Such special Assessment(s) shall be due and payable as determined by the Executive Board.

Notwithstanding any other provision contained in this Section 8.7, special Assessments shall not, in the aggregate, exceed five percent (5%) of the annual budget for the applicable fiscal year (other than a special Assessment to restore or rebuild because of damage or destruction to a Unit), or ten percent (10%) of the annual budget for the applicable fiscal year if the special Assessment is for the repair or rebuilding of a Unit or Units, unless:

8.7.1 the amount determined, levied and assessed in connection with the General Common Elements pursuant to this Declaration shall be assessed by a majority of the voting Directors of the Executive Board with the approval of (i) a majority of Residential Directors and a majority of Commercial Directors, and (ii) a majority of Residential Owners other than Declarant and a majority of Commercial Owners other than Declarant, to the Units in proportion to the respective Allocated Interests-General of the Units; or



33

8.7.2    the amount determined, levied and assessed in connection with either the Units, Limited Common Elements-Residential, the Limited Common Elements-Tourist Accommodations, the Limited Common Elements-Deed Restricted Residential or the Limited Common Elements-Commercial pursuant to this Declaration shall be assessed by the Directors of the relevant Class or Category of Owners with the approval of (i) a majority of the relevant Class or Category of Directors, and (ii) a majority of relevant Class or Category of Owners other than Declarant, to such Class or Category of Owners in proportion to the Allocated Interest applicable to such Class or Category.

This paragraph shall not apply to special Assessments levied and assessed in connection with reimbursing the Association for costs incurred in bringing an Owner into compliance with the provisions of the Association Documents.

Section 8.8    Due Dates for Assessment Payments.

Unless otherwise determined by the Executive Board, the annual Assessments and any special Assessments which are to be paid in installments shall be paid periodically in advance (no less frequently than annually and no more frequently than monthly) and shall be due and payable to the Association at its office or as the Executive Board may otherwise direct in any Management Agreement, without notice (except for the notices required by this Article 8), on the first day of each quarter. If any such installment shall not be paid within fifteen (15) days after it shall have become due and payable, then the Executive Board may declare such assessment due in full and may assess a "late charge" on the installment in an amount of fifteen percent (15%) of the amount outstanding or such other charge, which does not exceed any limitations established by applicable law, as the Executive Board may fix by rule from time to time as provided in the bylaws of the Association to cover the extra expenses involved in handling such delinquent Assessment installment.

Section 8.9    Personal Assessments.

The Executive Board may from time to time determine, levy, assess and collect personal Assessments against or from any Owner of a Tourist Accommodation Unit or a Fractional Ownership Interest for personal charges incurred or created by such Owner and for which the Association is or may be responsible for payment. Personal Assessments include personal charges billed to the Owner through the Association or Managing Agent. They include charges such as ski passes, golf charges, health club charges, food and beverage charges, room service charges, loading dock charges and other similar charges and expenses for individual services, benefits, privileges and products acquired at or through the Project which is billed to a personal account of the Owner. Personal Assessments are due upon receipt of a billing statement or in the case of Owners of Fractional Ownership Interests, upon departure at the conclusion of a scheduled period of occupancy. The Executive Board may as a condition of occupancy require Owners of a Tourist Accommodation Unit or a Fractional Ownership Interest to provide a credit card or other payment assurance prior to permitting personal charges. The Executive Board may, with the approval of a majority of the applicable Category of Directors, determine, levy, assess and collect personal Assessments against or from any Owner of a Commercial or Deed Restricted Residential Unit.

Section 8.10    Declarant's Obligation to Pay Assessments.

Declarant shall be obligated to pay the annual, special, default and personal Assessments (including installments thereof) on each Unit or Fractional Ownership Interest owned by it.

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
42 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

Section 8.11    Default Assessments.

All monetary fines or other charges imposed or assessed against an Owner pursuant to the Association Documents, or any expense of the Association which is the obligation of an Owner pursuant to the Association Documents, shall become liens against such Owner's Unit or Fractional Ownership Interest which may be foreclosed or otherwise collected as provided in this Declaration. Notice of the amount and due date of such default Assessment shall be sent to the Owner subject to the Assessment at least thirty (30) days prior to the due date.

Section 8.12    Lien for Assessments.

The annual, special, personal and default Assessments (including installments of the Assessments) arising under the provisions of this Declaration (together with any and all interest, costs, late charges, expenses and reasonable attorneys' fees, including legal assistants' fees, which may arise under the provisions of Section 8.13 below) shall be burdens running with, and a perpetual lien in favor of the Association upon, the specific Unit or Fractional Ownership Interest to which such Assessments apply. To further evidence such lien upon a specific Unit or Fractional Ownership Interest, the Association may, but shall not be obligated to, prepare a written lien notice setting forth the description of the Unit or Fractional Ownership Interest, the amount of Assessments on the Unit or Fractional Ownership Interest unpaid as of the date of such lien notice, the rate of default interest as set by the bylaws of the Association and Section 8.13 below, the name of the Owner or Owners of the Unit or Fractional Ownership Interest, and any and all other information that the Association may deem proper. Any such lien notice shall be signed by a member of the Executive Board, an officer of the Association, or a Managing Agent and shall be recorded in the Office of the Clerk and Recorder of Pitkin County, Colorado. Any such lien notice shall not constitute a condition precedent to or delay the attachment of the lien, but such lien is a perpetual lien upon the Unit or Fractional Ownership Interest and attaches without notice at the beginning of the first day of any period for which any Assessment is levied.

Section 8.13    Effect of Nonpayment of Assessments.

If any annual, special, personal or default Assessment (or any installment of the Assessment) is not fully paid within thirty (30) days after the same becomes due and payable, then as often as the same may happen, (i) interest shall accrue at the Maximum Rate on any amount of the Assessment which was not paid within such 30-day period or on the amount of Assessment in default, whichever shall be applicable, accruing from the due date until date of payment; (ii) the Association may declare due and payable all unpaid quarterly or other installments of the annual Assessment or any special Assessment otherwise due during the fiscal year during which such default occurred, as well as any personal Assessments and default Assessments; (iii) the Association may thereafter bring an action at law or in equity, or both, against any Owner personally obligated to pay the same; and (iv) the Association may proceed to foreclose its lien against the particular Unit or Fractional Ownership Interest in the manner and form provided by Colorado law for foreclosure of real estate mortgages. In addition to the provisions of this Section, the Tourist Accommodation Directors shall have the remedies described in Section 23.11 with respect to the Plan Owners and the Plan Units.

An action at law or in equity by the Association against an Owner to recover a money judgment for unpaid Assessments (or any installment thereof) may be commenced and pursued by the Association without foreclosing or in any way waiving the Association's lien for the Assessments. If any such Assessment (or installment thereof) is not fully paid when due and if the Association commences such an action (or counterclaims or cross-claims for such relief in any action) against any Owner personally obligated to pay the same, or proceeds to foreclose its lien against the particular Unit or Fractional Ownership Interest, then all unpaid installments of annual and special Assessments, all personal

35


450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
43 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

Assessments and all default Assessments (including any such installments or Assessments arising during the proceedings of such action or foreclosure proceedings), any late charges under Section 8.8 above, any accrued interest under this Section 8.13, the Association's costs, expenses and reasonable attorneys' fees (including legal assistants' fees) incurred for any such action and/or foreclosure proceedings shall be taxed by the court as part of the costs of any such action or foreclosure proceedings and shall be recoverable by the Association from any Owner personally obligated to pay the same and from the proceeds from the foreclosure sale of the particular Unit or Fractional Ownership Interest in satisfaction of the Association's lien.

Foreclosure or attempted foreclosure by the Association of its lien shall not be deemed to estop or otherwise preclude the Association from again foreclosing or attempting to foreclose its lien for any subsequent Assessments (or installments thereof) which are not fully paid when due or for any subsequent default Assessments. The Association shall have the power and right to bid in or purchase any Unit or Fractional Ownership Interest at foreclosure or other legal sale and to acquire and hold, lease or mortgage the Unit or Fractional Ownership Interest, and to convey or otherwise deal with the Unit or Fractional Ownership Interest acquired in such proceedings.

First Mortgagees shall be entitled to cure any delinquency of the Owner of a Unit or Fractional Ownership Interest encumbered by the First Mortgagee in the payment of Assessments. In that event, the First Mortgagee shall be entitled to obtain a release from the lien imposed or perfected by reason of such delinquency.

Section 8.14    Successor's Liability for Assessments.

Notwithstanding the personal obligation of each Owner of a Unit or Fractional Ownership Interest to pay all Assessments on the Unit or Fractional Ownership Interest, and notwithstanding the Association's perpetual lien upon a Unit or Fractional Ownership Interest for such Assessments, all successors in interest to the fee simple title of a Unit or Fractional Ownership Interest, except as provided in Section 8.15 and Section 8.16 below, shall be jointly and severally liable with the prior Owner or Owners of the Unit or Fractional Ownership Interest for any and all unpaid Assessments, interest, late charges, costs, expenses and attorneys' fees against such Unit or Fractional Ownership Interest, without prejudice to any such successor's right to recover from any prior Owner any amounts paid thereon by such successor. However, such successor in interest shall be entitled to rely upon the existence and status of unpaid Assessments, interest, late charges, costs, expenses and attorneys' fees as shown upon any certificate issued by or on behalf of the Association to such named successor in interest pursuant to the provisions of Section 8.16 below.

Section 8.15    Waiver of Homestead Exemption; Subordination of Association's Lien for Assessments.

By acceptance of the deed or other instrument of transfer of a Unit or Fractional Ownership Interest, each Owner irrevocably subordinates the homestead exemption provided by Part 2, Article 41, Title 38, Colorado Revised Statutes, as amended, to the Association's perpetual lien for collection of assessments. The Association's perpetual lien on a Unit or Fractional Ownership Interest for Assessments shall be superior to all other liens and encumbrances except the following:

8.15.1  Real property ad valorem taxes and special assessment liens duly imposed by a Colorado governmental or political subdivision or special taxing district, or any other liens made superior by statute;

8.15.2  Any lien created by the Master Declaration; and



458454  01/11/2001  03:02P  CONDO DE DAVIS SILVI
44 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

8.15.3 To the extent permitted under the Act, the lien of any First Mortgage, including any and all advances made by the First Mortgagee and notwithstanding that any of such advances may have been made subsequent to the date of the attachment of the Association's liens.

With respect to the foregoing subpart 8.15.3, to the extent permitted under the Act, any First Mortgagee who acquires title to a Unit or Fractional Ownership Interest by virtue of foreclosing the First Mortgage or by virtue of a deed or assignment in lieu of such a foreclosure, or any purchaser at a foreclosure sale of the First Mortgage, will take the Unit or Fractional Ownership Interest free of any claims for unpaid Association Assessments, interest, late charges, costs, expenses and attorneys' fees against the Unit or Fractional Ownership Interest which accrue prior to the time such First Mortgagee or purchaser acquires title to the Unit or Fractional Ownership Interest, and the amount of the extinguished lien may be reallocated and assessed to all Units as a Common Expense at the direction of the Executive Board.

All other persons not holding liens described in this Section 8.15 above and obtaining a lien or encumbrance on any Unit or Fractional Ownership Interest after the recording of this Declaration shall be deemed to consent that any such lien or encumbrance shall be subordinate and inferior to the Association's future liens for Assessments, interest, late charges, costs, expenses and attorneys' fees, as provided in this Article 8, whether or not such consent is specifically set forth in the instrument creating any such lien or encumbrance.

A sale or other transfer of any Unit or Fractional Ownership Interest, including but not limited to a foreclosure sale, except as provided in Section 8.12 above and except as provided in Section 8.16 below, shall not affect the Association's lien on such Unit or Fractional Ownership Interest for Assessments, interest, late charges, costs, expenses and attorneys' fees due and owing prior to the time such purchaser acquires title and shall not affect the personal liability of each Owner who shall have been responsible for the payment thereof. Further, no such sale or transfer shall relieve the purchaser or transferee of a Unit or Fractional Ownership Interest from liability for, or the Unit or Fractional Ownership Interest from the lien of, any Assessments made after the sale or transfer.

Section 8.16    Statement of Status of Assessments.

Upon fourteen (14) calendar days written request (furnished in the manner described below for the response to such request) to a Managing Agent, the Executive Board or the Association's registered agent and payment of a reasonable fee set from time to time by the Executive Board, any Owner, prospective purchaser of a Unit or Fractional Ownership Interest, or Mortgagee shall be furnished, by personal delivery or by certified mail, first class postage prepaid, return receipt requested, to the inquiring party (in which event the date of posting shall be deemed the date of delivery) a statement of the Owner's account setting forth:

8.16.1   The amount of any unpaid Assessments, interest, late charges, costs, expenses and attorneys' fees then existing against a particular Unit or Fractional Ownership Interest;

8.16.2   The amount of the current installments of the annual Assessment and the date that the next installment is due and payable;

8.16.3   The date of the payment of any installments of any special Assessments then existing against the Unit or Fractional Ownership Interest; and

8.16.4   Any other information deemed proper by the Association.



37

Upon the issuance of such a certificate signed by a member of the Executive Board, by an officer of the Association, or by a Managing Agent, the information contained therein shall be conclusive upon the Association as to the person or persons to whom such certificate is addressed and who rely on the certificate in good faith. Unless such a statement of status of Assessments is delivered as described above within said fourteen (14) calendar day period, the Association shall have no right to assert a priority lien upon the Unit or Fractional Ownership Interest over the inquiring party's interest for unpaid Assessments which were due as of the date of the request.

Section 8.17   Liens.

Except for annual, special, personal and default Assessment liens as provided in this Declaration, mechanics' liens (except as provided in Article 12 below), tax liens and judgment liens and other liens validly arising by operation of law and liens arising under Mortgages, there shall be no other liens obtainable against the Common Elements or against the interest of any Unit or Fractional Ownership Interest in the Common Elements.

Section 8.18   Declarant's Obligations to the Project.

"Declarant's Report" as used in this Section 8.18 shall mean a statement containing the following information, where applicable:

8.18.1   A status report covering each improvement, if any, included in the Project which was scheduled for completion during the quarter according to the planned construction statement for the Project and each still uncompleted improvement that was scheduled for completion during an earlier quarter;

8.18.2   The number of Tourist Accommodation Units, Deed Restricted Residential Units and Commercial Units owned by Declarant as of the first and last day of the quarter;

8.18.3   The total annual and special Assessments which Declarant became obligated to pay during the quarter;

8.18.4   The total annual and special Assessments actually paid by Declarant to the Association during the quarter;

8.18.5   The amount of any delinquency by Declarant in the payment of annual and special Assessments that has not been cured as of the date of such Declarant's Report; and

8.18.6   An itemized report of funds, goods and services, if any, furnished, or caused to be furnished, by Declarant to the Association under a subsidization program, if any, including, without limitation, payment of into the Reserve Account.

For so long as Declarant owns in excess of twenty percent (20%) of all Units, Declarant shall, within thirty (30) days after the end of each quarter of the fiscal year, furnish to each member of the Executive Board at his or her residence address a Declarant's Report.

If the Declarant's Report is not received by the Executive Board members within forty-five (45) days after the end of a quarter, or if the Declarant's Report received evidences a failure by Declarant to fulfill any obligation of Declarant to the Association, the Executive Board shall hold a special meeting to consider and to vote on the question of initiating action against the Declarant and/or Declarant's surety to enforce Declarant's unfulfilled obligations.

38



If, within seventy-five (75) days following the end of the calendar quarter for which Declarant is required to submit a Declarant's Report and with respect to which the Declarant's Report was either not submitted or reflected a failure by Declarant to fulfill its obligations to the Association, the Board fails to meet to consider and vote on the question of enforcing Declarant's obligations or if, within said seventy-five (75) day period, the Board refuses to initiate action to enforce the Declarant's unfulfilled obligations, the director of the Association elected solely by the votes of Owners other than Declarant shall be empowered to initiate action in the name of the Association and at the Association's expense, including, without limitation, arbitration proceedings as more particularly provided below. If such director initiates an action in the name of the Association, he or she shall do so within ninety (90) days after the end of the quarter and the Executive Board shall thereafter take such steps as are necessary and appropriate in furtherance of the purpose of the action.

Any disagreement or controversy between the Declarant and the Association with respect to the question of the fulfillment of the Declarant's obligations to pay for Assessments or to pay the costs of operating the Project or The Ritz-Carlton Club Membership Program shall, at the request of either party, be submitted to arbitration in accordance with the commercial arbitration rules of the American Arbitration Association ("AAA Rules") and the following rules and procedures:

(a) The Declarant shall advance the fees necessary to initiate the arbitration. The costs and fees, including ongoing costs and fees, shall be paid as agreed by the parties. If the parties cannot agree, the costs and fees shall be allocated as determined by the arbitrator(s). The costs and fees of the arbitration shall ultimately be borne as determined by the arbitrator(s);

(b) The administration of the arbitration shall be conducted by a neutral and impartial person(s);

(c) A neutral and impartial individual(s) shall be appointed to serve as arbitrator(s) within sixty days from the other party's receipt of a written request from a party to arbitrate the claim or dispute;

(1) All persons whose names have been submitted for consideration for appointment or designation as arbitrators, or who have been appointed or designated as such, shall, within 15 days, make a disclosure to the parties of any information which might cause their impartiality to be questioned including, but not limited to, any of the following instances:

1. The person has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

2. The person served as a lawyer in the matter in controversy, or the person is or has been associated with another who has participated in the matter during such association, or he or she has been a material witness concerning it.

3. The person served as an arbitrator in another proceeding involving one or more of the parties to the proceeding.

4. The person, individually or as a fiduciary, or such person's spouse or minor child residing in such person's household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.



450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
47 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

5. The person, his or her spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person meets any of the following conditions:

i. The person is or has been a party to the proceeding, or an officer, director, or trustee of a party.

ii. The person is acting or has acted as a lawyer in the proceeding.

iii. The person is known to have an interest that could be substantially affected by the outcome of the proceeding.

iv. The person is likely to be a material witness in the proceeding.

6. The person has a close personal or professional relationship with a person who meets any of the following conditions:

i. The person is or has been a party to the proceeding, or an officer, director, or trustee of a party.

ii. The person is acting or has acted as a lawyer or representative in the proceeding.

iii. The person is or expects to be nominated as an arbitrator in the proceedings.

iv. The person is known to have an interest that could be substantially affected by the outcome of the proceeding.

v. The person is likely to be a material witness in the proceeding.

(2) Unless otherwise agreed by the parties or the rules governing the arbitration, an arbitrator may be challenged only if circumstances exist that give rise to justifiable doubts as to his or her independence or impartiality, or as to his or her possession of the qualifications upon which the parties have agreed.

(d) The venue of the arbitration shall be Pitkin County, Colorado, unless the parties agree to some other location;

(e) The commencement of the arbitration shall be prompt and timely in accordance with (i) the AAA Rules, or if the AAA Rules 'do not specify a date by which the arbitration must commence, then (ii) a date as agreed to by the parties, and if they cannot agree, (iii) a date determined by the arbitrator(s);

(f) The arbitration shall be conducted in accordance with the AAA Rules;

(g) The conclusion of the arbitration shall be prompt and timely;



40

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
48 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

(h)     The arbitrators shall be authorized to provide all recognized remedies available in law or equity for any cause of action that is the basis of the arbitration. The parties may authorize the limitation or prohibition of punitive damages.

## ARTICLE 9.
## MAINTENANCE RESPONSIBILITY

Section 9.1     Owner's Rights and Duties with Respect to Interiors.

Except as may be provided in the purchase and sale agreement or other conveyancing documents executed by Declarant in connection with sales or leases to initial purchasers of the Units, each Owner (but not any Owner of a Fractional Ownership Interest) shall have the exclusive right and duty to paint, tile, wall paper or otherwise decorate or redecorate and to maintain and repair the interior surfaces of the walls, floors, ceilings and doors forming the boundaries of such Owner's Individual Air Space Unit and all walls, floors, ceilings and doors within such boundaries.

Section 9.2     Responsibility of the Owner.

Except as provided in Article 23 below for Fractional Owners, the Owner at the Owner's expense shall maintain and keep in repair the interior of the Unit, including the fixtures and utilities located in the Unit to the extent current repair shall be necessary in order to avoid damaging other Units or the Common Elements. All fixtures, equipment and utilities installed and included in an Individual Air Space Unit serving only that Unit, commencing at a point where the fixtures, equipment and utilities enter the Individual Air Space Unit, shall be maintained and kept in repair by the Owner of that Unit. An Owner shall also maintain and keep in repair all windows and other glass items related to such Owner's Unit and any entry door or doors serving such Unit. Notwithstanding the foregoing provisions of this Section 9.2, the maintenance and repair of the interior of any Plan Unit shall be undertaken by the Tourist Accommodation Directors at the expense of the Tourist Accommodation Owners in conformance with the provisions of Article 23 hereof, and no individual Owner of any Fractional Ownership Interest shall have any of the rights heretofore described. An Owner shall not allow any action or work that will impair the structural soundness of the improvements, impair the proper functioning of the utilities, heating, ventilation or plumbing systems or integrity of the Building, or impair any easement or hereditament. Except as otherwise set forth in Section 13.5, no Owner shall alter any Common Elements without the prior written consent of the Association.

Section 9.3     Responsibility of the Association.

The Association, without the requirement of approval of the Owners but subject to Section 8.6 above, shall maintain and keep in good repair, replace and improve, as a Common Expense, the Common Elements and all portions of the Project not required in this Declaration to be maintained and kept in good repair by an Owner, a Class or Category of Owners or Declarant.

Section 9.4     Owner's Failure to Maintain or Repair.

In the event that portions of a Unit or other improvements are not properly maintained and repaired, and if the maintenance responsibility for the unmaintained improvement lies with the Owner of the Unit, or in the event that such improvements are damaged or destroyed by an event of casualty and the Owner does not take reasonable measures to diligently pursue the repair and reconstruction of the damaged or destroyed improvements to substantially the same condition in which they existed prior to the damage or destruction, then the Association, after written notice to the Owner and the expiration of a thirty (30) day cure period, and with the approval of the Executive Board, shall have the right to enter

41



upon the Unit to perform such work as is reasonably required to restore the Unit and other improvements to a condition of good order and repair; provided, however, if such repair and reconstruction due to an event of casualty cannot be reasonably performed within such thirty (30) day cure period, the Owner shall have such time as reasonably required to perform such repair and reconstruction so long as the work has been commenced within such cure period and is diligently pursued to completion. All costs incurred by the Association in connection with the restoration shall be a default Assessment and shall be reimbursed to the Association by the Owner of the Unit, upon demand. All unreimbursed costs shall be a lien upon the Unit until reimbursement is made. The lien may be enforced in the same manner as a lien for an unpaid Assessment levied in accordance with Article 8 of this Declaration. In the event of an emergency which threatens imminent bodily harm or property damage the Association shall have the right to give such shorter notice as may be reasonable under the circumstances and to undertake repairs if not undertaken by such Owner.

Section 9.5    Owner's Responsibility for Limited Common Elements.

9.5.1    The Owners of Units that are not committed to the Plan of Fractional Ownership are solely responsible for all expenses of maintenance, repair and replacement of Limited Common Elements appurtenant to such Units.

9.5.2    All Owners of Units that are committed to the Plan of Fractional Ownership are collectively responsible for all expenses of maintenance, repair and replacement of Limited Common Elements appurtenant to such Units.

### ARTICLE 10.
### INSURANCE AND FIDELITY BONDS

Section 10.1    General Insurance Provisions.

The Association shall maintain, to the extent reasonably available:

10.1.1    Property insurance on the Common Elements and, to the extent required by law, the Units for fire and other broad form covered causes of loss; except that the total amount of insurance must be not less than the full insurable replacement costs of the insured property less applicable deductibles at the time the insurance is purchased and at each renewal date, exclusive of land, excavations, foundations, paving areas, landscaping, personal property and other items normally excluded from property policies. In all insurance policies obtained hereunder, the Association shall be named as a co-insured as agent for each of the Owners.

10.1.2    Commercial general liability insurance (with one policy being obtained for the Association and the Common Elements and separate policies being obtained for the Units by each individual Owner, unless the Residential Directors and Commercial Directors each independently determine on behalf of their respective Class of Owners to participate in a collective policy for the Project), (a) by the Residential Owners, through the Residential Directors, for the Limited Common Elements-Residential, (b) by the Commercial Owners, either individually or collectively through the Commercial Directors, for the Limited Common Elements-Commercial, (c) by the Association, through the Executive Board for the General Common Elements against claims and liabilities arising in connection with the ownership, existence, use or management of the General Common Elements, the Limited Common Elements and the Association, (d) by the Tourist Accommodation Owners through the Tourist Accommodation Directors for the Tourist Accommodation Units and Limited Common Elements-Tourist Accommodation; and (e) by the Deed Restricted Residential Owners through the Deed Restricted Residential Directors for the Limited Common Elements-Deed Restricted Residential, in an amount



459454 01/11/2001 03:02P CONDO DE DAVIS SILVI
90 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

determined by the Association, but not less than Two Million Dollars ($2,000,000.00)in respect to bodily injury or death to any number of persons arising out of one accident or disaster, or for damage to property, and if higher limits shall at any time be customary to protect against tort liability such higher limits shall be carried. Declarant shall be included as an additional insured in Declarant's capacity as an Owner and Executive Board member. The Owners (as a class) shall be included as additional insureds but only for claims and liabilities arising in connection with the ownership, existence, use or management of the Common Elements. The insurance shall cover claims of one or more insured parties against other insured parties.

10.1.3  The Association may carry such other and further insurance that the Executive Board considers appropriate, including insurance on Units that the Association is not obligated to insure, to protect the Association or the Owners.

Section 10.2  Cancellation.

If the insurance described in Section 10.1 above is not reasonably available, or if any policy of such insurance is cancelled or not renewed without a replacement policy therefor having been obtained, the Association promptly shall cause notice of that fact to be hand delivered or sent prepaid by United States mail to all Owners.

Section 10.3  Policy Provisions.

To the extent reasonably obtainable, insurance policies carried pursuant to Section 10.1 above must provide that:

10.3.1  Each Owner is an insured person under the policy with respect to liability arising out of such Owner's interest in the Common Elements or membership in the Association;

10.3.2  The insurer waives its rights of subrogation under the policy against any Owner, member of his household, guest or invitee to the extent of the coverage obligation in Section 10.3.1;

10.3.3  No act or omission by an Owner, unless acting within the scope of his authority on behalf of the Association, will void the policy or operate as a condition to recovery by any other person under such policy; and

10.3.4  If, at the time of a loss under the policy, there is other insurance in the name of an Owner covering the same risk covered by the policy, the Association's policy provides primary insurance to the extent of the coverage obligation in Section 10.3.1.

Section 10.4  Insurance Proceeds.

Excluding any business interruption proceeds, any loss covered by the property insurance policy described in Section 10.1 above must be adjusted with the Association or the Managing Agent acting on behalf of the Association, but the insurance proceeds for that loss shall be payable to any insurance trustee, including but not limited to the Managing Agent, designated for that purpose by the Executive Board or to the Association as directed by the Executive Board or the respective Class or Classes of Directors representing the Class or Classes of Owners entitled to receipt of such proceeds, and not to any holder of a security interest. The insurance trustee or the Association shall hold any insurance proceeds in trust for the Owners and Mortgagees as their interests may appear. Subject to the provisions of Section 10.7 below, the proceeds must be disbursed first for the repair or restoration of the damaged property, and the Association, Owners and Mortgagees are not entitled to receive payment of any portion of the

43

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
51 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

proceeds unless there is a surplus of proceeds after the damaged property has been completely repaired or restored or the regime created by this Declaration is terminated.

### Section 10.5   Association Policies.

The Association may adopt and establish written nondiscriminatory policies and procedures relating to the submittal of claims, responsibility for deductibles and any other matters of claims adjustment. To the extent the Association settles claims for damages to the Property or the Common Elements, it shall have the authority to assess negligent Owners causing such loss or benefiting from such repair or restoration all or any equitable portion of the deductibles paid by the Association.

### Section 10.6   Insurer Obligation.

An insurer that has issued an insurance policy for the insurance described in Section 10.1 above shall issue certificates or memoranda of insurance to the Association and, upon written request, to any Owner or Mortgagee. Unless otherwise provided by statute, the insurer issuing the policy may not cancel or refuse to renew it until thirty (30) days after notice of the proposed cancellation or nonrenewal has been mailed to the Association and to each Owner and Mortgagee to whom a certificate or memorandum of insurance has been issued at their respective last-known addresses.

### Section 10.7   Repair and Replacement.

10.7.1   Any portion of the Common Elements for which insurance is required under this Article which is damaged or destroyed must be repaired or replaced promptly by the Association unless:

(a)   The regime created by this Declaration is terminated;

(b)   Repair or replacement would be illegal under any state or local statute or ordinance;

(c)   Sixty-seven percent (67%) of the Allocated Interests of the Association (including a majority of the Allocated Interests held by the Residential Owners and a majority of the Allocated Interests held by the Commercial Owners) and all directly, adversely affected Owners agree in writing not to rebuild; or

(d)   Prior to the conveyance of any Unit to a person other than Declarant, the Mortgagee holding a Mortgage on the damaged portion of the Common Elements rightfully demands all or a substantial part of the insurance proceeds.

10.7.2   The cost of repair or replacement in excess of insurance proceeds and reserves is a Common Expense. If all damaged Common Elements are not repaired or replaced, the insurance proceeds attributable to the damaged Common Elements must be used to restore the damaged area to a condition compatible with the remainder of the Project, and except to the extent that other persons will be distributees, the remaining insurance proceeds must then be distributed to all the Owners or Mortgagees, as their interests may appear, in proportion to their respective Allocated Interests.

### Section 10.8   Common Expenses.

Premiums for insurance that the Association acquires and other expenses connected with acquiring such insurance are Common Expenses.

Section 10.9    Fidelity Insurance.

Fidelity bonds shall be maintained by the Association to protect against dishonest acts on the part of its officers, directors and employees and on the part of all others who handle or are responsible for handling the funds belonging to or administered by the Association, including the Managing Agent, in an amount not less than the greater of (i) two (2) months' current Assessments plus reserves as calculated from the current budget of the Association, or (ii) the maximum amount of funds of the Association over which the principals under the bond or policy may reasonably be expected to have control or access at any time. The Association must also secure and maintain, or require to be secured or maintained by any parties handling the collection, deposit, transfer or disbursement of Association funds, fidelity insurance with aggregate coverage of not less than two (2) months' assessments plus reserves, as calculated from the current budget of the Association; provided, however, in no event shall the coverage for third parties handling the collection, deposit, transfer or disbursement of Association funds be less than $50,000. In addition all funds and accounts of the Association being held by a Managing Agent or other third persons shall be kept in an account separate from the funds of other parties held by such Managing Agent or third party, and all reserves of the Association shall be kept in an account separate from the operational account of the Association. Any such fidelity coverage shall name the Association as an obligee and such bonds shall contain waivers by the issuers of all defenses based upon the exclusion of persons serving without compensation from the definition of "employees," or similar terms or expressions.

Section 10.10   Worker's Compensation Insurance.

If the Association has employees, the Association shall obtain worker's compensation or similar insurance with respect to its employees in the amounts and forms as may now or hereafter be required by law.

Section 10.11   Other Insurance.

The Association shall also maintain insurance to the extent reasonably available and in such amounts as the Executive Board may deem appropriate on behalf of Directors and officers against any liability asserted against a Director or officer or incurred by him in his capacity of or arising out of his status as a Director or officer. The Association may obtain insurance against such other risks, of a similar or dissimilar nature, as it shall deem appropriate with respect to its responsibilities and duties.

Section 10.12   Insurance Obtained by Owners.

It shall be the responsibility of each Owner, at such Owner's expense, (but not Owners of Fractional Ownership Interests) to maintain (i) physical damage insurance on the interior, finished surfaces of walls, floors and ceilings of such Owner's Unit, such Owner's personal property, furnishings, appliances and equipment and (ii) public liability insurance in a limit of not less than Five Million Dollars ($5,000,000.00) for each Owner's Individual Air Space Unit in respect to bodily injury or death to any number of persons arising out of one accident or disaster, or for damage to property, and if higher limits shall at any time be customary to protect against tort liability such higher limits shall be carried; provided, however, that any liability or casualty insurance required to be carried with respect to a Plan Unit shall be maintained by the Tourist Accommodation Directors pursuant to the provisions of Article 23 below, and not by the Owners of the Fractional Ownership Interests in such Plan Unit. Notwithstanding the foregoing, the Association is not obligated to obtain property damage insurance for personal property owned by Owners of Fractional Ownership Interests. In addition, an Owner may obtain such other and additional insurance coverage on and in relation to the Owner's Unit as the Owner in the Owner's sole discretion shall conclude to be desirable. However, none of such insurance coverages obtained by such Owner shall adversely affect any insurance coverage obtained by the Association or cause the diminution

45

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
53 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

or termination of that insurance coverage, nor shall such insurance coverage of an Owner result in apportionment of insurance proceeds as between policies of insurance of the Association and the Owner. An Owner shall be liable to the Association for the amount of any such diminution of insurance proceeds to the Association as a result of insurance coverage maintained by the Owner, and the Association shall be entitled to collect the amount of the diminution from the Owner as if the amount were a default Assessment, with the understanding that the Association may impose and foreclose a lien for the payment due. Any insurance obtained by an Owner shall include a provision waiving the particular insurance company's right of subrogation against the Association and other Owners except for damages caused by intentional acts or omissions of Owners. Each Owner shall be responsible to provide insurance coverage for the amount of any additional value to any Unit caused by any improvement to the Unit made by such Owner and not initially made by Declarant, including, but not limited to, the value of structural upgrades or fixtures supplied by the Owner, or if the applicable insurance is to be provided by the Association, for any additional insurance costs associated with such increased value due to the improvements.

The Executive Board may require an Owner who purchases additional insurance coverage for the Owner's Unit (other than coverage for the Owner's personal property) to file copies of such policies with the Association within thirty (30) days after purchase of the coverage to eliminate potential conflicts with any master policy carried by the Association.

## ARTICLE 11.
## CONVEYANCES AND TAXATION OF CONDOMINIUM UNITS

Section 11.1   Contracts to Convey Entered into Prior to Recording of Condominium Map and Declaration.

A contract or other agreement for the sale of a Unit entered into prior to the filing for record of the Condominium Map and this Declaration in the Office of the Clerk and Recorder of Pitkin County, Colorado, may legally describe such Unit in substantially the manner set forth in Section 11.2 below and may indicate that the Condominium Map and this Declaration are to be recorded.

Section 11.2   Contracts to Convey and Conveyances Subsequent to Recording of Condominium Map and Declaration.

Subsequent to the recording of the Condominium Map and this Declaration, contracts to convey, instruments of conveyance of Units and every other instrument affecting title to a Unit shall be in substantially the following form with such omissions, insertions, recitals of fact, or other provisions as may be required under the Act or by the circumstances or appropriate to conform to the requirements of any governmental authority or any usage or requirement of law with respect thereto:

Condominium Unit _____, Aspen Highlands Condominiums, according to the Declaration of Condominium for Aspen Highlands Condominiums, recorded January __ _____, 2001, under Reception No. ___ ___ and the Condominium Map for Aspen Highlands Condominiums recorded January _____, 2001, in Plat Book __ at Page _____ under Reception No. _____ in the Office of the Clerk and Recorder of Pitkin County, Colorado.

Section 11.3   Conveyance Deemed to Describe an Undivided Interest in Common Elements.

Every instrument of conveyance, Mortgage, or other instrument affecting title to a Unit which legally describes the Unit substantially in the manner set forth in Section 11.2 above shall be construed to describe the Individual Air Space Unit, together with the undivided interest in the Common Elements

46


450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
54 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

appurtenant to it, and together with all fixtures and improvements contained in it (unless any such fixtures or improvements shall be Common Elements), and to incorporate all the rights incident to ownership of a Unit and all the limitations of ownership as described in the covenants, conditions, restrictions, easements, reservations, rights-of-way and other provisions contained in this Declaration, including the easement of enjoyment to use the Common Elements.

Section 11.4   Separate Tax Assessments.

Upon the recording of this Declaration and the filing of the Condominium Map for record in the Office of the Clerk and Recorder of Pitkin County, Colorado, Declarant shall deliver a recorded copy of this Declaration and the Map to the Assessor of Pitkin County, Colorado, as provided by law, which notice shall set forth the descriptions of the Units, including the interest in the Common Elements appurtenant to the Unit, so that thereafter all taxes, assessments and other charges by any governmental or political subdivision or any special improvement district or any other taxing agent or assessing authority shall be assessed against and collected on each Unit, each of which shall be carried on the tax records as a separate and distinct parcel for that purpose. For the purpose of such assessment against the Units, valuation of the Common Elements including, without limitation, any parking space units owned by the Association as Common Elements, shall be apportioned among the Units in proportion to the Allocated Interest in the Common Elements appurtenant to such Units. Valuation of Limited Common Elements shall be apportioned among those Units having the beneficial use of such Limited Common Elements. Accordingly, the Common Elements shall not be assessed separately but shall be assessed with the Units as provided pursuant to Colorado Revised Statutes Subsection 38-33.3-105(2).

The lien for taxes assessed to the Owner or Owners of a Unit shall be confined to his Individual Air Space Unit and to his appurtenant undivided interest in the Common Elements. No forfeiture or sale of any Unit for delinquent taxes, assessments or other governmental charges shall divest or in any way affect the title to any other Unit.

### ARTICLE 12.
### MECHANICS' LIENS

Section 12.1   Mechanics' Liens.

Subsequent to the filing of the Map and recording of this Declaration, no labor performed or materials furnished for use and incorporated in any Unit with the consent of or at the request of the Owner of the Unit or the Owner's agent, contractor or subcontractor shall be the basis for the filing of a lien against a Unit of any other Owner not expressly consenting to or requesting the same, or against any interest in the Common Elements except as to the undivided interest therein appurtenant to the Individual Air Space Unit of the Owner for whom such labor shall have been performed or such materials shall have been furnished. Each Owner shall indemnify and hold harmless each of the other Owners and the Association from and against any liability or loss arising from the claim of any mechanic's lien for labor performed or for materials furnished in work on such Owner's Unit against the Unit of another Owner or against the Common Elements, or any part thereof.

Section 12.2   Enforcement by the Association.

At its own initiative or upon the written request of any Owner (if the Association determines that further action by the Association is proper), the Association shall enforce the indemnity provided by the provisions of Section 12.1 above by collecting from the Owner of the Unit on which the labor was performed or materials furnished the amount necessary to discharge by bond or otherwise any such mechanic's lien, including all costs and reasonable attorneys' fees incidental to the lien, and obtain a

47



release of such lien. In the event that the Owner of the Unit on which the labor was performed or materials furnished refuses or fails to so indemnify within seven (7) days after the Association shall have given notice to such Owner of the total amount of the claim, or any portions thereof from time to time, then the failure to so indemnify shall be a default by such Owner under the provisions of this Section 12.2, and such amount to be indemnified shall automatically become a default Assessment determined and levied against such Unit, and enforceable by the Association in accordance with Sections 8.11, 8.12 and 8.13 above.

## ARTICLE 13.
## USE RESTRICTIONS

### Section 13.1   Use of Units.

Residential uses and commercial uses are contemplated within the Project, and any functions, activities and uses permitted under any zoning or other laws, rules or regulations applicable to Aspen Highlands Village are expressly allowed, subject to the restrictions set forth in Section 13.2 pertaining to the Commercial Units and Section 13.3 pertaining to the Residential Units. No rules and regulations relating to the Project shall be adopted which unfairly discriminate against any use permitted within either the Residential Units or the Commercial Units. All Owners will be subject to the rules and regulations of the Association. The Directors representing each Class or Category may adopt rules applicable to such respective Class or Category that are more restrictive than those that are adopted by the Executive Board as a whole.

### Section 13.2   Commercial Uses.

Commercial uses permitted within the Project are limited to those compatible with a world class, five star resort facility. Among the uses permitted under Section 13.1, are (i) ski and snowboard sales and rental shops, and (ii) restaurant/bars (including outdoor decks associated therewith). The Executive Board may, with the approval of a majority of each Class of Directors, regulate commercial uses by rules and regulations governing specific uses, operating hours, music amplification, lighting, noise, heat, vibration, odors and other matters that might cause unreasonable disturbance for occupants of the Residential Units. All Commercial Units shall be used only for the uses as specified within the PUD Plan, and in conformity with all other zoning laws, ordinances and regulations. Owners of Commercial Units may rent or lease such Units to others for these purposes. Commercial Units may be used by Declarant as a Commercial Project sales office, Commercial Units management office, rental management office, storage facility and/or such other uses as may be permitted under the Act. Amendments to rules and regulations governing commercial uses shall require the approval of a majority of the Executive Board and a majority of both the Residential Directors and the Commercial Directors.

### Section 13.3   Residential Uses.

All Residential Units shall be used for dwelling and lodging purposes only, in conformity with all zoning laws, ordinances and regulations. Owners of Residential Units may rent or lease such Units to others, on a long term or short term basis, for these purposes and may use the Residential Units for home occupations which are permitted by applicable zoning codes provided use for home occupations is occasional and does not result in additional vehicular or pedestrian traffic. Notwithstanding the foregoing, Residential Units may be used by Declarant as a Residential Project sales office, Residential Units management office, rental management office, storage facility and/or such other uses as may be permitted under the Act. Amendments to rules and regulations governing residential uses shall require the approval of a majority of the Executive Board and a majority of both the Residential Directors and the Commercial Directors.

48

### Section 13.4  Conveyance of Units.

All Units, whether or not the instrument of conveyance or assignment shall refer to this Declaration, shall be subject to the covenants, conditions, restrictions, easements, reservations, rights-of-way and other provisions contained in this Declaration, as the same may be amended from time to time.

### Section 13.5  Use of Common Elements.

There shall be no obstruction of, nor shall anything be kept or stored by any Owner or other party on any part of (a) the General Common Elements without the prior written approval of the Executive Board, including a majority of each Class of Directors, (b) the Limited Common Elements-Residential or the Limited Common Elements-Deed Restricted Residential without the prior written approval of the Residential Directors, (c) the Limited Common Elements-Tourist Accommodation without the prior written approval of the Tourist Accommodation Directors, or (d) the Limited Common Elements-Commercial without the prior written approval of the Commercial Directors. Nothing shall be altered on, constructed in or removed by any Owner or other party from (w) the General Common Elements without the prior written approval of the Executive Board, including a majority of each Class of Directors, (x) the Limited Common Elements-Residential, the Limited Common Elements-Tourist Accommodation, or the Limited Common Elements-Deed Restricted Residential without the prior written approval of the Residential Directors, or (y) the Limited Common Elements-Commercial without the prior written approval of the Commercial Directors.

### Section 13.6  Prohibition of Increases in Insurable Risks and Certain Activities.

Nothing shall be done or kept in any Unit or in or on the Common Elements, or any part thereof, which would result in the cancellation of the insurance on all or any part of the Project or, taking into account that the Project is a mixed-use project and the particular use involved, in an increase in the rate of the insurance on all or any part of the Project over what the Association, but for such activity, would pay, without the prior written approval of the Association. Nothing shall be done or kept in any Unit or in or on the Common Elements which would be in violation of any statute, rule, ordinance, regulation, permit or other imposed requirement of any governmental body having jurisdiction over the Property. No damage to or waste of the Common Elements shall be committed by any Owner, or by any member of the Owner's family, or by any guest, lessee, invitee or contract purchaser of any Owner, and each Owner shall indemnify and hold the Association and the other Owners harmless against all loss resulting from any such damage or waste caused by the grossly negligent, reckless or intentional act or omission of such Owner, the members of the Owner's family, or the Owner's guests, lessees, invitees or contract purchasers. To the extent that the loss resulting from any damage or waste is due to the negligent act or omission of an Owner, any member of an Owner's family, or an Owner's guests, invitees or tenants, then such Owner shall be liable to the Association for the amount of any applicable insurance deductible(s) and for any amounts in excess of insurance proceeds; provided, however, if such damage or waste is not covered by insurance the Owner shall indemnify and hold the Association and the other Owners harmless against all loss resulting from any such damage or waste. Failure to so indemnify shall be a default by such Owner under this Section, and such amount to be indemnified shall automatically become a default Assessment determined and levied against such Unit. At its own initiative or upon the written request of any Owner (and if the Association determines that further action by the Association is proper), the Association shall enforce the foregoing indemnity as a default Assessment as provided in Sections 8.11, 8.12 and 8.13 above.

49

Section 13.7    Use of Commercial Unit as Health Club Facility.

13.7.1  In the event that any Commercial Unit within the Project is (i) used by its Owner or any tenant, licensee or manager of such Owner as a health or athletic club or facility of any nature whatsoever and (ii) such facility is made available for use by the Owners of Tourist Accommodation Units (including Owners of Fractional Ownership Interests therein) (any such Commercial Unit that meets both of the above criteria being hereinafter referred to as the "Health Club Facility"), Declarant desires to provide for access to such Health Club Facility by members of the Amenities Association. Therefore, the Owner of a Unit in which a Health Club Facility is operated (the "Facility Owner") shall be obligated to enter into an agreement permitting the members of the Amenities Association from time to time to use the Health Club Facility, which agreement shall, at minimum, provide the following:

13.7.2  The members of the Amenities Association shall have the right to use the Health Club Facility on the same terms and conditions as are provided for the use of the Health Club Facility by the Tourist Accommodation Owners;

13.7.3  The Facility Owner may charge each member of the Amenities Association a fee no greater than the fee charged to the Tourist Accommodation Owners for use of the Health Club Facility; provided, however, that the fee charged to the owner of a wholly-owned unit subject to the Amenities Association shall be no more than two-thirds (2/3) of the total amount payable by all Owners of Fractional Ownership Interests in a single Tourist Accommodation Unit. Any such fees payable by the Amenities Association members shall be paid by the Amenities Association to the Facility Owner; and

13.7.4  The Amenities Association will indemnify and hold the Facility Owner harmless from and against any claims, losses, liabilities, costs and expenses incurred by the Facility Owner and arising out of the use of the Health Club Facility by the members of the Amenities Association, except for normal costs of operation, maintenance, upkeep, repair and replacement of the Health Club Facility.

13.7.5  In addition to the obligation of the Facility Owner to make the Health Club Facility available to the members of the Amenities Association as provided in subsection 13.7.1 above, the Facility Owner shall have the right, but not the obligation, to make the Health Club Facility available to other parties, whether or not such parties are residents of Aspen Highlands Village, on such terms and subject to such conditions as the Facility Owner may determine.

13.7.6  Any person who is entitled to use the Health Club Facility pursuant to the terms and conditions of any separate agreement is hereby granted a nonexclusive easement over and across portions of the Common Elements of the Project solely and only to the extent necessary for access to the Health Club Facility, which easement shall be subject to the reasonable rules and regulations of the Association. Such easement shall exist as long as an agreement exists regarding use of the Health Club Facility.

13.7.7  Declarant hereby grants to the Facility Owner of a Health Club Facility that is located on Lot 8 of the Project, if any, the unilateral right to convey to the Association fee simple title interest in and to the Commercial Unit encompassing the Health Club Facility for no consideration as long as the Health Club Facility has adequate reserves and is in good condition, subject to ordinary wear and tear. If the Facility Owner exercises its unilateral right to convey title to such Commercial Unit to the Association, the Association shall acquire the Commercial Unit as a Limited Common Element-Tourist Accommodation. Such conveyance shall be subject to the terms of any agreement by and between such Facility Owner and the Amenities Association and Sections 5.4 and 13.7.

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
58 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

## ARTICLE 14.
## EASEMENTS

Section 14.1    Easement of Enjoyment.

Every Owner shall have a nonexclusive easement for the use and enjoyment of the Common Elements, which easement shall be appurtenant to and shall pass with the title to every Unit, subject to the easements set forth in this Article 14.

Section 14.2    Delegation of Use.

Any Owner may delegate, in accordance with the Association Documents, the Owner's right of enjoyment in the Common Elements to the Owner's tenants, employees, family, guests, customers, employees and invitees. The Executive Board may adopt rules and regulations limiting the number of guests and invitees (who are not occupying a Unit with the Owner thereof) that may use the Common Elements at the invitation of an Owner at any one time. The Executive Board may also establish reasonable rules and regulations governing occupancy limits in Commercial Units and Residential Units provided such rules and regulations receive the necessary approval from the Class of Directors affected by such amended rules and regulations. Limited Common Elements-Commercial shall be under the management and control of the Commercial Directors, Limited Common Elements-Residential and Limited Common-Elements-Deed Restricted Residential shall be under the management and control of the Residential Directors, and Limited Common Elements-Tourist Accommodation shall be under the management and control of the Tourist Accommodation Directors.

Section 14.3    Access to Commercial Units.

Owners, guests, customers, employees and invitees shall have a non-exclusive easement over and through the General Common Elements and the Limited Common Elements-Commercial for ingress and egress to Commercial Units.

Section 14.4    Recorded Easements.

The Property shall be subject to any easements as shown on any recorded plat affecting the Property, as contained in the Master Declaration and as shown on the recorded Condominium Map. The recording data for recorded easements, licenses and other title matters appurtenant to or included in the Property or to which any parts of the Property may become subject is set forth on the attached Exhibit D.

Section 14.5    Easements for Encroachments.

The Project, and all portions of it, are subject to easements hereby created for encroachments between Units and the Common Elements as follows:

14.5.1  In favor of the Association so that it shall have no legal liability when any part of the Common Elements encroaches upon an Individual Air Space Unit;

14.5.2  In favor of each Owner of each Unit so that the Owner shall have no legal liability when any part of his Individual Air Space Unit encroaches upon the Common Elements or upon another Individual Air Space Unit;

14.5.3  In favor of all Owners, the Association and the Owner of any encroaching Individual Air Space Unit for the maintenance and repair of such encroachments.

51



Encroachments referred to in this Section include, but are not limited to, encroachments caused by error or variance from the original plans in the construction of the Buildings or any Unit constructed on the Property, by error in the Condominium Map, by settling, rising or shifting of the earth, or by changes in position caused by repair or reconstruction of any part of the Project. Such encroachments shall not be considered to be encumbrances upon any part of the Project. Encroachments may also include those created by remodeling or reconstruction provided such work is performed in accordance with plans approved by the Executive Board.

Section 14.6  Utility Easements.

There is hereby created for use by third parties providing services to the Project a general easement upon, across, over, in and under all of the Property for ingress and egress and for installation, replacement, repair and maintenance of all utilities, including but not limited to water, sewer, gas, telephone, electricity and cable or other communication systems. By virtue of this easement, it shall be expressly permissible and proper for the companies providing electrical, telephone and other communication services to erect and maintain the necessary equipment on the Property and to affix and maintain electrical, communications and telephone wires, circuits and conduits under the Property, all in order to serve the Property. Any utility company using this general easement shall use its best efforts to install and maintain the utilities provided without disturbing the uses of the Owners, the Association and Declarant; shall prosecute its installation and maintenance activities as promptly as reasonably possible; and shall restore the surface to its original condition as soon as possible after completion of its work. Should any utility company furnishing a service covered by the general easement request a specific easement by separate recordable document, Declarant or the Executive Board shall have, and are hereby given, the right and authority to grant such easement upon, across, over or under any part or all of the Property without conflicting with the terms hereof. The easements provided for in this Section shall in no way affect, avoid, extinguish or modify any other recorded easement on the Property. The easements provided herein shall be subject to such limitations as may be imposed by the Executive Board with regard to, among other things, location and placement of lines and equipment, conditions and hours of work and temporary storage of materials and equipment. No person or entity shall install any equipment, lines or fixtures to the exterior of any of the Buildings that are subject to this Declaration whether on railings, balconies, exterior walls or roof, without the express written consent of the Declarant during the Declarant Control Period or thereafter, the Executive Board

Section 14.7  Reservation of Easements, Exceptions and Exclusions.

Declarant reserves for itself and its successors and assigns and hereby grants to the Association the concurrent right to establish from time to time by declaration or otherwise, utility and other easements within the Common Elements for purposes including but not limited to streets, paths, walkways, drainage, recreation areas, parking areas, ducts, shafts, flues, and conduit installation areas, consistent with the condominium ownership of the Project for the best interest of the Owners or any Category thereof and the Association.

Section 14.8  Emergency Access Easement.

A general easement is hereby granted to all police, sheriff, fire protection, ambulance and all other similar emergency agencies or persons to enter upon all streets and upon the Property in the proper performance of their duties.

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
60 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

Section 14.9   Maintenance Easement.

An easement is hereby granted to the Association and any Managing Agent and their respective officers, agents, employees and assigns upon, across, over, in, under and through the Common Elements and a right to make such use of the Common Elements as may be necessary or appropriate to perform the duties and functions which they are obligated or permitted to perform pursuant to this Declaration.

Section 14.10   Drainage Easement.

An easement is hereby reserved to Declarant and its successors and assigns and granted to the Association and its officers, agents, employees, successors and assigns to enter upon, across, over, in and under any portion of the Project for the purpose of changing, correcting or otherwise modifying the grade or drainage channels of the Property so as to improve the drainage of water on the Property.

Section 14.11   Easements of Access for Repair, Maintenance, and Emergencies.

Some of the Common Elements are or may be located within the Individual Air Space Units or may be conveniently accessible only through the Individual Air Space Units. The Owners of other Individual Air Space Units and the Association shall have the irrevocable right, to be exercised by the Association as the Owners' agent, to have access to each Individual Air Space Unit and to all Common Elements from time to time during such reasonable hours as may be necessary for the maintenance, repair, removal or replacement of any of the Common Elements therein or accessible therefrom or for making emergency repairs therein necessary to prevent damage to the Common Elements or to any Individual Air Space Unit. In addition, an easement is hereby created for such Common Elements as they currently exist within the Individual Air Space Units. Subject to the provisions of Section 7.3 above, damage to the interior of any part of an Individual Air Space Unit resulting from the maintenance, repair, emergency repair, removal or replacement of any of the Common Elements or as a result of emergency repair within another Individual Air Space Unit at the instance of the Association or of Owners shall be a Common Expense.

Section 14.12   Declarant's Rights Incident to Construction and Marketing.

Declarant, for itself and its successors and assigns, hereby retains a right and easement of ingress and egress over, in, upon, under, across and through the Property and the right to store materials on the Property and to make such other use of the Property as may be reasonably necessary or incident to the complete construction and sale of the Project, including, but not limited to materials, equipment, machinery, construction trailers, temporary construction offices, sales offices and directional and marketing signs; provided, however, that no such rights shall be exercised by Declarant in such a way as to unreasonably interfere with the occupancy, use, enjoyment or access by any Owner, or family members, guests, customers, employees, or invitees of an Owner. Declarant, for itself and its successors and assigns, hereby retains a right to maintain any Unit or Units as sales offices, management offices or model residences so long as Declarant, or any Successor Declarant, continues to be an Owner or lessee of such Unit. The use by Declarant of any Unit as a model residence, office or other use shall not affect the Unit's designation on the Map as a separate Unit. The rights granted to Declarant under this Section shall terminate of ten (10) years from the date this Declaration is recorded in the Office of the Clerk and Recorder of Pitkin County, Colorado.

Section 14.13   Right of Declarant and Association to Own Units and to Use Common Elements.

An easement is hereby reserved by Declarant for itself and its successors and assigns and granted to the Association and its officers, agents, employees, successors and assigns to maintain offices, storage



450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
01 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

areas, conference areas and recreational areas for use by the Association within the General Common Elements, the Limited Common Elements-Residential, and the Limited Common Elements-Commercial subject to all rules and regulations established under this Declaration and the Master Association Documents. The Association shall also have the right (but not the obligation) to purchase and own any Unit for the purpose of maintaining an office for the Association or for any other use that the Association determines is consistent with the operation of the Project. The costs and carrying charges incurred by the Association in purchasing and owning any such Unit shall be Common Expenses.

Section 14.14  Remodeling Easement.

Declarant, for itself and its successors and assigns, including Owners, retains a right and easement in and about the Building for the construction and installation of any duct work, additional plumbing or other additional services or utilities in the Common Elements in connection with the improvement or alteration of any Unit, including the right of access to such areas of the Common Elements as is reasonably necessary to accomplish such improvements. In the event of a dispute among Owners with respect to the scope of the easement reserved in this Section, the decision of the Executive Board shall be final.

Section 14.15  Reservation for Expansion.

Declarant hereby reserves to itself and the Association in all future phases of the Project an easement and right-of-way over, upon and across the Property for construction, utilities, drainage, and ingress to and egress from the Expansion Property, and other properties abutting and contiguous to the Property and the Expansion Property, and for use of the Common Elements as may be reasonably necessary or incident to the construction of improvements on the Units or other improvements on the Property or the Expansion Property; provided, however, that no such rights shall be exercised by Declarant in a way which unreasonably interferes with the occupancy, use, enjoyment, or access to the Project by the Owners. The location of these easements and rights-of-way may be made certain by Declarant or the Association by instruments recorded in the Office of the Clerk and Recorder of Pitkin County, Colorado.

Section 14.16  Easement for Master Common Areas.

Declarant reserves for itself and its successors and assigns and hereby grants to the Association the concurrent right to establish from time to time by declaration or otherwise, and/or to convey by license, easement or otherwise to the Master Association or the District, or both, an interest in any Unit, portion of the Property and the Common Elements in order that such Unit, portion of the Property or the Common Elements shall be deemed a Common Area of the Master Association subject to the maintenance and control of the Master Association pursuant to the Master Declaration or shall be deemed subject to the control of the District in accordance with the terms of any instrument creating such interest, in accordance with its governing documents and in accordance with applicable law.

Section 14.17  Easement for Access to Amenities.

That portion of the Common Elements necessary for access to the Amenities is granted to persons having a right to use the Amenities pursuant to Section 5.4 of this Declaration.

Section 14.18  Easements Deemed Created.

All conveyances of Units and Fractional Ownership Interests hereafter made, whether by Declarant or otherwise, shall be construed to grant and reserve the easements contained in this Article 14,

54



Case No. 1:16-cv-01301-PAB-GPG  Document 250-8  filed 05/15/18  USDC Colorado  pg 63 of 147

CASE 0:12-cv-03093-DSD-JJK  Document 49-7  Filed 05/10/13  Page 64 of 74

even though no specific reference to such easements or to this Article 14 appears in the instrument for such conveyance.

## ARTICLE 15.
## ASSOCIATION AS ATTORNEY-IN-FACT

### Section 15.1   Appointment.

Each and every Owner hereby irrevocably constitutes and appoints the Association as such Owner's true and lawful attorney-in-fact in such Owner's name, place and stead for the purpose of dealing with the Project upon its damage, destruction, condemnation or obsolescence as provided below in Articles 16, 17 and 18. In addition, the Association, or any insurance trustee or substitute insurance trustee designated by the Association or if the power it appoint an insurance trustee has been delegated to the Managing Agent, the Managing Agent, is appointed as attorney-in-fact under this Declaration for the purpose of purchasing and maintaining insurance under Article 10 above, including: (a) the collection and appropriate disposition of the proceeds of such insurance; (b) the negotiation of losses and the execution of releases of liability; (c) the execution of all documents; and (d) the performance of all other acts necessary to accomplish such purpose. The Association, or any insurance trustee, shall hold or otherwise properly dispose of any insurance proceeds in trust for the Owners and their Mortgagees, as their interests may appear. Acceptance by any grantee of a deed or other instrument of conveyance from Declarant or from any Owner shall constitute appointment of the attorneys-in-fact as provided above. Notwithstanding any other provision of this Declaration to the contrary, the Association may exercise its authority as attorney-in-fact for any purpose permitted pursuant to this Declaration only if, in each and every instance where such exercise is so permitted, the Executive Board approves the exercise of such authority by the affirmative vote of a majority of the voting Directors, including the affirmative vote of a majority of the Residential Directors and a majority of the Commercial Directors. If the Executive Board fails to so approve any exercise of authority as attorney-in-fact, the Association shall have such authority as it may have pursuant to the Act. Each Owner's appointment of the Association as attorney-in-fact as provided in this Section is a power coupled with an interest, and no further document or instrument is necessary to evidence the Association's appointment.

### Section 15.2   General Authority.

As attorney-in-fact, the Association shall have full and complete authorization, right and power to make, execute and deliver any contract, assignment, deed, waiver or other instrument with respect to the interest of any Owner which may be necessary or appropriate to exercise the powers granted to the Association as attorney-in-fact.

## ARTICLE 16.
## DAMAGE OR DESTRUCTION

### Section 16.1   The Role of the Executive Board.

In the event of damage to or destruction of all or part of the General Common Elements, or other Property covered by insurance written in the name of the Association under Article 10, the Executive Board shall arrange for and supervise the prompt repair and restoration of the damaged areas of the Project, including, without limitation, the floor coverings, fixtures and appliances initially installed therein by Declarant, and replacements thereof installed by the Owners up to the value of those initially installed by Declarant, but not including any furniture, furnishings, fixtures, equipment or other personal property supplied or installed by the Owners in the Units unless covered by insurance obtained by the Association. To the extent the damage or destruction affects all or part of any Tourist Accommodation

55

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
63 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

Unit and/or Deed Restricted Residential Unit, and/or the Limited Common Elements-Residential, the Limited Common Elements-Tourist Accommodation and/or the Limited Common Elements-Deed Restricted Residential, the Residential Directors shall perform the foregoing functions. To the extent the damage or destruction affects all or part of any Commercial Unit and/or the Limited Common Elements-Commercial, the Commercial Directors shall perform the foregoing functions. Notwithstanding the foregoing, each Owner (or the Tourist Accommodation Directors with respect to any Plan Unit) shall have the right to supervise the redecorating of his Unit. To the extent that the damage or destruction is due to the act or omission of an Owner, any member of an Owner's family, or an Owner's guests, invitees or tenants, then such Owner shall be liable to the Association in accordance with Section 7.3 above.

Section 16.2    Estimate of Damages or Destruction.

As soon as practical after an event causing damage to or destruction of any part of the Project, the Association shall, unless such damage or destruction shall be minor, obtain an estimate or estimates that it deems reliable and complete of the costs of repair and reconstruction of that part of the Project damaged or destroyed. "Repair and reconstruction" as used in this Article 16 shall mean restoring the damaged or destroyed part of the Project to substantially the same condition in which it existed prior to the damage or destruction, with each Individual Air Space Unit and the Common Elements having substantially the same vertical and horizontal boundaries as before.

Section 16.3    Repair and Reconstruction.

As soon as practical after obtaining estimates, the Association shall diligently pursue to completion the repair and reconstruction of the part of the Project damaged or destroyed. As attorney-in-fact for the Owners, the Association may, subject to statutory requirements for the approval of special assessments, take any and all necessary or appropriate action to effect repair and reconstruction, and no consent or other action by any Owner shall be necessary in connection with that action.

Section 16.4    Funds for Repair and Reconstruction.

The proceeds received by the Association from any casualty or hazard insurance shall be used for the purpose of repair, replacement and reconstruction.

Section 16.5    Insurance Proceeds Sufficient to Repair.

In the event of damage or destruction due to fire or other disaster, the insurance proceeds, if sufficient to reconstruct the improvements, shall be applied by the Association as attorney-in-fact to such reconstruction, and the improvements shall be promptly repaired and reconstructed. The Association shall have full authority, right and power as attorney-in-fact to cause the repair and restoration of the improvements. Assessments for Common Expenses shall not be abated during the period of insurance adjustments and repair and reconstruction.

Section 16.6    Insurance Proceeds Insufficient to Repair; Special Assessment; Remedies for Failure to Pay Special Assessment.

If the insurance proceeds are insufficient to repair and reconstruct the improvements, such damage or destruction shall be promptly repaired and reconstructed by the Association as attorney-in-fact, using the proceeds of insurance and the proceeds of a special Assessment to be made against all of the Owners and their Units. Any such special Assessment shall be a Common Expense in accordance with Section 8.7 above and shall be due and payable within thirty (30) days after written notice as provided in Article 8 above. The Association shall have full authority, right and power as attorney-in-fact to cause

56


490454 01/11/2001 03:02P CONDO DE DAVIS SILVI
84 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

the repair, replacement or restoration of the improvements using all of the insurance proceeds for such purpose, notwithstanding the failure of an Owner to pay the special Assessment.

Any Assessment provided for in this Section shall be a debt of each Owner and a lien on the Owner's Unit or Fractional Ownership Interest and may be enforced and collected as provided in Article 8 above. In addition, the Association as attorney-in-fact shall have the absolute right and power to sell the Unit or Fractional Ownership Interest of any Owner refusing or failing to pay such special Assessment within the time provided, and if not so paid, the Association shall cause to be recorded a notice that the Unit or Fractional Ownership Interest of the delinquent Owner shall be sold by the Association as attorney-in-fact pursuant to the provisions of this Section. The delinquent Owner shall be required to pay to the Association the costs and expenses for filing the notice, interest at the Maximum Rate on the amount of the special Assessment and all reasonable attorneys' fees. The proceeds derived from the sale of such Unit or Fractional Ownership Interest shall be used and disbursed by the Association as attorney-in-fact in the following order:

16.6.1  For payment of real property ad valorem taxes, special assessment liens duly imposed by a governmental subdivision and customary expenses of sale;

16.6.2  For payment of the balance of the lien of any First Mortgage affecting the Unit or Fractional Ownership Interest subject to any priority lien granted to the Association by law;

16.6.3  For payment of unpaid Master Association Assessments, interest, costs, late charges, expenses and attorneys' (and legal assistants') fees;

16.6.4  For payment of unpaid Association Assessments, interest, costs, late charges, expenses and attorneys' (and legal assistants') fees;

16.6.5  For payment of junior Mortgages affecting the Unit or Fractional Ownership Interest in the order of and to the extent of their priority; and

16.6.6  For payment of the balance remaining, if any, to the Owner of the Unit or Fractional Ownership Interest.

Section 16.7  Repairs.

All repairs and reconstruction contemplated by this Article 16 shall be performed substantially in accordance with this Declaration, the Map and the original plans and specifications for the Project, unless other action is approved by the Association in accordance with the requirements of this Declaration and the other Association Documents.

Section 16.8  Notice of Damage or Destruction.

In the event that any portion of the Project encompassing more than one Individual Air Space Unit is substantially damaged or destroyed by fire or other casualty, then written notice of the damage or destruction shall be given by the Association to each Owner and First Mortgagee of the affected Units within a reasonable time following the event of casualty damage.



450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
65 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

## ARTICLE 17.
## OBSOLESCENCE

Section 17.1    Adoption of Plan; Rights of Owners.

The Owners representing sixty-seven percent (67%) or more of the total number of votes entitled to be cast on Association matters, including a majority of the total votes allocated to the Residential Owners and a majority of the total votes allocated to the Commercial Owners, may agree that the Project is obsolete and adopt a written plan for the renewal and reconstruction thereof. Written notice of the adoption of such a plan shall be given to all Owners and a copy of such plan shall be recorded in the Office of the Clerk and Recorder of Pitkin County, Colorado, and the expense of renewal and reconstruction shall be payable by all of the Owners as a Common Expense

Section 17.2    Sale of Obsolete Units.

The Owners representing sixty-seven percent (67%) or more of the total number of votes entitled to be cast on Association matters, including a majority of the total votes allocated to the Residential Owners and a majority of the total votes allocated to the Commercial Owners, may agree that the Units are obsolete and that the Project should be sold. In such instance, the Association shall immediately record in the Office of the Clerk and Recorder of Pitkin County, Colorado, a notice setting forth such fact or facts, and upon the recording of such notice by the Association, the Project shall be sold by the Association, as attorney-in-fact for all of the Owners, free and clear of the provisions contained in this Declaration, the Condominium Map and the articles of incorporation and bylaws of the Association. Unless otherwise agreed in writing by all the Owners, the sale proceeds (and any insurance proceeds under Article 16 above) shall be apportioned among the Owners in proportion to each Owner's Allocated Interest in the Common Elements, and such apportioned proceeds shall be paid into separate accounts, each such account representing one Unit or Fractional Ownership Interest, as the case may be. Each such account shall be in the name of the Association, and shall be further identified by the Unit designation and the name of the Owner and designated as an agency account. From each separate account the Association, as attorney-in-fact, shall use and disburse the total amount of such accounts, without contribution from one account to another, for the same purposes and in the same order as is provided in Sections 16.6.1 through 16.6.5 above.

## ARTICLE 18.
## CONDEMNATION

Section 18.1    Consequences of Condemnation.

If, at any time or times during the continuance of the Project pursuant to this Declaration, all or any part of the Project shall be taken or condemned by any public authority or sold or otherwise disposed of in lieu or in avoidance of condemnation, then all compensation, damages or other proceeds of condemnation, the sum of which is referred to as the "condemnation award" below, shall be payable to the Association, and the provisions of this Article 18 shall apply.

Section 18.2    Complete Taking.

In the event that the entire Project is taken or condemned or sold or otherwise disposed of in lieu or in avoidance of condemnation, the condominium ownership pursuant to this Declaration shall terminate, subject to the provisions of Section 18.7 below. The condemnation award shall be paid to the Association for the use and benefit of the Owners and the Mortgagees as their interests may appear. Such award shall be apportioned among the Owners and the Mortgagees on the basis of the Allocated Interest

58


454454  01/11/2001  03:02P  CONDO DE DAVIS SILVI
66 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

in the Common Elements appurtenant to the Unit or Fractional Ownership Interest in which such Owners and Mortgagees have an interest; provided, however, that if a standard different from the value of the Project as a whole is employed to measure the condemnation award in the negotiation, judicial decree or otherwise, then in determining such apportionment the same standard shall be employed. The Association shall, as soon as practical, determine the share of the condemnation award to which each Owner and Mortgagee is entitled, and such shares shall be paid into separate accounts and disbursed as soon as practical for the same purposes and in the same order as is provided in Sections 16.6.1 through 16.6.5 above.

Section 18.3    Partial Taking.

In the event that less than the entire Project is taken or condemned or sold or otherwise disposed of in lieu or in avoidance of condemnation, the condominium ownership under this Declaration shall not terminate. Each Owner of a Unit or Fractional Ownership Interest so taken or condemned (and Mortgagee holding an interest in such Owner's Unit or Fractional Ownership Interest) shall be entitled to a share of the condemnation award to be determined under the following provisions. The condemnation award shall be paid to the Association for the use and benefit of the Owners and the Mortgagees as their interests may appear. As soon as practical, the Association shall reasonably and in good faith allocate the condemnation award between compensation, damages or other proceeds, and shall apportion the amounts so allocated among the Owners, unless otherwise required under the Act, as follows:

18.3.1  The total amount allocated to a taking of or injury to the Common Elements shall be apportioned among Owners and their Mortgagees on the basis of each Owner's undivided interest in the General Common Elements, Limited Common Elements-Residential, Limited Common Elements-Tourist Accommodation, Limited Common Elements-Deed Restricted Residential and/or Limited Common Elements-Commercial;

18.3.2  The total amount allocated to severance damages shall be apportioned to the Owners and Mortgagees of those Units (including Owners and Mortgagees of Fractional Ownership Interests therein) which were not taken or condemned;

18.3.3  The respective amounts allocated to the taking of or injury to a particular Unit or to improvements an Owner has made within the Owner's own Unit shall be apportioned to the Owner and Mortgagees of that particular Unit involved (or the Owner and Mortgagees of Fractional Ownership Interests therein); and

18.3.4  The total amount allocated to consequential damages and any other takings or injuries shall be apportioned as the Association determines to be equitable under the circumstances.

If an allocation of the condemnation award is already established in negotiation, judicial decree or otherwise, then in allocating the condemnation award, the Association shall employ such allocation. Distribution of apportioned proceeds shall be made by checks payable jointly to the respective Owners and their respective Mortgagees.

Section 18.4    Reorganization.

In the event a partial taking results in the taking of an Individual Air Space Unit, the Owners thereof (including Owners of any Fractional Ownership Interests therein) shall automatically cease to be members of the Association, and their ownership interests in the Common Elements shall terminate and vest in the Owners of the remaining Units (including Owners of any Fractional Ownership Interests therein). Thereafter, subject to the provisions of Section 18.7 below, the Association shall reallocate the



ownership, voting rights and Assessment ratios determined in accordance with this Declaration according to the same principles employed in this Declaration at its inception and shall submit such reallocation to the Owners of the remaining Individual Air Space Units (including Owners of any Fractional Ownership Interests therein) for the amendment of this Declaration. Such reallocation shall be approved unless the Owners of 67% of the Allocated Interests including more than a majority of the Allocated Interests held by both the Residential Owners and the Commercial Owners, vote to disapprove such reallocation.

Section 18.5    Repair and Reconstruction.

Any repair and reconstruction necessitated by condemnation shall be governed by the procedures contained in Article 16 above.

Section 18.6    Notice of Condemnation.

In the event that any portion of the Project shall be made the subject matter of any condemnation or eminent domain proceeding or is otherwise sought to be acquired by a condemning authority, then timely written notice of such condemnation shall be given by the Association to each Owner and First Mortgagee.

Section 18.7    Limitations on Actions of Association.

Except as provided by statute, in case of condemnation, unless Owners representing sixty-seven percent (67%) or more of the total number of votes entitled to be cast on Association matters, including more than a majority of the total votes allocated to the Residential Owners and a majority of the total votes allocated to the Commercial Owners, reject such actions, the Association may not take any of the actions specified in Sections 18.1 through 18.6 above.

## ARTICLE 19.
## OTHER ASSOCIATION MATTERS

Section 19.1    Master Association Matters.

Each Owner, by accepting a deed to a Unit, recognizes that (a) Aspen Highlands Condominiums is subject to the Master Association Documents, (b) by virtue of his ownership of a Unit or Fractional Ownership Interest (pursuant to Article 23), he has become a member of the Master Association, (c) such Owner is subject to any rules and regulations of the Master Association, and (d) pursuant to the Master Association Documents, an Owner is a member of a specified category of the Master Association and is entitled to all of the benefits and subject to all of the burdens of such membership. Each Owner, by accepting a deed to a Unit or Fractional Ownership Interest, acknowledges that he has received a copy of the Master Declaration and the articles of incorporation, bylaws and rules and regulations of the Master Association. Each Owner agrees to perform all of his obligations as a member of the Master Association as they may from time to time exist, including, but not limited to, the obligation to pay annual, special, and default assessments as required under the Master Association Documents.

Section 19.2    Enforcement of Master Association Documents.

19.2.1  The Association shall have the power, subject to the primary power of the Executive Board of the Master Association, to enforce the covenants and restrictions contained in the Master Association Documents, but only as said covenants and restrictions relate to the Project, and to collect regular, special and default assessments on behalf of the Master Association.

60


490454 01/11/2001 03:02P CONDO DE DAVIS SILVI
68 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

19.2.2  This Declaration is intended to supplement the Master Association Documents as they apply to the Property. In addition to all of the obligations which are conferred or imposed upon the Association pursuant to this Declaration and the bylaws or articles of incorporation of the Association, the Association shall be subject to all of the obligations imposed upon it pursuant to the Master Association Documents. The Association and all committees thereof shall also be subject to all superior rights and powers that have been conferred upon the Master Association pursuant to the Master Association Documents. The Association shall take no action in derogation of the rights of, or contrary to the interests of, the Master Association.

Section 19.3    Aspen Highlands Village Residential Amenities Association.

The Owners acknowledge that Declarant may, but is not obligated to, subject the Tourist Accommodation Units, including any Fractional Ownership Interests therein, to the Amenities Association, and that in such event the Owners of such Units or Fractional Ownership Interests shall have all of the rights and obligations of members of the Amenities Association as provided in the governing documents thereof.

Section 19.4    Aspen Highlands Village Parking and Loading Dock Facility Association.

The Owners acknowledge that the Association shall be a member of the Parking Association and that the Owners shall have rights in the Parking Association as described in Section 5.3 of this Declaration.

Section 19.5    Architectural Control.

19.5.1  No addition, change or alteration to the General Common Elements, and no exterior or structural addition, change or alteration to any Unit or Limited Common Element (including the construction of any additional skylight, window, awning or door or the installation or attachment of any equipment or fixture to the exterior of any of the Buildings) shall be made until the plans and specifications showing the nature, kind, shape, height, color, materials and location of the same shall have been submitted to and approved in writing as to external design, color and location in relation to surrounding structures and topography by the Executive Board, including a majority of each Class of Directors.

19.5.2  Notwithstanding the foregoing, exterior storefront walls and surfaces adjacent to Commercial Units which are Limited Common Elements-Commercial (but only to the extent such walls or surfaces are not structural in nature) may be changed or altered solely with the approval of the Owners of the Units to which such Limited Common Elements are appurtenant and the approval of a majority of the Commercial Directors only.

19.5.3  Interior, non-structural changes or alteration of Units that are not visible or discernable from the exterior of a Unit may be undertaken solely by the Owner thereof with the exception of Owners of Fractional Ownership Interests, it being acknowledged that interior, non-structural changes to Tourist Accommodation Units may be undertaken by the Tourist Accommodation Directors pursuant to Section 23.8 below.

19.5.4  Alteration of interior, non-structural Limited Common Elements appurtenant to a Unit or Class or Category of Units shall require approval of a majority of that Class of Directors only.

61


450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
69 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

19.5.5 The alterations and changes described in this Section shall also be in compliance with and have received all approvals required by the Master Declaration and any applicable zoning and other laws, rules and regulations, including the rules and regulations promulgated by the Association.

Section 19.6    General Reservation.

Subject to any applicable restrictions under the Act, Declarant reserves the right to dedicate any access roads and streets serving the Property for and to public use and to allow such street or road to be used by owners of adjacent land.

Section 19.7    No Use of Trademark.

The terms "Aspen Highlands Village" and "Aspen Highlands" are service marks of HHLP. Each Owner, by accepting a deed to a Unit, covenants and agrees that such Owner shall not use the marks "Aspen Highlands Village" or "Aspen Highlands" or designs or logos related to such marks without the prior written permission of HHLP.

Section 19.8    Limit on Timesharing.

Each Owner acknowledges that Declarant intends to create Fractional Ownership Interests with respect to Tourist Accommodation Units within Aspen Highlands Condominiums and Aspen Highlands Village. Other than the right of Declarant'' or a Successor Declarant and their respective officers, agents, employees, and assigns to create Fractional Ownership Interests in accordance with Article 23 of this Declaration (specifically including, without limitation, the Plan of Fractional Ownership) no Unit shall be used for the operation of a timesharing, fraction-sharing, interval ownership, private residence club, membership program, vacation club, exchange network or system or similar program whereby the right to exclusive use of the Unit is alternated or scheduled among participants in the program on a fixed or floating time schedule over a period of years whether by written, recorded agreement or otherwise.

Section 19.9    Acknowledgments.

Each Owner is hereby advised of the following matters affecting the Project and Aspen Highlands Village and the Owners' use and enjoyment thereof:

19.9.1 Aspen Highlands Condominiums is benefited by the fact that it is located near or adjacent to the Aspen Highlands Ski Area (the "Ski Area"). The Ski Area represents a unique and desirable amenity that includes many year-round activities; as such, the Ski Area may generate an unpredictable amount of visible, audible and odorous impacts and disturbances from activities relating to the construction, operation, use and maintenance thereof. The activities associated with the Ski Area include, without limitation: (i) vehicular and non-vehicular traffic, including, without limitation, (a) buses, vans, snowcats, snowmobiles and other vehicles which transport residents and guests of Aspen Highlands Village over, around and through the Ski Area and Aspen Highlands Village, and (b) construction vehicles and equipment; (ii) activities relating to the construction, operation and maintenance of ski trails, skiways and skier bridges and tunnels relating to the Ski Area, including, without limitation, (a) construction, operation and maintenance of Ski Area access roads, snow-making equipment and chair lifts, gondolas and other skier transportation systems, and (b) operation of snow-grooming vehicles and equipment and safety and supervision vehicles; and (iii) activities relating to the use of the Ski Area, including, without limitation, skiing, snow boarding, hiking, horseback riding, bicycling and other recreational activities.

19.9.2  In addition to the general provisions of subsection 19.9.1 above, certain Units within the Buildings, as well as certain Units and other areas in other buildings in Aspen Highlands Village, may be used in connection with the operation of the Ski Area, including, without limitation, the use of such Units and other areas for purposes of snowcat storage, maintenance and repair and ski patrol purposes. An unpredictable amount of visible, audible and odorous impacts and disturbances may occur from activities relating to the use of such Units or other areas in connection with operation of the Ski Area. Owners acknowledge that substantial operations relating to the Ski Area occur at night, and the impacts and disturbances referenced in this subsection and in subsection 19.9.1 above may occur at any time.

19.9.3  Roads within Aspen Highlands Village are or may be subject to restricted or gated access limitations, and are or may be subject to rules and regulations of the District, which owns and is responsible for maintaining the roads.

19.9.4  Substantial construction-related activities relating to the development of the Project or other development within or near Aspen Highlands Village may cause considerable noise, dust and other inconveniences to the Owners.

19.9.5  Properties located within Aspen Highlands Village may be developed pursuant to the land uses and restrictions set forth in the PUD Plan with no representation being made herein concerning the planned uses of such other properties. The zoning for Aspen Highlands Village is established and governed by the PUD Plan. Any amendment of the PUD Plan requires approval by the City of Aspen. Each Owner acknowledges and agrees that such Owner has not relied upon any statements or representation regarding Aspen Highlands Village or any other properties except for the statements and representations expressly set forth in this Declaration and the PUD Plan. Each Owner further acknowledges and agrees that such Owner will not take any action to impair or delay any development of real property governed by the PUD Plan so long as such development complies with the PUD Plan.

19.9.6  No interest in or right to use any amenity located near the Project, such as swimming pools, spas, golf facilities, ski facilities or the like, shall be conveyed to any Owner pursuant to this Declaration, except that Tourist Accommodation Owners shall have rights in the Amenities, as provided in this Declaration. The owners of any facilities that are not part of the Project shall have the right, in their sole discretion, to remove, relocate, discontinue operation of, restrict access to, charge fees for the use of, sell interests in or otherwise deal with such assets in their sole discretion without regard to any prior use of or benefit to any Owners.

19.9.7  Declarant is not the operator of the Ski Area, and accordingly Declarant cannot make any representations relating thereto. Neither Declarant nor any of its employees or agents have made any representations regarding the opening or closing dates of the Ski Area in any given year. The operator of the Ski Area may decide, in its sole discretion, whether and when any or all of the chairlifts (including those that serve Aspen Highlands Village) within the Ski Area should be operated.

19.9.8  Ownership of real property in mountain areas involves certain inherent inconveniences. These include, but are not limited to, (a) dripping water onto decks and porches from snow melt, (b) snow and ice build-up on decks, roofs, gutters and porches during winter months, (c) the need to open windows to cool a Unit during certain summer periods, in that due to the temperate summer climate air conditioning may not be provided in all parts of the Buildings, and (d) other inconveniences arising from the variable weather conditions in the Rocky Mountains.

63



Case No. 1:16-cv-01301-PAB-GPG   Document 250-8   filed 05/15/18   USDC Colorado   pg 72
of 147
CASE 0:12-cv-03093-DSD-JJK   Document 49-7   Filed 05/10/13   Page 73 of 74

19.9.9  Use of wood burning fireplaces, stoves and other devices is restricted within Aspen Highlands Village by governmental regulation.

19.9.10      Each Owner acknowledges that Declarant intends to create Fractional Ownership Interests with respect to certain Units within Aspen Highlands Condominiums and Aspen Highlands Village. In order to comply with Section 26.590.010.C.19.e. of the Municipal Code of the City of Aspen, Colorado, as amended, and other applicable governmental regulations regarding the creation of such Fractional Ownership Interests within Aspen Highlands Condominiums, attached to this Declaration as Exhibit E is a copy of the City Disclosure Statement regarding creation of said Fractional Ownership Interests. Each Owner specifically acknowledges and agrees that the provisions of such City Disclosure Statement are provided for informational purposes only, are not incorporated into this Declaration and are specifically excepted herefrom. Any change to, amendment of, or alteration to the City Disclosure Statement shall not require any action by the Association, the Executive Board, or the Owners pursuant to any provision of this Declaration. As such, the City Disclosure Statement attached hereto may not in the future be the most current Disclosure Statement, and any future Owner is advised to consult the applicable governmental authority to obtain a current Disclosure Statement. The Association, acting through the Tourist Accommodation Directors, shall have the continuing responsibility pursuant to Section 26.590.010.C.19.c. of the Municipal Code of the City of Aspen, Colorado, as amended, to update and file the City Disclosure Statements and any amendments to the Association Documents with the City of Aspen and, subject to applicable approvals of the City of Aspen, to file the same in the Office of the Clerk and Recorder of Pitkin County, Colorado, as soon as practicable after City of Aspen approval has been granted.

19.9.11      .   The Deed Restricted Residential Units are subject to certain limits on alienability and use as an affordable housing sale unit, rental unit or dormitory unit pursuant to the PUD Plan and applicable law, and as contained in certain document(s) to be recorded in the Office of the Clerk and Recorder of Pitkin County, Colorado. The Deed Restricted Residential Units may be restricted in one or more manners, including, without limitation, the following:  (a) the sales prices of such Deed Restricted Residential Units, whether applicable to the initial sale from Declarant or any subsequent sale, may be restricted to an amount which is less than their fair market value, (b) the amounts of rent chargeable for the leasing of the Deed Restricted Residential Units may be restricted to amounts that may be less than their fair rental value, (c) purchasers or tenants of Deed Restricted Residential Units may be required to meet certain residency and/or criteria regarding income and/or other assets, and (d) the Deed Restricted Residential Units may be restricted in occupancy as primary residences by Owners or their tenants who satisfy certain requirements. Owners are advised to review the PUD Plan and applicable law for specific and detailed information regarding any such limitations imposed upon Deed Restricted Residential Units.

## ARTICLE 20.
## DECLARANT'S RIGHTS REGARDING TRANSFER

Any right or any interest reserved or contained in this Declaration for the benefit of Declarant may be transferred or assigned by Declarant, either separately or with one or more other such rights or interests, to any person, corporation, partnership, association or other entity, by written instrument executed by both Declarant and the transferee or assignee and recorded in the Office of the Clerk and Recorder of Pitkin County, Colorado. Upon such recording, Declarant's rights and obligations under this Declaration shall cease and terminate to the extent provided in such instrument.

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
72 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

## ARTICLE 21.
### PHASING, EXPANSION AND WITHDRAWAL

Section 21.1    Phasing.

The Project may be developed in phases pursuant to the Act. In addition, Declarant reserves the right for itself and any Successor Declarant to develop additional phases and in such event to subject all or any part of the Expansion Property to the provisions of this Declaration as may be necessary or appropriate for such purpose.

Subsequent phases may consist of additional Units, parking, common areas, recreational facilities, or some combination thereof. Pursuant to this Article 21 and the Act, Declarant reserves the right to vary its phasing plans and there shall be no time limit during which Declarant must complete its phasing plan. Declarant reserves the right to submit additional phases, if any, to condominium use in any sequence. There are no assurances that any subsequent phase of the Project will be added.

Additional phases may be created by Declarant by the filing for record by Declarant in the Office of the Clerk and Recorder of Pitkin County, Colorado, of one or more Supplemental Declarations and Supplemental Maps. The documents for a particular phase will be recorded prior to the closing of the purchase of any Unit or Fractional Ownership Interest in that phase. Moreover, in accordance with the Act, Declarant reserves all rights, in its sole discretion, to vary the phasing plan of the Project with respect to phase boundaries, plot plans, floor plans, unit types, unit mixes, number of units, number of unit weeks, and recreational areas and facilities with respect to each subsequent phase.

Section 21.2    Reservation of Expansion and Withdrawal Rights.

21.2.1  Declarant reserves the right for itself and any Successor Declarant to subject all or any part of the Expansion Property (such Expansion Property and the Building to be created thereon being sometimes referred to from time to time as "Building 2") to the provisions of this Declaration and thereby expand the Property to add additional Units, subject to the maximum limitations set forth in Section 3.1, and to expand the Common Elements.

21.2.2  Subject to those restrictions set forth in Section 38-33.3-222 of the Act, Declarant reserves the right for itself and any Successor Declarant at any time and from time to time to subject unspecified real property to the Project and the provisions of this Declaration.

21.2.3  Declarant reserves the right for itself and any Successor Declarant at any time and from time to time to withdraw from the Project and from the provisions of this Declaration any real property subjected to this Declaration by a duly recorded Supplemental Declaration and Supplemental Map prior to the time of a sale of a Unit or Fractional Ownership Interest comprising a portion of the real property described in said Supplemental Declaration and Supplemental Map.

Section 21.3    Supplemental Declarations and Supplemental Maps.

Expansion of the Property and the Project may be accomplished by the filing for record by Declarant in the Office of the Clerk and Recorder of Pitkin County, Colorado, of one or more Supplemental Declarations and of a Supplemental Map(s) depicting such Expansion Property recorded concurrently with the applicable Supplemental Declaration. The Supplemental Declaration shall set forth the Units and other real property, if any, to be included in the expansion, together with any covenants, conditions, restrictions and easements particular to such property. The expansion may be accomplished in stages by successive supplements or in one supplemental expansion. Declarant may exercise such rights

65



for expansion on all or any portion of the Expansion Property in whatever order of development Declarant in its sole discretion determines. Declarant shall not be obligated to expand the Project beyond the number of Units initially submitted to this Declaration. Without limiting the generality of the foregoing, it shall be permissible for Declarant to submit individual condominium units created upon all or any portion of the Expansion Property to this Declaration without submitting all such condominium units hereto.

Section 21.4    Expansion of Definitions.

In the event of such expansion, the definitions used in this Declaration shall be expanded automatically to encompass and refer to the Property subject to this Declaration as so expanded. For example, "Unit" shall mean the Units comprising part of the Property plus any additional Units added by a Supplemental Declaration or Declarations and Supplemental Map or Maps, and reference to this Declaration shall mean this Declaration as supplemented. All conveyances of Units and Fractional Ownership Interests shall be effective to transfer rights in the Property as expanded.

Section 21.5    Declaration Operative on New Units.

21.5.1   The new Units and any Fractional Ownership Interests therein shall be subject to all of the terms and conditions of this Declaration and of any Supplemental Declaration, upon placing the Supplemental Declaration(s) describing the Expansion Property and Supplemental Map(s) of public record in the Office of the Clerk and Recorder of Pitkin County, Colorado.

21.5.2   It is contemplated that additional Units and Fractional Ownership Interests therein on the Property will be committed to this Declaration, but Declarant and any Successor Declarant shall have no affirmative obligation to construct any additional Units. In the event that a portion of the Expansion Property is submitted to the provisions of this Declaration, Declarant shall retain the right to, but shall not be obligated to, submit any additional portion of the Expansion Property to the provisions of this Declaration. The rights of Declarant and any Successor Declarant, as described herein, shall apply to all Units that are added to this Declaration in accordance with these provisions relating to enlargement thereof.

21.5.3   No rights of any character of any owner in units in the Expansion Property shall attach until a Supplemental Declaration and Supplemental Map are filed of record annexing the units constructed in such area to the Project. Upon the recording of such Supplemental Declaration and Supplemental Map, the Units located in the area shall be deemed to be governed in all respects by the provisions of this Declaration.

Section 21.6    Effect of Expansion.

21.6.1   Upon the construction of additional Units and their inclusion under this Declaration and the filing of the Supplemental Declaration(s) and Supplemental Map(s) thereof, the apportionment of Assessments for each Unit and Fractional Ownership Interest shall automatically be adjusted to reflect the then current respective undivided interest in the Common Elements appurtenant to each Unit. Such adjustment shall be reflected and set forth in the Supplemental Declaration.

21.6.2   Notwithstanding any inclusion of additional Units under this Declaration, each Owner (regardless of whether such Owner is the owner of a Unit or Fractional Ownership Interest therein shown on the original Map or is the owner of a Unit or Fractional Ownership Interest therein constructed in the Expansion Property) shall remain fully liable with respect to his obligation for the payment of the Common Expenses of the Association, including the expenses for such new Common Elements, costs and



450454  01/11/2001  03:02P  CONDO DE ORVIS  SILVI
74 of 147  R 735.00  D 0.00  N 0.00  PITKIN COUNTY CO

fees, if any. The recording of a Supplemental Declaration or Supplemental Map shall not alter the amount of the Common Expenses assessed to a Unit or Fractional Ownership Interest therein prior to such recording.

Section 21.7    Termination of Expansion and Development Rights.

The rights reserved to the Declarant for itself, its successors and assigns for the expansion and development of the Expansion Property ("Expansion and Development Rights") shall expire thirty-five (35) years from the date of recording this Declaration, unless the Expansion and Development Rights are (i) extended as allowed by law or (ii) reinstated or extended by the Association, subject to whatever terms, conditions, and limitations the Executive Board the Association may impose on the subsequent exercise of the Expansion and Development Rights by Declarant.

## ARTICLE 22.
## MISCELLANEOUS

Section 22.1    Restriction on Declarant Powers.

Notwithstanding anything to the contrary herein, no rights or powers reserved to Declarant hereunder shall exceed the time limitations or permissible extent of such rights or powers as restricted under the Act. Any provision in this Declaration in conflict with the requirements of the Act shall not be deemed to invalidate such provision as a whole but shall be adjusted as is necessary to comply with the Act. No rights of Declarant under the Association Documents may be abridged without the consent of Declarant.

Section 22.2    Term.

The covenants and restrictions of this Declaration shall run with and bind the land in perpetuity, subject to the termination provisions of the Act.

Section 22.3    Amendment.

The provisions of this Declaration may be amended or terminated, in whole or in part, from time to time, upon the written consent of Owners representing a majority of the total number of votes entitled to be cast on Association matters, including at least a majority of the total votes allocated to the Residential Owners and a majority of the total votes allocated to the Commercial Owners or by the Owners representing a majority of the total number of votes entitled to be cast on Association matters, including at least a majority of the total votes allocated to the Residential Owners and a majority of the total votes allocated to the Commercial Owners at a meeting of the Owners called for that purpose; provided, however, matters not requiring Owner approval as described in CRS 38-33.3-217(1) may be handled by the Executive Board, including the approval of a majority of the Residential Directors and a majority of the Commercial Directors (except for those matters further delegated in this Declaration solely to a Class of Directors in which case such amendment shall be effective only upon approval of such Class of Directors and upon approval of the Executive Board); and provided further, that any provision of this Declaration requiring a vote of more than a majority of the total voting interest in the Association and/or of each Class or Category of membership to be effective may only be amended by a vote of the applicable aggregate voting interest stated in such provision. Notwithstanding the above, the provisions of this Declaration which affect only the Plan of Fractional Ownership may be amended or terminated, in whole or part, from time to time, upon the written consent of the Tourist Accommodation Owners representing a majority of the total number of votes entitled to be cast on Association matters or by the Tourist Accommodation Owners representing a majority of the total votes at a meeting called for

67



450454 01/11/2001 03:02P CONDO DE DAVIS $ILV1
75 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CC

that purpose. In addition, (a) a majority of the voting Directors of the Executive Board including the approval of a majority of the Residential Directors and a majority of the Commercial Directors may make, without the approval of the Owners, changes to the Map or any other Association Documents to the extent necessary to correct a factual error, and (b) any proposed amendment to this Declaration which affects any right of Declarant shall require the prior written approval of Declarant, in addition to the approval requirements otherwise set forth herein.

Section 22.4   Unilateral Amendment Rights Reserved by Declarant.

Notwithstanding any provision in this Declaration to the contrary, Declarant, acting alone, reserves to itself the right and power to modify and amend this Declaration and the Map to the fullest extent permitted under the Act including, without limitation, to correct clerical, typographical or technical errors, or to comply with the requirements, standards, or guidelines of recognized secondary mortgage markets, the Department of Housing and Urban Development, the Federal Housing Administration, the Veterans Administration, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, or the Federal National Mortgage Association, or any other governmental authority having jurisdiction over the Project. Declarant reserves the right to amend this Declaration to delete: (i) the phrase "or any other governmental authority having jurisdiction over the Project" in the prior sentence, and (ii) Article 23 and all references to the Plan of Fractional Ownership prior to the conveyance of a Fractional Ownership Interest by Declarant.

Section 22.5   Recording of Amendments.

Any amendment to this Declaration must be executed by the President of the Association and recorded in the Office of the Clerk and Recorder of Pitkin County, Colorado, and approval of such amendment may be shown by attaching a certificate of the Secretary of the Association to the recorded instrument certifying the approval of a sufficient number of Owners of the amendment.

Section 22.6   Enforcement.

Enforcement of the covenants, conditions, restrictions, easements, reservations, rights-of-way, liens, charges and other provisions contained in this Declaration, the articles, the bylaws and the rules and regulations of the Association, all as amended, shall be by any proceeding at law or in equity against any person or persons, including the Association, violating or attempting to violate any such provision. The Association and any aggrieved Owner shall have the right to institute, maintain and/or prosecute any such proceedings, and the Association shall further have the right (after notice and an opportunity to be heard) to levy and collect fines for the violation of any provision of the aforesaid documents. Any legal action initiated by the Association shall require the approval of the Executive Board, including the approval of a majority of the Residential Directors and a majority of the Commercial Directors. In any action instituted or maintained under this Section, the prevailing party shall be entitled to recover its costs and reasonable attorneys' fees incurred pursuant thereto, as well as any and all other sums awarded by the Court.

Section 22.7   Severability.

Invalidation of any of the covenants, restrictions or other provisions contained in this Declaration by judgment or court order shall in no way affect or limit any other provisions which shall remain in full force and effect.

450494 01/11/2001 03:02P CONDO DE DAVIS SILVI
76 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CC

Case No. 1:16-cv-01301-PAB-GPG  Document 250-8  filed 05/15/18  USDC Colorado  pg 77
of 147
CASE 0:12-cv-03093-DSD-JJK  Document 49-8  Filed 05/10/13  Page 4 of 74

### Section 22.8    Conflict of Provisions.

In case of any conflict between this Declaration and the Master Association Documents, the Master Association Documents shall control. In case of any conflict between this Declaration and the articles or the bylaws of the Association, this Declaration shall control. In case of any conflict between the articles and the bylaws, the articles shall control.

### Section 22.9    Nonwaiver.

Failure by Declarant, the Association or any Owner or First Mortgagee to enforce any covenant, condition, restriction, easement, reservation, right-of-way or other provision contained in this Declaration shall in no way or event be deemed to be a waiver of the right to do so thereafter.

### Section 22.10   Number and Gender.

Unless the context provides or requires to the contrary, the use of the singular herein shall include the plural, the use of the plural shall include the singular and the use of any gender shall include all genders.

### Section 22.11   Captions.

The captions to the Articles and Sections and the Table of Contents at the beginning of this Declaration are inserted only as a matter of convenience and for reference, and are in no way to be construed to define, limit or otherwise describe the scope of this Declaration or the intent of any provision of this Declaration.

### Section 22.12   Exhibits.

All the Exhibits attached to and described in this Declaration are incorporated in this Declaration by this reference with the exception of Exhibit E, the City Disclosure Statement that is attached solely for the purpose of complying with the requirements of the Municipal Code of the City of Aspen, Colorado.

## ARTICLE 23.
## PLAN OF FRACTIONAL OWNERSHIP

Section 23.1    Right to Submit Tourist Accommodation Units to a Plan of Fractional Ownership.

Declarant reserves the right to submit all or some of the Tourist Accommodation Units in the Project to a Plan of Fractional Ownership as set forth in this Article. The provisions of this Article relate only to those Units submitted to the Plan of Fractional Ownership and shall govern the ownership of Fractional Ownership Interests in Plan Units and the rights, duties and obligations of Plan Members. The right to submit a Tourist Accommodation Unit to the Plan of Fractional Ownership shall extend only to the Declarant who owns such Tourist Accommodation Units and any Successor Declarant who are specifically conveyed this right, and shall specifically not be available to individual purchasers of Tourist Accommodation Units, their successors or assigns except with the prior written consent of Declarant. The provisions of the Declaration shall apply to all Plan Units and Fractional Ownership Interests created hereunder; provided, however, in the event of an inconsistency between this Article and the remaining provisions of the Declaration with respect to the ownership of a Plan Unit or Fractional Ownership Interest and the rights, duties, and obligations of Plan Members, then the provisions of this Article shall control. **NOTWITHSTANDING ANY OTHER PROVISION OF THIS DECLARATION, FROM**

69


450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
77 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CC

Case No. 1:16-cv-01301-PAB-GPG   Document 250-8   filed 05/15/18   USDC Colorado   pg 78
of 147
CASE 0:12-cv-03093-DSD-JJK   Document 49-8   Filed 05/10/13   Page 5 of 74

AND AFTER THE DATE THAT DECLARANT FIRST CONVEYS A FRACTIONAL
OWNERSHIP INTEREST IN A TOURIST ACCOMMODATION UNIT TO AN UNAFFILIATED
THIRD-PARTY PURCHASER THEREOF, NO WHOLE OWNERSHIP INTEREST IN ANY
TOURIST ACCOMMODATION UNIT IN THE SAME BUILDING MAY BE SOLD TO AN
UNAFFILIATED THIRD-PARTY PURCHASER SO LONG AS REQUIRED BY APPLICABLE
GOVERNMENTAL REGULATION.

Section 23.2   Definitions.

Unless the context expressly requires otherwise, words shall have the meanings designated below
with respect to those Tourist Accommodation Units which are submitted to the Plan of Fractional
Ownership.

23.2.1   "Affiliation Agreement" means that certain The Ritz-Carlton Club Membership
Program Affiliation Agreement among the Association, the Program Manager and the Managing Agent
attached hereto as Exhibit F and incorporated herein by reference.

23.2.2   "Allocation" or "Allocated Use Periods" means those periods of time allocated
to each Residence Interest as designated in the deed or other instrument of conveyance, in the Association
Documents or in the Membership Program Documents. Each 1/12 Residence Interest shall carry with it
an Allocation consisting of the rights to the use, occupancy and possession of a Plan Unit for twenty-eight
(28) days in accordance with the Association Documents and Membership Program Documents. Initially,
each Residence Interest shall be identified by a number that identifies the specific Use Periods assigned to
a specific Residence Interest as set forth on the Membership Calendar. An Allocation may also be
identified by a specific week number, a specific number of weeks, a type of week (whether fixed,
floating, holiday or otherwise), by specific seasons or by any other method, formula or description
established in the deed of conveyance, in the Association Documents or in the Membership Program
Documents. Upon inception of the Plan of Fractional Ownership, it is anticipated that Allocations for
1/12 Residence Interests will include twenty-one (21) days of "fixed" usage and occupancy either in a
single season (winter or summer), sometimes referred to as "Preferred Season Memberships" or twenty-
one (21) days of usage in a combination of two seasons (both winter and summer), sometimes referred to
as "Multiple Season Memberships."

A "Preferred Season Membership" will provide usage of twenty-one (21) consecutive days in either
winter or summer together with seven (7) consecutive additional days of usage during other available
periods.

A "Multiple Season Membership" will provide usage of fourteen (14) consecutive days in either winter or
summer together with usage of seven (7) additional days in the other season (i.e. summer or winter) and
together with usage of seven (7) additional days during other available periods.

Allocated Use Periods may be fixed time periods, floating time periods that require the Owner to reserve
use in accordance with procedures adopted by the Association, time periods that are related to holidays or
time periods that rotate periodically on a predetermined calendar or schedule. Use of Allocated Use
Periods may be subject to compliance with reservation procedures adopted by the Tourist
Accommodation Directors. Declarant reserves the right, for as long as it owns Tourist Accommodation
Units or Fractional Ownership Interests therein, to change the method of identification of each Allocation.

23.2.3   "Fractional Ownership Interest," "Residence Interest" or "Membership" means
an undivided, fee ownership interest (expressed as a fraction) as tenant-in-common in a Plan Unit together
with an Allocation allowing Plan Members exclusive right to possession, use and occupancy of a

70



Residence during Use Periods pursuant to the Association Documents and Membership Program Documents. The smallest Fractional Ownership Interest shall be at least an undivided 1/48 interest which carries with it the right to the use, occupancy and possession of a Plan Unit for seven (7) days in accordance with the Association Documents and Membership Program Documents. Fractional Ownership or Residence Interests may, but need not be, identified by one or more letters, numbers, symbols or combinations thereof. Residence Interests may be identified in advance of transfer of Residence Interests or may be identified upon transfer. At a minimum a Fractional Ownership or Residence Interest transferred to and owned by a Plan Member must be identified by the undivided fee ownership interest in a specific Plan Unit.

23.2.4  "Membership Calendar" means the calendar that identifies the use periods assigned to each Membership. The initial Membership Calendar is attached hereto as Exhibit G. The Membership Calendar can be changed from Residence to Residence prior to the conveyance of the first fractional interest from such Unit. Subject to the provisions of the Membership Program described below, the Association, acting through the Tourist Accommodation Directors, shall be responsible for preparing the Membership Calendar at least five (5) years into the future on an ongoing basis.

23.2.5  "Membership Program" or "The Ritz-Carlton Club Membership Program" means the program of benefits and services created and operated by the Program Manager as they may exist form time to time.

23.2.6  "Membership Program Documents" means the Affiliation Agreement, the Reservation Procedures established by the Program Manager and any other documents governing the use and operation of the Membership Program, as may be amended from time to time.

23.2.7  "Plan Assessment" or "Club Dues" means the assessment paid by the Plan Members pursuant to Section 23.9.

23.2.8  "Plan Member" means the Owner vested with legal title to a Fractional Ownership Interest.

23.2.9  "Plan Unit" or "Residence" means a Tourist Accommodation Unit that is submitted to the Plan of Fractional Ownership.

23.2.10 "Plan Unit Furnishings" means all furniture, appliances, moveable equipment, utensils, carpeting, accessories, and other personal property located within a Plan Unit, which are owned by the Association and administered by the Tourist Accommodation Directors for the benefit of the Plan Members.

23.2.11 "Plan Year" means the calendar year or other period of time approximating fifty-two (52) consecutive weeks as established by the Tourist Accommodation Directors.

23.2.12 "Program Manager" means the person or legal entity that manages and operates the Membership Program.

23.2.13 "Reservation Procedures" means the Reservation Procedures established pursuant to Section 23.13.3.

23.2.14 "Use Periods" means those periods of time designated by the Association that Plan Members may reserve for use of Plan Units as more specifically set forth in the Reservation

71



Procedures. The Tourist Accommodation Directors may divide Use Periods into different categories, seasons or classifications including variations of time periods in order to balance demand for use and occupancy of Plan Units during the year.

Section 23.3    Submission of Tourist Accommodation Unit to the Plan of Fractional Ownership.

Declarant may submit a Tourist Accommodation Unit to the Plan of Fractional Ownership either by recording a properly acknowledged notice executed by Declarant describing the Tourist Accommodation Unit to be submitted to the Plan of Fractional Ownership and reciting Declarant's intention to do so or by Declarant's execution, delivery and recordation of a deed conveying a Fractional Ownership Interest in a Tourist Accommodation Unit to a Plan Member. By acceptance of a deed to a Fractional Ownership Interest, each Plan Member waives his right to bring a suit for partition except in accordance with the provisions of this Declaration.

Section 23.4    Conveyance by Purchaser.

Each Fractional Ownership Interest shall constitute an estate in real property separate and distinct from all other Fractional Ownership Interests in the Plan Unit and other Residential Units, which estate may be separately conveyed and encumbered. A purchaser may acquire more than one Fractional Ownership Interest and thereafter convey or encumber each Fractional Ownership Interest so acquired separately. In no event, however, shall a Plan Member convey or encumber less than a Fractional Ownership Interest as defined herein or as defined in a deed conveying a Fractional Ownership Interest, or attempt to subdivide a Fractional Ownership Interest into lesser interests. The specific rights conveyed to each purchaser of a Fractional Ownership Interest, including, without limitation, the fractional interest in the Tourist Accommodation Unit owned by and the minimum usage rights granted to such purchaser, shall be established pursuant to the deed of the Fractional Ownership Interest from Declarant to each purchaser.

Section 23.5    Legal Description of a Fractional Ownership Interest.

A contract for sale of a Fractional Ownership Interest written prior to the date the Declaration is filed in the real estate records may legally describe a Fractional Ownership Interest (or Membership) by reference to the Plan Unit number, the purchaser's percentage interest in the Plan Unit and the purchaser's right to use and occupy the Plan Unit during periods reserved pursuant to the Reservation Procedures, or by completing the following legal description:

Residence Interest No. _____ consisting of an undivided _ _ _ _ interest in Residence No. ___ of Aspen Highlands Condominiums, according to the Declaration of Condominium and the Map for Aspen Highlands Condominiums to be filed for record in Pitkin County, Colorado, and as amended and supplemented from time to time, together with the perpetual use of twenty-eight (28) days per year for each 1/12 interest owned in accordance with the Association Documents and the Membership Program Documents for Aspen Highlands Condominiums.

After the Condominium Declaration and Map are recorded and if the Plan of Fractional Ownership becomes effective as provided in Section 23.1 hereof, every contract for sale, deed, lease, mortgage, trust deed, or other instrument relating to a Fractional Ownership Interest will legally describe the Fractional Ownership Interest as follows:

Residence Interest No. _ _ consisting of an undivided _____ interest in Residence No. _ _ _ of Aspen Highlands Condominiums, according to the Declaration of



450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
80 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY C(

Condominium for Aspen Highlands Condominiums, recorded January_____, 2001, in Book _ , at Page _ , Reception No. _____ as amended and supplemented from time to time and according to the Map for Aspen Highlands Condominiums recorded January_____, 2001, in Plat Book ____ , at Page _ , Reception No. _____ as amended and supplemented from time to time, all in the Office of the Clerk and Recorder of Pitkin County, Colorado, together with the perpetual use of twenty-eight (28) days per year for each 1/12 interest owned in accordance with the Association Documents and the Membership Program Documents for Aspen Highlands Condominiums.

Any legal description substantially in the form provided above or which is otherwise sufficient to identify the Fractional Ownership Interest shall be good and sufficient for all purposes to sell, convey, transfer and encumber or otherwise affect a Fractional Ownership Interest and all Common Elements, Limited Common Elements and easements appurtenant thereto.

Section 23.6   Administration and Management.

The Tourist Accommodation Directors shall perform the administration and management of the Plan of Fractional Ownership. It is contemplated that the Tourist Accommodation Directors will delegate the responsibility for administration and management of the Plan of Fractional Ownership, including the powers and duties described in Section 23.8 below, to a Managing Agent pursuant to a Management Agreement. The Tourist Accommodation Directors shall have all powers necessary or desirable to effectuate any of the purposes provided for herein. A Plan Member, upon becoming the owner of a Fractional Ownership Interest, shall be a member of the Association and shall remain a member for the period of his ownership.

Section 23.7   Membership Program.

The Tourist Accommodation Units committed to the Plan of Fractional Ownership are subject to The Ritz-Carlton Club Membership Program by means of the Affiliation Agreement. The Membership Program is an appurtenance to ownership of a Fractional Ownership Interest in a Tourist Accommodation Unit. As long as the Affiliation Agreement remains in effect in accordance with its terms all Plan Members shall comply with the Reservation Procedures adopted pursuant to the Affiliation Agreement by the Program Manager. The Reservation Procedures shall govern the reservation or confirmation of use of Residences in the Project or in other properties participating in the Membership Program from time to time. The Reservation Procedures shall provide the Tourist Accommodation Owners with a home resort priority reservation right.

Section 23.8   Powers and Duties of the Tourist Accommodation Directors with Respect to Fractional Ownership Interests.

By way of enumeration and without limitation and in addition to the powers and duties of the Tourist Accommodation Directors provided for in the Declaration, the Tourist Accommodation Directors shall also have the following specific powers and duties with respect to Fractional Ownership Interests:

23.8.1   Establish the annual budget for the Plan of Fractional Ownership and levy and collect assessed amounts (i.e. the Plan Assessment) from Plan Members.

23.8.2   Cause each Plan Unit to be maintained in a first class manner and condition. The Tourist Accommodation Directors shall determine the color scheme, decor and furnishing of each Plan Unit as well as the proper time for refurbishment, redecorating and replacement thereof.



Case No. 1:16-cv-01301-PAB-GPG Document 250-8 filed 05/15/18 USDC Colorado pg 82
of 147
CASE 0:12-cv-03093-DSD-JJK Document 49-8 Filed 05/10/13 Page 9 of 74

23.8.3 Coordinate the plans of Plan Members for moving their personal effects into and out of the Plan Units with a view toward scheduling such moves so that there will be a minimum of inconvenience to other Plan Members.

23.8.4 Acquire and hold title to all Plan Unit Furnishings as agent and nominee for the Plan Members. The Tourist Accommodation Directors, on behalf of all Plan Members, shall have the right to deal with Plan Unit Furnishings for all purposes and no Plan Member shall have any right, title or claim thereto.

23.8.5 Bill each Plan Member for the expense of occupancy of a Plan Unit which the Tourist Accommodation Directors determines are the individual expenses (i.e. personal Assessments) of the particular Plan Member, including, but not limited to, long-distance and other extraordinary telephone charges, personal charges, extraordinary repairs or charges for damage to the Plan Unit, its furniture, furnishings, equipment, fixtures, appliances and carpeting caused by a Plan Member or his guest, other charges rendered by the Managing Agent on behalf of the particular Plan Member, and maid service in addition to the standard maid service provided for each Use Period and included within the Plan Assessment provided for in this Article.

23.8.6 Comply with the terms, covenants and conditions of the Affiliation Agreement.

23.8.7 Comply with the Reservation Procedures as adopted by the Program Manager.

23.8.8 Establish, enforce, modify and amend such rules and regulations as the Tourist Accommodation Directors deem necessary or desirable, specifically including but not limited to fines and restrictions on use and occupancy if a Plan Member is not current on Assessments or Plan Assessments or is otherwise in violation of the provisions of this Article.

23.8.9 Enforce the remedies for non-payment of the Plan Assessments set forth in this Article.

23.8.10 Notwithstanding the provisions of the Act, impose and receive any payments, fees, or charges for the use, rental, or operation of the Limited Common Elements-Tourist Accommodation, including those described in Sections 38-33.3-202(1)(b) and (d) of the Act and in Section 5.4 of this Declaration.

23.8.11 Update and file the City Disclosure Statements and any amendments to the Association Documents with City of Aspen and to file the same in the Office of the Clerk and Recorder of Pitkin County, Colorado, as soon as practicable after City of Aspen approval has been granted.

23.8.12 Act as the designated agent of each Plan Member for service of process in the State of Colorado with respect to each Plan Member's interest in the Plan of Fractional Ownership; provided, however, that in the event the Association seeks to serve process on any Plan Member, service of process shall be by personal service on the individual Plan Member or by publication as provided by the Colorado Rules of Civil Procedure.

Section 23.9   Plan Assessment.

In addition to the Assessment established by the Association pursuant to Article 8, the Tourist Accommodation Directors shall also establish a separate Plan Assessment which will be assessed against

74



Case No. 1:16-cv-01301-PAB-GPG   Document 250-8   filed 05/15/18   USDC Colorado   pg 83
of 147
CASE 0:12-cv-03093-DSD-JJK   Document 49-8   Filed 05/10/13   Page 10 of 74

Fractional Ownership Interests to cover both the Assessment for the Plan Units and the additional costs of operating the Fractional Ownership Interests as part of the Plan of Fractional Ownership. The Plan Assessment for each Fractional Ownership Interest may include but is not limited to, the following:

23.9.1 the allocated share of the Assessment attributable to each Fractional Ownership Interest;

23.9.2 maintenance, and regularly scheduled cleaning and maid service and upkeep of the Plan Unit;

23.9.3 repair and replacement of the Plan Unit Furnishings;

23.9.4 any additional premium for property or liability insurance occasioned by the operation of the Plan of Fractional Ownership;

23.9.5 property taxes, if any, assessed against the Tourist Accommodation Units committed to the Plan of Fractional Ownership;

23.9.6 management fees assessed by a Managing Agent to cover the costs of operating the Plan of Fractional Ownership which are in addition to the management fees set by such Managing Agent for management of the Tourist Accommodation Project;

23.9.7 a reserve for refurbishment and/or replacement of Plan Unit Furnishings;

23.9.8 any and all expenses of the affiliation of the Plan of Fractional Ownership, the Plan Units and/or the Plan Members with The Ritz-Carlton Club Membership Program or any other club or other amenity, and any expenses incurred pursuant to any Management Agreement and related to any privileges granted thereunder or in any related document to the Plan Units and/or the Plan Members regarding occupancy of any other properties owned or managed by the Managing Agent; and

23.9.9 any other expenses incurred in the normal operation of the Tourist Accommodation Project attributable to operation of the Plan Units as part of the Plan of Fractional Ownership and not otherwise within the definition of Common Expenses provided for in the Declaration.

The Plan Assessment shall be assessed and prorated among the Plan Members on the basis of the Plan Member's Fractional Ownership Interest in a Plan Unit and the Plan Unit's Allocated Interest. The Plan Member shall pay the Plan Assessment pursuant to an assessment and payment schedule established by the Tourist Accommodation Directors. The Plan Assessment shall be the personal and individual debt of the Plan Member and all sums assessed but unpaid, shall constitute a lien on the Fractional Ownership Interest. The Tourist Accommodation Directors shall have all of the rights in connection with the collection thereof as the Association has in connection with the collection of unpaid Assessments.

Section 23.10   Declarant Subsidy.

For fiscal year 2001, RCDC will pay, in addition to the Assessments or Plan Assessments paid by Developer with respect to the Fractional Ownership Interests or Tourist Accommodation Units owned by it, any difference between the amounts assessed to Owners of Fractional Ownership Interests in Buildings 4 and 8, and those amounts necessary to fund Owner's Association operations in connection with the Tourist Accommodation Units and the Plan of Fractional Ownership for fiscal year 2001. This subsidy shall be limited to fiscal year 2001, unless extended by RCDC, in its sole discretion. In no event shall HHLP be liable for such subsidy.



450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
83 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

Case No. 1:16-cv-01301-PAB-GPG   Document 250-8   filed 05/15/18   USDC Colorado   pg 84
of 147
CASE 0:12-cv-03093-DSD-JJK   Document 49-8   Filed 05/10/13   Page 11 of 74

Section 23.11  Acceptance; Enforcement; Indemnification.

By acceptance of a deed to a Fractional Ownership Interest, a Plan Member agrees to be bound by the terms and conditions of the Declaration, specifically including, but not limited to, the specific provisions relating to the Plan of Fractional Ownership set forth in this Article. In addition to all remedies provided to the Association in the Declaration, the Tourist Accommodation Directors shall also have the following special remedies with respect to any Plan Member who fails to pay the Plan Assessment, fails to vacate a Plan Unit or is otherwise in default of any provision of the Plan of Fractional Ownership:

23.11.1    In the event any Plan Member fails to vacate a Plan Unit after termination of a reserved Use Period or otherwise uses or occupies or prevents another Plan Member from using or occupying a Use Period, that Plan Member shall be in default hereunder and shall be subject to immediate removal, eviction or ejection from the Plan Unit wrongfully occupied; shall be deemed to have waived any notices required by law with respect to any legal proceedings regarding the removal, eviction or ejection; and shall pay to the Plan Member entitled to use the Plan Unit during such wrongful occupancy, as liquidated damages for the wrongful use of the Plan Unit, a sum equal to two hundred percent (200%) of the fair rental value per day for the Plan Unit wrongfully occupied as determined by the Tourist Accommodation Directors in their sole discretion for each day, or portion thereof, including the day of surrender, during which the Plan Member wrongfully occupies a Unit, plus all costs and expenses of enforcement, including attorneys' fees, which amounts may be collected by the Tourist Accommodation Directors in the manner provided herein for the collection of Assessments.

23.11.2    Any Plan Member who suffers or allows a mechanics' lien or other lien to be placed against his Fractional Ownership Interest or the entire Plan Unit shall indemnify, defend and hold each of the other Plan Members harmless from and against all liability or loss arising from the claim or such lien. The Tourist Accommodation Directors may enforce such indemnity by collecting from the Plan Member who suffers or allows such a lien a default Assessment in the amount necessary to discharge the lien and all costs and expenses of enforcement incidental thereto, including attorneys' fees. If such amount is not promptly paid, the Tourist Accommodation Directors may collect the same in the manner provided herein for the collection of default Assessments.

23.11.3    Withhold use or possession of the Plan Member's Fractional Ownership Interest during the Use Period, prohibit the Plan Member from making any reservation pursuant to the Reservation Procedures and, upon notice, cancel any reservation previously made by the Plan Member and rent any Use Period to which a Plan Member is entitled. Written notice shall be given to the Plan Member of the suspension of the Plan Member's rights and privileges. However, no such suspension of the Plan Member's rights and privileges, except a suspension of privileges for the failure of such Plan Member to pay any Assessments, Plan Assessments or personal Assessment, any portion thereof or any other amount(s) due hereunder on or before the due date thereof, or imposition of monetary penalties shall be made except after a meeting of the Tourist Accommodation Directors at which a quorum of the Tourist Accommodation Directors are present, duly called and held for such purpose in the same manner as provided in the Bylaws for the noticing, calling and holding of a meeting of the Tourist Accommodation Directors for purposes of transacting business on behalf of the Tourist Accommodation Owners. Written notice of such meeting, the purpose thereof, including the reasons for the suspension sought or the monetary penalties sought to be imposed, and whether the Plan Member's defense shall be oral or written, shall be given to the Plan Member against whom such activity is to be taken at least fifteen (15) days prior to the holding of such meeting. Such notice shall be given as provided at Section 6.10 of this Declaration.

23.11.4    Except as to a transfer to a Mortgagee by foreclosure or deed in lieu of foreclosure, no transfer of a Fractional Ownership Interest shall be permitted unless and until the

76


450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
84 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY C

proposed transferor is current as to all Assessments due to the Association and is otherwise not in default under any other provision of the Declaration. Any purported transfer of a Fractional Ownership Interest while a Plan Member is delinquent or is in default on any other obligation shall be null and void.

All of the remedies granted by the Association Documents, specifically including the specific remedies provided for in this Article, are cumulative, and the exercise of one right or remedy by the Association or the Tourist Accommodation Directors shall not impair the right of the Association or the Tourist Accommodation Directors to exercise any other remedy. The Tourist Accommodation Directors shall not be limited to the remedies set forth herein and may invoke any other or additional remedies provided for or allowed by the Act, in law or in equity. The Tourist Accommodation Directors may pursue any of the remedies provided for in whatever order is determined by the Tourist Accommodation Directors. The failure by the Tourist Accommodation Directors to insist in any one or more instances upon the strict compliance with any provision of the Association Documents, to exercise any right or option contained therein, to serve any notice or to institute any action or proceeding, shall not be construed as a waiver or relinquishment of any such provision, option or right.

Section 23.12  Right of First Refusal to Purchase Fractional Ownership Interests.

In the event an Owner desires to sell, convey or transfer a Fractional Ownership Interest, and for so long as the RCDC in its capacity as Declarant has Fractional Ownership Interests to sell in the Project, RCDC shall have the right of first refusal to purchase the Fractional Ownership Interest under the same terms and conditions as are offered to or by a bona fide third party, including financing.

Accordingly, each Owner desiring to sell the Owner's Fractional Ownership Interest must notify RCDC in writing not less than fifteen (15) days prior to the proposed closing date and must include a complete, written copy of the proposed sales contract. Within fifteen (15) days after receipt of such notice and a copy of the proposed sales contract, RCDC shall determine whether the RCDC desires to exercise its right of first refusal as set forth herein. If RCDC elects to exercise its right of first refusal, RCDC shall notify the Owner in writing of such election within fifteen (15) days after receipt of Owner's written notice and sales contract, and the purchase by the RCDC shall be closed on the closing date as outlined in the written notice and proposed sales contract.

If RCDC fails to notify the Owner of its intent to exercise its right of first refusal within such fifteen (15) day period the Owner may proceed to close on the Owner's transaction with such bona fide third party. In addition, any permitted sale between an Owner and a bona fide third party shall be deemed to contain a provision requiring that any sums due to the Association as Assessments must be paid in full as a condition of closing of the sale.

In any and all events, the Declarant's right of first refusal as set forth above shall be a requirement of any successor in title to an Owner, the same being a covenant running with the land and the Membership being an appurtenance to each Condominium Parcel.

Section 23.13  Cross Use Easements Pertaining to Fractional Ownership Interests.

All Plan Units are subject to the following cross use easement rights and Reservation Procedures:

23.13.1  Cross Use Easement Rights.'

In order to maximize the availability of space to fulfill Plan Members' desired use, subject to the provisions of Subsection 23.13.3 below relating to reservations, all Plan Units shall be available for reservation, occupancy and use (the "Use Right Easement") by Plan Members of comparable Fractional



490494 01/11/2001 03:02P CONDO DE DAVIS SILVI
85 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY C

Ownership Interests in the Project in accordance with Reservation Procedures adopted by the Tourist Accommodation Directors. Each deed conveying a Fractional Ownership Interest shall be deemed to include a reservation of this Use Right Easement benefiting all Plan Members.

### 23.13.2 Expansion of Use Right Easement.

For as long as Declarant is entitled to submit any Expansion Property to this Declaration as provided in Article 21 above, Declarant shall have the right to submit additional units to the Plan of Fractional Ownership, without submitting such units to this Declaration or expanding the Project, by subjecting such additional units to the Use Right Easement and granting to the owners of such additional units (including owners of any fractional ownership interest therein) reciprocal rights in all Plan Units pursuant to the Use Right Easement. Any additional units subjected to the Use Right Easement shall be deemed to be "Plan Units" for the purposes of the provisions of this Article 23, and shall have the same rights and obligations as the Plan Units created pursuant to this Declaration. The owners of any additional units subjected to the Use Right Easement (including owners of any fractional ownership interests therein) shall be deemed to be "Plan Members" for the purposes of this Article 23, and shall have all of the rights and obligations of Plan Members described in this Article 23. The Plan Members who are Owners of Fractional Ownership Interests in Units which are subject to the entirety of this Declaration hereby acknowledge that additional units may be included in the Plan of Fractional Ownership, and that owners of such additional units (including owners of fractional ownership interests therein) shall have reciprocal rights in all Plan Units pursuant to the terms and conditions of the Use Right Easement. The assessments levied by any homeowners' association to which the additional units are subject shall be allocated and assessed among all Plan Members as provided in this Article 23. All owners of such additional units (including owners of fractional ownership interests therein) shall have the obligation to pay the same Plan Assessment as similar Plan Units.

### 23.13.3 Reservation Procedures.

All Plan Members shall be entitled to make reservations for the Use Period(s), or portions thereof, the Plan Member desires to use pursuant to the Reservation Procedures established from time to time by the Program Manager. The Reservation Procedures shall specify the manner in which reservations are to be requested and confirmed. The right to reserve a Use Period, if unused in any year, is lost and does not accrue for use in subsequent years. The Reservation Procedures shall contain such schedules, conditions, restrictions and limitations as are deemed necessary or desirable by the Program Manager. The Program Manager may from time to time, without the consent of the Plan Members or Mortgagees, amend the Reservation Procedures to include, by way of enumeration and without limitation, one or more of the following features.

(a) A preferential reservation system for holidays, such as New Year's Day, Martin Luther King Jr. Day, Presidents Weekend, Memorial Day, Independence Day, Labor Day, Veterans' Day, Thanksgiving, Christmas or other holiday period which allocates the opportunity to reserve the more popular holidays among the Owners of Fractional Ownership Interests;

(b) A procedure for determining priority of reservation by lot, drawing, rotation or otherwise on an annual or rotating basis;

(c) Restrictions on use and occupancy of a Use Period if a Plan Member is not current on Assessments or is otherwise in violation of the provisions of the Plan of Fractional Ownership;



450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
86 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY C

Case No. 1:16-cv-01301-PAB-GPG   Document 250-8   filed 05/15/18   USDC Colorado   pg 87
of 147
CASE 0:12-cv-03093-DSD-JJK   Document 49-8   Filed 05/10/13   Page 14 of 74

(d)     Penalties, including forfeitures of reservation rights for the calendar year, for untimely cancellations or reservations;

(e)     Short term Reservation Procedures for otherwise unreserved Use Periods, or portions thereof (sometimes referred to as "Space Available" use, as hereinafter defined);

(f)     A schedule of fees to be separately charged to Plan Members who use a portion of a Use Period or who use a Use Period on a Space Available basis to cover the additional expenses of such use, including but not limited to, additional administrative, janitorial and maid service costs; and

(g)     Such other conditions, restrictions and limitations as the Program Manager shall deem necessary or desirable under the circumstances to assure a manageable and fair system.

### 23.13.4  Space Available Use Periods.

Space Available Use Periods shall mean any period of time not otherwise reserved which is used by a Plan Member pursuant to the Reservation Procedures and is in excess of the Use Period(s) the Plan Member is entitled to reserve. The purpose of this period is to allow Plan Members to use and occupy Use Periods, or portions thereof, on a space available basis that might otherwise remain unoccupied.

### 23.13.5  Rental.

The Reservation Procedures may prohibit or limit the right of Plan Members to rent or to allow use by an unaccompanied guest of any Use Period otherwise properly reserved by a Plan Member.

Section 23.14  Easement for Cleaning and Maintenance.

The Association, for itself, successors and assigns, and its and their agents, employees, contractors, subcontractors, and other authorized personnel, shall have the right and is hereby granted, for so long as the Association or its successors and assigns shall be required hereunder to manage and maintain the Plan Units, a non-exclusive easement in gross in, over and through the General Common Elements, the Limited Common Elements-Tourist Accommodation and the Plan Units for the management, operation, repair and maintenance of the Plan Units and the management and operation of the Membership Program; provided, however, that use of such easement shall not (a) unreasonably interfere with or diminish the rights of Plan Members or Declarant to occupy the Plan Units and the Common Elements, and to use the common furniture, furnishings, appliances, or other personal property, (b) interfere with the occupancy of Plan Units and the Common Elements by the Declarant; or (c) interfere with or diminish the rights of Owners to occupy Units owned by such Owners, or to utilize the General Common Elements or the Limited Common Elements appurtenant to such Class or Category of Units. In amplification and not in limitation thereof, the Association and its successors and assigns shall have the right, and upon giving reasonable notice if a Plan Unit is occupied, to enter such Plan Unit for the purpose of cleaning, maid service, painting, maintenance and repair, and at any reasonably necessary time, whether or not in the presence of the Plan Member thereof, to enter upon any Plan Unit for the purpose of (i) making emergency repairs therein, (ii) abating any nuisance or any dangerous, unauthorized, prohibited or unlawful activity being conducted or maintained in such Plan Unit, (iii) protecting property rights and welfare of any Plan Member, or (iv) for any other purpose reasonably related to the performance by the Association of its duties and obligations under the terms of this Declaration. Such right of entry shall be exercised in such manner as to avoid any unreasonable or unnecessary interference with the possession, use and enjoyment of the rightful occupant of such Plan

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
B7 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY C

Unit and shall be preceded by reasonable notice to such occupant, and to Declarant in the event of entry into a Plan Unit, whenever the circumstances permit. There shall be at least one week per Plan Unit per year set aside exclusively for maintenance of the Plan Units.

Section 23.15  Appointment of Directors as Agent for Service of Process.

As required by applicable law, each Plan Member, solely by virtue of its ownership of any interest in a Plan Unit, hereby appoints the Tourist Accommodation Directors or their designee as its agent for service of process (for purposes of satisfying the requirements of personal service in the State of Colorado as provided in Rule 4(e) of the Colorado Rules of Civil Procedure, as amended) and receipt of legal notices in all matters relating to the Plan of Fractional Ownership and such Plan Member's ownership of a Plan Unit.

## ARTICLE 24.  AGREEMENT TO PARTITION PROPERTY

Pursuant to the provisions of a Development Agreement between the Declarants dated September 29, 1999, as amended (the "Development Agreement"), Declarants agreed to jointly develop the Buildings and to hold one or more of them in the ownership interest percentages set forth on Exhibit A, Legal Description of Property, until the Buildings were constructed to the point which allowed them to be mapped and subjected to a mutually agreed upon condominium declaration in accordance with Colorado law. The Declarants hereby acknowledge and agree in accordance with the terms and requirements of the Development Agreement that on and after the recording of this Declaration each party's respective, exclusive, sole and separate ownership of the Units shall be as specified on Exhibit H attached hereto and incorporated herein by reference. The Units specified on Exhibit H correspond to the Unit numbers set forth on the Condominium Map recorded together with this Declaration. By this Declaration, each Declarant hereby releases and relinquishes it right otherwise had at any time prior to the filing of this Declaration in and to the respective Units specified on Exhibit H as owned by the other Declarant.

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
88 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY C

Executed as of the date first written above.

DECLARANT:                        HINES HIGHLANDS LIMITED PARTNERSHIP, a
                                  Delaware limited partnership

                                  By:     ASPEN HIGHLANDS SKIING
                                          CORPORATION, a Delaware corporation, its
                                          general partner

                                  By: _____
                                  Name: Robert E. Daniel, Jr.
                                  Title: Vice President

STATE OF COLORADO          )
                           ) ss.
COUNTY OF PITKIN           )

The foregoing instrument was acknowledged before me this 11 day of January 2001, by _____
Robert E. Daniel, Jr. _____, as Vice President _____ of Aspen Highlands
Skiing Corporation, a Delaware corporation, general partner of Hines Highlands Limited Partnership, a
Delaware limited partnership.

WITNESS my hand and official seal.

                                           My Commission expires
My commission expires: _____ 08/19/2001

[SEAL]                                     _____
                                           Notary Public

NOTARY PUBLIC
HEIDI ERICA GORBITZ
STATE OF COLORADO

DECLARANT:                          THE RITZ-CARLTON DEVELOPMENT
                                    COMPANY, INC.,
                                    a Delaware corporation

                                    By: _____
                                    Name: William F. Minnock III, Vice President
                                    Title: _____


STATE OF __FLORIDA_____ )
                                 ) ss.
COUNTY OF __ORANGE_____ )

The foregoing instrument was acknowledged before me this _17_ day of November,
2000, by ___William F. Minnock III_____, as _____Vice President____
of The Ritz-Carlton Development Company, Inc., a Delaware corporation, on behalf of
the corporation, he/she is personally known to me or has produced as _____
_____ as identification.

WITNESS my hand and official seal.

My commission expires:_____

[SEAL]
                                    _____
                                    Notary Public

                                    NANCY E. CLARK
                                    MY COMMISSION # CC 722987
                                    EXPIRES: 03/08/2002
                                    1-800-3-NOTARY   Fla. Notary Service & Bonding

CONSENT OF LIENHOLDER TO CONDOMINIUM
DECLARATION AND CONDOMINIUM MAP

Hines Highlands Limited Partnership, a Delaware limited partnership ("HHLP"), beneficiary of those certain deeds of trusts as follows:

1.   Deed of Trust dated September 29, 1999 from The Ritz-Carlton Development Company, Inc. recorded September 30, 1999 under Reception No. 436132 in the office of the Clerk and Recorder of the County of Pitkin, State of Colorado ("Lot 8 Deed of Trust");

2.   Deed of Trust dated September 29, 1999 from The Ritz-Carlton Development Company, Inc. recorded September 30, 1999 under Reception No. 436134 in the office of the Clerk and Recorder of the County of Pitkin, State of Colorado ("Lot 4 Deed of Trust);

hereby expressly consents to the recording of the Declaration of Condominium for ASPEN HIGHLANDS CONDOMINIUMS ("Declaration") and the filing and recording of the accompanying Condominium Map of ASPEN HIGHLANDS CONDOMINIUMS ("Map"), and the resulting creation of condominium ownership with respect to the property described in this Declaration and the Map.

**Lot 8 Deed of Trust.** HHLP hereby fully subordinates the lien of its Lot 8 Deed of Trust to the terms, covenants, conditions, easements, restrictions, uses and limitations set forth in this Declaration and the Map, provided no provisions in this Declaration relating to mortgagees shall otherwise be construed to impair the existing rights of the undersigned and further provided that the undersigned shall be considered a First Mortgagee for, and from and after the recordation of the Declaration and the Map the Lot 8 Deed of Trust shall cover and encumber, all Units within Building 8 until such time as a release of any individual Unit is recorded and then only as to such Unit specifically released. Following the date that the undersigned delivers a partial release from the lien of the Lot 8 Deed of Trust for any Fractional Ownership Interest in Units in Building 8, established in accordance with the provisions of Article 23 of the Declaration, the lien of the Building 8 Deed of Trust shall attach and apply to all unreleased Fractional Ownership Interests in Units covered by the Lot 8 Deed of Trust.

**Lot 4 Deed of Trust.** HHLP hereby fully subordinates the lien of its Building 4 Deed of Trust to the terms, covenants, conditions, easements, restrictions, uses and limitations set forth in this Declaration and the Map, provided no provisions in this Declaration relating to mortgagees shall otherwise be construed to impair the existing rights of the undersigned and further provided that the undersigned shall be considered a First Mortgagee for, and from and after the recordation of the Declaration and the Map the Lot 4 Deed of Trust shall cover and encumber, Units TA-4301 and TA-4302 until such time as a release of any individual Unit is recorded and then only as to such Unit specifically released. Following the date that the undersigned delivers a partial release from the lien of the Lot 4 Deed of Trust for any Fractional Ownership Interest in Units in Building 4, established in accordance with the provisions of Article 23 of the Declaration, the lien of the Lot 4 Deed of Trust shall attach and apply to all unreleased Fractional Ownership Interests in Units covered by the Lot 4 Deed of Trust.

In case of any conflict between this Consent and the Consent of Mortgagee within the Map, this Consent shall control.

Executed as of the date first written above.

HINES HIGHLANDS LIMITED PARTNERSHIP, a
Delaware limited partnership

By:    ASPEN HIGHLANDS SKIING
       CORPORATION, a Delaware corporation, its
       general partner

By: _____

Name: Robert E. Daniel, Jr.
Title: Vice President


STATE OF COLORADO     )
                      ) ss.
COUNTY OF PITKIN      )

The foregoing instrument was acknowledged before me this ⎯11⎯ day of January, 2001, by Robert E.
Daniel, Jr., as Vice President of Aspen Highlands Skiing Corporation, a Delaware corporation, general
partner of Hines Highlands Limited Partnership, a Delaware limited partnership.

WITNESS my hand and official seal.

My commission expires:      My Commission expires:
                            08/19/2001

[SEAL]

                            _____
                            Notary Public

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
92 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY C

**EXHIBIT A**
**to Declaration of Condominium for Aspen Highlands Condominiums**

### LEGAL DESCRIPTION OF PROPERTY

Each Declarant submits to this Declaration its respective parcel, which collectively constitute the Property, as follows:

THE RITZ-CARLTON DEVELOPMENT COMPANY, INC.

> Lot 8 and an undivided 10% interest as tenant in common in Lot 4, Supplemental Plat, Aspen Highlands Village P.U.D., Block D, according to the plat thereof recorded September 28, 1999, in Plat Book 51 at page 41, Reception No. 436003,.

And

HINES HIGHLANDS LIMITED PARTNERSHIP

> An undivided 90% interest as tenant in common in Lot 4, Supplemental Plat, Aspen Highlands Village P.U.D., Block D, according to the plat thereof recorded September 28, 1999, in Plat Book 51 at page 41, Reception No. 436003,

County of Pitkin,
State of Colorado.

A-1


450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
93 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY C

## EXHIBIT B
### to Declaration of Condominium for Aspen Highlands Condominiums

### ALLOCATED INTERESTS

**Tourist Accommodation Units.** To determine the Allocated Interest of a given Tourist Accommodation Unit in the Project the following mathematical formula applies:

Total square footage of all Tourist Accommodation Units / total square footage of all Units = Allocated Interests of Tourist Accommodation Units in the Project.

Allocated Interests of Tourist Accommodation Units in the Project = (total number of two-bedroom Tourist Accommodation Units) times X + (total number of three-bedroom Tourist Accommodation Units) times 110% of X.

X represents the Allocated Interest of a two-bedroom Tourist Accommodation Unit.

110% of X represents the Allocated Interest of a three-bedroom Tourist Accommodation Unit.

*All two-bedroom Tourist Accommodation Units will have the same Allocated Interests and all three-bedroom Tourist Accommodation Units will have the same Allocated Interests.*

**Commercial Units.** To determine the Allocated Interest of a given Commercial Unit the following mathematical formula applies:

Square footage of the subject Commercial Unit / total square footage of all Units.

**Deed Restricted Residential Units.** To determine the Allocated Interest of a given Deed Restricted Residential Unit the following mathematical formula applies:

Square footage of the subject Deed Restricted Residential Unit / total square footage of all Units

*Each Commercial Unit and Deed Restricted Residential Unit will have different Allocated Interests based on the above formulas.*

**Class or Category.** To determine the Allocated Interests of individual Units within any Class or Category divide the Allocated Interest of the individual Unit as determined by the foregoing formulas by the total Allocated Interests of all Units within such Class or Category.

*As additional phases are added to the Project, the Allocated Interest of each Unit will be adjusted in accordance with the foregoing formulas. The ratio of Allocated Interests in two bedroom Tourist Accommodation Units to three bedroom Tourist Accommodation Units will remain 1 : 1.10. Square footage calculations shall be measured in a consistent manner for all Units, for example from the interior unfinished surface of the perimeter boundary walls of each Unit.*

B-1


490404 01/11/2001 03:02P CONDO DE DAVIS SILVI
94 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY C

ASPEN HIGHLANDS CONDOMINIUMS—ALLOCATED INTERESTS ("AI")

| B | C | E | F | G | H | I |
|---|---|---|---|---|---|---|
| Unit Number | Unit Type | AI-General (%) | AI-Residential (%) | AI-Tourist Accommodation (%) | AI-Deed Restricted Residential (%) | AI-Commercial (%) |
| TA-8103 | 3 Bedroom | 1.296 | 1.647 | 2.178 | N/A | N/A |
| TA-8104 | 3 Bedroom | 1.296 | 1.647 | 2.178 | N/A | N/A |
| TA-8105 | 3 Bedroom | 1.296 | 1.647 | 2.178 | N/A | N/A |
| TA-8106 | 3 Bedroom | 1.296 | 1.647 | 2.178 | N/A | N/A |
| TA-8201 | 3 Bedroom | 1.296 | 1.647 | 2.178 | N/A | N/A |
| TA-8202 | 3 Bedroom | 1.296 | 1.647 | 2.178 | N/A | N/A |
| TA-8203 | 3 Bedroom | 1.296 | 1.647 | 2.178 | N/A | N/A |
| TA-8204 | 3 Bedroom | 1.296 | 1.647 | 2.178 | N/A | N/A |
| TA-8205 | 3 Bedroom | 1.296 | 1.647 | 2.178 | N/A | N/A |
| TA-8206 | 3 Bedroom | 1.296 | 1.647 | 2.178 | N/A | N/A |
| TA-8207 | 3 Bedroom | 1.296 | 1.647 | 2.178 | N/A | N/A |
| TA-8208 | 3 Bedroom | 1.296 | 1.647 | 2.178 | N/A | N/A |
| TA-8209 | 3 Bedroom | 1.296 | 1.647 | 2.178 | N/A | N/A |
| TA-8210 | 3 Bedroom | 1.296 | 1.647 | 2.178 | N/A | N/A |
| TA-8211 | 3 Bedroom | 1.296 | 1.647 | 2.178 | N/A | N/A |
| TA-8212 | 3 Bedroom | 1.296 | 1.647 | 2.178 | N/A | N/A |
| TA-8214 | 3 Bedroom | 1.296 | 1.647 | 2.178 | N/A | N/A |
| TA-8215 | 3 Bedroom | 1.296 | 1.647 | 2.178 | N/A | N/A |
| TA-8216 | 3 Bedroom | 1.296 | 1.647 | 2.178 | N/A | N/A |
| TA-8301 | 3 Bedroom | 1.296 | 1.647 | 2.178 | N/A | N/A |
| TA-8302 | 3 Bedroom | 1.296 | 1.647 | 2.178 | N/A | N/A |
| TA-8303 | 3 Bedroom | 1.296 | 1.647 | 2.178 | N/A | N/A |
| TA-8304 | 3 Bedroom | 1.296 | 1.647 | 2.178 | N/A | N/A |
| TA-8305 | 3 Bedroom | 1.296 | 1.647 | 2.178 | N/A | N/A |
| TA-8306 | 3 Bedroom | 1.296 | 1.647 | 2.178 | N/A | N/A |
| TA-8307 | 3 Bedroom | 1.296 | 1.647 | 2.178 | N/A | N/A |
| TA-8308 | 3 Bedroom | 1.296 | 1.647 | 2.178 | N/A | N/A |
| TA-8309 | 3 Bedroom | 1.296 | 1.647 | 2.178 | N/A | N/A |
| TA-8310 | 3 Bedroom | 1.296 | 1.647 | 2.178 | N/A | N/A |
| TA-8311 | 3 Bedroom | 1.296 | 1.647 | 2.178 | N/A | N/A |
| TA-8312 | 3 Bedroom | 1.296 | 1.647 | 2.178 | N/A | N/A |
| TA-8314 | 3 Bedroom | 1.296 | 1.647 | 2.178 | N/A | N/A |
| TA-8315 | 3 Bedroom | 1.296 | 1.647 | 2.178 | N/A | N/A |
| TA-8401 | 2 Bedroom | 1.178 | 1.498 | 1.980 | N/A | N/A |
| TA-8402 | 2 Bedroom | 1.178 | 1.498 | 1.980 | N/A | N/A |
| TA-8403 | 2 Bedroom | 1.178 | 1.498 | 1.980 | N/A | N/A |
| TA-8404 | 2 Bedroom | 1.178 | 1.498 | 1.980 | N/A | N/A |
| TA-8405 | 2 Bedroom | 1.178 | 1.498 | 1.980 | N/A | N/A |



452454 01/11/2001 03:02P CONDO DE DAVIS SILVI 95 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY C

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
96 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY C

ASPEN HIGHLANDS CONDOMINIUMS—ALLOCATED INTERESTS ("AI")

| Unit Number | Unit Type | AI-General (%) | AI-Residential (%) | AI-Tourist Accommodation (%) | AI-Deed Restricted Residential (%) | AI-Commercial (%) |
|---|---|---|---|---|---|---|
| TA-8406 | 2 Bedroom | 1.176 | 1.496 | 1.980 | N/A | N/A |
| TA-8408 | 2 Bedroom | 1.176 | 1.496 | 1.980 | N/A | N/A |
| TA-8409 | 2 Bedroom | 1.176 | 1.496 | 1.980 | N/A | N/A |
| TA-8410 | 2 Bedroom | 1.176 | 1.496 | 1.980 | N/A | N/A |
| TA-8411 | 2 Bedroom | 1.176 | 1.499 | 1.980 | N/A | N/A |
| TA-8412 | 2 Bedroom | 1.176 | 1.496 | 1.980 | N/A | N/A |
| TA-8415 | 2 Bedroom | 1.176 | 1.496 | 1.980 | N/A | N/A |
| | | 58.699 | 72.331 | 95.644 | | |
| DR-8120 | 3 Bedroom | 0.969 | 1.231 | N/A | 5.052 | N/A |
| DR-8121 | 3 Bedroom | 1.031 | 1.310 | N/A | 5.375 | N/A |
| DR-8122 | 3 Bedroom | 0.963 | 1.224 | N/A | 5.023 | N/A |
| DR-8123 | 3 Bedroom | 0.945 | 1.201 | N/A | 4.929 | N/A |
| DR-8124 | 3 Bedroom | 1.035 | 1.316 | N/A | 5.400 | N/A |
| DR-8125 | 3 Bedroom | 0.984 | 1.251 | N/A | 5.134 | N/A |
| DR-8126 | 3 Bedroom | 1.021 | 1.298 | N/A | 5.326 | N/A |
| | | 6.948 | 8.833 | | 36.238 | |
| C-6012 | Commercial | 3.159 | N/A | N/A | N/A | 14.809 |
| C-6115 | Commercial | 2.559 | N/A | N/A | N/A | 11.996 |
| C-6117 | Commercial | 0.533 | N/A | N/A | N/A | 2.496 |
| C-6130 | Commercial | 2.131 | N/A | N/A | N/A | 9.989 |
| | | 8.383 | | | | 39.289 |

2

450434 01/11/2001 03:02P CONDO DE DAVIS SILVI
97 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY C

## ASPEN HIGHLANDS CONDOMINIUMS—ALLOCATED INTERESTS ("AI")

| Unit Number | Unit Type | AI-General (%) | AI-Residential (%) | AI-Tourist Accommodation (%) | AI-Deed Restricted Residential (%) | AI-Commercial (%) |
|---|---|---|---|---|---|---|
| TA-4301 | 3 Bedroom | 1,266 | 1,647 | 2,178 | N/A | N/A |
| TA-4302 | 3 Bedroom | 1,296 | 1,647 | 2,178 | N/A | N/A |
| | | 2,592 | 3,295 | 4,356 | N/A | N/A |
| DR-4201 | 1 Bedroom | 0,490 | 0,623 | N/A | 2,567 | N/A |
| DR-4202 | 2 Bedroom | 0,749 | 0,952 | N/A | 3,904 | N/A |
| DR-4203 | Dorm | 0,763 | 0,970 | N/A | 3,978 | N/A |
| DR-4204 | 1 Bedroom | 0,499 | 0,634 | N/A | 2,602 | N/A |
| DR-4205 | 2 Bedroom | 0,749 | 0,952 | N/A | 3,904 | N/A |
| DR-4207 | 1 Bedroom | 0,504 | 0,640 | N/A | 2,626 | N/A |
| DR-4208 | Dorm | 1,290 | 1,640 | N/A | 6,727 | N/A |
| DR-4209 | Dorm | 1,277 | 1,623 | N/A | 6,658 | N/A |
| DR-4211 | 1 Bedroom | 0,489 | 0,621 | N/A | 2,548 | N/A |
| DR-4212 | 1 Bedroom | 0,491 | 0,624 | N/A | 2,561 | N/A |
| DR-4304 | 1 Bedroom | 0,489 | 0,622 | N/A | 2,552 | N/A |
| DR-4305 | 1 Bedroom | 0,488 | 0,620 | N/A | 2,544 | N/A |
| DR-4306 | Dorm | 1,273 | 1,616 | N/A | 6,627 | N/A |
| DR-4307 | Dorm | 1,063 | 1,351 | N/A | 5,543 | N/A |
| DR-4308 | Dorm | 0,827 | 1,052 | N/A | 4,314 | N/A |
| DR-4309 | 2 Bedroom | 0,787 | 1,001 | N/A | 4,105 | N/A |
| | | 12,226 | 16,541 | N/A | 63,762 | N/A |
| C-4102 | Commercial | 2,595 | N/A | N/A | N/A | 12,161 |
| C-4109 | Commercial | 5,586 | N/A | N/A | N/A | 28,182 |
| C-4114 | Commercial | 3,630 | N/A | N/A | N/A | 17,014 |
| C-4115 | Commercial | 1,142 | N/A | N/A | N/A | 5,353 |
| | | 12,953 | N/A | N/A | N/A | 60,711 |

3

**EXHIBIT C**
**to Declaration of Condominium for Aspen Highlands Condominiums**

### EXPANSION PROPERTY

THE RITZ-CARLTON DEVELOPMENT COMPANY, INC. EXPANSION PARCEL

An undivided 90% interest as tenant in common in Lot 2, Supplemental Plat, Aspen Highlands Village P.U.D., Block D, according to the recorded plat thereof recorded September 28, 1999, in Plat Book 51 at page 41, Reception No. 436003,

HINES HIGHLANDS LIMITED PARTNERSHIP EXPANSION PARCEL

An undivided 10% interest as tenant in common in Lot 2, Supplemental Plat, Aspen Highlands Village P.U.D., Block D, according to the recorded plat thereof recorded September 28, 1999, in Plat Book 51 at page 41, Reception No. 436003,

County of Pitkin,
State of Colorado

C-1



**EXHIBIT D**
**to Declaration of Condominium for Aspen Highlands Condominiums**

### EASEMENTS, LICENSES AND OTHER TITLE MATTERS

1.  Right of proprietor of a vein or lode to extract and remove his ore therefrom should the same be found to penetrate or intersect the premises as reserved in United States Patent recorded January 18, 1892, in Book 55 at Page 20 and recorded April 7, 1903, in Book 55 at Page 507.

2.  Right of way for ditches or canals constructed by the authority of the United States as reserved in United States Patent recorded June 25, 1957, in Book 181 at Page 506.

3.  Easements and rights of way for water pipeline purposes as set forth in instruments recorded June 10, 1960 in Book 191 at Page 15 and recorded September 18, 1961 in Book 195 at Page 231.

4.  Terms, conditions and provisions of Resolution No. 97-167 recorded September 30, 1998 at Reception No. 422629 and Resolution No. 39 (Series of 1998) recorded October 5, 1998 under Reception No. 422779 and Resolution No. 98-79 recorded October 15, 1998 under Reception No. 423268.

5.  Terms, conditions and provisions of Agreement recorded April 28, 1981 in Book 407 at Page 648 and Assigaments thereof recorded December 13, 1993 in Book 734 at Page 685 and recorded December 13, 1993 in Book 734 at Page 848.

6.  Term, conditions and provisions of Order of Inclusion in Aspen Consolidated Sanitation District recorded December 09, 1997 under Reception No. 411462.

7.  Terms, conditions and provisions of Special Covenants and Restrictions recorded October 27, 1997 under Reception No. 409939.

8.  Easements and rights of way for snow making line, Jones drawoff pipe, telephone lines, and cable TV lines as constructed and in place as set forth on the survey of a portion of subject property prepared by Schmueser Gordon Meyer Inc., dated September 21, 1997.

9.  Easements, rights of way, terms, conditions, provisions and obligations as contained in Easement Agreement (Block D), recorded October 15, 1998 under Reception No. 423258.

10. Easement, rights of way, terms, conditions, provisions and obligations as contained in Ski Easement Agreement recorded October 15, 1998 under Reception No. 423259.

11. Terms, conditions and provisions of Raw Water Agreement, Irrigation, recorded October 05, 1998 at Reception No. 422780.

12. Terms, conditions and provisions of Water Service Agreement recorded October 05, 1998 at Reception No. 422782 and First Addendum thereto recorded October 5, 1998 under Reception No. 422783.

D-1



13.    Terms, conditions, and provisions of Subdivider's Agreement recorded October 15, 1998, under Reception No. 423271.

14.    Restrictive covenants, which do not contain a forfeiture or reverter clause, but omitting any covenant or restriction based on race, color, religion, sex, handicap, familial status or national origin unless and only to the extent that said covenant (a) is exempt under Chapter 42, Section 3607 of the United States Code or (b) relates to handicap but does not discriminate against handicapped persons, as contained in instrument recorded October 15, 1998, under Reception No. 423272.

15.    Terms, conditions and provisions of Planned Unit Development Guide recorded October 15, 1998 at Reception No. 423274 and Resolution 98-254 recorded August 25, 1999 as Reception No. 434844.

16.    Terms, conditions and provisions of Preconnection Agreement recorded October 15, 1998 at Reception No. 423276.

17.    Terms, conditions and provisions of Collection Systems Agreement recorded October 15, 1998 at Reception No. 423277.

18.    Terms, conditions, provisions, obligations and restrictions as contained in the detailed Submission Plan recorded October 15, 1998 under Reception No. 423269 and as set forth on the detailed Submission Plan Maps recorded October 15, 1998 in Plat Book 46 at Page 44.

19.    Easements, rights of way and other matters as set forth on the plat of Aspen Highlands Village PUD, recorded October 15, 1998 in Plat Book 47 at Page 1 and as shown on the Supplemental Plat recorded September 28, 1999 in Plat Book 51 at Page 41 as Reception No. 436003.

20.    Terms, conditions, provisions and obligations as contained in concerning parking facilities and commercial units as evidenced by Memorandums of Agreement recorded October 15, 1998 under Reception No. 423279 and under Reception No. 423280.

21.    Terms, conditions, provisions, obligations, easements and rights of way as set forth in instruments recorded October 15, 1998 under Reception No. 423281.

22.    Terms, agreements, provisions, conditions and obligations of City of Aspen, Easement Agreement (Maroon Creek Pipeline) recorded October 15, 1998 as Reception No. 423282.

23.    Terms, conditions and provisions of Trench, Conduit and Vault Agreement recorded January 11, 1999 at Reception No. 426421.

24.    Terms, conditions and provisions of Resolution No. 99-127 recorded August 12, 1999 at Reception No. 434364 and rerecorded August 30, 1999 as Reception No. 435034.

25.    Terms, agreements, provisions, conditions and obligations of Successor Designation recorded September 30, 1999 as Reception No. 436130.



26.   Terms, agreements, provisions, conditions and obligations of Ordinance No. 8 (Series of 2000), recorded May 1, 2000 as Reception No. 442835.

27.   Any and all easements, rights of way, plat notes and any and all other matters shown on the Aspen Highlands Village P.U.D. Annexation No. 1 Plat recorded May 1, 2000 in Plat Book 53 at Page 13.

28.   Terms, agreements, provisions, conditions and obligations of memorandum, regarding High School Lift Towers, recorded August 30, 2000 as Reception No. 446537.

29.   Terms, agreements, provisions, conditions and obligations of Grant of Easement recorded November 20, 2000 as Reception No. 448998.

30.   Terms, agreements, provisions, conditions and obligations of Ordinance No. 35, Series of 2000 recorded November 28, 2000 as Reception No. 449206.

31.   Terms, agreements, provisions, conditions and obligations of Ordinance No. 36, Series of 2000 recorded November 28, 2000 as Reception No. 449207.

32.   Terms, agreements, provisions, conditions and obligations of Dedication and Assumption Easement Agreement recorded December 13, 2000 as Reception No. 449654.

## EXHIBIT E
### to Declaration of Condominium for Aspen Highlands Condominiums

## CITY DISCLOSURE STATEMENT

See attached.

E-1

490454 01/11/2001 03:02P CONDO DE DAVIS SILVI
102 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY

JANUARY 4, 2001

### CITY OF ASPEN DISCLOSURE STATEMENT
### FOR
### THE RITZ-CARLTON CLUB, ASPEN HIGHLANDS
### PITKIN COUNTY, COLORADO

**CITY OF ASPEN NEITHER HAS PREPARED OR ISSUED THIS DOCUMENT NOR HAS IT PASSED ON THE MERITS OF THE SUBDIVISION DESCRIBED HEREIN.**

*Definitions*

"Association" means Aspen Highlands Condominium Association, Inc.

"Aspen Code" means the Municipal Code of the City of Aspen, Colorado, as amended.

"Aspen Highlands Condominiums" means the mixed-use condominium project, which will initially be comprised of Buildings 4 and 8 located on Lots 4 and 8, in Aspen Highlands Village, Block D.  Buildings 4 and 8 will consist of various commercial units, forty-seven fractional ownership, tourist accommodation units, and twenty-three deed restricted, affordable housing residential units.  The Project may be expanded to include Building 2 which will add various commercial units, twenty-six fractional ownership tourist accommodation units and one deed restricted, affordable housing residential unit although such expansion is not required.

"Declaration" means the Declaration of Condominium for Aspen Highlands Condominiums.

"Developer" for purposes of the plan of fractional ownership the term "Developer" means The Ritz-Carlton Development Company, Inc. which will be the owner and seller of the tourist accommodation units committed to a plan of fractional ownership.

"Development" means the Aspen Highlands Village Planned Unit Development, in which Buildings 2, 4 and 8 are or will be located.

"Fractional Ownership Interest" means the fractional ownership interest that a purchaser will acquire in a Tourist Accommodation Unit, as more particularly described in the Project Instruments.

"Fractional Ownership Resort" means those portions of Aspen Highlands Condominiums marketed and known as The Ritz-Carlton Club, Aspen Highlands and consisting of Tourist Accommodation Units committed to the plan of fractional ownership together with the system of mutual rights and obligations created by the Project Instruments.  The Fractional Ownership

City of Aspen Disclosure Statement 01032001 cln



JANUARY 4, 2001

Resort will involve the sale of fractional ownership interests, which legally constitute timeshare estates under Colorado law and under the Aspen Code.

"Owner" means the owner of a Fractional Ownership Interest.

"Timeshare Development Instruments" means the documents containing the information described in Aspen Code Section 26.590.010.C.19.c.

"Tourist Accommodation Unit" means a residential unit located within Aspen Highlands Condominiums intended to be occupied principally by visitors to Pitkin County including customary on-site management and operation services for visitors. Tourist Accommodation Units will be committed to a plan of fractional ownership.

### *26.590.010.C.19.*   *Disclosure Statement*

The Ritz-Carlton Development Company, Inc. and its successors and assigns shall have the obligation to update and file this disclosure statement and any amendments to the Timeshare Development Instruments with the City of Aspen and the Pitkin County Clerk and Recorder pursuant to § 26.590.010.C.19.c. of the Aspen Code until the Association is formed. Once the Association has been formed, its approval will be required for all updates to the disclosure statement and amendments to the Timeshare Development Instruments. After the termination of the Declarant Control Period, as defined in the Declaration, the Association will have full responsibility for all subsequent updates and amendments.

*(1)   The name and address of the developer of the timeshare development, as well as a summary of the developer's business experience, including all background and experience in the development of timeshare development, and a resume with references and present financial condition of the developer.*

The Ritz-Carlton Development Company, Inc.
419 East Hyman Street
Aspen, CO 81612

The Developer through its executive and management personnel has extensive experience in the development, marketing and management of fractional ownership resorts and in the development, operation and management of luxury hotels and resorts throughout the world. The Ritz-Carlton Club, Aspen Highlands will be one of the first two luxury tier, fractional ownership resort clubs presented by the Developer in the world. The Developer is a wholly owned subsidiary of Marriott Ownership Resorts, Inc., an experienced developer of fractional ownership and timesharing resorts. The Developer's principal office is 6649 Westwood Boulevard, Orlando, Florida 32821-6090.



Case No. 1:16-cv-01301-PAB-GPG   Document 250-8   filed 05/15/18   USDC Colorado   pg 105
of 147
CASE 0:12-cv-03093-DSD-JJK   Document 49-8   Filed 05/10/13   Page 32 of 74

JANUARY 4, 2001

Marriott Ownership Resorts, Inc. is a wholly-owned subsidiary of Marriott International, Inc., a well respected publicly owned corporation headquartered in Bethesda, Maryland active among other things in the development, marketing and management of hotel, resort, hospitality and other leisure and residential properties providing both short and long term accommodations for residents and guests.

*(2)      The name and address of the manager of the development, if any, and a description of the manager's responsibility, authority and business experience along with a resume with references. All information on the manager's background and experience specifically related to timeshare development should be provided.*

Manager:

The tourist accommodation units committed to the plan of fractional ownership will be managed by two companies that are affiliates of the Developer.

The Ritz-Carlton Management Company, L.L.C.
419 East Hyman Street
Aspen, CO 81612

The Ritz-Carlton Management Company, L.L.C. will be responsible for on-site operations of the tourist accommodation units committed to the plan of fractional ownership. It may delegate a portion of its management responsibilities to third parties.

The Ritz-Carlton Travel Company, LLC
6649 Westwood Boulevard, Suite 500
Orlando, Florida 32821-6090

The Ritz-Carlton Travel Company, LLC will be responsible for the operation of The Ritz-Carlton Club Membership Program ("Membership Program"). The Membership Program is a combination of benefits and services including reservation and exchange services for members.

*(3)      The names and addresses of the marketing entity and the listing broker and a statement of whether there are any lawsuits pending or investigations that have been undertaken against the marketing entity or listing broker, and if so, a description of the status or disposition of said lawsuits or investigations. A summary of the marketing entity's business experience including all background and experience related to timeshare projects, and a resume with references on the marketing entity shall be provided.*

Marketing will be conducted by The Ritz-Carlton Sales Company, Inc., an affiliate of Developer which is licensed in the State of Colorado. Marketing will also be conducted utilizing licensed,

City of Aspen Disclosure Statement 01032001 cln



452494  01/11/2001  03:02P  CONDO  DE  DAVIS  SILVI
109 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY

3

Case No. 1:16-cv-01301-PAB-GPG   Document 250-8   filed 05/15/18   USDC Colorado   pg 106
of 147
CASE 0:12-cv-03093-DSD-JJK   Document 49-8   Filed 05/10/13   Page 33 of 74

JANUARY 4, 2001

cooperating brokers. Sales personnel employed by licensed brokerage companies are licensed as required by the State of Colorado and by any other states in which licensing is required.

*(4)     A description of the timeshare units, including the developer's schedule for completion of all buildings, units and project amenities and dates of availability. In the event the development is to be a phased development, the developer shall provide, to the satisfaction of the city, a bond or letter of credit insuring that all phases of construction will be completed.*

Building 8 consisting of forty-five two and three bedroom Tourist Accommodation Units and Building 4 consisting of two three-bedroom Tourist Accommodation Units are expected to be completed by approximately November 2000. Aspen Highlands Condominiums may be expanded by the inclusion of Building 2. If that occurs, Building 2 is expected to be completed by approximately November 2001. Each building will be built individually without phasing so that no bond will be required. If any amenities within or adjacent to the building in which a Tourist Accommodation Unit is located are not complete prior to the closing of a fractional ownership interest within such Tourist Accommodation Unit, Developer shall post a cash or surety bond or letter of credit approved in writing by the Colorado Real Estate Commission equal to 125% of the estimated cost of completion of such amenities.

All Tourist Accommodation units committed to the plan of fractional ownership will be fully furnished. Owners of Fractional Ownership Interests will have the non-exclusive right to use one parking stall and ski storage while in residence as well as long term storage.

The following is a list of amenities:
- Reception and Lobby Areas located in Buildings 2 and 8
- Members' Lounges located in Buildings 2 and 8
- Members' Ski-Boot Lockers for use while in residence
- Exercise Facility located in Building 2
- Swimming Pool
- Outdoor Jetted Spas (one adjacent to Building 8; one adjacent to Building 2)
- Underground garage parking
- Long term storage for Owners' personal effects

The amenities located in Building 2 will only be available if Aspen Highlands Condominiums are expanded by the addition of Building 2. There is no assurance that Building 2 will be included in the Aspen Highlands Condominiums.

The Resort will be affiliated with The Ritz-Carlton Club Membership Program. As members in the program owners will have the right to use a health club facility located in Building 8, which will not be a limited common element owned by the owners but will be separately owned and operated by the developer. Memberships for non-owners may be permitted in the health club.



JANUARY 4, 2001

There is no assurance that the health club will be operated for more than three years after the date of completion of the facility.

*(5)    If the timeshare plan consists of a condominium or a similar form of ownership, a description of the development and any pertinent provisions of the development's instruments.*

Aspen Highlands Condominiums is a mixed-use condominium project that may include as many as three buildings. The buildings will include tourist accommodation residential units permitting short term occupancy, deed restricted residential units permitting permanent occupancy to owners or tenants as well as commercial units permitting retail and other commercial operations.

Buildings 4 and 8 will be the first buildings that are subjected to the provisions of the Declaration of Condominium for Aspen Highlands Condominiums. In addition, the Development may be expanded to include Building 2. All Tourist Accommodation Units within Buildings 2, 4 and 8 may be committed to the plan of fractional ownership.

**From and after the date that the Developer first conveys a fractional ownership interest in a Tourist Accommodation Unit to an unaffiliated third-party purchaser thereof, no whole ownership interest in any Tourist Accommodation Unit in the same building will be sold to an unaffiliated third-party purchaser so long as required by applicable governmental regulation.** Notwithstanding the foregoing, deed-restricted whole ownership, residential units may be included in each of the buildings. Article 23 of the Declaration contains the pertinent provisions for the creation and operation of the plan of fractional ownership as a part of the Development.

*(6)    Any restraints on the transfer of the purchaser's timeshare interest in the timeshare units or plan.*

The transfer of each fractional interest after the initial transfer by Developer will be subject to a right of first refusal for the benefit of Developer. Also, re-sales of fractional interests by owners may be required to be coordinated through the same listing agent as those units being sold by Declarant.

*(7)    The timeshare ownership plan (timeshare, fractional fee, interval ownership) which shall include a description of the rights and responsibilities under the plan. This description should also disclose whether a prospective purchaser is buying a specific unit for a specific time or a specific unit for a floating time, or whether there is no specific unit but just a specific time.*

Owners will receive a deed for a fractional fee ownership interest in a particular condominium unit and will own an undivided deeded interest in the common elements as governed by the Association. Each deeded interest will be recorded and will be insured by a title insurance policy. All furnishings in units committed to the plan of fractional ownership will be owned by



JANUARY 4, 2001

the Association as limited common elements for the benefit of each Owner of a fractional ownership interest. The undivided fee ownership interests in the individual Tourist Accommodation Units will legally constitute timeshare estates under Colorado law.

Each Fractional Ownership Interest will include membership in an owners' association. A membership will carry with it the right to reserve and use a Tourist Accommodation Unit of the type purchased for a minimum number of days per year subject to compliance with the reservation policies adopted by the manager of the Membership Program, with additional use based on availability.

Each member owning an undivided fractional interest will be entitled to use of a Tourist Accommodation Unit each year in accordance with the reservation procedures. Each Owner of a Fractional Interest must own a minimum of an undivided 2/48ths fee ownership interest in a Tourist Accommodation Unit. Each undivided 1/48th fee ownership interest includes the right to use a Tourist Accommodation Unit for 7 days/nights per year in accordance with the Reservation Procedures adopted from time to time by the manager of the Membership Program. The developer plans to market undivided 1/12th interests allowing use for a total of 28 days/nights per year.

Each owner will own an undivided fractional interest allowing them to utilize the residences in accordance with the reservation procedures. Depending on the magnitude of the interest owned an Owner will be able to reserve a specific amount of time in a residence during the winter, summer, and off-season months in accordance with the reservation procedures.

Owners will also be able to reserve additional usage (referred to as Space Available usage) beyond that which they have purchased. Units that have not otherwise been reserved thirty days prior to the start of the usage period will be available to be reserved by Owners on a first come, first served basis without regard to the type of unit in which the Owner owns a fractional interest.

A member owning an undivided interest in a two bedroom unit will be entitled to reserve use of a two bedroom unit and a member owning an undivided interest in a three bedroom unit will be entitled to reserve use of a three bedroom unit. The Association reserves the right to develop reservation procedures that will allow expanded reservation rights between different types of Tourist Accommodation Units in order to enhance utilization of the resort through the plan of fractional ownership.

*(8)     Notice of any liens, title defects or encumbrances on or affecting the title to the units or plan and, if there are encumbrances or liens, a statement as to whether, when and how they will be removed.*

Each of the parcels on which each of the Buildings is being constructed is encumbered by a deed of trust securing payment of a promissory note payable by the Developer. All monies received

City of Aspen Disclosure Statement 01032001 eln



JANUARY 4, 2001

from purchasers will be held in escrow until the completion of construction of the Buildings and
until any deeds of trust encumbering the parcels can be released. There are no other liens, title
defects or encumbrances adversely and materially affecting title to the units or the plan of
fractional ownership. If any amenities within or adjacent to the building in which a Tourist
Accommodation Unit is located are not complete prior to the closing of a fractional ownership
interest within such Tourist Accommodation Unit, Developer shall post a cash or surety bond or
letter of credit approved in writing by the Colorado Real Estate Commission equal to 125% of
the estimated cost of completion of such amenities.

*(9)     Notice of any pending or anticipated legal actions that are material to the timeshare units
or plan, of which the Applicant has, or should have, knowledge.*

The Developer currently knows of no such pending or anticipated legal actions.

*(10)    The total financial obligation of the purchaser, which shall include the initial price and
any additional charges to which the purchaser may be subject in purchasing the unit.*

Purchasers will be obligated to pay the purchase price of the Residence Interest at the time of
closing. In addition, purchasers will be obligated to pay periodic assessments to cover the cost of
operations including maintenance, utilities, repair and replacement of the property. Purchasers
will also be responsible for paying real estate taxes and fees for participation in The Ritz Carlton
Club Membership Program. Purchasers will be advised of all prices and charges to which
purchasers will be subject after construction is complete and prior to closing.

*(11)    An estimate of the dues, maintenance fees, real property taxes, sales taxes, real estate
transfer tax and similar periodic expenses, and the method or formula by which they are derived
and apportioned, which shall include whether maintenance fees are determined by unit, time of
year, or pro-rated share of the overall maintenance costs, or any other means utilized to compute
maintenance fees.*

Assessments will be apportioned consistent with the Declaration of Condominium for Aspen
Highlands Condominiums. The developer reserves the right to revise the budget at any time.
Purchasers will be advised of any and all revisions.

*(12)    A description of any financing offered by the Applicant.*

Financing is available to qualified purchasers on the following terms:

- Rate of 2% over 5 year Treasury Note rate to be fixed at closing.
- Up to 20-year term.
- Monthly payments of principal and interest.
- Financing for up to 90% of the purchase price.

City of Aspen Disclosure Statement 01032001 cln



JANUARY 4, 2001

- Non-assumable.

These rates and terms are subject to change without notice.

*(13)   The terms and significant limitations of any warranties provided, including statutory warranties and limitations on the enforcement thereof or on damages.*

The Developer is not the general contractor of Aspen Highlands Condominiums; however, the Developer will provide the same warranty to purchasers as it receives from the general contractor.

*(14)   A statement that any deposits or down payments made in connection with the purchase of a timeshare unit will be held in an escrow account until closing of the transaction or availability for occupancy, whichever is later. The escrow agent or holder of the escrow shall be a neutral third party not having any interest in the purchase and sale transaction.*

All deposits or down payments made in connection with the purchase of a Fractional Ownership Interest, consistent with this application, will be held until closing or until the various buildings in which units committed to the plan of fractional ownership are located are available for occupancy, whichever is later, consistent with this code requirement.

*(15)   Any current or expected fees or charges to be paid by timeshare owners for the use of any facilities related to the property.*

Annual assessments including charges for real estate taxes and fees for participation in The Ritz-Carlton Club Membership Program will be payable by members. Members may also obtain additional, individual services for which separate fees may be charged. Prior to the sale of any Fractional Ownership Interests assessments, fees and charges will be determined and disclosed to all potential buyers.

*(16)   The extent to which a timeshare unit may become subject to a tax or other lien arising out of claims against other timeshare owners of the same timeshare unit.*

Fractional ownership interests are timeshare estates under Colorado law and as such are separate interests in real property. As such, fractional interest owned by one owner will not be subject to liens arising out of claims against other owners.

City of Aspen Disclosure Statement 01032001 cln



450434 01/11/2001 03:02P CONDO DE DAVIS SILVI
110 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY

JANUARY 4, 2001

*(17)   A statement that there is a ten (10) day calendar period of mutual rescission in the purchase of the unit.*

All purchasers shall have and be notified of the right to rescind their purchase within ten days of the later of signing the purchase agreement or receiving this Disclosure Statement from Developer consistent with this code requirement.

*(18)   The developer must disclose the minimum percentage of units intended to be sold before the developer will proceed with the completion of the timeshare project.*

The Developer is not requiring the sale of any minimum number of lots prior to proceeding with closings.

*(19)   A description of the maintenance to be supplied to the timeshare units and how such maintenance will be provided, and what time periods during the year are set aside for only maintenance so that the unit will not be able to be occupied.*

See Timeshare Development Instruments. Four weeks will be available for maintenance each year as determined by the Association.

*(20)   How the proposed development will deal with the problem of a unit not being available to an owner because of a prior occupant holding over and not yielding possession of the unit; and, what means are available to discourage and penalize persons who do hold over.*

In the unlikely event an occupant does not vacate a Residence at the scheduled time (a "holdover occupant") the Association through the management company will immediately initiate legal efforts to evict the holdover occupant. The holdover occupant is responsible for payment of damages to the person entitled to occupy the Residence in an amount equal to 200% of the estimated daily fair market rental value of the Residence plus all costs of enforcement including attorneys' fees. Such amounts can be collected as assessments from the holdover occupant. Notwithstanding those efforts if such Residence is for any reason not physically available for occupancy the Association through the management company will do whatever reasonably possible to obtain alternate accommodations.

*(21)   A statement of what times of year are high season (on-season)), including a statement of when the local ski areas are open for skiing and how the developer intends to market the off-season.*

The winter high season generally will be considered to be the ski season, from approximately early December until approximately mid April. The summer high season will generally be considered to be from early June through the aspen-viewing season until the first weekend of October.

City of Aspen Disclosure Statement 01032001 cln



9

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
111 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY

JANUARY 4, 2001

The developer may designate some weeks as "fixed" weeks such as Christmas, New Year's and other preferred holidays. The developer may also sell floating usage which requires the Owners to reserve or confirm intended usage in accordance with the Reservation Procedures. The memberships described below are currently being offered:

| Multiple Season Membership—Winter Package | 14 consecutive days of use each winter<br>7 consecutive days of use each summer<br>7 days of floating use during other available time periods |
| Multiple Season Membership—Summer Package | 14 consecutive days of use each summer<br>7 consecutive days of use each winter<br>7 days of floating use during other available time periods |
| Preferred Season Membership-Winter Package | 21 consecutive days of use each winter<br>7 days of floating use during other available time periods |
| Preferred Season Membership-Summer Package | 21 consecutive days of use each summer<br>7 days of floating use during other available time periods |

*(22)    Whether all the units in the proposed development, or only certain specific units, if any, are available for participation in an exchange program.*

Only those Tourist Accommodation Units that are part of the plan of fractional ownership will participate in The Ritz-Carlton Club Membership Program. There is currently no other exchange program.

*(23)    All unusual and material circumstances, features and characteristics of the property.*

The Developer currently knows of none.

*(24)    A description of all insurance covering the property.*

Insurance coverage will be consistent with the Declaration and Association Bylaws. This includes general liability and casualty/property damage insurance. In addition, fidelity insurance will be provided for management personnel responsible for handling funds of the Association.



450454  01/11/2001 03:02P CONDO DE DAVIS SILVI
112 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY

City of Aspen Disclosure Statement 01032001 cln

10

JANUARY 4, 2001

*(25) A description of the on-site amenities and recreational facilities which are available for use by the unit owners. All on-site amenities must be owned by the homeowner's association and the developer shall not be allowed to charge any additional fees for use of the amenities.*

Building 8: On-site amenities may include outdoor pool, outdoor hot tub, project lounge, television/game room, and business center. Amenities will be a limited common element of the Tourist Accommodation Units. Some of these amenities may be used by owners of single family lots, townhomes, and any wholly owned Tourist Accommodation Units within Aspen Highlands Village.

Building 2: On-site amenities may include outdoor hot tub, project lounge, television/game room. Amenities will be limited common elements of the Tourist Accommodation Units if this building is included as part of a plan of fractional ownership. Again, there is no guarantee that Building 2 will be included in the condominium regime or the plan of fractional ownership.

*(26) A list of any units in the project that have existing kitchens and any proposals for additional kitchens.*

All Tourist Accommodation Units in Buildings 4 and 8 will have full kitchens of comparable size and quality. If Building 2 is added to the condominium regime the Tourist Accommodation Units in that building will also have full kitchens.

*(27) A list of the limitations on the number of persons who can occupy a unit at any one time and what those limitations are for each unit in the development. These limitations must comply with minimum occupancy requirements established by applicable building codes.*

Occupancy limitations will be six people in two bedroom units and eight people in three bedroom units.

*(28) A statement that the Homeowner's association and/or Managing Agent shall serve as the owner's designated agent for the service of legal notices pertaining to the timeshare interest or the service of process (in a manner sufficient to satisfy the requirements of Personal Service in State, pursuant to Rule 4, CRCP, as amended).*

The Association and/or Managing Agent shall serve as the Owners' designated agent for service of process (in a manner sufficient to satisfy the requirements of Personal Service in State, pursuant to Rule 4, CRCP, as amended) or legal notices pertaining to the timeshare interest.



450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
113 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY

City of Aspen Disclosure Statement 01032001 clm

11

JANUARY 4, 2001

*(29)    A statement that any timeshare interest shall be expressly subject to all requirements and representations set forth in the disclosure statement on record with the Pitkin County Clerk and Recorder.*

Each Fractional Ownership Interest shall be expressly subject to all requirements and representations set forth in the disclosure statement which shall be on record with the Pitkin County Clerk and Recorder.

Approved:

The Ritz-Carlton Development Company, Inc.

By: _____
Name: DANIEL B. ZANINI
Title: AUTHORIZED REPRESENTATIVE

Aspen Highlands Condominium Association, Inc.

By: _____
Name: GREGORY M. KARCZEWSKI
Title: VICE- PRESIDENT

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
114 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY

City of Aspen Disclosure Statement 01032001 cln

<u>**EXHIBIT F**</u>
<u>to Declaration of Condominium for Aspen Highlands Condominiums</u>

**THE RITZ–CARLTON CLUB MEMBERSHIP PROGRAM**
**AFFILIATION AGREEMENT**

See attached.



450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
115 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY

JAN.11.2001   4:20PM   MVCI LEGAL DEPARTMEN                    NO.322   P.2/23

# THE RITZ-CARLTON CLUB
# MEMBERSHIP PROGRAM

# AFFILIATION AGREEMENT

452494 01/11/2001 03:02P CONDO DE DAVIS SILVI
116 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY

## TABLE OF CONTENTS

I.      Recitals and Owner Covenants............................................................2
II.     Definitions...........................................................................................2
        Agreement ........................................................................................2
        Allocation .........................................................................................2
        Associate Member ...........................................................................2
        Associated Club ...............................................................................2
        Calendar ...........................................................................................2
        Club ..................................................................................................3
        Club Manager ...................................................................................3
        Developer..........................................................................................3
        Effective Date...................................................................................3
        Guest of the Program Manager........................................................3
        Home Club ........................................................................................3
        Member.............................................................................................3
        Members Association .......................................................................3
        Member Club ....................................................................................3
        Membership Program or The Ritz-Carlton Club Membership Program ...........................3
        Membership Program Documents.....................................................4
        Membership Program Dues ..............................................................4
        Membership Program Marks .............................................................4
        Membership Program Materials ........................................................4
        Owner ...............................................................................................4
        Program Manager .............................................................................4
        Reservation System .........................................................................4
        Reserved Allocation .........................................................................4
        Residence.........................................................................................4
        Residence Documents ......................................................................4
        Residence Interest ...........................................................................5
        Season..............................................................................................5
        Unreserved Allocation .....................................................................5
III.    The Club's Relationship with the Membership Program. ...................5
IV.     Covenants of the Developer, Members Association and Club Manager, .........................6
V.      Operation and Management of the Reservation System. ..................7
VI.     Assessments, Collections and Transaction Costs. ..........................8
VII.    Other Member Clubs and Affiliated Clubs .......................................9
VIII.   Membership Program Marks and Membership Program Materials...............12
IX.     Term, Early Termination, and Remedies...........................................13
X.      Miscellaneous ................................................................................15



450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
117 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY

ii

**THIS RITZ-CARLTON CLUB MEMBERSHIP PROGRAM AFFILIATION AGREEMENT** ("Agreement") is made and entered this _____ day of _____, 200___, by and among The Ritz-Carlton Travel Company, L.L.C., a Delaware limited liability company, whose address is 6649 Westwood Boulevard – Suite #500, Orlando, Florida 32821-6090, ("Program Manager"), The Ritz-Carlton Development Company, Inc. ("Developer"); Aspen Highlands Condominium Association, Inc. ("Members Association"), and The Ritz-Carlton Management Company, L.L.C., a Delaware limited liability company, whose address is 6649 Westwood Boulevard – Suite #500, Orlando, Florida 32821-6090 ("Club Manager"). The aforedescribed parties are sometimes individually referred to as a "Party" or collectively as "Parties", and said terms shall also include respective successors and assigns of any Party or Parties.

## RECITALS

**WHEREAS**, the Developer has developed a luxury, fractional ownership project known as The Ritz-Carlton Club, Aspen Highlands, located in Aspen, Colorado (the "Club"); and

**WHEREAS**, the Program Manager has established a reservation system (the "Reservation System") and other related benefits and services known as The Ritz-Carlton Club Membership Program (the "Membership Program") for the purpose of providing a means for Members to reserve the use of accommodations and facilities at the Club and other locations affiliated with the Membership Program, in accordance with and as restricted by the terms of the Membership Program as set forth in this Agreement and the procedures governing reservations (the "Reservation Procedures"); and

**WHEREAS**, the Members Association is the not-for-profit owners' association for the Club with responsibility for the management and operation of the Club; and

**WHEREAS**, the Members Association has entered into that certain property management agreement with the Club Manager, which, among other things, provides for the delegation, to the extent permitted by law and not otherwise prohibited, of certain management and operations responsibilities to the Club Manager; and

**WHEREAS**, the Developer and the Members Association desire that the Club become affiliated with the Membership Program and that each Owner (defined below) at the Club become a Member (defined below) of the Membership Program with the ability to make use of the Reservation System (defined below) and the other benefits of the Membership Program, pursuant to the terms of this Agreement and the Reservation Procedures; and

**WHEREAS**, the Club Manager desires to have the Club become affiliated with the Membership Program and further desires to coordinate its activities and perform services associated therewith in accordance with the provisions of this Agreement; and

**WHEREAS**, the Program Manager desires that the Developer, the Members Association, the Club Manager and the Members acknowledge that the Program Manager shall have all of the duties, obligations and responsibilities for the operation of the Reservation System regarding the use of Residences (defined below) at the Club as part of the Membership

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
118 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY

JAN.11.2001    4:20PM    MVCI LEGAL DEPARTMEN                                NO.322   P.5/23

Program in accordance with the terms of this Agreement, the Reservation Procedures and applicable law, so as to fully integrate Residences at the Club and their respective Members into the Membership Program.

NOW, THEREFORE, in consideration of the mutual covenants and obligations contained in this Agreement, the parties hereby agree as follows:

## AGREEMENT

### I. Recitals and Owner Covenants.

1.1  By execution of this Agreement, the Parties agree that the above recitals are true and correct and are hereby incorporated into this Agreement.

1.2  By acceptance of a conveyance of a Residence Interest (defined below) at the Club subject to the Residence Documents (defined below), which have been provided to or made available to each Member, each Member is deemed to have consented to the terms and conditions of this Agreement and to have further consented to the appointment of the Members Association as the authorized representative to act on behalf of the Member with respect to the provisions of this Agreement. Wherever the Members Association acknowledgment, consent, understanding and/or agreement is stated or implied in this Agreement, such acknowledgment, consent, understanding and/or agreement shall be deemed to also have been given by the Board of Directors, if applicable, and each Member.

### II. Definitions.

Unless the context requires a different meaning, the following terms used in this Agreement are defined as follows:

**Agreement** means this Ritz-Carlton Club Membership Program Affiliation Agreement.

**Allocation** means the total number of days each year, as established in the Residence Documents, for which a Member is entitled to use a Residence without incurring a per diem charge. An Allocation may be further divided into Reserved Allocations (defined below) and Unreserved Allocations (defined below).

**Associate Member** means a person having privileges within the Membership Program through a separate category of membership other than that type of membership associated with ownership of a Residence Interest and mandatory affiliation with the Membership Program

**Associated Club** means a location pursuant to which membership in the Membership Program is made available to persons on a voluntary basis in accordance with such terms and conditions as may be determined by the Program Manager and for which an agreement similar to the subject Agreement has been executed.

**Calendar** means the annual calendar(s) promulgated by the Program Manager and made available to all Members which identifies Seasons (defined below), the Reserved and



450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
119 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY

2

Unreserved Allocations, Reservation and Confirmation Periods and other pertinent information for each specific Club in a given year.

Club means a Member Club or Associated Club, or in some cases the subject Club depending upon the context.

Club Manager means the person engaged by the Developer, or as applicable, the Members Association, with responsibility for the management and operation of a particular Member Club.

Developer means the person who has developed and created a plan for the shared usage by Members of Residences and common facilities at a particular Member Club and is selling Residence Interests therein directly or through others.

Effective Date means the date when this Agreement has been fully executed by all Parties.

Guest of the Program Manager means any person who lodges in a Residence at a Club on a space-available basis as an invited guest of the Program Manager, who, except where otherwise specifically provided, shall be treated as a guest.

Home Club means the particular Member Club in which the Member owns a Residence Interest.

Member means a person (natural or otherwise) who, by virtue of ownership of a Residence Interest, has membership privileges in the Membership Program on a mandatory basis. Where more than one person own a Residence Interest, then such persons shall designate at the time of purchase of a Residence Interest which person will be deemed to be the Member (cannot be more than one) for purposes of reserving usage under the Reservation Procedures. Where a Member is not an individual, it shall designate at the time of purchase of a Residence Interest, which individual will be treated as the individual Member for purposes of reserving usage under the Reservation Procedures, and such designated person will remain in place until changed in accordance with the Residence Documents.

Members Association means all of the Members, including the Developer as the owner of unsold Residence Interests, who own Residence Interests at a particular Member Club (defined below) and who are part of an association of Members, whether such association is incorporated or unincorporated.

Member Club means those locations, including the subject Club, which become affiliated with the Membership Program from time to time pursuant to an agreement similar to this Agreement or otherwise, and for which membership in the Membership Program is a mandatory obligation of ownership of a Residence Interest. For locations where membership in the Membership Program may only be a condition of ownership of Residence Interests in some Residences, the term "Member Club" shall only be deemed to refer to such Residences.

Membership Program or The Ritz-Carlton Club Membership Program means the program of benefits and services created and operated by the Program Manager as they may exist from time to time, which Members participate in by virtue of ownership of a Residence

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
120 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY

Interest or by other means established by the Program Manager, e.g., the benefits and services made available to Associate Members.

Membership Program Documents means this Agreement, the Reservation Procedures and any other documents governing the use and operation of the Membership Program, as may be amended from time to time.

Membership Program Dues shall consist of the costs and expenses of the Membership Program that are assessable to the Members Association each calendar year and become common charges.

Membership Program Marks means all present and future trademarks or service marks, trade names, symbols, logos, slogans, designs, insignia, emblems, devices and distinctive designs, whether owned by or licensed to the Program Manager or any of its affiliates or subsidiaries, and whether or not registered under the laws of the United States of America or any other country, which are used to identify the Membership Program and/or Program Manager or are otherwise used in the promotion and/or operation of the Membership Program, including, but not limited to, the marks identified on Exhibit A attached hereto, as may be amended from time to time by the Program Manager in its sole discretion.

Membership Program Materials means those reservation services, promotional and/or informational materials developed by the Program Manager for the Membership Program from time to time.

Owner means the owner of record of a Residence Interest at the subject Club and at other Member Clubs who is also a Member and is referred to herein as such.

Program Manager means the person which manages and operates the Membership Program.

Reservation System means the method, means or system by which Members and, as applicable, Associate Members are required to compete among themselves in order to reserve the use of any Residences at any Member Club and, as applicable, an Associated Club.

Reserved Allocation means the portion of the Allocation as established in the Residence Documents, for which a Member is assigned usage of a specific Residence or a specific type of Residence during a specific period or periods of time each year pursuant to the Calendar for a given Home Club

Residence means an apartment, villa, unit or other separate lodging accommodations available for occupancy at a Club as defined in the Residence Documents.

Residence Documents means those documents governing the use of Residences at a particular Home Club pursuant to which the Developer has created Residence Interests owned or to be owned by Members such as, but not limited to, any declaration or other instrument establishing the Residence Interest conveyed to Owners, any Bylaws of the Members Association and any Rules and Regulations of the Members Association.



4

JAN.11.2001   4:21PM   MVCI LEGAL DEPARTMEN                        NO.322   P.6/23

Residence Interest means the particular real property interest in or use rights a Member has at a Member Club.

Season means that time or times of the year set forth in the Calendar for each particular Club which reflects usage of a Residence consistent with the Residence Interest purchased by a Member as set forth in the Residence Documents.

Unreserved Allocation means the days remaining each year from a Member's Allocation after the number of days designated as Reserved Allocation are deducted as established in the Residence Documents.

### III. The Club's Relationship with the Membership Program.

3.1 By execution of this Agreement, the Parties agree to affiliate the Club with the Membership Program in accordance with the terms and conditions of the Membership Program Documents. During the term of this Agreement and any renewal terms, the Developer, the Members Association and Club Manager shall cooperate fully with the Program Manager in the promotion and operation of the Membership Program at the Club.

3.2 The Developer, the Members Association and the Club Manager hereby acknowledge the following:

a.    In accordance with the Residence Documents, membership in the Membership Program is an appurtenance to and a condition of ownership of a Residence Interest at the Club.

b.    The Program Manager manages the use of all Residences at the Club, and at all other Member Clubs, through a Reservation System operated under the name of The Ritz-Carlton Club Membership Program.

c.    In the event the Program Manager affiliates other resorts with the Membership Program in accordance with Article VII below, the Members at such locations will compete, through participation in the Reservation System, with Members at all Member Clubs, including the subject Club, for reservations for any Residences at such Member Clubs that are available after any priority given to Members at a particular Member Club, if any.

d.    The relationship between the Members Association and the Program Manager and the operation of the Membership Program on behalf of the Members at a particular Member Club constitutes legitimate business of the Members Association.

e.    The Membership Program is not a legal entity nor an association of any kind, but instead is a service name given to the variety of reservation services and other benefits currently offered and the restrictions currently imposed through the Program Manager. Members do not acquire any interest in the Membership Program per se as part of their Residence Interest. The services provided by the Program Manager do not include Club Manager's site management and assessment collection duties for the subject Club, which are provided for and governed by the Club Manager's management agreement with Members Association.



450434 01/11/2001 03:02P CONDO DE DAVIS SILVI
122 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY

JAN.11.2001   4:21PM   MVCI LEGAL DEPARTMEN                              NO.322   P.9/23

## IV. Covenants of the Developer, Members Association, and Club Manager.

4.1   In connection with the Club, the Developer, Members Association and Club Manager agree to do the following:

a.   Promptly submit or cause to be submitted to the Program Manager copies of all fully executed and recorded deeds or other evidence satisfactory to the Program Manager indicating that a Residence Interest at the Club has been transferred to a Member and setting forth that the Residence Interest is subject to membership in the Membership Program as an appurtenance to the Residence Interest such that the Member's use of a Residence at the Club or other Member Club is subject to the terms and conditions of the Membership Program.

b.   Fully and accurately describe the Membership Program to Members and prospective purchasers of Residence Interests at the subject Club.   The Developer, Members Association and Club Manager shall not in any way misrepresent the Membership Program or the Club's relationship with the Program Manager to Members or prospective purchasers of Residence Interests at the Club.   The Developer, Members Association and Club Manager shall not amend, summarize, change or modify any Membership Program Materials without the prior express written consent of the Program Manager, and shall provide such Membership Program Materials, the Membership Program Documents and Residence Documents, as amended, to Members upon their reasonable request and/or as requested by applicable law.

c.   Remain informed of new services and benefits provided by the Program Manager to Members.

d.   Comply with all applicable federal, state and local laws, as well as all applicable administrative rules, regulations and orders in the conduct of their respective businesses as such conduct may affect the Club and the Membership Program.

4.2   The Members Association agrees that at the time the Developer transfers control of the Club to the Members Association as set forth in the Residence Documents, if any, the Club shall continue to be affiliated with the Membership Program as a Member Club pursuant to the provisions of the Membership Program Documents.

4.3   The Developer and Members Association represent and warrant to the Program Manager that (a) the Developer owns or leases, or shall own or lease or have a contract for the purchase or lease prior to marketing or commencement of sales, the real estate and improvements constituting the Club; and (b) each Member at the   Club shall acquire, possess and enjoy the right to use a Residence at the Club in accordance with the restrictions contained in the applicable deed or other instrument pursuant to which a Member acquired a Residence Interest, the Residence Documents and the Membership Program Documents and in accordance with applicable law.

4.4   The Developer, Members Association and Club Manager agree that during the term of this Agreement , while the Club remains affiliated with the Membership Program as



450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
123 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY

a Member Club, all requests for reservations of Residences at the Club from Members shall be processed through the Program Manager.

4.5  The Developer, Members Association and Club Manager agree to manage, operate and maintain the Club in a manner consistent with the standards of quality and customer service established by the Program Manager for all Member Clubs from time to time. In this regard, the Program Manager shall have the right to consent to the employment of any Club Manager engaged by the Developer or Members Association to manage, operate and maintain the  Club.  The Developer, Members Association and Club Manager agree to immediately notify the Program Manager of any change in any fact or circumstance affecting the operation of the Club and/or the Membership Program with respect to the Club, including, but not limited to, the termination of any existing Club Manager, and they further agree that should the Program Manager's consent not be obtained and given to the termination and/or employment of a new Club Manager that the Program Manager shall have the right to immediately terminate this Agreement and the affiliation of the Club with the Membership Program.

## V. Operation and Management of the Reservation System.

5.1  By execution of this Agreement, the Developer, Members Association and Club Manager hereby acknowledge that the Program Manager has all of the rights and duties with regard to the reservation of use rights by Members at the Club and at other Member Clubs or Associated Clubs, for the purpose of implementing the reservation restrictions by virtue of and as outlined in the Membership Program Documents. The Parties agree that the Program Manager's rights, duties and obligations as set forth in this Agreement are exclusive to the Program Manager, and the Program Manager hereby agrees to perform all such duties and obligations.

5.2  The Program Manager shall have the right to adopt and amend those portions of the Membership Program Documents which the Program Manager, in its sole discretion, determines are necessary or desirable to amend from time to time in order to operate and manage the Membership Program and/or Reservation System. The Membership Program Documents will only be adopted or amended in a manner that in the Program Manager's reasonable business judgment will be for the principal purpose of improving upon the quality and operation of the Membership Program and/or Reservation System and furthering the collective enjoyment of the Membership Program by present and future Members (including Associate Members) as a whole.  The Developer, Members Association and Club Manager agree that each Member's use of a Residence at his or her Home Club and the participation of each Member in the Membership Program shall be governed by the provisions of the Membership Program Documents as adopted and amended from time to time by the Program Manager.

5.3  The Developer, Members Association and Club Manager agree that the Program Manager shall have the right pursuant to the Reservation Procedures to reserve any unreserved use of Residences for its own promotional use, rental for its own account or any other purpose as the Program Manager determines in its sole discretion.  In return, the Program Manager agrees to make available to the Members Association that portion of such unreserved usage verified by the Club Manager as being reasonably necessary to perform additional maintenance of the Residences.

7

5.4  The Developer, Members Association and Club Manager acknowledge and agree that all personal and intellectual property related to the Program Manager's operation of the Reservation System for Residences at the Club, including, but not limited to, any and all computer hardware and software, is and always shall be the personal property of the Program Manager.   In the event that this Agreement is terminated, irrespective of whether the termination is voluntary or involuntary and irrespective of the cause of such termination, the Program Manager shall continue to own and control the Reservation System, subject to, and in accordance with applicable law.

5.5  By execution of this Agreement, the Developer, Members Association and Club Manager hereby acknowledge that the Program Manager is responsible for exercising all of the rights and duties associated with the affiliation of Residences at the Club with any other program which provides use rights to Members at various locations through exchange of use rights or other means, and neither the Developer, Members Association nor Club Manager shall affiliate or attempt to affiliate such Residences with any such program other than as directed and approved by the Program Manager. The Program Manager shall have the right, but not the obligation, to manage all such use rights made through any such program on behalf of Members at the Club in coordination with the provider of such other use program.

## VI.  Assessments, Collections and Transaction Costs.

6.1  The Program Manager shall have the responsibility for providing the Members Association and Club Manager with notice of its total proposed Membership Program Dues assessment for the Club for the upcoming operating year at least ninety (90) days prior to the Members Association's annual meeting.  In accordance with the Residence Documents, costs and expenses incurred by the Program Manager in connection with the operation of the Reservation System and the delivery of other Membership Program services and benefits shall be assessed by the Program Manager as Membership Program Dues to each Member and/or Member Resort based upon a reasonably prorated formula, together with a reasonable fee to the Program Manager which will contain a reasonable profit factor. Any extraordinary or special costs and expenses incurred by the Program Manager with respect to a given Member, group of Members or Member Club, may be assessed by the Program Manager only to the affected Member, group of Members or Member Resort as a portion of their Membership Program Dues. The Developer, Members Association, and Club Manager are not entitled to approve increases in Membership Program Dues assessments; however, the Program Manager agrees that in no event shall the amount of Membership Program Dues assessed to the Club per Member in a given calendar year exceed one hundred twenty percent (120%) of the Dues assessed to the Club per Member in the previous calendar year (i.e., a twenty percent (20%) increase) on a cumulative basis (e.g., if there is no increase in one year, then the increase in the following year may be forty percent (40%).

6.2  As provided in Section 3.2a of Article III above, this Agreement, including the rights and obligations set forth herein, shall constitute an appurtenance to and obligation of ownership of a Residence Interest at the Club.  The Members Association shall be liable to the Program Manager for all Membership Program Dues assessed hereunder; however, the Members Association may, in accordance with the Residence Documents for the Club, assess and collect from each Member that portion of the Membership Program Dues attributable to such Member.  The Members Association agrees that it shall pay to the Program Manager an

amount equal to all the Membership Program Dues assessed against Members for a given year by February 28th (or such other reasonable date established by the Program Manager) of that year, whether or not the Members Association has actually been successful in collecting such amount from the Members by such date.

6.3  The Developer, Members Association and Club Manager agree to use their best efforts to annually assess and collect all amounts due from Members for the maintenance and operation of the Club, as required by the Residence Documents. All Membership Program Dues owed to the Program Manager from Members shall be assessed and collected by the Members Association and the Club Manager with such amounts. Membership Program Dues shall be remitted to the Program Manager by the Members Association on at least a weekly basis (or such other reasonable periodic basis established by the Program Manger) as collected; and in any event, pursuant to Section 6.2 above, shall be paid in full to the Club Manager by the Members Association no later than February 28th (or such other reasonable periodic basis established by the Program Manger) of each year.

6.4  The Developer, Members Association and Club Manager acknowledge and agree that any Member making a reservation pursuant to the Reservation Procedures, other than a reservation by a Member to use a Residence at the Club as part of the Member's Reserved Allocation, shall be personally liable for any transaction charges assessed to the Member by the Program Manager from time to time as set forth in the Reservation Procedures.

6.5  A Member shall only be permitted to use a reservation pursuant to the Reservation Procedures if all common assessments, taxes and other charges attributable to the applicable Residence Interest for the year for which the reservation is requested have been paid in full. In the event the Members Association has not yet assessed such amounts to become due, then, as a condition to acceptance by the Program Manager of the reservation request, the Member may be required to remit to the Program Manager an amount equal to the estimated amounts to become due, as determined by the Program Manager after consultation with the Club Manager. All such monies shall be held by the Program Manager for the benefit of the Members Association and/or the Member as required by applicable law. Any interest earned on such funds will be paid to the Members Association, and, in no event, will it be due and payable to the Member. In the event the amount remitted to the Program Manager for the estimated amounts due is in excess of the actual amounts due, the excess amount shall be returned to the Member or applied to the following year's common assessments taxes, at the Program Manager's sole discretion. In the event the amount remitted to the Program Manager is less than the actual amounts due, the Member shall remain liable for the deficiency and in no event shall be forgiven for said deficiency. The Members Association agrees, however, not to exercise any "lock-out" remedy it may have pursuant to applicable law and/or the Residence Documents, against any Member with respect to any deficiency which may exist between actual amounts assessed to the Member for a given calendar year, and the estimated amounts for that calendar year actually collected by Program Manager and to the Members Association.

### VII.  Other Member Club and Associated Clubs.

7.1  In the event the Program Manager affiliates one or more additional Member Clubs or Associated Clubs with the Membership Program, the agreement executed to effect such affiliation shall, subject to applicable law, contain substantially the same terms and



JAN.11.2001   4:22PM   MVCI LEGAL DEPARTMEN                          NO.322   P.13/23

conditions as this Agreement in all material respects under the circumstances as pertaining to each such additional Member Club or Associate Club.

7.2    The Parties agree that the Program Manager shall have the following rights with respect to the addition of locations as Member Clubs or Associated Clubs:

a.    The Program Manager may, in its sole discretion, elect to affiliate other locations with the Membership Program as Member Clubs or Associated Clubs from time to time. Neither the Developer, Members Association, nor Club Manager shall be entitled to participate in or consent to the Program Manager's decision in this regard. The Developer, Members Association and the Club Manager acknowledge and understand that in the event other locations are affiliated with the Membership Program, r the addition of accommodations and facilities will result in the addition of new Members and, who, subject to the Allocation for each respective Member, will compete with existing Members and/or Associate Members in making reservations for the use of available accommodations and facilities within the Membership Program, including Residences at the subject Club.

b.    The Program Manager may, in its sole discretion, create a separate membership program, develop individual resort properties as residential, transient or other use, or enter into management agreements with resort properties without the approval of the Developer, Members Association or Club Manager; and the Club Manager is under no obligation to affiliate with the Membership Program any specific location.

7.3 The Parties agree that any deletion of Member Clubs and/or Associated Clubs from the Membership Program shall be governed by the following:

a.    In the event of a deletion of any Member Club or Associated Club that results in accommodations or facilities of such Member Club or Associated Club being unavailable for use by Members and/or, Associate Members, the Program Manager shall notify all Members and Associate Members, with confirmed reservations at the applicable Member Club or Associated Club of such unavailability of use within thirty (30) days after the related event of casualty, eminent domain action or automatic deletion.

b.    The Program Manager may, in its sole discretion, delete an entire existing Member Club or Associated Club from the Membership Program due to casualty where any of the affected accommodations or facilities are not reconstructed or replaced. With respect to casualty, subject to applicable law the Parties further agree that:

(1)    the Members Association and Club Manager shall obtain and maintain casualty insurance as to all accommodations, facilities and furnishings located upon the Club in amounts required by applicable law and/or the Residence Documents. The Program Manager shall not be liable for any costs associated with obtaining or maintaining such insurance.

(2)    any insurance proceeds resulting from a casualty at the Club shall be applied to the replacement or acquisition of additional similar accommodations or facilities.

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
127 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY

(3)    any replacement of accommodations or facilities of the Club due to casualty shall be made so as to provide Owners with an opportunity to enjoy a substantially similar experience as was available with the deleted accommodations or facilities, as determined by the Program Manager in its sole discretion. In determining whether the replacement accommodations and facilities will provide a substantially similar experience, the Program Manager shall consider all relevant factors, including, but not limited to, some or all of the following: size, capacity, furnishings, maintenance costs, location (geographic, topographic and scenic), demand and availability for use. The Program Manager reserves the right, in its sole discretion, to reject replacement accommodations and facilities that do not meet its affiliation criteria including the high standards of quality and customer service established by the Program Manager for all Member Clubs or Associated Clubs from time to time.

c.    The Program Manager may, in its sole discretion, delete existing Member Clubs or Associated Clubs from the Membership Program where an eminent domain action has taken place and where any of the affected accommodations or facilities are not replaced. With respect to any such eminent domain action, subject to applicable law, the Parties further agree as follows:

(1)    in the event of a taking of all or a portion of the accommodations and facilities of a Member Club or Associated Club by eminent domain, the Developer, Members Association and the Club Manager agree that any proceeds resulting from such taking shall be applied, with the prior express written approval of the Program Manager, to the replacement or acquisition of additional similar accommodations or facilities.

(2)    any replacement of accommodations or facilities due to a taking by eminent domain shall be made upon the same basis as replacements made due to casualty as set forth above.

d.    The Program Manager may, in its sole discretion, delete an existing Member Club or Associated Club pursuant to the specific termination rights contained in the applicable agreement pursuant to which the location became affiliated with the Membership Program. A Member Club or Associated Club will also be automatically deleted from the Membership Program upon the expiration or earlier termination of the term of its fractional ownership plan, if any, and/or other similar plan for shared ownership and/or use of Residences as set forth in the applicable Residence Documents.

e.    During any reconstruction or replacement period, Members may temporarily compete for available accommodations on a greater than one-to-one purchaser to accommodation ratio. If available, the Members Association and Club Manager shall acquire business interruption insurance for securing replacement accommodations or facilities during any reconstruction, replacement or acquisition period.

f.    The Program Manager may delete an Associated Club from the Membership Program at any time, in its sole discretion in accordance with the terms of the applicable agreement pursuant to which the Associated Club became affiliated with the Membership Program.

g.    In the event that a Member Club or Associated Club is deleted from the Membership Program, all Members or Associate Members who own Residence

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
128 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY

JAN.11.2001   4:23PM   MVCI LEGAL DEPARTMEN                    NO.322   P.15/23

Interests at the deleted location will also be deleted from the Membership Program and will not be able to make reservations at other Member Clubs or Associated Clubs; however, they will continue to have reservation rights in the location where he or she owns a Residence Interest in accordance with the terms of the Residence Documents.

7.4 While the Program Manager does not currently intend to substitute new locations for existing Member Clubs, the Program Manager reserves the right to exercise substitution rights, from time to time, in accordance with applicable law.

7.5 The Developer, Members Association and Club Manager understand and acknowledge that the accommodations and facilities of Associated Clubs are voluntarily affiliated with the Membership Program and there is no guarantee that accommodations and facilities at an Associated Club will ever be available for reservation or use by Members.

### VIII. Membership Program Marks and Membership Program Materials.

8.1. The Program Manager and its affiliates and subsidiaries are the owners of all rights in the Membership Program Marks. Neither the Members Association nor the Members have any license to use or other interest in the Membership Program Marks. The Developer and/or the Club Manager may identify the Club as a Ritz-Carlton Club location and part of the Membership Program until such time as the Program Manager, in its sole discretion, determines otherwise.

8.2 The Developer, Members Association and Club Manager acknowledge that:

a. the Program Manager has the right to exclude others from using the Membership Program Marks and Membership Program Materials and any variant or combination of said marks or materials determined by the Program Manager to be confusingly similar to the Membership Program Marks or Membership Program Materials;

b. the Program Manager has the right to control the use of the Membership Program Marks and Membership Program Materials in connection with the Membership Program; and

c. all uses of the Membership Program Marks and Membership Program Materials inure exclusively to the benefit of the Program Manager.

8.3 The Developer and Club Manager may use the Membership Program Marks and Membership Program Materials only with prior written approval from the Program Manager and in connection with any materials furnished from time to time by the Program Manager and only for the sole purpose of promoting the Membership Program. Said Parties shall comply with all requests of the Program Manager with respect to the appearance and use of the Membership Program Marks and Membership Program Materials. Said Parties agree to promptly submit one copy of all printed material which will use any of the Membership Program Marks or all or a portion of any Membership Program Materials to the Program Manager for inspection and approval in advance of use, which approval may be withheld or conditioned by the Program Manager in its sole and absolute discretion.

Case No. 1:16-cv-01301-PAB-GPG   Document 250-8   filed 05/15/18   USDC Colorado   pg 130
of 147
CASE 0:12-cv-03093-DSD-JJK   Document 49-8   Filed 05/10/13   Page 57 of 74

8.4    In the event Program Manager, in its sole discretion, provides written notice to the Developer and/or the Club Manager that it shall no longer be permitted to use Membership Program Marks, each Party notified shall immediately take steps to cease all use of the marks(s) identified in Program Manager's notice and shall:

(a)    immediately remove all signs containing the Membership Program Marks from the Club, and from any off-site location;

(b)    immediately destroy all stationery, descriptive literature or printed or written matter bearing the Membership Program Marks;

(c)    immediately cease and desist from using the Membership Program Marks (or any variation thereof) orally or in writing;

(d)    take immediate action to effect changes to any and all documents of the Developer and/or the Club Manager that reflect the Membership Program Mark(s) to eliminate the use of such mark(s) as soon as possible, but in any event, within three (3) months.

The provisions of this Section 8.4 may be enforced by any remedy at law or equity, including mandatory and/or prohibitory injunctions by the Program Manager against the Members Association, the Members, the Developer and/or Management Company.

## IX.   Term, Early Termination and Remedies.

9.1.    This Agreement shall have an initial term commencing on the Effective Date and terminating five (5) years from December 31st of the first year that the Club is operational and Residences are available for occupancy for any portion of the year.   Upon the expiration of said initial five (5) year period, this Agreement shall automatically renew for successive periods of five (5) years each until or unless terminated by a vote of not less than 51% of the votes entitled to be cast by Members in the Members Association.  Under no circumstances shall the Members Association be authorized to terminate this Agreement without such vote.   Program Manager may terminate this Agreement at the end of the initial term or any renewal term by giving written notice to the Members Association no later than ninety (90) days prior to the end of any such initial term or subsequent renewal term. Notwithstanding the foregoing, this Agreement may otherwise be terminated as provided for below in this Article IX.

9.2 Termination of this Agreement and the Club no longer being affiliated with the Membership Program can occur as follows:

a.    This Agreement will automatically terminate upon:

(1)    the declaration of bankruptcy or insolvency of the Developer, Members Association or Club Manager according to law or if any general assignment shall be made of the Developer's, Members Association's or Club Manager's property for the benefit of creditors; provided, however, the Program Manager shall have the

JAN.11.2001   4:23PM   MVCI LEGAL DEPARTMEN                    NO.322   P.17/23

right, in its sole discretion, to continue the Agreement as to the Parties that have not been declared bankrupt or insolvent or made the subject of a general assignment for the benefit of creditors or during the pendency of such actions; or

        (2)    the deletion of the Club in accordance with Article VII above.

b.    The Parties may terminate this Agreement:

        (1)    by the mutual written agreement of all of the Parties, effective upon the date agreed to by all Parties; or

        (2)    in the event of a material breach of any of the terms, conditions, covenants, representations or warranties contained in this Agreement without the breaching Party curing the asserted breach to the reasonable satisfaction of the Party giving such notice within thirty (30) days of the date of written notice to the breaching Party stating the grounds for such termination; or

        (3)    in the event the Members Association votes to terminate this Agreement pursuant to a majority vote of the non-Developer Members to be conducted every five (5) years at a meeting of the Members Association at which (notwithstanding any provision of the Bylaws to the contrary) fifty percent (50%) or more of the voting power of the Members Association residing in Owners other than Developer is present, in person or by proxy. Any such meeting of the Members Association shall be considered a special meeting of the Members Association and shall only be held of requested by the Board or the Owners, as provided for in the Bylaws of the Members Association. Any special meeting of the Members Association called to consider a termination of this Agreement must be held within thirty (30) days of any five (5) year anniversary date of the original recording of the Declaration.

c.    The Program Manager may terminate or suspend its participation in this Agreement, immediately upon written notice to the Developer, Members Association and Club Manager, in the event that the Program Manager determines, in its sole discretion, that the Developer, Members Association and/or Club Manager have failed to manage, operate and maintain the Club in a manner consistent with the standards of quality and customer service established by the Program Manager from time to time, including, but not limited to, the employment or termination by the Developer and/or Members Association of a management company without the Program Manager's consent, as addressed at Section 4.5 of Article IV hereinabove.

8.3 Any Party's exercise of its right to terminate pursuant to this Agreement shall in no way limit or impair its right to seek other legal or equitable remedies in connection with a breach by any other Party.

8.4 Upon termination or of this Agreement, the following events shall occur:

a.    The Developer shall immediately discontinue the offering of Residence Interests with appurtenant memberships in the Membership Program to prospective purchasers at the Club.

b.      The Developer, Members Association and Club Manager shall immediately cease using and thereafter abstain from using all the Membership Program Marks and any name or mark similar thereto and all Membership Program Materials including, but not limited to, all of the Program Manager's personal and intellectual property utilized in connection with the operation and management of the Membership Program, except as specifically authorized by this Agreement. No property right in or privilege to use the Membership Program Marks or Membership Program Materials is created by this Agreement that will extend beyond the expiration or termination of this Agreement, except as specifically permitted by this Agreement. Failure to abstain from using the Membership Program Marks or Membership Program Materials following termination of this Agreement shall entitle the Program Manager to receive liquidated damages from the offending Party in the amount of One Thousand Dollars ($1,000) per day in addition to any other injunctive or equitable relief available to the Program Manager.

c.      The Program Manager shall honor all reservations and reservation privileges of Members or Associate Members from other Member Clubs or Associated Clubs reserving time at the subject Club that are confirmed or accrued prior to termination or suspension and shall honor all reservations and reservation privileges of Owners at the Club reserving time at other Member Clubs or Associated Clubs that are confirmed or accrued prior to termination of this Agreement. The Developer, Members Association and Club Manager shall honor all reservations and reservation privileges of Members or Associate Members from other Member Clubs or Associated Clubs reserving time at the Club that are confirmed or accrued prior to termination. This requirement shall survive the termination of this Agreement.

9.5  In the event that the Developer, Members Association and/or Club Manager fails to perform its duties under this Agreement to the extent that a Member, Associate Member or other authorized person with a confirmed reservation at the Resort is wrongfully denied access to a Residence at the subject Club, then the Developer, Members Association and/or Club Manager shall immediately correct such denial of access at its own expense.

9.6  Each Party acknowledges that, unless specifically stated otherwise in this Agreement, damages cannot adequately compensate the other Parties for a breach of any of the provisions of this Agreement, and therefore the Parties agree that each Party shall be entitled to a remedy of specific performance or injunctive relief, as appropriate, in the event of a breach or threatened breach of any such provisions by any other Party, in addition to any other appropriate legal or equitable remedies.

9.7  Each Party agrees to indemnify, defend and hold harmless the other Parties from and against any and all claims, demands, obligations, deficiencies, judgments, damages, suits, losses, penalties, expenses, costs (including attorneys' fees at the trial and appellate levels) and liabilities of any kind, type or nature whatsoever directly or indirectly resulting from, arising out of or in connection with this Agreement or the operation of its business as a result of any acts or omissions by it or any of its directors, officers, partners, employees, representatives, agents, brokers, salesmen or associates.

## X. Miscellaneous

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
132 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY

10.1 This Agreement shall become effective on the date it is executed by all Parties and shall continue in force and effect until its scheduled termination or until such time as it is otherwise terminated pursuant to Article IX above.

10.2 The Program Manager reserves the right, and the Developer, Members Association and Club Manager acknowledge the Program Manager's right, to assign its rights and duties under this Agreement. No other Party may assign its rights and duties under this Agreement without the prior written consent of the Program Manager, which it may give or withhold in its sole discretion.

10.3 Except as may be otherwise provided herein, any notice, demand, request, consent, approval or communication under this Agreement shall be in writing and shall be deemed duly given or made: (a) when deposited, postage prepaid, in the United States mail, certified or registered mail with a return receipt requested, addressed to the Party at the address shown above; (b) when delivered personally to the Party at the address specified above; or (c) when deposited with a reliable overnight courier service, fee prepaid, with receipt of confirmation requested, addressed to the Party as specified above. A Party may designate a different address for receiving notices hereunder by giving notice thereof to the other Parties pursuant to this Section 10.3.

10.4 The headings in this Agreement are intended solely for convenience of reference and shall be given no effect in the construction or interpretation of this Agreement. All references in this Agreement to particular recitals, articles, sections and subsections are references to recitals, articles, sections and subsections of this Agreement.

10.5 In the event that any clause or provision of this Agreement is held to be invalid by any court of competent jurisdiction, the invalidity of such clause or provision shall not affect any other provision of this Agreement. Failure of any Party to insist on strict compliance with the provisions of this Agreement shall not constitute waiver of that Party's right to demand later compliance with the same or other provisions of this Agreement.

10.6 This Agreement constitutes the entire understanding and agreement among the Parties concerning the subject matter of this Agreement. All understandings between the Parties are merged into this Agreement, and there are no representations, warranties, covenants, obligations, understandings or agreements, oral or otherwise, in relation thereto between the Parties other than those incorporated herein.

10.7 This Agreement shall be governed by, and shall be construed in accordance with, the laws of the State of Florida. **THE PARTIES HEREBY WAIVE ANY RIGHT THEY MAY HAVE UNDER ANY APPLICABLE LAW TO A TRIAL BY JURY WITH RESPECT TO ANY SUIT OR LEGAL ACTION WHICH MAY BE COMMENCED BY OR AGAINST THE OTHER CONCERNING THE INTERPRETATION, CONSTRUCTION, VALIDITY, ENFORCEMENT OR PERFORMANCE OF THIS AGREEMENT OR ANY OTHER AGREEMENT OR INSTRUMENT EXECUTED IN CONNECTION WITH THIS AGREEMENT.** In the event any such suit or legal action is commenced by either Party, the other Party hereby agrees, consents and submits to the personal jurisdiction of the Circuit Court of the Ninth Judicial Circuit of Florida in and for Orange County, Florida, with respect to such suit or legal action, and each Party also hereby consents and submits to and agrees that venue in any such suit or legal action is proper in said court and county, and each Party hereby waives any and all

450494 01/11/2001 03:02P CONDO DE DAVIS SILVI
133 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY

JAN.11.2001  4:24PM  NYCI LEGAL DEPARTMEN  NO.322  P.20/23

personal rights under applicable law or in equity to object to the jurisdiction and venue in said court and county. Such jurisdiction and venue shall be exclusive of any other jurisdiction and venue.

10.8 In the event any Party initiates action to enforce its rights hereunder, the prevailing Party shall recover from the non-prevailing Party its reasonable expenses, court costs and reasonable attorneys' fees, whether suit be brought or not. As used herein, expenses, court costs and attorneys' fees include expenses, court costs and attorneys' fees incurred in any appellate proceeding. All such expenses shall bear interest at the highest rate allowable under the laws of the State of Florida from the date the prevailing Party pays such expenses until the date the non-prevailing Party repays such expenses. Expenses incurred in enforcing this Section 10.8 shall be covered by this provision.

10.9 This Agreement and all of its provisions shall be binding upon and inure to the benefit of the Parties and their successors and permitted assigns. In no event shall the terms and conditions of this Agreement be deemed in any way to inure to the benefit of any person or party not expressly made a Party hereto except for successors or permitted assigns to Parties hereto.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as of the date set forth above.

WITNESSES

Print Name: _____

Print Name: Lynette Manning

**PROGRAM MANAGER:**

The Ritz-Carlton Travel Company, L.L.C
a Delaware limited liability company

By: The Ritz-Carlton Development
Company, Inc., Sole Member

By: _____
Print Name: Stephen Bradley
As Its: Vice President

WITNESSES

Print Name: Dorothy Langford

Print Name: _____

**DEVELOPER**

The Ritz-Carlton Development Company,
Inc.

By: _____
Print Name: William F. Minnock, III
As Its: Vice President

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
134 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY

NO.322    P.21/23

JAN.11.2001   4:24PM   MVCI LEGAL DEPARTMEN

WITNESSES

MEMBERS ASSOCIATION:

Aspen Highlands Condominium
Association, Inc.

By: _____
Print Name: William J. Love
As its: _____ President _____

Print Name: _Pamela D Reyes_

Print Name: _____

430454 01/11/2001 03:02P CONDO DE DAVIS SILVI
135 of 147 R 738.00 D 0.00 N 0.00 PITKIN COUNTY

JAN.11.2001   4:24PM   MVCI LEGAL DEPARTMEN                    NO.322   P.22/23

WITNESSES

Print Name: _____

Print Name: _____ JOYCE S. COBIA

CLUB MANAGER:

The Ritz-Carlton Club Management
Company, L.L.C.
a Delaware limited liability company

By: The Ritz-Carlton Club Development
Company, Inc., Sole Member

By: _____
Print Name: _____ Joseph F. Scalo
As Its: _____ Vice President

Y:\Legal Shared\Hood\Aspen Highlands\AHV Affiliation Agr oln 3.25.00ph.doc

490454 01/11/2001 03:02P CONDO DE DAVIS SILVI
136 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY

19

JAN.11.2001   4:24PM   MVCI LEGAL DEPARTMEN

NO.322   P.23/23

## EXHIBIT A

THE RITZ-CARLTON CLUB

480454 01/11/2001 03:02P CONDO DE DAVIS SILVI
137 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY

1

## EXHIBIT A



THE RITZ-CARLTON CLUB

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
138 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY

**EXHIBIT G**
to Declaration of Condominium for Aspen Highlands Condominiums

THE RITZ-CARLTON CLUB, ASPEN HIGHLANDS
MEMBERSHIP CALENDAR

See attached.



480454 01/11/2001 03:02P CONDO DE DAVIS SILVI
139 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY

# EXHIBIT G-1 TO THE
## DECLARATION OF CONDOMINIUM FOR
## ASPEN HIGHLANDS CONDOMINIUMS

The Ritz-Carlton Club, Aspen Highlands
MULTIPLE SEASON CALENDAR-CONSOLIDATED
Residence Interests

| Res. Int. No. | 2000 | 2001 | Res. Int. No. | 2001 | 2002 | Res. Int. No. | 2002 | 2003 | Res. Int. No. | 2003 | 2004 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 7-Oct-00 | 14-Oct-00 | | 6-Oct-01 | 13-Oct-01 | | 5-Oct-02 | 12-Oct-02 | | 4-Oct-03 | 11-Oct-03 |
| | 14-Oct-00 | 21-Oct-00 | | 13-Oct-01 | 20-Oct-01 | | 12-Oct-02 | 19-Oct-02 | | 11-Oct-03 | 18-Oct-03 |
| | 21-Oct-00 | 28-Oct-00 | | 20-Oct-01 | 27-Oct-01 | | 19-Oct-02 | 26-Oct-02 | | 18-Oct-03 | 25-Oct-03 |
| | 28-Oct-00 | 4-Nov-00 | | 27-Oct-01 | 3-Nov-01 | | 26-Oct-02 | 2-Nov-02 | | 25-Oct-03 | 1-Nov-03 |
| | 4-Nov-00 | 11-Nov-00 | | 3-Nov-01 | 10-Nov-01 | | 2-Nov-02 | 9-Nov-02 | | 1-Nov-03 | 8-Nov-03 |
| | 11-Nov-00 | 18-Nov-00 | | 10-Nov-01 | 17-Nov-01 | | 9-Nov-02 | 16-Nov-02 | | 8-Nov-03 | 15-Nov-03 |
| | 18-Nov-00 | 25-Nov-00 | | 17-Nov-01 | 24-Nov-01 | | 16-Nov-02 | 23-Nov-02 | | 15-Nov-03 | 22-Nov-03 |
| | 25-Nov-00 | 2-Dec-00 | | 24-Nov-01 | 1-Dec-01 | | 23-Nov-02 | 30-Nov-02 | | 22-Nov-03 | 29-Nov-03 |
| | 2-Dec-00 | 9-Dec-00 | | 1-Dec-01 | 8-Dec-01 | | 30-Nov-02 | 7-Dec-02 | | 29-Nov-03 | 6-Dec-03 |
| 1 | 9-Dec-00 | 16-Dec-00 | 12 | 8-Dec-01 | 15-Dec-01 | 6 | 7-Dec-02 | 14-Dec-02 | 11 | 6-Dec-03 | 13-Dec-03 |
| 1 | 16-Dec-00 | 23-Dec-00 | 1 | 15-Dec-01 | 22-Dec-01 | 6 | 14-Dec-02 | 21-Dec-02 | 6 | 13-Dec-03 | 20-Dec-03 |
| 7 | 23-Dec-00 | 30-Dec-00 | 1 | 22-Dec-01 | 29-Dec-01 | 12 | 21-Dec-02 | 28-Dec-02 | 6 | 20-Dec-03 | 27-Dec-03 |
| 2 | 30-Dec-00 | 6-Jan-01 | 7 | 29-Dec-01 | 5-Jan-02 | 1 | 28-Dec-02 | 4-Jan-03 | 12 | 27-Dec-03 | 3-Jan-04 |
| 2 | 6-Jan-01 | 13-Jan-01 | 2 | 5-Jan-02 | 12-Jan-02 | 1 | 4-Jan-03 | 11-Jan-03 | 1 | 3-Jan-04 | 10-Jan-04 |
| 8 | 13-Jan-01 | 20-Jan-01 | 2 | 12-Jan-02 | 19-Jan-02 | 7 | 11-Jan-03 | 18-Jan-03 | 1 | 10-Jan-04 | 17-Jan-04 |
| 3 | 20-Jan-01 | 27-Jan-01 | 8 | 19-Jan-02 | 26-Jan-02 | 7 | 18-Jan-03 | 25-Jan-03 | 7 | 17-Jan-04 | 24-Jan-04 |
| 3 | 27-Jan-01 | 3-Feb-01 | 3 | 26-Jan-02 | 2-Feb-02 | 2 | 25-Jan-03 | 1-Feb-03 | 2 | 24-Jan-04 | 31-Jan-04 |
| 9 | 3-Feb-01 | 10-Feb-01 | 3 | 2-Feb-02 | 9-Feb-02 | 2 | 1-Feb-03 | 8-Feb-03 | 2 | 31-Jan-04 | 7-Feb-04 |
| 4 | 10-Feb-01 | 17-Feb-01 | 9 | 9-Feb-02 | 16-Feb-02 | 8 | 8-Feb-03 | 15-Feb-03 | 8 | 7-Feb-04 | 14-Feb-04 |
| 4 | 17-Feb-01 | 24-Feb-01 | 4 | 16-Feb-02 | 23-Feb-02 | 3 | 15-Feb-03 | 22-Feb-03 | 3 | 14-Feb-04 | 21-Feb-04 |
| 10 | 24-Feb-01 | 3-Mar-01 | 4 | 23-Feb-02 | 2-Mar-02 | 3 | 22-Feb-03 | 1-Mar-03 | 3 | 21-Feb-04 | 28-Feb-04 |
| 5 | 3-Mar-01 | 10-Mar-01 | 10 | 2-Mar-02 | 9-Mar-02 | 9 | 1-Mar-03 | 8-Mar-03 | 9 | 28-Feb-04 | 6-Mar-04 |
| 5 | 10-Mar-01 | 17-Mar-01 | 5 | 9-Mar-02 | 16-Mar-02 | 4 | 8-Mar-03 | 15-Mar-03 | 4 | 6-Mar-04 | 13-Mar-04 |
| 11 | 17-Mar-01 | 24-Mar-01 | 5 | 16-Mar-02 | 23-Mar-02 | 10 | 15-Mar-03 | 22-Mar-03 | 4 | 13-Mar-04 | 20-Mar-04 |
| 6 | 24-Mar-01 | 31-Mar-01 | 11 | 23-Mar-02 | 30-Mar-02 | 5 | 22-Mar-03 | 29-Mar-03 | 10 | 20-Mar-04 | 27-Mar-04 |
| 6 | 31-Mar-01 | 7-Apr-01 | 6 | 30-Mar-02 | 6-Apr-02 | 5 | 29-Mar-03 | 5-Apr-03 | 5 | 27-Mar-04 | 3-Apr-04 |
| 12 | 7-Apr-01 | 14-Apr-01 | 6 | 6-Apr-02 | 13-Apr-02 | 11 | 5-Apr-03 | 12-Apr-03 | 5 | 3-Apr-04 | 10-Apr-04 |
| | 14-Apr-01 | 21-Apr-01 | | 13-Apr-02 | 20-Apr-02 | | 12-Apr-03 | 19-Apr-03 | | 10-Apr-04 | 17-Apr-04 |
| | 21-Apr-01 | 28-Apr-01 | | 20-Apr-02 | 27-Apr-02 | | 19-Apr-03 | 26-Apr-03 | | 17-Apr-04 | 24-Apr-04 |
| | 28-Apr-01 | 5-May-01 | | 27-Apr-02 | 4-May-02 | | 26-Apr-03 | 3-May-03 | | 24-Apr-04 | 1-May-04 |
| | 5-May-01 | 12-May-01 | | 4-May-02 | 11-May-02 | | 3-May-03 | 10-May-03 | | 1-May-04 | 8-May-04 |
| | 12-May-01 | 19-May-01 | | 11-May-02 | 18-May-02 | | 10-May-03 | 17-May-03 | | 8-May-04 | 15-May-04 |
| | 19-May-01 | 26-May-01 | | 18-May-02 | 25-May-02 | | 17-May-03 | 24-May-03 | | 15-May-04 | 22-May-04 |
| | 26-May-01 | 2-Jun-01 | | 25-May-02 | 1-Jun-02 | | 24-May-03 | 31-May-03 | | 22-May-04 | 29-May-04 |
| 7 | 2-Jun-01 | 9-Jun-01 | 6 | 1-Jun-02 | 8-Jun-02 | 12 | 31-May-03 | 7-Jun-03 | 5 | 29-May-04 | 5-Jun-04 |
| 7 | 9-Jun-01 | 16-Jun-01 | 7 | 8-Jun-02 | 15-Jun-02 | 7 | 7-Jun-03 | 14-Jun-03 | 12 | 5-Jun-04 | 12-Jun-04 |
| 1 | 16-Jun-01 | 23-Jun-01 | 7 | 15-Jun-02 | 22-Jun-02 | 5 | 14-Jun-03 | 21-Jun-03 | 12 | 12-Jun-04 | 19-Jun-04 |
| 8 | 23-Jun-01 | 30-Jun-01 | 1 | 22-Jun-02 | 29-Jun-02 | 7 | 21-Jun-03 | 28-Jun-03 | 6 | 19-Jun-04 | 26-Jun-04 |
| 8 | 30-Jun-01 | 7-Jul-01 | 8 | 29-Jun-02 | 6-Jul-02 | 1 | 28-Jun-03 | 5-Jul-03 | 7 | 26-Jun-04 | 3-Jul-04 |
| 2 | 7-Jul-01 | 14-Jul-01 | 8 | 6-Jul-02 | 13-Jul-02 | 1 | 5-Jul-03 | 12-Jul-03 | 7 | 3-Jul-04 | 10-Jul-04 |
| 9 | 14-Jul-01 | 21-Jul-01 | 2 | 13-Jul-02 | 20-Jul-02 | 8 | 12-Jul-03 | 19-Jul-03 | 1 | 10-Jul-04 | 17-Jul-04 |
| 9 | 21-Jul-01 | 28-Jul-01 | 9 | 20-Jul-02 | 27-Jul-02 | 8 | 19-Jul-03 | 26-Jul-03 | 8 | 17-Jul-04 | 24-Jul-04 |
| 3 | 28-Jul-01 | 4-Aug-01 | 9 | 27-Jul-02 | 3-Aug-02 | 2 | 26-Jul-03 | 2-Aug-03 | 8 | 24-Jul-04 | 31-Jul-04 |
| 10 | 4-Aug-01 | 11-Aug-01 | 3 | 3-Aug-02 | 10-Aug-02 | 9 | 2-Aug-03 | 9-Aug-03 | 2 | 31-Jul-04 | 7-Aug-04 |
| 10 | 11-Aug-01 | 18-Aug-01 | 10 | 10-Aug-02 | 17-Aug-02 | 9 | 9-Aug-03 | 16-Aug-03 | 9 | 7-Aug-04 | 14-Aug-04 |
| 4 | 18-Aug-01 | 25-Aug-01 | 10 | 17-Aug-02 | 24-Aug-02 | 3 | 16-Aug-03 | 23-Aug-03 | 9 | 14-Aug-04 | 21-Aug-04 |
| 11 | 25-Aug-01 | 1-Sep-01 | 4 | 24-Aug-02 | 31-Aug-02 | 10 | 23-Aug-03 | 30-Aug-03 | 3 | 21-Aug-04 | 28-Aug-04 |
| 11 | 1-Sep-01 | 8-Sep-01 | 11 | 31-Aug-02 | 7-Sep-02 | 10 | 30-Aug-03 | 6-Sep-03 | 10 | 28-Aug-04 | 4-Sep-04 |
| 5 | 8-Sep-01 | 15-Sep-01 | 11 | 7-Sep-02 | 14-Sep-02 | 4 | 6-Sep-03 | 13-Sep-03 | 10 | 4-Sep-04 | 11-Sep-04 |
| 12 | 15-Sep-01 | 22-Sep-01 | 5 | 14-Sep-02 | 21-Sep-02 | 11 | 13-Sep-03 | 20-Sep-03 | 4 | 11-Sep-04 | 18-Sep-04 |
| 12 | 22-Sep-01 | 29-Sep-01 | 12 | 21-Sep-02 | 28-Sep-02 | 11 | 20-Sep-03 | 27-Sep-03 | 11 | 18-Sep-04 | 25-Sep-04 |
| 6 | 29-Sep-01 | 6-Oct-01 | 12 | 28-Sep-02 | 5-Oct-02 | 5 | 27-Sep-03 | 4-Oct-03 | 11 | 25-Sep-04 | 2-Oct-04 |

Residence Interest Numbers 1-6: Multiple Season Membership - Winter. Consists of fourteen (14) consecutive days of usage and occupancy in the winter season, seven (7) consecutive days of usage and occupancy in the summer season, and seven (7) floating days of usage and occupancy during other available time periods.

Residence Interest Numbers 7-12: Multiple Season Membership - Summer. Consists of fourteen (14) consecutive days of usage and occupancy in the summer season, seven (7) consecutive days of usage and occupancy in the winter season, and seven (7) floating days of usage and occupancy during other available time periods.

Note: Declarant is not the operator of Aspen Highlands Ski Area, and accordingly, cannot make any representations relating to the operations of such ski area and the opening and closing dates of the ski area. Further, Declarant does make any representations or warranties with respect to the snow condition for winter activities, including among other things, skiing and snowboarding, during the winter season, as that term is used herein.



EXHIBIT G-1 TO THE
DECLARATION OF CONDOMINIUM FOR
ASPEN HIGHLANDS CONDOMINIUMS

The Ritz-Carlton Club, Aspen Highlands
MULTIPLE SEASON CALENDAR-CONSOLIDATED
Residence Interests

| Residence Interest No. | Allocated Use Periods 5 | | Residence Interest No. | Allocated Use Periods 6 | | Residence Interest No. | Allocated Use Periods 7 | | Residence Interest No. | Allocated Use Periods 8 | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2004 | 2005 | | 2005 | 2006 | | 2006 | 2007 | | 2007 | 2008 |
| | 2-Oct-04 | 9-Oct-04 | | 1-Oct-05 | 8-Oct-05 | | 30-Sep-06 | 7-Oct-06 | | 29-Sep-07 | 6-Oct-07 |
| | 9-Oct-04 | 16-Oct-04 | | 8-Oct-05 | 15-Oct-05 | | 7-Oct-06 | 14-Oct-06 | | 6-Oct-07 | 13-Oct-07 |
| | 16-Oct-04 | 23-Oct-04 | | 15-Oct-05 | 22-Oct-05 | | 14-Oct-06 | 21-Oct-06 | | 13-Oct-07 | 20-Oct-07 |
| | 23-Oct-04 | 30-Oct-04 | | 22-Oct-05 | 29-Oct-05 | | 21-Oct-06 | 28-Oct-06 | | 20-Oct-07 | 27-Oct-07 |
| | 30-Oct-04 | 6-Nov-04 | | 29-Oct-05 | 5-Nov-05 | | 28-Oct-06 | 4-Nov-06 | | 27-Oct-07 | 3-Nov-07 |
| | 6-Nov-04 | 13-Nov-04 | | 5-Nov-05 | 12-Nov-05 | | 4-Nov-06 | 11-Nov-06 | | 3-Nov-07 | 10-Nov-07 |
| | 13-Nov-04 | 20-Nov-04 | | 12-Nov-05 | 19-Nov-05 | | 11-Nov-06 | 18-Nov-06 | | 10-Nov-07 | 17-Nov-07 |
| | 20-Nov-04 | 27-Nov-04 | | 19-Nov-05 | 26-Nov-05 | | 18-Nov-06 | 25-Nov-06 | | 17-Nov-07 | 24-Nov-07 |
| | 27-Nov-04 | 4-Dec-04 | | 26-Nov-05 | 3-Dec-05 | | 26-Nov-06 | 2-Dec-06 | | 24-Nov-07 | 1-Dec-07 |
| 5 | 4-Dec-04 | 11-Dec-04 | 10 | 3-Dec-05 | 10-Dec-05 | 4 | 2-Dec-06 | 9-Dec-06 | 9 | 1-Dec-07 | 8-Dec-07 |
| 5 | 11-Dec-04 | 18-Dec-04 | 5 | 10-Dec-05 | 17-Dec-05 | 4 | 9-Dec-06 | 16-Dec-06 | 4 | 8-Dec-07 | 15-Dec-07 |
| 11 | 18-Dec-04 | 25-Dec-04 | 5 | 17-Dec-05 | 24-Dec-05 | 10 | 16-Dec-06 | 23-Dec-06 | 4 | 15-Dec-07 | 22-Dec-07 |
| 6 | 25-Dec-04 | 1-Jan-05 | 11 | 24-Dec-05 | 31-Dec-05 | 5 | 23-Dec-06 | 30-Dec-06 | 10 | 22-Dec-07 | 29-Dec-07 |
| 8 | 1-Jan-05 | 8-Jan-05 | 6 | 31-Dec-05 | 7-Jan-06 | 5 | 30-Dec-06 | 6-Jan-07 | 5 | 29-Dec-07 | 5-Jan-08 |
| 12 | 8-Jan-05 | 15-Jan-05 | 6 | 7-Jan-06 | 14-Jan-06 | 11 | 6-Jan-07 | 13-Jan-07 | 5 | 5-Jan-08 | 12-Jan-08 |
| 1 | 15-Jan-05 | 22-Jan-05 | 12 | 14-Jan-06 | 21-Jan-06 | 6 | 13-Jan-07 | 20-Jan-07 | 11 | 12-Jan-08 | 19-Jan-08 |
| 1 | 22-Jan-05 | 29-Jan-05 | 1 | 21-Jan-06 | 28-Jan-06 | 6 | 20-Jan-07 | 27-Jan-07 | 5 | 19-Jan-08 | 26-Jan-08 |
| 7 | 29-Jan-05 | 5-Feb-05 | 1 | 28-Jan-06 | 4-Feb-06 | 12 | 27-Jan-07 | 3-Feb-07 | 6 | 26-Jan-08 | 2-Feb-08 |
| 7 | 5-Feb-05 | 12-Feb-05 | 7 | 4-Feb-06 | 11-Feb-06 | 1 | 3-Feb-07 | 10-Feb-07 | 12 | 2-Feb-08 | 9-Feb-08 |
| 2 | 12-Feb-05 | 19-Feb-05 | 7 | 11-Feb-06 | 18-Feb-06 | 1 | 10-Feb-07 | 17-Feb-07 | 1 | 9-Feb-08 | 16-Feb-08 |
| 8 | 19-Feb-05 | 26-Feb-05 | 7 | 18-Feb-06 | 25-Feb-06 | 7 | 17-Feb-07 | 24-Feb-07 | 1 | 16-Feb-08 | 23-Feb-08 |
| 3 | 26-Feb-05 | 5-Mar-05 | 3 | 25-Feb-06 | 4-Mar-06 | 2 | 24-Feb-07 | 3-Mar-07 | 7 | 23-Feb-08 | 1-Mar-08 |
| 9 | 5-Mar-05 | 12-Mar-05 | 3 | 4-Mar-06 | 11-Mar-06 | 2 | 3-Mar-07 | 10-Mar-07 | 2 | 1-Mar-08 | 8-Mar-08 |
| 9 | 12-Mar-05 | 19-Mar-05 | 3 | 11-Mar-06 | 18-Mar-06 | 8 | 10-Mar-07 | 17-Mar-07 | 2 | 8-Mar-08 | 15-Mar-08 |
| 4 | 19-Mar-05 | 26-Mar-05 | 9 | 18-Mar-06 | 25-Mar-06 | 3 | 17-Mar-07 | 24-Mar-07 | 8 | 15-Mar-08 | 22-Mar-08 |
| 4 | 26-Mar-05 | 2-Apr-05 | 4 | 25-Mar-06 | 1-Apr-06 | 3 | 24-Mar-07 | 31-Mar-07 | 3 | 22-Mar-08 | 29-Mar-08 |
| 10 | 2-Apr-05 | 9-Apr-05 | 4 | 1-Apr-06 | 8-Apr-06 | 9 | 31-Mar-07 | 7-Apr-07 | 3 | 29-Mar-08 | 5-Apr-08 |
| | 9-Apr-05 | 16-Apr-05 | | 8-Apr-06 | 15-Apr-06 | | 7-Apr-07 | 14-Apr-07 | | 5-Apr-08 | 12-Apr-08 |
| | 16-Apr-05 | 23-Apr-05 | | 15-Apr-06 | 22-Apr-06 | | 14-Apr-07 | 21-Apr-07 | | 12-Apr-08 | 19-Apr-08 |
| | 23-Apr-05 | 30-Apr-05 | | 22-Apr-06 | 29-Apr-06 | | 21-Apr-07 | 28-Apr-07 | | 19-Apr-08 | 26-Apr-08 |
| | 30-Apr-05 | 7-May-05 | | 29-Apr-06 | 6-May-06 | | 28-Apr-07 | 5-May-07 | | 26-Apr-08 | 3-May-08 |
| | 7-May-05 | 14-May-05 | | 6-May-06 | 13-May-06 | | 5-May-07 | 12-May-07 | | 3-May-08 | 10-May-08 |
| | 14-May-05 | 21-May-05 | | 13-May-06 | 20-May-06 | | 12-May-07 | 19-May-07 | | 10-May-08 | 17-May-08 |
| | 21-May-05 | 28-May-05 | | 20-May-06 | 27-May-06 | | 19-May-07 | 26-May-07 | | 17-May-08 | 24-May-08 |
| 11 | 28-May-05 | 4-Jun-05 | 4 | 27-May-06 | 3-Jun-06 | 10 | 26-May-07 | 2-Jun-07 | 3 | 24-May-08 | 31-May-08 |
| 11 | 4-Jun-05 | 11-Jun-05 | 11 | 3-Jun-06 | 10-Jun-06 | 10 | 2-Jun-07 | 9-Jun-07 | 10 | 31-May-08 | 7-Jun-08 |
| 5 | 11-Jun-05 | 18-Jun-05 | 11 | 10-Jun-06 | 17-Jun-06 | 4 | 9-Jun-07 | 16-Jun-07 | 10 | 7-Jun-08 | 14-Jun-08 |
| 12 | 18-Jun-05 | 25-Jun-05 | 5 | 17-Jun-06 | 24-Jun-06 | 11 | 16-Jun-07 | 23-Jun-07 | 4 | 14-Jun-08 | 21-Jun-08 |
| 12 | 25-Jun-05 | 2-Jul-05 | 12 | 24-Jun-06 | 1-Jul-06 | 11 | 23-Jun-07 | 30-Jun-07 | 11 | 21-Jun-08 | 28-Jun-08 |
| 6 | 2-Jul-05 | 9-Jul-05 | 12 | 1-Jul-06 | 8-Jul-06 | 5 | 30-Jun-07 | 7-Jul-07 | 11 | 28-Jun-08 | 5-Jul-08 |
| 7 | 9-Jul-05 | 16-Jul-05 | 6 | 8-Jul-06 | 15-Jul-06 | 12 | 7-Jul-07 | 14-Jul-07 | 5 | 5-Jul-08 | 12-Jul-08 |
| 1 | 16-Jul-05 | 23-Jul-05 | 7 | 15-Jul-06 | 22-Jul-06 | 12 | 14-Jul-07 | 21-Jul-07 | 12 | 12-Jul-08 | 19-Jul-08 |
| 7 | 23-Jul-05 | 30-Jul-05 | 7 | 22-Jul-06 | 29-Jul-06 | 6 | 21-Jul-07 | 28-Jul-07 | 12 | 19-Jul-08 | 26-Jul-08 |
| 8 | 30-Jul-05 | 6-Aug-05 | 1 | 29-Jul-06 | 5-Aug-06 | 7 | 28-Jul-07 | 4-Aug-07 | 6 | 26-Jul-08 | 2-Aug-08 |
| 8 | 6-Aug-05 | 13-Aug-05 | 8 | 5-Aug-06 | 12-Aug-06 | 7 | 4-Aug-07 | 11-Aug-07 | 7 | 2-Aug-08 | 9-Aug-08 |
| 2 | 13-Aug-05 | 20-Aug-05 | 8 | 12-Aug-06 | 19-Aug-06 | 1 | 11-Aug-07 | 18-Aug-07 | 7 | 9-Aug-08 | 16-Aug-08 |
| 9 | 20-Aug-05 | 27-Aug-05 | 2 | 19-Aug-06 | 26-Aug-06 | 8 | 18-Aug-07 | 25-Aug-07 | 1 | 16-Aug-08 | 23-Aug-08 |
| 9 | 27-Aug-05 | 3-Sep-05 | 9 | 26-Aug-06 | 2-Sep-06 | 8 | 25-Aug-07 | 1-Sep-07 | 8 | 23-Aug-08 | 30-Aug-08 |
| 3 | 3-Sep-05 | 10-Sep-05 | 9 | 2-Sep-06 | 9-Sep-06 | 2 | 1-Sep-07 | 8-Sep-07 | 8 | 30-Aug-08 | 6-Sep-08 |
| 10 | 10-Sep-05 | 17-Sep-05 | 3 | 9-Sep-06 | 16-Sep-06 | 9 | 8-Sep-07 | 15-Sep-07 | 2 | 6-Sep-08 | 13-Sep-08 |
| 10 | 17-Sep-05 | 24-Sep-05 | 10 | 16-Sep-06 | 23-Sep-06 | 9 | 15-Sep-07 | 22-Sep-07 | 9 | 13-Sep-08 | 20-Sep-08 |
| 4 | 24-Sep-05 | 1-Oct-05 | 10 | 23-Sep-06 | 30-Sep-06 | 9 | 22-Sep-07 | 29-Sep-07 | 9 | 20-Sep-08 | 27-Sep-08 |
| | | | | | | | | | | 27-Sep-08 | 4-Oct-08 |

Residence Interest Numbers 1-6: Multiple Season Membership - Winter. Consists of fourteen (14) consecutive days of usage
and occupancy in the winter season, seven (7) consecutive days of usage and occupancy in the summer
season, and seven (7) floating days of usage and occupancy during other available time periods.

Residence Interest Numbers 7-12: Multiple Season Membership - Summer. Consists of fourteen (14) consecutive days of
usage and occupancy in the summer season, seven (7) consecutive days of usage and occupancy in the winter
season, and seven (7) floating days of usage and occupancy during other available time periods.

Note: Declarant is not the operator or owner of Aspen Highlands Ski Area, and accordingly, cannot make any
representations relating to the operations of such ski area and the opening and closing dates of the ski area.
Further, Declarant does make any representations or warranties with respect to the snow condition
for winter activities, including among other things, skiing and snowboarding, during the winter season, as
that term is used herein.

480434 01/11/2001 03:02P CONDO DE DAVIS SILVI
141 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY

# EXHIBIT G-1 TO THE
# DECLARATION OF CONDOMINIUM FOR
# ASPEN HIGHLANDS CONDOMINIUMS

### The Ritz-Carlton Club, Aspen Highlands
### MULTIPLE SEASON CALENDAR-CONSOLIDATED
### Residence Interests

## 9

| Residence Interest No. | Allocated Use Periods 2008 | Allocated Use Periods 2009 |
|---|---|---|
|  | 4-Oct-08 | 11-Oct-08 |
|  | 11-Oct-08 | 18-Oct-08 |
|  | 18-Oct-08 | 25-Oct-08 |
|  | 25-Oct-08 | 1-Nov-08 |
|  | 1-Nov-08 | 8-Nov-08 |
|  | 8-Nov-08 | 15-Nov-08 |
|  | 15-Nov-08 | 22-Nov-08 |
|  | 22-Nov-08 | 29-Nov-08 |
|  | 29-Nov-08 | 6-Dec-08 |
| 3 | 5-Dec-08 | 13-Dec-08 |
| 3 | 13-Dec-08 | 20-Dec-08 |
| 9 | 20-Dec-08 | 27-Dec-08 |
| 4 | 27-Dec-08 | 3-Jan-09 |
| 4 | 3-Jan-09 | 10-Jan-09 |
| 10 | 10-Jan-09 | 17-Jan-09 |
| 5 | 17-Jan-09 | 24-Jan-09 |
| 5 | 24-Jan-09 | 31-Jan-09 |
| 11 | 31-Jan-09 | 7-Feb-09 |
| 8 | 7-Feb-09 | 14-Feb-09 |
| 6 | 14-Feb-09 | 21-Feb-09 |
| 12 | 21-Feb-09 | 28-Feb-09 |
| 1 | 28-Feb-09 | 7-Mar-09 |
| 7 | 7-Mar-09 | 14-Mar-09 |
| 7 | 14-Mar-09 | 21-Mar-09 |
| 2 | 21-Mar-09 | 28-Mar-09 |
| 2 | 28-Mar-09 | 4-Apr-09 |
| 8 | 4-Apr-09 | 11-Apr-09 |
|  | 11-Apr-09 | 18-Apr-09 |
|  | 18-Apr-09 | 25-Apr-09 |
|  | 25-Apr-09 | 2-May-09 |
|  | 2-May-09 | 9-May-09 |
|  | 9-May-09 | 16-May-09 |
|  | 16-May-09 | 23-May-09 |
|  | 23-May-09 | 30-May-09 |
| 9 | 30-May-09 | 6-Jun-09 |
| 9 | 6-Jun-09 | 13-Jun-09 |
| 3 | 13-Jun-09 | 20-Jun-09 |
| 10 | 20-Jun-09 | 27-Jun-09 |
| 10 | 27-Jun-09 | 4-Jul-09 |
| 4 | 4-Jul-09 | 11-Jul-09 |
| 11 | 11-Jul-09 | 18-Jul-09 |
| 11 | 18-Jul-09 | 25-Jul-09 |
| 5 | 25-Jul-09 | 1-Aug-09 |
| 12 | 1-Aug-09 | 8-Aug-09 |
| 6 | 8-Aug-09 | 15-Aug-09 |
| 6 | 15-Aug-09 | 22-Aug-09 |
| 7 | 22-Aug-09 | 29-Aug-09 |
| 7 | 29-Aug-09 | 5-Sep-09 |
| 1 | 5-Sep-09 | 12-Sep-09 |
| 8 | 12-Sep-09 | 19-Sep-09 |
| 8 | 19-Sep-09 | 26-Sep-09 |
| 2 | 26-Sep-09 | 3-Oct-09 |

## 10

| Residence Interest No. | Allocated Use Periods 2009 | Allocated Use Periods 2010 |
|---|---|---|
|  | 3-Oct-09 | 10-Oct-09 |
|  | 10-Oct-09 | 17-Oct-09 |
|  | 17-Oct-09 | 24-Oct-09 |
|  | 24-Oct-09 | 31-Oct-09 |
|  | 31-Oct-09 | 7-Nov-09 |
|  | 7-Nov-09 | 14-Nov-09 |
|  | 14-Nov-09 | 21-Nov-09 |
|  | 21-Nov-09 | 28-Nov-09 |
|  | 28-Nov-09 | 5-Dec-09 |
| 8 | 5-Dec-09 | 12-Dec-09 |
| 3 | 12-Dec-09 | 19-Dec-09 |
| 3 | 19-Dec-09 | 26-Dec-09 |
| 9 | 26-Dec-09 | 2-Jan-10 |
| 4 | 2-Jan-10 | 9-Jan-10 |
| 4 | 9-Jan-10 | 16-Jan-10 |
| 10 | 16-Jan-10 | 23-Jan-10 |
| 5 | 23-Jan-10 | 30-Jan-10 |
| 5 | 30-Jan-10 | 6-Feb-10 |
| 11 | 6-Feb-10 | 13-Feb-10 |
| 8 | 13-Feb-10 | 20-Feb-10 |
| 6 | 20-Feb-10 | 27-Feb-10 |
| 12 | 27-Feb-10 | 6-Mar-10 |
| 6 | 6-Mar-10 | 13-Mar-10 |
| 1 | 13-Mar-10 | 20-Mar-10 |
| 7 | 20-Mar-10 | 27-Mar-10 |
| 2 | 27-Mar-10 | 3-Apr-10 |
| 2 | 3-Apr-10 | 10-Apr-10 |
|  | 10-Apr-10 | 17-Apr-10 |
|  | 17-Apr-10 | 24-Apr-10 |
|  | 24-Apr-10 | 1-May-10 |
|  | 1-May-10 | 8-May-10 |
|  | 8-May-10 | 15-May-10 |
|  | 15-May-10 | 22-May-10 |
|  | 22-May-10 | 29-May-10 |
| 2 | 29-May-10 | 5-Jun-10 |
| 9 | 5-Jun-10 | 12-Jun-10 |
| 9 | 12-Jun-10 | 19-Jun-10 |
| 3 | 19-Jun-10 | 26-Jun-10 |
| 10 | 26-Jun-10 | 3-Jul-10 |
| 10 | 3-Jul-10 | 10-Jul-10 |
| 4 | 10-Jul-10 | 17-Jul-10 |
| 11 | 17-Jul-10 | 24-Jul-10 |
| 11 | 24-Jul-10 | 31-Jul-10 |
| 5 | 31-Jul-10 | 7-Aug-10 |
| 12 | 7-Aug-10 | 14-Aug-10 |
| 6 | 14-Aug-10 | 21-Aug-10 |
| 6 | 21-Aug-10 | 28-Aug-10 |
| 7 | 28-Aug-10 | 4-Sep-10 |
| 7 | 4-Sep-10 | 11-Sep-10 |
| 1 | 11-Sep-10 | 18-Sep-10 |
| 8 | 18-Sep-10 | 25-Sep-10 |
| 8 | 25-Sep-10 | 2-Oct-10 |

## 11

| Residence Interest No. | Allocated Use Periods 2010 | Allocated Use Periods 2011 |
|---|---|---|
|  | 2-Oct-10 | 9-Oct-10 |
|  | 9-Oct-10 | 16-Oct-10 |
|  | 16-Oct-10 | 23-Oct-10 |
|  | 23-Oct-10 | 30-Oct-10 |
|  | 30-Oct-10 | 6-Nov-10 |
|  | 6-Nov-10 | 13-Nov-10 |
|  | 13-Nov-10 | 20-Nov-10 |
|  | 20-Nov-10 | 27-Nov-10 |
|  | 27-Nov-10 | 4-Dec-10 |
| 2 | 4-Dec-10 | 11-Dec-10 |
| 2 | 11-Dec-10 | 18-Dec-10 |
| 8 | 18-Dec-10 | 25-Dec-10 |
| 3 | 25-Dec-10 | 1-Jan-11 |
| 3 | 1-Jan-11 | 8-Jan-11 |
| 9 | 8-Jan-11 | 15-Jan-11 |
| 4 | 15-Jan-11 | 22-Jan-11 |
| 4 | 22-Jan-11 | 29-Jan-11 |
| 10 | 29-Jan-11 | 5-Feb-11 |
| 5 | 5-Feb-11 | 12-Feb-11 |
| 5 | 12-Feb-11 | 19-Feb-11 |
| 11 | 19-Feb-11 | 26-Feb-11 |
| 6 | 26-Feb-11 | 5-Mar-11 |
| 6 | 5-Mar-11 | 12-Mar-11 |
| 12 | 12-Mar-11 | 19-Mar-11 |
| 1 | 19-Mar-11 | 26-Mar-11 |
| 1 | 26-Mar-11 | 2-Apr-11 |
| 7 | 2-Apr-11 | 9-Apr-11 |
|  | 9-Apr-11 | 16-Apr-11 |
|  | 16-Apr-11 | 23-Apr-11 |
|  | 23-Apr-11 | 30-Apr-11 |
|  | 30-Apr-11 | 7-May-11 |
|  | 7-May-11 | 14-May-11 |
|  | 14-May-11 | 21-May-11 |
|  | 21-May-11 | 28-May-11 |
| 8 | 28-May-11 | 4-Jun-11 |
| 8 | 4-Jun-11 | 11-Jun-11 |
| 2 | 11-Jun-11 | 18-Jun-11 |
| 9 | 18-Jun-11 | 25-Jun-11 |
| 9 | 25-Jun-11 | 2-Jul-11 |
| 3 | 2-Jul-11 | 9-Jul-11 |
| 10 | 9-Jul-11 | 16-Jul-11 |
| 10 | 16-Jul-11 | 23-Jul-11 |
| 4 | 23-Jul-11 | 30-Jul-11 |
| 11 | 30-Jul-11 | 6-Aug-11 |
| 6 | 6-Aug-11 | 13-Aug-11 |
| 5 | 13-Aug-11 | 20-Aug-11 |
| 12 | 20-Aug-11 | 27-Aug-11 |
| 7 | 27-Aug-11 | 3-Sep-11 |
| 6 | 3-Sep-11 | 10-Sep-11 |
| 7 | 10-Sep-11 | 17-Sep-11 |
| 7 | 17-Sep-11 | 24-Sep-11 |
| 7 | 24-Sep-11 | 1-Oct-11 |

## 12

| Residence Interest No. | Allocated Use Periods 2011 | Allocated Use Periods 2012 |
|---|---|---|
|  | 1-Oct-11 | 8-Oct-11 |
|  | 8-Oct-11 | 15-Oct-11 |
|  | 15-Oct-11 | 22-Oct-11 |
|  | 22-Oct-11 | 29-Oct-11 |
|  | 29-Oct-11 | 5-Nov-11 |
|  | 5-Nov-11 | 12-Nov-11 |
|  | 12-Nov-11 | 19-Nov-11 |
|  | 19-Nov-11 | 26-Nov-11 |
|  | 26-Nov-11 | 3-Dec-11 |
| 7 | 3-Dec-11 | 10-Dec-11 |
| 2 | 10-Dec-11 | 17-Dec-11 |
| 2 | 17-Dec-11 | 24-Dec-11 |
| 8 | 24-Dec-11 | 31-Dec-11 |
| 3 | 31-Dec-11 | 7-Jan-12 |
| 3 | 7-Jan-12 | 14-Jan-12 |
| 9 | 14-Jan-12 | 21-Jan-12 |
| 4 | 21-Jan-12 | 28-Jan-12 |
| 4 | 28-Jan-12 | 4-Feb-12 |
| 10 | 4-Feb-12 | 11-Feb-12 |
| 5 | 11-Feb-12 | 18-Feb-12 |
| 5 | 18-Feb-12 | 25-Feb-12 |
| 11 | 25-Feb-12 | 3-Mar-12 |
| 6 | 3-Mar-12 | 10-Mar-12 |
| 6 | 10-Mar-12 | 17-Mar-12 |
| 12 | 17-Mar-12 | 24-Mar-12 |
| 1 | 24-Mar-12 | 31-Mar-12 |
| 1 | 31-Mar-12 | 7-Apr-12 |
|  | 7-Apr-12 | 14-Apr-12 |
|  | 14-Apr-12 | 21-Apr-12 |
|  | 21-Apr-12 | 28-Apr-12 |
|  | 28-Apr-12 | 5-May-12 |
|  | 5-May-12 | 12-May-12 |
|  | 12-May-12 | 19-May-12 |
|  | 19-May-12 | 26-May-12 |
| 1 | 26-May-12 | 2-Jun-12 |
| 8 | 2-Jun-12 | 9-Jun-12 |
| 8 | 9-Jun-12 | 16-Jun-12 |
| 2 | 16-Jun-12 | 23-Jun-12 |
| 9 | 23-Jun-12 | 30-Jun-12 |
| 9 | 30-Jun-12 | 7-Jul-12 |
| 3 | 7-Jul-12 | 14-Jul-12 |
| 10 | 14-Jul-12 | 21-Jul-12 |
| 10 | 21-Jul-12 | 28-Jul-12 |
| 4 | 28-Jul-12 | 4-Aug-12 |
| 11 | 4-Aug-12 | 11-Aug-12 |
| 11 | 11-Aug-12 | 18-Aug-12 |
| 5 | 18-Aug-12 | 25-Aug-12 |
| 12 | 25-Aug-12 | 1-Sep-12 |
| 12 | 1-Sep-12 | 8-Sep-12 |
| 6 | 8-Sep-12 | 15-Sep-12 |
| 7 | 15-Sep-12 | 22-Sep-12 |
| 7 | 22-Sep-12 | 29-Sep-12 |

Residence Interest Numbers 1-6: Multiple Season Membership - Winter. Consists of fourteen (14) consecutive days of usage and occupancy in the winter season, seven (7) consecutive days of usage and occupancy in the summer season, and seven (7) floating days of usage and occupancy during other available time periods.

Residence Interest Numbers 7-12: Multiple Season Membership - Summer. Consists of fourteen (14) consecutive days of usage and occupancy in the summer season, seven (7) consecutive days of usage and occupancy in the winter season, and seven (7) floating days of usage and occupancy during other available time periods.

Note: Declarant is not the operator or owner of Aspen Highlands Ski Area, and accordingly, cannot make any representations relating to the operations of such ski area and the opening and closing dates of the ski area. Further, Declarant does make any representations or warranties with respect to the snow condition for winter activities, including among other things, skiing and snowboarding, during the winter season, as that term is used herein.

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
142 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY

### EXHIBIT G-2 TO THE
### DECLARATION OF CONDOMINIUM FOR
### ASPEN HIGHLANDS CONDOMINIUMS

The Ritz-Carlton Club, Aspen Highlands
PREFERRED SEASON CALENDAR-CONSOLIDATED
Residence Interests

#### Block 1

| Residence Interest No. | Allocated Use Periods 2000 | Allocated Use Periods 2001 |
|---|---|---|
| | 7-Oct-00 | 14-Oct-00 |
| | 14-Oct-00 | 21-Oct-00 |
| | 21-Oct-00 | 28-Oct-00 |
| | 28-Oct-00 | 4-Nov-00 |
| | 4-Nov-00 | 11-Nov-00 |
| | 11-Nov-00 | 18-Nov-00 |
| | 18-Nov-00 | 25-Nov-00 |
| | 25-Nov-00 | 2-Dec-00 |
| | 2-Dec-00 | 9-Dec-00 |
| 13 | 9-Dec-00 | 16-Dec-00 |
| 13 | 16-Dec-00 | 23-Dec-00 |
| 13 | 23-Dec-00 | 30-Dec-00 |
| 14 | 30-Dec-00 | 6-Jan-01 |
| 14 | 6-Jan-01 | 13-Jan-01 |
| 14 | 13-Jan-01 | 20-Jan-01 |
| 15 | 20-Jan-01 | 27-Jan-01 |
| 15 | 27-Jan-01 | 3-Feb-01 |
| 15 | 3-Feb-01 | 10-Feb-01 |
| 16 | 10-Feb-01 | 17-Feb-01 |
| 16 | 17-Feb-01 | 24-Feb-01 |
| 16 | 24-Feb-01 | 3-Mar-01 |
| 17 | 3-Mar-01 | 10-Mar-01 |
| 17 | 10-Mar-01 | 17-Mar-01 |
| 17 | 17-Mar-01 | 24-Mar-01 |
| 18 | 24-Mar-01 | 31-Mar-01 |
| 18 | 31-Mar-01 | 7-Apr-01 |
| 18 | 7-Apr-01 | 14-Apr-01 |
| | 14-Apr-01 | 21-Apr-01 |
| | 21-Apr-01 | 28-Apr-01 |
| | 28-Apr-01 | 5-May-01 |
| | 5-May-01 | 12-May-01 |
| | 12-May-01 | 19-May-01 |
| | 19-May-01 | 26-May-01 |
| | 26-May-01 | 2-Jun-01 |
| 19 | 2-Jun-01 | 9-Jun-01 |
| 19 | 8-Jun-01 | 16-Jun-01 |
| 19 | 16-Jun-01 | 23-Jun-01 |
| 20 | 23-Jun-01 | 30-Jun-01 |
| 20 | 30-Jun-01 | 7-Jul-01 |
| 20 | 7-Jul-01 | 14-Jul-01 |
| 21 | 14-Jul-01 | 21-Jul-01 |
| 21 | 21-Jul-01 | 28-Jul-01 |
| 21 | 28-Jul-01 | 4-Aug-01 |
| 22 | 4-Aug-01 | 11-Aug-01 |
| 22 | 11-Aug-01 | 18-Aug-01 |
| 22 | 18-Aug-01 | 25-Aug-01 |
| 23 | 25-Aug-01 | 1-Sep-01 |
| 23 | 1-Sep-01 | 8-Sep-01 |
| 23 | 8-Sep-01 | 15-Sep-01 |
| 24 | 15-Sep-01 | 22-Sep-01 |
| 24 | 22-Sep-01 | 29-Sep-01 |
| 24 | 29-Sep-01 | 6-Oct-01 |

#### Block 2

| Residence Interest No. | Allocated Use Periods 2001 | Allocated Use Periods 2002 |
|---|---|---|
| | 6-Oct-01 | 13-Oct-01 |
| | 13-Oct-01 | 20-Oct-01 |
| | 20-Oct-01 | 27-Oct-01 |
| | 27-Oct-01 | 3-Nov-01 |
| | 3-Nov-01 | 10-Nov-01 |
| | 10-Nov-01 | 17-Nov-01 |
| | 17-Nov-01 | 24-Nov-01 |
| | 24-Nov-01 | 1-Dec-01 |
| | 1-Dec-01 | 8-Dec-01 |
| 18 | 8-Dec-01 | 15-Dec-01 |
| 18 | 15-Dec-01 | 22-Dec-01 |
| 18 | 22-Dec-01 | 29-Dec-01 |
| 13 | 29-Dec-01 | 5-Jan-02 |
| 13 | 5-Jan-02 | 12-Jan-02 |
| 13 | 12-Jan-02 | 19-Jan-02 |
| 14 | 19-Jan-02 | 26-Jan-02 |
| 14 | 26-Jan-02 | 2-Feb-02 |
| 14 | 2-Feb-02 | 9-Feb-02 |
| 15 | 9-Feb-02 | 16-Feb-02 |
| 15 | 16-Feb-02 | 23-Feb-02 |
| 15 | 23-Feb-02 | 2-Mar-02 |
| 16 | 2-Mar-02 | 9-Mar-02 |
| 16 | 9-Mar-02 | 16-Mar-02 |
| 16 | 16-Mar-02 | 23-Mar-02 |
| 17 | 23-Mar-02 | 30-Mar-02 |
| 17 | 30-Mar-02 | 6-Apr-02 |
| 17 | 6-Apr-02 | 13-Apr-02 |
| | 13-Apr-02 | 20-Apr-02 |
| | 20-Apr-02 | 27-Apr-02 |
| | 27-Apr-02 | 4-May-02 |
| | 4-May-02 | 11-May-02 |
| | 11-May-02 | 18-May-02 |
| | 18-May-02 | 25-May-02 |
| | 25-May-02 | 1-Jun-02 |
| 24 | 1-Jun-02 | 8-Jun-02 |
| 24 | 8-Jun-02 | 15-Jun-02 |
| 24 | 15-Jun-02 | 22-Jun-02 |
| 24 | 22-Jun-02 | 29-Jun-02 |
| 19 | 29-Jun-02 | 6-Jul-02 |
| 19 | 6-Jul-02 | 13-Jul-02 |
| 20 | 13-Jul-02 | 20-Jul-02 |
| 20 | 20-Jul-02 | 27-Jul-02 |
| 20 | 27-Jul-02 | 3-Aug-02 |
| 21 | 3-Aug-02 | 10-Aug-02 |
| 21 | 10-Aug-02 | 17-Aug-02 |
| 21 | 17-Aug-02 | 24-Aug-02 |
| 22 | 24-Aug-02 | 31-Aug-02 |
| 22 | 31-Aug-02 | 7-Sep-02 |
| 22 | 7-Sep-02 | 14-Sep-02 |
| 23 | 14-Sep-02 | 21-Sep-02 |
| 23 | 21-Sep-02 | 28-Sep-02 |
| 23 | 28-Sep-02 | 5-Oct-02 |

#### Block 3

| Residence Interest No. | Allocated Use Periods 2002 | Allocated Use Periods 2003 |
|---|---|---|
| | 5-Oct-02 | 12-Oct-02 |
| | 12-Oct-02 | 19-Oct-02 |
| | 19-Oct-02 | 26-Oct-02 |
| | 26-Oct-02 | 2-Nov-02 |
| | 2-Nov-02 | 9-Nov-02 |
| | 9-Nov-02 | 16-Nov-02 |
| | 16-Nov-02 | 23-Nov-02 |
| | 23-Nov-02 | 30-Nov-02 |
| | 30-Nov-02 | 7-Dec-02 |
| 17 | 7-Dec-02 | 14-Dec-02 |
| 17 | 14-Dec-02 | 21-Dec-02 |
| 17 | 21-Dec-02 | 28-Dec-02 |
| 18 | 28-Dec-02 | 4-Jan-03 |
| 18 | 4-Jan-03 | 11-Jan-03 |
| 18 | 11-Jan-03 | 18-Jan-03 |
| 13 | 18-Jan-03 | 25-Jan-03 |
| 13 | 25-Jan-03 | 1-Feb-03 |
| 13 | 1-Feb-03 | 8-Feb-03 |
| 14 | 8-Feb-03 | 15-Feb-03 |
| 14 | 15-Feb-03 | 22-Feb-03 |
| 14 | 22-Feb-03 | 1-Mar-03 |
| 15 | 1-Mar-03 | 8-Mar-03 |
| 15 | 8-Mar-03 | 15-Mar-03 |
| 15 | 15-Mar-03 | 22-Mar-03 |
| 16 | 22-Mar-03 | 29-Mar-03 |
| 16 | 29-Mar-03 | 5-Apr-03 |
| 16 | 5-Apr-03 | 12-Apr-03 |
| | 12-Apr-03 | 19-Apr-03 |
| | 19-Apr-03 | 26-Apr-03 |
| | 26-Apr-03 | 3-May-03 |
| | 3-May-03 | 10-May-03 |
| | 10-May-03 | 17-May-03 |
| | 17-May-03 | 24-May-03 |
| | 24-May-03 | 31-May-03 |
| 23 | 31-May-03 | 7-Jun-03 |
| 23 | 7-Jun-03 | 14-Jun-03 |
| 23 | 14-Jun-03 | 21-Jun-03 |
| 24 | 21-Jun-03 | 28-Jun-03 |
| 24 | 28-Jun-03 | 5-Jul-03 |
| 19 | 5-Jul-03 | 12-Jul-03 |
| 19 | 12-Jul-03 | 19-Jul-03 |
| 19 | 19-Jul-03 | 26-Jul-03 |
| 20 | 26-Jul-03 | 2-Aug-03 |
| 20 | 2-Aug-03 | 9-Aug-03 |
| 20 | 9-Aug-03 | 16-Aug-03 |
| 21 | 16-Aug-03 | 23-Aug-03 |
| 21 | 23-Aug-03 | 30-Aug-03 |
| 21 | 30-Aug-03 | 6-Sep-03 |
| 22 | 6-Sep-03 | 13-Sep-03 |
| 22 | 13-Sep-03 | 20-Sep-03 |
| 22 | 20-Sep-03 | 27-Sep-03 |
| 22 | 27-Sep-03 | 4-Oct-03 |

#### Block 4

| Residence Interest No. | Allocated Use Periods 2003 | Allocated Use Periods 2004 |
|---|---|---|
| | 4-Oct-03 | 11-Oct-03 |
| | 11-Oct-03 | 18-Oct-03 |
| | 18-Oct-03 | 25-Oct-03 |
| | 25-Oct-03 | 1-Nov-03 |
| | 1-Nov-03 | 8-Nov-03 |
| | 8-Nov-03 | 15-Nov-03 |
| | 15-Nov-03 | 22-Nov-03 |
| | 22-Nov-03 | 29-Nov-03 |
| | 29-Nov-03 | 6-Dec-03 |
| 16 | 6-Dec-03 | 13-Dec-03 |
| 16 | 13-Dec-03 | 20-Dec-03 |
| 16 | 20-Dec-03 | 27-Dec-03 |
| 17 | 27-Dec-03 | 3-Jan-04 |
| 17 | 3-Jan-04 | 10-Jan-04 |
| 17 | 10-Jan-04 | 17-Jan-04 |
| 18 | 17-Jan-04 | 24-Jan-04 |
| 18 | 24-Jan-04 | 31-Jan-04 |
| 18 | 31-Jan-04 | 7-Feb-04 |
| 13 | 7-Feb-04 | 14-Feb-04 |
| 13 | 14-Feb-04 | 21-Feb-04 |
| 13 | 21-Feb-04 | 28-Feb-04 |
| 14 | 28-Feb-04 | 6-Mar-04 |
| 14 | 6-Mar-04 | 13-Mar-04 |
| 14 | 13-Mar-04 | 20-Mar-04 |
| 15 | 20-Mar-04 | 27-Mar-04 |
| 15 | 27-Mar-04 | 3-Apr-04 |
| 15 | 3-Apr-04 | 10-Apr-04 |
| | 10-Apr-04 | 17-Apr-04 |
| | 17-Apr-04 | 24-Apr-04 |
| | 24-Apr-04 | 1-May-04 |
| | 1-May-04 | 8-May-04 |
| | 8-May-04 | 15-May-04 |
| | 15-May-04 | 22-May-04 |
| | 22-May-04 | 29-May-04 |
| 22 | 29-May-04 | 5-Jun-04 |
| 22 | 5-Jun-04 | 12-Jun-04 |
| 22 | 12-Jun-04 | 19-Jun-04 |
| 23 | 19-Jun-04 | 26-Jun-04 |
| 23 | 26-Jun-04 | 3-Jul-04 |
| 23 | 3-Jul-04 | 10-Jul-04 |
| 24 | 10-Jul-04 | 17-Jul-04 |
| 24 | 17-Jul-04 | 24-Jul-04 |
| 24 | 24-Jul-04 | 31-Jul-04 |
| 19 | 31-Jul-04 | 7-Aug-04 |
| 19 | 7-Aug-04 | 14-Aug-04 |
| 19 | 14-Aug-04 | 21-Aug-04 |
| 20 | 21-Aug-04 | 28-Aug-04 |
| 20 | 28-Aug-04 | 4-Sep-04 |
| 20 | 4-Sep-04 | 11-Sep-04 |
| 21 | 11-Sep-04 | 18-Sep-04 |
| 21 | 18-Sep-04 | 25-Sep-04 |
| 21 | 25-Sep-04 | 2-Oct-04 |

Residence Interest Numbers 13-18: Preferred Season Membership - Winter. Consists of twenty-one (21) consecutive days of usage and occupancy in winter season plus seven (7) floating days of usage and occupancy during other available periods.

Residence Interest Numbers 19-24: Preferred Season Membership - Summer. Consists of twenty-one (21) consecutive days of usage and occupancy in summer season plus seven (7) floating days of usage and occupancy during other available periods.

Note: Declarant is not the operator of Aspen Highlands Ski Area, and accordingly, cannot make any representations relating to the operations of such ski area and the opening and closing dates of the ski area. Further, Declarant does make any representations or warranties with respect to the snow conditions for winter activities, including among other things, skiing and snowboarding, during the winter season, as that term is used herein.

450454 01/11/2001 03:02P CONDO DE DAVIS S1LV1
143 of 147 R 739.00 D 0.00 N 0.00 PITKIN COUNTY

### EXHIBIT G-2 TO THE
### DECLARATION OF CONDOMINIUM FOR
### ASPEN HIGHLANDS CONDOMINIUMS

**The Ritz-Carlton Club, Aspen Highlands**
**PREFERRED SEASON CALENDAR-CONSOLIDATED**
**Residence Interests**

| Res. Int. No. | 2004 | 2005 | Res. Int. No. | 2005 | 2006 | Res. Int. No. | 2006 | 2007 | Res. Int. No. | 2007 | 2008 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2-Oct-04 | 9-Oct-04 | | 1-Oct-05 | 8-Oct-05 | | 30-Sep-06 | 7-Oct-06 | | 29-Sep-07 | 6-Oct-07 |
| | 9-Oct-04 | 16-Oct-04 | | 8-Oct-05 | 15-Oct-05 | | 7-Oct-06 | 14-Oct-06 | | 6-Oct-07 | 13-Oct-07 |
| | 16-Oct-04 | 23-Oct-04 | | 15-Oct-05 | 22-Oct-05 | | 14-Oct-06 | 21-Oct-06 | | 13-Oct-07 | 20-Oct-07 |
| | 23-Oct-04 | 30-Oct-04 | | 22-Oct-05 | 29-Oct-05 | | 21-Oct-06 | 28-Oct-06 | | 20-Oct-07 | 27-Oct-07 |
| | 30-Oct-04 | 6-Nov-04 | | 29-Oct-05 | 5-Nov-05 | | 28-Oct-06 | 4-Nov-06 | | 27-Oct-07 | 3-Nov-07 |
| | 6-Nov-04 | 13-Nov-04 | | 5-Nov-05 | 12-Nov-05 | | 4-Nov-06 | 11-Nov-06 | | 3-Nov-07 | 10-Nov-07 |
| | 13-Nov-04 | 20-Nov-04 | | 12-Nov-05 | 19-Nov-05 | | 11-Nov-06 | 18-Nov-06 | | 10-Nov-07 | 17-Nov-07 |
| | 20-Nov-04 | 27-Nov-04 | | 19-Nov-05 | 26-Nov-05 | | 18-Nov-06 | 25-Nov-06 | | 17-Nov-07 | 24-Nov-07 |
| | 27-Nov-04 | 4-Dec-04 | | 26-Nov-05 | 3-Dec-05 | | 25-Nov-06 | 2-Dec-06 | | 24-Nov-07 | 1-Dec-07 |
| 15 | 4-Dec-04 | 11-Dec-04 | 14 | 3-Dec-05 | 10-Dec-05 | 13 | 2-Dec-06 | 9-Dec-06 | 18 | 1-Dec-07 | 8-Dec-07 |
| 15 | 11-Dec-04 | 18-Dec-04 | 14 | 10-Dec-05 | 17-Dec-05 | 13 | 9-Dec-06 | 16-Dec-06 | 18 | 8-Dec-07 | 15-Dec-07 |
| 15 | 18-Dec-04 | 25-Dec-04 | 14 | 17-Dec-05 | 24-Dec-05 | 13 | 16-Dec-06 | 23-Dec-06 | 18 | 15-Dec-07 | 22-Dec-07 |
| 16 | 25-Dec-04 | 1-Jan-05 | 15 | 24-Dec-05 | 31-Dec-05 | 14 | 23-Dec-06 | 30-Dec-06 | 13 | 22-Dec-07 | 29-Dec-07 |
| 16 | 1-Jan-05 | 8-Jan-05 | 15 | 31-Dec-05 | 7-Jan-06 | 14 | 30-Dec-06 | 6-Jan-07 | 13 | 29-Dec-07 | 5-Jan-08 |
| 16 | 8-Jan-05 | 15-Jan-05 | 15 | 7-Jan-06 | 14-Jan-06 | 14 | 6-Jan-07 | 13-Jan-07 | 13 | 5-Jan-08 | 12-Jan-08 |
| 17 | 15-Jan-05 | 22-Jan-05 | 16 | 14-Jan-06 | 21-Jan-06 | 15 | 13-Jan-07 | 20-Jan-07 | 14 | 12-Jan-08 | 19-Jan-08 |
| 17 | 22-Jan-05 | 29-Jan-05 | 16 | 21-Jan-06 | 28-Jan-06 | 15 | 20-Jan-07 | 27-Jan-07 | 14 | 19-Jan-08 | 26-Jan-08 |
| 17 | 29-Jan-05 | 5-Feb-05 | 16 | 28-Jan-06 | 4-Feb-06 | 15 | 27-Jan-07 | 3-Feb-07 | 14 | 26-Jan-08 | 2-Feb-08 |
| 18 | 5-Feb-05 | 12-Feb-05 | 17 | 4-Feb-06 | 11-Feb-06 | 16 | 3-Feb-07 | 10-Feb-07 | 15 | 2-Feb-08 | 9-Feb-08 |
| 18 | 12-Feb-05 | 19-Feb-05 | 17 | 11-Feb-06 | 18-Feb-06 | 16 | 10-Feb-07 | 17-Feb-07 | 15 | 9-Feb-08 | 16-Feb-08 |
| 18 | 19-Feb-05 | 26-Feb-05 | 17 | 18-Feb-06 | 25-Feb-06 | 16 | 17-Feb-07 | 24-Feb-07 | 15 | 16-Feb-08 | 23-Feb-08 |
| 13 | 26-Feb-05 | 5-Mar-05 | 18 | 25-Feb-06 | 4-Mar-06 | 17 | 24-Feb-07 | 3-Mar-07 | 16 | 23-Feb-08 | 1-Mar-08 |
| 13 | 5-Mar-05 | 12-Mar-05 | 18 | 4-Mar-06 | 11-Mar-06 | 17 | 3-Mar-07 | 10-Mar-07 | 16 | 1-Mar-08 | 8-Mar-08 |
| 13 | 12-Mar-05 | 19-Mar-05 | 18 | 11-Mar-06 | 18-Mar-06 | 17 | 10-Mar-07 | 17-Mar-07 | 16 | 8-Mar-08 | 15-Mar-08 |
| 14 | 19-Mar-05 | 26-Mar-05 | 13 | 18-Mar-06 | 25-Mar-06 | 18 | 17-Mar-07 | 24-Mar-07 | 17 | 15-Mar-08 | 22-Mar-08 |
| 14 | 26-Mar-05 | 2-Apr-05 | 13 | 25-Mar-06 | 1-Apr-06 | 18 | 24-Mar-07 | 31-Mar-07 | 17 | 22-Mar-08 | 29-Mar-08 |
| 14 | 2-Apr-05 | 9-Apr-05 | 13 | 1-Apr-06 | 8-Apr-06 | 18 | 31-Mar-07 | 7-Apr-07 | 17 | 29-Mar-08 | 5-Apr-08 |
| | 9-Apr-05 | 16-Apr-05 | | 8-Apr-06 | 15-Apr-06 | | 7-Apr-07 | 14-Apr-07 | | 5-Apr-08 | 12-Apr-08 |
| | 16-Apr-05 | 23-Apr-05 | | 15-Apr-06 | 22-Apr-06 | | 14-Apr-07 | 21-Apr-07 | | 12-Apr-08 | 19-Apr-08 |
| | 23-Apr-05 | 30-Apr-05 | | 22-Apr-06 | 29-Apr-06 | | 21-Apr-07 | 28-Apr-07 | | 19-Apr-08 | 26-Apr-08 |
| | 30-Apr-05 | 7-May-05 | | 29-Apr-06 | 6-May-06 | | 28-Apr-07 | 5-May-07 | | 26-Apr-08 | 3-May-08 |
| | 7-May-05 | 14-May-05 | | 6-May-06 | 13-May-06 | | 5-May-07 | 12-May-07 | | 3-May-08 | 10-May-08 |
| | 14-May-05 | 21-May-05 | | 13-May-06 | 20-May-06 | | 12-May-07 | 19-May-07 | | 10-May-08 | 17-May-08 |
| | 21-May-05 | 28-May-05 | | 20-May-06 | 27-May-06 | | 19-May-07 | 26-May-07 | | 17-May-08 | 24-May-08 |
| 21 | 28-May-05 | 4-Jun-05 | 20 | 27-May-06 | 3-Jun-06 | 19 | 26-May-07 | 2-Jun-07 | 24 | 24-May-08 | 31-May-08 |
| 21 | 4-Jun-05 | 11-Jun-05 | 20 | 3-Jun-06 | 10-Jun-06 | 19 | 2-Jun-07 | 9-Jun-07 | 24 | 31-May-08 | 7-Jun-08 |
| 21 | 11-Jun-05 | 18-Jun-05 | 20 | 10-Jun-06 | 17-Jun-06 | 19 | 9-Jun-07 | 16-Jun-07 | 24 | 7-Jun-08 | 14-Jun-08 |
| 22 | 18-Jun-05 | 25-Jun-05 | 21 | 17-Jun-06 | 24-Jun-06 | 20 | 16-Jun-07 | 23-Jun-07 | 19 | 14-Jun-08 | 21-Jun-08 |
| 22 | 25-Jun-05 | 2-Jul-05 | 21 | 24-Jun-06 | 1-Jul-06 | 20 | 23-Jun-07 | 30-Jun-07 | 19 | 21-Jun-08 | 28-Jun-08 |
| 22 | 2-Jul-05 | 9-Jul-05 | 21 | 1-Jul-06 | 8-Jul-06 | 20 | 30-Jun-07 | 7-Jul-07 | 19 | 28-Jun-08 | 5-Jul-08 |
| 23 | 9-Jul-05 | 16-Jul-05 | 22 | 8-Jul-06 | 15-Jul-06 | 21 | 7-Jul-07 | 14-Jul-07 | 20 | 5-Jul-08 | 12-Jul-08 |
| 23 | 16-Jul-05 | 23-Jul-05 | 22 | 15-Jul-06 | 22-Jul-06 | 21 | 14-Jul-07 | 21-Jul-07 | 20 | 12-Jul-08 | 19-Jul-08 |
| 23 | 23-Jul-05 | 30-Jul-05 | 22 | 22-Jul-06 | 29-Jul-06 | 21 | 21-Jul-07 | 28-Jul-07 | 20 | 19-Jul-08 | 26-Jul-08 |
| 24 | 30-Jul-05 | 6-Aug-05 | 23 | 29-Jul-06 | 5-Aug-06 | 22 | 28-Jul-07 | 4-Aug-07 | 21 | 26-Jul-08 | 2-Aug-08 |
| 24 | 6-Aug-05 | 13-Aug-05 | 23 | 5-Aug-06 | 12-Aug-06 | 22 | 4-Aug-07 | 11-Aug-07 | 21 | 2-Aug-08 | 9-Aug-08 |
| 24 | 13-Aug-05 | 20-Aug-05 | 23 | 12-Aug-06 | 19-Aug-06 | 22 | 11-Aug-07 | 18-Aug-07 | 21 | 9-Aug-08 | 16-Aug-08 |
| 19 | 20-Aug-05 | 27-Aug-05 | 24 | 19-Aug-06 | 26-Aug-06 | 23 | 18-Aug-07 | 25-Aug-07 | 22 | 16-Aug-08 | 23-Aug-08 |
| 19 | 27-Aug-05 | 3-Sep-05 | 24 | 26-Aug-06 | 2-Sep-06 | 23 | 25-Aug-07 | 1-Sep-07 | 22 | 23-Aug-08 | 30-Aug-08 |
| 19 | 3-Sep-05 | 10-Sep-05 | 24 | 2-Sep-06 | 9-Sep-06 | 23 | 1-Sep-07 | 8-Sep-07 | 22 | 30-Aug-08 | 6-Sep-08 |
| 20 | 10-Sep-05 | 17-Sep-05 | 19 | 9-Sep-06 | 16-Sep-06 | 24 | 8-Sep-07 | 15-Sep-07 | 23 | 6-Sep-08 | 13-Sep-08 |
| 20 | 17-Sep-05 | 24-Sep-05 | 19 | 16-Sep-06 | 23-Sep-06 | 24 | 15-Sep-07 | 22-Sep-07 | 23 | 13-Sep-08 | 20-Sep-08 |
| 20 | 24-Sep-05 | 1-Oct-05 | 19 | 23-Sep-06 | 30-Sep-06 | 24 | 22-Sep-07 | 29-Sep-07 | 23 | 20-Sep-08 | 27-Sep-08 |
| | | | | | | | | | | 21-Sep-08 | 4-Oct-08 |

Residence Interest Numbers 13-18: Preferred Season Membership - Winter. Consists of twenty-one (21) consecutive days of usage and occupancy in winter season plus seven (7) floating days of usage and occupancy during other available periods.

Residence Interest Numbers 19-24: Preferred Season Membership - Summer. Consists of twenty-one (21) consecutive days of usage and occupancy in summer season plus seven (7) floating days of usage and occupancy during other available periods.

Note: Declarant is not the operator or owner of Aspen Highlands Ski Area, and accordingly, cannot make any representations relating to the operations of such ski area and the opening and closing dates of the ski area. Further, Declarant does make any representations or warranties with respect to the snow conditions for winter activities, including among other things, skiing and snowboarding, during the winter season, as that term is used herein.

**EXHIBIT G-2 TO THE**
**DECLARATION OF CONDOMINIUM FOR**
**ASPEN HIGHLANDS CONDOMINIUMS**

The Ritz-Carlton Club, Aspen Highlands
PREFERRED SEASON CALENDAR-CONSOLIDATED
Residence Interests

### Column Group 9

| | Residence Interest No. | 2008 | 2009 |
|---|---|---|---|
| Unreserved Allocation | | 4-Oct-08 | 11-Oct-08 |
| | | 11-Oct-08 | 18-Oct-08 |
| | | 18-Oct-08 | 25-Oct-08 |
| | | 25-Oct-08 | 1-Nov-08 |
| | | 1-Nov-08 | 8-Nov-08 |
| | | 8-Nov-08 | 15-Nov-08 |
| | | 15-Nov-08 | 22-Nov-08 |
| | | 22-Nov-08 | 29-Nov-08 |
| | | 29-Nov-08 | 6-Dec-08 |
| Reserved Allocation | 17 | 6-Dec-08 | 13-Dec-08 |
| | 17 | 13-Dec-08 | 20-Dec-08 |
| | 17 | 20-Dec-08 | 27-Dec-08 |
| | 18 | 27-Dec-08 | 3-Jan-09 |
| | 18 | 3-Jan-09 | 10-Jan-09 |
| | 18 | 10-Jan-09 | 17-Jan-09 |
| | 13 | 17-Jan-09 | 24-Jan-09 |
| | 13 | 24-Jan-09 | 31-Jan-09 |
| | 13 | 31-Jan-09 | 7-Feb-09 |
| | 14 | 7-Feb-09 | 14-Feb-09 |
| | 14 | 14-Feb-09 | 21-Feb-09 |
| | 14 | 21-Feb-09 | 28-Feb-09 |
| | 15 | 28-Feb-09 | 7-Mar-09 |
| | 15 | 7-Mar-09 | 14-Mar-09 |
| | 15 | 14-Mar-09 | 21-Mar-09 |
| | 16 | 21-Mar-09 | 28-Mar-09 |
| | 16 | 28-Mar-09 | 4-Apr-09 |
| | 16 | 4-Apr-09 | 11-Apr-09 |
| Unreserved Allocation | | 11-Apr-09 | 18-Apr-09 |
| | | 18-Apr-09 | 25-Apr-09 |
| | | 25-Apr-09 | 2-May-09 |
| | | 2-May-09 | 9-May-09 |
| | | 9-May-09 | 16-May-09 |
| | | 16-May-09 | 23-May-09 |
| | | 23-May-09 | 30-May-09 |
| Reserved Allocation | 23 | 30-May-09 | 6-Jun-09 |
| | 23 | 6-Jun-09 | 13-Jun-09 |
| | 23 | 13-Jun-09 | 20-Jun-09 |
| | 24 | 20-Jun-09 | 27-Jun-09 |
| | 24 | 27-Jun-09 | 4-Jul-09 |
| | 24 | 4-Jul-09 | 11-Jul-09 |
| | 19 | 11-Jul-09 | 18-Jul-09 |
| | 19 | 18-Jul-09 | 25-Jul-09 |
| | 19 | 25-Jul-09 | 1-Aug-09 |
| | 20 | 1-Aug-09 | 8-Aug-09 |
| | 20 | 8-Aug-09 | 15-Aug-09 |
| | 20 | 15-Aug-09 | 22-Aug-09 |
| | 21 | 22-Aug-09 | 29-Aug-09 |
| | 21 | 29-Aug-09 | 5-Sep-09 |
| | 21 | 5-Sep-09 | 12-Sep-09 |
| | 22 | 12-Sep-09 | 19-Sep-09 |
| | 22 | 19-Sep-09 | 26-Sep-09 |
| | 22 | 26-Sep-09 | 3-Oct-09 |

### Column Group 10

| | Residence Interest No. | 2009 | 2010 |
|---|---|---|---|
| Unreserved Allocation | | 3-Oct-09 | 10-Oct-09 |
| | | 10-Oct-09 | 17-Oct-09 |
| | | 17-Oct-09 | 24-Oct-09 |
| | | 24-Oct-09 | 31-Oct-09 |
| | | 31-Oct-09 | 7-Nov-09 |
| | | 7-Nov-09 | 14-Nov-09 |
| | | 14-Nov-09 | 21-Nov-09 |
| | | 21-Nov-09 | 28-Nov-09 |
| | | 28-Nov-09 | 5-Dec-09 |
| Reserved Allocation | 16 | 5-Dec-09 | 12-Dec-09 |
| | 16 | 12-Dec-09 | 19-Dec-09 |
| | 16 | 19-Dec-09 | 26-Dec-09 |
| | 17 | 26-Dec-09 | 2-Jan-10 |
| | 17 | 2-Jan-10 | 9-Jan-10 |
| | 17 | 9-Jan-10 | 16-Jan-10 |
| | 18 | 16-Jan-10 | 23-Jan-10 |
| | 18 | 23-Jan-10 | 30-Jan-10 |
| | 18 | 30-Jan-10 | 6-Feb-10 |
| | 13 | 6-Feb-10 | 13-Feb-10 |
| | 13 | 13-Feb-10 | 20-Feb-10 |
| | 13 | 20-Feb-10 | 27-Feb-10 |
| | 14 | 27-Feb-10 | 5-Mar-10 |
| | 14 | 6-Mar-10 | 13-Mar-10 |
| | 14 | 13-Mar-10 | 20-Mar-10 |
| | 15 | 20-Mar-10 | 27-Mar-10 |
| | 15 | 27-Mar-10 | 3-Apr-10 |
| | 15 | 3-Apr-10 | 10-Apr-10 |
| Unreserved Allocation | | 10-Apr-10 | 17-Apr-10 |
| | | 17-Apr-10 | 24-Apr-10 |
| | | 24-Apr-10 | 1-May-10 |
| | | 1-May-10 | 8-May-10 |
| | | 8-May-10 | 15-May-10 |
| | | 15-May-10 | 22-May-10 |
| | | 22-May-10 | 29-May-10 |
| Reserved Allocation | 22 | 29-May-10 | 5-Jun-10 |
| | 22 | 5-Jun-10 | 12-Jun-10 |
| | 22 | 12-Jun-10 | 19-Jun-10 |
| | 23 | 19-Jun-10 | 26-Jun-10 |
| | 23 | 26-Jun-10 | 3-Jul-10 |
| | 23 | 3-Jul-10 | 10-Jul-10 |
| | 24 | 10-Jul-10 | 17-Jul-10 |
| | 24 | 17-Jul-10 | 24-Jul-10 |
| | 24 | 24-Jul-10 | 31-Jul-10 |
| | 19 | 31-Jul-10 | 7-Aug-10 |
| | 19 | 7-Aug-10 | 14-Aug-10 |
| | 19 | 14-Aug-10 | 21-Aug-10 |
| | 20 | 21-Aug-10 | 28-Aug-10 |
| | 20 | 28-Aug-10 | 4-Sep-10 |
| | 20 | 4-Sep-10 | 11-Sep-10 |
| | 21 | 11-Sep-10 | 18-Sep-10 |
| | 21 | 18-Sep-10 | 25-Sep-10 |
| | 21 | 25-Sep-10 | 2-Oct-10 |

### Column Group 11

| | Residence Interest No. | 2010 | 2011 |
|---|---|---|---|
| Unreserved Allocation | | 2-Oct-10 | 9-Oct-10 |
| | | 9-Oct-10 | 16-Oct-10 |
| | | 16-Oct-10 | 23-Oct-10 |
| | | 23-Oct-10 | 30-Oct-10 |
| | | 30-Oct-10 | 6-Nov-10 |
| | | 6-Nov-10 | 13-Nov-10 |
| | | 13-Nov-10 | 20-Nov-10 |
| | | 20-Nov-10 | 27-Nov-10 |
| | | 27-Nov-10 | 4-Dec-10 |
| Reserved Allocation | 15 | 4-Dec-10 | 11-Dec-10 |
| | 15 | 11-Dec-10 | 18-Dec-10 |
| | 15 | 18-Dec-10 | 25-Dec-10 |
| | 16 | 25-Dec-10 | 1-Jan-11 |
| | 16 | 1-Jan-11 | 8-Jan-11 |
| | 16 | 8-Jan-11 | 15-Jan-11 |
| | 17 | 15-Jan-11 | 22-Jan-11 |
| | 17 | 22-Jan-11 | 29-Jan-11 |
| | 17 | 29-Jan-11 | 5-Feb-11 |
| | 18 | 5-Feb-11 | 12-Feb-11 |
| | 18 | 12-Feb-11 | 19-Feb-11 |
| | 18 | 19-Feb-11 | 26-Feb-11 |
| | 13 | 26-Feb-11 | 5-Mar-11 |
| | 13 | 5-Mar-11 | 12-Mar-11 |
| | 13 | 12-Mar-11 | 19-Mar-11 |
| | 14 | 19-Mar-11 | 26-Mar-11 |
| | 14 | 26-Mar-11 | 2-Apr-11 |
| | 14 | 2-Apr-11 | 9-Apr-11 |
| Unreserved Allocation | | 9-Apr-11 | 16-Apr-11 |
| | | 16-Apr-11 | 23-Apr-11 |
| | | 23-Apr-11 | 30-Apr-11 |
| | | 30-Apr-11 | 7-May-11 |
| | | 7-May-11 | 14-May-11 |
| | | 14-May-11 | 21-May-11 |
| | | 21-May-11 | 28-May-11 |
| Reserved Allocation | 21 | 28-May-11 | 4-Jun-11 |
| | 21 | 4-Jun-11 | 11-Jun-11 |
| | 21 | 11-Jun-11 | 18-Jun-11 |
| | 22 | 18-Jun-11 | 25-Jun-11 |
| | 22 | 25-Jun-11 | 2-Jul-11 |
| | 22 | 2-Jul-11 | 9-Jul-11 |
| | 23 | 9-Jul-11 | 16-Jul-11 |
| | 23 | 16-Jul-11 | 23-Jul-11 |
| | 23 | 23-Jul-11 | 30-Jul-11 |
| | 24 | 30-Jul-11 | 6-Aug-11 |
| | 24 | 6-Aug-11 | 13-Aug-11 |
| | 24 | 13-Aug-11 | 20-Aug-11 |
| | 19 | 20-Aug-11 | 27-Aug-11 |
| | 19 | 27-Aug-11 | 3-Sep-11 |
| | 19 | 3-Sep-11 | 10-Sep-11 |
| | 20 | 10-Sep-11 | 17-Sep-11 |
| | 20 | 17-Sep-11 | 24-Sep-11 |
| | 20 | 24-Sep-11 | 1-Oct-11 |

### Column Group 12

| | Residence Interest No. | 2011 | 2012 |
|---|---|---|---|
| Unreserved Allocation | | 1-Oct-11 | 8-Oct-11 |
| | | 8-Oct-11 | 15-Oct-11 |
| | | 15-Oct-11 | 22-Oct-11 |
| | | 22-Oct-11 | 29-Oct-11 |
| | | 29-Oct-11 | 5-Nov-11 |
| | | 5-Nov-11 | 12-Nov-11 |
| | | 12-Nov-11 | 19-Nov-11 |
| | | 19-Nov-11 | 26-Nov-11 |
| | | 26-Nov-11 | 3-Dec-11 |
| Reserved Allocation | 14 | 3-Dec-11 | 10-Dec-11 |
| | 14 | 10-Dec-11 | 17-Dec-11 |
| | 14 | 17-Dec-11 | 24-Dec-11 |
| | 15 | 24-Dec-11 | 31-Dec-11 |
| | 15 | 31-Dec-11 | 7-Jan-12 |
| | 15 | 7-Jan-12 | 14-Jan-12 |
| | 16 | 14-Jan-12 | 21-Jan-12 |
| | 16 | 21-Jan-12 | 28-Jan-12 |
| | 16 | 28-Jan-12 | 4-Feb-12 |
| | 17 | 4-Feb-12 | 11-Feb-12 |
| | 17 | 11-Feb-12 | 18-Feb-12 |
| | 17 | 18-Feb-12 | 25-Feb-12 |
| | 18 | 25-Feb-12 | 3-Mar-12 |
| | 18 | 3-Mar-12 | 10-Mar-12 |
| | 18 | 10-Mar-12 | 17-Mar-12 |
| | 13 | 17-Mar-12 | 24-Mar-12 |
| | 13 | 24-Mar-12 | 31-Mar-12 |
| | 13 | 31-Mar-12 | 7-Apr-12 |
| Unreserved Allocation | | 7-Apr-12 | 14-Apr-12 |
| | | 14-Apr-12 | 21-Apr-12 |
| | | 21-Apr-12 | 28-Apr-12 |
| | | 28-Apr-12 | 5-May-12 |
| | | 5-May-12 | 12-May-12 |
| | | 12-May-12 | 19-May-12 |
| | | 19-May-12 | 26-May-12 |
| Reserved Allocation | 20 | 26-May-12 | 2-Jun-12 |
| | 20 | 2-Jun-12 | 9-Jun-12 |
| | 20 | 9-Jun-12 | 16-Jun-12 |
| | 21 | 16-Jun-12 | 23-Jun-12 |
| | 21 | 23-Jun-12 | 30-Jun-12 |
| | 21 | 30-Jun-12 | 7-Jul-12 |
| | 22 | 7-Jul-12 | 14-Jul-12 |
| | 22 | 14-Jul-12 | 21-Jul-12 |
| | 22 | 21-Jul-12 | 28-Jul-12 |
| | 23 | 28-Jul-12 | 4-Aug-12 |
| | 23 | 4-Aug-12 | 11-Aug-12 |
| | 23 | 11-Aug-12 | 18-Aug-12 |
| | 24 | 18-Aug-12 | 25-Aug-12 |
| | 24 | 25-Aug-12 | 1-Sep-12 |
| | 24 | 1-Sep-12 | 8-Sep-12 |
| | 19 | 8-Sep-12 | 15-Sep-12 |
| | 19 | 15-Sep-12 | 22-Sep-12 |
| | 19 | 22-Sep-12 | 29-Sep-12 |

Residence Interest Numbers 13-18: Preferred Season Membership - Winter. Consists of twenty-one (21) consecutive days of usage and occupancy in winter season plus seven (7) floating days of usage and occupancy during other available periods.

Residence Interest Numbers 19-24: Preferred Season Membership - Summer. Consists of twenty-one (21) consecutive days of usage and occupancy in summer season plus seven (7) floating days of usage and occupancy during other available periods.

Note: Declarant is not the operator or owner of Aspen Highlands Ski Area, and accordingly, cannot make any representations relating to the operations of such ski area and the opening and closing dates of the ski area. Further, Declarant does make any representations or warranties with respect to the snow conditions for winter activities, including among other things, skiing and snowboarding, during the winter season, as that term is used herein.

480454 01/11/2001 03:02P CONDO DE DAVIS SILVI
145 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY

**EXHIBIT H**
**to Declaration of Condominium for Aspen Highlands Condominiums**

### UNIT OWNERSHIP

| Building 4 | Hines Highlands Limited Partnership | The Ritz-Carlton Development Company, Inc. |
|---|---|---|
| | C-4102 | TA-4301 |
| | C-4109 | TA-4302 |
| | C-4114 | |
| | C-4115 | |
| | DR-4201 | |
| | DR-4202 | |
| | DR-4203 | |
| | DR-4204 | |
| | DR-4205 | |
| | DR-4207 | |
| | DR-4208 | |
| | DR-4209 | |
| | DR-4211 | |
| | DR-4212 | |
| | DR-4304 | |
| | DR-4305 | |
| | DR-4306 | |
| | DR-4307 | |
| | DR-4308 | |
| | DR-4309 | |
| Building 8 | Hines Highlands Limited Partnership | The Ritz-Carlton Development Company, Inc. |
| | None. | C-8012 |
| | | C-8115 |
| | | C-8117 |
| | | C-8130 |
| | | DR-8120 |
| | | DR-8121 |
| | | DR-8122 |
| | | DR-8123 |
| | | DR-8124 |
| | | DR-8125 |
| | | DR-8126 |
| | | TA-8103 |
| | | TA-8104 |
| | | TA-8105 |

H-1

450494 01/11/2001 03:02P CONDO DE DAVIS SILVI
14B of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY

| Building 8 (continued) | The Ritz-Carlton Development Company, Inc. |
|---|---|
| | TA-8106 |
| | TA-8201 |
| | TA-8202 |
| | TA-8203 |
| | TA-8204 |
| | TA-8205 |
| | TA-8206 |
| | TA-8207 |
| | TA-8208 |
| | TA-8209 |
| | TA-8210 |
| | TA-8211 |
| | TA-8212 |
| | TA-8214 |
| | TA-8215 |
| | TA-8216 |
| | TA-8301 |
| | TA-8302 |
| | TA-8303 |
| | TA-8304 |
| | TA-8305 |
| | TA-8306 |
| | TA-8307 |
| | TA-8308 |
| | TA-8309 |
| | TA-8310 |
| | TA-8311 |
| | TA-8312 |
| | TA-8314 |
| | TA-8315 |
| | TA-8401 |
| | TA-8402 |
| | TA-8403 |
| | TA-8404 |
| | TA-8405 |
| | TA-8406 |
| | TA-8408 |
| | TA-8409 |
| | TA-8410 |
| | TA-8411 |
| | TA-8412 |
| | TA-8415 |

H-2

450454 01/11/2001 03:02P CONDO DE ORVIS SILVI
147 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY