IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 16-01301 PAB

RCHFU, LLC, et al.

      Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al.

      Defendants.

---

**MARRIOTT DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL *IN CAMERA* REVIEW OF AN UNREDACTED VERSION OF MARRIOTT'S STRATEGIC PLAN MEMORANDUM AND REQUEST FOR EXPEDITED RELIEF**

---

Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC, The Cobalt Travel Company, LLC, and The Lion & Crown Travel Co., LLC (collectively, "Marriott Defendants") respectfully submit this Memorandum in support of the Marriott Defendants' assertion of attorney-client privilege in connection with a memorandum dated May 24, 2012, which was sent by Lee Cunningham and Tony Terry to the "Corporate Growth Committee ('CGC')" and was entitled "Ritz-Carlton Destination Club Proposed Strategic Plan" ("May 24 Memo"). The May 24 Memo (which Plaintiffs refer to as "Marriott's Strategic Plan Memorandum") is the subject of Plaintiffs' motion to compel the Court's *in camera* review of an unredacted version of that document (ECF#239).

As previously stated to the Court (ECF#240), the Marriott Defendants do not object to the *in camera* review of the May 24 Memo that Plaintiffs seek; however, they strongly disagree with Plaintiffs' concomitant contention that portions of that document were improperly redacted on attorney-client privilege grounds. In reaching that conclusion, Plaintiffs are laboring under several misconceptions and improperly suggest that the document was not identified on the Marriott Defendants' privilege log. First, the redacted portions of the May 24 Memo (i.e., sections entitled "Strategy" and "Risks/Opportunities") were not "authored" or "drafted" by non-lawyers Cunningham and Terry, as Plaintiffs contend (ECF#239 at 2-3). Those sections were authored by an attorney in the Marriott Defendants' Law Department with input from several other Law Department attorneys. *See* Declaration of Kathi Borkholder ("Borkholder Decl.") ¶ 4.[1] The May 24 Memo was merely the vehicle by which Cunningham and Terry conveyed, to the CGC, in-house counsel's legal opinions, analysis and advice concerning certain actions that the CGC was being asked to consider.[2] *Cf. Ryskamp v. Looney,* 2100 U.S. Dist. LEXIS 98644 at *13 (D. Colo. Sept. 1, 2011) ("[P]rivileged communications [concerning issues within the scope of the employees' corporate duties] remain privileged even when a corporate agent shares the communication with another agent charged with acting on such issues."). Accordingly, the May 24 Memo's "Strategy" and "Risks/Opportunities" sections were properly redacted on attorney-client privilege grounds.

---

[1] The Marriott Defendants would have filed Ms. Borkholder's Declaration and this Memorandum without restriction (albeit without exhibits, as those are solely for the Court's *in camera* review); however, they have not done so because of concerns that Plaintiffs will claim that the statements in the Declaration and the Memorandum constitute a waiver of the attorney-client privilege. If the Court concludes that the Declaration and Memorandum can be filed without leading to a waiver, the Marriott Defendants will proceed to file those documents without restriction.

[2] Other sections of the May 24 Memo (entitled "Financial Overview," "Transfer Plan Execution" and "Disposition Update") were business related and, thus, were not redacted.

Second, no exceptions to the attorney-client privilege apply here. For example, Plaintiffs contend that, where a party is seeking legal advice in its capacity as a fiduciary, the party to whom the fiduciary duty is owed is entitled to see those communications. (ECF#239 at 3). But Florida law (which applies to the privilege dispute here, *see infra*) does not recognize a fiduciary exception to attorney-client privilege. Even if Colorado law governed, the fiduciary exception only applies where the fiduciary relationship is judicially recognized and arises by operation of law. It does not apply where, as here, a fiduciary duty is merely <u>alleged</u>.[3]

Third, Plaintiffs contend that, because they have asserted a constructive fraud claim that was not dismissed on Rule 12(b)(6) grounds, the "crime-fraud" exception should apply to defeat the attorney-client privilege. (ECF#239 at 10). For that exception to apply, however, Plaintiffs must show facts "'adequate to support a good faith belief'"[4] that the legal opinions, analysis and advice contained in the two redacted sections of the May 24 Memo led directly to the alleged conduct on which their constructive fraud claim is based, i.e., to Plaintiffs' having been given a survey instead of a vote, two years later, on the MVC Affiliation. Plaintiffs have not made, and cannot make, the required showing.

Finally, contrary to Plaintiffs' assertions, the May 24 Memo was disclosed and identified on the Marriott Defendants' Privilege Log dated January 5, 2018, where it was mentioned at least 10 times. The "Strategy" and "Risks/Opportunities" sections of the May 24 Memo are, therefore, protected from disclosure by the attorney-client privilege, and no exceptions to

---

[3] Plaintiffs inaccurately assert that this Court "has held" that RC Management is Plaintiffs' fiduciary. *See* ECF#239 at 3; *see also id.* at 7 (asserting that the Court has found, as a matter of law, that RC Management "owe[s] fiduciary duties to Plaintiffs"). The Court has made no such finding; it has merely ruled that Plaintiffs have alleged a breach of fiduciary duty claim against RC Management sufficient to withstand a Rule 12(b)(6) motion to dismiss. (ECF#210 at 13).

[4] *Ryskamp,* 2100 U.S. Dist. LEXIS 98644 at *13 (quoting *People v. Tucker,* 232 P. 3d 194, 199 (Colo. App. 2009)).

privilege apply. Accordingly, Plaintiffs' motion should be denied to the extent it seeks to compel the production of an unredacted version of the May 24 Memo.

## STATEMENT OF FACTS

In or around late 2011, certain of the Marriott Defendants were developing a Strategic Plan for future actions that might be taken in connection with the Ritz-Carlton Destination Club ("RCDC"). Implementation of the Strategic Plan required the CGC's formal approval. Such approval, however, had to await "the completion of legal due diligence necessary to determine the ability to execute on the proposed plan." *See* May 24 Memo (redacted), attached to the Declaration of Michael J. Reiser as Ex. A ("BACKGROUND"). The attorneys in the Marriott Defendants' Law Department were asked to analyze and opine on 29 specific subjects (some of which had several sub-parts) relevant to the Strategic Plan. *See* Borkholder Decl. ¶ 5. These were listed on a chart created on or around December 20, 2011 by the Deputy General Counsel of the Marriott Defendants' Law Department ("December 20 Chart"). *See* Dec. 20 Chart, Borkholder Decl. Ex. A. The December 20 Chart identified which attorney within the Law Department would have responsibility for each subject. *See id.* Ex. A and ¶ 5. Lee Cunningham confirmed to other business people working on development of the Strategic Plan that the Law Department's legal advice was essential to the development of the Strategic Plan and would be included in the final plan document. *Id.* at ¶ 6 and Ex. B. Over the next several months, the Law Department attorneys continued to review and analyze the 29 legal issues listed on the December 20 Chart, while providing regular updates to those involved in preparing the Strategic Plan. *Id.* at ¶ 7. As the May 24 Memo was nearing completion, the Law Department's Deputy General Counsel inserted, into the working draft of the Memo, the "Strategy" and "Risks/Opportunities"

sections on which the Law Department had been working and which he had authored. *Id.* at ¶ 8 and Exs. C, D. Legal advice concerning the Strategic Plan continued to be sought (and was received) from the Law Department right up to the time the May 24 Memo was finalized. *Id.* at ¶¶ 9-11 and Exs. E-G.

## ARGUMENT

I. **THE SECTIONS OF THE MAY 24 MEMO ENTITLED "STRATEGY" AND "RISKS/OPPORTUNITIES" ARE PROTECTED FROM DISCLOSURE BY THE ATTORNEY-CLIENT PRIVILEGE**

In Colorado and Florida, the attorney-client privilege is "established by the act of a client seeking professional advice from a lawyer and extends only to confidential matters communicated by or to the client in the course of gaining counsel, advice, or direction with respect to the client's rights or obligations." *People v. Tucker,* 232 P. 3d 194, 198 (Colo. App. 2009). The attorney-client privilege also applies to corporations. *Ryskamp,* 2011 U.S. Dist. LEXIS 98644, at *12 (citing *Upjohn Co. v. U.S.,* 449 U.S. 383, 390 (1981)). "Because a corporation can only act through its officers, directors, agent, and employees, … communications between corporate counsel and company personnel are privileged so long as they concern matters within the scope of the employees' corporate duties." *Shriver v. Baskin-Robbins Ice Cream Co., Inc.,* 145 F.R.D. 112, 114 (D. Colo. 1992) (citing *Upjohn*, 449 U.S. at 394-95). "Such privileged communications remain privileged even when a corporate agent shares the communication with another agent charged with acting on such issues." *Ryskamp,* 2011 U.S. Dist. LEXIS 98655, at *13 (citing *Genova v. Longs Peak Emergency Physicians, P.C.,* 72 P. 3d 4564, 462 (Colo. App. 2003)).

The "Strategy" and "Risks/Opportunities" sections of the May 24 Memo are plainly protected by the attorney-client privilege. As noted, the Marriott Defendants' Law Department

5

had been asked to provide advice on several legal issues concerning the Strategic Plan that the CGC was considering. *See* Statement of Facts, *supra; see also* Borkholder Decl., *passim*. The legal advice to the CGC that the Marriott Defendants' Law Department had been asked to provide was drafted by a Law Department attorney based on the research, analysis and opinions provided by other Law Department attorneys, and the legal advice was inserted into the May 24 Memo as the "Strategy" and "Risks/Opportunities" sections. *Id.* Plaintiffs' assertion that the "CGC Strategic Plan was drafted by executives" is inaccurate. *See* ECF#239 at 3. Also inaccurate is their speculation that the redacted sections of the May 24 Memo may "discuss business strategy, rather than legal advice." *Id.* Even if it did (and it does not), "'[t]he fact that business advice is sought or even given does not automatically waive the privilege, 'where the advice given is predominately legal, as opposed to business, in nature[.]'" *Stenovich v. Wachtell, Lipton, Rosen & Katz,* 195 Misc. 2d 99 (N.Y. Sup. Ct. 2003) (quoting *U.S. v. Davis,* 131 F.R.D. 391, 401 (S.D.N.Y. 1990)). The legal advice provided by the Marriott Defendants' Law Department certainly meets that test.[5] The May 24 Memo's "Strategy" and "Risks/Opportunities" sections are protected by the attorney-client privilege and, thus, were properly redacted.

---

[5] It also meets the Colorado Supreme Court's four-part test for determining whether the attorney-client privilege applies to a communication between a corporation's attorney and its officer, director, agent, or employee, which Plaintiffs cite in a footnote. *See* ECF#239 at 5, n.6. Under that test, "(1) the communication must be with 'an employee, agent, or independent contractor with a significant relationship not only to the entity but also to the transaction that is the subject of the entity's need for legal services'; (2) the entity 'must demonstrate that the communication was made for the purpose of seeking or providing legal assistance'; (3) 'the entity must show that the subject matter of the communication was within the scope of the duties provided to the entity by its employee, agent, or independent contractor'; and (4) the entity 'must show that the communication was treated as confidential and only disseminated to those persons with a specific need to know its contents.'" *Alliance Constr. Solutions, Inc. v. Dep't of Corr.,* 43 P. 3d 861, 869-70 (Colo. 2002). Notably, Plaintiffs do not argue that the four-part test is not met here, and the facts to which Ms. Borkholder attests clearly show that it is met.

**II. NO EXCEPTIONS TO THE ATTORNEY-CLIENT PRIVILEGE APPLY TO DEFEAT THE PRIVILEGED NATURE OF THE MAY 24 MEMO'S "STRATEGY" AND "RISKS/OPPORTUNITIES" SECTIONS**

Implicitly conceding that the attorney-client privilege protects the May 24 Memo's "Strategy" and "Risks/Opportunities" sections from disclosure, Plaintiffs argue that the fiduciary and/or crime-fraud exceptions apply to "overcome" the privilege.  *See* ECF#239 at 6, 8. Plaintiffs cannot show that either exception applies here.  *Cf. Wesp v. Everson,* 33 P. 3d 191, 198 (Colo. 2001) ("The party seeking to overcome the attorney-client privilege carries the burden of establishing … an exception.").

**A.   The Fiduciary Exception Does Not Apply**

**a.   Florida law, which applies to the attorney-client privilege issue here, does not recognize a fiduciary exception to the privilege**

With no analysis whatsoever, Plaintiffs flatly assert that Colorado law governs the resolution of the attorney-client privilege at issue here. (ECF#239 at 5).  In fact, under the choice-of-law principles approved by Colorado courts, Florida law applies.

As an initial matter, a conflict regarding the attorney-client privilege exists between Colorado law and Florida law, as the former recognizes the fiduciary exception to the privilege while the latter does not.  *See In re Amendments to the Fla. Evidence Code – 2017 Out-of-Cycle Report,* 234 So. 3d 565, 566 (Fla. 2018) ("In 2011, the Florida Legislature enacted chapter 2011-183, Laws of Florida, which became effective June 21, 2011, … [and in so doing] created section 90.5021, Florida Statutes, which eliminated what the Committees refer to as the common law

7

fiduciary exception to the attorney-client privilege, to the extent that exception existed in Florida.").[6]

In deciding choice of law issues, Colorado courts have "adopted the approach set forth in the Restatement (Second) of Conflict of Laws…." *Mt. States Adjustment v. Cooke,* 412 P. 3d 819, 823 (Colo. App. 2016) (citing *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau,* 198 Colo. 444, 447-48 (1979), and *Target Corp. v. Prestige Maint. USA, Ltd.,* 351 P. 3d 493 (Colo. App. 2013); *see also AE, Inc. v. Goodyear Tire & Rubber Co.,* 168 P. 3d 507, 509 (Colo. 2007) (noting that Colorado has "joined the majority of jurisdictions in following the [Restatement (Second)'s] most significant relationship to the occurrence and parties test [as it] … better suit[s] the changing policies of Colorado").  Colorado courts also recognize the Restatement (Second) as "an appropriate framework for analysis" of choice of law issues in the context of privileges. *See People v. Thompson,* 950 P. 2d 608, 611 (Colo. App. 1997).

Restatement (Second) § 139(2) provides that "[e]vidence that is privileged under the local law of the state which has the most significant relationship with the communication but which is not privileged under the local law of the forum will be admitted unless there is some special reason why the forum policy favoring admission should not be given effect."

Here, Florida has the most significant relationship to the communication at issue (i.e., the May 24 Memo), as all of the attorneys involved in preparing the May 24 Memo were located in Florida.  Indeed, all of the relevant events pertaining to the attorney-client privilege issue took place in Florida.  Florida is also where the Marriott Defendants' corporate headquarters are

---

[6] Florida Statute 90.5021 (Fiduciary lawyer client privilege) provides: "… (2) A communication between a lawyer and client acting as a fiduciary is privileged and protected from disclosure under s. 90.502 to the same extent as if the client were not acting as a fiduciary. In applying s. 90.502 to a communication under this section, only the person or entity acting as a fiduciary is considered a client of the lawyer."

located. Moreover, Florida has a great interest in ensuring that attorney-client relationships within its borders are protected, thus satisfying the "special reason" component of Restatement (Second) § 139(2). The strength of Florida's interest is demonstrated by the fact that it has enacted a statute expressly eliminating the fiduciary exception to the attorney-client privilege to the extent such an exception ever existed. The Florida legislature's enactment of a statement repealing a common law exception to the attorney-client privilege for entitles within its borders is the kind of "special reason" that the Restatement contemplates. Accordingly, Plaintiffs' argument that the redacted portions of the May 24 Memo are discoverable due to a fiduciary exception to the attorney-client privilege should be rejected.

### b.  Plaintiffs' fiduciary exception argument also fails under Colorado law

Even if the Court rules that Colorado law applies, Plaintiffs' fiduciary exception argument fails because they have not established the existence of a fiduciary relationship. The mere allegation of a fiduciary relationship is not sufficient to eliminate the attorney-client privilege.

In what Plaintiffs call the "seminal" case on the fiduciary exception, the Fifth Circuit held that the recognized fiduciary duty that a corporation owes its shareholders can, in the proper case, defeat the corporation's assertion of attorney-client privilege. *Garner v. Wolfinbarger,* 430 F. 2d 1093 (5th Cir. 1970). Since *Garner* was decided, the fiduciary exception has been applied to other recognized fiduciary relationships (i.e., fiduciary relationships that arise by operation of law) outside the corporation/shareholder context, including fiduciary relationships between joint venturers, a labor union and its members, a law firm and its client, and a pension plan and its beneficiaries. *See Stenovich,* 195 Misc. 2d 99 at 112-13, and *W. Gas Processors, Ltd. v. Enron*

*Gas Processing Co.,* 1989 U.S. Dist. LEXIS 19342 at *16-19 (D. Colo. Mar. 6, 1989 (collecting cases).

The fiduciary exception has not been extended nearly as far as Plaintiffs suggest, however. Indeed, the Marriott Defendants have found no case (and Plaintiffs have cited none) in which the fiduciary exception was applied where, as here, the fiduciary relationship is not one arising by operation of law but, rather, is <u>only alleged</u> and strongly contested by defendant. Nor would there be such a case because, as the court in *Stenovich* explained, the fiduciary exception applies only to "relationships that are <u>fiduciary in nature</u>." *Stenovich,* 195 Misc. 2d 99 at 113 (emphasis added); *cf. W. Gas Processors,* 1989 U.S. Dist. LEXIS 19342 at *18 (explaining that, under the *Garner* doctrine, the fiduciary exception only "overcomes the attorney-client privilege where the strength of the fiduciary relationship at issue outweighs the interests protected by that privilege").

The relationship that Plaintiffs improperly claim to have with RC Management is not one that has been judicially recognized or is "fiduciary in nature." Rather, Plaintiffs allege that they have a fiduciary relationship with RC Management based on RC Management's supposedly "broad powers over Plaintiffs' property." *See* ECF#239 at 7. While the Court found that allegation was sufficient to withstand a Rule 12(b)(6) motion (*see* n.3, *supra*), it remains just that: an unproven allegation and one that the Marriott Defendants contest and expect to defeat at trial.[7]

---

[7] As the Marriott Defendants pointed out in their briefs in support of their motion to dismiss, a fiduciary relationship based on control over property requires a "high degree of control," and Plaintiffs cannot prove that RC Management had such control over Plaintiffs' fractional interests. RC Management can only enter Plaintiffs' units in order to provide cleaning and repairs and abate nuisances if and as needed. RC Management has no authority to sell, finance, rent, exchange or otherwise deal in Plaintiffs' fractional rights, nor does it have any authority to specify when Plaintiffs might take occupancy of a unit, or to designate individuals who would be entitled to occupy. (ECF#141 at 5-7). The Marriott Defendants believe that these facts, together with the Management Agreement

In short, Colorado courts have not extended the fiduciary exception to cover cases like this, in which a fiduciary duty is merely alleged and not judicially recognized; thus, the exception does not apply here.  Even if it did apply (and it does not), Plaintiffs have not shown, and cannot show, that the redacted portions of the May 24 Memo contained legal advice related to the execution of a fiduciary obligation rather than to non-fiduciary matters.  *See Galena St. Fund,* 2014 U.S. Dist. LEXIS 31257, at *6 ("[I]n order for the fiduciary exception to the attorney-client privilege to apply, the communication must concern legal advice related to the execution of fiduciary obligations and there must be good cause justifying a finding that the privilege was waived."); *Wellinger Family Trust 1998 v. Hartford Life & Accident Ins. Co.,* 2013 U.S. Dist. LEXIS 79019, at *10 (D. Colo. June 5, 2013) ("[T]he courts have determined that the fiduciary exception does not defeat the attorney-client privilege with respect to communications between a fiduciary and its attorneys on non-fiduciary matters.").

### B.  The Crime-Fraud Exception Does Not Apply[8]

The crime-fraud exception does not apply to this case.  In order to invoke the crime-fraud exception, "the party opposing the [attorney-client] privilege must present prima facie evidence that the allegation of attorney participation in the crime or fraud has some foundation in fact. … The evidence must show that the client was engaged in or was planning the criminal or fraudulent conduct when it sought the assistance of counsel and that the assistance was obtained in furtherance of the conduct or was closely related to it."  *Kovacs v. Hershey Co.,* 2006 U.S.

---

language disclaiming any fiduciary relationship and identifying RC Management as an independent contractor (ECF#131 at 9-11), will serve to defeat Plaintiffs' breach of fiduciary duty claim against RC Management (and, by extension, Cobalt).

[8] The choice-of-law argument the Marriott Defendants have advanced for the fiduciary exception (*supra*) does not apply to the crime-fraud exception, as that exception is also recognized in Florida.

Dist. LEXIS 69342, at *25 (D. Colo. Sept. 26, 2006); *see also Tucker,* 232 P. 3d at 200 (party urging application of crime-fraud exception "must at least demonstrate probable cause to believe that a crime or fraud has been attempted or committed and that the communication was in furtherance thereof"). In deciding whether a party has shown the probable cause necessary for applying the crime-fraud exception, courts consider whether the allegedly wrongful action is "criminal, or illegal but not criminal, or of doubtful legality." *Garner,* 430 F. 2d at 1104.[9]

Plaintiffs have asserted a constructive fraud claim based upon their unsupported allegations that the Association and certain of the Marriott Defendants substituted a survey for an allegedly promised vote on the MVC Affiliation without informing Association members, including Plaintiffs. (ECF#210 at 25). Citing that constructive fraud claim, Plaintiffs maintain that the "crime-fraud" exception should apply to defeat the attorney-client privilege. (ECF#239 at 10). Plaintiffs cannot make the required showing for that exception to apply. Plaintiffs cannot show that the legal opinions, analysis and advice contained in the two redacted sections of the May 24 Memo (which was prepared over several months in 2012) led directly to their having been given a survey instead of a vote, two years later, on the MVC Affiliation, which is the alleged conduct on which their constructive fraud claim is based. Plaintiffs cannot show any connection at all between the privileged document and the survey/vote issue upon which their fraud claim is based. Furthermore, Plaintiffs cannot demonstrate that the alleged conduct constitutes a crime. The "Strategy" and "Risks/Opportunities" sections do not discuss a vote or survey concerning the proposed affiliation, the need for such a vote or survey, or anything

---

[9] The crime-fraud exception is most likely to be applied where the action at issue is alleged to be actually criminal, which is not alleged here.

remotely similar.  Thus, like the fiduciary exception, the crime-fraud exception does not apply here.

Accordingly, as demonstrated by the documents submitted to the Court for *in camera* review, which establish the clearly privileged nature of the redacted portions of the May 24 Memo, and because no exception to the privilege applies, Plaintiffs' motion should be denied to the extent it seeks to compel the production of an unredacted version of the May 24 Memo.

Dated:  May 15, 2018

Respectfully submitted,

GREENBERG TRAURIG, LLP

By:  *s/ Ian S. Marx*
Naomi G. Beer
Philip R. Sellinger
Ian S. Marx
1200 Seventeenth Street, Suite 2400
Denver, Colorado 80202
Tel: 303.572.6500 / Fax: 303.572.6540
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
Tel: 973.360.7900 / Fax: 973.301.8410
Email:  BeerN@gtlaw.com, SellingerP@gtlaw.com,  MarxI@gtlaw.com

*Attorneys for the Marriott Defendants*

CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of May, 2018, a true and accurate copy of the foregoing **MARRIOTT DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL *IN CAMERA* REVIEW OF AN UNREDACTED VERSION OF MARRIOTT'S STRATEGIC PLAN MEMORANDUM AND REQUEST FOR EXPEDITED RELIEF** was filed and served with the Clerk of the Court via CM/ECF filing system which will send notification to the following:

Michael J. Reiser
Lilia Bulgucheva
Law Office of Michael J. Reiser
961 Ygnacio Valley Road
Walnut Creek, CA 94596
*Counsel for Plaintiffs*

Matthew C. Ferguson
The Matthew C. Ferguson Law Firm, P.C.
119 South Spring, Suite 201
Aspen, Colorado 81611
*Counsel for Plaintiffs*

Tyler R. Meade
The Meade Firm P.C.
1816 Fifth Street
Berkeley, CA 94710
*Counsel for Plaintiffs*

Linda Pham Lam
Michael Schrag
Gibbs Law Group LLP
505 14th Street, Suite 1100
Oakland, CA 94612
*Counsel for Plaintiffs*

Daniel F. Shea
Jessica Black Livingston
Hogan Lovells US LLP
1601 Wewatta Street, Suite 900
Denver, Colorado 80202
*Counsel for Aspen Highlands
 Condominium Association*

*s/ Jaclyn DeMais*
    Jaclyn DeMais

*(Original on file at offices of Greenberg Traurig, LLP, pursuant to C.R.C.P. 121, § 1-26)*