IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 16-01301 PAB

RCHFU, LLC, et al.

    Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al.

    Defendants.

### DECLARATION OF KATHI BORKHOLDER IN SUPPORT OF MARRIOTT DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL *IN CAMERA* REVIEW OF AN UNREDACTED VERSION OF MARRIOTT'S STRATEGIC PLAN MEMORANDUM AND REQUEST FOR EXPEDITED RELIEF

I, **Kathi Borkholder**, declare and state:

    1.    I am an attorney at law, licensed to practice in the state of State of Florida and I have, since 2006, been employed as Vice President & Senior Counsel within the Law Departments of Marriott International, Inc. and its successor in interest Marriott Ownership Resorts, Inc., and have provided legal services to Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz- Carlton Management Company, LLC, The Cobalt Travel Company, LLC, and The Lion & Crown Travel Co., LLC (collectively, "Marriott Defendants") in connection with issues relating to the Marriott Defendants' business and operations, including with respect to the captioned matter.

    2.    I respectfully submit this Declaration based upon my first hand knowledge of the facts asserted herein, and my review of documents and discussions with others, in

*NY 247353753v1*

connection with the Marriott Defendants' opposition to Plaintiffs' Motion to Compel *In Camera* Review of an Unredacted Version of Marriott's Strategic Plan Memorandum and Request for Expedited Relief (ECF#239).

3. Plaintiffs' motion concerns a Memorandum, dated May 24, 2012, bearing the title Ritz-Carlton Destination Club Proposed Strategic Plan, to the Corporate Growth Committee from Lee Cunningham and Tony Terry (the "May 24 Memo").

4. Messrs. Cunningham and Terry were not the sole authors of the May 24 Memo. Rather, that document was generated through a collaborative process with a number of individuals and departments drafting and providing revisions and comments to particular sections. As will be explained below, the attorneys in the Marriott Defendants' Law Department, of which I am one, provided significant input and legal advice for many months prior to the issuance of the May 24 Memo. The Strategic Plan discussed in the May 24 Memo was developed after conducting extensive legal analysis of documents governing various projects, and laws in various jurisdictions where the projects are located. The two sections of the May 24 Memo that are at issue here, entitled "Strategy" and "Risks/Opportunities," discuss and convey legal advice concerning those issues, and were authored by a Law Department attorney with input from several other Law Department attorneys. Those sections summarized the work done over many months by a number of Law Department attorneys, pursuant to specific requests from Mr. Cunningham, and were included in the May 24 Memo to provide legal advice to the Corporate Growth Committee.

5. The Law Department began reviewing and analyzing matters addressed in the May 24 Memo as early as December 20, 2011. The subject matters and an overall outline of

2

the process is reflected in a detailed chart created by Michael Andrew, at the time the Law Department's Deputy General Counsel, entitled "Ritz Carlton Destination Club Proposed Strategic Plan, Action Items/Status Summary" (the "December 20 Chart"). The December 20 Chart outlines, among other things, the significant number of issues pertinent to the Strategic Plan on which the Law Department's attorneys were being asked to provide their legal analyses and advice. Specifically, the December 20 Chart identifies the subjects on which legal advice was sought, and assigns to specific attorneys within the Law Department responsibility for each subject[1]. A true and correct copy of the December 20, 2011 chart of legal issues to be considered by the Law Department in connection with the Strategic Plan is attached as Exhibit A (and will be provided to the Court for its *in camera* review).

6. Mr. Cunningham confirmed to other business people working on development of the Strategic Plan that the Law Department's legal advice was essential to the development of the Strategic Plan and that this advice was necessary to, and would be included in, the final plan document. For example, on January 3, 2012, Mr. Cunningham forwarded a copy of the December 20 Chart to others involved with the Strategic Plan, confirming that: "The legal team has begun the work and we will need to incorporate this timeline into the overall plan." A true and correct copy of this January 3, 2012 email chain is attached as Exhibit B (and will be provided to the Court for its *in camera* review).

---

[1] "KB" represented Kathi Borkholder. "BE" represented Barbara Egolf, Senior Vice President & Associate General Counsel for the Marriott Defendants. "MA" represented Michael Andrew. "DK" represented Douglas Kelly, at the time, Vice President & Senior Counsel for the Marriott Defendants. "MN" represented Mark Nagle, Senior Vice President & Associate General Counsel for the Marriott Defendants. "CM" represented Catherine Meeker, Senior Vice President & Associate General Counsel for the Marriott Defendants. "RD" represented Rita Daniel, the Law Department's Senior Director of Timeshare Registrations. "Foley" represented the Foley & Lardner law firm.

7.      The Law Department's attorneys' review and analysis of the legal issues identified on the December 20 Chart continued throughout the next several months, during which the attorneys, including myself, provided regular updates to those involved in preparation of the Strategic Plan.

8.      On May 21, 2012, as the May 24 Memo was nearing completion, Michael Andrew conveyed the Law Department's legal advice to the Corporate Growth Committee with respect to the legal issues identified on the December 20 Chart, by inserting into the working draft of the May 24 memo the "Strategy" and "Risks/Opportunities" sections. A cover email from Mike Andrew states: "The attached includes preliminary law department input. We are still reviewing and discussing a couple of items, but I wanted to get it to the team for review. Please do not treat this as final or distribute without my approval." Attached hereto as Exhibits C and D are true and correct copies of the cover email and the marked up document, which illustrates Mr. Andrew's insertion of the Law Department's legal conclusions and advice into the Strategy and Risks/Opportunities sections of the draft memo (these documents will be provided to the Court for its *in camera* review).

9.      The Law Department's provision of legal advice continued over the next several days through finalization of the document. Attached as Exhibit E is a true and correct copy of an email string from later in the day on May 21 and then on May 22, in which Deputy General Counsel Michael Andrew circulates another draft and says "Attached, please find Law Department comments to the proposed draft" and later he advises "Guys, I reviewed the draft with [General Counsel] Jim [Hunter] and you can assume these reflect the consensus of the LD [Law Department], but I would like one more review as you work through it, if time allows, or

4

if there are any material changes in facts." (A copy of this document will be provided to the Court for its *in camera* review).

10. On May 22, 2012, Mr. Cunningham provided some additional comments to the working draft of the May 24 Memo, and again requested the legal advice from the Law Department's Deputy General Counsel Michael Andrew: "I have added some edits as well. Mike, please review my edits to ensure they are aligned with the appropriate legal representations. Thanks, Lee." A true and correct copy of this email is attached as Exhibit F (a copy of this document will be provided to the Court for its *in camera* review).

11. Legal advice from the Law Department continued to be sought with respect to the Strategic Plan through the final moments before the May 24 Memo was delivered. On May 23, I received the following request: "Hi Kathi: Zach asked me to send the latest version of the memo along. We were hoping to pre-read the document in the next hour. Do you think you will need longer than that? please advise. Thanks! Kim." True and correct copies of this email and of my response are attached hereto as Exhibit G (copies of these documents will be provided to the Court for its *in camera* review).

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 14th day of May, 2018, in Orlando, Florida.

_____
KATHI BORKHOLDER