**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-01301-PAB-GPG

**RCHFU, LLC,** *et al.*

Plaintiffs,

v.

**MARRIOTT VACATIONS WORLDWIDE CORPORATION**, *et al.*

Defendants.

---

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL *IN CAMERA* REVIEW OF AN UNREDACTED VERSION OF MARRIOTT'S STRATEGIC PLAN MEMORANDUM AND REQUEST FOR EXPEDITED RELIEF**

---

### I. INTRODUCTION

The CGC Strategic Plan is a critical document in this case that was concealed, with its final version never logged as attorney-client privileged. The Marriott Defendants have redacted over five pages of this memorandum that lays out the plan to "re-engineer" the Ritz-Carlton Destination Club ("RCDC") – the issue at the center of this case. Marriott executives Lee Cunningham and Tony Terry, as well as a number of other individuals and departments, had roles in drafting it. Just yesterday, the Marriott Defendants produced minutes of the May 24, 2012 meeting during which the Corporate Growth Committee ("CGC") voted to approve most of the plan that has been withheld from Plaintiffs. These minutes (and minutes relating to three other withheld CGC memoranda) should have been disclosed in October 2016. In sum, the unredacted portions of the CGC Strategic Plan, along with the newly produced minutes, show that the memo contains

1

predominately business, rather than legal, advice regarding Marriott's plan for the future of its RCDC line.

Even if the Court finds that the Marriott Defendants have met their burden of establishing that the redacted portions of the CGC Strategic Plan contain predominately legal and not business analysis, two independent exceptions apply to overcome the attorney-client privilege. First, the fiduciary exception prevents a fiduciary from withholding privileged communications that directly relate to its responsibilities. The Marriott Defendants argument that Florida, rather than Colorado, law applies is incorrect because a choice of law analysis shows that Colorado has a stronger interest in this issue. Colorado's fiduciary exception applies because the CGC Strategic Plan and any legal analysis of it concern the very breach of fiduciary duty that is at issue in this case: the affiliation of Ritz-Carlton Destination Clubs with the Marriott Vacation Club.

Second, the crime-fraud exception also applies to overcome any privilege. This Court held that Plaintiffs' constructive fraud claim centers on the Marriott Defendants' promise of a vote on the affiliation, and their subsequent imposition of the affiliation without any vote ever taking place. This is exactly what the CGC Strategic Plan discusses: strategy regarding the affiliation. The Marriott Defendants' characterization of Plaintiffs' constructive fraud claim as one solely relating to the promise of a vote (and substitution with a survey) is too narrow of a read on the Court's order substantially denying Marriott's motion to dismiss (*see* Dkt. No. 210) – which recognizes that Plaintiffs have alleged a comprehensive plan on the part of the Marriott Defendants to affiliate the Ritz-Aspen with the Marriott Vacation Club, resulting in unjust enrichment and diminution in Plaintiffs' property values. Thus, because this Court upheld Plaintiffs' constructive fraud claim and ruled that Plaintiffs have established a *prima facie* case of willful and wanton conduct, the

crime-fraud exception to the attorney-client privilege should apply to legal advice given in connection with the re-engineering analyzed in the CGC Strategic Plan.

## II.     ARGUMENT

**1. The Marriott Defendants Are Unlikely to Meet Their Burden of Establishing that Redacted Portions of the CGC Strategic Plan Contain Predominantly Legal as Opposed to Business Analysis**

The party asserting the attorney-client privilege bears the burden of establishing that it applies. *See Pownell v. Credo Petroleum Corp.*, 2011 WL 1045418, *4 (D. Colo. Mar. 17, 2011). "General allegations are insufficient to meet this burden of proof." *In re Diasonics Sec. Litig.*, 110 F.R.D. 570, 572 (D. Colo. June 9, 1986). When a corporation seeks to invoke the privilege, it must clearly demonstrate that the communication was made specifically for securing legal, rather than business, advice. *Pownell*, 2011 WL 1045418 at *2. And "[j]ust as the attorney-client privilege does not protect communications related to business advice, it also does not protect from disclosure the 'background facts' underlying communications between an attorney and his client." *Id.* (citations omitted).

The Marriott Defendants claim they included this document on their privilege log, but misidentified it as a "draft" with "Document Id. Number 32144" (Dkt. No. 257 at p. 2); yet this document identification number does not match the one on the redacted version of the CGC Strategic Plan, which is 47615. *See* Exh. A to Reiser Decl., Dkt. No. 239-2. In any event, this log entry was insufficient to establish any privilege. At a minimum, a privilege log must identify the author of the document, all its recipients, and a "description on the contents of the document in sufficient detail as to reveal why it is subject to the asserted privilege." *Wildearth Guardians v. U.S. Forest Service*, 713 F.Supp.2d 1243, 1266 (D. Colo. 2010) (citation omitted). An entry "may

3

be deemed insufficient where [it is] missing 'vital information'" such as the fact "that it was not shared with a larger group and therefore not confidential." *Id*. (citation omitted). Here, the purported description of the CGC Strategic Plan as a "draft" that was "prepared with the assistance of legal counsel" is insufficient because it fails to identify any authors, recipients, or the legal nature of the communication.

Since Plaintiffs cannot assess the redacted portions of the CGC Strategic Plan, the Court must decide whether the Marriott Defendants have met their burden of showing that those portions contain "predominately legal, as opposed to business" advice. *See* Marriott Defendants' Memorandum in Opposition to Plaintiffs' Motion to Compel, Dkt. No. 249 at p. 6; *Pownell*, 2011 WL 1045418 *4 (holding that a "message that [was] primarily a business communication between corporate directors" was not privileged). While the Borkholder declaration states that "Messrs. Cunningham and Terry were not the sole authors" of CGC Strategic Plan, and that attorneys provided input for the redacted portions (Dkt. No. 249 at p. 6; Dkt. No. 247 at ¶¶ 4, 5, 7), it does not prove that those sections were written "for the *express* purpose" of conveying legal advice. *Pownell*, 2011 WL 1045418 at *4 (citation omitted). Further, Ms. Borkholder concedes that the CGC Strategic Plan was generated through a "collaborative process with a number of individuals and departments drafting and providing revisions and comments . . ." Dkt. No. 247 at ¶ 4. Nor is an affidavit stating a corporate employee's intent enough to establish the attorney-client privilege; rather the court must examine the document as a whole. *Pownell*, 2011 WL 1045418 at *4.[1]

---

[1] With respect to the Colorado Supreme Court's four-part test for determining whether the attorney-client privilege applies to a corporate communication, the Marriott Defendants' statement that "Plaintiffs do not argue that the four-part test is not met here" is misguided. Section A of Plaintiffs' opening brief discusses how the CGC Strategic Plan does not appear to be a privileged communication. *See* Dkt. No. 239 at p. 5-6. More importantly, it is the Marriott Defendants' burden

### 2. Even if the Redacted Portions Are Privileged, the Fiduciary Exception Applies

The Marriott Defendants argue that the Court must conduct a choice of law analysis because the at-issue communication occurred in Florida.[2] *See* Dkt. No. 249 at p. 7. The Marriott Defendants contend that Florida privilege law applies, and that Florida does not recognize a fiduciary exception to the attorney-client privilege. *Id*. But as explained below, Colorado law and the fiduciary exception would apply even after any choice of law analysis.

#### a. Under a choice of law analysis, Colorado privilege law applies because it has a more significant interest in the issue than Florida

Colorado courts have adopted the Restatement (Second) of Conflict of Laws with respect to choice of law issues. *Mountain States Adjustment v. Cooke*, 412 P.3d 819, 823 (Colo. App. 2016). Section 188 of the Restatement says that "the law of the state that has the most significant relationship to the transaction and the parties will apply." *Id*. (citing Restatement (Second) of Conflict of Laws § 188(1)). The Marriott Defendants cite *People v. Thompson*, 950 P.2d 608 (Colo. App. 1997), for the notion that Colorado courts also apply the Restatement's "framework for analysis" to choice of law issues when it comes to privileges. *See* Dkt. No. 249 at p. 8.

The *Thompson* court considered several factors before concluding that Colorado privilege law applied in that case. The *Thompson* court explained that barring "some special reason,"

---

to show that they have met the four-part test – not Plaintiffs' initial burden to show that Marriott failed to meet it. *Pownell*, 2011 WL 1045418 at *4.

[2] It is far from clear that a choice of law analysis is even required. Colorado courts sitting in diversity jurisdiction apply the privilege law of the state "which will likely supply the rule by which the case will be resolved." *Pownell*, 2011 WL 1045418 at *1 (citations omitted). In *Pownell*, the district court considered which state's law governed whether certain documents were protected by the attorney-client privilege. *Id*. The court held that there was no choice of law issue because Colorado law governed the plaintiffs' claims, and the court was located in Colorado. *Id*. at *2. Here, Colorado law will supply the rule by which this case will be resolved and thus Colorado law should govern the privilege issue.

5

evidence that is not privileged under the *forum* state's law should be admitted. *Thompson*, 950 P.2d at 611. In determining whether a sufficient reason existed to apply Oregon law instead of Colorado law on the spousal privilege, the court considered: "(1) the number and nature of the contacts that the state of the forum has with the parties and with the transaction involved; (2) the relative materiality of the evidence sought to be excluded; (3) the kind of privilege involved; and (4) fairness to the parties." *Id*. The court held that because the crime was committed in Colorado, the victim was a citizen of Colorado, and the defendant was charged in Colorado, Colorado privilege law should apply. *Id*. (noting "the supreme court's admonition that '[i]n general, the law of the forum state determines whether or not evidence is admissible'").

As in *Thompson*, the factors point toward application of Colorado privilege law here. First, "the number and nature of the contacts" that Colorado has with the parties and issues in this case are profuse. This matter concerns over 200 deeded owners of property that the Marriott Defendants developed, marketed, sold, and still manage in Aspen, Colorado. Second, "the relative materiality of the evidence sought" is high. The CGC Strategic Plan is about what Marriott considered (and ultimately did) to RCDC's and the RCDC brand – which is the conduct that led Plaintiffs to file this lawsuit. Further, there would be no prejudice to either party if Colorado privilege law applied; Plaintiffs own property in Colorado and the Marriott Defendants have chosen to transact hundreds of millions of dollars of business in Colorado.

*Thompson* contradicts Marriott's assertion that the state where the at-issue communication occurred is the state that has the most significant relationship to it. *See* Dkt. No. 249 at 8. The defendant in *Thompson* tried to make the same argument, claiming that Oregon had the most significant relationship with the communication because that is where the communication was

made. *Thompson*, 950 P.2d at 611. The court stated that, "even so assuming, we are aware of no authority supporting the proposition that a 'special' reason exists for applying the law of another state merely because it had the most significant relationship with the communication . . ." *Id*. Given that the crime occurred in Colorado, the *Thompson* court paid little attention to the fact that the communication took place in Oregon.[3] *See id.*

### b. This case is based on a fiduciary relationship that this Court has already recognized under Colorado law

Marriott's contention that the fiduciary relationship here "has not been judicially recognized" and is not "fiduciary in nature" is incorrect. This Court has already held that RC Management owe Plaintiffs fiduciary duties based on their high degree of control over Plaintiffs' property. *See* Order on Marriott's Motion to Dismiss, Dkt. No. 210 at pp. 10-13. In so ruling, the Court reviewed and relied on the Management Agreement, rather than only on Plaintiffs' allegations. *See id*. at 13 ("The Court finds that the plaintiffs have sufficiently alleged that the Management Agreement entrusted RC Management with control over plaintiffs' property sufficient to create fiduciary duties.") Thus, the Court has found fiduciary duties arising from a contract – rather than "[t]he mere allegation of a fiduciary relationship" as the Marriott Defendants suggest. Dkt. No. 249 at p. 9.

---

[3] The Marriott Defendants further contend that Florida has abolished the fiduciary exception, and that this is a "special reason" for applying Florida law. Dkt. No. 249 at 9. But the statute upon which the Marriott Defendants rely does not apply here. Florida Statute 90.521 states that the attorney-client privilege protects communications between specific types of fiduciaries and counsel – *i.e.*, a fiduciary serving as a personal representative or trustee, administrator *ad litem*, curator, guardian, conservator, or attorney in fact. § 90.5021, Fl. Stat. (2017). Here, where RC Management is a fiduciary by nature of its control over Plaintiffs' property, rather than any of those enumerated types of fiduciaries, the fiduciary exception still applies.

Further, this Court, citing Tenth Circuit and Colorado authority, has specifically stated that "[a] fiduciary relationship arises under Colorado law in situations where one party 'has a high degree of control over the property or subject matter of another . . .'" Dkt. No. 210 at p. 11. Marriott fails to explain what it means when it says that the relationship that this Court recognized is not "fiduciary in nature." *See* Dkt. No. 249 at pp. 9-10. It is clear from the Court's order on Marriott's motion to dismiss that a fiduciary relationship arises from the Management Agreement. Dkt. No. 210 at p. 13.[4]

Lastly, every unredacted portion of the CGC Strategic Plan shows that the memo directly relates to the Marriott Defendants' fiduciary duties surrounding Plaintiffs' RCDC interests. Indeed, one of the topics listed on the first page of the memo is "Transferring the remaining Ritz-Carlton Destination Club ("RCDC") core inventory into the [Marriott Vacation Club Destinations]." This lawsuit is about the Marriott Defendants' fiduciary duties in relation to its control over the Ritz-Aspen's affiliation with the Marriott Vacation Club. Thus, Marriott's argument that "Plaintiffs have not shown . . . that the redacted portions" of the document contain communications related to Marriott's execution of fiduciary duties is baseless. Dkt. No. 249 at p. 11.

---

[4] The Marriott Defendants state in their opposition that they intend to defeat Plaintiffs' breach of fiduciary claim by arguing that RC Management is an independent contractor, pointing to disclaimer language in the Management Agreement, and stating that RC Management "has no authority to sell, finance, rent, exchange, or otherwise deal in Plaintiffs' fractional interests." Dkt. No. 249 at pp. 10-11, n.7. These statements by Marriott are puzzling, as this Court has already flatly rejected each of those arguments. *See* Dkt. No. 210 at pp. 11, 13-15.

### 3. The Crime-Fraud Exception Applies Because Plaintiffs Have Already Made a *Prima Facie* Showing of Willful and Wanton Conduct

Alternatively, the crime-fraud exception applies to overcome any attorney-client privilege because the Marriott Defendants sought legal advice to help perpetrate the willful and wanton conduct at issue here. The Marriott Defendants agree that a party may invoke the crime-fraud exception by showing that a client was planning fraudulent conduct, and the legal advice it obtained was closely related to the conduct. Dkt. No. 249 at p. 11 (citing *Kovacs v. Hershey Co*., 2006 WL 2781591, *9 (D. Colo. Sept. 26, 2006)). This Court has held that Plaintiffs have established the following *prima facie* case of willful and wanton conduct: the Marriott Defendants sold fractional interests to Plaintiffs at premium prices, and then turned around and offered the same luxury access to MVC members, who paid far less than Plaintiffs. Order Regarding Plaintiffs' Motion to Amend, Dkt. No. 237 at p. 8. Marriott had promised Plaintiffs (and other Ritz-Aspen owners) that the affiliation would not take place absent a majority of owners voting in favor of it; but instead of a vote, the Marriott Defendants substituted a highly misleading survey and implemented the affiliation without any consent from the owners. *Id*. This Court recognized that a key part of Plaintiffs' case is the fact that Lee Cunningham, CEO of Marriott Vacations Worldwide (who is also vice president of RC Management, Plaintiffs' fiduciary), was the one who actually made the decision to affiliate – "thus establishing circumstances of fraud, malice or willful and wanton conduct." *Id*.

The Marriott Defendants attempt to interpret Plaintiffs' constructive fraud claim too narrowly. This Court's orders allowing Plaintiffs to plead exemplary damages and substantially denying Marriott's motion to dismiss, as well as the documents and deposition testimony in this case make clear that the Marriott Defendants' willful and wanton conduct involves more than just

9

their substitution of a survey for "an allegedly promised vote," as Marriott argues. The crime-fraud exception here applies to Marriott's larger scheme: the Marriott Defendants promised that the affiliation would not occur absent a vote, but then imposed the affiliation without holding any vote. *See* Dkt. No. 210 at pp. 25-26; Dkt. No. 237 at p. 8. Whether or not the CGC Strategic Plan specifically discusses the promised vote does not change the fact that it discusses the last act of the constructive fraud: imposing the affiliation with Marriott Vacation Club. The fact that the redacted portion of the memorandum contains analysis regarding "29 legal issues" that was "relevant to the Strategic Plan" (Dkt. No. 249 at p. 4) indicates that it includes advice directly related to whether Marriott was legally permitted to affiliate RCDCs with the Marriott Vacation Club. The crime-fraud exception thus applies to overcome any privilege assertion.

### III. CONCLUSION

Plaintiffs respectfully request that the Court conduct an *in camera* review of the CGC Strategic Plan in order to decide whether the Marriott Defendants have met their burden of establishing the attorney-client privilege. Should the Court find that it has, the fiduciary exception as well as the crime-fraud exception apply to overcome it.

Dated: May 18, 2018                                                    Respectfully submitted,

| | |
|---|---|
| REISER LAW, p.c. | THE MATTHEW C. FERGUSON LAW FIRM, P.C. |
| ____*/s/ Michael J. Reiser*_____ | _____*/s/ Matthew C. Ferguson*_____ |
| Michael J. Reiser, # 16161 | Matthew C. Ferguson, #25687 |
| 1475 N. Broadway, Suite 300 | 119 South Spring, Suite 201 |
| Walnut Creek, CA 94596 | Aspen, Colorado 81611 |
| Telephone: (925) 256-0400 | Telephone: (970) 925-6288 |
| E-mail: michael@reiserlaw.com | E-mail: matt@matthewfergusonlaw.com |

| | |
|---|---|
| GIBBS LAW GROUP, LLP | THE MEADE LAW FIRM, P.C. |
| __/s/ Michael Schrag_____ | ___/s/ Tyler Meade_____ |
| Michael Schrag (CA State Bar # 185832) | Tyler Meade (CA State Bar # 160838) |
| Linda Lam (CA State Bar# 301461) | 1816 Fifth Street |
| 505 14th Street, Suite 1110 | Berkeley, CA 94710 |
| Oakland, CA 94612 | Telephone: 510-843-3670 |
| Telephone: (510) 350-9718 | E-mail: tyler@meadefirm.com |
| E-mail: mls@classlawgroup.com | *Attorneys for Plaintiffs* |
| E-mail: lpl@classlawgroup.com | |

11

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 18th day of May, 2018, a true and accurate copy of the foregoing **PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL IN CAMERA REVIEW OF AN UNREDACTED VERSION OF MARRIOTT'S STRATEGIC PLAN MEMORANDUM AND REQUEST FOR EXPEDITED RELIEF** was served via CM/ECF filing system upon the following:

    Daniel F. Shea, Esq.
      *dan.shea@hoganlovells.com*
    Jessica Black Livingston, Esq.
      *jessica.livingston@hoganlovells.com*
    Hogan Lovells US LLP
    1200 Seventeenth Street, Suite 1500
    Denver, Colorado 80202

    Naomi G. Beer, Esq.
      *BeerN@gtlaw.com*
    Greenberg Traurig, LLP
    1200 17th Street, Suite 2400
    Denver, Colorado 80202

    Ian S. Marx, Esq.
      *MarxI@gtlaw.com*
    Philip R. Sellinger, Esq.
      *SellingerP@gtlaw.com*
    Greenberg Traurig, LLP
    500 Campus Drive, Suite 400
    Florham Park, New Jersey 07932

                      */s/ Linda Lam*
                      Linda Lam