# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLORADO

Gordon P. Gallagher, United States Magistrate Judge

Civil Action No. 16-cv-1301-PAB-GPG

RCHFU, LLC et al,

    Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION et al.,

    Defendants.

## ORDER REGARDING PLAINTIFFS' MOTION TO COMPEL (ECF #239)

redacted version NO RESTRICTION

    This matter comes before the Court on Plaintiffs' motion to compel (ECF #239)[1] (which was referred to this Magistrate Judge (ECF #244)).[2]  A significant number of additional documents are involved:  Defendants' (Marriott Defendants for all Defense pleadings) initial response (ECF #240), CGC memorandum (not redacted/filed as restricted) (ECF #246), declaration of Kathi Borkholder (ECF #247), Defendants' response to the Court's Order

---

[1] "(ECF #239)" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). I use this convention throughout this Order.

[2] Any party may object to this non-dispositive Order within fourteen (14) days.  Fed.R.Civ.P. 72(a).

regarding the privilege log (ECF #248), Defendants' memorandum in opposition to the motion to compel (ECF #249), reply to the Court's Order regarding the privilege log (ECF #251), Defendants' response and unrestricted filing of the Borkholder declaration and memorandum (ECF #253), Defendants' supplement regarding the privilege log (ECF # 257), and Plaintiffs' reply in support of the motion to compel (ECF #261). The Court has reviewed each of the aforementioned documents, responses, replies and any attachments.  The Court has also considered the entire case file, the applicable law, and is sufficiently advised in the premises. For the following reasons, the Court GRANTS the motion as specifically set forth below.

The current dispute involves a document which is a strategic plan memorandum to the Corporate Growth Committee (CGC).  The document will be referred to herein as the CGC memorandum.  Due to the confidential designation under the protective order, a redacted version, which is all the Plaintiffs possess, has been filed at ECF #239-2.  Defendants filed an un-redacted version at ECF #246 (reviewed *in camera*).  Defendants contend that the document is protected by the attorney-client privilege and, beyond the current redacted version, need not be further produced.

Plaintiffs desire an un-redacted version of the CGC memorandum, for obvious reasons, and maintain that they are entitled to it for the following reasons:  (1) the CGC memorandum was not properly designated on Defendants' privilege log; (2) the memorandum is not or not completely legal advice so the privilege does not apply; (3) the fiduciary exception overcomes the privilege; and (4) the crime-fraud exception overcomes the privilege.

Privilege Log

Plaintiffs state that they first received the CGC memorandum on May 8, 2018 and that Plaintiffs cannot locate the document on any privilege log (ECF #239, p. 2). Three more filings (ECFs #248, 251, & 257) address whether the document was truly identified on any privilege log. Essentially, the document was identified multiple times in draft form, with the final identification of the actual CGC memorandum being "Document Id. Number 32144" (ECF #257, p. 2). That identification apparently carried the misinformation that the CGC memorandum was in "draft" form. *Id.*

The Court finds that the document was identified, multiple times, and most importantly in final form, on a privilege log. No party has explained how being designated "draft" in any way effects this dispute. I find no issue exists related to the privilege log or the misinformation relating to "draft" that need to be addressed at this time. Plaintiffs have raised, but not fully briefed, other matters relating to the listing and withholding of documents. *See* ECF #239, p.2, fn 1. Should Plaintiff choose to raise those issues, they will be addressed at that time. I also do not address the issue of discovery of any draft versions of the CGC as no party is currently requesting such disclosure. *See Andritz Sprout-Baues, Inc. v. Beazer E., Inc.,* 174 F.R.D. 609, 633 (M.D. Pa. 1997) (preliminary draft contacts likely reflect not only client confidences, but also legal advice and opinions of attorneys, all of which are protected by the attorney-client privilege).

Work Product Doctrine

The work product doctrine exempts from discovery "documents and tangible things ... prepared in anticipation of litigation or for trial," Fed. R. Civ. P. 26(b)(3)(A), and is intended to

provide a lawyer "with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. *Hickman v. Taylor,* 329 U.S. 495, 510, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The work product doctrine is not a privilege within the scope of Fed. R. Evid. 501, but rather "a tool of judicial administration" that furthers the goals of fairness and convenience. *Pete Rinaldi's Fast Foods, Inc. v. Great American Insurance Companies,* 123 F.R.D. 198, 201 (M.D.N.C.1988). The doctrine does not protect materials prepared in the "ordinary course of business." *Western Nat'l Bank v. Employers Ins. of Wausau,* 109 F.R.D. 55, 57 (D.Colo.1985). "A document is protected by the work product privilege if it was prepared in anticipation of litigation by another party or that party's representative, and was intended to remain confidential." *Aull v. Cavalcade Pension Plan,* 185 F.R.D. 618, 624 (D.Colo.1998). The final draft of the document at issue is May 24, 2012. Based on the date as well as other factors, primarily the fact that litigation was not pending, planned for, or anticipated, the work product doctrine is not at issue with regard to the CGC memorandum.

Attorney-Client Privilege

Rule 26(b)(1) requires production of non-privileged materials relevant to a party's claims or defenses. Privileges further the administration of justice and "should not be set aside lightly." *See Horton v. United States,* 204 F.R.D. 670, 672 (D.Colo.2002). However, privileges also serve to withhold relevant information from the finder of fact and for that reason should be narrowly construed. *See Montgomery v. Leftwich, Moore & Douglas,* 161 F.R.D. 224, 225 (D.D.C.1995). Where, as in this case, subject matter jurisdiction is premised on diversity, the court must apply Colorado's law governing attorney-client privilege. *White v. American Airlines, Inc.,* 915 F.2d

1414, 1424 (10th Cir.1990) ("In a civil action based upon a state cause of action, state law controls the determination of privileges."). This issue may be addressed in more detail, *infra*, with regard to fiduciary duty and Defendants' assertion that Florida law applies in that context if the Court finds it necessary to address these arguments. The party seeking to invoke the attorney-client privilege bears the burden of establishing its applicability. *In re Foster*, 188 F3d 1259, 1264 (10th Cir. 1999).

The attorney-client privilege extends only to confidential matters communicated between the attorney and his or her client in the course of receiving counsel, advice, or direction with respect to the client's rights or obligations. *See, e.g., A. v. Dist. Court of Second Judicial Dist.,* 550 P.2d 315, 327 (Colo.1976), *cert. denied,* 429 U.S. 1040, 97 S.Ct. 737, 50 L.Ed.2d 751 (1977); *Losavio v. District Court,* 188 Colo. 127, 533 P.2d 32, 35 (1975). Under the common law, "a critical component of the privilege 'is whether the communication between the client and the attorney is made in confidence of the relationship and under circumstances from which it may reasonably be assumed that the communication will remain in confidence.' " *In re Qwest Communications International, Inc.,* 450 F.3d 1179, 1185 (10th Cir.2006) (quoting *United States v. Lopez,* 777 F.2d 543, 552 (10th Cir.1985) ).

In-house counsel performs a dual role of legal advisor and business advisor. *Kramer v. Raymond Corp.,* 1992 WL 122856, at *1 (E.D.Pa. May 29, 1992) (Pollak, J.). The attorney-client privilege applies to "in-house" counsel just as it would another attorney. *See NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 154 (1974). Communications by in-house counsel are privileged only where the "communication's primary purpose is to gain or provide legal assistance." *Raymond Corp.*, 1992 WL 122856 at *1. "Business communications are not protected merely because they are directed to an attorney, and communications at meetings

attended or directed by attorneys are not automatically privileged as a result of the attorney's presence." *Id.* The corporation " 'must clearly demonstrate that the communication in question was made for the express purpose of securing legal not business advice.' " *Id.* (quoting *Aamco Transmissions, Inc. v. Marino,* 1991 WL 193502, at *3 (E.D.Pa. Sept. 24, 1991) (Waldman, J.)); *see also In re Grand Jury Matter,* 147 F.R.D. 82, 85-86 (E.D.Pa.1992) (Broderick, J.) (documents not protected because communications were from an expert consultant and made to achieve regulatory compliance, not to assist the law firm in providing legal advice).

The affidavit of Ms. Borkholder, Vice President and Senior Counsel within the Law Departments of Marriott International, Inc., outlines the process by which the CGC memorandum was prepared (ECF #247).  Over some 6 months, various attorneys within the law department were tasked with significant responsibility for preparation of the document which was ultimately derived.  But, it is not the fact that lawyers may prepare a document which is ultimately determinative, it is an analysis of whether the communication, in this case the CGC memorandum, "was made for the **express purpose** of securing legal and not business advice." *Aamco* 1991 WL 193502 at *3 (emphasis mine).   The document in question (ECF #246), some 9 ½ pages (of which more than 6 were redacted) (ECF #239-2) can fairly be said to contain some mixture of both business advice and an admixture of legal advice. That then poses the question of how to address a communication, made by in-house counsel to the client, which is mostly for business advice but provides some smaller measure of legal advice.  The CGC memorandum purports to be from Mr. Cunningham (COO of Marriott Vacation Club) and Mr. Terry (Senior VP of Global Operation at Marriott Vacation Club) to the members of the Corporate Growth Committee.

In order to sort out the issue of intertwined business/legal advice in this context, I must look outside the District of Colorado and primarily outside the 10th Circuit as I find no applicable case law on point from the Circuit Court.  In recognition of the circumstance that such intertwining occurs, analysis has derived the rule that "[w]here business and legal advice are intertwined, the legal advice must predominate for the communication to be protected." *Neuder v. Battell Pacific Northwest Nat. Laboratory*, 194 F.R.D. 289, 292 (D.C. 2000) (internal citations removed).  "[W]hen the legal advice is merely incidental to business advice, the privilege does not apply." *Id*. (internal citation removed).  In the *Neuder* matter, in application of the stated principles, the Court looked to the primary purpose of the meetings for which the communications were made, e.g., was the "legal advice sought or received [] incidental to considerations of what [was] most prudent for the successful operation of the business." *Id*. at 293, *citing to Marten v. Yellow Freight System, Inc.*, 1998 WL 13244 *8 (D.Kan.); *but see, Lindley v. Life Investors Insurance Company of America*, 2010 WL 1741407 *5 (N.D. OK 2010) (overturning the decision of the Magistrate Judge to release a document on the basis that the document "contain[ed] legal advice that the defendant treated as a confidential communication between itself and its in-house counsel").

**THE PARAGRAPH(S) BELOW TO BE REDACTED**

**THE PARAGRAPH(S) ABOVE TO BE REDACTED**

While Marriott may have chosen to have one or more attorneys write sections of the CGC memorandum related to the above topics, that is not the measure of whether the document then

7

becomes protected by the attorney-client privilege. I must look, as stated in *Neuder*, to the primary purpose of the meetings. Here, as in *Marten*, the primary purpose of the CGC memorandum was developing a successful strategy for further operation of a portion of the business, and to put it on a better financial footing as this potential plan was addressed. While this necessarily involved some legal advice, most of the memorandum concerned ordinary and customary business strategy advice, and consideration of cause-and-effect scenarios. Much-but not all-of what was redacted by the Marriott Defendants (ECF #239-2) falls within the definition of business advice, even there were parts provided by an attorney.

**THE PARAGRAPH(S) BELOW TO BE REDACTED**

**THE PARAGRAPH(S) ABOVE TO BE REDACTED**



Of course this raises the issue of how to address the CGC memorandum. I find that the CGC memorandum was prepared primarily for purposes of developing a successful strategy for further operation of a portion of the business. While portions of the memorandum may have been prepared by in-house counsel, who are afforded the same attorney-client privilege as their retained brethren, this is not the measure of application of the privilege. Undoubtedly, while in minor contribution, legal advice is intertwined within the business advice. One option would be to go through the document, line by line, striking that portion of the document which is legal advice and leaving that which is not.

I reject this approach. Marriott is a sophisticated corporation with a large and experienced legal team available for consultation. As indicated in the Declaration of Ms. Borkholder, that team was consulted and tasked with some writing and research regarding the

CGC memorandum. The case law utilized by the Court is not new, in-fact most predates the memorandum. In significant respect, the legal duty to protect the attorney-client privilege falls on the legal department, the in-house counsel, involved. When tasked with the CGC memorandum, their duty was to inform the Corporation of the operation of the privilege and to take steps to protect their advice. This could have included blocking the advice into separate paragraphs or pages, including it in a confidential addendum or even a separate memorandum. That was not done, perhaps to the ultimate detriment of Defendants who have the burden of establishing the privilege. By so intertwining the legal advice within a majority contribution of business advice, an implicit waiver of the attorney-client privilege occurred as to that advice for a number of reasons. The document is not explicitly legal advice, in fact it is primarily business advice. The purpose of the meeting/agenda was primarily business related. The information is intertwined so completely that it would be impractical to attempt redaction.

For the foregoing reasons, the Court Orders that the CGC memorandum (ECF #246) SHALL be disclosed in completely un-redacted form. Pursuant to operation of the protective order (ECF #100), a timely designation by Defendants of the confidential status, ECF #246 will remain restricted and shall be treated as confidential through the pendency of this action and in accordance with the protective order.

This Order shall be stayed for fourteen days or until the conclusion of any objection thereto. Given the pendency of certain depositions, the Court and most likely the parties, would appreciate knowing if Defendants intend to object to the instant Order. If no objection will occur, upon notification to the Court and parties, the Court will terminate the stay immediately.

As indicated above, issues were raised regarding both the fiduciary exception and crime-fraud exception.  I do not find it necessary to address these issues given the Court's ruling.  Should there be an objection and subsequent Order from the District Court overruling this Order, this Magistrate Judge would respectfully suggest that the matter be referred back for further review of those topics.

Dated at Grand Junction, Colorado, this May 22, 2018.

Gordon P. Gallagher

United States Magistrate Judge