IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 16-01301 PAB

RCHFU, LLC, et al.

    Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al.

    Defendants.

## DECLARATION OF IAN S. MARX IN SUPPORT OF MARRIOTT DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS

I, Ian S. Marx, declare and state:

1. I am a Shareholder with the law firm Greenberg Traurig, LLP, attorneys for Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC, The Cobalt Travel Company, LLC, and The Lion & Crown Travel Company, LLC (collectively, "Marriott Defendants") in the captioned matter. I respectfully submit this Supplemental Declaration in connection with the Marriott Defendants' opposition to Plaintiffs' Motion for Sanctions (ECF#223) ("the Motion").

2. The Motion concerns the Marriott Defendants' production to plaintiffs' counsel of an Affiliation Agreement Between MRTC and Lion & Crown dated November 14, 2013 (the "2013 Affiliation Agreement"), which was produced to Plaintiffs' counsel on March 13, 2018. As explained below, the 2013 Affiliation Agreement was not intentionally withheld from discovery.

NY 247369294v3

3. This case concerns allegations by owners of fractional interests at The Ritz-Carlton Club, Aspen Highlands, who complain that they have suffered damages due to actions taken by the Marriott Defendants (and, in this case, by the actions of Defendant the Aspen Highlands Condominium Association). Similar cases, brought by the same counsel that are representing plaintiffs here, were brought and are pending against the Marriott Defendants in the Superior Court of California, San Francisco County (*Petrick v. Marriott Vacations Worldwide Corporation, et. al.* (Case No. CGC 15-545987), concerning The Ritz-Carlton Club, San Franscisco and the United States Court for the Eastern District of California (*Reiser v. Marriott Vacations Worldwide Corporation, et. al.*) (Docket No.: 2:16-CV-00237-MCE-CKD), concerning The Ritz-Carlton Club, Lake Tahoe.

4. At an early stage of these cases, the parties agreed that given the overlapping nature of these three cases, in the interest of efficiency, there would be a coordinated approach to fact discovery. Thus, it was agreed that the Marriott Defendants would compile, review and produce documents on a coordinated basis with respect to the three cases and would produce witnesses for deposition once, rather than multiple occasions.

5. The Marriott Defendants store documents electronically on a per-custodian, rather than centralized, basis. The parties engaged in an extensive negotiation regarding the collection, review and production of electronically stored information ("ESI") of agreed-upon custodians, narrowed through the use of agreed-upon search terms, agreed-upon date ranges, agreed-upon custodians, and then reviewed for responsiveness and privilege. The parties' agreement concerning this protocol is reflected in letters dated March 17, April 18 and 21, 2017, copies of which are attached as Exhibit A.

2

6. In an effort to ensure that the production of documents would be responsive to Plaintiffs' document requests, and as encouraged by the Federal Rules of Civil Procedure, the foregoing process included the production of approximately 4,000 documents as an initial sample set, which were provided to plaintiffs' counsel without any review for responsiveness, to facilitate the negotiation of document custodians, date ranges, and search terms. The overall magnitude of documents compiled, reviewed and produced by the Marriott Defendants has been significant. Several million documents were preserved, several hundred thousand documents were reviewed and over 80,000 pages of documents have been produced at significant expense to the Marriott Defendants. In fact, after undertaking this agreed-upon process and producing several thousands of pages of documents, Plaintiffs repeatedly demanded additional documents from the Marriott Defendants, which the Marriott Defendants produced, often in an expedited fashion and at significant additional expense.

7. Separate and apart from the process outlined above, the Marriott Defendants also have produced "hard copy" documents not captured through the ESI review process.

8. The Marriott Defendants made an initial production of documents, on November 10, 2016, which consisted of such "hard copy" documents. A true and correct copy of our cover letter enclosing the documents is attached as Exhibit B.

9. This initial production included the following categories of documents: advertising and marketing materials; budget information; governing documents relating to the resort and exchange program; purchase contracts and related documents concerning the plaintiffs; internal notes and information relating to communications with the plaintiffs; documents relating to a survey that was conducted concerning the proposed affiliation of The

Ritz-Carlton Club, Aspen Highlands with the Marriott Vacation Club; and usage history summaries relating to the plaintiffs.

10. At the time this initial production was made on November 10, 2016, the Marriott Defendants intended it to include all of the documents we had compiled concerning the foregoing topics, which would have included the 2013 Affiliation Agreement.

11. But, unintentionally, the 2013 Affiliation Agreement itself was not included in the production. On review, our firm was in possession of the 2013 Affiliation Agreement before the time the Marriott Defendants made their initial production on November 10, 2016 but did not realize it was not produced in our production that day or thereafter. The documents produced on November 10, 2016 were gathered by at least three of our firm's attorneys and one paralegal who received the documents from the Marriott Defendants in a number of different ways (for example, in the mail, via thumb drive and by email). I requested that all of the documents set for production on November 10, 2016 be compiled for my review.

12. The failure to produce the 2013 Affiliation Agreement was the result of a good faith error by an associate or paralegal in our firm, who inadvertently failed to include it in the compilation of documents that were provided to me to be reviewed prior to the November 10, 2016 production, and was not the result of an intent by the Marriott Defendants to withhold the document.

13. There are several examples demonstrating the Marriott Defendants' intention to produce and not conceal the 2013 Affiliation Agreement.

14. The Marriott Defendants' intention to produce the 2013 Affiliation Agreement is reflected in the Responses and Objections to Plaintiffs' Requests for Production of Documents

NY 247369294v3

in the *Petrick* case, which were served on February 9, 2017. A true and correct copy of this document is attached hereto as Exhibit C. In response to Request No. 8 in the Petrick case, the only case where Plaintiffs made a specific request for "verbal or written agreements between the Marriott Defendants and Marriott Resorts Travel Company, Inc.," the Marriott Defendants specifically identified, and indicated that they would produce, the 2013 Affiliation Agreement. The Response states that: "the Marriott Defendants will produce . . . copies of the final and executed versions of (a) the Affiliation Agreement, dated November 14, 2013, between Marriott Resorts, Travel Company, Inc. and the Lion & Crown Travel Company, LLC . . ."

15. The Marriott Defendants' initial production of documents on November 10, 2016 included an agreement entitled Joinder to Affiliation Agreement Between The Lion & Crown Travel Company Co., LLC and Marriott Resorts, Travel Company, Inc., dated April 14, 2014 ("the Acknowledgement Agreement"), which specifically references the 2013 Affiliation Agreement both in the title of the document in large, all capitals font, and again in its first paragraph and then eleven separate times thereafter. A true and correct copy of the Acknowledgement Agreement is attached hereto as Exhibit D.

16. Another example of the Marriott Defendants' intentions arose during the deposition of Stephanie Sobeck, a Marriott Defendant executive, on November 17, 2017. During that deposition, there was the following exchange:

> Q. Are you aware of any types of contractual relationships between Cobalt -- what's the full name of that company? Cobalt Management --
>
> A. Cobalt Travel.
>
> Q. Cobalt Travel. Were you aware of any

5

> contracts between Cobalt -- or contractual relationships that have been documented between Cobalt Travel and Lion & Crown?
>
> A. Yeah. I think there's an affiliation agreement between the two. Cobalt Travel affiliates with each of the associations, and then Cobalt Travel affiliates with Lion & Crown, and then Lion & Crown affiliates with others, I believe.
>
> \* \* \*
>
> Q. You believe that there is some type of affiliation agreement?
>
> A. Yes. My non-legal opinion or understanding is yes.
>
> MR. MEADE: **Can I just interrupt, Matt? I don't believe that that agreement has been produced, and we would ask that it be produced.**
>
> MR. FERGUSON: We looked for it.
>
> MR. MARX: **Okay. If it has -- we'll produce it whether it has or hasn't.**
>
> MR. MEADE: Thank you.
>
> MR. FERGUSON: Rather than ask Ms. Sobeck about what it might say, we'll read it ourselves.

A true and correct copy of the portion of the deposition transcript is attached hereto as Exhibit E (emphasis added).

17. I explained then that I assumed the document had been produced but that, in any event, we would produce (or re-produce it), to plaintiffs' counsel. I did not condition that, but rather immediately said that, whether or not already produced, we would provide it.

NY 247369294v3

18.     Neither side followed up after the deposition to get the agreement to plaintiffs' counsel until March 2018. Had plaintiffs' counsel emailed or written a letter then, it would have been immediately produced as it was when that email arrived in March 2018. From our side, that was an oversight due to the press of other discovery and events in the case, not any effort to hide the documents or keep them from Plaintiffs.

19.     Another example of the Marriott Defendants' good faith intentions is found in connection with its privilege log, which was produced to Plaintiffs' counsel on January 5, 2018. In that document, there are numerous instances in which the Affiliation Agreement between Lion & Crown and Marriott Vacation Club Destinations is referenced with respect to privileged communications regarding that agreement. Attached as Exhibit F is a true and correct copy of excerpts from the Privilege Log (*see, e.g.*, the entries for documents with I.D. numbers: 10714, 63297, 63243, 63245-48).

20.     On March 12, 2018, I was in Miami to prepare for and take the depositions of witnesses in this and the related cases. I received an email from Plaintiffs' counsel Michael Reiser (a true and correct copy of which is attached hereto as Exhibit G), stating that he could not locate the 2013 Affiliation Agreement in our production and asking that it be produced.

21.     I asked our staff to search our production to locate the 2013 Affiliation Agreement and was told that this agreement was not in the database containing the documents we had produced. This was the first I had learned of the inadvertent failure to produce the 2013 Affiliation Agreement. I promptly arranged for it to be produced on March 13. Attached as Exhibit H is a true and correct copy of my email in this regard.

22. Plaintiffs contend that they have been prejudiced and have demanded that three previously deposed Marriott Defendant witnesses be produced again for their depositions (initially, Plaintiffs identified only Lee Cunningham and Stephanie Sobeck as the witnesses whose re-depositions were sought). On April 2, 2018, the Marriott Defendants offered to make Lee Cunningham and Stephanie Sobeck available for their deposition. A true and correct copy of our email in this regard is attached hereto as Exhibit I. Those depositions have now been completed, on May 15 and 18, 2018, during the same week and in the same location (Orlando, Florida), to which Plaintiffs' counsel traveled to take the previously-noticed depositions of two senior executives of the Marriott Defendants; Executive Vice-President Lani Kane-Hanan (on May 16) and Chief Executive Officer Stephen P. Weisz (on May 17).

23. Plaintiffs' motion filed on April 27, 2018 also seeks the re-deposition of Marriott Defendant witness Richard Hayward, to which we have agreed. Attached hereto as Exhibit J is a true and correct copy of an email exchange with Plaintiffs' counsel concerning our agreement to make Mr. Hayward available in California (where he works and which location Plaintiffs' counsel indicated was convenient for them); we are awaiting the scheduling of this deposition with Plaintiffs' counsel.

24. Plaintiffs contend that counsel for the Marriott Defendants improperly "coached" Lee Cunningham at his deposition on November 10, 2017. However, the narrowly excerpted portion of the transcript does not reflect that alleged "coaching" was a statement made by Greenberg Traurig's counsel in direct response to a question posed directly to counsel as to whether the Marriott Defendants were waiving privilege and relying on an advice of counsel

defense. A true and correct copy of the entire passage (quoted below), is attached hereto as Exhibit K:

> Q. Okay. And isn't it true, Mr. Cunningham, the reason you switched from a vote to a survey was because you knew you weren't going to get a vote from the Aspen members and you wanted to affiliate anyway?
>
> A. No.
>
> Q. What was the reason for changing to the survey?
>
> A. I think I've covered this ground. Upon advice from counsel, they said -- informed us that a vote was the appropriate form for this type of communication, and that's when we chose to go with the survey.
>
> MR. REISER: So, Philip, are you relying on advice of counsel on this point or are you going to waive the privilege? He's relying on advice of counsel for the decision.
>
> MR. SELLINGER: We're not relying on the advice of counsel. We're not putting the advice of counsel at issue. You asked the witness a question and he answered the question factually, that they took the position of advice of counsel. What we're relying on are the agreements, which give unfettered discretion to Cobalt to affiliate without regard to anything else. So the witness has testified to the facts you're asking, but there is no advice of counsel defense.

25. Attached hereto as Exhibit L are true and correct copies of portions of the transcript from the re-deposition of Stephanie Sobeck, taken on May 15, 2018.

26. Attached hereto as Exhibit M is a true and correct copy of an Affiliation Agreement, dated August 8, 2010, between The Lion & Crown Travel Co., LLC and The

9

NY 247369294v3

Cobalt Travel Company, LLC.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 1st day of June, 2018, in Florham Park, New Jersey.

_____
IAN S. MARX