# EXHIBIT M

THE LION & CROWN TRAVEL CO., LLC

AFFILIATION AGREEMENT
providing

THE COBALT TRAVEL COMPANY, LLC
MEMBERS

access to

THE LION & CROWN EXCHANGE PROGRAM

and

THE LION & CROWN TRAVEL CO., LLC
MEMBERS

access to

THE RITZ-CARLTON CLUB MEMBERSHIP PROGRAM

ORLA.094873:0128_1308650.13 4/7/2011 11:00 AM
581713.1 (07.28.10)

RC 003825

THIS LION & CROWN TRAVEL CO., LLC AFFILIATION AGREEMENT ("Agreement") is made and entered this 8ᵗʰ day of August, 2010 by and between The Lion & Crown Travel Co., LLC, a Delaware limited liability company, whose address is 6649 Westwood Boulevard, Orlando, Florida 32821-6090 ("**Lion & Crown**") and The Cobalt Travel Company, LLC, a Delaware corporation, whose address is 6649 Westwood Boulevard, Orlando, Florida 32821-6090 ("**Cobalt**"). Lion & Crown and Cobalt are sometimes individually referred to as a "**Party**" or collectively as "**Parties**", and said terms shall also include respective successors and assigns of any Party or Parties.

## RECITALS

WHEREAS, Lion & Crown has established an exchange program and other related benefits and services known as The Lion & Crown Exchange Program (the "**Program**") for the purpose of providing a means for Participants (as defined in **Exhibit "A,"** which is attached to and incorporated into this Agreement by this reference) to reserve the use of Accommodations (as defined in **Exhibit "A"**) that are part of the Program, in accordance with and as restricted by the terms of the Program as set forth in the Affiliation Agreements (as defined in **Exhibit "A"**) and the Exchange Procedures which are attached as **Exhibit "A"** to this Agreement, as the same are amended by the Lion & Crown in the Lion & Crown's sole and absolute discretion, from time to time; and

WHEREAS, Lion & Crown has reserved the right to affiliate the Program with another exchange program as an Affiliate Program (as defined in **Exhibit "A"**); and

WHEREAS, Cobalt has established an exchange program and other related benefits and services known as The Ritz-Carlton Club Membership Program ("RCC"); and

WHEREAS, Cobalt has reserved the right to affiliate RCC with another exchange program as an Affiliated Program (as defined in Cobalt's Affiliate Program Documents); and

WHEREAS, Lion & Crown and Cobalt desire that (i) RCC become affiliated with the Program; and (ii) that, except as otherwise provided in Section 7.7 of this Agreement, each member of RCC ("RCC Member") shall have the right to elect to become a participant in the Program and have the ability to make use of the Program in accordance with the terms of this Agreement, the Enrollment Agreement (as defined in **Exhibit "A"**), and the Exchange Procedures; and

WHEREAS, Lion & Crown and Cobalt desire that (i) the Program become affiliated with RCC as an Affiliated Program; and (ii) that each Participant in the Program shall have the right to elect to participate in RCC and have the ability to make use of the RCC Accommodations in accordance with the terms of this Agreement and Cobalt's Affiliate Program Documents (as defined in **Exhibit "A"**); and

WHEREAS, Cobalt and Lion & Crown desire to coordinate RCC's and the Program's activities with one another and for each to perform services associated therewith in accordance with the provisions of this Agreement; and

WHEREAS, Lion & Crown and Cobalt acknowledge that Cobalt shall have all of the duties, obligations and responsibilities for facilitating the operation of the Program regarding the use of RCC's Accommodations (as defined in **Exhibit "A"**) as part of the Program in accordance with the terms of this Agreement, the Exchange Procedures and applicable law, so as to ensure and facilitate the availability and use of the RCC Accommodations by Participants and fully integrate Participating RCC Members into the Program; and

WHEREAS, Lion & Crown and Cobalt acknowledge that Lion & Crown shall have all of the duties, obligations and responsibilities for the operation of the Program, regarding the use of

1

RC 003826

Accommodations (other than RCC Accommodations) as part of the Program in accordance with the terms of this Agreement, the Exchange Procedures and applicable law; and

WHEREAS, Membership in the Program is not an appurtenance to Interests (as defined in Exhibit "A") of Participating RCC Members. In order to enjoy the benefits of Membership (as defined in Exhibit "A") in the Program as a Participating RCC Member, the owner of an Interest at an RCC Destination (as defined in Article II) must voluntarily enter into an Enrollment Agreement with Lion & Crown and maintain the Enrollment Agreement in effect and remain in good standing.

NOW, THEREFORE, in consideration of the mutual covenants and obligations contained in this Agreement, the parties hereby agree as follows:

### AGREEMENT

### I.    Recitals and RCC Member Covenants

1.1 By execution of this Agreement, the Parties agree that the above recitals are true and correct and are hereby incorporated into this Agreement.

1.2 By entering into an Enrollment Agreement (as defined in Exhibit "A"), each Participating RCC Member (as defined in Article II) is deemed to have consented to the terms and conditions of this Agreement and the Exchange Company Documents (as defined in Exhibit "A"). Wherever Cobalt acknowledgment, consent, understanding and/or agreement is stated or implied in this Agreement, such acknowledgment, consent, understanding and/or agreement shall be deemed to also have been given by each Participating RCC Member, if applicable.

### II.    Definitions

Capitalized terms used in this Agreement and not defined herein shall be ascribed the meanings set forth in the Exchange Procedures, which document is attached as Exhibit "A" to this Agreement. The following terms are defined as follows:

Participating RCC Member means an RCC Member who has executed an Enrollment Agreement which is still in effect, and is in good standing with Cobalt and Lion & Crown.

Program Marks include, but are not limited to, all trademarks, trade names, symbols, logos, slogans, designs, insignia, emblems, devices, service marks and distinctive designs of buildings and signs, architectural plans, drawings, specifications, computer files, or combinations thereof, which are used to identify The Lion & Crown Travel Co., LLC, or any of its affiliates. All works in which copyright rests in Lion & Crown or any affiliate of Lion & Crown or any other and all patents registered or applied for in the name of Lion & Crown or any affiliate of Lion & Crown shall be considered "Program Marks." The term "Program Marks" shall include all present and future Program Marks, whether they are now or hereafter owned by Lion & Crown or any affiliate of Lion & Crown, and whether or not they are registered under the laws of the United States, or any other country. The name "The Ritz-Carlton Destination Club" used separately or in conjunction with other words, names, or logos, are examples of Program Marks.

Program Materials mean those reservation services, promotional and/or informational materials developed by Lion & Crown for the Program from time to time.

RCC Destination means a resort that is affiliated with RCC through an agreement with Cobalt.

2

RC 003827

RCC Marks include, but are not limited to, all trademarks, trade names, symbols, logos, slogans, designs, insignia, emblems, devices, service marks and distinctive designs of buildings and signs, architectural plans, drawings, specifications, computer files, or combinations thereof, which are used to identify the Cobalt Travel Company, LLC, or any of its affiliates with respect to RCC Destinations. All works in which copyright rests in Cobalt or any affiliate of Cobalt or any other and all patents registered or applied for in the name of Cobalt or any affiliate of Cobalt shall be considered "RCC Marks." The term "RCC Marks" shall include all present and future RCC Marks, whether they are now or hereafter owned by Cobalt or any affiliate of Cobalt, and whether or not they are registered under the laws of the United States, or any other country. The names "The Ritz-Carlton Club" and "The Ritz-Carlton Club Membership Plan", used separately or in conjunction with other words, names, or logos, are examples of RCC Marks.

### III.    RCC's Relationship with the Program.

3.1 RCC is hereby affiliated with the Program as an Affiliate Program in accordance with the terms and conditions of the Exchange Company Documents. During the term of this Agreement and any renewal terms, Cobalt shall cooperate fully with Lion & Crown in the promotion and operation of the Program, and Cobalt will use Cobalt's best efforts to obtain the cooperation of the Associations and management companies for the various RCC Destinations.

3.2 The Program is hereby affiliated with RCC as an Affiliated Program in accordance with the terms and conditions of Cobalt's Affiliate Program Documents. During the term of this Agreement and any renewal terms, Lion & Crown shall cooperate fully with Cobalt in the promotion and operation of RCC, and Lion & Crown will use Lion & Crown's best efforts to obtain the cooperation of the Associations and management companies for the various Lion & Crown Affiliate Programs.

3.3 Cobalt hereby acknowledges the following:

a.    Membership in the Program is not an appurtenance to an Interest, however, for so long as this Agreement is in effect, Participating RCC Members will have the right and privilege to reserve the use of Accommodations and facilities that are part of the Program (including RCC), in accordance with the terms and conditions of the Exchange Procedures and this Agreement. Moreover, Participating RCC Members will have the right to reserve Accommodations during the 11 Month Window, 9 Month Window, 6 Month Window, or 60 Day Window.

b.    In the event Lion & Crown affiliates the Program with an Affiliate Program in accordance with Article VIII below, the Participants in such Affiliate Program may reserve, subject to availability and the Exchange Procedures, through participation in the Program, any Accommodations that are available through the Program during certain Exchange Windows; provided, however, that only those Affiliate Programs whose Participants are granted the right to reserve Accommodations during the 11 Month Window and/or 9 Month Window pursuant to such Affiliate Programs' Affiliation Agreements will have the right to reserve Accommodations in RCC during the during the 11 Month Window and/or 9 Month Window.

c.    The Program is not a legal entity nor an association of any kind, but instead is comprised of the reservation and exchange services and other benefits currently offered and the restrictions currently imposed through Lion & Crown. Participants do not acquire any interest in the Program *per sé* as part of their Interest or through their Enrollment Agreement. The services provided by Lion & Crown do not include operation, management and assessment collection duties for RCC or a particular RCC Destination, which are provided for and governed by separate agreements.

3

RC 003828

3.4  Lion & Crown hereby acknowledges the following:

a.  For so long as this Agreement is in effect, Participating RCC Members will have the right and privilege to reserve the use of Accommodations and facilities that are part of the Program in accordance with the terms and conditions of the Exchange Procedures and this Agreement.

b.  RCC is not a legal entity nor an association of any kind, but instead is comprised of the reservation and exchange services and other benefits currently offered and the restrictions currently imposed through Cobalt. Participants do not acquire any interest in RCC *per sé* as part of their Interest. The services provided by RCC do not include operation, management and assessment collection duties for the Program or a particular Affiliate Program, which are provided for and governed by separate agreements.

## IV.    Covenants of Cobalt

4.1  In connection with RCC, Cobalt agrees to fully and accurately describe the Program to RCC Members and prospective purchasers of Interests that will be affiliated with RCC (including any limitations of rights under the Program). Cobalt shall not in any way misrepresent the Program or Cobalt's/RCC's relationship with Lion & Crown to RCC Members or prospective purchasers of Interests. Cobalt shall not amend, summarize, change or modify any Program Materials without the prior express written consent of Lion & Crown, and shall provide such Program Materials, the Exchange Company Documents and Cobalt's Affiliate Program Documents, as amended from time to time, to RCC Members upon their reasonable request and/or as required by applicable law.

4.2  Cobalt agrees to immediately notify Lion & Crown of any change in any fact or circumstance affecting the operation of RCC and/or the Program with respect to an RCC Destination, including the termination of any existing Destination Manager.

4.3  Cobalt agrees to perform its functions in the Program in accordance with the terms of this Agreement. Further, Cobalt agrees to honor all Program confirmed exchanges at an RCC Destination, including providing all Participants and their Guests and Family Members with similar rights and privileges and at similar rates afforded to RCC Members.

## V.    Covenants of Lion & Crown

5.1  In connection with the Program, Lion & Crown agrees to fully and accurately describe the Program to Participants and prospective purchasers of Interests that will be affiliated with the Program (including any limitations of rights to access RCC Accommodations). Lion & Crown shall not in any way misrepresent RCC or the Program's/Lion & Crown's relationship with Cobalt to Participants or prospective purchasers of Interests. Lion & Crown shall not amend, summarize, change or modify any of Cobalt's Affiliate Program Documents without the prior express written consent of Cobalt, and shall provide Cobalt's Affiliate Program Documents and the Exchange Company Documents, as amended from time to time, to Participants upon their reasonable request and/or as required by applicable law.

5.2  Lion & Crown agrees to immediately notify Cobalt of any change in any fact or circumstance affecting the operation of the Program and/or RCC with respect to a Destination, including the termination of any existing Destination Manager.

5.3  Lion & Crown agrees to perform its functions in the Program in accordance with the terms of this Agreement. Further, Lion & Crown agrees to honor all Program confirmed exchanges at a

4

RC 003829

Destination affiliated with the Program, including providing all Participating RCC Members and their Guests and Family Members with similar rights and privileges and at similar rates afforded to Participants. Participating RCC Members may be required to pay additional charges to use some amenities.

## VI. Operation and Management of the Program.

6.1 By execution of this Agreement, the Parties hereby acknowledge that Lion & Crown has all of the rights and duties with regard to the operation of the Program and that Cobalt has all of the rights and duties with regard to the operation of RCC. In this regard, the Parties agree to cooperate in all respects to assist the other Party in connection with (i) facilitating and fulfilling the reservation, check-in, and use of Use Periods in the Accommodations of all of the Affiliate Programs including RCC Destinations; and (ii) implementing the Exchange Procedures and the Exchange Company Documents.

6.2 Lion & Crown shall have the right to adopt and amend those portions of the Exchange Company Documents which Lion & Crown, in its sole and absolute discretion, determines are necessary or desirable to amend from time to time in order to operate and manage the Program. Cobalt agrees that each Participating RCC Member's participation in the Program shall be governed by the provisions of the Exchange Company Documents as adopted and amended from time to time by Lion & Crown; however, with the exception of RCC Accommodations reserved through the Program, an RCC Member's reservation and use of RCC Accommodations shall be governed by the RCC's reservation system and Cobalt's Affiliate Program Documents.

6.3 Cobalt shall have the right to adopt and amend those portions of Cobalt's Affiliate Program Documents which Cobalt, in its sole and absolute discretion, determines are necessary or desirable to amend from time to time in order to operate and manage RCC.

6.4 Cobalt agrees that Lion & Crown shall have the right, subject to the Exchange Procedures, to reserve any unreserved use of Accommodations in the Program for its own promotional use, or any other purpose as Lion & Crown determines in its sole and absolute discretion.

6.5 Cobalt acknowledges and agrees that all personal and intellectual property (including the property set forth in Article IX) related to Lion & Crown's operation of the Program, including any and all computer hardware and software, is and always shall be the personal property of Lion & Crown. In the event that this Agreement is terminated, irrespective of whether the termination is voluntary or involuntary and irrespective of the cause of such termination, Lion & Crown will continue to own and control the Program, subject to, and in accordance with applicable law.

6.6 Lion & Crown acknowledges and agrees that all personal and intellectual property (including the property set forth in Article IX) related to Cobalt's operation of RCC, including any and all computer hardware and software, is and always shall be the personal property of Cobalt. In the event that this Agreement is terminated, irrespective of whether the termination is voluntary or involuntary and irrespective of the cause of such termination, Cobalt will continue to own and control the RCC, subject to, and in accordance with applicable law.

6.7 By execution of this Agreement, Cobalt hereby acknowledges that Lion & Crown is responsible for exercising all of the rights and duties associated with the affiliation of the Program with any Affiliate Program or other program which provides use rights to Participating RCC Members and to Participants in the Program and other various locations through exchange of use rights or other means. Lion & Crown shall have the right, but not the obligation, to manage all such use rights made available through any such Affiliate Program or other program on behalf of Participating RCC Members in coordination with the provider of such Affiliate Program or other program.

ORLA.094873:0128_1308650.13 4/7/2011 11:00 AM

RC 003830

6.8  By execution of this Agreement, Lion & Crown hereby acknowledges that Cobalt is responsible for exercising all of the rights and duties associated with the affiliation of RCC with any other resorts or programs which provide use rights to RCC Members and other various locations through exchange of use rights or other means. Cobalt shall have the right, but not the obligation, to manage all such use rights made through any such Associated Program (as defined in Cobalt's Affiliate Program Documents) on behalf of Participants in coordination with the provider of such Associated Program.

6.9  The Parties agree and acknowledge that upon renewal of this Agreement, any and all claims against the other Party are waived by the claiming Party, and the offending Party is released from all liability, if any, arising out of this Agreement that occurred prior to the renewal of same.

6. 10  Lion & Crown's liability, if any, in connection with Membership and participation in the Program is limited to the amount of Exchange Company Dues paid to Lion & Crown by Cobalt or the Participating RCC Members, if any.

6.11  If a Party shall fail or be delayed in the performance of any duty or obligation under this Agreement, including providing exchange Accommodations, due to causes beyond the reasonable control of and without the fault or negligence of such Party, then that Party shall be excused from such failure or delay upon delivery of written notice to the affected Participant providing the reason for such nonperformance. Among the causes which may excuse a Party's performance include, but are not limited to, Acts of God or public enemy, fire, strikes, lock-out or other labor unrest, riot, explosion, civil disobedience, declared or undeclared war, revolution, insurrection, boycotts, acts of piracy, acts of terrorism, acts of public authorities, blockade, embargo, accident, epidemic or quarantine, and delay or defaults caused by public or common carriers.

6.12  The Parties are prohibited from doing business with certain entities, individuals and groups of individuals as may be set forth from time to time on the U.S. Department of Homeland Security's Specially Designated Nationals and Blocked Persons List and the Terrorism List (collectively, "**Blocked Parties**"). If a Party receives a request from a Participant or Participating RCC Member who is defined as a Blocked Party, such Party reserves the right to refuse Membership or participation for such person(s) or entity(ies).

## VII.    Assessments, Collections and Transaction Costs

7.1  Currently, Lion & Crown does not charge Participating RCC Members Exchange Company Dues or charge renewal fees or exchange fees; however, Lion & Crown reserves the right to charge exchange fees and renewal fees and impose Exchange Company Dues on Participating RCC Members in the future. In the event that Lion & Crown begins to charge Participating RCC Members Exchange Company Dues, renewal fees, or exchange fees, Lion & Crown will notify such Participants at least thirty (30) days prior to the imposition of Exchange Company Dues, renewal fees, or exchange fees. Exchange Company Dues may include the Participant's share of the costs and expenses incurred by Lion & Crown in connection with the operation of the Program and the delivery of other Program services and benefits. Exchange Company Dues, exchange fees, and renewal fees will be assessed by the Lion & Crown directly to the Participating RCC Member. In this regard, Lion & Crown reserves the right to establish the Exchange Company Dues, renewal fees, or exchange fees as determined by Lion & Crown, in its sole and absolute discretion, and based on those factors that Lion & Crown determines to be reasonable, as determined in the sole and absolute discretion of Lion & Crown. Lion & Crown may, in Lion & Crown's sole and absolute discretion, utilize a method of varying the Exchange Company Dues, renewal fees, or exchange fees among different Affiliate Programs or Participating RCC Members. In addition, the Exchange Company Dues, renewal fees, or exchange fees may contain a reasonable profit

RC 003831

factor. Any extraordinary or special costs and expenses incurred by Lion & Crown with respect to a given Participating RCC Member or group of Participating RCC Members, may be assessed by Lion & Crown only to the affected RCC Member or group of RCC Members, or in addition to their Exchange Company Dues; provided; however, Cobalt will not be assessed any Exchange Company Dues, renewal fees, or exchange fees or charges by Lion & Crown. Except as provided in this Agreement, Cobalt is not entitled to approve increases in Exchange Company Dues, renewal fees, or exchange fees. Cobalt agrees that Cobalt will not charge Lion & Crown or the Participants any dues in connection with this Agreement.

7.2 Exchange Company Dues, if any, are payable no more than 30 days after they are assessed.

7.3 Cobalt agrees to use commercially reasonable efforts to ensure that the Associations for RCC Destinations annually assess and collect all amounts due from Participating RCC Members for the maintenance and operation of the RCC Destination, as required by Cobalt's Affiliate Program Documents. All Exchange Company Dues, if any, owed to Lion & Crown from Participating RCC Members will be assessed and collected separately by Lion & Crown, unless Cobalt and Lion & Crown agree otherwise.

7.4 Cobalt acknowledges and agrees that any Participating RCC Member making a reservation pursuant to the Exchange Procedures, other than a reservation by an RCC Member to use an Accommodation at the Participating RCC Member's Destination or through Cobalt's reservation procedures, shall be personally liable for any transaction charges assessed to the Participating RCC Member by Lion & Crown from time to time as set forth in the Exchange Procedures, if any.

7.5 Cobalt acknowledges and agrees that during the 60 Day Window, Lion & Crown has the right to reserve available Use Periods, for the reasonable purposes of customer relations, public relations, employee relations, and marketing and sales of Interests, vacation ownership interests at other resort condominiums or club resorts, or such other vacation ownership or multisite vacation ownership or membership plans developed or marketed by Lion & Crown or its affiliates from time to time. Any amounts collected by Lion & Crown in connection with the rights reserved in this paragraph shall belong to Lion & Crown.

7.6 Cobalt acknowledges and agrees that Lion & Crown has the exclusive right to utilize Cobalt Vacation Points assigned to Lion & Crown or any other Cobalt Vacation Points that Lion & Crown is entitled to use for any purpose, including, without limitation, in Lion & Crown's sole and absolute discretion, any purpose related to marketing, selling, or promoting the Program or other timeshare or fractional projects developed, marketed, or offered by Lion & Crown's affiliates, extending rights for purposes of employee, customer or public relations or utilizing Use Periods or Cobalt Vacation Points in manners which will enhance or expand the Program.

7.7 Cobalt acknowledges and agrees that Lion & Crown, in Lion & Crown's sole and absolute discretion, reserves the right to only offer Membership in the Program through an Enrollment Agreement to those RCC Members who (i) purchased an Interest from or through: (a) the developer of the RCC Member's Destination; or (b) any broker authorized from time to time as an "Approved Broker" by Lion & Crown; (ii) acquire their Interest by virtue of being a Family Member (as defined in the Reservation Procedures) by gift, will, divorce decree, testamentary disposition, intestate succession or trust from another RCC Member; or (iii) are otherwise granted Membership by Lion & Crown, upon the terms and conditions then determined by Lion & Crown in Lion & Crown's sole and absolute discretion. In addition, Cobalt acknowledges and agrees that Local Members (as defined in Cobalt's Affiliate Program Documents) may, subject to Lion & Crown's sole and absolute discretion, not be offered the opportunity enter into an Enrollment Agreement by Lion & Crown.

7

RC 003832

7.8 Cobalt agrees that Cobalt will not charge Participants any dues or exchange fees in connection with Participants' use of the Accommodations at RCC Destinations.

## VIII. Affiliation and Deletion of Destinations from Program

8.1 The Parties agree that Lion & Crown shall have the following rights with respect to the addition of locations as Destinations and/or Affiliate Programs:

a.      Lion & Crown may, in its sole and absolute discretion, elect to affiliate other Accommodations with the Program as part of Destinations or Affiliate Programs from time to time. Cobalt shall not be entitled to participate in or consent to Lion & Crown's decision in this regard. Cobalt acknowledges and understands that in the event other Destinations or Affiliate Programs are affiliated with the Program, the addition of Accommodations and facilities will result in the addition of new Participants, who, subject to the Distribution for each respective Participant, will also reserve, subject to availability, the use of Accommodations and facilities within the Program, including Accommodations affiliated with RCC.

b.      Lion & Crown may, in its sole and absolute discretion, create a separate Program, develop individual resort properties as residential, transient or other use, or enter into management agreements with resort properties without the approval of Cobalt. Lion & Crown is under no obligation to affiliate with the Program any specific location.

8.2 In addition to the provisions of Article X below, the Parties agree each Party may add or delete (i) an Accommodation; (ii) a Destination; or (iii) an Affiliate Program or Affiliated Program (as defined in Cobalt's Affiliate Program Documents), as the case may be, in such Party's sole and absolute discretion. In the event that (i) an Accommodation; (ii) a Destination; or (iii) an Affiliate Program or Affiliated Program is deleted from the Program or RCC, all Participants who own Interests (or ownership interests) in the deleted Destination or Participants of a deleted Affiliate Program or Affiliated Program will also be deleted from the Program and such Participants or Participating RCC Members will not be able to make reservations at other Destinations, Affiliate Programs, or Affiliated Programs.

8.3 While the Parties do not currently intend to substitute new locations for existing (i) Accommodations; (ii) Destinations; or (iii) Affiliate Programs or Affiliated Program, the Parties have the right to exercise substitution rights, from time to time, in accordance with applicable law.

8.4 The Parties understand and acknowledge that the Accommodations and facilities of Affiliate Programs are voluntarily affiliated with the Program or RCC, as the case may be, and there is no guarantee that Accommodations and facilities at an Affiliate Program will ever be available for reservation or use by Participants.

## IX. Program Marks, RCC Marks, and Program Materials

9.1. Lion & Crown and its affiliates and subsidiaries are the owners of all rights in the Program Marks. Neither Cobalt nor the RCC Members have any license to use or other interest in the Program Marks. Program Marks shall remain the exclusive property of Lion & Crown or one of its affiliates. Upon termination of this Agreement, Cobalt shall have no right to use the Program Marks and any use of the Program Marks by Cobalt shall immediately cease. In addition, upon termination, neither Cobalt nor the RCC Members shall be entitled to participate in or have access to any additional benefit or program provided or sponsored by Lion & Crown or any of its affiliates. The provisions of this Section 9.1 and the enforceability thereof shall survive the expiration or termination of this Agreement.

ORLA.094873:0128_1308650.13 4/7/2011 11:00 AM

RC 003833

9.2  Cobalt and its affiliates and subsidiaries are the owners of all rights in the RCC Marks.  Neither Lion & Crown nor the Participants have any license to use or other interest in the RCC Marks.  RCC Marks shall remain the exclusive property of Lion & Crown or one of its affiliates.  Upon termination of this Agreement, Lion & Crown shall have no right to use the RCC Marks and any use of the RCC Marks by Lion & Crown shall immediately cease.  In addition, upon termination, neither Lion & Crown nor the Participants shall be entitled to participate in or have access to any additional benefit or program provided or sponsored by Cobalt or any of its affiliates.  The provisions of this Section 9.2 and the enforceability thereof shall survive the expiration or termination of this Agreement.

9.3  Cobalt acknowledges that:

a.      Lion & Crown has the right to exclude others from using the Program Marks and Program Materials and any variant or combination of said marks or materials that Lion & Crown determines, in its sole and absolute discretion, to be confusingly similar to the Program Marks or Program Materials;

b.      Lion & Crown has the right to control the use of the Program Marks and Program Materials in connection with the Program; and

c.      all uses of the Program Marks and Program Materials inure exclusively to the benefit of Lion & Crown.

9.4  Lion & Crown acknowledges that:

a.      Cobalt has the right to exclude others from using the RCC Marks and Affiliate Program Materials for RCC and any variant or combination of said marks or materials that Cobalt determines, in its sole and absolute discretion, to be confusingly similar to the RCC Marks or Program Materials;

b.      Cobalt has the right to control the use of the RCC Marks and Affiliate Program Materials for RCC in connection with RCC; and

c.      all uses of the RCC Marks and Affiliate Program Materials for RCC inure exclusively to the benefit of Cobalt.

X.      Term, Early Termination, Renewal and Remedies.

10.1  This Agreement shall have a term commencing on the Effective Date and shall continue until five (5) years after the Effective Date.  Notwithstanding the foregoing, this Agreement may otherwise be terminated as provided for below in this Article X.

10.2  Termination of this Agreement, the result of which is that RCC is no longer affiliated with the Program and the Program is no longer affiliated with RCC, can occur as follows:

a.      This Agreement will automatically terminate upon:

(1)      the declaration of bankruptcy or insolvency of either Party according to law or if any general assignment shall be made of Cobalt's property for the benefit of creditors; provided, however, the non-bankrupt Party shall have the right, in its sole and absolute discretion, to continue the Agreement determined by such Party in its sole and absolute discretion; or

9

RC 003834

(2)      the termination of RCC or the Program.

b.      The Parties may terminate this Agreement:

(1)      by the mutual written agreement of the Parties, effective upon the date agreed to by the Parties; or

(2)      in the event of a material breach of any of the terms, conditions, covenants, representations or warranties contained in this Agreement without the breaching Party curing the asserted breach to the reasonable satisfaction of the Party giving such notice within thirty (30) days of the date of written notice to the breaching Party stating the grounds for such termination.

c.      Either Party may terminate or suspend its participation in this Agreement, immediately upon written notice to the other Party, in the event that a Party determines, in its sole and absolute discretion, that the other Party has failed in such Party's efforts to ensure that the Destinations affiliated with such Party are managed, operated and maintained in a manner consistent with the standards of quality and customer service established by Lion & Crown or RCC, as the case may be, from time to time.

10.3  Any Party's exercise of its right to terminate pursuant to this Agreement shall in no way limit or impair its right to seek other legal or equitable remedies in connection with a breach by any other Party.

10.4  This Agreement will automatically be renewed for additional five (5) year terms unless either party provides notice to the other party of its desire not to renew this Agreement at least ninety (90) days prior to the end of the then-current term.

10.5  Upon termination of this Agreement, the following events shall occur:

a.      Cobalt shall immediately cease using and thereafter cease using all the Program Marks and any name or mark similar thereto and all Program Materials including all of Lion & Crown's personal and intellectual property utilized in connection with the operation, promotion, identification and management of the Program, except as specifically authorized by this Agreement. No property right in or privilege to use the Program Marks or Program Materials is created by this Agreement that will extend beyond the expiration or termination of this Agreement, except as specifically permitted by this Agreement. Failure to cease using the Program Marks or Program Materials following termination of this Agreement shall entitle Lion & Crown to receive liquidated damages from Cobalt in the amount of One Thousand Dollars ($1,000) per day in addition to any other injunctive or equitable relief available to Lion & Crown. This paragraph shall survive the termination of this Agreement.

b.      Lion & Crown will honor all reservations and reservation privileges of Participating RCC Members or Participants from other Affiliate Programs reserving Accommodations in Destinations that are confirmed or accrued prior to termination or suspension. This requirement shall survive the termination of this Agreement.

c.      Participating RCC Members shall no longer be affiliated with the Program.

d.      Lion & Crown shall immediately cease using and thereafter cease using all the RCC Marks and any name or mark similar thereto and all of Cobalt's Affiliate Program Documents pertaining to RCC including all of Cobalt's personal and intellectual property utilized in connection with the operation, promotion, identification and management of RCC, except as specifically authorized by

ORLA.094873:0128_1308650.13 4/7/2011 11:00 AM

RC 003835

this Agreement. No property right in or privilege to use the RCC Marks or Cobalt's Affiliate Program Documents pertaining to RCC is created by this Agreement that will extend beyond the expiration or termination of this Agreement, except as specifically permitted by this Agreement. Failure to cease using the RCC Marks or Cobalt's Affiliate Program Documents pertaining to RCC following termination of this Agreement shall entitle Cobalt to receive liquidated damages from Lion & Crown in the amount of One Thousand Dollars ($1,000) per day in addition to any other injunctive or equitable relief available to Cobalt. This paragraph shall survive the termination of this Agreement.

     e.     Cobalt will honor all reservations and reservation privileges of Participants reserving Accommodations in RCC Destinations that are confirmed or accrued prior to termination or suspension. This requirement shall survive the termination of this Agreement.

     f.     Participants shall no longer be affiliated with RCC.

10.6  In the event that a Party fails to perform its duties under this Agreement to the extent that a Participating RCC Member, Participant, or other authorized person with a confirmed reservation of Accommodations in a Destination (including an RCC Destination) is wrongfully denied access to the Accommodations of the Destination (including an RCC Destination), then the failing Party shall immediately correct such denial of access at its own reasonable expense.

10.7  Each Party acknowledges that, unless specifically stated otherwise in this Agreement, damages cannot adequately compensate the other Party for a breach of any of the provisions of this Agreement, and therefore the Parties agree that each Party shall be entitled to a remedy of specific performance or injunctive relief, as appropriate, in the event of a breach or threatened breach of any such provisions by any other Party, in addition to any other appropriate legal or equitable remedies.

10.8  Each Party agrees to indemnify, defend and hold harmless the other Party from and against any and all claims, demands, obligations, deficiencies, judgments, damages, suits, losses, penalties, expenses, costs (including reasonable attorneys' fees at the trial and appellate levels) and liabilities of any kind, type or nature whatsoever directly or indirectly resulting from, arising out of or in connection with this Agreement or the operation of its business as a result of any acts or omissions by it or any of its directors, officers, partners, employees, representatives, agents, brokers, salesmen or associates.

## XI.   Miscellaneous.

11.1  This Agreement shall become effective on the date that it is executed by all Parties (the "**Effective Date**"), and shall continue in force and effect until its scheduled termination or until such time as it is otherwise terminated pursuant to the terms hereof.

11.2  Either Party has the right to assign its rights and duties under this Agreement.

11.3  Except as may be otherwise provided in this Agreement, any notice, demand, request, consent, approval or communication under this Agreement must be in writing and shall be deemed duly given or made: (a) when deposited, postage prepaid, in the United States mail, certified or registered mail with a return receipt requested, addressed to the Party at the address shown above; (b) when delivered personally to the Party at the address specified above; or (c) when deposited with a nationally recognized overnight courier service, fee prepaid, with receipt of confirmation requested, addressed to the Party as specified above. A Party may designate a different address for receiving notices hereunder by giving notice thereof to the other Party pursuant to this Section 11.3.

ORLA.094873:0128_1308650.13 4/7/2011 11:00 AM

RC 003836

11.4 The headings in this Agreement are intended solely for convenience of reference and shall be given no effect in the construction or interpretation of this Agreement. All references in this Agreement to particular recitals, articles, sections and subsections are references to recitals, articles, sections and subsections of this Agreement. The term "include" and similar terms (e.g., includes, including, included, comprises, comprising, such as, e.g., and for example), when used as part of a phrase including one or more specific items, are used by way of example and not of limitation.

11.5 In the event that any clause or provision of this Agreement is held to be invalid by any court of competent jurisdiction, the invalidity of such clause or provision shall not affect any other provision of this Agreement. Failure of any Party to insist on strict compliance with the provisions of this Agreement shall not constitute waiver of that Party's right to demand later compliance with the same or other provisions of this Agreement.

11.6 This Agreement constitutes the entire understanding and agreement among the Parties concerning the subject matter of this Agreement. All understandings between the Parties are merged into this Agreement, and there are no representations, warranties, covenants, obligations, understandings or agreements, oral or otherwise, in relation thereto between the Parties other than those incorporated herein.

11.7 This Agreement shall be governed by, and shall be construed in accordance with, the laws of the State of Florida without regard to its conflict of law provisions. Except as provided in Section 11.8, in the event any such suit or legal action is commenced by either Party, the other Party hereby agrees, consents and submits to the personal jurisdiction of the Circuit Court of the Ninth Judicial Circuit of Florida in and for Orange County, Florida, with respect to such suit or legal action, and each Party also hereby consents and submits to and agrees that venue in any such suit or legal action is proper only in said court and county, and each Party hereby waives any and all personal rights under applicable law or in equity to object to the jurisdiction and venue of said court and county. Such jurisdiction and venue shall be exclusive of any other jurisdiction and venue.

11.8 A dispute under this Agreement shall be governed exclusively by the laws of the State of Florida and shall be controlled and decided by arbitration. Except as otherwise provided in this Agreement, if any claim, dispute, controversy or other matter in question between the Parties, arising out of, or relating to this Agreement, or the breach thereof, including the right of any Party to terminate this Agreement, which cannot be resolved by the Parties (each, a "Dispute") arises under this Agreement that is not settled promptly in the ordinary course of business, the Parties shall seek to resolve any such Dispute between them, first, by negotiating promptly with each other in good faith. If the Parties are unable to resolve the Dispute between them within ten (10) business days (or such period as the Parties shall otherwise agree) through these negotiations, then any such Dispute shall be resolved through binding arbitration. Except for the right of either Party to apply to a court for a temporary restraining order, preliminary injunction, or other equitable relief to preserve the status quo or prevent irreparable harm, any dispute between or among the Parties arising out of or relating to this Agreement, including any dispute for which a Party could but does not elect to terminate this Agreement in accordance with its terms, shall be resolved by binding arbitration conducted under and governed by the arbitration rules of the American Arbitration Association (the "AAA") and the Federal Arbitration Act. Judgment upon any arbitration award may be entered in the Courts of Orange County, Florida. Any Party to this Agreement may bring an action, including a summary or expedited proceeding, to compel arbitration of any controversy or claim to which this Agreement applies in any court having jurisdiction over such action. Arbitration will be conducted in the following manner:

(a)     The arbitration shall be conducted in Orange County, Florida and administered by the AAA.

12

RC 003837

(b)     One arbitrator mutually agreeable to the parties will be selected. If the parties are unable to agree on an arbitrator, the AAA will appoint one.

(c)     If the AAA is unable or legally precluded from administering the arbitration or fulfilling any role given to it by this Agreement, then J.A.M.S./Endispute will serve.

(d)     The dispute will be subject to expedited arbitration. All arbitration hearings will be commenced within thirty (30) days of the demand for arbitration; further, the arbitrator shall only, upon a showing of cause, be permitted to extend the commencement of such hearing for up to an additional fourteen (14) days.

(e)     No provision in this Agreement regarding submission to jurisdiction and/or venue in any court is intended or shall be construed to be in derogation of the provisions for arbitration of any controversy or claim.

(f)     The authority of the arbitrator to award damages or other relief shall be limited to relief provided for in this Agreement and shall not include any relief excluded by this Agreement. The arbitrator shall be bound to apply Florida law to all disputes. The decision or award of the arbitrator shall be accompanied by a reasoned opinion, which shall include findings of fact, and shall include a breakdown as to specific claims.

(g)     Consistent with the expedited nature of the arbitration provided for in this Agreement, each Party will, upon the written request of the other Party, promptly provide the other with copies of documents relevant to the issues raised by any claim or counterclaim. Any dispute regarding discovery, or the relevance or scope thereof, shall be determined by the arbitrator, whose determination shall be conclusive. All discovery shall be completed within fifteen (15) days of a demand for arbitration; further, the arbitrator shall only, upon a showing of cause, be permitted to extend the completion of discovery for up to an additional ten (10) days.

(h)     Each Party in any arbitration will be responsible for its own costs and fees as provided, including the Party's pro-rata share of the arbitrator's fee and administrative fees.

(i)     Except as may be required by law, neither a Party nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of each Party.

11.9 This Agreement and all of its provisions shall be binding upon and inure to the benefit of the Parties and their successors and permitted assigns. In no event shall the terms and conditions of this Agreement be deemed in any way to inure to the benefit of any person or party not expressly made a Party to this Agreement except for successors or permitted assigns to Parties to this Agreement.

11.10 THE **PARTIES** HEREBY WAIVE ANY RIGHT THEY MAY HAVE UNDER ANY APPLICABLE LAW TO A TRIAL BY JURY WITH RESPECT TO ANY SUIT OR LEGAL ACTION WHICH MAY BE COMMENCED BY OR AGAINST THE OTHER CONCERNING THE INTERPRETATION, CONSTRUCTION, VALIDITY, ENFORCEMENT OR PERFORMANCE OF THIS AGREEMENT OR ANY OTHER AGREEMENT OR INSTRUMENT EXECUTED IN CONNECTION WITH THIS AGREEMENT, INCLUDING THE EXCHANGE PROCEDURES.

11.11 Except for changes to this Agreement or provisions within this Agreement which Lion & Crown may make in its sole and absolute discretion pursuant to the terms of this Agreement, neither this Agreement nor any of its provisions can be changed, waived, discharged, terminated or

13

RC 003838

otherwise altered, except by an instrument in writing signed by the Party against whom enforcement of the change, waiver, discharge, termination or alteration is sought.

11.12   This Agreement may be executed by the Parties in separate counterparts and via facsimile, and each part will be deemed an original and both of which together will be deemed to be one and the same instrument.

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed as of the date set forth above.

LION & CROWN:

The Lion & Crown Travel Co., LLC, a Delaware limited liability company

By: The Ritz-Carlton Development Company, Inc., Sole Member

By: _____

Print Name: RALPH LEE CUNNINGHAM

As its: VICE PRESIDENT

COBALT:

The Cobalt Travel Company, LLC, a Delaware limited liability company

By: _____

Print Name: ROBERT PHILLIPS

As its: VICE. PRESIDENT

14

RC 003839

Exhibit "A"

Exchange Procedures

ORLA.094873:0128_1308650.13 4/7/2011 11:00 AM

RC 003840



# THE RITZ-CARLTON®
## DESTINATION CLUB

## THE LION & CROWN TRAVEL CO., LLC

### EXCHANGE PROCEDURES
### FOR

### THE COBALT TRAVEL COMPANY, LLC
### MEMBERS

### WITH ACCESS TO
### THE LION & CROWN EXCHANGE PROGRAM

ORLA.094873:0128_1302284.22 10/1/2010 1:39 PM

RC 003841

EXCHANGE PROCEDURES
THE COBALT TRAVEL COMPANY, LLC
MEMBERS
WITH ACCESS TO
THE LION & CROWN EXCHANGE PROGRAM

INTRODUCTION

These Exchange Procedures for The Cobalt Travel Company, LLC Members with access to The Lion & Crown Exchange Program ("**Exchange Procedures**") are specifically promulgated for The Cobalt Travel Company, LLC Members who have access to The Lion & Crown Exchange Program ("**Program**") operated by The Lion & Crown Travel Co., LLC, a Delaware limited liability company, as Exchange Company. These Exchange Procedures have been designed to facilitate Participants' (as defined in Schedule "1") ability to reserve and exchange the use of Accommodations (as defined in Schedule "1"), facilities, services, and experiences offered through the Program each year, and corresponding exchange of access to any Accommodations, facilities, services, and experiences that are a part of any other Affiliate Program (as defined in Schedule "1").

**Exchange Company has the specific right to implement procedures which will facilitate the exchange by and among the Accommodations, Destinations (as defined in Schedule "1"), or other Affiliate Programs affiliated with the Program.** There may be different methods or procedures by which Accommodations are assigned at a particular Destination or within a particular Affiliate Program. Exchange Company, subject to the terms of these Exchange Procedures, may further modify these Exchange Procedures at its reasonable discretion and in a manner it deems for the benefit of the Participants, as a whole.

I.   DEFINITIONS

Capitalized terms shall have the meaning set forth on **Schedule "1"**.

II.  EXERCISE    OF    MEMBERSHIP    PRIVILEGES;    USE    OF
PARTICIPANT'S DISTRIBUTION

Membership in the Program is not an appurtenance to Interests. The Cobalt Travel Company, LLC (the operator of The Ritz-Carlton Club Membership Program), as the Affiliate Program Manager, has voluntarily entered into an Affiliation Agreement with Exchange Company. In order to enjoy the benefits of Membership in the Program as a Participant, you must have voluntarily entered into an Enrollment Agreement with Exchange Company. Participants must comply with all of the terms and conditions for Membership in the Program. During the term of the Affiliation Agreement and so long as the Participant remains enrolled in the Program, Participants will have the right to reserve and use the Accommodations, facilities, services, and experiences that are a part of the Program or an Affiliate Program in accordance with these Exchange Procedures. Unless otherwise provided pursuant to the applicable Affiliation Agreement, Participants have the right to reserve and use the Accommodations, facilities, services, and experiences that are a part of the Participant's Affiliate Program in accordance with that Affiliate Program's Affiliate Program Reservation System. If a Participant desires to use the Program Services that may be offered by Exchange Company from time to time, the Participant may voluntarily participate in the Program as described in these Exchange Procedures.

Membership in the Program automatically terminates for a given Participant if the Participant voluntarily or involuntarily transfers the Participant's Interest and owns no other Interest, if the Participant's Affiliate Program ceases to be affiliated with the Program because such Affiliate Program's

1

RC 003842

Affiliation Agreement is terminated or is not renewed, if the Participant does not renew the Participant's Enrollment Agreement, if the Participant's "Club" (as defined in the Participant's Enrollment Agreement) ceases to be affiliated with the Participant's Affiliate Program, or if the Participant's membership in the Program is otherwise terminated pursuant to the provisions set forth in the Participant's Enrollment Agreement.

### III. PROGRAM OPERATION AND POINTS

A. <u>Management</u>. The Program shall be operated and managed by Exchange Company pursuant to the terms of the Exchange Company Documents. Exchange Company is expressly authorized to take such actions as it deems are necessary or appropriate for the operation of the Program, including, without limitation, the performance of all duties outlined in these Exchange Procedures and the delegation to a third party of any such duties. In addition, Exchange Company reserves the right, to be exercised in Exchange Company's sole and absolute discretion, from time to time, to limit reservations of Use Periods made: (i) for Accommodations in a particular Affiliate Program; (ii) from the Program into a particular Affiliate Program; or (iii) from a particular Affiliate Program into the Program, in order to adequately balance demand and use of the Accommodations.

B. <u>Distribution</u>. Each year during the applicable Deposit Window, a Participant may Deposit Use Rights with Exchange Company. Depending on the Participant's Enrollment Agreement, in order to obtain Cobalt Vacation Points, Participants may be required to Deposit their entire Use Rights or only a portion of the Participant's Use Rights. In addition, depending on the Participant's Enrollment Agreement, Participants may be permitted by the Exchange Company to also Deposit additional Use Rights in 7-consecutive evening increments (or, in the case of The Ritz-Carlton Club, Abaco, 500 point increments) that are not a part of the required Deposit (in accordance with the usage calendar associated with the Participant's home club). Deposits may only be made during the Deposit Window for the Use Rights that the Participant desires to Deposit.



For administrative convenience in the operation of the Program and for determination of the respective rights of Participants to enjoy the benefits of the Program, Exchange Company will assign a Distribution of Cobalt Vacation Points to each Participant for inventory Deposited by the Participant for exchange each Use Year.

ORLA.094873:0128_1302284.22 10/1/2010 1:39 PM

RC 003843

> The following paragraph is applicable only to those Participants whose Interest is located in The Ritz-Carlton Club, Aspen Highlands, The Ritz-Carlton Club, Bachelor Gulch, The Ritz-Carlton Club, Jupiter, The Ritz-Carlton Club, Kapalua Bay, The Ritz-Carlton Club, Lake Tahoe, The Ritz-Carlton Club, St. Thomas, and The Ritz-Carlton Club, Vail:

Participants will be eligible to Deposit Use Rights with Exchange Company during the Deposit Window. In addition, Participants may be permitted by Exchange Company, in Exchange Company's sole and absolute discretion, during the Deposit Window to also Deposit additional Use Rights in 7-consecutive evening increments (in accordance with the usage calendar associated with the Participant's home club) that are not a part of the Participant's Reserved Allocation (as defined by the Participant's Affiliate Program Documents). A Participant will receive a Distribution consisting of Cobalt Vacation Points associated with the Deposited Use Rights, so that the Participant can use such Cobalt Vacation Points to make a reservation of available Use Periods in Accommodations at any Destination. The Conversion Factor may vary from 60% to 100%, depending on the Deposited Use Rights, of the number of Cobalt Vacation Points required to reserve such Deposited Use Rights on the then-current Cobalt Vacation Point Schedule, rounded to the nearest 50-point increment. Generally, Deposited Use Rights during Christmas, New Year's Day, and President's Day will receive a 100% Conversion Factor, Deposited Use Rights during lower demanded seasons will receive a 60% Conversion Factor, and remaining Deposited Use Rights will receive an 80% Conversion Factor.

> The following paragraph is applicable only to those Participants whose Interest is located in The Ritz-Carlton Club, San Francisco:

Participants will be eligible to Deposit Use Rights with Exchange Company during the Deposit Window. A Participant will receive a Distribution consisting of Cobalt Vacation Points associated with the Deposited Use Rights, so that the Participant can use such Cobalt Vacation Points to make a reservation of available Use Periods in any Destination. The Conversion Factor will be determined by multiplying each week of Deposited Use Rights by eight tenths (0.8) multiplied by the average value of all of the use weeks in The Ritz-Carlton Club, San Francisco with the same unit type as the Participant's Interest, rounded to the nearest 50-point increment.

> The following paragraph is applicable only to those Participants whose Interest is located in The Ritz-Carlton Club, Abaco:

Participants will be eligible to Deposit those points associated with Participant's Interest at The Ritz-Carlton Club, Abaco with Exchange Company during the Deposit Window. All Deposits must be in 500 point increments, or as otherwise determined by Exchange Company, from time to time. A Participant will receive a Distribution consisting of Cobalt Vacation Points associated with the Deposited Use Rights, so that Participants can use such Cobalt Vacation Points to make a reservation of available Use Periods in any Destination. The Conversion Factor for The Ritz-Carlton Club, Abaco is determined by multiplying nine (9) by the total number of points in the Deposited Use Rights.

EXCHANGE COMPANY RESERVES THE RIGHT TO (I) LIMIT THE AMOUNT OF USE RIGHTS THAT A PARTICIPANT MAY DEPOSIT; AND (II) MODIFY THE CONVERSION FACTOR, BOTH IN EXCHANGE COMPANY'S SOLE AND ABSOLUTE DISCRETION, FROM TIME TO TIME.

**When a Participant Deposits Use Rights with Exchange Company, such Participant assigns and Exchange Company will automatically have all of such Participant's rights to reserve and use such**

3

RC 003844

Deposited Use Rights for the given Use Year. Once Use Rights have been Deposited with Exchange Company, such Deposited Use Rights may not be withdrawn.

The number of Cobalt Vacation Points in a Distribution for a particular Deposited Use Right is based on various factors such as relative daily and seasonal demand, Accommodation capacity, size, view, and furnishings, and other parameters established by Exchange Company and may vary from year to year by such factors. The number of Cobalt Vacation Points in a Distribution is not in any way intended to be reflective of the economic value of any Interest.

Participants should note that the Participant's Use Year and Deposit Window under the Program may be different than the Participant's club calendar year under the Participant's Affiliate Program Documents.

Exchange Company reserves the right to require Participant to pre-pay such amount that Exchange Company estimates, in Exchange Company's sole and absolute discretion, will be Participant's anticipated maintenance fees, assessments, and taxes applicable to the Deposited Use Rights prior to accepting a Deposit

The Cobalt Vacation Points necessary to reserve a Use Period are enumerated in a day-to-day basis format on the Cobalt Vacation Point Schedule. Exchange Company will review and amend the Cobalt Vacation Point Schedule as necessary (and no less than annually) to maintain an equitable distribution of the usage requirements, based on various factors such as relative daily and seasonal demand, Accommodation capacity, size, view, and furnishings, and other valuation parameters established by Exchange Company. Any such modification to the Cobalt Vacation Point Schedule shall not require approval by the Participants or amendment of these Exchange Procedures. Exchange Company may also temporarily discount the number of Cobalt Vacation Points otherwise required on the Cobalt Vacation Point Schedule from time to time to reduce the number of Cobalt Vacation Points required to reserve specific Use Periods in the event Exchange Company deems such discounts beneficial to the Program. Such temporary adjustments of the Cobalt Vacation Point Schedule shall not require an increase in the number of Cobalt Vacation Points required to reserve other Use Periods within the Program. In addition, if Charter Points are used to make a reservation, additional Charter Points may be required to complete the reservation in order to offset any applicable taxes.

If a Participant fails to use any or all assigned Cobalt Vacation Points during a given Use Year, the Cobalt Vacation Points expire and the Participant may not use that Use Year's Cobalt Vacation Points during succeeding Use Years.

A Participant who is unable to use any available Use Period is not relieved of the obligation to remain as a Participant in Good Standing at all times.

C.      Use of Cobalt Vacation Points for Use Periods. Participants may use their Distribution of Cobalt Vacation Points with respect to a given Use Year to reserve available Use Periods that occur during that Use Year, depending on the Distribution. Cobalt Vacation Points that are from a particular Use Year's Distribution must be used for the reservation and use of a Use Period which occurs during such Use Year.

All or a portion of the Distribution may be used to make reservations for one or more of: (i) the Participant; (ii) Family Members and/or Guests staying in separate Accommodations at the same Destination during the same period as a Participant residing there; or (iii) Family Members or Guests staying in an Accommodation without Participant present. Exchange Company retains the right, to be exercised in Exchange Company's sole and absolute discretion discretion, to limit the number of Accommodations a Participant may reserve for use by Family Members and/or Guests, regardless of the

RC 003845

number of Cobalt Vacation Points the Participant has available for use. No additional Cobalt Vacation Points are required to reserve Accommodations for a Participant accompanied by Family Members and/or Guests in the same Accommodation as the Participant. Due to the disparity in the number of Cobalt Vacation Points required to reserve Accommodations at a particular Destination, a Participant may not be able to receive an exchange into a Destination depending on the number of Cobalt Vacation Points the Participant has remaining in a given Use Year.

Exchange Company (or its designees) shall have the exclusive right to utilize Cobalt Vacation Points assigned to Exchange Company or any other Cobalt Vacation Points that Exchange Company is entitled to use for any purpose in its sole and absolute discretion, including, but not limited to, (i) the reasonable purposes of customer relations, public relations and employee relations; (ii) marketing, promoting, and selling of the Program, Interests, or such other clubs, membership, or exchange plans developed or marketed by Exchange Company or its affiliates from time to time; or (iii) utilizing Use Periods or Cobalt Vacation Points in manners which will enhance or expand the Program or Affiliate Program. Exchange Company (or its designees) is specifically entitled to charge Participants for the use of any Cobalt Vacation Points that are owned by, allocated to, or controlled by Exchange Company for the use of the Accommodations or other benefits offered or made available through the Affiliate Program Reservation System. Exchange Company may fulfill a Participant's request to access Accommodations or other benefits by charging for one-time use of Charter Points in accordance with the following priorities (in the order provided): (i) Exchange Company's right to charge for any Charter Points allocated to or controlled by Exchange Company; and (ii) the Developer's right to charge for any Charter Points allocated to or controlled by such Developer. The ability to reserve Accommodations by purchasing Charter Points is a Program Service offered by Exchange Company (Guests must be accompanied by a Participant or the Participant's Family Member if using Charter Points). If Charter Points are used to make a reservation, additional fees may be required to complete the reservation. The rights reserved to Exchange Company in this paragraph may be assigned by Exchange Company.

D.     Use of Remaining Cobalt Vacation Points. **There is no guarantee that a Participant will be able to use all of the Cobalt Vacation Points in a Participant's Distribution each Use Year because the ability of a Participant to use all of the Participant's Cobalt Vacation Points in a given Use Year will depend on (i) the Use Periods reserved by the Participant; and (ii) the Use Periods reserved by other Participants. Consequently, Cobalt Vacation Points may remain in the Participant's Distribution at the end of a given Use Year which are insufficient to reserve any Use Period and, thus, the Participant will not be able to use such Cobalt Vacation Points, and will not be permitted to carry over the unused Cobalt Vacation Points to the next Use Year's Distribution.**

**A Participant's ability to reserve a Use Period in a particular Accommodation or Destination will depend on, among other factors, the number of Cobalt Vacation Points required to reserve the various Accommodations that have been affiliated with the Program, the number of Cobalt Vacation Points available to the Participant at the time of the reservation request, and other Participant reservations that may have preceded the requested reservation. Additionally, the ability of a Participant to reserve a Use Period at a particular Destination may be limited by the number of Accommodations that may be committed to the Program at that Destination. Please refer to the Cobalt Vacation Point Schedule for more information regarding the number of Accommodations available at any particular Destination. Neither Exchange Company, nor any other party can guarantee the fulfillment of a specific reservation request.**

E.     Reservation System Operations. Exchange Company may, from time to time, operate and manage reservation systems for other vacation ownership programs and facilitate usage by members of such programs, in addition to operation of the exchange facilities in the Program. When providing reservation services for another program, which is also an Affiliate Program, Exchange Company shall provide the reservation services and exchange services in a manner consistent with the applicable

RC 003846

Affiliation Agreement and the applicable Affiliate Program Reservation Procedures. The Affiliate Program Reservation Systems may vary and have priority windows or reservation restrictions that are different from those of the Program or other Affiliate Programs. In such cases, Exchange Company will use commercially reasonable efforts to integrate all Affiliate Programs into the Program.

## IV.   PROCEDURES FOR RESERVING USAGE

A.   Reservation Services.   Participants must contact Exchange Company to make reservations in accordance with the reservation request priorities applicable to the Participant. Participants shall be required to deposit with Exchange Company the total number of Cobalt Vacation Points necessary to make a reservation for requested Use Periods based on the Cobalt Vacation Point Schedule, and Participant's available Distribution will be reduced by the total number of Cobalt Vacation Points required for such Use Periods.

1. Reservation Requests.   To reserve a Use Period, a Participant must determine if the Participant has the necessary Cobalt Vacation Points to reserve the desired Use Period. To determine the number of Cobalt Vacation Points necessary to make a reservation, the Participant may either visit Exchange Company's internet web site at www.myrcdc.com or utilize the then-current Cobalt Vacation Point Schedule. Next, the Participant must submit a reservation request to Exchange Company by such means of communication as may be acceptable to Exchange Company from time to time. Such means of communication may, but will not necessarily include, the following: U.S. mail, facsimile, e-mail, internet, and telephone. Details of such means of communication will be made available to Participants by Exchange Company from time to time or will be available at www.myrcdc.com.

2. Primary Contact; Additional Users.   The owners of an Interest owned by more than one person or by a business entity shall designate a Primary Contact from time to time by notifying Exchange Company through a writing executed by all individuals holding the Interest or by an authorized representative of the business entity. The Primary Contact shall be the designated individual with whom Exchange Company shall deal with respect to making reservations, sending confirmations, and providing other services. Exchange Company may charge an administrative fee from time to time, as Exchange Company may determine, for each request to change a Primary Contact designation. In the event of a conflict among the owners of an Interest with respect to the designation of the Primary Contact, Exchange Company may rely on Exchange Company's and Affiliation Program Manager's files and records in order to determine who shall be designated as the Primary Contact.

If an Interest is owned other than by individual(s), the owner may provide in writing to Exchange Company the names of up to four (4) individuals who are allowed to exercise the Membership privileges for such Participant; provided, however, the Participant's Primary Contact must make the reservations for usage by such individual(s). Similarly, if an Interest is owned by more than one individual, the owners may provide in writing to Exchange Company the names of up to four (4) individuals listed on the document of conveyance who are allowed to exercise the Membership privileges for such Participant; provided, however, the Participant's Primary Contact must make the reservations for usage by such individual(s).

B.   Delinquency.   Subject to applicable law and the provisions of the Exchange Company Documents, only Participants in Good Standing may exercise Membership privileges. Exchange Company has the right to deny a reservation request if the Participant is not a Participant in Good Standing. A Participant who is not a Participant in Good Standing has no right to reserve a Use Period, and any previously confirmed Use Period reservation may be cancelled. No further reservations may be made until any delinquency is satisfied in full.

6

RC 003847

C.      Confirmations; Accommodation Preferences.  Confirmations for reservations will be sent to the Primary Contact by Exchange Company by such means of communication as determined by Exchange Company in its sole and absolute discretion from time to time (which may include the following: U.S. mail, facsimile, e-mail, internet, and telephone).  Exchange Company will attempt to accommodate all requests to reserve particular Accommodations on a first-come, first-served, subject to availability basis (and any other procedures determined by Exchange Company).  **Exchange Company does not guarantee that any particular Use Period will be available.  Reservation requests for exchange of Use Periods will be taken on a first-come, first-served, subject-to-availability basis, within the applicable Exchange Window, in accordance with the reservation priorities set forth on Schedule "2".**

From time to time, certain Use Periods may not be available for reservation or use by Participants as a result of maintenance being performed by the Association, Affiliate Program Manager, or Destination Manager.  Moreover, in the case of extended maintenance or major renovations, certain Accommodations or Destinations may not be available for use for extended periods of time.  Except in the case of an emergency, such unavailability to the extent possible, will be during period(s) causing the least impact possible to the Program as a whole.

Exchange Company reserves the right to create alternative confirmation periods with regard to Destinations which may in the future become a part of the Program.  Additionally, there may be different methods by which Interests and allocations are assigned within a particular Destination.  Exchange Company has the specific right to implement procedures which will facilitate reciprocal, exchange, or similar uses by and among the Destinations affiliated with the Program.

D.      Cancellations and No-Shows.

**All cancellation requests shall be made or confirmed in writing or other acceptable means of communication approved by Exchange Company.**

1.      If a Participant wishes to cancel or release a confirmed reservation of a Use Period, and Exchange Company receives written cancellation at least sixty (60) days prior to the confirmed Use Period, no cancellation fee applies, and such cancellation will result in full restoration of the related Cobalt Vacation Points to the Participant for further use during that Use Year.

2.      If Exchange Company receives written cancellation fifty-nine (59) days or less prior to the confirmed Use Period, such cancellation will result in full restoration of the related Cobalt Vacation Points to the Participant for further use during that Use Year, but re-use of such restored Cobalt Vacation Points shall only be confirmed by Exchange Company for Use Periods beginning no more than fifty-nine (59) days after the date of the request, if available.

Exchange Company, in its sole and absolute discretion, is entitled to amend these Exchange Procedures to establish additional cancellation policies and charge cancellation fees from time to time.

E.      Check-In and Check-Out; Early Check-Out.  Each Destination may have the right to establish the check-in and check-out times for such Destination.  Consequently, each Destination may have different check-in and check-out times, and Participants will be restricted to the established times.  All of the Cobalt Vacation Points applied to a reservation are considered used starting on the first day of the reserved Use Period in the Cobalt Vacation Point Schedule.  Participants are not entitled to a partial refund of Cobalt Vacation Points if the Participant checks in after the first day of the confirmed Use Period or Participant checks out before the scheduled departure date.

F.      Pre-Arrival Notification.  Exchange Company will confirm Use Period dates at the time a reservation is confirmed for a Participant.  A Participant requesting Accommodations for a Family

7

RC 003848

Member or Guest must provide Exchange Company with such Family Member's or Guest's name, address, e-mail address, and telephone number at least thirty (30) days prior to the requested Use Period, or, for 60 Day Exchanges, at the time of such confirmation if it occurs within thirty (30) days of arrival, so that Exchange Company can forward an appropriate confirmation notice to the Participant, Family Member, or Guest, as applicable. Failure to provide the Family Member's or Guest's name, address, e-mail address, and telephone number by such time may result in cancellation of the reserved Use Period by Exchange Company. The pre-arrival notification set forth in this paragraph is only required if a Family Member or Guest is utilizing an Accommodation other than the Accommodation in which the Participant is staying.

G. Fees or Charges. Although none are currently being charged, in addition to Exchange Company Dues, Exchange Company has the right to charge transaction fees as it deems appropriate in its sole and absolute discretion from time to time, as set forth in the Affiliation Agreement. Such fees may include, but are not limited to, cancellation fees.

The Participant shall be responsible for all unpaid fees assessed in accordance with these Exchange Procedures or any charges resulting from use of a Use Period, including charges relating to damage or otherwise and including those fees not paid by Family Members or Guests.

**Currently, there are no transaction fees charged by Exchange Company; however, there is a fee for changing the Primary Contact as detailed above.**

H. Program Services. Exchange Company may offer Program Services through the Program to certain Participants, from time to time. Such Program Services may vary, are not part of the Affiliate Program (or the Affiliate Program Reservation System), and are provided solely as part of the Program at the sole and absolute discretion of Exchange Company. Exchange Company has the right to establish such rules and regulations as it deems necessary to adequately govern Participant access to such Program Services, which may include certain fees. In addition, Exchange Company has the right to restrict use of any Program Services offered by Exchange Company to certain Participants, including, without limitation, only to those Participants who (i) purchase an Interest from or through an "**Approved Broker**" which includes: (a) the Developer of the Participant's Affiliate Program or Destination; or (b) such other entity approved by Exchange Company, from time to time; (ii) acquire the Interest by virtue of being a Family Member by gift, will, divorce decree, testamentary disposition, intestate succession or trust, by virtue of being a Family Member of a Participant; or (iii) is otherwise granted Membership by Exchange Company, upon the terms and conditions then determined by Exchange Company in Exchange Company's sole and absolute discretion. If a Participant does not purchase the Participant's Interest from an Approved Broker, such Participant may not receive any Program Services, in Exchange Company's sole and absolute discretion. Any offered Program Services are subject to separate terms and conditions, which may be changed, substituted, or eliminated without prior notice. Some Program Services may be provided by independent third parties and Exchange Company expressly disclaims responsibility for the acts or omissions of any persons or entities providing such Program Services. Program Services are only available to Participants, Family Members of a Participant, or Guests that are accompanied by a Participant or a Family Member of the Participant.

## V.   RESERVATION REQUEST PRIORITIES

Subject to any applicable limitations in an Affiliate Program Reservation System and the Affiliation Agreement applicable to an Affiliate Program, reservation requests for exchange of Use Periods will be taken on a first-come, first-served, subject-to-availability basis, within the applicable Exchange Window, in accordance with the reservation priorities set forth on **Schedule "2"**.   **ANY PRIORITY A PARTICIPANT MAY HAVE FOR THE RESERVATION OF USE PERIOD(S) WILL END UPON THE BEGINNING OF THE SUBSEQUENT EXCHANGE WINDOW.**

8

RC 003849

Confirmation of a reservation of any specific Use Period in an Accommodation at any specific Destination cannot be assured since availability will vary. The earlier a reservation request is submitted within the relevant Exchange Window, the better the chance that a reservation confirmation can be secured. Participants are encouraged to submit requests as far in advance as possible, within the Exchange Window, to obtain the best choice of Accommodations.

**Exchange Company shall have the right to forecast anticipated reservations and use of the Use Periods and is authorized to demand balance, reserve, or deposit Use Periods for the purpose of facilitating the use or future use of Use Periods or other benefits made available to Participants through the Program in its sole and absolute discretion.**

Unless the Affiliate Program Documents provide otherwise, Exchange Company has the right to establish priority lists or lottery systems in an effort to ensure the fair and equitable reservation and use of Accommodations during high demand periods. If implemented, access to certain Use Periods by a Participant may be restricted in a given year based upon the Participant's ranking in a lottery or some other allocation methodology established by Exchange Company. Exchange Company may establish an administrative fee for this service. Exchange Company may restrict the number of weeks or days that may be reserved by a Participant during holidays, events, or other high demand periods and Exchange Company may create alternate reservation procedures and the Cobalt Vacation Point Schedule may be revised on a Destination-by-Destination basis to account for discrepancies in locations, legal structures, travel patterns, or other factors as determined by Exchange Company in its sole and absolute discretion from time to time.

## VI. EXCHANGE COMPANY DUES

As further described in the Affiliation Agreement for the Affiliate Programs participating under these Exchange Procedures, Exchange Company is not currently charging Exchange Company Dues; however, Exchange Company has reserved the right to assess Participants Exchange Company Dues. In accordance with the Affiliation Agreement for each Affiliate Program, Exchange Company reserves the right to establish distinct Exchange Company Dues from Affiliate Program to Affiliate Program as determined by Exchange Company, and based on those factors that Exchange Company determines, in its sole and absolute discretion, to be reasonable.

## VII. MISCELLANEOUS

A.      Residential Use and Prohibition on Commercial Use.      Accommodations, Program Services, and Use Periods may not be used by Participants for any commercial purpose, including facilitating or operating a vacation or exchange program. This prohibition on commercial use of Use Periods includes, but is not limited to, any illegal activity, the rental of Accommodations, Program Services, and Use Periods or a pattern of occupancy or use by a Participant that Exchange Company, in its reasonable discretion, could conclude constitutes rental or a commercial enterprise or practice. **In the event a Participant is determined to be reserving or using the Accommodations, Program Services, and Use Periods for any commercial purpose, or renting Accommodations, Program Services, and Use Periods, Exchange Company may immediately cancel any current reservation made by such Participant and may impose such additional penalties or restrictions as determined by Exchange Company, in its sole and absolute discretion, from time to time.** The restrictions of this paragraph do not apply to Exchange Company, Developer, or their affiliates or designees.

B.      Amendments.      These Exchange Procedures may be amended by Exchange Company from time to time in Exchange Company's sole and absolute discretion. By way of example, and without limitation, Exchange Company reserves the right to, in its sole and absolute discretion:

9

RC 003850

(1)    modify or cancel the availability of 60 Day Exchanges;

(2)    modify the number and types of Cobalt Vacation Point Schedules available from time to time;

(3)    modify current check-in times, create additional check-in times or create check-in days;

(4)    modify the start of the Use Year or otherwise amend the Use Year;

(5)    create alternative confirmation periods with regard to Destinations which may in the future become a part of the Program, and implement procedures to facilitate reciprocal, exchange or similar uses with the Destinations;

(6)    create wait lists, and modify or limit the number of requests for any wait list;

(7)    modify the Cobalt Vacation Point Schedule;

(8)    use electronic methods to communicate with Participants, including without limitation communications regarding confirmed reservations and notification of amendments to these Exchange Procedures;

(9)    restrict the number of Accommodations or Use Periods that may be reserved by a single Participant at any one time;

(10)   create or modify penalties and fees applicable to cancellation or modification of reservations;

(11)   assess a special charge or annual fee to Participants residing in countries other than the United States and Canada, and/or Participants who reside in the United States or Canada but who have mailing addresses, telephone numbers or facsimile numbers outside of the United States or Canada;

(12)   create additional usage products for future Destinations or Accommodations, including fixed week or event reservation preferences, priorities, or rights;

(13)   create system-wide reservation and/or exchange procedures which may be applicable to all Affiliate Programs and Destinations;

(14)   permit Participants to "bank" Cobalt Vacation Points from the current Use Year into future Use Years;

(15)   permit Participants to "borrow" Cobalt Vacation Points from future Use Years for use in the current Use Year;

(16)   create special exchange relationships between the Program and any entity or other system pursuant to which Participants access selected non-affiliated resorts;

(17)   establish a special season reservation list for high demand Use Periods at a given Destination for the purpose of more equitably permitting Participants to have an opportunity to reserve certain high demand Use Periods;

(18)   amend and modify Exchange Windows, Deposit Windows, and/or Conversion Factors;

(19)   establish a reservation priority system based on, among other things, length of stay;

(20)   establish requirements to reserve certain days in combination with one another (*e.g.*, require Participants to reserve Friday in order to reserve the following Saturday);

(21)   create the ability to pay a daily fee to reserve Accommodations during the 60 Day Window;

(22)   create special Guest of Participant programs (which may include fees) where a Participant's Guest(s) may occupy Accommodations or Use Periods while the Participant is not in residence;

(23)   create corporate membership programs;

(24)   allow programs affiliated with Exchange Company to make 11 Month Exchanges; provided, however, that access to 11 Month Exchanges shall not be

ORLA.094873:0128_1302284.22 10/1/2010 1:39 PM

RC 003851

granted to programs that are not operated by corporate affiliates of Exchange Company (i.e., a corporate affiliate is an entity that, directly or indirectly, is in control of, is controlled by, or is under common control with Exchange Company or of an affiliate of Exchange Company); provided, however, that such programs that are not operated by corporate affiliates may be permitted access to 9 Month Exchanges;

    (25)    alter the minimum length of stays required for reservations of Use Periods and require a differing minimum length of stays only for certain Accommodations;

    (26)    add fixed week components;

    (27)    create additional classes of points; and

    (28)    take any other action or implement any such change as Exchange Company deems, in its reasonable discretion, to be beneficial to the Program as a whole or to more equitably allocate the benefits and privileges of the Program among the Participants.

Notice of any amendment shall be delivered by Exchange Company to each Participant at the Participant's last known mailing address on record with Exchange Company. Notices of amendment may be made by newsletter, electronic mail, annual mailings or other appropriate means. In the case of more than one owner or ownership by a business entity, such notice may be provided just to the designated Primary Contact.

C.    Effect of Transfer of Participant's Interest. Unless otherwise agreed to in writing by the parties to a sale, assignment, or transfer, if a Participant ("**Selling Participant**") sells, assigns, or transfers the Selling Participant's Interest to another party ("**New Participant**"), the Selling Participant will lose any and all rights to utilize the Cobalt Vacation Points associated with such Interest to reserve the use of a Use Period or to use any previously-reserved Use Period. Unless agreed to otherwise by the parties and the New Participant enrolls in the Program, all existing reservations previously made by the Selling Participant will be cancelled. If Exchange Company, in Exchange Company's sole and absolute discretion, offers a New Participant the opportunity to enroll in the Program, until enrollment in the Program (and payment of any enrollment fees, if applicable), the New Participant will not be entitled to participate in the Program. If the New Participant enrolls in the Program, the New Participant will also assume the Selling Participant's Cobalt Vacation Points remaining as of the date of the new Participant's enrollment in the Program. Exchange Company shall, from time to time, within ten (10) business days after receipt of written request from any Participant execute, acknowledge and deliver to such Participant or to any existing or prospective purchaser or mortgagee designated by such Participant, a certificate stating the number of Cobalt Vacation Points that the Participant has used and/or has available for use during the current Use Year and the details of any reservations currently held by the Participant. Exchange Company may charge a fee in connection with providing such a certificate.

D.    Taxes. Some jurisdictions have imposed a tax on the occupant of resort accommodations. Consequently, any bed tax, transient occupancy tax, or similar tax that is imposed shall, in those circumstances, be the responsibility of the Participant. **Exchange Company makes no representations regarding taxes due in connection with any reservations or exchanges made through the Program or the use of Accommodations.** Additionally, Participants are responsible for all personal charges (e.g., telephone calls and meals) at the host Destination, and any utility surcharge or other permissible charge imposed by a Destination, as well as any damage, loss, or theft to the host Destination Accommodations or facilities that is caused by the Participant or the Participant's Guest or Family Member. Fees, if any, charged by a Destination for the use of some of the amenities are determined and levied by each Destination. Should the Participant desire to use such amenities, the fees charged by the Destination are the responsibility of the Participant. These fees vary from Destination to Destination, and may be increased from time to time without notice.

11

RC 003852

E.    Limitations on Liability.    Exchange Company's liability in the event that any Accommodations reserved by or on behalf of the Participant are not available for occupancy on the specified check-in date shall be limited to amounts necessary to obtain comparable alternate accommodations, if available, for the Participant or the Participant's Guests or Family Members, as applicable. Exchange Company shall not be liable for any additional costs or expenses incurred by a Participant or the Participant's Guest or Family Members including, but not limited to, travel, lodging, meals, or similar expenses.

F.    Waiver.    No failure of Exchange Company to enforce any provision under these Exchange Procedures, exercise any power given under these Exchange Procedures, or to insist upon strict compliance with any obligation specified in these Exchange Procedures, and no custom or practice at variance with the terms of these Exchange Procedures, shall constitute a waiver of Exchange Company's right to demand exact compliance with the terms and conditions of these Exchange Procedures.

G.    Accommodations of Affiliate Programs.    The Accommodations, amenities, and service levels at Affiliate Programs may vary from Destination to Destination. Moreover, the level of quality and service may vary from Destination to Destination and Affiliate Program to Affiliate Program and may not be at the same level as those of the Destinations developed by Developer.

H.    Intent of Rules.    The intent of these Exchange Procedures and the design of the Program(s) is to facilitate broad flexibility and utilization across a broad range of varied Accommodations, Destinations, facilities and Affiliated Programs. These Exchange Procedures are not designed or intended to afford any specific rights in or access to any particular Accommodation or to guarantee that any variable, including Cobalt Vacation Point levels, check-in days or times, or access will remain constant over time.

12

RC 003853

## SCHEDULE "1"

6 Month Exchange means a confirmed reservation of an Accommodation available through the Program made during the 6 Month Window.

6 Month Window means the period beginning six (6) months before the first day of a given unreserved Use Period and ending sixty (60) days prior to the first day of a given unreserved Use Period.

9 Month Exchange means a confirmed reservation of an Accommodation available through the Program made during the 9 Month Window.

9 Month Window means that period beginning nine (9) months before the first day of a given unreserved Use Period and ending three (3) months later. During the 9 Month Window, those Participants who have been granted the right to make reservations during the 9 Month Window in the Affiliation Agreement for their Affiliate Program will have the ability to make a 9 Month Exchange in accordance with these Exchange Procedures.

11 Month Exchange means a confirmed reservation of an Accommodation available through the Program made during the 11 Month Window.

11 Month Window means that period beginning eleven (11) months before the first day of a given unreserved Use Period and ending two (2) months later. During the 11 Month Window, only Participants who have the right to make 11 Month Exchanges under their Affiliation Agreement (which includes Participants receiving these Exchange Procedures), have the right to request 11 Month Exchanges in accordance with these Exchange Procedures.

60 Day Window means the period beginning sixty (60) days before the first day of a given unreserved Use Period during which Participants (for themselves, Family Members and/or Guests) or Exchange Company can reserve use of an Accommodation for the current Use Year on a first-come, first-served subject-to-availability basis as set forth in these Exchange Procedures.

60 Day Exchange means a confirmed exchange made during the 60 Day Window.

Accommodation means any condominium unit, apartment, cooperative unit, single family home, efficiency cabana, cottage, attached or free standing townhome or villa, fee interest, leasehold interest, unit located in a multi-unit building, and any other similar type of sleeping accommodation.

Advance Reservation Priority Participant means a Participant who obtains the right to make a reservation during the Advance Reservation Priority Window in accordance with such Participant's Affiliate Program Documents.

Advance Reservation Priority Window means the period beginning thirteen (13) months before the first day of a given unreserved Use Period and ending two (2) months later during which Advance Reservation Priority Participants have the right to request a reservation on a first-come, first-served subject-to-availability basis for the use of Use Periods in Accommodations available through the Program during the Use Year for which such Advance Reservation Priority Participants hold sufficient Cobalt Vacation Points, in accordance with these Exchange Procedures.

13

RC 003854

Affiliate Program means a program of benefits and services, as they may exist from time to time, the operator of which has entered into an agreement with Exchange Company through which Affiliate Program's members participate in the Program. Participation in the Program is made available on a voluntary basis to Participants governed by such Affiliate Program Manager in accordance with the terms and conditions as may be determined by Exchange Company in its sole and absolute discretion. Participants have the right to reserve and use the Accommodations, facilities, services, and experiences that are a part of the Participants' Affiliate Program in accordance with the Affiliate Program Reservation System for that Participant's Affiliate Program. If a Participant desires to use the Accommodations, facilities, services, and experiences that are a part of another Affiliate Program, the Participant may voluntarily participate in the Program described in these Exchange Procedures.

Affiliate Program Documents mean those documents governing the reservation, use, and occupancy of the Accommodations of a particular Affiliate Program.

Affiliate Program Manager means a company offering the Affiliate Program opportunities.

Affiliate Program Reservation System means the method, means or system by which Participants of a particular Affiliate Program are required to compete against other members of that Affiliate Program in order to reserve the use of any Accommodations and facilities of a particular Affiliate Program pursuant the applicable Affiliate Program Documents.

Affiliation Agreement means the contract among Exchange Company, Developer, Association, and Affiliate Program Manager, as the case may be, as such contract is amended from time to time, pursuant to which Accommodations and facilities of an Affiliate Program are included as a part of the Program and Membership in the Program is made available on a voluntary basis to Participants governed by such Association and Affiliate Program Manager.

Approved Broker has the meaning set forth in Section IV.H. of these Exchange Procedures.

Association means the governing body or owners' association, if any, of all of a particular Affiliate Program's Participants, whether incorporated, unincorporated, or voluntary.

Charter Points means the Cobalt Vacation Points within the control of Exchange Company which, for a fee charged by Exchange Company (or Exchange Company's designees) to a Participant or Family Member, such Participant or Family Member may use an Accommodation for additional nights of residing beyond the Participant's Distribution, as made available by Exchange Company (or Exchange Company's designees) from time to time. The ability to reserve Accommodations by purchasing Charter Points is a Program Service through the Program. The ability to purchase Charter Points may not be available for all Accommodations or all Participants. A Participant who does not make a Deposit in a given calendar year is not entitled to purchase Charter Points. Exchange Company, in its sole and absolute discretion, is entitled to limit the number of Charter Points that a Participant may purchase. If Charter Points are available and a Participant is eligible to purchase Charter Points, separate terms and conditions shall apply to the purchase and use of such Charter Points. The utilization of any Charter Points will be subject to any terms and conditions under which such Charter Points are granted including, without limitation, any applicable expiration dates on such Charter Points.

Cobalt Vacation Point Schedule means the annual schedule(s) promulgated by Exchange Company which identifies the pertinent information for the Program in a given year, including setting forth the number of Cobalt Vacation Points required to reserve Use Periods, all as amended by Exchange Company from time to time. If Charter Points are used to make a

14

RC 003855

reservation, additional Charter Points may be required to complete the reservation in order to offset any applicable taxes.

Cobalt Vacation Points mean the symbolic use measurement assigned to a Participant's Use Periods deposited with Exchange Company which enables the Participant to access Program Accommodations, services, and benefits.

Conversion Factor means the number of Cobalt Vacation Points assigned as part of Participants' Distribution for a Deposited Use Rights. The Conversion Factor for particular Deposited Use Rights may vary from 60% to 100% (depending on the Deposited Use Rights) of the number of Cobalt Vacation Points required to reserve such Deposited Use Rights on the then-current Cobalt Vacation Point Schedule, rounded to the nearest 50-point increment. With regard to The Ritz-Carlton Club, Abaco, the Conversion Factor is currently nine (9) times the number of points that are part of such Participants' Deposited Use Rights.

Deposit means the submission to Exchange Company by a Participant of the Participant's Use Rights in accordance with these Exchange Procedures and the terms of the Participant's Enrollment Agreement. In exchange for each Deposit, Exchange Company will assign the Participant with a Distribution of Cobalt Vacation Points for use during the Use Year for the Deposited Use Rights. Participants are required to submit Use Periods in 7-consecutive evening increments (in accordance with the usage calendar associated with the Participant's home club), or, in the case of The Ritz-Carlton Club, Abaco, in 500 point increments.

Deposit Window means the any time prior to September 30th of the year prior to the year that contains the first day of use for the Use Rights being Deposited during which Participants receiving these Exchange Procedures may Deposit Use Rights in exchange for a Distribution.

Deposited Use Rights means Use Rights that have been Deposited with Exchange Company by a Participant and accepted by Exchange Company.

Destination means the location containing Accommodation(s) of a site or resort that is part of the Program or Affiliate Program. Exchange Company retains the right to determine what constitutes a Destination, in Exchange Company's sole and absolute discretion from time to time.

Destination Manager means the person or entity responsible for the management and operation of a particular Destination or Affiliate Program.

Developer means the developer of a particular Destination or Affiliate Program; provided, that such Developer is a corporate affiliate of Exchange Company.

Distribution means the total number of Cobalt Vacation Points assigned to a Participant, based on the number of Interests offered for exchange by the Participant through the Program, without having to purchase Charter Points.

Enrollment Agreement means the agreement between the owner of an Interest in an Affiliate Program and Exchange Company, whereby the owner agrees to become a Participant in the Program subject the Exchange Company Documents.

Exchange Company means The Lion & Crown Travel Co., LLC, a Delaware limited liability company, or its successors and assigns, which is the company offering the Program opportunities through Affiliate Program Managers and/or Destination Managers. Exchange Company is an

15

RC 003856

exchange company for the purpose of offering exchange and reservation services and related vacation and travel benefits to Participant.

Exchange Company Documents mean those instruments governing the use and operation of the Program, including, but not limited to, an Affiliation Agreement, Disclosure Guide, Cobalt Vacation Point Schedule, Enrollment Agreement, and these Exchange Procedures, as such Exchange Company Documents are promulgated, executed, or amended by Exchange Company from time to time.

Exchange Company Dues mean the charges, if any, assessed by Exchange Company in connection with the operation of the Program that are assessable to the Participant each calendar year. The Exchange Company Dues shall be determined in accordance with the Affiliation Agreement, and may be charged in different amounts for each Affiliate Program.

Exchange Procedures mean these Exchange Procedures for The Cobalt Travel Company, LLC Members with access to the Lion & Crown Exchange Program, as further defined on page 1 of this document.

Exchange Window means the method and timing whereby the use of each Use Period is available for reservation for a given Use Year. The Exchange Windows consist of the Advance Reservation Priority Window, 11 Month Window, 9 Month Window, 6 Month Window, and 60 Day Window.

Family Member means a Participant's spouse (if the spouse does not jointly own an Interest with the Participant), and the Participant's and the Participant's spouse's parents, children, and grandchildren.

Guest means a person who, as an invited guest of a Participant, stays in an Accommodation, and is not a Family Member of the Participant. Program Services and the ability to purchase Charter Points to reserve Accommodations are only available to Guests that are accompanied by a Participant or the Participant's Family Member.

Interest means the ownership interest(s) in an Affiliate Program or in a Destination or Accommodations affiliated with the Affiliate Program that is created pursuant to the governing documents of such Affiliate Program, Destination, or Accommodations, as the case may be.

Membership means participation in the Program.

Participant means a person (natural or otherwise) who owns an Interest in an Affiliate Program or a Destination or Accommodation that is affiliated with the Program, and, with respect to a Participant receiving these Exchange Procedures, has voluntarily executed an Enrollment Agreement. A Participant has Membership privileges in the Program as described in their Affiliation Agreement, the Enrollment Agreement, and these Exchange Procedures.

Participant in Good Standing means a Participant who is currently enrolled in the Program and is in compliance with their Enrollment Agreement, and is current with all payments to the Affiliate Program Manager, Destination Manager, Developer, and Exchange Company relating to the Participant's ownership of the Interest or Membership in the Program, including, as applicable, assessments, ad valorem taxes, and mortgage and purchase money payments.

ORLA.094873:0128_1302284.22 10/1/2010 1:39 PM

RC 003857

Program means the program of benefits and services created and operated by Exchange Company known as The Lion & Crown Exchange Program, as such program may exist from time to time, in which Participants have the rights of Membership in the Program.

Program Services mean exchanges, special products, services, benefits, and vacation/recreational experiences offered by Exchange Company, including, without limitation, the ability to reserve cruises, or other travel services, and to purchase Charter Points. The ability to utilize a Program Service may not be available to all Participants. If Program Services are available and a Participant is eligible to purchase or utilize any Program Services, separate terms and conditions shall apply to the purchase and use of such Program Services.

Use Period means the time period(s) during which each Participant has reserved the use and occupancy of an Accommodation in accordance with the provisions of these Exchange Procedures. All Use Periods shall be subject to the minimum and maximum number of evenings identified in these Exchange Procedures.

Use Rights means each use rights associated with the Participant's Interest(s)' annual Reserved Allocation, Allocation, or Points (each as defined by and in accordance with the usage calendar associated with the Destination at which the Participant owns his or her Interest). Use Rights may only be Deposited in 7-consecutive evening increments (in accordance with the usage calendar associated with the Participant's home club), or, in the case of The Ritz-Carlton Club, Abaco, in 500 point increments.

Use Year means the period of time beginning January 1 of the year of the Deposited Use Rights and ending on December 31 of that same year. A Participant is entitled to use the Participant's Cobalt Vacation Points Distribution for a particular Use Year to reserve and use Accommodations in accordance with these Exchange Procedures.

17

RC 003858

## SCHEDULE "2"

### Summary of Exchange Windows

| 13 months prior to Use Period | | | | |
|---|---|---|---|---|
| • Not available to Cobalt Travel Co. Members. | 11 months prior to Use Period | | | |
| | • Reservation requests accepted from Participants who have rights to make reservations at the 11 Month Window.<br>• Five evening minimum stay required. | 9 months prior to Use Period | | |
| | | • Reservation requests accepted from Participants who have the rights to make reservations at the 11 Month and 9 Month Windows.<br>• Five evening minimum stay required. | 6 months prior to Use Period | |
| | | | • Reservation requests accepted from all Participants.<br>• Three evening minimum stay required. | 60 days prior to Use Period |
| | | | | • Reservation requests accepted from all Participants.<br>• Participants may reserve Use Periods in the 60 Day Window by releasing Cobalt Vacation Points or use of Charter Points.<br>• No minimum stay required. |

### Available only to Advance Reservation Priority Participants

A.     Advance Reservation Priority Window.   During the Advance Reservation Priority Window, reservation requests shall be accepted by Exchange Company from holders of Advance Reservation Priority rights for all available Use Periods.   Participants receiving these Exchange Procedures will not have the ability to make reservations during the Advance Reservation Priority Window.

B.     11 Month Window.  During the 11 Month Window, Participants who have the right to make 11 Month Exchanges under their Affiliation Agreement (which includes Participants receiving these Exchange Procedures), have the right to request 11 Month Exchanges on a first-come, first-served subject-to-availability basis for the use of Use Periods in Accommodations available through the Program during the Use Year for which such Participants hold sufficient Cobalt Vacation Points, in accordance with these Exchange Procedures.  11 Month Exchanges must contain a minimum of five (5) consecutive evenings, subject to applicable minimum durations of stay at certain Destinations as shown on the Cobalt Vacation Point Schedule.  In the event a Participant requests a Use Period during the 11 Month Window and Exchange Company is only able to confirm a portion of such requested Use Period because less than five (5) consecutive evenings are available, Exchange Company may confirm such reservation in Exchange Company's sole and absolute discretion.  The number of Cobalt Vacation Points which must be released by the Participant for such 11 Month Exchanges shall be in accordance with the then-current Cobalt Vacation Point Schedule.  During the 11 Month Window, Exchange Company shall immediately confirm all 11 Month Exchanges made pursuant to these Exchange Procedures, if available, on a first-come, first-served subject-to-availability basis.

**There is the theoretical possibility that the Advance Reservation Priority Participants may reserve all of the Accommodations during a particular Use Period at a particular Destination; however, the maximum number of Advance Reservation Priority Participant rights that may be assigned by Developer is limited to a maximum of three (3) Advance Reservation Priority Participant rights per Accommodation (or its equivalent) that is part of an Affiliated Program permitting its Participants the right to make reservation during the Advance Reservation Priority Window.**

18

RC 003859

C.       9 Month Window.  During the 9 Month Window, Participants who have the right to make 11 Month Exchanges or 9 Month Exchanges under their Affiliation Agreement (which includes Participants receiving these Exchange Procedures), have the right to request 9 Month Exchanges on a first-come, first-served subject-to-availability basis for the use of Use Periods in Accommodations available through the Program during the Use Year for which such Participants hold sufficient Cobalt Vacation Points, in accordance with these Exchange Procedures.  9 Month Exchanges must contain a minimum of five (5) consecutive evenings, subject to applicable minimum durations of stay at certain Destinations as shown on the Cobalt Vacation Point Schedule.  In the event a Participant requests a Use Period during the 9 Month Window and Exchange Company is only able to confirm a portion of such requested Use Period because less than five (5) consecutive evenings are available, Exchange Company may confirm such reservation in Exchange Company's sole and absolute discretion.  The number of Cobalt Vacation Points which must be released by such a Participant for such 9 Month Exchanges shall be in accordance with the then-current Cobalt Vacation Point Schedule.  During the 9 Month Window, Exchange Company shall immediately confirm all 9 Month Exchanges made pursuant to these Exchange Procedures, if available, on a first-come, first-served subject-to-availability basis.

C.       6 Month Window.  During the 6 Month Window, Participants have the right to request reservations on a first-come, first-served subject-to-availability basis for the use of Use Periods in Accommodations available through the Program and Affiliate Program Reservation Systems (if any) during the Use Year for which certain Participants hold sufficient Cobalt Vacation Points, in accordance with these Exchange Procedures.  All 6 Month Exchanges must contain a minimum of three (3) consecutive evenings, subject to applicable minimum durations of stay at certain Destinations as shown on the Cobalt Vacation Point Schedule.  In the event a Participant requests a Use Period during the 6 Month Window and Exchange Company is only able to confirm a portion of such requested Use Period because less than three (3) consecutive evenings is available, Exchange Company may confirm such reservation in Exchange Company's sole and absolute discretion.  The number of Cobalt Vacation Points which must be released by the Participant for such 6 Month Exchanges shall be in accordance with the then-current Cobalt Vacation Point Schedule.  Confirmation of 6 Month Exchange requests by a Participant for an Accommodation outside of the Participant's Affiliate Program shall be determined by the reservation procedures of the Destination containing the Accommodation.  6 Month Exchange confirmations into any Accommodation shall be based upon availability on a first-come, first-served basis, and on any other procedures determined by Exchange Company.

C.       60 Day Window.  During the 60 Day Window, Participants or Exchange Company can reserve use of a Use Period at any Destination for the current Use Year, on a space available, first-come, first-served, subject-to-availability basis as set forth in these Exchange Procedures.  Family Members and Guests may also stay in an Accommodation at any Destination as a 60 Day Exchange, subject-to-availability; however, the sponsoring Participant must make the reservations for such use.  The right to reserve any Use Periods ends on the last day of such Participant's Use Year.  In no event shall 60 Day Exchanges be used for any commercial purpose (including, but not limited to, the rental of an Accommodation reserved as a 60 Day Exchange).  Participants who are determined, in the sole and absolute discretion of Exchange Company, to have violated this restriction on commercial use may be subject to penalties within the sole and absolute discretion of Exchange Company, including but not limited to, the loss of such Participant's access to 60 Day Exchanges and cancellation of existing 60 Day Exchange reservations.  Except as otherwise provided in these Exchange Procedures, there is no minimum number of consecutive evenings for Use Periods during the 60 Day Window; however, all reservations are subject to applicable minimum durations of stay for certain Destinations as shown on the Cobalt Vacation Point Schedule.

60 Day Exchange reservations can be requested by Participants (for themselves, Family Members and/or Guests) or by Exchange Company for Guests of Exchange Company, during the 60 Day Window.  During the 60 Day Window, Participants may reserve 60 Day Exchanges by releasing Cobalt Vacation

RC 003860

Points or use of Charter Points (Guests must be accompanied by a Participant or the Participant's Family Member if using Charter Points).

During the 60 Day Window, Exchange Company has the right to reserve available Use Periods for (i) the reasonable purpose of customer relations, public relations, and employee relations; (ii) marketing, promoting, and selling of the Exchange Program, Interests, or such other vacation ownership, multisite vacation ownership and membership or exchange plans developed or marketed by Exchange Company or its affiliates from time to time; or (iii) utilizing Use Periods or Cobalt Vacation Points in manners which will enhance or expand the Program or Affiliate Program.

20

RC 003861