IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 1:16-cv-01301-PAB-GPG

**RCHFU, LLC,** *et al.*

Plaintiffs,

v.

**MARRIOTT VACATIONS WORLDWIDE CORPORATION,** *et al.*

Defendants.

**DECLARATION OF MATTHEW C. FERGUSON IN REPLY TO ASPEN HIGHLANDS CONDOMINIUM ASSOCIATION'S RESPONSE TO PLAINTIFFS' MOTION FOR SANCTIONS AND A DEFAULT JUDGMENT AGAINST CERTAIN MARRIOTT DEFENDANTS**

I, Matthew C. Ferguson**,** declare and state:

1. I am an attorney and the shareholder of The Matthew C. Ferguson Law Firm, P.C., co-counsel for Plaintiffs in the above-captioned action. I am a competent witness to give testimony to the facts set forth herein. I am a member of the Colorado bar and of this Court. Furthermore, as a bar-licensed attorney in good standing in Colorado, I am an officer of Colorado state and federal courts.

A. PURPOSES OF THIS AFFIDAVIT

2. I respectfully submit this Declaration in further support of Plaintiffs' motion pursuant to Fed.R.Civ.P. 26(g) and this Court's inherent power for the imposition of sanctions against the Marriott Defendants, including to enter default judgment ("Motion for Sanctions").

3.	The purposes of this Declaration are (1) to set forth my relevant testimony in further support of the Motion for Sanctions, and specifically to address the Association's response in opposition to that motion to the extent it implicates the need for Plaintiffs to depose board directors about the recently produced 2013 Affiliation Agreement, and (2) to introduce relevant evidence.

4.	Another purpose of this affidavit is to agree with and dispute the testimony of the Association's counsel.

### B.	FACTS CONCERNING THE ASSOCIATION'S AND ITS COUNSEL'S IGNORANCE OF THE EXISTENCE OF THE 2013 AFFILIATION AGREEMENT

5.	The statements that Plaintiffs' counsel should have divined the existence of the 2013 Affiliation Agreement in a 100,000+ document case is belied by the fact that the Association was relying on a largely irrelevant April 2014 Memorandum of Understanding as the operative document for years. For example, the Association said in its motion to dismiss: "But we know from other exhibits attached to the FAC that the MOU, in addition to allowing Club members voluntarily to trade a week with a MVC member…" Dkt. No. 219, p. 2. The MOU did nothing of the sort.  Indeed MVW's Vice President Stephanie Sobeck just recently testified as follows:

> BY MR. FERGUSON:
>
> Q. But the actual document that effectuated the ability of Aspen Highlands folks to voluntarily participate in the Vacation opportunities you were offering, that was going to be the acknowledgement and joinder?
>
> A. Well, the affiliation was the Lion & Crown affiliation, and then the members being able to participate was the acknowledgement by the board. Correct.
>
> Q. So the MOU didn't do anything like that?
>
> A. No.
>
> Q. It was a document they requested, and you agreed to and negotiated or discussed over the next few weeks?
>
> A. Yes.

Sobeck Depo. at 107:7-22**. Exhibit 1** are relevant portions of the deposition of MVW Vice President Stephanie Sobeck. It was the "Acknowledgment of and Joinder to" the 2013 Affiliation Agreement that the board president, Randy Mercer signed that effected the affiliation— and he did not read it and apparently never bothered to ask for it. *See Sobeck testimony infra*. The Marriott Defendants knew that the Association had veto power. For example, in response to a question from an MVW asset manager counterpart on November 17, 2014 "Is the ultimate decision [to affiliate] the boards or the [Marriott] management company?" -- Sobeck replied: "Decision to Affiliate? The Boards." See **Exhibit 2** a copy of Sobeck's email dated November 17, 2017. Thus, the Association had the right not to join the 2013 Affiliation Agreement— the agreement they never saw but indeed joined.

6.      On February 16, 2017 (13 ½ months into this case), Wendell Porterfield, Esq., the managing shareholder of Porterfield & Associates, LLC wrote a legal opinion letter to a "Litigation Committee" established by the Association. He reviewed the Acknowledgment and Joinder in his analysis of a requisite notice sent by Plaintiffs. He never referenced the 2013 Affiliation Agreement as one of the 56 documents that he reviewed. Indeed, Mr. Porterfield did not have it. He too focused errantly on the MOU. In April 2017, the Litigation Committee sent a "special message" about this case to the owners and wrote solely about the April 2014 "MOU" as the operative instrument. The "special litigation update" never mentions the Acknowledgment and Joinder, and certainly not the 2013 Affiliation Agreement. It is clear that the Association, its two law firms and the Litigation Committee were all still oblivious to the fact that the board had joined the 2013 Affiliation Agreement that they could have vetoed. A copy of the Litigation Committee's April 2017 "Special Message" is attached hereto as **Exhibit 3**.

3

### C. MY RECENT CONFERRAL WITH ASSOCIATION'S COUNSEL CONCERNING DEPOSITIONS

7. On May 25, 2018, I had a 21-minute conferral with Association's counsel – some of which was related to compromise discussions. I raised the issue of forgoing depositions of certain directors. I offered to conduct one 2-hour deposition (give or take a half hour) of Mr. Mercer. Instead of deposing Oliver, Schneider (possibly Harris), Plaintiffs would agree that if the Association and their directors stipulated for trial and summary judgment purpose that they did not receive or review the 2013 Affiliation Agreement, these depositions would not be required. This was discussed in good faith and is still under consideration by both sides.

### D. DEPOSITION OF RANDY MERCER AND EVIDENCE OF HIS ALLIANCE WITH MARRIOTT

8. The Association has provided the declaration of its counsel Jessica Livingston, Esq. I agree with some but not all of her testimony.

9. It is true (because counsel so attests) that the Association never had the 2013 Affiliation Agreement. It is also true that Ms. Sobeck testified that the Marriott Defendants probably never gave the Affiliation Agreement to the Associations. Indeed, Sobeck testified that no one including the law department would have provided this— a most important document— unless it was requested. On May 15, 2018, Sobeck provided this rather incredible testimony:

Q. Why didn't you ever give that to Mr. Mercer?

A. Why didn't I ever give it to him?

Q. Yeah.

A. I guess he never asked for it.

Q. But you asked him to sign an acknowledgement and joinder of this document and you never gave it to him?

4

A. I don't know if I gave it to him or not. If he didn't ask for it, I wouldn't have given it to him.

Q. Why not?

A. Because he didn't ask for it.

Q. Do you think it would've been fair to give to a board president— you're the asset manager. Wouldn't it have been fair to give him a document that he was acknowledging and joining?

A. I think, if there were any concerns— they were represented by counsel and there were conversations happening between our attorneys and their attorney. If there was any need for it, I think they would've discussed it. Barbara [Egolf— a Marriott in house lawyer] might have given it to Mr. Marino [a labor lawyer and Mr. Mercer's friend]. I don't know.

Q. You don't know that?

A. I don't know.

Q. Have you ever seen any evidence that Ms. Egolf ever gave this document to anyone at Aspen Highlands?

A. I don't know if they did or not.

Q. So Marriott Vacation Worldwide, at least as far as you knew from the business side— not the lawyer side— did not give the affiliation agreement from November of 2013 to the board president or the board because they didn't ask for it?

MR. SELLINGER: Objection to form.

A. Yeah. We didn't give it to them, I guess, if they didn't ask for it. We would've been talking about it. We did summaries of the program for them. There was a lot discussion about how the program worked, and it was even included in the letters and FAQs and all that type of thing. So, if they didn't ask for this, I guess we didn't give it to them. I don't know.

**Exhibit 1**, Sobeck depo at 58:14-61:7.

10. Plaintiffs commenced the deposition of Mr. Mercer on October 24, 2017, at his office in Fort Myers, Florida. I was well prepared and moved at a very quick pace and covered over 60 exhibits. I did not finish in 7 hours. While, the details, length and circumstances of Mr.

5

Mercer's deposition may or may not come before the Court in a separate discovery dispute context, it is unfortunate that Association's counsel cast another aspersion about my "disrespect". Reading the transcript portions provided as an exhibit by Ms. Livingston reveal to me a job well done cross-examining a key witness. We afforded all courtesies to Mr. Mercer and his counsel and the transcript reveals only unfortunate and undeserved remarks and lecturing about my professionalism by opposing counsel.

11. Finally, much is made by the Association that these directors are "volunteers". The evidence is that in the spring of 2012, Messrs. Mercer and Oliver were essentially handpicked for this board by MVW in 2012, right as the RCDC clubs were being "re-engineered". Mr. Mercer proudly boasts about his current 6 year stint as the president on his on-line presence. He served on the board before that too. He is a professional volunteer. *See* https://creconsultants.com/team/randalmercer/

12. Mr. Mercer also wrote Mr. Oliver only a few weeks before blindly signing the joinder that "we are the crown jewel in the [RCDC Association] platform from cooperation perspective …" **Exhibit 4** is a copy of Mr. Mercer's email to Mr. Oliver.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 1, 2018, in Aspen, Colorado.

       */s/ Matthew C. Ferguson*
       Matthew C. Ferguson

4827-8750-1415, v. 1