# EXHIBIT 1

```
 1   RCHFU, LLC,  et al.,
 2   Plaintiffs,              United States District Court
                              District of Colorado
 3   v.                       No.  1:16-cv-01301 PAB-GPG
 4   MARRIOTT VACATIONS WORLDWIDE
     CORPORATION, et al.,
 5
          Defendants,
 6   _____/
     REISER, et al.,
 7
          Plaintiffs,         Eastern District of California
 8   v.                       No. 2:16-cv-00237-MCE-CKD
 9   MARRIOTT VACATIONS WORLDWIDE
     CORPORATION, et al,
10
          Defendants,
11   _____/
     PETRICK, et al.,
12
          Plaintiffs,
13                            San Francisco County
     vs.                      No. CGC-15-54897
14
     MARRIOTT VACATION WORLDWIDE
15   CORPORATION, et al.,
16        Defendants.
     _____/
17
18        VIDEOTAPED DEPOSITION OF STEPHANIE SOBECK
19                    May 15, 2018
20             Tuesday, 9:25 a.m.-4:52 p.m.
21
22
23
24   Job No. 2911163
25   Pages 1 - 275
```

Page 1

Veritext Legal Solutions
866 299-5127



EXHIBIT 1

```
10    Taken on Behalf of the Plaintiffs before
11    Lisa Gerlach, Court Reporter, Notary Public
12    in and for the State of Florida at Large,
13    pursuant to Plaintiffs' Notice of Taking
14    Deposition in the above cause.
```

Page 2

Appearances:
Counsel for the Plaintiffs:
   MATTHEW C. FERGUSON, ESQUIRE
   The Matthew C. Ferguson Law Firm, PC
   119 South Spring, Suite 201
   Aspen, CO 81611
   970-925-6288
   matt@matthewfergusonlaw.com

   MICHAEL S. REISER, SR., ESQUIRE
   MICHAEL S. REISER, JR.
   MATTHEW REISER, ESQUIRE, by speakerphone
   Reiser Law, PC
   1475 Broadway, Suite 300
   Walnut Creek, CA 94596
   michael@reiserlaw.com
   matthew@reiserlaw.com

   TYLER MEADE, ESQUIRE
   The Meade Firm
   1816 Fifth Street
   Berkeley, CA 94710
   510-843-3670
   tyler@meadefirm.com

Page 3

Appearances:

For the Defendant Marriott:
   PHILIP SELLINGER, ESQUIRE
   Greenberg Traurig, LLP
   500 Campus Drive, Suite 400
   Florham Park, NJ 07932-0677
   sellingerp@gtlaw.com
   marxi@gtlaw.co

   DOUGLAS A. KELLY, ESQUIRE
   KIM GRAY, ESQUIRE
   Marriott Vacations Worldwide
   6649 Westwood Boulevard
   Orlando, FL 32821

For the Defendant Aspen Highlands
Condominium Association, by speakerphone:
   JESSICA BLACK LIVINGSTON, ESQUIRE
   Hogan Lovells
   1601 Wewatta Street, Suite 900
   Denver, CO 80202
   303-899-7300
   jessica.livingston@hoganlovells.com

Page 4

INDEX

| WITNESS | EXAMINATION | PAGE |
|---|---|---|
| Stephanie Sobeck | | |
| | Direct by Mr. Ferguson | 8 |
| | Direct by Mr. Reiser | 145 |
| | Cross by Mr. Sellinger | 270 |
| | Redirect by Mr. Ferguson | 271 |

EXHIBITS

| EXHIBIT | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 2102 | Affiliation Agreement, RCDC067469 through RCDC067520 | 23 |
| Exhibit 2103 | First Amendment to Affiliation Agreement, RCDC070241 through RCDC070242 | 96 |
| Exhibit 2104 | Acknowledgement of and Joinder to Affiliation Agreement, AHCA00018031 through AHCA00018034 | 92 |
| Exhibit 2136 | Corporate Growth Committee Document, RCDC070195 through RCDC070204 | 29 |
| Exhibit 2137 | Corporate Growth Committee Document, RCDC070205 through RCDC070209 | 228 |
| Exhibit 2138 | Corporate Growth Committee Document, RCDC070210 through RCDC070216 | 264 |

Page 5

2 (Pages 2 - 5)

|   | EXHIBITS | |
|---|---|---|
| EXHIBIT | DESCRIPTION | PAGE |
| Exhibit 2213 | E-Mail, RCDC015683 | 151 |
| Exhibit 2139 | Corporate Growth Committee Document, RCDC070217 through RCDC070222 | 269 |
| Exhibit 2140 | Privilege Log, 143 Pages | 22 |
| Exhibit 2141 | Privilege Log, 8 pages | 73 |
| Exhibit 2142 | Strategic Council Document, RCDC068348 through RCDC068352 | 185 |
| Exhibit 2143 | Strategic Council Document, RCDC068353 through RCDC068358 | 198 |
| Exhibit 2144 | Strategic Council Document, RCDC068359 through RCDC068364 | 202 |
| Exhibit 2145 | Strategic Council Document, RCDC068365 through RCDC068370 | 204 |
| Exhibit 2147 | Strategic Council Document, RCDC067694 through RCDC067699 | 211 |
| Exhibit 2148 | Strategic Council Document, RCDC067521 through RCDC067526 | 217 |

Page 6

THE VIDEOGRAPHER: Good morning. We're going on the video record. The time is 9:25 a.m., Eastern Daylight Time, on Tuesday, May 15, 2018. This is media unit number one of the video-recorded deposition of Ms. Stephanie Sobeck, taken by counsel for the plaintiff, in the matter of RCHFU, LLC, et al, vs. Marriott Vacations Worldwide Corp., et al.

This case is filed in the US District Court, District of Colorado. The Case Number is 1:16-cv-01301 PAB-GPG. This deposition is being held today in the office of Greenberg Traurig, located at 450 South Orlando Avenue, Suite 650, Orlando, Florida.

My name is Clay McMillan, with Veritext Legal Solutions. The court reporter today is Ms. Lisa Gerlach.

Will counsel in the room, please, identify yourselves and the parties that they represent?

MR. FERGUSON: My name is Matthew Ferguson. I'm counsel for the plaintiffs in the case known as RCHFU vs Marriott, pending in the United States, District of Colorado.

Page 7

MR. REISER: My name is Mike Reiser. I represent the plaintiffs in the aforementioned case in Aspen. And I also represent the plaintiffs in a case called Petrick vs. Marriott, et al., in the San Francisco Superior Court, as well as the plaintiffs in the case, Reiser v. Marriott, et al., in the Eastern District of California Federal Court.

MR. MEADE: Tyler Meade, for plaintiffs in all three cases.

MR. SELLINGER: Philip Sellinger, from Greenberg Traurig, in all three cases. With me is Kim Gray, corporate counsel at Marriott. And joining us at some point this morning will be Doug Kelly, assistant general counsel and head of litigation at Marriott, and, possibly, Ian Marx, also from Greenberg Traurig.

I would just note that while it was mentioned that this case is being taken in the -- this deposition -- in the Aspen case, our understanding was, this is being taken in all three cases.

MR. FERGUSON: Yeah. He just asked for

Page 8

appearances, and I think you indicated you're appearing in those two cases also. We agree with that.

THE VIDEOGRAPHER: Is there any counsel on the phone that needs to identify?

MS. LIVNGSTON: Yes. Good morning. This is Jessica Livingston, with Hogan Lovells. I represent the Aspen Highland Condominium Association in the RCHFU vs. Marriott case.

THE VIDEOGRAPHER: Our court reporter will swear in the witness and we can proceed.

THEREUPON,

STEPHANIE SOBECK,

A Witness herein, acknowledged after having been duly sworn and testified upon her oath as follows:

THE WITNESS: I do.

DIRECT EXAMINATION

BY MR. FERGUSON:

Q. Good morning, Ms. Sobeck.

A. Good morning.

Q. Do you recall having your deposition taken in this room on November 16, 2017?

A. I do.

Q. Have you been deposed in any other cases

Page 9

3 (Pages 6 - 9)

**Page 58**

1 acknowledge" -- or that's going to -- "we're going to
2 hand you a document that's called 'an acknowledgement
3 and joinder' and you get to decide whether or not you
4 have the Aspen Club sign on with this affiliation"?
5     MR. SELLINGER: Objection to form.
6     A. Yeah -- I don't remember if that
7 conversation -- we were talking about a survey and
8 other things during that time.
9 BY MR. FERGUSON:
10     Q. You had all worked on this affiliation
11 agreement for months; right?
12     A. Yes.
13     Q. And there was a lot of work that went into it
14 through the legal department?
15     A. I can't answer that. I assume so.
16     Q. Was there a lot of work done by people like
17 yourself to get a document like that done?
18     A. No.
19     Q. Do you know how long the affiliation
20 agreement that we see in Exhibit 2102 -- do you know
21 what its term is?
22     A. No.
23     Q. Did you know it's ten years?
24     A. No, I didn't.
25     Q. Do you recall discussing the term of a

**Page 59**

1 document called "an MOU" with Mr. Mercer? Do you
2 remember a memorandum of understanding?
3     A. I went over the memorandum of understanding
4 with him, but I don't remember a term being in there.
5     Q. Did you ever tell Mr. Mercer what the term of
6 the affiliation agreement between Aspen Highlands and
7 MRTC is?
8     A. Honestly, I don't remember. I might have,
9 but I don't remember.
10     MR. SELLINGER: Off the record. Whenever
11     is convenient. It's been about an hour. You
12     can pick the right time.
13 BY MR. FERGUSON:
14     Q. Exhibit 2102 --
15     A. Yep.
16     Q. -- why didn't you ever give that to
17 Mr. Mercer?
18     A. Why didn't I ever give it to him?
19     Q. Yeah.
20     A. I guess he never asked for it.
21     Q. But you asked him to sign an acknowledgement
22 and joinder of this document and you never gave it to
23 him?
24     A. I don't know if I gave it to him or not. If
25 he didn't ask for it, I wouldn't have given it to him.

**Page 60**

1     Q. Why not?
2     A. Why not? Because he didn't ask for it.
3     Q. Do you think it would've been fair to give to
4 a board president -- you're the asset manager.
5 Wouldn't it have been fair to give him a document that
6 he was acknowledging and joining?
7     A. I think, if there were any concerns -- they
8 were represented by counsel and there were
9 conversations happening between our attorneys and
10 their attorney. If there was any need for it, I think
11 they would've discussed it. Barbara might have given
12 it to Mr. Marino. I don't know.
13     Q. You don't know that?
14     A. I don't know.
15     Q. Have you ever seen any evidence that
16 Ms. Egolf ever gave this document to anyone at Aspen
17 Highlands?
18     A. I don't know if they did or not.
19     Q. So Marriott Vacation Worldwide, at least as
20 far as you knew from the business side -- not the
21 lawyer side -- did not give the affiliation agreement
22 from November of 2013 to the board president or the
23 board because they didn't ask for it?
24     MR. SELLINGER: Objection to form.
25     A. Yeah. We didn't give it to them, I guess, if

**Page 61**

1 they didn't ask for it. We would've been talking
2 about it. We did summaries of the program for them.
3 There was a lot discussion about how the program
4 worked, and it was even included in the letters and
5 FAQs and all that type of thing.
6     So if they didn't ask for this, I guess we
7 didn't give it to them. I don't know.
8 BY MR. FERGUSON:
9     Q. What would have prevented you from saying
10 this agreement was 20 years and not -- did you not
11 think you had to tell him what the term was?
12     MR. SELLINGER: Objection to form.
13 BY MR. FERGUSON:
14     Q. Withdraw that. How would he have known what
15 the term of that agreement was if you hadn't shown it
16 to him?
17     A. I don't know -- you mean what the term was --
18 I assume you must be insinuating that I told him,
19 which is fine if I did.
20     Q. You don't know what the term is as you sit
21 here today?
22     A. I don't remember.
23     Q. And you do know that the term is not in any
24 of the documents you just referenced, which were FAQs
25 and letters and informational data. No information in

16 (Pages 58 - 61)

Page 106

```
 1  all the preliminaries out of the way."
 2      He says, "Barbara, as usual, downplayed
 3  everything. I told her one-sided. All about assuring
 4  Marriott experience in Aspen. Wanted platinum
 5  experience for its members. We speak again tomorrow
 6  at 4:00 p.m."
 7      You were in and out of the negotiations,
 8  or discussions, I should say, with Mr. Marino,
 9  Ms. Egolf -- I know I say that wrong every time -- and
10  Mr. Mercer, were you not, in this timeframe?
11   A. Yes.
12   Q. At some point, a document called a
13  "Memorandum of understanding" came into play. Do you
14  recall that?
15   A. Yes.
16   Q. Whose idea was it? Did someone request it.
17  Did someone suggest it? What was the genesis of the
18  memorandum of understanding in this timeframe?
19   A. It was requested by Randy and Mike --
20  Mr. Marino.
21   Q. Who took the first draft of it; do you know?
22   A. I don't remember.
23   Q. It was requested. It was something you were
24  willing to give them?
25   A. Yes.
```

Page 107

```
 1   Q. Is it a binding contract between Marriott
 2  Vacation Worldwide, or anybody, and the HOA?
 3      MR. SELLINGER: Objection to form.
 4   A. No. I didn't know. It was really -- the
 5  purpose of it was, they wanted to kind of memorialize
 6  the discussions and what we were offering.
 7  BY MR. FERGUSON:
 8   Q. But the actual document that effectuated the
 9  ability of Aspen Highlands folks to voluntarily
10  participate in the Vacation opportunities you were
11  offering, that was going to be the acknowledgement and
12  joinder?
13   A. Well, the affiliation was the Lion & Crown
14  affiliation, and then the members being able to
15  participate was the acknowledgement by the board.
16  Correct.
17   Q. So the MOU didn't do anything like that?
18   A. No.
19   Q. It was a document they requested and you
20  agreed to and negotiated or discussed over the next
21  few weeks?
22   A. Yes.
23   Q. You said, "Nice. Good setup," at the top of
24  page 1 of Exhibit 1364. It says, "Remember, we are
25  the crown jewel in the platform from a cooperation
```

Page 108

```
 1  perspective in a location, member experience
 2  position."
 3      Did you have discussions with Mr. Mercer that
 4  he and his board were the crown jewel in terms of
 5  cooperating with you all about the affiliation?
 6   A. No. I don't remember him saying that.
 7   Q. 1365. I know. Let's see if we can use maybe
 8  the smart board here. I only have one question about
 9  this anyway.
10      MR. FERGUSON: Can you go to the last
11      page and blow up that paragraph, see if we
12      can read it? 1365, page 3. Thank you.
13  BY MR. FERGUSON:
14   Q. It's a little bit better, Ms. Sobeck, on the
15  screen. It's Marino to Tyler Oliver and Mr. Mercer on
16  March 5th, and it says, "Clarity with Barbara. We
17  want MOU and a letter to members in plain English,
18  explaining."
19      Do you recall there being -- them wanting a
20  document that was called an MOU? Is this around the
21  timeframe that they wanted the MOU?
22   A. Yes.
23   Q. And were they concerned about something being
24  in plain English? Did they discuss that with you?
25   A. Yes. Mr. Mercer and Tyler Oliver had been
```

Page 109

```
 1  discussing -- they were concerned that information --
 2  that letters that we wrote sometimes weren't as clear
 3  to members -- that members didn't understand things.
 4      So that's why we worked together on the
 5  member communications that were done, to ensure that,
 6  as members, they understood clearly what they said.
 7   Q. Okay. Do you know whether they -- withdrawn.
 8  Do you know whether you had ever shown the affiliation
 9  agreement that Mr. Delorey and Mr. Cunningham signed
10  on November 14, 2013 -- did you ever show that to them
11  when they were here in Orlando?
12   A. I don't know.
13   Q. Did they ever express any concerns about the
14  plain meaning or the clarity or lack of clarity of the
15  affiliation agreement with you at any time?
16   A. No.
17   Q. Okay. Go to page -- middle page -- the
18  second page in of Exhibit 1365.
19      MR. FERGUSON: Can you blow up the --
20      where it says "original message" there, Mike?
21      A little higher up. Right there. Thank you.
22  BY MR. FERGUSON:
23   Q. Mr. Marino told Mr. Mercer and Oliver there
24  on March 5, 2014 -- he said, "She" -- he's referring
25  to Barbara Egolf as you can see before -- "She only
```