IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 1:16-cv-01301-PAB-GPG

**RCHFU, LLC,** *et al.*

Plaintiffs,

v.

**MARRIOTT VACATIONS WORLDWIDE CORPORATION,** *et al.*

Defendants.

___

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR SANCTIONS AND A DEFAULT JUDGMENT AGAINST CERTAIN MARRIOTT DEFENDANTS**
___

### I.  INTRODUCTION

Despite its claim of inadvertence, evidence showing that Marriott intentionally concealed the 2013 Affiliation Agreement to strengthen its legal position is overwhelming. In its motion to dismiss, Marriott's main argument was that it could not be liable for aiding and abetting the Association's breach of fiduciary duty because the Association had no power to affiliate the luxury Ritz-Aspen with the Marriott Vacation Club ("MVC"). Dkt. No. 128 at pp. 12-13. The 2013 Affiliation Agreement, however, directly contradicts Marriott's argument because it expressly gave the Association the ability to prevent the MVC affiliation. While the Court rejected Marriott's argument on other grounds and upheld Plaintiffs' aiding and abetting claim, Marriott knew that concealing the 2013 Affiliation Agreement was its only chance to prevail on that argument.

Marriott attempts to downplay its motive to conceal by denying that the 2013 Affiliation Agreement gave the Association the power to decide on the affiliation; but the plain language of

1

the agreement, as well as deposition testimony that Marriott itself cites, rebuts this interpretation. Indeed, Marriott cites to its executive Stephanie Sobeck's testimony that "[I]f [the Association board] didn't want to make [the exchange opportunity] available to their members, it was going to be *the board's decision* not to do that." (emphasis added). Marriott's Opposition to Plaintiffs' Motion for Sanctions ("Opp."), Dkt. No 273 at p. 15. Ms. Sobeck also wrote an e-mail confirming that the "ultimate decision" to affiliate belonged to the board of the Association. Ex. A to Declaration of Michael Schrag ("Schrag Decl.").

Marriott's intentional concealment here is consistent with its pre-litigation behavior. Marriott admits that it never provided the Association with the 2013 Affiliation Agreement, but only presented the Association with the Acknowledgment and Joinder, which had obscure language suggesting that the Association's consent was not required. Marriott withheld the underlying agreement because it did not want the Association to fully comprehend that it had the right to veto the affiliation — which would have undermined Marriott's strategic plan to use the Ritz-Aspen as a lure to sell MVC points.

Plaintiffs reasonably believed that all relevant affiliation agreements had been produced. Although the Acknowledgement and Joinder referenced an underlying affiliation agreement, Plaintiffs were misled into believing that the affiliation agreement effectuating the MVC affiliation was the one that Marriott referenced in its motion to dismiss (which involved Cobalt), or the memorandum of understanding that the Association referenced. There was little reason for Plaintiffs to suspect that Marriott was hiding a key agreement in this case.

Marriott's intentional misconduct interfered with the judicial process and prejudiced Plaintiffs. Plaintiffs have already been forced to file motions, retake second depositions of

2

Marriott executives and now must litigate with the Association over whether they have adequately alleged breach of the duty of care and whether they can re-depose board members. For these offenses, this Court should invoke its inherent power to impose sanctions, including entering default judgment, to remedy the harm and deter future bad faith conduct.

## II. ARGUMENT

### A. Marriott's Concealment of the 2013 Affiliation Agreement Significantly Interfered with the Judicial Process and Underscores Marriott's Culpability

Interference with the judicial process and culpability of the offending party, two *Ehrenhaus* factors, weigh heavily in favor of imposing default judgment against the Marriott Defendants.[1]

#### 1. The 2013 Affiliation Agreement shows that Marriott fraudulently argued that the Association had no authority to prevent the MVC affiliation

Marriott argued that it could not be liable for aiding and abetting the Association in implementing the MVC affiliation because "[t]he Association did not make that decision [to affiliate], however, nor did it have the power to do so." Dkt. No. 128 at p. 13. The plain language of the 2013 Affiliation Agreement makes clear that, contrary to this argument and Marriott's opposition to the present motion (Dkt. No. 273 at pp. 10 and 14), the MVC affiliation could not have occurred without the Association's consent. The agreement was between Lion & Crown ("L&C") (an exchange program that included some Ritz-Carlton Destination Clubs, including the Ritz-Aspen) and Marriott Resorts, Travel Company, Inc. ("MVCD"). *See* Affiliation Agreement at RCDC067471, Dkt. No. 223-8, Reiser Decl., Ex. G. The first page of the agreement states its

---

[1] Marriott misses the point by explaining why *Farmer*, *Klein*, and *LaFleur* are factually distinguishable from the present case. Opp. at pp. 6-7. Plaintiffs only cited those cases for the general proposition that a court has inherent power to impose sanctions for bad faith conduct. *See* Plaintiffs' Motion for Sanctions and a Default Judgment, Dkt. No. 223 at p. 12.

purpose: for "the L&C Program [to] become affiliated with the MVCD Program as an Affiliate Program . . ." The same paragraph then explains how the agreement would work: that "certain members of the L&C Program *whose owners' association has executed an Acknowledgment Agreement* . . . shall have the right to elect to become a participant in the MVCD Program and have the ability to make use of the MVCD Program in accordance with the terms of this Agreement . . ." *See id*. (emphasis added). Thus, in order for any RCDC to affiliate with or "participate" in the point-based Marriott Vacation Club Destinations Exchange Program, its owners' association would have to first execute the Acknowledgment and Joinder Agreement. A latter part of the 2013 Affiliation Agreement reinforced this requirement by stating, "Notwithstanding anything contained herein to the contrary, *MVCD Members will not be entitled to the use and benefit of any (i) Accommodations at a L&C Destination without an Acknowledgment Agreement in place* . . ." *Id*. at § 6.9 (emphasis added).[2] Thus, one of Marriott's core arguments in this case relied on the nonexistence of the 2013 Affiliation Agreement — which strongly suggests that Marriott intentionally withheld it from Plaintiffs and the Court.

Marriott's attempt to explain how the 2013 Affiliation Agreement is "entirely consistent" with the positions it has taken in this case -- i.e., that the Association's consent was not required to affiliate Ritz-Aspen with MVC -- is unconvincing. Opp. at p. 16. In trying to convey that the Acknowledgment and Joinder was only a nicety or "accommodation," Marriott repeats what the Court already knows: that RC Management exercised its authority to hire a program manager,

---

[2] The language of the Acknowledgment and Joinder to the 2013 Affiliation Agreement is less clear. *See generally* Acknowledgment and Joinder, Dkt. No. 223-8 at RCDC067517-20. Without seeing the underlying 2013 Affiliation Agreement, it would be difficult to discern the purpose of the Acknowledgment and Joinder.

4

Cobalt, and gave Cobalt discretion to affiliate other locations with the Ritz-Aspen. Opp. at 11; Order on Motions to Dismiss, Dkt. No. 210 at pp. 3-5. Cobalt then used that discretion to affiliate with Lion & Crown, a separate exchange program with its own affiliate properties.[3] Opp. at 11. After that, Lion & Crown signed the 2013 Affiliation Agreement with MVC, which provides that in order for any particular Lion & Crown affiliate to participate in the MVC, its owners' association would have to consent to it. Marriott's explanation of the mechanics of the MVC affiliation leaves out this key step: that although the 2013 Affiliation Agreement affiliated Lion & Crown with the MVC, each particular owners' association of any Lion & Crown club would have to sign the Acknowledgment and Joinder before that club actually became a participant in the MVC. These defendants knew that their "discretion" was not "unfettered" and they managed to hide that fact first from the Board in 2014 and then from Plaintiffs in discovery which culminated in Marriott misleading three courts.

Marriott's argument that the Acknowledgment and Joinder was sought merely "as a means of ensuring [the Association's] cooperation" in the MVC affiliation is perplexing. The Association has nothing to do with the logistics of allowing MVC members to access the Ritz-Aspen. Marriott cites a paragraph from the Acknowledgement and Joinder discussing the Association's agreement to cooperate in the affiliation, but leaves out the first sentence of that paragraph, which confirms that the purpose of the Joinder is for the Association to formally agree to the affiliation: "Association hereby acknowledges the terms of the Affiliation Agreement and *joins in such*

---

[3] Marriott's point that Lion & Crown affiliated with other outside luxury exchange programs without the Association's consent is of no import. Those other programs, Abercrombie & Kent and Exclusive Resorts, LLC, were luxury clubs that were comparable in price to the RCDC product. Thus, those affiliations did not diminish Plaintiffs' property values by allowing a large number of individuals who paid a small fraction of what Plaintiffs paid to access the Ritz-Aspen.

*Affiliation Agreement by execution of this Acknowledgment . . .*" Acknowledgment and Joinder at § 2, RCDC067518 of Dkt. No. 223-8.

Then, Marriott cites Ms. Sobeck's deposition testimony which supports *Plaintiffs'* – rather than Marriott's – interpretation of the 2013 Affiliation Agreement. Indeed, Ms. Sobeck admits that "if [the Association board] didn't want to make [the exchange opportunity] available to their members, it was going to be the board's decision not to do that." *See* Opp. at p. 15. She also testified that the Association was being allowed "to make the MVCD Program available to its members [by] entering into this Acknowledgment . . ." *Id.* An e-mail she wrote to Richard Hayward, another Marriott executive, further confirms that she understood the 2013 Affiliation Agreement to give the Association final say over affiliation. There, Mr. Hayward asked Ms. Sobeck, "Is the ultimate decision the boards or management company?" Exh. A to Schrag Decl. Ms. Sobeck responded, "Decision to affiliate? **The Boards**." *Id.* (emphasis added).

Marriott's further claim that it imposed the MVC affiliation "to rectify" an "unfairness" to Ritz-Aspen owners is both irrelevant to the present motion and contrary to the evidence in this case.[4] Plaintiffs and other Ritz-Aspen owners were strongly opposed to the MVC affiliation, mainly out of concern that it would cause their property values to plummet. Indeed, in April 2013 Ritz-Aspen owners commended the Association for obtaining the opportunity for a majority vote on the MVC affiliation. Owners wrote letters to defendants warning that affiliation would diminish

---

[4] Marriott claims that MVC members already had access to RCDC locations through the MVC Explorer program. But that program only gave MVC access to *developer-owned* inventory in RCDC locations, and the program was, by its nature, temporary – since the developer would eventually sell its remaining inventory. Furthermore, when Marriott realized that they were barred from doing this they retained a broker to conduct a "fire sale" of its inventory.

the Ritz-Aspen's exclusivity. *See, e.g*., Letter from Juan Pablo Cappello, Ex. B to Schrag Decl. The Association sent a cease-and-desist letter to Marriott advising that the MVC affiliation would constitute a breach of fiduciary duty. Philip Gosch 11/21/13 Ltr., Ex. C to Schrag Decl. That Ms. Sobeck would suggest MVW was acting in the interests of RCDC members underscores Marriott's uneasy relationship with the truth. Plaintiffs' recent subpoena to APCO Worldwide yielded critical documents including an August 2013 report titled *Ritz-Carlton Destination Club Member Study Detailed Report* that included a telling "Executive Summary." This document (produced by APCO on May 20, 2018 and attached as Exhibit D to Schrag Decl.) contained, among other things, "Key Findings" from a July/August 2013 APCO survey of 797 RCDC members – including 255 at Ritz-Aspen. Marriott concealed this and another APCO report-- just as they did with the 2013 Affiliation Agreement. Sobeck had to be fully aware when she was questioned about a raw data printout that there was this Member Study; yet she hid the fact of its existence and Marriott would have concealed it forever.[5] Here is one of APCO's "Key Findings" reported to Marriott:

- **There is a real sense among the Members that they are not getting "Ritz-Carlton value" anymore; many members believe the Marriott partnership dilutes the brand**. The open-end responses reveal that Members have seen their fractional ownership investment erode in both real and perceived value and they are unhappy with the introduction of Marriott Vacation properties and members into "their" (Ritz-Carlton) system. For Members, Marriott properties are not as attractive and do not offer the same value or benefits as does a Ritz-Carlton property; some Members resent Marriott owners having access to the RCDC properties, feeling it devalues their Ritz-Carlton membership.

APCO reported "Strategic Implications" to Marriott saying, "Affiliation with Marriott Vacation Club Destinations will deepen Member mistrust and dissatisfaction with Ritz-Carlton Destination Club." How Sobeck could testify that MVW was doing Ritz-Aspen a favor is difficult to fathom.

---

[5] Despite Plaintiffs' recent demands for the APCO Member Study and Focus Group Report and other communications concerning it, nothing has been produced.

Indeed, APCO then performed a January 2014 focus group and generated another report at the exact time Sobeck and Cunningham were conducting the rigged survey. APCO reported:

> A related concern is whether or not allowing MVC members access to the Clubs will result in devaluing their asset; many spoke about the loss of clubs impairing the value of their asset and question if this new affiliation will result in a further decline. Another concern is competing for Club inventory with thousands of MVC members. Finally, as we heard in the survey, several of the members flat out said they do not want MVC members in their clubs.

Ex. E to Schrag Decl. Marriott withheld this report too. Finally, this Court has already recognized evidence that the Marriott Defendants opened up the Ritz-Aspen to MVC members in order to enrich themselves -- to "dangl[e] the lure of RCDC usage as temptation;" and thus "essentially destroyed much of the value of Plaintiffs' purchase . . ." Dkt. No. 185 at p. 8.

In sum, the plain language of the 2013 Affiliation Agreement and its Acknowledgment and Joinder, along with deposition testimony that Marriott itself cites, establish that the agreement gave the Association effective veto power over the MVC affiliation. That power is at odds with Marriott's positions in this case, and is evidence of Marriott's intent to withhold the 2013 Affiliation Agreement from Plaintiffs and the Court.

### 2. Marriott fails to even address why it withheld the 2013 Affiliation Agreement from the Association

Marriott's admission that the Association did not have the 2013 Affiliation Agreement until it was produced a few months ago in this case is further evidence of Marriott's intent. *See* Opp. at p. 9. Ritz-Carlton Management, as a fiduciary, had the duty to provide complete information about the MVC affiliation to the Association and its members. Had the Association seen the 2013 Affiliation Agreement, its board members would have known that it had the authority to prevent the MVC affiliation. But Marriott chose to have the Association execute the

Acknowledgment and Joinder and did not provide the 2013 Affiliation Agreement.[6] This shows Marriott's intention to conceal the document – from the Association as well as Plaintiffs and the Court.

### B. Marriott Also Fails to Address the Primary Prejudice to Plaintiffs

The primary prejudice suffered is that Plaintiffs would have sought leave to amend their claims against the Association (and the coextensive aiding and abetting claims against the Marriott Defendants) to more explicitly allege negligence and breach of the Association's duty to exercise reasonable care based on the Board signing the Acknowledgment and Joinder without reviewing the underlying agreement. While Plaintiffs maintain that these claims are already subsumed in their first and third causes of action, the Association disagrees. *See* Association's Response in Opposition to Plaintiffs' Motion for Sanctions, Dkt. No. 262 at p. 12. Having this fight with the Association now, and forcing Plaintiffs to seek leave to amend, would risk further delaying this case. The Marriott Defendants do not even address this prejudice to Plaintiffs in their opposition.

Instead, the Marriott Defendants merely claim that Plaintiffs have not suffered prejudice from having to retake the depositions of Lee Cunningham, Stephanie Sobeck, Richard Hayward, and the Association board members. That is not the case, as Plaintiffs have already incurred additional costs and attorney time in retaking the depositions of Mr. Cunningham and Ms. Sobeck, and will continue to incur costs in re-deposing the other witnesses.

### C. The Court Could Not Have Given a Prior Warning in This Instance of Concealment and Marriott and Its Counsel Have Been Warned by Other Courts to Obey Discovery Obligations

---

[6] Sobeck's testimony in this regard provides additional evidence for the *prima facie* case for punitive damages. *See* Declaration of Matthew Ferguson at ¶ 9, Dkt. No. 274-1.

While Marriott complains that it was not given a warning not to violate discovery rules, the Tenth Circuit has held that a warning "is not a prerequisite to the imposition of dismissal sanctions." *Jones v. Warren Power & Mach., Inc*., 2013 WL 1288203, \*9 (W.D. Okla. Mar. 25, 2013) (citing *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1045 (10th Cir.2005)); *see also Cerna v. Lonestar Distribution Corp*., 2014 WL 12786894, \*4 (D.N.M. Oct. 10, 2014) (warning not required where there was no opportunity for court to provide advance warning that discovery violations could result in dismissal). Here, the *Ehrenhaus* factor of prior court warning is inapplicable. The fact that the Court did not know of the conduct – and thus could not warn about it – is exactly the problem. The Marriott Defendants concealed the 2013 Affiliation Agreement from both Plaintiffs and the Court, and then hoped to win on arguments that relied on the non-existence of the document.

What is more, other district courts have repeatedly warned Marriott and its counsel, Greenberg Traurig ("GT"), that discovery violations may result in sanctions. *See* Dkt. No. 223 at p. 17. These prior sanctions orders should have been sufficient warning to Marriott and GT.

Dated: June 15, 2018                                      Respectfully submitted,

                                                                    GIBBS LAW GROUP LLP

                                                                    */s/ Michael Schrag*
Michael Schrag (CA State Bar # 185832)
Linda Lam (CA State Bar# 301461)
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: (510) 350-9718
E-mail: mls@classlawgroup.com
E-mail: lpl@classlawgroup.com

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 15th day of June 2018, a true and correct copy of the foregoing **PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR SANCTIONS AND A DEFAULT JUDGMENT AGAINST CERTAIN MARRIOTT DEFENDANTS** was served via Email upon:

Daniel F. Shea, Esq.
dan.shea@hoganlovells.com
Jessica Black Livingston, Esq.
jessica.livingston@hoganlovells.com
Hogan Lovells US LLP
1200 Seventeenth Street, Suite 1500
Denver, Colorado 80202

Naomi G. Beer, Esq.
BeerN@gtlaw.com
Greenberg Traurig, LLP
1200 17th Street, Suite 2400
Denver, Colorado 80202

Ian S. Marx, Esq.
MarxI@gtlaw.com
Philip R. Sellinger, Esq.
SellingerP@gtlaw.com
Greenberg Traurig, LLP
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932

David Masters
dlm@mastersviner.com
Masters & Viner, P.C.
970.249.2622
152 Colorado Avenue
Montrose, CO 81401

*/s/ Linda Lam*
Linda Lam