IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-01301-PAG-GPG

RCHFU, LLC, et al

    Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al,

    Defendants.

---

**MARRIOTT DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SANCTIONS AND A DEFAULT JUDGMENT AGAINST CERTAIN MARRIOTT DEFENDANTS BASED ON APCO DOCUMENTS**

---

Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC, The Cobalt Travel Company, LLC, and The Lion & Crown Travel Co., LLC (collectively, the "Marriott Defendants") respectfully submit this Response to Plaintiffs' Motion for Sanctions and a Default Judgment against Certain Marriott Defendants Based on APCO Documents; and Motion to Consolidate (ECF#282).[1]

## INTRODUCTION

---

[1] During the July 11, 2018 status conference with Magistrate Judge Gallagher, this motion was consolidated with Plaintiffs' earlier sanctions motion (ECF#223).

1

Plaintiffs seek to avoid a trial on the merits by repeatedly and wrongfully accusing the Marriott Defendants of various discovery violations, including intentionally concealing documents. No intentional concealment occurred here. The Marriott Defendants failed to produce the APCO Documents because the contract lawyers they hired to review documents in this case erroneously marked the APCO Documents as "non-responsive." Like the Marriott Defendants' wholly inadvertent failure to produce the 2013 Affiliation Agreement that is the subject of Plaintiffs' earlier sanctions motion (ECF#223), the discovery error on which this motion is based occurred despite the Marriott Defendants' best efforts and has since been rectified. The Marriott Defendants' briefing and supporting Declarations for the two motions clearly show that the Marriott Defendants have acted in good faith to fulfill their discovery obligations and that Plaintiffs have no basis for alleging a pervasive pattern of concealment, obfuscation, and dishonesty. Plaintiffs' motions should be denied.

## STATEMENT OF FACTS

In this case, owners of fractional interests at The Ritz-Carlton Club, Aspen Highlands, claim that they have suffered damages due to actions taken by the Marriott Defendants. Similar cases, filed by the same attorneys that represent Plaintiffs here, were brought against the Marriott Defendants in the United States Court for the Eastern District of California and the Superior Court of California concerning The Ritz-Carlton

Club, Lake Tahoe, and The Ritz-Carlton Club, San Francisco, respectively.[2]  *See* Declaration of Ian S. Marx ("Marx Decl."), submitted herewith, p. 2, ¶ 3.

### A.     The agreed-upon coordinated protocol governing discovery in this case

Early on, the parties agreed that, given the overlapping nature of the three cases, it would be most efficient to take a coordinated approach to fact discovery.  Thus, it was agreed that the Marriott Defendants would compile, review, and produce documents on a coordinated basis with respect to the three cases and would produce witnesses for depositions only once, rather than on multiple occasions.  Marx Decl. p. 2, ¶ 4.  As part of this protocol, the parties engaged in extensive negotiations regarding the collection, review and production of electronically-stored information.  The information produced under the discovery protocol would be narrowed through the use of agreed-upon search terms, agreed-upon date ranges, agreed-upon custodians, and then reviewed for responsiveness and privilege.  Marx Decl. p. 2, ¶ 5.

### B.     The engagement of APCO Worldwide and the APCO Documents

APCO Worldwide is a public relations/crisis management firm that the Marriott Defendants' law department engaged in 2013 to provide assistance in connection with litigation relating to The Ritz-Carlton Club in Kapalua, Hawaii.  *See* Declaration of Matthew C. Ferguson, Ex. 1 (ECF#282-2).  APCO's engagement was later expanded to

---

[2] United States Court for the Eastern District of California, *Reiser v. Marriott Vacations Worldwide Corporation, et. al.*, Docket No.: 2:16-CV-00237-MCE-CKD; and Superior Court of California, San Francisco County, *Petrick v. Marriott Vacations Worldwide Corporation, et. al.*, Case No. CGC 15-545987.

3

include conducting a member survey and focus groups. *Id.* The survey was sent to Ritz-Carlton Club members at several Clubs in Summer 2013; focus groups also were conducted with some members during late 2013 and early 2014. Marx Decl. p. 3, ¶ 6. In August 2013 and January 2014, APCO prepared reports concerning the survey and focus groups, respectively (the "2013 Survey Report" and the "2014 Focus Group Report," collectively, the "APCO Reports"). Marx Decl. p. 3, ¶ 7; Ferguson Decl., Exs. 2 and 3 (ECF#282-3 and 4).

In June 2017, pursuant to the agreed upon protocol with Plaintiffs, the Marriott Defendants produced documents to Plaintiffs, including some relating to the 2013 APCO survey, as well as spreadsheets containing all of the member responses received, *see*, *e.g.*, Ferguson Decl., Ex. 10, and the Marriott Defendants' witnesses were questioned extensively at deposition about these member responses. Marx Decl. p. 3, ¶ 8 and p. 4, ¶ 10.[3]

The data produced by the Marriott Defendants in June 2017, included, with respect to every Ritz-Carlton Club Member who responded to the survey administered by APCO

---

[3] Plaintiffs inaccurately contend that Marriott Defendant deposition witnesses "feigned lack of memory of the APCO survey." To the contrary, witness Stephanie Sobeck explained quite cogently the background for the survey. *See* Marx Decl., ¶ 13 and Ex. C (at. pp. 83-84) ("we wanted to understand from the rest of the members -- kind of thoughts on the program, thoughts on the future of the program, things that they'd like to see. This was a very -- I mean, this whole period of the club -- I mean, the club was evolving. We had lost a couple clubs. Kapalua and Abaco were going away. There were just a lot of things going on, and we wanted to do a survey of the members to understand their thoughts").

in 2013, an extensive amount of information, including: (a) a record number for each response; (b) the gender of the respondent; (c) the age of the respondent; (d) the respondent's Ritz-Carlton Club home resort; (e) the respondent's overall impression of the Ritz-Carlton brand (on a numerical scale); (f) the respondent's overall satisfaction with The Ritz-Carlton Club (on a numerical scale); and (g) the respondent's open ended response to the question of why the respondent gave the particular numerical rating to The Ritz-Carlton Club. Marx Decl. p. 3, ¶ 9; Ferguson Decl., Ex. 10 (ECF#282-11).[4] The Marriott Defendants' document production, however, did not include the APCO Reports or emails concerning them (collectively, the "APCO Documents"). Marx Decl. p. 4, ¶ 11.

After noting that the APCO Reports had been produced in response to a document subpoena issued to APCO by Plaintiffs, the Marriott Defendants immediately set about to determine why the APCO Reports had not been included in their multiple document productions. Marx Decl. p. 4, ¶ 12. The Marriott Defendants discovered the problem: the contract lawyers who had been engaged to review potentially responsive documents had mistakenly marked the APCO Reports as non-responsive. Marx Decl. p. 4, ¶ 13. The Marriott Defendants take full responsibility for the contract lawyers' error. The error was

---

[4] Plaintiffs imply that Ms. Sobeck testified untruthfully at deposition that the APCO survey "didn't have to do with the affiliation." Yet none of the questions in the APCO survey mentioned or asked for any opinion regarding the proposed MVC Affiliation. The only time that subject arose in connection with the APCO survey is if a respondent chose to raise it in an "open-ended" response. All of those open-ended responses were produced in discovery by the Marriott Defendants in June 2017.

5

entirely inadvertent, however, and it occurred despite the Marriott Defendants' best efforts to meet their discovery obligations.

### C. The engagement of Special Counsel, Inc. ("Special Counsel")

The parties' agreed-upon discovery protocol described above generated almost 100,000 potentially responsive electronic documents. To facilitate the review of these documents, the Marriott Defendants engaged Special Counsel, a legal staffing and services company, to assist with the initial review of potentially responsive electronic documents. At the Marriott Defendants' sole (and sizable) expense, Special Counsel provided a document review team of approximately ten attorneys, headed by a project manager who provided supervisory and quality control oversight. Marx Decl. p. 4, ¶ 14 and Declaration of Tricia Meisner ("Meisner Decl.") p. 2, ¶3. The Special Counsel team received significant initial and ongoing training from Greenberg Traurig ("GT") in connection with the review process. Before beginning that process, the Special Counsel reviewers were provided with an extensive array of case materials that included: (1) Plaintiffs' complaints; (2) Plaintiffs' discovery requests; (3) a GT-prepared case summary; and (4) GT-prepared data review and coding protocol memos. Marx Decl. p. 5, ¶ 15 and Meisner Decl. p. 2, ¶ 5.

In addition, before Special Counsel began the review process, Marriott Defendants' counsel, Ian Marx, conducted a two-day, on-site, in-person orientation and training session with the Jacksonville, Florida-based reviewers. During that session, Mr. Marx presented an overview of the cases and went over the review materials with

the reviewers and their supervisor. Meisner Decl. p. 2, ¶ 7. Mr. Marx also reviewed and discussed specific documents about which the reviewers had questions concerning responsiveness and privilege. Marx Decl. p. 5, ¶¶ 17 and 18, and Meisner Decl. p. 3, ¶ 8. Once the review process was underway and on a continuing basis thereafter, the Special Counsel supervisor was in regular contact with Mr. Marx and others at GT to discuss documents about which the reviewers had responsiveness and privilege questions. Marx Decl. p. 5, ¶ 19 and Meisner Decl. p. 3, ¶ 9. The review began on May 2, 2017 and concluded on July 11, 2017. A total of approximately 97,000 potentially responsive documents were reviewed. Marx Decl. p. 6, ¶ 22 and Meisner Decl. 3, ¶ 11.

GT also provided written instructions to Special Counsel, which were further explained during oral discussions. The written materials instructed the reviewers to tag documents as "responsive" if they fell into either of the following two categories (among others):

(a) Documents (including communications, memoranda and feedback) concerning the affiliation of the Ritz-Carlton Club [San Francisco ("SF"), Lake Tahoe ("LT") and Aspen] with Marriott Vacation Club Destinations ("MVC"); and

(b) Documents relating to vote and/or survey materials sent to the owners of fractional interests at [SF, LT and Aspen] Ritz pertaining to the affiliation of [SF, LT and Aspen] Ritz with MVC.

Marx Decl. p. 6, ¶ 23 and Meisner Decl. p. 3, ¶ 12. (Had the Special Counsel reviewers followed GT's instructions, the APCO Documents would have been tagged as responsive and would have been part of the Marriott Defendants' document production.)

7

In addition to the written instructions and on-site training, Special Counsel Project Manager Tricia Meisner conducted and supervised a quality control protocol, which was intended to ensure that the Special Counsel reviewers were properly tagging the documents being reviewed. This protocol included a review of tagging decisions made by the reviewers, to ensure, among other things, that the reviewers were properly tagging documents as responsive. In addition, as the review progressed, Special Counsel consolidated the team of reviewers from 10 to 6, retaining the most capable reviewers as identified through the quality control process. Marx Decl. p. 6, ¶ 20 and Meisner Decl. p. 2, ¶ 4 and p. 3, ¶ 10.

After Special Counsel completed its initial review for responsiveness, GT conducted a second-level review of the documents that had been tagged as responsive. Documents that Special Counsel had tagged as non-responsive were not subject to this second-level review. Marx Decl. p. 6, ¶ 21. Since both of the APCO Reports discuss the affiliation of the Ritz-Carlton Clubs with MVC, the Special Counsel reviewers should have tagged the reports as responsive. Emails relating to the APCO Reports should also have been tagged as responsive. Unfortunately, that did not happen.

**D.    The Special Counsel reviewers' tagging decisions: the audit trail**

The 2013 Survey Report appeared three times in the documents initially reviewed by Special Counsel. Each time it was erroneously tagged as non-responsive. The 2014 Focus Group Report appeared one time in the documents initially reviewed by Special Counsel and was likewise erroneously tagged as non-responsive. Marx Decl. p. 7, ¶¶ 25

8

and 26. Because the APCO Reports were initially tagged as non-responsive by the Special Counsel reviewers, they were not reviewed again later as part of GT's second-level review. Consequently, the APCO Reports were not included in the Marriott Defendants' document production. Marx Decl. p. 8, ¶ 28.

When the APCO Reports were produced pursuant to a subpoena to APCO (*see* Subsection B, *supra*), GT proceeded to review the entire universe of potentially responsive APCO-related documents. From that review, GT identified the four instances described above concerning the APCO Reports and related documents concerning APCO's work (e.g., internal emails among the Marriot Defendants and emails between the Marriott Defendants and APCO) that should have been produced as responsive to Plaintiffs' discovery requests. In each instance, a Special Counsel reviewer had tagged the particular document as "non-responsive," and that tagging decision was affirmed by another Special Counsel reviewer as part of a quality control procedure. Marx Decl. p. 8, ¶ 29.

When the Marriott Defendants learned of the mistake, they produced the APCO Documents (i.e., the APCO Reports and related emails) to Plaintiffs. Marx Decl. p. 8, ¶ 30. The Marriott Defendants also promptly offered to produce Stephanie Sobeck (Vice President, Asset Management) for a third deposition so that she could, despite her previous testimony about APCO and the related survey, be examined concerning the APCO Documents. Marx Decl. p. 9, ¶ 31.

E. **The Reports are unrelated to the alleged change from a survey to a vote**

Plaintiffs allege that the APCO Reports "go to the heart of Plaintiffs' constructive fraud claim" because "APCO's reports show Marriott's motivation to renege on the promise of a vote [and substitute a survey]: it knew a majority of members would never vote in favor of affiliation." Plaintiffs' argument is completely devoid of any factual support. Documents produced in discovery demonstrate that the Marriott Defendants used the terms "vote" and "survey" interchangeably and the clarification to use the term survey instead of vote to accurately reflect the Marriott Defendants' intent for a survey *predated* the APCO survey and Reports. For example, a Business Review Report dated May 31, 2013, states that: "All communications drafted for the Member MVC Affiliation Survey. Reviewed preface letter with Board, edited per their request, have not received final approval." Marx. Decl., Ex. G (emphasis added). Similarly, in a letter on July 2, 2013, the Aspen Board advised all Members that:

> A Member survey will be distributed to all Aspen Members shortly. The question will be asked in essence, "Do you want the Aspen Ritz-Carlton Club to have an exchange affiliation with the Marriott Vacation Club Destinations Exchange Program, and do you want Marriott Vacation Club Destination Members to have access to our Aspen Club?"

Marx Decl, Ex. H (emphasis added).

The APCO survey was conducted from July 8 through August 16, 2013, *after* it was clarified that there would be a survey rather than a vote concerning affiliation. Thus, plaintiffs' suggestion that the APCO Reports reveal any intention on the part of the Marriott Defendants to mislead is unwarranted.

## ARGUMENT

**DEFAULT JUDGMENT IS NOT WARRANTED BECAUSE ALL RELEVANT FACTORS WEIGH HEAVILY AGAINST IMPOSING THE MOST EXTREME SANCTION**

The extreme sanction of default judgment that Plaintiffs seek is not warranted because the failure to produce the APCO Documents was inadvertent and the result of human error. While a court has the inherent power to sanction a party for abusing the judicial process (i.e., for bad faith conduct) (*see Sun River Energy, Inc. v. Nelson*, 800 F. 3d 1219, 1227 (10th Cir. 2015)), the court must exercise caution in invoking such power and must comply with the mandates of due process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 111 S. Ct. 2123, 2136 (1991). In order to impose the extreme sanction of a default judgment, the court must first find (by clear and convincing evidence—a mere preponderance is insufficient) that the abusive behavior occurred, and, second, must find that a lesser sanction would not sufficiently punish and deter the abusive conduct while allowing a full and fair trial on the merits. *Shepherd v. American Broadcasting Companies, Inc.*, 62 F.3d 1469, 1472 (D.C. Cir. 1995). Neither finding can be made here.

Controlling Tenth Circuit authority makes clear that entry of a default judgment is an extreme sanction that is only to be used in cases of <u>willful misconduct</u>. *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992). In *Ehrenhaus,* the district court dismissed the complaint with prejudice pursuant to Federal Rule of Civil Procedure 37(b)(2)(C) as a sanction for plaintiff's intentional violation of a discovery order. Unlike in *Ehrenhaus,* no discovery order was violated here. Nevertheless, *Ehrenhaus* is helpful because it lists

11

factors that courts are to consider when confronted with a motion like Plaintiffs'. Those are: (1) the degree of actual prejudice to the opposing party; (2) the amount of interference with the judicial process; (3) the culpability of the party; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions. *Id*. at 921 (citations omitted). These factors weigh heavily against imposing the extreme sanction sought by Plaintiffs, and also show that no sanctions of any type are warranted.

### 1. Any prejudice Plaintiffs may have experienced has been rectified

Plaintiffs claim to have been prejudiced by the fact that they did not have a copy of the APCO Documents when they initially deposed three Marriott Defendants representatives. Those individuals, however, were questioned extensively about the member responses to the APCO survey. Marx Decl. p. 4, ¶ 10, Exs. B, C, and D. Plaintiffs had the actual survey results, and used that information during the depositions. *Id*. Moreover, the Marriott Defendants have agreed to produce Stephanie Sobeck (Vice President, Asset Management) for further examination concerning the APCO Documents. Thus, whatever prejudice Plaintiffs allegedly may initially have experienced has been cured.

### 2. The judicial process has not been interfered with

Plaintiffs do not argue that the Marriott Defendants interfered with the judicial process by making false arguments to the Court. Rather, Plaintiffs reiterate their inflammatory (and wholly unsupported) argument that the failure to produce the APCO

12

Documents was intentional. This case involves hundreds of thousands of pages of documents and coordination and production of documents within an agreed upon production schedule. The Marriott Defendants used their best efforts to produce all documents responsive to Plaintiffs' discovery requests. Despite those efforts, the contract attorneys hired to provide document review services mistakenly tagged the APCO Documents as non-responsive, and, as a result of that inadvertent human error, the APCO Documents were not produced. The APCO Documents have since been produced, and, except for whatever delay may have been caused by Plaintiffs' filing of this motion, the judicial process has not been disrupted or delayed.

### 3. The Marriott Defendants' failure was inadvertent

As explained above, the Marriott Defendants' failure to produce the APCO Documents was the result of mistakes by several Special Counsel attorneys, who erroneously marked the documents as non-responsive despite substantial efforts on the Marriott Defendants' part to avoid those kinds of mistakes. From the outset of this case, the Marriott Defendants engaged in a significant cooperative process with Plaintiffs to identify, review, and produce thousands of pages of documents within an agreed upon timeframe. Despite the training and oversight provided by GT, and a quality control process, the Special Counsel reviewers erred in tagging the APCO Documents as non-responsive. Marriott Defendants' failure to produce the APCO Documents was inadvertent and can be seen from the fact that they produced the spreadsheets that presented the survey data summarized in the APCO Reports. *See* Statement of Facts,

Subsection B, *supra.* Had the Marriott Defendants intended to intentionally withhold the APCO Documents, as alleged by Plaintiffs, the summary spreadsheets reflecting the survey response data similarly would not have been produced.

### 4. No prior warning has been received from the Court

Citing no supporting authority, Plaintiffs argue that the "prior warning" factor does not apply here. Plaintiffs' argument is specious. In virtually every case where dismissal or default judgment has been imposed as a sanction, the offending party had been warned that, if its misconduct persisted, an extreme sanction could be imposed. *See* ECF#273, Argument, Point I(A), (discussing cases). While this may be the Marriott Defendants' second inadvertent discovery error in this document-intensive case, they did not disregard any warning from the Court, nor did they willfully violate any Court order. Accordingly, the Court should decline Plaintiffs' invitation to take the extreme step they are urging here.

### 5. No sanction should be imposed on the Marriott Defendants

The facts here are nothing like those in the cases where dispositive sanctions were imposed for discovery violations. The Marriott Defendants' failure to produce the APCO Documents, while regrettable, was not due to any willful or intentional conduct but, rather, to an unfortunate mistake by Special Counsel. When the mistake was discovered, the Marriott Defendants promptly produced the APCO Documents and agreed to make the appropriate Marriott representative available for an additional deposition. Nothing in the APCO Documents changes any of the defenses, testimony or arguments that have

14

been asserted. Accordingly, no sanction is warranted, and none should be imposed, certainly not the extreme sanction of a default judgment.

## CONCLUSION

The Court has before it two motions that seek the extreme sanction of default judgment. Neither motion should be granted. In each instance, the Marriott Defendants' failure to produce documents was due to an inadvertent error for which they have taken full responsibility. The Marriott Defendants have explained, at length and in detail, how, despite their best efforts to comply with their discovery obligations in a cooperative manner advocated by courts across the country, these errors occurred. They have, without quibbling, agreed to make witnesses available for additional depositions. Plaintiffs are not satisfied, however, and seek to deny the Marriott Defendants' right to have this case decided on the merits. As shown above and in the Marriott Defendants' responses to the earlier motion for sanctions (ECF##273 and 290), Plaintiffs' arguments are not supported by either the facts or the case law. Plaintiffs' motions should be denied.

DATED: August 6, 2018.

MASTERS & VINER, P.C.

/s David L. Masters
David L. Masters
Masters & Viner, P.C.
152 Colorado Avenue
Montrose, Colorado 81401
970-249-2622
dlm@mastersviner.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of August, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Michael J. Reiser
Law Office of Michael J. Reiser
1475 N. Broadway, Suite 300
Walnut Creek, CA 94596

Tyler R. Meade
The Meade Firm P.C.
1816 Fifth Street
Berkeley, CA 94710

Matthew C. Ferguson
The Matthew C. Ferguson Law Firm, P.C.
119 South Spring, Suite 201
Aspen, Colorado 81611

Linda Pham Lam
Michael Schrag
Gibbs Law Group LLP
505 14th Street, Suite 1100
Oakland, CA 94612

Daniel F. Shea
Jessica Black Livingston
Hogan Lovells US LLP
1601 Wewatta Street, Suite 900
Denver, Colorado 80202

/s David L. Masters
David L. Masters