IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 16-01301 PAB

RCHFU, LLC, et al.

    Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al.

    Defendants.

### DECLARATION OF IAN S. MARX IN SUPPORT OF MARRIOTT DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS

I, Ian S. Marx, declare and state:

1. I am a Shareholder with the law firm Greenberg Traurig, LLP, attorneys for Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC, The Cobalt Travel Company, LLC, and The Lion & Crown Travel Company, LLC (collectively, "Marriott Defendants") in the captioned matter. I respectfully submit this Supplemental Declaration in connection with the Marriott Defendants' opposition to Plaintiffs' Motion for Sanctions (ECF#283) ("the Motion").

2. The Motion concerns the Marriott Defendants' production to plaintiffs' counsel on June 29, 2018 of documents concerning services provided to the Marriott Defendants by APCO Worldwide, Inc. (the "APCO Documents"). As explained below, the APCO Documents were not intentionally withheld from discovery.

NY 247495562v5

3. This case concerns allegations by owners of fractional interests at The Ritz-Carlton Club, Aspen Highlands, who complain that they have suffered damages due to actions taken by the Marriott Defendants (and, in this case, by the actions of Defendant the Aspen Highlands Condominium Association). Similar cases, brought by the same counsel that are representing plaintiffs here, were brought and are pending against the Marriott Defendants in the Superior Court of California, San Francisco County (*Petrick v. Marriott Vacations Worldwide Corporation, et. al.* (Case No. CGC 15-545987), concerning The Ritz-Carlton Club, San Franscisco and the United States Court for the Eastern District of California (*Reiser v. Marriott Vacations Worldwide Corporation, et. al.*) (Docket No.: 2:16-CV-00237-MCE-CKD), concerning The Ritz-Carlton Club, Lake Tahoe.

4. As previously discussed in connection with prior motions, at an early stage of these cases, the parties agreed that given the overlapping nature of these three cases, in the interest of efficiency, there would be a coordinated approach to fact discovery. Thus, it was agreed that the Marriott Defendants would compile, review and produce documents on a coordinated basis with respect to the three cases and would produce witnesses for deposition once, rather than multiple occasions.

5. Also as previously discussed, the Marriott Defendants store documents electronically on a per-custodian, rather than centralized, basis. The parties engaged in an extensive negotiation regarding the collection, review and production of electronically stored information ("ESI") the data of agreed-upon custodians, narrowed through the use of agreed-upon search terms, and then reviewed for responsiveness and privilege. The parties' agreement concerning this protocol is reflected in letters dated March 17, April 18 and 21, 2017, copies of

which are attached as Exhibit A. As a result of this agreed-upon process the Marriott Defendants were required to process and ultimately review millions of potentially responsive documents.

6. APCO Worldwide is a public relations/crisis management firm that was hired by the Marriott Defendants' law department in 2013 to provide assistance in connection with litigation relating to The Ritz-Carlton Club in Kapalua, Hawaii. APCO's engagement later was expanded to also include: a Member Survey sent by APCO in the summer of 2013 to members of The Ritz-Carlton Club; and focus groups of Ritz-Carlton Club Members at several Clubs, conducted by APCO during late 2013 and early 2014. The engagement letter and amendments are attached as Exhibit 1 to the Declaration of Matthew C. Ferguson, submitted by Plaintiffs in support of the Motion.

7. APCO prepared two reports concerning the latter two exercises: an August 2013 Survey Report and a January 2014 Focus Group Report (the "APCO Reports"), copies of which are attached as Exhibits 2 and 3 to the Ferguson Declaration.

8. The Marriott Defendants' document production in June 2017 (which was made pursuant to the parties' agreed upon protocol) did include documents concerning the August 2013 survey conducted by APCO, including spreadsheets containing all of the responses submitted by Members who responded to the survey. As explained below, Marriott Defendants' deposition witnesses were questioned extensively about the Members' responses to the APCO survey.

9. The data produced by the Marriott Defendants in June 2017, included, with respect to every Ritz-Carlton Club Member who responded to the survey administered by APCO in 2013, an extensive amount of information, including: (a) a record number for each

3

response; (b) the gender of the respondent; (c) the age of the respondent; (d) the respondent's Ritz-Carlton Club home resort; (e) the respondent's overall impression of the Ritz-Carlton brand (on a numerical scale); (f) the respondent's overall satisfaction with The Ritz-Carlton Club (on a numerical scale); and (g) the respondent's open ended response to the question of why the respondent gave the particular numerical rating to The Ritz-Carlton Club.

10. The Marriott Defendants' deposition witnesses were extensively questioned at depositions about these survey responses. For example, attached as Exhibits B, C and D are copies of some relevant excerpts from the depositions of Lee Cunningham (Volume 2 (November 15, 2017) at 315:12-317:8; 364:1-367:13; 468:15-472:11)); Stephanie Sobeck (Volume 1 (November 16, 2017) at 81:20-94:22; 248:4-258:23; 334:16-337:14)) and Mary Lynn Clark (at 255:9-260:2), reflecting those examinations.

11. It is alleged by Plaintiffs' counsel that these witnesses feigned a lack of recollection about the APCO survey and that witness Stephanie Sobeck testified untruthfully at her deposition that the APCO survey was not specifically designed to address the MVC Affiliation. In fact, her testimony was accurate.

12. For example, Ms. Sobeck explained the timing and purpose of the survey:

> we wanted to understand from the rest of the members -- kind of thoughts on the program, thoughts on the future of the program, things that they'd like to see. This was a very -- I mean, this whole period of the club -- I mean, the club was evolving. We had lost a couple clubs. Kapalua and Abaco were going away. There were just a lot of things going on, and we wanted to do a survey of the members to understand their thoughts.
>
> Q. This survey -- the 750-plus responses to this survey -- do you remember a large response to this survey?

4

A. Yes, I do.

Q. Does the document on the screen appear to be the results of this survey?

A. Does the document -- yes -- the summary of the survey, yes.

Q. Okay. And these are actual comments by -- the actual comments by the members?

A. Yes.

Ex. C.

13. However, the Marriott Defendants' document production did not include the APCO Reports and other emails concerning them.

14. After APCO was served with a subpoena for documents, and the APCO Reports were produced by APCO, we took steps to determine why the APCO Reports had not been included in the Marriott Defendants' multiple document productions.

15. As explained below, the APCO Documents were not initially produced back in June 2017 because of an error made by contact lawyers who were engaged to perform an initial review of potentially responsive documents, who identified those documents as "non-responsive" to plaintiffs' discovery requests during their initial review of documents. Thus, they were not reviewed by our firm in a second level review and they were not produced.

16. By way of background, in order to facilitate the review of the almost 100,000 potentially responsive electronic documents that were generated from the parties' agreed upon protocol, the Marriott Defendants engaged Special Counsel, a legal staffing provider, to provide a team of contract lawyers to assist in connection with the initial review of potentially

responsive electronic documents. Special Counsel, at significant expense to the Marriott Defendants, provided a team of approximately 10 attorneys to serve as reviewers; the team also had a project manager who provided supervisory and quality control oversight.

17. The Special Counsel team received significant initial and ongoing training from our firm in connection with the review process. Prior to the review, the Special Counsel reviewers were provided with a collection of case materials, which included: the Complaints; the discovery requests served by plaintiffs; a Case Summary prepared by our firm and data review and coding protocol memos prepared by our firm. A true and correct copy of the Index to the materials provided to the Special Counsel reviewers is attached hereto as Exhibit E.

18. Copies of the data review and coding protocol memoranda that were provided to the Special Counsel reviewers will submitted to the Court alone for its *in camera* review if requested by the Court and upon confirmation that doing so would not constitute a waiver of privilege.

19. On May 1 and 2, 2017, I conducted an in-person orientation and training session with the Special Counsel reviewers, who were based in Jacksonville, Florida, prior to the start of the review, during which I presented an overview of the cases and went over the review materials with the reviewers and supervisors.

20. I also spent the first two days of the review on-site at the Special Counsel facility in Jacksonville, assisting the Special Counsel reviewers and supervisors; in particular, reviewing and discussing particular documents about which the reviewers had questions concerning responsiveness and privilege.

21. As the Special Counsel reviewers conducted their review, Project Manager

Tricia Meisner, the supervisor, was in regular contact with me and other members of our firm to discuss documents about which the reviewers had questions.

22.   Ms. Meisner also conducted and supervised a quality control protocol, which was intended to ensure that the Special Counsel reviewers were properly tagging the documents being reviewed. This protocol including a review of tagging decisions made by the reviewers, to ensure, among other things, that the reviewers were properly tagging documents as responsive. In addition, as the review progressed, Special Counsel consolidated the team of reviewers from 10 to 6, retaining the most capable reviewers as identified through the quality control process.

23.   After Special Counsel completed its initial review for responsiveness, our firm then engaged in a second level review of the documents tagged by the Special Counsel reviewers as responsive. If a document was tagged as "non-responsive" by Special Counsel, our firm did not review the document in the second level review.

24.   The review began on May 2, 2017 and concluded on July 11, 2017. A total of approximately 97,000 potentially responsive documents were reviewed.

25.   According to GT's written instructions to the Special Counsel reviewers (and as had been explained in our discussions with them), the APCO Reports and documents concerning them should have been tagged as responsive. In particular, our materials instructed the reviewers to tag as responsive the following two categories of documents (among many other categories of responsive documents):

    (a): "Documents (including communications, memoranda and feedback) concerning the affiliation of the Ritz-Carlton Club [SF, LT and Aspen] with Marriott Vacation Club

7

Destinations ("MVC");" and

(b): "Documents relating to vote and/or survey materials sent to the owners of fractional interests at [SF, LT and Aspen] Ritz pertaining to the affiliation of [SF, LT and Aspen] Ritz with MVC."

26. Both of the APCO Reports discuss the affiliation of the Ritz-Carlton Clubs with MVC and thus they should have been tagged by the Special Counsel reviewers as "responsive." However, as explained below, that is not what happened. Based on an audit of the tagging decisions made by the Special Counsel reviewers, the following is what apparently occurred.

27. The 2013 Survey Report appeared 3 times in the documents initially reviewed by Special Counsel and, unfortunately, it was identified each time by the Special Counsel reviewer as "non-responsive."

(a) Document ID 14714 – Reviewed by Katherine Rogers-Fjelstad and tagged non-responsive on June 12, 2017 at 9:48am;

(b) Document ID 40094 – Reviewed by Patricia Davis and tagged non-responsive on June 16, 2017 at 12:20pm; and

(c) Document ID 72210 – Reviewed by Patricia Davis and tagged non-responsive on June 20, 2017 at 1:41pm

28. The January 2014 Focus Group Report appeared once in the documents initially reviewed by Special Counsel and it was identified by the Special Counsel reviewer as "non-responsive." Specifically, Document ID 14776 – Reviewed by Katherine Rogers-Fjelstad and tagged non-responsive on June 12, 2017 at 11:46am.

29. Ms. Davis and Ms. Rogers-Fjelstad, the two Special Counsel reviewers responsible for the foregoing mistaken tagging decisions regarding the APCO Reports (which were made in June 2017, after the team of reviewers had been consolidated), received the background materials described above and were present during the initial training sessions on May 1 and 2, 2017. As explained in the accompanying Declaration of Tricia Meisner, their decision to tag these documents as non-responsive was the result of a good-faith mistake and not an intentional attempt to withhold relevant evidence.

30. Given that these APCO Reports were tagged as "non-responsive" by the Special Counsel reviewers, our firm did not review these documents during the subsequent second-level review that was conducted and consequently those documents were not included in the Marriott Defendants' production of documents.

31. After learning of the foregoing, we reviewed the universe of potentially responsive documents concerning the APCO Reports that had not been produced in discovery. As a result of this process, we identified the previously-mentioned four instances of the APCO Reports and additional related documents concerning APCO's work (such as internal emails between the Marriot Defendants and emails between the Marriott Defendants and APCO), that are responsive to plaintiffs' discovery requests and should have been produced. These documents also were initially reviewed by Special Counsel reviewers who tagged the documents as "non-responsive." Those tags also were, unfortunately, affirmed through Special Counsel's quality control process.

32. On June 29, 2018, the Marriott Defendants produced the APCO Documents to plaintiffs' counsel. Attached hereto as Exhibit F is a copy of our cover letter in connection with

9

this production.

33. The Marriott Defendants have agreed to produce Stephanie Sobeck (Vice President, Asset Management) for a third deposition, so that she could, despite her previous testimony about APCO and the related survey, be questioned concerning the APCO Documents. It is anticipated that this deposition will take place on an agreeable date before September 15, 2018.

34. Attached hereto as Exhibit G is a true and correct copy of the first page of a Business Review Report, dated May 31, 2013 (mistakenly referenced in the document as 2012), bearing bates number RCDC 5712 (non-relevant and confidential information has been redacted).

35. Attached hereto as Exhibit H is a true and correct copy of a letter sent on July 2, 2013 by the Board of Directors of the Aspen Highlands Condominium Association, Inc. to all Members of The Ritz-Carlton Club, Aspen Highlands, bearing bates number AHCA 28764-65.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 6th day of August, 2018, in Florham Park, New Jersey.

_____
IAN S. MARX

NY 247495562v5