IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 16-01301 PAB

RCHFU, LLC, et al.

    Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al.

    Defendants.

---

### DECLARATION OF TRICIA MEISNER IN SUPPORT OF MARRIOTT DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS

---

I, Tricia Meisner, declare and state:

    1.    I am a member in good standing of the Florida bar (and have been since 1997) and am employed as a Project Manager by Special Counsel, Inc., a legal staffing and services company that was engaged by Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz- Carlton Management Company, LLC, The Cobalt Travel Company, LLC, and The Lion & Crown Travel Company, LLC (collectively, "Marriott Defendants") to provide document review services in the captioned matter. I respectfully submit this Declaration in connection with the Marriott Defendants' opposition to Plaintiffs' Motion for Sanctions (ECF#283) ("the Motion").

    2.    The Motion concerns the Marriott Defendants' production to plaintiffs' counsel on June 29, 2018 of documents concerning services provided to the Marriott Defendants by APCO Worldwide, Inc. (the "APCO Documents").

3. By way of background, in order to facilitate the review of the significant number of potentially responsive electronic documents that were generated from the parties' agreed upon protocol, the Marriott Defendants engaged Special Counsel, a legal staffing provider, to provide a team of contract lawyers to assist in connection with the initial review of potentially responsive electronic documents. Special Counsel provided a team of approximately 10 attorneys to serve as reviewers.

4. I served as Project Manager overseeing the team, and provided supervisory and quality control oversight.

5. The Special Counsel team received significant initial and ongoing training from Greenberg Traurig (sometimes referred to as "GT") in connection with the document review process. Prior to the review, the Special Counsel reviewers were provided with a collection of case materials, which included: the Complaints; the discovery requests served by plaintiffs; a Case Summary and data review and coding protocol memos prepared by Greenberg Traurig. A true and correct copy of the Index to the materials provided to the Special Counsel reviewers is attached hereto as Exhibit A.

6. I understand that GT has offered to submit to the Court for its *in camera* review copies of the data review and coding protocol memoranda that were provided to the Special Counsel reviewers.

7. Ian Marx of Greenberg Traurig conducted an in-person orientation and training session with the Special Counsel reviewers, who were based in Jacksonville, Florida, prior to the start of the review, during which he presented an overview of the cases and went over the review materials with the reviewers and supervisors.

8. Mr. Marx also spent May 1 and 2, 2017, the first two days of the review, on-site at the Special Counsel facility in Jacksonville, to assist the Special Counsel reviewers and supervisors; in particular, reviewing and discussing particular documents about which the reviewers had questions concerning responsiveness and privilege.

9. As the Special Counsel reviewers conducted their review, I was in regular contact with Mr. Marx and other members of his firm to discuss documents about which the reviewers had questions.

10. My responsibilities included oversight of a quality control protocol, which was intended to ensure that the Special Counsel reviewers were properly tagging the documents being reviewed. This protocol including a review of tagging decisions made by the reviewers, to ensure, among other things, that the reviewers were properly tagging documents as responsive. In addition, as the review progressed, Special Counsel consolidated the team of reviewers from 10 to 6, retaining the most capable reviewers as identified through the quality control process.

11. The review began on May 2, 2017 and concluded on July 11, 2017. A total of approximately 97,000 potentially responsive documents were reviewed.

12. According to GT's written instructions to the Special Counsel reviewers, the APCO Reports and documents concerning them should have been tagged as responsive. In particular, the materials instructed the reviewers to tag as responsive the following two categories of documents (among the many categories of documents described as responsive):

(a): "Documents (including communications, memoranda and feedback) concerning the affiliation of the Ritz-Carlton Club [SF, LT and Aspen] with Marriott Vacation Club

Destinations ("MVC");" and

(b): "Documents relating to vote and/or survey materials sent to the owners of fractional interests at [SF, LT and Aspen] Ritz pertaining to the affiliation of [SF, LT and Aspen] Ritz with MVC."

13. Both of the APCO Reports discuss the affiliation of the Ritz-Carlton Clubs with MVC and thus they should have been tagged by the Special Counsel reviewer as "responsive." However, as explained below, that is not what happened. Based on an audit of the tagging decisions made by the Special Counsel reviewers, what follows is what apparently occurred.

14. The 2013 Survey Report appeared 3 times in the documents initially reviewed by Special Counsel and, unfortunately, it was identified each time by the Special Counsel reviewer as "non-responsive."

   (a) Document ID 14714 – Reviewed by Katherine Rogers-Fjelstad and tagged non-responsive on June 12, 2017 at 9:48am;

   (b) Document ID 40094 – Reviewed by Patricia Davis and tagged non-responsive on June 16, 2017 at 12:20pm; and

   (c) Document ID 72210 – Reviewed by Patricia Davis and tagged non-responsive on June 20, 2017 at 1:41pm

15. The January 2014 Focus Group Report appeared once in the documents initially reviewed by Special Counsel and it was identified by the Special Counsel reviewer as "non-responsive." Specifically, Document ID 14776 – Reviewed by Katherine Rogers-Fjelstad and tagged non-responsive on June 12, 2017 at 11:46am.

16. Ms. Davis and Ms. Rogers-Fjelstad, the two Special Counsel reviewers responsible for the foregoing tagging decisions regarding the APCO Reports, received the background materials described above and were present during the initial training sessions on May 1 and 2, 2017. Their decision to tag these documents as non-responsive was the result of a good-faith mistake and not an intentional attempt to withhold relevant evidence.

17. After learning of the foregoing, GT reviewed the universe of potentially responsive documents concerning the APCO Reports that had not been produced in discovery. As a result of this process, GT identified the previously-mentioned four instances of the APCO Reports and additional related documents concerning APCO's work (such as internal emails between the Marriott Defendants and emails between the Marriott Defendants and APCO), that are responsive to plaintiffs' discovery requests and should have been produced. In every case, these documents were reviewed by Special Counsel and tagged as "non-responsive."

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 30th day of July 2019, in Jacksonville, Duval County, Florida.

TRICIA MEISNER, ESQUIRE
FBN: 0110248