1

```
 1              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLORADO
 2
    Case No. 16-cv-1301--PAB-GPG
 3  _____

 4  RCHFU, LLC, et al.,

 5       Plaintiffs,

 6  vs.

 7  MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al.,

 8       Defendants.
    _____
 9

10           Proceedings before GORDON P. GALLAGHER, United

11  States Magistrate Judge, United States District Court for the

12  District of Colorado, commencing at 3:52 p.m., July 11, 2018,

13  in the United States Courthouse, Denver, Colorado.

14  _____

15           WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

16  ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

17  _____

18                        APPEARANCES

19           MATTHEW FERGUSON, TYLER MEADE, MICHAEL REISER,

20  MATTHEW REISER, and MICHAEL SCHRAG, Attorneys at

21  Law, appearing for the Plaintiffs.

22  _____

23                     STATUS CONFERENCE

24

25
```

2

1                     APPEARANCES (Continued)

2           IAN MARX, DAVID MASTERS, and JESSICA LIVINGSTON,

3    Attorney at Law, appearing for the Defendants.

4    _____

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

```
1                   P R O C E E D I N G S

2              (Whereupon, the within electronically recorded

3    proceedings are herein transcribed, pursuant to order of

4    counsel.)

5              THE COURT:  All right.  We are here this afternoon

6    in 16-cv-1301, RCHFU vs. Marriott, et al., and let me start

7    with entries of appearance here in the courtroom, please.

8              MR. MEADE:  Tyler Meade for the plaintiffs, Your

9    Honor.

10             THE COURT:  All right, good afternoon.

11             MR. FERGUSON:  Good afternoon, Your Honor.  Matthew

12   Ferguson for plaintiffs.

13             MR. MASTERS:  Your Honor, David Masters for

14   Marriott defendants.

15             MR. MARX:  Good afternoon, Your Honor.  Ian Marx

16   for the Marriott defendants.

17             THE COURT:  All right.  Thank you both.  And on the

18   phone, please.  Can you hear me?

19             MR. SCHRAG:  Yes, Your Honor.

20             THE COURT:  Okay.  Let me have you start.

21             MR. SCHRAG:  Michael Schrag for the plaintiff.

22             THE COURT:  All right.  Good afternoon, Mr. Schrag.

23             MR. MICHAEL REISER:  Good afternoon, Your Honor.

24   Michael Reiser for the plaintiffs.

25             THE COURT:  All right.  Anybody else on the phone?
```

4

1          MR. MATTHEW REISER:  Good afternoon, Your Honor.

2     Matthew Reiser for the plaintiff.

3          THE COURT:  Okay.  So I've got Mr. Schrag and Mr.

4     Reiser for the plaintiffs.  And is Ms. Livingston also on the

5     phone.

6          MS. LIVINGSTON:  I am, Your Honor.  Jessica

7     Livingston for the Aspen Highlands Condominium Association.

8          THE COURT:  All right, good afternoon.  Anybody

9     that we missed?  Okay, not hearing anything.

10          So in terms of things, let me just start off with

11     kind of a general observation.  We're here to do what we can

12     on some discovery disputes, and I'll turn essentially to kind

13     of the last sentence of Mr. Marx's response that I read

14     here -- on page 6 that I read here in the last half an hour.

15          You know, my intent with more informal discovery

16     disputes is to try and keep things moving along as fast as we

17     can because, you know, it just makes things better, but I

18     know that there can be also jocking or attempts to get

19     leverage during this kind of dispute process.  I'm not at all

20     saying that that's what's occurring here, but the way that

21     things are coming in is not necessarily leaving a lot of time

22     for a couple of things, for response and for my preparation.

23          So if there are going to be future discovery

24     disputes, and maybe there will be no more in this case, but

25     I'm guessing that's not going to be the circumstances, we're

1   going to need to back the times up a little bit and make sure

2   that everybody has got time to respond because here -- and

3   it's not necessarily a response even that's coming in, but we

4   need some ability for me to get things sooner so that we can

5   have a better review of things.

6        So what I may do is have more -- if we set future

7   discovery dispute hearings, I may just issue a more detailed

8   minute order so that we have things ahead of time, at least a

9   couple of days in advance.  I want to try and get through

10  what we can today.  So what I'll probably do is probably

11  start with the plaintiffs and then the defense, and what I

12  would like to, I guess to start with, is perhaps just a

13  laundry list of the things that each side thinks we can

14  accomplish and then we may accomplish some of those, I'm

15  hopeful, and maybe we won't.

16       I'm also aware that some of the issues that are

17  being resolved or that are being asked for are tied up in our

18  several pending motions as well, and those are -- I think

19  they have been outlined in each of the responses, but 270 --

20  let's see, I'm sorry, 202 is the motion to compel and that

21  one is hanging out there and I think is close to having

22  everything in on it.  We've got a motion for sanctions,

23  that's at 223, and then we've got a brand-new motion for

24  sanctions in default at 284, each of which have been referred

25  to me.  And we have a couple of other things I wanted to

1    quickly get to.

2            Ms. Barnes, with regard to 211, which is a

3    plaintiff's status report and request for entry of a revised

4    scheduling order, that one has still got a gavel next to it

5    showing unresolved.  It's actually been resolved.  We did a

6    revised scheduling order at 225, so that one can be taken out

7    of the pile.

8            And then as was noted in Mr. Marx's response, we

9    need to address what was addressed by Marriott defendants in

10   238 with regard to plaintiff depositions.  So that needs to

11   get on the list.

12           So let me turn, I don't know, Mr. Ferguson,

13   Mr. Meade, or is it going to be Mr. Schrag or Mr. Reiser or

14   maybe everybody, I can kind of get a list from you all of the

15   top highlights that you think we need to address today in the

16   time that we've got.

17           MR. FERGUSON:  Yes, Your Honor, thank you.  I did

18   call Ms. Barnes a few weeks ago.  We were having some

19   end-of-discovery issues.  A lot of those were resolved.  We

20   were having problems with some depositions being scheduled

21   and we ended up just going ahead and taking those

22   depositions, I think three of them even last Friday.

23           So then I thought the best thing to do was just to

24   get before Your Honor and let Your Honor know where we are on

25   July 10 before the coming -- closing of fact discovery on the

1   16th, and I just wanted to let the Court know exactly where

2   we were.  I thought it was a good idea.  I speak to Ian Marx,

3   the first person in the morning and last night, I think so.

4   We're in constant contact and, of course, Mr. Marx with Mr.

5   Meade and the other lawyers on the phone.

6           So we did discuss -- I did go through these issues

7   with him on Monday evening and we filed -- I told him I filed

8   a report.  I also spoke about the issues regarding the

9   association with Ms. Livingston on Saturday and on Monday

10  again.  So I just -- it's not so much we have a lot of

11  discovery disputes here.  We have -- actually it looks like a

12  lot of things we're agreeing on or we're agreeing to

13  disagree.  So I've set forth the motions, the status of

14  mediation.

15          I will turn to the first motion, which I'll call

16  the first motion to compel.  We did receive a letter that Mr.

17  Marx provided Your Honor with this afternoon on the evening

18  of June -- July 9, 2018.  We've had this motion compelled.

19  As you know, Your Honor, we had served subpoenas back in

20  November, December, was ordered to be produced by the 15th,

21  and we got some productions for some people, but not many of

22  the other folks.  And Your Honor took that motion at some

23  point and directed us to confer.  We conferred.  Then we

24  asked for additional time.  We took the additional time and

25  we finally got a letter -- we have conferred a lot.  We got a

8

1   letter from Mr. Marx on Monday night and I would generally

2   say that we do have everything now.

3        There was four or five things produced or made

4   clear in his letter that were still outstanding pursuant to

5   our conferrals during the last month or so.  And I think we

6   put in our papers that -- in my status report, that if these

7   things were resolved, the one thing that's definitely not

8   resolved is the cost to plaintiffs in terms of their treasure

9   dealing with that motion to compel.

10        And just to put in our perspective, on July 9,

11   we're still getting some information from subpoenas that were

12   served back in 2017 in which Your Honor said it should be

13   complied with by March 15.  So we did have to bring a motion

14   to compel.  It seems to have worked finally and we do have

15   the documents here, so we do not need Your Honor to delve

16   into the various requests and subpoenas because I think

17   that's all done with.

18        And I suggest that we somehow tighten up the motion

19   and tell you why we think we should get cost of attorneys'

20   fees on that motion to compel on the applicable rules and

21   submit -- submit our cost.  So that's -- our first motion was

22   really the one big thing that was outstanding.

23        THE COURT:  Well, let me stop -- let me stop there

24   and we'll come back to it.  So I guess if I'm hearing it,

25   just to quickly summarize and so we're on the same page, I

9

1    think we're talking about 202 and a whole bunch of related

2    filings, which includes 213, 215, 221, and 276 that I guess

3    is loosely related.  It sounds like the motion to compel

4    portion is done, a fees and costs portion of it is all that

5    is left, and are you moving, at least with regard to the

6    compel portion, to withdraw that motion to this juncture?

7            MR. FERGUSON:  To the extent, yes, Your Honor, we

8    have finally gotten all the discovery that we believe we're

9    going to get, and there was a productions throughout last

10   month and into this month.  So, yeah.

11           THE COURT:  Okay.  And is there any reason --

12           MR. FERGUSON:  We do not need to pursue that, part

13   of it.

14           THE COURT:  And is there any reason at this

15   juncture that we need to address fees and costs or should I

16   table that until conclusion of the case?

17           MR. FERGUSON:  We would -- we would not like -- we

18   would not like to table it, Your Honor.

19           THE COURT:  Okay.

20           MR. FERGUSON:  When --

21           THE COURT:  And I'm not telling you I'm going to

22   rule on it, but --

23           MR. FERGUSON:  Yeah, I mean, we're good lawyers,

24   we're with small firms, and when we have to do this as

25   contingency lawyers to chase documents for seven, eight

1   months and have to go back to Orlando now for at least a

2   third time, that becomes very difficult and onerous, not in

3   just in terms of our clients, but in our time, so, you know,

4   trips to Orlando from Aspen, Colorado are (inaudible).

5          THE COURT:  So in terms of that, do you want to be

6   in the position of rewriting a motion with regard to fees and

7   costs related to this that you want to separately file or an

8   addendum related to that?  What's your posture on that?

9          MR. FERGUSON:  I think the best thing for Your

10  Honor to make it as easy for you is to file something new

11  that's brushed down that's five, six pages long, that says

12  the law and tells Your Honor what our -- I probably shouldn't

13  say five or six pages, I should probably say ten.  But we'll

14  do something in the eight-page range, I suppose, just to get

15  Your Honor case, so you don't have to go slog through the

16  motion to compel, which by necessity was quite long.

17         THE COURT:  Mr. Marx or whomever is going to be

18  addressing that.

19         UNIDENTIFIED SPEAKER:  In terms of responding to

20  the -- Mr. Ferguson's suggestion is fine.

21         THE COURT:  Okay.

22         UNIDENTIFIED SPEAKER:  He is going to make a new

23  submission, we'll respond to it.

24         THE COURT:  All right.  And then I want to come

25  back because I think we kind of got more into the weeds than

1    I intended there.

2              MR. FERGUSON:  Sorry.

3              THE COURT:  Oh, that's okay.  It had actually

4    resulted in at least taking something off of my plate for

5    now, which is appreciated.  So 202 is withdrawn, and it may

6    be something that needs to be considered in terms of 202 and

7    associated filings later if it's referenced back to a motion

8    for fees and costs, but -- or sanctions, however it comes in,

9    but at least at this point in time it is withdrawn.  I'm

10   certainly not commenting on whether or not I think it's

11   appropriate to exercise my jurisdiction to basically wait on

12   that on this matter until later, but I'll wait and read the

13   argument and then make that determination once that comes in.

14             All right.  In terms of other things, Mr. Ferguson,

15   that you think we can address today.  Well, I guess I should

16   ask, I suspect strongly, Ms. Livingston, that you don't have

17   a dog in this fight, but anything that you wanted to say on

18   that one?

19             MS. LIVINGSTON:  Not on that point, Your Honor.

20             THE COURT:  Okay, thank you.  Mr. Ferguson.

21             MR. FERGUSON:  Yes, Your Honor.  We have two other

22   pending sanctions motions.  One is about to be fully briefed.

23   You're allowed -- the plaintiffs -- I'm sorry, the defendants

24   to -- Marriott defendants to file a sur-reply and

25   (inaudible), but I'm not going to argue those motions in the

12

1   least.

2          We have requested and/or suggested that those two

3   motions be, you know, consolidated.  They're essentially

4   asking for the same relief in terms of the (inaudible).

5          THE COURT:  And I can tell you from a practical

6   perspective they're going to be.  I don't anticipate at this

7   point in time -- I want to see the briefing with regard to

8   282, which was referred to 284, before I proceed.  So from a

9   practical basis, they're going to likely wait until that

10  occurs.

11         MR. FERGUSON:  Okay, Your Honor.  So then we've

12  jettisoned all the way to page 4 of our motion, and we -- I

13  think we're -- we're okay with Ben Pearce.  He was a witness

14  I was going to depose on Monday morning, but he wasn't --

15  wasn't available that morning.  So they want us to take that

16  before the -- they want us to take that pretty soon.  We were

17  going to take that one by video -- by videoconferencing, so

18  we'll be able to get that done in the next couple weeks.

19         We didn't want to -- I don't want to be in a

20  position of telling Your Honor we're doing something after we

21  did it, after the discovery cutoff.  So I think we're going

22  to have agreement on that.

23         There is a fellow named John Vaughn that has been

24  on and off the docket for depositions.  We've been very busy

25  with depositions, and I see that the defendants are objecting

13

1   to it taking place after the cut-off date, so I don't know,

2   we would -- I'm not available next week.  If there are

3   some -- next Monday.  If there are some lawyers that would --

4   would be available, I guess we can do it.  I wouldn't mind

5   getting two weeks to do that deposition, if we're going to do

6   it.

7           THE COURT:  Okay.  So Vaughn is still at issue, at

8   least from your perspective, and I'll come to Mr. Marx or

9   whomever is going to address it.  It sounds like Pearce is

10  probably resolved, Vaughn is still an issue.  Okay, go ahead.

11          MR. FERGUSON:  So the last thing -- I guess they

12  disagree with the Lore Institute (ph).  They say there is no

13  reason the documents subpoenaed could not have been timely

14  served.  I pointed out that this man had a very tragic end

15  and his widow is quite suffering, so he had a home office.

16  The subpoena has been out for several months to them.  I

17  didn't think it was appropriate to subpoena the widow at her

18  home.

19          I have been -- as I said in my papers, I've been

20  trying to get ahold of some of his former colleagues,

21  brokers.  I finally got a tag on one of them and I've left

22  him a message, but I haven't connected with him.  I will tell

23  you that just yesterday or Monday we did get some more

24  information -- this is an outside broker that Marriott hired

25  to fire sale some of the inventory they had in 2014, so I

14

1   would like the opportunity to get those documents in the

2   next -- within the next month given the exigent circumstances

3   with that family.

4          THE COURT:  Okay.  I'll come to Mr. Marx here for

5   response.

6          MR. FERGUSON:  And we might have gotten information

7   from defendants recently.  I've been on the road since that

8   letter came in, so I haven't seen what they produced, but I

9   suspect that the Lore Institute, they will have some files we

10  need, but I think the company kind of rolled up when he died.

11         THE COURT:  Okay.  What other issues do you think

12  are still outstanding that we need to address today?

13         MR. FERGUSON:  Real quickly, Your Honor, the

14  Marriott privilege logs, we've been trying to confer about

15  that.  Mr. Marx has indicated in his papers that they're

16  willing to confer with us.  I think they want to do it by

17  Monday.  A little bit difficult for me because now I'm

18  visiting family back East, but I will do my best to confer

19  with them about that by Monday.

20         THE COURT:  Okay.

21         MR. FERGUSON:  As we pointed out, we've taken

22  literally thousands or hundreds of documents and got it down

23  to 47 we would like to see.

24         The Marriott International 30(b)(6).  30(b)(6) of

25  Marriott Vacation Worldwide went forward swimmingly.  The

1    witness was well prepared.  They did a great job with their

2    own person, but the Marriott International designee did not,

3    in our view, do a fine job.

4           I would ask that on that issue -- I didn't want to

5    be in the position where we didn't want to bring it to the

6    Court's attention.  I would ask Mr. Reiser who conducted that

7    deposition be given the opportunity to -- to meet with Mr.

8    Marx one more time to see if there is something they can work

9    out and get that done.  So I would like to leave the item

10   open, but I didn't want this discovery cutoff to come upon us

11   and not reserve the right that we think they could have done

12   a better job designating a witness, so I would like to keep

13   that open so we don't -- we don't get precluded after the

14   discovery cut-off date of working it out.  I believe they can

15   work it out.

16          I think that we've taken some other depositions

17   that are probably going to alleviate that, or maybe one or

18   two topics, so I would like to leave that open for a week or

19   two.

20          THE COURT:  Okay.

21          MR. FERGUSON:  And then finally -- there is two

22   other issues with respect to -- I shouldn't say that.  There

23   is one related issue, which is APCO documents.  We -- we

24   recently got the documents from APCO -- by the way, it was

25   mistaken in our motion.  We said March 29.  We got their

16

1     documents on May 29.  We got Marriott's version of those

2     documents I think on June 30, was it, or June 29, somewhere

3     around there.  And so we -- we wanted to alert the Court that

4     we need -- we don't want to, but we may have to go back and

5     take a deposition of one of their executives.

6             We believe that terminating sanctions is probably

7     the better way to go because taking a third trip to Orlando

8     is very difficult on us, and this witness has been videotaped

9     twice now.  A second deposition was necessary because of

10    documents that had been, in our view, withheld and not

11    concealed.  The same is true here.  These APCO documents,

12    they're critical documents.  I don't think anybody is

13    disputing that.

14            We've now learned that their position is that their

15    contract lawyers missed turning over these documents, but I

16    want to alert Your Honor, and I think they have agreed to it.

17    They said that they would produce Ms. Soughback (ph) again.

18    She's probably the most hands-on Marriott witness in this

19    case, but they want her produced by June 27.  That's a little

20    bit difficult for us, put us in that position, but I would

21    like to leave a place holder to take the deposition of her or

22    anybody else with knowledge of those documents, but I suspect

23    she'll be the proper person.

24            So we do want the deposition.  They appear to be

25    agreeing do that, but doing it on July 27 -- by July 27 is

1    going to be very difficult for all of us.

2              THE COURT:  Okay.

3              MR. FERGUSON:  With respect to APCO 30(b)(6)

4    deposition, I've been in contact with general counsel for the

5    last few weeks.  He was -- he's getting back to me now when

6    the subpoena was being marched up to his office as opposed --

7    he's been in contact.  So I don't think they oppose that --

8    that deposition.  I just -- I just got their position paper

9    on that.

10             They did not oppose the request for the deposition,

11   but ask it to be before July 27, 2018.  Your Honor, we waited

12   for these documents since 2018, we never got them.  So to get

13   them and require us to go to Bethesda or -- sorry, they're in

14   Washington, D.C. -- before the 27th, given our schedules can

15   be difficult ever, so we would like to have at least until

16   mid-August to get that deposition done.

17             THE COURT:  Okay.  Anything else?

18             MR. FERGUSON:  The final thing, with respect to

19   Marriott is the designation of documents as confidential.

20   We've sought to -- we have sought many times to confer about

21   that.  We were very cautious in putting together a protective

22   order that it was narrowly defined under Rule 26.  It's

23   supposed to protect trade secrets and whatnot, and almost

24   every piece of paper in this case has been over -- has been

25   designated as confidential.  It ties our hands when we want

18

1  to talk to potential co-counsel in this case and other cases,

2  potential consultants, potential clients.

3           And so we -- I think we are scheduled to confer

4  about it, but I didn't want that to go unnoticed that we

5  are -- we have been trying to do that with the Marriott

6  defendants.  Although we disagree with them quite a bit on a

7  lot of things, I've never not had an opportunity to negotiate

8  with Mr. Marx.  It just takes us a lot of times -- a long

9  time to get together sometimes on these issues, so that's --

10  those are the open issues with respect to Marriott.

11           The final issue is the HOA, and Ms. Livingston and

12  I have an agreement to continue to disagree about the

13  deposition of Mr. Mercer (ph) and or other board members.

14  And I think I indicated there is a second session of

15  mediation with the Association in a couple weeks, and there

16  is -- there is probably a good betting line that we can try

17  to resolve that at that mediation.  I can't guarantee, but we

18  had a long nasty discovery dispute chart for Your Honor that

19  we have avoided giving to Your Honor about that.  So I hope

20  to work that out, but I want to alert the Court that that

21  deposition, if it occurs, will be after the discovery cut-off

22  date.

23           THE COURT:  Okay.

24           MR. FERGUSON:  A major reason for retaking -- or

25  continuing that deposition are documents that we've gotten

19

 1    relative to Sanctions Motion 1 and Sanctions Motion 2, the

 2    affiliation agreement first and the APCO document second.  I

 3    think that's -- that's it for us, and --

 4              THE COURT:  What I did want to ask you about was

 5    Marriott's filing 238, which is essentially with regard to

 6    plaintiff depositions after the fact.  The impression I was

 7    getting, and I think it just needs to be nailed down for the

 8    record so that I can issue an order on this matter, and it

 9    was raised by Mr. Marx in his response and I was going to

10    definitely raise it, is that you're on board with that

11    proposition?

12              MR. FERGUSON:  Yeah.  I'm going to turn this over

13    to Mr. Meade.  I will tell you that he's entirely correct

14    that we did not file something.  I looked at that order

15    getting ready and we did not file any.  It's not that we

16    haven't been talking about or researching it.  We think we

17    have some pretty good case law that's going to help everybody

18    out in this case, but I'll let Mr. Meade handle that because

19    he's been negotiating that.

20              THE COURT:  Okay, Mr. Meade on that part and then

21    I'll come to you guys.

22              MR. MEADE:  Thank you, Your Honor.  I took another

23    look at Your Honor's minute order, which is Docket Number 234

24    and, you know, it's correct, it says we were to state our

25    position.

20

```
 1        You know, we've been working on it.  The good news

 2   is, I do think we are in agreement.  I've reviewed Docket

 3   Number 238, and the basic concept I think is, let's -- let's

 4   file the motions for summary judgment, which are due in

 5   mid-October.  I think a reliance element will be determined

 6   in those motions.  And once that's determined, if they want

 7   to go back and take a bunch more depositions and we want them

 8   to be able to testify at trial, we should allow for that.  So

 9   I do think we're in agreement.  I'm not aware of any areas of

10   disagreement on that point.

11        THE COURT:  Okay, all right.

12        MR. FERGUSON:  We do disagree on the impact on the

13   expert discovery deadline, but we are ready to file our

14   expert reports on August 23 -- I'm sorry, August 13, I think

15   it is, so we don't see those -- we have liability experts,

16   (inaudible) damages experts, so we're ready to go with that.

17        MR. MEADE:  And if I may add one thing on that, and

18   we'll stop tag-teaming these comments with this comment, but

19   Your Honor's last scheduling order was issued setting the

20   expert disclosure deadline with this concept in mind that we

21   do summary judgment motions, figure out the reliance issue,

22   and then deal with expert depositions.

23        And so if you go back to 232, which is the order

24   that issues on May 3, I think it reflects the discussion we

25   had last time, which was that we'll do the expert disclosures
```

21

1    this summer, summary judgment, and so I -- Mr. Ferguson is

2    correct that we do disagree this notion that expert discovery

3    needs to be deferred beyond the deadlines set in Docket

4    Number 232.

5            THE COURT:  And at first blush, and I certainly

6    want to hear from Mr. Marx because he may have given some

7    thought to this, but at first blush it didn't seem to

8    implicate experts.  It was more of a -- the way I'm recalling

9    the conversation, it was more of not wanting plaintiff

10   getting on the stand who hadn't been deposed, which is

11   completely understandable, but it wasn't clear exactly how,

12   if it at all, it would affect experts, but I'll ask Mr. Marx

13   and he can tell me.

14           You don't have to start there.  I guess start with

15   any of these that you want to.  Just let me know which issues

16   we're going to be dealing with so I can get my notes clear

17   here.

18           MR. MARX:  In connection with the theory that, you

19   know, the last thing that we talked about that is fresh in

20   our minds, I'll start with that -- with that issue, Your

21   Honor.  And I think we were in agreement with respect to some

22   aspects of this, but with others we're not so much on the

23   same page.

24           When we had the discussion on May 2 in the last

25   status conference, which led to Your Honor's May 3 order

1   directing the parties to set forth their position, our

2   understanding based on that discussion was that plaintiffs

3   had in mind a motion that was going to bring this issue of

4   whether individualized reliance was an element of the

5   constructive fraud claim on a much more timely basis than in

6   October.  We didn't think that that motion was coming in

7   October.  We thought it was something that was in the works

8   and that was going to be in the near future, and that,

9   therefore, the scheduling order made sense to us in that

10  context, because we believe that from a case management

11  standpoint, generally speaking, it's preferable to have fact

12  discovery, the factual record closed before the parties move

13  on to expert disclosures and discovery and motions in limine

14  while the record is still open, because if those events take

15  place, then after the fact the parties can mold their

16  testimony to conform with rulings and positions that are

17  taken in connection with those subsequent activities.

18          And so it was our understanding that that motion

19  that would clarify the issue of reliance would come much

20  sooner than October.  So we're in disagreement in that

21  regard.

22          So from our perspective, there is a real strong

23  preference toward having the factual record closed, and in

24  order to have the factual closed, we believe there ought to

25  be clarity on what the elements of the constructive fraud

23

```
1    claim will be, which will inform plaintiffs -- and then
2    plaintiffs will have to make a decision as to how they want
3    to try their case based on the Court's ruling.
4          THE COURT:  Well, just from a practical
5    perspective, the problem that I think we all know exists
6    there, if that comes as a stand-alone motion or as a summary
7    judgment motion, either way, I can't give you -- you know,
8    that's very possibly a motion that would not get referred
9    because that's I think more of -- I don't know that I would
10   say it's dispositive, but it's certainly getting closer to
11   that.  So you may be waiting four to six months for an order
12   on that, so that kind of clouds this up here.  You know, if
13   we need some resolution on -- if that motion was filed
14   tomorrow, you may not have an order before next fall.  So
15   with that in mind, how do you think you want to proceed?
16         MR. MARX:  We appreciate the Court's concern and
17   pragmatism and practical approach and understand the
18   challenges associated with that.  If there was some way to
19   get this issue resolved, the legal issue on a more
20   accelerated basis so that we could have clarity --
21         THE COURT:  And I can't tell you the reason,
22   unfortunately.  I wish I could tell you that, but when you've
23   got two judges on a case, you know, I -- I know that one
24   judge will keep most likely some motions, and a motion for
25   summary judgment is some going to get kept by Judge Brimmer's
```

1    Chambers, he always does, so I will not be seeing that.

2          I don't -- if you file it as a stand-alone motion,

3    I don't know if it's going to get kept or not or if it's

4    going to get referred to me, but it's still going to be a

5    while before you have an order and it's certainly not going

6    to be until after the close of discovery.  That's just not

7    going to happen at this point.

8          UNIDENTIFIED SPEAKER:  If I may, Your Honor, just

9    to point out Your Honor's minute order 234, which was issued

10   on May 3, it makes a reference to the discussion at that

11   last -- at that May 2 conference contemplating that this

12   issue would be raised in a summary judgment motion.  There is

13   a clause there in the middle of the largest paragraph.  It

14   may be practical to wait until later in the action,

15   particularly post-summary judgment, to make this

16   determination.  So I think it has been contemplated to be

17   (inaudible).

18         THE COURT:  And that's my recollection of the

19   discussion when it was raised as an issue is that that's

20   probably -- I mean, it would come along, but we're

21   realistically talking, if you file summary judgment motions

22   by October, I don't think you're going to have an answer in

23   2018 on that issue.

24         UNIDENTIFIED SPEAKER:  The plaintiff's depositions,

25   I've been to 10 or 12 of them -- of them, and they're pretty

1    much all about the same, (inaudible), generally recall it.

2    So really none of our expert reports, the issue of whether

3    they (inaudible), our experts are not -- they're not there.

4    They're at a much higher level of damages (inaudible), so

5    we're just -- I just don't see that these depositions are

6    going to impact the expert discovery in this case at all.

7         THE COURT:  Well, Mr. Reiser, you don't have to

8    make a decision on this today certainly.  I've got your

9    posture here.  That posture can change based on new

10   information and maybe it does, maybe it doesn't, but at this

11   juncture, you know, realistically I don't think you're going

12   to get an answer.  And I completely understand where you're

13   going with regard to wanting to know what all the facts are

14   and having everything nailed down before we start getting

15   legal determinations on these things, but I guess, Do you

16   want some time to think about whether that continues to be

17   your posture or not under the circumstances and talk to

18   opposing counsel?

19        I don't have to make a ruling on this, but I think

20   I should in the next couple of weeks because it might make a

21   decision as to somebody wanting to do a whole bunch of

22   depositions here in a hurry or that we need to get in, but I

23   can tell you, I don't think you're going to have an answer on

24   the legal issue this year.

25        UNIDENTIFIED SPEAKER:  We appreciate that. we

1   appreciate Your Honor's suggestion and we'll take it under

2   advisement and get back to Your Honor.

3          THE COURT:  Okay.  So I will wait on this.  I

4   guess, can the parties either jointly or separately give me

5   an answer within ten days on the matter?

6          UNIDENTIFIED SPEAKER:  Yes.

7          THE COURT:  If it's realistically something where

8   you are in agreement and you want to wait on those plaintiff

9   depositions until after the legal issues are decided, it

10  probably makes sense to have it come in as just a draft order

11  with the bullet points that each party thinks are appropriate

12  after you conferred and then we can go at it that way, but

13  that way we have some specifics in terms of exactly what the

14  agreement is with regard to those plaintiffs.

15         UNIDENTIFIED SPEAKER:  That sounds like a good plan

16  from the plaintiff's perspective, Your Honor.

17         UNIDENTIFIED SPEAKER:  We agree, Your Honor.

18         THE COURT:  Ms. Livingston, anything on that matter

19  that you wanted to add?

20         MS. LIVINGSTON:  No, Your Honor, I don't think we

21  have anything to add.  We'll just confer with defense counsel

22  -- Marriott's counsel on that.

23         THE COURT:  Okay.  Then going back, Mr. Reiser, to

24  the --

25         UNIDENTIFIED SPEAKER:  Mr. Marx.

1          THE COURT:  I'm sorry, Mr. Marx, to the Ben

2     Pearce --

3          UNIDENTIFIED SPEAKER:  There are so many

4     Mr. Reisers on the phone that --

5          THE COURT:  -- to the Ben Pearce deposition.

6     Anything further we need to discuss on that?

7          MR. MARX:  No.  We can cover the Ben Pearce

8     deposition, the John Vaughn deposition, the subpoena to Lore.

9     You know, these -- well, we can cover Ben Pearce, Stephanie

10    Soughback and APCO.  These are the ones where our suggested

11    deadline for doing this is July 27.  And we can explain sort

12    of where we're coming from here is a just a general -- a

13    general sense that we've got a (inaudible) fact discovery end

14    date.  From our perspective, we want to adhere to that.  We

15    don't want to have the discovery just go on interminably, and

16    so our objective is to have some finality here in terms of

17    what's on the table as far as the discovery that needs to be

18    completed and when it's going to be completed.

19          And so, you know, we -- if, you know, counsel has

20    an issue regarding scheduling of the Ben Pearce deposition,

21    we'll get to that scheduled and that doesn't seem to be a

22    problem.

23          As it relates to Stephanie Soughback and APCO, our

24    desire there is just that it be done -- that it be completed

25    and that it be completed, you know, in a reasonably soon

28

1   timeframe.  That's why our proposed date was the 27th of

2   July.

3          THE COURT:  Okay.  I'm not hearing that the 27th is

4   a date that's, what -- I hear that you want it done by the

5   27th.  I hear that plaintiff's counsel wants it done -- maybe

6   I'm -- so I'm clear with my notes, maybe in August, so I'm

7   not necessarily hearing an agreement on that.  Do you all

8   think you can come to an agreement on that or do you want --

9          MR. FERGUSON:  I suspect we can, but it's just --

10  my schedule for depositions is very heavy in another case.

11  I'm already scheduled -- set up to visit family and then I'm

12  in depositions, so it's more pick dates, and this is the

13  first time we've heard that Ms. Soughbeck has been available

14  to us, but that's -- we do have to go back to her because she

15  has been videotaped, and it's hard to do a videotape

16  deposition by video, so we need to go back there.  One of --

17  Mr. Reiser been to Orlando like ten times now.  I've been

18  there two or three times.  So we just need more time than the

19  27th, given our own schedules.  So we would like probably do

20  it well into August, August 13, somewhere around there, but I

21  think we can work that out.

22         THE COURT:  All right.  Mr. --

23         MR. FERGUSON:  I don't agree that we have to --

24  because we have to take a witness -- because documents were

25  withheld, we get them on the 29th, and they're dictating to

29

```
 1   us that we have do it by the 27th.  It's a relatively defined

 2   deposition because there is, you know, a few thousand pages

 3   of documents that were produced and we think -- which are

 4   highly relevant.  So I think we can work that out with Mr.

 5   Marx as long as we're not -- I don't believe we can do it by

 6   the 27th due to our schedules.

 7             THE COURT:  Mr. Marx?

 8             MR. MARX:  I'm sure we can work it out.

 9             THE COURT:  So then we -- so that's essentially the

10   APCO deposition?

11             MR. MARX:  I didn't hear that comment.

12             THE COURT:  That's the APCO deposition?

13             UNIDENTIFIED SPEAKER:  APCO depositions of -- I'm

14   working with their general counsel.

15             THE COURT:  Okay.

16             UNIDENTIFIED SPEAKER:  -- and I spoke to him

17   yesterday, and I said here is the topics, and he is not a

18   trial lawyer like all of us in this room, so he was trying

19   to -- he was working his way through Rule 30, and so I think

20   he is trying to find somebody to do the deposition.  He has

21   not committed a person or a date yet, so that will probably

22   have to happen the next,  you know, 45 days.

23             THE COURT:  So Mr. Marx, on APCO, anything we need

24   to address on that at this point from your perspective?

25             MR. MARX:  No, no, so as long as the time frames
```

1    we're talking about are what Mr. Ferguson referenced and we

2    can work that out.

3            THE COURT:  All right.  In terms of the Marriott

4    confidential designation, I understand there is dispute about

5    that.  Mr. Marx, is that something you think we need to

6    resolve today or is that something that the parties are still

7    in negotiation with regard to?

8            MR. MARX:  I'm not sure there is anything we can

9    resolve today, but we're obviously -- you know, it -- what do

10   you want to talk about?

11           UNIDENTIFIED SPEAKER:  We can probably do it in a

12   pub.  We just -- it has become onerous for us to -- we

13   actually filed documents from APCO that had come in on

14   un-Bates labeled -- unmarked confidential, and we got in

15   trouble, but he pointed out that they had sent a letter

16   saying they were confidential.  I don't believe they're

17   confidential, but it does hamstring us, especially when we're

18   going to come up to summary judgment motions.  Everything has

19   got to be restricted.  So it has been really difficult.  We

20   believe it's -- I'm not going to use used, but it has been

21   overused.  It has been way overused.  So if we can have a

22   discussion about that, we've been planning to have a

23   discussion, we just haven't had it.  I wanted to leave it

24   open.  I don't want to go into after -- July 17 not having

25   raised it with the Court, so I'm happy to discuss it with you

1    at a pub.

2             UNIDENTIFIED SPEAKER:  Well, location at your

3    choice.

4             THE COURT:  We're not a pub, but I would suggest

5    this:  With regard to -- it sounds to me like there is two

6    issues there not addressing the issue of whether it has or

7    hasn't been overdesignated because I'm not getting into that

8    at this point in time without any documents in front of me,

9    but if one issue is the summary judgment side of it, how it's

10   going to come in, how it's going to get filed, you've got

11   some time on that one.

12            With regard to sharing it with other parties,

13   potential plaintiffs, other -- other issues, that might be

14   something that you can resolve by way of some kind of an

15   addendum to the protective order, just adding a list of

16   potential players that it can be shared with, that everybody

17   is in agreement with, that it still stays confidential, but

18   at least that unties your hands and lets you move forward on

19   some things.

20            And if you don't think that works, maybe we need to

21   litigate it, but at least that might move it forward a little

22   more quickly.

23            UNIDENTIFIED SPEAKER:  We can work with that.

24            THE COURT:  Okay.  Anything else on confidential

25   documents we need to address?  Okay.  I'm going to come back

32

```
 1    to Ms. Livingston with regard to the Mercer issues.  From

 2    your perspective, anything else that we need to address, Mr.

 3    Marx --

 4               MR. MARX:  Well, with respect to the --

 5               THE COURT:  -- either on that list or your list.

 6               MR. MARX:  Right.  Well, with respect to the

 7    Marriott International 30(b)(6) deposition that was

 8    referenced, we've heard general -- generalized expressions of

 9    dissatisfaction, but nothing specific in terms of how the

10    deponent failed to comply with Rule 30(b)(6).  Marriott

11    International is a nonparty to this case, and the witness

12    spent a significant amount of time preparing to testify

13    concerning the 19 enumerated topics on which testimony was

14    sought, met with relative personnel, reviewed relevant

15    documents and appeared for the deposition.

16               And so in terms of an expression of disagreement,

17    you know, from our perspective, there is disagreement as to

18    the adequacy of that deposition.  And then in terms of

19    process, you know, if we're talking about completing fact

20    discovery, as it sounds, by -- by mid-August, which I think

21    is what I'm hearing is what we're trending towards, it's

22    unclear where this Marriott International issue will fit into

23    that because it's again not something that we would want to

24    have hanging out there that drags the parties, you know, past

25    that timeframe for fact discovery.
```

33

```
1              So is there a more concrete framework we can come

2   up with for resolving the Marriott International issue?

3              MR. MEADE:  Your Honor, Tyler Meade addressing this

4   point.  I was at that deposition and, in fact, there was

5   discussion on the record about specific areas that we raised

6   where we felt the witness lacked any significant knowledge on

7   the topics.

8              I do think we ought to meet and confer on that and

9   see if we can work it out.  It doesn't feel ripe for your

10  intervention just yet.  I do want to say that I think when

11  we're talking about the mid-August timeframe, we're talking

12  about some of these depositions, but, you know, the APCO

13  deposition may have to be later and I just want to make sure

14  we're clear on that.

15             We agree with you, Mr. Marx, that we ought to get

16  this done, but I do want to say this:  We've been getting

17  documents, as you know, very recently, end of May, end of

18  June, documents that should have been -- end of July,

19  correct -- should have been received much earlier, and we are

20  scrambling to do many things, and I would just ask that as we

21  schedule these remaining things, that we have a tad bit of

22  latitude to do so, especially given the summer months.

23             So I just don't want to -- I just want to make sure

24  that -- we don't agree that we can get everything done by

25  mid-August.  We're happy to try.  Some of these things may
```

1    continue a bit longer.  Yeah, it's not that much.

2              THE COURT:  Mr. Marx?

3              MR. MARX:  Well, I can't argue with what my friend

4    Tyler said here in terms of the summer and working with each

5    other, but it does -- it is concerning, though, from our

6    perspective, to hear that we're talking about, you know,

7    identifying a discovery that needs to be completed,

8    identifying a timeframe for doing it, and then not really

9    committing to it.  So are we contemplating that the Court is

10   going to enter an order extending fact discovery to a date

11   certain?

12             UNIDENTIFIED SPEAKER:  My view is after discovery

13   is completed, we would have completed it on time but for

14   these issues, and we wanted to be in the court to have this

15   conversation.  It has been productive.  We have to finish the

16   Soughback deposition.  It will be a few hours.  Mr. Pearce,

17   we just couldn't get it done.  I'll get it done as soon as

18   possible.

19             Really I think the only one we don't have control

20   over is the APCO person, because I'm dealing with -- and when

21   I spoke to the in-house lawyer, the fellow that was assigned

22   to that project is now not employed there anymore, and so he

23   is tracking it down.  So I don't want to say we'll have APCO

24   done by August 15.  We might have it done by August 1, I

25   don't know, but he could be -- Mr. Smith is in, you know,

35

```
 1    Thailand and we don't get to him until (inaudible), but, you
 2    know, I can't control that, but we will do our level best to
 3    finish these very few items.
 4              THE COURT:  Okay.  Well, in terms of that, I'm
 5    happy to think about refiguring some of these dates briefly
 6    or limiting refiguring of them if it makes sense.  If it
 7    doesn't or if we're talking about kind of -- I guess it's not
 8    a one-off.  If it's a three-off, but we've got three things
 9    still hanging out there.  Maybe it doesn't make since to
10    refigure the remainder of the dates, just have those things
11    be outside of the discovery cutoff if nothing else.
12              UNIDENTIFIED SPEAKER:  Yeah, exactly.
13              THE COURT:  Mr. Marx.
14              MR. MARX:  The three things being the --
15              THE COURT:  I'm hearing that we got the three
16    depositions essentially, one that was commented on maybe a
17    four-hour one, another one that's coming soon, and then
18    whatever is going on with APCO.  Obviously, it sounds to me
19    like there might be more than three things.  It sounds like
20    there are some other issues kind of simmering out there, but
21    we don't necessarily have an exact plan.  Maybe that's what
22    we need.  Maybe we need just an exact plan where you all sit
23    down, make a list of here is the things that are going to be
24    done, here is when we want to try to do them, and we just do
25    a -- if it's an agreement, we do an addendum to the revised
```

36

1    scheduling order with those limited items and leave

2    everything else alone, if you're that close.

3            UNIDENTIFIED SPEAKER:  We feel that close, yeah, we

4    do.

5            THE COURT:  Mr. Marx?

6            MR. MARX:  Okay.  And if they feel close, then

7    we're fine.

8            THE COURT:  Do you think you can have something

9    like that in within a week or do you want the same ten

10   days --

11           UNIDENTIFIED SPEAKER:  Yeah, give us the ten days.

12           THE COURT:  -- (inaudible) addressing with regard

13   to the 238 matter?

14           UNIDENTIFIED SPEAKER:  Yes, Your Honor, that would

15   be great.

16           THE COURT:  So basically, in terms of firm things

17   that we're talking about, we've got the ten days on 238,

18   we've got ten days for an addendum to the scheduling order.

19   And please do give some thought to how, if at all, it affects

20   the other dates in schedule, or Section 9, whatever is the

21   case plan.  If it doesn't, great, if it does, I would

22   probably rather fix it now rather than later.

23           MR. FERGUSON:  We didn't want to do that at all,

24   Your Honor.  We just -- we wanted to say we've done lot of

25   work.  We have a few things to go.  We didn't want to be

1    asking for permission after the fact.

2              THE COURT:  No, I appreciate that, and it's good to

3    get it done now.

4              All right.  Mr. Marx, what else have you got, sir?

5              MR. MARX:  I think everything on our list has been

6    resolved.  David, do you have any.

7              MR. MASTERS:  The only thing I have, Your Honor, is

8    I just want to give you a heads-up that on the second motions

9    for sanctions 284, I conferred with Mr. Ferguson this

10   afternoon, and we're going to be filing an unopposed motion

11   to get an extra week to respond that.  I thought it was

12   better to ask Mr. Ferguson and the Court for that time.

13             THE COURT:  Let's just address that right now.  So

14   we're talking about -- I had a response date on that would

15   have been essentially July 24, and we're talking about your

16   response to number 282?

17             MR. MASTERS:  Yes, Your Honor.

18             THE COURT:  Okay.

19             MR. MASTERS:  I think it's 284.

20             THE COURT:  I've got that it was -- let me look

21   back.  I've got the motions at 282.  I think the referral --

22             UNIDENTIFIED SPEAKER:  The referral is 284, yeah.

23             THE COURT:  284.  Okay.  So you would like

24   essentially until -- let me look at my calendar here.  If

25   your response was due essentially on the 24th, are you

1    talking about something like August 3 or -- well, August --

2    let's see here.  And I'm off a month here.

3          MR. MASTERS:  We're talking July 31, Your Honor.

4          THE COURT:  July 31 is the date you would like.

5    Mr. Ferguson, any objection to that?  All right.

6          Ms. Livingston, I don't know that you care, but any

7    objection to that?

8          MS. LIVINGSTON:  I have no objection.  I'm not sure

9    that we'll be filing a response, but if we do --

10          THE COURT:  At the same time?

11          MS. LIVINGSTON:  (Inaudible).

12          THE COURT:  Okay.  Responses from any party are

13   July 31, and let's not clutter it up with another motion on

14   that.  All right.  Anything further from your perspective

15   today?

16          UNIDENTIFIED SPEAKER:  Thank you.

17          THE COURT:  Okay.  Ms. Livingston, I think that

18   leaves then for you to the extent that we need to address it,

19   the one issue that plaintiff's counsel raised that was kind

20   of germane to you, the HOA issue.  Anything we need to

21   address on that today?

22          MS. LIVINGSTON:  No, Your Honor, I don't think so.

23   As Mr. Ferguson said, we spoke on Saturday and on Monday, and

24   while there is sort of an outstanding issue that we have not

25   yet been able to resolve as to the continued deposition of

1    Mr. Mercer and potential re-depositions of other board

2    members, I think he's correct that we think that we can

3    likely resolve this either in the next couple of weeks or at

4    the mediation session that we have planned.

5              So we have agreed to come back to Your Honor if

6    we're unable to do so, but we've agreed to conduct that

7    deposition to the extent it's ordered or otherwise agree

8    after the fact discovery cutoff.  So at the moment I don't

9    think we have anything that we need your counsel on.

10             THE COURT:  Okay.  Well, I think you made -- I

11   don't know if it's as hot over there as it is here, but if it

12   isn't, you made the right choice not to move to Grand

13   Junction.  I think it's blazing hot over here today.

14             UNIDENTIFIED SPEAKER:  The air condition --

15             MS. LIVINGSTON:  (Inaudible).

16             THE COURT:  Well, it's sure better than it is

17   outside.  All right.  Anything else from anybody that you

18   think we need to address today?

19             UNIDENTIFIED SPEAKER:  No, Your Honor.

20             THE COURT:  Okay.  Well, thank you all.  It looks

21   like we got some things accomplished, which I appreciate and

22   we're heading towards some resolutions here.  All right, have

23   a good afternoon, everybody, and we're going to go ahead and

24   hang up, Ms. Livingston, and for everybody else is who is on

25   phone.

1          (Whereupon, the within hearing was then in

2    conclusion at 4:45 p.m.)

3

4               TRANSCRIBER'S CERTIFICATION

5    I certify that the foregoing is a correct transcript to the

6    best of my ability to hear and understand the audio recording

7    and based on the quality of the audio recording from the

8    above-entitled matter.

9

10   /s/ Dyann Labo                    August 20, 2018

11   Signature of Transcriber              Date

12

13

14

15

16

17

18

19

20

21

22

23

24

25