**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-01301-PAB-GPG

**RCHFU, LLC**, a Colorado limited liability company, et al.,

Plaintiffs,

v.

**MARRIOTT VACATIONS WORLDWIDE CORPORATION**, a Delaware corporation, et al.,

Defendants.

---

**ASPEN HIGHLANDS CONDOMINIUM ASSOCIATION'S
MOTION FOR SUMMARY JUDGMENT**

---

Under, F.R.C.P. 56, Defendant Aspen Highlands Condominium Association ("AHCA") respectfully requests that the Court grant summary judgment in its favor and against Plaintiffs:

**INTRODUCTION**

In 2014, the AHCA executed a Memorandum of Understanding ("MOU") with the Lion & Crown Travel Co., LLC, which allowed members of the Ritz-Carlton Club in Aspen Highlands ("Club"), to voluntarily trade one week of their deeded 1/12 fractional interests in the Club with members of the Marriott Vacation Club ("MVC") through an affiliation between the Club and Marriott Vacations Worldwide Corporation's ("MVW") points-based timeshare program. Before executing the MOU, the AHCA surveyed Club members on their opinion of the potential affiliation. A majority of the responding members favored the affiliation.

The crux of Plaintiffs' claims is that the AHCA's agreement to affiliate with the Marriott Vacation Club Destinations ("MVCD") Exchange Program after a survey of members, rather

1

than a vote, diminished the value of Plaintiffs' fractional interests in the Club.  The affiliation and the failure to hold a vote, according to Plaintiffs, constitutes a breach of the AHCA's fiduciary duties, constructive fraud, and aiding and abetting, and conspiracy with, the Marriott Defendants' alleged breach of fiduciary duties.  Not so.

There is no evidence that the AHCA directors acted disloyally or arbitrarily—favoring themselves over Plaintiffs—in their decision to affiliate with the MVCD Exchange Program. Indeed, many Club members wanted more exchange opportunities after half of the Ritz-Carlton clubs left the Ritz-Carlton exchange system.  The AHCA directors owed duties to those members, too, who like all members had fee-simple rights to trade or rent a week with anyone. The business-judgment rule thus insulates the AHCA from Plaintiffs' claims.

The economic-loss rule also bars Plaintiffs' claims.  The economic loss rule bars extra-contractual tort claims where a contract between the parties defines the duties between the parties.  The Colorado Supreme Court has said that allowing tort claims in this scenario would be against public policy even if the contractual duties are not much different than the fiduciary duties under common law.  The contractual duties govern; and the proper action is for breach of contract.  Here, Section 6.8 of the Condominium Declaration assigns the fiduciary duties the AHCA owes to members.  Thus, Plaintiffs' claims are barred, and summary judgment is proper.

The constructive fraud claim is barred for two more reasons. First, Plaintiffs have no evidence that the AHCA gained an advantage from allegedly misleading Plaintiffs to believe that a vote would be held.  Second, the statute of limitations bars the constructive-fraud claim because Plaintiffs did not seek to add it to their complaint until December 2016, more than three years after the AHCA told Club members that a survey, not a vote, would be held.

Plaintiffs' secondary liability claims—for aiding and abetting and civil conspiracy—fare no better for many reasons. A director cannot be secondarily liable to a person whom the director owes a direct fiduciary duty. Any secondary conduct (*e.g.*, aiding and abetting) would constitute a *primary* breach of the director's direct fiduciary duty. Additionally, Plaintiffs cannot prove that the AHCA had knowledge that any Marriott entity breached a duty to Plaintiffs to hold a vote or provided any substantial assistance to Marriott to deprive Plaintiffs of a vote. And Plaintiffs cannot show that the AHCA knew that any promise by Marriott to hold a vote was enforceable or that the AHCA did anything to assist Marriott in recanting its promise or in gaining an advantage by recanting its promise. Plaintiffs' secondary liability claims are barred, in addition, by the economic-loss rule and the statute of limitations.

Finally, Plaintiffs cannot prove that the AHCA's failure to conduct a vote was the proximate cause of Plaintiffs' damages. Plaintiffs' own admission is the end of the matter: in their first three complaints Plaintiffs alleged that the proximate cause of their damages <u>was the affiliation itself</u>, not the vote. But even on the merits, it cannot be that an alleged procedural error that Plaintiffs could have sought to correct by making a demand of the Board to stop the affiliation during the six months before the program began caused their damages.

Ultimately, the MVCD Exchange Program simply formalized what Club members always could do: exercise their fee-simple rights to trade or rent a week of their time with someone else—including with an MVC member. Judgment is proper on all of Plaintiffs' claims.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. A Declaration of Condominium was executed in 2001 for the Aspen Highlands Club, creating the AHCA and setting forth both the AHCA's duties, including in Paragraph 6.8:

> The Executive Board . . . shall have the duty to represent the interest of [Members] in a fair and just manner in all matters that may affect any or all [Members]. . . . [T]he Association shall be held in their decisions . . . to the standards of good faith and reasonableness . . . .

Paragraph 7.8.3 of the Declaration also set out members' rights vis a vis the AHCA:

> Before an aggrieved Owner may prosecute any proceeding . . . enforcing the provisions of this Declaration . . . or seeking other relief relating to a violation . . . of the provisions of this Declaration . . . , the Owner will first give written notice to the [Association's] Executive Board specifying the violation . . . , the . . . circumstances surrounding the violation, and the name of the person alleged to have violated . . . this Declaration.

**Ex. A**, Dkt. 109-8 (Mar. 10, 2017).

2.   The Management Agreement between the Ritz-Carlton Management Company and the ACHA provides: "the Association may terminate this Agreement at any time for any or no reason upon . . . advance written notice . . . ." **Ex. B**, Management Agreement § 3(b).

3.   By July 2012, Marriott announced its affiliation with Abercrombie & Kent, without a member vote, and its plan to affiliate with the MVCD Exchange Program.  **Ex. C**, Decl. of R. Mercer ¶ 6.

4.   In April 2013, Marriott affiliated with Exclusive Resorts without a member vote.  See **Ex. D**, Apr. 22, 2013 email from L. Cunningham (containing no reference to a vote of the members).

5.   In April 2014, Marriott affiliated with Third Home without a member vote.  See **Ex. E**, Apr. 22, 2014 Email from L. Cunningham (containing no reference to a member vote).

6.   The AHCA sent a letter to members in April 2013 stating, "Ritz/Marriott representatives agree that unless a majority of [m]embers . . . vote in favor of doing so, the Ritz/Marriott will not include Aspen Highlands in the" MVCD Exchange Program.  See **Ex. F**, Apr. 2013 Letter.

7.   In May 2013, Marriott sent a letter to Club members: "we believe a survey of the members is the best way to determine if [the Club] . . . will be affiliated in anyway with The

[MVC] system."  See **Ex. G**, May 2013 letter.

8.   The AHCA sent a letter to all members in July 2013 stating, "A Member survey will be distributed . . . shortly.  The question will be asked in essence, 'Do you want the Aspen Ritz-Carlton Club to have an exchange affiliation with the [MVCD] exchange program, and do you want [MVCD] Members to have access to our Aspen Club?'"  See **Ex. H**, July 2013 letter.

9.   The AHCA sent a letter to members in October 2013, stating "A Member survey regarding an additional voluntary exchange program will be distributed to all Aspen Members in November."  See **Ex. I**, Oct. 2013 letter.

10. The AHCA and Marriott sent a letter to members in November 2013 stating, "As promised earlier this year, [members] will be surveyed on their opinion regarding the potential exchange affiliation with the [MVCD] exchange program."  See **Ex. J**, Nov. 2013 Letter.

11. Marriott sent a letter to Club members in December 2013 attaching a survey asking whether members favored a trade-a-week program with the MVC.  **Ex. K**, Dec. 2013 Letter.

12. Of the approximately 141 responses to the survey, 74 indicated that they favored the trade-a-week program.  See **Ex. L**, Email from N. Verrechia to S. Sobeck.

13. The AHCA entered into an MOU in 2014.  The MOU created a structure for the trade-a-week program that prohibited Marriott from trading a week of its interests.  **Ex. M**, MOU.

14. The AHCA obtained a $150,000 reduction in Marriott's management fee.  **Ex. B**, § 4.

15. Plaintiffs stated that the affiliation, not the vote, proximately caused their damages.  Dkt. No. 5 (May 27, 2016), ¶¶ 120, 126; Dkt. No. 40 (Jul. 18, 2016) ¶¶ 82, 88; Dkt. No. 79 (Nov. 11, 2016) ¶¶ 82, 88.[1]

---

[1] The remaining facts cited in this motion are undisputed but not material as a matter of law.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if "under the relevant substantive law it is essential to proper disposition of the claim."  *Chateau Village N. Condo. Ass'n v. Am. Family Mut. Ins. Co.*, 170 F. Supp. 3d 1349, 1355 (D. Colo. 2016) (Brimmer, J.) (citation omitted).  Where, as here, the movant "does not bear the ultimate burden of persuasion . . ., it may satisfy its burden at the summary judgment stage by identifying a lack of evidence . . . on an essential element of the nonmovant's claim."  *Id.* (citation omitted).

## ARGUMENT

**I.      The business judgment rule insulates the AHCA's conduct, and thus judgment is proper on Plaintiffs' breach-of-fiduciary-duty and constructive-fraud claims.**

Courts will not "interfere with or regulate the conduct of the directors [of a board] in the reasonable and honest exercise of their judgment and duties" absent evidence that the "directors acted in bad faith or in fraud of the rights of the members."  *Rywalt v. Writer Corp.*, 526 P.2d 316, 317 (Colo. App. 1974).  This is because the business judgment rule "bars judicial inquiry into actions of corporate directors taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes."  *Curtis v. Nevens*, 31 P.3d 146, 151 (Colo. 2001).  That rule applies here, protects the Board's decisions, and demands judgment favoring the AHCA on Plaintiffs' breach-of-fiduciary-duty and constructive-fraud claims.

The Plaintiffs' fiduciary-duty claim is based on the duty of loyalty.  Sixth Am. Compl. ¶¶ 24, 85.  A condominium association "has a duty to deal with utmost good faith and solely for the benefit" of the members, owing the members "duties of loyalty and to deal with them

---

Undisputed material facts are cited as "UMF."

impartially."  *DA Mountain Rentals, LLC v. The Lodge at Lionshead Phase III Condo. Ass'n Inc.*, 409 P.3d 564, 574 (Colo. App. 2016).  These duties require that the Board "not favor certain members at the expense of any others" and not "compete with the members or otherwise advance its own interest over those of the members."  *Id.*  Plaintiffs have presented no evidence that the Board had a conflict of interest, favored certain members over others, competed with them, or otherwise acted in bad faith.[2]

Plaintiffs have uncovered no evidence that the Board's directors had any conflicts of interest.  There is no evidence that the directors had business affiliations with Marriott.  And there is no evidence that any of the four directors who voted to proceed with the MOU have even used the MVCD Exchange Program.  Despite Plaintiffs' suggestions that the developer might have influenced the AHCA's election in 2012 that brought Mr. Mercer and Mr. Oliver onto the Board, no witness testified that this happened.  Mr. Mercer and Mr. Oliver both testified that they have no knowledge of who voted for them or whether the developer voted in the Board elections at all.  **Ex. N**, Dep. of R. Mercer, 51:10–20 (Oct. 24, 2017) ("Mercer Dep."); **Ex. O**, Dep. of T. Oliver, 15–16:20–2 (Jan. 12, 2018) ("Oliver Dep.").

Nor did the Board act in a manner that favored certain individual members over others.

---

[2] The Court, in ruling on the AHCA's motion to dismiss, applied a standard requiring that a business judgment "must be made in good faith and must not be arbitrary."  Order at 19 (citing *Colorado Homes, Ltd. v. Loerch-Wilson*, 43 P.3d 718 (Colo. App. 2001)).  The *Colorado Homes* court adopted the arbitrariness standard from *Rhue v. Cheyenne Homes, Inc.*, which itself did not actually apply the standard:  the association there never took action on an architectural plan that was discussed by the court, so the court never made clear what it meant by the term arbitrary. 449 P.2d 361, 363 (Colo. 1969).  *DA Mountain Rentals* makes clear what standard applies to an association charged with breaching its duty of loyalty; "arbitrariness" could be a consideration if it means favoring one group of members over another as opposed to the directors acting disloyally by favoring themselves over other members.  Some courts have used "arbitrary" to describe conduct that breaches a duty of care, not at issue here, and thus not applicable here.

The MOU[3] does not do so—it creates a structure where all individual members may voluntarily trade a week for MVC points, UMF 13 §§ 5–6, just as they could do with Abercrombie & Kent or Exclusive Resorts, *compare* UMF 13 § 4 (explaining that members may "elect voluntarily" to participate); *with* UMF 3 ¶ 6 (attesting to the voluntary affiliation with Abercrombie & Kent and Exclusive Resorts).  The MOU ensured that the exchange program would be available only if a member who owned their weeks in fee simple elected to deposit their weeks in the program.  It barred the MVC members from accessing the "space available" days created whenever an individual member chose not to use a particular week.  UMF 13 §§ 2, 6, 7(c).  This benefited all members.  "Space available" days were not eligible for the exchange program, and thus MVC members couldn't access any unallocated inventory not specifically deposited by a Club member.[4]  UMF 3 ¶ 13–14; Oliver Dep., 237–38:19–3.

Finally, though some members did not support the affiliation, other members asked for more exchange opportunities after four of the eight Ritz-Carlton sister clubs that had been available for exchanges left Ritz-Carlton.  *See* Comments of Members, **Ex. Q** at 2, 4–5, 8, 13.  The Board had a duty to represent all members, to consider all of their interests, and not to favor only those who oppose the affiliation.  That is precisely what the Board did.

Nevertheless, the Court previously assessed other factors at the motion-to-dismiss stage, when it had to rely on Plaintiffs' allegations.  But now the undisputed facts show that those

---

[3] The Board was represented by counsel who negotiated the MOU.  *See* **Ex. P**, Dep. of M. Marino, 71:13–17 (Dec. 6, 2017); Mercer Dep, 169–70: 20–18.

[4] For example, Club members own their interests as 1/12 fractions, meaning they each have a fee-simple right to four weeks per year.  This leaves four weeks per unit per year that are not owned by a member (12 fractions x 4 weeks = 48 weeks).  Additionally, members who do not wish to use one of their allocated weeks can return that time to the calendar, and those days then become available to all members, including sister-club members.  **Ex. R**, Dep. of P. Schneider, 79:7–11 (Oct. 18, 2017) ("Schneider Dep.").

8

factors support the AHCA's request for summary judgment under the business judgment rule.

First, nothing in the Declaration requires or even mentions a vote by all members in connection with the decision to affiliate with the MVCD Exchange Program, despite the fact that certain provisions do expressly permit or require a vote by members on other matters.[5]  Plaintiffs have no evidence that members objected to Marriott's prior affiliation of the Club with Abercrombie & Kent or Exclusive Resorts, or later with Third Home.  And Plaintiffs have no evidence that a vote was required, discussed, or conducted for those affiliations.

Regarding the Board's communications to members about a vote, the Board initially sent a letter to members in April 2013 stating that "Ritz/Marriott representatives agree" that a vote would be held on the question of the affiliation.  UMF 6.  But within three months, on July 2, 2013, the Board communicated to its members that a survey would be sent instead.  UMF 8 at 2.[6]  Later in October, the AHCA sent a letter to members, iterating that a survey, not a vote, would be taken on the issue of whether a limited affiliation would occur, allowing individual members but not Marriott to trade allocated weeks for MVC points.  UMF 9.  The AHCA sent another survey letter in November 2013 and the survey was disseminated in December. UMF 10, 11.

Only 141 members responded to the survey, and many of them said they wanted the exchange opportunities available through the MVC.  UMF 12; *see also* **Ex. Q** at 2, 4–5, 8, 15.  More than 500 members stayed silent during and after the survey.  Even though the April 2014 MOU did not go into effect until the program began in December 2014, no member sought to

---

[5] *See* **Ex. A** ¶¶ 6.5, 7.1.1, 7.4, 8.6.3, 17.1, 17.2, 18.4, 18.7, and 22.3 (requiring a vote on other matters but not requiring a vote for actions such as an affiliation).

[6] The Board's letter to members stated:  "A Member survey will be distributed to all Aspen Members shortly.'"  *Id.*  In the same paragraph, the letter explained that a "vote" might follow if the members needed to consider whether to amend the Declaration to permit Marriott to deposit its unsold inventory into a trust—a separate question from the voluntary affiliation program.  *Id.*

stop it during the six-month hiatus or demanded that the MOU ultimately not take effect until a

vote of all members was taken.  In fact, as of March 2018, 382 members (446 interests) had

enrolled in the MVCD Exchange Program, and Club members had already deposited 160 weeks

for use in the program in 2018 and 75 weeks for use in the program in 2019.  **Ex. S**, Member

Usage as of Mar. 31, 2018, 8–9.[7]

     Second, the restrictive covenants in the Declaration did not prohibit the voluntary trade-a-

week program that ultimately became the MVCD Exchange Program.  The unambiguous terms

of the Declaration do not prohibit the affiliation:  Section 19.8 of the Declaration prohibits any

"Unit" from being used to operate a timeshare[8] or similar program whereby the right to use of

the Unit is scheduled "on a fixed or floating time schedule over a period of years."  **Ex. A** ¶ 19.8.

But a "Unit" specifically excluded "any Fractional Ownership Interests," such as the fractional

interests owned by Plaintiffs.  *Id.* ¶ 2.72.  Further, the MVCD Exchange Program is not a

program that operates "on a fixed or floating time schedule over a period of years" because the

MOU requires that members must elect "on an annual basis, whether to participate" in the

Exchange Program.  **Ex. M** § 7(d).  Not surprisingly, this Court previously concluded that the

---

[7] Consistent with the feedback expressed by many members, the additional exchange
opportunities available through Abercrombie & Kent (which ended in 2012), Exclusive Resorts,
and Third Home were popular among members.  For example, members deposited 742 nights
into the Third Home program in 2016, 819 nights in 2017, and 812 nights in 2018 as of March
2018.  **Ex. S**, 5.  Similarly, members deposited 238 nights into the Exclusive Resorts program in
2016, 274 nights in 2017, and 153 nights in 2018 as of March 2018.  *Id.*

[8] The Declaration does not define "timesharing," but Colorado law defines timesharing as "[a]n
undivided interest in a present estate in fee simple in a unit" where title "circulates" according to
"a fixed schedule" or the "exclusive right to possession and occupancy of the unit during an
annually recurring period of time."  Colo. Rev. Stat. § 38-33-110 (defining time sharing for
purposes of Colorado Common Interest Ownership Act, *see, e.g.*, §§ 38-33.3-209.7, 38-33.3-308,
38-33.3-310, 38-33.3-316.5).  None of the Members permanently give up their Fractional
Interest to create a fee-simple interest or exclusive right to possession for MVC members when
they participate in the MVCD Exchange Program.

restrictive covenants in the Declaration did not prohibit the affiliation.  Order at 22.  And members could always exercise their fee-simple rights to trade or rent a week with someone else, even if that person is an MVC member.  **Ex. A** ¶ 13.3 (stating that members "may rent or lease" their units).  But more fundamentally, Colorado law prohibits alteration of members' fee-simple rights by majority vote, so the AHCA would have been exposed to claims from members that it altered their fee-simple rights by failing to let them into the MVCD Exchange Program.  Colo. Rev. Stat. § 38-33.3-217(4.5); Mercer Dep., 115–16:24–5; Schneider Dep., 217:7–13; and Oliver Dep., 157:4–7.

For their breach-of-fiduciary-duty claim, the Plaintiffs say that the Board handled the affiliation arbitrarily.  They point to 2012 communications to Club members regarding a cease-and-desist letter sent by the AHCA's lawyer to Marriott asserting that the Declaration prevented Marriott from allowing MVC members to use the Club.  **Ex. T**, Letter from P. Gosch to Marriott Vacations Worldwide Corp. *et al.* (Nov. 21, 2012).  This is a sideshow.  The Board president at the time, a New York lawyer, said that the cease-and-desist letter related to Marriott's proposal to allow MVC members to use Marriott's unsold inventory at the Club (totaling nearly 200 of the 876 interests).  **Ex. U**, Dep. of J. Neveloff, 254:4–17 (Jan. 30, 2018).  And the lawyer who sent the cease-and-desist letter testified that he was not asked to and did not opine on the trade-a-week program memorialized in the MOU.  **Ex. V**, Dep. of P. Gosch, 73:9–15 (Dec. 1, 2017).

Yet Plaintiffs assert that the cease-and-desist letter shows that the Board breached its duty of loyalty.  But they do so without explaining how the AHCA acted disloyally or favored one

group of members over another.[9]  The cease-and-desist letter and the AHCA's communications

to members about it are thus irrelevant—even if the lawyer's opinions were correct.[10]

The undisputed facts show that the Board did not make its decisions to hold a survey and

to permit the affiliation in bad faith.[11]  Therefore, judgment is proper in the AHCA's favor.

## II.   The economic-loss rule bars Plaintiffs' claims because the AHCA's fiduciary duties are set forth in the Declaration, and no independent duty exists.

Judgment also should be entered on Plaintiffs' breach-of-fiduciary-duty and constructive-

fraud claims, as well as their secondary-liability claims, because they are tort-based claims

seeking recovery for contract-based breaches and are thus barred by the economic loss rule.  The

economic loss rule bars tort claims for a breach of a duty that arises out of a contract.  *S K*

*Peightal Eng'rs, LTD v. Mid Valley Real Estate Sols. V, LLC*, 342 P.3d 868, 872 (Colo. 2015).

Here, Plaintiffs allege that the Board breached three fiduciary duties:  a duty of loyalty, a duty of

honesty, and a duty to enforce restrictive covenants.  Sixth Am. Compl. ¶ 24; *see also id.* ¶ 85.

And the Declaration imposes on the Board a duty to "represent the interests of" the owners "in a

fair and just manner on all matters that may affect any or all" owners and holds the Board to "the

---

[9] In fact, the only member that arguably was disfavored was Marriott, who owned the developer units, and who was prohibited from trading its weeks into the MVCD Exchange Program by the term of the MOU.  UMF 13 §§ 5, 6, 7(a) (discussing participation by "individual Members" and not including or referencing developer-owned interests).

[10] Should the Court consider the lawyer's opinion relevant to the disposition of this motion, the lawyer's memorandum to the AHCA preceding the cease-and-desist letter made clear that any lawsuit against Marriott would carry considerable litigation risk.  **Ex. W**, Memorandum from Brownstein to the AHCA Bd. of Dirs. at 3 (Sept. 21, 2012).  And the business judgment rule protects legal-strategy decisions by boards that are informed by litigation risk.  *Young v. Bush*, 277 P.3d 916, 927 (Colo. App. 2012) (a board's special litigation committee's decision to pursue litigation is subject to the business-judgment rule and "not subject to judicial review");*Curtis v. Nevens*, 31 P.3d 146, 151 (Colo. 2001) ("[T]he question of whether to go forward with" litigation is part of the board's "corporate management duties").

[11] And they do not otherwise violate the common-law duty of loyalty if it were to be applied here despite the protections owed to the Board by the business judgment rule.

standards of good faith and reasonableness."  UMF 1 ¶ 6.8.[12]

The economic-loss rule applies here to bar Plaintiffs' claims based on alleged breaches of the duty of loyalty by failing to hold a vote on the affiliation.  The Board's contractual duties—to represent owners' interests "in a fair and just manner" under standards of "good faith and reasonableness"—encapsulate the fiduciary duties of loyalty and impartiality—requiring that a fiduciary deal fairly with members by "not favor[ing] certain members at the expense of any others," and act with the "utmost good faith and solely for the benefit" of the members."  *See DA Mountain*, 409 P.3d at 574.  Plaintiffs point to no independent duty of loyalty that would apply to supersede the existing contractual duties in the Declaration.  *See S K Peightal Eng'rs, LTD*, 342 P.3d at 875 (an independent tort duty is one that "is beyond the scope of the duties contained within the contract").  They identify no independent fiduciary duty that requires a homeowners association to hold a vote on an affiliation.  Nor do they identify any "judicially recognized special independent duty" of loyalty, requiring a vote on the affiliation.  *See id.*

Public policy commands this result.  Parties to a contract establishing a duty of fairness cannot be allowed to pursue tort claims against volunteer directors of a non-profit who measure their conduct against their contractual duties.  When assessing whether such directors acted unfairly or unreasonably, the proper gauge is the standard they agreed to in their contract.

Ultimately, this is a case involving the internal affairs of the AHCA.  The Condominium Declaration sets forth a standard of fairness applicable to the four volunteer Tourist

---

[12] Though a separate section of the Declaration imposes a duty to enforce restrictive covenants—which the Court already ruled is an independent duty such that the economic loss rule does not bar a claim concerning it, *see* Order at 18—the Court also dismissed Plaintiffs' claims based on any alleged failure to enforce restrictive covenants.  *Id.* at 23, 25.  So the Board's independent duty to enforce restrictive covenants is no longer at issue and thus no longer bars the application of the economic loss rule.

Accommodation directors who agreed to a limited affiliation with Marriott in April 2014.  The affiliation was in no way unfair to any Plaintiff or any other Club member:  no one was required to trade a week for MVC points, and members can always exercise their fee-simple rights by trading or renting a week of their time, even if the trade is with an MVC member.  Nor did the directors follow an unfair process by not first conducting a vote because no provision of the condominium documents required a vote (or survey) of members prior to any affiliation, and no vote (or survey) was conducted before the prior affiliations with Abercrombie & Kent or Exclusive Resorts.  Nor did the AHCA directors act unfairly by affiliating based on the result of the December 2013 survey, even if they erred in April 2013 by saying that Marriott would not affiliate without a vote, because fee-simple rights of members cannot be subjugated to a majority vote, and the Board said in every subsequent communication between July 2013 and December 2013 that a survey would be conducted.  Plaintiffs have been aware of the Fairness Standard since purchasing their interests, and it would be unjust to hold the directors to a different standard now, not to mention sow doubt in the minds of all future directors of the Club as to what standard they should follow in deciding what actions to take on behalf of members.

III.   **Judgment is proper on Plaintiffs' constructive fraud claim.**

    A.   **The AHCA did not gain an advantage at the Plaintiffs' expense.**

Judgment is proper on Plaintiffs' constructive-fraud claim because there is no evidence that the AHCA gained any advantage at the Plaintiffs' expense.  Constructive fraud arises where a fiduciary relationship "affords one party the power and means to take undue advantage of the other."  *Rosales v. AT & T Info. Sys., Inc.*, 702 F. Supp. 1489, 1498 (D. Colo. 1988).  Gaining an advantage at the expense of the plaintiff is the fifth element of a constructive-fraud claim.

*Barnett v. Elite Props. of Am., Inc.*, 252 P.3d 14, 24 (Colo. App. 2010) (citation omitted)). But Plaintiffs cannot prove it.

The Court permitted Plaintiffs' constructive-fraud claim to proceed only to the extent it is based upon Plaintiffs' allegations that the Defendants "substituted a survey for the promised vote without informing the members of [their] intention to do so." Order at 25. The AHCA did not fail to inform its members that it would be holding a survey and not a vote on the proposed affiliation. *See supra* at 9. But even if it did, the undisputed facts prove that the AHCA did not gain any undue advantage by doing so.

Plaintiffs have not identified any advantage the AHCA gained as a result of holding a survey on the proposed affiliation or as a result of the affiliation itself—let alone an advantage obtained at Plaintiffs' expense. Plaintiffs have no evidence that the AHCA profited financially or otherwise, or received other preferential treatment as a result of the affiliation. In fact, Plaintiffs have adduced no evidence that the members of the Board that executed the MOU even participated in the program. Mercer Dep., 152–53:24–1; Oliver Dep., 149:3–4.

Tellingly, Plaintiffs assert their constructive-fraud claim against the AHCA, RC Management, and Cobalt, and in doing so they allege specifically that "Defendants RC Management and Cobalt have profited at Plaintiffs' expense," but they nowhere allege the same as to the AHCA. Sixth Am. Compl. ¶ 104. Elsewhere, Plaintiffs allege that certain Marriott Defendants gained a financial advantage as a result of the affiliation, namely that they obtained extra commissions, fees, and profits as a result of their alleged wrongful conduct. *See* Sixth Am. Compl. ¶¶ 9, 86, 95, 104, 112, 119, 123. They also allege that the Marriott Defendants benefitted by "rid[ding] themselves of a poor financial investment" and by increasing the

"attractiveness, value and price" of their MVCD product at the Plaintiffs' expense.  *See* Sixth Am. Compl. ¶ 123.  And Plaintiffs assert an unjust-enrichment claim against the Marriott Defendants.  *Id.* ¶¶ 121–25.  But notably, Plaintiffs do not make any off those same allegations or raise the same unjust-enrichment claim <u>against the AHCA</u>.  *See generally* Sixth Am. Compl.[13]

This failure to adduce any evidence of undue advantage gained by the AHCA in connection with the affiliation and the survey makes judgment in the AHCA's favor proper.

**B.    Plaintiffs' constructive-fraud claim is barred by the applicable three-year statute of limitations.**

Judgment on Plaintiffs' constructive-fraud claim also is proper because the claim is barred by the three-year statute of limitations for claims sounding in fraud.  Colo. Rev. Stat. § 13-80-101(1)(c); 108(3).  Plaintiffs attempted to add their constructive-fraud claim more than three years after being told thrice that a survey, not a vote, would be held on the affiliation.

Plaintiffs first asserted a claim for constructive fraud in their Fourth Amended Complaint, after seeking leave to amend on December 16, 2016.  *See* Dkt. Nos. 87, 109.  Plaintiffs' claim of constructive fraud is based on their allegations that the Board promised to hold a vote before affiliating, then changed the vote to a survey, then finalized the affiliation, without holding the formal vote Plaintiffs say was promised.  *See* Sixth Am. Compl. ¶¶ 99–100; Order at 25.

On April 5, 2013, the AHCA sent members a letter stating:  "Ritz/Marriott representatives agree that unless a majority of [Club m]embers . . . vote in favor of doing so, the Ritz/Marriott will not include Aspen Highlands in the [MVCD]" Exchange Program.  UMF 6.  This statement, Plaintiffs say, was a promise to hold a vote on the affiliation.  But on July 2,

---

[13] In fact, they dropped their unjust-enrichment claim against the AHCA when they filed their Fifth Amended Complaint, wisely recognizing that the AHCA received no benefit or advantage at the expense of the Plaintiffs.  *See* Fifth Am. Compl. ¶¶ 117–20.

2013, the AHCA again wrote to its members, stating: "A Member survey will be distributed to all Aspen Members shortly" on the "affiliation with the [MVCD] exchange program." UMF 8 at 2. Thus, by July 2013, the AHCA clearly announced to its members that a survey would be held on the question of the proposed affiliation, and only after that survey would the AHCA consider whether a formal vote was required to amend the association documents to permit the separate matter of the developer placing its inventory into the MVCD trust. UMF 8 at 2. The Plaintiffs should have known the basis for their constructive-fraud by July 2, 2013.

In November 2013, the AHCA and Ritz-Carlton Destinations Club jointly wrote to members, noting that "As promised earlier this year, [Club members] will be surveyed on . . . the potential exchange affiliation with the [MVCD]." UMF 10. On December 4, 2013, a letter with a hyperlink to the survey went out to all Aspen members. UMF 11. Certainly no later than December 4, 2013, Plaintiffs should have known that a survey was being held, not a vote.

Accordingly, when Plaintiffs sought leave to amend their complaint on December 16, 2016, they did so more than three years after they should have known that no vote would be held on the affiliation—as early as July 2, 2013, and no later than December 4, 2013. *See* Colo. Rev. Stat. § 13-80-101(1)(c). Their constructive-fraud claim is barred by the statute of limitations.

## IV.   Judgment is proper on Plaintiffs' aiding-and-abetting and conspiracy claims.

### A.   The AHCA, as a fiduciary of Plaintiffs, cannot be held secondarily liable for the Marriott Defendants' conduct.

Plaintiffs attempt to impose secondary liability on the AHCA for aiding and abetting "breaches of fiduciary duties and constructive fraud" by RC Management and Cobalt and for conspiring with the Marriott Defendants to implement the affiliation through the "overt acts of breaching fiduciary duties . . . aiding and abetting . . . RC Management and Cobalt in breaching

their fiduciary duties and by acting fraudulently by participating in said affiliation in violation of promises made by Defendants in April 2013."[14] Sixth. Am. Compl. ¶¶ 107, 110, 117.

But a defendant cannot be liable for aiding and abetting another's breach of fiduciary duty or conspiring to do so if the defendant itself is a fiduciary of the plaintiff alleging injury. *In re Kaiser Merger Litigation*, 168 B.R. 991, 997 (D. Colo. 1994) (noting that the third element of a claim for aiding and abetting is "knowing . . . participation in that breach by the non-fiduciary defendants."); *Weinberger v. Rio Grande Indus., Inc.*, 519 A.2d 116, 131 (Del. Ch. 1986) (civil conspiracy requires knowing participation by "defendants who are not fiduciaries.").[15]

Secondary liability requires a secondary relationship, and there can be no aiding and abetting or conspiracy liability for a defendant who, in its primary relationship with the plaintiff, owes a fiduciary duty to that plaintiff. The law is clear that "aiding and abetting liability generally cannot attach to defendants who themselves owe fiduciary duties to the relevant entity and plaintiff." *CMS Inv. Holdings, LLC v. Castle*, No. CV 9468-VCP, 2015 WL 3894021, at *20 (Del. Ch. June 23, 2015).[16] This rule exists for good reason: If a defendant and a third party

---

[14] To prevail on their claim for aiding and abetting, Plaintiffs must prove, among other things, that a third party breached a fiduciary duty owed to the Plaintiffs and that the AHCA provided substantial assistance to the third party in connection with the breach of duty. *See City P'ship Co. v. Lehman Bros., Inc.*, 344 F. Supp. 2d 1241, 1246 (D. Colo. 2004). To prevail on their conspiracy claim, Plaintiffs must prove, among other things, an agreement between two or more persons on a course of action to accomplish an agreed-upon objective that is unlawful. *Double Oak Constr., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140, 146 (Colo. App. 2003).

[15] *See also Feeley v. NHAOCG, LLC*, 62 A.3d 649, 658 (Del. Ch. 2012) (The third element of a claim for aiding and abetting a breach of fiduciary duty is "a defendant, who is not a fiduciary, knowingly participated in [the] breach.") (emphasis added).

[16] *See also Mann v. GTCR Golder Rauner, L.L.C.*, 483 F. Supp. 2d 884, 916 (D. Ariz. 2007) ("A person who himself owes a fiduciary duty with respect to a transaction or course of conduct cannot be liable for aiding and abetting a breach of that same fiduciary duty by another because the same facts that would otherwise constitute aiding and abetting would constitute a primary breach of fiduciary duty."); *A Commc'n Co., Inc. v. Bonutti*, 55 F. Supp. 3d 1119, 1125 (S.D. Ill.

both owe fiduciary duties to the same plaintiff, then any conduct by the defendant to aid the third party in breaching its fiduciary duties to a plaintiff or to further a conspiracy to do so would likewise constitute a breach of the defendant's *primary* fiduciary duties to the plaintiff. Imposing secondary liability in this case would deprive them of the protections of the business judgment rule for otherwise protected conduct.[17]

Plaintiffs' own allegations illustrate this.  As part of their breach-of-fiduciary-duty claim, Plaintiffs allege that the AHCA's duties require it to "act in the best interests of Plaintiffs and Ritz Carlton Aspen Owners," and that the AHCA breached that duty by "conspiring with the other Defendants to impose the affiliation of the Marriott Vacation Club affiliation/exchange/ points program" at Aspen Highlands.  Sixth Am. Compl. ¶ 92.  In other words, Plaintiffs rely on the AHCA's conduct in allegedly conspiring with other defendants to prove how the AHCA purportedly breached its fiduciary duties to Plaintiffs.  The same conduct undergirds the conspiracy claim *and* their primary-liability claim of breach of fiduciary duty.

**B.      The AHCA did not know the Marriott Defendants' conduct was unlawful.**

To hold the AHCA liable for aiding and abetting and conspiring with the Marriott Defendants, Plaintiffs must prove that the AHCA knew that RC Management's and Cobalt's conduct was unlawful.[18]  Plaintiffs have not done so.

---

2014) ("[A]iding and abetting is not a separate tort and will only be applicable if one of the Individual Defendants is not a fiduciary."), *clarified on denial of reconsideration*, No. 13-CV-1193-SMY-SCW, 2015 WL 1577777 (S.D. Ill. Apr. 2, 2015).

[17] This is consistent with the economic loss rule's prohibition on subjecting defendants to liability under different legal standards (tort instead of contract) for the same conduct.

[18] Plaintiffs allege that RC Management and Cobalt are responsible for the primary violations of breaching fiduciary duties and constructive fraud.  *See* Sixth Am. Compl. ¶¶ 87–105.  Those two defendants are thus the only Marriott Defendants with whom the AHCA could have conspired or aided in committing their primary violations, as the other Marriott Defendants are not alleged to

Aiding-and-abetting liability requires that "the defendant knowingly participated in the underlying breach or violation." *Sender v. Mann*, 423 F. Supp. 2d 1155, 1175 (D. Colo. 2006) (citation omitted). A defendant must have "actual knowledge" of "the principal violation." *Id.* at 1176 (citation omitted). Critically, "[t]he relevant 'knowledge' for liability to attach for knowingly participating in a fiduciary's breach of duty is knowledge as to the primary violator's status as a fiduciary <u>and knowledge that the primary's conduct contravenes a fiduciary duty</u>." *Holmes*, 885 P.2d at 309–10 (emphasis added). Thus, the AHCA must have had actual knowledge that RC Management's and Cobalt's conduct "contravene[d]" their fiduciary duties to the Plaintiffs.[19] Likewise with the Plaintiffs' conspiracy claim.[20]

Here, Plaintiffs allege that the defendants "agreed on an object to be accomplished—the affiliation" and that the defendants "accomplished the unlawful overt acts of breaching fiduciary duties" and "aiding and abetting the Association, RC Management, and/or Cobalt in breaching their fiduciary duties and acting fraudulently by participating in said affiliation in violation of the promises made by Defendants in April 2013." Sixth Am. Compl. ¶ 117.[21] In support, Plaintiffs must prove that the AHCA agreed to provide substantial assistance to RC Management and

---

have committed any primary violations in the first place.

[19] Because Plaintiffs' constructive-fraud claim requires proof that RC Management and Cobalt owed Plaintiffs fiduciary duties and violated those duties by making misleading representations, *see Barnett*, 252 P.3d at 24, this applies equally to Plaintiffs' constructive-fraud claim.

[20] Plaintiffs must allege that defendants agreed on an objective and, to further it, performed one or more unlawful acts that proximately caused Plaintiffs' damages. *See Double Oak Constr., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140, 146 (Colo. App. 2003). One party's "silent knowledge of an unlawful act is insufficient to establish the requisite agreement" to maintain a civil conspiracy claim. *More v. Johnson*, 568 P.2d 437, 440 (Colo. 1977). A plaintiff must show "that each defendant agreed to do something in furtherance of the conspiracy, knowing of its improper purpose." *Powell Products, Inc. v. Marks*, 948 F. Supp. 1469, 1480 (D. Colo. 1996).

[21] Plaintiffs also list the promises made in the Affiliation Agreement and Declaration, but those "promises" (the restrictive covenants) no longer support Plaintiffs' claims. *See* Order at 23, 25.

Cobalt knowing that it was for the purpose of breaching fiduciary duties, aiding and abetting breaches of fiduciary duties, and fraud. *See Powell Products, Inc.*, 948 F. Supp. at 1480.

For both claims, then, Plaintiffs must prove that the AHCA <u>knew</u> that RC Management's and Cobalt's conduct was unlawful or improper. This, Plaintiffs cannot prove. Plaintiffs have no evidence that the AHCA actually knew that RC Management's and Cobalt's fiduciary duties required them to hold a vote on the question of affiliation. No AHCA Director ever testified that he knew that RC Management and Cobalt were required to hold a vote on the affiliation.

If anything, the AHCA had reason to believe the opposite: the affiliations with Exclusive Resorts and Abercrombie & Kent occurred without a vote or any complaint by members. Plaintiffs have no evidence to the contrary.[22] *See* UMF 3 ¶¶ 7–8 (noting no vote occurred before either program); UMF 4. The AHCA, then, had no reason to believe that RC Management or Cobalt had to hold a vote, let alone that not holding a vote would breach their fiduciary duties.

Accordingly, Plaintiffs cannot prove that the AHCA had actual knowledge that RC Management's and Cobalt's failure to hold a vote on the affiliation was a breach of their fiduciary duties. Thus, The AHCA cannot be liable for aiding and abetting RC Management's and Cobalt's breach of their fiduciary duties or for conspiring with RC Management and Cobalt to commit the unlawful act of breach of their fiduciary duties in furtherance of the allegedly agreed-upon objective of affiliating the Aspen Club with the MVC program.

### C.     The AHCA provided no substantial assistance to the Marriott Defendants.

Plaintiffs have put forward no evidence that the AHCA substantially assisted any constructive fraud by RC Management or Cobalt. Plaintiffs have produced no evidence that the

---

[22] Nor do Plaintiffs have any evidence that a vote was required, discussed, or conducted in connection with the Marriott Defendants' subsequent affiliation with Third Home.

AHCA provided RC Management or Cobalt any substantial assistance in gaining an advantage at

the expense of the Plaintiffs.  To be sure, Plaintiffs allege that by aiding and abetting other

defendants, MVW, MVCI, and L&C profited at Plaintiffs' expense, and that RC Management

and Cobalt should be made to account for the commissions, fees, and profits they earned at

Plaintiffs' expense.  Sixth Am. Compl. ¶ 112.  But Plaintiffs never allege, let alone have proved,

that the AHCA undertook any action to aid any of the Marriott Defendants in profiting at

Plaintiffs' expense.  Plaintiffs have no evidence that the AHCA had any control over the

structure of the affiliation such that it could funnel profits to the Marriott Defendants.  And the

AHCA did not require any member to participate in the MVCD Exchange Program, UMF 13

§ 7(a), so the AHCA could not have taken any action to guarantee that the Marriott Defendants

would receive profits from the Program.  The AHCA also insisted that the MOU preclude

Marriott from trading weeks into the Program.  *Id.* §§ 5, 6, 7(a) (discussing participation by

"individual Members" and not including or referencing developer-owned interests).  And later in

2014 the AHCA negotiated a $150,000 reduction in the annual management fee the Club pays

Marriott and obtained the right to terminate the management agreement, which it could not do

before, UMF 14 § 4, thus underscoring that the AHCA did nothing to aid the Marriott

Defendants in profiting at the expense of the Plaintiffs.

> D.    **Plaintiffs' aiding-and-abetting and conspiracy claims based on the Marriott
> Defendants' constructive fraud are barred by the statute of limitations.**

Finally, for reasons articulated in Section III.B., *supra*, the statute of limitations has run

on any secondary liability claims against the AHCA.  Plaintiffs should have known the basis for

their constructive-fraud claim, and thus their secondary liability claims, more than three years

before they asserted them in December 2016.  *See* Fourth Am. Compl. ¶¶ 99, 101–04, 107–08.

**V.      The AHCA did not proximately cause Plaintiffs' alleged damages.**

Plaintiffs must prove that the AHCA's conduct—whether breach of fiduciary duty or constructive fraud—was the proximate cause of their damages.  *Barnett*, 252 P.3d at 24 (constructive fraud requires proof of proximate causation).[23]  Proximate cause involves questions of causation in fact and legal causation.  *Heinrich v. Master Craft Engineering, Inc.*, 131 F. Supp. 3d 1137, 1147 (D. Colo. 2015); *Vititoe v. Rocky Mountain Pavement Maint., Inc.*, 412 P.3d 767, 777 (Colo. App. 2015).[24]  A plaintiff can establish causation in fact by showing "either that (1) but for the defendant's alleged [misconduct], the claimed injury would not have occurred, or (2) the defendant's alleged [misconduct] was a necessary component of a causal set that would have caused the injury."  *Heinrich*, 131 F. Supp. 3d at 1147.

Plaintiffs' remaining claims against the AHCA, both for breach of fiduciary duty and constructive fraud, are premised only on their allegations that the AHCA promised to hold a vote on the proposed affiliation but instead held a survey before approving the affiliation.  *See* Order at 21–22, 25.[25]  Fatally, Plaintiffs alleged in their initial complaint and first three amended complaints that the proximate cause of their damages was the affiliation itself.

In fact, Plaintiffs have alleged since December 31, 2015 when they filed their first

---

[23] *See also Mandelbaum v. Fiserv, Inc.*, 787 F. Supp. 2d 1226, 1240 (D. Colo. 2011) (A "claim for breach of fiduciary duty [requires] that a fiduciary duty existed, the defendant breached that duty, and the breach was the proximate cause of damages." (citation omitted)).

[24] Legal causation is not at issue here.  *Id.* (citations omitted).  *Vittoe* discusses proximate causation in the context of a negligence claim, but the substance of proximate causation is the same for fraud claims.  *See* Note 6, Colo. Civ. Jury Instr. 19:1.

[25] *See also id.* at 23 (holding that "because the Association's failure to enforce the restrictive covenants cannot have caused plaintiffs' damages," the breach-of-fiduciary-duty claim on that basis must be dismissed); *id.* at 25 (dismissing constructive-fraud claim to the extent "premised on a failure to disclose a conflict between the affiliation proposal and the governing documents" and "predicated on the failure to disclose the governing documents requirement of a vote").

complaint that the AHCA's failure to enforce certain provisions in the restrictive covenants and acceptance of the affiliation were the cause of their damages.[26]  Nowhere did Plaintiffs initially allege that the AHCA's supposed breach of its fiduciary duties by promising to hold a vote and failing to do so proximately caused their damages.  To be sure, Plaintiffs do so allege with regard to their constructive-fraud claims.  *See* Sixth Am. Compl. ¶¶ 99–100, 103.  But until March 10, 2017, when Plaintiffs added this claim, the only cause of Plaintiffs damages was conduct this Court concluded could not have proximately caused their damages.  *See* Order at 23.

Plaintiffs now attempt a bait-and-switch, contending instead that it is the failure to hold a vote on the affiliation that proximately caused their damages.  The failure to hold a vote cannot be the but-for cause of their damages when the Plaintiffs simultaneously contend that failing to enforce the restrictive covenants and allowing the affiliation was the but-for cause.  But even if the Court were to conclude that Plaintiffs sufficiently alleged that the failure to hold a vote proximately caused the "destruction of the value in their fractional units," Sixth Am. Compl. ¶¶ 94, 103, the facts prove otherwise.  The failure to hold a vote cannot have proximately caused Plaintiffs' damages because the AHCA was not required to hold a vote on the question of affiliation.  As this Court already recognized, the Declaration does not require a vote on this type of question.  Order at 25.[27]  Neither does the 2014 Acknowledgement and Joinder.  **Ex. X**, at 2. Neither does the 2014 MOU.  *See* UMF 13 § 3.  In fact, no majority vote could be binding because a majority vote cannot alter fee-simple interests.  Colo. Rev. Stat. § 38-33.3-217 (4.5).

---

[26] *See* (Original Compl.) ¶¶ 54–55, 57, attached as **Ex. Y**; Dkt. No. 5 (First Am. Compl.), ¶¶ 108–09, 111–13; Dkt. No. 40 (Second Am. Compl.) ¶¶ 70–71, 73–75; Dkt. No. 79 (Third Am. Compl.) ¶¶ 70–71, 73–75; Dkt. No. 109 (Fourth Am. Compl.) ¶¶ 83–84, 86–88; Dkt. No. 119 (Fifth Am. Compl.) ¶¶ 89–90, 92–94; Dkt. No. 250 (Sixth Am. Compl.) ¶¶ 89–90, 92–94.

[27] *See also see* Declaration ¶¶ 6.5, 7.1.1, 7.4, 8.6.3, 17.1, 17.2, 18.4, 18.7, and 22.3 (requiring votes under certain circumstances but none related in any way to a proposed affiliation).

Additionally, Plaintiffs cannot show that conducting a survey rather than a vote was the proximate cause of their alleged damages.  No Plaintiff has put forth evidence that the failure to hold a vote, separate from the affiliation, caused them any damages.  No one has proved that they suffered any monetary damages as a result of the failure to hold a vote.  And no one has proved that, but for the lack of a vote, their fractional interest would not have declined in value.

Notably, Plaintiffs have no evidence that even if a vote had occurred, the result of the vote would have been different than the survey results.  After the survey, no Plaintiff demanded a vote, even though the trade-a-week program did not go into effect until nearly a year later.  No one utilized the process set forth in the Declaration to demand that the Board investigate any grievance by the members concerning the survey.  *See* **Ex. A**, § 7.8.3.  Nor was any preliminary injunction sought in this case to halt the MOU until a vote were to be held.

For the foregoing reasons, judgment in the AHCA's favor is proper.

Respectfully submitted this 22nd day of October, 2018.

*/s/ Daniel F. Shea*
Daniel F. Shea
Jessica Black Livingston
Andrew C. Lillie
Andrew M. Nussbaum
HOGAN LOVELLS US LLP
1601 Wewatta Street, Suite 900
Denver, Colorado 80202
Telephone: (303) 899-7300
FAX: (303) 899-7333
E-mail: dan.shea@hoganlovells.com
E-mail:jessica.livingston@hoganlovells.com
E-mail:andrew.lillie@hoganlovells.com
E-mail:andrew.nussbaum@hoganlovells.com
*Attorneys for Defendant Aspen Highlands Condominium Association*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 22nd day of October, 2018, a true and accurate copy of the foregoing **ASPEN HIGHLANDS CONDOMINIUM ASSOCIATION'S MOTION FOR SUMMARY JUDGMENT** was filed and served via CM/ECF filing system upon following:

Matthew C. Ferguson, Esq.
The Matthew C. Ferguson Law Firm, P.C.
119 South Spring, Suite 201
Aspen, Colorado 81611

Michael J. Reiser, Esq.
Law Office of Michael J. Reiser
1475 N. Broadway, Suite 300
Walnut Creek, California 94596

Michael L. Schrag, Esq.
Linda Lam, Esq.
Gibbs Law Group LLP
505 14th Street, Suite 1110
Oakland, California 94612

Tyler R. Meade, Esq.
The Meade Firm P.C.
1816 Fifth Street
Berkeley, California 94710

Naomi G. Beer, Esq.
Greenberg Traurig, LLP
1200 17th Street, Suite 2400
Denver, Colorado 80202

Ian S. Marx, Esq.
Philip R. Sellinger, Esq.
Todd Schleifstein
Greenberg Traurig, LLP
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932

*/s/ Stephanie Rummery*