# EXHIBIT A

DECLARATION OF CONDOMINIUM

FOR

ASPEN HIGHLANDS CONDOMINIUMS

ASPEN HIGHLANDS VILLAGE

CITY OF ASPEN

PITKIN COUNTY

COLORADO

Declarations AHC 01102001 cln



450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
1 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

EXHIBIT "H"



450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
2 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

## TABLE OF CONTENTS

ARTICLE 1. IMPOSITION OF COVENANTS ........................................................................... 1
    Section 1.1    Purpose. ................................................................................................ 1
    Section 1.2    Residential Units. ................................................................................ 1
    Section 1.3    Commercial Units. .............................................................................. 1
    Section 1.4    Plan of Fractional Ownership. ............................................................. 1
    Section 1.5    Intention of Declarant. ......................................................................... 2
    Section 1.6    Development and Use. ......................................................................... 2
    Section 1.7    Mixed Use. ........................................................................................... 2
    Section 1.8    Submission of Property. ...................................................................... 2
    Section 1.9    Master Declaration. ............................................................................. 2
    Section 1.10    Covenants Running with the Land. .................................................... 3
ARTICLE 2. DEFINITIONS .................................................................................................... 3
    Section 2.1    "Allocated Interest". ............................................................................ 3
    Section 2.2    "Allocated Interest-Commercial". ...................................................... 3
    Section 2.3    "Allocated Interest-Deed Restricted Residential". ............................ 3
    Section 2.4    "Allocated Interest-General". ............................................................. 3
    Section 2.5    "Allocated Interest-Tourist Accommodation" .................................... 3
    Section 2.6    "Allocated Interest-Residential". ........................................................ 3
    Section 2.7    "Amenities". .......................................................................................... 3
    Section 2.8    "Amenities Association" ...................................................................... 4
    Section 2.9    "Aspen Highlands Village" .................................................................. 4
    Section 2.10    "Assessments" ...................................................................................... 4
    Section 2.11    "Association" ........................................................................................ 4
    Section 2.12    "Association Documents" .................................................................... 4
    Section 2.13    "Building(s)" ......................................................................................... 4
    Section 2.14    "Category" ............................................................................................ 4
    Section 2.15    "Class" .................................................................................................. 4
    Section 2.16    "Commercial Directors" ...................................................................... 4
    Section 2.17    "Commercial Owners" ........................................................................ 5
    Section 2.18    "Commercial Unit". .............................................................................. 5
    Section 2.19    "Common Elements". ........................................................................... 5
    Section 2.20    "Common Expense(s)" ......................................................................... 5
    Section 2.21    "Condominium Map" or "Map" ........................................................... 6
    Section 2.22    "Declarant". .......................................................................................... 6
    Section 2.23    "Declarant Control Period" .................................................................. 6
    Section 2.24    "Declaration". ....................................................................................... 6
    Section 2.25    "Deed Restricted Residential Directors" ............................................ 6
    Section 2.26    "Deed Restricted Residential Owners" ............................................... 6
    Section 2.27    "Deed Restricted Residential Unit" ..................................................... 6
    Section 2.28    "Director" ............................................................................................. 6
    Section 2.29    "District" .............................................................................................. 6
    Section 2.30    "Eligible Mortgagee" .......................................................................... 7
    Section 2.31    "Executive Board" ............................................................................... 7
    Section 2.32    "Expansion Property" .......................................................................... 7
    Section 2.33    "First Mortgage" .................................................................................. 7
    Section 2.34    "First Mortgagee" ............................................................................... 7
    Section 2.35    "Fractional Ownership Interest" or "Residence Interest". ................... 7



450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
3 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

| | | |
|---|---|---|
| Section 2.36 | "Fractional Ownership Plan," "Plan of Fractional Ownership" or "Plan" | 7 |
| Section 2.37 | "General Common Elements" | 7 |
| Section 2.38 | "Individual Air Space Unit" | 7 |
| 2.38.1 | "unfinished perimeter wall" | 7 |
| 2.38.2 | "unfinished perimeter ceiling" | 7 |
| 2.38.3 | "unfinished perimeter floor" | 7 |
| Section 2.39 | "Limited Common Elements" | 8 |
| Section 2.40 | "Management Agreement" | 8 |
| Section 2.41 | "Managing Agent" | 8 |
| Section 2.42 | "Master Association" | 9 |
| Section 2.43 | "Master Association Documents" | 9 |
| Section 2.44 | "Master Declaration" | 9 |
| Section 2.45 | "Maximum Rate" | 9 |
| Section 2.46 | "Mortgage" | 9 |
| Section 2.47 | "Mortgagee" | 9 |
| Section 2.48 | "Owner" | 9 |
| Section 2.49 | "Parking Association" | 9 |
| Section 2.50 | "Parking Association Documents" | 9 |
| Section 2.51 | "Parking Declaration" | 9 |
| Section 2.52 | "Parking Facility" | 9 |
| Section 2.53 | "Plan Assessment" or "Club Dues" | 10 |
| Section 2.54 | "Plan Member" | 10 |
| Section 2.55 | "Plan Unit" or "Residence" | 10 |
| Section 2.56 | "Plan Unit Furnishings" | 10 |
| Section 2.57 | "Plan Year" | 10 |
| Section 2.58 | "Property" | 10 |
| Section 2.59 | "PUD Plan" | 10 |
| Section 2.60 | "Reservation Procedures" | 10 |
| Section 2.61 | "Reserve Account" | 10 |
| Section 2.62 | "Residential Directors" | 10 |
| Section 2.63 | "Residential Owners" | 10 |
| Section 2.64 | "Residential Unit" | 10 |
| Section 2.65 | "Restricted Common Elements" | 10 |
| Section 2.66 | "Successor Declarant" | 10 |
| Section 2.67 | "Supplemental Declaration" | 11 |
| Section 2.68 | "Supplemental Map" | 11 |
| Section 2.69 | "Tourist Accommodation Directors" | 11 |
| Section 2.70 | "Tourist Accommodation Owners" | 11 |
| Section 2.71 | "Tourist Accommodation Unit" | 11 |
| Section 2.72 | "Unit" | 11 |
| Section 2.73 | "Use Periods" | 11 |
| Section 2.74 | "Village Core Plat" | 11 |
| ARTICLE 3. DIVISION OF PROJECT INTO CONDOMINIUM OWNERSHIP | | 11 |
| Section 3.1 | Division into Units. | 11 |
| Section 3.2 | Commercial Units. | 12 |
| Section 3.3 | Residential Units. | 13 |
| Section 3.4 | Delineation of Unit Boundaries. | 13 |
| Section 3.5 | Inseparability of Unit. | 13 |
| Section 3.6 | Nonpartitionability of Common Elements. | 14 |
| ARTICLE 4. CONDOMINIUM MAP | | 14 |
| Section 4.1 | Condominium Map. | 14 |

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
4 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

| | | |
|---|---|---|
| Section 4.2 | Amendment. | 15 |
| ARTICLE 5. OWNERS' PROPERTY RIGHTS IN COMMON ELEMENTS | | 15 |
| Section 5.1 | General Common Elements. | 15 |
| Section 5.2 | Limited Common Elements. | 15 |
| Section 5.3 | Parking. | 16 |
| 5.3.1 | Association Regulation. | 16 |
| 5.3.2 | Parking Documents. | 16 |
| Section 5.4 | Amenities. | 17 |
| Section 5.5 | Rights of Owners of Fractional Ownership Interests. | 18 |
| ARTICLE 6. MEMBERSHIP AND VOTING RIGHTS IN ASSOCIATION | | 18 |
| Section 6.1 | Association Membership. | 18 |
| Section 6.2 | Categories of Membership. | 18 |
| 6.2.1 | Tourist Accommodation Owners. | 18 |
| 6.2.2 | Deed Restricted Residential Owners. | 19 |
| 6.2.3 | Commercial Owners. | 19 |
| Section 6.3 | Voting Rights. | 19 |
| 6.3.1 | General Common Elements. | 19 |
| 6.3.2 | Limited Common Elements. | 19 |
| Section 6.4 | Voting of Fractional Ownership Interest. | 19 |
| Section 6.5 | Election of Directors. | 20 |
| Section 6.6 | Declarant Control. | 20 |
| Section 6.7 | Executive Board. | 20 |
| Section 6.8 | Fairness Standard. | 21 |
| Section 6.9 | Voting by Association Members. | 22 |
| Section 6.10 | Owner's and Association's Address for Notices. | 22 |
| ARTICLE 7. ASSOCIATION DUTIES | | 23 |
| Section 7.1 | Association Management Duties. | 23 |
| Section 7.2 | Reserve Account. | 24 |
| Section 7.3 | Owner's Negligence. | 24 |
| Section 7.4 | Delegation of Management and Maintenance Duties. | 25 |
| Section 7.5 | Acquiring and Disposing of Personal Property. | 25 |
| Section 7.6 | Cooperation with District, Master Association and Other Associations. | 25 |
| Section 7.7 | Issuance of Rules and Regulations. | 26 |
| Section 7.8 | Enforcement of Association Documents. | 26 |
| Section 7.9 | Identity of Executive Board and Managing Agent. | 27 |
| Section 7.10 | Implied Rights. | 27 |
| Section 7.11 | Books and Records of the Association. | 27 |
| Section 7.12 | Compliance with Liquor Laws. | 27 |
| Section 7.13 | LIMITATION OF LIABILITY OF ASSOCIATION. | 27 |
| Section 7.14 | Financial Statements. | 27 |
| Section 7.15 | Limitation on Power of Managing Agent. | 28 |
| ARTICLE 8. ASSESSMENTS | | 29 |
| Section 8.1 | Covenant of Personal Obligation of Assessments. | 29 |
| Section 8.2 | Purpose of Assessments. | 29 |
| Section 8.3 | Commencement of Assessments. | 30 |
| Section 8.4 | Amount of Total Annual Assessments. | 30 |
| Section 8.5 | Apportionment of Annual Assessments. | 30 |
| Section 8.6 | Annual Budget. | 31 |
| Section 8.7 | Special Assessments. | 33 |
| Section 8.8 | Due Dates for Assessment Payments. | 34 |
| Section 8.9 | Personal Assessments. | 34 |

iii

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
5 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

|  |  |  |
|---|---|---|
| Section 8.10 | Declarant's Obligation to Pay Assessments. | 34 |
| Section 8.11 | Default Assessments. | 35 |
| Section 8.12 | Lien for Assessments. | 35 |
| Section 8.13 | Effect of Nonpayment of Assessments. | 35 |
| Section 8.14 | Successor's Liability for Assessments. | 36 |
| Section 8.15 | Waiver of Homestead Exemption; Subordination of Association's Lien for Assessments. | 36 |
| Section 8.16 | Statement of Status of Assessments. | 37 |
| Section 8.17 | Liens. | 38 |
| Section 8.18 | Declarant's Obligations to the Project. | 38 |

ARTICLE 9. MAINTENANCE RESPONSIBILITY ........ 41
| Section 9.1 | Owner's Rights and Duties with Respect to Interiors. | 41 |
| Section 9.2 | Responsibility of the Owner. | 41 |
| Section 9.3 | Responsibility of the Association. | 41 |
| Section 9.4 | Owner's Failure to Maintain or Repair. | 41 |
| Section 9.5 | Owner's Responsibility for Limited Common Elements. | 42 |

ARTICLE 10. INSURANCE AND FIDELITY BONDS ........ 42
| Section 10.1 | General Insurance Provisions. | 42 |
| Section 10.2 | Cancellation. | 43 |
| Section 10.3 | Policy Provisions. | 43 |
| Section 10.4 | Insurance Proceeds. | 43 |
| Section 10.5 | Association Policies. | 44 |
| Section 10.6 | Insurer Obligation. | 44 |
| Section 10.7 | Repair and Replacement. | 44 |
| Section 10.8 | Common Expenses. | 44 |
| Section 10.9 | Fidelity Insurance. | 45 |
| Section 10.10 | Worker's Compensation Insurance. | 45 |
| Section 10.11 | Other Insurance. | 45 |
| Section 10.12 | Insurance Obtained by Owners. | 45 |

ARTICLE 11. CONVEYANCES AND TAXATION OF CONDOMINIUM UNITS ........ 46
| Section 11.1 | Contracts to Convey Entered into Prior to Recording of Condominium Map and Declaration. | 46 |
| Section 11.2 | Contracts to Convey and Conveyances Subsequent to Recording of Condominium Map and Declaration. | 46 |
| Section 11.3 | Conveyance Deemed to Describe an Undivided Interest in Common Elements. | 46 |
| Section 11.4 | Separate Tax Assessments. | 47 |

ARTICLE 12. MECHANICS' LIENS ........ 47
| Section 12.1 | Mechanics' Liens. | 47 |
| Section 12.2 | Enforcement by the Association. | 47 |

ARTICLE 13. USE RESTRICTIONS ........ 48
| Section 13.1 | Use of Units. | 48 |
| Section 13.2 | Commercial Uses. | 48 |
| Section 13.3 | Residential Uses. | 48 |
| Section 13.4 | Conveyance of Units. | 49 |
| Section 13.5 | Use of Common Elements. | 49 |
| Section 13.6 | Prohibition of Increases in Insurable Risks and Certain Activities. | 49 |
| Section 13.7 | Use of Commercial Unit as Health Club Facility. | 50 |

ARTICLE 14. EASEMENTS ........ 51
| Section 14.1 | Easement of Enjoyment. | 51 |
| Section 14.2 | Delegation of Use. | 51 |
| Section 14.3 | Access to Commercial Units. | 51 |

iv

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
6 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

| | | |
|---|---|---|
| Section 14.4 | Recorded Easements | 51 |
| Section 14.5 | Easements for Encroachments | 51 |
| Section 14.6 | Utility Easements | 52 |
| Section 14.7 | Reservation of Easements, Exceptions and Exclusions. | 52 |
| Section 14.8 | Emergency Access Easement | 52 |
| Section 14.9 | Maintenance Easement | 53 |
| Section 14.10 | Drainage Easement | 53 |
| Section 14.11 | Easements of Access for Repair, Maintenance, and Emergencies | 53 |
| Section 14.12 | Declarant's Rights Incident to Construction and Marketing. | 53 |
| Section 14.13 | Right of Declarant and Association to Own Units and to Use Common Elements. | 53 |
| Section 14.14 | Remodeling Easement | 54 |
| Section 14.15 | Reservation for Expansion. | 54 |
| Section 14.16 | Easement for Master Common Areas. | 54 |
| Section 14.17 | Easement for Access to Amenities. | 54 |
| Section 14.18 | Easements Deemed Created. | 54 |

ARTICLE 15. ASSOCIATION AS ATTORNEY-IN-FACT ... 55
| | | |
|---|---|---|
| Section 15.1 | Appointment. | 55 |
| Section 15.2 | General Authority. | 55 |

ARTICLE 16. DAMAGE OR DESTRUCTION ... 55
| | | |
|---|---|---|
| Section 16.1 | The Role of the Executive Board. | 55 |
| Section 16.2 | Estimate of Damages or Destruction. | 56 |
| Section 16.3 | Repair and Reconstruction. | 56 |
| Section 16.4 | Funds for Repair and Reconstruction. | 56 |
| Section 16.5 | Insurance Proceeds Sufficient to Repair. | 56 |
| Section 16.6 | Insurance Proceeds Insufficient to Repair; Special Assessment; Remedies for Failure to Pay Special Assessment. | 56 |
| Section 16.7 | Repairs. | 57 |
| Section 16.8 | Notice of Damage or Destruction. | 57 |

ARTICLE 17. OBSOLESCENCE ... 58
| | | |
|---|---|---|
| Section 17.1 | Adoption of Plan; Rights of Owners. | 58 |
| Section 17.2 | Sale of Obsolete Units. | 58 |

ARTICLE 18. CONDEMNATION ... 58
| | | |
|---|---|---|
| Section 18.1 | Consequences of Condemnation. | 58 |
| Section 18.2 | Complete Taking. | 58 |
| Section 18.3 | Partial Taking. | 59 |
| Section 18.4 | Reorganization. | 59 |
| Section 18.5 | Repair and Reconstruction. | 60 |
| Section 18.6 | Notice of Condemnation. | 60 |
| Section 18.7 | Limitations on Actions of Association. | 60 |

ARTICLE 19. OTHER ASSOCIATION MATTERS ... 60
| | | |
|---|---|---|
| Section 19.1 | Master Association Matters. | 60 |
| Section 19.2 | Enforcement of Master Association Documents. | 60 |
| Section 19.3 | Aspen Highlands Village Residential Amenities Association. | 61 |
| Section 19.4 | Aspen Highlands Village Parking and Loading Dock Facility Association. | 61 |
| Section 19.5 | Architectural Control. | 61 |
| Section 19.6 | General Reservation. | 62 |
| Section 19.7 | No Use of Trademark. | 62 |
| Section 19.8 | Limit on Timesharing. | 62 |
| Section 19.9 | Acknowledgments. | 62 |

ARTICLE 20. DECLARANT'S RIGHTS REGARDING TRANSFER ... 64

ARTICLE 21. PHASING, EXPANSION AND WITHDRAWAL .................................................. 65
    Section 21.1    Phasing. ............................................................................... 65
    Section 21.2    Reservation of Expansion and Withdrawal Rights. ............................ 65
    Section 21.3    Supplemental Declarations and Supplemental Maps. ......................... 65
    Section 21.4    Expansion of Definitions. ...................................................... 66
    Section 21.5    Declaration Operative on New Units. ......................................... 66
    Section 21.6    Effect of Expansion. ............................................................ 66
    Section 21.7    Termination of Expansion and Development Rights. .......................... 67
ARTICLE 22. MISCELLANEOUS .......................................................................... 67
    Section 22.1    Restriction on Declarant Powers. ............................................. 67
    Section 22.2    Term. ............................................................................... 67
    Section 22.3    Amendment. ...................................................................... 67
    Section 22.4    Unilateral Amendment Rights Reserved by Declarant. ...................... 68
    Section 22.5    Recording of Amendments. .................................................... 68
    Section 22.6    Enforcement. ..................................................................... 68
    Section 22.7    Severability. ...................................................................... 68
    Section 22.8    Conflict of Provisions. ......................................................... 69
    Section 22.9    Nonwaiver. ....................................................................... 69
    Section 22.10   Number and Gender. ........................................................... 69
    Section 22.11   Captions. ......................................................................... 69
    Section 22.12   Exhibits. ......................................................................... 69
ARTICLE 23. PLAN OF FRACTIONAL OWNERSHIP ....................................................... 69
    Section 23.1    Right to Submit Tourist Accommodation Units to a Plan of Fractional
                 Ownership. ....................................................................... 69
    Section 23.2    Definitions. ....................................................................... 70
         23.2.1   "Affiliation Agreement". ...................................................... 70
         23.2.2   "Allocation" or "Allocated Use Periods". ................................... 70
         23.2.3   "Fractional Ownership Interest," "Residence Interest" or "Membership" ... 70
         23.2.4   "Membership Calendar". ...................................................... 71
         23.2.5   "Membership Program" or "The Ritz-Carlton Club Membership Program" ...... 71
         23.2.6   "Membership Program Documents" ......................................... 71
         23.2.7   "Plan Assessment" or "Club Dues". .......................................... 71
         23.2.8   "Plan Member". ................................................................ 71
         23.2.9   "Plan Unit" or "Residence". ................................................... 71
         23.2.10 "Plan Unit Furnishings" ...................................................... 71
         23.2.11 "Plan Year". ................................................................... 71
         23.2.12 "Program Manager". ........................................................ 71
         23.2.13 "Reservation Procedures". ................................................... 71
         23.2.14 "Use Periods". ................................................................ 71
    Section 23.3    Submission of Tourist Accommodation Unit to the Plan of Fractional Ownership.
                 ............................................................................... 72
    Section 23.4    Conveyance by Purchaser. ..................................................... 72
    Section 23.5    Legal Description of a Fractional Ownership Interest. ....................... 72
    Section 23.6    Administration and Management. ............................................. 73
    Section 23.7    Membership Program. .......................................................... 73
    Section 23.8    Powers and Duties of the Tourist Accommodation Directors with Respect to
                 Fractional Ownership Interests. ............................................... 73
    Section 23.9    Plan Assessment. ............................................................... 74
    Section 23.10   Declarant Subsidy. ............................................................. 75
    Section 23.11   Acceptance; Enforcement; Indemnification. ................................. 76
    Section 23.12   Right of First Refusal to Purchase Fractional Ownership Interests. .......... 77

vi

Section 23.13   Cross Use Easements Pertaining to Fractional Ownership Interests.................. 77
    23.13.1 Cross Use Easement Rights.................................................................................... 77
    23.13.2 Expansion of Use Right Easement. ..................................................................... 78
    23.13.3 Reservation Procedures. ..................................................................................... 78
    23.13.4 Space Available Use Periods................................................................................ 79
    23.13.5 Rental. ................................................................................................................. 79
Section 23.14   Easement for Cleaning and Maintenance............................................................ 79
Section 23.15   Appointment of Directors as Agent for Service of Process. .............................. 80
ARTICLE 24. AGREEMENT TO PARTITION PROPERTY .................................................................. 80

**LIST OF EXHIBITS**

| | |
|---|---|
| EXHIBIT A | LEGAL DESCRIPTION OF PROPERTY |
| EXHIBIT B | ALLOCATED INTERESTS |
| EXHIBIT C | EXPANSION PROPERTY |
| EXHIBIT D | EASEMENTS, LICENSES AND OTHER TITLE MATTERS |
| EXHIBIT E | CITY DISCLOSURE STATEMENT |
| EXHIBIT F | THE RITZ-CARLTON CLUB MEMBERSHIP PROGRAM AFFILIATION AGREEMENT |
| EXHIBIT G | THE RITZ-CARLTON CLUB, ASPEN HIGHLANDS MEMBERSHIP CALENDAR |
| EXHIBIT H | UNIT OWNERSHIP |

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
8 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

## DECLARATION OF CONDOMINIUM

### FOR

### ASPEN HIGHLANDS CONDOMINIUMS

THIS DECLARATION OF CONDOMINIUM FOR ASPEN HIGHLANDS CONDOMINIUMS (this "Declaration") dated as of January 10, 2001, shall be effective upon recordation and is made by THE RITZ-CARLTON DEVELOPMENT COMPANY, INC., a Delaware corporation, and HINES HIGHLANDS LIMITED PARTNERSHIP, a Delaware limited partnership (each a "Declarant" and jointly sometimes referred to as "Declarant"). Declarant is the owner of certain real property in Pitkin County, Colorado, more particularly described collectively on Exhibit A attached and made part of this Declaration by this reference (the "Property"). Each Declarant hereby makes the following grants, submissions and declarations for the Property:

### ARTICLE 1.
### IMPOSITION OF COVENANTS

Section 1.1   Purpose.

The purpose of this Declaration is to create a mixed use condominium project (the "Project") pursuant to the Colorado Common Interest Ownership Act as set forth in Article 33.3, Title 38, Colorado Revised Statutes, as amended and supplemented from time to time (the "Act"), within the Buildings (as hereinafter defined) and other improvements located on the Property, which Project shall incorporate residential and commercial uses (that part of the Project to be used for residential purposes being referred to as the "Residential Project" and that part of the Project to be used for commercial purposes being referred to as the "Commercial Project") and, subject to the terms of Article 23 hereof, the creation of a fractional ownership regime (the "Plan of Fractional Ownership") that will allow the sale and ownership of undivided ownership interests ("Fractional Ownership Interests" as defined below in Article 23) in the Tourist Accommodation Units (hereinafter defined).

Section 1.2   Residential Units.

The Residential Project shall consist of Tourist Accommodation Units (collectively, the "Tourist Accommodation Project") and Deed Restricted Residential Units (hereinafter defined) (collectively, the "Deed Restricted Residential Project").

Section 1.3   Commercial Units.

The Commercial Project shall consist of Commercial Units.

Section 1.4   Plan of Fractional Ownership.

Declarant may commit the Tourist Accommodations Units to a Plan of Fractional Ownership. The Plan of Fractional Ownership will provide for the creation of undivided fee ownership interests (to be known as Residence Interests) in the Tourist Accommodation Units.

1

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
9 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

Section 6.5     Election of Directors.

During the Declarant Control Period, the Directors shall be appointed by the Declarant without regard to the Categories of Directors or the election thereof by certain Categories of members as described in this Section below. The initial Executive Board shall consist of six (6) Directors. The first annual meeting of the Owners shall be held within one year after the closing of the escrow for the first sale of a Plan Unit or within sixty days after conveyance of twenty-five percent (25%) of the Units to Owners other than Declarant, whichever occurs first. At the first annual meeting of Owners, and at all times thereafter during the Declarant Control Period, one (1) Director shall be elected by the Tourist Accommodation Owners, other than Declarant, and one (1) Director shall be elected by the combined vote of the Deed Restricted Residential Owners and the Commercial Owners, other than Declarant. The remaining Directors shall be as appointed by the Declarant. The Directors elected at the first annual meeting and thereafter during the Declarant Control Period, including those appointed by the Declarant, shall not be classified by Class or Category and any specific responsibilities of any group of Directors elected by a Class or Category of Owners shall be undertaken and discharged by the entire Executive Board, and the entire Executive Board shall be authorized to so act. It is hereby determined that, after the expiration of the Declarant Control Period, in order to protect the valid interests of the various Categories of Owners, each Category requires representation on the Executive Board and is hereby entitled to elect certain Directors thereto. After the expiration of the Declarant Control Period, the Executive Board shall consist of nine (9) Directors, of which the Category of Tourist Accommodation Owners shall be entitled to nominate and elect four (4), the Category of Deed Restricted Residential Owners shall be entitled to nominate and elect two (2), and the Class of Commercial Owners shall be entitled to nominate and elect three (3) Directors as follows: (i) Owners of Commercial Units in Building 4 and, if applicable, Building 2 shall be entitled collectively to nominate and elect one (1) Director; (ii) Owners of Commercial Units in Building 8 shall be entitled to nominate and elect one (1) Director; and (iii) Owners of Commercial Units in all Buildings that are subject to this Declaration shall be entitled to nominate and elect one (1) Director at large.

Section 6.6     Declarant Control.

Notwithstanding anything to the contrary provided for herein or in the bylaws of the Association, Declarant shall, during the Declarant Control Period, be entitled to appoint and remove the members of the Association's Executive Board and officers of the Association to the fullest extent currently permitted under the Act, except as otherwise specifically provided in this Declaration and the bylaws of the Association. The specific restrictions and procedures governing the exercise of Declarant's right to so appoint and remove Directors and officers shall be set out in the bylaws of the Association. Declarant may voluntarily relinquish such power evidenced by a notice executed by Declarant and recorded in the Office of the Clerk and Recorder for Pitkin County, Colorado but, in such event, Declarant may at its option require that specified actions of the Association or the Executive Board as described in the recorded notice, during the period Declarant would otherwise be entitled to appoint and remove Directors and officers, be approved by Declarant before they become effective. For purposes of this Declaration and bylaws of the Association, a Unit which is subdivided into Fractional Ownership Interests shall be deemed conveyed to an Owner other than Declarant for purposes of determining Declarant control only after conveyance of fifty-one percent (51%) of the Fractional Ownership Interests in such Unit.

Section 6.7     Executive Board.

During the Declarant Control Period, all members of the Executive Board shall be entitled to participate in all Association affairs without regard to the provisions of this Section and any specific responsibilities of any group of Directors elected by a Class or Category of Owners shall be undertaken and discharged by the entire Executive Board, and the entire Executive Board shall be authorized to so

20



act. After expiration of the Declarant Control Period, all members of the Executive Board shall be entitled to participate in Association affairs which affect the Project in its entirety, both the Residential Units and the Commercial Units, both the Residential Owners and the Commercial Owners, or the Common Expenses affecting both the Residential Units and the Commercial Units. Except as otherwise provided in this Declaration, the Tourist Accommodation Directors shall have the sole and exclusive authority to vote with respect to all matters which relate solely to (i) the Tourist Accommodation Units, or (ii) the Limited Common Elements-Tourist Accommodation. Except as otherwise provided in this Declaration, the Residential Directors shall have the sole and exclusive authority to vote with respect to all matters which relate to (i) the Deed Restricted Residential Units or both the Deed Restricted Residential Units and the Tourist Accommodation Units, or (ii) the Limited Common Elements-Residential or the Limited Common Elements-Deed Restricted Residential. Except as otherwise provided in this Declaration, the Commercial Directors shall have the sole and exclusive authority to vote with respect to all matters that relate solely to the Commercial Units and the Limited Common Elements-Commercial. Notwithstanding the foregoing, amendments to the rules and regulations of the Association shall require the majority vote of the Executive Board and the majority vote of each Class of Directors.

The provisions of this Section 6.7 above describe the intent of this Declaration regarding allocation of decision-making regarding various issues that may arise under this Declaration. In the event of a bona fide dispute among members of the Executive Board as to whether a matter relates solely to an individual Class or its Units or Limited Common Elements, or, if applicable, the Category of Tourist Accommodation Units, the Directors shall use their good faith, reasonable judgment in determining such matter and the determination as to whether a matter should be for the independent consideration of a single Class of Directors or, in the case of Tourist Accommodation Directors, a Category, and not for consideration of the entire Executive Board, shall require the affirmative vote of a majority of each Class of Directors.

If (a) a vote by the Executive Board to determine whether a matter should be for the consideration of the entire Executive Board results in an affirmative vote of a majority of one Class of Directors, but fails to result in the affirmative vote of least a majority of both Classes of Directors, and (b) a majority of one Class of Directors vote within fifteen (15) days thereafter to submit such issue to arbitration, then the issue of whether a matter should be considered by the entire Executive Board shall be submitted to binding arbitration in Pitkin County, Colorado, in accordance with the rules of the American Arbitration Association then in effect. The decision of the arbitration shall be final and binding on the parties and judgment may be entered thereon in a court having jurisdiction over the Association. The arbitrator shall be appointed by the Executive Board, which appointment shall require the affirmative vote of a majority of each Class of Directors. In the event the Executive Board is unable to do so within ten (10) days of submitting this matter to arbitration, the arbitrator shall be designated by the chief judge in the District Court of Pitkin County, Colorado. The cost and expense of the arbitrator shall be deemed an expense of the Association.

Notwithstanding any other provision in this Declaration to the contrary, in the event of an emergency requiring immediate action by the Executive Board, the entire Executive Board shall participate in the decision to take such action as is necessary to advance the interest of the Project as a whole pending a determination as to whether the matter should be independently considered by a single Class or if applicable, a Category, of Directors, at which time such Directors as are determined to be entitled to participate in the decision shall resolve the issue.

Section 6.8     Fairness Standard.

The Executive Board, the officers of the Association and the Association shall have the duty to represent the interest of the Tourist Accommodation Owners, the Deed Restricted Residential Owners,

21

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
29 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY Cl

and the Commercial Owners in a fair and just manner on all matters that may affect any or all Categories of Owners. In upholding their duties, the Executive Board, the officers and the Association shall be held in their decisions, including, without limitation the determination of whether a matter should be for the independent consideration of the Commercial Directors or the Residential Directors, or both, as described in Section 6.7 above, to the standards of good faith and reasonableness with respect to such matters, taking into account the effect, if any, of the matter on the Project as a whole.

Section 6.9    Voting by Association Members.

To the extent a matter is required by this Declaration, the bylaws of the Association or the Act to be submitted to the vote of the members of the Association, all members shall be entitled to participate in the vote on such matters unless a majority of the voting Directors of the Executive Board, including the affirmative vote of a majority of the Commercial Directors and a majority of the Residential Directors, determine that a particular matter affects exclusively either the membership Class of Residential Owners (including the Owners of Fractional Ownership Interests therein, if any) or Commercial Owners, in which case the Executive Board may give notice of a meeting of either the Residential Owners (including the Owners of Fractional Ownership Interests therein, if any) or the Commercial Owners and conduct a vote on the matter affecting only that Class in order to protect the legitimate, valid interest of such Class.

Section 6.10    Owner's and Association's Address for Notices.

All Owners of each Unit or Fractional Ownership Interest shall have one and the same mailing address to be registered with the Association and used by the Association or other Owners for notices, demands and all other communications regarding Association matters. The Owner or Owners of a Unit or Fractional Ownership Interest shall furnish such address to the Secretary of the Association within five (5) days after transfer of title to the Unit or Fractional Ownership Interest to such Owner or Owners. Such registration shall be in written form and signed by all of the Owners of the Unit or Fractional Ownership Interest or by such persons as are authorized by law to represent the interests of all Owners of the Unit or Fractional Ownership Interest. Notwithstanding the foregoing, the Association shall be entitled to rely upon any such registration or other notice of a change in address of the Owners of the Unit or Fractional Ownership Interest which is signed by less than all of the Owners of such Unit or Fractional Ownership Interest.

If no address is registered or if all of the Owners cannot agree, then the address set forth in the deed to the Unit or Fractional Ownership Interest shall be deemed their registered address until another registered address is furnished as required under this Section.

Any notice delivered to a First Mortgagee in accordance with the terms of this Declaration shall be sent to the address for such party specified in the First Mortgage unless the First Mortgagee notifies the Association in writing of a different address.

All notices and demands intended to be served upon the Executive Board shall be sent to the following address or such other address as the Executive Board may designate from time to time by notice to all of the Owners:

Executive Board
Aspen Highlands Condominium Association, Inc.
c/o The Ritz-Carlton Club
Attention: Director of Operations
6649 Westwood Boulevard, Suite 500
Orlando, Florida 32821

22



With a copy to:
Hines Highlands Limited Partnership
426 East Main Street
Aspen, Colorado 81611

All notices given in accordance with this Section shall be sent: (a) by personal delivery, which shall be effective upon receipt; (b) by overnight courier service, which shall be effective one (1) business day following timely deposit with the courier service; or (c) regular, registered or certified mail, postage prepaid, which shall be effective three (3) days after deposit in the U.S. mail.

Unless otherwise provided in writing by the Association or the Managing Agent, all bills for common utility services shall be sent to the Executive Board at the address designated in this Section.

## ARTICLE 7.
## ASSOCIATION DUTIES

Section 7.1      Association Management Duties.

7.1.1     Subject to the rights and obligations of Declarant and other Owners as set forth in this Declaration, the Association through the Executive Board shall be responsible for the administration and operation of the Project, for the exclusive management, control, maintenance, repair, replacement and improvement of the General Common Elements (including facilities, furnishings and equipment related thereto), and shall keep the same in good, clean, attractive and sanitary condition, order and repair. The expenses, costs and fees of such management, operation, maintenance and repair by the Association shall be part of the Assessments, and, subject to the budget approval procedures of Section 8.6 below, prior approval of the Owners shall not be required in order for the Association to pay any such expenses, costs and fees. The Executive Board, with the approval of a majority of Commercial Directors and a majority of Residential Directors, and with the approval of the Owners representing a majority of the total votes entitled to be cast on Association matters, including a majority of the total votes allocated to the Residential Owners and a majority of the total votes allocated to the Commercial Owners at a meeting of the Owners called for that purpose, shall have the authority to lease or license any General Common Elements to others for all purposes permitted in this Declaration and by applicable law; provided, however, that any such lease or license shall require the lessee or licensee to pay all costs and expenses, including costs of maintenance, repair and replacement, resulting from its use of such General Common Elements.

7.1.2     The Residential Directors, on behalf of the Residential Owners, shall be responsible for the exclusive management, control, maintenance, repair, replacement and improvement of the Limited Common Elements-Residential and the Limited Common Elements-Deed Restricted Residential. The Tourist Accommodation Directors, on behalf of the Tourist Accommodation Owners, shall be responsible for the exclusive management, control, maintenance, repair, replacement and improvement of the Limited Common Elements-Tourist Accommodation. The expenses, costs and fees of such management, operation, maintenance and repair (i) of the Limited Common Elements-Residential shall be part of the Assessments to be paid by the Residential Owners for such Limited Common Elements-Residential, (ii) of the Limited Common Elements-Tourist Accommodation shall be part of the Assessments to be paid by the Tourist Accommodation Owners for such Limited Common Elements-Tourist Accommodation, and (iii) of the Limited Common Elements-Deed Restricted Residential shall be part of the Assessments to be paid by the Deed Restricted Residential Owners for such Limited Common Elements-Deed Restricted Residential; and, subject to the budget approval procedures of Section 8.6

23

below, prior approval of the applicable Category of Owners shall not be required in order for the Association to pay any such expenses, costs and fees.

For all purposes permitted in this Declaration and by applicable law, the Residential Directors shall have the authority to lease or license any Limited Common Elements-Residential, the Deed Restricted Residential Directors shall have the authority to lease or license any Limited Common Elements-Deed Restricted Residential, and the Tourist Accommodation Directors shall have the authority to lease or license any Limited Common Elements-Tourist Accommodation. Any lease or license granted in accordance with this sub-section shall require the lessee or licensee to pay all costs and expenses, including costs of maintenance, repair and replacement, resulting from its use of such Limited Common Elements.

7.1.3    The Commercial Directors, on behalf of the Commercial Owners, shall be responsible for the exclusive management, control, maintenance, repair, replacement and improvement of the Limited Common Elements-Commercial. The expenses, costs and fees of such management, operation, maintenance and repair of the Limited Common Elements-Commercial shall be part of the Assessments to be paid by the Commercial Owners for such Limited Common Elements-Commercial and, subject to the budget approval procedures of Section 8.6 below, prior approval of the Commercial Owners shall not be required in order for the Association to pay any such expenses, costs and fees. The Commercial Directors, with the approval of the Commercial Owners representing a majority of the total votes entitled to be cast on Association matters or, if such Limited Common Element is appurtenant to one or more, but fewer than all the Commercial Units, the approval of the Commercial Owners to which such Limited Common Element is appurtenant, shall have the authority to lease or license any Limited Common Elements-Commercial to others for all purposes permitted in this Declaration and by applicable law; provided, however, that any such lease or license shall require the lessee or licensee to pay all costs and expenses, including costs of maintenance, repair and replacement, resulting from its use of such Limited Common Elements.

Section 7.2    Reserve Account.

The Association shall establish and maintain, as part of its budget and out of the installments of the annual Assessments, adequate reserve accounts for maintenance, repair or replacement of those Common Elements that must be replaced on a periodic basis, the reserve funds to be designated for the use of either the General Common Elements, Limited Common Elements-Residential, Limited Common Elements-Tourist Accommodation, Limited Common Elements-Deed Restricted Residential or Limited Common Elements-Commercial and segregated by account in these categories (collectively, the "Reserve Account").

Section 7.3    Owner's Negligence.

Subject to the terms of Section 9.4 hereof, in the event that the need for maintenance, repair or replacement of all or any portion of the Common Elements is due to the grossly negligent, reckless or willful act or omission of an Owner, any member of an Owner's family, or an Owner's guests, invitees or tenants, then the expenses incurred by the Association for such maintenance, repair or replacement shall be a personal obligation of such Owner. To the extent that the area in need of maintenance, repair or replacement is due to the negligent act or omission of an Owner, any member of an Owner's family, or an Owner's guests, invitees or tenants, then such Owner shall be liable to the Association for the amount of any applicable insurance deductible(s) and for any amounts in excess of insurance proceeds; provided, however, if such area is not covered by insurance the expenses incurred by the Association for such maintenance, repair or replacement shall be a personal obligation of such Owner. If the Owner fails to repay any applicable expenses incurred by the Association within seven (7) days after notice to the Owner

24

of the amount owed, then the failure to so repay shall be a default by the Owner under the provisions of this Section, and such expenses shall automatically become a default Assessment determined and levied against such Owner's Unit or Fractional Ownership Interest, enforceable by the Association in accordance with Section 8.11, Section 8.12 and Section 8.13 below.

Section 7.4    Delegation of Management and Maintenance Duties.

The Executive Board, with the approval of a majority of the Commercial Directors and a majority of the Residential Directors, may delegate all or any part of its powers and duties to one or more Managing Agents, including Declarant or affiliates of Declarant or either of them; provided, however, that if a Plan of Fractional Ownership has been created with respect to the Tourist Accommodation Units, the Executive Board shall designate a Managing Agent as provided in this Section, and the Management Agreement for such Managing Agent shall allow for either party to terminate, for cause, upon sixty (60) days' notice, or as required by applicable law. A Management Agreement entered into by the Executive Board may only be terminated by the Executive Board by a majority vote thereof, including the approval of a majority of the Commercial Directors and a majority of the Residential Directors and a vote of Owners representing sixty percent (60%) or more of the total number of votes entitled to be cast on Association matters. Notwithstanding the delegation by the Executive Board to a Managing Agent, the Executive Board shall not be relieved of its responsibilities under this Declaration. Any Management Agreement entered into by the Executive Board shall require the Managing Agent to maintain garage keeper's insurance for the benefit of the Tourist Accommodation Owners as a Limited Common Expense-Tourist Accommodation to the extent such Managing Agent provides parking valet services to the Tourist Accommodation Owners.

Section 7.5    Acquiring and Disposing of Personal Property.

The Association may acquire, own and hold for the use and benefit of all Owners tangible and intangible personal property, including without limitation, membership rights, services and benefits for the use, enjoyment security, comfort and convenience of Owners and any Class or Category thereof and may dispose of the same by sale or otherwise, and the beneficial interest in any such property shall be deemed to be owned by the Owners in the same undivided proportion as their respective undivided interests in the Common Elements. Such interests shall not be transferable except with the transfer of a Unit or Fractional Ownership Interest. A conveyance of a Unit or Fractional Ownership Interest shall transfer ownership of the transferor's beneficial interest in such personal property without any reference thereto. Each Owner may use such personal property in accordance with the purposes for which it is intended, without hindering or encroaching upon the lawful rights of other Owners. The transfer of title to a Unit or Fractional Ownership Interest under foreclosure shall entitle the purchaser to the interest in such personal property associated with the foreclosed Unit or Fractional Ownership Interest.

Section 7.6    Cooperation with District, Master Association and Other Associations.

The Association may contract or cooperate with the District, the Master Association or with other homeowners' associations or entities within Aspen Highlands Village as convenient or necessary to provide services and privileges, such as access to recreational facilities in Aspen Highlands Village, and to fairly allocate costs among the parties utilizing such services and privileges which may be administered by the Association or such other organizations, for the benefit of Owners and their family members, guests, tenants and invitees. The costs associated with such efforts by the Association (to the extent not chargeable to other organizations) shall be a General Common Expense if for the benefit of all Owners or shall be a Limited Common Expense if for the benefit of one or more but less than all Owners.

25

Section 7.7   Issuance of Rules and Regulations.

The Executive Board may, by a majority of the voting Directors, including the approval of a majority of each Class of Directors consistent with Section 6.7 above, make and amend reasonable rules and regulations governing the use and rental of the Units and the use and operation of the Common Elements. Notwithstanding the foregoing, any such rules and regulations shall not be inconsistent with the terms of this Declaration, including, but not limited to Article 13. In addition, such rules and regulations shall, when applied to each of the Units considering the use of such Unit, be equitable and reasonable as applied to the Unit with respect to the use thereof. After the adoption of the initial rules and regulations, which may be approved by the Executive Board with the consent of the Declarant prior to the conveyance of the first Unit or Fractional Ownership Interest in the Project, the Executive Board shall provide thirty (30) days written notice prior to the adoption or amendment of any rules and regulations and provide for a reasonable opportunity for Owners to comment at a meeting of the Executive Board on the proposed adoption or amendment of any rules and regulations.

Section 7.8   Enforcement of Association Documents.

7.8.1   This Declaration and the bylaws of the Association constitute a general scheme benefiting each Unit and the Property as a whole and may be enforced by Declarant, the Association or an aggrieved Owner. A violation of any of the provisions of this Declaration causes irreparable damage to the Property. Therefore, subject to the terms and conditions of this Section 7.8 and except as otherwise expressly provided elsewhere in this Declaration, Declarant, the Association and any aggrieved Owner may prosecute a proceeding at law or in equity against anyone violating or attempting to violate the provisions of this Declaration, including, without limitation, an action for a temporary restraining order, preliminary injunction and permanent injunction.

7.8.2   The Association may recover from anyone violating or attempting to violate any provision of this Declaration reasonable attorneys' fees and other legal costs incurred by the Association in successfully enforcing the provision, regardless of whether suit is initiated. If such person is an Owner, the amount of the fees and costs constitute a lien against the Owner's Unit or Fractional Ownership Interest which may be foreclosed in accordance with Section 8.13. In addition, if any Owner fails to comply with this Declaration, the bylaws or the rules and regulations of the Association, the Association may (i) temporarily suspend the Owner's right to use or enjoy the Common Elements, and (ii) impose other appropriate measures; provided, however, that before imposing any of those measures (other than late charges, interest and reasonable collection costs relating to delinquent payments), the Executive Board will promulgate rules and regulations relating to those measures including provisions affording a defaulting Owner notice of the claimed default and an opportunity to be heard by the Executive Board prior to the imposition of the disciplinary measure.

7.8.3   Before an aggrieved Owner may prosecute any proceeding at law or in equity enforcing the provisions of this Declaration or the bylaws of the Association or seeking other relief relating to a violation or attempted violation of the provisions of this Declaration or the bylaws of the Association, the Owner will first give written notice to the Executive Board specifying the violation or attempted violation of the provisions of this Declaration or the bylaws, the facts and circumstances surrounding the violation, and the name of the person alleged to have violated or attempted to violate the provisions of this Declaration or the bylaws. The Executive Board may initiate a proceeding in law or in equity to enforce the provisions of this Declaration or the bylaws of the Association, to prevent a violation or to obtain damages for damage to the Common Elements resulting from the violation, or may otherwise enforce the provisions of this Declaration. The aggrieved Owner may exercise any of its rights under Section 7.8.1 if (i) the violation or attempted violation results or would result in direct and immediate physical damage to the Owner's Unit, or (ii) the Association fails to enforce or cause enforcement of the

26


450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
34 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

which budget may take into account any payments to be received from others on account of use of the
Amenities; and, (c) the Commercial Directors shall submit to the Executive Board a proposed budget for
the Limited Common Elements-Commercial (the "LCEC Budget"). The Executive Board as a whole
shall formulate the remainder of the budget pertaining to the General Common Elements (the "GCE
Budget"). The LCER Budget, LCEDR Budget, LCETA, and the GCE Budget, shall within thirty (30)
days after the adoption thereof be delivered by the Executive Board to the Residential Owners, as
applicable, and the LCEC Budget, together with the GCE Budget, shall on the same date be delivered by
the Executive Board to the Commercial Owners.

If any proposed budget does not exceed 120 percent of the budget for the preceding year, then at
the meeting set pursuant to sub-section 8.6.1: (a) unless sixty-seven percent (67%) of the Residential
Owners reject the LCER Budget (minus the LCETA and LCEDR Budgets), such proposed LCER Budget
is ratified, whether or not a quorum is present; (b) unless sixty-seven percent (67%) of the Tourist
Accommodation Owners reject the LCETA Budget, such proposed LCETA Budget is ratified, whether or
not a quorum is present; (c) unless sixty-seven percent (67%) of the Deed Restricted Residential Owners
reject the LCEDR Budget, such proposed LCEDR Budget is ratified, whether or not a quorum is present;
(d) unless sixty-seven percent (67%) of the Commercial Owners reject the LCEC Budget, such proposed
LCEC Budget is ratified, whether or not a quorum is present; and (e) unless sixty-seven percent (67%) of
each Class of the Residential Owners and the Commercial Owners reject the GCE Budget, such proposed
GCE Budget is ratified, whether or not a quorum is present.

If the proposed budget exceeds 120 percent of the budget for the preceding year, then at the
meeting set pursuant to sub-section 8.6.1: (a) if a majority of the Residential Owners present in person or
by proxy at such meeting other than Declarant, and Declarant, so long as Declarant owns any Residential
Unit or Fractional Ownership Interest, approve the LCER Budget (minus the LCETA and LCEDR
Budgets), such proposed LCER Budget is ratified, whether or not a quorum is present; (b) if a majority of
the Tourist Accommodation Owners present in person or by proxy at such meeting other than Declarant,
and Declarant, so long as Declarant owns any Tourist Accommodation Unit or Fractional Ownership
Interest, approve the LCETA Budget, such proposed LCETA Budget is ratified, whether or not a quorum
is present; (c) if a majority of the Deed Restricted Residential Owners present in person or by proxy at
such meeting other than Declarant, and Declarant, so long as Declarant owns any Deed Restricted
Residential Unit, approve the LCEDR Budget, such proposed LCEDR Budget is ratified, whether or not a
quorum is present; (d) if a majority of the Commercial Owners present in person or by proxy at such
meeting other than Declarant, and Declarant, so long as Declarant owns any Commercial Unit, approve
the LCEC Budget, such proposed LCEC Budget is ratified, whether or not a quorum is present; and (e) if
a majority of each Class of the Residential Owners and the Commercial Owners present in person or by
proxy at such meeting other than Declarant, and Declarant, so long as Declarant owns any Unit or
Fractional Ownership Interest, approve the GCE Budget, such proposed GCE Budget is ratified, whether
or not a quorum is present.

In the event the GCE Budget is rejected by the Owners in the foregoing manner, the GCE Budget
last ratified must be continued until such time as the Owners ratify a subsequent GCE Budget proposed
by the Executive Board. In the event either the LCER Budget, LCETA Budget, LCEDR Budget or the
LCEC Budget is rejected by the respective Class or Category of Owners, the respective budget last
ratified by the respective Class or Category of Owners must be continued until such Class or Category of
Owners ratifies a subsequent LCER, LCETA Budget, LCEDR Budget and/or LCEC Budget proposed by
the Executive Board.

8.6.3   The Executive Board shall adopt budgets and, if required by law or by the
Association Documents, submit the budgets to a vote of the Owners as provided herein no less frequently
than annually. The Executive Board shall levy and assess the Association's annual Assessments in



450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
40 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

accordance with the annual budgets. The annual budget for any applicable fiscal year subsequent to the initial budget shall not exceed 120 percent of the budget for the preceding fiscal year, without the consent of a majority of Owners other than the Declarant as provided in subsection 8.6.2 above.

8.6.4 Notwithstanding any provision of this Section 8.6 to the contrary, the Executive Board may, by unanimous vote of its members unless the Owners holding sixty-seven percent (67%) of the votes in each Category of Owner reject such action, simplify the budgeting procedures provided in 8.6.2.

Section 8.7    Special Assessments.

In addition to the annual Assessments authorized above, the Executive Board may at any time and from time to time determine, levy, assess and collect in any fiscal year (without the vote of the members of the Association, except as provided in the Act and in this Section below) a special Assessment applicable to that particular fiscal year (and for any such longer period as the Executive Board may determine) against all of the Owners with respect to the General Common Elements or one or more of the Classes or Categories of Owners with respect to their respective Limited Common Elements for the purpose of defraying, in whole or in part, the unbudgeted costs, fees and expenses of any construction, reconstruction, repair, demolishing, replacement, renovation or maintenance of the Project or any facilities located on the Project, specifically including any fixtures and personal property related to it. Any amounts determined, levied and assessed in connection with the General Common Elements pursuant to this Declaration shall be assessed by a majority of the voting Directors of the Executive Board, including the approval of a majority of Residential Directors and a majority of Commercial Directors, to the Units in proportion to the respective Allocated Interest-General of the Units; provided, however, that any extraordinary insurance costs incurred as a result of the value of a particular Owner's Unit or the actions of a particular Owner (or his agents, servants, guests, tenants or invitees) shall be borne by that Owner. Any amounts determined, levied and assessed in connection with either the Limited Common Elements-Residential, the Limited Common Elements-Tourist Accommodation, the Limited Common Elements-Deed Restricted Residential or the Limited Common Elements-Commercial pursuant to this Declaration shall be assessed by the Directors of the relevant Class or Category of Owners to such Class or Category of Owners in proportion to the Allocated Interest applicable to such Class or Category; provided, however, that any extraordinary insurance costs incurred as a result of the value of a particular Owner's Unit or the actions of a particular Owner (or his agents, servants, guests, tenants or invitees) shall be borne by that Owner. Special Assessments shall be based on a budget adopted in accordance with Section 8.6 provided that, if necessary, the Association may adopt a new budget pursuant to Section 8.6 prior to levying a special Assessment. Such special Assessment(s) shall be due and payable as determined by the Executive Board.

Notwithstanding any other provision contained in this Section 8.7, special Assessments shall not, in the aggregate, exceed five percent (5%) of the annual budget for the applicable fiscal year (other than a special Assessment to restore or rebuild because of damage or destruction to a Unit), or ten percent (10%) of the annual budget for the applicable fiscal year if the special Assessment is for the repair or rebuilding of a Unit or Units, unless:

8.7.1 the amount determined, levied and assessed in connection with the General Common Elements pursuant to this Declaration shall be assessed by a majority of the voting Directors of the Executive Board with the approval of (i) a majority of Residential Directors and a majority of Commercial Directors, and (ii) a majority of Residential Owners other than Declarant and a majority of Commercial Owners other than Declarant, to the Units in proportion to the respective Allocated Interests-General of the Units; or

33

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
41 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

release of such lien. In the event that the Owner of the Unit on which the labor was performed or materials furnished refuses or fails to so indemnify within seven (7) days after the Association shall have given notice to such Owner of the total amount of the claim, or any portions thereof from time to time, then the failure to so indemnify shall be a default by such Owner under the provisions of this Section 12.2, and such amount to be indemnified shall automatically become a default Assessment determined and levied against such Unit, and enforceable by the Association in accordance with Sections 8.11, 8.12 and 8.13 above.

## ARTICLE 13.
## USE RESTRICTIONS

Section 13.1   Use of Units.

Residential uses and commercial uses are contemplated within the Project, and any functions, activities and uses permitted under any zoning or other laws, rules or regulations applicable to Aspen Highlands Village are expressly allowed, subject to the restrictions set forth in Section 13.2 pertaining to the Commercial Units and Section 13.3 pertaining to the Residential Units. No rules and regulations relating to the Project shall be adopted which unfairly discriminate against any use permitted within either the Residential Units or the Commercial Units. All Owners will be subject to the rules and regulations of the Association. The Directors representing each Class or Category may adopt rules applicable to such respective Class or Category that are more restrictive than those that are adopted by the Executive Board as a whole.

Section 13.2   Commercial Uses.

Commercial uses permitted within the Project are limited to those compatible with a world class, five star resort facility. Among the uses permitted under Section 13.1, are (i) ski and snowboard sales and rental shops, and (ii) restaurant/bars (including outdoor decks associated therewith). The Executive Board may, with the approval of a majority of each Class of Directors, regulate commercial uses by rules and regulations governing specific uses, operating hours, music amplification, lighting, noise, heat, vibration, odors and other matters that might cause unreasonable disturbance for occupants of the Residential Units. All Commercial Units shall be used only for the uses as specified within the PUD Plan, and in conformity with all other zoning laws, ordinances and regulations. Owners of Commercial Units may rent or lease such Units to others for these purposes. Commercial Units may be used by Declarant as a Commercial Project sales office, Commercial Units management office, rental management office, storage facility and/or such other uses as may be permitted under the Act. Amendments to rules and regulations governing commercial uses shall require the approval of a majority of the Executive Board and a majority of both the Residential Directors and the Commercial Directors.

Section 13.3   Residential Uses.

All Residential Units shall be used for dwelling and lodging purposes only, in conformity with all zoning laws, ordinances and regulations. Owners of Residential Units may rent or lease such Units to others, on a long term or short term basis, for these purposes and may use the Residential Units for home occupations which are permitted by applicable zoning codes provided use for home occupations is occasional and does not result in additional vehicular or pedestrian traffic. Notwithstanding the foregoing, Residential Units may be used by Declarant as a Residential Project sales office, Residential Units management office, rental management office, storage facility and/or such other uses as may be permitted under the Act. Amendments to rules and regulations governing residential uses shall require the approval of a majority of the Executive Board and a majority of both the Residential Directors and the Commercial Directors.

48

### ARTICLE 17.
### OBSOLESCENCE

Section 17.1    Adoption of Plan; Rights of Owners.

The Owners representing sixty-seven percent (67%) or more of the total number of votes entitled to be cast on Association matters, including a majority of the total votes allocated to the Residential Owners and a majority of the total votes allocated to the Commercial Owners, may agree that the Project is obsolete and adopt a written plan for the renewal and reconstruction thereof. Written notice of the adoption of such a plan shall be given to all Owners and a copy of such plan shall be recorded in the Office of the Clerk and Recorder of Pitkin County, Colorado, and the expense of renewal and reconstruction shall be payable by all of the Owners as a Common Expense

Section 17.2    Sale of Obsolete Units.

The Owners representing sixty-seven percent (67%) or more of the total number of votes entitled to be cast on Association matters, including a majority of the total votes allocated to the Residential Owners and a majority of the total votes allocated to the Commercial Owners, may agree that the Units are obsolete and that the Project should be sold. In such instance, the Association shall immediately record in the Office of the Clerk and Recorder of Pitkin County, Colorado, a notice setting forth such fact or facts, and upon the recording of such notice by the Association, the Project shall be sold by the Association, as attorney-in-fact for all of the Owners, free and clear of the provisions contained in this Declaration, the Condominium Map and the articles of incorporation and bylaws of the Association. Unless otherwise agreed in writing by all the Owners, the sale proceeds (and any insurance proceeds under Article 16 above) shall be apportioned among the Owners in proportion to each Owner's Allocated Interest in the Common Elements, and such apportioned proceeds shall be paid into separate accounts, each such account representing one Unit or Fractional Ownership Interest, as the case may be. Each such account shall be in the name of the Association, and shall be further identified by the Unit designation and the name of the Owner and designated as an agency account. From each separate account the Association, as attorney-in-fact, shall use and disburse the total amount of such accounts, without contribution from one account to another, for the same purposes and in the same order as is provided in Sections 16.6.1 through 16.6.5 above.

### ARTICLE 18.
### CONDEMNATION

Section 18.1    Consequences of Condemnation.

If, at any time or times during the continuance of the Project pursuant to this Declaration, all or any part of the Project shall be taken or condemned by any public authority or sold or otherwise disposed of in lieu or in avoidance of condemnation, then all compensation, damages or other proceeds of condemnation, the sum of which is referred to as the "condemnation award" below, shall be payable to the Association, and the provisions of this Article 18 shall apply.

Section 18.2    Complete Taking.

In the event that the entire Project is taken or condemned or sold or otherwise disposed of in lieu or in avoidance of condemnation, the condominium ownership pursuant to this Declaration shall terminate, subject to the provisions of Section 18.7 below. The condemnation award shall be paid to the Association for the use and benefit of the Owners and the Mortgagees as their interests may appear. Such award shall be apportioned among the Owners and the Mortgagees on the basis of the Allocated Interest

58


490484 01/11/2001 03:02P CONDO DE DAVIS SILVI
66 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

in the Common Elements appurtenant to the Unit or Fractional Ownership Interest in which such Owners and Mortgagees have an interest; provided, however, that if a standard different from the value of the Project as a whole is employed to measure the condemnation award in the negotiation, judicial decree or otherwise, then in determining such apportionment the same standard shall be employed. The Association shall, as soon as practical, determine the share of the condemnation award to which each Owner and Mortgagee is entitled, and such shares shall be paid into separate accounts and disbursed as soon as practical for the same purposes and in the same order as is provided in Sections 16.6.1 through 16.6.5 above.

Section 18.3    Partial Taking.

In the event that less than the entire Project is taken or condemned or sold or otherwise disposed of in lieu or in avoidance of condemnation, the condominium ownership under this Declaration shall not terminate. Each Owner of a Unit or Fractional Ownership Interest so taken or condemned (and Mortgagee holding an interest in such Owner's Unit or Fractional Ownership Interest) shall be entitled to a share of the condemnation award to be determined under the following provisions. The condemnation award shall be paid to the Association for the use and benefit of the Owners and the Mortgagees as their interests may appear. As soon as practical, the Association shall reasonably and in good faith allocate the condemnation award between compensation, damages or other proceeds, and shall apportion the amounts so allocated among the Owners, unless otherwise required under the Act, as follows:

18.3.1  The total amount allocated to a taking of or injury to the Common Elements shall be apportioned among Owners and their Mortgagees on the basis of each Owner's undivided interest in the General Common Elements, Limited Common Elements-Residential, Limited Common Elements-Tourist Accommodation, Limited Common Elements-Deed Restricted Residential and/or Limited Common Elements-Commercial;

18.3.2  The total amount allocated to severance damages shall be apportioned to the Owners and Mortgagees of those Units (including Owners and Mortgagees of Fractional Ownership Interests therein) which were not taken or condemned;

18.3.3  The respective amounts allocated to the taking of or injury to a particular Unit or to improvements an Owner has made within the Owner's own Unit shall be apportioned to the Owner and Mortgagees of that particular Unit involved (or the Owner and Mortgagees of Fractional Ownership Interests therein); and

18.3.4  The total amount allocated to consequential damages and any other takings or injuries shall be apportioned as the Association determines to be equitable under the circumstances.

If an allocation of the condemnation award is already established in negotiation, judicial decree or otherwise, then in allocating the condemnation award, the Association shall employ such allocation. Distribution of apportioned proceeds shall be made by checks payable jointly to the respective Owners and their respective Mortgagees.

Section 18.4    Reorganization.

In the event a partial taking results in the taking of an Individual Air Space Unit, the Owners thereof (including Owners of any Fractional Ownership Interests therein) shall automatically cease to be members of the Association, and their ownership interests in the Common Elements shall terminate and vest in the Owners of the remaining Units (including Owners of any Fractional Ownership Interests therein). Thereafter, subject to the provisions of Section 18.7 below, the Association shall reallocate the

59



ownership, voting rights and Assessment ratios determined in accordance with this Declaration according to the same principles employed in this Declaration at its inception and shall submit such reallocation to the Owners of the remaining Individual Air Space Units (including Owners of any Fractional Ownership Interests therein) for the amendment of this Declaration. Such reallocation shall be approved unless the Owners of 67% of the Allocated Interests including more than a majority of the Allocated Interests held by both the Residential Owners and the Commercial Owners, vote to disapprove such reallocation.

Section 18.5   Repair and Reconstruction.

Any repair and reconstruction necessitated by condemnation shall be governed by the procedures contained in Article 16 above.

Section 18.6   Notice of Condemnation.

In the event that any portion of the Project shall be made the subject matter of any condemnation or eminent domain proceeding or is otherwise sought to be acquired by a condemning authority, then timely written notice of such condemnation shall be given by the Association to each Owner and First Mortgagee.

Section 18.7   Limitations on Actions of Association.

Except as provided by statute, in case of condemnation, unless Owners representing sixty-seven percent (67%) or more of the total number of votes entitled to be cast on Association matters, including more than a majority of the total votes allocated to the Residential Owners and a majority of the total votes allocated to the Commercial Owners, reject such actions, the Association may not take any of the actions specified in Sections 18.1 through 18.6 above.

## ARTICLE 19.
## OTHER ASSOCIATION MATTERS

Section 19.1   Master Association Matters.

Each Owner, by accepting a deed to a Unit, recognizes that (a) Aspen Highlands Condominiums is subject to the Master Association Documents, (b) by virtue of his ownership of a Unit or Fractional Ownership Interest (pursuant to Article 23), he has become a member of the Master Association, (c) such Owner is subject to any rules and regulations of the Master Association, and (d) pursuant to the Master Association Documents, an Owner is a member of a specified category of the Master Association and is entitled to all of the benefits and subject to all of the burdens of such membership. Each Owner, by accepting a deed to a Unit or Fractional Ownership Interest, acknowledges that he has received a copy of the Master Declaration and the articles of incorporation, bylaws and rules and regulations of the Master Association. Each Owner agrees to perform all of his obligations as a member of the Master Association as they may from time to time exist, including, but not limited to, the obligation to pay annual, special, and default assessments as required under the Master Association Documents.

Section 19.2   Enforcement of Master Association Documents.

19.2.1   The Association shall have the power, subject to the primary power of the Executive Board of the Master Association, to enforce the covenants and restrictions contained in the Master Association Documents, but only as said covenants and restrictions relate to the Project, and to collect regular, special and default assessments on behalf of the Master Association.

60



19.5.5  The alterations and changes described in this Section shall also be in compliance with and have received all approvals required by the Master Declaration and any applicable zoning and other laws, rules and regulations, including the rules and regulations promulgated by the Association.

Section 19.6    General Reservation.

Subject to any applicable restrictions under the Act, Declarant reserves the right to dedicate any access roads and streets serving the Property for and to public use and to allow such street or road to be used by owners of adjacent land.

Section 19.7    No Use of Trademark.

The terms "Aspen Highlands Village" and "Aspen Highlands" are service marks of HHLP. Each Owner, by accepting a deed to a Unit, covenants and agrees that such Owner shall not use the marks "Aspen Highlands Village" or "Aspen Highlands" or designs or logos related to such marks without the prior written permission of HHLP.

Section 19.8    Limit on Timesharing.

Each Owner acknowledges that Declarant intends to create Fractional Ownership Interests with respect to Tourist Accommodation Units within Aspen Highlands Condominiums and Aspen Highlands Village.  Other than the right of Declarant'' or a Successor Declarant and their respective officers, agents, employees, and assigns to create Fractional Ownership Interests in accordance with Article 23 of this Declaration (specifically including, without limitation, the Plan of Fractional Ownership) no Unit shall be used for the operation of a timesharing, fraction-sharing, interval ownership, private residence club, membership program, vacation club, exchange network or system or similar program whereby the right to exclusive use of the Unit is alternated or scheduled among participants in the program on a fixed or floating time schedule over a period of years whether by written, recorded agreement or otherwise.

Section 19.9    Acknowledgments.

Each Owner is hereby advised of the following matters affecting the Project and Aspen Highlands Village and the Owners' use and enjoyment thereof:

19.9.1  Aspen Highlands Condominiums is benefited by the fact that it is located near or adjacent to the Aspen Highlands Ski Area (the "Ski Area"). The Ski Area represents a unique and desirable amenity that includes many year-round activities; as such, the Ski Area  may generate an unpredictable amount of visible, audible and odorous impacts and disturbances from activities relating to the construction, operation, use and maintenance thereof.  The activities associated with the Ski Area include, without limitation: (i) vehicular and non-vehicular traffic, including, without limitation, (a) buses, vans, snowcats, snowmobiles and other vehicles which transport residents and guests of Aspen Highlands Village over, around and through the Ski Area and Aspen Highlands Village, and (b) construction vehicles and equipment; (ii) activities relating to the construction, operation and maintenance of ski trails, skiways and skier bridges and tunnels relating to the Ski Area, including, without limitation, (a) construction, operation and maintenance of Ski Area access roads, snow-making equipment and chair lifts, gondolas and other skier transportation systems, and (b) operation of snow-grooming vehicles and equipment and safety and supervision vehicles; and (iii) activities relating to the use of the Ski Area, including, without limitation, skiing, snow boarding, hiking, horseback riding, bicycling and other recreational activities.

450454 01/11/2001 03:02P CONDO DE DAVIS SILVI
70 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

19.9.2   In addition to the general provisions of subsection 19.9.1 above, certain Units within the Buildings, as well as certain Units and other areas in other buildings in Aspen Highlands Village, may be used in connection with the operation of the Ski Area, including, without limitation, the use of such Units and other areas for purposes of snowcat storage, maintenance and repair and ski patrol purposes. An unpredictable amount of visible, audible and odorous impacts and disturbances may occur from activities relating to the use of such Units or other areas in connection with operation of the Ski Area. Owners acknowledge that substantial operations relating to the Ski Area occur at night, and the impacts and disturbances referenced in this subsection and in subsection 19.9.1 above may occur at any time.

19.9.3   Roads within Aspen Highlands Village are or may be subject to restricted or gated access limitations, and are or may be subject to rules and regulations of the District, which owns and is responsible for maintaining the roads.

19.9.4   Substantial construction-related activities relating to the development of the Project or other development within or near Aspen Highlands Village may cause considerable noise, dust and other inconveniences to the Owners.

19.9.5   Properties located within Aspen Highlands Village may be developed pursuant to the land uses and restrictions set forth in the PUD Plan with no representation being made herein concerning the planned uses of such other properties. The zoning for Aspen Highlands Village is established and governed by the PUD Plan. Any amendment of the PUD Plan requires approval by the City of Aspen. Each Owner acknowledges and agrees that such Owner has not relied upon any statements or representation regarding Aspen Highlands Village or any other properties except for the statements and representations expressly set forth in this Declaration and the PUD Plan. Each Owner further acknowledges and agrees that such Owner will not take any action to impair or delay any development of real property governed by the PUD Plan so long as such development complies with the PUD Plan.

19.9.6   No interest in or right to use any amenity located near the Project, such as swimming pools, spas, golf facilities, ski facilities or the like, shall be conveyed to any Owner pursuant to this Declaration, except that Tourist Accommodation Owners shall have rights in the Amenities, as provided in this Declaration. The owners of any facilities that are not part of the Project shall have the right, in their sole discretion, to remove, relocate, discontinue operation of, restrict access to, charge fees for the use of, sell interests in or otherwise deal with such assets in their sole discretion without regard to any prior use of or benefit to any Owners.

19.9.7   Declarant is not the operator of the Ski Area, and accordingly Declarant cannot make any representations relating thereto. Neither Declarant nor any of its employees or agents have made any representations regarding the opening or closing dates of the Ski Area in any given year. The operator of the Ski Area may decide, in its sole discretion, whether and when any or all of the chairlifts (including those that serve Aspen Highlands Village) within the Ski Area should be operated.

19.9.8   Ownership of real property in mountain areas involves certain inherent inconveniences. These include, but are not limited to, (a) dripping water onto decks and porches from snow melt, (b) snow and ice build-up on decks, roofs, gutters and porches during winter months, (c) the need to open windows to cool a Unit during certain summer periods, in that due to the temperate summer climate air conditioning may not be provided in all parts of the Buildings, and (d) other inconveniences arising from the variable weather conditions in the Rocky Mountains.

452454 01/11/2001 03:02P CONDO DE DAVIS SILVI
71 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CO

19.9.9 Use of wood burning fireplaces, stoves and other devices is restricted within Aspen Highlands Village by governmental regulation.

19.9.10        Each Owner acknowledges that Declarant intends to create Fractional Ownership Interests with respect to certain Units within Aspen Highlands Condominiums and Aspen Highlands Village. In order to comply with Section 26.590.010.C.19.e. of the Municipal Code of the City of Aspen, Colorado, as amended, and other applicable governmental regulations regarding the creation of such Fractional Ownership Interests within Aspen Highlands Condominiums, attached to this Declaration as Exhibit E is a copy of the City Disclosure Statement regarding creation of said Fractional Ownership Interests. Each Owner specifically acknowledges and agrees that the provisions of such City Disclosure Statement are provided for informational purposes only, are not incorporated into this Declaration and are specifically excepted herefrom. Any change to, amendment of, or alteration to the City Disclosure Statement shall not require any action by the Association, the Executive Board, or the Owners pursuant to any provision of this Declaration. As such, the City Disclosure Statement attached hereto may not in the future be the most current Disclosure Statement, and any future Owner is advised to consult the applicable governmental authority to obtain a current Disclosure Statement. The Association, acting through the Tourist Accommodation Directors, shall have the continuing responsibility pursuant to Section 26.590.010.C.19.c. of the Municipal Code of the City of Aspen, Colorado, as amended, to update and file the City Disclosure Statements and any amendments to the Association Documents with the City of Aspen and, subject to applicable approvals of the City of Aspen, to file the same in the Office of the Clerk and Recorder of Pitkin County, Colorado, as soon as practicable after City of Aspen approval has been granted.

19.9.11        .  The Deed Restricted Residential Units are subject to certain limits on alienability and use as an affordable housing sale unit, rental unit or dormitory unit pursuant to the PUD Plan and applicable law, and as contained in certain document(s) to be recorded in the Office of the Clerk and Recorder of Pitkin County, Colorado. The Deed Restricted Residential Units may be restricted in one or more manners, including, without limitation, the following: (a) the sales prices of such Deed Restricted Residential Units, whether applicable to the initial sale from Declarant or any subsequent sale, may be restricted to an amount which is less than their fair market value, (b) the amounts of rent chargeable for the leasing of the Deed Restricted Residential Units may be restricted to amounts that may be less than their fair rental value, (c) purchasers or tenants of Deed Restricted Residential Units may be required to meet certain residency and/or criteria regarding income and/or other assets, and (d) the Deed Restricted Residential Units may be restricted in occupancy as primary residences by Owners or their tenants who satisfy certain requirements. Owners are advised to review the PUD Plan and applicable law for specific and detailed information regarding any such limitations imposed upon Deed Restricted Residential Units.

## ARTICLE 20.
## DECLARANT'S RIGHTS REGARDING TRANSFER

Any right or any interest reserved or contained in this Declaration for the benefit of Declarant may be transferred or assigned by Declarant, either separately or with one or more other such rights or interests, to any person, corporation, partnership, association or other entity, by written instrument executed by both Declarant and the transferee or assignee and recorded in the Office of the Clerk and Recorder of Pitkin County, Colorado. Upon such recording, Declarant's rights and obligations under this Declaration shall cease and terminate to the extent provided in such instrument.

64

## ARTICLE 21.
### PHASING, EXPANSION AND WITHDRAWAL

Section 21.1    Phasing.

The Project may be developed in phases pursuant to the Act. In addition, Declarant reserves the right for itself and any Successor Declarant to develop additional phases and in such event to subject all or any part of the Expansion Property to the provisions of this Declaration as may be necessary or appropriate for such purpose.

Subsequent phases may consist of additional Units, parking, common areas, recreational facilities, or some combination thereof. Pursuant to this Article 21 and the Act, Declarant reserves the right to vary its phasing plans and there shall be no time limit during which Declarant must complete its phasing plan. Declarant reserves the right to submit additional phases, if any, to condominium use in any sequence. There are no assurances that any subsequent phase of the Project will be added.

Additional phases may be created by Declarant by the filing for record by Declarant in the Office of the Clerk and Recorder of Pitkin County, Colorado, of one or more Supplemental Declarations and Supplemental Maps. The documents for a particular phase will be recorded prior to the closing of the purchase of any Unit or Fractional Ownership Interest in that phase. Moreover, in accordance with the Act, Declarant reserves all rights, in its sole discretion, to vary the phasing plan of the Project with respect to phase boundaries, plot plans, floor plans, unit types, unit mixes, number of units, number of unit weeks, and recreational areas and facilities with respect to each subsequent phase.

Section 21.2    Reservation of Expansion and Withdrawal Rights.

21.2.1  Declarant reserves the right for itself and any Successor Declarant to subject all or any part of the Expansion Property (such Expansion Property and the Building to be created thereon being sometimes referred to from time to time as "Building 2") to the provisions of this Declaration and thereby expand the Property to add additional Units, subject to the maximum limitations set forth in Section 3.1, and to expand the Common Elements.

21.2.2  Subject to those restrictions set forth in Section 38-33.3-222 of the Act, Declarant reserves the right for itself and any Successor Declarant at any time and from time to time to subject unspecified real property to the Project and the provisions of this Declaration.

21.2.3  Declarant reserves the right for itself and any Successor Declarant at any time and from time to time to withdraw from the Project and from the provisions of this Declaration any real property subjected to this Declaration by a duly recorded Supplemental Declaration and Supplemental Map prior to the time of a sale of a Unit or Fractional Ownership Interest comprising a portion of the real property described in said Supplemental Declaration and Supplemental Map.

Section 21.3    Supplemental Declarations and Supplemental Maps.

Expansion of the Property and the Project may be accomplished by the filing for record by Declarant in the Office of the Clerk and Recorder of Pitkin County, Colorado, of one or more Supplemental Declarations and of a Supplemental Map(s) depicting such Expansion Property recorded concurrently with the applicable Supplemental Declaration. The Supplemental Declaration shall set forth the Units and other real property, if any, to be included in the expansion, together with any covenants, conditions, restrictions and easements particular to such property. The expansion may be accomplished in stages by successive supplements or in one supplemental expansion. Declarant may exercise such rights



for expansion on all or any portion of the Expansion Property in whatever order of development Declarant in its sole discretion determines. Declarant shall not be obligated to expand the Project beyond the number of Units initially submitted to this Declaration. Without limiting the generality of the foregoing, it shall be permissible for Declarant to submit individual condominium units created upon all or any portion of the Expansion Property to this Declaration without submitting all such condominium units hereto.

### Section 21.4   Expansion of Definitions.

In the event of such expansion, the definitions used in this Declaration shall be expanded automatically to encompass and refer to the Property subject to this Declaration as so expanded. For example, "Unit" shall mean the Units comprising part of the Property plus any additional Units added by a Supplemental Declaration or Declarations and Supplemental Map or Maps, and reference to this Declaration shall mean this Declaration as supplemented. All conveyances of Units and Fractional Ownership Interests shall be effective to transfer rights in the Property as expanded.

### Section 21.5   Declaration Operative on New Units.

21.5.1   The new Units and any Fractional Ownership Interests therein shall be subject to all of the terms and conditions of this Declaration and of any Supplemental Declaration, upon placing the Supplemental Declaration(s) describing the Expansion Property and Supplemental Map(s) of public record in the Office of the Clerk and Recorder of Pitkin County, Colorado.

21.5.2   It is contemplated that additional Units and Fractional Ownership Interests therein on the Property will be committed to this Declaration, but Declarant and any Successor Declarant shall have no affirmative obligation to construct any additional Units. In the event that a portion of the Expansion Property is submitted to the provisions of this Declaration, Declarant shall retain the right to, but shall not be obligated to, submit any additional portion of the Expansion Property to the provisions of this Declaration. The rights of Declarant and any Successor Declarant, as described herein, shall apply to all Units that are added to this Declaration in accordance with these provisions relating to enlargement thereof.

21.5.3   No rights of any character of any owner in units in the Expansion Property shall attach until a Supplemental Declaration and Supplemental Map are filed of record annexing the units constructed in such area to the Project. Upon the recording of such Supplemental Declaration and Supplemental Map, the Units located in the area shall be deemed to be governed in all respects by the provisions of this Declaration.

### Section 21.6   Effect of Expansion.

21.6.1   Upon the construction of additional Units and their inclusion under this Declaration and the filing of the Supplemental Declaration(s) and Supplemental Map(s) thereof, the apportionment of Assessments for each Unit and Fractional Ownership Interest shall automatically be adjusted to reflect the then current respective undivided interest in the Common Elements appurtenant to each Unit. Such adjustment shall be reflected and set forth in the Supplemental Declaration.

21.6.2   Notwithstanding any inclusion of additional Units under this Declaration, each Owner (regardless of whether such Owner is the owner of a Unit or Fractional Ownership Interest therein shown on the original Map or is the owner of a Unit or Fractional Ownership Interest therein constructed in the Expansion Property) shall remain fully liable with respect to his obligation for the payment of the Common Expenses of the Association, including the expenses for such new Common Elements, costs and

66



fees, if any. The recording of a Supplemental Declaration or Supplemental Map shall not alter the amount of the Common Expenses assessed to a Unit or Fractional Ownership Interest therein prior to such recording.

Section 21.7   Termination of Expansion and Development Rights.

The rights reserved to the Declarant for itself, its successors and assigns for the expansion and development of the Expansion Property ("Expansion and Development Rights") shall expire thirty-five (35) years from the date of recording this Declaration, unless the Expansion and Development Rights are (i) extended as allowed by law or (ii) reinstated or extended by the Association, subject to whatever terms, conditions, and limitations the Executive Board may impose on the subsequent exercise of the Expansion and Development Rights by Declarant.

## ARTICLE 22.
## MISCELLANEOUS

Section 22.1   Restriction on Declarant Powers.

Notwithstanding anything to the contrary herein, no rights or powers reserved to Declarant hereunder shall exceed the time limitations or permissible extent of such rights or powers as restricted under the Act. Any provision in this Declaration in conflict with the requirements of the Act shall not be deemed to invalidate such provision as a whole but shall be adjusted as is necessary to comply with the Act. No rights of Declarant under the Association Documents may be abridged without the consent of Declarant.

Section 22.2   Term.

The covenants and restrictions of this Declaration shall run with and bind the land in perpetuity, subject to the termination provisions of the Act.

Section 22.3   Amendment.

The provisions of this Declaration may be amended or terminated, in whole or in part, from time to time, upon the written consent of Owners representing a majority of the total number of votes entitled to be cast on Association matters, including at least a majority of the total votes allocated to the Residential Owners and a majority of the total votes allocated to the Commercial Owners or by the Owners representing a majority of the total number of votes entitled to be cast on Association matters, including at least a majority of the total votes allocated to the Residential Owners and a majority of the total votes allocated to the Commercial Owners at a meeting of the Owners called for that purpose; provided, however, matters not requiring Owner approval as described in CRS 38-33.3-217(1) may be handled by the Executive Board, including the approval of a majority of the Residential Directors and a majority of the Commercial Directors (except for those matters further delegated in this Declaration solely to a Class of Directors in which case such amendment shall be effective only upon approval of such Class of Directors and upon approval of the Executive Board); and provided further, however, that any provision of this Declaration requiring a vote of more than a majority of the total voting interest in the Association and/or of each Class or Category of membership to be effective may only be amended by a vote of the applicable aggregate voting interest stated in such provision. Notwithstanding the above, the provisions of this Declaration which affect only the Plan of Fractional Ownership may be amended or terminated, in whole or part, from time to time, upon the written consent of the Tourist Accommodation Owners representing a majority of the total number of votes entitled to be cast on Association matters or by the Tourist Accommodation Owners representing a majority of the total votes at a meeting called for

67

that purpose. In addition, (a) a majority of the voting Directors of the Executive Board including the approval of a majority of the Residential Directors and a majority of the Commercial Directors may make, without the approval of the Owners, changes to the Map or any other Association Documents to the extent necessary to correct a factual error, and (b) any proposed amendment to this Declaration which affects any right of Declarant shall require the prior written approval of Declarant, in addition to the approval requirements otherwise set forth herein.

### Section 22.4    Unilateral Amendment Rights Reserved by Declarant.

Notwithstanding any provision in this Declaration to the contrary, Declarant, acting alone, reserves to itself the right and power to modify and amend this Declaration and the Map to the fullest extent permitted under the Act including, without limitation, to correct clerical, typographical or technical errors, or to comply with the requirements, standards, or guidelines of recognized secondary mortgage markets, the Department of Housing and Urban Development, the Federal Housing Administration, the Veterans Administration, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, or the Federal National Mortgage Association, or any other governmental authority having jurisdiction over the Project. Declarant reserves the right to amend this Declaration to delete: (i) the phrase "or any other governmental authority having jurisdiction over the Project" in the prior sentence, and (ii) Article 23 and all references to the Plan of Fractional Ownership prior to the conveyance of a Fractional Ownership Interest by Declarant.

### Section 22.5    Recording of Amendments.

Any amendment to this Declaration must be executed by the President of the Association and recorded in the Office of the Clerk and Recorder of Pitkin County, Colorado, and approval of such amendment may be shown by attaching a certificate of the Secretary of the Association to the recorded instrument certifying the approval of a sufficient number of Owners of the amendment.

### Section 22.6    Enforcement.

Enforcement of the covenants, conditions, restrictions, easements, reservations, rights-of-way, liens, charges and other provisions contained in this Declaration, the articles, the bylaws and the rules and regulations of the Association, all as amended, shall be by any proceeding at law or in equity against any person or persons, including the Association, violating or attempting to violate any such provision. The Association and any aggrieved Owner shall have the right to institute, maintain and/or prosecute any such proceedings, and the Association shall further have the right (after notice and an opportunity to be heard) to levy and collect fines for the violation of any provision of the aforesaid documents. Any legal action initiated by the Association shall require the approval of the Executive Board, including the approval of a majority of the Residential Directors and a majority of the Commercial Directors. In any action instituted or maintained under this Section, the prevailing party shall be entitled to recover its costs and reasonable attorneys' fees incurred pursuant thereto, as well as any and all other sums awarded by the Court.

### Section 22.7    Severability.

Invalidation of any of the covenants, restrictions or other provisions contained in this Declaration by judgment or court order shall in no way affect or limit any other provisions which shall remain in full force and effect.

450494 01/11/2001 03:02P CONDO DE DAVIS SILVI
78 of 147 R 735.00 D 0.00 N 0.00 PITKIN COUNTY CC