# EXHIBIT W

Brownstein I Hyatt
Farber I Schreck

DRAFT

# Memorandum

**PRIVILEGED AND CONFIDENTIAL COMMUNICATION**
**ATTORNEY WORK PRODUCT**

**DATE:** September 21, 2012

**TO:** Aspen Highlands Condominium Association, Inc. (the "Association") Board of Directors

**FROM:** Brownstein Hyatt Farber Schreck, LLP

**RE:** Analysis with respect to use of Tourist Accommodation Units by members of the Marriott Vacation Club who are not also members of the Ritz Carlton Membership Program

---

## INTRODUCTION

The Declaration of Condominium for Aspen Highlands Condominiums (the "Declaration") creates a fractional interest ownership regime that authorizes the sale and ownership of deeded, fractional interests in the Tourist Accommodation Units. The condominium documents and disclosures referenced in this memorandum provide that owners of such fractional interests are members of The Ritz Carlton Membership Program (the "RC Program") and that only such members and other members of the RC Program from other participating RC Program locations may use the Tourist Accommodation Units. Marriott Vacations Worldwide Corporation ("MVW") operates (or controls through one or more affiliates the operations of) the RC Program as well as the Marriott Vacation Club (the "MVC"). MVW or such affiliates utilize the Ritz Carlton and Marriott names by virtue of a license agreement with an affiliate of Marriott International, Inc. MVW has recently begun to offer the use of Tourist Accommodation Units as exchange units (the "MVC Usage") to members of the MVC who are not also members of the RC Program (the "MVC Members"). The Cobalt Travel Company, LLC, an affiliate of Marriott International, Inc., serves as "Program Manager" under the Affiliation Agreement, which Affiliation Agreement provides for the inclusion of the Tourist Accommodation Units in the RC Program. The Ritz Carlton Management Company, L.L.C., also an affiliate of Marriott International, Inc. (the "HOA Manager"), manages the Association and has retained The Cobalt Travel Company, LLC as "Project Manager" pursuant to the HOA Management Agreement. MVW, the HOA Manager and the Project Manager are collectively referred to herein as the "Marriott Parties." The Association has



EXHIBIT
1097
US D.Colo. 1:16-cv-01301

questioned whether or not the MVC Usage violates the applicable documents and, if so, what legal or other options are available to the Association.

Please be advised that the analysis contained in this memorandum is based on our initial review of the documents provided to us, we have not performed thorough legal research to date and we have not reviewed or been provided copies of the documents for the Amenities Association, if any. Capitalized terms not otherwise defined in this memorandum shall have the meanings afforded them under the applicable documents referenced in this memorandum.

**CONCLUSION**

The Declaration is clear in its prohibition against any timeshare or exchange use of the Tourist Accommodation Units other than the RC Program specified in Article 23 of the Declaration, and the Declaration is the governing document that creates the condominium regime under the Colorado Common Ownership Act, C.R.S. Section 38-33.3-101, *et seq.* (the "Act") and governs all condominiums in Colorado. The Disclosure Documents (as hereinafter defined) also make no reference to the MVC Usage or affiliation of the condominium with any hotel brand other than Ritz Carlton. Contrary to the clear prohibition in the Declaration and the absence of disclosure in the Disclosure Documents, the Affiliation Agreement, the Reservation Procedures and the HOA Management Agreement contain provisions and definitions that arguably permit the type of timeshare/exchange use of the Tourist Accommodation Units that the Marriott Parties are implementing. The contrary provisions in the Declaration and the absence of disclosure in the Disclosure Documents, as opposed to the provisions and definitions found in the Affiliation Agreement, the Reservation Procedures and the HOA Management Agreement, create an uncertain playing field where each of the Association and the Marriott Parties can make a reasonable case that the MVC Usage is prohibited or permitted, as applicable. However, the better argument is that the Declaration and the intent evidenced therein should control to the extent of any conflict among the project documents, and there is support in the Act for the proposition that the Declaration is the controlling document. Even if we assume that the MVC Usage is permitted under the Affiliation Agreement, the Reservation Procedures and the HOA Management Agreement, there are qualitative requirements in the Affiliation Agreement that the MVC Usage may not satisfy. Additionally, there exists an argument that the Affiliation Agreement, the Reservation Procedures and the HOA Management Agreement are contracts of adhesion which, in the case of inconsistency with provisions of the Declaration, should be construed against the Marriott Parties' position. Also, there exists arguments that the MVC Usage constitutes a breach of the fiduciary duties of the HOA Manager under the HOA Management Agreement as the Marriott Parties are arguably benefitting from the MVC Usage to the detriment of the Association and its members. Finally, there also exists arguments that the MVC Usage has not been properly disclosed in the state and city disclosure documents filed in connection with the condominium sales offering, which could give rise to claims of fraudulent inducement and/or disclosure noncompliance. Accordingly, the Association has sufficient support to justify the issuance of a cease and desist letter demanding that the Marriott Parties stop the MVC Usage as the same violates the Declaration, is inconsistent with the Disclosure Documents and is not permitted by the Affiliation Agreement, the Reservation Procedures and the HOA Management Agreement, but the outcome of any actual litigation regarding the MVC Usage would be less than certain given the contrary provisions in the Declaration and the Disclosure Documents as opposed to the Affiliation Agreement, the Reservation Procedures and the HOA Management Agreement.

**ANALYSIS**

I. Under the various documents, do MVW, the HOA Manager and/or the Program Manager have the authority to subject the Tourist Accommodation Units to the MVC Usage?

A. Express and Implicit Provisions Prohibiting the MVC Usage



AHCA00016052

1097-0002

There are numerous provisions in the Declaration and the Colorado Disclosure Statement, the City of Aspen Disclosure Statement and the New York Condominium Offering Plan (the "Disclosure Documents") that support the position that the MVC Usage is prohibited. Section 19.8 of the Declaration provides that, other than the rights of Declarant or a Successor Declarant to create Fractional Ownership Interests in accordance with Article 23, "no Unit shall be used for the operation of a timesharing, fraction-sharing, interval ownership, private residence club, membership program, vacation club, exchange network or system or similar program whereby the right to exclusive use of the Unit is alternated or scheduled among participants in the program on a fixed or floating time schedule over a period of years whether by written, recorded agreement or otherwise" (emphasis added). Therefore, Section 19.8 is an unambiguous prohibition against the MVC Usage and a clear expression of Declarant's original intent that timeshare/exchange uses like the MVC Usage are prohibited.

Several other provisions of the Declaration provide that no further or other subdivision of the Fractional Ownership Units is permitted. Section 1.6 of the Declaration provides that, except as authorized in the Declaration, no further subdivision of the Tourist Accommodation Units into Fractional Ownership Interests is permitted and no additional condominium units may be established on the Property by subdivision of existing units, conversion of non-condominium space or otherwise. In addition, Section 23.1 of the Declaration provides that "the right to submit a Tourist Accommodation Unit to the Plan of Fractional Ownership shall extend only to the Declarant who owns such Tourist Accommodation Units and any Successor Declarant who are specifically conveyed this right, and shall specifically not be available to individual purchasers of Tourist Accommodation Units, their successors or assigns except with the prior written consent of Declarant." Finally, Section 23.4 of the Declaration provides that "In no event, however, shall a Plan Member convey or encumber less than a Fractional Ownership Interest as defined herein or as defined in a deed conveying a Fractional Ownership Interest, or attempt to subdivide a Fractional Ownership Interest into lesser interests" (emphasis added). The MVC Usage is an additional ownership/use interest that does not constitute a permitted, additional deeded, Fractional Ownership Interest in the Tourist Accommodation Units, and such additional deeded, Fractional Ownership Interests are the only permitted created interests for use of the Tourist Accommodation Units under the Declaration.

The Declaration further provides that only deeded Owners of Fractional Ownership Interests and other Plan Members were intended to use the Tourist Accommodation Units (*see, e.g., §§1.1, 1.4 and 1.6 of the Declaration).* Section 1.7 of the Declaration provides that "other features commonly associated with commercial uses and residential uses shall be expressly permitted on the Property." However, timeshare and exchange use by less compelling brands are not a "commonly associated" use within a luxury, high-end fractional ownership regime as is created by the Declaration, and certainly not at this project given the express prohibitions against timeshare/exchange use in Section 19.8 of the Declaration. Also, Section 23.13.1 of the Declaration provides cross-use easements for Plan Members of comparable Fractional Ownership Interests in the Project, but not to any other individuals, and such Plan Members only get Fractional Ownership Interests in the Project by way of a deeded and undivided Fractional Ownership Interest. Accordingly, Plan Members would not include the MVC Members, and such non-Plan Members do not enjoy the benefits of the cross-use easements necessary to fully utilize the property.

The Declaration and the Affiliation Agreement also contain limitations on the use of and access to amenities that do not extend to non-Plan Members. Section 5.5 of the Declaration provides that "An Owner of a Fractional Ownership Interest in a Unit shall be permitted to access the Common Elements, the Amenities, and the Health Club Facility, unless otherwise permitted by separate agreement, only during the period of such Owner's actual occupancy of a Unit pursuant to such Owner's Fractional Ownership Interest." Accordingly, Section 5.5 of the Declaration is consistent with Section 19.8 of the Declaration in that only Owners occupying Tourist Accommodation Units are permitted access to the amenities, and the Marriott Parties' practice of granting the MVC Members access to the amenities arguably violates Section 5.5 of the Declaration. To be fair, such Section 5.5 does caveat that

statement by providing "unless otherwise permitted by separate agreement." However, as further described below, the Affiliation Agreement does not grant access and use rights for the amenities to Associate Members, and we are not aware of any separate agreement that does grant such use rights. Lastly, Section 5.3.1 of the Declaration provides parking rights only to Tourist Accommodation Owners, Deed Restricted Residential Owners and the Commercial Owners. Accordingly, the Marriott Parties are arguably violating Section 5.3.1 of the Declaration if the MVC Members are permitted to utilize condominium parking facilities. If the Declarant intended for timeshare/exchange owners at clubs other than those clubs constituting a part of the RC Program to have cross-use rights, rights to use the amenities and parking rights, the Declarant could, should and would have explicitly provided for such rights in the Declaration.

The Declaration and the Disclosure Documents also make repeated references to Ritz Carlton and the RC Program throughout such documents, and there is no mention of any other hotel brand or affiliation with any other non-Ritz Carlton club. It would have been very easy for the Declarant to have caused such documents to disclose the MVC Usage as the Declarant controlled the drafting and preparation of the Disclosure Documents, the Declaration, the other governing documents of the Association, the Affiliation Agreement and the HOA Management Agreement at the very formation of the condominium regime, but no such disclosure exists in such documents.

Moreover, the Association can argue that the Declaration is the controlling document in the event of any conflict among the project documents. Section 103(13) of the Act provides that the Declaration creates the condominium governed by the Act. In addition, Section 203(3) of the Act provides that the Declaration controls over the bylaws in the event of any conflict. Accordingly, the logical implication is that the Declaration controls over any other governing document of an association in the event of a conflict among the governing documents. The Act does not define "governing documents", and accordingly it is unclear whether the Affiliation Agreement and the HOA Management Agreement would even constitute governing documents since such documents do not deal with the formation and/or governance of the Association. In any event, the Affiliation Agreement, the Reservation Procedures and the HOA Management Agreement should constitute contracts of the Declarant under Section 305 of the Act. Under Section 305 of the Act, any contract or lease between an association and a declarant or an affiliate of a declarant or any contract or lease that is not bona fide or was unconscionable to the unit owners at the time entered into under the circumstances then prevailing is terminable by an association upon 90 days notice at any time after the board elected by the unit owners takes office. Accordingly, even though the Reservation Procedures are not necessarily a contract of the Declarant under Section 305 of the Act (since the Reservation Procedures are not an agreement between the Declarant and the Association), and even though the Marriott Parties could argue that the Affiliation Agreement and the HOA Management Agreement are not contracts of the Declarant under Section 305 of the Act (since one of the co-declarants under the Declaration, Hines Highlands Limited Partnership, did not execute the Affiliation Agreement and the HOA Management Agreement), the Association arguably has the right to terminate the Affiliation Agreement and the HOA Management Agreement at any time after the board elected by the unit owners takes office. While termination of the Affiliation Agreement and the HOA Management Agreement is not likely desired by the Association, the clear implication of Section 305 of the Act is that the Act does not give any deference to agreements executed by a declarant or its affiliate and an association at the time that the declarant controls the association, and any such unilaterally implemented agreements are terminable by an association once control of the board passes. Therefore, the Act supports the Association's position that the Declaration should control in the event of any conflict between the Declaration and the Affiliation Agreement, the Reservation Procedures and the HOA Management Agreement. Moreover, as will be detailed later in this memorandum, the Association could also take the position that these ancillary documents are contracts of adhesion that should be construed against the Marriott Parties.

B. Express and Implicit Provisions Permitting the MVC Usage

There are provisions and definitions in the Affiliation Agreement, the Reservation Procedures and the HOA Management Agreement which support the position that the MVC Usage is permitted. The Affiliation Agreement was executed by the Association and is incorporated into the Declaration by Section 23.2.1 of the Declaration, and Section 23.2.6 of the Declaration incorporates the Affiliation Agreement into the definition of Membership Program Documents. In addition, Section 23.8.6 of the Declaration obligates Tourist Accommodation Directors to "comply with the terms, covenants and conditions of the Affiliation Agreement." Also, Section 23.11 of the Declaration states that "by acceptance of a deed to a Fractional Ownership Interest, a Plan Member agrees to be bound by the terms and conditions of the Declaration" (which, as stated above, incorporates the terms and conditions of the Affiliation Agreement). Finally, the HOA Management Agreement is contemplated by Section 7.4 of the Declaration and was executed by the Association.

The strongest argument for the position that the MVC Usage is permitted is found in Section 5.3 of the Affiliation Agreement, which provides that "The Developer, Members Association and Club Manager agree that the Program Manager shall have the right pursuant to the Reservation Procedures to reserve any unreserved use of the Residences for its own promotional use, rental for its own account or any other purpose as Program Manager determines in its sole discretion" (emphasis added). Similarly, Section 4(S) of the HOA Management Agreement authorizes the HOA Manager to engage the Program Manager to manage and administer the reservation procedures and exchange program for the RC Program, and such Section 4(S) further provides as follows: "The Program Manager shall have the broadest possible delegation of authority regarding administration of the Reservation Procedures. The Program Manager shall be authorized, in its sole discretion, to promulgate, adopt and amend the Reservation Procedures from time to time, in order to maintain uniformity of reservation procedures within the Membership Program and to more effectively fulfill reservation requests" (emphasis added). Under such Section 4(S), the HOA Manager is authorized to pass the reasonable cost of operating the Reservation Procedures to unit owners as part of their dues. The Marriott Parties could argue that Section 5.3 of the Affiliation Agreement and Section 4(S) of the HOA Management Agreement provide the Program Manager with the authority to do whatever the Program Manager wants with respect to unused and unreserved Tourist Accommodation Units. The Reservation Procedures provide additional support for this position by granting the Program Manager the authority to reserve space available units to Guests of the Program Manager for no more than seven (7) consecutive nights; however, even though the definition of "Guests" is broad, it implies some sort of personal connection and not an authorization to use the Tourist Accommodation Units in connection with different commercial enterprise, and the Reservation Procedures also defer to the Declaration in the event of any conflict. These provisions could also be interpreted to grant the Program Manager only broad authority and flexibility in operating the RC Program, not authority to establish a new practice of allowing the MVC Members to use, as an element of another club entirely separate from the RC Program, the Tourist Accommodation Units in contradiction of the express terms of the Declaration. To that end, the Association would argue that these provisions provide the Program Manager with the power to temporarily fill unused inventory from time to time in a manner that does not damage or devalue the interests of the members of the Association and that none of these provisions were intended vitiate the express prohibitions found in the Declaration.

Additional support for the position that the MVC Usage is permitted is found in two definitions contained in the Affiliation Agreement. The definition of "Membership Program" is very broad under Article II of the Affiliation Agreement. Membership Program means the program of benefits and services created and operated by the Program Manger as they may exist from time to time, which Members participate in by virtue of ownership of a Residence Interest or by other means established by the Program Manager, e.g., the benefits and services made available to Associate Members (emphasis added). The definition of "Associate Members" is also very broad. Associate Member is defined as a person having privileges within the Membership Program through a separate category of membership other than that type of membership associated with ownership of a Residence Interest and mandatory

affiliation with the Membership Program (emphasis added). Section 3.1 of the Affiliation Agreement provides that "By execution of this Agreement, the Parties agree to affiliate the Club with the Membership Program in accordance with the terms and conditions of the Membership Program Documents." Also, Section 3.2(a) of the Affiliation Agreement provides that "In accordance with the Residence Documents, membership in the Membership Program is an appurtenance to and a condition of ownership of a Residence Interest at the Club." The definition of Residence Interest includes "use rights" and not merely a deeded ownership interest (although this provision of the Affiliation Agreement does contradict the Declaration, which provides that only deeds to a Fractional Ownership Interest provide use rights in the Tourist Accommodation Units). Since the definition of Membership Program includes "benefits and services made available to Associate Members," then arguably the Program Manager can give Associate Members use rights in the Membership Program (which creates the necessary Residence Interest). Accordingly, the Marriott Parties could take the position that the defined terms "Associate Member" and "Membership Program", when read in conjunction with Sections 3.1 and 3.2(a) of the Affiliation Agreement, permit the MVC Usage as a benefit or service to its Associate Members by taking the position that the MVC Members constitute Associate Members under the Affiliation Agreement.

Section 7.2(a) of the Affiliation Agreement contains another provision that the Marriott Parties could contend supports the position that the MVC Usage is permitted. Section 7.2(a) of the Affiliation Agreement provides that the Program Manager may, in its sole discretion, elect to affiliate other locations with the Membership Program as Member Clubs or Associated Clubs from time to time without any consent, and further provides that such locations will compete with existing Members and/or Associate Members in reservations for available accommodations. In this case, the Association would argue that this provision is best construed as permitting the addition of a new location to the RC Program rather than permitting a use of the Tourist Accommodation Units that is expressly prohibited under the Declaration.

Furthermore, Section 23.4 of the Declaration provides that the use rights with respect to the Tourist Accommodation Units are limited to what is set forth in the deed for a Tourist Accommodation Unit. The deed provided for our review provides that such deed is subject to The Ritz Carlton Club Membership Program Reservation Procedures and, as stated previously, the Reservation Procedures do authorize the Program Manager to use unused and unreserved Tourist Accommodation Units in its sole discretion. Again, the Association's position would be that such authorization grants the Program Manager the power to temporarily fill unused Tourist Accommodation Units from time to time rather than permitting a use of the Tourist Accommodation Units that is expressly prohibited under the Declaration.

The Marriott Parties could utilize some or all of the foregoing arguments to take the position that the MVC Usage is permitted by the Affiliation Agreement, the Reservation Procedures and the HOA Management Agreement. However, the Association has reasonable grounds to refute such a position since (i) such claimed authority was not demonstrated anywhere else in the project documents, including in the Declaration and the Disclosure Documents, (ii) the Declaration contains express and implicit prohibitions against the MVC Usage, (iii) in accordance with the Act, the Declaration should control in the event of conflict with any of the other project or governing documents, and (iv) such claimed authority could and should have been set forth in the Declaration and the Disclosure Documents if the original intent was truly to permit something that is expressly prohibited in the Declaration.

Finally, the Affiliation Agreement and the HOA Management Agreement were executed by the Association when the Association was under Declarant's control. The Affiliation Agreement, the Reservation Procedures and the HOA Management Agreement were also likely prepared by counsel to Declarant, and current and former Owners had no say in the drafting or negotiation of the Affiliation Agreement, the Reservation Procedures and the HOA Management Agreement. As a result, the Affiliation Agreement, the Reservation Procedures and the HOA Management Agreement arguably

constitute contracts of adhesion, and if necessary, the Association could take the position that such agreements and procedures should be construed more stringently against the drafter than against the Association and/or the Owners (which would work against the Marriott Parties' positions). Also, as previously described, the Association could also argue that the Declaration and Disclosure Documents are the most significant documents in a residential real estate acquisition, and, consistent with the intent of the Act, it is not appropriate to interpret ancillary documents such as the Affiliation Agreement and the HOA Management Agreement in a manner that is contrary to express provisions in the Declaration.

C. Qualitative Arguments

Even if we assume that the terms of the Affiliation Agreement, the Reservation Procedures and the HOA Management Agreement permit the MVC Usage as a benefit or service to Associate Members, there are qualitative requirements in the Affiliation Agreement that the MVC Usage may not satisfy.

The definition of "Associated Clubs" in the Affiliation Agreement is a location pursuant to which membership in the Membership Program is made available to persons on a voluntary basis in accordance with such terms and conditions as may be determined by the Program Manager and for which an agreement similar to the subject Agreement has been executed (emphasis added). Additionally, Section 7.1 of the Affiliation Agreement provides that in the event the Program Manager affiliates one or more additional Member Clubs or Associated Clubs with the Membership Program, the agreement executed to effect such affiliation shall, subject to applicable law, contain substantially the same terms and conditions as the Affiliation Agreement in all material respects under the circumstances as pertaining to each such additional Member Club or Associate Club (emphasis added). Also, the definition of a Member Club contemplates that such club be governed pursuant to an agreement similar to the Affiliation Agreement or otherwise (emphasis added). It is highly unlikely that the documentation implementing the MVC Usage meets these requirements since the documentation for timeshare owners and other holders of Marriott points will be substantially different from the documentation for an exchange program for owners of deeded, fractional interests.

Also, Section 4.5 of the Affiliation Agreement provides that Developer, the Members Association and the Club Manager agree to manage, operate and maintain the Club in a manner consistent with the standards of quality and customer service established by the Program Manager for all Member Clubs from time to time (emphasis added), and Section 5.2 of the Affiliation Agreement provides that Membership Program Documents will only be adopted or amended in a manner that in the Program Manager's reasonable business judgment will be for the principal purpose of improving upon the quality and operation of the Membership Program and/or the Reservation System and furthering the collective enjoyment of the Membership Program by present and future Members (including Associate Members) as a whole (emphasis added). The Association could take the position that making the Tourist Accommodation Units subject to the MVC Usage does not improve upon the quality and operation of the Membership Program, nor does it further the collective enjoyment by present and future Members as a whole, for a host of reasons, including that the other Marriott brands participating in the MVC are not nearly as highly regarded as is the Ritz Carlton brand, that there are clear differences in the standards of quality and customer service between the other Marriott brands and the Ritz Carlton brand, that the increased traffic and nature of the visitor will negatively impact the experience of Members and that all of which, taken as a whole, will materially damage the value of the condominium units.

D. Fraudulent Inducement / Self Dealing

The Association could also take the position that the MVC Usage constitutes fraudulent inducement by The Ritz Carlton Development Company, L.L.C., as co-declarant and seller of the condominium units, and/or self-dealing between the HOA Manager and the other Marriott Parties.

Declarant was obligated to provide copies of the applicable Disclosure Documents to prospective purchasers. The Disclosure Documents are intended to apprise prospective purchasers of specific or general risks of buying a unit at the Aspen Highlands Condominium. As noted earlier, Ritz Carlton is the only hotel brand referred to throughout the Disclosure Documents. Section 4 of the Colorado Disclosure Statements discloses only that the resort will be affiliated with the RC Program, and there is no disclosure of any affiliation with the MVC. Moreover, while the Disclosure Documents do disclose the risk that the Program Manager could affiliate other resorts with the Membership Program, none of the Disclosure Documents discloses the risk that the Program Manager or anyone else could create a new class of non-deeded users or that the Tourist Accommodation Units could be used for timeshare/exchange use outside of the RC Program. A form of Purchase Agreement that was attached to the New York Condominium Offering Plan also does not disclose such risks. Accordingly, it could be argued that the unit owners were fraudulently induced into purchasing whole ownership units or Fractional Ownership Interests at the Aspen Highlands Condominium since the MVC Usage was not disclosed to such unit owners. The owners purchased a unit or fractional interest in the condominium expecting the Association and the Fractional Units to be managed in accordance with Ritz Carlton standards and (for the owners of Fractional Units) in a fractional interest regime within the RC Program. If such owners had wanted to purchase a significantly less expensive membership in a club such as the MVC that permitted timeshare/exchange use, such owners certainly could have done so, but they purchased a Unit or Fractional Ownership Interest at the condominium expecting this would not be the case.

Also, Sections 19.9.10 and 23.8.11 of the Declaration place the responsibility to update the City of Aspen Disclosure Statement on the Association, acting through the Tourist Accommodation Directors (emphasis added). The Colorado Disclosure Statement and the City of Aspen Disclosure Statement do not comply with the requirements of Colorado and the City of Aspen regulations for both technical and the above-described substantive reasons. We can provide more detail regarding the technical violations upon request, but there is sufficient non-compliance to consider referencing the potential violations in the cease and desist letter to the Marriott Parties.

Finally, we would need to research the issue, but it is possible that the HOA Manager and the Program Manager are breaching one or more fiduciary duties owed to the Association by virtue of the HOA Management Agreement, including the fiduciary duty prohibiting an agent from self-dealing at the expense of its principal. The potential self-dealing arises as a result of the HOA Manager and the Program Manager permitting/assisting the licensee of their affiliate, MVW, to implement the MVC Usage in violation of the Declaration, and the MVC Usage burdens the Association and its members for the benefit of the Marriott Parties. The HOA Manager and the Program Manager are arguably enriching their affiliates by creating an attractive offering for the MVC Members, which increases sales and license fees under Marriott's arrangement with MVW, all at the expense and burden of the owners of Fractional Ownership Interests and Residences. As previously noted, the HOA Management Agreement provides that the reasonable cost of implementing the Reservation Procedures is passed to the unit owners as part of their dues. An additional breach of fiduciary duty would likely arise to the extent such dues are subsidizing the cost of implementing the MVC Members use of the Tourist Accommodation Units.

II. What strategies and options are available to the Association to challenge the actions of the Marriott Parties subjecting the Tourist Accommodation Units to the MVC Usage?

A. Cease and Desist Letter

We can prepare and send a cease and desist letter to the Marriott Parties, an initial daft of which is transmitted with this memorandum. This option will hopefully bring MVW to the table with a more reasonable resolution acceptable to the Association, which we understand is the goal of the Association.

B. Declaratory Action or Action for Damages

Another option would be to bypass the cease and desist letter and file a declaratory action or an action for damages. This option would also be available to the Association after receiving an unsatisfactory response from the Marriott Parties to a cease and desist letter. We understand this is not currently the Association's desired approach, but we did want to detail all of the Association's options in this memorandum. One of the main considerations in such a strategy would be determining the appropriate plaintiff under the applicable action. In a declaratory action, the Association would probably be the appropriate plaintiff; and, under an action for damages, an owner or group of owners would probably be the more appropriate plaintiff. It is worth noting that a declaratory action would be the easier, quicker and cheaper option for the Association as opposed to an action for damages.

C. Action for Injunctive Relief

We would need to think through application of injunctive relief principles and requirements to the present facts, but this option will be the most unlikely to succeed given that it will be difficult to argue an immediate and irreparable harm that cannot be adequately addressed in an action for damages.

After the Board's review of this memorandum, we stand ready to answer any questions that the Association may have.

016168\0001\1729238.4