# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

Civil Action No. 1:16-cv-01301-PAB-GPG

**RCHFU, LLC**, a Colorado limited liability company,
**JEFFREY A. BAYER,**
**GAIL L. BAYER,**
**ROBERT BUZZETTI,**
**JULIE C. CANNER,**
**LEE JAMES CHIMERAKIS,**
**THERESA ANN CHIMERAKIS,**
**KEVIN THOMAS CLARE,**
**NANCY LYNNE SHUTE,**
**TOBY L. CONE TRUST**,
**TOBY L. CONE**, Trustee of the Toby L. Cone Trust,
**RICHARD DAVIS,**
**SHIRLEY J. DAVIS**,
**CARL EICHSTAEDT III**,
**JAMES RICHARD FARQUHAR,**
**JENNIFER LUCILLE FARQUHAR**,
**KOPPELMAN FAMILY TRUST,**
**LARRY KOPPELMAN**, Trustee of the Koppelman Family Trust,
**DAVID LANCASHIRE,**
**STEPHEN ANDREWS,**
**BONNIE LIKOVER,**
**CRAIG LIPTON,**
**JEREMY LOWELL, D.D.S.,**
**LORI LOWELL,**
**EDWARD P. MEYERSON,**
**ANDREA C. MEYERSON,**
**JERRY M. NOWELL TRUST,**
**JERRY M. NOWELL**, Trustee of the Jerry M. Nowell Trust,
**DEE ANN DAVIS NOWELL TRUST,**
**DEE ANN DAVIS NOWELL**, Trustee of the Dee Ann Davis Nowell Trust,
**THOMAS M. PROSE REVOCABLE LIVING TRUST,**
**THOMAS M. PROSE, M.D.,** Trustee of the Thomas M. Prose Revocable Living Trust,
**CASEY M. ROGERS,**
**COURTNEY S. ROGERS,**
**ROBERT A. SKLAR TRUST,**
**ROBERT A. SKLAR**, Trustee of the Robert A. Sklar Trust,
**C. RICHARD STASNEY, M.D.,**
**SUSAN P. STASNEY,**
**STEPHEN WEINSTEIN,**
**BRENDA WEINSTEIN,**

**JACK ZEMER,**
**JEFFREY L. BERNSTEIN,**
**AMY S. BERNSTEIN,**
**CHRISTOPHER BRANOFF,**
**KIMBERLEY BRANOFF,**
**RICHARD LOUISE LEVENGOOD,**
**LYNDA OVERLY LEVENGOOD,**
**FRED H. FRIEDMAN,**
**BRENDA C. FRIEDMAN,**
**BENJE R. DANIEL, JR., DDS, MS, PA,**
**R. DAVID & CHERYL M. JONES REVOCABLE LIVING TRUST,**
**R. DAVID JONES,** Trustee of the R. David & Cheryl M. Jones Revocable Living Trust,
**CHERYL M. JONES,** Trustee of the R. David & Cheryl M. Jones Revocable Living Trust,
**LILY ANN FRIEDMAN,**
**831 701 ONTARIO LIMITED,** a Canadian Corporation,
**GARRY R. KIMBALL,**
**CATHERINE G.C. KIMBALL,**
**DAVID FRIEDMAN,**
**MICHAEL G. ROBINSON,**
**CAROLINE ROBINSON,**
**HAMMER FAMILY LIMITED PARTNERSHIP,**
**ROBERT HAMMER,** Partner of Hammer Family Limited Partnership,
**RENEE HAMMER,** Partner of Hammer Family Limited Partnership,
**BARRY HAMMER,** Partner of Hammer Family Limited Partnership,
**JEFFREY HAMMER,** Partner of Hammer Family Limited Partnership,
**8202 RCC ASPEN HIGHLANDS, LLC,** a Texas limited liability company,
**CARL ANDREW RUDELLA,**
**TAMMIEJO RUDELLA,**
**ROBERT KAUFMANN,**
**DAVID S. ISRAEL TRUST,**
**DAVID S. ISRAEL,** Trustee of the David S. Israel Trust,
**J & B WOODS FAMILY ASSOCIATES, LLC,**
**MICHAEL P. PACIN,**
**AMY D. RONNER,**
**BRUCE E. REID,**
**ROSEMARY W. REID,**
**CHARLES F.A. MCCLUER, III, P.A.,** a Texas corporation,
**FRANK R. VOGL,**
**EMILY VOGL,**
**LEVY VENTURES LIMITED PARTNERSHIP,** a Florida partnership,
**DRE, INC.,** an Illinois corporation,
**ROBERT C. HUBBELL,**
**JAN H. HUBBELL,**
**DAVID SCHAECTER,**
**VLADIMIR MALAKHOVA,**
**LUDMILA MALAKHOVA,**

**EL PASO MANAGEMENT, LLC,** an Alaska limited liability company**,**
**PEPKOWTIZ TRUST,**
**SAMUEL H. PEPKOWITZ,** Trustee of the Pepkowitz Trust,
**ROBERTA A. PEPKOWITZ,** Trustee of the Pepkowitz Trust,
**JH CAPITAL CORPORATION,** a Florida corporation,
**DAVID S. BLACHER,**
**CONSTANCE H. BLACHER,**
**BRYAN J. HAWKINS,**
**LAURA A. HAWKINS,**
**BRUCE M. NESBITT REVOCABLE TRUST,**
**BRUCE M. NESBITT,** Trustee of the Bruce M. Nesbitt Revocable Trust,
**LE BEFANA TRUST,**
**MONICA M. CAMPANELLA,** Trustee of the Le Befana Trust,
**REETA G. CASEY REVOCABLE LIVING TRUST,**
**REETA G. CASEY,** Trustee of the Reeta G. Casey Revocable Living Trust,
**ANTHONY F. PRINSTER,**
**SALLY L. PRINSTER,**
**KEVIN E. GRANT,**
**GILBERT P. GRADINGER,**
**SALLY A. GRADINGER,**
**JEFFREY RAPPIN,**
**PENNY BROWN,**
**MILAN RANDIC TRUST,**
**MILAN RANDIC,** Trustee of the Milan Randic Trust,
**MIRIJANA RANDIC TRUST,**
**MIRIJANA RANDIC,** Trustee of the Mirjana Randic Trust,
**CHARLES B. BUCHANAN,**
**CHARLOTTE S. BUCHANAN,**
**ANNETTE KALCHEIM TRUST,**
**ANNETTE KALCHEIM,** Trustee of the Annette Kalcheim Trust,
**MINDY R. WEXLER REVOCABLE TRUST,**
**MINDY R. WEXLER,** Trustee of the Mindy R. Wexler Revocable Trust,
**JOHN BERGSTROM,**
**NORMAN C. CREECH,**
**SUSAN S. CREECH,**
**JOHN E. BLANCHARD,**
**JENNIFER BLANCHARD,**
**ROBERT BLANCHARD,**
**ELLEN BLANCHARD,**
**LOUISE B. HOVERSTEN,**
**HOWARD A. SIMON,**
**ELIZABETH M. SIMON,**
**GARY S. CHAVIN,**
**PAT A. CHAVIN,**
**GREG JACOBSON,**
**DOUGLAS KADISON,**

3

**CAROL KADISON,**
**JOSEPH FRYZER,**
**DANNY V. LACKEY LIVING TRUST,**
**DANNY V. LACKEY,** Trustee of the Danny V. Lackey Living Trust,
**NANCY L. LACKEY LIVING TRUST,**
**NANCY L. LACKEY,** Trustee of the Nancy L. Lackey Living Trust,
**H.M. PALM,**
**MARGARET PALM,**
**PAUL C. ROSENTHAL,**
**CARLA P. ROSENTHAL,**
**THE DAVID & LESA FIGLIULO FAMILY REVOCABLE LIVING TRUST,**
**DAVID A. FIGLIULO,** Trustee of the David & Lesa Figliulo Family Revocable Living Trust,
**LESA A. FIGLIULO,** Trustee of the David & Lesa Figliulo Family Revocable Living Trust,
**WALTER H. PETRIE,**
**NANCY A. PETRIE,**
**KENNETH TOMPKINS,**
**KIMBERLY TOMPKINS,**
**BARBARA L. PALAZZOLO REVOCABLE TRUST,**
**BARBARA L. PALAZZOLO,** Trustee of the Barbara L. Palazzolo Revocable Trust,
**DANA JAMES WEINKLE,**
**SUSAN HOLLOWAY WEINKLE,**
**AMI RABINOWITZ TRUST,**
**AMI RABINOWITZ,** Trustee of the Ami Rabinowitz Trust,
**EVAN RABINOWITZ,** Trustee of the Ami Rabinowitz Trust,
**KONA, LTD.,** a Texas limited partnership,
**STEVE V. GURLAND,**
**CAROLINE I. GURLAND,**
**SPENCER L. YOUNGBLOOD FAMILY PARTNERSHIP LTD,** a Texas limited partnership
**KENNETH D. CUSHMAN,**
**CAROL A. CUSHMAN,**
**DAN MOSKOWITZ,**
**WENDY MOSKOWITZ,**
**GARY SHELDON KOHLER,**
**DEBORAH JOY KOHLER,**
**LEWIS J. HIRSCH,**
**GAYLE HIRSCH,**
**BRADLY PROPERTIES, LLC,** an Alabama limited liability company,
**ANNA P. ZALK,**
**MOUNTAIN DRIVE TRUST,**
**DAVID JACKEL,** Trustee of the Mountain Drive Trust,
**WILLIAM M. WAXMAN,**
**ALAN S. WAXMAN,**
**HYLAND REVOCABLE LIVING TRUST,**
**TIMOTHY J. HYLAND,** Trustee of the Hyland Revocable Living Trust,
**NATALIE B. HYLAND,** Trustee of the Hyland Revocable Living Trust,
**NEIL SPIZIZEN TRUST,**

4

**NEIL SPIZIZEN,** Trustee of the Neil Spizizen Trust,
**D.L. WILKEY,**
**JULIE JANICEK-WILKEY,**
**CASS FRANKLIN,**
**VERA STEWART FRANKLIN,**
**DARYL CRAMER,**
**HEATHER CRAMER,**
**HOPE S. BARKAN,**
**JACOB LOUIS SLEVIN,**
**RONALD LAWRENCE GLAZER TRUST,**
**RONALD LAWRENCE GLAZER,** Trustee of the Ronald Lawrence Glazer Trust,
**CHRISTIANE NICOLINI GLAZER TRUST**,
**CHRISTIANE NICOLINI GLAZER,** Trustee of the Christiane Nicolini Glazer Trust,
**ERICH TENGELSEN,**
**CHARLES A. GOTTLOB,**
**CYNTHIA G. GOTTLOB,**
**LUCY D. ANDA,**
**NEIL G. ARNOVITZ,**
**PETER CHARLES CROWLEY TRUST,**
**MELISSA T. CROWLEY,** Trustee of the Peter Charles Crowley Trust,
**PATRICK A. LATTORE,**
**DEE P. LATTORE,**
**ROCKY J. MOUNTAIN,**
**JANET M. MOUNTAIN,**
**PHYLLIS SCHOFIELD,**
**WILLIAM F. SCHOFIELD, JR.,**
**MARK L. HORWITZ,**
**SUSAN J. HORWITZ,**
**JOEL SACHER,**
**SUSAN J. SACHER,**
**C & N ASSETS, LTD.,** a Texas limited partnership,
**LISA MOTTOLA TRUST,**
**LISA MOTTOLA,** Trustee of the Lisa Mottola Trust,
**MEL A. BARKAN,**
**JOHN PATRICK MCEVOY,**
**MARIA GOMEZ MCEVOY,**
**GREICO FAMILY LIMITED PARTNERSHIP,** a Texas limited partnership,
**CLAIR F. WHITE,**
**LINDA GAGE-WHITE**
**JAWSFW, LLC,** a Georgia limited liability company,
**JOHN EGLE,**
**DARRYL ROSEN,**
**MICHAEL A. CAPASSO,**
**JEFFREY C. BERMANT,**
**ROCK PILE, LLC**, a Minnesota limited liability company,
**MARY GLANCY HOBIN TRUST,**

5

**MARY GLANCY HOBIN,** Trustee of the Mary Glancy Hobin Trust,
**PATRICIA TRAVERS,**
**MICHAEL HOBIN,**
**MARK D. DEMBS,**
**MONA L. DEMBS,**
**MORTON EUGENE SHERMAN,**
**SUSAN ANN SHERMAN,**
**JOHN H. THAMES, JR.,**
**THOMAS R. WRIGHT,**
**MAUREEN D. WRIGHT,**
**BRENDA ZELNICK,**
**CORPORATE RETREATS, LLC,** a South Carolina limited liability company,
**RICHARD F. WACKEEN,**
**SHARON R. WACKEEN,**
**JURKOWITZ 1996 FAMILY TRUST,**
**MORRIS M. JURKOWITZ,** Trustee of the Jurkowitz 1996 Family Trust,
**IRMA JURKOWITZ,** Trustee of the Jurkowitz 1996 Family Trust,
**RICK M. ODDO TRUST,**
**RICK M. ODDO,** Trustee of the Rick M. Oddo Trust,
**JEFFREY B. ODDO TRUST,**
**JEFFREY B. ODDO,** Trustee of the Jeffrey B. Oddo Trust,
**BRADFORD T. ODDO TRUST,**
**BRADFORD T. ODDO,** Trustee of the Bradford T. Oddo Trust,
**GRAHAM J. ALBUTT TRUST,**
**NICOLA H. ALBUTT,** Trustee of the Graham J. Albutt Trust,
**MARK E. HARANZO,** Trustee of the Graham J. Albutt Trust,
**THOMAS G. FRIERMOOD,**
**KAY K. FRIERMOOD,**
**RICHARD N. MARK,**
**STUART A. EPSTEIN,**
**JUDY EPSTEIN,**
**JOHN M. KEANE,**
**RICHARD B. BINDLER,**
**GENE M. BINDLER,**
**ALLEN D. MCGEE,**
**J. HOLTON MCGEE,**
**8207 DEL, LLC,** a Colorado limited liability company,
**JENNIFER COLSON,**
**ERIC C. COLSON,**
**JUDY L. PECKLER,**
**BARRY K. SCHOCHET,**
**GAYLE WEISS,**
**BRAIN D. ISROFF,**
**LOUISE A. ISROFF,**
**RONALD F. LEMAR,**
**WILLIAM N. SHOFF,**

6

**OLGA A. SELIVANOVA,**
**HAZIM SAFI,**
**DEBORAH CAVAZOS SAFI,**
**GAIL LOCKYER,**
**ZAMALT, LLC,** a Pennsylvania limited liability company,
**SIP SCOTCH INVESTMENTS, LLC,** a Texas limited liability company,
**LILIAN BABCOCK,**
**JOHN BENKO,**
**NATALIE BENKO,**
**MARIA P. GIUDICI TRUST**
**GERALD L. GIUDICI,** Trustee of the Maria P. Giudici Trust,
**MARIA P. GIUDICI,** Trustee of the Maria P. Giudici Trust,
**GUENTHERS PARTNERS I LLC,** a Colorado limited liability company,
**MAAZB FAMILY LIMITED PARTNERSHIP,** a Texas limited partnership, **D&J**
**PROPERTIRES, LLC,** a Florida limited liability company,
**BRUCE T. ADELMAN,**
**SUSAN ADELMAN,**
**MARTIN KOLSKY,**
**CAROLE KOLSKY,**
**BARBARA WRUBEL,**
**LYNDA DUPRE,**
**LOIS DUPRE-SHUSTER,**
**SIDNEY BROWN,**
**SANDRA H. BROWN,**
**HUDSON NEWS DISTRIBUTORS, LLC,** a New Jersey limited liability company,
**CAROL ANNE CANNON,**
**JOHN J. SCHULTZ III TRUST,**
**JOHN J. SCHULTZ III,** Trustee of the John J. Schultz III Trust,
**DONALD A. KURZ TRUST,**
**DONALD A. KURZ,** Trustee of the Donald A. Kurz Trust,
**BRETT A. GOTTSCH,**
**BETTE ANN SACKS ALBERT,**
**J&M ZAMORA FAMILY LP,** a Texas limited partnership,
**WILLIAM S. BLOOM,**
**BEVERLY S. BLOOM,**
**ALLAN C. SILVERSTEIN TRUST,**
**ALLAN C. SILVERSTEIN,** Trustee of the Allan C. Silverstein Trust,
**BENZ LIVING TRUST,**
**WILLIAM R. BENZ,** Trustee of the Benz Living Trust,
**KATHERINE M. BENZ,** Trustee of the Benz Living Trust,
**DERBY CITY INVESTMENTS, LLC,** a Texas limited liability company,
**NELSON TRUST,**
**BRUCE E. NELSON,** Trustee of the Nelson Trust,
**MARRIANNE MAGNUSON,** Trustee of the Nelson Trust,
**ADELMAN FAMILY LIMITED PARTNERSHIP,** a Michigan limited partnership,
**B & B HIGHLANDS, LLC,** an Illinois limited liability company,

7

**KYLE NAGEL,**
**CAROL J. HIDALGO,**
**KATHERINE F. CUNTZ,**
**LANDES ASPEN, LLC,** a Colorado limited liability company,
**PERRY COX,**
**THOMAS N. LITTMAN,**
**KIMBERLY A. LITTMAN,**
**STEPHEN J. HOFFMAN,**
**DALE HOFFMAN,**
**DEBORAH STEGNER,**
**MARC BRAHA,**
**FRANKLIN FAMILY INVESTMENTS, LTD.,** a Texas limited liability,
**BR4 REHOBOTH, LTD.,** a Texas limited liability,
**SCOTT DANIEL SEGAL,**
**JOANNA F. SEGAL,**
**LON M. BARONNE,**
**KAREN G. BARONNE,**
**DOUGLAS M. PATINKIN,**
**JENNY R. PATINKIN,**
**MICHAEL B. GROSS,**
**SHELLEY R. SINGER,**
**ASPEN HIGHLANDS, LLC,** a North Carolina limited liability company,
**JOEL A. SCHNEIDER,**
**KAREN SCHNEIDER BENRUBI,**
**ALAN B. SCHNEIDER,**
**MERLE J. SCHNEIDER,**
**RICHARD BENRUBI,**
**PAUL BRUNSWICK,**
**LISA M. MILLER,**
**SUSAN M. ALLEN,**
**KRAYNDEL FARBER TRUST,**
**KRAYNDEL FARBER,** Trustee of the Krayndel Farber Trust,
**EDWARD R. FARBER,** Trustee of the Krayndel Farber Trust,
**GEORGE W. HALIGOWSKI,**
**EVAN F. TRESTMAN,**
**DAVID M. FLAUM,**
**ILENE L. FLAUM,**
**WIVIOTT FAMILY TRUST,**
**JEFFREY RICHTER,** Trustee of the Wiviott Family Trust,
**STACEY TORCHON,** Trustee of the Wiviott Family Trust,
**MICHAEL S. CASTLEMAN,**
**MARGARET A. CASTLEMAN,**
**JONATHAN LERNER,**
**ROBIN BROWN,**
**ALEXA LERNER,**
**LAWERENCE BROWN,**

**TRIP COLORADO, LLC,** a Colorado limited liability company,
**BRAD J. BACHMANN,**
**MICHELLE STERN,**
**HAL S. MULLINS,**
**MARK A. JACOBY,**
**DEBORAH J. JACOBY,**
**MICHAEL B. HURWITZ,**
**BRANDI M. HURWITZ,**
**KEVIN AND MARCIE TAYLOR TRUST,**
**KEVIN TAYLOR,** Trustee of the Kevin and Marcie Taylor Trust,
**MARCIE TAYLOR,** Trustee of the Kevin and Marcie Taylor Trust,
**NINA DEVELOPMENT, LTD.,** a Texas limited partnership,
**WINSTON & LADY, LP,** a Delaware limited partnership

Plaintiffs,

v.

**MARRIOTT VACATIONS WORLDWIDE CORPORATION,** a Delaware corporation,
**MARRIOTT OWNERSHIP RESORTS, INC.,** d/b/a **MARRIOTT VACATION CLUB INTERNATIONAL**, a Delaware corporation,
**ASPEN HIGHLANDS CONDOMINIUM ASSOCIATION,** a Colorado non-profit corporation,
**RITZ-CARLTON MANAGEMENT COMPANY, LLC,** a Delaware limited liability company,
**COBALT TRAVEL COMPANY, LLC, INC.,** a Delaware limited liability company, and
**THE LION & CROWN TRAVEL CO., LLC,** a Delaware limited liability company,
Defendants.

---

### SEVENTH AMENDED COMPLAINT AND JURY DEMAND

---

Plaintiffs, as listed in the caption and in paragraph 14 *infra,* by and through their undersigned counsel, for their Complaint and Jury Demand, state and allege as follows:

### I.    INTRODUCTION AND BACKGROUND

1.    This lawsuit concerns Defendants' unlawful acts that decimated the value of deeded 1/12 fractional interests that Plaintiffs and other owners ("Ritz-Carlton Aspen Owners") purchased in the Ritz-Carlton Club Aspen Highlands, located in Aspen, Colorado. Over the last

several years, Defendants, including Defendant Marriott Vacations Worldwide Corporation ("MVW") and its subsidiaries and affiliates, have knowingly damaged Plaintiffs and unjustly enriched themselves by violating (or aiding and abetting in, or conspiring to violate) various fiduciary duties owed by certain Defendants to Ritz-Carlton Aspen Owners.  These violations undercut the essential features of the fractional interests sold to Plaintiffs and Ritz-Carlton Aspen Owners.

2.      In the 1980s, Marriott International, Inc. established Defendant Marriott Ownership Resorts Inc., d.b.a. Marriott Vacation Club International ("MVCI"), to run Marriott's timeshare operations. MVCI originally sold timeshares in one-week intervals. In 1984, Marriott's Monarch on Hilton Head Island became the first MVCI resort. By 2009, MCVI had grown to over 400,000 timeshare owners who had purchased one-week interval timeshares.

3.      In 1999, MVCI introduced "The Ritz-Carlton Club" (also known as "The Ritz-Carlton Destination Club" or "RCDC") as a luxury alternative to its "Marriott Vacation Club" timeshare product, which it describes as its "upscale" product line. The Ritz-Carlton Club sold deeded 1/12 fractional ownership interests. The luxury nature, longer use intervals[1], and exclusivity distinguished The Ritz-Carlton Club fractional interests from MVCI's "Marriott Vacation Club" product line. Based on these distinctions and attributes, The Ritz-Carlton Club interests were substantially more expensive.

4.      In 2001, the Ritz-Carlton Club, Aspen Highlands was established as the first fractional ownership property for The Ritz-Carlton Club brand. Thereafter, between 2001 and

---

[1] The Ritz-Carlton Club 1/12 fractionals sold at Ritz-Carlton Club, Aspen Highlands entitled purchasers to 4 weeks of use per year.  The other Ritz-Carlton Clubs sold 1/12 fractionals entitling three weeks of use, with the remaining 16 weeks used by members on a "space available" basis. Use of the "space available" weeks was given to members pursuant to the rules established in the Ritz-Carlton Membership Program.

2012, Defendants developed and sold approximately 3,200 of the deeded 1/12 luxury fractional interests under The Ritz-Carlton Club brand at the following nine locations: Aspen Highlands, Colorado; Bachelor Gulch, Colorado; Jupiter, Florida; North Lake Tahoe, California; St. Thomas, U.S.V.I.; San Francisco, California; Vail, Colorado; Abaco, Bahamas; and Maui, Hawaii.

5.      In 2010 MCVI began converting legacy "week owners" of Marriott Vacation Club timeshares to a "points-based product" wherein purchasers bought interests in a land trust ("MVC Trust") set up by MVCI to own its resorts. By the end of 2011, many of the Marriott Vacation Club's over 400,000 owners at over 50 Marriott Vacation Club resorts worldwide were utilizing points purchased from MVCI to trade for use of Marriott Vacation Club resorts. Further, by the end of 2011, Marriott Vacation Club points were available for sale on the secondary market for a fraction of the cost at which MVCI sold them "new." In addition, Marriott Vacation Club Points were available to "rent" from other members, enabling them to upgrade to stays at more desirable resorts than their "home resorts."

6.      Beginning in 2001, hundreds of owners at the Ritz-Carlton Aspen, including Plaintiffs, paid premium prices, averaging over $200,000, with some selling for over and up to $500,000, for their deeded 1/12 fractional interest at the Ritz-Carlton Club in Aspen Highlands, (known as "Tourist Accommodation Units" or "Fractional Units"). These Fractional Units were sold based on Defendants' claims that the Fractional Units were superior to MVCI's other timeshare offerings in that the Ritz-Carlton Club Aspen Highlands would be exclusive and operate for the use, benefit and enjoyment of Ritz-Carlton Club Members as well as their family and guests "like a second home," supporting the expensive purchase prices for the Fractional Units as compared to other MVCI timeshare offerings. Defendants further stated that the Fractional Units were transferrable like any other form of deeded real estate.

7.     In November 2011, Marriott International, Inc. "spun-off" Defendant MVW as a separately traded public company (NYSE: VAC), and MVW became the exclusive developer and manager of vacation ownership and related products under the Marriott brand and the exclusive developer of vacation ownership and related products under the Ritz-Carlton brand.

8.     In its first Annual Report filed following the spin-off (dated March 21, 2012), MVW revealed its intent to abandon the upscale Ritz-Carlton product line, stating: "we have significantly scaled back our development of Luxury segment vacation ownership products. We do not have any Luxury segment projects under construction nor do we have any current plans for new luxury development. While we will continue to sell existing Luxury segment vacation ownership products, we also expect to evaluate opportunities for bulk sales of finished inventory and disposition of undeveloped land."

9.     The spinoff of MVW and move to a points-based model for the Marriott Vacation Club coincided with a decision to "re-engineer" the RCDC product line and merge it with the MVW's less exclusive and inexpensive timeshare club, the Marriott Vacation Club. By mid-2011 at the latest, a "Growth and Governance Council" within Marriott International, known as the GGC, had decided to "wind down" the RCDC and began plotting how to do so in the most profitable way to MVW without regard to the predictable harm to Plaintiffs and other RCDC owners. Beginning by mid-2011, the Marriott Defendants, acting through the GGC and a new Corporate Growth Committee at the newly spun-off MVW, formulated and then approved in May 2012 a plan to profit from the "wind down" by affiliating the RCDC with the Marriott Vacation Club, and use the promise of access to the exclusive RCDC to help sell Marriott Vacation Club points. The Marriott Defendants did this so-called "re-engineering" knowing full well that it would harm Plaintiffs and other RCDC purchasers by diluting the exclusivity for which they paid

12

premium prices and thereby diminishing values and insuring that they would not recover. The Marriott Defendants would later peddle this plan to owners, including the Plaintiffs, as the "evolution" of the RCDC.

10.     Beginning in 2011 and continuing through 2014 in pursuit of this re-engineering, as well as thereafter, Defendants MVW, Ritz-Carlton Management Company, LLC ("RC Management"), The Cobalt Travel Company, LLC ("Cobalt") and the other Defendants used their complete control over Defendant Aspen Highlands Condominium Association, Inc. ("Association"), as well as their control over the use and operation of Plaintiffs' Fractional Units, to eliminate the very features for which Plaintiffs and Ritz-Carlton Aspen Owners paid premium prices, thereby destroying the value of the Fractional Units sold to Plaintiffs and Ritz-Carlton Aspen Owners. By these actions, and in breach of their fiduciary duties owed as a result of the control maintained over Plaintiffs' Fractional Units and the fact that Defendants were agents or sub-agents of Plaintiffs and Ritz-Carlton Aspen Owners as well as through fraudulent behavior and conspiracy, Defendants profited at Plaintiffs' and the Ritz-Carlton Aspen Owners' expense. Even though Defendants' actions destroyed the value of the Fractional Units, Plaintiffs and Ritz-Carlton Aspen Owners continue to pay steadily *increasing* annual dues, compounding the harm. A large percentage of these dues go directly to Defendants in the form of lucrative "management fees" and other "reimbursements" supposedly incurred by Defendants under the management contracts, including payroll related costs. These management fees and reimbursements are paid solely by Fractional Unit owners at the Ritz-Carlton Club Aspen Highlands to the Defendants regardless of usage or occupancy.

11.     Due to Defendants' conduct described herein and other actions to be discovered and proven, the Fractional Units owned by Plaintiffs and Ritz-Carlton Aspen Owners are now

13

worth less than 20% of the original purchase prices, while, on the other hand, Defendants — including MVW, MVCI, RC Management, Cobalt, and The Lion & Crown Travel Co., LLC ("L&C") — have benefitted from ill-gotten profits and have become unjustly enriched. Due to defendants' actions, MVC members can now enjoy the benefits and use of the Ritz-Carlton Club Aspen Highlands property for a fraction of the cost that Plaintiffs and Ritz-Carlton Aspen Owners paid. For example, an MVC member can buy (or simply rent) MVC points sufficient to stay at the Ritz-Carlton Club ,Aspen Highlands for approximately twenty percent of what it costs Ritz-Carlton Aspen Owners, who paid $200-400 thousand for substantially similar rights and benefits.

## II.    JURISDICTION AND VENUE

12.    This action was filed in the District Court of Colorado, Pitkin County which had jurisdiction over the subject matter at issue because this is a civil action for damages and/or equitable relief.  Colo. Const. Art. VI, § 9(1). Defendants MVW, MVCI, RC Management, Cobalt, and The Lion & Crown Travel Co., LLC removed the action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332, 1446 and 1453.

13.    Venue is proper as the case was removed from the District Court of Pitkin County, Colorado and the District Court of Pitkin County, Colorado is in the District of Colorado. 28 U.S.C. § 28. The case was thus properly removed to this Court. 28 U.S.C. § 1441(a).

## III.    PARTIES

### A.    Plaintiffs

14.    The following are Plaintiffs:

a)    Plaintiff **RCHFU, LLC** is organized under the laws of Colorado. Its only members, Jennifer Kaplan and Alexander H. Busansky, are citizens of California. Pursuant to a uniform Purchase Contract Ms. Kaplan and Mr. Busansky signed in 2003, they paid $218,500 to the seller

14

Ritz-Carlton Development Company and obtained title to Residence Interest No. 12 consisting of an undivided 1/12 interest in Residence No. 8314 of Aspen Highlands Condominiums, according to the Declaration of Condominium for Aspen Highlands Condominiums, recorded January 11, 2001, Reception No. 450454 (referred to herein as "Aspen Highlands Condominiums" or "Ritz Aspen Highlands"). Pursuant to an Assignment of Claims, Ms. Kaplan and Mr. Busansky transferred all of their claims and all interests in claims arising out of ownership or under the Purchase Contract or otherwise and pertaining to the undivided 1/12 interest in Residence Unit No. 8314 at the Ritz Aspen Highlands to RCHFU, LLC.

b)      Plaintiffs **Jeffrey A. Bayer** and **Gail L. Bayer** are citizens of the State of Alabama. Pursuant to a uniform Purchase Contract signed in 2001, the Bayer Plaintiffs paid $180,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 9 consisting of an undivided 1/12 interest in Residence No. 8308 of the Aspen Highlands Condominiums.

c)      Plaintiff **Robert Buzzetti** is a citizen of the State of Florida. Pursuant to a uniform Purchase Contract signed in 2002, Mr. Buzzetti paid $320,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 4 consisting of an undivided 1/12 interest in Residence No. 8203 of the Aspen Highlands Condominiums.

d)      Plaintiff **Julie C. Canner** is a citizen of the State of Michigan. Pursuant to a uniform Purchase Contract signed in 2001, Ms. Canner paid $170,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 13 consisting of an undivided 1/12 interest in Residence No. 8402 of the Aspen Highlands Condominiums.

e)      Plaintiffs **Lee James Chimerakis** and **Theresa Ann Chimerakis** are citizens of the State of Florida. In 2008, the Chimerakis Plaintiffs paid $310,000.00 to the seller Sharon A.

15

Held and Ian C. Hague, and obtained title to Residence Interest No. 5 consisting of an undivided 1/12 interest in Residence No. 2405 of the Aspen Highlands Condominiums.

       f)      Plaintiffs **Kevin Thomas Clare** and **Nancy Lynne Shute** are citizens of the State of California. In 2005, the Clare Plaintiffs paid $266,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 5 consisting of an undivided 1/12 interest in Residence No. 2206 of the Aspen Highlands Condominiums.

       g)      Plaintiffs **Toby L. Cone Trustee** is a citizen of the State of Connecticut and Trustee of the **Toby L. Cone Trust**. Pursuant to a uniform Purchase Contract signed in 2003, the Cone Plaintiffs paid $220,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 10 consisting of an undivided 1/12 interest in Residence No. 8406 of the Aspen Highlands Condominiums.

       h)      Plaintiffs **Richard Davis** and **Shirley J. Davis** are citizens of the State of Texas. Pursuant to a uniform Purchase Contract signed in 2002, the Davis Plaintiffs paid $290,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Unit No. 10 consisting of an undivided 1/12 interest in Residence No. 8105 of the Aspen Highlands Condominiums.

       i)      Plaintiff **Carl Eichstaedt, III** is a citizen of the State of California Pursuant to a uniform Purchase Contract signed in 2004, the Eichstaedt Plaintiff paid $238,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Unit No. 7 consisting of an undivided 1/12 interest in Residence No. 2204 of the Aspen Highlands Condominiums.

       j)      Plaintiffs **James Richard Farquhar** and **Jennifer Lucille Farquhar** are citizens of Australia. Pursuant to a uniform Purchase Contract signed in 2008, the Farquhar Plaintiffs paid $210,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence

Unit No. 5 consisting of an undivided 1/12 interest in Residence No. 2302 of the Aspen Highlands Condominiums.

k)    Plaintiff **Larry Koppelman** is a citizen of the State of California and Trustee of the **Koppelman Family Trust**. Pursuant to a uniform Purchase Contract signed in 2001, the Koppelman Plaintiffs paid $310,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 6 consisting of an undivided 1/12 interest in Residence No. 8205 of the Aspen Highlands Condominiums.

l)    Additionally, pursuant to a uniform Purchase Contract signed in 2001, the **Koppelman Plaintiffs** paid $171,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 1 consisting of an undivided 1/12 interest in Residence No. 8404 of the Aspen Highlands Condominiums.

m)    Additionally, pursuant to a uniform Purchase Contract signed in 2002, the **Koppelman Plaintiffs** paid $295,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 2 consisting of an undivided 1/12 interest in Residence No. 8305 of the Aspen Highlands Condominiums.

n)    Plaintiffs **David Lancashire** and **Stephen Andrews** (collectively, "Lancashire/Andrews") are citizens of the State of Texas. Pursuant to a uniform Purchase Contract signed in 2003, Lancashire/Andrews paid $200,000 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 6 consisting of an undivided 1/12 interest in Residence No. 8403 of the Aspen Highlands Condominiums.

o)    Plaintiff **David Lancashire** is a citizen of the State of Texas. Pursuant to a uniform Purchase Contract signed in 2008, Lancashire Plaintiff paid $230,000 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 4 consisting of an undivided 1/12

17

interest in Residence No. 8105 of the Aspen Highlands Condominiums.

p)      Plaintiff **Bonnie Likover** is a citizen of the State of Texas. In 2008, Likover Plaintiff paid $173,500.00 to the seller Jonathan E. Kagan and obtained title to Residence Interest No. 12 consisting of an undivided 1/12 interest in Residence No. 8202 of the Aspen Highlands Condominiums.

q)      Plaintiff **Craig Lipton** is a citizen of the State of California. In 2007, Lipton Plaintiff paid $180,000.00 to the seller Linda Rozynes, and obtained title to Residence Interest No. 7 consisting of an undivided 1/12 interest in Residence No. 8311 of the Aspen Highlands Condominiums.

r)      Plaintiffs **Jeremy Lowell, D.D.S.** and **Lori Lowell** are citizens of the State of Colorado. Pursuant to a uniform Purchase Contract signed in 2005, the Lowell Plaintiffs paid $250,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 9 consisting of an undivided 1/12 interest in Residence No. 2204 of the Aspen Highlands Condominiums.

s)      Plaintiffs **Edward P. Meyerson** and **Andrea C. Meyerson** are citizens of the State of Alabama. In 2004, the Meyerson Plaintiffs paid $234,000.00 to the seller Jordan Grabel and Victoria Grabel, and obtained title to Residence Interest No. 12 consisting of an undivided 1/12 interest in Residence No. 8302 of the Aspen Highlands Condominiums.

t)      Plaintiffs **Jerry M. Nowell** and **Dee Ann Davis Nowell** are citizens of the State of Arizona and as Trustees of the **Jerry M. Nowell Trust** and the **Dee Ann Davis Nowell Trust**, respectively. Pursuant to a uniform Purchase Contract signed in 2004, Nowell Plaintiffs paid $210,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 10 consisting of an undivided 1/12 interest in Residence No. 8106 of the Aspen

Highlands Condominiums.

u)    Plaintiff **Thomas M. Prose, M.D.** is a citizen of the State of Michigan and Trustee of the **Thomas M. Prose Revocable Living Trust**. Pursuant to a uniform Purchase Contract signed in 2008, the Prose Plaintiffs paid $369,000.00 to the seller Ritz-Carlton Development Company, and obtained title to two undivided 1/12 interests in Residence No. 2401 of the Aspen Highlands Condominiums. The interests are described in weeks. Additionally, pursuant to a uniform Purchase Contract signed in 2009, the Prose Plaintiffs paid $120,650.00 to the seller Ritz-Carlton Development Company, and obtained title to an undivided 1/12 interest in Residence No. 2304 of the Aspen Highlands Condominiums. The interest is described in weeks.

v)    Plaintiffs **Case M. Rogers** and **Courtney S. Rogers** are citizens of the State of North Carolina. Pursuant to a uniform Purchase Contract signed in 2003, the Rogers Plaintiffs paid $220,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 4 consisting of an undivided 1/12 interest in Residence No. 8106 of the Aspen Highlands Condominiums.

w)    Plaintiff **Robert A. Sklar** is a citizen of the State of Michigan and Trustee of the **Robert A. Sklar Trust**. In 2012, Sklar Plaintiffs paid $80,000.00 to the seller Gregory R. Nelson and Barbara L. Nelson, Trustees of the Nelson Revocable Declaration Of Trust, and obtained title to Residence Interest No. 10 consisting of an undivided 1/12 interest in Residence No. 8204 of the Aspen Highlands Condominiums.

x)    Plaintiffs **C. Richard Stasney** and **Susan P. Stasney** are citizens of the State of Texas. Pursuant to a uniform Purchase Contract signed in 2001, the Stasney Plaintiffs paid $300,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Interest No. 11 consisting of an undivided 1/12 interest in Residence No. 8205 of Aspen Highlands Condominiums.

19

y)      In 2011, **C. Richard Stasney** paid $261,000.00 to the sellers Benvenuto Residential Revocable Trust, as to an undivided 50% interest and DRE, Inc., as to an undivided 50% interest and obtained title to an undivided 1/12 interest in Residence No. 2305 of the Aspen Highlands Condominiums. The interest is described in weeks.

z)      Plaintiffs **Stephen Weinstein** and **Brenda Weinstein** are citizens of the State of Florida. In 2005, Weinstein Plaintiffs paid $227,000.00 to the seller David L. Helfet and Mary B. Helfet and obtained title to Residence Interest No. 11 consisting of an undivided 1/12 interest in Residence No. 8314 of Aspen Highlands Condominiums.

aa)      Plaintiff **Jack Zemer** is a citizen of the State of California. Pursuant to a uniform Purchase Contract signed in 2001, Zemer Plaintiff paid $230,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 11 consisting of an undivided 1/12 interest in Residence No. 8405 of Aspen Highlands Condominiums.

bb)      Plaintiffs **Jeffrey L. Bernstein** and **Amy S. Bernstein** are citizens of the State of California. Pursuant to a uniform Purchase Contract signed in 2006, the Bernstein Plaintiffs  paid $275,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 5 consisting of an undivided 1/12 interest in Residence No. 8106 of Aspen Highlands Condominiums.

cc)      Plaintiffs **Christopher Branoff** and **Kimberley Branoff** are citizens of the State of Florida. Pursuant to a uniform Purchase Contract signed in 2003, the Branoff Plaintiffs paid $230,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 3 consisting of an undivided 1/12 interest in Residence No. 8410 of Aspen Highlands Condominiums.

dd)      Plaintiffs **Richard Louis Levengood** and **Lynda Overly Levengood** are citizens

of the State of Pennsylvania. Pursuant to a uniform Purchase Contract signed in 2006, the Levengood Plaintiffs paid $435,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 1 consisting of an undivided 1/12 interest in Residence No. 2407 of Aspen Highlands Condominiums.

ee)    Plaintiffs **Fred H. Friedman** and **Brenda C. Friedman** are citizens of the State of Alabama. Pursuant to a uniform Purchase Contract signed in 2003, the Friedman Plaintiffs paid $200,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 8 consisting of an undivided 1/12 interest in Residence No. 8215 of Aspen Highlands Condominiums.

ff)    Plaintiff **Benje R. Daniel, Jr., DDS, MS, PA** is a citizen of the State of Texas. Pursuant to a uniform Purchase Contract signed in 2005, Plaintiff paid $351,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Unit No. 5 consisting of an undivided 1/12 interest in Residence No. 8203 of Aspen Highlands Condominiums.

gg)    Plaintiffs **R. David Jones** and **Cheryl M. Jones** are citizens of the State of Texas and Trustees of the **R. David & Cheryl M. Jones Revocable Living Trust**. Pursuant to a uniform Purchase Contract signed in 2003, Jones Plaintiffs $230,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 8 consisting of an undivided 1/12 interest in Residence No. 8415 of the Aspen Highlands Condominiums.

hh)    Plaintiff **Lily Ann Friedman** is a citizen of the State of Ohio. Pursuant to a uniform Purchase Contract signed in 2001, Friedman Plaintiff paid $270,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 7 consisting of an undivided 1/12 interest in Residence No. 8315 of the Aspen Highlands Condominiums.

ii)    Plaintiff **831 701 Ontario**, is a Canadian Corporation. Ron Ennis is a citizen of

Canada and President of 831 701 Ontario. In 2004, Plaintiff paid $205,000.00 to seller Pitkin County Exchange Holdings of Aspen, LLC and obtain title to Residence Interest No. 2 of an undivided 1/12 interest in Residence No. 8415 of the Aspen Highlands Condominiums.

jj)      Plaintiffs **Garry R. Kimball** and **Catherine G.C. Kimball** are citizens of the State of Texas. Pursuant to a uniform Purchase Contract signed in 2001, the Kimball Plaintiffs paid $180,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 10 consisting of an undivided 1/12 interest in Residence No. 8104 of Aspen Highlands Condominiums.

kk)      Plaintiff **David Friedman** is a citizen of the State of Michigan. In 2005, Friedman Plaintiff paid $245,000.00 to the seller Scott C. Brittingham Trust, and obtained title to Residence Interest No. 5 consisting of an undivided 1/12 interest in Residence No. 8304 of Aspen Highlands Condominiums.

ll)      Plaintiffs **Michael G. Robinson** and **Caroline Robinson** are citizens of the State of Texas. Pursuant to a uniform Purchase Contract signed in 2001, the Robinson Plaintiffs paid $250,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 12 consisting of an undivided 1/12 interest in Residence No. 8306 of the Aspen Highlands Condominiums. Additionally, pursuant to a uniform Purchase Contract signed in 2009, Robinson Plaintiffs paid $139,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 12 consisting of an undivided 1/12 interest in Residence No. 8410 of the Aspen Highlands Condominiums.

mm)      Plaintiff **Hammer Family Limited Partnership** for benefit of **Robert Hammer, Renee Hammer, Barry Hammer and Jeffrey Hammer** is an Illinois partnership. Pursuant to a uniform Purchase Contract signed in 2002, Plaintiff paid $190,000.00 to seller Ritz-Carlton

Development Company Inc. and obtain title to Residence Interest No. 9 of an undivided 1/12 interest in Residence No. 8202 of the Aspen Highlands Condominiums.

nn)     Plaintiff **8202 RCC Aspen Highlands, LLC** is a Texas limited liability company, in good standing. **John S. Rubin and Margaret Rubin** are citizens of the State of Texas. Pursuant to a uniform Purchase Contract signed in 2001, Plaintiff paid $250,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 8 consisting of an undivided 1/12 interest in Residence No. 8208 of the Aspen Highlands Condominiums.

oo)     Plaintiffs **Carl Andrew Rudella** and **Tammiejo Rudella** are citizens of the State of Florida. Pursuant to a uniform Purchase Contract signed in 2005, the Rudella Plaintiffs paid $180,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 20 consisting of an undivided 1/12 interest in Residence No. 8411 of the Aspen Highlands Condominiums.

pp)     Plaintiff **Robert Kaufmann** is a citizen of the State of Georgia. Pursuant to a uniform Purchase Contract signed in 2004, Kaufmann Plaintiff paid $240,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 8 consisting of an undivided 1/12 interest in Residence No. 2204 of Aspen Highlands Condominiums.

qq)     Plaintiff **David S. Israel** is citizen of the State of Illinois and is Trustee of the **David S. Israel Trus**t. In 2008, Israel Plaintiffs paid $185,000.00 to the sellers Glenn H. Clements and Michele M. Clements, and obtained title to Residence Interest No. 7 consisting of an undivided 1/12 interest in Residence No. 2306 of the Aspen Highlands Condominiums.

rr)     Plaintiff **J & B Woods Family Associates, LLC** is a New York limited liability company, in good standing. Pursuant to a uniform Purchase Contract signed in 2002, Mr. Woods (James Woods and his wife Barbara Woods, as individuals, originally purchased unit, later

23

transferring ownership to J & B Wood Family Associates, LLC) paid $260,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 3 consisting of an undivided 1/12 interest in Residence No. 8104 of Aspen Highlands Condominiums.

ss)    Plaintiffs **Michael P. Pacin** and **Amy D. Ronner** are citizens of the State of Florida (collectively, the "Pacin Plaintiffs"). Pursuant to a uniform Purchase Contract signed in 2007, Pacin Plaintiffs paid $225,000.00 to the seller Ritz-Carlton Development Company and obtained title to an undivided 1/12 interest in Residence No. 2408 of the Aspen Highlands Condominiums. The interest is described in weeks.

tt)    Plaintiffs **Bruce E. Reid** and **Rosemary W. Reid** are citizens of the State of Florida. Pursuant to a uniform Purchase Contract signed in 2002, the Reid Plaintiffs paid $200,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 5 consisting of an undivided 1/12 interest in Residence No. 8202 of the Aspen Highlands Condominiums.

uu)    Plaintiff **Charles F. A. McCluer, III, P.A.** is a Texas corporation, in good standing. Charles McCluer and Carol McCluer are citizens of the State of Texas. Pursuant to a uniform Purchase Contract signed in 2004, Plaintiff paid $254,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 8 consisting of an undivided 1/12 interest in Residence No. 2306 of the Aspen Highlands Condominiums.

vv)    Plaintiffs **Frank R. Vogl** and **Emily Vogl** are citizens of the District of Columbia. Pursuant to a uniform Purchase Contract signed in 2004, the Vogl Plaintiffs paid $350,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 6 consisting of an undivided 1/12 interest in Residence No. 2203 of the Aspen Highlands Condominiums.

ww)    Plaintiff **Levy Ventures Limited Partnership** for the benefit of Elliot Levy is a Florida partnership. In 2002, the Plaintiff paid $174,500.00 to the seller Arnold S. Wood and obtained title to Residence Unit No. 8 consisting of an undivided 1/12 interest in Residence No. 8409 of the Aspen Highlands Condominiums.

xx)    Plaintiff **DRE, Inc.** is an Illinois corporation, in good standing. **Dennis Egidi** is a citizen of the State of Illinois. In 2005, Plaintiff paid $320,000.00 to the sellers Robert E. Walsh and Patricia M. Westcott and obtained title to Residence Unit No. 6 consisting of an undivided 1/12 interest in Residence No. 8410 of the Aspen Highlands Condominiums.  Additionally, pursuant to a uniform Purchase Contract signed in 2005, Plaintiff paid $266,600.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 1 consisting of an undivided 1/12 interest in Residence No. 8401 of the Aspen Highlands Condominiums. Additionally, pursuant to a uniform Purchase Contract signed in 2005, Plaintiff paid $145,000.00 to the seller Ritz-Carlton Development Company and obtained title to an undivided 1/12 interest in Residence No. 2408 of the Aspen Highlands Condominiums. The interest is described in weeks. Additionally, pursuant to a uniform Purchase Contract signed in 2006, Plaintiff paid $265,000.00 to the seller Ritz-Carlton Development Company and obtained title to an undivided 1/12 interest in Residence No. 2401 of the Aspen Highlands Condominiums. The interest is described in weeks.

yy)    Plaintiffs **Robert C. Hubbell** and **Jan H. Hubbell** are citizens of the State of Colorado. Pursuant to a uniform Purchase Contract signed in 2001, the Hubbell Plaintiffs paid $180,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 6 consisting of an undivided 1/12 interest in Residence No. 8404 of the Aspen Highlands Condominiums.

zz)    Plaintiff **David Schaecter** is a citizen of the State of Florida. Pursuant to a uniform

Purchase Contract signed in 2001, Schaecter Plaintiff paid $160,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 24 consisting of an undivided 1/12 interest in Residence No. 8402 of the Aspen Highlands Condominiums.

aaa)  Plaintiffs **Vladimir Malakhova** and **Ludmila Malakhova** are citizens of the State of Florida. Pursuant to a uniform Purchase Contract signed in 2005, the Malakhova Plaintiffs paid $290,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 5 consisting of an undivided 1/12 interest in Residence No. 2205 of the Aspen Highlands Condominiums. Additionally, pursuant to a uniform Purchase Contract signed in 2006, the Malakhova Plaintiffs paid $385,000.00 to the seller Ritz-Carlton Development Company and obtained title to an undivided 1/12 interest in Residence No. 2305 of the Aspen Highlands Condominiums. The interest is described in weeks.

bbb)  Plaintiff **El Paso Asset Management, LLC** is an Alaska limited liability company, in good standing. **Bruce Michael Bridewell** is a citizen of the State of Florida. Pursuant to a uniform Purchase Contract signed in 2003, Plaintiff (deeded to El Paso Asset Management, LLC in 2010) paid $180,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 6 consisting of an undivided 1/12 interest in Residence No. 8408 of the Aspen Highlands Condominiums.

ccc)  Plaintiffs **Samuel H. Pepkowitz** and **Roberta A. Pepkowitz** are a citizens of the State of California and Trustees of the **Pepkowitz Trust**. Pursuant to a uniform Purchase Contract signed in 2006, Pepkowitz Plaintiffs (deeded to Pepkowitz Trust in 2003) paid $190,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 23 consisting of an undivided 1/12 interest in Residence No. 8411 of the Aspen Highlands Condominiums.

ddd)  Plaintiff **JH Capital Corporation** is a voluntary dissolved Florida corporation. **Joe**

26

**Hassan** is a citizen of the State of Florida. Pursuant to a uniform Purchase Contract signed in 2001, Plaintiff paid $440,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 8 consisting of an undivided 1/12 interest in Residence No. 4301 of the Aspen Highlands Condominiums.

eee)     Plaintiffs **David S. Blacher** and **Constance H. Blacher** are citizens of the State of Florida. In 2003, the Blacher Plaintiffs paid $230,000.00 to the seller Margie H. Bach and obtained title to Residence Unit No. 9 consisting of an undivided 1/12 interest in Residence No. 8415 of the Aspen Highlands Condominiums.

fff)     Plaintiffs **Bryan J. Hawkins** and **Laura A. Hawkins** are citizens of the State of Oklahoma. Pursuant to a uniform Purchase Contract signed in 2002, the Hawkins Plaintiffs paid $300,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 3 consisting of an undivided 1/12 interest in Residence No. 8315 of the Aspen Highlands Condominiums.

ggg)     Plaintiff **Bruce M. Nesbitt** is a citizen of the State of Illinois and Trustee of the **Bruce Nesbitt Revocable Trust**. Pursuant to a uniform Purchase Contract signed in 2001, Nesbitt Plaintiffs (deeded to the Bruce Nesbitt Revocable Trust in 2005) paid $230,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 3 consisting of an undivided 1/12 interest in Residence No. 8401 of the Aspen Highlands Condominiums.

hhh)     Plaintiff **Monica M. Campanella** is a citizen of the State of New York and Trustee of the **Le Befana Trust**. Pursuant to a uniform Purchase Contract signed in 2006, Campanella Plaintiffs paid $405,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 1 consisting of an undivided 1/12 interest in Residence No. 2203 of the Aspen Highlands Condominiums.

iii)     Plaintiff **Reeta G. Casey** is a citizen of the Florida and Trustee of the **Reeta G. Casey Revocable Living Trust**. Pursuant to a uniform in 2008, Casey Plaintiffs paid $165,000.00 to the seller Double B Aspen, LLC, a Texas limited liability company and obtained title to Residence Unit No. 12 consisting of an undivided 1/12 interest in Residence No. 8415 of the Aspen Highlands Condominiums.

jjj)     Plaintiffs **Anthony F. Prinster** and **Sally L. Prinster** are citizens of the State of Colorado. Pursuant to a uniform Purchase Contract signed in 2001, Prinster Plaintiffs paid $270,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 11 consisting of an undivided 1/12 interest in Residence No. 8301 of the Aspen Highlands Condominiums.

kkk)     Plaintiff **Kevin E. Grant** is a citizen of the Commonwealth of Massachusetts. In 2010, Grant Plaintiff paid $90,000.00 to the seller Howard (John) Leonhardt and obtained title to Residence Unit No. 3 consisting of an undivided 1/12 interest in Residence No. 8415 of the Aspen Highlands Condominiums.

lll)     Plaintiffs **Gilbert P. Gradinger** and **Sally A. Gradinger** are citizens of the State of California and Trustees of **The Gilbert and Sally Gradinger 2001 Revocable Trust**. Pursuant to a uniform Purchase Contract signed in 2002, Gradinger Plaintiffs (deeded to The Gilbert and Sally Gradinger 2001 Revocable Trust in 2011) paid $290,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 10 consisting of an undivided 1/12 interest in Residence No. 8315 of the Aspen Highlands Condominiums.

mmm) Plaintiffs **Jeffrey Rappin** and **Penny Brown** are citizens of the State of Illinois (collectively, the "Rappin Plaintiffs"). In 2004, the Rappin Plaintiffs paid $225,000.00 to the seller Nicholas Wayne and Danielle R. Wayne and obtained title to Residence Unit No. 8 consisting of

an undivided 1/12 interest in Residence No. 8314 of the Aspen Highlands Condominiums. Additionally, pursuant to a uniform Purchase Contract signed in 2009, the Rappin Plaintiffs paid $285,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 6 consisting of an undivided 1/12 interest in Residence No. 8211 of the Aspen Highlands Condominiums.

nnn)    Plaintiff **Milan Randic** is a citizen of the State of Iowa and Trustee of the **Milan Randic Trust**. Plaintiff **Mirjana Randic** is a citizen of the State of Iowa and Trustee of the **Mirjana Randic Trust**. Pursuant to a uniform Purchase Contract signed in 2001, Randic Plaintiffs paid $290,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 3 consisting of an undivided 1/12 interest in Residence No. 8303 of the Aspen Highlands Condominiums.

ooo)    Plaintiffs **Charles B. Buchanan** and **Charlotte S. Buchanan** are citizens of the State of New York. Pursuant to a uniform Purchase Contract signed in 2001, the Buchanan Plaintiffs paid $190,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 3 consisting of an undivided 1/12 interest in Residence No. 8304 of the Aspen Highlands Condominiums.

ppp)    Plaintiff **Annette Kalcheim** is a citizen of the State of Illinois and Trustee of the **Annette Kalcheim Trust**. Pursuant to a uniform Purchase Contract signed in 2003, Kalcheim Plaintiffs paid $240,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 3 consisting of an undivided 1/12 interest in Residence No. 8306 of the Aspen Highlands Condominiums.

qqq)    Plaintiff **Mindy R. Wexler** is a citizen of the State of Minnesota and Trustee of the **Mindy R. Wexler Revocable Trust**. Pursuant to a uniform Purchase Contract signed in 2009,

Wexler Plaintiffs (deeded to the Mindy R. Wexler Revocable Trust in 2011) paid $117,500.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 12 consisting of an undivided 1/12 interest in Residence No. 8403 of the Aspen Highlands Condominiums.

rrr)    Plaintiffs **John Bergstrom, Norman C. Creech** and **Susan S. Creech** are citizens of the State of Colorado (collectively "Bergstrom Plaintiffs"). Pursuant to a uniform Purchase Contract signed in 2004, Bergstrom Plaintiffs paid $210,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 7 consisting of an undivided 1/12 interest in Residence No. 2202 of the Aspen Highlands Condominiums.

sss)    Plaintiffs **John E. Blanchard**, **Jennifer Blanchard**, **Robert Blanchard** and **Ellen Blanchard** are citizens of the State of Florida. Pursuant to a uniform Purchase Contract signed in 2007, Blanchard Plaintiffs paid $285,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 11 consisting of an undivided 1/12 interest in Residence No. 2208 of the Aspen Highlands Condominiums.

ttt)    Plaintiff **Louise B. Hoversten** is a citizen of the State of Colorado. Pursuant to a uniform Purchase Contract signed in 2002, Hoversten Plaintiff (deeded to Louise B. Hoversten in 2004) paid $250,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 4 consisting of an undivided 1/12 interest in Residence No. 8314 of the Aspen Highlands Condominiums.

uuu)    Plaintiffs **Howard A. Simon** and **Elizabeth M. Simon** are citizens of the State of Illinois. In 2011, Simon Plaintiffs paid $117,000.00 to the seller Taylor Capital Ventures, LP, a Mississippi limited partnership, and obtained title to Residence Unit No. 11 consisting of an undivided 1/12 interest in Residence No. 8206 of the Aspen Highlands Condominiums.

vvv)    Plaintiffs **Gary S. Chavin** and **Pat A. Chavin** are citizens of the State of Illinois. Pursuant to a uniform Purchase Contract signed in 2001, Chavin Plaintiffs paid $180,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 2 consisting of an undivided 1/12 interest in Residence No. 8404 of the Aspen Highlands Condominiums.

www)  Plaintiff **Greg Jacobson** is a citizen of the State of California. Pursuant to a uniform Purchase Contract signed in 2008, Jacobson Plaintiff paid $220,000.00 to the sellers Richard S. Ost and Beth Ost, and obtained title to Residence Unit No. 1 consisting of an undivided 1/12 interest in Residence No. 8314 of the Aspen Highlands Condominiums.

xxx)    Plaintiffs **Douglas Kadison** and **Carol Kadison** are citizens of the State of Texas. Pursuant to a uniform Purchase Contract signed in 2001, Kadison Plaintiffs paid $260,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 7 consisting of an undivided 1/12 interest in Residence No. 8208 of the Aspen Highlands Condominiums.

yyy)    Plaintiff **Joseph Fryzer** is citizen of the State of California. Pursuant to a uniform Purchase Contract signed in 2003, Fryzer Plaintiff paid $250,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 6 consisting of an undivided 1/12 interest in Residence No. 8216 of the Aspen Highlands Condominiums.

zzz)    Plaintiff **Danny V. Lackey** is a citizen of the State of North Carolina and Trustee of the **Danny V. Lackey Living Trust**. Plaintiff **Nancy L. Lackey** is a citizen of the State of North Carolina and Trustee of the **Nancy L. Lackey Living Trust**. Pursuant to a uniform Purchase Contract signed in 2006, Lackey Plaintiffs paid $257,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 10 consisting of an undivided 1/12 interest in Residence No. 2205 of the Aspen Highlands Condominiums.

aaaa)   Plaintiffs **H.M. Palm** and **Margaret Palm** are citizens of the State of Texas. Pursuant to a uniform Purchase Contract signed in 2003, Palm Plaintiffs paid $220,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 8 consisting of an undivided 1/12 interest in Residence No. 8311 of the Aspen Highlands Condominiums.

bbbb)   Plaintiffs **Paul C. Rosenthal** and **Carla P. Rosenthal** are citizens of the State of Maryland. In 2007, Rosenthal Plaintiffs paid $235,000.00 to the sellers Peter N. Louras, Jr. and Mary M. Louras, Trustees of the Peter and Mary Louras Trust, a California Trust, and obtained title to Residence Unit No. 12 consisting of an undivided 1/12 interest in Residence No. 8308 of the Aspen Highlands Condominiums. Additionally, pursuant to a uniform Purchase Contract signed in 2009, Rosenthal Plaintiffs paid $139,500.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 9 consisting of an undivided 1/12 interest in Residence No. 8410 of the Aspen Highlands Condominiums. Additionally, in 2012, Rosenthal Plaintiffs paid $100,000.00 to the sellers Janice Penrose and Chris Penrose and obtained title to Residence Unit No. 11 consisting of an undivided 1/12 interest in Residence No. 8307 of the Aspen Highlands Condominiums.

cccc)   Plaintiffs **David A. Figliulo** and **Lesa A. Figliulo** are citizens of the State of Illinois and Trustees of **The David & Lesa Figliulo Family Revocable Living Trust**. Pursuant to a uniform Purchase Contract signed in 2008, Figliulo Plaintiffs (deeded to The David & Lesa Figliulo Family Revocable Living Trust in 2015) paid $495,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 3 consisting of an undivided 1/12 interest in Residence No. 8307 of the Aspen Highlands Condominiums.

dddd)   Plaintiffs **Walter H. Petrie** and **Nancy A. Petrie** are citizens of the State of Maryland. Pursuant to a uniform Purchase Contract signed in 2004, Petrie Plaintiffs paid

$260,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 4 consisting of an undivided 1/12 interest in Residence No. 8306 of the Aspen Highlands Condominiums.

eeee)   Plaintiffs **Kenneth Tompkins** and **Kimberly Tompkins** are citizens of the State of Virginia. In 2003, Tompkins Plaintiffs paid $275,000.00 to the seller Sylvia Beatty and obtained title to Residence Unit No. 4 consisting of an undivided 1/12 interest in Residence No. 8308 of the Aspen Highlands Condominiums.

ffff)   Plaintiff **Barbara L. Palazzolo** is a citizen of the State of Michigan and Trustee of the **Barbara L. Palazzolo Revocable Trust**. Pursuant to a uniform Purchase Contract signed in 2003, Palazzolo Plaintiffs (deeded to the Barbara L. Palazzolo Revocable Trust in 2007) paid $240,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 6 consisting of an undivided 1/12 interest in Residence No. 8311 of the Aspen Highlands Condominiums.

gggg)   Plaintiffs **Dana James Weinkle** and **Susan Holloway Weinkle** are citizens of the State of Florida. In 2009, Weinkle Plaintiffs paid $165,000.00 to the seller Lon M. Baronne and Karen G. Baronne and obtained title to Residence Unit No. 5 consisting of an undivided 1/12 interest in Residence No. 2301 of the Aspen Highlands Condominiums.

hhhh)   Plaintiffs **Evan Rabinowitz** and **Ami Rabinowitz** are citizens of the State of Florida and Trustees of the **Ami Rabinowitz Trust**. Pursuant to a uniform Purchase Contract signed in 2006, Rabinowitz Plaintiffs paid $420,000.00 to the seller Arthur Falcone, Trustee of the Arthur Falcone Revocable Living Trust, a Florida Trust, and obtained title to Residence Interest No. 2 consisting of an undivided 1/12 interest in Residence No. 8210 of the Aspen Highlands Condominiums.

iiii)    Plaintiff **Kona, Ltd.** is a Texas limited partnership. **Ryan M. Youngblood** is a citizen of the State of Texas and manager of Kona, Ltd. Pursuant to a uniform Purchase Contract signed in 2004, Plaintiff paid $295,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 21 consisting of an undivided 1/12 interest in Residence No. 8201 of the Aspen Highlands Condominiums.

jjjj)    Plaintiffs **Steve V. Gurland** and **Caroline I. Gurland** are citizens of the State of Florida. Pursuant to a uniform Purchase Contract signed in 2004, Gurland Plaintiffs paid $160,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 10 consisting of an undivided 1/12 interest in Residence No. 8404 of the Aspen Highlands Condominiums.

kkkk)  Plaintiff **Spencer L. Youngblood Family Partnership Ltd.** is a Texas limited partnership. **Spencer L. Youngblood** is a citizen of the State of Texas and manager of Spencer L. Youngblood Family Partnership Ltd. Pursuant to a uniform Purchase Contract signed in 2001, Plaintiff paid $230,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 8 consisting of an undivided 1/12 interest in Residence No. 8205 of the Aspen Highlands Condominiums.

llll)    Plaintiffs **Kenneth D. Cushman** and **Carol A. Cushman** are citizens of the State of Texas. Pursuant to a uniform Purchase Contract signed in 2001, Cushman Plaintiffs paid $290,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 8 consisting of an undivided 1/12 interest in Residence No. 8305 of the Aspen Highlands Condominiums.

mmmm)      Plaintiffs **Dan Moskowitz** and **Wendy Moskowitz** are citizens of the State of New York. Pursuant to a uniform Purchase Contract signed in 2009, Moskowitz Plaintiffs paid

$120,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 10 consisting of an undivided 1/12 interest in Residence No. 2208 of the Aspen Highlands Condominiums.

nnnn)   Plaintiffs **Gary Sheldon Kohler** and **Deborah Joy Kohler** are citizens of the State of Minnesota. Pursuant to a uniform Purchase Contract signed in 2011, Kohler Plaintiffs paid $115,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 12 consisting of an undivided 1/12 interest in Residence No. 8215 of the Aspen Highlands Condominiums.

oooo)   Plaintiffs **Lewis J. Hirsch** and **Gayle Hirsch** are citizens of the State of Illinois. In 2005, Hirsch Plaintiffs paid $180,000.00 to the seller 831 701 Ontario Limited, a Canadian corporation, and obtained title to Residence Unit No. 5 consisting of an undivided 1/12 interest in Residence No. 8404 of the Aspen Highlands Condominiums.

pppp)   Plaintiff **Bradley Properties, LLC** is an Alabama limited liability company, in good standing. **Merrill N. Bradley and Julia H. Bradley** are citizens of the State of Alabama. Pursuant to a uniform Purchase Contract signed in 2002, Plaintiff (deeded to Bradley Properties, LLC in 2004) paid $290,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 6 consisting of an undivided 1/12 interest in Residence No. 8209 of the Aspen Highlands Condominiums. Additionally, pursuant to a uniform Purchase Contract signed in 2002, Merrill N. Bradley and Julia H. Bradley, the original purchasers (deeded to Bradley Properties, LLC in 2004) paid $265,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 12 consisting of an undivided 1/12 interest in Residence No. 8209 of the Aspen Highlands Condominiums.

qqqq)   Plaintiff **Anna P. Zalk** is a citizen of the State of New Jersey. In 2003, Zalk Plaintiff

(deeded to Anna P. Zalk in 2011) paid $240,000.00 to the sellers Jim Hyssen and Merita Hyssen, and obtained title to Residence Unit No. 5 consisting of an undivided 1/12 interest in Residence No. 8209 of the Aspen Highlands Condominiums.

rrrr)   Plaintiff **David Jackel Trustee** is a citizen of the State of California and Trustee of the **Mountain Drive Trust**. Pursuant to a uniform Purchase Contract signed in 2003, Jackel Plaintiffs paid $350,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 3 consisting of an undivided 1/12 interest in Residence No. 2203 of the Aspen Highlands Condominiums. Additionally, pursuant to a uniform Purchase Contract signed in 2006, Jackel Plaintiffs paid $455,000.00 to the seller Ritz-Carlton Development Company, and obtained an undivided 1/12 interest in Residence No. 2207 of the Aspen Highlands Condominiums. The interest is described in weeks. Additionally, pursuant to a uniform Purchase Contract signed in 2008, Jackel Plaintiffs paid $277,000.00 to the seller Ritz-Carlton Development Company, and obtained an undivided 1/12 interest in Residence No. 2304 of the Aspen Highlands Condominiums. The interest is described in weeks.

ssss)   Plaintiffs **William M. Waxman,** a citizen of the State of Texas and **Alan S. Waxman,** a citizen of the State of New York. Pursuant to a uniform Purchase Contract signed in 2004, Waxman Plaintiffs paid $250,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 8 consisting of an undivided 1/12 interest in Residence No. 2208 of the Aspen Highlands Condominiums.

tttt)   Plaintiffs **Timothy J. Hyland** and **Natalie B. Hyland** are citizens of the State of Arizona and Trustees of the **Hyland Revocable Living Trust**. Pursuant to a uniform Purchase Contract signed in 2004, Hyland Plaintiffs paid $200,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 11 consisting of an undivided

36

1/12 interest in Residence No. 8403 of the Aspen Highlands Condominiums. Additionally, in 2005, the Hyland Plaintiffs paid $347,500.00 to the sellers Harold J. Bouillion and Charlene L. Bouillion, and obtained title to Residence Interest No. 10 consisting of an undivided 1/12 interest in Residence No. 8301 of the Aspen Highlands Condominiums.

uuuu)   Plaintiff **Neil Spizizen Trustee** is a citizen of the State of Michigan and Trustee of the **Neil Spizizen Trust**. Pursuant to a uniform Purchase Contract signed in 2006, Spizizen Plaintiffs paid $495,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 2 consisting of an undivided 1/12 interest in Residence No. 8207 of the Aspen Highlands Condominiums.

vvvv)   Plaintiffs **D. L. Wilkey** and **Julie Janicek-Wilkey** are citizens of the State of New Mexico. Pursuant to a uniform Purchase Contract signed in 2003, Wilkey Plaintiffs paid $240,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 2 consisting of an undivided 1/12 interest in Residence No. 8311 of the Aspen Highlands Condominiums.

wwww)       Plaintiffs **Cass Franklin** and **Vera Stewart Franklin** are citizens of the State of Iowa. Pursuant to a uniform Purchase Contract signed in 2005, Franklin Plaintiffs paid $490,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 3 consisting of an undivided 1/12 interest in Residence No. 8307 of the Aspen Highlands Condominiums.

xxxx)   Plaintiffs **Daryl Cramer, Heather Cramer** and **Hope S. Barkan** (collectively the "Cramer Plaintiffs") are citizens of the State of Colorado. Pursuant to a uniform Purchase Contract signed in 2003, Cramer Plaintiffs paid $219,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 4 consisting of an undivided 1/12 interest in

Residence No. 8214 of the Aspen Highlands Condominiums.

yyyy)   Plaintiff **Jacob Louis Slevin** is a citizen of the State of New Jersey. In 2006, Slevin Plaintiff (deeded to Jacob Louis Slevin in 2015) paid $382,500.00 to the sellers Lon M. Baronne and Karen G. Baronne and obtained title to an undivided 1/12 interest in Residence No. 2312 of the Aspen Highlands Condominiums. The interest is described in weeks.

zzzz)   Plaintiff **Ronald Lawrence Glazer** is a citizen of the State of California and Trustee of the **Ronald Lawrence Glazer Trust**. Plaintiff **Christiane Nicolini Glazer** is a citizen of the State of California and Trustee of the **Christiane Nicolini Glazer Trust** (collectively, the "Glazer Plaintiffs"). Pursuant to a uniform Purchase Contract signed in 2006, Glazer Plaintiffs paid $300,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 2 consisting of an undivided 1/12 interest in Residence No. 2405 of the Aspen Highlands Condominiums.

aaaaa)   Plaintiff **Erich Tengelsen** is a citizen of the State of Illinois. Pursuant to a uniform Purchase Contract signed in 2004, Tengelsen Plaintiff paid $230,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 2 consisting of an undivided 1/12 interest in Residence No. 2202 of the Aspen Highlands Condominiums.

bbbbb) Plaintiffs **Charles A. Gottlob** and **Cynthia G. Gottlob** are citizens of the State of Colorado. Pursuant to a uniform Purchase Contract signed in 2003, Gottlob Plaintiffs paid $210,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 8 consisting of an undivided 1/12 interest in Residence No. 8106 of the Aspen Highlands Condominiums.

ccccc)   Plaintiff **Lucy D. Anda** is a citizen of the State of New York. Pursuant to a uniform Purchase Contract signed in 2006, Anda Plaintiff paid $510,000.00 to the seller Ritz-Carlton

Development Company, and obtained title to an undivided 1/12 interest in Residence No. 2401 of the Aspen Highlands Condominiums. The interest is described in weeks.

ddddd) Plaintiff **Neil G. Arnovitz** is a citizen of Canada. In 2004, Arnovitz Plaintiff paid $216,600.00 to the seller William S. Weisman and Lauren B. Weisman, obtained title to Residence Interest No. 1 consisting of an undivided 1/12 interest in Residence No. 8202 of the Aspen Highlands Condominiums. Additionally, pursuant to a uniform Purchase Contract signed in 2005, Arnovitz Plaintiff paid $195,000.00 to the seller Ritz-Carlton Development Company, and obtained an undivided 1/12 interest in Residence No. 2408 of the Aspen Highlands Condominiums. The interest is described in weeks.

eeeee) Plaintiff **Melissa T. Crowley Trustee** is a citizen of the State of Colorado and Trustee of the **Peter Charles Crowley Trust**. Pursuant to a uniform Purchase Contract signed in 2001, Crowley Plaintiffs paid $200,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 5 consisting of an undivided 1/12 interest in Residence No. 8104 of the Aspen Highlands Condominiums.

fffff)   Plaintiffs **Patrick A. Lattore** and **Dee P. Lattore** are citizens of the State of Nevada. Pursuant to a uniform Purchase Contract signed in 2010, Lattore Plaintiffs paid $116,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 11 consisting of an undivided 1/12 interest in Residence No. 8212 the Aspen Highlands Condominiums.

ggggg) Plaintiffs **Rocky J. Mountain** and **Janet M. Mountain** are citizens of the State of Texas. Pursuant to a uniform Purchase Contract signed in 2005, Mountain Plaintiffs paid $370,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 9 consisting of an undivided 1/12 interest in Residence No. 2407 of the Aspen

Highlands Condominiums. Additionally, pursuant to a uniform Purchase Contract signed in 2007, Mountain Plaintiffs paid $318,250.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 1 consisting of an undivided 1/12 interest in Residence No. 2208 of the Aspen Highlands Condominiums.

hhhhh) Plaintiffs **Phyllis Schofield** and **William F. Schofield, Jr.** are citizens of the State of Florida. Pursuant to a uniform Purchase Contract signed in 2006, Schofield Plaintiffs paid $220,000.00 to the seller Ritz-Carlton Development Company, and obtained title to an undivided 1/12 interest in Residence No. 2410 of the Aspen Highlands Condominiums. The interest is described in weeks.

iiiii) Plaintiffs **Mark L. Horwitz** and **Susan J. Horwitz** are citizens of the State of Florida. Pursuant to a uniform Purchase Contract signed in 2008, Horwitz Plaintiffs paid $189,000.00 to the seller Ritz-Carlton Development Company, and obtained title to an undivided 1/12 interest in Residence No. 2303 of the Aspen Highlands Condominiums. The interest is described in weeks.

jjjjj) Plaintiffs **Joel Sacher** and **Susan J. Sacher** are citizens of the State of New Jersey. Pursuant to a uniform Purchase Contract signed in 2001, Sacher Plaintiffs paid $250,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 3 consisting of an undivided 1/12 interest in Residence No. 8209 of the Aspen Highlands Condominiums.

kkkkk) Plaintiff **C & N Assets, Ltd.** is a Texas limited partnership, in good standing. **Heyward Taylor** is a citizen of the State of Texas. Pursuant to a uniform Purchase Contract signed in 2001, Plaintiff paid $270,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 9 consisting of an undivided 1/12 interest in Residence No. 8315 of the

Aspen Highlands Condominiums.

lllll)     Plaintiff **Lisa Mottola Trustee** is a citizen of the State of California and Trustee of the **Lisa Mottola Trust**. Pursuant to a uniform Purchase Contract signed in 2004, Mottola Plaintiffs paid $260,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 6 consisting of an undivided 1/12 interest in Residence No. 2204 of the Aspen Highlands Condominiums.

mmmmm)     Plaintiff **Mel A. Barkan** is a citizen of the Commonwealth of Massachusetts. Pursuant to a uniform Purchase Contract signed in 2001, Barkan Plaintiff paid $250,000.00 to the seller Ritz-Carlton Development Company, obtained title to Residence Interest No. 3 consisting of an undivided 1/12 interest in Residence No. 8308 of the Aspen Highlands Condominiums.

nnnnn) Plaintiffs **John Patrick McEvoy** and **Maria Gomez McEvoy** are citizens of the State of New York. Pursuant to a uniform Purchase Contract signed in 2006, McEvoy Plaintiffs paid $390,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 12 consisting of an undivided 1/12 interest in Residence No. 2309 of the Aspen Highlands Condominiums.

ooooo) Plaintiff **Greico Family Limited Partnership** is a Texas limited partnership, in good standing. **Frank Greico** is a citizen of the State of Texas and president of the Greico Family Limited Partnership. Pursuant to a uniform Purchase Contract signed in 2006, Plaintiff paid $205,000.00 to the seller Ritz-Carlton Development Company and obtained title to an undivided 1/12 interest in Residence No. 2305 of the Aspen Highlands Condominiums. The interest is described in weeks.

ppppp) Plaintiff **JAWSFW, LLC** is a Georgia limited liability company. Plaintiffs  **Clair**

**F. White** and **Linda Gage-White** are citizens of the State of Louisiana. In 2007, the Whites paid $250,000.00 to the sellers Stuart Newberger and Marcy Newberger, and obtained title to Residence Interest No. 4 consisting of an undivided 1/12 interest in Residence No. 8215 of the Aspen Highlands Condominiums. The Whites subsequently transferred their interest in the fractional unit to their family LLC.

qqqqq) Plaintiff **John Egle** is a citizen of the State of Louisiana. Pursuant to a uniform Purchase Contract signed in 2005, Egle Plaintiff paid $190,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 7 consisting of an undivided 1/12 interest in Residence No. 2302 of the Aspen Highlands Condominiums.

rrrrr)   Plaintiff **Darryl Rosen** is a citizen of the State of Illinois. In 2004, Rosen Plaintiff paid $228,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Interest No. 3 consisting of an undivided 1/12 interest in Residence No. 8212 of the Aspen Highlands Condominiums.

sssss)   Plaintiff **Michael A. Capasso** is a citizen of the State of New York. In 2007, Capasso Plaintiff paid $612,000.00 to the seller Donald Garlikov, and obtained title to an undivided 1/12 interest in Residence No. 2410 of the Aspen Highlands Condominiums. The interest is described in weeks.

ttttt)   Plaintiff **Jeffrey C. Bermant** is a citizen of the State of California. In 2001, Bermant Plaintiff paid $250,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Interest No. 2 consisting of an undivided 1/12 interest in Residence No. 8308 of the Aspen Highlands Condominiums.

uuuuu) Plaintiff **Rock Pile, LLC** is a Minnesota limited liability company. **Jeff Cowan** is a citizen of the State of Minnesota and president of Rock Pile, LLC. Pursuant to a uniform Purchase

Contract signed in 2011, Plaintiff paid $62,000.00 to the seller Ritz-Carlton Development Company and obtained title to an undivided 1/12 interest in Residence No. 2304 of the Aspen Highlands Condominiums. The interest is described in weeks.

vvvvv) Plaintiffs **Mary Glancy Hobin Trustee** is a citizen of the State of New Jersey and Trustee of the **Mary Glancy Hobin Trust**. **Patricia Travers** is a citizen of the State of Washington. **Michael Hobin** is a citizen of the State of New Jersey (collectively, the "Hobin Plaintiffs"). In 2009, Hobin Plaintiffs paid $175,000.00 to the sellers Peter Mann and Marcy Mann, and obtained title to Residence Interest No. 5 consisting of an undivided 1/12 interest in Residence No. 8208 of the Aspen Highlands Condominiums. In addition, pursuant to a uniform Purchase Contract signed in 2010, Hobin Plaintiffs, excluding Michael Hobin, paid $125,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 11 consisting of an undivided 1/12 interest in Residence No. 8208 of the Aspen Highlands Condominiums.

wwwww)      Plaintiffs **Mark D. Dembs** and **Mona L. Dembs** are citizens of the State of Michigan. Pursuant to a uniform Purchase Contract signed in 2004, Dembs Plaintiffs paid $240,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 7 consisting of an undivided 1/12 interest in Residence No. 2308 of the Aspen Highlands Condominiums.

xxxxx) Plaintiffs **Morton Eugene Sherman** and **Susan Ann Sherman** are citizens of the State of Colorado. Pursuant to a uniform Purchase Contract signed in 2001 (deeded to E. Eugene Sherman and Susan A. Sherman in 2004), Sherman Plaintiffs paid $230,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 10 consisting of an undivided 1/12 interest in Residence No. 8206 of the Aspen Highlands Condominiums.

yyyyy) Plaintiff **John H. Thames, Jr.** is a citizen of the State of Mississippi. Pursuant to a

43

uniform Purchase Contract signed in 2002, Thames Plaintiff paid $209,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 5 consisting of an undivided 1/12 interest in Residence No. 8302 of the Aspen Highlands Condominiums. Additionally, pursuant to a uniform Purchase Contract signed in 2002, Thames Plaintiff paid $270,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 10 consisting of an undivided 1/12 interest in Residence No. 8305 of the Aspen Highlands Condominiums.

zzzzz)  Plaintiffs **Thomas R. Wright** and **Maureen D. Wright** are citizens of the State of New York. Pursuant to a uniform Purchase Contract signed in 2002, Wright Plaintiffs paid $330,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 1 consisting of an undivided 1/12 interest in Residence No. 8305 of the Aspen Highlands Condominiums.

aaaaaa)Plaintiff **Brenda Zelnick** is a citizen of the State of Florida. In 2004, Zelnick Plaintiff paid $309,000.00 to sellers Glenn E. Hawley and Lisa S. Hawley, and obtained title to Residence Interest No. 1 consisting of an undivided 1/12 interest in Residence No. 8315 of the Aspen Highlands Condominiums.

bbbbbb)        Plaintiff **Corporate Retreats, LLC** is a South Carolina limited liability company. **Todd Baldree** is a citizen of the State of South Carolina and member of Corporate Retreats, LLC. Pursuant to a uniform Purchase Contract signed in 2005, Plaintiff paid $410,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 1 consisting of an undivided 1/12 interest in Residence No. 2309 of the Aspen Highlands Condominiums.

cccccc)Plaintiffs **Richard F. Wackeen** and **Sharon R. Wackeen** are citizens of the State

of California. Pursuant to a uniform Purchase Contract signed in 2006, Wackeen Plaintiffs paid $260,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 10 consisting of an undivided 1/12 interest in Residence No. 2206 of the Aspen Highlands Condominiums.

dddddd)       Plaintiffs **Morris M. Jurkowitz** and **Irma Jurkowitz** are citizens of the State of California and Trustees of the **Jurkowitz 1996 Family Trust**. Pursuant to a uniform Purchase Contract signed in 2004, Jurkowitz Plaintiffs paid $330,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 12 consisting of an undivided 1/12 interest in Residence No. 2203 of the Aspen Highlands Condominiums.

eeeeee)Plaintiff **Rick M. Oddo** is a citizen of the State of Texas and Trustee of the **Rick M. Oddo Trust**. Plaintiff **Jeffrey B. Oddo** is a citizen of the State of Texas and Trustee of the **Jeffrey B. Oddo Trust.** Plaintiff **Bradford T. Oddo** is a citizen of the State of Texas and Trustee of the **Bradford T. Oddo Trust**. Pursuant to a uniform Purchase Contract signed in 2001, Oddo Plaintiffs paid $270,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 8 consisting of an undivided 1/12 interest in Residence No. 8315 of the Aspen Highlands Condominiums.

ffffff)  Plaintiffs **Nicola H. Albutt** and **Mark E. Haranzo** are citizens of the State of Connecticut and Trustees of the **Graham J. Albutt Trust** (collectively, the "Albutt Plaintiffs"). Pursuant to a uniform Purchase Contract signed in 2005, Albutt Plaintiffs (deeded to Nicola H. Albutt Trustee and Mark E. Haranzo Trustee in 2013) paid $220,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 3 consisting of an undivided 1/12 interest in Residence No. 2406 of the Aspen Highlands Condominiums.

gggggg)       Plaintiffs **Thomas G. Friermood** and **Kay K. Friermood** are citizens of

the State of Colorado. In 2003, Friermood Plaintiffs paid $200,000.00 to the sellers Alexander H. Busansky and Jennifer Kaplan, and obtained title to Residence Interest No. 7 consisting of an undivided 1/12 interest in Residence No. 8202 of the Aspen Highlands Condominiums.

hhhhhh)     Plaintiff **Richard N. Mark** is a citizen of the State of Michigan. Pursuant to a uniform Purchase Contract signed in 2010, Mark Plaintiff paid $275,000.00 to the seller Ritz-Carlton Development Company, and obtained title to an undivided 1/12 interest in Residence No. 2303 of the Aspen Highlands Condominiums. The interest is described in weeks.

iiiiii)     Plaintiffs **Stuart A. Epstein** and **Judy Epstein** are citizens of the State of Florida. Pursuant to a uniform Purchase Contract signed in 2001, Epstein Plaintiffs paid $300,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 8 consisting of an undivided 1/12 interest in Residence No. 8203 of the Aspen Highlands Condominiums.

jjjjjj)     Plaintiff **John M. Keane** is a citizen of the State of **Virginia**. Pursuant to a uniform Purchase Contract signed in 2007 (Theresa Keane deceased 2016), Keane Plaintiff paid $325,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Unit No. 4 consisting of an undivided 1/12 interest in Residence No. 2405 of the Aspen Highlands Condominiums.

kkkkkk)     Plaintiffs **Richard B. Bindler** and **Gene M. Bindler** are citizens of the State of Illinois. Pursuant to a uniform Purchase Contract signed in 2004, Bindler Plaintiffs paid $230,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 4 consisting of an undivided 1/12 interest in Residence No. 2202 of the Aspen Highlands Condominiums.

llllll)     Plaintiffs **Allen D. McGee** and **J. Holton McGee** are citizens of the State of

46

Florida. Pursuant to a uniform Purchase Contract signed in 2001 (Carole J. McGee deceased 2013), the Plaintiffs McGee paid $413,750.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 5 consisting of an undivided 1/12 interest in Residence No. 4302 of the Aspen Highlands Condominiums. In addition, Plaintiff McGee paid $413,750.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 11 consisting of an undivided 1/12 interest in Residence No. 4302 of the Aspen Highlands Condominiums. (Plaintiff purchased two fractional ownerships at once in unit 4302 totaling amount $827,500.00)

mmmmmm)    Plaintiff **8207 DEL, LLC** is organized under the laws of Colorado. Pursuant to a uniform Purchase Contract the current owners signed in 2005, they paid $490,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Interest No. 5 consisting of an undivided 1/12 interest in Residence No. 8207 of Aspen Highlands Condominiums, according to the Declaration of Condominium for Aspen Highlands Condominiums. Pursuant to an Assignment of Claims, the owners transferred all of their claims and all interests in claims arising out of ownership or under the Purchase Contract or otherwise and pertaining to the undivided 1/12 interest in Residence Unit No. 8207 at the Ritz Aspen Highlands to 8207 DEL, LLC.

nnnnnn)        Plaintiffs **Jennifer Colson, Eric C. Colson** and **Judy L. Peckler** are citizens of the State of California (collectively, the "Colson Plaintiffs"). Pursuant to a uniform Purchase Contract signed in 2012, Colson Plaintiffs paid $140,000.00 to the seller Ritz-Carlton Development Company, and obtained title to an undivided 1/12 interest in Residence No. 2401 of the Aspen Highlands Condominiums. The interest is described in weeks.

oooooo)        Plaintiffs **Barry A. Schochet** and **Gayle Weiss** are citizens of the State of

47

California (collectively, the "Schochet Plaintiffs"). In 2002, Schochet Plaintiffs paid $195,000.00 to the seller William F. Eichor, trustee of the Eichor Trust, and obtained title to Residence Unit No. 1 consisting of an undivided 1/12 interest in Residence No. 8409 of the Aspen Highlands Condominiums.

pppppp)     Plaintiffs **Brian D. Isroff** and **Louise A. Isroff** are citizens of the State of Ohio. Pursuant to a uniform Purchase Contract signed in 2005, Isroff Plaintiffs paid $250,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 12 consisting of an undivided 1/12 interest in Residence No. 2208 of the Aspen Highlands Condominiums.

qqqqqq)     Plaintiff **Ronald F. Lemar** is a citizen of the State of Illinois. Pursuant to a uniform Purchase Contract signed in 2006, Lemar Plaintiff paid $335,000.00 to the seller Ritz-Carlton Development Company, and obtained title to an undivided 1/12 interest in Residence No. 2305 of the Aspen Highlands Condominiums. The interest is described in weeks.

rrrrrr)   Plaintiffs **William N. Shoff** and **Olga A. Selivanova** are citizens of the State of New Mexico (collectively, the "Shoff Plaintiffs"). Pursuant to a uniform Purchase Contract signed in 2005, Shoff Plaintiffs paid $290,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 11 consisting of an undivided 1/12 interest in Residence No. 8215 of the Aspen Highlands Condominiums.

ssssss) Plaintiffs **Hazim Safi** and **Deborah Cavazos Safi** are citizens of the State of Texas. Pursuant to a uniform Purchase Contract signed in 2003, Safi Plaintiffs paid $220,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 1 consisting of an undivided 1/12 interest in Residence No. 8106 of the Aspen Highlands Condominiums.

ttttt)    Plaintiff **Gail Lockyer** is a citizen of Canada. In 2006, Lockyer Plaintiff paid $240,000.00 to the seller Jay Alan Scharer Trust, Jay Alan Scharer Trustee, and obtained title to Residence Interest No. 11 consisting of an undivided 1/12 interest in Residence No. 8204 of the Aspen Highlands Condominiums.

uuuuuu)        Plaintiff **Zamalt, LLC** is a Pennsylvania limited liability company. **Richard I. Zamarin** is a citizen of the State of Pennsylvania and manager of Zamalt, LLC. Pursuant to a uniform Purchase Contract signed in 2005, Plaintiff, paid $300,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Unit No. 5 consisting of an undivided 1/12 interest in Residence No. 2208 of the Aspen Highlands Condominiums.

vvvvvv)        Plaintiff **SIP Scotch Investments, LLC** is a Texas limited liability company. **Scott B. Hinckley** is a citizen of the State of Texas and manager of SIP Scotch Investments, LLC. Pursuant to a uniform Purchase Contract signed in 2005, Plaintiff paid $260,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Unit No. 8 consisting of an undivided 1/12 interest in Residence No. 2405 of the Aspen Highlands Condominiums.

wwwwww)      Plaintiff **Lillian Babcock** is a citizen of New York. Pursuant to a uniform Purchase Contract signed in 2004, Babcock Plaintiff paid $260,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 2 consisting of an undivided 1/12 interest in Residence No. 8214 of the Aspen Highlands Condominiums.

xxxxxx)        Plaintiffs **John Benko** and **Natalie Benko** are citizens of the State of Ohio. Pursuant to a uniform Purchase Contract signed in 2002, Benko Plaintiffs paid $250,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 5 consisting of an undivided 1/12 interest in Residence No. 8314 of the Aspen Highlands

49

Condominiums.

yyyyyy)    Plaintiffs **Gerald L. Giudici** and **Maria P. Giudici** are citizens of the State of Michigan and Trustees of the **Maria P. Giudici Trust.** Pursuant to a uniform Purchase Contract signed in 2003, Giudici Plaintiffs paid $180,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 3 consisting of an undivided 1/12 interest in Residence No. 8404 of the Aspen Highlands Condominiums.

zzzzzz)    Plaintiff **Guenther Partners I, LLC** is a North Carolina limited liability company. **Jed Guenther** and **Todd Guenther** are citizens of the State of North Carolina and members of Guenther Partners I, LLC. In 2004, Plaintiff paid $238,000.00 to the seller Fernando Gonzalez Vilchis, and obtained title to Residence Unit No. 6 consisting of an undivided 1/12 interest in Residence No. 8202 of the Aspen Highlands Condominiums.

aaaaaaa)    Plaintiff **Maazb Family Limited Partnership** is a Texas limited partnership. **Michael E. Bornstein** is a citizen of the State of Texas and manager of the Maazb Family Limited Partnership. In 2008, Plaintiff paid $420,000.00 to the seller Michael Travin and Deborah Travin, and obtained title to an undivided 1/12 interest in Residence No. 2312 of the Aspen Highlands Condominiums. The interest is described in weeks.

bbbbbbb)    Plaintiff **D&J Properties, LLC** is a Florida limited liability company. **David Lew** and **June Lew** are citizens of the State of Florida and managers of D&J Properties, LLC. Pursuant to a uniform Purchase Contract signed in 2001, Plaintiff paid $250,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Unit No. 2 consisting of an undivided 1/12 interest in Residence No. 8405 of the Aspen Highlands Condominiums. Additionally, pursuant to a uniform Purchase Contract signed in 2001, Plaintiff paid $270,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 7

consisting of an undivided 1/12 interest in Residence No. 8305 of the Aspen Highlands Condominiums.

ccccccc)        Plaintiffs **Bruce T. Adelman** and **Susan Adelman** are citizens of the State of Michigan. Pursuant to a uniform Purchase Contract signed in 2001, Plaintiff paid $140,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 7 consisting of an undivided 1/12 interest in Residence No. 8404 of the Aspen Highlands Condominiums.

ddddddd)        Plaintiffs **Martin Kolsky, Carole Kolsky** and **Barbara Wrubel** are citizens of the District of Columbia (collectively, the "Kolsky Plaintiffs"). Pursuant to a uniform Purchase Contract signed in 2003, Kolsky Plaintiffs paid $350,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 3 consisting of an undivided 1/12 interest in Residence No. 2301 of the Aspen Highlands Condominiums.

eeeeeee)        Plaintiffs **Lynda Dupre** and **Lois Dupre-Shuster** are citizens of Pennsylvania (collectively, the "Dupre Plaintiffs"). In 2004, Dupre Plaintiffs paid $230,000.00 to the seller Doug P. Bowden and Mary L. Bowden, and obtained title to Residence Interest No. 3 consisting of an undivided 1/12 interest in Residence No. 8202 of the Aspen Highlands Condominiums.

fffffff)        Plaintiffs **Sidney Brown** and **Sandra H. Brown** are citizens of the Pennsylvania. Pursuant to a uniform Purchase Contract signed in 2003, Brown Plaintiffs paid $350,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 6 consisting of an undivided 1/12 interest in Residence No. 2301 of the Aspen Highlands Condominiums.

ggggggg)        Plaintiff **Hudson News Distributors, LLC** is a New Jersey limited liability

51

company. **James Cohen** is a citizen of the State of New Jersey and president of Hudson News Distributors, LLC. Pursuant to a uniform Purchase Contract signed in 2007, Plaintiff paid $575,000.00 to the seller Ritz-Carlton Development Company, and obtained title to an undivided 1/12 interest in Residence No. 2207 of the Aspen Highlands Condominiums. The interest is described in weeks.

hhhhhhh)    Plaintiff **Carol Anne Cannon** is a citizen of Colorado. Pursuant to a uniform Purchase Contract signed in 2003, Cannon Plaintiff paid $310,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 2 consisting of an undivided 1/12 interest in Residence No. 8103 of the Aspen Highlands Condominiums.

iiiiiii)   Plaintiff **John J. Shultz III** is a citizen of the State of Montana and Trustee of the **John J. Schultz III Trust**. Pursuant to a uniform Purchase Contract signed in 2003, Shultz Plaintiffs paid $350,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 1 consisting of an undivided 1/12 interest in Residence No. 2301 of the Aspen Highlands Condominiums.

jjjjjjj)   Plaintiff **Donald A. Kurz** is a citizen of the State of California and Trustee of the **Donald A. Kurz Trust**. Pursuant to a uniform Purchase Contract signed in 2005, Kurz Plaintiffs paid $370,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 10 consisting of an undivided 1/12 interest in Residence No. 2407 of the Aspen Highlands Condominiums.

kkkkkkk)    Plaintiff **Brett A. Gottsch** is a citizen of Nebraska. Pursuant to a uniform Purchase Contract signed in 2003, Gottsch Plaintiff paid $350,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 7 consisting of an undivided 1/12 interest in Residence No. 2301 of the Aspen Highlands Condominiums.

lllllll)   Plaintiff **Bette Ann Sacks Albert** is a citizen of Colorado. Pursuant to a uniform Purchase Contract signed in 2003, Albert Plaintiff paid $290,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 11 consisting of an undivided 1/12 interest in Residence No. 8315 of the Aspen Highlands Condominiums.

mmmmmmm) Plaintiff **J&M Zamora Family LP** is organized under the laws of Colorado. Pursuant to a uniform Purchase Contract Plaintiff signed in 2005, it paid $280,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Interest No. 4 consisting of an undivided 1/12 interest in Residence No. 2206 of Aspen Highlands Condominiums. Plaintiff quit claim the unit to Jorge C. Zamora-Quezada. Pursuant to an Assignment of Claims Dr. Zamora-Quezada transferred all of claim and all interests in claims arising out of his ownership or otherwise and pertaining to the undivided 1/12 interest in Residence Unit No. 2206 at the Ritz Aspen Highlands to J&M Zamora Family LP.

nnnnnnn)        Plaintiffs **William S. Bloom** and **Beverly S. Bloom** are citizens of the Michigan. Pursuant to a uniform Purchase Contract signed in 2001, Bloom Plaintiffs paid $200,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 5 consisting of an undivided 1/12 interest in Residence No. 8412 of the Aspen Highlands Condominiums.

ooooooo)        Plaintiff **Allan C. Silverstein** is a citizen of the  State of New York and Trustee of the **Allan C. Silverstein Trust.** Pursuant to a uniform Purchase Contract signed in 2004, Silverstein Plaintiffs paid $270,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 2 consisting of an undivided 1/12 interest in Residence No. 8212 of the Aspen Highlands Condominiums.

ppppppp)        Plaintiffs **William R. Benz** and **Katherine M. Benz** are citizens of the State

53

of California and Trustees of the **Benz Living Trust**. In 2005, Benz Plaintiffs paid $400,000.00 to the seller Joanne Witty, and obtained title to Residence Interest No. 2 consisting of an undivided 1/12 interest in Residence No. 8212 of the Aspen Highlands Condominiums.

qqqqqqq)    Plaintiff **Derby City Investments, LLC** is a Texas limited liability company. **Dennis R. Gable** and **Elizabeth D. Gable** are citizens of the State of Texas. Elizabeth D. Gable is president of Derby City Investments, LLC and Dennis R. Gable is officer of the Derby City Investments, LLC. In 2008, Plaintiff paid $275,000.00 to the seller Dominic J. Moceri, and obtained title to Residence Interest No. 1 consisting of an undivided 1/12 interest in Residence No. 8105 of the Aspen Highlands Condominiums.

rrrrrrr)    Plaintiffs **Bruce E. Nelson** and **Marrianne Magnuson** are citizens of the State of California and Trustees of the **Nelson Trust** (collectively, the "Nelson Plaintiffs"). Pursuant to a uniform Purchase Contract signed in 2011, Nelson Plaintiffs paid $279,300.00 to the seller Ritz-Carlton Development Company, and obtained title to an undivided 1/12 interest in Residence No. 2305 of the Aspen Highlands Condominiums. The interest is described in weeks.

sssssss)    Plaintiff **Adelman Family Limited Partnership** is a Michigan limited partnership. **Brian Adelman** is a citizen of the State of Michigan and manager of the Adelman Family Limited Partnership. Pursuant to a uniform Purchase Contract signed in 2001, Plaintiff paid $180,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Unit No. 7 consisting of an undivided 1/12 interest in Residence No. 8304 of the Aspen Highlands Condominiums.

ttttttt)    Plaintiff **B & B Highlands, LLC** is an Illinois limited liability company. **Kevin Berg** is a citizen of the State of Illinois and manager of B & B Highlands, LLC. Pursuant to a uniform Purchase Contract signed in 2001, Plaintiff paid $280,000.00 to the seller Ritz-Carlton

54

Development Company, and obtained title to Residence Interest No. 12 consisting of an undivided 1/12 interest in Residence No. 8310 of the Aspen Highlands Condominiums.

uuuuuuu)       Plaintiff **Kyle Nagel** is a citizen of New Hampshire. Pursuant to a uniform Purchase Contract signed in 2008, Nagel Plaintiff paid $253,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 5 consisting of an undivided 1/12 interest in Residence No. 8210 of the Aspen Highlands Condominiums.

vvvvvvv)       Plaintiff **Carol J. Hidalgo** is a citizen of Colorado. Pursuant to a uniform Purchase Contract signed in 2001, Hidalgo Plaintiff paid $180,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 12 consisting of an undivided 1/12 interest in Residence No. 8304 of the Aspen Highlands Condominiums.

wwwwwww)  Plaintiff **Katherine F. Cuntz** is a citizen of Colorado. Pursuant to a uniform Purchase Contract signed in 2001, Cuntz Plaintiff paid $230,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 5 consisting of an undivided 1/12 interest in Residence No. 8401 of the Aspen Highlands Condominiums.

xxxxxxx)       Plaintiff **Landes Aspen, LLC** is a Colorado limited liability company. **Brett L. Landes** is a citizen of the State of Texas and member of Landes Aspen, LLC. In 2004, Plaintiff paid $360,000.00 to the seller CMP Family Limited Partnership, and obtained title to Residence Interest No. 6 consisting of an undivided 1/12 interest in Residence No. 8105 of the Aspen Highlands Condominiums.

yyyyyyy)       Plaintiff **Perry Newton Cox** is citizen of Mississippi. Pursuant to a uniform Purchase Contract signed in 2004, Cox Plaintiff paid $210,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 12 consisting of an undivided 1/12 interest in Residence No. 2202 of the Aspen Highlands Condominiums.

55

zzzzzzz)        Plaintiffs **Thomas N. Littman** and **Kimberly A Littman** are citizens of the Ohio. Pursuant to a uniform Purchase Contract signed in 2005, Littman Plaintiffs paid $250,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 12 consisting of an undivided 1/12 interest in Residence No. 2206 of the Aspen Highlands Condominiums.

aaaaaaaa)        Plaintiffs **Stephen J. Hoffman** and **Dale Hoffman** are citizens of the Connecticut. Pursuant to a uniform Purchase Contract signed in 2001, Hoffman Plaintiffs paid $300,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 10 consisting of an undivided 1/12 interest in Residence No. 8203 of the Aspen Highlands Condominiums.

bbbbbbbb)        Plaintiff **Deborah Stegner** is a citizen of Colorado. In 2008 (original ownership Timothy Stegner and Deborah Stegner. Deborah Stegner took full ownership 2012), Stegner Plaintiff paid $260,000.00 to the Edward J. Welsh III, and obtained title to an undivided 1/12 interest in Residence No. 2408 of the Aspen Highlands Condominiums. The interest is described in weeks.

cccccccc)        Plaintiff **Marc Braha** is a citizen of Florida. Pursuant to a uniform Purchase Contract signed in 2010, Braha Plaintiff paid $120,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 9 consisting of an undivided 1/12 interest in Residence No. 8211 of the Aspen Highlands Condominiums.

dddddddd)        Plaintiff **Franklin Family Investments, Ltd.** is a Texas limited partnership. **Aubra Franklin** is a citizen of the State of Texas and manager of Franklin Family Investments, Ltd. In 2006, Franklin Family Investments, Ltd. paid $312,500.00 to the seller Jordan H. Rednor and Elizabeth P. Schneider, and obtained title to Residence Unit No. 12 consisting of

an undivided 1/12 interest in Residence No. 8303 of the Aspen Highlands Condominiums. Plaintiff **BR4 Rehoboth, Ltd.** is a Texas limited partnership. **Aubra Franklin** is a manager of BR4 Rehoboth, Ltd. Pursuant to a uniform Purchase Contract signed in 2011, BR4 Rehoboth, Ltd. paid $160,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Unit No. 9 consisting of an undivided 1/12 interest in Residence No. 8307 of the Aspen Highlands Condominiums. Collectively Franklin Family Investments, Ltd., BR4 Rehoboth, Ltd. and Aubra Franklin are the "Franklin Plaintiffs."

eeeeeee)    Plaintiffs **Scott Daniel Segal** and **Joanna F. Segal** are citizens of the Florida. In 2003, Segal Plaintiffs paid $235,000.00 to the seller Gregory D. Erwin, and obtained title to Residence Interest No. 2 consisting of an undivided 1/12 interest in Residence No. 8304 of the Aspen Highlands Condominiums.

fffffff)    Plaintiffs **Lon M. Baronne** and **Karen G. Baronne** are citizens of the State of Louisiana. Pursuant to a uniform Purchase Contract signed in 2006, Baronne Plaintiffs paid $513,000.00 to the seller Ritz-Carlton Development Company, and obtained title to an undivided 1/12 interest in Residence No. 2207 of the Aspen Highlands Condominiums. The interest is described in weeks. Additionally, pursuant to a uniform Purchase Contract signed in 2006, Baronne Plaintiffs paid $433,000.00 to the seller Ritz-Carlton Development Company and obtained title to an undivided 1/12 interest in Residence No. 2305 of the Aspen Highlands Condominiums. The interest is described in weeks.

ggggggg)    Plaintiffs **Douglas M. Patinkin** and **Jenny R. Patinkin** are citizens of the State of Illinois. Pursuant to a uniform Purchase Contract signed in 2002, Patinkin Plaintiffs paid $300,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 12 consisting of an undivided 1/12 interest in Residence No. 8210 of the Aspen

57

Highlands Condominiums. Additionally, pursuant to a uniform Purchase Contract signed in 2002, Patinkin Plaintiffs paid $285,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 9 consisting of an undivided 1/12 interest in Residence No. 8210 of the Aspen Highlands Condominiums.

hhhhhhhh)    Plaintiffs **Michael B. Gross** and **Shelley R. Singer** are citizens of the State of New York (collectively, the "Gross Plaintiffs"). Pursuant to a uniform Purchase Contract signed in 2004, Gross Plaintiffs paid $270,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 12 consisting of an undivided 1/12 interest in Residence No. 8208 of the Aspen Highlands Condominiums.

iiiiiiii)    Plaintiff **Aspen Highlands, LLC** is a North Carolina limited liability company. **Timothy Capps** is a citizen of the State of North Carolina and manager of Aspen Highlands, LLC. In 2007, Plaintiff paid $240,000.00 to the seller Greg J. Sancez and Elisabeth A. Sancez, and obtained title to Residence Unit No. 1 consisting of an undivided 1/12 interest in Residence No. 8206 of the Aspen Highlands Condominiums.

jjjjjjjj)    Plaintiffs **Joel A. Schneider, Karen Schneider Benrubi, Alan B. Schneider, Merle J. Schneider** and **Richard Benrubi** are citizens of the State of Florida (collectively, the "Schneider Plaintiffs"). Pursuant to a uniform Purchase Contract signed in 2001, Schneider Plaintiffs paid $180,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 8 consisting of an undivided 1/12 interest in Residence No. 8308 of the Aspen Highlands Condominiums.

kkkkkkkk)    Plaintiff **Paul Brunswick** is a citizen of Montana. Pursuant to a uniform Purchase Contract signed in 2002, Brunswick Plaintiff paid $250,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 2 consisting of an undivided

58

1/12 interest in Residence No. 8314 of the Aspen Highlands Condominiums.

lllllll)        Plaintiffs **Lisa M. Miller** and **Susan M. Allen** are citizens of the State of Florida (collectively, the "Miller Plaintiffs"). Pursuant to a uniform Purchase Contract signed in 2004, Miller Plaintiffs paid $220,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 4 consisting of an undivided 1/12 interest in Residence No. 8403 of the Aspen Highlands Condominiums.

mmmmmmmm)        Plaintiffs **Edward R. Farber** and **Krayndel Farber** are citizens of the State of Florida and Trustees of the **Krayndel Farber Trust**. Pursuant to a uniform Purchase Contract signed in 2004, the Krayndel Plaintiffs paid $260,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 3 consisting of an undivided 1/12 interest in Residence No. 2204 of the Aspen Highlands Condominiums.

nnnnnnnn)        Plaintiff **George W. Haligowski** is a citizen of California. Pursuant to a uniform Purchase Contract signed in 2005 (original owners George W. Haligowski and Eileen R. Haligowski, deeded to George W. Haligowski in 2013), Haligowski Plaintiff paid $314,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 9 consisting of an undivided 1/12 interest in Residence No. 8303 of the Aspen Highlands Condominiums.

oooooooo)        Plaintiff **Evan F. Trestman** is a citizen of Louisiana. Pursuant to a uniform Purchase Contract signed in 2002, Trestman Plaintiff paid $290,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 1 consisting of an undivided 1/12 interest in Residence No. 8410 of the Aspen Highlands Condominiums.

pppppppp)        Plaintiffs **David M. Flaum** and **Ilene L. Flaum** are citizens of the State of New York. Pursuant to a uniform Purchase Contract signed in 2001, Flaum Plaintiffs paid

$280,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 5 consisting of an undivided 1/12 interest in Residence No. 8305 of the Aspen Highlands Condominiums.

qqqqqqqq)    Plaintiff **Jeffrey Richter** and **Stacey Torchon** are citizens of the State of California and Trustees of the **Wiviott Family Trust** (collectively, the "Wiviott Plaintiffs"). Pursuant to a uniform Purchase Contract signed in 2001, the Wiviott Plaintiffs paid $330,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 7 consisting of an undivided 1/12 interest in Residence No. 8307 of the Aspen Highlands Condominiums.

rrrrrrr)    Plaintiffs **Michael S. Castleman** and **Margaret A. Castleman** are citizens of the State of Texas. Pursuant to a uniform Purchase Contract signed in 2002, Castleman Plaintiffs paid $230,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 10 consisting of an undivided 1/12 interest in Residence No. 8314 of the Aspen Highlands Condominiums.

ssssssss)    Plaintiffs **Jonathan Lerner, Robin Brown, Alexa Lerner** and **Lawerence Lerner** are citizens of the State of Maryland (collectively, the "Lerner Plaintiffs"). In 2004, Lerner Plaintiffs paid $310,000.00 to the seller Kevork M. Derderian and Rolanda H. Derderian, and obtained title to Residence Interest No. 1 consisting of an undivided 1/12 interest in Residence No. 8210 of the Aspen Highlands Condominiums.

tttttttt)    Plaintiff **Trip Colorado, LLC** is a Colorado limited liability company. **Warren Klein** is a citizen of the State of New Jersey and manager of Trip Colorado, LLC. Pursuant to a uniform Purchase Contract signed in 2004, Plaintiff paid $240,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 6 consisting of

an undivided 1/12 interest in Residence No. 8212 of the Aspen Highlands Condominiums.

uuuuuuuu) Plaintiffs **Brad J. Bachmann** and **Michelle Stern** are citizens of the State of Texas (collectively, the "Bachmann Plaintiffs"). Pursuant to a uniform Purchase Contract signed in 2002, Bachmann Plaintiffs paid $220,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 3 consisting of an undivided 1/12 interest in Residence No. 8302 of the Aspen Highlands Condominiums.

vvvvvvvv) Plaintiff **Hal S. Mullins** is a citizen of the State of Tennessee. Pursuant to a uniform Purchase Contract signed in 2002, Mullins Plaintiff paid $160,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 1 consisting of an undivided 1/12 interest in Residence No. 8408 of the Aspen Highlands Condominiums.

wwwwwwww) Plaintiffs **Mark A. Jacoby** and **Deborah J. Jacoby** are citizens of the State of New York. Pursuant to a uniform Purchase Contract signed in 2001, Jacoby Plaintiffs paid $310,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 6 consisting of an undivided 1/12 interest in Residence No. 8310 of the Aspen Highlands Condominiums.

xxxxxxxx) Plaintiffs **Michael B. Hurwitz** and **Brandi M. Hurwitz** are citizens of the State of Maryland. Pursuant to a uniform Purchase Contract signed in 2001, Hurwitz Plaintiffs paid $310,000.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence Interest No. 2 consisting of an undivided 1/12 interest in Residence No. 8303 of the Aspen Highlands Condominiums.

yyyyyyyy) Plaintiffs **Kevin Taylor** and **Marcie Taylor** are citizens of the State of Colorado and Trustees of the **Kevin and Marcie Taylor Trust**. In 2005, Taylor Plaintiffs paid $248,500.00 to the seller Ritz-Carlton Development Company, and obtained title to Residence

Interest No. 6 consisting of an undivided 1/12 interest in Residence No. 8312 of the Aspen Highlands Condominiums.

zzzzzzzz)    Plaintiff **Nina Development, Ltd.** is a Texas limited partnership. **Scott Mahoney** is a citizen of the State of Colorado and manager of the limited partner. Pursuant to a uniform Purchase Contract signed in 2007, Plaintiff paid $257,500.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Interest No. 10 an undivided 1/12 interest in Residence No. 8216 of the Aspen Highlands Condominiums.

aaaaaaaa)    Plaintiff **Winston & Lady, LP** is a Delaware limited partnership. **David H. Berns** is a citizen of the State of Ohio and trustee of the limited partner. Pursuant to a uniform Purchase Contract signed in 2003, Plaintiff paid $250,000.00 to the seller Ritz-Carlton Development Company and obtained title to Residence Interest No. 4 an undivided 1/12 interest in Residence No. 2308 of the Aspen Highlands Condominiums.

**B.**    **Defendants**

15.    Defendant **Marriott Vacations Worldwide Corporation** ("MVW")[2] is a publicly traded Delaware corporation with its principal place of business at 6649 Westwood Boulevard, Orlando, Florida. MVW is the parent and/or an affiliate company of the other Defendants and was involved in and responsible for the wrongful conduct alleged herein. Marriott Vacations Worldwide Corporation or MVC are sometimes referred to herein as Marriott.

16.    Defendant **Marriott Ownership Resorts, Inc., d.b.a. Marriott Vacation Club International** ("MVCI") is a Delaware corporation, and a wholly owned subsidiary of Marriott. Its principal place of business is at 6649 Westwood Boulevard, Orlando, Florida, and it is authorized to do business in Colorado. MVCI was involved in and responsible for the wrongful

---

[2] Abbreviations are repeated for ease of reference.

conduct alleged herein.

17.     Defendant **Aspen Highlands Condominium Association, Inc.** ("Association") is a Colorado non-profit corporation that serves as the official "Owners Association" for Ritz-Carlton Aspen Owners.

18.     Defendant **Ritz-Carlton Management Company, LLC** ("RC Management") is another wholly owned MVW subsidiary, and a Delaware limited liability company. Defendant RC Management has a principal place of business at 6649 Westwood Boulevard, Suite 500, Orlando, Florida, and is authorized to do business in Colorado.

19.     Defendant **The Cobalt Travel Company, LLC** ("Cobalt") (formerly known as the Ritz-Carlton Travel Company, LLC) is a Delaware limited liability company, has a principal place of business at 6649 Westwood Boulevard, Suite 500, Orlando, Florida, and is authorized to do business in Colorado.

20.     Defendant **The Lion & Crown Travel Co., LLC** ("L&C") is a Delaware limited liability company formed in 2008 and is authorized to do business in Colorado. L&C is a wholly owned subsidiary of RC Development.

21.     MVW, MVCI, RC Management, Cobalt, and L&C are collectively referred to herein as the "Marriott Defendants."

## IV.     <u>SOURCES OF FIDUCIARY DUTIES</u>

22.     As described below, there are multiple sources of fiduciary duties arising out of the documents governing the management, operation and use of the Ritz-Carlton Club, Aspen Highlands, including the Articles of Incorporation of Aspen Highlands Condominium Association, Inc. ("Articles"), the Declaration of Condominium for Aspen Highlands Condominium ("Declaration"), The Ritz-Carlton Management Company, LLC Management Agreement

("Management Agreement"), and the Ritz-Carlton Club Membership Program Affiliation Agreement ("Initial Affiliation Agreement").

A. **Aspen Highlands Condominium Association**

23.     The Association was created on December 9, 1999 upon filing with the Colorado Secretary of State the Articles of Incorporation of Aspen Highlands Condominium Association, Inc. Amended and Restated Articles of Incorporation of Aspen Highlands Condominium Association, Inc. were filed with the Colorado Secretary of State on November 2, 2000.

24.     According to the Amended Articles: "The primary purpose for which the Association is organized is to manage, administer, operate and maintain" the Aspen Highlands Condominium.

25.     Pursuant to Article V of the Articles, the powers of the Association include: "To operate, manage, administer, insure, repair, replace, reconstruct and improve the Condominium" (Article 5.1); "To operate, manage and administer the Plan of Fractional Ownership that may be created in the Condominium by the Declarant" (Article 5.2); "To contract for the management of the Condominium and to delegate to such contractor all powers and duties of the Association except such as are specifically required by the various Association Documents or Colorado law to have approval of the board of directors or the members of the Association" (Article 5.7); and, "To enter into agreements providing for the participation of Owners of Fractional Interests in those units committed to a Plan of Fractional Ownership in an exchange system or network of resorts allowing for reciprocal use of resort properties by owners of fractional ownership interests in the Condominium" (Article 5.11).

26.     Defendant Association owed and owes fiduciary duties to buyers of Fractional Units, including Plaintiffs and Ritz-Carlton Aspen Owners, including but not limited to duties of

loyalty, honesty, and full disclosure, to discharge its responsibilities with reasonable care, and to enforce restrictive covenants set forth in the Declaration of Condominium for Aspen Highlands Condominiums.[3] The scope of these fiduciary duties extend beyond the norm for condominium associations based on the delegation and assumption of authority over not just the common areas, but also the fractional units themselves.

27.     On December 20, 2016, Defendant Association's Executive Board was sent a letter providing notice under section 7.8.3 of the Declaration. The notice set forth information about those who acted to violate the Declaration and Association's Bylaws, and enumerated the acts constituting the claims made in this action. Under section 7.8.1 an "Aggrieved Owner" may enforce the Declaration and prosecute an action in law and or equity if the Association does not act to enforce the Declaration and remedy the violations within 60 days. The Executive Board was provided with the requisite 60 days' notice, and took no action to enforce or cause enforcement of the violated provisions of the Declaration or Bylaws within the 60 days.

**B.      Ritz-Carlton Management Company**

28.     On January 12, 2001, Defendants Association and RC Management entered into a written agreement, designated "Management Agreement." Pursuant to paragraph 2, captioned "Appointment and Acceptance of Agency," the Association employed RC Management "to act on behalf of the Association **and its members** as the exclusive managing entity and to manage the daily affairs of the Condominium **and the (Fractional Ownership Interest) Plan**, and (RC Management) hereby agrees to so act." (Emphasis added.) A copy of the Management Agreement is attached hereto as **EXHIBIT A.**

---

[3] *See*, *Woodward v. Board of Directors of Tamarron Association of Condominium Owners, Inc.*, 155 P.3d 621,624 (Colo. App. 2007); *Colorado Homes, Ltd. v. Loerch-Wilson*, 43 P.3d 718, 722 (Colo. App. 2001).

29.     Pursuant to paragraph 4 of the Management Agreement, captioned "Delegation of Authority," the Association delegates to RC Management "all of the power and authority of (Association) to the extent necessary to perform (RC Management's) duties and obligations under this agreement." In addition, paragraph 4 provides: **"(RC Management), on behalf of and at the expense of (Association), to the exclusion of all other persons including the (Association) and its members, shall have all the powers and duties of the Executive Board as set forth in the Declaration and the bylaws of the (Association)** (except such thereof as are specifically required to be exercised by its directors or members), and it shall perform, by way of illustration and not limitation, (the services set forth in paragraphs 4(A) through 4(V) . . . ." (Emphasis Added.)

30.     Paragraph 4(A) of the Management Agreement provides RC Management with the exclusive authority to "Hire, pay, supervise and discharge all persons necessary to be employed in order to properly manage, maintain, administer and operate the Condominium and (Fractional Ownership Interest) Plan."

31.     Paragraph 4(F) of the Management Agreement provides RC Management with the exclusive authority to "Maintain the (Association's) financial record book, accounts and other records, and as necessary, issue certificate of account to Owners and their Mortgagees . . . "

32.     Paragraph 4(H) of the Management Agreement provides RC Management with the exclusive authority to "Prepare the itemized annual budget for the (Association) or revisions to the budget, or a combination thereof, (that RC Management) determines necessary for submission to the Executive Board."

33.     Paragraph 4(I) of the Management Agreement provides RC Management with the "authority and responsibility to maintain and replace the personal property within the Common Elements and the (Fractional Units), and to determine the maintenance fee, proration of taxes, and

other common expenses applicable to those Common Elements and (Fractional Units), as defined in and provided for in the Declaration".

34.    Paragraph 4(J) of the Management Agreement provides RC Management with the exclusive authority to "Receive and deposit all funds collected from the Owners, or otherwise accruing to the Association, in a special account or accounts of (RC Management) . . . ."

35.    Paragraph 4(L) of the Management Agreement provides RC Management "shall have sole authority to promulgate and amend rules and regulations for the (Fractional Units) and Limited Common Elements of the (Fractional Units) subject to the (Fractional Unit) Directors to revise, repeal or modify such amended rules and regulations and subject to the provisions of the Declaration."

36.    Paragraph 4(N) of the Management Agreement provides RC Management with the authority to "Retain and employ such professionals and such experts whose services may be reasonably required to effectively perform its duties and exercise its powers hereunder, and to employ same on such basis as it deems appropriate."

37.    Perhaps most importantly, Paragraph 4(S) of the Management Agreement provides RC Management with the authority to "Engage a Program Manager through an affiliation agreement, who shall manage and administer the reservation procedures and exchange program for the Ritz-Carlton Club Membership Program (the 'Membership Program') through which Owners of Residence Interests reserve the use of accommodations at a Club as defined in and pursuant to The Ritz-Carlton Club Membership Program Reservation Procedures ('Reservation Procedures'). The Program Manager shall have the broadest possible delegation of authority regarding administration of the Reservation Procedures . . . . RC Management on behalf of (the Association shall assess the Owners of (Fractional Units) the reasonable cost (as determined by

the Program Manager) of operating such Reservation Procedures, which cost shall be included as part of Club dues."

38.     Paragraph 14 of the Management Agreement provides that RC Management "shall receive an annual net fee, free from charges and expenses" of Six Hundred Dollars ($600) per Residence Interest from the Owners of the (Fractional Units) . . ."

39.     Based upon these and other terms of the Management Agreement and also by operation of law, RC Management is the agent of the Association and Fractional Unit Owners, including Plaintiffs and Ritz-Carlton Aspen Owners, and as such, owes the Association, Plaintiffs and Ritz-Carlton Aspen Owners fiduciary duties, including the duties of loyalty, honesty, and full disclosure, to discharge its responsibilities with reasonable care, to avoid self- dealing, and to enforce the restrictive covenants set forth in the Declaration of Condominium for Aspen Highlands. These fiduciary duties also flow from the fact RC Management was given control over the Fractional Units.

40.     Based upon the high degree of control over Plaintiffs' and Ritz-Carlton Aspen Owners' Fractional Units arising from its authority as set forth in the Management Agreement, RC Management owes Plaintiffs and Ritz-Carlton Aspen Owners fiduciary duties, including  duties of loyalty, honesty, and full disclosure, to discharge its responsibilities with reasonable care, to avoid self-dealing, and to enforce the restrictive covenants set forth in the Declaration of Condominium for Aspen Highlands.

C.     **The Cobalt Travel Company**

41.     Defendant Cobalt entered into a four party agreement titled "The Ritz-Carlton Club Membership Program Affiliation Agreement" (Initial Affiliation Agreement) with the Ritz-Carlton Development Company ("RC Development") (the seller of the fractional interests at issue,

68

a wholly owned subsidiary of MVW, and the sole manager and member of Defendants RC Management and Cobalt) and Defendants RC Management and the Association. Pursuant to the Initial Affiliation Agreement, the Ritz-Carlton Club, Aspen Highlands and the purchasers of Fractional Units including Plaintiffs and Ritz-Carlton Aspen Owners, became affiliated with and members of the Ritz-Carlton Membership Program.

42.     Paragraph 1.2 of the Initial Affiliation Agreement provided: "By acceptance of a conveyance of a Residence Interest at the Club . . . each Member is deemed to have consented to the terms and conditions of this Agreement and to have further consented to the appointment of the Members Association as the authorized representative to act on behalf of the Members with respect to the provisions of this Agreement. Whenever the Members Association's acknowledgment, consent, understanding and/or agreement is stated or implied in this Agreement, such acknowledgment, consent, understanding and/or agreement shall be deemed to also have been given by the Board of Directors, if applicable, and each Member."

43.     Pursuant to the terms of the Initial Affiliation Agreement, Defendant Cobalt is the Program Manager of the Ritz-Carlton Club Membership Program and also operates the reservation system through which Ritz-Carlton Aspen Owners obtain use of their allotted number of days at the Ritz Aspen Highlands and obtain access to the sister Ritz-Carlton Destination Clubs in the Ritz-Carlton Club Membership Program. The Initial Affiliation Agreement provides: "The Program Manager may, in its sole discretion, elect to affiliate other locations with the Membership Program as Member Clubs or Associated Clubs from time to time. *Neither the Developer, Members Association, nor Club Manager shall be entitled to participate in or consent to the Program Manager's decision in this regard."* (Emphasis added.) A copy of the Initial Affiliation Agreement is attached hereto as **EXHIBIT B**.

44.     Based upon the terms of the Management Agreement and the Initial Affiliation Agreement, Cobalt is the agent or subagent of the Association and Fractional Unit owners, including Plaintiffs and Ritz-Carlton Aspen Owners, and as such, owes the Association, Plaintiffs and Ritz-Carlton Aspen Owners fiduciary duties, including duties of loyalty, honesty, and full disclosure, to discharge its responsibilities with reasonable care, and to avoid self-dealing.

45.     Based upon the high degree of control over Plaintiffs' and Ritz-Carlton Aspen Owners' Fractional Units arising from its authority as set forth in the Initial Affiliation Agreement, Cobalt owes Plaintiffs and Ritz-Carlton Aspen Owners fiduciary duties, including a duty of loyalty and duty to avoid self-dealing.

**D.**      **Lion & Crown**

46.     As described herein, Defendant Cobalt, in violation of its fiduciary duties to Plaintiffs and Ritz-Carlton Aspen Owners, and aiding and abetting in said fiduciary duty violations by the other Defendants, entered into two additional affiliation agreements.

47.     On August 8, 2010, Cobalt entered into a second affiliation agreement with L&C ("2010 Affiliation Agreement") in which Cobalt ostensibly affiliated the RCDC with something called the L&C Exchange Program. The 2010 Affiliation Agreement purported to give L&C the right to affiliate its exchange program with other exchange programs. The net effect of the 2010 Affiliation Agreement was that the RCDC would become affiliated with any other exchange programs incorporated into the L&C Exchange Program by L&C.

48.     On November 14, 2013, L&C entered into a third affiliation agreement with Marriott Resorts, Travel Company, Inc. ("2013 Affiliation Agreement"). The 2013 Affiliation Agreement affiliated the L&C Exchange Program — and by extension the RCDC — with the Marriott Vacation Club. The main body of the 2013 Affiliation Agreement specifically provided

that the contemplated affiliation with the Marriott Vacation Club would not apply to a particular RCDC club (e.g., such as the Ritz-Carlton Club, Aspen Highlands) unless the association for that club (e.g., the Association defendant here) signed a separate agreement appended to the 2013 Affiliation Agreement called an "Acknowledgment of and Joinder to" the 2013 Affiliation Agreement ("Acknowledgment and Joinder").

49.     L&C is the agent or subagent of the Association and Fractional Unit owners, including Plaintiffs and Ritz-Carlton Aspen Owners, and, as such, owes the Association, Plaintiffs and Ritz-Carlton Aspen Owners fiduciary duties, including duties of loyalty, honesty, and full disclosure, to discharge its responsibilities with reasonable care, and to avoid self-dealing.

50.     The net effect of these two agreements was to allow some or all of the over 400,000 members of Defendant MVW's Marriott Vacation Club who are able to acquire sufficient points in the Marriott Vacation Club Destinations system, to use the Fractional Units at the Ritz Aspen Highlands. These breaches of fiduciary duty caused a great diminution in the value of Plaintiffs and Ritz-Carlton Aspen Owners' Fractional Units, and unjustly enriched the other Defendants, including MVW, MVCI, RC Management and Cobalt at the expense of Plaintiffs and Ritz-Carlton Aspen Owners.

**E.      MVW**

51.     In reality, however, Cobalt, L&C, and Marriott Resorts, Travel Company were nothing more than divisions of MVW, meaning the complex sequence of affiliation agreements (the Initial Affiliation Agreement, the 2010 Affiliation Agreement, and the 2013 Affiliation Agreement) were nothing more than window dressing for self-serving decisions by MVW. Indeed, the 2010 Affiliation Agreement was not an arm's length transaction between Cobalt and L&C; that agreement was drafted and signed by executives of MVW. The same is true of the 2013 Affiliation

Agreement. The Marriott Defendants concocted this confusing state of affairs to obfuscate the true state of affairs and provide cover for their breaches of fiduciary duties, as more fully alleged below. Indeed, MVW executives and lawyers never provided the 2013 Affiliation Agreement to the Association.

## V.    VICARIOUS LIABILITY ALLEGATIONS

52.    MVW directly, and indirectly through wholly owned subsidiaries, exerted control over Ritz-Carlton Club, Aspen Highlands and the other Defendants, because, *inter alia*: 1) MVW's lawyers drafted the Management Agreement that provided its wholly owned subsidiary, RC Management, full control of the operation of the Association and the Association Board at the Ritz-Carlton Club, Aspen Highlands; 2) RC Management and Cobalt were shell companies serviced by persons technically employed by MVW and/or MVCI; 3) the costs and revenues generated in connection with Ritz-Carlton Club, Aspen Highlands by MVW, MVCI, RC Management and Cobalt were accounted for in MVW's consolidated financials; and 4) employees providing services to MVCI, RC Management, and Cobalt were treated as MVW employees.

53.    Each and all of the Defendants (directly and/or indirectly through individual agents, representatives, employees, principals, officers, directors and members) (a) actively or passively participated in the conduct, acts and omissions alleged herein, (b) materially assisted, aided, abetted and/or conspired with one or more other Defendants in committing the conduct, acts, and omissions alleged herein, (c) purposely, knowingly, recklessly, or negligently planned, directed, implemented, furthered, and/or consented to conduct, acts and omissions alleged herein, and/or (d) is directly, vicariously, jointly, and/or severally liable for the conduct, acts, and omissions alleged herein.

54.    Each of the Defendants (a) are the agents, representatives, alter egos, and/or

instrumentalities of their respective principals or controlling entities, (b) have interlocking or overlapping directors and/or officers with their respective principals or controlling entities, (c) are undercapitalized and/or spurious or disregard the corporate form, (d) and are entities for which "piercing the corporate veil" is or may be necessary and appropriate to prevent injustice and inequity to Plaintiffs and Ritz-Carlton Aspen Owners.

## VI.   GENERAL ALLEGATIONS

55.    This case concerns the Marriott Defendants' decision to "re-engineer" the RCDC and merge it with MVW's much less exclusive and inexpensive timeshare club, the Marriott Vacation Club. The re-engineering began with marketing access to the RCDC to select MVC members in mid-2011, with the ultimate goal of selling all of MVW's unsold RCDC fractional interests (approximately 25% of all RCDC fractional interests ever developed) to the Marriott Vacation Club timeshare points trust, and to "affiliate" the two clubs so that access to the RCDC clubs by MVC points members could then be marketed as the luxury tier of the Marriott Vacation Club.  The pay-offs were to rid themselves of inventory costs and expenses and to sell more, and higher priced, MVC points memberships. While profit is a reasonable motive for companies, it becomes illegal when it involves breaching fiduciary duties and engaging in fraud and conspiracy.

56.    The misconduct begins in mid 2011, just months before Marriott International spun off its timeshare operations into MVW, when the Marriott Defendants began to execute a "Product Re-Engineering" plan for the RCDC. The plan began with a committee called the Growth and Governance Council ("GGC"), which undertook a detailed analysis to determine whether this re-engineering could be done profitably by transferring unsold RCDC fractional inventory to the trust that held inventory available to the Marriott Vacation Club and merging the Ritz-Carlton Destination Club with the Marriott Vacation Club through a plan of affiliation.

57.     In December 2011, the month following the spin-off of MVW from Marriott International, the Corporate Growth Committee of MVW was presented with the strategic plan to merge the RCDC with the Marriott Vacation Club. That same month, pursuant to the instruction of the Corporate Growth Committee, the Law Department of MVW began analyzing the legal risk involved in merging the two clubs.

58.     In May 2012, recognizing that there were legal risks but proceeding anyway, MVW's Corporate Growth Committee formally approved the merger of the RCDC with Marriott Vacation Club, including: (a) the closure of all Ritz sales centers, with some to be transitioned to sales offices for Marriott Vacation Club sales; (b) the immediate placement of MVW's unsold RCDC fractional units into an agreement with Marriott Resorts, Travel Company (the MVC Exchange Company) so that Marriott Vacation Club members could gain immediate access to the RCDC properties using MVC points; and (c) the pursuit of formal affiliations with each homeowners' association within the RCDC. This reengineering of the club was designed to increase the profits of MVW, by using the promise of access to RCDC properties to sell more, and more expensive, Marriott Vacation Club points.

59.     On July 17, 2012, MVW sent a letter to Plaintiffs and Ritz-Carlton Aspen Owners (on Ritz-Carlton Destination Club letterhead), stating that "Based on the Ritz-Carlton Destination Club member feedback, additional benefits and experiences will be available through a new affiliation with Marriott Vacation Club Destinations . . . Affiliation will extend to you the opportunity to deposit your Reserved Allocation on an annual basis. Once you deposit, the following will be available for you: . . . Secure any of the 51 worldwide Marriott Vacation Club Resorts . . ." A copy of the July 17, 2012 Letter from Eveleen Babich is attached hereto as **EXHIBIT C**.

60.     The July 17, 2012 letter did not specify whether this proposed affiliation would allow the 400,000 Marriott Vacation Club members to access the Ritz-Carlton Club locations and in fact assured Ritz-Carlton Aspen Owners that "nothing about the Home Club Membership…has changed" as a result of this affiliation.

61.     This announcement proposing a new affiliation with Defendant MVW's Marriott Vacations Club Destinations program generated extreme concern amongst the various "member controlled" Boards of Directors of the various Ritz-Carlton Destination Clubs. For instance, in a letter dated August 3, 2012, the Association Board of the Ritz-Carlton Club-St. Thomas wrote to its members:

> We have been in frequent communications with each other and the Presidents of the other RCDC Clubs since this announcement. Our general but preliminary consensus regarding the 'evolution' of the RCDC brand as described in Eveleen Babich's letter of July 17th is that we are concerned that this may not be an enhancement to our Membership Interests. We all, as members, invested in the Ritz-Carlton brand!

A copy of the August 3, 2012 Letter from the association board of the Ritz-Carlton Club-St. Thomas is attached hereto as **EXHIBIT D**.

62.     On August 10, 2012, the Association Board of the Ritz-Carlton Club-Jupiter wrote to its members:

> We were disappointed as to how Ritz Carlton, Marriott Vacations Worldwide Corporation and Cobalt Travel Company, LLC ('RCDC Parties') separately and collectively chose to characterize these matters they have defined as the "evolution of the RCDC brand." No input from your Board of Directors or, to our knowledge, any of the other RCDC Club Boards was ever solicited by these companies while they determined these significant changes to the RCDC system in which we all own a Membership Interest.

A copy of the August 10, 2012 Letter from the association board of the Ritz-Carlton Club-

St. Thomas is attached hereto as **EXHIBIT E**.[4]

63.     On August 17, 2012, Lee Cunningham, the Executive Vice President and Chief Operating Officer of Defendant MVW, wrote a letter (on Ritz-Carlton Destination Club letterhead) to all Ritz-Carlton Destination Club Members, including Plaintiffs, "to provide you further information regarding certain changes announced on July 17th to the Lion and Crown Travel Company and The Ritz-Carlton Destination Club system" and to assure the Ritz-Carlton Vacation Club members that "nothing… has changed or will change as a result of the announcement." The August 17th notice also stated that the original affiliation notice on July 17th had generated questions from the members, which would be addressed in an upcoming Webinar on August 28, 2012. A copy of the August 17, 2012 Letter from Lee Cunningham is attached hereto as **EXHIBIT F**.

64.     In the meantime, Defendant Association wrote a letter to Plaintiffs and Ritz-Carlton Aspen Owners on August 17, 2012, notifying them that the Association board was working with MVW executives to better understand the proposed affiliation. The letter states that "[f]rankly, it has been our position that our members bought into a Ritz-Carlton brand and do not want that brand diluted. The Board has concerns that … the nature of our club will change by opening the club to MVW timeshare/points members who have a much lower cost of entry."

65.     The August 17th letter from the Association states that "[t]he Board is also concerned that there are specific provisions in our Association documents which the Board

---

[4] Ultimately the announced intention to affiliate the Marriott Vacation Club Destinations program, with its over 400,000 members, caused the Condominium Association Boards of Ritz-Bachelor Gulch and Ritz-Jupiter Clubs to put a vote to their members as to whether to terminate their management agreements with RC Management and Cobalt. In 2013 and 2014, respectively, both of these clubs' memberships voted to terminate the management agreements with Defendant RC Management, and both clubs have since left the system.

believes does not permit MVW to conduct a separate program as they currently intend." A copy of the August 17, 2012 Letter from the Association is attached hereto as **EXHIBIT G**.

66.     One of the provisions that the Association was referring to is Section 19.8 of the Declaration of Condominium for Aspen Highlands Condominiums, entitled "Limit on Timesharing," which states as follows:

> Each Owner acknowledges that Declarant intends to create Fractional Ownership Interests with respect to Tourist Accommodation Units within Aspen Highlands Condominiums and Aspen Highlands Village.  Other than the right of Declarant" (sic) or a Successor Declarant and their respective officers, agents, employees, and assigns to create Fractional Ownership Interests in accordance with Article 23 of this Declaration (specifically including, without limitation, the Plan of Fractional Ownership), ***no Unit shall be used for the operation of a timesharing, fraction-sharing, interval ownership, private residence club, membership program, vacation club, exchange network or system or similar program whereby the right to exclusive use of the Unit is alternated or scheduled among participants in the program on a fixed or floating time schedule over a period of years whether by written, recorded agreement or otherwise.*** (Emphasis added.)

A copy of the Declaration of Condominium for Aspen Highlands Condominiums is attached hereto as **EXHIBIT H**.[5]

67.     On August 26, 2012, Juan Pablo Cappello, a partner at Greenberg Traurig and a Ritz-Carlton Aspen Owner, sent an email to Lee Cunningham, which was copied to the Board of the Association, initially noting Mr. Cunningham's failure to disclose in his August 17, 2012 letter (Exhibit F) his dual role as Executive Vice President and Chief Operating Officer of both the Ritz-Carlton Destination Club and the Marriott Vacations Worldwide Corporation. Mr. Cappello further informed Mr. Cunningham that his August 17, 2012 letter to the Ritz-Carlton Destination Club membership "fail(ed) to acknowledge the underlying issue which all RCDC members need to

---

[5] The Declaration for Aspen Highlands Village which created the "Master Association", and which also govern the Ritz-Carlton Aspen Owners Fractional Units, sets forth a similar use restriction, labeled "No Timeshare" at Section 8.25.

understand. The Marriott Vacations Worldwide Corp. has a huge incentive to dilute the RCDC brand to further its greater interest in selling more Marriott Vacation Club memberships. The growth of Marriott Vacations Worldwide Corp. as a public company is it (sic) tied with the growth of the sales of more and more Marriott Vacation Club memberships." Mr. Cappello concluded, "Unless the Marriott Vacations Worldwide Corp. changes its attitude and begins to address the clear conflict of interest that will destroy the value of our investment, I continue to encourage the RCDC Aspen Highlands to explore exiting from the Marriott relationship and cancel all management contracts. A copy of the August 26, 2012, email from Juan Pablo Cappello is attached hereto as **EXHIBIT I.**

68.    On August 26, 2012, the then President of the Association, Jay A. Neveloff[6], responded to Mr. Cappello's email stating, "It captures my sentiment quite well. I'd like your permission to share your email with the Presidents of the other owner controlled Ritz-Carlton Clubs, who are each making the points you did, albeit not quite as eloquent as you did."

69.    On August 30, 2012, the Ritz-Carlton Destination Club released a new "Frequently Asked Questions for Members" pamphlet to Plaintiffs and Ritz-Carlton Aspen Owners, which stated that "Marriott Vacations Worldwide intends to sell most of its remaining unsold Ritz-Carlton Club inventory through the Marriott Vacation Club Destinations program."[7] A copy of the August 30, 2012 pamphlet "Frequently Asked Questions for Members" is attached hereto as

---

[6] A partner at the New York law firm of Kramer Levin Naftalis & Frankel, and described on the firm website as "a nationally recognized transaction attorney who represents a broad range of clients in connection with the development, ownership and financing of real estate projects, including many high-profile super luxury and mixed-use, commercial, retail and residential projects in New York City and throughout the country. "

[7] The August 28, 2012 pamphlet stated: "Marriott Vacations Worldwide is paying club dues on these unsold fractions in excess of eleven million dollars a year, plus continues to subsidize the operating costs at a number of clubs for an additional four million dollars a year."

**EXHIBIT J.**

70.     The August 30, 2012 "Frequently Asked Questions for Members" also states: "Given the current state of the luxury fractional market and the market's unlikely recovery in the near term, selling this inventory through the Marriott Vacation Club Destinations program relieves the significant financial burden of this unsold inventory in a balanced way . . ." and "Marriott Vacations Worldwide is paying club dues on these unsold fractions in excess of eleven million dollars a year, plus continues to subsidize the operating costs at a number of clubs for an additional four million dollars a year."

71.     In September 2012, the Association retained Philip A. Gosch of the Denver law firm of Brownstein Hyatt Farber Schreck to analyze whether the Aspen Club governing documents allowed the proposed affiliation with the Marriott Vacation Club. On September 21, 2012, Mr. Gosch forwarded a nine-page Memorandum ("Gosch Memorandum") styled: "Analysis with respect to use of Tourist Accommodation Units by members of the Marriott Vacation Club who are not also members of the Ritz-Carlton Membership Program". Mr. Gosch concluded that "The Declaration is clear in its prohibition against any timeshare or exchange use of the Tourist Accommodation Units other than the RC Program specified in Article 23 of the Declaration . . ." Mr. Gosch further informed the Association that in addition to Section 19.8 of the Declaration, "There are numerous provisions in the Declaration and the Colorado Disclosure Statement, the City of Aspen Disclosure Statement and the New York Condominium Offering Plan (the "Disclosure Documents") that support the position that the MVC usage is prohibited." A copy of the September 21, 2012 Memorandum is attached hereto as **EXHIBIT K.**

72.     On October 2, 2012, the Association issued another letter to Plaintiffs and Ritz-Carlton Aspen Owners that purported to update them on the discussions with MVW on this

pressing issue. The letter revealed, *inter alia*, that **"MVW has been advised that it is the view of the Board and its counsel, that in order for MVW to move towards the points based system it is planning on, that the underlying Association documents would need to be revised as it is in our view that the documents prohibit what MVW is planning."** A copy of the October 2, 2012 Letter from the Association is attached hereto as **EXHIBIT L**. (Emphasis added.)

73.     While the Association was conducting its discussions with MVW, on November 5, 2012, the President of the Board of the Ritz-Carlton Club, Bachelor Gulch, Michael Mullenix, wrote a letter to Mr. Steven Weisz, President and CEO of MVW and Lee Cunningham, Executive Vice President and COO of MVW, stating:

> I am writing on behalf of the Board of Directors to continue our dialogue about the proposed affiliation of Ritz-Carlton Bachelor Gulch Members with Lion and Crown in 2013 and beyond and to request that such proposed affiliation be canceled. At a minimum, the proposed affiliation should be delayed until January 1, 2014 and the status quo maintained until that time . . . The Board and membership of the Club have serious concerns that the Club's affiliation with Lion and Crown is contrary to the Club's governing documents and, in any event, will have permanent negative impacts on the club, including most importantly to the value of our residence units…

74.     The letter from the Board of the Ritz-Bachelor Gulch Club to Steven Weisz and Lee Cunningham ended as follows: "Please advise no later than Thursday, November 15, 2012, whether MVW will agree to this requested delay of affiliation. If MVW will not voluntarily agree to this delay and insists on permitting affiliation with Lion and Crown now, the Board may have no alternative but to enforce the Club Declarations prohibition on timesharing through formal legal action. We do not believe that should be necessary given our aligned interests on this issue." A copy of the November 5, 2012 Letter from the Board of the Ritz-Bachelor Gulch Club to Steven Weisz and Lee Cunningham is attached hereto as **EXHIBIT M**.

75.     On November 21, 2012, Mr. Gosch, on behalf of the Association, sent a "cease and

desist" letter addressed to MVW, Cobalt and The Ritz-Carlton Development Company, LLC, stating, *inter alia*, "Any practice of allowing the use of the Tourist Accommodation Units at the Aspen Highlands Condominiums by the MVC Members would violate the express terms of the Declaration and the disclosure documents given to purchasers of units at the Aspen Highlands Condominiums. Further, although MVW, the HOA Manager, the Program Manager and the developer . . . may attempt to portray these actions as permitted by the Initial Affiliation Agreement, the Reservation Procedures and the HOA Management Agreement, we disagree with this interpretation, and in any event the Declaration is clearly controlling under Colorado law. Also, ancillary contracts of adhesion which were executed when the developer controlled the Association (such as the HOA Management Agreement and the Initial Affiliation Agreement) are terminable by the Association under Colorado law once control of the Association passes (as it has at the Aspen Highlands Condominiums) and it reasonably and logically follows that any such terminable agreements would in no event supercede the express terms of a recorded declaration." A copy of the November 21, 2012, letter is attached hereto as **EXHIBIT N.**

76.     The November 21, 2012, cease and desist letter further states "In addition to violating the Declaration, any practice of allowing the use of the Tourist Accommodation Units at the Aspen Highlands Condominium by the MVC Members may constitute, among other things, one or more breaches of fiduciary duties of the HOA Manager to the Association under the HOA Management Agreement as a result of self-dealing among the HOA Manager, the Program Manager, the Marriott licensor entity and their respective affiliates to the detriment of the Association and its members. By permitting MVW and/or the Program Manager to utilize the Tourists Accommodation Units in clear violation of the Declaration, the HOA Manager would be enriching its affiliates and the Marriott licensor entity by creating an attractive offering for the

MVC members, which would increase sales and license fees under Marriott's arrangement with MVW, all at the expense and burden of the Association and its members." **Ex. N,** page 2.

77.     On or about December 22, 2012, the Association forwarded the cease and desist letter to its members, stating, inter alia, "As a result of all the items mentioned regarding the Destination Club, the lack of communication and discussions with MVW and after deep consideration, your Board of Directors have determined that the Aspen Highlands Members are essentially having our program and purchase rights reduced. Comments from a significant number of Members are consistent with this position. In order to fully state our position, the Aspen Highlands Board of Directors through its' counsel, has delivered a Cease and Desist Letter to Marriott Vacation Worldwide Corporation, The Cobalt Travel Company and the Ritz-Carlton Company, LLC on November 21, 2012." The Association's letter to the members further stated, "The Members of Aspen Highlands believe there are numerous legal grounds which make this program change an action which cannot be undertaken." The letter concluded by asking for comments from members and a promise to "keep you informed as additional information is available."

78.     The written comments received from Members in December 2012, as solicited by the Board, were overwhelmingly in favor of the position of the Board, as set forth in the November 21, 2012 cease and desist letter. As an example, "I am with the Board completely. Any MVW involvement is a dilution of our interests in the Ritz-Carlton and, in my view, is a breach of the representations provided to us when we purchased the fractional interests. I am a commercial litigator in New York and am prepared to litigate if necessary."

79.     On April 5, 2013, the Association wrote a letter to all Plaintiffs and Ritz-Carlton Aspen Owners stating that:

Positive discussions were held today between the Board of Directors and representatives of the Ritz/Marriott including Lee Cunningham, COO of the Ritz-Carlton Destination Club. **Ritz Marriott representatives agree that unless a majority of Aspen Highlands Members (excluding the Marriott interests and Members not in good standing) vote in favor of doing so, Ritz/Marriott will not include Aspen Highlands in the Marriott Vacation Club affiliation/exchange/point program.**

Discussions continue on other important issues affecting Aspen Highlands, including alternatives for divesting the current inventory of Aspen Highlands units owned by Ritz/Marriott. **Such inventory will not be sold through the Marriott Vacation Club trust without an additional vote of the Members.**

Copies of letters dated April 5, 2013 and April 8, 2013 from the Association to Ritz-Carlton Aspen Owners are attached hereto as **EXHIBIT O**. (Emphasis added).

80.     Following the April 5, 2013 announcement that no affiliation would occur "unless a majority of Aspen Highland Members voted in favor of doing so," the Board again received numerous written comments from the members, which again overwhelming opposed the affiliation and further supported the Board's promise of a membership vote on the issue of the proposed Marriott Vacation Club affiliation.

81.     On May 14, 2013, a letter was sent by The Ritz-Carlton Destination Club, signed by Lee Cunningham, to all Ritz-Carlton members, stating "regarding other potential affiliations, we want to assure you that a Ritz-Carlton Club affiliation with Marriott Vacation Club Destinations will not take place unless there is an *affirmative vote* of *each Club's Membership*." (Emphasis added).

82.     Discovery produced in fall 2016 by the Association revealed that *initially* the Board sought to follow through on its promise to hold a vote of the membership. Early drafts of proposed communications to members created in May 2013 discussed the promised vote, and included a draft FAQs, that stated:

"Q: Will the Ritz-Carlton Club, Aspen Highlands be available to Marriott Vacation

83

Club Destinations program members?

A: If the Aspen Highlands Members vote that they would like to affiliate with the Marriott Vacation Club Destinations exchange program and the subsequent affirmative vote to change the condominium association documents are approved, then Marriott Vacation Club Destinations program members will be permitted to reserve a residence in the Ritz-Carlton Club, Aspen Highlands to the extent there is inventory available to exchange."

83.     However, by May 2013, the Association became aware that the Association of its sister club at Bachelor Gulch was holding a vote on the issue of whether the Ritz-Bachelor Gulch Club should terminate its relationship with the Ritz-Carlton Destination Club because of the proposed affiliation. On June 2, 2013, Association Board President Randel Mercer received an email from Bachelor Gulch Association President Michael Mullenix stating that: "MVW/Ritz has interfered significantly with the Board's efforts to conduct a clean, straightforward vote. With no announcement to the Board, a few days after we announced our decision to terminate MVW pending a majority vote of the Members, MVW decided to write our entire membership and offer them a 'Survey Vote' on Ritz Letterhead asking whether or not BG Members wanted to have affiliation to the Marriott Vacation Clubs or not. Either way, the Club can stay a Ritz according to them. This confused the heck out of our Members, and I did not take it sitting down. We issued a Cease and Desist order to them and asked them to withdraw their 'Survey Vote' and issue a letter retracting their stunt and apologize to the Membership. They did close their 'Survey Vote' after 3 days with another letter to our Members with their usual spin saying they heard our Members loud and clear and BG would not be affiliated with the Marriott Vacation Clubs if the Members vote to keep them around. Really nice!! I can't begin to tell you how their stunt confused our Membership in that they now think they have already voted, there are two elections, etc. After numerous letters from the Board to our Members, phone calls, emails, a Club-wide conference call where we had 150 Members dial in on the Friday before the Memorial Day weekend, I believe we are back on

84

track."

84.     A subsequent draft of a letter proposed to be sent to the membership, dated in June 2013, from Lee Cunningham, now promised a "survey" to "provide input" rather than a vote: "Based on some Member feedback, it is clear that there is concern about opening The Ritz-Carlton Club, Aspen Highlands to MVCD members through affiliation, which is why we and your Board of Directors have agreed to allow Aspen Members to provide input before any final decisions are made. If a majority (50% plus 1) of the Aspen Members (not including RCDC developer owned fractional interests) surveyed responds affirmatively that they want Members of the Ritz-Carlton Club, Aspen Highlands to have the ability to voluntarily exchange through the MVCD program and MVCD members to have the ability to exchange into the Ritz-Carlton Club, Aspen Highlands, we will move forward to provide that opportunity to all Aspen Members on an individual basis. If we do not hear affirmatively back from a majority of the Aspen membership, then this exchange opportunity will not be made available to the Aspen Members."

85.     The Association Board members knew that this draft communication was deceptive. On June 4, 2013, after reviewing an updated version of the draft letter, Board Member Gerald Marsden objected, "it should be made clear that the FAQs were prepared by Marriott/Ritz . . . Also we decided on a vote not a survey." Further, on June 5, 2013, another Board Member, Tyler Oliver, stated in an email to his fellow Board Members, "I am not as worried about what (the proposed communications to the Members) says as what it doesn't say. After reading this the program doesn't sound too bad, but there is more to the story. We have concerns about the points required of a Marriott owner staying at the Ritz. Also, by associating with the Marriott Points system there may be a negative image diluting the brand and real estate value."

86.     By July 6, 2013, Mr. Mercer had received an email from Mr. Mullenix informing

him that 76% of the 648 Bachelor Gulch members voted in the election, and that "in terms of the total number of Members who voted in the election, more than 89% of the Members voted in FAVOR of the Board's recommendation to terminate Marriott while only less than 11% voted AGAINST the recommendation."

87.     Nonetheless, despite the knowledge of the Association and the Marriott Defendants that Aspen Highlands members were promised a vote on the affiliation issue, and not a survey, by October 2013, the draft of the correspondence proposed to be sent to the members regarding the vote was further edited to now provide that: "As promised earlier this year, Members of The Ritz-Carlton Club, Aspen Highlands will be *surveyed* on their opinion regarding the potential exchange affiliation with the Marriott Vacation Club Destinations exchange program" and that "the sole purpose of the *survey* is to understand the Aspen Highlands Member's interest in this voluntary exchange program, which would allow Members to exchange a week of their reserved allocated time for points within the Marriott Vacation Club Destinations exchange program." (emphasis added).

88.     On November 19, 2013, the Association, in concert with the Marriott Defendants, sent a deceptive letter to the Aspen Members, signed by both Lee Cunningham, as Executive Vice President and Chief Operating Officer of the Ritz-Carlton Destination Club, and by all four members of the Association's Board of Directors, (Mr. Mercer, Phil Snyder, Tyler Oliver and Robert Harris), stating that the Ritz-Carlton Destination Club and the Association Board were conducting a "survey," and that "the sole purpose of the survey is to understand the Aspen Highlands Member's interest in this voluntary exchange program, which would allow Members to exchange a week of their reserved allocated time for points within the Marriott Vacation Club Destinations exchange program." This letter fails to mention that this survey was to be a substitute

for the promised "vote," and that Defendants were breaking the promise made on April 5, 2013 that "unless a majority of Aspen Highlands Members (excluding the Marriott interests and Members not in good standing) vote in favor of doing so, Ritz/Marriott will not include Aspen Highlands in the Marriott Vacation Club affiliation/exchange/point program." Nor does the letter mention the additional promise made by Lee Cunningham on May 13, 2013 that "regarding other potential affiliations, we want to assure you that a Ritz-Carlton Club affiliation with Marriott Vacation Club Destinations will not take place unless there is an affirmative vote of each Club's Membership."

89.     Next, on December 4, 2013, Lee Cunningham, again in his supposed capacity as Executive Vice President and Chief Operating Officer of the "Ritz-Carlton Destination Club", sent another deceptive communication to all Plaintiffs, stating: "We have worked collaboratively with your Board of Directors on this potential opportunity, and you should have received a series of letters on April 5, 2013 and November 19, 2013 regarding this Member survey. We are writing today to provide you with additional information and instructions on how to take the survey." The December 4, 2013 letter again deceptively states that "[t]he sole purpose of this survey is to understand whether the Aspen Highlands Members would like the opportunity to voluntarily exchange a week of their allocated time for points within the MVCD exchange program." The December 4, 2013 letter again fails to mention that this survey was to be a substitute for the "vote" promised on April 5, 2013 and May 13, 2013.

On December 5, 2014, following receipt of the December 4, 2013 letter from Lee Cunningham, Jay Neveloff, who had at the end of 2012 ended his tenure as the Association President, and who was no longer on the Association Board, wrote the new Board President, Randal Mercer, that "I intend to respond to the poll but think it is appropriate for the Board to write

to the members to raise concerns ASAP before they take the poll." When Mr. Mercer replied disingenuously that "I thought the connection was pretty clear regarding the collaborative effort of the board on this one", Mr. Neveloff immediately responded "There was no discussion as to the negatives - that our members swap will be used by hordes of time share owners, that are likely to come for shorter stays meaning wear and tear and clogging up the pipeline for members who want shorter stays. Also, that the redemption value of points may change. Plus others." Mr. Mercer's replied, "Wow. If you got that out of the letter - we have problems." Mr. Neveloff immediately replied, "I didn't get that from the letter. That's my point. The board should be describing both sides of the issue, not just editing what MVCI wants. Really!"

90.     No vote of the Members of Ritz-Aspen Highlands, including by Plaintiffs or Ritz-Carlton Aspen Owners, in favor of allowing the Defendants to include Ritz-Aspen Highlands in the Marriott Vacation Club affiliation/exchange/point program ever occurred. Likewise, no vote of the Members of Ritz-Aspen Highlands in favor of allowing the Defendants to sell their unsold inventory of Aspen Highlands units through the Marriott Vacation Club trust ever occurred.

91.     The survey was responded to by less than 150 members and the "result" nearly split for wanting a so-called "opportunity" to use MVC.  Mercer never even knew the results.

92.     Then, in April 2014, Defendant Association, acting in concert with and/or aided and abetted by the other Defendants, including MVW, RC Management, and Cobalt, unilaterally affiliated or merged the Ritz Aspen Highlands with the Marriott Vacation Club; and agreed and conspired with Defendants to have the Association breach its fiduciary duties to Plaintiffs and Ritz-Carlton Aspen Owners by, *inter alia*, 1) agreeing to act and acting in a disloyal manner towards Plaintiffs and Ritz-Carlton Aspen Owners by favoring the interests of the Defendants over the interests of the Plaintiffs and by including the Ritz-Carlton Club, Aspen Highlands Fractional

Plan in the Marriott Vacation Club affiliation/exchange/points program; 2) failing to request or review the 2013 Affiliation Agreement or understanding its terms or effect on the Ritz-Aspen Highlands; 3) failing to disclose the adverse terms of the 2013 Affiliation Agreement to the Plaintiffs or Ritz-Carlton Aspen Owners; 4) misrepresenting to the Plaintiffs and Ritz-Carlton Aspen Owners the terms of the 2013 Affiliation Agreement, including by asserting that the 2013 Affiliation Agreement allowed only a "week for week" swap between one Aspen Highlands Member and one MVC Member;  and 5) agreeing not to and/or failing to enforce the Declaration, including the covenant against further timesharing, as set forth in paragraph 19.8 of the Declaration.

93.     The Marriott Defendants knew that the 2013 Affiliation Agreement between MVW subsidiaries L&C and Marriott Resorts, Travel Company required that the Association at the Ritz-Carlton Aspen Highlands Club agree to join in that agreement before it was affiliated with the Marriott Vacation Club, i.e., before any Marriott Vacation Club members could access the resort. But they did not want the Association to know that it could simply refuse to execute the Acknowledgment and Joinder and thereby stop the affiliation at their club, so they concealed the 2013 Affiliation Agreement itself.

94.     As described in part below, the Marriott Defendants knew that the 2013 Affiliation Agreement contained numerous terms that would be rejected by the associations at the several clubs, including Aspen Highlands, and so they concealed the 2013 Affiliation Agreement from the associations and their members.

95.     Directors of the Association provided the Marriott Vacation Club members access to Aspen Highlands by signing the Acknowledgment and Joinder on or about April 24, 2014, without ever having requested, received, or reviewed the 2013 Affiliation Agreement they were

agreeing to join. On information and belief, they did so believing they had no power to stop the Marriott Vacation Club affiliation when, in fact, the 2013 Affiliation Agreement that they acknowledged gave them that exact power.

96.     The Association breached its duty of care by signing the Acknowledgment and Joinder without requesting, obtaining, or reading the onerous and adverse terms of the agreement they were joining — the 2013 Affiliation Agreement.  Had the Association directors done so, they would have discovered that they had the power to prevent the Marriott Vacation Club from applying to Aspen Highlands with a simple majority vote. The Marriott Defendants aided and abetting in this breach of the Association's duty of care by concealing the 2013 Affiliation Agreement from the Association's directors, and misleading them into believing they had no power to stop the Marriott Vacation Club affiliation.

97.     Had the Association actually reviewed the 2013 Affiliation Agreement, it would have objected to numerous one-sided and unfair terms ceding significant control from the Association to both Marriott Vacation Club Program Manager Marriott Resorts, Travel Company and L&C. For instance, Section X of the 2013 Affiliation Agreement created a ten-year term for the Ritz-Marriott affiliation, which automatically renews for five-year terms. Critically, once the Association signed the Acknowledgment Agreement, it had no further power to withdraw from the Marriott-Ritz affiliation as termination rights rest solely with Marriott Vacation Club and L&C.

98.     Further, the 2013 Affiliation Agreement granted significant use rights to Marriott Vacation Club in the Ritz properties, above and beyond the use rights given to Aspen Highlands Club owners themselves under the Club's Declaration. Marriott Vacation Club secured the right during certain periods to use the Aspen Highland Club for "marketing and sales of Interests, vacation ownership interests at other resort condominiums or club resorts, or such other vacation

ownership or multisite vacation ownership or membership plans developed or marketed by MVCD or its affiliates." Marriott Vacation Club further secured the right to use exchange time at the Aspen Highlands Club "*for any purpose*, including, without limitation, in MVCD's sole and absolute discretion, any purpose related to marketing, selling, or promoting the MVCD Program or other timeshare or fractional projects developed, marketed or offered by MVCD's affiliates." (Emphasis added). In other words, it secured a right to use the Aspen Highlands club to market the sale of MVCD points to potential Marriott customers.

99.    Furthermore, while it is customary for such exchange agreements to specify a formula for allocating exchange time between various programs, section 7.8 of the 2013 Affiliation Agreement gave Marriott Vacation Club the sole and absolute discretion to calculate the value of exchange time, meaning that MVCD would inevitably use 100% of the exchange time contributed by Aspen members. Likewise, while it is customary for exchange agreements to fairly allocate costs between affiliating exchanges, the 2013 Affiliation Agreement has no such provision. Indeed, the cost allocation was grossly one-sided and likely to lead to increased costs for Aspen Highlands owners. Section 7.1 of the Agreement reserved for Marriott Vacation Club the right to charge Ritz members for use of the exchange program, but explicitly prohibited L&C from charging Marriott members fees for exchanging into the Ritz.

100.    Had the Association reviewed these terms, it never would have agreed to the 2013 Affiliation Agreement. Indeed, they were ignoring Mr. Gosch's advice and jettisoning the cease and desist letter without any competent counsel — while the Marriott Defendants had multiple lawyers working on these agreements.

101.    Yet in April 2014, the Association wrote a letter to all Plaintiffs and Ritz-Carlton Aspen Owners updating them on "your Board of Directors' efforts on your behalf . . ." On page 2

of the letter, the Board dropped a bombshell under the heading "Marriott Vacation Club Destination Exchange Program: In response to the Members' wishes - both past and present, the Board has crafted a very unique program which would allow Aspen Club Members to exchange a week of their reserved allocated time for points within the Marriott Vacation Club Destinations exchange program." A copy of the April 2014 Letter from the Association to Plaintiffs and Ritz-Carlton Aspen Owners is attached hereto as **EXHIBIT P.**

102.    Plaintiffs allege that sometime on or after April 15 2014, in contravention of the promises made to Ritz-Carlton Aspen Owners on April 5, 2013, as well as on May 13, 2013 (that unless a majority of Aspen Highlands Members vote in favor of doing so, Ritz/Marriott will not include Aspen Highlands in the Marriott Vacation Club affiliation/exchange/point program), Defendants MVW, RC Management and Cobalt effectuated the affiliation of the Ritz-Carlton Club, Aspen Highlands with the Marriott Vacation Club.

103.    Exacerbating the value diluting affiliation, MVW then immediately embarked on what they called a "fire-sale" of its remaining unsold Ritz-Carlton Destination Club inventory. They hired a broker to effectively liquidate that inventory, further harming Plaintiffs.

104.    The actions of the Defendants described above were knowingly made in violation of their respective duties of due care, loyalty, honesty and full disclosure owed to Plaintiffs and, Ritz-Carlton Aspen Owners as well as in violation of Section 19.8 and other provisions of the Declaration of Condominium for Aspen Highlands Condominiums, as well as the promises made to Plaintiffs and Ritz-Carlton Aspen Owners between April 5 and April 8, 2013 that unless a majority of Aspen Highlands Fractional Unit owners and members vote in favor of doing so, Defendants would not include Ritz-Carlton Club, Aspen Highlands or the Plaintiffs' and Ritz-Carlton Aspen Owners' Fractional Units in the Marriott Vacation Club affiliation/exchange/point program. The actions

described herein violated and/or aided and abetted the violation of Defendants' fiduciary duties owed to Plaintiffs and Ritz-Carlton Aspen Owners, in addition to other violations.

105.    Now, approximately 400,000 Marriott Vacation Club members — who paid a small fraction of the purchase prices and who pay approximately a third of the annual fees — have access to luxury resorts that were formerly only available to Plaintiffs and Ritz-Carlton Aspen Owners. Defendants have derived huge profits and/or cost savings through this affiliation, while devaluing Plaintiffs' vested property interests. Worse yet, Plaintiffs have had to pay, in the form of inflated annual maintenance fees, for the increased use and wear and tear resulting from the opening of the Ritz-Carlton Club, Aspen Highlands to Marriott Vacation Club Members.

## VII.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Breach of Fiduciary Duty against Association, RC Management, Cobalt, and L&C)

106.    Plaintiffs incorporate by reference the allegations contained in the preceding and subsequent paragraphs, as if fully set forth in this cause of action.

107.    Defendants Association, RC Management, Cobalt, and L&C owed fiduciary duties to Plaintiffs and Ritz-Carlton Aspen Owners arising both out of their agency (or sub-agency) relationship with the Plaintiffs and Ritz-Carlton Aspen Owners, as well as by virtue of said Defendants' high degree of control over Plaintiffs' and Ritz-Carlton Aspen Owners' Fractional Units and had a duty to act with the utmost good faith and loyalty in the best interests of Plaintiffs and Ritz-Carlton Aspen Owners.

108.    These Defendants breached this duty by advancing their own interests and the interests of third parties, including the interests of MVW and MVCI, at the expense of Plaintiffs' and Ritz-Carlton Aspen Owner's interests, by agreeing to act and acting in a disloyal manner towards Plaintiffs and Ritz-Carlton Aspen Owners and by favoring the interests of the Defendants

over the interests of the Plaintiffs and Ritz-Carlton Aspen Owners through inclusion of the Ritz-Carlton Club, Aspen Highlands Fractional Plan and the Plaintiffs' and Ritz-Carlton Aspen Owners' Fractional Units in the Marriott Vacation Club affiliation/exchange/points program; 2) agreeing not to and failing to enforce the Declaration, including the covenant against further timesharing, as set forth in paragraph 19.8 of the Declaration; and/or (3) by failing to act as a reasonably prudent fiduciary would have acted under the same or similar circumstances.

109.    Defendants Association and RC Management owed Plaintiffs and Ritz-Carlton Aspen Owners a fiduciary duty that required them to, among other things, enforce the restrictive covenants of the Declaration, including Section 19.8 thereof, as well as section 8.25 of the Declaration for Aspen Highlands Village. These Defendants failed to enforce Section 19.8, Section 8.25 and other provisions, thereby breaching their fiduciary duty, by: (1) failing to enforce these restrictive covenants against timesharing, as set forth in Section 19.8 and Section 8.25; and/or (2) imposing and/or conspiring with the other Defendants to impose the affiliation of the Marriott Vacation Club affiliation/exchange/points program with the Ritz-Carlton Club, Aspen Highlands Fractional Plan and the Plaintiffs' and Ritz-Carlton Aspen Owners/ Fractional Units.

110.    Defendants Association, RC Management, Cobalt, and L&C also owed Plaintiffs and Ritz-Carlton Aspen Owners a fiduciary duty of loyalty arising both out of their respective agency (or sub-agency) relationship with the Plaintiffs and Ritz-Carlton Aspen Owners, as well as by virtue of their high degree of control over Plaintiffs' and Ritz-Carlton Aspen Owners' Fractional Units and Cobalt's exclusive control of Plaintiffs and Ritz-Carlton Aspen Owners' rights under the appurtenant Ritz-Carlton Club Membership Program.

111.    The fiduciary duties described herein required that Defendants Association, RC Management, Cobalt, and L&C act in the best interests of Plaintiffs and Ritz-Carlton Aspen

Owners, which includes refraining from any actions that would unjustly enrich themselves or their affiliates at the expense of the value of the Fractional Units that Plaintiffs and Ritz-Carlton Aspen Owners purchased. These Defendants breached that duty by, *inter alia*, imposing, allowing and/or conspiring with the other Defendants to allow and market access to the Ritz-Carlton Club Aspen Highlands to MVC points purchasers, impose the affiliation of the Marriott Vacation Club affiliation/exchange/points program with the Ritz-Carlton Club, Aspen Highlands Fractional Plan and the Plaintiffs' and Ritz-Carlton Aspen Owners' Fractional Units.

112.    Defendants Association, RC Management, Cobalt, and L&C breached these fiduciary duties by advancing their own interests and the interests of third parties, including the interests of MVW and MVCI, at the expense of Plaintiffs' and Ritz-Carlton Aspen Owners' interests, in allowing access to the Ritz-Carlton Club Aspen Highlands to MVC points purchasers and the affiliation of the Marriott Vacation Club affiliation/exchange/points program with the Ritz-Carlton Club, Aspen Highlands Fractional Plan and the Plaintiffs' and Ritz-Carlton Aspen Owners / Fractional Units.

113.    Defendant Association also owed Plaintiffs a duty to exercise its fiduciary duties with reasonable care. The Association violated that duty by executing the Acknowledgment and Joinder without requesting or reading the 2013 Affiliation Agreement itself.  As a result of this breach of the duty of care, the Association failed to discover that it could have prevented the Marriott Vacation Club affiliation at Aspen Highlands with a simple majority vote of its directors, and instead unwittingly authorized that affiliation at Aspen Highlands. The Association further failed to disclose or cure a number of one-sided provisions in the 2013 Affiliation Agreement that ceded extraordinary power and control over the club to Marriott Vacation Club, including (i) ceding all authority to withdraw from the Marriott-Ritz affiliation in the future (Section X), (ii)

granting Marriott Vacation Club unfettered use rights in time allocated to it under the 2013 Affiliation Agreement, including the authority to use the Aspen Highlands Club to sell points to Marriott customers (paragraphs 7.6 and 7.7), (iii) granting Marriott Vacation Club absolute authority to determine the value of time exchanged from Ritz members into the Marriott program, and (paragraph 7.8) (iv) providing an unfair allocation of costs to run the program between Ritz members and Marriott members (paragraph 7.1).

114.    As a result of Defendants' breach of fiduciary duties, Plaintiffs and Ritz-Carlton Aspen Owners suffered damages, including the destruction of the value in their fractional units, in an amount to be proven at trial.

115.    Further, as a result of Defendants RC Management's, Cobalt's, and L&C's breaches of fiduciary duties, said Defendants profited at Plaintiffs' and Ritz-Carlton Aspen Owners' expense, and said Defendants should be ordered to disgorge to Plaintiffs all commissions, fees and profits they received as a result of the conduct described herein; should be ordered to provide an accounting of all commissions, fees and profits earned by RC Management and Cobalt; and a constructive trust should be imposed upon said commissions, fees and profits for the benefit of Plaintiffs.

116.    Finally, Plaintiffs' injuries that were caused by the Marriott Defendants' conduct, which was willful and wanton and without regard to consequences or of the rights of the Plaintiffs, are attended by circumstances of fraud, entitling Plaintiffs to exemplary damages against the Marriott Defendants.

**SECOND CAUSE OF ACTION**
**(Constructive Fraud against Association, RC Management, Cobalt, and L&C)**

117.    Plaintiffs incorporate by reference the allegations contained in the preceding, and subsequent paragraphs, as if fully set forth in this cause of action.

118.    Defendants Association, MVW, RC Management, Cobalt, and L&C each of them had a duty as fiduciaries to act honestly, with full disclosure and loyalty to the Plaintiffs as their principals.

119.    As described above, Defendants MVW, RC Management, Cobalt, and L&C  knew that the 2013 Affiliation Agreement gave the Association the power to prevent the Marriott Vacation Club affiliation from extending to Aspen Highlands but concealed that information from the Association as part of a plan to induce the Association into executing the requisite Acknowledgment and Joinder. Furthermore, MVW, RC Management, Cobalt, and L&C  knew about a number of one-sided provisions in the 2013 Affiliation Agreement that ceded extraordinary power and control over the Club to Marriott Vacation Club, including (i) ceding all authority to withdraw from the Marriott-Ritz affiliation in the future (Section X), (ii) granting Marriott Vacation Club unfettered use rights in time allocated to it under the 2013 Affiliation Agreement, including the authority to use the Aspen Highlands Club to sell points to Marriott customers (paragraphs 7.6 and 7.7), (iii) granting Marriott Vacation Club absolute authority to determine the value of time exchanged from Ritz members into the Marriott program, and (paragraph 7.8) (iv) providing an unfair allocation of costs to run the program between Ritz members and Marriott members (paragraph 7.1).

120.    Defendants Association, RC Management, and Cobalt knew that the disclosures they made to Plaintiffs and other Members related to the affiliation proposed by the Marriott Defendants were misleading and failed to fully disclose material facts, including but not limited to, that: 1) the affiliation proposal violated multiple provisions of the Club Declaration, Bylaws and Disclosures as outlined in the September 21, 2012 Memorandum prepared by Philip Gosch, counsel for the Association; 2) that the governing documents, including the Club Declaration,

required an affirmative vote of at least a majority of the members (i.e., required over 400 affirmative member votes); 3) that the Defendants, acting in concert, deceptively and without informing the members, substituted a misleading survey for the promised majority vote of the membership; and 4) on or about April 15, 2014, based on a mere plurality of member responses to the misleading survey, the Association authorized the affiliation with the Marriott Vacation Club, without even holding the promised vote, and without even informing the Members about the results of the misleading survey.

121.    These Defendants knew that the Plaintiffs were relying on the promises made by the Association, RC Management and Cobalt to (i) conduct a vote of the membership before affiliation with MVC would occur, (ii) reject affiliation unless a *majority* of the membership voted for it, and (iii) keep members fully informed on the affiliation issue. Plaintiffs did justifiably rely to their detriment on these material promises. Had Plaintiffs known the truth, they would have taken steps to prevent the affiliation, including demanding the membership vote requiring that a majority of the Members approve affiliation (as promised in April 2013) or instituting appropriate legal proceedings, such as the filing of a derivative lawsuit against the Association's Board to require that it hold the promised vote and to enforce the use restrictions set forth in the Club Declaration and Bylaws.

122.    By virtue of the misrepresentations and non-disclosure of the material facts described above and herein, said Defendants afforded themselves the means by which to take undue advantage of Plaintiffs.

123.    Said Defendants' conduct, including the misrepresentations and non-disclosure of the material facts described above and herein, tended to deceive, violate confidence and injure public interests.

124.    As a result of the tendency of Defendants' misrepresentations and non-disclosures of the material facts described above and herein to deceive, violate confidence and injure public interests, Plaintiffs suffered damages, including the destruction of the value in their fractional units, in an amount to be proven at trial.

125.    Further, as a result of the tendency of Defendants' misrepresentations and non-disclosures to deceive, violate confidence and injure public interests, Defendants RC Management and Cobalt have profited at Plaintiffs' expense and said Defendants should be ordered to disgorge to Plaintiffs all commissions, fees and profits they received as a result of the conduct described herein; that an accounting of all commissions, fees and profits earned by RC Management and Cobalt be ordered by the Court, and that a constructive trust be imposed upon said commissions, fees and profits for the benefit of Plaintiffs.

126.    Finally, Plaintiffs' injuries that were caused by Marriott Defendants' conduct, which was willful and wanton and without regard to consequences or of the rights of the Plaintiff, are attended by circumstances of fraud, entitling Plaintiffs to exemplary damages against the Marriott Defendants.

### THIRD CAUSE OF ACTION
#### (Aiding and Abetting Breach of Fiduciary Duty and Constructive Fraud against All Defendants)

127.    Plaintiffs and Ritz-Carlton Aspen Owners incorporate by reference the allegations contained in the preceding, and subsequent paragraphs, as if fully set forth in this cause of action.

128.    Defendants and each of them, including MVW, MVCI, and L&C aided and abetted the breaches of fiduciary duty and constructive fraud committed by Defendants Association, RC Management, Cobalt, and L&C.

129.    As described above, Association, RC Management, Cobalt, and L&C owed

fiduciary duties to Plaintiffs and Ritz-Carlton Aspen Owners.

130.    As described above, Association, RC Management, Cobalt, and L&C breached their fiduciary duties and committed fraud as to Plaintiffs and Ritz-Carlton Aspen Owners.

131.    Defendants, including MVW, MVCI, and L&C knowingly aided and abetted and participated in the breaches of fiduciary duty and constructive fraud by, *inter alia*, participating in further timesharing (prohibited by, inter alia, Section 19.8 of the Declaration of Condominium for Aspen Highlands Condominiums and Section 8.25 of the Declaration for Aspen Highlands Village) and by participating in, intermeddling, forcing and otherwise improperly influencing the decision by Cobalt and the other Defendants to affiliate the Marriott Vacation Club with the Ritz-Carlton Club, Aspen Highlands and with Plaintiffs' and Ritz-Carlton Aspen Owners' Fractional Units, despite promises made to Plaintiffs and Ritz-Carlton Aspen Owners that such affiliation would not occur without a vote by the Plaintiffs and Ritz-Carlton Aspen Owners.

132.    Defendants' MVW, MVCI, and L&C aiding and abetting the breach of fiduciary duties and constructive fraud alleged herein has caused damage to Plaintiffs and, Ritz-Carlton Aspen Owners including the destruction of the value in their fractional units, in an amount to be proven at trial.

133.    The Marriott Defendants aided and abetted in the Association's breach of its duty to exercise reasonable care in the performance of its duties by inducing the Association to sign the Acknowledgment and Joinder while concealing the 2013 Affiliation Agreement from the Association's directors, and misleading them into believing they had no power to stop the Marriott Vacation Club affiliation. Furthermore, the Marriott Defendants knew about a number of one-sided provisions in the 2013 Affiliation Agreement that ceded extraordinary power and control over the Club to Marriott Vacation Club, including (i) ceding all authority to withdraw from the

Marriott-Ritz affiliation in the future (Section X), (ii) granting Marriott Vacation Club unfettered use rights in time allocated to it under the 2013 Affiliation Agreement, including the authority to use the Aspen Highlands Club to sell points to Marriott customers (paragraphs 7.6 and 7.7), (iii) granting Marriott Vacation Club absolute authority to determine the value of time exchanged from Ritz members into the Marriott program, and (paragraph 7.8) (iv) providing an unfair allocation of costs to run the program between Ritz members and Marriott members (paragraph 7.1).

134.    Further, as a result of Defendants' MVW, MVCI, and L&C aiding and abetting of the breach of fiduciary duties and constructive fraud described herein, said Defendants profited at Plaintiffs and Ritz-Carlton Aspen Owners' expense and said Defendants should be ordered to disgorge to Plaintiffs all commissions, fees and profits they received as a result of the conduct described herein; that an accounting of all commissions, fees and profits earned by RC Management and Cobalt be ordered by the Court, and that a constructive trust be imposed upon said commissions, fees and profits for the benefit of Plaintiffs.

135.    Finally, Plaintiffs' injuries that were caused by Marriott Defendants' conduct, which was willful and wanton and without regard to consequences or of the rights of the Plaintiff, are attended by circumstances of fraud, entitling Plaintiffs to exemplary damages against the Marriott Defendants.

## FOURTH CAUSE OF ACTION
### (Conspiracy against All Defendants)

136.    Plaintiffs incorporate by reference the allegations contained in the preceding and subsequent paragraphs, as if fully set forth in this cause of action.

137.    Defendants, and each of them, conspired with the remaining Defendants' scheme to commit the wrongful and unlawful conduct alleged herein.

138.    As described in detail above, MVW, MVCI, and L&C, in furtherance of their own

financial gain, conspired with Defendants Association, RC Management, Cobalt, and L&C in breaching their fiduciary duties and acting fraudulently by agreeing to the affiliation of the Ritz-Carlton Club, Aspen Highlands and Plaintiffs' and Ritz-Carlton Aspen Owners' Fractional Units with the Marriott Vacation Club, in violation of promises made by Defendants in April 2013, in the Initial Affiliation Agreement, and in the Declaration of Condominium at Aspen Highlands.

139.    All Defendants agreed on an object to be accomplished — the affiliation of the Ritz-Carlton Club, Aspen Highlands and Plaintiffs' and Ritz-Carlton Aspen Owners' Fractional Units with the Marriott Vacation Club. There was a meeting of the minds among all Defendants on that object. The Defendants, working together, accomplished the unlawful overt acts of breaching fiduciary duties set forth above, as well as the unlawful overt acts of aiding and abetting the Association, RC Management, Cobalt and/or L&C in breaching their fiduciary duties and by acting fraudulently by participating in said affiliation, in violation of promises made by Defendants in April 2013, the Initial Affiliation Agreement, and the Declaration of Condominium at Aspen Highlands.

140.    As a proximate result, Plaintiffs suffered damages, including the destruction of the value in their fractional units, in an amount to be proven at trial.

141.    As a result of Defendants' conspiracy to breach of fiduciary duties described herein, Defendants RC Management, Cobalt, MVW, MVCI and L&C profited at Plaintiffs and Ritz-Carlton Aspen Owners' expense and said Defendants should be ordered to disgorge to Plaintiffs all commissions, fees and profits they received as a result of the conduct described herein; should be ordered to provide an accounting of all commissions, fees and profits earned by RC Management and Cobalt be ordered by the Court; and a constructive trust should be imposed upon said commissions, fees and profits for the benefit of Plaintiffs.

142.     Finally, Plaintiffs' injuries that were caused by the Marriott Defendants' conduct, which was willful and wanton and without regard to consequences or of the rights of the Plaintiff, are attended by circumstances of fraud, entitling Plaintiffs to exemplary damages against the Marriott Defendants.

## FIFTH CAUSE OF ACTION
### (Unjust Enrichment against RC Management, Cobalt, MVW, MVCI and L&C)

143.     Plaintiffs incorporate by reference the allegations contained in the preceding and subsequent paragraphs, as if fully set forth in this cause of action.

144.     Defendants RC Management, Cobalt, MVW, MVCI and L&C acted in a wrongful manner, unfairly causing detriment to Plaintiffs and Ritz-Carlton Aspen Owners.

145.     Said Defendants, and each of them, conspired with and aided and abetted each other in achieving a unilaterally imposed affiliation with the Marriott Vacations Club, in order to rid themselves of a poor financial investment with the Ritz-Carlton Club, to increase the attractiveness, value and price of MVC timeshares sold by the MVW and MVCI through the affiliation with the Ritz Carton Club Aspen Highlands, as well as to increase management and exchange fees payable to RC Management, Cobalt and L&C, despite knowing that such an affiliation would devalue Plaintiffs' Fractional Units, while at the same time making Marriott Vacation Club Destinations more attractive, valuable and expensive, all to the unjust enrichment of Defendants, including but not limited to RC Management, Cobalt, MVW, MVCI and L&C.

146.     Under these circumstances, it would be unjust for said Defendants to retain the benefit and ill-gotten commissions, fees and profits they made without commensurate compensation to Plaintiffs and Ritz-Carlton Aspen Owners. As such, Plaintiffs request said that Defendants be ordered to disgorge to Plaintiffs all commissions, fees and profits they received as a result of the conduct described herein; that an accounting of all commissions, fees and profits

earned by RC Management and Cobalt be ordered by the Court; and that a constructive trust be imposed upon said commissions, fees and profits for the benefit of Plaintiffs.

147.    Finally, Plaintiffs' injuries that were caused by the Marriott Defendants' conduct, which was willful and wanton and without regard to consequences or of the rights of the Plaintiff, is attended by circumstances of fraud, entitling Plaintiffs to exemplary damages against the Marriott Defendants.

## JURY DEMAND

Plaintiffs demand a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

a.    That Plaintiffs recover damages, as provided by law, determined to have been sustained as to each of them;

b.    That Defendants RC Management, Cobalt and L&C disgorge and repay to Plaintiffs all compensation paid to them by Plaintiffs; that the Court order an accounting of said compensation; and that a constructive trust be imposed upon said compensation for the benefit of Plaintiffs

c.    That Defendants disgorge to Plaintiffs all profits Defendants received as a result of the conduct described herein; that the Court order an accounting of said profits; and that a constructive trust be imposed upon said profits for the benefit of Plaintiffs;

d.    That Plaintiffs receive pre-judgment and post-judgment interest as allowed by law;

e.    That Plaintiffs recover their costs of the suit, and attorneys' fees as allowed by law;

f.    For punitive and/or exemplary damages against the Marriott Defendants according to proof; and

g.      For all other relief allowed by law and equity.


DATED:  January 14, 2019

REISER LAW, P.C.

_____ */s/ Michael J. Reiser* _____
Michael J. Reiser, # 16161
1475 N. Broadway, Suite 300
Walnut Creek, CA 94596
Telephone: (925) 256-0400
Facsimile: (925) 476-0304
E-mail: reiserlaw@gmail.com
*Attorney for Plaintiffs*


GIBBS LAW GROUP, LLP

_ */s/ Michael Schrag* _____
Michael Schrag (CA State Bar # 185832)
Linda Lam (CA State Bar# 301461)
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: (510) 350-9718
Facsimile: (510) 350-9701
E-mail: mls@classlawgroup.com E-mail:
lpl@classlawgroup.com
*Attorney for Plaintiffs*

THE MATTHEW C. FERGUSON LAW FIRM, P.C.

_____ */s/ Matthew C. Ferguson* _____
Matthew C. Ferguson, #25687
119 South Spring, Suite 201
Aspen, CO 81611
Telephone: (970) 925-6288
Facsimile:  (970) 925-2273
E-mail: matt@matthewfergusonlaw.com
*Attorney for Plaintiffs*


THE MEADE FIRM, p.c.

_____ */s/ Tyler Meade* _____
Tyler Meade (CA State Bar # 160838)
12 Funston Ave., Suite A
San Francisco, CA 94129
Telephone: (415) 724-9600
Facsimile: (415) 510-2544
E-mail: tyler@meadefirm.com
*Attorney for Plaintiffs*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 14, 2019, I electronically filed the foregoing **SIXTH AMENDED COMPLAINT AND JURY DEMAND** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

**Michael J. Reiser**
Reiser Law, P.C.
1475 N. Broadway, Suite 300
Walnut Creek, CA 94596
michael@reiserlaw.com

**Matthew C. Ferguson**

**Jessica Black Livingston, Esq.**
Hogan Lovells US LLP
1200 Seventeenth Street, Suite 1500
Denver, CO 80202
Telephone: (303) 899-7300
Fax: (303) 899-7333
dan.shea@hoganlovells.com

The Matthew C. Ferguson Law Firm, P.C.
119 South Spring, Suite 201
Aspen, C) 81611
matt@matthewfergusonlaw.com

**Michael L. Schrag**
Gibbs Law Group LLP
505 14th Street, Suite 1110
Oakland, CA 94612
mls@classlawgroup.com

**Tyler R. Meade**
The Meade Firm p.c.
12 Funston Ave., Suite A
San Francisco, CA 94129
tyler@meadefirm.com

***Attorneys for Plaintiffs***

jessica.livingston@hoganlovells.com

***Attorneys for Defendant Aspen Highlands Condominium Association***

**Naomi G. Beer, Esq**
**Ian S. Marx, Esq.**
**Philip R. Sellinger, Esq.**
Greenberg Traurig, LLP
1200 17th Street, Suite 2400
Denver, CO 80202
Phone: (303) 572-6500
Fax: (303) 572-6540
BeerN@gtlaw.com
SellingerP@gtlaw.com
MarxI@gtlaw.com

***Attorneys for Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., Ritz-Carlton Management Company, LLC, Cobalt Travel Company, LLC and Lion & Crown Travel Company, LLC***

 /s/