IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 1:16-cv-01301-PAB-GPG

**RCHFU, LLC,** *et al.*

Plaintiffs,

v.

**MARRIOTT VACATIONS WORLDWIDE CORPORATION,** *et al.*

Defendants.

---

## DECLARATION OF MATTHEW C. FERGUSON IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

---

MATTHEW C. FERGUSON, declares and states

1. I am a member in good standing of the Colorado and New York bars, an officer of this Court and the shareholder of THE MATTHEW C. FERGUSON LAW FIRM, P.C. ("Firm"), co-counsel for 200 plus plaintiffs or sets of plaintiffs ("Plaintiffs") in the above-entitled action.

2. I submit this affidavit in support of Plaintiffs' Motion for Attorneys' Fees and Costs in Connection with Sanctions Order ("Fee Application") as directed in Judge Gordon P. Gallagher's "Order Regarding Plaintiffs' Motions for Default Judgment" ("Sanctions Order") (Dkt. 330), made pursuant to Fed.R.Civ.P. 54(d), and D.Colo.L.Civ.R 54.3.

3. I affirm the accuracy of the factual assertions made in Fee Application.

### A. QUALIFICATIONS OF FERGUSON, SCHRAG AND LAM

4. I attended the College of the Holy Cross (B.A. 1980) and Fordham University School of Law (J.D. 1983).

1



5. I was admitted to practice law in New York in 1984 and to the United States District Courts for the Southern and Eastern Districts of New York also in the mid-1980's. At the time I left New York City in 1995, I was in the Litigation Department of what is now Nixon Peabody, LLP practicing commercial litigation and also still busy defending Pan American World Airways, Inc and related entities in *In Re Air Disaster at Lockerbie, Scotland*. My client was United States Aviation Underwriters and I had other companies that I represented in New York both in the state and federal courts. There I tried cases and argued appeals.

6. In 1995, I moved to Colorado and was admitted to the Colorado bar and then this Court. I joined the Aspen-based law firm of Garfield & Hecht, P.C. as its fifth lawyer. There, I helped build a successful local, regional, and state-wide litigation, trial, and appellate practice, for local, Colorado and national clientele. The firm had a transaction and real estate practice group also. That law firm grew to 5 locations and over 24 lawyers. I continued to represent New York clients and travel back there internationally for my clients. I also handled federal court litigation in the United States District Courts for the Southern and Eastern Districts of New York. A copy of a brief Curriculum Vitae is attached as **Exhibit "A"**.

7. Since 1995, I have overseen many dozens of Colorado commercial cases and supervised senior/junior partners, associates and paralegals, as I had done in New York City for several of the 12 years prior.

8. In 2012, I started my own and current firm – The Matthew C. Ferguson Law Firm, P.C. ("Firm" or "MCF Law"). I currently employ two full time attorneys and engage two to three contract lawyers as Counsel to the Firm. We specialize in commercial litigation. I employ 2-3 paralegals at any given time. I also co-counsel with various firms, including in this case with Reiser Law, p.c. ("Reiser Law"), The Meade Firm, p.c. ("Meade Firm") and the Gibbs Law Group, LLP

("Gibbs"). I have co-counseled with these firms in other cases and together we prosecute mass actions and complex commercial litigation. By combing, we are able to math fire-power with some of the largest National law firms.

9. I have practiced commercial litigation and trial work for the entirety of my professional career with some specialty very early on in Aviation products liability and Air Disaster/Terrorism cases, before focusing solely on commercial litigation when I moved to Colorado in 1995. My commercial litigation and trial experience are diverse and include complex cases, multi-plaintiff cases, CCOCA and ILSA litigation, banking, work-out, real estate disputes, contract disputes, election law, probate disputes, business torts/fraud and business disputes. We represent both plaintiffs and defendants. Some of my clients have been large, *e.g.*, Lehman Brothers, West LB Bank (Germany); others medium size family business, *e.g.*, Gorsuch, Ltd (general counsel role). We handle some tort and negligence cases for local individuals, but I generally only oversee other lawyers.

10. I have handled numerous appeals and argued them in the Colorado Court of Appeals and the Colorado Supreme Court. We have also had appeals in the Tenth Circuit Court of Appeals.

11. As Judge Gallagher will appreciate being a Western Slope lawyer, our clients include local individuals, high net worth individuals and small to large companies. We regularly counsel people in a wide variety of endeavors, industries, professions or business. We are able to assist and represent others in need of legal services who are not able to afford those services.

12. Lastly, relevant here, I have been engaged in litigation involving the Interstate Land Sales Full Disclosure Act ("ILSA") since September 2009, when Michael Reiser and I filed lawsuits on behalf of twenty-nine condo-hotel owners, consolidated under the case titled *Keefe v.*

3

*Base Village Owners, LLC*, Pitkin County Colorado District Court, Case Number 2009 CV 273. In March 2011, co-counsel and I successfully achieved, on summary judgment, the rescission of approximately $100 million worth of purchase contracts for 60 slope-side condo-hotel unit owners at the Viceroy Hotel in Snowmass, Colorado, and the return of $15.3 million in deposits, based upon ILSA claims, including those arising under U.S.C. §§ 1703(a)(1)(C) and 1703(d)(1).

13. Since September 2009, I have devoted about 35% of my practice to representing condominium and condo-hotel owners in lawsuits arising out of ILSA, the Unfair Competition Law ("UCL") and the common law of Colorado and New York.

14. In addition to the *Keefe* case discussed above, I have been either lead or co-lead counsel in the following multi-plaintiff development or hospitality related lawsuits:

> a. *Bruce L. Smith, et al. v. The Related Companies, LP, et al.* — Pitkin County Colorado District Court Case Number 2011 CV168. Co-Lead counsel With Mr. Reiser and Michael L. Schrag in an ILSA and common-law based rescission action pertaining to 29 closed condominium units at the Capitol Peak Lodge Condominiums in the Town of Snowmass Village, Colorado. Status: Confidential settlement reached in 2015.
>
> b. *Gillespie, et al. v. St. Regis Residence Club New York, Inc., et al.* —United States District Court, Southern District of New York Case Number 16-cv-9390-GHW. Co-Lead counsel with Mr. Reiser, Mr. Schrag and Tyler Meade representing 107 deeded fractional-interest units at the St. Regis Residence Club in a breach of implied covenant of good faith and fair dealing, rescission and unjust enrichment action. Status: Discovery stage.

4

15. The Four Firms have also joined more recently to file a complex Colorado metro-district case against the Related Companies, LP under the Colorado Organized Crime Control Act (a/k/a COCCA) arising out a sophisticated scheme to defraud tax-payers in connection with bonds issued to develop the Base Village at Snowmass Village, Colorado: *Base Village Metropolitan District No. 2 v. The Related Companies, LP, et. al* – Pitkin County Colorado District Court Case Number 2017 CV 30137.

16. I have an AV Rating from Martindale and an earned (not paid for) 9.5 "Top Attorney" rating from AVVO. I do not pay for any rating services such as Super Lawyer.

17. We generally handle and often try cases in the Colorado districts courts and this Court, as well as in the New York federal courts. I conduct arbitrations on a regular basis and have served as an arbitrator. Many of the opposing counsel we face around Colorado are Denver-based (and usually from large firms[1]), although we also litigate against firms on the Western Slope as well as against large national law firms – *e.g.*, Bryan Cave LLP and others.

18. I have litigated fee motions/applications as prevailing party and given expert testimony on our behalf and for other parties/firms. Through my experience litigating fees and costs issues with wide range of law firms, types of law firms and lawyers in a varied array of fields, I have gained knowledge of prevailing hourly rates for Colorado attorneys which is in accord with decisions of both state and federal courts, market studies. I am also able to analyze the reasonableness and necessity for the number of hours expended and related fees (and costs) charged clients and sought in courts.

---

[1] By way of example, a few of the firms would include Greenberg Traurig, LLP, Dorsey Whitney, LLP, Holland & Hart LLP, Baker Hostetler, LLP, Faegre Benson, LLP, Wheeler, Trigg O'Donnell llp, Lewis Roca Rothgerber Christie LLP, White and Steele, P.C., Sherman & Howard, LLC, Ballard Spahr LLP.

19. My Aspen hourly rates are generally $495.00 - $550.00, which is lower than the rates I would charge for the same work if located in Denver, Colorado or New York City. My rate for this case is **$650** per hour given the nature and complexity of the work. My qualifications and experience in this this type of complex commercial cases yields a conservatively low rate of $650 which is commensurate with and what below my co-counsel normally charge and what other lawyers who do what I do charge in Denver, Colorado.

20. The qualifications of my co-counsel are set forth in their affidavits. In order to obviate the need for one more affidavit, I have attached hereto as **EXHIBIT "B"** the qualifications of Michael L. Schrag and Linda Lam of the Gibbs Law Group, LLP – two of my co-counsel here.

### B. SUMMARY AND OPINIONS

3. It is my opinion that, considering the circumstances of this case, the amount at stake, the complexity and contentiousness of the issues addressed in the Affiliation Agreement Motion and Sanctions Order, the fees and costs sought in this Fee Application are reasonable and necessary. The Four Firms have staffed and billed this case appropriately using available attorneys with the requisite skill and experience for given tasks, with the Four Firms contributing the best people for legal writing, fact discovery, court appearances, *etc*. In this manner, the Four Firms are able to prosecute large contingency fee complex commercial cases against two of the largest national law firms retained by the large corporations Marriott and AIG.

4. Plaintiffs seek **$142,743** in fees, and **33,134.98** in costs in connection with the Discovery Violation incurred from March 14, 2018 through December 31, 2018. Plaintiffs seek a total award of **$34,882.50** in fees in connection with this Fee Application incurred beginning on January 2, 2019 through January 14, 2018. Plaintiffs thus seek a total award of **$210,761.48.**

Plaintiffs reserve the right to supplement the fees incurred on the reply and any hearing on fees.

### C.   PURPOSES OF THIS AFFIDAVIT

5.   The purposes of this Affidavit are to set forth my relevant testimony in support of Plaintiffs' Fee Application about (1) this Firms' billing procedures, (2) the Four Firms' retention and representation of Plaintiffs, (3) Mr. Schrag's and Ms. Lam's qualifications, (4) the Firms' compliance with D.C.Colo.L.Civ.R7.1(a), (4) the work performed by the Four Firms on the fallout from Marriott's Discovery Violation and failure to produce the November 14, 2013, Affiliation Agreement as allowed in the Sanctions Order, (5) the collection, extraction, review and winnowing of hours actually spent to those reasonably spent,  and (6)  the costs incurred in connection with the late production of the Affiliation Agreement and specifically re-deposing certain witnesses.

### D.   THE FIRM'S BILLING PROCEDURES AND REVIEW OF TASKS AND HOURS FOR REASONABLENESS

6.   The Firm has performed legal services with co-counsel for Plaintiffs from in or about December 2015 to date and continuing. Each Plaintiff and the 4 Firms have entered into proprietary, privileged and confidential "Ritz-Carlton Aspen Contingent Fee Agreement for Litigation" (with requisite Disclosure Statement) and a "Joint Prosecution of Claim and Representation Agreement."

5.   Thereafter, electronic and shared files were opened at this Firm and co-counsel firms – Reiser Law, Meade Firm and Gibbs, including extensive and expanding physical and electronic litigation files, computerized docketing files.

6.   For this Firm a computerized billing file was established in a legal billing software called TABS.  The billing file for each Client/Matter here is identified by a specific number. Client/Matter No. 1183.0001 was opened for, and assigned to, this case.

7

7. Pursuant to the Firm's internal employment manual, all timekeepers, including lawyers and paralegals, are required to keep contemporaneous notes and/or time records in increments of one tenth (1/10) of an hour. As is the Firm's practice, all timekeepers are required to comply with the Firm's manual and keep detailed billing information regarding each task they perform on a daily basis. These time records are then entered into the Firm's billing software program. Task are usually separated by a semicolon.

8. I am responsible for, and work consistently to ensure that, all attorneys and paralegals are fully compliant with both the Firm's billing procedures and Colo.R.P.C. 1.5.

9. At the beginning of each month, the Firm's assistants and controller first work to ensure that all time records (and disbursements data) for the prior month are entered into the billing program by attorneys and paralegals. I generally hand write my time slips on a legal pad at end of cay or on the next morning using my work records. That, or I email my type-written time slips and send to staff for entry. The controller then usually prepares either time record keeper summaries and/or then "pre-bills." Lawyer timekeepers review either pre-bills or printouts of their entries for their prior month and all entries are double-checked by them for accuracy. Then, the pre-bills are given to me for final review. I most often have already reviewed monthly printouts for corrections and write-offs. I perform write-offs of time for certain entries or speak to the timekeeper to determine entries that call into question the amount of time spent on a task. I am also responsible for reviewing all final invoices of the firm, even where another attorney is responsible and handling the matter. The bills are thus checked by each time record entering attorneys and usually paralegals for any errors, to ensure that they have complete and accurate information, and to try to correct typographical errors, and ensure that the amount of time entered is reasonable. The latter is

primarily my role. In this case, because it is a contingency fee retention, no bill is sent to the clients.

10.     I sometimes log the number of hours actually spent on the tasks on a given day at the end of the body of a description of the work. I then will enter an number of hours less than spent by a timekeeper to be charged on the bill. So, for example, I may have spent a 14-hour day at a trial which I will show in the description but charge the client 12 hours to reflect a courtesy discount or an effort to try to alleviate the amount charged. Other times I will have that 16-hour travel and deposition day and enter 13 to account for being less efficient in the later hours. I charge travel time on airliners at ½ as I am usually working for at least that portion of a flight. Car travel is usually billed at ½ or less.

11.     One of my roles as the shareholder in charge is to look at the reasonableness of the fees. I have been doing this for 30 years beginning with my clients in New York City. Here, I have reviewed the entries relative to the fees sought as allowed in the Sanctions Order again. I have also taken on that role for the three co-counsel firms in order to arrive at a fair and reasonable application – and to avoid duplicative work for counsel and the Court. Obviously, I was working closely with my co-counsel at the time the work was performed and have interviewed them about their billing practices and hours submitted. I have done this to gather the hours actually expended in order to winnow those down to hours reasonably expended.

12.     Additionally, disbursements that are incurred or advanced by the Firm on behalf of the client are paid by our bookkeeper upon request by the responsible attorney and then entered by the bookkeeper as advancement or pass through on that client's billing file. The costs incurred by the Firms for the Affiliation Agreement related discovery is set forth below.

E.     **THE FOUR FIRMS' RETENTION AND REPRESENTATION OF PLAINTIFFS AND ATTORNEYS ASSIGNED TO AFFILIATION AGREEMENT ISSUES AND IMPACT OF DISCOVERY VIOLATION**

13.     Per our retention for this litigation, I was one of four partners in charge at each of the four firms with Michael J. Reiser, Tyler Meade and Michael L. Schrag. At this Firm, I have assigned paralegals to perform paralegal functions such as document production, document management and review, deposition exhibit preparation, setting depositions and arranging vendors, providing travel logistics and preparation of this Fee Application. Actually, the paralegal is Lucie Riviére assigned for the Affiliation Agreement issues earlier this year and this Fee Application is an attorney educated in France with an LLM from the University of Southern California. A copy of her Curriculum Vitae is attached as **Exhibit "C"**. We have used experienced paralegals at hourly rates lower than or on par with what Greenberg Traurig charges for its paralegals in Denver, Colorado and New Jersey.

14.     Relative to this Fee Application, my Firm had assigned Ms. Rivière as the responsible paralegal for most relevant work. I had no associate[2] work on the Affiliation Agreement issues.

15.     Reiser Law has assigned several paralegals and associates to this action (Michael Reiser, Jr., Esq., Matthew Reiser, Esq. and Isabella Martinez, Esq. and paralegals Debbie Swinford and Bianca Torres). Mr. Reiser and Michael Reiser, Jr. were the most active in arranging, preparing for and conducting the investigation and depositions relative to Marriott's failure to produce the Affiliation Agreement.

16.     Ms. Swinford was the legal assisting them and they had assistance from Ms. Martinez. Plaintiffs are not seeking fees for those time keepers.

---

[2] Ms. Riviere is admitted to the California Bar having waived in. She is not yet admitted to the Colorado Bar. She is currently on contract to the firm and living in France.

10

17. Also, relevant here is that I worked extensively with Mr. Reiser on the Affiliation Agreement's late production issues and thereafter personally prepared for and conducted the second deposition of Vice President Stephanie Sobeck (5/15/2018) and assisted Mr. Reiser and co-conducted the deposition of Chief Operating Officer Lee Cunningham (5/18/2018). These are the most important Marriott witnesses in this action and their testimony important to most issues.

18. Mr. Meade of the Meade Firm was also heavily engaged with Mr. Reiser and me on overall case strategy, the discovery plan, impacts on upcoming motions, mediation and thus he was heavily involved in the depositions in Orlando or Ms. Sobeck and Mr. Cunningham.

19. Mr. Schrag and Linda Lam worked mainly on the Affiliation Sanctions Motion and not directly on the discovery issues and other fallout.

20. I also prepared for and conducted the deposition of Randall Mercer – the multi-term President of Aspen Highlands Condominium Association ("ACHA") who had worked so closely with Ms. Sobeck and Mr. Cunningham. The late production of the Affiliation Agreement had deprived Plaintiffs of key evidence for the depositions of ACHA Board members, including Mr. Mercer, Tyler Oliver, Jay Neveloff, Esq., Joel Schneider, as well as Michael Marino, Esq. who was the scrivener for a Memorandum of Understanding related to affiliation – but of little moment legally.

21. As I argued to the Court and presented in the Court Exhibit timeline on November 20, 2018, Marriott's failure to disclose and produce the Affiliation Agreement had a major and negative impact on Plaintiffs' case, including cascading effects on the pleadings, dispositive dispositive and discovery motion practice, case management, discovery, scheduling and depositions. We had to assess the damage done and various deleterious effects, including to

11

documents production, analysis of new privilege logs and related issues, the entire discovery process and all depositions.

22. It impacted preparation for the failed mediations with Marriott and the Aspen Highland Condominium Association and overall strategy. It resulted in the filing of the Affiliation Sanctions Motions, advice to clients, substantive motion practice with ACHA and a major delay in overall case prosecution. As the Affiliation Agreement was the missing operative document its impact on the case has been and still is very significant.

### F. ATTORNEY AND PARALEGAL HOURS SPENT ON AFFILIATION AGREEMENT ISSUES (NOT-SANCTIONS MOTION)

23. In compliance with the Sanctions Order and this Fee Application I have done several things:

   a. **MCF Law.** I generated and reviewed the Firm's Detail Fee Transaction List form our TABS legal billing software, (organized in chronological order), which shows the daily detailed hours logged, tasks descriptions, hours billed, and fees incurred by Plaintiffs. The relevant period of time was March 13, 2018 through December January 31, 2019. I then carefully reviewed each day's entries for task and hours and extracted only tasks related to the late production of the Affiliation Agreement and the assigned amount of time. Because this is not an end-of-case prevailing party fees motion/application, the Four Firms' time records contain confidential information and descriptions going to work product, strategy and advice. As a result, production of the entire Detail Fee Transaction List would reveal same and effectively work a waiver of the attorney-client privilege, the work product doctrine and the confidentiality of our case strategy and mental impressions. Mr. Riviere and I have thus extracted those time entries for the relevant tasks and the hours

billed for them. In addition to reviewing the data in our TABS billing program, I looked at most time entries and doubled checked it against my telephone call logs, emails, calendars, travel bills, and word processing files. I also reviewed these for reasonableness and necessity. Exhibit 11 to the Fee Application is a Spreadsheet containing the extraction of that billing data for MCF Law setting forth the tasks, time logged/spent and hourly rates – as those have been reviewed by me and winnowed to time reasonably expended.

b. **Reiser Law.** I instructed Michael Reiser, Jr. to essentially perform the same tasks as outlined above in Paragraph a. above. I also spent time interviewing both Reiser's, comparing our tasks and time entries to extract the time entries allowed and researching and recalling the work done in order to extract it and exclude work on the Affiliation Agreement Motion and APCO Documents Motion. I have confirmed that Mr. Reiser has reviewed the time records for the work his firm did relating to the Discovery Violation, including elimination errors, duplicate time and reduction of certain time records. I then also reviewed these for reasonableness and necessity and made reductions were appropriate. Exhibit 12 to the Fee Application is a Spreadsheet containing the extraction of that billing data for MCF Law setting forth the tasks, time logged/spent and hourly rates – as those have been reviewed by me and winnowed to time reasonably expended.

c. **Meade Firm.** I instructed Tyler Meade, Sam Ferguson and Sasha Bates (Legal Assistant) to essentially perform the same tasks as outlined above in Paragraphs a. and b. above. I also spent time interviewing both Mr. Meade comparing our tasks and time entries and researching and recalling the work done in order to extract it

and exclude work on the Affiliation Agreement Motion and APCO Documents Motion. I have confirmed that Mr. Meade has reviewed the time records for the work his firm did relating to the Discovery Violation, including elimination errors, duplicate time and reduction of certain time records. I then also reviewed these for reasonableness and necessity. Exhibit 14 to the Fee Application is a Spreadsheet containing the extraction of that billing data for MCF Law setting forth the tasks, time logged/spent and hourly rates – as those have been reviewed by me and winnowed to time reasonably expended.

d. **Gibbs Group.** I instructed Mr. Schrag and Ms. Lam to essentially perform the same tasks as outlined above in Paragraphs a., b. and c. above. I also spent time interviewing both comparing our tasks and time entries and researching and recalling the work done in order to extract it and exclude work on the Affiliation Agreement Motion and APCO Documents Motion. I have confirmed that Mr. Reiser has reviewed the time records for the work his firm did relating to the Discovery Violation, including elimination errors, duplicate time and reduction of certain time records. I then also reviewed these for reasonableness and necessity. Exhibit 13 to the Fee Application is a Spreadsheet

24. The fees (and costs) have been incurred related to, among other things: (a). Discovering that the Affiliation Agreement had not been produced, including searching all databases; (b). Contacting and communicating with Greenberg Traurig about the discovery violation; (c). Contacting and communicating with ACHA counsel Hogan Lovells LLP about searching their files; (d). Obtaining the Affiliation Agreement and analyzing same in the complex series of agreements that concern all affiliation of MVC and RCDC; (e). Investigating the factual

background, reviewing prior testimony of several witnesses, reviewing documents productions, interviewing gathering and assembling related documents; (f). Dealing with re-deposing Lee Cunningham and Stephanie Sobeck and negotiations concerning same; (g). Preparing for deposition, processing exhibits, meeting about, strategizing, analyzing the actual affiliation structure, conducting, and attending depositions for Mr. Cunningham, Mr. Mercer and Ms. Sobeck; (h). Determining other potential deponents and reading their depositions; (i). Reading the new depositions; (j). Status reports and status conferences to apprise the Court and to extend discovery for these purposes; (k). Discovery Dispute procedures with ACHA and Hogan Lovells to obtain the discovery denied Plaintiffs by the late production of the Affiliation Agreement, including significant disputes about re-deposing ACHA board members who had approved the affiliation acknowledgement and joinder with MVC; (l). Propounding and ten reviewing written discovery to ACHA regarding the Affiliation Agreement; (m). Preparing for and conducting deposition of Mr. Mercer; (n). Negotiations in person, by phone and email with Hogan Lovells concerning these ACHA Affiliation Agreement issues, renewed depositions of directors of the ACHA Board which signed the acknowledgement and joinder, potential motion practice and dealing with new facts and documents in context of mediation with ACHA; (o). Attending to case management issues; (p). Preparing for and attending an unsuccessful mediation with the Marriott Defendants where the Affiliation Agreement was the subject of the new depositions only weeks before; (q). Responding to ACHA's summary judgment motion in an entirely new context with the Affiliation Agreement disclosed; (r). Preparing an amended complaint and motion to amend, with attendant legal research, strategy meetings, drafting, revising and filing; and (s). Preparing this Fee Application.

### G. REASONABLE HOURLY RATES – PREVAILING RATES

25. In my opinion, based on the size, stakes and complexity of the issues in the mass action breach of fiduciary duty and fraud case, a conservative opinion of prevailing rates in the complex commercial litigation and trial community in the United States District Court for Colorado, the seriousness of the controversy giving rise to the Sanctions Order, the impacts on the claims and defenses in the case, the impacts on the discovery in the case, the amount of issues and time involved in dealing with them, dealing with Marriott's discovery failings and being forced to redo certain critical discovery the following hourly rates are prevailing for this type of litigation.

| Lawyer/Paralegal | Experience (Years) | 2017-8 Rates – Range | *Conservative* Prevailing Market Rate sought for this motion only |
|---|---|---|---|
| Matthew Ferguson | 35 | $495-$595 (Aspen, Colo and New York) | $650 |
| Lucie Riviere/Paralegal with French and U.S. Law Degrees/LLM | 5 | $155-225 (Aspen, Colo). | $175 |
| Michael Reiser | 33 | $740[3]-$850(California) | $650 |
| Michael Reiser, Jr. | 1 | $225[4] (California) | $225 |
| Tyler Meade | 26 | $725[5]-$850(California) | $650 |
| Michael Schrag | 23 | $720[6]-$800(California) | $650 |
| Linda Lam | 5 | $395.00[7] (California) | $385 |

---

[3] Rate approved in *Beaver v. Tarsadia Hotels*, No. 11-CV-01842-GPC-KSC, Order at p. 13. (D. California. Sep. 28, 2017) (a complex commercial class action involving hospitality industry). A copy of U.S. Distinct Court Judge Gonzalo P. Curiel September 28, 2017. Order is annexed as Exhibit 16 to the Fee Application.
[4] Same.
[5] Same.
[6] Same.
[7] Same.

26. Based on my experience, investigation, study of data and court decisions on fees, and other legal research, these rates are conservative and lower than hourly rates charged by other Denver-based lawyers and certainly lower than the rates charged by Philip Sellinger and Ian Marx of Greenberg Traurig. The San Francisco Bay Area partners charge and have been awarded rates for their services on similar cases to be in the $720-$850.00 range. All counsel reserve the right to seek their full hourly rate in this case and others and believe that avoiding litigation over hourly rates in an interlocutory fees motion is a good trade off at this point in order to press the case to conclusion.

27. The hourly rates are thus well within "the prevailing market rates in the relevant community." This is also based on handling cases with co-counsel, knowledge of fee applications and past study of bar data and online materials tracking rates charged in Colorado. Similar rates have not been disputed in other cases, and indeed have been accepted by court in other fee applications filed for our prevailing clients.

28. I have read Judge Brimmer's order in *Biax Corp. v. NVIDIA Corp.*, No. 09-CV-01257-PAB-MEH, 2013 WL 4051908, at *6 (D. Colo. Aug. 12, 2013). The plaintiffs supported their requested rates with a 2010 National Law Journal ("NLJ") billing survey – which 9 years ago reported that Denver firms billed between $285 and $810 per hour for partners and between $170 and $530 per hour for associates. Judge Brimmer approved hourly rates of $742 per hour for an 18-year partner and $740 for a 35-year partner and rates of $450-$510 for 5 to 11-year associates at two firms.

29. I have reviewed a 2015 NLJ survey of hourly rates for 2015 organized by state. The partner high/low/median hourly rate is $893/350/443 for firms in all of Colorado; for associate's $642/150/325 in all of Colorado. Annexed to the Fee Application as Exhibit 10 is the 2015 survey table from NLJ.

30. That the stakes are high is consistent with Greenberg Traurig's statement about its litigation department: *When the stakes are high, Greenberg Traurig is the firm you need. Greenberg Traurig's Litigation Practice has handled some of the most complex litigation in challenging jurisdictions around the world. Whether your organization is facing a single complex dispute or a portfolio of disputes, GT has vast resources across a wide range of practices and industries available to serve you.* A 2015 Above the Law article pegged the lowest partner rate for Greenberg Traurig New York at $535. https://abovethelaw.com/2015/01/the-biglaw-firms-with-the-highest-partner-billing-rates-2015/2/ Clearly, the prevailing rates being sought by Plaintiffs are commensurate with or less than the opposition's counsel.

31. All fees submitted here were necessarily incurred for the litigation related to the Discovery Violation and Marriott's failure to produce the Affiliation Agreement and excludes many $10,000's in fees and costs to prosecute the two Sanctions Motion which the Court has not yet allowed Plaintiffs to pursue.

32. The fees are in my opinion reasonable and necessary. Plaintiffs' reserve the right to designate an expert witness if made necessary. The problem is that an expert will costs well over $10,000.00 and the testimony of the Plaintiffs' attorneys should be sufficient as well as that to be elicited at any fees hearing, that Plaintiffs also desire to avoid.

33. As in all matters, I was always cognizant of COLO. R.P.C. 1.5. In trying to keep legal costs down while advocating properly, I delegated work assignments to associates and paralegals where possible and practical.

### H. COSTS

34. I refer to and incorporate sections III(e)(i) and III(e)(ii) of the Fee Application and the exhibits thereto in support of the costs to be awarded. These fall in to deposition transcription

18

costs, travel and copying. The most significant expenses were the costs of transcribing and videotaping the first and second sets of depositions of Mr. Mercer, Mr. Cunningham and Ms. Sobeck. Those invoices are attached as <u>Exhibits 4 to 9</u> to the Fee Application,

35. I have received and reviewed the expenses reports of the three firms who had to travel hereto. I attest that the amounts were reasonable and necessary and the figures accurate. These and underlying credit card statements could be made available if requested, but each firm follows the same general protocol which is to advance these expenses and then enter them into their billing systems as expenses. They can then be generated for those particular costs. As the travel expenses are relatively minor compared to fees and the deposition costs and the time to muster them and redact these bills would be counterproductive and add more expense. Again, if they are requested, they will be made available.

36. The travel and copy costs are set forth in this chart:

| Travel, supplies, miscellaneous. | |
|---|---|
| MCF Printing, Exhibits and copying costs (3 depos) (est.) | $150.00 |
| Deposition Supplies in Orlando | $315.62 ÷ 2 = $157.81 |
| MCF Law Travel expenses Orlando (Hotel, Taxi, Meals, Uber, Taxi, Tips.) 5/15-5/18/2018 | $2,597.84 ÷ 2 = $1,298.92 |
| MCF Law Airplane tickets Aspen-Orlando | $935.45 ÷ 2 = $467.72 |
| Reiser Law Airplane tickets SFO-Orlando | $1766.00 ÷ 2 = $883.00 |
| Reiser Law Travel expenses Orlando (Hotel, Taxi, Meals, Uber) 5/15-5/18/2018 | $3980.62 ÷ 2 = $1990.31 |
| Reiser Law Copying, Supplies Miscellaneous – Walgreens and Copy Center | $250.00 |
| Meade Firm Travel expenses Orlando (Hotel, Taxi, Meals...) 5/15-5/18/2018 | $2,539.15 ÷ 4 = $634.79 |
| Meade Firm Airplane tickets SFO-Orlando | $507.40 ÷ 4 = $126.85 |
| **Total Costs, Supplies, Misc.** | **$5959.40** |

37.     Defendants' total attorneys' fees and cost sought here through December 31, 2018, in litigating issues concerning the Affiliation Agreement – excluding the sanctions motion – is **$ 177,626.50**.

38. The total fees and costs are summarized here:

| TYPE | FEES AMOUNT | COSTS AMOUNT | |
|---|---|---|---|
| Attorneys' Fees – Discovery Violation | $142,743 | | |
| Attorneys' Fees – Fee Application | $34,882.50 | | |
| Costs–Second Depositions | | $ 19,610.38 | |
| Costs–First Depositions (1/2) | | $13,524.98 | |
| TOTAL | $177,626.50 | $33,134.98 | $210,761.48 |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 14, 2019, in Aspen, Colorado.

                                                            */s/ Matthew C. Ferguson*
                                                            Matthew C. Ferguson

4849-9481-5877, v. 1