# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

Civil Action No. 1:16-cv-01301-PAB-GPG

**RCHFU, LLC,** *et al.*

Plaintiffs,

v.

**MARRIOTT VACATIONS WORLDWIDE CORPORATION,** *et al.*

Defendants.

---

## DECLARATION OF TYLER MEADE  IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

---

I, **Tyler Meade**, declare and state:

1.       I am a member in good standing of the California and New York bars, the principal attorney The Meade Firm p.c.  ("Firm"), and co-counsel for 200 plus plaintiffs or sets of plaintiffs who own approximately 233 Fractional interests ("Plaintiffs") in this action.  I am also admitted to practice in the District of Colorado.

2.       I submit this affidavit in support of Plaintiffs' Motion for Attorneys' Fees and Costs in Connection with Sanctions Order ("Fee Application") as directed in Judge Gordon P. Gallagher's "Order Regarding Plaintiffs' Motions for Default Judgment" ("Sanctions Order") (Dkt. No. 330),  and pursuant to Fed.R.Civ.P. 54(d), and D.Colo.L.Civ.R 54.3.

### A. QUALIFICATIONS

3.       I have practiced law for more than 23 years and tried more than a dozen cases to verdict. I began practicing in January 1993 as a Deputy Attorney General in the Criminal Division

EXHIBIT

3

of the California Attorney General's Office in San Francisco. My experience there was evenly divided between appellate and trial work. For approximately two years, I focused on the investigation and prosecution of securities fraud and other financial crimes. In 1998, I left to join Bartko Zankel Tarrant & Miller, a commercial litigation firm in San Francisco, where I defended companies in unfair competition and class action litigation, including *In re Honda Dealer Relations Litigation* (MDL No. 1069), which resulted in what was then the largest civil RICO settlement. Beginning in 2001, after leaving the Bartko firm, I focused on plaintiff's work and served on the Plaintiff's Executive Committee in *In re Hip Replacement Cases* (JCCP 4165). After practicing on my own for a few years, I formed Meade & Schrag LLP with Mr. Schrag.

4.      Meade & Schrag specialized in class actions and complex business litigation. Mr. Schrag and I worked on the following cases, among others:

a.      *Ammari Electronics, et al. v. Pacific Bell Directory* (Alameda County Case No. RG05198014). Meade & Schrag served as Co-Lead Counsel in this class action on behalf of 375,000 California businesses that advertised in the SBC Yellow Pages directories between 2001-2004 and were owed a refund because of incomplete distribution of the directories. The case went to trial in May 2009 and Meade & Schrag served as co- trial counsel. The jury returned a verdict for the class of over $17 million. The National Law Journal recognized this verdict as one of the top 100 verdicts of 2009. In 2011, the Court of Appeal reversed a grant of directed verdict in the defendant's favor and  reinstated the jury verdict for the Plaintiff Class. After a second appeal, in 2014, the Court of Appeal affirmed the class certification ruling and all aspects of the jury verdict. A final judgment of over $27 million (including pre and post-judgment interest) was entered, paid and has been distributed to class members.

      b.    *The Regents of the University of California, et al. v. Ameriprise Financial Services, Inc., et al.* (San Francisco Superior Case No. PTR-11-294230). Meade & Schrag represented the U.C. Regents, Blind Babies Foundation and a Class of 75 charities and nonprofit organizations that were beneficiaries of a multimillion dollar living trust created in 2003 by an elderly San Francisco resident named Philip M. Eisenberg. Upon his death, a new living trust surfaced that purportedly left Mr. Eisenberg's entire estate to his financial adviser's former registered domestic partner, a man Mr. Eisenberg had only met twice and barely knew. On September 7, 2012, the San Francisco Superior Court granted final approval to a settlement that provided the Class $3 million immediately and additional monetary benefits in the future.

      c.    *ConnectU, Inc., et al. v. Facebook, Inc., et al.* (D. Mass. Case No. 1:07-CV-10593-DPW). Meade & Schrag represented Cameron Winklevoss, Tyler Winklevoss and Divya Narendra (the founders of ConnectU, Inc.) in post-judgment proceedings in their dispute with Mark Zuckerberg and Facebook.

      d.    *Roth v. Aon Corp.* (N.D. Ill. Lead Case No. 04-C-6835). Meade & Schrag assisted Lead Counsel in discovery in this nationwide securities fraud action. The case settled for $30 million.

      e.    *Peter Rundberg, et al. v. Intrawest Napa Development Company, LLC, et al.* (Napa County Superior Court Case No. 26-56986). Meade & Schrag prosecuted a class action on behalf of individuals who contracted to purchase condominium-hotel units at the Westin Verasa Napa Resort in Napa, California and forfeited their deposits because Defendants wrongfully concealed their rescission rights under the Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701 et seq. ("ILSA"). The court granted final approval of a $1.4 million settlement in January 2014.

f.      *International Brotherhood of Electrical Workers Local 234, et al. v. The Ryan Company Inc.* (Monterey County Case No. M87384). This wage and hour class action involved public works projects located throughout California. The defendant electrical contractor misclassified workers in violation of California's prevailing wage statute, failed to pay workers for all hours worked, and denied overtime pay and rest breaks. Meade & Schrag joined the litigation in late 2009 to help prepare the case for trial and serve as class trial counsel. The case settled in 2011 for $2 million.

g.      *In re Late Fee and Over-Limit Fee Litigation* (N.D. Cal. Case No. C- 07-0634-SBA). In this nationwide antitrust and National Bank Act class action on behalf of credit cardholders who paid exorbitant late fees and over-limit fees, the district court appointed Meade & Schrag as Chair of the Executive Committee. The complaint alleged a novel theory that the penalty fees violated the National Bank Act as constrained by the principles of substantive due process that limit punitive damages. Though the district court dismissed the complaint and the Ninth Circuit affirmed the dismissal on the basis of existing Supreme Court precedent, two of the three judges on the panel signed a concurring opinion indicating their belief that principles of fairness and equity were on plaintiffs' side and that the Supreme Court should consider the issue. In re Late Fee and Over-Limit Fee Litigation, 741 F.3d 1022 (9th Cir. 2014).

h.      *Obscura Digital, Inc. v. Doe, Inc.* Meade & Schrag represented San Francisco based technology and media company, Obscura Digital, in a multimillion-dollar breach of contract action against a large multinational corporation. The lawsuit involved novel and complex issues of jurisdiction and service of foreign entities. The firm obtained a favorable result for Obscura in a confidential settlement.

i.      *Chang v. ConnectU.*  In late 2004 and early 2005, Cameron and Tyler Winklevoss briefly collaborated with a Boston area entrepreneur named Wayne Chang. They parted ways after just a few months and had almost no contact for the next four years. In late 2009, after the Winklevosses settled their much-publicized dispute with Mark Zuckerberg and Facebook, Chang filed a complaint in Massachusetts state court alleging that the Winklevosses orally agreed to form a partnership with him, that the lawsuit against Zuckerberg and Facebook was an asset of the supposed partnership, and that he was entitled to half of the proceeds. In late 2014, Meade & Schrag obtained a complete dismissal of all claims against the Winklevosses on a motion for summary judgment.

5.      I founded The Meade Firm p.c. in 2015, with offices in California and New York, where I was admitted to the Bar after more than 20 years of practice in California. In addition to prosecuting complex cases, including this class action, on a contingent basis, we perform a wide variety of hourly work on both the plaintiff and defense side. One example is *Helo, et al. v. Hoggan, et al.* (C.D. Cal. Case No. 14-cv-06648-DSF-AS), in which I represent plaintiffs defrauded in connection with a multimillion-dollar wind farm development. The Meade Firm also does substantial hourly work for Cameron and Tyler Winklevoss and companies they control, including Gemini Trust Company, LLC and the Winklevoss brother's family investment office, Winklevoss Capital Management, LLC. My standard billing rate in these engagements is $850 (although I agreed to cap my hourly rate at $700 in the Helo case) and billings at that rate constitute a substantial part of my annual revenue.

6.      The following is a partial list of some of the complex cases I am presently prosecuting at the Meade Firm:

a.      *Petrick, et al. v. Marriott Vacations Worldwide Corporation, et al.* (San Francisco Superior Court Case No. CGC-15-545987), which I filed with Mr. Reiser. We represent the owners of approximately 70 deeded fractional-interest units at the San Francisco Ritz Carlton Residence Club in a common law and UCL based rescission action. The case is in the process of settling.

b.      *Reiser, et al. v. Marriott Vacations Worldwide Corporation, et al.* (E.D. Cal. Case No. 16-CV-00237-MCE-CKD), which I also filed with Mr. Reiser. We represented the owners of over 20 deeded fractional-interest units at the Lake Tahoe Ritz Carlton Residence Club in a case that is similar to *Petrick*. This case recently settled.

c.      *Gillespie, et al. v. St. Regis Residence Club New York, Inc., et al.* (S.D.N.Y. Case No. 16-cv-09390-GHW), which I filed with Mr. Reiser, Mr. Schrag, and the attorney in Aspen. We represent the owners of 107 deeded fractional-interest units at the St. Regis Residence Club in a breach of implied covenant of good faith and fair dealing, rescission and unjust enrichment action.

d.      *Asokan et al. v American General Life Insurance Co., et al.* (M.D. Fla. Case No. 15-cv-2048-PGB-KRS), in which Mr. Reiser, Mr. Schrag and I, along with a Florida firm, represented six life insurance holders in a fraud case against American General Life Insurance Company, which helped market and sell life insurance policies through an illegal tax-shelter that was later shut down after a lawsuit filed by the U.S. Department of Justice. The case settled in late 2017.

e.      *Smith et al. v. American General Life Insurance Co., et al.* (C.D. Cal. Case No. 5:16-cv-01893-JLS (JPRx), a similar case to *Asokan* that also includes civil RICO claims brought by nine life insurance policy holders. The case settled in 2018.

### B.      PURPOSES OF THIS AFFIDAVIT

8.     The purposes of this Affidavit are to set forth my relevant testimony in support of Plaintiffs' Fee Application about (1) this Firms' billings related to the Discovery Violation on the Affiliation Agreement as found in the Sanctions Order, (2) the work I performed on the Marriott' Defendants' Discovery Violation and failure to produce the November 14, 2013, Affiliation Agreement, (3) the collection, extraction, review and winnowing of hours actually spent to those reasonably spent,  and (4)  the costs my firm incurred in connection with the late production of the Affiliation Agreement and specifically re-deposing two critical high level MVW executives.

### C. BILLING FOR DISCOVERY VIOLATION

9.     Mr. Ferguson sets forth the non-confidential facts of the Four Firm's retention by Plaintiffs in this action.

10.     My staff and I took relevant time records form our billing software LeanLaw for the work that I performed on the issues related to the Marriott Defendants' failure to produce the Affiliation Agreement, not including the time spent on the Affiliation Agreement Sanctions Motion.

11.     As Mr. Ferguson states in his affidavit, this is not an end-of-case fees and costs application and hence redactions have been made for unrelated work on a given day on which I did work on relevant tasks. This time entry information for unrelated matters is attorney work product and the attorney client privilege also appies.  Although, Messrs. Ferguson and Reiser  were the ones primarily involved, I also worked in analyzing the impacts of the Discovery Violation  on the pleadings and substantive issues. Because I was working on the mediation brief and the importance of these new depositions I also returned to Orlando, Florida to assist in the conduct the depositions of MVW executives Stephanie Sobeck and Lee Cunningham. During the week I assisted with the depositions of CEO Stephen Weisz and Director Lani Kane Hannan. Ms. Sobeck

and Mr. Cunningham each had three attorneys defending or present for their depositions. As I was there for several reasons, including also negotiation of the mediation terms, I have reduced my hours on these matters substantially.

12.     I then carefully reviewed both my time records for the discovery work we did related to the Discovery Violation; first to determine if it is related to the violation, and, second, to eliminate errors or duplicate time entries. During this review, I next exercised my billing discretion to eliminate and/or reduce certain time entries to arrive at hours reasonably expended.

13.     I also spoke with Mr. Ferguson who has also reviewed my firm's time spent. I spoke to him to assist in his final effort to "winnow" hours actually spent to hours reasonably spent. After this process was done, the task descriptions and time spent were placed in a spreadsheet and then made into an exhibit to the Fee Application. See Ex. 13 to Fee Application.

### D. HOURLY RATES

14.     As set forth in the Fee Application, my hourly rates in the past 2-3 years have risen from $700 to a current hourly rate of $850 per hour in these complex class, mass and multi-plaintiff actions. During this period, I have regularly charged my standard hourly rate in cases where I bill by the hour, and that rate is regularly paid by my hourly clients. Germane here is that U.S. Distinct Court Judge Gonzalo P. Curiel entered an order on September 28, 2017 approving my rate of $725 — in *Beaver v. Tarsadia Hotels*, No. 11-CV-01842- GPC-KSC Order at p. 32. (D. California. Sep. 28, 2017) (a complex commercial class action involving hospitality industry). A copy of Judge Curiel's Order is annexed to the Fee Application as Ex. 15.

15.     In conjunction with Mr. Ferguson and his research on complex litigation hourly rates in Denver, Colorado, and to expedite this Fee Application by avoiding expensive litigation

on rate issues, we are seeking a reduced hourly rate for purposes of this motion of $650 for me. The reasons for this prevailing rate request are set forth in Section III.(h) of the Fee Application.

### E. COSTS

16.     The Meade Firm incurred $3046.55 in the litigation travel expenses listed below, which are related to a second trip to Orlando, Florida. These included airfare to Florida, meals and lodging. Because we agreed to a single trip to conduct 2 other depositions that had been postponed also due to late productions, and my role as a second chair, Plaintiffs are seeking only ¼ one half of these expenses. Copies of credit card statements and/or bills are available upon request, but I attest that these expenses were incurred for the depositions of Mr. Cunningham and Ms. Sobeck in Orlando, Florida.  We were there from May 13 – May 18, 2018.

| Meade Firm Travel expenses Orlando (Hotel, Taxi, Meals...) 5/15-5/18/2018 | $2,539.15 ÷ 4 = $634.79 |
| --- | --- |
| Meade Firm Airplane tickets SFO-Orlando | $507.40 ÷ 4 = $126.85 |
| Total | **$761.64** |

### F. FEES SUMMARY

17.     In total, I reasonably (and <u>very</u> conservatively) spent 12.85 hours working on fixing the consequences of Defendants' Discovery Violation from March 13, 2018 to December 31, 2018. I spent many more hours over the last several months working on the cascading impacts of the Marriott Defendants'

18.     I met with my co-counsel extensively in Orlando and helped them prepare for and conduct the two depositions that Plaintiffs were forced to retake on May 15 and May 18, 2018 (Stephanie Sobeck and Lee Cunningham). I was present with us to assist in the depositions being taken that week. I was working on a detailed mediation brief and needed to understand and then

turn around the new testimony.  I worked well over 50 hours in Orlando but am seeking these several hours on the Discovery Violation.

19.     In my opinion, based on prevailing rates in the relevant legal communities and the serious consequences of the Marriott Defendants' failure to produce the Affiliation Agreement and time involved dealing with it, my firm's attorneys' fees, as have analyzed and adjusted them with Mr. Ferguson, and related solely to the Discovery Violation are reasonable and necessary as set forth in the Fee Application.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 14, 2019, in San Francisco, California.


                                        */s/Tyler Meade*
                                        Tyler Meade