IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 16-01301 PAB

RCHFU, LLC, et al.

    Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al.

    Defendants.

---

**MARRIOTT DEFENDANTS' OPPOSITION TO MOTION TO AMEND
SCHEDULING ORDER AND COMPLAINT**

Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC, The Cobalt Travel Company, LLC, and The Lion & Crown Travel Co., LLC (collectively, "Marriott Defendants") hereby oppose Plaintiffs' Motion to Amend Scheduling Order and Complaint (ECF#337) to the extent they seek to add allegations that are beyond the scope of the Court's December 31, 2018 Order Regarding Plaintiffs' Motions for Default Judgment ("December 31 Order" or "Order") (ECF#330).

**INTRODUCTION**

The December 31 Order allowed Plaintiffs to move for leave to amend their pleading with respect to a single subject: the 2013 Affiliation Agreement.[1]  Plaintiffs have ignored this

---

[1] The full title of the 2013 Affiliation Agreement is "Affiliation Agreement providing Members enrolled with The Lion & Crown Travel Co., LLC access to Marriott Vacation Club Destinations Exchange Program and Marriott Resorts, Travel Company, Inc. d/b/a/ MVC Exchange Company Members access to Accommodations Received from Participating L&C Members and Lion & Crown."

limitation, however, and are using the Order as an opportunity to add new allegations concerning a topic that was neither part of their sanctions motion nor contemplated in the Order.[2]  Plaintiffs are seeking to add these unauthorized allegations in a belated and improper attempt to broaden their claims in the hope of salvaging the flawed damages theory offered in the expert reports they submitted late last year.  The gravamen of this case has always been Plaintiffs' claim that their fractional interests declined in value as a result of the MVC Affiliation (i.e., the affiliation between Marriott Vacation Club Destinations ("MVCD") and The Ritz-Carlton Club, Aspen Highlands, Colorado ("RC Club Aspen")), which became operational in December 2014.  Yet the expert reports that Plaintiffs submitted on October 26, 2018 advanced an entirely new theory of damages having nothing to do with the MVC Affiliation.  Citing a program under which developer-owned inventory was used to enable MVC members to access weeks at The Ritz-Carlton Destination Clubs, including RC Club Aspen, long before the MVC Affiliation,[3] Plaintiffs' experts calculated diminution in value damages starting from mid-2011.  In contrast to the relatively modest damages figure that could arguably be calculated (assuming liability is proven) based on claims that have actually been pleaded (i.e., claims based only on the MVC Affiliation, which became operational in December 2014), calculating damages using a mid-2011 start date yields a figure that is significantly inflated.[4]

---

[2] Plaintiffs have engaged in similar overreaching in their Motions for Additional Remedies (ECF#338) and for Attorneys' Fees and Costs (ECF#339), which the Marriott Defendants are also opposing.

[3] Plaintiffs do not, and cannot, allege that this program was unlawful, improper or prohibited by any contract or governing document.

[4] Using an August 1, 2011 start date, Plaintiffs' expert, R. Maurice Robinson, has calculated $41.6 million in damages (ECF#325-38), and, using that same start date, Plaintiffs expert Jon Robert Simon has calculated an additional $96.1 million in alleged "unjust enrichment." ECF#325-1.

2

Plaintiffs' experts' damages calculations are plainly indefensible under the existing Affiliation claims in the case. Indeed, the Marriott Defendants' experts have submitted rebuttal reports that point out (among other things) the fallacy of using a mid-2011 start date to calculate damages supposedly caused by an event that occurred several years thereafter. It was only when they received these rebuttal reports that Plaintiffs focused on the full extent of their dilemma -- which is, for all practical purposes, case-ending, as the currently-pleaded, MVC Affiliation-based case yields little damages (assuming liability is proven). In an attempt to find a way to "cure" their problem, Plaintiffs now seek to add non-MVC Affiliation-related allegations to their pleading that they hope will provide some support for a mid-2011 damages start date.

Even if Plaintiffs' ultra vires allegations accomplished this purpose (which they do not[5]), they have nothing to do with the 2013 Affiliation Agreement, which is the subject of the December 31 Order, and should be rejected on that basis alone. The allegations should also be precluded if they are considered the subject of a free-standing motion for leave to amend. In that event, Plaintiffs would have to meet both the stringent Rule 16(b) standard for modifying a scheduling order and the Rule 15 standard for amending pleadings, and they can meet neither. The documents upon which the ultra vires allegations are allegedly based have been in Plaintiffs' possession for many months. Had Plaintiffs really believed these specific documents were important to the allegations they are now proposing, they could have moved to amend based on them before the July 16, 2018 fact discovery cut-off and before October 28, 2018, when expert reports were exchanged.

---

[5] The documents that Plaintiffs cite in support of the unauthorized allegations (the CGC, SC and GGC documents, defined below) do not support a mid-2011 damages calculation date. At most, they merely show -- unremarkably -- that the Marriott Defendants considered the MVC Affiliation carefully before it became operational in December 2014.

3

Plaintiffs' stratagem -- waiting to see the Marriott Defendants' rebuttal expert reports and then changing the basis of their claims in response -- is a classic example of "sandbagging" and should not be permitted. Even if the proposed allegations were not outside the scope of the December 31 Order, and even if Plaintiffs had not been inexcusably dilatory in moving to amend to add them, Plaintiffs' motion should still be denied on prejudice grounds. The Marriott Defendants have expended substantial resources in formulating their defense based on the theory of damages that has been pleaded from the beginning of this case. This effort has culminated in the expert reports that rebut Plaintiffs' experts' damages calculations. Had Plaintiffs alleged a different damages theory from the outset, the Marriott Defendants could have addressed it, and their experts could have responded accordingly. Plaintiffs should not be allowed to change the whole nature of the litigation at this late date.

Finally, Plaintiffs improperly propose to insert, throughout a Seventh Amended Complaint, the word "merger" to describe the MVC Affiliation. Apart from being inaccurate as a matter of law and highly prejudicial to the Marriott Defendants, the word "merger" adds a new allegation to Plaintiffs' claims that has nothing to do with the 2013 Affiliation Agreement and is, thus, beyond the scope of the December 31 Order. Accordingly, Plaintiffs' motion for leave to amend should also be denied to the extent it seeks to add the word "merger" to describe the MVC Affiliation.[6]

---

[6] In addition to moving for leave to amend the Scheduling Order and to assert a Seventh Amendment Complaint, Plaintiffs also argue for a modification of the Scheduling Order that would allow for the reopening of fact and expert discovery to allow the parties to negotiate over the production of additional documents relating to certain documents produced by the Marriott Defendants on December 28, 2018, to take additional depositions of fact and expert witnesses, and to allow for the updating of expert reports. ECF#337 at 8-9, 14. This issue need not be addressed on this motion, as Plaintiffs themselves elsewhere acknowledge. *See id.* at 7 ("This

# STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A. Plaintiffs' claims

Plaintiffs are owners of 1/12 fractional interests in luxury condominium units at RC Club Aspen. The claims in this case arise out of the MVC Affiliation, under which RC Club Aspen members can voluntarily exchange their use-weeks at RC Club Aspen for points with the MVCD Exchange Program and MVCD Exchange Program members can reciprocally access any RC Club Aspen use-weeks that RC Club Aspen members elected to deposit into the MVCD Exchange Program. Plaintiffs allege that they were damaged both by the alleged failure to allow RC Club Aspen members to vote on whether the MVC Affiliation should take place, and by the MVC Affiliation itself, which Plaintiffs claim decreased the value of their fractional interests.

### B. The delayed production of the 2013 Affiliation Agreement

The Marriott Defendants made an initial document production on November 10, 2016 that was intended to include all documents that had been compiled on several topics, including the 2013 Affiliation Agreement. *See* ECF#273-1. In reviewing the produced documents, however, although Plaintiffs' counsel noticed references to the 2013 Affiliation Agreement in certain documents (e.g., an April 24, 2014 Acknowledgement and Joinder to the 2013 Affiliation Agreement), they did not find the agreement itself in the production. *See* ECF#223 at 8-9. The

---

dispute need not be resolved now, and perhaps not ever…."). Indeed, as shown by the correspondence between counsel that Plaintiffs have submitted with their moving papers (*see* letters dated January 8 and 11, 2019 (ECF#337-6 & 337-7)), the parties are currently discussing the Scheduling Order modifications that may be necessary due to the December 28, 2018 document production, e.g., changes to accommodate some limited additional discovery and depositions and to extend expert report and motion deadlines. We assume that the parties will be able to come to an agreement on this issue that will be memorialized and submitted to the Court as a proposed Scheduling Order modification by stipulation, as has been done throughout this case.

Marriott Defendants' counsel looked into the issue and determined that the agreement had, unintentionally and inadvertently, not been included in the production. *See* ECF#273-1. The 2013 Affiliation Agreement was produced to Plaintiffs on March 13, 2018. *Id.*

### C. The December 31 Order permitted Plaintiffs to seek leave to amend with respect to the 2013 Affiliation Agreement

On April 27, 2018, Plaintiffs moved for various discovery sanctions, including a default judgment against certain of the Marriott Defendants, arising from the belated production of the 2013 Affiliation Agreement. ECF#223. Following extensive briefing and oral argument, the Court issued the December 31 Order. In that Order, the Court rejected Plaintiffs' demand for a default judgment, finding that the Marriott Defendants' failure to have produced the 2013 Affiliation Agreement was simply a "mistake" made with "no ill will, conscious effort to deceive, or dishonest purpose." ECF#330 at 20. With respect to the 2013 Affiliation Agreement, the Court noted that the Marriott Defendants had

> … tried to make right their mistake by allowing additional depositions and taking other steps to fix the problem their non-provision caused. However, in the Court's view, additional steps need to be taken to remedy the failure <u>concerning the Affiliation Agreement</u> as set forth *infra*.

*Id.* at 28 (emphasis added). Thus, the Court permitted Plaintiffs to

> … [r]equest any other remedies … meant to correct the <u>prejudice suffered by non-provision of the Affiliation Agreement</u>, e.g., <u>amendment of claims</u>…. So, if Plaintiffs wish to attempt to amend, now is the time.

*Id.* at 30 (emphasis added).

### D. Plaintiffs propose allegations that are outside the scope of the December 31 Order

Although the December 31 Order made clear that any remedies, including "amendment of claims," were "meant to correct the prejudice suffered by non-provision of the [2013]

6

Affiliation Agreement," Plaintiffs are seeking to add allegations that have nothing to do with that agreement or the late production thereof. Principally (although not exclusively), these new, unauthorized allegations are proposed as Paragraphs 9-10 and 55-58 of a Seventh Amended Complaint. *See* ECF#337-3 at pp. 11-12, 73-74 (redlined version).[7] Briefly summarized, Plaintiffs' proposed ultra vires allegations concern the Marriott Defendants' supposed "decision to 're-engineer' [The Ritz-Carlton Destination Club ("RCDC")] and merge it with [MVC] … [which began] with marketing access to the RCDC to select MVC members in mid-2011…." *Id.* at ¶ 55 (proposed);[8] *see also id.* at ¶ 56 (proposed) (alleging that "[t]he misconduct [began] in mid 2011 …, when the Marriott Defendants began to execute a 'Product Re-Engineering' plan for the RCDC [that] began with a committee called the Growth and Governance Council ('GGC'), which undertook a detailed analysis [of the plan]…."); *id.* at ¶ 9 (proposed) (alleging that "[b]y mid-2011 at the latest, [the GGC] had decided to 'wind down' the RCDC and began plotting how to do so in the most profitable way … without regard to the predictable harm to Plaintiffs and other RCDC owners"); *id.* at ¶ 10 (proposed) (alleging that "[b]eginning in 2011 and continuing through 2014," the Marriott Defendants "[pursu[ed] … this re-engineering…").

---

[7] Plaintiffs also improperly propose to insert, several times throughout a new pleading, the word "merger" (or some variation thereof) to describe the MVC Affiliation. *See id.* at ¶¶ 9, 55, 57, 58, 92 (proposed); *see also* ARGUMENT, Sect. III, *infra*.

[8] The importance that Plaintiffs now purport to ascribe to this mid-2011 "access … to select MVC members" is puzzling, as they have previously dismissed that program (the MVC Explorer Collection program) as irrelevant to the claims asserted in this case. For example, in their reply brief in further support of their motion for sanctions with respect to the 2013 Affiliation Agreement, Plaintiffs stated: "Marriott claims that MVC members already had access to RCDC locations through the MVC Explorer Collection program. But that program only gave MVC access to *developer-owned* inventory in RCDC locations, and the program was, by its nature, temporary -- since the developer would eventually sell its remaining inventory." ECF#278 at p. 6, n.4 (italics in original).

### E. Plaintiffs' unauthorized allegations are based on documents that were not part of their sanctions motion, that have been in their possession since March – June 2018, and that Plaintiffs never brought to the Court's attention in regularly-filed Status Reports, and the subject of those documents has been known to them for years

Plaintiffs state that their motion to amend "is based [on] the Marriott Defendants' late production of (a) the 2013 Affiliation Agreement, and (b) <u>internal memoranda showing the Marriott Defendants' actions dating back to mid-2011</u> regarding <u>their decision to abandon and 're-engineer' the [RCDC] product line by merging the RCDC with the [MVC]</u>."  ECF#337 at 2 (emphasis added).  The "internal memoranda" to which Plaintiffs refer consist of "documents from Marriott's Corporate Growth Committee, its Strategic Council, and its Growth and Governance Council."  *Id.* at 6.  Plaintiffs acknowledge that the time of "production of these [internal memoranda (collectively, the "CGC, SC and GGC documents")] was <u>not a subject of the Plaintiffs' Sanctions Motion</u>."  *Id.* at 6, n.3 (emphasis added).

Plaintiffs further acknowledge that the CGC, SC and GGC documents were produced to them from March to June 2018.  *Id.* at 7.  In other words, the documents that Plaintiffs claim support the unauthorized new allegations have been in their possession for a very long time – several months before the July 16, 2018 end of fact discovery and many more months before expert reports were exchanged.  Following the production of these documents, Plaintiffs had ample opportunity to analyze them and determine their significance, if any, before fact discovery closed.

Prior to receiving the Marriott Defendants' expert reports, Plaintiffs obviously did not believe that the CGC, SC and GGC documents contained any information that would require them to amend their pleading.  Had they believed the documents contained such information,

8

they certainly would have advised the Court of that in one of the numerous Status Reports that they regularly filed to alert the Court of issues that they believed should be addressed. *See* Status Reports submitted on July 10, 2018 (ECF#285), August 28, 2018 (ECF#300), and September 20, 2018 (ECF#306). Significantly, the Court held an in-person status conference on July 11, 2018, at Plaintiffs' request, to discuss and address all outstanding case management issues. At the very outset of that conference, Plaintiffs' counsel Matthew Ferguson explained that he had requested the conference because the fact discovery end date of July 16, 2018 was approaching, and he believed it would be appropriate to apprise the Court of all outstanding issues and disputes so that a plan for addressing and resolving them could be discussed and implemented. The alleged "late production" in March-June 2018 of the CGC, SC and GGC documents was not addressed in Plaintiffs' pre-conference submission (ECF#285), and at no time during the lengthy conference did Plaintiffs mention the documents or any alleged need or desire to amend their Complaint.[9]

**ARGUMENT**

**I.     LEAVE TO AMEND SHOULD BE DENIED TO THE EXTENT PLAINTIFFS PROPOSE TO ADD ALLEGATIONS THAT ARE OUTSIDE THE SCOPE OF WHAT WAS AUTHORIZED IN THE DECEMBER 31 ORDER**

---

[9] Moreover, Plaintiffs have been in possession of other documents discussing the subjects addressed in the CGC, SC and GGC documents (what Plaintiffs call the "re-engineering" of the RCDC product line," *see supra*) for years prior to March-June 2018. ECF#337 at 7. For example, on June 29, 2017, the Marriott Defendants produced a September 12, 2012 document (entitled "Marriott International Update") containing a slide entitled "Ritz-Carlton Destination Club (RCDC) – Unwind/Product Re-engineering" (attached to Declaration of Ian S. Marx, dated February 4, 2019 ("Marx Decl.") as Exhibit A) and a June 2013 email chain regarding the "Luxury Segment Reengineering" portion of a Strategic Council Package. *See id.* Ex. B. Plaintiffs also were in possession (since October and December 2016, respectively) of an "Aspen Member Update" from "late 2012" and an August 2012 email from "[MVC] Insider" to MVC owners concerning MVC members' access to developer inventory at RC Club Aspen. *See id.* Exs. D & E.

9

Where a plaintiff has been granted (or authorized to seek) leave to amend its pleading with respect to a specific subject or claim, the amendment cannot exceed the scope of the leave that was granted. *See, e.g., Peper v. Dep't of Agric. of U.S.,* 2010 WL 6389305, at *4 (D. Colo. Dec. 8, 2010) (finding plaintiff's assertion of a quiet title claim was "outside the scope of his leave to amend," which had only permitted him to add a single claim under the Administrative Procedure Act), *report and recommendation adopted in part, rejected in part on other grounds,* 2011 WL 1211329 (D. Colo. Mar. 31 2011) *aff'd sub nom.,* 478 F. App'x 515 (10th Cir. 2012); *Campbell v. United States,* 375 F. App'x 254, 260 (3d Cir. 2010) (affirming district court's rejection of *pro se* plaintiffs' complaint, which had asserted "counts [that] raised claims beyond the scope of the grant of leave to amend"); *Peterson v. Air Line Pilots Ass'n, Int'l,* 759 F. 2d 1161, 1163 (4th Cir. 1985) (noting that plaintiff's amended pleading "was stricken" because it "went beyond the scope of the district court's order," which granted plaintiff only limited leave to amend); *Inland Cities Express, Inc. v. Diamond Nat'l Corp.,* 524 F. 2d 753, 755 (9th Cir. 1975) (disallowing an amendment that went beyond the scope of leave to amend); *Pearce v. Oral & Maxillofacial Assocs., LLC,* 2010 WL 5253595, at *2 (W.D. Okla. Dec. 16, 2010) (striking plaintiff's claims because they were "outside the scope of the court's authorization"); *Aldridge v. Aleritas Capital Corp.,* 2009 WL 10689361, at *4 (D. Kan. Oct. 1, 2009) (denying motion for leave to amend as to proposed claims that were "outside the scope of this court's order permitting plaintiffs to seek leave to amend"); *cf.* 3 Moore's Federal Practice – Civil § 15.14 (2018) ("The majority of circuits hold that it is not an abuse of discretion for the court to fail to grant leave to amend when leave was not sought.").

The December 31 Order allowed Plaintiffs to request "remedies … meant to correct the prejudice suffered by non-provision of <u>the [2013] Affiliation Agreement</u>, e.g., <u>amendment of claims</u>…." ECF#330 at 30 (emphasis added); *see also* SOF Sect. C, *supra*.  Despite the Order's clear language stating that any remedies, including amendment of claims, had to relate to the 2013 Affiliation Agreement, Plaintiffs are proposing to add allegations having nothing to do with that agreement or the late production thereof.  *See* SOF Sect. D, *supra* (describing proposed allegations concerning the Marriott Defendants' supposed "decision to 're-engineer' [RCDC] and merge it with [MVC] … [which began] with marketing access to the RCDC to select MVC members in mid-2011….") (quoting ECF#337-3 ¶ 55 (proposed)).

The Court need go no further to decide this issue.  The ultra vires allegations that Plaintiffs propose should be precluded on the ground that they are beyond the scope of what was authorized in the December 31 Order.

II.     **PLAINTIFFS CANNOT SHOW GOOD CAUSE FOR AMENDING THE SCHEDULING ORDER TO PERMIT THEM TO ASSERT ALLEGATIONS UNRELATED TO THE 2013 AFFILIATION AGREEMENT**

Given that (a) the Scheduling Order's October 26, 2016 deadline for amendment of pleadings is long past (ECF#60), and (b) the Court did not authorize Plaintiffs to amend to add allegations unrelated to the 2013 Affiliation Agreement, to the extent Plaintiffs seek to add such allegations, they must meet the Rule 16(b) standard for amending scheduling orders.  As this Court has explained:

> Rule 16(b) applies when the deadline for amendment of pleadings as set in the scheduling order has passed….  After a scheduling order deadline, a party seeking leave to amend must demonstrate (1) <u>good cause</u> for seeking modification under Fed. R. Civ. P. 16(b)(4) <u>and</u> (2) <u>satisfaction of the Rule 15(b) standard</u>.

11

*Estate of Roemer v. Shoaga,* 2017 WL 1190558, at *3 (D. Colo. Mar. 31, 2017) (Brimmer, J.) (internal citations and quotation marks omitted) (emphasis added). Plaintiffs cannot meet the Rule 16(b) standard.

### A. Plaintiffs Fail to Show Good Cause for Amending the Scheduling Order

It is well established in the Tenth Circuit that, "[b]ecause Rule 16 requires diligence, [plaintiffs] cannot establish good cause if [they] knew of the underlying conduct but simply failed to raise [their] claims." *Husky Ventures, Inc v. B55 Investments, Ltd.,* 911 F. 3d 1000, 1019-20 (10th Cir. 2018) (internal citations and quotation marks omitted); *see also Sunflower Condo. Ass'n, Inc. v. Owners Ins. Co.,* 2017 WL 6276460, at *2 (D. Colo. Dec. 11, 2017) ("Rule 16(b) … focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment."), *report and recommendation adopted,* 2018 WL 1755784 (D. Colo. Apr. 12, 2018); *Estate of Roemer,* 2017 WL 1190558, at *3 (Brimmer, J.) ("Good cause does not exist where the plaintiff knew of the underlying conduct but failed to raise corresponding claims."); *see also Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1248 (10th Cir. 2015) ("Even assuming they did not obtain the information they needed to seek amendment until [after the deadline to amend had passed], Appellants had not offered an adequate [] explanation for waiting four months to file their motion") (internal quotation marks omitted); *David A. Bovino P.C. v. MacMillan,* 2014 WL 656842, at *4 (D. Colo. Feb. 20, 2014) (Brimmer, J., adopting Magistrate Judge's opinion) (finding no good cause for modifying the scheduling order under Rule 16(b) where plaintiffs had not provided "an adequate explanation for the delay nor asserted a persuasive reason" why the amendment could not have been sought sooner).

Plaintiffs have no adequate explanation for why they waited so long to move for leave to amend the Scheduling Order. They freely acknowledge that the CGC, SC and GGC documents on which their unauthorized proposed allegations are purportedly based were produced to them during the March – June 2018 timeframe. *See* SOF Sect. E, *supra*. And Plaintiffs have had documents produced to them referring to these issues as early as June 2017. *See id.* at n.9, *supra*. Plaintiffs offer no persuasive reason why they are only now moving for leave to amend the Scheduling Order based on these documents. Accordingly, Plaintiffs have failed to show the good cause for amending the Scheduling Order that is required under Rule 16(b).

### B. Plaintiffs Cannot Satisfy the Rule 15(b) Standard for Amending the Pleading

Plaintiffs' failure to show good cause under Rule 16 is, in itself, enough to defeat Plaintiffs' motion with respect to the unauthorized allegations. *See Birch,* 812 F. 3d at 1248-49 (if plaintiffs cannot satisfy good cause under Rule 16, "there is no need to consider" the Rule 15 standard). Plaintiffs also, however, fail to satisfy Rule 15(b).

Although, as a general principle, leave to amend a pleading is freely given "when justice so requires" (*see* Fed. R. Civ. P. 15(a)(2)), denying leave to amend is "justified upon a showing of undue delay or undue prejudice to the opposing party." *Frank v. U.S. West, Inc.,* 3 F. 3d 1357, 1365 (10th Cir. 1993) (emphasis added).[10] In addition, "[c]ourts will properly deny a motion to amend when it appears that the plaintiff is using Rule 15 … to 'salvage a lost case by untimely suggestion of new theories of recovery'…." *Minter v. Prime Equip. Co.,* 451 F. 3d 1196, 1206

---

[10] Other circumstances justifying the denial of a motion for leave to amend are "bad faith or dilatory motive," "futility of amendment" and "failure to cure deficiencies by amendments previously allowed." *Id.*

(10th Cir. 2006) (quoting *Hayes v. Whitman,* 264 F. 3d 1017, 1027 (10th Cir. 2001)).  All these circumstances are present here.

### 1. **Plaintiffs unduly delayed moving for leave to amend**

Undue delay in moving for leave to amend is one of the most important reasons for denying such motions; indeed, it can be the sole reason.  *See Hayes,* 264 F. 3d at 1026 ("'[W]e have often found untimeliness alone a sufficient reason to deny leave to amend.'") (quoting *Viernow v. Euripides Dev. Corp.,* 157 F. 3d 785, 799 (10th Cir. 1998)).  Elaborating on that point, this Court has held that "leave to amend may be denied 'where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend.'"  *Gordanier v. Montezuma Water Co.,* 2010 WL 935665, at *2 (D. Colo. Mar. 11, 2010) (Brimmer, J.) (quoting *Fed. Ins. Co. v. Gates Learjet Corp.,* 823 F. 2d 383, 387 (10th Cir. 1987)); *see also Husky Ventures,* 911 F. 3d at 1020 (finding the fact that plaintiffs "knew of the allegedly 'new' information months before the motion to amend" justified denial of the motion) (emphasis added); *Bovino,* 2014 WL 656842, at *5 (Brimmer, J.) (approving Magistrate Judge's finding "that denial of the proposed amendments based upon undue delay is appropriate here").

Delay becomes an especially important consideration where discovery has already closed and expert reports have been produced.  *See, e.g., Ervin v. Health Servs. Adm's Keller,* 2015 WL 847475, at *5 (D. Colo. Feb. 25, 2015) (Brimmer, J.) (finding that plaintiff had "not provided an adequate explanation for his delay that would justify the filing of an amended complaint months after the … close of discovery"); *Gordanier,* 2010 WL 935665, at *2 (Brimmer, J.) (agreeing with Magistrate Judge's recommendation to deny motion to amend where plaintiff had "unduly

14

delayed the proffer of … claims until after the close of discovery"); *cf. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Intrawest ULC,* 2015 WL 13614117, at *3 (D. Colo. Oct. 7, 2015) (denying motion for leave to amend that was filed "nearly twenty-three months after the deadline for amending pleadings and near the end of discovery").[11]

As explained in detail above, Plaintiffs unduly delayed moving for leave to amend the Scheduling Order and their pleading with respect to the unauthorized allegations and failed to raise or preserve the issue at an in-person status conference that was held on July 11, 2018 for the purpose of identifying case management issues, such as the potential amendment to pleadings, that needed to be addressed prior to the close of discovery. *See* SOF, Sect. E and ARGUMENT, Point II(A), *supra* (explaining that Plaintiffs have, for years, been in possession of the documents on which their contested allegations are purportedly based); *see also Gordanier,* 2010 WL 935665, at *2 (leave to amend is properly denied where moving party "was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend") (Brimmer, J.). Accordingly, Plaintiffs' motion for leave to amend their pleading to add the ultra vires allegations should be denied because they waited too long to file it.

### 2. Permitting Plaintiffs to amend their pleading to add the unauthorized allegations would unduly prejudice the Marriott Defendants

While "untimeliness alone may be a sufficient basis for denial of leave to amend" (*Woolsey v. Marion Labs., Inc.,* 934 F. 2d 1452, 1462 (10th Cir. 1991)), prejudice to the opposing party, where shown, can be "the single most important factor in deciding whether to

---

[11] As noted, the deadline for amending pleadings in this case was October 26, 2016 (ECF#60), and, except for issues specifically identified by the parties in Status Reports and in amendments to the Scheduling Order, fact discovery closed on July 16, 2018.

allow leave to amend." *JHL Indus. Servs., LLC v. Mass Serv. & Supply, LLC*, 2015 WL 6859716, at *2 (D. Colo. Nov. 9, 2015) (citing *Minter,* 451 F. 3d at 1207). Prejudice is typically found "when the amendment <u>unfairly affects the defendants 'in terms of preparing their defense to the amendment.</u>'" *Minter*, 451 F.3d at 1208 (quoting *Patton v. Guyer,* 443 F. 2d 79, 86 (10th Cir. 1971)) (emphasis added).

Permitting Plaintiffs to amend to assert the unauthorized allegations would most certainly unfairly affect the Marriott Defendants in terms of preparing their defense to the amendment. As noted, the Marriott Defendants have expended substantial resources in formulating their defense based on the theory of damages that has been pleaded from the beginning of this case. Marx Decl. ¶ 11. This effort has culminated in the Marriott Defendants' expert reports, which rebut Plaintiffs' experts' damages theories and calculations based on Plaintiffs' existing claims and allegations. *Id.* Plaintiffs should not be allowed to alter the theory of the case that they have pleaded from the outset, particularly at this late stage, after remaining silent at the July 11, 2018 conference with respect to any alleged need or desire to amend the complaint and after the Marriott Defendants spent millions of dollars defending the merits and on expert reports that rebut Plaintiffs' damages based on their existing claims. *Id.*; *see also Minter,* 451 F. 3d at 1206 (motions to amend are properly denied "when it appears that the plaintiff is using Rule 15 … to <u>salvage a lost case by untimely suggestion of new theories of recovery</u>") (citation and internal quotation marks omitted) (emphasis added). All of this would cause the Marriott Defendants substantial prejudice. Accordingly, Plaintiffs' motion for leave to amend their pleadings should be denied.

### III. PLAINTIFFS SHOULD NOT BE PERMITTED TO AMEND TO ADD THE WORD "MERGER" TO DESCRIBE THE MVC AFFILIATION

In addition to the unauthorized allegations described above, Plaintiffs also propose to expand their claims by adding the word "merger" (or a variation thereof) to describe the MVC Affiliation. *See* ECF#337-3 (proposed) ¶¶ 9, 55, 57 ("merge"); ¶ 58 ("merger"); ¶ 92 ("merged"). Apart from being highly prejudicial to the Marriott Defendants[12] as well as inaccurate,[13] the word "merger" has nothing to do with the 2013 Affiliation Agreement, which is the only topic on which the December 31 Order permitted Plaintiffs to seek leave to amend. The Court should, therefore, order that any Seventh Amended Complaint that Plaintiffs may be permitted to file shall not contain the word "merger" or any variation thereof. *See* Point I, *supra*

---

[12] The word "merger" is a loaded term because it incorrectly implies that MVCD members are on an equal footing with Plaintiffs and their fellow RC Club Aspen members, both in terms of their respective property rights and their right to access RC Club Aspen, which is clearly not the case. As owners of fractional interests at RC Club Aspen, it is within RC Club Aspen members' power to decide whether MVCD members can reserve stays at RC Club Aspen through the MVC Affiliation. If RC Club Aspen members do not elect to deposit their weeks into the MVCD Exchange Program through the MVC Affiliation, then no time at RC Club Aspen is available for MVCD members to reserve through the MVC Affiliation. In addition, RC Club Aspen members enjoy benefits (the ability to reserve per diem time and the like) that are not available to MVCD members.

[13] The MVC Affiliation does not meet the legal definition of "merger." In the context of business organizations, a "merger" is defined as "'an amalgamation of two corporations pursuant to statutory provision in which one of the corporations survives and the other disappears'" or "'[t]he absorption of one company by another, the former losing its legal identity, and [the] latter retaining its own name and identity and acquiring assets, liabilities, franchises, and powers of former, and [the] absorbed company ceasing to exist as a separate business entity.'" *State of Colo. ex rel. Colo. State Banking Bd. v. RTC*, 926 F. 2d 931, 938 (10th Cir. 1991) (quoting Black's Law Dictionary (6th ed. 1990) at 988). That is not what took place here. RCDC and/or RC Club Aspen and MVCD did not acquire one another's stock, assets, liabilities, or powers, nor is RCDC and RC Club Aspen (along with its sister reports) now merely a "part" or "division" of the allegedly less-exclusive MVCD Exchange Program, as the term "merger" suggests. Each of these programs still exists independently, and the Tenth Circuit has made clear that the term "merger" is only to be used if its legal definition is met. *See Blackwell Indus. Found., Inc. v. Texstar Corp.*, 387 F.2d 708, 708 (10th Cir. 1968) ("There is really no such thing as an 'informal' merger . . . because a merger or consolidation, if their established definitions are used, can be accomplished only by formal proceedings.").

(collecting cases holding that, where plaintiff has been granted (or authorized to seek) leave to amend its pleading with respect to a specific subject or claim, the amendment cannot exceed the scope of the leave that was granted).

## CONCLUSION

For all the foregoing reasons, the Marriott Defendants respectfully request that the Court enter an order denying Plaintiffs' motion to amend the Scheduling Order to assert a Seventh Amended Complaint to the extent they seek to add allegations not directly pertaining to the 2013 Affiliation Agreement.

Dated: February 4, 2019   Respectfully submitted,

By:  *s/ Ian S. Marx*
Naomi G. Beer
Philip R. Sellinger
Ian S. Marx
GREENBERG TRAURIG, LLP
1200 Seventeenth Street, Suite 2400
Denver, Colorado 80202
Tel:  303.572.6500
Fax:  303.572.6540
Email:  BeerN@gtlaw.com
   SellingerP@gtlaw.com
   MarxI@gtlaw.com

*Attorneys for Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC, The Cobalt Travel Company, LLC, and The Lion & Crown Travel Co., LLC*

## CERTIFICATE OF SERVICE

I hereby certify that, on February 4, 2019, a true and accurate copy of the foregoing **MARRIOTT DEFENDANTS' OPPOSITION TO MOTION TO AMEND SCHEDULING ORDER AND AMEND COMPLAINT** was filed and served with the Clerk of the Court via CM/ECF filing system, which will send notification to the following:

| | |
|---|---|
| Michael J. Reiser<br>Law Office of Michael J. Reiser<br>1475 N Broadway, Suite 300<br>Walnut Creek, CA 94596<br>*Counsel for Plaintiffs* | Linda Pham Lam<br>Michael Schrag<br>Gibbs Law Group LLP<br>505 14th Street, Suite 1100<br>Oakland, CA 94612<br>*Counsel for Plaintiffs* |
| Matthew C. Ferguson<br>The Matthew C. Ferguson Law Firm, P.C.<br>119 South Spring, Suite 201<br>Aspen, Colorado 81611<br>*Counsel for Plaintiffs* | |
| Tyler R. Meade<br>The Meade Firm P.C.<br>1816 Fifth Street<br>Berkeley, CA 94710<br>*Counsel for Plaintiffs* | |

*s/ Julie Eaton*
Julie Eaton

*(Original on file at offices of Greenberg Traurig, LLP, pursuant to C.R.C.P. 121, § 1-26)*

19