**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-01301-PAG-GPG

RCHFU, LLC, et al

      Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al,

      Defendants.

---

**MARRIOTT DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND COSTS**

---

Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC, The Cobalt Travel Company, LLC, and The Lion & Crown Travel Co., LLC ("L&C") (collectively, the "Marriott Defendants") respectfully submit this Opposition to Plaintiffs' Motion for Attorneys' Fees and Costs (ECF#339).[1]

## PRELIMINARY STATEMENT

In its Order Regarding Plaintiffs' Motions for Default Judgment, entered on December 31, 2018 (the "December 31 Order"), the Court directed Plaintiffs to provide a "bill of fees and costs … setting forth <u>specific</u> costs and fees related <u>only</u> to the Rule 26 violation, <u>in this action</u>, for <u>the non-provision of the [2013] Affiliation Agreement</u>." (ECF#330 at 29) (emphasis added). Ignoring the December 31 Order's clear limitations, Plaintiffs are seeking an award of

---

[1] Plaintiffs failed to confer with the Marriott Defendants before filing this motion, as required under Local Civil Rule 7. Had they done so, the parties might have been able to resolve at least some of the issues in dispute without the Court's involvement.

$210,761.48, which, as shown below, is excessive, inadequately supported, and beyond the scope of the December 31 Order.[2]

Much of the amount Plaintiffs are seeking consists of attorneys' fees allegedly incurred in re-deposing three witnesses: Stephanie Sobeck Butera, Lee Cunningham and Randal Mercer. Each of these re-depositions was attended by four Plaintiffs' attorneys (three of whom were senior lawyers with $650/hour billing rates), and, although the re-depositions were relatively short (only about 10.5 hours in total), Plaintiffs claim that their attorneys spent hundreds of hours preparing for and taking them. Plaintiffs also seek to recover substantial sums for tasks (described vaguely as "work on discovery," "conference calls on strategy" and the like) having nothing to do with the only subject authorized for recompense under the December 31 Order: the delayed production of the 2013 Affiliation Agreement. Moreover, although the December 31 Order plainly states that Plaintiffs may only seek to recover fees and costs incurred "in this action" relating to "the non-provision of the [2013] Affiliation Agreement," Plaintiffs are demanding to be recompensed for costs associated with the <u>first</u> depositions of Sobeck, Cunningham and Mercer, as well as for costs for which counsel have already been paid in connection with <u>other cases</u>. Finally, although the December 31 Order expressly states that Plaintiffs may only recover the "specific costs/expenses/fees [they] had to expend to otherwise fix the problem(s), e.g., extra deposition(s), travel, etc." and that they cannot recover fees for litigating these issues (ECF#330 at 29-30), Plaintiffs are seeking to recover attorneys' fees associated with preparing this motion -- and grossly inflated attorneys' fees at that.

---

[2] Plaintiffs have engaged in similar overreaching in their Motions to Amend Scheduling Order and Complaint (ECF#337) and for Additional Remedies (ECF#338), which the Marriott Defendants are also opposing.

Plaintiffs' motion is improper and should be denied. To the extent an award can be made based on the information Plaintiffs have provided, however, it should be no more than $19,957.24, which, as shown by the calculations set forth below, would reimburse Plaintiffs for reasonable attorneys' fees and costs incurred in connection with the delayed production of the 2013 Affiliation Agreement in this case.

## STATEMENT OF FACTS

### A.  __The December 31 Order__

In the Court's December 31 Order, the Court granted Plaintiffs' sanctions motions in part and denied them in part.  With respect to the 2013 Affiliation Agreement, the Court held that, although the belated production was not substantially justified, it was an unintentional "mistake" and did not show willful misconduct or bad faith on the part of the Marriott Defendants or their counsel.  (ECF#330 at 18-19).

While crediting the Marriott Defendants for trying "to make right their mistake by allowing additional depositions and taking other steps to fix the problem their non-provision caused" (*id*. at 28), the Court held that some additional steps were warranted.  *Id.* at 19, 28.  As a remedy, the Court ordered that Plaintiffs could recover reasonable attorneys' fees and costs specifically associated with the delayed production of the 2013 Affiliation Agreement in this case in order to "fix the problem(s)" that the delayed production had caused (which the Court expressly stated ***could not include*** fees and costs associated with the litigation of the sanctions motions).  Thus, the Order directed Plaintiffs to:

> Provide a detailed bill of fees and costs, complying with all rules and statutes, including local rules, setting forth specific costs and fees related only to the Rule 26 violation, in this action, for the non-provision of the Affiliation Agreement. The Court is not

> Ordering the payment of fees and costs that it took to litigate this extensive default judgment controversy over the past six (6) months. What the Court is referring to is specific costs/expenses/fees Plaintiffs had to expend to otherwise fix the problem(s), e.g., extra deposition(s), travel, etc.;

*Id*. at 29-30.

### B. Plaintiffs Seek 175.35 Hours' Time for Re-Depositions That Took 10.56 Hours

The most significant component of Plaintiffs' fee application ($88,502.50 of the $142,743 in total fees sought, not including fees improperly sought for preparing this Motion) is associated with preparing for and taking the re-depositions of Sobeck, Cunningham and Mercer. Sobeck was re-deposed in Orlando on Tuesday, May 15, 2018, and Cunningham was re-deposed in Orlando on Friday, May 18, 2018. Declaration of Ian S. Marx, dated February 4, 2019 ("Marx Decl.") ¶ 20. To maximize efficiencies and minimize costs, these re-depositions were purposely scheduled to book-end the regularly scheduled depositions of two other, senior executives of the Marriott Defendants (Lani Kane-Hanan's deposition on Wednesday, May 16 and Stephen Weisz's deposition on Thursday, May 17). *Id*. Thus, the re-depositions required no extra travel time or expense for Plaintiffs' counsel. The Sobeck re-deposition (which lasted 5.48 hours) was primarily taken by Plaintiffs' counsel Matthew Ferguson, although Plaintiffs' counsel Michael Reiser also asked questions. *Id*. Ex. G. Although the Sobeck re-deposition was supposed to relate solely to issues arising from the late production of the 2013 Affiliation Agreement, the examination included many other topics (at least two hours were spent on these other topics). *See*, *e.g.*, *id.* (at pp. 139-179 and 191-270). The Cunningham re-deposition (which lasted 3.72 hours) was primarily taken by Mr. Reiser, although Mr. Ferguson also asked questions. Marx

Decl. Ex. H.  Plaintiffs' counsel Tyler Meade and Michael Reiser, Jr. were also present at both depositions, although neither asked questions at either deposition.  Marx Decl. Exs. G-H.

Mercer's re-deposition, which was taken by Mr. Ferguson and lasted 1.36 hours, was held on September 13, 2018 in Aspen, Colorado.  Marx Decl. Ex. J.  Since that is where Mr. Ferguson lives and works, no additional travel time or expense was required.

Although, as noted, actual deposition time was only 10.56 hours in total, Plaintiffs seek $88,502.50 in connection with preparing for and taking these re-depositions, which, as shown in the chart below, reflects 175.35 hours spent by three senior partners (Messrs. Ferguson, Reiser and Meade, at their requested rate of $650/hour), a junior lawyer (Mr. Reiser, Jr.) and a paralegal/lawyer (Ms. Riviere).  (The travel costs for which Plaintiffs seek reimbursement are discussed separately, *see infra*.)

| *Timekeeper* | *Rate* | *Hours* | *Total* |
|---|---|---|---|
| Matthew C. Ferguson, Esq. | $650 | 56.6[3] | $36,790 |
| Michael J. Reiser, Esq. | $650 | 50.5[4] | $32,825 |
| Tyler Meade, Esq. | $650 | 11.25[5] | $7,312.50 |
| Michael Reiser, Jr., Esq. | $225 | 32[6] | $7,200 |
| Lucie Riviere | $175 | 25[7] | $4,375 |

In addition, although the December 31 Order limits Plaintiffs' recovery to reasonable fees and costs incurred as a result of the late production of the 2013 Affiliation Agreement in "this

---

[3] This is comprised of time entries on the following dates: May 9, 14, 15 (including, apparently, travel to Orlando), 16, 17, 18 (including, apparently, time spent travelling to Colorado from Orlando), August 10 and 16 and September 8, 11, 12 and 13.  *See*  Ferguson Decl., Ex. 11.

[4] This is comprised of time entries on the following dates: May 13 (including, apparently, travel to Orlando), 14, 15, 16, 17 and 18.  *See* Ferguson Decl., Ex. 12.

[5] This is comprised of time entries on the following dates: May 14, 15 and 18.  *See* Ferguson Decl., Ex. 14.

[6] This is comprised of time entries on the following dates:  May 13 (including, apparently, travel to Orlando), 14, 15, 16, 17 and 18.  *See* Ferguson Decl., Ex. 12.

[7] This is comprised of time entries on the following dates: May 10, 13 (including, apparently, travel to Orlando) and 14.  *See* Ferguson Decl., Ex. 11.

action," at the time of the Sobeck and Cunningham re-depositions in May 2018, Messrs. Reiser and Meade were also representing Plaintiffs in two related California cases (*Petrick* and *Reiser*), which have since been settled.  *See* Marx Decl. Exs G and H (in which Messrs. Reiser and Meade in introducing themselves on the record at the outset of the depositions made clear they were present at the depositions on behalf of plaintiffs in all three cases).  The settlements in those other two cases (the specific terms of which are confidential) included a very substantial payment to Messrs Reiser and Meade for their work in connection with these depositions.  *See* Marx Decl. ¶ 26.  Thus, Messrs. Reiser and Meade have already been paid two-thirds of their time for the Sobeck and Cunningham re-depositions.

### C.  Time Not Attributable to Late Production of the 2013 Agreement

Plaintiffs also seek to recover $34,979.50 in fees for a significant number of tasks that, based on their description, are not at all tied to late production of the 2013 Affiliation Agreement.  The chart below shows the time attributable to these entries for each timekeeper:

| Timekeeper | Rate | Excess Hours | Total |
|---|---|---|---|
| Matthew C. Ferguson, Esq. | $650 | 31.5 | $20,475 |
| Michael J. Reieser, Esq. | $650 | 14.5 | $9,425 |
| Tyler Meade, Esq. | $650 | 1.6 | $1,040 |
| Lucie Riviere | $175 | 13.0 | $2,275 |
| Michael Schrag, Esq. | $650 | 2.3 | $1,495 |
| Linda Lam, Esq. | $385 | .7 | $ 269.5 |

Below are the specific entries, broken down by timekeeper:[8]

### Matthew Ferguson, Esq.[9]

---

[8] Several of the entries discussed in this section refer generally to "Orlando depositions" or "depositions," which apparently relate to the regularly scheduled depositions of Stephen Weisz and Lani Kane-Hanan, i.e., they do not relate to the delayed production of the 2013 Affiliation Agreement.  Even if these vague, non-specific entries do, in fact, relate to the Sobeck, Cunningham and Mercer re-depositions, then the time should simply be added to the category discussed immediately above, rendering those fees for only 10.5 hours of deposition even more unreasonable.

| Date | Time Spent | Task Description |
|------|-----------|------------------|
| 3/26/18 | .5 | Work on privilege log; work on discovery |
| 3/29/18 | .3 | Conference calls on strategy |
| 3/28/18 | .3 | Calls to M. Reiser |
| 3/30/18 | 1.0 | Prepare for Orlando deposition |
| 3/31/18 | .7 | Calls to Reiser; prepare for depositions; emails to GT by M. Reiser; attend team meeting on case |
| 4/2/18 | .5 | Work on case law with M. Reiser |
| 4/14/18 | 1.2 | Work on preparing for final depositions; teleconference with M. Reiser; teleconference with M. Schrag; work on discovery dispute chart |
| 4/15/18 | .4 | Work on deposition scheduling and preparation; emails with I. Marx; calls to M Reiser |
| 4/17/18 | .7 | Calls and emails with I. Marx re: depositions; teleconference with M. Reiser; emails to team |
| 4/18/18 | .5 | Team calls; emails with I. Marx; work on deposition scheduling; work with Lucie Riviere |
| 4/25/18 | .5 | Teleconference with M. Reiser and M. Schrag re: case |
| 5/1/18 | 1.0 | Team call on various issues; prepare depositions and review documents; work on discovery |
| 5/2/18 | 1.5 | Work on MVW depositions; work on exhibits with L. Riviere. |
| 5/10/18 | 2.0 | Teleconference with GT lawyers; work on discovery, prepare for depositions |
| 5/11/18 | 3.5 | Research logs; calls to M. Reiser; prepare for Orlando depositions |
| 5/12/18 | 5.8 | Prepare for depositions in Orlando; prepare exhibits; calls and emails with team |
| 5/13/18 | 9.0 | Prepare for depositions; travel to Orlando; prep for depositions; meetings M. Reiser and M. Reiser Jr. |
| 8/18/18 | .3 | Work on depositions, discover issues and exhibits |
| 8/30/18 | .5 | Work on HOA discovery issues |
| 8/31/18 | .7 | Emails re: HOA issues |

### Lucie Riviere[10]

| Date | Time Spent | Task Description |
|------|-----------|------------------|
| 5/2/18 | 2.1 | Saved additional documents for Defendants deposition in Dropbox. Printed and stapled for counsel review. Converted to PDF, printed and stapled documents |
| 5/8/18 | .5 | Converted, drafted and saved Notice of deposition of several defendants |
| 5/11/18 | 3.2 | Helped counsel prepare for Defendant depositions in Florida (continued): found marked exhibits in the drive, ordered exhibits/ordered them in a binder, created a Ritz SF binder, a Marriott privilege logs binder and an important docs binder. Searched in Drive additional exhibits for counsel. Saved them, uploaded them in the Drive, Printed another Defendant's transcript deposition, added it to the Binder |
| 5/14/18 | 2.0 | Uploaded and saved in the Drive and Google drive Deposition transcripts and exhibits for two Defendants. Researched for April 2014 Board letter for counsel's deposition in Florida, sent it to him. Created a new folder on the Google Drive, uploaded exhibits in order for counsel to review. |

### Michael J. Reiser, Esq.[11]

| Date | Time Spent | Task Description |
|------|-----------|------------------|
| 5/11/18 | 2.5 | Prepare for Depos in Orlando/calls with M. Ferguson re: same as above |
| 5/12/18 | 4 | Prepare for Depos in Orlando/Conference Calls with legal team re: same |
| 5/18/18 | 8 | Return travel from Orlando |

---

[9] *See* Ferguson Decl., Ex. 11.

[10] *See id.*

[11] *See* Ferguson Decl. Ex. 12.

**Tyler Meade, Esq.**[12]

| Date | Time Spent | Task Description |
|------|------------|-----------------|
| 3/24/18 | .6 | Conference calls on case with entire team about withheld documents |
| 5/16/18 | 1.0 | Meeting with co-counsel re: depositions of MVW executives |

**Michael Schrag, Esq.**[13]

| Date | Time Spent | Task Description |
|------|------------|-----------------|
| 3/14/18 | 1 | Conf. Call Team re [pivoting fiduciary duty theory and motion to compel], and new discovery abuses |
| 3/25/18 | 1.3 | Review prior motions to dismiss and analyze issue of Association not Cobalt having authority to affiliate; draft email to Team re same |

**Linda Lam, Esq.**[14]

| Date | Time Spent | Task Description |
|------|------------|-----------------|
| 3/14/18 | .5 | Conference call with team re: overall case strategy and staffing, new hot documents and evidence |
| 3/14/18 | .2 | Review and analyze e-mails between co-counsel and defense counsel re: Marriott Defendants' deficient document production and the possibility of sanctions |

### D.  Plaintiffs Attempt to Recover Attorneys' Fees for Making Their Fee Application

Instead of the simple and straightforward bill of fees and costs that was to be provided under the December 31 Order, Plaintiffs elected to prepare an elaborate Motion for Fees and Costs, and (also contrary to the Court's direction) they seek to recover $38,882.50 in fees incurred in preparing that motion.  This amount reflects a total of 85.6 hours supposedly spent on the motion: 43.7 hours by Paralegal Lucie Riviere at her $175/hourly rate and 41.9 hours by attorney Ferguson at his $650/hourly rate.  Ferguson Decl. Ex. 15.

### E.  Plaintiffs Attempt to Recover Unreasonable Costs

### 1.  Unreasonable Costs for the <u>First</u> Sobeck, Cunningham and Mercer Depositions

Plaintiffs seek reimbursement for $13,524.98 in costs that they claim are associated with the first depositions of Sobeck (taken on November 16, 2017), Cunningham (taken on November

---

[12] *See*  Ferguson Decl., Ex. 14.

[13] *See*  Ferguson Decl., Ex. 13.

[14] *See*  *id.*

10 and 15, 2017) and Mercer (taken on October 24, 2017).   Sobeck was deposed for approximately 7.45 hours; Cunningham was deposed over the course of two days for approximately 10.7 hours; and Mercer was deposed for approximately 7.25 hours.   *See* Marx Decl. Exs. F-I.   These first depositions, however, covered a wide variety of topics concerning this case (and, for Sobeck and Cunningham, also the *Petrick* and *Reiser* cases), and they took place months before the production of the 2013 Affiliation Agreement in March 2018. Contending that "much of" the deposition testimony obtained in these first depositions is "unsaleable" (presumably they mean "unusable"), as it is incomplete and/or confusing given the framing of issues and questioning without the operative Affiliation Agreement," Plaintiffs seek to recover half of the costs they claim are attributable to these first depositions (including the travel expenses of a "Trial Director technician" whom Plaintiffs' counsel hired to travel from New Jersey to Orlando).[15]   Plaintiffs do not identify any specific "unusable" testimony, and they ignore that most of what was covered at these first depositions was completely unrelated to the mechanics of affiliation addressed in the 2013 Affiliation Agreement.

### 2. Unreasonable Costs for the Second Depositions (i.e., the Re-Depositions)

While Plaintiffs may properly seek to recover reasonable costs associated with the court reporters and videographers engaged for the re-depositions of Sobeck, Cunningham and Mercer, they also seek reimbursement for other costs that are not recoverable.   For example, Plaintiffs seek $1,447.57 as reimbursement for air travel to and from Orlando to conduct the Sobeck and Cunningham re-depositions.   *See* Ferguson Decl., ¶ 36.   Given that these depositions took place

---

[15]   Plaintiffs also unreasonably seek $2,525.20 for expenses such as travel for video technicians and for costs associated with obtaining rough and expedited copies of transcripts.   *See* Ferguson Decl., Exs. 4-9.

the same week as those of Ms. Kane-Hanan and Mr. Weisz, this airfare would have been incurred regardless of the delayed production of the 2013 Affiliation Agreement and, thus, did not result from that.   Plaintiffs also seek reimbursement of $2,875.10 for non-airfare travel expenses and costs incurred by Reiser Law and the Meade Firm.  *Id.*   But these firms were also appearing at these depositions in connection with their representation of plaintiffs in the two California cases (*Petrick* and *Reiser*), for which they already have been compensated.  *See* Marx Decl.  ¶ 26. This latter amount should, therefore, be reduced by two-thirds, i.e., to $957.40.

## ARGUMENT

## I.   STANDARD

"A district court should approach [a] reasonableness inquiry [regarding a party's application for attorneys' fees] 'much as a senior partner in a private law firm would review the reports of subordinate attorneys when billing clients....'"  *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) (quoting *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983)).  To allow the Court to engage in this analysis, the fee applicant must submit evidence supporting the hours worked and rates claimed.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  "Counsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks."  *Case v. Unified School Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998).  "A district court is justified in reducing the reasonable number of hours if the attorney's time records are sloppy and imprecise and fail to document adequately how he or she utilized large blocks of time."  *Id.* (internal quotation marks omitted).

"Once the court has adequate time records before it, 'it must then ensure that the . . . attorneys have exercised billing judgment.'"  *DeGrado v. Jefferson Pilot Fin. Ins. Co.*, 2009 WL 1973501, at *7 (D. Colo. July 6, 2009) (quoting *Case*, 157 F.3d at 1250).  Such billing judgment requires the applicant to "make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."  *Hensley*, 461 U.S. at 437.  In other words, "[h]ours that an attorney would not properly bill to his or her client cannot reasonably be billed to the adverse party, making certain time presumptively unreasonable."  *Case*, 157 F.3d at 1250.  In determining whether the attorney has met this standard, the court "is not obligated to accept the fee applicant's billing judgment uncritically."  *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005).  Rather, "[w]hen scrutinizing the actual hours reported, the district court should distinguish 'raw' time from 'hard' or 'billable' time to determine the number of hours reasonably expended."  *Ramos*, 713 F.2d at 553.

"After examining the specific tasks and whether they are properly chargeable, the district court should look at the hours expended on each task to determine if they are reasonable."  *Hensley*, 461 U.S. at 434.  Among the factors to be considered in making that determination are (1) whether the tasks itemized in the fee application "would normally be billed to a paying client"; (2) the number of hours spent on each task; (3) "the complexity of the case"; (4) "the number of reasonable strategies pursued"; (5) "the responses necessitated by the maneuvering of the other side"; and (6) "potential duplication of services" by multiple lawyers.  *Ramos*, 761 F.2d at 554.  "In this analysis, [the court should] ask what hours a reasonable attorney would have incurred and billed in the marketplace under similar circumstances."  *Robinson*, 160 F.3d at 1281.

Where, as here, attorneys' fees are awarded as a discovery sanction, "[t]he essential goal in shifting fees . . . is to do rough justice. . . ." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Accordingly, district courts should be careful not to award fees that are out of proportion to the court's overall sense of the amount of work involved in addressing the discovery issue that prompted the fee award. *See Geiger v. Z-Ultimate Self Defense Studios, LLC*, 2015 WL 176224, at *1 (D. Colo. Jan. 13, 2015) (in considering fee application in support of sanction for spoliation of evidence, court found "a claim for 195.75 hours and $53,807.50 to be unreasonable").

## II.   $142,743 IN ATTORNEYS' FEES IS NOT REASONABLE

Plaintiffs seek to recover $142,743 in attorneys' fees (not counting fees sought in connection with preparing this Motion, *see* Point IV, *infra*) allegedly incurred due to the delayed production of the 2013 Affiliation Agreement.  A substantial amount of these fees should be excluded because they are unreasonable, and an additional amount should be excluded because they are unrelated to the late production of the 2013 Affiliation Agreement.

### A.  Plaintiffs Cannot Recover for Duplicative and Excessive Hours

The term "duplicative" in the context of attorneys' fee requests usually refers to situations where more than the necessary number of lawyers are present for a hearing or proceeding or when multiple lawyers do the same task.  The more lawyers representing a side of the litigation, the greater the likelihood will be for duplication of services.  *Robinson v. City of Edmond*, 160 F.3d 1275, 1285 n.10 (10th Cir. 1998).  While the Tenth Circuit does not require an automatic reduction in hours to adjust for multiple lawyers working on a task, it has directed district courts to give particular attention to the possibility of duplication of effort, especially with regard to conferences and discussions with one another about the case. *New Mexico Citizens for Clean Air*

*& Water v. Espanola*, 72 F.3d 830, 835 (10th Cir. 1996) (finding district court did not abuse its discretion in reducing fees as excessive and unreasonable where plaintiff employed four attorneys and fees were sought for time spent conferring about the case); *see also Sinajini v. Board of Educ. of San Juan Cnty. Sch. Dist.*, 53 Fed. Appx. 31, 45 (10th Cir. 2002) (reducing fees by one-third for "excessive, unnecessary, and duplicative time spent in meetings and conferences"). As one court in this District noted, "[i]f the attorneys possess the skill required to charge the rates they are charging for their legal services, which this Court has determined they do, such constant collaboration, review, preparation and consultation is not necessary." *Carr v. Fort Morgan Sch. Dist.*, 4 F. Supp. 2d 998, 1003 (D. Colo. 1998).

As noted, the re-depositions of Sobeck, Cunningham and Mercer took about 10 1/2 hours in total. *See* Statement of Facts ("SOF"), Sect. B. Moreover, at least two hours of the Sobeck re-deposition concern topics having nothing at all do to with the 2013 Affiliation Agreement. Thus, the total number of relevant re-deposition hours is 8.5. Plaintiffs' counsel seek to recover the fees they incurred for four lawyers who spent 175.35 hours preparing for, travelling to and from, and taking these re-depositions. These relatively short depositions, with a limited subject matter (issues arising from the late production of the 2013 Affiliation Agreement) could have been adequately handled by one senior lawyer, particularly one with sufficient expertise to justify a $650 hourly rate. Having a second-, third- and fourth-chair lawyer appearing at these re-depositions was duplicative and, thus, unreasonable. The Court should limit Plaintiffs' recovery of attorneys' fees for the re-deposition to one lawyer.

The number of hours that the four lawyers claim to have spent preparing for these limited re-depositions was also unreasonable. A reasonable number of hours to spend preparing for the

re-depositions is 8.5 hours.  This is comprised of 5 hours preparing for the Sobeck re-deposition, 2.5 hours preparing for the Cunningham re-deposition (because the subject matter was the same as the Sobeck deposition two days earlier, it would be unreasonable to spend more than that in preparation) and 1 hour preparing for the Mercer re-deposition (concerning the same subject matters as the prior two re-depositions).   At $650 an hour, a reasonable amount of fees for preparing for and taking the re-depositions would be $11,050 (comprised of 17 hours). Plaintiffs' counsel claim to have spent many multiples of 17 hours, which is unreasonable.

### B.  Plaintiffs Are Not Entitled to Recover for Unrelated Tasks

On this motion, it was Plaintiffs' burden to establish, with precisely worded time entries, that the attorneys' fees sought were incurred as a result of the late production of the 2013 Affiliation Agreement.  Courts in this District will not permit recovery of fees associated with vaguely described tasks such as "discussing case status" (*Colorado Cross-Disability Coalition*, 2014 WL 793363, at *3), "trial preparation" (*Latin v. Bellio Trucking, Inc.*, 2016 WL 9725289, at *4 (D. Colo. Nov. 23, 2016); *Colorado Hospitality Servs. Inc. v. Owners Ins. Co.*, 154 F. Supp. 3d 1173, 1179 (D. Colo. 2015)), "research," "review discovery," or "conference with staff."  *Watson*, 2013 WL 4547521, at *3.

Moreover, attorneys' fees for travel time are not properly chargeable to a client; thus, an attorney may not recover for time purely described as "travel" without some further description of the substantive legal work being done by the attorney during the period that he or she was traveling.  *Watson v. Dillon Cos.*, 2013 WL 4547521, at *4 (D. Colo. Aug. 28, 2013).  Similarly,

it is unreasonable to bill for time – even at paralegal rates – for purely clerical work.  *Brokers'*

*Choice of Am., Inc. v. NBC Universal, Inc.*, 2011 WL 3568165, at *8 (D. Colo. Aug. 16, 2011).[16]

Plaintiffs seek to recover $34,979.50 in fees allegedly incurred for performing a significant number of tasks that, based on their description, were unrelated to the late production of the 2013 Affiliation Agreement.  *See* SOF, Sect. C, *supra*.  It was Plaintiffs' burden to demonstrate the propriety and reasonableness of all their time entries for which reimbursement is sought and to establish that such fees were the direct result of the delayed production of the 2013 Affiliation Agreement.  Plaintiffs have not met their burden, as many of the entries merely contain vague, generalized descriptions, such as "work on privilege log," "work on discovery," "prepare for depositions," "call regarding strategy" and "return travel from Orlando."  The Court should deny recovery for all such vaguely identified time entries.  In any event, recovery for such entries should be denied because even were they deemed sufficiently specific, they would simply add more hours to the already excessive hours allegedly spent preparing for 10.5 hours of deposition.

## III.   PLAINTIFFS' REQUEST FOR $33,134.98 IN COSTS IS UNREASONABLE

Plaintiffs seek to recover $13,524.98 in costs associated with the <u>first</u> depositions of Ms. Sobeck and Messrs. Cunningham and Mercer, which took place in October and November 2017,

---

[16] Courts in this District have denied recovery of fees spent on tasks such as storing and retrieving documents (*Youchoff v. IQ Data Int'l, Inc.*, 2013 WL 2378581, at *2 (D. Colo. May 30, 2013); *San Luis Valley Ecosystem Counsel v. United States Forest Serv.*, 2009 WL 792257, at *9 (D. Colo. Mar. 23, 2009)), scheduling (*Youchoff*, 2013 WL 2378581, at *2), reviewing a file to see what further work needed to be done (*Colorado Cross-Disability Coalition v. Abercrombie & Fitch Co.*, 2014 WL 793363, at *3 (D. Colo. Feb. 26, 2014); *Youchoff*, 2013 WL 2378581, at *2), reviewing papers filed with the court (*In re Ingersoll (George T. Carlson & Assocs. v. United States Bankr. Ct.)*, 238 B.R. 202, 205 (D. Colo. 1999)), reviewing prior discovery requests and responses (*Watson,* 2013 WL 4547521, at *3), and typing, faxing or mailing a letter.  *San Luis Valley*, 2009 WL 2378581, at *9; *Ingersoll*, 238 B.R. at 206.

months before the 2013 Affiliation Agreement was produced. *Cf.* ECF#330 at 29 (only permitting the recovery of costs directly caused by the late production of the 2013 Affiliation Agreement). Plaintiffs seek these costs because they contend that the record of the first depositions was "ruined," and they fear they might have to do work to "re-sequence" the testimony in case it is someday played for a jury. First, the transcripts and recordings of the first depositions are not "ruined." Plaintiffs have a record of the depositions and can use them as they see fit. As far as the "sequencing" of any presentation of videotaped testimony to the jury, depositions are never played from start to finish at trial; they are always edited and sequenced as counsel deems necessary for presentation purposes. This editing would be a normal part of the usual trial preparation process and not attributable to the late production of the 2013 Affiliation Agreement. Moreover, Plaintiffs do not identify any specific portions of these first depositions that they contend are unusable due to late production of the 2013 Affiliation Agreement. Nor could they, as the bulk of these depositions covered subjects unrelated to the mechanics of affiliation addressed in the 2013 Affiliation Agreement. The Court should deny Plaintiffs any recovery of costs associated with the first depositions of Sobeck, Cunningham and Mercer.

With respect to the re-depositions, the Marriott Defendants agree that the costs associated with the court reporter and videographer are, to some extent, warranted; however, the amount Plaintiffs seek ($13,650.95) is unreasonable. For the Sobeck and Cunningham depositions, the total amount should be reduced by two-thirds because, as discussed above, those depositions were also being taken in the *Petrick* and *Reiser* cases. *Cf.* ECF#330 at 29 (only permitting recovery of costs related to the late production of the 2013 Affiliation Agreement <u>in this case</u>). Moreover, the *Petrick* and *Reiser* cases have since been settled, and Plaintiffs have already

recovered the costs associated with the portion of these re-depositions related to those cases. Thus, the appropriate amount that Plaintiffs should be awarded for videography and court reporting costs for the re-depositions is $6,192.12. That amount represents court reporter and videographer costs for the Mercer re-deposition ($2,462.70), plus one third of the court reporter and videographer costs for the Sobeck ($2,372.37) and Cunningham ($1,357.05) re-depositions, which total $6,192.12.

As for rest of the costs sought, Plaintiffs should not be reimbursed for airfare, as the Sobeck and Cunningham re-depositions were purposely scheduled to coincide with two other regularly scheduled depositions. And, while the Marriott Defendants do not object to the additional re-deposition costs incurred by the Ferguson Law Firm, they do object to costs purportedly incurred by the Meade Firm and Reiser Law. Since those firms were appearing in the *Petrick* and *Reiser* cases at that time, their costs should be reduced by two-thirds. Thus, Plaintiffs should be permitted to recover a total of $8,907.24 in costs, which represents the cost of the videographer and court reporters for the re-depositions, costs incurred by the Ferguson Law Firm, and one third of the costs incurred by Reiser Law and the Meade Firm. Any amount more than this would be unreasonable and unwarranted as outside the scope of the December 31 Order and duplicative of amounts recovered in the *Petrick* and *Reiser* cases.

## IV.   PLAINTIFFS ARE NOT ENTITLED TO THE $38,882.50 IN ATTORNEYS' FEES PURPORTEDLY INCURRED IN PREPARING THIS MOTION

The December 31 Order provides that, in order for Plaintiffs to recover fees and costs caused by the delayed production of the 2013 Affiliation Agreement, they were to submit "a detailed bill of fees and costs." (ECF#330 at 29). Plaintiffs did not do that. Instead, they filed

this Motion for Fees and Costs, which was completely unnecessary.[17]  Compounding their error, Plaintiffs are seeking to recover the attorneys' fees that were purportedly incurred in preparing this Motion.  Plaintiffs are not entitled to such recovery.

The December 31 Order makes clear that Plaintiffs are entitled to fees and costs "related ___*only*___ to the Rule 26 violation, in this action, for the non-provision of the [2013] Affiliation Agreement."  (ECF#330 at 29-30) (emphasis added).  The Court plainly stated that no fees would be awarded in connection with the litigation of this issue.  *See id.* ("The Court is not Ordering the payment of fees and costs that it took to litigate this extensive default judgment controversy over the past six (6) months.").  To eliminate any potential confusion, the Court explained further: "What the Court is referring to is specific costs/expenses/fees Plaintiffs had to expend to otherwise fix the problem(s), e.g., extra deposition(s), travel, etc."  *Id.*  Thus, the December 31 Order clearly differentiated between what is recoverable and what is not, and attorneys' fees incurred in preparing this Motion for Fees and Costs are not recoverable.

The single case that Plaintiffs cite for the proposition that attorneys' fees may be awarded for the preparation of a fee application (*Biax Corporation v. NVIDIA Corporation*, 2013 WL 4051908 (D. Colo. Aug. 12, 2013) (Brimmer, *J.*)) is distinguishable on several grounds.

First, the fee application in *Biax* was submitted as part of a separate motion that followed a grant of summary judgment in which the case was deemed "exceptional" and, thus, appropriate for an award of attorneys' fees.  Here, no additional motion was necessary; rather, Plaintiffs were

---

[17] The Motion is also unnecessarily complicated.  Under the December 31 Order, Plaintiffs were directed to "compl[y] with all rules and statutes, including local rules."  *Id.*  Contrary to the Order, Plaintiffs failed to comply with Local Civil Rule 7, which required them to confer with the Marriott Defendants prior to filing their motion.  Had Plaintiffs complied with their duty to confer, the parties might have been able to work out at least some of the issues that are now before the Court.

directed to submit a simple bill of fees and costs and were specifically prohibited from recovering any fees associated with motion practice over the 2013 Affiliation Agreement. Second, attorneys' fees were awarded to the two defendants in Biax pursuant to section 285 of the patent statute, which allows for an award of fees to the prevailing party in a patent infringement action "in exceptional cases." *See id.* at *1 (awarding fees for a period of time after plaintiff's expert had conceded non-infringement, through the entry of summary judgment). Here, attorneys' fees were awarded as a discrete discovery sanction related to the belated production of a document. Third, the two *Biax* defendants sought a little over $105,000 and $56,500, respectively, for preparing their respective fee applications. But that covered ***all*** the litigation activity over a nine-month period in a complex, "heavily and bitterly disputed" patent infringement case with over 1,000 docket entries. *Id.* at *1, *3 & n.2. By contrast, Plaintiffs here seek almost $39,000 for the preparation of a fee application addressing a single discovery issue to which only sporadic activity was devoted. Fourth, of the entire fee applications submitted by the two defendants in *Biax,* nearly 90% and 60% of the hours (respectively) were charged at associate and paralegal billing rates. *Id.* at *3. Here, 70% of the fees sought for the preparation of their fee application were charged by attorney Ferguson. Pl. Br. at 20. *Biax* is, therefore, inapposite to the issue here.

In any event, Plaintiffs may only recover attorneys' fees that are reasonable (*see Youchoff v. IQ Data Int'l, Inc.*), and the fees that they seek for the preparation of this Motion are decidedly unreasonable. Plaintiffs seek recovery for 85.6 hours of attorney time, of which nearly half (41.9 hours) are attributable to lead counsel Ferguson, who has billed Plaintiffs at $650/hour. It is unreasonable for an attorney at that level, seeking that hourly rate, to have spent so much time on

the ministerial task of preparing a bill of fees and costs -- the only task authorized under the December 31 Order. The fees sought for preparing this Motion for Fees and Costs are also grossly inflated in that much time was obviously spent trying to quantify fees and costs that are unreasonable and unrecoverable.

For all these reasons, Plaintiffs' request to recover attorneys' fees incurred in preparing this Motion should be denied. Should such recovery be permitted, however, it should be proportionate to the amount of attorneys' fees ultimately awarded for work not pertaining to this Motion for Fees and Costs. Thus, to the extent Plaintiffs are awarded attorneys' fees in an amount less than the $142,743 they seek, their recovery of attorneys' fees for making this Motion (which they have quantified at $38,882.50) should be reduced by the same proportion.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs' Motion for Fees and Costs should be denied. To the extent Plaintiffs are awarded anything, it should be no more than $19,957.24, which would represent the reasonable fees and costs associated with the Sobeck, Cunningham and Mercer re-depositions.

Dated: February 4, 2019                    Respectfully submitted,

By:     *s/ Ian S. Marx*
　　　　　　　　Naomi G. Beer
　　　　　　　　Philip R. Sellinger
　　　　　　　　Ian S. Marx
　　　　　　　　GREENBERG TRAURIG, LLP
　　　　　　　　1200 Seventeenth Street, Suite 2400
　　　　　　　　Denver, Colorado 80202
　　　　　　　　Tel:    303.572.6500
　　　　　　　　Fax:   303.572.6540
　　　　　　　　Email:  BeerN@gtlaw.com
　　　　　　　　　　　　SellingerP@gtlaw.com

MarxI@gtlaw.com

*Attorneys for Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC, The Cobalt Travel Company, LLC, and The Lion & Crown Travel Co., LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on February 4, 2019, a true and accurate copy of the foregoing **MARRIOTT DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS** was filed and served with the Clerk of the Court via CM/ECF filing system, which will send notification to the following:

Michael J. Reiser
Law Office of Michael J. Reiser
1475 N Broadway, Suite 300
Walnut Creek, CA 94596
*Counsel for Plaintiffs*

Matthew C. Ferguson
The Matthew C. Ferguson Law Firm, P.C.
119 South Spring, Suite 201
Aspen, Colorado 81611
*Counsel for Plaintiffs*

Tyler R. Meade
The Meade Firm P.C.
12 Funston Avenue., Suite A
San Francisco, California 94129
*Counsel for Plaintiffs*

Linda Pham Lam
Michael Schrag
Gibbs Law Group LLP
505 14th Street, Suite 1100
Oakland, CA 94612
*Counsel for Plaintiffs*

_s/ Julie Eaton_
Julie Eaton
*(Original on file at offices of Greenberg
Traurig, LLP, pursuant to C.R.C.P. 121, §
1-26)*