**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-01301-PAG-GPG

RCHFU, LLC, et al

    Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al,

    Defendants.

---

**MARRIOTT DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR ADDITIONAL REMEDIES WITH RESPECT TO
DELAYED PRODUCTION OF 2013 AFFILIATION AGREEMENT**

---

Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC, The Cobalt Travel Company, LLC, and The Lion & Crown Travel Co., LLC ("L&C") (collectively, the "Marriott Defendants") respectfully submit this Opposition to Plaintiffs' Motion for Additional Remedies in connection with the delayed production of a November 14, 2013 Affiliation Agreement between non-party Marriott Resorts, Travel Company, Inc. and L&C (the "2013 Affiliation Agreement").

**PRELIMINARY STATEMENT**

This motion is another example of Plaintiffs' overreaching. Plaintiffs came to the Court with a straightforward discovery dispute concerning the belated production of documents, which they distorted with unsupported allegations of purposeful concealment to press the Court to issue the extreme sanction of a default judgment. The Court rejected those unsubstantiated allegations, and held that, although the 2013 Affiliation Agreement should have been produced

earlier, as the Marriott Defendants conceded, the belated production did not constitute willful misconduct or bad faith.  *See* ECF#330 (the "December 31 Order").  The Court narrowly tailored some redress for the Marriott Defendants' oversight, allowing Plaintiffs to seek additional remedies related to the late production of the 2013 Affiliation Agreement.  But Plaintiffs appear determined to expand an opportunity for narrowly tailored specific relief into something more.  Plaintiffs' requests for additional relief are both futile and improper.

Although the December 31 Order mentions further depositions as a possible additional remedy, the depositions Plaintiffs are seeking are demonstrably unnecessary and inappropriate.  Long before the December 31 Order was issued, the Marriott Defendants and Defendant Aspen Highlands Condominium Association (the "Association") had already taken steps to mitigate any prejudice that Plaintiffs claim to have suffered due to the delayed production of the 2013 Affiliation Agreement.  Specifically, Defendants made two senior-level Marriott executives and the President of the Association available for additional depositions focused on the 2013 Affiliation Agreement, and the Association agreed to answer supplemental written discovery requests regarding the agreement.  Although Plaintiffs had initially sought to re-depose numerous Association Board members, they agreed that the additional discovery the Defendants provided was a reasonable and sufficient compromise.

Plaintiffs are now seizing on the December 31 Order as an opportunity to go beyond that to which they previously agreed and are demanding four additional depositions:  three Association Board members and the Association's counsel. (ECF #338)  As described in detail below, however, Plaintiffs already have deposition testimony from the Association's counsel and

2

two of the three Board members,[1] all of whom have testified to the stipulated fact that no one on the Board examined the 2013 Affiliation Agreement or was otherwise familiar with its terms. Thus, the depositions Plaintiffs are seeking would yield nothing of substance and would serve only to further delay this over-three-year-old litigation.

Plaintiffs also improperly request that the Court instruct the jury that it can make an adverse inference that the Marriott Defendants' belated production of the 2013 Affiliation Agreement violated the "rules of discovery." But such an instruction is appropriate only where there has been a finding of willful misconduct and bad faith, and the Court expressly rejected such a finding here, even though it recognized, as the Marriott Defendants conceded, that the 2013 Affiliation Agreement should have been produced earlier in discovery. The instruction sought is, thus, both unwarranted as a matter of law and is intended to mislead the jury and unduly prejudice the Marriott Defendants in the jury's evaluation of their conduct. Plaintiffs' Motion for Additional Remedies should be denied.

## STATEMENT OF FACTS

### A. Plaintiffs' claims

Plaintiffs are owners of 1/12 fractional interests in luxury condominium units at The Ritz-Carlton Club, Aspen Highlands, Colorado ("RC Club Aspen"). The claims in this case arise from the Association's execution of an April 24, 2014 Acknowledgement and Joinder to the 2013 Affiliation Agreement, which enabled RC Club Aspen members to voluntarily exchange their use-weeks at RC Club Aspen for points with the Marriott Vacation Club Destinations Exchange Program (the "MVCD Program"), and also enabled MVCD Program members to

---

[1] Plaintiffs had chosen not to depose the third Board member on any issue despite having known his identity since the inception of this case.

access any RC Club Aspen use-weeks that RC Club Aspen members have elected to deposit in the MVCD Exchange Program (the "MVC Affiliation"). Plaintiffs contend that they were damaged by the alleged failure to allow RC Club Aspen members to vote on whether the MVC Affiliation should take place, and by the MVC Affiliation itself (which allegedly decreased the value of their fractional interests).

### B. The dispute concerning the delayed production of the 2013 Affiliation Agreement

The Marriott Defendants intended their initial November 10, 2016 production to include the 2013 Affiliation Agreement. In reviewing the produced documents, however, Plaintiffs' counsel saw references to the 2013 Affiliation Agreement and realized that the agreement itself had not been produced. Upon review, the Marriott Defendants' counsel confirmed that the 2013 Affiliation Agreement had been unintentionally and inadvertently omitted from their initial production set. The 2013 Affiliation Agreement was then produced to Plaintiffs on March 13, 2018. On April 27, 2018, Plaintiffs moved for various discovery sanctions, including a default judgment against certain of the Marriott Defendants, arising from the belated production of the 2013 Affiliation Agreement.[2]

### C. Plaintiffs' post-motion discovery of the Association

While the sanctions motion was *sub judice*, Plaintiffs sought to engage in further discovery regarding the 2013 Affiliation Agreement. In addition to taking additional depositions of Marriott executives Lee Cunningham and Stephanie Sobeck Butera regarding the 2013 Affiliation Agreement (whom the Marriott Defendants voluntarily made available), Plaintiffs

---

[2] Plaintiffs' 2013 Affiliation Agreement-related motion was consolidated with another motion by Plaintiffs concerning the delayed production of documents relating to the Marriott Defendants' engagement of the public relations/crisis management firm, APCO Worldwide, Inc. The portion of the December 31 Order relating to the APCO documents is not relevant here.

4

also sought to re-depose multiple Association Board Members regarding the 2013 Affiliation Agreement, which the Association resisted.  As reported in an August 28, 2018 Status Report to the Court, Plaintiffs and the Association resolved this dispute by agreeing to a one-hour second deposition of then-Board President Randall Mercer and to have the Association respond to "targeted written discovery" on the issue.  (ECF #300 at 4.)

Pursuant to the parties' agreement, Mr. Mercer was deposed for a second time on September 13, 2018.  Upon being shown the 2013 Affiliation Agreement, Mr. Mercer testified that he had neither seen nor requested the 2013 Affiliation Agreement at the time he signed the 2014 Acknowledgment and Joinder on behalf of the Association.  *See* Mercer Deposition, attached to the February 4, 2019 Declaration of Ian S. Marx ("Marx Decl.") as Exhibit J, at 7:17-8:21.  Mr. Mercer further testified the Association's counsel would have asked for the Marriott Defendants to provide a copy of the document for the Association's review had he deemed it appropriate.  *Id*. at 16:17-19:15.

In addition, on December 4, 2018, the Association served its responses to the agreed-upon "targeted discovery" – an additional eight requests for admissions and two interrogatories regarding the 2013 Affiliation Agreement.  These responses made clear that, until the 2013 Affiliation Agreement was produced by the Marriott Defendants during discovery in this action, none of the Association's Directors had seen the agreement in whole or in part, or had requested the opportunity to review it.  Nor had the Association's Directors discussed the 2013 Affiliation Agreement among themselves or with counsel, notwithstanding the references to the document in the April 2014 Acknowledgement and Joinder.  *See* Association's Written Discovery Responses*,* attached to Marx Decl. as Exhibit K, at 5-8, 10-11.

This Fall 2018 discovery supplemented earlier deposition testimony from the Association's attorney, Michael Marino, who affirmed that he had not been involved in substantive discussions regarding the Acknowledgment and Joinder (which were addressed only by the Association Board); rather, he had been tasked only with "polishing up the agreement" and ensuring that "the document says reflects [sic] what we want." *See* Marino Deposition, attached to Marx Decl. as Exhibit L, at 135:10-137:1, 138:11-140:14.

Plaintiffs had also deposed several other current and former Association Board members during fact discovery. Plaintiffs did not elect to depose Board member Robert Harris (or even notice his deposition), even though they were aware of Mr. Harris's identity and position throughout the litigation.

### D. The December 31 Order

In the December 31 Order, the Court granted Plaintiffs' sanctions motions in part and denied them in part. With respect to the 2013 Affiliation Agreement, the Court held that, although the belated production was not substantially justified, it was an unintentional "mistake" and did not show willful misconduct or bad faith on the part of the Marriott Defendants or their counsel. ECF#330 at 18-19.

While crediting the Marriott Defendants for trying "to make right their mistake by allowing additional depositions and taking other steps to fix the problem their non-provision caused" (*id*. at 28), the Court believed that "additional steps need[ed] to be taken to remedy" the 2013 Affiliation Agreement's late production. *Id.* Thus, the Court ordered that Plaintiffs could, upon application, (a) recover only those reasonable attorneys' fees and costs specifically associated with the non-provision of the 2013 Affiliation Agreement "to otherwise fix the

6

problem(s)" that it caused (which specifically ***could not include*** fees and costs associated with the litigation of the sanctions motions); (b) seek to further amend the Sixth Amended Complaint to assert additional claims based on the 2013 Affiliation Agreement; (c) take any necessary additional depositions regarding the document; and (d) propose additional remedies. *Id*. at 29-30.[3]

In this motion, which addresses the "additional depositions and remedies" portion of the December 31 Order, Plaintiffs seek to (1) re-depose Association Board members Oliver and Schneider and the Association's counsel, Mr. Marino; (2) depose an additional Association Board Member, Mr. Harris;[4] and (3) have the Court instruct the jury that it may draw a permissive adverse inference from the circumstances surrounding the production of the 2013 Affiliation Agreement. The relief Plaintiffs seek is inappropriate and should be denied.

## ARGUMENT

### I. NO FURTHER DEPOSITIONS OF ASSOCIATION WITNESSES ARE WARRANTED

Notwithstanding the depositions and written discovery that Plaintiffs have already obtained regarding the 2013 Affiliation Agreement, they now seek to re-depose two Association Board members and the Association's attorney and to depose a third Board member whom they chose not to depose while fact discovery was still open. *See* Statement of Facts ("SOF"), Sect. C. These depositions are wholly unnecessary and should not be permitted.

---

[3] The Court held that, given the protocol regarding electronically stored information to which the parties had agreed, the belated production of the APCO documents was substantially justified and did not show willfulness or bad faith on the part of the Marriott Defendants or their counsel. ECF #330 at 23-24.

[4] Plaintiffs seek to have the Marriott Defendants bear all parties' attorneys' fees and costs associated with the requested depositions.

As an initial matter, these deposition requests directly conflict with the agreement Plaintiffs reached with the Association in August 2018 regarding the appropriate means of discovering information concerning the Association's knowledge of and reaction to the 2013 Affiliation Agreement, through which Plaintiffs agreed to forego the very depositions they now seek to take. That agreement called for only a single one-hour deposition of Mr. Mercer and the Association's responses to written discovery requests – not four more depositions on top of that. This issue was completely resolved without the need for motion practice before the December 31 Order was issued, and nothing has changed since then that would entitle Plaintiffs to the "second bite at the apple" that they are now so opportunistically trying to get.

As a matter of policy and practice, consensual resolutions of discovery disputes (like the one that was reached here) are to be encouraged and enforced. *See Hoelzel v. First Select Corp.*, 214 F.R.D. 634, 635 (D. Colo. 2003) ("Rule 7.1A serves a particularly important function in connection with discovery disputes because the parties, through negotiations, frequently are able to narrow the discovery requests in a way which eliminates the need for judicial intervention. . . . Without meaningful negotiations by the parties, the courts would be flooded with discovery motions."). This is consistent with the fundamental mandate that each Federal Rule of Civil Procedure "be construed, administered and employed by the court and the parties to secure the just, speedy and inexpensive determination of every action and proceeding." *See* Fed. R. Civ. P. 1.

Even if this issue had not already been consensually resolved, the four requested depositions still should not be permitted in this case, where fact discovery has long closed. *See Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987) ("Whether to extend or reopen

discovery is committed to the sound discretion of the trial court...."). In *Smith*, the Tenth Circuit held that the relevant factors in reviewing decisions concerning whether discovery should be extended beyond a cut-off date in a Rule 16 Scheduling Order include (1) whether trial is imminent; (2) whether the request is opposed; (3) whether the non-moving party would be prejudiced; (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the Court; (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the Court; and (6) the likelihood that the discovery will lead to relevant evidence. *Id*. at 169. Except for the lack of a trial date (factor (1)), these factors weigh strongly against allowing the four depositions to proceed.

As to factor (2), the Marriott Defendants oppose Plaintiffs' request. As to factor (3), the Marriott Defendants would be prejudiced because they would have to commit even more time and resources to the additional depositions, particularly given Plaintiffs' demand that the Marriott Defendants pay all parties' attorneys' fees and costs for the depositions. As to factor (4), Plaintiffs were not at all diligent in pursuing these depositions, particularly with respect to the requested Harris deposition. Although Plaintiffs had the 2013 Affiliation Agreement in their possession by March 2018 and requested additional fact discovery in the ensuing months, they voluntarily agreed to take only one further deposition of an Association witness (and then only for an hour). As to factor (5), the need for such further discovery was indisputably foreseeable to Plaintiffs as soon as the 2013 Affiliation Agreement was produced, as evidenced by the discovery efforts they undertook at the time (re-deposing additional Marriott and Association witnesses and serving additional written discovery on the Association).

Perhaps the most compelling reason to deny Plaintiffs request, however, is, factor (6) -- the likelihood of the depositions leading to relevant evidence.  The discovery on this subject that Plaintiffs have already taken has established, unequivocally, that no one on the Association Board had seen or requested to see the 2013 Affiliation Agreement at the time the Association entered into the Acknowledgement and Joinder in April 2014, notwithstanding explicit references to the 2013 Affiliation Agreement in that document.  *See* SOF, Sect. C, *supra*.  Moreover, the Association's counsel has already testified that he was not involved in the transaction, and instead was retained solely to review the contents of the Acknowledgment and Joinder Agreement to ensure that it conformed to its stated purpose.

It is obvious from all of this prior discovery and testimony that questioning the Board members or the Association's counsel about the potential impact of the 2013 Affiliation Agreement – including with respect to the substance of any of its allegedly "one-sided terms" regarding the length of the MVC Affiliation, the "use rights" given to MVCD members, or the allocation of costs (Pl. Br. at 3-4) – would be futile and pointless.  The Association has admitted that its Board members did not review the 2013 Affiliation Agreement before April 2014.  No substantive response on any of the issues identified by Plaintiffs in their Motion can be provided by individuals who had never seen or discussed the document.  The only purpose to be served by the proposed depositions would therefore be to waste time and resources, and to further delay this already-three-year-old litigation – about which Plaintiffs themselves complained at oral argument of their sanctions motions.  *See Kabins Family Ltd. P'ship v. Chain Consortium*, 2012 WL 13048564, at *4 (D. Nev. Sept. 28, 2012) (denying leave to take four depositions of non-party investors on fraud-based claims, where witnesses' testimony would be cumulative to that

of other investors already deposed); *Presse v. Morel*, 2011 WL 5129716, at *2 (S.D.N.Y. Oct. 28, 2011) (denying additional Rule 30(b)(6) depositions where witnesses were already deposed in their individual capacities and topics in deposition notice were already covered in those depositions).

There is still less reason to depose Board member Harris at this late stage of the litigation. Plaintiffs have known Mr. Harris' identity since the outset of the litigation, yet they affirmatively decided not to depose him during the fact discovery period. The time to depose Mr. Harris and to ask him about the MVC Affiliation and the April 2014 Acknowledgment and Joinder was during fact discovery – not several months after its close and certainly not on such a flimsy pretext. *See Ulibarri v. City & Cnty. of Denver,* 742 F. Supp. 2d 1192, 1209 (D. Colo. 2010) (affirming magistrate judge's decision denying re-opening of discovery to depose additional witnesses whose identities were known to plaintiffs through earlier discovery).

Finally, Plaintiffs' demand that the Marriott Defendants pay all parties' attorneys' fees and costs in connection with the depositions they are demanding. The Court, however, made clear that any fees and costs sought by Plaintiffs must be "reasonable." (ECF#330 at 29). Since the depositions Plaintiffs are seeking are unnecessary for the reasons stated above, it would be unreasonable for the Marriott Defendants to have to pay all fees and costs associated with such depositions.

To this point, if any of the depositions are permitted, any expense or burden to Plaintiffs could be mitigated by limiting the depositions to one hour (as the parties agreed with respect to the second deposition of Mr. Mercer), and they could be conducted via videoconference or telephonically (as the parties also agreed with respect to Mr. Mercer's second deposition). If

11

these depositions had been taken during fact discovery, Plaintiffs would have had to incur these modest costs anyway; thus, any cost-shifting at this point is inappropriate. *See Jones v. County of Los Angeles*, 2012 WL 12919237, at *5 (C.D. Cal. Mar. 22, 2012) (denying request that defendant incur all deposition costs; "Plaintiffs would have been required to incur all the deposition-related and discovery-related costs they now seek[] to shift to [defendant]; the costs simply would have been incurred sooner").

## II. NO ADVERSE INFERENCE IS WARRANTED

Plaintiffs request that the jury be instructed that it can draw a permissive adverse inference from the circumstances surrounding the production of the 2013 Affiliation Agreement by "considering" that the Marriott Defendants "violated the rules of discovery" by not producing the document earlier in discovery. (ECF#338 at 6.) This request is completely unwarranted and contrary to law.

Adverse inference instructions for discovery violations are only appropriate where the violation was the product of willfulness or bad faith. *See generally* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment (adopting principle that severe sanctions, such as adverse inferences, are only permitted where the court finds an "intent to deprive another party of the information's use in the litigation,"). As the Advisory Committee further explained:

> Adverse-inference instructions were developed on the premise that a party's intentional loss or destruction of evidence to prevent its use in litigation gives rise to a reasonable inference that the evidence was unfavorable to the party responsible for loss or destruction of the evidence. Negligent or even grossly negligent behavior does not logically support that inference. Information lost through negligence may have been favorable to either party, including the party that lost it, and inferring that it was unfavorable to that party may tip the balance at trial in ways the lost information never would have.

*Id.*

Even in cases involving spoliation of evidence, the Tenth Circuit has strictly limited the availability of adverse influence instructions to those situations in which documents were willfully (rather than negligently) destroyed. *See Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 864 (10th Cir. 2005); *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997). While the Tenth Circuit has not issued an opinion in a case involving the late production of documents, numerous other federal courts have refused to permit an adverse inference where a party was found merely to have unreasonably delayed in producing documents but had not engaged in active efforts to conceal the documents. *Everlight Elecs. Co. v. Nichia Corp.*, 2013 WL 6713789, at *5-*6 (E.D. Mich. Dec. 20, 2013) (refusing to impose adverse inference, calling it an "extreme sanction" that "interfere[s] with the overriding policy of deciding cases on their merits") (internal citations and quotations omitted); *see also Panwar v. Access Therapies, Inc.*, 2014 WL 820023, at *8 (S.D. Ind. Mar 3, 2014) (refusing to impose adverse inference sanction for unproduced employment records where defendant's document production was substantially complete and production process had been "complicated" by illness of defendant's principal); *Butterworth v. Laboratory Corp. of Am. Holdings*, 2012 WL 12864185, at *25 (M.D. Fla. Apr. 23, 2012) (refusing to impose adverse inference sanction for mere "sluggish production" of electronic discovery); *Chavez v. Blue Sky Natural Beverage Co.*, 2011 WL 4830997, at *3-*4 (N.D. Cal. Oct. 12, 2011) (refusing to impose adverse inference sanction for production of certain of treating physician's records after discovery cut-off); *Pall Corp. v. 3M Purification Inc.*, 279 F.R.D. 209, 213 (E.D.N.Y. 2011) (refusing to impose adverse inference sanction for mere delay in producing requested documents).

As noted, the Court has found that the delayed production of the 2013 Affiliation Agreement was not the product of willful misconduct or bad faith on the part of either the Marriott Defendants or their counsel.  Thus, the December 31 Order provides no basis for a jury instruction on an adverse inference against the Marriott Defendants.

The authorities that Plaintiffs cite in which district courts awarded adverse inference instructions as a discovery sanction are not on point.  Nothing even remotely close to the discovery misconduct in those cases took place here.  For example, in *Tom v. S.B., Inc.*, 280 F.R.D. 603, 613-15 (D.N.M. 2012), the defendants and their counsel committed numerous discovery abuses, including (1) concealing the existence of inspection reports and records of repairs for a commercial truck involved in a motor vehicle accident; (2) blatantly misrepresenting counsel's ability to contact the truck driver as a means to secure the requested documents; and (3) intentionally withholding documents that were responsive to the plaintiff's interrogatories seeking information about communications, statements or investigations made by the defendants or their insurers regarding the accident.  Likewise, in *Knowlton v. Teltrust Phones, Inc.*, 189 F.3d 1177, 1181-82 (10th Cir. 1999), the defendant failed to respond or object to the plaintiff's interrogatories and document requests, and then violated a discovery order requiring it to provide much of the information in response to the plaintiff's requests, instead providing wholly non-responsive information.

Similarly, in *McCloud v. Goodyear Dunlop Tires North America, Ltd.*, 2007 WL 2584289, at *4 (C.D. Ill. Aug. 23, 2007), a personal injury action arising from a tire blowout on a motorcycle, the defendant provided "interrogatory answers [that] were at best misleading and at worst deliberately deceptive" regarding inspections of the subject tire.  This conduct deprived the

plaintiff of an opportunity to conduct his own forensic investigation, and the court further found that the defendant had "hidden" the identity of the witness who had inspected the tire.

Plaintiffs attempt to portray a permissive adverse inference as somehow "less severe" than a required inference. (ECF#338 at 6.) That, however, does not make Plaintiffs' request proper or cure the undue prejudice that it would cause the Marriott Defendants. To the contrary, any instruction regarding an adverse inference would inflame and confuse the jury and be grossly unfair and prejudicial to the Marriott Defendants. To avoid just that kind of danger, the Tenth Circuit and several courts in this District have excluded, under Fed. R. Evid. 403, evidence of a party's alleged misconduct during the litigation. *See, e.g., Timberlake Constr. Co. v. U.S. Fid. & Guar. Co.*, 71 F.3d 335, 340-41 (10th Cir. 1995) (reversing jury verdict in plaintiff's favor on bad faith claim against insurer where jury was allowed to consider evidence of insurer's conduct during litigation, including letters written about plaintiff, prosecution of unsuccessful counterclaim and unsuccessful motion to join necessary party); *Ali v. Jerusalem Rest., Inc.*, 2015 WL 5440510, at *1 (D. Colo. June 9, 2015) (granting motion *in limine* to exclude evidence that witness was threatened with termination if she did not sign affidavit submitted in support of defendant's summary judgment motion).[5] Notably, this Court has held that, for evidence of litigation misconduct to pass Rule 403's balancing test, a showing of "extraordinary facts" is

---

[5] Numerous federal courts have also excluded, on Rule 403 grounds, evidence regarding discovery disputes and claims of improper behavior during the discovery process. *See, e.g., Bruhn Farms Joint Venture v. Fireman's Fund Ins. Co.*, 2017 WL 752282, at *4 (N.D. Iowa Feb. 27, 2017); *W.L. Gore & Assocs. v. C.R. Bard, Inc.*, 2017 WL 525668, at *1 (D. Del. Feb. 8. 2017); *Van v. Language Line Servs., Inc.*, 2016 WL 3566980, at *4 (N.D. Cal. June 30, 2016); *In re: General Motors LLC Ignition Switch Litig.*, 2015 WL 8130449, at *4-*5 (S.D.N.Y. Dec. 3, 2015); *Avocent Huntsville Corp. v. ClearCube Tech., Inc.*, 2006 WL 7132021, at *2, n.3 (N.D. Ala. July 28, 2006).

required. *Toy v. American Family Mut. Ins. Co.*, 2014 WL 485922, at *2 (D. Colo. Feb. 6, 2014) (Brimmer, *J.*). No "extraordinary facts" are present here.

As discussed above, the Court has expressly held that the Marriott Defendants and their counsel had not engaged in willful misconduct and bad faith with respect to the delayed production of the 2013 Affiliation Agreement. No adverse inference is warranted under these circumstances, and such relief should be denied along with the rest of Plaintiffs' Motion.

## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Additional Remedies should be denied in its entirety.

Dated: February 4, 2019        Respectfully submitted,

By:    *s/ Ian S. Marx*
       Naomi G. Beer
       Philip R. Sellinger
       Ian S. Marx
       GREENBERG TRAURIG, LLP
       1200 Seventeenth Street, Suite 2400
       Denver, Colorado 80202
       Tel:    303.572.6500
       Fax:    303.572.6540
       Email:  BeerN@gtlaw.com
               SellingerP@gtlaw.com
               MarxI@gtlaw.com

       *Attorneys for Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC, The Cobalt Travel Company, LLC, and The Lion & Crown Travel Co., LLC*

## CERTIFICATE OF SERVICE

I hereby certify that, on February 4, 2019, a true and accurate copy of the foregoing **MARRIOTT DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR ADDITIONAL REMEDIES WITH RESPECT TO PRODUCTION OF 2013**

**AFFILIATION AGREEMENT** was filed and served with the Clerk of the Court via CM/ECF filing system, which will send notification to the following:

Michael J. Reiser
Law Office of Michael J. Reiser
1475 N Broadway, Suite 300
Walnut Creek, CA 94596
*Counsel for Plaintiffs*

Matthew C. Ferguson
The Matthew C. Ferguson Law Firm, P.C.
119 South Spring, Suite 201
Aspen, Colorado 81611
*Counsel for Plaintiffs*

Tyler R. Meade
The Meade Firm P.C.
12 Funston Avenue., Suite A
San Francisco, California 94129
*Counsel for Plaintiffs*

Linda Pham Lam
Michael Schrag
Gibbs Law Group LLP
505 14th Street, Suite 1100
Oakland, CA 94612
*Counsel for Plaintiffs*

<u>*s/ Julie Eaton*</u>
Julie Eaton

*(Original on file at offices of Greenberg Traurig, LLP, pursuant to C.R.C.P. 121, § 1-26)*