IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 1:16-cv-01301-PAB-GPG

**RCHFU, LLC,** *et al.*

Plaintiffs,

v.

**MARRIOTT VACATIONS WORLDWIDE CORPORATION,** *et al.*

Defendants.

_____

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO COURT'S DECEMBER 31, 2018 SANCTIONS ORDER**
_____

Plaintiffs, by and through their undersigned counsel, submit the following Reply in Further Support of their Motion for Attorney's Fees and Costs ("Reply") pursuant to Fed. R. Civ. P. 54(d) and D.C.COLO.LCivR 54.3, and state as follows:

### I. INTRODUCTION

Plaintiffs' Fee Application is not "excessive" or "unsupported". Marriott and GT arrive at a "grossly deflated" figure in their 20-page Marriott Defendants' Opposition to Plaintiffs' Motion for Fees and Costs ("Marriott Opposition to Fees and Costs") (Dkt. No. 345)[1] — an amount that

---

[1] Plaintiffs entire Fee Application, Dkt. No. 339, including the four required affidavits and all requisite billing data, totals 118 pages. Marriott's filing in opposition is *577 pages* and is itself evidence that litigation of this magnitude is expensive. Marriott spent far more on the Opposition than the amount they would have this Court award. *Compare* Marriott Opposition to Fees and Costs, at p. 20 (using the phrase "grossly inflated").

would barely cover the transcription of the "re-depositions". Plaintiffs and their counsel have been harmed to a far greater degree than that is even sought here – **$144,743.00** for fees and **$34,979.50** for costs relating "only to the Rule 26 violation, in this action, for the non-provision of Affiliation Agreement." (Dkt. No. 330, p. 29). And Plaintiffs have provided the "specific costs and fees related to the violation." The **$34,882.50** in fees incurred for preparing the fee application should also be recoverable to keep Plaintiffs whole. Plaintiffs will forgo the time to prepare this reply, which will address Marriott's complaint about a senior attorney taking the lead on the Fee Application.[2]

Marriott and its counsel ignore the cascading injuries they have inflicted on Plaintiffs with their discovery violations. They escaped severe sanctions by calling them "mistakes," thus avoiding a bad faith finding. While this Court found that their unjustified failure did not rise to a bad faith effort to deceive, it was, as this Court predicted, "a costly and time-consuming mistake." (*Id.*, p. 20 ).

Marriott complains that Plaintiffs' Fee Application should have been just a "simple bill of costs" – but it intentionally excises language from this Court's explicit directions to "provide a detailed bill of fees and costs, complying with all rules and statutes, including local rules, setting forth specific costs and fees related only to the Rule 26 violation. . . ." Proper fee applications require strict compliance and are time consuming under the applicable rules and cases in the 10th Circuit. Plaintiffs have complied, submitting, *e.g.*, affidavits to support tasks, rates, and hours expended.

---

[2] Matthew Ferguson and his paralegal prepared the Fee Application for all four firms. Ferguson was best situated to do so – as he had focused on matters related to addressing the non-production of the Affiliation Agreement, including the immediate aftermath, the privilege log, depositions, discovery dispute, searching databases and reading depositions and discovery.

Marriott tries to litigate by attrition. They "forgot" at multiple points to turn over a key agreement, and the case proceeded to the precipice of the discovery deadline. They produce late, ignore discovery orders, fail to produce key appraisals, fail to produce Corporate Growth Committee memoranda and fail to produce the APCO records. Dozens of depositions were taken by video around the country without the Affiliation Agreement. Instead, Marriott was busy dispatching a cadre of senior lawyers from GT's New Jersey office to conduct inordinately long and oft irrelevant depositions of Plaintiffs. Instead of producing a key document, they spent hours on minutiae.

The point is that Plaintiffs find themselves still dealing with the fallout. The amount sought here is but a fraction of the fees and costs spent dealing with the substantially "unjustified" mistake. Plaintiffs have taken on a $5 billion company on behalf of 206 consumers representing $60 million in sales and many millions more collected in management fees. This is the fifth high-stakes RCDC case in the country. Plaintiffs are entitled to have their co-lead counsel work together, prepare, research, confer, strategize and attend such key and unusual "re-depositions". There was and still is significant work being done to "fix the problem(s)". Marriott's counsel appears here to quibble over hotel bills and count minutes in depositions. They footnote, parse, critique and criticize nearly every entry – including ones less than half an hour. This litigation is complex, hard fought and expensive. Marriott's discovery violations have complicated, delayed and substantially increased the costs of this litigation.

## II. PLAINTIFFS' REPLY TO MARRIOTT'S "STATEMENT OF FACTS"

3

Plaintiffs reply to the subsections in Marriott's "Statement of Facts" in the order presented. Accompanying this Reply is the Reply Declaration of Matthew C. Ferguson setting forth particular facts in response ("Ferguson Reply Decl.").

### A.   The Sanctions Order (called by Marriott the December 31 Order)

Marriott seeks absolution and even "credit," pointing out that when caught, it and GT sought to make right their mistakes over the "delayed production". But that delay was after approximately 25 liability depositions and 18 months after the Affiliation Agreement should have been disclosed, in October 2016. Marriott ignores many facts, including that the discovery violation did not only require taking re-depositions. The ramifications spread, including affecting the pleadings, then pending dispositive motion practice, discovery, Judge Brimmer's order on the dispositive motions, depositions, the Scheduling Order, and mediation. Plaintiffs had to review tens of thousands of pages of documents and read and study depositions, including 18 hours of the first depositions of Sobeck and Cunningham alone, as well as extensive depositions of five board members to see if they had even seen the Affiliation Agreement. Other Marriott employees will never be properly deposed. After searching ACHA's productions, ACHA's counsel had to be contacted to confirm the Affiliation Agreement had never given to the board, which approved the acknowledgment and joinder to the Agreement in April 2014. Plaintiffs' counsel had to consider the 8-page privilege log prepared by GT for the Affiliation Agreement – not produced until April 6, 2018 – a fact that Plaintiffs still contend proves Marriott's bad faith. Plaintiffs had to confer many times with Ian Marx and negotiate extensively with Dan Shea about the extensive discovery patches required.

### B.   Plaintiffs are Entitled to *All* the Fees Related to Re-depositions

In Subsection B of the Opposition's Statement of Facts, GT would like to credit itself for "maximiz[ing] efficiencies" for a tandem trip to Orlando to conduct the Steven Weisz, CEO, and Lani Kane-Hannan depositions, which were both delayed due to Marriott's failed motion for a protective order and its other late productions – as Plaintiffs' counsel were about to catch flights in early April 2018. The $85,000-plus spent by Plaintiffs' counsel addressing the revised scheduling order, going through dozens of depositions, reconsidering the very structure of the affiliation, discovery, and preparing for and reconvening depositions is both reasonable and necessary. The hours are properly documented.

It was Plaintiffs who sought to minimize their expenses and time and who had every interest in minimizing. GT is paid by the hour and is tasked by Marriott to employ a no-holds-barred defense. There can be little doubt that Marriott and GT worked just as hard as Plaintiffs' counsel – but they had the benefit of access to the executives and answers. But Marriott tries to attack even those tasks.[3] Marriott's discovery violation and GT's "mistakes" were the sole reason for searching the databases, conferring with GT, studying ramifications of the missing affiliation agreement on pleadings, briefings, status reports and orders, extending deadlines, negotiating more discovery, arranging for and noticing depositions, arranging travel, preparing for and conferring about "re-depositions", conducting depositions and propounding written discovery. Plaintiffs' counsel, at Marriott's insistence, prepared for, flew to Orlando (working on flights) and conducted the depositions of MVW's CEO, COO, Executive Vice President/Chief Development and Product Officer and Vice President of Asset Management in four straight days. Two lawyers did this and

---

[3] It is true that some deposition questions may have been asked that were not about the Affiliation Agreement – but they were also about not-produced records.

had an associate attorney assisting. The entire and complex MVW affiliation regime took many hours to unravel in order to put the case back on track.

Plaintiffs reply to Marriott's assertions about the number of hours expended, their charts and efforts to reorganize in the Ferguson Reply Decl. at ¶¶ 5, 10-13. Plaintiffs also reply to Marriott's somewhat desperate argument that, because Messrs. Reiser and Meade stated on the record, as did GT lawyers, that they were counsel in the two California cases, the fees for the Aspen Affiliation Agreement have been paid in settlement for other cases. They have not been "paid" for work on the Aspen Affiliation Agreement. Ferguson Reply Decl. at ¶ 9.

### C.   All Fees Sought are Attributable to the Non-Production of the Affiliation Agreement

Plaintiffs' reply to Marriott's facts on this point is set forth in the Ferguson Reply Decl. ¶¶ 10-13.

### D.   Plaintiffs Are Entitled to Fees for the Fee Application.

Marriott's position that this Court should not award fees for the fee application would further injure Plaintiffs and frustrate the very purpose of compensating Plaintiffs in the first place. The Tenth Circuit has recognized that the time spent on fees applications can be significant. *See, e.g.*, *Case v. Unified Sch. Dist. No. 233, Johnson Cty., Kan.*, 157 F.3d 1243, 1254 (10th Cir. 1998) (a civil rights case citing decisions and noting, before remanding, that "[i]t would be inappropriate to conclude that spending eighty hours on a fee request of this magnitude is outrageously unreasonable or excessive."). That time can include compiling the billing requests. *Glover v. Heart of Am. Mgmt. Co.*, No. CIV. A. 98-2125-KHV, 1999 WL 450895, at *2 (D. Kan. May 5, 1999).

Marriott complains that Plaintiffs elected to file an "elaborate" motion. Plaintiffs followed the Sanctions Order and all applicable rules. There is no such thing as a simple Fee Application in

6

this Court. Had Plaintiffs made a simpler application not containing the requisite data, facts, or analysis, Marriott would be responding that it was not enough. The Court has directed the application include "cost/expenses/fees Plaintiffs had to expend to otherwise fix the problem(s), *e.g.*, extra deposition(s), travel, etc." (Dkt. No. 330, p. 30). As set forth in the Ferguson Reply Aff. at ¶ 14, the time spent on fees applications is significant. It made sense for him to prepare this application. *Id*. ¶ 15,

### E.  Plaintiffs' Costs are Reasonable and Allowed under the Sanctions Order

As set forth in the Ferguson Reply Aff. ¶¶ 16-17, all costs should be awarded that related to "fixing" the problems.

### III.  ARGUMENT

### A.  Standard

Marriott wants it both ways. On the one hand, it argues how rigorous the District Court must be in its review. It argues that the applicant must be precise and submit evidence of the hours and rates. On the other hand, it criticizes Plaintiffs for filing an "elaborate motion". Plaintiffs meet the criteria laid out by *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) and subsequent cases. *See, e.g.*, *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983); *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). Marriott might not want to recognize the cost or like to face the damage it has done, but that is not the standard. For example, here:

> (1) all the tasks itemized here would normally be billed to a paying client;
> (2) the number of hours spent on each task were necessary and reasonable;
> (3) this is a complex case, made all the more complex by discovery violations;
> (4) Plaintiffs have pursued reasonable strategies;
> (5) Plaintiffs' fees and costs here are a direct result of "the maneuvering of the other side";
> (6) "potential duplication of services" by multiple lawyers – only Reiser and Ferguson were tasked to address the issues.

.

Marriott's reliance on *Geiger v. Z-Ultimate Self Defense Studios, LLC*, 2015 WL 176224, at *1 (D. Colo. Jan. 13, 2015), is misplaced. In that case, involving the spoliation of evidence, Magistrate Judge Boland found that defendants' discovery violation caused "slight" prejudice to plaintiffs because the missing evidence was available elsewhere and the probative value was not great. The discovery violation here, in contrast, goes to the operating agreement at the heart of the affiliation of Marriott Vacation Club and the Ritz-Carlton Club. Its probative value could not be greater.

### B. Attorneys' Fees of $142,743 Were Necessarily Incurred, Are Attributable and Are Recoverable.

Plaintiffs' counsel's hours were necessary and reasonable.

Marriott tries to narrow Plaintiffs' efforts to a few hours taking depositions, ignoring the many byproducts of the discovery violation. Marriott asserts that hours spent on dealing with the fallout, including preparing and taking re-depositions of the most important witnesses, are duplicative. Complex litigation often requires multiple lawyers, especially when complicated by the other party. Plaintiffs dispatched Reiser and Ferguson to Orlando to conduct depositions of four of MVW's highest level executives.[4] They were prepared and had the assistance of the junior associate who is charged with the entire database of productions and discovery. They did this in four long days – and were highly prepared. Meade, Schrag, and Lam were busy on the sanctions motion but also on the many other impacts that the discovery violations had on substantive issues.

---

[4] GT would never send one partner to conduct the depositions of a CEO, a COO, a VP and a Director in four days in a large case. They had 3 to 4 lawyers at these depositions themselves.

8

The time sought for them is reasonable. *New Mexico Citizens for Clean Air Case & Water v. Espanola*, 72 F.3d 830, 835 (10th Cir. 1996), is a case Marriott should find no solace in.[5]

Plaintiffs' counsel have stood down Marriott's war of attrition and discovery shenanigans for over three years now. They are highly motivated to prosecute the case efficiently. Every conference was necessary. There are no in-person meetings as counsel are acting as a virtual law firm. The collaboration creates efficiency, with Reiser and Ferguson conducting the bulk of discovery and depositions and other lawyers performing the legal writing, pleadings, motions, etc. More junior lawyers are dispatched to defend Plaintiffs' depositions, conducted in contrast by GT partners or very senior lawyers (with 30 to 40 years of experience).

Marriott and GT seek a dig at Ferguson for being a partner and the one to prepare the Fee Application. GT has the luxury of legions of $550 junior partners and $450 per hour associates[6] to delegate to. Ferguson was the lawyer on the case with the most knowledge of what was done and who was doing it. He did the bulk of the work with Reiser on the discovery and related issues. He knows how to do Colorado fee applications. It made little sense to delegate this application to junior lawyers who were not directly involved. They would have taken twice as long, and Ferguson

---

[5] Marriott also misstates the holding in *Espanola*—Marriott asserts that the Tenth Circuit held that "the district court did not abuse its discretion in reducing fees as excessive and unreasonable where plaintiff employed four attorneys and fees were sought for time spent conferring about the case"; instead, the Tenth Circuit directed the district court to consider, on remand, issues such as duplication. *New Mexico Citizens for Clean Air & Water v. Espanola*, 72 F.3d 830, 835 (10th Cir. 1996) (cited in Marriott Opp. at pp. 12-13).

[6] Magistrate Judge Craig B. Shaffer found reasonable hourly rates for Greenberg Traurig's Denver office on a patent matter default judgment to be $535.00 for an "Of Counsel" with 16 years' experience; $395.00 per hour for an associate with 7 years' experience; and $175.00 for 3 paralegals. *Dun-Rite Home Improvements, Inc. v. Dun-Rite, LLC*, No. 15-CV-00316-WYD-CBS, 2016 WL 11384331, at *8 (D. Colo. Feb. 2, 2016), report and recommendation adopted, No. 15-CV-0316-WYD-CBS, 2016 WL 1178276 (D. Colo. Mar. 28, 2016).

would have had to worked on it extensively regardless. Ferguson would have preferred to have been advancing this case substantively or working for his other clients. Instead, he had to deal with the detritus of GT's mistakes.  Nonetheless, Plaintiffs will forgo the 10 to 12 hours taken to prepare this reply in order to address Marriott's concern about the hourly rate for a senior lawyer – the effect being to lower the rate overall.

Dated: February 19, 2019

**REISER LAW, P.C**.

____/s/ Michael J. Reiser_____
Michael J. Reiser, # 16161
1475 N. Broadway, Suite 300
Walnut Creek, CA 94596
Telephone: (925) 256-0400
E-mail: michael@reiserlaw.com

**GIBBS LAW GROUP, LLP**

____/s/ Michael L. Schrag_____
Michael Schrag (CA State Bar # 185832)
Linda Lam (CA State Bar# 301461)
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: (510) 350-9718
E-mail: mls@classlawgroup.com
E-mail: lpl@classlawgroup.com

**THE MATTHEW C. FERGUSON LAW FIRM, P.C.**

_____/s/ Matthew C. Ferguson_____
Matthew C. Ferguson, #25687
119 South Spring, Suite 201
Aspen, Colorado 81611
Telephone: (970) 925-6288
E-mail: matt@matthewfergusonlaw.com

**THE MEADE FIRM, P.C.**

____/s/ Tyler Meade_____
Tyler Meade (CA State Bar # 160838)
12 Funston Ave., Suite A
 San Francisco, CA 94129
Telephone: (510) 843-3670
E-mail: tyler@meadefirm.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 19th day of February 2019, a true and accurate copy of the foregoing **PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO COURT'S DECEMBER 31, 2018 SANCTIONS ORDER** was served via CM/ECF filing system upon following:

    Jessica Black Livingston, Esq.
      *jessica.livingston@hoganlovells.com*
    Hogan Lovells US LLP
    1200 Seventeenth Street, Suite 1500
    Denver, Colorado 80202

    Naomi G. Beer, Esq.
      *BeerN@gtlaw.com*
    Greenberg Traurig, LLP
    1200 17th Street, Suite 2400
    Denver, Colorado 80202

    Ian S. Marx, Esq.
      *MarxI@gtlaw.com*
    Philip R. Sellinger, Esq.
      *SellingerP@gtlaw.com*
    Greenberg Traurig, LLP
    500 Campus Drive, Suite 400
    Florham Park, New Jersey 07932

                        */s/ Virginia O'Keeffe*
                            Virginia O'Keeffe

4835-4863-4247, v. 1