IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 1:16-cv-01301-PAB-GPG

**RCHFU, LLC,** *et al.*

Plaintiffs,

v.

**MARRIOTT VACATIONS WORLDWIDE CORPORATION,** *et al.*

Defendants.

___

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO AMEND SCHEDULING ORDER AND COMPLAINT**

___

## I. INTRODUCTION

Accepting the Court's invitation in its December 31, 2018 order ("Order") sanctioning the Marriott Defendants for their late production of the 2013 Affiliation Agreement, Plaintiffs propose adding allegations in the Seventh Amended Complaint ("7AC") based on facts Plaintiffs learned from the 2013 Affiliation Agreement (7AC, Dkt. No. 337-3 at ¶¶ 48, 92-100, 113, 119, 133). In addition, the 7AC includes allegations based on facts learned in other late-produced documents. ¶¶ 9-10, 55-58. The 7AC adds no new causes of action.

Marriott does not contest the amendments regarding the 2013 Affiliation Agreement, which lend further support to a theory of liability contained in Plaintiffs' first and third causes of action in prior complaints: that the Association breached its duty of reasonable care, and, more significantly, that Marriott aided and abetted that breach. The Sixth Amended Complaint

1

("6AC"), Dkt. No. 250, alleged that the Association failed "to act as a reasonably prudent fiduciary would have acted under the same or similar circumstances." 6AC ¶ 89.[1] The proposed amendments in the 7AC flesh out how entering into the MVC affiliation without requesting, obtaining or reviewing the 2013 Affiliation Agreement is a breach of the duty of care. The proposed 7AC also provides detailed allegations explaining how Marriott's concealment of that agreement from the board members evidences its aiding and abetting of this breach. While the Association opposes them, these amendments were expressly contemplated in the Order, which invited Plaintiffs to "[r]equest any other remedies . . . meant to correct the prejudice suffered by non-provision of the Affiliation agreement, e.g., *amendment of claims* . . ." Dkt. No. 330 at p. 30. (emphasis added). Moreover, these amendments do not prejudice the Association because the claim is already live in the case. Nor are the amendments regarding the 2013 Affiliation Agreement futile because, contrary to the Association's argument, neither the economic loss rule nor the business judgment rule bars the breach of duty of care claim.

Conversely, Marriott, but not the Association, complains about proposed amendments based on facts gleaned from late-produced corporate documents showing that Marriott's misconduct dates back to mid-2011 (as opposed to mid-2012 as described in the 6AC, ¶ 59). Contrary to Marriott's opposition, the 6AC alleges breaches of fiduciary duty that precede the actual affiliation date. *See e.g.,* Dkt. No. 250 at ¶¶ 59-92. The proposed allegations in the 7AC describe in greater detail Marriott's high-level decisions to "re-engineer" the RCDC product and market broad access to RCDC properties (including Ritz-Aspen) to MVC points purchasers.

---

[1] Earlier versions of the complaint included the same allegation. *See, e.g.,* Second Amended Complaint, Dkt. No. 40 at ¶ 70; Third Amended Complaint, Dkt. No. 77 at ¶ 70; Fourth Amended Complaint, Dkt. No. 109 at ¶ 83.

These amendments, too, are proper because they merely add factual allegations (learned from late-produced documents) that support an existing breach of fiduciary duty claim. Nor is there any prejudice to Marriott because Plaintiffs' experts relied on these documents and produced reports in October 2018, making it clear that Plaintiffs' diminution in value damages and disgorgement remedy are based on facts included in these late-produced documents. Defendants' experts, in turn, criticized Plaintiffs' damages theories in robust rebuttal reports.

In addition to being an appropriate sanctions remedy, Plaintiffs' proposed amendments are proper under Rules 16 and 15. *See Ingle v. Dryer*, 2008 WL 1744337, *1 (D. Colo. Apr. 11, 2008). First, there is good cause to amend the scheduling order under Rule 16(b) because the Court invited Plaintiffs to seek leave to amend as a sanction for discovery violations, and Plaintiffs have been diligent in pursuing discovery as well as filing the instant motion. Plaintiffs also satisfy Rule 15(a), which dictates that leave to amend is generally only denied upon a showing of undue delay, undue prejudice, bad faith, or futility of amendment. *Id*. at *2. There is no undue prejudice here because Plaintiffs are merely providing Defendants with heightened notice of the factual basis for existing claims. Nor is there undue delay, futility or bad faith.

## II.     ARGUMENT

### A. There Is Good Cause Under Rule 16(b) to Amend the Schedule to Allow Plaintiffs to Add Allegations Concerning the 2013 Affiliation Agreement

Under Rule 16(b), a party who wishes to amend a complaint after the deadline for amending pleadings must show "good cause," which requires showing that it has been diligent in attempting to meet deadlines. *Rehlberg v. City of Pueblo*, 2011 WL 4102287, *3 (D. Colo. Sept. 14, 2011). Plaintiffs have good cause to amend the scheduling order because the Court invited Plaintiffs to seek leave to amend their complaint in its recent order finding that Marriott's late

production of the 2013 Affiliation Agreement was a discovery violation that was not substantially justified. Dkt. No. 330 at 29. Even if Plaintiffs had not pled a breach of the duty of care, the proposed amendments would be proper because they support an alternative theory related to an existing breach of fiduciary duty claim. *See Cooper & Clough, P.C. v. U.S. Bank Nat. Ass'n*, 2011 WL 5075563, *2 (D. Colo. Oct. 26, 2011) (finding good cause under Rule 16 where "all of Plaintiff's amendments are merely alternative theories related to existing claims . . . , are based on evidence already known or knowable to Defendant, and will not materially change the course of discovery in this matter in any way.").

In inviting Plaintiffs to request remedies to correct the prejudice from Marriott's failure to produce the Affiliation Agreement, this Court stated that "if Plaintiffs wish to attempt to amend, now is the time." Order at p. 30. That order gave Plaintiffs a deadline of 14 days to request such remedies, which Plaintiffs timely met by filing the instant motion. Dkt. No. 337. Plaintiffs seek leave to allege in greater detail how the Association breached its duty to exercise reasonable care by signing an Acknowledgment and Joinder to the 2013 Affiliation Agreement without even reading the affiliation agreement the Association was "acknowledging" and "joining," and that the Marriott Defendants aided and abetted that breach by concealing it. 7AC at ¶¶ 92-100, 113, 133. Plaintiffs were diligent in moving to add this claim, since it was not until December 2018 that Plaintiffs received written discovery responses from the Association admitting that the Board President, Randy Mercer, affiliated the Ritz-Aspen with the Marriott Vacation Club by signing a Joinder to the 2013 Affiliation Agreement without any Board member, including Mr. Mercer, or any attorney, including Mr. Marino, ever reading the 2013 Affiliation Agreement. *See* RFA and Interrogatory Responses, Ex. 1 to Declaration of Michael

4

Schrag ("Schrag Decl."); *Pumpco, Inc. v. Schenker Intern., Inc.*, 204 F.R.D. 667, 668-669 (D. Colo. Dec. 18, 2001) (allowing a plaintiff to assert a new cause of action based on discovery received after the deadline to amend pleadings).

Here, since each of Plaintiffs' earlier complaints already alleged that the Association breached fiduciary duties to Plaintiffs by "failing to act as a reasonably prudent fiduciary would have acted under the same or similar circumstances" (6AC at ¶ 89), the proposed amendments merely add details on *how* the Association failed to act prudently: by failing to request or review the 2013 Affiliation Agreement that they ultimately joined. *See, e.g.*, 7AC at ¶¶ 95-100.[2]

### B. Good Cause Also Exists Under Rule 16 to Allow the Proposed Amendments Based on Facts Learned from Other Documents Produced After Plaintiffs Sought Leave to File the 6AC

Good cause also exists to allow the amendments regarding pre-affiliation conduct because Plaintiffs were in no way dilatory and these amendments, too, merely give the Marriott Defendants heightened notice of Plaintiffs' existing breach of fiduciary duty claims. Plaintiffs do not seek to add any new causes of action, and no additional discovery will be necessary.

At the time Plaintiffs sought leave to file the 6AC, the Marriott Defendants had not yet produced the Corporate Growth Committee ("CGC"), Growth and Governance Council ("GGC"), and related Strategic Council documents. Meade Decl., Dkt. No. 337-1 at ¶¶ 5, 9. In fact, the Marriott Defendants did not produce the GGC documents until June 2018 – over a month *after* the Court granted leave for Plaintiffs to file the 6AC. *Id.* Thus, Plaintiffs did not have these documents before they sought leave to file the 6AC, and did not have the complete

---

[2] Even if this Court believes that the 6AC did not allege a breach of the duty of reasonable care, the amendment would be proper under *Cooper & Clough, supra*.

5

production until after they actually filed the 6AC. While the Marriott Defendants are correct that Plaintiffs had some other documents relating to the CGC, GGC, and Strategic Council, they ignore that Plaintiffs used this information to generally allege pre-affiliation wrongful conduct in prior complaints. Marriott's Opposition to Motion to Amend ("Marriott Opp."), Dkt. No. 344, at p. 9; *see, e.g.,* 6AC at ¶¶ 7-8 (alleging that starting from 2012, Defendant MVW had plans to stop developing the RCDC line). Plaintiffs only now seek to add details to those allegations at the same time they add allegations regarding the 2013 Affiliation Agreement.

Moreover, like the duty of care allegations, the new allegations regarding the Marriott Defendants' conduct simply reflect facts learned during discovery that support an existing claim. Since Plaintiffs may ultimately prove their case with facts and evidence not alleged in any complaint, Plaintiffs' proposed amendments do nothing more than provide the Marriott Defendants with heightened notice of Plaintiffs' case. *See Guidance Endodontics, LLC v. Dentsply Intern., Inc.*, 2009 WL 3672505, *7 (D.N.M. Sept. 29, 2009) (a plaintiff's proposed amendment "to add additional facts to support its existing claims" could not prejudice the defendants because the plaintiff "could present whatever admissible evidence it had to establish the elements of those claims").

The current operative complaint, the 6AC, alleges wrongdoing starting well before the actual MVC affiliation.[3] For example, the 6AC discusses the Marriott Defendants' plan to abandon its RCDC line after Defendant MVW "spun-off" from Marriott International in 2011. 6AC at ¶ 8. That section of the 6AC alleges that Marriott intended to significantly scale back on

---

[3] The Marriott Defendants were on notice of Plaintiffs' theories of liability regarding pre-affiliation conduct well before the 6AC. *See supra* n.1.

its luxury segment products (i.e., RCDC), which included selling remaining luxury inventory in bulk and stopping development of its luxury line. *Id.* The 6AC then goes on to allege that in 2012, the Marriott Defendants began floating the idea of a systematic affiliation between the Ritz-Aspen and the MVC, which would be a part of the "evolution" of the RCDC brand. *Id.* at ¶¶ 48-51. Along that storyline, the 6AC alleges the brand evolution that Plaintiffs now know more about, including Marriott's plan to "sell most of its remaining unsold Ritz-Carlton Club inventory through the Marriott Vacation Club Destinations program" to alleviate Marriott of carrying costs tied to that RCDC inventory. *Id.* at ¶¶ 58-59.

The 6AC also includes allegations that "*[a]ny* practice of allowing the use of the [Ritz-Aspen] by the MVC Members" – not just through the MVC affiliation – would be unlawful. *Id.* at ¶ 64 (emphasis added). Plaintiffs attached a 2012 cease-and-desist letter to the 6AC explaining that the Marriott Defendants' then-current pre-affiliation promotion of MVC members' usage of Ritz-Carlton interests "may constitute . . . one or more breaches of fiduciary duties." Ex. N to 6AC, Dkt. No. 250-14, at pp. 1-2. Also attached to the 6AC was a memorandum written by Philip Gosch, the same lawyer who wrote the cease-and-desist letter, stating that "[t]he Declaration is clear in its prohibition against *any timeshare or exchange usage* of the Tourist Accommodation Units other than the RC Program . . ." 6AC at ¶ 60 (citing Ex. K to 6AC). Then, after laying out how MVC members' access to the Ritz-Aspen became permanent through the affiliation, Plaintiffs stated the basis for their breach of fiduciary duty claim: Defendants' inclusion of the Ritz-Aspen "in the Marriott Vacation Club *affiliation/exchange/points program* . . ." at Plaintiffs' expense. *Id.* at ¶ 89 (emphasis added). These allegations, among others in the 6AC, make clear that Plaintiffs' case has long been about more than just the affiliation itself.

Thus, the Marriott Defendants' statement that Plaintiffs' current claims are "based only on the MVC Affiliation" is incorrect. Marriott Opp. at p. 2. Paragraphs 9-10 and 55-58 of the 7AC merely elaborate on prior allegations. For example, paragraphs 55 and 56 of the 7AC discuss Marriott's decision to "re-engineer" the RCDC brand after the spin-off in 2011, which included the goal of selling remaining RCDC inventory to the MVC trust. Those *same allegations* are at paragraphs 7 and 8 of the 6AC. The proposed new allegations merely add more evidence as to the plan's origins: it began with the GGC committee analyzing whether transferring unsold inventory to the MVC trust and merging the RCDC and MVC clubs would be profitable. 7AC at ¶¶ 55-56. The proposed 7AC also adds details about how the "re-engineering" plan further emanated from the CGC, which analyzed legal risks involved. *Id.* at ¶ 57. The 7AC then adds details on Marriott's plan for scaling back on its RCDC line, including closing RCDC sales centers and changing some to MVC sales offices, as well as pursuing formal affiliations with each homeowners' association within the RCDC. *Id.* at 58. The 6AC already included allegations on the same scheme. *See* 6AC at ¶ 8 (alleging Marriott revealed its intention in 2012 to "significantly scale[ ] back [its] development of Luxury segment vacation ownership products"); ¶¶ 50, 51, 62 (discussing Association board responses to the proposed affiliations at other RCDC properties). In sum, the proposed amendments in the 7AC are proper because they merely give the Marriott Defendants more detailed notice of existing claims.

### C. The Amendments are Proper Under Rule 15 Because There Is Neither Undue Delay Nor Prejudice to Defendants

#### 1. The Association would not suffer any prejudice

Under Rule 15, leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). A court need not grant leave to amend, however, where there

8

would be undue prejudice to the moving party, or the amendment would be futile. *Jenkins v. Duffy Crane and Hauling, Inc.*, 2015 WL 6464437, *13 (D. Colo. Oct. 27, 2015). Plaintiffs' request to more explicitly allege a breach of the duty of care claim would not result in any prejudice to the Association. "When considering a motion to amend under Rule 15(a), 'courts typically find prejudice only when the amendment unfairly affects the defendants in terms of preparing their defense to the amendment.'" *Fairfield Dev., Inc. v. J.D.I. Contractor & Supply, Inc.*, 782 F.Supp.2d 1205, 1209 (D. Colo. 2011) (citation omitted). Here, since Plaintiffs' current complaint already alleges that the Association breached fiduciary duties to Plaintiffs by "failing to act as a reasonably prudent fiduciary would have acted under the same or similar circumstances" (6AC at ¶ 89), the proposed amendments merely add details on *how* the Association failed to act prudently: in addition to its other failures, by failing to request or review the 2013 Affiliation Agreement that they ultimately joined on behalf of Plaintiffs and other Ritz-Aspen owners. *See, e.g.*, 7AC at ¶¶ 95-100.

The Association points to no additional discovery necessary to defend against the breach of the duty of care claim.[4] The Association's argument that it would have to file a new motion for summary judgment on the duty of care claim is also unconvincing. The Association has long known about Plaintiffs' claim that it failed to act as a reasonably prudent fiduciary. And under the current case schedule, Dkt. No. 328, the Association is still free to file a summary judgment on this claim. Thus, there is no prejudice.

---

[4] Plaintiffs are only requesting to re-depose Mr. Marino because they had not discovered the 2013 Affiliation Agreement before his first deposition. Further, Plaintiffs will not seek to re-depose Association board members so long as Marriott agrees that the board members' prior testimony and Association's RFA and interrogatory responses on the 2013 Affiliation Agreement are admissible at trial.

### 2. The Marriott Defendants would not suffer any prejudice

The Marriott Defendants would suffer no prejudice from Plaintiffs' amendments adding facts on pre-affiliation conduct to support existing causes of action. *See Hill v. Public Advocate of U.S.*, 2013 WL 2352269, *2 (D. Colo. May 29, 2013) (finding no undue prejudice where the plaintiffs sought leave to amend "to assert additional facts only to support . . . existing claims").

Both parties have already produced expert reports based on alleged misconduct starting from 2011.[5] Plaintiffs' expert reports, produced in October 2018, made clear that their case included wrongdoing from 2011 and thereafter. These reports were based on evidence showing that Plaintiffs' damages (and Marriott's unjust enrichment) were not confined to the 2014 MVC affiliation but, rather, resulted from earlier access that MVC points purchasers had to RCDC properties. *See, e.g.*, Robinson Report, Ex. 2 to Schrag Decl., at p. 5 (discussing Plaintiffs' allegations "that a series of actions by the Defendants, *beginning in 2011*, caused a severe reduction" in Plaintiffs' property values, and then calculating diminution in values starting from 2011) (emphasis added). Jon Simon, Plaintiffs' expert on (among other subjects) disgorgement amounts, based his report on the profits Marriott has made *since 2011* by providing MVC members access to RCDC. *See, e.g.*, Simon Report, Ex. 3 to Schrag Decl., at ¶¶ 13-15, 16(c), 16(e) (ultimately opining that MVW gained approximately $248.6 million from allowing MVC members access to RCDC from August 2011 through the end of 2017). And Dr. Chekitan Dev, Plaintiffs' expert on branding, based his report on the effects of MVW "co-branding" its MVC and RCDC lines beginning in the latter half of 2011. *See, e.g.*, Dev Report, Ex. 4 to Schrag

---

[5] The parties have not held expert depositions or any other expert discovery. Expert discovery was delayed by the Marriott Defendants' production of new documents directly relevant to both parties' expert opinions on December 28, 2018. Meade Decl. at ¶ 10.

Decl., at ¶¶ 3, 34 (citing evidence of co-branding from 2011); *id.* ¶ 41 (citing evidence of co-branding from 2012).

What is more, the Marriott Defendants had the opportunity to prepare rebuttal expert reports after Plaintiffs' produced their expert opinions on conduct starting in 2011. *See* Scheduling Orders, Dkt. Nos. 316 and 322. Indeed, the Marriott Defendants *did* produce expert opinions rebutting damages going back to 2011.

Thus, Marriott's contention that "[i]t was only when [Plaintiffs] received [Marriott's] rebuttal reports" that Plaintiffs realized their "dilemma" with a case only based on the 2014 affiliation is puzzling – since the expert reports that Plaintiffs produced *before* Marriott's rebuttal reports were based on conduct dating back to 2011. And Marriott's characterization of Plaintiffs' expert reports as advancing "an entirely new theory of damages having nothing to do with the MVC Affiliation" is also plainly inaccurate. As discussed above, this case has always been about the negative effects of MVC members' ability to access the Ritz-Aspen for a fraction of the price that Plaintiffs paid for their interests. *See, e.g.,* Second Amended Complaint filed in July 2016, Dkt. No. 40 at ¶ 70 (alleging Defendants breached fiduciary duties "through inclusion of the [Ritz-Aspen] . . . in the Marriott Vacation Club affiliation/exchange/points program"). That access began with Marriott allowing MVC points purchasers to stay in unsold developer inventory at the Ritz-Aspen. Since Marriott had a plan to sell off that inventory, MVC members would have no longer been able to access the Ritz-Aspen – had it not been for the 2014 affiliation. In other words, the affiliation made the MVC members' access *permanent.* MVC members' use of developer-owned inventory and the affiliation are part of the same storyline.

Thus, because Plaintiffs have (1) always pled wrongdoing beginning in 2011, (2) the Marriott Defendants have already produced expert reports based on conduct beginning in 2011, and (3) the parties do not need to conduct more discovery based on MVC access from before 2014, Plaintiffs' proposed amendments would cause no prejudice to the Marriott Defendants.

Lastly, the Marriott Defendants' opposition to Plaintiffs' use of the term "merger" is unwarranted. Marriott Opp. at pp. 16-18. Nowhere do Plaintiffs attempt to use "merger" to imply that the MVC affiliation is "an amalgamation of two corporations" or that MVC members have the exact same rights as RCDC owners. *See generally* 7AC. And in any event, this motion is not the proper time to oppose Plaintiffs' use of any particular term. If the Marriott Defendants find the term "merger" to be confusing or prejudicial in any way, they are free to file a motion in limine to exclude it being used at trial. *See Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 2014 WL 348637, *2 (D. Colo. Jan. 31, 2014) ("A motion *in limine* is a request for guidance by the court regarding an evidentiary question, which the court may provide at its discretion to aid the parties in formulating trial strategy.").

### 3. Plaintiffs' amendments are not futile

Contrary to the Association's assertion that Plaintiffs' proposed allegations adding detail to their breach of the duty of care claim would be futile, the business judgment and economic loss rules are inapplicable.

#### a. The business judgment rule does not apply because the Association's counsel did not provide legal advice

The Association asserts for the first time that the business judgment rule insulates it from liability because it engaged Michael Marino as counsel to negotiate the Acknowledgment and Joinder to the 2013 Affiliation Agreement, and reasonably relied on his advice. HOA Opp., Dkt.

12

342, at pp. 10-11. While the business judgment rule protects corporate directors acting in good faith from liability in some instances, it does not apply here because the Association did not rely on any actual legal advice from Mr. Marino on the propriety of the MVC affiliation.

Mr. Marino explained in his deposition that he was hired to *negotiate* some contract terms on behalf of the Association, but not *advise on the legality* or potential impact of the affiliation. Mr. Marino in fact disclaimed, for example, having any legal role when the Association hired him in March 2013. Marino Depo., Dkt. No. 325-16, 95:4-11 ("There was no presentation to me like would you be prepared to tell us, give any legal advice."). Instead, he was hired because "I knew — had knew the Ritz Marriott people, yes, sir." *Id.* at 73:9-11.

The evidence that the Association cites confirms that Mr. Marino did not provide legal advice on the potential ramifications of the affiliation itself. First, the Association points to Mr. Marino providing an overview of his duties, which was purely to review and draft contract language: "I was given [the acknowledgment and joinder document] to look at." *See* Marino Dep. 158:3–18, Ex. 3 to Assoc. Opp. Indeed, Mr. Marino consistently testified that the Association hired him to serve merely as a facilitator, and that he was hired to exploit his existing relationships with various Marriott executives. As he put it, Mr. Marino was retained "for the task of polishing up this [affiliation] agreement," Opp. to Assoc. MSJ, Marino Depo., Ex. 16 at 140:9-10, and even expressly testified that he never gave legal advice on the MVC affiliation in relation to the declaration and its potential impact on Ritz-Aspen members, *id.* at 51:24-25, 52:1-4, 58:10-16 ("[W]ere you at all involved in analyzing the impacts of any affiliation through Lion and Crown with Marriott Vacation Clubs; were you ever at all involved in analyzing that for the Aspen Highlands property?" "A No, sir."), 177:23-178:8 (saying he never did and "would not be qualified

13

to make that determination" about the legality of the Aspen Highlands affiliating with other programs).[6] The Association provides no other evidence that it sought legal advice on the affiliation, whether from Mr. Marino or any other attorney.[7]

Thus, given the deposition testimony that the Association itself cites to, it did not rely on any advice of counsel with respect to its decision to enter into the MVC affiliation. The business judgment rule is therefore inapplicable.

### b. The economic loss rule does not apply

In Colorado, "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Town of Alma v. AZCO Constr., Inc*., 10 P.3d 1256, 1264 (Colo. 2000).

While the Association does have duties arising from the Declaration, it also has independent fiduciary duties to Plaintiffs that arise from its special relationship with them as a homeowners' association. *S K Peightal Eng'rs, Ltd v. Mid Valley Real Estate Sols. V, LLC*, 342 P.3d 868, 872 (Colo. 2015). The economic loss rule does not apply where the duty at issue arose from a judicially recognized special relationship,[8] "*even if the relevant contracts contain the*

---

[6] Plaintiffs have never taken a contrary position. Plaintiffs seek to re-depose Mr. Marino to ask him questions on his work negotiating the Acknowledgement and Joinder, including whether he even reviewed the 2013 Affiliation Agreement. *See, e.g*., Dkt 337, at p. 4. That is consistent with statements Plaintiffs made in their opposition to the Association's summary judgment motion – where Plaintiffs asserted that Mr. Marino was not retained to provide any legal advice on the propriety of the MVC affiliation itself. Opp. to Assoc. MSJ, Dkt. No. 325 at pp. 2, 7, 10, 11.
[7] Mr. Marino testified at his deposition that he was not a Colorado attorney. *Id.* at 51:1-2; *see also id.* at 52:23-25, 53:1-2 (stating that if necessary he would coordinate with others, "including recommendation of local Colorado counsel"). There is no indication that he coordinated with local counsel about the affiliation.
[8] Courts recognize that a homeowners' association has a special relationship with its homeowners and generally owes them fiduciary duties, including the duty of loyalty. *Woodmoor Imp. Ass'n v. Brenner*, 919 P.2d 928, 933 (Colo. App. 1996); *Semler v. Hellerstein*, 2016 COA 143, ¶ 36.

*identical duty.*" *Id.* at 875 (emphasis added). *See* Order on Motion to Dismiss, Dkt. No. 210 at p. 18 (finding Plaintiffs' breach of fiduciary duty claim is not barred by economic loss rule because the Association has a special relationship with Plaintiffs).

In any case, the duties alleged in Plaintiffs' claim for a breach of the duty of reasonable care are distinct from the ones established by the Declaration. Section 6.8 of the Declaration requires the Association to act in a "fair and just manner" in accordance with "standards of good faith and reasonableness." Plaintiffs allege violations of, inter alia, the duty to use reasonable care in the exercise of the Association's duties — a different standard. The duty to exercise reasonable care and skill is one of the core duties that any fiduciary owes to its beneficiary. *See John Doe (1) v. Archdiocese of Denver*, 413 F.Supp.2d 1187, 1191-92 (D. Colo. 2006) ("Colorado courts look to the Restatement to determine the extent of fiduciary obligations, which include a duty to exercise reasonable care and skill."). Thus, the proposed amendments are not barred by the economic loss rule and are not futile.

### III.     CONCLUSION

For all the above reasons, this Court should grant Plaintiffs leave to file the 7AC.

Dated: February 19, 2019                               Respectfully submitted,

*/s/ Michael Schrag*
Michael Schrag (CA State Bar # 185832)
GIBBS LAW GROUP LLP
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: (510) 350-9700
E-mail: mls@classlawgroup.com