IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 16-01301 PAB

RCHFU, LLC, et al.

     Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al.

     Defendants.

**MARRIOTT DEFENDANTS' REPLY IN FURTHER SUPPORT OF REQUEST FOR ENTRY OF ORDER IMPLEMENTING FOURTH ADDITIONAL CASE SCHEDULE ADDENDUM AND REQUEST FOR CONFERENCE**

Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC, The Cobalt Travel Company, LLC, and The Lion & Crown Travel Co., LLC (collectively, "Marriott Defendants") respectfully submit this Reply in Further Support of Request for Entry of Order Implementing Fourth Additional Case Schedule Addendum and Request for Conference, in response to Plaintiffs' Response to the Marriott Defendants' Status Report and Request for Entry of Order Implementing Fourth Additional Case Schedule Addendum, filed on March 13, 2019 (ECF # 362) ("Plaintiffs' Response"). As summarized below, the Marriott Defendants disagree with the proposed schedule set forth in Plaintiffs' Response and join in Plaintiffs' request for a telephonic conference.

The proposed deadlines in Plaintiffs' Response diverge in two ways from those proposed by the Marriott Defendants' initial Status Report (ECF # 361)(the "March 7 Report"). Plaintiffs propose that the deadline for their service of supplemental reports from their two previously-

disclosed experts, Dr. Dev and Mr. Simon, be extended seven days, from March 13 to March 20, 2019, and that all subsequent deadlines be extended by those same seven days. The Marriott Defendants agree to that proposed deviation.

Plaintiffs' response has a second deviation with which the Marriott Defendants strongly disagree and oppose. Plaintiffs propose that they also be permitted to "serve a report from ***an additional expert*** who will provide statistical modeling and analysis of the new data." Response at p. 2 (emphasis added). However, the deadline for identifying affirmative experts and serving initial reports was October 12, 2018 and plaintiffs cannot establish sufficient cause to amend the Case Scheduling Order to permit such disclosures now. Moreover, Plaintiffs' proposed reliance on a new expert violates agreements entered into by the parties to resolve a discovery dispute, and on which the Marriott Defendants relied, in making available to Plaintiffs documents, information and depositions to which they were not entitled after the fact discovery deadline had passed.

As summarized in the March 7 Report, in early January the parties were very much in dispute as to issues relating to the Marriott Defendants' production of certain documents on December 28, 2018. The documents produced on December 28, 2018 were only made relevant in this litigation because of Plaintiffs' initial expert reports that contain unsupported opinions. That dispute was resolved when the Marriott Defendants made several bargained-for concessions, and agreed to provide the following discovery, to which the Plaintiffs were not entitled, but which the Marriott Defendants were willing to provide to resolve the parties' dispute and move this case forward without the need for judicial intervention. Specifically, and as is spelled out in a January 11, 2019 letter (a copy of which is attached as Exhibit A), the Marriott Defendants and Plaintiffs agreed that:

2

- The Marriott Defendants would produce certain backup data and documents.

- The Marriott Defendants would make two witnesses (Messrs. Peters and Sonberg) available for deposition.

- Plaintiffs' experts Simon and Dev would be permitted to submit supplemental affirmative reports 14 days after the depositions of Messrs. Peters and Sonberg are completed (such amendments would be limited to the SMS Survey, SMS Reports and the MVC Points pricing spreadsheets). The Marriott Defendants' experts King and Israel would submit similarly limited rebuttal reports within 14 days of receiving Plaintiffs' supplemental reports.

- The deadline for completion of expert depositions would be 45 days after the service of these supplemental reports.

The parties further agreed that the foregoing would be embodied in an agreed-upon amendment to the Court's Case Management Order, to be submitted to the Court (as per past practice), for the Court's entry.

At no time during the discussions and negotiations that lead to this agreement did Plaintiffs raise the issue of identifying and serving a wholly new report from an additional expert on an entirely new topic. On January 15, pursuant to this agreement, the Marriott Defendants produced the additional backup data and documents. On January 28, there was a telephone conference of counsel during which Plaintiffs' counsel expressed dissatisfaction with the documents produced on January 15. Counsel reaffirmed the parties' agreement to the terms set forth in the January 11 letter and their commitment to make the necessary amendment to the current Case Scheduling Order to reflect that agreement. During this call Plaintiffs' counsel made no mention of any new expert. The next week, counsel engaged in numerous and significant discussions concerning Plaintiffs' requests for additional documents and information, which culminated in a written agreement entered on February 7, 2019. Again, at no time during these discussions did Plaintiffs' counsel mention or seek the Marriott Defendants' agreement to a new expert.

In reliance upon the parties' agreement, the Marriott Defendants produced additional documents and on February 13 Plaintiffs took the depositions of two witnesses produced by the Marriott Defendants.

As summarized in the March 7 Report, the Marriott Defendants prepared a draft Fourth Additional Case Schedule Addendum to make the necessary, agreed-upon revisions to the Case Scheduling Order. Consistent with the parties' discussions and agreements, the draft contained deadlines for Plaintiffs' service of supplemental reports from their previously identified experts Dev and Simon and the service of supplemental rebuttal reports from the Marriott Defendants' experts King and Israel. An initial draft of the proposed Addendum was circulated on February 14, followed by revised drafts on February 20 and 28. Plaintiffs never at any time during the weeks these drafts were being circulated made any mention of any new experts. The Marriott Defendants certainly did not agree to permit Plaintiffs to untimely identify and serve a report from a new affirmative expert. Obviously, none of these draft Addenda contained any provision regarding the service of a report from a previously unidentified expert and at no time upon receiving these drafts did Plaintiffs' counsel request that such a provision be included.

After Plaintiffs received the benefit of the Marriott Defendants' performance under their agreements to resolve the parties' discovery disputes (which, as described above, involved the Marriott Defendants' production of documents, information and deposition witnesses to which Plaintiffs were not entitled), and having never once raised the issue while the Marriott Defendants performed their end of the bargain, on March 11, 2019, Plaintiffs for the first time asked for the Marriott Defendants to agree to permit Plaintiffs to serve a report from a new expert.

The Marriott Defendants object to Plaintiffs' service of any further expert reports other than the supplemental reports of Dr. Dev and Mr. Simon concerning the SMS Survey, SMS Reports and the MVC Points pricing spreadsheet information produced on December 28, 2018. As discussed above, the Marriott Defendants entered into an agreement to resolve a discovery dispute and this agreement, quite clearly, did not contain any consent for Plaintiffs to introduce a new expert. Having received the benefits of this agreement, Plaintiffs now want a remedy that was not discussed, bargained for or agreed to and as to which the Marriott Defendants object.

Plaintiffs argue that the Marriott Defendants' production of documents on December 28 justifies their request for an order permitting them to add a new expert. However, Plaintiffs never sought in discovery the documents that the Marriott Defendants produced on December 28 and the Marriott Defendants had no reason to believe they would use those documents until Plaintiffs served their initial expert reports. As such, Plaintiffs have not demonstrated, and cannot, that they would be entitled to an order permitting them to serve an affirmative expert report beyond the October 12, 2018 deadline. Nothing about the production of documents on December 28 warrants a modification of the deadline for affirmative expert identification and reports.[1] The foregoing circumstances do not constitute sufficient cause that would justify an amendment to the Case Scheduling Order permitting Plaintiffs to identify and rely upon a new expert.

*   *   *   *

---

[1] As explained in the March 7 Report, after reviewing Plaintiffs' initial expert reports, Greenberg Traurig explored with the Marriott Defendants topics that had not been the subject of prior discovery demands or areas of inquiry in written discovery and, in that regard, learned of certain documents concerning these subjects. The Marriott Defendants believed that their experts might find these documents helpful in preparing rebuttal reports and, as a result, provided the documents to their rebuttal experts. On December 28, 2018, the Marriott Defendants amended their prior disclosures pursuant to Rule 26 to identify the documents and knowledgeable witnesses and produced the documents. These documents were not previously listed in the Marriott Defendants' Rule 26 Disclosures because they did not have reason to believe that they were or would be relevant to the claims or defenses in the case, or that such documents would be used to support their defenses. Nor were such documents encompassed by any of Plaintiffs' discovery requests.

The Marriott Defendants are and remain amenable to the entry of an Order implementing the following changes to the Case Scheduling Order (which encompass the additional week requested by Plaintiffs):

- **Plaintiffs' Deadline to Serve Supplemental Affirmative Reports of Dr. Dev and Mr. Simon concerning the SMS Survey, SMS Reports and the MVC Points pricing spreadsheet information produced on December 28, 2018**: March 20, 2019

- **Defendants' Deadline to Serve Supplemental Rebuttal Reports of Dr. Israel and Dr. King**: April 17, 2019

- **Expert Discovery Cut-off**: May 30, 2019

- **Dispositive Motions**: June 13, 2019

- **Deadline to File Daubert Motions**: June 21, 2019

- **Deadline to File Motions *in Limine***: June 28, 2019

The Marriott Defendants object to the entry of an Order that would permit Plaintiffs to serve a report of "an additional expert who will provide statistical modeling and analysis of the new data." The Marriott Defendants therefore join in Plaintiffs request for a telephonic conference.

Dated: March 15, 2019

Respectfully submitted,

GREENBERG TRAURIG, LLP

By: *s/ Ian S. Marx*

Philip R. Sellinger
Ian S. Marx
1200 Seventeenth Street, Suite 2400
Denver, Colorado 80202
Tel: 303.572.6500 / Fax: 303.572.6540
Email: SellingerP@gtlaw.com, MarxI@gtlaw.com
*Attorneys for the Marriott Defendants*

CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of March, 2019, a true and accurate copy of the foregoing **MARRIOTT DEFENDANTS' REPLY IN FURTHER SUPPORT OF REQUEST FOR ENTRY OF ORDER IMPLEMENTING FOURTH ADDITIONAL CASE SCHEDULE ADDENDUM AND REQUEST FOR CONFERENCE** was filed and served with the Clerk of the Court via CM/ECF filing system which will send notification to the following:

Michael J. Reiser
Law Office of Michael J. Reiser
1475 North Broadway, Suite 300
Walnut Creek, California 94596
*Counsel for Plaintiffs*

Matthew C. Ferguson
The Matthew C. Ferguson Law Firm, P.C.
119 South Spring, Suite 201
Aspen, Colorado 81611
*Counsel for Plaintiffs*

Tyler Meade
The Meade Firm P.C.
12 Funston Avenue, Suite A
San Francisco, California 94129
*Counsel for Plaintiffs*

Linda Pham Lam
Michael Schrag
Gibbs Law Group LLP
505 14th Street, Suite 1100
Oakland, CA 94612
*Counsel for Plaintiffs*

Jessica Black Livingston
Andrew Nussbaum
Hogan Lovells US LLP
1601 Wewatta Street, Suite 900
Denver, Colorado 80202
*Counsel for Aspen Highlands
  Condominium Association*

*s/ Rebecca Zisek*
    Rebecca Zisek

*(Original on file at offices of Greenberg Traurig,
LLP, pursuant to C.R.C.P. 121, § 1-26)*

# EXHIBIT A


GreenbergTraurig

Ian S. Marx
Tel 973.360.7951
Fax 973.301.8410
MarxI@gtlaw.com

January 11, 2019

**VIA E-MAIL**

Michael J. Reiser, Esq.
Reiser Law, P.C.
1475 North Broadway, Suite 300
Walnut Creek, California 94596

Tyler R. Meade, Esq.
The Meade Firm P.C.
12 Funston Avenue, Suite A
San Francisco, California 94129

Re:   *RCHFU, LLC v. Marriott Vacations Worldwide Corp.*
       **Civil Case No. 16-01301 PAB (D. Colo.)**

Dear Counsel:

We write in response to your letter of January 8, 2019 in which you assert that certain documents produced by us on December 28, 2018 were improperly withheld during discovery. We categorically reject that assertion. The template SMS survey, bates nos. RCDC 75966 ("SMS Survey"), reports summarizing response percentages related to two questions on the SMS Survey, bates nos. RCDC 75967-68 ("SMS Reports"), and two Marriott Vacation Club ("MVC") Points pricing spreadsheets, bates nos. RCDC 75969-70 were not requested in discovery, nor did we intend to use these documents in our case-in-chief. It was not until we reviewed the opinions offered in Plaintiffs' affirmative expert reports that we considered that our experts might find such documents helpful in preparing rebuttal reports. At that point, we updated our Rule 26 Initial Disclosures and produced the documents. As shown below, we acted appropriately in every respect in this matter.

**The SMS Survey and SMS Reports were never requested**

As an initial matter, the SMS Reports (RCDC 75967-68) are a compilation of data related to two questions included in the SMS Survey. The SMS Reports were only recently created by the Consumer Insights and Research Department of MVW to provide the rebuttal experts with a summary of certain information sought by those experts after the Marriott Defendants received your experts' affirmative reports.

Created and maintained by MVW's Consumer Insights and Research Department, which is managed by Urcil Peters, the SMS Survey was regularly provided to purchasers and potential purchasers of MVC Points to assess a variety of factors including their experience with the sales presentation, their perceptions as consumers and to determine the factors that could or did go into their buying decisions. Mr. Peters was not one of the agreed-upon custodians whose documents were compiled and reviewed as part of the

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BOSTON
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON*
LOS ANGELES
MEXICO CITY+
MIAMI
MILAN**
NEW JERSEY
NEW YORK
ORANGE COUNTY
ORLANDO
PALM BEACH COUNTY
PHILADELPHIA
PHOENIX
ROME**
SACRAMENTO
SAN FRANCISCO
SHANGHAI
SILICON VALLEY
TALLAHASSEE
TAMPA
TEL AVIV^
TYSONS CORNER
WARSAW~
WASHINGTON, D.C.
WHITE PLAINS
*OPERATES AS GREENBERG TRAURIG MAHER LLP
+OPERATES AS GREENBERG TRAURIG, S.C.
^A BRANCH OF GREENBERG TRAURIG, P.A. FLORIDA, USA
˜OPERATES AS GREENBERG TRAURIG GRZESIAK sp.k.
**STRATEGIC ALLIANCE

Michael J. Reiser, Esq. and Tyler R. Meade, Esq.
January 11, 2019
Page 2

---

discovery process in this case. The SMS Survey does not concern or even mention the "MVC Affiliation."

      The SMS Survey and SMS Reports were not responsive to any of the document requests or interrogatories you mention. For example, Request for Production No. 21 of your Third Set of Document Requests called for "all documents concerning the use of the Ritz Properties by users that were not RCDC members from 2011 to the present." While you point out that the word "concerning" is defined broadly, the key word in that request is "use." As noted, the SMS Survey was conducted to determine, among other reasons, what factors influenced the buying decisions of purchasers and potential purchasers of MVC Points. The SMS Survey did not concern any of the Respondents' "use" of the Ritz Properties. The Ritz Properties were mentioned in the SMS Survey questions where approximately 28 features of MVC Points ownership were listed and the survey respondents were asked to select and rank the features that were important to them when deciding whether to purchase MVC Points. Had you sought surveys of MVC Points purchasers, you certainly could have formulated a demand that would have put us on notice of that.

      Even if the SMS Survey and SMS Reports had been responsive to Request 21, we objected to this Request on the ground that the discovery sought was overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The parties' joint submission to Judge Gallagher on February 11, 2018 (from which you selectively and misleadingly quote) undercuts your position. The relevant issue on that chart (Issue I, which you framed), concerned your disagreement with our objection to the production of "documents pertaining to revenues, profits, commissions, and fees stemming from affiliating the Ritz-Aspen with Marriott Vacation Club." You contend these documents were sought in Requests 6, 7, 14-21 and 23. Your January 8 letter indicated that we had agreed to reconsider our objections to these Requests and that such reconsideration resulted in our production of "2,676 pages of documents on February 1, 2018." However, your letter omits the part of our submission to Judge Gallagher which states that these documents were being produced "[n]otwithstanding our objections to these Requests, which we continue to believe are proper" and our very specific explanation about what we were agreeing to produce in response to all of these Requests, and that such production would only "include the overall figures relating to revenue derived and expenses incurred in connection with sales of the Marriott Vacation Club Destinations points product for the years 2012 through 2017." You agreed to and accepted our production of documents in response to Requests 6, 7, 14-21 and 23, as narrowed.

      The SMS Survey and SMS Reports were also not responsive to any of the other Requests or Interrogatories you have identified:

- Request for Production 13 called for all documents "not previously produced or disclosed relating to the MVC Affiliation that Marriott Defendants located during the search term review, but which Marriott Defendants did not produce as

Michael J. Reiser, Esq. and Tyler R. Meade, Esq.
January 11, 2019
Page 3

---

determined by them to be outside of the parameters of the specified search terms." As noted, the SMS Survey was maintained by the Consumer Insights and Research Department, which is managed by Urcil Peters. Mr. Peters was not an agreed-upon ESI custodian. Thus, the SMS Survey was not located during the parties' agreed-upon protocol for the review and production of electronically stored documents. For the same reason, the SMS Survey documents were not required to be identified in response to Interrogatory 8, which asked for the identification of documents "not previously produced or disclosed relating to the MVC Affiliation that Marriott Defendants located during the search term review, but which Marriott Defendants did not produce as determined by them to be outside of the parameters of the specified search terms."

- Request for Production 22 called for "all documents created, received, or sent at any time, including prior to July 2012, regarding Marriott Defendants' reason, purpose, rationale or justification for allowing the MVC Affiliation to the Ritz-Aspen." The SMS Survey assessed consumer preferences affecting decisions to purchase MVC Points; it did not concern "the Marriott Defendants' reason, purpose, rationale or justification for allowing the MVC Affiliation to the Ritz-Aspen."

- Request for Production 23 called for "all Annual Strategic Plans, Annual Market Plans, Sales Analysis Reports, and all Sales Reports for 2012-2016 for MVCI and the Ritz-Carlton Destination Club, Aspen Highlands." The SMS Survey and SMS Reports do not fit any of these categories. Additionally, we objected to this Request as it relates to MVCI as overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. We never withdrew this objection, and you never moved with respect to it.

- Request for Production 24 called for "all consultant reports regarding the MVC Affiliation." The SMS Survey and SMS Reports are not consultant reports, nor are they "regarding the MVC Affiliation." For the same reason, the SMS Survey and SMS Reports were not required to be identified in response to Interrogatory 9, which asked for the identification of "any consultants, experts, consulting firms retained by the Marriott Defendants to study, analyze, opine on, and/or implement the MVC Affiliation. The SMS Survey was not prepared by any consultant, expert or consulting firm and does not concern any study, analysis, opinion or the implementation of the MVC Affiliation.[1]

We also dispute your contention that we promised to produce the SMS Survey and SMS Reports in our Initial Disclosures. Our Initial Disclosures identified the following as

---

[1] Your suggestion that the SMS survey documents (and the MVC Points pricing spreadsheets, discussed below) should have been produced in response to document requests in the *Petrick* and/or *Reiser* cases is misplaced, as it was not called for in those cases any more than it was in this case. In any event, the Court expressly found, in its December 31, 2018 Order, that your alleged grievances relating to discovery in *Petrick* and *Reiser* are not germane here.

Michael J. Reiser, Esq. and Tyler R. Meade, Esq.
January 11, 2019
Page 4

---

a category of documents that we believed we might use to support our defenses: "Correspondence, notices, agreements, reports, studies, notes, memoranda or other documents related to the affiliation of The Ritz-Carlton Destination Club with Marriott Vacation Club Destinations." The SMS Survey and SMS Reports assessed user preferences in connection with the sale of MVC Points; it had nothing to do with the MVC Affiliation.

### The MVC Points pricing spreadsheets were never requested

As an initial matter, one of the two MVC Points pricing spreadsheets (RCDC 75969) is a compilation of data regarding the history of the prices of MVC Points that Zach Sonberg only recently created to assist our rebuttal experts after the Marriott Defendants received your experts' affirmative reports. (Like Mr. Peters, Mr. Sonberg was not an agreed-upon custodian whose ESI was collected and reviewed pursuant to the parties' protocol.) Thus, even if it were responsive (which it is not), this spreadsheet did not exist at the time documents were being compiled for production during discovery. While we did previously produce a spreadsheet that provides the pricing for MVC Points on an annual basis (for example, RCDC 72265, which was produced to you on June 8, 2018), the MVC Points pricing spreadsheet RCDC 75969, produced on December 28, 2018, provides more detailed information concerning the pricing of MVC Points on a per-period basis.

The other MVC Points pricing spreadsheet (RCDC 75970) was created in 2010 in connection with the inception and roll-out of the MVC Points product, and it reflects assumptions and projections that were made at that time concerning the pricing of MVC Points. Like the SMS Survey and SMS Reports, this document was not relevant to our defenses until after we received your experts' affirmative reports.

Contrary to your assertion, the MVC Points pricing spreadsheets were not responsive to Document Request No. 23, which called for "all Annual Strategic Plans, Annual Market Plans, Sales Analysis Reports, and all Sales Reports for 2012-2016 for MVCI and the Ritz-Carlton Destination Club, Aspen Highlands." The MVC Points Pricing Spreadsheets are not "strategic" or "market" plans, nor are they "sales analysis reports." Again, had you wanted pricing information on a per-period basis, it would have been quite easy for you to have formulated a request that would have put us on notice of that. Additionally, we objected to this Request as it relates to MVCI as overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Our objection was never withdrawn, and you never moved with respect to it.

* * * * *

As demonstrated above, the timing of our production of the documents in question was consistent with both general litigation practice and our discovery obligations under the federal rules. Yet you accuse us of "misconduct" and threaten to seek sanctions if we do not "immediately" accede to your unreasonable demands. We obviously disagree with your allegations and believe that, if litigated, the Court would reject your demands for further

GREENBERG TRAURIG, LLP

Michael J. Reiser, Esq. and Tyler R. Meade, Esq.
January 11, 2019
Page 5

_____

fact discovery and for a delay in expert discovery to allow your experts to supplement and attempt to bolster their ill-conceived opinions. Nevertheless, so that we can move forward without the need to burden the Court with another discovery dispute, we propose the following:

- In terms of additional documents, we will produce on or before Tuesday, January 15, the backup data and documents that were used to prepare the SMS Reports.

- We will agree to make Messrs. Peters and Sonberg available for deposition in our Orlando offices (we can arrange a video conference if you wish) on the following dates (we propose that they be done on the same day): January 28, February 1, 4, 5, 7 or 8. Their depositions will be limited to the template SMS Survey and the SMS Reports (Peters) and the MVC Points pricing spreadsheets (Sonberg).

- We will agree that your experts Simon and Dev (but not Robinson) may submit amended affirmative reports on or before 14 days after the depositions of Messrs. Peters and Sonberg are completed; however, such amendments must be limited to the SMS Survey, SMS Reports and the MVC Points pricing spreadsheets. Our experts King and Israel (but not Dunec or Tantleff) will submit similarly limited rebuttal reports within 14 days of receiving your amended reports.

- We will agree to defer the deadline for completion of expert depositions for 45 days after the service of all expert reports.

We look forward to having a meaningful discussion concerning these issues.

Sincerely yours,

/s/ Ian S. Marx

IAN S. MARX

cc: Matthew C. Ferguson, Esq. (via e-mail)
    Linda Pham Lam, Esq. (via e-mail)
    Michael Schrag, Esq, (via e-mail)
    Andrew Nussbaum, Esq, (via e-mail)
    Jessica Black Livingston, Esq. (via e-mail)