**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-01301-PAB-GPG

**RCHFU, LLC,** *et al***.**

Plaintiffs,

v.

**MARRIOTT VACATIONS WORLDWIDE CORPORATION,** *et al.*

Defendants.

_____

**PLAINTIFFS' RESPONSE REGARDING SUPPLEMENTAL EXPERT REPORTS CONCERNING THE MARRIOTT DEFENDANTS' LATE PRODUCTION OF STATISTICAL DATA**
_____

The one area of dispute between the parties is whether Plaintiffs should be able to designate a supplemental expert to properly address the new SMS survey evidence that the Marriott Defendants withheld until December 28, 2018, the date they served the rebuttal expert reports of Dr. Israel and Dr. King. Plaintiffs respectfully submit that the Marriott Defendants cannot be permitted to rely on portions of this late-produced evidence while denying Plaintiffs an opportunity to use the same evidence in support of their case. Nor should they be allowed to control how Plaintiffs analyze the more than 170,000 survey data points that Marriott just produced. Indeed, far from being a boon to the Marriott Defendants, this new evidence confirms that the Marriott Defendants profited from using the "Halo" effect of the Ritz-Carlton Destination Club access and brand to sell more Marriott Vacation Club points. Further, it provides a new basis to quantify the amount of the Marriott Defendants' unjust enrichment.

1

## I. BACKGROUND

This dispute is centered on yet another survey (not either of the surveys referenced in the recent sanctions motion). On December 28, 2018, the Marriott Defendants disclosed new evidence showing that they had surveyed participants in Marriott Vacation Club (sometimes, "MVC") sales presentations to determine, *inter alia*, how the prospect of using the Ritz-Carlton Destination Clubs factored into their decision to buy MVC points ("SMS survey(s)"). Among other things, this evidence showed that a third of respondents attending Marriott Vacation Club sales presentations reported that "The ability to use Vacation Club Points to stay at a Ritz-Carlton Club" was an important feature "when deciding whether to purchase with Marriott Vacation Club." This clearly is evidence "concerning the use of the Ritz Properties by users that were not RCDC members from 2011 to the present" and should have been produced at least a year ago — before our Plaintiffs spent hundreds of thousands of dollars preparing expert reports based on incomplete information.

That the Marriot Defendants failed to disclose this evidence earlier is not in dispute. In a letter dated December 28, 2018, they announced that two of their experts, Dr. Israel and Dr. King, would be relying on new evidence:

> The rebuttal reports of Dr. Israel and Dr. King contain certain references to information and documents the Marriott Defendants did not reasonably anticipate as using or being relevant to their defenses until after receipt of plaintiffs' expert reports and the preparation of Dr. Israel's and Dr. King's reports. As a result, this letter will supplement the Marriott Defendants' disclosures with respect to discoverable information and documents that Defendants may use to support their defenses to Plaintiffs' claims. Specifically, below is a summary of additional documents pertaining to the Marriott Defendants' defenses and the identity of persons who are likely to have discoverable information concerning them….
>
> A. Documents
>
> (i) Documents concerning surveys completed by some purchasers of MVC Points (known as an SMS survey), including the questionnaire and the survey results;
>
> (ii) Documents concerning the historical gross and net pricing of MVC Points by period (providing additional details with respect to previously produced pricing data);
>
> (iii) An excel spreadsheet compiled from source data concerning projections regarding pricing and sales made on or about April 30, 2010 in advance of the launch of the MVC Points product; and

2

      (iv)      Documents concerning First Day Benefits (FDB) provided to purchasers of MVC Points, reflecting additional discounts off of the gross prices.

**Exhibit. A**. The Marriott Defendants implicitly conceded the fundamental unfairness of disclosing new evidence at that late date, and so they offered two witnesses for deposition.

Plaintiffs responded that the Marriott Defendants should have disclosed the new evidence in response to Plaintiffs' discovery requests. Plaintiffs' reasoning is set forth in the letter attached as **Exhibit B**. However, in the interest of avoiding yet another sanctions motion, Plaintiffs proposed steps that Plaintiffs hoped might cure the prejudice caused by the Marriott Defendants' late disclosure of this evidence.

The Parties then began a negotiation in an attempt to resolve the issues without judicial intervention. Because it was apparent that the Marriott Defendants produced only a portion of the SMS survey data—the data they felt helped their case rather than the complete data—Plaintiffs demanded that Defendants produce all relevant SMS survey evidence. Defendants ultimately produced the complete survey responses on January 15, 2019, and an additional report related to the survey on February 12, 2019. Defendants agreed to produce Messrs. Peters and Sonberg for deposition on February 13, 2019. The parties also agreed that Plaintiffs could update their expert reports.

After the Marriott Defendants produced additional SMS survey evidence, Plaintiffs began to analyze this new evidence and eventually determined that the newly produced survey data indeed provides Plaintiffs an additional means to quantify how much the Marriott Defendants profited as a result of their misconduct. Plaintiffs informed Defendants that they wanted to disclose a new statistical expert to perform this analysis on the newly produced survey data. This expert, Jason Bass, will be prepared to produce a brief report, focusing only on the import of the newly produced data, by March 20, 2019.Plaintiffs first learned that Defendants objected to this common-sense remedial step with their filing[1] on March 15, 2019 (Dkt. No. 363).[2]

---

[1] Marriott Defendants' Reply in Further Support f Request for Entry of Order Implementing Fourth Additional Schedule Addendum and Request for Conference.

[2] As the Court set a Status Conference on the proposed schedule addendum and the Marriott Defendants' took it upon themselves to submit a preemptive objection, Plaintiffs submit this Response Regarding Supplemental Expert Reports

## II.  ARGUMENT

It would be fundamentally unfair to allow the Marriott Defendants to withhold critical evidence directly related to one of Plaintiffs' remedy theories in discovery, disclose it for the first time with their expert reports, and then control the manner in which Plaintiffs analyze and respond to this new data. *Cf. Glielmi v. Raymond Corp.*, 2013 WL 209131, at *6 (D.N.J. Jan. 17, 2013) ("After years of discovery and motion practice plaintiffs should not be required to "jump through ... belated hoops" because defendants now want to supplement their experts' disclosures with information that was known to them for years").

But something even more fundamental than that is at stake: the concealed SMS survey evidence shows not only that the Marriott Defendants successfully used access to the Ritz-Carlton Destination Club and its luxury brand for its "halo effect" to sell Marriott Vacation Club points, as Plaintiffs have long alleged, but also provides a basis to statistically quantify a portion of the resulting unjust enrichment (disgorgement) through regression analysis.  That is why Plaintiffs seek leave to declare an expert capable of performing that regression analysis. This report is almost completed.

The Marriott Defendants' response is remarkable.  They seek to rely on the sliver of the SMS survey evidence that they think aids their case while denying Plaintiffs the opportunity to properly analyze the full import of the entire body of evidence.  The Marriott Defendants cannot have it both ways.  Having injected new evidence three years into this litigation, they cannot deny Plaintiffs an opportunity to develop arguments based on that same evidence and retain the appropriate expert to analyze this extensive survey result data.

### A.   Defendants Should Have Produced this Information in Discovery

The letter attached hereto as Exh.B details the reasons why the SMS survey evidence should have been produced in discovery.

---

Concerning the Marriott Defendants' Late Production of Statistical Data. Plaintiffs are prepared, if the Court deems necessary, to file a detailed and unrushed motion on this issue.

### B. Defendants Should Have Disclosed this Evidence in Their Rule 26 Disclosure

Defendants clearly had an obligation to disclose the SMS survey evidence in their Rule 26 disclosures. *Glielmi v. Raymond Corp.*, 2013 WL 209131, at *3 ("since defendants seek to use the documents to support their defense, the documents should have been identified in defendants' Rule 26 disclosures").

Defendants attempt to explain their failure to disclose the SMS survey evidence in their Rule 26 disclosures with this implausible assertion in their January 11, 2019 letter: "It was not until we reviewed the opinions offered in Plaintiffs' affirmative expert reports that we considered that our experts might find such documents helpful in preparing rebuttal reports." Dkt. No. 363 at p. 9 of 13. This is highly misleading in that Plaintiffs served their expert reports on October 12, 2018, well over two months before the Marriott Defendants disclosed this new evidence. The Marriott Defendants have no excuse for waiting that long to disclose the new evidence. Moreover, it is not correct to say that they did not previously know that Plaintiffs would seek profits unjustly earned by using the "Halo" effect of the Ritz-Carlton brand to sell MVC points. The operative complaint on file when the Marriott Defendants served their initial disclosures (on August 5, 2016) alleged exactly that. The unjust enrichment claim reads in pertinent part:

> Defendants, and each of them, conspired with and aided and abetted each other in achieving a unilaterally imposed affiliation with the Marriott Vacations Club, in order to rid themselves of a poor financial investment with the Ritz-Carlton Club, to <u>increase the attractiveness, value and price of MVC timeshares sold by the MVW</u> and MVCI through the affiliation with the Ritz Carton Club Aspen Highlands, as well as to increase exchange fees payable to Cobalt and L & C, despite knowing that such an affiliation would devalue Plaintiffs' Fractional Units, <u>while at the same time making Marriott Vacation Club Destinations more attractive, valuable and expensive</u>, all to the unjust enrichment of Defendants, including but not limited to MVW, MVCI, Cobalt and L & C.

ECF No. 40 at ¶ 92 (emphasis added). There is no excuse for the Marriott Defendants waiting until the end of 2018 – three years after this case was first filed – to disclose the SMS survey evidence. *Cf. Glielmi v. Raymond Corp.*, 2013 WL 209131, *4 ("Even giving defendants the benefit of every doubt, meaning the exhibits were not requested in discovery and did not have to be disclosed

5

pursuant to Rule 26(a), the exhibits should have been disclosed soon after January 27, 2011. By no later than that date defendants were on specific notice that plaintiffs would argue…").

### C. The "Agreement" the Marriott Defendants Claim Does Not Exist

According to the Marriott Defendants, the parties reached an "agreement" in which Plaintiffs waived the right to request additional remedies *before Defendants produced the complete SMS survey evidence.* But Defendants produced no evidence of such an unlikely agreement. Exhibit A to their recent filing is merely their one-sided proposal. To the extent there was any agreement at all, it was that Plaintiffs would not immediately bring another motion for sanctions for the Marriott Defendants' failure to produce this information earlier.

### III. CONCLUSION

It would be patently unfair to allow the Marriott Defendants to found their expert analysis on evidence concealed from Plaintiffs for years and, at the same time, deny Plaintiffs the opportunity to make full use of that evidence. Therefore, Plaintiffs respectfully submit that they should be granted leave to declare Jason Bass as an expert on the recently produced complete SMS survey evidence.

Dated: March 17, 2019

Respectfully submitted,

| LAW OFFICE OF MICHAEL J. REISER | THE MATTHEW C. FERGUSON LAW FIRM, P.C. |
|---|---|
| ____/s/ Michael J. Reiser_____ | _____/s/ Matthew C. Ferguson_____ |
| Michael J. Reiser, # 16161 | Matthew C. Ferguson, #25687 |
| 961 Ygnacio Valley Road | 119 South Spring, Suite 201 |
| Walnut Creek, California 94596 | Aspen, Colorado 81611 |
| Telephone: (925) 256-0400 | Telephone: (970) 925-6288 |
| Facsimile: (925) 476-0304 | Facsimile: (970) 925-2273 |
| E-mail: reiserlaw@gmail.com | E-mail: matt@matthewfergusonlaw.com |
| *Attorney for Plaintiffs* | *Attorney for Plaintiffs* |
| GIBBS LAW GROUP, LLP | THE MEADE FIRM, P.C. |
| ____/s/ Michael Schrag_____ | ____/s/ Tyler Meade_____ |

| | |
|---|---|
| Michael Schrag (CA State Bar # 185832) | Tyler Meade (CA State Bar # 160838) |
| Linda Lam (CA State Bar# 301461) | 12 Funston Avenue, Suite A |
| 505 14th Street, Suite 1110 | San Francisco, CA 94129 |
| Oakland, California 94612 | Telephone: (415) 724-9600 |
| Phone: (510) 350-9718 | Facsimile: (415) 510-2544 |
| Facsimile: (510) 350-9701 | E-mail: tyler@meadefirm.com |
| E-mail: mls@classlawgroup.com | *Attorney for Plaintiffs* |
| E-mail: lpl@classlawgroup.com | |
| *Attorney for Plaintiffs* | |

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 17th day of March 2019, a true and accurate PLAINTIFFS' RESPONSE REGARDING SUPPLEMENTAL EXPERT CONCERNING THE MARRIOTT DEFENDANTS' LATE PRODUCTION OF STATISTICAL DATA was filed and served via CM/ECF filing system upon following:

| | |
|---|---|
| Ian S. Marx, Esq. | Jessica Black Livingston, Esq. |
| Philip R. Sellinger, Esq. | Hogan Lovells US LLP |
| Greenberg Traurig, LLP | 1200 Seventeenth Street, Suite 1500 |
| 500 Campus Drive, Suite 400 | Denver, Colorado 80202 |
| Florham Park, New Jersey 07932 | |

　　　　　　　　　　　　　　　　　　　　　*/s/ Annie Decker*____
　　　　　　　　　　　　　　　　　　　　　Annie Decker

4825-5751-5660, v. 1

7