# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

Civil Action No. 1:16-cv-01301-PAB-GPG

**RCHFU, LLC,** *et al.*

Plaintiffs,

v.

**MARRIOTT VACATIONS WORLDWIDE CORPORATION,** *et al.*

Defendants.

---

**DECLARATION OF MICHAEL J. REISER IN SUPPORT OF PLAINTIFFS' REQUEST FOR SUPPLEMENTAL EXPERT REPORTS TO ANALYZE NEWLY PRODUCED DATA**

---

I, Michael J. Reiser, declare and state:

1. I am an attorney licensed in Colorado and the shareholder of Reiser Law P.C., co-counsel for Plaintiffs in this action. I have personal knowledge of the facts stated herein and could testify about them if called upon to do so.

2. This declaration identifies correspondence showing that while the parties reached an agreement regarding Marriott's document production, Plaintiffs never agreed not to disclose an additional expert to statistically analyze newly produced SMS survey data.

3. On December 28, 2018, Marriott disclosed rebuttal experts who relied on documents and data concerning historical pricing of Marriott Vacation Club (MVC) points and surveys of participants in MVC sales presentations to determine how the prospect of using Ritz-Carlton Destination Clubs factored into their decision to buy MVC points ("SMS surveys"). A true

1

and correct copy of Marriott's 12/28/2018 letter producing its expert reports and these new documents is attached as **Exhibit A**. Marriott had never produced any of these documents before December 28th.

4. After the December 28, 2018 letter and during the months of January through March 2019, the parties exchanged a series of emails and letters which primarily concerned the production of additional documents concerning the SMS surveys, and scheduling depositions of Marriott employees who have knowledge about the newly produced evidence, Urcil Peters and Zach Sonberg.

5. On January 4, 2019, Marriott counsel Ian Marx sent us a letter proposing dates for expert witness depositions. A true and correct copy of a portion of that letter is attached as **Exhibit B**.[1] The parties never came to an agreement on these dates and the depositions have not yet taken place. My co-counsel and I did not want to take expert depositions until we had the chance to analyze the newly produced SMS survey data and assess whether we needed additional related documents to fully understand how the survey results impact our disgorgement analysis.

6. On January 8, 2019, my co-counsel Tyler Meade sent a responsive letter to Mr. Marx explaining why the SMS survey documents should have been produced earlier, and the resulting prejudice to Plaintiffs.[2] A true and correct copy of that letter is attached as **Exhibit C**. This letter also proposed that Marriott produce additional reports, summaries, correspondence and

---

[1] To comply with the Court's 20-page limit on declarations and exhibits, not all correspondence is attached (and some correspondence has been truncated), but will be provided to the Court upon request.

[2] Whether or not these documents should have been produced earlier, the fact that they were disclosed for the first time with Marriott's rebuttal experts justifies allowing Plaintiffs to use a statistical expert to analyze them.

memoranda relating to the SMS surveys, and that expert depositions be deferred until Plaintiffs had a chance to (a) analyze such documents, (b) depose the relevant witnesses, and (c) incorporate relevant information into their expert reports. *Id*.

7. On January 11, 2019, Mr. Marx sent a letter to us *proposing* that (a) Marriott produce SMS survey backup data on January 15, (b) Plaintiffs depose Peters and Sonberg in early February (limited to the SMS survey and MVC pricing issues); (c) Plaintiffs' experts Simon and Dev (but not Robinson) submit amended expert reports two weeks after the Peters/Sonberg depositions and Marriott experts King and Israel (but not Dunec or Tantleff) submit supplemental reports two weeks after that; and (d) the deadline for completing expert depositions be extended until 45 days after service of supplemental expert reports. A true and correct copy of that letter is attached as **Exhibit D**. Mr. Marx added: **"We look forward to having a meaningful discussion concerning these issues."** *Id*. (emphasis added).

8. Marriott produced additional backup data used to prepare summaries of survey responses on January 15, 2019, "recognizing the requirements of Fed. R. Evid. 1006 regarding summaries." *See* Exh. F attached hereto at p. 1. After that production, we continued to seek additional documents concerning the SMS surveys. On January 28, 2019, my co-counsel, Matthew Ferguson, had an exchange of emails and a telephone call with Mr. Marx discussing the need to confer on several matters, including the Peters and Sonberg depositions as well as the production of "[a]ctual surveys and other summary level evidence and communications about SMS surveys."

9. On January 31, 2019, Mr. Marx sent us an email concerning the Peters and Sonberg depositions and our request for additional documents, stating, "[A]ssuming that we are in **agreement concerning our document production as to the surveys**, we can produce Messrs.

3

Peters and Sonberg for deposition in our Orlando office on Wednesday, February 13 . . ." (emphasis added). A true and correct copy of this e-mail is attached as **Exhibit E**. This email does not even *mention* supplemental expert reports, much less an agreement.

10. The following day, February 1, 2019, Mr. Ferguson confirmed that Plaintiffs did want survey data in all summary or reporting formats, and wanted to receive the documents a week before the February 13 depositions. I followed up with Mr. Marx on February 4, asking him to provide any SMS survey reports.

11. On February 4, 2019, Mr. Marx sent us a letter outlining his proposal to limit further document production. A true and correct copy of that letter is attached as **Exhibit F**. Mr. Marx demanded that the parties reach a final agreement *as to document production* before Marriott produced further SMS survey-related documents; but this letter does not mention limiting expert reports.

12. On February 6, 2019, Mr. Marx sent a follow up email asking us to confirm: "**(1) your agreement that our production of the November 2012 Report will satisfy your demands for additional documents relating to the SMS Survey and Reports and that you will not seek additional documents relating to this subject**; and (2) assuming your agreement to (1)[sic], the scheduling of the depositions of Messrs. Peters and Sonberg." (emphasis added).

13. On February 7, 2019, in a series of emails, the parties agreed to the scope of SMS survey-related document production. There are no agreements in the February 7 email exchanges concerning the expert schedule or any limitation on disclosing an additional statistical expert.

14. Mr. Marx produced additional documents on February 7 and 12, 2019. I took the depositions of Peters and Sonberg on February 13, 2019.

4

15. After these depositions, Mr. Marx, Mr. Ferguson, and I discussed and exchanged emails concerning the production of additional documents, including metadata concerning one of the newly produced documents and the schedule for expert depositions. However, no agreements were reached.

16. Meanwhile, my co-counsel, our experts, and I continued to analyze the SMS survey and newly produced MVC points pricing documents. We realized that the SMS survey documents and data strongly support Plaintiffs' halo effect disgorgement remedy. We further realized that a statistical and/or regression analysis of the survey data would best support Plaintiffs' disgorgement remedy.

17. On March 11, 2019, my co-counsel Michael Schrag and I had a phone conversation with Ian Marx and proposed an expert discovery schedule that included Plaintiffs producing a report from a new statistical expert limited to an analysis of the newly produced SMS survey data.

18. On March 15, 2019, Mr. Marx sent us an email saying that Marriott opposed our disclosing a new expert to statistically analyze the newly produced SMS survey data.

19. In summary, Plaintiffs never entered in an agreement with Marriott to limit Plaintiffs' expert reports.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 28, 2019, in Walnut Creek, California.

                                                     */s/ Michael J. Reiser*
                                                   Michael J. Reiser