

Ian S. Marx
Tel 973.360.7951
Fax 973.301.8410
MarxI@gtlaw.com

January 11, 2019

**VIA E-MAIL**

Michael J. Reiser, Esq.                Tyler R. Meade, Esq.
Reiser Law, P.C.                       The Meade Firm P.C.
1475 North Broadway, Suite 300         12 Funston Avenue, Suite A
Walnut Creek, California 94596         San Francisco, California 94129

        **Re:**   *RCHFU, LLC v. Marriott Vacations Worldwide Corp.*
              **Civil Case No. 16-01301 PAB (D. Colo.)**

Dear Counsel:

      We write in response to your letter of January 8, 2019 in which you assert that certain documents produced by us on December 28, 2018 were improperly withheld during discovery. We categorically reject that assertion. The template SMS survey, bates nos. RCDC 75966 ("SMS Survey"), reports summarizing response percentages related to two questions on the SMS Survey, bates nos. RCDC 75967-68 ("SMS Reports"), and two Marriott Vacation Club ("MVC") Points pricing spreadsheets, bates nos. RCDC 75969-70 were not requested in discovery, nor did we intend to use these documents in our case-in-chief. It was not until we reviewed the opinions offered in Plaintiffs' affirmative expert reports that we considered that our experts might find such documents helpful in preparing rebuttal reports. At that point, we updated our Rule 26 Initial Disclosures and produced the documents. As shown below, we acted appropriately in every respect in this matter.

            **The SMS Survey and SMS Reports were never requested**

      As an initial matter, the SMS Reports (RCDC 75967-68) are a compilation of data related to two questions included in the SMS Survey. The SMS Reports were only recently created by the Consumer Insights and Research Department of MVW to provide the rebuttal experts with a summary of certain information sought by those experts after the Marriott Defendants received your experts' affirmative reports.

      Created and maintained by MVW's Consumer Insights and Research Department, which is managed by Urcil Peters, the SMS Survey was regularly provided to purchasers and potential purchasers of MVC Points to assess a variety of factors including their experience with the sales presentation, their perceptions as consumers and to determine the factors that could or did go into their buying decisions. Mr. Peters was not one of the agreed-upon custodians whose documents were compiled and reviewed as part of the

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BOSTON
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON*
LOS ANGELES
MEXICO CITY+
MIAMI
MILAN**
NEW JERSEY
NEW YORK
ORANGE COUNTY
ORLANDO
PALM BEACH COUNTY
PHILADELPHIA
PHOENIX
ROME**
SACRAMENTO
SAN FRANCISCO
SHANGHAI
SILICON VALLEY
TALLAHASSEE
TAMPA
TEL AVIV^
TYSONS CORNER
WARSAW~
WASHINGTON, D.C.
WHITE PLAINS

* OPERATES AS GREENBERG TRAURIG MAHER LLP
+ OPERATES AS GREENBERG TRAURIG, S.C.
^ A BRANCH OF GREENBERG TRAURIG, P.A. FLORIDA, USA
~ OPERATES AS GREENBERG TRAURIG GRZESIAK sp.k.
** STRATEGIC ALLIANCE

GREENBERG TRAURIG, LLP ■ ATTORNEYS AT LAW ■ WWW.GTLAW.COM
500 Campus Drive, Suite 400 ■ Florham Park, New Jersey 07932 ■ Tel 973.360.7900 ■ Fax 973.301.8410

Michael J. Reiser, Esq. and Tyler R. Meade, Esq.
January 11, 2019
Page 2

---

discovery process in this case. The SMS Survey does not concern or even mention the "MVC Affiliation."

The SMS Survey and SMS Reports were not responsive to any of the document requests or interrogatories you mention. For example, Request for Production No. 21 of your Third Set of Document Requests called for "all documents concerning the use of the Ritz Properties by users that were not RCDC members from 2011 to the present." While you point out that the word "concerning" is defined broadly, the key word in that request is "use." As noted, the SMS Survey was conducted to determine, among other reasons, what factors influenced the buying decisions of purchasers and potential purchasers of MVC Points. The SMS Survey did not concern any of the Respondents' "use" of the Ritz Properties. The Ritz Properties were mentioned in the SMS Survey questions where approximately 28 features of MVC Points ownership were listed and the survey respondents were asked to select and rank the features that were important to them when deciding whether to purchase MVC Points. Had you sought surveys of MVC Points purchasers, you certainly could have formulated a demand that would have put us on notice of that.

Even if the SMS Survey and SMS Reports had been responsive to Request 21, we objected to this Request on the ground that the discovery sought was overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The parties' joint submission to Judge Gallagher on February 11, 2018 (from which you selectively and misleadingly quote) undercuts your position. The relevant issue on that chart (Issue I, which you framed), concerned your disagreement with our objection to the production of "documents pertaining to revenues, profits, commissions, and fees stemming from affiliating the Ritz-Aspen with Marriott Vacation Club." You contend these documents were sought in Requests 6, 7, 14-21 and 23. Your January 8 letter indicated that we had agreed to reconsider our objections to these Requests and that such reconsideration resulted in our production of "2,676 pages of documents on February 1, 2018." However, your letter omits the part of our submission to Judge Gallagher which states that these documents were being produced "[n]otwithstanding our objections to these Requests, which we continue to believe are proper" and our very specific explanation about what we were agreeing to produce in response to all of these Requests, and that such production would only "include the overall figures relating to revenue derived and expenses incurred in connection with sales of the Marriott Vacation Club Destinations points product for the years 2012 through 2017." You agreed to and accepted our production of documents in response to Requests 6, 7, 14-21 and 23, as narrowed.

The SMS Survey and SMS Reports were also not responsive to any of the other Requests or Interrogatories you have identified:

- Request for Production 13 called for all documents "not previously produced or disclosed relating to the MVC Affiliation that Marriott Defendants located during the search term review, but which Marriott Defendants did not produce as

EXHIBIT D

Michael J. Reiser, Esq. and Tyler R. Meade, Esq.
January 11, 2019
Page 3

---

determined by them to be outside of the parameters of the specified search terms." As noted, the SMS Survey was maintained by the Consumer Insights and Research Department, which is managed by Urcil Peters. Mr. Peters was not an agreed-upon ESI custodian. Thus, the SMS Survey was not located during the parties' agreed-upon protocol for the review and production of electronically stored documents. For the same reason, the SMS Survey documents were not required to be identified in response to Interrogatory 8, which asked for the identification of documents "not previously produced or disclosed relating to the MVC Affiliation that Marriott Defendants located during the search term review, but which Marriott Defendants did not produce as determined by them to be outside of the parameters of the specified search terms."

- Request for Production 22 called for "all documents created, received, or sent at any time, including prior to July 2012, regarding Marriott Defendants' reason, purpose, rationale or justification for allowing the MVC Affiliation to the Ritz-Aspen." The SMS Survey assessed consumer preferences affecting decisions to purchase MVC Points; it did not concern "the Marriott Defendants' reason, purpose, rationale or justification for allowing the MVC Affiliation to the Ritz-Aspen."

- Request for Production 23 called for "all Annual Strategic Plans, Annual Market Plans, Sales Analysis Reports, and all Sales Reports for 2012-2016 for MVCI and the Ritz-Carlton Destination Club, Aspen Highlands." The SMS Survey and SMS Reports do not fit any of these categories. Additionally, we objected to this Request as it relates to MVCI as overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. We never withdrew this objection, and you never moved with respect to it.

- Request for Production 24 called for "all consultant reports regarding the MVC Affiliation." The SMS Survey and SMS Reports are not consultant reports, nor are they "regarding the MVC Affiliation." For the same reason, the SMS Survey and SMS Reports were not required to be identified in response to Interrogatory 9, which asked for the identification of "any consultants, experts, consulting firms retained by the Marriott Defendants to study, analyze, opine on, and/or implement the MVC Affiliation. The SMS Survey was not prepared by any consultant, expert or consulting firm and does not concern any study, analysis, opinion or the implementation of the MVC Affiliation.[1]

We also dispute your contention that we promised to produce the SMS Survey and SMS Reports in our Initial Disclosures. Our Initial Disclosures identified the following as

---

[1] Your suggestion that the SMS survey documents (and the MVC Points pricing spreadsheets, discussed below) should have been produced in response to document requests in the *Petrick* and/or *Reiser* cases is misplaced, as it was not called for in those cases any more than it was in this case. In any event, the Court expressly found, in its December 31, 2018 Order, that your alleged grievances relating to discovery in *Petrick* and *Reiser* are not germane here.

EXHIBIT D

Michael J. Reiser, Esq. and Tyler R. Meade, Esq.
January 11, 2019
Page 4

---

a category of documents that we believed we might use to support our defenses: "Correspondence, notices, agreements, reports, studies, notes, memoranda or other documents related to the affiliation of The Ritz-Carlton Destination Club with Marriott Vacation Club Destinations." The SMS Survey and SMS Reports assessed user preferences in connection with the sale of MVC Points; it had nothing to do with the MVC Affiliation.

### **The MVC Points pricing spreadsheets were never requested**

As an initial matter, one of the two MVC Points pricing spreadsheets (RCDC 75969) is a compilation of data regarding the history of the prices of MVC Points that Zach Sonberg only recently created to assist our rebuttal experts after the Marriott Defendants received your experts' affirmative reports. (Like Mr. Peters, Mr. Sonberg was not an agreed-upon custodian whose ESI was collected and reviewed pursuant to the parties' protocol.) Thus, even if it were responsive (which it is not), this spreadsheet did not exist at the time documents were being compiled for production during discovery. While we did previously produce a spreadsheet that provides the pricing for MVC Points on an annual basis (for example, RCDC 72265, which was produced to you on June 8, 2018), the MVC Points pricing spreadsheet RCDC 75969, produced on December 28, 2018, provides more detailed information concerning the pricing of MVC Points on a per-period basis.

The other MVC Points pricing spreadsheet (RCDC 75970) was created in 2010 in connection with the inception and roll-out of the MVC Points product, and it reflects assumptions and projections that were made at that time concerning the pricing of MVC Points. Like the SMS Survey and SMS Reports, this document was not relevant to our defenses until after we received your experts' affirmative reports.

Contrary to your assertion, the MVC Points pricing spreadsheets were not responsive to Document Request No. 23, which called for "all Annual Strategic Plans, Annual Market Plans, Sales Analysis Reports, and all Sales Reports for 2012-2016 for MVCI and the Ritz-Carlton Destination Club, Aspen Highlands." The MVC Points Pricing Spreadsheets are not "strategic" or "market" plans, nor are they "sales analysis reports." Again, had you wanted pricing information on a per-period basis, it would have been quite easy for you to have formulated a request that would have put us on notice of that. Additionally, we objected to this Request as it relates to MVCI as overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Our objection was never withdrawn, and you never moved with respect to it.

\* \* \* \* \*

As demonstrated above, the timing of our production of the documents in question was consistent with both general litigation practice and our discovery obligations under the federal rules. Yet you accuse us of "misconduct" and threaten to seek sanctions if we do not "immediately" accede to your unreasonable demands. We obviously disagree with your allegations and believe that, if litigated, the Court would reject your demands for further

EXHIBIT D

Michael J. Reiser, Esq. and Tyler R. Meade, Esq.
January 11, 2019
Page 5

_____

fact discovery and for a delay in expert discovery to allow your experts to supplement and attempt to bolster their ill-conceived opinions. Nevertheless, so that we can move forward without the need to burden the Court with another discovery dispute, we propose the following:

- In terms of additional documents, we will produce on or before Tuesday, January 15, the backup data and documents that were used to prepare the SMS Reports.

- We will agree to make Messrs. Peters and Sonberg available for deposition in our Orlando offices (we can arrange a video conference if you wish) on the following dates (we propose that they be done on the same day): January 28, February 1, 4, 5, 7 or 8. Their depositions will be limited to the template SMS Survey and the SMS Reports (Peters) and the MVC Points pricing spreadsheets (Sonberg).

- We will agree that your experts Simon and Dev (but not Robinson) may submit amended affirmative reports on or before 14 days after the depositions of Messrs. Peters and Sonberg are completed; however, such amendments must be limited to the SMS Survey, SMS Reports and the MVC Points pricing spreadsheets. Our experts King and Israel (but not Dunec or Tantleff) will submit similarly limited rebuttal reports within 14 days of receiving your amended reports.

- We will agree to defer the deadline for completion of expert depositions for 45 days after the service of all expert reports.

We look forward to having a meaningful discussion concerning these issues.

Sincerely yours,

/s/ Ian S. Marx

IAN S. MARX

cc: Matthew C. Ferguson, Esq. (via e-mail)
Linda Pham Lam, Esq. (via e-mail)
Michael Schrag, Esq, (via e-mail)
Andrew Nussbaum, Esq, (via e-mail)
Jessica Black Livingston, Esq. (via e-mail)