Ian S. Marx
Tel 973.360.7951
Fax 973.301.8410
MarxI@gtlaw.com

February 4, 2019

**VIA E-MAIL**

Michael J. Reiser, Esq.
Reiser Law, P.C.
1475 North Broadway, Suite 300
Walnut Creek, California 94596

Tyler R. Meade, Esq.
The Meade Firm P.C.
12 Funston Avenue, Suite A
San Francisco, California 94129

**Re: *RCHFU, LLC v. Marriott Vacations Worldwide Corp.***
**Civil Case No. 16-01301 PAB (D. Colo.)**

Dear Counsel:

We write with respect to the deposition of Urcil Peters, Vice President of Consumer Information Solutions Department ("CIS Department"), which we have proposed take place in our Orlando office on February 13, 2019 (on which day we will also make available Zach Sonberg), and more specifically, with respect for your continued demands for documents in advance of Mr. Peters' deposition.

On December 28, 2018, we produced to you a template sales and marketing SMS survey (the "SMS Survey") (bates nos. RCDC 75966) and summaries of the responses related to two questions on the SMS Survey (bates nos. RCDC 75967-68) (the "SMS Reports"). As we subsequently explained in our letter to you dated January 11, 2019, these documents were not previously listed in our Rule 26 Disclosures because we did not have reason to believe that they were or would be relevant to the claims or defenses in the case, or that we would use such documents to support our defenses. Nor were such documents encompassed by any of Plaintiffs' discovery requests. It was not until we reviewed the opinions offered in Plaintiffs' affirmative expert reports -- relating specifically to the assumed importance of being able to access RCDC properties as perceived by MVC purchasers and potential purchasers -- that we considered that our experts might find such documents helpful in preparing rebuttal reports and, as a result, provided the documents being relied on by our experts for their rebuttal reports to plaintiffs. Solely because our rebuttal experts relied on these documents, solely for this point, we updated our Rule 26 Initial Disclosures and produced the documents relied on by our experts for this point. We had no further obligation under the rules.

Thereafter, you requested the production of additional documents relating to the SMS Survey and Reports. On January 15, 2019, recognizing the requirements of Fed. R. Evid. 1006 regarding summaries, we produced to you the underlying backup data and documents that were used to prepare the summaries of the responses that had been used by

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BOSTON
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON*
LOS ANGELES
MEXICO CITY+
MIAMI
MILAN**
NEW JERSEY
NEW YORK
ORANGE COUNTY
ORLANDO
PALM BEACH COUNTY
PHILADELPHIA
PHOENIX
ROME**
SACRAMENTO
SAN FRANCISCO
SHANGHAI
SILICON VALLEY
TALLAHASSEE
TAMPA
TEL AVIV^
TYSONS CORNER
WARSAW~
WASHINGTON, D.C.
WHITE PLAINS
* OPERATES AS GREENBERG TRAURIG MAHER LLP
+ OPERATES AS GREENBERG TRAURIG, S.C.
^ A BRANCH OF GREENBERG TRAURIG, P.A. FLORIDA, USA
~ OPERATES AS GREENBERG TRAURIG GRZESIAK sp.k.
** STRATEGIC ALLIANCE

GREENBERG TRAURIG, LLP ▪ ATTORNEYS AT LAW ▪ WWW.GTLAW.COM
500 Campus Drive, Suite 400 ▪ Florham Park, New Jersey 07932 ▪ Tel 973.360.7900 ▪ Fax 973.301.8410
*NY 247876887v1*

EXHIBIT F

our rebuttal experts and had been previously provided to you on December 28, 2019. Since then, you have continued to request additional documents concerning the SMS Survey, and specifically, "all summary or reporting formats" and also "substantive communications about findings." Under the circumstances, given that these documents were not encompassed in any of Plaintiffs' discovery requests, were not required to be identified in our prior Rule 26 Disclosures, and were relied upon solely for purposes of our expert's rebuttal reports, we have no further obligation to produce any other documents relating to this subject. Nevertheless, as further discussed below, in a good faith effort to resolve this issue, we will provide Sales and Marketing Survey (SMS) reports that reflect MVC purchasers' or potential purchasers' perception of the importance or lack of importance of the ability to access RCDC properties in making a decision to purchase MVC points. The sole relevance of these additional documents is MVC purchaser's and potential purchasers' perception of the ability to access RCDC properties in making purchasing decisions.

As to Summary Reports

The CIS Department regularly prepared two types of reports concerning SMS Surveys. However, as discussed below, none of these reports contain any information that reflects MVC purchasers' or potential purchasers' perception of the importance or lack of importance of the ability to access RCDC properties in making a decision to purchase MVC points.

On an annual basis, the CIS Department prepares an annual report (the "Annual Reports"), which is provided to some of the copmany's business leaders. These Annual Reports provide: (1) summary scores for three types of surveys the company regularly conducts (Guest Services ("GSS") (which concerns guests' satisfaction with on-site services during a stay), Owners' Services ("OSS") (which concerns members' satisfaction with the reservation process) and Sales and Marketing ("SMS")(which concern the satisfaction of purchasers and potential purchasers during the sales process); (2) summary reports of the survey scores for resorts, sales centers and Owners' Services Call Centers; and (3) information summarizing such scores on a historical basis. These Annual Reports, which contain summaries of survey scores, do not contain any specific information that reflects MVC purchasers' or potential purchasers' perception of the importance or lack of importance of the ability to access RCDC properties in making a decision to purchase MVC points.

On a quarterly basis, the CIS Department prepares a Leadership Foundations Report (the "Quarterly Reports"), which is provided to some of the company's business leaders. These Quarterly Reports contain summary information concerning scores on the GSS, OSS and SMS surveys. These Quarterly Reports, which contain summaries of survey scores, do not contain any specific information that reflects MVC purchasers' or potential purchasers' perception of the importance or lack of importance of the ability to access RCDC properties in making a decision to purchase MVC points.

In addition, in November 2012, the CIS Department was asked to prepare a special report summarizing certain data relating to the SMS Surveys (the "November 2012 Report"). This is the only instance since the introduction of MVC points in which the CIS Department has been asked to prepare a report of this nature, which does contain information that reflects MVC purchasers' or potential purchasers' perception of the importance or lack of importance of the ability to access RCDC properties in making a decision to purchase MVC points. If we reach an agreement concerning the issues discussed in this letter, we are prepared to produce a copy of the November 2012 Report prepared by the CIS Department to you.

<u>As to Substantive Communications</u>

With respect to your request that we also produce documents reflecting "substantive communications" about the findings made regarding the importance of RCDC access in any such reports, for numerous reasons, we are not required to search for and produce any such documents, if they even exist. These documents were not required to be listed in our Rule 26 Disclosures, were not requested by Plaintiffs in discovery, fact discovery closed many months ago, and we are not amenable to reopening it – nor can Plaintiffs show any "extraordinary circumstances" to reopen discovery to pursue an issue that was first raised by Plaintiffs' own experts after discovery had closed. First, the sole relevant issue raised by Plaintiffs' experts and our rebuttal experts is the perception by MVC purchasers and potential purchasers of the ability to access RCDC properties and, as noted above, we will provide SMS survey reports that reflect this. As a result, any internal communications are not relevant to this narrow issue of purchasers' perception first raised by your expert reports and then addressed in our rebuttal expert reports. Moreover, the process of searching for, reviewing and producing such communications (if they even exist) would require us to acquire and search electronically stored information of a number of new custodians and would be burdensome, costly and time consuming and the burden and expense associated with this endeavor would not be proportionate to the needs of this case. Finally, engaging in such acquisition, review and production of any documents uncovered through this process would cause substantial and undue delay -- and would delay the deposition of Mr. Peters, which would in turn delay the supplementation of expert reports and the deposition of experts, and thus delay the dates for summary judgement, Daubert and in limine motions -- which is not justified under the circumstances.

* * * *

We are prepared to produce to you now the November 2012 Report (and although we are not aware of any others, we will produce any other summary reports prepared by the CIS Department that reflect MVC purchasers' or potential purchasers' perception of the importance or lack of importance of the ability to access RCDC properties in making a decision to purchase MVC points). However, we are not amenable to producing any other documents requested, nor are we amenable to proceeding with the deposition unless we are