IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 16-01301 PAB

RCHFU, LLC, et al.

      Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al.

      Defendants.

**DECLARATION OF IAN S. MARX IN OPPOSITION TO PLAINTIFFS' REQUEST FOR ADDITION OF NEW EXPERT WITNESS AFTER EXPIRATION OF EXPERT REPORT DEADLINES**

I, Ian S. Marx, declare and state:

1. I am an attorney and a Shareholder with Greenberg Traurig, LLP, attorneys for the Marriott Defendants,[1] and have full knowledge of and am competent to testify to all matters stated herein. I respectfully submit this Declaration in opposition to Plaintiffs' expert request.

**I.    Plaintiffs' Affirmative Expert Reports**

2. On October 26, 2018, the parties exchanged affirmative expert reports. Plaintiffs served reports from Chekitan Dev, who addressed the alleged "halo" and "horn" effects caused by the MVC Affiliation, and from Jonathan Simon, who purported to quantify the alleged "halo" effect.

**II.    The Marriott Defendants' Service of Rebuttal Reports and Production of SMS Data**

    **A.    The Marriott Defendants' Rebuttal Experts' References to SMS Data**

---

[1] Capitalized terms are defined in the Marriott Defendants' accompanying memorandum.

1

3. On December 28, 2018, the Marriott Defendants served rebuttal reports, including a report from Dr. Ceridwyn King, which rebutted Dr. Dev's report, and a report from Dr. Mark Israel, which rebutted both Dr. Dev's and Mr. Simon's reports.

4. One of the fundamental criticisms in Drs. King's and Israel's reports is that Plaintiffs' experts did not rely on any statistical or empirical data to support their conclusions. In December 2018, in response to Plaintiffs' experts' reports, the Marriott Defendants explored whether any such data existed. They were directed in that regard to the SMS, which are given to actual and prospective purchasers of MVC Points (collectively, "Points Purchasers") after sales presentations to assess their perceptions of same.

5. The Marriott Defendants determined that two of the SMS questions – which asked Points Purchasers to (a) state whether each of 28 different "features associated with" the MVC Program was "important" to their decision to purchase MVC Points, including "the ability to use Points to stay at a Ritz-Carlton Club," and (b) then rank the "features" that they considered important – were potentially relevant to Plaintiffs' halo effect argument. They thus compiled and provided to Drs. King and Israel a compilation of the answers to these questions.

6. A third SMS question, which merely measures Points Purchasers' satisfaction with the sales presentation of the features (rather than their satisfaction with the features themselves), was deemed irrelevant. *See* **Exhibit A**, a true and correct excerpt of the transcript of Urcil Peters' February 13, 2019 deposition.

7. The results for the two questions described in paragraph 6 above were referenced by Drs. King and Israel in their reports to show that, although Dr. Dev and Mr. Simon had not relied on any statistical or empirical data, relevant data known to the Marriott Defendants reveals

2

that "the ability to use [MVC] Points to stay at a Ritz-Carlton Club" was: (a) consistently among the lowest five out of 28 features rated as "important" by Points Purchasers; and (b) consistently ranked by only 3%-5% of all Points Purchasers as among the top five most important features.

      **B.**      **The SMS Data Was Beyond the Scope of Plaintiffs' Discovery Requests and the Parties' Agreed-Upon ESI Protocol**

8. During the over two-year fact discovery period in the case, Plaintiffs never sought any documents from the Marriott Defendants or served any interrogatories regarding, or asked the Marriott Defendants to identify witnesses knowledgeable of, Points Purchasers' perceptions of the availability of Ritz-Carlton Clubs to MVC members or its potential impact on a purchasing decision. A detailed explanation of how the SMS data was not responsive to Plaintiffs' document requests is set forth in my letter dated January 11, 2019 (ECF#363 at 9-13).

9. Only after Plaintiffs served the Dev and Simon reports, the Marriott Defendants realized the SMS data might be relevant or could be used by their rebuttal experts, at which point it was provided to the rebuttal experts to consider whether it was relevant or could be included in their reports. The utility of the SMS documents was not determined until the reports were being finalized. The SMS data was thus not identified in the Marriott Defendants' initial Rule 26 disclosures, or in any supplementation thereof, before December 28, 2018.

10. The SMS data was also beyond the scope of the parties' agreed-upon protocol for the review and production of electronically stored information ("ESI"), and thus was not retrieved by the Marriott Defendants in their search of electronic records. In 2016, the parties engaged in a protracted negotiation regarding, and ultimately agreed upon, search terms and custodians to be used for the collection of ESI (ECF#295-2). The SMS does not concern or even mention the

3

"MVC Affiliation" (a term that was used to tailor many of the agreed-upon search terms), and Mr. Peters was not one of the agreed-upon ESI custodians.

### C. The Production of SMS Documents and Amendment of Rule 26 Disclosures

11. Because the SMS documents were provided to Drs. King and Israel and is referenced in their reports, the Marriott Defendants provided Plaintiffs with copies of these documents on December 28, 2018, simultaneously with service of the rebuttal expert reports. True and correct excerpts of the SMS documents that were produced on December 28, 2018, are attached as **Exhibits B, C, and D**. On the same date, the Marriott Defendants amended their Rule 26 disclosures to reference the SMS documents, and to identify Mr. Peters (who manages MORI's Consumer Insights and Research Department, which is responsible for creating and maintaining the SMS) as a knowledgeable witness (ECF#367-1).

### III. The Parties' Agreement Regarding the Completion of Expert Discovery

#### A. The January 11 Agreement

12. In a January 8, 2019 letter, Plaintiffs' counsel complained the SMS documents were requested during discovery and wrongfully not produced, and demanded that the Marriott Defendants produce additional documents and witnesses, permit Plaintiffs' experts to revise their reports, and defer expert depositions (ECF#367-2). In a January 11, 2019, letter, I rebutted Plaintiffs' contentions, but proposed a framework for resolving the dispute (ECF#363 at 9-13).

13. In a January 14, 2019, call with Plaintiffs' counsel, they agreed to the proposal set forth in my January 11, 2019, letter. Specifically, the parties agreed that the Marriott Defendants would produce the data underlying the SMS results, make Mr. Peters available for deposition, and permit Dev and Simon to amend their reports to address the SMS documents (to which Drs. King

4

and Israel would respond); and the parties would renegotiate a schedule for the completion of expert discovery and embody the terms of their agreement in an amendment to the Scheduling Order, which the parties would jointly submit to the Court (as per past practice).

14. On January 15, 2019, in reliance on our agreement, the Marriott Defendants produced backup data and documents used to prepare various reports summarizing the SMS data.

### B. The Subsequent Dispute Concerning the SMS Reports

15. During a call on January 28, 2019, Plaintiffs' counsel Michael Reiser and Matthew Ferguson expressed dissatisfaction with the SMS documents that were produced and asked the Marriott Defendants to search for and produce any summaries or other documents discussing the SMS. During that call, Messrs. Reiser and Ferguson reaffirmed the parties' agreement to the proposal in my January 11, 2019, letter. Messrs. Reiser and Ferguson and I further agreed to amend the Scheduling Order to reflect deadlines for service of supplemental reports by Mr. Simon and Drs. Dev, King, and Israel and revised deadlines for expert depositions and certain motions, and to jointly submit such amendment to the Court.

### C. The February 7 Agreement and the Marriott Defendants' Compliance

16. Notwithstanding the parties' January 11, 2019, agreement, Plaintiffs continued to seek additional SMS documents from the Marriott Defendants. On February 4, 2019, I wrote to Plaintiffs' counsel to advise them of the existence of an additional potentially relevant SMS report, which the Marriott Defendants agreed to produce on the condition that this would resolve all outstanding discovery disputes as to the SMS. I also made clear to Plaintiffs' counsel that the Marriott Defendants did not intend to make any further document productions.

5

17. On February 7, 2019, the parties reached a further agreement to resolve all outstanding disputes relating to the SMS: the Marriott Defendants would produce certain additional documents and would make certain representations that additional documents could not be located through the agreed-upon ESI protocol. True and correct excerpts of the emails reflecting the February 7 agreement are attached as **Exhibit E**. We agreed that if the terms of the agreement were satisfied, there would be no further discovery relating to the SMS.

18. By February 12, 2019, the Marriott Defendants produced to Plaintiffs the additional documents they agreed to produce, and made the agreed-upon representations. On February 13, 2019, the Marriott Defendants produced Mr. Peters for deposition, as they had agreed.

    **D.**    **The Scheduling Order Addendum**

29. On February 14, 20 and 28, 2019, the Marriott Defendants circulated drafts of a Fourth Additional Case Schedule Addendum and Order consistent with our agreement. Because Plaintiffs' counsel did not respond to any of these drafts, on March 7, 2019, the Marriott Defendants filed a Status Report, which summarized the issues and requested that the Court enter a revised Scheduling Order in accordance with the parties' agreement (ECF#361).

**IV.**    **Plaintiffs' Belated March 12, 2019 Proposal Regarding an Additional Expert**

20. On a March 12, 2019 call with counsel, Plaintiffs raised – for the first time after more than two months of negotiations and agreements relating to the SMS – a request to serve an additional free-standing expert report from Mr. Bass, a previously undisclosed expert in statistical analysis, regarding the impact of the SMS results on their damage claims.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 28, 2019                                      */s/ Ian Marx*_____
Richmond, Virginia                                                          IAN S. MARX