# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Gordon P. Gallagher, United States Magistrate Judge

Civil Action No. 16-cv-1301-PAB-GPG

RCHFU, LLC *et al.*,

    Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION *et al.*,

    Defendants.

# ORDER REGARDING PLAINTIFFS' REQUEST FOR SUPPLMENTAL EXPERT REPORTS

This matter comes before the Court on Plaintiffs' request for supplemental expert reports (ECF #376)[1] (which was referred to this Magistrate Judge (ECF #381)), Aspen Highland's amended response (ECF #375), the Marriott Defendants' opposition (ECF #377), and Marriott's restricted documents (ECF #378). The Court has reviewed each of the aforementioned documents, responses, replies, and any attachments. The Court has also considered the entire case file, the

---

[1] "(ECF #376)" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). I use this convention throughout this Order.

1

applicable law, and is sufficiently advised in the premises. The Court ORDERS as follows DENYING the motion.[2]

Factual and procedural background:

> "On October 26, 2018, Plaintiffs served reports from experts with whom they had been working for over a year: Chekitan Dev, a professor and hospitality industry "branding" expert who addresses so-called "halo" and "horn" effects of the MVC Affiliation, and Jonathan Simon, a supposed hospitality industry financial expert who purports to quantify the alleged "halo" effect. On December 28, 2018, the Marriott Defendants submitted rebuttal expert reports from Ceridwyn King, a hospitality industry branding expert who rebuts the Dev report, and Mark Israel, an economist who rebuts both the Dev and Simon reports. *Id.* ¶ 3. As part of their rebuttal of the supposed halo/horn effect, King and Israel cite data from Sales and Marketing Surveys taken from 2013 to 2018.

Marriott's response (ECF #377, pp. 1-2) (internal citations removed). The Sales and Marketing Surveys (SMS) are yet another set of surveys in a case chock full of surveys. In the SMS, Marriott asks various individuals, e.g., owners who have purchased, owners who have not purchased, non-owners who have purchased and non-owners who have not purchased, to identify important factors in their decision making. *See* surveys (ECF #378). Not surprisingly, one of the factors queried is regarding owner availability to utilize a Ritz-Carlton Club. *Id*.

Upon determining to utilize the SMS for expert rebuttal, Marriott then disclosed the existence of the SMS on 12/28/2018. This led to some consternation and disagreement between the parties over the topic, landing us here.

Plaintiffs believe that the SMS and associated documents justify Plaintiffs retaining a new expert, to analyze and opine on the data and that Plaintiffs are justified in their need and timing of

---

[2] Any party may object to this non-dispositive Order within fourteen (14) days. Fed.R.Civ.P. 72(a).

that need pursuant to Federal Rules of Civil Procedure 16(b)(4) and 6(b)(1)(B). Marriott opposes (ECF #377). Aspen Highlands does not oppose so long as they are not affected. *See* Aspen Highland's amended response (ECF #375).

The agreement:

Before delving into-if I get there- the various arguments for and against allowing Plaintiffs another expert to address this topic, the first issue is whether Plaintiffs and Marriot entered into an agreement to informally resolve this conflict-thus precluding the Court's involvement. Marriott asserts that, while it disputed Plaintiffs' position that the SMS survey needed to be provided prior to December 28, 2018, Marriott wanted to avoid another protracted discovery dispute and thus entered into an agreement to address and move beyond the issue. *See* Marx declaration (ECF #377-1). Plaintiffs do not dispute that there was an agreement touching on this issue but do dispute the contours of that agreement, in particular as to whether the agreement precluded Plaintiffs from designating a new expert on the topic. *See* Plaintiffs' request (ECF #376, p. 7).

Marriott outlines what is believed were the specifics of an agreement in a letter from Counsel Marx to Plaintiffs' Counsel on January 11, 2019. The terms of the proposed agreement are:

> In terms of additional documents, we will produce on or before Tuesday, January 15, the backup data and documents that were used to prepare the SMS Reports.
>
> We will agree to make Messrs. Peters and Sonberg available for deposition in our Orlando offices (we can arrange a video conference if you wish) on the following dates (we propose that they be done on the same day): January 28, February 1, 4, 5, 7 or 8. Their depositions will be limited to the template SMS Survey and the SMS Reports (Peters) and the MVC Points pricing spreadsheets (Sonberg).
>
> We will agree that your experts Simon and Dev (but not Robinson) may

3

> submit amended affirmative reports on or before 14 days after the depositions of Messrs. Peters and Sonberg are completed; however, such amendments must be limited to the SMS Survey, SMS Reports and the MVC Points pricing spreadsheets. Our experts King and Israel (but not Dunec or Tantleff) will submit similarly limited rebuttal reports within 14 days of receiving your amended reports.
>
> We will agree to defer the deadline for completion of expert depositions for 45 days after the service of all expert reports.

(ECF #376-5, p. 5). Marriott's Counsel goes on to further substantiate why he believed the agreement had been accepted. Counsel Marx discusses a telephone call on January 14, 2019 during which it is stated that the January 11, 2019 agreement was accepted. *See* Marx declaration (ECF #377-1, p. 4, para. 13). Counsel Marx discusses the additional Peters' deposition, referenced *infra*, which occurred February 13, 2019. Marx declaration (ECF #377-1, p. 6, para. 18). In terms of supplemental expert reports from Simon and Dev, it does not appear that the parties ever got to that point as matters broke down in March 2019 when Plaintiffs expressed that they wanted a new expert. *Id*. at para. 20.

Plaintiffs believe that the terms of the agreement were limited to production of the SMS documents and did not include any agreement with regard to experts. *See* Riser declaration (ECF #376-1).

Regarding whether there was or was not an agreement between the parties that would preclude the Court even wading into the topic of an additional expert, the evidence is murky. All parties herein are represented by competent and assiduous Counsel who were perfectly capable of fully documenting any agreement reached on this topic. As Marriott correctly notes, the Court should and must encourage resolution of discovery disputes between the parties in an effort to better secure the just, speedy, and inexpensive determination of matters. *See Hoelzel v. First Select Corp.*, 214 F.R.D. 634, 635 (D. Colo. 2003); *see also* D.C.COLO.LCivR 7.1(a). Here, Marriott

4

appropriately outlined the specifics of an agreement, point by point, by way of a proposal to resolve this issue short of Court intervention. The problem here is not with the detail or manner of the initial proposal but with the follow-on actions failing to document acceptance or rejection of the agreement or any modification of the initial proposal. Plaintiffs want to construe this as a situation where there was a limited agreement as to production of the SMS documents and a deposition of a non-expert, Peters. Beyond that, Plaintiffs do not believe they entered into an agreement and think they were free to move the Court for an additional expert. Marriott believes there was an agreement encompassing the entire topic.

Without more, the Court determines that Marriott has persuasive evidence. Both sides have declarations from Counsel outlining their respective positions. Neither side has a final consummated agreement. What Marriott has is the last written document the Court has been provided on the topic (the February 4, 2019 letter), a detailed multi-stage plan set forth therein, and partial performance of the first two stages. The combination of the January 11, 2019 letter, the production of the SMS documents, and the additional Peters deposition lead the Court to determine that there was a consummated agreement binding the parties to the entirety of the agreement set forth in the January 11, 2019 letter. To that end, the remedies set forth in that letter are those that will be enforced by the Court for resolution of this matter.

Fairness of the agreement:

While the Court could likely end the analysis at this point, resting on the fact that the Court finds the stated agreement precludes Plaintiffs from identifying a new expert at this late stage, the Court feels compelled to comment on this situation in context of the greater case.

Most cases of any magnitude include some jockeying and strategic determinations by either side as to whether items are or are not discoverable. Regarding the SMS documents, there are arguments both ways. Fundamentally, the Court does not find Marriott at fault for determining not to disclose the SMS surveys prior to December 28, 2018-although the Court can certainly see positions the other way on this score. The SMS survey touches, very briefly, on the Ritz-Carlton Club and seems somewhat exculpatory-although that alone is certainly not reason for non-disclosure. Marriott's likely view that the SMS survey was supportive and exculpatory-to use a term from criminal law- goes towards why Marriott decided in the first instance to utilize the SMS in support of its' own position. Nevertheless, with regard to most of the SMS data, Ritz-Carlton was a very minor point and is a very different kind of survey from that involving joinder. *See* ECF #378. The Court does not find any discovery violation for the initial decision to not disclose the SMS survey nor for the reversal of that decision when a review of Plaintiffs' expert reports revealed the relevance of documents previously determined irrelevant. Upon determining the relevance of the documents Marriott did what was required, it disclosed them. The dispute around the edges of the issue in terms of the extent of the disclosure was resolved by the parties, resulting in a negotiated level of documents as set forth in the January 11, 2019 letter.

While the Court certainly believes Plaintiffs deserve an opportunity to rebut and utilize the data, the data is not of such significance that a new expert is necessary or appropriate at this date. The remedy suggested and the Court finds was agreed to in terms of the January 11, 2019 plan is a fair balancing of the weightiness of this topic with an appropriate resolution. Ultimately, the parties came to a resolution significantly similar to what the Court may have crafted if left to its own devices. While the parties may have and certainly do express different positions as to the import of the SMS survey, the Court finds the negotiated middle ground most accurately reflects

the level of significance of the SMS survey to the case, balancing the stage of the case, the need to move forward and not tumble back into another endless round of discovery which is now years in the works, the relative importance/or lack of importance of the SMS survey, and the unlikely event that a new round of discovery on this discrete topic would lead to further relevant evidence. The negotiated agreement appropriately balances the factors set forth in *Smith v. United States*, 834 F.3d 166, 169 (10th Cir. 1987) ((1) imminence of trial, (2) whether the motion is opposed, (3) prejudice to the non-movant, (4) the foreseeability of additional discovery, and (5) the likelihood that any further discovery will lead to relevant evidence).

For the foregoing reasons, the Court DENIES the motion for supplemental expert reports, beyond what was agreed to in the January 11, 2019 plan and further finds the plan to be an enforceable agreement between the parties.

Dated at Grand Junction, Colorado, this April 7, 2019.

_____
Gordon P. Gallagher
United States Magistrate Judge