**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-01301-PAB-GPG

**RCHFU, LLC**, a Colorado limited liability company, et al.,

Plaintiffs,

v.

**MARRIOTT VACATIONS WORLDWIDE CORPORATION**, a Delaware corporation, et al.,

Defendants.

---

**ASPEN HIGHLANDS CONDOMINIUM ASSOCIATION'S
RESPONSE IN OPPOSITION TO PLAINTIFFS'
MODIFIED MOTION TO AMEND
THE SCHEDULING ORDER AND COMPLAINT (ECF 379)**

---

Plaintiffs' Modified Motion to Amend the Scheduling Order and Complaint ("Modified Motion," or "Mod. Mot.," ECF 379) suffers from the same flaws and overbreadth as their original Motion to Amend the Scheduling Order (ECF 337).  Plaintiffs seek to add an entirely new claim for relief against Defendant Aspen Highlands Condominium Association ("Association"), despite this Court's repeated findings that the Association committed "absolutely no misconduct or violation" that would warrant such a sanction against the Association.  ECF 330 at 29.  Plaintiffs' Modified Motion must be denied as to the proposed amendments affecting the Association.

Plaintiffs attempt to avoid this outcome by framing their Modified Motion as a remedy against only the Marriott Defendants for the Marriot Defendants' failure to produce the 2013 Affiliation Agreement: "Plaintiffs seek leave to add additional facts to an existing aiding and

1

abetting a breach of the duty to exercise reasonable care claim against *Marriott*, which concealed the 2013 Affiliation Agreement from the Association." Mod. Mot. at 1 (emphasis added). But this is misleading for two reasons. First, Plaintiffs have never before pleaded a claim for breach of the duty of care either primarily against the Association or secondarily against the Marriott Defendants in this now years-long litigation. Second, the sanctions Plaintiffs propose— amendments to the complaint that include the brand new duty-of-care claim—apply directly to the Association, and only secondarily to the Marriott Defendants. Thus, Plaintiffs' Modified Motion is not limited in its impact to just the Marriott Defendants. Quite the opposite, it is targeted principally at the Association.

The Court has repeatedly warned Plaintiffs (on at least three occasions) to avoid requesting sanctions like these that apply directly to the Association. ECF 330 at 29; ECF 369 at 2–4; ECF 387 at 10. This is because, as the Court has found, the Association committed "absolutely no misconduct or violation" regarding the Marriott Defendants' failure to produce the 2013 Affiliation Agreement. ECF 330 at 29. This finding that the Association committed *no* violation means that Plaintiffs' requested amendments violate the rule that sanctions can only be imposed upon the party at fault. Legal error aside, Plaintiffs' requested amendments also substantially prejudice the Association. If Plaintiffs' new, and substantially different, amendments are allowed, the Association will be required to conduct fact discovery (beyond the additional depositions already granted by the Court) and to file new dispositive motions.

Plaintiffs have disregarded the Court's instruction concerning the permissible scope of their proposed amended complaint. The Court should deny the Modified Motion.

## ARGUMENT

I.   **The Court should deny the Modified Motion because, as the Court has repeatedly found, the Association committed no discovery violation.**

Throughout the side litigation on the 2013 Affiliation Agreement, the Court has repeatedly found that the Association committed no discovery violation and that any sanctions must be narrowly tailored to the Marriott Defendants' failure to produce the 2013 Affiliation Agreement, with as little spill-over as possible on the Association:

- In its New-Year's-Eve Order granting in part and denying in part Plaintiffs' motion for sanctions against the Marriott Defendants, the Court found that the Association committed no discovery violation: "I find absolutely no misconduct or violation by [the Association]." ECF 330 at 29.

- Faced with Plaintiffs' overreaching and ill-defined initial motion to amend the scheduling order and amend the complaint (ECF 337), which the Court denied with leave to re-file, the Court reiterated its finding of "absolutely no misconduct or violation by [the Association]."  ECF 369 at 2.  The Court denied Plaintiffs' requests in part because "[t]he scope of Plaintiffs' requests in their motion to amend … goes significantly beyond the direction provided by the Court in the New Year's Eve Order" that the Association "did nothing wrong at all."  *Id.* at 3–4.  The Court admonished Plaintiffs that "any future" sanctions requests must be "narrowly tailored to address only the failure to provide the Affiliation Agreement."  *Id.* at 4.

- And in its most recent order denying Plaintiffs' motion for additional remedies, the Court re-reiterated its finding of "absolutely no misconduct or violation by [the Association]." ECF 387 at 2.  The Court further clarified that sanctions for failure to produce the 2013

Affiliation Agreement, if any, are not meant to "to afford one party a possible leg up." *Id.* at 10.  The Court explained that its intent was to craft a narrowly-tailored remedy that would "have as little spill-over as possible to [the Association] as that Defendant did not create the violation."  *Id.* at 7.

In sum, the Court has repeatedly made its intent clear (could it be clearer?) to Plaintiffs that any sanctions must be narrowly tailored to remedy the *Marriott Defendants'* failure to produce the 2013 Affiliation Agreement with as little ancillary prejudice as possible on the *Association*.

Yet Plaintiffs' proposed sanction—the Seventh Amended Complaint ("SAC," ECF 379-2)—violates the Court's clear command by seeking to add a new claim and new allegations *against the Association*.  The thrust of Plaintiffs' proposed SAC is their brand-new duty-of-care claim, which is alleged primarily against the Association and only secondarily against the Marriott Defendants.  *Compare* SAC ¶ 105 (stating a new claim for relief that the Association breached its duty of care by failing to "request[] or read[] the 2013 Affiliation Agreement"); *with id.* ¶ 125 (stating a new claim for relief that the Marriott Defendants secondarily aided and abetted the Association's primary breach of the duty of care).  Indeed, the vast majority of the new allegations in the proposed SAC regard the Association's conduct, *not* Marriott's.  *Compare id.* ¶¶ 85, 88, 89, 90, 91, 93, 105 (allegations concerning the Association and the 2013 Affiliation Agreement); *with id.* ¶¶ 86, 111, 125 (allegations concerning Marriott and the 2013 Affiliation Agreement).  These amendments violate this Court's oft-repeated admonition to the Plaintiffs' not to seek sanctions that apply directly to the Association.  The Modified Motion should be denied on this basis alone.

Yet even looking past the fact that the Modified Motion violates the Court's orders, it also violates the legal precept that a sanction can't be levied on a faultless party, such as the Association. *See White v. Gen. Motors Corp.*, 908 F.2d 675, 678 (10th Cir. 1990). Imposition of sanctions requires precisely the opposite finding—"that the party was aware of the wrongdoing." *Id.* Indeed, sanctions can only "be … levied upon the person responsible for the violation." *Id.* To be sure, the Court contemplated that "amendment of claims" might be a permissible sanction against the Marriot Defendants as the party responsible for the violation. ECF 330 at 30. But the proposed SAC, in contrast, asks the Court to permit amendment of claims against the Association, despite the fact that the Court specifically found that the Association had absolutely no part in the failure to produce the 2013 Affiliation Agreement. Plaintiffs' Modified Motion should be denied for this additional reason.

## II.   Plaintiffs have never before pleaded a duty-of-care claim.

Plaintiffs contend that all along they have pleaded a breach-of-the-duty-of-care claim against the Association and that their requested amendments merely add more "detail on how Marriott aided and abetted that breach." Mod. Mot. at 3–4. That is false. Not once in Plaintiffs' Sixth Amended Complaint (or the five complaints before that) did Plaintiffs put the Association on notice that they were asserting a claim for breach of the duty of care. Phrases that might provide notice to the Association of a duty-of-care claim—such as "duty of care," "reasonable care," or simply "care"—never appear in the Sixth Amended Complaint (or any other).

The substantive differences between a duty-of-loyalty claim and a duty-of-care claim demonstrate why the Association must be put on notice of the specific claim that Plaintiffs purport to allege. To succeed on their duty-of-loyalty claim, Plaintiffs must prove that the

5

directors of the Association put their personal interests above the Association's interests when they agreed to affiliate with the Marriott defendants. *Kullgren v. Navy Gas & Supply Co.*, 135 P.2d 1007, 1010 (Colo. 1943) (explaining that a corporate director owes a duty of "loyalty and allegiance to his corporation, a loyalty that is undivided and an allegiance that is influenced in action by no consideration other than the welfare of his corporation."); *see also Kim v. Grover C. Coors Tr.*, 179 P.3d 86, 91 (Colo. App. 2007) (same). To succeed on their proposed duty-of-care claim, by contrast, Plaintiffs must prove that the Association's directors failed to make a decision on an informed basis. *Ajay Sports, Inc. v. Casazza*, 1 P.3d 267, 275 (Colo. App. 2000) (explaining that directors must "act with requisite care in the discharge of their duties" by "inform[ing] themselves … before making a business decision … of all material information reasonably available to them"). Whereas a duty-of-loyalty claim examines the content of the director's decision (did the best interests of the Association take precedence over personal interests of a director?), a duty-of-care claim examines the process surrounding the decision (did the director consider all material information before making the decision?). The factual differences between these questions are self-evident, which is why plaintiffs often assert breach of the duty of care and breach of the duty of loyalty as separate claims.[1] Each claim requires distinct proof and is a distinct basis for liability.

Here, Plaintiffs never previously pleaded the kind of substantive facts that might put the

---

[1] *E.g.*, *Official Comm. of Unsecured Creditors v. Meltzer*, 589 B.R. 6, 13 (D. Me. 2018) ("The … Complaint asserts claims … for breach of the duty of loyalty (Count I), [and] breach of the duty of care (Count II)."); *In re Bridgeport Holdings, Inc.*, 388 B.R. 548, 554 (Bankr. D. Del. 2008) ("Count I alleges breach of fiduciary duty of loyalty and lack of good faith …,  Count II alleges breach of fiduciary duty of care and lack of good faith."); *see also McMullin v. Beran*, 765 A.2d 910, 921 (Del. 2000) (analyzing duty-of-loyalty allegations and duty-of-care allegations separately).

Association on notice of a duty-of-care claim.  In their previous complaints, Plaintiffs never alleged that the Association or its directors failed to consider material information or otherwise acted on an uninformed basis.  And of course, Plaintiffs' never previously alleged that the Association failed to consider the 2013 Affiliation Agreement, because Plaintiffs were unaware of that agreement.  But critically, Plaintiffs also never alleged in any of their prior complaints that the Association failed to consider or inform itself about any other material information relating to the affiliation.  On both form and substance, then, Plaintiffs' previous complaints failed to put the Association on notice of a duty-of-care claim.

Plaintiffs point to paragraph 89 of the Sixth Amended Complaint and say it is there that they alleged a duty-of-care claim.  Mod. Mot. at 3 (citing Sixth Am. Compl., ECF 250, ¶ 89).  But—again—that assertion is false.  The phrase in paragraph 89 that Plaintiffs highlight—"by failing to act as a reasonably prudent fiduciary"—refers to the Association's alleged breach of its duty of loyalty, not the duty of care.  Paragraph 89 explains how the Association allegedly breached "this duty," the antecedent of which is in paragraph 88 that the Association "had a duty to act with the utmost good faith and loyalty"—*i.e.* to exercise their duties in accordance with the duty of loyalty, not the duty of care.  *Orman v. Cullman*, 794 A.2d 5, 14 (Del. Ch. 2002) ("[T]he duty to act in 'good faith' is merely a subset of a director's duty of loyalty").  Moreover, the way in which Plaintiffs assert their supposed claim in paragraph 89 makes clear that their reference to the Association's alleged failure to "act as a reasonably prudent fiduciary" is tied directly to their allegation that the Association breached its fiduciary duty of loyalty by failing to enforce the terms of the Declaration—a claim that this Court already dismissed.  ECF 210 at 22.  And indeed, nowhere else in Plaintiffs' previous complaints do allegations concerning the

Association's alleged failure to inform themselves or otherwise act with reasonable diligence appear: Plaintiffs nowhere use terms such as "inform" or "reasonably prudent" in relation to the Association's alleged fault in any iteration of their complaint (other than in paragraph 89).

In fact, had Plaintiffs pleaded a duty-of-care claim all along, they'd have said so in response to the four dispositive motions that the Association filed seeking dismissal of Plaintiffs' first claim for relief.  *See* ECF 46, 83, 129, 319.  In those motions, the Association sought dismissal of Plaintiffs' breach-of-fiduciary-duty claim, citing cases and advancing arguments applicable to a claim for breach of the fiduciary duty of loyalty.  Yet not once in any of Plaintiffs' responses to those motions did Plaintiffs assert that their first claim for relief was actually premised on both the duty of care *and, separately*, on the duty of loyalty.  Nor did Plaintiffs seek to amend their complaint to add a duty-of-care claim in the yawn between the date the Association filed its last motion to dismiss (April 14, 2017, ECF 129) and when the Court issued its order on that motion to dismiss (March 29, 2018, ECF 210).  The diligence of a party seeking to amend a scheduling order is the key factor in determining whether grant the motion to amend under Fed. R. Civ. Proc. 16(b).  *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001).  Yet here Plaintiffs have waited years to assert a duty-of-care claim.

In short, Plaintiffs never pleaded a duty-of-care claim in any of their previous complaints. For Plaintiffs to dissimulate that they have asserted such a claim all along, simply to avoid the appearance of seeking substantive sanctions remedies against the Association, is, at best, disingenuous.

**III.    The Modified Motion, if granted, will prejudice the Association, delaying this litigation while the Court considers new dispositive motions and the parties conduct additional discovery.**

Looking past the legal error attendant in Plaintiffs' proposed SAC (which by itself is reason enough to deny Plaintiffs' Modified Motion), the Court should deny the Modified Motion as to the Association because the SAC will, if permitted, severely prejudice the Association. Under Federal Rule of Civil Procedure 15, a motion to amend a complaint must be denied if it will prejudice a defendant. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1208 (10th Cir. 2006). Prejudice results from an amended complaint when the amendments "raise significant new factual issues." *Id.* That is the case here.

As explained, the proposed SAC adds a new duty-of-care claim and related allegations concerning the 2013 Affiliation Agreement. If these amendments are permitted, the Association will be forced to expend substantial resources conducting new discovery on the 2013 Affiliation Agreement. At a minimum, the Association likely would request additional depositions related to the 2013 Affiliation Agreement—new depositions beyond those already ordered by the Court. Additionally, as explained below, the amendments are futile requiring a new motion to dismiss. And, should the claim survive a motion to dismiss, the Association would seek to file a new motion for summary judgment that addresses these allegations.

In their reply in support of their earlier motion to file the SAC, Plaintiffs argued that there was no prejudice to the Association because Plaintiffs had already alleged a duty-of-care claim. ECF 356 at 8–9. But that argument is circular and, for the reasons described above, is erroneous. The new factual issues posed by the SAC could take a significant amount of time to sort out. This would put the duty-of-care claim on a separate path from the rest of the claims at issue in

9

the case, further complicating scheduling and pre-trial matters. Given this considerable prejudice, the Modified Motion should be denied.

## IV.    The proposed amendments in the Seventh Amended Complaint are futile.

Plaintiffs' proposed amendments should be denied for an additional reason: they are futile. *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999) ("[A] district court may deny leave to amend where amendment would be futile."). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Id.* The Association fully briefed the futility of Plaintiffs' proposed amendments in its initial response in opposition to Plaintiffs' request to amend the scheduling order to file the SAC, ECF 342 at 9–12, and fully incorporates those arguments here. But in short, the proposed amendments are futile for two reasons. First, the business judgment rule protects the Association from liability for any breach of the duty of care concerning the 2013 Affiliation Agreement. The Association exercised sound business judgment when it relied on its counsel at the time, Mike Marino, to review and negotiate the 2013 Affiliation Agreement. *Id.* at 9–11. Second, the economic-loss rule bars the new duty-of-care claim because the Declaration imposes on the Association's directors a duty of "reasonableness" identical to the duty of care imposed on directors of a homeowners' association by law. *Id.* at 12. As a result, the amendments are futile and the Modified Motion should be denied as to the new claim against the Association.

## V.    The Court should strike the offending allegations and new claim from Plaintiffs' proposed SAC.

Plaintiffs' requested sanction, the proposed SAC, severely prejudices the Association despite this Court's finding that the Association was not at fault and is not the party to be sanctioned. The Court can (and should) deny the Modified Motion as to the Association on this

basis.  To do so, the Court should, at a minimum, strike from the SAC all allegations of a breach of the duty of care by the Association.

As this Court already ordered, Plaintiffs' sanctions requests must be "narrowly tailored to address only the [Marriott Defendants'] failure to provide the Affiliation Agreement."  ECF 369 at 4.  To comply with this mandate, the sanctions must have "as little spill-over as possible to" the Association.  ECF 387 at 7 (emphasis added).  At a minimum, this means that the new duty-of-care claim in paragraph 105 of the SAC asserted against the Association must be stricken from the Complaint.  It also means that the "factual" allegations in paragraphs 85, 89, and 93, which concern the Association and the 2013 Affiliation Agreement and allege a breach of the duty of care, should be stricken as well.  Apart from denying Plaintiffs leave to amend entirely, these expurgations are necessary to comply with the Court's narrow-tailoring command.

To be sure, Plaintiffs' proposed SAC contains some factual and legal allegations that may be permissible.  The Association understands that the Marriott Defendants do not oppose certain of the amendments proposed in the SAC, although the Association leaves it to the Marriott Defendants and the Plaintiffs to articulate for the Court exactly which amendments those are.  Some of Plaintiffs' proposed new factual allegations may be reasonable to remedy the Marriott Defendants' failure to produce the 2013 Affiliation Agreement.[2]  But for the reasons discussed

---

[2] For example, the need to excise the duty-of-care allegations against the Association does not automatically prohibit Plaintiffs from alleging their new aiding-and-abetting claim against the Marriott Defendants.  There is no bar to trying an aiding-and-abetting claim against the aider-and-abettor alone without also pressing claims against the alleged underlying wrongdoer; it happens regularly in corporate litigation.  *E.g.*, *In re PLX Tech. Inc. Stockholders Litig.*, No. CV 9880-VCL, 2018 WL 5018535, at *2 (Del. Ch. Oct. 16, 2018) (explaining that the primarily liability claims were dismissed or settled, and only secondary, aiding-and-abetting claim went to trial); *In re Rural Metro Corp.*, 88 A.3d 54, 63 (Del. Ch. 2014) (same), *decision clarified on denial of reargument sub nom. In re Rural Metro Corp. Stockholders Litig.* (Del. Ch. 2014).

above, the allegations and legal conclusions concerning the Association in paragraphs 85, 89, 93, and 105, regarding the Association's alleged breach of a duty of care, are prejudicial, outside the scope of the Court's order, and impermissible—they must be stricken from the SAC.

## CONCLUSION

The Court's Orders about the permissible scope of sanctions remedying the Marriott Defendants' failure to produce the 2013 Affiliation Agreement have been crystalline: any sanctions must have as little effect as possible on the Association because the Association did nothing wrong. But the Plaintiffs' proposed sanction, the SAC, violates that clear command and the rule that a sanction can only be entered against the party at fault, but not against a faultless party like the Association. The SAC adds a new duty-of-care claim and a host of new allegations against the Association concerning the 2013 Affiliation Agreement, despite the fact that the Court has found that the Association committed "absolutely no misconduct or violation." Yet legal error aside, the SAC, if permitted, would require new dispositive motions and additional fact discovery—precisely the kind of prejudice Fed. R. Civ. Proc. 15 prohibits. For these reasons, the Modified Motion should be denied. But at a minimum, the new duty-of-care claim and the new allegations in the SAC applying directly to the Association should be stricken.

---

Here, the Association understands that the Marriott Defendants do not oppose amendments in the proposed SAC to include new allegations concerning the new aiding-and-abetting claim. Whether Plaintiffs successfully can state a claim against the Marriott Defendants for aiding and abetting a breach of the duty of care is a separate question that is not at issue at this stage, and one on which the Association need not opine. Moreover, if the aiding-and-abetting claim survives to trial, remedial measures would be appropriate to prevent evidence concerning the 2013 Affiliation Agreement from prejudicing the Association at trial. For example, trial could be bifurcated on this claim against the Marriott Defendants and any evidence pertaining to the 2013 Affiliation Agreement.

Respectfully submitted this 18th day of April, 2019.

*/s/ Jessica Black Livingston*
Jessica Black Livingston
Andrew C. Lillie
Andrew M. Nussbaum
HOGAN LOVELLS US LLP
1601 Wewatta Street, Suite 900
Denver, Colorado 80202
Telephone: (303) 899-7300
FAX: (303) 899-7333
E-mail:jessica.livingston@hoganlovells.com
E-mail:andrew.lillie@hoganlovells.com
E-mail:andrew.nussbaum@hoganlovells.com
*Attorneys for Defendant Aspen Highlands*
*Condominium Association*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 18th day of April, 2019, a true and accurate copy of the foregoing **ASPEN HIGHLANDS CONDOMINIUM ASSOCIATION'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MODIFIED MOTION TO AMEND THE SCHEDULING ORDER AND COMPLAINT (ECF 379)** was filed and served via the CM/ECF filing system upon following:

Matthew C. Ferguson, Esq.
The Matthew C. Ferguson Law Firm, P.C.
119 South Spring, Suite 201
Aspen, Colorado 81611

Michael J. Reiser, Esq.
Law Office of Michael J. Reiser
1475 N. Broadway, Suite 300
Walnut Creek, California 94596

Michael L. Schrag, Esq.
Linda Lam, Esq.
Gibbs Law Group LLP
505 14th Street, Suite 1110
Oakland, California 94612

Tyler R. Meade, Esq.
The Meade Firm P.C.
1816 Fifth Street
Berkeley, California 94710

Naomi G. Beer, Esq.
Greenberg Traurig, LLP
1200 17th Street, Suite 2400
Denver, Colorado 80202

Ian S. Marx, Esq.
Philip R. Sellinger, Esq.
Todd Schleifstein
Greenberg Traurig, LLP
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932

*/s/ Jessica Black Livingston*