IN THE UNITED STATES DISTRICT COURT

DISTRICT OF COLORADO

Civil Action No. 1:16-cv-01301-PAB-GPG

**RCHFU, LLC,** *et al.*

Plaintiffs,

v.

**MARRIOTT VACATIONS WORLDWIDE CORPORATION,** *et al.*

Defendants.

---

**PLAINTIFFS' REPLY IN SUPPORT OF MODIFIED MOTION TO AMEND THE SCHEDULING ORDER AND COMPLAINT REGARDING THE 2013 AFFILIATION AGREEMENT**

---

**I.     INTRODUCTION**

Plaintiffs move to amend the complaint to add allegations narrowly tailored to directly relate to the 2013 Affiliation Agreement. The Court invited Plaintiffs to make this amendment as a remedy for Marriott's late production of the 2013 Affiliation Agreement. Dkt. No. 330 at pp. 29-30. This agreement is important evidence supporting Plaintiffs' breach of fiduciary duty claims against both Marriott and the Association for allowing Marriott's timeshare customers access to the luxury Ritz-Aspen for a fraction of what Plaintiffs paid. While Marriott began giving MVC members access to Ritz-Carlton Destination Club properties starting in late 2011, when the Association joined the 2013 Affiliation Agreement that access became permanent. After Plaintiffs filed their initial motion to amend, the Court ordered Plaintiffs to file a modified

1

motion that pertained only to the 2013 Affiliation Agreement. Dkt. No. 369. This motion — which Marriott does not oppose — does just that.

Yet the Association opposes, complaining that adding allegations about how the 2013 Affiliation Agreement evidences its breach of duty of care is unfairly prejudicial because it was not the party that concealed this evidence. In the Tenth Circuit, however, a Court's imposition of sanctions may affect a party other than the one who engaged in misconduct. *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992). That is exactly what is happening here — Marriott produced critical evidence at the eleventh hour and was sanctioned for such conduct. The concealed evidence is inextricably linked to Plaintiffs' claims against the Association, and so Plaintiffs' proposed amendments — by necessity — touch on the Association.

The amendments, however, only minimally impact the Association. Plaintiffs are not adding a cause of action against the Association, but merely adding allegations that rebut the Association's main defense — that it had no choice but to acquiesce to a permanent affiliation. The late-produced 2013 Affiliation Agreement shows that the Association could have prevented MVC members from having permanent access to the Ritz-Aspen. Had the Association never signed onto the 2013 Affiliation Agreement, Marriott would have lost its ability to market Ritz-Aspen access to MVC points purchasers: Marriott would have sold out of the unsold inventory at the Ritz-Aspen that it was using for MVC members, and the Ritz-Aspen's governing documents prohibited Marriott from allowing MVC access in other ways. The newly produced 2013 Affiliation Agreement therefore significantly strengthens Plaintiffs' duty of care claim against the Association by showing that the Association failed to use its veto power to halt the affiliation.

II.     ARGUMENT

A. **Plaintiffs' Proposed Amendments Directly Relate to the 2013 Affiliation Agreement**

Every amendment in Plaintiffs' proposed Seventh Amended Complaint is "narrowly tailored to address only the failure to provide the Affiliation Agreement." Dkt. No. 369 at p. 4. So the proposed amendments add facts about the agreement that Plaintiffs would have added much earlier in the case, had Marriott timely produced it during discovery.

The proposed amendments explain what the 2013 Affiliation Agreement is, and how it played a role in this case. For example, paragraph 46 states that the agreement provided that the MVC affiliation would not apply to any particular Ritz-Carlton club unless the Ritz-Carlton club's association signed an "Acknowledgment and Joinder" to the agreement. SAC at ¶ 46. Because the Association signed the Acknowledgment and Joinder on behalf of the Ritz-Aspen, over 400,000 MVC members who have enough points are now able to use the same fractional interests that Plaintiffs paid hundreds of thousands of dollars to access. *Id*. at ¶ 48. Paragraph 86 explains how Marriott knew the 2013 Affiliation Agreement required sign-on from each Ritz-Carlton association – and that Marriott did not want the Association to know that it could simply decide to stop the affiliation at the Ritz-Aspen by refusing to sign the Acknowledgement and Joinder. *Id.* at ¶ 86. But the Association, for its part, signed the Acknowledgement and Joinder without reading or even requesting the agreement it was joining. *Id*. at ¶ 88. Had the Association directors reviewed the agreement, they would have known that they had the power to prevent the MVC affiliation altogether – and they would have known about the many one-sided terms in the agreement that negatively affected Ritz-Aspen owners (including Plaintiffs). *Id.* at ¶¶ 89-92.

3

The proposed amendments in no way "violate the Court's oft-repeated admonition to the Plaintiffs not to seek sanctions that apply directly to the Association." Dkt. No. 394 at p. 4. In addition to not adding any causes of action, the amendments are narrowly tailored to the 2013 Affiliation Agreement. The fact that the amendments pertain to the Association's conduct as well as Marriott's is unavoidable; this case is about how Marriott and the Association interacted with each other and breached their fiduciary duties to Plaintiffs by allowing timeshare customers access to Ritz-Aspen and imposing the MVC/Ritz-Aspen affiliation. As the Court recognized, "[a]ny remedy is likely to have some effect on Aspen Highlands . . ." Dkt. No. 369 at p. 4. The Association's characterization of the proposed amendments as a "sanction" against it is also incorrect. Dkt. No. 395 at p. 5. A district court has discretion to consider a sanction's collateral impact, and the Tenth Circuit recognizes that under some circumstances, a sanction can "affect[ ] parties other than the one who engaged in the wrongful conduct." *Ehrenhaus*, 965 F.2d at 920. Therefore, the fact that the late-produced evidence strengthens claims against the Association as well as claims against Marriott simply reflects the contents of the document Marriott concealed, and does not render the proposed amendments an improper sanction against the party who did not conceal the evidence.

### B. Plaintiffs' Proposed Amendments Would Not Prejudice the Association and Are Not Futile

Similarly, the amendments to the Seventh Amended Complaint would cause no prejudice to the Association. First, the Association already had notice that Plaintiffs' breach of fiduciary duty claim against it was based, in part, on the Association's failure to act as a reasonably prudent fiduciary. Sixth Amended Complaint, Dkt. No. 250 at ¶ 89. That paragraph of the operative complaint lists all the ways in which Plaintiffs alleged the Association breached its

4

fiduciary duties — such as "by agreeing to act and acting in a disloyal manner," agreeing not to enforce the Declaration, and by failing to act as a reasonably prudent fiduciary. *Id.* The paragraph is not limited, as the Association suggests, to the duty of loyalty.

The Association's point that "Plaintiffs never alleged that the Association or its directors failed to consider material information" strengthens the case for allowing the amendments by highlighting that, until recently, Plaintiffs did not know that the 2013 Amendment gave the Association power to veto the affiliation or that Association directors failed to review the 2013 Affiliation Agreement. Dkt. No. 394 at p. 7. Further, since Plaintiffs may prove their existing claims with facts not alleged in the complaint, the proposed amendments only give the Association heightened notice of the duty of care claim. This is hardly prejudicial. *See Guidance Endodontics, LLC v. Dentsply Intern., Inc.*, 2009 WL 3672505, *7 (D.N.M. Sept. 29, 2009) (a plaintiff's proposed amendment "to add additional facts to support its existing claims" could not prejudice the defendants because the plaintiff "could present whatever admissible evidence it had to establish the elements of those claims").

Nor would the proposed amendments inhibit the Association's defense in this case. The Association already admitted that its directors did not review the 2013 Affiliation Agreement before signing the Acknowledgment and Joinder, so no other discovery on these allegations is necessary. Dkt. No. 343 at p. 9. The fact that the directors joined Plaintiffs' fractional interests to an agreement the directors failed to read is sufficient to establish their breach of the duty of care. The Association's suggestion that it would file a motion to dismiss the duty of care claim is senseless. Dkt. No. 394 at p. 9. Fact discovery is closed in this case, and any additional depositions will be about the 2013 Affiliation Agreement. It would make no sense for the

Association to file a motion on the pleadings, when it could file a motion based on actual evidence. If the Association wishes to file a motion for summary judgment on the duty of care claim, it is free to do so. The current deadline for dispositive motions is July 5, 2019. Dkt. No. 384.

Lastly, as Plaintiffs fully briefed in their reply brief to their prior motion to amend, the proposed amendments are not futile. *See* Dkt. No. 356 at pp. 12-15. In short, the business judgment rule does not apply because while the rule normally protects directors acting in good faith from liability, here, the Association did not rely on any actual legal advice from anyone, including the attorney Michael Marino (and Mr. Marino confirmed as much during his deposition). *Id*. at pp. 12-14. And the economic loss rule does not apply because, as the Court already held, the Association has fiduciary duties to Plaintiffs that arise from a judicially recognized special relationship, even if the relevant contracts contain the same duties. *Id*. at pp. 14-15.

### III.   CONCLUSION

For all the above reasons, this Court should grant Plaintiffs leave to file the Seventh Amended Complaint.

Dated: May 2, 2019                                       Respectfully submitted,

*/s/ Michael Schrag*
Michael Schrag (CA State Bar # 185832)
GIBBS LAW GROUP LLP
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: (510) 350-9700
E-mail: mls@classlawgroup.com

6

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 2, 2019, I electronically filed the foregoing **PLAINTIFFS' REPLY IN SUPPORT OF MODIFIED MOTION TO AMEND THE SCHEDULING ORDER AND COMPLAINT REGARDING THE 2013 AFFILIATION AGREEMENT** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| **Michael J. Reiser**<br>Reiser Law, P.C.<br>1475 N. Broadway, Suite 300<br>Walnut Creek, CA 94596<br>michael@reiserlaw.com<br><br>**Matthew C. Ferguson**<br>The Matthew C. Ferguson Law Firm, P.C.<br>119 South Spring, Suite 201<br>Aspen, Colorado 81611<br>matt@matthewfergusonlaw.com<br><br>**Tyler R. Meade**<br>The Meade Firm P.C.<br>12 Funston Avenue, Suite A<br>San Francisco, CA 94129<br>tyler@meadefirm.com<br><br>***Attorneys for Plaintiffs*** | **Andrew Nussbaum, Esq.**<br>**Jessica Black Livingston, Esq.**<br>Hogan Lovells US LLP<br>1200 Seventeenth Street, Suite 1500<br>Denver, Colorado 80202<br>Telephone: (303) 899-7300<br>Fax: (303) 899-7333<br>dan.shea@hoganlovells.com<br>jessica.livingston@hoganlovells.com<br>***Attorneys for Defendant Aspen Highlands Condominium Association***<br><br>**Naomi G. Beer**<br>**Ian S. Marx, Esq.**<br>**Philip R. Sellinger, Esq.**<br>Greenberg Traurig, LLP<br>1200 17th Street, Suite 2400<br>Denver, Colorado 80202<br>Phone: (303) 572-6500<br>Fax: (303) 572-6540<br>BeerN@gtlaw.com<br>SellingerP@gtlaw.com<br>MarxI@gtlaw.com<br>***Attorneys for Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., Ritz-Carlton Management Company, LLC, Cobalt Travel Company, LLC and Lion & Crown Travel Company, LLC*** |

*/s/ Michael Schrag*

7