IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-01301-PAG-GPG

RCHFU, LLC, et al

      Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al,

      Defendants.

---

**MARRIOTT DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS
TO THE COURT'S ORDER OF APRIL 7, 2019**

---

Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC, The Cobalt Travel Company, LLC, and The Lion & Crown Travel Co., LLC ("L&C") (collectively, the "Marriott Defendants") respectfully submit this Response to Plaintiffs' Objections to the Magistrate Judge's Order Denying Their Request to Designate a New Expert to Analyze New Data (ECF#395) ("Plaintiffs' ObjectionS").

**PRELIMINARY STATEMENT**

Plaintiffs have filed Objections to Magistrate Judge Gallagher's Order, issued April 7, 2019, precluding Plaintiffs from designating a new expert this late in the proceedings (the "April 7 Order") (ECF#386). One need only review the April 7 Order to conclude that Plaintiffs' objections – that the Court applied the wrong legal standard and there is good cause for Plaintiffs' application for a new expert – are unfounded.

The procedural posture for this application can be summed up as follows. Plaintiffs served the expert reports of Chekitan Dev and Jon Simon on October 26, 2018. These experts,

with whom Plaintiffs had been working for over a year, addressed so-called "halo" and "horn" effects of the affiliation of The Ritz-Carlton Club, Aspen Highlands with the Marriott Vacation Club Destinations Exchange Program (the "MVC Affiliation").  On December 28, 2018, the Marriott Defendants served the rebuttal expert reports of Ceridwyn King and Mark Israel.  The rebuttal reports objected to Plaintiffs' experts' unsupported conclusions, and referenced and attached certain sales and marketing survey (the "SMS") data that had not previously been demanded in the extensive discovery or produced as further support for undermining those conclusions.[1]  On March 12, 2019, long after the expert designation deadline had passed, Plaintiffs abruptly announced, for the first time, that they would be seeking permission to designate a new expert (Jason Bass, a purported statistical analysis expert who had not previously been disclosed) to serve an additional free-standing expert report regarding damages. Plaintiffs contended that they needed this new expert to rebut the Marriott Defendants' use of the SMS data.  The Marriott Defendants disagreed.  Having already struck and fully complied with an agreement with Plaintiffs intended to address Plaintiffs' unwarranted objection to the production of the SMS (which had (i) never been requested in any of Plaintiffs' extensive discovery demands, and (ii) became relevant only *after* Dev and Simon advanced a "halo/horn effect" theory of harm), the Marriott Defendants objected to Plaintiffs' breach of that agreement.[2]  Motion practice before Judge Gallagher followed.

---

[1] The SMS data shows that potential MVC Points purchasers consistently ranked "the ability to use [MVC] Points to stay at a Ritz-Carlton Club" among the lowest five features "important" to them and that only 3%-5% ranked that feature as one of the "top five" features "important" to them. *Id*. ¶ 7.

[2] Though Plaintiffs had failed to request the production of the SMS in their extensive document requests and had no grounds for objecting, or demanding concessions with respect, to production

The request for a new expert was extensively briefed, oral argument was held and, in a seven-page written Order, the Court denied Plaintiffs' request to serve a report from Mr. Bass and to rely upon him as an expert witness. The April 7 Order is based on two separate conclusions by the Court: (i) that the Parties entered into an enforceable agreement to resolve a discovery dispute, which did not entitle Plaintiffs to identify and rely upon a new expert; and (ii) that a balancing of the "good cause" elements to modify a long-expired deadline under the Court's scheduling order pursuant to Rule 16(b)(4) required the Court to reject Plaintiffs' request to designate a new expert.

The Court's April 7 Order is not clearly erroneous or contrary to law. Judge Gallagher, who has overseen the discovery in this case from the outset, including several contentious discovery disputes, determined that the Marriott Defendants' production of the SMS in December of 2018 was proper and, further, that they had proven that the parties had consummated an agreement to address the production of the SMS that did not include Plaintiffs' designation of a new expert. *Id.* at 6. The Court further found that the SMS "are yet another set of surveys in a case chock full of surveys" (*id.* at 2) and "make a very minor point … very different from the kind of survey … involving" the MVC Affiliation. *Id.* at. 6. Relying on *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987), a case cited by both parties in the underlying briefing, the Court found that the "relative importance/or lack of importance of the

---

of the SMS data, the Marriott Defendants, to avoid a discovery dispute, struck an agreement with Plaintiffs to: produce the data underlying the SMS results; make an additional witness available for deposition to address questions pertaining to the SMS data; and permit two of Plaintiffs' experts, Chekitan Dev and Jon Simon, to amend their reports solely to address the contents of the SMS documents (to which King and Israel would respond further).

SMS survey, and the unlikely event that a new round of discovery on this discrete topic would lead to further relevant evidence," did not warrant "tumbl[ing] back into another endless round of discovery [in a case] which is now years in the works." *Id.* at 7.  Holding that the agreement struck by the parties was "significantly similar to what the Court may have crafted" as a resolution, the Court held that "the negotiated agreement appropriately balance[d] the factors set forth in *Smith.*" *Id.* at 6,7.

Plaintiffs' Objections to the amply-supported April 7 Order should be overruled.

## STATEMENT OF FACTS

On October 26, 2018, Plaintiffs served the expert reports of: (1) Chekitan Dev, a professor and hospitality industry "branding" expert who addresses supposed "halo" and "horn" effects of the MVC Affiliation; and (2) Jon Simon, a supposed hospitality industry financial expert who purports to quantify the alleged "halo" effect.  *See* Declaration of Ian S. Marx in Opposition to Plaintiffs' Request for Addition of New Expert Witness After Expiration of Expert Report Deadlines, dated March 28, 2019 (the "Marx Decl.") (filed at ECF#377-1) at ¶¶ 2-3.

On December 28, 2018, the Marriott Defendants submitted rebuttal expert reports from Dr. Ceridwyn King, a hospitality industry branding expert who rebuts the Dev report, and Dr. Mark Israel, an economist who rebuts both the Dev and Simon reports.  *Id*. ¶ 4.  As part of their rebuttal of Plaintiffs' experts' unsupported conclusions regarding the supposed halo/horn effect, King and Israel cite data from the SMS, which compiles survey data taken from 2013 to 2018. *Id*. ¶¶ 5-8.  The SMS are given to actual and prospective purchasers of the MVC points product after sales presentations in order to assess these individuals' perceptions of more than 35 aspects of the sales presentations. *Id*. ¶ 5.  In their rebuttal reports, King and Israel reference two SMS

4

questions that ask responders (1) to state whether each of 28 different "features associated with" the Marriott Vacation Club Destinations Exhange Program was "important" to their decision to purchase MVC Points (one such feature being "the ability to use [MVC] Points to stay at a Ritz-Carlton Club)"; and (2) to then rank which of those "features" they considered "important." *Id.* ¶¶ 6, 8. The SMS data shows that potential MVC points purchasers consistently ranked "the ability to use [MVC] Points to stay at a Ritz-Carlton Club" among the lowest five of the 28 listed features they considered "important" and that only 3%-5% of those potential purchasers ranked that feature as one of the "top five" features "important" to them. *Id.* ¶ 8.

Before receiving Plaintiffs' expert reports positing a "halo" effect, the Marriott Defendants had no reason to believe that the SMS were relevant or could be used by the Marriott Defendants' experts to rebut the wholly unsupported opinions of Plaintiffs' experts. Marx Decl. ¶ 10. Thus, the Marriott Defendants did not identify the SMS in their Rule 26(a)(1)(A) disclosures, nor did they produce them in discovery because they had never been requested. *Id.* ¶¶ 10-11.[3]

Simultaneously with producing their expert rebuttal reports on December 28, 2018 (a mere six weeks after Plaintiffs served their affirmative expert reports), the Marriott Defendants amended their Rule 26(a)(1)(A) disclosures to reference the SMS and to disclose Urcil Peters as a knowledgeable witness as to the SMS' contents. *Id.* ¶ 12. The Marriott Defendants also

---

[3] Plaintiffs could easily have sought documents and testimony regarding prospective MVC purchasers' perceptions regarding the availability of The Ritz-Carlton Clubs; however, they never made document requests that would have required the production of either the SMS or the compiled SMS results. *Id.* ¶¶ 2, 9; ECF#363 at 9-13. Notably, the April 7 Order expressly found that that the SMS were not requested in discovery and that the Marriott Defendants were not at fault for not disclosing the SMS prior to December 2018. *See* April 7 Order at p. 6

provided Plaintiffs with copies of the SMS referenced in the King and Israel rebuttal reports. *Id*., Exs. B-D.[4]

Despite (as the Court has found) having failed to request the production of the SMS in their extensive document requests, Plaintiffs demanded additional discovery regarding the topics covered by the SMS. *Id*. ¶¶ 9, 13.  To avoid a discovery dispute, the Marriott Defendants conferred with Plaintiffs and agreed to:

- Produce the data underlying the SMS results;
- Make Mr. Peters available for deposition;
- Permit Dev and Simon to amend their reports solely to address the contents of the SMS documents (to which King and Israel would respond further);
- Make certain representations specifying that additional documents could not be located through the parties' agreed-upon e- discovery protocols; and
- Renegotiate a schedule for the completion of expert discovery.

*Id*. ¶¶ 13-15, 19, Ex. E; ECF #363 at 9-13.  These terms were proposed in a January 11, 2019 letter from the Marriott Defendants' counsel to Plaintiffs' counsel, accepted by Plaintiffs in a telephone conference on January 14, 2019 and further documented in a February 7, 2019 email exchange.  Marx Decl. ¶ 13.  Though they have tried, and continue to try, to side-step it, Plaintiffs have never disputed that an agreement was consummated.  *See* April 7 Order at 3 ("Plaintiffs do not dispute that there was an agreement…"); at 4 (describing that "Counsel Marx discusses a telephone call on January 14, 2019 during which it is stated that the January 11, 2019 agreement was accepted"); the Reiser Declaration submitted to Judge Gallagher (ECF#377-1) (omitting any reference of the January 14 telephone call) and the Reiser Declaration in connection with this Objection (ECF#395-1) (same). In implementing that agreement, the

---

[4] The April 7 Order finds that that the Marriott Defendants' actions were appropriate. *See* April 7 Order at p. 6 ("Upon determining the relevance of the documents Marriott did what was required, it disclosed them.").

Marriott Defendants produced the additional documents on January 15 and Mr. Peters for deposition on February 13.[5]

After the Marriott Defendants had performed all of their obligations under the discovery agreement by producing additional documents and deposition witnesses, Plaintiffs advised that they intended to serve a new expert report addressing the SMS. The Marriott Defendants objected, and following several submissions by the parties (*see* ECF#362, ECF#363, ECF#367), Judge Gallagher held a telephone conference on March 18, 2019 (ECF#364), during which he directed the parties to submit briefing. Briefs were submitted on March 28, 2019 (ECF#376,[6] ECF#377), and Judge Gallagher held argument on April 3, 2019 (ECF#384). He issued a 7-page written decision denying Plaintiffs' motion on April 7, 2019 (ECF#386).

Observing that "the Court should and must encourage resolution of discovery disputes between the parties in an effort to better secure the just, speedy, and inexpensive determination of matters" (ECF#386 at 4), the Court found there was an agreement between the parties that had been fully performed and should be enforced:

---

[5] On February 14, 2019 and twice thereafter, the Marriott Defendants circulated a revised scheduling order reflecting the changes necessitated by the parties' agreement. Marx Decl. ¶¶ 14, 18, 19. When Plaintiffs failed to object or respond, the Marriott Defendants submitted the schedule to the Court on March 7, 2019. *Id.* ¶ 19; ECF#361. Then -- after over two months of SMS-related negotiations and one month after confirming the parties' agreements on that topic -- in a March 12, 2019 call among counsel Plaintiffs abruptly announced, for the first time, that they would be seeking permission to serve an additional free-standing report from a purported statistical analysis expert (Mr. Bass) regarding the impact of the SMS results on their other experts' opinions on damages. Marx Decl. ¶ 20.

[6] Plaintiffs' argued there was good cause to designate an additional expert witness and that there was no binding agreement between the parties that precluded their attempt to identify a new expert. Plaintiffs did not argue that there was a heightened standard applicable to discovery-related agreements requiring "clear or unequivocal" proof and did not rely upon the cases cited for that dubious premise in Plaintiffs' Objection here.

> [T]he Court determines that Marriott has persuasive evidence. Both sides have declarations from Counsel outlining their respective positions. Neither side has a final consummated agreement. What Marriott has is the last written document the Court has been provided on the topic (the February 4, 2019 letter), a detailed multi-stage plan set forth therein, and partial performance of the first two stages. ***<u>The combination of the January 11, 2019 letter, the production of the SMS documents, and the additional Peters deposition lead the Court to determine that there was a consummated agreement binding the parties to the entirety of the agreement set forth in the January 11, 2019 letter</u>***. To that end, the remedies set forth in that letter are those that will be enforced by the Court for resolution of this matter.

April 7 Order at p. 5. The Court expressly found that the SMS produced in December 2018 and January 2019, which Plaintiffs contended entitled them to designate a new expert, were not requested in discovery and not improperly withheld. April 7 Order at p. 6. ("Fundamentally, the Court does not find Marriott at fault for determining not to disclose the SMS surveys prior to December 28, 2018.").[7]

---

[7] In reaching this conclusion, the Court affirmed the Marriott Defendants' explanation for the December 2018 production:

> The Court does not find any discovery violation for the initial decision to not disclose the SMS survey nor for the reversal of that decision when a review of Plaintiffs' expert reports revealed the relevance of documents previously determined irrelevant. Upon determining the relevance of the documents Marriott did what was required, it disclosed them.

*Id.* Presumably challenging this finding, the Plaintiffs submit additional "evidence," in the Declaration of Michael Reiser, dated April 22, 2019 (ECF#395-1), in support of their contention that the SMS should have been produced earlier pursuant to the parties' negotiated ESI protocol. *See* Reiser Declaration ¶ 9, Exs. D-F. Mr. Reiser's April 22, 2019 Declaration sets forth facts and attaches documents that were not before Judge Gallagher in connection with the briefing that resulted in the April 7 Order. These additional facts and arguments are thus not properly before the Court on this Objection and the Declaration should be stricken. *See* discussion, *infra* at pp. 10-11. In any event, as the Marriott Defendants made clear to Judge Gallagher, the parties' agreed upon ESI protocol would *not* have yielded the documents in discovery. Marx Decl. ¶ 10 ("The SMS data was also beyond the scope of the parties' agreed-upon protocol for the review and production of electronically stored information ("ESI"), and thus was not retrieved by the Marriott Defendants in their search of electronic records. … The SMS does not concern or even

8

The Court also held that Plaintiffs had not established "good cause" for identifying a new expert months after the deadline for expert designation had passed. Weighing the disruption the introduction of a new expert would cause in an already advanced case against "the relative importance/or lack of importance of the SMS survey" and "the unlikely event that a new round of discovery on this discrete topic would lead to further relevant evidence," the Court concluded that: "the need to move forward and not tumble back into another endless round of discovery which is now years in the works" was the imperative. April Order at 6-7.

> While the Court certainly believes Plaintiffs deserve an opportunity to rebut and utilize the data, ***the data is not of such significance that a new expert is necessary or appropriate at this date***. The remedy suggested and the Court finds was agreed to in terms of the January 11, 2019 plan is a fair balancing of the weightiness of this topic with an appropriate resolution. Ultimately, the parties came to a resolution significantly similar to what the Court may have crafted if left to its own devices.

April 7 Order at p. 6. [8]

## ARGUMENT

### I.  STANDARD

When reviewing a magistrate judge's ruling on a nondispositive matter pursuant to Federal Rule of Civil Procedure 72(a), the district judge must consider whether the order "is clearly erroneous or is contrary to law. The clearly erroneous standard requires the district court

---

mention the "MVC Affiliation" (a term that was used to tailor many of the agreed-upon search terms), and Mr. Peters was not one of the agreed-upon ESI custodians.").

[8] Since Magistrate Judge Gallagher was assigned to this case in June 2016 (ECF#26), he has been actively involved in case management, having entered over a dozen scheduling orders. *See, e.g.*, ECF Nos. 60, 136, 161, 225, 231, 232, 303, 307, 310, 316, 322, 328, 384. He has also presided over and resolved numerous disputes between the parties, including over 30 presented by motion (*see, e.g.*, ECF Nos. 38, 55, 69, 74, 100, 105, 114, 118, 126, 159, 172, 177, 183, 187, 190, 220, 237, 245, 256, 265, 272, 286, 294, 330, 331, 336, 354, 366, 368, 369, 386, 387) and involving hearings and conferences (both via telephone and in-person appearances) (*see, e.g.*, ECF Nos. 61, 106, 118, 135, 180, 189, 234, 289, 304, 305, 323, 372, 383, and 400).

to affirm unless the evidence as a whole leaves it with the definite and firm conviction that a mistake has been committed." *Stephens v. Alliant Techsystems Corp.*, 714 F. App'x 841, 844 (10th Cir. 2017) (internal citations and quotation marks omitted). "Under this standard of review, a magistrate judge's finding should not be rejected merely because the Court would have decided the matter differently." *Vreeland v. Griggs*, 2014 WL 641512, at *1 (D. Colo. Feb. 18, 2014) (Brimmer, J.) (overruling plaintiff's objection to magistrate's order) (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)).

In addition, "[i]n the Tenth Circuit, '[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.'" *Ortiz v. Falk*, 2014 WL 984933, at **1-2 (D. Colo. Mar. 13, 2014) (Brimmer, J.) (quoting *Abdulhaseeb v. Calbone,* 600 F.3d 1301, 1310 (10th Cir.2010); *Marshall v. Chater,* 75 F.3d 1421, 1426 (10th Cir.1996)) (declining to consider arguments not raised before the magistrate); *Ervin v. Wilson*, 2013 WL 2317234, at *1 (D. Colo. May 24, 2013) (Brimmer, J.) (noting that, "[i]n this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived" and refusing to consider argument not raised before magistrate).

## II. THERE IS AMPLE EVIDENCE OF AN AGREEMENT

Plaintiffs rely on *L.P.S. v. Lamm*, 708 F.2d 537 (10th Cir. 1983) and *Cole v. Asarco*, 2011 WL 12077076 (N.D. Okla. Sept. 27, 2011) and other cases to argue that the Court should have applied a "'clear,' 'absolute,' or 'unequivocal'" standard in determining whether to enforce the parties' discovery agreement. ECF#376 at 3. These cases were **not** relied upon by Plaintiffs in the underlying briefing that lead to the April 7 Order. They are raised, improperly, for the first time here in direct challenge to that Order. *See* Plaintiffs' Motion (ECF#376 *passim*); *Fry v. City*

10

*of Northglenn*, 2018 WL 1010942, at *3 (D. Colo. Feb. 22, 2018) (Brimmer, J.) (a "court's review of [an] objection to [a] magistrate judge's order on [a] non-dispositive motion 'is not a de novo review permitting a second shot...based on new arguments'") (quoting *City of Wichita v. Aero Holdings, Inc.*, 192 F.R.D. 300, 302 (D. Kan. 2000)); *United States v. Ledford*, 2010 WL 749843, at *8 (D. Colo. Mar. 3, 2010) ("[A]rguments not provided to the attention of the magistrate judge will not be considered in connection with review of nondispositive motions.").[9] The Court should reject Plaintiffs' arguments based upon these newly cited cases.

Moreover, neither *L.P.S.* nor *Cole* hold that agreements concerning discovery can only be enforced if their terms are "clear", "unambiguous" or "unequivocal." These cases, neither of

---

[9] On April 12, 2019, Plaintiffs served supplemental reports from Dr. Dev and Mr. Simon. Plaintiffs also served the Bass Expert Report, attached as "Exhibit A" to the Simon Report. The Simon Report largely relies upon the Bass Report in reaching conclusions and opinions. Plaintiffs now suggest for the first time that, their motion for leave to designate a new expert notwithstanding, they believe Bass's Expert Report and opinions may be properly presented to the jury through Simon's Supplemental Report ("While Plaintiffs believe that Bass's regression analysis may be properly presented to the jury through Mr. Simon's expert opinion, Plaintiffs nevertheless seek leave to designate Mr. Bass as a new expert to most effectively present their case to the jury"). *See* ECF#395 at p. 10. Plaintiffs failed to raise this argument in their motion to add a new expert and Plaintiffs cannot properly advance it now – on an Objection to the April 7 Order. Plaintiffs' attempt to salvage the Bass Report premised on Rule 703 is wrong as a matter of law. Rule 703 is not intended to permit the kind of wholesale reliance of one expert on the work product and opinion of another in a wholly unrelated field of expertise, as is evidently intended here. Courts permit expert witnesses to "use assistants in formulating his expert opinion," however, courts draw the line where "the assistants aren't merely gofers or data gatherers but exercise professional judgment that is beyond the expert's ken." *Id.* An expert "however well credentialed he may be, is not permitted to be the mouthpiece of [another expert] in a different specialty." *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.,* 285 F. 3d 609, 613-614 (7th Cir. 2002) (Posner, *J.*). Bass is clearly not, in the words of *Dura,* Simon's "assistant," "gofer" or "data gatherer." *Dura,* 285 F. 3d at 613. Pursuant to the Court's Order (*see* ECF#400), the Marriott Defendants will be moving on or before May 10, 2019 to strike the Bass Expert Report as well as any portions of the Simon Supplemental Expert Report that rely on the Bass Expert Report.

which concern discovery agreements among counsel, dealt with challenges to stipulated orders giving Courts the power to dismiss the entire case under certain specified terms.

*L.P.S* involved the civil rights claim of a civilly-committed patient, and concerned a written stipulation entered into before the trial court, pursuant to which the patient voluntarily dismissed his claims without prejudice, subject to reinstatement pending an appeal concerning the constitutionality of the civil commitment statute.  The court applied a "clear and unequivocal" standard in determining the impact of the stipulation of dismissal.  *Cole v. Asarco*, 2011 WL 12077076 (N.D. Okla. Sept. 27, 2011) likewise concerned a stipulated Order entered by the Court, which called for the dismissal of certain claims if a party did not serve interrogatory answers by a date certain.  The court applied a "clear and unequivocal" standard to determine whether to enforce the dismissal when the stated due date was not met.[10]

In disputes pertaining to discovery agreements, the principles that govern are those applied by Judge Gallagher – "the Court should and must encourage the resolution of discovery disputes between the parties in an effort to better secure the just, speedy, and inexpensive determination of matters."  April 7 Order at p. 4 (citing *Hoelzel v. First Select Corp.*, 214 F.R.D. 634, 635 (D. Colo. 2003)) ("Rule 7.1A serves a particularly important function in connection with discovery disputes because the parties, through negotiations, frequently are able to narrow the discovery requests in a way which eliminates the need for judicial intervention …. Without

---

[10] Plaintiffs' reliance on *Uranium Contracts Litig.*, 570 F. 2d 899 (10th Cir. 1978) is misplaced. There, the parties disagreed concerning the meaning of a stipulated order previously entered by the district court and the Court of Appeals found the circumstances warranted relief from a party's prior agreement to forego a deposition.  Here, by contrast, Judge Gallagher specifically found the parties agreement to be fair and therefore enforceable.

meaningful negotiations by the parties, the courts would be flooded with discovery motions.").[11] Guided by those principles, the April 7 Order correctly enforced the parties' agreement and precluded Plaintiffs' identification of a new expert.

The Court found that the Marriott Defendants' January 11 letter "appropriately outlined the specifics of an agreement, point by point…" April 7 Order at p. 5. The agreement was commemorated again in the Marriott Defendants' letter of February 4, 2019 ("the last written document [provided to] the Court .. on the topic"), which set out "a detailed multi-stage plan," as well as the Marriott Defendants' "partial performance of the first two stages." *Id.* This correspondence coupled with "the production of the SMS documents, and the additional Peters deposition [led] the Court to determine that there was a consummated agreement binding the parties to the entirety of the agreement set forth in the January 11, 2019 letter." *Id.* This agreement also permits Plaintiffs' experts Dev and Simon to amend their reports solely to address the contents of the SMS documents (to which King and Israel would respond further); make certain representations specifying that additional documents could not be located through the parties' agreed-upon e- discovery protocols; and renegotiate a schedule for the completion of expert discovery. Marx Decl. ¶¶ 13-15, 19, Ex. E; ECF #363 at 9-13.

Plaintiffs accepted these terms in a telephone conference on January 14, 2019 and in an email exchange on February 7, 2019. Marx Decl. ¶¶ 13, 17, Ex. E. The Marriott Defendants performed their part of the bargain by providing the following discovery to which the Marriott Defendants believed, and still believe, Plaintiffs were not otherwise entitled:

---

[11] This is consistent with the fundamental mandate that each Federal Rule of Civil Procedure "be construed, administered and employed by the court and the parties to secure the just, speedy and inexpensive determination of every action and proceeding." *See* Fed. R. Civ. P. 1.

13

- producing the additional documents on January 15. Marx Decl. ¶ 14;
- producing additional documents on February 12. Marx Decl. ¶ 18; and
- producing Mr. Peters for deposition on February 13. *Id.*

Plaintiffs' disappointment with the Court's assessment that they got what they bargained for is not sufficient basis to challenge the validity and enforcement of Judge Gallagher's April 7 Order.

### III.   PLAINTIFFS DID NOT ESTABLISH GOOD CAUSE

The Court correctly applied the factors set forth in *Smith v. United States*, 834 F.3d 166, 169 (10th Cir. 1987), in assessing whether "good cause" existed to justify Plaintiffs' late identification of Jason Bass as a new expert.  It found that "[t]he negotiated agreement appropriately balance[d] the factors set forth in *Smith v. United States*, 834 F.3d 166, 169 (10th Cir. 1987) ((1) imminence of trial, (2) whether the motion is opposed, (3) prejudice to the non-movant, (4) the foreseeability of additional discovery, and (5) the likelihood that any further discovery will lead to relevant evidence)").  April 7 Order at p. 7.  Noting that this case is now "years in the works," the Court, being familiar with the parties' claims and defenses, determined that: "the data is not of such significance that a new expert is necessary or appropriate at this date."  April 7 Order at 6.  The Court made this ruling based upon its determinations that:

- the parties "need to move forward and not tumble back into another endless round of discovery;"
- the new expert was not necessary given the "relative importance/or lack of importance of the SMS survey;" and
- "the unlikely event that a new round of discovery on this discrete topic would lead to further relevant evidence."

April 7 Order at pp. 6-7.  Notably, the Court found that the SMS had not been requested in discovery and that the Marriott Defendants appropriately produced those documents on December 28, 2018; and, noting, moreover, that the agreement struck by the parties to address the SMS was "significantly similar to what the Court may have crafted" as a resolution, the Court held that

14

"the negotiated agreement appropriately balance[d] the factors set forth in *Smith*. *See* April 7 Order at 6, 7.[12]

Judge Gallagher's extensive involvement in this case and familiarity with the facts, contentions, and arguments make him well-qualified to balance the impact that a new expert would have on the discovery schedule and the fair and just administration of this case. His determination that Plaintiffs did not demonstrate good cause is supported by the facts and the law, was not clearly erroneous or contrary to law.

## CONCLUSION

For the reasons set forth above, Plaintiffs' Objections to the April 7 Order should be overruled.

Dated: May 6, 2019                                Respectfully submitted,

By:   *s/ Ian S. Marx*
Philip R. Sellinger
Ian S. Marx
500 Campus Drive, Suite 400
Florham Park, NJ 07932
Tel: 973.360.7900 / Fax: 973.301.8410
Email:  SellingerP@gtlaw.com,  MarxI@gtlaw.com
*Attorneys for the Marriott Defendants*

---

[12] Plaintiffs did not demonstrate the requisite diligence required of a party making a "good cause" argument. There was no mistake, inadvertence or carelessness on the part of counsel, except to the extent that they did not appropriately consider whether their experts might need data like the SMS to prove their case during the fact discovery phase. The delay in seeking leave for a new expert after they received the SMS on December 28 to March 12, when they first made the request, is not explained. Plaintiffs had ample time to address this when the parties were negotiating throughout January and February and they chose not to.

15

## CERTIFICATE OF SERVICE

I hereby certify that, on May 6, 2019, a true and accurate copy of the foregoing **MARRIOTT DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO COURT'S ORDER OF APRIL 7, 2019** was filed and served with the Clerk of the Court via CM/ECF filing system, which will send notification to the following:

Michael J. Reiser
Law Office of Michael J. Reiser
1475 N Broadway, Suite 300
Walnut Creek, CA 94596
*Counsel for Plaintiffs*

Matthew C. Ferguson
The Matthew C. Ferguson Law Firm, P.C.
119 South Spring, Suite 201
Aspen, Colorado 81611
*Counsel for Plaintiffs*

Tyler R. Meade
The Meade Firm P.C.
12 Funston Avenue., Suite A
San Francisco, California 94129
*Counsel for Plaintiffs*

Linda Pham Lam
Michael Schrag
Gibbs Law Group LLP
505 14th Street, Suite 1100
Oakland, CA 94612
*Counsel for Plaintiffs*

                                                     *s/Rebecca Zisek*
                                                     Rebecca Zisek
                                                     *(Original on file at offices of Greenberg Traurig, LLP, pursuant to C.R.C.P. 121, § 1-26)*