IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 16-01301 PAB

RCHFU, LLC, et al.

      Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al.

      Defendants.

**MARRIOTT DEFENDANTS' RULE 37(c) MOTION TO STRIKE THE EXPERT REPORT OF JASON BASS AND THE PORTIONS OF THE SUPPLEMENTAL EXPERT REPORT OF JON SIMON THAT RELY ON THE BASS REPORT**

Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC, The Cobalt Travel Company, LLC, and The Lion & Crown Travel Co., LLC (collectively, "Marriott Defendants") hereby move, pursuant to Fed. R. Civ. P. 16(f), to enforce the Court's Order of April 7, 2019 (the "April 7 Order") (ECF 386), by striking the expert report of Jason Bass ("Bass Report") (which is on file with the Court at ECF 392) submitted by Plaintiffs as an exhibit to the Supplemental Expert Report of Jon Simon ("Supplemental Simon Report"), and striking all portions of the Supplemental Simon Report that rely on the improperly proffered Bass Report.[1]

---

[1] The Bass Report and the Supplemental Simon Report (without their respective exhibits) are attached to the Declaration of Ian S. Marx, dated May 10, 2019 ("Marx Decl.") as Exhibits A and B, respectively, which are filed under seal.

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(a), the Marriott Defendants' counsel conferred with Plaintiffs' counsel before making this motion and made a reasonable and good faith effort to resolve this dispute. Specifically, on April 19, 2019, the Marriott Defendants' counsel had a telephone conference with Plaintiffs' counsel to discuss the factual and legal bases for this motion. Plaintiffs' counsel refused to agree to the relief sought by the Marriott Defendants.

## INTRODUCTION AND STATEMENT OF FACTS

A troubling pattern has emerged in this case, consisting of Plaintiffs disobeying and circumventing the Court's discovery and pretrial Orders. The present motion concerns the latest manifestation of that pattern -- Plaintiffs' violation of the Court's April 7 Order.[2]

On March 28, 2019, Plaintiffs moved for "leave to designate a statistics expert," Jason Bass, who Plaintiffs said was needed to perform a "logit regression analysis" on certain survey data (the "SMS data") produced by the Marriott Defendants on December 28, 2018, concurrently with the Marriott Defendants' rebuttal expert reports. *See* Plaintiffs' Request for Supplemental Expert Reports (ECF 376 at 1, 4). As Plaintiffs stated in their motion, the proposed new report by Bass would "isolate the ability to access [The Ritz-Carlton Destination Club] from the other factors

---

[2] The present violation follows Plaintiffs' previous disregard of the Court's Order of December 31, 2018 (ECF 342), pursuant to which the Court gave Plaintiffs leave to move to amend their complaint for the seventh time *solely* with respect to allegations concerning the MVC 2013 Affiliation Agreement. Fourteen days later, however, Plaintiffs filed a motion to amend that went "significantly beyond the direction provided by the Court" in its December 31 Order (Order of March 18, 2019, ECF 369, at 3). The Court denied Plaintiffs' motion to amend, noting that "[t]he Court neither Ordered nor authorized such an expansion." *Id.* at 4. Similarly, the December 31, 2018 Order also authorized Plaintiffs to make a *limited* and *narrow* fee application (ECF 342 at 29). Plaintiffs, once again, flouted that Order by filing a 700-plus page application, seeking more than $200,000 in attorney's fees and costs. That application was likewise denied by the Court in its Order of March 18, 2019 (ECF 368).

2

that prospective purchasers considered in deciding whether to purchase [Marriott Vacation Club] points, and calculate the effect that RCDC access had on the probability that an individual would purchase MVC points." *Id.* at 4. The Bass analysis was to serve as a foundation for the Supplemental Expert Report of Jon Simon, Plaintiffs' existing expert on "unjust enrichment/price increase" damages. By making the motion to designate Bass as an expert, Plaintiffs tacitly acknowledged that: (i) none of Plaintiffs' already-designated experts were qualified to do the statistical analysis; and (ii) Plaintiffs required leave of Court to designate and rely on this new expert in a new field of expertise at this late stage in the case, as the deadline for identifying affirmative experts had passed in October 2018.

On April 7, the Court entered an Order denying Plaintiffs' request for permission to identify Bass as a statistics expert and ruled that Plaintiffs were "preclude[d] . . . from identifying a new expert at this late stage," as that new expert was not "necessary or appropriate at this date." ECF 386 at 5 and 6. Five days later, on April 12, 2019, Plaintiffs disregarded the April 7 Order and produced the Bass Report, disguised as an "exhibit" to the Supplemental Simon Report. The Bass Report -- which reads as a stand-alone litigation, expert report prepared for counsel[3] -- purports to do what Plaintiffs had outlined in their March 28, 2019 motion. However, the Bass Report goes beyond a supplemental statistical analysis to support Simon's "price increase" damage calculations. Bass also attempts to construct the statistical foundation for an *entirely new* theory

---

[3] Indeed, in his report, Bass states that he is being compensated at $300/hour for all work except deposition and trial testimony time, and for that he will be compensated at $350/hour. Bass Report (Marx Decl. Ex. A) at 2. It is thus clear that, to side-step the Court's Order precluding identification of Bass as a litigation expert and the production of the Bass Report, Plaintiffs' counsel simply took the already-existing Bass Report and *re-deployed* it as an exhibit to the Supplemental Simon Report.

3

of damages premised on the argument that the SMS data shows that the ability to access The Ritz Carlton Destinations Clubs ("RCDC") with MVC points *increased the sales volume* of MVC points. In the Supplemental Simon Report, Simon relies solely on Bass's new analysis to calculate "unjust enrichment/sales increase" damages, as well as to modify the "price increase" damages initially set out in his original expert report. *See* Bass Report at 3-6; Supplemental Simon Report at 2, 7-9.

In short, Plaintiffs are attempting to circumvent the Court's April 7 Order and do exactly what the Court ordered they could not do. They have produced a new expert report in direct contravention of this Court's Order by re-deploying the Bass Report as an exhibit to the Supplemental Simon Report. Plaintiffs also attempt to use the Bass Report to introduce a whole new damages analysis not identified in the original Simon Report. Plaintiffs cannot be permitted to use such an expedient to nullify the Court's April 7 Order. On this ground alone, the Bass Report and the Supplemental Simon Report, to the extent it relies on Bass, should be stricken pursuant to Fed. R. Civ. P. 16(f).[4] Moreover, the effective administration of justice and this case requires preclusion of the Bass Report and the referenced portion of the Supplemental Simon Report. Acceptance of these reports would require a reworking of the current Case Management Order to enable the Marriott Defendants to respond with their own statistical analysis and depose

---

[4] The Marriott Defendants reserve their right to move, at the appropriate time, to strike all of the Supplemental Simon Report on *Daubert* grounds.

4

Bass -- precisely the consequences that the Court sought to avoid in denying Plaintiffs' request to rely on Bass as a new expert.[5]

Nor can Plaintiffs now argue that, under Evidence Rule 703, Simon can properly rely on the Bass Report. The Rule 703 cases hold that a designated litigation expert in one field cannot simply incorporate and rely on the report of an undesignated expert in another field in which the designated expert has no expertise. Although Federal Rule of Evidence 703 permits experts to rely on the kinds of "facts or data" on which experts in the particular field would ordinarily and reasonably rely, courts have made clear that one litigation expert cannot be the "mouthpiece" of another litigation expert in a different specialty. And, because neither Simon nor any of Plaintiffs' other designated experts would be capable of defending or explaining Bass's work or opinions, the Marriott Defendants would need to depose Bass and do their own statistical analysis to rebut Bass -- again, the very consequences that the Court sought to avoid by precluding a report by Bass.

Finally, Plaintiffs cannot argue that, because they have filed a motion appealing the April 7 Order (*see* ECF 395, filed April 22, 2019), they are permitted to ignore that Order. Unless and until reversed, the April 7 Order -- as any court order -- should be enforced. In the unlikely event that the District Court vacates the April 7 Order and permits the Rule 26(a) designation of Bass as an expert, Plaintiffs can then re-serve the Bass Report and the portion of the Supplemental Simon Report relying on Bass, and the Marriott Defendants will then respond. To do otherwise disrupts the judicial process and prejudices the Marriott Defendants.

---

[5] In addition to their violation of the Court's prior Order, as the Court had previously ruled, Plaintiffs' submission of the Bass Report is prohibited by Rules 26(a)(2) and 37(c), which preclude Plaintiffs from identifying and relying on Bass and his Report.

5

In sum, if Plaintiffs are permitted to proceed on their present path, the April 7 Order will have no effect. The Bass Report should be stricken, as should the Supplemental Simon Report to the extent it relies on the Bass Report.

## ARGUMENT

### I. TO ENFORCE THE APRIL 7 ORDER, THE COURT SHOULD STRIKE THE BASS REPORT AND THE PORTIONS OF THE SUPPLEMENTAL SIMON REPORT THAT RELY ON THE BASS REPORT

Compliance with a court order is not optional or voluntary -- even if a party contends it is erroneous or even unlawful, compliance is still mandatory. *Maness v. Meyers*, 419 U.S. 449, 458-59 (1975) (a party cannot make "private determinations of the law and refuse to obey an order" without risking "criminal contempt even if the order is ultimately ruled incorrect. The orderly and expeditious administration of justice by the courts requires that an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings"); *In re Rael*, 753 Fed. Appx. 649, 655 (10th Cir. 2018) (same); *Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 886 F.3d 863, 867 (10th Cir. 2018) (same); *L'Ggrke v. Asset Plus Corp.*, 641 Fed. Appx. 779, 781 (10th Cir. 2016); *Lundahl v. Halabi*, 600 Fed. Appx. 596, 605 (10th Cir. 2014) (same).

This is so because a party's "failure to comply with Court orders . . . cause[s] disruption in [the Court's] docket"; "demonstrates a lack of respect for the judicial process and the law"; and "substantially interferes with the ability of the Court to exercise its case administration authority." *Kartchner v. Colorado Dep't of Corr., Div. of Adult Parole*, 2007 WL 2684867, at *2 (D. Colo. Aug. 22, 2007), *report and recommendation adopted*, 2007 WL 2789342 (D. Colo. Sept. 25, 2007). "Where, as here, a party flaunts a court's orders or complies only when it is convenient,

6

the fundamental mechanism by which justice is administered is harmed." *Id. See Ehrenhaus v. Reynolds,* 965 F. 2d 916, 921 (10th Cir. 1992) (if a party could simply ignore court orders, district courts could not "administer orderly justice, and the result would be chaos").

For these reasons, the federal rules provide federal courts with broad authority to enforce their orders with further orders. *See, e.g.*, F.R.C.P. 16(f)(1)(C) ("court may issue any just orders . . . if a party or its attorney . . . fails to obey a scheduling or other pretrial order"); F.R.C.P. 37(b) (authorizing sanctions for failure to comply with discovery orders). *See Chung v. El Paso Sch. Dist. #11*, 2015 WL 871032, at \*\*1-2 (D. Colo. Feb. 26, 2015) (striking plaintiff's designation of experts which violated prior court order). In addition, federal courts "possess certain inherent powers . . . to manage their own affairs so as to achieve the orderly and expeditious disposition of cases [which] includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *McFadden v. Meeker Hous. Auth.*, 2018 WL 3348882, at \*1 (D. Colo. July 9, 2018) (quoting *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017)).[6]

Plaintiffs' violation of the Court's April 7 Order is obvious. In that Order, the Court denied Plaintiffs' request for permission to identify Bass as a statistics expert, expressly ruling that

---

[6] *See also Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 886 F.3d 852, 857-58 (10th Cir. 2018) (courts have inherent power to impose sanctions when a party violates a court order); *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012) (district courts have "the inherent power to sanction for [the] violation of a court order"); *Kornfeld v. Kornfeld*, 393 Fed. Appx. 575, 579-80 (10th Cir. 2010) (court has the "inherent power to impose attorney's fees as a sanction" where "a litigant has engaged in bad-faith conduct or willful disobedience of a court's orders") (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991)). Fed. R. Civ. P. 16(f)(2) ("in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make and award of expenses unjust.").

Plaintiffs were "preclude[d] . . . from identifying a new expert at this late stage."  ECF 865 at 5. The attachment of the Bass Report as "Exhibit A" to the Supplemental Simon Report is a blatant attempt to circumvent that order.

By attaching the Bass Report as an exhibit to the Supplemental Simon Report, Plaintiffs have done precisely what they set out to do with leave of Court -- they have added a new expert who has provided a new form of analysis upon which their existing expert relied to construct an *entirely new* damages theory based on alleged increased sales volume of MVC points.   Plaintiffs should not be permitted to do indirectly what they have been directly ordered not to do.  *Carmell v. Texas*, 529 U.S. 513, 541 (2000) ("The legal result must be the same, for what cannot be done directly cannot be done indirectly.").  Thus, to effectively enforce its prior April 7 Order, the Bass Report and the portions of the Supplemental Simon Report that rely upon it should be stricken.  To do otherwise would result in the very harm the Court sought to avoid in entering its April 7 Order – invite the need to rework case management, at this late stage in the litigation, to permit the Marriott Defendants to depose Bass and rebut his statistical analysis with their own statistical analysis and expert.  Anything short of striking the Bass Expert Report and related portions of the Supplemental Simon Report undermines the Court's ability to "administer orderly justice" in this case. *Ehrenhaus v. Reynolds,* 965 F. at 921; *Kartchner v. Colorado Dep't of Corr., Div. of Adult Parole,* 2007 WL 2684867, at *2 (enforcement of court orders is necessary to avoid "disruption" of the docket, and for the Court "to exercise its case administration authority").

## II. PLAINTIFFS CANNOT JUSTIFY THEIR CIRCUMVENTION OF THE APRIL 7 ORDER BY NOW ARGUING THAT THE SUPPLEMENTAL SIMON REPORT RELYING ON BASS CAN STAND AS PROPER RELIANCE BY AN EXPERT UNDER RULE 703

Plaintiffs cannot circumvent the scope and enforcement of the Court's prior April 7 Order by arguing now, for the first time, that Simon can rely on another expert's opinion under Evidence Rule 703. Simply put, having failed to raise this argument in their motion to add a new expert, Plaintiffs cannot properly advance it now -- on an application to enforce the Order denying their motion -- to, in effect, reargue the motion they lost. *See Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (party cannot "advance new arguments" to "reargue issue previously addressed by the court") (citing *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991)); *Fry v. City of Northglenn*, 2018 WL 1010942, at *3 (D. Colo. Feb. 22, 2018) (party cannot take a "second shot" at a magistrate judge's order "based on new arguments"); *Equal Employment Opportunity Comm'n v. Jetstream Ground Services*, 2016 WL 879625, at *2 (D. Colo. Mar. 8, 2016) (party cannot advance "new arguments"); *United States v. Ledford*, 2010 WL 749843, at *8 (D. Colo. Mar. 3, 2010) ("arguments not provided to the attention of the magistrate judge will not be considered"); *Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1256 (D. Colo. 2000) (same). Advancing a Rule 703 argument in this context is no different than the stratagem of attaching a precluded expert's report as an exhibit to a designated expert's report -- both represent a calculated end run around a Court order that undermines the Court's authority and its ability to control its docket.

Finally, any attempt by Plaintiffs to salvage the Bass Report that is premised on Rule 703 is wrong as a matter of law. Rule 703 is not intended to permit the kind of wholesale reliance of one expert on the work product and opinion of another in a wholly unrelated field of expertise, as

9

is evidently intended here.  An expert witness may "use assistants in formulating his expert opinion, and normally they need not themselves testify."  *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.,* 285 F. 3d 609, 613 (7th Cir. 2002) (Posner, *J.*).[7]  However, courts draw the line where "the assistants aren't merely gofers or data gatherers but exercise professional judgment that is beyond the expert's ken."  *Id.*  An expert "however well credentialed he may be, is not permitted to be the mouthpiece of [another expert] in a different specialty."  *Id.* at 614.  As Judge Posner has noted, with particular relevance to the present case:

> A theoretical economist, however able, would not be allowed to testify to the findings of an econometric study conducted by another economist if he lacked expertise in econometrics and the study raised questions that only an econometrician could answer.  If it were apparent that the study was not cut and dried, the author would have to testify; he could not hide behind the theoretician.

*Dura Auto* at 614, and 615 (affirming district court's decision to strike plaintiff's expert under Rule 37(c) because he had relied on affidavits from his assistants who had not been timely identified under Rule 26(a) and about whose work he was not competent to testify); *see also Mooring Capital Fund, LLC v. Knight,* 388 Fed. Appx. 814, 819-21 (10th Cir. 2010) (affirming district court's decision to exclude expert's testimony to the extent it relied on an appraisal prepared by another expert because the testifying expert "had not examined the validity of the appraiser's assumptions"); *LifeWise Master Funding v. Telebank,* 374 F. 3d 917, 928 (10th Cir. 2004) (declaring that the mere fact that "a witness can parrot the *results* of a [damages] model does

---

[7] This principle flows from Federal Rule of Evidence 703, which provides that an expert may base his or her opinion on "facts or data" that need not be admissible into evidence, but are of a type "reasonably relied upon by experts in the particular field."  However, reliance on "facts and data" is qualitatively *different* from reliance on the analysis and opinion of another expert, with different expertise, who was specifically retained as a *litigation expert* to formulate a report and an opinion *for use in the litigation*.

not mean that he is qualified to explain how the model works or to opine on the statistical validity or interpretation of the results") (italics in original).

Although the Bass Report is attached as an exhibit to the Supplemental Simon Report, Bass is clearly not, in the words of *Dura,* Simon's "assistant," "gofer" or "data gatherer." *Dura,* 285 F. 3d at 613. Bass is also not the type of *non*-litigation expert who rendered an opinion in the ordinary course of events as part of the relevant, underlying facts of the case. In this case, Bass was retained by counsel specifically as a *litigation support expert* to provide a report and opinion *for use in this litigation* on which Simon would then rely to calculate a *new* theory of damages (based on a new claim of increased MVC points sales volume).[8]

Thus, in his Report, Bass acknowledges that he was specifically retained as *an expert for this litigation*: "retained [by Plaintiffs' counsel] to review and analyze data compiled by [Marriott] from a survey administered over time by Marriott … [and] to derive from the survey respondent data reasonably accurate estimates of how many fewer Points Marriott would have sold during that period, had RCDC access not been a feature of the MVC program…." Bass Report (Marx Decl. Ex. A) at 2. According to Bass, "the data set for this question … lends itself to a regression analysis…." *Id.* at 3. Bass then purports to perform such a regression analysis (see Appendices, *id.* at 7-13) and offer opinions based on it. *See also* Supplemental Simon Report (Marx Decl. Ex.

---

[8] Thus, this is not a case in which, for example, an expert in the ordinary course relies on a radiologist's report that was considered to diagnose a plaintiff's treatment or disease as part of the underlying facts of the case. *See, e.g.*, *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 781–82 (3d Cir. 1996) (physician's reliance on a pathology report was appropriate because it reflected *routine procedure* in medical treatment); Evidence Rule 703, 1972 Advisory Committee Comments ("a physician in his own practice bases his diagnosis on information from numerous sources and of considerable variety, including . . . reports and opinions from nurses, technicians and other doctors . . . [m]ost of which are admissible in evidence, but only with the expenditure of substantial time in producing and examining various authenticating witnesses").

11

B) at 2 ("I rely on the results of [Bass's] regression analysis").[9]

The very fact that Plaintiffs sought permission to identify and use Bass as a statistics expert is an acknowledgment that their existing experts were unable to perform this analysis. Thus, it could only be Bass who could testify concerning Bass's work. *See Wilkins v. Univ. of Houston*, 662 F.2d 1156, 1157 (5th Cir. 1981) ("Since multiple regression analysis is subject to misuse, courts cannot be expected to accept at face value conclusions derived from such a model absent expert testimony concerning the validity of the model itself."); *see also Dura,* 285 F. 3d at 613 (scientist cannot be the mouthpiece of a scientist in a different specialty). Yet, given the Court's April 7 Order, Bass is not, and cannot be, identified as an expert under Rule 26(a). Thus, Plaintiffs should not be permitted to circumvent effective enforcement of the April 7, 2019 Order, by, belatedly, attempting to argue that Simon can, in any event, rely on the Bass Report. The Court should strike all portions of the Supplemental Simon Report that rely on the Bass Report, as well as the Bass Report.

### III. THE FACT THAT PLAINTIFFS HAVE APPEALED THE COURT'S APRIL 7 ORDER IS NOT A BASIS TO AVOID ENFORCEMENT OF THE ORDER

Plaintiffs cannot argue that, because they have now filed a motion appealing the April 7, 2019, Order (see ECF 395, filed April 22, 2019), that they may ignore the April 7 Order or that the Court should not enforce it. Courts have consistently held that an objection to and appeal of a Magistrate Judge's Order does not "render the magistrate judge's ruling invalid until the district court acts on the objection." Fed. Prac. & Proc. Civ. §3069 (3d ed. Apr. 2019), citing *Esparza v. Bridgestone/ Firestone, Inc.*, 200 F.R.D. 654, 656 (D. Colo. 2001) ("Those courts that have

---

[9] As noted above, Bass also notes that he is being compensated at $300/hour for all work except deposition and trial testimony time, and for that he will be compensated at $350/hour. *Id.*

12

considered the issue have held that the filing of an objection does not automatically stay the magistrate judge's order"); *White v. Burt Enters.*, 200 F.R.D. 641, 643 (D. Colo. 2000) ("defendant's filing of Rule 72(a) objections did not relieve it of its obligation to comply" with the magistrate judge's orders, noting that doing so "would not only encourage the filing of frivolous appeals, but would grind the magistrate system to a halt"); *Gen. Steel Domestic Sales, LLC v. Steel Wise, LLC*, 2009 WL 24982, at *2 (D. Colo. Jan. 5, 2009) ("when a party has filed an objection to a Magistrate Judge's ruling pursuant to Fed.R.Civ.P. 72(a), there is no stay of the Magistrate Judge's challenged order unless and until either the Magistrate Judge or the District Judge grants a separate motion requesting a stay for good cause shown"); *Zander v. Craig Hosp.*, 2010 WL 1571213, at *1 (D. Colo. Apr. 20, 2010) (suspending a magistrate judge's rulings while being challenged "would encourage the filing of frivolous objections and grind the magistrate judge system to a halt."); *Copic Ins. Co. v. Wells Fargo Bank, N.A.*, 2010 WL 935646, at *1 (D. Colo. Mar. 11, 2010) (same); *Greystone Constr., Inc. v. Nat. Fire & Marine Ins. Co.*, 2008 WL 795815, at *4 (D. Colo. Mar. 21, 2008) (same); *Tolliver v. True*, 2007 WL 1306459, at ** 2-3 (D. Colo. May 3, 2007) (same).[10]

---

[10] *See also* 14 Moore's Federal Practice - Civil § 72.10 (2019) ("filing of an objection does not automatically stay operation of the order") (citing *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, 124 F.R.D. 75, 79 (S.D.N.Y. 1989) (automatic stay would encourage frivolous appeals and stifle magistrate judge system); *Tempay, Inc. v. Biltres Staffing of Tampa Bay, LLC*, 929 F. Supp. 2d 1255, 1260 (M.D. Fla. 2013) ("[d]ecisions by a magistrate judge on nondispositive matters are effective unless overturned by a district judge," and an objection to the order "does not stay the order or relieve the party of the obligation to comply"); *Kimbrell v. Adia, S.A.*, 834 F. Supp. 1313, 1317 (D. Kan. 1993) (decisions by magistrate judges should not be considered ineffective, advisory, or nonfinal simply because they may be reviewed by district court).

Accordingly, Plaintiffs' appeal of the April 7, 2019 Order in no way suspends that Order or prevents the Court from enforcing the Order by striking the Bass Report and the portions of the Supplemental Simon Report that rely upon the Bass Report.

## CONCLUSION

For all the foregoing reasons, the Marriott Defendants respectfully request that the Court enter an order striking the Bass Report from the Supplemental Simon Report and also striking all portions of the Supplemental Simon Report that refer or relate to, or rely upon, any opinions, data or information of any kind offered by Bass.

Dated:  May 10, 2019           Respectfully submitted,

By:     *s/ Ian S. Marx*
Philip R. Sellinger
Ian S. Marx
GREENBERG TRAURIG, LLP
500 Campus Drive, Suite 400
Florham Park, NJ 07932
Tel:     973.360.7900
Fax:    973.301.8410
Email: SellingerP@gtlaw.com; MarxI@gtlaw.com

*Attorneys for Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC, The Cobalt Travel Company, LLC, and The Lion & Crown Travel Co., LLC*

# CERTIFICATE OF SERVICE

I hereby certify that, on May 10, 2019, a true and accurate copy of the foregoing **MARRIOTT DEFENDANTS' RULE 37(c) MOTION TO STRIKE THE EXPERT REPORT OF JASON BASS AND THE PORTIONS OF THE SUPPLEMENTAL EXPERT REPORT OF JON SIMON THAT RELY ON THE BASS REPORT** was filed and served with the Clerk of the Court via CM/ECF filing system, which will send notification to the following:

Michael J. Reiser
Law Office of Michael J. Reiser
1475 North Broadway, Suite 300
Walnut Creek, California 94596
*Counsel for Plaintiffs*

Matthew C. Ferguson
The Matthew C. Ferguson Law Firm, P.C.
119 South Spring, Suite 201
Aspen, Colorado 81611
*Counsel for Plaintiffs*

Tyler Meade
The Meade Firm P.C.
12 Funston Avenue, Suite A
San Francisco, California 94129
*Counsel for Plaintiffs*

Linda Pham Lam
Michael Schrag
Gibbs Law Group LLP
505 14th Street, Suite 1100
Oakland, CA 94612
*Counsel for Plaintiffs*

Jessica Black Livingston
Andrew Nussbaum
Hogan Lovells US LLP
1601 Wewatta Street, Suite 900
Denver, Colorado 80202
*Counsel for Aspen Highlands*
 *Condominium Association*

                                        *s/ Rebecca Zisek*
                                        Rebecca Zisek
                                        *(Original on file at offices of Greenberg Traurig, LLP, pursuant to C.R.C.P. 121, § 1-26)*