IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 16-cv-01301-PAB-GPG

RCHFU, LLC, a Colorado limited liability company, et al.,

    Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al.,

    Defendants.

---

# ORDER

---

This matter is before the Court on Plaintiffs' Objections to the Magistrate Judge's Order Denying Their Request to Designate a New Expert to Analyze New Data [Docket No. 395, Public Entry Docket No. 396]. Plaintiffs filed a Request for Supplemental Expert Reports to Analyze Newly Produced Data [Docket No. 376] on March 28, 2019. The Marriott defendants opposed the motion [Docket No. 377] and defendant Aspen Highland Condominium Association took no position on the motion [Docket No. 375]. The magistrate judge denied the motion on April 7, 2019. Docket No. 386. Plaintiffs filed their objection to the magistrate judge's order on April 22, 2019. Docket No. 395.

## I. BACKGROUND

Plaintiffs are owners of fractional interests in the Ritz-Carlton Club Aspen Highlands who brought this lawsuit against defendants arguing that the values of their timeshares were decimated by defendants allowing club access to Marriott timeshare members. Docket No. 250 at 10, ¶ 1; 13, ¶ 10; 88, ¶ 81. Plaintiffs refer to the "benefit

to one brand through affiliation with a higher-end brand" as "the halo effect." Docket No. 395 at 5. On October 26, 2018, plaintiffs disclosed three experts, two of whom who were to provide opinions on the halo effect. Docket No. 395 at 5-6.[1] On December 28, 2018, the Marriott defendants submitted two rebuttal expert reports to rebut plaintiffs' experts' opinions on the halo effect. Docket No. 377 at 1-2.[2] The Marriott defendants' rebuttal experts cited data from Sales and Marketing Surveys ("SMS"). *Id.* The SMS surveyed individuals who had and had not purchased Marriott memberships to identify which Marriott features were important to them in making their membership decisions. Marriott submitted the survey results for the purpose of demonstrating that Marriott timeshare members did not base their purchasing decisions on access to the Ritz-Carlton Club and, therefore, Marriott achieved no halo effect by the co-marketing of Marriott and Ritz-Carlton. *Id.*

Plaintiffs challenged the Marriott defendants' late disclosure of the SMS and wrote to counsel on January 9, 2019 in an attempt to begin the meet and confer process regarding how to cure the prejudice it suffered from the late production and to obtain more documents and data related to the SMS. Docket No. 376-1 at 2-3, ¶ 6; Docket No. 395 at 7. On January 11, counsel for the Marriott defendants wrote back to

---

[1]After many revised scheduling orders, the deadline for initial expert reports was set for October 26, 2018 [Docket No. 316] and the deadline to serve rebuttal expert reports was set for December 28, 2019 [Docket No. 328].

[2]The Marriott defendants stated that they did not realize the relevance of the SMS documents or realize they could use the documents to rebut plaintiffs' experts' opinions until after the discovery deadlines had passed. Docket No. 377 at 3.

plaintiffs, stating that, in order for the parties to "move forward without the need to burden the Court with another discovery dispute," he was proposing the following:

> In terms of additional documents, we will produce on or before Tuesday, January 15, the backup data and documents that were used to prepare the SMS Reports.
>
> We will agree to make Messrs. Peters and Sonberg available for deposition in our Orlando offices (we can arrange a video conference if you wish) on the following dates (we propose that they be done on the same day): January 28, February 1, 4, 5, 7 or 8. Their depositions will be limited to the template SMS Survey and the SMS Reports (Peters) and the MVC Points pricing spreadsheets (Sonberg).
>
> We will agree that your experts Simon and Dev (but not Robinson) may submit amended affirmative reports on or before 14 days after the depositions of Messrs. Peters and Sonberg are completed; however, such amendments must be limited to the SMS Survey, SMS Reports and the MVC Points pricing spreadsheets. Our experts King and Israel (but not Dunec or Tantleff) will submit similarly limited rebuttal reports within 14 days of receiving your amended reports.
>
> We will agree to defer the deadline for completion of expert depositions for 45 days after the service of all expert reports.

Docket No. 376-5 at 5. The Marriott defendants stated they believed this proposal had been accepted. Docket No. 377-1 at 4, ¶ 13. Specifically, the Marriott defendants' counsel stated the proposal set forth in the January 11 letter was agreed to during a telephone call on January 14, 2019. *Id.* The Marriott defendants then took actions contemplated by the agreement, such as producing backup data and documents used to prepare reports summarizing the SMS data. *Id.* at 5, ¶ 14. Moreover, plaintiffs took Peters' deposition, also referenced in the agreement, on February 13, 2019. *Id.* at 6, ¶ 18. Plaintiffs provided what was contemplated in the agreement, namely, supplemental expert reports from their two experts that incorporated evidence from the SMS surveys. Docket No. 395 at 10.

3

On March 7, 2019, the Marriott defendants filed a status report and requested that the court enter a revised scheduling order based on the email agreement. Docket No. 361. On March 11, plaintiffs asked the Marriott defendants to agree to plaintiffs disclosing an additional expert to conduct an analysis on the SMS data. Docket No. 376-1 at 5, ¶ 17. The Marriott defendants opposed plaintiffs disclosing a new expert. *Id.*, ¶ 18. Plaintiffs filed a reply to the Marriott defendants' status report and request, proposing their own amended scheduling order. Docket No. 362. Plaintiffs then filed this motion. Docket No. 376.

The magistrate judge reviewed whether an agreement had been made between the parties concerning additional discovery. Docket No. 386 at 3. The magistrate judge determined the Marriott defendants had "persuasive evidence" that an agreement had been entered into, namely, the combination of the January 11 letter and both parties' actions taken pursuant to the agreement. Docket No. 386 at 5. Finding there to be a binding agreement between the parties limiting additional discovery, the magistrate judge denied plaintiffs' motion for supplemental expert reports beyond what was set out in the January 11 letter. Docket No. 386 at 7.

## II. STANDARD OF REVIEW

When reviewing a party's objection to a magistrate judge's order on a non-dispositive matter, the Court "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997). The clearly erroneous standard "requires that the reviewing court affirm unless it 'on the entire evidence is left

4

with the definite and firm conviction that a mistake has been committed.'" *Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). When applying the "clearly erroneous" standard, the Court is not entitled to reverse the magistrate judge's findings "simply because it is convinced that it would have decided the case differently," and the Court may not decide factual issues de novo. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123 (1969)).

## III. LEGAL ANALYSIS

Plaintiffs challenge the magistrate judge's order on two grounds. First, they argue the order relies on the wrong legal standard in finding a discovery agreement between the parties. Docket No. 395 at 12. Second, they argue it ignores the good cause that exists to amend the scheduling order and allow this new limited expert report. *Id.* at 14.

Plaintiffs argue the magistrate judge's order runs contrary to law that requires courts to only enforce discovery agreements that are "clear" and "unequivocal." *Id.* at 13. But the cases relied upon by plaintiffs do not *require* a court to find that a discovery stipulation is clear, absolute, or unequivocal; rather, the cases stand for the proposition that courts "cannot overlook or disregard stipulations which are absolute and unequivocal." *See L.P.S. by Kutz v. Lamm*, 708 F.2d 537, 539 (10th Cir. 1983); *In re Ulrich*, No. 10-10644, 2011 WL 3320064 (Bankr. D. Colo. Aug. 2, 2011) (finding no waiver of claims in a stipulation that was clear and unambiguous).

5

Here, the magistrate judge properly considered the evidence in the record and found that the Marriott defendants' evidence that an agreement had been made was persuasive. That the Marriott defendants made their proposal with the purpose of "mov[ing] forward without the need to burden the Court with another discovery dispute" suggests the email agreement was intended to encompass the entirety of the remedy for the Marriott defendants' late rebuttal expert disclosures. It was not clearly erroneous for the magistrate judge to find a binding agreement had been made.

And it was within the magistrate judge's discretion to enforce that agreement. "[T]he district court is vested with broad discretion in deciding whether to enforce the partes' stipulation." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1188 (10th Cir. 2018) (quoting *Miller v. Eby Realty Grp. LLC*, 396 F.3d 1105, 1116 (10th Cir. 2005); *see also O'Connor v. City & Cty. of Denver*, 894 F.2d 1210, 1226 n. 12 (10th Cir. 1990) ("The court determines the effect, if any, of the stipulations."). Plaintiffs have not demonstrated that the magistrate judge's decision finding an enforceable agreement between the parties was contrary to law or clearly erroneous.

Plaintiffs also argue the magistrate judge ignored the good cause that exists to amend the scheduling order and allow the additional expert report. Docket No. 395 at 14. A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). To demonstrate good cause, "the moving party must 'show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay.'" *Larimer v. Ocwen Loan Servicing, LLC*, No. 14-cv-01891-RM-KLM, 2015 WL 4036181, at *2 (D. Colo. July 1, 2015).

The decision to modify a scheduling order "is committed to the sound discretion of the trial court." *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987). When exercising this discretion, courts consider (1) "whether trial is imminent," (2) "whether the request is opposed," (3) "whether the non-moving party would be prejudiced," (4) "whether the moving party was diligent in obtaining discovery within the guidelines established by the court," (5) "the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court," and (6) "the likelihood that the discovery will lead to relevant evidence." *Id.*

The magistrate judge, considering the significance that the SMS documents have in the case, the stage of the case, and the "unlikely event" that additional discovery would lead to further relevant evidence, found that the agreement between the parties (which allowed for some additional discovery regarding the SMS, but did not allow the designation of additional experts) "appropriately balances" these factors. Docket No. 386 at 7.

The magistrate judge's finding that the weighing of the factors did not warrant reopening discovery was not clearly erroneous. The magistrate judge found that the Marriott defendants did not commit a discovery violation by failing to produce the SMS documents until December 28, 2018. Docket No. 386 at 6. And, although plaintiffs are not at fault for failing to designate this new expert before the December 28, 2018 rebuttal deadline, plaintiffs have not explained why they waited three months between the disclosure of the SMS documents and their motion to amend the scheduling order and, further, why this does not weigh against a finding of diligence. *See Gestetner Corp. v. Case Equipment Co.*, 108 F.R.D. 138, 141 (D. Me. 1985) (movant had not

established good cause under Rule 16(b)(4) when movant failed to explain why it had not filed motion to modify the scheduling order until four months after basis for motion became apparent).

Weighing the other factors, although a trial date is not yet set, allowing plaintiffs to add an additional expert at this time would likely cause some prejudice to the Marriott defendants. *See Anderson v. Seven Falls Co.*, No. 12-cv-01490-RM-CBS, 2013 WL 3771300, at *8 (D. Colo. July 18, 2013) ("It is not unreasonable to presume that Plaintiff's belated disclosure of a rebuttal expert will likely require Defendant to incur additional expense in deposing the newly disclosed expert, consulting with its own experts, and supplementing their reports."); *see also Quintana v. Edmond*, No. 06-cv-01187-WDM-KLM, 2009 WL 1798219, at *2 (D. Colo. June 23, 2009) ("There can be no doubt that allowing Plaintiff to take additional discovery requires Defendants to incur additional and unanticipated expenses, even if just limited to interviews, and will impact their ability to prepare for trial."). The Marriott defendants state that they have already prepared responsive expert reports based on the expert reports plaintiffs have submitted. Docket No. 377 at 7. "Both the court and Defendants are entitled to expect that by a date certain, Plaintiff's list of testifying experts will be fixed and the case will proceed on that basis." *Fresquez v. Baldwin*, No. 08-cv-01233-CMA-CBS, 2010 WL 5934891, at *29 (D. Colo. Dec. 15, 2010).

Plaintiffs argue that the Marriott defendants would not be prejudiced by the designation of Mr. Bass as an expert because "Marriott has already been served with Mr. Bass's expert opinion, which is an exhibit to the recently-supplemented Simon report." Docket No. 395 at 15. Plaintiffs' service of the report from Bass, the additional

8

expert they sought to designate, Docket No. 395 at 3, occurred after the magistrate judge denied plaintiffs' request to designate that additional expert. Docket No. 386; Docket No. 392-1 at 2. Plaintiffs cannot work their contravention of the magistrate judge's order to their benefit. Because plaintiffs have not made arguments regarding the last two factors, the Court declines to address them. The Court finds the magistrate judge's order is not clearly erroneous or contrary to law.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiffs' Objections to the Magistrate Judge's Order Denying Their Request to Designate a New Expert to Analyze New Data [Docket No. 395] are **OVERRULED**.

DATED May 16, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge