# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLORADO

Gordon P. Gallagher, United States Magistrate Judge

Civil Action No. 16-cv-1301-PAB-GPG

RCHFU, LLC *et al*.,

      Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION *et al*.,

      Defendants.

## ORDER REGARDING PLAINTIFFS' MODIFIED MOTION TO AMEND THE SCHEDULING ORDER AND COMPLAINT REGARDING THE 2013 AFFILIATION AGREEMENT

      This matter comes before the Court on Plaintiffs' modified motion to amend (ECF #379)[1] (which was referred to this Magistrate Judge (ECF #380)), Aspen Highland's response (ECF #394), and Plaintiffs' reply (ECF #401). Defendant Marriott does not oppose and thus filed no responsive pleading. The Court has reviewed each of the aforementioned documents, response, reply, and any attachments. The Court has also considered the entire case file, the applicable

---

[1] "(ECF #379)" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). I use this convention throughout this Order.

1

law, and is sufficiently advised in the premises. The Court ORDERS as specifically set forth below.[2]

The parties are intimately familiar with how we arrived at this juncture regarding the Affiliation Agreement, so the Court, in the interest of brevity, will give only the briefest review. The Court found a discovery violation on the part of Marriott for failing to disclose the Affiliation Agreement, *see* the New Year's Eve Order (ECF #330, p. 29), and attempted to craft a remedy for this violation. The violation by Marriott was found by the Court to not have been bad faith or the result of willful misconduct and in no way a violation by Aspen Highlands. *Id*. Plaintiffs moved to amend as a result of the violation (ECF #337) and the Court denied, without prejudice, the motion on the basis that the requested amendment went beyond the bounds of the Affiliation Agreement violation. Order denying (ECF #369).

Plaintiffs now move to amend their 6th amended complaint (ECF #250) and wish to lodge their 7th amended complaint (ECF #379-2). The ~~strikethroughs~~ below indicate language the Court is striking from the proposed amended complaint and will not allow. Rather than repeat the same language a second time, the Court is indicating modifications below within a sole reiteration of the text and will then provide explanation.

The proposed amendments, found at ECF #379-2, are as follows:

Para. 24: Adding the language that Aspen Highlands, otherwise known as the Association, owes a duty of "~~full disclosure,~~ to discharge its responsibilities with reasonable care."

Paras. 37 & 38: Adding language to the effect that RC Management owes duties of "honesty, and full disclosure, to discharge its responsibilities with reasonable care."

---

[2] Any party may object to this non-dispositive Order within fourteen (14) days. Fed.R.Civ.P. 72(a).

Para. 42:  Adding language to the effect that Cobalt owes duties of "honesty, and full disclosure, to discharge its responsibilities with reasonable care."

Para. 45:  Adding the following:  On August 8, 2010, Cobalt entered into a second affiliation agreement with L&C ("2010 Affiliation Agreement") in which Cobalt ostensibly affiliated the RCDC with something called the L&C Exchange Program. The 2010 Affiliation Agreement purported to give L&C the right to affiliate its exchange program with other exchange programs. The net effect of the 2010 Affiliation Agreement was that the RCDC would become affiliated with any other exchange programs incorporated into the L&C Exchange Program by L&C.

Para. 46:  Adding the following:  On November 14, 2013, L&C entered into a third affiliation agreement with Marriott Resorts, Travel Company, Inc. ("2013 Affiliation Agreement"). The 2013 Affiliation Agreement affiliated the L&C Exchange Program — and by extension the RCDC — with the Marriott Vacation Club. The main body of the 2013 Affiliation Agreement specifically provided that the contemplated affiliation with the Marriott Vacation Club would not apply to a particular RCDC club (e.g., such as the Ritz-Carlton Club, Aspen Highlands) unless the association for that club (e.g., the Association defendant here) signed a separate agreement appended to the 2013 Affiliation Agreement called an "Acknowledgment of and Joinder to" the 2013 Affiliation Agreement ("Acknowledgment and Joinder").

Para. 47:  Adding the following:  L&C is the agent or subagent of the Association and Fractional Unit owners, including Plaintiffs and Ritz-Carlton Aspen Owners, and, as such, owes the Association, Plaintiffs and Ritz-Carlton Aspen Owners fiduciary duties, including duties of loyalty, honesty, and full disclosure, to discharge its responsibilities with reasonable care, and to avoid self-dealing.

Para. 44:  Adding the following:  In reality, however, Cobalt, L&C, and Marriott Resorts, Travel Company were nothing more than divisions of MVW, meaning the complex sequence of affiliation agreements (the Initial Affiliation Agreement, the 2010 Affiliation Agreement, and the 2013 Affiliation Agreement) were nothing more than window dressing for self-serving decisions by MVW. Indeed, the 2010 Affiliation Agreement was not an arm's length transaction between Cobalt and L&C; that agreement was drafted and signed by executives of MVW. The same is true of the 2013 Affiliation Agreement. The Marriott Defendants concocted this confusing state of affairs to obfuscate the true state of affairs and provide cover for their breaches of fiduciary duties, as more fully alleged below. Indeed, MVW executives and lawyers never provided the 2013 Affiliation Agreement to the Association.

Para. 85:  Adding the following [regarding Aspen Highlands]:  2) failing to request or review the 2013 Affiliation Agreement or understanding its terms or effect on the Ritz-Aspen Highlands; 3) failing to disclose the adverse terms of the 2013 Affiliation Agreement to the Plaintiffs or Ritz-Carlton Aspen Owners; 4) misrepresenting to the Plaintiffs and Ritz-Carlton Aspen Owners the terms of the

~~2013 Affiliation Agreement, including by asserting that the 2013 Affiliation Agreement allowed only a "week for week" swap between one Aspen Highlands Member and one MVC Member.~~

Para. 86-93: Adding the following:

86. The Marriott Defendants knew that the 2013 Affiliation Agreement between MVW subsidiaries L&C and Marriott Resorts, Travel Company required that the Association at the Ritz-Carlton Aspen Highlands Club agree to join in that agreement before it was affiliated with the Marriott Vacation Club, i.e., before any Marriott Vacation Club members could access the resort. But they did not want the Association to know that it could simply refuse to execute the Acknowledgment and Joinder and thereby stop the affiliation at their club, so they concealed the 2013 Affiliation Agreement itself.

87. As described in part below, the Marriott Defendants knew that the 2013 Affiliation Agreement contained numerous terms that would be rejected by the associations at the several clubs, including Aspen Highlands, and so they concealed the 2013 Affiliation Agreement from the associations and their members.

88. Directors of the Association provided the Marriott Vacation Club members access to Aspen Highlands by signing the Acknowledgment and Joinder on or about April 24, 2014, without ever having requested, received, or reviewed the 2013 Affiliation Agreement they were agreeing to join. ~~On information and belief, they did so believing they had no power to stop the Marriott Vacation Club affiliation when, in fact, the 2013 Affiliation Agreement that they acknowledged gave them that exact power.~~

89. The Association breached its duty of care by signing the Acknowledgment and Joinder without requesting, obtaining, or reading ~~the onerous and adverse terms of the agreement they were joining~~ the 2013 Affiliation Agreement. ~~Had the Association directors done so, they would have discovered that they had the power to prevent the Marriott Vacation Club from applying to Aspen Highlands with a simple majority vote.~~ The Marriott Defendants aided and abetting in this breach of the Association's duty of care by concealing the 2013 Affiliation Agreement from the Association's directors, and misleading them into believing they had no power to stop the Marriott Vacation Club affiliation.

90. ~~Had the Association actually reviewed~~ The 2013 Affiliation Agreement~~, it would have objected to~~ included numerous one-sided and unfair terms ceding significant control from the Association to both Marriott Vacation Club Program Manager Marriott Resorts, Travel Company and L&C. For instance, Section X of the 2013 Affiliation Agreement created a ten-year term for the Ritz-Marriott affiliation, which automatically renews for five-year terms. Critically, once the Association signed the Acknowledgment Agreement, it had no further power to

4

withdraw from the Marriott-Ritz affiliation as termination rights rest solely with Marriott Vacation Club and L&C.

91. Further, the 2013 Affiliation Agreement granted significant use rights to Marriott Vacation Club in the Ritz properties, above and beyond the use rights given to Aspen Highlands Club owners themselves under the Club's Declaration. Marriott Vacation Club secured the right during certain periods to use the Aspen Highland Club for "marketing and sales of Interests, vacation ownership interests at other resort condominiums or club resort*s*, or such other vacation ownership or multisite vacation ownership or membership plans developed or marketed by MVCD or its affiliates." Marriott Vacation Club further secured the right to use exchange time at the Aspen Highlands Club "*for any purpose*, including, without limitation, in MVCD's sole and absolute discretion, any purpose related to marketing, selling, or promoting the MVCD Program or other timeshare or fractional projects developed, marketed or offered by MVCD's affiliates." (Emphasis added). In other words, it secured a right to use the Aspen Highlands club to market the sale of MVCD points to potential Marriott customers.

92. Furthermore, while it is customary for such exchange agreements to specify a formula for allocating exchange time between various programs, section 7.8 of the 2013 Affiliation Agreement gave Marriott Vacation Club the sole and absolute discretion to calculate the value of exchange time, meaning that MVCD would inevitably use 100% of the exchange time contributed by Aspen members. Likewise, while it is customary for exchange agreements to fairly allocate costs between affiliating exchanges, the 2013 Affiliation Agreement has no such provision. Indeed, the cost allocation was grossly one-sided and likely to lead to increased costs for Aspen Highlands owners. Section 7.1 of the Agreement reserved for Marriott Vacation Club the right to charge Ritz members for use of the exchange program, but explicitly prohibited L&C from charging Marriott members fees for exchanging into the Ritz.

93. ~~Had the Association reviewed these terms, it never would have agreed to the 2013 Affiliation Agreement. Indeed, they were ignoring Mr. Gosch's advice and jettisoning the cease and desist letter without any competent counsel — while the Marriott Defendants had multiple lawyers working on these agreements.~~

Para. 105: Adding the following: Defendant Association also owed Plaintiffs a duty to exercise its fiduciary duties with reasonable care. The Association violated that duty by executing the Acknowledgment and Joinder without requesting or reading the 2013 Affiliation Agreement itself. As a result of this breach of the duty of care, the Association failed to discover that it could have prevented the Marriott Vacation Club affiliation at Aspen Highlands with a simple majority vote of its directors, and instead unwittingly authorized that affiliation at Aspen Highlands. The Association further failed to ~~disclose or cure~~ discover a number of one-sided provisions in the 2013 Affiliation Agreement that ceded extraordinary power and control over the club to Marriott Vacation Club, including (i) ceding

5

all authority to withdraw from the Marriott-Ritz affiliation in the future (Section X), (ii) granting Marriott Vacation Club unfettered use rights in time allocated to it under the 2013 Affiliation Agreement, including the authority to use the Aspen Highlands Club to sell points to Marriott customers (paragraphs 7.6 and 7.7), (iii) granting Marriott Vacation Club absolute authority to determine the value of time exchanged from Ritz members into the Marriott program, and (paragraph 7.8) (iv) providing an unfair allocation of costs to run the program between Ritz members and Marriott members (paragraph 7.1).

Para. 111: Adding the following: As described above, Defendants MVW, RC Management, Cobalt, and L&C knew that the 2013 Affiliation Agreement gave the Association the power to prevent the Marriott Vacation Club affiliation from extending to Aspen Highlands but concealed that information from the Association as part of a plan to induce the Association into executing the requisite Acknowledgment and Joinder. Furthermore, MVW, RC Management, Cobalt, and L&C knew about a number of one-sided provisions in the 2013 Affiliation Agreement that ceded extraordinary power and control over the Club to Marriott Vacation Club, including (i) ceding all authority to withdraw from the Marriott-Ritz affiliation in the future (Section X), (ii) granting Marriott Vacation Club unfettered use rights in time allocated to it under the 2013 Affiliation Agreement, including the authority to use the Aspen Highlands Club to sell points to Marriott customers (paragraphs 7.6 and 7.7), (iii) granting Marriott Vacation Club absolute authority to determine the value of time exchanged from Ritz members into the Marriott program, and (paragraph 7.8) (iv) providing an unfair allocation of costs to run the program between Ritz members and Marriott members (paragraph 7.1).

Para. 125: Adding the following: The Marriott Defendants aided and abetted in the Association's breach of its duty to exercise reasonable care in the performance of its duties by inducing the Association to sign the Acknowledgment and Joinder while concealing the 2013 Affiliation Agreement from the Association's directors, and misleading them into believing they had no power to stop the Marriott Vacation Club affiliation. Furthermore, the Marriott Defendants knew about a number of one sided provisions in the 2013 Affiliation Agreement that ceded extraordinary power and control over the Club to Marriott Vacation Club, including (i) ceding all authority to withdraw from the Marriott-Ritz affiliation in the future (Section X), (ii) granting Marriott Vacation Club unfettered use rights in time allocated to it under the 2013 Affiliation Agreement, including the authority to use the Aspen Highlands Club to sell points to Marriott customers (paragraphs 7.6 and 7.7), (iii) granting Marriott Vacation Club absolute authority to determine the value of time exchanged from Ritz members into the Marriott program, and (paragraph 7.8) (iv) providing an unfair allocation of costs to run the program between Ritz members and Marriott members (paragraph 7.1).

Plaintiffs include other minor language changes throughout that the Court does not deem substantive or the Court determines to be inconsequential enough that they do not bear specific mention—each proposed change not mentioned will be allowed.

Plaintiffs assert that the motion to amend is narrowly tailored to remedy only the discovery violation attributable to the Affiliation Agreement.  Plaintiffs' motion (ECF #379, p. 2).  Plaintiffs argue that both the Rule 16(b) standard and Rule 15 standard are met.  *Id*. at pp. 3-4.  Plaintiffs argue, as to Aspen Highlands, that the proposed language essentially supplements their breach of fiduciary duty claim.  *Id*. at p. 4.

Aspen Highlands opposes the motion to amend on the basis that it punishes Aspen Highlands for Marriott's violation when the Court did not find Aspen Highlands to be at fault.  Aspen Highland's response (ECF #394).  Aspen Highlands refutes Plaintiffs' theory that the motion to amend simply supplements the breach of fiduciary duty claim and instead argues that the motion adds a new duty of care claim targeted at Aspen Highlands.  *Id*. at p. 2.  Aspen Highlands argues that the breach of fiduciary duty claims was previously posited as a breach of the duty of loyalty rather than a breach of the duty of care and these are distinct claims with distinct proof requirements.  *Id*. at p. 6.  Aspen Highlands argues that granting the motion, as is, would delay this action due to a need to re-open dispositive motions and for the parties to engage in additional discovery.  *Id.* at p. 9.  Aspen Highlands argues that the proposed amendments are futile on the basis that Aspen Highlands is protected by the business judgment rule and under the economic-loss rule.  *Id*. at p. 10.

7

Standard of Review

After a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and, if and only if the 16(b) standard is met, then there must be (2) satisfaction of the Rule 15(a) standard. *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014); *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001). "[T]he liberal standard for granting of motions for leave to amend unless the amendment inflicts undue prejudice on the non-moving party reflects the Court's underlying policy that pleadings should enable a claim to be heard on its merits." *James*, Civil Action No. 10-cv-02591-WJM-CBS, 2012 U.S. Dist. LEXIS 22663, at *8 (citing *Calderon v. Kan. Dep't of Soc. & Rehabilitative Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999)). The deadline to amend the pleadings, as contained in the scheduling order, in this case has passed. Therefore, Plaintiffs must meet both the 16(b) good cause standard and satisfy the 15(a) standard.

A court may modify the scheduling order under Rule 16(b) if the deadline cannot be met despite the diligence of the party seeking the extension. *Pumpco*, 204 F.R.D. at 668. Rule 16(b)'s good cause requirement is satisfied if a plaintiff learns new information through discovery or if the underlying law has changed. *Gorsuch, Ltd., B.C*, 771 F.3d at 1240. Good cause exists where a party "first learns, through discovery or disclosures, information necessary for the assertion of a claim after the deadline to amend established in the scheduling order," and thereafter moves diligently in seeking the amendment. *Pumpco*, 204 F.R.D. at 668-69.

Federal Rule of Civil Procedure 15(a) provides that a party may amend his pleading "only by leave of court or by written consent of the adverse party" after a responsive pleading has been served, and instructs that "leave shall be freely given when justice so requires." When

8

considering whether to allow an amendment to a complaint, the court considers factors such as whether the amendment will result in undue prejudice to the defendant, whether the request was unduly and inexplicably delayed or offered in good faith, and whether the party had sufficient opportunity to state the claim but failed. *See Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990). Whether to grant a motion to amend is within the trial court's discretion. *Woolsey v. Marion Labs, Inc.*, 934 F.2d 1452, 1462 (10th Cir. 1991).

Futility

A motion to amend may be denied when the proposed amendment is futile. *Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Services, Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). A proposed amendment is futile if the complaint, as amended, would be subject to dismissal. *Id.*

Analysis

The Court will quickly dispense with a discussion of both the Rule 16(b) and 15(a) standards as that is not the heart of the present dispute. The issue is not whether Plaintiffs should be allowed to amend their complaint to incorporate the Affiliation Agreement but rather where to set the appropriate level of amendment. Here, the good cause standard pursuant to Rule 16(b) has been met. As has been amply discussed, Plaintiffs' receipt of the Affiliation Agreement was significantly delayed through no fault of Plaintiffs. In fact, Plaintiffs' Counsel spotted the language which triggered Plaintiffs' request for the Affiliation Agreement—and then prompt

9

provision from Marriott's Counsel. Nevertheless, the date to amend pleadings passed prior to Plaintiffs receiving the Affiliation Agreement on March 13, 2018. So, the request to amend was after the operative deadline. This issue has been in almost constant litigation since that time to determine the appropriate level of correction necessary to rectify the discovery violation. In this instance, Plaintiffs' good cause essentially speaks for itself. There was no practical way that Plaintiffs could have timely moved to amend to add the information from the Affiliation Agreement as they did not have the document. Thus, I find that the Rule 16(b) standard is met as Plaintiffs have established good cause for their late motion to amend.

With the Rule 16(b) standard met, I next move on to the Rule 15(a) analysis which required me to determine if justice requires the Court to allow amendment in this circumstance. The answer to that second question is also yes, with some tailoring of the proposed amendments to fit the facts and circumstances of this situation. Justice requires the Court to allow Plaintiffs to amend their complaint sufficiently to put Plaintiffs back in the position they would otherwise have been, had Plaintiffs timely be provided the Affiliation Agreement.

As indicated above, the appropriate analysis in this circumstance is to determine the level of amendment necessary to cure the discovery violation—no more and no less. Put simply, the query must be as follows: would Plaintiffs have framed their complaint differently if they had been timely provided the Affiliation Agreement and how might the complaint have reasonably been framed differently? That question is crucial because the Court finds that justice would be served by allowing Plaintiffs to amend to reflect what Plaintiffs would have reasonable included in a complaint, had Plaintiffs known the facts necessary for such inclusion. Justice would not be to deny such amendment and justice would similarly not be to allow Plaintiffs to amend beyond that level. Thus, the Court's determination comes down to a judgment call as to how a


reasonable Plaintiff might have drafted the complaint if in possession of the Affiliation Agreement at the time of the framing.

Aspen Highlands, as indicated *supra*, opposes the amendment on numerous grounds. One of the main arguments that Aspen Highlands relies upon in opposing the proposed amendment is the negative effects the proposed amendment will likely have on Aspen Highlands. As the Court has previously indicated, *see* Order denying without prejudice Plaintiffs' motion to amend (ECF #369, pp. 4-5), the effects on Aspen Highlands should be kept to a minimum as Aspen Highlands was not at fault from the discovery violation. But keeping the effects to a minimum is different that crafting a remedy with no effects and this issue must be looked at from a variety of perspectives.

First: Plaintiffs should not be prejudiced by the discovery violation. If Plaintiffs would have likely crafted their complaint in a certain fashion if in possession of the Affiliation Agreement in a timely fashion, Plaintiffs should now be allowed to amend to put them in that same posture.

Second: Aspen Highlands should not benefit from Marriott's discovery violation. Aspen Highlands should not be able to avoid having to address a claim simply because Marriott did not timely provide the Affiliation Agreement.

Third: Aspen Highlands should not be put to undue expense because of Marriott's failure, e.g., if it is necessary to duplicate some discovery, depositions, etc., those duplicative costs should be shifted to Marriott as the party at fault for this situation.

With those points in mind, Aspen Highlands' argument that the amended claim creates a new duty of care claim is irrelevant. The issue must be framed not as to whether a new claim is

created but as to whether Plaintiffs would have proceeded in this fashion originally if properly in possession of the Affiliation Agreement. The logical answer is yes. Had Plaintiffs been in possession of the Affiliation Agreement, the claim reasonably flowing from that would be for a breach of the duty of care for failing to properly review the documents regarding the agreement being entered into by the Association.

The Court is not opining as to whether this modifies the existing claim or creates a new one—that is a matter for another day. Under either circumstance, it is appropriate to allow Plaintiffs to modify the complaint under the theory that Aspen Highlands did not review an operative document referred to in another document. The document, ACKNOWLEDGEMENT OF AND JOINDER TO AFFILIATION AGREEMENT BETWEEN THE LION & CROWN TRAVEL CO., LLC AND MARRIOTT RESORTS, TRAVEL COMPANY, INC. (ECF #223-8, pp. 50-53) references the Affiliation Agreement throughout. It is not a stretch to allege a breach of the duty of care on the theory that whomever signed the Acknowledgement on behalf of Aspen Highlands should have reviewed the Affiliation Agreement before proceeding. Indeed, it is exactly this thought process that brought the Affiliation Agreement to light, Counsel Reiser's realization when reviewing the Acknowledgement that he was not in possession of all the pieces of the puzzle. *See* Reiser Declaration (ECF #223-1).

In terms of re-opening dispositive motions, at least as to a motion to dismiss, that seems to be an unlikely necessity. The parties have certainly reviewed Judge Brimmer's Order (ECF #210) on a prior motion to dismiss and can themselves apply the logic and arguments therein to this situation and perhaps come to a determination that such a motion may not be fruitful. However, the determination as to whether to move to dismiss will of course be left to the parties.

In terms of futility, I do not find the proposed amendments futile under the business judgement rule nor under the economic loss rule for the same reasons set forth in Judge Brimmer's Order regarding the motion to dismiss.  *See* Order by Judge Brimmer on the motion to dismiss (ECF #210, pp. 15-21).

Conceivably, the proposed amendments could result in some additional discovery.  Although, as the argument can baldly be stated as the operative Director(s)/Counsel did not receive and review the Affiliation Agreement, there may not be much more to say on the subject as that point has already be admitted.  But if there is additional discovery necessary to explain or expand on issues raised by the amendment, e.g., depositions, interrogatories, etc., Marriott will have to bear those costs.

As the parties are aware, the Court previously denied, without prejudice, a prior attempt to amend on the basis that the prior attempt went significantly beyond what was necessary to put Plaintiffs back on an even playing field.  *See* Order (ECF #369).  The present attempt to amend hits far closer to the mark.  The Court, within the language copied from the amended complaint*, see supra*, has ~~stricken~~ any language that the Court believes goes too far and operates as punishment rather than as an attempt to level things out.  As modified, the Court finds the proposed amendments an appropriate fix for the discovery violation regarding the Affiliation Agreement.

It is therefore Ordered that Plaintiffs' motion to amend is GRANTED and that Plaintiffs shall lodge their 7th amended complaint—with the modifications made by the Court.

It is further Ordered that Defendant Aspen Highlands shall keep account of any additional costs and fees borne by Aspen Highlands due to this discreet situation for recompense by Marriott at the conclusion of this matter or as otherwise appropriate. *See* Order (ECF #368).

Dated at Grand Junction, Colorado, this June 23, 2019.

Gordon P. Gallagher

United States Magistrate Judge