IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 16-01301 PAB

RCHFU, LLC, et al.

      Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al.

      Defendants.

---

### DECLARATION OF IAN S. MARX IN SUPPORT OF MARRIOTT DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

I, **Ian S. Marx**, declare and state:

1. I am a shareholder of Greenberg Traurig, LLP, attorneys for Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC, The Cobalt Travel Company, LLC, and The Lion & Crown Travel Company, LLC ("L&C") (collectively, "Marriott Defendants") in this action. I submit this Declaration based upon personal knowledge and in support of the Marriott Defendants' motion, pursuant to Fed. R. Civ. P. 56(a), for partial summary judgment (1) precluding Plaintiffs from recovering, as damages, (a) any amounts unrelated to or pre-dating the affiliation of The Ritz-Carlton Club, Aspen Highlands ("RC Club Aspen") with the Marriott Vacation Club Destinations Exchange Program (the "MVCD Program"), or (b) any profits allegedly earned by any of the Marriott Defendants in connection with or pre-dating the aforementioned affiliation (the "MVC Affiliation"); (2) dismissing Plaintiffs' unjust enrichment claim (Count V of the Seventh Amended Complaint ("7AC")), in which such disgorgement of profits is sought; and (3)

dismissing Counts I, II and III of the 7AC to the extent they pertain to the November 13, 2013 affiliation agreement between L&C and Marriott Resorts, Travel Company (the "2013 Affiliation Agreement").

2. Since this action was filed through the close of discovery, Plaintiffs have made numerous submissions to the Court. Throughout these submissions, Plaintiffs have consistently characterized this case as being about the affiliation:

A. Attached as **Exhibit A** is a true and correct copy of Plaintiffs' Opposition To Marriott Defendants' Motion To Dismiss Second Amended Complaint (ECF # 58), filed on August 15, 2016, in which Plaintiffs' three-page "Statement of the Case" consists of a narrative about the affiliation, concluding that "[w]hile Defendants have derived huge profits and cost savings from this *affiliation*, the value of Plaintiffs' fractional interests has been destroyed." ECF # 58 at 6 (emphasis added).

B. Attached as **Exhibit B** is a true and correct copy of Plaintiffs' Opposition To Defendant Aspen Highlands Condominium Association's Motion To Dismiss Plaintiffs' Second Amended Complaint (ECF # 59), filed on August 15, 2016, in which Plaintiffs' "Introduction" states that "the *affiliation* served the interests of the Marriott Defendants, but decimated the values of Plaintiffs' fractional interests at the Ritz-Aspen by giving 400,000 Marriott Vacation Club members access to the Ritz-Aspen for a fraction of the cost that Plaintiffs paid for their fractional interests," ECF # 59 at 2 (emphasis added), and Plaintiffs' three-and-a-half page "Statement of the Case" consists of a narrative about the affiliation, explaining how "Cobalt, acting in concert with the other Defendants, including RC Management and the Association, decided to include the Ritz-Aspen in the

Marriott Vacation Club *affiliation*" and that "[w]hile Defendants have derived huge profits and cost savings from this *affiliation*, the value of Plaintiffs' fractional interests have been destroyed," *id.* at 5 (emphasis added).

C. Attached as **Exhibit C** is a true and correct copy of Plaintiffs' Opposition To Defendant Aspen Highlands Condominium Association's Motion To Dismiss Third Amended Complaint (ECF # 85), filed on December 14, 2016, in which Plaintiffs requested leave to amend their complaint on the grounds that the Association produced "abundant new evidence that further supports Plaintiffs' claims," where the "new evidence" consists entirely of documents concerning the affiliation (i.e., (i) a legal opinion provided to the Association "on the issue of whether the Declaration prohibited the MVC *affiliation* at issue"; (ii) "a cease and desist letter to the Marriott Defendants, explaining that the *affiliation* was unlawful"; and (iii) an email from one fractional owner purporting to inform Marriott "that the proposed *affiliation* was an act of self-dealing." ECF # 85 at 2 (emphasis added).

D. Attached as **Exhibit D** is a true and correct copy of Plaintiffs' Motion To Stay Case (ECF # 89), filed on December 21, 2016, in which the Plaintiffs describe the affiliation in the "Factual and Procedural Background," concluding that "[t]he natural result of this *affiliation* was the decimation of the values of Plaintiffs' fractional interests due to the dilution of the Ritz-Carlton brand and loss of its exclusivity." ECF # 89 at 4 (emphasis added).

E. Attached as **Exhibit E** is a true and correct copy of Plaintiffs' Reply In Support Of Motion To Modify Scheduling (ECF # 101), filed on January 19, 2017, in which Plaintiffs sought

3

leave to amend their complaint due to new evidence centered exclusively around the affiliation, asserting that "[a]s a result of the Marriott Defendants and the Association reneging on their promise, Plaintiffs had no say and could do nothing about the proposed *affiliation* that would ultimately destroy the value of their units." ECF # 101 at 7 (emphasis added).

F. Attached as **Exhibit F** is a true and correct copy of Plaintiffs' Response To Defendant Aspen Highlands Condominium Association's Objection To Order Regarding Plaintiffs' Motion To Stay Case And Order Regarding Plaintiffs' Motion To Modify Scheduling Order (ECF # 110), filed on March 15, 2017, in which Plaintiffs continue to support their request for leave to amend their complaint on the grounds that the new documents "not only bolster existing claims, but support a new cause of action for constructive fraud" because the documents show that, through the affiliation, the Defendants "took action that would significantly affect Plaintiffs' property without giving them an opportunity to vote or object, and without fully disclosing their actions to Plaintiffs." ECF # 110 at 5.

G. Attached as **Exhibit G** is a true and correct copy of Plaintiffs' Opposition To Marriott Defendants' Motion To Dismiss Fifth Amended Complaint (ECF # 140), filed on May 5, 2017, in which Plaintiffs' three-page "Introduction" explains that:

> [B]y 2013, MVCI and its parent company Marriott Vacations Worldwide ("MVW") had decided to abandon the upscale Ritz-Carlton luxury club product, and favor their points-based and much cheaper MVC product. To this end, in 2014, Cobalt, at the urging of the Marriott Defendants, *affiliated* the Ritz-Aspen with the MVC, meaning that over 400,000 MVC members could use their points to access the Ritz-Aspen for a small fraction of what Plaintiffs paid. The natural result of this *affiliation* was the decimation of the values of Plaintiffs' fractional interests.

4

>Based on the objections to the affiliation that the boards of the Ritz-Carlton clubs (including the Association) voiced, Defendants were well aware that the proposed *affiliation* would both depress the value of Plaintiffs' fractional units, and enrich the Marriott Defendants. In addition, the Association's legal counsel informed it (and the Association informed the other Defendants) that the governing documents prohibited the proposed *affiliation*. In response, the Association and the other Defendants agreed not to *affiliate* unless a majority of fractional owners voted in favor of the *affiliation*. But Defendants broke this promise in 2014 when Cobalt, acting in concert with and aided and abetted by the other Defendants, affiliated the Ritz-Aspen without the promised vote. Predictably, those fractional interests now sell for as low as $10,000, while at comparable luxury clubs that preserved their promised exclusivity, fractional interests have maintained their values and have indeed appreciated.

ECF # 140 at 1-2 (emphasis added). And, the two-and-a-half page "Statement of the Case" provides a narrative about the affiliation, concluding that "[e]ven though the members did not have a chance to vote on the *affiliation*, in April 2014, Cobalt, acting in concert with other Defendants, decided to include the Ritz-Aspen in the MVC *affiliation*" and that "[w]hile Defendants have profited from this *affiliation*, the value of Plaintiffs' fractional interests has been destroyed." *Id.* at 6 (emphasis added).

H. Attached as **Exhibit H** is a true and correct copy of Plaintiffs' Motion To Amend Scheduling Order To Allow Plaintiffs To Amend Complaint To Add Claim For Exemplary Damages; And Motion To Amend Complaint (ECF # 185), filed on February 2, 2018, in which Plaintiffs' three-page introduction focuses entirely on the affiliation, explaining that:

>It was not until the recent depositions of Lee Cunningham, Stephanie Sobeck, and Mary Lynn Clark (and third parties) in November and December 2017 that the requisite prima facie case for exemplary damages emerged. Their testimony reveals that the Marriott Defendants did not simply err in a manner that breached the fiduciary duties they owed to Plaintiffs. Driven by corporate greed, the Marriott Defendants willfully and wantonly lied to Plaintiffs as part of their campaign to surreptitiously force a *value-crushing affiliation* between the Ritz-Carlton Destination Club ("RCDC") and the point-based Marriott Vacation Club

5

>   (sometimes, "MVC") that allowed them to profit at the expense of Plaintiffs' deeded property rights.

ECF # 185 at 2 (emphasis added). The "Introduction" further described the alleged "scheme" whereby the Marriott Defendants

>   forced an *affiliation* between the two clubs over the strenuous objections of Plaintiffs and other members. As a result, 400,000 Marriott Vacation Club members can stay at the Ritz-Aspen for a fraction of the premium prices that Plaintiffs paid. The value of Plaintiffs' deeded property interests has collapsed by 80-90% (or more) for a very obvious reason: No rational economic actor would pay premium prices when a much cheaper alternative — the purchase of Marriott Vacation Club points — gives them the same access.

*Id.* at 3. Plaintiffs further point out that the Marriott Defendants "have reaped huge profits by opening up the Ritz-Aspen and other RCDC properties to market and sell MVC points," which is "evidenced by the Marriott Vacations Worldwide Corporation's . . . share price, which has soared from $45 to over $135 *since the affiliation*." *Id.* at 3-4 (emphasis added).

I.  Attached as **Exhibit I** is a true and correct copy of Plaintiffs' Status Report And Request For Entry Of Revised Scheduling Order (ECF # 211), filed on March 30, 2018, in which Plaintiffs state that "two central affiliation agreements" that were allegedly withheld "are central to the issues in the case, as they are the very agreements that effectuated the *affiliation* of the Ritz-Carlton Private Clubs with the points-based Marriott Vacation Destination Club that *lies at the core of this case*." ECF # 211 at ¶ 8 (emphasis added).

J.  Attached as **Exhibit J** is a true and correct copy of Plaintiffs' Reply In Support Of Motion To Compel In Camera Review Of An Unredacted Version Of Marriott's Strategic Plan Memorandum And Request For Expedited Relief (ECF # 261), filed on May 18, 2018, in which Plaintiffs state that "[t]his lawsuit is about the Marriott Defendants' fiduciary

6

duties in relation to its control over the Ritz-Aspen's *affiliation* with the Marriott Vacation Club." ECF # 261 at 7. The two-page "Introduction" states that "the CGC Strategic Plan and any legal analysis of it concern *the very breach of fiduciary duty that is at issue in this case: the affiliation* of Ritz-Carlton Destination Clubs with the Marriott Vacation Club." ECF # 261 at 1, 2 (emphasis added). Plaintiffs further explain that "[t]his Court held that Plaintiffs' constructive fraud claim centers on the Marriott Defendants' promise of a vote on the *affiliation*, and their subsequent imposition of the *affiliation* without any vote ever taking place. This is exactly what the CGC Strategic Plan discusses: strategy regarding the *affiliation*." *Id.* at 2 (emphasis added). This submission also describes "Marriott's larger scheme": "the Marriott Defendants promised that the *affiliation* would not occur absent a vote, but then imposed the *affiliation* without holding any vote." *Id.* at 10 (emphasis added).

K. Attached as **Exhibit K** is a true and correct copy of Plaintiffs' Reply To Aspen Highlands Condominium Association's Response In Opposition To Plaintiffs' Motion For Sanctions And A Default Judgment Against Certain Marriott Defendants (ECF # 274), filed on June 1, 2018, in which Plaintiffs state in the second sentence of the brief that the 2013 Affiliation Agreement "reveals that the Association had the power to prevent the Ritz-Aspen from *affiliating* with the Marriott Vacation Club ("MVC") – *an event that caused values to plummet.*" ECF # 274, at 1 (emphasis added). Further, this submissions states that "Plaintiffs' breach of fiduciary duty claim is premised on the Association's failure to prevent the *affiliation*" and that "[w]hile the promised vote is an important component of the case, Plaintiffs allege more broadly that the Association breached its

7

fiduciary duty by failing to prevent *the MVC affiliation that caused the decimation of value.*" *Id.* at 4.

3. Attached as **Exhibit L** is a true and correct copy of the Court's Order on the Defendant Aspen Highlands Condominium Association's and Marriott Defendants' respective Motion to Dismiss Fifth Amended Complaint (ECF # 210), issued on March 29, 2018. In the Order, the Court described Plaintiffs' claims in this case as involving the "affiliation with Marriott Vacation Club Destinations." ECF # 210 at 5 (quoting Fifth Am. Compl. ¶ 48 (ECF # 119 at 75)). The Court also noted that Plaintiffs counsels' cease and desist letter "demanded that the Marriott defendants refrain from pursuing the affiliation with MVC" and discussing actions taken by the RC Aspen Association and other RC Clubs "against the affiliation with MVC." *Id.* at 6-7.

4. A true and correct print-out of an e-mail message, dated November 20, 2014, from L&C to RC Club Aspen Owners is attached as **Exhibit M**.

5. A true and correct copy of an April 17, 2014 newsletter from Defendant Aspen Highlands Condominium Association, Inc. to RC Club Aspen Owners is attached as **Exhibit N**.

6. A true and correct copy of the expert report of Jonathan Simon, dated October 26, 2018, is attached as **Exhibit O**.

8. A true and correct copy of the amended expert report of R. Maurice Robinson, dated December 19, 2018, is attached as **Exhibit P**.

9. A true and correct copy of the expert report of Chekitan Dev, dated October 26, 2018, is attached as **Exhibit Q**.

10. A true and correct copy of the expert rebuttal report of Alan Tantleff, dated January 4, 2019, is attached as **Exhibit R.**

11. A true and correct copy of the 2013 Affiliation Agreement is attached as **Exhibit S.**

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 29th day of July, 2019, in Florham Park, New Jersey.

_____
IAN S. MARX

9