# EXHIBIT K

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-01301-PAB-GPG

**RCHFU, LLC,** *et al.*

Plaintiffs,

v.

**MARRIOTT VACATIONS WORLDWIDE CORPORATION,** *et al.*

Defendants.

_____

**PLAINTIFFS' REPLY TO ASPEN HIGHLANDS CONDOMINIUM ASSOCIATION'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS AND A DEFAULT JUDGMENT AGAINST CERTAIN MARRIOTT DEFENDANTS**
_____

## I. INTRODUCTION

The Marriott Defendants' withholding of the 2013 Affiliation Agreement for over two years constitutes sufficient (and additional[1]) grounds for Plaintiffs to seek limited additional discovery from the Association, at Marriott's expense. The Agreement reveals that the Association had the power to prevent the Ritz-Aspen from affiliating with the Marriott Vacation Club ("MVC") – an event that caused values to plummet. Before producing the 2013 Affiliation Agreement in March 2018, Marriott had led Plaintiffs *and the Court* to believe that Cobalt had *sole* power to affiliate. But this new document tells the rest of the story: that Cobalt granted broad authority to Lion & Crown to affiliate with programs like the MVC, and Lion & Crown then gave the

---

[1] Plaintiffs agree that they have attempted to resolve a discovery dispute with the Association about continuing the deposition of Board President Randy Mercer that arose before the present motion.

1

Case No. 1:16-cv-01301-PAB-GPG Document 441-12 filed 07/29/19 USDC Colorado pg 3 of 11
Case 1:16-cv-01301-PAB-GPG Document 274 Filed 06/01/18 USDC Colorado Page 2 of 11 of 12

Association the right to join or not join the MVC affiliation. The Association admits that its President – Randy Mercer -- signed an "Acknowledgement of and Joinder to" the 2013 Affiliation Agreement without even seeing it, evidencing the board's breaches of their fiduciary duties of loyalty and reasonable care. But Plaintiffs were not able to examine Association witnesses about this document. The assertion that Mr. Mercer and other board members did not see the Agreement they joined and thus need not be deposed is like saying they did not bother to find and pull the fire alarm in a fire and cannot be asked about that failure.

The Association also argues that Plaintiffs' counsel should have inquired about an unproduced agreement referenced in the "Joinder" (the word defendants like to ignore). This assertion has at least three flaws: (1) Marriott certified it had produced all records concerning affiliation, (2) the Association's counsel did not know about the Agreement because they have relied throughout this case on a Memorandum of Understanding ("MOU")[2]– which they have explained to the members in a litigation report was the controlling instrument (*See* supporting Declaration of Matthew C. Ferguson ("Ferguson Decl.") at ¶ 6, Ex. 3), and (3) Wendell Porterfield, the lawyer that the HOA retained to give an extensive legal opinion *during the pendency this case* about the correctness of the Association's actions, reviewed 56 documents – none of which was the 2013 Affiliation Agreement. *Id.*. The Association and its two law firms were totally unaware of the agreement until Plaintiffs' counsel found it for them in March of this year.

Despite the Association's substantive breaches, Plaintiffs understand that it should not have to endure excessive burden due to Marriott's concealment. The Association admits that it "did not

---

[2] On May 18, 2018, MVW's Vice President Stephanie Sobeck, who was re-deposed because Marriott failed to produce this Agreement, testified that the MOU was non-binding. See Ferguson Decl. at ¶ 5, Ex. 1 (Sobeck depo. at 107:7-22).

2

see or review the 2013 Affiliation Agreement" (Dkt. No. 262 at p. 11). Plaintiffs are conferring with the Association and offered to forego deposing Oliver, Harris and Schneider and limit Mercer to two hours if the Association agrees to stipulate for trial and summary judgment that it did not receive or review the 2013 Affiliation Agreement.[3] (Ferguson Decl. at ¶ 7). Marriott will also need to so stipulate, and if it refuses, then one of the sanctions should be to establish the fact it never gave the Associations the agreement they joined.

Finally, the Association's argument that further discovery is irrelevant depends on its overly restrictive view of Plaintiffs' breach of fiduciary duty claim. This claim includes the breach of the Association's duty of care and is broader than the denial of the promised vote.

## II. ARGUMENT

### A. The 2013 Affiliation Agreement Directly Pertains to Plaintiffs' Breach of Fiduciary Duty Cause of Action

A court may find good cause to allow a party to re-depose a witness where documents that were produced subsequent to the first deposition reveal relevant information that was previously withheld. *See Sprint Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*, 2015 WL 11121851 (D. Kan. Aug. 4, 2015); *Heller Healthcare Finance, Inc. v. Boyes*, 2012 WL 1558337, *1 (N.D. Tex. July 15, 2002) (finding good cause for a second deposition where documents relevant to the case were withheld and not produced until after the first deposition of the witness). For instance, in *Sprint*, the plaintiff deposed a witness before the defendants produced relevant e-mails that had been improperly withheld as privileged. *Sprint*, 2015 WL 11121851 at *1. The court granted the

---

[3] To answer the question the Association posed in footnote 3 of its Opposition, Plaintiffs' position is that the Marriott Defendants should cover the expenses, including attorneys' fees that the Association *and* Plaintiffs incur because of Marriott's discovery abuse.

3

plaintiff's motion to compel a second deposition of the witness, finding that the e-mails "suppl[ied] new fodder for questions relevant to [the defendant's equitable defenses." *Id*. (noting that the plaintiff "should not be precluded from the ability to ask such questions by [the defendant's] delayed production.").

Here, Plaintiffs seek to re-depose Mr. Mercer for only two hours because the previously concealed 2013 Affiliation Agreement is central to the case. The 2013 Affiliation Agreement reveals that the MVC affiliation could not go through without the Association's agreement to join. When they deposed Association board members, Plaintiffs were unaware of the 2013 Affiliation Agreement and the Association's veto power. Plaintiffs' breach of fiduciary duty claim is premised on the Association's failure to prevent the affiliation. *See* Order on Motion to Dismiss, Dkt. No. 210 at p. 22. Thus, the withheld agreement is directly relevant to Plaintiffs' primary claims, as is the utter failure of the Association directors to read an agreement that impacted approximately 700 owners and what should be hundreds of millions of dollars of real estate – now cut to 10%-20% of that value.

Contrary to the Association's overly narrow view, Plaintiffs' claims do not simply "concern whether [it] breached its fiduciary duties or committed constructive fraud by facilitating a survey and not a vote on the question of affiliating with the MVC." *See* Opp. at p. 11. While the promised vote is an important component of the case, Plaintiffs allege more broadly that the Association breached its fiduciary duty by failing to prevent the MVC affiliation that caused the decimation of value. *See* Dkt. No. 210 at p. 26 (the Court noting that the Association failed to address Plaintiffs' allegation that it was the formalization of the affiliation that caused them harm). Thus, the Association misses the point by stating that "[t]he 2013 Affiliation Agreement does not

4

Case No. 1:16-cv-01301-PAB-GPG Document 274 Filed 06/01/18 USDC Colorado pg 6
Case 1:16-cv-01301-PAB-GPG Document 441-12 filed 07/29/19 USDC Colorado Page 5 of 11
of 12

once mention a survey or a vote," which is irrelevant to the fact that this document was the one that effectuated the MVC affiliation. *See* Opp. at p. 11.[4] Plaintiffs should be able to question Mr. Mercer (and all the board members if the Association rejects the compromise discussed below) about signing the acknowledgement and joinder without even reading the agreement that affiliated Plaintiffs' private residence club with MVW's points-based vacation club; *see also* Dkt. No. 210 at p. 26 ("As plaintiffs point out, the Association ignores plaintiffs' allegation that it agreed to and worked with the Marriott defendants to cause the affiliation.")

Again, Plaintiffs are proposing a compromise to the Association's counsel regarding testimony from the board members. Specifically, Plaintiffs are willing to forgo deposing of Messrs. Harris, Schneider, and Oliver about the Agreement if the Association agrees to stipulate that each of these former board members (1) never saw or read the 2013 Affiliation Agreement, (2) never asked to see the agreement, and (3) were never provided with the agreement before March 2018.[5]

Plaintiffs further offered to limit Mr. Mercer's re-deposition to two hours. Mr. Mercer[6] will have more knowledge about the 2013 Affiliation Agreement, because he was the one who actually signed the Acknowledgment and Joinder. *See* Ex. 2 to Livingston Decl., Dkt. No. 262-3 at p. 5. *See George K. Baum Advisors LLC v. Sprint Spectrum, L.P.*, 2013 WL 3166335, *2-3 (D. Kan. June 20, 2013) (finding good cause to depose a witness a second time, and beyond the seven-hour

---

[4] Indeed, the Acknowledgment and Joinder discusses the survey.

[5] Plaintiffs have no intention of asking the Association board members to interpret "the terms and conditions" of the 2013 Affiliation Agreement, as the Association suggests. Opp. at p. 10.

[6] Much is made by the Association that these are "volunteers". Messrs. Mercer and Oliver were placed on this board by MVW in 2012 as the clubs were "re-engineered." Mr. Mercer proudly boasts his current 6 years stint as the president on his on-line presence and served on the board before that. He also wrote Oliver only a few weeks before blindly signing the joinder that "we are the crown jewel in the [RCDC Association] platform from cooperation perspective …" (Ferguson Decl. at ¶ 12, Ex. 4). In other words, this Association's board was in MVW's pocket.

5

limit because key documents were not produced prior to the witness' first deposition, and the witness was a "key player"). Plaintiffs thus believe that good cause exists to depose Mr. Mercer for an additional two hours and are amenable to conduct the deposition by videoconference to lessen the travel burden on all parties.

### B. Plaintiffs Diligently Conducted Discovery and Should Not Be Penalized for the Marriott Defendants' Wrongful Concealment of the 2013 Affiliation Agreement

The Association's attempt to blame Plaintiffs' counsel ignores that its own counsel in 2014 (a labor lawyer and friend of Mr. Mercer) never saw it, and that its litigation counsel and Colorado real estate lawyer never saw or considered it during this case. (Ferguson Decl. at ¶ 6, Ex. 3). Plaintiffs had every reason to believe that the Marriott Defendants and the Association produced all the relevant affiliation agreements. As discussed in the opening brief, in the fall of 2016, the Marriott Defendants agreed to produce all documents concerning the affiliation. Dkt. No. 223 at 5. Plaintiffs did not commence depositions until a year later, which was *after* the Marriott Defendants told Plaintiffs that their document production was "substantially complete." Ex. D to Reiser Decl., Dkt. No. 223-5 at p. 2. By then, the Association had also completed its document production in response to Plaintiffs' first requests. Since, at that time, the fact discovery cut-off was December 15, 2017 (Dkt. No. 136 at p. 4), Plaintiffs had to start taking depositions.

Plaintiffs were further misled into believing that they had all the relevant affiliation agreements because both the Association and the Marriott Defendants produced other affiliation agreements and a memorandum of understanding that they relied upon in their motions to dismiss. The Association itself stated that it was an April 2014 "memorandum of understanding" that formalized the MVC affiliation. Association's Motion to Dismiss, Dkt. No. 129 at p. 2. This turns out to be flat wrong. Ferguson Decl. ¶ 5 and Ex. 1(Sobeck depo. at 107:7-22). Thus, even the

6

Association was unaware of the 2013 Affiliation Agreement and its relevance until Plaintiffs demanded its production from Marriott in March 2018. *See* Opp. at pp. 3, 9 ("the AHCA did not possess the document"), 10 ("the AHCA board did not see or review the 2013 Affiliation Agreement"). And as Plaintiffs explained in their opening brief, the Marriott Defendants' motion to dismiss this and two related cases misled Plaintiffs and the respective courts to believe that they had produced all affiliation agreements. In fact, the Marriott Defendants' main argument—that the Association could not have prevented the affiliation—relied on the nonexistence of the 2013 Affiliation Agreement. *See* Dkt. No. 223 at pp. 1-4. The Marriott Defendants referenced a different affiliation agreement in their motion to dismiss and claimed that agreement gave Cobalt "sole discretion" over any affiliation. Dkt. No. 131 at pp. 12-13. Thus, Plaintiffs reasonably believed that defendants had produced all relevant affiliation agreements.

In this context, the Association's claim that Plaintiffs lacked diligence by not requesting the 2013 Affiliation Agreement or asking questions about the Acknowledgment and Joinder to uncover the discovery fraud sooner is baseless. First, the Association's statement that Plaintiffs did not request this document from any defendant before depositions started (Opp. at pp. 8-9) is incorrect. Plaintiffs requested all affiliation agreements relevant to this case in 2016, and the Marriott Defendants stated that they would produce them. Next, Plaintiffs' willingness to commence depositions in April 2017 is irrelevant because they did not actually begin taking any depositions until the fall of 2017, which was after the Marriott Defendants' said their document production was "substantially complete." *See* Opp. at p. 9. In addition, given the failure to produce the 2013 Affiliation Agreement and the arguments that Cobalt had sole discretion, it is inappropriate to blame Plaintiffs for failing to ferret out the discovery fraud before March 2018.

7

Lastly, the Association's authority that that a court "may deny leave to conduct a second deposition … if relevant documents are produced subsequent to the deposition if the party taking the deposition either failed to request those documents in a timely fashion or chose to conduct the deposition prior to the completion of document discovery" (Opp. at p. 8) does not apply here. Plaintiffs requested all affiliation agreements over a year before they commenced depositions, and Plaintiffs did not start depositions until after document discovery was, to their knowledge, substantially complete. Plaintiffs have been diligent throughout and should not be penalized for the Marriotts' discovery abuse.

### C. Plaintiffs' Breach of Fiduciary Duty Claim Includes the Failure to Exercise Reasonable Care and Skill

The 2013 Affiliation Agreement – and whether the Association board members reviewed it before Mr. Mercer signed the joinder binding Plaintiffs to it – is directly relevant to Plaintiffs' breach of fiduciary duty claims. The Association does not contest that it owes fiduciary duties to Plaintiffs. *See generally* Dkt. No. 129; Dkt. No. 210 at p. 13. A fiduciary's obligations inherently include the duty to exercise reasonable care and skill. *See, e.g., Destefano v. Grabrian*, 763 P.2d 275, 284 (Colo. 1988) ("A fiduciary's obligations to the beneficiary include, among other things . . . a duty to exercise reasonable care and skill . . ."); *Winkler v. Rocky Mountain Conference of United Methodist Church*, 923 P.2d 152, 157 (Colo. App. 1995); *Bailey v. Allstate Ins. Co*., 844 P.2d 1336, 1339 (Colo. App. 1992); *John Doe (1) v. Archdiocese of Denver*, 413 F.Supp.2d 1187, 1191-92 (D. Colo. 2006) ("Colorado courts look to the Restatement to determine the extent of fiduciary obligations, which include a duty to exercise reasonable care and skill.").[7]

---

[7] The Association's attempt to distinguish *John Doe (1)* (by noting that the claims there were against an Archdiocese for negligence and fraud) makes no sense. Opp. at p. 12. The facts of *John*

8

Thus, Plaintiffs' breach of fiduciary duty claims implicate the duty to exercise reasonable care. The Sixth Amended Complaint ("SAC"), alleges that the Association (along with RC Management and Cobalt) owe fiduciary duties to Plaintiffs, and thus "had a duty to act with the utmost good faith and loyalty in the best interests of Plaintiffs." SAC, Dkt. No. 250 at ¶ 88. The SAC then expressly alleges that these Defendants breached their fiduciary duties by (among other acts) **"failing to act as a reasonably prudent fiduciary would have acted under the same or similar circumstances."** *Id*. at ¶ 89 (emphasis added). This gave the Association adequate notice of a claim relating to its breach of the duty of care. *See Troudt v. Oracle Corp.*, 2017 WL 663060 (D. Colo. Feb. 16, 2017) ("under Rule 8(a)(2), '[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests'"). Thus, the Association is wrong that the breach of duty of care is not a live issue in the case. The Association's admissions that it did not receive or read the 2013 Affiliation Agreement strongly supports the breach of the duty of care alleged in the SAC, and there is good cause for further limited deposition questions on this topic.[8]

### III. CONCLUSION

There is good cause for Plaintiffs to re-depose the Association Board Members. Alternatively, if the Association and Marriott stipulate that they never asked for, received, or

---

*Doe (1)* have no effect on its unremarkable proposition that a fiduciary's obligations include a duty to exercise reasonable care and skill. *See John Doe (1)*, 413 F.Supp.2d at 1192-93.

[8] If, in ruling on this motion, the Court finds that the SAC does not adequately allege a breach of the duty of care claim, then Plaintiffs will move to amend to add this claim. See, *Stanerson v. Colorado Boulevard Motors, Inc*., 2006 WL 3190520, *2 (D. Colo. Nov. 2, 2006)( "The fact that a party first learns, through discovery or disclosures, information necessary for the assertion of a claim after the deadline to amend established in the scheduling order has expired constitutes good cause to extend that deadline."

9

reviewed the 2013 Affiliation Agreement, the Court should order a two-hour deposition of Mr. Mercer only, at Marriott's expense. Plaintiffs of course continue request all the relief sought against the Marriott Defendants in this motion.

Dated: June1, 2018

| | |
|---|---|
| REISER LAW, P.C. | THE MATTHEW C. FERGUSON LAW FIRM, P.C. |
| ___/s/ Michael J. Reiser_____<br>Michael J. Reiser, # 16161<br>1475 N. Broadway, Suite 300<br>Walnut Creek, CA 94596<br>Telephone: (925) 256-0400<br>E-mail: michael@reiserlaw.com | _____/s/ Matthew C. Ferguson_____<br>Matthew C. Ferguson, #25687<br>119 South Spring, Suite 201<br>Aspen, Colorado 81611<br>Telephone: (970) 925-6288<br>E-mail: matt@matthewfergusonlaw.com |
| GIBB LAW GROUP, LLP | THE MEADE LAW FIRM, P.C. |
| ___/s/ Michael Schrag_____<br>Michael Schrag (CA State Bar # 185832)<br>Linda Lam (CA State Bar# 301461)<br>505 14th Street, Suite 1110<br>Oakland, CA 94612<br>Telephone: (510) 350-9718<br>E-mail: mls@classlawgroup.com<br>E-mail: lpl@classlawgroup.com | ___/s/ Tyler Meade_____<br>Tyler Meade (CA State Bar # 160838)<br>1816 Fifth Street<br>Berkeley, CA 94710<br>Telephone: 510-843-3670<br>E-mail: tyler@meadefirm.com<br>*Attorneys for Plaintiffs* |

# CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 1st day of June, 2018, a true and accurate copy of the foregoing **PLAINTIFFS' REPLY TO ASPEN HIGHLANDS CONDOMINIUM ASSOCIATION'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS AND A DEFAULT JUDGMENT AGAINST CERTAIN MARRIOTT DEFENDANTS** was served via CM/ECF filing system upon following:

    Daniel F. Shea, Esq.
      *dan.shea@hoganlovells.com*
    Jessica Black Livingston, Esq.
      *jessica.livingston@hoganlovells.com*
    Hogan Lovells US LLP
    1200 Seventeenth Street, Suite 1500
    Denver, Colorado 80202

    Naomi G. Beer, Esq.
      *BeerN@gtlaw.com*
    Greenberg Traurig, LLP
    1200 17th Street, Suite 2400
    Denver, Colorado 80202

    Ian S. Marx, Esq.
      *MarxI@gtlaw.com*
    Philip R. Sellinger, Esq.
      *SellingerP@gtlaw.com*
    Greenberg Traurig, LLP
    500 Campus Drive, Suite 400
    Florham Park, New Jersey 07932

                                           */s/ Marianne Fogle*
                                               Marianne Fogle