IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 16-01301 PAB

RCHFU, LLC, et al.

    Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al.

    Defendants.

---

### MARRIOTT DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE REFERENCES TO DISCOVERY DISPUTES

Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC, The Cobalt Travel Company, LLC, and The Lion & Crown Travel Co., LLC ("L&C") (collectively, "Marriott Defendants") hereby move the Court *in limine* for an order precluding Plaintiffs and their counsel from referring to or introducing any evidence at trial regarding discovery disputes between the parties during the course of this litigation, in particular (but not limited to) disputes concerning the failure of the Marriott Defendants and/or their counsel to have initially produced in discovery (1) an Affiliation Agreement between non-party Marriott Resorts, Travel Company, Inc. and L&C, dated November 14, 2013 (the "2013 Affiliation Agreement"); and (2) certain documents relating to surveys conducted by APCO Worldwide, Inc. (the "APCO Documents"), which disputes were resolved by the Court's December 31, 2018 Decision and Order (ECF #330).

1

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(a), the Marriott Defendants' counsel conferred with Plaintiffs' counsel before making this motion and made a reasonable and good faith effort to resolve this dispute.  Specifically, on August 15, 2019, the Marriott Defendants' counsel had a telephone conference with Plaintiffs' counsel to discuss the factual and legal bases for this motion.  On August 16, 2019, Plaintiffs' counsel communicated their refusal to agree to the relief sought by the Marriott Defendants.

## FACTUAL BACKGROUND

**Plaintiffs' Claims**

1. Plaintiffs are owners of 1/12 fractional interests in luxury condominium units at The Ritz-Carlton Club, Aspen Highlands, Colorado ("RC Club Aspen").  Each 1/12 fractional interest entitles its owner to four use-weeks per year.  These use-weeks can be spent either at RC Club Aspen in the specific unit for which the owner contracted or at any other resort with which RC Club Aspen is currently affiliated, subject to availability and other restrictions.  There are 205 fractional interests out of a total of 876 available fractional interests at issue in this case.

2. On April 24, 2014, Defendant Aspen Highlands Condominium Association (the "Association") executed an Acknowledgement and Joinder to the 2013 Affiliation Agreement, which enabled RC Club Aspen members to voluntarily exchange their use-weeks at RC Club Aspen for exchange points with the Marriott Vacation Club Destinations Exchange Program (the "MVCD Program" or "MVCD").  That voluntary exchange program with MVCD (the "MVC Affiliation") was announced to the RC Club Aspen members in an April 2014 newsletter from the Association.  The MVC Affiliation allowed RC Club Aspen members to elect to enroll in the

2

MVCD Program, deposit one or more of their RC Club Aspen use-weeks in the MVCD Program, and receive, in return, exchange points that could be used to reserve accommodations at various Marriott Vacation Club ("MVC") resorts and for other vacation experiences (such as cruises and safaris).  The MVC Affiliation also enabled MVCD Program members with sufficient amounts of exchange points to access any RC Club Aspen use-weeks that RC Club Aspen members have elected to deposit in the MVCD Program.  As announced in a November 20, 2014 letter from L&C to the RC Club Aspen members, the MVC Affiliation became operational on December 5, 2014, meaning that, as of that date, RC Club Aspen members could exchange their 2015 weeks for 2015 MVC Points within the MVCD Program, and MVCD Program members could begin using their 2015 MVC Points to reserve 2015 weeks deposited by RC Club Aspen members.

3. Plaintiffs' claims concern the damages that they claim to have suffered due to: (a) the alleged failure to allow RC Club Aspen members to vote on whether the MVC Affiliation should take place; and (b) the MVC Affiliation itself.  Plaintiffs seek damages for the alleged diminution in value of their fractional interests claimed to have been caused by the MVC Affiliation, and they also seek disgorgement of the profits that the Marriott Defendants allegedly received as a result of the MVC Affiliation.

**Disputes concerning the delayed production of the 2013 Affiliation Agreement and the APCO Documents**

4. Two major discovery disputes occurred in this litigation.  The first involved the 2013 Affiliation Agreement.  The Marriott Defendants intended their initial November 10, 2016

document production to include all documents that had been compiled on several topics,[1] including the 2013 Affiliation Agreement.  In reviewing the produced documents, however, although Plaintiffs' counsel noticed references to the 2013 Affiliation Agreement in certain documents, they did not find the agreement itself in the production.  The Marriott Defendants' counsel looked into the issue and determined that their firm had, in fact, been in possession of the 2013 Affiliation Agreement before the initial production was made but that, unintentionally and inadvertently, the agreement had not been included in the production. The 2013 Affiliation Agreement was produced to Plaintiffs on March 13, 2018.

5. The second dispute involved the APCO Documents.  APCO is a public relations/crisis management firm that was hired by the Marriott Defendants' law department in 2013 to assist in connection with litigation relating to The Ritz-Carlton Club in Kapalua, Hawaii.  APCO's engagement was later expanded to include conducting surveys of members of The Ritz-Carlton Club and of focus groups of such members at several Clubs (including the RC Club Aspen) in August 2013 and early 2014.  APCO prepared two reports concerning these exercises: an August 2013 Survey Report and a January 2014 Focus Group Report (together, the "APCO Reports").

6. In June 2017, the Marriott Defendants made a document production pursuant to the parties' agreed-upon protocol for the search and production of electronically stored information ("ESI").  This production included an extensive amount of detailed information

---

[1] These topics included advertising and marketing materials; budget information; governing documents relating to the RC Club Aspen and The Ritz-Carlton Destination Club ("RCDC") exchange program; purchase contracts and related documents concerning Plaintiffs; internal notes and information relating to communications with Plaintiffs; documents relating to a survey that was conducted concerning the proposed MVC Affiliation; and usage history summaries relating to Plaintiffs.

contained in documents concerning the August 2013 APCO survey, including spreadsheets containing all the surveyed members' responses.  The production did not, however, include the APCO Reports themselves or e-mails concerning the reports.  The APCO-related documents that the Marriott Defendants had produced were used by Plaintiffs in deposing several of Marriott Defendants' witnesses.

7. After receiving the APCO Reports in response to a subpoena *duces tecum* served on APCO, the Marriott Defendants' counsel took steps to determine why the APCO Reports (and the accompanying e-mails) had not been included in the Marriott Defendants' multiple document productions.  The Marriott Defendants' counsel discovered that these documents had not been produced in June 2017 because the contract lawyers who had been engaged to perform an initial review of potentially responsive electronic documents had erroneously identified the documents as "non-responsive" to Plaintiffs' requests.  Because of this designation, the APCO Documents were not reviewed by the Marriott Defendants' counsel in a second level review and, thus, were not produced to Plaintiffs.

8. After learning of this, the Marriott Defendants' counsel reviewed the universe of potentially responsive documents concerning the APCO Reports that had not been produced in discovery.  As a result of this process, the Marriott Defendants' counsel identified the subject APCO Documents, determined that they were, in fact, responsive to Plaintiffs' requests and should have been produced, and then promptly produced them to Plaintiffs on June 29, 2018.

**Plaintiffs' Sanctions Motions and Magistrate Judge Gallagher's Rulings**

9. On April 27, 2018 and July 3, 2018, Plaintiffs moved for various discovery sanctions, including a default judgment against the Marriott Defendants, arising from the belated

production of the 2013 Affiliation Agreement and the APCO Documents, respectively. Both motions were assigned to Magistrate Judge Gallagher and consolidated. The motions were extensively briefed, and, on November 20, 2018, Magistrate Judge Gallagher heard lengthy oral argument on the motions.

10. On December 31, 2018, Magistrate Judge Gallagher issued a Decision and Order (the "December 31 Order," ECF #330, attached as Exhibit E to the August 19, 2019 Omnibus Declaration of Ian S. Marx ("Marx Decl.")) granting Plaintiffs' motions in part and denying them in part. With respect to the 2013 Affiliation Agreement, Magistrate Judge Gallagher held that, although the belated production was not substantially justified, it was an unintentional "mistake" and did not show willfulness or bad faith on the part of the Marriott Defendants or their counsel. *Id*. at 18-19. While crediting the Marriott Defendants for trying "to make right their mistake by allowing additional depositions and taking other steps to fix the problem their non-provision caused" (*id*. at 28), the Court held that Plaintiffs had been at least somewhat prejudiced by the belated production of the document and that, therefore, some sanction was warranted. *Id.* at 19, 28.[2] With respect to the APCO Documents, Magistrate Judge Gallagher held that the belated production was substantially justified given the ESI protocol to which the parties had agreed and did not show willfulness or bad faith on the part of the Marriott Defendants or their counsel. *Id*. at 23-24.

---

[2] As a remedy, Magistrate Judge Gallagher ordered that Plaintiffs could, upon application, (a) recover only those attorneys' fees and costs specifically associated with the non-provision of the 2013 Affiliation Agreement "to otherwise fix the problem(s)" (which specifically ***could not include*** fees and costs associated with the litigation of the sanctions motions); (b) further amend the Sixth Amended Complaint to assert additional claims based on the 2013 Affiliation Agreement; and (c) take additional depositions regarding the document. ECF #330 (Marx. Decl. Ex. E) at 29-30.

6

11. In their briefs and at oral argument, Plaintiffs had maintained that "[t]he two sanctions motions together show Marriott's disturbing and pervasive pattern of concealment, obfuscation, and dishonesty in both document production and deposition testimony." ECF #282, attached as Exhibit 2 to the Supplemental Restricted Omnibus Declaration of Ian S. Marx ("Restricted Marx Decl.") at 3. Plaintiffs further argued that the 2013 Affiliation Agreement was wrongfully withheld from the Association's Board (the "Board"), the Court, and courts in two related actions against the Marriott Defendants. ECF #330 (Marx Decl. Ex. E) at 24. With respect to the APCO Documents, Plaintiffs argued that the Marriott Defendants had hidden the underlying survey results from the Board. *Id.*

12. Magistrate Judge Gallagher expressly rejected each of these arguments "for a variety of reasons." *Id.* at 25. With respect to the 2013 Affiliation Agreement, the Court concluded that "[t]he failure to provide [the document] was a mistake, perhaps a costly and time-consuming mistake, but a mistake nonetheless." *Id.* at 26. With respect to the APCO Documents, the Court concluded that the circumstances of their production did "not smack of deception but of error - when looked at individually or collectively. A mistake was made, here by a combination of [the contract attorneys] and the lack of a second level review for non-responsive documents." *Id.* The Court further held that "the juxtaposition of the two [belated productions] does not necessarily conflate to some sort of bad faith nor willful misconduct." *Id.* at 27. Indeed, Magistrate Judge Gallagher further found "no bad faith nor any willful misconduct," and "specifically d[id] not find this situation to merit default judgment." *Id.* at 29.

13. As part of the December 31 Order, Magistrate Judge Gallagher allowed Plaintiffs to move for certain additional relief associated with the belated production of the 2013

Affiliation Agreement, including an award of attorneys' fees and costs "related only to the Rule 26 violation" and "any other remedies . . . meant to correct the prejudice suffered by the non-provision of the Affiliation Agreement . . . ." *Id*. at 29-30.  On January 14, 2019, Plaintiffs filed, *inter alia*, motions (a) seeking $210,761.48 in attorneys' fees and costs (ECF #339, Marx Decl. Ex. G, at 3); and (b) seeking leave to take four additional depositions and for a jury instruction allowing the jury to "consider" the Court's holding "that the Marriott Defendants violated the rules of discovery by not giving Plaintiffs a copy of the 2013 Affiliation Agreement when they should have" as a "failure when evaluating this evidence."  ECF #338, Marx Decl. Ex. F, at 6.

14.     These motions were almost entirely unsuccessful.  First, by Order dated March 18, 2019, Magistrate Judge Gallagher denied Plaintiffs' motion for attorneys' fees and costs, awarding them nothing at this stage of the litigation.  ECF #368, Marx Decl. Ex. H.  Then, by Order dated April 7, 2019, Magistrate Judge Gallagher denied Plaintiffs' requested jury instruction, clarifying that the Court's "intent" in permitting them to seek additional remedies was "to put the parties back on as level a playing field as possible, not to afford one party a possible leg up at trial."  ECF #387, Marx Decl. Ex. I, at 10.  Reminding Plaintiffs that the discovery violation giving rise to the December 31 Order "was not [undertaken] in bad faith nor was it willful misconduct," the Court held that "this is not a case where the Court, in its considered judgment, believes that a jury instruction is warranted to rectify this situation." *Id*.  The Court concluded that "[n]either this specific instance of late discovery nor the course of discovery over the life of this case convince the Court that a jury instruction would be fair or just

in this circumstance," as "the mere negligent failure [of a party] does not warrant an adverse influence instruction." *Id.*[3]

15. Notwithstanding Magistrate Judge Gallagher's clear findings and his disposition of each of these motions, the Marriott Defendants are concerned that Plaintiffs and their counsel will refer at trial to the circumstances under which the 2013 Affiliation Agreement and APCO Documents were produced and will attempt to impugn the litigation conduct of the Marriott Defendants and their counsel. The Marriott Defendants further fear that Plaintiffs and their counsel will raise the same arguments at trial that they unsuccessfully raised in their sanctions and follow-up motions, namely, that the litigation conduct of the Marriott Defendants and their counsel is part of a pattern of deliberate concealment of information from Plaintiffs, the Board and other fractional interest owners (including those at other RCDC Resorts).

## ARGUMENT

16. "Irrelevant evidence is inadmissible." Fed. R. Evid. 402. Evidence is relevant only if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence may be excluded, however, "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. In performing the Rule 403 balancing test, "[t]he district court has considerable discretion" (*United States v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001)), and should place

---

[3] The Court also allowed Plaintiffs to take two of their four proposed additional depositions but limited each deposition to two hours. (ECF #387 at 8, 10.)

"particular scrutiny … on the proponent's showing of probative value." *Toy v. American Family Mut. Ins. Co.*, 2014 WL 485922, at *2 (D. Colo. Feb. 6, 2014) (Brimmer, *J.*).

17. The Tenth Circuit and several courts in this District have excluded, under Rule 403, evidence of a party's alleged misconduct during the litigation. *See, e.g., Timberlake Constr. Co. v. U.S. Fid. & Guar. Co.*, 71 F.3d 335, 340-41 (10th Cir. 1995) (reversing jury verdict in plaintiff's favor on bad faith claim against insurer where jury was allowed to consider evidence of insurer's conduct during litigation, including letters written about plaintiff, prosecution of unsuccessful counterclaim and unsuccessful motion to join necessary party); *Ali v. Jerusalem Rest., Inc.*, 2015 WL 5440510, at *1 (D. Colo. June 9, 2015) (granting motion *in limine* to exclude evidence that witness was threatened with termination if she did not sign affidavit submitted in support of defendant's summary judgment motion). Numerous federal courts have also excluded, on Rule 403 grounds, evidence regarding discovery disputes and claims of improper behavior during the discovery process. *See, e.g., Bruhn Farms Joint Venture v. Fireman's Fund Ins. Co.*, 2017 WL 752282, at *4 (N.D. Iowa Feb. 27, 2017); *W.L. Gore & Assocs. v. C.R. Bard, Inc.*, 2017 WL 525668, at *1 (D. Del. Feb. 8. 2017); *Van v. Language Line Servs., Inc.*, 2016 WL 3566980, at *4 (N.D. Cal. June 30, 2016); *In re: General Motors LLC Ignition Switch Litig.*, 2015 WL 8130449, at *4-*5 (S.D.N.Y. Dec. 3, 2015); *Avocent Huntsville Corp. v. ClearCube Tech., Inc.*, 2006 WL 7132021, at *2, n.3 (N.D. Ala. July 28, 2006).

18. Notably, this Court has held that, for evidence of litigation misconduct to pass Rule 403's balancing test, a showing of "extraordinary facts" is required. *Toy*, 2014 WL 485922, at *2. That is because, as the Tenth Circuit has recognized, "[w]here improper litigation conduct is at issue, generally the Federal Rules of Civil Procedure [already] provide adequate

means of redress, such as motions to strike, compel discovery, secure protective orders, or impose sanctions." *Timberlake*, 71 F.3d at 341.

19.  At the trial of this matter, no legitimate purpose would be served by allowing Plaintiffs to introduce evidence regarding, or to make any reference to, the circumstances under which the 2013 Affiliation Agreement or the APCO Documents were ultimately produced. Plaintiffs' only purpose for doing so would be to mislead and inflame the jury by trying to impugn the integrity of the Marriott Defendants' counsel and to create the false impression that the Marriott Defendants and their counsel had engaged in willful misconduct and bad faith -- which the Court, on multiple occasions, specifically found was not the case. Accordingly, any reference to these or any other discovery disputes in this litigation should be precluded.

## CONCLUSION

For all the foregoing reasons, the Marriott Defendants respectfully request that the Court enter an order precluding Plaintiffs (including their counsel) from referring to, or introducing evidence at trial regarding, the failure of the Marriott Defendants and their counsel to have timely produced the 2013 Affiliation Agreement and the APCO Documents in discovery.

Dated:  August 19, 2019          Respectfully submitted,

By:   *s/ Philip R. Sellinger*
      Philip R. Sellinger
      Ian S. Marx
      GREENBERG TRAURIG, LLP
      500 Campus Drive, Suite 400
      Florham Park, NJ 07932
      Email:  SellingerP@gtlaw.com
              MarxI@gtlaw.com

11

*Attorneys for Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC, The Cobalt Travel Company, LLC, and The Lion & Crown Travel Co., LLC*

## CERTIFICATE OF SERVICE

I hereby certify that, on August 19, 2019, a true and accurate copy of the foregoing **MARRIOTT DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE REFERENCES TO LITIGATION CONDUCT DURING DISCOVERY** was filed and served with the Clerk of the Court via CM/ECF filing system, which will send notification to the following:

Michael J. Reiser
Law Office of Michael J. Reiser
1475 N Broadway, Suite 300
Walnut Creek, CA 94596
*Counsel for Plaintiffs*

Matthew C. Ferguson
The Matthew C. Ferguson Law Firm, P.C.
119 South Spring, Suite 201
Aspen, Colorado 81611
*Counsel for Plaintiffs*

Tyler R. Meade
The Meade Firm P.C.
1816 Fifth Street
Berkeley, CA 94710
*Counsel for Plaintiffs*

Linda Pham Lam
Michael Schrag
Gibbs Law Group LLP
505 14th Street, Suite 1100
Oakland, CA 94612
*Counsel for Plaintiffs*

                                         */s/ Jaclyn DeMais*
                                         Jaclyn DeMais