IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 16-01301 PAB

RCHFU, LLC, et al.

    Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al.

    Defendants.

---

### MARRIOTT DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE REFERENCES TO "MERGER" WITH MARRIOTT VACATION CLUB DESTINATIONS

---

Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC, The Cobalt Travel Company, LLC ("Cobalt"), and The Lion & Crown Travel Co., LLC ("L&C") (collectively, "Marriott Defendants") hereby move the Court *in limine* for an order precluding Plaintiffs (including their expert witnesses and counsel) from referring, at trial, to a purported "merger" between The Ritz-Carlton Destination Club ("RCDC"), The Ritz-Carlton Club, Aspen Highlands ("RC Club Aspen") or any other RCDC properties and the Marriott Vacation Club Destinations Exchange Program (the "MVCD Program"), and from using the term "merger" to describe the potential or actual affiliation of RC Club Aspen or any other RCDC properties with MVCD (the "MVC Affiliation") or any other process through which MVCD members were given access to RC Club Aspen or any other RCDC properties.

1

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(a), the Marriott Defendants' counsel conferred with Plaintiffs' counsel before making this motion and made a reasonable and good faith effort to resolve this dispute.  Specifically, on August 15, 2019, the Marriott Defendants' counsel had a telephone conference with Plaintiffs' counsel to discuss the factual and legal bases for this motion.  On August 16, 2019, Plaintiffs' counsel communicated their refusal to agree to the relief sought by the Marriott Defendants.

## FACTUAL BACKGROUND

**Description of Plaintiffs' Pleaded Claims**

1. Plaintiffs are owners of 1/12 fractional interests in luxury condominium units at RC Club Aspen.  Each 1/12 fractional interest entitles its owner to four use-weeks per year.  These use-weeks can be spent either at RC Club Aspen in the specific unit for which the owner contracted or at any other resort with which RC Club Aspen is currently affiliated, subject to availability and other restrictions.  There are 205 fractional interests out of a total of 876 available fractional interests at issue in this case.

2. RC Club Aspen affiliated with the MVCD Program in 2014.  This affiliation (the "MVC Affiliation"), which became operational on December 5, 2014, allowed RC Club Aspen members to voluntarily enroll in the MVCD Program, elect to deposit one or more of their RC Club Aspen use-weeks in the MVCD Program, and receive, in return, an allocation of exchange points that can be used to reserve accommodations at various MVC resorts and for other vacation experiences (such as cruises and safaris).  The MVC Affiliation also enabled MVCD Program

members with sufficient amounts of exchange points to access any RC Club Aspen use-weeks that RC Club Aspen members have elected to deposit in the MVCD Program.

3. All the claims asserted in the Seventh Amended Complaint ("7AC") concern the alleged damages that Plaintiffs have supposedly suffered due to: (a) the alleged failure to allow RC Club Aspen members to vote on whether the MVC Affiliation should take place; and (b) the MVC Affiliation itself.

4. Specifically, Plaintiffs allege that: (a) in July 2012, Cobalt proposed the MVC Affiliation (7AC ¶ 53); (b) in April 2013, Plaintiffs were promised a vote on the proposed MVC Affiliation (*id.* at ¶ 73); (c) in lieu of a vote, RC Club Aspen members were surveyed in order "'to understand whether [RC Club Aspen] members would like the opportunity to voluntarily exchange a week of their allocated time for points within the MVCD exchange program'" (*id.* at ¶ 83; *see also id.* at ¶ 84); (d) in April 2014, the RC Club Aspen Homeowners' Association agreed to the MVC Affiliation (*id.* at ¶ 85); and (e) as a result of the MVC Affiliation (which became operational on December 5, 2014), the value of Plaintiffs' fractional interests in RC Club Aspen was adversely affected. *Id.* at ¶ 105.

5. Based on these allegations, Plaintiffs seek damages for the alleged diminution in value of their fractional interests caused by the MVC Affiliation. *Id.* at ¶¶ 105, 115, 123, 131; *see also* ¶ 96 (alleging that, as a result of the MVC Affiliation, "approximately 400,000 [MVC] members … have access to luxury resorts that were formerly only available to Plaintiffs and [other RC Club Aspen members] …, thus devaluing Plaintiffs' vested property interests"). Plaintiffs also seek disgorgement of the profits that the Marriott Defendants allegedly received as a result of the MVC Affiliation. *Id.* at ¶¶ 106, 116, 125, 132, 137. Based on the foregoing

allegations, the liability theories articulated in the five claims asserted in the 7AC involve (a) the potential for the MVC Affiliation to occur; (b) Defendants' actions in advocating for, or helping bring about, the MVC Affiliation; or (c) the actual implementation of the MVC Affiliation.

6.  The word "merger" appears nowhere in the 7AC. Specifically, the 7AC does not allege a "merger" (or any similar term or concept) between MVCD and either the RCDC as a whole or RC Club Aspen or any other RCDC property. Likewise, the 7AC does not use the term "merger" to describe the MVC Affiliation or any aspect thereof.

**Plaintiffs' Recent References to "Merger"**

7.  For the first time in this three-year-old case, Plaintiffs have recently begun to characterize the MVC Affiliation as a "merger" between RCDC, RC Club Aspen or other RCDC properties and MVCD. Plaintiffs have also begun to use the term "merger" to describe processes unrelated to the MVC Affiliation through which MVCD members could use MVCD points to access: (a) remaining or leftover developer-owned fractional interests at RCDC properties (including at RC Club Aspen) from 2010 to 2015; and (b) RCDC properties other than RC Club Aspen from 2012 to the present through RCDC fractional interests owned by the MVC Trust, a Florida land trust ("MVC Trust") at those other properties. These processes are not part of Plaintiffs' claims in this case.

8.  Plaintiffs first used the term "merger" on October 26, 2018, when they submitted three Rule 26(a)(2)(B) expert reports, one of which was from Jon Simon, a financial consultant to the hospitality and vacation-ownership industries. Mr. Simon states that he was retained by Plaintiffs "to opine on whether Defendants' actions, if proven, caused Plaintiffs' property values to diminish" and "to calculate the amount of profit that the Marriott Defendants have made from

4

marketing and providing access to the Ritz Aspen property to MVCD members and affiliating the Ritz-Aspen (and the Ritz-Carlton Destination Club of which Ritz-Aspen was a part) with MVC. . . ." Expert Report of Jon Simon, dated Oct. 26, 2018 (attached as Exhibit A to the August 19, 2019 Omnibus Declaration of Ian S. Marx ("Marx Decl."), ¶¶ 6-7. Throughout his report, Mr. Simon discusses his theory that "Marriott decided that it would be more profitable to 'reengineer' or merge" RC Club Aspen and other RCDC resorts "with MVC[D], and use access to Ritz-Carlton clubs as a lure to sell more MVC points." *Id*. ¶ 15 (emphasis added); *see also id*. ¶¶ 16(c), 35.

9. Plaintiffs next used the term at the November 20, 2018 oral argument on several discovery motions against the Marriott Defendants. Plaintiffs' counsel repeatedly argued that a November 2013 affiliation agreement between L&C and non-party Marriott Resorts Travel Company, Inc. had effected a "merger with the Marriott Vacation Club" and further described the "merging of the[] two clubs." Transcript of Nov. 20, 2018 hearing (Marx Decl., Ex. B) at 14:4-9, 25:6-26:3 (emphasis added).

## ARGUMENT

10. "Irrelevant evidence is inadmissible." Fed. R. Evid. 402. Evidence is relevant only if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence may be excluded, however, "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

11. In performing the Rule 403 balancing test, "[t]he district court has considerable discretion" (*United States v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001)), and should place "particular scrutiny … on the proponent's showing of probative value." *Toy v. American Family Mut. Ins. Co.*, 2014 WL 485922, at *2 (D. Colo. Feb. 6, 2014) (Brimmer, *J*.). Evidence is frequently found not probative (and, thus, excluded under Rule 403) where it is offered to prove facts that were never alleged. *See, e.g., Maurer v. Speedway, LLC*, 774 F.3d 1132, 1135 (7th Cir. 2014) (in premises liability action, affirming exclusion of evidence relating to a never-pleaded municipal ordinance governing walkway dimensions); *Sank v. City Univ. of N.Y.*, 112 Fed. Appx. 761, 763 (2d Cir. 2004) (in civil rights action by college professor alleging wrongful discharge, affirming exclusion of evidence of a change in school policy that had not been pleaded in the complaint).

12. Evidence is appropriately excluded under Rule 403 where it could create "the possibility of unfair prejudice associated with the admissibility of unreliable or inaccurate information, as well as … confusion of the jury…." *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 584 (D. Md. 2007). Thus, "loaded terms" that could mislead or confuse the jury should not be permitted where a more accurate or neutral alternative term is available. *See, e.g., Gerawan Farming, Inc. v. Rehrig Pac. Co.*, 2013 WL 1982797, at *8 (E.D. Cal. May 13, 2013) (granting motion *in limine* to preclude plaintiff from using the phrase "trade secret" where a different phrase could be used to describe information exchanged about product design); *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 193 (S.D.N.Y. 2008) (in contract action against securities broker, directing parties to use the phrase "material non-public information" rather than "inside information").

13. Plaintiffs should not be allowed to use, at trial, the term "merger" to describe either the MVC Affiliation or any non-Affiliation-related access that certain MVCD members were given to RC Club Aspen (or to other RCDC resorts). As an initial matter, Plaintiffs have not pleaded "merger," either as a term or as a concept, nor has any evidence been introduced to support the use of that term. Thus, "merger" is not properly before the Court or the jury.

14. More importantly, permitting Plaintiffs to use the term "merger" would severely prejudice the Marriott Defendants, as it incorrectly and confusingly implies that MVCD members are on an equal footing with Plaintiffs and their fellow RC Club Aspen members, both in terms of their respective property rights and their right to access RC Club Aspen. That is emphatically not the case. As repeatedly demonstrated by the evidence, as owners of fractional interests at RC Club Aspen, it is solely within RC Club Aspen members' power to decide whether MVCD members can reserve stays at RC Club Aspen under the MVCD Program. If RC Club Aspen members do not elect to deposit their weeks into the MVCD Program, then no time at RC Club Aspen is available for MVCD members to reserve. In addition, RC Club Aspen members enjoy benefits (concierge services and the like) that are not available to MVCD members.

15. The MVC Affiliation also does not meet the legal definition of "merger." In the context of business organizations, a "merger" is defined as "'an amalgamation of two corporations pursuant to statutory provision in which one of the corporations survives and the other disappears'" or "'[t]he absorption of one company by another, the former losing its legal identity, and [the] latter retaining its own name and identity and acquiring assets, liabilities, franchises, and powers of former, and [the] absorbed company ceasing to exist as a separate

business entity.'" *State of Colo. ex rel. Colo. State Banking Bd. v. RTC*, 926 F. 2d 931, 938 (10th Cir. 1991) (quoting Black's Law Dictionary (6th ed. 1990) at 988). That is not what took place here. RCDC and/or RC Club Aspen and MVCD did not acquire one another's stock, assets, liabilities, or powers, nor is RCDC and RC Club Aspen (along with its sister resorts) now merely a "part" or "division" of the allegedly less-exclusive MVCD Program, as the term "merger" suggests. Each of these entities still exists, and the Tenth Circuit has made clear that the term "merger" is only to be used if its legal definition is met. *See Blackwell Indus. Found., Inc. v. Texstar Corp.*, 387 F.2d 708, 708 (10th Cir. 1968) ("There is really no such thing as an 'informal' merger . . . because a merger or consolidation, if their established definitions are used, can be accomplished only by formal proceedings.").[1]

16. Thus, the MVC Affiliation was not a "merger" in any sense of the word. It was a series of agreements that allowed RC Club Aspen members to deposit one or more of their RC Club Aspen use-weeks in the MVCD Program (receiving, in return, exchange points that could be used to reserve accommodations at various MVC resorts and for other vacation experiences), while also enabling MVCD Program members with sufficient amounts of exchange points to access any RC Club Aspen use-weeks that RC Club Aspen members elected to deposit in the MVCD Program. Nor did making certain developer-owned or MVC Trust-owned fractional interests available to some MVCD members independent of the MVC Affiliation constitute a "merger."

---

[1] Even if an "informal" merger were legally cognizable, the facts do not show (and Plaintiffs have never pleaded) any informal merger or consolidation of the MVCD Program and its members, rules, regulations, component resorts, and other assets with RCDC or any RCDC property, including RC Club Aspen.

17. In sum, permitting Plaintiffs to use the loaded and inaccurate term "merger" would unfairly prejudice the Marriott Defendants and confuse and mislead the jury. Accordingly, Plaintiffs (including their expert witnesses and counsel) should be precluded from using the term "merger" at trial.

## CONCLUSION

For all the foregoing reasons, the Marriott Defendants respectfully request that the Court enter an order precluding Plaintiffs and their expert witnesses and counsel from referring at trial to a purported "merger" between RCDC, RC Club Aspen or any other RCDC properties and the MVCD Program.

Dated: August 19, 2019    Respectfully submitted,

By:    *s/ Philip R. Sellinger*
Philip R. Sellinger
Ian S. Marx
GREENBERG TRAURIG, LLP
500 Campus Drive, Suite 400
Florham Park, NJ 07932
Email:  SellingerP@gtlaw.com
              MarxI@gtlaw.com

*Attorneys for Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC, The Cobalt Travel Company, LLC, and The Lion & Crown Travel Co., LLC*

# CERTIFICATE OF SERVICE

I hereby certify that, on August 19, 2019, a true and accurate copy of the foregoing **MARRIOTT DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE REFERENCES TO "MERGER" WITH MARRIOTT VACATION CLUB DESTINATIONS** was filed and served with the Clerk of the Court via CM/ECF filing system, which will send notification to the following:

Michael J. Reiser
Law Office of Michael J. Reiser
1475 N Broadway, Suite 300
Walnut Creek, CA 94596
*Counsel for Plaintiffs*

Matthew C. Ferguson
The Matthew C. Ferguson Law Firm, P.C.
119 South Spring, Suite 201
Aspen, Colorado 81611
*Counsel for Plaintiffs*

Tyler R. Meade
The Meade Firm P.C.
1816 Fifth Street
Berkeley, CA 94710
*Counsel for Plaintiffs*

Linda Pham Lam
Michael Schrag
Gibbs Law Group LLP
505 14th Street, Suite 1100
Oakland, CA 94612
*Counsel for Plaintiffs*

*/s/ Jaclyn DeMais*
Jaclyn DeMais