IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 16-01301 PAB

RCHFU, LLC, et al.

     Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al.

     Defendants.

---

**MARRIOTT DEFENDANTS' MOTION TO PRECLUDE TESTIMONY
OF PLAINTIFFS' EXPERT, JONATHAN R. SIMON, DUE TO IMPROPER *EX PARTE*
MEETING AND COMMUNICATIONS WITH MARRIOTT DEFENDANTS'
EMPLOYEES**

---

Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC, The Cobalt Travel Company, LLC, and The Lion & Crown Travel Co., LLC (collectively, the "Marriott Defendants") hereby move the Court for an order precluding the testimony at trial by one of Plaintiffs' three experts, Jon R. Simon, due to his improper *ex parte* meeting with, and questioning of, Marriott Defendants' sales executive  employees under false pretenses, as part of his investigation and "due diligence" for his expert report.[1]  Mr. Simon's report is devoted to two subjects: (i) causation of diminution in value damages; and (ii) the "halo effect" and disgorgement of unjust enrichment profits allegedly realized by the Marriott Defendants based on the halo effect. The Marriott Defendants seek to

---

[1] In his report, Mr. Simon states: "As part of the due diligence for the subject litigation, I attended a MVC sales presentation . . . on September 23rd 2018 at MVC's Newport Coast Villas." Expert Report of Jon R. Simon ("Simon Report") dated October 26, 2018 (attached as Exhibit A to the August 19, 2019 Omnibus Declaration of Ian S. Marx ("Marx Decl."), at pg. 40 fn. 101.

bar Mr. Simon from testifying about the portion of his report that is devoted to the halo effect

and disgorgement of unjust enrichment based on the halo effect. Indeed, the very *premise* of his

report and testimony on this subject is Mr. Simon's assessment that, in their sales presentations,

Marriott Vacation Club ("MVC") sales executives emphasize that the "major" or "primary" or

"main" benefit in purchasing MVC points is access to The Ritz Carlton Destination Clubs

("RCDC")[2] -- and he testified at his deposition that this assessment was substantiated and

confirmed by attending a sales presentation with MVC sales executives on an *ex parte* and

misleading basis.[3]

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(a), the Marriott Defendants' counsel conferred with Plaintiffs'

counsel before making this motion and made a reasonable and good faith effort to resolve this

dispute.  Specifically, on August 15, 2019, the Marriott Defendants' counsel had a telephone

conference with Plaintiffs' counsel to discuss the factual and legal bases for this motion.  The

parties continued to confer via email.  On August 16, 2019, Plaintiffs' counsel communicated

their refusal to agree to the relief sought in this motion. [4]

---

[2] *See, e.g.*, Simon Report (Marx Decl. Ex. A.) at ¶49, pg. 30 (in sales presentations, MVW is "selling access to RCDCs as a major benefit to buying points"); ¶50, pg. 31 (in sales presentations, MVW is "marketing access to RCDCs as a primary benefit of purchasing MVC points"); ¶68, pg. 39 ("those attending MVC sales presentations were overwhelmingly sold access to RCDC as a main benefit of purchasing MVC points"); and ¶73, pg. 41 ("MVW has continued to sell access to the RCDC as a significant benefit of MVC membership as part of the overall sales process of MVC points").

[3] In the alternative, if Mr. Simon is not precluded entirely from testifying about the halo effect and the alleged unjust enrichment based on the halo effect then, at a minimum, he should be precluded from providing any testimony or opinions concerning the role or relative importance of access to RCDC in MVC sales presentations.

[4]  On August 12, 2019, the Marriott Defendants moved to preclude Mr. Simon from offering any expert opinions at trial, pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow*

## FACTUAL BACKGROUND

### Nature of Plaintiffs' Claims

Plaintiffs are owners of 1/12 fractional interests in luxury condominium units at The Ritz-Carlton Club, Aspen Highlands, Colorado ("RC Club Aspen").   Each 1/12 fractional interest entitles its owner to four use-weeks per year.   These use-weeks can be spent either at RC Club Aspen in the specific unit for which the owner contracted or at any other resort with which RC Club Aspen is currently affiliated, subject to availability and other restrictions.   There are 205 fractional interests at issue in this case.

RC Club Aspen affiliated with the Marriott Vacation Club Destinations Exchange Program (the "MVCD Program") in April 2014.   This affiliation (the "MVC Affiliation"), which became operational in December 2014, with unit exchanges beginning January 2015, allowed RC Club Aspen owners to voluntarily enroll in the MVCD Program, elect to deposit one or more of their RC Club Aspen use-weeks in the MVCD Program, and receive, in return, points that can be used to reserve accommodations at various Marriott Vacation Club resorts and for other vacation experiences (such as cruises and safaris).   The MVC Affiliation also enabled MVCD Program members to access any RC Club Aspen use-weeks that RC Club Aspen owners have elected to deposit in the MVCD Program.

The claims asserted in the Seventh Amended Complaint ("7AC") concern the alleged damages that Plaintiffs have purportedly suffered from the MVC Affiliation.   Specifically, Plaintiffs allege that, as a result of the MVC Affiliation, the market value of their fractional interests in RC Club Aspen has been adversely affected (7AC at ¶ 105), and they seek damages

---

*Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) (ECF #460).  If that motion is granted, this motion will be moot.

for that alleged diminution in value.   *Id.* at ¶¶ 105, 115, 122, 131.   Plaintiffs also seek

disgorgement of the unjust enrichment (higher profits in the sale of MVC Points) that the

Marriott Defendants allegedly received as a result of the MVC Affiliation.   *Id.* at ¶¶ 106, 116,

125, 132, 137.

**Mr. Simon's Expert Opinions and *Ex Parte*
<u>Communications With the Marriott Defendants' Sales Representatives</u>**

On October 26, 2018, Plaintiffs submitted a Rule 26(a)(2)(B) expert report by Mr. Simon,

a financial consultant to the hospitality and vacation-ownership industries.   Mr. Simon was

retained by Plaintiffs:

(i)  "to opine on whether Defendants' actions, if proven, caused Plaintiffs' property values to diminish"; and

(ii)  to determine whether the MVC Affiliation caused a "halo effect" enabling the Marriott Defendants to be unjustly enriched through higher profits in being able to charge higher prices for MVC Points; and "to calculate the amount of profit that the Marriott Defendants have made from marketing and providing access to the Ritz Aspen property to MVC members and affiliating the Ritz-Aspen (and the Ritz-Carlton Destination Club ["RCDC"] of which Ritz-Aspen was a part) with MVC."

Simon Report (Marx Decl. Ex. A) at 4-5. This motion seeks to preclude Mr. Simon from

testifying about the second subject of his Report (Point (ii), above), but *not* to preclude him from

testifying about the first subject of his Report (Point (i), above).

In addition to MVC marketing materials sent directly to MVC Members and potential

MVC Points purchasers, central to Mr. Simon's opinion on the second subject is his contention

that, *in sales presentations for MVC Points*, the Marriott Defendants sales executives emphasized

access to RCDC resorts as the "major," "primary" or "main" benefit of purchasing MVC Points. *See, e.g.*, Simon Report (Marx Decl. Ex. A) at ¶49, pg. 30 (in its sales presentations, MVW is "selling access to RCDCs as a major benefit to buying points"); ¶50, pg. 31 (MVW is "marketing access to RCDCs as a primary benefit of purchasing MVC points"); ¶68, pg. 39 ("those attending MVC sales presentations were overwhelmingly sold access to RCDC as a main benefit of purchasing MVC points"); and ¶73, pg. 41 ("MVW has continued to sell access to the RCDC as a significant benefit of MVC membership as part of the overall sales process of MVC points"). *See also id.* at 29-30, 32-35, 39-41. Mr. Simon opines that there was a "halo effect" from the Affiliation of the Ritz-Carlton Clubs and the MVC Program which enabled the Marriott Defendants to charge higher prices for MVC Points.

In his Report, Mr. Simon states: "As part of the due diligence for the subject litigation, I attended a MVC sales presentation . . . on September 23rd 2018 at MVC's Newport Coast Villas." *Id*. at 40 fn. 101 and 41 fn. 103. Mr. Simon did so three months after he was retained by Plaintiffs' counsel as an expert to provide a report on the "halo effect" specifically for use in this action. *Id*. at 4-6; Deposition of Jonathan Simon ("Simon Tr.") (Marx. Decl. Ex. O), at 11:5-11. At his deposition on July 17, 2019, Mr. Simon elaborated further on his visit to the MVC sales presentation, and his one-on-one interactions with the MVC sales executives who he encountered that day. He testified that he made an appointment to attend the private sales presentation one or two weeks in advance, and specifically did so in connection with his retention as an expert witness in this action. *Id.* at 47:14-48:24, 54:6-17. Mr. Simon also confirmed at his deposition that he attended the sales presentation "specifically in this case because [he was] retained as an expert by plaintiffs." *Id.* at 48:22-24 (A: "That's correct."). Mr. Simon spoke with Plaintiffs'

counsel a week before his attendance at the sales presentation. *Id*. at 53:13-54:17. But when asked at deposition to describe those discussions, and whether his attendance at the upcoming sales presentation with MVC employees was the subject of his conversation with counsel, Mr. Simon was instructed not to answer.[5]

At deposition, Mr. Simon described generally how he met for two and a half hours with the Marriott Defendants' sales executives to gain evidence to support his opinion, without the participation, knowledge or consent of the Marriott Defendants' counsel. Mr. Simon first met "one-on-one" with one sales executive, and later met "one-on-one" with a sales manager. *Id*. at 48:25-49:8. Mr. Simon testified that he took notes of his conversations at the sales presentation and had retained those notes. However, two weeks later, Plaintiffs' counsel advised that Mr. Simon had not retained his notes, but had prepared a memorandum to Plaintiffs' counsel dated September 24, 2018 (the day after the sales presentation) which summarizes what Mr. Simon claims took place at the sales presentation, and have produced that memorandum (the "Simon Memorandum") which, among other things, states that his one-on-one sales presentation discussion with the MVC sales executive and manager had lasted "a little more than 2½ hours." *See* Simon Memorandum (attached as Exhibit 4 to the August 19, 2019 Supplemental Restricted Omnibus Declaration of Ian S. Marx ("Restricted Marx Decl.")) at 4.[6]

---

[5] Plaintiffs' counsel instructed Mr. Simon not to answer any questions posed to him at his deposition as to whether Plaintiffs' counsel knew beforehand that he would be attending the presentation, or whether he discussed "the subject" of the upcoming sales presentation with Plaintiffs' counsel. Plaintiffs' counsel invoked the attorney-client privilege as to even "the subject" of such communications, even though Mr. Simon admitted to speaking with Plaintiffs' counsel a week before attending the presentation, at the same time (or shortly after) making the appointment for the presentation. Simon Tr. (Marx. Decl. Ex. O) at 49:13-22, 53:7-54:17.

[6] At his deposition on July 17, 2019, Mr. Simon testified that he took notes of his meeting with MVC sales representatives and that, as of the date of the deposition, he still had those notes.

Mr. Simon kept Plaintiffs' counsel appraised of his *ex parte* procurement of evidence from the Marriott Defendants' sales executives before, during and after the fact. In addition to speaking with Plaintiffs' counsel only a week before the sales presentation, Mr. Simon testified that he reported back to Plaintiffs' counsel regarding his attendance at the presentation within a week after the presentation, (Simon Tr. (Marx. Decl. Ex. O) at 53:13-54:17) and, as noted above, he prepared a memorandum for counsel dated the day after the sales presentation. *See* Simon Memorandum. Thus, Mr. Simon attended the MVC sales presentation as counsel's retained expert witness in this case and, therefore, as counsel's agent.

Mr. Simon affirmatively attempted to manufacture and procure evidence designed to support his "halo effect" opinion during his *ex parte* meetings.  Indeed, the Simon Memorandum states that *Mr. Simon* brought up *his desire* to stay at Aspen and St. Thomas where, he knew, there were RCDC resorts.  *See* Simon Memorandum (Restricted Marx Decl. Ex. 4) at 1-2. In response, the sales executives showed him an example 5-year "vacation plan" that included two RCDC resorts out of five total properties.  Simon Tr. (Marx. Decl. Ex. O) at 52:8-23.  Mr. Simon

---

Simon Tr. (Marx. Decl. Ex. O) at 52:24-53:2. At the deposition, Defendant's counsel asked for the production of the notes (*id.* at 53:3-4), and followed up in an email dated July 24, 2019, again requesting production of the notes (Marx. Decl. Ex. J). Plaintiffs' counsel responded that they were discussing the request and sought a meet-and-confer on the issue (*see* emails dated July 25 and 26, 2019 (Marx. Decl. Ex. K and Ex. L) -- without suggesting that Mr. Simon's notes did not exist. The parties counsel then conferred in a conference call on July 30, 2019, which was memorialized later that day in a July 30, 2019, email from Defendants' counsel to Plaintiffs' counsel (Marx Decl. Ex. M). As noted in that email, during the conference call Plaintiffs' counsel changed position and advised that Mr. Simon did not retain his notes made during the sales presentation -- contrary to Mr. Simon's testimony only 13 days earlier -- and that he had prepared a memorandum to Plaintiffs' counsel dated September 24, 2018, summarizing the previous day's sales presentation, which was based on his notes and his recollection of the presentation.  *Id.*  In response to the Marriott Defendants' demands, on August 5, 2019, Plaintiffs' counsel agreed to produce the memorandum by Mr. Simon, dated September 24, 2018, concerning his attendance at the MVC sales presentation that he attended the day before (Marx Decl. Ex. N).

raised questions about booking to get reservations at RCDC resorts, and testified that he was purportedly advised that "one of the principal benefits" of purchasing MVC points was to gain access to such resorts. The Simon Memorandum further reflects that Mr. Simon "asked him [the MVC sales manager] about Ritz Carlton interests which can be purchased cheaply," inducing a response by the sales manager commenting on maintenance fees and rental rates at Ritz Carlton Clubs.  Simon Memorandum (Restricted Marx Decl. Ex. 4) at 3.

At deposition, Mr. Simon conceded that he was not honest with the Marriott Defendants' sales executives about the nature of or motivation for his *ex parte* meeting with them. At no time before, during or after the sales presentation did Mr. Simon disclose the current litigation to the MVC sales executive and manager with whom he met one-on-one, or that he had been retained by and was attending the presentation as an expert witness in this litigation against the Marriott Defendants and that he was attending the meeting in an attempt to procure evidence.  Simon Tr. (Marx. Decl. Ex. O) at 49:9-12.  Indeed, he misleadingly posed as a *bona fide* potential purchaser of MVC points, without revealing his true role and purpose, and without asking or advising the MVC sales executives about whether they wanted to confer with the Marriott Defendants' counsel before speaking with him.

## ARGUMENT

As a retained expert witness, Mr. Simon was acting as the agent of Plaintiffs' counsel when he engaged in an *ex parte* meeting with the Marriott Defendants' sales executives to procure under false pretenses evidence that he then used to support his expert opinion; thus, the Rules governing professional conduct govern Mr. Simon's conduct here.

Rule 8.5(b)(1) of the Colorado Rules of Professional Conduct provides that, where an attorney's conduct is "in connection with a matter pending before a tribunal, the rules of the jurisdiction in which the tribunal sits" shall be applied when evaluating the attorney's conduct, "unless the rules of the tribunal provide otherwise."  Local Civil Rule 83.4 further provides that "the rules of professional conduct adopted by the Colorado Supreme Court and in effect on the effective date of these rules are adopted as standards of professional responsibility applicable in this court."  *See also Brown v. Garcia*, 2012 WL 5834746, at *1 n.1 (D. Colo. Nov. 1, 2012) (noting that this District "applies as its own the Colorado Rules of Professional Conduct").

Rule 4.3 of the Colorado Rules of Professional Conduct is implicated by Mr. Simon's actions here.  That Rule provides that "[i]n dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested.  When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding."  Rule 8.4(a) of the Colorado Rules of Professional Conduct also makes clear that "[i]t is professional misconduct for a lawyer to . . . violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, *or do so through the acts of another*."  (Emphasis added).

Courts in this District have held that *ex parte* communications with represented parties are improper under Rule 8.4(a) whether they are made by an attorney or the attorney's agent.,. *See Thome v. Cook*, 2012 WL 1586300, at *3 (D. Colo. May 4, 2012) (holding that plaintiffs' counsel violated Rule 8.4(a) when their "agent" improperly made contact with persons covered by Rule 4.3, even though it "was not determined" "[w]hether Plaintiffs' counsel knowingly

assisted or induced [the agent] to do so"). *See also McClelland v. Blazin' Wings, Inc.*, 675 F. Supp. 2d 1074, 1077-78 (D. Colo. 2009) (holding that plaintiff's counsel violated Rule 4.2 where investigator engaged by plaintiff's attorney interviewed defendant's employee about subject matter of action). More specifically, it has been expressly held that the rules of professional conduct require that expert reports be struck when an expert witness retained by counsel has improperly procured evidence through *ex parte* site visits to represented parties. *See Coleman v. Brown*, 938 F. Supp. 2d 955, 968 (E.D. Cal. 2013) (striking expert reports and refusing to consider their contents on motion to vacate judgment in class action for failure to provide adequate mental health care to prisoners; defense attorneys had violated California's "no-contact rule" when their experts made undisclosed visit to prison and conducted interviews with prisoners outside the presence and without the consent of plaintiffs' counsel).

Under the above facts, Mr. Simon acted as an agent of Plaintiffs' counsel when he attended the sales presentation and engaged in dialogue with MVC sales personnel specifically about the MVC Affiliation and MVCD Program member access to RCDC resorts. Furthermore, Mr. Simon proceeded without advising the sales personnel or the Marriott Defendants of his true role and objective (or of the pendency of the litigation), nor did he ask the employees if they were or wished to be represented by counsel. Indeed, Mr. Simon admitted that he misrepresented the purpose and his objective of his visit to the sales personnel, which arose directly as a result of his retention as an expert witness three months earlier, and that he reported back to Plaintiffs' counsel regarding his visit within a week. Simon Tr. (Marx. Decl. Ex. O) at 47:14-48:24, 53:13-19. *See generally Johnson v. Chilcott*, 658 F. Supp. 1213, 1219 (D. Colo. 1987) (agency relationship is created when "the principal and the agent, through written or

verbal agreement or by conduct . . . agree between themselves that the agent may act on behalf of the principal. . . ").

There can also be little doubt that Mr. Simon's communications with the MVC sales representative and manager violated Rule 4.3. It is undisputed that Plaintiffs' counsel was aware of Mr. Simon's conduct before it occurred and that the Marriott Defendants were not advised in advance of Mr. Simon's intent to make a site visit to procure evidence to support his opinion. It is also undisputed that the Marriott Defendants did not have their own counsel present during the presentation. Mr. Simon failed to disclose his relationship with Plaintiffs' counsel to the MVC sales personnel with whom he interacted, or the fact that he was involved on behalf of Plaintiffs in an ongoing lawsuit regarding the very subject matter of his discussions with them. Simon Tr. (Marx. Decl. Ex. O) at 48:25-49:12, 50:14-51:15, 52:8-23. Mr. Simon thus was dishonest with and misled the sales representative and manager by presenting himself as just another prospective customer – not a paid advocate looking for evidence to support the claims of their employer's adversary in a litigation. Furthermore, Mr. Simon induced the MVC sales representative and manager to discuss RCDC resorts and other related topics to manufacture statements to support his opinion.

In fashioning a remedy for a violation of a Rule of Professional Conduct, district courts are given "broad discretion" to fashion appropriate relief, *Weeks v. Independent Sch. Dist. No. I-89*, 230 F.3d 1201, 1211 (10th Cir. 2000), and "must consider the client's right to be represented by counsel of his choice, as well as the opposing party's right to prepare and try its case without prejudice." *Roe v. Karval Sch. Dist. RE23*, 2013 WL 1509126, at *3 (D. Colo. Apr. 12, 2013). Given the circumstances of the actions of Mr. Simon, the most effective remedy in curing the

prejudice to the Marriott Defendants from the resulting ethical violations is to preclude Mr. Simon from testifying at trial concerning the portion of his report that addresses the halo effect and the disgorgement of unjust enrichment based on the halo effect.  Such a ruling would also send a strong signal that such misconduct will not be tolerated.

**CONCLUSION**

For all the foregoing reasons, the Court should enter an order precluding Mr. Simon from testifying at trial concerning the subject of the "halo effect" and disgorgement by the Marriott Defendants of any unjust enrichment or profits caused by the halo effect. In the alternative, the Court should preclude Mr. Simon from offering any testimony or opinions at trial concerning the role or relative importance of access to RCDC in MVC sales presentations.

Dated:  August 19, 2019    Respectfully submitted,

By:     _s/ Philip R. Sellinger_
Philip R. Sellinger
Ian S. Marx
GREENBERG TRAURIG, LLP
500 Campus Drive, Suite 400
Florham Park, NJ 07932
Email:  SellingerP@gtlaw.com
        MarxI@gtlaw.com

*Attorneys for Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC, The Cobalt Travel Company, LLC, and The Lion & Crown Travel Co., LLC*

# CERTIFICATE OF SERVICE

I hereby certify that, on August 19, 2019, a true and accurate copy of the foregoing **MARRIOTT DEFENDANTS' MOTION TO PRECLUDE TESTIMONY OF PLAINTIFFS' EXPERT, JONATHAN R. SIMON, DUE TO IMPROPER *EX PARTE* MEETING AND COMMUNICATIONS WITH MARRIOTT DEFENDANTS' EMPLOYEES** was filed and served with the Clerk of the Court via CM/ECF filing system, which will send notification to the following:

Michael J. Reiser
Law Office of Michael J. Reiser
1475 N Broadway, Suite 300
Walnut Creek, CA 94596
*Counsel for Plaintiffs*

Matthew C. Ferguson
The Matthew C. Ferguson Law Firm, P.C.
119 South Spring, Suite 201
Aspen, Colorado 81611
*Counsel for Plaintiffs*

Tyler R. Meade
The Meade Firm P.C.
1816 Fifth Street
Berkeley, CA 94710
*Counsel for Plaintiffs*

Linda Pham Lam
Michael Schrag
Gibbs Law Group LLP
505 14th Street, Suite 1100
Oakland, CA 94612
*Counsel for Plaintiffs*

*/s/ Jaclyn DeMais*
Jaclyn DeMais