# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 1:16-cv-01301-PAB-GPG

**RCHFU, LLC,** *et al.*

Plaintiffs,

v.

**MARRIOTT VACATIONS WORLDWIDE CORPORATION,** *et al.*

Defendants.

---

**PLAINTIFFS' APPLICATION FOR ADDITIONAL REMEDIES TO REMEDY THE MARRIOTT DEFENDANTS' SUBSTANTIALLY UNJUSTIFIED FAILURE TO PRODUCE THE 2013 AFFILIATION AGREEMENT**

---

Plaintiffs respectfully submit this request for additional remedies in response to this Court's December 31, 2018 Order finding a substantially unjustified discovery violation in the Marriott Defendants' failure to produce the 2013 agreement entitled "Affiliation Agreement providing Members enrolled with The Lion & Crown Travel Co., LLC access to Marriott Vacation Club Destinations Exchange Program and Marriott Resorts, Travel Company, Inc. d/b/a MVC Exchange Company Members access to Accommodations Received from Participating L&C Members and Lion & Crown" ("2013 Affiliation Agreement"). ECF NO. 300 at 29-30. Separately, Plaintiffs move to file a Seventh Amended Complaint containing allegations based on wrongfully-withheld documents, and to request necessary adjustments to the scheduling order to allow additional depositions as requested in this motion. Plaintiffs also note a minor clarification in the December 31, 2018 Order ("Sanctions Order").

        **A.    THE APCO SURVEY DOCUMENTS ARE DISTINCT FROM THE SURVEY THAT THE MARRIOTT DEFENDANTS SECRETLY SUBSTITUTED FOR THE PROMISED VOTE**

1

Plaintiffs accept the Court's determination of issues in the Sanctions Order but note one clarification for the record. In several instances in the Sanctions Order, the Court appears to state that the APCO survey documents relate to the survey that was secretly substituted for the promised vote. For Example, on Page 26 of the Sanctions Order the Court states: "As stated supra, while there is significant debate over the purpose of the survey versus a vote, the fact that a survey was conducted was never hidden." The record should reflect that these are distinct surveys.

The APCO documents relate to a survey and focus group conducted in August 2013 to obtain generalized feedback from Ritz-Carlton Destination Club owners. An open-ended question elicited evidence of owners' deep concerns for Marriott-ization of the RCDC and the resulting loss of value. Importantly, it was not until December 2013 that the Marriott Defendants used a totally separate company — not APCO — to conduct a "survey" instead of the promised vote regarding the Marriott Vacation Club affiliation. About 74 people out of 876 interests answered the survey question that they wanted an "opportunity" for other vacation options. It was this survey result, not the APCO survey, that the Marriott Defendants used to justify the affiliation.

B. **BY WITHHOLDING THE 2013 AFFILIATION AGREEMENT, THE MARRIOTT DEFENDANTS DENIED PLAINTIFFS A FAIR OPPORTUNITY TO DEPOSE THE ASSOCIATION'S DIRECTORS AND ITS ATTORNEY, MIKE MARINO**

Plaintiffs deposed members of the Association board and the Association's attorney Mike Marino between October 2017 and January 2018. Declaration of Tyler Meade ISO Motion to Amend ("Meade Decl."), ¶ 7. But because the Marriott Defendants wrongfully withheld the 2013 Affiliation Agreement, Plaintiffs were wrongfully deprived of the opportunity to pursue two key lines of inquiry — first, whether the Association breached its duty to use reasonable care by signing an "Acknowledgment of and Joinder to" the 2013 Affiliation Agreement ("Acknowledgment and Joinder") without reading the 2013 Affiliation Agreement itself, and second, whether the Marriott Defendants aided and abetted this violation by hiding the 2013 Affiliation Agreement from the board. (The separately filed motion to amend the complaint seeks to explicitly plead these claims,

2

which Plaintiffs believe are subsumed within existing allegations but which Defendants believe are not pleaded.)

Between October 2017 and January 2018, Plaintiffs deposed former Association board members Jay Neveloff, Gerald Marsden, Joel Schneider, Tyler Oliver and Randall Mercer, and Association attorney Michael Marino. The Marriott Defendants did not produce the 2013 Affiliation Agreement until March 2018, so Plaintiffs did not have the information needed to identify and explore the aforementioned two issues. Plaintiffs should be permitted to confirm with deposition testimony that the board members at the time (Messrs. Oliver and Schneider plus the other board member at the time, Robert Harris, who has not yet been deposed) did not receive or know about the 2013 Affiliation Agreement when they decided to execute the Acknowledgment and Joinder in April 2014. Plaintiffs should also be permitted to explore related issues with these witnesses (plus Association attorney Marino), such as what they would have done had they reviewed the 2013 Affiliation Agreement.

Additionally, Plaintiffs intend to move to compel the production of documents concerning the 2013 Affiliation Agreement that have been withheld as privileged. Plaintiffs will also move for the award of attorneys' fees in connection with Plaintiffs' Fed.R.Civ.P. 37(b)(2)(A) Motion to Compel (ECF Nos. 203, 204, 263 and 267), which was held in abeyance pending the sanctions motions decision.

The 2013 Affiliation Agreement is notable for several provisions that would not be apparent to anyone who just saw the Acknowledgment and Joinder Agreement. First and foremost, the 2013 Affiliation Agreement provided that the merger with the Marriott Vacation Club would not apply to any club whose board did not sign the Acknowledgment and Joinder. That means the Association at Aspen Highlands could have blocked the merger at issue in this case with a simple vote of the board to refuse to sign the Acknowledgment and Joinder.

Moreover, the 2013 Affiliation Agreement is replete with one-sided terms that should have alarmed any truly independent directors. For instance, Section X of the 2013 Affiliation Agreement created a ten-year term for the Ritz-Marriott affiliation, which automatically renews

3

for five-year terms. Critically, once the Association signed the Acknowledgment and Joinder Agreement, it had no further power to withdraw from the Marriott-Ritz affiliation as termination rights rest solely with Marriott Vacation Club and Lion & Crown.

Further, the 2013 Affiliation Agreement granted significant use rights to the Marriott Vacation Club in the Ritz properties, above and beyond the use rights given to Aspen Highlands Club owners themselves under the Club's Declaration. Marriott Vacation Club secured the right during certain periods to use the Aspen Highlands Club for "marketing and sales of Interests, vacation ownership interests at other resort condominiums or club resorts, or such other vacation ownership or multisite vacation ownership or membership plans developed or marketed by MVCD or its affiliates." Marriott Vacation Club further secured the right to use exchange time at the Aspen Highlands Club "for any purpose, including, without limitation, in MVCD's sole and absolute discretion, any purpose related to marketing, selling, or promoting the MVCD Program or other timeshare or fractional projects developed, marketed or offered by MVCD's affiliates" (emphasis added). In other words, it secured a right to use the Aspen Highlands Club to market the sale of MVCD points to potential Marriott customers.

Furthermore, while it is customary for such exchange agreements to specify a formula for allocating exchange time between various programs, section 7.8 of the 2013 Affiliation Agreement gave Marriott Vacation Club the sole and absolute discretion to calculate the value of exchange time, meaning that MVCD would inevitably use 100% of the exchange time committed by Aspen members. Likewise, while it is customary for exchange agreements to fairly allocate costs between affiliating exchanges, the 2013 Affiliation Agreement has no such provision. Indeed, the cost allocation was grossly one-sided and likely to lead to increased costs for Aspen Highlands owners. Section 7.1 of the Agreement reserved for Marriot Vacation Club the right to charge Ritz members for use of the exchange program, but explicitly prohibited Lion & Crown from charging Marriott members fees for exchanging into the Ritz.

Plaintiffs were not able to explore any of these topics in deposition because the Marriott Defendants failed to produce the 2013 Affiliation Agreement.

4

Accordingly, Plaintiffs should be permitted to re-depose Messrs. Oliver, Schneider, and Marino and to take the deposition of Robert Harris, with the Marriott Defendants paying all costs and fees associated with the Oliver, Schneider, and Marino depositions (including fees and costs requested by the Association).

### C. THE COURT SHOULD INSTRUCT THE JURY THAT THE MARRIOTT DEFENDANTS WRONGFULLY WITHHELD THE 2013 AFFILIATION AGREEMENT

In response to the Court's invitation to request "other remedies … to correct the prejudice" caused by the Marriott Defendants' failure to timely produce the 2013 Affiliation Agreement, Plaintiffs request a curative jury instruction pursuant to Fed.R.Civ.P. Rule 37(c)(1)(B). ECF. No. 330 at 30.

This Court has broad discretion to fashion an appropriate remedy for the unjustified discovery violation it found. *Marshall v. Ford Motor Co.*, 446 F.2d 712, 713 (10th Cir. 1971); *see also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (noting that the district court's discretion should be given particularly wide latitude in imposing sanctions under Rule 37(c)(1)); 8B Fed. Prac. & Proc. Civ. § 2284 (3d ed.) ("The district court may, within reason, use as many and as varied sanctions as are necessary to hold the scales of justice even").

The sanction of a curative jury instruction is specifically authorized by Rule 37(c)(1)(B) and has been applied by many courts. *See, e.g.*, *Tom v. S.B., Inc.*, 280 F.R.D. 603, 619 (D.N.M. 2012) (ordering such an instruction and collecting similar cases). For example, the Tenth Circuit upheld the following instruction in *Knowlton v. Teltrust Phones, Inc.*, 189 F.3d 1177, 1182 (10th Cir. 1999):

> Teltrust Phones, Inc., has failed to give Pierre Knowlton evidence within its exclusive control that is relevant and material to the determination of whether [Teltrust Phones], Teltrust, Inc., and [TCSI] constituted a single employer. Therefore, in determining whether the three entities were a single employer and whether to include all three entities' employees in your calculation [of the number of employees], you must presume that the evidence which Teltrust Phones, Inc. would not provide would have weighed against Teltrust Phones, Inc. and in favor of Pierre Knowlton.

In a case where a party prevented its opponent from discovering the identity of a witness, the district court gave an instruction allowing the jury to conclude the testimony of the witness would

5

have been harmful. *McCloud v. Goodyear Dunlop Tires N. Am., Ltd.*, 2007 WL 2584289, at *6 (C.D. Ill. Aug. 23, 2007).

Here, Plaintiffs respectfully submit that a similar (but less severe) approach is warranted, with the instruction tailored to the unique facts of this case. The jury should be permitted — but not required — to draw an adverse inference from the Marriott Defendants' unjustified failure to timely produce the 2013 Affiliation Agreement. This approach places this matter where factual disputes belong, *i.e.*, within the province of the jury, and allows the parties to argue for and against the permissible inference. The following is Plaintiffs' proposed instruction:

> Before this trial, the parties were required to exchange documents and other information in a process known as discovery. The Court has found that the Marriott Defendants violated the rules of discovery by not giving Plaintiffs a copy of the 2013 Affiliation Agreement when they should have. You may consider this failure when evaluating the evidence.

Plaintiffs will argue that the Marriott Defendants also concealed the 2013 Affiliation Agreement from the directors of the Association because it did not want them to know they could have stopped the Marriott Vacation Club affiliation at Aspen Highlands with a simple majority vote, and that they made a deliberate decision to bury the agreement in discovery because producing it would expose their malfeasance. The Marriott Defendants, on the other hand, would be free to argue otherwise.

Dated: January 14, 2019

Respectfully submitted,

| | |
|---|---|
| LAW OFFICE OF MICHAEL J. REISER | THE MATTHEW C. FERGUSON LAW FIRM, P.C. |
| /s/ Michael J. Reiser | |
| Michael J. Reiser, # 16161 | /s/ Matthew C. Ferguson |
| 1475 N. Broadway, Suite 300 | Matthew C. Ferguson, #25687 |
| Walnut Creek, CA 94596 | 119 South Spring, Suite 201 |
| Telephone: (925) 256-0400 | Aspen, Colorado 81611 |
| Facsimile: (925) 476-0304 | Telephone: (970) 925-6288 |
| E-mail: reiserlaw@gmail.com | Facsimile: (970) 925-2273 |
| *Attorney for Plaintiffs* | E-mail: matt@matthewfergusonlaw.com |
| | *Attorney for Plaintiffs* |
| GIBBS LAW GROUP, LLP | THE MEADE FIRM, P.C. |

| | |
|---|---|
|   /s/ Michael Schrag                 <br> Michael Schrag (CA State Bar # 185832) <br> Linda Lam (CA State Bar# 301461) <br> 505 14th Street, Suite 1110 <br> Oakland, CA  94612 <br> Phone: (510) 350-9718 <br> Facsimile: (510) 350-9701 <br> E-mail: mls@classlawgroup.com <br> E-mail: lpl@classlawgroup.com <br> *Attorney for Plaintiffs* |   /s/ Tyler Meade                   <br> Tyler Meade (CA State Bar # 160838) <br> 12 Funston Avenue, Suite A <br> San Francisco, CA 94129 <br> Telephone: (415) 724-9600 <br> Facsimile: (415) 510-2544 <br> E-mail: tyler@meadefirm.com <br> *Attorney for Plaintiffs* |

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that on January 14, 2019, I electronically filed the foregoing P**LAINTIFFS' MOTION TO AMEND SCHEDULING ORDER AND AMEND COMPLAINT** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| **Michael J. Reiser**<br>Reiser Law, P.C.<br>1475 N. Broadway, Suite 300<br>Walnut Creek, CA 94596<br>michael@reiserlaw.com<br><br>**Matthew C. Ferguson**<br>The Matthew C. Ferguson Law Firm, P.C.<br>119 South Spring, Suite 201<br>Aspen, Colorado 81611<br>matt@matthewfergusonlaw.com<br><br>**Michael L. Schrag**<br>Gibbs Law Group LLP<br>505 14th Street, Suite 1110<br>Oakland, CA 94612<br>mls@classlawgroup.com<br><br>**Tyler R. Meade**<br>The Meade Firm P.C.<br>12 Funston Avenue, Suite A<br>San Francisco, CA 94129<br>tyler@meadefirm.com<br><br>*Attorneys for Plaintiffs* | **Andrew Nussbaum, Esq.**<br>**Jessica Black Livingston, Esq.**<br>Hogan Lovells US LLP<br>1200 Seventeenth Street, Suite 1500<br>Denver, Colorado 80202<br>Telephone: (303) 899-7300<br>Fax: (303) 899-7333<br>dan.shea@hoganlovells.com<br>jessica.livingston@hoganlovells.com<br>*Attorneys for Defendant Aspen Highlands Condominium Association*<br><br>**Naomi G. Beer**<br>**Ian S. Marx, Esq.**<br>**Philip R. Sellinger, Esq.**<br>Greenberg Traurig, LLP<br>1200 17th Street, Suite 2400<br>Denver, Colorado 80202<br>Phone: (303) 572-6500<br>Fax: (303) 572-6540<br>BeerN@gtlaw.com<br>SellingerP@gtlaw.com<br>MarxI@gtlaw.com<br>*Attorneys for Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., Ritz-Carlton Management Company, LLC, Cobalt Travel Company, LLC and Lion & Crown Travel Company, LLC* |

                                                                  */s/ Tyler R. Meade*
                                                                  Tyler R. Meade
                                                                  Attorney for Plaintiffs
                                                                  The Meade Firm P.C.
                                                                  12 Funston Avenue, Suite A
                                                                  San Francisco, CA 94129
                                                                  Fax: (415) 510-2544
                                                                  tyler@meadefirm.com