# EXHIBIT G

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

Civil Action No. 1:16-cv-01301-PAB-GPG

**RCHFU, LLC,** *et al.*

Plaintiffs,

v.

**MARRIOTT VACATIONS WORLDWIDE CORPORATION,** *et al.*

Defendants.

---

## PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS
## PURSUANT TO COURT'S DECEMBER 31, 2018 SANCTIONS ORDER

---

Plaintiffs, by and through their undersigned counsel, submit the following Motion for Attorney's Fees and Costs in connection with the directives in Magistrate Judge Gordon P. Gallagher's "Order Regarding Plaintiffs' Motions for Default Judgment" ("Sanctions Order") (Dkt.No. 330) pursuant to Fed. R. Civ. P. 54(d) and D.Colo.L.Civ.R 54.3, and state as follows:

### I.    CERTIFICATE OF COMPLIANCE WITH D.C. COLO. L. CIV.R. 7.1A

There is no conferral – this fees and costs motion ("Fee Application") was authorized in the Sanctions Order. Plaintiffs' counsel has advised the Marriott Defendants' counsel that this motion was forthcoming.

### II.    INTRODUCTION

On December 31, 2018, Judge Gallagher issued the Court's Sanctions Order and ruled on Plaintiffs' two motions for sanctions which has been consolidated for certain purposes. The

discovery sanctions  motion practice began on April 27, 2018 with the filing of the first of Plaintiffs' two motions for sanctions and a default judgment against certain Marriott Defendants.  In their "Affiliation Agreement Motion", Plaintiffs established that the Marriot Defendants had violated Fed.R.Civ.P. 26(g) by failing to disclose or produce a key document -- the November 14, 2013 Affiliation Agreement ("Affiliation Agreement"), which was only provided to Plaintiffs on March 14, 2018. The Sanctions Order also addressed Plaintiffs' motion for sanctions in connection with the "APCO Documents Motion", filed on July 5, 2018. The Court recites all the relevant motion papers and their corresponding docket (ECF)  numbers in the first paragraph of the Sanctions Order.

In the Sanctions Order the Court found the Marriott Defendants guilty of two discovery violations in regard to the Affiliation Agreement and the APCO Documents. Because the Court found that the violation in connection with the Affiliation Agreement was not substantially justified, it ordered that the sanctions be imposed, including for attorneys' fees and costs related to Marriott's failure to produce the Affiliation Agreement – referring to the "specific costs/expenses fees Plaintiffs had to expend to otherwise fix the problem(s), *e.g.*, extra deposition(s), travel, *etc*…." Sanctions Order, Dkt. No. 330 at pp. 29-30.

In this Fee Application, Plaintiffs request an award of attorneys' fees in the amount of **$142,743** and costs and expenses in the amount of **$33,134.98**, representing amounts incurred from March 13, 2018 through December 31, 2018, and as described below.

Plaintiffs have also submitted to recover for the fees and costs for this Fee Application in the amount of **$34,882.50** for attorneys' fees for the work done by the Ferguson Firm on the Fee Application. These fee applications are very time-consuming endeavors and not recovering fees and costs for it would significantly erode the award for fees and costs allowed in the Sanctions Order.  See discussion *infra*.

Plaintiffs thus seek a total award of **$210,761.48.**

Plaintiffs will submit a separate Fee Application to recover the fees and costs for moving to amend and amending the Sixth Amended Complaint as allowed by the Sanctions Order.

Plaintiffs reserve the right to submit a supplemental motion for all later fees or costs, including those to reply to any opposition.

### III. ARGUMENT

#### a. Applicable Rules and Lodestar Analysis

As the Court found in its Sanctions Order, the Marriot Defendants' failure to provide the Affiliation Agreement to Plaintiffs before March 13, 2018, prejudiced Plaintiffs. Plaintiffs were "forced to re-depose certain witnesses, may have some additional deposition to notice and take, and expended significant extra time and effort to this portion of the case as a result of the failure to provide the Affiliation Agreement. Finally, this has somewhat extended the litigation-again costing more." Sanctions Order Dkt. No. 330, pp. 19-20.

In accordance with Fed.R.Civ.P. 54, the Court directed that within 14 days, Plaintiffs provide a detailed motion for fees and costs "complying with all rules, statutes, including local rules." *Id.* p. 29. This Fee Application is thus made pursuant to Fed.R.Civ.P. 54(d)(2), and D.Colo.L.Civ.R 54.3, as well as the four Firms' compliance with Colorado Rule of Professional Conduct 1.5 governing reasonableness and necessity of the fees and costs sought. U.S. District Court Judge Phillip A. Brimmer has stated that:

> To fix a reasonable fee award, a court must begin by calculating the "lodestar amount." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir.1998). The lodestar amount is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). A party seeking an award of attorney's fees

3

must establish the reasonableness of each dollar and each hour for which the party seeks an award. *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir.1995).

*Biax Corp. v. NVIDIA Corp.*, No. 09-CV-01257-PAB-MEH, 2013 WL 4051908, at *1 (D. Colo. Aug. 12, 2013).

Review of an attorneys' fees award is for abuse of discretion. *Brandau v. State of Kansas*, 168 F.3d 1179, 1181 (10th Cir.1999)("we will reverse the district court's factual findings only if we have a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances"). Plaintiffs' goal here is thus to apply for all its reasonable fees and costs in the recent litigation addressing the fallout from Marriott's failure to produce the Affiliation Agreement. Billing judgment is thus wielded by Plaintiffs' counsel here to "winnow" hours to those actually expended down to hours reasonably expended. *Case v. Unified Sch. Dist. No. 233, Johnson Cty., Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998). That said, the impacts on Plaintiffs' case have been serious and far reaching. Significant hours have had to be expended and still are. Many more hours were expended (reasonably) by Plaintiffs' legal team in connection with the rippling effects on the case and for the extra discovery caused by Marriott's failure to disclose and produce key evidence. It will not be sought at this time given time constraints and Plaintiffs' desire to press forward.

**b.    Declarations of Counsel and Qualifications**

As required by D.Colo.L.Civ.R 54.3, accompanying this application are the following:

- the Declaration of Matthew C. Ferguson sworn to on January 14, 2018 ("Ferguson Declaration ") **EXHIBIT "1"**;

- the Declaration of Michael J. Reiser sworn to on January 14, 2018 ("Reiser Declaration ") **EXHIBIT "2"**; and

- the Declaration of Tyler Meade sworn to on January 14, 2018 ("Meade")
  Declaration **"Exhibit "3".**[1]

These Declarations set forth: (1) a summary of relevant qualifications and experience of the lawyers and paralegals who were primarily handling the after-effects of Marriott's failure to produce the Affiliation Agreement, and (2) a detailed description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount claimed. So as not to be duplicative, the Ferguson Declaration is the "master" Declaration and provides more detailed facts concerning the representation of Plaintiffs, the relationship of the lawyers who worked on the Affiliation Agreement issue and the nature of the work/tasks performed. Specifically, the Declarations and exhibits thereto confirm this Fee Application and the hours worked by attorneys and paralegals on case concerns/strategy, additional discovery/depositions and issues related to the non-production of the operative Affiliation Agreement which was a central document to the affiliation between the Marriott Vacation Club and the Ritz-Carlton Destination Clubs. As directed, these tasks do <u>not</u> include time spent specific to the Affiliation Agreement Motion – which Plaintiffs filed and was <u>very</u> time consuming and expensive in terms of attorney time. As set forth in the Ferguson Declaration, certain time entries related to the Affiliation Agreement Motion may overlap with the work done on the discovery plan, substantive motion practice[2], pleadings issues, case management/Scheduling Orders, research and additional written discovery and depositions. As an example, reviewing prior depositions relating to the Affiliation Agreement was done both for assessing case strategy, determining the problems with any gaps in deposition

---

[1] Given that the Gibbs Law Group LLP spent the least amount of direct time on the issues allowed here and in the interest of efficiency, the Ferguson Declaration presents Mr. Schrag's and Ms. Lam's qualifications and hours that they expended.

[2] For example, the Affiliation Agreement became highly relevant to ACHA's motion for summary judgment.

testimony and resultant impacts on discovery, as well as for the factual portions of the Affiliation Agreement.

Plaintiffs have the burden of proving hours with meticulous time records that show how each lawyer for whom the fees are sought allotted their time for specific tasks. Counsel must make a good faith effort to exclude hours or costs that are "excessive, redundant or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Again, the lodestar process is to multiply the hours Plaintiffs' counsel reasonably spent on Affiliation Agreement issues by a reasonable hourly rate. *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005).

Because this action is still active, and this is not an end-of-case prevailing party fee application, relevant time entries here are part of larger daily tasks descriptions and time entries for the many days since March 13, 2018. As those descriptions/entries for unrelated tasks would clearly reveal Plaintiffs' counsels' work product, mental impressions, case strategy and otherwise privileged and confidential communications in midstream, the unrelated  time records have been redacted. The relevant time records were extracted from the firms' billing systems and placed into separate spreadsheets. Plaintiffs are entitled to keep their other work product secret still. *Democratic Party of Washington State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004) (for example litigant is entitled for good reason to considerable secrecy about what went on between client and counsel, and among counsel). This will not impair the ability of this court to judge whether the amount sought for the relevant tasks is reasonable and necessary. *Biax Corp. v. NVIDIA Corp.*, No. 09-CV-01257-PAB-MEH, 2013 WL 4051908, at *5 (D. Colo. Aug. 12, 2013) ("that the Court can confidently state that the claimed hours are reasonable" with such redactions).

c.   **Four Firms' Retention and Litigation Representation**

Since approximately December 31, 2015, the four firms – Reiser Law, p.c./Walnut Creek, California, The Gibbs Law Group, LLP/Oakland, California, The Meade Firm, p.c./Oakland, California and The Matthew C. Ferguson Law Firm, P.C./Aspen, Colorado ("Four Firms") have been retained by owners of approximately 234 1/12 fractional interests in Tourist Accommodation Units at the once private and exclusive Ritz-Carlton Club at Aspen Highlands. These were purchased for prices ranging from approximately $150,000 to over $550,000 and are now worth only fractions of these purchase prices and what they should be today as a result of the actions of the Marriott Defendants and the Aspen Highlands Condominium Association ("ACHA"). The total original purchase prices add up to approximately $60,000,000, and Plaintiffs have disclosed diminution and disgorgement damages with pre-judgment interests approaching $100,000,000. This case is thus high stakes and complex.  In compliance with COLO.R.P.C. 1.5(b), each Plaintiff and the four Firms have entered into proprietary, privileged and confidential "Ritz-Carlton Aspen Contingent Agreement for Litigation" (with requisite a Disclosure Statement) and a "Joint Prosecution of Claim and Representation Agreement."

The Four Firms were thus retained and have performed legal services to prosecute Plaintiffs' claims as presently set forth in the Sixth Amended Complaint. The Sixth Amended Complaint of course was drafted _without_ the benefit of many critical documents that were withheld for _18-20 months_ by the Marriott Defendants, including the Corporate Growth Committee documents, the Affiliation Agreement and the APCO Documents.

As set forth in the Declarations, Messrs. Schrag, Meade, Reiser and Ferguson are each experienced complex commercial litigation and trial attorneys. Their biographical and cases

experience is also set forth in the Declarations. These lawyers are in turn supported by associate attorneys and paralegals with experience in the same areas. The opposing counsel in this case are Greenberg Traurig, LLP (New Jersey Office) and Hogan Lovells LLP (Denver, Colorado). These firms have nearly 2000 and 2700 lawyers respectively.

The three Declarations set forth attorneys' and paralegals' time spent on the tasks related to the Affiliation Agreement. The Ferguson Declaration sets forth the overall reasonableness and necessity of the fees and costs sought. Mr. Ferguson has taken hours actually expended by the only most active attorneys at the Four Firms in these matters and winnowed them down to hours reasonably expended.

### d. Plaintiffs' Counsel's Work Related to Marriott's Discovery Violation and Reasonableness of Fees

On March 13, 2018, Michael Reiser determined that the Affiliation Agreement had not been produced. Plaintiffs have set out the complete circumstances of that late production in their Affiliation Agreement Motion and oral argument. It will not be repeated here.

As set forth in the Ferguson Declaration, the fees (and costs) sought here relate to, among other things: (a). Discovering that the Affiliation Agreement had not been produced, including searching all databases; (b).Contacting and communicating with Greenberg Traurig about the discovery violation; (c). Contacting and communicating with ACHA counsel Hogan Lovells LLP about searching their files; (d). Obtaining the Affiliation Agreement and analyzing same in the complex series of agreements that concern all affiliation of MVC and RCDC[3]; (e). Investigating the factual background, reviewing prior testimony of several witnesses, reviewing documents

---

[3] Drafting of the Affiliation Agreement started as early as April 2012 and finished on November 13, 2014; it was worked on by nearly a dozen executives and managers, including in-house lawyers.

productions, interviewing gathering and assembling related documents; (f). Dealing with re-deposing Lee Cunningham and Stephanie Sobeck and negotiations concerning same; (g). Preparing for deposition, processing exhibits, meeting about, strategizing, analyzing the actual affiliation structure, conducting, and attending depositions for Mr. Cunningham, Mr. Mercer and Ms. Sobeck; (h). Determining other potential deponents and reading their depositions; (i). Reading the new depositions; (j). Status reports and status conferences to apprise the Court and to extend discovery for these purposes; (k). Discovery Dispute procedures with ACHA and Hogan Lovells LLP to obtain the discovery denied Plaintiffs by the late production of the Affiliation Agreement,[4] including significant disputes about re-deposing ACHA board members who had approved the affiliation acknowledgement and joinder with MVC; (l). Propounding and ten reviewing written discovery to ACHA regarding the Affiliation Agreement; (m). Preparing for and conducting deposition of Mr. Mercer; (n). Negotiations in person, by phone and email with Hogan Lovells LLP concerning these ACHA Affiliation Agreement issues, renewed depositions of directors of the ACHA Board which signed the acknowledgement and joinder, potential motion practice and dealing with new facts and documents in context of mediation with ACHA; (o). Attending to case management issues; (p). Preparing for and attending an unsuccessful mediation with the Marriott Defendants where the Affiliation Agreement was the subject of the new depositions only weeks before; (q). Responding to ACHA's summary judgment motion in an entirely new context with the Affiliation Agreement disclosed; (r). Preparing an amended complaint and motion to amend,

---

[4] Five directors and a lawyer were deposed without the benefit of the Affiliation Agreement – that the ACHA board joined without ever having seek it.

with attendant legal research, strategy meetings, drafting, revising and filing; and (s). Preparing

this Fee Application.

### e.   **Costs Should be Awarded**

Plaintiffs are entitled to recover certain costs as directed in the Sanctions Order. Plaintiffs

have incurred significant costs in matters relating to the Affiliation Agreement's non-production.

Here, they are reduced to travel, copy and deposition transcription expenses.

### i.   *Reimbursement of One-Half (½) Costs for the First Sobeck, Cunningham and Mercer Depositions Should be Awarded*

On April 2, 2018, following the Affiliation Agreement's late production, Greenberg

Traurig offered up Marriott Vacation Club Vice President Stephanie Sobeck and Chief Operating

Officer Lee Cunningham for their second depositions.[5] These witnesses had already been deposed

over 3 days in Orlando, Florida in November 2017— after Ian Marx's original August 2017

representation that all documents had been produced in August 2017. Because Plaintiffs have no

subpoena power over these Orlando-based MVW witnesses, the depositions were also videotaped,

and sophisticated and very expensive Trial Director technology was used to assist counsel, the jury

and the court with real time split screen display of exhibits. This was critical to Plaintiffs'

presentation at trial.   These depositions were prepared for by the Plaintiffs' counsel team both

substantively and technically over many weeks and months. Plaintiffs invested heavily in the costs

of travelling to and conducting these critical depositions in Orlando. The transcription, deposition

set up and videotape services alone were: $12,383.20 for Mr. Cunningham (2 Volumes) and $

7,427.11 for Ms. Sobeck. Copies of Veritext Legal Solutions invoices for the first round of the

---

[5] Ms. Sobeck had to be deposed a third time concerning the APCO Documents.

Cunningham Deposition and the Sobeck Deposition are annexed hereto as **Exhibits "4"** and **"5"**. The depositions and exhibits had been organized so as to be presented in a cogent manner at trial. Plaintiffs had flown in the same Veritext Legal Solutions Trial Director technician from New Jersey to Orlando who was by then familiar with the case and exhibits. He was handling all initial depositions – which started in New York City with two ACHA board members. The late production of the Affiliation Agreement (and later the APCO Documents) rendered much of this testimony unsaleable as it is incomplete and/or confusing given the framing of issues and questioning without the operative Affiliation Agreement. A critical document that featured in the middle of key chronological events had been withheld.

More importantly, having invested $19,811.31 alone in these two deposition transcripts and videography/Trial Director technology, Plaintiffs had to forgo the expensive but highly desirable Trial Director production for this second round of depositions. It was just becoming too expensive. As a result of Marriott's discovery violation, the integrity and consistency of the deposition process and the end product for the first round has been ruined in many respects. The examinations focused on other affiliation agreements and the chorological organization of the videotaped deposition has been corrupted, as well as the substance of hundreds of pages of testimony. The reorganization and splicing of these depositions to salvage their usefulness will be much more time consuming and expensive. Plaintiffs request that they be awarded one-half (1/2) of the expenses related to transcribing, videotaping and processing Trial Directory technology for these first two depositions in the amount of **$9,905.66.** This is a fraction of the attorney and paralegal time that will be required.

In addition, this same problem exists for the ACHA board directors, including for its president Randall Mercer's deposition, which was conducted on October 24, 2017, in Fort Myers, Florida. The transcription and videotape costs of Mr. Mercer's deposition alone were $4,144.94 and $3,093.70 for a total of $7,238.64. Copies of Veritext Legal Solutions invoices for the first round of the Mr. Mercer's Deposition are annexed hereto as **Exhibits "6"** . Plaintiffs request an award of one-half (1/2) of these expenses in the amount of **$3,619.32** so that it may be applied to the editing and now organizing of that deposition with Mr. Mercer's second deposition on September 13, 2018.

> ### ii.  *Travel and Lodging Costs, Copying and Transcription/Video for Second Round of Orlando Depositions and ACHA President Mercer's Second Deposition*

On Easter Sunday, April 1, 2018, due to the late production of yet other documents by Ritz-Carlton Hotel Company, LLC, and other discovery problems with Marriott and Greenberg Traurig (including this one), a trip to Orlando was cancelled for Plaintiffs to depose Marriott's Chief Executive Officer Steven Weisz and Director Lani Kane-Hanan. A combined trip for four depositions was thus later arranged for the week of May 14, 2018. This combined trip would spare Plaintiffs two trips and save some money – but the trip had to be extended, and an extra lawyer was brought to assist in four back-to-back depositions of MVW's top executives.

Four lawyers travelled to Orlando on Sunday May 13, 2018: Matthew Ferguson, Michael Reiser, Tyler Meade and Michael Reiser, Jr. Messrs. Reiser and Ferguson had both deposed Mr. Cunningham and Ms. Sobeck in November 2017 and took the lead in analyzing the new and complex issues, preparing for and conducting their second depositions. Michael Reiser, Jr. was heavily involved in preparing a new affiliation chronological file and assisted with documents and

exhibits. Mr. Meade was present to assist and work with the deposition team. Mr. Meade worked closely with the deposition team to assist them on legal issues and to direct questioning needed for substantive briefing, mediation and overall case management. He was also present to negotiate a mediation process in person with Greenberg Traurig lawyer, Philip Sellinger, and to understand the issues and what these two witnesses would say. He was working a deadline on a very detailed mediation brief for June 2018 and the testimony of Mr. Cunningham and Ms. Sobeck was important to understand Marriott's attempt at a defense. He thus attended the second depositions of Mr. Cunningham and Ms. Sobeck. He acted as a second chair and to assist with the depositions of CEO Weisz and Director Kane-Hanan. Those hours are not included here. It is important to note that three attorneys were present for Marriott at Ms. Sobeck's May 15th Deposition (Sellinger/GT, Kelly/MVC and Gray/MVC) and three at Mr. Cunningham's May 18th Deposition (Sellinger/GT, Kelly MVC and Marx/GT).

The travel, lodging and meal expenses for the three firms is set forth below – with Reiser Law and MCF Law seeking one half (½) of those costs and The Meade Firm one/quarter (¼). They are set forth below. As Reiser Law and MCF Law were there to depose two other executives it is fair to halve those costs. Mr. Meade spent approximately ¼ of his time assisting with the Affiliation Agreement depositions. Likewise, miscellaneous, copying and substantial Veritext Legal Solutions fees for these videotaped depositions (without Trial Director) are set forth below. Included also are the costs associated with the second deposition of Randall Mercer.

| | Stephanie Sobeck deposition 5/15/18 | Lee Cunningham deposition 5/18/18 | Randy Mercer deposition |
|---|---|---|---|
| **Second Depositions Costs with Attached Invoices** | **EXHIBIT "7"** | **"8"** | **"9"** |
| Court reporter (including Transcript) | $3,028.35 | $1,275.90 | $1,363.25 |
| Videographer | $4,088.75 | $2,795.25 | $1,099.45 |
| Sub-Total deposition costs | $7,117.10 | $4,071.15 | $2,462.70 |
| **Total transcription and video deposition costs** | **$13,650.95** | | |
| Travel, supplies, miscellaneous. | | | |
| MCF Printing, Exhibits and copying costs (3 depos) (est.) | $150.00 | | |
| Deposition Supplies in Orlando | $315.62 ÷ 2 = $157.81 | | |
| MCF Law Travel expenses Orlando (Hotel, Taxi, Meals, Uber, Taxi, Tips.) 5/15-5/18/2018 | $2,597.84 ÷ 2 = $1,298.92 | | |
| MCF Law Airplane tickets Aspen-Orlando | $935.45 ÷ 2 = $467.72 | | |
| Reiser Law Airplane tickets SFO-Orlando | $1766.00 ÷ 2 = $883.00 | | |
| Reiser Law Travel expenses Orlando (Hotel, Taxi, Meals, Uber) 5/15-5/18/2018 | $3980.62 ÷ 2 = $1990.31 | | |
| Reiser Law Copying, Supplies Miscellaneous – Walgreens and Copy Center | $250.00 | | |
| Meade Firm Travel expenses Orlando (Hotel, Taxi, Meals...) 5/15-5/18/2018 | $2,539.15 ÷ 4 = $634.79 | | |
| Meade Firm Airplane tickets SFO-Orlando | $507.40 ÷ 4 = $126.85 | | |

| Total Travel, Supplies, Misc. | $5959.40 |
|---|---|
| Total Costs for Second Set of Depositions: | $19,610.38 |

### f.    Prevailing Hourly Rates

In *Biax Corp. v. NVIDIA Corp.*, No. 09-CV-01257-PAB-MEH, 2013 WL 4051908, at *6

(D. Colo. Aug. 12, 2013), Judge Brimmer wrote:

> A "reasonable rate" is defined as the prevailing market rate in the relevant
> community for an attorney of similar experience. *Guides, Ltd. v. Yarmouth
> Group Prop. Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir.2002); *Malloy v.
> Monahan*, 73 F.3d 1012, 1018 (10th Cir.1996). The party requesting fees
> bears "the burden of showing that the requested rates are in line with those
> prevailing in the community." *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d
> 1186, 1203 (10th Cir.1998). In order to satisfy her burden, plaintiff must
> produce "satisfactory evidence—in addition to the attorney's own
> affidavits—that the requested rates are in line with those prevailing in the
> community for similar services by lawyers of reasonably comparable skill,
> experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n. 11, 104
> S.Ct. 1541, 79 L.Ed.2d 891 (1984).

Judge Brimmer found that given the complexity of the subject matter, the high stakes in the case

and the contentiousness of the dispute even the upper end range of rates were reasonable. *Biax

Corp.*, at *7.  This case is similarly complex, high stakes and, for this Discovery Violation,

contentious. This is not a straight forward breach of contract case. It is a complex – multi-plaintiffs

mass action for breaches of fiduciary duty and constructive fraud. It involves multiple affiliated

entities under  Marriott Ownership Resorts, Inc. – the world's leading public timeshare company.

The successful plaintiff/fees applicant in *Biax* supported their requested rates with a 2010 National

Law Journal ("NLJ") billing survey – which nine years ago reported that Denver firms billed

between $285 and $810 per hour for partners and between $170 and $530 per hour for associates.

A copy of a more recent survey NLJ costs $800— Plaintiffs would rather not purchase it and not

litigate the issue of hourly rates when Greenberg Traurig rates are on par with or higher than those

sought here. It is of course safe to assume that the Denver rates have increased in the last nine

years – since Judge Brimmer referred to it. Plaintiffs have located a 2015 NLJ survey of hourly

rates for 2015 organized by state. The partner high/low/median hourly rate is $893/350/443 for

firms in all of Colorado; for associate's $642/150/325 in all of Colorado. Annexed hereto as

**EXHIBIT "10"** is the 2015 survey table from NLJ.

In *Biax*, Judge Brimmer approved hourly rates of $742 per hour for an 18-year partner and

$740 for a 35-year partner and rates of $450-$510 for 5 to 11-year associates. In 2016, Magistrate

Judge Craig B. Shaffer found reasonable hourly rates for Greenberg Traurig's Denver office on a

patent matter default judgment of $535.00 for an "Of Counsel" with 16 years' experience; $395.00

per hour for an associate with 7 years' experience; and $175.00 for 3 paralegals. rates for attorneys

*Dun-Rite Home Improvements, Inc. v. Dun-Rite, LLC*, No. 15-CV-00316-WYD-CBS, 2016 WL

11384331, at *8 (D. Colo. Feb. 2, 2016), *report and recommendation adopted*, No. 15-CV-0316-

WYD-CBS, 2016 WL 1178276 (D. Colo. Mar. 28, 2016).[6]

The rates sought by Plaintiffs here are commensurate for their far more experienced

lawyers, if not conservative, for the prevailing market rates for complex commercial mass action

litigation in the United Stated District Court for Colorado. Messrs. Ferguson, Reiser and Meade

have 35, 33- and 26-years' experience, respectively and have all gained experience in the complex

area of hospitality, timeshare and condo hotel fraud and breach of fiduciary duty cases against

---

[6] Rate of $550 per hour for partner in a fairly personal injury case (inhalation of popcorn chemicals) approved 6 years ago in 2013 by Senior Wiley Y. Daniel. This is not a personal injury case. See *Watson v. Dillon Companies, Inc.*, No. 08-CV-00091-WYD-CBS, 2013 WL 4547521, at *3 (D. Colo. Aug. 28, 2013).

major hospitality industry companies. As noted in the chart below and in the Declarations, certain hourly rates charged by California-based lawyers are significantly higher and have recently been approved in a California federal court (see fn 8, Ex 16).

In the event that the Marriott Defendants want to oppose and litigate hourly rates for some reason, Plaintiffs reserve the right to call an expert witness or provide more and expensive survey data. Plaintiffs assert they have provided ample support that rates sought are at the mid or lower ranger for similarly experienced attorneys.

### g.    Firms' Detailed Billings for Hours Reasonably Expended

In the Ferguson Declaration, Reiser Declaration and Meade Declaration, Plaintiffs have provided information relating to billing practices and the tasks undertaken in connection with Marriott's failure to disclose or produce the Affiliation Agreement. These firms and the Gibbs Law Group have run their billing systems and searched for and extracted the tasks related to those allowed in the Sanctions Orders. Plaintiffs' counsel then worked to exclude certain tasks and to reduce the hours actually expended to arrive at an amount reasonably expended in litigating the cascade of issues that are occurring as a result of Marriott's discovery violation. These reductions have been significant and result in a conservative amount of reasonably expended hours.

As set forth in the Ferguson Declaration, Mr. Ferguson then did a final "winnowing" and his firm took all the billing data and placed them into Excel Spreadsheet for ease of reference and calculation.

EXHIBITS "11", "12", and "13" are Spreadsheets containing Ferguson Firm's, Reiser Law's and Meade Firm's relevant and detailed time entries in chronological order, by timekeeper, with a description of the work performed and the time spent. The hourly rate was applied to arrive

at the fees sought for that timekeeper – and those are tallied. These Spreadsheets contain the single

best and simplest manner of displaying all work and fees generated by each time keeper on a given

day – from March 13, 2018 through December 31, 2018.[7] Due to time constraints, many tasks and

hours spent by time keepers are not being included or sought here so as to simplify and speed the

process for the Court  In addition, the Ferguson Firm has submitted a separate Spreadsheet for the

hours and fees sought in connection with this Fees Application  - annexed hereto as **EXHIBIT "15"**.

**h.**     **Summary - Attorney and Paralegal Hours Reasonably Expended and Amounts to be Awarded for Marriott's Discovery Violation**

A summary of the hours and hourly rates set out in Exs. 11 through 14 sought for the

lawyers and paralegals who have been primarily involved with the issues and discovery relating

to Marriott's Discovery Violation and failure to produce the Affiliation Agreement follows:

| Lawyer/Paralegal | Experience (Years) | 2017-8 Rates – Range | *Conservative Prevailing Market Rate for this case* | No. Hours Reasonably Expended @ Rate = FEES Sought |
|---|---|---|---|---|
| Matthew Ferguson | 35 | $495-$595(Aspen, Colorado and New York) | $650 | $71,890 |
| Lucie Riviere/Paralegal with French and U.S. Law Degrees/LLM | 5 | $145-160 (Colorado) | $175 | $2,275 |
| Michael Reiser | 33 | $740[8]- $850 (California) | $650 | $48,815 |

---

[7] A separate spreadsheet is for the fees incurred for this motion is set forth below.

[8] Rate approved in *Beaver v. Tarsadia Hotels*, , No. 11-CV-01842-  GPC-KSC  Order at p. 32. (D. California. Sep. 28, 2017) (a complex commercial class action involving hospitality industry). A copy of U.S. Distinct Court Judge Gonzalo P. Curiel September 28, 2017. Order is annexed hereto as **EXHIBIT "15"**.

| Michael Reiser, Jr. | 1 | $225[9] (California) | $225 | $7,200 |
|---|---|---|---|---|
| Tyler Meade | 26 | $725[10]-$850 (California) | $650 | $8,353 |
| Michael Schrag | 23 | $720 [11] -$800 (California) | $650 | $3,965 |
| Linda Lam | 5 | $395.00 [12] (California) | $385 | $245 |
| **Fees Total** | | | | **$142,743** |

i.    **Summary - Attorney and Paralegal Hours Reasonably Expended and Amounts to be Awarded for this Fee Application**

Plaintiffs' fees and costs in connection with this Fee Application should also be awarded. All fee applications are time consuming. This Fee Application is no exception.  Mr. Ferguson, MCF Law and paralegal Lucie Riviere took the laboring oar in preparing this Fee Application. Each of the firms worked on it also. The expenditure of time on tasks related to this motion are set forth below. This Court has recognized that the time and fees can be significant if awarded those fees. In *Biax Corp.*, 2013 WL 4051908, at *1, the prevailing parties' motions included a separate request for $105,529 in attorneys' fees for a $660,044 application and $56,522.06 for a $1,226,508.71 application.   Judge Brimmer awarded those fees. Plaintiffs' fees for this Fee Application should likewise be awarded.

---

[9] Same.
[10] Same.
[11] Same.
[12] Same.

| Lawyer/Paralegal | Experience (Years) | 2017-8 Rates -- Range | Prevailing Market Rate for this case | No. Hours Reasonably Expended @ Rate = Fees Sought |
|---|---|---|---|---|
| Matthew Ferguson | 35 | $495-$595(Aspen, Colo) | $650 | $27,235 |
| Lucie Riviere/Paralegal with French and U.S. Law Degrees/LLM | 5 | $145-160 (Colo). | $175 | $7,647.5 |
| **Total** | | | | **$38,882.5** |

Plaintiffs' attorneys' fees are reasonable given the prejudice suffered by Plaintiffs due to the Marriott Defendants' violation of Rule 26. The hours they were forced to spend on this issue were far greater than captured here.  At every step, Plaintiffs' attorneys attempted to curb unnecessary costs and fees, while at the same time advocate for their clients and prosecute this case in the face of a discovery process they contend has been corrupted. Likewise, the hourly rates of Plaintiffs' attorneys and paralegals are reasonable given the experience and location of the professionals.

## IV.   CONCLUSION

Plaintiffs' attorneys' fees and costs are recoverable in connection with the Sanctions Order. Plaintiffs have provided a detailed description of attorneys' and paralegals' time spent and costs/expenses incurred in connection with Marriott's Discovery Violation -- excluding the Affiliation Agreement Sanctions Motion.  They are summarized here:

| TYPE | FEES AMOUNT | COSTS AMOUNT | |
|---|---|---|---|
| Attorneys' Fees — Discovery Violation | $142,743 | | |
| Attorneys' Fees — Fee Application | $38,882.50 | | |
| Costs — Second Depositions | | $19,610.38 | |
| Costs — First Depositions (1/2) | | $13,524.98 | |
| **TOTAL** | **$177,626.50** | **$33,134.98** | **$210,761.48** |

Dated: January 14, 2019

**REISER LAW, P.C.**

___/s/ Michael J. Reiser_____
Michael J. Reiser, # 16161
1475 N. Broadway, Suite 300
Walnut Creek, CA 94596
Telephone: (925) 256-0400
E-mail: michael@reiserlaw.com

**GIBBS LAW GROUP, LLP**

___/s/ Michael L. Schrag_____
Michael Schrag (CA State Bar # 185832)
Linda Lam (CA State Bar# 301461)
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: (510) 350-9718
E-mail: mls@classlawgroup.com
E-mail: lpl@classlawgroup.com

**THE MATTHEW C. FERGUSON LAW FIRM, P.C.**

___/s/ Matthew C. Ferguson_____
Matthew C. Ferguson, #25687
119 South Spring, Suite 201
Aspen, Colorado 81611
Telephone: (970) 925-6288
E-mail: matt@matthewfergusonlaw.com

**THE MEADE FIRM, P.C.**

___/s/ Tyler Meade_____
Tyler Meade (CA State Bar # 160838)
12 Funston Ave., Suite A
San Francisco, CA 94129
Telephone: (510) 843-3670
E-mail: tyler@meadefirm.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 14th day of January 2019, a true and accurate copy of the foregoing **PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS IN CONNECTION WITH SANCTIONS ORDER** was served via CM/ECF filing system upon following:

Jessica Black Livingston, Esq.
  *jessica.livingston@hoganlovells.com*
Hogan Lovells US LLP
1200 Seventeenth Street, Suite 1500
Denver, Colorado 80202


Naomi G. Beer, Esq.
  *BeerN@gtlaw.com*
Greenberg Traurig, LLP
1200 17th Street, Suite 2400
Denver, Colorado 80202

Ian S. Marx, Esq.
  *MarxI@gtlaw.com*
Philip R. Sellinger, Esq.
  *SellingerP@gtlaw.com*
Greenberg Traurig, LLP
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932


                              */s/ Lucie Riviere*
                              Lucie Riviére


4837-9399-6165, v. 3