# EXHIBIT L

## IN THE UNITED STATE DISTRICT COURT
## DISTRICT OF COLORADO

Civil Action No. 1:16-cv-01301-PAB-GPG

RCHFU, LLC, a Colorado limited liability company,

et al,

Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, a Delaware corporation,

et al,

Defendants.

EXPERT REPORT OF MARK S. DUNEC

Dated as of October 26, 2018

Table of Contents

|     |     | Page No. |
| --- | --- | --- |
| I. | Scope of Retention and Compensation | 2 |
| II. | Summary of My Experience and Qualifications | 2 |
| III. | General Case Background | 4 |
| IV. | Bases of Opinions | 6 |
| V. | Conclusion | 11 |
| VI. | Appendix A: Documents Relied Upon | 13 |
| VII. | Appendix B: Curriculum Vitae and prior testimony | 15 |

I.   **Scope of Retention and Compensation**

I have prepared this report ("Report") at the request of Greenberg Traurig LLP ("Counsel") with regard to Counsel's representation of Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., D/B/A Marriott Vacation Club International ("MVCI"), The Ritz-Carlton Management Company, L.L.C. ("Ritz-Carlton Management"), The Cobalt Travel Company, LLC ("Cobalt"), and The Lion & Crown Travel Co., LLC ("Lion & Crown")(these five defendants collectively, "MVW Defendants").

I was retained to provide my expert consulting services and testimonial opinions on John C. Vaughan's and Christopher T. Donaldson's (collectively, "Appraisers") summary appraisal report, dated December 16, 2013, for 65 Fractional Ownership Units ("Subject Units") situated within the The Ritz-Carlton Club, Aspen Highlands in Aspen, CO (the "Cushman Appraisal") and the accompanying workfiles (i.e. supporting documents).

The opinions and conclusions expressed in this Report are based on my review of the documents as detailed in Appendix A including but not limited to the Cushman Appraisal and supporting documents. In addition, along with my colleague, Alan Tantleff, I completed a site inspection from July 23 through July 25, 2018. My opinions and conclusions are further based on my 17-year career as a real estate and finance professional, and my knowledge of the hospitality, travel, and leisure industry, including the fractional interest industry. I was supported in the analysis of this matter and preparation of this report by a team of FTI real estate professionals whom I have supervised as part of this engagement. FTI Consulting is being compensated for my time based on an hourly rate of $574 and others working on this assignment at my direction at lesser rates. This compensation is not contingent upon any of my findings or the outcome of this case.

2

I reserve the right to update and supplement this Report as additional materials and information are provided or otherwise made available to me.

## II. Summary of My Experience and Qualifications

I am a Managing Director in the Corporate Finance/Restructuring Practice of FTI Consulting and a member of the Real Estate Solutions Practice. I develop strategic real estate operating and capital markets solutions for both domestic and international clients.

I have over seventeen years of experience in the real estate industry, specializing in underwriting pro forma cash flow, valuation, acquisition due diligence, financing, recapitalization, and asset and entity restructuring and repositioning. I have worked on complex real estate advisory projects across the United States as well as the Bahamas, Costa Rica, Croatia, England, Ireland, Panama, and the United Arab Emirates.

I received a bachelor's degree in history from Toronto's York University and a Masters of Business Administration, with a concentration in finance, from New York's Pace University. I am a state certified general real estate appraiser and hold an MAI designation with the Appraisal Institute, and an MRICS designation with the Royal Institution of Chartered Surveyors.

In addition to my work of providing valuation, litigation support and expert testimony services for clients, I teach undergraduate real estate courses as an adjunct professor at Montclair State University. Outside of my professional and academic careers, my civic involvement includes my role as a Commissioner of the Essex County Improvement Authority and Chair, of the Metro New Jersey Chapter of the Appraisal Institute's Government Relations Committee.

I have been qualified as an expert witness and have presented testimony in state courts. Attached as Appendix B of this Report is my curriculum vitae and list of prior testimony.

### III. General Case Background

This case concerns 1/12th fractional ownership interests in residential units of the Ritz-Carlton Club, Aspen Highlands, located at 75 Prospector Road, in Aspen, CO ("RCC, Aspen Highlands").[1] These units are part of Aspen Highlands Village, which also includes 36,000 square feet of retail area, 31 residential lots, 32 townhomes, 73 lodge condominiums, a pedestrian mall and 12,000 square feet of skier facilities (the "Project"). The Project was completed in 2001.[2] The Ritz-Carlton Development Company, the developer, marketed the residential units as 1/12th fractional ownership interests, entitling owners to 4 weeks of use per year[3] (owners are also granted certain rights to exchange their allotted use for other specified vacation experiences).

*Governance of the Property*

In January 2001, the homeowners' association, Aspen Highlands Condominium Association, appointed Ritz-Carlton Management as "The Club Manager". The Club Manager entered into an affiliation agreement with The Cobalt Travel Company ("Cobalt") to serve as the Program Manager of the Ritz-Carlton membership program. Cobalt operates the reservation system by which the members access the RCC Aspen Highlands and other inventory available through The Ritz-Carlton Destination Club, and has the sole authority to affiliate with other locations.[4]

---

[1] Cushman & Wakefield Summary Appraisal of Real Property BFLT, December 16, 2013, 1 – 2.
[2] https://www.hines.com/properties/aspen-highlands-village-aspen
[3] Fifth Amended Complaint, March 31, 2017, 11.
[4] Fifth Amended Complaint, March 31, 2017, 69-73; see also affiliation agreements referenced in footnotes 5 and 6.

4

In January of 2010, Cobalt entered into an agreement with Lion & Crown, affiliating The Lion & Crown Exchange Program with The Ritz-Carlton Club Membership Program.[5] In 2013, Lion & Crown entered into an affiliation agreement with Marriott Resorts, Travel Company, Inc. (the "MVC Affiliation"), which provided the opportunity for Members of RCC, Aspen Highlands to elect to exchange some or all of their allocated weeks at RCC, Aspen Highlands for points in the Marriott Vacation Club Destinations Exchange Program ("MVCD Exchange Program") to receive an allocation of points to use in the MVCD Exchange Program ("MVC Points").[6] By using MVW Points, RCC, Aspen Highlands Members have the opportunity to secure accommodations at various MVCI timeshare resorts or accommodations at non-MVCI timeshare resorts. RCC, Aspen Highlands Members who exchange through the MVCD Exchange Program are also able to utilize MVC Points that they receive for their exchanges for other vacation experiences such as cruises and luxury event tickets.[7]

*Summary of Opinions*

The focus of my analyses and opinions is the Cushman Appraisal and its accompanying workfiles (i.e. supporting documents). My analyses and opinions are based upon my knowledge, experience, and judgement in matters relating to appraising real estate.

1. The Cushman Appraisal made a claim that the conversion to a points system and the affiliation with MVC had a negative impact on the value of the Subject Units without providing analysis or support.

---

[5] The L&C Affiliation Agreement providing Cobalt Members access to The Lion and Crown Exchange Program and L&C Members access to The Ritz-Carlton Club Membership Program (dated 8/8/10)

[6] Affiliation Agreement Providing Members Enrolled With L&C Access to MVCD Program and MRTC D/B/A MVC Exchange Company Members Access to Accommodations Received From Participating L&C Members and L&C (dated 11/14/13)

[7] *Id.*

5

2. The Cushman Appraisal made a claim that the conversion to a points system and the affiliation with MVC had a negative impact on the value of the Subject Units that is not supported by their workfile. This constitutes a failure to comply with the obligations of the applicable Uniform Standards of Professional Appraisal Practice ("USPAP") Record Keeping Rule, and a violation of the USPAP Ethics Rule.

## IV. <u>Bases of Opinions</u>

1. <u>Messrs. Vaughan and Donaldson made a claim that the Marriott Vacation Club Destinations system had negatively impacted the value of the Subject Units without adequate support or analysis.</u>

*Appraisers Make Unsupported Claims as to Marketability and Value*

In the Cushman Appraisal, Messrs. Vaughan and Donaldson claim that "Subsequent to the sell out of this development, the Ritz-Carlton Club was converted to a points system, and this conversion has had a severely negative impact on demand for fractional interests at Ritz Carlton Club properties." They state that "The conversion of the Ritz Carlton Club to a points system exacerbate[d] the negative attributes that impair the marketability of the subject units."[8] Futhermore, the report adds, "Overall, the conversion to a points system and the integration of the Marriott Vacation Club has had a negative impact on the market value of existing fractional interests in the Ritz Carlton Club."[9] First, the Appraisers fail to distinguish, and actually confuse, the use of a points based use system for the Ritz-Carlton Clubs only, which was ended by 2012, and the MVC/The Ritz-Carlton Club Aspen Affiliation which, I have been advised, was fully implemented in December of 2014. The discontinued points based use system for the Ritz-

---

8 Cushman & Wakefield Summary Appraisal of Real Property BFLT, December 16, 2013, 18.
9 Cushman & Wakefield Summary Appraisal of Real Property BFLT, December 16, 2013, 19.

Carlton Clubs did not permit members of the MVC Affiliation to access the Ritz-Carlton Clubs. Second, the Appraisers fail to provide any evidence of proper research and/or analysis to support this claim of impairment in the Report. Among other things, the Appraisers failed to make a physical inspection of the Project. They made insufficient effort to evaluate comparables, other than to compare sales prices of comparable units within the same development. They did not evaluate sales performance, developer inventory pricing, or resale pricing for existing Fractional Interest projects in Aspen. Finally, the Appraisers failed to account for market trends or the impact of market forces on the value of the subject units. They did not consider how the sales decline in the Project compared to industry trends in other Fractional Interest project on a per share, per week, or per square foot basis.

With regard to comparables, the Appraisers note that sale prices of comparable units at the Project indicated a wide range in price from January 2013 to September 2013 as a result of "the desirability of a specific units calendar and that these sales reflect the impact of the changes in the Ritz Carlton Club that have been implemented (conversion to the points system, which opened the fractional interests at the subject club to the Marriott Vacation Club system)."[10] However, as noted above, use of a points based use system for the Ritz-Carlton Clubs was ended by 2012, and had nothing to do with the MVC Affiliation which took place after this time period (January 2013 to September 2013) referenced in the Cushman Appraisal. Moreover, in addition to confusing and conflating the Ritz-Carlton Club points system (that was ended by 2012) with the MVC/The Ritz-Carlton Club Aspen Highlands Affiliation that was fully implemented in December of 2014, Messrs. Vaughan and Donaldson offer no basis or qualifications for this

---

10   Cushman & Wakefield Summary Appraisal of Real Property BFLT, December 16, 2013, 25, 26.

claim in the Cushman Appraisal, including no discussion regarding the timing of the conversion to and integration of the points system relative to historical sales, or the nature of the sales (e.g. whether the sellers were under financial distress, or other motivating factors affecting price), or the degree to which the points system arguably impacted the value of the Subject Units. Further, Messrs. Vaughan and Donaldson fail to note whether the list of historical sales provided in the Cushman Appraisal is an exhaustive list of all recent sales at the Subject Property. Thus, these conclusions are not only based on confusion of the separate points system for the Ritz-Carlton Clubs and the MVC Affiliation, they are also based on a flawed and insufficient methodology.

In addition, there is no review of the factors of historical maintenance costs and real estate taxes at the subject property or an analysis of historical listing/sale prices weighed against these burdens.

In short, Messrs. Vaughan and Donaldson appear to be suggesting that the points conversion for the Ritz-Carlton points system, as opposed to the MVC Affiliation, resulted in a stigma attached to the Subject Units that negatively impacted the value of the Subject Units but, in any event, they provide no analysis or support for their position.

*Failure to Provide Support For Their Claims Is a Violation of Industry Standards*

To the extent Appraisers seek to claim impairment to marketability and value due to stigma, they must provide support for the claim, not just as a measure of their expertise and competency, but because such support is a requirement of the industry standards set forth in The Uniform Standards of Professional Appraisal Practice ("USPAP").[11]   A credible valuation cannot be based upon unsupported opinion – either the opinion of the appraiser or of others.

---

11    As defined in USPAP 2012-2013 Edition, p. U-2.

"AO-9 [Advisory Opinion 9], states that the analysis of the effects of environmental stigma on property value must not be based on 'unsupported opinion or judgement.' This would include unsupported opinions of others (including survey respondents) that are relied upon by the appraiser."[12] Simply put, the industry recognizes that the presence of a potentially adverse condition does not necessarily cause adverse effects on value.[13] Accordingly, appraisal professionals, who adhere to established standards and claim that a factor – environmental or otherwise – significantly impacts property value, substantiate their claim with a form of analysis. Such forms of analysis may include: a regression analysis, historical sales comparisons, or some other replicable analysis. As evidenced by their failure to perform any sort of analysis related to their claims of detrimental factors impacting value, Messrs. Vaughan and Donaldson did not properly assess the Subject Units' value.[14] This failure calls into question the integrity of theCushman Appraisal.

> 2. <u>The Cushman Appraisal contains several claims relating to the Appraisers' opinion of value of the Subject Units that are unsupported by their workfile.[15] This constitutes a failure to comply with the obligations of the applicable USPAP Record Keeping Rule, and is a violation of the USPAP Ethics Rule.[16]</u>

---

[12] Jackson, Thomas O., Pitts, J., & Noorwood, S. (2012). Advisory Opinion 9 and Contingent Valuation. The Appraisal journal, (Summer 2012), p. 206. The Appraisal Journal is the Appraisal Institute's quarterly peer-reviewed journal and generally considered the foremost technical and academic journal in the appraisal industry.

[13] Roddewig, Richard J. & Cole, Rebel A. (2014). Real Estate Value Impacts from Fracking: Industry Response and Proper Analytical Techniques. Real Estate Issues (Volume 32, Number 3), p. 10.

[14] I also note that Messrs. Vaughan and Donaldson did not personally inspect the property or the surrounding area. While physical inspection of the subject property is not a requirement under USPAP guidelines, it often provides significant insight into the property. This is particularly the case with hospitality assets such as the Subject Units, for which value relies upon the specific neighborhood attributes, as only truly captured in a physical site inspection and market tour.

[15] Cushman & Wakefield Summary Appraisal of Real Property BFLT, December 16, 2013.

[16] Appraisal Standards Board, Uniform Standards of Professional Appraisal Practice, 2012-2013 Edition, p. U-10 requires an appraiser to "prepare a workfile for each appraisal." The workfile must include all data, information, and documentation necessary to support the appraiser's opinions and to show compliance with USPAP, or references to the location(s) of such other documentation."

*USPAP Record Keeping and Ethics Rules Require Maintenance of Adequate Work Files*

The Appraisal Foundation, the authority in professional valuation, sets the congressionally authorized standards for appraiser qualifications and appraisal reports to ensure consistent and objective reporting. These standards are established through USPAP– "the generally recognized ethical and performance standards for the appraisal profession in the United States."[17] Congress adopted USPAP as the standard for all types of appraisal services, including real estate, though The Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA").[18]

The 2012-2013 edition of USPAP – the applicable edition for the Cushman Appraisal – requires compliance with the "Record Keeping Rule." The Record Keeping Rule "establishes the workfile requirements for appraisal, appraisal review, and appraisal consulting assignments."[19] The rule requires preparation of workfiles for all appraisals, reviews, and consulting assignments.[20] USPAP requires workfiles to include all information and documentation necessary to support the opinions and conclusions. Failure to comply with the Record Keeping Rule, knowingly or willfully, is in violation of the Ethics Rule. The Appraisal Foundation established the Ethics Rule to preserve public trust among professional appraisers and ensure objectivity and independence in appraisal services.

---

[17] The Appraisal Foundation, "What is USPAP?" (2018); http://www.appraisalfoundation.org/imis/TAF/Standards/Appraisal_Standards/Uniform_Standards_of_Professional_Appraisal_Practice/TAF/USPAP.aspx?hkey=a6420a67-dbfa-41b3-9878-fac35923d2af, accessed May 21, 2018.

[18] Appraisal Standards Board, Uniform Standards of Professional Appraisal Practice, 2012-2013 Edition.

[19] Appraisal Standards Board, Uniform Standards of Professional Appraisal Practice, 2012-2013 Edition, p. U-6

[20] USPAP defines workfiles as "documentation necessary to support an appraiser's analyses, opinions, and conclusions."; see Appraisal Standards Board, Uniform Standards of Professional Appraisal Practice, 2012-2013 Edition, p. U-5

*Appraisers' Failure to Maintain a Workfile Violates the USPAP Ethics Rule*

FTI was provided with the workfiles prepared in conjunction with the development of the Cushman Appraisal. The workfiles exclude all sources and raw forms of the data presented in the Cushman Appraisal. As such, the workpapers fail to support any and all of the Appraisers' analyses, opinions, and conclusions. The result of this failure is the noncompliance with the Record Keeping Rule, the Ethics Rule, and USPAP, despite the Appraisers' claim that the Cushman Appraisal "has been prepared in compliance with the Uniform Standards of Professional Appraisal Practice (USPAP)" in their December 16, 2013 transmittal letter.[21]

## V.   Conclusion

Messrs. Vaughan and Donaldson made an unsupported claim that the conversion to a points system and the integration of MVC had a negative impact on the value of the Subject Units. Furthermore, the Cushman Appraisal contains several claims relating to the Appraisers' opinion of value of the Subject Units, that are unsupported by their workfile. This constitutes a failure to comply with the obligations of the applicable USPAP Record Keeping Rule, and a violation of the USPAP Ethics Rule. As evidenced by their failure to perform any sort of analysis related to their claims of detrimental factors impacting value, Messrs. Vaughan and Donaldson did not properly assess the Subject Units' value.

\* \* \*

---

21   Cushman & Wakefield Summary Appraisal of Real Property BFLT, December 16, 2013, Transmittal Letter.

The opinions, analyses, and calculations contained in this Report are based on the information available to me as of October 26, 2018. I reserve the right to modify or supplement this Report if new or different information is made available to me.

Respectfully submitted,

*[signature: Mark Dunec]*

Mark S. Dunec

October 26, 2018

## VI. Appendix A: Documents Relied Upon

1. Fifth Amended Complaint and Jury Demand
2. Defendants Motion to Dismiss Fifth Amended Complaint
3. Defendants Reply Brief in support of Motion to Dismiss
4. Plaintiffs Opposition to Defendants Motion to Dismiss Fifth Amendment Complaint
5. Cushman & Wakefield Summary Appraisal of Real Property BFLT, December 16, 2013
6. Appraisal Standards Board, "Uniform Standards of Professional Appraisal Practice, 2012-2013 Edition"
7. The Appraisal Journal, Summer 2012, "Advisory Opinion 9 and Contingent Valuation"
8. Real Estate Issues, Volume 39, Number 3, 2014, "Real Estate Value Impacts from Fracking: Industry Response and Property Analytical Techniques"
9. The Appraisal Foundation, "What is USPAP"
10. Deposition of Christopher T. Donaldson, May 23, 2018
11. The L&C Affiliation Agreement providing Cobalt Members access to The Lion and Crown Exchange Program and L&C Members access to The Ritz-Carlton Club Membership Program (dated 8/8/10)
12. Affiliation Agreement Providing Members Enrolled With L&C Access to MVCD Program and MRTC D/B/A MVC Exchange Company Members Access to Accommodations Received From Participating L&C Members and L&C (dated 11/14/13)
13. Acknowledgment of and Joinder to Affiliation Agreement between The Lion & Crown Travel Co., LLC and Marriott Resorts, Travel Company, Inc. (dated April 04/24/14)

1. Cushman Workfiles

| Document | Bates / File Name |
|---|---|
| Cushman and Wakefield Engagement Letter | 246948562_v 1_1. Cushman I 000001-000005 |
| Kapalua Restricted Appraisal Report | 246948563_v 1_2. Cushman I 000006-000027 |
| Kapalua Restricted Appraisal Report | 246948564_v 1_3. Cushman I 000028-000047 |
| Kapalua Summary Appraisal Report | 246948565_v 1_4. Cushman I 000048-000150 |
| Kapalua Income Capitalization Approach | 246948569_v 1_5. Cushman I 000151-000185 |
| Cushman and Wakefield Engagement Letter | 246948570_v 1_6. Cushman I 000186-000190 |
| Aspen Summary Appraisal Report | 246948572_v 1_7. Cushman I 000191-000266 |
| Ritz Carlton Jupiter Summary Appraisal Report | 246948573_v 1_8. Cushman I 000267-000370 |
| Cushman and Wakefield Engagement Letter | 247001318_v 1_10-18-2013 Cushman proposal letter re Bleu Florida Land Trust |
| Appraisal BFLT Aspen Holdings | 247001319_v 1_Appraisal BFLT Aspen Holdings |
| Appraisal BFLT RCC Jupiter Holdings | 247001321_v 1_Appraisal BFLT RCC Jupiter Holdings |
| Appraisal Ritz Carlton Residences at Kapalua Bay | 247001322_v 1_Appraisal Ritz Carlton Residences at Kapalua Bay |
| Appraisal BFLT Aspen Holdings | 247003245_v 1_CUSHMAN II 000140-000208 |
| Appraisal BFLT Aspen Holdings | 247003248_v 1_CUSHMAN II 000209-000259 |
| Confidentiality Agreement | 247003251_v 1_CUSHMAN II 000260-000265 |
| Unit prices | 247003253_v 1_CUSHMAN II 000266-000267 |
| RCC Broken Unit Detail (Aspen & Jupiter) | 247003255_v 1_CUSHMAN II 000268-000271 |
| Cushman and Wakefield Engagement Letter | 247003256_v 1_CUSHMAN II 000272-000277 |
| Dancing Bear Summary Appraisal Report | -247003258_v 1_CUSHMAN II 000278-000352 |
| RCC Broken Unit Detail (Aspen & Jupiter) | 247003260_v 1_CUSHMAN II 000353-000356 |
| Truckee Summary Appraisal Report | 247003263_v 1_CUSHMAN II 000357-000411 |
| Truckee Summary Appraisal Report | 247003266_v 1_CUSHMAN II 000412-000466 |
| Truckee Summary Appraisal Report | 247003270_v 1_CUSHMAN II 000467-000527 |
| Appraisal BFLT Aspen Holdings | 247003273_v 1_CUSHMAN II 000528-000602 |
| Ritz Carlton San Francisco Summary Appraisal Report | 247003277_v 1_CUSHMAN II 000603-000683 |
| RCC Broken Unit Detail (Aspen & Jupiter) | 247003279_v 1_CUSHMAN II 000684-000687 |
| Ritz Carlton San Francisco Summary Appraisal Report | 247003282_v 1_CUSHMAN II 000688 |
| Appraisal BFLT Aspen Holdings | 247003286_v 1_CUSHMAN II 000001-000081 |
| Appraisal BFLT Aspen Holdings | 247003289_v 1_CUSHMAN II 000082-000139 |
| Appraisal BFLT Aspen Holdings | 247003335_v 1_13-TT1202-053404-3 CD Edits |
| Appraisal BFLT Aspen Holdings | 247003336_v 1_13-TT1202-053404-3 |
| BFLT Historical Sales Comparison 09-25-13 for CW | 247003337_v 1_BFLT Historical Sales Comparison 09-25-13 for CW |
| BFLT Historical Sales Comparison 09-25-13 for CW | 247003338_v 1_BFLT Historical Sales Comparison 09-25-13 |
| Dancing Bear Self Contained Appraisal Report | 247003339_v 1_Fractional Template from Dancing Bear |
| Inventory Detail from Stone 10-29-13 | 247003340_v 1_Inventory Detail from Stone 10-29-13 |
| RCDC Inventory Breakdown for CW 09-11-13 | 247003341_v 1_RCDC Inventory Breakdown for CW 09-11-13 |
| Schedule A to LOE | 247003343_v 1_Schedule A to LOE |
| Complaint | 247060679_v 1_CUSHMAN III 000001-000187 |
| Complaint | 247060680_v 1_CUSHMAN III 000001-000187 |
| Emails from Cushman and Wakefield Production | 247077506_v 1_Emails from Cushman and Wakefield Production |

14

VII.  **Appendix B: Curriculum Vitae and prior testimony**

# Mark Dunec

**Managing Director**

New York, NY and Roseland, NJ
+1 973.852.8241
mark.dunec@fticonsulting.com

## About

Mark Dunec is a Managing Director at FTI Consulting and is based in New York City and Roseland, New Jersey. Mr. Dunec is a member of the Real Estate Solutions group where he develops strategic real estate operating and capital markets solutions for both domestic and international clients. He has over 18 years of experience in the real estate industry, specializing in underwriting pro forma cash flow, valuation, acquisition due diligence, financing, recapitalization, asset and entity restructuring and repositioning. Since joining the firm, Mr. Dunec has worked on complex real estate advisory projects across the United States as well as Croatia, England, Ireland, Panama and United Arab Emirates.

Prior to joining FTI Consulting, Mr. Dunec was a Financial Analyst in Lend Lease's Project Finance Group where he led the underwriting efforts for acquisitions and developments totaling over $500 million. Mr. Dunec was also a Real Estate Analyst for Shurgard Storage Centers – a self-storage REIT prior to the acquisition by Public Storage. He was responsible for over $70 million of acquisition and re-development capital of the Company's portfolio. Mr. Dunec began his career as an associate in KPMG's Compensation & Benefits Practice specializing in executive compensation and the calculation of golden parachutes.

Throughout his career, Mr. Dunec has created and maintained pro forma cash flow models, calculated various sensitivity analyses, determined the profitability of investments and assisted with the management of the entitlement, closing and due diligence processes. He has in depth experience across the various property types including office, retail, industrial, multi-family, hotels, master planned communities and self-storage. Mr. Dunec also has extensive experience encompassing the life cycle of tax liens. He has been involved in the purchasing, managing and redemptions of tax lien portfolios.

A designated member of the Appraisal Institute (MAI) and Royal Institution of Chartered Surveyors (MRICS), Mr. Dunec earned an M.B.A in finance from New York's Pace University and a B.A. in history from Toronto's York University. Mr. Dunec holds certified general appraiser licenses in Connecticut, Georgia, New Jersey, New York, Pennsylvania, Tennessee and Virginia.

## Disclosure of Deposition / Trial Testimony:

- Trump Taj Mahal Associates, LLC vs. City of Atlantic City, New Jersey, Docket Nos.: 7574-2008; 10192-2009; 584-2010
- Trump Marina Associates, LLC vs. City of Atlantic City, New Jersey, Docket Nos.: 7488-2008; 10454-2009; 6062-2010
- Trump Plaza Associates, LLC vs. City of Atlantic City, New Jersey, Docket Nos.: 7488-2008; 10454-2009; 6064-2010
- Bank of America, N.A. vs. Stonestreet Hospitality Realty Company, LLC, Superior Court Judicial District of New London at New London, Docket. Nos. KNL-CV-16-6026981-S

### Certifications
Appraisal Institute (MAI)
Royal Institution of Chartered Surveyors (MRICS)
Certified General Real Estate Appraiser, Connecticut, Georgia, New Jersey, New York, Pennsylvania, Tennessee and Virginia

### Professional Affiliations
Adjunct Professor:
Montclair State University

Commissioner:
Essex County Improvement Authority

Legislative Member:
National Association of Industrial and Office Properties (NAIOP)

Board Member:
Appraisal Institute's Metro New Jersey Chapter

### Education
B.A. in History, York University, Toronto, Canada

M.B.A. in Finance, Pace University, New York, NY



FTI CONSULTING

1