# EXHIBIT 4

# THE RITZ-CARLTON MANAGEMENT COMPANY, L.L.C.

## MANAGEMENT AGREEMENT

THIS MANAGEMENT AGREEMENT (the "Agreement"), made and entered into this 12th of January 2001, by and between THE RITZ-CARLTON MANAGEMENT COMPANY, L.L.C., a Delaware limited liability company authorized to do business in the State of Colorado (hereinafter referred to as "Management Company") and ASPEN HIGHLANDS CONDOMINIUM ASSOCIATION, INC., a Colorado nonprofit corporation (hereinafter referred to as "Association"), which said terms shall be deemed to extend to and include the successors and assigns of the said parties hereto.

WHEREAS, the Association is the corporate entity created pursuant to the Colorado Revised Nonprofit Corporation Act (Title 7, Articles 121-137, Colorado Revised Statutes, as amended and supplemented from time to time) and the Colorado Common Interest Ownership Act (Sections 38-33.3–101, et. seq., Colorado Revised Statutes, as amended and supplemented from time to time, the "Condominium Act"), to operate Aspen Highlands Condominiums (the "Condominium"), a mixed use condominium project created under the Condominium Act, pursuant to its Declaration of Condominium for Aspen Highlands Condominiums and exhibits hereto (the "Declaration");

WHEREAS, the Condominium will include three types of condominium units consisting of Deed Restricted Residential Units, Commercial Units and Tourist Accommodation Units;

WHEREAS, Tourist Accommodation Units of the Condominium shall be divided into fractional ownership interests ("Residence Interests") and a portion of the Condominium shall be operated as a fractional ownership interest plan (the "Plan") pursuant to Sections 38-33-110, et. seq., Colorado Revised Statutes, as amended and supplemented from time to time;

WHEREAS, the parties desire through this Management Agreement to provide for the management of the Condominium and the Plan;

NOW, THEREFORE, in consideration of the premises and mutual covenants made herein, the Management Company and the Association agree as follows:

1. <u>Definitions</u>.

    Unless the context would clearly dictate otherwise, the terms utilized herein are as defined in the Declaration, which is hereby incorporated by reference as if fully set forth herein.

2. <u>Appointment and Acceptance of Agency</u>

    The Association hereby employs the Management Company to act on behalf of the Association and its members as the exclusive managing entity of the Condominium and to manage the daily affairs of the Condominium and the Plan, and the Management Company

hereby agrees to so act. In taking any action under this Agreement, the Management Company shall be acting on behalf of the Association, and nothing in this Agreement shall be construed as creating a partnership, joint venture, or any other relationship between the parties to this Agreement, or as requiring Management Company to bear any portion of losses arising out of or connected with the ownership or operation of the Condominium. Neither party shall have the power to bind or obligate the other except as expressly set forth in this Agreement, however, in furtherance of the intentions of the parties hereto, the Management Company is authorized to act with such additional authority and power as may be necessary to carry out the spirit and intent of this Agreement.

3. <u>Term.</u>

The term of this Agreement shall commence either as of the date hereof, the date of recording of the Declaration in the Public Records of Pitkin County, Colorado, or issuance of a certificate of occupancy by Pitkin County, Colorado for the first residential building to be occupied which is subjected to the Declaration, whichever date is the last to occur, and shall continue for a period of five (5) years thereafter. Upon the expiration of said initial five (5) year period, this Agreement shall automatically renew for successive periods of five (5) years each until or unless terminated by a vote a majority of the Residential Directors, a majority of the Commercial Directors and of not less than 60% of the votes entitled to be cast by Owners in the Condominium other than the Declarant as provided in the Declaration. Under no circumstances shall the Association be authorized to terminate this Agreement without such a vote. The Management Company may terminate this Agreement upon ninety (90) days written notice to the Association at any time.

4. <u>Delegation of Authority.</u>

Except to the extent prohibited by applicable law, the Association hereby delegates to Management Company all of the power and authority of the Condominium Association to the extent necessary to perform the Management Company's duties and obligations under this Agreement. The Management Company, on behalf of and at the expense of, the Association, to the exclusion of all other persons including the Association and its members, shall have all the powers and duties of the Executive Board as set forth in the Declaration and the bylaws of the Association (except such thereof as are specifically required to be exercised by its directors or members), and it shall perform, by way of illustration and not of limitation, the following services, the expenses of which will be incurred in substantial conformance with the approved budgets:

(A) Hire, pay, supervise and discharge all persons necessary to be employed in order to properly manage, maintain, administer and operate the Condominium and the Plan. Such persons shall be employees of the Management Company and not employees of the Association or its members. The Management Company shall not knowingly hire any convicted felons for the operation of the Condominium.

(B) Take such action as may be necessary to comply with all insurance requirements affecting the Condominium.

(C) Contract for utilities, repairs, engineering, housekeeping, loss prevention and other services necessary for the management, maintenance, administration and operation of the Condominium and the Plan. Such contracts may be in the name of the Association or the Management Company, as the Management Company may elect.

(D) Purchase, lease or rent, on behalf of the Association, equipment, tools, vehicles, appliances, goods, supplies, furnishings, furniture, and materials as shall be reasonably necessary to perform its duties, including the maintenance, upkeep, repair, replacement, refurbishing and preservation of the Condominium. Purchases shall be in the name of the Management Company or the Association, as the Management Company shall elect.

(E) Place or keep in force all insurance required by the Condominium Act and the Declaration and as the Management Company may deem necessary in its reasonable discretion to be necessary for the protection of a luxury resort; to act on behalf the Association and each Owner; to adjust all claims arising under said insurance policies; to otherwise exercise all of the rights, powers and privileges of the insured parties; to receive, on behalf of the insured parties, all insurance proceeds, subject to the provisions of the Declaration.

(F) Maintain the Association's financial record books, accounts and other records, and as necessary, issue certificates of account to Owners and their Mortgagees, without liability for errors, unless as a result of gross negligence or wilful misconduct or omissions. Such records shall be maintained in accordance with applicable Colorado Revised Statutes at the expense of the Association and at no cost to the Management Company. These books and records shall be reasonably available for inspection by Owners, their Mortgagees and their authorized representatives at reasonable times and with a minimum of seventy-two (72) hours prior written notice. These records also shall be available for inspection by an expert employed by and at the cost and expense of the Association upon seventy-two (72) hours prior written notice and at such reasonable time as the Management Company may agree. Any of the foregoing inspections shall be conducted without cost to the Management Company and without unreasonable disruption to the employees and operation of the Management Company. Any expense associated with copying records shall be a cost of the Association, unless a request is made by an Owner or group of Owners individually, and in such case the cost shall be borne by such Owner(s).

(G) If and so long as required by law or requested by the Executive Board, arrange for an annual independent audit of all the books and financial records of the Plan by a certified public accountant in accordance with generally accepted auditing principles. A copy of the audit shall be forwarded to the officers of the Association, or, if no association exists, the Owner of each Unit shall be notified that such audit is available upon request.

(H) Prepare the itemized annual budget for the Association or revisions to the budget, or a combination thereof, the Management Company determines necessary for submission to the Executive Board. The Management Company shall submit the annual budget including a schedule of maintenance fees for each Unit and Club Dues for each Residence Interest to the Executive Board of the Association, setting forth the anticipated income and expenses of the Condominium and the Plan for the year, and shall specify therein each Owner's share thereof for approval by the Executive Board and the members of the Association in compliance with the Condominium Act. In allocating taxes, special assessments, and Common Expenses to individual Owners of Residence Interests, Commercial Units and Deed Restricted Residential Units, the Management Company shall clearly label the portion of any amounts due which are attributable to ad valorem taxes and special assessments. However, unless otherwise provided by law, ad valorem taxes and special assessments will be billed separately and not as part of the maintenance fee. Should an increase in assessments be required or a special assessment be required during the year, the same shall be recommended to the Executive Board by the Management Company for approval in accordance with the Condominium Act.

(I) Have authority and responsibility to maintain and replace the personal property within the Common Elements and the Tourist Accommodation Units, and to determine the maintenance fee, proration of taxes, and other common expenses applicable to those Common Elements and Tourist Accommodations Units, as defined in and provided for in the Declaration. Except to the extent limited by applicable law, the Management Company shall have sole discretion for making determinations as to replacements of personal property located within such Common Elements and Tourist Accommodations Units, decor, and all other judgments relating to the Limited Common Elements for the Tourist Accommodations Units. Notwithstanding the foregoing, all replacements shall be such as to maintain the standard of quality of the furniture and other personal property and decor of a quality substantially comparable to that contained in such Tourist Accommodations Unit at the time it was committed to the Plan.

(J) Receive and deposit all funds collected from the Owners, or otherwise accruing to the Association, in a special account or accounts of the Management Company in banks, savings and loan associations, or other appropriate financial institutions in the state of Colorado or Florida, or a combination thereof, with suitable designation indicating the custodial nature thereof. Association funds shall not be commingled (i) with funds managed by the Management Company on behalf of other associations; or (ii) with its own funds. Reserves shall be maintained in separate accounts designated for such purposes separate and apart from operating accounts. Alternatively, the Management Company is authorized to invest collected funds on behalf of the Association as approved and directed by the Executive Board; provided, however, that such investments are styled so as to indicate the custodial nature thereof. The Management Company is authorized to draw on the Association accounts for any payments to be made by the Management Company to discharge any liabilities or obligations incurred pursuant to this Agreement, for the payment of the management fee or any other disbursements properly incurred on the Association's behalf in substantial accordance with the provisions of the Association's budget. Additionally, if required,

funds received by the Management Company from Owners of any of the Units for ad valorem taxes or special assessment shall be placed in a separate escrow account if required under applicable Colorado Revised Statutes. Receipt of the foregoing funds by Management Company shall not constitute income to it for income tax purposes, since same is received and held in a custodial capacity only.

     (K)    Cause a representative of its organization to attend membership meetings of the Executive Board of the Association properly called according to bylaws of the Association.

     (L)    Suggest amendments to the Condominium rules and regulations as it deems advisable, in its reasonable discretion, for the use and occupancy of the Condominium for approval by the Executive Board. The Management Company shall have sole authority to promulgate and amend rules and regulations for the Tourist Accommodations Units and Limited Common Elements of the Tourist Accommodations Units subject to the rights of the Tourist Accommodation Directors to revise, repeal or modify such amended rules and regulations and subject to the provisions of the Declaration.

     (M)    Cause such alterations and/or additions to be made to the Condominium, as authorized by the Executive Board of the Association and, when required, by the members.

     (N)    Retain and employ such professionals and such other experts whose services may be reasonably required to effectively perform its duties and exercise its powers hereunder, and to employ same on such basis as it deems appropriate.

     (O)    Contract, upon such terms and conditions and for such purposes as the Management Company deems necessary and grant concessions and licenses to persons to provide facilities and services to or within the Condominium and purchase, rent or cause to be installed coin vending machines and coin-operated equipment and pay-telephones within the Condominium and to purchase same on behalf of and at the cost and expense of the Association. All income derived from the foregoing grant of concessions and licenses shall inure to the benefit of the Association, and all expenses appertaining thereto shall likewise be borne by said Association. The agreements, concessions and licensees may be entered into to provide facilities and services as specified herein for very nominal or no consideration whatsoever. The Management Company shall use its best judgment in entering into such agreements or in granting such concessions or licenses; provided, however, the Management Company shall not be liable because a greater sum might have been obtained or a shorter period contracted for. Except in the case of vending equipment, the Management Company shall not be precluded from dealing with entities affiliated with itself for on-site concessions or other services without conflict or self-dealing. The Management Company is expressly authorized to subcontract with one or more of its affiliates in carrying out its obligations under this Agreement as provided in Section 6, below.

(P) Collect special assessments or charges, or a combination thereof, for such purposes and against such parties as provided for in the provisions of the Declaration.

(Q) Exercise such powers and rights as are reasonably necessary to fulfill the terms of this Agreement and as otherwise delegated to it under the terms and provisions of the Declaration or the bylaws of the Association, or as are specifically authorized by actions of the Executive Board or the members themselves.

(R) If repair to the Condominium or any portion thereof, including any Units or the Common Elements, is required due to loss by Act of God or other cause, which is other than normal wear and tear, comply with the provisions of the Declaration on behalf of the Association in repairing the Condominium and the remainder of this paragraph shall apply except as otherwise provided in the Declaration. Should the loss be covered by insurance, the proceeds thereof shall be applied as a credit against the total costs of said repair and restoration in the proportions in which the assessments were levied. It shall be presumed that the first monies disbursed in payment of costs of repair and restoration shall be from insurance proceeds, where such are received, and then from assessments collected, and, should there be a surplus of such funds, the said surplus shall be distributed to or on behalf of the Owners, as provided in the aforesaid Declaration.

(S) Engage a Program Manager through an affiliation agreement, who shall manage and administer the reservation procedures and exchange program for The Ritz-Carlton Club Membership Program (the "Membership Program") through which Owners of Residence Interests reserve the use of the accommodations at a Club as defined in and pursuant to The Ritz-Carlton Club Membership Program Reservation Procedures ("Reservation Procedures"). The Program Manager shall have the broadest possible delegation of authority regarding administration of the Reservation Procedures. The Program Manager shall be authorized, in its sole discretion, to promulgate, adopt and amend the Reservation Procedures from time to time, in order to maintain uniformity of reservation procedures within Membership Program and to more effectively fulfill reservation requests. The Management Company on behalf of the Association shall assess the Owners of Residence Interests the reasonable cost (as determined by Program Manager) of operating such Reservation Procedures, which cost shall be included as part of the Club Dues.

(T) Provide an integrated telephone line switching system ("PBX") to be utilized by the Tourist Accommodations Units to make local and long distance calls. The Association shall provide a space in the Common Elements in which to locate the PBX equipment and shall pay all costs and expenses to properly maintain such space. In addition, the Association shall charge the Owners of Residence Interests all costs and expenses for the maintenance and operation of the PBX system including, but not limited to, electrical power, wiring, and any related equipment necessary for individual use of the system. The Management Company shall at all times have access to the PBX system without providing notice to the Association. The PBX equipment shall be owned by the Management Company and all revenues from local, if applicable, and long distance telephone calls shall inure to the benefit of the Management Company. Any revenue

RC 004529

collected by the Management Company from the operation of the PBX system shall not be considered a part of the management fee addressed in Paragraph 13 below.

(U) Perform such duties as may be required of a managing entity under the Condominium Act or the Plan, or as may be reasonably necessary or convenient to function as the managing entity of the Condominium and the Plan and perform the duties required hereunder.

(V) Enter into the individual Plan Units (subject to the provisions of the Declaration) to perform all activities that the Plan Manager is authorized or required to perform pursuant to the Declaration, including provision of cleaning and maid service, maintenance and repair of the Plan Units and abatement of nuisances or other activities of the owners or occupants of the Plan Units that are prohibited by applicable law or the Declaration.

5. <u>Garage Keepers Liability Insurance.</u>

To the extent that valet parking is provided by the Managing Agent for the benefit of the Tourist Accommodation Owners, the Managing Agent shall place and keep in force Garage Keepers Legal Liability Insurance in an amount equal to the number of cars in their care, custody, and control multiplied by $100,000 to cover against Collision and Comprehensive hazards, but in no event shall the coverage be less than Two Million Dollars ($2,000,000). The costs of the insurance premiums obtained pursuant to this Section shall be a Common Expense allocated to the Tourist Accommodation Units.

6. <u>Frequency of Services.</u>

The services, obligations and responsibilities to be performed by the Management Company shall be performed as often as set forth hereinabove; however, if no time frame is specified, then the Management Company shall perform its services, obligations and responsibilities under this Agreement as often as it, in its sole discretion, and in accordance with all applicable laws and regulations, deems necessary. The services, obligations and responsibilities shall be performed in substantial accordance to the provisions provided for in the approved budget.

7. <u>Contracts for Products and Services.</u>

Subject to the provisions of this Section 6, Management Company shall, on behalf of and as a common expense of the Association (but only to the extent said costs and expenses are reasonably consistent with the provisions of the Association budget), engage such third parties as Management Company deems advisable to provide such services as may be necessary or desirable for the operation and maintenance of the Condominium. Management Company shall administer any contracts for such services on behalf of the Association. Subject to the provisions of this Section 6, Management Company shall not be precluded from executing agreements or granting concessions or licenses to itself or to any affiliate. To the extent not prohibited by the Condominium Act or this Section 6, entering into any contract, agreement,

concession or license by Management Company with an affiliate shall not be considered to be self-dealing; provided that the prices and other terms of such contract, agreement, concession or license are competitive with those obtainable from unrelated vendors or are the subject of competitive bidding. The Management Company shall not be required to obtain the best price available as to any service, material or purchase, but shall purchase or contract for same on such terms and with such person or party as it deems advisable and in the best interest of the Association.

Notwithstanding any contrary provision of this Agreement, Management Company shall not enter into a contract with a third person whereby such person will furnish goods or services for the management, operation, maintenance or repair of the Project for a term longer than one (1) year, without the Association's prior written consent (which Management Company acknowledges will be granted only upon the consent of a majority of Owners other than the Declarant), except for:

(a) a contract with a public utility company; provided, however, that the term of the contract shall not exceed the shortest term for which the supplier will then contract at the regulated rate;

(b) prepaid casualty and/or liability insurance policies not to exceed three (3) years duration provided that the policy permits short-rate cancellation by the insured; and

(c) the following types of contracts, provided that the lessor or provider is not an entity in which Declarant or Management Company has a direct or indirect interest of ten percent (10%) or more:

    i. a lease of furniture, furnishings, appliances and other personal property;

    ii. agreements for cable television services and equipment or satellite television services and equipment;

    iii. agreements for burglar alarm services and equipment; and

    iv. a lease for laundry room fixtures and equipment.

8. <u>Building Compliance.</u>

The Management Company shall not be responsible for the compliance of the Condominium or any of its equipment with the requirements of any building codes or with any statutes, ordinances, laws, rules, or regulations (including those relating to the existence and disposal of solid, liquid, and gaseous wastes, and toxic or hazardous substances) of any city, county, state, or federal governments or agencies, or any public authority or official thereof having jurisdiction over it. However, the Management Company shall notify the Association promptly or forward to the Association promptly any complaints, warnings, notices, or summonses received by the Management Company relating to any such matters. The Association authorizes the Management Company to disclose the ownership of the

Condominium to any such officials and agrees to indemnify, defend, and hold the Management Company, its representatives, servants, and employees, harmless from all loss, cost, expense, and liability whatsoever which may be imposed on them by reason of any present or future violation or alleged violation of such laws, ordinances, rules, or regulations. The cost of compliance with laws, ordinances, rules and regulations incurred by Management Company shall be a Common Expense of the Association.

9.  Waiver of Reserves.

Notwithstanding the delegating by the Association to the Management Company of its power to determine and collect assessments during the term of this Agreement, the Association retains the power to waive required reserves making up a part of those assessments in the manner permitted by law.

10.  Payment of Common Expenses.

The Management Company shall apply assessments collected to those items specified in the Declaration and bylaws of the Association, including the Management Company's fee and expenses in substantial accordance with the approved budget. Savings in one category of budgeted expenses may be used to offset overages in other categories.

11.  Collection of Assessments.

With the authorization of the Executive Board, the Management Company may take such action in the name of the Association by way of filing, recording, satisfying, foreclosing, or vacating a lien against an Owner's Unit or separate Residence Interest should such Owner fail to pay assessments or maintenance fees, and take such other appropriate action, either in its name on behalf of the Association or in the name of the Association, or if necessary, engage legal counsel to pursue legal process. The Management Company may compromise liens in such amount as it deems advisable and render statements as to the current status of an Owner's account. In the case of a Residence Interest, any lien against an Owner of a Residence Interest in such Unit shall be limited to the Residence Interest owned by the defaulting Owner and shall not be filed so as to encumber the Residence Interests owned by any other Owners in such Unit. The Association shall aid and assist the Management Company in any reasonable manner requested by the Management Company in the request, demand, making or collecting of assessments, maintenance fees, charges, late fees or interest, or a combination thereof, which may be due the Association

12.  Denial of Use of Accommodations and Facilities.

The Management Company is authorized to deny use of the accommodations and facilities of the Plan to any Owner who is delinquent in the payment of any assessment against such Owner for common expenses or for ad valorem real estate taxes and may deny such use to any person claiming under such delinquent Owner. The Management Company is also authorized to rent any delinquent Owner's Residence Interest and any use rights appurtenant thereto and apply the rental income towards the Management Company's customary rental

commissions, if any, cleaning charges, travel agent commissions, or any other commercially reasonable charges and all costs and expenses incurred by the Management Company in connection with the rental with the balance of such rental income applied to such delinquent Owner's account. The Management Company is not required to obtain the highest nightly rental rate available, nor any particular rental rate. However, the Management Company must use reasonable efforts to secure a rental that is commensurate with other rentals of similar units. The Management Company shall not be required to rent the entire Use Period.

13. **No Advances by Management Company.**

The Management Company shall not be required to pay Common Expenses from its own funds, and shall only be required to perform its services and to make disbursements to the extent that, and so long as, payments received from assessments or other revenues, if any, of the Association are sufficient to pay the costs and expenses of such services and the amounts of such disbursements. If it shall appear to the Management Company that the assessments and other revenue, if any, of said Association and its members are insufficient, the Management Company shall forthwith determine such additional assessment as is required and advise the Executive Board of the Association and its members. Any funds that may be advanced to the Association by the Management Company shall be repaid at the earliest possible date and if such advance was approved by the Executive Board, shall bear interest at the rate of eighteen percent (18%) per annum, or the highest interest rate allowed by law, until paid.

14. **Management Fee.**

As compensation for its services hereunder, the Management Company shall receive an annual net fee, free from all charges and expenses, which shall be an amount equal to (i) Six Hundred Dollars ($600) per Residence Interest from the Owners of the Fractional Ownership Interests (the "Residence Interest Management Fee"), and (ii) ten percent (10%) of all money the Management Company is required to collect from the Owners of the Commercial Units and the Deed Restricted Residential Units pursuant to the budget and for ad valorem taxes and special assessments if not part of the budget for such year, excluding from such budget for purposes of such calculation, the management fee hereunder and any revenue realized from the operation of the PBX system as described in Paragraph 4(V) above (the "Commercial and Deed Restricted Management Fee"). The Residence Interest Management Fee shall be increased annually at Management Company's sole discretion by the same percentage increase of the proposed new year's budget over the immediate prior year's budget excluding all amounts for the management fee. The Association, acting through its Executive Board, and the Management Company may in their mutual discretion elect to convert the entire management fee to a fixed annual fee (which may include periodic adjustments for inflation and the like). In any case, the Management Company shall pay itself from the funds of the Association such management fee on a monthly basis.

15. <u>No Interference.</u>

The Association shall not unreasonably interfere, nor allow or cause any of the officers or Owners to unreasonably interfere, with the Management Company in the performance of its duties or the exercise of any of its powers described in this Agreement.

16. <u>Default.</u>

If either party defaults hereunder, then the other party, sixty (60) days after having given written notice to any officer of the defaulting party, may declare this Agreement in default, unless such default is cured by the defaulting party within sixty (60) days after receipt of such notice. Upon default, either party may, in addition to any other remedy given it by agreement or in law or in equity, bring an action against the other party for damages, injunctive relief or such other rights and remedies as it may have, or a combination thereof, and the prevailing party shall be liable for the other party's reasonable attorneys' fees and costs incurred thereby. All of such rights upon default shall be cumulative, and the exercise of one or more remedies shall not be deemed to exclude or constitute a waiver of any other or additional remedy.

17. <u>Approvals, Dispute Resolution and Arbitration.</u>

Upon request of either party, any unresolved dispute arising out of this Agreement under Paragraph 3 hereof shall be submitted to an arbitration board, of at least five (5) members with two (2) chosen by the Executive Board, two (2) by the Management Company, and the fifth (5th) by the other arbitrators so chosen. All persons whose names have been submitted for consideration for appointment or designation as arbitrators, or who have been appointed or designated as such, shall, within 15 days, make a disclosure to the parties of any information which might cause their impartiality to be questioned including, but not limited to, any of the following instances:

(a) The person has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

(b) The person served as a lawyer in the matter in controversy, or the person is or has been associated with another who has participated in the matter during such association, or he or she has been a material witness concerning it.

(c) The person served as an arbitrator in another proceeding involving one or more of the parties to the proceeding.

(d) The person, individually or a fiduciary, or such person's spouse or minor child residing in such person's household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.

(e) The person, his or her spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person meets any of the following conditions:

11

AHV - Management Agreement 01092001 cln

RC 004534

    i. The person is or has been a party to the proceeding, or an officer, director, or trustee of a party.

    ii. The person is acting or has acted as a lawyer in the proceeding.

    iii. The person is known to have an interest that could be substantially affected by the outcome of the proceeding.

    iv. The person is likely to be a material witness in the proceeding.

  (f) The person has a close personal or professional relationship with a person who meets any of the following conditions:

    i. The person is or has been a party to the proceeding, or an officer, director, or trustee of a party.

    ii. The person is acting or has acted as a lawyer or representative in the proceeding.

    iii. The person is or expects to be nominated as an arbitrator in the proceedings.

    iv. The person is known to have an interest that could be substantially affected by the outcome of the proceeding.

    v. The person is likely to be a material witness in the proceeding.

  Unless otherwise agreed by the parties or the rules governing the arbitration, an arbitrator may be challenged only if circumstances exist that give rise to justifiable doubts as to his or her independence or impartiality, or as to his or her possession of the qualifications upon which the parties have agreed.

  In no event shall the arbitration board be appointed more than sixty (60) days after either party's receipt of a written request from a party to arbitrate the claim or dispute. The arbitrators shall act in accordance with the Commercial Arbitration Rules then in effect of the American Arbitration Association. The decision of the majority of such arbitrators shall be binding on the respective Association, the Owners and the Management Company. Such decision shall include the awarding of costs, including reasonable attorneys' fees, as the arbitrators shall determine. The decision of the arbitrators shall be judicially enforceable as a judgment.

  18. <u>Indemnity.</u>

  Neither the Management Company nor any affiliated entity shall be liable to the Association or the Owners for any loss or damage not caused by the Management Company's

RC 004535

gross negligence and own willful misconduct, and the Association and its members will and do hereby indemnify and save harmless the Management Company and any other affiliated entities from any such liability for all injury, loss, damages, costs and expenses (including attorney's fees) collectively, the ("Damages") arising from any cause whatsoever arising out of or resulting from Management Company actions under this Agreement, unless such Damages shall be caused by Management Company's own gross negligence or willful misconduct.

19. <u>Successors and Assigns.</u>

This Agreement shall be binding upon and inure to the benefit of the successors and assigns of the Management Company and the successors and assigns of the Association. Notwithstanding the preceding sentence, the Management Company shall not assign its interest under this Agreement except to an affiliate or in connection with the sale of all or substantially all of the assets of its business. In the event of such sale, the Management Company shall be released from all liability under this Agreement upon the express assumption of such liability by its assignee.

20. <u>Special Charges.</u>

Subject to the requirements for levy of Assessments as provided in the Declaration, the Management Company as agent for the Association shall be authorized to impose a special personal charge against an Owner for repair or replacement of Common Elements or property of the Association caused, in the opinion of the Management Company, by the negligence or misuse of an Owner, his family, guests, lessees or invitees; or failure, in the opinion of the Management Company, of an Owner to maintain those portions of his Unit and Limited Common Elements, if any, assigned to his Unit, as he or she is required to repair and maintain; or violation of the provisions of the Declaration which require the removal of same by the Management Company or which increase the costs of maintenance and repair by the Management Company, or increase insurance rates.

21. <u>Allocation of Expenses.</u>

The Management Company and its employees and agents may perform similar services for other condominium associations and entities. In this regard, the Management Company is authorized to provide such services, as appropriate, on a consolidated basis whereby such services are provided to more than one association. To require the Management Company to strictly cost account with regard to each condominium and fractional interest plan managed by the Management Company would increase the costs of administration hereunder borne by the Association. Accordingly, the Management Company is hereby authorized to allocate to the Association its appropriate and fair share of such costs and expenses as are general and, as to those which are not general, to charge the same to the appropriate party(ies) on such basis (weighted or not) as the Management Company deems fair and equitable.

RC 004536

22. **Management Company Assumes No Liability.**

The Management Company assumes no liability whatsoever for any acts or omissions of the Executive Board or the Association, or any previous boards or current or previous Owners of the Condominium, or any previous management or other agent of either. The Management Company assumes no liability for any failure of or default by any individual Owner in the payment of any assessment or other charges due the Association or in the performance of any obligations owned by any individual Owner to the Association. The Management Company likewise assumes no liability for any failure of or default by concessionaires in any rental or other payments to the Association, nor does the Management Company assume any liability for previously unknown violations of environmental or other regulations which may become known during the period this Agreement is in effect.

23. **Proprietary Marks.**

"Proprietary Marks" include, but are not limited to, all trademarks, trade names, symbols, logos, slogans, designs, insignia, emblems, devices, service marks and distinctive designs of buildings and signs, architectural plans, drawings, specifications, computer files, or combinations thereof, which are used to identify The Ritz-Carlton Development Company, Inc., the Management Company or any of their affiliates. All works in which copyright rests in Management Company or any affiliate of Management Company or any other and all patents registered or applied for in the name of Management Company or any affiliate of Management Company shall be considered "Proprietary Marks." The term "Proprietary Marks" shall include all present and future Proprietary Marks, whether they are now or hereafter owned by Management Company or any affiliate of Management Company, and whether or not they are registered under the laws of the United States of any other country. The name, "The Ritz-Carlton Club", used in conjunction with other words or names, are examples of Proprietary Marks. Proprietary Marks shall remain the exclusive property of Management Company or one of its affiliates. Upon termination of this Agreement, the Association shall have no right to use the Proprietary Marks and any use of the Proprietary Marks by the Association shall immediately cease. In addition, upon termination, neither the Association nor the Owners shall any longer be entitled to participate in or have access to any additional benefit or program provided or sponsored by Management Company or any of its affiliates.

24. **Conflicting Provisions.**

The invalidity in whole or in part of any provision of this Agreement shall not affect the validity of the remaining portions hereof. The provisions of this Agreement shall be paramount to the Condominium Act and the Plan as to those provisions where permissive variances are permitted; otherwise, the provisions of the aforesaid Acts shall prevail and shall be deemed incorporated herein. The applicable terms and provisions of the Declaration or the bylaws shall be deemed paramount to the terms and provisions of this Management Agreement and, where applicable, the terms and provisions of this Management Agreement shall be deemed amended to comply with the foregoing.

AHV - Management Agreement 01092001 cln

RC 004537

25. <u>No Waiver.</u>

No waiver of a breach of any of the covenants contained in this Agreement shall be construed to be a waiver of any succeeding breach of this same covenant.

26. <u>Time of Essence.</u>

Time is of the essence in every particular, and especially where the obligation is to pay money.

27. <u>Entire Agreement.</u>

This Agreement constitutes the entire agreement between the parties hereto, and neither party has been induced by the other by representations, promises or understandings not expressed herein. No modification to any provision hereof shall be valid unless in writing, signed by the parties to this Agreement.

28. <u>Notices.</u>

Any notices required or provided for in this Agreement shall be in writing and shall be addressed as indicated below or to such other address as the Management Company or the Association may specify hereafter in writing.

**TO THE MANAGEMENT COMPANY**

> The Ritz-Carlton Management Company, L.L.C.
> 6649 Westwood Boulevard, Suite 500
> Orlando, Florida 32821-6090
> Attention: Vice President of Operations

**TO THE ASSOCIATION**

> President of the Board at the address of the President as on file with the Management Company.

Notices or other communications between the parties to this Agreement may be mailed by United States registered or certified mail, return receipt requested, postage prepaid, and may be deposited in a United States Post Office or a depository regularly maintained by the post office. Such notices may also be delivered by hand, by facsimile or by any other receipted method or means permitted by law. For purposes of this Agreement, notices shall be deemed to have been "given" or "delivered" upon personal delivery thereof or forty-eight (48) hours after having been deposited in the United States mails as provided herein.

29. <u>Affiliated Corporations.</u>

The Management Company is an affiliated company of a wholly-owned subsidiary of The Ritz-Carlton Development Company, Inc.

30. <u>Independent Contractor.</u>

The parties hereby agree and acknowledge that the Management Company is an independent contractor of the Association. The Association hereby releases any right of control over the method, manner or means by which the Management Company performs its duties and responsibilities under this Agreement.

31. <u>Excusable Delays.</u>

In the event that the Management Company shall be delayed, hindered in or prevented from the performance of any act required hereunder by reason of strikes, lock-outs, labor troubles, inability to procure materials, failure of power, restrictive governmental laws or regulations, riots, insurrection, war, Act of God, or any other reason beyond the Management Company's control, then performance of such act shall be excused for the period of the delay, and the period for the performance of any such act shall be extended for a period equivalent to the period of such delay.

32. <u>Brand Standards.</u>

For so long as this Agreement remains in effect, the parties agree that the Condominium shall be maintained in accordance with The Ritz-Carlton Standards, which standards are defined as the standards of operation, service, furnishing, equipping, and maintenance applicable to substantially all of The Ritz-Carlton branded hotels managed by The Ritz-Carlton Hotel Company, L.L.C., an affiliate of Management Company. Any failure of the Association to maintain the Condominium in accordance with The Ritz-Carlton Standards, which failure is not caused by the acts or omissions of Management Company, shall constitute a default under this Agreement and the sole remedy of Management Company,' subject to the right of notice and right to cure as provided for in Section 15, shall be to terminate this Agreement..

33. <u>Survival of Provisions.</u>

All representations and warranties of the parties contained herein shall survive the termination of this Agreement. All provisions of this Agreement that require the Association to have insured or to defend, reimburse, or indemnify the Management Company shall survive any termination; and if the Management Company is or becomes involved in any proceeding or litigation by reason of having been the Management Company for the Association, such provisions shall apply as if this Agreement were still in effect.

IN WITNESS WHEREOF, the parties hereto have caused these presents to be signed by their proper officer(s) as of the date first written above.

THE RITZ-CARLTON
MANAGEMENT COMPANY, L.L.C.

By: The Ritz-Carlton Club Development
Company, Inc., Sole Member

By: *[signature]*
Name: Joseph F. Scalo
Title: Vice President

ASPEN HIGHLANDS
CONDOMINIUM ASSOCIATION, INC.

By: _____
Name: William J. Love
Title: President

17

AHV - Management Agreement 01092001 cln

RC 004540

IN WITNESS WHEREOF, the parties hereto have caused these presents to be signed by their proper officer(s) as of the date first written above.

THE RITZ-CARLTON
MANAGEMENT COMPANY, L.L.C.

By: The Ritz-Carlton Club Development
Company, Inc., Sole Member

By: _____
Name: ____Joseph F. Scalo_____
Title: ____Vice President_____


ASPEN HIGHLANDS
CONDOMINIUM ASSOCIATION, INC.

By: _____*[signature]*_____
Name: ____William J. Love_____
Title: ____President_____

AHV - Management Agreement 01092001 cln

17

RC 004541