# EXHIBIT C

1   MICHAEL J. REISER, ESQ. (SBN 133621)
    LILIA BULGUCHEVA, ESQ. (SBN 291374)
2   LAW OFFICE OF MICHAEL J. REISER
    961 Ygnacio Valley Road
3   Walnut Creek, California 94596
    Telephone: (925) 256-0400
4   Facsimile: (925) 476-0304
    Email: reiserlaw@gmail.com
5   Email: lilia.reiserlaw@gmail.com
6
7   TYLER R. MEADE, ESQ. (SBN 160838)
    MELISSA RIESS (SBN 295959)
8   THE MEADE FIRM P.C.
    1816 Fifth Street
9   Berkeley, CA 94710
    Telephone: (510) 843-3670
10  Facsimile:  (510) 843-3679
    Email: tyler@meadefirm.com
11  Email: melissa@meadefirm.com
12
13  Attorneys for Plaintiffs
14                  UNITED STATES DISTRICT COURT
15              EASTERN DISTRICT OF CALIFORNIA
16  THOMAS F. REISER JR. and LINDA T.          Case No. 2:16-CV-00237-MCE-CKD
    REISER, individually and as Trustees of
17  the Tom and Linda Reiser Living Trust      SECOND AMENDED COMPLAINT FOR:
    Dated June 20, 2006; KEITH BRIAR and
18  BEVERLY BRIAR, individually and as         (1) RESCISSION;
    Trustees of the Keith and Beverly Briar
19  Family Trust Dated December 21, 2004;      (2) BREACH OF CONTRACT;
    ANTHONY J. BATES, individually and as
20  Trustee of the Anthony J. Bates Revocable  (3) BREACH OF THE IMPLIED
    Trust; AL BRENDE; SHANNON               COVENANT OF GOOD FAITH AND FAIR
21  FRAZIER and RUSSELL FRAZIER,            DEALING;
    individually and as Trustees of the Frazier
22  Family Revocable Trust Dated January 30,   (4) BREACH OF FIDUCIARY DUTY;
    2008; JASON M. GIRZADAS and
23  VIRGINIA H. GIRZADAS; GEORGE M.            (5) VIOLATION OF BUSINESS &
    HEWITT and ROSE A. HEWITT;              PROFESSIONS CODE §§ 17200, *et seq.*;
24  BRETTON H. JAMESON and AMY M.           AND
    JAMESON; BRENT JONES and DANA
25  JONES, individually and as Trustees of the (6) AIDING AND ABETTING
    1990 Jones Living Trust; JENNIFER
26  KAPLAN and ALEXANDER                      JURY TRIAL DEMANDED
    BUSANSKY; STEPHEN F. LIM;
27
28

                                     - 1 -

MICHAEL LUNDAHL and VERLYN LUNDAHL; MARK MARKLAND and TRICIA MARKLAND, individually and as Trustees of the Markland Family Trust; CRAIG MATTSON; RICHARD T. McGREW; SUSAN L. MOYER, individually and as Trustee of the Susan Moyer Living Trust; CURTIS W. OTTLEY and JENNIFER OTTLEY; CHARLES F. PERRELL and ELIZABETH A. GUILLAUMIN, individually and as Trustees of the Charles F. Perrell and Elizabeth A. Guillaumin Living Trust Dated June 26, 1998; CORNELIUS H. TIEBOUT and JULIE A. TIEBOUT, individually and as Trustees of the Tiebout Family Trust; CRAIG S. TYSDAL and JANET S. TYSDAL, individually and as Trustees of the Tysdal Family Living Trust; ANNETTE WELTON and PATRICK WELTON, individually and as Trustees of the Welton Family Trust; and GREGORY YONKO and JANICE YONKO, individually and as Trustees of the Yonko Family Living Trust,

       Plaintiffs,

   v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, a Delaware corporation; MARRIOTT OWNERSHIP RESORTS, INC., a Delaware corporation d.b.a. Marriott Vacation Club International; RITZ-CARLTON DEVELOPMENT COMPANY, INC., a Delaware corporation; RITZ-CARLTON SALES COMPANY, INC., a Delaware corporation; RITZ-CARLTON MANAGEMENT COMPANY, LLC, a Delaware limited liability company; THE COBALT TRAVEL COMPANY, LLC, a Delaware limited liability company; and DOES 1 THROUGH 50,

       Defendants.

- 2 -

SECOND AMENDED COMPLAINT

1    The following Plaintiffs bring this action based upon the investigation of counsel and

2    information and belief: Thomas F. Reiser, Jr. and Linda T. Reiser, individually and as Trustees of

3    the Tom and Linda Reiser Living Trust Dated June 20, 2006; Keith Briar and Beverly Briar,

4    individually and as Trustees of the Keith and Beverly Briar Family Trust Dated December 21,

5    2004; Anthony J. Bates, individually and as Trustee of the Anthony J. Bates Revocable Trust; Al

6    Brende; Shannon Frazier and Russell Frazier, individually and as Trustees of the Frazier Family

7    Revocable Trust Dated January 30, 2008; Jason M. Girzadas and Virginia H. Girzadas; George

8    M. Hewitt and Rose A. Hewitt; Bretton H. Jameson and Amy M. Jameson; Brent Jones and Dana

9    Jones, individually and as Trustees of the 1990 Jones Living Trust; Jennifer Kaplan and

10   Alexander Busansky; Stephen F. Lim; Michael Lundahl and Verlyn Lundahl; Mark Markland and

11   Tricia Markland, individually and as Trustees of the Markland Family Trust; Craig Mattson;

12   Richard T. McGrew; Susan L. Moyer, individually and as Trustee of the Susan Moyer Living

13   Trust; Curtis W. Ottley and Jennifer Ottley; Charles F. Perrell and Elizabeth A. Guillaumin,

14   individually and as Trustees of the Charles F. Perrell and Elizabeth A. Guillaumin Living Trust

15   Dated June 26, 1998; Cornelius H. Tiebout and Julie A. Tiebout, individually and as Trustees of

16   the Tiebout Family Trust; Craig S. Tysdal and Janet S. Tysdal, individually and as Trustees of the

17   Tysdal Family Living Trust; Annette Welton and Patrick Welton, individually and as Trustees of

18   the Welton Family Trust; and Gregory Yonko and Janice Yonko, individually and as Trustees of

19   the Yonko Family Living Trust, (collectively, "Plaintiffs"). Plaintiffs bring this action against the

20   following Defendants: Marriott Vacations Worldwide Corporation; Marriott Ownership Resorts,

21   Inc., d.b.a. Marriott Vacation Club International; Ritz-Carlton Development Company, Inc.; Ritz-

22   Carlton Sales Company, Inc.; Ritz-Carlton Management Company, LLC; and Cobalt Travel

23   Company, LLC (collectively, "Defendants").

24   **INTRODUCTION**

25       1.      This lawsuit concerns the sale of fractional interests in the Ritz-Carlton Club,

26   Lake Tahoe, located in Truckee, California (the "Lake Tahoe Ritz"). This development consists

27   ///

28   ///

SECOND AMENDED COMPLAINT

1  of 28 residential condominiums called "Club Interest Units"[1] that were fractionalized into 336

2  "Club Interests" (sometimes referred to as "Fractional Units" or "fractional interests").[2]

3      2.      Beginning in early 2009, Defendants sold 1/12th Fractional Units to Plaintiffs

4  and approximately 38 other buyers.  The sales effort stalled as the economy deteriorated, and by

5  2011 Defendants devised a plan to monetize the unsold "developer inventory" of approximately

6  277 fractional units.  However, this plan to monetize the "developer inventory" came at the

7  expense of and caused significant injury to the Plaintiffs' property interests, as well as to the

8  property interests of the buyers of Ritz-Carlton Destination Club Fractional Units worldwide.

9  The monetization plan effectuated by Defendants required that the Defendants breach

10  contractual promises, the implied covenant of good faith and fair dealing, and fiduciary duties

11  owed to Plaintiffs (and to other Fractional Unit buyers).

12      3.      The "solution" that Defendants devised to solve their problem of the unsold

13  "developer inventory" had three prongs.

14      4.      First, on or about November 18, 2011, Defendants announced that they had

15  secretly de-annexed 17 of the 28 Club Interest Units from the Club Interest Declaration, and sold

16  them as non-fractionalized, regular condominium units to an unnamed "well known developer in

17  the Tahoe area."  As a result of this secret de-annexation and sale, the number of fractional

18  interests available for sale to potential Fractional Unit buyers was decreased by 204 Fractional

19  Units, from 336 to 132.  Among other harm, this caused a significant increase in the annual dues

20  that Plaintiffs must pay each year, the loss of the Ritz Club "members lounge," and the loss of a

21  substantial portion of the common area available to fractional owners.

22      5.      Second, on July 17, 2012, to address their problem of unsold Fractional Units at

23  various Ritz-Carlton Destination Club properties, Defendants announced a new "external

---

[1]    The 28 "Club Interest Units" were created on June 9, 2008 as a result of the filing by the Defendant Ritz-Carlton Development Company, Inc. of the "Declaration of Covenants, Conditions and Restrictions and Reservations of Easements for the Highlands Resort West Parcel Condominium" dated as of May 30, 2008 (the "Condominium Declaration").

[2]    The 336 "Club Interests" or "Fractional Units" were created on June 9, 2008 as a result of the filing by the Defendant Ritz-Carlton Development Company, Inc. of the "Declaration of Covenants, Conditions and Restrictions for the Highlands Resort West Parcel Club" dated as of May 30, 2008 ("Club Interest Declaration").

SECOND AMENDED COMPLAINT

1   exchange affiliation" (sometimes referred to herein as a "merger") between Ritz-Carlton

2   Destination Club (a.k.a. Ritz-Carlton Membership Program) and the Marriott Vacation Club, a

3   much larger, less exclusive, and less expensive competing product managed, owned, and

4   promoted by Defendants. As a result of this new affiliation, Marriott Vacation Club members can

5   spend just as many days at the Lake Tahoe Ritz as Plaintiffs can – 21 days – and do so at a

6   fraction of the cost. Participants in the Marriott Vacation Club pay roughly 60% of what

7   Plaintiffs paid up front and pay roughly a third of what Plaintiffs pay in annual dues.

8        6.    Third, the Defendants discontinued any meaningful effort to continue to sell

9   fractional interests at the Lake Tahoe Ritz, opting instead to market their competing Marriott

10   Vacation Club product to Plaintiffs' detriment. The cessation of sales efforts was undertaken so

11   that the "developer inventory" that the Defendants could not de-annex and sell outright could be

12   utilized by the Defendants as inventory to be used by Marriott Vacation Club members, thereby

13   causing the Ritz-Carlton Destination Club Fractional Units to become obsolete and worthless.

14        7.    Defendants' conduct was designed solely for the benefit of the Defendants, and in

15   fact was injurious to the property rights of Plaintiffs, causing the market for fractional interests at

16   the Lake Tahoe Ritz to collapse. The fractional interests that Plaintiffs purchased for premium

17   prices are now worth nothing. Nobody will agree to buy these fractional interests when they can

18   enjoy the same access for so much less in both purchase price and annual costs. Plaintiffs who

19   have attempted to sell their units have been unable to do so.

20        8.    To add insult to injury, Plaintiffs bear a disproportionate cost of the wear and tear

21   caused by the de-annexation of the Fractional Units as well as the flood of Marriott Vacation

22   Club members at the Lake Tahoe Ritz because operational costs are now spread among the

23   owners of just 59 Fractional Units rather than 366 Fractional Units that would exist if Defendants

24   had carried through with their fiduciary obligation to market and sell all fractional interests.

25   Plaintiffs bear this increased cost while their access to the Lake Tahoe Ritz is curtailed by the

26   influx.

27        9.    The conduct described above constitutes a breach or breaches of both the

28   standardized Purchase Agreement and the Club Interest Declaration, which the Purchase

- 5 -

SECOND AMENDED COMPLAINT

1  Agreement incorporated and was governed by.  This conduct also breached the covenant of good

2  faith and fair dealing implied in those agreements.

3        10.      Defendants, including Defendant Marriott Vacations Worldwide Corporation and

4  its subsidiaries, have engaged in a broad pattern of self-dealing and breaching the fiduciary

5  duties that they assumed toward Plaintiffs.  Though the sources of these duties vary somewhat,

6  they all flow from the fact that governing documents gave an entity called the "Club Interest

7  Association" near complete control over Plaintiffs' separately deeded fractionalized interests.

8  Just as a typical homeowners association owes a fiduciary duty to exercise its near absolute

9  control over *common areas* for the benefit of individual condominium owners, Defendants here

10  owed a fiduciary duty to exercise their near absolute control over *Plaintiffs' separately-deeded*

11  *fractional interests* for the benefit of Plaintiffs.  In each case, control over the property of another

12  gives rise a fiduciary duty to manage that property for the benefit of its owners.[3]

13        11.      Ritz-Carlton Development Company, Inc. ("RC Development") assumed the Club

14  Interest Association's control-based fiduciary duty by retaining control over that association

15  through the appointment of its employees or agents to a majority of the board member positions

16  to the Club Interest Association board of directors.[4]  Ritz-Carlton Management Company, Inc.

17  ("RC Management"), an affiliate of RC Development,[5] assumed these same duties by

18  contractually agreeing with the Club Interest Association to be the manager of the fractional

19  units, with near absolute authority over almost every aspect of their use.  These fiduciary duties

20  are shared by Cobalt Travel Company, LLC ("Cobalt") because RC Management delegated its

---

[3]     *See Vai v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 56 Cal.2d 329, 338 (1961) ("The key factor in the existence of a fiduciary relationship lies in control by a person over the property of another"); 34A Cal. Jur. 3d Fraud and Deceit § 13 (same); *United States v. Wilson*, 881 F.2d 596, 599 (9th Cir. 1989) ("A fiduciary relationship will 'arise[ ] when the Government assumes ... control over ... property belonging to Indians'").

[4]     *See Raven's Cove Townhomes, Inc. v. Knuppe Development Co.*, 114 Cal.App.3d 783, 799-800 (1981) (holding developer owes fiduciary duties while it controls association board and stating, "Thus, a developer and his agents and employees who serve as directors of an association . . . may not make decisions for the Association that benefit their own interests at the expense of the association and its members"); *Cohen v. S & S. Construction Co.*, 151 Cal.App.3d 941, 945 (1983) ("This fiduciary duty extends to individual homeowners, not just the homeowners association").

[5]     The RC Development signed the management agreement on May 16, 2008 as RC Management's sole member.

SECOND AMENDED COMPLAINT

1  sweeping authority to Cobalt such that Cobalt became RC Management's subagent.[6]  The other

2  defendants aided and abetted the breach of fiduciary duties by these three defendants.

3         12.      Defendants breached these fiduciary duties by using the Club Interest Association

4  to profit at Plaintiffs' expense while gutting the value of the fractional interests that they sold to

5  Plaintiffs.  The Defendant-controlled Club Interest Association authorized, ratified and/or

6  acquiesced to: (a) the de-annexation of the 17 units that Defendants peeled off from the

7  fractional offering and sold as condominiums; and (b) the decision to give members of the

8  Marriott Vacation Club access to the Lake Tahoe Ritz through the merger between that club and

9  the Ritz-Carlton Destination Club.  In addition, the Defendant-controlled Club Interest

10 Association steadily increased the annual dues that Plaintiffs must pay.  The inflated annual dues

11 subsidize Defendants' decision to open up access to the Lake Tahoe Ritz to members of the

12 Marriott Vacation Club.

13        13.      The above conduct also violates California's Unfair Competition Law ("UCL") in

14 that Cal. Bus. & Prof. Code § 11252 prohibits developers from materially encumbering the use

15 rights of time-share purchasers without the written assent of at least 51% of the timeshare interest

16 owners other than the developer.  *See* Cal. Bus. & Prof. Code §§ 17200 *et seq*.  Under the law of

17 restitution applicable to the UCL claim, Plaintiffs are entitled to all funds that Defendants

18 obtained by means of unfair competition and unlawful business practices – including the

19 substantial purchase prices that Plaintiffs paid and the tens of thousands of dollars in annual dues

20 paid thereafter.

21        14.      Plaintiffs are entitled to rescind their Purchase Contracts based on material mistake

22 of fact, whether Defendants' conduct was intentional, negligent, or entirely innocent.  In

23 rescission, Defendants must return all consideration paid to them by Plaintiffs, including the

24 purchase price for each fractional interest and all subsequent annual fees.  *See* Cal. Civ. Code §§

25

26 [6]     *See Streit v. Covington & Crowe*, 82 Cal.App.4th 441, 446, fh. 3 (2000) ("if an agent is
27 authorized by the principal to employ a subagent, the subagent owes the same duties to the
   principal as does the agent"); *Sequoia Vacuum Systems v. Stansky*, 229 Cal.App.2d 281, 287
28 (1964) ("Every agent owes his principal the duty of undivided loyalty.  During the course of his
   agency, he may not undertake or participate in activities adverse to the interests of his principal").

1691(b)(1). Plaintiffs are also entitled to consequential damages in rescission, including but not limited to the loss of the time value of their money. *See* Cal. Civ. Code § 1692.

## JURISDICTION AND VENUE

15.     Defendants obtained the jurisdiction of this Court by means of a removal petition.

## DEFENDANTS

16.     Defendant Ritz-Carlton Development Company, Inc. ("RC Development") is a Delaware corporation and the seller of the fractional interests at issue. RC Development has a principal place of business at 6649 Westwood Boulevard, Suite 500, Orlando, Florida, and is authorized to do business in California. It is a wholly-owned Marriott subsidiary, and also is the sole owner, manager, and member of Defendant Cobalt.

17.     Defendant Ritz-Carlton Sales Company, Inc. ("Ritz-Carlson Sales") is a Delaware corporation, has a principal place of business at 6649 Westwood Boulevard, Suite 500, Orlando, Florida, and is authorized to do business in California. At all relevant times, Ritz-Carlton Sales was a wholly-owned Marriott subsidiary, acted as a sales broker, and was otherwise involved in and responsible for the marketing and sale of the fractional interests at issue.

18.     Defendant Ritz-Carlton Management Company, LLC ("RC Management"), another wholly-owned Marriott subsidiary, is a Delaware limited liability company. RC Management also has a principal place of business at 6649 Westwood Boulevard, Suite 500, Orlando, Florida, and is authorized to do business in California. At all relevant times, RC Management was the manager and operator of the Lake Tahoe Ritz and the other Ritz-Carlton-branded properties included in the Ritz-Carlton Membership Program.

19.     Defendant Cobalt Travel Company, LLC ("Cobalt"), formerly known as the Ritz-Carlton Travel Company, LLC, is a Delaware limited liability company, has a principal place of business at 6649 Westwood Boulevard, Suite 500, Orlando, Florida, and is authorized to do business in California. Cobalt is a wholly-owned subsidiary of RC Development. RC Management entered into an Affiliation Agreement with Cobalt pursuant to which the Lake Tahoe Ritz and by extension its various fractional owners, including Plaintiffs, became affiliated with and/or members of the Ritz-Carlton Membership Program. Cobalt is the Program Manager

- 8 -

1    of the Ritz-Carlton Membership Program and also operates the reservation system through which

2    Plaintiffs obtained use of their allotted number of days at the Lake Tahoe Ritz and obtain access

3    to the other facilities in the Ritz-Carlton Membership Program.

4          20.    Defendant Marriott Ownership Resorts, Inc., d.b.a. Marriott Vacation Club

5    International ("Marriott Ownership Resorts") is a Delaware corporation, and a wholly-owned

6    subsidiary of Marriott.  It has a principal place of business at 6649 Westwood Boulevard,

7    Orlando, Florida, and is authorized to do business in California.  Marriott Ownership Resorts was

8    involved in and responsible for the wrongful conduct alleged herein.

9          21.    Defendant Marriott Vacations Worldwide Corporation ("Marriott Vacations

10   Worldwide") is a publicly-traded Delaware corporation with a principal place of business at 6649

11   Westwood Boulevard, Orlando, Florida.  Marriott Vacations Worldwide is the parent company of

12   the other Defendants and was involved in and responsible for the wrongful conduct alleged

13   herein.

14         22.    Collectively, Marriott Ownership Resorts and Marriott Vacations Worldwide are

15   referred to herein as Marriott.

16         23.    The true names and capacities of the Defendants DOES 1 through 50, whether

17   individual, corporate, associate or otherwise, are unknown to Plaintiffs at the time of filing this

18   Complaint and Plaintiffs, therefore, sue said Defendants by such fictitious names and will ask

19   leave of court to amend this Complaint to show their true names or capacities when the same have

20   been ascertained.  Plaintiffs are informed and believe, and therefore allege, that each of the DOE

21   Defendants is, in some manner, responsible for the events and happenings herein set forth and

22   proximately caused injury and damages to Plaintiffs as herein alleged.

23         24.    Plaintiffs are informed and believe, and on that basis allege, that each Defendant

24   named in this action, including each of the DOE defendants, was the agent, ostensible agent,

25   servant, aider and abettor, co-conspirator, partner, joint venturer, representative and/or associate

26   of each of the other Defendants, and was at all times relevant herein acting within the course and

27   scope of his, her or its authority as agent, ostensible agent, servant, aider and abettor, co-

28   conspirator, partner, joint venturer, representative and/or associate, and with the knowledge,

- 9 -

SECOND AMENDED COMPLAINT

1   authorization, consent, permission, and/or ratification of the other Defendants.  On information

2   and belief, all actions of each Defendant alleged herein were ratified and approved by the officers

3   and/or managing agents of each other Defendant, whether DOE or otherwise.

4   **PLAINTIFFS**

5   25.   Plaintiffs Thomas F. Reiser, Jr. and Linda T. Reiser are competent adult residents

6   of Alamo, California and the Trustees of the Tom and Linda Reiser Living Trust Dated June 20,

7   2006.  Pursuant to a Purchase Contract they signed on or about April 22, 2009, they purchased an

8   undivided 1/12th interest in Club Interest Unit No. 4306 for $254,150.

9   26.   Plaintiffs Keith Briar and Beverly Briar are competent adult residents of Alamo,

10   California and the Trustees of the Keith and Beverly Briar Family Trust Dated December 21,

11   2004.  On or about April 29, 2009, this Purchase Agreement was modified in writing so that the

12   purchasers' names were changed from Thomas F. Reiser Jr. and Linda T. Reiser to Thomas F.

13   Reiser Jr. and Linda T. Reiser, a married couple, and Keith Briar and Beverly Briar, a married

14   couple (collectively, the "Reiser-Briar Plaintiffs").

15   27.   On or about November 11, 2009, the Reiser-Briar Plaintiffs closed escrow on the

16   purchase of their Fractional Unit (Unit 4306-01) and took title as follows: Thomas F. Reiser, Jr.

17   and Linda T. Reiser as Trustees of the Tom and Linda Reiser Living Trust Dated June 20, 2006

18   and Keith and Beverly Briar as Trustees of the Keith and Beverly Briar Family Trust Dated

19   December 21, 2004.

20   28.   On or about November 8, 2012, at the request of Defendants, the Reiser-Briar

21   Plaintiffs traded their interest in Fractional Unit 4306-01 for Fractional Unit 4503-03.

22   29.   Plaintiff Anthony J. Bates is a competent adult resident of Los Altos, California

23   and Trustee of the Anthony J. Bates Revocable Trust (collectively, the "Bates Plaintiffs"). On or

24   about January 15, 2010, the Bates Plaintiffs purchased an undivided 1/12th interest in Club

25   Interest Unit No. 4503 for $ 364,650.

26   30.   Plaintiff Al Brende is a competent adult resident of Houston, Texas.  On or about

27   November 10, 2009, Mr. Brende purchased an undivided 1/12th interest in Club Interest Unit No.

28   4405 for $218,000.

- 10 -

SECOND AMENDED COMPLAINT

31.     Plaintiffs Shannon Frazier and Russell Frazier are competent adult residents of El Dorado Hills, California and Trustees of the Frazier Family Revocable Trust Dated January 30, 2008 (collectively, the "Frazier Plaintiffs").  On or about November 16, 2009, the Frazier Plaintiffs purchased an undivided 1/12th interest in Club Interest Unit No. 4308 for $285,515.

32.     Plaintiffs Jason M. Girzadas and Virginia H. Girzadas are competent adult residents of Danville, California (collectively, the "Girzadas Plaintiffs").  On or about October 4, 2010, the Girzadas Plaintiffs purchased an undivided 1/12th interest in Club Interest Unit No. 4108 for $160,000.

33.     Plaintiffs George M. Hewitt and Rose A. Hewitt are competent adult residents of Houston, Texas (collectively, the "Hewitt Plaintiffs").  On or about July 7, 2010, the Hewitt Plaintiffs purchased an undivided 1/12th interest in Club Interest Unit No. 4308 for $280,800.

34.     Plaintiffs Bretton H. Jameson and Amy M. Jameson are competent adult residents of Stillwater, Oklahoma (collectively, the "Jameson Plaintiffs").  On or about November 10, 2009, the Jameson Plaintiffs purchased an undivided 1/12th interest in Club Interest Unit No. 4108 for $212,000.

35.     Plaintiffs Brent Jones and Dana Jones are competent adult residents of Danville, California and the Trustees of the 1990 Jones Living Trust (collectively, the "Jones Plaintiffs").  On or about September 24, 2010, the Jones Plaintiffs purchased an undivided 1/12th interest in Club Interest Unit No. 4503 for $352,000.

36.     Plaintiffs Jennifer Kaplan and Alexander Busansky are competent adult residents of Berkeley, California (collectively, the "Kaplan-Busansky Plaintiffs").  On or about April 4, 2012, the Kaplan-Busansky Plaintiffs purchased an undivided 1/12th interest in Club Interest Unit No. 4108 for $133,500.

37.     Plaintiff Stephen F. Lim is a competent adult resident of Danville, California.  On or about November 16, 2009, Mr. Lim purchased an undivided 1/12th interest in Club Interest Unit No. 4108 for $213,000.

38.     Plaintiffs Michael Lundahl and Verlyn Lundahl are competent adult residents of Elk Grove, California (collectively, the "Lundahl Plaintiffs").  On or about November 10, 2009,

- 11 -

SECOND AMENDED COMPLAINT

1   the Lundahl Plaintiffs purchased an undivided 1/12th interest in Club Interest Unit No. 4308 for

2   $286,000.

3        39.    Plaintiffs Mark Markland and Tricia Markland are competent adult residents of

4   Manhattan Beach, California and Trustees of the Markland Family Trust (collectively, the

5   "Markland Plaintiffs").  On or about November 10, 2009, the Markland Plaintiffs purchased an

6   undivided 1/12th interest in Club Interest Unit No. 4108 for $213,000.

7        40.    Plaintiff Craig Mattson is a competent adult resident of San Francisco, California.

8   On or about November 10, 2009, Mr. Mattson purchased an undivided 1/12th interest in Club

9   Interest Unit No. 4304 for $230,000.

10        41.    Plaintiff Richard T. McGrew is a competent adult resident of San Francisco,

11   California. On or about November 16, 2009, Mr. McGrew purchased an undivided 1/12th interest

12   in Club Interest Unit No. 4304 for $208,000.

13        42.    Plaintiff Susan L. Moyer is a competent adult resident of San Francisco, California

14   and Trustee of the Susan Moyer Living Trust (collectively, the "Moyer Plaintiffs").  On or about

15   November 10, 2009, the Moyer Plaintiffs purchased an undivided 1/12th interest in Club Interest

16   Unit No. 4507 for $300,000.

17        43.    Plaintiffs Curtis W. Ottley and Jennifer Ottley are competent adult residents of San

18   Ramon, California (collectively, the "Ottley Plaintiffs").  On or about November 10, 2009, the

19   Ottley Plaintiffs purchased an undivided 1/12th interest in Club Interest Unit No. 4507 for

20   $335,500.

21        44.    Plaintiffs Charles F. Perrell and Elizabeth A. Guillaumin are competent adult

22   residents of Los Altos Hills, California and Trustees of the Charles F. Perrell and Elizabeth A.

23   Guillaumin Living Trust Dated June 26, 1998 (collectively, the "Perrell Plaintiffs").  On or about

24   January 25, 2010, the Perrell Plaintiffs purchased an undivided 1/12th interest in Club Interest

25   Unit No. 4507 for $284,750.

26        45.    Plaintiffs Cornelius H. Tiebout and Julie A. Tiebout are competent adult residents

27   of Napa, California and Trustees of the Tiebout Family Trust (collectively, the "Tiebout

28   ///

- 12 -

SECOND AMENDED COMPLAINT

1    Plaintiffs").  On or about November 16, 2009, the Tiebout Plaintiffs purchased an undivided

2    1/12th interest in Club Interest Unit No. 4507 for $299,600.

3           46.     Plaintiffs Craig S. Tysdal and Janet S. Tysdal are competent adult residents of

4    Scottsdale, Arizona and Trustees of the Tysdal Family Living Trust (collectively, the "Tysdal

5    Plaintiffs").  On or about December 27, 2010, the Tysdal Plaintiffs purchased an undivided 1/12th

6    interest in Club Interest Unit No. 4308 for $139,100.

7           47.     Plaintiffs Annette Welton and Patrick Welton are competent adult residents of

8    Carmel, California and Trustees of the Welton Family Trust (collectively, the "Welton

9    Plaintiffs").  On or about October 29, 2009, the Welton Plaintiffs purchased an undivided 1/12th

10   interest in Club Interest Unit No. 4507 for $335,500.

11          48.     Plaintiffs Gregory Yonko and Janice Yonko are competent adult residents of

12   Danville, California and Trustees of the Yonko Family Living Trust (collectively, the "Yonko

13   Plaintiffs").  On or about November 10, 2009, the Yonko Plaintiffs purchased an undivided

14   1/12th interest in Club Interest Unit No. 4303 for $208,000.

15          49.     As a condition of purchase and ownership, Plaintiffs were enrolled in the Ritz-

16   Carlton Membership Program (a.k.a. Ritz-Carlton Club) pursuant to which they were allowed

17   access to other participating resorts and clubs.

18   **GENERAL ALLEGATIONS**

19          50.     Ritz-Carlton is a highly valued brand associated with the Ritz-Carlton Hotel

20   Company, which develops, sells, operates and manages luxury properties all over the world.

21   Over the years, the Ritz-Carlton has become the preferred hotel company among luxury hotel

22   chains based in large part on the prestige of its brand, luxurious amenities, and outstanding

23   service.  The Ritz-Carlton brand is now owned and/or controlled by Defendant Marriott.

24          51.     In or about December 2009, RC Development completed the construction of Phase

25   1 (consisting of 28 residential Units) at the Lake Tahoe Ritz, located at 13051 Ritz-Carlton

26   Highlands Drive, Truckee, California.  A Final Time-Share Plan Public Report ("Public Report")

27   was issued on June 12, 2008, and amended May 10, 2010.

28   ///

SECOND AMENDED COMPLAINT

1   52.     RC Development represented that it would sell 1/12th fractional interests in the 28

2   Club Interest Units, or in other words 336 Fractional Units.  Plaintiffs reasonably believed that

3   Defendants promised to market and sell that number, or at least a sufficient to make the Lake

4   Tahoe Ritz fractional offering viable.  Yet Defendants sold less than 60 before abandoning

5   marketing and sales efforts.  Defendants even closed the sales office at the Lake Tahoe Ritz.

6   53.     Next, Defendants de-annexed the 17 Club Interest Units.  A November 18, 2011

7   notice to Plaintiffs (and other fractional owners) reads in pertinent part:

8       "On behalf of the Ritz-Carlton Club, Lake Tahoe, we would like to take the opportunity to

9       inform you that a well known developer in the Tahoe area has recently purchased 17

10      residences in our building to convert to whole ownership residences in the undeveloped

11      property adjacent to the Club.  The confidentiality associated with this transaction

12      precluded us from informing you of the sale before it was finalized.... [¶]  Secondly, due

13      to the decreased number of residences that will be a part of the Club budget, there likely

14      will be some financial impact."

15  54.     The cessation of all sales efforts and the de-annexation of the 17 Club Interest

16  Units and sale of those units as non-fractionalized condominiums was a breach of promises made

17  in: (a) the Club Interest Declaration; (b) the Purchase Agreement, which specifically incorporated

18  the Club Interest Declaration and must be interpreted consistent with it; and (c) the Public Report.

19  55.     The November 18, 2011 notice also advised: "the purchase included the residence

20  where the current Members' Lounge was located.  Due to the whole ownership conversion of the

21  residence, we are in the process of relocating the Members' Lounge and will be providing

22  complimentary beverages while our new lounge is under construction...."  The new lounge was a

23  substandard replacement, far smaller and far less desirable than the original one.

24  56.     Defendants also breached their promise that fractional owners would be able to

25  protect their substantial investments by controlling the Club Interest Association.  Defendants

26  used their control over the Club Interest Association board to accomplish the wrongful conduct

27  alleged herein, all to Plaintiffs' detriment.  Among other things, they ratcheted up the annual dues

28  until the annual cost of the 21 days of use makes no economic sense.  When annual dues are

- 14 -

SECOND AMENDED COMPLAINT

1   factored in, the per-night occupancy cost is approximately $1,000 for most buyers (and just a little

2   less for the others), excluding the time value of the money they used to purchase their fractional

3   interest.

4        57.    Defendants represented that Plaintiffs and other buyers would have access to

5   sought-after resorts, such as the Ritz-Carlton Destination Club in Bachelor Gulch, Colorado and

6   the Ritz-Carlton Destination Club in Jupiter, Florida, through the Ritz-Carlton Destination Club

7   (a.k.a. Ritz-Carlton Membership Program). But Defendants later removed some of the most

8   desirable resorts from this program and/or caused other facilities to remove themselves from the

9   program. Both the Ritz-Carlton Destination Club Property at Bachelor Gulch Colorado and the

10   Ritz-Carlton Destination Club Property at Jupiter, Florida voted to terminate their respective

11   management agreements with the RC Management, and consequently, their affiliation agreements

12   with the Ritz-Carlton Destination Club, as a direct result of misconduct described herein.

13        58.    At the same time, Defendants have diluted the exclusive nature of the Lake Tahoe

14   Ritz and the Ritz-Carlton Membership Program through a merger with a much larger, less

15   exclusive program. On or about July 17, 2012, Defendants announced their intention to

16   "affiliate" the Ritz-Carlton Destination Club with the Marriott Vacation Club destinations. In

17   2014, Defendants used their control over Cobalt, the "Program Manager" of the Ritz-Carlton

18   Destination Club, to effectuate this merger, which required Cobalt's agreement.

19        59.    Now, many thousands of Marriott Vacation Club members — who paid

20   approximately a third of the purchase prices and pay approximately a third of the annual fees —

21   have access to resorts that were formerly only available to Plaintiffs and other Ritz-Carlton Club

22   members.

23        60.    As one would expect of rational economic actors, these new members have availed

24   themselves of the superior Ritz-Carlton facilities. As a result of this dilution, Plaintiffs have had

25   difficulty obtaining the full 21 days of use they purchased for each 1/12th interest.

26        61.    Further, as a result of the Marriott Vacation Club "merger" and the other

27   misconduct alleged herein, Defendants have violated Cal. Bus. & Prof. Code § 11252 by

28   "encumber[ing] the accommodations of the time-share plan in a manner that [] materially and

1    adversely affect[s] the use rights of the [Plaintiffs] without the written assent of not less than 51

2    percent of the time-share interest owners other than the developer." Cal. Bus. & Prof. Code §

3    11252. Plaintiffs are now unable to sell their units.

4          62.    In May 2015, Plaintiff Thomas F. Reiser, Jr. ("Reiser") contacted real estate agent

5    Liza Killen ("Killen") of the Northstar Office of Tahoe Mountain Realty to inquire about selling

6    his Fractional Unit. On May 19, 2015, Reiser emailed Killen asking: "Any resale action on the

7    Ritz Carlton Fractionals?" On the same day, Killen responded: "Nothing. There's a winter 2 br

8    plus den on the market for $5k. All other listings either expired or been cancelled."

9          63.    In May 2016, Reiser contacted a second Northstar real estate agent Sam Drury of

10   Padden Properties to again inquire about selling his Fractional Interest. Mr. Drury replied:

11   "Thanks for your inquiry of fractional ownerships in Northstar. . . [In the last two years], only one

12   such property has sold from the . . . Ritz Carlton Club - a 2 bedroom, 2.5 bath residence was listed

13   and sold for $5,000 on 17 December 2015. In my many years' experience of Northstar area real

14   estate, this particular property may have suffered the worst of economic setbacks. Shares that sold

15   for more than $200,000 have lost nearly ALL value. . . The only inquiries we ever receive on the

16   single sale were quickly dismissed when the buyers learned the dues amount and usage structure.

17   It is clear there's no market for this product at all." (Capitalization in the original.)

18         64.    As a result of these actions, Plaintiffs have been severely injured. Plaintiffs must

19   continue to pay the higher annual dues or lose their use privileges and face litigation. Selling is

20   not an option. There is no market for these units, and certainly no way to recoup anything close

21   to the substantial purchase prices.

22         65.    Defendants have described the Membership Program as being "appurtenant" to the

23   deed, meaning it continues for as long as the corresponding ownership interest lasts. Plaintiffs do

24   not have the option of cancelling their membership. The Purchase Contract further provides:

25   "membership in the [Ritz-Carlton] Membership Program may not be partitioned from ownership

26   of a Club Interest." Thus, Plaintiffs must continue to pay their annual dues (which include the

27   membership program dues) for as long as they own their property. They cannot terminate that

28   obligation without ridding themselves of their deeds, but no one is willing to buy them, and

- 16 -

1  Defendants only agree to take them back when it serves their interests, and in many instances it

2  does not serve their interests to do so.

### SOURCES OF FIDUCIARY DUTIES

#### Overview

66.     In a condominium without fractional units, the scope of a condominium

association's fiduciary duties is circumscribed by the fact that the condominium association's

authority covers only common areas and does not extend into control over the individual units.[7]

Here, however, a distinct set of governing documents establishing a *second* association, the *Club

Interest Association,*[8] and grants that entity (and by extension its designated agents, including RC

Management and Cobalt) authority over the separately-deeded property interests (not just

common areas) that each individual fractional owner purchased.  The scope of the fiduciary duties

at issue here is, therefore, different from the normal condominium context because the scope of

the Club Interest Association's authority over each Plaintiffs' fractional property interest is more

extensive.

67.     The Club Interest Declaration empowers the Club Interest Association with all

powers necessary to ensure the proper functioning of each individual Club Interest Unit

(fractional unit), and the power to delegate that authority to a professional management

company.  The "Governing Instruments" include the Declaration of Covenants, Conditions and

Restrictions for the Highlands Resort West Parcel Club dated May 30, 2008 ("Club Interest

Declaration"), the Articles of Incorporation for Highlands Resort West Parcel Club, ("Articles"),

the Bylaws for Highlands Resort West Parcel Club, ("Bylaws"), Rules and Regulations for

Highlands Resort West Parcel Club, and the Membership Program Affiliation Agreement,

("Affiliation Agreement").[9]

68.     On May 16, 2008, the Club Interest Association formed and controlled by the

---

[7]     *See, e.g.,* the Condominium Declaration in this case.
[8]     *See* Club Interest Declaration.
[9]     *See* Declaration of Covenants, Conditions and Restrictions and Reservation of Easements for the Highlands Resort West Parcel Club, recorded June 9, 2008, paragraph 1.53.

SECOND AMENDED COMPLAINT

1  developer through the appointment of its employees and agents as directors,[10] entered into the

2  "Highlands Resort Club Association Operating Agreement" with the developer's affiliate, the

3  Ritz-Carlton Management Company.  This operating agreement clearly establishes that the RC

4  Management is acting for the benefit and as the agent of both the Club Interest Association and

5  its members, the Plaintiffs herein.  Pursuant to its contractual and statutory authority to hire

6  subagents, RC Management, in turn, delegated significant managerial authority and control over

7  Plaintiffs' use of their Club Interest Units to its sub-agent, Cobalt, which is another affiliate of

8  the developer.  These agency and sub-agency arrangements give rise to fiduciary duties.[11]

9       69.    Via the Management Agreement, Affiliation Agreement, and other governing

10  documents and the appointment by RC Development of its employees and agents to the Club

11  Interest Association board, RC Development and its affiliates, RC Management and Cobalt, have

12  attained near complete control over the fractional interests and appurtenant membership benefits

13  that Plaintiffs purchased.  This sweeping control over Plaintiffs' deeded property interests,

14  including appurtenant membership benefits, gives rise to fiduciary duties.[12]

15       70.    Plaintiffs retained only two powers.  The first one is limited and underscores the

16  authority granted to Defendants: Plaintiffs retained the right to use a unit for 21 days, but only if

17  they followed the procedures applicable to a reservation system operated by Cobalt.  Second,

18  Plaintiffs, as members of the Club Interest Association, could vote to terminate RC Management

19  and with it, Cobalt.  But doing so would mean the loss of the Ritz-Carlton brand attached to their

20  fractional interests, and also result in their expulsion from the Ritz-Carlton Membership Program.

---

[10]    Articles of Incorporation for the Nonprofit Mutual Benefit Corporation, "Highlands Resort Club Association, Inc., signed on May 5, 2008, and filed with the California Secretary of State on June 3, 2008, provide that the association was formed "to manage a fractional interest development located in Placer County, California to be known as Ritz-Carlton Club, Lake Tahoe" and "To manage, operate and maintain the fractional program of a high quality, first-class resort condominium in accordance with the Declarations of Covenants, Conditions and Restrictions for the Highlands Resort West Parcel Club."

[11]    See Streit, 82 Cal.App.4th at 446, n. 3 ("if an agent is authorized by the principal to employ a subagent, the subagent owes the same duties to the principal as does the agent"); Sequoia Vacuum Systems, 229 Cal.App.2d at 287 ("Every agent owes his principal the duty of undivided loyalty.  During the course of his agency, he may not undertake or participate in activities adverse to the interests of his principal").

[12]    See Vai, 56 Cal.2d at 338 ("The key factor in the existence of a fiduciary relationship lies in control by a person over the property of another").

SECOND AMENDED COMPLAINT

**The Developer, RC Development, Retained Control over the Association**

71.    Through the Club Interest Declaration, the developer/declarant RC Development intended to "establish a common scheme and plan for the use, enjoyment, repair, maintenance, restoration and improvement of the Club Interest Development and Common Furnishings and the interests therein conveyed" and expressly declared the governing documents to be in furtherance of "enhancing the desirability and enjoyment of the Club Interest Development, and the interest or interests therein to be conveyed."[13]

72.    RC Development and its alter egos and/or successors owe fiduciary duties to Plaintiffs because, through all relevant times herein, they have retained control over the Club Interest Association through the appointment of developer-affiliated directors to the Club Interest Association Board of Directors.  As such, the Club Interest Association and the developer, RC Development, at all relevant times herein owed Plaintiffs a fiduciary duty to operate the Club Interest Association and manage Plaintiffs' fractional interests for the benefit of and with loyalty towards Plaintiffs, not the developer or Marriott Vacations Worldwide or any other Defendant.[14]

**The Management Agreement Creates a Fiduciary Duty for RC Management**

73.    The Club Interest Declaration, Section 4.3 provides: "The Club Interest Association shall have the authority to engage and the obligation to use its best efforts to engage and maintain a reputable firm as the Operating Manager for the Club Interest Development and as Program Manager for the operation of the Membership Program."  Indeed, given the complexities involved in managing fractional units, California law *mandates* that the Club Interest Association hire a professional management company, and further establishes the authority of the professional management company to hire sub-agents.[15]

---

[13]    *See* Declaration of Covenants, Conditions and Restrictions and Reservation of Easements for the Highlands Resort West Parcel Club, recorded June 9, 2008, page 2.

[14]    *See Raven's Cove Townhomes*, 114 Cal.App.3d at 799-800 (holding developer owes fiduciary duties while it controls association board and stating, "Thus, a developer and his agents and employees who serve as directors of an association . . . may not make decisions for the Association that benefit their own interests at the expense of the association and its members"); *Cohen v. S & S. Construction Co.*, 151 Cal.App.3d at 945 ("This fiduciary duty extends to individual homeowners, not just the homeowners association").

[15]    *See* Cal. Bus. & Prof. Code § 11267(a)(2).

SECOND AMENDED COMPLAINT

74.     On May 16, 2008, the Club Interest Association entered into the "Highlands Resort Club Association Operating Agreement" with its affiliate, the RC Management.  Pursuant to paragraph 2 therein, captioned "Appointment and Acceptance of Operator Agency," RC Management agreed "to act on behalf of the Club Association *and its members* as the exclusive operating entity of the Club and to manage the daily affairs of the Club."  (Emphasis added.)

75.     On March 19, 2010, the Club Interest Association entered into the "Highlands Resort Club Association *First Amended* and Restated Operating Agreement" ("Management Agreement") with its affiliate, the RC Management.  Pursuant to paragraph 3 therein, captioned "Appointment and Acceptance of Operator," RC Management agreed "to act on behalf of the Club Association *and its members* as the exclusive operating entity of the Club and to manage the daily affairs of the Club."  (Emphasis added.)

76.     Both the original and the amended and restated Management Agreements, in paragraphs 3.2 and 4.2 respectively, provide that if the "Club Association is terminated, then the owners of Club Interests ("Club Interest Owners") shall, as to their separate interests, *continue to be a party to this agreement and bound by the provisions hereof*, and the Operating Company shall manage such interests pursuant to the provisions of this Agreement . . . ."  (Emphasis added.)

77.     Paragraph 5 of the Management Agreement, captioned "Delegation of Authority," provides: "[RC Management], on behalf of and at the expense of, the Club Association, to the exclusion of all other persons including the Club Association and its members, shall have all the powers and duties of the Board of Directors of the Club Association (the "Board") as set forth in the Articles of Incorporation and the governing documents of the Club Association (except such thereof as are specifically required to be exercised by the Board or its members) . . . ."

78.     In addition, the Management Agreement specifically delegated to RC Management absolute control over Plaintiffs' deeded property interests, including authority over the rules and regulations governing each plaintiffs' use of a fractional unit (¶ 5(L)), and all authority needed to maintain the Club Interest Units, including the determination of membership dues (¶ 5(I)).  In addition, the Management Agreement gave RC Management authority to

1   conduct a wide range of activities on behalf of the Club Interest Association, including

2   management of employees (¶ 5(A)); preparing the Association's budget, keeping financial

3   records, and managing funds received on behalf of the Association (¶¶ 5(H), 5(F) and 5(J)).

4       79.    Paragraph 5(S) of the Management Agreement provides RC Management with the

5   authority to:

6         "Engage a program manager through an affiliation agreement, who shall manage and

7         administer the reservation procedures and exchange program ('Program Manager') for

8         The Ritz-Carlton Club Membership Program (the 'Membership Program') through which

9         (i) all Club Interest Owners reserve the use of accommodations at the Club pursuant to the

10         Reservation Procedures . . . The Program Manager shall have the broadest possible

11         delegation of authority regarding administration of the Reservation Procedures. . . . [RC

12         Management] on behalf of the Club Association shall assess the Club Interests Owners the

13         reasonable cost (as determined by the Program Manager) of operating such Reservation

14         Procedures, which cost shall be included as part of the Member Dues."

15       80.    Paragraph 15 of the Management Agreement provides, "As compensation for its

16   services hereunder, [RC Management] shall receive an annual net fee, free from all charges and

17   expenses" of $787.86 (in 2010 dollars) "per Club Interest from the Club Interest Owners."

18       81.    The RC Management is the agent of the Plaintiffs based on the terms of the

19   Management Agreement (which explicitly refers to the Management Company as the agent of the

20   Club Association and its members), as well as by operation of law.  As such, the RC Management

21   owes Plaintiffs fiduciary duties, including the duties of loyalty and the duty to avoid self-dealing.

22       82.    In addition, based upon the high degree of control over Plaintiffs' Fractional

23   Units arising from its authority, as set forth in the Management Agreement, RC Management

24   owes Plaintiffs fiduciary duties, including a duty of loyalty and the duty to avoid self-dealing.

25   **The Affiliation Agreement Gives Rise to Fiduciary Duty Owed by Cobalt**

26       83.    Pursuant to its contractual and statutory authority to hire subagents, RC

27   Management, in turn, delegated managerial authority and control over Plaintiffs' use of their Club

28   ///

1    Interest Units to its sub-agent, Cobalt, which is another affiliate of the developer and a wholly-

2    owned Marriott subsidiary.

3            84.     On May 16, 2008, Cobalt entered into "The Ritz-Carlton Club, Lake Tahoe

4    Membership Program Affiliation Agreement" ("Affiliation Agreement") with RC Development,

5    RC Management, and the Highlands Resort Club Association. Pursuant to the Affiliation

6    Agreement, the Plaintiffs became affiliated with and/or members of the Ritz-Carlton Membership

7    Program.

8            85.     Paragraph 1.2 of the Affiliation Agreement provides: "By acceptance of a

9    conveyance of a Residence Interest (defined below) at the Subject Club . . . each Member is

10   deemed to have consented to the terms and conditions of this Agreement and to have further

11   consented to the appointment of the Association as the authorized representative to act on behalf

12   of the . . . Member with respect to the provisions of this Agreement."

13           86.     Cobalt is the Program Manager of the Ritz-Carlton Club Membership Program

14   and also operates the reservation system through which Plaintiffs obtain use of their allotted

15   number of days at the Lake Tahoe Ritz and obtain access to the sister Ritz-Carlton Destination

16   Clubs in the Ritz-Carlton Club Membership Program.  The Affiliation Agreement, paragraph

17   7.1(a) provides: "The Program Manager (Cobalt) may, in its sole discretion, elect to affiliate other

18   locations with the Membership Program as Member Clubs or Associated Clubs from time to time.

19   Neither the Developer, Association, nor Operator shall be entitled to participate in or consent to

20   the Program Manager's decision in this regard."

21           87.     Based upon the terms of the Management Agreement and the Affiliation

22   Agreement, Cobalt is the agent or subagent of the Plaintiffs, and as such, owes Plaintiffs a

23   fiduciary duty, including a duty of loyalty and duty to avoid self-dealing.

24           88.     In addition, based upon the high degree of control over Plaintiffs' Fractional Units

25   arising from its authority as set forth in the Affiliation Agreement, Cobalt owes Plaintiffs

26   fiduciary duties, including a duty of loyalty and duty to avoid self-dealing.

27   ///

28   ///

SECOND AMENDED COMPLAINT

### FIRST CAUSE OF ACTION

#### (Rescission, Cal. Civ. Code § 1689, Against All Defendants)

89.     Plaintiffs incorporate by reference the allegations contained in the preceding and subsequent paragraphs as if fully set forth in this cause of action.

90.     When purchasing their fractional interests, Plaintiffs justifiably understood that Defendants would sell 336 fractional interests in the 28 Club Interest Units, or at least a sufficient number of fractional interests to make the fractional offering viable.  A material mistake of fact giving rise to a right to rescind exists by virtue of: (a) Defendants' act of de-annexing 17 Club Interest Units and selling them as condominiums; and/or (b) the fact Defendants sold only a fraction of the 336 promised and/or contemplated fractional interests.

91.     Plaintiffs further understood that the Lake Tahoe Ritz would be operated and maintained as an exclusive Ritz-Carlton Club open only to fractional owners at the Lake Tahoe Ritz and other properties included in the Ritz-Carlton Membership Program.  The fact Defendants gave access to these properties to members of the Marriott Vacation Club also constitutes a material mistake of fact giving rise to a right to rescind.

92.     Service of this Complaint and related pleadings on Defendants constitutes notice of rescission of the contracts between Plaintiffs and Defendants.  Plaintiffs seek a return of the purchase price each paid, plus all other sums paid to Defendants, including but not limited to the annual dues.

93.     Pursuant to Cal. Civil Code § 1692, Plaintiffs are also entitled to recover the consequential damages they sustained as a direct and proximate result of Defendants' conduct in an amount to be determined at trial in excess of the jurisdictional threshold of this Court.

### SECOND CAUSE OF ACTION

#### (Breach of Contract Against All Defendants)

94.     Plaintiffs incorporate by reference the allegations contained in the preceding and subsequent paragraphs as if fully set forth in this cause of action.

///

///

- 23 -

95.    Plaintiffs entered into one or more standardized contracts with Defendants, including the Purchase Contract, the Condominium Declaration, and/or the Club Declaration (collectively, "the Contract").

96.    Plaintiffs performed all, or substantially all, of the significant things that the Contract required them to do, and/or they were excused from doing those things.  All conditions required by the Contract for Defendants' performance occurred and/or were excused.

97.    In the Contract, Defendants, and each of them, promised to sell fractional interests in all 28 Club Interest Units, or in other words a total of 336 fractional interests.  Alternatively, Defendants promised to sell a sufficient number of fractional interests to make the Lake Tahoe Ritz fractional offering viable.

98.    Defendants, and each of them, materially breached the Contract by de-annexing 17 Club Interest Units and then converting and selling them as full-ownership condominiums. Defendants further breached the Contract by selling only a fraction of the promised 336 fractional interests, and/or by abandoning efforts to market and sell these fractional interests after selling or 60 or so of them.

99.    Defendants' breach of the contract has damaged Plaintiffs in an amount to be proved at trial that is in excess of the jurisdictional limit of this Court.

### THIRD CAUSE OF ACTION

**(Breach of the Implied Covenant Against All Defendants)**

100.    Plaintiffs incorporate by reference the allegations contained in the preceding and subsequent paragraphs as if fully set forth in this cause of action.

101.    A covenant of good faith and fair dealing is implied in the Contract by operation of law.  Pursuant to this implied covenant, Defendants could not legally interfere with the rights of Plaintiffs to receive the benefits due to them under the Contract, or do anything inconsistent with any promises which a reasonable person in the position of the promisee would be justified in understanding were included in the Contract.

102.    Defendants breached the implied covenant of good faith and fair dealing by: (a) acting in a manner that, as more fully alleged above, unfairly interfered with Plaintiffs right to

1   receive the benefits of the Contracts; and/or (b) acted inconsistently with implied promises that

2   Plaintiffs reasonably understood to be included in the Contract.

3        103.    Defendants' breach of the implied covenant of good faith and fair dealing has

4   damaged Plaintiffs in an amount to be proved at trial that is in excess of the jurisdictional limit of

5   this Court.

6                   **FOURTH CAUSE OF ACTION**

7             **(Breach of Fiduciary Duty Against All Defendants)**

8        104.    Plaintiffs incorporate by reference the allegations contained in the preceding and

9   subsequent paragraphs as if fully set forth in this cause of action.

10        105.    Defendants RC Development and Ritz-Carlton Sales, owed Plaintiffs a fiduciary

11   duty that required them to continue marketing and selling fractional interests in the 28 Club

12   Interest Units at the Lake Tahoe Ritz until all 336 fractional interests were sold, or at least until a

13   sufficient number were sold to make the fractional offering viable.  Defendants, and each of them,

14   breached this fiduciary duty first by de-annexing and selling 17 of the Club Interest Units in 2011

15   as full-ownership condominiums, and second by ceasing to market and sell further fractional

16   interests.

17        106.    In addition, RC Development and each of the other Defendants assumed fiduciary

18   duties to directly to Plaintiffs by retaining and exercising control over the Club Interest

19   Association, as more fully alleged in the introduction and "Source of Fiduciary Duties" sections.

20   Defendants retained this control through the means set forth above, and by selecting their

21   employees, representatives and/or agents to serve on the board of the Club Interest Association.

22        107.    Defendants, including RC Management and Cobalt, also assumed fiduciary duties

23   to Plaintiffs by assuming almost complete control not just over the common areas, but also over

24   the separately deeded fractionalized interests that Plaintiffs purchased.

25        108.    Defendants and/or their agents on the Club Interest Association Board had a duty

26   to act with the utmost good faith in the best interests of Plaintiffs.  Defendants and/or their agents

27   on the Club Interest Association breached this duty by advancing Defendants' interests at the

28   ///

1    expense of Plaintiffs' interests, and/or by failing to act as a reasonably careful fiduciary/board

2    member would have acted under the same or similar circumstances.

3         109.    By the actions described elsewhere in this Complaint, Defendants profited at the

4    Plaintiffs' expense in breach of their fiduciary duties.  Despite the destruction of the value of the

5    Fractional Units, Plaintiffs continue to pay steadily increasing annual dues, much of which goes

6    directly to Defendants in the form of lucrative "management fees" and other "reimbursements"

7    supposedly incurred by Defendants under the management contracts, including payroll related

8    costs.  Plaintiffs pay these management fees and reimbursements to the Defendants regardless of

9    usage or occupancy.

10        110.    Due to the conduct of the Defendants described herein, the Fractional Units owned

11   by Plaintiffs are now virtually worthless and Defendants, including Marriott Vacations

12   Worldwide, Marriott Vacation Club International, RC Management, and Cobalt Travel Company,

13   LLC have been unjustly enriched by the wrongful and unlawful conduct described herein.

14        111.    Defendants' breach of fiduciary duties has damaged Plaintiffs in an amount to be

15   proved at trial that is in excess of the jurisdictional limit of this Court.

16                        **FIFTH CAUSE OF ACTION**

17              **(Violations of California's UCL Against All Defendants)**

18        112.    Plaintiffs incorporate by reference the allegations contained in the preceding and

19   subsequent paragraphs as if fully set forth in this cause of action.

20        113.    The UCL prohibits, *inter alia*, business practices that violate other provisions of

21   law.  Bus. & Prof. Code § 17200.  The UCL authorizes a private right of action by anyone who

22   has suffered injury in fact and allows recovery of amounts which may be necessary to restore to

23   any person in interest any money or property which may have been acquired by means of any

24   practice that violates the UCL.  Bus. & Prof. Code § 17203.

25        114.    Defendants have violated Business & Professions Code § 11252 by

26   "encumber[ing] the accommodations of the time-share plan in a manner that [] materially and

27   adversely affect[ed] the use rights of the [Plaintiffs] without the written assent of not less than 51

28   percent of the time-share interest owners other than the developer."  Bus. & Prof. Code § 11252.

- 26 -

SECOND AMENDED COMPLAINT

1  As more specifically alleged above, Defendants' conduct has caused the value of Plaintiffs'

2  fractional interests to collapse such that they are unable to sell at any price and thus are locked

3  into a perpetual liability.

4      115.   Defendants' practices also violated the UCL's "unfair" prong in that they caused

5  substantial injury to Plaintiffs, are not outweighed by any countervailing benefits to consumers or

6  competition, and caused injury that Plaintiffs themselves could not reasonably have avoided.

7      116.   As a result of Defendants' unlawful and unfair practices alleged herein, Plaintiffs

8  have suffered injury in fact and lost money or property and are thus entitled to full restitution.

9      117.   Defendants have derived substantial revenues from their unlawful and unfair

10  business practices.  Plaintiffs have been deprived of property to which they are entitled and/or in

11  which they have a vested interest.

12      118.   Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs are entitled to an order

13  requiring Defendants to restore to Plaintiffs all the money or property that Defendants may have

14  acquired by means of such unfair competition.

15  **SIXTH CAUSE OF ACTION**

16  **(Aiding & Abetting)**

17  **(Against All Defendants)**

18      119.   Plaintiffs incorporate by reference the allegations contained in the preceding and

19  subsequent paragraphs as if fully set forth in this cause of action.

20      120.   Defendants, and each of them, aided and abetted the remaining Defendants'

21  scheme to commit the wrongful and unlawful conduct alleged herein.

22      121.   The aiding and abetting Defendants had prior notice of the remaining Defendants'

23  wrongful and unlawful activities, but nonetheless acted affirmatively to help the other Defendants

24  perpetrate their scheme against Plaintiffs.

25      122.   Defendants' aiding and abetting the wrongful and unlawful conduct alleged herein

26  has damaged Plaintiffs in an amount to be proved at trial that is in excess of the jurisdictional

27  limit of this Court.

28  ///

SECOND AMENDED COMPLAINT

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray judgment against Defendants, and each of them, as follows:

    1.    For special damages according to proof;

    2.    For general damages according to proof;

    3.    For restitution of all monies paid to the Defendants or their assigns, according to proof;

    4.    For rescission of all agreements entered into with Defendants and the return of all consideration paid to Defendants.

    5.    For an Order pursuant to Cal. Civil Code §§ 2223, 2224, and 3517 that all funds improperly obtained by Defendants are held in a constructive trust for Plaintiffs' benefit, and a further Order requiring Defendants to return such improperly-obtained funds, including all derivative profits earned, to Plaintiffs in order to prevent Defendants' unjust enrichment;

    6.    For attorneys' fees and costs according to proof;

    7.    For pre-judgment and post-judgment interest; and

    8.    For such other and further relief as the Court may deem proper.

**JURY DEMAND**

If for any reason this case is not tried by judicial reference as contractually required, Plaintiffs demand a trial by jury on all issues so triable.

Dated: May 25, 2016           LAW OFFICE OF MICHAEL J. REISER

                            THE MEADE FIRM P.C.

                            By: /s/ Tyler Meade
                                TYLER MEADE
                                Attorneys for Plaintiffs

SECOND AMENDED COMPLAINT