**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-01301-PAB-GPG

**RCHFU, LLC,** *et al.*

Plaintiffs,

v.

**MARRIOTT VACATIONS WORLDWIDE CORPORATION,** *et al.*

Defendants.

___

**PLAINTIFFS' OPPOSITION TO MARRIOTT DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE EVIDENCE OF NON-AFFILIATION-RELATED DAMAGES AND CONDUCT**

___

## I.  INTRODUCTION

Marriott's present motion to limit the scope of Plaintiffs' case to the MVC affiliation is a repeat of its motion for summary judgment. A motion *in limine* is not the proper vehicle for Marriott's arguments under Rule 56, and this motion should be denied for that reason alone.

But in any event, as Plaintiffs explained in detail in their response to Marriott's summary judgment motion (Dkt. No. 472), this case has always been about Marriott's overall use of Plaintiffs' property to sell MVC points at Plaintiffs' expense. The operative complaint – as well as each prior amended complaint – includes allegations about misconduct from well before 2014. In their complaint, Plaintiffs quote and attach a cease-and-desist letter from 2012 making clear that *any* use of Ritz-Aspen interests for MVC members was a breach of fiduciary duty – not just

1

MVC members' access from the affiliation, which did not take place until two years later. And over the nearly two-year long discovery period, Plaintiffs pursued discovery on MVC members' access to Ritz properties -- along with the profits Marriott made from that access -- dating back to 2011. Plaintiffs even moved to compel documents from 2011 when Marriott refused to produce them. These facts contradict Marriott's claim that it was surprised to see Plaintiffs' experts opine on conduct and damages dating back to 2011.

Marriott's pre-affiliation conduct is separately admissible to show willfulness. Plaintiffs will need to prove willful and wanton conduct to justify an award of punitive damages, and the fact that Marriott engaged in a years-long course of conduct to use Plaintiffs' property to profit at Plaintiffs' expense is indicative of willful conduct.

## II. ARGUMENT

### A. Marriott's Attempt to Re-Argue Its Summary Judgment Motion Is Improper

Marriott's motion to limit the scope of Plaintiffs' claims does not serve the purpose of a motion *in limine*, which should be to streamline trial by resolving certain evidentiary issues in advance. *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 2014 WL 348637, at *2 (D. Colo. Jan. 31, 2014). A motion *in limine* is not a proper vehicle for raising issues pursuant to Fed. R. Civ. P. 12 or 56, and this Court has declined to address arguments as to the legal or factual sufficiency of a claim under the guise of a motion *in limine*. *Id.*

Marriott's present motion repeats the exact same arguments from its Rule 56 motion for partial summary judgment. *See* Motion for Summary Judgment (MSJ) at Dkt. No. 441. In both motions, Marriott argues that Plaintiffs' claims and damages should be limited to the MVC affiliation that took effect in 2014; and both are grounded in the false premise that Plaintiffs

2

never pled or pursued any discovery regarding MVC members' access to the Ritz-Aspen starting from 2011. *See* MSJ at pp. 6-19; Dkt. No. 469.

### B. Plaintiffs' Liability and Damages Claims Encompass Pre-Affiliation Conduct and Harm

But as Plaintiffs explained in their summary judgment opposition, they have alleged claims regarding Marriott's pre-affiliation conduct since the start of this case. Plaintiffs' Opp. to MSJ ("Opp."), Dkt. No. 472 at pp. 2-14. Plaintiffs' complaint includes numerous allegations about how Marriott began promoting Ritz-Aspen access to MVC members well before the affiliation. For example, paragraph 70 of the complaint quotes a 2012 cease-and-desist letter from the Association's attorney stating that "any practice of allowing the use of the [Ritz-Aspen interests] by the MVC Members may constitute … one or more breaches of fiduciary duties …" Seventh Amended Complaint ("Complaint"), Dkt. No. 430 at ¶ 70. Allegations referring to this letter (and the letter itself, which was attached to the complaint and therefore, under Rule 10, part of the allegations) put Marriott on notice that Plaintiffs were alleging that any use of the Ritz-Aspen – including developer and trust-owned inventory – to promote the sale of MVC points is a breach of fiduciary duty. *See* Opp. at p. 10. The complaint mentions ten times that Marriott's misconduct relates to its "affiliation/exchange/points program" that allowed MVC members to access Plaintiffs' luxury property – not just the affiliation itself. *See, e.g.*, Complaint at ¶ 99. The Court recognized that Plaintiffs' claims pertain to conduct from well before the affiliation when it noted: "The main events at issue in this case began when Cobalt's general manager sent a letter dated July 17, 2012 …" Dkt. No. 210 at p. 5.

Plaintiffs also pursued discovery for more than two years regarding pre-affiliation conduct. For instance, in September 2017, Plaintiffs requested documents regarding MVC points

3

sales, points consumption at Ritz properties, and all MVC members who had access to Ritz properties from 2011 to the present. Dkt. No. 472 at pp. 4-5. During depositions, Plaintiffs questioned witnesses about MVC members' use of developer-owned inventory, and transfer of Ritz inventory into the Marriott Vacation Club trust (which was a way to allow MVC members access to Ritz properties that was distinct from the affiliation). *Id*. at pp. 5, 11-12. Plaintiffs sought documents dating back to 2012 about the profits Marriott made from selling MVC points – and Plaintiffs even brought Marriott's failure to produce documents from 2011 to the Court's attention in a discovery dispute chart. *See* Dkt. No. 471-21 at p. 11.

Plaintiffs moved to compel an unredacted version of a 2012 memo laying out Marriott's plan for its Ritz-Carlton inventory and the MVC product. Dkt. No. 239. The memo addressed "a strategic plan to transfer the remaining unsold [RCDC] inventory … to the [MVC] trust." Dkt. No. 239-2 at p. 2. Marriott declared in the memo that one of the "milestones" would be reopening Ritz-Carlton Destination sale distribution centers to sell MVC memberships. *Id*. at p. 9. As Plaintiffs put it in that motion to compel, the memo "addresses issues at the heart of this case; e.g., Marriott's plans for its Ritz-Carlton Destination Club inventory and Marriott Vacation Club product." Dkt. No. 239 at p. 2. The memo places no focus on the affiliation, and was written over two years before the affiliation took effect.

Plaintiffs' opposition to Marriott's summary judgment motion includes further detail and additional examples showing how this case has always been about Marriott's overall scheme to use the Ritz-Aspen to sell MVC points at Plaintiffs' expense – not just about the 2014 affiliation. Opp., Dkt. No. 472. Given Plaintiffs' numerous allegations and pursuit of discovery dating back

4

to 2011, Marriott's claim that Plaintiffs' experts are now offering "entirely new damages theories" based on pre-affiliation conduct is puzzling.

In fact, this case has always concerned Marriott's breach of fiduciary duties by marketing to its MVC members access to Plaintiffs' property both before and after the affiliation. And Plaintiffs have vigorously pursued both damages (the destruction in value to Plaintiffs' fractional interests) and disgorgement (the profits Marriott reaped from its fiduciary breaches) during the period from 2011 forward. Marriott is free to argue that at most, only the affiliation was unlawful or that compensation should be limited to affiliation-related damages and disgorgement, but it has no basis to preclude Plaintiffs from presenting their full range of relevant evidence.

### C. Evidence of Pre-Affiliation Conduct Is Also Relevant to Punitive Damages

Even if Plaintiffs had not plead allegations and pursued discovery regarding pre-affiliation conduct throughout the entire case, evidence of Marriott's use of the Ritz-Aspen to sell MVC points prior to the affiliation is independently admissible to show willfulness in support of Plaintiffs' punitive damages claim. The Court has already found that Plaintiffs have established a *prima facie* claim for punitive damages. Dkt. No. 237 at p. 8.

In order to justify an award of punitive damages, Plaintiffs need to prove Marriott's willful and wanton conduct. *Coors v. Security Life of Denver Ins. Co*., 112 P.3d 59, 66 (Colo. 2005). Willful and wanton conduct is conduct that the defendant purposely committed, "heedlessly and recklessly without regard to consequences or the rights of the plaintiff." *Id*. This standard is met "[w]here the defendant is conscious of his conduct and the existing conditions and knew or should have known that injury would result …." *Id*.

5

Marriott's use of the Ritz-Aspen to sell MVC points before the affiliation shows Marriott's willfulness. "A prior course of similar conduct, if believed by the jury, makes it more likely that the Defendants' acts … were willful and not merely coincidental or reactionary. It therefore meets the first two requirements—that the evidence be offered for a proper, non-propensity purpose and that the evidence be relevant under rules 401 and 402." *Guidance Endodontics, LLC v. Dentsply Int'l, Inc*., 705 F.Supp.2d 1265, 1271 (D.N.M. 2010). Marriott realized in 2011 and 2012 that abandoning the Ritz-Carlton Destination Club and using it to lure individuals into purchasing MVC points would lower the value of Plaintiffs' interests but bring greater profits to itself. Marriott also knew its strategy was likely unlawful: the 2012 cease-and-desist letter from the Association's lawyer, along with other evidence, gave Marriott notice that *any* use of allowing MVC members to access the Ritz-Aspen could constitute a breach of fiduciary duty to Plaintiffs. *See* Opp. at p. 10. Yet Marriott continued that course of conduct by implementing the 2014 affiliation against Plaintiffs' will, which granted MVC members permanent access to the Ritz-Aspen.

Marriott's pre-affiliation conduct in allowing MVC members to access the Ritz-Aspen, therefore, is highly probative evidence that Marriott *wantonly* flouted the law and *willfully* harmed its fiduciary in order self-deal -- reap greater profits by selling more MVC points at higher prices. *See Green v. Blitz U.S.A., Inc*., 2008 WL 5572822, at *1 (E.D. Tex. Sept. 30, 2008) (denying motion *in limine* to exclude evidence on other lawsuits involving the defendant, since such evidence showed the defendant's awareness of the dangerous condition at issue).

### III. CONCLUSION

For all the above reasons, Marriott's motion to preclude evidence of non-affiliation-related conduct and damages should be denied.

Dated: September 9, 2019                    Respectfully submitted,

>  */s/ Linda Lam*
>  Linda Lam (CA State Bar # 301461)
>  GIBBS LAW GROUP LLP
>  505 14th Street, Suite 1110
>  Oakland, CA 94612
>  Telephone: (510) 350-9700
>  E-mail: lpl@classlawgroup.com

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 9, 2019, I electronically filed the foregoing **PLAINTIFFS' OPPOSITION TO MARRIOTT DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE EVIDENCE OF NON-AFFILIATION-RELATED DAMAGES AND CONDUCT** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| **Michael J. Reiser**<br>Reiser Law, P.C.<br>1475 N. Broadway, Suite 300<br>Walnut Creek, CA 94596<br>michael@reiserlaw.com<br><br>**Matthew C. Ferguson**<br>The Matthew C. Ferguson Law Firm, P.C.<br>119 South Spring, Suite 201<br>Aspen, Colorado 81611<br>matt@matthewfergusonlaw.com<br><br>**Tyler R. Meade**<br>The Meade Firm P.C.<br>12 Funston Avenue, Suite A<br>San Francisco, CA 94129<br>tyler@meadefirm.com<br><br>***Attorneys for Plaintiffs*** | **Naomi G. Beer**<br>**Ian S. Marx, Esq.**<br>**Philip R. Sellinger, Esq.**<br>Greenberg Traurig, LLP<br>1200 17th Street, Suite 2400<br>Denver, Colorado 80202<br>Phone: (303) 572-6500<br>Fax: (303) 572-6540<br>BeerN@gtlaw.com<br>SellingerP@gtlaw.com<br>MarxI@gtlaw.com<br>*Attorneys for Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., Ritz-Carlton Management Company, LLC, Cobalt Travel Company, LLC and Lion & Crown Travel Company, LLC* |

>                              */s/ Linda Lam*

7