**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-01301-PAB-GPG

**RCHFU, LLC,** *et al.*

Plaintiffs,

v.

**MARRIOTT VACATIONS WORLDWIDE CORPORATION,** *et al.*

Defendants.

___

**PLAINTIFFS' OPPOSITION TO MARRIOTT DEFENDANTS' MOTION TO PRECLUDE TESTIMONY OF PLAINTIFFS' EXPERT, JONATHAN R. SIMON, DUE TO IMPROPER *EX PARTE* MEETING AND COMMUNICATIONS WITH MARRIOTT DEFENDANTS' EMPLOYEES**

___

Marriott's motion to exclude Jon Simon's expert opinions on the halo effect should be denied, because his attendance at an MVC sales presentation and discussion with sales representatives complied with Colorado Rules of Professional Conduct. These rules do not prevent an attorney (or by extension its agent) from communicating with non-decision-making employees who do not report to a company's attorneys. Further, even if the Court finds that Simon's discussion was not fully compliant, the draconian sanction Marriott seeks is disproportionate to any indiscretion on Simon's part, and an inappropriate remedy to seek on a motion *in limine*.

In any event, Simon's opinions do not depend on any information he learned from that presentation and have more than sufficient bases independent from those discussions. As such, at

1

most, even if Simon were precluded from testifying about his discussions with Marriott sale representatives, there are absolutely no grounds to exclude the entirety of his disgorgement-related opinions as Marriott seeks.

## I.     RELEVANT BACKGROUND

While Simon attended an MVC sales presentation as part of his due diligence here, it is something he regularly does to stay up-to-date on market and industry happenings. Deposition of Jon Simon ("Simon Depo."), Exh. A to Declaration of Linda Lam at 48:3-17. As a consultant in the hospitality and vacation ownership industry, Simon has attended sales presentations for most major timeshare brands, and has been retained by clients to provide feedback on presentations and salespersons. *Id*. at 48:3-8. During this MVC sales presentation, Simon learned about the benefits of MVC membership, saw a wall gallery featuring photos of different resorts in the MVC program, and asked various questions about membership. *Id*. at 50:24-52:17.

Although Simon mentioned his attending the MVC presentation in two footnotes of his expert report, the information he learned from it was in no way the "very premise" of his opinions, which are fully supported by other evidence as well as Simon's industry knowledge and experience. *Id*. at 55:7-13 (Q: "With respect to that meeting at the Newport Coast, that sales presentation, it's mentioned in your report, are you relying upon what occurred at the meeting?" A: "To form my opinion?" Q: "Yeah." A: "No."). Nor did Simon attend the presentation in an attempt to "manufacture evidence" for this case. Simon attends such presentations—Marriott's and those of the other three major timeshare companies—as a matter of course in his professional life, and it played a minor role in confirming his opinions. *Id*. at 48:3-17.

2

## II.     ARGUMENT

### A. Simon's Communications with Marriott's Sales Representatives Were Proper

There was nothing improper about Simon attending a timeshare sales presentation that would be open to anyone in the general public. Simon's communications with Marriott's sales representatives complied with Colorado Rule of Professional Conduct 4.2. Rule 4.2 provides that "a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter …." While the rule does apply to agents of attorneys such as experts, and prohibits communications with certain higher-level executives, it does not apply to employees such as sales representatives.

To provide guidance on Rule 4.2's application to communications with an employee of a represented organization, the Colorado Bar Association Ethics Committee issued Formal Ethics Opinion 69. Opinion 69 focuses on the group of employees described in Comment 7 of Rule 4.2, which states that the rule "prohibits communications with a constituent of the organization who supervises, directs or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization …" The Committee concluded that Rule 4.2 does *not* preclude a lawyer from interviewing employees of a represented organization, who are fact witnesses, but not part of the group identified in Comment 7. Formal Ethics Opinion 69 at p. 4. Therefore, any employee of a corporation, no matter how senior, "who does not have decision-making authority or regularly consult[s] with the organization's lawyer *concerning the matter involved* would not be protected by Colo. RPC 4.2 …." *Id*.

Here, Marriott does not even assert that Simon communicated with any Marriott employees who regularly consult with Marriott's counsel regarding this case, or who have authority to obligate Marriott in connection with this case. Simon simply attended an MVC sales presentation, where he asked sales employees about the benefits of MVC membership, including how could he could gain access to Ritz-Carlton Destination Clubs through MVC points. Nowhere does Marriott contend that any of these salespersons have the requisite decision-making authority to fall into the group described in Comment 7 of Rule 4.2. Therefore, these employees are not subject to Rule 4.2 protections.

The cases Marriott cites do not state otherwise. *Thome v. Cook*, 2012 WL 1586300, at *3 (D. Colo. May 4, 2012), is inapplicable because there, the court found that the plaintiffs' agent improperly contacted a *supervisor* of a represented organization to discuss the litigation – not an employee who had no supervisory rule, as is the case here. Nor does *McClelland v. Blazin' Wings, Inc.*, 675 F.Supp.2d 1074, 1077-78 (D. Colo. 2009), help Marriott. In that case, the court found that the plaintiff's counsel violated Rule 4.2 when its investigator contacted an employee of the defendant whose statements could *constitute admissions by the defendant*. No circumstances like that are present here. The sales representatives who spoke to Simon had no authority to bind Marriott with any admissions as to the propriety of Marriott allowing MVC members to access the Ritz-Aspen, which is the subject of this case.

Lastly, *Coleman v. Brown*, 938 F.Supp.2d 955, 968 (E.D. Cal. 2013), is similarly inapplicable. There, the court chose to strike expert reports written by defendant's experts who improperly interviewed *class members* – i.e. individuals who were themselves represented by counsel – outside the presence of the plaintiffs' counsel. *Coleman*, 938 F.Supp.2d at 963. That is

4

not the case here, where Simon was speaking to employees who were not themselves represented, and who had no supervisory role concerning the facts or issues involved in this case.

In sum, Marriott has failed to show that Simon's conversation with the sales representative violated Rule 4.2 or any other rule of professional conduct, meaning there is no basis to exclude his testimony.

### B. Simon's Opinions Do Not Depend on The Information He Learned from Attending the MVC Sales Presentations

Even if Simon violated rules by speaking to MVC sales representatives, there is no reason to strike his expert report because his opinions do not depend on anything he learned from those conversations. Simon Depo. at 55:7-17. Simon based his opinions on his review of a wide array of evidence, including Marriott's marketing materials, articles on the Ritz-Carlton brand and history, Marriott's SEC filings, internal Marriott e-mails and memoranda produced in the case, and deposition testimony. *See* Simon Report, Dkt. No. 473-1 at pp. 53-65. He relied on the evidence he reviewed, as well as his vast experience in the vacation ownership and hospitality industries, to arrive at his "halo effect" opinions. What Simon learned from the MVC sales presentation is only one of many bases for his opinions on the halo effect. Even if the Court disallowed Simon from testifying about this sales presentation, his opinions have ample independent bases; thus there are no grounds to strike his opinions.

### C. Even if Simon Did Not Fully Comply With Rule 4.2, Marriott's Request to Preclude the Entirety of Simon's Causation and Disgorgement Opinions Is Disproportionate, Draconian, and an Inappropriate Sanction for a Motion *in Limine*

Marriott's request that the Court strike Simon's entire "halo effect" opinion is a gross overreach that lacks any basis. Even if the Court finds that Simon violated any rule of professional conduct, the appropriate remedy would be to simply preclude him from mentioning

5

the sales presentation or conversations with sales representatives at trial. What Marriott seeks is vastly out of proportion with any potential wrong on Simon's part. As Marriott knows, Simon is an important witness on the issues of causation and the amount Marriott should disgorge for its breaches of fiduciary duty. *See Ebbert v. Nassau Cty.*, 2008 WL 4443238, at *13 (E.D.N.Y. Sept. 26, 2008) ("the Court does not see a need to 'throw out the baby with the bath water' … It is not unusual for district courts within the Second Circuit to strike parts of an expert's report and testimony and to retain others."); *McGill v. Corr. Healthcare Companies, Inc*., 2014 WL 6513185, at *1-2 (D. Colo. Nov. 20, 2014) (striking only a portion of an expert opinion for lack of factual foundation).

Dated: September 9, 2019                                     Respectfully submitted,

                                                             */s/ Linda Lam*
                                                             Linda Lam (CA State Bar # 301461)
                                                             GIBBS LAW GROUP LLP
                                                             505 14th Street, Suite 1110
                                                             Oakland, CA 94612
                                                             Telephone: (510) 350-9700
                                                             E-mail: lpl@classlawgroup.com

                                                             *Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 9, 2019, I electronically filed the foregoing **PLAINTIFFS' OPPOSITION TO MARRIOTT DEFENDANTS' MOTION TO PRECLUDE TESTIMONY OF PLAINTIFFS' EXPERT, JONATHAN R. SIMON, DUE TO IMPROPER EX PARTE MEETING AND COMMUNICATIONS WITH MARRIOTT DEFENDANTS' EMPLOYEES** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| **Michael J. Reiser**<br>Reiser Law, P.C.<br>1475 N. Broadway, Suite 300<br>Walnut Creek, CA 94596<br>michael@reiserlaw.com<br><br>**Matthew C. Ferguson**<br>The Matthew C. Ferguson Law Firm, P.C.<br>119 South Spring, Suite 201<br>Aspen, Colorado 81611<br>matt@matthewfergusonlaw.com<br><br>**Tyler R. Meade**<br>The Meade Firm P.C.<br>12 Funston Avenue, Suite A<br>San Francisco, CA 94129<br>tyler@meadefirm.com<br><br>*Attorneys for Plaintiffs* | **Naomi G. Beer**<br>**Ian S. Marx, Esq.**<br>**Philip R. Sellinger, Esq.**<br>Greenberg Traurig, LLP<br>1200 17th Street, Suite 2400<br>Denver, Colorado 80202<br>Phone: (303) 572-6500<br>Fax: (303) 572-6540<br>BeerN@gtlaw.com<br>SellingerP@gtlaw.com<br>MarxI@gtlaw.com<br>*Attorneys for Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., Ritz-Carlton Management Company, LLC, Cobalt Travel Company, LLC and Lion & Crown Travel Company, LLC* |

*/s/ Linda Lam*