IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 16-01301 PAB

RCHFU, LLC, et al.

      Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al.

      Defendants.

**MARRIOTT DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION TO PRECLUDE TESTIMONY OF PLAINTIFFS' EXPERT, JONATHAN R. SIMON, DUE TO IMPROPER *EX PARTE* MEETING AND COMMUNICATIONS WITH MARRIOTT DEFENDANTS' EMPLOYEES**

**INTRODUCTION**

Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC, The Cobalt Travel Company, LLC, and The Lion & Crown Travel Co., LLC (collectively, the "Marriott Defendants") moved for an order partially precluding the testimony at trial by one of Plaintiffs' three experts, Jonathan R. Simon, due to his improper *ex parte* meeting with, and questioning of, Marriott Defendants' sales executive employees under false pretenses, as part of his investigation and "due diligence" for his expert report in this case. Plaintiffs have failed to assert any colorable arguments in opposition to the Marriott Defendants' motion.

Most glaringly, Plaintiffs' opposition brief is entirely silent as to Colorado Rule of Professional Conduct 4.3—which the Marriott Defendants expressly identified as the basis for the

relief sought.[1] This is because no colorable argument in opposition can be made: Simon's conduct was clearly improper under Rule 4.3, which prohibits a lawyer (or their agent) who contacts an unrepresented individual from misrepresenting the reason for the contact, failing to disclose the existence of litigation or his/her role in the litigation, or stating or implying that he or she is disinterested—and, if the unrepresented person misunderstands the lawyer's or agent's role, the lawyer or agent must make reasonable efforts to correct the misunderstanding.

Here, it is *undisputed* that Simon, as an agent of Plaintiffs' counsel, failed to disclose the litigation, his role in the litigation, and that he was not disinterested; misrepresented the reason for his meeting with the Marriott Defendants' employees; and induced the Marriott Defendants' employees into making statements on topics that allegedly support Plaintiffs' claims. Having now asserted that Simon's opinions do not depend on or refer to the sales presentation he attended, Plaintiffs have no basis for referencing the sales presentation at trial – or opposing any relief to that effect.

However, Plaintiffs raise a straw man argument in opposing the exclusion of the portion of Simon's report and opinions on the existence and measurement of the "halo" effect, and they have *failed entirely* to even address the alternative relief the Marriott Defendants proposed: That is, although inadequate for the serious violations in this case, *at a minimum* Simon should be precluded from referencing any of the Marriott Defendants' sales presentations because his testimony on the topic has been tainted by his improper conduct in attending such a sales

---

[1] *See* ECF #471 (Marriott Defendants' Motion to Preclude Testimony of Plaintiffs' Expert, Jonathan R. Simon, Due to Improper *Ex Parte* Meeting and Communications with Marriott Defendants' Employees), at 9 ("Rule 4.3 of the Colorado Rules of Professional Conduct is implicated by Mr. Simon's actions here.").

presentation under false pretenses. As explained more fully below, the Marriott Defendants have established—and Plaintiffs have failed to refute—that Simon's violation of the Rules of Professional Conduct should not be countenanced and should be sanctioned by the Court through the exclusion of the part of his report and testimony dealing with the existence and measurement of the so-called "halo" effect.

## ARGUMENT

Under Colorado Rule of Professional Conduct 8.4(a), the Rules are violated by a lawyer's own actions *or* "through the acts of another" acting on behalf of the lawyer or as the lawyer's agent. Here, the record establishes that Simon: (1) after discussions with counsel, attended the sales presentation as part of his preparation and "due diligence for the subject litigation" and his expert report and opinion[2]; (2) attended the sales presentation three months after he was retained by Plaintiffs' counsel as an expert to provide a report on the "halo effect" specifically for use in this action[3]; (3) spoke with Plaintiffs' counsel a week before his attendance at the sales presentation[4]; (4) prepared a memorandum to Plaintiffs' counsel the day after the sales presentation, which summarizes what Simon claims took place at the sales presentation and was produced by Plaintiffs[5]; and (5) reported back to Plaintiffs' counsel regarding his attendance at the

---

[2] *See* ECF #473-1 (Simon Report (Exhibit A to the Omnibus Declaration of Ian S. Marx in Support of Marriott Defendants' Motions in Limine, ECF #s 466-471) ("Marx Decl.")), at 40 fn. 101 ("As part of the due diligence for the subject litigation, I attended a MVC Sales presentation"); ECF #473-15 (Deposition of Jonathan Simon (Exhibit O to the Marx Decl. ("Simon Tr.")), at 47:14-48:24, 54:6-17.
[3] ECF #473-1 (Simon Report, Marx Decl. Ex. A), at 4-6; ECF #473-15 (Simon Tr., Marx. Decl. Ex. O), at 11:5-11.
[4] ECF #473-15 (Simon Tr., Marx. Decl. Ex. O), at 53:13-54:17.
[5] *See* ECF #474-4 (Simon 9/24/18 Confidential Memorandum (Exhibit 4 to the Supplemental Restricted Omnibus Declaration of Ian S. Marx in Support of Marriott Defendants' Motions in Limine, ECF #s 466-471) ("Restricted Marx Decl.")), at 4.

3

presentation within a week of the presentation.[6]  Thus, it is clear—and Plaintiffs do not dispute — that Simon attended the Marriott Vacation Club ("MVC") sales presentation as an agent of Plaintiffs' counsel.

As counsel's agent, Simon violated the Colorado Rules of Professional Conduct by attending the *ex parte* meeting with the Marriott Defendants' employees and affirmatively misrepresenting his identity and the purpose of the meeting, as well as failing to disclose his interest in a pending lawsuit.  Rule 4.3 provides that:

> In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding.

Plaintiffs do not dispute that Simon lied to the Marriott Defendants' employees about the purpose of the meeting and failed to disclose this pending lawsuit and his interest in this lawsuit involving their employer ***and*** involving the subject matter of such sales presentations, how they are conducted and the subjects discussed and emphasized.  Plaintiffs defend his attendance merely by claiming that such one-on-one sales presentations would be open to any interested person in the general public, and that Simon regularly attends such presentations in the ordinary course of his business.  While that may be true, *in this instance* where Simon does not dispute that he attended for the specific purpose of developing evidence for this litigation, Simon (as counsel's agent) nevertheless had an ethical obligation to disclose the lawsuit and his interest in it before he induced the Marriott Defendants' employees into making statements concerning the subject of his report: the Marriott Defendants' marketing, in MVC sales presentations (and other marketing

---

[6] ECF #473-15 (Simon Tr., Marx. Decl. Ex. O), at 53:13-54:17.

efforts), of access to The Ritz-Carlton Destination Club ("RCDC") properties and, specifically, The Ritz-Carlton Club, Aspen Highlands, in seeking to sell MVC memberships and points to consumers. *See* ECF #473-1 (Simon Report, Marx Decl. Ex. A), at 4-5.

Plaintiffs' reliance on Rule 4.2 and their claim that the sales representatives could not bind the company misses the mark: First, Simon admits speaking with a manager of the sales office, making Rule 4.2 directly relevant.[7] More importantly, even putting Rule 4.2 aside, Plaintiffs fail to exonerate Simon, as an agent of Plaintiffs' counsel, because Simon's conduct violated Rule 4.3.[8] Even if an *ex parte* contact is permissible, the attorney, or agent of the attorney, making the contact must not only affirmatively disclose the lawsuit and their interest in the lawsuit, but they must correct any suspected misimpression about their role in the lawsuit. Plaintiffs do not dispute that this was not done here.

Confronted with analogous circumstances, courts across the country have sanctioned such violations of Rule 4.3; excluded opinions and evidence; or, prospectively, allowed interviews of

---

[7] Simon's conduct did in fact violate Rule 4.2. *Ex parte* contacts with "low-level employees" may be improper under Rule 4.2; and, in any event, Simon also met with a manager during his sales presentation. *See In re Air Crash Disaster Near Roselawn, Indiana on Oct. 31, 1994*, 909 F. Supp. 1116, 1122-23, n.9 (N.D. Ill. 1995) (holding that counsel violated Rule 4.2 because pilots, even as low-level employees, could feasibly bind the corporation, and there was also the possibility that a manager or supervisor could have received and completed the survey); ECF #474-4 (Simon 9/24/18 Confidential Memorandum, Restricted Marx Decl. Ex. 4), at 1, 4 (noting that a manager was involved in the meeting).

[8] The Court should consider Plaintiffs' failure to respond to the Marriott Defendants' arguments under Rule 4.3 to be a concession. *See Cahill v. American Fam. Mut. Ins. Co.*, 610 F.3d 1235, 1238 (10th Cir. 2010) (indicating that it is not a court's job to "construct arguments" nor "fill the gaps in undeveloped arguments unsupported by citations to relevant authority" and that the court "must not be unfair to the opposing party, who should not be required to guess at what issues are being raised"); *Kosak v. Catholic Health Initiatives Of Colo.*, 2009 WL 3497782, at *4 (D. Colo. Oct. 28, 2009) (treating the plaintiff's failure to argue or cite any authority in opposition to certain aspects of the defendants' motion as a concession), *aff'd sub nom. Kosak v. Catholic Health Initiatives of Col.*, 400 F. App'x 363 (10th Cir. 2010).

unrepresented employees only if strict conditions—as set by the court—are met. Most notably, in *In re Air Crash Disaster Near Roselawn, Indiana on Oct. 31, 1994*, 909 F. Supp. 1116, 1118 (N.D. Ill. 1995), the plaintiffs sued the manufacturer and operator of an aircraft that crashed. The plaintiffs' counsel hired an expert and consultant who sent a letter and questionnaire to several of a defendant's pilots regarding a key issue in the case—their training and experience in icing conditions. *Id.* at 1123. Applying Rule 4.3, the court observed that the letter failed to disclose that the questionnaire was prepared by an expert and consultant retained by plaintiffs who have sued the airline. *Id.* The court found that "the letter goes to great lengths to persuade the recipient of its neutral and unbiased character. For example, the letter describes the questionnaire as an 'independent survey,' thereby implying that there is no underlying motive in obtaining the information and that the parties seeking such information are 'disinterested,' even though Rule 4.3 explicitly states that a lawyer shall not imply that he or she is disinterested." *Id.* Furthermore, the court indicated that the questionnaire expressly stated that it was narrowly focused on icing conditions to keep the number of questions to a minimum, "rather than because that is the nature of the litigation." *Id.* Thus, the court held that

> [s]uch deception, which is undertaken or at least condoned by Plaintiffs' Counsel through their intermediary, is a paradigm example of conduct prohibited by Rule 4.3. The ATR pilots who received the questionnaire may have been led to believe that they were dealing with a disinterested third party. Since Plaintiffs' Counsel are not disinterested parties, attempting to mislead the ATR pilots into so believing is a clear violation of Rule 4.3. The Court specifically finds that Plaintiffs' Counsel not only failed to take precautions to prohibit any misunderstandings associated with the cover letter and ATR Questionnaire, but also affirmatively violated the rule by not fully disclosing their representative capacity and the true motive behind obtaining such information.

*Id.* at 1123-24.

Significantly, the court also noted that the fact that counsel themselves did not make the contact was of no moment:

> Plaintiffs' Counsel are legally responsible for the violation of Rule 4.3 since they hired the [expert] and [the consultant], thereby "inducing" them to formulate the ATR Questionnaire and misleading cover letter. An attorney cannot evade his professional and ethical obligations by delegating the job of developing and distributing deceptive materials to a paid expert or consultant.

*Id.* at 1124. Similarly, here, Plaintiffs' counsel retained an expert who failed to disclose the lawsuit, what it entailed, his identity and connection to the lawsuit, and affirmatively misrepresented the purpose for the *ex parte* contact—which was to obtain information from an unknowing party's employees on a subject matter directly related to the claims in the case.

There are numerous other cases along the same lines. For instance, in *Aiken v. Bus. & Indus. Health Grp.*, 885 F. Supp. 1474, 1480 (D. Kan. 1995), a case "examin[ing] the issue of ex parte contacts with former employees of an organizational party," the court instructed that "Plaintiff's counsel is also required to comply with Rule 4.3 by making clear to the former employees the nature of his role in the case, including the identity of the plaintiff and the defendant." In *In re Envtl. Ins. Declaratory Judgment Actions*, 252 N.J. Super. 510, 520 (Super. Ct. 1991), investigators interviewed present and former employees without disclosing that they were retained by a party engaged in litigation, and the court admonished that "an attorney must insure that his clients and any other representatives abide by the standards set forth in the RPC." Notably, the court held that "it is the responsibility of this court to insure that interviews be conducted according to the standards set by the RPC and further, to insure that 'the parties and their agents will be guided by truth and honesty, and not by lies and deception.'" *Id.* at 522-23 (quoting *Monsanto v. Aetna Casualty & Surety Co.*, 593 A.2d 1013, 1020 (Del. Super. Ct. 1990).

7

Similarly, in *Paulson v. Plainfield Trucking*, 210 F.R.D. 654, 659 (D. Minn. 2002), the court instructed the plaintiffs' attorney and investigator "to fully disclose his or her representative capacity to the employee; state the reason for seeking the interview as it concerns Paulson and Plainfield; and inform the employee of his or her right to refuse to be interviewed, and his or her right to have their own counsel present." Further, the court cautioned that the "[f]ailure to abide by these directions will result in the imposition of appropriate sanctions." *Id.* And, in *Upjohn Co. v. Aetna Cas. & Sur. Co.*, No. 4:88 CV 124, 1990 WL 446503, at *1 (W.D. Mich. July 13, 1990), the court held a party's investigators violated Michigan's Rule 4.3 when they failed to: (1) determine if the employees they interviewed were represented; and (2) "clearly identify themselves as working for attorneys who were representing a client who was involved in litigation against the employer, nor adequately state the purpose of the interview." *Id.*

Plaintiffs do not dispute that Simon should not reference the improper *ex parte* sales meeting he attended at trial. Nevertheless, that sanction, without more, would be inadequate and meaningless. Simon's conduct was egregious enough, and so closely tied to his opinions concerning the halo effect in this case, that the Court should bar Simon from testifying about the portion of his report that is devoted to the halo effect and disgorgement of unjust enrichment based on the halo effect. Specifically, in support of his opinion that the MVC Affiliation caused a halo effect that enabled the Marriott Defendants to charge higher prices for MVC Points, Simon relies on his contention that, in sales presentations, the Marriott Defendants' employees emphasized access to RCDC resorts as the "major," "primary" or "main" benefit of purchasing MVC Points. *See, e.g.*, ECF #473-1 (Simon Report, Marx Decl. Ex. A), at ¶49, pg. 30 (in its sales presentations, MVW is "selling access to RCDCs as a major benefit to buying points"); ¶50, pg. 31 (MVW is

8

"marketing access to RCDCs as a primary benefit of purchasing MVC points"); ¶68, pg. 39 ("those attending MVC sales presentations were overwhelmingly sold access to RCDC as a main benefit of purchasing MVC points"); and ¶73, pg. 41 ("MVW has continued to sell access to the RCDC as a significant benefit of MVC membership as part of the overall sales process of MVC points"). *See also id.* at 29-30, 32-35, 39-41. Those portions of Simon's report relate directly to his improper conduct, and form the basis for his halo effect opinion.

In the alternative, although inadequate for the egregious violation here—and only if the court determines that the Marriott Defendants' requested relief is inappropriate—then, *at a minimum*, the Court should bar Simon from testifying about the topic of sales presentations entirely, including what takes place at sales presentations. Simon's opinion on this topic has been tainted by his deliberate and improper attempt to uncover relevant facts from Marriott Defendants' employees; the only way to eliminate this taint is to preclude any testimony on the topic at trial. *See In re Envtl. Ins. Declaratory Judgment Actions*, 252 N.J. Super. at 524 (noting the potential for such improper behavior to taint the trial). [9]  Thus, the Court should preclude any testimony by

---

[9] *See also Coleman v. Brown*, 938 F.Supp.2d 955 (E.D. Cal. 2013) (striking expert reports and refusing to consider their contents).  Plaintiffs try to distinguish *Coleman* on the grounds that it involved improper interviews of class members, as opposed to unrepresented low-level employees. As an initial matter, the *Coleman* court's sanction of striking the expert reports as a whole did not depend on the interviewees' status as class members; instead, striking the expert reports—as opposed to just striking certain sections—was appropriate because the reports would prejudice the opposing party and because it would be impossible for the court to determine precisely what aspect of the experts' opinions were "tainted." Similarly, here, the Court should, as an alternative to striking his entire testimony on the halo effect, at least bar Simon from testifying about sales presentations as a whole because his opinions on that topic are indeterminately tainted by his improper attendance at the sales presentation.  Moreover, one of the "sales representatives" at Simon's sales presentation was a manager, so the Court has ample grounds to find that the *ex parte* contact was improper under Rule 4.2.  *See In re Air Crash* Disaster, 909 F. Supp. at 1122-23, n.9 (holding that counsel violated Rule 4.2 because pilots, even as low-level employees, could feasibly

Simon on the Marriott Defendants' sales presentation practices, as the minimum sanction for Simon's unethical conduct and to prevent Plaintiffs and their counsel from benefiting from this conduct while prejudicing the Marriott Defendants. Plaintiffs have failed entirely to even address this alternative relief.

## CONCLUSION

For all the foregoing reasons, the Court should enter an order precluding Simon from testifying at trial concerning the existence and extent of the "halo effect" and any unjust enrichment or profits caused by the halo effect. In the alternative, at a minimum, the Court should preclude Mr. Simon from offering any testimony or opinions at trial concerning MVC sales presentations.

Dated:  September 23, 2019

Respectfully submitted,

By: *s/ Philip R. Sellinger*
Philip R. Sellinger
Ian S. Marx
GREENBERG TRAURIG, LLP
500 Campus Drive, Suite 400
Florham Park, NJ 07932
Email:  SellingerP@gtlaw.com
        MarxI@gtlaw.com

*Attorneys for Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC, The Cobalt Travel Company, LLC, and The Lion & Crown Travel Co., LLC*

---

bind the corporation, and there was also the possibility that a manager or supervisor could have received and completed the survey); Simon Memorandum (Restricted Marx Decl. Ex 4) at 1, 4.

# CERTIFICATE OF SERVICE

I hereby certify that, on September 23, 2019, a true and accurate copy of the foregoing **MARRIOTT DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION TO PRECLUDE TESTIMONY OF PLAINTIFFS' EXPERT, JONATHAN R. SIMON, DUE TO IMPROPER *EX PARTE* MEETING AND COMMUNICATIONS WITH MARRIOTT DEFENDANTS' EMPLOYEES** was filed and served with the Clerk of the Court via CM/ECF filing system, which will send notification to the following:

Michael J. Reiser
Law Office of Michael J. Reiser
1475 N Broadway, Suite 300
Walnut Creek, CA 94596
*Counsel for Plaintiffs*

Matthew C. Ferguson
The Matthew C. Ferguson Law Firm, P.C.
119 South Spring, Suite 201
Aspen, Colorado 81611
*Counsel for Plaintiffs*

Tyler R. Meade
The Meade Firm P.C.
1816 Fifth Street
Berkeley, CA 94710
*Counsel for Plaintiffs*

Linda Pham Lam
Michael Schrag
Gibbs Law Group LLP
505 14th Street, Suite 1100
Oakland, CA 94612
*Counsel for Plaintiffs*

Jessica Black Livingston
Hogan Lovells US LLP
1601 Wewatta Street, Suite 900
Denver, Colorado 80202
*Counsel for Defendant*
*Aspen Highlands Condominium Association, Inc.*

                                                      */s/ Gregory Scavelli*
                                                      Gregory Scavelli