IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 16-01301 PAB

RCHFU, LLC, et al.

Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al.

Defendants.

_____

**MARRIOTT DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE REFERENCES TO CUSHMAN & WAKEFIELD APPRAISAL**
_____

## INTRODUCTION

Contending that the C&W Appraisal's Value Conclusions put the Marriott Defendants "on notice" that "MVC-member access" would diminish Plaintiffs' property values while benefitting the Marriott Defendants, Plaintiffs argue that the C&W Appraisal is "admissible for the non-hearsay purpose of showing the Marriott Defendants' state of mind." Pl. Opp. (ECF #510) at 1-2.[1] Plaintiffs' argument is specious. The record shows that the Marriott Defendants did not commission the C&W Appraisal and that no one in a decision-making position at any of the Marriott Defendants ever read or discussed the Value Conclusions prior to the MVC Affiliation. Given that clear record, Plaintiffs have no foundation for offering the C&W Appraisal into evidence under the non-hearsay "effect on the listener" doctrine.

The C&W Appraisal is also inadmissible because its Value Conclusions are unreliable, irrelevant and erroneous. First, the Value Conclusions are based on comments from undisclosed

---

[1] Terms used herein are as defined in the Marriott Defendants' Moving Brief (ECF #475).

owners to undisclosed brokers and, thus, can neither be verified nor tested for relevance. The Value Conclusions also provide no information as to how the MVC Affiliation may have influenced or was perceived by potential purchasers of RCDC fractional interests or MVC points. In addition, the Value Conclusions confuse the MVC Affiliation, which happened after the C&W Appraisal was issued, with an earlier, discontinued points program that did not involve MVCD Program members. The likelihood that the Value Conclusions would confuse the jury and prejudice the Marriott Defendants is, therefore, extremely high. Given their inaccuracy and lack of probative value, the Value Conclusions should be excluded as irrelevant under F.R.E. 402 and as confusing and unduly prejudicial under F.R.E. 403.

Finally, Plaintiffs' naming of John Vaughan (who helped prepare the C&W Appraisal) as a trial witness shows that they intend to offer the Value Conclusions, not for any non-hearsay purpose but, rather, for their truth. Plaintiffs' evidentiary gymnastics notwithstanding, the Value Conclusions cannot be separated from the "truth" Plaintiffs claim they assert, which makes them inherently hearsay. As explained in the Marriott Defendants' moving brief, the Value Conclusions are predicated on multiple layers of hearsay to which no exception to the hearsay rule applies, and they are based on no generally accepted appraisal methodology. Plaintiffs should, therefore, be precluded from offering the C&W Appraisal into evidence at trial. Should the Court elect to defer deciding whether to preclude the C&W Appraisal, it should at least prohibit Plaintiffs or their counsel from making any references to it or the conclusions contained therein at trial before issues of foundation, relevancy and prejudice are more fully explored and resolved.

**ARGUMENT**

I. **PLAINTIFFS HAVE NO FOUNDATION FOR ALLEGING NOTICE TO THE MARRIOTT DEFENDANTS BASED ON THE VALUE CONCLUSIONS**

The Tenth Circuit has held that statements offered to show that the listener was on notice of a fact are not hearsay because they are being offered, not for their truth, but for their "effect on the listener." *See Thornburg v. Mullin*, 422 F.3d 1113, 1128 (10th Cir. 2004). For this exception to the hearsay rule to apply, however, the proponent of the evidence must establish a foundation for its admission. *See Maes v. Leprino Foods Co., Inc.*, 2017 WL 1077638, *11 (D. Colo. Mar. 22, 2017). Where the evidence's proponent cannot show that a witness had knowledge of the statement prior to the complained-of conduct, the evidence will be ruled inadmissible for lack of foundation. *See Smith v. United States*, 2006 U.S. Dist. LEXIS 94424, *5 (C.D. Utah Dec. 29, 2006) (refusing to admit evidence that plaintiff's witness had overheard talk about a certain subject where plaintiff was unable to establish, as a foundational fact, that the witness knew about the conversation). In addition, a nexus must be shown between the proffered evidence and its alleged effect on the listener. *See Maes*, 2017 WL 1077638, at *11 (finding statements regarding alleged discriminatory conduct inadmissible unless plaintiff could show a nexus between the statements and her perception of such conduct); *Gonzalez v. Olson*, 2015 U.S. Dist. LEXIS 76203, *18 (N.D. Ill. June 12, 2015) (refusing to admit out-of-court statement made to detective who was not "in any way involved in th[e] case, so any 'subsequent actions [detective] took based on that information' [we]re irrelevant") (internal citation omitted).

Plaintiffs can offer no evidence that representatives of the Marriott Defendants involved in the MVC Affiliation decision-making read or discussed the Value Conclusions before the MVC Affiliation was implemented; thus, they have no foundation for offering the Value Conclusions into evidence under an "effect on the listener" exception to the hearsay rule. As noted in the

Marriott Defendants' moving brief, the C&W Appraisal was prepared in connection with the Portfolio Program's 2012 "unwind" and was commissioned by BFLT Association, Inc. to appraise the value of interests held by the BFLT Trust in the event that information might prove useful in the reacquisition of Portfolio Program members' interests. The Portfolio Program did not involve MVCD Program members or MVC Properties. The C&W Appraisal turned out to be irrelevant because it was never needed to reacquire any Portfolio Program member's interest. As a result, no one involved in MVC Affiliation decision-making ever read or discussed the C&W Appraisal.[2] Kim Frates-Mazzilli, an employee in MVWC's finance division and the main point of contact with C&W during the C&W Appraisal's preparation, affirmed that she never read the Value Conclusions, nor did she discuss them with anyone at MVWC, the BFLT Association or the C&W appraisers. *See* Deposition of Kim Frates-Mazzilli (Marx Reply Decl.[3] Ex. A) at 69:12-23 ("Q: Do you recall having any discussions with Mr. Pierce or anybody at Marriott Vacations Worldwide, Ms. Sobeck, about this language in this [C&W Appraisal] report? A: No."), 69:24-70:22 (testifying that she did not recall reading the Value Conclusions or discussing them with Stephanie Sobeck), 74:13-25 (same). In addition, Stephanie Sobeck did not see the C&W Appraisal until the preparation for her deposition in this matter. *See* May 15, 2018 Deposition of Stephanie Sobeck (Marx Reply Decl. Ex. B) at 197:20-198:4; *see also* Dec. 6, 2017 Deposition of Mary Lynn Clark (Marx Reply Decl. Ex. C) at 241:3-242:16 (testifying that she never saw any appraisals prepared on behalf of the BFLT and was unaware of any of their conclusions); May 23,

---

[2] Although some employees of the Marriott Defendants may have been copied on emails with a draft of the C&W Appraisal, it is undisputed that none of these email recipients read the draft.

[3] "Marx Reply Decl." refers to the September 23, 2019 Declaration of Ian S. Marx in Support of Marriott Defendants' Reply in Further Support of Their Motion *in Limine* to Exclude References to Cushman & Wakefield Appraisal submitted in connection with this Reply. "Marx Decl." refers to the August 19, 2019 Declaration of Ian S. Marx in Support of Marriott Defendants' Motion *In Limine* to Exclude the Cushman & Wakefield Appraisal (ECF #476).

2018 Deposition of Christopher Donaldson (Marx Reply Decl. Ex. D) at 113:15-21 (testifying that he did not discuss the Value Conclusions with anyone).  Even the President of the BFLT Association has testified that he never read or discussed the C&W Appraisal or its Value Conclusions with anyone.  *See* Deposition of Ben Pierce (Marx Reply Decl. Ex. E) at 42:18-19, 45:22-46:19 (does not recall reading the "Repercussions of Conversion to Points System" section of the Appraisal and never discussed the Value Conclusions with anyone).  Indeed, he was not sure he had ever received a copy of the C&W Appraisal.  *Id.* at 43:14-44:4.

Even if Plaintiffs were able to show that the Value Conclusions constituted "notice" to the Marriott Defendants that they claim (and they are not), they can show no nexus between such alleged notice and the Value Conclusions' supposed influence on the Marriott Defendants' perception of the proposed MVC Affiliation.  The Value Conclusions do not even address any "halo effect" benefit received by MVC as a result of points purchases, nor do they state, or even suggest, that would-be purchasers of MVC points or RCDC fractional interests were at all influenced, either positively (with reference to points) or negatively (with reference to fractional interests), by the access to RCDC resorts that the MVC Affiliation facilitated.  As Plaintiffs themselves acknowledge, the Value Conclusions only address ***the perception of RCDC owners*** as relayed to the C&W appraisers via brokers and sales agents.  *See* Pl. Opp. (ECF #510) at 3 ("[The] 'conversion to a points system [w]as perceived ***by existing fractional owners*** as diluting the exclusivity of the Ritz Carlton Club by opening specific resorts to the Marriott Vacation Club.'") (quoting C&W Appraisal (ECF# 477-1) at 19) (emphasis added).  Thus, even if the Value Conclusions had been received, read and credited by any Marriott Defendants decision-maker, they would have, at most, only put the Marriott Defendants on notice of RCDC owner concerns

5

about a perceived negative impact from the MVC Affiliation.  In short, the C&W Appraisal is inadmissible hearsay and has no probative value whatever.

## II. THE C&W APPRAISAL SHOULD BE PRECLUDED AS IRRELEVANT AND UNDULY PREJUDICIAL TO THE MARRIOTT DEFENDANTS

Simply arguing a non-hearsay "effect on the listener" purpose for proffered evidence, as Plaintiffs do here, is not enough to establish its admissibility.  Such evidence is inadmissible if it has a high potential to cause undue prejudice.  For example, in *Cange v. Phila. Parking Auth.*, 2010 U.S. Dist. LEXIS 8427 (E.D. Pa. Feb. 1, 2010), a Title VII action alleging national origin discrimination by an employer, plaintiff sought to offer into evidence a Haitian co-worker's testimony that she had been told the employer was "watching" her because Haitian employees were not wanted.  The court ruled the testimony inadmissible as evidence of effect on the listener, finding that "its slight probative value" was outweighed by "the risk to the defendant of unfair prejudice, confusion of the issues and misleading the jury."  As the court noted, "[t]he defendant … [would] be unable to call the anonymous co-worker to the stand and verify that the statements were made, what … [the employee's] reaction to the statements were at the time, or ask any other pertinent question."  *Id.* at *13.

Likewise, in *SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, 2014 U.S. Dist. LEXIS 45273 *15-16 (D. Colo. Apr. 2, 2014), the court considered similar issues on defendant's motion to exclude anonymous internet reviews of its iPad app.  Defendant argued that, to the extent the reviews had been relied on by an expert, plaintiff could not show that the comments were the type of material ordinarily relied upon by an expert.  Though "effect on the listener" was not specifically raised to counter defendant's arguments, plaintiff did argue that the reviews were offered, not for the truth of the matter asserted, but to support a non-merits showing of a market for a competing app.  *Id.* at *15.  The court, however, found "it difficult to believe that a qualified expert could

6

credibly testify that anonymous online comments are the type of evidence that is typically relied upon by an expert in their field." *Id.*  The court was also concerned "that the possibility that the jury … [could] misuse the otherwise inadmissible evidence outweigh[ed] any need to admit the evidence to support the expert opinions." *Id.* at *16-17.  Noting that plaintiff had other evidence it could use to establish its point and finding that the anonymous evidence raised a "danger of unfair prejudice to the Defendant, waste of the jury's time, and possible confusion of the issues," the court ruled the customer reviews inadmissible. *Id.* at *17.

The C&W Appraisal is inadmissible for many of the same reasons the proffered evidence in the above-discussed cases was inadmissible.  For example, the Underlying Statements on which the Value Conclusions are premised were allegedly articulated by anonymous RCDC owners to anonymous brokers and sales agents.  Putting aside the fact that the perceptions of existing RCDC owners are irrelevant in this case, there is no way to verify the bases for the Underlying Statements, whether they were accurately transcribed in the Value Conclusions, or even whether they were made at all.  Nor are the Value Conclusions "the type of evidence that is typically relied upon by an expert in their field."  C&W appraiser Christopher Donaldson has testified that, even if accurately transcribed, the Underlying Statements are not the type of evidence typically relied upon by experts in the field and are an insufficient basis for the Value Conclusions.  *See* June 25, 2018 Deposition of Christopher Donaldson (Marx Decl. Ex. G) at 389:20-390:4 (testifying that, before submitting an expert report to a court concerning the impact of the conversion to a points system, more would be needed); *see also id.* at 390:8-11 (explaining that a reliable analysis of the impact of the conversion to a points system "would include a much … greater detailed property history of sales[,]… more information on … market trends … and more comparable data"); *id.* at 390:12-23. (testifying that, to determine "the impact of the conversion," a court or jury would need

7

all the aforementioned additional information).  Mr. Donaldson has also conceded that, although methods for determining the impact of a "detrimental condition" exist, he used none of them.  May 23, 2018 Deposition of Christopher Donaldson (Marx Decl. Ex. F), at 278:4-282:9, 285:6-289:23; *see also* Moving Br. (ECF #475), SOF Sect. C (2)-(5) (explaining that the Value Considerations are based on unverified hearsay statements from undisclosed individuals, are not supported by any methodology and are untested, and no industry protocol was used in formulating them).

Moreover, like plaintiff in *SOLIDFX, LLC,* Plaintiffs have other evidence that they can offer in support of their "notice" point.  The APCO survey results, for example, show that the Marriott Defendants knew that RCDC owners were concerned that the MVC Affiliation would impact the value of their interests.  The C&W Appraisal, however, is both unreliable and prejudicial to the Marriott Defendants.  *See Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 584 (D. Md. 2007) (finding "the possibility of unfair prejudice associated with the admissibility of unreliable … information" was grounds for rejecting proffered evidence) (internal citation omitted).

Indeed, not only is the C&W Appraisal unreliable, it is outright inaccurate, as the Value Conclusions mistakenly conflate the Portfolio Program that ended in 2012 with the MVC Affiliation that was not implemented until December 2014 (with exchanges starting in January 2015).  Moving Br. at 14.  Thus, it is more than just a likelihood that the Value Conclusions would confuse the factfinder, it is a given.  Because the Value Conclusions are inaccurate, they have no probative value that could weigh against the prejudice they would cause the Marriott Defendants to suffer.  Accordingly, Plaintiffs should be precluded from offering the C&W Appraisal into evidence at trial.

### III. PLAINTIFFS' "STATE OF MIND" ARGUMENT FAILS BECAUSE THE VALUE CONCLUSIONS' RELEVANCE DEPENDS ON THEIR TRUTH, WHICH IMPLICATES BASIC HEARSAY CONCERNS

Plaintiffs argue that the Value Conclusions are not hearsay because they are evidence of the Marriott Defendants' "state of mind, i.e., that the Marriott Defendants had clear notice that MVC-member access was diminishing Plaintiffs' property values, and that the affiliation would continue to cause harm to Plaintiffs." Pl Op. at 1. The problem with Plaintiffs' theory is that the Value Conclusions' relevance presupposes their truth. This is because, if the Value Conclusions are merely speculative and irrelevant, as the Marriott Defendants maintain, then any "state of mind" that the Value Conclusions could have caused to arise in the Marriott Defendants would be likewise speculative and irrelevant. Thus, for the Value Conclusions to be relevant, Plaintiffs must be offering them for their truth.

This point was explained in some detail in *Christou v. Beatport, LLC*, 2013 U.S. Dist. LEXIS 78233 (D. Colo. June 4, 2013). In that case, a night club owner had sued a competitor for allegedly threatening his A-List disc jockeys that their tracks would not be promoted if they performed in plaintiff's night clubs. To prove his claims, plaintiff sought to introduce unauthenticated hearsay (and hearsay-within-hearsay) audio recordings of the DJs discussing the threat. Met with a hearsay objection, plaintiff argued that the recordings showed the DJs' state of mind, i.e., their belief that they would be harmed if they performed at plaintiff's clubs, regardless of whether the threat was carried out. *Id.* at 21. The court refused to admit the recordings into evidence:

> The problem with [plaintiff's] theory is that, in substance, its relevance is the truth of the statements. If a DJ or his agent merely speculated that … [defendant] might be angry if the DJ performed at plaintiffs' clubs then the evidence of the DJ's state of mind would be irrelevant and speculative. If the DJ had received an actual threat, and formed his state of mind based on the threat, then the evidence in reality is

9

being offered to prove that an illegal tie-in existed.  As such, the relevance of the statement is to prove its truth, and it is hearsay.

Id. at *21.

Here, although Plaintiffs give lip service to the claim that the Value Conclusions would be offered for a non-hearsay purpose, their actions show that they intend to rely on the C&W Appraisal for the truth of the Value Conclusions.  As noted, Plaintiffs have advised the Court that they plan to offer live testimony from John Vaughan, one of the appraisers who helped prepare the C&W Appraisal, in "support of the notion that allowing MVC members to access the Ritz-Aspen has diminished Plaintiffs' property values, while substantially benefitting Marriot[t] and its MVC points program."  Pl. Opp. (ECF #510) at 4.  Thus, Plaintiffs seek to use the Value Conclusions (which they do not deny are hearsay in this context) for their truth.  The Value Conclusions are, therefore, inadmissible hearsay, and Plaintiffs should be precluded from offering the C&W Appraisal as evidence at trial.

## CONCLUSION

For all the foregoing reasons and for the reasons set forth in their moving brief, the Marriott Defendants respectfully request that the Court enter an order precluding Plaintiffs (including their expert witnesses and counsel) from introducing the C&W Appraisal into evidence or referring to it at trial.

Dated:  September 23, 2019

Respectfully submitted,

By: *s/ Philip R. Sellinger*
Philip R. Sellinger
Ian S. Marx
GREENBERG TRAURIG, LLP
500 Campus Drive, Suite 400
Florham Park, NJ 07932
Email:  SellingerP@gtlaw.com
MarxI@gtlaw.com

*Attorneys for the Marriott Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 23rd day of September, 2019, a true and accurate copy of the foregoing **MARRIOTT DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE REFERENCES TO CUSHMAN & WAKEFIELD APPRAISAL** and attached exhibits were filed and served with the Clerk of the Court via CM/ECF filing system, which will send notification to the following:

Michael J. Reiser
Law Office of Michael J. Reiser
1475 N Broadway, Suite 300
Walnut Creek, CA 94596
*Counsel for Plaintiffs*

Matthew C. Ferguson
The Matthew C. Ferguson Law Firm, P.C.
119 South Spring, Suite 201
Aspen, Colorado 81611
*Counsel for Plaintiffs*

Tyler R. Meade
The Meade Firm P.C.
1816 Fifth Street
Berkeley, CA 94710
*Counsel for Plaintiffs*

Linda Pham Lam
Michael Schrag
Gibbs Law Group LLP
505 14th Street, Suite 1100
Oakland, CA 94612
*Counsel for Plaintiffs*

Jessica Black Livingston
Hogan Lovells US LLP
1601 Wewatta Street, Suite 900
Denver, Colorado 80202
*Counsel for Defendant*
*Aspen Highlands Condominium Association, Inc.*

                                                             */s/ Gregory Scavelli*
                                                             Gregory Scavelli