# EXHIBIT C

```
 1              IN THE UNITED STATES DISTRICT COURT
                      DISTRICT OF COLORADO
 2            Civil Action No. 1:16-cv-01301-PAB-GPG
 3
 4    RCHFU, LLC, et al.,
                   Plaintiffs,
 5
          vs.
 6
      MARRIOTT VACATIONS
 7    WORLDWIDE CORPORATIONS,
 8    et al.,
                   Defendants.
 9    _____
                    SUPERIOR COURT OF CALIFORNIA
10          IN AND FOR THE COUNTY OF SAN FRANCISCO
                     CASE NO. CGC-15-545987
11
      WILLIAM P. PETRICK, et al.,
12                 Plaintiffs,
13
          vs.
14
      MARRIOTT VACATIONS
15    WORLDWIDE CORPORATIONS,
      et al.,
16                 Defendants.
17    _____
18
19              VIDEOTAPED DEPOSITION OF:
20                    MARY LYNN CLARK
21                   December 6, 2017
22
23
24    Job No. 2733693
25    Pages 1 - 281
```

Page 1

Clark - Reiser

**Page 238**

1  Okay?  And please be timely so you don't interrupt
2  in the middle of a question.
3      MR. SELLINGER:  Oh, come on.  You've
4  got to be kidding me.
5      MR. KELLY:  I would have preferred to
6  participate with the audio via my computer instead
7  of my telephone, but every time you guys you take a
8  break, I hang up and I have to dial back in, and, as
9  soon as I dial back in, I do announce myself.
10     MR. MARX:  Okay.  Sorry.  I didn't --
11 it didn't -- it doesn't say anything.  It says no
12 names.
13     MR. KELLY:  Don't chastise me.
14     MR. REISER:  Look, Doug, I mean, your
15 name has not been announced.  So I don't know if you
16 realize that, but it hasn't been announced.  So I'm
17 basically making a request that you announce
18 yourself when you enter in so we don't have to ask
19 you every time and interrupt the flow of the
20 deposition.
21     MR. KELLY:  And like I said, I do that,
22 and I will continue to do that.
23     MR. REISER:  Well, it hasn't been
24 coming through, my friend.
25     MR. SELLINGER:  You know, you're really

**Page 239**

1  being unnecessarily argumentative with everyone.  I
2  don't know why you're getting this way.
3      MR. REISER:  Well, because I'm in the
4  middle of a question and it beeps in and nobody says
5  anything.  That's why.
6      MR. SELLINGER:  Okay.  But you know
7  that Doug has been on the -- we've had two people on
8  the phone all day.  It's the -- it's the lawyer for
9  the Association in the Colorado case and Doug Kelly
10 from Marriott.  Everybody knows that.  So it's one
11 of those two people.
12     So, you know, let's just go on and get
13 done with it.
14     A.   So your question?
15     Q.   My question is:  Does this refresh your
16 recollection that Eveleen Babich signed the July 17,
17 2012 letter as the general manager of Cobalt.
18     A.   That's what this says, correct.
19     Q.   All right.  Did you know that she was
20 the general manager of Cobalt?
21     A.   No, I did not.  I knew she was general
22 manager of Member Services.
23     Q.   Okay.  And were you aware that the
24 Affiliation Agreement that governed the clubs during
25 the time that you were selling memberships gave the

**Page 240**

1  sole discretion to -- as to whether to affiliate to
2  the program manager?
3      A.   No, I was unaware of that.
4      Q.   Okay.
5      A.   I did not read those documents.
6      Q.   Were you aware that the Affiliation
7  Agreement provided that neither the -- neither the
8  developer, the Members Association, nor the club
9  manager shall be entitled to participate in, or
10 consent to the program manager's decision to
11 affiliate?
12     MR. MARX:  Object to the form of the
13 question.
14     A.   What is the question?  Was I aware of
15 that statement you just read?
16     Q.   Correct.
17     A.   No.  I did not read the document, as I
18 said earlier.
19     Q.   Regardless of whether you read it,
20 nobody ever told you that the developer, the Members
21 Association, or the club manager were not entitled
22 to participate in or consent to the affiliation
23 decisions of the program manager?
24     A.   Not in that way, no.  Nope.
25     Q.   And the first time you heard that was

**Page 241**

1  today?
2      A.   Your reading it.  Yes, sir.
3      Q.   All right.  Have you ever seen any
4  appraisals prepared on behalf of the Bleu Florida
5  Land Trust Association in relation to the value of
6  the fractional units at the different clubs?
7      A.   No, I have not seen any appraisals.
8      Q.   So nobody ever told you that it was the
9  opinion of Marriott's appraiser that the conversion
10 to a points system has been perceived by existing
11 fractional owners as diluting the exclusivity of the
12 Ritz-Carlton Club by opening specific resorts to the
13 Marriott Vacation Club, and that conversely the
14 Marriott Vacation Club is now perceived in the
15 marketplace as providing an excellent opportunity to
16 access the luxury product offered by the
17 Ritz-Carlton Club properties?
18     MR. MARX:  Object to the form of the
19 question.
20     A.   Have I seen any appraisals, or did I --
21 was that statement said to me before?  Is that
22 question?
23     Q.   Were you unaware that the appraisers
24 for Marriott came to the conclusion that the
25 conversion to a points system was perceived in the

61 (Pages 238 - 241)