# EXHIBIT E

```
 1                UNITED STATES DISTRICT COURT
                      DISTRICT OF COLORADO
 2

            CIVIL CASE NO. 1:16-cv-01301 PAB-GPG
 3

 4    RCHFU, LLC, et al.,
 5         Plaintiffs,
 6    MARRIOTT VACATIONS WORLDWIDE
      CORPORATION, et al.,
 7
           Defendants,
 8    _____/
 9
10
                                  Greenberg Traurig
11                                450 South Orange Avenue
                                  Suite 650
12                                Orlando, Florida
                                  Tuesday, 9:22 a.m.-10:52 a.m.
13                                October 9, 2018
14
15
16         VIDEOTAPED DEPOSITION OF BENJAMIN PIERCE
17
18         Taken on Behalf of the Plaintiffs before
19      Lisa Gerlach, Court Reporter, Notary Public
20      in and for the State of Florida at Large,
21      pursuant to Plaintiffs' Notice of Taking
22      Deposition in the above cause.
23
24
25    Pages 1- 54

                                              Page 1
```

**Page 42**

 1   Ritz-Carlton Management Company at this time?
 2       A. Cushman & Wakefield?
 3       Q. Yeah -- at the time these appraisals were
 4   going on.
 5       A. Kim Frates-Mazzilli.
 6       Q. So I'll mark as Exhibit 5004 the actual final
 7   appraisal of the Aspen property.
 8          (Plaintiffs' Exhibit 5004 was marked for
 9       identification.)
10   BY MR. REISER:
11       Q. Is this the final appraisal of the Aspen
12   property that you received in relation to this -- the
13   effort by the BFLT -- land trust -- to get appraisals
14   on the fractionals in the trust?
15       A. I don't know.
16       Q. Is there any reason you believe it's not, as
17   you sit here?
18       A. I don't know if it's the final one. I don't
19   know if I received it.
20       Q. Well, can you turn to page 3 of this
21   document? Do you see it's a letter dated December 16,
22   2013, addressed to yourself as president of the
23   association, regarding appraisal of real property in a
24   summary report for the 75 Prospector Road, Aspen,
25   Pitkin County property?

**Page 43**

 1          It says, "Dear Mr. Pierce: In fulfillment of
 2   our agreement as outlined in the letter of engagement,
 3   we are pleased to transmit our appraisal of the above
 4   property in a summary report dated December 16, 2013.
 5   The effective date of value is December 2, 2013."
 6          Does this refresh your recollection that this
 7   is the final report that you received?
 8       A. No.
 9       Q. It does not?
10       A. No.
11       Q. Do you have any reason to disbelieve this
12   letter?
13       A. I don't know if I ever received it.
14       Q. Do you have any reason to believe you did not
15   receive this, even though it was addressed to you?
16       A. Ask the question again.
17       Q. Do you have any reason to believe you did not
18   receive this final appraisal as you sit here today?
19       A. I don't know. I just don't know if I
20   received the final appraisal.
21       Q. Do you have any reason to believe that you
22   didn't?
23       A. I believe, by this timeframe, that it was
24   sort of irrelevant and moot. The trust had been --
25   was in the process of being liquidated.

**Page 44**

 1       Q. So why would this be moot?
 2       A. There was only one remaining owner in the
 3   trust. I believe that owner had sold its interest
 4   back.
 5       Q. How do you know there was only one remaining
 6   owner in the trust as of this date?
 7       A. I recall that.
 8       Q. So you have a specific recollection that, as
 9   of December 2013, there was only one member that had
10   not sold back to Marriott?
11       A. Not with that specific date, but as part of
12   the process.
13       Q. I'm asking you now about the specific date,
14   because you said earlier that one of the reasons you
15   may not have received this appraisal is because it was
16   irrelevant; the trust had already been unwound and
17   there was only one person left.
18          So it sounds like you did know that, as of
19   this date, there was only one person left. So how do
20   you know that?
21       A. Because I believe we had a final board
22   meeting sometime in early December.
23       Q. Is it true that this appraisal was actually
24   commissioned so that you would have leverage in terms
25   of the price to buy back recalcitrant folks who didn't

**Page 45**

 1   want to sell?
 2          MR. MARX: Object to the form of the
 3       question.
 4       A. As a board, we hired it for our fiduciary
 5   responsibility to understand what the value of the
 6   real estate was.
 7   BY MR. REISER:
 8       Q. Who did you believe you had fiduciary duty
 9   to?
10       A. The owners of the association.
11       Q. What was the purchase price by which the
12   inventory was purchased back from the other members
13   who decided to sell back?
14       A. I don't know.
15       Q. Who handled the repurchases of the beneficial
16   interests?
17       A. It was Mary Lynn Clark.
18       Q. Okay. Do you have any recollection whether
19   the purchase price was the same for everybody that
20   sold back to the trust or was it -- did it vary?
21       A. I don't know.
22       Q. Can you turn to page 12 of the appraisal?
23   Did you read the section entitled "Repercussions of
24   conversion to point system" at the time -- at any time
25   you received the draft report, which has a similar

| | |
|---|---|
| 1  section in there or the final report that you're<br>2  looking at?<br>3      A.  I don't remember.<br>4      Q.  Independent of whether you read that here,<br>5  did you ever hear from anybody or discuss with anybody<br>6  that allowing the Marriott Vacation Club members<br>7  access to the Ritz-Carlton Club diluted the<br>8  exclusivity of the Ritz-Carlton Club by opening up<br>9  specific resorts to the Marriott Vacation Club, and<br>10  that, overall, the conversion to the points system and<br>11  the integration of the Marriott Vacation Club was a<br>12  negative impact on the market value of existing<br>13  fractional interests in the Ritz-Carlton?<br>14         MR. MARX:  Object to the form of the<br>15     question.<br>16  BY MR. REISER:<br>17     Q.  Did you have any discussions along those<br>18  lines with anybody?<br>19     A.  No.<br>20     Q.  Let me show you Exhibits 5005 and 5006 as a<br>21  joint kind of question.<br>22         (Plaintiffs' Exhibits 5005 and 5006 were<br>23     marked for identification.)<br>24         MR. REISER:  5005 is an e-mail chain<br>25     between you and John Spillman, and 5006<br>Page 46 | 1  still reviewing the three exhibits that I gave him.<br>2  Let me know when you're done, Mr. Pierce.<br>3      A.  Okay.<br>4      Q.  So this indicates that -- you've had a chance<br>5  to review Exhibits 5005, 5006, and 5007 in detail;<br>6  yes?<br>7      A.  Yes.<br>8      Q.  And 5007 includes board minutes of the Bleu<br>9  Florida Land Trust board for September 23, 2013, and<br>10  October 15, 2013, and November 20, 2013.  True?<br>11     A.  Yes.<br>12     Q.  And so these minutes accurately reflect what<br>13  happened in terms of the process for the board's votes<br>14  relative to unwinding the Bleu Florida Land Trust?<br>15     A.  Yes.<br>16     Q.  I'll just show you what was previously marked<br>17  as Exhibit 2263.<br>18         Before I get to this new one, which is just a<br>19  final bill for the appraisals, let me just ask you<br>20  about it real quick and we'll go back to the previous<br>21  ones.<br>22         But this was the bill from Cushman &<br>23  Wakefield addressed to you for the $20,000 for the<br>24  four appraisals.  True?<br>25     A.  Yes.<br>Page 48 |
| 1     appears to be the enclosure, which is a draft<br>2     letter dated December XX, 2013.<br>3         I'm going to also give you 5007 at this<br>4     time, too, which looks like the final letter<br>5     in December 2013.<br>6         (Plaintiffs' Exhibit 5007 was marked for<br>7     identification.)<br>8         MR. MARX:  While you read that, I'm just<br>9     going to take a quick -- let's stay on the<br>10     record.  Just wait until I come back before<br>11     you answer.<br>12         THE VIDEOGRAPHER:  We only have about<br>13     five minutes, six minutes left anyway.<br>14         MR. REISER:  Let's change it and we'll<br>15     take five.  Go ahead and keep reading it.<br>16         MR. MARX:  That's fine.<br>17         THE VIDEOGRAPHER:  The time is 10:36.<br>18     That concludes media one in the deposition of<br>19     Ben Pierce.<br>20         (Brief recess.)<br>21         THE VIDEOGRAPHER:  The time is 10:39.<br>22     This is media unit two in the deposition of<br>23     Ben Pierce.<br>24  BY MR. REISER:<br>25     Q.  So we're back on the record.  Mr. Pierce is<br>Page 47 | 1      Q.  As far as you know, it got paid?<br>2      A.  I don't know.<br>3      Q.  Going back to the other attachment just real<br>4  briefly -- was the December 2013 letter marked as<br>5  5007 -- was that sent to all the beneficial trust<br>6  owners?<br>7      A.  I don't know.<br>8      Q.  Was the intent to send it to all the owners?<br>9      A.  Yes.<br>10     Q.  And you don't have any reason to believe it<br>11  wasn't -- true -- it wasn't sent?<br>12         MR. MARX:  Object to the form of the<br>13     question.<br>14  BY MR. REISER:<br>15     Q.  Do you have any reason to believe it wasn't<br>16  sent?<br>17     A.  I just don't know if it was sent or not.<br>18         MR. REISER:  Why don't we take five<br>19     minutes?  I think I'm done.<br>20         THE VIDEOGRAPHER:  The time is 10:44.  We<br>21     are off record.<br>22         (Brief recess.)<br>23         THE VIDEOGRAPHER:  The time is 10:48.  We<br>24     are back on record.<br>25  BY MR. REISER:<br>Page 49 |

13 (Pages 46 - 49)