IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 1:16-cv-01301-PAB-GPG

**RCHFU, LLC**, a Colorado limited liability company, et al.,

Plaintiffs,

v.

**MARRIOTT VACATIONS WORLDWIDE CORPORATION**, a Delaware corporation, et al.,

Defendants.

---

### ASPEN HIGHLANDS CONDOMINIUM ASSOCIATION'S AND PLAINTIFFS' JOINT MOTION FOR GOOD-FAITH DETERMINATION OF SETTLEMENT

---

Pursuant to Colo. Rev. Stat. § 13-50.5-105, Plaintiffs and Defendant Aspen Highlands Condominium Association ("AHCA") respectfully request that this Court determine that the settlement between the AHCA and Plaintiffs and the releases contained therein, mutually given by Plaintiffs and the AHCA to the other, were negotiated and agreed upon in good faith. Plaintiffs and the AHCA consent to the jurisdiction of Magistrate Judge Gordon P. Gallagher to address and rule on this Motion, and request that it be done so expeditiously. In support of this Motion, the AHCA and Plaintiffs state as follows:

### CONFERRAL PURSUANT TO D.C.COLO.LCivR 7.1(a)

Plaintiffs and the AHCA jointly move the Court for the relief requested herein. Counsel for the AHCA conferred with counsel for the Marriott Defendants by email on August 22, 2019 regarding the requested relief. After several non-substantive exchanges, counsel for the Marriott Defendants responded by email on August 29, 2019 that the Marriott Defendants could not

1

advise whether or not they would consent or contest the relief requested, stating that it appeared to the Marriott Defendants that certain provisions of the settlement may have been the product of "collusive" conduct between the AHCA and Plaintiffs.  Counsel for the Marriott Defendants then requested the production of all communications between Plaintiffs' counsel and AHCA's counsel concerning, relating to, or pertaining to the settlement agreement and/or the declarations arising out of and occurring in the context of the mediation conducted pursuant to statute by James M. Lyons, Esq.[1]  They also requested all drafts of the settlement agreement and the declarations provided concerning the 2013 Affiliation Agreement, and reserved the right to seek depositions of the former directors concerning the settlement agreement and the declarations. Counsel for AHCA, including the AHCA's retained insurance counsel, had two separate telephone calls with counsel for the Marriott Defendants, on or around September 5, 2019 and September 12, 2019, informing counsel for the Marriott Defendants that Plaintiffs and the AHCA did not believe the Marriott Defendants were entitled to discovery of those confidential documents and communications, and further attempting to resolve the parties' differences. During those discussions, the Marriott Defendants insisted they would not change their "position" until receiving the requested documentation.  Upon Plaintiffs and the ACHA concluding that such disclosure was not appropriate based on Marriott's conjecture, counsel for the AHCA informed counsel for the Marriott Defendants of that position. The settlement amount has been fully funded and there is no reason to delay approval based on the non-position of the Marriott Defendants.

      Shortly before the motion was to be filed, counsel for Marriott Defendants informed

---

[1] Mr. Lyon's of Lewis Roca Rothgerber Christie conducted three separate sessions of meditation between Plaintiffs and ACHA over the past 18 months.

counsel for Plaintiffs and counsel for the AHCA that the Marriott Defendants' formal position on this motion is as follows:

> The Marriott Defendants do not agree to the relief sought in the motion. The settlement required certain of the AHCA's Former Directors to sign and deliver certain Declarations, and to appear at trial and provide testimony consistent with those Declarations, which are inconsistent with the Former Directors' deposition testimony. The Marriott Defendants believe that the procurement of this questionable and inconsistent testimony in exchange for the release of claims against the AHCA creates the appearance of collusion, to the detriment of the Marriott Defendants. The Marriott Defendants requested a limited scope of documents and information concerning the settlement, to ascertain whether it was the product of collusion and it is being withheld. Thus, the Marriott Defendants: (a) cannot agree to the relief sought; and (b) will be cross-moving to adjourn the motion for a determination of good faith and to request that the AHCA and Plaintiffs provide the Marriott Defendants with: (1) All communications between Plaintiffs' counsel and the AHCA's counsel concerning, relating or pertaining to: (a) the Settlement Agreement and/or (b) the Declarations; and (2) All drafts of: (a) the Settlement Agreement; and (b) the Declarations.

**INTRODUCTION AND RELEVANT BACKGROUND**

Plaintiffs are owners of deeded 1/12 fractional interests at the Ritz-Carlton Club in Aspen Highlands (the "Club") located in Aspen, Colorado. Plaintiffs sued the AHCA and the Marriott Defendants, alleging that an affiliation program put in place between the Club and the Marriott Vacation Club ("MVC") devalued their fractional ownership interests. Plaintiffs assert claims against the AHCA for breach of fiduciary duties, constructive fraud, conspiracy, and aiding and abetting the Marriott Defendants' respective breaches of their fiduciary duties. *See generally* Corrected Seventh Amended Complaint, ECF No. 430.

The Court is well familiar with the background and progression of this case since the complaint was first served on the AHCA in early 2016. Privately, however, Plaintiffs and the AHCA have repeatedly attempted to resolve this dispute. In mid-2018, Plaintiffs and the AHCA participated in two separate mediation sessions, neither of which resulted in a settlement. *See*

Exhibit 1 ¶ 2 (Declaration of Jessica Livingston).  After an additional year of extensive motions practice, depositions, and expert discovery, Plaintiffs and the AHCA again engaged in a mediation session on July 15, 2019.  *Id.* ¶ 3.  That all-day mediation with Mr. Lyons was followed by discussions over a two-week negotiation period, at the conclusion of which Plaintiffs and the AHCA were able to reach a settlement in principle on the evening of July 26, 2019.  *Id.* ¶ 4.  The next day, on Saturday, July 27, 2019, counsel for the AHCA informed counsel for Marriott that the Plaintiffs and AHCA had reached a settlement in principle.  *Id.* ¶ 5.  Plaintiffs and the AHCA informed the Court of their settlement in principle the following business day.  *See* ECF. No. 440 (Aspen Highlands Condominium Association's Notice of Settlement in Principle and Motion to Stay Association's Deadlines).  On August 2, 2019, pursuant to Judge Gallagher's sanctions order (ECF. No. 387), Plaintiffs conducted the deposition of one of the four board members, Robert Harris, in Lansing, Michigan.  The Marriott Defendants were present and conducted a cross examination over 15 pages.

On July 30, 2019, Plaintiffs and the AHCA finalized their Settlement Agreement and Mutual Release of Claims (the "Settlement Agreement"). Exhibit 1 ¶ 6.  Mr. Lyons stayed engaged as the mediator to assist in reaching a settlement.  *Id.* ¶ 7.  The Settlement Agreement was fully executed on August 15, 2019, after obtaining signatures from each and every one of the approximately 206 sets of Plaintiffs (owners of 230 units) and the AHCA.  *Id.* ¶ 8.  The material terms of the Settlement Agreement are as follows:

    1.    All Plaintiffs agreed to dismiss their claims against the AHCA with prejudice. *See* Exhibit 2 (Settlement Agreement) ¶ 10.

    2.    All Plaintiffs released and discharged all claims against the AHCA arising in any

way from the above-captioned lawsuit, and the AHCA similarly released and discharged all claims against the Plaintiffs arising in any way from the above-captioned lawsuit. *Id.* ¶¶ 7, 8.

    3.    Within thirty (30) days of the date of full execution (August 15, 2019), the AHCA agreed to pay Plaintiffs the settlement amount of $2,637,500. *Id.* ¶ 3.[2]

    4.    The four former AHCA Board directors who served in April 2014 agreed to provide sworn declarations setting forth their truthful testimony regarding the 2013 Affiliation Agreement and agreed to appear and testify truthfully at trial if there is a trial between the Plaintiffs and the Marriott Defendants. *Id.* ¶¶ 4, 5; *see also* Exhibits 2–5 of Exhibit 2 (containing the declarations).

    5.    Plaintiffs and the AHCA agreed to jointly and promptly undertake good-faith efforts to obtain approval of the Settlement Agreement pursuant to C.R.S. § 13-50.5-105, either by order of the Court or following a hearing before the Court, and Plaintiffs and the AHCA consent to the jurisdiction of Magistrate Judge Gallagher to enter such order or hold such hearing. *Id.* ¶ 6.

Counsel for Plaintiffs and the AHCA extensively negotiated these terms with the aid of their mediator over the course of approximately two weeks, taking into account the needs of their respective clients, their separate assessments of the litigation risks presented by the prospect of continuing towards trial, the time and expenses each side faced in continuing to litigate this dispute, and numerous other factors relevant to each side. *See* Exhibit 1 ¶ 10. Plaintiffs and the AHCA ultimately were able to reach a good-faith settlement of their dispute, memorialized in the Settlement Agreement. They now seek this Court's determination that, pursuant to Colo. Rev.

---

[2] These settlement funds have been transmitted.

Stat. § 13-50.5-105, the Settlement Agreement and release given by Plaintiffs to the AHCA was made in good faith.

## STANDARD OF REVIEW

Colo. Rev. Stat. § 13-50.50-105(1) provides that "[w]hen a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury … (b) [i]t discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor." Colo. Rev. Stat. § 13-50.50-105(1) (1987). The Colorado Supreme Court held that, under this statute, "a settlement is reached in 'good faith' in the absence of collusive conduct." *Copper Mountain, Inc. v. Poma of America, Inc.*, 890 P.2d 100, 104, 108 (Colo. 1995); *see also Sipf v. Herbers*, No. 1:12-cv-00441-RM-KMT, 2015 WL 2441395, at *8 (D. Colo. May 20, 2015) (quoting and citing same). Colorado's statute is a "verbatim enactment of section 4(b) of the Uniform Contribution among Tortfeasors Act of 1955," and the legislative "history behind the enactment of the UCATA indicates that the drafters intended the phrase 'good faith' simply to require noncollusive conduct." *Copper Mtn.*, 890 P.2d at 104, 106 (citing Unif. Contribution Act § 4, 12 U.L.A. 99–100, Comrs. cmt. on sec. (b) (1975)). Based on the "intent of the legislature and the important public policy in favor of settlement of disputes," the Colorado Supreme Court has rejected other formulations that attempt to impose higher standards or require more than merely noncollusive conduct to demonstrate good faith under the statute. *Id.* at 108; *see also id.* at 106.

The burden of demonstrating a lack of good faith—that the settlement was reached as a result of collusive conduct—lies with the party challenging the settlement. *Id.* at 108; *see also Noyes v. Raymond*, 548 N.E.2d 196, 200 (Mass. App. 1990) (in analyzing identical statute,

6

concluding that "[t]he party relying upon a settlement in seeking to be discharged certainly has the initial burden of establishing that a settlement has been agreed upon and its nature and terms. … [H]owever, the burden of coming forward with some showing of lack of good faith ought to rest, we think, with those opposing the discharge"); *Dacotah Mktg. Research, L.L.C. v. Versatility, Inc.*, 21 F. Supp. 2d 570, 578 (E.D. Va. 1998) (in analyzing identical statute, holding that the "[a]nalysis begins with the presumption that the settlement has been made in good faith, and the burden is on the challenging party to show that the settlement is infected with collusion or other tortious or wrongful conduct").  The terms of the settlement agreement are simple, fair and common.  Money has been paid, releases have been exchanged, and testimony is to be provided.  The process was arms-length and accomplished with the aid of an highly experienced mediator and attorney in Mr. Lyons.  The Marriott Defendants' conjecture and use of the word collusion without more is no basis to delay approval of the settlement.

A settlement is the result of collusion if it was agreed to with the "intent to harm the nonsettling defendant." *Copper Mtn.*, 890 P.2d at 106–07.  "Any negotiated settlement involves cooperation, but not necessarily collusion." *Id.* at 108 (internal quotation marks and citation omitted).  "[A] collusive agreement requires more than mere confederacy" and becomes collusive only "when it is aimed to injure the interests of an absent tortfeasor." *Id.* (quotation marks and citation omitted).  That Marriott may not be pleased with the settlement is no grounds to even suggest that there has been collusion.

## ARGUMENT

**I.     Plaintiffs and the AHCA reached a settlement in good faith.**

The settlement between Plaintiffs and the AHCA was reached in good faith and is not the

result of collusive conduct. Plaintiffs and the AHCA need only demonstrate that a settlement exists and inform the court of its terms and conditions. *See Noyes*, 548 N.E.2d at 200. They have satisfied that burden by describing the material terms of the settlement and providing the Settlement Agreement for the Court's review. *See* Exhibit 1 ¶¶ 2–10; Exhibit 2; *supra* at 4–5. In their settlement efforts, Plaintiffs and the AHCA vigorously negotiated their respective positions, endeavoring to reduce their respective risks by reaching a private resolution to the dispute rather than facing the uncertainty associated with a jury trial. *See* Exhibit 1 ¶ 11. The resolution they achieved is in the best interests of both the Plaintiffs and AHCA and was reached without any aim whatsoever to injure the interests of the Marriott Defendants. *Id.* Not only was there no intent to harm the Marriott Defendants, *id.* ¶ 12, but no actual harm has resulted, *see Stubbs v. Copper Mtn., Inc.*, 862 P.2d 978, 985–86 (Colo. App. 1993) (finding no actual prejudice to party challenging settlement). Accordingly, this Court should conclude that, pursuant to Colo. Rev. Stat. § 13-50.5-105, the settlement between Plaintiffs and the AHCA was reached in good faith.

**II.     The absence of any collusive conduct further demonstrates that the Plaintiffs and the AHCA reached their settlement in good faith.**

Importantly, Plaintiffs and the AHCA do not bear the burden of proving that the Settlement Agreement was reached in good faith—the burden to prove collusive conduct lies with any party challenging the settlement agreement, including the Marriott Defendants. *Copper Mtn.*, 890 P.2d at 108. Nevertheless, numerous factors point to an absence of collusion here.

As an initial matter, the Settlement Agreement and its terms were vigorously negotiated between Plaintiffs and the AHCA, with both sides taking into account and attempting to reduce the risks and uncertainty they would face in proceeding to a jury trial on Plaintiffs' claims. *See* Exhibit 1 ¶ 11. Following an in-person all-day mediation session with Mr. Lyons on July 15,

2019, over the course of two weeks, counsel for Plaintiffs and for the AHCA stayed engaged and had communications regarding the proposed terms of what ultimately became the Settlement Agreement.  *Id. ¶* 13.  Counsel engaged in phone calls and email exchanges while negotiating the monetary and non-monetary aspects of the settlement.  *Id. ¶* 14.  For example, counsel for Plaintiffs and for the AHCA spent days exchanging offers and counteroffers before reaching an agreement on an acceptable monetary payment from the AHCA to Plaintiffs.  *Id.* ¶ 15.  During this time, Mr. Lyons was engaged in the context of his role as mediator.  *Id.*  Similarly, the contents of the declarations provided by the four AHCA directors pursuant to provision 4 of the Settlement Agreement were repeatedly discussed in order to ensure that directors' attestations accurately reflected the events that occurred.  *Id.* ¶ 16.

Furthermore, the amount of the settlement reflects the significant expense of continued proceedings towards trial, coupled with the potential for both Plaintiffs and the AHCA of an adverse judgment at trial.  This dispute has been ongoing for over three years, with dozens upon dozens of depositions and several rounds of contested motions practice.  *Id.* ¶ 17.  At the time of the settlement, the parties had just concluded expert discovery, and additional motions practice was imminent (motions for summary judgment, *Daubert* motions, and motions i*n limine* were all due within a month of the settlement).  *See* ECF No. 423.  The settlement amount, which has been paid entirely from the AHCA's director & officers liability insurance policies, reflects Plaintiffs' and the AHCA's respective assessments of future litigation expenses, litigation and jury risks, the potential for adverse judgement(s), and appellate expenses, among other factors.  *See* Exhibit 1 ¶ 18.  Additionally, because the AHCA's insurance policies are wasting policies (meaning that defense costs are deducted from the available policy limits), continued litigation

expenses simply reduced the amounts available to satisfy a judgment—and, notably, any amount awarded to another party in the form of indemnification or contribution.  *Id.* ¶ 19.

Additionally, the settlement amount reflects an intentional effort by the AHCA to preserve some amount of the insurance policies in the event that a future related claim is filed against the AHCA that requires the AHCA to defend itself.  *Id.* ¶ 20.  Because of the nature of the insurance policies, any future claims could potentially implicate the policies that currently provide for the defense of the above-captioned lawsuit.  Therefore, the AHCA endeavored to require, when negotiating the monetary terms of the settlement, that some funds remain available within the overall limits of the insurance policies.  *Id.* ¶ 21.  The ultimate settlement amount thus reflects this strategic goal of the AHCA.  *Id.* ¶ 22.

To the extent the Marriott Defendants were to challenge the non-monetary terms of the settlement as collusive, that effort similarly would fail.  Pursuant to the Settlement Agreement, the AHCA agreed to provide declarations from the four former directors who were on the Board at the relevant time, namely early 2014.  *See* Exhibit 2 ¶¶ 4, 5.  Those declarations contain nearly identical testimony to that which the AHCA, and those specific four declarants, already provided in the form of discovery responses.  *See* Exhibit 1 ¶ 23; *see also* Exhibit 3.  There is no evidence to suggest that the testimony in the declarations is not truthful.  In fact, it simply mirrors what the declarants have testified to and will testify to under oath if called at trial.  *See* Exhibit 1 ¶ 25.  The four declarants further agreed to not contest any trial subpoena (they do not reside within the subpoena power of the Court) and to appear at trial to testify, if called to do so.  Exhibit 1 ¶ 26; Exhibit 2 ¶ 5.

To the extent the Marriott Defendants take issue with the content of the declarations, the

Colorado Supreme Court has ruled that it is not collusive to provide witnesses testimony as part of a settlement. *Copper Mtn.*, 890 P.2d at 109. Even if the Marriott Defendants believe the testimony provided in the declarations is not favorable to them, that alone is not evidence of collusion, because those witnesses would (or will) testify truthfully to those matters at trial, where they will be subject to cross examination by the Marriott Defendants. Exhibit 1 ¶ 25. There is no arrangement whereby testimony is to be provided that the Marriott Defendants will not have the opportunity to contest before a fact-finder.

Beyond the terms of the Settlement Agreement, there is nothing to suggest any collusion between the Plaintiffs and the ACHA. Collusive conduct might be found where an agreement allows one party to hire the other side's lawyers and obtain their expertise and experience such that the party "would now know everything [the other side] knew about the transaction in issue, including the nature and identity of documentary evidence and witnesses adverse to" the non-settling tortfeasor. *Dacotah*, 21 F. Supp. 2d at 578–79. Nothing of the sort happened here.

Moreover, the settlement was not kept secret from the Marriott Defendants. In fact, the prompt disclosure of a settlement agreement to the non-settling tortfeasor may be a factor indicating the absences of collusive conduct. *See, e.g.*, *Copper Mtn.*, 890 P.2d at 108–09 (rejecting argument that agreement was collusive because it was undisclosed for months). Here, counsel for the AHCA informed counsel for Marriott that the parties had a settlement in principle the day after the agreement was reached. *See* Exhibit 1 ¶ 5. Some of the terms of the Settlement Agreement were disclosed in the parties' notice to the Court that the settlement had been fully executed, on August 15, 2019. *See* ECF No. 465. Counsel for the AHCA has since then shared the full Settlement Agreement and all its terms with counsel for the Marriott Defendants on

August 22, 2019, in an effort to confer with the Marriott Defendants on this Motion.  *See* Exhibit 1 ¶ 27.

Ultimately, nothing in the Settlement Agreement suggests that it was reached as the result of collusive conduct.  There is no evidence that the settlement process or the Settlement Agreement's ultimate terms were agreed to with the intent to injure the Marriott Defendants, let alone that the Marriott Defendants have actually suffered any harm or prejudice as a result of the settlement.  The AHCA negotiated for certainty in resolution of the dispute, the release of all claims by Plaintiffs, a settlement amount that was within its policy limits, and the preservation of some amounts within the insurance policies to address potential future related claims.  Plaintiffs negotiated for certainty in the resolution of their claims, a monetary payment, and the assurance that, if necessary, certain witnesses would not oppose a trial subpoena and would agree to testify truthfully at trial.  These factors all indicate the settlement was reached in good faith, in the absence of any collusion.

## CONCLUSION

Plaintiffs and the AHCA reached a settlement that fully resolves all claims between those parties.  That settlement was the result of good-faith, arms-length negotiations.  Because there was no collusive conduct or intent to harm the Marriott Defendants when the Plaintiffs and the AHCA negotiated their settlement, and because the terms of the Settlement Agreement do not actually harm or prejudice the Marriott Defendants, the Plaintiffs and the AHCA respectfully request that the Court find that the Settlement Agreement was reached in good faith under Colo. Rev. Stat. § 13-50.5-105.

Respectfully submitted this 23rd day of September, 2019.

/s/ Jessica Black Livingston
Jessica Black Livingston
Andrew Nussbaum
HOGAN LOVELLS US LLP
1601 Wewatta Street, Suite 900
Denver, Colorado 80202
Telephone: (303) 899-7300
FAX: (303) 899-7333
E-mail:jessica.livingston@hoganlovells.com
andrew.nussbaum@hoganlovells.com

*Attorneys for Defendant Aspen Highlands Condominium Association*

/s/ Matthew C. Ferguson
Matthew C. Ferguson
THE MATTHEW C. FERGUSON LAW FIRM, P.C.
119 South Spring, Suite 201
Aspen, Colorado 81611
Telephone: 970.925.6288
Fax: 970.925.2273
E-mail: matt@matthewfergusonlaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 23rd day of September, 2019, a true and accurate copy of the foregoing **ASPEN HIGHLANDS CONDOMINIUM ASSOCIATION'S AND PLAINTIFFS' JOINT MOTION FOR GOOD-FAITH DETERMINATION OF SETTLEMENT** was filed and served via CM/ECF filing system upon following:

Michael J. Reiser, Esq.
Law Office of Michael J. Reiser
1475 N. Broadway, Suite 300
Walnut Creek, California 94596

Michael L. Schrag, Esq.
Linda Lam, Esq.
Gibbs Law Group LLP
505 14th Street, Suite 1110
Oakland, California 94612

Tyler R. Meade, Esq.
The Meade Firm P.C.
1816 Fifth Street
Berkeley, California 94710

Naomi G. Beer, Esq.
Greenberg Traurig, LLP
1200 17th Street, Suite 2400
Denver, Colorado 80202

Ian S. Marx, Esq.
Philip R. Sellinger, Esq.
Todd Schleifstein
Greenberg Traurig, LLP
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932

*/s/ Stephanie Rummery*