IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 1:16-cv-01301-PAB-GPG

**RCHFU, LLC**, a Colorado limited liability company, *et al.*,

Plaintiffs,

v.

**MARRIOTT VACATIONS WORLDWIDE CORPORATION**, a Delaware corporation, *et al.*,

Defendants.

---

**ASPEN HIGHLANDS CONDOMINIUM ASSOCIATION'S AND PLAINTIFFS' JOINT REPLY IN SUPPORT OF THEIR MOTION FOR GOOD-FAITH DETERMINATION OF SETTLEMENT AND RESPONSE TO MARRIOTT DEFENDANTS' CROSS-MOTION TO COMPEL DISCOVERY**

---

Plaintiffs and Defendant Aspen Highlands Condominium Association ("AHCA") respectfully submit this combined Reply in support of their Joint Motion (Doc. 535) and Response to the Marriott Defendants' Cross-Motion to compel discovery (Doc. 543).

The settlement between the AHCA and Plaintiffs was negotiated and agreed upon in good faith pursuant to Colo. Rev. Stat. § 13-50.5-105.  Plaintiffs and the AHCA participated in weeks of arms-length negotiations aided by Jim Lyons, a neutral and well-respected mediator, to reach a settlement that reduced each side's ultimate risk and exposure.[1]  The Marriott Defendants' intimation that Plaintiffs and the AHCA "colluded" and that the directors' declarations ("Declarations") are untrue is unfounded speculation crafted to delay the settlement.  The Declarations are, in fact, consistent with prior and subsequent deposition testimony and do not demonstrate collusion.  The Marriott Defendants have not made any showing of an aim by

---
[1] *See* Declaration of Matthew C. Ferguson, October 11, 2019 ("Ferguson Decl."), ¶ 4–11, 13–16.

Plaintiffs and the AHCA to harm them, nor of any actual harm or injury the Declarations caused. Thus, they have failed to meet their burden to show good cause for discovery of protected settlement and mediation communications.

**ARGUMENT**

**I.      The AHCA directors' Declarations are not inconsistent with their prior testimony.**

The Marriott Defendants' argument that the AHCA directors provided Declarations that are inconsistent with their prior testimony and the subsequent testimony of Robert Harris does not withstand scrutiny. *See* Resp. at 4–8. In their Declarations, the AHCA directors attest that they were never provided with the November 13, 2013 Affiliation Agreement, and that, had they been aware of certain specific terms of the Affiliation Agreement collectively, they would not have voted to approve, or signed, the April 24, 2014 Acknowledgement and Joinder (the "Acknowledgment") when it was presented to them. *See* Exs. 2–5 to Ex. 2 to Joint Mot. The Marriott Defendants assert that the Declarations are inconsistent with prior testimony about how the directors believed the affiliation program was supposed to operate. Not so.

Although the Marriott Defendants point to testimony concerning the directors' personal understandings (or misunderstandings) of how the affiliation was supposed to operate (based on the information Marriott chose to provide), this is wholly distinct from and not inconsistent with the Declarations' statements that they were unaware of the formal, contractual terms of the Affiliation Agreement—which Marriott never provided them. Testimony relating to different topics is not "inconsistent" simply because it seemingly contradicts testimony regarding a different matter. *Liscio v. Pinson*, 83 P.3d 1149, 1155 (Colo. App. 2003). Rather, inconsistent testimony creates "a material variance between the witness' testimony and the prior statement,"

2

*Williams v. Dist. Court, El Paso Cty.*, 700 P.2d 549, 557 (Colo. 1985), essentially resulting in a "self-contradictory" statement, *People v. Trujillo*, 49 P.3d 316, 319–21 (Colo. 2002).

That the AHCA directors previously testified that they knew about certain aspects of the affiliation does not warrant the conclusion that the directors testified inconsistently when they said they were unaware of certain specific terms of the formal Affiliation Agreement.  First, as the Court well knows, Marriott never provided the 2013 Affiliation Agreement to any of the directors at any time.  Second, their testimony concerns different topics and is not inconsistent. On the one hand, the directors[2] testified to their understanding of the affiliation's operation based, in part, on their negotiation over the Memorandum of Understanding[3] and their overall beliefs about certain aspects of the affiliation, such as whether MVCD members could reserve less than one week or RCDC members could be charged a fee.  *See* Resp. at 5, 7, 8; Ferguson Decl., ¶ 17.  On the other hand, their Declarations say that because they were "never provided with a copy of the Affiliation Agreement prior to signing the [Acknowledgement] … [they] w[ere] not aware" of twelve specific provisions of the Affiliation Agreement.  Exs. 2–5 to Ex. 2 to Joint Mot., ¶ 4.

It is not "self-contradictory" for an AHCA director to testify that he believed the affiliation program operated in a certain way but was unaware of the precise terms of the formal contract because he never received that contract.  *See Trujillo*, 49 P.3d at 319–21.  Neither is there a "material variance" between the directors' testimony regarding what they thought the affiliation program would involve and the actual contractual terms of the program.  *Id.*  This

---

[2] Randy Mercer, Tyler Oliver, and Philip Schneider were deposed before the 2013 Affiliation Agreement was produced by the Marriott Defendants. Mr. Mercer was deposed a second time after the late production.

[3] As Plaintiffs note, the MOU did not effectuate the affiliation.  Ferguson Decl., ¶ 19, Ex. 5.

testimony simply relates to different topics, and is not inconsistent.  *See Liscio*, 83 P.3d at 1155.

## II.      The Declarations were not obtained through collusion aimed to injure Marriott.

A settlement is collusive if the settling parties agreed to terms with the intent to harm the

non-settling tortfeasor.  *Copper Mountain, Inc. v. Poma of Am., Inc.*, 890 P.2d 100, 108 (Colo.

1995).  The Marriott Defendants have failed to meet their *prima facie* burden to show how the

Plaintiffs and AHCA aimed to harm them or how they actually suffered any injury or harm.

The Declaration testimony is nearly identical to prior AHCA discovery responses that the

Marriott Defendants never challenged as harmful or inconsistent with other testimony.

Moreover, the parties negotiated the Declarations and monetary payment separately.  Ferguson

Decl., ¶ 12–14.  Marriott provides no basis for the conclusory assertion that the ACHA gave

testimony "in exchange for a reduction in the amount [it] must pay Plaintiffs."  Resp. at 10.[4]

Likewise, the Marriott Defendants repeatedly suggest that the Plaintiffs and AHCA

"bargained for" "virtually identical" Declarations as if that means the Declarations contain false,

manufactured testimony.  *See, e.g.*, Resp. at 1, 2, 4, 5, 10, 12.  But of course the Declarations

were "bargained for"—all truly arms-length settlement discussions involve negotiated,

bargained-for exchanges. *See In re Nat'l Football League Players Concussion Injury Litig.*, 821

F.3d 410, 444 (3d Cir. 2016) (noting that settlement is a "bargain struck by the parties,

negotiating amid the fog of litigation"), *as amended* (May 2, 2016); *Adolph Coors Co. v.*

*American Ins. Co.*, 1993 WL 13029757, at *1 (D. Colo. Sept. 9, 1993) (approving good faith

settlement that "was fairly negotiated at arms' length by parties with divergent economic

---

[4] There is not an amount the AHCA "must" pay Plaintiffs.  Plaintiffs and AHCA negotiated the monetary payment based on the AHCA's insistence that it preserve some part of its insurance policies in case a future related claim is filed.  Joint Mot. at 10; Ferguson Decl., ¶ 15.  That explanation, independent of the Declarations, the Marriott Defendants conspicuously ignore.

interests"). That they were "bargained for" only suggests they did <u>not</u> arise from collusion. There would be no need to negotiate if the parties were colluding with the sole purpose of injuring the non-settling party. And the Declarations are identical because the directors were similarly situated. The Marriott Defendants failed to provide each director with the 2013 Affiliation Agreement; thus none knew its terms.

Even if the Declarations were inconsistent with prior testimony (and they're not), they would not harm the Marriott Defendants. They would instead allow the Marriott Defendants to cross-examine and attack the credibility of those directors and impeach their testimony at trial. If the Marriott Defendants are right, and the statements are inconsistent, one is hard-pressed to understand how fodder for impeachment harms them.

Citing *Minpeco, S.A. v. Hunt*, the Marriott Defendants incorrectly argue that providing specific testimony rather than a general agreement to testify at trial is improper. Resp. at 11–12 (citing 127 F.R.D. 460, 462–63 (S.D.N.Y. 1989)). But *Minpeco* <u>permitted</u> the proposed testimony, which was included in an outline in the settlement documents. 127 F.R.D. at 462–63. The *Minpeco* court differentiated that agreement from the one in *Goodrich v. Tenney*, where a contract providing for expert testimony procured by a "witness finder" paid a commission based on the plaintiff's recovery was unenforceable. 33 N.E. 44 at 47 (Ill. 1893). The obsolete offense of champerty and maintenance in *Goodrich* is not present here. *See Casserliegh v. Wood*, 14 Colo. App. 265, 268–74, 279–80 (Colo. 1900); *First Nat.'l Bank of Springfield v. Malpractice Research, Inc.*, 688 N.E.2d 1179, 1183–84 (Ill. 1997) (issue in *Goodrich* was agreement to pay witness finder commission). Nor was there a commission-based provision of testimony, or anything offensive to the public policy promoting settlements in this case. Indeed, courts

approve exactly what happened here: the defendant "assist[s]" the plaintiff by "providing sworn statements" and agreeing "to testify truthfully" absent evidence the parties "conspired" to "provide false or misleading testimony." *Relizon Co. and Workflow Solutions, LLC v. Seybold*, No. 3:10-cv-145, 2014 WL 2939170, at * 8–10 (S.D. Ohio June 27, 2014).

Ultimately, despite repeating the conclusory retort that Plaintiffs and the AHCA "colluded to harm" them and that the Declarations were "intended to harm," Resp. at 2, 10, 11, 12, 15, the Marriott Defendants never actually identify either intent or what harm or injury they face. There is none. If they think there are inconsistencies, they have every right to cross-examine and attempt to discredit the directors. The Marriott Defendants' assertions demonstrate only this: The AHCA directors truthfully testified that they were never given the 2013 Affiliation Agreement, so were not aware of its specific terms, and that if they had been so aware, collectively, they would not have voted to sign or signed the Acknowledgement when it was presented to them. *See* Exs. 2–5 to Ex. 2 to Joint Mot. But the Marriott Defendants argued to this Court in their Motion for Partial Summary Judgment that the AHCA "could not have enforced the provision of the [Affiliation Agreement] … to prevent RC Club Aspen from participating in the MVC affiliation by refusing to sign the Acknowledgement." Doc. 441 at 24. They go on to say that "a refusal by AHCA to sign the Acknowledgement would not have prevented RC Club Aspen from participating in the MVC Affiliation" and that "[e]ven if AHCA refused to sign the Acknowledgment … the parties to the 2013 Affiliation Agreement would have been free to amend the agreement to eliminate any purported requirement for a signed Acknowledgment." *Id.* at 24–25 & n.15.[5] How, then, under their version of the facts, are the

---

[5] Plaintiffs contend that the evidence is to the contrary: the Marriott Defendants knew that the

Marriott Defendants harmed by the AHCA directors' Declarations—particularly when they will have the opportunity to challenge the directors' credibly and veracity at trial?  They are not.

In the end, the Marriott Defendants' efforts to manufacture collusion are unpersuasive. The Settlement Agreement was not the result of collusion and was not an attempt to harm the Marriott Defendants.  This settlement has none of the collusive indicia that courts find offensive. *See Dacotah Mktg. & Research, L.L.C. v. Versatility, Inc.*, 21 F. Supp. 2d 570, 578–79 (E.D. Va. 1998) (parties settled for $1 so plaintiff could hire settling-defendant's attorneys, access confidential information, and obtain inside information from the settling defendant).  Just the opposite, the settlement was the result of vigorous, arm's-length negotiations between Plaintiffs and the AHCA, with both sides considering their respective risks and attempting to reduce the uncertainty of trial.  The negotiations were overseen by Mr. Lyons, a well-respected, experienced mediator, whose hands-on, daily involvement in the negotiations "supports a finding that the settlement is reasonable [and] was reached without collusion."  *In re Molycorp, Inc. Securities Litigation*, No. 12-cv-00292, 2017 WL 4333997, at *4 (D. Colo.  Feb. 15, 2017); *see also* Ferguson Decl. ¶¶ 4–11, 13–16 and Ex. 1.  That one party might be construed as having gained a "tactical" advantage through this negotiations process is not evidence of collusion.  *Dacotah*, 21 F. Supp. 2d at 578 n.19 ("A settlement motivated by tactical gain is not necessarily one in bad faith … [a]ll settlements are 'tactical' in some sense.") (internal citations and quotations omitted).

---

AHCA had veto power.  For example, in response to a question from her MVW asset manager counterpart on November 17, 2014 ("Is the ultimate decision [to affiliate] the boards or the [Marriott] management company?") Sobeck replied: "Decision to Affiliate? The Boards."  *See* Ferguson Decl., ¶ 18, Ex. 4 (email dated November 17, 2017).  Thus, the AHCA had the right not to join the 2013 Affiliation Agreement.

**III.      The Marriott Defendants have not demonstrated good cause to justify discovery.**

The Marriott Defendants concede they bear the burden to prove collusion.  Resp. at 13. And there is no question that the Marriot Defendants must show good cause for discovery.  *See Stubbs v. Copper Mountain, Inc.*, 862 P.2d 978, 986 (Colo. App. 1993).  A court has broad discretion and "must weigh the alleged need for discovery … against the need for keeping the procedure within a framework that does not discourage settlement."  *Id.*; *see also Mahathiraj v. Columbia Gas of Ohio, Inc.*, 617 N.E.2d 737, 742 (Ohio App. Ct. 1992) (court has discretion to choose both the type of proceeding it will conduct and … its evidentiary sources"); *Cohen v. Univ. of Dayton*, 840 N.E.2d 1144, 1148–49 (Ohio App. Ct. 2005) (policy encouraging settlement militates in favor of limiting the scope and extent of discovery).

The goal of encouraging settlement is "achieved only to the extent that motions for discharge … are routinely allowed, with extended hearings on the question of good faith the exception."  *Noyes v. Raymond*, 548 N.E.2d 196, 199 (Mass. App. Ct. 1990).  Unwarranted discovery undermines that goal by risking that "the issue of good faith would be the subject of a full trial" of its own.  *Id.*  Indeed, courts have significantly limited discovery in order to avoid "a mini-trial or mini-discovery" on the question of good faith.  *Nawn v. State Industries, Inc.*, No. CIV.A. 93-1749, 1996 WL 736934, at *6 (Mass. Super. Ct. 1996); *Cohen*, 840 N.E.2d at 1148.

Colorado courts require a showing of good cause by the movant before ordering discovery of confidential settlement information.  *Stubbs*, 862 P.2d at 986.  Here, like the movant in *Stubbs*, the Marriott Defendants have not done so.  Although they purport to raise five grounds, their only real basis is their belief that the Declarations were the result of collusion.  *See* Resp. at 14.  As described above, the directors' testimony is not inconsistent or the result of

collusion and does not harm the Marriott Defendants.  Their suggestion that the "veracity" of the

Declarations constitutes good cause to conduct discovery is unfounded.  *See Stubbs*, 862 P.2d at

986 (rejecting discovery because movant's grounds did not "create an inference of bad faith").

Also unfounded is their argument that the affidavit of counsel who participated in the

settlement negotiations justifies discovery.  Resp. at 15.  Courts are well within their discretion to

determine good faith without ordering discovery where the parties have briefed and argued the

issues and submitted affidavits and evidence already established by the existing record.  *See, e.g.*,

*Ruffino v. Hinze*, 537 N.E.2d 871, 874 (Ill. App. Ct. 1989) (Trial court considered "pleadings,

motions, and affidavits of the parties ….  This was an appropriate method for determining good

faith."); *Mahathiraj*, 617 N.E.2d at 742 (court may determine settlement's good faith "based

solely upon the arguments of counsel, … affidavits, depositions, and other discovery materials of

record").  That is exactly what Plaintiffs and the AHCA did here, providing the Court with

briefs, affidavits, and evidence produced in this case to substantiate their good-faith settlement.

Similarly, the Marriott Defendants provide no support for their assertion that the mere

availability of documents or that the AHCA president considered disclosing limited settlement

communications constitutes good cause for their production.  Resp. at 9, 14–15.[6]  Were that the

case, virtually all written settlement communications would be subject to production because all

e-mails are readily available, eviscerating the confidential nature of settlement discussions.

---

[6] The AHCA's president's communication did not relay Plaintiffs' position on the issue, whose consent was needed to produce any confidential settlement communications involving Plaintiffs. To the extent the email discloses privileged communications, the disclosure was not authorized by the AHCA and therefore does not waive the attorney-client privilege.  *See Genova v. Longs Peak Emergency Physicians, P.C.*, 72 P.3d 454, 463 (Colo. App. 2003) (individual director is not "entitled alone to assert or waive the privilege on behalf of [a corporation]").  Accordingly, the AHCA requests a claw back of that communication and that the Court not considered it.

Lastly, the Marriott Defendants argue that good cause exists because their request is narrowly tailored.  Resp. at 14.  It is not.  They ask for all communications between Plaintiffs' counsel and AHCA's counsel "concerning, relating or pertaining to" the Settlement Agreement and/or the Declarations, as well as all drafts of the Settlement Agreement and the Declarations. *Id.* at 9, 14.  But the only aspect of the Settlement Agreement they rely on to oppose a good-faith determination is the contents of the final Declarations.  Therefore, their request for discovery concerning the Settlement Agreement and its drafts is overly broad.  Ultimately, the Marriott Defendants' "dissatisfaction" with the provision of Declarations and the terms of the settlement "is not sufficient to show impropriety … or to justify inquiry into the parties' confidential settlement negotiations."  *In re Sandridge Energy, Inc.*, 2015 WL 11899141, at *3.

## CONCLUSION

For the above reasons and those set forth in the Joint Motion, Plaintiffs and the AHCA respectfully request that the Court grant their request for a determination that their Settlement Agreement was obtained in good faith pursuant to Colo. Rev. Stat. § 13-50.5-105 and deny the Marriott Defendants' cross-motion to compel discovery.

Respectfully submitted this 11th day of October, 2019.

| | |
|---|---|
| */s/ Jessica Black Livingston* | */s/ Matthew C. Ferguson* |
| Jessica Black Livingston | Matthew C. Ferguson |
| HOGAN LOVELLS US LLP | THE MATTHEW C. FERGUSON LAW FIRM, P.C. |
| 1601 Wewatta Street, Suite 900 | 119 South Spring, Suite 201 |
| Denver, Colorado 80202 | Aspen, Colorado 81611 |
| Telephone: (303) 899-7300 | Telephone: (970) 925-6288 |
| FAX: (303) 899-7333 | Fax: (970) 925-2273 |
| E-mail:jessica.livingston@hoganlovells.com | E-mail: matt@matthewfergusonlaw.com |
| *Attorneys for Defendant AHCA* | *Attorneys for Plaintiffs* |

<u>**CERTIFICATE OF SERVICE**</u>

I, the undersigned, hereby certify that on this 11th day of October, 2019, a true and accurate copy of the foregoing **ASPEN HIGHLANDS CONDOMINIUM ASSOCIATION'S AND PLAINTIFFS' JOINT REPLY IN SUPPORT OF THEIR MOTION FOR GOOD-FAITH DETERMINATION OF SETTLEMENT AND RESPONSE TO MARRIOTT DEFENDANTS' CROSS-MOTION TO COMPEL DISCOVERY** was filed and served via CM/ECF filing system upon following:

Michael J. Reiser, Esq.
Law Office of Michael J. Reiser
1475 N. Broadway, Suite 300
Walnut Creek, California 94596

Michael L. Schrag, Esq.
Linda Lam, Esq.
Gibbs Law Group LLP
505 14th Street, Suite 1110
Oakland, California 94612

Tyler R. Meade, Esq.
The Meade Firm P.C.
1816 Fifth Street
Berkeley, California 94710

Naomi G. Beer, Esq.
Greenberg Traurig, LLP
1200 17th Street, Suite 2400
Denver, Colorado 80202

Ian S. Marx, Esq.
Philip R. Sellinger, Esq.
Todd Schleifstein
Greenberg Traurig, LLP
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932

*/s/  Greg Apt*