# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

Civil Action No. 1:16-cv-01301-PAB-GPG

**RCHFU, LLC,** *et al.*

Plaintiffs,

v.

**MARRIOTT VACATIONS WORLDWIDE CORPORATION,** *et al.*

Defendants.

## DECLARATION OF MATTHEW C. FERGUSON

I, **Matthew C. Ferguson,** declare and state:

1. I am an attorney and the shareholder of The Matthew C. Ferguson Law Firm, P.C., co-counsel for Plaintiffs in the above-captioned action. I am a competent witness to give testimony to the facts set forth herein. I am a member of the Colorado bar and of this Court. Furthermore, as a bar-licensed attorney in good standing in Colorado, I am an officer of Colorado state and federal courts.

2. I respectfully submit this Declaration in further support of Aspen Highlands Condominium Association's ("ACHA") and Plaintiffs' Joint Motion for Good Faith Determination of Settlement ("Approval Motion") (Doc 535) and Response in opposition to the Marriott Defendants' Cross-Motion to compel discovery (Doc. 543).

A. **PURPOSES OF THIS AFFIDAVIT**

3. The purposes of this Declaration are (1) to set forth my relevant testimony in further support of the Approval Motion, and specifically to address certain of the Marriott Defendants' and its counsel's factual assertions in their response to the Approval Motion and cross motion which are either disputed, inaccurate or false, and (2) to further explain relevant evidence in light of Marriott's response and cross motion.

B. **FACTS CONCERNING AND IN SUPPORT OF THE JOINT MOTION TO APPROVE SETTLEMENT AND IN OPPOSITION TO MARRIOTT'S CROSS MOTION**

4. ACHA's and Plaintiffs' counsel, Daniel Shea and Matthew C. Ferguson retained James M. Lyons on or about March 13, 2018 by written engagement to act as a mediator in this case as to the Plaintiffs' claims against ACHA. The engagement included that the mediation was conducted consistent with Rule 408 of the rules of evidence and the Colorado Dispute Resolution Act, C.R.S. § 13-22-301, *et seq*.

5. A copy of Mr. Lyons' resume is attached hereto as **EXHIBIT "1"**. Mr. Lyons is highly regarded commercial trial lawyer, arbitrator and mediator.

6. After exchanging confidential mediation statements in late March 2018, ACHA and Plaintiffs participated in a first session of mediation on April 5, 2018 at Mr. Lyons' Denver law offices at Lewis Roca Rothgerber Christie LLP. Mr. Lyons was ably assisted by an associate, Abby Harder. Plaintiffs counsel Michal J. Reiser and I attended with a client representative. Daniel Shea was accompanied by Jessica Livingston and counsel for the primary D&O insurance carrier, which insurance is arranged by the Marriott Defendants.

7. The confidential discussions were arms-length and monitored at all phases by Mr. Lyons. I recall signing in with an acknowledgement that the mediation process was confidential.

2

Without waiving the contents of those confidential proceedings, ACHA and Plaintiffs did not reach a resolution.

8. A second mediation session was held on July 30, 2018, again at Mr. Lyons offices. ACHA was again represented by Mr. Shea and Ms. Livingston. I was again accompanied by Mr. Reiser. To the best of my recollection, an attorney for the excess carrier was also present and perhaps a representative for the primary carrier.

9. Once again, the confidential discussions were arms-length and monitored at all phases by Mr. Lyons. Without waiving the contents of those confidential proceedings, ACHA and Plaintiffs did not reach a resolution.

10. ACHA retained Bradley Levin of Levin | Sitcoff, P.C., a preeminent attorney and an expert in insurance coverage issues. Mr. Levin, Ms. Livingston and I engaged in brief discussions concerning a third mediation session. Mr. Lyons was contacted, and a third mediation session scheduled.

11. ACHA and Plaintiffs appeared for the third mediation session at Mr. Lyons' offices on July 15, 2019. Ms. Harder was present with Mr. Lyons throughout an entire day. I was accompanied by Mr. Reiser and Tyler Meade. A Plaintiffs' representative also attended, who is also a lawyer (admitted in Louisiana). Ms. Livingston was accompanied by Hogan Lovells associate Andrew Nussbaum, and Mr. Levin was present. Experienced outside counsel for the excess carrier was also in attendance. ACHA board president Sal Cutrona was also in attendance.

12. The Marriott Defendants speculate (wildly) that there was a reduction in the amount that the Association (through carriers) paid for the release of Plaintiffs claims with the provision of the director's declarations. This is false. The two matters were never linked. The

3

issue of the amount of coverages and monies to be paid and what for was discussed separately and on its own distinct track from the issue of obtaining trial testimony and the declarations.

13. The issues on money and the declarations were separate, and Mr. Lyons worked with me on the monetary amounts. I believe Mr. Lyons was speaking directly with Ms. Livingston and/or the carriers' outside counsel(s) for ACHA with regard to the monetary amounts as well.

14. There was no collusion. It took over two weeks to negotiate the terms, with Mr. Lyon engaged for 20 hours after the all-day mediation session on July 15, 2019. I negotiated the amount through Mr. Lyons and the content of the declarations was not linked in any way. The Settlement Agreement shows that the Settlement Amount is allocated only to fees and costs, which was a complex term to negotiate.

15. I had been negotiating settlement amounts and discussing insurance coverage issues over all three mediation sessions with Mr. Lyons, Daniel Shea and Jessica Livingston. They were speaking in turn to the D&O primary and excess carriers' counsel. The amount of the monetary payment was not linked to the declarations but instead was tied to the Association's insistence that it maintain some amounts in the insurance policies in the event of future related claims. There are many members who are not Plaintiffs in the above-captioned case. Mr. Lyons made it clear that absent a release of all liabilities from all members, the Association and its carriers needed to reserve additional defense funds within the insurance policies. There was no *quid pro quo* in terms of the money paid for whether the declarations were provided or not, and certainly not the contents of the declarations.

4

16.     Mr. Lyons spearheaded a mediation process that began on July 15th, 2019 and that had nine attorneys present. For the Marriott Defendants to suggest that the four plaintiffs' firms, Hogan Lovells US, LLP, outside insurance counsel, Levin | Sitkoff, P.C., and a respected mediator and his associate at Lewis Roca Rothgerber Christie LLP would trade dollars for false testimony is unseemly at best. It is conjecture and there is no evidence of it, because it never would have or could have occurred.

17.     The Marriott Defendants set up a straw man argument about MVCD members being able to reserve less than a full week and other members using that week, and Mr. Harris suspecting this could happen. This aspect of the affiliation is not in any of the Declarations. The Declarations only quote the dense legalize of Paragraph 3.3(b), which obviously the directors never saw – because they were not provided it. Randy Mercer the president of ACHA in 2014 (and until last year), testified at his second deposition on September 18, 2018,[1] that that he still did not understand that MVCD members could come for less than a week and that other MVCD members could use the remainder of the week. **EXHIBIT "2"**- Mercer Depo, p. 56, l. 7 – p. 5, l. 6.  He added, "No sir, that was never the intent". Stephanie Sobeck, MVW's[2] vice president and asset manager for Ritz Aspen, actually edited Mr. Mercer's letter to all members on December 6, 2013 in which the Board said that where a RCDC member gave in an allocated week "and a Marriott Member comes to Aspen Highlands on that specific week only…There will be no impact on your availability." **EXHIBIT "3"** is that communique with Sobeck's redlining. She did

---

[1] This second  deposition was necessitated by the late production of the 2013 Affiliation Agreement and the APCO records.

[2] The Marriott Defendants still cling to the notion she was with "RCDC"(Resp. 6). She is not with RCDC, she is an MVW executive (https://www.linkedin.com/in/stephanie-sobeck-2970466/) under MORI – Marriott Ownership Resorts Inc.

nothing to correct the impression that it was a week-to-week swap. She saw the words "pure week swap" and left that impression again for over 800 owners. The suggestion in the Response that Sobeck somehow explained the true situation with the words "MVC members have the opportunity to use less than a full week"[3] is a far cry form disabusing the Association of the notion it was a pure week swap. In all the 100,000s of pages produced in this case, this is the one phrase that the Marriott Defendants point to as some plausible deniability. The Marriott Defendants were never up front about the use of exchange weeks MVC gained in inventory by MVCD members under the 2013 Affiliation Agreement. Indeed, any MVW sentence with the word "opportunity" in it is corporate double speak. The Marriott Defendants never came to a table or communicated clearly with Mercer, the board, or with any counsel that Marriott would take the inventory it gained through the dense language in the 2013 Affiliation Agreement and then be able to allow its points members to use it for one night, two nights, three nights and then another two or more MVCD members could take the other days. Sobeck does not say this – she merely says a MVCD member has the "opportunity" to use less than a week. The inconsistencies in fact-telling are with the Marriott Defendants. Mr. Harris did not testify in his declaration that he did not know this could happen. He testified truthfully at his deposition and in his declaration. There is only an "inconsistency" because the Marriott Defendants invent one in the Response.

18. The Marriott Defendants knew that the Association had veto power over the affiliation. In response to a question from her MVW asset manager counterpart on November 17, 2014 "Is the ultimate decision [to affiliate] the boards or the [Marriott] management

---

[3] Marx Decl., Ex. K.

company?" -- Sobeck replied: "Decision to Affiliate? The Boards." A copy of Sobeck's email dated November 17, 2017 is attached hereto as **EXHIBIT "4".**

19. The Marriott Defendants point to the discussions with Mercer about the Memorandum of Understanding ("MOU") and discussions about termination of affiliation in that context. The MOU effectuated nothing. Sobeck confirmed so with this testimony:

> BY MR. FERGUSON:
>
> Q. But the actual document that effectuated the ability of Aspen Highlands folks to voluntarily participate in the Vacation opportunities you were offering, that was going to be the acknowledgement and joinder?
>
> A. Well, the affiliation was the Lion & Crown affiliation, and then the members being able to participate was the acknowledgement by the board. Correct.
>
> Q. So, the MOU didn't do anything like that?
>
> A. No.
>
> Q. It was a document they requested, and you agreed to and negotiated or discussed over the next few weeks?
>
> A. Yes.

**EXHIBIT "5"** - Sobeck Depo. at 107:7-22 are relevant portions of the deposition of MVW Vice President Stephanie Sobeck.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 11, 2019, in Aspen, Colorado.

           */s/ Matthew C. Ferguson*
            Matthew C. Ferguson

4845-8213-3673, v. 1