IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 16-cv-01301-PAB-GPG

RCHFU, LLC, a Colorado limited liability company, et al.,

      Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al.,

      Defendants.

---

**ORDER**

---

    This matter is before the Court on Marriott Defendants' Motion for Partial

Summary Judgment [Docket No. 441] and Plaintiffs' Motion for Partial Summary

Judgment [Docket No. 452].[1]  The Court has jurisdiction over this case under 28 U.S.C.

§ 1332.

## I.  BACKGROUND

### A.  The Parties

    Plaintiffs originally brought this lawsuit against defendants Marriott Vacations

Worldwide Corporation ("MVW"); Marriott Ownership Resorts, Inc., d/b/a Marriott

Vacation Club International ("MVCI"); Ritz-Carlton Management Company, LLC ("RC

---

[1] Plaintiffs' motion for summary judgment, their reply in support of their motion for summary judgment, and their response to defendants' motion for summary judgment [Docket Nos. 452, 472, and 491] fail to comply with the District of Colorado's Local Rules.  *See* D.C.COLO.LCivR 10.1(e) ("All pleadings and documents shall be double spaced.").

Management"); Cobalt Travel Company, LLC, Inc. ("Cobalt"); the Lion & Crown Travel Co., LLC ("Lion & Crown"); and the Aspen Highlands Condominium Association ("the Association").[2]  Docket No. 430 at 9.  Defendant MVW is the parent corporation of defendant MVCI.  Docket No. 452 at 5, ¶ 17.  Defendants RC Management and Cobalt are MVW subsidiaries.  *Id.*, ¶ 19.[3]  Lion & Crown is a subsidiary of the Ritz-Carlton Development Company ("RC Development").  Docket No. 430 at 65, ¶ 19 (the Seventh Amended Complaint); Docket No. 434 at 33, ¶ 19 (defendants' Answer).

## B.  Factual Background

This lawsuit arises out of a dispute over the alleged diminution in value of plaintiffs' fractional interests in the Ritz-Carlton Club, Aspen Highlands ("Aspen Highlands") allegedly resulting from an affiliation of Aspen Highlands with the Marriott Vacation Club ("MVC").[4]  Aspen Highlands' governing documents grant the Association control over plaintiffs' fractional interests.  Docket No. 452 at 2-3, ¶ 1.[5]  The governing

---

[2] On December 10, 2019, the Association was dismissed as a defendant in this lawsuit.  Docket No. 557.

[3] Cobalt was formerly known as the Ritz-Carlton Travel Company, LLC.  Docket No. 452 at 5, ¶ 16.  While RC Management disputes other portions of this statement of undisputed fact, it does not dispute that Cobalt was formerly known as the Ritz-Carlton Travel Company.  Docket No. 481 at 3, ¶ 16.

[4] The following facts are undisputed unless otherwise noted.  Because plaintiffs' motion for partial summary judgment concerns only defendant RC Management, RC Management is the only defendant that responded to plaintiffs' motion.  *See* Docket No. 481 ("Defendant The Ritz-Carlton Management Company, L.L.C.'s Opposition to Plaintiffs' Motion for Partial Summary Judgment").

[5] RC Management does not dispute that the governing documents provide the Association with this control, but disputes plaintiffs' classification of this control as "pervasive."  Docket No. 481 at 2, ¶ 1.

documents also provide that the Association shall delegate its "responsibility for administration and management" at Aspen Highlands to a Managing Agent.  *Id.* at 3, ¶ 7.  In 2001, the Association entered into a Management Agreement with RC Management that employed RC Management as the Association's "Managing Agent." *Id.*, ¶ 8.  In the Managing Agreement, the Association delegated to RC Management the power "to act on behalf of the Association and its members as the exclusive managing entity of the Condominium and to manage the daily affairs of the Condominium and the Plan."  *Id.* at 3-4, ¶ 9.[6]  RC Management agreed to act in this capacity.  *Id.*  Further, the agreement delegated to RC Management the power "to act with such additional authority and power as may be necessary to carry out the spirit and intent of" the Management Agreement[7] and delegated "all of the power and authority of [the Association] to the extent necessary to perform [RC Management's] duties and obligations" under the [A]greement."  *Id.* at 4, ¶¶ 10-11.  These duties included "hiring, contracting, insurance, maintenance, fees, rules and regulations, broad executive powers, and entering the units themselves."  *Id.*, ¶ 12.  The Association also delegated to RC Management the power to prepare annual budgets, to receive and deposit funds collected from plaintiffs, to collect special assessments, and to maintain all Association records.  *Id.*, ¶ 14.  Finally, the Association delegated to

---

[6] The "Plan" refers to Aspen Highlands' fractional ownership interest plan. Docket No. 444-2 at 1.

[7] RC Management disputes plaintiffs' classification of this power as "broad," but does not dispute that this language is included in the Management Agreement.  Docket No. 481 at 2, ¶ 10.

RC Management the power to hire a "Program Manager" to "manage and administer the reservation procedures" and to manage plaintiffs' access to their units. *Id.*, ¶ 13.

Also in 2001, Cobalt, RC Management, and the Association entered into an affiliation agreement (the "2001 Affiliation Agreement") that engaged Cobalt as Program Manager. *Id.* at 5, ¶ 16.[8] Cobalt was given the authority to "provid[e] a means for Members to reserve the use of accommodations and facilities at the Club and other locations affiliated with the Membership program." *Id.*

In 2010, Cobalt entered into The Lion & Crown Travel Co., LLC Affiliation Agreement (the "2010 Affiliation Agreement") with Lion & Crown. *Id.* at 13, ¶ 69. Through this Agreement, Cobalt gave Lion & Crown the power to affiliate Ritz Carlton Destination Club ("RCDC") resorts with external clubs. *Id.* at 14, ¶ 71.

On July 17, 2012, a letter was sent to plaintiffs announcing an affiliation between MVW and RCDC.[9] *Id.* at 6, ¶ 23.[10] The parties dispute whether the letter indicated that Marriott members would have access to RCDC resorts, including Aspen Highlands. *Id.*; *see also* Docket No. 481 at 4, ¶ 23. On May 24, 2012, MVW's chief operating officer

---

[8] RC Management disputes that the 2001 Affiliation Agreement "appointed" Cobalt as Program Manager, but does not dispute that Cobalt became the Program Manager through this Agreement. Docket No. 481 at 3, ¶ 16.

[9] "Ritz Carlton Destination Club" is the business name of another MVW subsidiary, the Ritz-Carlton Development Company, which develops RCDC resorts. Docket No. 481 at 4, ¶ 22; Docket No. 511 at 1 n.1.

[10] The parties dispute who sent the letter. Plaintiff contends that MVW drafted the letter. Docket No. 452 at 6, ¶ 23; Docket No. 511 at 2, ¶ 23. RC Management contends that Cobalt sent the letter. Docket No. 481 at 4, ¶ 23.

("COO") and vice president, Lee Cunningham,[11] sent a memorandum to Marriott's Corporate Growth Committee stating that "[a]ccess to the RCDC properties by [Marriott members] may result in the perception of lost exclusivity." Docket No. 452 at 6, ¶ 24.[12]

On August 17, 2012, the Association's board wrote to plaintiffs, stating that the board had concerns that, based on the planned affiliation between MVW and RCDC, the nature of Aspen Highlands would change by opening the club to MVW members who have a "much lower cost of entry." Docket No. 452 at 6, ¶ 25. Mr. Cunningham sent a letter to plaintiffs on August 20, 2012 "on behalf of the Ritz-Carlton Destination Club" stating that "nothing that you originally purchased has changed or will change as a result of the announcement." *Id.*, ¶ 26.

On or about April 5, 2013, the Association sent a letter to plaintiffs stating that the "Ritz-Carlton/Marriott representatives agree that unless a majority of Aspen Highlands Members . . . vote in favor of doing so, The Ritz/Marriott will not include Aspen Highlands in the Marriott Vacation Club affiliation/exchange/points program." *Id.* at 7-8, ¶ 31. On or about May 14, 2013, Mr. Cunningham wrote again to plaintiffs, stating that "we want to assure you that a Ritz Carlton Club affiliation with Marriott Vacation Club Destinations will not take place unless there is an affirmative vote of

---

[11] It is not disputed that Mr. Cunningham is MVW's COO and vice president. Docket No. 451 at 5, ¶ 21; Docket No. 481 at 4, ¶ 21.

[12] RC Management contends that '[t]he cited document does not contain the quoted language." Docket No. 481 at 4, ¶ 24. Plaintiffs concede that the redacted version provided in support does not contain that language, and have filed an unredacted version with their reply demonstrating that the memorandum contained this language. *See* Docket No. 511-6 at 2.

each Club's Membership." *Id.* at 8, ¶ 36.[13]

Lion & Crown then entered into an affiliation agreement (the "2013 Affiliation Agreement") with non-party Marriott Resorts, Travel Company, Inc., effectuating an affiliation between RCDC and the Marriott Vacation Club Destinations ("MVCD") Program. *Id.* at 14, ¶ 70;[14] Docket No. 481 at 8, ¶ 70; Docket No. 511 at 1 n.1. In the 2013 Affiliation Agreement, Lion & Crown affiliated the Ritz-Carlton Membership Program with the MVCD. Docket No. 452 at 14, ¶ 71. The 2013 Affiliation Agreement provides that certain Lion & Crown resorts "whose members' association has executed an Acknowledgment Agreement" could participate in the MVC Program. *Id.*, ¶ 72. None of the defendants provided the Association with a copy of the 2013 Affiliation Agreement. *Id.* at 16, ¶ 82. On April 24, 2014, the Association's board president, Randal Mercer, signed an Acknowledgment and Joinder to the 2013 Affiliation Agreement on behalf of the Association. *Id.* at 15, ¶ 79. Mr. Mercer did not ask defendants for a copy of the 2013 Affiliation Agreement before signing the Acknowledgment and Joinder. *Id.* at 16, ¶ 83. Mr. Mercer and the other board members did not review the Agreement before Mr. Mercer signed the Acknowledgment and Joinder. *Id.* at 15, ¶ 80.[15]

---

[13] RC Management appears to dispute the existence of a promised "vote," but does not dispute the letter's language. *See* Docket No. 481 at 5, ¶ 36.

[14] The MVCD Program is the Marriott Vacation Club Destinations Exchange Program. Docket No. 452 at 15, ¶ 75; Docket No. 441-20 at 5.

[15] While RC Management appears to dispute this fact, its denial appears to be directed toward SUMF 81. *See* Docket No. 452 at 15-16, ¶¶ 80-81; Docket No. 481 at 8, ¶ 80.

Plaintiffs filed this lawsuit on April 26, 2016 in the District Court for Pitkin County, Colorado. Docket No. 5 at 2. Defendants MVW, MVCI, RC Management, Cobalt, and Lion & Crown removed the case to federal court on May 27, 2016. Docket No. 1. Plaintiffs filed their seventh amended complaint on July 9, 2019. Docket No. 430. They assert claims for (1) breach of fiduciary duty against RC Management, Cobalt, and Lion & Crown; (2) constructive fraud against RC Management, Cobalt, and Lion & Crown; (3) aiding and abetting a breach of fiduciary duty and constructive fraud against all defendants; (4) conspiracy against all defendants; and (5) unjust enrichment against all remaining defendants. *Id.* at 94-104.

On July 29, 2019, defendants filed a motion for partial summary judgment [Docket No. 441] and plaintiffs filed a motion for partial summary judgment the next day. Docket No. 452. Both parties responded to the opposing party's motion for partial summary judgment, Docket Nos. 472, 481, and each party filed a reply in support of their motion. Docket Nos. 491, 511.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary

7

judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotation marks omitted) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## III. ANALYSIS

### A. Defendants' Motion for Partial Summary Judgment

#### 1. Non-Affiliation-Related Damages

First, defendants argue that plaintiffs should be precluded from recovering damages allegedly resulting from conduct predating the affiliation.[16] Docket No. 441 at 14. They argue that plaintiffs failed to raise claims related to non-affiliation-related damages or conduct in their complaint, and as a result, defendants had no meaningful opportunity to develop a defense against these allegations. *Id.* at 17. While defendants purport to seek "summary judgment . . . preclud[ing] [plaintiffs] from offering theories at trial that were never pleaded," *id.* at 14, their request is more akin to a motion *in limine* to preclude evidence. Indeed, defendants have filed a motion *in limine* requesting this same relief. *See* Docket No. 469 at 14 (requesting an order precluding plaintiffs from introducing at trial "any evidence of damages allegedly sustained by Plaintiffs as a result of" non-affiliation-related conduct); *see also* Docket No. 441 at 15 (stating that "[f]ederal courts . . . routinely preclude evidence, including expert opinions, premised on new liability theories offered for the first time in expert reports").

---

[16] In their motion for summary judgment, defendants set forth an eight-page "statement of facts." Docket No. 441 at 4-12. This statement does not comply with the Court's practice standards concerning facts to be considered at the summary judgment stage. *See* Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.i. ("the movant shall set forth in simple, declarative sentences, separately numbered and paragraphed, each material fact which the movant believes is not in dispute and which supports movant's claim that movant is entitled to judgment as a matter of law"). Accordingly, the only undisputed facts that the Court may consider in ruling on defendants' motion for summary judgment are the four "undisputed" facts found in defendants' motion, *see* Docket No. 441 at 12-13, which are all disputed. Docket No. 472 at 2-3.

The Court finds that summary judgment is an inappropriate vehicle to resolve defendants' request. First, the Court notes that defendants do not seek summary judgment on any specific claim or element in a claim, as required by Fed. R. Civ. P. 56, but rather seek to preclude the introduction of evidence at trial. *See id.* at 17 ("To now allow Plaintiffs to use expert opinions as a means to expand their claims after the close of fact discovery would be unfair and highly prejudicial to Marriott Defendants."). Such an argument is more appropriately addressed in the motion *in limine*, rather than the summary judgment, context. *See Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, No. 09-cv-00970-PAB-KMT, 2014 WL 348637, at *2 (D. Colo. Jan. 31, 2014) (stating that the purpose of a motion *in limine* is "to streamline the trial by providing a forum for resolving certain evidentiary issues outside the presence of the jury and the heated atmosphere of the courtroom."). And, if defendants are indeed correct that plaintiffs failed to adequately plead allegations regarding non-affiliation-related conduct in their complaint, then there are no existing claims of plaintiffs for which defendants could be granted summary judgment. *See Howard v. Las Animas Cty. Sheriff's Office*, No. 09-cv-00640-PAB-KLM, 2010 WL 1235668, at *6 (D. Colo. Feb. 23, 2010), *report and recommendation adopted by* 2010 WL 1235673 (D. Colo. Mar. 22, 2010) ("Summary judgment is a decision on the merits."); *see also Bio Med. Tech. Corp. v. Sorin CRM USA, Inc.*, No. 14-cv-0154-WJM-CBS, 2015 WL 4882572, at *9 (D. Colo. Aug. 17, 2015) (quoting *Fuqua v. Lindsey Mgmt. Co.*, 321 F. App'x 732, 734 (10th Cir. 2009) (unpublished) ("'Normally a claim or theory that is not adequately raised in the complaint will not be considered' on summary judgment.").

10

Defendants cite several cases that they argue "support the granting of partial summary judgment to preclude a plaintiff from offering theories at trial that were never pleaded." *See* Docket No. 441 at 14 (citing cases). However, these cases do not support "granting summary judgment" to preclude the introduction of evidence supporting newly introduced theories. Rather, in these cases, the court rejected the plaintiff's attempts to introduce new theories of liability in responsive summary judgment briefing and separately granted summary judgment based on the case's merits – not to preclude the plaintiff from offering those additional theories at trial. *See T.D. v. Patton*, 149 F. Supp. 3d 1297, 1310 (D. Colo. 2016) (refusing to consider plaintiff's new theory of liability and granting summary judgment for defendant); *Lewis v. Powers*, No. 15-cv-02692-MEH, 2018 WL 6272259, at *13 (D. Colo. Nov. 30, 2018) (finding that plaintiff's claim failed as a matter of law based on undisputed facts and also noting that plaintiff could raise new theories of liability in responsive briefing); *Powell v. City & Cty. of Denver*, 973 F. Supp. 1198, 1203 n.4 (D. Colo. 1997) (entering summary judgment for defendant on merits of plaintiff's new theory of recovery first raised in response to motion for summary judgment, but also finding that belated new theory "justifies dismissal of any claim of liability" based on the new theory).

Having found that defendants' argument is more appropriately addressed in defendants' motion *in limine* [Docket No. 469], *see Gen. Steel Domestic Sales, LLC v. Chumley*, No. 10-cv-01398-PAB-KLM, 2012 WL 2589241, at *1 (D. Colo. July 3, 2012) (granting motion *in limine* to prevent a party from expanding scope of its claims in its

trial brief), the motion for summary judgment is denied as to that issue.[17]

### 2. Plaintiffs' Unjust Enrichment Claim

In their complaint, plaintiffs raise a claim of unjust enrichment against defendants, arguing that defendants effectuated the affiliation while knowing that it would devalue plaintiffs' fractional interests while "making Marriott Vacation Club Destinations more attractive, valuable and expensive." Docket No. 430 at 104-05, ¶ 136. They assert that it would be unjust for defendants to retain the benefits of their wrongful conduct and seek disgorgement of "all commissions, fees and profits [that defendants] received as a result of the conduct described herein." *Id.* at 105, ¶ 137.

Defendants argue that they are entitled to summary judgment on plaintiffs' unjust enrichment claim. Docket No. 441 at 20. Defendants assert no facts relevant to their request to dismiss this claim, and plaintiffs do not assert than any relevant facts are disputed. *See id.* at 12-13; Docket No. 472 at 3-7. Thus, defendants seek summary judgment as a matter of law.

Defendants argue that plaintiffs' unjust enrichment claim should be dismissed because it is an equitable remedy for a claim under which plaintiff has an adequate remedy at law. Docket No. 441 at 20. According to defendants, plaintiffs "essentially seek[] a double recovery." *Id.* Plaintiffs disagree. They contend that recovery of

---

[17] In the alternative, defendants argue that, even if the Court were to find that plaintiffs adequately gave defendants notice of the scope of their claims as they relate to non-affiliation-related conduct, the claims "fail as a matter of law." Docket No. 441 at 18. Plaintiffs do not respond to this argument. *See* Docket No. 472. Due to the Court's ruling granting in part the Marriott Defendants' Motion *in Limine* to Preclude Evidence of Non-Affiliation-Related Damages and Conduct, *see* Docket No. 564, the Court need not address this argument.

damages in tort does not automatically bar recovery for unjust enrichment where the objectives of the two remedies are different, i.e., when the damages action seeks to recover for the harm suffered by plaintiffs, but the restitution action seeks to recover the gain wrongfully acquired by defendants.  Docket No. 472 at 15.

To recover for unjust enrichment, plaintiffs must prove: "(1) at the expense of . . . plaintiff[s]; (2) [the] defendant[s] received a benefit; (3) under circumstances making it unjust for the defendant[s] to retain the benefit without paying for it." *Harris Grp., Inc. v. Robinson*, 209 P.3d 1188, 1205 (Colo. App. 2009).  "If the elements of unjust enrichment are proved, the defendant who received the benefit is normally required to make restitution to the plaintiff in the amount of the enrichment the defendant received." *Id.*  The equitable remedy of unjust enrichment is not available, however,  "when there is a 'plain, speedy, [and] adequate remedy at law.'" *Id.* (quoting *Szaloczi v. John R. Behrmann Revocable Tr.*, 90 P.3d 835, 842 (Colo. 2004)).  But, the fact that a party may recover damages in tort "does not automatically lead to a conclusion that [the] party had an adequate legal remedy that precludes further equitable relief," because "[i]n the damage action[,] the plaintiff seeks to recover for the harm done to him, whereas in the restitution action[,] he seeks to recover the gain acquired by the defendant through the wrongful act." *Id.* (quoting 1 George E. Palmer, Law of Restitution § 2.1, at 51 (1978)).  To determine whether a party is entitled to equitable relief despite available money damages, courts look to whether the damages claimed by the plaintiffs for unjust enrichment are "contained within" the damages claimed for the alleged tort, the tort damages function as restitution for the plaintiffs and no further

13

award for unjust enrichment is available. *Id.* at 1207; *see also L-3 Commc'ns Corp. v. Jaxon Engineering & Maintenance, Inc.*, 125 F. Supp. 3d 1155, 1175 (D. Colo. Sept. 1, 2015) (explaining that compensatory relief compensates the plaintiff for the harm done, while the remedy of unjust enrichment exists to "recover the gain acquired by the defendant through the wrongful act" by "strip[ping] the tortfeasor defendant of the benefits of having perpetrated the wrongful act.").

"Colorado law allows for the award of both legal and equitable remedies, as long as the principle against double recovery is taken into consideration." *Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*, 216 F. Supp. 2d 1188, 1204 (D. Colo. 2002). In *American Cyanamid*, the court determined that plaintiff's legal damages "were measured in terms of the financial opportunity lost," but that disgorgement of profits was appropriate to prevent defendants' retention of profits earned by their wrongful conduct. *Id.* Finding that the equitable relief exceeded plaintiffs' compensatory damages, the court eliminated any double recovery by permitting plaintiffs to recover the full amount of defendants' profits to be disgorged. *Id.* at 1206.

The parties' disagreement is whether the damages claimed by plaintiffs for unjust enrichment are duplicative of the relief sought in their tort claims. *See* Docket No. 472 at 16; Docket No. 491 at 7-8. Defendants argue that plaintiffs' unjust enrichment claim would provide duplicative recovery because both categories of relief seeks recovery for the same alleged harms. *See* Docket No. 441 at 20; Docket No. 491 at 7-8. The Court disagrees. As set out above, courts look to the objective of the remedy to determine whether relief would be duplicative. Here, plaintiffs seek money

damages for the alleged diminution of value of their fractional interests, *see* Docket No. 430 at 97, ¶ 105; at 100, ¶ 115; at 101, ¶ 123; at 103, ¶ 131, but separately seek the equitable relief of disgorgement of defendants' profits resulting from defendants' allegedly wrongful conduct. *See id.* at 105, ¶ 137 (seeking disgorgement of "all commissions, fees, and profits [that defendants] received as a result of the conduct described herein; that an accounting of all commissions, fees and profits earned by RC Management and Cobalt be ordered by the Court; and that a constructive trust be imposed upon said commissions, fees and profits for the benefit of Plaintiffs."). The Court finds that plaintiffs may seek equitable relief here.[18] To the extent that defendants seek summary judgment on plaintiffs' unjust enrichment claim, their motion is denied without prejudice to defendants' ability to raise the issue of duplicity in regard to the issue of damages if liability is found.

### 3. *Plaintiffs' Breach of Fiduciary Duty, Constructive Fraud, and Aiding and Abetting a Breach of Fiduciary Duty and Constructive Fraud Claims*

Defendants seek dismissal of plaintiffs' claims one, two, and three, which allege (1) breach of fiduciary duty, (2) constructive fraud, and (3) aiding and abetting a breach

---

[18] Plaintiffs also seek disgorgement of defendants' profits in their first four legal claims. *See* Docket No. 430 at 97, ¶ 106; at 100, ¶ 116; at 102, ¶ 125; and at 104, ¶ 132. Defendants do not seek judgment on or dismissal of these claims to the extent these claims seek equitable relief. *See* Docket No. 441 at 21 (arguing only that plaintiffs' "unjust enrichment claim, together with the disgorgement of profits demanded thereunder, should be dismissed as a matter of law"). While an unjust enrichment claim "cannot overlap any . . . existing claims for relief," *L-3 Commc'ns*, 125 F. Supp. 3d at 1175, the Court finds that the form of plaintiffs' pleading would not permit overlap in recovery or duplicative recovery, as defendants could only receive a finite amount of commissions, fees, or profits from their allegedly wrongful behavior.

of fiduciary duty and constructive fraud, "to the extent they are based on [the Association's] failure to discover and exercise an alleged right to prevent RC Club Aspen from participating in" the affiliation. Docket No. 441 at 25. Specifically, defendants argue that the Association was not an intended third-party beneficiary of the 2013 Affiliation Agreement, and as a result, has no right to enforce the agreement's terms to require a signed Acknowledgment. *Id.* at 22. Defendants contend that, because the Association did not have the authority to enforce the 2013 Affiliation Agreement, it could not have breached a fiduciary duty by signing the Acknowledgment to effectuate the affiliation.[19]

First, the Court finds that defendants do not have standing to seek dismissal of plaintiffs' first claim "to the extent [that it is] based on [the Association's] failure to discover and exercise an alleged right to prevent RC Club Aspen from participating in" the affiliation. Docket No. 441 at 25. In plaintiffs' seventh amended complaint, plaintiffs allege that (1) the Association owed plaintiff a fiduciary duty of reasonable care; and (2) the Association violated that duty by executing the Acknowledgment and Joinder without reading the 2013 Affiliation Agreement, which resulted in a failure to discover that it could have prevented the affiliation with a majority vote of directors. Docket No. 430 at 96-97, ¶ 104. The Association has reached a settlement with plaintiffs and has been dismissed from this lawsuit as a defendant. *See* Docket No.

---

[19] Defendants do not identify any relevant undisputed facts to support their argument. *See* Docket No. 441 at 12-13. However, plaintiffs do not raise any objection on this basis. *See* Docket No. 472 at 18-25. In addressing defendants' argument, the Court relies only on the facts the parties do not dispute.

557.  Not only can defendants not seek dismissal of a breach of a fiduciary duty claim

against another party, *cf. Shultz v. Nomac Drilling, L.L.C.*, 2017 WL 2958621, at *2

(W.D. Okla. July. 11, 2017) ("It is generally accepted that parties lack standing to seek

dismissal of parties other than themselves.") (citing cases), to the extent that plaintiffs

allege that the Association breached a fiduciary duty by its "failure to discover and

exercise an alleged right to prevent" Aspen Highlands from agreeing to the Affiliation,

such claim is no longer at issue in this case.   However, to the extent that plaintiffs'

aiding and abetting a breach of a fiduciary duty and constructive fraud claims against

the remaining defendants are based on the Association's alleged breach of fiduciary

duty, defendants may challenge these claims.

Defendants argue that they are entitled to summary judgment on plaintiffs' aiding

and abetting and constructive fraud claims to the extent they are based on the

Association's alleged breach of a fiduciary duty.  In their complaint, plaintiffs allege that

the Association breached its fiduciary duties "by executing the Acknowledgment and

Joinder without requesting or reading the 2013 Affiliation Agreement itself" and that, as

a result, "the Association failed to discover that it could have prevented the Marriott

Vacation Club affiliation at Aspen Highlands with a simple majority vote."  Docket No.

430 at 96, ¶ 104.  In other words, plaintiffs argue that, had the Association read the

2013 Affiliation Agreement, it would have realized that it could have prevented the

affiliation by refusing to sign the Acknowledgment and Joinder and that its failure to do

so constituted a breach of the fiduciary duty of care.  *Id.*  Defendants argue that they

cannot be liable for aiding and abetting this alleged breach of fiduciary duty or for

17

constructive fraud because the Association was not an intended beneficiary of the 2013 Affiliation Agreement, and for this reason, had no authority to enforce the Affiliation Agreement – in other words, it had no authority to prevent the affiliation by refusing to sign the Acknowledgment and Joinder.  Docket No. 441 at 22-23.

Plaintiffs respond that third-party-beneficiary principles are irrelevant to this case.  Docket No. 472 at 18.  They argue that "[w]hether or not the Association was a third party beneficiary to the 2013 Affiliation Agreement" is irrelevant because "the Association was a necessary party" to the agreement.  *Id.* at 20.  They argue that defendants could not effectuate the affiliation without the Association, as the 2013 Affiliation Agreement "makes clear that individual Ritz-Carlton Destination Clubs would not participate in the Ritz-Marriott Affiliation without the board of each individual club signing an acknowledgment and joinder to the 2013 Affiliation Agreement."  *Id.*

The 2013 Affiliation Agreement effectuates the affiliation between the MVCD Program and the L&C Program.  Docket No. 452 at 14 ¶ 70; Docket No. 481 at 8, ¶ 70; Docket No. 511 at 1 n.1; Docket No. 441-20 at 8, ¶¶ 3.1-3.2.  This Affiliation Agreement provides that "certain members of the L&C Program . . . *whose owners' association has executed an Acknowledgment Agreement* . . . shall have the right to elect to become a participant in the MVCD Program and have the ability to make use of the MVCD Program in accordance with the terms of this Agreement."  *Id.* at 5 (emphasis added).

Throughout the 2013 Affiliation Agreement, there are several indications that an owners' association's failure or refusal to sign the Acknowledgment Agreement could prevent the resort managed by that owners' association from participating in the

18

affiliation.  *See id.* at 10, ¶ 3.4(f) ("MVCD Members will not have access to those resorts available through the L&C Program that are not L&C Destinations (*i.e.*, where an Acknowledgment Agreement was not executed))"; at 12, ¶ 6.9 ("Notwithstanding anything contained herein to the contrary, MVCD Members will not be entitled to the use and benefit of any (i) Accommodations at a L&C Destination without an Acknowledgment Agreement in place"); at 16, ¶ 8.2 ("the Parties agree that Lion & Crown may delete an L&C Destination if the L&C Destination no longer has an Acknowledgment in effect").  Further, the various L&C resorts subject to the affiliation are referred to as "L&C Destinations," *see, e.g., id.* at 8, ¶ 3.1; at 10, ¶ 3.4(f), which are defined in the Agreement as "those resorts available for use through the L&C Program where the owners' association for the L&C Destination has executed an Acknowledgment Agreement."  *Id.* at 7.[20]

Defendants, however, argue that the Association could not have breached a fiduciary duty by failing to read the 2013 Affiliation Agreement or by refusing to sign the Acknowledgment and Joinder because, as an incidental third-party beneficiary, it had no right to enforce the 2013 Affiliation Agreement and could not prevent the affiliation by refusing to sign the Acknowledgment.  Docket No. 441 at 22.   The Court disagrees.

---

[20] An "Acknowledgment Agreement" is "an Acknowledgment of and Joinder to Affiliation Agreement among MVCD, Lion & Crown, and an applicable Participating L&C Association."  Docket No. 441-20 at 7.  "Participating L&C Association" is defined as "the owners' association for an L&C Destination (*i.e.*, an owners' association that has executed an Acknowledgment Agreement)."  *Id.* at 8.

Defendants are correct that, under Florida law,[21] "an intended third-party beneficiary of a contract may sue to enforce that contract," *Enter. Leasing Co. v. Demartino*, 15 So. 3d 711, 714 (Fla. App. 2009), but an incidental third-party beneficiary may not. *Metro. Life Ins. Co. v. McCarson*, 467 So.2d 277, 279 (Fla. 1985). However, plaintiffs' claims do not allege a breach of a fiduciary duty based on the Association's alleged failure to sue to enforce the Agreement or to challenge the legality of the Agreement. Rather, plaintiffs claim that the Association breached a fiduciary duty of reasonable care by signing the Acknowledgment and Joinder without requesting or reading the Agreement, which indicates that an L&C Destination, like Aspen Highlands, could only participate in the affiliation upon its owners' association's execution of the Acknowledgment Agreement, and as a result, failed to discover the possibility that it could have prevented the affiliation. Docket No. 430 at 96, ¶ 104. A reasonable jury could conclude that this constitutes a breach of fiduciary duty. *See Command Commc'ns, Inc. v. Fritz Cos., Inc.*, 36 P.3d 182, 186 (Colo. App. 2011) (the fact finder decides whether a breach of fiduciary duty has occurred)*; see also Destefano v. Grabrian*, 763 P.2d 275, 284 (Colo. 1988) (a fiduciary's duties include the duty to exercise reasonable care and skill). Plaintiffs' aiding and abetting and constructive fraud claims are based on this alleged breach of fiduciary duty, asserting that defendants concealed the 2013 Affiliation Agreement in order to prevent the Association from knowing that it could

---

[21] Defendants contend that Florida law governs the interpretation of the 2013 Affiliation Agreement. Docket No. 441 at 22; *see also* Docket No. 441-20 at 21 ("A dispute under this Agreement shall be governed exclusively by the laws of the State of Florida."). Plaintiffs do not dispute this argument. *See* Docket No. 472 at 18-25.

refuse to sign the Acknowledgment and Joinder.  Docket No. 430 at 98, ¶ 110; at 101-02, ¶ 124.  The Court finds that defendants are not entitled to summary judgment on this basis.

In the alternative, defendants contend that "Cobalt, as Program Manager, ha[d] the unilateral discretion to affiliate [Aspen Highlands] with the MVCD Program" and that "[t]he 2013 Affiliation Agreement cannot be read as giving [the Association] the power to obstruct its primary purpose."  Docket No. 441 at 23-24.  Defendants do not support this statement with factual support or legal authority.  *Id.*  The 2001 Affiliation Agreement provides that Cobalt "is responsible for exercising all of the rights and duties associated with the affiliation of Residences at the Club with any other program which provides use rights to Members at various locations through exchange of use rights or other means," Docket No. 492-9 at 11, ¶ 5.5, and that Cobalt "may, in its sole discretion, elect to affiliate other locations with the Membership Program as Member Clubs or Associated Clubs from time to time."  *Id.* at 13, ¶ 7.2a.  Thus, the 2001 Affiliation Agreement is the operative document providing Cobalt with the "sole" authority to make affiliation decisions.  However, the provision of authority or "sole discretion" to affiliate does not necessarily invalidate the numerous provisions in the 2013 Affiliation Agreement purporting to require home owner association approval before an affiliation may take place.  Defendants have offered no argument why these provisions in the 2013 Agreement should be disregarded or interpreted in any way other than by their plain meaning.  *See Santiago v. Marriott Cas. Claims*, 776 So.2d 1041, 1042 (Fla. App. 2001) ("A contract must be construed to give effect to all of its

provisions."); *see also Anthony v. Anthony*, 949 So. 2d 226, 227 (Fla. App. 2007) ("When a contract is clear and unambiguous, the actual language used in the contract is the best evidence of the intent of the parties, and the plain meaning of that language controls.") (quotation omitted). Thus, while the 2001 Affiliation Agreement provides Cobalt, as Program Manager, with the discretionary authority to effectuate affiliation, the 2013 Affiliation Agreement conditions an affiliation between Lion & Crown and Marriott – i.e., the Aspen Highlands affiliation – on the Association's execution of the Acknowledgment and Joinder. *See, e.g.*, Docket No. 441-20 at 9, ¶ 3.4; at 12, ¶ 6.9. As set out above, the alleged breach of fiduciary duty was the failure to read the 2013 Affiliation Agreement and discover its contents. Whether the Association's refusal to sign the Acknowledgment and Joinder would have been futile, and the affiliation would have happened regardless, is irrelevant to plaintiffs' allegations of a breach of fiduciary duty.[22] The Court finds that defendants have not demonstrated that they are entitled to summary judgment on plaintiffs' constructive fraud and aiding and abetting constructive fraud or breach of fiduciary duty claims insofar as they are based on this alleged breach of fiduciary duty by the Association. The Court denies defendants' motion for summary judgment to the extent it seeks judgment on plaintiffs' first, second, and third claims.

---

[22] Defendants argue that, "[e]ven if [the Association had] refused to sign the Acknowledgment, . . . the parties to the 2013 Affiliation Agreement would have been free to amend the agreement to eliminate any purported requirement for a signed Acknowledgment." Docket No. 441 at 24 n. 15. But the Association did not refuse to sign the Acknowledgment, and the parties to the Agreement did not amend it. This speculative argument does not demonstrate that defendants are entitled to summary judgment on plaintiffs' claims.

**B.   Plaintiffs' Motion for Partial Summary Judgment**[23]

Plaintiffs move for summary judgment on three issues: (1) that RC Management was plaintiffs' fiduciary; (2) that RC Management breached its fiduciary duty to plaintiffs; and (3) that RC Management committed constructive fraud.  Docket No. 452 at 1.[24]  To prove a breach of fiduciary duty, a plaintiff must demonstrate (1) "the existence of a fiduciary relationship between plaintiff and defendant"; (2) "defendant's breach of the fiduciary duty"; and (3) "damages as a result of the breach."  *F.D.I.C. v. Refco Grp., Ltd.*, 989 F. Supp. 1052, 1080 (D. Colo. 1997).  While the existence of a fiduciary relationship is generally a question of fact, a court may resolve the question as a matter of law "if the evidence, viewed in the light most favorable" to the non-moving party, "reasonably could admit only of the conclusion that" a fiduciary relationship exists.  *Paine, Webber, Jackson & Curtis, Inc. v. Adams*, 718 P.2d 508, 518 (Colo. 1986).

Plaintiffs argue that, because the Association is a fiduciary of plaintiffs, *see*

---

[23] Because the Association is no longer a defendant in this case, all arguments in plaintiffs' motion for summary judgment pertaining to the Association are now moot.

[24] RC Management argues that plaintiffs are not legally permitted to seek summary judgment on only a portion of a claim.  *See* Docket No. 481 at 22.  Not only is this legally incorrect, *see* Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense – or *the part of each claim* or defense – on which summary judgment is sought") (emphasis added); *see also Aubrey v. Koppes*, 383 F. Supp. 3d 1203, 1214 (D. Colo. 2019) (summary judgment may be used to decide narrow issues rather than entire claims), this directly contradicts RC Management's position in defendants' motion for summary judgment – filed just one month earlier – in which defendants seek summary judgment on certain issues, rather than on certain claims.  *See* Docket No. 441 at 13 (acknowledging that Fed. R. Civ. P. 56(a) allows parties to seek summary judgment on part of a claim).

*Semler v. Hellerstein*, 428 P.3d 555, 564 (Colo. App. 2016), *rev'd on other grounds by Bewley v. Semler*, 432 P.3d 582 (Colo. 2018) ("[M]uch like officers of a corporation, the board members of a homeowners association owe a fiduciary duty to both the association and its members."), and because the Association delegated control over plaintiffs' units to RC Management, RC Management is also a fiduciary of plaintiffs. Docket No. 452 at 19. RC Management disagrees. It argues that plaintiffs are not entitled to summary judgment on their breach of fiduciary duty claim because a genuine issue of material fact exists regarding whether RC Management owed plaintiffs a duty with respect to the conduct underlying plaintiffs' claims, namely, the affiliation. Docket No. 481 at 13. Specifically, it contends that RC Management was only granted the power to enter plaintiffs' units to provide cleaning, maintenance, or repair services or to abate illegal nuisances, but not to "transfer, convey, mortgage, or otherwise dispose of Plaintiffs' fractional interests" or "rent, exchange, or otherwise determine" who may access those fractional interests. Docket No. 481 at 17; *see also id.* at 2-3, ¶ 10.

In its order on defendants' motion to dismiss, the Court rejected a similar argument raised by defendants and found that plaintiffs had adequately alleged that RC Management was a fiduciary of plaintiffs. Docket No. 210 at 13. Specifically, the Court found "that the plaintiffs ha[d] sufficiently alleged that the Management Agreement entrusted RC Management with control over plaintiffs' property sufficient to create fiduciary duties" and that the allegations had demonstrated the Association's "high level of trust" in RC Management, regardless of the scope of the control. *Id.* at 12-13; *see also Bailey v. Allstate Ins. Co.*, 844 P.2d 1336, 1339 (Colo. App. 1992)

24

("Generally, a fiduciary duty arises between individuals through a relationship of trust, confidence, and reliance.").

However, the threshold for surviving a motion to dismiss is a plausibility pleading standard, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), whereas to succeed on a summary judgment motion, the movant must meet a much higher evidentiary standard, demonstrating that no genuine issue of fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Accordingly, the question before the Court is whether plaintiffs have demonstrated that (1) there is no genuine issue of material fact that RC Management's control over plaintiffs' property creates a fiduciary relationship, and if so, (2) there is no genuine issue of material fact that RC Management breached the fiduciary duties that it owed to plaintiffs. The Court addresses these issues together.

It is undisputed that the Association delegated to RC Management the power "to act on behalf of the Association and its members as the exclusive managing entity of the Condominium and to manage the daily affairs of the Condominium and the Plan" and that RC Management agreed to act in this capacity. Docket No. 452 at 3-4, ¶ 9. It is also undisputed that the Association delegated to RC Management the power "to act with such additional authority and power as may be necessary to carry out the spirit and intent of [the Management] Agreement." *Id.* at 4, ¶ 10.[25] In addition, the

_____

[25] RC Management disputes plaintiffs' classification of this power as "broad." Docket No. 481 at 2-3, ¶ 10. It does not, however, dispute the language of the Management Agreement. *Id.* Thus, this dispute is not material for purposes of this order.

25

Association delegated "all of the power and authority of [the Association] to the extent necessary to perform [RC Management's] duties and obligations under [the Management] Agreement," including hiring, contracting, insurance, maintenance, fees, rules and regulations, broad executive powers, and entering the units themselves. *Id.*, ¶¶ 11-12. Finally, the Association delegated to RC Management the power to hire a program manager to "manage and administer the reservation procedures," such as preparing itemized annual budgets, receiving and depositing plaintiffs' funds, collecting special assessments, and maintaining Association records, and engaging defendant Cobalt as program manager. *Id.* at 4, ¶¶ 13-14.

"A fiduciary relationship arises under Colorado law in situations in which one party 'has a high degree of control over the property or subject matter of another, or when the benefitting party places a high level of trust and confidence in the fiduciary to look out for the beneficiary's best interest.'" *Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1117 (D. Colo. 2010), *aff'd*, 566 F. App'x 681 (10th Cir. 2014) (unpublished) (quoting *MDM Grp. Assocs., Inc. v. CX Reinsurance Co.*, 165 P.3d 882, 889 (Colo. App. 2007)). As set out above, it is undisputed that the Association delegated to RC Management a range of power that the Court finds constitutes a high degree of control over plaintiffs' units. Even reading these documents in the light most favorable to RC Management, the Court finds that the evidence "reasonably could admit only of the conclusion that" a fiduciary relationship exists as to certain matters defined in the Management Agreement. *Paine*, 718 P.2d at 518. RC Management has not provided any disputed material fact that would preclude this finding. *See, e.g.*,

Docket No. 481 at 2-3 (not disputing the delegation of authority or the language of the Management Agreement).

However, finding that RC Management was a fiduciary of plaintiffs as to some duties defined in the Management Agreement does not mean that RC Management was a fiduciary regarding the reservation and affiliation matters. RC Management contends that it "had no fiduciary duty to Plaintiffs with respect to the [affiliation] because [its] duties were strictly limited to managing [Aspen Highlands]." Docket No. 481 at 13-14. "The Court determines as a matter of law the nature and scope of the duty owed by a fiduciary." *Fritz*, 36 P.3d at 186. To establish a breach of a fiduciary duty under Colorado law, the plaintiff must prove, among other things, "that the nature and scope of the duty extended to the subject matter of the claim." *Grynberg v. Total S.A.*, 538 F.3d 1336, 1347 (10th Cir. 2008); *see also Mintz*, 284 P.3d at 68 ("[A] fiduciary relationship exists between two persons when one of them has undertaken a duty to act for or to give advice for the benefit of another on matters *within the relationship's scope*.") (emphasis added). For example, in *Equitex, Inc. v. Ungar*, 60 P.3d 746 (Colo. App. 2002), the defendant claimed that the plaintiffs owed him a fiduciary duty arising out of a confidential relationship based on the parties' long-standing business relationship, and that the plaintiffs had breached that duty when they failed to include him in a settlement agreement that had resolved a dispute over a stock transaction made by a company for which the defendant was a director. *Id.* at 752. The Colorado Court of Appeals found that no breach of fiduciary duty had occurred because there was (1) no evidence that the plaintiffs had assumed a duty to represent

the defendant's interests in the settlement or (2) no evidence that any duties arising out of the purported confidential relationship extended to the settlement. *Id.*

The Court finds that the nature and scope of RC Management's fiduciary duties do not extend to Aspen Highlands reservation or affiliation matters. The governing documents controlling plaintiffs' relationship with RC Management are not in dispute. As set out above, RC Management's fiduciary relationship was mostly limited to the on-site operations. The Management Agreement – the document which gives RC Management the high level of control over plaintiff's units and which is the basis for the fiduciary relationship – does not contemplate that RC Management has any duties related to, or any control over, business decisions related to affiliating Aspen Highlands with other entities. *See* Docket Nos. 49-5 and 49-6. None of the powers delegated to RC Management expressly relate to business operations or handling potential affiliations. *See id.* In fact, those powers were given to Cobalt; the disclosure statements for Aspen Highlands state that Cobalt is "responsible for the operation" of the membership program, including the "combination of benefits and services including reservation and exchange services for members," Docket No. 481 at 9, ¶ 2, and pursuant to the 2001 Affiliation Agreement, Cobalt had the responsibility of "exercising all of the rights and duties associated with the affiliation." *Id.*, ¶ 4. The disclosure statements further delineate the scope of duties given to RC Management and Cobalt, providing that RC Management "will be responsible for on-site operations of the tourist accommodation units committed to the plan of fractional ownership," while Cobalt "will be responsible for the operation" of the membership program. *Id.*, ¶ 3. The express

delegation of authority to Cobalt to manage affiliations and fractional ownership matters demonstrates that the limited delegation of authority to RC Management did not extend to these matters. For these reasons, the Court concludes as a matter of law that RC Management's duties arising from the governing documents do not extend to reservation or affiliation matters. *Fritz*, 36 P.3d at 186.

In the alternative, plaintiffs argue that, "[e]ven if it were true that RC Management had no duties with regard to the Membership Program, when it learned information that Plaintiffs would want and need to know [about the affiliation,] it had a duty to disclose that information to Plaintiffs." Docket No. 511 at 6-7. The Court construes this as an argument that RC Management assumed additional fiduciary duties and breached those duties by failing to disclose to plaintiffs affiliation-related information. *See Wheeler v. Carl Rabe, Inc.*, 599 P.2d 902, 904 (Colo. 1979) (finding that a fiduciary has a duty to "make a full and complete disclosure of all facts relative to the subject of his agency which it may be material to the principal to know.").

Plaintiffs argue that RC Management breached these assumed fiduciary duties by failing to "mak[e] a full disclosure about the affiliation, including about the withdrawal of the vote, the exact terms of the affiliation, the likelihood of harm to Plaintiffs, and MVW's expectation of profit." Docket No. 452 at 21. They also argue that RC Management breached its fiduciary duties by promising to hold a vote before an affiliation and then affiliating without holding the promised vote. *Id.* The Court finds that genuine issues of material fact exist as to whether RC Management assumed fiduciary duties with respect to these matters. Mr. Cunningham, MVW's vice president,

sent a letter to plaintiffs on August 20, 2012 on behalf of the "Ritz-Carlton Destination Club"[26] stating that "nothing that [plaintiffs] originally purchased has changed or will change as a result of [the planned affiliation]." Docket No. 452 at 6, ¶ 26. On November 19, 2013, Mr. Cunningham sent an email to Aspen Highlands members on behalf of the Ritz-Carlton Destination Club to "answer[] several initial question[s] that have been raised about the possible affiliation with the Marriott Vacation Club Destinations exchange program." *Id.* at 11, ¶ 57. Mr. Cunningham then sent members a survey concerning a potential affiliation between Aspen Highlands and MVCD. Docket No. 452 at 12, ¶ 59.[27] The parties dispute (1) whether this survey was conducted in lieu of a majority vote promised by Mr. Cunningham, Docket No. 452 at 8, ¶ 36; Docket No. 481 at 5, ¶ 36[28]; (2) whether Mr. Cunningham was a controlling officer of RC Management, Docket No. 452 at 5, ¶ 21; Docket No. 481 at 4, ¶ 21; and (3) whether the survey was conducted by RC Management. Docket No. 452 at 12, ¶ 60; Docket No. 481 at 7, ¶ 60. The Court finds that, given these disputed issues of material fact, it cannot conclude that plaintiffs are entitled to summary judgment on the

---

[26] On April 5, 2013, the Association wrote a letter to all Aspen Highlands fractional owners representing that Mr. Cunningham was the Chief Operating Officer of the Ritz-Carlton Destination Club. Docket No. 452 at 7, ¶ 31.

[27] RC Management disputes the wording of this email, but does not dispute that this email was sent. Docket No 481 at 7, ¶ 59.

[28] RC Management does not dispute that Mr. Cunningham's email indicated that the affiliation "will not take place unless there is an affirmative vote of each Club's Membership," *see* Docket No. 452 at 8, ¶ 36, but states that "[a] specific form of 'vote' was not promised." Docket No. 481 at 4-5, ¶¶ 33, 36.

basis that RC Management breached fiduciary duties owed to plaintiffs.[29]  Accordingly,

plaintiffs' motion for partial summary judgment will be denied.[30]

## IV.  CONCLUSION

For these reasons, it is

**ORDERED** that Marriott Defendants' Motion for Partial Summary Judgment

[Docket No. 441] is **DENIED**.  It is further

**ORDERED** that Plaintiffs' Motion for Partial Summary Judgment [Docket No.

452] is **DENIED**.

DATED March 20, 2020.

BY THE COURT:

_____

PHILIP A. BRIMMER
Chief United States District Judge

---

[29] The Court also rejects plaintiffs' argument that they are entitled to summary judgment on their constructive fraud claim.  Plaintiffs' constructive fraud argument is dependent on a finding that RC Management breached fiduciary duties owed to plaintiffs.  *See* Docket No. 452 at 25 (arguing that "[a] breach of fiduciary duty, by definition, constitutes constructive fraud); *see also Scott Sys., Inc. v. Scott*, 996 P.2d 775, 780 (Colo. App. 2000) ("Constructive fraud is defined as a breach of duty that the law declares fraudulent because of its tendency to deceive, violate confidence, or injury public interests.").  Because plaintiffs are not entitled to summary judgment that RC Management breached its fiduciary duties, they are not entitled to summary judgment on their constructive fraud claims.

[30] In their reply, plaintiffs "admit that there is a dispute as to whether RC Management is a fiduciary."  Docket No. 511 at 4, ¶ 7.  This contradicts statements in plaintiffs' briefing in which they claim that no issue of material fact exists as to whether RC Management is a fiduciary of plaintiffs.  *See, e.g.,* Docket No. 452 at 19.  Because plaintiffs were responding to RC Management's statement that "[t]he Management Agreement provides that no fiduciary relationship between RC Management and [the Association] was being created," Docket No. 481 at 10, ¶ 7, the Court construes plaintiffs' statement as an acknowledgment that the parties disagree as to whether the Management Agreement's disclaimer precludes the creation of a fiduciary relationship.