IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 16-cv-01301-PAB-GPG

RCHFU, LLC, a Colorado limited liability company, et al.,

      Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al.,

      Defendants.

_____

**ORDER**
_____

      This matter is before the Court on defendants' motions *in limine* (1) to preclude references to discovery disputes, Docket No. 466; (2) to preclude references to a "merger" with Marriott, Docket No. 467; (3) to preclude references to other lawsuits, Docket No. 468; (4) to preclude evidence of non-affiliation-related damages and conduct, Docket No. 469; (5) to bifurcate trial and preclude references to defendants' profits during earlier phases of trial, Docket No. 470; and (6) to exclude the Cushman & Wakefield appraisal, Docket No. 475.

**I. BACKGROUND**

      This action arises out of a dispute regarding the management of the Ritz-Carlton Club, Aspen Highlands ("Aspen Highlands"), located in Aspen, Colorado and its affiliation with Marriott Vacation Club Destinations ("MVC"). Plaintiffs claim that the affiliation, resulting from defendants' allegedly wrongful acts, decimated the value of their fractional interests at Aspen Highlands and that plaintiffs were damaged thereby.

Docket No. 430 at 10, ¶ 1.  Defendants have filed six motions *in limine* to preclude

plaintiffs from offering certain evidence at trial.  Docket Nos. 466, 467, 468, 469, 470,

and 475.

## II.  ANALYSIS

### A.  Motion *in Limine* to Preclude References to Discovery Disputes

In Marriott Defendants' Motion *in Limine* to Preclude References to Discovery

Disputes [Docket No. 466], defendants seek to preclude plaintiffs and plaintiffs' counsel

from referring to or introducing any evidence of any discovery disputes between the

parties during the course of the litigation.  Docket No. 466 at 1.  Defendants' request

highlights, but is not limited to, disputes concerning the failure of defendants or

defendants' counsel to have initially produced in discover (1) an affiliation agreement

between defendant The Lion & Crown Travel Co., LLC and non-party Marriott Resorts,

Travel Company, Inc. ("the 2013 Affiliation Agreement") and (2) certain documents

related to surveys conducted by APCO Worldwide, Inc.  *Id.*

The facts surrounding these discovery disputes are set out in the magistrate

judge's Order Regarding Plaintiffs' Motions for Default Judgment [Docket No. 330] and

will not be repeated here unless necessary.  In the order, the magistrate judge found

that defendants had violated Rule 26 by failing to initially produce the 2013 Affiliation

Agreement and APCO survey documents.  Docket No. 330 at 18, 21.  However, the

magistrate judge found no evidence of bad faith on the part of defendants, *id.* at 20, 24,

and permitted plaintiffs to move for relief associated with the affiliation-agreement

discovery violation, including for fees and costs associated with correcting the error

and any other remedies meant to correct the prejudice suffered by plaintiffs as a result of the violation. *Id.* at 29-30. Plaintiffs filed a motion for attorney's fees and costs [Docket No. 339] totaling $210,761.48, Docket No. 339 at 3, and filed a motion for additional remedies [Docket No. 338] seeking a curative jury instruction informing the jury that defendants had violated the rules of discovery by failing to produce the 2013 affiliation agreement and that the jury may consider this violation in evaluating the evidence. Docket No. 338 at 6. The magistrate judge denied the motion for attorney's fees without prejudice to be addressed at a later stage in the proceedings. Docket No. 368 at 3. In addition, the magistrate judge denied plaintiffs' request for the curative jury instruction on the basis that the discovery violation was willful or committed in bad faith. Docket No. 387 at 10. The magistrate judge explained that his "intent [was] to put the parties back on as level a playing field as possible, not to afford one party a possible leg up at trial." *Id.*

Defendants state that they are concerned that these discovery disputes may be mentioned during trial and seek an order precluding any reference to or evidence of these disputes. Docket No. 466 at 9. Plaintiffs argue that defendants' motion should be denied because (1) evidence of the discovery disputes is relevant to plaintiffs' exemplary damage claim, Docket No. 507 at 3, and (2) it is premature. *Id.* at 4.

Under Colorado law, "[i]n all civil actions in which damages are assessed by a jury for a wrong done to the person or to personal or real property, and the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct, the jury, in addition to the actual damages sustained by such party, may award

3

him reasonable exemplary damages."  Colo. Rev. Stat. § 13-21-102(1)(a).  Earlier in

this litigation, the magistrate judge found that plaintiffs had "shown there to be prima

facie evidence supporting exemplary damages," i.e., that defendants acted willfully and

wantonly with regards to the underlying affiliation agreement.  Docket No. 237 at 2, 8.

Plaintiffs argue that the evidence of defendants' discovery violations is relevant to its

claims for exemplary damages because it shows that defendants continued to act

willfully and wantonly during this litigation by withholding highly relevant discovery

materials.  Docket No. 507 at 3-4; *see also* Colo. Rev. Stat. § 13-21-102(3)(a)

(providing that "the court may increase any award of exemplary damages, to a sum not

to exceed three times the amount of actual damages, if it is shown that . . . [t]he

defendant has continued the behavior or repeated the action which is the subject of the

claim against the defendant in a willful and wanton manner, either against the plaintiff

or another person or persons, during the pendency of the case.").

The Court disagrees with plaintiffs.  The magistrate judge's order finding that

plaintiffs had established a *prima facie* case of willful or wanton conduct is based on

defendants' alleged conduct predating this lawsuit.  *See* Docket No. 237.  When

addressing defendants' later discovery violations, the magistrate judge found that there

was no evidence of bad faith on the part of defendants.  Docket No. 330 at 20, 24.

Because defendants' discovery violations were not made in bad faith, they do not

demonstrate continued or repeated bad behavior.  This evidence is not relevant to

plaintiffs' claims for exemplary damages, *see* Fed. R. Evid. 401(a) ("Evidence is

relevant if . . . it has any tendency to make a fact more or less probable") and it is

therefore inadmissible.  *See* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").  Defendants' motion *in limine* will be granted.[1]

### B.   Motion *in Limine* to Preclude References to "Merger" With Marriott Vacation Club Destinations

In Marriott Defendants' Motion *in Limine* to Preclude References to "Merger" with Marriott Vacation Club Destinations [Docket No. 467], defendants request an order precluding plaintiffs from "referring, at trial, to a purported 'merger' between" any Ritz Carlton properties and the Marriott Vacation Club Destinations Exchange Program ("the MVCD Program") and from "using the term 'merger' to describe the potential or actual affiliation" of any Ritz Carlton properties with MVCD "or any other process through which the MVCD members were given access to" any Ritz Carlton properties.  Docket No. 467 at 1.  Defendants argue that "merger" is a "loaded term" and that its use would prejudice defendants because it would incorrectly imply that Marriott members are on equal footing with plaintiffs and other Aspen Highlands members.  *Id.* at 6-7, ¶¶ 12, 14. In addition, defendants assert that the use of the term would confuse and mislead the jury.  *Id.* at 9, ¶ 17.  Plaintiffs respond that defendants' motion is an improper attempt by defendants to control how plaintiffs present their case.  Docket No. 506 at 1-2. Plaintiffs also argue that defendants' motion is "overbroad and premature" because it

---

[1] In support of their argument that defendants' motion is premature, plaintiffs state that defendants' motion "is evidence-driven, since it seeks to exclude discovery disputes that support Plaintiffs' exemplary damages claim, and should be deferred until any such evidence is actually presented at trial."  Docket No. 507 at 4.  Because the Court has determined that the evidence is irrelevant and inadmissible, there is no need to wait until trial to rule on defendants' motion *in limine*.

seeks to exclude relevant evidence. *Id.* at 3-4.

While plaintiffs state that defendants' motion is "premature," they make no actual argument concerning the timing of this motion. *See generally id.* Instead, they simply cite to the Court's Practice Standards, which provide that "[m]otions in limine are discouraged when the motion cannot be resolved until evidence is presented at trial." *Id.* at 3-4; *see also* Practice Standards (Civil cases), Chief Judge Philip A. Brimmer § III.E. While true, plaintiffs have not explained to the Court why this motion cannot be resolved until evidence is presented at trial. For this reason, the Court rejects plaintiffs' argument that the motion is premature.

Plaintiffs concede that "no formal statutory merger between two corporations occurred here," but argue that "the integration between . . . Ritz Carlton Destination Club and Marriott Vacation Club resulted in the average consumer or potential consumer of the products viewing the affiliation as a 'merger' in the everyday meaning of the word." Docket No. 506 at 3. The Court disagrees. A "merger" is defined as "the absorption of an estate, a contract, or an interest in another" or "any of various methods of combining two or more organizations." *See* Merger, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/merger. Meanwhile, "affiliation" is defined as "the state or relation of being closely associated or affiliated with a particular person, group, party, [or] company." *See* Affiliation, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/affiliation. Thus, these two words have distinct definitions with significant differences; to merge means to completely join another, while to affiliate means to closely associate with another but

remain distinct.

Rule 403 of the Federal Rules of Evidence provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . confusing the issues [or] misleading the jury." The Court finds that use of the terms interchangeably could confuse or mislead the jury concerning the nature of the parties' relationship, which could impact its outlook of the case as to the parties' relative positions of power in their bargaining relationship. The Court also finds that the risk of this confusion outweighs the probative value of the evidence, particularly because plaintiffs have conceded that no merger occurred in this case.[2] For this reason, preclusion of the use of the term "merger" or any of its various forms is warranted. *Cf. Sec. & Exch. Comm'n v. Am. Growth Funding II, LLC*, 2019 WL 1748186, at *3 (S.D.N.Y. Apr. 19, 2019) (precluding the use of the term "Ponzi scheme" because "the jury would conflate this case with high-profile cases involving Ponzi schemes, even though there is no allegation in this case that [defendant] is a Ponzi scheme"). Defendants' motion *in limine* will be granted. Plaintiffs, including their counsel and their witnesses, may not use the term "merger" in the context discussed above during the course of the trial.

### C.  Marriott Defendants' Motion *in Limine* to Preclude References to Other Lawsuits

In Marriott Defendants' Motion *in Limine* to Preclude References to Other

---

[2] Defendants contend that "[p]laintiffs first used the term 'merger' on October 26, 2018" when it submitted an expert report from Jon Simon. Docket No. 467 at 4, ¶ 8. Plaintiffs do not dispute this contention. *See* Docket No. 506.

Lawsuits [Docket No. 468], defendants seek to preclude plaintiffs from mentioning or introducing evidence related to five other lawsuits. Docket No. 468 at 1. Defendants argue that this evidence should be excluded pursuant to Fed. R. Evid. 403, 404(b)(1), and 408(a)(1). *Id.* at 7-8. Plaintiffs respond that the motion should be denied because (1) it does not specify the exact evidence that it seeks to exclude and (2) it is premature and would be more adequately resolved at trial. Docket No. 505 at 1-2. However, plaintiffs "agree to seek permission from the Court before referring to, or offering evidence of, any other lawsuit." *Id.* at 2. Defendants reply that, with one exception, "this proposal is acceptable to the Marriott Defendants, provided that (1) Plaintiffs' counsel make no reference of any nature to Other Litigations in an opening statement, and (2) any Plaintiffs who testify make no reference to Other Litigations in their testimony." Docket No. 524 at 1. However, defendants maintain that "evidence concerning the fact of, or amounts received pursuant to, settlements reached in *Reiser* and *Petrick*[3] are inadmissible pursuant to Fed. R. Evid. 403, 404(b) and 408(a)." *Id.* at 2. Defendants note that plaintiffs did not respond to the merits of their arguments. *Id.*; *see also* Docket No. 505.

The Court finds the agreement reached by the parties to be acceptable and orders that plaintiffs must seek permission before making reference to or offering evidence of any other lawsuit. This directive extends to plaintiffs' witnesses and

---

[3] *Reiser* and *Petrick* were cases heard in the Superior Court of California and the Eastern District of California, respectively, that "involved many of the same defendants as in this case" and involved "similar damages claims arising from the affiliation of the MVCD Program with [the plaintiffs'] respective resorts." Docket No. 468 at 3, ¶ 4.

plaintiffs' opening statement. Moreover, the Court agrees with defendants that any evidence concerning the *Reiser* or *Petrick* settlements is inadmissible entirely. The Court notes that plaintiffs have failed to respond to the merits of defendants' motion, and the Court construes plaintiffs' silence as a concession that this evidence would be inadmissible at trial. The Court agrees that this evidence is inadmissible under Rule 403. Evidence that defendants have entered into settlements with other plaintiffs in similar circumstances to resolve similar claims creates a substantial risk of injecting unfair prejudice into the trial, as the jury may construe such evidence as defendants' acceptance of fault or wrongdoing. Moreover, such evidence would have little probative value in this case, where the issues concern whether defendants acted wrongfully with regards to *this* affiliation and whether *these* plaintiffs suffered damages. *See Estate of Tobin v. Smithkline Beecham Pharms.*, 2001 WL 36102165, at *1 (D. Wyo. May 18, 2001) (excluding evidence of other lawsuits because "such references are irrelevant to this litigation and such references would have a tendency to unnecessarily confuse the jury."); *Crawford v. Muscletech Res. & Dev., Inc.*, 2002 WL 31852833, at *1 (W.D. Okla. Oct. 10, 2002) (in products liability action, rejecting plaintiffs' argument that evidence of other lawsuits is admissible to counter defendants' arguments regarding safety of product because the evidence was "more prejudicial than probative," but recognizing that, if defendants opened the door by testifying that its products are safe, plaintiffs could seek permission from the court to counter the testimony); *Martensen v. Koch*, No. 13-cv-02411-REB-CBS, 2015 WL 332694, at *2 (D. Colo. Jan. 26, 2015) (excluding evidence of other lawsuits where it was "clear that the

dangers of unnecessarily misleading the jury, confusing the issues, and unduly delaying the trial will substantially outweigh whatever marginal probative value this evidence might have").  Defendants' motion *in limine* will be granted to the extent that it seeks to preclude all references to the settlements reached in *Reiser* and *Petrick*, seeks to preclude plaintiffs from referencing other lawsuits in its opening statement, and seeks to preclude plaintiffs' witnesses from referencing the other lawsuits.  In all other instances, plaintiffs must seek permission from the Court before referring to or offering evidence of the other lawsuits.

### D.   Motion *in Limine* to Preclude Evidence of Non-Affiliation-Related Damages and Conduct

In Marriott Defendants' Motion *in Limine* to Preclude Evidence of Non-Affiliation-Related Damages and Conduct [Docket No. 469], defendants seek an order precluding plaintiffs "from using or seeking to use at trial any evidence of conduct by the Marriott Defendants unrelated to and/or predating the potential or actual affiliation [Aspen Highlands] with the Marriott Vacation Club Destinations Program ('the MVCD Program') ('Non-Affiliation-Related Conduct'), including any evidence purporting to show damages allegedly sustained by Plaintiffs as a result of Non-Affiliation-Related Conduct."  Docket No. 469 at 1.

Defendants argue that the seventh amended complaint [Docket No. 430] is limited to allegations concerning damages that plaintiffs allegedly suffered as a result of (a) the affiliation and (b) the failure to hold a majority vote on the affiliation.  Docket No. 469 at 3, ¶ 3.  They contend that plaintiffs have, through expert reports, expanded

their claims to include allegations of damages arising prior to the 2014 affiliation ("pre-affiliation conduct"). *Id.* at 6, ¶ 13; at 7-8, ¶¶ 14-15; at 8, ¶ 17. According to defendants, plaintiffs are "improperly attempting to use their experts to advance liability and damages theories that have never been pleaded in this three-year-old case," *id.* at 8, ¶ 18, and defendants argue that plaintiffs' belated attempts at indirect amendment of their complaint prevented defendants from examining plaintiffs and non-party fact witnesses about events before the affiliation, from otherwise conducting discovery about these topics, and from developing evidence concerning or defenses to these new allegations. *Id.* at 13, ¶¶ 27-28.

Plaintiffs respond that defendants' arguments are not appropriate to be raised in a motion *in limine* and should be addressed in its motion for summary judgment. Docket No. 503 at 2. For the reasons set out in the Court's order on the cross-motions for summary judgment, *see* Docket No. 563, the Court disagrees that these arguments should be addressed in the summary judgment context. Arguments such as these are appropriately addressed in motions *in limine*. *See Gen. Steel Domestic Sales, LLC v. Chumley*, No. 10-cv-01398-PAB-KLM, 2012 WL 2589241, at *1 (D. Colo. July 3, 2012) (granting motion *in limine* to prevent party from expanding scope of its claims in its trial brief).

Plaintiffs raise two arguments with respect to the merits of defendants' motion: first, that their claims as pleaded in the seventh amended complaint encompass pre-affiliation conduct and harm, Docket No. 503 at 3, and second, that evidence of pre-affiliation conduct is relevant to determining punitive damages. *Id.* at 5. Plaintiffs

11

assert that they have alleged claims regarding pre-affiliation conduct "since the start of this case." *Id.* at 3. Plaintiffs rely upon the following allegations in their seventh amended complaint: (1) that the Association sent a cease and desist letter to Marriott, Cobalt, and the Ritz-Carlton Development company stating that "any practice allowing the use of the Tourist Accommodation Units at the Aspen Highlands Condominium by the MVC Members may constitute . . . one or more breaches of fiduciary duties," Docket No. 430 at 82-83, ¶¶ 69-70; and (2) that the complaint "mentions ten times that Marriott's misconduct relates to its 'affiliation/exchange/points program' that allowed MVC members to access Plaintiffs' luxury property – not just the affiliation itself," *see, e.g., id.* at 95, ¶ 99; *see also* Docket No. 503 at 3. Plaintiffs argue that the allegations referring to the cease and desist letter "put Marriott on notice that Plaintiffs were alleging that any use of [Aspen Highlands] . . . to promote the sale of MVC points is a breach of fiduciary duty" and that the complaint's numerous mentions of the "affiliation/exchange/points program" indicates that plaintiffs' claims concern more than just the affiliation. Docket No. 503 at 3.

In addition, plaintiffs claim that they "pursued discovery for more than two years regarding pre-affiliation conduct," requesting documents concerning Marriott's point sales, points consumption at Ritz properties, and all Marriott members who had access to Ritz properties from 2011 to the present. *Id.* at 3-4. They argue that they questioned deposition witnesses about Marriott members' use of developer-owned inventory and transfer of Ritz Carlton inventory into the trust. *Id.* at 4. In sum, plaintiffs argue that "this case has always been about Marriott's overall scheme to use [Aspen Highlands] to

sell MVC points at Plaintiffs' expense – not just about the 2014 affiliation." *Id.*

The Court disagrees. First, it finds that plaintiffs' seventh amended complaint does not put defendants on notice that plaintiffs seek damages related to pre-affiliation conduct. Merely mentioning that a cease and desist letter was sent – by a party other than plaintiffs – to some defendants warning them that their pre-affiliation conduct "may constitute . . . one or more breaches of fiduciary duties" does not constitute an actual allegation that such conduct breached defendants' fiduciary duties and does not put defendants on notice that plaintiffs may base their claims on this conduct, as plaintiffs suggest. *See* Docket No. 503 at 3. This is particularly true where, as here, plaintiffs' complaint does not mention this cease and desist letter, or any pre-affiliation conduct, in its causes of action, in which it expressly sets out certain affiliation-related conduct that it alleges caused defendants to breach their fiduciary duties. *See* Docket No. 430 at 94-96. Similarly, the Court cannot conclude that the complaint's references to Marriott's "affiliation/exchange/points program," however numerous, puts defendants on notice that it seeks damages for pre-affiliation conduct, particularly when read in the context of plaintiffs' allegations. Plaintiffs repeatedly refer to the "affiliation/exchange/points program" with respect to the allegedly promised affiliation vote. *See, e.g.*, Docket No. 430 at 84, ¶ 73 (quoting a letter form the Association that, unless a majority of Aspen Highlands members vote in favor of doing so, Aspen Highlands will not be included in Marriott's affiliation/exchange/point program); *see id.* at 88, ¶ 82; at 89-90, ¶ 84; at 93, ¶¶ 94-95; (all referring to promised vote before participation in the affiliation/exchange/point program). And, in a number of plaintiffs'

other references to Marriott's "affiliation/exchange/points" program, plaintiffs refer to "the *affiliation* of the Marriott Vacation Club affiliation/exchange/points program with the Ritz-Carlton Club, Aspen Highlands Fractional Plan and the Plaintiffs' and Ritz Carlton Aspen Owners' Fractional Units." *Id.* at 95, ¶ 100; at 96, ¶¶ 102-03 (emphasis added). Thus, it is not clear that any reference to Marriott's "affiliation/exchange/points" program refers to anything beyond the affiliation between Aspen Highlands and Marriott, and certainly does not put defendants on notice that plaintiffs seek recovery for pre-affiliation conduct. "[L]iberalized pleading rules [do not] permit plaintiffs to wait until the last minute to ascertain and refine theories on which they intend to build their case. This practice, if permitted, would waste the parties' resources, as well as judicial resources, on discovery aimed at ultimately unavailing legal theories and would unfairly surprise defendants, requiring the court to grant further time for discovery or continuances." *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1091 (10th Cir. 1991).

The Court is also not convinced by plaintiffs' argument that their discovery requests make it evident that their claims were not limited to affiliation-related conduct and damages. "[T]he scope of discovery under the federal rules is broad," and discovery "is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995) (citation omitted). Plaintiffs have not cited any legal authority standing for the proposition that the scope of a party's claims is dictated by the party's discovery requests. Instead, plaintiffs' claims are defined in scope by their complaint; in fact, earlier in this litigation, plaintiffs sought to amend their complaint to

include allegations that they now argue are already set forth in their complaint. On December 31, 2018, the magistrate judge ruled that plaintiffs could amend their complaint "to correct the prejudice suffered by" plaintiffs as a result of defendants' discovery violations. Docket No. 330 at 30. Plaintiffs filed a motion to amend the complaint on January 14, 2019. Docket No. 337. Plaintiffs sought to add express allegations concerning pre-affiliation conduct. *See, e.g.*, Docket No. 337-3 at 12, ¶ 9; at 73-74, ¶¶ 56-58; 95, ¶¶ 111-12.[4] Had the complaint already raised allegations regarding pre-affiliation conduct, it would have been unnecessary for plaintiffs to move to amend their complaint to add these allegations. This further demonstrates that the complaint lacks allegations concerning pre-affiliation conduct. Plaintiffs' argument is without merit, and defendants' motion will be granted to the extent it seeks to exclude the use of this evidence in support of plaintiffs' claims for compensatory damages.

In the alternative, plaintiffs argue that, even if they had not pled allegations concerning pre-affiliation conduct in their complaint or throughout the case, evidence of this conduct – specifically, "evidence of Marriott's use of [Aspen Highlands] to sell MVC points prior to the affiliation" – "is independently admissible to show willfulness in support of Plaintiffs' punitive damages claim." Docket No. 503 at 5. Plaintiffs contend that Marriott's "use of [Aspen Highlands] to sell MVC points before the affiliation shows Marriott's" willful conduct because it demonstrates that Marriott had knowledge that its actions could lower the value of plaintiffs' fractional interests but increase its own

_____

[4] The magistrate judge denied the motion without prejudice, ruling that plaintiffs' requested amendment went "far beyond" the discovery violation. Docket No. 369 at 4.

profits, and that Marriott went through with the affiliation anyway despite knowing that this strategy was likely unlawful. *Id.* at 6. Defendants respond that plaintiffs "fail to explain how such conduct is relevant to the intent required to establish wantonness or willfulness," and that, in any event, "any marginal relevance of this evidence is greatly outweighed by the undue prejudice that it would cause the Marriott Defendants and the likelihood that it would confuse the jury as to the relevant time period, RCDC resorts[,] and other matters actually at issue." Docket No. 525 at 3 n.3.

The Court finds that defendants' arguments are without merit. Colorado's exemplary damages statute defines "willful and wanton conduct" as "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." Colo. Rev. Stat. § 13-21-102(b).[5] A jury could find, based on evidence purporting to show that defendants knew that the affiliation would harm the plaintiffs' interests while boosting defendants' own interests, that defendants acted "heedlessly and recklessly, without regard to consequences, or of the rights . . . of [plaintiffs]." Colo. Rev. Stat. § 13-21-102(b); *see also Bradbury v. Phillips Petroleum*

---

[5] Willful and wanton conduct demonstrates a "mental state of the actor consonant with purpose, intent, and voluntary choice," *Safehouse Progressive All. for Nonviolence, Inc. v. Qwest Corp.*, 174 P.3d 821, 829 (Colo. App. 2007), but a specific finding of some sort of "intent" is not a prerequisite to establishing willful or wanton conduct, as defendants suggest. *See also Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005) (willful and wanton conduct present "[w]here the defendant is conscious of his conduct and the existing conditions and knew or should have known that injury would result"). Thus, defendants' undeveloped argument that "[p]laintiffs fail to explain how [the non-affiliation-related evidence] is relevant to the intent required to establish wantonness or willfulness," Docket No. 525 at 3 n.3, is without merit.

*Co.*, 815 F.2d 1356, 1364 (10th Cir. 1987) (affirming admission of Rule 404(b) evidence that was probative of whether the defendant had "engaged in a pattern of conduct evincing conscious or reckless disregard for the rights of private property owners" and "to support the plaintiffs claims for . . . punitive damages"); *Peshlakai v. Ruiz*, 39 F. Supp. 3d 1264, 1338 (D.N.M. 2014) (admitting Rule 404(b) evidence "for the permissible purpose of showing [the defendant's] state of mind for punitive damages").

In the alternative, defendants contend that any relevance that this evidence has is "greatly outweighed" by the undue prejudice that it would cause defendants and "the likelihood that it would confuse the jury as to the relevant time period, RCDC resorts and other matters actually at issue." Docket No. 525 at 3 n.3. Defendants do not explain how this evidence would prejudice them and do not explain how this evidence would confuse the jury with respect to "the relevant time period, RCDC resorts" or any other matter at issue. *Id.* The Court finds that, at this point in the litigation, the probative value of this evidence – namely, that defendants allegedly knew that the affiliation would cause the diminution of plaintiffs' shares while simultaneously increasing defendants' wealth, and continued with the affiliation anyway – in order to support plaintiffs' punitive damages claims is not substantially outweighed by a danger of undue prejudice or confusion of the issues. This is particularly true if the jury is given a limiting instruction to consider this evidence for only the limited purpose of determining whether defendants acted willfully or wantonly.

17

**E. Motion *in Limine* to Bifurcate Trial and to Preclude References to Marriott Defendants' Profits During Earlier Phases of Trial**

In the Marriott Defendants' Motion *in Limine* to Bifurcate Trial and to Preclude References to Marriott Defendants' Profits During Earlier Phases of Trial [Docket No. 470], defendants seek a court order staging the trial as follows: the first phase resolves issues of liability and compensatory damages; if necessary, the second phase resolves the issue of punitive damages; and the third phase, a bench trial, resolves plaintiffs' equitable claim for unjust enrichment and disgorgement of profits. Docket No. 470 at 1.[6] Defendants also seek an order precluding plaintiffs from referring to or introducing evidence during the first phase regarding any "unjust profits" allegedly earned by any of the defendants. *Id.*

Federal Rule of Civil Procedure 42(b) allows a court to order separate trials on "one or more separate issues [or] claims" in a case "[f]or convenience, to avoid prejudice, or to expedite and economize." Courts have "broad discretion in deciding whether to sever issues for trial." *Rowland v. United States*, No. 14-cv-00883-KLM-

---

[6] Plaintiffs' claims for disgorgement of profits in their complaint are not limited to their unjust enrichment claim. *See* Docket No. 430 at 97, ¶ 1-6; at 100, ¶ 116; at 102, ¶ 125; at 104, ¶ 132 (seeking disgorgement of profits in their breach of fiduciary duty, constructive fraud, aiding and abetting a breach of fiduciary duty or constructive fraud, and conspiracy claims). However, defendants' request to hold a separate bench trial could be read as limited to the disgorgement of profits sought in plaintiffs' equitable unjust enrichment claim. *See* Docket No. 470 at 7, ¶ 11 ("The second . . . bench trial would concern the Marriott Defendants' liability for Plaintiffs' equitable claim of unjust enrichment, and the amount of any disgorgement of profits to be awarded to Plaintiffs to the extent that any Marriott Defendant is found liable under this equitable claim."); *id.* at 7 n.5 (stating that, if defendants' motion for summary judgment on plaintiffs' unjust enrichment claim were to be granted, "there would be no need for a second trial."). The Court interprets defendants' motion as requesting bifurcation of all issues related to disgorgement of profits.

MEH, 2015 WL 4943955, at *2 (D. Colo. Aug. 20, 2015) (quoting *Green Constr. Co. v. Kan. Power & Light Co.*, 1 F.3d 1005, 1011 (10th Cir. 1993)). Bifurcation is not an abuse of discretion where the interests of convenience, avoiding prejudice, and promoting expedition and economy "favor separation of issues and the issues are clearly separable." *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 964 (10th Cir. 1993). In contrast, a court should not bifurcate a trial if it would be "unfair or prejudicial to a party." *Id.* "Defendant, as the moving party, bears the burden of establishing that bifurcation is warranted." *Baker v. Equifax Credit Info. Servs., Inc.*, 1998 WL 101829, at *1 (D. Kan. Feb. 6, 1998) (citing *Ake v. Gen. Motors Corp.*, 942 F. Supp. 869, 877 (W.D.N.Y. 1996)).

### 1. Two-Phase Jury Trial on (a) Liability and Compensatory Damages and (b) Punitive Damages

Defendants argue that having a two-phase jury trial is appropriate because "having the same jury charged with deciding the issue of liability and compensatory damages also hear evidence offered in support of a punitive recovery is likely to unduly prejudice the defendant by inflaming the jury or confusing the two issues." Docket No. 470 at 8, ¶ 14. Specifically, defendants argue that, if the same jury were to decide liability and compensatory damages as well as punitive damages, the jury could be unduly influenced by evidence concerning defendants' net worth or profits allegedly earned from the affiliation and inappropriately decide liability based on that information. *Id.* at 9-10, ¶ 16. Plaintiffs respond that bifurcation is unnecessary because the evidence regarding liability, compensatory damages, and punitive damages

substantially overlaps and that judicial economy would be furthered by trying all of the issues together, whereas multiple trials would require the parties to present the same evidence twice. Docket No. 508 at 2-4. Plaintiffs state that they "have no intention of using evidence of Marriott's assets or net worth to support punitive damages" because, under Colorado law, "evidence of the income or net worth of a party [cannot] be considered in determining the appropriateness or amount of [exemplary] damages." *Id.* at 4 (quoting Colo. Rev. Stat. § 13-21-102(6)).[7] Instead, they claim that they "only intend to show the amount of Marriott's ill-gotten gains from allowing MVS members to access Plaintiffs' property for the purpose of disgorging profits." *Id.* In their reply, defendants do not meaningfully respond to plaintiffs' arguments, focusing instead only on its bifurcation argument. *See* Docket No. 526 at 2-5.

The Court finds that defendants have not met their burden of demonstrating that bifurcation of the jury trial into two phases is warranted here. First, the Court disagrees with defendants' argument that bifurcation of the trial is warranted because, without it, defendants will be prejudiced if the jury is permitted to hear during the liability phase evidence of their net worth or profits allegedly earned from the affiliation. *See* Docket No. 470 at 9, ¶¶ 15-16. The Court notes that defendants' bifurcation motion is limited to a request to segregate the punitive damages portion of the trial from the remainder of the trial. *See id.* at 1; at 7, ¶ 10. However, plaintiffs have stated that they do not intend to offer evidence concerning defendants' profits or net worth with respect to their

---

[7] "Punitive damages" and "exemplary damages" have the same meaning. *White v. Hansen*, 837 P.2d 1229, 1231 n.1 (Colo. 1992).

punitive damages claim.  Docket No. 508 at 4.[8]

Second, the Court agrees with plaintiffs that the evidence supporting their general liability claims and their claims for punitive damages substantially overlaps. Plaintiffs' claims of constructive fraud and aiding and abetting constructive fraud or breach of fiduciary duty are based on defendants' alleged acts of "participating in, intermeddling, forcing or otherwise improperly influencing the decision" to affiliate despite the fact that the promised majority vote had not been held.  Docket No. 430 at 99, ¶ 112; at 101, ¶ 122.  Plaintiffs seek punitive damages based on this same conduct. *See id.* at 100, ¶ 117; at 102, ¶ 126; *see also* Docket No. 237 at 8 (the magistrate judge finding that plaintiffs had established a *prima facie* claim for exemplary damages by alleging that defendants had failed to conduct the promised majority vote before affiliating with Aspen Highlands).  Thus, bifurcation would likely result in the presentation of duplicative evidence at each phase of the jury trial.  Moreover, the Court reads defendants' motion as requesting two separate juries: one to determine the

---

[8] Defendants state that they "have never argued that they are concerned that Plaintiffs will introduce evidence of their 'asserts or net worth to support punitive damages,' as Plaintiffs assert."  Docket No. 526 at 4 n.1.  However, their bifurcation motion indicates that the reason defendants seek bifurcation of the punitive damages issue is for the purpose of preventing the jury from seeing evidence concerning their net worth or profits.  *See* Docket No. 470 at 9 ("The same concerns about undue prejudice to the Marriott Defendants and jury confusion are present here, and *compel the deferral of the issue of punitive damages to a second phase of the jury trial*. . . . [E]vidence regarding either the assets and net worth of the Marriott Defendants, or that certain Marriott Defendants have allegedly realized $767 million in 'unjust profits' from [the affiliation], has nothing to do with the liability issues in the case. . . .  As such, allowing the jury to hear *such evidence in the first phase of the jury trial* could cause them to improperly weigh or be unduly influenced by the Marriott Defendants' net worth or the profits allegedly earned from [the affiliation] in determining these liability issues, and thus unfairly prejudice the Marriott Defendants." (emphases added)).

liability and compensatory damages issues and the other to decide the punitive

damages issue.  *See* Docket No. 470 at 8, ¶¶ 13-14 (stating that courts "frequently . . .

bifurcat[e] trials into separate phases, in which issues concerning the availability or the

amount of punitive damages are tried separately from issues concerning the

defendant's liability for, and the proper measure of, compensatory damages. . . .  This

practice is particularly appropriate where, as here, having the *same jury* charged with

deciding the issue of liability and compensatory damages also hear evidence offered in

support of a punitive recovery is likely to unduly prejudice the defendant by inflaming

the jury or confusing the two issues.") (emphasis added).  Thus, dividing the jury trial

into separate phases would require the repetition of some evidence to the second-

phase jury and require a separate jury selection.  Such a process would be an

inappropriate use of the Court's judicial resources.  *Compare Baker*, 1998 WL 101829,

at *2 (finding bifurcation appropriate when same jury would determine, in first phase

liability for actual and punitive damages, and, if necessary, immediately determine

amount of punitive damages to be awarded in a second phase).  The Court finds that

defendants have not met their burden of demonstrating that bifurcation of the jury trial

into two phases is warranted here.

### 2.  A Separate Bench Trial on Plaintiffs' Unjust Enrichment Claim

In addition, defendants argue that the Court should "bifurcate the proceedings

into an initial jury trial on Plaintiffs' legal claims and the issue of money damages (*i.e.*,

Counts I through IV of the Complaint and diminution in market value, and if necessary,

punitive damages) and a second, bench trial on Plaintiffs' equitable claim for unjust

enrichment and equitable remedy (*i.e.*, Count V and a disgorgement of the Marriott

Defendants' alleged 'unjust profits' from the MVC Affiliation."  Docket No. 470 at 10,

¶ 17.  They argue that presenting evidence on plaintiffs' legal claims and equitable

claims in a single jury trial "would be overwhelming and confusing, and would waste the

jury's time, as the determination of whether Plaintiffs are entitled to any equitable relief

and the amount of such relief is for the Court [to decide]."  *Id.* at 12, ¶ 20.  Plaintiffs

respond that "the conduct supporting all [of their] claims is the same," and that

evidence of Marriott's profits resulting from their allegedly wrongful conduct "shows

Marriott's motivation for breaching its fiduciary duties, and helps explain why it was so

profitable for Marriott to do so."  Docket No. 508 at 4.

     The Court disagrees with plaintiffs.  While the conduct supporting plaintiffs'

claims may be the same, the evidence supporting the claims is not.  To support their

requests for disgorgement of profits, plaintiffs "intend to show the amount of Marriott's

ill-gotten gains from allowing MVC members to access Plaintiffs' property."  *Id.*  This

evidence would not be relevant to determining defendants' liability or the amount of

damages suffered by plaintiffs.  Fed. R. Evid. 401.  The Court is unconvinced by

plaintiffs' argument that the evidence supporting their legal and equitable claims "is the

same" because the evidence demonstrates the Marriott defendants' motivation to

breach its fiduciary duties.  Wrongful intent is not an element of a claim for breach of

fiduciary duty.  *See F.D.I.C. v. Refco Grp., Ltd.*, 989 F. Supp. 1052, 1080 (D. Colo.

1997) (to prove a breach of fiduciary duty, a plaintiff must demonstrate (1) "the

existence of a fiduciary relationship between plaintiff and defendant"; (2) "defendant's

breach of the fiduciary duty"; and (3) "damages as a result of the breach."). Moreover, even if the evidence is relevant to plaintiffs' aiding and abetting claim to provide defendants' intent,[9] the Court finds that allowing the jury to hear evidence of Marriott's profits or net worth runs the risk of prejudicing defendants or confusing the jury. *See* Fed. R. Evid. 403; *see also S.S. v. Leatt Corp.*, 2014 WL 356938, at *1 (N.D. Ohio. Jan. 31, 2014) ("The Court finds that introduction of defendant's wealth, which affects only the punitive damages aspect of the claim, may cause prejudice to the defendant because the jury may improperly consider defendant's wealth in determining liability."). Here, the danger of unfair prejudice or confusing the issues supports limiting the equitable issues to a bench trial. The Court will determine the equitable issues only after the jury's resolution of the legal issues.

### F. Motion *in Limine* to Exclude the Cushman & Wakefield Appraisal

Defendants have filed a Motion *in Limine* to Exclude the Cushman & Wakefield Appraisal [Docket No. 475] in which they seek to preclude plaintiffs from introducing evidence related to or referring to the Summary Appraisal Report of Aspen Highlands ("the appraisal") prepared by Cushman & Wakefield Western, Inc. ("Cushman & Wakefield"). Docket No. 475 at 1.

In 2009, the Ritz-Carlton Destination Club ("RCDC") announced a "Portfolio Program," which was a points-based exchange program that allowed members to access participating RCDC properties. *Id.* at 3. Members of the Portfolio Program

---

[9] To prove aiding and abetting a breach of fiduciary duty, a plaintiff must prove, among other things, the defendant's knowing participation in another's breach of fiduciary duty. *Nelson v. Elway*, 971 P.2d 245, 249 (Colo. App. 1998).

purchased interests in the Bleu Florida Land Trust ("the Trust"), which held the inventory that comprised the Portfolio Program. *Id.* Portfolio members would annually receive "points," which acted as currency for members to use to book accommodations at participating RCDC properties. *Id.* The Portfolio Program was only for RCDC owners and did not involve Marriott properties. *Id.* In 2012, the Trust began to unwind and the Portfolio Program was discontinued. *Id.* The association of the owners of interest in the Portfolio Program – the BFLT Association, Inc. – engaged Cushman & Wakefield to appraise the value of the interests held in the Trust, and the appraisal was issued December 16, 2013 by Cushman & Wakefield Senior Director John C. Vaughan and Managing Director Christopher T. Donaldson. *Id.* at 3-4.

Defendants argue that the appraisal should be excluded because (1) it is hearsay and no exception to the hearsay rule applies; (2) it is unreliable; (3) it is not accurate; (4) it is not based on sound analysis or methodology; and (5) it is irrelevant and would mislead or confuse the jury. Docket No. 475 at 2. Plaintiffs respond that the appraisal is not hearsay because it is offered for its effect on the listener. Docket No. 510 at 2. Plaintiffs do not respond substantively to defendants' arguments challenging the reliability of the appraisal, claiming that these arguments are "irrelevant" because plaintiffs "are not seeking to use [the appraisal] to prove the truth of the statements within it." *Id.* at 4. Plaintiffs also assert that defendants' motion is premature and "[t]he Court will be better suited to determine whether the [] appraisal is admissible in the context of trial." *Id.* at 5.

With regard to their hearsay argument, defendants claim that the "value

conclusions"[10] within the appraisal are based on inadmissible hearsay because they are based on statements that unnamed RCDC owners allegedly made to unnamed real estate brokers, who then allegedly relayed them to Mr. Vaughan, who relayed the statements to Mr. Donaldson. Docket No 475 at 5. Defendants argue that the appraisal "does not fall into any exception to the hearsay rule, nor do the Value Conclusions or any of the multiple hearsay layers on which the Value Conclusions are supposedly based." *Id.* at 12. Plaintiffs assert that the appraisal is admissible for "the non-hearsay purpose of proving Marriott's notice and knowledge of both the potential harm to Plaintiffs, as well as the benefit to Marriott from MVC-member access [to Aspen Highlands]." Docket No. 510 at 2. Specifically, plaintiffs argue that the appraisal is admissible (1) for its effect on the listener, *id.*, and (2) to demonstrate defendants' "notice, intent, and knowledge." *Id.* at 4.

Hearsay is an out-of-court statement "offer[ed] in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c)(2). While plaintiffs contend that they do not offer the appraisal for the truth of its contents, the Court is not convinced. In *Christou v. Beatport, LLC*, No. 10-cv-02912-RBJ-KMT, 2013 WL 2422916 (D. Colo. June 4, 2013), the plaintiff sought to introduce audio recordings of several DJs purportedly discussing threats that had been made against them if they were to play at certain nightclubs. *Id.*

---

[10] The "value conclusions" contained opinions concerning the impact that conversion to a points-based system had on participating members and their fractional interests. *See, e.g.*, Docket No. 475 at 5 ("This conversion [to a points system] has had a severely negative impact on demand for fractional interests at Ritz Carlton Club properties and the subject development in particular.") (quoting Docket No. 477-1 at 32).

at *7. The plaintiff argued that these out-of-court statements were not hearsay because they were being offered to prove the effect of the statements on the DJs rather than the statements' truth. *Id.* The court rejected this argument and found that the statements were hearsay. *Id.* Specifically, the court found that the relevance of the out-of-court statements was "in the truth of the statements." *Id.* If the DJs were merely speculating whether they would face consequences if they played at the nightclubs in question, then the evidence of the DJs' state of mind, too, "would be irrelevant and speculative." *Id.* On the other hand, if there was an actual threat – and the DJs had formed their state of mind based on the threat – "then the evidence in reality is being offered to prove" that the threat existed. *Id.*

Similar to *Christou*, the only way that the appraisal could have provided defendants with "notice and knowledge" is if the appraisal is accurate. If the appraisal was accurate, but defendants ignored its results, then plaintiffs can argue that defendants took actions to profit at plaintiffs' expense. Docket No. 510 at 1. However, if the appraisal was unreliable, defendants would also have ignored the results. Thus, the force of plaintiffs' argument depends on the appraisal's truth.[11] For this reason, the

---

[11] Moreover, there are reasons to believe that the appraisal is not accurate. Mr. Donaldson concedes that the appraisal's value conclusions were not tested and that no recognized industry protocol were followed in reaching the conclusions. Docket No. 476-7 at 9, 391:16-392:19. He states that he would want a jury analyzing the points-system conversion to have more information than what is contained in the appraisal and that the appraisal was not based on all relevant information. *Id.*, 390:12-23; *id.* at 7, 347:7-348:9. Finally, Mr. Donaldson represents that, if he were putting together an expert report concerning the conversion to a points system, the appraisal would be insufficient to base his report on, which the Court interprets as an admission that experts in the field would not rely on this type of hearsay. *Id.* at 9, 389:24-390:11.

Court rejects plaintiffs' claim that the appraisal is admissible for the non-hearsay purpose of its effect on the listener. *See id.* at 2.

Insofar as plaintiffs' response can be read to assert that the "state-of-mind" hearsay exception applies, this exception applies only to hearsay statements offered to prove the listener's then-existing state of mind, i.e., the listener's state of mind at the time the listener heard the statement. Fed. R. Evid. 803(3). This hearsay exception is based on the "[s]pecial reliability . . . provided by the spontaneous quality of the declarations, assured by the requirement that the declaration purport[s] to describe a condition presently existing at the time of the statement." 2 McCormick On Evid. § 273 (8th ed.) (2020). Plaintiffs do not indicate that they intend to offer the appraisal for this purpose; instead, they seek to offer this evidence to prove defendants' state of mind at the time of the affiliation. *See* Docket No. 510 at 3-4. Thus, this exception does not apply. In the alternative, plaintiffs argue that the evidence is admissible to show defendants' "notice, intent, and knowledge" or to show defendants' "willful and wanton conduct." *Id.* at 4. Plaintiffs do not argue that these constitute hearsay exceptions and do not cite any legal authority demonstrating that proving a defendant's notice, intent, knowledge, or willful or wanton conduct is a sufficient basis to admit hearsay statements.[12] Therefore, the Court rejects this argument.

---

[12] Even if there was an applicable hearsay exception for the appraisal, the appraisal is based upon multiple levels of hearsay for which an exception is needed. *See* Fed. R. Evid. 805 (when a statement contains multiple levels of hearsay, "each part of the combined statements [must] conform[] with an exception to the rule.") Plaintiffs do not address the multiple levels of hearsay or explain why each statement would be admissible. *See* Docket No. 510.

Even if plaintiffs could establish a hearsay exception, the Court finds that the danger of unfair prejudice substantially outweighs any probative value that this evidence could have. As set out above, there are serious concerns about the appraisal's accuracy and reliability, arguments that plaintiffs have not addressed. Thus, Court finds that the appraisal has limited probative value. However, the danger of unfair prejudice is substantial. Given the lack of reliability of the report, there is a substantial risk that admitting the report would confuse or mislead the jury as to the relevant information in this case. *See* Fed. R. Evid. 403. For these reasons, the Court will grant defendants' motion and exclude the Cushman & Wakefield appraisal.[13]

## III. CONCLUSION

For these reasons, it is

**ORDERED** that Marriott Defendants' Motion *in Limine* to Preclude References to Discovery Disputes [Docket No. 466] is **GRANTED**. It is further

**ORDERED** that Marriott Defendants' Motion *in Limine* to Preclude References to "Merger" with Marriott Vacation Club Destinations [Docket No. 467] is **GRANTED**. It is further

**ORDERED** that Marriott Defendants' Motion *in Limine* to Preclude References to Other Lawsuits [Docket No. 468] is **GRANTED IN PART** as set forth in this order. It is further

---

[13] To the extent that plaintiffs argue that this motion is premature, *see* Docket No. 510 at 5, plaintiffs offer no argument as to why the Court cannot rule on defendants' motion *in limine* prior to trial. Therefore, the Court rejects plaintiffs' argument.

**ORDERED** that Marriott Defendants' Motion *in Limine* to Preclude Evidence of Non-Affiliation-Related Damages and Conduct [Docket No. 469] is **GRANTED IN PART** as set forth in this order.  It is further

**ORDERED** that Marriott Defendants' Motion *in Limine* to Bifurcate Trial and to Preclude References to Marriott Defendants' Profits During Earlier Phases of Trial [Docket No. 470] is **GRANTED IN PART** as set forth in this order.  It is further

**ORDERED** that Marriott Defendants' Motion *in Limine* to Exclude the Cushman & Wakefield Appraisal [Docket No. 475] is **GRANTED**.

DATED March 20, 2020.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge