IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 16-01301 PAB

RCHFU, LLC, et al.

      Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al.

      Defendants.

---

**MARRIOTT DEFENDANTS' MOTION TO RESTRICT IN RESPONSE TO COURT ORDER (ECF # 562) DENYING IN PART AND GRANTING IN PART THE MARRIOTT DEFENDANTS' MOTIONS TO RESTRICT ACCESS (ECF #458, 484, 493, 502, 534)**

---

Pursuant to Local Civil Rule 7.2(c), Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC, The Cobalt Travel Company, LLC, and The Lion & Crown Travel Co., LLC (collectively, "Marriott Defendants"), respectfully submit this renewed Motion to Restrict in response to the Court's Order of March 12, 2020 (ECF #562). Through this motion, the Marriott Defendants seek to retain the "Level 1" restriction that currently applies to the 15 documents that are the subject of this motion. The motion should be granted: (a) because the restricted materials contain sensitive information, which if disclosed without restriction (and particularly if they would be accessible to business competitors), would cause the Marriott Defendants to suffer a clearly defined and serious injury; and (b) because (as is explained herein), the Marriott Defendants have, with respect to many of the restricted documents, proposed specific redactions that would restrict only narrow components of the documents.

## COMPLIANCE WITH DISTRICT OF COLORADO LOCAL CIVIL RULE 7.1

Counsel for the Marriott Defendants have conveyed their position concerning the subject matter of this motion to counsel for Plaintiffs, who did not agree to the relief sought in this motion.

## PRELIMINARY STATEMENT

On March 12, 2020, the Court entered an order (ECF #562), which lifted the provisional restriction on about 64 docket entries, but left 32 documents restricted that were previously filed with the Court on a restricted basis (and as to which motions to restrict had been filed), and ordered that the Court's restrictions on public access to these documents would be lifted unless a subsequent motion to maintain the restriction was made and granted. This motion concerns 15 of those documents, which should remain restricted (in part or in whole), as follows:

- there are 10 documents that may be generally unrestricted, subject to specifically identified redactions on the specific pages identified below; and

- there are 5 documents that should remain restricted in their entirety.

A chart summarizing all 15 of the documents that are the subject of this motion, and the Marriott Defendants' proposed treatment of them, is set forth below:

| No. | ECF # | Document Description ("MD" = "Marriott Defendants") | Proposed Treatment |
|-----|-------|---------------------------------------------------|--------------------|
| 1. | 442-1 | Plaintiffs' Motion for Sanctions and a Default Judgment Against Certain Marriott Defendants Based on APCO Documents; and Motion to Consolidate (ECF #282) (Exhibit A to MD's Summary Judgment Motion) | This is a 390-page document, comprised of 35 component documents. The entire the document may be unrestricted, except for the following pages: 41-49, 51-70, 72-88, 279-81, 283-84, 355-65, 368-71, 376-81. |
| 2. | 442-2 | Plaintiffs' Reply in Support of Motion for Sanctions and a Default Judgment Against Certain Marriott Defendants Based on APCO Documents (ECF #297) (Exhibit B to MD's Summary Judgment Motion) | This is a 35-page document, comprised of 7 component documents. The entire document may be unrestricted, except for the following pages: 23-25 and 29-32. |
| 3. | 442-3/ | Expert Rebuttal Report of Mark Israel, dated | The entire document may be |

|   | 462-4[1] | December 28, 2018<br>(Exhibit C to MD's Summary Judgment Motion) | unrestricted, subject to redaction only of internal consumer survey information about MVC Points purchasers (Table 4 (p. 28), Figure 2, p.29), Table A1 (p. 93), Figure A1 (p. 94) and pricing discounts offered by MVC to sell points (Table 5 and 6 pp. 51-61)). |
|---|---|---|---|
| 4. | 444-23 | Member Comments<br>(Exhibit 23 to Plaintiffs' Partial Summary Judgment "PSJ" Motion) | The entire document may be unrestricted, but the Members' email addresses and telephone numbers should be redacted. |
| 5. | 444-24 | 4.12.13 Stephanie Sobeck Email attaching Member comments<br>(Exhibit 24 to Plaintiffs' PSJ Motion) | The entire document may be unrestricted, but the Members' email addresses and telephone numbers should be redacted. |
| 6. | 445-4/483-3[2] | APCO Member Study Detailed Report<br>(Exhibit 33 to Plaintiffs' PSJ Motion) | The restriction should be retained. |
| 7. | 444-11/483-1[3] | May 24, 2012 CGC Memo<br>(Exhibit 11 to Plaintiffs' PSJ Motion) | The restriction should be retained. |
| 8. | 444-25 | August 8, 2012 Strategic Council Update<br>(Exhibit 25 to Plaintiffs' PSJ Motion) | The entire document may be unrestricted, but pages 2-6 should be redacted, so that only information pertaining to The Ritz-Carlton Club, Aspen Highlands, and the "Luxury Segment Reengineering" remains. |
| 9. | 444-26 | September 27, 2012 Strategic Council Update<br>(Exhibit 26 to Plaintiffs' PSJ Motion) | The entire document may be unrestricted, but pages 2-6 should be redacted, so that only information pertaining to The Ritz-Carlton Club, Aspen Highlands, and the "Luxury Segment Reengineering" remains. |
| 10. | 444-27 | October 25, 2012 Strategic Council Update<br>(Exhibit 27 to Plaintiffs' PSJ Motion) | The entire document may be unrestricted, but pages 2-6 should be redacted, so that only information pertaining to The Ritz-Carlton Club, Aspen Highlands, and the "Luxury Segment Reengineering" remains. |
| 11. | 444-28 | January 17, 2013 Strategic Council Update<br>(Exhibit 28 to Plaintiffs' PSJ Motion) | The entire document may be unrestricted, but pages 2-6 should be |

---

[1] 462-4 is a duplicate of 442-3 (Mark Israel Expert Report (Exhibit D to Motion to Exclude Expert Testimony of C. Dev, J. Simon and R. M. Robinson)).

[2] 483-3 is a nearly exact duplicate of 445-4 (APCO Survey Results (Exhibit 3 to the Confidential Declaration of Ian S. Marx in Support of RCMC's Opposition to Plaintiffs' Motion for PSJ)).

[3] 483-1 is a duplicate of 444-11 (May 24, 2012 CGC Memo (Exhibit 1 to the Confidential Declaration of Ian S. Marx in Support of RCMC's Opposition to Plaintiffs' Motion for PSJ)).

| | | | redacted, so that only information pertaining to The Ritz-Carlton Club, Aspen Highlands, and the "Luxury Segment Reengineering" remains. |
|---|---|---|---|
| 12. | 445-3 | July 10, 2014 Strategic Council Update (Exhibit 32 to Plaintiffs' PSJ Motion) | The entire document may be unrestricted, but pages 2-15 should be redacted, so that only information pertaining to The Ritz-Carlton Club, Aspen Highlands, and the "Luxury Segment Reengineering" generally remains. |
| 13. | 445-7 | Draft Aspen Cushman & Wakefield Appraisal (Exhibit 36 to Plaintiffs' PSJ Motion) | The restriction should be maintained; pursuant to the Court's Order of March 20, 2020, granting Marriott's *motion in limine*, the Appraisal has been excluded. |
| 14. | 445-9 | Final San Francisco Cushman & Wakefield Appraisal (Exhibit 38 to Plaintiffs' PSJ Motion) | The restriction should be maintained. *See above.* |
| 15. | 477-1 | Aspen Cushman & Wakefield Appraisal Report (Exhibit 1 of Supplemental Restricted Declaration of Ian S. Marx in Support of Marriott Defendants' Motion *in Limine* to Exclude the Cushman & Wakefield Appraisal) | The restriction should be maintained. *See above.* |

## **LEGAL STANDARD**

Pursuant to Local Rule 7.2(c), a motion to restrict public access shall:

(1) identify the document or the proceeding for which restriction is sought;
(2) address the interest to be protected and why such interest outweighs the presumption of public access (stipulations between the parties or stipulated protective orders with regard to discovery, alone, are insufficient to justify restriction);
(3) identify a clearly defined and serious injury that would result if access is not restricted;
(4) explain why no alternative to restriction is practicable or why only restriction will adequately protect the interest in question (e.g., redaction, summarization, restricted access to exhibits or portions of exhibits); and
(5) identify the level of restriction sought.

D. COLO. LOCAL CIV. R. 7.2(c).   "It is beyond question that this [c]ourt has discretionary power to control and seal, if necessary, records and files in its possession." *United States v. Dillard*, 795 F.3d 1191, 1205 (10th Cir. 2015) (quoting *Crystal Grower's Corp. v. Dobbins*, 616 F.2d 458,

461 (10th Cir.1980)).  Indeed, a court may, in its discretion, restrict the public's right to access to judicial records

> if the public's right of access is outweighed by competing interests. In exercising this discretion, we weigh the interests of the public, which are presumptively paramount, against those advanced by the parties. To overcome this presumption against sealing, the party seeking to seal records must articulate a real and substantial interest that justifies depriving the public of access to the records that inform our decision-making process.

*JetAway Aviation, LLC v. Bd. of Cty. Comm'rs of Cty. of Montrose, Colo.*, 754 F.3d 824, 826 (10th Cir. 2014) (internal citations and quotation marks omitted); *see also Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007) (the presumption in favor of public access is "not absolute," and is overcome where "countervailing interests outweigh the public interests in access."). "[A] sufficient showing to overcome the presumption may be found where the records contain . . . business information that might harm a litigant's competitive standing, . . . . information which could harm the competitive interests of third parties, . . . or private or personally identifiable information, . . . or otherwise invade privacy interests[.]" *Anderson v. Walgreen Co.*, Civil Action No. 14-cv-02642-RM-MJW, 2016 U.S. Dist. LEXIS 1740, at *4 (D. Colo. Jan. 7, 2016) (internal citations and quotation marks omitted).

Restriction is appropriate where records may become "a vehicle for an improper purpose," including where the documents at issue are "sources of business information that might harm a litigant's competitive standing." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). Thus, courts have long recognized that a party's interest in maintaining confidentiality of competitively sensitive documents outweighs the public's general interest in access to court records: "[c]ommercial competitors seeking an advantage over rivals need not be indulged" in favor of public access "in the name of monitoring the courts." *United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995); *see Hershey v. ExxonMobil Oil Corp.*, 550 F. App'x

566, 574 (10th Cir. 2013) (maintaining "confidential commercial competitive information" under seal).

## ARGUMENT

The 15 filings for which the Marriott Defendants seek to maintain the current Level 1 Restriction, in part or in whole, meet these standards for restricting public access. The contents of these filings fall into five general categories, each of which is entitled to protection: (1) a handful of tables and figures in an expert report that was designated by the expert as confidential because it analyzes and relies on the Marriott Defendants' confidential and sensitive business information; (2) confidential appraisals that are now irrelevant to this litigation pursuant to the Court's March 20, 2020 Order granting a *motion in limine* excluding the appraisal from this case; (3) redactions to protect the privacy of some customer email addresses and telephone numbers of the Marriott Defendants; (4) sensitive and confidential business information used by the Marriott Defendants' senior management in meetings regarding corporate strategy and governance; and (5) information pertaining to a confidential engagement the Marriott Defendants' legal department entered into with a public relations/crisis management firm, APCO, in response to actual and threatened litigation.

## I.      Portions of the Expert Report of Mark Israel: (ECF #s 442-3, 462-4)

Mark Israel is an economist serving as an expert witness for the Marriott Defendants. The Marriott Defendants seek to maintain the confidentiality of several portions of the Expert Rebuttal Report of Mark Israel, which has been filed with the Court in connection with a pending motion. This report analyzes and discusses recent and historical, competitively sensitive, internal information regarding the Marriott Defendants' business in support of his conclusions.

This information includes price data, business valuations, marketing information, inventory details, and customer preferences.

Of particular concern are several tables and figures included within the Report, which were created based upon confidential and highly sensitive business information produced in discovery by the Marriott Defendants pursuant to the Court's Protective Order.  One such category of information is comprised of quarterly surveys asking potential purchasers to select the features they considered "important" in their decision about whether to purchase a Marriott shared ownership product. Respondents were also asked to rank the features they rated as important to their purchase decision.  These survey responses are used by the Marriott Defendants to conduct their business and to help inform their sales personnel.  Mr. Israel's Rebuttal Report includes the data compiled in these surveys in several tables.  Similarly, Mr. Israel also used information concerning substantial discounts that Marriott offers to certain purchasers of its products that is relevant to his rebuttal of Plaintiffs' unjust enrichment claim (as explained by Mr. Israel, Plaintiffs' focus on gross prices overstates the actual prices paid by MVC owners and therefore the actual revenue received by MVW).  Marriott's business sales strategies relating to discounts and pricing are confidential and proprietary.

This motion seeks only to restrict this document by way of redacting the portions that disclose internal consumer survey information about MVC Points purchasers (Table 4 (p. 28)), Figure 2, p.29), Table A1 (p. 93), Figure A1 (p. 94) and pricing discounts offered by MVC to sell points (Table 5 and 6 pp. 51-61).  The remainder, and vast majority, of the document may be unrestricted.

Disclosure of proprietary customer intelligence, which the Marriott Defendants have developed in order to better serve its current Members and to more successfully market to

potential customers, could provide competitors with an unfair advantage.  In particular, insight into what motivates purchasers can be used by competitors to undercut the Marriott Defendants' sales efforts, to steal potential customers, or to poach current Members.  *See Teets v. Great-W. Life & Annuity Ins. Co.*, 2016 WL 1586418, at *3 (D. Colo. Apr. 20, 2016) (holding that restriction was appropriate because the "wholesale disclosure" of documents related to expert testimony "could put [defendant] at a competitive disadvantage.").  Moreover, information regarding how the Marriott Defendants price their points and what incentives and discounts are offered to purchasers, are ongoing business matters, and are not stale, outdated, or irrelevant today.  It is feasible that competitors could use this information either to harm the Marriott Defendants directly, or to gain an unfair advantage that indirectly harms the Marriott Defendants' competitive standing in the vacation ownership market. *See Bauer Bros. LLC v. Nike, Inc.,* 2012 WL 1899838, at *3 (S.D. Cal. May 24, 2012) (granting motion to seal expert and rebuttal reports that "refer to confidential, non-public financial data . . . including a detailed discussion of Nike's sales, merchandise costs, costs of goods sold, royalty costs, promotional costs, and personnel costs," which the court held "could be used for improper purposes for Nike's business competitors.")

## II.      The Cushman & Wakefield Appraisals (ECF #s 445-7, 445-9, 477-1)

There are several Cushman & Wakefield appraisals currently on file with the Court on a restricted basis.  Those documents should be withdrawn, or should remain restricted, in light of this Court's Order of March 20, 2020, which granted the Marriott Defendants' motion *in limine* and excluded the Cushman & Wakefield appraisal from this case.

Two appraisals conducted by Cushman & Wakefield were attached as exhibits to Plaintiffs' summary judgement motion: (1) a draft appraisal of The Ritz-Carlton Club, Aspen

Highlands, the property at issue in this case (ECF # 445-7); and (2) the final appraisal of The Ritz-Carlton Club, San Francisco, which is not at issue in this case and presumed to be attached in error (ECF #445-9).   The final Cushman & Wakefield appraisal of The Ritz-Carlton Club, Aspen Highlands was attached as an exhibit to the Marriott Defendants' motions *in limine*.  ECF # 477-1.   The appraisals contain detailed information concerning the Aspen and San Francisco properties, including valuations, points values, retail value of points, details regarding inventory, market analyses, conclusions, and detailed floor plans. These appraisals were conducted purely for internal business purposes, and were not intended to be disclosed to the public or made available to competitors.

On March 20, 2020, the Court issued an order granting (ECF #564) the Marriott Defendants' Motion in Limine to Exclude the Cushman & Wakefield Appraisal (ECF #475).  In its Order, the Court held that "[g]iven the lack of reliability of the report, there is a substantial risk that admitting the report would confuse or mislead the jury as to the relevant information in this case."  ECF #564 at 29.  Thus, the Aspen appraisal has been excluded from this case.

Since the appraisals filed at ECF #s 445-7, 445-9, 477-1 have no relevance to the issues in this case and will play no role in the upcoming trial, the public right of access does not outweigh the Marriott Defendants' interest in protecting the confidential information contained in these reports.  *See Minott v. Wichita Water Conditioning, Inc.*, 2020 U.S. Dist. LEXIS 22093, at *22-23 (D. Colo. Feb. 7, 2020) (holding that a party's "privacy interest outweighs the public's interest in access to the material" where "the material submitted is largely irrelevant"); *Riker v. Federal Bureau of Prisons*, 315 Fed. Appx. 752, 755 (10th Cir. 2009) (district court properly sealed documents that were not central to its determination on the merits).

### III.   Customer Email Addresses and Phone Numbers (ECF #s 444-23 and 444-24)

Currently restricted are two charts that compile comments made by Members of The Ritz-Carlton, Aspen Highlands, in response to certain correspondence sent by the directors of the condominium association.   The information in the charts includes, in some instances, the Members' email addresses and telephone numbers.   These documents may be unrestricted, but the Members' email addresses and telephone numbers should be redacted so that these Members are protected from unwanted communications and so that their privacy rights are respected.   *See Anderson*, 2016 U.S. Dist. LEXIS 1740, at *4 (D. Colo. Jan. 7, 2016) ("[A] sufficient showing to overcome the presumption may be found where the records contain . . .   private or personally identifiable information, . . .   or otherwise invade privacy interests"); *In re Hydroxycut Mktg. & Sales Practices Litig.*, 2011 U.S. Dist. LEXIS 25977, at *29 (granting motion to seal email address, public disclosure of which could invite unnecessary harassment); *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 2007 U.S. Dist. LEXIS 51828, at *18 (D.N.J. July 18, 2007) (granting motion to seal specific customer information).

### IV.   Documents Regarding Strategy/Corporate Governance (ECF #s 444-19, 444-11, 444-25, 444-26, 444-27, 444-28, 445-3, 483-1)

There are several currently restricted documents created by or for certain groups of senior leaders of the Marriott Defendants, which contain sensitive, confidential business information and which were used by senior management to conduct the Marriott Defendants' business.

Several of these documents are titled "Strategic Council Updates" CO (ECF #s 444-25, 444-26, 444-27, 444-28, 445-3), and as to these, the Marriott Defendants seek to maintain only limited portions of the document as restricted.   These memoranda all concern corporate governance or strategy and were created by or circulated between the Marriott Defendants' senior management.   The information contained in these documents was treated by the Marriott

Defendants' executives as confidential and was never intended to be disclosed to the public or to competitors. These documents are similar to the May 24, 2012 Corporate Growth Committee ("CGC") memorandum, which this Court has previously recognized should be restricted at Level 1. *See* Court's Orders at ECF #265, 272, 562.[4]  Like the CGC memoranda and other documents that the Court has restricted on similar grounds (see ECF #s 393, 408, 409, 420), these documents contain confidential and competitively sensitive information concerning the development and analysis of strategic business decisions, pricing data, business valuations, budgets, P&L and cash flow historical data and projections, expectations for future business, and recommendations for future business decisions.

The Marriott Defendants do not seek to maintain the entirety of these documents as restricted.  As set forth above, these documents may be in general unrestricted, but redacted so that information pertaining to the issues in this case involving The Ritz-Carlton Club, Aspen Highlands, and the "Luxury Segment Reengineering" remains.  In this way, sensitive and confidential financial and other information having nothing to do with this case would not be disclosed to the public and competitors.

Although these documents are several years old, the Marriott Defendants still have a strong interest in maintaining their confidentiality and face a risk of harm if they are disclosed. First, these documents can provide competitors with detailed inside information regarding the Marriott Defendants' decision-making process and strategies as tied to specific financial data. Competitors facing similar circumstances that the Marriott Defendants were facing at the time of these documents' creation can gain an unfair advantage by copying—or avoiding—their strategies.  *See Bauer Bros. LLC v. Nike, Inc.*, 2012 WL 1899838, at *2 (S.D. Cal. May 24,

---

[4] As such, documents ECF # 444-11 and 483-1 (which are other instances in which the May 24, 2012 CGC Memo has been publicly filed), should remain restricted.

2012) ("[P]ublic disclosure of Nike's confidential business materials, including marketing strategies, sales and retailer data, product development plans, unused prototypes, and detailed testimony regarding the same, could result in improper use by business competitors seeking to replicate Nike's business practices and circumvent the considerable time and resources necessary in product and marketing development); *In re Hydroxycut Mktg. & Sales Practices Litig.*, 2011 U.S. Dist. LEXIS 25977, at *30 (S.D. Cal. Mar. 11, 2011) (granting motion to seal pricing data as well as "emails which reveal business and marketing strategy, information regarding product development, sales and pricing information, financials, internal troubleshooting, and information regarding the businesses of clients").  Second, given today's unstable economic conditions, competitors can try to predict how the Marriott Defendants may respond by analyzing how they responded in the past. This unfair advantage can be used to undercut the Marriott Defendants. And finally, disclosure of the Marriott Defendants' corporate strategy and decision-making at the highest levels stifles the free flow of information and ideas within the Company.  *See Bredice v. Doctors Hosp.*, 50 F.R.D. 249, 251 (D.D.C. 1970) (recognizing a "public interest in having . . . staff meetings held on a confidential basis so that the flow of ideas and advice can continue unimpeded.").  The interest in public access to this discrete set of documents does not outweigh the interest in encouraging problem solving and corporate governance, especially in light of the narrowly-tailored redactions being applied.

V.      **Information Pertaining to APCO (ECF #s 442-1, 442-2, 445-4, 474-2, 483-3)**

The Marriott Defendants are seeking to restrict portions of ECF #s 442-1, 442-2, 474-2, and the entirety of 445-4 and 483-3, all of which relate to the "APCO Survey."   APCO Worldwide is a public relations/crisis management firm that the Marriott Defendants' law department engaged in 2013 to provide assistance in connection with litigation relating to The

Ritz-Carlton Club in Kapalua, Hawaii. APCO's engagement was later expanded to include conducting a member survey and focus groups. In August 2013 and January 2014, APCO prepared reports concerning the survey and focus groups. ECF #s 445-4; 483-3.

On July 3, 2018, Plaintiffs filed a sanctions motion in connection with the Marriott Defendants' initial and inadvertent failure to produce certain documents relating to the APCO Survey. The Marriott Defendants reattached Plaintiffs' moving and reply papers in support of their sanctions motion (which were filed by Plaintiffs on a restricted basis) as exhibits to the Marriott Defendants' Motion for Summary Judgment (ECF #442-1 and 442-2) and Motions in Limine (ECF #474-2).

The Marriott Defendants propose filing both documents on an unrestricted basis, subject to the following, narrowly-tailored redactions. ECF # 442-1 is a 390-page document, comprised of 35 component documents; redactions are proposed for the following pages: 41-49, 51-70, 72-88, 279-81, 283-84, 355-65, 368-71, 376-81. ECF # 442-2 is a 35-page document, comprised of 7 component documents; redactions are proposed for the following pages: 23-25 and 29-32.

The filings related to the APCO Survey should be restricted because they contain information that the Marriott Defendants and APCO never intended to be made public, including (a) the Marriott Defendants' in-house lawyers' retention of APCO to provide public relations and crisis management services to help the Marriott Defendants navigate challenging circumstances, including litigation; and (b) details and analysis regarding the Marriott Defendants' customers, including their opinions and satisfaction on highly specific facets of the business. Disclosure of the information contained in the APCO filings, which was intended to remain confidential and to help the Marriott Defendants determine corporate strategy and better serve the Members, would provide competitors insight into the Marriott Defendants' business strategies and concerns, as

well as how to appeal to the Marriott Defendants' customer base. *See In re ConAgra Foods, Inc.*, 2014 U.S. Dist. LEXIS 197175, at *12 (C.D. Cal. July 11, 2014) (granting motion to seal "internal company documents that describe consumer studies and their results . . . commissioned by [the defendant] and performed by a third party marketing consultant" as well as consumer surveys and "the results of a qualitative study of consumers commissioned by [the defendant]"). Moreover, and perhaps more significantly, disclosure of information procured by in-house counsel to help the Company navigate ongoing litigation, potential litigation, and other immediate business concerns could have a serious chilling effect on the free flow of information within any given organization. *See Bauer*, 2012 WL 1899838, at *4 (granting motion to seal attorney's discussion of non-public financial documents including customer listings, accounting methods, and costs analysis). Finally, the Marriott Defendants have proposed redactions to these documents in order to balance the competing concerns of privacy versus the public's right of access.

## CONCLUSION

Accordingly, for the reasons set forth more fully above, the Marriott Defendants respectfully request that this Court permit the documents identified below to remain restricted on a Level 1 basis, as follows:

| 442-1 | The Marriott Defendants shall replace this document with an unrestricted version containing redactions on the following pages: 41-49, 51-70, 72-88, 279-81, 283-84, 355-65, 368-71, 376-81 |
|---|---|
| 442-2 | The Marriott Defendants shall replace this document with an unrestricted version containing redactions on pages 23-25 and 29-32. |
| 442-3/462-4[5] | The Marriott Defendants shall replace these documents with an unrestricted version redacting only internal consumer survey information about MVC Points purchasers (Table 4 (p. 28), Figure 2, p.29), Table A1 (p. 93), Figure A1 (p. 94) and pricing discounts offered by MVC to sell |

---

[5] 462-4 is a duplicate of 442-3 (Mark Israel Expert Report (Exhibit D to Motion to Exclude Expert Testimony of C. Dev, J. Simon and R. M. Robinson)).

| | |
|---|---|
| | points (Table 5 and 6 pp. 51-61)). |
| 444-23 | The Marriott Defendants shall replace this document with an unrestricted version redacting only the Members' email addresses and telephone numbers. |
| 444-24 | The Marriott Defendants shall replace this document with an unrestricted version redacting only the Members' email addresses and telephone numbers. |
| 445-4/483-3[6] | Maintained as restricted. |
| 444-11/483-1[7] | Maintained as restricted. |
| 444-25, -26, -27 and 28 | The Marriott Defendants shall replace these documents with an unrestricted version with only pages 2-6 redacted. |
| 445-3 | The Marriott Defendants shall replace this document with an unrestricted version with  only pages 2-15 redacted. |
| 445-7 | Restriction maintained. |
| 445-9 | Restriction maintained. |
| 477-1 | Restriction maintained. |

Dated:  April 9, 2020

Respectfully submitted,

GREENBERG TRAURIG, LLP

By:      *s/ Ian S. Marx*
Philip R. Sellinger
Ian S. Marx
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
Tel: 973.360.7900 / Fax: 973.301.8410
Email:  SellingerP@gtlaw.com,
MarxI@gtlaw.com

*Attorneys for the Marriott Defendants*

---

[6] 483-3 is a nearly exact duplicate of 445-4 (APCO Survey Results (Exhibit 3 to the Confidential Declaration of Ian S. Marx in Support of RCMC's Opposition to Plaintiffs' Motion for PSJ)).

[7] 483-1 is a duplicate of 444-11 (May 24, 2012 CGC Memo (Exhibit 1 to the Confidential Declaration of Ian S. Marx in Support of RCMC's Opposition to Plaintiffs' Motion for PSJ)).

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of April, 2020, a true and accurate copy of the foregoing **MARRIOTT DEFENDANTS' MOTION TO RESTRICT IN RESPONSE TO COURT ORDER (ECF # 562) DENYING IN PART AND GRANTING IN PART THE MARRIOTT DEFENDANTS' MOTIONS TO RESTRICT ACCESS (ECF #458, 484, 493, 502, 534)** was filed and served with the Clerk of the Court via CM/ECF filing system which will send notification to the following:

Michael J. Reiser
Law Office of Michael J. Reiser
1475 N Broadway, Suite 300
Walnut Creek, CA 94596
*Counsel for Plaintiffs*

Matthew C. Ferguson
The Matthew C. Ferguson Law Firm, P.C.
119 South Spring, Suite 201
Aspen, Colorado 81611
*Counsel for Plaintiffs*

Tyler R. Meade
The Meade Firm P.C.
1816 Fifth Street
Berkeley, CA 94710
*Counsel for Plaintiffs*

Linda Pham Lam
Michael Schrag
Gibbs Law Group LLP
505 14th Street, Suite 1100
Oakland, CA 94612
*Counsel for Plaintiffs*

*s/ Jaclyn DeMais*
Jaclyn DeMais