IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 16-01301 PAB

RCHFU, LLC, et al.

    Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al.

    Defendants.

---

**MARRIOTT DEFENDANTS' REPLY IN SUPPORT OF MOTION TO RESTRICT IN RESPONSE TO COURT ORDER (ECF # 562) DENYING IN PART AND GRANTING IN PART THE MARRIOTT DEFENDANTS' MOTIONS TO RESTRICT ACCESS (ECF #458, 484, 493, 502, 534)**

---

Pursuant to Local Civil Rule 7.2(c), Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC, The Cobalt Travel Company, LLC, and The Lion & Crown Travel Co., LLC (collectively, "Marriott Defendants"), respectfully submit this reply brief in further support of their renewed Motion to Restrict in response to the Court's Order of March 12, 2020 (ECF #562).

## INTRODUCTION

As stated in their Opposition (ECF # 572, at 4), Plaintiffs do not oppose the Marriott Defendants' motion regarding following categories of documents: (1) Customer email addresses and phone numbers (ECF #s 444-23, 444-24); and (2) Cushman & Wakefield Appraisals (ECF #s 445-7, 445-9, and 477-1). Plaintiffs have waived any objection to the Marriott Defendants' motion as to expert reports (ECF #s 442-3, 462-4), by failing to address the Marriott Defendants' proposed approach to these documents in their Opposition. *See United States v. Martinez*, 518

F.3d 763, 768 (10th Cir. 2008) (deeming contention waived where it "appears only in a fleeting sentence at the conclusion of Mr. Martinez's opening brief, supported by no analysis or citation"); *Steak N Shake Enters. v. Globex Co., LLC*, 110 F. Supp. 3d 1057, 1082 (D. Colo. 2015) (considering party's failure to respond to argument a waiver). Accordingly, the only remaining dispute between the parties is the Marriott Defendants' proposed *partial*[1] Level-1 restriction of two categories of documents: (1) confidential, internal documents regarding strategy/corporate governance (ECF #s 444-11/483-1, 444-25, 444-26, 444-27, 444-28, 445-3); and (2) information pertaining to APCO (ECF #s 442-1, 442-2, 445-4/483-3)[2].

The documents concerning strategy/corporate governance and the APCO Reports should maintain their Level 1 Restriction because they clearly contain confidential, competitively sensitive information that could harm the Marriott Defendants if disclosed to the public. Plaintiffs' main objection to the continued restriction of these documents is that they are several years old. However, the mere fact that a document may be "old" does not mean that the document's restriction should be lifted. To the contrary, the wholesale public disclosure of confidential documents may cause a corporate party significant harm—even where the document is several years old—such that the party's interest in confidentiality outweighs the public's general right of access. Under well-established law and the particular facts of this case, Plaintiff's conclusory argument that the documents at issue here are "stale" falls short, and the

---

[1] Of these 9 unique documents, the Marriott Defendants only seek to restrict two in their entirety (ECF #s 444-11/483-1 and 445-4/483-3). *See Bright v. Asset Acceptance, LLC*, 292 F.R.D. 190, 203 (D.N.J. 2013) ("If documents as a whole contain sensitive information, redaction is not a viable alternative to sealing."). The Marriott Defendants have proposed unrestricting and applying narrowly tailored redactions to the remaining seven (ECF #s 444-25, 444-26, 444-27, 444-28, 445-3, 442-1, and 442-2).

[2] ECF #s 444-19 and 474-2 were inadvertently listed under headings IV. and V. in the Marriott Defendants' moving brief, but the Marriott Defendants no longer seek to maintain the restriction for these documents.

Marriott Defendants' motion to maintain a circumscribed set of Level-1 restrictions should be granted.

## ARGUMENT

### I. The Marriott Defendants' Motion Complies with Rule 7.2(c)

As an initial matter, the Marriott Defendants' motion satisfies the requirements set forth in Local Rule 7.2(c). In particular, and as set forth more fully below, the Marriott Defendants have (1) submitted a chart identifying each individual document for which restriction is sought; (2) detailed the interest to be protected and why such interest outweighs the presumption of public access; (3) identified a clearly defined and serious injury that would result if access is not restricted; (4) sought the least restrictive solution by advocating for un-restricting 10 out of 15 documents and applying narrowly tailored redactions, and seeking to completely restrict only 5 out of hundreds of documents; and (5) identified the lowest possible restriction (Level 1) for the at-issue documents.

### II. The Strategy/Corporate Governance and APCO Documents are Not "Stale" and are Entitled to Restriction Despite Being Created Several Years Ago

Plaintiffs only argument in opposition to the Marriott Defendants' motion is that the strategy/corporate governance and APCO documents should not be restricted merely because they are "old" and thus "stale." But this conclusory argument ignores the well-established and common-sense proposition that the disclosure of sensitive documents can cause a party harm, or impact its competitive standing, even if they are several years old, and that a document's "age" does not tilt the scales against a party's legitimate claim of confidentiality. *See, e.g., Gov't Accountability Project v. FDA*, 206 F. Supp. 3d 420, 442 (D.D.C. 2016) (holding that "assessing the likelihood of substantial competitive injury is a fact-intensive inquiry, and information that is several years old is not necessarily harmless"); *Koch v. Greenberg*, 2012 U.S. Dist. LEXIS

3

58608, at *13 (S.D.N.Y. Apr. 13, 2012) ("In some circumstances, competitors may be able to extrapolate from outdated information to learn information that would still afford them a competitive edge."); *Grand River Enters. Six Nations v. King*, 2009 U.S. Dist. LEXIS 11504, at *28 (S.D.N.Y. Jan. 30, 2009) (expressly approving Magistrate Judge's conclusion that the at-issue documents "identify trends and strategies which can be . . . extrapolated out to the present day and show how [RJR] intends to compete. Thus, even if historical, they remain competitively sensitive"); *Phillips Petroleum Co. v. Rexene Prods. Co.*, 158 F.R.D. 43, 47 (D. Del. 1994) ("Although Rexene contends that this business data is 'ancient', information may be extrapolated and interpreted from it to reveal a business' current strategy, strength and weaknesses. Therefore, old data could be used for competitive purposes."); *Culinary Foods v. Raychem Corp.*, 151 F.R.D. 297, 303 (N.D. Ill. 1993) (rejecting argument that years' old data is stale because it "will likely reveal information about the current operations of Raychem"). To this point, one court aptly recognized that

> it is terribly difficult to establish, on any principled basis, temporal boundaries governing the protection to be accorded information. While at first blush one might doubt that harm could be caused by the disclosure of stale information, there is sense in the argument, which defendants urge, that old business data may be extrapolated and interpreted to reveal a business' current strategy, strengths, and weaknesses. It would appear that, in the hands of an able and shrewd competitor, old data could indeed be used for competitive purposes.

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F. Supp. 866, 891-92 (E.D. Pa. 1981). To be sure, restriction does not turn on the age of the document, but rather, "a sufficient showing to overcome the presumption [in favor of public access] may be found where the records contain . . . business information that might harm a litigant's competitive standing, . . . information which could harm the competitive interests of third parties, . . . or private or personally identifiable information, . . . or otherwise invade privacy interests[.]" *Anderson v. Walgreen*

4

*Co.*, 2016 U.S. Dist. LEXIS 1740, at *4 (D. Colo. Jan. 7, 2016) (internal citations and quotation marks omitted).

Restriction is appropriate where records may become "a vehicle for an improper purpose," including where the documents at issue are "sources of business information that might harm a litigant's competitive standing." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). Thus, courts have long recognized that a party's interest in maintaining confidentiality of competitively sensitive documents may outweigh the public's general interest in access to court records: "[c]ommercial competitors seeking an advantage over rivals need not be indulged" in favor of public access "in the name of monitoring the courts." *United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995); *see also Hershey v. ExxonMobil Oil Corp.*, 550 F. App'x 566, 574 (10th Cir. 2013) (maintaining "confidential commercial competitive information" under seal); *Bauer Bros. LLC v. Nike, Inc.,* 2012 WL 1899838, at *3 (S.D. Cal. May 24, 2012) (granting motion to seal expert and rebuttal reports that "refer to confidential, non-public financial data . . . including a detailed discussion of Nike's sales, merchandise costs, costs of goods sold, royalty costs, promotional costs, and personnel costs," which the court held "could be used for improper purposes for Nike's business competitors.").

Here, the at-issue strategy/corporate governance documents and APCO documents contain precisely the type of proprietary confidential information that could harm the Marriott Defendants or negatively impact their competitive standing if they are publicly disclosed, even though the documents were created several years ago. Both categories of documents were intended to remain confidential and were created with the purpose of aiding senior executives' development of corporate strategy and the decision-making process. As such, they contain confidential and competitively sensitive information concerning the development and analysis of

strategic business decisions, pricing data, business valuations, budgets, P&L and cash flow, historical data and projections, expectations for future business, recommendations for future business decisions, and research and analysis by third-party consultants commissioned by the Marriott Defendants.  *See In re Hydroxycut Mktg. & Sales Practices Litig.*, 2011 U.S. Dist. LEXIS 25977, at *30 (S.D. Cal. Mar. 11, 2011) (granting motion to seal pricing data as well as "emails which reveal business and marketing strategy, information regarding product development, sales and pricing information, financials, internal troubleshooting, and information regarding the businesses of clients"); *Uniroyal Chem. Co. v. Syngenta Crop Prot.*, 224 F.R.D. 53, 57 (D. Conn. 2004) (noting that "[p]ricing and marketing information are widely held to be confidential business information" that may be protected).

*In re ConAgra Foods, Inc.*, 2014 U.S. Dist. LEXIS 197175 (C.D. Cal. July 11, 2014), is particularly instructive on this point.  In that case, the court granted a motion to seal documents containing nearly identical content as the documents the Marriott Defendants are seeking to restrict here:  (1) internal financial data concerning ConAgra's sales of a particular product, which "has not been publicly disclosed"; (2) internal company documents that describe consumer studies and their results; specifically, "slideshows that describe the results of packaging research studies commissioned by ConAgra and performed by a third party marketing consultant" for which "ConAgra paid tens of thousands of dollars"; (3) "slideshows describing the results of messaging tests commissioned by ConAgra, in which consumers were surveyed about different statements that might appear on a [product's] label"; (4) "a slideshow that describes the results of a qualitative study of consumers commissioned by ConAgra"; (5) "internal documents pertaining to its strategic evaluation of the Wesson brand and cooking oil category"; (6) pricing data provided by a third party; (7) "consumer information potentially

relevant to marketing, new product concepts, and sales information"; (8) "a spreadsheet containing summaries of communications between ConAgra and consumers, which includes consumer contact information"; and (9) internal confidential information reflecting ConAgra's perspectives and strategic positions regarding biotechnology," including "a slideshow presentation concerning ConAgra's position" on that topic, "an internal draft of responses to consumer questions" and an "internal ConAgra presentation." *Id.* at *13-*14. The court sealed these documents based on the assertion that

> none of these documents has been publicly disclosed, and . . . providing the public access to them would give competitors insight into ConAgra's marketing methods, including its consumer feedback, positioning strategies, product development ideas, and sales results. . . . [C]ompetitors could use the information to ConAgra's detriment by emulating ConAgra's marketing and research methods, pursuing its marketing targets, exploiting weaknesses the documents identify in ConAgra's marketing and branding efforts, and capitalizing on ConAgra's innovation plans. . . . [P]ublic disclosure of the documents would give its competitors free competitive intelligence, which ConAgra has spent tens of thousands of dollars to acquire . . . [and] this would disadvantage it relative to the competition.

*Id.* at *14. Here, the proprietary and confidential nature of the documents the Marriott Defendants seek to protect, as well as the potential harm, are nearly identical. Moreover, the need to protect the APCO documents is bolstered by the Marriott Defendants' engagement agreement with APCO, which explains that "Client is not retaining APCO to provide ordinary public relations advice to it" and that "APCO shall maintain in confidence all information and data relating to Client, its services, products, business affairs, marketing and promotion plans or other operations and its associated companies which are disclosed to APCO by or on behalf of Client" and that "APCO shall ensure that it, its officers, employees and agents only use such confidential information in order to perform the Services."[3]

---

[3] Plaintiffs misconstrue the significance of the confidentiality agreement with APCO. The Marriott Defendants have not taken the position that the confidentiality agreement with APCO

While a budget, projection, or recommendation from 2014, standing alone, may not be competitively sensitive, the aggregation of this data viewed in the relevant context reveals valuable insight into the Marriott Defendants' business to which the public—and competitors—would not normally have access.  If given access to this universe of data in the proprietary way that the Marriott Defendants amassed, analyzed, and applied it to their business, a competitor could foreseeably use it to gain an unfair competitive edge in various ways despite the documents' age, including marketing to the Marriott Defendants' current or potential customers, copying the Marriott Defendants' business strategies, or predicting the Marriott Defendants' future decisions or behaviors.  *See W. Penn Allegheny Health Sys. v. UPMC*, 2013 U.S. Dist. LEXIS 196816, at *33-34 (W.D. Pa. Sep. 16, 2013) (holding that documents concerning defendant's assessment of a competitor's strategy should be sealed even though it is outdated, because "[w]hile this information relates to a specific situation applicable to an earlier time, it is not stale. It is likely that UPMC will perform similar analyses in the future with regard to both this competitor and to similarly situated entities").  In addition, both categories of documents were created at a time when the Marriott Defendants were faced with significant business decisions, undergoing change, and reacting to difficult market conditions—all of which is likely to become relevant again in the current economic climate.  *See id.* (recommending sealing "because releasing this information will harm [the defendant's] competitive advantage with regard to the subject areas discussed. In addition, the excerpt addresses a particular area of concern that [the defendant] had with regard to a scenario that is likely to recur. Revealing this

---

alone justifies the restriction; rather, the nature of the relationship with APCO and the context in which the APCO Report was prepared helps demonstrate the sensitive and proprietary confidential nature of the documents. *See Uniroyal Chem. Co.*, 224 F.R.D. at 56-57 (when determining whether information merits a protective order, courts may consider, among other factors, "the measures taken to guard the secrecy of the information").

information would enable a competitor to exploit [the defendant's] concerns to gain a competitive advantage over [the defendant]").

Moreover, even though the public has a general right of access, their interest in internal, confidential business data of this sort is diminished. *See id.* (noting that "[a]ny public interest in [material similar to the material at issue in this case] is likely to be minimal. While the public has an interest in the healthcare market in general, the public has a reduced interest in these type of internal and specific business strategies"). And, while the at-issue documents were attached to the parties' summary judgment motions, none of the documents were central to the merits of the motions or the Court's decision, which has already been issued.

Accordingly, the Marriott Defendants have endeavored to provide a highly circumscribed set of restrictions and redactions that fairly balance their interest in confidentiality and protection from competitive harm with the public's right of access. The Marriott Defendants submit that the public has a reduced interest in the wholesale disclosure of the 15 at-issue documents, and that the potential for competitive harm justifies their narrowly tailored restrictions.

## CONCLUSION

Accordingly, for the reasons set forth more fully above, the Marriott Defendants respectfully request that this Court permit the documents identified below to remain restricted on a Level 1 basis, as follows:

| 442-1 | The Marriott Defendants shall replace this document with an unrestricted version containing redactions on the following pages: 41-49, 51-70, 72-88, 279-81, 283-84, 355-65, 368-71, 376-81 |
|---|---|
| 442-2 | The Marriott Defendants shall replace this document with an unrestricted version containing redactions on pages 23-25 and 29- |

9

| | 32. |
|---|---|
| 442-3/462-4[4] | The Marriott Defendants shall replace these documents with an unrestricted version redacting only internal consumer survey information about MVC Points purchasers (Table 4 (p. 28), Figure 2, p.29), Table A1 (p. 93), Figure A1 (p. 94) and pricing discounts offered by MVC to sell points (Table 5 and 6 pp. 51-61)). |
| 444-23 | The Marriott Defendants shall replace this document with an unrestricted version redacting only the Members' email addresses and telephone numbers. |
| 444-24 | The Marriott Defendants shall replace this document with an unrestricted version redacting only the Members' email addresses and telephone numbers. |
| 445-4/483-3[5] | Maintained as restricted. |
| 444-11/483-1[6] | Maintained as restricted. |
| 444-25, -26, -27 and 28 | The Marriott Defendants shall replace these documents with an unrestricted version with only pages 2-6 redacted. |
| 445-3 | The Marriott Defendants shall replace this document with an unrestricted version with only pages 2-15 redacted. |
| 445-7 | Restriction maintained. |
| 445-9 | Restriction maintained. |
| 477-1 | Restriction maintained. |

Dated:  April 28, 2020

Respectfully submitted,

GREENBERG TRAURIG, LLP

By:   *s/ Ian S. Marx*
Philip R. Sellinger
Ian S. Marx
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
Tel: 973.360.7900 / Fax: 973.301.8410
Email:  SellingerP@gtlaw.com, MarxI@gtlaw.com

*Attorneys for the Marriott Defendants*

---

[4] 462-4 is a duplicate of 442-3 (Mark Israel Expert Report (Exhibit D to Motion to Exclude Expert Testimony of C. Dev, J. Simon and R. M. Robinson)).

[5] 483-3 is a nearly exact duplicate of 445-4 (APCO Survey Results (Exhibit 3 to the Confidential Declaration of Ian S. Marx in Support of RCMC's Opposition to Plaintiffs' Motion for PSJ)).

[6] 483-1 is a duplicate of 444-11 (May 24, 2012 CGC Memo (Exhibit 1 to the Confidential Declaration of Ian S. Marx in Support of RCMC's Opposition to Plaintiffs' Motion for PSJ)).

CERTIFICATE OF SERVICE

      I hereby certify that on this 28th day of April, 2020, a true and accurate copy of the foregoing **MARRIOTT DEFENDANTS' REPLY IN SUPPORT OF MOTION TO RESTRICT IN RESPONSE TO COURT ORDER (ECF # 562) DENYING IN PART AND GRANTING IN PART THE MARRIOTT DEFENDANTS' MOTIONS TO RESTRICT ACCESS (ECF #458, 484, 493, 502, 534)** was filed and served with the Clerk of the Court via CM/ECF filing system which will send notification to the following:

Michael J. Reiser
Law Office of Michael J. Reiser
1475 N Broadway, Suite 300
Walnut Creek, CA 94596
*Counsel for Plaintiffs*

Matthew C. Ferguson
The Matthew C. Ferguson Law Firm, P.C.
119 South Spring, Suite 201
Aspen, Colorado 81611
*Counsel for Plaintiffs*

Tyler R. Meade
The Meade Firm P.C.
1816 Fifth Street
Berkeley, CA 94710
*Counsel for Plaintiffs*

Linda Pham Lam
Michael Schrag
Gibbs Law Group LLP
505 14th Street, Suite 1100
Oakland, CA 94612
*Counsel for Plaintiffs*

                                                        *s/ Jaclyn DeMais*
                                                          Jaclyn DeMais