# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF COLORADO

Civil Action No. 1:16-cv-01301-PAB-GPG

**RCHFU, LLC, *et al.***

Plaintiffs,

v.

**MARRIOTT VACATIONS WORLDWIDE CORPORATION, *et al.***

Defendants.

_____

### PLAINTIFFS' INITIAL WITNESS LIST FOR FINAL PRETRIAL ORDER
_____

Plaintiffs,  by and through their undersigned counsel, submit the following list of witnesses pursuant to Fed.R.Civ.P. 26(a)(3)(A)(i) and (ii) and Fed. R. Civ. P. 26(a)(3)(B) who will or may be called to testify at the jury and bench trial of this matter, for inclusion in the Final Pretrial Order.

Plaintiffs make no representation at this time as to the order in which such witnesses will or may be called at trial.  Plaintiffs also reserve the right to call any witness listed on any of the Marriott Defendants' witness lists, including but not limited to any witnesses who may not actually be called at the time of trial by Plaintiffs in their case-in-chief.  Finally, Plaintiffs reserve the right to call any additional witnesses and as-of-yet unanticipated witnesses not otherwise listed herein as may be necessary for impeachment or on rebuttal in the trial.

PTO Exhibit "A"

## I.    PLAINTIFFS' NON-EXPERT WITNESSES

### A.    Will call:

| Name | Address | Short Statement Re Testimony[1] |
|---|---|---|
| Clair White | c/o Plaintiffs' Counsel | Plaintiff-owner of a fractional interest in a unit at the Ritz-Aspen. General facts concerning the marketing and sale of the fractional interest, payment of dues and governance of the club. Ownership and usage of the fractional. The importance of the location of Ritz-Aspen, and the brand name. Communications from the Marriott Defendants, including about the affiliation, the promised vote in April 2013, and various surveys sent to them. Communications from Babich, Cunningham, Weisz and others at MVW. Communications from the AHCA Board, RCHC, and RCMC. The Marriott-ization of the Ritz Clubs, the Affiliation and destruction of value, the loss of other RCDC clubs. All facts and topics in his/her deposition and as may be elicited at trial. The purpose is to establish the liability of the Marriott Defendants and damages Plaintiffs incurred. |
| Carol Hidalgo | c/o Plaintiffs' Counsel | Similar to Clair White |
| Tony Prinster | c/o Plaintiffs' Counsel | Similar to Clair White |
| Dennis Egidi | c/o Plaintiffs' Counsel | Similar to Clair White |
| Dennis Gable, M.D. | c/o Plaintiffs' Counsel | Similar to Clair White |
| *Edward P. Meyerson*[2] | c/o Plaintiffs' Counsel | Similar to Clair White |
| Randall Mercer | c/o Hogan Lovells US LLP 1601 Wewatta St. Suite 900 | Former AHCA president. His tenure on the board and the circumstances of his election and retention. The announcement of the evolution, and reengineering of the RCDC's. |

---

[1] Most witnesses were deposed and there is a record of their testimony. This is a general statement of the nature and purpose of the testimony of AHCA particular witness.

[2] The Marriott Defendants have reserved the right to depose the italicized witnesses in the Pretrial Order.

| | Denver, CO 80202 United States 303.899.7300 | AHCA board meetings, communications with other directors including Neveloff, trips to Orlando to meet with MVW executives, correspondence with MVW, including Sobeck and Cunningham. The Marriott Defendants' affiliation of the Ritz-Aspen with MVC, various communications within AHCA and with the Marriott Defendants and Marriott International, the reneging of the promised vote, damages to the Ritz-Aspen owners. His declaration concerning the 2013 Affiliation Agreement, including that the Marriott Defendants never gave the 2013 Affiliation Agreement to AHCA and had them sign the Joinder and Acknowledgement to the affiliation anyway. All facts and topics in his depositions and as may be elicited at trial. The purpose is to establish the liability of the Marriott Defendants and the damages Plaintiffs incurred.[3] |
| --- | --- | --- |
| **Tyler Oliver** | c/o Hogan Lovells US LLP 1601 Wewatta St. Suite 900 Denver, CO 80202 United States 303.899.7300 | Former AHCA director and officer. Will testify as to the Marriott Defendants' affiliation of the Ritz-Aspen with MVC, various communications within AHCA, as well as with the Marriott Defendants and Marriott International, the promised vote and reneging of that vote, and damages to Ritz-Aspen property values. He will testify consistent with his declaration concerning the Affiliation Agreement dated November 14, 2013, including that the Marriott Defendants never gave the 2013 Affiliation Agreement to AHCA and had them sign the Joinder and Acknowledgement to the agreement. All facts and topics in his depositions and as may be elicited at trial. The purpose is to establish the liability of the Marriott Defendants and damages Plaintiffs incurred. |
| **Philip Schneider** | c/o Hogan Lovells US LLP 1601 Wewatta St. Suite 900 | Former AHCA director and officer. Will testify as to the Marriott Defendants' affiliation of the Ritz-Aspen with MVC, various communications within AHCA, as |

---

[3] Plaintiffs incorporate by reference the summaries used by the Marriott Defendants for the same witnesses on their witness list.

| | | |
|---|---|---|
| | Denver, CO 80202 United States 303.899.7300 | well as with the Marriott Defendants and Marriott International, the promised vote and reneging of that vote, and damages to Ritz-Aspen property values. He will testify consistent with his declaration concerning the Affiliation Agreement dated November 14, 2013, including that the Marriott Defendants never gave the 2013 Affiliation Agreement to AHCA and had them sign the Joinder and Acknowledgement to the agreement. All facts and topics in his depositions and as may be elicited at trial. The purpose is to establish the liability of the Marriott Defendants and damages Plaintiffs incurred. |
| Richard Harris | c/o Hogan Lovells US LLP 1601 Wewatta St. Suite 900 Denver, CO 80202 United States 303.899.7300 | Former AHCA director and officer. Will testify as to the Marriott Defendants' affiliation of the Ritz-Aspen with MVC, various communications within AHCA, as well as with the Marriott Defendants and Marriott International, the promised vote and reneging of that vote, and damages to Ritz-Aspen property values. He will testify consistent with his declaration concerning the Affiliation Agreement dated November 14, 2013, including that the Marriott Defendants never gave the 2013 Affiliation Agreement to AHCA and had them sign the Joinder and Acknowledgement to the agreement. All facts and topics in his depositions and as may be elicited at trial. The purpose is to establish the liability of the Marriott Defendants and damages Plaintiffs incurred. |
| Stephanie Sobeck | c/o Defendants' Counsel | The Marriott Defendants have designated Ms. Sobeck as a Will Call witness. Plaintiffs thus reserve the right to and intend to call her as a witness, including in their case in chief. See summary below. |
| Mary Lynn Clark | c/o Defendants' Counsel | The Marriott Defendants have designated Ms. Clark as a Will Call witness. Plaintiffs thus reserve the right to and intend to call her as a witness, including in their case in chief. See summary below. |
| Stephen Weisz | c/o Defendants' Counsel | The Marriott Defendants have designated Mr. Weisz as a Will Call witness. Plaintiffs |

|  |  | thus reserve the right to and intend to call him as a witness, including in their case in chief. See summary below. |

**B.     May call:**

| Name | Address | Statement Re Testimony |
|---|---|---|
| **Alex Busansky/Jennifer Kaplan** | **c/o Plaintiffs' Counsel** | **See Clare White. Plaintiff-owner of a fractional interest in a unit at the Ritz-Aspen. General facts concerning the marketing and sale of the fractional interest, payment of dues and governance of the club. Ownership and usage of the fractional. The location of Ritz-Aspen, and the brand name. Communications from the Marriott Defendants, including about the affiliation, the promised vote in April 2013, and various surveys sent to them. Communications from Babich, Cunningham, Weisz and others at MVW. Communications from the AHCA Board, RCHC, and RCMC. The Marriott-ization of the Ritz Clubs, the destruction of value, the loss of clubs and the money they spent on the brand Ritz-Carlton.     Affiliation and the impacts on value to the interest. All facts and topics in his/her deposition and as may be elicited at trial. The purpose is to establish the liability of the Marriott Defendants and damages Plaintiffs incurred.** |
| ***Larry Koppelman[4]*** | **c/o Plaintiffs' Counsel** | **Similar to above.** |
| ***Lisa Mottola*** | **c/o Plaintiffs' Counsel** | **Similar to above.** |
| **Jacob Slevin** | **c/o Plaintiffs' Counsel** | **Similar to above.** |
| **Charlotte Buchanan** | **c/o Plaintiffs' Counsel** | **Similar to above.** |
| **Ed Zelnick** | **c/o Plaintiffs' Counsel** | **Similar to above.** |
| **Dee Nowell** | **c/o Plaintiffs' Counsel** | **Similar to above.** |
| **Pat Lattore** | **c/o Plaintiffs' Counsel** | **Similar to above.** |
| ***David Schaecter*** | **c/o Plaintiffs' Counsel** | **Similar to above.** |
| ***Melissa Crowley*** | **c/o Plaintiffs' Counsel[5]** | **Similar to above.** |

[4] The Marriott Defendants have reserved the right to depose the italicized witnesses in the Pretrial Order.

[5] If Court rulings require more Plaintiffs to testify, they reserve their right to supplement this list.

| | | |
|---|---|---|
| **Plaintiffs reserve the right to call any live any witness that the Marriott Defendants call by deposition.** | **c/o Plaintiffs' Counsel** | |
| **Greg Jacobson** | **c/o Hogan Lovells US LLP**<br>**1601 Wewatta St.**<br>**Suite 900**<br>**Denver, CO 80202**<br>**United States**<br>**303.899.7300** | **Former Plaintiff- current owner of a fractional interest in a unit at the Ritz-Aspen. ACHA Board Member. General facts concerning the marketing and sale of the fractional interest, payment of dues and governance of the club. Ownership and usage of the fractional. The location of Ritz-Aspen, and the brand name. Communications from the Marriott Defendants, including about the affiliation, the promised vote in April 2013, and various surveys sent to them. Communications from Babich, Cunningham, Weisz and others at MVW. Communications from the AHCA Board, RCHC, and RCMC. The Marriott-ization of the Ritz Clubs, the destruction of value, the loss of clubs and the money they spent on the brand Ritz-Carlton.  Governance of the Ritz-Aspen. Affiliation and the impacts on value to the interest. All facts and topics in his/her deposition and as may be elicited at trial. The purpose is to establish the liability of the Marriott Defendants and damages Plaintiffs incurred.** |
| **Juan Pablo Cappello** | **PAG.LAW**<br>**400 NW 20th Street**<br>**Miami Fl 33127**<br>**786.292.1599** | **RCDC Owner. Former Greenberg Traurig partner in Miami. Wrote letter to Lee Cunningham on August 26, 2012. His letter provided notice of Defendants' breaches of fiduciary duty and objections to the "Evolution Letters" from July and August 2012 on re-engineering the RCDC's. He pointed out that Cunningham was dishonest in his communications and that MVW alone stood to gain by the evolution/affiliation. All facts and topics in his depositions and as may be elicited at trial. The purpose is to establish the liability of the** |

| | | |
|---|---|---|
| | | Marriott Defendants and damages Plaintiffs incurred. |
| **Lee Cunningham** | **c/o Defense Counsel** | **1. Executive Vice President & Chief Operating Officer Marriott Vacations Worldwide Corporation;** <br> **2. Executive Vice President & Chief Operating Officer of the "Ritz-Carlton Destination Club"** <br> **3. Vice President of Lion & Crown Company** <br> **4. Vice President at Cobalt. Acted as MVW COO and an officer or manager of various Marriott Defendant entities, which are alter egos of one another, and which conspired and aided and abetted breaches of fiduciary duty to Plaintiffs and committed constructive fraud. Development of the RCDC, the selection and building of the Ritz-Aspen and its location. With the Corporate Growth Committee, Cunningham orchestrated re-engineering of RCDC after MVW's spin-off from Marriott International and the so-called "Evolution" of the RCDC beginning in late 2011. Author of letters on the evolution that Plaintiffs received. Promised in April 2013 that there would be no affiliation unless a majority of members entitled to voted to affiliate; but then, when MVW knew it would lose that vote, created cover for the affiliation with a biased, non-binding survey. The affiliation agreement dated November 14, 2013, and the requirement that it be acknowledged and joined by Ritz-Aspen's owners' association. Aware of the halo effect of the luxury brand name Ritz-Carlton, which was used by MVW to increase MVC points sales. AHCA Meetings with Weisz and Mullenix/Perfido. Meetings in Orlando with Mercer. He with other officers, including Weisz, Stephanie Sobeck, Lani Kane-Hanan caused breaches of fiduciary duties to Plaintiffs. All facts and topics in his depositions and as may** |

| | | |
|---|---|---|
| | | be elicited at trial. The purpose is to establish the liability of the Marriott Defendants and the damages Plaintiffs incurred. |
| **Nick DiMeglio** | **c/o Defense Counsel** | **General Manager of the Ritz-Aspen. Employee of Marriott International, Inc. / Ritz-Carlton Hotel Company, LLC. Involved in communications with Marriott International and John Hearns, who oversees management of RCDC's and licensing of Ritz-Carlton brand. Aware of the halo effect of the luxury brand name Ritz-Carlton, which was used by MVW to increase MVC points sales. Involved in meetings about the promised vote on affiliation, and communications between MVW and AHCA board. Aware of Ritz-Aspen usage by MVC members and complaints by owners of loss of exclusivity. AHCA Sales and diminished value of fractional interest at the Ritz-Aspen. All facts and topics in his depositions and as may be elicited at trial. Knowledgeable about annual dues that Plaintiffs pay for being owners.** |
| **Christopher Donaldson** | **Newmark Knight Frank 376 East 400 South, Suite 120 Salt Lake City, UT 84111 801.746.4750** | **An MAI with Cushman Wakefield. Former Director of Valuation and Advisory of the Utah Office, Cushman & Wakefield. Signed appraisals of an MVW related trust owning fractional interests in 4 different Ritz-Carlton clubs, including Aspen. Will testify (as limited by a Court *in limine* order on the Cushman and Wakefield appraisal) about work done for MVW and his knowledge of fractional projects, including the market for private residence clubs. Aware of the halo effect of the luxury brand name Ritz-Carlton, which was used by MVW to increase MVC points sales. Informed MVW that the affiliation and access MVC members were getting to the Ritz-Aspen were harmful to property values at the Ritz-Aspen. The purpose is to establish the** |

| | | liability of the Marriott Defendants and damages Plaintiffs incurred. |
|---|---|---|
| Philip A. Gosch | Brownstein Hyatt Farber Schreck, 410 Seventeenth Street, Denver, Colorado 80202-4432 Phone: 303.223.1100 | Counsel for Aspen Highlands Condominium Association ("AHCA"). Wrote November 21, 2012 cease and desist letter to Marriott Vacation Worldwide Corporation, The Ritz Carlton Management Company, LLC, Cobalt Travel Company, LLC and the Ritz Carlton Development Company, LLC. Provided notice of the breaches of fiduciary duty  and objections to the affiliation as announced in the "Evolution Letters" from July and August 2012. Governing documents for the Ritz-Aspen, and the analysis that led to the cease and desist letter. Re-engineering of RCDC's. All facts and topics in his depositions and as may be elicited at trial. The purpose is to establish the liability of the Marriott Defendants and damages incurred by Plaintiffs. |
| Tyler Oliver | c/o Hogan Lovells US LLP 1601 Wewatta St. Suite 900 Denver, CO 80202 United States 303.899.7300 | See above. |
| Philip Schneider | c/o Hogan Lovells US LLP 1601 Wewatta St. Suite 900 Denver, CO 80202 United States 303.899.7300 | See above. |
| Stephanie Sobeck | c/o Defense Counsel | Vice President Asset Management, East & Caribbean. Formerly MVW Vice President of Asset Management, overseeing RCDC's including the Ritz-Aspen. Worked with AHCA Boards and governance. Controlled flow of communications to AHCA and RCDC members.  Worked on behalf of various Marriott Defendant entities, which are |

| | | |
|---|---|---|
| | | alter egos of one another. With Cunningham, she implemented re-engineering of RCDC after MVW's spin-off from Marriott International as well as the evolution of the RCDC beginning in late 2011. Communicated with AHCA and received cease and desist letter from Gosch in 2012. With Cunningham, promised a majority member vote in April 2013 and then reneged on that vote when she realized the members would vote against the affiliation. Proceeded with affiliation in order to benefit MVW's business of selling MVC points, at Plaintiffs' expense. Involved in the drafting of the November 14, 2013 Affiliation Agreement and failed to give it to AHCA. Later admitted to her counterpart that association boards had the authority to prevent the affiliation, which is contrary to Marriott Defendants' assertions. itself. Sobeck withheld APCO survey and focus group date data and findings from AHCA and RCDC members. AHCA She with other officers, including Cunningham, Weisz, and Lani Kane-Hanan caused breaches of fiduciary duties to Plaintiffs. AHCA. All facts and topics in her depositions and as may be elicited at trial. The purpose is to establish the liability of the Marriott Defendants and damages Plaintiffs incurred. |
| **Richard Hayward** | **c/o Defense Counsel** | Senior Vice President Vacation Ownership. Formerly MVW Vice President of Asset Management overseeing western RCDC's, including the Ritz-Aspen. Handled marketing and sale of MVC points and products. Knowledgeable about governance and management of the Ritz-Aspen by MVW entities, including RCMC. Evolution of the brand and re-engineering of the RCDC. Licensing agreements between the MVW Defendants and Marriott |

|  |  | International, Inc. He was told by Sobeck that the ultimate decision to affiliate belonged to the RCDC Association boards, e.g. AHCA. The purpose is to establish the liability of the Marriott Defendants and damages Plaintiffs incurred. |
|---|---|---|
| **Michael Mullenix** | **Equis Hospitality Management, LLC 1401 S. Brentwood Blvd, Suite 675 St. Louis, MO 63144 314. 932 .3209** | **Chief Executive Officer & Founder of Equis Hotels, LLC. Former president of the Association board at RCDC Beaver Creek.  Will testify as to the Marriott Defendants' early efforts at affiliation of the Ritz-Aspen with MVC, various communications within AHCA and with the Marriott Defendants, including meetings Mullenix had with CEO Weisz and COO Cunningham. Knowledgeable about the promised vote and biased survey in place of the vote. Communicated with Randy Mercer and others on the Ritz-Aspen board around time of promised vote. Oversaw Beaver Creek board's concern and pushback on the affiliation. Held a board vote and then a member vote that resulted in cessation of the management contract with RCHC and RCMC and subsequent de-flagging of Beaver Creek as a RCDC. All facts and topics in his depositions and as may be elicited at trial. The purpose is to establish the liability of the Marriott Defendants and damages Plaintiffs incurred.** |
| **Richard Ragatz** | **Ragatz Associates 767 Willamette Street, Suite 307 Eugene, Oregon 97401 541.686.9335** | **PRC, destination club and luxury fractional industry consultant will testify that Aspen is a relevant and stable market for PRC's. The content of his annual reports. The purpose is to establish the liability of the Marriott Defendants and the damage suffered by Plaintiffs.** |

C.      Deposition:

The pages and lines of the pertinent portions of the deposition testimony will be disclosed, pursuant to Rule II(E)(2) of Judge Brimmer's Practice Standards, 45 days before trial, or as might otherwise be agreed upon or ordered.

| Name | Address | Statement Re Testimony |
|---|---|---|
| Eveleen Babich | c/o Defense Counsel | 1.MVW Vice President, Asset Management of the "Ritz-Carlton Destination Club"; 2. General Manager of Member Services for the Marriott Vacation Club Destination Club. The letter on the "evolution" of the RCDC line was sent out with Babich's signature as "Manager" of Cobalt. She was aware of Ritz-Aspen members' concerns about affiliating with the MVC. Spoke to Sobeck about APCO Survey and the effort to suppress its findings from the AHCA board and Plaintiffs. All facts and topics in her deposition and as may be elicited at trial. The purpose is to establish the liability of the Marriott Defendants and damages Plaintiffs incurred. |
| Juan Pablo Cappello | PAG.LAW 400 NW 20th Street Miami Fl 33127 786.292.1599 | See above. |
| Mary Lynn Clark | c/o Defense Counsel | Former MVW Senior Vice President. Worked with AHCA Board, including with Jay Neveloff. Worked on behalf Corporate Growth Committee and various Marriott Defendant entities, which are alter egos of one another. With Cunningham and Sobeck, she worked on re-engineering of RCDC after MVW spun-off from Marriott International. Worked with Cunningham and Sobeck, who promised a member vote in April 2013. Proceeded with affiliation in order to benefit MVW's business of selling MVC points at expense of Plaintiffs. All facts and topics in his depositions and as may be elicited at trial. Worked with APCO on RCDC focus groups which exposed very negative reaction to affiliation. All facts and topics in her depositions and as may be elicited at trial. The purpose is to establish |

| | | the liability of the Marriott Defendants and damages Plaintiffs incurred. |
|---|---|---|
| Lee Cunningham | c/o Defense Counsel | See Above. |
| William Dalbec | APCO Worldwide 1299 Pennsylvania Avenue, NW Suite 300 Washington, DC, 20004 United States 202.778.1000 | APCO Worldwide and APCO Insight Executive. Retained by MVW for litigation support for Hawaii cases. Then retained to conduct a member survey about the affiliation. Results were very negative as to affiliation and show a majority of RCDC owners opposed any affiliation with MVC. Report on the survey was another reason that Cunningham and Sobeck reneged on promised vote. Also ran member focus groups that showed strong opposition to the affiliation. APCO assisted in the promised vote in April 5, 2013 and assisted in drafting communications with members. Work on the December 2013 rigged survey. All facts and topics in his depositions and as may be elicited at trial. The purpose is to establish the liability of the Marriott Defendants and damages Plaintiffs incurred. |
| Robert Harris | c/o Hogan Lovells US LLP 1601 Wewatta St. Suite 900 Denver, CO 80202 United States 303.899.7300 | See above. |
| Richard Hayward | c/o Defense Counsel | See above. |
| John Hearns | c/o Defense Counsel | Senior Vice President Global Residential Operations  Marriott International, Inc. – oversees Ritz-Carlton Hotel Company, LLC, which co-manages the Ritz-Aspen. Oversees management of RCDC's under contract and licensed with Ritz-Carlton brand and interfaces with MVW and the Ritz-Carlton Management Company, LLC. Involved in upholding brand standards and thus is aware of the halo effect of the luxury brand name Ritz-Carlton, which was used by MVW to increase MVC points sales. Involved in meetings with AHCAAHCA and MVW executives, including Sobeck and Hayward.  Aware of MVW's promised vote on affiliation, and the communications |

| | | |
|---|---|---|
| | | **between MVW and AHCA board. Aware of usage by MVC and complaints by owners of loss of exclusivity of their club. Sales and diminished value of fractional interest in the units. All facts and topics in his depositions and as may be elicited at trial. The purpose is to establish the liability of the Marriott Defendants and damages Plaintiffs incurred.** |
| **Lani Kane-Hanan** | **c/o Defense Counsel** | **Lani Kane-Hanan was a Senior VP of Feasibility and Planning at MVW, responsible for development and growth activities for MVW. She was a member of the Strategic Council and Corporate Growth Committees that organized luxury segment reengineering. She was aware of member opposition to the affiliation. She will testify about MVW's decision to re-engineer the Ritz-Carlton line and to focus instead on MVC sales. See discussions Weisz and Cunningham. All facts and topics in her depositions and as may be elicited at trial. The purpose is to establish the Marriott Defendants' liability and Plaintiffs' damages.** |
| **Michael Marino, Esq.** | **Seyfarth Shaw LLP 620 Eighth Avenue \| New York, New York 10018-1405 212.218.5505 \|** | **Attorney in NYC practicing labor law. Owner on RCDC fractional interest at St. Thomas property. Involved in governance issues there. Tapped by Mercer to review a Memorandum of Understanding dealing with aspects of affiliation in early 2014. Attended relevant some AHCA board meetings, meetings about the promised vote. Will testify that the 2013 Affiliation Agreement was never provided by Barbara Egolf or Stephanie Sobeck. All facts and topics in his depositions and as may be elicited at trial. The purpose is to establish the liability of the Marriott Defendants and damages Plaintiffs incurred.** |
| **Michael Mullenix** | **Equis Hospitality Management, LLC 1401 S. Brentwood Blvd, Suite 675 St. Louis, MO 63144 314. 932 .3209** | **See above.** |

| Jay Neveloff | c/o Hogan Lovells US LLP 1601 Wewatta St. Suite 900 Denver, CO 80202 United States 303.899.7300 Or Kramer Levin Naftalis & Frankel LLP 1177 Avenue of the Americas New York, NY 10036 212.715.9290 | Former AHCA director and president. Will testify as to the Marriott Defendants' early efforts at affiliating the Ritz-Aspen with MVC, various communications between AHCA and the Marriott Defendants and Marriott International, the promised vote and subsequent reneging on the vote. Will testify about AHCA board concern and pushback on the affiliation. Re-engineering of the brand and evolution letters. Cappello letter and retention of counsel. Worked on board that hired Colorado counsel to demand that MVW cease and desist from the affiliation and put the Marriott Defendants on notice of breaches of fiduciary duty. Communications with Mercer about MVW and MVW's failure to be forthright in the December 2013 survey. Damage to value of Plaintiffs' fractional interests. All facts and topics in his depositions and as may be elicited at trial. The purpose is to establish the liability of the Marriott Defendants and damages Plaintiffs incurred. |
|---|---|---|
| Urcil Peters | c/o Defense Counsel | Vice President of Customer Insights at Marriott Vacations Worldwide. Focuses on research and surveys on customer satisfaction and perceptions. Will testify about a survey MVW provided to individuals who saw sales presentations for MVC memberships. The survey results show that the ability to stay at Ritz-Carlton properties was a feature that was important to many MVC points purchasers. |
| Benjamin Pierce | c/o Defense Counsel | Vice President at Marriott Vacations Worldwide Corporation (Feasibility, Acquisition, Development). Will testify about MVW liquidating the trust that held RCDC interests, as well as retaining an appraiser to put a value on those interests. |
| Nick Rossi | c/o Greenberg Traurig | Senior Vice President Global Inventory and Revenue Management, Marriott Vacations Worldwide. He will testify regarding occupancy and usage of RCDC inventory by MVC members, the NATO trust, and through exchanges of Lion & Crown and |

| | | |
|---|---|---|
| | | rentals by members. He will also testify about Corporate Growth Meetings. |
| Stephanie Sobeck | c/o Defense Counsel | See above. |
| Nicole Verrechia | Morrow Soladi 509 Madison Avenue, Suite 1206 New York, NY 10022, USA 212.300.2470 | From Morrow Soladi - a vendor that assisted MVW with RCDC Association governance matters and ran elections for the Association boards. Retained by Sobeck's asset management team at MVW to run an actual vote of the members as promised. Testimony relative to the substitution of a survey and efforts by Sobeck, Cunningham and others to conflate a vote with a survey. Oversaw the survey in December 2013. All facts and topics in her deposition and as may be elicited at trial. The purpose is to establish the liability of the Marriott Defendants and damages Plaintiffs incurred. |
| Stephen Weisz | c/o Defense Counsel | MVW CEO. President of the Ritz-Carlton Development Company, the developer of the Ritz-Aspen. Mr. Weisz was the signatory of the "Sponsor's Certification" in the New York Offering Plan for the Ritz-Aspen, showing that from the project's inception, he held himself out as being a principal with hands-on responsibility for developing and operating the Ritz-Aspen. Business of MVW, including the sale of MVC points, and the management of properties. Will testify about MVW's decision to stop developing the RCDC line. Worked with Cunningham, orchestrated or approved re-engineering of RCDC after spin-off from Marriott International. Participated with Cunningham as co-presenter in a webinar in which he explained to Ritz-Aspen owners why MVW was abandoning its luxury Ritz-Carlton segment. His COO promised a member vote in April 2013 and then MVW reneged on that vote. Aware of the halo effect of the luxury brand name Ritz-Carlton, which was used by MVW to increase MVC points sales. All facts and topics in his depositions and as may be elicited at trial. The purpose is to establish |

| | | the liability of the Marriott Defendants and damages Plaintiffs incurred. |
|---|---|---|
| **Plaintiffs' Deposed by the Marriott Defendants**<br>i. Jeffrey Bayer<br>ii. Michael Bornstein<br>iii. Paul Brunswick<br>iv. Charlotte Buchanan<br>v. Monica Campanella<br>vi. Kevin Clare<br>vii. Jennifer Colson<br>viii. Toby Cone<br>ix. Perry Cox<br>x. Richard Davis<br>xi. Dennis Egidi<br>xii. Fred Friedman<br>xiii. Thomas Friermood<br>xiv. Dennis Gable<br>xv. Ronald Glazer<br>xvi. Frank Greico<br>xvii. Carol Hidalgo<br>xviii. Greg Jacobson<br>xix. Annette Kalcheim<br>xx. Jennifer Kaplan<br>xxi. Pat Lattore<br>xxii. Jeremy Lowell<br>xxiii. Lori Jagoda Lowell<br>xxiv. Vladimir Malakhov<br>xxv. Carol McCluer<br>xxvi. John McEvoy<br>xxvii. Lisa Miller<br>xxviii. Dee Nowell<br>xxix. Michael Pacin<br>xxx. Anthony Prinster<br>xxxi. Thomas Prose<br>xxxii. John Rubin<br>xxxiii. Joel Schneider | **c/o Plaintiffs' Counsel** | **Plaintiff-owners of a fractional interest in a unit at the Ritz-Aspen. General facts concerning the marketing and sale of the fractional interest, payment of dues and governance of the club. Ownership and usage of the fractional. The importance of the location of Ritz-Aspen, and the brand name. Communications from the Marriott Defendants, including about the affiliation, the promise vote in April 2013, and various surveys sent to them. Communications from Babich, Cunningham, Weisz and others at MVW. Communications from the AHCA Board, RCHC, and RCMC. The Marriott-ization of the Ritz Clubs, the Affiliation and destruction of value, the loss of other RCDC clubs. All facts and topics in his/her deposition and as may be elicited at trial. The purpose is to establish the liability of the Marriott Defendants and damages Plaintiffs incurred.** |

| | | |
|---|---|---|
| **xxxiv. John Schultz**<br>**xxxv. Robert Sklar**<br>**xxxvi. Jacob Slevin**<br>**xxxvii. Heyward Taylor**<br>**xxxviii. William Waxman**<br>**xxxix. Stephen Weinstein**<br>**xl. Clair White**<br>**xli. Edward Zelnick**<br>**xlii. Jack Zemer** | | |

## II.    PLAINTIFFS' EXPERT WITNESSES

### D.    Will call:

| | | |
|---|---|---|
| **Maurice Robinson** | **c/o Plaintiffs' Counsel** | **Robinson will provide testimony and offer opinions as expressed in his report and deposition and will also rebut testimony offered by defense experts such as Alan Tantleff and Mark Dunec.**<br><br>**Robinson will offer opinions as to the diminution in value damages that resulted from Defendants' breach of fiduciary duty (including aiding and abetting the Association's breach) and constructive fraud in connection with affiliating the Ritz-Aspen with MVC. As is typical with damages experts, Robinson assumes that Plaintiffs will establish liability on their breach of fiduciary duty, constructive fraud and other claims, and that these breaches were substantial factors in causing property values at the Ritz-Aspen to be significantly lower than they would have been absent Defendants' unlawful actions. He will explain his methodology for estimating these calculations and why it is reliable and accurate.**<br><br>**Specifically, Robinson will explain that he used a comparative sales methodology (similar to models he has used in dozens of real estate cases) to estimate Plaintiffs'** |

| | | |
|---|---|---|
| | | **diminution in value damages. He analyzed available sales data at the Ritz-Aspen and at five other comparable high-end fractional interest developments: St. Regis Residence Club, Dancing Bear, the Timbers Club at Snowmass, the Residences at Little Nell, and the Hyatt Grand Residence Club in Aspen. Robinson will testify that this set of comparable properties is an appropriate and reliable "comp set."**<br><br>**Robinson will explain that to calculate diminution in value damages, he subtracted the actual or average sales price per square foot at the Ritz-Aspen from the "But For" price per square foot (what the price would have been absent the challenged conduct, estimated from the analysis of sales data at the comparable properties), and then multiplying that difference by the average square footage per unit, and then by the total number of Plaintiffs' units.**<br><br>**The table below shows the estimate of damages assuming (consistent with the Court's motion in limine rulings) that the start date for the damage's calculations in August 1, 2012 (just after Defendants announced their plan to affiliate MVC with Ritz Aspen).  Based on when the reports were done, the total diminution in value damages for all plaintiffs through October 30, 2018 (including prejudgment interest), are $24,698,208. Robinson will likely update this calculation before the trial.** [6] |
| **Chekitan Dev, Ph.D.** | **c/o Plaintiffs' Counsel** | **Professor Dev is a professor at the Cornell University School of Hotel Administration and an expert in hospitality branding. He will provide testimony and offer opinions as expressed in his report and deposition and will also rebut testimony offered by defense experts such as Alan Tantleff, Mark Israel,** |

---

[6] Most all witnesses were deposed and thus there is a record of their testimony. This is a general statement of the nature and purpose of the testimony of a particular witness.  The short summary is not exhaustive and not intended to be.

| | | |
|---|---|---|
| | | **and Ceridwyn King.**<br><br>**The following is a summary of Professor Dev's expected testimony:**<br><br>**1.      Professor Dev will offer opinions at trial based both on his experience and specialized knowledge in hospitality branding, independent of his work as a retained expert in this case and a review of the evidence and testimony. Professor Dev will explain the well-known concepts in his field of expertise: the "halo effect" and the "horn effect." The halo effect is the positive impact that co-mingling a less prestigious brand with a more prestigious brand can have on the former. Conversely, the horn effect is the negative impact that this same affiliation can have on the more prestigious brand. Professor Dev will testify that the affiliation provided a halo effect for MVC and a horn effect for Plaintiffs' property.**<br>**2.      Professor Dev's halo effect opinion is based on the fact that by co-mingling and affiliating the Ritz-Aspen (along with other RCDCs) with MVC, Marriott benefits because it can market its MVC points program by telling prospective buyers that MVC members may now access the more luxurious and "exclusive" RCDCs.**<br>**3.      Professor Dev will testify that, given the distinct luxury status of the Ritz-Carlton brand, the co-branding and the affiliation with MVC that allowed access by MVC points-based customers to RCDC blurred the distinction between the two brands. This blurring of the brands benefitted Marriott but has diluted and tarnished the value attached to the RCDCs, consequently harming Plaintiffs (horn effect).**<br>**4.      Based on evidence he reviewed (including surveys and focus groups commissioned by Defendants and executed by APCO, a reliable survey company) and his extensive work in and knowledge of the hospitality industry generally and Marriott** |

| | | |
|---|---|---|
| | | in particular, Professor Dev will opine that Defendants are sophisticated about brand management and familiar with the halo and horn effects, and thus would have known of the consequences—both the harm to the value of Plaintiffs' interests and the benefits to MVC—of marketing access to RCDC to MVC members through the MVC—Ritz-Aspen affiliation.<br><br>5.    Finally, Professor Dev will testify that the survey data offers empirical proof supporting his halo and horn effect opinions. Specifically, Professor Dev will explain that the survey reliably approximates a controlled experiment to test whether marketing access to RCDC makes a potential MVC points purchaser more likely to buy MVC points. He will testify that the survey results show that compared to the group who did not recall access to RCDC being addressed at an MVC points sales presentation, more than twice as many sales prospects who reported being satisfied with the RCDC access feature following the sales presentation purchased points. |
| Jon Simon | c/o Plaintiffs' Counsel | Simon is an expert in the fractional ownership industry. He will provide testimony and offer opinions as expressed in his report and deposition and will also rebut testimony offered by defense experts such as Alan Tantleff and Mark Israel.<br><br>The following is a summary of Simon's expected testimony:<br><br>1.    While the fractional industry has undergone challenges over the years, due in large part to the Great Recession, Simon, along with other industry experts, believes that fractionals and private residence clubs remain viable products, especially in high-value real estate markets like Aspen, Colorado. There continues to be additional phases and new fractional projects in |

Aspen. He will also testify that since 2012, the market for fractionals has largely stabilized in terms of national revenues, albeit at lower levels than the market's historical high before the Great Recession.

2.     Based on his experience in the vacation ownership/private residence club industry, Simon will testify that when a corporation provides and markets access to one of its luxury private residence clubs to non-owners at a much lower price of entry than what owners in that private residence club paid, as is the case with the affiliation between Ritz-Aspen and MVC, the values of ownership interests in that club significantly decline. This is because potential purchasers on the secondary market would be far less willing to pay a high entry price for 28 nights plus annual maintenance fees and taxes to own a fractional unit in a purportedly private residence club if they could gain access to the same club for a fraction of that price, with significantly lower purchase requirements and maintenance fees.

3.     Thus, Simon will testify that if Plaintiffs prove that the affiliation allowed MVC members permanent access to the Ritz-Aspen for a fraction of what Plaintiffs and other Ritz-Aspen owners paid, this would be a substantial factor in causing the value of Plaintiffs' fractional interests to decline and/or not increase in value in comparison with similar properties. In addition, any diminution in value is a result of what is known in this industry—and explained by another expert, Professor Dev—as the horn effect, the converse of the halo effect. In other words, Simon will testify that the marketing of the two brands together is also a substantial factor in causing Plaintiffs' fractional interests to have diminished values.

4.     Simon will also testify about the ill-gotten benefits Defendants reaped from the affiliation. Simon will opine that when a

luxury brand is integrated with a lower-end brand, the lower-end brand's value increases due to a so-called halo effect. Based on his own knowledge and experience in this industry, his review of documents and testimony in this action, and the expert opinion of Professor Chekitan Dev, Simon will testify that through the affiliation, the Marriott Defendants achieved a halo effect on the MVC brand by providing MVC members access to the Ritz-Aspen, a property that was far more exclusive and deluxe than any MVC resort. By providing that access, the Marriott Defendants were able to increase the price of each MVC point they sold – thus profiting from the actions that Plaintiffs claim wrongful.

5.      Based on his experience in the industry, familiarity with vacation ownership branding, general finance expertise, and Marriott's financial records, Simon will testify as to how he estimated the profits that the Marriott Defendants have made from the halo effect. Starting from the enterprise value approach, Simon will testify that he calculated what MVW made specifically from the portion of its price increases on its MVC points that, based on evidence he reviewed, arose from providing MVC members with access to Ritz-Carlton Destination Clubs (including Ritz clubs in locations other than Aspen) through the affiliation. These calculations show that MVW has already profited approximately $234.32 million from affiliating MVC with Ritz-Carlton Destination Clubs from January 2013 through the end of 2017. He then calculated the halo effect profit specifically attributable to Plaintiffs' fractional interests at the Ritz-Aspen to be 13.87% of this amount, or approximately $32.49 million. This calculation accounts for increases in the price of MVC points that MVW enjoyed from affiliating MVC with the Ritz-Aspen and marketing access to the Ritz-Aspen to MVC members. Next, using

|  |  | **well-accepted finance principles, Simon calculated the profits that MVC will continue to make going forward as a result of the co-branding and affiliation. This capitalized amount is $506 million system-wide, of which Simon's model attributes $70.15 million to Plaintiffs' fractional interests. Based on these calculations, the total amount MVW earned and will earn from marketing RCDC to MVC points purchasers is $740.2 million. The portion of this amount attributable to Plaintiffs in this action is 13.87% or $102.6 million, the amount subject to disgorgement.** |
|--|--|--|

Dated: May 8, 2020                                        Respectfully submitted,

REISER LAW, P.C.                                         THE MATTHEW C. FERGUSON LAW FIRM, P.C.

_____/s/ Michael J. Reiser_____          _____/s/ Matthew C. Ferguson_____
Michael J. Reiser, # 16161                              Matthew C. Ferguson, #25687
1475 N. Broadway, Suite 300                          119 South Spring, Suite 201
Walnut Creek, CA 94596                               Aspen, Colorado 81611
Telephone: (925) 256-0400                            Telephone: (970) 925-6288
E-mail: michael@reiserlaw.com                       E-mail: matt@matthewfergusonlaw.com


GIBBS LAW GROUP, LLP                             THE MEADE LAW FIRM, P.C.

___/s/ Michael Schrag_____          ____/s/ Tyler Meade_____
Michael Schrag (CA State Bar # 185832)        Tyler Meade (CA State Bar # 160838)
Linda Lam (CA State Bar# 301461)               12 Funston Ave., Suite A
505 14th Street, Suite 1110                            San Francisco, CA 94129
Oakland, CA 94612                                      Telephone: (415) 724-9600
Telephone: (510) 350-9718                            E-mail: tyler@meadefirm.com
E-mail: mls@classlawgroup.com
E-mail: lpl@classlawgroup.com

                                                              *Attorneys for Plaintiffs*

4826-8103-0332, v. 1