IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 16-01301 PAB

RCHFU, LLC, et al.

      Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE
CORPORATION, et al.

      Defendants.

_____

**DEFENDANTS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT DISMISSING ALL CLAIMS FOR LACK OF CAUSATION**
_____

Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, L.L.C., The Cobalt Travel Company, LLC, and The Lion & Crown Travel Co., LLC hereby move for leave to file a supplemental motion for summary judgment on all Plaintiffs' claims on the grounds that, as a matter of law, the Court's June 1, 2020 Order precluding Plaintiffs' experts, Chekitan Dev and Jonathan Simon, from opining on causation (ECF #583) ("*Daubert* Order") has rendered Plaintiffs unable to establish the causation element of their claims.

### CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(a), before making this motion, Defendants' counsel conferred with Plaintiffs' counsel and made a reasonable and good faith effort to resolve this dispute. Specifically, on June 22, 2020, Defendants' counsel had a telephone conference with Plaintiffs' counsel to discuss the factual and legal bases for this motion, and Plaintiffs' counsel refused to agree to the relief sought by Defendants and said Plaintiffs would oppose the motion.

### INTRODUCTION

In compliance with the Scheduling Orders' July 29, 2019, deadline for dispositive motions,

1

Plaintiffs and Defendants both filed partial summary judgment motions, which the Court denied by order dated March 20, 2020 (ECF #563). Defendants did not seek summary judgment on causation in their earlier motion because Plaintiffs had served expert reports opining on causation and damages; therefore, the issue was not ripe at that time. However, on August 12, 2019, Defendants timely filed a motion to exclude testimony of Plaintiffs' experts (ECF # 460). The issue of "causation" is now ripe as a result of the Court's June 1, 2020, *Daubert* Order (ECF #583), which precludes Plaintiffs' experts, Jonathan Simon and Chekitan Dev, from testifying concerning any supposed "halo" and "horn" effects. In other words, they are precluded from opining on causation, i.e., the linkage between the MVC Affiliation and the alleged diminution in value and unjust enrichment. Each of Plaintiffs' claims requires proof of causation, and causation in this case cannot be established without expert testimony, which Plaintiffs do not have. Granting Defendants summary judgment on causation would effectively end the case, thus sparing the Court and the parties the burden and expense of a needless trial. Accordingly, Defendants should be permitted to move for summary judgment solely on the issue of causation.

## FACTUAL BACKGROUND

On June 1, 2020, the Court resolved Defendants' *Daubert* motion, which sought to preclude the testimony of Plaintiffs' experts. Specifically:

- The Court excluded Jonathan Simon's report and opinions in their entirety. Simon had proposed to testify concerning the alleged "halo" and "horn" effects of the affiliation between The Ritz-Carlton Destinations Club ("RCDC") and Marriott Vacation Club Destinations Exchange Program ("MVCD"), and Plaintiffs had relied upon Simon's testimony to establish causation for both compensatory damages (loss of value) and their unjust enrichment claim, as well as to quantify the supposed "halo" profits that Plaintiffs alleged should be disgorged under their unjust enrichment claim. *Daubert* Order (ECF #583) at 12-18.

2

- The Court excluded Chekitan Dev's report and opinions on the "halo" and "horn" effects of the affiliation between RCDC and MVCD, which Plaintiffs had also relied upon to establish causation for both compensatory damages (loss of value) and their unjust enrichment claim. *Id.* at 6-12.

As a result of these rulings, Plaintiffs have no expert testimony on causation of compensatory (loss of value) damages or of unjust enrichment. And as to Plaintiffs' unjust enrichment claim, even if causation (i.e., the existence of unjust enrichment) could be assumed, the Court's exclusion of Simon's testimony on a supposed "halo" effect renders Plaintiffs unable to establish the amount of unjust enrichment.

In addition to moving to preclude Simon and Dev, Defendants had also moved to preclude the testimony of a third expert, Maurice Robinson. The Court denied Defendants' *Daubert* motion with respect to Robinson; however, the Court limited its ruling to Defendants' challenge to Robinson's methodology for calculating compensatory (loss of value) damages. *See id.* at 19 ("[The Court] limits its analysis to defendants' challenges to Mr. Robinson's valuation method."); *see also id.* (noting that holding is limited to "one specific challenge to Mr. Robinson's opinions [concerning] Mr. Robinson's 'valuation method'"). The Court's *Daubert* Order does not address the issue of causation with respect to Robinson.

Nor could it have done so, as Robinson makes clear in his report that he did not opine on causation. Rather, Robinson expressly states that he relied on Plaintiffs' other experts, Dev and Simon, to establish causation and that he *assumed* liability would be established and that Defendants' actions were a material contributing factor in the loss of value of Plaintiffs' interests:

> In rendering my opinions, I **assume** that Plaintiffs will establish liability, which I understand to be a breach of fiduciary duties, constructive fraud and other unlawful conduct, and that these breaches were substantial factors in causing the property values at the subject Property to be significantly lower than they would have been

3

absent Defendants' unlawful actions. **While it is the role of the other Plaintiff experts, such as Jon Simon and Dr. Chekitan Dev, to opine on whether these wrongful acts were a substantial factor in causing values at the Property to be lower than they otherwise would be, it is my task to use a reliable and well-accepted methodology to quantify the associated lost value of the Plaintiffs' Interests.** For this purpose, I have undertaken a comparative analysis of the sales and resales of the Comp Set, as discussed in detail below….

Robinson Corrected Amended Report at 7-8 (emphasis added).[1]

Likewise at his deposition, Robinson testified repeatedly that he was relying completely on Simon's and Dev's opinions on causation and was not himself opining on that subject:

> Q. And if you turn to page 6, the bottom paragraph, it says, "In rendering my opinions I assume that plaintiffs will establish liability," and then it goes on after a clause, quote, "And that these breaches were substantial factors in causing the property values of the subject property to be significantly lower," unquote. Do you see that?
> A. Yes.
> \*\*\*
> Q. [W]hat I'm trying to get you to make clear is that the conclusion that the defendants' behavior were substantial factors in property diminution was an assumption that you made, correct?
> A. Yes.
> Q. And you relied on Mr. Dev and Mr. Simon for those assumptions, correct?
> A. Yes.
> Q. You did no independent analysis on your own to conclude that the actions of the defendants were substantial factors in causing property value to go down, correct?
> A. Correct.
> Q. You did nothing to verify that the actions of the defendants or the Marriott affiliation was a substantial factor in causing property values to go down, correct?
> A. Correct.
> Q. You're a licensed real estate appraiser, right?
> A. Yes, I have two licenses. I drive a car and I have a real estate appraiser license.
> Q. Simon and Dev are not licensed real estate appraisers?
> A. Correct.
> Q. You, the licensed real estate appraiser, relied on two non-licensed real estate appraisers for the conclusion, as you quote, that the breaches of Marriott, the affiliation and other conduct were substantial factors in causing the property values to be significantly lower, correct?
> A. Yes.
> Q. So let's move on. Let me ask you the question this way: Why did you rely on the opinions of Mr. Dev and Mr. Simon for the affiliation and the actions of defendants

---

[1] Robinson's Corrected Amended Report dated June 17, 2019 (his last report) is annexed as Exhibit A to the accompanying Declaration of Ian Marx dated June 22, 2020 ("Marx Declaration").

4

> being substantial factors in causing the valuation to fall?
>
> A. Because it wasn't a part of my assignment to actually search for the liability. I'm not a liability opiner or expert here, so part of the instructions or assumptions with or without any particular experts are that the sales price has dropped, measure it, and that's what I did.

June 18, 2019 Deposition of Maurice Robinson ("Robinson Dep.," Marx Decl. Ex. B), at 10:9-15:20.

> Q. Well, what was your basis for assuming, as you said on page 6, that the breaches were substantial factors in causing the property value to decline and that other experts, Simon and Dev, were going to opine on that subject?
>
> A. Basically instruction of the assignment. The lawyer said there's two experts that will be opining on liability; you just do the math between the sales prices.

*Id.*, Tr. 28:20-29:3.[2]

> Q. And why is it that you do not rely on Cushman & Wakefield?
> A. I don't need to. I made an assumption. I did not really come to a conclusion on causality. The assumption was if the defendants' actions caused this, then the defendants, you know, caused the problem.
> Q. You made no conclusion on causality?
> A. Correct.
> Q. You made no conclusion that the action of the defendants, the affiliation, caused the property value to go down, correct?
> A. Correct.

*Id.* at 87:2-13.

Having simply *assumed* causation based on Simon's and Dev's opinions, Robinson confirmed that he did not attempt to isolate the supposed impact of the affiliation from any other factor that could have affected the price of Plaintiffs' fractional interests:

> Q. But your model does not isolate actions of the defendants that could have affected price from any other external factor that could have affected price?

---

[2] Similarly, Plaintiff's expert, Jon Simon, confirmed that Maurice Robinson relied on Simon's opinion on causation:

> Q. Now, comparing the prices for the Ritz at Aspen and others -- you didn't do that; correct?
> A. Maurice Robinson did most of that comparison, with my consultation.
> Q. Right. But that assumed that there was causation -- he assumed that there was causation in making that analysis; isn't that correct?
> A. Maurice relied on my opinion on causation.

July 17, 2019 Deposition of Jon Simon ("Simon Dep.," Marx Decl. Ex. C), at 36:6-14.

5

> A. Exactly.
> Q. And your model does not isolate the impact of the affiliation on price from any other actions of the defendants that might have affected price?
> A. Correct.
> Q. Your model doesn't isolate whether Marriott members' access to the Ritz before the affiliation played a larger role than access after the affiliation for example, correct? ***
> A. Right. It does not isolate.
> Q. It doesn't isolate any factors at all?
> A. Correct.
> Q. And there's no allocation among any of the factors that might have affected the price of Ritz, whether those factors were related to the affiliation, whether they were caused by the defendants unrelated to the affiliation or completely unrelated to defendants, correct?
> A. Correct.

*Id.* at 99:22-100:20.

> Q. So you don't attribute the change in sales value that your report addresses to any particular factor?
> A. Correct.
> Q. …. All your report does is it quantifies the change in sales value over periods of time?
> A. Sales price, yes.
> Q. Sales price. and whatever factors may have contributed to that change in sales price, you are not opining on?
> A. Correct.

*Id*. at 102:2-11.

> Q. And your lost sales analysis doesn't evaluate whether any alleged negative impact on sales was due to rentals through a combination of rentals and Marriott member access or neither, correct?
> A. Correct.

*Id.* at 104:3-7.

Consistent with the description of Robinson's opinions and proposed testimony given in his report and reiterated by him at his deposition, the limited scope of Robinson's opinions was confirmed by Plaintiffs in the Final Pretrial Order, which, by its terms, "control[s] the subsequent course of this action":

> Robinson assumes that Plaintiffs will establish liability on their breach of fiduciary duty, constructive fraud and other claims, and that these breaches were substantial factors in causing property values at the Ritz-Aspen to be significantly lower than they would have been absent Defendants' unlawful actions.

6

Final Pretrial Order, Exhibit A (ECF #576-1), Plaintiffs' Witness List at 18.

In short, the only experts who opined as to causation for Plaintiffs were Dev and Simon, and their opinions have been excluded.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Plaintiffs seek compensatory damages of diminution in value of their factional interests in RC Aspen allegedly arising from and caused by the affiliation between RCDC and MVCD. *Id.* at 21, 22, 23, 24.

2. Plaintiffs seek disgorgement of unjust enrichment profits allegedly realized by defendants allegedly caused by and arising from the affiliation between RCDC and MVCD. *Id.* at 21, 22, 23, 24.

3. The Court excluded Plaintiffs' expert, Jonathan Simon, who Plaintiffs had relied upon to testify on the "halo" and "horn" effect to establish causation for both compensatory damages (loss of value) and their unjust enrichment claim, and the calculation of unjust enrichment profits allegedly realized by defendants. *Daubert* Order dated June 1, 2020 (ECF #583), at 12-18.

4. The Court excluded Plaintiffs' expert, Chekitan Dev, from testifying on the "halo" and "horn" effect which Plaintiffs had also relied upon to establish causation for both compensatory damages (loss of value) and their unjust enrichment claim. *Id.* at 6-12.

5. Plaintiffs' only other expert, Maurice Robinson, in calculating the difference in value between fractional interests at RC Aspen and fractional interests at other fractional interests resorts in and near Aspen, did not offer an opinion or testimony on causation of diminution in value as allegedly caused by the affiliation, but, rather, *assumed* such causation and relied on the now-excluded testimony of Simon and Dev to establish such causation.

Robinson Report at 7-8; Robinson Dep. at 10:9-15:20; 28:20-29:3; 87:2-13; 99:22-100:20; 102:2-11; 104:3-7; Simon Dep. at. 36:6-14; Final Pretrial Order, Plaintiffs' Witness List (ECF #576-1), at 18.

## ARGUMENT

I. **THE INTERESTS OF JUSTICE AND JUDICIAL ECONOMY WOULD BE SERVED BY ALLOWING A SUPPLEMENTAL SUMMARY JUDGMENT MOTION THAT, IF GRANTED, WOULD EFFECTIVELY END THE ENTIRE CASE**

Defendants are mindful of the July 29, 2019, deadline for filing motions for summary judgment set forth in the Court's earlier Scheduling Orders. In light of the Court's recent *Daubert* Order, however, Defendants respectfully contend that good cause exists to depart from this deadline. *See generally Gorsuch Ltd. v. Wells Fargo Nat'l Bank Ass'n,* 771 F.3d 1230, 1240 (10th Cir. 2014) (finding Fed. R. Civ. P. 16(b)'s "good cause" standard for permitting actions after expiration of deadline in scheduling order is satisfied where party has acted diligently and has learned new information or the underlying facts or law has changed).

A district court has discretion to alter the time for filing a summary judgment motion as well as the number of such motions that may be filed. Fed. R. Civ. P. 56(b). Thus, a court may permit a second summary judgment motion in the interests of justice and judicial economy, "especially when the factual record has been expanded or amplified" (*Toney v. Ability Ins. Co.*, 2011 U.S. Dist. LEXIS 107178, at *3 (D.S.C. Sept. 21, 2011)), or where "'good reasons exist' to grant the motion." *Hency v. St. Clair Cnty.*, 2019 U.S. Dist. 195117, at *8 (E.D. Mich. Nov. 10, 2019) (quoting *Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir. 1995)). Courts have permitted additional summary judgment motions where doing so would "not burden the court or the parties" and "may in fact 'save the time and expense of an unnecessary trial.'" *Bartolowits v. Wells Fargo Bank, N.A.*, 2016 U.S. Dist. LEXIS 156080, at *6 (N.D. Tex. Nov. 10, 2016); *accord, Home Depot*

8

*U.S.A., Inc. v. National Fire Ins. Co. of Hartford*, 2007 U.S. Dist. LEXIS 46922, at *2 (N.D. Tex. June 27, 2007).

Allowing Defendants to file an additional summary judgment motion in this case is appropriate and satisfies all the factors considered by the courts in the above-cited cases. First, Defendants have acted promptly in requesting this motion, since a basis for it did not exist until the Court issued its *Daubert* Order on June 1, 2020, which left Plaintiffs with no expert testimony on causation. The motion Defendants seek to file is further appropriate because: (1) it will be limited in scope; (2) it will address only the essential element of causation; and (3) given the lack of an imminent trial (scheduled for January 18, 2021), it will not prejudice Plaintiffs.

Most importantly, the proposed motion could serve the interests of judicial economy. Because causation is an essential element of all of Plaintiffs' claims and Plaintiffs cannot prove causation, granting the motion would result in the entire case being dismissed. Not only would that save the parties from having to expend money and resources on a trial at which Plaintiffs could not prove their claims, but it would also save the Court from having to plow through pretrial submissions and then devote ten days to a trial whose outcome should be a foregone conclusion.[3]

## II.     THE PROPOSED MOTION IS MERITORIOUS

As a general matter, it is up to the court to "determine whether expert testimony is required to prove causation and damages." *Sonrisa Holding, LLC v. Circle K Stores, Inc.*, 2019 U.S. Dist. LEXIS 99867, at *21 (D. Colo. June 12, 2019) (citing *Truck Ins. Exch. v. MagneTek, Inc.*, 360 F.3d 1206, 1214 (10th Cir. 2004)). Where diminution in value to real property interests is alleged,

---

[3] As noted, the exclusion of Simon's and Dev's testimonies on the "halo" effect leaves Plaintiffs with no expert testimony to establish causation (the existence) of unjust enrichment, nor do they have any way to establish the amount of unjust enrichment even if causation/existence were assumed.

9

however, expert testimony is required. *See James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1216 (10th Cir. 2011) (holding that determining diminution in value to real property requires "technical or specialized knowledge" that is "outside the category of lay opinion [under Rule 701(c)]").

Determining whether an alleged diminution in value of real property arose from outside causes is likewise "beyond the common knowledge and experience of a juror [such that] expert testimony is necessary." *Sonrisa Holding*, at *21. For example, in *Sonrisa*, to support their claim of diminution in value to real property due to environmental contamination, plaintiff sought to rely on the fact of the contamination itself and on plaintiff's lay testimony as to pre- and post-contamination value, including a documented decrease in value due to required payments made to an Environmental Escrow fund. Although these were obvious facts that lay jurors could understand, the court held that expert testimony was required to show a linkage between the contamination and the alleged diminution in value. In other words, the court found that expert testimony was required to show causation. *Id.; see also Hall v. Conoco Inc.*, 886 F.3d 1308, 1317 (10th Cir. 2018) (holding that causation issues "lie outside the ken of common experience, requiring expert testimony"); *Lowery v. City of Albuquerque*, No. 09-0457 JB/WDS, 2012 U.S. Dist. LEXIS 55502, 2012 WL 1378522, at *21 (D.N.M. Apr. 9, 2012) (when an issue of causation "is not within the realm of ordinary experience [plaintiffs need] expert testimony" (citing *Hollander v. Sandoz Pharms. Corp.*, 289 F.3d 1193, 1214 (10th Cir. 2002)); *Cary v. Auto. Ins. Co.*, 838 F. Supp. 2d 1117, 1122 (D. Colo. 2011) (declaring that "subjects that are beyond the typical knowledge and experience of a lay juror" require expert testimony).

Similarly instructive are Tenth Circuit and other cases dealing with causation in the context of securities fraud. In such cases, courts hold that, even though the jury can understand the

underlying facts (e.g., facts showing a temporal relationship between public disclosures and stock price decreases), showing a linkage between the allegedly wrongful act and the stock price decrease (i.e., showing causation) is not within the common knowledge and experience of lay jurors and, thus, requires expert testimony.  A leading case in this area, *In re Williams Sec. Litig.*, 496 F. Supp. 2d 1195, 1294-95 (N.D. Okla. 2007), *aff'd,* 558 F.3d 1130, 1143 (10th Cir. 2009), illustrates the point.  In *Williams,* the facts showed that four corrective statements (correcting prior misrepresentations) over the course of 18 months were each immediately followed by very large decreases in the issuer's stock price (and a lowering of its credit rating), totaling a 99% decrease over the course of 18 months; and the evidence further demonstrated that the decreases in the stock prices were a substantial deviation from the stock movements of other companies in the same industry and the stock market in general.  Plaintiffs argued that, even without an expert on causation, given the evidence, a lay jury could find that the losses were the result of the misrepresentations and the corrective disclosures. Notwithstanding the timing of the price decreases that followed each corrective statement, the substantial size of the price decreases, and the inconsistent stock movements when compared to industry participants and the stock market generally, the district court held that "aside from the excluded expert testimony [on causation] plaintiffs have failed to present evidence sufficient to raise a triable issue as to loss causation"; that "'[a]n inflated purchase price will not itself constitute or proximately cause the relevant economic loss'"; and that "[the] record provides no basis upon which a finder of fact could reasonably determine . . . that plaintiffs' claimed losses were caused by defendants' alleged misrepresentations or omissions and not by 'changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, condition, or other events . . .'" *Id.*  The court held that, having "excluded [the] expert testimony [it] follows that plaintiffs cannot satisfy their burden of

establishing the fact of damages [and] summary judgment should consequently be granted in favor of all defendants." *Id.* at 1294-95.

In affirming the *Williams* decision, the Tenth Circuit rejected plaintiffs' argument that, even without expert testimony on causation, "the jury could have reasonably . . . found that the losses were a result of either the leakage of the truth or the revelations made in the four corrective disclosures":

> These conclusions … would be no less speculative and unreliable if reached by jurors than when reached by [the expert]. The fatal flaw still remains, which is that Plaintiffs have failed to present evidence suggesting that the declines in price were the result of the revelation of the truth and not some other factor. [Thus], there is "simply no way for a juror to determine whether the alleged fraud caused any portion of Plaintiffs' loss.".… As Plaintiffs are unable to meet their burden…we find that the district court appropriately granted the defendants summary judgment on the issue of loss causation.

558 F.3d at 1143 (citations omitted).

Other securities fraud cases also hold that "the testimony of an expert [must be produced to show that] the claimed losses are the result of the alleged fraud." *In re BankAtlantic Bancorp, Sec. Litig.*, No. 07-61542-CIV, 2011 U.S. Dist. LEXIS 48057, at *70 (S.D. Fla. Apr. 25, 2011) (despite internal emails showing defendants' awareness of significant risks of substantial loan losses not disclosed to stockholders, and even though the plaintiffs had a causation expert, the court entered judgment for defendants as a matter of law because the expert failed to distinguish between the effect of the nondisclosures and other potential causes of the stock price decline); *Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997) (reversing trial court's denial of defendants' motion for judgment as a matter of law, finding causation expert was required even though the evidence established a fraudulent misrepresentation of the company's cash flow that required a $100 million downward adjustment to its balance sheet and a stock decline from $18.25 per share to $8.20 per share).

12

Here, Plaintiffs allege that their fractional (real property) interests suffered a diminution in value due to the MVC Affiliation. As the foregoing cases demonstrate, causation cannot be determined by a jury in this case. To the contrary, establishing a nexus between the MVC Affiliation and the diminution in value that Plaintiffs allege would require a causation expert with specialized knowledge of branding, real estate, and luxury fractional interests. Plaintiffs have no such expert as a result of this Court's Daubert rulings excluding the testimony of Simon and Dev to this effect. Accordingly, Defendants should be granted leave to move for summary judgment on causation.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that they be granted leave to file a supplemental motion for summary judgment on causation.

Dated: June 22, 2020

Respectfully submitted,

GREENBERG TRAURIG, LLP

By: *s/ Philip R. Sellinger*
    Philip R. Sellinger
    Ian S. Marx
    Roger B. Kaplan
    500 Campus Drive, Suite 400
    Florham Park, New Jersey 07932
    Tel: 973.360.7900 / Fax: 973.301.8410
    Email: SellingerP@gtlaw.com
           MarxI@gtlaw.com
           KaplanR@gtlaw.com

Naomi G. Beer
GREENBERG TRAURIG, LLP
1144 15th Street, Suite 3300
Denver, CO 80202
(303) 572-6549
Email: beern@gtlaw.com

*Attorneys for Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton*

*Management Company, L.L.C., The Cobalt Travel Company, LLC, and The Lion & Crown Travel Co., LLC*

14

# CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of June 2020, a true and accurate copy of the foregoing **DEFENDANTS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT DISMISSING ALL CLAIMS FOR LACK OF CAUSATION** was filed and served with the Clerk of the Court via CM/ECF filing system, which will send notification to the following:

Michael J. Reiser
Law Office of Michael J. Reiser
1475 N Broadway, Suite 300
Walnut Creek, CA 94596
*Counsel for Plaintiffs*

Matthew C. Ferguson
The Matthew C. Ferguson Law Firm, P.C.
119 South Spring, Suite 201
Aspen, Colorado 81611
*Counsel for Plaintiffs*

Tyler R. Meade
The Meade Firm P.C.
1816 Fifth Street
Berkeley, CA 94710
*Counsel for Plaintiffs*

Linda Pham Lam
Michael Schrag
Gibbs Law Group LLP
505 14th Street, Suite 1100
Oakland, CA 94612
*Counsel for Plaintiffs*

*s/ Jaclyn DeMais*
Jaclyn DeMais