IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 16-01301 PAB

RCHFU, LLC, et al.

    Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE
CORPORATION, et al.

    Defendants.

_____

**DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF MOTION FOR LEAVE TO FILE SUPPLEMENTAL SUMMARY JUDGMENT MOTION**
_____

Plaintiffs offer no valid reason why Defendants' motion for leave to file a supplemental motion for summary judgment (ECF #584) should not be granted.

### I. DEFENDANTS HAVE SHOWN GOOD CAUSE

In their moving brief, Defendants showed that they have good cause for filing a supplemental summary judgment motion on causation at this point given how significantly the Court's June 1, 2020 Order excluding Plaintiffs' proposed causation experts, Chekitan Dev and Jonathan Simon, changed the factual and legal landscape of this case. (ECF #584 at 8-9). Significantly, Plaintiffs do not, and cannot, dispute that such a motion would serve the interests of justice and judicial economy and would not prejudice any party.[1] Instead, they claim that Defendants have long been "aware of" potential causation-based grounds for summary judgment and, therefore, should have moved for summary judgment on causation earlier in the case. (ECF #585 at 2-3).

---

[1] Defendants do not "seek further delay" of the trial, as Plaintiffs contend. (ECF #585 at 2). Defendants' proposed motion can be fully briefed and resolved prior to the January 19, 2021 trial date.

That would, of course, have been impossible. So long as the expert opinions of Dev and Simon on causation remained in the case (i.e., until the Court issued its June 1, 2020 *Daubert* ruling), Defendants could not have claimed entitlement to judgment as a matter of law due to lack of evidence of causation. It would simply have been a matter of Plaintiffs' experts versus Defendants' experts, and summary judgment cannot be sought or granted under those circumstances. *See United States v. St. Clair*, 2014 U.S. Dist. LEXIS 23610, at *10-*11 (D. Colo. Feb. 25, 2014) (denying summary judgment where parties' experts offered conflicting opinions); *Smith v. Government Employees' Ins. Co.*, 2012 U.S. Dist. LEXIS 49768, at *11-*12 (D. Colo. May 19, 2010) (denying summary judgment where expert offered opinion that insurer violated industry standards); *Sperberg & Assocs. v. MHW Props.*, 2005 U.S. Dist. LEXIS 62149, at *14 (D. Colo. July 25, 2005) (denying summary judgment where parties' experts offered conflicting opinions on standard of care).

Ignoring this obvious fact, Plaintiffs insist that Defendants should have moved for summary judgment on causation as part of their July 29, 2019 motion for partial summary judgment, citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (noting that, in *Kumho Tire,* "defendants filed a *Daubert* motion and an 'accompanying motion for summary judgment'"). (ECF #585 at 3). Plaintiffs misread *Kumho Tire*. In that case, defendant filed both a *Daubert* motion and a summary judgment motion based on a single case-dispositive issue. *Id*. at 145. *Kumho Tire* does not hold or even suggest that parties generally should file simultaneous *Daubert* and summary judgment motions. Nor would it have been possible to do that in a case like this. Unlike the single-issue, binary-outcome *Daubert* motion filed in *Kumho Tire*, Defendants' August 12, 2019 *Daubert* motion (ECF #460) challenged many aspects of Plaintiffs' expert reports, including: (1) Dev's "halo" effect opinion; (2) Dev's "horn" effect opinion; (3) Simon's "halo"

2

effect opinion; (4) Simon's "horn" effect opinion; (5) Simon's calculation methodology of "halo" profits; (6) Robinson's methodology for calculating the value of Plaintiffs' fractional interests compared to other fractional interest properties; and (7) Simon's and Robinson's inclusion of pre-2015 (pre-MVC Affiliation) calculations. When they filed their motion, Defendants could not have known how the Court would rule on it, how the Court's rulings might interrelate with each other, or how they would affect a summary judgment motion. Post-*Daubert* summary judgment motions are permitted under circumstances like these. *See Ford Motor Co. v. Versata Software, Inc.*, 2018 U.S. Dist. LEXIS 124218, at *7 (E.D. Mich. July 25, 2018) (granting leave to file second summary judgment motion following *Daubert* ruling excluding expert); *American Tourmaline Fields v. International Paper Co.*, 1999 U.S. Dist. LEXIS 13153, at *4 (N.D. Tex. Aug. 19, 1999) (granting leave to file summary judgment motion following *Daubert* ruling excluding opinions of damages expert). The Court should permit such a motion here.

## II. PLAINTIFFS' MERIT-RELATED ARGUMENTS ARE SPECIOUS

### A. Plaintiffs Did Not Seek to Assert, and Cannot Now Assert, a Damage or Disgorgement Claim Based on Annual Management Fees

In their zeal to find an issue as to which expert testimony is not needed, Plaintiffs have jettisoned the expert damage theories on which they have relied for the past five years of litigation in favor of hypothetical damage theories never before raised. For example, Plaintiffs argue that causation-related expert testimony is not needed to establish the management fees paid to Defendant Ritz-Carlton Management Company, L.L.C. ("RC Management"), that they now claim to be seeking as damages and/or as part of a disgorgement remedy. (ECF #585 at 1, 9, 13 & n.1). But Plaintiffs did not identify the recovery of management fees as an item of damages or part of a remedy in the May 13, 2020 Final Pretrial Order ("PTO"). (ECF #578). That omission is crucial because, by its terms, the PTO "*control[s] the subsequent course of this action and the trial*," and

3

"*[t]he pleadings will be deemed merged herein.*" PTO §12 at 55 (emphasis added); *see also Wilson v. Mukala*, 303 F.3d 1207, 1215 (10th Cir. 2002) ("[C]laims, issues, defenses, or theories of damages not included in the pretrial order are waived *even if they appeared in the complaint.*" (emphasis added)). Plaintiffs' omission cannot be explained away as an oversight. In the PTO, they described in detail the precise nature of each of their five claims as well as the specific supporting facts and underlying theories that they would present at trial to prove each such claim. PTO § 3(A) ("Claims and Defenses") at 2-24. Nowhere in their comprehensive 22-page exposition did Plaintiffs mention an intention to seek, as damages or remedy, any portion of the management fees paid to RC Management over the years. Nor did the detailed descriptions of the testimonies of Plaintiffs' 44 fact witnesses and three damage experts mention management fees as being an element of recovery. *See* PTO Ex. A (ECF #578-1) at 1-17 and 18-24; *cf. McCammond v. Schwan's Home Serv., Inc.*, 2011 U.S. Dist. LEXIS 92012, at *8 (D. Colo. Aug. 17, 2011) ("The purpose of the final pretrial order is to put the other party on notice of which . . . theories of the case and/or defenses a party intends to pursue at trial"). The Court should, therefore, reject Plaintiffs' attempt to use the recovery of management fees as an example of damages for which an expert is not needed.

### B. Plaintiffs Offer No Valid Support for Their Assertion That Causation of Lost Value Can Be Established through Lay Opinion

Plaintiffs do not, and cannot, dispute that Robinson's report and deposition testimony make clear that he was *assuming* causation of lost value from the MVC Affiliation; that he was *relying exclusively on Dev and Simon* to establish such causation; and that he simply *calculates* what the values of the fractionals at The Ritz-Carlton Club, Aspen Highlands ("RCC, Aspen") would have been (i) *if* causation is established, and (ii) *if* the RCC, Aspen fractional values had moved in tandem with the average of his five comparison properties. *See* ECF #584 at 3-7.

4

Recognizing the disastrous effect these statements have on their case now that Dev and Simon have been excluded, Plaintiffs have done a complete about-face. Contrary to their prior statements and expert reports, Plaintiffs now take the legally unsupportable position that experts are not needed to establish causation in connection with loss of real property values. Not surprisingly, they cannot meaningfully distinguish Defendants' dispositive Tenth Circuit authority addressing causation and real property values (ECF # 584 at 9-10)[2] or the leading Tenth Circuit decision on loss causation, which the Court's *Daubert* decision also cites. *Id.* at 11-12; *see also* (ECF #583 at 14).[3]

And Plaintiffs do not even address Fed. R. Evid. 701, which requires that, to be admissible, lay opinion must (i) be "rationally based on the witness's *perception*" and (ii) "*not based on* scientific, technical, or other *specialized knowledge within the scope of Rule 702.*" (emphases added). Plaintiffs' attempt to rely on their own lay opinions violates both prongs of Rule 701. First, Plaintiffs' opinions are based, not on their "*perception,*" but merely on their subjective beliefs or speculation. Their opinions also fall directly within the scope of Rule 702's "*specialized*

---

[2] *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1216 (10th Cir. 2011) (causation of diminution in value to real property interests "based on technical or specialized knowledge . . . is excluded from the category of lay opinion under Rule 701(c)" and requires expert testimony); *Sonrisa Holding, LLC v. Circle K Stores, Inc.*, Civil Action No. 17-cv-00029-STV, 2019 U.S. Dist. LEXIS 99867, at *21 (D. Colo. June 12, 2019) (when causation of diminution in value of real property is claimed to arise from outside influences, such issues are "beyond the common knowledge and experience of a juror [and] expert testimony is necessary") (citing *Truck Ins. Exch. v. MagneTek, Inc.*, 360 F.3d 1206, 1214 (10th Cir. 2004)); *Hall v. Conoco Inc.*, 886 F.3d 1308, 1317 (10th Cir. 2018) (same); *Lowery v. City of Albuquerque*, No. 09-0457 JB/WDS, 2012 U.S. Dist. LEXIS 55502, 2012 WL 1378522, at *21 (D.N.M. Apr. 9, 2012) (when issue of causation "is not within the realm of ordinary experience [plaintiffs need] expert testimony" to demonstrate causation); *Cary v. Auto. Ins. Co.*, 838 F. Supp. 2d 1117, 1122 (D. Colo. 2011) (such "subjects that are beyond the typical knowledge and experience of a lay juror" require expert testimony).

[3] *In re Williams Sec. Litig.*, 496 F. Supp. 2d 1195, 1294-95 (N.D. Okla. 2007), *aff'd,* 558 F.3d 1130 (10th Cir. 2009) (declaring that lay testimony "would be no less speculative and unreliable if reached by jurors than when reached by [the excluded expert]").

*knowledge*" in that they seek to assess the *intangible effect* of (i) the claimed association or co-branding of the Marriott Brand with the Ritz-Carlton Brand, and (ii) the MVC Affiliation on hypothetical purchasers' desires to purchase RCC, Aspen fractionals.[4]  Tellingly, when Defendants asked questions on these topics at Plaintiffs' depositions, Plaintiffs' counsel objected on the ground that expert testimony was required:

> Q. Do you believe that factor is relevant to the difference in resale value?
> MR. REISER: Objection to form. Calls for expert testimony. . . .
>      *       *       *
> Q. What did you think the reason for the resale value being not what you would hope it would be in 2017 when you discussed potentially selling it?
> MR. REISER: Objection to form.
> MR. MARX: What's the basis for the objection? I'm asking the question what he thought.
> MR. REISER: It calls for expert testimony. Calls for a legal conclusion.
> MS. MARTINEZ: You're asking him to speculate. . . .
>      *       *       *
> Q. How do you think the defendant actions here have harmed your fractional interest in the Aspen resort?
> MR.REISER: Objection to form. Calls for legal conclusion. Calls for expert testimony. Improper contention question.

*See* Dennis Egidi Dep. Tr. 37:23-38:1; 55:2-12; 94:11-16, attached as Ex. E to the Kaplan Decl.

Plaintiffs also cite cases that are either inapposite or support Defendants' position, including:

- *Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1204 (10th Cir. 2002) (ECF # 585 at 4). In a medical products liability case, court held that "a plaintiff must introduce expert testimony if 'the fact in issue is not within the realm of ordinary experience of mankind' . . . [and] the alleged effect of [the at-issue drug] is not within the realm of ordinary experience."
- *Loughridge v. Chiles Power Supply Co.*, 431 F.3d 1268, 1281 (10th Cir. 2005) (ECF # 585 at 5). Court held that a 12-year owner of a home was qualified to testify regarding the loss

---

[4] For example, Plaintiff Jacob Slevin testified that: "I have my own thought on that. I couldn't tell you . . . I have thoughts on why I think it's gone down." (Dep. Tr. 107:20-108:2); Plaintiff Joel Schneider testified that his views on causation are just his own "subjective beliefs." (Dep. Tr. 66:12-15); Plaintiff Carol Hidalgo testified that she "can't speculate" as to the impact of Defendants' actions "on the value of [her] fractional interests[.]" (Dep. Tr. 122:4-9); Plaintiff Tony Prinster testified that, other than what brokers may have told him, it would be "speculation on [his] part" -- "On my part, for sure." (Dep. Tr. 167:6-8). *See* July 27, 2020 Declaration of Roger B. Kaplan ("Kaplan Decl."), Exhibits A-D.

6

of value from a defective heating system but not as to causation of the loss *on which plaintiff had an expert*; court further held that the testimony of the plaintiff *and the expert* was sufficient because "the jury was free to make the reasonable inference that the purchase price of [plaintiff's] home was diminished."[5]

- *Truck Ins. Exch. v. MagneTek, Inc.*, 360 F.3d 1206, 1214-15 (10th Cir. 2004) (ECF #585 at 4).  In a products liability case, court held that *the fact* "[of] defect in a product" could be inferred by a jury, *but not causation*, and that "*without the excluded expert testimony* a jury could not reasonably make the necessary inference that the ballast caused the fire." (Emphasis added).

- *Weir v. Fed. Ins. Co.*, 811 F.2d 1387, 1392 (10th Cir. 1987) (ECF #585 at 4).  In a products liability case, court held that "[t]he inference of a defect is permissible whenever the plaintiff has introduced evidence that would exclude other causes" (which Plaintiffs have not done here).

- *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071 (D. Colo. 2006) (ECF #585 at 7).  Court merely held that a sales comparison could "support" plaintiff's expert's opinion, which covered both valuation *and* causation of lost value from leaks from a nuclear weapons plant, contained "an analysis of real property in the Class Area to determine if Class property had been impacted by [the nuclear site] and, if so, to what extent," and used five methodologies to determine causation.[6]

- *Oliver v. Amity Mut. Irrigation Co.*, 994 P.2d 495 (Colo. App. 1999) (ECF #585 at 8).  On claim that defendant's irrigation ditch spilled onto plaintiff's property, plaintiff was permitted to present testimony *based on perceptions* "of witnesses who were acquainted with conditions of the ditch and of the south bank, as well as with the circumstances leading up

---

[5] The *Loughridge* court relied on *United States v. 10,031.98 Acres of Land*, 850 F.2d 634, 636-37 (10th Cir. 1988), for the general proposition that an owner of land "may testify as to its value" (*as opposed to loss causation*); however, "there must be a basis for the landowner's valuation [as] the landowner's testimony alone is insufficient[.]" *Id.* (emphasis added).

[6] Plaintiffs also incorrectly cite *Eads v. Dearing*, 874 P.2d 474 (Colo. App. 1993), and *Pioneer Ctrs. Holding Co. ESOP & Tr. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1335 (10th Cir. 2017), for the proposition that the burden of proof shifts to a fiduciary to prove a breach did not cause a loss. (ECF #585 at 10). In fact, these cases hold that "the burden of proof never shifts" (*Eads*, 847 P. 2d at 477); the only burden-shifting that occurs is the burden to come forward with evidence, and that applies only to *the breach itself – not to damages or causation*. *Id.*

to the break."

- *Mueller v. Swift*, No. 2017 WL 2362137, at *1 (D. Colo. May 31, 2017) (ECF #585 at 4). On plaintiff's claim that defendant Taylor Swift's allegation that he had groped her caused him to lose his broadcasting contract, court held that "a reasonable jury could find that Defendants' [statements] caused [broadcaster] to breach or not perform [the] contract."

### C. Plaintiffs Cannot Assert a Claim for Disgorgement Based on Marriott Vacations Worldwide Corporation's *Gross Enterprise-Wide Profits*

Plaintiffs continue their quest to identify an issue as to which expert testimony is unnecessary by arguing that, for their disgorgement claim, they only need to introduce Marriott Vacations Worldwide Corporation's ("MVW") entire *enterprise-wide* SEC Form 10-K gross profits. They claim that it will then be Defendants' burden to show what portion of the total enterprise's profits was *not* attributable to the MVC Affiliation. Plaintiffs' position is, of course, incorrect because it assumes the very fact for which they bear the burden of proof: that MVW realized additional profits from the MVC Affiliation.

As an initial matter, nowhere in the extensive and detailed statement of their claims (and purported proofs therefor) that Plaintiffs submitted in the PTO (PTO § 3(A) at 2-24) did Plaintiffs mention their intention to use MVW's gross enterprise-wide profits as a basis for a disgorgement claim. *See* PTO Ex. A (ECF #578-1) at 1-17 and 18-24. Nor do Plaintiffs' witness descriptions in the PTO or expert reports mention such intention. But even if their intention had been disclosed, Plaintiffs' theory could not be sustained. *See Restatement, Third, of Restitution and Unjust Enrichment*, §51, cmt. i ("[D]efendant's liability . . . is not the whole of the gain from a tainted transaction, but the amount of the gain that is attributable to the underlying wrong."); *see also WWF Operating Co. v. Aseptic Tech.*, 2017 Colo. Dist. LEXIS 1281, *13-14 (Boulder Cty. Dec. 22, 2017) (finding it an "obvious legal error" to measure disgorgement by defendant's gross profits rather than the amount attributable to the underlying wrong).

As for Plaintiffs' burden-shifting argument, whether labeled "causation" or not, Plaintiffs bear the burden to prove *the fact of unjust profits* – i.e., *that they exist*. See *L-3 Communs. Corp. v. Jaxon Eng'g & Maint., Inc.*, 125 F. Supp. 3d 1155, 1175 (D. Colo. 2015) ("Unjust enrichment [is limited to] … the gain acquired by the defendant through the wrongful act."); *Harris Grp. v. Robinson*, 209 P.3d 1188, 1205 (Colo. App. 2009) (remedy is "the amount of the enrichment the defendant received" from the breach); *Restatement,* § 51(5)(d) (plaintiff seeking "disgorgement of profit has the burden of producing evidence permitting at least a reasonable approximation of the amount of the wrongful gain").[7] Plaintiffs have no competent evidence to prove unjust profits.

Plaintiffs also misstate the holdings of the cases on which they rely for their assertion that "[t]he Tenth Circuit has approved this 'burden-shifting regime' for proving disgorgement." (ECF #585 at 13). In *Miami Int'l Realty Co. v. Paynter*, 841 F.2d 348, 350 (10th Cir. 1988), a plaintiff was attempting to *recover its own lost profits*, and the court simply held that, "a plaintiff who seeks lost profits . . . must prove by competent evidence that such profits would have been received[.]" *Id.* at 350-51. Nor does *General Steel Domestic Sales, Ltd. Liab. Co. v. Chumley*, 627 F. App'x 682 (10th Cir. 2015), support Plaintiffs' position. In *General Steel,* which was a Lanham Act case, the Tenth Circuit recognized a "***statutorily** prescribed burden shifting procedure to ascertain [the] amount [of damages]*" for trademark infringement that applies *after a plaintiff has proven that the defendant was unjustly enriched by the alleged wrongful conduct. Id.* at 686-87 (emphasis added). No "statutorily prescribed burden shifting" exists here. Indeed, Lanham Act cases support Defendants' positions. *See, e.g.*, *Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co.*, 316

---

[7] The Court echoed these principles in deciding the parties' partial summary judgment motions, observing that Plaintiffs' unjust enrichment claim seeks disgorgement of all profits that defendants "*received as a result of the conduct described herein*." ECF #563 at 12 (emphasis added); *accord* Pretrial Order (ECF #578 at 24) (describing unjust enrichment claim as "disgorgement of all ill-gotten gains *obtained as a result of the wrongful conduct summarized above*" (emphasis added)).

U.S. 203, 206 (1942) ("[P]laintiff of course is not entitled to profits demonstrably not attributable to the unlawful use of his mark."); *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993) (finding plaintiff's burden to establish defendant's profits derived "from the infringing activity with reasonable certainty").  Thus, Plaintiffs cannot avoid their burden to prove that MVW, in fact, profited unjustly from the MVC Affiliation.

In sum, Plaintiffs' say-so does not constitute competent proof that a fiduciary breach (if proven) resulted in unjust profits. *See Webb v. Utah Tour Brokers Assoc.*, 568 F.2d 670, 677 (10th Cir. 1977) ("The court is not justified in rendering a judgment based on [such] possibility or speculation" and requires "that there be a tangible foundation from which the finder of facts" can determine the amount); *Graphic Directions v. Bush*, 862 P.2d 1020, 1025 (Colo. App. 1993) (finding it "axiomatic" that plaintiff "must establish that the damages are traceable to and are the direct result of the wrong" and that plaintiff must establish the causal link between profits and the breach).  Defendants' motion for leave to move for summary judgment based on Plaintiffs' failure to prove causation should be granted.

## CONCLUSION

For the reasons set forth above and in the moving brief, Defendants' motion for leave to file a supplemental summary judgment motion on causation should be granted.

Dated:  July 27, 2020

Respectfully submitted,

GREENBERG TRAURIG, LLP

By:  *s/ Philip R. Sellinger*
    Philip R. Sellinger
    Roger B. Kaplan
    Ian S. Marx
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
Tel: 973.360.7900
Fax: 973.301.8410

        Email:  SellingerP@gtlaw.com
                 KaplanR@gtlaw.com
                 MarxI@gtlaw.com

Naomi G. Beer
GREENBERG TRAURIG, LLP
1144 15th Street, Suite 3300
Denver, CO  80202
(303) 572-6549
Email: beern@gtlaw.com

*Attorneys for Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, L.L.C., The Cobalt Travel Company, LLC, and The Lion & Crown Travel Co., LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of July 2020, a true and accurate copy of the foregoing **DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF MOTION FOR LEAVE TO FILE SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT** was filed and served with the Clerk of the Court via CM/ECF filing system, which will send notification to the following:

Michael J. Reiser
Law Office of Michael J. Reiser
1475 N Broadway, Suite 300
Walnut Creek, CA 94596
*Counsel for Plaintiffs*

Matthew C. Ferguson
The Matthew C. Ferguson Law Firm, P.C.
119 South Spring, Suite 201
Aspen, Colorado 81611
*Counsel for Plaintiffs*

Tyler R. Meade
The Meade Firm P.C.
1816 Fifth Street
Berkeley, CA 94710
*Counsel for Plaintiffs*

Linda Pham Lam
Michael Schrag
Gibbs Law Group LLP
505 14th Street, Suite 1100
Oakland, CA 94612
*Counsel for Plaintiffs*

*s/ Jaclyn DeMais*
Jaclyn DeMais