IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 16-cv-01301-PAB-GPG

RCHFU, LLC, a Colorado limited liability company, et al.,

    Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al.,

    Defendants.
_____

**ORDER**
_____

This matter is before the Court on Defendants' Motion for Leave to File Supplemental Motion for Summary Judgment Dismissing All Claims for Lack of Causation [Docket No. 584]. Defendants seek leave to file a successive motion for summary judgment on the basis that the Court's order excluding plaintiffs' expert opinions on causation [Docket No. 583] precludes plaintiffs from establishing the causation element of their claims. Docket No. 584 at 1. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

**I. BACKGROUND**

The background facts are set forth in the Court's previous orders, *see, e.g.*, Docket No. 563, and will not be repeated here unless relevant to resolving the present motion. This lawsuit arises out of a dispute over the diminution in value of plaintiffs' fractional interests in the Ritz-Carlton Club, Aspen Highlands ("Aspen Highlands"), which allegedly resulted from defendants' choice to affiliate Marriott Vacation Club

("MVC") with Aspen Highlands. Docket No. 430 at 10, ¶ 1; at 73, ¶ 48. Plaintiffs sued defendants, asserting claims of (1) breach of fiduciary duty; (2) constructive fraud; (3) aiding and abetting a breach of fiduciary duty and constructive fraud; (4) conspiracy; and (5) unjust enrichment *Id.* at 94-104. On June 1, 2020, the Court granted in part defendants' motion to exclude the testimony of plaintiffs' experts. Docket No. 583 at 24. As relevant here, the Court precluded one of plaintiffs' experts, Jon Simon, from opining as to whether the MVC affiliation caused a diminution in value of plaintiffs' fractional interests because Mr. Simon had not identified or ruled out other potential causes of the loss in value in plaintiffs' fractional interests. *Id.* at 14-15. The Court found that, because Mr. Simon had not explained why, based on his experience, other potential causes for diminution in value were not applicable here, Mr. Simon's opinion was unreliable. *Id.* at 15. In addition, the Court excluded another expert, Chekitan Dev, from opining "that a co-mingling of the Ritz-Carlton and Marriott brands resulted in a horn effect that caused Plaintiffs' fractional interests to decline in value"[1] because Dr. Dev had failed to sufficiently connect his experience to his opinions. *Id*. at 6-7, 11-12.

On June 22, 2020, defendants filed the motion for leave to file a supplemental

---

[1] For purposes of this litigation, a "halo effect" refers to "the positive impact that co-mingling a less prestigious brand with a more prestigious brand can have on the former," Docket No. 461-1 at 3, ¶ 4, or "the increased profits or brand premium a lesser brand (or unbranded real estate) can earn when it affiliates with a more exclusive brand." Docket No. 461-3 at 6, ¶ 8. A "horn effect" refers to "the negative impact that [an] affiliation can have on the more prestigious brand," Docket No. 461-1 at 3, ¶ 4, or "financial damage to a more exclusively branded property when it affiliates with a lower tier brand and/or allows owners of the lesser brand systematic access to the luxury branded property." Docket No. 461-3 at 7, ¶ 9.

motion for summary judgment.[2]  Docket No. 584.  Defendants argue that, because each of plaintiffs' claims requires proof of causation, and because causation cannot be established without expert opinion – which plaintiffs do not have as a result of the Court's June 1, 2020 order – granting defendants summary judgment on the issue of causation "would effectively end the case, thus sparing the Court and the parties the burden and expense of a needless trial."  Docket No. 584 at 2.  They request that they be granted leave to seek summary judgment on the issue of causation.  *Id.*  Plaintiffs oppose defendants' motion.  Docket No. 585.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent."  To establish "good cause," a party must generally show that "the scheduling order's deadline could not have been met with diligence."  *McMillan v. Wiley*, 813 F.Supp.2d 1238, 1254 (D. Colo. 2011).  It is within a district court's discretion to permit successive motions for summary judgment.  *Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir. 1995).  Such motions are "particularly appropriate on an expanded factual record," *Hoffman v. Tonnemacher*, 593 F.3d 908, 911 (9th Cir. 2010), or in the event of an intervening change in the law.  *Smith v. McGarvie*, 321 F. App'x 665, 666 (9th Cir. 2009); *see also Robinson v. Denver Art Museum*, No. 11-cv-00315-REB-BNB, 2012 WL 934208, at *1 (D. Colo. Mar. 20, 2012).  "The Tenth Circuit Court of Appeals has cautioned, however, that it is not the

---

[2] The dispositive motion deadline was July 29, 2020, Docket No. 423, and each side filed a motion for summary judgment. Docket No. 441; Docket No. 452.  The motions were denied.  See Docket No. 563.

'usual practice to give litigants the proverbial second bite at the apple.'" *Id.* at *1 (quoting *Pippin v. Burlington Res. Oil and Gas Co.*, 440 F.3d 1186, 1199 (10th Cir. 2006)).

## III. ANALYSIS

In their seventh amended complaint, plaintiffs allege that, by affiliating Aspen Highlands and the Marriott brand, defendants breached their fiduciary duties to plaintiffs, engaged in constructive fraud, conspired to breach their fiduciary duties and engage in constructive fraud, and aided and abetted each other in the same; plaintiffs allege that each of these actions caused plaintiffs to suffer damages, "including the destruction of the value in their fractional units." Docket No. 430 at 97, ¶ 105; *id.* at 100, ¶ 115; *id.* at 101, ¶ 123; *id.* at 103, ¶ 131.

The parties' dispute primarily concerns whether expert testimony is required to prove causation in this case – specifically, whether expert testimony is required to prove that the affiliation caused a diminution in value of plaintiffs' fractional interests, as plaintiffs assert in their complaint.[3] Defendants argue that, in this case, causation must be demonstrated by expert testimony because determining the cause of the alleged diminution in value of plaintiffs' fractional interests is beyond the common knowledge and experience of the jurors. Docket No. 584 at 10. Plaintiffs disagree. They assert that expert testimony is not required to prove causation and that there is sufficient non-

---

[3] To the extent that plaintiffs argue that defendants' motion is procedurally improper because the dispositive motion deadline has passed, *see* Docket No. 585 at 2, the Court rejects this argument. Because resolution of the issues presented could narrow the issues for trial, or eliminate the need for trial, the Court finds good cause to entertain defendants' motion.

4

expert-testimony evidence in this case from which the jury could infer causation. Docket No. 585 at 3. In addition, plaintiffs argue that, in cases involving self-dealing by a fiduciary, the fiduciary bears the burden of proving that its breach of duty did not cause a loss, *id.* at 10, and that, in any event, causation is not an element of their unjust enrichment claim. *Id.* at 11.

In order to determine whether expert testimony is required to prove causation and damages, the Court "engages in a 'common-sense inquiry into whether a juror would be able to understand certain evidence without specialized knowledge.'" *Sonrisa Holding, LLC v. Circle K Stores, Inc.*, No. 17-cv-00029-STV, 2019 WL 2471370, at *8 (D. Colo. June 12, 2019) (quoting *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1136 (10th Cir. 2014)). While no court in this circuit has ruled whether expert testimony is required to prove the cause of alleged diminution in value of property, courts in other jurisdictions have determined that expert testimony is required in similar circumstances. In *Lowrey v. Glassman*, 908 A.2d 30 (D.C. Ct. App. 2006), the District of Columbia Court of Appeals held that expert testimony was required to prove that the defendant's alleged nuisance caused damage to the plaintiff's real property. *Id.* at 32, 37. Specifically, the court determined that, while landowners are generally qualified to express their opinions as to their property's value "merely by virtue of [their] ownership," landowners are not qualified to testify "as to the link between any alleged actions of the Defendants and the change in value" to the property. *Id.* at 37. The court found that, "[w]ithout an expert witness to testify to the causation of the alleged diminution in value, there was no 'significant probative evidence tending to support the

complaint.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)); *see also Prudential Ins. Co. of Am. v. Textron Aviation, Inc.*, 2018 WL 1992423, at *16 (D. Kan. Apr. 27, 2018) (finding that expert testimony was required to prove that the defendant's actions caused damage to the plaintiff's aircraft, particularly because the aircraft had pre-existing defects that "inherently impact[ed]" the damages determination).

The Court finds these cases persuasive and concludes that the issue of causation in this case is beyond the common knowledge of jurors. In plaintiffs' words, the jury will be tasked with determining "whether affiliating the lower tier MVC with the higher tier Ritz-Aspen and allowing MVC members access for a fraction of Plaintiffs' costs was a substantial factor in reducing the value of Plaintiffs' interests, compared to what they would have been absent affiliation." Docket No. 585 at 9. Evaluating a shift in real property value and the causes thereof – more specifically, evaluating whether the affiliation of a higher-end brand with a more affordable brand could cause a tangible drop in the value of the higher-end units – requires specialized knowledge of the industry and is beyond the common knowledge of ordinary jurors. *Sonrisa Holding*, 2019 WL 2471370, at *8.

This is not a case where plaintiffs allege that their property values dropped due to some factor within the ordinary knowledge of jurors – for example, extensive physical damage. This is likely why plaintiffs designated experts to testify with respect to causation in the first place. *See Lowrey*, 908 A.2d at 36 ("[T]he very fact that Lowrey designated expert witnesses on such subjects . . . belie[s] his present assertions that

6

he did not need experts to prove his case.  Clearly he believed that the strength of his case depended largely upon the testimony of these witnesses in their particular areas of expertise.").  Without expert testimony, a finding that the affiliation caused a diminution in value of plaintiffs' units – as opposed to market fluctuations, economic fluctuations, or other potential causes – would be speculative at best.  This is insufficient to prove causation, as Colorado courts consistently hold that a plaintiff "must establish causation beyond 'mere possibility or speculation.'"  *Truck Ins. Ech. v. MagneTek, Inc.*, 360 F.3d 1206, 1215 (10th Cir. 2004) (quoting *Kaiser Found. Health Plan v. Sharp*, 741 P.2d 714, 719 (Colo. 1987)).  The Court finds that expert testimony is required to prove causation here.

The Court finds plaintiffs' arguments to the contrary unpersuasive.  First, plaintiffs argue that, because Colorado law requires that plaintiffs "seeking damages for a breach of fiduciary duty . . . only show that the fiduciary's conduct was 'a substantial contributing cause of the injury,'" expert testimony is not required to prove causation here.  Docket No. 585 at 4 (quoting *Larivier, Grubman & Payne, LLP v. Phillips*, 2011 WL 650001, at *20 (D. Colo. Feb. 11, 2011)).  But plaintiffs do not explain why this evidentiary standard – that the breach of a fiduciary duty must only be a substantial cause of the claimed damages – changes the Court's analysis on the type of evidence required to demonstrate causation in this case.  In addition, plaintiffs assert that causation can be proved without expert testimony, relying on *Loughridge v. Chiles Power Supply Co., Inc.*, 431 F.3d 1268 (10th Cir. 2005).  Docket No. 585 at 7-8.  In *Loughridge*, the Tenth Circuit held that two homeowners were qualified to testify as to

the value of their own homes. *Id.* at 1283. Specifically, the Tenth Circuit indicated that the homeowners "ha[d] special knowledge of their property given their long ownership and familiarity with it" and that the "jury was free to make the reasonable inference that the purchase price of [their homes were] diminished." *Id.* *Loughridge* is distinguishable, as it concerned the qualifications of homeowners to testify as to the value of their own property, not the qualifications of homeowners to testify as to the cause of an alleged diminution in the values to their property. *See generally id.* Thus, *Loughridge* does not support plaintiffs' argument that expert testimony is not required to prove causation here.

Plaintiffs nevertheless assert that the lay testimony of plaintiffs and non-expert third parties can prove causation here. Docket No. 585 at 5. However, post-*Loughridge*, the Tenth Circuit considered whether testimony concerning the depreciation in valuation of a building was admissible as lay testimony. *See James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1213 (10th Cir. 2011). Under Rule 701 of the Federal Rules of Evidence, a lay witness may testify as to his or her opinions or inferences if those opinions are "(a) rationally based on the witness's perception, (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. In *James River*, the building owner's principal testified at trial, over the defendant's objection, as to the actual cash value of the building, determined based on a construction company's replacement-cost estimate and a 40% depreciation factor, a percentage that the

8

principal arrived at by dividing the amount of money it would take to rehabilitate each unit by the complete replacement cost for each unit.  658 F.3d at 1211.  On appeal, the defendant argued that the principal's valuation testimony was inadmissible under Rule 701(c), as it was actually Rule 702 expert testimony.  *Id.* at 1213.  The Tenth Circuit agreed, finding that the principal's opinion was "based on technical or specialized knowledge."  *Id.* at 1214.  The Tenth Circuit's decision depended, in part, on its finding that "calculating depreciation requires more than applying basic mathematics.  Technical judgment is required in choosing among different types of depreciation."  *Id.*  "Accurately accounting for the interaction between depreciation and damage requires professional experience and is beyond the scope of lay opinion testimony."  *Id.* at 1215.

Plaintiffs argue that *James River* is inapplicable because it addressed the calculation of damages versus causation of damages.  *See* Docket No. 585 at 8-9.  The Court disagrees.  *James River* concerns whether a lay witness may express opinions about issues that involve technical or specialized knowledge.  The Tenth Circuit determined that, "accounting for the interaction between depreciation and damage" – i.e., accounting for other potential causes of a diminution in value than what plaintiffs claim caused the diminution – "is beyond the scope of lay opinion testimony."  *James River*, 658 F.3d at 1215.  Here, as in *James River*, the cause of the diminution of plaintiffs' real property is beyond the scope of lay opinion testimony.  Having found that expert testimony is required in this case, the Court rejects plaintiffs' argument that the lay testimony of plaintiffs and of non-expert third parties – who plaintiffs did not designate as expert witnesses – is sufficient to demonstrate causation.

Additionally, the Court rejects plaintiffs' argument that causation may be established through (1) defendants' documents or (2) the testimony of another one of its experts, Mr. Maurice Robinson. *See* Docket No. 585 at 6. Plaintiffs contend that "Defendants' own documents demonstrate that the Affiliation caused damage," namely, a memorandum from Marriott's Corporate Growth Committee which noted that "[a]ccess to the RCDC properties by [MVC members] may result in the perception of lost exclusivity." *Id.* at 6; *see also* Docket No. 511-6 at 2. In addition, plaintiffs cite a consulting company's report finding that "[Ritz-Carlton] [m]embers have seen their fractional ownership investment erode in both real and perceived value and they are unhappy with the introduction of Marriott Vacation properties and members into 'their' (Ritz-Carlton) system." Docket No. 585 at 6*; see also* Docket No. 445 at 4. However, these documents do not prove that the affiliation caused a diminution in value of plaintiffs' interests. At best, they demonstrate that Aspen-Highlands members perceived that the affiliation had resulted in a loss of exclusivity and that members saw a decline in value of their properties. This is insufficient to demonstrate that the affiliation actually caused a diminution in value of plaintiffs' units.

Moreover, Mr. Robinson's expert testimony is insufficient to prove causation, as plaintiffs have not designated Mr. Robinson as an expert on causation and Mr. Robinson does not attempt to opine on causation. In his expert reports, Mr. Robinson "assume[d] that Plaintiffs [would] establish liability," including "a breach of fiduciary duties, constructive fraud and other unlawful conduct," and assumed "that these breaches were substantial factors in causing the property values at the subject

10

Property to be significantly lower than they would have been absent Defendants' unlawful actions." Docket No. 461-8 at 8-9.  Mr. Robinson was retained only "to estimate the Diminution of Value damages . . . suffered by [plaintiffs]."  *Id.* at 2.

Finally, plaintiffs assert that defendants have ignored important burden-shifting principles in breach of fiduciary duty cases.  Docket No. 585 at 10.  They argue that, in breach of fiduciary duty cases, the burden is not on plaintiffs to prove causation, but that the burden is on the fiduciary to prove that its breach did not cause a loss.  *Id.*  In addition, they argue that causation is not an element of their unjust enrichment claim, and that they have satisfied their initial evidentiary burden on disgorgement.  *Id.* at 11-12.  The Court finds that these arguments are better suited for summary judgment briefing, when the Court will determine whether genuine issues of fact exist for trial.  Here, the Court's order is limited only to finding that expert testimony is required to prove causation in this case.  Because granting defendants leave to file an additional motion for summary judgment may be in the interest of judicial economy, the Court will grant defendants' motion.

## IV. CONCLUSION

For these reasons, it is

**ORDERED** that Defendants' Motion for Leave to File Supplemental Motion for Summary Judgment Dismissing All Claims for Lack of Causation [Docket No. 584] is **GRANTED**.  It is further

**ORDERED** that defendants may file a supplemental motion for summary judgment by October 23, 2020.  It is further

11

**ORDERED** that plaintiffs shall file a response by November 6, 2020.  It is further

**ORDERED** that defendants may file a reply by November 10, 2020.  It is further

**ORDERED** that, due to the imminency of trial, no extensions of time or page limits will be granted.

DATED October 13, 2020.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge