IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 16-01301 PAB

RCHFU, LLC, et al.

                Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE
CORPORATION, et al.

                Defendants.

---

## DEFENDANTS' SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT

---

Pursuant to the Court's October 13, 2020 Order (ECF #596) ("October 13 Order"), Defendants Marriott Vacations Worldwide Corporation ("MVW"), Marriott Ownership Resorts, Inc. ("MORI"), The Ritz-Carlton Management Company, LLC ("RC Management"), The Cobalt Travel Company, LLC ("Cobalt"), and The Lion & Crown Travel Co., LLC ("L&C") (collectively, "Defendants") hereby move for summary judgment dismissing all of Plaintiffs' claims for lack of causation.

## **INTRODUCTION**

The October 13 Order accurately describes this lawsuit as having "arise[n] out of a dispute over the [alleged] diminution in value of plaintiffs' fractional interests in [The] Ritz-Carlton Club, Aspen Highlands ("Aspen Highlands"), which allegedly resulted from defendants' choice to affiliate Marriott Vacation Club ("MVC") with Aspen Highlands."  ECF #596 at 1-2.  With this allegation as an overarching theme, Plaintiffs asserted claims against Defendants for (1) breach of fiduciary duty; (2) constructive fraud; (3) aiding and abetting a breach of fiduciary duty and constructive fraud; (4) conspiracy; and (5) unjust enrichment, and they designated two experts,

Jonathan Simon and Chekitan Dev, to establish the causation element of their claims.  *See* October 13 Order (ECF #596) at 6 (observing that a recognition of the need for expert testimony to prove causation in this case "is likely why plaintiffs designated experts to testify with respect to causation in the first place").  By Order dated June 1, 2020 (ECF #583) ("*Daubert* Order"), however, the Court (a) excluded, as unreliable under *Daubert*, Simon's opinion that "the MVC affiliation caused a diminution in value of plaintiffs' fractional interests because [he] had not identified or ruled out other potential causes of the loss in value in plaintiffs' fractional interests" (ECF #596 at 2); and (b) excluded, for failure "to sufficiently connect his experience to his opinions" as required by *Daubert,* Dev's opinion "'that a co-mingling of the Ritz-Carlton and Marriott brands resulted in a horn effect that caused Plaintiffs' fractional interests to decline in value.'"  *Id.* (citing Defendants' *Daubert* motion (ECF #583) at 6-7, 11-12, 14-15).[1]

Given the Court's *Daubert* rulings, Defendants promptly moved for leave to file a supplemental motion for summary judgment dismissing all claims for Plaintiffs' failure to establish causation. ECF #584.  Plaintiffs opposed the motion, arguing that "expert testimony is not required to prove causation and … there is sufficient non-expert-testimony evidence in this case from which the jury could infer causation."  ECF #585 at 3.  That argument was flatly rejected. *See* October 13 Order (ECF #596) at 7 ("The Court finds that expert testimony is required to prove

---

[1] Dev's excluded opinion discussed "horn" and "halo" effects.  As the Court correctly explains, "[f]or purposes of this litigation, a 'halo effect' refers to 'the positive impact that co-mingling a less prestigious brand with a more prestigious brand can have on the former,' … or 'the increased profits or brand premium a lesser brand (or unbranded real estate) can earn when it affiliates with a more exclusive brand.' … A 'horn effect' refers to 'the negative impact that [an] affiliation can have on the more prestigious brand,' … or 'financial damage to a more exclusively branded property when it affiliates with a lower tier brand and/or allows owners of the lesser brand systematic access to luxury branded property.'"  ECF #596 at 2, n.1 (citations omitted).

causation here."). The Court likewise rejected Plaintiffs' argument that causation could be established through the testimony of their only other expert witness, Maurice Robinson. *See* ECF #596 at 10-11 (finding Robinson's testimony "insufficient to prove causation, as plaintiffs have not designated Mr. Robinson as an expert on causation and Mr. Robinson does not attempt to opine on causation").

Plaintiffs also offered arguments pertaining solely to their breach of fiduciary duty and unjust enrichment claims, which the Court described as asserting that: (a) "in breach of fiduciary duty cases, the burden is not on plaintiffs to prove causation, but … on the fiduciary to prove that its breach did not cause a loss"; and (b) "causation is not an element of [Plaintiffs'] unjust enrichment claim, and … they have satisfied their initial evidentiary burden on disgorgement." *Id.* at 11. Finding these latter claim-specific arguments "better suited for summary judgment briefing," the Court granted Defendants leave to file the present motion. *Id.*

In view of the Court's broad finding that "expert testimony is required to prove causation here" and the fact that Plaintiffs' causation experts have been excluded, Defendants should be granted summary judgment as to Plaintiffs' Second Cause of Action (constructive fraud), as well as on Plaintiffs' Third and Fourth Causes of Action for aiding and abetting and conspiracy, respectively, to the extent such claims relate to the constructive fraud claim. Defendants should also be granted summary judgment on Plaintiffs' breach of fiduciary duty and unjust enrichment claims (First and Fifth Causes of Action, respectively) because, as shown below, the arguments Plaintiffs make to try to save those claims are contrary to law. [2] Plaintiffs' disgorgement claims

---

[2] Plaintiffs' First and Second Causes of Action were also brought against the Aspen Highlands Condominium Association, Inc. (the "Association"), which, by virtue of its settlement with

(sought in both their breach of fiduciary duty and unjust enrichment claims) should also be dismissed because the recovery theories they now espouse were never mentioned in the May 13, 2020 Final Pretrial Order (ECF #578) ("Final PTO"), which this Court has recognized "measures the dimensions of the lawsuit." *See* Point III(A), *infra*. Nor were they raised in discovery or in any expert report.

Finally, if it is not precluded as untimely, Plaintiffs' claim for disgorgement of the management fees the Association paid to RC Management should be dismissed because Plaintiffs lack standing to assert such claim. In short, Defendants are entitled to summary judgment on all of Plaintiffs' claims.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      Plaintiffs seek compensatory damages of diminution in value of their fractional interests in The Ritz-Carlton Club, Aspen Highlands ("RC Club Aspen") allegedly arising from and caused by the affiliation ("MVC Affiliation") between The Ritz-Carlton Destination Club ("RCDC") and Marriott Vacation Club Destinations Exchange Program ("MVCD"). Final PTO, Exhibit A (ECF #578-1) ("Plaintiffs' Witness List") at 21, 22, 23, 24.

2.      Plaintiffs seek the disgorgement of Defendants' profits allegedly caused by and arising from the MVC Affiliation. *Id.*

3.      The Court excluded Plaintiffs' expert, Jonathan Simon, upon whom Plaintiffs had relied to testify on the "halo" and "horn" effects to establish causation for both compensatory damages (loss of value) and their unjust enrichment claim, and for the calculation of the amount

---

Plaintiffs, is no longer a party to this action. *See* ECF #556 (stipulation dismissing all of Plaintiffs' claims against the Association with prejudice).

of unjust enrichment profits allegedly realized by Defendants.  *Daubert* Order (ECF #583) at 12-18.

4.     The Court excluded Plaintiffs' expert, Chekitan Dev, from testifying on the "halo" and "horn" effects, upon which Plaintiffs had also relied to establish causation for both compensatory damages (loss of value) and their unjust enrichment claim.  *Id.* at 6-12.

5.     Plaintiffs' only other expert, Maurice Robison, calculated the difference in value between fractional interests at RC Club Aspen and fractional interests at other fractional interest resorts in and near Aspen, but did not offer an opinion or testimony on causation of diminution in value as allegedly caused by the MVC Affiliation.  Rather, Robison assumed such causation in reliance on the now-excluded testimony of Simon and Dev.  October 13 Order (ECF #596) at 10.

6.     The Court has ruled that "Mr. Robinson's expert testimony is insufficient to prove causation, as plaintiffs have not designated Mr. Robinson as an expert on causation and Mr. Robinson does not attempt to opine on causation."  *Id.*

7.     The Court has ruled that "the issue of causation in this case is beyond the common knowledge of jurors" and, thus, that "expert testimony is required to prove causation in this case." *Id.* at 6, 7, 9, 11.

8.     Plaintiffs did not disclose, in discovery, in any expert reports, or in the Final PTO, their intention to seek disgorgement based on (i) MVW enterprise-wide profits, or (ii) management fees paid to RC Management. ECF # 578 at 2-24 and Ex. A.

## ARGUMENT

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a); *see also Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1998) (summary judgment will be granted unless nonmovant can "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant").  Under this standard, Defendants are entitled to summary judgment on all of Plaintiffs' claims.

## I.     DEFENDANTS SHOULD BE GRANTED SUMMARY JUDGMENT ON PLAINTIFFS' CONSTRUCTIVE FRAUD CLAIM AND RELATED CLAIMS

Where plaintiff fails to establish a claim's "essential element" of causation, defendant should be granted summary judgment.  *McLaughlin v. Experian Info. Solutions*, 2017 U.S. Dist. LEXIS 230308, at **28-29 (D. Colo. Dec. 28, 2017); *accord, D.R. Horton, Inc.-Denver v. Travelers Indem. Co. of Am.*, 2012 U.S. Dist. LEXIS 156014, at **40-41 (D. Colo. Oct. 31, 2012); *Farmers Alliance Mut. Ins. Co. v. Naylor*, 452 F. Supp. 2d 1167, 1176 (D.N.M. 2006).

In this case, the Court has recognized that causation is an essential element of a constructive fraud claim.  *See RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, 2018 U.S. Dist. LEXIS 53174, at *39 (D. Colo. Mar. 29, 2018) ("To establish a claim for constructive fraud, a plaintiff must show" that defendant's allegedly wrongful conduct "proximately caused" "injury to the complaining party.") (Brimmer, C.J.) (quoting *Barnett v. Elite Properties of Am., Inc.*, 252 P.3d 14, 24 (Colo. App. 2010)).  The Court has also held that "the issue of causation in this case is beyond the common knowledge of jurors"; thus, "expert testimony is required to prove causation in this case."  October 13 Order (ECF # 596) at 6, 10-11.  Plaintiffs, however, have no causation expert, and thus no admissible evidence on an issue for which they bear the burden of proof.  *Id.*; *see also Daubert* Order (ECF #583) at 6-18.  Given this failing, Defendants should be granted summary judgment on Plaintiffs' Second Cause of Action for constructive fraud, as well as on

their Third and Fourth Causes of Action for aiding and abetting and conspiracy, respectively, to the extent such claims relate to the constructive fraud claim.[3]

## II.     DEFENDANTS SHOULD BE GRANTED SUMMARY JUDGMENT ON PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM

The breach of fiduciary duty claim that Plaintiffs assert against RC Management, Cobalt, and L&C seeks damages as compensation for the alleged "destruction of the value in their fractional units."  SAC ¶¶ 105-106.  Causation is an essential element of this claim, and the case law makes clear that Plaintiffs bear the burden to prove causation.  In this case, that means Plaintiffs bear the burden to prove that the supposed diminution in value about which they complain was actually caused by Defendants.  *See Murphy v. Schaible, Russo & Co., CPAs, LLP*, 2020 U.S. Dist. LEXIS 74254, at *24 (D. Colo. Apr. 28, 2020) (under Colorado law, "[t]o succeed on [a] breach of fiduciary duty claim, *[p]laintiff must show*" that defendant's "breach of fiduciary duty was a cause of the plaintiff's damages") (quoting *Graphic Directions, Inc. v. Bush*, 862 P.2d 1020, 1022 (Colo. App. 1993)) (emphasis added); *see also id.* (holding that, to satisfy breach of fiduciary duty claim's causation element, *plaintiff bears the burden of "prov[ing]"* that defendant's conduct was a substantial contributing cause of plaintiff's injury") (quoting *Aller v. Law Office of*

---

[3] A claim for aiding and abetting is derivative and dependent upon the existence of an underlying wrong, and it is subject to dismissal where, as here, the cause of action on which the claim depends has failed.  *See, e.g.*, *Rocky Mt. Expl., Inc. v. Davis Graham & Stubbs LLP*, 2016 WL 908640, at *9 (Colo. Ct. App. Mar. 10, 2016) (finding that, "because [plaintiff's fraud claim] fails, [its] … civil conspiracy to commit fraud … and … aiding and abetting fraud [claims] fail as well"); *Eikelenboom v. Ike & Jordan, LLC*, 2016 Colo. Dist. LEXIS 1627, at *14 (Colo. Dist. Ct. Jan. 25, 2016) (same).  Likewise, "[u]nder Colorado law, civil conspiracy is a derivative cause of action that is not actionable *per se*…if the acts alleged to constitute the underlying wrong provide no cause of action, then there is no cause of action for the conspiracy itself."  *McNees v. Ocwen Loan Servicing, LLC*, 2020 U.S. Dist. LEXIS 54732, at *43 (D. Colo. Mar. 30, 2020) (because plaintiff's "primary causes of action fail, his derivative civil conspiracy claim must fail as well").

*Carole C. Schriefer, P.C.*, 140 P.3d 23, 26 (Colo. App. 2005)) (emphasis added).  Indeed, Plaintiffs appear to concede that they bear the burden to establish the causation element of their breach of fiduciary duty claim.  *See* Plaintiffs' Opposition to Defendants' Motion for Leave to File a Supplemental Summary Judgement Motion (ECF #585) ("Pl. Opp.") at 4 ("A plaintiff in Colorado seeking damages for a breach of fiduciary duty need only show that the fiduciary's conduct was 'a substantial contributing cause of the injury.'") (quoting *Lariviere, Grubman & Payne, LLP v. Phillips*, 2011 WL 650001, at *20 (D. Colo. Feb. 11, 2011)) (emphasis added).

As to how Plaintiffs are to go about proving causation in this case, the Court has unequivocally held that expert testimony is required.  *See* October 13 Order (ECF #596) at 6 ("Evaluating a shift in real property value and the causes thereof -- more specifically, evaluating whether the affiliation of a higher-end brand with a more affordable brand could cause a tangible drop in the value of higher-end units -- requires specialized knowledge of the industry and is beyond the common knowledge of ordinary jurors"); *id.* at 7 ("Without expert testimony, a finding that the affiliation caused a diminution in value of plaintiffs' units -- as opposed to market fluctuations, economic fluctuations, or other potential causes -- would be speculative at best.  This is insufficient to prove causation"); *id.* at 9 ("Here…the cause of the diminution of plaintiffs' real property is beyond the scope of lay opinion testimony"); *id.* at 10 (finding Defendants' documents "insufficient to demonstrate that the affiliation actually caused a diminution in value of plaintiffs' units").  In so holding, the Court rejected Plaintiffs' suggestion that, because they "only" need to prove that the alleged breach of fiduciary duty was "a substantial contributing cause of the claimed damages," they could satisfy their burden by some means other than expert testimony.  *See id.* at 7 ("But plaintiffs do not explain why this evidentiary standard…changes the Court's analysis on

the *type of evidence* required to demonstrate causation in this case.") (emphasis added).   Given that the Court has excluded the testimony of Plaintiffs' only two expert witnesses who had opined as to the cause of their alleged diminution-in-value damages (*Daubert* Order (ECF #583) at 6-18), Plaintiffs cannot prove the causation element of their breach of fiduciary duty claim.   Summary judgment for Defendants is, therefore, appropriately granted.

Plaintiffs try to avoid this result by arguing that, in breach of fiduciary duty cases, "the burden actually shifts to the fiduciary to prove that its breach *did not* cause loss."   Pl. Opp. (ECF # 585) at 10-11 (emphasis in original).   Plaintiffs misinterpret the case law.   The case on which they rely most heavily for their burden-shifting argument, *Eads v. Dearing*, 874 P.2d 474 (Colo App. 1993), was a classic "undue influence" case involving an 80-year-old plaintiff (described as "deaf" with "deteriorating eyesight") whose daughter was alleged to have improperly gained control of much of plaintiff's assets through undue influence.   *Id.* at 476.   Following a bench trial, the court found for plaintiff on her breach of fiduciary duty claim.   Defendant daughter appealed, claiming that the court erred by "shifting the burden of proof to her to show that there was no undue influence in the … property conveyance [at issue]."   *Id.* at 476-77.   The appellate court disagreed, explaining that "*the burden of proof never shifts*" on a breach of fiduciary duty claim. *Id.* at 477 (emphasis added).   Rather, "*once the plaintiff establishes a prima facie* case, the burden of going forward *with the evidence* shifts to the other side."   *Id*. (emphasis added).   Thus, having come forward with *prima facie* evidence on *all elements* of the claim -- including causation -- a rebuttable presumption was created that "require[d] the defendant to go forward with some

evidence to show the transaction was not procured through undue influence." *Id.* at 476-77. [4]

Requiring a defendant in an undue influence case to produce evidence showing that property taken by a fiduciary through undue influence was not improperly obtained -- after plaintiff produced *prima facie* evidence that it was -- is a far cry from demanding that defendant affirmatively disprove the essential causation element of plaintiff's claim before plaintiff has even established that element.  Here, Plaintiffs are essentially claiming that, under *Eads,* Defendants must prove their case for them.  *Eads* stands for no such proposition.  *Eads* stands for the rather unremarkable proposition that plaintiffs bear the burden to demonstrate a *prima facie* case, i.e., to produce sufficient admissible evidence of *each element of their claim*.  Here, Plaintiffs' causation experts have been stricken in their entirety, and the Court has ruled that expert testimony is required to establish causation in this case.  This means Plaintiffs have no evidence of causation and, thus, cannot satisfy their burden to show a *prima facie* case on their breach of fiduciary duty claim.  Accordingly, a rebuttable presumption does not arise, and the burden of producing evidence does not shift to Defendants.

The other two cases on which Plaintiffs rely also do not support their argument.  In *Pioneer Centres Holding Co. ESOP & Trust v. Alerus Fin., N.A.*, 858 F.3d 1324 (10th Cir. 2017), which concerned a statutory breach of fiduciary duty claim under ERISA, the court had to determine which party bore the burden of proving loss resulting from a breach of fiduciary duty because the

---

[4] *See also Krueger v. Ary*, 205 P.3d 1150, 1154 (Colo. 2009) (citing Colorado Rule of Evidence 301 ("[A] presumption imposes…the burden of going forward…but does not shift…the burden of proof")).  *Fritzler v. Mitchell*, 413 P.3d 163, 169 (Colo. App. 2017) (noting that a rebuttable presumption shifts only the burden of going forward, not the burden of proof); *Rome v. HEI Res., Inc.*, 411 P.3d 851, 859 (Colo. App. 2014) ("A rebuttable presumption is a type of presumption that shifts the burden of going forward with evidence but not the ultimate burden of proof.").

statute was "silent" on that issue. *Id.* at 1335. In deciding the question, the court noted that, "[w]here a statute is silent on burden allocation, the ordinary default rule [is] that plaintiffs bear the risk of failing to prove their claims. This is because the burdens of pleading and proof with regard to most facts have been and should be assigned to the plaintiff who generally seeks to change the present state of affairs and who therefore naturally should be expected to bear the risk of failure of proof or persuasion." *Id.* (internal citations and quotation marks omitted). The court "[saw] no reason to depart from the ordinary default rule that plaintiffs bear the risk of failing to prove their claims." *Id.* at 1335.[5] Accordingly, the court held that "the burden falls squarely on the plaintiff asserting a breach of fiduciary duty claim under § 1109(a) of ERISA to prove losses to the plan 'resulting from' the alleged breach of fiduciary duty." *Pioneer*, 858 F.3d at 1335. As the District Court in *Pioneer* held, Plaintiffs "must, in the first instance, make a showing of a causal connection between the breach of fiduciary duty and claimed loss as part of its prima facie case of loss." *Pioneer*, 2015 U.S. Dist. LEXIS 57408, at *26 (D. Colo. May 1, 2015), *aff'd*, 858 F.3d 1324 (10th Cir. 2017). Accordingly, *Pioneer* provides no support for Plaintiffs' burden-shifting argument. The third case on which Plaintiffs rely, *In re Beck Industries, Inc.*, 605 F.2d 624 (2d Cir. 1979), an out-of-circuit bankruptcy decision, is completely inapposite as it did not even involve a breach of fiduciary duty claim.

---

[5] In conducting its analysis, the court noted that the common law of trusts recognizes an "exception to the default rule…whereby once a beneficiary has succeeded in proving that the trustee has committed a breach of trust *and that a related loss has occurred*, the burden shifts to the trustee to prove that the loss would have occurred in the absence of the breach." *Id.* (emphasis added). This is, of course, not a trust case, nor have Plaintiffs shown "that a related loss has occurred," i.e., *they have failed to show causation*. *See Eads,* 874 P. 2d at 477 (holding that, "[o]nce a fiduciary relationship and a transfer of property to the fiduciary have been established," defendant must come forward with evidence showing that the transfer was not procured through undue influence).

In sum, Plaintiffs' novel burden-shifting argument is unsupported by Colorado law, which holds that, when a plaintiff sues "for breach of fiduciary duty, the [plaintiff] assume[s] the burden of proof on each element of its claim," including "causation." *Pioneer*, 858 F.3d at 1337; *see also Aller*, 140 P.3d at 26 ("To prove a claim for breach of fiduciary duty, it is the plaintiff's burden to demonstrate, inter alia, that he or she has incurred damages and that the defendant's breach of fiduciary duty was a cause of the damages sustained."). Plaintiffs have no basis for contending that the burden of proof on causation has somehow shifted to Defendants such that Defendants must now prove a *negative* -- i.e., that any alleged breaches of fiduciary duty did *not* cause Plaintiffs' fractional interests to decline in value.

Accordingly, Defendants should be granted summary judgment on Plaintiffs' First Cause of Action (breach of fiduciary duty), as well as on their Third and Fourth Causes of Action for aiding and abetting and conspiracy, respectively, to the extent such claims relate to the breach of fiduciary duty claim.[6]

## III.   DEFENDANTS SHOULD BE GRANTED SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS FOR DISGORGEMENT OF ALLEGED PROFITS

In addition to loss-of-value compensatory damages, Plaintiffs seek the disgorgement of "all commissions, fees and profits [Defendants] received as a result of" their allegedly wrongful conduct." *See* Fifth Cause of Action (unjust enrichment claim) SAC ¶ 137. Plaintiffs also seek disgorgement as part of their First Cause of Action (breach of fiduciary claim). *See* SAC ¶¶ 105-106 (demanding disgorgement of "all commissions, fees and profits [Defendants] received as a result of the" allegedly wrongful conduct).

---

[6] Plaintiffs' aiding and abetting and conspiracy claims are derivative claims and, thus, can only stand to the extent the claims to which they relate are valid. *See* n.3, *supra* (citing cases).

Earlier in the case, Plaintiffs proffered the expert opinions of Dev and Simon in an implicit acknowledgement of the need to prove, through expert testimony, both that (i) Defendants were, *in fact*, unjustly enriched by the MVC Affiliation; and (ii) the *amount* of any such alleged unjust enrichment.   Now that their testimony on these issues has been excluded as unreliable and unsupported by sufficient facts or data under *Daubert* (*see* ECF #583 at 8, 9, 12, 15, 18), Plaintiffs lack the expert testimony they need to prove the *existence*  as well as the  *amount* of any unjust enrichment.

Thus, in an effort to salvage their unjust enrichment claim (which would be tried to the Court) and concomitant disgorgement demand, Plaintiffs have concocted two brand-new, eleventh-hour theories of recovery.  Plaintiffs now contend that they should be permitted to:

- rely on MVW's total enterprise-wide profits to prove Defendants' total profits and then shift the burden to Defendants to prove how much of those profits were <u>not</u> attributable to the MVC Affiliation; and

- seek the disgorgement of management fees paid by the Association to RC Management.

*See* Pl. Opp. (ECF # 585) at 13-14.

Not only are Plaintiffs' new theories grossly untimely, they also fail as a matter of law.

### A.   Plaintiffs Should Be Precluded from Pursuing Disgorgement Claims based on Never-Before-Disclosed Theories of Recovery

This Court has recognized that "[t]he pretrial order measures the dimensions of the lawsuit," and, thus, "any 'claims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint....'" *Estate of Grubbs v. Weld Cty. Sheriff's Office*, 2018 U.S. Dist. LEXIS 106775, at *37 (D. Colo. June 26, 2018) (Brimmer, C.J.) (quoting *Wilson v. Mukala*, 303 F.3d 1207, 1215 (10th Cir. 2002)); *see also Olson v. City of*

*Golden*, 541 Fed. Appx. 824, 831 (10th Cir. 2013) ("In the Tenth Circuit, a definitive pre-trial order reflecting the agreement of the parties, having been entered into after full discovery, must, of course, control the subsequent course of the action.") (internal citations and quotation marks omitted).

By its terms, the Final PTO entered in this case "control[s] the subsequent course of this action and the trial," and "[t]he pleadings will be deemed merged herein." Final PTO (ECF #578) §12 at 55.  This term serves the "primary purpose of pretrial orders," which is "to avoid surprise by requiring parties to fully and fairly disclose their views as to what the real issues of the trial will be." *Estate of Grubbs*, 2018 U.S. Dist. LEXIS 106775 at *38 (internal citation and quotation marks omitted); *see also McCammond v. Schwan's Home Serv., Inc.*, 2011 U.S. Dist. LEXIS 92102, at *8 (D. Colo. Aug. 17, 2011) ("The purpose of the final pretrial order is to put the other party on notice of which … theories of the case and/or defenses a party intends to pursue at trial.").

In the Final PTO, Plaintiffs described in detail the precise nature of each of their five claims, as well as the specific supporting facts and underlying theories that they would present at trial to prove each such claim and the basis of the damages and unjust enrichment sought.  *See* Final PTO (ECF #578) § 3(A) ("Claims and Defenses") at 2-24.  Nowhere in the extensive and detailed statement of their claims (and purported proofs) that Plaintiffs set forth in the PTO did Plaintiffs mention their intention to use MVW's gross enterprise-wide profits as a basis for a disgorgement claim. *See* PTO Ex. A (ECF #578-1) at 1-17 and 18-24.  Plaintiffs likewise failed to disclose in the Final PTO that they intended to seek, as part of their disgorgement remedy, any portion of the management fees paid to RC Management over the years.  *Id.*  In addition to being absent from the Final PTO itself, these theories were also not mentioned in the detailed descriptions

of the testimonies of Plaintiffs' 44 fact witnesses and three damage experts. *See* PTO Ex. A (ECF #578-1) at 1-17 and 18-24.  Nor were these theories disclosed in pre-trial discovery or in Plaintiffs' expert reports.[7]

Omissions as significant as these cannot be explained away as an oversight.  To permit Plaintiffs to rely on these belated theories would severely prejudice Defendants because they have had no reason to expect or anticipate that, for example, they would have to prove at trial what portion of MVW's enterprise-wide profits were *not* attributable to the MVC Affiliation. Nor did Defendants anticipate or have any reason to expect that they would have to demonstrate what portion of the management fees received by RC Management was not attributable to the MVC Affiliation or the extent to which any increase in costs was attributable to the MVC Affiliation. They also had no reason to retain an expert on these issues.

Plaintiffs should, therefore, be precluded from pursuing these newly-crafted, never-before-disclosed theories of recovery at this late stage of the litigation.

## B. Plaintiffs' Theory of Disgorgement based on MVW's Gross Enterprise-Wide Profits Is Legally Insupportable

A plaintiff asserting an unjust enrichment claim has the burden to prove the *existence* of unjustly-earned profits.  *See L-3 Commc'ns. Corp. v. Jaxon Eng'g & Maint., Inc.*, 125 F. Supp. 3d 1155, 1175 (D. Colo. 2015) ("Unjust enrichment [is limited to] the gain acquired by the defendant

---

[7] Indeed, further demonstrating that these new claims were not included in the Final PTO, in Plaintiffs' Exhibit List in the Final PTO (Exhibit C, ECF # 576-3), Plaintiffs did *not* list MVW's SEC 10-K Statements as exhibits, *nor* did they list the RC Aspen Budgets showing the amount of management fees paid to RC Management. It was only *after* Plaintiffs filed their Opposition to Defendants' Motion for Leave to File a Supplemental Summary Judgment Motion, in which Plaintiffs for the first time advanced these new claims (ECF #585), that Plaintiffs sent Defendants an *amended* Exhibit List seeking to include these documents in their exhibits – more than 3 months after the Final PTO was entered.

*through the wrongful act.*") (emphasis added); *see also Harris Grp. v. Robinson*, 209 P.3d 1188, 1205 (Colo. App. 2009) (remedy is "the amount of the enrichment the defendant received" from the breach); *Restatement (Third) of Restitution and Unjust Enrichment,* § 51(5)(d) (plaintiff seeking "disgorgement of profit has the burden of producing evidence permitting at least a reasonable approximation of the amount of the wrongful gain").  Plaintiff also has the burden to prove a causal link between any unjust or improper conduct by defendant and any specific profits earned from that conduct.  *See Graphic Directions v. Bush*, 862 P.2d 1020, 1025 (Colo. App. 1993) (finding it "axiomatic" that plaintiff "must establish that the damages are traceable to and are the direct result of the wrong").  Thus, Plaintiffs' assertion that "causation is not an element in an unjust enrichment claim" (*see* Pl. Opp. (ECF #585) at 11) is grossly incorrect.  *See In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 2019 U.S. Dist. LEXIS 158044, at **57-58 (D. Minn. July 31, 2019) ("Although an unjust enrichment claim does not explicitly require a showing of causation, causation is an implicit element of this claim because Plaintiffs must prove that Defendants received a benefit under circumstances that would make retention of the benefit unjust.").

This Court has already ruled that causation in this case is "beyond the common knowledge of jurors."  *See* October 13 Order (ECF #596) at 6, 11; *see also Sonrisa Holding, LLC v. Circle K Stores, Inc.*, 2019 U.S. Dist. LEXIS 99867, at *21 (D. Colo. June 12, 2019) (issues of causation require expert testimony where they are "beyond the common knowledge and experience of a juror…") (citing *Truck Ins. Exch. v. MagneTek, Inc.*, 360 F.3d 1206, 1214 (10th Cir. 2004)).  Determining the existence of a causal link between the MVC Affiliation and MVW's ability to earn additional profits as a result of the MVC Affiliation would be even further beyond the jurors'

common knowledge.  Accordingly, given the Court's exclusion of Simon's and Dev's expert opinions regarding the "halo" theory of unjust enrichment (ECF #583 at 6-18), Plaintiffs cannot establish the <u>existence</u> of any unjust enrichment as a result of the MVC Affiliation or the <u>amount</u> of unjust enrichment, if any.  *Hall v. Conoco Inc.*, 886 F.3d 1308, 1317 (10th Cir. 2018); *Sonrisa Holding*, 2019 U.S. Dist. LEXIS 99867, at *21; *Cary v. Automobile Ins. Co.*, 838 F. Supp. 2d 1117, 1122 (D. Colo. 2011).

Lacking the expert testimony that would be required to support their claim, Plaintiffs have now switched gears, arguing that they can obtain disgorgement simply by introducing MVW's entire enterprise-wide SEC Form 10-K gross profits, after which the burden will shift to Defendants to show what portion of those profits was <u>not</u> attributable to the MVC Affiliation.  *See* Pl. Opp. (ECF #585) at 12-14.  Plaintiffs' recovery theory is unsustainable as a matter of law.

As an initial matter, MVW's gross, enterprise-wide profits cannot serve as a basis for determining whether, or by what amount, any Defendant earned any particular or specific amount of profit attributable to the MVC Affiliation, or as any other quantifiable measure of unjust enrichment.  *See Restatement (Third) of Restitution and Unjust Enrichment*, § 51, cmt. i ("defendant's liability . . . is not the whole of the gain from a tainted transaction, but the amount of the gain that is attributable to the underlying wrong"); *see also WWF Operating Co. v. Aseptic Tech.*, 2017 Colo. Dist. LEXIS 1281, at *13-*14 (Colo. Dist. Ct., Boulder Cnty., Dec. 22, 2017) (finding it an "obvious legal error" to measure disgorgement by defendant's gross profits rather than the amount attributable to the underlying wrong).

Tacitly acknowledging as much, Plaintiffs claim that Defendants should be required to prove which parts of the enterprise-wide profits were *not* attributable to the MVC Affiliation.

Plaintiffs assert that "[t]he Tenth Circuit has approved this 'burden-shifting regime' for proving disgorgement" (ECF #585 at 13); however, they completely misinterpret the cases.  In *Miami Int'l Realty Co. v. Paynter*, 841 F.2d 348 (10th Cir. 1988), a plaintiff was attempting to *recover its own lost profits*, and the court simply held that "a plaintiff who seeks lost profits … must prove by competent evidence that such profits would have been received[.]" *Id.* at 350-51.  In *General Steel Domestic Sales, Ltd. Liab. Co. v. Chumley*, 627 F. App'x 682 (10th Cir. 2015), which was a Lanham Act case, the Tenth Circuit recognized a "*statutorily* prescribed burden shifting procedure to ascertain [the] amount [of damages]" for trademark infringement that applies *after* a plaintiff has proven that the defendant was, in fact, unjustly enriched by the alleged wrongful conduct.  *Id.* at 686-87 (emphasis added). No "statutorily prescribed burden shifting" exists here and, even in *General Steel*, the statutory burden-shifting only involved the *amount* of unjust profits, not their existence.[8]

In short, Plaintiffs cannot avoid their burden to prove that MVW *actually profited unjustly* from the MVC Affiliation and, if so, the *amount* of any such unjust profit.  Without expert testimony, Plaintiffs cannot meet that burden, and their disgorgement claims (asserted in both the First and Fifth Causes of Action, i.e., as part of both their breach of fiduciary duty and unjust enrichment claims) should be dismissed.[9]

---

[8] In fact, Lanham Act cases support Defendants' position. *See, e.g.*, *Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co.*, 316 U.S. 203, 206 (1942) ("[P]laintiff of course is not entitled to profits demonstrably not attributable to the unlawful use of his mark.); *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993) (finding plaintiff's burden to establish defendant's profits derived "from the infringing activity with reasonable certainty").

[9] Disgorgement of unjust enrichment "cannot be assessed against wrongdoers on a joint-and-several theory," but only be based on the unjust enrichment realized by a specific party.  *Liu v. SEC*, 140 S. Ct. 1936, 1945, 1949 (2020) (only "individual liability for wrongful profits" is

**C. Plaintiffs Lack Standing to Seek the Disgorgement of Management Fees Paid by the Association to RC Management**

It is well established that a plaintiff "cannot rest his claim to relief on the legal rights or interests of third parties." *Bixler v. Foster*, 596 F.3d 751, 756, n.4 (10th Cir. 2010). Plaintiffs did not pay any management fees to RC Management, but, rather, such fees were paid by the Association. Thus, even if Plaintiffs had timely disclosed their intention to seek the disgorgement of management fees paid by the Association, they lack standing to pursue such a claim. In any event, Plaintiffs make no attempt to allege what, if any, portion of the management fees paid by the Association was attributable to the MVC Affiliation. *See* Restatement (Third) of Restitution and Unjust Enrichment, § 51, cmt. i (explaining that "defendant's liability . . . is not the whole of the gain . . . but the amount of the gain that is attributable to the underlying wrong"); *see also WWF Operating Co.*, 2017 Colo. Dist. LEXIS 1281, at **13-14 (finding it "obvious legal error" to measure disgorgement by defendant's gross profits rather than the amount attributable to the underlying wrong).

The Association never asserted a claim against Defendants for breach of fiduciary duty or for return of the management fees paid by the Association to RC Management. If there was a basis for any such claim, it would have been the Association's claim.

**CONCLUSION**

For all of the foregoing reasons, Defendants respectfully request that the Court enter

---

permitted); *accord, Penhallow* v. *Doane's Administrators*, 3 Dall. 54 (1795); *Jennings* v. *Carson*, 4 Cranch 2, 21 (1807); *Ambler* v. *Whipple*, 20 Wall. 546, 559 (1874); *Elizabeth* v. *Pavement Co.*, 97 U.S. 126 (1878); *Belknap* v. *Schild*, 161 U.S. 10, 25–26 (1896); *Keystone Mfg. Co.* v. *Adams*, 151 U.S. 139, 148 (1894)). Accordingly, Plaintiffs cannot assert an unjust enrichment claim against MORI, RC Management, Cobalt and L&C based on MVW's profits.

summary judgment for Defendants on each of Plaintiffs' claims and dismiss the action in its entirety and with prejudice.

Dated:  October 23, 2020                           Respectfully submitted,

                                                   GREENBERG TRAURIG, LLP
                                                   By: *s/ Philip R. Sellinger*
                                                       Philip R. Sellinger
                                                       Roger B. Kaplan
                                                       Ian S. Marx
                                                   500 Campus Drive, Suite 400
                                                   Florham Park, New Jersey 07932
                                                   Tel: 973.360.7900 / Fax: 973.301.8410
                                                   Email:  SellingerP@gtlaw.com
                                                           KaplanR@gtlaw.com
                                                           MarxI@gtlaw.com
                                                        - and-
                                                   Naomi G. Beer
                                                   GREENBERG TRAURIG, LLP
                                                   1144 15th Street, Suite 3300
                                                   Denver, CO  80202
                                                   (303) 572-6549
                                                   Email: beern@gtlaw.com

                                                   *Attorneys for Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC, The Cobalt Travel Company, LLC, and The Lion & Crown Travel Co., LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of October 2020, a true and accurate copy of the foregoing **DEFENDANTS' SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT** was filed and served with the Clerk of the Court via CM/ECF filing system, which will send notification to the following:

Michael J. Reiser
Law Office of Michael J. Reiser
1475 N Broadway, Suite 300
Walnut Creek, CA 94596
*Counsel for Plaintiffs*

Matthew C. Ferguson
The Matthew C. Ferguson Law Firm, P.C.
119 South Spring, Suite 201
Aspen, Colorado 81611
*Counsel for Plaintiffs*

Tyler R. Meade
The Meade Firm P.C.
1816 Fifth Street
Berkeley, CA 94710
*Counsel for Plaintiffs*

Linda Pham Lam
Michael Schrag
Gibbs Law Group LLP
505 14th Street, Suite 1100
Oakland, CA 94612
*Counsel for Plaintiffs*

*s/ Gregory Scavelli*
Gregory Scavelli