IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 16-01301-PAB-GHG

RCHFU, LLC, et al.

        Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE
CORPORATION, et al.

        Defendants.

_____

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF
SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**
_____

In a last-ditch attempt to save their claims, Plaintiffs: (1) ignore the holdings in the Court's June 1, 2010 *Daubert* Order (ECF #583) and October 13, 2020 Order ruling that Plaintiffs had not established causation in this case (ECF #596); (2) incorrectly insist that they do not bear the burden to prove the causation element of their breach of fiduciary duty claim; and (3) attempt to advance entirely new -- and legally unsupportable -- theories of recovery and relief.  Plaintiffs' efforts are futile.  Their claims should be dismissed.

**Response to Plaintiffs' Statement of Disputed Material Facts**

1-6.    Admitted that these paragraphs state disputed factual issues, and further state that such facts are not material to the motion as discussed below.

7.    Denied. The interpretation of the Management Agreement's unambiguous provisions is not a question of fact; it is a question of law for the Court.  *See Morrison Knudsen Corp. v. Ground Improvement Techniques, Inc.*, 532 F.3d 1063, 1069 (10th Cir. 2008).

8.    Denied as stated. Mr. Weisz testified that Marriott Vacations Worldwide Corporation ("MVWC") experienced no "halo effect" as a result of the inclusion of The Ritz-

Carlton Destination Clubs in the Marriott Vacation Club Destinations ("MVCD") Affiliation because MVCD members merely had the "opportunity, after spending a considerable amount of points, to get to a Ritz-Carlton Club," and there was no "dramatic effect" on the sale of MVCD Points from "having Ritz-Carlton Club inventory." Weisz Dep. at 108:8-22, 109:7-23.

9. Deny as stated. Plaintiffs mischaracterize the data contained in the MVWC Forms 10K and 10Q documents, and such facts are not material to the motion as discussed below.

10. Admitted that these paragraphs state disputed factual issues, and state that such facts are not material to the motion as discussed below.

I. **This Court Has Already Rejected Plaintiffs' Argument That *Prima Facie* Evidence of Causation Can Be Established without an Expert**

Although the Court has ruled that causation in this case can only be established through expert opinion, and Plaintiffs' causation experts' opinions have been excluded as unreliable and speculative, Plaintiffs nevertheless argue that causation can be inferred without expert testimony.[1]

For example, Plaintiffs try to use Mr. Robinson's finding that fractional interest prices fell at The Ritz-Carlton ("RC") Club Aspen while increasing at other properties to show causation. *See* Pl. Br. at 9, 11-12.[2] But the Court has held that the jury cannot consider differences in value as evidence of causation, as "the issue of causation in this case is beyond the common knowledge

---

[1] Plaintiffs downplay the importance of the Court's rulings, stating "they intend to seek reconsideration" of the *Daubert* Order (Pl. Br. at 7, n.1), but have no basis for reconsideration. *See Tso v. Murray*, 2019 U.S. Dist. LEXIS 26829, at *6-*7 (D. Colo. Feb. 20, 2019) (Brimmer, *J.*) (motion for reconsideration untimely where plaintiffs were long aware of basis for motion); *Rodeman v. Foster*, 767 F. Supp. 2d 1176, 1189 (D. Colo. 2011) (Brimmer, *J.*) (reconsideration is "'inappropriate … when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion'").

[2] Although Robinsons opinions were not excluded, the Court held that Mr. Robinson offered *no opinion* on causation. October 13 Order at 10-11.

of jurors." October 13 Order at 6-7; *see also id.* at 9 (finding Plaintiffs' own lay opinions insufficient to establish causation, as "the cause of the diminution of plaintiffs' real property is beyond the scope of lay opinion testimony [and] is [in]sufficient to demonstrate causation"). Thus, Plaintiffs' assertion that the "record contains ample evidence from which the jury could draw a just and reasonable inference" that the alleged breaches of fiduciary duty were "a substantial cause of Plaintiffs' related losses" should be rejected. Pl. Br. at 8-9. Indeed, the conclusions Plaintiffs wish the jury to draw are precisely the sort that the Court found are beyond the jury's competence.[3] Thus, Plaintiffs are unable to establish the causation element of their claims. *See In re Williams Sec. Litig.*, 558 F.3d 1130, 1143 (10th Cir. 2009) (noting that excluded experts' conclusions "would be no less speculative and unreliable if reached by jurors").

## II. Summary Judgment Should Be Entered on Plaintiffs' Breach of Fiduciary Duty Claim

Plaintiffs cannot dispute that causation is an essential element of their breach of fiduciary duty claim. They argue, however, that if they can make a "threshold showing" of causation -- which the Court has held they cannot do without expert testimony -- then the burden "shifts" to Defendants "to *disprove* the connection between the [MVCD] affiliation and the alleged harms[.]" Pl. Br. at 4 (emphasis in original). Tenth Circuit law does not support that notion. As discussed in Defendants' moving brief (ECF #585, at 10-11), the law in this Circuit is that "the burden falls squarely on the plaintiff asserting a breach of fiduciary duty claim … to prove losses … 'resulting from' the alleged breach of fiduciary duty."' *See Pioneer Centres Holding Company Employees*

---

[3] The Court also rejected Plaintiffs' arguments that a *prima facie* showing of causation could be based on Defendants' alleged decision to deny a formal vote on the MVCD Affiliation, Plaintiffs' alleged inability to make full use of the facilities as a result of the Affiliation, or the different costs of entry to RC Club Aspen paid by fractional interest owners and MVCD members. *Id*. at 10.

*Stock Ownership Plan and Trust v. Alerus Financial, N.A.*, 858 F.3d 1324, 1335 (10th Cir. 2017) (refusing to apply burden-shifting principles from the common law governing trusts to ERISA case). Recognizing that the law in this Circuit is against them, Plaintiffs cite a First Circuit opinion (also an ERISA case), which takes their desired approach, acknowledges the split among the Circuits on the issue, and specifically mentions the Tenth Circuit's *Pioneer* decision. *See* Pl. Br. at 6-8 (citing *Brotherston v. Putnam Investments, LLC*, 907 F.3d 17 (1st Cir. 2018)); *see also id.* at 10 (citing *CDX Liquidating Trust v. Venrock Associates*, 640 F.3d 209 (7th Cir. 2011) (applying Delaware law). Given that the Tenth Circuit has already spoken on the issue, Plaintiffs' reliance on cases from other jurisdictions is misplaced and improper.[4] But even if their burden-shifting theory were correct, Plaintiffs cannot make a threshold *prima facie* showing of causation without expert testimony, which they do not have. *See* Point I, *supra*.[5]

## II. The Constructive Fraud Claims Should Be Dismissed

Plaintiffs do not dispute this Court's holding that causation is an essential element of a constructive fraud claim. *See RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, 2018 U.S. Dist. LEXIS 53174, at *39 (D. Colo. Mar. 29, 2018). Nor do Plaintiffs claim that any burden-shifting applies. The constructive fraud claims should, accordingly, be dismissed.

---

[4] Plaintiffs also cite case law standing for the unremarkable proposition that, once a plaintiff has made a *prima facie* case for breach of fiduciary duty, the burden of coming forward with evidence shifts to the defendant, although the burden of proof never shifts. *See* Pl. Br. at 8.

[5] Plaintiffs' remaining cases are inapposite. *See, e.g.*, *Berg v. United States*, 806 F.2d 978, 981-82 (10th Cir. 1986) (discussing the definition of "proximate cause" where plaintiff suffered injuries due to hospital's negligence); *In re Swine Flu Immunization Prod. Liab. Litig.*, 495 F. Supp. 1188, 1206 (D. Colo. 1980) (under Federal Tort Claims Act, addressing what is "necessary to establish the causal connection between the inoculation and plaintiff's illness"); *Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216 (2d Cir. 2020) (applying NY law, discussing difference between "damage" and "damages"); *Milbank, Tweed, Hadley & McCloy v. Boon*, 13 F.3d 537, 543 (2d Cir. 1994) (applying a since-abrogated standard in legal malpractice under NY law).

### IV. Plaintiffs Cannot Proceed to Trial Seeking Only Nominal Damages

Recognizing their inability to establish causation and amount of injury, Plaintiffs claim they should still go to trial for nominal damages. *See* Pl. Br. at 13. Plaintiffs misread the law. It is true that, in certain circumstances not applicable here (e.g., cases involving non-economic rights such as trespass and defamation), a jury may award nominal damages *after a trial* if plaintiff has established all elements of its claim, including causation of injury.[6] But Plaintiffs cannot show causation of injury; accordingly, any question of nominal damages is moot. *See* Restatement 2d of Torts, § 907 ("Nominal damages are a trivial sum of money awarded to a litigant *who has established a cause of action*.") (emph. added)). The cases Plaintiffs cite do not hold otherwise.[7]

### V. Plaintiffs May Not Seek a Mandatory Injunction Ordering a Vote

As discussed in Defendants' moving brief, a plaintiff may not seek any recovery or remedy that is not set forth in the case's final pretrial order. *See* Defendants' moving brief at 13-14 (citing cases). In the Final Pretrial Order ("PTO") (ECF #578) Plaintiffs sought no equitable relief other than disgorgement of alleged profits. Accordingly, Plaintiffs are precluded from seeking an

---

[6] Indeed, the very purpose of summary judgment is to *avoid a trial* when, as a matter of law, plaintiff cannot establish each and every element of its claim. That very purpose would be defeated if a plaintiff could nevertheless still proceed to trial for nominal damages.

[7] For example, in *Chimney Rock Public Power District v. Tri- State Generation and Transmission Ass'n, Inc.*, 2014 WL 811566, at *5 (D. Colo., March 3, 2014), the court cited an Arizona case that recognized that some jurisdictions (not Colorado) award nominal damages in "situations where 'either plaintiffs experienced actual damages insusceptible to reasonable calculation or defendants had engaged in corporate plunder or diverted corporate opportunities to themselves.'" Neither circumstance applies here, and the other cases Plaintiffs cite on this point are irrelevant. *See Cook v. Rockwell Int'l Corp.*, 273 F. Supp. 2d 1175, 1200 (D. Colo. 2003) (plaintiffs in trespass actions are "entitled to recover at least nominal damages"); *Crawford v. French*, 633 P.2d 524, 527 (Colo. App. 1981) (defendant entitled to nominal damages in a trespass action where "there was no evidence produced as to any actual damage incurred"); *Bayer v. Neiman Marcus Grp.*, 861 F.3d 853, 872 (9th Cir. 2017) (nominal damages may be available for plaintiffs who "seek vindication of a right which is not economic in character").

injunction ordering a vote, which they are demanding for *the first time* in their opposition to this motion. In addition, where Plaintiffs own only 25% of the 876 fractional interests at RC Club Aspen (Final PTO at 4), and where the Association signed a Joinder and Acknowledgement to the Affiliation Agreement (SAC, ECF #430 at ¶48), granting such relief would violate Rule 19. *See, e.g., Edward v. Dubrish*, 2009 U.S. Dist. LEXIS 131451, at *9 (D. Colo. May 19, 2009).

## VI. Plaintiffs' New Theory of Disgorgement Is Entirely Speculative Without Expert Testimony

As an initial matter, Plaintiffs' disgorgement claim should be dismissed because the recovery theory they now espouse for that claim was not disclosed in discovery, in any expert report, or in the Final PTO. *See* Pl. Br. at 15, n.3 (acknowledging that their "methodology for calculating disgorgement has evolved").[8]

Even if their recovery theory had been disclosed, it is legally unsupportable. Plaintiffs maintain that, to establish the causation required for their disgorgement claim, all they need do is show "some 'causal connection' between the wrongdoing and 'a measurable increase in the defendant's net assets,'" and then the burden shifts to defendant to prove what portions of its profits are attributable to other causes. Pl. Br. at 17 (quoting Restatement (Third) of Restitution § 51, cmt. *i*). However, even if correct -- which it is not -- the burden-shifting stage that Plaintiffs posit is never reached here. The Restatement makes clear that "the claimant has the burden of producing evidence from which the court may make at least a reasonable approximation of the defendant's

---

[8] Plaintiffs suggest that the Final PTO be amended in order "to prevent manifest injustice." Pl. Brief at 15, n.3. But they have not moved for any amendment, and they cannot meet the "manifest injustice" standard. This Court has made clear that amendments to final pretrial orders will not be permitted if they "seek to change the movant's theory of its case after discovery has closed" or "seek to avoid prior rulings." *Hasan v. AIG Prop. Cas. Co.*, 2018 U.S. Dist. LEXIS 77435, at *6 (D. Colo. May 8, 2018). That is exactly what Plaintiffs seek to do here, and Plaintiffs' new theories are prejudicial to Defendants who have not designated experts to meet those new claims.

unjust enrichment.… If the claimant's evidence will not yield even a reasonable approximation, the claim of unjust enrichment is merely speculative, and disgorgement will not be allowed." *Id*. The "evidence" upon which Plaintiffs rely consists of (1) MVWC's Form 10-Ks which, Plaintiffs claim, show MVWC's *total* revenue for all MVCD Points sales, from 2014 through 2018 (SADF No. 9); (2) a survey of MVCD points purchasers allegedly showing that 5.5-7.4% of those who responded indicated that gaining access to The Ritz-Carlton Destination Clubs *generally* -- not to The Ritz-Carlton Club Aspen specifically, nor to any other specific Ritz-Carlton Club location -- was one of their top five reasons (out of a total of 27 reasons) for purchasing MVCD points (SADF No. 10); and (3) MVWC's CEO Stephen Weisz's speculation regarding the possible effect of allowing MVCD members to access RCDC properties (SADF No. 8). A non-speculative approximation of Defendants' alleged unjust enrichment cannot be made based on this material.

First, Plaintiffs mistakenly attempt to support their use of MVWC's total revenue for all MVCD Points sales (not just Aspen revenue) by citing cases decided under Copyright and Lanham Act statutes that contain express burden-shifting provisions. But even those cases make clear that a disgorgement claim must be based on a specific revenue stream, not on company-wide revenues. *See Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 799-800 (8th Cir. 2003) (precluding plaintiff in copyright case from offering evidence of Audi's profits from all Audi models, explaining that "[i]t is not enough to show an infringement and then seek all of the defendant's profits"); *see also Gen. Steel Domestic Sales, Ltd. Liab. Co. v. Chumley*, 627 F. App'x 682, 686 (10th Cir. 2015) (in Lanham Act case, holding that, "when ordering disgorgement a court should (if possible) disaggregate affected and unaffected product lines to avoid overcompensation"); *Polar Bear Prods. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004) (holding that "a copyright

7

owner is required to do more initially than toss up an undifferentiated gross revenue number, but, rather, the revenue stream must bear a legally significant, non-speculative relationship to the infringement"). The total revenue shown in MVWC's 10-Ks is exactly the kind of "undifferentiated gross revenue number" that courts do not accept as evidence to support an unjust enrichment claim. *See* Restatement (Third) of Restitution § 51, cmt. *i* (must show "the net increase in the assets of the wrongdoer [that] is attributable to the underlying wrong").

Nor do the survey results that Plaintiffs proffer give the Court a basis for making a non-speculative, reasonable approximation of Defendants' alleged unjust enrichment. With no statistical expert to construe the data or the survey's statistical relevance and reliability, Plaintiffs attempt to apply the 5.5-7.4% survey results (which relates to The RC Clubs in general, not to The RC Club Aspen nor to any other specific RC Club) to MVWC's total points revenue to conclude that that same percentage of MVCD points sales in each year would not have occurred absent the Affiliation. Plaintiffs posit that the absence of this one factor would have caused these purchasers not to purchase, *even though such purchasers identified four other reasons in their top five (and 27 overall) for purchasing*. Any such conclusion is entirely speculative. *See LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004) (expert needed "to opine on the statistical validity or interpretation of the results"); *Brown v. Am. Honda Motor Co.*, 939 F.2d 946, 952 (11th Cir. 1991) (statistics "without an analytic foundation, are virtually meaningless"); *Bednasek v. Kobach*, 2018 U.S. Dist. LEXIS 31296, at *8 (D. Kan. Feb. 27, 2018) (expert necessary to interpret survey); *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) ("mere speculation, conjecture, or surmise [which] carry no probative weight in summary judgment proceedings."), *cert. denied*, 549 U.S. 856 (2006). *Notably, Plaintiffs' belated request that they be allowed to engage a statistical*

*expert to opine on the survey for precisely this purpose was denied. See* Orders of April 7, 2019 (ECF #386) and May 16, 2019 Order (ECF #412).

Finally, Stephen Weisz's deposition testimony does not assist Plaintiffs. Asked whether the access to RCDC properties "actually helps the Marriott Vacation Club sales folks sell more product," Mr. Weisz responded, "I certainly think there's some members that probably value that and would buy more points as a result of it." Weisz Tr. at 108:24-109:6 (ECF #599-1, at 3). Mr. Weisz was merely speculating that "some members" may buy more points" due to the availability of RCDC properties. *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 876 (10th Cir. 2004) ("Testimony which is grounded on speculation does not suffice to create a genuine issue of material fact to withstand summary judgment."); *Perez v. Denver Fire Dep't*, 243 F. Supp. 3d 1186, 1192 (D. Colo. 2017) ("[M]ere speculation will not create a genuine issue of material fact necessitating trial."). Not surprisingly, Plaintiffs fail to mention Mr. Weisz's testimony that MVWC experienced no "halo effect" as a result of the inclusion of The Ritz-Carlton Destination Clubs in the MVCD Affiliation because MVCD members merely had the "opportunity, after spending a considerable amount of points, to get to a Ritz-Carlton Club," and that there was no "dramatic effect" on the sale of MVCD Points from "having Ritz-Carlton Club inventory." Weisz Tr. at 108:8-22; 109:7-23; *see also* Response to Plaintiffs' SDMF, No. 8, *supra*.

## VII. Plaintiffs' Claim for Disgorgement of the Management Fees Fails as a Matter of Law

Not only should Plaintiffs' claim for the disgorgement of the management fees paid by the Association to The Ritz-Carlton Management Company ("RC Management") be dismissed because it was not disclosed in the pleadings, in discovery, or in the Final PTO, it should also be dismissed because Plaintiffs are not signatories to the Management Agreement and did not pay

any management fees to RC Management. *See* Defendants' moving brief at 19 (Plaintiffs lack standing to seek disgorgement of fees paid by the Association). Plaintiffs try to manufacture standing for themselves by describing the Association as "an intermediary or a pass-through" for the fees paid to RC Management. Pl. Br. at 16.[9] But *Ireland v. Wynkoop*, 36 Colo. App. 205 (1975), is directly to the contrary, holding that condominium owners could not assert a claim for disgorgement of compensation against the condominium association's agent and promoter based on alleged breaches of fiduciary duty. *Id.* at 217. The Court affirmed dismissal of the claim because it "concerned contracts to which the Association, rather than individual condominium unit owners, was a contracting party," and the recovery sought was for management fees paid by the Association, not the condominium owners. *Id.* In so holding, the court observed that, "although the Association will eventually assess the unit owners for the management expenditures, the owners' concern in these matters is only indirect, through the Association, and therefore, the Association is the proper claimant." *Id.* at 217-18; *see also id.* at 224 ("the claims for relief belong to the corporate Association, not to the [owner] plaintiffs").[10]

## CONCLUSION

The Court should grant Defendants summary judgment on all of Plaintiffs' claims.

Dated:  November 10, 2020	Respectfully submitted,
	GREENBERG TRAURIG, LLP
	By: *s/ Philip R. Sellinger*
	     Philip R. Sellinger

---

[9] Plaintiffs' reliance on §14 of the Management Agreement is misplaced, as that provision simply describes how the management fee is *calculated*.

[10] Plaintiffs' reliance on *In re Ladeveraux*, 2006 Bankr. LEXIS 388 (D. Mass. 6, 2006), is misplaced. The Court rejected an attorney's argument that the debtor lacked standing to seek disgorgement of fees that the debtor's mother paid to the attorney on her behalf, because it was *the debtor's obligation*, and because the *Bankruptcy Code* was "intended to protect the debtor regardless of the source of compensation." *Id.* at **23-24, 27-28.

10

      Roger B. Kaplan
      Ian S. Marx
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
Tel: 973.360.7900 / Fax: 973.301.8410
Email:  SellingerP@gtlaw.com
      KaplanR@gtlaw.com
      MarxI@gtlaw.com
  - and-
Naomi G. Beer
GREENBERG TRAURIG, LLP
1144 15th Street, Suite 3300
Denver, CO  80202
(303) 572-6549
Email: beern@gtlaw.com

*Attorneys for Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC, The Cobalt Travel Company, LLC, and The Lion & Crown Travel Co., LLC*

11

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of November 2020, a true and accurate copy of the foregoing **DEFENDANTS' REPLY IN FURTHER SUPPORT OF SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT** was filed and served with the Clerk of the Court via CM/ECF filing system, which will send notification to the following:

Michael J. Reiser
Law Office of Michael J. Reiser
1475 N Broadway, Suite 300
Walnut Creek, CA 94596
*Counsel for Plaintiffs*

Matthew C. Ferguson
The Matthew C. Ferguson Law Firm, P.C.
119 South Spring, Suite 201
Aspen, Colorado 81611
*Counsel for Plaintiffs*

Tyler R. Meade
The Meade Firm P.C.
1816 Fifth Street
Berkeley, CA 94710
*Counsel for Plaintiffs*

Linda Pham Lam
Michael Schrag
Gibbs Law Group LLP
505 14th Street, Suite 1100
Oakland, CA 94612
*Counsel for Plaintiffs*

      *s/ Gregory Scavelli*
        Gregory Scavelli