IN THE UNITED STATES DISTRICT COURT

DISTRICT OF COLORADO

Civil Action No. 1:16-cv-01301-PAB-GPG

**RCHFU, LLC,** *et al.*

Plaintiffs,

v.

**MARRIOTT VACATIONS WORLDWIDE CORPORATION,** *et al.*

Defendants.

_____

**PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDERS EXCLUDING JON SIMON'S TESTIMONY ON CAUSATION AND MAURICE ROBINSON'S ANALYSIS AS EVIDENCE ON CAUSATION**

_____

Plaintiffs move for an order reconsidering: (1) the Court's order precluding Plaintiffs' expert witness Jon Simon from testifying that Marriott's affiliation of Marriott Vacation Club (MVC) with Aspen Highlands was *a* substantial factor in the diminution in value of Plaintiffs' fractional interests in Aspen Highlands (Dkt. 583 at 12-15); and (2) the Court's order prohibiting the jury from relying in part upon the comparative-property-value analysis of Plaintiffs' expert witness Maurice Robinson (which analysis the Court has found otherwise admissible) to draw the just and reasonable inference that Marriott's affiliation of MVC with Aspen Highlands was at least a substantial factor in the dramatic diminution in value of the Aspen Highlands property,

1

after affiliation, as compared to other comparable luxury properties in the Aspen area where there was no such affiliation. Dkt. 596 at 10-11.[1]

## **CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 7.1(a), Plaintiffs conferred with Marriott before making this motion. Specifically, on November 12, 2020, Plaintiffs had a telephone conference with Marriott to discuss the legal bases for this motion, and Marriott stated it would oppose this motion.

## I.    INTRODUCTION

In considering a *Daubert* challenge to an expert's qualifications, the Court cannot require that expert's proposed testimony to meet a higher standard than the designating party would be required to prove at trial. Yet here, the Court excluded Jon Simon's causation analysis because he failed to explain why "other potential causes for the diminution in value are inapplicable" (Dkt. 583 at 15), even though the "substantial factor" standard required by governing Colorado law makes clear that in a breach-of-fiduciary duty case like this, plaintiffs are *not* required to rule out alternative causes of economic harm. To the contrary, as long as the plaintiffs can establish that a defendant's wrongful conduct was at least *one* of the causes of their loss – whether through expert testimony or through just or reasonable inference based on other evidence (at which point the burden of production shifts to the defendant to demonstrate that its conduct was not a

---

[1] The Court's previous orders did *not* preclude the jury from finding, as a matter of just and reasonable inference sufficient to establish Plaintiffs' prima face case, that the challenged affiliation was a substantial cause of the *other* economic and non-economic harms identified by Plaintiffs (*see* Dkt. 599 at 13-14), only the resulting loss in property values. *See, e.g.,* Dkt. 596 at 4, 6-11 (limiting analysis to whether Plaintiffs' expert could opine on the cause of the diminished value of Plaintiffs' fractional interests and precluding the jury from finding that affiliation resulted in such diminution because expert testimony is required to rule out "market fluctuations, economic fluctuations, or other potential causes").

2

causative factor at all, *see Pioneer Centres Holding Co. v. Alerus Financial, N.A.*, 858 F.3d 1324, 1335 (10th Cir. 2017)) – plaintiffs have met their burden of proving causation, even if the record establishes that the defendant's conduct was one of many contributing factors. *Murphy v. Schaible, Russo & Co.*, 2020 WL 2041346, at *10 (D. Colo. Apr. 28, 2020).

The Court therefore erred in excluding Jon Simon's testimony on the ground that he had failed to rule out the possibility that other factors, in addition to affiliation, may also have played a role in reducing the comparative value of the Aspen Highlands property – and the Court further erred in concluding that the jury could not reasonably infer causation based on the record evidence, based on its conclusion that lay jurors are not qualified to rule out the effects of other potential causative factors without expert guidance.

Plaintiffs also request reconsideration of the Court's order precluding expert witness Jon Simon from basing his causation analysis, even in part, upon Maurice Robinson's comparative-property-valuations analysis. The Court has already found that Robinson's methodology is reliable and that his resulting analysis is therefore admissible. Dkt. 583 at 18-24. It is clear, based on the uniform case law addressing the issue, that analogous comparative studies – where the value of property affected by a defendant's conduct is compared to similar properties untainted by the conduct – are admissible to establish resulting loss, i.e., causation. *See, e.g., Brotherston v. Putnam Investments, LLC*, 907 F.3d 17, 32-33 (1st Cir. 2018). Simon should therefore have been allowed to rely in part upon Robinson's opinion (which showed a significant drop in value of the Aspen Highlands property after affiliation, as compared to similar properties in that area) in formulating his own opinion on causation.

Even without Simon's expert opinion, moreover, those same case authorities dictate that the *jury* should be permitted to consider Robinson's analysis in reaching its own conclusions about causation, even though Robinson was not designated as a "causation" expert, because what matters is Robinson's substantive analysis of the facts that he was qualified to testify about (the fact, extent, and timing of the comparative drop in value), not what label is attached to that analysis.

## II. LEGAL STANDARD

Although the Federal Rules of Civil Procedure do not expressly allow motions for reconsideration, a district court has "plenary power to revisit and amend interlocutory orders as justice requires." *Vigil v. Colorado Dep't of Corr.*, 2011 WL 1518660, at *1 (D. Colo. Apr. 20, 2011) (citation omitted). A court may revise any order that "adjudicates fewer than all the claims" in the case at any time before the entry of a judgment on all claims and defenses. *Id*.

Where a party seeks reconsideration of a non-final order, courts should "consider whether new evidence or legal authority has emerged or whether the prior ruling was clearly in error." *Id*. Reconsideration is warranted where "the court has misapprehended the facts, a party's position, or the controlling law." *Id*.

Plaintiffs respectfully submit that the Court misapprehended controlling law by holding expert witness Jon Simon to a higher burden in establishing the admissibility of his opinion than Plaintiffs themselves must satisfy in proving Marriott's breach of fiduciary duty. The Court similarly erred in ruling that the jury cannot draw a just and reasonable inference that Marriott's wrongful affiliation was a substantial cause of a reduction in value of Plaintiffs' fractional interests, based on its conclusion that jurors are not competent to rule out alternative causes

4

without the guidance of expert testimony. Finally, the Court erred in precluding the jury from relying on Robinson's findings as evidence of causation and from precluding Simon from relying on those findings in opining on causation, because Robinson's analysis of comparative value loss is sufficiently reliable to establish a just and reasonable inference of causation under applicable law. Each of those errors independently requires reconsideration to avoid manifest injustice.

## III.  ARGUMENT

### A.  The Court Should Reconsider Its Order Excluding the Testimony of Causation Expert Jon Simon Because Plaintiffs Have No Affirmative Obligation to Disprove Alternative Theories of Causation

A court cannot exclude expert witness testimony under Federal Rule of Evidence 702 based on a rationale that is contradicted by the substantive law at issue in the case. *See Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 877-83 (10th Cir. 2006) (Federal Rules of Evidence yield to state laws that "reflect[] substantive concerns or policies"); 28 U.S.C. § 2072(b) (Rule 702 "[can]not abridge, enlarge or modify any substantive right."). Put another way, a court evaluating the sufficiency of a proposed expert's qualifications or opinion under *Daubert* must determine whether the expert is qualified to present an opinion that would be relevant to a contested issue in the case, given the governing legal standards, and cannot require that expert to opine on additional, irrelevant issues as a precondition for being allowed to testify at all.

To satisfy *Daubert*, the expert's opinion need not be independently sufficient "to meet a party's burden of proof or even necessarily its burden of production." *Heller v. Shaw Industries, Inc.*, 167 F.3d 146, 152 (3d Cir. 1999). It need not even be persuasive. *Id*. And it *never* needs to address issues that the designating party has no burden to establish.

5

Jon Simon concluded, based on his extensive experience in the vacation ownership industry and his analysis of the evidence that Plaintiffs intend to present at trial, that Marriott's affiliation of MVC with Aspen Highlands was "a substantial factor in causing the value of Plaintiffs' fractional interests to decline and/or not increase in comparison with similar properties" where no affiliation with a timeshare company occurred. Dkt. 461-3 (Simon Report) at p. 11.[2] Simon based his opinion, in part, on his expertise evaluating the differences between (1) private residence clubs (like Aspen Highlands) that sell deeded properties and are marketed at a premium price based on their claimed exclusivity and (2) other timeshare programs like the points-based MVC that provide low-priced access to less-exclusive properties to a broader group of prospective visitors. *Id*. at p. 21-23. Simon examined the evidence and, based on his experience, opined that Marriott's affiliation of MVC with Aspen Highlands caused economic harm to Plaintiffs by reducing the value of their fractional interests in that property. *Id*. at p. 23. Simon also relied on fellow expert Maurice Robinson's comparative-property-value analysis in formulating Simon's own expert opinion on causation. *Id*. at ¶ 36, n.50; ¶ 22. Because Simon's testimony is directly relevant to the issues presented, the Court should allow the jury to consider that testimony when it exercises its fact-finding function regarding causation. *See Beltran v. InterExchange, Inc.*, 2018 WL 526907, at *5 (D. Colo. Jan. 24, 2018).

---

[2] Plaintiffs have consistently pointed to the substantial factor causation standard in their briefing on this issue. In their opposition to the *Daubert* motion, Plaintiffs emphasized that Simon's causation opinion was not that the affiliation was the sole causal factor, but rather a substantial factor in Plaintiffs' loss. Dkt. No. 515 at 22. Likewise, Plaintiffs pointed out in their opposition to a second summary judgment motion that they need only show substantial factor causation. Dkt. No. 585 at 4.

The Court excluded Simon's opinion because he did not "explain why, based on his experience, other potential causes for the diminution in value are inapplicable here . . ." Dkt. 583 at 15. Colorado law is clear, though, that a plaintiff suing for breach of fiduciary duty need only demonstrate that the defendant's conduct was a substantial factor in causing the harm and need not rule out other possible alternative causes of the harm. As the Colorado Supreme Court has explained, "[i]f the defendant's conduct is a substantial contributing cause of the injury, it is irrelevant to the causation analysis whether other factors, including market forces beyond the defendant's control, also contributed to the injury." *Rupert v. Clayton Brokerage Co. of St. Louis, Inc.*, 737 P.2d 1106, 1112 (Colo. 1987); *Vento v. Colorado Nat. Bank-Pueblo*, 907 P.2d 642, 646 (Colo. App. 1995); *Murphy,* 2020 WL 2041346 at *10.

Under *Rupert*, Plaintiffs have no obligation to account for other possible causes, and therefore neither does their expert causation witness. The two cases previously cited by this Court for the proposition that expert testimony may be excluded "where the expert has failed to differentiate between or exclude other potential causes of a plaintiff's damages" (Dkt. 583 at p. 14) – *Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*, 427 F. Supp. 2d 1022, 1031 (D. Kan. 2006), and *In re Williams Securities Litig.*, 496 F. Supp. 2d 1195, 1266 (N.D. Okla. 2007) – are therefore inapposite. Neither case involved a claimed breach of fiduciary duty and neither applied (or was required to apply) *Rupert's* substantial-factor test. *Sunlight Saunas* involved a tortious inference with contract and other unfair business practices claims, while *Williams* was a securities fraud action.

Although Marriott is entitled to present evidence and to argue that the diminution in value of the Aspen Highlands property was partially or entirely attributable to "non-actionable" factors

7

rather than to the affiliation (although thus far Marriott has presented nothing beyond speculation concerning any alternative causes), that evidence would merely go to the weight of Simon's causation testimony and should have no bearing on the threshold question of admissibility under Rule 702. *Cook v. Rockwell Intern. Corp.*, 580 F.Supp.2d 1071, 1113-14 (D. Colo. 2006).

For these reasons, and particularly because Plaintiffs' causation expert cannot be required under Rule 702 to meet a burden of proof any greater than Plaintiffs themselves must satisfy, the Court erred in requiring Simon to rule out all potential causes *other than* affiliation for the significantly reduced value of Plaintiffs' fractional interest in Aspen Highlands after that affiliation. *See generally Sims*, 469 F.3d at 877-83; *Heller*, 167 F.3d at 152.

The Court should also independently reconsider the portion of its ruling that precluded Simon from basing his causation analysis in part upon Maurice Robinson's admissible and reliable comparative-value analysis. It is well-established that one expert may rely on another expert's data and analysis. *Hunt v. Green*, 2004 WL 5499533, at *4 (D.N.M. July 22, 2004) (citing Fed. R. Evid. 703, Advisory Committee Notes). For example, in *Delgado v. Unruh*, the district court found an expert's testimony to be admissible to establish causation in a car accident case even though that expert's opinion only addressed the speed of the collision and not causation, because a second expert had relied on that opinion to determine the force exerted on the plaintiff's body (and thus whether that force could have been a cause of the alleged injuries). 2017 WL 957437, at *8 (D. Kan. Mar. 13, 2017). Similarly here, although Robinson did not himself testify as to causation, another expert, Simon, relied on Robinson's analysis as one basis for his opinion that the loss in value calculated by Robinson was attributable to, i.e., caused by, Marriott's challenged affiliation.

Simon has over 35 years of experience in the hospitality industry, including extensive experience valuing and operating vacation ownership projects. Simon Report at pp. 2-3 and 52, Appendix A. In the section of his report explaining the bases for his causation opinion, Simon cited Robinson's analysis and noted: "While I recognize that the fractional industry as a whole declined, the key here is that the Ritz-Aspen was compared to other fractional projects (all of which increased from their low-point after the Great Recession) in the same marketplace; and none of which opened their clubs up to the traditional timeshare access subsequent to selling fractional interests." *Id*. at ¶ 36, n.50. Simon therefore relied on Robinson's findings (in addition to his industry knowledge and experience and his review of evidence in this case) as a basis for his expert opinion that the affiliation was a substantial factor in causing at least *some* diminution in value to Plaintiffs' property. *Id*. at ¶ 36. For purposes of causation, Simon's conclusion that the challenged affiliation caused *some* resulting loss is all that Plaintiffs need to establish liability, regardless of how much of that loss is attributable to any particular cause.

Many courts have found similar comparative analyses sufficient evidence to satisfy a plaintiff's prima facie burden on causation. For example, in *Putnam Investments*, the First Circuit found that the plaintiffs suing for breach of fiduciary duty met their burden of proving "resulting loss" by presenting an expert witness's analysis of how poorly the mutual funds that defendants selected for their 401(k) performed in comparison to benchmark funds outside the defendants' 401(k) portfolio. 907 F.3d at 32-33. Similarly, in *CDX Liquidating Trust v. Venrock Assocs.*, the Seventh Circuit concluded that the plaintiffs met their burden of proving "related loss" by presenting evidence comparing the subject company's changed finances with the finances of a similar company that faced the same adverse market conditions but was "uncontaminated by

9

disloyal directors." 640 F.3d 209, 218 (7th Cir. 2011). That "comparability" analysis was sufficient to give rise to an issue of fact for the jury: whether defendants' breach of their duty of loyalty was a substantial factor in the first company's comparatively diminished value. *Id*. at 215-16; *see also Vento*, 907 P.2d at 647 (inferring causation in breach-of-fiduciary-duty case based on evidence of lower valuation after alleged breach).[3]

Robinson's comparative-value analysis is the same type of "related loss" evidence that the courts of appeal in *Putnam Investments*, *CDX*, and *Vento* found sufficient to create a disputed issue of fact in cases alleging breach of fiduciary duty. Although in *CDX* and *Vento*, it was the court (rather than an expert) that drew the inference of related loss based on the comparative evidence presented, *Vento*, 907 P.2d at 747; *CDX*, 640 P.2d at 218, that just confirms that a jury could draw such inferences itself, without the testimony of a causation expert. It necessarily follows that an expert like Jon Simon could also legitimately base his opinion upon such comparative data.

Because Simon expressly opined that Robinson's analysis supported his conclusion that affiliation was a substantial factor in causing a reduction in the value of Plaintiffs' fractional interests in Aspen Highlands, it should have been irrelevant that Robinson did not present himself as a "causation" expert. *But cf.* Dkt. 583 (quoting Dkt. No. 461-6 at 3 (approving

---

[3] Marriott mistakenly criticizes Plaintiffs' reliance on *CDX* and *Putnam Investments* by asserting that the Tenth Circuit in *Pioneer Centres* rejected those cases' burden-shifting analysis. Dkt. 601 at 4. The Tenth Circuit did no such thing. The Tenth Circuit in *Pioneer Centres acknowledged* the appropriateness of burden-shifting under the common law of trusts, citing Restatement (Third) of Trusts, section 100 cmt. f, and merely concluded as a matter of statutory construction that common law burden-shifting did not apply to claims for breach of fiduciary duty under ERISA. *Pioneer Centres Holding Co.*, 858 F.3d at 1335-36. Here, of course, Plaintiffs bring a common law breach-of-fiduciary-duty claim, as to which burden-shifting plainly applies.

Robinson's methodology for calculating the "but for" sales price); *id.* (*quoting* Dkt. 461-6 at 8) (same). Reconsideration should therefore be granted on this ground as well.

### B. The Jury Should Be Able to Consider Robinson's Analysis as Evidence of Causation Even Though He Did Not Expressly Opine on Causation

The Court also erred in precluding the jury from relying on Maurice Robinson's analysis as evidence of causation, because even though Robinson did not expressly opine on causation, under *CDX* and *Putnam Investments*, his comparative-valuate analysis is sufficient to raise a just and reasonable inference of causation.

Robinson concluded, based on a methodology approved by the Court, that after Marriott affiliated its MVC members with the Aspen Highlands resort property, Plaintiffs' fractional interests in Aspen Highlands *declined* at an average annual rate of 14.8%, while the value of shares of comparable high-end properties in the Aspen area *increased* at an average annual rate of 2.6%. Dkt. 461-8 (Robinson Report) at p. 8-9. Robinson reached that result "by subtracting the actual or average sales price per square foot at [Aspen Highlands] from the 'but for' price per square foot) (what the price would have been absent the challenged conduct, estimated from the analysis of comparable properties) . . ." Dkt. 583 at p. 20.

Robinson's expert analysis should have been found sufficient to satisfy Plaintiffs' threshold burden of establishing that Marriott's breach of fiduciary duty caused a "related loss." A plaintiff suing for breach of fiduciary only needs to show by just and reasonable inference that the defendant's breach caused the plaintiff's injury. The burden of production then shifts to the defendant to show that its conduct *did not* cause the injury (while the ultimate burden of persuasion remains with the plaintiff). Restatement (Third) of Trusts § 100, cmt. *f* (2012). Neither *Putnam Investments* nor *CDX* required an expert to opine that the comparative change in

11

value establishes causation; it was enough that the expert presented facts sufficient to establish a comparative change during the relevant time period, which in turn enabled the trier of fact to find that the plaintiffs had satisfied their burden of showing that the defendant's challenged conduct was a substantial contributing cause of their economic injury.

So too, here, the jury can draw a reasonable inference of causation based on Robinson's analysis, even though Robinson did not expressly link Marriott's conduct to Plaintiffs' diminution in value.

A similar situation arose in *Cook*, 580 F.Supp.2d 1071. There, one of the plaintiffs' experts (John Radke) measured the effect on plaintiffs' property values of those properties' proximity to the defendant's nuclear facility. The defendants sought to exclude Radke's testimony based on the fact that he only measured diminution in value based on proximity to the facility, rather than addressing the diminution in value *caused by* the underlying claims (trespass and nuisance through contamination). The court rejected defendants' argument, concluding that Radke's analysis of the reduced property values in the vicinity of defendants' nuclear facility was closely enough related to the dispute over causation to be probative, even though Radke did not expressly state any opinion regarding "causation." *Id*. at 1112-13. So too here, Robinson's analysis provides probative evidence of causation regardless of how he labeled his opinion.

The Court therefore erred in concluding that Robinson's analysis did not provide sufficient grounds for the jury to infer resulting loss simply because he did not state that he was providing an opinion on "causation." It should have been found sufficient that Robinson had established the requisite factual foundation, based upon his expert comparative analysis, from which the jury could reasonably infer "related loss," i.e., some loss in value to Plaintiffs' units

12

resulting from the affiliation of MVC with their formerly exclusive and deluxe property. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946) (where the law requires burden-shifting, the plaintiff's initial burden is merely to present sufficient evidence from which the trier of fact could draw "a just and reasonable inference" that the elements of a prima facie case exist).

The fact that Robinson did not use the words "causation" or "proximate cause" or "resulting loss" – the ultimate issue – does not make his predicate analysis useless to the jury in determining causation. To the contrary, Robinson's comparative-loss-in-value analysis provides the exact type of predicate factual underpinning that a jury could reasonably rely upon in concluding that Marriott's breach of fiduciary duty was at least one substantial factor in the resulting fact of damages. *See Smith v. Ford Motor Co.*, 215 F.3d 713 (7th Cir. 2000) (an "expert's testimony need not relate to the ultimate issue in order to be relevant under Rule 702;" an expert's testimony is relevant so long as it will "assist the jury in determining *any* fact at issue"). The Court's rulings to the contrary should be reconsidered.

## IV.   CONCLUSION

This lawsuit was filed in 2015 and has been extensively litigated for nearly five years. Trial is currently scheduled for January 19, 2021. As a result of this Court's recent rulings, which Plaintiffs believe were legally erroneous, there is a substantial risk that the jury will be precluded from considering highly relevant expert testimony bearing on a critical element of Plaintiffs' case, and that the jury will itself be precluded from making findings concerning causation and damages that, under the existing record, would be fully supported by the evidence, with or without the precluded expert testimony. For the reasons set forth above and in Plaintiffs'

13

previous briefing regarding Marriott's *Daubert* challenge, Marriott's motion to file a supplemental summary judgment motion, and that supplemental summary judgment motion itself, this Court should grant the requested reconsideration and allow (1) Jon Simon to testify on causation and (2) the jury to consider Maurice Robinson's testimony and other evidence in determining causation as a matter of just and reasonable inference.

Dated: November 13, 2020

Respectfully submitted,

*/s/ Michael Schrag*
Michael Schrag (CA State Bar # 185832)
Linda Lam (CA State Bar #301461)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: (510) 350-9718
E-mail: mls@classlawgroup.com
          lpl@classlawgroup.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 13th day of November, 2020, a true and accurate copy of the foregoing **PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDERS EXCLUDING JON SIMON'S TESTIMONY ON CAUSATION AND MAURICE ROBINSON'S ANALYSIS AS EVIDENCE ON CAUSATION** was served via CM/ECF filing system upon the following:

Naomi G. Beer, Esq.
*BeerN@gtlaw.com*
Greenberg Traurig, LLP
1200 17th Street, Suite 2400
Denver, Colorado 80202

Ian S. Marx, Esq.
*MarxI@gtlaw.com*
Philip R. Sellinger, Esq.
*SellingerP@gtlaw.com*
Greenberg Traurig, LLP
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932

*/s/ Linda Lam*
Linda Lam