IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 16-01301 PAB

RCHFU, LLC, et al.

      Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al.

      Defendants.

---

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF PARTS OF THE JUNE 1, 2020 ORDER AND THE OCTOBER 13, 2020 ORDER**

Defendants submit this opposition to Plaintiffs' motion for reconsideration (ECF #602) of: (1) the June 1, 2020 Order to the extent it excludes Jonathan Simon's expert opinion on causation of diminution in value ("*Daubert* Order") (ECF #583); and (2) the October 13, 2020 Order to the extent it holds that Maurice Robinson did not opine on causation and that expert testimony is needed to establish causation ("Causation Order") (ECF #596).

## INTRODUCTION

Plaintiffs' reconsideration motion should be denied for several reasons. <u>First</u>, it is untimely. Plaintiffs unjustifiably waited five and one-half months after the *Daubert* Order was issued and one month after the Causation Order was issued to bring their motion. Moreover, they strategically held off filing their motion until after Defendants' supplemental motion for summary judgment was fully briefed so that they could see and attempt to rebut Defendants' causation-related arguments. This unwarranted delay and blatant gamesmanship are alone enough to warrant denial of Plaintiffs' motion. <u>Second</u>, Plaintiffs' motion does not meet the standard for reconsideration motions, as it improperly consists of (1) newly-minted arguments that could have

been presented as part of earlier motions but are only now being raised at the 11th hour with a trial date approaching; or (2) arguments that the Court has already heard and rejected in its prior orders. Third, the arguments Plaintiffs make are substantively without merit and, thus, do nothing to alter the fundamental holdings of either the *Daubert* Order or the Causation Order. Plaintiffs' motion should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 2019, Defendants moved to preclude the expert opinions of Simon, Robinson and a third proffered expert (Chekitan Dev) pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). In opposing Defendants' *Daubert* motion, Plaintiffs did not argue (as they now do) that Simon could rely on Robinson's pricing calculations to support his causation opinion. *See* Pl. Opp. Br. on *Daubert* motion (ECF #494) at 15-23. On June 1, 2020, the Court issued the *Daubert* Order, which excluded both Simon's and Dev's causation opinions. (ECF #584 at 10-12, 14-15). Plaintiffs did not seek reconsideration of the *Daubert* Order.

Shortly after the *Daubert* Order was issued, on June 22, 2020, Defendants moved for leave to file a supplemental summary judgment motion ("Motion for Leave") (ECF #584), seeking to dispose of the entire case on the ground that, given the *Daubert* Order and the Court's ruling that Robinson offered no opinion on causation, Plaintiffs have no causation expert and, therefore, cannot establish the causation element of their claims. In opposing the Motion for Leave (which was fully briefed by July 27, 2020 (ECF # 586)), Plaintiffs did not challenge the *Daubert* Order; rather, they made the same argument that they are making now with regard to Robinson's price-comparison calculations. *See* Pl. Opp. to Motion for Leave (ECF #585).

On October 13, 2020, the Court issued the Causation Order, which granted the Motion for

Leave and held that (1) "the issue of causation in this case is beyond the common knowledge of jurors" and, thus, that "expert testimony is required to prove causation in this case" (ECF #596 at 6-9, 11); and (2) "Mr. Robinson's expert testimony is insufficient to prove causation, as plaintiffs have not designated Mr. Robinson as an expert on causation and Mr. Robinson does not attempt to opine on causation." Causation Order at 10-11. Plaintiffs did not challenge in October 2020, either the *Daubert* or Causation Orders. Instead, they waited another month after the Causation Order to move for reconsideration of parts of those orders -- that is, they waited until Defendants' supplemental summary judgment motion had been fully briefed to file this motion. (ECF #598, 599, 601).

## ARGUMENT

### I.  PLAINTIFFS CANNOT MEET THE STANDARD FOR RECONSIDERATION.

Reconsideration of a previous order "is an extraordinary remedy that should be used sparingly." *Myers v. Alliance for Affordable Servs.*, 2005 U.S. Dist. LEXIS 55937, at *4 (D. Colo. Aug. 12, 2005). A motion for reconsideration may only be granted when the court has misapprehended either the facts, a party's position, or the law. *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Thus, the grounds for reconsideration are limited to "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id*. In addition, a motion for reconsideration must be filed "within a reasonable time" of the challenged order. *Tso v. Murray*, 2019 U.S. Dist. LEXIS 26829, at *5 (D. Colo. Feb. 20, 2019) (Brimmer, *J.*) (quoting Fed. R. Civ. P. 60(c)). Plaintiffs' belated motion does not meet this standard.

**A.   Plaintiffs' Challenges to Both Orders Are Untimely**

A party that has delayed moving for reconsideration of an order must show "sufficient justification for [the] delay," considering "the interest of finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." *Saggiani v. Strong*, 718 Fed. Appx. 706, 710 (10th Cir. 2018).   A motion for reconsideration filed long after the movant became aware of the basis for the motion should be denied (*see Tso*, 2019 U.S. Dist. LEXIS 26829, at **6-7), and a district court should not countenance a delay that is driven solely by a party's litigation strategy or tactics. *Gbogo v. Gonzales*, 177 Fed. Appx. 831, 833 (10th Cir. 2006).   Plaintiffs' unreasonably delayed and artfully-timed challenges to the *Daubert* Order and the Causation Order should be denied.

**1.   Plaintiffs' motion to reconsider the *Daubert* Order is untimely**

Plaintiffs have no justification for seeking, at this late date, reconsideration of the *Daubert* Order excluding Simon's causation-related opinions.   Plaintiffs waited five and one-half months to raise their current arguments, even though the obvious impact of the *Daubert* Order was that Plaintiffs would be unable to establish the causation element of their claims.   Any conceivable doubt they could have had about how the *Daubert* Order affected their case was conclusively dispelled on June 22, 2020, when Defendants moved for leave to file a supplemental summary judgment motion.   The whole point of Defendants' Motion for Leave was that, given the *Daubert* Order, Plaintiffs could not establish a *prima facie* case; yet Plaintiffs failed to move for reconsideration at that time.   Plaintiffs did not seek to resurrect Simon's long-barred causation opinions until <u>a month after</u> the Court entered its Causation Order (which held that the jury could not determine causation without the benefit of expert testimony), and <u>only after</u> Defendants'

4

supplemental summary judgment motion had been fully briefed.  Plaintiffs strategically held off filing their motion so that they could preview and attempt to rebut Defendants' summary judgment arguments.  This kind of gamesmanship should not be countenanced.

### 2.  Plaintiffs' motion to reconsider the Causation Order is untimely

Likewise untimely is Plaintiffs' motion for reconsideration of the Causation Order's holding that "Mr. Robinson's expert testimony is insufficient to prove causation."  (ECF #596 at 10-11).  The arguments Plaintiffs are now making are largely identical to those they raised four months ago in opposing the Motion for Leave.  *See* Point I.B.2, *infra*.  Thus, Plaintiffs could have moved for reconsideration immediately after the Causation Order was entered.  Indeed, Plaintiffs have known since June 1, 2020 that they had no expert testimony on causation.  Moreover, they have known since July 27, 2020 (when the Motion for Leave was fully briefed) that the Court could, at any time, grant the Motion for Leave and, in so doing, could rule (as it ultimately did) that Plaintiffs could not establish causation without expert testimony.  Thus, Plaintiffs had no justification for waiting until after Defendants' supplemental summary judgment motion was fully briefed to move for reconsideration of the Causation Order.

### B. Plaintiffs' Reconsideration Motion Improperly Raises New Arguments That Could Have Been Made Earlier or Rehashes Arguments Already Presented and Rejected

The Tenth Circuit has made clear that, where a party has "had the chance and incentive to present…all [its arguments] at earlier stages in the proceedings; it has enjoyed vigorous representation by counsel throughout several years of proceedings; [and] no one cites any new legal or factual developments that have intervened since the time of [the court's] last decision…it would be unfair to [the adverse party] and a waste of judicial resources for th[e] court to entertain

any further new arguments on old issues, like some sort of extended game of litigation whack-a-mole." *Entek GRB, LLC v. Stull Ranches, LLC*, 840 F.3d 1239, 1242 (10th Cir. 2016); *see also Tso*, 2019 U.S. Dist. LEXIS 26829, at *5 (motion for reconsideration must be based on an intervening change in the law, previously unavailable evidence, or a clear error by the court).  A motion for reconsideration should not be granted where a party merely disagrees with the court's holding and wishes either to reargue points that it already made on the underlying motion, or raise new arguments based on the same evidence.  *See Rodeman v. Foster*, 767 F. Supp. 2d 1176, 1189 (D. Colo. 2011) (Brimmer, *J.*) ("Motions for reconsideration are 'inappropriate vehicles to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion'") (quoting *Servants of Paraclete*, 204 F.3d at 1012); *Lynch v. CRC Indus., Inc.*, 2020 U.S. Dist. LEXIS 203869, at *4 (D. Colo. Nov. 2, 2020) (same); *EEOC v. Jetstream Ground Servs., Inc.*, 2016 U.S. Dist. LEXIS 29500, at *6 (D. Colo. Mar. 8, 2016) (same).  Plaintiffs' motion for reconsideration suffers from all the aforementioned defects.

### 1.  The *Daubert* Order

In moving the Court to reconsider the portion of the *Daubert* Order precluding Simon's causation opinion, Plaintiffs offer two never-before-made arguments.  First, Plaintiffs claim that the Court committed clear legal error in holding that Simon should have accounted for other contributing causes of the diminution in market value of Plaintiffs' fractional interests, and they assert that this holding is manifestly unjust because it deprives them of the expert testimony they need to show causation.  Pl. Br. at 2-3, 5-8.  This is not "clear error" or "manifest injustice"; Plaintiffs simply disagree with the Court's ruling.  *See Brumark Corp. v. Samson Res. Corp.*, 57

F.3d 941, 944 (10th Cir. 1995) (for purposes of a reconsideration motion, concepts of "clear error" and "manifest injustice" do not extend to a party's mere disagreement or dissatisfaction with district court's conclusion).  Moreover, in their September 3, 2019 brief opposing exclusion of Simon's causation opinion, Plaintiffs only claimed that Simon's opinions on causation were within the bounds of permissible expert testimony under *Daubert*. (ECF #494 at 15-23).  They did not advance the argument they now make, namely, that Simon did not have to account for other contributing causes of the diminution in market value of Plaintiffs' fractional interests.[1]  They are, therefore, effectively asking the Court to "reconsider" an argument that was never presented. Plaintiffs do, in this motion, reiterate their position that Simon need only establish that the MVC Affiliation was a "substantial factor" in causing Plaintiffs' alleged damages (rather than the sole cause).  ECF #494 at 22.  But that argument was already heard and rejected, and, as noted, mere dissatisfaction with the Court's ruling is not a valid basis for reconsideration.

Second, Plaintiffs argue, in the alternative and for the first time, that Simon should be allowed to rely at trial on Robinson's "comparative-value analysis" and then offer an impermissible net opinion on causation.  Plaintiffs base this argument on a footnote in Simon's report that cites to a table in Robinson's report comparing the market value of fractional interests at RC Club Aspen to market values of fractional interests at other resorts in Aspen.  Pl. Br. at 8-10.  Again, this argument cannot be "reconsidered" on Plaintiffs' motion because, despite its prior availability, it was never before made, either in Plaintiffs' September 3, 2019 opposition to

---

[1] Significantly, Plaintiffs made a similar argument in opposition to excluding Simon's opinion on disgorgement of unjust "halo profits" (ECF #494 at 23-29), but they did not make this argument in opposition to excluding Simon's opinion on causation. Thus, Plaintiffs could have, but did <u>not</u>, advance this argument with regard to Simon's causation opinion.

Defendants' *Daubert* motion (ECF #494 at 15-23) or in their July 13, 2020 opposition to Defendants' Motion for Leave (ECF #585).[2]

## 2. The Causation Order

In challenging the Causation Order's holding that Robinson's testimony is insufficient to prove causation (*see* ECF #596 at 10-11), Plaintiffs simply rehash arguments the Court has already heard and rejected. Plaintiffs maintain that, "even though Robinson did not expressly opine on causation" and "did not expressly link Marriott's conduct to Plaintiffs' diminution in value," the jury may nonetheless infer from Robinson's "comparative-value" analysis that the MVC Affiliation caused "some loss in value to Plaintiffs' units." Pl. Br. at 11-13. This was the same argument they made over four months ago in opposing Defendants' Motion for Leave:

> The jury can [] reasonably infer causation from the evidence that expert Maurice Robinson assembled and summarized in support of his damages analysis…. A reasonable juror could infer from [Robinson's finding that "while interests at [] comparable properties *increased* at an average annual rate of 2.6%, Plaintiffs' interests *decreased* at an average annual rate of 14.8%"] that the [MVC] Affiliation … caused property values to drop.

ECF #585 at 6-7; *see also id.* at 9 ("[T]he Robinson sales comparison report…allows a jury to infer causation."). In issuing the Causation Order, the Court rejected Plaintiffs' assertion that "there is sufficient…evidence [from] which a jury could infer causation." (ECF #596 at 5.) And the Court unequivocally found "Mr. Robinson's expert testimony… insufficient." (ECF #596 at 10).[3] That Plaintiffs disagree with the Court on this point is of no moment for purposes of their

---

[2] In any event, the footnote in Simon's Report does not show that Simon relied on Robinson's analysis in opining on causation. In fact, Robinson's analysis is not even listed as one of the bases for Simon's opinions on causation. *See* October 26, 2018 Report (ECF #461-3) Ex. C, ¶¶ 6, 9, 16(b)-(d), 32-36.

[3] Plaintiffs further argue that Robinson's analysis is "sufficient to satisfy Plaintiffs' threshold burden of establishing that Marriott's breach of fiduciary caused a 'related loss,'" and that "[t]he

motion for reconsideration.

**II.     THE COURT'S EARLIER ORDERS WERE CORRECTLY DECIDED.**

Even if Plaintiffs' motion were timely and met the standard for reconsideration, it should

be denied because both the *Daubert* Order and the Causation Order were correctly decided.

**A.   The Court Correctly Excluded Simon's Opinions on Causation as Unreliable.**

In initially determining that Simon's opinions on causation were unreliable, the Court held

that Simon had failed to

> … set out what other possible causes could have led to an alleged diminution in
> value of plaintiffs' shares, or account for those possible causes or opine what effect,
> if any, those factors have on his causation opinion….  By failing to do so, Mr.
> Simon does not create a link between his experience and his opinion as applied to
> the facts of this case …, does not explain how he decided to attribute the alleged
> diminution in value to the affiliation rather than other unnamed factors, and does
> not explain why, based on his experience, other potential causes can be eliminated
> here.

ECF #583 at 14 (internal quotations omitted).  Citing a number of authorities in which expert

opinions on causation were excluded because "the expert … failed to differentiate between or

exclude other potential causes of a plaintiff's damages," the Court held:

> [E]ven if Mr. Simon's opinion is based on his own experience, he cannot ignore the
> fact that other potential causes for the loss in value of plaintiffs' shares exist.  A
> general belief that a higher-end brand providing lower-cost access to its brand can
> dilute the brand's value is not enough to form an opinion that this happened in this
> case; Mr. Simon's failure to explain why, based on his experience, other potential
> causes for the diminution in value are inapplicable here renders his opinion
> unreliable.

*Id*. at 14-15.  These holdings squarely address Plaintiffs' current arguments that Simon need not

---

burden of production" should then "shift[]" to Defendants to show that their alleged conduct "*did
not* cause the injury."  ECF #602 at 11 (emphasis in original).  Plaintiffs previously presented this
"burden-shifting" argument in opposition to the Motion for Leave (ECF #585 at 10-11), however,
and the Court has not yet ruled on it.  (ECF #596 at 11).

have accounted for alternate causative factors, and they are well-grounded in law. *See, e.g., In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1130, 1134, 1136 (10th Cir. 2009) (affirming grant of summary judgment for defendant in securities class action where sole evidence of loss causation was expert opinion that failed to account for market and industry effects on stock price); *Hubbell v. Carney Bros. Constr.*, 2011 WL 1060239, at *2-*3 (D. Colo. Mar. 23, 2011) (in action arising from construction defect, striking expert damages report for failing to exclude other factors in opining that defect caused diminution in property's value).[4]

Plaintiffs try to overcome the fatal flaws in Simon's analysis by resorting to an incorrect statement of the law as to which party bears the burden of proof with respect to the element of causation for claims of breach of fiduciary duty and unjust enrichment. As Defendants argued in support of their recent summary judgment motion, Plaintiffs' contention that they need only make a threshold showing of loss to cause the burden to shift to Defendants to disprove the connection between the MVC Affiliation and their alleged injuries is contrary to Tenth Circuit precedent. Under the law in this Circuit, "the burden falls squarely on the plaintiff asserting a breach of fiduciary duty claim…to prove losses…'resulting from' the alleged breach of fiduciary duty.'" *See*

---

[4] *See also Cannon v. BP Prods. N. Am., Inc.,* 2013 WL 5514284, at *7 (S.D. Tex. Sept. 30, 2013) (finding expert's hedonic regression analysis unreliable because it failed to account for alternative explanations for diminution in property value, such as crime rates, proximity to floodplain, and availability of insurance after major hurricane); *Trugreen Cos. v. Scotts Lawn Serv.,* 508 F. Supp. 2d 937, 960-61 (D. Utah 2007) (finding expert's opinion on causation unreliable because it failed to account for at least eight "confounding causes" of parties' respective revenue gains and losses unrelated to defendant's alleged misconduct); *Sigur v. Emerson Process Mgmt.*, 2007 WL 1893632, at *5 & n.13 (M.D. La. Apr. 25, 2007) (finding expert's opinion on the cause of decline in plaintiff's sales unreliable because it failed to account for impact of other market factors, e.g., hurricanes, cyclical nature of "turnaround operations" in the industry, or the impact of competition); *Prepaid Wireless Servs., Inc. v. Southwestern Bell Wireless*, 2002 WL 34367328, **4-5 (S.D. Tex. July 23, 2002) (finding expert's damages opinion unreliable because his "model does not address which damages were caused by Defendants' breaches").

*Pioneer Centres Holding Co. Employees Stock Ownership Plan & Trust v. Alerus Fin., N.A.*, 858 F.3d 1324, 1335 (10th Cir. 2017) (refusing to apply burden-shifting principles from the common law governing trusts to ERISA case).

Recognizing that Tenth Circuit law is against them, Plaintiffs cite First and Seventh Circuit opinions that sanctioned burden-shifting in other contexts. *See* Pl. Br. at 3 (citing *Brotherston v. Putnam Investments, LLC*, 907 F.3d 17 (1st Cir. 2018)); *see also id.* at 9-10 (citing *CDX Liquidating Trust v. Venrock Associates*, 640 F.3d 209 (7th Cir. 2011)).[5]  Given that the Tenth Circuit has already spoken on the issue, Plaintiffs' reliance on these out-of-jurisdiction cases is misplaced and improper.[6]

Similarly specious is Plaintiffs' argument that Simon can support his causation opinion simply by relying on materials included in Robinson's report.  For an expert's opinion to be admissible, the expert must conduct his own independent analysis and cannot merely "relay" the opinions of other experts.  *Gallardo v. United States*, 2012 WL 1191864, at *3 (D. Colo. Apr. 10, 2012) (Brimmer, *J.*); *see also Mooring Capital Fund, LLC v. Knight*, 388 Fed. Appx. 814, 820 (10th Cir. 2010) ("An expert is not entitled to testify to opinions that rely on the opinion of another expert, simply because the other is an expert.").  Rather, when one expert relies on another expert's

---

[5] Even if *Putnam* and *CDX* had any relevance here (i.e., even if their holdings did not conflict with the rule in this Circuit), Plaintiffs' belated reliance on them is misplaced, as Plaintiffs did not cite them in opposing the Daubert Motion or the Motion for Leave.

[6] Plaintiffs' other cases (*Rupert v. Clayton Brokerage Company of St. Louis, Inc.*, 727 P.2d 1106 (Colo. 1987), and *Vento v. Colorado National Bank Pueblo*, 907 P.2d 642 (Colo. App. 1995)), did not concern expert testimony; rather, they involved entirely different questions, namely, the existence and breach of fiduciary duties owed by a broker in opening and maintaining a discretionary commodities trading account, and the sufficiency of the evidence to support a damages award arising from a trustee's failure to seek independent advice in negotiating and assigning a lease for mining property, respectively.

analysis or opinions in formulating his own opinions, the testifying expert must demonstrate that he is familiar with the methods and reasons underlying the other expert's report and that the other expert's report is reliable under *Daubert*. *Arkansas River Power Auth. v. Babcock & Wilcox Power Co.*, 2016 WL 9734697, at *4 (D. Colo. Oct. 31, 2016) (citing *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732-33 (10th Cir. 1993)).  The testifying expert may not "simply assum[e], without regard to any identified methodology," that the other expert's opinions are valid and reliable and thus "reach what is, essentially, a legal conclusion."  *McCall v. Skyland Grain LLC*, 2010 WL 1435369, at *3 (D. Colo. Apr. 9, 2010) (Brimmer, *J.*).

Simon did none of the things that were required of him if he wished to rely on Robinson's report.  As noted, in outlining the bases for his causation opinions, Simon does not state that he is relying on any of Robinson's specific findings or opinions, much less state that he has employed any reliable methodology to link those findings to an admissible conclusion regarding causation. Instead, in an isolated footnote in his own lengthy expert report, Simon simply references, but does not analyze, a single table in Robinson's report.  *Daubert* does not permit an expert to offer such a baseless opinion.

**B.  The Court Correctly Held That Robinson's Opinion Does Not Prove Causation.**

In the Causation Order, the Court held that "the issue of causation in this case is beyond the common knowledge of jurors" and, thus, "expert testimony is required to prove causation."[7]

---

[7] Plaintiffs assert, in a footnote, that the Court's holding was "limit[ed]" to the issue of whether the MVC Affiliation caused Plaintiffs' fractional interests to decline in value and does "*not* preclude the jury from finding … that the challenged affiliation was a substantial cause of the *other* economic and non-economic harms identified by Plaintiffs." Pl. Br. at 2, n.1 (italics in original). This assertion is directly contradicted by the plain language of the Causation Order, which unequivocally holds that "expert testimony is required to prove causation <u>in this case</u>."  ECF #596 at 6-7, 11 (emphasis added).

ECF #596 at 6-7, 11; *see also id.* at 7 (declaring that, without expert testimony, any finding of causation "would be speculative at best"); *id.* at 9 (rejecting Plaintiffs' argument that "the lay testimony of plaintiffs and of non-expert third parties … is sufficient to demonstrate causation"); *id.* at 10 (ruling that causation cannot be established through Defendants' documents).   In so holding, the Court correctly rejected Plaintiffs' argument that expert testimony on the issue of causation is not required because Defendants' alleged "breach of fiduciary duty [need] only be a substantial cause of the claimed damages" (rather than the sole cause).  *Id.*  The Court also correctly rejected Plaintiffs' argument that causation may be established through Robinson's testimony.  *Id.* at 10 (holding that "Mr. Robinson's testimony is insufficient to prove causation").

Plaintiffs contend that the Court's holdings are erroneous, arguing (again) that Robinson's "comparative-value" analysis is "sufficient to satisfy [their] threshold burden of establishing that Marriott's breach of fiduciary duty caused a 'related loss.'"  Pl. Br. at 11.  They maintain that, under *Putnam* and *CDX*, they need only show, "by just and reasonable inference," that Defendants' alleged breach of fiduciary duty caused their alleged injuries, at which point the "burden of production then shifts to [Defendants] to show that [their alleged] conduct ***did not*** cause the injury."  *Id.* at 11-12 (emphasis added).  Plaintiffs are incorrect.

As an initial matter, Plaintiffs do not cite a single case applying Colorado law that uses a "just and reasonable inference" standard in connection with a breach of fiduciary duty claim.  Nor do the out-of-jurisdiction cases that Plaintiffs cite (*Putnam* and *CDX*) advance their "burden-shifting" argument, as those cases are directly contrary to controlling Tenth Circuit authority.  As Defendants explained in their supplemental summary judgment briefing (*see* ECF #598 at 7-12; ECF #601 at 3-4), the leading Tenth Circuit case on this issue clearly states that, in this Circuit,

"the burden falls squarely on the plaintiff asserting a breach of fiduciary duty claim … to prove losses … 'resulting from' the alleged breach of fiduciary duty."'  *See Pioneer,* 858 F.3d at 1335; *see also id.* (affirming district court's holding that plaintiffs "must, in the first instance, make a showing of a causal connection between the breach of fiduciary duty and claimed loss as part of its prima facie case of loss").  Indeed, in *Putnam*, the First Circuit specifically mentioned the Tenth Circuit's *Pioneer* decision as an example of another Circuit having come to a completely different conclusion on burden-shifting.

In any event, Plaintiffs are incorrect in asserting that, in *Putnam* and *CDX*, "it was enough that the expert presented facts sufficient to establish a comparative change [in value] during the relevant time period, which in turn enabled the trier of fact to find that the plaintiffs had satisfied their burden of showing that the defendant's challenged conduct was a substantial contributing cause of their economic injury." Pl. Br. at 12.  In *Putnam,* the expert had opined on loss, not on causation.  907 F. 3d at 39.  And in *CDX* (a Seventh Circuit case applying Delaware law), the court found that "enough proof that the alleged misconduct caused loss to [plaintiffs] shareholders [had been proffered] to make the issue of causation one for the jury." 640 F.3d at 215.  The *CDX* court did not find that evidence of "comparative change" was alone sufficient for that purpose, as Plaintiffs contend.

Plaintiffs' other authorities are simply inapposite.  In *Cook v. Rockwell International Corp.*, 580 F. Supp. 2d 1071 (D. Colo. 2006), the court merely held that a sales comparison could help support plaintiffs' expert's opinion.  But the expert's opinion in that case was nothing like the opinion proffered by Robinson, as it covered both valuation and causation of lost value from leaks from a nuclear weapons plant; contained "an analysis of real property in the Class Area to determine if Class property had been impacted by [the nuclear site] and, if so, to what extent"; and

14

used five methodologies to determine causation. *Smith v. Ford Motor Company*, 215 F.3d 713 (7th Cir. 2000), did not discuss any legal issue relevant to causation.

## **CONCLUSION**

Plaintiffs' motion for reconsideration should be denied in its entirety.

Dated:   November 24, 2020

Respectfully submitted,

GREENBERG TRAURIG, LLP
By: *s/ Philip R. Sellinger*
Philip R. Sellinger
Roger B. Kaplan
Ian S. Marx
500 Campus Drive, Suite 400
Florham Park, NJ 07932
Tel: 973.360.7900 / Fax: 973.301.8410
E-mail:  SellingerP@gtlaw.com
            KaplanR@gtlaw.com
            MarxI@gtlaw.com,

*Attorneys for Defendants*
*Marriott Vacations Worldwide Corporation,*
*Marriott Ownership Resorts, Inc., The Ritz-Carlton*
*Management Company, L.L.C., The Cobalt Travel*
*Company, LLC, and The Lion & Crown Travel Co.,*
*LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of November 2020, a true and accurate copy of the foregoing **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF PARTS OF THE JUNE 1, 2020 ORDER AND THE OCTOBER 13, 2020 ORDER** was filed and served with the Clerk of the Court via CM/ECF filing system, which will send notification to the following:

Michael J. Reiser
Law Office of Michael J. Reiser
1475 N Broadway, Suite 300
Walnut Creek, CA 94596
*Counsel for Plaintiffs*

Matthew C. Ferguson
The Matthew C. Ferguson Law Firm, P.C.
119 South Spring, Suite 201
Aspen, Colorado 81611
*Counsel for Plaintiffs*

Tyler R. Meade
The Meade Firm P.C.
1816 Fifth Street
Berkeley, CA 94710
*Counsel for Plaintiffs*

Linda Pham Lam
Michael Schrag
Gibbs Law Group LLP
505 14th Street, Suite 1100
Oakland, CA 94612
*Counsel for Plaintiffs*

*/s/ Gregory Scavelli*
Gregory Scavelli

16