IN THE UNITED STATES DISTRICT COURT

DISTRICT OF COLORADO

Civil Action No. 1:16-cv-01301-PAB-GPG

**RCHFU, LLC,** *et al.*

Plaintiffs,

v.

**MARRIOTT VACATIONS WORLDWIDE CORPORATION,** *et al.*

Defendants.

___

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION**
___

**INTRODUCTION**

Marriott's opposition does not come to grips with Plaintiffs' main point, that the Court's *Daubert* order rested upon a clear error of law regarding what Plaintiffs must prove to establish substantial-factor causation under Colorado law. Because of that error, reconsideration of the Court's *Daubert* order (and related rulings) is required to avoid manifest injustice.

The Court excluded Plaintiffs' expert causation witness, Jon Simon, because in formulating and expressing his opinion on causation, Simon failed to exclude factors *other than Marriott's challenged conduct* that might have contributed to Plaintiffs' loss-of-value damages. Dkt. 583 at 14-15. Under controlling Colorado law, though, Plaintiffs had no burden to exclude those potentially contributing causes of loss. Rather, cases such as *Rupert v. Clayton Brokerage Co. of St. Louis, Inc.*, 737 P.2d 1106 (Colo. 1987), and *Vento v. Colorado Nat'l Bank Pueblo*, 907 P.2d 642 (Colo. App. 1995), hold that plaintiffs alleging breach of fiduciary duty under

1

Colorado law are *not* required to disprove alternative or contributory grounds for causation. *See also Murphy v. Schaible, Russo & Co.*, 2020 WL 2041346, at *10 (D. Colo. Apr. 28, 2020).

For the same reason, the Court erred in precluding the jury from relying upon expert witness Maurice Robinson's comparative-property analysis as a basis for drawing a just and reasonable inference of substantial-factor causation, or from drawing such inferences from other evidence in the record. Although the Court concluded (in allowing Marriott to file a second summary judgment motion) that lay jurors are not competent to rule out alternative sources of causation, that ruling directly conflicts with the analysis and holdings in *Rupert* and *Vento*, which entitle Plaintiffs to establish Marriott's liability under Colorado law for breach of fiduciary duty *without* having to present evidence to the jury (and thus without having to require the jury to refute) other potential causes of the documented harms. *See* Dkt. 596 at 7.

Finally, for the reasons stated in Plaintiffs' motion, the Court should also reconsider its ruling precluding Simon from basing his causation analysis in part upon Robinson's comparative-property-valuation analysis. Dkt. 602, Pl. Br. at 8-11.

Marriott's opposition refers to *Rupert* and *Vento* only in a footnote and does *not* dispute that those cases state the applicable test for substantial-factor causation in this breach of fiduciary duty case. *See* Dkt. 603 at 11 n.6. Nor does Marriott dispute that under those cases, Plaintiffs have no affirmative obligation to disprove other contributing factors, once having made a prima facie showing that Marriott's affiliation-related conduct was at least *a* substantial factor in the diminished post-affiliation value of their fractional interests. An expert witness cannot be required, as a condition of qualifying as an expert, to state opinions on issues the offering party is not required to prove or disprove at trial.

Plaintiffs have no obligation under Colorado law to affirmatively rebut other factors that may have contributed to the sharply reduced, post-affiliation value of their fractional interests in Aspen Highlands as compared to similar properties that were otherwise subject to the same market conditions during the same time period. Consequently, the Court erred in concluding that (1) Simon's failure to anticipate and rebut those factors precluded him from testifying, and (2) the jury is precluded from relying on Robinson's opinion and other evidence cited by Plaintiffs because expert testimony is necessary to rule out other potential contributory factors.

Marriott largely ignores Plaintiffs' substantive analysis, relying instead on a series of "avoidance" arguments, i.e., that regardless of the merits, reconsideration should be denied because the "timing" of Plaintiffs' filing supposedly demonstrates "gamesmanship." Not only is Marriott wrong, but it does not even attempt to establish resulting prejudice (other than the consequences of having the merits of the case correctly decided). Plaintiffs, by contrast, have shown that denial of reconsideration would be enormously prejudicial, because it would perpetuate legal error and require a time-consuming and expensive appeal, which could be avoided if the Court granted reconsideration and applied the governing Colorado law.

## ARGUMENT

### A. Reconsideration of the *Daubert* Ruling Is Necessary to Prevent Clear Error and Manifest Injustice

Tenth Circuit law authorizes district courts to reconsider and revise interlocutory orders any time before entry of a final judgment. *Rimbert v. Eli Lilly and Co*., 647 F.3d 1247, 1251 (10th Cir. 2011). Where a district court "is convinced that an interlocutory ruling it has made is substantially erroneous, the only sensible thing to do is to set itself right to avoid subsequent reversal." *In re Unioil, Inc*., 962 F.2d 988, 993 (10th Cir. 1992) (citation omitted).

The Court should reconsider its prior rulings on causation to ensure that this case proceeds under the correct legal standard—without an intervening appeal and remand.

The Court excluded Simon's expert opinions on causation because he did not rule out other potential causes for the diminution in value of Plaintiffs' property relative to comparable properties (which Robinson had documented). Dkt. 583 at 14-15. The Court's ruling imposed on Plaintiffs the affirmative burden of establishing, as part of their prima facie case of breach of fiduciary duty, that: (1) Marriott's challenged conduct was a cause of the claimed damages; and (2) no other factors contributed to those damages. Dkt. 583 at 15. But as the Colorado Supreme Court and Court of Appeal have held, a plaintiff suing for common law breach of fiduciary duty does *not* need to rule out such additional causes of harm, because they are "irrelevant" to liability. *Rupert*, 737 P.2d at 1112 ("If the defendant's conduct is a substantial contributing cause of the injury, it is irrelevant to the causation analysis whether other factors, including market forces beyond the defendant's control, also contributed to the injury."); *Vento*, 907 P.2d at 646.

Marriott's newest summary judgment motion raises the same legal issue that is at the heart of this reconsideration motion: what quantum of evidence must Plaintiffs present to establish substantial-factor causation under Colorado law and what contributing factors, if any, must Plaintiffs affirmatively rebut to satisfy their threshold burden? Until recently, the parties' briefing generally focused on whether the substantial-factor test applied to Plaintiffs' claims at all. *See, e.g.,* Dkt. 494 at 22; 520 at 19. Not until now (other than with respect to the *Daubert* ruling) has the Court been asked to decide what Plaintiffs must actually prove or disprove in establishing a prima facie case of substantial-factor causation.

If the Court now agrees with Plaintiffs that Colorado law does *not* require a breach-of-fiduciary-duty plaintiff to rebut all alternative sources of causation (after establishing that the defendant's challenged conduct is at least *a* substantial cause) the Court should grant reconsideration to avoid manifest injustice.

Marriott's focus on the timing of Plaintiffs' reconsideration motion rather than the merits of the underlying legal analysis is entirely misplaced. Although the Court issued its *Daubert* order in June 2020, not until just a few weeks ago did the need truly arise for Plaintiffs to seek reconsideration to prevent manifest injustice. To be sure, the *Daubert* order precluded Plaintiffs from presenting Simon's expert witness testimony on causation at trial. But not until October 13 did the Court hold that the jury could not consider Robinson's analysis or other evidence (including Marriott's own corporate documents) as a basis for inferring causation. *See* Dkt. 596 at 8-11. These erroneous rulings caused the Court's prior error to rise to the level of manifest injustice. Until then, Plaintiffs believed they could prove a prima facie case without Simon's testimony. In particular, Plaintiffs reasonably believed a jury could infer causation based on Robinson's analysis, which demonstrated that while all fractional interests declined during the recession, comparable properties untainted by affiliation recovered and grew in value, while the value of Plaintiffs' units continued declining. Plaintiffs moved to reconsider shortly after the Court ruled that the jury could not rely on Robinson to infer causation.

And as noted, Marriott has not even attempt to establish prejudice. Nor could it, since Marriott has already deposed Simon and obtained its own expert witnesses to rebut him.

The Court will be called upon to determine the correct substantial-factor causation standard when it rules on Marriott's supplemental motion for summary judgment. If Plaintiffs are

correct that Colorado law imposes no affirmative burden to rule out alternative causes of damages, fundamental fairness requires the Court to revisit its prior *Daubert* ruling and limitations on the scope of what the jurors may reasonably infer. Plaintiffs should be permitted to prove their case under the correct legal standard, not to have to pursue a lengthy and disruptive appeal to avoid the prejudice resulting from the Court having erroneously stripped Plaintiffs of their most relevant and persuasive causation evidence.[1]

### B. Marriott Does Not Dispute that Plaintiffs Have No Obligation to Exclude Alternative Causes of Harm

Marriott does not dispute that under Colorado common law applicable to breach-of-fiduciary-duty claims, if a defendant's conduct substantially contributed to a harm, it is irrelevant whether other factors may *also* have contributed. *See* Dkt. 603 at 11. Marriott asserts that *Rupert*, *Vento,* and *Murphy* "did not concern expert testimony." *Id*. at 11 n.6. But that makes no difference, because the legal *rationale* of those cases is controlling.[2]

The Court barred Simon because it mistakenly believed that under Colorado law, Plaintiffs could not establish their prima facie case without addressing and rebutting all other potential causes of their claimed damages. But none of the cases that the Court relied upon were breach-of-fiduciary-duty cases: *Sunlight Saunas, Inc. v. Sundance Sauna, Inc*., 427 F.Supp.2d 1022 (D. Kan. 2006), was a Kansas tortious-interference-with-contract case. *In re Williams*

---

[1] Contrary to Marriott's fn. 7, this Court has never addressed whether the jury may infer from Plaintiffs' evidence that Marriott's conduct was a substantial cause of harms other than the loss in property values, e.g., the lack of a promised vote or the failure to provide material information regarding the proposed affiliation. The Court has not addressed causation of those harms which does not require expert testimony. Plaintiffs can also prove disgorgement without an expert.

[2] The courts in *Rupert* and *Vento* did not require expert causation evidence. Moreover, in *Vento*, 907 P.2d at 646, as in *CDX Liquidating Trust v. Venrock Associates*, 640 F.3d 209, 218 (7th Cir. 2011), the court based its causation finding on reasonable inferences drawn from the record.

*Securities Litigation*, 496 F.Supp.2d 1195 (N.D. Okla. 2007), was a federal securities-fraud case. Neither states the causation standard for a Colorado common law breach-of-fiduciary-duty claim.

Marriott does not cite any Colorado case requiring a plaintiff alleging breach of fiduciary duty to exclude alternative causes of damages to establish a prima face of substantial-factor causation. Instead, it cites a construction defect action (*Hubbell v. Carney Brothers Construction*, 2011 WL 1060239 (D. Colo. Mar. 23, 2011)), a trespass and nuisance action (*Cannon v. BP Prods. N. Am. Inc.*, 2013 WL 5514284 (S.D. Tex. Sept. 30, 2013)), and two contract cases (*Trugreen Cos. v. Scotts Lawn Serv.*, 508 F.Supp.2d 937 (D. Utah 2007), and *Prepaid Wireless Servs., Inc. v. Southwestern Bell Wireless*, 2002 WL 34367328 (S.D. Tex. July 23, 2002)). None involved common law claims for breach of fiduciary duty under Colorado law.

### C. Simon Should Be Allowed to Rely on Robinson's Comparative Analysis

Marriott's response to Plaintiffs' separate ground for reconsideration—that Simon should not be precluded from relying in part upon Robinson's comparative-damages-analysis data—misstates the law governing one expert's ability to rely on another's admissible testimony as a factual basis for his opinions. *Hunt v. Green*, 2004 WL 5499533, at *4 (D.N.M. July 22, 2004); *Dura Automotive Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002). An expert witness is allowed to base his opinions on any "facts or data in the case that the expert has been made aware of or personally observed," as long as experts in the field would customarily rely on that type of information and the expert is not "merely relay[ing] expert opinions of others." *Gallardo v. U.S.*, 2012 WL 1191864, at *3 (D. Colo. Apr. 10, 2012).

Simon reviewed Robinson's sales comparison analysis through the lens of his own knowledge and experience of the fractional ownership market. That analysis provided one basis

7

for his opinion that the MVC affiliation was a cause of the Aspen Highlands' loss in value. Dkt. 461-3 (Simon Report) at ¶ 36 n.50; ¶ 22. Simon did not merely repeat Robinson's opinion; he drew upon Robinson's findings to formulate his own opinion based on his review of *all* of the evidence, filtered through 35 years of experience in the vacation-ownership industry (including his independent knowledge of how timesharing works and what it means for a luxury property to be affiliated with a popular timeshare program).[3] *Id.* at p. 21-23; ¶ 35, 60 (explaining that while there was some pre-affiliation non-member access, affiliation magnified and made permanent the economic consequences of allowing that access).

Marriott's cases are easily distinguishable, either because the challenged expert testimony rested entirely upon the *un*reliable opinion of another (unlike Robinson's), or because the expert's blind reliance on another's opinions was not filtered through the expert's own expertise or supplemented by additional evidence. *See Gallardo*, 2012 WL 1191864 at *3; *Arkansas River Power Auth. v. Babcock & Wilcox Power Co.*, 2016 WL 9734697, at *4 (D. Colo. Oct. 31, 2016); *Mooring Capital Fund, LLC v. Knight*, 388 Fed.App'x 814, 820 (10th Cir. 2010).

---

[3] Robinson's comparative analysis also necessarily (albeit tacitly) rejected other potential causes of the Aspen Highlands' diminution in value, because the other high-end properties he compared did *not* diminish in value as a result of those commonly applicable potential factors, including: (a) a general collapse of the fractional-interest market; (b) the market's failure to recover from the Great Recession; (c) a general downturn in real estate values; (d) a downturn in the Aspen market; (e) owners' individual ability to rent units from time to time (at four of the five comparable properties); and (f) individual owners' ability to let family members or friends stay in their units. None of those factors could explain the fact or extent of Plaintiffs' loss because they did not cause similar loss in value in the compared properties that Robinson analyzed.

### D. The Causation Burden Should Shift Once Plaintiffs Present Relevant Comparative-Value Evidence

The Court should also reconsider its ruling prohibiting the jury from relying upon Robinson's comparative damages as causation evidence. First, Marriott's characterization of the Tenth Circuit's analysis of burden-shifting is incorrect. Marriott principally relies upon *Pioneer Centres Holding Co. ESOP and Trust v. Alerus Financial, N.A.*, 858 F.3d 1324 (10th Cir. 2017), but there, the Tenth Circuit made clear that the general rule requiring a plaintiff to prove resulting loss is subject to an exception "unique to the fiduciary duty question," because the common law of trusts "advocates a burden-shifting paradigm" where, once a plaintiff proves that a breach resulted in loss, the burden shifts to the defendant to prove "the loss would have occurred in the absence of the breach." *Id.* at 1335 (citing Restatement (Third) of Trusts § 100 cmt. f (2012)); *see* Pl. Br. 10 n.3. That is this case.

*Pioneer Centres* does not hold (as Marriott claims) that the burden "squarely" falls on a plaintiff to prove losses resulting from an alleged breach of fiduciary duty. Marriott uses ellipses to omit crucial language of limitation in the *Pioneer Centres* decision. Marriott quotes that decision as stating that "the burden falls squarely on the plaintiff asserting a breach of fiduciary duty claim…to prove losses…'resulting from' the alleged breach of fiduciary duty." Dkt. 603 at 10, 14. But the court expressly limited that statement to "a breach of fiduciary duty claim ***under § 1109(a) of ERISA*** to prove losses to the plan . . . " *Pioneer Centres*, 858 F.3d at 1337 (emphasis added). The Court's analysis in *Pioneer Centres* was limited to the proof needed to establish a fiduciary breach under Section 1109(a) of ERISA, not Colorado common law.

Marriott unsuccessfully seeks to distinguish *Brotherston v. Putnam Investmnets, LLC*, 907 F.3d 17 (1st Cir. 2018), and *CDX Liquidating Trust v. Venrock Assocs.*, 640 F.3d 218 (7th

9

Cir. 2011). Marriott argues that the expert witness in *Putnam* "opined on loss, not causation." Dkt. 603 at 14. But so did Robinson. In *Putnam*, the plaintiffs' expert based his damages analysis on the value of the funds at issue compared to various benchmark funds—which served in effect, as a control group. 907 F.3d 17, 32 (1st Cir. 2018). The court found this comparative analysis sufficient to satisfy plaintiffs' threshold burden of establishing a prima facie case of resulting loss, and then shifted the burden to defendant to disprove causation. *Id*. at 39. That is exactly the approach the Court should have applied here, based on Robinson's expert opinion that Plaintiffs' property declined in value post-affiliation relative to comparable properties.

Marriott contends that in *CDX*, the plaintiffs' comparative evidence was insufficient to meet their burden of proof on causation. But the court in *CDX* held exactly the opposite:

> Actually there's enough proof that the alleged misconduct caused loss to [plaintiffs] to make the issue of causation one for the jury no matter which side has the burden of proof . . . a few months after [the subject company] was sold to the Arris Group for $55 million . . . a similar company, River Delta, was sold for $300 million. [The subject company] couldn't hold out for a comparable deal [due to the defendant's conduct].

640 F.3d 209, 218 (7th Cir. 2011). The same reasoning applies here. Robinson's showing that comparable properties rose in value, while Plaintiffs' interests declined in value, should have been sufficient to present the issue of causation to the jury.

Dated: December 8, 2020                                         Respectfully submitted,

                                                                */s/ Michael Schrag*
                                                                Michael Schrag (CA State Bar # 185832)
                                                                **GIBBS LAW GROUP LLP**
                                                                505 14th Street, Suite 1110
                                                                Oakland, CA 94612
                                                                Telephone: (510) 350-9718
                                                                E-mail: mls@classlawgroup.com

                                                                *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 8th day of December, 2020, a true and accurate copy of the foregoing **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION** was served via CM/ECF filing system upon the following:

Naomi G. Beer, Esq.
*BeerN@gtlaw.com*
Greenberg Traurig, LLP
1200 17th Street, Suite 2400
Denver, Colorado 80202

Ian S. Marx, Esq.
*MarxI@gtlaw.com*
Philip R. Sellinger, Esq.
*SellingerP@gtlaw.com*
Greenberg Traurig, LLP
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932

*/s/ Linda Lam*
Linda Lam