IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 16-01301 PAB

RCHFU, LLC, et al.

    Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE
CORPORATION, et al.

    Defendants.

_____

**DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION *IN LIMINE* TO EXCLUDE PLAINTIFFS' PROPOSED RULE 1006 EXHIBIT PURPORTING TO CALCULATE PROFITS OBTAINED FROM THE MVC AFFILIATION**
_____

Defendants Marriott Vacations Worldwide Corporation ("MVW"), Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC ("RC Management"), The Cobalt Travel Company, LLC ("Cobalt"), and The Lion & Crown Travel Co., LLC ("Lion & Crown") respectfully submit this reply brief in further support of their motion *in limine* to exclude Plaintiffs' proposed Rule 1006 exhibit purporting to calculate MVW's profits obtained from the MVC Affiliation (the "Affiliation Profits Exhibit" or the "Exhibit") (attached as Appendix A to Defendants' moving brief, ECF # 604).[1]

## ARGUMENT

I.    **THE AFFILIATION PROFITS EXHIBIT IS INADMISSIBLE BECAUSE IT DOES MORE THAN MERELY SUMMARIZE OR CALCULATE FROM VOLUMINOUS RECORDS, IT ADVANCES AN OPINION THAT IS UNSUPPORTED BY ANY EVIDENCE IN THIS CASE**

---

[1] Capitalized terms not otherwise defined have the same meaning as in Defendants' moving brief, ECF #604.

Plaintiffs' suggestion to the contrary notwithstanding, the threshold issue here is not whether the Affiliation Profits Exhibit uses simple math or whether it contains any arithmetic errors. The simple arithmetic may be correct, but the fundamental flaw in the Affiliation Profits Exhibit is that it does more than merely summarize or calculate from voluminous records, as Rule 1006 requires. Instead, the Exhibit renders an opinion by assuming -- without the support of any evidence in the record, expert or otherwise -- that the MVC survey respondents who ranked access to The Ritz-Carlton Club as one of their top five reasons for purchasing MVC Points would not have purchased MVC Points at all, had access to The Ritz-Carlton Club not been available. This assumption -- an opinion -- is the very foundation of the Exhibit and of Plaintiffs' contention that MVW sold additional MVC Points and, thereby, made additional profits as a result of access to RCDC resorts being available to MVC Points purchasers. Plaintiffs' simple calculation is directly based on this assumption and opinion. If the survey respondents that rated RCDC in their top five reasons would have purchased MVC Points anyway, then there would be no basis to use simple arithmetic to deduct their purchases from MVC Points sales. Accordingly, this fundamental assumption makes the Exhibit more than just calculations as required by Rule 1006, and the Exhibit is inadmissible under that Rule.[2]

As a general matter, Rule 1006 permits a party to introduce summaries or calculations of otherwise voluminous records. *See* Fed. R. Evid. 1006; *State Office Sys., Inc. v. Olivetti Corp.*

---

[2] Moreover, as discussed below, the SMS survey does *not* reveal what rank access to RCDC resorts had among the "top five" reasons given by the survey respondents, nor does it distinguish between all RCDC resorts and only The Ritz-Carlton Club, Aspen Highlands which is the subject of this case – making Plaintiffs' assumptions even more attenuated.

2

*of Am.*, 762 F.2d 843, 845-46 (10th Cir. 1985); 6 Weinstein's Federal Evidence § 1006.02 (2020) ("The purpose of Rule 1006 is to provide a practicable means of summarizing voluminous information."). The Tenth Circuit has stressed that Rule 1006 permits the use of exhibits summarizing only "[t]he contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court." *United States v. Irvin*, 682 F.3d 1254, 1262 n.6 (10th Cir. 2012) (quoting Rule 1006). Indeed, it is well established that exhibits that do more than just summarize or calculate from voluminous records are not admissible under Rule 1006. *See, e.g.*, *State Office Sys., Inc.*, 762 F.2d at 845-46 (projections of future lost profits set forth in a summary "are not legitimately admissible as summaries under Rule 1006, since they are interpretations of past data and projections of future events, not a simple compilation of voluminous records"); *Water Pik, Inc. v. Med-Sys.*, Civil Action No. 10-cv-01221-PAB-CBS, 2012 U.S. Dist. LEXIS 1373 at *6-7 (D. Colo. Jan. 5, 2012) (Brimmer, J.) (summaries that "necessarily entail opinions and inferences" are inadmissible without a basis to support those opinions and inferences); *Eichorn v. AT&T Corp.*, 484 F.3d 644, 650 (3d Cir. 2007) (affirming inadmissibility of Rule 1006 summary where "[t]he calculations went beyond the data they summarized and included several assumptions, inferences, and projections about future events, which represent [the witness's] opinion, rather than the underlying information"); *Gomez v. Great Lakes Steel Div. Nat'l Steel Corp.*, 803 F.2d 250, 258 (6th Cir. 1986) (exhibit was improperly admitted because, despite being labeled "Summary of Actual Damages," it "projected future events and economic losses, and was therefore not a simple compilation of voluminous records").

Here, the Affiliation Profits Exhibit is not merely providing calculations from voluminous records, it is based on opinions and assumptions about how Marriott's 10-Ks and SMS survey data might be extrapolated to prove the allegation Plaintiffs ultimately have the burden of proving -- that MVW allegedly profited from the sale of additional points that would not have been sold but for access to RCDC properties.  The "calculations" in the Affiliation Profits Exhibit are not possible without assuming that survey respondents who ranked access to RCDC resorts in their top five reasons for purchasing MVC Points would not have otherwise made their purchase.  But there is no basis in the record for this inference, and Plaintiffs' reliance on it takes the Exhibit outside the scope of Rule 1006 because it is no longer merely summarizing voluminous records.  *See United States v. Taylor*, 210 F.3d 311, 316 (5th Cir. 2000) (admission of Rule 1006 chart was not harmless error where it "allowed the government to assume that which it was required to prove"); *United States v. Bray*, 139 F.3d 1104, 1110 (6th Cir. 1998) ("with respect to summaries admitted in lieu of the underlying documents, . . . the information on the summary [may not be] embellished by or annotated with the conclusions of or inferences drawn by the proponent"); *First Fin. Bank, N.A. v. Bauknecht*, 71 F. Supp. 3d 819, 836-37 (C.D. Ill. 2014) (holding that spreadsheet was inadmissible under Rule 1006 because "the calculations used to assess damages [were] based upon inferences and assumption").

Courts in other Circuits have held that, in limited circumstances, Rule 1006 summaries may include assumptions and conclusions so long as they are "based upon evidence in the record." *United States v. Lewis*, 759 F.2d 1316, 1329 n.6 (8th Cir. 1985).  Even if the Tenth Circuit had adopted this principle (which it has not), the Affiliation Profits Exhibits would

4

still be inadmissible because its assumption about the survey respondents' purchase decisions is not based on any evidence in the record. *See, e.g.*, *United States v. Hart*, 295 F.3d 451, 455 (5th Cir. 2002) (holding admission of summary chart was reversible error where its proponent failed to adduce any evidence or lay the necessary predicate to support "the many assumptions and conclusions" that were drawn in order to prepare the summary). Here, the only testimony supporting the inference that Plaintiffs seek (that of expert witness Jon Simon) has been stricken by the court as violative of *Daubert*.

Moreover, the unsupported assumption that the survey respondents would not have otherwise purchased points but for access to RCDC properties is not the only flawed assumption upon which the Affiliation Profits Exhibits relies. Plaintiffs' lawsuit concerns MVC access to The Ritz-Carlton Club, Aspen Highlands ("RC Club Aspen") specifically, and disgorgement of any benefit that MVW may have received from MVC access to RC Club Aspen. But the at-issue survey response, "Use Points to stay at a Ritz-Carlton Club" makes no specific mention of RC Club Aspen, and the survey respondents were not limited in any fashion to those who had or sought any nexus to RC Club Aspen. Thus, a survey respondent who purchased points because she or he wanted the opportunity to stay at The Ritz-Carlton Club, St. Thomas, for example, and had no interest in ever going to Aspen, is indiscriminately included in Plaintiffs' "calculation."

In addition, Plaintiffs' Opposition papers point out that the response rate of the surveys ranged between 16 and 20 percent. *See* Exhibit B to the January 26, 2021 Declaration of Linda Lam (Urcil Peters Deposition Transcript at 19:19-22). Plaintiffs have failed to offer any evidence demonstrating that this low response rate carries sufficient statistical significance on which any

5

conclusion could be drawn, even by an expert.  As a result, the Affiliation Profits Exhibit fails to support Plaintiffs' claim for disgorgement.  Indeed, the Manual for Complex Litigation, Fourth, § 11.493 ("Sampling/Opinion Surveys") recognizes that the use of surveys in litigation "must conform to generally recognized statistical standards" including whether:

- the population was properly chosen and defined;
- the sample chosen was representative of that population;
- the data gathered were accurately reported; and
- the data were analyzed in accordance with accepted statistical principles.

*Id.*  The Manual further states that "the foundation for such evidence will ordinarily involve expert testimony and . . . should be taken up by the court well in advance of trial."  *Id.*

The foregoing flaws are not merely arithmetic errors or acceptable discrepancies that Defendants must account for under Plaintiffs' flawed burden shifting framework.  Rather, they are fundamental and unsupported assumptions upon which the Exhibit is based, thereby making the Exhibit more than just "a summary, chart, or calculation [used] to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006.  Accordingly, the Affiliation Profits Exhibit should be excluded as a Rule 1006 exhibit.

## II. PLAINTIFFS DO NOT EVEN ATTEMPT TO SHOW THAT THE AFFILIATION PROFITS EXHIBIT IS ADMISSIBLE UNDER RULES 701 OR 702, THE ONLY REMAINING BASES FOR ADMITTING THE EXHIBIT

Plaintiffs rely entirely on Rule 1006 to admit the Affiliation Profits Exhibit and do not identify any other grounds for its admissibility.  However, where the calculations in a purported Rule 1006 summary go "beyond the data they summarized and include[] several assumptions, inferences and projections about future events" that represent "opinion, rather

than the underlying evidence," then the exhibit is "subject to the rules governing opinion testimony." *Eichorn v. AT&T Corp.*, 484 F.3d at 650 (citing Fed. R. of Evidence 701, 702). Here, the nature of Plaintiffs' assumptions and their reliance on expert opinion to support their disgorgement theory throughout the life of this case[3] makes it clear that the Affiliation Profits Exhibit is a "thinly veiled attempt to circumvent the exclusion of" Plaintiffs' expert, Jon Simon, on disgorgement and the calculation of halo profits supposedly derived from the MVC Affiliation (as well as Chekitan Dev's expert testimony on the halo effect). *Water Pik, Inc. v. Med-Sys.*, 2012 U.S. Dist. LEXIS 1373, at *4 (summary excluded as a "thinly veiled attempt to circumvent the exclusion of" plaintiff's expert witness); *see also Eichorn v. AT&T Corp.*, 484 F.3d at 650 ("Rule 1006 is 'not a back-door vehicle for the introduction of evidence which is otherwise inadmissible"). It is undisputed that the Exhibit is not supported by any expert testimony and cannot qualify for admissibility under Rule 702.

The opinion in the Exhibit is also an improper lay opinion and cannot be admitted under Rule 701. Rule 701 states that a lay opinion is limited to one that is "(a) rationally based on the perception of the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. In this case, the Affiliation Profits Exhibit does not meet these criteria. The calculations in the Affiliation Profits Exhibit depend on scientific, technical, or other specialized knowledge about survey analysis and statistics. Plaintiffs are not merely reporting the results of the

---

[3] *See, e.g.*, Plaintiffs' Response to Interrogatory No. 8, attached as Exhibit B to the December 8, 2020 Declaration of Roger B. Kaplan (ECF # 604-1) ("damages categories and calculations will be the subject of Fed. R. Civ. P. 26(a)(2) expert testimony").

7

survey data, they are extrapolating and applying assumptions to seek to prove the ultimate fact they need to prove—that Defendants' marketing of access to The Ritz-Carlton Club allegedly allowed them to unjustly profit.  Plaintiffs cannot accomplish this without expert testimony.  *See James River Ins. Co. v. Rapid Funding, Ltd. Liab. Co.*, 658 F.3d 1207, 1214 (10th Cir. 2011) (calculations that require "technical judgment" and amount to an opinion that is "outside the realm of common experience … require the special skill and knowledge of an expert witness"); *see also* Fed. R. Evid. 701, Notes of Advisory Committee on 2000 amendments ("Rule 701 has been amended to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing.") *Water Pik, Inc.*, 2012 U.S. Dist. LEXIS 1373, at *4 (summary excluded where they were based on "opinions and inferences" requiring scientific, technical or other specialized knowledge); *see also Campbell v. Conway*, 611 B.R. 38, 45 (M.D. Pa. 2020) ("calculations going beyond the data they summarized and including several assumptions, inferences, and projections . . . are properly classified as expert opinions that are subject to the rules governing opinion testimony rather than Rule 1006. No testimony was proffered that would render Exhibit 3.2 admissible under Fed. R. Evid. 702, and it was therefore properly excluded"); *cf. United States v. Melgen*, 967 F.3d 1250, 1260 (11th Cir. 2020) (summary chart admissible because it was supported by the opinion of an expert).

Indeed, Plaintiffs previously recognized and conceded that they needed a statistical expert to examine the survey data to provide an opinion as to what percentage of additional points purchases would not have occurred, had access to RCDC resorts not been an option available to MVC Members. Thus, in their March 29, 2019 motion for leave to rely on a statistical analysis

expert (ECF #376), plaintiffs sought permission to rely on an additional expert, a statistical expert (Jason Bass), to perform a "logit regression analysis" of the SMS data in order to support their theory that RCDC access increased "the probability that an individual would purchase MVC points." *Id.* at 4. Plaintiffs specifically recognized that this required a regression analysis by a statistical expert to opine on the purported increase in the number of points sold as a result of access to RCDC properties. *Id.* at 2, 4. Plaintiffs' motion was denied by Magistrate Judge Gallagher's Order of April 7, 2019 (ECF #386), which was affirmed by Judge Brimmer (ECF #412).

Then, having been denied leave to use Bass as an expert, Plaintiffs attempted to have their halo damages expert, Jonathan Simon, simply rely on the Bass expert report in a supplemental report. Defendants moved to strike (ECF #405), and Plaintiffs agreed to withdraw the Bass report and all portions of the Simon supplemental report that relied on Bass' opinions. *See* ECF #424 (Marriott Defendants' Notice to Withdraw Their Rule 37(c) Motion to Strike, on the grounds that Plaintiffs agreed to "withdraw[] the Bass Report and the portions of the Supplemental Simon Report that rely upon the Bass Report"). Indeed, in using a logit regression analysis on other SMS data (ECF #392), with regard to the SMS data regarding the "top five" reasons for buying Points that Plaintiffs now seek to rely on, Bass noted that such data "was incomplete [because] it only distinguished between which features were ranked by each respondent in the top five and those that weren't [and] did not include the actual ranking of selected features by respondent" -- and, therefore, the data could not be used for a regression analysis. ECF #392-1 at 4 n.1.

With no statistical expert or regression analysis -- which Plaintiffs previously recognized was necessary to support their reliance on the SMS data -- Plaintiffs simply speculate and assume

that the 5-7% of SMS respondents who ranked access to RCDC as among their top five reasons to purchase points, would not have purchased any MVC points. Such speculation also does not account for the four other "top five" reasons given or whether RC Club Aspen specifically was meaningful to the respondents. In sum, the Exhibit is based upon pure speculation and opinion for which plaintiffs provide no expert or other basis.

## CONCLUSION

For all the foregoing reasons, Plaintiffs' proposed Rule 1006 summary exhibit, purporting to calculate the profits from the MVC Affiliation, should be excluded.

Dated:  February 16, 2021

Respectfully submitted,

GREENBERG TRAURIG, LLP
By:  *s/ Philip R. Sellinger*
Philip R. Sellinger
Roger B. Kaplan
Ian S. Marx
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
Tel: 973.360.7900 / Fax: 973.301.8410
Email:  SellingerP@gtlaw.com
            KaplanR@gtlaw.com
            MarxI@gtlaw.com
*Attorneys for Defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., The Ritz-Carlton Management Company, LLC, The Cobalt Travel Company, LLC, and The Lion & Crown Travel Co., LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of February 2021, a true and accurate copy of the foregoing **DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE PLAINTIFFS' PROPOSED RULE 1006 EXHIBIT PURPORTING TO CALCULATE PROFITS OBTAINED FROM THE MVC AFFILIATION** was filed and served with the Clerk of the Court via CM/ECF filing system, which will send notification to the following:

Michael J. Reiser
Law Office of Michael J. Reiser
1475 N Broadway, Suite 300
Walnut Creek, CA 94596
*Counsel for Plaintiffs*

Matthew C. Ferguson
The Matthew C. Ferguson Law Firm, P.C.
119 South Spring, Suite 201
Aspen, Colorado 81611
*Counsel for Plaintiffs*

Tyler R. Meade
The Meade Firm P.C.
1816 Fifth Street
Berkeley, CA 94710
*Counsel for Plaintiffs*

Linda Pham Lam
Michael Schrag
Gibbs Law Group LLP
505 14th Street, Suite 1100
Oakland, CA 94612
*Counsel for Plaintiffs*

*s/ Gregory Scavelli*
Gregory Scavelli