IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 16-cv-01301-PAB-GPG

RCHFU, LLC, a Colorado limited liability company, et al.,

     Plaintiffs,

v.

MARRIOTT VACATIONS WORLDWIDE CORPORATION, et al.,

     Defendants.

_____

**ORDER**
_____

This matter is before the Court on defendants' Supplemental Motion for Summary Judgment [Docket No. 598] and plaintiffs' Motion for Reconsideration of the Court's Orders Excluding Jon Simon's Testimony on Causation and Maurice Robinson's Analysis as Evidence on Causation [Docket No. 602].  The Court granted leave for defendants to file a successive motion for summary judgment on the basis that the Court's order excluding plaintiffs' expert opinions on causation [Docket No. 583] precludes plaintiffs from establishing the causation element of their claims.  The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

**I.  MOTION FOR RECONSIDERATION**

    **A. Background**

The background facts are set forth in the Court's previous orders, *see, e.g.*, Docket No. 563, and will not be repeated here unless relevant to resolving the present motion.  This action arises out of a dispute regarding the management of the Ritz-

Carlton Club, Aspen Highlands ("RC Club Aspen"), located in Aspen, Colorado, and its affiliation with Marriott Vacation Club ("MVC").  Plaintiffs, who own fractional interests in RC Club Aspen, claim that the affiliation, resulting from defendants' allegedly wrongful acts, decreased the value of their fractional interests at RC Club Aspen and that plaintiffs were damaged thereby.  Docket No. 430 at 10, ¶ 1.

Plaintiffs ask the Court to reconsider two orders.  First, plaintiffs seek reconsideration of that part of the Court's June 1, 2020 order, Docket No. 583, excluding the testimony of one of plaintiffs' causation experts, Jon Simon, whom plaintiffs offered to testify that the affiliation between MVC and RC Club Aspen was a substantial factor in the diminution in value of plaintiffs' fractional interests.  Docket No. 602 at 1.  Plaintiffs argue that the Court misapplied the qualifications standard of an expert witness.  *Id.* at 2.  In particular, plaintiffs argue that the Court excluded Mr. Simon's causation analysis because "he failed to explain why 'other potential causes for the diminution in value are inapplicable'" even though "Colorado law makes clear that in a breach-of-fiduciary duty case like this, plaintiffs are *not* required to rule out alternative causes of economic harm."  *Id.* (quoting Docket No. 583 at 15).  Therefore, plaintiffs argue, the Court erred in requiring "that the expert's proposed testimony [] meet a higher standard than the designating party would be required to prove at trial."  *Id.* Plaintiffs maintain that they only need to show that defendants' "wrongful conduct was at least *one* of the causes of their loss" and that they can use expert testimony or a "reasonable inference based on other evidence," at which point it becomes defendants' burden to "demonstrate that its conduct was not a causative factor at all."  *Id.* at 2–3.

2

Plaintiffs also insist that the Court reconsider its order precluding Mr. Simon from basing his causation analysis on another of plaintiffs' experts, Maurice Robinson, whose "comparative-property-valuations analysis," *id.* at 3, the Court found reliable. Docket No. 583 at 22.

Second, plaintiffs ask the Court to reconsider its October 13, 2020 order, Docket No. 596, excluding Mr. Robinson's "comparative-property-value analysis" "to draw the just and reasonable inference" that [the affiliation] was a substantial factor in the diminution in value of RC Club Aspen. Docket No. 602 at 1–2. Defendants responded in opposition to plaintiffs' motion. Docket No. 603. Plaintiffs replied. Docket No. 605.

### B.  Legal Standard

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. *See Hatfield v. Bd. of Cnty. Comm'rs for Converse Cnty.*, 52 F.3d 858, 861 (10th Cir. 1995). Instead, motions for reconsideration fall within a court's plenary power to revisit and amend interlocutory orders as justice requires. *See Paramount Pictures Corp. v. Thompson Theatres, Inc.*, 621 F.2d 1088, 1090 (10th Cir. 1980) (citing Fed. R. Civ. P. 54(b)); *see also Houston Fearless Corp.*, 313 F.2d 92, 92 (10th Cir. 1962). In order to avoid the inefficiency which would attend the repeated re-adjudication of interlocutory orders, judges in this district have imposed limits on their broad discretion to revisit interlocutory orders. *See, e.g.*, *Montano v. Chao*, No. 07-cv-00735-EWN-KMT, 2008 WL 4427087, at *5-6 (D. Colo. Sept. 28, 2008) (applying Rule 60(b) analysis to the reconsideration of interlocutory order); *United Fire & Cas. Co. v. McCrerey & Roberts Constr. Co.*, No. 06-cv-00037-WYD-CBS, 2007 WL 1306484, at

*1–2 (D. Colo. May 3, 2007) (applying Rule 59(e) standard to the reconsideration of the duty-to-defend order).  Regardless of the analysis applied, the basic assessment tends to be the same: courts consider whether new evidence or legal authority has emerged or whether the prior ruling was clearly in error.  *Cf. Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1203 (10th Cir. 2018) ("[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law.").  Motions to reconsider are generally an inappropriate vehicle to advance "new arguments, or supporting facts which were available at the time of the original motion."  *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

### C.  Analysis

The Court excluded Mr. Simon's testimony as unreliable because he "ignore[d] the fact that other potential causes of the loss in value of plaintiffs' shares exist" and, therefore, did not "explain why, based on his experience, other potential causes for the diminution in value are inapplicable here."  Docket No. 583 at 15.  Plaintiffs maintain that requiring Mr. Simon to explain why other factors are inapplicable is contrary to Colorado law on the breach of fiduciary duty, which, plaintiffs argue, is clear that, "[i]f the defendant's conduct is a substantial contributing cause of the injury, it is irrelevant to the causation analysis whether other factors, including market forces beyond the defendant's control, also contributed to the injury."  Docket No. 602 at 7 (quoting *Rupert v. Clayton Brokerage Co. of St. Louis, Inc.*, 737 P.2d 1106, 1112 (Colo. 1987)).  Plaintiffs claim that, under *Rupert*, they have no obligation to account for other possible causes, and that, therefore, neither does their expert witness.  *Id.*

4

*Rupert* involved an unsophisticated investor, Patrick Rupert, who gave nearly his entire net worth to a brokerage firm that violated its own rules and negligently handled his account.  737 P.2d at 1108–09.  The firm "concede[d] that if it had complied with its investor and broker suitability standards and account minimums, Rupert's account never would have been opened, the brokers never would have traded the account, and the losses would not have occurred."  *Id.* at 1112.  On causation, the court held that Rupert did not need to establish that his trading losses "were caused directly by [the firm's] conduct and not by market forces."  *Id.*  The court, however, applied a but-for causation theory, stating, "[w]here an investor's transactions would not have occurred but for the broker's failure to police the propriety of the transaction, causation may be established."  *Id.*  Rupert established causation, in part through the firm's concession, and, therefore, the court held that the firm's "negligence set the stage for Rupert's trading losses, and was a substantial contributing cause of the injury suffered."  *Id.* at 1113.

The Court finds no clear error in its analysis, which is consistent with the rule set forth in *Rupert*.  As the Court stated in its order precluding Mr. Simon's testimony, by failing to account for other possible causes that could have led to the alleged diminution in value, Mr. Simon did not explain "how he decided to attribute the alleged diminution in value to the affiliation rather than other unnamed factors . . . [or] why, based on his experience, other potential causes can be eliminated here."  Docket No. 583 at 14.  He thus failed to "create a link between his experience and his opinion as applied to the facts of this case."  *Id.*  The Court did not exclude Mr. Simon's testimony because he could not establish that the affiliation was the sole cause of the alleged diminution, but

5

rather because, without discounting other factors, he failed to establish that the affiliation was even a substantial cause, as opposed to, say, a minor contributing factor. *Id.*  Because plaintiffs have not shown that the Court's prior ruling was clearly in error, the Court will deny plaintiffs' motion for reconsideration on this ground.

Plaintiffs also seek reconsideration of the portion of the June 1, 2020 order "that precluded [Mr.] Simon from basing his causation analysis in part upon Maurice Robinson's admissible and reliable comparative-value analysis."  Docket No. 602 at 8. Plaintiffs argue that, because Mr. Simon "expressly opined that [Mr.] Robinson's analysis supported his conclusion" that the affiliation was a substantial factor the alleged diminution in value, "it should have been irrelevant that [Mr.] Robinson did not present himself as a 'causation' expert."  *Id.* at 10.  This argument is not well taken.  The Court did not rule that Mr. Simon could not rely on Mr. Robinson's analysis.[1]  Rather, the Court precluded Mr. Simon's testimony notwithstanding the fact that he "based his opinion not only on his knowledge of and experience in the vacation ownership industry, including the types of conduct that would typically cause the value of fractional ownership interests to decline, but also on his review of the evidence and testimony in

---

[1] Defendants appear to argue that one expert may not rely on another's testimony.  Defendants overstate the rule.  An expert may not testify to opinions that rely on the opinion of another expert simply because the other is an expert.  *See TK-7 Corp. v. Estate of Barbouti*, 993 F.3d 722, 732 (10th Cir. 1993) (an expert who adopted another expert's projections did not reasonably rely on those projections when he knew nothing about the other expert or the and the record did not indicate his efforts to corroborate the projections).  This is because a testifying expert may not "simply assum[e], without regard to any identified methodology," that the other expert's conclusions are proper.  *McCall v. Skyland Grain LLC*, No. 08-cv-01128-PAB-BNB, 2010 WL 1435369, at *3 (D. Colo. Apr. 9, 2010).  To do so would be to "reach what is, essentially, a legal conclusion."  *Id.*

this case."  Docket No. 499 at 18 (quotations omitted).  The Court did so because, in his expert report, Mr. Robinson "assume[d] that Plaintiffs [would] establish liability," including "a breach of fiduciary duties, constructive fraud[,] and other unlawful conduct" and assumed "that these breaches were substantial factors in causing the property values at the subject Property to be significantly lower than they would have been absent Defendants' unlawful actions."  Docket No. 461-8 at 8–9.  Thus, while it was not improper for Mr. Simon to consider Mr. Robinson's report, that report could not form the basis of Mr. Simon's opinion because Mr. Robinson assumed the very thing that Mr. Simon opined on.  The Court finds no clear error.[2]

The Court next considers plaintiffs' request that the Court reconsider its October 13, 2020 order, Docket No. 596, which rejected plaintiffs' argument that Mr. Robinson's analysis is sufficient to establish causation because the jury can "draw the just and reasonable inference" that the affiliation was a substantial factor in the diminution in value of RC Club Aspen.  Docket No. 602 at 1.  Plaintiffs do not dispute the Court's holding that expert testimony is required to prove causation in a case such as this. Plaintiffs argue, rather, that "even though [Mr.] Robinson did not expressly opine on causation . . . his comparative-valuate [sic] analysis is sufficient to raise a just and reasonable inference of causation" "from which the jury could reasonably infer . . . some loss in value to Plaintiffs' units resulting from the affiliation of MVC with their formerly

---

[2] Defendants argue that plaintiffs' motion is untimely because they filed their motion for reconsideration more than five months after the Court issued the order that plaintiffs challenge, and after defendants' supplemental summary judgment motion was fully briefed.  Docket No. 603 at 4.  The Court need not determine whether plaintiffs' motion for reconsideration is untimely because it fails on the merits.

exclusive and deluxe property." *Id.* at 11–13.  This argument is without merit.  Not only did Mr. Robinson not expressly use the words "causation," "proximate cause," or "resulting loss," but, as explained above, Mr. Robinson assumed plaintiffs' other experts had established causation.  *Id.* at 13.  Because Colorado courts consistently hold that a plaintiff "must establish causation beyond mere possibility or speculation," *Truck Ins. Ech. v. MagneTek, Inc.*, 360 F.3d 1206, 1215 (10th Cir. 2004) (quoting *Kaiser Found. Health Plan v. Sharp*, 741 P.2d 714, 719 (Colo. 1987)), the Court finds no clear error in rejecting the argument that an expert who expressly assumed causation had been established by other experts and who was retained only "to estimate the Diminution in Value damages" would be sufficient to prove causation.  Docket No. 461-8 at 2.  Plaintiffs' motion for reconsideration will be denied.

## II.  MOTION FOR SUMMARY JUDGMENT

### A.  Background

#### 1.  *Factual Background*[3]

Plaintiffs seek compensatory damages consisting of the diminution in value of their fractional interest in the RC Club Aspen, allegedly arising from and caused by the affiliation.  Docket No. 598 at 4, ¶ 1.  Plaintiffs also seek disgorgement of defendants' profits allegedly caused by and arising from the affiliation.  *Id.*, ¶ 2.

As discussed previously, the Court excluded certain opinions of plaintiffs' experts Mr. Simon and Dr. Dev, who plaintiffs had relied on to testify about the "halo" and "horn"

---

[3] The following facts are undisputed unless otherwise noted.

8

effects[4] to establish causation for both plaintiffs' compensatory damages and unjust enrichment claims.  *Id.* at 4–5, ¶¶ 3–4.[5]  Plaintiffs' only other expert, Mr. Robinson, calculated the difference in value between fractional interests at RC Club Aspen and fractional interests at other fractional interests resorts in and around Aspen.  *Id.*, ¶ 5.[6] Mr. Robinson found that prices at RC Club Aspen declined in the years following the affiliation but that prices at comparable properties increased, and RC Club Aspen owners testified about the decreased value of their units due to non-members accessing

---

[4]  As the Court explained previously, a "halo effect" is "the positive impact that co-mingling a less prestigious brand with a more prestigious brand can have on the former," Docket No. 596 at 2 n.1. (quoting Docket No. 461-1 at 3, ¶ 4), "or 'the increased profits or brand premium a lesser brand (or unbranded real estate) can earn when it affiliates with a more exclusive brand.'"  *Id.* (quoting Docket No. 461-3 at 6, ¶ 8). A "horn effect" is "the negative impact that [an] affiliation can have on the more prestigious brand,'" *id.* (quoting Docket No. 461-1 at 3, ¶ 4), "or 'financial damage to a more exclusively branded property when it affiliates with a lower tier brand and/or allows owners of the lesser brand systematic access to the luxury branded property.'"  *Id.* (Docket No. 461-3 at 7, ¶ 9).

[5] Plaintiffs admit that the Court excluded Mr. Simon's and Dr. Dev's testimony, but deny "that no other causation evidence exists."  Docket No. 599 at 2, ¶¶ 3–4. However, defendants did not state that no other causation evidence exists.  Plaintiffs, therefore, do not deny that the Court excluded Mr. Simon's and Dr. Dev's testimony on the halo and horn effects.  Moreover, whether there is other admissible evidence of causation is a legal argument that is not appropriate in the section of a brief concerning undisputed facts.  *See* Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.vii.  Even if such a statement were appropriate, however, plaintiffs' denial is unsupported.  In response to both facts, plaintiffs cite to Mr. Robinson's report.  Docket No. 599 at 2, ¶¶ 3–4.  However, the Court previously found Mr. Robinson's report was insufficient to prove causation.  *See* Docket No. 596 at 10–11.  The Court therefore deems these facts admitted.

[6] Plaintiffs purport to deny this fact and state, "[Mr.] Robinson calculated the difference in growth rates between fractional interests at [RC Club Aspen] and other comparable properties."  Docket No. 599 at 2, ¶ 5.  Plaintiffs do not deny that some of these comparable properties were other fractional interest resorts in and around Aspen. The Court therefore deems this fact admitted.

the property using cheaper points.  Docket No. 599 at 3, ¶¶ 5–6.[7]  The Court previously determined that Mr. Robinson's testimony is "insufficient to prove causation, as plaintiffs [did] not designate[] Mr. Robinson as an expert on causation and Mr. Robinson does not attempt to opine on causation."  Docket No. 598 at 5, ¶ 6 (quoting Docket No. 596 at 10).  The Court also found that the "issue of causation in this cause is beyond the common knowledge of jurors" and thus that "expert testimony is required to prove causation in this case."  Docket No. 598 at 5, ¶ 7 (quoting Docket No. 596 at 6, 11).[8]

Marriott CEO Stephen Weisz testified that allowing MVC access to Ritz-Carlton club properties helps Marriott sell more points.  Docket No. 599 at 3, ¶ 8.[9]  According to plaintiffs, Marriott's net revenue from MVC points sales was between $648 million and

---

[7] Defendants admit that these facts are disputed but contend that they are immaterial.  Docket No. 601 at 1.  The Court's practice standards state that, "[i]f . . . a party believes that an established fact is immaterial, that belief should be expressed in the part of the brief devoted to legal argument, and the fact should be admitted."  *See* Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.vii.  The Court therefore deems these facts admitted.

[8] The parties dispute whether plaintiffs disclosed their intention to seek disgorgement based on defendants' profits or management fees that plaintiffs paid.  *Compare id.*, ¶ 8 *with* Docket No. 599 at 2–3, ¶ 8.

[9] Defendants purport to deny this fact and state that Mr. Weisz testified that there was no halo effect as a result of the affiliation because members merely had the opportunity to get to a Ritz-Carlton club after spending a considerable amount of points.  Docket No. 601 at 1–2, ¶ 8.  While Mr. Weisz testified that he did not consider the benefit in the context of a halo, Docket No. 599-1 at 3, 108:14–15, and that plaintiffs were "making more of it than [he] would in terms of the benefit," *id.* at 4, 109:13–14, when asked whether the affiliation helps MVC "sales folks sell more product by being able to tell potential purchasers that they have access to Ritz-Carlton Clubs through the [MVC]," Mr. Weisz responded, "I certainly think there's some members that probably value that and would buy more points as a result of it."  *Id.*, 109:4–6.  The Court therefore finds defendants' denial unsupported and deems this fact admitted.

$990 million.  *Id.*, ¶ 9.[10]  Moreover, when Marriott surveyed the points purchasers in 2014 to determine why they had purchased MVC points, 5.5–7.4% responded that gaining access to Ritz-Carlton club properties was among their top five reasons.  *Id.* at 4, ¶ 10.[11]

### 2.  Procedural Background

Plaintiffs filed this lawsuit on April 26, 2016 in the District Court for Pitkin County, Colorado.  Docket No. 5 at 2.  Defendants MVW, MVC, RC Management, Cobalt, and Lion & Crown removed the case to federal court on May 27, 2016.  Docket No. 1. Plaintiffs filed their seventh amended complaint on July 9, 2019.  Docket No. 430.  They assert claims for (1) breach of fiduciary duty against RC Management, Cobalt, and Lion & Crown; (2) constructive fraud against RC Management, Cobalt, and Lion & Crown; (3) aiding and abetting a breach of fiduciary duty and constructive fraud against all defendants; (4) conspiracy against all defendants; and (5) unjust enrichment against all remaining defendants.  *Id.* at 94–104.

### B.  Legal Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when

---

[10] Defendants purport to deny this fact and state that plaintiffs mischaracterize the financial documents that plaintiffs cite and that the fact is not material.  Docket NO. 601 at 2, ¶ 10.  The Court deems this fact admitted because defendants do not support their denial with specific reference to the record and their argument about materiality is not appropriate in the fact section.  *See* Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.vi; *id.*, § III.F.3.b.vii.

[11] Defendants admit that this fact is disputed but contend that it is immaterial. Docket No. 601 at 2.  As noted previously, legal argument is not appropriate in this section. *See* Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.vii.  The Court therefore deems this fact admitted.

the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotation marks omitted) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case."  *Bausman*, 252 F.3d at 1115.  When reviewing a motion for summary judgment, a court must view the

12

evidence in the light most favorable to the non-moving party.  *Id.*

### C.  Analysis

Defendants seek dismissal of all five of plaintiffs' claims, which are for: (1) breach of fiduciary duty; (2) constructive fraud; (3) aiding and abetting breach of fiduciary duty and constructive fraud; (4) conspiracy; and (5) unjust enrichment.  Docket No. 598 at 3–4.  Defendants argue that the Court's previous rulings preclude plaintiffs from meeting their burden of proof.  *Id.* at 6.  Defendants address plaintiffs' constructive fraud claims first, fiduciary duty claims second, and disgorgement claims third, and so will the Court.

### *1.  Constructive Fraud Claims*

Defendants argue that the Court has already "recognized that causation is an essential element of a constructive fraud claim" and that "'[t]o establish a claim for constructive fraud, a plaintiff must show' that defendant's allegedly wrongful conduct 'proximately caused' 'injury to the complaining party."  *Id.* (quoting Docket No. 210 at 24).  Defendants assert that the Court's recognition of the necessity of plaintiffs proving causation, along with the Court's previous rulings holding, first, that "the issue of causation in this case is beyond the common knowledge of jurors" and that therefore "expert testimony is required to prove causation in this case," and, second, excluding certain opinions of plaintiffs' causation experts means that plaintiffs cannot meet their burden.  *Id.*; Docket No. 583 at 6–18.

Plaintiffs respond that there is sufficient evidence to establish each element of a constructive fraud claim – a duty arising from the parties' relationship, deceptive material representations or omissions, reliance, injury proximately caused by the deception, and defendants' gain at plaintiffs' expense.  Docket No. 599 at 13 (citing

*Barnett v. Elite Properties of Am., Inc.*, 252 P.3d 14, 23 (Colo. App. 2010)).  In particular, plaintiffs argue that Marriott no longer disputes it stands as a fiduciary to plaintiffs, that, as a fiduciary, Marriott promised that the affiliation was dependent on a majority vote of RC Club Aspen members, that plaintiffs' relied on this promise "and refrained from taking other actions to prevent the affiliation," and that plaintiffs suffered "various consequences."  *Id.* at 13–14.

The Court agrees with defendants.  As the Court has explained, "[c]onstructive fraud is defined as a breach of duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive, violate confidence, or injure public interests."  Docket No. 210 at 23 (quoting *Sec. Nat'l Bank v. Peters, Writer & Christensen, Inc.*, 569 P.2d 875, 880–81 (Colo. App. 1977)).  To make out a claim for constructive fraud, a plaintiff must show a duty, violation of that duty, reliance by the complaining party, "injury to the complaining party *proximately caused thereby*," and an advantage gained by the injuring party at the complaining party's expense.  *Id.* at 24 (quoting *Barnett*, 252 P.3d at 24) (emphasis added).  Plaintiffs, however, cannot establish that the "various consequences" they suffered were "proximately caused" by defendants' actions.  The Court has already held that the "issue of causation in this case is beyond the common knowledge of jurors," Docket No. 596 at 6, precluded two of plaintiffs' experts from opining on whether the affiliation caused a diminution in value, Docket No. 583 at 11–23, 14–15, and rejected plaintiffs' arguments that causation could be established through the testimony plaintiffs' only remaining expert, Mr. Robinson.  Docket No. 596 at 10.  Plaintiffs' arguments to the contrary are unconvincing, and defendants are entitled to summary judgment as to plaintiffs' second cause of action –

their constructive fraud claim.

The Court next considers defendants' arguments for dismissal those portions of plaintiff's third claim, for aiding and abetting, and fourth claim, for conspiracy, concerning constructive fraud. Plaintiffs allege in the complaint that "[d]efendants and each of them, including MVW, MVC[], and [Lion & Crown ("L&C")] aided and abetted the . . . constructive fraud committed by Defendants Association, RC Management, Cobalt, and L&C." Docket No. 430 at 100–01, ¶ 119.[12] Defendants argue that aiding and abetting claims are "derivative and dependant upon the existence of an underlying wrong" and must be dismissed "where, as here, the cause of action on which the claim depends has failed." Docket No. 598 at 7 n.3 (citing *Rocky Mountain Expl., Inc. v. Davis Graham & Stubbs LLP*, 428 P.3d 567, 576 (Colo. App. 2016) ("because [plaintiff's fraud claim] fails, [its] civil conspiracy to commit fraud and . . . aiding and abetting fraud [claims] fail as well"), *aff'd*, 420 P.3d 223 (Colo. 2018)). Plaintiffs do not respond specifically to this argument.

The Court agrees with defendants. "Liability for aiding or abetting a tortious act will be found if the party whom the defendant aids performs a wrongful act that causes an injury, the defendant is generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance, and the defendant knowingly and substantially assists the principal violation." *F.D.I.C. v. Refco Grp.,* Ltd., 989 F. Supp. 1052, 1079–80 (D. Colo. 1997) (quoting Holmes *v. Young*, 885 P.2d 305, 308 (Colo. App. 1994)). Because plaintiffs cannot prove the "principal violation" of

---

[12] Defendant Association is no longer a party to this case. *See* Docket No. 556.

15

constructive fraud, defendants are entitled to summary judgment on plaintiffs' aiding and abetting constructive fraud claim.

The Court next considers whether defendants are entitled to summary judgment on that portion of plaintiffs' civil conspiracy claim dealing with defendants' alleged constructive fraud.  Defendants argue that "[u]nder Colorado law, civil conspiracy is a derivative cause of action that is not actionable *per se* . . . . If the acts alleged to constitute the underlying wrong provide no cause of action, then there is no cause of action for the conspiracy itself."  Docket No. 598 at 7 n.3 (quoting *McNees v. Ocwen Loan Servicing, LLC*, No. 16-CV-1055-WJM-KLM, 2020 WL 1511837, at *16 (D. Colo. Mar. 30, 2020).

"To establish civil conspiracy under Colorado law, a plaintiff must show (1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) an unlawful overt act, and (5) damages as to the proximate result."  *Refco*, 989 F. Supp. at 1079 (citing *Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995)).  The "essence of a civil conspiracy claim is not the conspiracy itself, but the actual damages resulting from it."  *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 502 (Colo. 1989).  Plaintiffs claim that defendants agreed "on an object to be accomplished – the affiliation of the Ritz-Carlton Club, RC Club Aspen and Plaintiffs' and Ritz-Carlton Aspen Owners' Fractional Units with the Marriott Vacation Club," that there was a "meeting of the minds" among the defendants on that object, that defendants "accomplished the unlawful overt acts of breaching fiduciary duties" and "aiding and abetting" the defendants "in beaching their fiduciary duties and by acting fraudulently by participating in said affiliation."  Docket 430 at 103, ¶ 130.  Plaintiffs

16

further claim that "[a]s a proximate result, Plaintiffs suffered damages, including the destruction of the value of their fractional units . . . ."  *Id.*, ¶ 131.

Plaintiffs' argument fails.  "If the acts alleged to constitute the underlying wrong provide no cause of action, then there is no cause of action for the conspiracy itself." *Double Oak Const., LLC v. Cornerstone Dev. Intern., LLC*, 97 P.3d 140, 146 (Colo. App. 2003).  Plaintiffs have failed to show constructive fraud as an unlawful act because they cannot establish causation.  Because plaintiffs cannot show that the affiliation caused a diminution in the value of plaintiffs' fractional interests, plaintiffs are also unable to meet the "damages as to the proximate result," *Refco*, 989 F. Supp. at 1079, an element of the civil conspiracy claim.  Defendants are, therefore, entitled to summary judgment as to plaintiffs' fourth cause of action, for civil conspiracy to the extent such cause is grounded in plaintiffs' constructive fraud claim.

### 2. *Breach of Fiduciary Duty Claims*

Defendants seek dismissal of plaintiffs' claims one, three, and four, which allege, respectively, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and conspiracy "to the extent such claims relate to breach of fiduciary duty claim."  Docket No. 598 at 12.  Plaintiffs argue that they must establish that "(1) Marriott owed them a fiduciary duty; (2) Marriott breached that duty; and (3) Plaintiffs suffered some resulting loss under the 'substantial factor' standard."  Docket No. 599 at 5.  As with the constructive fraud claim, defendants argue that "[c]ausation is an essential element" of the fiduciary duty claim and that "the case law makes clear that Plaintiffs bear the burden to prove causation," which, in this case, "means Plaintiffs bear the burden to prove that the supposed diminution in value about which they complain was actually

caused by [d]efendants."  Docket No. 598 at 7.  Defendants maintain that plaintiffs cannot meet this burden because the Court has held that expert testimony is required to prove causation and has precluded plaintiffs' causation experts from testifying.  *Id.* at 8–9.

Plaintiffs argue that their "threshold burden is merely to show by just and reasonable inference *some* cognizable harm to Plaintiffs resulted in whole or in part from Marriott's challenged conduct, i.e., that Marriot's breach of fiduciary duty affected the affiliation vote, and that the affiliation was at least one factor causing harm."  Docket No. 599 at 4.  Plaintiffs argue this does not require expert testimony but that Mr. Robinson's testimony would be sufficient to meet the threshold burden.  *Id.* at 4–5. Plaintiffs further argue that Colorado does not require strict "but for" causation and that, once plaintiffs make this threshold showing, the burden shifts to "Marriott to *disprove* the connection between the affiliation and the alleged harms . . . ."  *Id.* at 4.

The Court found similar arguments by plaintiffs unpersuasive as noted in the Court's order granting defendants' motion for leave to file this motion.  Docket No. 596. In plaintiffs' opposition to defendants' motion for leave, plaintiffs argued that they need only establish that the fiduciary's conduct was a "substantial contributing cause of the injury."  Docket No. 585 at 4 (quoting *Lariviere, Grubman & Payne, LLP v. Phillips*, 2011 WL 650001, at *20 (D. Colo. Feb. 11, 2011)).  The Court held that plaintiffs failed to "explain why this evidentiary standard – that the breach of a fiduciary duty must only be a substantial cause of the claimed damages – changes the Court's analysis on the type of evidence required to demonstrate causation in this case."  Docket No. 596 at 7.  The same is true here.  Plaintiffs repeat their earlier unsuccessful argument that they need

18

only show that the challenged conduct was a "substantial factor" in their loss.  Docket No. 599 at 4, 5.  Plaintiffs then repackage this argument, explaining that they need only show, by "reasonable inference[,] *some* cognizable harm" "resulted in whole or in part from Marriott's challenged conduct."  *Id.* at 4.  Plaintiffs argue that they need to meet a "lesser burden."  *Id.* at 4–5.  They argue that the challenged conduct does not have to be "the only cause or the last or nearest cause [of a harm, but] is sufficient if it concurs with some other event . . . to cause the claimed injury."  *Id.* (quoting *In re Swine Flu Immunization Prod. Liab. Litig.*, 495 F. Supp. 1188, 1206 (D. Colo. 1980)).  Plaintiffs' argument fails for the same reason that its first argument failed: plaintiffs cannot show causation.  Plaintiffs also still fail to show why the fact that the breach of a fiduciary duty need only be a substantial cause of the claimed damages changes the fact that expert testimony is required to prove causation here.

The Court previously rejected plaintiffs' argument that all that is required is evidence sufficient to permit the trier of fact – the jury, in this case – to make a "reasonable inference" on causation, *see* Docket No. 596 at 7 ("expert testimony is required to prove causation here."), and also that the jury can infer causation from Mr. Robinson's testimony.  Docket No. 599 at 9; Docket No. 596 at 10 ("Mr. Robinson's testimony is insufficient to prove causation, as plaintiffs have not designated Mr. Robinson as an expert on causation and Mr. Robinson does not attempt to opine on causation.").

The Court next considers plaintiffs' burden-shifting arguments.  Plaintiffs argue that, "under the common law of trusts, a plaintiff's threshold burden is merely to establish a prima facie case."  Docket No. 599 at 6.  "[O]nce 'a beneficiary has

19

succeeded in proving that the trustee has committed a breach of trust and that a related loss has occurred, the burden shifts to the trustee to prove that the loss would have occurred in the absence of the breach.'" *Pioneer Ctrs. Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1335 (10th Cir. 2017) ((applying California and Colorado law in ERISA context) (quoting Restatement (Third) of Trusts § 100 cmt. f)). Defendants argue that plaintiffs cannot "avoid [the] result" of having to prove causation by arguing that, in fiduciary duty cases, the burden shifts to the fiduciary to prove that its breach did not cause the loss. Docket No. 598 at 9 (citing Docket No. 585 at 10–11). Defendants claim that *Pioneer* requires a plaintiff show that the fiduciary committed a breach and that the breach resulted in a loss. Docket No. 601 at 2–3.

In support of their burden, plaintiffs argue that Mr. Robinson's analysis "show[ing] dramatically reduced post-affiliation property values" "*should* be enough to create triable issues of damages *and* causation, because [Mr. Robinson's analysis] stated what the value of Plaintiffs' interests would have been 'but for' Marriott's challenged conduct." Docket No. 599 at 5–6. "More importantly," plaintiffs argue, "the jury, as a matter of just and reasonable inference, can draw the common-sense conclusion . . . that the affiliation was likely a substantial factor in reduced value." *Id.* at 6. While this "substantial factor" burden appears greater than the "lesser burden" that plaintiffs previously stated that they needed to meet, plaintiffs never offered Mr. Robinson as an expert on causation, and the Court already determined causation is not something that the jury can infer. Docket No. 596 at 7, 10–11. Furthermore, as explained in the Court's disposition of plaintiffs' motion for reconsideration, Colorado courts are

20

consistent in holding that a plaintiff "must establish causation beyond mere possibility or speculation." *Truck Ins. Ech.*, 360 F.3d at 1215 (quoting *Kaiser Found. Health Plan*, 741 P.2d at 719).  Because plaintiffs are unable to show causation for the reasons noted above, plaintiffs cannot establish that defendants violated a fiduciary duty, and the Court need not consider whether plaintiffs are correct in their burden-shifting theory. Defendants are, therefore, entitled to summary judgment on plaintiffs' first cause of action for breach of fiduciary duty.  The Court's earlier analysis of plaintiffs' third and fourth causes of action – for aiding and abetting and conspiracy, to the extent such claims relate to plaintiffs' constructive fraud claim – applies to plaintiffs' claims of aiding and abetting and conspiracy in the breach of fiduciary duty context as well.

Plaintiffs argue that they are entitled to nominal damages for defendants' alleged breach of their fiduciary duty and an equitable order instructing defendants to hold the "promised-but-wrongfully-withheld affiliation vote."  Docket No. 599 at 12.  Plaintiffs admit that no Colorado court has "squarely addressed" whether nominal damages are appropriate in a situation such as plaintiffs', yet plaintiffs claim to find support in an Arizona case stating that damages may be awarded where plaintiffs have "experienced actual damages insusceptible to reasonable calculation or defendants had engaged in corporate plunder or diverted corporate opportunities to themselves."  *Id.* (quoting *Chimney Rock Pub. Power Dist. v. Tri-State Generation & Transmission Ass'n, Inc.*, No. 10-cv-02349-WJM-KMT, 2014 WL 811566, at *5 (D. Colo. Mar. 3, 2014) (citing *AMERCO v. Shoen*, 907 P.2d 536, 542 n.7 (Ariz. App. 1995))).  Plaintiffs argue that their case involves "both situations" – presumably plaintiffs mean actual damages that cannot be reasonably calculated and diversion of corporate opportunities – yet plaintiffs

21

provide no support for this assertion.  Defendants explain that nominal damages "are a trivial sum of money awarded to a litigant *who has established a cause of action*." Docket No. 601 at 5 (quoting Restatement (Second) of Torts § 907).

"Colorado courts have held that 'recovery [for a breach of fiduciary duty] is allowed once the cause and existence of damages have been established, even though the exact amount of damages may be uncertain or impossible to determine.'" *Chimney Rock*, 2014 WL 811566, at *5 (quoting *Graphic Directions, Inc. v. Bush*, 862 P.2d 1020 (Colo. App. 1993)).  Plaintiffs have failed to establish "the cause and existence of damages," as required by *Chimney Rock*.  The Court therefore finds plaintiffs are not entitled to request nominal damages.

Defendants argue that plaintiffs are not entitled to seek an injunction ordering a vote because they did not ask for that remedy in the Final Pretrial Order.  Docket No. 601 at 5.  It has long been established that "issues not preserved in the pretrial order have been eliminated from the action, and a party who did not so preserve an issue may not use it in resisting a motion for summary judgment."  *Hullman v. Bd. of Trs. of Pratt Cmty. Coll.*, 950 F.2d 665, 668 (10th Cir. 1991).  The Court finds that plaintiffs did not seek an injunction ordering a vote in the Final Pretrial Order and, as such, may not seek such relief "in resisting a motion for summary judgment."  *Id.*

### 3. Disgorgement of Defendants' Profits and Management Fees

Plaintiffs ask for two types of disgorgement, first, a return of management fees that plaintiffs say they paid to "Marriott to act as their fiduciary and manage" RC Club Aspen and, second, the "profits Marriott has made as a result of its breach."  Docket No. 599 at 14.  Because the Court has already determined that defendants are entitled to

22

summary judgment on plaintiffs' constructive fraud and breach of fiduciary duty claims, the Court will only consider plaintiffs' claims for disgorgement of profits and management fees under plaintiffs' fifth claim, i.e., that defendants were unjustly enriched.  For unjust enrichment claim, plaintiffs seek "disgorgement of all ill-gotten gains obtained as a result of the wrongful conduct . . . ."  Docket No 578 at 24.

Defendants make three main arguments for summary judgment.  First, defendants argue that summary judgment is appropriate for plaintiffs' "disgorgement claims . . . because the recovery theories they now espouse were never mentioned in the" Final Pretrial Order, "which this Court has recognized 'measures the dimensions of the lawsuit'"; nor "were they raised in discovery or in any expert report."  Docket No. 598 at 3–4.  Second, and more substantively, defendants argue that plaintiffs' disgorgement theories are "legally insupportable."  *Id.* at 15.  Third, defendants argue, alternatively, that plaintiffs' claim for disgorgement should be dismissed because plaintiffs lack standing to bring their claim.  *Id.* at 4.

Defendants state that the pretrial order governs the lawsuit and that "any claims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint. . . ."  Docket No. 598 at 13 (quoting *Estate of Grubbs v. Weld Cnty. Sheriff's Office*, No. 16-cv-00714-PAB-STV, 2018 WL 3145629, at *14 (D. Colo. June 26, 2018) (internal quotation omitted)).  Specifically, defendants claim that, while plaintiffs "described in detail the precise nature of each of their five claims, as well as the specific supporting facts and underlying theories," "[n]owhere in the extensive and detailed statement of their claims (and purported proofs) . . . did Plaintiffs mention their intention to use MVW's gross enterprise-wide profits as a basis

23

for a disgorgement claim." *Id.* at 14. Defendants also insist that plaintiffs failed to disclose in the Final Pretrial Order "that they intended to seek, as part of their disgorgement remedy, any portion of the management fees paid to RC Management over the years." *Id.* This theory, defendants argue, was also absent from the descriptions of plaintiffs' fact witnesses and damage experts, and from pretrial discovery and plaintiffs' expert reports. *Id.* 14–15. Therefore, defendants conclude, given the effect of the Final Pretrial Order, plaintiffs should be barred from seeking disgorgement on new theories.

Plaintiffs maintain that their disgorgement theory is not new in that they sought disgorgement since the prayer for relief in the first amended complaint. Docket No. 599 at 14. More to defendants' point, plaintiffs explain that they asserted in the Final Pretrial Order that the "Marriott Defendants have reaped substantial profits . . . from the Affiliation . . . [and] should be ordered to disgorge these profits." *Id.* (quoting Docket No. 578 at 17). Plaintiffs also maintain that they timely disclosed their "disgorgement evidence in their final exhibit and witness list." *Id.* at 14–15 (citing Docket No. 576-3 at 1, 8; Docket No. 576-1 at 15). "To the extent Plaintiffs' methodology for calculating disgorgement has evolved," plaintiffs ask that "the final pretrial order should be modified to accommodate those changes." *Id.* at 15 n.3.

The final pretrial order "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d). While "pretrial orders are to be liberally construed to cover any of the legal or factual theories that might be embraced by their language," *Zenith Petrol. Corp. v. Steerman*, 656 F. App'x 885, 887 (10th Cir. 2016) (unpublished) (quoting *Trujilo v. Uniroyal Corp.*, 608 F.2d 815, 818 (10th Cir. 1979) (internal quotation

marks omitted), the primary purpose of pretrial orders is to "avoid surprise by requiring parties to 'fully and fairly disclose their views as to what the real issues of the trial will be.'" *Id.* (quoting *Cortez v. Wal-Mart Stores, Inc.*, 460 F.3d 1268, 1276 (10th Cir. 2006)).  "When a pretrial order is ambiguous, a court 'must evaluate the order contextually to determine whether the claim was contained therein.'" *Estate of Grubbs*, 2018 WL 3145629, at *14 (quoting *Wilson v. Muckala*, 303 F.3d 1207, 1216 (10th Cir. 2002)).

Here, the pretrial order states that plaintiffs seek disgorgement because of the "substantial profits" that Marriott "reaped . . . from the Affiliation."  Docket No. 578 at 17. In particular, plaintiffs seek "disgorgement of ill-gotten gains" in connection with their unjust enrichment claim.  *Id.* at 24.  The Court finds this sufficient to put defendants on notice that plaintiffs seek disgorgement of profits.

Defendants argue, however, that plaintiffs failed to disclose in the Final Pretrial Order that they seek disgorgement of profits based on MVW's enterprise-wide profits. Docket No. 598 at 14.  Defendants insist that the final pretrial order must contain all "claims, issues, defenses, or theories of damages . . . ."  *Id.* at 13 (quoting *Wilson*, 303 F.3d at 1215).  Plaintiffs appear to concede this, stating, "[t]o the extent Plaintiffs' methodology for calculating disgorgement has evolved in response to the Court's recent rulings, the final pretrial order should be modified to accommodate those changes." Docket No. 599 at 15 n.3.  Plaintiffs have not, however, filed a motion to amend the Final Pretrial Order.  Nevertheless, the Court finds plaintiffs' statements in the Final Pretrial Order sufficient to "fully and fairly disclose their views as to what the real issues of trial will be."  *Cortez*, 460 F.3d at 1276.  Plaintiffs state, "Marriott Defendants have

reaped substantial profits. . . from the Affiliation [and] has increased prices on MVC points to account for the Ritz-Aspen access and has kept those higher prices" and therefore "Marriott should be ordered to disgorge these profits it made from its fiduciary breaches."  Docket No. 578 at 17.  Defendants cannot claim surprise that plaintiffs would seek to calculate ill-gotten gains based on MVC's profits.

The Court next considers defendants' argument that, in the Final Pretrial Order, plaintiffs did not seek disgorgement of management fees paid to defendants.  The Court agrees with defendants.  Plaintiffs did not state that they seek disgorgement of fees – they only ask for disgorgement of profits – nor do they explain such an absence in their response to defendants' motion for summary judgment.  Docket No. 599.  While plaintiffs stated in the complaint that they seek disgorgement of "all commissions, fees and profits" that defendants earned, Docket No. 430 at 105 ¶ 137, the Final Pretrial Order explained that "[t]he pleadings will be deemed merged herein."  Docket No. 578 at 55.  The "final pretrial order supersedes the complaint and is the operative pleading." *Nikkel v. Wakefield & Assocs., Inc.*, No. 10-cv-02411-PAB-CBS, 2012 WL 5571058, at *1 n.2 (D. Colo. Nov. 15, 2012) (citing *United Phosphorous, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1235 (10th Cir. 2000)); *see also Hullman*, 950 F.2d at 668 ("issues not preserved in the pretrial order have been eliminated from the action, and a party who did not so preserve an issue may not use it in resisting a motion for summary judgment"); *Cleverock Energy Corp. v. Trepel*, 609 F.2d 1358, 1361–62 (10th Cir. 1979), *cert. denied* 446 U.S. 909 (1980) (upholding the trial judge's order striking breach of fiduciary duty issue as beyond the scope of litigation for failure to list in pretrial order, while recognizing pretrial order should not be applied inflexibly).  Because plaintiffs

failed to ask for disgorgement of management fees in the Final Pretrial Order, they are barred from seeking such relief "in resisting a motion for summary judgment."[13] *Hullman*, 950 F.2d at 668. The Court will, therefore, consider only whether plaintiffs may seek disgorgement of defendants' profits.

Plaintiffs argue that they are "entitled to pursue their claim that Marriot[t] must disgorge the profits it earned at Plaintiffs' expense." Docket No. 599 at 17. Plaintiffs explain that they "need not prove but-for causation, i.e., that the profits would not have been earned but for the challenged misconduct . . . . Rather, a plaintiff need only show some 'causal connection' between the wrongdoing and a 'measurable increase in the defendants' net assets.'" *Id.* (quoting Restatement (Third) of Restitution § 51, cmt. i). Plaintiffs insist that, once "the plaintiff presents such evidence, the burden shifts to defendant to prove the extent to which some portion of those profits may have been attributable to other factors or are subject to equitable offset." *Id.* (citing *John Doe (1) v. Archdiocese of Denver*, 413 F. Supp. 2d 1187, 1191 (D. Colo. 2006) ("Colorado courts look to the Restatement to determine the extent of fiduciary obligations . . . .")).

Defendants argue that plaintiffs' theory of disgorgement "is entirely speculative without expert testimony." Docket No. 601 at 6. They insist that plaintiffs' experts, Mr. Simon and Dr. Dev, were offered as an "implicit acknowledgment of the need to prove, through expert testimony," that defendants "were, *in fact*, unjustly enriched" by the affiliation and "the *amount* of any such alleged unjust enrichment." Docket No. 598 at

---

[13] Because the Court has found that plaintiffs' failure to seek management fees in the Final Pretrial Order precludes them from seeking such relief now, the Court need not consider defendants' arguments that plaintiffs lack standing to seek such relief.

13.  Because the Court partially excluded the testimony of Mr. Simon and Dr. Dev, defendants argue, plaintiffs cannot prove the existence or the amount of any unjust enrichment.  *Id.*  Plaintiffs, defendants maintain, should not now be able to argue that they are entitled to disgorgement by relying on "MVW's total enterprise-wide profits" to prove defendants' total profits "and then shift the burden to Defendants to prove how much of those profits were <u>not</u> attributable to the MVC Affiliation."  *Id.*  Plaintiffs also should not be permitted to "seek the disgorgement of management fees paid by the Association to RC Management."  *Id.*  Furthermore, defendants argue that the evidence that plaintiffs have offered to approximate their damages is insufficient to allow more than a speculative approximation of damages.  *Id.* at 17.

The Court agrees with defendants.  Plaintiffs ask the Court to look to the Restatement on Restitution, Docket No. 599 at 17; however, as defendants explain, the Restatement provides that "the claimant has the burden of producing evidence from which the court may make at least a reasonable approximation of the defendant's unjust enrichment. . . . If the claimant's evidence will not yield even a reasonable approximation, the claim of unjust enrichment is merely speculative, and disgorgement will not be allowed."  Docket No. 601 at 6–7 (quoting Restatement (Third) of Restitution § 51, cmt. i).  Plaintiffs first claim that they have "no obligation to trace the precise amount of profits resulting from the infringing" conduct.  Docket No. 599 at 17.  Plaintiffs further claim that defendants' financial documents show "a significant relationship between the MVC affiliation and Marriott's gross profits."  *Id.* at 19.  Plaintiffs insist that "Marriott's Form 10-K reports and the results of Marriott's own surveys" show that "the 2014 affiliation [resulted in] significantly increased profits."  *Id.*  Plaintiffs also rely on

28

testimony from MVC CEO Weisz's deposition, which, plaintiffs explain, shows "that allowing MVC members access to Ritz-Carlton clubs helps Marriott sell more points." *Id.*

Plaintiffs are mistaken on their first point – that they have no obligation to link the alleged wrongdoing to the precise profits.  Relying on a copyright case, *Andreas v. Volkswagen of Am. Inc.*, 336 F.3d 789 (8th Cir. 2003), plaintiffs argue that, "once the plaintiff established the alleged infringement, it was sufficient for the plaintiff to present evidence of the defendants' total profits or gross revenue," and then it was defendants' burden to prove deductions.  Docket No. 599 at 17–18.  The Court disagrees.  First, plaintiffs misread *Andreas*.  The *Andreas* court stated that the plaintiff "must first establish some connection or relationship between the infringement and the profits he seeks."  *Andreas*, 336 F.3d at 799.  Further, the *Andreas* court, citing another copyright case, explained that a plaintiff can make a *prima facie* case for an award of profits by showing a defendant's gross revenues from the allegedly infringing conduct but that it is not enough to merely show defendant's gross revenues.  *Id.* (citing *Taylor v. Meirick*, 712 F.2d 1112, 1122 (7th Cir. 1983)).  Even assuming the applicability of copyright caselaw, plaintiffs may not rely solely on defendants' gross profits; rather, they must identify the allegedly ill-gotten gains or the revenue from the conduct that caused the unjust enrichment.

In order to show that the increase in defendants' assets is "attributable to the underlying wrong," Restatement § 51, cmt. i, plaintiffs explain that Marriott's financial documents state that its "net revenue from MVC points sales . . . was $648 million," and that, "[w]hen Marriott surveyed its MVC points purchasers to find out *why* they had

29

purchased MVC points that year, between 5.5 and 7.4% of the respondents answered

that gaining access to the Ritz-Carlton [] was among their top five reasons"; therefore,

plaintiffs contend, "[a] fact finder could reasonably conclude, based on that evidence,

that between 5.5 and 7.4% of the points revenue that Marriott received that year (or

approximately $9.1 million) was attributable to the affiliation. . . ." *Id.* at 19–20.  This

conclusion, however, is too speculative, because, as plaintiffs concede, gaining access

to Ritz-Carlton properties was only one of the top five reasons for purchasing points.  *Id.*

at 20; *see also* Docket No. 601 at 8.  Plaintiffs claim this is "more than sufficient to

enable a jury to find a 'causal connection' between Marriott's breach and profits,"

Docket No. 599 at 20, but a plaintiff "must establish causation beyond 'mere possibility

or speculation.'"  *Truck Ins. Ech.*, 360 F.3d at 1215 (quoting *Kaiser Found. Health Plan*,

741 P.2d at 719).  Plaintiffs have not done so.[14]  The Court finds that none of this

evidence is sufficient for the Court to make a "reasonable approximation" of the

defendants' unjust enrichment.  Rather, any approximation would be, at best,

speculative.  Defendants are therefore entitled to summary judgment on plaintiffs' claim

for disgorgement of defendants' profits.

## IV.  CONCLUSION

For these reasons, it is

**ORDERED** that Defendants' Supplemental Motion for Summary Judgment

---

[14] Mr. Weisz's testimony is similarly speculative.  When asked whether access to Ritz-Carlton properties helps MVC sell more points, he stated, "I certainly think there's some members that probably value that and would buy more points as a result."  Docket No. 599-1 at 3–4, 108:24–109:6.  Even if the affiliation helps sell MCV points, Mr. Weisz's testimony is insufficient for plaintiffs to establish a "reasonable approximation" of defendants' unjust enrichment.

[Docket No. 598] is **GRANTED**.  It is further

      **ORDERED** that Plaintiffs Motion for Reconsideration of the Court's Orders

Excluding Jon Simon's Testimony on Causation and Maurice Robinson's Analysis as

Evidence on Causation [Docket No. 602] is **DENIED**.  It is further

      **ORDERED** that all other pending motions are **DENIED** as moot.

      **ORDERED** that this case is closed.


      DATED September 20, 2021.

                        BY THE COURT:

                        _____

                        PHILIP A. BRIMMER
                        Chief United States District Judge